UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUKE WAID and MICHELLE
RODRIGUEZ, individually and as next
friends of one minor child;

      Plaintiffs,

v.

GOVERNOR RICHARD DALE SNYDER,
in his official capacity, and the STATE OF
MICHIGAN for prospective relief only;
THE MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY; DANIEL
WYANT, LIANE SHEKTER SMITH,
ADAM ROSENTHAL, STEPHEN
BUSCH, PATRICK COOK, MICHAEL
PRYSBY, BRADLEY WURFEL all in their
individual capacities; DARNELL EARLEY,
GERALD AMBROSE, EDWARD KURTZ,      Case No. 5:16-cv-10444-JCO-MKM
DAYNE WALLING, HOWARD CROFT,       Hon. John Corbett O'Meara
MICHAEL GLASGOW and                Mag. Judge Mona K. Majzoub
DAUGHERTY JOHNSON in their
individual and official capacities, CITY OF
FLINT, a municipal corporation, jointly and
severally, LOCKWOOD, ANDREWS &
NEWNAM, P.C.; LAN INC.; LEO A.
DALY COMPANY; VEOLIA NORTH
AMERICA, INC., VEOLIA NORTH
AMERICA, LLC; VEOLIA WATER
NORTH AMERICA OPERATING
SERVICES, LLC; VEOLIA
ENVIRONNEMENT S.A.;

      Defendants.

_____

1

## VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC's MOTION TO DISMISS OR, <u>IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT</u>

Under Federal Rules of Civil Procedure 8(a) and 12(b)(6), Defendants Veolia North America, Inc., Veolia North America, LLC, and Veolia Water North America Operating Services, LLC (collectively, "the VNA entities" or "the VNA defendants") move to dismiss Plaintiffs' claims against them. The Complaint should be dismissed for several reasons.

Plaintiffs' complaint fails to meet the basic requirement of establishing who did what. It impermissibly lumps allegations against separate defendants together, violating Rule 8's requirement that *each* defendant be given notice of the claims against it and rendering the claims insufficient under Rule 12(b)(6). At the same time, the complaint violates Rule 8's requirement that the complaint contain a "short and plain statement" of the relevant claims.

Finally, most all of the counts against the VNA entities fail to state a claim, as (lumping aside) they lack allegations on an essential element of the claim or the allegations themselves establish a complete defense as a matter of law. At least two counts are preempted, while other counts lack essential elements. As to one claim, Plaintiffs lack standing. Further, the complaint impermissibly seeks punitive damages. Lastly, it seeks to impose joint and several liability against all defendants even though that form of liability has been abolished in Michigan. The

2

VNA defendants rely on the arguments and authorities found in their accompanying brief in support.

Alternatively, under Federal Rule of Civil Procedure 12(e), the VNA entities move for a more definite statement. The vagueness of Plaintiffs' complaint, deriving from their improper group pleading approach, prevents the VNA entities from providing an answer that conforms with the federal rules.

As Local Rule 7.1(a) requires, the VNA entities sought concurrence from Plaintiffs' counsel as to this motion on January 6, 2017. Plaintiffs' counsel did not respond to the request.

Respectfully submitted,

| | |
|---|---|
| **CAMPBELL, CAMPBELL, EDWARDS & CONROY P.C.** | **BUSH SEYFERTH & PAIGE PLLC** |
| By: /s/ James M. Campbell | By: /s/ Cheryl A. Bush |
| James M. Campbell | Cheryl A. Bush (P37031) |
| John A. K. Grunert | Michael R. Williams (P79827) |
| One Constitution Center, 3rd Floor | 3001 W. Big Beaver Rd. Suite 600 |
| Boston, MA 02129 | Troy, MI 48084 |
| (617) 241-3000 | (248) 822-7800 |
| jmcampbell@campbell-trial-lawyers.com | bush@bsplaw.com |
| jgrunert@campbell-trial-lawyers.com | williams@bsplaw.com |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: January 23, 2017

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUKE WAID and MICHELLE
RODRIGUEZ, individually and as next
friends of one minor child;

       Plaintiffs,

v.

GOVERNOR RICHARD DALE SNYDER,
in his official capacity, and the STATE OF
MICHIGAN for prospective relief only;
THE MICHIGAN DEPARTMENT OF
ENVIRONMENTAL QUALITY; DANIEL
WYANT, LIANE SHEKTER SMITH,
ADAM ROSENTHAL, STEPHEN
BUSCH, PATRICK COOK, MICHAEL
PRYSBY, BRADLEY WURFEL all in their
individual capacities; DARNELL EARLEY,
GERALD AMBROSE, EDWARD KURTZ,
DAYNE WALLING, HOWARD CROFT,
MICHAEL GLASGOW and
DAUGHERTY JOHNSON in their
individual and official capacities, CITY OF
FLINT, a municipal corporation, jointly and
severally, LOCKWOOD, ANDREWS &
NEWNAM, P.C.; LAN INC.; LEO A.
DALY COMPANY; VEOLIA NORTH
AMERICA, INC., VEOLIA NORTH
AMERICA, LLC; VEOLIA WATER
NORTH AMERICA OPERATING
SERVICES, LLC; VEOLIA
ENVIRONNEMENT S.A.;

       Defendants.

Case No. 5:16-cv-10444-JCO-MKM
Hon. John Corbett O'Meara
Mag. Judge Mona K. Majzoub

_____

**BRIEF IN SUPPORT OF
VEOLIA NORTH AMERICA, LLC,
VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH
AMERICA OPERATING SERVICES, LLC'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT**

## STATEMENT OF ISSUES PRESENTED

1. Should the Court dismiss Plaintiffs' claims against the VNA entities because the Complaint impermissibly lumps allegations against those entities (and other defendants) together, depriving the VNA entities of proper notice of the particular facts alleged against them?

   **The VNA defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

2. Should the Court dismiss Plaintiffs' 115-page complaint because it fails to provide a "short and plain statement of the claim[s]" against these defendants?

   **The VNA defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

3. Should the Court dismiss Plaintiffs' federal claims because they are preempted by the Safe Drinking Water Act?

   **The VNA defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

4. Should the Court dismiss Plaintiffs' claims under Section 1983 because, among other things, they fail to establish that any of the VNA defendants acted under color of state law?

   **The VNA defendants answer:** "Yes."

**Plaintiffs answer:** "No."

5. Should the Court dismiss Plaintiffs' ordinary negligence claim where the claim is lodged against a professional?

> **The VNA defendants answer:** "Yes."

> **Plaintiffs answer:** "No."

6. Should the Court dismiss Plaintiffs' intentional infliction of emotional distress claim where, among other things, Plaintiffs do not allege the requisite intent and outrageous level of conduct?

> **The VNA defendants answer:** "Yes."

> **Plaintiffs answer:** "No."

7. Should the Court dismiss Plaintiffs' negligent infliction of emotional distress claim where Plaintiffs essentially assert an ordinary negligence claim?

> **The VNA defendants answer:** "Yes."

> **Plaintiffs answer:** "No."

8. Should the Court dismiss Plaintiffs' nuisance claim where Plaintiffs fail to allege that any VNA defendant had control over the nuisance?

> **The VNA defendants answer:** "Yes."

> **Plaintiffs answer:** "No."

9. Should the Court dismiss Plaintiffs' unjust enrichment claim where none of the VNA entities received a benefit from Plaintiffs?

**The VNA defendants answer:** "Yes."

**Plaintiffs answer:** "No."

10. Should the Court dismiss Plaintiffs' gross negligence claim because such a claim is not a standalone claim against defendants like the VNA defendants?

**The VNA defendants answer:** "Yes."

**Plaintiffs answer:** "No."

11. May Plaintiffs pursue punitive damages against the VNA defendants even though Michigan law generally bars those damages?

**The VNA defendants answer:** "No."

**Plaintiffs answer:** "Yes."

12. May Plaintiffs pursue joint and several liability against the defendants even though Michigan law has abolished that form of liability?

**The VNA defendants answer:** "No."

**Plaintiffs answer:** "Yes."

13. Should the Court dismiss Plaintiffs' declaratory judgment claim as to the VNA defendants given that there is no controversy concerning the City's compliance with the SDWA among them?

