# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases          Case No 5:16-cv-10444

                                         Hon. Judith E. Levy

                                         Mag. Judge Mona K. Majzoub
_____/

## CITY DEFENDANTS' JOINT STATEMENT
## OPPOSING PRELIMINARY DISCOVERY

## EXHIBIT E: *SNOW V. ATOFINA CHEMS., INC.*, NO. 01-72648, 2003 U.S. DIST. LEXIS 27295 (E.D. MICH. MAR. 31, 2003)

Positive
As of: September 28, 2017 8:28 PM Z

# Snow v. Atofina Chems., Inc.

United States District Court for the Eastern District of Michigan, Southern Division

March 31, 2003, Decided ; March 31, 2003, Filed

Case No: 01-72648

**Reporter**
2003 U.S. Dist. LEXIS 27295 *

JACQUELINE SNOW, ET AL, Plaintiffs, vs ATOFINA CHEMICALS, INC., Defendants.

**Subsequent History:** Class certification denied by Snow v. Atofina Chems., Inc., 2004 U.S. Dist. LEXIS 29581 ( E.D. Mich., Mar. 18, 2004)

## Core Terms

chemical, damages, class action, evacuation, class member, certification, injuries, proposed class, common issue, predominance, Plaintiffs', issues, class certification, member of the class, exposure, individual issues, question of law, typicality, explosion, medical monitoring, rule requirements, commonality, individuals, causation, zone, personal injury, potential claim, prerequisites, merits, representative party

**Counsel:** [*1] For Jacqueline Snow, Plaintiff: Jason J. Thompson, Charfoos & Christensen, Detroit, MI; Wade A. Myers, Wade A. Myers Assoc., Plymouth, MI.

For Atofina Chemicals, Incorporated, Defendant: John E.S. Scott, Rebecca L. Takacs, Dickinson Wright, Detroit, MI.

For Joe Orta, Dave Flaishans, Elizabeth Adkins, Dave Thomas, Plaintiffs: Jason J. Thompson, Lawrence S. Charfoos, Charfoos and Christensen, Detroit, MI; Peter W. Macuga, II, Steven D. Liddle, Macuga & Liddle, Detroit, MI; Wade A. Myers, Wade A. Myers Assoc., Plymouth, MI.

**Judges:** Victoria A. Roberts, United States District Judge.

**Opinion by:** Victoria A. Roberts

## Opinion

ORDER DENYING PLAINTIFFS' MOTION FOR CERTIFICATION OF CASE AS CLASS ACTION

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Certification of Case as a Class Action. For the reasons stated below, the Court DENIES Plaintiffs' Motion.

### II. BACKGROUND

Plaintiffs Jacqueline Snow, Joe Orta, Dave Flaishans, Elizabeth Adkins and Dave Thomas filed this action on behalf of themselves and others similarly situated. [1] Plaintiffs seek both monetary and injunctive relief against Defendant Atofina [*2] Chemicals, Inc. ("Atofina"), for chemicals emitted on July 14, 2001 during a chemical explosion at Defendant's facility.

Defendant's facility is located on West Jefferson in the City of Riverview. Plaintiffs seek to certify a class defined as:

> [A]ll persons or entities having claims for damages or injuries caused by the chemical explosion at Defendant's facility on July 14, 2001, and who or which own property in the communities of Grosse Ile, Riverview, Wyandotte[,] Gibraltar and Trenton, or were present at the time of the explosion. [2]

Pl Mot. at 1. Plaintiffs' prayer for damages includes: 1) loss of use and enjoyment of home and property; 2) mental and emotional anguish; 3) diminution of market

---

[1] Plaintiff Snow filed the initial complaint in this matter. She subsequently amended her complaint to add seven Plaintiffs. Thereafter, three of Plaintiffs voluntarily dismissed their claims, leaving the five Plaintiffs named herein.

[2] Excluded from the class are governmental entities, Defendant and its officers and directors (and their families), affiliates, heirs, successors, assigns, parents and subsidiaries.

value; 4) personal property damage; 5) real property damage; 6) **[*3]** exemplary damage; 7) medical monitoring; and 8) injunctive relief.

