## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELNORA CARTHAN, et al., on behalf of
themselves and all others similarly situated;

        Plaintiffs,

v.

GOVERNOR RICK SNYDER, et al.,

        Defendants.

Case No. 5:16-cv-10444-JEL-MKM

Hon. Judith E. Levy
Magistrate Judge Mona K. Majzoub

_____

## MOTION OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC TO DISMISS IN PART THE CONSOLIDATED AMENDED CLASS COMPLAINT

Under Federal Rule of Civil Procedure 12(b)(6), Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC ("the VNA Defendants") respectfully move to dismiss Plaintiffs' Consolidated Amended Class Complaint (Dkt. 238) in part.

Several portions of the complaint cannot proceed. Plaintiffs cannot state an ordinary negligence claim against the VNA Defendants, for instance, because their claims involve the exercise of professional expertise. Nor can they state a claim for gross negligence, as Michigan does not recognize any standalone gross negligence claim. The complaint also does not provide sufficient factual allegations to support

1

any claim for negligent infliction of emotional distress or fraud against these defendants. And Plaintiffs cannot obtain either punitive or exemplary damages from the VNA Defendants, as no applicable statute authorizes punitive damages and no factual allegations justify exemplary ones. What is more, several claims of specific named plaintiffs are inadequate for their own individual reasons.

As Local Rule 7.1(a) requires, the VNA Defendants conferred with Plaintiffs' counsel concerning this motion. After the VNA Defendants explained the nature and legal basis for the motion, Plaintiffs' counsel said that they would oppose it.

Respectfully submitted,

**CAMPBELL, CAMPBELL, EDWARDS & CONROY P.C.**

By: /s/ James M. Campbell
James M. Campbell
John A. K. Grunert
One Constitution Center, 3rd Floor
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
jgrunert@campbell-trial-lawyers.com

**BUSH SEYFERTH & PAIGE PLLC**

By: /s/ Cheryl A. Bush
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
3001 W. Big Beaver Rd. Suite 600
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: December 1, 2017

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ELNORA CARTHAN, et al., on behalf of
themselves and all others similarly situated;

|  |  |
|---|---|
| Plaintiffs, | Case No. 5:16-cv-10444-JEL-MKM |
| v. | Hon. Judith E. Levy |
|  | Magistrate Judge Mona K. Majzoub |
| GOVERNOR RICK SNYDER, et al., |  |
| Defendants. |  |

_____

**MEMORANDUM IN SUPPORT OF THE
MOTION OF DEFENDANTS VEOLIA NORTH AMERICA, LLC,
VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH
AMERICA OPERATING SERVICES, LLC
TO DISMISS IN PART THE
<u>CONSOLIDATED AMENDED CLASS COMPLAINT</u>**

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Should the Court dismiss Plaintiffs' ordinary negligence claim where the claim is lodged against a professional?

   **The VNA Defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

2. Should the Court dismiss Plaintiffs' ordinary negligence claim because Michigan law does not recognize gross negligence as a standalone claim?

   **The VNA Defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

3. Should the Court dismiss Plaintiffs' negligent infliction of emotional distress claim because Plaintiffs fail to plead facts supporting key elements of that claim?

   **The VNA Defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

4. Should the Court dismiss Plaintiffs' fraud claim because they fail to allege facts supporting key elements, including actual falsity?

   **The VNA Defendants answer:** "Yes."

   **Plaintiffs answer:** "No."

5. Should the Court dismiss Plaintiffs' demand for punitive damages because Plaintiffs fail to identify any statutory basis for that demand?

**The VNA Defendants answer:** "Yes."

**Plaintiffs answer:** "No."

6. Should the Court dismiss Plaintiffs' demand for exemplary damages because Plaintiffs do not provide adequate allegations of hurt feelings or inadequate remedies?

**The VNA Defendants answer:** "Yes."

**Plaintiffs answer:** "No."

7. Should the Court dismiss certain claims of certain individual, named plaintiffs, where those claims lack additional key allegations?

**The VNA Defendants answer:** "Yes."

**Plaintiffs answer:** "No."

## **CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Bryant v. Oakpointe Villa Nursing Ctr.*,
     684 N.W.2d 864 (Mich. 2004)

*Buckner v. Roy*,
     2015 WL 4936694 (E.D. Mich. Aug. 18, 2015)

*Evans v. Pearson Enters., Inc.*,
     434 F.3d 839 (6th Cir. 2006)

Opinion and Order Granting in Part and Denying in Part
     Defendants' Motions to Dismiss, *Guertin v. Michigan*,
     No. 16-cv-12412 (E.D. Mich. June 5, 2017), ECF No. 151

Opinion and Order Granting Defendant Veolia's
     Motion for Reconsideration, *Guertin v. Michigan*,
     No. 16-cv-12412 (E.D. Mich. July 14, 2017), ECF No. 191

*Krieger v. Gast*,
     197 F.R.D. 310 (W.D. Mich. 2000)

*MacDonald v. Thomas M. Cooley Law Sch.*,
     724 F.3d 654 (6th Cir. 2013)

*Ragnone v. Charter T'ship of Fenton*,
     2006 WL 3103043 (Mich. Ct. App. Nov. 2, 2006)

*SFS Check, LLC v. First Bank of Del.*,
     774 F.3d 351 (6th Cir. 2014)

*Tschirhart v. Pamar Enters., Inc.*,
     2016 WL 3541827 (Mich. Ct. App. June 28, 2016)

## INTRODUCTION

This Court has already recognized that Plaintiffs' claims carry some serious problems. Just like the plaintiffs in *Guertin v. Michigan*, No. 16-cv-12412 (E.D. Mich.), Plaintiffs here have brought a gross-negligence claim that does not exist as a standalone claim in Michigan. Just like the *Guertin* plaintiffs, Plaintiffs here also seek punitive damages without any statutory basis for doing so. And just like the *Guertin* plaintiffs, these Plaintiffs assert ordinary negligence claims even though their allegations make it plain that this case could sound only in professional negligence.

