UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

In re Flint Water Cases

_____

Civil Action No. 5:16-cv-10444

Honorable Judith E. Levy
Magistrate-Judge Mona K. Majzoub

**VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC, VEOLIA NORTH AMERICA, INC, AND VEOLIA NORTH AMERICA, LLC'S MEMORANDUM REGARDING FIFTH AMENDMENT AND <u>IMMUNITY ISSUES</u>**

The appropriate solution to the procedural issues arising from the Government Defendants' immunity defenses and the 5th amendment issues some Government Defendants raise is not to exempt them from discovery. So extreme a remedy is neither necessary to protect the Government Defendants' legitimate interests nor proper where, as here, there are numerous other parties whose rights and interests must also be recognized and a significant public interest to be taken into account. The appropriate solution in the context of cases like these, as suggested by numerous persuasive decisions from other courts, is to manage discovery by means of an order (of which a suggested form is attached to this response) that at once avoids the potentially unfair burdens the Government

1

Defendants hypothesize and yet advances in a substantial, fair, and balanced way the disclosure of relevant information.

1. <u>The Government Defendants' Immunity Defenses Do Not Justify Exempting Them From Participation In Discovery.</u>

The Government Defendants take the position that until their motions to dismiss based on immunity defenses have been decided by this Court and, to the extent this Court denies the motions, by the Court of Appeals, their claimed immunities protect them from having to participate in any way in discovery. That is not correct in cases like these. "Although qualified immunity is an entitlement to be free from the burdens of time-consuming pretrial matters and the trial process itself, it is a right to immunity *from certain claims*, not from litigation in general." *Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (emphasis original; citations and internal quotation marks omitted). In cases like these the Government Defendants are exempt as a matter of law only from discovery that is relevant *solely* to their immunity defenses or *solely* to claims brought only against them that must be dismissed if they prevail on their immunity defenses. *Cabral v. County of Glenn*, 2009 WL 1911692 at *2 (E.D. Cal. 2009); *S.D. v. St. Johns County School Dist.*, 2009 WL 4349878 at *5 (S.D. Fla. 2009); *see also Dominguez v. Overton*, 2008 WL 495504 at *1-2 (E.D. Mich. Feb. 21, 2008); *Grose v. Caruso*, 2007 WL 2225873 at *2 (E.D. Mich. Aug. 2, 2007). There will at most be very little discovery -- there probably will be none -- that meets those criteria in these cases.

The Government Defendants all have evidence that is substantially relevant to claims and defenses of other parties in the Flint Water Cases whether or not the Government Defendants ultimately prevail on immunity-based motions to dismiss. In large part this is because evidence of Government Defendants' causal fault will be admissible at trial even if they enjoy valid immunity defenses to liability and even if all claims against them are dismissed. *See* MCL 600.2957(1) and (3).[1] They will have to produce documents and other materials in their possession, custody, or control regardless of whether their immunity defenses are ultimately accepted or rejected, they will have to testify at deposition, and some or all of them will have to testify at trial regardless of the merit or lack of merit of those defenses. Whether and to what extent one or more Government Defendants engaged in wrongful conduct that contributed to injure particular plaintiffs, and how the gravity of one or more Government Defendants' causal misconduct compares with

---

[1] "(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action. .... (3) Sections 2956 to 2960 do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided in those sections. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action." MCL 600.2957(1) and (3).

the gravity of any causal misconduct by defendants who are not immune, will to a greater or lesser degree be central issues at the trials of most if not all plaintiffs' claims against most if not all remaining defendants.  Likewise, wholly apart from the effect of MCL 600.2957, a factfinder will need full and accurate information about the interactions that occurred (or did not occur) between Government Defendants and other defendants in order to understand why those other defendants acted as they did and whether or not their conduct was in any respect culpable. Whether Government Defendants are or not parties to the action will have no bearing whatsoever on the relevance of their evidence to those issues.

