UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE FLINT WATER CRISES          NO. 5:16-cv-10444
    Plaintiffs,

                                  HON. JUDITH E. LEVY
                                  MAG. MONA K. MAJHZOUB

_____/

## DEFENDANT NANCY PEELER'S
## MOTION TO DISMISS AMENDED COMPLAINT

Now comes Defendant, Nancy Peeler, through counsel, and pursuant

to Fed. R. Civ. P. 12(b)(6), moves for dismissal of Plaintiffs' Consolidated

Amended Class Complaint (Docket #238, Pg ID 8737-8893).  In support of

this Motion, Peeler relies on the facts, law and arguments outlined in the

attached Memorandum of Law in Support.

Pursuant to L.R. 7.1, counsel for Ms. Peeler sought, but did not

obtain, concurrence in the relief requested in this Motion.

WHEREFORE, Defendant Nancy Peeler respectfully requests that

this Honorable Court enter an Order providing for the following relief:

1. Granting this Motion to Dismiss;

2. Dismissing the claims against her with prejudice;

3. Granting her all applicable costs and attorney fees; and

4. Granting her such further relief as the Court deems appropriate.

Respectfully submitted,

/s/Michael S. Cafferty
MICHAEL S. CAFFERTY
Attorney for Defendant Nancy Peeler
333 W Fort St Ste 1400
Detroit, MI 48226
313-628-4717
mcaffe@aol.com
P36613

DATED: December 8, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE FLINT WATER CRISES
    Plaintiffs,

NO. 5:16-cv-10444

HON. JUDITH E. LEVY
MAG. MONA K. MAJHZOUB

---

**BRIEF IN SUPPORT OF**
**DEFENDANT NANCY PEELER'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

**CERTIFICATE OF SERVICE**

## TABLE OF CONTENTS

STATEMENT OF QUESTIONS PRESENTED ..................................... ii

STATEMENT OF CONTROLLING AUTHORITY .............................. ii

INDEX OF AUTHORITIES ............................................................ iv - v

INTRODUCTION ........................................................................ 1

STATEMENT OF FACTS ............................................................ 1

LEGAL ARGUMENT ................................................................... 2

Standard of Review ................................................................... 2

I.    DEFENDANT PEELER IS ENTITLED TO 11TH AMENDMENT IMMUNITY TO THE EXTENT THAT SHE IS SUED IN HER OFFICIAL CAPACITY ................................................................. 3

II.    THERE IS NO CONSTITUTIONAL RIGHT TO SAFE DRINKING WATER ....................................................... 3

III.    THE CLAIMS AGAINST MS. PEELER ARE SUBJECT TO QUALIFIED IMMUNITY ......................................... 10

IV.    THE AMENDED COMPLAINT DOES NOT SET FORTH AN ACTIONABLE STATE CREATED DANGER CLAIM ............. 13

CONCLUSION ........................................................................... 16

## <u>STATEMENT OF QUESTIONS PRESENTED</u>

1. Whether Defendant Peeler is entitled to 11th Amendment Immunity to the extent that she is sued in her official capacity?

2. Whether the U.S. Constitution provides a right to safe drinking water?

3. Whether the § 1983 claims against Defendant Peeler are subject to qualified immunity?

4. Whether the Amended Complaint states a valid § 1983 claim against Defendant Peeler based on a state created danger?

5. Whether the Amended Complaint states a valid § 1983 claim against Defendant Peeler based on a violation of the right to bodily integrity?

