## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| *In re* Flint Water Cases. | Case No.: 16-10444 |
|  | HON. JUDITH E. LEVY |
|  | MAG. Mona K. Majzoub |

_____

## MOTION FOR REPLACEMENT OF CO-LIAISON COUNSEL FOR INDIVIDUAL CASES

NOW COME, Class Plaintiffs, through Interim Co-Lead Class Counsel, and move this Court for replacement of Co-Liaison Counsel, Hunter Shkolnik, for the following reasons, among others:

1.     Hunter Shkolnik was appointed Co-Liaison counsel for the individual cases pending in this Court related to the Flint Water Crisis, on July 27, 2017. (Dkt. 96, 07/27/17).

2.     Thereafter, on October 26, 2017, this Court set forth the duties of Co-Liaison counsel including a duty to "act fairly, efficiently and economically in the interests of all parties and party counsel." (Dkt. 234, 10/26/17, Page ID 8726).

3.     In the ensuing four months, Plaintiffs Interim Co-Lead Class Counsel have learned that Co-Liaison Counsel Hunter Shkolnik has entered into excessive fee agreements to pursue individual actions involving the Flint Water Crisis for

Flint residents, utilized his status as appointed liaison counsel and knowledge obtained through that position, to influence and solicit class members and individuals with pre-existing agreements with other counsel, and failed in his obligation to be forthright in fulfilling his obligations as liaison counsel.

4.     On March 12, 2018, Interim Co-Lead Class Counsel sought concurrence from Hunter Shkolnik pursuant to L.R. 7.1(2).  The specific motion, its basis and the relief sought was set forth in an email the morning of March 12th, and a proffer for a conference was made prior to the filing.  Despite these efforts the parties were unable to conduct a conference and concurrence was not obtained.

WHEREFORE, based upon these concerns as detailed in the facts, exhibits and law set forth in the brief in support of this Motion, Interim Co-Lead Class Counsel moves for replacement of Hunter Shkolnik as Co-Liaison Counsel for individual cases in this matter.

DATED:   March 12, 2018                     Respectfully Submitted,


/s/ Theodore J. Leopold
Theodore J. Leopold
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
2925 PGA Boulevard, Suite 220
Palm Beach Gardens, FL 33410
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

/s/ Michael L. Pitt
Michael L. Pitt
Cary S. McGehee
**Pitt McGehee Palmer & Rivers, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Case No.: 16-10444

HON. JUDITH E. LEVY

MAG. Mona K. Majzoub

_____

## BRIEF IN SUPPORT OF MOTION FOR REPLACEMENT OF CO-LIAISON COUNSEL FOR INDIVIDUAL CASES

### INTRODUCTION

Seven months ago, this Court issued an Order appointing Hunter Shkolnik and Corey Stern as liaison counsel for purposes of coordinating the individual personal injury and property damage cases related to the Flint Water Crisis and pending before this Court. Order Granting in Part Consol. of Class Actions, Appointment of Interim Co-Lead Class Counsel, and Appointment of Liaison Counsel for the Individual Actions at 2, July 27, 2017, ECF No. 173 ("Order").

The Order was based on representations that liaison counsel would maintain the highest standards of decorum and cooperation among counsel. For the individual Flint Water cases, Liaison Counsels' duties in this case, as set forth by this Court, include initiating and coordinating all pre-trial discovery, initiating

proposals, joint briefs, preparing periodic status reports for counsel for Plaintiffs in the individual cases, and keeping the other individual Plaintiffs' counsel advised of the progress of this litigation.  In fulfilling their duties, liaison counsel were directed to "act fairly, efficiently and economically in the interests of all parties and party counsel."  Order Delineating the Duties of Interim Co-Lead Class Counsel and Co-Liaison Counsel for the Individual Actions and Creating a Pls.' Executive Committee for the Proposed Class at 6, Oct. 26, 2017, ECF No. 234.

Interim Co-Lead Class Counsel bring to this Court's attention one of the liaison counsel, Hunter Shkolnik's, acts and omissions since appointment as liaison counsel, which have not adhered to this Court's orders setting forth the duties of liaison counsel and which further present the appearance of impropriety and self-advancement at the expense of the putative class and other Plaintiffs' counsel.

Interim Co-Lead Class Counsel, with the support of the majority, of counsel representing individual Plaintiffs and Executive Committee members, bring this motion, at this time, upon becoming aware of a series of ethical issues and conflicts, and before the Flint Water litigation proceeds further.  At this juncture, the removal and replacement of Co-Liaison counsel will not delay the litigation and there are many alternatives for this role if the Court deems two liaison counsel are required.  There are forty-seven (47) individual cases represented by nine (9) different law firms pending before this Court.  The number of individuals

2

represented in each case varies from 1 to 166 with a total of 375 individually

identified Plaintiffs in the 47 cases filed.[1]  It appears that Napoli Shkolnik

represents fifty-eight (58) of the individual Plaintiffs in filings pending before this

Court.

