# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases. _____/ | Judith E. Levy<br>United States District Judge |

This Order Relates To:

ALL CASES

_____/

# OPINION AND ORDER DENYING IN PART LEO A. DALY'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [CASE NO. 16-CV-10444, DKT. 278]

Defendant Leo A. Daly Company ("LAD") is the parent company of defendants Lockwood, Andrews & Newnam, P.C. and Lockwood, Andrews & Newnam, Inc. (collectively, "LAN"). LAD has moved to dismiss all claims asserted against it across all Flint Water cases in which it has been named for lack of personal jurisdiction. (*See, e.g.,* Case No. 16-cv-10444, Dkt. 278.)[1]

---

[1] Hereafter, all docket citations will refer to filings in Case No. 16-cv-10444 unless otherwise noted.

I. **Background**

Plaintiffs state in their complaint this Court has jurisdiction over LAD and LAN because "each of them have personally availed themselves of the benefits and protections of the State of Michigan." (Dkt. 238 at 10.) Further, these defendants are alleged to have "conducted business and committed torts in Michigan, by themselves and their agents and/or alter egos, which caused Plaintiffs to suffer severe personal and property injuries in Michigan." (*Id.*)

Plaintiffs allege that LAD "exerts nearly unfettered control" over LAN. (*Id.* at 23.) LAD is also alleged to represent that its services are "extended through" LAN. (*Id.* at 22.) The complaint further alleges that in June 2013, LAN, through which LAD was operating, was formally retained by the City of Flint to provide engineering services for the Flint water system related to switching water sources to a water supply that poisoned its recipients. (*Id.* at 49.) The switch occurred in April 2014, and LAN is alleged to have provided services related to the switch without providing proper corrosion control treatment. (*Id.* at 53-54.)

In February 2015, LAN is alleged to have issued a report entitled "Trihalomethane Formation Concern," discussing the elevated presence of certain disinfection byproducts in Flint's water supply following the switch in water sources. (*Id*. at 66.) Plaintiffs contend that the analysis was done improperly and failed to draw obvious conclusions that the switch in water supply had corroded the pipes carrying the water, which would inevitably lead to elevated levels of lead and *legionella* bacteria in the water system. (*Id*. at 66-67.) Finally, plaintiffs allege that in August 2015, LAN made an improper recommendation to increase the dose of ferric chloride in the water supply, which would have increased the corrosive quality of the water rather than decreased it. (*Id*. at 75.)

On December 1, 2017, LAD filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Dkt. 278.) This followed the filing of similar motions in other cases arising out of these same events, all of which are currently pending before the Court. The Court permitted limited jurisdictional discovery, pursuant to a stipulation entered into November 1, 2017. (Dkt. 239.)

LAD provided with its motion the affidavit of Edward Benes, who is Senior Vice President, Corporate Secretary, and General Counsel of LAD, and Corporate Secretary and General Counsel of Lockwood, Andrews & Newnam, Inc. (Dkt. 278-3; Dkt. 378-3 at 18.) In that affidavit, Benes states that LAD is a company incorporated in Nebraska, with its principal office in Omaha, Nebraska. (*Id*. at 4.) He states that Lockwood, Andrews & Newnam, Inc. is incorporated in Texas, with its principal office in Houston, Texas, and two offices in Michigan, and that Lockwood, Andrews & Newnam, P.C. is a Michigan corporation established to satisfy licensing requirements with respect to work to be performed by Lockwood, Andrews & Newnam, Inc. in Michigan. (*Id*. at 4-6.)

Benes' affidavit included an Employee Leasing Agreement, which LAD and LAN entered into on March 1, 2004. (Dkt. 278-3 at 11-15.) Under the Agreement, LAD leased "certain of its employees ("Staff") [], to be designated by [LAN], to [LAN] to perform such work and for such periods of time as are specified by Lessee from time to time to meet Lessee's staffing needs." (*Id*. at 11.) "As consideration for the Staff leased to [LAN] by [LAD], all fees, payments, proceeds and other

4

consideration of any nature whatsoever received by Lessee from clients, owners and any third parties for the Services performed by the Staff . . . , shall as soon as practicable be transmitted to the Lessor by Lessee." (*Id.*)

The Agreement also states that "[LAD] and its employees are not employees of [LAN]." (*Id.*) "[LAD] shall be responsible for all risks incurred in the operation of its business and shall enjoy all the benefits thereof. The Staff shall be under the mutual control and direction of [LAD] and [LAN]." (*Id.*)

In his affidavit, Benes cited the Agreement to show that "[t]he workforce of Lockwood, Andrews & Newnam, Inc. is seconded to [it] by Leo A. Daly Company pursuant to a formal Employee Leasing Agreement. (Exhibit A). Pursuant to this agreement, Leo A. Daly Company performs the necessary payroll and employee benefits services as a matter of convenience and efficiency." (*Id.* at 7.)

