## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In Re: Flint Water Cases*

Case No. 5:16-cv-10444-JEL-MKM

Hon. Judith E. Levy

Magistrate Judge Mona K. Majzoub

## CO-LIAISON COUNSEL'S OPPOSITION TO INTERIM CO-LEAD CLASS COUNSEL'S MOTION FOR REPLACEMENT OF CO-LIAISON COUNSEL AND CROSS-MOTION TO DISCHARGE INTERIM CO-LEAD CLASS COUNSEL

## INTRODUCTION

Interim Co-Lead Class Counsel's—Theodore Leopold, Michael Pitt ("Interim Counsel"), and their colleagues who make up the "Flint Water Class Action Legal Team"— motion is nothing but a retaliatory smear campaign against Co-Liaison Counsel Hunter Shkolnik and his law firm Napoli Shkolnik PLLC. As evidenced by their lack of evidentiary support, Interim Counsel's allegations of unethical conduct are a complete fabrication. They are designed only to discredit Mr. Shkolnik in the hope that Interim Counsel can gain complete control of the litigation so that they can line their own pockets. In short, the motion is nothing more than a blatant money grab.

Notably, it is Interim Counsel that has acted improperly, not Mr. Shkolnik. Their motion to replace Co-Liaison Counsel is nothing but a compilation of speculation, hyperbole, innuendo, and in some places outright falsities.

First, Interim Counsel's complaints regarding Napoli Shkolnik's retainer agreements are not a sufficient basis for removing the firm as Co-Liaison Counsel. The issues pointed out by Interim Counsel have been remedied and there has been no prejudice to any plaintiff.

Second, Interim Counsel's hyperbolic account of the February 18, 2018 town hall meeting is almost a complete fabrication. The meeting was an informational session, permitted under the Michigan Rules of Professional Conduct, and similar to numerous informational sessions Interim Counsel and the Flint Water Class Action Legal Team have themselves conducted.

Finally, Hunter Shkolnik's statement at the February 20, 2018 Status Conference is an insufficient basis for removal as Co-Liaison Counsel. Mr. Shkolnik was mistaken about whether a particular order had been distributed to *all* plaintiffs, rather than *some*. This error was promptly corrected and, again, no plaintiffs or plaintiffs' counsel were prejudiced.

Meanwhile Interim Counsel has been engaging in their own untoward practices. They have signed-up as clients, both class and individual plaintiffs, despite the clear conflicts between the two groups. They have sent out improper

class notices prior to certification. Just as deceitful, they have issued ultimatums to other counsel in this case that they will essentially shut them out of attorneys' fees unless they are willing to engage in Interim Counsel's deliberately opaque billing and work-assignment practices.

Accordingly, the Court should deny Interim Counsel's motion. At the same time, it should grant Co-Liaison's Counsel's motion to remove Interim Counsel for three reasons: Interim Counsel (1) have conflicts of interest that cannot be reconciled, (2) have provided improper notice to and coerced putative class members to sign their own retainer agreements, and (3) have demanded unethical ultimatums from Co-Liaison Counsel to the detriment of the class.

## STATEMENT OF FACTS

**I.    INTERIM COUNSEL'S ATTEMPTS TO BILK THE CLASS AND GAIN CONTROL OF THE LITIGATION.**

Interim Counsel offer only a partial account of its interactions with Co-Liaison Counsel. In doing so, they obfuscate their true motives in bringing this motion. In fact, the motion is the product of a fundamental disagreement between Interim Counsel and Co-Liaison Counsel over how to best protect the citizens of Flint. Specifically, Co-Liaison Counsel has remained steadfast in their position that class fees, common benefit fees, and/or lawyer compensation should not be discussed or considered until resolution of the litigation. (*See* Declaration of Hunter J. Shkolnik ("Shkolnik Decl."), attached as Exhibit A at ¶ 4.)

