# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*In Re: Flint Water Cases*                    Case No. 5:16-cv-10444-JEL-MKM

                                              Hon. Judith E. Levy

                                              Magistrate Judge Mona K. Majzoub

## DECLARATION OF HUNTER J. SHKOLNIK

I, Hunter J. Shkolnik, declare under 28 U.S.C. § 1746 as follows:

1.      I am a partner at Napoli Shkolnik PLLC, Co-Liaison Counsel for Individual Cases in the above-captioned matter.

2.      The origin of this dispute between Interim Co-Lead Class Counsel Theodore Leopold and Michael Pitt[1] (Interim Counsel) and Co-Liaison Counsel has little, if anything, to do with the spurious and unfounded allegations set forth in the moving papers relating to clerical errors in a retainer agreement or statements made at a town hall meeting. Rather this dispute is a result of a fundamental disagreement between Interim Counsel and Liaison Counsel on how to best protect the citizens of Flint in this litigation.

3.      Co-Liaison Counsel Corey Stern and I have unfortunately become engaged in a dispute with Interim Counsel over their unwavering desire to maximize their fees rather than focus on the advancement of this case and its

---

[1] As the Court will note, not a single lawyer or law firm signed the instant Motion, nor have any submitted supporting declarations.

resolution. This is a fundamental problem which goes to the heart of Interim Counsel's ability to act in the best interests of the people of Flint.

4.      It has been my unremittent position that class fees, common benefit fees, and/or lawyer compensation should not be discussed or considered until resolution of the litigation. As will be outlined in further detail below, the instant Motion was filed in retaliation to Co-Liaison Counsel's attempts to rein in and track "common benefit" lodestar work being handed out by Interim Counsel to law firms they have side fee-sharing agreements with and to put an end to the secretive allocations of work assignments and lodestar hours to the firms that have undisclosed sharing agreements with Interim Counsel.

5.      It is Co-Liaison Counsel's belief that these secretive agreements are detrimental to both the class and individual litigants, and it is Co-Liaison Counsel's efforts to put an end to these agreements that has led to the allegations of ethical violations by me.

6.      Significantly, as the Court will readily see from the absence of any supporting signatures, the allegation made by Interim Counsel that the "majority of the lawyers" share their support in the Motion is patently false. In fact, the Motion

is only signed by Interim Counsel,[2] and although they solicited all attorneys of record for support, not a single law firm was willing to sign their motion.

7.     More telling is that Interim Counsel could not even garner a majority of the members of the Plaintiffs' Executive Committee ("PEC") to sign their motion and amended brief. In fact, most have refused to be involved in any manner, as they find this underlying argument abhorrent and contrary to the interests of the individuals and putative class members.

8.     As an initial matter, I must respond to Interim Counsel's attack on my ability to serve as Liaison Counsel. In its Motion, Interim Counsel cite a quote by me during the February 20, 2018 Status Conference, in which I mistakenly represented to the Court that the Order concerning adoption of the master complaint and filing of short form complaints was previously served on "all" individual plaintiffs' counsel prior to the Status Conference. I was under the impression that the Order had been served on "all" individual plaintiffs' counsel, but in fact had been served of "some" of the individual counsel. As a result of the issue being brought to the Court's attention by Herb Sanders, Esq., steps were immediately taken to correct this problem.[3]

---

[2] One must wonder why Interim Counsel would even have standing to bring this application rather than the actual allegedly aggrieved individual law firms.

[3] At the conclusion of the February 20, 2018 hearing, I spoke with Mr. Sanders who brought the issue to the Court and the Court's Clerk, Mr. Taylor. As part of that conversation, Mr. Taylor and I discussed the deficiencies of the Pacer ECF system in a mass tort case of this nature, where

9. By way of background, the instant Motion was threatened on multiple occasions, and only filed once it was clear that I would not agree to the following demands made by Interim Counsel:[4]

a. Co-Liaison Counsel support a time and expense order that places all authority in the hands of Interim Counsel;

b. Co-Liaison Counsel immediately stop soliciting and signing up new clients in Flint;

c. Co-Liaison Counsel agree to a common benefit fee allocation to Interim Counsel where Interim Counsel are ***guaranteed 80% of any common benefit fee***;

d. Co-Liaison Counsel agree to a common benefit fee assessment that will apply to all individual lawyers in an amount of ***10% gross free, which equates to 1/3 of a 1/3 fee contract***;

e. Co-Liaison Counsel agree that Interim Counsel exclusively allocate, and Mr. Leopold's firm Cohen Milstein Sellers & Toll manage, all shared

---

an MDL master docket number is not assigned, and the fact that it is extremely difficult to track new filings. Because of this conversation, Mr. Taylor kindly offered to provide a list of filed Flint Water cases with docket numbers, which allowed Co-Liaison Counsel to identify all filed cases and associated counsel. This new system has allowed Co-Liaison Counsel to track and issue regular notices to "all" counsel, rather than just to those who have identified themselves to Co-Liaison Counsel. Immediately after the February 20 Status Conference, Co-Liaison Counsel served copies of all filings including the short form complaint order on individual plaintiffs' counsel. *See* Email from Patrick Lanciotti to Plaintiffs' Individual Counsel dated February 21, 2018, attached hereto as **Exhibit 1**.

