UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In Re: Flint Water Cases*

Case No. 5:16-cv-10444-JEL-MKM

Honorable Judith E. Levy

Magistrate Judge Mona K. Majzoub

_____/

**DECLARATION OF COREY M. STERN**

I, Corey M. Stern, do state based on personal knowledge as follows under penalty of perjury:

1. I am a partner with Levy Konigsberg, LLP. I specialize in cases involving children who have suffered brain damage from exposure to lead. Separate from the present litigation, my law firm presently represents more than four hundred lead-poisoned children in sixteen (16) states.

2. My personal involvement in the Flint Water litigation began in December of 2015, when a mother of four called to inquire as to whether my firm could represent her children. She stated her kids were lead poisoned in Flint after consuming water at their home, and then subsequently at a shelter. Thus, my initial connection to this litigation came during a period when the water situation had not yet become quite a national story.

3. From January 1, 2016 through the present, I have spent significant time in Flint and today my firm represents more than 2,500 individual Flint children.

4. My firm has been and remains committed to treating each child's case as distinctive, and we continue to endeavor to prove that the enormity of a crisis does not mean everyone affected has been injured equally. Every child has unique potential, which

necessarily means that each lead-poisoned child loses something inimitable. So on November 15, 2016, when I was appointed Lead Counsel for plaintiffs in the Genesee County Litigation, and when this Court appointed me Co-Liaison Counsel for individual claimants on July 27, 2017, I felt and continue to feel a particular honor as well as an enormous responsibility to my clients, to the attorneys that represent individuals, and to the litigation.

5. Prior to my personal involvement in the Flint Water litigation, I had never met Hunter Shkolnik, Theodore Leopold or Michael Pitt.

6. Neither I nor my firm presently has any financial relationships with the individuals identified in the preceding paragraph or their law firms.

7. To date, my firm has only filed cases for individuals in State and Federal Court. We are not and have never been part of any class action lawsuit filed in either venue, or in the Michigan Court of Claims. In addition to lead-poisoned children, we also represent the estate of an individual whose death is attributable to legionella exposure, as well as two other people, including a young boy, whom are likewise alleging injuries from exposure to legionella.

8. Before my appointment as Lead Counsel in the state court litigation, Hunter Shkolnik, Theodore Leopold and Michael Pitt filed multiple pleadings there, seeking various leadership structures, none of which included me or my firm in a meaningful way, if at all. Suffice to say that I maintain no personal alliances or undisclosed conflicts with respect to the present dispute and the views I express in this declaration are offered in my capacity as my clients' representative and as Co-Liaison Counsel.

9. I have spent extensive time up to and including the date of this filing reviewing and contemplating the pleadings related to the competing motions. I consider both sets of allegations to be serious and I recognize the magnitude of what each side is seeking.

10. I have also reviewed two declarations submitted by attorneys with lawsuits on file for individual plaintiffs in support of Mr. Shkolnik.

11. Questions of ethics in many ways serve as the foundational piece of plaintiffs' various claims against the defendants in this litigation, so in addition to what is always required I understand fully the significance of adherence to ethical standards by attorneys for plaintiffs here.

12. Until days before Mr. Leopold's and Mr. Pitt's motion was filed, I was unaware of any specific efforts made by Mr. Shkolnik's firm regarding prospective client outreach, and it was around that time when also I became aware his firm had filed a lawsuit against the Environmental Protection Agency.

13. As of the date of Mr. Leopold's and Mr. Pitt's initial filing, I had never been a party to nor had I ever seen a retainer executed by or between Mr. Shkolnik's firm and its clients, nor had I seen any material regarding the Flint Water Litigation contained on their firm's website.

14. It appears from Mr. Shkolnik's most recent filing that, to the extent his firm believes any of their actions warrant correction, they have endeavored to do so.

15. Similarly, around the time Mr. Shkolnik's cross-motion was filed I became aware of communications between Mr. Leopold, Mr. Pitt and/or members of their team and either their own clients, or members of the public at large – communications which are now at issue and were raised in the cross-motion.

16. I maintain consistent communication with my firm's clients and with attorneys who represent individuals in this and the state court litigation. To the extent communications between attorneys for the putative class have ever been directed at my firm's clients or at clients represented by others, which at times they have, I have addressed those issues directly with Mr. Leopold, Mr. Pitt, and members of their team.

17. Furthermore, with regard to Mr. Leopold's and/or Mr. Pitt's request to stop accepting clients, which was raised by Mr. Shkolnik in his recent cross-motion, I knew from my involvement in prior litigations that my entering such an agreement would be unethical and I dismissed it.

18. There have been numerous submissions to the Court containing extensive analysis on a plethora of alleged violations and conflicts, and I am certain the Court will make a careful assessment and ultimately determine what should be done regarding the competing requests.

19. I believe the Court has rightfully expressed the importance of discerning the crux of this quarrel and taking swift and decisive action if necessary, to assure that the plaintiffs in this litigation as well as potential members of a class are best represented and that the litigation as a whole can proceed in an efficient and effective manner.

20. I am genuinely troubled by the dispute that has arisen between these attorneys and the allegations underlying it. Perhaps these types of motions are not unusual in such large litigations, but I am nonetheless unaccustomed to them.

