```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                            SOUTHERN DIVISION

 3

 4
              In Re    FLINT WATER CASES     Case No. 16-10444
 5

 6

 7   _____/

                             STATUS CONFERENCE
 8

 9           BEFORE THE HONORABLE JUDITH E. LEVY
                 UNITED STATES DISTRICT JUDGE
10
                          JUNE 18, 2018
11

12   APPEARANCES:
                          APPEARANCES IN ALPHABETICAL ORDER:
13
                          Charles E. Barbieri
14                        Foster, Swift, Collins & Smith, P.C.
                          313 S. Washington Sq.
15                        Lansing, MI 48933

16                        Frederick A. Berg
                          Butzel Long
17                        150 West Jefferson, Suite 100
                          Detroit, MI 48226
18
                          Margaret A. Bettenhausen
19                        Michigan Department of Attorney General
                          525 W. Ottawa St., P.O. Box 30755
20                        Lansing, MI 48909

21                        Teresa Ann Caine Bingman
                          Law Offices of Teresa A. Bingman
22                        1425 Ambassador Dr.
                          Okemos, MI 48864
23                                      (Continued on next page)

24   To obtain a         JESECA C. EDDINGTON, RDR, RMR, CRR, FCRR
     certified           FEDERAL OFFICIAL COURT REPORTER
25   transcript:         UNITED STATES DISTRICT COURT
                         200 E. LIBERTY ST. - ANN ARBOR, MI 48104
```

```
 1                    Jayson E. Blake
                      McAlpine PC
 2                    3201 University Dr., Ste. 100
                      Auburn Hills, MI 48326
 3
                      Peretz Bronstein
 4                    Bronstein, Gewirtz & Grossman LLC
                      60 E. 42nd St., Ste. 4600
 5                    New York, NY 10165

 6                    James W. Burdick
                      Burdick Law P.C.
 7                    1760 S. Telegraph Rd., Ste. 300
                      Bloomfield Hills, MI 48302
 8
                      Michael S. Cafferty
 9                    Michael S. Cafferty & Associates
                      333 W. Fort St., Ste. 1400
10                    Detroit, MI 48226

11                    James M. Campbell
                      Campbell, Campbell, Edwards & Conroy
12                    One Constitution Plaza, Suite 300
                      Boston, MA 02129-2025
13
                      Jordan W. Connors
14                    Susman Godfrey L.L.P.
                      1201 Third Ave., Ste. 3800
15                    Seattle, WA 98101

16                    Mark R. Cuker
                      Cuker Law Firm, LLC
17                    One Commerce Square, 2005 Market Street
                      Philadelphia, PA 19103
18
                      Eugene Driker
19                    Barris, Sott, Denn & Driker, PLLC
                      333 w. Fort Street, Suite 1200
20                    Detroit, MI 48226

21                    Philip A. Erickson
                      Plunkett & Cooney
22                    325 E. Grand River Ave., Ste. 250
                      East Lansing, MI 48823
23
                      Shayla A. Fletcher
24                    The Fletcher Law Firm, PLLC
                      1637 S. Huron
25                    Ypsilanti, MI 48197
```

```
 1                          Nathan A. Gambill
                            Michigan Department of Attorney General
 2                          ENRA Division, P.O. Box 30755
                            Lansing, MI 48909
 3
                            William H. Goodman
 4                          Goodman and Hurwitz, P.C.
                            1394 E. Jefferson Ave.
 5                          Detroit, MI 48207

 6                          Philip A. Grashoff, Jr.
                            Kotz Sangster Wysocki P.C.
 7                          36700 Woodward Avenue, Suite 202
                            Bloomfield Hills, MI 48304
 8
                            John A.K. Grunert
 9                          Campbell, Campbell, Edwards & Conroy
                            One Constitution Plaza, Suite 300
10                          Boston, MA 02129-2025

11                          Sarah T. Hansel
                            Berezofsky Law Group, LLC
12                          210 Lake Drive East, Suite 101
                            Cherry Hill, NJ 08002
13
                            Jonathon K. Homa
14                          Sinas Dramis Law Firm
                            3380 Pine Tree Rd.
15                          Lansing, MI 48911

16                          Julie H. Hurwitz
                            Goodman and Hurwitz, P.C.
17                          1394 E. Jefferson Ave.
                            Detroit, MI 48207
18
                            William Young Kim
19                          City of Flint
                            1101 S. Saginaw St., Third Floor
20                          Flint, MI 48502

21                          Sheldon H. Klein
                            Butzel Long, P.C.
22                          Stoneridge West, 41000 Woodward Ave.
                            Bloomfield Hills, MI 48304
23
                            Kurt E. Krause
24                          Chartier Nyamfukudza P.L.C.
                            1905 Abbot Rd., Suite 1
25                          East Lansing, MI 48823
```

June 18, 2018

```
 1                    Deborah A. LaBelle
                      Law Offices of Deborah LaBelle
 2                    221 N. Main St., Ste. 300
                      Ann Arbor, MI 48104
 3
                      Zachary C. Larsen
 4                    Michigan Department of Attorney General
                      ENRA Division, P.O. Box 30755
 5                    Lansing, MI 48909

 6                    Theodore J. Leopold
                      Cohen Milstein Sellers and Toll PLLC
 7                    2925 PGA Boulevard, Ste. 200
                      Palm Beach Gardens, FL 33410
 8
                      Emmy L. Levens
 9                    Cohen Milstein Sellers and Toll PLLC
                      1100 New York Ave., NW, Ste. 500
10                    Washington, DC 20005

11                    Cynthia M. Lindsey
                      Cynthia Lindsey & Associates
12                    8900 E. Jefferson Ave., No. 612
                      Detroit, MI 48214
13
                      Wayne Brian Mason
14                    Drinker Biddle & Reath LLP
                      1717 Main St., Ste. 5400
15                    Dallas, TX 75201

16                    Cary S. McGehee
                      Pitt, McGehee, Palmer & Rivers, PC
17                    117 W. Fourth St., Ste. 200
                      Royal Oak, MI 48067
18
                      James W. McGinnis
19                    James W. McGinnis, P.C.
                      985 East Jefferson Ave., Ste. 100
20                    Detroit, MI 48027

21                    Todd R. Mendel
                      Barris, Sott, Denn & Driker, PLLC
22                    333 W. Fort Street, Suite 1200
                      Detroit, MI 48226-3281
23

24

25
```

```
 1                        Brett T. Meyer
                          O'Neill, Wallace & Doyle, P.C.
 2                        Four Flags Office Center
                          300 Saint Andrews Rd., Ste. 302
 3                        P.O. Box 1966
                          Saginaw, MI 48605
 4
                          David W. Meyers
 5                        5520 Main Street
                          Lexington, MI 48450
 6
                          Matt Mitchell
 7                        Maddin Hauser Roth & Heller PC
                          28400 Northwestern Highway, Second Floor
 8                        Southfield, MI 48034

 9                        Thaddeus E. Morgan
                          Fraser, Trebilcock
10                        124 West Allegan Street, Suite 1000
                          Lansing, MI 48933
11
                          Marie Napoli
12                        Napoli Shkolnik PLLC
                          360 Lexington Ave., 11th Floor
13                        New York, NY 10017

14                        Paul J. Napoli
                          Napoli Shkolnik PLLC
15                        360 Lexington Ave., 11th Floor
                          New York, NY 10017
16
                          Paul F. Novak
17                        Weitz & Luxenberg, P.C.
                          Chrysler House
18                        719 Griswold Street, Suite 620
                          Detroit, MI 48226
19
                          Michael J. Pattwell
20                        Clark Hill, PLC
                          212 E. Cesar E. Chavez Ave.
21                        Lansing, MI 48906

22                        Michael L. Pitt
                          Pitt, McGehee, Palmer & Rivers, PC
23                        117 West Fourth Street, Suite 200
                          Royal Oak, MI 48067-3804
24

25
```

```
 1                          Jonathon A. Rabin
                            Hall Render Killian Heath & Lyman
 2                          Columbia Center
                            201 W. Big Beaver Rd., Ste. 1200
 3                          Troy, MI 48084

 4                          Solomon M. Radner
                            EXCOLO LAW, PLLC
 5                          26700 Lahser Rd., Ste. 401
                            Southfield, MI 48033
 6
                            Alexander S. Rusek
 7                          White Law PLLC
                            2400 Science Parkway, Ste. 201
 8                          Okemos, MI 48864

 9                          Herbert A. Sanders
                            The Sanders Law Firm PC
10                          615 Griswold Street, Suite 913
                            Detroit, MI 48226
11
                            Shermane Sealey
12                          Law Office of Shermane Sealey
                            30300 Northwestern Highway, Ste. 142
13                          Farmington Hills, MI 48334

14                          Ryan Steven Sharp
                            Marc J. Bern and Partners
15                          60 E. 42nd St., Ste. 950
                            New York, NY 10165
16
                            David J. Shea
17                          Shea Aiello, PLLC
                            26100 American Dr., Second Floor
18                          Southfield, MI 48034

19                          Hunter Shkolnik
                            Napoli Shkolnik Law PLLC
20                          1301 Avenue of the Americas, 10th Floor
                            New York, NY 10019
21
                            John Simpson
22                          Napoli Shkolnik Law PLLC
                            1301 Avenue of the Americas, 10th Floor
23                          New York, NY 10019

24                          Susan Elizabeth Smith
                            Goldberg Segalla LLP
25                          One North Charles St., Ste. 2500
                            Baltimore, MD 21201
```

```
 1                          Corey M. Stern
                            Levy Konigsberg, LLP
 2                          800 Third Ave., Ste. 11th Floor
                            New York, NY 10022
 3
                            Craig S. Thompson
 4                          Sullivan, Ward
                            25800 Northwestern Hwy., Ste. 1000
 5                          Southfield, MI 48075

 6                          Valdemar L. Washington
                            718 Beach St., P.O. Box 187
 7                          Flint, MI 48501

 8                          Todd Weglarz
                            Fieger, Fieger, Kenney & Harrington, PC
 9                          19390 W. 10 Mile Rd.
                            Southfield, MI 48075
10
                            Jessica B. Weiner
11                          Cohen Milstein Sellers and Toll PLLC
                            1100 New York Ave., NW, Ste. 500
12                          Washington, DC 20005

13                          Michael R. Williams
                            Bush, Seyferth & Paige, PLLC
14                          3001 W. Big Beaver Road, Suite 600
                            Troy, MI 48084
15
                            Kenneth Wilson
16                          Perkins Law Group, PLLC
                            615 Griswold, Ste. 400
17                          Detroit, MI 48226

18                          Matthew Wise
                            Foley & Mansfield, PLLP
19                          130 East Nine Mile Road
                            Ferndale, MI 48220
20
                            Barry A. Wolf
21                          Barry A. Wolf, Attorney at Law, PLLC
                            503 South Saginaw Street, Suite 1410
22                          Flint, MI 48502

23

24

25
```

June 18, 2018

1                          **I N D E X**

2

3      MISCELLANY

4              Proceedings..................................9
               Certificate..................................70

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                  **P R O C E E D I N G S**

2           THE CLERK:  The matter before the Court is In Re

3     Flint Water Cases.  Attorneys, please put your appearances on

4     the record.

