## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases

Case No: 5:16-10444
Judith E. Levy
United Stated District Judge

_____/

## MASTER NOTICE OF NONPARTIES AT FAULT OF
## DEFENDANTS LOCKWOOD, ANDREWS AND NEWNAM, P.C. AND
## LOCKWOOD, ANDREWS AND NEWNAM, INC.

NOW COME Defendants Lockwood, Andrews and Newnam, P.C. and

Lockwood, Andrews and Newnam, Inc. (hereinafter sometimes referred to as

the "LAN Defendants"), by and through their undersigned attorneys, and

hereby file their notice of nonparties at fault in this matter pursuant to

MCR 2.112(K).  It is appropriate to file a notice of nonparties at fault in this

Court where Plaintiffs have pled a variety of state law tort claims.  *See e.g.,*

*Dressler v. Cradle of Hope Adoption Center, Inc.,* 421 F.Supp.2d 1024 (E.D. Mich.

2006).

The LAN Defendants have previously filed their notice of nonparties at

fault in the cases of *Walters, et al v. City of Flint, et al.,* Case No. 17-cv-10164,

and *Sirls, et al v. State of Michigan, et al.,* Case No. 17-cv-10342. Pursuant to the

Amended Order Establishing Procedures and Timelines Regarding Master and

Short-Form Complaints entered by the Court on January 23, 2018 [Doc # 347],

the *Walters* and *Sirls* cases were designated and the "operative complaints against which all defendants shall have the opportunity to file motions to dismiss." In those cases, the LAN Defendants have filed motions to dismiss, and a hearing is set September 26, 2018 regarding these motions. In addition, exercising an abundance of caution, the LAN Defendants filed notices of nonparties at fault in the *Walters* and *Sirls* cases on or about August 30, 2018.

Now, exercising a further abundance of caution, the LAN Defendants file this master notice of nonparties at fault to apply to all short-form complaints filed by the Plaintiffs in individual (non-class actions) in *In re Flint Water Cases*, 16-cv-10444. In doing so, the LAN Defendants reserve the right to file additional notices of nonparties at fault in each individual case if necessary for any reason at a future date.

In their short-form complaints in the *Walters* and *Sirls* cases, Plaintiffs name the following defendants:

1)	The State of Michigan Governor Richard Snyder;

2)	Numerous current or former employees of the Michigan Department of Environmental Quality (MDEQ) including Daniel Wyant, Liane Shekter-Smith, Stephen Busch, Patrick Cook, Michael Prysby, Adam Rosenthal and Bradley Wurfel;

3)      Four current or former employees of the Michigan Department of
Health and Human Services, Nick Lyon, Nancy Peeler, Dr. Eden Wells and
Robert Scott;

4)      Former Treasurer for the State Department of Treasury, Andy
Dillon;

5)      The City of Flint, three former Emergency Managers for the City of
Flint, Edward Kurtz, Darnell Earley and Gerald Ambrose, former Mayor Dayne
Walling, three current or former employees, Howard Croft, Daugherty
Johnson and Michael Glasgow, and the Receivership Transition Advisory
Board;

6)      The Genesee County Drain Commissioner, Jeff Wright; and

7)      Certain engineering or consulting companies including Lockwood,
Andrews and Newnam, Inc., Lockwood, Andrews and Newnam, P.C., Leo A.
Daly Company, Veolia North America, LLC, Veolia North America, Inc., Veolia
Water North America Operating Services, LLC, and Rowe Professional Services
Company.

Now, the LAN Defendants file their notice of nonparties at fault in order
to preserve their right to argue to the jury that the listed entities or persons
are wholly or partially at fault in causing the harm and/or damages alleged by
Plaintiffs.

3

1. **The Michigan Department of Environmental Quality and all current and former employees of the MDEQ, including, but not limited to, Richard Benzie.**

During 2015, Governor Snyder commissioned a group he named the Flint Water Advisory Task Force ("Task Force") to investigate the issues surrounding what has become known as the Flint Water Crisis.  On or about March 21, 2016, the Flint Water Advisory Task Force issued its final report.[1] This final report makes numerous findings regarding the role of the MDEQ in causing the Flint Water Crisis, including finding F-1, "MDEQ bears primary responsibility for the water contamination in Flint."

