# EXHIBIT G

## KAREGNONDI WATER AUTHORITY FINANCING CONTRACT

THIS CONTRACT, dated as of August 1, 2013, by and among the Karegnondi Water Authority, a municipal authority and public body corporate of the State of Michigan (hereinafter referred to as the "Authority"), the City of Flint in the County of Genesee and the County of Genesee (collectively, the "Local Units" and each a "Local Unit").

WITNESSETH:

WHEREAS, the Authority has been incorporated under the provisions of Act No. 233, Public Acts of Michigan, 1955, as amended (hereinafter referred to as "Act 233"), for the purposes set forth in Act 233; and

WHEREAS, the Authority will acquire, construct and operate a water supply system to be known as the Karegnondi Water Supply System that provides untreated water to the Local Units, each of which is a constituent municipality of the Authority; and

WHEREAS, it is immediately necessary and imperative for the public health and welfare of the present and future residents of each of the Local Units that a certain water supply system, as more fully described on Exhibit A hereto, together with all necessary interests in land, appurtenances and attachments thereto (the "System") be acquired, installed and constructed; and

WHEREAS, plans and an estimate of cost of the System have been prepared by the Authority's consulting engineers, Wade Trim (the "Consulting Engineers"), which said estimate of aggregate cost totals an amount not to exceed $300,000,000; and

WHEREAS, each of the Local Units is desirous of having the Authority acquire and own the System in order to continue to operate the System in order to furnish the Local Units with untreated raw water; and

WHEREAS, the parties hereto have determined that the System is essential to the general health, safety and welfare of each of the Local Units; and

WHEREAS, the Authority and each of the Local Units are each agreeable to the execution of this Contract by and among themselves which provides, among other things, for the financing of all or a portion of the cost of the System; and

WHEREAS, this Contract contemplates the issuance of bonds in one or more series by the Authority to pay all or part of the costs of the System; and

WHEREAS, each of the Local Units has or will approve and authorize the execution of this Contract by resolution of its governing body; and

WHEREAS, each of the Local Units has published or will publish, individually or jointly, a notice of intention to enter into this Contract in a newspaper of general circulation in the territory encompassed by each Local Unit; and

WHEREAS, this Contract will become effective for each Local Unit upon expiration of a period of forty-five (45) days following publication by each Local Unit of its notice of intention without filing of a petition for referendum on the question of its entering into this Contract, or if such referendum election be required, then upon approval by the qualified electors of the Local Unit.

NOW, THEREFORE, IN CONSIDERATION OF THE PREMISES AND THE COVENANTS MADE HEREIN, THE PARTIES HERETO AGREE AS FOLLOWS:

SECTION 1. The Authority and the Local Units hereby approve the acquisition, construction and operation of System, together with all necessary interests in land, appurtenances and attachments thereto.

SECTION 2. Each of the Local Units hereby consents to the use by the Authority and any parties contracting with the Authority of the public streets, alleys, lands and rights-of-way in each Local Unit for the purpose of constructing, operating and maintaining the System including any improvements, enlargements and extensions thereto.

SECTION 3. The System is designed to provide and transport untreated raw water to each of the Local Units and the System is immediately necessary to protect and preserve the public health.

SECTION 4. The Authority and each of the Local Units hereby approve and confirm the plans for the System prepared by the Consulting Engineers and the total estimated cost thereof in the sum of not to exceed $300,000,000. Said cost estimate includes all surveys, plans, specifications, acquisition of property for rights-of-way, physical construction necessary to acquire and construct the System, the acquisition of all materials, machinery and necessary equipment, and all engineering, engineering supervision, administrative, legal and financing expenses necessary in connection with the acquisition and construction of the System and the financing thereof.

SECTION 5. The Authority shall not enter into any final contract or contracts for the acquisition and construction of the System if such contract price or prices will be such as to cause the actual cost thereof to exceed the estimated cost as approved in Section 4 of this Contract unless the Authority has sufficient funds to cover such excess, or, each of the Local Units, by resolution of its respective legislative body, (a) approves said increased total cost, and (b) agrees to pay such excess over the estimated cost, either in cash or by specifically authorizing the maximum principal amount of bonds to be issued, as provided in Sections 9 and 14 of this Contract, to be increased to an amount which will provide sufficient funds to meet said increased cost, and approves a similar increase in the installment obligations of each Local Unit, if any, pledged under the terms of this Contract to the payment of such bonds.

