UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ELNORA CARTHAN, *et al.,* on behalf of themselves and all others similarly situated, | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| Plaintiffs, | MAG. MONA K. MAJZOUB |
| v. | |
| Former GOVERNOR RICK SNYDER, in his individual capacity, *et al.,* | |
| Defendants. | |

_____/

**STATE DEFENDANTS' OBJECTIONS AND ADDITIONAL MOTION-TO-DISMISS ARGUMENTS RELATING TO PLAINTIFFS' PROPOSED AMENDED COMPLAINT (DKT. 620) AND OPERATIVE COMPLAINT (DKT. 349)**

## TABLE OF CONTENTS

Page

Index of Authorities ..................................................................................ii

Procedural Background .............................................................................3

I. State Defendants object to the Court's Order Regarding Pending Motion to Amend (Dkt. 714) because jurisdiction has transferred to the Sixth Circuit Court of Appeals. ....................4

II. As in *Guertin,* Plaintiffs' bodily-integrity claim allegations against Snyder, Dillon, and Lyon lack the requisite "conscience-shocking" conduct and must be dismissed. ..................5

    A. The allegations against former Governor Snyder do not show conscience-shocking conduct. ..........................................6

    B. Defendant Dillon's role in approving the City of Flint's decision to switch to the KWA does not shock the conscience. ...............................................................................10

    C. As in *Guertin,* Defendant Lyon's alleged conduct does not shock the conscience. .....................................................11

III. Plaintiffs' official-capacity claims against Governor Whitmer should be dismissed because they are barred by Eleventh Amendment immunity and fail to state a claim ..........................12

Conclusion ...............................................................................................14

Certificate of Service ................................................................................1

# INDEX OF AUTHORITIES

<u>Page</u>

**Cases**

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*,
 489 U.S. 189 (1989) ................................................................................... 10, 13

*Ford Motor Co. v. Dep't of Treasury of Indiana*,
 323 U.S. 459 (1945) ............................................................................................ 14

*Guertin v. State*,
 No. 17-1698, 2019 WL 99088 (6th Cir. Jan. 4, 2019) .................. passim

*Hays v. Jefferson County, Ky.*,
 668 F.2d 869 (6th Cir. 1982) ............................................................................ 10

*Mayor of City of Philadelphia v. Educational Equality League*,
 415 U.S. 605 (1974) ............................................................................................ 15

*Pennhurst State Sch. & Hosp. v. Halderman*,
 465 U.S. 89 (1984) .............................................................................................. 15

*Range v. Douglas*,
 763 F.3d 573 (6th Cir. 2014) .............................................................................. 6

*Spomer v. Littleton*,
 414 U.S. 514 (1974) ............................................................................................ 15

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
 535 U.S. 635 (2002) .............................................................................................. 3

*Walters v. City of Flint*,
 No. 17-10164, Dkt. 195 (E.D. Mich. January 15, 2019) ........................ 8

*Will v. Mich. Dept. of State Police*,
 491 U.S. 58 (1989) .............................................................................................. 15

**Statutes**

28 U.S.C. § 1292(b) .................................................................................................. 3

28 U.S.C. § 1983 ....................................................................................................... 9

**Rules**

E.D. Mich. R. 7.1(h) ............................................................................................. 3, 4

Fed. R. App. P. 4(a)(4) ............................................................................................. 4

Fed. R. App. P. 4(a)(4)(A) ....................................................................................... 5

Fed. R. Civ. P. 25(d) .......................................................................................... 2, 12

Fed. R. Civ. P. 60(b)(1) .................................................................................... 3, 4, 5

**Constitutional Provisions**

U.S. Const. art. XI ....................................................................................... 2, 13, 14

This Court's Order Regarding Pending Motion to Amend [620] (Dkt. 714) explained that the Court will "treat defendants' responses to the [Plaintiffs'] motion for leave to amend as addenda to their previously filed motions to dismiss" and "issue a single omnibus opinion adjudicating the motion for leave to amend and the motions to dismiss." (Dkt. 714, Pg.ID #20048.) The Court also instructed the defendants to file any objections to that Order and additional arguments to the motions to dismiss. (Dkt. 714, Pg.ID #20049.)

