UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FLINT WATER CASES

Civil Action No. 5:16-cv-10444-JEL-MKM (consolidated)

Hon. Judith E. Levy
Mag. Mona K. Majzoub

**FIRST INTERIM REPORT OF THE SPECIAL MASTER
REGARDING DATA COMPILATION BASED ON RESPONSES
TO THE AMENDED ORDER REGARDING COLLECTION OF DATA**

The Court's Amended Order Regarding the Collection of Data (Dkt. 673) ("Order") requires that Reporting Counsel provide certain specified claims data to the Special Master. Specifically, the Order states that Reporting Counsel:

> provide the data specified herein and in the data collection instrument ("Census Template") (attached as Exhibit A in Dkt. 614) for: (a) all plaintiffs who are named in any case included in In re Flint Water Cases; (b) all named plaintiffs in any case pending in the Eastern District of Michigan asserting claims of injury or damage resulting from the Flint water contamination; (c) all named plaintiffs in any action pending in Genesee County Circuit Court or the Michigan Court of Claims asserting injury or damage resulting from the Flint Water contamination; and (d) all persons (including entities) who have entered into an engagement or retainer agreement with a Reporting Counsel with respect to the Flint water contamination but who have not yet filed any action.

Order at 7. The Order further specifies:

> Reporting Counsel shall provide the information identified in the Census Template for each "injured party" subject to this Order. To

> assure that the information is provided in a consistent and usable format, Reporting Counsel shall provide the information using an excel version of the Census Template that the Special Master will provide to counsel. If Reporting Counsel maintain data in a format that is not readily transferred to an Excel format, then Reporting Counsel shall propose an alternative format provided that the same information categories are included and that the data is compiled in an electronic format (such as a database).

*Id.* at 8. The Census Template, in PDF format, is attached at Exhibit A. The Order further states:

> If more than one firm represents a plaintiff or prospective plaintiff, counsel shall designate one firm as the Reporting Counsel. All counsel representing plaintiffs in this proceeding shall be responsible for ensuring that all claims relating to the Flint water contamination are registered in accordance with this Order and shall coordinate with Reporting Counsel to avoid submission of the same claim by multiple counsel.

*Id.* at 8. Additionally, the Order provides that the Special Master "will establish a secure FTP or similar site and Reporting Counsel shall post the reports to that site." *Id.* at 9.

## PROCESS AND RESULTS

The Special Master established a secure site for each law firm that submitted claim data. Only the designated law firm and the Special Master have access to the law firm's site. The Special Master created and circulated an electronic data collection template to enable the firms to compile data in a uniform format. As of

December 28, 2018, nine law firms had provided claim data. (One firm provided updated claim data in January 2019, and three firms provided updated claim data in February 2019. Two additional firms provided data in February 2019. The new and updated submissions made in February 2019 are not reflected in the counts discussed in this First Interim Report.)[1]

The Special Master has compiled and analyzed the data and has provided to each Reporting Counsel a report confirming the data received and outlining certain questions and requesting, in some cases, clarifications, updates or additional data. The Order provides that Reporting Counsel are to provide updated data at 45-day intervals. The Special Master will work with the Reporting Counsel to address any issues and to obtain information relevant to a full understanding of the claim data.

## SUMMARY OF AGGREGATE CLAIM DATA

Data provided by Reporting Counsel identified a total of 26,664 injured party records.[2] (The Census Template requested identification by injured party rather than by case in order to obtain a count of individual plaintiffs/claimants.)

---

[1] The firms submitting data as of December 28, 2018 were: Berezofsky Law Group, LLC; Cuker Law Firm, LLC; Goodman, Hurwitz & James, P.C.; Levy Konigsberg LLP; Marc J. Bern & Partners LLP; Napoli Shkolnik PLLC; Pitt McGehee Palmer & Rivers P.C.; The Sanders Law Firm, PC; and Sawin Law Firm, Ltd.

[2] The use of the term "injured party" in this First Interim Report is simply a term of convenience to indicate a person's assertion of claims of injury or damage from alleged contaminant exposure and should not be construed as any finding, conclusion or determination of any injury, damage or contaminant exposure by any specific person.

The Special Master has identified 3,021 injured party records that appear to be duplicates. That is, there are 3,021 records where the first and last name and date of birth match another record. Some of these apparent duplicates appear within the data submission of a single Reporting Counsel and other apparent duplicates appear in multiple Reporting Counsels' submissions. In the former case, the duplication in some cases may be submission of multiple "claims" for the same claimant as two separate injured parties listed on the report (*e.g.*, both as a property owner and individual claim), while in other cases the records may simply be duplication of the same claim. The Special Master has provided each Reporting Counsel with a list of all apparent duplicate injured parties and will work with the Reporting Counsel to determine the appropriate treatment of each such injured party for purposes of determining the aggregate number of individual parties as of the date of the data submission. Generally, however, it is reasonable to assume that the total number of non-duplicate injured parties identified in the data submitted to date is approximately 25,154 (26,664 minus one half of the potential duplicates).

