**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

In re FLINT WATER CASES

                                  Civil Action No. 5:16-cv-10444-JEL-MKM (consolidated)

                                  Hon. Judith E. Levy
                                  Mag. Mona K. Majzoub

_____

**CLASS PLAINTIFFS' RENEWED MOTION TO**
**APPOINT INTERIM SUBCLASS SETTLEMENT COUNSEL**

Pursuant to this Court's Order dated August 12, 2019 (ECF No. 918), Class Plaintiffs hereby submit a revised Motion to Appoint Interim Subclass Settlement Counsel. This Motion seeks appointment of the following individuals as Interim Subclass Settlement Counsel for the respective subclasses:

- Reed Colfax of Relman, Dane & Colfax PLLC, as counsel for the Children's Injury settlement subclass;

- Vincent J. Ward of Freedman, Boyd, Hollander, Goldberg, Urias & Ward, P.A., for the Adult Injury settlement subclass;

- Sarah R. London of Lieff Cabraser Heimann & Bernstein, LLP, as counsel for the Property Damage settlement subclass;

- Dennis C. Reich of Reich & Bintrock, LLP, as counsel for the Business Loss settlement subclass; and

1

- Seth R. Lesser of Klafter Olsen & Lesser LLP, as counsel for the
  Future Manifesting Injury settlement subclass.

Class Plaintiffs submit the attached memorandum in support of their motion.

Dated: August 15, 2019

Respectfully Submitted,

*/s/ Theodore J. Leopold*
Theodore J. Leopold
**COHEN MILSTEIN SELLERS
 & TOLL PLLC**
2925 PGA Boulevard
Suite 220
Palm Beach Gardens, FL 33410
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

Kit A. Pierson
Joseph M. Sellers
Emmy L. Levens
Jessica B. Weiner
**COHEN MILSTEIN SELLERS
& TOLL PLLC**
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
kpierson@cohenmilstein.com
jsellers@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street
Suite 5100

*/s/ Michael L. Pitt*
Michael L. Pitt
**PITT MCGEHEE PALMER &
RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150
Detroit, MI 48226
(313) 800-4170 Telephone
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
Katherine Peaslee
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com

Peretz Bronstein Shimon Yiftach
**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr. Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave. Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A. LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104 (734) 996-5620 Telephone deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG & ASSOCIATES PLLC**
2501 N. Saginaw St.

(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI 48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI 48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
jeblake@mcalpinelawfirm.com

Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

In re FLINT WATER CASES

Civil Action No. 5:16-cv-10444-JEL-MKM (consolidated)

Hon. Judith E. Levy
Mag. Mona K. Majzoub

_____


# MEMORANDUM IN SUPPORT OF
# CLASS PLAINTIFFS' RENEWED MOTION TO APPOINT
# INTERIM SUBCLASS SETTLEMENT COUNSEL

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Whether the Court should appoint the proposed counsel as Interim Subclass Settlement Counsel for the respective settlement subclasses in order to ensure independent representation of each subclass' interests, when the role of Interim Subclass Settlement Counsel will be limited solely to negotiating the allocation of any settlement amount and creating a distribution plan for the respective subclass – while Co-Lead Class Counsel will remain responsible for guiding the action on behalf of all Class members and will work closely with Interim Subclass Settlement Counsel to provide information, resources, and support.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

Federal Rule of Civil Procedure 23(g)

## SUMMARY OF THE MOTION

Class Plaintiffs propose to appoint five experienced, diverse, independent, and dedicated attorneys to serve as Interim Subclass Settlement Counsel ("Subclass Settlement Counsel") to protect the interests of certain subsets of the Class should a global settlement be reached. The proposed Subclass Settlement Counsel are conflict free and have no agreements with any attorneys working on this case with respect to fees. They are all experienced in class actions as well as other forms of complex litigation, are familiar with this case, and are committed to serving the interests of their respective proposed settlement subclasses. Interim Co-Lead Class Counsel ("Class Counsel") are mindful of the concerns raised in the Court's July 31, 2019 Order Denying Motion to Appoint Interim Settlement Subclass Counsel, ECF No. 912, and believe that the individuals proposed herein satisfy—indeed, exceed—the criteria for appointment as class or subclass counsel.

## PROCEDURAL BACKGROUND

### I.    Class Counsel's Role To Date in this Litigation.

The consolidated amended class action complaint ("Complaint") in this matter includes claims on behalf of a proposed class comprised of all individuals and entities that, beginning on April 25, 2014, were exposed to toxic Flint water or who owned property in the City of Flint and experienced injuries and damages to their person or property. Fourth Amended Consolidated Complaint ¶¶ 448–49, 451–54

(ECF No. 620-3). The Complaint includes claims against both governmental and engineering defendants. In addition to the class action in this Court, Class Counsel are simultaneously pursing relief for Flint residents in other, related cases, including claims against the State of Michigan in the Michigan Court of Claims; claims against the U.S. EPA; and related state court litigation in Genesee County.

