# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re* **FLINT WATER CASES** | **Civil Action No. 5:16-cv-10444-JEL-MKM (consolidated)**<br><br>**Hon. Judith E. Levy**<br>**Mag. Mona K. Majzoub** |

## SECOND INTERIM REPORT OF THE SPECIAL MASTER REGARDING DATA COMPILATION BASED ON RESPONSES TO THE AMENDED ORDER REGARDING COLLECTION OF DATA

The Court's Amended Order Regarding the Collection of Data (Dkt. 673) ("Order") requires that Reporting Counsel provide certain specified claims data to the Special Master. Specifically, the Order states that Reporting Counsel:

> provide the data specified herein and in the data collection instrument ("Census Template") (attached as Exhibit A in Dkt. 614) for: (a) all plaintiffs who are named in any case included in In re Flint Water Cases; (b) all named plaintiffs in any case pending in the Eastern District of Michigan asserting claims of injury or damage resulting from the Flint water contamination; (c) all named plaintiffs in any action pending in Genesee County Circuit Court or the Michigan Court of Claims asserting injury or damage resulting from the Flint Water contamination; and (d) all persons (including entities) who have entered into an engagement or retainer agreement with a Reporting Counsel with respect to the Flint water contamination but who have not yet filed any action.

Order at 7. The Order further specifies:

> Reporting Counsel shall provide the information identified in the Census Template for each "injured party" subject to this Order. To

1

assure that the information is provided in a consistent and usable format, Reporting Counsel shall provide the information using an excel version of the Census Template that the Special Master will provide to counsel. If Reporting Counsel maintain data in a format that is not readily transferred to an Excel format, then Reporting Counsel shall propose an alternative format provided that the same information categories are included and that the data is compiled in an electronic format (such as a database).

*Id.* at 8.  The Order further states:

If more than one firm represents a plaintiff or prospective plaintiff, counsel shall designate one firm as the Reporting Counsel. All counsel representing plaintiffs in this proceeding shall be responsible for ensuring that all claims relating to the Flint water contamination are registered in accordance with this Order and shall coordinate with Reporting Counsel to avoid submission of the same claim by multiple counsel.

*Id.* at 8.  Additionally, the Order provides that the Special Master "will establish a secure FTP or similar site and Reporting Counsel shall post the reports to that site."

*Id.* at 9.

## <u>PROCESS AND RESULTS</u>

The Special Master established a secure site for each law firm that submitted claim data.  Only the designated law firm and the Special Master have access to the law firm's site.  The Special Master created and circulated an electronic data collection template to enable the firms to compile data in a uniform format.  As of

the date of this report, twelve law firms have provided claim data, and many firms have provided updates to their original submissions.[1]

The Special Master has continued to compile and analyze the data as more firms have submitted data and as Reporting Counsel have provided updates and/or additional data. The Order provides that Reporting Counsel are to provide updated data at 45-day intervals. The Special Master will continue to work with the Reporting Counsel to address any issues and to obtain information relevant to a full understanding of the claim data.

As explained below, the estimated total number of injured parties[2] who have retained counsel (after accounting for duplicates) is 17,720. This total is 7,434 less than the number stated in the First Interim Report for two reasons: first, I have identified a larger number of potential duplicate injured parties and second, I have

---

[1] The firms submitting data are: Motley Rice, LLC (previously by Berezofsky Law Group, LLC); Cuker Law Firm, LLC; Goodman, Hurwitz & James, P.C.; Levy Konigsberg LLP; Marc J. Bern & Partners LLP; Napoli Shkolnik PLLC; Pitt McGehee Palmer & Rivers P.C.; The Sanders Law Firm, PC; Sawin Law Firm, Ltd.; The Fieger Law Firm; Valdemar L. Washington PLLC; and McAlpine PC. The information summarized in this Second Interim Report reflects data received from Reporting Counsel as of August 31, 2019 (with the exception of one update for which the Special Master is working with Reporting Counsel (Pitt McGehee) to clarify and reconcile).

[2] The use of the term "injured party" in this Second Interim Report is simply a term of convenience to indicate a person's assertion of claims of injury or damage from alleged contaminant exposure and should not be construed as any finding, conclusion or determination of any injury, damage or contaminant exposure by any specific person.

removed from the total injured parties those who, based on updated data, have been identified as "contacts" rather than retained clients.

