## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases

Carthan v. Snyder
Case No: 5:16-cv-10444
(consolidated)

Honorable Judith E. Levy
United States District Judge

Magistrate Mona K. Majzoub

_____

### INDIVIDUAL CITY DEFENDANTS'
### JOINT MOTION FOR A PROTECTIVE ORDER AND
### PETITION FOR RELIEF UNDER THE FIRST AMENDED CASE
### MANAGEMENT ORDER [DKT. 889]
_____

**NOW COME** Defendants Darnell Earley, Gerald Ambrose, and Howard
Croft, by and through their respective counsel, and for their Joint Motion for a
Protective Order and Petition for Relief Under the First Amended Case
Management Order [Dkt. 889] ("Motion") state:

1. For the reasons more fully set forth in their Brief in Support, Defendants
   Darnell Earley, Gerald Ambrose, and Howard Croft ("Individual City
   Defendants" or "ICDs") request that this Honorable Court enter a
   protective order in this matter pursuant to Fed. R. Civ. P. 26(c)(1), *et seq.*
   and Sections III(E) and IV(C) of the First Amended Case Management
   Order ("FACMO") [Dkt. 889] that will temporarily shield them from

1

depositions and future written discovery in this matter until May 1, 2020 while the ICDs continue to face potential criminal charges related to their former positions with the City of Flint during the Flint Water Crisis.

2. Pursuant to E.D. Mich. L.R. 7.1(a) and Fed. R. Civ. P. 26(c)(1), the undersigned counsel have made a good faith effort to resolve this dispute through this Honorable Court's discovery dispute protocol after which a briefing schedule regarding this Motion was established by and through the September 18, 2019 Order Regarding Briefing Schedule [Dkt. 953].

**Respectfully Submitted,**

*Attorneys for Defendant*
*Gerald Ambrose*

*/s/  Barry A. Wolf (w/consent)*
BARRY A. WOLF (P40709)
Law Office of Barry A. Wolf, PLLC
503 S. Saginaw Street, Suite 1410
Flint, MI  48502
Ph.: (810) 762-1084
E: bwolf718@msn.com

*Attorneys for Defendant*
*Darnell Earley*

*/s/ Todd Perkins (w/consent)*
TODD PERKINS (P55623)
Perkins Law Group
615 W. Griswold Suite 400
Detroit, MI 48226
Ph.: (313) 964-1702
E: tperkins@perkinslawgroup.net

*Attorneys for Defendant*
*Howard Croft*

*/s/ Alexander S. Rusek*
ALEXANDER S. RUSEK (P77581)
White Law PLLC
2549 Jolly Road, Suite 340
Okemos, MI 48864
Ph.: (517) 316-1195
E: alexrusek@whitelawpllc.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases

Carthan v. Snyder
Case No: 5:16-cv-10444
(consolidated)

Honorable Judith E. Levy
United States District Judge

Magistrate Mona K. Majzoub

_____

## BRIEF IN SUPPORT OF THE
## INDIVIDUAL CITY DEFENDANTS'
## JOINT MOTION FOR A PROTECTIVE ORDER AND
## PETITION FOR RELIEF UNDER THE FIRST AMENDED CASE
## MANAGEMENT ORDER [DKT. 889]

_____

---

## TABLE OF CONTENTS

---

CASE CAPTION ...................................................................................... i

TABLE OF CONTENTS........................................................................... ii

STATEMENT OF ISSUES PRESENTED................................................ iv

   I.   WHETHER THIS HONORABLE COURT SHOULD ENTER A
       PROTECTIVE ORDER DELAYING THE DEPOSITIONS OF THE
       INDIVIDUAL CITY DEFENDANTS AND WRITTEN DISCOVERY
       TO THE INDIVIDUAL CITY DEFENDANTS IN ORDER TO
       PROTECT THE INDIVIDUAL CITY DEFENDANTS' FIFTH
       AMENDMENT RIGHTS? …………………………………...………iv

CONTROLLING AUTHORITY SUPPORTING MOTION ...................................v

INDEX OF AUTHORITIES................................................................... vi

INTRODUCTION AND BACKGROUND .............................................1

LAW AND ARGUMENT ........................................................................9

   I.   THIS HONORABLE COURT SHOULD ENTER A PROTECTIVE
       ORDER DELAYING THE DEPOSITIONS OF THE INDIVIDUAL
       CITY DEFENDANTS AND WRITTEN DISCOVERY TO
       THE INDIVIDUAL CITY DEFENDANTS IN ORDER TO
       PROTECT THE INDIVIDUAL CITY DEFENDANTS' FIFTH
       AMENDMENT
       RIGHTS…………………………………...…………………………...9

       A. THIS HONORABLE COURT SHOULD TEMPORARILY POSTPONE
       THE DEPOSITIONS OF THE ICDS AND FURTHER WRITTEN
       DISCOVERY TO THE ICDS BECAUSE THE STATUTE OF
       LIMITATIONS FOR THEIR ALLEGED CRIMINAL ACTS WILL RUN
       IN APRIL 2020……………………………………………………12

B. THIS HONORABLE COURT SHOULD TEMPORARILY POSTPONE THE DEPOSITIONS OF THE ICDS AND FURTHER WRITTEN DISCOVERY TO THE ICDS BECAUSE THERE IS A VOLUMINOUS AMOUNT OF DISCOVERY THAT CAN BE CONDUCTED IN THE INTERIM THAT DOES NOT ENDANGER THE FIFTH AMENDMENT RIGHTS OF THE PARTIES…………………………………………………14