**The VNA defendants answer:** "Yes."

**Plaintiffs answer:** "No."

14. If Plaintiffs assert a trespass claim as to the VNA defendants, does that claim fail for lack of a tangible intrusion?

> **The VNA defendants answer:** "Yes."

> **Plaintiffs answer:** "No."

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Adams v. Cleveland-Cliffs Iron Co.*,
    602 N.W.2d 215 (Mich. 1999)

*Ass'n Research & Dev. Corp. v. CNA Fin. Corp.*,
    333 N.W.2d 206 (Mich. Ct. App. 1983)

*Attorney Gen. ex rel. Dir. Of Dep't of Nat. Res. v. Acme Disposal Co.*,
    473 N.W.2d 824 (Mich. Ct. App. 1991)

*Boler v. Early*,
    No. 16-10323, 2016 WL 1573272 (E.D. Mich. Apr. 19, 2016)

*Bryant v. Oakpointe Villa Nursing Ctr.*,
    684 N.W.2d 864 (Mich. 2004)

*Buckner v. Roy*,
    No. 2:15-CV-10441, 2015 WL 4936694 (E.D. Mich. Aug. 18, 2015)

*Chapman v. Higbee Co.*,
    319 F.3d 825 (6th Cir. 2003)

*Duran v. Detroit News, Inc.*,
    504 N.W.2d 715 (Mich. 1993)

*Matoon v. City of Pittsfield*,
    980 F.2d 1 (1st Cir. 1992)

*Marcilis v. Twp. of Redford*,
    693 F.3d 589 (6th Cir. 2012)

*Roberts v. Auto-Owners Ins. Co.*,
    374 N.W.2d 905 (Mich. 1985)

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015)

*Seasword v. Hilti, Inc.*,
    537 N.W.2d 221 (Mich. 1995)

*Smiley v. Corrigan*,
        638 N.W.2d 151 (Mich. Ct. App. 2001)

*Smith v. Glenmark Generics, Inc.*, USA,
        No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014)

## INTRODUCTION

Plaintiffs intend to bring a number of claims against Veolia North America, Inc. ("VNA Inc."), Veolia North America, LLC ("VNA LLC"), and Veolia Water North America Operating Services, LLC ("VWNAOS").[1]   But this complaint cannot proceed.  It groups together four separate defendants as one "Veolia," and then groups this group with still others in a confusing way.  It contains at least eight different counts against the VNA entities, most all of which fail to state a claim.  And it pursues two forms of relief that Michigan law does not permit.  None of Plaintiffs' claims is appropriately pleaded against the VNA defendants, so the complaint should be dismissed.

## BACKGROUND

More than three months ago, Plaintiffs Luke Waid and Michelle Rodriguez filed a fourteen-count amended complaint against twenty-five different defendants.  *See* Compl., *Waid v. Snyder*, 5:16-cv-10444-JCO-MK (E.D. Mich. filed Sept. 12, 2016), ECF No. 31.  According to the complaint, Plaintiffs intend to use their lawsuit to hold various defendants "accountable" for their alleged involvement with the City of Flint's ongoing lead-related water issues.  *Id.* ¶ 19.  They seek to represent a class composed of every person or entity that has lived in, owned

---

[1]  For simplicity's sake, these defendants are referred to here as "the VNA defendants" or "the VNA entities."  This response is *not* filed on behalf of Veolia Environnement, S.A.

1

property in, or rented property in the City of Flint for the past 26 months, including individuals who have since died. *Id.* ¶ 238, *see also id.* ¶ 216 (referring to deceased class members). Plaintiffs acknowledge that "various entities have initiated investigations into the persons and entities that caused the crisis," and that none of these investigations have found wrongdoing by any VNA entity. *Id.* ¶ 204-05. Nevertheless, they have evidently pursued a suit against the VNA entities at least in part because none of the investigations "have resulted in any compensation to Plaintiffs or the Class." *Id.* ¶ 205.

Plaintiffs' specific allegations against the three domestic VNA defendants are muddled because the vast majority of Plaintiffs' allegations are made against "Veolia," even though "Veolia's" identity is not clear. One time, the complaint defines "Veolia" to mean "Veolia North America," which is not the name of any legal entity. *Id.* ¶ 4. Another time, "Veolia" is "Veolia North America LLC." *Id.* ¶ 32. For much of the complaint, "Veolia" seems to mean "Veolia N.A.," "Veolia North America, Inc.," "Veolia Water North American Operating Services, LLC," and "Veolia S.A." *Id.* ¶ 61. Having grouped four entities together this way, Plaintiffs proceed to make every relevant allegation against this "Veolia" collective and thus avoid alleging which VNA entity supposedly performed which act. *See, e.g.*, *id.* ¶ 141 ("Veolia suggested the implementation of corrosion control[.]").

2

Plaintiffs also lump "Veolia" in with other defendants.  For example, they make several allegations against both "Veolia" and "LAN" (a collection of three other defendants).  Here again, this group pleading approach often leaves the reader asking which entity did what.  *See, e.g.*, *id.* ¶ 6 (alleging that the "LAN and Veolia" should have been alerted by certain red flags, even though at least one of these red flags occurred after VWNAOS's engagement).  Plaintiffs' complaint then takes this confusing group-pleading approach one step further by lumping "Veolia" in with every other defendant through most of the latter part of the complaint.

The complaint is also exceptional in its length: spanning 125 pages and 440 separate allegations.  That length derives in part from repetition.  The complaint alleges that "Veolia" failed to conduct a "root cause analysis" at least thirteen times, *see id.* ¶¶ 5, 6, 102, 162, 165, 167, 179, 187, 188, 211, 345, 396, 411, alleges that ferric chloride is acidic at least five times, *see id.* ¶¶ 7, 188, 189, 197, 202, and alleges that corrosion harmed Plaintiffs' appliances over and over again*, see, e.g.*, *id.* ¶¶ 17, 197, 240, 266, 268, 271, 276, 279, 358.  Those are just a few examples. In other places, the complaint merely provides extended quotations from secondary sources.  The VNA defendants therefore must respond to "allegations" that are nothing more than quotations from third-party sources including the World Health Organization, the Water Research Foundation, the International Water Association, the American Water Works Research Foundation, the Environmental Protection

3

Agency, Water Research Watershed Center, the Centers for Disease Control, and the Michigan Network for Children's Environmental Health ("MNCEH"). More than a few of these third-party quotations have only a tenuous connection to the actual issues presented by Plaintiffs' lawsuit; a fact sheet on fluoridation and a discussion of "late nineteenth century journals" constitute but two examples. *See id.* ¶¶ 144, 155.

All in all, Plaintiffs' complaint is chock full of immaterial allegations. *See also, e.g.*, *id.* ¶ 71 (quoting a state Congressman's view on the purpose of an emergency manager), *id.* ¶ 88 (noting the Michigan Department of Environmental Quality ("MDEQ")'s authority to regulate water wells). When all else fails, Plaintiffs just insist that certain principles are "well understood" or "well known." *See id.* ¶¶ 22, 95, 97, 103, 110, 126, 130, 138, 155, 160, 161, 227.

Amidst this mass of confusing allegations, Plaintiffs attempt to bring *nine* different claims against the VNA entities. Plaintiffs bring a count under 42 U.S.C. § 1983, even though Plaintiffs simultaneously recognize that the VNA entities are *private* actors. *Id.* ¶¶ 225-35. Another count is an ordinary negligence claim in which Plaintiffs allege all of the defendants failed to "act reasonably in providing Plaintiffs and the Class usable water." *Id.* ¶ 258. Two more counts allege intentional and negligent infliction of emotional distress on the very same facts. *Id.* ¶¶ 266-73. Another count asserts a nuisance claim against the VNA

defendants, even though Plaintiffs do not allege that those defendants controlled the City of Flint's water system or any part of it. *Id.* ¶ 282-87. Still another count contains an unjust enrichment claim—but Plaintiffs do not allege that they provided any benefit to any VNA entity. *Id.* ¶¶ 300-04. Two more counts assert professional and gross negligence, largely the same facts as the earlier ordinary negligence claim. *Id.* ¶¶ 305-10, 321-25. Another count seeks a declaratory judgment against all defendants that "the Government Defendants have operated and continue to operate a Water System that is not in compliance with [federal standards." *Id.* ¶ 329. Lastly, the complaint contains a trespass claim that confusingly refers to "the Governmental Defendants" in the heading and all "Defendants" generally in the allegations. *Id.* ¶¶ 288-299.