The underlying facts are not materially in dispute. At its production plant in Riverview, Atofina produces chemicals used in the production of a range of products, including pharmaceutical products, agricultural products, water treatment products, photographic chemicals and electronic components. At Defendant's facility at approximately 3:45 a.m. on July 14, 2001, a pipe connected to the discharge valve at the top of a rail car containing approximately 147,750 pounds of methyl mercaptan failed, causing a leak of liquid mercaptan. Shortly thereafter, vapors from the leaking rail car ignited and ultimately resulted in a violent eruption, creating a 200 foot fire column. Firefighters responded and determined that it was safest to allow the fire to burn itself out. The **[*4]** fire burned for several hours until approximately 8:30 a.m.. [3]

At approximately 6:30-7:30 a.m., another rail car containing chlorine began leaking as a result of the fire and released approximately 26,000 - 27,000 pounds of chlorine. Per Defendants, the chlorine leak was contained by 2:50 p.m.. Defendants further contend that the large amounts of water poured over the accident site substantially diluted the chlorine before it got off-site.

Because Defendant's facility is located in proximity to several residential communities, local governmental agencies decided to evacuate certain neighborhoods. Included in the evacuation were Grosse Ile, Wyandotte, Riverview and Trenton. Per Defendant, the largest evacuation area was in Grosse Ile, where the evacuation zone stretched from the northern part of the island to Ferry Road in the south. The other areas evacuated were bordered on the north by Eureka Road in Wyandotte, on the south by West **[*5]** Road in Trenton, and on the west by the railroad tracks that run through Wyandotte, Riverview and Trenton. Defendant contends that the evacuation boundaries expanded over the course of the morning to include certain areas, solely as a precautionary measure, based on concerns about weather or accident condition changes. [4]

The evacuation orders were in effect from approximately 6:30 a.m. until 3:00 p.m.. Based upon newspaper reports, the parties estimate that approximately 2,000 people were evacuated, including 400 households in Grosse Ile and 40 households in Riverview and Wyandotte.

**[*6]** Per Plaintiffs, the methyl mercaptan had a distinct rotten cabbage odor and caused irritation of the skin, eyes, mucous membranes, headaches, nausea, chemical burns in the esophagus and stomach and other health related issues. Plaintiffs assert that numerous individuals found it necessary to seek medical attention.

Plaintiffs Snow, Orta, Adkins and Thomas were all in one of the evacuation zones. Plaintiff Flaishans was not in one of the zones, but claims that he was physically affected by the methyl mercaptan and other airborne chemicals. Plaintiffs indicate that over 200 individuals who have allegedly suffered similar injuries have expressed an interest in joining this lawsuit. See list at Pl Exh 16. Defendant contends, however, that only 31 of the people identified by Plaintiffs live in one of the evacuated areas.

Plaintiffs assert claims of negligence, nuisance, medical monitoring and strict liability. Defendant argues that Plaintiffs have not precisely specified either their alleged injuries or damages. Pointedly, Defendant contends that contrary to their claims that they seek three categories of damages-evacuation, diminution in property value and emotional distress-Plaintiffs **[*7]** identified 6 categories and 29 kinds of injuries and damages in their Preliminary Damage Statement. Def Exh 13.

Defendant further says that Plaintiffs' definition of the class is overbroad. Although only approximately 2,100 people and portions of the identified communities were evacuated, Defendant argues that Plaintiffs' definition of the class seeks to include all 80,000 members of the five communities. [5]

## III. APPLICABLE LAW

The question of whether to grant a motion for class certification must be answered by reference to *Fed. R.*

---

[3] Plaintiffs assert that the fire was not extinguished until 11:30 a.m..

[4] Specifically, Defendant contends that Trenton was evacuated based on a weather forecast predicting a change in wind direction; some areas upwind of the accident site were evacuated out of concern that one or more of the chemical rail cars in the vicinity might overheat and explode; and, Grosse Ile's evacuation zone was expanded three times the local officials' emergency guidelines because of strong odors in the initial evacuation zone.

[5] See illustration of the proposed class area at Def's Mot., p. 13.

Civ. P. 23. In relevant part, that Rule states:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative **[*8]** parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . .
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of **[*9]** the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Rule 23 includes two additional provisions that are relevant. First, under Rule 23(c)(1), an order granting class action status "may be conditional, and may be altered or amended before the decision on the merits." Secondly, Rule 23(c)(4) allows a court to grant class action status only to particular issues, and to divide a class into subclasses:

> (4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues, or (B) a class may be divided into subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly.