But this case has problems of its own, too. Chief among them is a fraud claim that lacks essential allegations, including factual allegations that the Veolia North America ("VNA") Defendants actually made a false statement. Plaintiffs also plead a claim of negligent infliction of emotional distress that fails to offer plausible allegations as to *any* of the claim's four elements. And Plaintiffs seek exemplary damages without providing any basis to believe that those exceptional damages are warranted against the VNA Defendants. Finally, several of the named plaintiffs have failed to plead valid claims against the VNA Defendants for property damage, personal injury, or both.

For all of these reasons, this Court should take much the same approach as it did in *Guertin* and dismiss Plaintiffs' ordinary negligence, gross negligence,

negligent infliction of emotional distress, and fraud claims with prejudice; should dismiss Plaintiffs' demands for punitive and exemplary damages with prejudice; and should dismiss the individual claims of plaintiffs Kelso, Munoz, Brown, Gilcreast, EPCO, and Angelo's Coney Island, in whole or in part, with prejudice.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court "must accept nonconclusory allegations of fact in the complaint as true and determine if the plaintiff has stated a plausible claim for relief." *Bright v. Gallia Cnty.*, 753 F.3d 639, 652 (6th Cir. 2014). "A claim is plausible on its face if the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 567 (6th Cir. 2015) (quotation marks omitted). The complaint, then, "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). In deciding whether the allegations are sufficient, "a legal conclusion couched as a factual allegation need not be accepted as true." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). Rather, the Court may take conclusory allegations into account only if they are lent substance and rendered plausible by factual allegations in the Complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). And while the Court may draw reasonable inferences from facts

2

alleged in the Complaint, it may not assume facts that have not been pleaded. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328 (6th Cir. 2008).

## ARGUMENT

## I. The Court Should Dismiss Plaintiffs' Ordinary Negligence Claim (Second Count XI).

In *Guertin*, this Court dismissed the plaintiffs' ordinary negligence claim against the VNA (and LAN) Defendants. The Court reasoned that a claim that an engineering company breached its duty of care is perforce a claim for professional negligence "requir[ing] … expert testimony as to the professional standard of care that defendants Veolia and Lockwood are alleged to have breached." Opinion and Order Granting Defendant Veolia's Motion for Reconsideration at 5, *Guertin v. Michigan*, No. 16-cv-12412 (E.D. Mich. July 14, 2017), ECF No. 191.

The Court's decision in *Guertin* was correct, and there is no reason to deviate from that decision here. As the Michigan Supreme Court has explained, if a claim arises from actions taken in "the course of a professional relationship" and raises questions of professional judgment "beyond the realm of common knowledge and experience," then the claim (however denominated) sounds in professional negligence, not ordinary negligence. *Bryant v. Oakpointe Villa Nursing Ctr.*, 684 N.W.2d 864, 871 (Mich. 2004); *see also Wang v. Health*, 2016

3

WL 4073538, at *3 (E.D. Mich. Aug. 1, 2016); *City of Dearborn v. DLZ Corp.*, 111 F. Supp. 2d 900, 903-04 (E.D. Mich. 2000); *Sturgis Bank & Trust Co. v. Hillsdale Cmty. Health Ctr.*, 708 N.W.2d 453, 461 (Mich. Ct. App. 2005).

That is the case here. The Consolidated Amended Class Complaint ("Complaint") alleges that the VNA Defendants "breached their duty of reasonable care by allowing contaminants to be released into the drinking water of the City of Flint, including but not limited to lead" (Complaint ¶ 470), "by failing to act reasonably in providing Plaintiffs and the Class usable water" (*id.* ¶ 472), by "fail[ing] to take reasonable, adequate, and sufficient steps or action to eliminate, correct, or remedy any contamination after it occurred" (*id.*), and "by failing to timely notify the Plaintiffs and the Class of the contamination of Flint's drinking water, and, consequently, the presence of lead and other contaminants in the homes, businesses, and rental properties of Plaintiffs and the Class" (*id.* ¶ 473). These allegations are functionally identical to the negligence allegations in *Guertin. See, e.g.*, Complaint and Jury Demand, *Guertin v. Michigan*, No. 16-cv-12412 (E.D. Mich. June 27, 2016), ECF No. 1, at ¶ 435 ("Veolia carelessly and negligently failed to exercise reasonable care in inspecting the City's water system and issuing its interim and final reports."), ¶ 439 ("Veolia carelessly and negligently failed to exercise reasonable care when it failed to warn about the dangers of lead leaching into Flint's water system."), ¶ 440 ("Veolia carelessly and

negligently failed to exercise reasonable care when it did not forcefully recommend the immediate implementation of corrosion control for purposes of preventing lead contamination in Flint's water supply.").

Accordingly, the Court should dismiss Plaintiffs' ordinary negligence claim (second Count XI) against the VNA Defendants with prejudice for the same reason that it dismissed the materially identical claim in *Guertin*.

## II.   The Court Should Dismiss Plaintiffs' Gross-Negligence Claim (Count XII).

This Court also held in *Guertin* that "gross negligence is not an independent cause of action in Michigan" and accordingly dismissed the plaintiffs' gross negligence claim. Opinion and Order Granting in Part and Denying in Part Defendants' Motions to Dismiss at 95-96, *Guertin v. Michigan*, No. 16-cv-12412 (E.D. Mich. June 5, 2017), ECF No. 151. Again, there is no reason to deviate from that decision here.