In circumstances like these, whether and to what extent to permit discovery involving defendants asserting immunity defenses to proceed is a matter within the district court's discretion.  *Nero v, Mosby*, 2017 WL 1048259 at *1 (D. Md. 2017); *Mendia v. Garcia*, 2016 WL 3249485 at *2 (N.D. Cal. 2016);  *Donohoe v. Arpaio*, 2012 WL 2063455 at *3 (D. Ariz. 2012); *Galarza v. Szalczyk*, 2012 WL 627917 at *2-*3 (E.D. Pa. 2012);  *Seeds of Peace Collective v. City of Pittsburg*, 2010 WL 2990734 at *2 (W.D. Pa. 2010).  Thus, for example, in *Mendia*, the court found "of key importance" the fact that even if the moving defendants were successful in their pending appeal of the denial of their immunity-based motions to dismiss "they are still subject to deposition as non-parties on claims arising from the same

set of factual circumstances underlying the *Bivens* claims against them -- namely, Plaintiff's FTCA claims against the United States." 2016 WL 3249485 at *3.

Similarly, in *Seeds of Peace*, it was of dispositive importance to the court in denying three defendants' immunity-based motions to stay discovery that those defendants would remain a part of pretrial proceedings against other defendants in the role of fact witnesses. 2010 WL 2990734 at *1. "In short, all claims against [three other defendants] will remain regardless of what the Court of Appeals for the Third Circuit decides in the appeal. [The moving defendants] will be required to provide testimony and participate in discovery on the remaining claims even if the Court of Appeal for the Third Circuit holds that they are entitled to qualified immunity. Thus, it is not possible to shield [them] from the burdens of discovery in this case." *Id.* at *3.

Likewise, in *V.S. v. Muhammad*, 2009 WL 936711 at *1 (E.D.N.Y. 2009), the district court judge affirmed a magistrate judge's denial of a stay pending several defendants' immunity-based appeal where "the plaintiffs' claims against the several defendants are so intertwined that the information relevant to the claims against one party is relevant to the claims against all," so that "whether or not the [moving defendants] are dismissed, their discovery burdens remain the same." *See also*, to like effect, *Nero*, 2017 WL 1048259 at *2 (defendant who invoked immunity would not be irreparably harmed by denying her motion to stay because

5

she "must, in any event, act as a witness in regard to claims against [another defendant]" so that "a stay would only delay any discovery-related burden on her"); *Harris v. City of Balch Springs*, 33 F.Supp.3d 730, 733 (N.D. Texas 2014) ("Morris, for 'good or bad,' is 'front and center' in this litigation. He will be the key witness for the City ... Simply put, Morris is a material witness with respect to those claims against the City. Therefore, even if the Fifth Circuit were to grant Morris qualified immunity ..., he would necessarily be required to testify on behalf of the City"); *Donohoe*. 2012 WL 2063455 at *3 (granting a motion to stay "would at most slightly reduce [the moving defendants'] immediate discovery burden. Their claim of absolute immunity on appeal does not permit them to avoid testifying as fact witnesses regarding the civil RICO claim as it relates to [non-moving] Defendant Arpaio"); *Galarza v. Szalczyk*, 2012 WL 627917 at *3 ("Because the FTCA case against the United States will continue regardless of the outcome of [the ] Motions to Dismiss, there is little risk of **undue** burden upon [the defendants who invoke immunity] in allowing discovery to proceed. [Those defendants] will need to participate in the discovery process in the FTCA case. Thus, we agree ... that staying discovery until the Motions to Dismiss are resolved would merely delay, rather than relieve the burden on [moving defendants] to participate in discovery") (emphasis original); *Castaneda v. Molinar*, 2008 WL 9449576 at *6 (C.D. Cal. 2008) ("If the Ninth Circuit grants the PHS defendants

6

immunity, they will not personally be liable for the conduct in this case. That conduct, however, may well be relevant regardless to Plaintiff's other claims. ... In other words, because the individual PHS defendants are relevant witnesses even if they are found to be immune in their personal capacity, allowing discovery is both appropriate and not prejudicial.")