## STATEMENT OF CONTROLLING AUTHORITY

Fed. R. Civ. P. 12(b)(6)

42 USC § 1983

## INDEX OF AUTHORITIES

Adelung v Twp. Of Jackson,
1982 U.S. Dist. LEXIS 18183 (10/18/82, S.N.J.) ............... 6, 9, 12, 13

Ashcroft v Iqbal, 556 U.S. 662 (2009) ...................................... 3

Barber v Salem, 953 F.2d 232 (6th Cir., 1992)................................ 10

Belle Atl. Corp. v Twombley, 550 U.S. 544 (2007) ......................... 2

Callihan v Sudimack, 117 F.3d. 1420 (6th Cir., 1997) ........................ 8

Collins v City of Harker Heights, 503 U.S. 115 (1982).................... 4, 7

Concerned Citizens of Neb. v. U.S. NRC,
970 F.2d. 421 (8th Cir., 1992) .............................................. 5

Coshow v Escondido, 132 Cal. App. 4th 687 (2005)......................... 5

DeShaney v Winnebago Cty. Dept. of Soc. Serv.,
489 U.S. 189 (1989)....................................................... 8, 9

Ely v Velde, 451 F.2d. 1130 (4th Cir., 1971) .............................. 4

Garvie v Jackson, 845 F.2d 647 (6th Cir., 1988)........................... 11

Goss, ex. rel v Allowaw Twp. Sch., 790 F. Supp. 2d 221
(D.NJ, 2011) ............................................................... 7

Guertin v Michigan, et al
(Case No. 16-cv-12412)................................... 8, 12, 13, 16

Hood v Suffix City Sch. Bd., 469 Fed. Appx. 154 (4th Cir., 2001)....7, 9

Klien v Long, 275 F.3d. 544 (6th Cir., 2001)............................. 11

Lewellen v Metro. Gov. of Nashville in Davison Cty., Tenn.,
43 F.3d. 345 (6th Cir., 1994)........................................... 7, 9

Lillard v Shelby Cty., 76 F.3d 716 (6th Cir., 1996)..............................8

Lucero v Detroit Public Schools, 160 F. Supp. 2d. 767
(E.D. MI, 2001) ....................................................... 5, 6, 9, 12, 13

Naperville Smart Meter Awareness v City of Naperville,
69 F. Supp. 3d. 830 (N.D., IL, 2014).....................................6

Pearson v Callahan, 555 U.S. 223 (2009)...............................10, 11

Pennhurst State Sch. & Hosp. v Halderman,
465 U.S. 89 (1984) ...........................................................3

Perez v Oakland County, 466 F.3d. 416 (6th Cir., 2002)...................11

Pinkney v Ohio Env. Prot. Agency, 375 F. Supp. 305
(ND Ohio 1974)...............................................................4

Robertson v Lucas, 753 F.3d. 606 (6th Cir., 2014)..........................11

Saucier v Katz, 533 U.S. 194 (2001).........................................11

Terrance v Northville Reg'l, 286 F.3d. 834 (6th Cir., 2002) ............ 11

Upsher v Grosse Pointe Pub. Sch. Sys., 285 F.3d. 448
(6th Cir., 2002) ............................................................7, 9

## INTRODUCTION

Defendant Nancy Peeler is an employee of the Michigan Department of Health & Human Services (MDHHS), which was formerly known as the Michigan Department of Community Health.  At all relevant times, Ms. Peeler held civil service positions within the MDHHS.  These positions included being a unit manager of the Child Health Unit, and later, after reorganization, a Section Manager in the Early Childhood Health Section. In her mid-level management positions, Ms. Peeler oversaw employees who handled many day-to-day functions within the department and was also involved in grant writing and program oversight.  The Complaint asserts 2 federal claims against Ms. Peeler (Count I, 42 U.S.C. § 1983 – Substantive Due Process – State Created Danger) and Count II (42 U.S.C. § 1983 – Substantive Due Process – Bodily Integrity).  As will be discussed herein, there exists numerous separate and independent basis for dismissing Nancy Peeler from this action.

## STATEMENT OF FACTS

Ms. Peeler is specifically referenced on precious few occasions in the Plaintiffs' 153-page Complaint.  At paragraph 63 of the Consolidated Amended Class Complaint (the "Complaint"), Ms. Peeler is identified as an MDHHS employee and a conclusory allegation is made that she

"participated in decisions that deliberately created, increased, and prolonged the public health crisis at issue in this case and participated in the concealment of the harm her decisions caused the Plaintiffs." Pg. ID. 8767. The Complaint also indicates that she is being sued in her individual and/or official capacities. Pg. ID. 8765. Thereafter, the only specific mention of Ms. Peeler in the Complaint is a reference to her on a table of Defendants who are the subject of criminal charges. Pg. ID. 8847.