## ARGUMENT

I.  **MR. SHKOLNIK'S ACTIONS IN ENTERING INTO EXCESSIVE FEE AGREEMENTS WITH FLINT CITIZENS AND SOLICITING CLIENTS OF OTHER COUNSEL IS INCONSISTENT WITH THIS COURT'S ORDER TO 'ACT FAIRLY' AND 'IN THE INTERESTS OF ALL PARTIES AND PARTIES' COUNSEL'**

### A.  Napoli Shkolnik's Excessive and Non-Compliant Retainer Agreements.

Mr. Shkolnik and Napoli Shkolnik, PLLC, have entered into Retainer

Agreements with Flint residents:

> To prosecute any legal claim for negligence (or other viable
> causes of action) against any and all parties, individuals and/or

---

[1] At the status conference on February 20, 2018, Mr. Shkolnik stated "[J]ust so the record is clear, there is also a *Kidd v. McLaren* case which is before the Court. So there is a second McLaren case."  Tr. of Feb. 20, 2018 Status Conference at 19, Feb. 20, 2018,  ECF No. 391.  Class Counsel did not include this case in the total number of individual cases pending before this Court, as no such case exists. Plaintiffs' counsel are aware that Mr. Stern, after the February 20th status conference stated, in an email dated February 23, 2018, that he intended to file a case on behalf of the Estate of  Robert Skidmore with McLaren Hospital to be named as one of the Defendants in the future.  This case has not yet been filed.

3

> corporations that are found to be liable under the law for
> injuries and/or property damage suffered by [client] arising out
> of the contamination of the drinking water in Flint.

(Exhibit 1, Napoli & Shkolnik retainer agreement dated 03/10/2016).

The Napoli Shkolnik retainer agreements contain provisions that are contrary to the controlling ethics rules and laws of the State of Michigan which, pursuant to Eastern District of Michigan Local Rule 83.20(j), apply to counsel practicing before this Court.  The Napoli Shkolnik retainer agreement provides for a forty percent (40%) contingency fee in violation of Michigan law, which caps contingent fees on personal injury matters at thirty-three percent (33%).  MCR 8.121(b).  The retainer agreement provides for clearly excessive fees for Napoli Shkolnik in violation of Michigan Rule of Professional Conduct 1.5(a).

The Napoli Shkolnik retainer agreements further provide that the contingency percentage they claim for fees will be computed from the "gross" settlement, as opposed to a percentage of the "net" settlement.  This is in violation of MCR 8.121(C), and Michigan rules and ethics against attorneys seeking excessive fees.  The widespread use of this retainer agreement, the failure to ensure that his retainer agreements were compliant with Federal and Michigan rules and law combined with the absence of neutrality and the appearance of impropriety in utilizing his role as Co-Liaison Counsel to advance the interests of Napoli Shkolnik necessitated this motion.

**B.      There is an Appearance that Mr. Shkolnik Used Both his Position as Court Appointed Liaison Counsel and Knowledge Obtained in that Position to Seek an Improper Advantage at the Expense of Other Counsel and to the Detriment of Flint Citizens.**

One of the designated duties of Co-Liaison Counsel and Interim Co-Lead Class Counsel is to participate in all settlement negotiations on behalf of the class and individual Plaintiffs.  Order Delineating the Duties of Interim Co-Lead Class Counsel at 4-5, ECF No. 234.   Mr. Shkolnik attended the first meeting with the court appointed mediators on January 26, 2018.  Interim Co-Lead Class Counsel and Co-Liaison Counsel are charged with a duty to act as representatives of the interests of the class and individuals, respectively, in these negotiations.  It would be inappropriate for counsel, including Co-Liaison Counsel, Mr. Shkolnik, to use information garnered in these confidential settlement discussions to obtain an advantage over the individual counsel and cases that he is charged with representing in these discussions.

However, shortly after the first settlement meeting, the Napoli Shkolnik firm took measures to sign up any and all residents of Flint as clients of Napoli Shkolnik.[2]  A town meeting was advertised to discuss the possibility of settlement,

---

[2] Mr. Shkolnik specifically advised Flint residents that they did not need to have any injury to sign up.  Indeed, representatives of Napoli Shkolnik told attendees "what is going to help with the settlement is how many people are signed up."  Mr. Shkolnik stated, "We will go in there with 85,000 Plaintiffs . . . they can't say . . .

and Napoli Shkolnik focused on signing up as many people as possible "before settlement." (Exhibit 2, Napoli Shkolnik Flyer advertising free dinners and celebrity emcee at February 18, 2018 event).