Benes was deposed on January 10, 2018. (Dkt. 378-3.) At his deposition, he stated that all revenue received by either LAD or LAN goes into the "exact same bank account," although that revenue is accounted for based on the company that receives it. (*Id.* at 9.) He

stated that LAN makes "no payment, per se, . . . between the companies for the employees." (*Id.*) LAD leases three to four hundred employees to LAN. (*Id.* at 17.) All of LAN's employees are leased from LAD. (*Id.*) When those employees were leased at the time relevant to this litigation, LAD issued their paychecks. (*Id.*) At the end of 2017, LAN began issuing paychecks to leased employees from the same joint account to comply with Texas law. (*Id.*)

Benes, who is Corporate Secretary and General Counsel of LAN, does not receive a salary from LAN. (*Id.* at 18.) He is identified as a LAD employee, and states that although his salary is not paid by LAN, it is paid through a cost-sharing system in which his salary comes *pro rata* from the amount of work he does for LAD and LAN. (*Id.*) The pay of other employees, including those who worked on the transfer of Flint's water supply, was accounted for in a similar fashion at the time of events in this lawsuit. Revenue that came in from LAN's activities was put into the joint LAD/LAN account, and when LAD paid employees, it was accounted for from LAN's revenue. (*Id.*)

When asked whether he was familiar with the Agreement, Benes stated that "this leasing agreement was brought to my attention during

6

the Flint litigation. I didn't even know it existed. There are a number of provisions here that aren't followed by the companies." (*Id.* at 27.) Benes disputed the provision of the Agreement that stated all fees, payment, proceeds, and other consideration that LAN received would go to LAD, because "[t]here is no check or payment made by LAN to Leo A. Daly for Flint." (*Id.* at 26-27.) When asked if he was saying that the companies didn't follow that provision, Benes stated, "I think that's what I'm saying." (*Id.* at 27.)

Benes also stated that he did not believe the unemployment, workers compensation, and indemnification portions of the Agreement were followed. (*Id.*) He did, however, state that the companies followed certain provisions of the Agreement, but did not specify which provisions were followed. (*Id.*) He later stated that LAD and LAN did not follow the "mutual control" provision, either. (*Id.*) Benes admitted that there is no "written description on how you apply this agreement anywhere." (*Id.* at 30.) Benes stated that LAD also obtained all relevant insurance for LAN's work in Flint, in accordance with paragraph 5(i) of the Agreement. (*Id.*) The costs were shared by LAD and LAN. (*Id.*)

7

The Court has determined that oral argument is not required, and will determine the motion on the briefs. E.D. Mich. Local R. 7.1(f)(2).

**II.  Legal Standard**

Plaintiffs have the burden of showing that personal jurisdiction exists over LAD. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Plaintiffs "may not stand on [their] pleadings, but must, by affidavit or otherwise, set forth specific facts" demonstrating that personal jurisdiction exists. *Id*. The Court has three options in determining how to evaluate a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2): it may (1) "decide the motion upon the affidavits alone," (2) "permit discovery in aid of deciding the motion," or (3) "conduct an evidentiary hearing to resolve any apparent factual questions." *Id*.

When the Court has permitted limited jurisdictional discovery, but declines to hold an evidentiary hearing, plaintiffs must make only a *prima facie* showing of personal jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). The Court views the evidence in the light most favorable to the plaintiff without weighing the controverting assertions of the defendants, and dismissal is only proper

8

"if all of the specific facts . . . alleged . . . collectively fail[] to state a *prima facie* case for jurisdiction." *Theunissen*, 935 F.2d at 1459.

## III. Analysis

Personal jurisdiction may exist over a defendant either generally or specifically. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549-50 (6th Cir. 2007). General personal jurisdiction requires continuous and systematic contact with the forum state, while specific personal jurisdiction exists to the extent a claim arises out of or relates to a defendant's contacts in the forum state. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

Plaintiffs allege that specific personal jurisdiction exists over LAD based on LAD's contacts with Michigan, and that either general or specific jurisdiction exists over LAD based on the theory that LAN is operating as LAD's alter ego. Because specific personal jurisdiction exists over LAD based on its own activities within Michigan, the Court will not reach the issue of whether LAN is LAD's alter ego.

For specific personal jurisdiction to exist, the plaintiffs must satisfy two factors: Michigan's long-arm statute, and constitutional due

process. *Air Prods.*, 503 F.3d at 550. Michigan's long-arm statute states:

> The existence of any of the following relationships between a corporation or his agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which creates any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state, resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Mich. Comp. Laws § 600.715(1).