To the contrary, Interim Counsel has been handing out work assignments and lodestar hours to law firms they have side fee-sharing agreements with, a practice Co-Liaison Counsel has opposed. *Id.* ¶¶ 4-5. Significantly, Co-Liaison Counsel became aware that Interim Counsel had entered into secret side-fee deals regarding work and hours that it intended to hide from third-party audit. *Id.* ¶ 15. These agreements are decidedly suspicious and raise serious questions about Interim Counsel's ability to represent the class:

> Private, undisclosed agreements of that sort would be **wholly inconsistent with the transparency that is critical to the establishment of fair and appropriate fee assessment and allocation standards**. Private, undisclosed assessment and allocation agreements involve a significant risk of self-dealing. Counsel who have entered into such agreements may give preference to other signatories in the assignment of common benefit work, approve or fail to object to work that is not properly compensable, or otherwise make decisions based on factors other than shared client interests. Finally, by hiding important information about common benefit work from judicial view—even if temporarily—private, undisclosed assessment and allocation agreements **hinder a court's exercise of its authority and obligation to conduct mass tort proceedings in a fair and efficient manner**.

Expert Declaration of Maureen Carroll at ¶¶26-8, attached hereto as Exhibit B ("Carroll Decl.") (emphasis added).

In July 2017, Co-Liaison Counsel first brought the issue of entering a formal time-and-expense order to the attention of Interim Counsel. *Id.* ¶ 17. Co-Liaison Counsel felt this was especially important after it became aware of Interim Counsel Mr. Pitt's practice of sending out teams to supposedly "map" lead poisoning in

Flint. *Id.* In fact, these teams were actually engaged in client solicitation[1], not mapping. *Id.* ¶ 18. The use of "mappers to ring doorbells in order to solicit individual representation has violated both MRPC 7.3 and 5.3." Expert Declaration of Robert E. Hirshon at ¶3, attached hereto as Exhibit C. Co-Liaison Counsel immediately objected to this practice to Interim Co-Lead Counsel, Mr. Leopold, and promised to bring it to the Court's attention at the appropriate time. Shkolnik Decl. at ¶ 19. Unbeknownst to the undersigned, Mr. Leopold was apparently either supportive of, or a willing participant in, the billing boondoggle plan, and this ultimately triggered the dispute over a formal time and expense order.

Co-Liaison Counsel then proposed a time-and-expense order that would employ a special master to periodically review time-and-expense submissions, a common procedure in mass torts. *Id.* ¶¶ 20-21. Meanwhile, Interim Counsel's solicitation process continued. *Id.* ¶ 23. In November 2017, Interim Counsel rejected the special master proposal, instead demanding that all time-and-expense reports flow directly to Interim Counsel. *Id.* ¶ 26. Finally, in January 2018, Interim Counsel issued its ultimatum: there would be no time-and-expense order unless Co-Liaison Counsel would 1) agree not to enroll more clients, 2) that Interim Counsel would receive 80% of the common benefit funds, and 3) that Interim

---

[1] Michigan Rule of Professional Conduct 7.3(a) states that "a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." Accordingly, the "mapping" project was nothing more than a rouse to improperly solicit clients by the Flint Water Class Action Legal Team.

Counsel would receive 1/3 of all attorneys' fees from individual personal injury cases. *Id.* ¶ 31. Needless to say, this highly unethical ultimatum was rejected. *Id.* ¶ 32.

Now that their ultimatum has been rejected, Interim Counsel has attempted to seize on minor errors and invent wild tales regarding what happened at the town hall meeting on February 18, 2018, all in an effort to grab full control of this litigation (and the associated fees) to the detriment of Flint's residents.

## II.   Interim COUNSEL'S MISCHARACTERIZATION OF THE TOWN HALL MEETING.

Interim Counsel's portrayal of the town hall meeting is a complete fabrication. Napoli Shkolnik had been asked by local politicians and concerned church leaders to provide status updates on the Flint cases. *Id.* ¶ 36. Because the number of requests was too large for the firm to handle, it was ultimately decided that there would be an event at the Metropolitan Baptist Tabernacle featuring actor and activist Hill Harper. *Id.* Lunch was served at the request of Reverend Dr. Herbert Miller, II. *Id.* ¶ 38. During that time, Mr. Shkolnik fielded questions from attendees. *Id.* ¶ 40. The purpose of the meeting was solely informational.