[4] These demands were made verbally and to various extents documented in email communications attached for the Court's consideration.

work assignments without any ability for Co-Liaison input or auditing; and

f. Acceptance of the above conditions or Interim Counsel would oppose any time and expense order that included a place holder for a possible future assessment determined by the Court based upon ***lodestar and a lodestar check***.

10.  As will be shown more fully below, this dispute derives from my refusal to accept Interim Counsel's power play based on a plan to accumulate fees, and the resulting anger caused when Co-Liaison Counsel refused to accede to Interim Counsel's demand. Messrs. Leopold and Pitt made repeated threats that if Co-Liaison Counsel refused to accept their demands, they would seek to have me removed from the court-appointed position on ethical grounds. Interim Counsel fail to understand that Co-Liaison Counsel have a duty to protect the clients they represent both individually, and in a representative capacity, and accordingly, cannot submit to Interim Counsel's demands.

11.  Furthermore, I have the full support of Co-Liaison Counsel, Corey Stern, and the individual lawyers with cases on file in the Flint Water Litigation, who similarly believe that the demands of Interim Counsel are both unreasonable and unethical.

## Mass Tort and Class Action Time and Expense

12.     This Court, with the full support of Co-Liaison Counsel and Interim Counsel, and without objection from any other FWC lawyers, appointed me[5] to the Co-Liaison position with the responsibilities and duties delineated in the order of appointment. ECF No. 234. From the outset, Interim Counsel has failed to recognize that the duties and responsibilities section of the order also applies to them.

13.     Although this has caused some friction over the last 8 months between Interim Counsel and Co-Liaison Counsel, most disputes were amicably resolved. However, Interim Counsel have refused to meaningfully collaborate on the issue of tracking and allocation of "common benefit" or "shared time," which obviously impact their fees.

14.     I have been deeply involved in trying to resolve disputes that surface at the conclusion of various litigations where claims were brought before the court over improper time and expense submissions and procedures. Because of my past experience in various mass torts and class actions, I recognized and became concerned by what Interim Counsel were trying to accomplish. I promptly voiced my concern.

---

[5] I will not reiterate my experience as that was fully outlined in the leadership petitions, but will add that since this Court's appointment, I have been appointed to the Plaintiffs' Executive Committee in the largest mass tort in the history of multi-district litigation, *In re: National Prescription Opiate Litigation, MDL # 2804. MDL 2804*. This is one of the most highly coveted leadership positions in both class action and mass torts in the history of multi-district litigations.

15.     I stressed to Interim Counsel that after the Court made the leadership appointments, Interim Counsel and Co-Liaison Counsel had an obligation to be transparent and act with the highest integrity as it relates to time and expense and not thrust disputes on the Court at the conclusion of the litigation. This simple request, something that is followed now in virtually every mass tort or class action, revealed the following that Interim Counsel hid prior to their appointment:

  a. Interim Counsel had entered secret side-fee deals;

  b. Interim Counsel had agreements to assign work exclusively to those firms they had fee deals with; and

  c. Interim Counsel had no intention of allowing Co-Liaison Counsel or any third-party to audit or even be privy to the time and expenses they were assigning and accumulating.

16.     However, what I didn't know was that when I raised this issue with Interim Counsel, I was in fact uncovering something even more disturbing, *i.e.*, a plan to coerce Co-Liaison Counsel to support a pre-ordained decision on common benefit fees that Interim Counsel had already secretly worked out. I made it clear that this approach was contrary to everything I have championed during decades of work in court-appointed leadership positions of responsibility in class actions and mass torts.

**Timeline Related to Time and Expense Order and Fallout Between
Interim Counsel and Co-Liaison Counsel**

7

17. In July 2017, I first brought the issue of entering a formal time and expense order to the attention of Interim Counsel. Co-Liaison Counsel[6] believed that a formal order was necessary given the multitude of law firms filing Flint water cases and the number of firms lining up to participate in common benefit work. Moreover, Co-Liaison Counsel were advised that members of the Interim Counsel team[7] and members of the PEC were sending teams of people out on the streets of Flint in an ill-advised plan to map the lead poisoning in Flint, for the sole purpose of accruing lodestar hours. Not only did the "mapping" project lack any scientific rigor, it will ultimately be useless for litigation purposes.

18. To Co-Liaison Counsel's surprise, it became clear that this effort was nothing more than a door-to-door approach to solicit clients for Mr. Pitt and the "Flint Water Class Action Legal Team," a practice that is in violation of Michigan Rule of Professional Conduct 7.3, which prohibits direct solicitation. Even more troubling was that these "mappers" were directly soliciting residents already

---

[6] Although no appointments had yet been made for these positions, Michael Pitt, Ted Leopold, Corey Stern, and I were acting as *de facto leaders* in the litigation trying to advance mediation. It was during these efforts that the issue of unnecessary work for the common benefit was being undertaken with no guidelines and lead by Mr. Pitt and Mr. Leopold with no input from Mr. Stern or me.

[7] The bands of solicitors were led by Co-Lead Counsel Michael Pitt and Pitt McGehee Palmer & Rivers, P.C.; Goodman & Hurwitz, P.C.; Trachelle Young & Assoc.; Law Offices of Deborah LaBelle; Milberg LLP; and Weitz & Luxenberg, P.C. (collectively the "Flint Water Class Action Legal Team").

represented by other law firms, including Napoli Shkolnik PLLC and Levy Konigsberg LLP, Co-Liaison Corey Stern's law firm.