21. My most critical desire is and has always been advocating for my clients and for the attorneys with individual cases, and pushing cases forward at an appropriate pace toward a final resolution.

22. I am highly aware of the number of attorneys that share this desire on both sides of this litigation and I have been and remain amendable to working with them.

23. While I would prefer to formally address substantive issues regarding the merits of my clients' claims, I recognize the unique, albeit awkward position I am in based on my appointment by this Court, the fact that I am not personally involved in this dispute, and the substantial time I have spent working with those who are.

24. To the extent my experiences throughout this litigation with these attorneys matters in a meaningful way to the Court, and to the extent I have had the opportunity to see first-hand each of them at their best, I support Hunter Shkolnik, Theodore Leopold and Michael Pitt continuing in their respective roles.

25. In no way is my expression of support intended to minimize the alleged conduct at the heart of these pleadings. There should never again be a filing like the competing motions at issue, because going forward every attorney in this litigation should consider, and then reconsider the impact of their actions on their own cases and on the litigation as a whole. It should now and continue to be clear that the complexity and magnitude of these cases demands the very best of those charged with prosecuting and defending the claims that comprise them.

26. I will fully support whatever the Court decides is the appropriate mechanism to ensure that each of the attorneys in this litigation understands and fundamentally appreciates what is required of all of us.

27. My opinions are not at all based on my relationships with these lawyers or fear of offending them. Both sides of this dispute will necessarily disagree with half of

what I have said and I would estimate that none of them will be particularly happy with my filing.

28. I do not always agree with Mr. Shkolnik, Mr. Leopold or Mr. Pitt and I do not condone any conduct that constitutes an ethical violation. But to the degree the Court has any desire for these individuals to together remain in their appointed positions, I would be remiss if I did not make clear that at their best, I have seen the three of them create a work-product that exceeds their individual abilities and benefits the litigation enormously.

29. Despite their different approaches to this litigation, they are in their own right talented attorneys, and I have witnessed each of them dedicating substantial energy advocating for the people of Flint, oftentimes together.

30. This is an incredibly complex litigation with a large population of individuals who are relying on these proceedings for relief. Perhaps my optimism is naïve in light of the serious allegations that flow both ways, but I know that before this dispute arose and these allegations were levied their collaboration was of significant benefit.

31. I have seen Mr. Shkolnik synthesize issues of liability in ways that inure to the benefit of both individuals with lawsuits and to the putative class. He has successfully advocated for important pieces of this litigation including the Master Long and Short Form Complaints, and a more transparent time and expense order. His experience in mass tort litigation is immense and valuable. In the interactions between Mr. Shkolnik and the attorneys for individuals that I have witnessed firsthand, he has always been forthright and transparent with them.

32. I have been present while Mr. Leopold advocated for and negotiated preliminary discovery terms, and successfully built consensus for consolidation of most class cases. Mr. Leopold is a skilled advocate and is one of the most persistent attorneys I have encountered when he determines to accomplish even the smallest task. He endeavors to foster positive relationships and has always made himself available to me on issues related to this litigation.

33. I have spent time with Mr. Pitt and his team discussing and attempting to understand their various strategies, and they mine. We continue to share information and ideas. Mr. Pitt is a fundamentally good person and he cares deeply for the people of Flint. While I do not agree with the use of a class action as a vehicle for certain claims, no one has worked harder toward making the arguments in favor of one than he has.

34. When these three attorneys supported each other in their requests to be appointed to leadership positions by this Court, I imagine the opinions I express about them here were some of the many things they found compelling about each other then. And because their relationships with each other predate theirs with me, the reservoir of positive attributes they maintain about each other is likely deeper than the one I have for any of them.

35. The people of Flint deserve the absolute best efforts from the lawyers acting on their behalf. I have seen a partnership between these individuals that resulted in a work-product exceeding the quality of most group efforts. Thus, I believe that what they are capable of together can significantly benefit the litigation if they are able to work in unison, in the right direction.

36. The attorneys that have the opportunity to prosecute and defend these cases are in no small way helping write chapters in the history of an American city, and possibly of something much larger. We owe it to our clients, to the litigation as a whole, and to our profession to undertake our roles in ways that honor this process and the people it most affects. I have seen these lawyers do that together and individually at various times throughout this litigation.

37. I recognize that lawyers make small and large mistakes in the smallest and largest litigations. It is my belief that when they are made, we must own and learn from them and make corrections to the extent possible.

38. My most sincere desire is for all of the attorneys in this litigation, on both sides, to harness what are our best qualities as litigators and as human beings for the benefit of these cases and our respective clients. To the extent it is possible for the lawyers that are parties to this dispute to do so together, and to the extent the Court is willing to allow it, I support them.

39. The opinions expressed in this declaration are my own and I have not shared this declaration with the parties to this dispute prior to its filing.

/s/ Robin B Blumenkranz
ROBIN B BLUMENKRANZ
NOTARY PUBLIC-STATE OF NEW YORK
No. 02BL6336049
Qualified In Kings County
My Commission Expires 01-25-2020

Dated: April 30, 2018

/s/ Corey M. Stern
Corey M. Stern (P80794)
LEVY KONIGSBERG, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
(212) 605-6298
(212) 605-6290 (facsimile)
cstern@levylaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 30, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: April 30, 2018