5           THE COURT:  Thank you.  We'll start with counsel

6     table and then move over to the jury box.

7           MR. LEOPOLD:  Good afternoon, your Honor.  Ted

8     Leopold, co-lead counsel for the class.

9           MR. PITT:  Good afternoon.  Michael Pitt co-lead for

10    the class.

11          MR. SHKOLNIK:  Good afternoon, your Honor.  Hunter

12    Shkolnik, interim liaison counsel for individuals.

13          MR. STERN:  Your Honor, Corey Stern, liaison counsel

14    for individual plaintiffs.

15          MS. BETTENHAUSEN:  Margaret Bettenhausen for the

16    state defendants.

17          MR. KIM:  William Kim for City of Flint and former

18    Mayor Dayne Walling.

19          MR. RUSEK:  Good afternoon, your Honor.  Alexander

20    Rusek on behalf of Howard Croft.

21          THE COURT:  Thank you.

22          MR. BERG:  Your Honor, Frederick Berg here on behalf

23    of the City of Flint.

24          THE COURT:  Thank you.

25          MS. WEINER:  Jessica Weiner on behalf of the class

1    plaintiffs.

2         MR. BURDICK:   James Burdick on behalf of Adam

3    Rosenthal, your Honor.

4         MR. WEGLARZ:   Todd Weglarz for plaintiff Gradine

5    Rogers and Odie Brown.

6         THE COURT:   Thank you.

7         MR. WASHINGTON:   Good afternoon, your Honor.   Val

8    Washington appearing on behalf of plaintiff Joel Lee, the

9    Anderson plaintiffs, and a portion of the Gulla individual

10   plaintiffs.

11        MS. BINGMAN:   Good afternoon, your Honor.   Teresa

12   Bingman appearing on behalf of class plaintiffs and Marble

13   family plaintiffs.

14        MR. CONNORS:   Good afternoon.   Jordan Connors from

15   Susman Godfrey appearing on behalf of the class plaintiffs.

16        MR. NOVAK:   Paul Novak on behalf of the class

17   plaintiffs.

18        MS. LEVENS:   Emmy Levens on behalf of the class

19   plaintiffs.

20        MS. HANSEL:   Good afternoon.   Sarah Hansel on behalf

21   of a portion of the Gulla plaintiffs, the Lowery plaintiffs,

22   and the class plaintiffs.

23        MS. LINDSEY:   Good afternoon, your Honor.   Cynthia

24   Lindsey on behalf of class plaintiffs.

25        THE COURT:   Good.   Thank you.

```
 1          MR. BRONSTEIN:  Peretz Bronstein on behalf of class
 2   plaintiffs.
 3          MR. GAMBILL:  Nathan Gambill on behalf of the state
 4   defendants.
 5          THE COURT:  Good.  Okay.  Then we have some summer
 6   interns and so they have joined us as well as my law clerks.
 7   So why don't we start with Ms. LaBelle and then work our way
 8   over.
 9          MS. LABELLE:  Debra LaBelle on behalf of class
10   plaintiffs.
11          MR. GOODMAN:  Bill Goodman appearing on behalf of
12   class plaintiffs and the Marble family.
13          MS. HURWITZ:  Good afternoon, Judge.  Julie Hurwitz
14   on behalf of the class plaintiffs and the Marble.
15          MS. NAPOLI:  Marie Napoli for individual plaintiffs,
16   your Honor.
17          THE COURT:  Thank you.
18          MR. NAPOLI:  Paul Napoli on behalf of individual
19   plaintiffs.  Good afternoon, your Honor.
20          THE COURT:  Okay.  Good afternoon.
21          MR. MITCHELL:  Your Honor, Matt Mitchell on behalf of
22   the Guertin plaintiffs here today in the place of David Hart.
23          THE COURT:  Thank you.
24          MR. MASON:  Thank you, your Honor.  Wayne Mason on
25   behalf of the LAN defendants as well as Phil Erickson, my
```

1    co-counsel.

2           MR. GRUNERT:  John Grunert on behalf of the three

3    North American Veolia defendants.

4           MR. CAMPBELL:  Good afternoon, your Honor.  James

5    Campbell.  I represent also the three North American Veolia

6    defendants.

7           MR. WILLIAMS:  Good afternoon, your Honor.  Michael

8    Williams on behalf of the Veolia North American defendants.

9           THE COURT:  Welcome back.

10          MR. WILLIAMS:  Thanks.

11          THE COURT:  We have another case going on right now.

12          MR. BARBIERI:  Your Honor, Charles Barbieri for

13   Patrick Cook and Michael Prysby.

14          MR. GRASHOFF:  Philip Grashoff, your Honor.  Good

15   afternoon, on behalf of Stephen Busch.

16          MR. PATTWELL:  Good afternoon, your Honor.  Michael

17   Pattwell on behalf of Dan Wyant and Brad Wurfel.

18          MR. MORGAN:  Thaddeus Morgan on behalf of Liane

19   Shekter Smith.

20          MR. THOMPSON:  Craig Thompson for defendant Rowe

21   Professional Company.

22          THE COURT:  Good.  Thank you.

23          MR. SIMPSON:  Good afternoon, your Honor.  John

24   Simpson on behalf of individual plaintiffs.

25          MR. RABIN:  Good afternoon, your Honor.  Jonathon

June 18, 2018

1   Rabin on behalf of defendant Hurley Medical Center and

2   individual defendants Birchmeier and Newell.

3           THE COURT:  Thank you.

4           MR. BLAKE:  Good afternoon, your Honor.  Jayson Blake

5   on behalf of the state court class plaintiffs.

6           MS. MCGEHEE:  Good afternoon, your Honor.  Cary

7   McGehee on behalf of class plaintiffs.

8           MR. HOMA:  Good morning, your Honor.  Jonathon Homa

9   on behalf of individual plaintiffs.

10          MR. RADNER:  Good afternoon, your Honor.  Solomon

11  Radner on behalf of the Washington plaintiffs.

12          MS. SEALEY:  Good afternoon.  Shermane Sealey behalf

13  of class plaintiffs.

14          MR. LARSEN:  Good afternoon, your Honor.  Zach Larsen

15  on behalf of state defendants.

16          MS. SMITH:  Good afternoon, your Honor.  Susman Smith

17  on behalf of McLaren.

18          MR. KLEIN:  Good afternoon, your Honor.  Sheldon

19  Klein for City of Flint.

20          MR. MENDEL:  Good afternoon, your Honor.  Todd Mendel

21  and Eugene Driker on behalf of Governor Snyder.

22          MR. WOLF:  Good afternoon, your Honor.  Barry Wolf on

23  behalf of Gerald Ambrose.

24          THE COURT:  Thank you.

25          MR. CAFFERTY:  Good afternoon, your Honor.  Michael

 1    Cafferty on behalf of defendant Nancy Peeler.

 2          MR. WISE:  Good afternoon, your Honor.  Matt Wise on

 3    behalf of Jeffrey Wright.

 4          MR. KRAUSE:  Good afternoon, your Honor.  Kurt Krause

 5    on behalf of defendant Robert Scott.

 6          MR. WILSON:  Good afternoon, your Honor.  Ken Wilson

 7    appearing on behalf of Darnell Earley.  Also with me here on

 8    behalf of Mr. Earley is James McGinnis.

 9          THE COURT:  Oh, okay.  Hi, Mr. McGinnis.

10          MR. SHARP:  Good afternoon, your Honor.  Ryan Sharp

11    for the Washington plaintiffs.

12          MR. CUKER:  Good afternoon, your Honor.  Mark Cuker

13    for individuals plaintiffs.

14          MR. SANDERS:  Good afternoon, your Honor.  Herb

15    Sanders for the Alexander plaintiffs.

16          THE COURT:  Okay.

17          MR. SHEA:  Good afternoon, your Honor.  David Shea on

18    behalf of the class plaintiffs.

19          MS. FLETCHER:  Good afternoon, your Honor.  Shayla

20    Fletcher on behalf of the Alexander plaintiffs.

21          MR. MEYERS:  Good afternoon, your Honor.  David

22    Meyers on behalf of Dougherty Johnson.

23          MR. MEYER:  Good afternoon, your Honor.  Brett Meyer

24    appearing on behalf of defendant Michael Glasgow.

25          THE COURT:  Well, I think that's enough.  So thank

1    you, all, for being here.  Let me mention someone who is also

2    here.  We have been joined today by Judge Yuille, who is

3    Genesee County judge who is handling many -- there's Judge

4    Yuille.  Many of the state court individual cases and two

5    class actions in the state court in Genesee County.  So he was

6    able to be here today and I appreciate it a great deal.

7            Prior to this hearing, we met in chambers.  Judge

8    Yuille and myself and sort of the executive leadership of both

9    the plaintiffs and the defense lawyers in this case to prepare

10   both for this hearing today and also to generally discuss

11   issues that are pending in these cases.  And it was

12   tremendously helpful to have Judge Yuille there.  So thank

13   you.

14           I want to remind everybody that when you speak you

15   need to identify your name.  You don't have to say all of your

16   clients at that time.  And if you're going to say more than

17   one or two words, I need you to come up and speak into a

18   microphone so that both I can hear you.

19           I could probably hear you because you're projecting

20   this way.  But so that your co-counsel and others who are here

21   can hear you as well.

22           So on June 8th, I issued an agenda for this status

23   conference.  The first one begins with the cross motions to

24   replace individual co-liaison counsel Mr. Shkolnik and

25   likewise his motion for interim co-lead counsel to be removed

 1    and replaced.  And in that agenda item, I indicated that there

 2    would be oral argument on those motions.

 3            And in between June 8th and today, I have determined,

 4    having re-read the motions, the responses, all of the

 5    briefing.  There was -- was it Veolia also weighed in or LAN?

 6    Can you remind me?  Veolia.

 7            MR. CAMPBELL:  Perhaps more that two words.  But I

 8    think we just --

 9            MADAM COURT REPORTER:  State your name.

10            THE COURT:  That's right.

11            MR. CAMPBELL:  James Campbell.  Sorry.  First one up

12    and I missed it.  James Campbell.  We did, your Honor.  Just a

13    brief regarding legal issues.