In addition, in March of 2016, the State of Michigan Auditor General prepared a Performance Audit Report of the Community and Noncommunity Water Supplies function within the Office of Drinking Water and Municipal Assistance  "ODWMA" at MDEQ.  The Auditor General's Audit makes several findings critical of the performance of ODWMA including that, "DEQ did not require the City of Flint Water Treatment Plant to implement optimal corrosion control treatment when switching to the Flint River water source."

---

[1] Although this report incorrectly states that LAN did not cooperate with the Task Force, LAN did file responses to the questions asked of it by the Task Force prior to the publication of the Report, as has subsequently been acknowledged by members of the Task Force.

Mr. Benzie served as the supervisor to Defendant Busch during the relevant time period.  By June of 2014, he was made aware by Mr. Busch that some Flint residents were experiencing significant problems with their drinking water.  In addition, in February of 2015, Mr. Benzie was a party to the email discussions between the Environmental Protection Agency ("EPA") and the MDEQ regarding high lead levels found in some Flint tap water.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement the rationale for why it should be allowed to assert that the MDEQ or any of its current or former employees are wholly or partially at fault to the jury in this case.

2. **Michigan Department of Treasury, and all current and former employees of the Michigan Department of Treasury.**

Pursuant to statute, decisions of the Emergency Managers requiring the expenditure of $50,000 for more by the City of Flint had to be approved by the Treasurer of the State of Michigan.  Upon information and belief, in late 2012 and early 2013, the Department of Treasury participated in numerous meetings regarding the possible change over from the Detroit Water and Sewerage Department water source from Lake Huron to the Karegnondi Water Authority water source and the use of the Flint River as a temporary

5

water source.  In late 2012, the Treasury Department retained the engineering firm of Tucker, Young, Jackson and Tull to prepare a report regarding options for the Flint Water Supply.  In its report, TYJ&T recommended that the Flint Water Supply continue using the DWSD water source.  In a March 17, 2013 email to the Governor and staff, the Treasurer stated, "The economics show that but for the excess cost of DWSD water during the three year construction period of the [KWA] pipeline, the City will benefit from lower water costs in the long term by using the KWA water and treating the water in Flint at their own, existing, water treatment plant."  Thus, the Treasury Department appears to have been advocating the use of Flint River water during the change over to the KWA for economic reasons as early as March of 2013. Ultimately, the Treasurer determined to approve a change in water source even though the change was contrary to the recommendations of TYJ&T.

In addition, Treasury worked with others to secure the Administrative Consent Order "ACO" that was necessary to secure financing for the KWA, even though the ostensible purpose of the ACO was to clean a lagoon at the Flint Water Treatment Plant's lime-sludge facility.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement in subsequent proceedings the rationale for why it should be allowed to assert

6

that the Department of Treasury and any of its current or former employees are wholly or partially at fault to the jury in this case.

3.      **The Michigan Department of Health and Human Services and all current or former employees including, but not limited to Linda Dykema, Director of Environmental Health, and Corinne Miller, State Epidemiologist and Director of Bureau of Epidemiology.**

The Michigan Attorney General has charged five current or former MDHHS officers or employees. On or about July 28, 2016, Nancy Peeler, Corinne Miller and Robert Scott, were charged with Misconduct in Office in Violation of MCL 750.505, Conspiracy in violation of MCL 750.505c, and Willful Neglect of Duty by a Public Officer in violation of MCL 750.478. In the Request for Warrant accompanying the charges, it is alleged that Ms. Peeler, Ms. Miller and Mr. Scott conspired to conceal and/or withhold information regarding elevated blood lead levels in children living in the City of Flint.  In the Plea Agreement between the Attorney General and Corinne Miller, Ms. Miller states that she knew that she had a duty to report the existence of 42 documented cases of Legionnaire's disease reported from May to August of 2014 and that she failed to the report the information to health care providers in Genesee County or to the general public.

7

On or about June 14, 2017, Nicholas Lyon was charged with Involuntary Manslaughter and Misconduct in Office and Eden Wells, MD, was charged with Obstruction of Justice and Lying to a Peace Officer in violation of MCL 750.479c2c.

Linda Dykema served as the Director of the Division of Environmental Health.  When confronted with evidence of a lead problem in the City of Flint, Ms. Dykema attempted to discredit the evidence and showed more concern for saving face both for herself and for her department than for obtaining clear answers and protecting the public health.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement the rationale for why it should be allowed to assert that the MDHHS and any of its current or former employees are wholly or partially at fault to the jury in this case.