SECTION 6. The System shall be acquired and constructed by the Authority substantially in accordance with the plans and specifications therefor approved by this Contract. All matters relating to engineering plans and specifications, together with the making and letting of final construction contracts, the approval of work and materials thereunder, and construction supervision, shall be in the

control of the Authority. All acquisition of sites and rights-of-way, if any, shall be done by the Authority. Each Local Unit's share of the costs of such acquisition in each Local Unit, if any, shall be paid from the Local Unit's share of bond proceeds and, in addition, any costs incurred by any Local Unit in connection with the acquisition or construction of the System, including, but not limited to, engineering expenses, shall be promptly reimbursed to the Local Unit by the Authority from the proceeds of the Authority's Bonds with the approval of the Authority board.

SECTION 7. The Authority shall operate, maintain and administer the System for and on behalf of the Local Units. The System shall be maintained in good condition and repair. The Authority shall provide insurance as part of its obligation to operate the System. The Authority will furnish reports to the Local Units at periodic intervals corresponding with the reporting periods of the Local Units in detail sufficient to inform the Local Units of the operations of the System and to permit the Local Units to meet their financing requirements hereunder.

SECTION 8. To provide for the construction and financing of the System in accordance with the provisions of Act 233, the Authority shall take the following steps:

(a) The Authority will take steps to adopt a resolution or resolutions providing for the issuance of its bonds in one or more series in the principal amount of not to exceed $300,000,000 (except as otherwise authorized pursuant to Section 5 of this Contract) to finance all or part of the costs of the System. Said bonds shall mature serially or be subject to mandatory sinking fund redemption as authorized by law, and shall be secured by the contractual obligations of each Local Unit in this Contract. After due adoption of the resolution or resolutions, the Authority will take all necessary legal procedures and steps necessary to effectuate the sale or sales and delivery or deliveries of said bonds.

(b) The Authority shall take all steps necessary to take bids for and enter into and execute final acquisition and construction contracts for the acquisition and construction of the System as specified and approved hereinbefore in this Contract, in accordance with the plans and specifications therefor based on the plans as approved by this Contract.

(c) The Authority will require and procure from the contractor or contractors undertaking the actual construction and acquisition of the System necessary and proper bonds to guarantee the performance of the contract or contracts and such labor and material bonds as may be required by law.

(d) The Authority, upon receipt of the proceeds of sale of each series of bonds, will comply with all provisions and requirements provided for in the resolution authorizing the issuance of such series of bonds and this Contract relative to the disposition and use of the proceeds of sale of such series of bonds.

(e) The Authority may temporarily invest any bond proceeds or other funds held by it for the benefit of each Local Unit as permitted by law and investment income shall accrue to and follow the fund producing such income. The Authority shall not, however, invest, reinvest or accumulate any moneys deemed to be proceeds of the bonds pursuant to §148 of the Internal Revenue Code of 1986, as amended, and the applicable regulations thereunder (the "Code"), in such a manner as to cause the bonds to be "arbitrage bonds" within the meaning of Code §

-3-

103(b)(2) and §148, or otherwise as may jeopardize the tax status of the bonds.

SECTION 9. Each Local Unit irrevocably covenants and agrees to pay to the Authority its Local Unit share of each series of bonds to be issued by the Authority pursuant to this Contract. The share of each Local Unit shall be determined as set forth on Exhibit B hereto.

The cost of the System to be financed with the issuance of bonds of the Authority in the aggregate principal amount of not to exceed $300,000,000 shall be paid in annual installments on the dates and in the amounts as established in the Authority's bond authorizing resolution.

Each Local Unit covenants that it will make or cause to be made its payments as required by this Contract not less than 30 days prior to the dates on which the Authority is required to make payments on the bonds described herein to the transfer agent for the bonds.

It is understood and agreed that the bonds of the Authority hereinbefore referred to will be issued in anticipation of the above contractual obligation, with principal maturities on the dates established by the Authority corresponding to the principal amount of the installments then coming due, and there shall also be paid in addition to said principal installments, on such dates as shall be determined by the Authority, commencing on such date as determined by the Authority, as accrued interest on the principal amount remaining unpaid, an amount sufficient to pay all interest at an interest rate not to exceed ten percent (10%) per annum, due on the next succeeding interest payment date on the bonds from time to time outstanding.