As detailed below, State Defendants respectfully object to the Court's Order because jurisdiction over this case has transferred to the Sixth Circuit Court of Appeals. The jurisdictional dispute is currently before the Sixth Circuit, and this Court should not proceed until the jurisdictional question is answered.

In the event the Sixth Circuit Court of Appeals disagrees and determines that this Court indeed has jurisdiction, State Defendants have two additional motion-to-dismiss arguments. These arguments add to those made by State Defendants in their motion to dismiss (Dkt. 279), at the July 11, 2018 motion hearing on that motion to dismiss (Dkt. 532), and in their response to the motion to amend (Dkt. 654).

1

The first argument is based on the Sixth Circuit's recent decision in *Guertin v. State*, No. 17-1698, 2019 WL 99088 (6th Cir. Jan. 4, 2019). In *Guertin,* the Sixth Circuit held that to establish a bodily-integrity claim, Plaintiffs must show how each individual government official's discretionary conduct was "constitutionally repugnant," or in other words "shocked the conscience." *Id.* at *6. Plaintiffs' bodily-integrity claim, as alleged against Defendants Snyder, Dillon, and Lyon, must be dismissed because their alleged conduct falls well short of the "conscience shocking" standard elucidated by the Sixth Circuit.

The second argument involves Plaintiffs' official-capacity claims. Governor Whitmer was automatically substituted as a party in this class action, but this substitution applies only to the official-capacity claims, and not to the individual-capacity claim, against former Governor Snyder. Fed. R. Civ. P. 25(d). Because Plaintiffs' allegations do not establish an ongoing violation of federal law by Governor Whitmer, these official capacity claims must be dismissed as barred by the Eleventh Amendment. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

## PROCEDURAL BACKGROUND

On August 1, 2018, this Court entered its order on several motions to dismiss Plaintiffs' third amended consolidated class action complaint. (Dkt. 546, "August 1, 2018 Order.") Two weeks later, three separate motions were filed in this Court challenging the August 1, 2018 Order. Defendant Wright's motion relied solely on Eastern District of Michigan Local Rule 7.1(h). (Dkt. 560.) Defendants Lyon and Dillon relied on both Fed. R. Civ. P. 60(b)(1) and Local Rule 7.1(h). (Dkt. 561.) And the City of Flint relied on 28 U.S.C. § 1292(b). (Dkt. 565.)

Thereafter, several defendants timely filed notices of appeal challenging the August 1, 2018 Order. (Dkt. 570, 573, 575, 579, 589.) Each of these appeals involves a denial of qualified immunity, including Lyon and Dillon's, which was filed on August 28, 2018. (Dkt. 579.)

On August 29, 2018, the Sixth Circuit Court of Appeal issued a letter in No. 18-1983 (Lyon and Dillon's appeal) stating that the case would be held in abeyance "until after the district court rules on pending motions, identified under Fed. R. App. P. 4(a)(4), and jurisdiction transfers to the Sixth Circuit Court of Appeals."

On October 31, 2018, this Court denied the City's motion to amend. (Dkt. 659.) Thus, by October 31, 2018, the only pending motions challenging the August 1, 2018 Order were Lyon and Dillon's Rule 60(b)(1) motion for relief—a motion identified under Fed. R. App. P. 4(a)(4)—and Wright's Local Rule 7.1(h) motion for reconsideration—a motion not identified under Fed. R. App. P. 4(a)(4).

On November 9, 2018, Lyon and Dillon withdrew their Rule 60(b)(1) motion, completing the transfer of jurisdiction to the Sixth Circuit. (Dkt. 668.) Later that same day, this Court entered an order vacating its August 1, 2018 Order. (Dkt. 670.)

On November 13, 2018, the Sixth Circuit Court of Appeals issued a second letter in No. 18-1983 recognizing that Lyon and Dillon's Rule 60(b) motion had been withdrawn and that the Sixth Circuit had jurisdiction to review the appeal.

**I. State Defendants object to the Court's Order Regarding Pending Motion to Amend (Dkt. 714) because jurisdiction has transferred to the Sixth Circuit Court of Appeals.**

State Defendants respectfully object to this Court's Order (and to the Court's approach to resolving the motions to dismiss and motion to amend) because jurisdiction transferred to the Sixth Circuit the

moment Lyon and Dillon withdrew their Rule 60(b)(1) motion—the only pending motion listed in Fed. R. App. P. 4(a)(4)(A).