Many submissions were missing information. Most importantly, there are 5,135 individuals identified as injured parties whose dates of birth were not provided in the submissions. Once the missing dates of birth are provided, the Special Master may identify additional duplicates. Additionally, of course, the dates of birth are important for determining the number of individual injured parties who are (or were

4

at the time of exposure) minors. As explained below, various records are missing certain dates or information about water or blood lead level testing.

In some cases, the data was provided in formats different than that requested in the Census Template. In order to provide this First Interim Report, the Special Master has (as much as feasible) reconciled and conformed the data. The numbers provided below are not adjusted to account for duplicate claims pending confirmation and are subject to further refinements and revisions as updates and clarifications are received from Reporting Counsel.

## INJURED PARTY AND CLAIM TYPES

The Census Template requested that claims be identified as an injured party type of either individual, business or other. The breakdown of injured party types identified in the submissions are set forth in the chart below.

| Injured Party Type | Grand Total |
|---|---|
| Individual | 26,009 |
| Property Owner | 583 |
| Business/Business Owner | 54 |
| Other | 3 |
| Blank | 15 |
| Total | 26,664 |

The Census Template asked for information on whether the claim type was for personal injury (PI), wrongful death (WD), property damage (PD), or a

combination thereof. The breakdown of claim types identified in the submissions are set forth in the chart below.

| Claim Type | |
|---|---:|
| PI and WD total | 23,943 |
| PI; BI; PI,ED[3] | 21,018 |
| PI and PD | 2,870 |
| WD; PI and WD | 30 |
| WD and PD | 25 |
| PD-only | 638 |
| Don't know/blanks | 2,083 |
| Total | 26,664 |

The Census Template requested information intended to determine whether claims of injury are based primarily on lead exposure or whether there are claims of injury due to exposure to other substances. The Census Template asked Reporting Counsel to describe the nature of the exposure or injury other than lead exposure. Based on the data submitted, it appears that this question was interpreted differently by Reporting Counsel and therefore it may be necessary to obtain clarification. For example, some firms listed the physical symptoms complained of; others listed allegations of toxic exposure; and some listed the type of claimant — such as a property owner or business owner. The various personal injury types identified in the submissions for claims identified in the data as personal injury or wrongful death

---

[3] "ED" was identified by Reporting Counsel as emotional distress.

are set forth in the chart below.

| Personal Injury Types *(consolidated)*[4] | Total |
|---|---|
| E-coli, TTHMs and other bacteria | 10,657 |
| Lead exposure (and others) | 8,008 |
| Residence/Family/Business | 3,570 |
| Hair loss/skin rash/irritation | 417 |
| PI | 164 |
| Legionella Exposure/Possible Legionella Exposure (and others) | 26 |
| Infectious disease (and other) | 15 |
| Gastro-Intestinal | 3 |
| "#N/A" | 415 |
| Blank | 668 |
| Total | 23,943 |

---

[4] The Special Master categorized the responses provided by Reporting Counsel into the chart categories as follows:
- *E-coli, TTHMs and other bacteria:* consists of responses of "e-coli, TTHMs and other bacteria."
- *Lead exposure (and others)*: includes "Lead + Other," "Lead+ Other," "lead," "Lead Exposure."
- *Residence/Family/Business:* includes "Business – Own," "Business – Rent," "Employee," "Family Member – Owner," "Family Member – Rent," "Former Residence – Owner," "Former Residence – Rent," "Former Residence Family Member – Owner," "Former Residence Family Member – Rent," "Residence – Own," "Residence – Rent," "Own."
- *Hair loss/skin rash/irritation*: includes "hair loss," "rash, hair loss," "skin irritation," "skin irritation, hair loss," "skin rash," "skin rash, hair loss," "skin rash/irritation," "Skin Rashes" "skin rashes, hair loss."
- *PI*: includes "PI."
- *Legionella Exposure/Possible Legionella Exposure (and others)*: includes "e. coli, TTHMs, Legionella, Pneumonia and other bacteria," "ID/possible legionella," "Lead Exposure and Possible Legionella Exposure," "Lead and Legionella Exposure," "Lead Exposure and Potential Leigonella Exposure," "Lead/Legionella + Other," "Legionella, e-coli, TTHMs and other bacteria," "Legionella/ID," "Possible Legionnares."
- *Infectious disease (and other):* includes "infectious disease," "hair loss, infectious disease," "skin rash, hair loss, infectious disease," "skin rash, hair loss, infectious disease," "skin rash, infectious disease."
- *Gastro-Intestinal*: includes "Gastro-Intestinal."
- *"#N/A":* consists of responses provided as "#N/A."
- *Blank:* consists of records that were blank (no response provided).