Class Counsel and their leadership team have been intensely involved in seeking relief relating to the Flint Water Crisis since the outset, and (along with their colleagues) have invested many thousands of hours into investigating the facts, developing the factual and legal theories that are most likely to result in a favorable outcome, identifying and working with experts to support their claims, briefing motions and appeals, and conducting discovery. Leopold Decl. ¶ 2. Throughout, Class Counsel have sought to work collaboratively with all the parties in this case including third parties, defense counsel, and Interim Liaison Counsel who are pursuing claims on behalf of individual clients. *Id.* ¶ 3. Class Counsel remain committed to continuing this collaborative working relationship in both the prosecution and potential settlement of this action. *Id.*

On January 16, 2018, the Court appointed the Honorable Pam Harwood and Senator Carl Levin to serve as mediators in this matter. ECF No. 324. Since their appointment, Class Plaintiffs have participated in several mediation sessions on behalf of the Class as a whole before Judge Harwood and Senator Levin, as well as

before the Court-appointed special master, Deborah Greenspan. Leopold Decl. ¶ 4. Because all members of the proposed Class (as well as the Individual Plaintiffs, who also have participated in the mediation process) have a common interest in maximizing the total amount of available relief, there was no risk of any intraclass conflict in conducting these negotiations on behalf of the Class as a whole. *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 630 (3d Cir. 1996), *aff'd sub. nom. Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).

## II. Co-Lead Class Counsel Have Proactively Sought to Ensure that All Members of the Class are Adequately Represented.

In contemplation of the possibility of reaching a settlement with some or all of the defendants, Class Counsel began assessing mechanisms for preventing the emergence of intractable intraclass conflicts. Leopold Decl. ¶ 5. Cognizant of the teachings of *Amchem*, 521 U.S. 591, 621–22 and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 864 (1999) and their progeny, Class Counsel understand that the failure to adequately address intraclass conflicts can unravel a class settlement. Based on those authorities—and recognizing that any settlement of this case would include several categories of claims and claimants—Class Counsel took the initiative, *before* reaching any agreement on a gross settlement amount, and thus before any intraclass conflict could emerge with respect to the allocation of any such settlement. Leopold Decl. ¶ 6.

On May 28, 2019, Class Counsel submitted a memorandum to Ms. Greenspan addressing these issues. *Id*. ¶ 7. In that memorandum, Class Counsel proposed appointing subclass settlement counsel to advocate for each category of claimants should a gross settlement be reached and an allocation process ensue. *Id*. As part of that proposal, Class Counsel also proposed the appointment of a third-party neutral to make decisions as to the allocation of any settlement. *Id*. This was in recognition of the fact that subclasses, while useful, do not eliminate "the importance of a structural inquiry to ensure that the preconditions for subsuming individual claims within a collective are met." Samuel Isaacharoff, *Governance and Legitimacy in the Law of Class Actions*, 1999 Sup. Ct. Rev. 337, 390 (1999).[1]

In July 2019, Class Counsel developed an initial proposed slate of independent subclass counsel drawn largely from members of the existing Executive Committee. Leopold Decl. ¶ 8. This was in line with ample precedent: Courts often appoint lawyers who were previously involved in managing a case on behalf of all claimants to be subclass counsel. For instance, in the recent settlement in *In re NFL Players' Concussion Litig.*, 307 F.R.D. 351, *aff'd*, 821 F.3d 410 (3d Cir. 2016), lawyers drawn from the existing steering committee were selected to serve as subclass counsel, which consisted of those players who had diagnosed injuries and

---

[1] Professor Issacharoff, one of the country's leading experts on complex litigation, class actions, and civil procedure, agreed to advise Class Counsel on best practices for ensuring the Class receives adequate representation.

those who did not but faced a risk of future injuries associated with their concussions. 821 F.3d at 429.

Because Class Counsel would retain responsibility for managing the overall class claims after the appointment of any subclass settlement counsel (including, critically, the continued prosecution of the class claims towards trial if settlement discussions proved unsuccessful), and because the members of the Executive Committee are familiar with the issues in the case, Class Counsel hoped to assemble a slate drawn from the existing leadership team. Leopold Decl. ¶ 8. This proposal was consistent with the general rule that "class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." 1 NEWBERG ON CLASS ACTIONS § 3:75 (5th ed.).