## SUMMARY OF AGGREGATE CLAIM DATA

Data provided by Reporting Counsel identified a total of 30,948 injured party records, including 11,321 records that Reporting Counsel have identified as non-client contacts (referred to herein as "additional contacts"). The total number of injured party records excluding the additional contacts is 19,627.[3] (The Census Template requested identification by injured party rather than by case in order to obtain a count of individual plaintiffs/claimants.)

The Special Master has identified 3,638 injured party records that appear to be duplicates among those who have retained counsel – meaning that the same injured party appears to be identified more than once in the lists of retained clients submitted by Reporting Counsel.[4] I have defined potential duplicates based on the

---

[3] This Second Interim Report divides the injured parties into two categories: those who have formally retained lawyers to represent them in litigation related to the Flint water matter and those who have contacted and provided information to lawyers but who, according to counsel, have not yet formally executed a retainer agreement. For purposes of the current Second Interim Report, the former category (those who retained lawyers) includes 904 injured parties who retained a former law firm of one Reporting Counsel but have not executed a retainer agreement with the Reporting Counsel's new law firm. The Special Master has also received lists of Notices of Intent that have been filed with the State. The Special Master is working with Reporting Counsel to confirm that these individuals have been included in the claim data submissions.

[4] This count does not include duplication among or with the additional contacts. Some of the potential duplicates identified (177) are a third or fourth matched record of two records already matched as potential duplicates.

following protocol: (i) electronic identification of any injured party record that shows the same first and last name and date of birth as another injured party record, and (ii) a *manual* review of records indicating likely duplication among any injured party record that matches another injured party record by: (a) last name and date of birth, (b) first name and date of birth, or (c) last name and first initial where one record had no date of birth.

Some of these apparent duplicates appear within the data submission of a single Reporting Counsel and other apparent duplicates appear in multiple Reporting Counsels' submissions. In the former case, the duplication of an injured party name in some instances results from submission of multiple "claims" for the same claimant as two separate injured parties listed on the report (*e.g.*, both as a property owner and individual claim, or as two property damage claims). The Special Master has provided Reporting Counsel with detailed and updated lists of apparent duplicate entries based on an analysis of updated and additional data received and has been receiving responses from Reporting Counsel, which will be used to reconcile and update the numbers referenced herein. The Special Master will continue to work with the Reporting Counsel to determine the appropriate treatment of each such injured party for purposes of confirming the aggregate number of individual parties as of the date of the data submission. Generally, however, it is reasonable to assume that the total number of non-duplicate injured parties (excluding additional contacts)

5

identified in the data is approximately 17,720 (19,627 minus one-half of 3,461 potential duplicates appearing twice and minus 177 potential duplicate records appearing a third (or more) time).[5]  The charts and tables in this Second Interim Report subtract only duplicate claims relevant to the particular table.

Many submissions were missing information.  The Special Master has worked with Reporting Counsel to identify such information, and many counsel have continued to supplement their submissions.   There are 1,744 individuals identified as (non-business type) injured parties who have retained counsel whose dates of birth were not provided in the submissions. There are an additional 5,345 individuals missing dates of birth among the additional contacts submitted to the Special Master. Once additional dates of birth are provided, the Special Master may identify additional duplicates.  Additionally, of course, the dates of birth are important for determining the number of individual injured parties who are (or were at the time of exposure) minors.

In some cases, the data was provided in formats different than that requested in the Census Template.  In order to provide this Second Interim Report, the Special Master has (as much as feasible) reconciled and conformed the data.  The following

---

[5]  The count of duplicates is based on the best available data.  Until Reporting Counsel confirm each duplicate and determine which record is the correct one, we assume all records identified as potential duplicates are in fact duplicates and we therefore reduce the counts accordingly for purposes of the aggregate count.

section of this Second Interim Report provides details on the categories of injured

parties.

# INJURED PARTY AND CLAIM TYPES

The Census Template requested that claims be identified as an injured party type of either individual, business or other.  The breakdown of injured party types identified in the submissions are set forth in the chart below.

| Injured Party Type[6] | | | | | |
|---|---|---|---|---|---|
| | Total With Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates of Same IP Type Identified Among Total Without Add'l Contacts | (c) Potential 3rd Duplicate Identified Among Total Without Add'l Contacts | (d) Total Without Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b) - (c)) |
| Individual | 26,678 | 18,981 | 2,710 | 101 | **17,525** |
| Property Owner | 590 | 590 | 2 | | **589** |
| Business/ Business Owner | 56 | 54 | 0 | | **54** |
| Other | 2 | 2 | 0 | | **2** |
| Blank | 3,622 | 0 | 0 | | **0** |
| **Total** *(adjusted for potential duplicates only within same IP type)* | **30,948** | **19,627** | **2,712** | **101** | **18,170** |