C. THIS HONORABLE COURT SHOULD TEMPORARILY POSTPONE THE DEPOSITIONS OF THE ICDS AND FURTHER WRITTEN DISCOVERY TO THE ICDS TO PROTECT THE ICDS' FIFTH AMENDMENT RIGHTS……………………………………………………..16

D. THIS HONORBALE COURT SHOULD TEMPORARILY POSTPONE THE DEPOSITIONS OF THE ICDS AND FURTHER WRITTEN DISCOVERY TO THE ICDS TO PREVENT THE ICDS FROM HAVING TO CHOOSE TO INVOKE THEIR FIFTH AMENDMENT RIGHTS OR SUFFER ADVERSE INFERENCES AGAINST THEM IN THIS MATTER AND AVOID OTHER PROCEDURAL COMPLICATIONS…………….19

E. ALTERNATIVELY, THIS HONORABLE COURT SHOULD SEAL AND OTHERWISE PROTECT THE DEPOSITIONS OF THE ICDS AND FURTHER WRITTEN DISCOVERY TO THE ICDS UNDER FED. R. CIV. P. 26(c)(1)(A), (B), (D), (E), AND (F)................................................21

CONCLUSION AND REQUEST FOR RELIEF...................................................24

## STATEMENT OF ISSUE PRESENTED

**I.**     **Whether this Honorable Court should enter a protective order delaying the depositions of the Individual City Defendants and written discovery to the Individual City Defendants in order to protect the Individual City Defendants' Fifth Amendment Rights?**

**CONTROLLING AUTHORITY SUPPORTING MOTION**

The Individual City Defendants rely primarily upon the following most controlling or persuasive authority in support of their Motion:

U.S. Const. amend. V

Mich. Const. art. 1, § 17

Fed. R. Civ. P. 26(c)(1)

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 302 (6th Cir. 2016)

# INDEX OF AUTHORITIES

## Supreme Court of the United States Cases

*Bank Markazi v. Peterson*, 578 U.S. __; 136 S. Ct. 1310 (2016)……………….....14

*Baxter v Palmigiano*, 425 U.S. 308; 96 S. Ct. 1551 (1976)……………….....….9, 19

*Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.ed.648 (1798)…………………….…….14

*Griffin v. California*, 380 U.S. 609; 85 S. Ct. 1229 (1965)………………….……19

*Grunewald v. United States*, 353 U.S. 391; 77 S. Ct. 963;
1 L.Ed.2d 931 (1957) ..............................................................................16

*Gulf Oil Co. v. Bernard*, 452 U.S. 89; 101 S. Ct. 2193 (1981)…………………...12

*Hoffman v. United States*, 341 U.S. 479 (1951)…………………………………..17

*Ohio v. Reiner*, 532 U.S. 17; 121 S. Ct. 1252 (2001) ............................................16

*Stogner v. California*, 539 U.S. 607; 123 S. Ct. 2446 (2003)…………………….14

*United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149 (1923)……………………20

*United States v. Hale* 422 U.S. 171; 95 S. Ct. 2133 (1975) …………………...9, 20

*United States v. Kordel*, 397 U.S. 1 (1970)………………………………………17


## Sixth Circuit Court of Appeals Cases

*Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F. 2d 1165
(6th Cir. 1983)……………………………………………………………………….23

*F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) ..........................17

*Hoxie v. Drug Enforcement Admin*, 419 F.3d 477 (6th Cir. 2005)………………...9

*In re Morganroth*, 718 F. 2d 161 (6th Cir. 1983)…………………………………20

*In re Wilkinson*, 137 F.3d 911 (6th Cir. 1998)……………………….…11, 21

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540 (6th Cir. 2004)……...…11, 12, 21

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,
825 F. 3d 299 (6th Cir. 2016)……………………….………………………22

*United States v. Hatchett*, 862 F.2d 1249 (6th Cir. 1988)………………..……20

*United States v. U.S. Currency*, 626 F.2d 11 (6th Cir. 1980) ................................19


**Eastern District of Michigan Cases**

*National Discount Corp. v. Holzbaugh*, 13 F.R.D. 236 (E.D. Mich. 1952)............18


**Michigan Supreme Court Cases**

*In re People v. Jory*, 443 Mich. 403; 505 N.W.2d (1993)………………………...13


**Michigan Court of Appeals Cases**

*People v. Gould*, 156 Mich. App. 413; 402 N.W.2d 27 (1986)…………………...13


**Other Authorities**

*Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) .............................18

*Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979)..............................................19

*Chao v Fleming*, 498 F. Supp. 2d 1034 (W.D. Mich 2007) ....................................17

*Clark v. United States*, 481 F. Supp. 1086 (S.D.N.Y. 1977) ...................................18

*Dienstag v. Bronsen*, 49 F.R.D. 327 (S.D.N.Y. 1970) ...........................................18

*F.T.C. v. Sysco Corp.*, 308 F.R.D. 19 (2015)……………………………………..11

*Joy v. North*, 692 F. 2d 880 (2d Cir. 1982)……………………………...….22, 23

*United States v. A Certain Parcel of Land, Moultonboro*,
781 F. Supp. 830 (D. N.H. 1992)……………………..…………………...18

*Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir. 1979)…...….…17

**United States Constitution**

U.S. Const. art. 1 §9, cl 3…………………..………………………………...14

U.S. Const. art. 1, § 10, cl. 1………………………………………….…...14

U.S. Const., amend. V…………...……………………………………..16

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 26………………………………….…………………*passim*

**Michigan Constitution**

Mich. Const. art. I, §17……………………………………………………16

**Michigan Compiled Laws**

M.C.L. 117.4a……………………………………………………...3

M.C.L. 750.218……..………………………………………………………...13

M.C.L. 767.24(10)……………….…………………………………………..13

**Michigan Criminal Jury Instructions**

Mich. Crim. J.I. 23.11……………………………………………………………13

## INTRODUCTION AND BACKGROUND

The Individual City Defendants[1] have each previously been subject to multiple criminal charges brought by the Michigan Attorney General for acts they allegedly committed prior to and after the City of Flint switched its drinking water source from the Detroit Water and Sewage Department to the Flint River in April 2014. Mr. Earley,[2] Mr. Ambrose,[3] and Mr. Croft[4] were charged on or about December 19, 2016 with various felonies and misdemeanors by the former Office of Special Counsel for the Michigan Attorney General. Exhibit A – Criminal Complaint Against Defendants Earley, Ambrose, Croft, and Johnson. Each ICD has continuously asserted their innocence and continue to defend themselves against the false accusations.

The ICDs are also defendants in these consolidated actions. They now request that this Honorable Court enter a protective order that will temporarily postpone the start of the depositions of and written discovery (interrogatories and

---

[1] Darnell Earley, Gerald Ambrose, and Howard Croft.

[2] Previously Case No.: 16TB2850-FY in the 67th District Court for the County of Genesee.

[3] Previously Case No.: 16TA2850-FY in the 67th District Court for the County of Genesee and Case No.: 18-042559-FH in the 7th Circuit Court for the County of Genesee as Mr. Ambrose has been bound over to the trial court.

[4] Previously Case No.: 16TC2850-FY in the 67th District Court for the County of Genesee.

1

requests for admissions[5]) to the ICDs in order to protect their Fifth Amendment Rights and which will not significantly prejudice the other parties in this matter.

Temporarily postponing this discovery is appropriate based on various criminal statute of limitations that will expire in the near term and the ongoing investigation and review of potential criminal charges by the Michigan Attorney General. Additionally, a temporary postponement will not prevent what is expected to be extensive discovery between the Plaintiffs and other Defendants in this matter to proceed in the interim. Further, such a protective order will prevent the ICDs from being forced to suffer adverse inferences in this litigation by exercising their Fifth Amendment Rights if forced to do so and avoid lengthy depositions wherein the ICDs are expected to assert their Fifth Amendment Rights on a question by question basis.

As background, the previous criminal charges against the ICDs were all based on allegations that they engaged in criminal misconduct while acting as either a state appointed Emergency Manager (Mr. Earley and Mr. Ambrose) for the City of Flint or while serving as an appointed employee for the City of Flint (Mr. Croft). Mr. Earley was charged with False Pretenses - $100,000.00 or More, Conspiracy to Commit False Pretenses - $100,000.00 or More, Misconduct in Office, and Willful Neglect of Duty. Mr. Ambrose was charged with False

---

[5] The ICDs have already responded to requests for production of documents upon order of the Court.

Pretenses - $100,000.00 or More, Conspiracy to Commit False Pretenses - $100,000.00 or More, Misconduct in Office, and Willful Neglect of Duty. Mr. Croft was charged with False Pretenses - $100,000.00 or More and Conspiracy to Commit False Pretenses - $100,000.00 or More. A 21 page, 67-paragraph "Request for Warrant" was filed in the criminal cases and outlines the former criminal allegations against the ICDs. Ex. A at 1-21.

The gravamen of the False Pretenses charges brought against the ICDs is that they acted or conspired to act to obtain an Administrative Consent Order ("ACO") from the Michigan Department of Environmental Quality ("MDEQ") that would thereafter allow the City of Flint to obtain bonds to finance its portion of the Karegnondi Water Authority ("KWA") in excess of the debt limits imposed by the Home City Rule, MCL 117.4a, *et seq*. Ex. A at ¶¶ 23-28. The creation of the KWA would allow the City of Flint to receive drinking water from Lake Huron instead of the Detroit Water and Sewage Department. *Id*. The ACO was issued on or about March 20, 2014. *Id*. at ¶ 28. On or about April 25, 2014, the City of Flint switched began to use the Flint River as its interim source of drinking water before the KWA was completed. *Id*. at 45.

The remainder of the charges against Mr. Earley and Mr. Ambrose arise from actions they are alleged to have taken as state appointed Emergency Managers for the City of Flint that resulted in prolonged exposure to lead and

Legionella bacteria. Ex. A ¶ 1. Mr. Earley served as Emergency Manager from approximately October 2013 through January 2015. *Id*. at ¶ 6. Mr. Ambrose served as Emergency Manager from approximately January 2015 through April 2015. *Id*.

Further, on or about June 14, 2017, the Michigan Attorney General published a "Notice of Intent to Seek Bindover on Additional Charge(s) at Preliminary Examination" for both Mr. Earley and Mr. Croft that states that the Michigan Attorney General would seek additional charges of Involuntary Manslaughter at their Preliminary Examinations. Exhibit B – Notices of Intent to Seek Bindover on Additional Charge(s) at Preliminary Examination. Additionally, the former Office of Special Counsel, by and through Special Assistant Attorney General Todd Flood, threatened counsel for Mr. Ambrose with the additional charge(s) of Involuntary Manslaughter in an attempt to force and/or entice Mr. Ambrose into a plea agreement, but did not publish a "Notice of Intent to Seek Bindover on Additional Charge(s) at Preliminary Examination." Based on representations of the former Office of Special Counsel, the alleged involuntary manslaughter victims were John Snyder (deceased June 30, 2015) and Robert Skidmore (deceased December 13, 2015).