In addition, Plaintiffs seek to impose joint-and-several liability on the defendants, *id.* ¶¶ 253, and request punitive damages, *id.* ¶¶ 341-44.

## ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the Court "must accept non-conclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief."[2] *Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014). "A claim is plausible on its face if the plaintiff pleads factual

---

[2] Internal quotation marks, alterations, and citations are omitted throughout. Unpublished authorities are attached as Exhibit 1.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 567 (6th Cir. 2015). The complaint, then, "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). Even though Rule 12(b)(6) demands sufficient facts, "a complaint must still comply with Rule 8(a), which prohibits excessively detailed, unnecessarily complicated, argumentative, and extraneous facts." *Universal Health Grp. v. Allstate Ins. Co.*, No. 09-12524, 2010 WL 2278618, at *3 (E.D. Mich. May 12, 2010). A complaint that fails to do so may be dismissed on that ground alone. *See, e.g.*, *Blake v. De Vilbiss Co.,* 118 F.2d 346, 347 (6th Cir. 1941) (affirming dismissal of a "prolix and indefinite" complaint under Rule 8).

Plaintiffs' complaint fails to provide the factual allegations necessary to satisfy Rule 12(b)(6), goes on at such length that it fails under Rule 8, and asserts claims that lack at least one "material element" as to the VNA entities. This complaint should be dismissed.

## I. Plaintiffs' complaint must be dismissed because it impermissibly and confusingly lumps the VNA defendants together.

"Basic pleading requirements dictate that a plaintiff must attribute factual allegations to particular defendants." *Sanford v. Detroit Pub. Sch.*, No. 14-11771, 2014 WL 1922722, at *6 (E.D. Mich. May 14, 2014). The reasons behind the

6

requirement are simple: "the purposes of plausibility, notice and gatekeeping, are best served by requiring plaintiffs to directly link an actual individual [defendant] with the alleged improper conduct." *VanZandt v. Oklahoma Dep't of Human Servs.*, 276 F. App'x 843, 849 (10th Cir. 2008). Thus, the "failure to isolate the key allegations against each defendant supports dismissal under the [plausibility] standards set forth in [*Bell Alt. Corp. v.*] *Twombly* [, 550 U.S. 544 (2007),] and [*Ashcroft v.*] *Iqbal*[, 556 U.S. 662 (2009)."* *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 CIV. 2837 KBF, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012); *see also Laster v. Pramstaller,* No. 08-CV-10898, 2008 WL 1901250, at *2 (E.D. Mich. Apr. 25, 2008) ("A complaint that fails to state the specific acts of the defendant which violated the plaintiff's rights fails to meet the notice requirements of Federal Rule of Civil Procedure 8(a).").

In a variety of contexts, then, courts in this Circuit have stressed that a complaint's allegations should not run in an undefined fashion against a mish-mashed group of defendants. *See, e.g.*, *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (holding that *Bivens* claim failed where the complaint was "a generalized pleading that referred to all defendants generally and categorically"); *Total Benefits*, 552 F.3d at 436-37 (same in antitrust context); *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015) (same in RICO context); *McKinney v. Misico Investments, LLC*, No. 11-10467, 2011 WL 5244956, at *3

(E.D. Mich. Nov. 3, 2011) (same in consumer lending context).  This case should be held to be no different.

Rather than identify the separate acts that each defendant is alleged to have undertaken, however, the complaint here lumps all the VNA entities together with Veolia Environnement, S.A., and then lumps this mass in with other defendants in confusing ways.  *See* Compl. ¶ 61 (defining "Veolia" as a French corporation and three Veolia domestic entities, VNA Inc., VNA LLC, and VWNAOS).  That strategy makes it impossible to discern the critical "who" and "what" behind the complaint's allegations.  In certain early allegations, Plaintiffs also define "Veolia" to mean *only* "Veolia North America" or "Veolia North America LLC," seemingly excluding VE and perhaps others.  *Id.* ¶¶ 4, 32.  Thus, these early allegations seem to contradictorily allege that Veolia North America—whether that be Veolia North America, Inc. or Veolia North America, LLC—acted alone.  *Compare id.* ¶ 4 (Flint engaged … Veolia North America (Veolia)…), *with id.* ¶¶ 61, 117 (defining "Veolia" to mean all four Veolia-related entities and then alleging that "the City engaged Veolia's services").  In other allegations, Plaintiffs group the VNA entities with other unrelated parties.  For instance, in several paragraphs, "Veolia" is alleged to have acted in apparent coordination with "LAN," but Plaintiffs never explain exactly how that is so.  Several allegations just allege things against "Defendants."  Such allegations are unhelpful.  *See Magluta v. Samples,* 256 F.3d

1282, 1284 (11th Cir. 2001) (condemning a complaint that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged").

The rule against lumping separate parties together like this holds even when a plaintiff attempts to lump together related corporate entities. "Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995). Because corporate entities act separate and apart, a plaintiff cannot rely on a sloppy definition within the complaint to render them one and the same. *See, e.g.*, *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 423 (4th Cir. 2015) ("The fact that two separate legal entities may have a corporate affiliation does not alter [the] pleading requirement to separately identify each defendant's involvement[.]").[3] Instead, a plaintiff needs to allege some form

---

[3] *See also M2M Sols. LLC v. Telit Commc'ns PLC,* No. CV 14-1103-RGA, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015) (dismissing patent claim where "Plaintiff refer[red] to the two Defendants as 'Telit,' as if both Defendants were one entity"); *Ascension Health v. Am. Int'l Group, Inc.*, No. 08 Civ. 7765(PGG), 2009 WL 2195916, *2 (S.D.N.Y. July 23, 2009) (granting motion to dismiss where "the Amended Complaint … simply lump[ed] AIG with its subsidiary National Union, . . . and impl[ied] that they acted collectively"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) ("[G]eneral allegations as to all defendants, to 'Japanese defendants,' or to a single corporate entity such as 'Hitachi' [are] insufficient to put specific defendants on notice of the claims against them.").

of alter ego liability, veil piercing, or the like to open the door to this sort of group pleading. *See Rymal v. Baergen*, 686 N.W.2d 241, 252 (Mich. Ct. App. 2004) (explaining that, to dispense with separate corporate forms, a plaintiff needs to prove—among other things—that "the corporate entity ... [is] a mere instrumentality of another individual or entity"). Here, however, Plaintiffs allege only that VE is, "[u]pon information and belief, … the parent corporation of [the other three Veolia defendants]." Compl. ¶ 30. Plaintiffs do not discuss the relationship between the other defendants, let alone allege that any of these companies were all one and the same.

Lacking particular allegations, the complaint should be dismissed.[4]

---

[4] Should the Court decide not to dismiss Plaintiffs' complaint, it should at least order Plaintiffs to provide a more definite statement. When a complaint is "vague or ambiguous," such that a party can't reasonably respond, the Court can order the pleading party to provide "a more definite statement of a pleading." Fed. R. Civ. 12(e); *see also Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 228 (6th Cir. 2005). A complaint that groups defendants together like this is exactly the sort of vague or ambiguous complaint contemplated by Rule 12(e). *See Berna v. City of Detroit*, No. 2:05CV74521, 2006 WL 901260, at *2 (E.D. Mich. Feb. 15, 2006) (granting motion for more definite statement as to complaint that did not identify which defendants engaged in which acts); *Bradly v. Milliken*, 411 F. Supp. 937, 942 (E.D. Mich. 1975) (same). That is especially so where, as here, a plaintiff creates a defined group—like "Veolia"—but then inconsistently uses that collective term in her complaint. *See e.g.*, *In re Appalachian Fuels, LLC*, No. 09-10343, 2012 WL 4059948, at *5 (Bankr. E.D. Ky. Sept. 14, 2012) (granting motion for more definite statement where the complaint used a variety of potentially inconsistent descriptions of grouped defendants). Plaintiffs must be made to correct these problems if the VNA entities are to be able to draft a meaningful answer.