The party seeking class certification has the burden of demonstrating that all of the prerequisites of Rule 23(a) are met, and that the case falls within one of the subcategories listed in Rule 23(b). In re American Medical Systems, Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). And, although a district court has broad discretion to grant class certification after conducting a "rigorous analysis" of the prerequisites of **[*10]** Rule 23, the decision must be made within the framework established in the Rule. Id., quoting General Tel. Co. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982), and Gulf Oil Co. v. Bernard, 452 U.S. 89, 100, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

Importantly, an analysis of the Rule 23 prerequisites should be the extent of the Court's inquiry. "[W]hen determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits." Weathers v. Peters Realty Corp., 499 F.2d 1197, (6th Cir. 1974). The *Weathers* court relied upon Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177-178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974), which held:

> We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action. . . . In short, we agree with Judge Wisdom's conclusion in Miller v. Mackey International, 452 F.2d 424 (CA5 1971), where the court rejected a preliminary inquiry into the merits of a proposed class action: 'In determining **[*11]** the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'

Id., at 427.

A. Rule 23(a)

A Court is required to analyze each of the Rule 23(a) factors. Those factors are commonly referred as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. The relevant rules for each of these factors is set forth below.

1. Numerosity

Rule 23(a)(1) sets forth the numerosity requirement, requiring the class to be "so numerous that joinder of all

members is impracticable." Although there is no magic number that determines when joinder of all members would be impracticable, "[w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." American Medical Systems at 1079. Nonetheless, class sizes that are relatively small have been held to suffice.

> In fact, circuit precedent has recognized class certification in classes with as few as eighteen members, [Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984)], **[*12]** (citing Cypress [v. Newport News General and Nonsectarian Hospital Ass'n, 375 F.2d 648, 653 (4th Cir.1967)](eighteen members)), and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable. In Re Kirschner Medical Corporation Securities Litigation, 139 F.R.D. 74, 78 (D.Md.1991) (citing Dameron v. Sinai Hospital of Baltimore, Inc., 595 F.Supp. 1404, 1408 (D.Md.1984)).

Rodger v. Electronic Data Systems Corp., 160 F.R.D. 532, 535-536 (E.D.N.C. 1995). In Brady, supra, the court held that "74 persons is well within the range appropriate for class certification." Brady at 145.

At the stage of the proceedings in which class certification is being considered, it is not necessary for the Court to know the precise number of class members. Instead, the Court may rely upon reasonable inferences drawn from the known facts. American Medical Systems at 1079.

## 2. Commonality

Rule 23(a)(2) mandates that, in order for a class to be certified, there must be "questions of law or fact common to the class." This factor recognizes the judicial **[*13]** efficiency that class action litigation is designed to foster:

> The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' Califano v. Yamasaki, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 2557- 2558, 61 L.Ed.2d 176. Class relief is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class.' Id., at 701, 99 S.Ct., at 2557. For in such cases, 'the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23.' Ibid.

General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

Of significance is the fact that, to meet the commonality test, "'there need be only a single issue common to all members of the class.'" American Medical Systems at 1080, quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions, § 3.10, at 3-47 (3d ed. 1992). **[*14]** "Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." Sterling v. Velsicol Chemical Corp., 855 F.2d 1188, 1197 (6th Cir.1988). Further, when the legality of the defendant's standardized conduct is at issue, the commonality factor is normally met:

> Where a question of law refers to a standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement of Rule 23(a)(2) is usually met. . . . [A] lack of identical factual situations will not necessarily preclude certification where the class representative has shown sufficient common questions of law among the claims of the class members.

Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D.Ill. 1984). In accord, the court in Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998) stated: "Common nuclei of fact are typically manifest where, like in the case sub judice, the defendants **[*15]** have engaged in standardized conduct towards members of the proposed class . . . ."

## 3. Typicality

The typicality factor is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(3). "The test for typicality, like commonality, is not demanding . . . ." Forbush v. J.C. Penney Co., Inc., 994 F.2d 1101, 1106 (5th Cir. 1993).

The typicality requirement is meant to assure that the class representative is, indeed, representative of the class. "A necessary consequence of the typicality

requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *American Medical Systems at 1082*. Typicality may be presumed when the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Id., quoting* 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.13, at 3-76 (3d ed. 1992).

4. Adequacy of Representation

Pursuant to *Rule 23(a)(4)*, a class may be certified **[*16]** only if "the representative parties will fairly and adequately protect the interests of the class." "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Medical Systems at 1083*.