As many other judges in this District have held, "gross negligence is not an independent cause of action under Michigan law." *Buckner v. Roy*, 2015 WL 4936694, at *8 (E.D. Mich. Aug. 18, 2015); *accord, e.g.*, *Collins v. Ferguson*, 2017 WL 4387287, at *6 (E.D. Mich. Oct. 3, 2017); *Van Buren v. Crawford Cty.*, 2014 WL 2217016, at *10 (E.D. Mich. May 29, 2014); *Mallory v. City of Ferndale*, 2011 WL 891212, at *7 (E.D. Mich. Mar. 11, 2011).

Even if gross negligence were a stand-alone claim, Plaintiffs could not state it here. Under Michigan law, "evidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quotation marks omitted). Gross negligence "suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id.* (quotation marks omitted). Thus, allegations that a defendant's conduct fell below "industry standards" do not support a claim for gross negligence. *See Xu v. Gay*, 668 N.W.2d 166, 171 (Mich. Ct. App. 2003). And "[s]imply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v. Crabtree,* 687 N.W.2d 333, 339 (Mich. Ct. App. 2004).

Here, Plaintiffs merely summarize their negligence claims and perfunctorily allege that the VNA (and LAN) Defendants acted "gross negligently, recklessly, willfully, wantonly, and/or intentionally." Complaint ¶ 480. Under Michigan law, that undeveloped, one-line allegation is not enough. *Reilly*, 680 F.3d at 627-28; *Tarlea*, 687 N.W.2d at 339.

Accordingly, the Court should dismiss Plaintiffs' gross-negligence claim (Count XII) against the VNA Defendants with prejudice.

6

### III.   The Court Should Dismiss Plaintiffs' Negligent-Infliction-Of-Emotional-Distress Claim (First Count XI).

A plaintiff pursuing a claim for negligent infliction of emotional distress ("NIED") must plead and prove the following four elements:

> (1) the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock fairly contemporaneous with the accident.

*Tschirhart v. Pamar Enters., Inc.*, 2016 WL 3541827, at *3 (Mich. Ct. App. June 28, 2016) (quoting *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 735 (Mich. Ct. App. 1986)).

The NIED count in the Complaint pleads only that "the Engineering Defendants failed to exercise reasonable care, which had the direct and foreseeable result of causing Individual Plaintiffs and the Class severe emotional distress, embarrassment, outrage, mental anguish, fear and mortification, denial of social pleasures, and stress related physical symptoms." Complaint ¶ 467. That is inadequate for several reasons.

*First*, there is no allegation that any plaintiff (much less the entire putative class) suffered a "shock" as a result of witnessing an "injury threatened or inflicted on [a] third person." *Tschirhart*, 2016 WL 3541827, at *3. To the contrary, the most natural interpretation of the allegation in the NIED count is that Plaintiffs

suffered emotional distress as a result of being exposed to Flint water—not as a result of witnessing someone else in their immediate family suffer a "serious" injury (*id.*). Michigan courts have consistently dismissed NIED claims when, as here, the plaintiffs "failed to allege that [they] witnessed an injury to a third party." *Benny v. Golling Chrysler Jeep Dodge, Inc.*, 2012 WL 2362723, at *1 (Mich. Ct. App. June 21, 2012); *see also Purcell v. Johnson*, 1997 WL 33344497, at *3 (Mich. Ct. App. July 11, 1997) (holding that trial court properly granted summary disposition because "the complaint averred that plaintiffs' 'injuries' actually resulted from their mother's incapacitation, not as a result of their witnessing the accident itself").

*Second*, the Complaint does not allege that Plaintiffs' close family members suffered the kind of *sudden* injuries that could elicit the type of shock required to state an NIED claim. *See Brennan v. Chippewa Cty. War Mem'l Hosp., Inc.*, 2014 WL 5306621, at *9 (Mich. Ct. App. Oct. 16, 2014) (NIED "clearly contemplates a sudden, brief, and inherently shocking accidental event which causes the injury or death, which contemporaneously, and by its very nature, results in emotional and physical injury to the plaintiff.") (quoting *Pate v. Children's Hosp. of Mich.*, 404 N.W.2d 632, 633 (Mich. Ct. App. 1986)). Indeed, the Complaint repeatedly emphasizes the *long-term* effects of exposure to "toxic water," alleging injuries such as diminished learning capacity or lifetime earning potential. *See* Complaint

¶¶ 262-77. Michigan courts reject NIED claims when, as here, the plaintiffs do "not allege the type of sudden, tragic injury that has previously supported recovery based on this tort." *Purcell*, 1997 WL 33344497, at *3.

*Third*, "plaintiffs' failure to identify a third party necessarily means that they have no close familial relationship with any such party," and so they have not adequately pleaded the "immediate family" requirement of their NIED claim either. *Tschirhart*, 2016 WL 3541827, at *3.

*Fourth*, the Complaint does not adequately plead that whatever shock Plaintiffs may have sustained was "fairly contemporaneous" with a sudden, severe injury to a close family member. Under Michigan law, an NIED claim is "fatally flawed" when the plaintiff does not "immediately" observe the injury to a family member and instead first has an opportunity "to discuss" it with a doctor or other intermediary. *Taylor v. Kurapati*, 600 N.W.2d 670, 693 (Mich. Ct. App. 1999) (affirming dismissal of NIED claim brought by parents of child born with disabilities).