Other factors a court should take into account in considering whether discovery should be stayed as to defendants claiming immunity are any prejudice that a stay is likely to cause other parties and any effect a stay likely would have on the public interest. *Nero*, 2017 WL 1048259 at *2-*3; *Castaneda*, 2008 WL 9449576 at *2.

Unlike most other defendants in these actions, the VNA defendants have very limited personal knowledge of relevant events. One VNA defendant, VWNAOS, put in a bid in January 2015 for a consulting contract with the City of Flint, a bid and a contract that are both public documents known to all with an interest in them; VWNAOS was hired on February 10, 2015; it had a few people on the ground in Flint from that day until mid-March, 2015; it submitted a few reports that are public documents known to all with an interest in them; then it was gone. It did not participate in the long decision making process in 2011, 2012, 2013, and 2014 that led to the City of Flint's switching its water source to the Flint River; it did not participate in deciding whether it was a good idea or a bad idea for

the City of Flint to switch to the Flint River as its water source; it did not participate in deciding when the switch could or should be made or what needed to be done to the Flint Water Treatment Plant or to the City of Flint's municipal water distribution system to prepare for the switch; it participated in none of the meetings and other communications in which the MDEQ told the City of Flint that it should not institute corrosion control when the switch was made, or about what the City should do instead, or in communications between MDEQ and the EPA about what had to be done in connection with making the switch; it participated in none of the meetings among MDEQ, the City of Flint, LAN, and Rowe employees in which corrosion control, water treatment, or other relevant matters were discussed in 2013 and 2014; it had no role in collecting samples of water from Flint residences or in selecting which residents' water would be sampled; the only Lead and Copper Rule sampling data made available to VWNAOS was derived from samples collected well before it signed its contract with the City; it was long gone from Flint when Virginia Tech's Marc Edwards, Hurley Hospital's Dr. Hanna-Attisha, EPA's Miguel Del Toral, various researchers from the University of Michigan, and others were on scene in Flint doing their investigations. Except for FOIA requests that have moved glacially, the VNA defendants to date have had no practical ability to fill those and other gaps in their knowledge of centrally relevant facts.

The VNA defendants believe disclosures and discovery in the Flint Water Cases must be carefully and deliberately managed if those cases are to proceed in a way that is fair to all and conducive to just resolution as speedily and economically as is realistic in the circumstances; but the need for careful and deliberate management itself means that what *can* appropriately be done now should be done now, so a foundation for orderly future discovery has been laid when the appropriate time for different modes of discovery arrives. In light of the fact that Government Defendants will be subject to discovery whether they win or lose their immunity arguments, there is no significant counterweight to the VNA defendants' need to be able to begin, albeit in a controlled and orderly way, to learn what evidence those Defendants, other parties, and non-parties have.[2]

---

[2] The prejudice the VNA defendants discuss here is prejudice to them that would result from a complete stay on discovery, not the unfair prejudice that would be a result of staying discovery only as to Government Defendants. The LAN Defendants have addressed the latter issue, *see* Submission of the LAN Defendants Regarding the Fifth Amendment, the Eleventh Amendment and Qualified Immunity, Dkt. 262 at 4-6, and the VNA defendants fully agree with those comments by the LAN Defendants. Suffice it to say here that the prejudice caused by a stay, not only to the VNA defendants but also to non-parties, would be magnified by any order that regulates discovery by reference to the identity of defendants rather than by reference to the modes of discovery. Government Defendants surely could not justly be permitted to participate in depositions of other parties or of non-parties when they are unwilling themselves to participate as deponents; but that means any Government Defendant whose immunity defense fails would be entitled to redo all depositions that occur while a partial stay was in effect. *Compare Ashcroft v. Iqbal*, 556 U.S. 662, 685-686 (2009) ("It is no answer to these concerns to say that discovery for petitioners can be deferred while pretrial proceedings continue for other defendants. It is quite likely that, when discovery

There is also a public interest in avoiding *unnecessary* delay just as, the VNA defendants believe, there is a public interest in avoiding unmanaged and disorderly discovery. Resolving these cases fairly and on their merits is going to take a long time. Notwithstanding the media-oriented generalities in plaintiffs' complaints and other filings, the factual issues are numerous, detailed, and complicated. Relevant events occurred over the course of several years and involved thousands of claimants and scores, if not hundreds, of other significant actors. The volume of documentary and electronically-stored evidence in the form of government records, researchers' data, analytical data, and also claimants' medical and education records is huge.