There is no allegation in the Complaint that Nancy Peeler, as an employee of the MDHHS, had any role whatsoever in the decision to discontinue Flint's participation in drawing water from Lake Huron via the DWSD, nor was she alleged to have been involved in any of the decisions pertaining to whether to use corrosion control additives. Although the Complaint fails to make any specific allegations against her, Nancy Peeler's involvement was after-the-fact when she reviewed blood lead test results more than a year after the switch of water sources.

## LEGAL ARGUMENT

## Standard of Review

Pursuant to Fed. R. 12(b)(6), a Complaint against the Defendant must demonstrate a claim against that particular Defendant that his "plausible on its face". Bell Atl. Corp. v Twombley, 550 U.S. 544, 570

2

(2007).  The pleading must provide a "showing, rather than a blanket assertion, of entitlement to relief [because] [w]ithout some factual allegation in the Complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also the ground on which the claim rests." Id. at 555, n. 3.  In order to state a "plausible" claim, more than a mere "formulaic recitation of the elements for a cause of action" is required.  Id. at 555.  Conclusory allegations are not sufficient to state a cause of action.  Ashcroft v Iqbal, 556 U.S. 662, 679 (2009).

## I. DEFENDANT PEELER IS ENTITLED TO 11TH AMENDMENT IMMUNITY TO THE EXTENT THAT SHE IS SUED IN HER OFFICIAL CAPACITY

The 11th Amendment to the United States Constitution prohibits suits against the State, its agencies, and employees in Federal Court.  See, e.g. Pennhurst State Sch. & Hosp. v Halderman, 465 U.S. 89, 100-01 (1984).  The Plaintiffs' Complaint in this action specifically states that Ms. Peeler is being sued in her official capacity, as well as her individual capacity.  Complaint, paragraph 57.  Pg ID 8765.  To the extent that Ms. Peeler, a state employee, is sued in her official capacity, the Complaint must be dismissed pursuant to the 11th Amendment.

## II. THERE IS NO CONSTITIONAL RIGHT TO SAFE DRINKING WATER

Plaintiffs' substantive due process claims must be dismissed because they are based on the flawed underlying theory that there is a constitutional right to safe drinking water. Claims under § 1983 must be based on a violation of rights protected by the Constitution. See, e.g. Collins v City of Harker Heights, 503 U.S. 115, 120 (1982). Beyond firmly established rights that are deeply rooted in this country's traditions and the conscience of the American people (so-called "fundamental rights"), courts are cautioned to proceed with extreme care before determining that particular claimed right is guaranteed by the Constitution. The Supreme Court in Collins observed that "judicial self-restraint requires . . . the utmost care whenever we are asked to break new ground in this field." Collins, supra, 503 U.S. at 125.

The 14th Amendment's due process clause cannot be stretched to include a Constitutional right to safe drinking water. Numerous cases that have addressed analogous issues have rejected such an expansion of rights protected by the Constitution. For example, in Pinkney v Ohio Env. Prot. Agency, 375 F.Supp. 305, 310 (ND Ohio, 1974), the Court observed that it was "unable to rule that the right to a healthful environment is a fundamental right under the Constitution." Similarly, the Fourth Circuit in Ely v Velde, 451 F.2d. 1130, 1139 (4th Cir., 1971), noted that the right to "Constitutional protection for the environment has not been established."

4

See, also, <u>Concerned Citizens of Neb.</u> v. <u>U.S. NRC</u>, 970 F.2d. 421, 426-7 (8th Cir., 1992)(no right to "an environment free of any non-natural radiation").

A state appellate court decision directly addressing this issue is <u>Coshow</u> v. <u>Escondido</u>, 132 Cal. App. 4th 687, 709 (2005). In that case, the California Court of Appeals observed that the "right to bodily integrity is not co-extensive with the right to be free from . . . an allegedly contaminated substance in the public drinking water." Although certainly not binding by this Court, the decision in <u>Coshow</u> is highly persuasive.