While there is nothing necessarily untoward about hosting an informational event and passing out retainers, the timing, the repeated representation that the federal judge appointed him to be in charge of all the lawyers handling individual cases, and the apparent use of settlement information obtained in his role as liaison counsel, provides the appearance of using his position to benefit the Napoli Shkolnik firm. There is, for example, no benefit to an individual class member, who may be eligible for a single uniform payment for property damages and impact on daily life, to sign an individual retainer. The only advantage is to the attorney who will garner a percentage of the award based on the retainer agreement.

In addition to the appearance of using his position to benefit his firm, Mr. Shkolnik also engaged in several activities that are detrimental to counsel and contrary to the governing ethics rules as detailed below.

---

here is a small settlement go away." (February 18, 2018, Town Hall Meeting Hosted by Napoli Shkolnik).

## C.     Continued Use of Improper Retainers and Solicitation of Other Counsel's Clients.

In his position as Co-Liaison Counsel for the individual cases, Mr. Shkolnik owes a duty to advise, coordinate and work with the individual case counsel and not to elevate his interest above and to the detriment of others.

At the Town Hall meeting on February 18th, Napoli Shkolnik, persons on the panel, and the MC Hill Harper told attendees they should all retain counsel and handed out a packet with Napoli Shkolnik retainer agreements.  Although Mr. Shkolnik told people only to retain *an* attorney, the MC and a councilman on the panel encouraged people to sign up with Napoli Shkolnik, and at one point the MC advised attendees that agreements they had signed with other attorneys were not binding. [3]

Michigan Rule of Professional Conduct 7.3 addresses solicitation and provides, "[a] lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." MPRC 7.3(a).  The Comment to Rule 7.3 observes:

> There is a potential for abuse inherent in direct contact by a lawyer with a prospective client known to need legal services. These forms of contact between a lawyer and a prospective

---

[3] At no time did Mr. Shkolnik counter those statements.

client subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult to evaluate fully all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and overreaching.

The statements made by Napoli Shkolnik at this event which followed the first settlement meeting utilized their status as court appointed liaison (repeatedly referring to the Court's appointment of them as lead attorneys), and pending settlement negotiations to influence the Flint residents as to their choice of counsel. Napoli Shkolnik overreached with regard to their statements and again solicited Flint residents with improper retainer agreements.

The Napoli Shkolnik retainer agreements that were passed out at the Town Hall meeting, while changing the fee percentage from 40% to 33%, as required by MCR 8.121(b), continued to advise, that "the contingency fee shall be computed on the gross recovery" in violation of Michigan ethical rules and laws adopted by the local court rules for the Eastern District Federal Court.[4] (MCR 8.121(C) (Exhibit 3, 2018 Retainer Agreement). Thus, as recently as February 18, 2018,

---

[4] The retainer agreement also states "attorneys are hereby granted a power of attorney" to both negotiate and enter into a settlement on their behalf. Ex. 3 at 2.

Napoli Shkolnik was soliciting retainers for excessive fees in violation of Michigan law and rules. [5]

At the February 18, 2018, Town Hall meeting, attendees were also told that they were better off pursing individual actions than remaining as class members, with no discussion of the fact that the class case could toll their claims at least until the class certification stage, giving them time to make that decision. *See Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 643 (6th Cir. 2015) ("The timely filing of a class-action complaint commences suit and tolls the statute of limitations for all members of the putative class who would have been parties had the suit been permitted to continue as a class action.") (citing *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 550 (1974)). Nor did he inform attendees that a class counsel fee might be less than the fee in an individual retainer agreement. Attendees were also told that class members would be "stuck with" a settlement negotiated by lawyers, without any discussion of opportunities to object.

The statements made by Napoli Shkolnik to putative class members at the February 18, 2018, Town Hall meeting appear to encourage potential class

---

[5] On March 3, 2018, Napoli Shkolnik advised counsel that riders were being sent correcting their retainer agreements, which were "accidentally sent." (Exhibit 4). Even assuming that Napoli Shkolnik is now taking steps, after being advised of their violations, to revise excessive fee agreements, it does not address the fact that for years, Co-Liaison Counsel entered into fee agreements that violated Michigan law, based either on a negligent failure to ascertain the law and rules or a failure to adhere to them until discovered. Either alternative supports the instant motion.

members to seek individual representation by stating that, when you are in a class action, the lawyers make all the decisions on settlement and you are "stuck with" it.  Not only was there a failure to explain the process of opt-outs or objections, but the lack of neutrality in explaining the pros and cons of class participation versus individual representation was in conflict with Mr. Shkolnik's role as Co-Liaison Counsel and the duties required by this Court to act fairly with regard to all parties and counsel.