Edward Benes, General Counsel for both LAD and LAN, admitted that he was largely unfamiliar with the Agreement governing the leasing of employees from LAD to LAN. But Benes did not dispute the first line of Paragraph 4 of the Agreement, which states that "[LAD] and its employees are not employees of [LAN]." (Dkt. 278-3 at 11.) In the light most favorable to plaintiffs, LAD entered into a contract that,

10

in relevant part, sent LAD's employees to Michigan to perform every service LAN provided to LAN's customers, including the City of Flint.

Although Benes stated that LAN never wrote a check to LAD for the leasing of LAD's employees, LAN deposited "all fees, payments, proceeds and other consideration of any nature whatsoever" it received in a joint bank account that LAD had full control over. No check was necessary. Whatever the accounting method used to keep track of LAN's revenue and expenses, the evidence shows that LAN provided LAD with every dime of revenue LAN received for the work LAD's employees performed, and LAD determined what happened with that revenue after it was received.

And as Benes admitted at his deposition, LAD contracted to insure against all risks LAN faced in Michigan while leasing LAD's employees, "including but not limited to[] general liability insurance, workers' compensation insurance, and state disability insurance." (Dkt. 378-3 at 30.) Michigan's long-arm statute is satisfied.

In analyzing whether constitutional due process is satisfied by the exercise of specific personal jurisdiction, the defendant must have certain minimum contacts with the forum state. *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 475 (1985). The United States Court of Appeals for the Sixth Circuit applies a three-part test for evaluating due process in personal jurisdiction cases:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968). Each part of the test must be satisfied for the exercise of specific personal jurisdiction to be proper. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

LAD argues that these factors have not been met, because it did not perform the work at issue in this litigation, it did not exercise day-to-day control over the employees it sent to Michigan to work for LAN, and there is no connection between the limited work LAD performed on other projects and the claims at issue in this case.

The Agreement contractually obligated LAD to lease to LAN every employee LAN needed in exchange for any and all revenue LAN gained

from the actions those employees performed. LAN has multiple offices in Michigan, and entered into a long-term contract under which it performed years of work for the City of Flint. LAD also insured its employees against routine risks those employees faced in performing that work. LAD purposely and routinely sent its leased employees to Michigan to perform work that would, in turn, create profit for LAD. The object of LAD's sending its employees to Michigan was to have "ongoing, far-reaching consequences" in the engineering market in Michigan. *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 911 (6th Cir. 1988). The first part of the *Southern Machine* test is satisfied.

The cause of action arises from the engineering work LAD's employees performed in Michigan. Each cause of action relates to actions LAD's employees took while providing engineering services for LAN to the City of Flint. The second part of the *Southern Machine* test is satisfied.

Finally, it is reasonable to exercise personal jurisdiction over LAD. As LAD has stated, it has performed other work in Michigan, which means it has some presence in the state. All of the events underlying plaintiffs' claims took place in Michigan, and virtually all of the

13

evidence is located in Michigan. If plaintiffs' allegations are true, LAD's employees performed work from 2013 until at least 2015 on the exact water system transfer that caused plaintiffs' injuries, and LAD derived substantial benefits from that work. The third part of the *Southern Machine* test is satisfied.

### IV. Conclusion

For the reasons set forth above, it is hereby ordered that:

LAD's motion to dismiss for lack of personal jurisdiction and to dismiss for failure to state a claim (Dkt. 278) is DENIED IN PART on the grounds that personal jurisdiction exists over LAD;

The remainder of the motion seeking dismissal for failure to state a claim will be heard on the date and time set for hearing of all motions to dismiss in this consolidated class action on **May 10, 2018 at 10:00 A.M.**; and

This order also terminates the following motions:

Case No. 17-cv-10709, Dkt. 32;

Case No. 17-cv-11392, Dkt. 26;

Case No. 17-cv-11481, Dkt. 27.

Plaintiffs filed their response brief (Dkt. 378) with redactions. LAD had until March 6, 2017, to file a motion to seal protected material referenced in that brief. (Dkt. 393.) LAD did not file a motion to seal. Plaintiffs are ordered to SHOW CAUSE, in person, why they should not be ordered to file an unredacted version of their brief on the docket of Case No. 16-cv-10444. Plaintiffs will show cause at the April 16, 2018 status conference related to this matter. Plaintiffs may also answer this show cause by filing an unredacted version of their response brief on the docket of Case No. 16-cv-10444 before the status conference.

IT IS SO ORDERED.

Dated: April 5, 2018　　　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 5, 2018.

　　　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　　　Case Manager