## III.   Interim COUNSEL'S ALLEGATIONS OF MR. SHKOLNIK'S PURPORTED LACK OF CANDOR ARE UNFOUNDED.

Mr. Shkolnik's statement at the February 20, 2018 Status Conference that the Order concerning adoption of the master complaint and filing of short-form

complaints had been served on *all* individual plaintiffs was based on an understanding from a conversation with Co-Liaison Counsel prior to the conference and Mr. Stern was not present at the hearing. From that conversation it was believed that Mr. Stern had served the Court's order regarding the master complaint on *all* counsel when in fact Mr. Stern's office served it on most counsel *Id.* ¶ 8. As is more fully outlined in the Shkolnik Declaration, and will be more fully set forth in the declaration of Mr. Stern, Co-Liaison Counsel had a very difficult time ascertaining the names of all counsel with individual, non-class*,* cases filed in the Flint Water Litigation and Co-Liaison Counsel did their best to disseminate information to necessary counsel. Steps have since been taken to remedy this issue. *Id.* Co-Lead Counsel's attempt to use this situation as a basis for their motion reveals the depths they need sink to support their ill-conceived motion.

## ARGUMENT

I.  **THE COURT SHOULD DENY INTERIM COUNSEL'S MOTION TO REPLACE CO-LIAISON COUNSEL.**

**A. Mr. Shkolnik has addressed the deficiencies in his retention agreements, but Interim Counsel's agreements violate the Michigan Rules of Professional Conduct.**

Interim Counsel complains about Napoli Shkolnik's retention agreements. (Interim Counsel Br. at 4-5.) But Mr. Shkolnik has taken all necessary steps to ensure that the retainers comply with applicable rules and regulations. Immediately

after learning about deficiencies in certain retainers, Mr. Shkolnik instructed the support staff at Napoli Shkolnik to make the necessary changes to their intake packages so that the firm and the third-party advertising agency used by Napoli Shkolnik were able to instantly implement the correct retainers for all future leads. Additionally, Napoli Shkolnik sent an addendum correcting the errors to all retained clients who had previously signed incorrect retainers. *See* Retainer Addendum, attached as Exhibit D. This was a harmless error that has since been remedied, and therefore did not violate the Michigan Rules of Professional Responsibility:

> Contrary to Interim Class Counsel's claim, there is absolutely no basis to suggest this was anything more than a clerical error that was appropriately corrected. It is well accepted that an important purpose of the MRPC is to protect clients and the public at large. Obviously, no client or member of the public was harmed as a result of this mistake and no client has complained or terminated their representation with Shkolnik because of it. There appear to be no reported Michigan ethics cases litigating whether a lawyer who mistakenly enters into an agreement for excessive fees and later changes the agreement to provide for reasonable fees under MRPC 1.5 has breached MRPC 1.5. This makes sense, since why would anyone file an ethical complaint because of a corrected error?

Hirshon Decl. at ¶19-21.

Moreover, the old agreements could not possibly have enticed plaintiffs to sign up with Napoli Shkolnik, as the contingent fees under those agreements would be greater than those set forth in the new agreements.

On the other hand, even a cursory review of Mr. Pitt's retainers raises several ethical concerns. *See* Exhibit E. For example, Interim Counsel is misleadingly using the name "The Flint Water Class Action Legal Team" in their retainer letterhead, as if they had already certified a class or class certification were a certainty. Neither is true. Thus, the use of this name potentially runs afoul of Michigan Rules of Professional Conduct 7.1(b) and 7.5, which, when read together, state that a law firm trade name may not "be likely to create an unjustified expectation about results the lawyer can achieve." *See* Hirshon Decl. at 26 ("By calling themselves the Flint Water Class Action Legal Team, the eight law firms comprising the class action legal team are implicitly suggesting that they are somehow better equipped to best represent parties injured as a result of the Flint water crisis."). Additionally, Rule 1.5(e)(1) states that a division of fees between law firms can only be made if "each lawyer assumes joint responsibility for the representation." Nowhere in Mr. Pitt's retainer does it state that the three firms representing the purported class or the individual client will assume joint responsibility.