19.   I immediately made my objection known to Interim Counsel and advised that personal solicitation of clients could not be deemed authorized FWC common benefit or shared work. Moreover, Co-Liaison Counsel would bring this type of conduct to the court's attention when a time and expense order was entered and audit rules were put in place.

20.   In mid-July, following my initial objection, Interim Counsel Mr. Leopold asked that I provide a draft of a time and expense common benefit order. I agreed to his request and provided a rough draft for his consideration. This rough draft was drawn directly from the Time and Expense Order entered in *In Re: Actos Product Liability Litigation* by Judge Rebecca F. Doroty.

21.   As I advised Mr. Leopold, Judge Doroty's order included a procedure whereby a special master was assigned to periodically review time and expense submissions. This process has been hailed by many as a model example of how a mass tort time and expense project can be organized in a fair and open manner and prevents placing the court in the difficult position of having to deal with common benefit disputes at the end of the case.

22.   Throughout the summer of 2017, Mr. Leopold and I repeatedly inquired about the draft time-and-expense order I had circulated. The attorneys

also discussed the continued "mapping" efforts being undertaken by Mr. Pitt, which Co-Liaison Counsel did not support. During much of these discussions, I was advised that the draft time and expense order was under review by the PEC team "and others," and that although they were having some issues with the language, the process was moving forward.

23.     In September 2017, Co-Liaison Counsel received more reports that Flint residents were still being solicited by the "mappers" employed by Mr. Pitt and the Flint Water Class Action Legal Team. Furthermore, other supposed common benefit projects were being assigned, performed, and controlled by Mr. Pitt and Mr. Leopold without seeking any input from Co-Liaison Counsel. Accordingly, I requested with more urgency that Mr. Leopold return the draft time-and-expense order.

24.     At that time, Mr. Leopold stated that the rough draft I had circulated two months prior needed significant additional work. On September 15, 2017, and in response to Mr. Leopold's request, I sent a revised draft of the proposed time and expense order. *See* Email from Hunter Shkolnik to Theodore Leopold dated September 15, 2017, attached hereto as **Exhibit 2**.

25.     The following weeks brought more inaction from Interim Counsel on the issue of a draft order. When I requested a status update, Mr. Leopold stated that

Mr. Paul Novak of Weitz & Luxenberg PC, a member of the PEC, was reviewing the September 15 draft.

26.    On November 1, 2017, five months after the appointment of Mr. Leopold and Mr. Pitt as Interim Counsel, I again urged Interim Counsel to finalize a time-and-expense order. On November 17, 2017, apparently rejecting the proposed approach of entering a formal time-and-expense order by this Court to oversee the conduct of the parties, Mr. Leopold unexpectedly sent an e-mail demanding that all time-and-expense submissions go through him and his office, Cohen Milstein. *See* Email from Theodore Leopold dated November 17, 2017, attached hereto as **Exhibit 3**.

27.    This attempt to keep the time-and-expense accounting secreted away was immediately objected to by both Co-Liaison Counsel. I was surprised and disappointed that Mr. Leopold had abandoned four-months of discussion concerning a formal time-and-expense order.[8]

28.    In response, Mr. Leopold instructed me that if his recommendation to control all common benefit submissions by his office was not acceptable, then Co-Liaison Counsel should file their own proposal with the Court. I was troubled with Interim Counsel's pivot concerning the time-and-expense order. By neglecting to

---

[8] I argued that Plaintiffs' leadership must [follow "[rigorously] and maintain the highest degree of integrity" throughout the common benefit process, and that it was necessary to have a formal order and a third-party to oversee the ongoing time and expense submissions as well as an audit procedure with ongoing court oversight in order to ensure transparency and fairness for all concerned.

enter a formal time-and-expense order, Interim Counsel was attempting to keep its common benefit work a secret, a practice which is rarely employed in the class action and mass tort arena, and one to which I have historically taken exception. Given Co-Liaison Counsel's obligations to the people of Flint and this Court, Mr. Stern and I were unwilling to be participants in such a questionable process.

29.     At the same time Mr. Leopold demanded I submit time and expenses solely to Cohen Milstein, Mr. Leopold unilaterally, and without any Court authority, also attempted to force upon Co-Liaison Counsel his predetermined hourly rates for common benefit work. Again, both Mr. Stern and I objected, stating that the determination of hourly rates was an issue for the Court and should not be decided privately by the attorneys. For the following 60 days, the attorneys continued the meet-and-confer process to avoid bringing this dispute before the Court. At Mr. Leopold's request, Co-Liaison Counsel agreed not to file a proposed order, and Mr. Leopold offered assurances that the differences between Interim Counsel and Co-Liaison Counsel could be resolved.

30.     In early January 2018, I renewed Co-Liaison Counsel's request that Interim Counsel enter a formal time-and-expense order. At this point, Mr. Pitt and his law firm were still dispatching teams of individuals by foot to map the City of Flint for common benefit work. It was being reported that Mr. Pitt's team(s) were simultaneously going door-to-door retaining residents, including clients who had

previously retained Napoli Shkolnik, Levy Konigsberg, and other law firms representing individual personal injury cases. It became known that Mr. Pitt and the Flint Water Class Action Legal Team were also soliciting clients by mailing "class action update news letters" as Interim Counsel.