14            THE COURT:  Yes.  Exactly.  And I appreciated that.

15    So in lieu of oral argument, I have reached a decision and I

16    have an oral opinion that I would like to present to you.

17            On April 25th of 2014, the source of water for the

18    City of Flint Michigan was changed from Lake Huron

19    administered by the City of Detroit Water and Sewerage

20    Department to the Flint River at the direction of a number of

21    the defendants named in this case.

22            Soon thereafter, Flint residents began to complain

23    about the unusual color and unpleasant smell of their potable

24    water.  They also reported rashes and other problems connected

25    to the use of city water.

```
 1          Later elevated blood levels -- blood lead levels were
 2   detected and some individuals because critically and even
 3   terminally ill with Legionnaires' disease which they allege
 4   resulted from the change in water sources.
 5          The story has many, many more details, some of which
 6   are contested by the defendants and many of which are not.
 7          On January 27th of 2016, the first federal lawsuit
 8   over what this Court will refer to as the "Flint Water
 9   Contamination Crisis" was filed.  Soon, many more complaints
10   were filed here in the Eastern District of Michigan, the
11   Western District of Michigan, Genesee County Circuit Court
12   where there are cases pending before Judge Yuille and Judge
13   Fullerton.  There are also criminal cases in Genesee County as
14   well as cases filed in the Michigan Court of Claims and
15   undoubtedly other courts and venues as well.
16          These cases have been considered by all of these
17   courts as well as the Michigan Court of Appeals, the Michigan
18   Supreme Court, the Sixth Circuit Court of Appeals, and the
19   United States Supreme Court.  Criminal charges have been
20   lodged against many of the individual defendants and hours
21   upon hours of testimony have already been taken in those cases
22   as they wind their way through the system.
23          By any definition, this is complex litigation.  It
24   has already required the time and attention of scores of
25   judges, lawyers, experts, and mediators.
```

1    This Court now has the vast majority of the pending

2    cases in this district that seek money damages for personal

3    and property damages related to the water contamination

4    crisis.  In order to manage this litigation as effectively and

5    efficiently as possible, I appointed interim co-lead class

6    counsel and co-lead liaison counsel for the cases filed by

7    individuals.

8    Various procedural and substantive motions have

9    already been adjudicated here all in an effort to ensure that

10   this litigation continues to move forward in a fair and

11   efficient manner.

12   To date, those impacted by this crisis continue to

13   wait to see how the litigation will proceed without any sign

14   of the relief they seek.  And those who have been civilly sued

15   and criminally prosecuted face mounting legal bills,

16   uncertainty, and the prospect of paying a high penalty either

17   financially or with their liberty or both.

18   Everyone is reliant on their lawyers to represent

19   them zealously and appropriately.

20   Then in March of this year, class counsel filed a

21   motion to have Mr. Hunter Shkolnik removed from his leadership

22   role from the individual plaintiffs.  Class counsel alleged

23   that Mr. Shkolnik had a retainer agreement that while lawful

24   in some states is not permitted in Michigan where attorney

25   fees are capped in a case of this nature at one third of the

 1    recovery.

 2            They also alleged that Mr. Shkolnik was soliciting

 3    clients in violation of the Michigan Rules of Professional

 4    Conduct, specifically at a town hall meeting at a church.  I

 5    have read the transcript of the meeting and reviewed the

 6    retainer agreements as well as the now modified retainer

 7    agreements.

 8            Mr. Shkolnik responded to those allegations by

 9    denying the solicitation charge and changing the retainer

10    agreements, but he then filed what I saw as a more forceful

11    and in many ways more substantive motion to have the interim

12    co-lead class counsel removed.

13            Shkolnik informed the Court that interim co-lead

14    class counsel had demanded to be in charge of distributing

15    common benefit work and collecting and managing any common

16    benefit time and expense order.

17            He informed me that interim co-lead class counsel had

18    communicated with putative class members in a misleading way

19    implying that the case was already certified as a class and

20    discouraging individuals from signing up with Shkolnik or

21    Stern or any of the other plaintiffs' counsel here in

22    violation of both the professional rules of conduct and the

23    Federal Rules of Civil Procedure.

24            He further accused the interim co-lead class counsel

25    of entering into what he called -- and I'm quoting from his

1    brief -- secret side fee deals regarding work and hours that

2    it intended to hide from a third party audit.

3         Next Mr. Shkolnik brought to my attention several

4    conflict of interest issues.  His motion pointed out that Mr.

5    Pitt is seeking class certification for a class that has both

6    current and future damages, something that can cause a class

7    to be rejected or a court to be reversed if it were certified

8    and the work undone.

9         Even if it is a settlement only class.  He also

10   pointed out that Mr. Pitt is holding himself out as class

11   counsel in this case while he is also representing over 1,000

12   individuals in a piece of Flint Water litigation against the

13   environmental protection agency that's pending before Judge

14   Linda Parker seeking the same damages he is seeking in a class

15   in this case, setting up a potential conflict of interest that

16   could disturb the outcome in this case if it's not addressed.

17        I note that interim co-lead class counsel changed

18   their newsletter so that it would not announce that they are

19   already -- that there is already a class when there is not

20   currently a class certified in this case.

21        I've given these motions a great deal of thought.

22   They have made national law media and they have been even been

23   covered in some more widely distributed media venues.  I

24   understand that the Federal Rules of Civil Procedure as well

25   as the inherent authority I have as a judge in this case that

1    I have the authority to remove counsel from these leadership

2    roles or to direct them to correct the problems.

3           There's no shortage of lawyers, as can be evidenced

4    in this courtroom this afternoon.  I certainly can remove

5    counsel, add others to assist if the work cannot get done in a

6    professional responsible and ethical way.

7           As I said at the beginning of my involvement with

8    this case, everyone in this room has a critically important

9    role in this litigation.  My job is to manage the litigation

10   in a manner that's fair to all parties on both sides of the V.

11   I am doing my level best to do this in an efficient manner and

12   to oversee this litigation in a way that will allow the

13   parties to develop the facts and legal arguments in the most

14   efficient way.

15          The Sixth Circuit will let me know if they disagree

16   with the legal decisions I make.  And history will tell us if

17   I failed to manage this litigation in a way that requires it

18   to proceed in a fair and efficient manner.

19          Defense counsel are doing their job as can be seen by

20   the volume of motions to dismiss that I'm currently reading

21   and working on.  Plaintiffs' counsel, and I apply that, are

22   required to live by the rules, to work zealously on behalf of

23   your clients.  You don't need me to tell you that your clients

24   are counting on you.

25          I believe that the allegations against the interim

June 18, 2018                                                                22

1   co-lead counsel are well documented and are serious.   I

2   appreciate the original retainer agreement that Mr. Shkolnik

3   was using having been brought to my attention by Mr. Pitt and

4   Mr. Leopold and that has now been corrected.

5           Separately from anything brought forward in the

6   motion to remove Mr. Shkolnik, I'd like to add that the Bryant

7   request for a preliminary injunction or temporary restraining

8   order that was filed by Mr. Shkolnik and joined by Mr. Stern

9   seeking to have distribution of bottled water resumed in Flint

10  should have never been filed.

11          Due diligence was not exercised and at the conclusion

12  of the hearing I carefully weighed whether a monetary sanction

13  would be appropriate.  Ultimately I decided against it.  What

14  I want in these cases is for counsel to work hard, to work

15  carefully, and to seek relief that is warranted by the facts

16  and the law.  Nothing more or less than that.

17          After a great deal of consideration, I am prepared to

18  deny both pending motions to fire the various counsel.  I

19  agree that important and serious allegations have been leveled

20  and some of those violations relate to the Michigan Rules of

21  Professional Conduct.

22          So I am not denying the motions because they lack any

23  merit.  I'm denying them because I believe the currently

24  appointed plaintiffs' lawyers are capable of living up to the

25  rules that govern their practice.

1       Mr. Stern set this forward in his affidavit relating

2   to these indicating that in his opinion -- and I agree -- that

3   each of these counsel who have various allegations against

4   them have despite those allegations worked very hard to move

5   these cases along and have expended tremendous resources and

6   talent in doing that.

7       I have watched what's going on in this case at all

8   levels to the extent that I can.  And I can assure every one

9   of you in this room that my only concern is what I have set

10  forth above -- to see this case through in a fair and

11  impartial manner.  I have no sympathies or allegiances or

12  anything at all for anyone in this room that rises above that.

13  I can assure you that my eyes are open and have been

14  throughout this process.

15      I may be a relatively new judge on a relatively new

16  job and I may be a relatively patient person, or at least I

17  might come across in that manner at times.  But I have zero

18  tolerance for professional misconduct, for manipulating the

19  process, and for taking advantage of the people of Flint for

20  personal gain.

21      I understand that attorney fees are an important part

22  of this process and I'm not critical of that.  You will not

23  hear me railing here or anyone else against plaintiffs'

24  lawyers being paid a fair fee.  You are a part of the legal

25  system that protects every one of us in this room from drugs,

1    products, and other contaminants that can harm all of us and

2    our families.

3          Whether we know it or not, we rely on you and your

4    colleagues' work throughout this country.  But that is only

5    true if the players in this system play by every one of the

6    rules that has been set forth and only then.

7          So as a result of these motions, I have determined

8    that I will be appointing a special master pursuant to Federal

9    Rule of Civil Procedure 53 to assist me in managing the

10   litigation.  The master will have oversight of the common

11   benefit, time, and expense order and will report to me on a

12   regular basis.

13         The special master will have copies of these motions

14   to ensure that her or his eyes are wide open as to some of the

15   issues that led to the appointment of the master.  If the

16   currently appointed plaintiffs' leadership team cannot fulfill

17   their duties, I will add positions or remove individuals if

18   necessary.

19         And I've determined that the current leadership

20   appointments will have terms of one year after which counsel

21   can reapply to the positions along with any other lawyers who

22   wish to apply.  There will be no term limits but there will be

23   terms.  And in my thinking there is no president for life in

24   this litigation.

25         So that will conclude the portion of the hearing

 1    related to these motions.  And in the order, case management

 2    order following this hearing, I will set a time period for --

 3    related to the special master appointment which is going to be

 4    discussed somewhat later.

 5            I will also determine when the one year -- counsel

 6    has essentially been in the job for one year.  I would

 7    anticipate counsel to continue, but I am certainly open to

 8    applications from other lawyers as well.  But I'll probably

 9    set that in three or four months from now during which

10    individuals can apply, including those who are filling the

11    positions.

12            So that will constitute the order on the cross

13    motions to remove various lawyers.

14            The next item on the agenda is the time and expense

15    order.  And I want to thank counsel very much for agreeing to

16    a proposed order.  And I received two sets of objections to

17    the time and expense order.  I have considered those

18    carefully.  I also received feedback from -- was it Mr.