**4.      All current and former employees, elected officials and emergency managers of the City of Flint, including, but not limited to, former Emergency Manager Michael Brown, and all individual members of the Flint Receivership Transition Advisory Board.**

As the owner and operator of the public water supply, the City of Flint is responsible for ensuring proper design, construction, operations, and

maintenance of the public water supply.  Upon information and belief, in late 2012 and early 2013, representatives of the City of Flint participated in a series of meetings with representatives from the MDEQ, the Department of Treasury, the Governor's office, the Karegnondi Water Authority, Rowe Professional Services Company and possibly others to discuss transitioning from the DWSD water source to the KWA water source and possibly using the Flint River as an interim water source.  Ultimately, the decisions to stop using the DWSD water source, to transition to the KWA water source, and to use the Flint River as an interim water source were made by the City of Flint and its emergency managers.  Although Defendant LAN was retained to consult with the City, Defendant LAN was given a limited scope of work focused on certain specific components of the Flint Water Treatment Plant.  Defendant LAN did not operate the water plant, and it was not responsible for water quality.

From the Spring of 2013 through April of 2014, prior to the change over to the use of the Flint River water source, representatives of LAN communicated at different times and in different ways that the City of Flint should use an additive for corrosion control and full softening using both lime and soda ash (which is itself a form of corrosion control).  In addition, representatives of LAN communicated to the City of Flint at different times and in different ways that the City should implement a plant test run for a

9

minimum of 60-90 days before distributing water to the public to allow the City to evaluate the need for full softening, phosphate or other chemical additives and overall water quality.  Based on information and belief, the City did not follow the recommendations of LAN, because they were not required to do so by the MDEQ and because the emergency managers were focused on reducing costs.

Moreover, Defendant LAN was repeatedly assured in 2014 and 2015 by representatives of the City of Flint that the sampling and testing which was required by the MDEQ under the Lead and Copper Rule demonstrated that the City's water supply was in compliance with applicable state and federal guidelines.  More recently, the sampling by the City and the testing done by the MDEQ has been called into question in numerous ways.  Defendant LAN had no role in the collection of samples or the testing of the samples.

Edward Kurtz served as Emergency Manager for the City of Flint from August of 2012 through July of 2013, and former Emergency Manager Michael Brown remained as an advisor to EM Kurtz.  Upon information and belief, Mr. Kurtz and Mr. Brown participated in a series of meetings with representatives from the MDEQ, the Department of Treasury, the Governor's office, the Karegnondi Water Authority, Rowe Professional Services Company and possibly others to discuss transitioning from the DWSD water source to the

10

KWA water source and possibly using the Flint River as an interim water source in 2012 and early 2013.  In approximately November of 2012, Mr. Kurtz wrote to Treasurer Andy Dillon and proposed that joining the KWA and changing from the DWSD water source to the KWA water source would save money.  On or about April 4, 2013, Mr. Kurtz wrote a letter to Treasurer Dillon requesting formal approval for the change to the KWA water source, and Treasurer Dillon provided his written authorization on April 11, 2013.  On or about April 16, 2013, Mr. Kurtz executed a formal agreement to purchase water from the KWA.  (Defendant LAN was not even approached about possibly providing consulting services in connection with improvements to the Flint Water Treatment Plant until May of 2013, after these decisions were made.)

At its initial meeting with City representatives, in May of 2013, Defendant LAN was informed that the City planned to save approximately $10,000,000 by using the Flint River as a water source during the interim period between the shut off of the DWSD water source and the availability of the KWA water source.  Upon information and belief, Mr. Kurtz and Mr. Brown were key participants in formulating this plan.   At subsequent meetings with LAN personnel, Mr. Kurtz stated very clearly in response to suggestions by LAN that the City was not going to do anything which was not required by the

11

MDEQ.  Upon information and belief, Mr. Kurtz was acting pursuant to understandings reached during meetings in 2012 and early 2013 with representatives from the City, the MDEQ, the Governor's office, the Department of Treasury, Rowe Professional Services Company and others. LAN was not invited to and did not attend these meetings in 2012 and early 2013.