It is further understood and agreed that the bonds of the Authority may be secured by a debt service reserve fund or funds to provide additional security for the timely payment thereof if the Authority determines, in consultation with its financial advisor, that the provision of such debt service reserve fund or funds is advisable. If the bonds of the Authority are secured by a debt service reserve fund or funds, each Local Unit covenants and agrees to provide for the replenishment of such debt service reserve funds as described in Exhibit B.

From time to time as the Authority is billed by the transfer agent for its services for the bonds, and as other costs and expenses accrue to the Authority from handling of the payments made by the Local Units, or from other actions taken in connection with the System, the Authority shall promptly notify the Local Units of the amount of such paying agent fees and other costs and expenses, and the Local Units shall promptly remit to the Authority sufficient funds to meet such fees and other costs and expenses in the proportions hereinabove provided to the extent sufficient funds are not available to the Authority. Each Local Unit warrants and represents that the amount of its obligations under this Contract, when taken together with other indebtedness of such Local Unit, will not cause its obligations under this Contract to exceed any constitutional, statutory or charter debt limitation applicable to such Local Unit.

The Authority shall, within thirty (30) days after the delivery of each series of the bonds of the Authority hereinbefore referred to, furnish each Local Unit with a complete schedule of installments of principal and interest thereon, and the Authority shall also at least sixty (60) days prior to each principal and/or interest installment due date, advise the Local Units, in writing, of the exact amount of principal and interest installments due on each series of bonds on the next succeeding bond principal and/or interest due date, and payable on the first day of the month immediately preceding, as hereinbefore

provided. Failure of the Authority to notify the Local Units of any such payment shall not relieve the Local Units of the obligation to make such payment.

If any principal installment or interest installment is not paid when due, the amount not so paid shall be subject to a penalty, in addition to interest, of one percent (1%) thereof for each month or fraction thereof that the same remains unpaid after the due date.

SECTION 10. Each Local Unit states its intention to pay its obligations under this Contract from sources of moneys as are provided by Act 233 and applicable law, including the levy and collection of rates and charges to users of its respective water supply system for operating and maintaining its system provided by each Local Unit to customers in the Local Unit. Nevertheless, pursuant to the authorization contained in Act 233, each Local Unit hereby irrevocably pledges its full faith and credit for the prompt and timely payment of its obligations pledged for bond payments as expressed in this Contract, and, subject to the provisions of the last sentence of this paragraph, shall each year, commencing with the first tax levy after issuance of the bonds by the Authority, levy an ad valorem tax on all the taxable property in the Local Unit in an amount which, taking into consideration estimated delinquencies in tax collections, will be sufficient to pay such obligations under this Contract becoming due before the time of the following year's tax collections. Such annual tax levies shall be subject to applicable constitutional, statutory, and charter tax limitations. Nothing herein contained shall be construed to prevent a Local Unit from using any, or any combination of, the means and methods provided in Section 7 of Act 233, as now or hereafter amended, for the purpose of providing funds to meet its obligations under this Contract, and, if at the time of making the annual tax levy there shall be either other funds on hand earmarked and set aside, or funds provided in the annual budget of the water supply system of the Local Unit, for the payment of the contractual obligations due prior to the next tax collection period, then such annual tax levy may be reduced by such amount.

In the event a Local Unit shall fail for any reason to pay to the Authority at the times specified the amounts required to be paid by the provisions of this Contract, the Authority shall immediately give notice of such default and the amount thereof, to the Treasurer of each Local Unit, the Treasurer of the State of Michigan, and such other officials charged with the disbursement to such Local Unit of funds returned by the State and now or hereafter under Act 233 available for pledge as provided in this Section and in Section 12a of Act 233, and if such default is not corrected within ten (10) days after such notification, the State Treasurer, or other appropriate official charged with disbursement to such Local Unit of the aforesaid funds, is, by these presents, specifically authorized by the Local Unit, to the extent permitted by law, to withhold from the aforesaid funds the maximum amount necessary to cure said deficit and to pay said sums so withheld to the Authority, to apply on the obligations of the Local Unit as herein set forth. Any such moneys so withheld and paid shall be considered to have been paid to the Local Unit within the meaning of the Michigan Constitution and statutes, the purpose of this provision being voluntarily to pledge and authorize the use of said funds owing to the Local Unit to meet any past-due obligations of such Local Unit due under the provisions of this Contract. In addition to the foregoing, the Authority shall have all other rights and remedies provided by law to enforce the obligations of the Local Unit to make its payments in the manner and at the times required by this Contract, including the right of the Authority to direct the Local Unit to make a tax levy to reimburse the Authority for any funds advanced.