This jurisdictional issue is currently before the Sixth Circuit on Plaintiffs' motions to dismiss the appeal and amended appeal in Nos. 18-1983 and 18-2395. This Court should not move forward until the Sixth Circuit renders it ruling on this issue.

II. **As in *Guertin,* Plaintiffs' bodily-integrity claim allegations against Snyder, Dillon, and Lyon lack the requisite "conscience-shocking" conduct and must be dismissed.**

In *Guertin,* the Sixth Circuit held that establishing a bodily-integrity claim requires a showing that a particular government official's conduct is "conscience shocking," which is a "particularly high hurdle, for plaintiffs must show the government officials knew of facts from which they could infer a substantial risk of serious harm, that they did infer it, and that they acted with indifference toward the individual's rights." No. 17-1698, 2019 WL 99088, at *10 (citing *Range v. Douglas*, 763 F.3d 573, 591 (6th Cir. 2014) (internal quotation marks omitted)). Context is important. *Id.* at *7. What "shocks in one environment may not be so patently egregious in another," therefore, "preserving the constitutional proportions of substantive due process

5

demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id.*

In the context of Flint water, the conscience-shocking conduct identified by the Sixth Circuit consisted of two integral parts: 1) distributing Flint River water "knowing it was unsafe for public use" and "without taking steps to counter its problems"; and 2) "assuring the public in the meantime that [the water] was safe." *Id.* at *16.

Plaintiffs do not allege that Defendants Snyder, Dillon, and Lyon had any involvement with water treatment decisions, much less the decision to distribute water knowing it was not properly treated and was unsafe. Nor do Plaintiffs allege that these Defendants falsely assured the public that the water was safe.

### A. The allegations against former Governor Snyder do not show conscience-shocking conduct.

The allegations against former Governor Snyder center on his role in approving the City of Flint's decision to switch water sources from DWSD to the KWA. (Dkt. 620-3, ¶¶101, 104, 107, 114, 115, 116, 117, 118.) Even when viewed in a light most favorable to Plaintiffs, these allegations reveal that the former Governor did not approve the switch

6

to the KWA flippantly. Indeed, assuming Plaintiffs' version of the facts are true (as we must at this stage in the litigation, but only for those allegations that meet pleading standards), former Governor Snyder went so far as instructing DWSD "to submit an additional offer to continue as Flint's water provider," and not until that final offer was rejected by the City did the former Governor approve the switch to the KWA. (*Id.* at ¶115.)

The allegations regarding use of the Flint River as an interim water source contend only that former Governor Snyder had knowledge that the Flint River would be used as an interim source when he approved the KWA and that treatment would require millions of dollars of upgrades to Flint's water treatment plant. (Dkt. 620-3, ¶¶119, 479.) Plaintiffs rely on a timeline prepared by the former Governor's office in 2016 in an attempt to show that Snyder knew in 2013 that the Flint River would be used as an interim source. (*Id.* at ¶123.) That timeline cannot establish what former Governor Snyder knew in 2013. (*Walters v. City of Flint*, No. 17-10164, Dkt. 195 (E.D. Mich. January 15, 2019) State Defendants' Motion for Sanctions Under Rule 11, Pg.ID #5766–69.) Plaintiffs have absolutely no support for this assertion despite the

7

hundreds of thousands of pages of documents produced by the State, the numerous depositions taken by Plaintiffs' lawyers, and extensive testimony provided to the House Oversight Committee. But even assuming that the former Governor knew the Flint River would be used as an interim source when he signed off on the KWA in 2013, and even assuming that he knew Flint's water treatment plant would need significant upgrades to properly treat Flint River water, nothing in the proposed amended complaint shows that the former Governor was aware that such upgrades were never completed. Nor do Plaintiffs allege that the former Governor knew that the water was not being properly treated or that the treatment was not effective. Plaintiffs also make no allegation that former Governor Snyder knew that water was distributed despite knowing it was unsafe.