## AGE OF INJURED PARTIES

The following chart provides a breakdown of the age of injured parties for individuals for whom date of birth was provided as of year-end 2014.

| Injured Parties by Age as of Year End 2014[5] (No Adjustment for Duplicates) | |
|---|---|
| 6 or younger (DOBs 2008-2014) | 3,189 |
| 7-11 (DOBs 2003-2007) | 2,125 |
| 12-17 (DOBs 1997-2002) | 1,843 |
| *Subtotal under 18 (DOBs 1997-2014)* | *7,157* |
| Post 2014 DOBs (DOBs 2017-18) | 89 |
| Post 2014 DOBs (DOBs 2015-16) | 657 |
| *Subtotal under 18 between 2014-18 (DOBs 1997-2018)* | *7,903* |
| 18+ (DOBs pre-1997) | 12,989 |
| | |
| Total with DOBs | 20,892 |
| | |
| *Blank or invalid DOBs* | *5,135* |
| Grand Total | 26,027 |
| | |
| Business/Property Owner | 637 |
| | |
| Grand Total | 26,664 |

The following chart provides a breakdown of age groups as of year-end 2018.

---

[5] Age as of year-end 2014 and based on DOBs provided in data. No adjustment for potential duplicates.

| Injured Parties by Age as of Year End 2018[6] (No Adjustment for Duplicates) | |
|---|---|
| 6 or younger *(DOBs 2012-2018)* | 2,127 |
| 7-11 *(DOBs 2007-2011)* | 2,251 |
| 12-17 *(DOBs 2001-2006)* | 2,334 |
| *Subtotal under 18 (DOBs 2001-2018)* | *6,712* |
| 18+ *(DOBs pre-2001)* | 14,180 |
| | |
| Total with DOBs | 20,892 |
| | |
| *Blank or invalid DOBs* | *5,135* |
| Total | 26,027 |
| | |
| Business/Property Owner | 637 |
| | |
| Grand Total | 26,664 |

---

[6] Age as of year-end 2014 and based on DOBs provided in data. No adjustment for potential duplicates.

# WATER TESTING

A total of 6,419 injured parties reported having one or more water tests performed. In many cases, the dates of testing and results were not provided. The following chart provides a breakdown of dates of water testing based on the test that was first identified in the data.[7]

| Date of Water Test Performed | |
|---|---|
| Blank/Invalid | 1,565 |
| 2014 | 2 |
| 2015 | 220 |
| 2016 | 4,236 |
| 2017 | 339 |
| 2018 | 57 |
| Total | 6,419 |

The age of the individual injured parties as of year-end 2014 for those reporting that a water test was performed is summarized in the following chart.

---

[7] An addendum to the reporting sheet provided the opportunity to include additional testing dates and results. Dates of such additional tests are not reflected in this chart.

| Water Tests Performed: Injured Parties by Age as of Year End 2014 | |
|---|---|
| 6 or younger (DOBs 2008-2014) | 675 |
| 7-11 (DOBs 2003-2007) | 482 |
| 12-17 (DOBs 1997-2002) | 395 |
| *Subtotal under 18 (DOBs 1997-2014)* | *1,552* |
| Post 2014 DOBs (DOBs 2017-18) | 12 |
| Post 2014 DOBs (DOBs 2015-16) | 129 |
| *Subtotal under 18 between 2014-18 (DOBs 1997-2018)* | *1,693* |
| 18+ (DOBs pre-1997) | 3,426 |
| | |
| Total with DOBs | 5,119 |
| *Blank or invalid DOBs* | *1,058* |
| Total Non-Business/Property | **6,177** |
| *Business/Property Owners* | *242* |
| Total | **6,419** |

The Census Template also requested information on the results of the water testing. The Special Master is working with several Reporting Counsel to clarify and confirm the data that was received so that the Special Master can accurately report on this information.

11

## BLOOD LEAD LEVEL TESTING

A total of 4,035 injured parties report having one or more blood lead level tests performed. Again, in many cases the dates of testing and results were not provided. The age of the injured parties as of year-end 2014 for those reporting that a blood test was performed is summarized in the following chart.

| Blood Lead Level Testing: Injured Parties by Age as of Year End 2014 | |
|---|---:|
| 6 or younger (DOBs 2008-2014) | 1,231 |
| 7-11 (DOBs 2003-2007) | 761 |
| 12-17 (DOBs 1997-2002) | 396 |
| *Subtotal under 18 (DOBs 1997-2014)* | 2,388 |
| Post 2014 DOBS (DOBs 2017-18) | 8 |
| Post 2014 DOBS (DOBs 2015-16) | 215 |
| *Subtotal under 18 between 2014-18 (DOBs 1997-2018)* | 2,611 |
| 18+ (DOBs pre-1997) | 1,399 |
| | |
| Total with DOBs | 4,010 |
| | |
| *Blank or invalid DOBs* | 25 |
| | |
| Grand Total | 4,035 |

The Census Template also requested information on the results of the blood lead level testing. The Special Master is working with several Reporting Counsel to clarify and confirm the data that was received so that the Special Master can accurately report on this information.

12

## **COGNITIVE FUNCTION TESTING**

The data reflects 12 injured parties reported having a cognitive function test performed.


Date:  February 22, 2019                              */s/ Deborah E. Greenspan*

                                                      Deborah E. Greenspan
                                                      Special Master

## **CERTIFICATE OF SERVICE**

I certify that on February 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to attorneys of record.

Date: February 22, 2019						By: */s/ Deborah E. Greenspan*

Deborah E. Greenspan
Special Master