However, after discussions with the Special Master and with Individual Plaintiffs' Liaison Counsel, and following a telephonic status conference with the Court on July 16, 2019, Class Counsel concluded that the interests of the class and the subclasses would be better-served by a slate of wholly independent counsel who have subject-matter expertise that would be helpful in advocating on behalf of the various categories of claims at issue. Leopold Decl. ¶ 9. In light of the limited anticipated role of subclass settlement counsel, which Class Counsel anticipate will encompass only involvement in negotiating the *allocation* of any global *settlement*

that might be reached and resulting distribution plan, Class Counsel focused on identifying independent attorneys with subject-matter expertise in related fields rather than counsel prepared to litigate the subclass's claims should a global settlement proved unsuccessful. *Id.* ¶ 10. The slate of proposed subclass counsel included in Class Counsel's July 29, 2019 motion reflected those considerations.

In its July 31, 2019 Order, the Court denied that motion. ECF No. 912. On August 12, 2019, this Court issued an order directing Co-Lead Class Counsel to submit a revised motion for the appointment of Interim Subclass Settlement Counsel by August 15, 2019. ECF No. 918. Class Counsel now provide the following proposal.

## **ARGUMENT**

### I.     **Relevant Legal Principles**

Since well before the Supreme Court's decisions in *Amchem* and *Ortiz*, and continuing in the years since, courts and litigants have struggled with the issue of how to ensure that class settlements in complex litigation best serve the interests of all class members. Together, the existing authorities demonstrate two principles that provide important background for consideration of Class Counsel's proposal for appointment of Interim Subclass Settlement Counsel:

*First*, complex cases like this one can be and often are litigated and settled as class actions. Although both Defendants and Individual Liaison Counsel have at

times suggested otherwise, there is nothing unusual about the fact that this case is proceeding as a class action, and a class action often provides the only viable mechanism for resolving a dispute of this magnitude for *all* its victims, many of which would not otherwise obtain redress.

*Second*, by both designating settlement subclasses represented by independent counsel *and* appointing a third-party neutral responsible for addressing the allocation of any settlement amongst the various categories of subclass claims and claimants, courts can maximize the prospects that a global resolution of class claims can be achieved that is fair, reasonable, and adequate—and will survive any objections and appeals—and ultimately result in justice for all members of the putative Class.

Courts have employed various means of guarding against potential intraclass conflicts. For instance, some courts have held that the designation of independent subclass counsel is necessary to avoid such conflicts. In *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242 (2d Cir. 2011), class counsel negotiated the settlement of three separate categories of copyright claims without designating subclasses to advocate for the relative strength of each claim, and the settlement did not include any other mechanism to ensure that the settlement proceeds were allocated fairly amongst the three categories of claims. *Id.* at 249–51. The appellate court reversed certification of the settlement class, holding that "[o]nly the creation of subclasses, *with independent counsel for each subclass*, can

7

ensure that the interests of that particular subgroup are in fact adequately represented." *Id.* at 252 (emphasis added).

Similarly, in *In re Payment Intercharge Fee and Merchant Discount Antitrust Litigation*, 827 F.3d 223 (2d Cir. 2016), the Court overturned the approval of a $7.25 billion antitrust settlement because of "fundamental" conflicts between class members seeking injunctive relief and class members seeking only damages. *Id.* at 233–35. In negotiating the settlement, class counsel in that case had not sought to designate subclass counsel. After remand, the district court subsequently preliminarily approved a revised settlement agreement that was negotiated after independent subclass settlement counsel was appointed for the injunctive relief claimants, with the existing co-lead counsel for the entire class serving as lead counsel for the damages subclass. *In re Payment Intercharge Fee and Merchant Discount Antitrust Litigation*, 330 F.R.D. 11, 31 (E.D.N.Y. 2019).

In other cases, courts have determined that different mechanisms adequately addressed the need to ensure the fair allocation of settlement proceeds amongst multiple categories of claimants. Thus, for instance, in *In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014), the court affirmed the district court's approval of the settlement of all claims for property damage and economic loss arising from a massive oil spill in the Gulf of Mexico. As part of the settlement, a neutral claims administrator was appointed to administer the claims process and determine the

relative value of the various categories of claims. *Id.* at 796. Despite the broad range of claims at issue (which included both current and potential future losses arising from claimants in four states, and at varying distances from the spill), the court concluded that subclasses were not necessary. Instead, the role of the neutral administrator in determining the value and allocation of the claims, together with the fact that the settlement was effectively "uncapped," supported the conclusion that there was not any "fundamental conflict" that required the appointment of subclass counsel. *Id.* at 813–14.