---

[6] Potential duplicates listed do not include duplication among or with the additional contacts.  This chart does not count as duplicates individual type claims that matched only to a business and/or property owner Injured Party Type record submitted by the same firm, or a business type claim matched only to an individual and/or property Injured Party type record submitted by the same firm, or a property type claim matched only to an individual and/or business Injured Party type record submitted by the same firm.  This chart thus counts 'claims' not claimants and a claimant might be counted in several categories in this chart. (If a Reporting Counsel identified an injured party but listed more than one claim type in a single injured party record, such claimants are counted once.)  There are a total of 17,720  unique injured parties in this chart.

The template requested counsel to identify the "injured party type" as individual, business or other, and to identify the "claim type" as personal injury, wrongful death, property damage, or a combination thereof.  One firm adopted "property owner" as an injured party type, and all such records listed the "claim type" as property damage.

The Census Template also requested information on whether the claim type was for personal injury (PI), wrongful death (WD), property damage (PD), or a combination thereof.  Some firms included a category "ED" – meaning emotional distress. The breakdown of claim types identified in the submissions are set forth in the chart below.

| Type of Claim[7] | | | | | |
|---|---|---|---|---|---|
| | Total With Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates of Same Claim Type Among Total w/o Add'l Contacts | (c) PI-only or PD-only Potential Duplicate Excluded Where a Matched PI-PD Record Kept, or Potential 3rd Duplicate Excluded | (d) Total Without Add'l Contacts Less Potential Duplicates (=(a) -1/2 (b) - (c)) |
| PI and WD subtotal | 25,342 | 17,643 | 1,838 | 349 | **16,375** |
| *PI; BI; PI,ED* | *19,042* | *13,825* | *1,565* | *342* | ***12,701*** |
| *PI and PD* | *6,232* | *3,750* | *273* | *7* | ***3,607*** |
| *WD; PI and WD* | *42* | *42* | *0* | *0* | ***42*** |
| *WD and PD* | *26* | *26* | *0* | *0* | ***26*** |
| PD-only | 810 | 810 | 34 | 72 | **721** |
| Don't know/blanks | 4,796 | 1,174 | 10 | 0 | **1,169** |
| **Total** *(adjusted for potential duplicates only within same Claim Type)* | **30,948** | **19,627** | **1,882** | **421** | **18,265** |

[7]  Potential duplicates listed do not include duplication among or with the additional contacts. Potential duplicates in this chart include only those where matched records were of the same claim type (*e.g.,* both PI or both PD).  In cases where one matched record was PI and the other was PI/PD, the PI/PD record was kept, and the PI-only record was excluded. Similarly, where one matched record was PD and the other was PI/PD, the PI/PD record was kept, and the PD-only record was excluded.  Claims are not counted as potential duplicates where one record was PD-only and the other PI-only, or where it appeared the same firm submitted multiple PD claims for different properties.  Records with blank or "don't know" claim types that matched to records with identified clam types are also not counted as duplicates in the chart above (there were 156 such potential matches).

The Census Template initially requested information intended to determine whether claims of injury are based primarily on lead exposure or whether there are claims of injury due to exposure to other substances.  Based on the data submitted, it appeared that this question was interpreted differently by Reporting Counsel.  For example, some firms listed the physical symptoms complained of; others listed allegations of toxic exposure; and some listed the type of claimant — such as a property owner or business owner.  The Special Master therefore requested that Reporting Counsel provide details on the category of personal injuries being alleged to the extent such information was not previously provided.  The Special Master has received injury information on 15,442 of 18,817 injured party records (18,817 is the total 19,627 records (exclusive of additional contacts and before reduction for duplication) less 810 records with a claim type of only property damage). The following chart provides a summary of the categories of personal injuries reflected in these submissions.