In November 2018, Dana Nessel was elected Michigan's 54th Attorney General. In January 2019, Attorney General Nessel appointed Fadwa Hammoud as Solicitor General and tasked her with leading the criminal investigation into the

Flint Water Crisis on behalf of the Michigan Attorney General. Exhibit C –

January 15, 2019 Press Release.[6] In June 2019, the Michigan Attorney General's

Office dismissed *without prejudice* the criminal charges against the ICDs. Exhibit

D – Motions/Orders of Nolle Prosequi.

However, the Michigan Attorney General's Office, assisted by Wayne

County Prosecutor Kym Worthy, continues to investigate the events commonly

known as the Flint Water Crisis and whose assigned criminal prosecutors have

stated publicly in a press release that:

> Our team has already identified additional individuals of
> interest and new information relevant to the Flint Water
> Crisis. These investigative leads will be aggressively
> pursued. Additionally, we will evaluate criminal culpability
> for all Legionnaires deaths that occurred after the switch to
> the Flint River, which was never done by the OSC.
>
> **It is important to note that this voluntary dismissal by
> our team is not a determination of any defendant's
> criminal responsibility. We are not precluded from
> refiling charges against the defendants listed below[7] or
> adding new charges and additional defendants.**

Exhibit E – June 13, 2019 Press Release (emphasis in original). The prior criminal

charges brought and threatened against the ICDs are based on allegations relating

to the ICDs' prior role with the City of Flint; that is, Mr. Ambrose and Mr. Earley

as state appointed Emergency Managers, and for Mr. Croft as Director of Public

---

[6] Also available at https://www.michigan.gov/som/0,4669,7-192-47796-487522--
,00.html (last accessed September 25, 2019).

[7] The ICDs are included in the list of defendants whose cases were dismissed.

Works. *See generally* Ex. A. Mr. Ambrose and Mr. Earley were specifically charged with Misconduct in Office charges arising from their alleged acts as Emergency Managers. *Id*. at 1.

Upon information and belief based on the public and private statements of representatives of the Michigan Attorney General, the Michigan Attorney General has been intensely and diligently reviewing documents and information related to the Flint Water Crisis in an effort to evaluate potential criminal charges it will seek in the future. For example, Solicitor General Hammoud was quoted this summer as stating:

> "The Department of Attorney General through the Flint water criminal prosecution team is investigating the Flint water crisis as a whole," Solicitor General Fadwa Hammoud said in a statement to MLive-The Flint Journal. "As stated in recent motions, the prosecution is aware of substantial potential evidence that was not provided to the original prosecution team from the onset of the investigation. The team is currently in the process of obtaining this evidence through a variety of means, including search warrants. The team is also conducting a thorough review of existing and newly received evidence pertaining to the Flint water crisis."[8]

---

[8] Ron Fonger, *Ex-Gov. Rick Snyder's phone seized in Flint water criminal investigation*, MLive, June 3, 2019, MLive, https://www.mlive.com/news/flint/2019/06/ex-governors-phone-seized-in-flint-water-criminal-investigation.html (last accessed September 27, 2019).

The Individual City Defendants have also been subject to a number of civil causes of actions brought by the Plaintiffs in *Guertin*,[9] *Carthan*,[10] *Walters*,[11] *Sirls*,[12] *Brown*,[13] *Marble*,[14] *Bacon*,[15] and a vast number of other actions brought by various Plaintiffs. To date, this Honorable Court has dismissed all but one cause of action against the ICDs (a claim regarding Plaintiffs' substantive due process right to bodily integrity based on the alleged exposure to lead following the City of Flint's switch to the Flint River in 2014) in *Guertin*, *Carthan*, *Walters*, and *Sirls*. *See Id*. This Court has not yet ruled on causes of action based on alleged *Legionella* exposure.

The current operative Complaints in these consolidated matters allege civil wrongdoing by the ICDs during their time employed as Emergency Managers and as the Director of Public Works for the City of Flint. More specifically, the Plaintiffs allege that civil liability arises in this matter from decisions made and actions taken by the ICDs solely in their roles as Emergency Managers and as the Director of Public Works for the City of Flint. *Id*.  Essentially, the civil allegations mirror the allegations made in the criminal complaint.

---

[9] 16-cv-12412.
[10] 16-cv-11519.
[11] 17-cv-10164.
[12] 18-cv-10342.
[13] 18-cv-10726.
[14] 17-cv-12942.
[15] 18-cv-10348.

On September 4, 2019, counsel for the Lockwood, Andrews & Newnam, Inc. Defendants ("LAN Defendants") served upon counsel for Mr. Ambrose, Mr. Earley, and Mr. Croft a Notice of Taking Deposition for the ICDs. The depositions of the ICDs were set to be held from October 4, 2019 through October 14, 2019. From September 4, 2019 through September 10, 2019, counsel for the LAN Defendants contacted counsel for the ICDs and agreed to temporarily adjourn the depositions of the ICDs in anticipation that the ICDs would file the instant Motion. A briefing schedule for this Motion was set forth in this Honorable Court's September 18, 2019 Order Regarding Briefing Schedule following a telephonic discovery conference on September 18, 2019 [Dkt. 953]. In addition to the Notice of Taking Deposition served by the LAN Defendants, the ICDs also expect that the Plaintiffs and Defendants in this matter will serve interrogatories and requests for admission on the ICDs in the near future and also seek to depose the ICDs.