## II.     Plaintiffs' complaint must be dismissed because it is neither "short" nor "plain."

Rule 8 sets out another straightforward—though oft forgotten—requirement for complaints: in addition to a jurisdictional statement and a demand for relief, a complaint must include "a *short and plain* statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "Each allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(e).  "What constitutes a short and plain statement must be determined in each case on the basis of the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information and a number of other pragmatic matters."  *Hearne v. Manpower of Indiana, L.P.*, No. 15-12113, 2015 WL 10353133, at *3 (E.D. Mich. Nov. 23, 2015).  But even "in the context of a multiparty, multiclaim complaint[,] each claim should be stated as succinctly and plainly as possible even though the entire pleading may prove to be long and complicated by virtue of the number of parties and claims."  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 (3d ed. 2004).

The claims in a complaint should be succinctly stated because the complaint's function is to provide fair notice.  "Unnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Brown v. Caruso*, No. 1:13-CV-12475, 2013 WL 5423708, at *1 (E.D. Mich. Sept.

26, 2013) (dismissing a 65-page, 173-paragraph complaint).   Put differently, "unnecessary prolixity and surplusage obscures, rather than clarifies[.]"  *Mich. Paralyzed Veterans of Am. v. Charter Twp. of Oakland*, No. 14-14601, 2015 WL 4078142, at *2 n.3 (E.D. Mich. July 2, 2015) (describing a "68-page Complaint" as "a far cry from being a 'short and plain statement'").  That lack of clarity can have lasting effects over the life of the case.  Defendants will incur significant expense in responding to the complaint, while courts will struggle to shape discovery, write pretrial orders, and even manage trial in the face of a muddled complaint.  *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994) (characterizing a 119-page, 385-paragraph complaint as an "egregious violation of Rule 8(a)"); *accord In re Parmalat Sec. Litig.*, 414 F. Supp. 2d 428, 442 (S.D.N.Y. 2006) (decrying the prolixity of a complaint and observing that, if the "case ever were tried to a jury, the potential for confusion and the difficulties of comprehension would be epic in proportions").

At 125 pages and 440 separate allegations, Plaintiffs' complaint here is neither succinct, nor "short," nor "plain."  "The sheer volume and repetitiveness of Plaintiffs' complaint raises Rule 8 concerns[.]"  *Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 806 (N.D. Ill. 2014) (describing a 127-page complaint).   Identical allegations about root cause analysis, ferric chloride, corrosion control, de-icing, and others appear numerous times.  *See Hearne*, 2015 WL 10353133, at *4

(dismissing a complaint under Rule 8 where, among other things, it was repetitive). The complaint is also "replete with lengthy, argumentative assertions such as are more appropriately reserved for jury summation." *Feeney v. Mego Mortgage Corp.*, 45 F. Supp. 2d 1356, 1357 (N.D. Ga. 1999). The situation in Flint, the reader is told, was like "gasoline" and a "match." Compl. ¶ 8. A "root cause analysis" is akin to diagnosing the cause of "chest pains." *Id.* ¶ 122. A particular treatment chemical is "equivalent" to "battery acid." *Id.* ¶ 160. And so on. Plaintiffs further offer a number of irrelevant or immaterial "factual" allegations. Plaintiffs need not tell us, for example, what "leading scientific journals … in the late nineteenth century" said. *Id.* ¶ 144. And Plaintiffs pile on by block quoting from a variety of third party sources, all without ever making clear whether Plaintiffs *allege* the facts contained within those quotes. Such "allegations" leave the defendant to rebut something approaching a literature review.

Further, Plaintiffs' complaint is a "quintessential 'shotgun pleading,'" *Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 720 (E.D. Mich. 2005), as it "contains several counts, each one incorporating by reference the allegations of its predecessors[.]" *Lawson-Brewster v. River Valley Sch. Dist.*, No. 406CV-58, 2008 WL 1820908, at *26 (W.D. Mich. Apr. 22, 2008). Plaintiffs have thus created "a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Id.* at *26.

13

Given the many repetitive and irrelevant allegations that fill Plaintiffs' complaint, their complaint should be dismissed.

## III. Plaintiffs fail to state a claim under 42 U.S.C. § 1983 because such claims are preempted and are not proper against purely private actors like the VNA entities.

### A. The Safe Drinking Water Act preempts Plaintiffs' Section 1983 claims.

Ignoring the rule against redundant allegations, *see* Fed. R. Civ. P. 12(f), Plaintiffs' complaint alleges time and time again that Flint's public water system delivered unsafe water. *See, e.g.*, Compl. ¶¶ 1, 3, 8, 11. Whatever else may be said of this pleading, it makes clear that Plaintiffs intend to allege in some way that a public system delivered unsafe water to them. Indeed, Plaintiffs even invoke the Safe Drinking Water Act ("SDWA") and the Lead and Copper Rule, a regulation promulgated under the SDWA. *See* 42 U.S.C. §§ 300f *et seq. See* Compl. ¶¶ 3, 5, 139, 140, 147, 170, 207-12, 217-21, 224, 329.

Where that is the case, a plaintiff's sole federal remedy is under the SDWA, which preempts all other federal claims, regardless of how they are cast. *See Matoon v. City of Pittsfield*, 980 F.2d 1, 3-6 (1st Cir. 1992). Plaintiffs here attempt to frame their claims as constitutional ones brought under 42 U.S.C. § 1983. No matter the label, these drinking-water-focused claims are preempted, and must therefore be dismissed. *See Boler v. Early*, No. 16-10323, 2016 WL 1573272, at *3 (E.D. Mich. Apr. 19, 2016) (O'Meara, J.).

14

*Matoon* and *Boler* are both on all fours with this case, and both make obvious that the SDWA preempts these claims. In *Matoon*, the First Circuit held that the enactment of the SDWA occupied the field of public drinking water regulation, evincing "a clear congressional intention to entrust the regulation of public drinking water systems to an expert regulatory agency rather than the courts." 980 F.2d at 4-5. The SDWA's enforcement scheme being sufficiently comprehensive, the Congressional intent to preempt relief under the CRA was also clear. *Id.* at 5-6. Accordingly, the plaintiff's federal common law nuisance claim, and 42 USC §1983 claim, were both found to be preempted, and the Court held that the plaintiff's "only actionable federal claim arose under the SDWA." *Id.* at 6. *Boler*, meanwhile, was another suit arising "out of the water contamination crisis in Flint, Michigan." 2016 WL 1573272, at *1. In *Boler*, as here, the plaintiffs sought to frame a case for violation of 42 U.S.C. §1983. This Court held that claim preempted, finding that, regardless of how their legal theories were framed in their complaint, the crux of the plaintiffs' constitutional claims was that they had been deprived of safe and potable water, and these are allegations addressed by EPA regulations promulgated under the SDWA. *Id.* at 3.

Thus, "[t]he SDWA preempts all other forms of federal relief for a violation of the SDWA." *Ford v. California*, No. 1:10-CV-00696-AWI, 2013 WL 1320807, at *3 (E.D. Cal. Apr. 2, 2013); *see also Jenkins v. Pac. Gas & Elec. Co.*, No.

EDCV161066GHKKK, 2016 WL 3129611, at *3 (C.D. Cal. June 2, 2016) (same).

As in *Boler* and *Matoon*, Plaintiffs' claims under 42 U.S.C. § 1983 are preempted

and therefore more be dismissed.[5]

### B.   Plaintiffs' Section 1983 claims fail because the VNA entities did not act under color of state law.

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a

violation of a right secured by the federal Constitution or laws and must show that

the violation was committed by a person acting under color of state law." *Flanory*

*v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010).   Yet Plaintiffs do not allege that any

VNA entity acted under color of state law, nor can they.   According to Plaintiffs,

the City of Flint contracted with a private company.   The services that private

company provided do not qualify as state action.   *See, e.g.*, *Bowman v. City of*

*Franklin*, 980 F.2d 1104, 1108 (7th Cir. 1992) ("The mere fact that [the defendant

entity] acted as consulting engineers on this project is insufficient to establish state

---

[5] If the Court determines to dismiss these federal claims but permit one or more of the remaining state law claims to move forward, it should retain jurisdiction over the state claims.   Under the Class Action Fairness Act, there is a federal jurisdictional basis for the state claims.   28 U.S.C § 1332(d)(2).   Even absent that, this Court would have discretion to retain supplemental jurisdiction over this claim.   *See* 28 U.S.C. §1367(a) & (c)(3).   That discretion should be exercised here. Other cases involving the Flint water crisis are currently pending before this Court, and will remain so.   These cases all involve a common nucleus of operative facts and lend themselves to consolidated discovery and pretrial procedures.   *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (listing factors that suggest when a court should exercise supplemental jurisdiction).

action."); *Roman Catholic Diocese of Rockville Centre v. Incorporated Village of Old Westbury*, No. 09 CV 5195(DRH)(ETB), 2011 WL 666252, at *7 (E.D.N.Y. Feb. 14, 2011) ("[N]umerous courts . . . have held that consultants merely providing advice to aid in municipalities' decisions are not engaging in state action for purposes of Section 1983 liability.").