The adequacy of representation factor requires the Court to consider two criteria: "1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp., 532 F.2d 511, 525 (6th Cir. 1976)*, cert den, 429 U.S. 870, 97 S. Ct. 182, 50 L. Ed. 2d 150 (1976). Accord, *American Medical Systems at 1083*.

As can be gleaned, the adequacy of representation factor relates in part to the same concern as the requirement that the representative's claims be typical of those of the class. "The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *American Medical Systems at 1083*. What distinguishes the adequacy **[*17]** of representation factor is that it also requires the Court to consider the competency of the class counsel and to consider whether the representative and class have any conflicts of interest. *Id.*

Notwithstanding the importance of assuring that class counsel is competent, the Court must also be satisfied with the class representative's ability to "vigorously prosecute the interest of the class." *Senter at 525*. In *American Medical Systems,* the district court overlooked the evidence of the class representative's psychological problems, reasoning that the representative was a mere symbol who would not control anything in the litigation. The Sixth Circuit, however, found that reasoning to be "clearly contrary to our holding in *Senter.*" *American Medical Systems at 1083*. Also see *In re K Mart Corp. Securities Litigation, 1996 U.S. Dist. LEXIS 22609, 1996 WL 924811, *5 (E.D. Mich. 1996)*(Cook, J.)(finding it significant that a proposed class representative had demonstrated only a cursory knowledge of the litigation at issue).

B. *Rule 23(b)(2)*

An action is only maintainable under *Rule 23(b)(2)* if the relief sought is primarily injunctive or declaratory. *Alexander v Ford Motor Co, 204 F.R.D. 314, 320 (ED Mich 2001)*; **[*18]** *Fuller v Fruehauf Trailer Corp, 168 F.R.D. 588, 602-603 (ED Mich 1996)*. Under *(b)(2)*, "defendants' allegedly wrongful conduct need not be directed at or damaging to every member of the class." *Little Caesar Enterprises, Inc v Smith, 172 F.R.D. 236, 267 (ED Mich 1997)*. Also, "[u]nlike *Rule 23(b)(3)*, [(b)(2)] does not require the Court to determine the predominance of common questions of law and fact or the superiority of class action treatment of adjudication." *Id.*

C. *Rule 23(b)(3)*

In *American Medical Systems,* the court noted the parallel between *Rule 23(a)(2)*(commonality) and (b)(3), in that both require examination of the common questions involved. "[B]ut *subdivision (b)(3)* contains the more stringent requirement that common issues 'predominate' over individual issues." *American Medical Systems at 1084*.

IV. ANALYSIS

The Supreme Court has recognized that class actions are sometimes appropriate for mass tort actions. *Amchem Products, Inc v Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)*. However, the Court finds that this case is not suitable, at this time, for class certification. Even assuming without deciding **[*19]** that Plaintiffs meet the requirements of *Rule 23(a)*, Plaintiffs' claims do not satisfy the requirements for class certification under either *Rule 23(b)(2)* or *(3)*.

Plaintiffs over the course of briefing this motion, reformulated their definition of the proposed class into four sub-classes: evacuation, economic harm, medical monitoring and personal injury. The Court will address each in turn.

*I. Evacuation Class*

Plaintiffs propose the following definition for the evacuation class:

> A Rule 23(b)(3) class of all persons or entities having claims for damages or injuries caused by the chemical explosion/fire at the Atofina Chemicals, Inc. facility located in the City of Riverview, Michigan on July 14, 2001, and who or which own property, or where [sic] physically present in the official evacuation zones.

"As a preliminary matter, a class must meet a minimum standard of definiteness which will allow the trial court to determine membership in the proposed class." Earnest v General Motors Corp, 923 F.Supp. 1469, 1473 (ND Ala 1996). "[F]or the proposed class to be sufficiently defined, the identity of the class members must be ascertainable by **[*20]** reference to objective criteria." Ball v Union Carbide Corp, 212 F.R.D. 380, 391-392 (ED Tenn 2002), quoting 5 Moore's Federal Practice § 23.21[1] (3rd ed. 1997).

Limiting those who qualify for this class only to those "having claims for damages or injuries" is extremely vague and susceptible to subjective interpretation. This broad definition invites limitless types of claims for injuries and damages. To the extent that Plaintiffs intended to narrow the scope to property or personal injury damages, it is not clear how this class differs from the economic harm or personal injury classes that will be discussed below.