Accordingly, for all of these reasons, the Court should dismiss Plaintiffs' NIED claim against the VNA Defendants (first Count XI) with prejudice.

## IV.    The Court Should Dismiss Plaintiffs' Fraud Claim (Count X).

To state a fraud claim under Michigan law, a plaintiff must allege: "(1) [t]hat defendant made a material misrepresentation; (2) that it was false; (3) that when he

made it he knew it was false, or made it recklessly, without any knowledge of its truth as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351, 358 (6th Cir. 2014) (quoting *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012)).

Under federal law, a complaint must "state with particularity the circumstances constituting fraud." *Id.* (applying Fed. R. Civ. P. 9(b)'s "heightened pleading standard" to Michigan-law fraud claim); *see also Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 586 (6th Cir. 2016) ("a plaintiff must plead each element of a fraud action with the requisite particularity"); *Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010). That means that the plaintiff must "(1) specify the time, place, and content of the alleged misrepresentation; (2) identify the fraudulent scheme and the fraudulent intent of the defendant; and (3) describe the injury resulting from the fraud." *SFS Check*, 774 F.3d at 358.

The Complaint does not meet these requirements, and the fraud count accordingly should be dismissed with prejudice because there is "no excuse for the lack of specificity in the allegations." *Leeds v. City of Muldraugh, Meade Cty., Ky.*, 174 F. App'x 251, 254 (6th Cir. 2006) (affirming dismissal with prejudice).

### A.    The Complaint Fails To Specify Any False Representations.

Fraud "requires a *false representation* by the defendant." *MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 663 (6th Cir. 2013) (quoting *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 549 (Mich. 2000) (emphasis in *Hord*)). The Complaint identifies only three allegedly "false and material representations," all from "the Veolia Defendants' 2015 Interim Report." Specifically, the Complaint alleges that the VNA Defendants stated that (1) "Flint's water supply was 'safe' and 'in compliance with drinking water standards'"; (2) "[t]he observed discoloration was merely aesthetic and not indicative of water quality or health problem[s]"; and (3) "[m]edical problems are because '[s]ome people may be sensitive to any water.'" Complaint ¶¶ 459-60.[1]

The Complaint suggests that these statements falsely represented the safety of the water, but only by mischaracterizing them and quoting them out of context. As the attached February 2015 Veolia Interim Water Quality Report to the City of Flint ("Report") makes clear, those statements were truthful representations of fact

---

[1]    The Complaint alleges that the allegedly fraudulent "representations" by the VNA Defendants are "not limited to" the three that are specifically identified. *Id.* Under Rule 9(b), these unidentified representations must be disregarded for failure to comply with the requirement "(1) to specify the allegedly fraudulent statements, (2) to identify the speaker, (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

11

and good-faith expressions of professional opinion, neither of which is actionable fraud.[2]

Critically, the Report *defines* "safe" to mean "compliance with state and federal drinking water standards and required testing" and states: "Latest tests show water is in compliance with drinking water standards[.] Monthly report available on web page[.]" Report at 3. At the same time, the Report acknowledges past problems with compliance and ongoing efforts. *Id*. at 4. The Report states that discoloration "[d]oesn't mean the water is unsafe but it is not appealing and raises questions." *Id*. at 5. Noting that "[s]ome people may be sensitive to any water," the Report also advises residents to "[t]alk to your doctor" and informs readers that "[t]he City is communicating with the medical community." *Id*. at 21.

The Complaint does not, however, allege that either the "[l]atest tests" as of February 2015 or the "[m]onthly report" referenced in the Report did not "show water [was] in compliance." The Complaint likewise does not allege that discolored water cannot be in compliance with applicable regulations or that people cannot have allergic reactions to "safe" water. Because the Complaint does not and cannot "set forth … allegations … to explain why [these] statements … are false," the fraud count fails to state a claim. *Laues v. Bank of Am., N.A.*, 2014

---

[2]   "[A] court may consider … exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein …." *Gavitt*, 835 F.3d at 640.

WL 6686792, at *7 (E.D. Mich. 2014); *accord McMahon v. CitiMortgage, Inc.*, 2011 WL 2173916, at *3 (E.D. Mich. 2011).

In addition, fraud must be "predicated upon a statement relating to a past or an existing fact." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). The three statements identified in the Complaint do not satisfy this requirement because they constitute expressions of "professional opinion" rather than statements of a past or existing fact. *Wier v. Countrywide Bank, N.A.*, 2011 WL 1256944, at *4 (E.D. Mich. 2011) ("it is well established under Michigan law that mere expressions of opinion, including a 'professional opinion,' are not actionable"); *see also Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 598 (E.D. Mich. 2017) ("inherently subjective" statements about "safety" "cannot form the basis of a fraud action"); *Miller v. Laidlaw & Co. (UK) Ltd.*, 2013 WL 1303382, at *4 (E.D. Mich. 2013) ("'safe'" is a "matter[] of opinion" and "not actionable").

## B. The Complaint Does Not Adequately Plead Knowledge And Intent.

The fraud claim is defective for the independent reason that the Complaint fails to suggest any plausible basis for inferring that "the Veolia Defendants knew [that] the representations were made recklessly without any knowledge of their veracity" or that the VNA Defendants "made the representations with the intention that Plaintiffs would act and rely on them." *See* Complaint ¶¶ 462-63. Though Rule 9(b) specifies that knowledge and intent "may be alleged generally," a complaint

"still must plead facts about the defendant's mental state which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Trust*, 683 F.3d at 247 (quoting *Iqbal*, 556 U.S. at 678). And Rule 9(b) also still requires a complaint to "identify[] the basis for inferring scienter." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 406 (6th Cir. 2012). The Complaint in this case does not meet either requirement.