The VNA defendants previously proposed, *see* their Proposal with Respect to a Preliminary Discovery Plan, Dkt. 210 (9/29/17) at 7-12, that all legitimate

---

as to other parties proceeds, it would prove necessary for petitioners and their counsel to participate in the process to ensure the case does not develop in a misleading or slanted way that causes prejudice to their position.") (dicta). And, because parties and their employees would not have had the benefit of document discovery from Government Defendants in preparing to be deposed or in preparing to depose others, it is likely that depositions taken of them while a partial stay was in place would in fact be incomplete, and need to be resumed. Creating a need for renewed or repeated depositions would inevitably multiply expense to all other parties other than the Government Defendants; but would also unfairly impose on the witnesses themselves, forcing them to appear twice for a deposition that could and should have required just a single appearance. The delay in resolving these cases that would be a result of having to redo multiple depositions and of deferring for months all participation in discovery proceedings by defendants whose conduct is at the very center of the events giving rise to these actions does not, it seems to the VNA defendants, require discussion.

interests of all parties, as well as the public interest and the Court's interest in moving these cases toward fair disposition on their merits, will be advanced by an order requiring all parties to exchange documents they have obtained via FOIA requests, by permitting all parties to initiate documents-only discovery from non-parties, by requiring all plaintiffs to provide basic Fact Sheets similar to those that many Genesee County plaintiffs have already provided, and by requiring all parties except defendants who have raised immunity defenses to produce the party's own documents that it "may use to support its claims or defenses." *See* Fed. R. Civ. P. 26(a)(1)(A)(ii).[3]  Those measures will put the parties in a position to be well prepared to proceed expeditiously with oral depositions and formal written and document discovery among the parties once the Government Defendants' immunity defenses have been definitively resolved; and it seems likely that taking those measures and assimilating the information obtained by means of them will take at

---

[3] Rule 26(a)(1)(A)(ii) ordinarily requires parties either to describe or to produce all documents in their "possession, custody, or control" that they may use in support of their claims or defenses. The "control" element expands the scope of what must be described or produced to documents in the possession of the party's attorneys in their capacity as such. That is an unrealistic standard at this point in these cases because attorneys for at least some parties have possession of hundreds of thousands of pages of documents they have obtained for purposes of this litigation via FOIA requests. They cannot fairly be expected to have finished evaluating that volume of material yet for usefulness in supporting their clients' claims or defenses.  Hence the VNA defendants' suggested limitation to the parties' *own* documents. The VNA defendants also think that so limiting the scope of the required production sufficiently minimizes the burden on Government Defendants that they need not be exempted from the obligation.

11

least as long as appellate proceedings on the Government Defendants' immunity defenses take.

2. <u>The Fifth Amendment Privilege Against Self-Incrimination Does Not Entitle Any Government Defendant To A Complete Stay Of Discovery.</u>

"It is clear that nothing in the Constitution requires a civil action to be stayed in the face of a pending or impending criminal indictment, and there is no requirement that civil proceedings be stayed pending the outcome of criminal proceedings." *Federal Trade Comm'n. v. E.M.A. Nationwide*, *Inc.*, 767 F.3d 611, 627 (6th Cir. 2014) (quotation marks, citations, and footnote omitted). "[A] stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy." *Id.* (quotation marks and citation omitted). Whether to stay proceedings, however, and if so how extensive the stay should be, are matters committed to the district court's sound discretion. *Id.* One of the factors a court should consider in exercising that discretion is the extent to which a defendant will be burdened if no stay is entered. *Id.* One such potential burden faced by a defendant who claims the Fifth Amendment privilege in response to discovery requests in the civil action is the adverse inference such a claim ordinarily carries with it. But among other factors the court should consider are the interests of the plaintiffs and other civil defendants in moving the civil action forward, the interests of the courts, and the public interest. *Id.*