A case from this district which sheds light on the issue decided by Judge Hood is <u>Lucero</u> v <u>Detroit Public Schools</u>, 160 F. Supp. 2d. 767 (E.D. MI, 2001). In <u>Lucero</u>, the Plaintiffs claimed that the decision to build a new school on a contaminated site subjected them to exposure to contaminants and violated their right to bodily integrity protected by the 14th Amendment. Judge Hood referenced an unpublished decision from United States District Court in New Jersey involving claims that a polluted landfill contaminated ground water and drinking wells. Judge Hood included the following quote from that case in her decision:

> "The Plaintiffs' description of the effects of chemicals in their water as a violation of their right to bodily integrity sufficient to violate a liberty interest under the due process clause in the circumstances of this case stretches the right to 'personal

security' to unrecognizability.  No case we have seen takes the rights so far; nor, we believe, is there any sound reason for doing so."

(160 F. Supp. 2d. at 798), quoting from Adelung v Twp of Jackson, 1982 U.S. Dist. LEXIS 18183 (October 18, 1982, S.N.J.).

In Lucero, Judge Hood went onto find that the Plaintiff's claims of violation of the 14th Amendment (right to personal bodily integrity), based on a school being built on a contaminated site, did not shock the judicial conscience and was not "based upon malice or sadism" and therefore failed.[1]  160 F. Supp. 2d. at 799.

A more recent decision involving claimed violation of the 14th Amendment right to "bodily integrity" is Naperville Smart Meter Awareness v City of Naperville, 69 F. Supp. 3d. 830 (N.D., IL, 2014).  In that case, the Plaintiff non-profit corporation claimed that the City's decision to install "smart meters" in the homes of citizens violated their right to bodily integrity because the radio waves emitted by the meters posed health risks.  In rejecting the claim, the Court first noted that, based on long-standing case law, the due process clause "does not purport to supplant traditional tort law laying down rules of conduct to regulate liability for injuries that attend to living together in society."  69 F. Supp. 3d. at 839. (quoting from the

---

[1] There is no allegation in this case that any of Ms. Peeler's alleged acts or omissions were based on malice or sadism.

Supreme Court decision in <u>Collins</u> v <u>City of Harker Heights</u>, 503 U.S. 15

(1992).  In rejecting the claim brought by the Plaintiff, the Court in the

<u>Naperville Smart Meter</u> case observed that, at most, the City acted

negligently by increasing a risk of injury as a result of the radio frequency

waves emitted by the smart meters.  The Court noted that allegations "of

such risk exposure are insufficient to state a claim for deprivation of bodily

integrity under the Fourteenth Amendment." <u>Id</u>.  In support of its ruling, the

Court cited the Sixth Circuit's decision in <u>Upsher</u> v <u>Grosse Pointe Pub. Sch.</u>

<u>Sys.</u>, 285 F.3d. 448, 453-54 (6th Cir., 2002)(rejecting a Fourteenth

Amendment claim based on exposure to asbestos contaminated materials

in a school); <u>Hood</u> v <u>Suffux City Sch. Bd.</u>, 469 Fed. Appx. 154, 159 (4th Cir.,

2001)(holding that a school teacher's right to "bodily integrity" was not

violated by the school board knowingly allowing her to work in an

environment contaminated by excessive mold and bacteria growth);

<u>Lewellen</u> v <u>Metro. Gov. of Nashville in Davison Cty., Tenn.</u>, 34 F.3d. 345

(6th Cir., 1994)(city, county and board of public education's decision to build

a school under a dangerous high-voltage conductor line was, at most, a tort

and not a constitutional violation of the right of bodily integrity.); and <u>Goss,</u>

<u>ex. rel.</u> v <u>Allowaw Twp. Sch.</u>, 790 F. Supp. 2d. 221, 227-28 (D.NJ,

2011)(school board's decision to build a cement playground rather than a

playground composed of a softer surface was not a deprivation of student's right to bodily integrity).