> **D.    Additional Concerns are Raised by Co-Liaison Counsel's Failure to Properly Perform his Work as Liaison on Behalf of the Individual Cases, and Representations to this Court.**

During the February 20, 2018 Status Conference, this Court inquired into the status of compliance with its prior order, requiring individual cases to be amended using the short form complaint.  Tr. of Feb. 20, 2018 Status Conference at 26, ECF No. 391.  This Court noted that only Mr. Shkolnik and Mr. Stern, the Co-Liaison Counsel, had filed such amended complaints which were due on February 22, 2018.  The Court inquired of Mr. Shkolnik, "I was seeking upstairs a report on what might have gone wrong in getting that news out to others, if anything," and asked for Mr. Shkolnik's response on the matter.  *Id.*

Mr. Shkolnik first replied that, "we will send another notice out to all Plaintiffs that they have the obligation to file by this Friday."  *Id.* When this Court

advised that it was liaison counsel's job to disseminate the order to individual Plaintiffs' counsel, Mr. Shkolnik assured the Court, that "we did get the order out." *Id.* at 27. This representation to the Court was not truthful.  Upon information and belief, no prior order regarding deadlines for filing amended individual complaints was ever received by any counsel with individual cases from Co-Liaison Counsel. Nor has there been a correction of this misstatement to the Court.[6]  The lack of timely notice resulted in individual counsel being unable to comply with the order's deadlines, and necessitating Class Counsel's intervention to request that Mr. Shkolnik seek an extension from the Court.

While this is one instance of failure to properly carry out his duties as Co-Liaison Counsel, combined with Napoli Shkolnik's other actions, ethical breaches and appearance of self-dealing, it is Class Counsels' understanding that the majority of counsel with individual cases support this motion for replacement of Mr.  Shkolnik as Co-Liaison Counsel.

### E.      Standards for Removal of Court Appointed Liaison Counsel.

This Court has the authority to remove or replace co-liaison counsel.  The Manual for Complex Litigation addresses this as part of the Court's inherent power

---

[6] MRPC 3.3(a)(1) "a lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement previously made to the tribunal by the lawyer."

or as a sanction for improper behavior.  Manual for Complex Litigation (Fourth) §§ 10.152, 10.154.

Courts have removed liaison counsel for failing to perform their duties, or for unnecessarily creating delay. *See* Order Regarding Liaison Counsel, *In re World Trade Ctr. Disaster Litig.*, 1:21-mc-00100-AKH (S.D.N.Y. Aug. 28, 2008), ECF No. 993 (removing liaison counsel for filing frivolous objections and causing delay with unwieldy submissions). Courts have also considered the timing in resolving a motion to remove lead counsel with recognition that removal at earlier stages in the litigation is preferable.  *Schoenbaum v. E.I. DuPont De Nemours*, No. 4:05CV01108 ERW, 2008 WL 877962, at *2 (E.D. Mo. Mar. 27, 2008) (removing Milberg Weiss as lead counsel where "[t]he parties have not begun discovery and any institutional knowledge Milberg Weiss has acquired is limited").  Here, where the case is still in the early stages – little discovery has been conducted and where the individual cases have not yet filed  amended master and short form complaints – there will be little disruption to the case from replacement of liaison counsel.

The citizens of Flint have already suffered from a failure of state and federal agencies to honestly and fairly perform their duties; thus, acts and appearances of lead and liaison counsel matter deeply.  Manual for Complex Litigation (Fourth) § 10.153 provides that the factors to consider in removing or replacing court appointed counsel to assist in complex litigation include whether the problematic

conduct is willful; whether it had the effect of being misleading; whether a violation of a court order of federal or local rule occurred; and whether the actions were isolated or part of a course of conduct.  For the foregoing reasons, Class Counsel believe that these factors counsel in favor of removal.

DATED:    March 12, 2018                    Respectfully Submitted,

/s/ Theodore J. Leopold                     /s/ Michael L. Pitt
Theodore J. Leopold                         Michael L. Pitt
COHEN MILSTEIN SELLERS                      Pitt McGehee Palmer & Rivers, P.C.
& TOLL PLLC                                 117 West 4th Street Suite 200
2925 PGA Boulevard, Suite 220 Palm          Royal Oak, MI 48067
Beach Gardens, FL 33410                     (248) 398-9800 Telephone
(561) 515-1400 Telephone                    mpitt@pittlawpc.com
tleopold@cohenmilstein.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing as well as via U.S. Mail to all non-ECF participants.

/s/Deborah LaBelle