## B. Interim Counsel grossly mischaracterize the February 18 meeting to manufacture claims against Mr. Shkolnik.

Interims Counsel merely speculate that Mr. Shkolnik has used his leadership position to the detriment of Flint's residents. They have no proof for good reason: there is none. Interim Counsel simply makes-up numerous statements—*e.g.*, that

Mr. Shkolnik "repeated[ly] represent[ed] that the federal judge appointed him to be in charge of all the lawyers handling individual cases" and advised that Flint residents "did not need to have an injury to sign up." (Interim Counsel Br. at 6.) These statements simply never happened.[2]

In addition to inventing statements by Mr. Shkolnik from the February 18, 2018 meeting, Interim Counsel also distorts its purpose and format. The purpose of the meeting was *not* to solicit clients. The purpose of the meeting was to educate attendees about the crisis in Flint and their options. (*See* Shkolnik Decl. ¶¶ 35-42; Transcript of February 18, 2018 Town Hall Meeting, attached hereto as Exhibit F ("If you don't know whether you have damages, you owe it to yourself to find out."). If any of Interim Counsel's clients attended, it was by choice. And, while Mr. Shkolnik has no knowledge of any clients who switched firms because of the meeting, it is solely the clients' choice to decide who their counsel is. *See Flynt v. Brownfield, Bowen & Bally*, 882 F.2d 1048, 1051 (6th Cir. 1989).

Interim Counsel's citation to Michigan Rule of Professional Conduct 7.3(a) is simply off-base, as the transcript is clear that there was no attempt at direct contact for purposes of solicitation. *See* Exhibit F. The February 18, 2018 meeting did not violate the Michigan Rules of Professional Conduct:

---

[2] Interim Counsel's other comments about the informational meeting and Mr. Shkolnik's alleged ethical violations are similarly off-base. In fact, Trachelle Young, a member of Mr. Pitt's legal team, directly refuted them: she complemented Mr. Shkolnik's handling of this case and ethics during the meeting. (Shkolnik Decl. at 14. n.10.)

> Attorneys often are invited to provide information to the members of trade organizations and other types of groups with the understanding that an attorney's participation in these informational meetings might lead to new clients. This form of business development is a widely accepted practice in all jurisdictions except in those few that specifically prohibit it. **There is no such prohibition against these types of educational meetings in Michigan**.

Hirshon Decl. at ¶32.

Councilman Eric Mays of Flint's First Ward was an attendee and panelist at the February 18th meeting. *See* Declaration of Councilman Eric Mays, attached hereto as Exhibit G. According to Mr. Mays, "[t]he purpose of this meeting was to provide general information about the Flint water crisis and to explain to our citizens what their rights were related to this tragedy." *Id.* at ¶2. In addition, Mr. Mays felt that "the discussion by the lawyers and other speakers was fair and balanced and helped the parishioners and others understand that they should exercise their rights and speak to any lawyer of their choice. *Id.* at ¶5. Further, Mr. Mays stated:

> There was no attempt to convince persons who were represented by counsel to change lawyers. This was an informational session to advise those without lawyers to seek representation before the time to sue runs out. In fact, we advised people who already had an attorney that they had done good and they could not sign with Napoli Shkolnik PLLC because they were already being represented. I am personally represented by another firm and I don't plan to switch to Napoli Shkolnik PLLC and if that had been the conversation I would not have participated in the town hall meeting.

*Id*. at ¶6.

Indeed, Interim Counsel recognize that "there is nothing necessarily untoward about hosting an informational event and passing out retainers." (Counsel Br. at 6.) In fact, Interim Counsel has held many similar meetings. (*See* Shkolnik Decl. ¶ 43; Mays Decl. ¶3 ("This meeting was similar to other town hall meetings that occurred in Flint that I also attended with other law firms."). For Interim Counsel to now claim that such informational meetings are now improper is the height of hypocrisy.[3]

### C. Despite Interim Counsel's representations to the contrary, most counsel do not support their motion.

Interim Counsel has flat-out misrepresented that the majority of other counsel supports their motion. Counsel Br. at 2, 12. Contrary to what they have told the Court, it appears Interim Counsel does not even have the support of the full Class Action Plaintiffs' Executive Committee, members of their own legal team, or certainly not the "majority" of the individual Plaintiffs' counsel. *See* Shkolnik Decl. ¶¶ 6-7. Unsurprisingly, Mr. Pitt and Mr. Leopold are the only signatories to their motion. No other attorney has joined them in their quest to smear Mr. Shkolnik and his firm. That's likely because Mr. Shkolnik's only arguable misstep—an honest mistake—was a small misunderstanding over whether he sent an order requiring individual cases to be amended using a short

---

[3] The fact that Mr. Shkolnik failed to point out the purported advantages of a class action is inconsequential. Mr. Shkolnik's duty is to simply answer questions honestly with what he believes is sound legal advice.

form complaint to all counsel, a mistake that was easily corrected. Co-Counsel Br. at 10.