31.     Interim Counsel's dishonest grab for attorney's fees culminated in an ultimatum issued on January 17, 2018, in which Mr. Leopold stated that unless Co-Liaison Counsel agreed to several conditions, Interim Counsel would not enter a time-and-expense order. These conditions included the following, among others:

a.   Co-Liaison Counsel agree not to solicit and sign up any more clients;

b.   Co-Liaison Counsel agree that 80% of any common benefit fees are distributed directly to Co-Lead; and

c.   Co-Lead receive 1/3 of all attorney's fees received from individual personal injury cases.

32.     In response, on January 19, 2018, Co-Liaison Counsel rejected Interim Counsel's proposal as highly unethical and condemned their conduct. Interim Counsel's response to Co-Liaison Counsel's refusal to agree to their terms was a threat that they would charge me with ethical violations and seek to remove me from my role as Liaison Counsel.

13

33.    It is clear that the issue of removing the undersigned as Co-Liaison Counsel arose from the simple fact that I refused to accept the following terms proposed by Interim Counsel:

a.  that Co-Liaison Counsel, as well as all other plaintiff firms filing individual claims, stop signing new clients;

b.  secrecy in the common benefit procedures, which could allow Interim Counsel to continue to hide unauthorized work and bill that work as a common benefit to the detriment of the putative class;

c.  accept without objection side deals that were not disclosed to the Court when Interim Counsel submitted applications for appointment for leadership and the PEC and when Cohen Milstein and Susman Godfrey LLP split common benefit fees equally without any regard for lodestar;

d.  agree that Interim Counsel had the right to assign all common benefit work with no input from Co-Liaison Counsel;

e.  accept without objection that the "Flint Class Action Legal Team" may engage in fee splitting arrangements regarding common benefit fees, regardless of lodestar and which were not disclosed to the Court when Co- Interim Counsel submitted applications for appointment for leadership and the PEC;

    f.  not disclose to the Court that Interim Counsel and members of the PEC submitted papers to the Court affirming that they could financially contribute to the common fund, and after appointment, these individuals advised leadership that they could no longer meet those financial obligations, despite retaining their leadership status; and

    g.  not disclose to the Court that Interim Counsel were negotiating secret arrangements to further split common benefit fees in return for agreements to fund other members contributions.

34.    After I refused to capitulate to their demands, Interim Counsel for the first time voiced concerns over the fact that Napoli Shkolnik was still signing up new clients in Flint and that the firm was going to participate in a town hall meeting.

### The February 18, 2018 Town Hall Meeting

35.    There was a growing concern in the Flint community that the people of Flint and the water crisis had been forgotten.[9] The growing sentiment of abandonment in the community was voiced by both clients and local politicians. What was once an endless parade of politicians, celebrities, news trucks, and

---

[9]    Phillip Lewis, *Don't Forget About Flint*, HUFFINGTON POST, https://www.huffingtonpost.com/entry/opinion-lewis-flint-needs-help_us_5aa 7b857e4b087 e5aaedb962 (last visited Mar. 26, 2018).

lawyers holding town hall meetings, had now disappeared. Community leaders had questions and wanted answers and information. In this regard, Napoli Shkolnik reached out to local community leaders and churches and agreed to hold a town hall informational meeting.

36.    This outreach was well received, and various churches asked that I attend their Sunday services to give updates on the pending Flint Water lawsuits. Ultimately, it became impossible to attend every church that had expressed interest. It was determined that a single event should be held at the Metropolitan Baptist Tabernacle by invitation of Reverend Dr. Herbert Miller, II and include award-winning actor and social justice activist Hill Harper.

37.    Harper has been very active in the Flint community since the water contamination issues were made public. Napoli Shkolnik, along with Hill Harper, agreed to hold a town hall meeting following Reverend Miller's services. Reverend Miller also invited congregants from neighboring churches to attend.

38.    At Reverend Miller's request, lunch was served after his service since congregants typically leave the service and go straight to lunch. Reverend Miller wanted to make sure that his congregation stayed at the church so that they could ask questions and learn about what was going on with the lawsuits.

39.    Notices of the event were published locally, and the word got out that Reverend Miller was hosting an informational meeting with a law firm and Harper,

16

and that all were welcome to attend. Pastors from other churches encouraged their congregants to visit Metropolitan Baptist Tabernacle for the event.[10] As a result of the outpouring of inquiries that were received during the days leading up to the event, it was believed that the town hall meeting was going to be, and in fact was, one of the most highly attended informational events since the crisis broke. The simple reason for the outpouring of support and overwhelming attendance at the town hall meeting was because of the dearth of information being disseminated in the community and the lack of understanding by the citizens of what their rights were.

40.     Attached as Exhibit F to Co-Liaison Counsel's Opposition to Interim Co-Lead Class Counsel's Motion for Replacement of Co-Liaison Counsel is a copy of a transcript of the February 18, 2018 meeting held at the Metropolitan Baptist Tabernacle. The following are relevant verbatim quotes of the undersigned during the event in response to Interim Counsel's Motion. As the Court will see, contrary to the false assertions of Interim Counsel in support of their motion,[11] the undersigned's conduct comported with all ethical standards:

---

[10] Although I am not familiar with the interplay among the two churches, I have been told this was a highly unusual occurrence, as it is rare for one pastor to suggest that his congregants attend a meeting at another church in the community, especially following Sunday mass.

[11] In fact, Trachelle Young, a member of Mr. Pitt's legal team, directly refuted them. Ms. Young was in attendance at the February 18, 2018 meeting and complemented me on how professionally my firm and I handled the meeting.