19    Campbell?  Yes, Mr. Campbell.

20            And so what I have done is I took the time and

21    expense order that was stipulated and agreed upon and I have

22    changed about three words in it and that will -- I will tell

23    you right now one of them related to Mr. Campbell's suggestion

24    regarding confidential information and attorney work product.

25            And it simply takes out on a footnote that some of

1  these records that would relate to time and expense for a

2  common benefit, it takes out that they might contain

3  confidential information and simply says shall not be

4  disclosed to defendants without further court order or written

5  stipulation of the parties.

6          So you can tell me if it's -- what it is.  If it's

7  confidential information, if it's attorney work product, if

8  someone's seeking a court order to turn it over.  It could be

9  more than that.  It could be client's private information.  So

10 it just expands in some ways the protection of what's being

11 submitted.

12         The only other -- I included on paragraph 18 a new

13 sentence saying all counsel shall avoid block billing.  I

14 think this is pretty clear that there's not going to be block

15 billing.  It's in tenth of an hour increments.  But to make it

16 very clear, that is inserted in there.  And I think that is

17 the only other change.

18         I would like to indicate that I took into

19 consideration the other objections, but I found that this

20 order accommodates some of the concerns that were set forth,

21 which is that the Court ultimately has the authority to review

22 any submission and accept or reject it.

23         And this does set forth an independent third party.

24 It currently says accounting firm, which is what I had

25 envisioned.  But I think we will have a special master who

1    based on who that is we will make sure -- I have a proposal

2    for one, but we will make sure that that person has experience

3    with case management orders regarding time and expense.

4            So is there any further objection based on those two

5    small changes?

6            MR. SHKOLNIK:  Nothing from liaison counsel, your

7    Honor.  Thank you, very much.

8            MR. LEOPOLD:  Nothing from co-lead, your Honor.

9            THE COURT:  Okay.  Then that will be entered at the

10   conclusion of this hearing.  The issue is that it still has a

11   parentheses for who is actually going to review this material

12   in the first instance.  And we will -- well, why don't we just

13   get to that right now.

14           Which is that a moment ago I indicated that I am at a

15   point in this litigation where I think a special master would

16   be of tremendous help to me in this case.  And I met with

17   several people and -- well, talked extensively with several

18   people and met in person with one.  And her name is Deborah

19   Greenspan.  She is a partner at Blank Rome in Washington, D.C.

20           She has 15 years of special master experience,

21   including administering the September 11th Victim Compensation

22   Fund and deputy special master in the September 11th Victim

23   Compensation Fund work in the first instance, special master

24   in an Agent Orange product liability litigation.  And many

25   others.

1    She's a speaker around the country on effective work
2    as a special master.  One of the strengths I think that Ms.
3    Greenspan can bring to this process is she has experience
4    coordinating between state and federal litigation in the
5    multidistrict litigation context as well as class action
6    context.

7    But I will set two weeks from today as a date by
8    which all counsel in this case can -- well, what we'll do is
9    use co-liaison counsel to assimilate or collate proposals from
10   any individuals.  And co-lead class counsel will submit their
11   recommendations.  And defense counsel may all weigh in on this
12   within two weeks.

13   And if you have no objection to Ms. Greenspan, you
14   can certainly just indicate that.  If you have a new proposal,
15   someone else who you think would be good for the position, you
16   can file that person's name as well as some identifier so I
17   can look the person up.

18   Ms. Greenspan has indicated that she does have the
19   time, attention, and ability to work on this case.  She's from
20   Michigan, has family in Michigan, and has other cases here.
21   And she would also take the time to come in and meet with
22   counsel so she -- prior to any decision being made.

23   So is there anything on the issue of -- the potential
24   duties of the special master at this point would be limited to
25   administering the time and expense reporting, managing a

1    census order if we end up where a census order -- and we'll

2    discuss that one fully -- coordinating with the state court

3    litigation, and potentially some assistance with discovery.

4              But for now until the case is further down the road,

5    I'll continue to handle discovery issues.  Mr. Leopold.

6              MR. LEOPOLD:  Your Honor --

7              THE COURT:  State your name in case I got it wrong.

8              MR. LEOPOLD:  You got it right.  Ted Leopold, co-lead

9    for the class.  Your Honor, just one question.  In terms of

10   the time and expense order, will that begin at the time that

11   the court enters the order so that we can begin to accumulate

12   information --

13             THE COURT:  Yes.

14             MR. LEOPOLD:  -- and be able to provide it to the

15   special master when he or she --

16             THE COURT:  Yes.

17             MR. LEOPOLD:  -- or Ms. Greenspan will be appointed?

18             THE COURT:  Thank you.  It will.  Because I think it

19   includes a line in it where records are submitted on the --

20   the first submission is due on the 15th of each month.  So it

21   wouldn't -- at the earliest it would be July 15th.  But it

22   will be the 15th of the month after which an appointment is

23   made.

24             Depending on names that are submitted and

25   consideration given to other names for a special master, it

1     could take a little bit of time to identify the person and

2     have them in place.

3          MR. SHKOLNIK:  Your Honor, if I can just be heard?

4     Hunter Shkolnik.  With respect to the first filing of time and

5     expense, we would ask that the Court put that off for 60 days

6     so that any attorney that has to collect the time and get it

7     in proper format has a little bit of breathing room between

8     now and the 15th of July.  So we can have the first submission

9     on I think we're in June, August 15th.

10          THE COURT:  Okay.

11          MR. SHKOLNIK:  Thank you.

12          THE COURT:  I think that's a good idea.

13                         (Pause in Proceedings)

14          THE COURT:  Jeseca's computer has decided that it

15     needs some software updated right now.  Let's just be in recess

16     for about five to ten minutes.

17                         (Brief Recess)

18          THE COURT:  Please be seated.  Okay.  Well, that

19     takes care of the time and expense order.

20          We're now on the portion of the agenda related to

21     issues with short form complaint filings.  The first case that

22     I've identified is Alexander v Lockwood, Andrews, and Newnam.

23     And I believe there was an amended case filed very recently.

24     Who filed that?

25          MR. SHKOLNIK:  Your Honor, I believe --

1           THE COURT:  Oh, Mr. Sanders.

2           MR. SANDERS:  Yes, that is accurate, your Honor.

3           THE COURT:  Could you identify yourself?

4           MR. SANDERS:  Herb Sanders on behalf of the Alexander

5    plaintiffs.

6           THE COURT:  And the issue there is that it was

7    difficult, if not impossible, to know which of your many

8    plaintiffs have which damages.  And you amended that because

9    it looked like everybody had legionella and everybody had lead

10   poisoning and so on.

11          And so what I need to know is whether the defendants

12   have received that.  You would have by electronic case filing.

13   But whether it is now clear to you.

14          MR. GRUNERT:  Your Honor, John Grunert.  For reasons

15   I don't understand, my office, in fact, didn't receive that.

16   And I first saw a copy of it when I was having lunch today.

17   And what your order had been was that Mr. Stern and I were

18   supposed to confer about the problems, reach an agreement, and

19   that there would be an amended complaint.

20          Mr. Stern and I did confer.  We did reach an

21   agreement.  But I simply haven't had time yet to see if the

22   agreement has been executed so that the problem is resolved.

23          I would ask simply that you give us another week or

24   two to make sure that it's been resolved or if it hasn't been

25   resolved to find a way to resolve it.  We had no problem

1    reaching an agreement.  It's just we don't know whether it's

2    been executed.  Mr. Stern told me that he hasn't seen it yet

3    either, so.

4              THE COURT:  Okay.

5              MR. GRUNERT:  That's where we stand.

6              THE COURT:  All right.  Well, thank you, Mr. Grunert.

7    Mr. Stern, do you have anything to add?

8              MR. STERN:  Your Honor, Corey Stern for the

9    plaintiffs.  I agree.  And it's actually -- that point is

10   probably applicable to the list that's here.  The Alexander

11   case we did reach an agreement and then the Alexander case was

12   re-filed.  Brown and Rogers are both cases that are recently

13   filed and served cases that were filed I believe by your firm,

14   right?

15             MR. WEGLARZ:  Correct.

16             THE COURT:  And who said correct?

17             MR. WEGLARZ:  I'm sorry.  Todd Weglarz, your Honor.

18             THE COURT:  Thank you.  But let me stop you.  Brown

19   and Rogers, one of the issues is that they were filed with the

20   wrong case captions so they need to have their own case

21   caption filed.  They have their own unique number, 10726 and

22   10713.  So I believe they were filed in 16-10444.

23             MR. STERN:  It's a -- sorry.  Corey Stern, again.

24   It's a confusion between filing the case in the master case,

25   which is the Waid case, versus in these individual short form

```
 1    complaints filing them in the case in which they were
 2    originally filed.
 3              THE COURT:  Yes.
 4              MR. STERN:  So like we did with Mr. Grunert and with
 5    the Washington plaintiffs, if we can have two weeks I think we
 6    would easily be able to just have them re-filed in a way that
 7    -- how it likely should have been done.  But it's probably on
 8    me for not having explained the first time around exactly what
 9    the procedure was.
10              So it's not the lawyers who messed it up as much as
11    it was probably me telling them to do it in a way that was
12    incorrect.
13              THE COURT:  Okay.  So let's take two weeks from today
14    to get that done.  And in the Alexander I heard Mr. Grunert
15    ask for one week, but we'll keep all the dates the same.  So
16    that will also be two weeks to let the Court know if the
17    solution is adequate.
18              And in Marble v Snyder, there are case 17-12942.
19    There are expired summonses of unserved defendants.  And there
20    are quite a few of them, if I'm not mistaken.  Mr. Goodman.
21              MR. GOODMAN:  William Goodman on behalf of the Marble
22    plaintiffs.  I believe that we have received waivers from all
23    counsel in that regard with regard to the service of the
24    summonses, your Honor and all of the defendants in the --
25    excuse me, from all of the defendants in the case.  All of the
```

```
 1    defendants in the case have also filed motions to dismiss,
 2    which I think is basically indicative of the progress of the
 3    case.
 4              THE COURT:  That is indicative of progress serving
 5    people.
 6              MR. GOODMAN:  While I'm standing here, if I may have
 7    permission to raise one issue.  We have asked all counsel, all
 8    defense counsel in this case, for an extension of time to
 9    respond.  Currently the response date I think is the 29th of
10    this month and we've asked for another approximately six weeks
11    until August 17th.  I don't know if that would --
12              THE COURT:  To respond to the motions to dismiss?
13              MR. GOODMAN:  To dismiss, correct.
14              THE COURT:  The problem with that is that we
15    currently have an oral argument on September 26th.  Can you
16    shorten that to one month instead of six weeks?
17              MR. GOODMAN:  Yes, certainly.
18              THE COURT:  Okay.
19              MR. GOODMAN:  So that will be July 29?
20              THE COURT:  Probably.  That's got to be close.
21              MR. GOODMAN:  Within -- if it's a non weekend,
22    something like that.
23              THE COURT:  Something right around there.
24              MR. GOODMAN:  Okay.
25              THE COURT:  We'll put it in the order.
```

1          MR. GOODMAN:  Thank you, your Honor.

2          THE COURT:  Thank you.  Mr. Grashoff.

3          MR. GRASHOFF:  May it please the Court, Philip

4   Grashoff appearing for Stephen Busch.  Two things going back

5   to Alexander.  The amended complaint in Alexander contains the

6   same allegations that were stricken from an earlier complaint

7   with respect to the criminality of the state of the criminal

8   proceedings and what our clients are being charged with.