On April 16-17, 2014, former Water Treatment Plant Operator, Michael Glasgow engaged in an email exchange with Adam Rosenthal of MDEQ in which Mr. Glasgow stated:

> "[I]t looks as if we will be starting the plant up tomorrow and are being pushed to start distributing water as soon as possible. . . .  I have people above me making plans to distribute water ASAP.  I was reluctant before, but after looking at the monitoring schedule and our current staffing, I do not anticipate giving the OK to begin sending water out anytime soon.  If water is distributed from this plant in the next couple weeks, it will be against my direction.  I need time to adequately train additional staff and to update our monitoring plans before I will feel we are ready.  I will reiterate this to management above me, but they seem to have their own agenda."

Upon information and belief, Mr. Glasgow understood that the Flint Water Plant was not ready to distribute water in April of 2014, was concerned about the fact that the City had not undergone a sufficient plant test run prior to distribution of water, and expressed his concerns to "people above [him]."

12

Howard Croft was the Director of Public Works for the City. Daugherty Johnson served as the City of Flint's Utility Director.  On December 16, 2016, Mr. Croft and Mr. Johnson were criminally charged with false pretenses and conspiracy to commit false pretenses.  The warrant request supporting these charges assert that Mr. Croft and Mr. Johnson "conspired with Defendants Ambrose and Earley to commit false pretenses when they knowingly aided and abetting Defendants Ambrose and Earley in entering into a contract based upon false pretenses in the form of an ACO that bound the City of Flint to the FWTP, which was unable to produce safe water to the citizens of Flint."  The warrant request further alleges that Mr. Croft and Mr. Johnson allowed the Flint Water Treatment Plant to begin operating and distributing water to the City's water customers in April of 2014 even though they knew that they didn't have sufficient manpower to properly operate the plant, that the plant, including the softening process, was not yet ready, and that no plant test run had been implemented to test the safety of the water.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement the rationale for why it should be allowed to assert that any of the current or former employees, elected officials or emergency managers of the City are wholly or partially at fault to the jury in this case.

13

5.     **United States Environmental Protection Agency (EPA), and all current and former employees of the EPA, including, but not limited to, Susan Hedman, Former EPA Region 5 Administrator, Jennifer Crooks, Program Manager for EPA Region 5 Ground Water and Drinking Water, Tom Poy, Region 5 Ground Water Drinking Water Branch Chief, and Tinka Hyde, Director of the Region 5 Water Division.**

In February of 2015, USEPA personnel, including Miguel Del Toral and Jennifer Crooks, began expressing concerns about a possible problem involving particulate lead being released into the water in the City of Flint. Upon information and belief, no action was taken by USEPA at this time.  In April of 2015, the USEPA was informed by the MDEQ that the Flint Water Treatment Plant was not utilizing phosphate additives or other additives for corrosion control but rather that the City was implementing two consecutive, six-month monitoring cycles to monitor for lead and copper.  On or about June 10, 2015, a conference call was held between USEPA and MDEQ officials and notes regarding the call were prepared by Jennifer Crooks.  Ms. Crooks' notes reflect that the group discussed that the second round of lead and copper monitoring would likely warrant a corrosion control study, but that doing a corrosion control study may not make sense given the plan to change water sources again in 2016.  The notes also reflect a discussion to the effect

14

that simply using a phosphate additive without performing a study would be premature.

On or about June 24, 2015, Miguel Del Toral prepared an internal USEPA interim report discussing his concerns about particulate lead being released into the water in the City of Flint.  Although Mr. Del Toral leaked the report to the ACLU, Region 5 Administrator Hedman subsequently wrote to Flint Mayor Dayne Walling on or about July 1, 2105 that the report was a preliminary report which should not have been released outside the agency.  Upon information and belief, this report from Mr. Del Toral was not finalized and distributed by the EPA until November of 2015, well after the City had asked these Defendants to begin designing a system for phosphate additives for corrosion control.

On September 11, 2015, Ms. Crooks wrote an email to the MDEQ stating as follows regarding the June 2015 draft Del Toral report:  "I wanted to remind you that Miguel's report has DEQ cc'd.  So if the Legislature or whoever might say you all were cc'd, you can truthfully respond that it was EPA's request that the report not be sent to the cc's.  Consequently, you all never received the report from Miguel."