SECTION 11. Each Local Unit may pay in advance any of the payments required to be made by this Contract, in which event the Authority shall credit the respective Local Unit with such advance

-5-

payment on future due payments to the extent of such advance payment, or use such advances to call bonds without credit to the extent provided in relevant series of bonds.

SECTION 12. Each Local Unit may pay additional moneys over and above any of the payments specified in this Contract, with the written request that such additional funds be used to prepay installments, in which event the Authority shall be obligated to apply and use said moneys for such purpose to the fullest extent possible. Such moneys shall not then be credited as advance payments under the provisions of Section 11 of this Contract.

SECTION 13. It is specifically recognized by each Local Unit that the debt service payments required to be made by each pursuant to the terms of Section 9 of this Contract are to be pledged for and used to pay the principal installments of and interest on with respect to the bonds to be issued by the Authority as provided by this Contract and authorized by law, and each Local Unit covenants and agrees that it will make all required payments to the Authority promptly and at the times herein specified without regard to whether the System is actually completed or placed in operation.

SECTION 14. If the proceeds of the sale of the bonds in one or more series in aggregate amount not to exceed $300,000,000 to be issued by the Authority are for any reason insufficient to complete each Local Unit's share of the cost of the System, subject to each Local Unit's approval required by Section 5 hereof, the Authority shall automatically be authorized to issue additional bonds in an aggregate principal amount sufficient to pay the cost of completing the System and to increase the annual payments required to be made by each Local Unit in an amount so that the total payments required to be made as increased will be sufficient to meet the annual principal and interest requirements on the bonds herein authorized plus the additional bonds to be issued. It is expressly agreed between the parties hereto that the Authority shall issue bonds pursuant to this Contract and each Local Unit shall be committed to retire such amount of bonds as may be necessary to pay each Local Unit's share of the costs of the System whether or not in excess of those presently estimated herein. Any such additional bonds shall comply with the requirements of Act 233 and any increase in the annual payments shall be made in the manner and at the times specified in this Contract. In lieu of such additional bonds, each Local Unit may pay over to the Authority, in cash, sufficient moneys to complete each Local Unit's share of the cost of the System.

SECTION 15. After completion of the System and payment of all costs thereof, any surplus remaining from the proceeds of sale of bonds shall be used by the Authority for either of the following purposes: (a) for improvements or enhancements to the System or for other projects of the Authority undertaken on behalf of the Local Units, subject to approval of the Authority; or (b) credited by the Authority toward the next payments due the Authority by said Local Units hereunder.

SECTION 16. The obligations and undertakings of each of the parties to this Contract shall be conditioned on the successful issuance and sale of the first series of bonds pursuant to Act 233, and if for any reason whatsoever the first series of bonds are not issued and sold within three (3) years from the date of this Contract, this Contract, except for payment of preliminary expenses and ownership of engineering data, shall be considered void and of no force and effect.

SECTION 17. The Authority and each Local Unit each recognize that the owners from time to time of each series of bonds issued by the Authority under the provisions of Act 233 to finance the cost of the System will have contractual rights in this Contract, and it is, therefore, covenanted and agreed by

-6-

the Authority and each Local Unit that so long as any of series of bonds shall remain outstanding and unpaid, the provisions of this Contract shall not be subject to any alteration or revision which would in any manner materially affect either the security of such series of bonds or the prompt payment of principal or interest thereon. Each Local Unit and the Authority each further covenant and agree that each will comply with its respective duties and obligations under the terms of this Contract promptly at the times and in the manner herein set forth, and will not suffer to be done any act which would in any way impair the said bonds, the security therefor, or the prompt payment of principal and interest thereon. It is hereby declared that the terms of this Contract insofar as they pertain to the security of any such bonds shall be deemed to be for the benefit of the owners of said bonds.

SECTION 18. This Contract shall remain in full force and effect from the effective date hereof (as provided in Section 21) until each series bonds issued by the Authority are paid in full, but in any event not to exceed a period of thirty (30) years for each series of bonds. At such time within said 30-year term as any of the series of said bonds are paid, this Contract shall be terminated. In any event, the obligation of each Local Unit to make payments required by this Contract shall be terminated at such time as all of said bonds are paid in full, together with any deficiency or penalty thereon.