Plaintiffs also do not allege that former Governor Snyder made any false statements to the public regarding the water's safety (or that he instructed anyone else to provide such false assurances). Instead, Plaintiffs allege that "Governor Snyder's Administration continued to issue statements that misleadingly, and dangerously, downplayed the public health threat of consuming Flint Water until January 5, 2016

8

(for lead) and January 13 (for *legionella*)." (Dkt. 620-3, ¶297.) It is unclear exactly who in the administration Plaintiffs reference in this paragraph (or why Plaintiffs would still be so vague after multiple amendments), but in any event, it is well settled that former Governor Snyder cannot be held liable under § 1983 for allegedly false statements made by other state officials. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982) (Section 1983 liability must be based on more than *respondeat superior*, or the right to control employees.)

Finally, in *Guertin,* the Sixth Circuit reiterated that "the Due Process Clause is a limitation only on government action." No. 17-1698, 2019 WL 99088, at *12 (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989)). To the extent Plaintiffs' bodily-integrity claim relies on the timeliness of Snyder's declaration of emergency in Flint, it must be dismissed. Plaintiffs have not shown that he caused the alleged emergency, and any alleged inaction in declaring a state of emergency, even if true, cannot establish a due process violation.

9

### B. Defendant Dillon's role in approving the City of Flint's decision to switch to the KWA does not shock the conscience.

The same holds true for former State Treasurer Dillon. Taken as true, Plaintiffs' allegations show that Dillon went to great lengths to analyze the financial soundness of Flint's decision to leave DWSD in favor of the KWA, going as far as hiring an independent engineering firm to conduct a cost comparison. (Dkt. 620-3, ¶104.) But as with former Governor Snyder, the allegations against Dillon end with alleging that he knew the Flint River would be used as an interim source when approving the KWA and that treatment would require millions in upgrades. (Dkt. 620-3, ¶¶119, 479.) There are no allegations that Dillon knew the water treatment plant would not undergo the needed upgrades. Nor do Plaintiffs allege Dillon had any involvement in the water treatment decisions that were made following his approval of Flint's decision to switch to the KWA. Further, there are no allegations that he knew the water would be distributed without proper treatment, or that unsafe water was knowingly distributed to Flint residents. And there are no allegations that he made any false public statements about the water's safety. In fact, there are no

10

allegations involving Dillon after June 2013, which is not surprising since his role was limited to approving Flint's decision to switch to the KWA, and he left office in October 2013.

Finally, the allegations regarding Dillon being part of a group of people who "decided that the people of Flint would receive its drinking water from the Flint River and that the out-county residents would continue to receive water directly from DWSD" are wholly without support. (Dkt. 620-3, ¶135.) These "chimerical," "bare assertions" are of the same ilk as those rejected by the Sixth Circuit in *Guertin*. No. 17-1698, 2019 WL 99088 at *n.8.

### C. As in *Guertin*, Defendant Lyon's alleged conduct does not shock the conscience.

Finally, as with Defendants Snyder and Dillon, the allegations against former MDHHS Director Nick Lyon do not shock the conscience. Plaintiffs make the same "chimerical," "bare assertions" regarding Lyon's efforts to discredit Dr. Hannah-Attisha's research as were made by the plaintiffs in *Guertin*. (Dkt. 620-3, ¶281.) The Sixth Circuit rejected any assertion that Lyon conspired to discredit Dr. Hannah-Attisha or otherwise conspire to hide information. *Guertin,* No. 17-

11

1698, 2019 WL 99088 at *n.8. Nothing in the proposed amended complaint warrants a different conclusion here.

In addition, like the complaint in *Guertin,* the proposed amended complaint "sets forth no facts connecting Lyon…to the switch to the Flint River or the decision not to treat the water, and there is no allegation that [Lyon] took any action causing plaintiffs to consume the lead-contaminated water." *Id.* at *12. Instead, Plaintiffs here, like the plaintiffs in *Guertin,* allege only that Lyon failed to protect and notify the public, (Dkt. 620-3, ¶276–278), which is insufficient to establish a due process violation. *Id.* (citing *DeShaney,* 489 U.S. at 195.)

Based on the Sixth Circuit's decision in *Guertin,* the bodily-integrity claim against Defendants Snyder, Dillon, and Lyon must be dismissed because none of the conduct alleged even approaches the high hurdle set forth by the shocks-the-conscience standard.