Importantly, courts have in numerous cases rejected the contention that a potential intraclass conflict prevented representation of a single, unified class. *See infra*. Subclasses, therefore, are but one means of addressing intraclass conflict, and are required only when the conflict at issue is truly fundamental to the litigation, as opposed to merely possible or hypothetical. *In re Deepwater Horizon*, 739 F.3d at 813 ("Although the creation of subclasses is sometimes necessary under Rule 23(a)(4) to avoid a 'fundamental conflict,' there is no need to create subclasses to accommodate every instance of 'differently weighted interests.'" (quoting *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 186 (3d Cir. 2012)); *Sibley v. Sprint Nextel Corporation*, 2018 WL 3145402, at *4 (D. Kan. 2018) ("A 'fundamental' intra-class conflict of interest requires subclassification and separate counsel for each subclass.").

Notably, the sort of "fundamental conflicts" typically giving rise to the need for subclasses—such as, for instance, when class members seek different types of relief (as in *In re Payment Intercharge*), or when the same conduct that harmed some claimants benefited others (*see Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988))—are not present in this case. Rather, the potential "conflict" here centers on the manner of determining allocation of a potentially limited fund amount for claimants with varying claims and varying damages. Assertions of potential conflict based solely on distribution of a limited fund are "usually rejected by courts" on the basis that recognizing such a conflict as preclusive of adequate representation "would, in effect, prevent the certification of all Rule 23(b)(1)(B) limited fund class actions." 1 NEWBERG ON CLASS ACTIONS § 3:61 (5th ed.).

Here, however, to best protect the interests of the Class, Class Counsel propose to adopt an additional mechanism for protecting Class members' interests: the appointment of independent subclass settlement counsel, and further present the possibility of using a neutral to approve any allocation of a Class settlement. The focus of this motion is on the appointment of Subclass Settlement Counsel, though Class Plaintiffs provide some discussion of the potential role of a neutral at the conclusion of this memorandum—a discussion Class Plaintiffs can expand upon should the Court have additional questions.

## II.    The Proposed Subclass Settlement Counsel Satisfy Rule 23's Requirements and will Ably Represent the Subclasses in Settlement Negotiations.

Class Counsel respectfully submit this revised proposal for the designation of subclasses and the appointment of subclass counsel.

When appointing subclass counsel a court must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* at 23(g)(1)(B).

Here, Class Counsel propose Subclass Settlement Counsel to serve *solely* for the limited purpose of negotiating settlement allocation and a distribution plan on behalf of their respective subclass members. *See*, *e.g.*, NEWBERG ON CLASS ACTIONS § 10:9 (5th ed.) (explaining that in complex cases more elaborate leadership structures may be needed to fulfill different duties). Accordingly, Class Counsel have prioritized proposing Subclass Settlement Counsel with relevant legal experience and knowledge of the law, with an additional emphasis on identifying candidates who demonstrate a strong commitment to advocating vigorously on behalf of their respective subclasses. Class Counsel will continue to be responsible

for guiding this litigation forward. Class Counsel and Executive Committee members will provide any and all necessary background materials to Subclass Settlement Counsel, as well as access to the considerable resources and work-product generated in this case.

Class Counsel are cognizant that among the relevant considerations for appointment of subclass counsel is "the work counsel has done in identifying or investigating potential claims in the action." FED. R. CIV. P. 23(g), and note that in light of the history of this case and concerns previously expressed about conflict or the appearance of conflict, Class Counsel have intentionally proposed candidates who have not previously participated as counsel in this litigation.[2]

Class Counsel believe that given (1) the limited scope of the appointment sought, which consists *solely* of negotiating the allocation of any settlement amount and distribution plan on behalf of the respective settlement subclasses; (2) the fact that Class Counsel, the Court-appointed Executive Committee, the Court-appointed Liaison Counsel for the *Mason* State Court Class Action, and other counsel working

---

[2] While Rule 23(g)(1)(A) mandates that those factors be considered in appointing class or subclass counsel, courts recognize that not all factors are equally relevant in every case. *See*, *e.g.*, *In re Packaged Ice Litig.*, No. 08-MD-01952, 2009 WL 1518428, at *2 (E.D. Mich. June 1, 2009) (explaining that the work counsel had done to identify and investigate claims was less relevant because "most claims have been identified, and are being investigated for criminal violations by the Antitrust Division of the Department of Justice").

on behalf of the Class—all of whom have done considerable work to identify relevant claims—will continue to prosecute the Class's claims; and (3) the Supreme Court's dictate that subclasses must have "separate representation to eliminate conflicting interests of counsel," *Ortiz*, 527 U.S. at 856, appointing Subclass Settlement Counsel who have not had prior roles in this litigation best serves the subclass members' interests.