| Personal Injury Categories (excluding records with only property damage claim types)[8] | | | | |
|---|---|---|---|---|
| **Category** | **Total With Add'l Contacts** | **(a) Total Without Add'l Contacts** | **(b) Potential Duplicates** | **(C) Potential Third Duplicate Excluded** | **(d) Total Without Additional Contacts Less Potential Duplicates (= a - 1/2 (b) - (c))** |
| Lead exposure - child (based on water test results at residence or blood lead level tests) | 2,735 | 2,674 | 82 | 0 | **2,633** |
| Lead exposure – other[9] | 16,597 | 8,900 | 432 | 5 | **8,679** |
| Cognitive Impairment alleged to be a result of lead exposure | 2,637 | 1,583 | 30 | 0 | **1,568** |
| Legionella | 73 | 73 | 0 | 0 | **73** |
| Skin Rash/Irritation | 7,498 | 4,893 | 280 | 3 | **4,750** |
| Hair Loss | 2,539 | 1,362 | 24 | 0 | **1,350** |
| Respiratory Issues | 2,289 | 1,525 | 44 | 0 | **1,503** |
| Infectious Disease | 879 | 861 | 2 | 0 | **860** |
| Neurological | 3,725 | 1,678 | 24 | 0 | **1,666** |
| ADHD/Behavioral | 1,960 | 1,280 | 24 | 0 | **1,268** |
| Digestive/ gastrointestinal | 3,713 | 2,173 | 30 | 0 | **2,158** |
| Kidney disease | 672 | 672 | 4 | 0 | **670** |
| Headaches | 3,609 | 2,162 | 42 | 0 | **2,141** |
| High Blood Pressure | 3,176 | 3,176 | 90 | 0 | **3,131** |
| Emotional/ psychological | 12,534 | 4,835 | 136 | 2 | **4,765** |

---

[8]  Potential duplicates listed do not include duplication among or with the additional contacts. There are 3,375 injured parties who have retained counsel who did not provide injury information. There are 3,622 additional contact records that do not contain any injury information.  This chart identifies only the injury types that were on the designated list of injuries for data collection purposes. Injured parties are counted multiple times if multiple injury categories were reported.

[9]  The lead exposure–other category includes 4,027 claims of both adults and minors – some of which do have water or BLL test results – where the Reporting Counsel identified the injury only as "lead exposure."

## AGE OF INJURED PARTIES

The following chart provides a breakdown of the age of injured parties for individuals for whom date of birth was provided.

| Injured Parties by Year of Birth (Excluding Property Damage-only Claim Types and Business Injured Party Types)[10] | | | | | |
|---|---|---|---|---|---|
| | Total With Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates (within same age group) | (c) Potential Duplicates Missing DOB and Potential 3rd Duplicates | (d) Total Without Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b) - (c)) |
| DOBs 2017-2019 | 113 | 85 | 0 | 0 | 85 |
| DOBs 2015-2016 | 738 | 603 | 76 | 1 | 564 |
| DOBs 2008-2014 (6 or younger as of 12/31/14) | 3,483 | 2,819 | 366 | 10 | 2,626 |
| **Subtotal 6 or Younger on 12/31/14 or after (DOBs 2008-2019)** | **4,334** | **3,507** | **442** | **11** | **3,275** |
| DOBs 2003-2007 (7-11 yrs old as of 12/31/14) | 2,334 | 1,907 | 236 | 3 | 1,786 |
| DOB's 1997-2002 (12-17 yrs old as of 12/31/14) | 1,831 | 1,374 | 122 | 3 | 1,310 |
| **Subtotal under 18 on 12/31/14 or after (DOBs 1997-2019)** | **8,499** | **6,788** | **800** | **17** | **6,371** |
| DOB's pre-1997 (18+ as of 12/31/14) | 14,556 | 10,293 | 1,335 | 54 | 9,572 |
| Total with DOBs | 23,055 | 17,081 | 2,135 | 71 | 15,943 |
| Blank or invalid DOBs | 7,068 | 1,733 | 26 | 264 | 1,456 |
| **Total** *(excluding property damage-only or business claims)* | **30,133** | **18,814** | **2,161** | **335** | **17,399** |

[10] Potential duplicates listed do not include duplication among or with the additional contacts. This chart excludes records with only property damage claim types or records with business/business owner or property owner injured party types. The category of "Potential Duplicates (within same age group)" are records matched with the same date of birth. The category "Potential Duplicates Missing DOB or Potential 3rd Duplicates" are records (i) without a DOB matched to a record already included with a DOB, and in such cases, the record with the DOB is counted and the one without excluded as a duplicate, or (ii) records matched as a third potential duplicate to two records already matched, and the third such record is excluded.