The ICDs are now forced to decide whether they will fully defend themselves in this litigation, which will potentially lead to them making statements either during their depositions or in response to written discovery that could be used by the Michigan Attorney General (or federal authorities) to prosecute them criminally, or whether they will assert the Fifth Amendment upon advice of counsel during their depositions and in response to written discovery that will

result in adverse inferences against the ICDs as this litigation progresses.[16]

Therefore, the ICDs request that this Honorable Court enter a protective order

postponing discovery as to the ICDs or otherwise entering a protective order that

will fully protect their rights and interests.

## LAW AND ARGUMENT

**I. THIS HONORABLE COURT SHOULD ENTER A PROTECTIVE ORDER DELAYING THE DEPOSITIONS OF THE INDIVIDUAL CITY DEFENDANTS AND WRITTEN DISCOVERY TO THE INDIVIDUAL CITY DEFENDANTS IN ORDER TO PROTECT THE INDIVIDUAL CITY DEFENDANTS' FIFTH AMENDMENT RIGHTS.**

The temporary postponement of discovery as to the ICDs through the

issuance of a protective order in this matter is appropriate for a number of reasons.

First, temporarily postponing this discovery is appropriate since various criminal

statute of limitations will expire in the near term and the ongoing investigation by

the Michigan Attorney General will conclude. Second, a temporary postponement

will not prevent what is expected to be an extensive discovery process between the

Plaintiffs and other Defendants that will proceed in the interim. Third, the

---

[16] *See Baxter v. Palmigiano*, 425 U.S. 308, 318; 96 S. Ct. 1551 (1976) ("[T]he prevailing rule [is] that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them[.]"); *United States v. Hale,* 422 U.S. 171, 176; 95 S. Ct. 2133 (1975) ("Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation."); *See also Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005).

9

requested postponement will protect the ICDs' Fifth Amendment Rights. Fourth, such a protective order will prevent the ICDs from being forced to suffer adverse inferences in this litigation by exercising their Fifth Amendment Rights if forced to do so and will avoid lengthy depositions wherein the ICDs are expected to assert their Fifth Amendment Rights on a question by question basis.

Alternatively, should this Honorable Court order that discovery proceed, the ICDs request that this Honorable Court enter a protective order sealing their transcripts, forbidding the disclosure or discovery of discovery materials, limiting the scope of the discovery, and designating that only certain persons may be present while depositions are conducted pursuant to Fed. R. Civ. P. 26(c)(1)(A), (C), (D), (E), and (F).

Federal Rule of Civil Procedure 26(c)(1) governs the issuance of protective orders states:

(c) Protective Orders.

(1) *In General.* A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

10

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;

(C) prescribing a discovery method other than the one selected by the party seeking discovery;

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

(E) designating the persons who may be present while the discovery is conducted;

(F) requiring that a deposition be sealed and opened only on court order;

(G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

(H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c)(1). The list of types of protective orders set forth in Fed. R. Civ. P. 26(c)(1) is not exhaustive and courts generally may make any type of protective order required by justice. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004); *In re Wilkinson,* 137 F.3d 911, 918 (6th Cir. 1998); *F.T.C. v. Sysco Corporation*, 113 F. Supp. 3d 1 (D.D.C. 2015). A protective order may be issued upon a showing of good cause to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, the "potential for which must be illustrated with 'a particular and specific demonstration of fact,

as distinguished from stereotyped and conclusory statements.'" *Nemir*, 113 F. Supp. 3d at 550, quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16; 101 S. Ct. 2193 (1981).

The First Amended Case Management Order ("FACMO") provides that "A defendant who is subject to pending criminal charges may petition the Court for relief from written discovery until after the final resolution of those criminal charges." Dkt. 889 at 12. The FACMO further states that "A defendant who is subject to pending criminal charges may petition the Court for relief from testimonial depositions until after the final resolution of those criminal charges." *Id*. at 19.

### A. This Honorable Court should temporarily postpone the depositions of the ICDs and further written discovery to the ICDs because the statute of limitations for their alleged criminal acts will run in April 2020.

While the ICDs are not currently "subject to pending criminal charges," they are essentially in the same position as a charged defendant because the previous charges against them were dismissed *without prejudice* and, as set forth more thoroughly above, the Michigan Attorney General is actively investigating and contemplating bringing the same or additional charges against the ICDs. *See* Exs. D, E. As such, the ICDs have a well-founded fear, after facing charges for over two and a half years, that any statements made (either through deposition testimony or through written responses to interrogatories and requests for admissions) could be

12

used against them in potential future criminal prosecutions, either directly or derivatively. However, significant previous charges against the ICDs will have their statute of limitations expire relatively shortly, thus forcing a future charging decision by the Michigan Attorney General, and thereby supporting a temporary postponement of discovery as to the ICDs.