As Plaintiffs acknowledge, the VNA entities are all private businesses. *See* Compl. ¶¶ 57-60 (describing the VNA entities' distinct corporate forms). They further allege that "Veolia" made recommendations concerning the water system. *Id.* ¶ 116. Critically, Plaintiffs do not allege that any VNA entity rendered services "under color of state law," let alone with sufficient factual content to support such conclusion. *See Lorenzi v. Lorenzi*, 44 F. App'x 683, 685 (6th Cir. 2002) (holding that the plaintiff could not maintain a § 1983 claim against persons whom the plaintiff did not allege acted under color of state law); *Hall v. Creech*, 17 F. App'x 270, 271 (6th Cir. 2001) ("A cognizable § 1983 claim was not raised with regarding to the remaining defendants, as they were not acting under color of state law.").

Although private parties can sometimes be held liable under § 1983, "[i]n order to be subject to suit under § 1983, a defendant's conduct must be fairly attributable to the state." *Bilder v. City of Akron*, 7 F.3d 232 (6th Cir. 1993). This means that the defendant must have "exercise[d] power possessed by virtue of state

law and made possible only because [he] is clothed with the authority of state law." *Id.* (internal quotation marks omitted). The Sixth Circuit recognizes three tests under which state action may be established: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test.[6] *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Plaintiffs' complaint does not allege sufficient facts under any of the three tests.

Under the *public function* test, the private actor must have been performing a function traditionally and exclusively reserved to the state. S*ee Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). The test is difficult to satisfy because, although states serve many traditional functions, very few are exclusively reserved. *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995). "Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action." *Chapman*, 319 F.3d at 833-34 (internal citations omitted). In fact, the Supreme Court has already

_____

[6] The Sixth Circuit has suggested a fourth test, the "entwinement" test. *See Marie v. Am. Red Cross*, 771 F.3d 344, 362 & n.6 (6th Cir. 2014). The test asks "whether the nominally private character of the private entity is overborne by the pervasive entwinement of public institutions and public officials in its compositions and works such that there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 364. Neither the State of Michigan nor the City of Flint held management positions within the Veolia entities. And "[t]he fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor." V*istein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009).

concluded that the public function test is not met when it comes to utility services. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974).

Here, Plaintiffs do not allege that any VNA entity was performing a public function, nor do they set forth any historical information from which a court could plausibly draw the inference that professional consulting regarding water treatment is a function traditionally and exclusively the prerogative of the state. *See Ellison v. Garbarino*, 48 F.3d 192, 196 (6th Cir. 1995); *see also Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (explaining that "the plaintiff bears the burden" of showing that "an action [is] traditionally reserved to the state"). If anything, the complaint's many allegations suggesting involvement in Flint's water system by private entities imply that consulting regarding the water system was not a public function.

Plaintiffs fare no better under the *state compulsion* and *nexus* tests. Plaintiffs have pleaded no facts that the state "exercise[d] such coercive power or provide[d] such significant encouragement, either overt or covert," that the actions of "Veolia" should be deemed that of the state. *Wolotsky*, 960 F.2d at 1335. Although Plaintiffs alleged that the City "engaged" "Veolia," Compl. ¶ 117, they plead no more than an ordinary contractual relationship, which does not bespeak "coercion" or compulsion." *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007) ("[A] plaintiff must allege and prove that state officials coerced or

19

participated in the company's decision-making[.]"). Quite the opposite: the complaint alleges that "Veolia" was hired to act as a consultant, operating independent from the City or the State in making its suggestions. *See* Compl. ¶ 116 (explaining that the City of Flint issued an invitation to bid for "Professional Water Consultant Services" involving an "evaluation" of the water system and "recommendations" for the City to implement).

Nor have Plaintiffs pleaded "a sufficiently close nexus" between the State of Michigan and "Veolia," such as "a customary or preexisting arrangement between them." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). A one-time contract for consulting services, as here, does not satisfy the nexus test. *See, e.g., S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007); *Simescu v. Emmet Cty. Dep't of Soc. Servs.*, 942 F.2d 372, 375 (6th Cir. 1991). There is not a sufficient nexus even where a private party is contracted by a city to *provide* a public utility, let alone make recommendations concerning one. *See Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007) (cable operator).

Lacking a state actor, the § 1983 claims should be dismissed. [7]

---

[7] There are other problems. Plaintiffs' allegations against the Veolia defendants center upon negligence, but not even "[g]ross negligence is … actionable under § 1983, because it is not arbitrary in the constitutional sense." *Lewellan v. Metro. Gov't of Nashville & Davidson Cty. Tenn.*, 34 F.3d 345, 351 (6th Cir. 1994). Further, although labelled as a "procedural due process" claim, Plaintiffs make two substantive due process claims in the Section 1983 count running against "Veolia," one premised on bodily integrity and the other premised on state-created property

## IV.   Plaintiffs cannot bring ordinary or gross negligence claims against the VNA defendants.

Plaintiffs further bring two counts alleging ordinary negligence and gross negligence.  Both of these claims are defective.

### A.   Plaintiffs' claim for ordinary negligence must be dismissed, as the claim implicates a professional relationship.

Where "a plaintiff asserts a negligence claim against a professional and the duty element of that claim stems from the professional-client relationship, the tort claim is for" professional negligence only—not for ordinary negligence.[8]  *City of Dearborn v. DLZ Corp.*, 111 F. Supp. 2d 900, 903–04 (E.D. Mich. 2000).  Put

---

rights.  *See* Compl. ¶ 228.  The substantive due process right to bodily integrity does not include the right to public drinking water free of alleged contaminants. *See Coshow v. City of Escondido*, 34 Cal. Rptr.3d 19, 31 (Cal. Ct. App. 2005); *cf. Concerned Citizens of Nebraska (CCN) v. U.S. Nuclear Regulatory Comm'n,* 970 F.2d 421, 426 (8th Cir. 1992) (finding no constitutional right to land free of radiation contamination).  And if the state-created property right is the right to water service, then that claim fails too—the Sixth Circuit has not held the provision of water and sewer services to be federally protected rights.  *See Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469, 1476 (6th Cir. 1993).  If this claim is a procedural due process claim, Plaintiffs must plead and prove that state remedies are inadequate.  *See Sproul v. City of Wooster,* 840 F.2d 1267, 1270 (6th Cir. 1988).  The many state claims that Plaintiffs bring in this very action serve as testimony to the adequacy of their remedies under state law.

[8]   The terms "professional negligence," "malpractice," and "professional malpractice" all amount to the same thing.  *See, e.g., Stephens v. Worden Ins. Agency, LLC,* 859 N.W.2d 723, 732 (Mich. Ct. App. 2014) ("professional negligence liability, *i.e.*, malpractice"); *see also Kloots v. Am. Express Tax & Bus. Servs., Inc.*, 233 F. App'x 485, 489 (6th Cir. 2007) (describing "plaintiffs' professional negligence claim" as "simply a malpractice claim by another name"). Ordinary negligence, simple negligence, or just "negligence" are also the same.

another way, if a claim arises from actions taken in "the course of a professional relationship" and raises questions of professional judgment "beyond the realm of common knowledge and experience," then the claim (however it is titled) sounds in professional negligence, not ordinary negligence. *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004); *accord Wang v. Health*, No. 15-cv-14403, 2016 WL 4073538, at *3 (E.D. Mich. Aug. 1, 2016); *Sturgis Bank & Trust Co. v. Hillsdale Cmty. Health Ctr.*, 708 N.W.2d 453, 461 (Mich. Ct. App. 2005). A good test is whether the jury would needs expert testimony to understand the relevant standards of care. *Lockwood v. Mobile Med. Response, Inc.*, 809 N.W.2d 403, 407 (Mich. Ct. App. 2011). And for more than a century, Michigan courts have recognized that actions against engineers are professional liability actions. *See Bayne v. Everham,* 163 N.W. 1002, 1008 (1917) (explaining, in a case against an engineering and architectural firm, that "the responsibility of an architect does not differ from that of a lawyer or physician"); *see also Ostroth v. Warren Regency, G.P., L.L.C.,* 687 N.W.2d 309, 313 (Mich. Ct. App. 2004) (describing the "statute of limitations applicable to *professional negligence claims* against … engineers" (emphasis added)).