Consequently, because the nature of the damages that are to be covered under this class are unclear, the Court is precluded from making a meaningful assessment of the viability of this class under Rule 23(b)(3). It is impossible for the Court to determine whether common questions of law or fact predominate or whether certification is a superior method of adjudicating these claims, without knowing what issues will be presented by this class. Plaintiffs' request for certification of this sub-class, therefore, is denied.

 **[*21]** *II. Economic Harm Class*

Plaintiffs propose the following definition for the economic harm class:

> A Rule 23(b)(3) class of all persons or entities having claims for economic damages or injuries caused by the chemical explosion/fire at the Atofina Chemicals, Inc. facility located in the City of Riverview, Michigan on July 14, 2001.

This class definition, too, is extremely vague. As with the evacuation class, the limitation of "economic damages or injuries" does not adequately narrow the potential class of claimants or sufficiently put potential claimants on notice regarding whether they have a viable claim. For instance, economic damages can include property damages, lost wages, incidental expenses, the cost of temporary relocation necessitated by the fumes, medical costs, etc..

To the extent that Plaintiffs intended to limit this class to those who have suffered a diminution in the market value of their real property, the Court finds that the individual proofs required to establish such a claim predominate over any common issues of law or fact. Courts consistently decline to certify a class when individual issues of causation, injury and damage outnumber **[*22]** the common issues.

In Thomas v FAG Bearings Corp, Inc, 846 F.Supp. 1400 (WD Mo 1994), Plaintiffs were allegedly exposed to groundwater contamination and brought claims of mental anguish, fear of cancer, increased risk of cancer and medical monitoring. The Court declined to certify the class under Rule (b)(3), finding that the individual issues of damages and causation rendered a class action unhelpful. 846 F.Supp at 1404. The Court noted that the measure of damages was almost exclusively dependent on individual factors and that other damages, such as medical damages, diminution in property value, loss of use and enjoyment and annoyance, all would require individualized proofs. Id. Consequently, the Court stated with regard to the manageability of such an action:

> This would start hundreds or thousands of individual mini-trials on complex causation and damages issues, while the only benefit of a class would be that the ruling of several common, but not particularly daunting issues, would be made applicable to the entire class.

Id.

Also, in Newton v Southern Wood Piedmont Co, 163 F.R.D. 625, 632 (SD Ga 1995), **[*23]** aff'd, 95 F.3d 59 (11th Cir 1996), where residents sued for alleged chemical exposure from a local wood treatment plant, the court found that the definition of the class was too broad to allow certification stating:

> Because there exists no uniform exposure by all putative class members, all of these elements are incapable of common proof. Designating the

members of the class would require an individualized inquiry into the existence of an [injury] for each putative class member.

In this case, of the common issues that Plaintiffs delineated in their Reply Brief, the only common issue listed pertaining to property values was--"Did the explosion reduce real estate values?" Pl Reply, p 3. In order to prevail on the claim, however, each claimant would have to produce individual proofs as to causation, actual injury and the amount of damages. For instance, each claimant would have to establish that there was a reduction in their property value; the extent of the reduction; and, that the reduction was caused by the accident, as opposed to a myriad of other potential causes. There is no apparent means of presenting this type of evidence on a mass basis. This class, **[*24]** therefore, fails to meet the requirements for Rule 23(b)(3) certification.

### III. Medical Monitoring Class

Plaintiffs propose the following definition for the medical monitoring class:

> A Rule 23(b)(2) or 23(b)(3) class of all those individuals who will require medical detection services, including independent inspections and surveys, for a reasonable number of years in the future to monitor the possibility of latent defects of exposure to the chemicals emitted from the Atofina Chemicals, Inc. facility located in the City of Riverview, Michigan as a result of the chemical explosion/fire that occurred on July 14, 2001.

As with the previously discussed classes, the primary problem with this proposed class under either Rule 23(b)(2) or (b)(3) is its vague definition. As formulated, there is no objective means for the Court, or indeed even potential claimants, to discern who qualifies. Plaintiffs have failed to explain what criteria would be used to identify those "who will require medical detection services" without an individual assessment of every person who *thinks* that he or she qualifies.