First, the Complaint does not explain how the VNA Defendants' representations were false, so it necessarily fails to plausibly allege that the VNA Defendants knew that the statements were false, made them recklessly, or intended to deceive plaintiffs. Further, the Complaint fails to specify either a "fraudulent scheme" or "fraudulent intent." *Bennett*, 607 F.3d at 1100; *see also Wall v. Michigan Rental*, 852 F.3d 492, 496 (6th Cir. 2017). The Complaint offers no clue as to why the VNA Defendants intended to deceive them. Nor could it. *Cf. DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990) (fraud claim failed where "complaint [did] not allege that [defendant] had anything to gain from any fraud").

## C.    The Complaint Does Not Adequately Plead Reliance.

With respect to the essential element of reliance, the Complaint pleads only that "the Veolia Defendants made the representations with the intention that Plaintiffs would act and rely on them, *which Plaintiffs did*." Complaint ¶ 463 (emphasis added). The Complaint does not allege how plaintiffs learned of those

14

representations; what actions they took in reliance on them; or how plaintiffs suffered "extensive damages" as a consequence (*id*. ¶ 464). The law is clear, however, that "[c]onclusory statements of reliance are not sufficient to explain with particularity how [plaintiff] detrimentally relied on the alleged fraud." *Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 852-53 (6th Cir. 2006) (affirming dismissal of Michigan state-law fraud claim based on insufficient allegations of reliance); *see also, e.g.*, *Harbor Thirteen Mile-20600 LLC v. Emps.' Ret. Plan of Consol. Elec. Distrib., Inc.*, 2016 WL 1665158, at *3 (E.D. Mich. 2016); *Llewellyn-Jones v. Metro Property Grp., LLC*, 22 F. Supp. 3d 760, 783 (E.D. Mich. 2014); *Skidmore v. Equifax, Inc.*, 2013 WL 827629, at *4 (E.D. Mich. 2013) ("fail[ure] to allege … acts of reliance" is "presumptively fatal").

For all of these reasons, the fraud count (Count X) should be dismissed with prejudice.

## V.   The Court Should Dismiss Plaintiffs' Demand For Punitive Damages.

The Complaint demands punitive damages against all defendants, apparently including the VNA Defendants. In *Guertin*, this Court dismissed the plaintiffs' request for punitive damages, explaining that "[p]unitive damages 'are generally not recoverable in Michigan' with the exception of when 'they are expressly authorized by statute'" and that the plaintiffs had identified no statute authorizing punitive damages against the VNA (and LAN) defendants. *Guertin*, ECF No. 151,

at 98 (quoting *Casey v. Auto Owners Ins. Co.*, 729 N.W.2d 277, 286 (Mich. Ct. App. 2006)).

Here too, the Complaint identifies no statute authorizing punitive damages against the VNA Defendants and does not allege any facts that, if true, could bring the claims against the VNA Defendants within the scope of any such statute. Accordingly, the Court should dismiss the demand for punitive damages against the VNA Defendants with prejudice.

## VI.   The Court Should Dismiss Plaintiffs' Demand For Exemplary Damages.

Plaintiffs "seek an award of exemplary damages from the Veolia defendants" "[a]s a result of the foregoing," without explaining which of the preceding 456 paragraphs they mean to refer to. Complaint ¶ 457. Although this Court stated in *Guertin* that the plaintiffs there "may be entitled to exemplary damages"—as distinct from punitive damages—(*Guertin*, ECF No. 151, at 99), the Relief Requested in the complaint in that case did not include exemplary damages (*see* Complaint and Jury Demand, *Guertin v. Michigan*, No. 16-cv-12412 (E.D. Mich. June 27, 2016), ECF No. 1, at 88), and the VNA Defendants therefore did not address exemplary damages in their motion to dismiss. The Court's statement that the plaintiffs in *Guertin* "may be entitled to exemplary damages" thus was not

a holding that the plaintiffs had adequately pleaded entitlement to exemplary damages.[3]

In *this* case, in contrast to *Guertin*, the VNA Defendants *do* move to dismiss the demand for exemplary damages. And dismissal should be granted because the Complaint lacks allegations sufficient to establish the requirements for an award of such damages.

"Michigan law allows exemplary damages, but only to compensate the plaintiff for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, willfully and wantonly inflicted by the defendant." *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 385 (6th Cir. 1997). "The theory … is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings." *Kewin v. Massachusetts Mut. Life Ins. Co.*, 295 N.W.2d 50, 55 (Mich. 1980). "The conduct must be malicious or so wilful and wanton as to demonstrate a reckless disregard of the plaintiff's rights." *Krieger v. Gast*, 197 F.R.D. 310, 318 (W.D. Mich. 2000). "[N]egligence is not sufficient" to justify such damages. *Veselenak v. Smith,* 327 N.W.2d 261, 264 (Mich. 1982).

---

[3]     The Court made this statement because the plaintiffs in *Guertin* had defended their request for punitive damages by relying on exemplary-damages cases; the Court self-evidently was not purporting to decide an issue that had not been presented to it.

The demand for exemplary damages in this case is fatally defective for at least two reasons.