Here, there is no need at this juncture for comprehensive analysis and balancing of all the relevant factors identified in *E.M.A. Nationwide*. The reason is that the Fifth Amendment privilege protects people only against being compelled to *testify*; and while occasionally testimony may for Fifth Amendment purposes comprise document productions or other written discovery responses if in the particular circumstances they would be the functional equivalent of testimony, *United States v. Hubbell*, 530 U.S. 27, 34-35 (2000), *Butcher v. Bailey*, 753 F.2d 465, 469 (6th Cir. 1985), no Government Defendant has made a showing that the kinds of discovery that are appropriate at this point in the litigation are of a type likely to call for potentially incriminating testimony or any functional equivalent.

As the VNA defendants suggested in their Proposal with Respect to a Preliminary Discovery Plan, Dkt. 210 (9/29/17) at 13-14, the time is not yet ripe for substantive depositions because the document discovery that is a necessary predicate to their being conducted efficiently and adequately is nowhere near complete.[4] Moreover, participation through counsel at substantive depositions is an exception to the general proposition that the Government Defendants will eventually bear the burdens of discovery even if they prevail on their immunity defenses: any who prevail 100% on that defense will not have to be represented at depositions of *other* people to assure their interests are protected. Postponing

---

[4] *See also* footnote 2 *supra*.

depositions until a later stage of discovery will by itself mostly if not entirely avoid the Fifth Amendment concerns expressed by the Government Defendants.

Likewise, formal discovery requests (interrogatories, document requests, requests for admission) among the parties are not necessary at this point, because the limited discovery the VNA defendants propose that would be applicable to Government Defendants - exchange of documents obtained via FOIA, document disclosures under Rule 26(a)(1)(A)(ii), non-party documents-only subpoenas - will amply and fruitfully occupy the parties' time for the coming months without creating any risk of burdening Government Defendants' Fifth Amendment rights or requiring them to assume any significant discovery burden that they will not eventually have to assume anyway.

So the remedy for the Government Defendants' Fifth Amendment worries is not a generalized stay, or an unfair and inefficient stay only as to Government Defendants, but instead a molding of the discovery process so as to permit the cases to advance without implicating the privilege. It is true such an approach may turn out to be a temporary remedy; if some Government Defendants are still at risk of criminal prosecution several months from now the issue may have to be revisited. But by then maybe more of the criminal matters will have been resolved,

mitigating the problem[5]; and even if that has not occurred, these cases will have been materially advanced in the interim without infringing anyone's rights. That, the VNA defendants believe, is the approach the Court should adopt.

## CONCLUSION

The motions to stay discovery generally or as to the Government Defendants only should be denied. The Court should instead enter an Order in the attached form permitting limited discovery as described in it to proceed as to all parties.

*Respectfully submitted,*

| CAMPBELL CAMPBELL EDWARDS & CONROY, P.C. | BUSH SEYFERTH & PAIGE, PLLC |
|---|---|
| By: /s/ James M. Campbell | By: /s/ Cheryl L. Bush |
| James M. Campbell | Cheryl A. Bush  (P37031) |
| John A. K. Grunert | Michael R. Williams (P79827) |
| One Constitution Center, 3rd Floor | 3001 W. Big Beaver Road, Suite 600 |
| Boston, MA  02129 | Troy, MI  48084 |
| (617) 241-3000 | (248) 822-7800 |
| jmcampbell@campbell-trial-lawyers.com | bush@bsplaw.com |
| jgrunert@campbell-trial-lawyers.com | williams@bsplaw.com |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 7, 2017

---

[5] Just days before this Response was filed, Government Defendant Daugherty Johnson's *nolo contendere* plea to the criminal charges against him was reported.

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2017, I electronically filed the foregoing document with the Clerk of Court using the ECF System, which will send notification to the ECF counsel of record.

By: /s/ John A. K. Grunert
John A. K. Grunert
jgrunert@campbell-trial-lawyers.com