Assuming *arguendo* that the right to bodily integrity includes a right to safe drinking water, it is clear that the 14th Amendment's Due Process Clause is "phrased as a limitation on the state's power to act, not as a guarantee of certain minimal levels of safety and security." <u>DeShaney</u> v. <u>Winnebago Cty. Dept. of Soc. Serv's</u>, 489 U.S. 189, 195 (1989). <u>DeShaney</u> observed that it was not enough for a Complaint to merely allege that a government actor "failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." <u>Id</u>. As such, a bodily integrity claim requires that Plaintiffs' complaint plausibly establish that Ms. Peeler engaged in *affirmative* acts (i.e. something more than failure to discover or failure to warn) that violated the Plaintiffs' right to bodily integrity and rose to the level of shocking the conscience of the Court.  <u>Lillard</u> v. <u>Shelby Cty</u>., 76 F.3d. 716, 724-725 (6th Cir., 1996)(quoting from an earlier case and observing the "shocks the conscience" requirement).  Generally, the "shock the conscience" standard requires physical force.  <u>Callihan</u> v. <u>Sudimack</u>, 117 F.3d. 1420 (6th Cir., 1997).

Counsel understands that in <u>Guertin</u> v <u>Michigan, et al</u>, (Case No. 16-cv-12412) this Court determined that the Plaintiffs in that case sufficiently

pled that "the conduct of many of the individual Governmental Defendants was so egregious as to shock the conscious and violate Plaintiff's clearly established fundamental right to bodily integrity . . .". Counsel respectfully disagrees and notes that other "bodily integrity" claims based on environmental contaminants, such as Upsher, Hood, Lewellen, have failed. Even if one assumes for the sake of argument that the Governmental Defendants in this case, including Defendant Nancy Peeler, were somehow negligent in their handling of BLL tests relating to the Flint Water Crisis, such acts or omissions do not rise to the level of violation of the due process clause. As noted in the Adelung case cited by Judge Hood in Lucero, describing "the effects of chemicals in . . . water as a violation of [the] right to bodily integrity sufficient to violate a liberty interest under the due process clause . . . stretches the right to 'personal security' to unrecognizability." See Lucero, 160 F. Supp. at 798. Moreover, as to Ms. Peeler, Plaintiffs' claims are limited to "failure to discover" and "failure to warn" theories (which are insufficient as a matter of law per the Supreme Court's ruling in DeShaney). After all, given her position in the MDHHS, the Plaintiffs have not and could not plausibly assert that she played any role in the contamination of the Flint Water System. At best, Plaintiffs could claim that Ms. Peeler was negligent in handling after-the-fact BLL testing

results.  However, Plaintiffs' Complaint does not allege as much.  It contains no non-conclusory factual allegations against Ms. Peeler.

Not every wrong allegedly committed by a state actor rises to the level of a violation of the Constitution.  Assuming for the sake of argument that the Plaintiffs are correct in their claims that there was contamination of Flint tap water through a series of mistakes made by governmental employees, that does not necessarily equate with a violation of the U.S. Constitution.  There is not a federal remedy, let alone a Constitutional remedy, for every asserted wrong.  Moreover, the Complaint here is devoid of any conscience-shocking allegations against Ms. Peeler that could give rise to a due process claim against her even if the "right to safe drinking water" was an established Constitutional right.