Accordingly, Interim Counsel's blatant misrepresentations to the Court regarding the supposed groundswell of support for the removal of Mr. Shkolnik violate the Michigan Rules of Professional Conduct. Indeed, Rule 3.3 could not be clearer: a lawyer shall not knowingly "make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." This alone would be grounds for Interim Counsel's removal. *See* Expert Declaration of Robert E. Hirshon at ¶17 ("Claiming that a majority of counsel representing individual clients and a majority of Executive Committee members believe that Shkolnik has engaged in a series of ethical misdeeds is a serious charge. Yet Interim Class Counsel offer very little evidence to support that claim, which would allow me to determine its accuracy.")

## II.   THE COURT SHOULD REMOVE MR. LEOPOLD AND MR. PITT AS INTERIM COUNSEL.

Interim Counsel have conflicts of interest, have provided improper notice to and coerced putative class members to sign their own retainer agreements, have demanded unethical ultimatums from Co-Liaison Counsel to the detriment of the class, and have made various misrepresentations to the class. There are "serious concerns about Interim Co-Lead Class Counsel's apparent representation of individual potential class members and Interim Co-Lead Class Counsel's apparent

efforts to establish a compensation structure for common benefit work without transparency or supervision by this Court." Carroll Decl. at ¶11. Any one of these things, standing alone, should compel the Court to discharge Interim Counsel. *See* Hirshon Decl. at ¶48 ("In summary, it is my opinion that Shkolnik has not violated the MRPC and that if any violations occurred, they were most likely committed by Interim Class Counsel.").

### A. Mr. Pitt has a conflict of interest in his role as Interim Counsel because he simultaneously represents thousands of individual claims.

Mr. Pitt claims to represent several thousand individuals for personal injuries and property damage related to the Flint water crisis. This position is directly averse to class members in this case because these parties' financial interests may conflict.

Significantly, an action may not be certified unless "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23's adequacy requirement focuses on whether the class representatives or their counsel have interests that conflict with the interests of the other members of the class. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("[T]he adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interests between named parties and the class they seek to represent."); *Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997) (adequacy requires that

14

"there is no conflict of interest between the named plaintiffs and other members of the plaintiff class") (quotation omitted).

Mr. Pitt's simultaneous representation of thousands of individual Flint residents and the class creates significant risks to both those clients and the class. For example, a significant risk occurs where an attorney represents a group of claimants who have manifested injuries while also representing others who have not. *See* Carroll Decl. at ¶11. Thus, if the Court certifies a class for only individuals who have not manifested injuries, Mr. Pitt still owes a duty to those clients who have manifested injuries, creating a serious risk of trade-offs and selling his client's claims short. *Id*. at 14.

In this case, by representing both the class and individual plaintiffs, Interim Counsel created an irreconcilable conflict. Specifically, Interim Counsel are "fiduciar[ies] to all plaintiffs and lawyers in the consolidated proceedings and may not use [their] position to enrich [themselves] at their expense." Principles of the Law of Aggregate Litigation § 1.05 (2010). As such, "an attorney acting on behalf of a putative class must act in the best interests of the class as a whole." Manual for Complex Litigation (Fourth) § 21.12. *See also In Re Pharm. Indus. Average Wholesale Price Litig*. 588 F.3d 24, 36, n.12 (1st Cir. 2009) ("class counsel are fiduciaries to the class").