Hill Harper:      Good afternoon. Come on [inaudible 00:03:54] Good afternoon. This is an honor and a privilege for me to be here. I'm going to speak very briefly before we begin this panel. Being here is so very important to me for a number of reasons. Two years ago, February 28th 2016, I was asked by a group of Hollywood folk to come to Flint, to do a Justice For Flint thing.

Hill Harper:      I came here and myself and [inaudible 00:04:32] Black Panther, Jessie Williams, a number of other folks, and we did an event. The most important aspect of that event to me was meeting so many individuals in and around the event from Flint who said to me, "I've read your books, I know that you're an activist, but we've noticed a trend. The trend is that people will come to Flint, do something, make themselves feel good about what they did, and then we never see them again. Particularly, if the national media's not here, but they still have their photo saying, 'Justice for Flint', on Instagram."

Hill Harper:      They said, "Please stick with us through this." I said, "I'm with you. You call me when you need me to come. They called me recently, they said, "We need you here." I said, "What's going on?" They said, "First of all, there is an issue around this class action suit. There's so much misinformation. So many people are mistrustful of what's happening and we don't know what to do, don't know who to believe, we don't know what to trust. We don't even know if we're eligible to sign up, or should we sign up, or how should we ... ?"

Hill Harper:      I said, "We're going to have to clear all this up." What I want this to be is an extremely transparent conversation. We've brought experts from the legal field to have a conversation with you, and there's something that I believe very deeply. One of my favorite quotes from Dr. King, Dr. King said, "We're all tied together on a single garment of mutual destiny." Say destiny for me, one, two, three.

*******************************************

Hunter Shkolnik:   Thank you very much, and we really appreciate the warm welcome everyone has had for us here. We hear these phrases,

class action, mass tort action, mass actions. The bottom line is, these are all lawsuits. Lawsuits being brought against someone who did something wrong to the community.

Hunter Shkolnik:   When it's a class action you have a handful of people, a couple of people who say they're representing all of you. They're representing all of you for those injuries, and they can rightfully represent you in that lawsuit.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Hunter Shkolnik:   What each one of you, whether you own a business, whether you own a home, whether you're over 50 like some of us maybe up here, under 50, whether you're children, you have injuries to be brought on your own behalf. When you hear about, "Don't bring it, we've got a class action protecting you," remember you have your own case. Here in Flint you all were exposed to the bad water that caused the pipes to degrade and poisoned you in your homes. Each one of you has your own right.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Audience:   I've got a question. I want to understand something, to know if I'm right or wrong. From what I understand, the lead law group which signs up the most people will pull out about $35 million out of it or more, and then everybody else down under that would get something out of that?

Hunter Shkolnik:   There are lawyers that are appointed lead council in a class action. [crosstalk 00:39:54]

Audience:   Okay, are you that firm?

Hunter Shkolnik:   I'm not a class action guy. I represent individual people. Myself and another lawyer were appointed by Judge Levy to represent all the individuals. She said two lawyers for the individuals, two lawyers for the class. I'm not a class lawyer.

Audience:   The people that sign up the most, the biggest of the group have the majority of it, and what's left over down there, we get?

19

Hunter Shkolnik:    No, no. That's not the way it works. When you represent individuals, individual lawyers have their individual fees. If the class action lawyers say, "We're going to settle and we have a handful of representative claimants, and we're going to represent all of you as the class representatives." Those lawyers will take a class fee. That's what they will do on a class case.

Hunter Shkolnik:    As individuals, you're entitled to your own lawyer and you pay your lawyer the fee that you negotiate [crosstalk 00:40:51]-

Audience:           What you're saying under that, if everybody here decides to sign with you, a judge is going to hear everybody's case in this room?

Hunter Shkolnik:    Each case is individual and you will have the opportunity at some point to decide, "Is this acceptable to me if there's a settlement offer, or do I proceed on my case to trial?" It's always your decision. With a class action it's the people, the lawyers who are making a determination. They have a few people that are representing them saying they're representing the whole.

Hunter Shkolnik:    Here, we represent the individual and you have your own voice. Each has their own voice and our fee comes from you, not from anywhere else.

********************************

Audience:           Can I say something? To God give glory. Good morning everybody. This is the day the Lord has made [inaudible 00:50:39] I just want to say, I already have a lawyer, individual lawyer from Detroit so I don't need this, but I'm telling you that water got my [inaudible 00:50:55] with cancer and rashes, and everything from that water, because [inaudible 00:51:04] who gave the order needs to go to jail and I don't know why he hasn't been to jail yet. [inaudible 00:51:11] do go to jail. I'm sick and tired of this doggone poison water.

Hunter Shkolnik:    I just want to say-

Hill Harper:        Hold the mic up to your mouth, Hunter.

20

Hunter Shkolnik:   What is very important is that you do have a lawyer, and when you said that, I have to say you're better than 85% of the people in your community, and you did do that, and that is the important thing. Of those 85% that are here in this room who do not have lawyers, you need them because that's the only way we're going to keep their feet to the fire. We go in there with 85,000 plaintiffs, 50,000 plaintiffs, they can't say, "Here's a small little settlement, go away." They're going to have to hear from 85%, not 15% in my opinion. I think what you did is absolutely correct, you got a lawyer, and they're going to move for you.