9          We want -- request the Court to direct them to remove

10   that language from the complaint as they did the first time.

11          MR. STERN:  Your Honor, if I may?

12          THE COURT:  Yes.

13          MR. STERN:  Corey Stern, again.  My guess is what Mr.

14   Grashoff is referring to is a previous class complaint that

15   there was a major issue that was resolved before your Honor

16   where there was some language on the record.  My other guess

17   is that once Mr. Grunert and LAN look at the complaint, they

18   may have some issues with it.

19          So my guess is it's going to be amended again in the

20   next two weeks.  If it's not, we will put in the same

21   language.  I will talk to the Alexander plaintiffs and make

22   sure that they're aware of the language that your Honor

23   approved for the class complaint.  And if it's in conjunction

24   with the further amendment to modify the complaint in a way

25   that's more sufficient for the defendants, they'll go together

```
 1    at that same time within two weeks.
 2              THE COURT:  Okay.  Thank you.
 3              MR. GRASHOFF:  As long as we can see this modified
 4    amended complaint and make sure the language is not there,
 5    we're fine with that.
 6              THE COURT:  Okay.  Good.
 7              MR. GRASHOFF:  I'm just full of objections, your
 8    Honor.
 9              THE COURT:  That's all right.  Oh, you have more.
10              MR. GRASHOFF:  I have more.  Marble.  I want to
11    clarify.  The seven MDEQ defendants have not agreed to waiver
12    service in that case.  We have been --
13              THE COURT:  They may not have agreed to waive
14    service, but will they agree to an extension of the summons?
15              MR. GRASHOFF:  We can do that.
16              THE COURT:  Okay.  That's all --
17              MR. GRASHOFF:  If that's where you're going, we're
18    fine with that.
19              THE COURT:  Yeah.
20              MR. GRASHOFF:  But we won't accept service of an
21    expired summons.
22              THE COURT:  But we can extend -- has the summons
23    expired already?
24              MR. GRASHOFF:  Yes.
25              THE COURT:  It has, okay.  Yeah, it has.
```

1           MR. STERN:  I may be helpful here, your Honor.

2           THE COURT:  Okay.  Good.

3           MR. STERN:  In the cases -- in many of the cases that

4    were filed by individual plaintiffs, the state and we worked

5    out a stipulation that was filed in each of those cases

6    regarding expired summonses.  Margaret Bettenhausen actually

7    drafted the stipulation.

8           THE COURT:  Okay.

9           MR. STERN:  And it may be applicable to this

10   particular case, but there's a way to do it without getting a

11   new summons.

12          THE COURT:  That sounds like a good approach.  And

13   I'm ready to suggest that we follow that.

14          MR. GRASHOFF:  We'd be delighted to look at whatever

15   stipulation is out there and confer with Mr. Goodman.

16          MR. GOODMAN:  Agreed, your Honor.

17          THE COURT:  Thank you.  Then that's what we'll do.

18          MR. STERN:  Judge, on some level if there's a way for

19   any of these issues to flow through liaison counsel, it may

20   just make this -- it may lessen the burden on the court to

21   have to deal with some of them.

22          THE COURT:  Okay.  All right.  Yes.

23          MR. ERICKSON:  Your Honor, Philip Erickson.  There

24   was another issue with respect to the Brown and Roger cases

25   that's noted on your agenda and that is the existence of new

1   causes of action.  And these are probably not going to be the

2   only two cases where there are new and different causes of

3   action that are set forth in the master individual complaint.

4           But we request that it be put on the agenda as an

5   example so that we can start thinking about the process of,

6   you know, how do we address new and different causes of

7   action.  And we're not asking you to decide how to do that

8   today.  But we need to be thoughtful about how to approach

9   that.

10          THE COURT:  Yeah.  I appreciate that, Mr. Erickson,

11   because we are starting to set dates and times for oral

12   argument in figuring out who needs to argue and if there are

13   new causes of action not in Walters or Sirls and so on, we'll

14   have to make sure they get addressed.

15          MR. ERICKSON:  Okay.

16          THE COURT:  Thank you.

17          MR. ERICKSON:  Thank you.

18          THE COURT:  Okay.  So the July 11th, 2018, hearing on

19   the motion to -- the many, many motions to dismiss the Carthan

20   master class action, that will begin at 10:00 AM.  It will

21   conclude that day.  We know that.  There will be an

22   opportunity to take a break for lunch if we get to that point,

23   which I would anticipate we would.

24          The Veolia defendants have filed a motion to strike

25   the proposed classes.  It's my position that that should be

1    handled at a later date and will be handled at a later date

2    when we know what all of the claims are that are going forward

3    and against which defendants.

4         At that point it makes sense to adjudicate further on

5    down the road the definition of the classes. So at this point

6    that motion will just be held in abeyance and I will certainly

7    give the Veolia defendants the opportunity to re-file it if

8    there are different -- a different set of claims and a

9    different group of defendants.

10        So the oral argument itself, what I have identified

11   -- of course I issued the Guertin opinion. I listened to the

12   Sixth Circuit's oral argument in that case. I've read some of

13   those briefs, not every one of the Sixth Circuit briefs, but

14   at least done what I can to keep up to speed on how the legal

15   arguments are developing.

16        So what is most helpful to me is to address issues

17   that were not a part of that case starting out beginning with

18   equal protection, race, and wealth and going on down this

19   list. I have the substantive due process bodily integrity

20   here in the event that there's a defendant who wishes to argue

21   about that with something that was not already discussed at

22   the Sixth Circuit or maybe refining your argument based on the

23   questions asked in that hearing.

24        So what we'll do is take each of those topics, hear

25   from the moving parties, hear a response, very brief rebuttal,

```
 1    and then move on to the next topic.

 2              The next item is kind of self explanatory, dismissal

 3    of claims and parties in cases.  The Sixth Circuit does not

 4    permit partial voluntary dismissals of fewer than all claims

 5    and parties.  Who knew that that needs to be like that?  But I

 6    live by what they tell me.  So there are alternatives, which

 7    is dismissing parties and claims by amending your complaint or

 8    stipulating to a dismissal of claims with the other side.

 9              But I ask that you consider that option because the

10    alternative is having the entire case dismissed, having it

11    re-filed.  None of us here gets the filing fee of $450, so and

12    even if we did, we would not want to collect it unnecessarily.

13    So I just ask that you consider what can be done by agreement.

14              MR. GRASHOFF:  Your Honor?

15              THE COURT:  Yes.  Mr. Grashoff.

16              MR. GRASHOFF:  Philip Grashoff, again.  So we have

17    nothing left outstanding, Chapman v Snyder, the previous page

18    was not discussed.

19              THE COURT:  Oh.

20              MR. GRASHOFF:  I believe Mr. Cuker is here.  I think

21    we've --

22              MR. CUKER:  Yeah, I'm here.  We filed --

23              THE COURT:  State your name.

24              MR. CUKER:  Mark Cuker for the Chapman plaintiffs.

25    We filed an unopposed motion to extend time.  Your Honor
```

 1    signed it on Friday.

 2              THE COURT:  Yes.

 3              MR. CUKER:  So I think it's a moot point.

 4              THE COURT:  Exactly.  I'm sorry.  I had written my

 5    note that that has been taken care of.  So thank you, Mr.

 6    Grashoff.  Mr. Klein?

 7              MR. KLEIN:  Good afternoon, your Honor.  Sheldon

 8    Klein for the city.  Going back to the question of the

 9    dismissal of claims.  I just want to be clear, make sure that

10    I understand the dismissal would be with prejudice if the

11    claim is being dropped.

12              THE COURT:  If a claim is being dropped -- well, I'd

13    have to give that some thought.  I mean it depends on if

14    they're dismissing a claim or a party.  They can inform me

15    whether -- I mean maybe they're trying to bring it in state

16    court.  I don't know.  So I would want to be informed by the

17    parties of what they think it should be.

18              MR. KLEIN:  I have a specific context in mind.

19              THE COURT:  Okay.

20              MR. KLEIN:  And if you want us to deal with it later,

21    that's fine.

22              THE COURT:  What is the context?

23              MR. KLEIN:  In the context of already briefed motions

24    to dismiss, there are -- there is at least one claim which is

25    being, quote, unquote, withdrawn expressly with words to the

1    effect of without prejudice.  They didn't use those words.

2           It strikes me as inappropriate to be hit with the

3    motion to dismiss implicitly at least seeing that, yeah,

4    there's no claim there and yet somehow trying to preserve the

5    fight for another day.

6           THE COURT:  Okay.  Well, why don't we deal with that

7    when we get to that argument.  I appreciate you flagging it.

8    Then there will be an oral argument in the Walters, Sirls, and

9    Marble case on September 26th at 10:00 AM.  I will do my best

10   to send out some sort of order regarding the order in which

11   issues will be argued in that case as well.

12          But the same thing will apply to that.  If it's been

13   thoroughly and exhaustively argued in the Carthan case, what I

14   would want you to focus your remarks on is something that was

15   not said there.  And that reminds me that Mr. Stern had

16   requested some time during the oral argument -- either you or

17   your designated lawyer -- to raise issues in the argument on

18   Carthan.  And that will be permitted.  And I would just

19   caution you again just to raise things that have not

20   previously been argued.

21          MR. STERN:  Thank you, your Honor.

22          THE COURT:  So okay, the motion to amend the Carthan

23   case will be addressed at the September 12th status

24   conference.