Tom Poy was the Region 5 Ground Water Drinking Water Branch Chief.  In the Fall of 2014, Mr. Poy ignored concerns about the safety of the water in

Flint raised by users of the water system.  He was also privy to the emails between the EPA and MDEQ in February and April of 2015, and received a copy of the June 2015 draft report from Mr. Del Toral, yet waited for several months prior to taking any action.

Tinka Hyde served as Director of the Region 5 Water Division.  She was also privy to communications with the EPA in early 2015 regarding the lead issue in the City of Flint and failed to take appropriate action in a timely manner.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement the rationale for why it should be allowed to assert that the EPA or any of its current or former employees are wholly or partially at fault to the jury in this case.

6.      **All other engineering and water consultants who have performed services for the Flint Water Supply from the beginning of the existence of the Flint Water Plant and the Flint water distribution system until the present, including, but not limited to, Ayers, Lewis, Norris and May, Inc., Snell Environmental Group, DLZ Corporation, Alvord, Burdick and Howson, LLC, Prein & Newhof, and Gould Engineering, and any of their current and former employees.**

16

During the performance of its work for the City of Flint, these Defendants requested and were provided a copy of prior reports prepared by Snell Environmental Group, Alvord, Burdick and Howson, LLC, Prein and Newhof, and Gould Engineering.  In addition, Snell Environmental Group, DLZ Corporation, and others submitted numerous permit applications for the construction of components of the Flint Water Treatment Plant and the Flint water distribution system to the MDEQ.  The LAN Defendants are being sued for professional negligence, and these Defendants relied in part in the performance of the work on the prior reports and other work prepared by these entities.  In addition, Defendant LAN was given a limited scope of work by the City of Flint, and Defendant LAN was not responsible for water quality. Defendant LAN believes that it is not responsible for causing the harm alleged by Plaintiffs and that the claims against it should be dismissed.  However, Defendant LAN reserves the right to assert to the jury that the work of other consulting engineers and/or water consultants was a cause of the alleged harm to Plaintiffs in the event that the claims of the Plaintiffs are allowed to go to a jury.

The LAN Defendants note that only very limited, preliminary discovery has been taken in this matter. Defendants reserve the right to supplement the rationale for why it should be allowed to assert that other consulting

engineers or water consultants, or any of their current or former employees,

is/are wholly or partially at fault to the jury in this case.

Respectfully submitted,

/s/ Wayne B. Mason
Wayne B. Mason (SBOT 13158950)
Travis S. Gamble (SBOT 00798195)
S. Vance Wittie (SBOT 21832980)
David C. Kent (SBOT 11316400)
DRINKER BIDDLE & REATH LLP
1717 Main St., Suite 5400
Dallas TX 75201
(469) 227-8200
wayne.mason@dbr.com
travis.gamble@dbr.com
vance.wittie@dbr.com
david.kent@dbr.com

ATTORNEYS FOR DEFENDANT
LOCKWOOD ANDREWS & NEWNAM INC.
LOCKWOOD ANDREWS & NEWNAM PC
LEO A. DALY COMPANY

/s/ Philip A. Erickson
Philip A. Erickson (P37081)
Robert G. Kamenec (P35283)
Saulius K. Mikalonis (P39486)
Karen E. Beach (P75172)
PLUNKETT COONEY
325 E. Grand River Ave, Suite 250
East Lansing, MI 48823
(517) 324-5608
perickson@plunkettcooney.com
rkamenec@plunkettcooney.com
smikalonis@plunkettcooney.com
kbeach@plunkettcooney.com

ATTORNEYS FOR DEFENDANT
LOCKWOOD ANDREWS & NEWNAM INC.
LOCKWOOD ANDREWS & NEWNAM PC
LEO A. DALY COMPANY

Dated:  July 30, 2018

## PROOF OF SERVICE

Philip A. Erickson states that on the 30th day of July, 2018, he did

cause to be served a copy of Notice of Nonparties at Fault of Defendants

Lockwood, Andrews & Newnam, P.C. and Lockwood, Andrews & Newnam, Inc.

to all attorneys of record at their respective addresses, by placing said

documents in an envelope properly addressed to said parties and depositing

same in the U.S. Mail with postage fully prepaid.  I declare under penalty of

perjury that the above statement is true to the best of my knowledge,

information and belief.

                                                   /s/ Philip A. Erickson
                                                  Philip A. Erickson

Open.25633.72612.20708578-1