SECTION 19. This Contract shall inure to the benefit of and be binding upon the respective parties hereto, their successors and assigns.

SECTION 20. This Contract shall become effective upon (i) approval by the legislative body of each Local Unit, (ii) approval by the Board of the Authority and (iii) due execution by authorized officers of each Local Unit and by the Chairman and Secretary of the Authority.

SECTION 21. This Contract may be executed in several counterparts.

SECTION 21.  This Contract may be executed in several counterparts.

IN WITNESS WHEREOF, the parties hereto have caused this instrument to be executed as of the day and year first above written.

In the presence of:

_____

_____

**KAREGNONDI WATER AUTHORITY**

By: _____
Chairman

By: _____
Secretary

In the presence of:

_____

_____

**CITY OF FLINT**

By: _____
Mayor

By: _____
City Clerk

In the presence of:

_____

_____

**COUNTY OF GENESEE**

By: _____
Chairperson of Board of Commissioners

By: _____
Clerk

-8-

EXHIBIT A

SYSTEM

The Karegnondi Water System is a raw water supply system. It will deliver untreated Lake Huron water 65 miles inland to the population centers of Lapeer and Genesee Counties, including the Cities of Lapeer and Flint, and the County Agency of Genesee County with 17 local municipal systems. The system will also be capable of delivering water along the route to customers in Sanilac and Lapeer County, as well as future customers in Saint Clair County.

The system will consist of a lake intake, two pumping stations, and over 65 miles of large diameter transmission watermain. The system will include fire hydrants, metering stations, reservoirs, and the appurtenances necessary to operate the system efficiently. The lake intake portion of the project and the land where the two pumping stations are located will be acquired, constructed, designed and financed by the County of Genesee and made available for use by the Karegnondi Water System.

All land and required right-of-ways and easements have been acquired.

EXHIBIT B

LOCAL UNIT ESTIMATED SHARE OF IMPROVEMENT COST

The following is a breakdown of the percent each Local Unit is required to pay of the aggregate debt service, including the obligation to replenish a debt service reserve fund(s), if any, on the Authority's bonds authorized by this Contract:

| Local Unit | Bond Issue |
|---|---|
| County of Genesee | 65.8% |
| City of Flint | 34.2% |

In the event the City of Flint fails to fulfill its payment obligations under this Contract, the County of Genesee irrevocably covenants and agrees to make such missed payment within 15 days of being notified of the missed payment. Further, the Authority covenants and agrees to undertake all legal action and make use of all remedies available under this Contract to enforce the payment obligations of the City of Flint under this Contract. The Authority also covenants and agrees to undertake all legal action and make use of all remedies available to it under the Raw Water Supply Contract between the Authority and the City of Flint dated as of June 28, 2013 ("Raw Water Supply Contract"), as amended, specifically sections 7.08 and 7.09 of such contract. If the County of Genesee is required to make a payment for the City of Flint under this Contract and the Authority recovers any funds from the pursuit of such remedies described above, the Authority shall reimburse the County of Genesee from such funds for any payments made. To the extent permitted by law, the capacity that the City of Flint acquired in the System pursuant to the Raw Water Supply Contract shall be transferred to the County of Genesee until the City of Flint has repaid the County of Genesee for any additional payments made hereunder. The City of Flint shall also pay a penalty of one percent (1%) thereof for each month or fraction thereof that the same remains unpaid after the due date of the amount paid by the County of Genesee as a result of the failure of the City of Flint to fulfill its payment obligations hereunder. Further, if a Local Unit fails to pay its contractual obligation causing a shortfall and the debt service reserve fund(s) is drawn upon to pay the Authority's bonds, the replenishment of such debt service reserve fund shall be an obligation of the Local Unit that failed to pay, as provided in the resolution authorizing the bonds. Provided, however, if the City of Flint fails to fulfill its debt service reserve fund replenishment obligation, as with other payment obligations under the Contract, the County of Genesee agrees to make such payments.

Additionally, if the Authority sells raw untreated water capacity to other parties, to the extent funds are available from payments received from those parties, each Local Unit shall be credited on each day payment is due hereunder as agreed to by the Authority and the Local Units towards each Local Unit's payment obligations hereunder.

21268959.4\152665-00001