### III. Plaintiffs' official-capacity claims against Governor Whitmer should be dismissed because they are barred by Eleventh Amendment immunity and fail to state a claim.

Fed. R. Civ. P. 25(d) provides that when a party in an action ceases to hold office, the officer's "successor is automatically substituted

12

as a party." Accordingly, Plaintiffs' official-capacity claims against former Governor Snyder are now against Governor Whitmer.[1]

These official-capacity claims must be dismissed because they are barred by Eleventh Amendment immunity. The Eleventh Amendment completely bars damages claims—brought under either federal or state law—against state officials sued in their official capacities. *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 71 (1989); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 119–121 (1984).

Further, prospective, injunctive relief is unavailable on these official-capacity claims because Plaintiffs have not alleged an ongoing violation of federal law by Governor Witmer. *See Mayor of City of Philadelphia v. Educational Equality League,* 415 U.S. 605, 622–23 (1974) (where public official was substituted as a party after predecessor left office, injunctive relief against successor was unavailable absent an indication that she would continue the alleged unconstitutional practices); *Spomer v. Littleton*, 414 U.S. 514, 522–23

---

[1] Notably, if Plaintiffs are seeking damages against the State based on the individual-capacity claims against Snyder, Lyon, or Dillon, then these claims are likewise barred by the Eleventh Amendment because the State is the real party in interest. *E.g., Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 462 (1945).

13

(1974) (remanding to court of appeals for a determination whether the former dispute regarding the availability of injunctive relief against a state official was now moot because new state official was elected, and plaintiffs had not alleged that new official intended to continue the same conduct).

Accordingly, Plaintiffs' official-capacity claims against Governor Whitmer must be dismissed.

## CONCLUSION

State Defendants object to the Court proceeding on Plaintiffs' motion to amend and defendants' motions to dismiss for want of jurisdiction. But if the Sixth Circuit determines this Court has jurisdiction, this Court should dismiss the bodily-integrity claims against Defendants Snyder, Dillon, and Lyon because the conduct alleged does not shock the conscience. In addition, the official-capacity claims against Governor Whitmer must be dismissed as barred by the Eleventh Amendment.

Respectfully submitted,

/s/ *Margaret A. Bettenhausen*

| | |
|---|---|
| Eugene Driker (P12959) | Richard S. Kuhl (P42042) |
| Morley Witus (P30895) | Margaret A. Bettenhausen (P75046) |
| Todd R. Mendel (P55447) | Nathan A. Gambill (P75506) |
| Attorneys for former Governor Richard D. Snyder | Zachary C. Larsen (P72189) Assistant Attorneys General |
| Barris, Sott, Denn & Driker, PLLC | Environment, Natural Resources, and Agriculture Division |
| 333 W. Fort Street, Suite 1200 | Attorneys for State Defendants |
| Detroit, MI 48226 | P.O. Box 30755 |
| (313) 965-9725 | Lansing, MI 48909 |
| edriker@bsdd.com | (517) 373-7540 |
| mwitus@bsdd.com | kuhlr@michigan.gov |
| tmendel@bsdd.com | bettenhausenm@michigan.gov |
| | gambilln@michigan.gov |
| | larsenz@michigan.gov |

Dated: January 22, 2019

15

# CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

| | |
|---|---|
| | */s/Margaret A. Bettenhausen* |
| Eugene Driker (P12959) | Richard S. Kuhl (P42042) |
| Morley Witus (P30895) | Margaret A. Bettenhausen (P75046) |
| Todd R. Mendel (P55447) | Nathan A. Gambill (P75506) |
| Attorneys for former Governor Richard D. Snyder | Zachary C. Larsen (P72189) Assistant Attorneys General |
| Barris, Sott, Denn & Driker, PLLC | Environment, Natural Resources, and Agriculture Division |
| 333 W. Fort Street, Suite 1200 | Attorneys for State Defendants |
| Detroit, MI 48226 | P.O. Box 30755 |
| (313) 965-9725 | Lansing, MI 48909 |
| edriker@bsdd.com | (517) 373-7540 |
| mwitus@bsdd.com | kuhlr@michigan.gov |
| tmendel@bsdd.com | bettenhausenm@michigan.gov |
| | gambilln@michigan.gov |
| | larsenz@michigan.gov |