Class Counsel propose the following counsel to serve as Subclass Settlement Counsel for the respective subclasses:

**Reed Colfax** (Children's Injury):  Mr. Colfax has more than 20 years of legal experience focusing on civil rights litigation. Colfax Decl. ¶ 2. He is a partner at Relman, Dane & Colfax PLLC, a private civil rights-focused law firm in Washington, D.C., and has previously litigated civil rights and discrimination cases as an attorney with the NAACP Legal Defense Fund, Inc., and the Washington Lawyers' Committee for Civil Rights. *Id*. ¶¶ 1–2. Mr. Colfax is well situated to advocate on behalf of the Children's Injury settlement subclass, having previously been appointed as class counsel for the purpose of effectuating settlement in *In re Black Farmers Discrimination*, 820 F. Supp. 2d 78, 80 (D.D.C. 2011), which involved complex settlement allocation issues. He helped achieve a $35 million settlement on behalf of plaintiffs in that matter. *Id*. ¶ 3. In addition to negotiating significant settlements for clients, *id*. ¶ 4, Mr. Colfax has also litigated cases to

successful verdicts, including serving as lead counsel in *Kennedy v. City of Zanesville,* S.D. Ohio No. 2:03-cv-1047, a 67-plaintiff challenge to the City of Zanesville, Ohio, and Muskingum County's decades-long refusal to provide water services to a predominantly African-American community, *id.* ¶ 3. The case culminated in a $10.8 million verdict for the plaintiffs. *Id.* As a consequence of his work, Mr. Colfax has previously been named a finalist for the Trial Lawyer of the Year Award by the Public Justice Foundation. *Id*. ¶ 6.

**Vincent J. Ward** (Adult Injury): Mr. Ward is a partner at Freedman, Boyd, Hollander, Goldberg, Urias & Ward, which specializes in plaintiff-oriented litigation. Ward Decl. ¶ 1. Mr. Ward has extensive experience litigating and settling class action cases, including in, for instance, *Kleen Products LLC, et al., v. International Paper Co.,* Case No. 1:10-cv-05711 (N.D. Ill.) (class action brought on behalf of purchasers of corrugated paper products); *In Re: Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 2656 (N.D. Cal.) (class action brought on behalf of indirect purchasers of cathode ray tube televisions); and *In re Domestic Airlines Travel Antitrust Litigation*, MDL No. 2656 (D.D.C) (price fixing class action brought on behalf of purchasers of domestic airline tickets). *See id*. ¶ 3 (listing further examples).

A particular asset to this case, Mr. Ward's experience extends beyond the class context as he has extensive experience representing individuals in personal injury

actions, including in *Allen v. City of Grants*, Case No. D-1333-CV-2017-00225 (N.M. Thirteenth Judicial District) (catastrophic personal injury case brought on behalf of adult involved in automobile accident); *Otero v. Fuller Homes, et al.*, Case No. D-202-CV-2014-05288 (N.M. Second Judicial District) (catastrophic personal injury case brought on behalf of minor injured by construction negligence); and others. *Id.* ¶ 4.

Mr. Ward has additionally litigated numerous cases against governmental entities. *Id.* ¶ 5 (listing examples). In his cases against government entities, Mr. Ward draws on the expertise he developed working for both federal and state governments, including his appointment by the Obama Administration to serve as Senior Counselor to Solicitor Hilary Tompkins at the United States Department of Interior, where he counseled the Secretary, Deputy Secretary, Solicitor and other high-level officials on issues pertaining to civil litigation, including the Gulf Oil Spill response. *Id.* ¶ 6. Mr. Ward has repeatedly been recognized for the excellence of his work, and in 2017 he was awarded the National Bar Association's Wiley A. Branton Issues Symposium Award for Leadership on the Cutting Edge of Law for Civil, Social, and Economic Justice. *Id.* ¶ 7.

**Sarah R. London** (Property Damage): Ms. London is a partner at Lieff Cabraser Heimann & Bernstein, LLP, where her practice focuses on actions for personal injury and mass torts. London Decl. ¶ 1.

Ms. London has served as both lead trial counsel and class counsel and has significant experience in class actions on behalf of property owners, including serving as counsel on behalf of homeowner and business plaintiffs in *Southern California Gas Leak Cases*, JCCP No. 4861, two actions arising from the massive Porter Ranch gas leak in 2015 and 2016. *Id.* ¶ 3. Ms. London was also counsel in the litigation against Plains All American Pipeline arising out of the 2015 oil spill in Santa Barbara, *Andrews, et al. v. Plains All American Pipeline, et al.*, No. 2:15-cv-04113-PSG-JEM (C.D. Cal.). *Id.*

Ms. London has taken numerous cases to trial and understands the challenges of litigating a case through a verdict. *Id.* ¶ 4. She has similarly helped achieve substantial settlements on behalf of class plaintiffs: In *Meijer Inc. v. Abbott Laboratories*, Case No. 4:07-cv-05985 (N.D. Cal.), for instance, she was among the class counsel who obtained a $52 million settlement on behalf of a class of direct purchaser plaintiffs. *Id.* ¶ 5. She has experience with complex allocation issues, having allocated funds from a $100 million settlement to approximately 400 smokers and their families in personal injury and wrongful death claims against major cigarette manufacturers, achieving 100% participation in the settlement. *Id.* ¶ 6.