## INJURED PARTIES WITH CASE FILING

The Template asked Reporting Counsel to provide case filing information if a case had been filed. There are 597 unique case numbers identified in the data. The following chart provides the count of injured parties who identified a case filed, broken down by the jurisdiction or specific case identified (federal, federal and state, state, or federal court *Burgess* or *Anderson* cases against the United States[11]) and the age of the injured parties. The chart identifies potential duplicates only in those instances where the matching records each identified a case filing. In cases where the matching records each identified a case filing and the party's date of birth, the chart adjusts the count to include only one such record. In cases where the matching records each identified a case filing but one did not provide the date of birth, the record with the date of birth is included and the record without a date of birth is excluded as a duplicate for these purposes. The chart separately identifies instances where one matching record identified a claim in *Burgess v. United States* or *Anderson v United States*, and another record submitted by a different firm identified another case in federal and/or state court.

---

[11] The *Burgess* case refers to *Burgess v. United States,* 17-cv-11218 (E.D. Mich.). Some plaintiffs in this case were specifically identified. Additional plaintiffs in the case could be among the additional contacts submitted but are not specifically identified in the data submission as *Burgess* plaintiffs. The *Anderson* case refers to *Anderson v United States,* 18-cv-12725 (E.D. Mich.).

13

| Injured Parties by Year of Birth and Case Filing Jurisdiction Identified in Data*<br>(Counts shown are of Injured Parties – not Cases) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (a)<br>Federal Case | (b)<br>Federal & State Case | (c)<br>State Case | (d)<br>*Burgess v US* & *Anderson v US* | (e)<br>Total | (f)<br>Potential Duplicates | (g)<br>Potential Duplicate Without DOB and With DOB or 3rd Duplicate | (h) Potential Duplicate: Identified in Both Burgess/ Anderson Plus Other Fed/ State Filing by Different Firm | (i) Potential Duplicate: Identified in Both Burgess Plus Other Fed/State Filing by Different Firm With and Without DOB | (j)<br>Total Less Potential Duplicates (=(e) - 1/2 (f) - (g) - 1/2 (h) - (i)) |
| DOBs 2017-2019 | 8 | 3 | 17 | 2 | 30 | 0 | 0 | 0 | 0 | **30** |
| DOBs 2015-2016 | 106 | 91 | 25 | 31 | 253 | 12 | 0 | 0 | 0 | **247** |
| DOBs 2008-2014 (6 or younger as of 12/31/14) | 520 | 500 | 130 | 140 | 1,290 | 47 | 1 | 22 | 0 | **1,255** |
| **Subtotal 6 or Younger on 12/31/14 or after (DOBs 2008-2019)** | **634** | **594** | **172** | **173** | **1,573** | **59** | **1** | **22** | **0** | **1,532** |
| DOBs 2003-2007 (7-11 yrs old as of 12/31/14) | 366 | 309 | 99 | 130 | 904 | 30 | 0 | 24 | 0 | **877** |
| DOB's 1997-2002 (12-17 yrs old as of 12/31/14) | 273 | 158 | 55 | 115 | 601 | 6 | 0 | 2 | 0 | **597** |
| **Subtotal under 18 on 12/31/14 or after (DOBs 1997-2019)** | **1,273** | **1,061** | **326** | **418** | **3,078** | **95** | **1** | **48** | **0** | **3,006** |
| DOB's pre-1997 (18+ as of 12/31/14) | 1,632 | 338 | 200 | 1,281 | 3,451 | 52 | 0 | 100 | 0 | **3,375** |
| Total with DOBs | 2,905 | 1,399 | 526 | 1,699 | 6,529 | 147 | 1 | 148 | 0 | **6,381** |
| Blank or invalid DOBs | 325 | 140 | 16 | 625 | 1,106 | 3 | 24 | 4 | 31 | **1,048** |
| **Total** | **3,230** | **1,539** | **542** | **2,324** | **7,635** | **150** | **25** | **152** | **31** | **7,428** |

14

**\*** The category of "Federal & State Cases" consists of injured party records that identified "federal and state" as the jurisdiction of case filing and provided both a state and federal case filing on a single record submitted by one counsel.  The category of "*Burgess v US* & *Anderson v US* lists injured party records identified by counsel as "party-plaintiffs" or representatives in *Burgess v. United States* or as plaintiffs in *Anderson v United States*.

The category of "Potential Duplicates" consists of records matched with the same dates of birth. The category "Potential Duplicate Without DOB and with DOB" are records without a DOB matched to a record with a DOB, and in such cases the record without a DOB is excluded as a duplicate and the record with a DOB is retained. The category of "Potential Duplicate:  injured party identified in both *Burgess/Anderson* Plus Other Fed/ State Filing by Different Firm" consists of records submitted under the category of plaintiffs in *Burgess v. US* or *Anderson v US* where a matching record shows a different federal, federal and state, or state case filed by another firm.  Potential duplicates with and without DOBs among such matches are separately listed and in such cases the record with DOB is counted and the record without is excluded in the counts shown above.