In particular, the crime of False Pretenses is committed when "(1) a false representation as to an existing fact; (2) knowledge by defendant of the falsity of the representation; (3) use of the false representation with an intent to deceive; and (4) detrimental reliance on the false representation by the victim." *In re People v. Jory*, 443 Mich. 403, 412; 505 N.W. 2d (1993) citing *People v. Gould*, 156 Mich App 413, 416; 402 N.W. 2d 27 (1986); *see also* M.C.L. § 750.218; Mich. Crim. J.I. 23.11. The False Pretenses felony charges previously brought against the ICDs were based on alleged conduct by the ICDs prior to the issuance of the ACO (March 20, 2014), the issuance of the Series 2014A bonds to finance the KWA (April 14, 2014), and the switch to the use of the Flint River (April 25, 2014). *See generally* Ex. A.

The dismissed criminal charges against the ICDs have, at longest, six year statutes of limitations. M.C.L. § 767.24(10). While recent legislation has been introduced in the Michigan legislature that would extend the statute of limitations for charges of misconduct in office from six years to ten years, these bills will not

13

extend the statute of limitations for acts occurring prior to their enactment as they would violate the *ex post facto* clauses of the United States Constitution. *See* U.S. Const. art. I § 9, cl. 3; U.S. Const. art. I § 10, cl. 1; *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L. Ed. 648 (1798); *Stogner v California*, 539 US 607, 609; 123 S. Ct. 2446 (2003); *Bank Markazi v. Peterson*, 578 U.S. __; 136 S. Ct. 1310 (2016). Therefore, the Michigan Attorney General is time limited in filing criminal charges for events that allegedly occurred from 2013 through April 2014.

While other alleged acts of the ICDs occurred through 2015 and thus extending the time frame of the statutes of limitations, a temporary postponement until May 1, 2020 of discovery as to the ICDs will allow the Michigan Attorney General time to review the Flint Water Crisis and will necessitate a decision as to whether or not to recharge the ICDs with False Pretenses due to the expiration of the statute of limitations for those counts. This additional knowledge will allow both this Honorable Court and the ICDs an enhanced ability to decide how to proceed in these matters.

**B. This Honorable Court should temporarily postpone the depositions of the ICDs and further written discovery to the ICDs because there is a voluminous amount of discovery that can be conducted in the interim that does not endanger the Fifth Amendment Rights of the parties.**

This Honorable Court can accomplish two important goals in this litigation by issuing the requested protective order: (1) Advancing this litigation towards

14

resolution by allowing other extensive discovery to proceed; and (2) Protecting the Fifth Amendment Rights of the ICDs.

The FACMO sets forth comprehensive procedures for extensive document discovery in this matter from non-parties through document-only subpoenas, through the exchange of Freedom of Information Act materials, and through requests for documents and tangible things from parties. Dkt. 889 at 3, 5, 7. This discovery is ongoing and voluminous as evidenced by the multiple discovery disputes that have already arisen following the entry of the FACMO on June 21, 2019.

Further, in addition to the discovery currently being conducted as to party and third-party documents, at least 16 other depositions have been noticed by the LAN Defendants and VNA Defendants to date.[17] Further, the depositions of other defendants and their representatives, health care providers, education professionals, plumbing professionals, plaintiffs, and other fact and expert witnesses will be conducted in this matter. By some estimates, there may be upwards of 600 depositions in this matter before the bellwether trials are held. The vast majority, if not all, of these depositions can proceed while providing additional time for the ICDs' Fifth Amendment Rights concerns to be quelled.

---

[17] Michael Glasgow, Daugherty Johnson, Brent Wright, Ed Kurtz, Michael Prysby, Stephen Busch, Robert Bincsik, Angelo's Coney Island Palace, Inc., Barbara Davis, Darrell Davis, David Munoz, Elnora Carthan, Frances Gilcreast, Michael Snyder, Rhonda Kelso, and Tiantha Williams.

Therefore, temporarily delaying the depositions of the three ICDs will not significantly delay the overall discovery process in this matter while still preserving their Fifth Amendment Rights as set forth below.

### C. This Honorable Court should temporarily postpone the depositions of the ICDs and further written discovery to the ICDs to protect the ICDs' Fifth Amendment Rights.

The United States and Michigan Constitutions provide that the ICDs have the right to be free from self-incrimination. U.S. Const. amend. V; Mich. Const. art. 1, § 17. The Supreme Court has held that the Fifth Amendment privilege against self-incrimination "protects the innocent as well as the guilty" and has never held "that the privilege is unavailable to those who claim innocence." *Ohio v. Reiner*, 532 U.S. 17, 18, 21; 121 S. Ct. 1252 (2001). To the contrary, the Court has "emphasized that one of the Fifth Amendment's basic functions . . . is to protect *innocent* men . . . who otherwise might be ensnared by ambiguous circumstances." *Id.* at 21 (internal citations omitted).

Additionally, the Court has "recognized that truthful responses of an innocent witness, as well as those of a wrongdoer, may provide the government with incriminating evidence from the speaker's own mouth." *Grunewald v. United States*, 353 U.S. 391, 421-22; 77 S. Ct. 963; 1 L.Ed.2d 931 (1957). The Supreme Court has long held that "The privilege afforded not only extends to answers that would in themselves support a conviction under a [federal] criminal statute but

16

likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a [federal] crime." *Hoffman v. United States*, 341 U.S. 479, 486-487 (1951).