Applying this standard, Plaintiffs' claim for ordinary negligence is precluded. Plaintiffs' Complaint reveals their understanding that "Veolia" functioned here as a water treatment "professional." *See, e.g.*, Compl. ¶¶ 4, 7-9.

22

They allege that "Veolia" and "LAN" were "engaged … to provide their professional opinion." *Id.* ¶ 112. The contract between Flint and VWNAOS confirms that the relevant contract was a professional relationship, as VWNAOS was called upon to "exercise independent judgment … in accordance with sound professional practices."[9] Ex. 2 at 8. To the extent that the VNA entities' conduct is to be measured against relevant standards, those standards will need to be provided by expert testimony concerning the standards of care ordinarily applied by other engineers. And Plaintiffs' claims undeniably arise out of the professional relationship, as all of them tie back to the contract between "Veolia" and the City of Flint. Thus, to the extent Plaintiffs attempt to proceed on a claim of negligence, as opposed to malpractice, that claim must be dismissed.

### B.    Plaintiffs cannot allege a stand-alone claim for gross negligence.

Plaintiffs also allege "gross negligence." In Michigan, "gross negligence" appears only in some very specific contexts. Perhaps most often, the concept is seen in "Michigan statutes that provide limited immunity to certain groups, but allow liability for gross negligence," such as in governmental immunity statutes.

---

[9] Because Plaintiffs' complaint refers to the City contract, and because it is central to Plaintiffs' claim, the Court may consider that as part of the pleadings. *See Gavitt v. Born,* 835 F.3d 623, 640 (6th Cir. 2016) (explaining that a court may consider "exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein"). The contract is attached as Exhibit 2.

*Xu v. Gay*, 668 N.W.2d 166, 170 (Mich. Ct. App. 2003). There are other examples, but none is apposite here.[10] But even when gross negligence is applicable, it is merely an "additional showing" that a party must make. *Jones v. Corr. Med. Servs., Inc.*, 845 F. Supp. 2d 824, 847 (W.D. Mich. 2012) (stating, in an immunity case: "Gross negligence here was not a separate claim, but an additional showing that plaintiff must make in order to impose liability on such a defendant.").

Plaintiffs, however, incorrectly attempt to bring a stand-alone claim of gross negligence in a non-applicable context. "[G]ross negligence is not an independent cause of action under Michigan law." *Buckner v. Roy*, No. 2:15-CV-10441, 2015 WL 4936694, at *8 (E.D. Mich. Aug. 18, 2015); *see also, e.g.*, *Van Buren v. Crawford Cty.*, No. 13-14565, 2014 WL 2217016, at *10 (E.D. Mich. May 29, 2014) ("Gross negligence is not recognized as an independent cause of action under Michigan law."); *Mallory v. City of Ferndale*, No. CIV. 10-10581, 2011 WL 891212, at *7 (E.D. Mich. Mar. 11, 2011) (same). Plaintiffs aren't trying to invoke

---

[10] A contractual waiver of liability is also barred from reaching "gross negligence." *Id.* Certain criminal cases use the concept, too. *See, e.g.*, *People v. Sherman*, 469 N.W.2d 19, 20 (Mich. Ct. App. 1991). Some statutes further provide for increased damages or extended statutes of limitations in some limited "gross negligence" cases. *See, e.g.*, Mich. Comp. Laws § 600.5839 (extending the statute of limitations for grossly negligent construction defects); Mich. Comp. Laws § 125.996 (providing for treble damages where a mobile-home manufacturer is grossly negligent).

some statutory enhancement premised on gross negligence, nor are they seeking to break through some immunity doctrine. They invoke the *definition* of gross negligence, but provide no particular basis for imposing liability because of it.

Even if gross negligence were a stand-alone claim, Plaintiffs would not state it here. "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012). Gross negligence "suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id.* Allegations that a defendant's conduct fell below "industry standards" do not support a claim for gross negligence. *See Xu*, 668 N.W.2d at 171. Yet here, Plaintiffs quite literally equate negligence with gross negligence, repeating their ordinary negligence claims and then adding conclusory allegations that the defendants' actions were done "recklessly, willfully, wantonly, and/or intentionally." Compl. ¶ 307. Thus, Plaintiffs fail to state any separate claim for gross negligence against the VNA entities.

**V.   Plaintiffs fail to state a claim for intentional infliction of emotional distress, as *none* of the required elements is adequately alleged.**

Plaintiffs also attempt to bring a claim for intentional infliction of emotional distress. "The Michigan Supreme Court has never adopted the tort of intentional infliction of emotional distress into Michigan jurisprudence," *Molnar v. Care House*, 574 F. Supp. 2d 772, 800 (E.D. Mich. 2008), but assuming that the cause of

action is a valid one under Michigan law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress," *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985). The complaint here lacks essential elements.

*First*, Plaintiffs fail to allege that the VNA entities engaged in "outrageous" conduct. It is not enough to say that the defendants acted with tortious or even criminal intent. *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999). Rather, to be considered "extreme and outrageous," the conduct in question must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Llewellyn-Jones v. Metro Property Group, LLC*, 22 F. Supp. 3d 760, 794 (E.D. Mich. 2014). The court must determine whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Roberts*, 422 Mich. at 603; *see also Doe v. Mills*, 536 N.W.2d 824, 834 (Mich. Ct. App. 1995) (explaining that the question of whether the conduct may reasonably be called outrageous is a question of law for the court).

Plaintiffs do not explain how the VNA entities' work as consultants to the City—work in which they evaluated certain data and then offered certain conclusions and recommendations—amounts to "outrageous" conduct under this

definition. It may well be that the actions of some involved in the Flint water crisis will rightfully be labeled "outrageous." But the focus here must be on the *VNA entities*' alleged conduct, and as to those entities, Plaintiffs describe an ordinary contract for advisory engineering services. No case under Michigan law has found a validly stated claim in circumstances like these. *Cf. Kahn v. Burman,* 673 F. Supp. 210, 217 (E.D. Mich. 1987) (finding that expert's preparation of report that was allegedly groundless did not arise to sufficient level of outrageous conduct). Even the negligent conduct that Plaintiffs attempt to allege will not suffice to establish a claim for intentional infliction of emotional distress. *See Merriweather v. Int'l Bus. Machs.*, 712 F. Supp. 556, 565 (E.D. Mich. 1987) ("[A]ssuming all of the above to be true, defendant's conduct amounts to mere negligence and does not constitute conduct which is outrageous in character, extreme in degree and goes beyond all bounds of decency such that it may be regarded as atrocious."). Quite the opposite. Michigan courts hold that, where "the alleged actions occurred during the course of a professional relationship" and the claim requires an examination of professional expertise or judgment, a plaintiff must bring a claim for professional negligence or malpractice, not intentional infliction of emotional distress. *See Lucas v. Awaad*, 830 N.W.2d 141, 151-52 (Mich. Ct. App. 2013) (dismissing an intentional infliction of emotional distress claim based on the same allegations supporting plaintiff's medical malpractice claim).

*Second*, Plaintiffs fail to allege in any non-conclusory way that the VNA entities either intentionally or recklessly engaged in conduct that caused Plaintiffs serious emotional distress.  Compl. ¶ 268.  When it comes to the VNA entities, in fact, the complaint says next to nothing about intent at all, sticking with things that these entities allegedly should have done but did not.  "Where the act complained of is one of omission rather than commission, it is not an intentional tort."  *Hobrla v. Glass*, 372 N.W.2d 630, 636 (Mich. Ct. App. 1985).