If potential claimants had all been exposed to the same level of **[*25]** the chemicals, potential claimants may be readily identifiable. However, in this instance, the evacuation zone encompassed into five communities with varying degrees of exposure in each area. Before even deciding whether a person qualifies as a potential claimant, it will be necessary, at a minimum, to determine: whether there was actual exposure; the length of exposure; and, the level of the exposure, considering various factors such as whether the individual was inside or outside, whether the windows were open, etc.. Additionally, prior medical histories may mean that certain individuals are more susceptible than others to future medical injuries.

Class certification was denied in Bledsoe v Combs, 2000 U.S. Dist. LEXIS 7434, 2000 WL 681094, *4 (SD Ind 2000) where extensive factual inquiries were required in order to identify potential claimants:

> The problem with this proposed class definition is that the court could not determine whether any individual was a member of the class without hearing evidence on what would amount to the merits of each person's claim. Where that type of inquiry is needed to determine whether a person is a member of a class, the proposed class action is unmanageable **[*26]** virtually by definition.

Certification of this class will, likewise, be denied. [6]

### IV. Personal Injury Class

Plaintiffs propose the following definition for the personal injury class:

> A Rule 23(b)(3) class of all persons who claim physical injury as a result of exposure to the chemicals emitted from the Atofina Chemicals, Inc. facility located in the City of Riverview, Michigan as a result of the chemical explosion/fire that occurred on July 14, 2001.

Plaintiffs request that this class only be certified as to the common issues of liability under Rule 23(b)(3) and 23(c)(4), with individual issues of causation and damages to be litigated in "follow-on" trials.

Before Rule 23(c)(4) can be implemented to bifurcate this **[*27]** class as Plaintiffs propose, Plaintiffs must satisfy the predominance requirement of Rule 23(b)(3). Castano v American Tobacco Co, 84 F.3d 734, 745 n. 21 (5th Cir 1996). The Court in *Castano* stated:

> The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of

---

[6] Since certification is denied on this basis, it is not necessary for the Court to reach the issue of whether Michigan even recognizes a claim of medical monitoring or, if so, whether the proposed remedy is primarily injunctive or monetary under Rule 23(b)(2).

action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial. . . . Reading rule 23(c)(4) as allowing a court to sever issues until the remaining common issue predominates over the remaining individual issues would eviscerate the predominance requirement of rule 23(b)(3); the result would be automatic certification in every case where there is a common issue, a result that could not have been intended.

Id. Rule 23(c)(4) may not be used to circumvent the predominance requirement of Rule 23(b)(3).

In this proposed class, Plaintiffs essentially concede that the individual issues of causation, injury and damages predominate over the common issues of law and fact. Plaintiffs, nevertheless, cite Sterling v Velsicol Chemical Corp, 855 F.2d 1188 (6th Cir 1988) [*28] in support of their contention that individual issues regarding damages are not fatal to class certification. Sterling, however, is distinguishable. In Sterling, residents living near a corporation's chemical waste burial site brought a class action against the company for personal injuries and property damage. The Appeals Court held that the district court did not err in certifying the class because the claimants had virtually identical claims:

> Almost identical evidence would be required to establish the level and duration of chemical contamination, the causal connection, if any, between the plaintiffs' consumption of the contaminated water and the type of injuries allegedly suffered, and the defendant's liability. The single major issue distinguishing the class members is the nature and amount of damages, if any, that each sustained. To this extent, a class action in the instant case avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts.

855 F.2d at 1197. The Court noted, however, that in complex, mass torts that do not have "one set of operative facts [that] [*29] establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action resolving the controversy." Id.

Unlike Sterling, in this case each claim of personal injury will require individual proofs regarding: duration and level of exposure; the nature and extent of alleged injuries; causation, which will include an assessment of prior and current medical histories; and, damages. Therefore, this proposed class is unsuitable under either Rule 23(b)(3) or 23(c)(4). [7]

 [*30] V. CONCLUSION

Plaintiffs' Motion for Certification of Case as a Class Action is DENIED.

**IT IS SO ORDERED.**

Victoria A. Roberts

United States District Judge

Dated: March 31, 2003

---

End of Document

---

[7] Note that Plaintiffs did not address how claims in this class could be bifurcated without running afoul of the Seventh Amendment. "A judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries. . . . The right to a jury trial in federal civil cases, conferred by the Seventh Amendment, is a right to have juriable issues determined by the first jury impaneled to hear them . . . and not reexamined by another finder of fact." In re Rhone-Poulenc Rorer, Inc, 51 F.3d 1293, 1303 (7th Cir 1995).