*First*, in order to pursue exemplary damages, a plaintiff must plead that his or her feelings were injured as a result of the defendant's malicious conduct. *See, e.g.*, *Krieger v. Gast*, 197 F.R.D. 310, 318 (W.D. Mich. 2000) (refusing to consider claim for exemplary damages in determining whether class members' claims met jurisdictional threshold because named plaintiff "ha[d] not even alleged that his feelings were hurt by a malicious, willful, and wanton act of Defendants"); *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 436 N.W.2d 70, 86 (Mich. Ct. App. 1989) (trial court correctly refused to permit counterclaim plaintiffs to present evidence on exemplary damages because they had "alleged no injury to feelings" resulting from the conduct for which the counterclaim defendant had been held liable); *Jackson Printing Co. v. Mitan*, 425 N.W.2d 791, 794 (Mich. Ct. App. 1988) (vacating award of exemplary damages against fraud defendant because plaintiff had not alleged that "its feelings were hurt by a malicious, wilful, and wanton act of defendant").

The Complaint here alleges neither that the VNA Defendants acted with malice nor that any plaintiff suffered "hurt feelings" as a consequence. In fact, the Complaint says nothing about feelings at all. And though Plaintiffs sprinkle conclusory assertions about the VNA Defendants' intent throughout the

Complaint, such "conclusory assertions of malice" are not enough to establish that mental state. *Mourad v. Marathon Petroleum Co.*, 129 F. Supp. 3d 517, 526 (E.D. Mich. 2015); *see also 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.,* 727 F.3d 502, 506 (6th Cir. 2013) (explaining that "*Iqbal and Twombly* condemned and thus told [courts] to ignore" these sorts of "conclusory allegations" in complaints).

*Second*, "an important limitation on an award of exemplary damages … is that they will be denied when an award of compensatory damages would make the injured party whole." *Krieger*, 197 F.R.D. at 318. Accordingly, "if the actual damages award includes compensation for mental injury," as they generally do in personal-injury cases, "exemplary damages are impermissible because their allowance would permit the plaintiff a double recovery." *Pauley v. Hall*, 335 N.W.2d 197, 203 (Mich. Ct. App. 1983). As the Michigan Supreme Court has explained, in all but the most unusual case, "compensatory-type exemplary damages are merely a component of actual damages attributable to defendant's conduct and hence should not be separately awarded." *Peisner v. Detroit Free Press, Inc.*, 364 N.W.2d 600, 605 n.10 (Mich. 1984).

The Complaint does not—and could not plausibly—allege that there is something unique about this case that would cause the remedy of compensatory damages to be insufficient to make Plaintiffs whole. Because the Complaint makes

no such allegation, "exemplary damages are impermissible because their allowance would permit the plaintiff[s] a double recovery." *Pauley*, 335 N.W.2d at 203.

Accordingly, the Court should dismiss Plaintiffs' demand for exemplary damages with prejudice.

## VII. The Court Should Dismiss The Claims Of Several Specific Named Plaintiffs.

In addition to dismissing the ordinary negligence, gross negligence, NIED, and fraud claims, and the demands for punitive and exemplary damages, the Court should dismiss the claims of plaintiffs Kelso, Munoz, Brown, Gilcreast, EPCO, and Angelo's Coney Island—in whole or in part—against the VNA Defendants.

### A.    Rhonda Kelso

#### 1.    The Court should dismiss the personal-injury claims brought against the VNA Defendants by Rhonda Kelso on behalf of herself and her minor daughter K.E.K.

Plaintiff Rhonda Kelso asserts personal-injury claims on behalf of both herself and her daughter "K.E.K." Ms. Kelso alleges that she has resided since 1993 in a Flint home that receives Flint municipal water and that K.E.K. has resided there all 14 years of K.E.K.'s life. Complaint ¶ 13. Ms. Kelso also alleges that both she and K.E.K. suffer from a range of disabilities (*id.*) but does not allege when either of them began to suffer from those disabilities. Ms. Kelso further alleges that both she and K.E.K. "drank the toxic water from April 2014 until the autumn of 2014" and that "[t]hey bathed, washed, and cooked with the water until

20

at least January 2015." *Id.* Yet elsewhere in the Complaint, all Plaintiffs—including Ms. Kelso—allege that the VNA Defendants were hired by the City of Flint in *February* 2015 and describe alleged conduct by the VNA Defendants only during the months of February and March 2015. *Id.* ¶¶ 159, 161-68. All Plaintiffs—including Ms. Kelso—also allege that, because of other defendants' misconduct, the Flint water supply was dangerously contaminated beginning in late April 2014, more than nine months before any of the VNA Defendants entered the picture. *Id.* ¶¶ 1, 11, 13, 23, 34, 101, 111-14, 131-39.

Ms. Kelso thus fails to allege facts that, if true, plausibly suggest that any of her own alleged injuries or any of K.E.K.'s alleged disabilities (or for that matter any undescribed injuries K.E.K. may have sustained) were caused or exacerbated by anything any VNA Defendant did or failed to do. To the contrary, she affirmatively alleges facts that logically suggest just the opposite—namely, that she and K.E.K. stopped drinking and using Flint water before any VNA Defendant appeared on the scene. Because nowhere in the Complaint except in paragraph 13 are there any allegations specifically related to Ms. Kelso or K.E.K., there is nothing from which it can be inferred that either of them was injured by any VNA Defendant. Because causation is an indispensable element of every tort (*see, e.g.*, *In re NM Holdings Co. LLC*, 622 F.3d 613, 618-19 (6th Cir. 2010) (professional negligence); *Rupert v. Daggett*, 695 F.3d 417, 423, 425-26 (6th Cir. 2012)

(ordinary negligence); *Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 568 (Mich. 2012) (fraud)) that must be pleaded in a factual, non-conclusory way that satisfies the requirements of *Twombly/Iqbal* and their progeny, Ms. Kelso's and K.E.K.'s personal-injury claims against the VNA Defendants must be dismissed with prejudice.