## III.   THE § 1983 CLAIMS AGAINST MS. PEELER ARE SUBJECT TO QUALIFIED IMMUNITY

Ms. Peeler, as a State employee, is entitled to qualified immunity from the § 1983 claims unless the Plaintiff can demonstrate that her actions violated "clearly established law at the time [she] acted."  Barber v Salem, 953 F.2d 232, 236 (6th Cir., 1992); Pearson v Callahan, 555 U.S. 223, 231 (2009).  The Plaintiffs have not alleged and cannot prove that Ms. Peeler violated any clearly established Constitutional rights through her alleged conduct described in the Complaint.  As the Supreme Court noted in

Saucier v Katz, 533 U.S. 194, 202 (2001), for a Constitutional right to be clearly established, it must be established in a particularized sense so that a reasonable Government official in the position of Nancy Peeler would know that his or her actions were in violation of specific Constitutional rights. The asserted Constitutional right must be established in the *specific context* of the case and not merely as a general or broad proposition. See, e.g. Perez v Oakland County, 466 F.3d. 416, 427 (6th Cir., 2002). Peeler is entitled to qualified immunity on the § 1983 claims made against her.

The doctrine of qualified immunity was intended to "shield the official from suit altogether, saving him or her from the burdens of discovery and costs of trial." Klien v. Long, 275 F.3d. 544, 550 (6th Cir., 2001). As such, qualified immunity is determined as a matter of law by the Court. Garvie v. Jackson, 845 F.2d. 647, 649 (6th Cir., 1988). The Supreme Court has consistently "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 232 (2009). Moreover, in order to establish a constitutional claim against Ms. Peeler, the Complaint must sufficiently allege that she *herself* engaged in specific conduct in violations of the Plaintiffs' Constitutional rights. Robertson v. Lucas, 753 F.3d. 606, 615 (6th Cir., 2014); Terrance v. Northville Reg., supra, 286 F.3d. at 842. Given the scant reference to

Peeler in the Complaint, it strains credulity to suggest that the standard has been met in this case.

Counsel is aware that this Court rejected the qualified immunity defense in connection with the Motion to Dismiss in the related case of Guertin v Michigan, et al (16-cv-12412).  Several of the Defendants in that case, including Defendant Peeler, have filed claims of appeal on the issue of qualified immunity.  If the right to contaminant-free drinking water is ultimately determined to be protected by the due process clause of the 14th Amendment, this would be a sea change in the current state of the law. The Adelung case cited by Judge Hood in the Lucero case, supra, observed that describing the "effects of chemicals in . . . water as a violation of the right to bodily integrity sufficient to violate a liberty interest under the due process clause . . . stretches" that right to the point of "unrecognizability".  160 F. Supp. 2d. at 798.  Moreover, unlike the instant Complaint, the Complaint in Guertin contained some specific allegations against Ms. Peeler.

If the Guertin case or other cases ultimately result in the establishment of the right to a contaminant-free drinking source as constitutionally protected, then, going forward, Section 1983 cases could be based on this theory.  However, at the time Defendant Peeler's alleged

acts/omissions, it cannot be said that this right was "clearly established". Therefore, even if the Sixth Circuit ultimately accepts the Plaintiff's argument that the right to bodily integrity protected by the due process clause of the 14th Amendment extends to this factual scenario, such a ruling would not defeat the argument that such right had not been "clearly established" at the relevant time.  Counsel respectfully disagrees with this Court's determination in Guertin that this right, though not explicitly established by prior cases, was clearly foreshadowed by previous authority. In fact, previous authority such as the Adelung case cited by Judge Hood in Lucero expressly rejected the notion that the right to "bodily integrity" extended to containment-free tap water.

IV.   **THE COMPLAINT DOES NOT SET FORTH AN ACTIONABLE STATE CREATED DANGER CLAIM**

Count I of the Plaintiffs' Complaint is styled as a due process violation based on the state created danger doctrine.  However, this is a very limited doctrine requiring that the Plaintiff demonstrate three distinct elements.  Specifically, the following elements must be demonstrated:  (1) An affirmative act by state actors creating or increasing the risk that the Plaintiff would be exposed to "an act of violence by a third party"; (2) A showing that the actions of the state employees/agents placed the Plaintiff "specifically at risk" as distinguished from a risk that affects the public at

13

large; and (3) A showing that the Defendants knew or should have known that their actions "specifically endangered the Plaintiff." See, e.g., <u>Jones</u> v. <u>Reynolds</u>, 423 F.3d. 685, 690 (6th Cir., 2006)(quoting from an earlier decision); <u>Nelson</u> v <u>City of Madison Heights</u>, 845 F.3d. 695, 700 (6th Cir., 2017).