But, by demanding that Interim Counsel receive a cut of every individual case under a proposed settlement, Interim Counsel clearly put their desire for fees and the individual actions above the interests of the Class they represent. *See, e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 800 F.2d 14, 18-19 (2d Cir. 1986) (class counsel may be removed if a conflict of interest arises in the representation of the class); Model Rules of Prof. Conduct R. 1.7-1.9 (outlining conflicts of interest between an attorney and current or former clients). This conflict between class members and individual plaintiffs has long been recognized by courts. (*See* Decl. of Maureen Carroll ("Carroll Decl.") ¶¶ 9-13.)

Thus, the Court should remove Interim Counsel because they have "engaged in . . . improper conduct" that has "undermined the rights of the class at large." *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995).

## B. Interim Counsel has provided improper and misleading notice to class members.

This case has not been certified as a class action. But that hasn't stopped Mr. Pitt's Flint Water Class Action Legal Team from providing notice, in the form of monthly updates, to class members. For example, most recently, the March 2018 update was addressed "Dear Class Members" and referenced the ongoing mediation. *See* Shkolnik Decl. ¶ 30; March 2018 Update for Class Members, attached hereto as Exhibit H. Interim Counsel's use of these notices to, among other things, solicit clients is plainly improper. *See* Carroll Decl. at ¶19 ("One way

in which communications from putative counsel to putative class members may be misleading is if they imply that the court has already certified a class."). Terms such as "Dear Class Members" and "Flint Water Class Action Legal Team" on Mr. Pitt's monthly updates to the class are misleading to the putative class and individuals retained by other counsel. *Id.* at ¶22.

Federal Rule of Civil Procedure 23(d) grants the Court with authority to regulate Interim Counsel's improper communications:

> In conducting an action under this rule, the *court* may issue orders that . . . (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d)(1)(B)(i)-(iii) (emphasis added). The purpose of Rule 23(d) is to permit discretionary notice "when needed for the protection of class members or for the fair conduct of the action." MANUAL FOR COMPLEX LITIGATION § 21.31 (4th ed.). "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," including orders that "limit communications between parties and potential class members." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 (1981). *See also* NEWBERG ON CLASS ACTIONS § 15.02, at 15–6 (3d ed. 1992) ("When the court finds that the class

17

action has been abused to the potential prejudice of class members, the court has full power to take appropriate remedial action to avoid or minimize any prejudice to the class.").

Here, Mr. Pitt has improperly sent communications to class members to solicit additional cases. For example, the September 2017 update to the class includes a hyperlink to an EPA Authorization and EPA Retainer and urges putative class members to sign Mr. Pitt's retainer without any warning or disclosure to individuals who may have already retained counsel for their Flint water claims. *See* September 2017 Update for Class Members, attached hereto as Exhibit I. Specifically, the update states that "[i]f you would like to join the action against the EPA, you must sign and submit both the EPA Authorization and Retainer by September 30, 2017. As a reminder, this is the final deadline to join our action against the EPA." *Id*.

In his effort to expand his stable of clients, Mr. Pitt has also explicitly directed putative class members to ignore any communications from other attorneys who are not on the Flint Class Action Legal Team and has misrepresented the status of this case. For example, in the August 2017 Update, Mr. Pitt provides the following: "**You are already a client of The Flint Water Class Action Legal Team who have actually filed cases on your behalf and are actively working in your best interests. These communications from other**

18

**attorneys are NOT being done with our approval. These attorneys are not part of our legal team**." August 2017 Update to Class Members, attached hereto as Exhibit J (emphasis in original). However, Mr. Pitt's statement is wholly improper:

> Because no attorney-client relationship automatically results from the filing of a putative class action, **it is appropriate for attorneys other than putative class counsel to communicate and enter into retainer agreements with putative class members**, provided that those interactions are non-misleading and otherwise comply with applicable ethical rules (e.g. as to in-person solicitation).

Carrol Decl. at ¶16.

Thus, not only has Mr. Pitt improperly used class communications to drum up business, but he also misrepresented his role as Interim Counsel to all class members, including Napoli Shkolnik's clients, by claiming that he and the Flint Water Class Action Legal Team have already filed claims in federal and state court on their behalf.