********************************

Audience:   I just have my question for the attorneys regarding this right here. [inaudible 00:52:58] thinks that this is a New York contract, so how does that affect the people in Michigan, when it's basically talking about New York and New York laws?

Hill Harper:   She's referring to the retainer agreement that's here. How does this work?

Hunter Shkolnik:   Just so it's clear, when we represent people in Michigan we're bound by the rules of Michigan in proceeding with the case. We're bringing these cases into federal court here that's down in Ann Arbor. We have to adhere to the rules of that federal court as well. If the regulations or the laws say that the fee is 1/3 and that the costs off the top of it or off the bottom part of the case, we have to follow that. If it's different in New York that's what happens. [crosstalk 00:53:42]

Audience:   [inaudible 00:53:45] beginning and at the end it talks about New York. It doesn't mention Michigan at all.

Hunter Shkolnik:   The case is brought here in Michigan and it is bound by the laws of Michigan. That's the way that-

Hill Harper:   What she's asking is that if you read the retainer agreement, since that installment is a New York-based law firm, their retainer agreement is for retaining their law firm. Correct me if I'm wrong on this. I'm trying to put my Harvard Law School to

21

use right now. Since they're a New York-based firm your retainer agreement is with that firm, but that has nothing to do with the ... they have to use the laws of the state of Michigan. In other words, you're not going to be applying New York State law to this case.

Hunter Shkolnik: Just so it's clear, if you're deciding to sign one of those retainers and you have your pen there, you could just cross out New York and put Michigan in there and it'll be the same thing, because we're bound by the laws of this state and we're going to honor the laws of this state. It would do the same thing if you just scratch it out and say New York. We're going to be bound no matter what.

*******************************

Audience: Thank you. It's my understanding that under the mass lawsuit, the individuals in that might get different amounts of money based on the damages to them. I'm wondering if that's true, and can they also be a party to both the mass lawsuit and a class action lawsuit?

Hunter Shkolnik: Everybody's damages are going to be assessed as individuals. Whether it's you proceeding alone from here to trial, regardless of what everybody else does, or whether eventually there's a settlement that tries to categorize and put people in different boxes as a [inaudible 00:58:34].

Hunter Shkolnik: If you had cancer they may give you one number. If you had skin rashes then they may give you another. If you have property damage they may give you another. What we advocate all the time is there may be a resolution and it may come from the class, or it may come from the mass, that creates boxes. What we advocate is you always have the decision and the right to say, "No, I don't fit in that box. I want to keep going." That's what we're [inaudible 00:59:06].

41.   After Reverend Miller and Councilman Eric Mays closed out the meeting with a prayer, they announced that there were representatives present who

could answer the congregants' personal questions. Additionally, contracts were made available to any attendee who wanted to retain the law firm. It was made clear that the agreement was only for those who had not already retained a lawyer to represent them for their Flint water case.

42.    Following the meeting, congregants and attendees were given the opportunity to speak to lawyers and paralegals, as well as all of the speakers. Informational packets were made available on tables for anyone to take if they wished. If anyone had questions either about the packets or the topics discussed, we tried our best to respond to all inquiries. Some congregants and attendees took packets home to review, some did not. Some attendees stayed and spoke to the lawyers, and some did not. Many of the people expressed gratitude for us coming and speaking to them, some just left to get home to their families.

43.    The town hall meeting approach is the very same procedure that was employed by Mr. Pitt and many other lawyers who have come to Flint to help the community with this litigation. I do not agree with Interim Counsel that there is anything unethical or improper in holding such informational meetings for the public. Indeed, Mr. Pitt and the Flint Water Class Action Legal Team held many such meetings early in the litigation, but apparently decided to abandon these efforts. Once Mr. Pitt was appointed Interim Counsel, he no longer felt it necessary to retain individual clients, choosing instead to pursue class claims. This is

certainly his, and the Flint Water Class Action Legal Team's right, but it does not prevent other lawyers from taking a different approach.

44.     Here, again, lies a fundamental difference between Interim Counsel and Co-Liaison Counsel. The latter believe they should represent the families of Flint individually, and not through a class model. These claims are personal in nature and are most likely not amenable to class resolution. This disagreement over the class approach versus the individual lawsuit approach came to a head when Interim Counsel recognized that thousands of individuals were retaining Napoli Shkolnik and other law firms, which Interim Counsel perceived to be diminishing their class claims.

45.     Further, Interim Counsel allege that "[I] overreached with regard to ….statements" made during the meeting and seem to suggest I used my Co-Liaison Position in some improper manner. What is most troubling is that I have not engaged in such conduct and I note that Interim Counsel through its Flint Water Team "Dear Class Member" communications have engaged in the very conduct they now fault me for allegedly doing. In those communications, which they are posting on a public website and through direct mailings, identify themselves as "class counsel" and outline the status of settlement negotiations. In those same communications they suggest readers contact their offices for representation.

Likewise, I have reviewed multiple examples of Interim Counsel advertising their positions in what appear to be efforts to retain clients.

46.     Unfortunately, what started out as a very congenial and supportive group between class and individual lawyers, has since devolved into an unseemly attack upon the undersigned because of Interim Counsel's campaign to garner attorney's fees through unauthorized common benefit work, efforts to tax individual cases to which they had no lawful claim, and Interim Counsel concern that the class size was dwindling as a result of clients retaining law firms to pursue their individual claims. Unfortunately, it is now clear that Interim Counsel has prioritized their fees over the putative class they have a fiduciary duty to faithfully represent. They have repeatedly departed from their duties as class counsel, and have failed the class, a community of individuals who have been wronged by those in power for far too long.