25          MR. STERN:  Your Honor?

```
 1              THE COURT:  Yeah.
 2              MR. STERN:  I think you just said -- I'm sorry to
 3      monopolize --
 4              THE COURT:  Oh, no.  I think you're right.  I had the
 5      wrong --
 6              MR. STERN:  I think you said the Court will hold the
 7      oral argument on the motions in Walters, Sirls, and Marble.
 8      But I think your actual agenda says something different.
 9              THE COURT:  And the agenda is right and I was wrong.
10      Marble will be October 30th.  Okay.  And actually, Mr.
11      Goodman, now that I'm thinking, if you need the six weeks
12      because we've got until October 30th.
13              MR. GOODMAN:  I will donate my two weeks to the
14      court.
15              THE COURT:  Thank you.  I appreciate it.  Okay.  So
16      the next issue is the coordination of discovery between the
17      state and federal court.  And in chambers with Judge Yuille's
18      capable presence, we discussed with the lawyers there the fact
19      that if the these cases are to proceed in an orderly,
20      efficient, and effective manner, there absolutely should not
21      be duplicative discovery in the state cases and the federal
22      cases.  It must be coordinated.
23              That said, no one -- no defendant or plaintiff should
24      be held hostage to a case that's moving perhaps more slowly in
25      federal court than it could in state court.  So with those
```

1    competing interests in mind, I have identified a group of

2    representative lawyers to submit in approximately two weeks a

3    proposal by how to coordinate the state and federal

4    litigation.

5            They will -- that would be a proposed order for me to

6    enter in these cases.  And it would include issues such as

7    attendance at depositions in state court by lawyers who are

8    not currently appearing in state court but are in this court.

9    And all of you can attend.  The issue is how you're going to

10   get notice of it in a timely manner.

11           Depositions are matters of public record unless

12   there's a protective order entered by a court making it a

13   secret experience and that just -- I don't expect that that

14   will happen in this case.  It certainly wouldn't be an order I

15   would enter.

16           So it's not whether you can attend, but you can't

17   attend if you don't know.  And depositions are generally not

18   identified on the docket.  And so there would be no way to

19   know unless we have an order requiring that there be -- that

20   all of that be circulated.  And that discovery in the state

21   cases be shared with plaintiffs' counsel and defense counsel

22   in the federal cases and vice versa.

23           So those will be the issues that will be addressed.

24   And we have at least identified at this point Mr. McAlpine

25   who's present as class counsel in front of Judge Yuille.  Mr.

1    Grunert, who is here and in state court.  Mr. Stern, Mr.

2    Mason, Mr. Kim for the City of Flint, Ms. Smith for McLaren.

3    As those who will at least get this process of drafting taken

4    care of.  That proposal will be circulated among counsel and

5    then submitted to the Court.

6                MR. STERN:  And Ms. Bettenhausen.

7                THE COURT:  And Ms. Bettenhausen.  I just had you

8    there in my mind but didn't write it down for the State of

9    Michigan.

10                MR. KIM:  And I believe we were talking about July

11    9th for the --

12                THE COURT:  July 9th.  That's right.  We added a week

13    because of the holiday.

14                MR. LEOPOLD:  Your Honor, Ted Leopold.  Just to be

15    clear, that will be coordinated and filtered through your

16    Honor so that co-lead will have the opportunity to consult

17    with our liaison in the state court to make sure everything is

18    coordinated.

19                THE COURT:  Yes.  Right.

20                MR. LEOPOLD:  Thank you.

21                MR. SHKOLNIK:  Your Honor, with respect --

22                THE COURT:  Shkolnik.

23                MR. SHKOLNIK:  Sorry.  Hunter Shkolnik.  And with

24    respect to any comments that lawyers have on the individual,

25    they should be -- I think in chambers the Court suggested they

 1    should be funneled through liaison counsel.

 2              THE COURT:  Yes.

 3              MR. SHKOLNIK:  So that we can do the same type of

 4    coordination.

 5              THE COURT:  Exactly.

 6              MR. SHKOLNIK:  Thank you, your Honor.

 7              MR. GRASHOFF:  Your Honor, Phil Grashoff, again.  I

 8    want to raise the same objection to the Carthan amendment

 9    motion to amend that contains the same objectionable language

10    concerning the criminality.

11              THE COURT:  Oh, does it?

12              MR. GRASHOFF:  Yes, it does.  And we need to get that

13    stricken out of that amended complaint.  And I raise it for

14    consideration of the group that's going to be dealing with

15    that, number one.

16              THE COURT:  Is that -- do you think this is a cut and

17    paste problem?

18              MR. STERN:  Yes.

19              MR. GRASHOFF:  I think it is, yes.

20              THE COURT:  I think it is.

21              MR. GRASHOFF:  I think it is.  I think it just

22    automatically got in where it shouldn't have been.  You've

23    already ruled that it's excluded, so.

24              THE COURT:  Yes.  Right.  And I don't think anybody's

25    trying to offend anyone or harm anyone's rights.

```
 1              MR. GRASHOFF:  I'm not suggesting that.  I'm just
 2    suggesting that it gets out of it.  That's all.
 3              THE COURT:  Yeah.  It will come out of it.
 4              MR. GRASHOFF:  I want to draw the Court's attention
 5    to yet another series of cases or one case in the Court of
 6    Claims, the Nappier decision that came down recently and it
 7    stayed all discovery.
 8              THE COURT:  In the Court of Claims in Judge Murray,
 9    yeah.
10              MR. GRASHOFF:  In the Cour of Claims, Judge Murray.
11    And it should be taken into consideration when this group
12    meets with respect to the proposal before the Court.
13              THE COURT:  Okay.  If his case is stayed, at least --
14    his case isn't going to go launching into discovery --
15              MR. GRASHOFF:  No.
16              THE COURT:  -- that would be duplicative.
17              MR. GRASHOFF:  No.
18              THE COURT:  But if there are lawyers present on those
19    cases who would ultimately, if it becomes un-stayed, then need
20    to catch up.  They should be notified of this process and be
21    worked into this proposal.
22              MR. GRASHOFF:  If that's the case, then maybe instead
23    of having to play catch up as we have had to do so many times,
24    maybe someone from our group of seven MDEQ employees should be
25    part of that group making the proposals so we know what's
```

1    going on.

2           THE COURT:  Okay.  Well, you will.  You will get the

3    proposal before it's submitted to the Court.

4           MR. GRASHOFF:  Fine.

5           THE COURT:  Okay.  Thank you.  Okay.  The next issue

6    was there are currently four documents only nonparty subpoenas

7    that have been authorized by this Court as an early discovery

8    tool to preserve documents and to begin that process.

9           And I think it is appropriate to expand that.  If the

10   nonparty subpoenas can be agreed upon, then I do not need to

11   authorize that or enter an order that I think could be

12   potentially misleading to a defendant that appears to order

13   them to produce these and might indicate that they don't have

14   their usual defenses or procedure, so.

15          Was somebody trying to speak?  Okay.

16          So those may go forward if they're agreed upon.  If

17   they're not agreed upon, you'll submit -- you'll contact

18   chambers.  Shawna, my case manager, will set up a telephonic

19   conference call on the record.  If we can't resolve it, then

20   you'll submit opposing briefs and I'll sort it out.

21          So the next one is the pending preliminary discovery

22   issues.  And this somewhat goes along with the state and

23   federal court coordination.  Is there -- this was suggested.

24   Mr. Leopold, was this suggested by the class plaintiffs?  It's

25   about the sharing of information gathered from FOIA requests

1    and other issues the parties may identify.

2              MR. LEOPOLD:  Yes, your Honor.  Ted Leopold.  Your

3    Honor, I believe on all those issues the parties have worked

4    quite diligently to formulate agreements.  Unless I'm

5    mistaken, I don't believe there's any issue about

6    interchanging or exchanging FOIA and nonparty documentation.

7              I think there really becomes just one issue, if I'm

8    not mistaken.  And that is the issue related to how broad, if

9    you will, the third party discovery should be as relates to

10   the plaintiffs.

11             It's my understanding in the multiple briefings and

12   reply briefings to this particular issue, the defendants have

13   wanted to have third party releases, if you will, by class

14   representatives for medical records, educational records, a

15   whole bunch of other issues.

16             We have responded in kind saying that if you're

17   really getting more into merits type of discovery and if

18   that's the case, we, too, would like to have the opportunity

19   to get written discovery from you, the defendants, on

20   interrogatories and things of that sort.

21             The Court should be reminded as the Court I'm sure

22   knows, it's only the state defendants that have really

23   produced documentation, large amounts.  But there's multiple

24   other parties in the case.  All for good reasons, those

25   defendants have decided on a variety of basis not to come

```
 1    forward and per se voluntarily produce information or
 2    documents.
 3            Nothing wrong with that.  But we would like to begin
 4    to do everything we can to be ready for depositions when it's
 5    an appropriate time to do that.  And during the summer months
 6    in motions to dismiss rulings, we understand there are those
 7    issues and there are going to be issues that perhaps remain
 8    in, that perhaps don't remain in.  But there are core issues
 9    also that we would like to begin to filter down on as well.
10            THE COURT:  I understand that.  The problem is that
11    we don't have the motions to dismiss adjudicated.  So if we
12    start with parties that we know have a litigation hold in this
13    case and cannot legally destroy documents, that's one thing.
14            What I've authorized so far is third party subpoenas.
15    And I think the third party documents you're talking about are
16    your clients, doctors, teachers --
17            MR. LEOPOLD:  It's my understanding that as part of
18    the third party discovery they will need releases from --
19            THE COURT:  Right.
20            MR. LEOPOLD:  -- whether it's HIPPA or other type of
21    releases.  And our responses really gets into more of merits
22    related issues.  I can certainly see why they want to get that
23    information, but that is sort of going a little bit above and
24    beyond where we're at right now.
25            THE COURT:  But the problem is that when you're
```

 1    saying merits, it could go to causation.  And that touches

 2    very close to merits.  And so in not just damages.  So I

 3    haven't made any ruling that only liability discovery is

 4    appropriate and not damages.  So or only merits.  I'm not sure

 5    if that's broader than liability, so.

 6            MR. LEOPOLD:  Your Honor, I would say in all candor,

 7    it is certainly not a burden issue per se.  It's more of one

 8    of an equity issue in terms of where we are now.  We can

 9    certainly do this.  And we understand where the Court is at at

10    this point on this particular issue.

11            It is certainly for them to get the information from

12    us that is really all that they're getting from our

13    perspective as a third party.  We on a third party have much

14    more type of information again from relationships that the

15    defendants may have with third party vendors and things of

16    that sort.

17            THE COURT:  Well, let me hear -- who is -- is it Mr.

18    Shkolnik?

19            MR. SHKOLNIK:  Well, your Honor, could I also be

20    heard?

21            THE COURT:  Yeah.

22            MR. SHKOLNIK:  I think this is probably -- and if I

23    could --

24            THE COURT:  Sure.

25            MR. SHKOLNIK:  The issue regarding medical

1    authorizations and school authorizations I think are really an

2    issue that's going to hurt the individual plaintiffs more than

3    the small handful of class plaintiffs.  And that's why I

4    wanted to address it with the Court.