**Dennis Reich** (Business Loss): Mr. Reich, a founding partner of Reich & Bintrock, LLP, has over 40 years of legal experience and extensive experience in class actions including environmental mass tort cases. Reich Decl. ¶ 2. He served as

lead counsel in *Hayden v. Atochem North America, Inc*., No. H-92-1054 (S.D. Tex.), a property damage and medical monitoring action involving 10,000 residents and property owners exposed to arsenic in their residential soil, air and groundwater. *Id.* ¶ 3. Mr. Reich also negotiated a successful settlement as co-lead counsel in *Simms, Jr., et al. v. Amerada Hess Corporation*, et al; No. 93-5767-B (117th Judicial District Court of Nueces County, Texas), a class action alleging that twelve oil refining companies polluted the soil and groundwater on approximately 5,000 properties in Corpus Christi. *Id*. And as lead counsel in *Fisher v. Ciba Specialty Chemicals Corp*., 238 F.R.D. 273 (S.D. Ala. 2006), Mr. Reich negotiated a settlement on behalf of property owners alleging that Defendants contaminated their property with DDT. *Id.*

Mr. Reich has specific experience litigating against government entities, having helped obtain a settlement after the court certified a property damage class in *Adams et al, v. Texas Dept. of Transportation, et al* (239th Judicial District Court of Brazoria County Texas), in which Mr. Reich represented a class of property owners bringing reverse condemnation cases after their properties were flooded during the construction of Texas State Highway 288. *Id*. ¶ 5.

**Seth R. Lesser** (Future Manifesting Injury): Mr. Lesser, a partner with Klafter Olsen & Lesser LLP, has 31 years of experience, the vast majority of which was on behalf of plaintiffs in individual, class, collective, and mass tort cases. Lesser Decl. ¶¶ 1–2. Mr. Lesser is particularly well-suited to represent the Future Manifesting

Injury settlement subclass, having obtained the first certification under New York law for a medical monitoring class as part of the Fen/Phen diet drug litigation. *Id.* ¶ 3.

Mr. Lesser has served as lead counsel in numerous complex aggregate actions, including serving as lead or co-lead in multiple multidistrict litigation actions, including in MDL-1346 (*In re Amazon-Alexa*); MDL-1352 (*In re Doubleclick*); MDL-1708 (*In re Guidant Implantable Heart Devices*); MDL-1739 (*In re Grand Theft Auto Video Game Consumer Litigation*); MDL-1903 (*In re Pepsico, Inc. Bottled Water Sales Practices*); and MDL-2025 (*In re Staples, Inc. Wage & Hour Employment Practices Litig*.). *Id.* ¶ 3. Mr. Lesser has achieved substantial recoveries on behalf of his clients, including $240 million for the settlement of claims involving dangerous implantable heart devices *In re Guidant Implantable Heart Devices*, and winning a jury verdict of $5 million on behalf of 342 individual plaintiffs in *Stillman v. Staples, Inc*., No. 07-cv-849 (D.N.J.), which in turn led to a $42 million class nationwide settlement in MDL-2025. *Id.* ¶ 4. Mr. Lesser has successfully resolved numerous cases for amounts in excess of $10 million, including, for instance, *Perez v. Rent-A-Center, Inc.*, Civ. CAM-L-21-03 (Sup. Ct. N.J.) ($109.25 million) and, in

the last month, *Antipodean Domestic LP, v., Clovis Oncology Inc., et al.,* No. 655908/2016 (Sup. Ct. N.Y.) ($25 million). *Id.*[3]

District Judge McConnell characterized the settlement in *Nash v. CVS Caremark Corp.* as "magnificent" at the final approval hearing. Order Granting Final Approval, *Nash v. CVS Caremark Corp.*, No. 1:09-cv-00079 (D.R.I.). And in the court's final approval decision in *Craig v. Rite Aid Corp.*, for which Mr. Lesser served as lead counsel, the court stated that "[t]o say that Class Counsel vigorously prosecuted this action would be a gross understatement." No. 4:08-CV-2317, 2013 WL 84928, at *8 (M.D. Pa. Jan. 7, 2013).