The data does not include the case filing information for the three other cases pending against the United States or the EPA.  The plaintiffs in those cases are included in the data but the data did not specify these specific case names.

## **WATER TESTING**

A total of 3,847 injured party records (plus 2,207 of the additional contacts) reported having one or more water tests performed.[12] Approximately 68% of those reporting that a test was performed provided test results. The following two charts provide a breakdown of dates of water testing and the age of the injured parties, respectively, for injured parties stating that a water test was performed. Potential duplicates accounted for in the following two charts include only those identified potential duplicates where both matching records reported having a water test (if only one matched record did so, the records are not treated as potential duplicates for these purposes).

| Water Tests Performed:   Dates of Tests | | | | | |
|---|---|---|---|---|---|
| Dates of Water Tests Performed | Total with Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total Without Add'l Contacts | (c) Potential Duplicate of Record Kept with Test Date or Potential Third Duplicate | (d) Total Without Add'l Contacts Less Potential Duplicates (=a - 1/2 (b) - (c)) |
| Blank/Invalid | 1,092 | 1,092 | 96 | 20 | 1,024 |
| 2014 | 4 | 4 | 1 | 0 | 4 |
| 2015 | 241 | 128 | 6 | 1 | 124 |
| 2016 | 4,332 | 2,394 | 228 | 4 | 2,276 |
| 2017 | 307 | 191 | 38 | 0 | 172 |
| 2018 | 62 | 29 | 0 | 0 | 29 |
| 2019 | 16 | 9 | 0 | 0 | 9 |
| Total | 6,054 | **3,847** | **369** | **25** | **3,638** |

---

[12]  This count is based on records that answered "yes" or "pending" to the question were "water test(s) performed?".   The instructions to the Template indicated that the Template seeks data on the lead level in the water.  Dates are based on the test date reported in the main reporting Template (additional test dates were provided on some injured parties in an Addendum to the Template).

The age of these injured parties reporting that a water test was performed is summarized in the following chart.

| Water Tests Performed: Injured Parties by Year of Birth | | | | | |
|---|---|---|---|---|---|
| | Total With Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total Without Add'l Contacts | (c) Potential Duplicate of Record Kept With DOB or Potential 3rd Duplicate | (d) Total Without Add'l Contacts Less Potential Duplicates (=a - 1/2 (b) - (c)) |
| DOBs 2017-2019 | 12 | 6 | 0 | 0 | 6 |
| DOBs 2015-2016 | 129 | 101 | 4 | 0 | 99 |
| DOBs 2008-2014 (6 or younger as of 12/31/14) | 690 | 514 | 18 | 0 | 505 |
| **Subtotal 6 or Younger on 12/31/14 or after (DOBs 2008-2019)** | 831 | 621 | 22 | 0 | **610** |
| DOBs 2003-2007 (7-11 yrs old as of 12/31/14) | 488 | 368 | 4 | 0 | 366 |
| DOB's 1997-2002 (12-17 yrs old as of 12/31/14) | 301 | 184 | 2 | 0 | 183 |
| **Subtotal under 18 on 12/31/14 or after (DOBs 1997-2019)** | 1,620 | 1,173 | 28 | 0 | **1,159** |
| DOB's pre-1997 (18+ as of 12/31/14) | 3,510 | 2,306 | 344 | 7 | **2,127** |
| Total with DOBs | 5,130 | 3,479 | 372 | 7 | **3,286** |
| Blank or invalid DOBs | 924 | 368 | 0 | 16 | 352 |
| **Total** | **6,054** | **3,847** | **372** | **23** | **3,638** |

The Census Template also requested information on the results of the water testing. In the following chart summarizing the reported results of the water testing, potential duplicates include only those where the matching records each included water test results. In cases where the matching records each included testing results in the same category (*e.g.*, both 5 and under), the total count excludes the duplicate.