When Fifth Amendment rights are implicated in a civil case because of a pending criminal prosecution or pending investigation, a postponement of civil discovery until the termination of the criminal action can be an appropriate remedy. *See United States v. Kordel*, 397 U.S. 1, 9, 12 (1970). "[D]istrict courts have 'broad discretion in determining whether to stay a civil action while a criminal action is pending or impending.'" *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014) (*quoting Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich 2007)).

All forms of discovery directed at the Individual City Defendants present the potential for the invocation or waiver of their Fifth Amendment rights. Responding at a deposition or to an interrogatory requires a party to answer under oath by making statements in response that may be testimonial in nature. In both the prior criminal cases and the instant civil cases, the ICDs are accused of misconduct by carrying out their duties as former Emergency Managers and the former Director of Public Works. The overlap between the criminal and civil allegations is great and often times the civil complaints incorporate allegations made in the criminal complaint. For example, in *Walters*, the Plaintiffs set forth that "The State  of

Michigan has alleged in criminal indictments that the ACO process was a fraudulent scheme designed to move Flint into Wright's KWA project and to permit the issuance of bonds to cover Flint's share of the debt service." *Walters*, Dkt. 185-2 at ¶ 138. Further, numerous civil complaints set forth the actual criminal charges as a basis for civil liability. *See* Ex. A; *Carthan*, Dkt. 620-3 at 116-117 (chart setting forth the prior criminal charges against the ICDs in paragraph 356 of the Fourth Amended Class Action Complaint); *Walters*, Dkt. 185-2 at 120-121 (chart similar to *Carthan*).

Other civil proceedings have been temporarily postponed, in whole or in part, when continuing them would expose a litigant to an undue risk of losing the civil case or facing criminal prosecution. S*ee National Discount Corp. v. Holzbaugh*, 13 F.R.D. 236 (E.D. Mich. 1952) (deposition stayed in civil action wherein "the fabric of the fraud is identical with the fraud embraced by the allegations contained in the criminal proceeding now pending"); *Wehling v. Columbia Broadcasting Sys*., 608 F.2d 1084 (5th Cir. 1979) (case stayed until statute of limitations ran on potential criminal prosecution); *United States v. A Certain Parcel of Land, Moultonboro*, 781 F. Supp. 830, 834 (D. N.H. 1992) ("Court should endeavor to accommodate the claimant's fifth amendment rights in forfeiture proceedings."); *Clark v. United States*, 481 F. Supp. 1086 (S.D.N.Y. 1977) (deposition stayed); *Dienstag v. Bronsen*, 49 F.R.D. 327 (S.D.N.Y. 1970)

18

(protective order granted and deposition stayed); *Black Panther Party v. Smith*, 661 F.2d 1243 (D.C. Cir. 1981) (case remanded for reconsideration of dismissal based upon invocation of First and Fifth Amendment privileges against discovery); *United States v. U.S. Currency*, 626 F.2d 11, 15 (6th Cir. 1980) (dismissal reversed, "[c]learly, appellees should not be compelled to choose between the exercise of their Fifth Amendment privilege and the substantial sums of money which are the subject of this forfeiture proceeding. Therefore, the courts must seek to accommodate both the constitutional right against self-incrimination as well as the legislative intent behind the forfeiture provision."); *Campbell v. Gerrans*, 592 F.2d 1054 (9th Cir. 1979) (dismissal based upon refusal to answer four of the thirty-four "questionable" interrogatories reversed).

Therefore, there exists good cause and authority to protect the Fifth Amendment Rights of the ICDs by issuing a protective order temporarily postponing discovery in this matter.

**D. This Honorable Court should temporarily postpone the depositions of the ICDs and further written discovery to the ICDs to prevent the ICDs from having to choose to invoke their Fifth Amendment Rights or suffer adverse inferences against them in this matter and avoid other procedural complications.**

In a criminal case, a court must instruct the jury that it cannot draw an inference of guilt from a defendant's failure to testify about facts relevant to their case. *Griffin* v. *California,* 380 U.S. 609, 613; 85 S. Ct. 1229 (1965). However, in

19

civil cases, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976).

The *Baxter* rule is akin to the maxim that *though silence is not necessarily an admission, it is not a denial, either*. As Justice Brandeis stated "Silence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-154 (1923). Further, "In most circumstances silence is so ambiguous that it is of little probative force…. Silence gains more probative weight where it persists in the face of accusation, since it is assumed in such circumstances that the accused would be more likely than not to dispute an untrue accusation." *United States v. Hale*, 422 U.S. 171, 176; 95 S. Ct. 2133; 45 L. Ed. 2d 99 (1975).

In this matter, if the ICDs are forced to assert their Fifth Amendment Rights, they will certainly face the adverse inferences associated with doing so as this litigation progresses. However, this Honorable Court can allow the ICDs to preserve their Fifth Amendments Rights, not suffer civil adverse inferences by allowing their depositions to proceed at a later date, and allow this matter to be litigated on its merits based on a fully developed factual record.

Further, the general rule is that a civil defendant cannot assert a "blanket assertion" of their Fifth Amendment Rights, thus necessitating a question-by-

20

question assertion of their rights in response to the examiner's questions. *U.S. v. Hatchett*, 862 F. 2d 1249, 1251 (6th Cir. 1988), citing *In re Morganroth*, 718 F. 2d 161, 167 (6th Cir. 1983). This burdensome process can be avoided in this matter by postponing discovery as to the ICDs. The parties can also avoid the substantial and burdensome expense by postponing these likely unproductive depositions where the ICDs continuously assert their Fifth Amendment Rights. Therefore, the ICDs request that this Honorable Court issue a protective order temporarily postponing discovery as to the ICDs.