*Third*, Plaintiffs fail to articulate how the VNA entities' alleged actions caused Plaintiffs' emotional harm.  The City announced that they hired the VNA Defendants to "evaluat[e] all of the City's water treatment processes" on February 10, 2015.  Compl. ¶ 117.  Almost an entire year earlier, "on Apri1 25, 2014, Flint's water system [had] officially switched to the Flint River without implementing a necessary corrosion control protocol."  *Id.* ¶ 91.  Plaintiffs admit that prior to hiring "Veolia," "Michigan and the MDEQ *knew* at least as early as October 1, 2014, that one of the causes of the bacterial contamination was the existence of iron pipes in the City's water distribution system."  *Id.* ¶ 104.  In September 2014, "[i]n addition to a rise in the reported incidence of Legionnaires' disease, MDHHS first noted another potential problem related to Flint's water."  *Id.* ¶ 105.  In short, Plaintiffs themselves recognize that the harms arose long before "Veolia" arrived.

28

Accordingly, Plaintiffs' claim for intentional infliction of emotional distress must be dismissed.

## VI.   In merely repackaging their negligence claim, Plaintiffs fail to state a claim for negligent infliction of emotional distress.

Plaintiffs further bring a claim of negligent infliction of emotional distress that amounts to nothing more than an ordinary, unsupported claim of negligence. Compl. ¶ 273.  This tort is a relatively narrow one, permitted only in a few rare circumstances.   Michigan courts have refused "to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 720 (Mich. 1993); *see also Hesse v. Ashland Oil, Inc.*, 642 N.W.2d 330, 337 (Mich. 2002) (requiring that the mental disturbance cause "actual physical harm").  A plaintiff seeking to recover under this theory must also show that she was "present at the time of the accident or suffers shock fairly contemporaneous with the accident."  *Taylor v. Kurapati*, 600 N.W.2d 670, 693 (Mich. Ct. App. 1999).

Plaintiffs' complaint says very little.   It fails to address *any* of the requirements that differentiate negligent infliction of emotional distress in Michigan from negligence—and ordinary negligence is not enough to support a negligent infliction of emotional distress claim.  Plaintiffs do not attempt to say that they witnessed the VNA entities negligently injure or cause the death of

29

another person (contemporaneously or in real time).   They fail to allege any specific accident all, instead alleging exposure at an undefined time and place that can give rise to injuries developing over time.   Additionally, Plaintiffs' two-sentence recitation fails to describe an actual physical harm brought on because of the emotional distress caused by witnessing an injury to a third party.  It makes no mention of mental disturbance at all.   Thus, Plaintiffs' claim for negligent infliction of emotional distress must fail as well.

## VII.   Plaintiffs fail to state a nuisance claim because the VNA entities did not control the nuisance.

Michigan law recognizes both public and private nuisances.  "To prove private nuisance, a plaintiff must show substantial interference with the use and enjoyment of his land."  *Henry v. Dow Chem. Co.*, 772 N.W.2d 301, 328 (Mich. 2009).   "Public nuisance, on the other hand, requires proof of an unreasonable interference with a right common to all members of the general public."  *Id.* at 328 n.2.

As to both types of nuisance, "liability for damage caused by a nuisance turns upon whether the defendant was in control."  *Attorney Gen. ex rel. Dir. of Dep't of Nat. Res. v. Acme Disposal Co.*, 473 N.W.2d 824, 825–26 (Mich. Ct. App. 1991); *accord Sholberg v. Truman*, 852 N.W.2d 89, 94–95 (Mich. 2014) ("[T]his Court has consistently held that control is required in order to hold a defendant liable for a nuisance.").  Michigan courts have declined to find a defendant liable

for nuisance "where the defendant has not either created the nuisance, owned or controlled the property from which the nuisance arose, or employed another to do work which he knows is likely to create a nuisance." *McSwain v. Twp. of Redford*, 434 N.W.2d 171, 174 (Mich. Ct. App. 1988). So, for instance, a manager who knew that his employer was violating certain pollution statutes could not be held liable for nuisance where he had no "power and authority to correct the conditions which are deemed deleterious to the environment or the people of this state." *Acme Disposal*, 473 NW.2d at 825. Not even issuing a permit or regulating an activity—in other words, giving an imprimatur of approval—is enough to establish the required control. *See McSwain*, 434 N.W.2d at 174.

Here, Plaintiffs do not allege that any VNA entity was ever in control of the nuisance. The alleged nuisance derived from the City of Flint's water delivered through the City of Flint's distribution system. Once more, as Plaintiffs recognize, the City of Flint operated that system, not "Veolia." "Veolia" allegedly had the power only to make recommendations about how to operate that system, and "Veolia" is not alleged to have had the "power" or "authority" to determine whether they were accepted or rejected. Liability cannot attach in circumstances like that. *Cf. Gelman Scis., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993) ("Because a seller in a commercial transaction relinquishes ownership and control of its products when they are sold, it lacks the legal right to

abate whatever hazards its products may pose."); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 522 (Mich. Ct. App. 1992).  Further, Plaintiffs do not and cannot allege that any VNA entity "created" the alleged nuisance, as the condition had arisen long before "Veolia" allegedly came on the scene.  And no VNA entity is alleged to have employed anyone who then caused lead to enter the City of Flint's drinking water; as a party that was alleged to have acted as a mere consultant, "Veolia" would have had no power to do anything like that.

Lacking any colorable allegation of control, none of the VNA entities can be found liable for the condition here, and Plaintiffs' nuisance claim must be dismissed.

## VIII. Plaintiffs fail to state a claim for unjust enrichment because they never "enriched" a VNA defendant.

To sustain a claim for unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff, and (2) an inequity resulting to plaintiff from defendant's retention of the benefit.  *Dumas v. Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991).  In situations where the two elements are satisfied, the Court can imply a contract to prevent unjust enrichment.  *Martin v. East Lansing School Sch. Dist.*, 483 N.W.2d 656, 661 (Mich. Ct. App. 1992).  However, "a contract will be implied only if there is no express contract."  *Id.*

Plaintiffs cannot allege that the VNA entities received a benefit from Plaintiffs.  Plaintiffs assert that the VNA defendants were unjustly enriched when

32

they "received compensation for providing engineering services that did not satisfy their duties of professional responsibility."  Compl. ¶ 303.  But the "engineering services" to which Plaintiffs refer were solicited and purchased by the City.  *See* Compl. ¶¶ 4, 116-17.  And the relevant contract for services is unmistakably titled "City of Flint Contract with Veolia Water North America Operating Services, LLC."  *See* Ex. 2.  So, the only "benefit" that any VNA entity is alleged to have received—payment under the contract of $40,000—came from the City, not from Plaintiffs.  "[C]aselaw does not specifically state that the benefit must be received directly from the plaintiff, but these decisions make it clear that it must."  *Smith v. Glenmark Generics, Inc.*, USA, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014).  Without establishing that the VNA entities were unjustly enriched by Plaintiffs themselves, the claim fails.

## IX.  Plaintiffs cannot obtain punitive damages because no statute authorizes them in a case like this one.

Plaintiffs inappropriately ask this Court to award them punitive damages.  As to the VNA entities, the complaint remains rather unclear about which claims are meant to support a punitive damages award, although punitives are specifically mentioned in connection with Plaintiffs' due process claims.  Compl. ¶¶ 235, 299; *see also id.* ¶¶ 341-44.  Yet "punitive damages have been disfavored in Michigan for generations."  *Ass'n Research & Dev. Corp. v. CNA Fin. Corp.*, 333 N.W.2d 206, 211 (Mich. Ct. App. 1983).  Consequently, punitive damages "are generally

not recoverable in Michigan … [unless] they are expressly authorized by statute." *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006); *accord Gilbert v. DaimlerChrysler Corp.,* 685 N.W.2d 391, 400 (Mich. 2004). These statutory exceptions are relatively rare. *See Gilbert,* 685 N.W.2d at 400 n.8 (listing just three exceptions).