### 2.    The Court should dismiss any claim for property damage brought by Ms. Kelso on behalf of K.E.K.

Ms. Kelso alleges that she owns the Flint home in which K.E.K. lives and that *she*—Ms. Kelso—suffered diminution in the value of her property and damage to "her" water pipes. Complaint ¶ 13. Ms. Kelso does not allege that K.E.K. has a legally cognizable interest in the home or that K.E.K. has sustained damage to or diminution in the value of any property in which she has a legally cognizable right. The Complaint, however, explicitly defines "Plaintiffs" to include all of the named plaintiffs *and* minor children on whose behalf they sue (*id*. ¶¶ 28, 32) and repeatedly alleges in conclusory fashion, including in counts against the VNA Defendants (*see id.* ¶¶ 455.b., 456, 464.b., 477.b., 483.b.), that "Plaintiffs" have sustained property damage and diminution in the value of property.

Because the Complaint as drafted purports to allege a property-damage claim on behalf of K.E.K., but does not allege facts which, if true, could support a finding that K.E.K. has any legally cognizable interest in any property that was

damaged or diminished in value, the Court should dismiss any such property-damage claim with prejudice.

### B.    David Munoz

The only allegations in the Complaint specifically concerning the plaintiff David Munoz are:

> Plaintiff David Munoz has lived in Flint, Michigan his entire life and has owned a home there for over 20 years. As a direct and proximate result of Defendants' conduct, Mr. Munoz suffered personal [sic] and property damages as well as a diminution in the value of his property.

Complaint ¶ 22. There is no allegation anywhere in the Complaint that Mr. Munoz's home was serviced by City of Flint municipal water at any time after February 10, 2015, that any Flint municipal water delivered to his home was contaminated with lead or anything else, or that he used or consumed Flint municipal water at any time after February 10, 2015. Nor does the Complaint allege that any personal injury or property damage that Mr. Munoz may have sustained occurred after February 10, 2015, rather than before that date. The allegation that "as a direct and proximate result of Defendants' conduct" Mr. Munoz suffered personal injuries, property damage, and diminution in the value of his property is just a recitation of the causation element of the cause of action he attempts to assert, not a factual allegation to be credited in the context of a Rule 12(b)(6) motion governed by the *Twombly/Iqbal* pleading standards.

Absent factual allegations that Mr. Munoz was exposed to contaminated Flint water after a VNA defendant first appeared on the scene in mid-February 2015, his personal-injury claim against the VNA Defendants fails on its face; absent factual allegations that his property was exposed to contaminated Flint municipal water and damaged or diminished in value after that date, his claim for property damage and diminution in value against the VNA Defendants likewise fails on its face. Accordingly, Mr. Munoz's entire claim against the VNA Defendants must be dismissed with prejudice.

### C.    Amber Brown

Plaintiff Amber Brown sues only to recover damages on behalf of her minor daughter "K.L.D." Ms. Brown alleges that she resides in Flint and that she also resided there while pregnant with K.L.D.; that while she was pregnant with K.L.D. she used Flint municipal water for drinking, cooking, and washing; and that K.L.D. was born November 28, 2014. Complaint ¶ 27. She concludes that, "[a]s a direct and proximate result of Defendants' conduct, K.L.D. has experienced serious physical injury due to her exposure to the toxic water, including, but not limited to, heightened levels of lead in her blood." That is all the Complaint says about Ms. Brown or K.L.D.

November 28, 2014, was two-and-a-half months before any VNA defendant had anything to do with the City of Flint's water. If K.L.D. was injured as a result

of her mother's ingestion or use of Flint municipal water during her pregnancy, or for that matter even if she was injured by exposure to Flint municipal water immediately after her birth, nothing that any VNA defendant did or failed to do can have contributed to injuring her. The Court may not just assume that K.L.D. was exposed to contaminated Flint water *after* a VNA defendant first appeared on the scene in Flint on February 10, 2015; *Twombly* and *Iqbal* require Ms. Brown to have alleged facts that, if true, would at least support a reasonable inference that K.L.D. was exposed after that date. *See A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) ("conclusory statement" of causation, "presented as an ipse dixit, unadorned by any factual assertions that might lend it plausibility" is insufficient). Likewise, in the absence of any allegation on the subject, the Court cannot assume that the currently 3-year-old K.L.D. owns or has any other legally cognizable interest in real or personal property that has been damaged or diminished in value as a result of conduct by a VNA defendant after February 10, 2015.

Accordingly, the Court should dismiss Amber Brown's claim against the VNA Defendants on behalf of her daughter K.L.D. in its entirety with prejudice.

### D.    Frances Gilcreast

Plaintiff Frances Gilcreast resides not in Flint but in Mt. Morris, Michigan. She alleges that FG&S Investments is a partnership also located in Mt. Morris that

she and her husband own and operate. Complaint ¶ 29. "Ms. Gilcreast, through

FG&S Investments, owns multiple properties in Flint, Michigan, that are serviced

by water provided by the City of Flint." *Id.* Ms. Gilreast concludes that "[a]s a

direct and proximate result of Defendants' conduct, … Ms. Gilcreast has suffered

property damage, lost rental and business income, and diminution in the value of

her properties." *Id.*

This claim for damages suffered by FG&S is fatally infirm under Michigan

law. As the Michigan Court of Appeals has explained:

> For purposes of litigation, a partnership is considered a
> separate entity. *George Morris Cruises v. Irwin Yacht &
> Marine Corp.*, 191 Mich. App. 409, 414; 478 NW2d 693
> (1991). However, a partner may establish an individual
> right to maintain a cause of action if he or she has a claim
> independent of the partnership or if the partner is
> designated in the lawsuit as a partner litigating on behalf
> of the partnership. *Id.*, citing MCL 600.2051(2).