The Plaintiffs' Complaint does not plausibly establish any of the 3 elements under the State Created Danger Doctrine as to Ms. Peeler. Ms. Peeler, as a mid-level manager in the MDHHS, was not even arguably involved in any of the decisions that led to contaminated water. In fact, there is nothing in the Plaintiffs' Complaint that even hints that she was involved in any such decisions. Rather, the Complaint alleges that various decisions were made by *other* Defendants to switch the water source from Lake Huron (via the DWSD) to the Flint River. No violence by a third party is alleged at all. In fact, no violence is alleged (unless one views a sub-standard water system as an "act of violence", which would be unprecedented).

The only scenarios where the Sixth Circuit has allowed a Plaintiff to proceed with § 1983 claims based on the State Created Danger Doctrine are those involving "private acts of violence". See, e.g. <u>Jackson</u> v. <u>Schultz</u>,

429 F.3d. 586, 591 (6th Cir., 2005); Nelson v City of Madison Heights, supra.  No such act is alleged here.

Even if the Complaint could be interpreted to establish some affirmative act by Ms. Peeler that created or increased the risk that Plaintiff would be "exposed to an act of violence by a third party", the Complaint does not meet the second or third elements of the State Created Danger Doctrine.  The Complaint does not establish that the Plaintiffs were specifically placed at risk, as opposed to "a risk that affects the public at large."  Jones v. Reynolds, supra, 438 F.3d. at 590.  The State Created Danger Doctrine only allows for a claim where the Government employee could have specified the individuals it was putting at risk, nearly to the point of naming the possible victim or victims.  Id. at 696.  Here, the risk was to anybody who consumed water from the Flint Water System (whether or not they were residents of Flint), as opposed to any specific individuals.  In other words, the Plaintiffs do not and cannot claim that they were specifically targeted by state employees who intended to subject them to risks different from the risks faced by the public at large.

There are no specific allegations against Ms. Peeler in the Complaint.  Although not alleged, the most that could be claimed against her is that she engaged in negligent conduct *after* the Plaintiffs were already put at risk

(i.e. that she failed to discover or disclose information from BLL testing that came out more than a year after the switch of the water source from Lake Huron via the DWSD to the Flint River).  For this reason, the Plaintiffs' Complaint also fails to meet the third prong of the State Created Danger Doctrine in that it fails to plausibly demonstrate that Ms. Peeler "knew or should have known that [her] actions specifically endangered the Plaintiff[s]."  Jones, supra, 438 F.3d. at 590.  Thus, as was determined by this Court in Guertin, supra, the Complaint in this case does not plausibly meet the standards of the State Created Danger Doctrine.  The argument here is more compelling than the argument in Guertin because the Complaint in that case had some specific factual allegations regarding Ms. Peeler.  The Complaint in the instant case is devoid of any non-conclusory factual allegations against Ms. Peeler.

## CONCLUSION/RELIEF REQUESTED

At all pertinent times, Ms. Peeler was a mid-level manager within the MDHHS.  She played no role whatsoever in the decision to switch water sources from the Huron River (through the DWSD) to the Flint River, nor did she play any role in any decisions regarding the operation of the Flint Water System.  Her inclusion as a Defendant in this case seems to be as a result of the Plaintiffs taking a "shotgun approach" to naming Defendants,

essentially naming any person whose name is mentioned in any document having anything to do with the Flint Water Crisis or its aftermath.  Other than a few conclusory statements, no factual allegations are made in the Complaint against Ms. Peeler.  For the reasons set forth in this Memorandum, the Plaintiffs' claims against Ms. Peeler should be dismissed.

Respectfully submitted,


/s/Michael S. Cafferty
MICHAEL S. CAFFERTY
Attorney for Defendant Nancy Peeler
333 W Fort St Ste 1400
Detroit, MI 48226
313-628-4717
mcaffe@aol.com

Dated:   December 8, 2017