The law is clear: "Misleading communications to class members concerning the litigation pose a serious threat to the fairness of the litigation process, the adequacy of representation and the administration of justice generally." *In re School Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988). The Court should therefore exercise its power under Rule 23(d) to protect the rights of class members and remove Interim Counsel for sending these improper misleading communications. *See, e.g., White v. Experian Info. Sols*., 993 F. Supp. 2d 1154,

1163 (C.D. Cal. 2014) ("courts can and do disqualify class action counsel for egregious misconduct"); *Hammond v. Junction City*, 167 F. Supp. 2d 1271, 1288 (D. Kan. 2001) (disqualifying Interim Counsel prior to class certification where Interim Counsel made improper communications to putative class members); *Georgine v. Amchem Prods*., 160 F.R.D. 478, 485 (E.D. Pa. 1995) (holding that it is the responsibility of the court to direct the best notice practicable to class members and to safeguard them from unauthorized, misleading communications from the parties or their counsel).

**C. Interim Counsel have used their position to line their own pockets.**

As detailed above, Interim Counsel have schemed to increase their fees at the expense of the individuals who were truly injured, including the children suffering from lead poisoning. For example, Interim Counsel have demanded the following:

1.  that Mr. Shkolnik stop signing up new clients[4];

2.  that individual lawyers pay 1/3 of their fees to get entry of a time-and-expense order, so that Interim Counsel could keep track of their unreasonable billing excesses and self-serving allocation of work to the lawyers they have entered into fee-sharing agreements with; and

---

[4] Interim Counsel's demand that Mr. Shkolnik stop signing up new clients is a violation of Michigan Rule of Professional Conduct 5.6(b). *See* Hirshon Decl. at ¶40-42 ("MRPC 5.6(b) prohibits a lawyer from offering or making an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy. Interim Class Counsel demanded that Co-Liaison Counsel no longer accept new clients. If Co-Liaison Counsel did not accede to this demand, Interim Class Counsel threatened to seek Shkolnik's removal as Co-Liaison Counsel. This demand is a clear violation of MRPC 5.6.").

3.      that Co-Liaison Counsel agree to a class method and abandon individual clients to protect Interim Counsel's fees.

Shkolnik Decl. ¶ 31.

But, as Co-Liaison for the individual claims, Mr. Shkolnik is obligated to protect those clients, not Interim Counsel and their fees. Indeed, the sorts of opaque billing practices proposed by Interim Counsel can lead to reversal of approved class settlements and attorneys' fees awards. (Carroll Decl. ¶¶ 24-26.)

Interim Counsel has also publicly advertised their leadership positions for their own gains. For example, a May 9, 2016 press release posted on Mr. Pitt's website pittlawpc.com, entitled *PMP&R [Pitt McGehee Palmer & Rivers] Leads Fight for Flint Residents in Contaminated Water Crisis*, outlines the work the Flint Water Class Action Legal Team has performed on behalf of the class. *See* Exhibit K. The press release includes a quote from Mr. Pitt's partner Cary McGehee referring to the Flint Water Class Action Legal Team: "Attorneys from these six firms bring together a special blend of expertise and experience required to prosecute this incredibly complex and challenging case." *Id*.

Similarly, Mr. Leopold released a braggadocios statement shortly after his appointment that similarly praised his role in this litigation:

[Mr. Leopold] has played a leading role in the effort to hold accountable those responsible for Flint's water crisis. He has been on the forefront of ongoing litigation against Lockwood, Andrews & Newnam (LAN) and Veolia North America, two engineering

21

> companies accursed of giving disastrously bad advice and ignoring
> several red flags regarding problems in the city's water system.

*See* Exhibit L. The statement goes on to proclaim that Mr. Leopold "enjoys

substantial support among participants in the class actions and members of the

Flint community, helping to ensure individuals are readily able to engage their

expertise." *Id.*

Interim Counsel's baseless allegations against Mr. Shkolnik and his firm are

particularly troubling given their own history of improprieties. For example, U.S.