Dated: April 9, 2018

*/s/ Hunter J. Shkolnik*

**EXHIBIT 1**

| From: | Patrick Lanciotti |
|---|---|
| To: | Hunter Shkolnik; Stern, Corey |
| Cc: | Patrick Lanciotti |
| Bcc: | sfletcher@thefletcherlawfirmpllc.com; haslawpc@gmail.com; hflaw@iwarp.net; ncoulson@ldclassaction.com; sliddle@miclassaction.com; david.shea@sadplaw.com; sburke@burkepllc.com; nick.szokoly@murphyfalcon.com; Val@vlwlegal.com; vinsonecf.rcclawgroup@gmail.com; jeblake@mcalpinepc.com; mlmcalpine@mcalpinelawfirm.com; tpeters@mcalpinepc.com; atschnatz@mcalpinepc.com; bgoodman@goodmanhurwitz.com; jhurwitz@goodmanhurwitz.com; kjames@goodmanhurwitz.com; debiabelle@aol.com; mpitt@pittlawpc.com; brivers@pittlawpc.com; limgraves@sinasdramis.com; shart@hmelegal.com; dhart@maddinhauser.com; rmclaughlin@hmelegal.com; jprior@hmelegal.com; jprior@hmelegal.com; lilliandiallo@sbcglobal.net; lpolk14405@aol.com; eberezofsky@eblawllc.com; mcuker@wcblegal.com; g.fieger@fiegerlaw.com; tweglarz@fiegerlaw.com; dgjonaj@weitzlux.com; cmcgehee@pittlawpc.com; pnovak@weitzlux.com; brivers@pittlawpc.com; andrew@aboodlaw.com; gstamatopoulos@weitzlux.com; bjmckeen@mckeenassociates.com; mbern@bernllp.com; tbingman@tbingmanlaw.com; jbroaddus@weitzlux.com; PERETZ@BGANDG.COM; jcarley@mckeenassociates.com; ckern@bernripka.com; cynthia@cmlindseylaw.com; sradner@excololaw.com; rsharp@bernllp.com; cvergara@mckeenassociates.com; jsawin@sawinlawyers.com; sw@williamspllc.com; notifications@oliverlg.com |
| Subject: | FWC - message re short form complaint deadline |
| Date: | Wednesday, February 21, 2018 1:17:00 PM |
| Attachments: | Master Amended Complaint - Stamped.pdf<br>Flint Federal Individual Short Form Complaint (approved).docx<br>Sirls v. LAN, 17-10342 short form complaint_Stamped.pdf<br>Sirls v. LAN, 17-10342 Short Form Exhibit A_stamped.pdf |

Counsel,

I write on behalf of Co-Liaison Counsel Hunter Shkolnik and Corey Stern. Please allow this message to serve as a reminder that pursuant to Judge Levy's Order dated January 23, 2018, current individual non-class action plaintiffs must file their short form complaints by **February 22, 2018** (ECF No. 347, ¶¶ 1-3). Attached please find a file stamped copy of the master complaint and approved short form. I've also attached the stamped short form Liaison Counsel filed in *Sirls* for reference.

Regards,
Patrick

# EXHIBIT 2

## Hunter Shkolnik

| | |
|---|---|
| **From:** | Theodore Leopold <tleopold@cohenmilstein.com> |
| **Sent:** | Friday, September 15, 2017 5:51 PM |
| **To:** | Hunter Shkolnik; Emmy Levens |
| **Cc:** | Paul Napoli; Patrick Lanciotti |
| **Subject:** | RE: 09-15-2017 - Flint Water Common Benefit Draft |

We won't shoot you………………yet ☺

**Theodore Leopold**
Partner

COHEN MILSTEIN

**Cohen Milstein Sellers & Toll PLLC**
2925 PGA Boulevard ⎪ Suite 200
Palm Beach Gardens, FL 33410
phone 561.515.1400
fax 561.515.1401
**website** ⎪ **map**

**Powerful Advocates. Meaningful Results.**

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

---

**From:** Hunter Shkolnik [mailto:Hunter@NapoliLaw.com]
**Sent:** Friday, September 15, 2017 1:47 PM
**To:** Emmy Levens; Theodore Leopold
**Cc:** Paul Napoli; Patrick Lanciotti
**Subject:** 09-15-2017 - Flint Water Common Benefit Draft
**Importance:** High

Here is my initial draft. Please do not shoot messenger. I tried to tailor it but I might have missed things so it's a document to be worked with

## Hunter Shkolnik
**Partner**

**(212) 397-1000 Ext. 2007 | Hunter@NapoliLaw.com**
**360 Lexington Avenue, Eleventh Floor, New York, NY 10017**

**MISSION STATEMENT**
**Our mission is to help families cope with their loss by compassionately caring for their legal needs. We attentively persist to achieve the best possible outcome for our clients and provide unparalleled level of service. We accomplish this by fostering a confident client focused work environment of motivated employees where cooperation thrives and innovation is rewarded.**

**Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail including attachments, is prohibited and may be unlawful. Receipt by anyone other than the**

intended recipient(s) is not a waiver of any attorney/client or other privilege.