5            From our perspective, Mr. Stern and myself, we

6    believe that the vast majority of the discovery of our

7    plaintiffs, the -- whether it's causation, whether it's our

8    proofs from the plaintiffs will all derive from medical

9    authorizations, hospital records.

10           So in essence, by granting this request that -- in

11   the guise of third party discovery, the defendants here will

12   be in essence saying give us a list of every doctor, every

13   school, every person, every friend that may have documents,

14   and give us an authorization.  Which is exactly what we've

15   been putting on hold with respect to the defendant until after

16   the motions.

17           THE COURT:  And has any defendant made a specific

18   request for that?

19           MR. SHKOLNIK:  In the conversations --

20           THE COURT:  I think it has been raised in general.

21           MR. STERN:  It's important to know, your Honor --

22   Corey Stern -- that actually in state court -- again this is

23   one of those issues with state and federal court.  For

24   instance, we've submitted three or four hundred plaintiff fact

25   sheets that include authorizations pursuant to Judge Yuille's

1    CMO.

2             And so on some level what we're arguing against

3    happening has been happening in state court.  And so I only

4    raise that -- it doesn't make it right here or it doesn't mean

5    that that should happen here.

6             It's just to, one, show that there are some things

7    that are slightly different in the various venues based on

8    where the litigation is.  And two, that needs to be taken into

9    consideration when determinations are made here as to what's

10   appropriate for the litigants in this court to provide to the

11   defendants.

12            MR. SHKOLNIK:  Your Honor, along those lines.

13            THE COURT:  Yes.  Thank you.

14            MR. SHKOLNIK:  We would be happy to sit down with

15   defense counsel and come up with a preliminary plaintiffs'

16   fact sheet and defendants' fact sheet for some basic

17   information that would help us as well.

18            THE COURT:  I think we have a preliminary plaintiffs'

19   fact sheet already in theory that was agreed upon.

20            MR. SHKOLNIK:  Exactly, your Honor.  And now the

21   defendants want to go the next step and say give us

22   authorizations for everybody, which is the meat and potatoes

23   of our discovery.

24            THE COURT:  No , I understand that.  But it sounds

25   like there's 200 of them that could be used already.  But what

1    I haven't actually heard is a demand or a request or an

2    argument from the defendants.  I've heard you and Mr. Stern

3    say and Mr. Leopold saying no.  But nobody said yes.

4         MR. SHKOLNIK:  It was in our meet -- I'll leave it to

5    the defendants.  But in the meet and confers, they

6    specifically said will you be giving us authorizations.

7         THE COURT:  I see.

8         MR. SHKOLNIK:  So I think that's what prompted this

9    discussion.  Thank you.

10        MR. STERN:  And your Honor, Corey Stern, again.  One

11   way that this might easily be dealt with by the court is since

12   that information is contained in the proposed fact sheets that

13   have been agreed to, your Honor has not yet green lit the idea

14   of doing the fact sheets.

15        THE COURT:  No.

16        MR. STERN:  And so it may be a moot issue until such

17   time as your Honor actually says start producing fact sheets

18   at a certain amount per month.  Because until that happens, I

19   don't see any other road where by the effectuation of that

20   request actually takes place.

21        THE COURT:  Okay.  Mr. Grunert.

22        MR. GRUNERT:  Your Honor, first of all, this subject

23   seems like something that's probably going to be the subject

24   of the coordination discussions that you have already told us

25   that we should have.

1           THE COURT:  It will be.

2           MR. GRUNERT:  Because as Mr. Stern points out, there

3    have been authorizations provided by many of the plaintiffs in

4    the state court cases and not in this case.  So debating

5    whether authorizations generally should be provided is

6    probably premature.

7           But I want to identify a fundamental fact that the

8    plaintiffs' attorneys have missed.  Under the order that you

9    issued related to nonparty documents only subpoenas, each

10   nonparty can receive only one subpoena.

11          So there are not going to be subpoenas issued to the

12   doctors for each individual plaintiff because that would mean

13   the doctor would get subpoenaed over and over again for each

14   plaintiff.

15          THE COURT:  I'm not sure about that.  I don't think

16   one subpoena could go to a doctor for 85 pediatric patients.

17          MR. GRUNERT:  Well, you have identified the problem

18   we are going to have to address in the not too distant future.

19          THE COURT:  Okay.

20          MR. GRUNERT:  But it has not been addressed now.  How

21   can we deal with medical discovery?

22          THE COURT:  All right.

23          MR. GRUNERT:  And it will not only concern documents,

24   it will also ultimately concern how do we take depositions of

25   doctors who have treated a thousand Flint residents.

1          THE COURT:  Yeah.

2          MR. GRUNERT:  The subpoenas that I'm concerned about

3    for which we're likely to have a need for authorizations are

4    subpoenas to, for example, like the EPA that may have

5    information about individual Flint residents that they

6    consider to be private and that they won't release without an

7    authorization.

8          Or more pertinently to the Genesee County Department

9    of Health, which probably has information about individual

10   plaintiffs that they will require an authorization for.  So

11   we're not talking about subpoenas to a bunch of treating

12   physicians.  We're talking about those kind of subpoenas.

13         And you know my clients, the VNA defendants, you

14   know, we've turned over more than 12,000 pages worth of

15   internal documents in response to Mr. Leopold's discovery.

16   And LAN has turned over even more.  So the notion that it

17   somehow is unfair for us to get substantive information about

18   plaintiffs' claims, that doesn't wash.

19         THE COURT:  Okay.  No one's saying that.  I mean,

20   they're saying it.  I'm not saying it.  So let's -- what I'd

21   like is to -- what I'll do is following this hearing I'll

22   determine if any further specificity is needed on what you're

23   requesting at this time.  If there is, I'll put it in the

24   order and permit a response.

25         MR. GRUNERT:  Thank you.

```
 1          THE COURT:  But I can tell you generally that it
 2   seems to me that discovery will need to in some way -- once it
 3   officially begins when we have figured out what the Sixth
 4   Circuit is doing and what's in these cases and what isn't in
 5   these cases, and we have a Rule 16 conference and a 26(f)
 6   report, we will then start discovery.
 7          And it will need to be phased in some form to be
 8   manageable for all of you, for the targets of your discovery,
 9   and for the process as a whole.  And what I'm -- it makes
10   sense to me that liability and causation need to be sorted out
11   before damages.  But you may have a team that's working on
12   damages.  So it's not my business to tell you how to do your
13   job.
14          But at this point when we don't yet have the
15   litigation defined, it seems to me that the issues of
16   liability would be the most urgent issues to be addressed.
17          MR. GRUNERT:  But in this case, of course medical
18   records are among the most important liability evidence there
19   is.
20          THE COURT:  Yes.
21          MR. GRUNERT:  So we're not talking about how do you
22   value a particular injury.  That is not of great interest at
23   this point.  But we have issues about who have -- who has
24   illnesses that are of the type that can be caused by the kinds
25   of contaminants that are alleged.
```

1              THE COURT:  And I would put that --

2              MR. GRUNERT:  And who had those illnesses before

3      April 25, 2014.

4              THE COURT:  Yeah.  I would put that closer to

5      causation and damages than I would to who's responsible in

6      this case and is -- are those decisions what caused these

7      damages.  But we can still get that resolved.  And I will set

8      a schedule for determining exactly what it is that -- what

9      you're seeking, how much, when, and what it is.

10             MR. GRUNERT:  Thank you.

11             THE COURT:  Mr. Klein.

12             MR. KLEIN:  Just briefly, your Honor.  In terms of

13     the releases and/or the fact sheets, there's really two pieces

14     here.  One is to get the releases, which lays the groundwork

15     for actual discovery.  The other is actual discovery.

16             And when Mr. Stern and I think with good reason talks

17     about, well, we'll have to come in tranches of so many a

18     month.  If -- we'll speed things up if we get the groundwork

19     laid now so that we're not then waiting six months.  And

20     again, I'm not accusing anyone of delay.

21             THE COURT:  No.  It hasn't been ordered yet.

22             MR. KLEIN:  But there's a lot that has to happen

23     before we can start taking -- where we can start even issuing

24     subpoenas to the various institutions, physicians, etcetera,

25     that have the information.  So I would just ask the Court to

1    consider that.

2            THE COURT:  Okay.  Thank you.

3            MR. STERN:  I'm so sorry, Judge.  I know it's become

4    like the Corey Stern show today, and normally I'm very quiet.

5    But Corey Stern with regard to the issue that just was raised.

6    Some of this is putting the cart a bit ahead of the horse

7    insofar as this.

8            As an example, if there's a kid in the Bronx who

9    lives in a 500 unit residence and the kid has lead poisoning,

10   if I make a request to the Department of Health for records

11   associated with the entire building because I'm interested to

12   know whether there was lead in the whole building and how it

13   may have affected the child, a way that often times they're

14   able to remedy the issues that are being described is by

15   providing redacted documents that take certain information out

16   but still allow for the important information to be served

17   such that it may not actually require getting releases from

18   every parent in the building.

19           And so I think it may make some sense practically to

20   see how these nonparties respond to the subpoenas that were

21   actually served and then maybe make a really informed decision

22   at that point in time about what's required because they may

23   not make any of these issues into issues.  And until they do,

24   we may be creating a problem that doesn't yet exist.

25           THE COURT:  Okay.  Thank you.  Mr. Leopold.

1          MR. LEOPOLD:  Your Honor, just one issue.  And I

2     don't mean to open a can of worms on this.  But I'm wondering

3     in light of the Court's earlier ruling both in chambers and

4     here in open court about the coordination between state and

5     federal court and the CMO, does the Court anticipate us -- and

6     I think it would be helpful.

7          But does the Court anticipate us sort of moving it

8     out into the future post rulings on the motion to dismiss and

9     not drilling down on specific liability issues per se but what

10    that discovery schedule is going to look at?  Because I'm

11    assuming the Court is going to want us to address sort of

12    deposition schedules and things of that sort in this joint

13    scheduling --

14         THE COURT:  I think that the current joint proposal

15    that I'm looking at is not that detailed in terms of so and

16    so's deposition whatsoever.

17         MR. LEOPOLD:  Right.

18         THE COURT:  Because we're not yet there.  But it's a

19    framework for cooperation and for sharing information.  So I

20    think what I'll do is take into consideration what's been said

21    here, a request for -- I'll set forth in my order that I

22    anticipate indicating that I need to know with some more

23    specificity what the defendants are looking for and what

24    timeframe they think they need it in to handle their defense.

25         I'll also hear from the plaintiffs as to any details

1    on that.  But I'm educated on the issues and I think I have

2    enough to make a decision.

3              MR. LEOPOLD:  Thank you.

4              THE COURT:  I want to move to -- this issue of a

5    census order.  And that was raised in a couple of submissions

6    for what should be on this agenda.  And I think it would be

7    very helpful to have a census of all pending cases.

8              This is a huge undertaking as I think about it.  And

9    you know better than I whether it is or not.  But my concern

10   is that there be a list that, of course, will evolve that

11   includes identifying clients.  And this is really primarily

12   for the individual cases.  But at least to the extent the

13   interim class counsel have responses to this, it would apply

14   to them as well.

15             Discussing exposure -- well, the name of the

16   individual, who their lawyer is, the nature of the injury,

17   their date of birth, whether the exposure was through where

18   they lived or where they worked or where they traveled.

19   Whether they have a blood level test or not.  Property damages

20   and what that might be and whether it's a business or

21   residential and the nature of their pipes.

22             So those are just -- I'm just brainstorming from a

23   list.  There could be fewer items needed.  But I think that

24   the sooner we start to figure out what the cases are and where

25   they're pending both in state and federal court, the better

June 18, 2018

```
 1    off we'll be as this all -- as these cases develop.
 2            It is my view that a special master would be somebody
 3    who would maintain that census and could have some quality
 4    control.  There will undoubtedly be as people submit -- submit
 5    their reports, people who are represented by multiple lawyers
 6    through no fault of anyone.  They just signed up as often as
 7    they could.  And it's understandable.  So we'll be able to
 8    figure out who -- who we have in these cases as a result of
 9    such a thing.
10            I think it does -- it will require quite a bit of
11    work.  So I will hear -- it's primarily the burden of the
12    plaintiffs if -- well, starting with Mr. Stern or Mr. Shkolnik
13    if you wish to speak in response to that.
14            MR. SHKOLNIK:  Your Honor, we are fully supportive of
15    the census order along the lines of as you discussed.  We had
16    initially filed for a motion for such an order.  We then
17    withdrew it.  We wanted to have a meet and confer with all
18    counsel.  We had that.  We thought we could work out a
19    cooperative where people do it voluntarily.
20            I know there's concerns.  But now with a special
21    master coming in place, I think this will facilitate that and
22    allow us to meet those goals.
23            What we have seen through the process over the last
24    few months with the facilitators is that this would help us.
25    So we support that.  And I think we can have some more meet
```

1   and confers, come up with the categories.  Maybe the

2   facilitators would have some input and the special master and

3   maybe we could submit a stipulated order to that effect

4   between class counsel and interim counsel.

5           THE COURT:  Okay.  And I understand that you're in a

6   very different position from interim class counsel who don't

7   need to sign up scores of people.

8           MR. SHKOLNIK:  True.

9           THE COURT:  Because they're seeking to have a class

10  certified.  And so they may not yet have in their files the

11  names of who would be in that -- understandably they wouldn't

12  have it.

13          MR. SHKOLNIK:  I think we're focusing more on if they

14  have individuals that they represent or are named just like

15  the individual -- the rest of the individual plaintiffs.

16          THE COURT:  Right.

17          MR. SHKOLNIK:  We don't want to do it in a way that

18  is not -- that they don't participate in the process.

19          THE COURT:  Okay.

20          MR. SHKOLNIK:  It may only be a handful.  It may be

21  thousands.  I don't know.  But we think a uniformed process

22  for everybody so that the facilitators and special master has

23  those names, the law firms, the claims.  And it allows

24  everyone to look at what we're looking at here.  And we know

25  it's a huge scope.  It will help get our arms around it.

```
 1              THE COURT:  Okay.

 2              MR. SHKOLNIK:  Thank you.

 3              THE COURT:  Mr. Leopold.

 4              MR. LEOPOLD:  First, most importantly I don't think

 5     anything as the Court has already indicated should occur on

 6     this issue into a special master is appointed because I think

 7     this is fraught with land mines in many, many different areas.

 8              THE COURT:  I do, too.

 9              MR. LEOPOLD:  And in light of the historical

10     perspectives, there has to be a very well defined criteria

11     that is set forth even if we were going to go down that road

12     that special master could help with, number one.

13              Number two, a lot of the information from what I

14     understand the individual plaintiffs or liaison counsel want

15     to ascertain, I also understand they have several thousands of

16     clients.

17              Perhaps first before they come to the potential

18     class, they get all that information from their own counsel,

19     let us -- if they want to share it or let us know what the

20     criteria is that they have used to start with that as a

21     benchmark so that it can be shared with everyone, I think that

22     would be a helpful idea as well.

23              THE COURT:  But that's what would be in the census

24     order.

25              MR. LEOPOLD:  Correct.  They're going to -- I don't
```

1    know if they've done that with their clients, number one.   And

2    number two, what that criteria is that they have used.

3            Number three, is there is a lot of historical

4    scientific data which we have used for the mediation process

5    that has been provided to the mediators that has been helpful

6    information.   That also should be a part of this criteria if

7    the special master believes or the Court believes that to be

8    an appropriate avenue to take.   I just put all that --

9            THE COURT:   And is that data, data that says -- I

10   don't know what data you're talking about.   So I'm going to

11   guess it says there are 10,000 people age zero to five.   Or

12   what are you talking about?

13           MR. LEOPOLD:   There is that type of census data.

14   There's what's referred to as red zone or hot areas.

15           THE COURT:   Oh.

16           MR. LEOPOLD:   Or perhaps injury areas or lead content

17   areas.   Variety of different type of scientific information

18   that has already been captured.   And I say that all from the

19   perspective of that before we go down that road because it can

20   cause a lot of issues that we just go very -- tread very

21   carefully.

22           THE COURT:   Okay.   Thank you.

23           MR. PITT:   Your Honor, Michael Pitt for class

24   plaintiffs.   Your Honor, as part of the Mays team, and the

25   Court is I think familiar with the way we've approached the

1    class action.  And we've had contact with perhaps 9,000 class

2    members who have shared some information --

3            THE COURT:  Putative class members.

4            MR. PITT:  Putative class members.  Putative class

5    members.  And we have been very aggressive in trying to get

6    information about the class members' experiences over the last

7    three years.  And we have a database that was -- has been and

8    is still being used to catalog, you know, the types of

9    injuries and where the injuries are occurring, etcetera.

10           We think it would be inappropriate to include class

11   members --

12           THE COURT:  Right.

13           MR. PITT:  -- as part of the census.

14           THE COURT:  It's the idea that if you listed all your

15   class members and all of the details and the addresses, Stern

16   and Shkolnik can go and sign them up for their individual

17   cases.  I mean, I'm honestly just asking.  Because I don't

18   want to -- I'm not trying to mess with people.  That's not my

19   job.  You or anyone else.

20           And so what I -- if what is appropriate for this is

21   to identify that you've got 9,000 people in certain areas of

22   town, maybe that's satisfactory.  But I think what we're

23   trying to -- what I'm trying to figure out is what is the

24   range and the scope and the quantity of what's going on here

25   of -- and how can we avoid duplicate work as it goes on.

```
 1              If you say that Levy is your client and Stern says
 2   Levy is his client, we've got to know who it is.  And we won't
 3   know if we don't get some of this down.  But go ahead if you
 4   want to respond.
 5              MR. PITT:  No.  I just think that there should be
 6   some caution applied to the --
 7              THE COURT:  Okay.
 8              MR. PITT:  -- revealing of class member identities.
 9   One of the reasons they want to be class members and not have
10   individual cases is they want to be silent until the
11   appropriate time.  They may not want to self identify as an
12   injured party.
13              There are a number of reasons why people don't sign
14   up and have an individual case filed for them and prefer to be
15   part of the class where they can remain anonymous until the
16   appropriate time.  So you know, mindful of all of these
17   factors, the database that we have constructed is helpful
18   information about --
19              THE COURT:  Okay.
20              MR. PITT:  -- the injury to the class.  And there
21   should be a separate category made in the census order for
22   information involving class members.
23              THE COURT:  Okay.  Well, here's what we'll do is I'm
24   not prepared to enter an order related to the census order at
25   this point.  I identified it as an issue to -- for discussion
```

1    and to hear from counsel about.  And I think it is an

2    appropriate issue for a special master to assist in.  And it

3    sounds like there should be some process for -- well, there

4    absolutely will be a process for determining what's fair to be

5    required on the census.

6          And I'll make that decision, not the special master,

7    because I want to -- at the point that I turn something over

8    to a special master, I want to be confident that it's what I'm

9    looking for.  So I will drive the process but then turn it

10   over to someone who can manage it.

11         MR. SHKOLNIK:  Your Honor, in order to bring this

12   issue to a head and I think help the Court, would it be

13   appropriate for us to file our motion for the census?  It will

14   lay out the parameters of what we're suggesting, the myriad of

15   cases that have utilized this process, allow you to consider

16   it, let there be opposition from whoever.

17         We'll also include in that that the information is

18   not given to Mr. Stern or myself but to a special master so

19   that it meets -- I think what we're all -- what we're talking

20   about here.  But if we filed the motion, it tees it up.  If

21   there's objections, there's objections.  And then the Court

22   can have something to decide.

23         THE COURT:  I think that would be helpful.

24         MR. SHKOLNIK:  Thank you.

25         THE COURT:  Any objection, Mr. Leopold?

```
 1          MR. LEOPOLD:  No objection.  I'm just wondering

 2   whether we want to wait until a special master is engaged so

 3   that the special master can have perhaps some input of

 4   additional information that he or she may want.

 5          THE COURT:  The special master will be engaged before

 6   I decide the motion.  So if it's filed and various people

 7   weigh in -- do the defendants have any desire to be part of

 8   this?  No.  Okay.

 9          But I think Mr. Grunert might want to file a brief

10   for some reason.  He files a lot of briefs.  So I'm not going

11   to hold you to that.  Your briefs are helpful, so I'm not

12   being critical.

13          So we'll set out a briefing schedule and a decision

14   won't be made until there is a special master.  But to the

15   extent, Mr. Shkolnik, you're giving me cases that are

16   instructive, if they can be cases that have both individual

17   cases and class cases --

18          MR. SHKOLNIK:  Yes, your Honor.

19          THE COURT:  -- that would be most helpful.  Okay.

20          So the only other issue that I had on here is that

21   the next status conference will be September 12th at 2:00 PM.

22   There are dates by which proposed items for discussion should

23   be submitted which is August 29th at 2018.

24          I'll put it all together and issue an order on

25   September 5th that sets forth the items.  Okay.  Seeing
```

June 18, 2018

1   nothing else, we will close this and adjourn for the day.

2                   (Proceedings Concluded)

3               -           -           -

4

5              <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

6        I, Jeseca C. Eddington, Federal Official Court

7   Reporter, do hereby certify the foregoing 70 pages are a true

8   and correct transcript of the above entitled proceedings.

9   <u>/s/ JESECA C. EDDINGTON</u>                    <u>6/22/2018</u>
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR         Date
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25