\* \* \* \* \*

Each settlement subclass will have a designated representative who has claims within the relevant subclass category. Class Counsel have identified members of each subclass who have suffered harms representative of the respective settlement subclass members and who are willing to work with and be retained by Class Counsel's proposed Subclass Settlement Counsel should the Court appoint them. *See* Colfax Decl. ¶ 11; Ward Decl. ¶ 12; London Decl. ¶ 12; Reich Decl. ¶ 13; Lesser Decl. ¶ 15. The subclass representatives are willing to enter into retention

---

[3] *See also Nash v. CVS Caremark Corp.*, 1:09-cv-00079 (D.R.I.) ($34 million), *Craig v. Rite Aid Corp.*, 2013 U.S. Dist. LEXIS 2658 (M.D. Pa.) ($20.9 million), *Youngblood, et. al. v. Family Dollar Stores, Inc.*, No. 09-cv-3176 (S.D.N.Y.) ($14 million), and *Thorn v. Bob Evans*, No. 12-cv-768 (S.D. Ohio) ($16.5 million).

agreements with Interim Subclass Settlement Counsel once those counsel have been appointed.[4]

### III.   A Neutral Settlement Facilitator Would Provide Additional Procedural Protection for All Class Members.

In addition, Class Counsel believe the Hon. Layn R. Phillips (Ret.) would be well-suited to serve as a neutral settlement facilitator charged with addressing issues relating to the apportionment of any class settlement among the subclasses of plaintiffs. Judge Phillips previously served as a U.S. District Judge in the Western District of Oklahoma and is now a mediator in Newport Beach, California. Judge Phillips has mediated some of the most significant disputes in recent history, including the Michigan State University Sexual Abuse Cases, the NFL Concussion cases, and the Merck Vioxx Litigation. In *NFL Concussion* – in which he took on the same neutral settlement facilitator role as is contemplated here – the courts favorably cited Judge Phillips' efforts in developing a settlement structure that ensured structural fairness for the entire class and both subclasses, leading to

---

[4] To the extent the Court denies the appointment of any of the proposed Subclass Settlement Counsel, Class Counsel wanted to ensure that those attorneys did not retain continuing duties to those individuals.

Additionally, as requested by the Court, Class Counsel have identified highly qualified alternative subclass counsel candidates who are willing and able to serve as interim subclass settlement counsel in this litigation. In the event the Court denies appointment of one or more of Class Counsel's proposed subclass counsel, Class Counsel respectfully request the opportunity to present their alternative candidates for the Court's consideration.

approval of the settlement in both the District Court and on appeal to the Third Circuit. *See In re NFL Players' Concussion*, 307 F.R.D at 337. Counsel have inquired as to Judge Phillips' availability to serve a similar role in these cases and Judge Phillips has confirmed his availability and willingness to take on this role.

Although subclasses can be used to protect the interests of subsections of a class, it may be equally prudent to use a neutral third party to facilitate the fair allocation of a settlement as between the categories of claimants. In *NFL Concussion*, for instance, the district court concluded that the involvement of the Mediator (Judge Layn Phillips) and the special master in the allocation process "helped guarantee that the parties did not compromise some Class Members' claims in order to benefit other Class Members." 307 F.R.D at 377. Similarly, in *In re Phenylpropolamine (PPA) Products Liability Litig.*, 227 F.R.D. 553 (W.D. Wash. 2004), formal subclasses and class counsel were not appointed for each of the categories of claimants in a product liability case involving personal injuries. Instead, members of a steering committee negotiated the various claims categories under the supervision of a special master, and ultimately were able to agree upon a "matrix" governing the compensation that would be provided to each group. *Id*. at 556–57. The court approved the settlement after concluding that the matrix was the product of "intense, arm's length negotiations" before the special master. *Id.* at 562.

Indeed, numerous authorities support the use of a court-appointed neutral to ensure that settlements in large, complex cases are fairly allocated amongst the relevant categories of claimants. *See, e.g.,* CIV. LIT. MGMT. MANUAL VIII.C.2, 2001 WL 34686006 (noting that judges should "consider appointment of a special master to . . . allocate damages to individual litigants"); Mark G. Boyko, *The Role of Judges and Special Masters in Post-Settlement Claim Administration*, CPR Blog (June 16, 2006) *available at* http://www.cpradr.org/newspublications/articles/2006-06-16-the-role-of-judges-and-special-masters-in-post-settlementclaim-administration-mealeys (explaining that in both mass tort and class settlements, courts "frequently call for the appointment of a special master to develop a proposed plan of allocation of distribution of the Settlement Fund, employing open and equitable procedures to ensure fair consideration of all proposals for allocation and distribution.").[5] In some instances, courts have even *sua sponte* appointed a special master to make allocation decisions for the class. *See*, *e.g.*, *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1400 (E.D.N.Y. 1985), *aff'd in part, rev'd in part*, 818 F.2d 179 (2d Cir. 1987)

---

[5] *See also* § 22.91 MANUAL FOR COMPLEX LITIG. (4th ed.) (recognizing that courts have found "considerable success" in facilitating settlements by "appoint[ing] a special master to facilitate settlement by reviewing information on liability and damages and placing an estimated value on each claim."); 32B AM. JR. 2D FED. COURTS § 1783 (noting that following a determination regarding liability, "the court may employ the services of a special master in computing the individual damages awards to the class members").

(appointing a special master and requesting that the special master propose a method for allocating the settlement which was largely adopted by the Court).

This approach has been utilized by courts across the country[6] as well as right here in the Eastern District of Michigan. In a settlement that resembles this case in certain respects, *Lessard v. City of Allen Park*, 372 F. Supp. 2d 1007 (E.D. Mich. 2005), the court approved a class settlement between more than 10,000 plaintiff homeowners and defendant municipalities that allegedly caused the homeowners' basements to flood. *See id.* at 1013. The court had previously appointed a "Facilitator" (Eugene Driker) to oversee settlement negotiations. *Id.* at 1008–09. The original class settlement merely indicated how much each municipality would advance. *See Lessard v. City of Allen Park*, No. 00-74306, 2005 WL 5416767, at *1

---

[6] *See*, *e.g.*, *In re: General Motors LLC Ignition Switch Litig.*, No 14-xv-02714-JMF, ECF No. 155 (SDNY Dec. 11, 2015) (Parties' Memorandum of Understanding provided that two special masters be appointed to "create a Settlement Framework that identifies the criteria relevant to evaluation of claims." In accordance with the MOU the Court appointed the special masters); *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 167 (E.D.N.Y. 2000) (using subclasses and a special master to "develop a proposed plan of allocation and distribution of the Settlement Fund, to ensure fair consideration of all proposals for allocation and distribution."); *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 337 (S.D.N.Y. 2005), *aff'd in part, vacated in part, remanded sub nom. Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006) (case alleging a RICO conspiracy to enlist clients to enter into unlawful tax avoidance strategies, the court approved a class settlement which empowered a special master to make ultimate decisions about allocation); *Smith v. MCI Telecommunications Corp.*, No. CIV. A. 87-2110-EEO, 1993 WL 142006 (D. Kan. Apr. 28, 1993) (settlement of case seeking commissions owed to a putative class of telemarketers provided that a neutral would determine the allocation of the settlement among class members).

(E.D. Mich. Apr. 5, 2005). After settlement, a special master decided how much each claimant would be paid. *Lessard v. City of Allen Park*, 422 F. Supp. 2d 787, 790–92 (E.D. Mich. 2006).

Years after the underlying events in the present case became public the case continues to draw significant public attention. Many were hurt by the Flint Water Crisis and their desire for justice cannot be understated. Yet, as the Court is aware, the avenues for recovery in this matter present several challenges. Class Counsel believe that anything possible should be done to demonstrate the procedural fairness of a potential settlement and respectfully suggest that, in addition to the appointment of qualified Subclass Settlement Counsel, this may include use of a neutral facilitator to finalize the allocation of any Class Settlement—in addition to, of course, this Court's preliminary and final review of any settlement as required by Federal Rule of Civil Procedure 23.

## CONCLUSION

Class Counsel have continually sought to ensure this action proceeds fairly and in the best interests of all class members. This proposal for the appointment of Interim Subclass Settlement Counsel presents a further mechanism through which to ensure just resolution on behalf of all claimants in any potential settlement and is expressly designed to avoid even the appearance of potential conflict. Class Counsel thus respectfully request this Court appoint as Interim Settlement Subclass Counsel

Reed Colfax (Children's Injury), Vincent J. Ward (Adult Injury), Sarah R. London (Property Damage), Dennis Reich (Business Loss), and Seth Lesser (Future Manifesting Injury).

Dated: August 15, 2019

Respectfully submitted,

*/s/ Theodore J. Leopold*
Theodore J. Leopold
**COHEN MILSTEIN SELLERS & TOLL PLLC**
2925 PGA Boulevard
Suite 220
Palm Beach Gardens, FL 33410
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

*/s/ Michael L. Pitt*
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

*Interim Co-Lead Class Counsel*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on August 15, 2019.

Dated: August 15, 2019                    */s/ Katherine M. Peaslee*