17

In cases where the matching records provided differing test results, the record with the higher reported result category is included and the lower (or to be clarified) result is excluded as a duplicate.[13]

| Water Lead Level Testing Results (all testing years) [14] | | | | | |
|---|---|---|---|---|---|
| Results:  Lead Level in Water (ppb) | Total with Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total w/o Add'l Contacts | (c) Potential Duplicate of Record Kept with Higher Result or Potential 3rd Duplicate | (d) Total Without Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b) - (c)) |
| Negative, None Normal, 0 | 2,647 | 1,281 | 120 | 5 | **1,216** |
| 5 and under | 1,506 | 771 | 52 | 5 | **740** |
| Above 5 to 15 | 406 | 223 | 12 | 0 | **217** |
| Greater than 15 | 504 | 288 | 12 | 1 | **281** |
| Other range or to clarify | 150 | 149 | 28 | 6 | **129** |
| Blank, N/A, pending, Unknown | 25,735 | 16,915 | n/a | n/a | n/a |
| **Grand Total** | **30,948** | **19,627** | | | |

---

[13] In cases of claims identified as potential duplicates where only one record provided test results and the other(s) did not, only one result is thus recorded and therefore no duplicate adjustment is necessary.

[14] The test results are listed in ppb.  Where a unit of measure was not expressly stated in the submission, numbers listed between 0.0001 and 0.09 were converted (x10000).  Results include some values provided as "1 liter calculated (PPB)."  The category of "other range or to clarify" includes results between 0.1 and 0.9 where unit of measure not provided, records with multiple differing results provided for calculated values and varied smaller bottle sizes, and other results to be clarified with counsel or results that were listed only as high, low, positive, or otherwise unclear. The category "blank, N/A, pending, unknown" includes both injured party records that indicated a test was performed but results were not provided (blank) or were listed as N/A or pending or similar, and also includes injured party records that did not indicate that a test was performed. Where multiple test results have been provided in the reporting form, the Special Master has sought to incorporate the higher category of result. Potential duplicates do not include duplication among or with the additional contacts.

## **BLOOD LEAD LEVEL TESTING**

A total of 3,960 injured parties (plus 496 additional contacts) report having one or more blood lead level tests performed. Approximately 57% of those 3,960 reporting a test was performed provided results.[15] The age of the injured parties for those reporting that a blood test was performed is summarized in the following chart, accounting for a reduction for potential duplicate records identified. Potential duplicates in the chart below include only those identified potential duplicates where both matching records reported having a blood lead test performed. (If only one matched record did so, the records are not treated as potential duplicates for these purposes).

---

[15] The counts do not include records submitted as only claim types of property damage. The 57% excludes those providing results with test dates before April 2014.

| Blood Lead Level Testing:  Injured Parties Indicating Testing Done by Dates of Birth[16] | | | | |
|---|---|---|---|---|
| | Total with Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total Without Add'l Contacts | (c) Total Without Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b)) |
| DOBs 2017-2019 | 8 | 8 | 0 | 8 |
| DOBs 2015-2016 | 256 | 230 | 15 | 223 |
| DOBs 2008-2014 (6 or younger as of 12/31/14) | 1,397 | 1,272 | 86 | 1,229 |
| **Subtotal 6 or Younger on 12/31/14 or after (DOBs 2008-2019)** | **1,661** | **1,510** | **101** | **1,460** |
| DOBs 2003-2007 (7-11 yrs old as of 12/31/14) | 866 | 797 | 42 | 776 |
| DOB's 1997-2002 (12-17 yrs old as of 12/31/14) | 391 | 337 | 6 | 334 |
| **Subtotal under 18 on 12/31/14 or after (DOBs 1997-2019)** | **2,918** | **2,644** | **149** | **2,570** |
| DOB's pre-1997 (18+ as of 12/31/14) | 1,521 | 1,302 | 32 | 1,286 |
| Total with DOBs | 4,439 | 3,946 | 181 | 3,855 |
| Blank or invalid DOBs | 17 | 14 | 1 | 14 |
| **Total** | **4,456** | **3,960** | **182** | **3,869** |

---

[16]  The counts are based on injured party records that answered "Yes" to the question "was blood lead level test(s) performed."   The counts include responses of "pending" and exclude records submitted only as "property damage" claim types.

The Census Template also requested information on the results of the blood lead level testing.  The following provides counts of blood lead level test results by category of result (excluding test dates identified as pre-April 2014).  In the following charts, potential duplicates include only those where the matching records each included test results.  Where the matching records both contained test results that were in the same category (*e.g.*, both less than 3), the count is adjusted to show only one such record. Where the matching records provided different test results, the record with the higher reported result is included and the lower (or to be clarified) result is excluded as a duplicate.

| COUNTS OF BLOOD LEAD LEVEL TEST RESULTS IN DATA[17] *(Excluding Pre-April 2014 Test Dates and Property Damage Only Claim Types)* ALL AGES | | | | | |
|---|---|---|---|---|---|
| Results (ug/dL) | Total with Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total w/o Add'l Contacts | (c) Potential Duplicate of Record Kept With Higher Test Result | (d) Total w/o Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b) - (c)) |
| Negative/ None/Normal/0 | 64 | 64 | 0 | 0 | **64** |
| Less than 3 | 1,104 | 1,098 | 16 | 4 | **1,086** |
| "<3.3" | 300 | 297 | 2 | 1 | **295** |
| 3 to 4.9 | 469 | 466 | 4 | 1 | **463** |
| 5 to 8.9 | 110 | 109 | 2 | 0 | **108** |
| 9 or higher | 57 | 57 | 4 | 0 | **55** |
| Other range or to clarify | 178 | 176 | 0 | 4 | **172** |
| Blank, N/A, pending, invalid | 27,856 | 16,550 | n/a | n/a | n/a |
| Total *(excluding property damage-only claims)* | 30,138 | 18,817 | | | |

---

[17] The test results are listed in mcg/dL (ug/dL). Where the unit of measure was not expressly stated or unknown in the submission (*e.g.,* not stated as ug/dL or mcg/dL or mg/dL), numbers listed as less than 0.03 were converted (x1000) and numbers of 1 or greater were left as is (reflected here as ug/dL). The category "other range or to clarify" includes results between 0.03 and 0.9 where the unit of measure was not provided or otherwise unclear to be clarified with counsel, and also includes results provided as "<" a number other than 3 or 3.3, or ">" than a value, or listed only as high, low, positive, or otherwise unclear.

The category "blank, N/A, pending, invalid" includes both injured party records that indicated a test was performed but results were not provided (blank) or were listed as N/A or pending or similar, and injured party records that did not indicate that a test was performed. The category "blank, N/A, pending, invalid" in these charts also includes records where the test date was before April 2014. Where multiple test results have been provided, the Special Master has sought to incorporate the higher category of result identified in the reporting addendums, and where a pre-April 2014 test date was provided in the main Reporting Sheet has looked to identify tests dates of April 2014 or later if provided, in the Addendums, which may have been lower than the pre-April 2014 result.

Counts exclude records submitted with only claim type of property damage.

The following provides details on these test results only for injured parties six or younger in the period 2014 through 2016 (those with dates of birth in the years 2008 through 2016).

| COUNTS OF BLOOD LEAD LEVEL TEST RESULTS IN DATA[18]<br>(*Excluding Pre-April 2014 Test Dates and Property Damage Only Claim Types*)<br><br>Children with DOBs 2008-2016<br>(Six or Younger in 2014 through 2016) | | | | | |
|---|---|---|---|---|---|
| Results (ug/dL) | Total With Add'l Contacts | (a) Total Without Add'l Contacts | (b) Potential Duplicates Among Total w/o Add'l Contacts | (c) Potential Duplicate of Record Kept With Higher Test Result | (d) Total w/o Add'l Contacts Less Potential Duplicates (=(a) - 1/2 (b) - (c)) |
| Negative/ None/Normal/0 | 14 | 14 | 0 | 0 | **14** |
| Less than 3 | 440 | 440 | 2 | 0 | **439** |
| "<3.3" | 164 | 164 | 0 | 1 | **163** |
| 3 to 4.9 | 131 | 129 | 2 | 1 | **127** |
| 5 to 8.9 | 61 | 61 | 2 | 0 | **60** |
| 9 or higher | 34 | 34 | 4 | 0 | **32** |
| Other range or to clarify | 55 | 53 | 0 | 1 | **52** |
| Blank, N/A, pending, invalid | 3,322 | 2,527 | n/a | n/a | n/a |
| Total (*excluding property damage only claims*) | 4,221 | 3,422 | | | |

[18] See footnote 17, *supra*.

## **COGNITIVE FUNCTION TESTING**

The claim data shows 20 injured parties reported having a cognitive function test performed.


Date:  September 16, 2019                */s/ Deborah E. Greenspan*

Deborah E. Greenspan
Special Master

## **CERTIFICATE OF SERVICE**

I certify that on September 16, 2019, I electronically filed the foregoing

document with the Clerk of the Court using the Court's ECF system, which will

send notification of such filing to attorneys of record.

Date: September 16, 2019        By:    */s/ Deborah E. Greenspan*

Deborah E. Greenspan
Special Master

25