### E. Alternatively, this Honorable Court should seal and otherwise protect the depositions of the ICDs and further written discovery to the ICDs under Fed. R. Civ. P. 26(c)(1)(A), (B), (D), (E), and (F).

Alternatively, should this Honorable Court decide to not issue a protective order temporarily postponing discovery as to the ICDs, then this Honorable Court has the authority to craft a protective order sealing records and otherwise protecting the ICDs' Fifth Amendment Rights as well as protecting them from annoyance, embarrassment, oppression, undue burden, and undue expense. Fed. R. Civ. P. 26(c)(1), *et seq*.

This Honorable Court has broad powers when crafting a protective order required by justice when good cause exists to do so. *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004); *In re Wilkinson,* 137 F.3d 911, 918 (6th Cir. 1998). In this matter, as set forth above, good cause exists to craft a protective

order that will protect the Fifth Amendment Rights of the ICDs as well as protect them from annoyance, embarrassment, oppression, undue burden, and undue expense. Fed. R. Civ. P. 26(c)(1). When crafting this protective order, the ICDs request that this Honorable Court forbid inquiries into issues where potential criminal liability for the ICDs is present (Fed. R. Civ. P. 26(c)(1)(D)) and designate that only the attorneys in these cases be allowed to attend any depositions (Fed. R. Civ. P. 26(c)(1)(E)) because the potential for information to be disclosed or for the proceedings to be interrupted is great in this matter due to the publicity that the Flint Water Crisis and the ICDs have received for several years.

Further, the ICDs request that any protective order will provide that all depositions and written discovery responses be sealed. Fed. R. Civ. P. 26(c)(1)(F). This is the only method that will allow the ICDs to testify at depositions and respond to written discovery without being forced to choose between asserting their Fifth Amendment Rights or fully defending themselves in these actions. However, this procedure will present additional issues as this litigation proceeds and is therefore less desirable than temporarily postponing discovery as to the ICDs.

*Shane Group, Inc.* is a class action case based on allegations that Blue Cross Blue Shield of Michigan engaged in health insurance price-fixing. *Shane Group,*

22

*Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 302 (6th Cir. 2016). In this case, the Sixth Circuit vacated the district court's order approving a settlement, vacated orders to seal, and remanded for "an open and vigorous examination of the settlement's fairness to the class." *Id*. The Court held that while blanket protective orders are acceptable during the discovery stage of litigation, "[a]t the adjudication stage, however, very different considerations apply." *Id*. at 305, quoting *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The Court further stated that "The line between these two stages, discovery and adjudicative, is crossed when the parties place material in the court record. Unlike information merely exchanged between the parties, '[t]he public has a strong interest in obtaining the information contained in the court record.'" *Id*.; quoting *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1180 (6th Cir. 1983) (internal citations omitted). In vacating the district court's orders and remanding the matter, the Court held, in part, that "Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Id*. at 309.

While it is appropriate to seal the record and restrict discovery as requested by the ICDs above, issues similar to those in *Shane Group, Inc.* are likely to present themselves in this litigation as this matter moves towards the adjudicative

phase. Of primary concern for the ICDs is that previously sealed records would be available to prosecutors and could be used against them in a future criminal prosecution. As such, rather than forcing the ICDs to engage in discovery at this point in time (beyond the document production they are currently engaged in), it is more appropriate to temporarily postpone their depositions and written discovery to them until May 1, 2020 to allow the ICDs to more accurately assess how or when to assert their Fifth Amendment Rights in this litigation.

## CONCLUSION AND REQUEST FOR RELIEF

This Honorable Court can accomplish two important goals by postponing the depositions and written discovery as to the ICDs. First, this litigation will continue to progress as discovery proceeds by and among other parties and non-parties during the temporary postponement. Second, the ICDs' Fifth Amendment Rights will be preserved. With these two important goals in mind, the ICDs request that this Honorable Court issue a protective order as set forth in this Motion.

**Respectfully Submitted,**

*Attorneys for Defendant*
*Gerald Ambrose*

*/s/  Barry A. Wolf (w/consent)*
BARRY A. WOLF (P40709)
Law Office of Barry A. Wolf, PLLC
503 S. Saginaw Street, Suite 1410
Flint, MI  48502
Ph.: (810)762-1084
E: bwolf718@msn.com

*Attorneys for Defendant*
*Howard Croft*

*/s/ Alexander S. Rusek*
ALEXANDER S. RUSEK (P77581)
White Law PLLC
2549 Jolly Road, Suite 340
Okemos, MI 48864
Ph.: (517) 316-1195
E: alexrusek@whitelawpllc.com

*Attorneys for Defendant*
*Darnell Earley*

*/s/ Todd Perkins (w/consent)*
TODD PERKINS (P55623)
Perkins Law Group
615 W. Griswold Suite 400
Detroit, MI 48226
Ph.: (313)964-1702
E: tperkins@perkinslawgroup.net

25

_____

## CERTIFICATE OF SERVICE
_____

I hereby certify that on September 27, 2019 I electronically filed the above document with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to all counsel of record.

**Respectfully Submitted,**

*/s/ Alexander S. Rusek*
ALEXANDER S. RUSEK (P77581)
White Law PLLC
2549 Jolly Road, Suite 340
Okemos, MI 48864
Ph.: (517)316-1195
E: alexrusek@whitelawpllc.com