Section 1983 aside,[11] Plaintiffs do not and cannot cite any statutory provision that would entitle them to recover punitive damages in a case like this one. Instead, they merely refer to punitive damages at various points throughout their complaint and then list a series of conclusory labels for the defendants' alleged actions. *See, e.g.*, Compl. ¶¶ 343 (asserting that the defendants were engaged in "willful, wanton, malicious, and/or reckless conduct").

But Plaintiffs' claims are not of the sort that can justify punitive damages. Ordinary negligence claims don't support those damages. *See Burns v. Van Laan*, 116 N.W.2d 873, 877 (Mich. 1962) (refusing to follow a Georgia case allowing punitive damages in a negligence case, explaining: "[I]f Georgia permits recovery of punitive damages in negligence cases, so Georgia has that right; yet we liking

---

[11] Punitive damages may be awarded on a successful § 1983 "when the defendant willfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others." *Blair v. Harris*, 993 F. Supp. 2d 721, 733 (E.D. Mich. 2014). But other than a few conclusory legal labels, Plaintiffs offer nothing to suggest that level of intent or animus is present here.

our own policy of compensatory damages need [not] follow her guide.");
*Jackovich v. Gen. Adjustment Bureau, Inc.*, 326 N.W.2d 458, 464 (Mich. Ct. App. 1982) (holding that punitive damages instruction was inappropriately given in negligence action). To the extent that Plaintiffs pursue punitive damages from their trespass claims, no Michigan authority provides for damages there, either. In fact, the Legislature repealed the only statute that provided a basis for punitive damages tied to trespass more than fifty years ago. *See* Mich. Comp. Laws § 692.451 (repealed 1963) (permitting punitive damages for willful and wanton trespass). And not one Michigan case, statute, rule, or the like even hints at a right to punitive damages for nuisance.

Plaintiffs cannot state a claim for punitive damages.

## X.  Plaintiffs cannot request that joint-and-several liability be imposed on "Veolia" because that doctrine has been effectively abolished in Michigan.

Plaintiffs' complaint further attempts to revive a doctrine that the Legislature largely eradicated twenty years ago: joint and several liability. "As part of its tort reform legislation, the Michigan Legislature abolished joint and several liability and replaced [it] with fair share liability." *Smiley v. Corrigan*, 638 N.W.2d 151, 153 (Mich. Ct. App. 2001); *accord K.S. v. Detroit Pub. Sch.,* 153 F. Supp. 3d 970, 979 (E.D. Mich. 2015). "The significance of the change is that each tortfeasor will pay only that portion of the total damage award that reflects the tortfeasor's

percentage of fault." *Smiley*, 638 N.W.2d at 153; *see also* Mich. Comp. Laws § 600.2956 (explaining that liability in an action based on tort or another legal theory seeking damages for personal injury is "several only"); *id.* § 600.6304 (requiring that fault be apportioned among tortfeasors). A few narrow realms of the law still permit joint and several liability. *See, e.g.*, Mich. Comp. Laws § 600.6304(6) (medical malpractice); *id.* § 600.6312 (certain specific crimes). But those examples are the decided exception to the otherwise pervasive rule.

Plaintiffs never explain why this extinct doctrine should be applied here. Instead, they say without explanation that the defendants are named "jointly and severally." Compl. ¶¶ 32, 253. As with their claim for punitive damages, they have neither cited any statutory exception that might permit those damages nor even acknowledged the need for that sort of an exception. Mich. Comp. Laws § 600.2956 precludes the liability that Plaintiffs pursue. Accordingly, any claim for joint and several liability should be dismissed.

## XI. Plaintiffs' declaratory judgment claim fails for lack of a relevant controversy between the VNA entities and Plaintiffs.

Plaintiffs also seek a declaratory judgment against all defendants—the VNA entities included—that "the Government Defendants have operated and continue to operate a Water System that is not in compliance with the SDWA and LCR." Compl. ¶ 329. Although styled as a separate count, "declaratory and injunctive relief are remedies, not causes of action." *Cruz v. Capital One, N.A.*, No. 15-

13543, 2016 WL 3522321, at *5 (E.D. Mich. June 28, 2016); *see also Best v. Ocwen Loan Servicing, LLC,* No. 15-CV-13007, 2016 WL 125875, at *4 (E.D. Mich. Jan. 12, 2016) (same).  The count could be dismissed for that reason alone. But more importantly, "the federal courts may exercise jurisdiction only if the parties have presented a live case or controversy."  *Commodities Exp. Co. v. Detroit Int'l Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012).  Such a controversy exists only if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.*  But the VNA entities and Plaintiffs have no present dispute over the compliance status of the City of Flint's water system; the VNA entities do not operate that system, and any questions of compliance must be directed to the governmental entities that do.

Even if there were a live controversy, the Declaratory Judgment Act provides *discretionary* jurisdiction.  "In assessing the district court's discretion, this court generally considers five factors: (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly

encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective." *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 453 (6th Cir. 2003). The requested judgment would not resolve any controversy between Plaintiffs and the VNA entities. It would not serve any useful purpose, as it would not clarify future legal duties. *See AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004) ("The 'useful purpose' served by the declaratory judgment action is the clarification of legal duties for the future, rather than the past harm a coercive tort action is aimed at redressing."). And there are obvious alternative remedies, including the sort of SDWA citizen suit that Plaintiffs themselves have attempted to bring here. *See Katzenbach v. McClung,* 379 U.S. 294, 296 (1964) ("[E]ven though Rule 57 of the Federal Rules of Civil Procedure permits declaratory relief although another adequate remedy exists, it should not be granted where a special statutory proceeding has been provided."). Thus, the declaratory judgment count should not proceed against the VNA entities.

## XII. If Plaintiffs intend to assert a trespass claim against the VNA entities, that claim fails, too.

Lastly, Plaintiffs' complaint contains a trespass claim, but it's not clear against whom they mean to bring it. The count's title states that it is brought against the Governmental Defendants, while the allegations are just against "Defendants." Regardless, it does not work.

"Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 222 (Mich. 1999).   Thus, when Plaintiffs assert a trespass claim in this state, they must establish a "significant physical intrusion" that does more than "become a part of the ambient circumstances of that space." *Id.* at 223.

Particles and other microscopic items do not meet the "tangibility" requirement by becoming a part of the ambient space. *Id.* at 219 ("[R]ecovery in trespass for dust, smoke, noise, and vibrations was generally unavailable because they were not considered tangible or because  they came to the land via some intervening force such as wind or water.").   So, for instance, Plaintiffs do not allege a cognizable trespass claim when they allege that their water has been contaminated with particles. *See, e.g.*, *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1345–46 (W.D. Mich. 2011) ("Michigan does not recognize claims of trespass where groundwater contamination is the only alleged injury."); *Postma v. Cty. of Ottawa*, No. 243602, 2004 WL 1949317, at *9 (Mich. Ct. App. Sept. 2, 2004) ("[C]ontaminants in groundwater, even more so than dust that settles on land, simply become a part of the ambient circumstances of that space and will not support an action in trespass."); *cf. Olden v. LaFarge Corp.*, 203 F.R.D. 254, 265–

39

66 (E.D. Mich. 2001) (explaining that when plaintiffs are "alleging trespass by means of toxic pollutants and air contaminants," they fail to state a claim).

In this case, Plaintiffs allege only that intangible particles invaded their property. But like the air pollutants and groundwater contaminants in other cases, Plaintiffs' allegations do not identify any tangible object that changes the ambient space. The lead particles that are alleged to be in the City of Flint's water are too intangible to state a claim. They cannot be felt by the senses. So, to the extent that there is any trespass claim against a VNA defendant, it must be dismissed.

## CONCLUSION

In sum, this complaint is insufficient in several respects. It should be dismissed.

Respectfully submitted,

**CAMPBELL, CAMPBELL, EDWARDS & CONROY P.C.**

By: /s/ James M. Campbell
James M. Campbell
John A. K. Grunert
One Constitution Center, 3rd Floor
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
jgrunert@campbell-trial-lawyers.com

**BUSH SEYFERTH & PAIGE PLLC**

By: /s/ Cheryl A. Bush
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
3001 W. Big Beaver Rd. Suite 600
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: January 23, 2017

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 23, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.


By:   /s/ Michael R. Williams
      Michael R. Williams (P79827)
      williams@bsplaw.com