*Ragnone v. Charter T'ship of Fenton*, 2006 WL 3103043, at *3 (Mich. Ct. App.

Nov. 2, 2006). But when a partner neither designates herself in the action as

litigating on behalf of the partnership—i.e., to enforce the partnership's rights, not

her own—nor alleges facts sufficient to establish that she has rights independent of

the partnership, her claim must be dismissed. *George Morris Cruises v. Irwin

Yacht & Marine Corp.*, 478 N.W.2d 693, 696 (Mich. Ct. App. 1991).

Ms. Gilcreast explicitly alleges that she is suing to recover damages that *she*

has allegedly sustained. She does not claim to be suing to vindicate the

partnership's rights or, for that matter, allege facts that, if true, are sufficient to support a reasonable inference that the *partnership* has suffered cognizable damages. Nor does she allege any facts from which it could reasonably be inferred that she has suffered losses separate from those that might flow through to her indirectly as a result of her alleged ownership interest in the partnership. But she also does not allege any facts from which it could reasonably be inferred that *she*, as distinct from FG&S Investments, owns or holds any other legally cognizable interest in property in Flint. Accordingly, Ms. Gilcreast's claim must be dismissed with prejudice.

### E.    EPCO Sales, LLC

EPCO alleges that it is a limited liability company that has been located at 601 Kelso Street in Flint since 1965. Complaint ¶ 30. EPCO allegedly received Flint water that was "toxic and contaminated" and "not fit for human use or consumption." *Id.* EPCO further alleges that "[a]s a direct and proximate result of Defendants' conduct described herein, EPCO has suffered property damage as well as a diminution in the value of its property." *Id.* EPCO does not identify the property that allegedly was damaged or diminished in value, or the nature of any damage to it, or *when* any damage or diminution in value allegedly occurred. Nor does EPCO allege any fact from which any of those things can be inferred. What EPCO does allege, as do all other plaintiffs, is that the VNA Defendants became

27

involved with Flint water only on February 10, 2015, after it had allegedly been contaminated for more than nine months.

As we have already explained, the VNA Defendants cannot be liable for property damage or diminution in property value that occurred before any VNA defendant came on the scene. Because EPCO does not allege that it suffered any property damage or diminution in value after a VNA defendant entered the picture, EPCO's claim against the VNA Defendants must be dismissed with prejudice.

### F.    Angelo's Coney Island Palace, Inc.

Angelo's Coney Island Palace, Inc. alleges that it is a corporate restaurant chain with a location in Flint. Complaint ¶ 31. Angelo's further alleges that it "has been significantly injured in its business and property as a direct and proximate result of Defendants' conduct, as set forth herein." *Id.* Specifically, "[c]ustomer traffic at [Angelo's] and similarly situated restaurants dropped considerably once the issues with Flint's water became known, leading to a substantial drop in revenue and profits thereby also impairing the value of the business. Additionally, [Angelo's] has suffered property damages." *Id.* Angelo's does not identify any "issues" which, becoming known, allegedly caused its customer traffic to decline. Nor does Angelo's allege *when* whatever "issues" it is referring to "became known" or when the alleged decline in customer traffic occurred. Nor does Angelo's identify any of its property that allegedly was damaged, when the

damage occurred, or what legal interest (if any) it had in the allegedly damaged property.

Angelo's does, however, join all other plaintiffs in alleging that issues with Flint's water began—and became known—well before any VNA defendant entered the picture in mid-February, 2015. *See, e.g.*, Complaint ¶¶ 130-34 (Flint began using Flint River as its water source in April 2014, and "[w]ithin weeks of switching water sources, complaints began to pour in from residents regarding the smell, taste, and color of the drinking water," including complaints from residents that "the water was making them ill"; in August and September, 2014, the City issued boil water advisories because of excess levels of E. coli and total coliform bacteria in the water). Thus, not only does the Complaint fail to include any allegation that anything a VNA defendant did or failed to do after mid-February 2015 proximately caused Angelo's alleged losses; it couples that failure with factual allegations that *do* plausibly suggest just the opposite.

Because the Complaint fails to allege that anything that a VNA defendant did or failed to do was a cause-in-fact of any of Angelo's alleged losses, Angelo's claim against the VNA Defendants should be dismissed in its entirety with prejudice.

## CONCLUSION

The Court should dismiss Plaintiffs' ordinary negligence, gross negligence, negligent infliction of emotional distress, and fraud claims against the VNA Defendants with prejudice; should dismiss Plaintiffs' demands for punitive and exemplary damages against the VNA Defendants with prejudice; and should dismiss the individual claims of plaintiffs Kelso, Munoz, Brown, Gilcreast, EPCO, and Angelo's Coney Island against the VNA Defendants, in whole or in part, with prejudice.

Respectfully submitted,

**CAMPBELL, CAMPBELL,**      **BUSH SEYFERTH & PAIGE**
**EDWARDS & CONROY P.C.**      **PLLC**

By: /s/ James M. Campbell      By: /s/ Cheryl A. Bush
James M. Campbell      Cheryl A. Bush (P37031)
John A. K. Grunert      Michael R. Williams (P79827)
One Constitution Center, 3rd Floor      3001 W. Big Beaver Rd. Suite 600
Boston, MA 02129      Troy, MI 48084
(617) 241-3000      (248) 822-7800
jmcampbell@campbell-trial-lawyers.com      bush@bsplaw.com
jgrunert@campbell-trial-lawyers.com      williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: December 1, 2017

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2017, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.


By:   /s/ Michael R. Williams
              Michael R. Williams (P79827)
              williams@bsplaw.com