District Court Jude Lucy Koh recently appointed a special master to review Cohen

Milstein's duplicative $38 million fee request in *In Re Anthem, Inc. Data Breach

Litig.*, No. 15-md-02617 (N.D. Cal.). As lead counsel, Andrew Friedman of Cohen

Milstein brought on another 49 law firms, four of which Judge Koh previously

terminated from the initial leadership team.[5] Those four law firms alone submitted

an attorneys' fees request for $3,624,911.50. Alarmingly, Cohen Milstein also

enlisted the help of 107 partners, 94 associates, and a large number of contract

attorneys with a rate as high as $447 per hour.[6] In her order, Judge Koh noted that

"employing 53 law firms likely resulted in unnecessarily duplicative or inefficient

---

[5] Judge Hires Special Master to Vet Attorney Bills in Anthem Settlement, LAW.COM (Feb. 2, 2018)    https://www.law.com/therecorder/sites/therecorder    /2018/02/01/judge-hires-special-master-to-vet-attorney-bills-in-anthem-settlement/.
[6] *See In Re: Anthem, Inc. Data Breach Litigation*, Order Granting Motion to Appoint Special Master,    Dkt.    No.    929    (Feb.    2,    2018)    available    at    https://www. bloomberglaw.com/public/desktop/document/    In_re_Anthem_Inc_Data_Breach_ Litigation_Docket_No_ 515md02617_ ND_C/3?1519073198

work by the virtue of the fact that so many billers needed to familiarize themselves with the case and keep abreast of case developments."[7] At a recent hearing on the motion to appoint a special master, Judge Koh stated "I would never have appointed you or Mr. Friedman, had I known you were going to pile on 53 lawyers. And I'm going to keep that in mind if you apply for appointment of counsel in another case with me. I never would have approved [53] law firms in my case. If I thought eight was too many, what made you think I wanted 53 firms churning on this case?"

In addition, a group of class representatives in *Allen v. Dairy Farmers of America, Inc.*, Case No. 5:09-cv-00230 (D. Vt.), recently moved to remove Kit Pierson of Cohen Milstein from his role as Interim Counsel for allegedly conspiring with defendants on a settlement that would have sold out the class. Mr. Pierson is part of the Flint legal team at Cohen Milstein. *See* Exhibit O. The motion outlined shortcomings of Mr. Pierson as class counsel, including that he "knowingly and willfully undermined this class's ability to recover." Exhibit P at 2. The aggrieved class representatives also reference Cohen Milstein's "sell-out" conduct, including "(1) reducing the class size and potential damages, (2) preventing effective cooperation among class representatives, (3) keeping primary

---

[7] *Id.*

sources of evidence hidden, (4) confusing the damage model, and (5) settling without getting to the merits." *Id* at 5, 17.

Had Co-Liaison Counsel known about these allegations before, Mr. Shkolnik never would have supported Mr. Leopold and Mr. Pitt as Interim Counsel. Based on Interim Counsel's declaration that they "demand a ten percent tax on all individual cases," it is clear that this case is nothing but another money grab by Mr. Leopold and Mr. Pitt, at the expense of class members.

## **CONCLUSION**

Interim Counsel's prosecution of this matter is not about obtaining the necessary evidence to present the best case at trial. Rather, it is about billing hours and carving out fees to the detriment of the putative class. Throughout this litigation, Interim Counsel has trampled on the best interests of the class in their quest for position, control, and, most importantly, fees. Their recent meritless attacks against Mr. Shkolnik and his law firm are just one part of Interim Counsel's multi-pronged strategy to take over the litigation. Accordingly, the Court should deny their motion to replace Co-Liaison Counsel. Doing anything else would only give Interim Counsel more power and opportunity to take advantage of the class. In addition to denying Interim Counsel's motion, the Court should grant Co-Liaison's Counsel's cross-motion to remove them as counsel. As provided above, Interim Counsel: (1) have conflicts of interest, (2) have provided improper notice

to and coerced putative class members to sign their own retainer agreements, and (3) have demanded unethical ultimatums from Co-Liaison Counsel to the detriment of the class.

                                        Respectfully submitted,

Dated: April 9, 2018

                                        **NAPOLI SHKOLNIK PLLC**

                                        By: /s/ Hunter Shkolnik
                                        Hunter Shkolnik, #2031458NY
                                        360 Lexington Avenue, 11th Floor
                                        New York, NY, 10017
                                        (212) 397-1000
                                        hunter@napolilaw.com


                                        *Co-Liaison Counsel for the Individual Cases*

## CERTIFICATE OF SERVICE

I hereby certify that on April 9, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: April 9, 2018

_____/s/ Patrick J. Lanciotti_____