**This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated.**

# EXHIBIT 3

## Hunter Shkolnik

| | |
|---|---|
| **From:** | Hunter Shkolnik |
| **Sent:** | Friday, November 17, 2017 12:13 PM |
| **To:** | Theodore Leopold; Novak, Paul |
| **Cc:** | mpitt@pittlawpc.com; Stern, Corey |
| **Subject:** | RE: flint--: time and expense letter |

Ted

Mike was on the email I sent so not needed to add him I already did,

I think a call would be in order before we bring a discussion like this public but happy to do it either way. Why would you want secrecy in the Cb reporting and not have an accounting firm?

h

---

**From:** Theodore Leopold [mailto:tleopold@cohenmilstein.com]
**Sent:** Friday, November 17, 2017 11:43 AM
**To:** Hunter Shkolnik <Hunter@NapoliLaw.com>; Novak, Paul <pnovak@weitzlux.com>
**Cc:** mpitt@pittlawpc.com; Stern, Corey <CStern@levylaw.com>
**Subject:** RE: flint--: time and expense letter

Appreciate it and I copied Mike.  I am of the view that your incorrect but happy to speak about it and will do so with Mike. I am struggling to understand how or why you or Corey are affected by this as liaison's for the p.i. cases.  Common benefit fund covers the issues I believe your concerned about.  Work / time kept on the class cases are for the those EC members who are involved in the case cases and/or are given work by the co-leads in the class case.  That said, if you need or want to file something with Judge Levy, feel free to do so and perhaps that will bring all of these issues to a head which may be good to do so we are all on the same page moving forward.  I do appreciate you raising the issues.

Also, I should say that I sent the draft to you as a courtesy per your request and I thought it was pretty clear earlier this morning that the only issue left was whether pleading form was an issue.

**Theodore Leopold**
Partner

**COHEN**MILSTEIN

**Cohen Milstein Sellers & Toll PLLC**
2925 PGA Boulevard │ Suite 200
Palm Beach Gardens, FL 33410
phone 561.515.1400
fax 561.515.1401
website │ map

**Powerful Advocates. Meaningful Results.**

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

---

**From:** Hunter Shkolnik [mailto:Hunter@NapoliLaw.com]
**Sent:** Friday, November 17, 2017 11:36 AM
**To:** Theodore Leopold; Novak, Paul
**Cc:** mpitt@pittlawpc.com; Stern, Corey
**Subject:** flint--: time and expense letter
**Importance:** High

Ted

I just got to my office was beginning my review of this document and saw this email pop up.  I advised I would be responding this morning and wish you would have waited. As I pointed out in my conversation and in text I find this informal process ie a letter directive from your office to be inappropriate for time and expense reporting as it has no authority or power to compel anyone to do anything. With all due respect, it really does not mean anything that Paul thinks its ok.  I can assure you this process will be receiving great scrutiny at some point and we cannot cut corners or do things without following the highest standard of rigor and integrity. I think we should err on the side of formality and not an informal letter process without court approval for this process. I will have no choice but to object to this  process if it is implemented and ask that it be brought to the court on an urgent basis . Moreover, if there is an intent to assess individual cases than this process should apply to all cases and not limited to work authorized by Interim Co-Lead Counsel. The Cb order should also apply to work authorized by Co-Liaison. Lastly, time and expense should be submitted to an agreed upon accounting firm who shall be required to give monthly reports to Co-Liaison and Interim Co-Leads.

I chose not to send it o the big group but if this is something you thing we should all discuss then I will include all.



Hunter

---

**From:** Theodore Leopold [mailto:tleopold@cohenmilstein.com]
**Sent:** Friday, November 17, 2017 11:16 AM
**To:** Novak, Paul <pnovak@weitzlux.com>; 'Jordan Connors' <jconnors@SusmanGodfrey.com>; Steve Morrissey <smorrissey@susmangodfrey.com>; Peretz Bronstein <peretz@bgandg.com>; Esther Berezofsky <eberezofsky@eblawllc.com>; 'tbingman@tbingmanlaw.com' <tbingman@tbingmanlaw.com>; Mark McAlpine <mlmcalpine@mcalpinelawfirm.com>; 'jeblake@mcalpinelawfirm.com' <jeblake@mcalpinelawfirm.com>
**Cc:** Michael Pitt <mpitt@pittlawpc.com>; Jessica Weiner <jweiner@cohenmilstein.com>; Stern, Corey <CStern@levylaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>; Meg Hartnett <MHartnett@cohenmilstein.com>
**Subject:** FW: time and expense letter

All

Attached is the Time & Expense Report to be followed for the *In Re Flint Consolidated Class Action*.  Please review and should you have any questions let Mike or me know.  Thank you

Ted

**Theodore Leopold**
Partner

**COHEN**MILSTEIN

**Cohen Milstein Sellers & Toll PLLC**
2925 PGA Boulevard  |  Suite 200
Palm Beach Gardens, FL 33410
phone 561.515.1400
fax 561.515.1401
**website**  |  **map**

**Powerful Advocates. Meaningful Results.**

*This e-mail was sent from Cohen Milstein Sellers & Toll PLLC. It may contain information that is privileged and confidential. If you suspect that you were not intended to receive it, please delete it and notify us as soon as possible.*

## Hunter Shkolnik

**Partner**

(212) 397-1000 Ext. 2007 | Hunter@NapoliLaw.com

360 Lexington Avenue, Eleventh Floor, New York, NY 10017 | vCard

Our Mission Statement

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated.