```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DIVISION

 3

 4
           In Re   FLINT WATER CASES    Case No. 16-10444
 5

 6

 7   _____/

 8                   STATUS CONFERENCE

 9
           BEFORE THE HONORABLE JUDITH E. LEVY
10             UNITED STATES DISTRICT JUDGE

11              SEPTEMBER 25, 2019

12
                APPEARANCES IN ALPHABETICAL ORDER:
13
                Charles E. Barbieri
14              Foster, Swift, Collins & Smith, P.C.
                313 South Washington Square
15              Lansing, MI 48933

16              Esther Berezofsky
                Berezofsky Law Group, LLC
17              210 Lake Drive East, Suite 101
                Cherry Hill, NJ 08002
18
                Frederick A. Berg
19              Butzel Long
                150 West Jefferson, Suite 100
20              Detroit, MI 48226

21              (Appearances continued on next page)

22
                For a Certified Transcript Contact:
23              Jeseca C. Eddington, RDR, RMR, CRR, FCRR
                Federal Official Court Reporter
24              United States District Court
                200 East Liberty Street
25              Ann Arbor, Michigan 48104
```

```
1              Teresa Ann Caine Bingman
               Law Offices of Teresa A. Bingman
2              1425 Ambassador Drive
               Okemos, MI 48864
3
               Jayson E. Blake
4              McAlpine PC
               3201 University Drive, Suite 100
5              Auburn Hills, MI 48326

6              James M. Campbell
               Campbell, Campbell, Edwards & Conroy
7              One Constitution Plaza, Suite 300
               Boston, MA 02129-2025
8
               Alaina Devine
9              Campbell Conroy & O'Neil PC
               1 Constitution Wharf, Suite 310
10             Boston, MA 02129

11             Danielle L. Dezbor
               Fieger, Fieger, Kenney & Harrington, PC
12             19390 West 10 Mile Road
               Southfield, MI 48075
13
               Philip A. Erickson
14             Plunkett & Cooney
               325 East Grand River Avenue, Suite 250
15             East Lansing, MI 48823

16             James A. Fajen
               Fajen & Miller, PLLC
17             3646 West Liberty Road
               Ann Arbor, MI 48103
18
               Joseph F. Galvin
19             Genesee County Drain Commissioners
               4610 Beecher Road
20             Flint, MI 48532

21             William H. Goodman
               Goodman and Hurwitz, P.C.
22             1394 East Jefferson Avenue
               Detroit, MI 48207
23
               Philip A. Grashoff, Jr.
24             Smith Haughey Rice & Roegge
               213 South Ashley, Suite 400
25             Ann Arbor, MI 48104
```

September 25, 2019

```
 1                          James F. Graves
                            Sinas Dramis Law Firm
 2                          3380 Pine Tree Rd.
                            Lansing, MI 48911
 3
                            Deborah E. Greenspan
 4                          Special Master

 5                          Julie H. Hurwitz
                            Goodman and Hurwitz, P.C.
 6                          1394 East Jefferson Avenue
                            Detroit, MI 48207
 7
                            Larry R. Jensen
 8                          Hall Render Killian Heath & Lyman, PLLC
                            201 West Big Beaver Road, Suite 1200
 9                          Troy, MI 48084

10                          William Young Kim
                            City of Flint
11                          1101 South Saginaw Street, Third Floor
                            Flint, MI 48502
12
                            Sheldon H. Klein
13                          Butzel Long, P.C.
                            Stoneridge West, 41000 Woodward Avenue
14                          Bloomfield Hills, MI 48304

15                          Richard S. Kuhl
                            Michigan Department of Attorney General
16                          ENRA Division, P.O. Box 30755
                            Lansing, MI 48909
17
                            Patrick J. Lanciotti
18                          Napoli Shkolnik Law PLLC
                            360 Lexington Avenue, 11th Floor
19                          New York, NY 10017

20                          Theodore J. Leopold
                            Cohen Milstein Sellers and Toll PLLC
21                          2925 PGA Boulevard, Suite 200
                            Palm Beach Gardens, FL 33410
22
                            Cynthia M. Lindsey
23                          Cynthia Lindsey & Associates
                            8900 East Jefferson Avenue, Number 612
24                          Detroit, MI 48214

25
```

```
 1                    Christopher J. Marker
                      O'Neill, Wallace & Doyle P.C.
 2                    300 Saint Andrews Road, Suite 302
                      Saginaw, MI 48638
 3
                      T. Santino Mateo
 4                    Perkins Law Group, PLLC
                      615 Griswold, Suite 400
 5                    Detroit, MI 48226

 6                    Stephen F. Monroe
                      Marc J. Bern & Partners LLP
 7                    225 West Washington Street, Suite 2200
                      Chicago, IL 60606
 8
                      Thaddeus E. Morgan
 9                    Fraser, Trebilcock
                      124 West Allegan Street, Suite 1000
10                    Lansing, MI 48933

11                    Michael J. Pattwell
                      Clark Hill, PLC
12                    212 East Cesar E. Chavez Avenue
                      Lansing, MI 48906
13
                      Todd Russell Perkins
14                    Perkins Law Group, PLLC
                      615 Griswold, Suite 400
15                    Detroit, MI 48226

16                    Michael L. Pitt
                      Pitt, McGehee, Palmer & Rivers, PC
17                    117 West Fourth Street, Suite 200
                      Royal Oak, MI 48067-3804
18
                      Alexander S. Rusek
19                    White Law PLLC
                      2400 Science Parkway, Suite 201
20                    Okemos, MI 48864

21                    Herbert A. Sanders
                      The Sanders Law Firm PC
22                    615 Griswold Street, Suite 913
                      Detroit, MI 48226
23
                      Darryl Segars
24                    The Segars Law Firm
                      615 Griswold Street, Suite 913
25                    Detroit, MI 48226
```

```
 1  ║                    Ashley Shea
    ║                    Shea Aiello, PLLC
 2  ║                    26100 American Drive, Second Floor
    ║                    Southfield, MI 48034
 3  ║
    ║                    Susan Elizabeth Smith
 4  ║                    Goldberg Segalla LLP
    ║                    One North Charles Street, Suite 2500
 5  ║                    Baltimore, MD 21201
    ║
 6  ║                    Gregory Stamatopoulos
    ║                    Weitz & Luxenberg, P.C.
 7  ║                    719 Griswold, Suite 620
    ║                    Detroit, MI 48226
 8  ║
    ║                    Corey M. Stern
 9  ║                    Levy Konigsberg, LLP
    ║                    800 Third Avenue, Suite 11th Floor
10  ║                    New York, NY 10022
    ║
11  ║                    Christopher A. Stritmatter
    ║                    Simen, Figura & Parker
12  ║                    5206 Gateway Centre, Suite 200
    ║                    Flint, Michigan 48507
13  ║
    ║                    Craig S. Thompson
14  ║                    Sullivan, Ward
    ║                    25800 Northwestern Highway, Suite 1000
15  ║                    Southfield, MI 48075
    ║
16  ║                    Barry A. Wolf
    ║                    Barry A. Wolf, Attorney at Law, PLLC
17  ║                    503 South Saginaw Street, Suite 1410
    ║                    Flint, MI 48502
18  ║
    ║                    Trachelle Young
19  ║                    Trachelle C. Young & Associates, PLLC
    ║                    2501 North Saginaw Street
20  ║                    Flint, Michigan 48505
    ║
21  ║                    Edwar A. Zeineh
    ║                    Law Office of Edwar A. Zeineh, PLLC
22  ║                    2800 East Grand River Avenue, Suite B
    ║                    Lansing, MI 48912
23  ║
    ║            To Obtain a Certified Transcript Contact:
24  ║              Jeseca C. Eddington, RDR, RMR, CRR, FCRR
    ║                    Federal Official Court Reporter
25  ║                    United States District Court
    ║        200 East Liberty Street - Ann Arbor, Michigan 48104
```

*In Re* Flint Water Cases - Case No. 16-10444

September 25, 2019

1                          **I N D E X**

2     MISCELLANY

3              Proceedings.................................7
              Certificate................................45
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **P R O C E E D I N G S**

2                THE CLERK:  Calling the Flint Water Cases.

3                THE COURT:  All right.  Well we're now on the record

4        in the Flint Water Cases.  And this is the date and a little

5        bit after the time that was set for a hearing.  Essentially a

6        status conference and a number of miscellaneous issues that

7        are traveling along with us in the case.

8                And I just want to say in general that although civil

9        litigation is not what we often wish it could be in terms of

10       filing a case and soon thereafter having a trial and a

11       resolution of the case, instead there are a lot of twists and

12       turns.  I'm trying not to use water words like ebbs and flows.

13       But there really are.

14               And there are a lot of complicated legal issues that

15       come up in the course of the case.  And at one o'clock we had

16       a meeting in chambers with lawyers for the plaintiffs for the

17       putative class action that is pending as well as

18       representatives of many of the defendants.

19               And we spent about an hour and 15 minutes I think

20       working very hard on a number of the sort of details that

21       weigh the case down.  And my job in all of this is to on the

22       one hand keep my foot on the gas pedal so that the cases move

23       forward towards resolution for everyone's benefit.

24               And I just have to repeat once again that those who

25       -- there is no one in this room who does not benefit from

September 25, 2019

1    moving these cases along.  And certainly plaintiffs or

2    potential plaintiffs want to see a resolution.  But also the

3    defendants need their lives to move on, need a resolution, and

4    need to be able to present their best defense without memories

5    fading, documents getting lost or destroyed and things of that

6    nature.

7         So I think it benefits everyone to keep working

8    consistently and diligently on the cases.

9         So what I set forth here is an agenda that has a lot

10   of weeds.  We are really in the weeds trying to work out a

11   system for some pretty complicated litigation to go forward.

12        So with those just preliminary remarks we still need

13   to have appearances for the record.  So what I'd like to do,

14   we have some people who I think are not lawyers sitting in our

15   jury box, but we also have some lawyers.  And maybe you are

16   lawyers but not lawyers on the case.  And I have not

17   previously heard your names as lawyers.

18        So what I'd like to do is we have Deborah Greenspan

19   is sitting in the front corner.  She's the special master who

20   I appointed to assist me and the parties, all of the parties

21   in managing the litigation.  So that's Deborah Greenspan.

22        MR. KURTZ:  Chris Stritmatter for Ed Kurtz.

23        THE COURT:  Okay.

24        MR. BLAKE:  Jayson Blake, liaison counsel for the

25   state court action.

September 25, 2019                                                    9

1              THE COURT:  Okay.

2              MR. STAMATOPOLOUS:  Gregory Stamatopolous on behalf

3    of class plaintiffs.

4              THE COURT:  Just a minute.  My pen ran out.  Okay.

5    After Jayson Blake.

6              MR. STAMATOPOLOUS:  Gregory Stamatopolous on behalf

7    of class plaintiffs.

8              THE COURT:  Oh right.  Sorry.

9              MS. HURWITZ:  Good afternoon, Judge.  Julie Hurwitz

10   on behalf of the class plaintiffs.

11             MS. BEREZOFSKY:  Esther Berezofsky on behalf of class

12   plaintiffs.

13             MS. LINDSEY:  Good afternoon, Your Honor.  Cynthia

14   Lindsey on behalf of class plaintiffs.

15             THE COURT:  Thank you.

16             MS. YOUNG:  Good afternoon, Your Honor.  Trachelle

17   Young on behalf of class plaintiffs.

18             MS. BINGMAN:  Good afternoon.  Teresa Bingman on

19   behalf of class plaintiffs.

20             MR. GOODMAN:  Good afternoon, Your Honor.  Bill

21   Goodman on behalf of class plaintiffs and on behalf of the

22   Marble plaintiffs.  Sole leading plaintiffs' counsel in that

23   case, but not for long.

24             THE COURT:  Okay.  Thank you.  And I did receive a

25   motion to withdraw, Mr. Pitt, from a couple of your

September 25, 2019

10

1    colleagues.  Could they submit a proposed order and then we'll

2    get that entered.  Okay.

3              MR. GOODMAN:  I believe that Ms. Bingman also has

4    submitted one this morning.

5              THE COURT:  Oh.  I'm not sure I saw that.

6              MS. BINGMAN:  It didn't go through yet.

7              THE COURT:  Oh, okay.

8              MS. BINGMAN:  Thank you.

9              THE COURT:  Good.  Thank you.

10             MS. DEZBOR:  Good afternoon, Judge.  Danielle Dezbor

11   on behalf of individual plaintiffs.

12             MR. LANCIOTTI:  Patrick Lanciotti for the individual

13   plaintiffs.

14             MR. STERN:  Good afternoon, Your Honor.  Corey Stern

15   as co-liaison counsel for individual plaintiffs.

16             MR. PITT:  Michael Pitt and Mr. Leopold was here for

17   co-lead class.

18             THE COURT:  Okay.

19             MR. KIM:  Good afternoon, Your Honor.  William Kim on

20   behalf of City of Flint.

21             MR. BERG:  Rick Berg also for City of Flint.

22             MR. RUSEK:  Good afternoon, Your Honor.  Alexander

23   Rusek on behalf of Howard Croft.

24             MR. ERICKSON:  Your Honor, Philip Erickson here on

25   behalf of the LAN defendants and Leo A Daly.

```
 1            MR. THOMPSON:  Good afternoon, Your Honor.  Craig
 2   Thompson for defendant Rowe Professional.
 3            MS. DEVINE:  Good afternoon, Your Honor.  Alaina
 4   Devine for VNA defendants.
 5            MR. CAMPBELL:  Good afternoon, again, Your Honor,
 6   James Campbell.  I represent the VNA defendants as well.
 7            MR. MONROE:  Steve Monroe on behalf of the Bern
 8   plaintiffs, Your Honor.
 9            THE COURT:  Thank you.
10            MR. FAJEN:  James Fajen on behalf of Adam Rosenthal.
11            MR. GRAVES:  Jim Graves Your Honor on behalf of the
12   Estate of Margaret Pete.
13            MR. SANDERS:  Good afternoon, Your Honor.  Herb
14   Sanders on behalf of the Alexander plaintiffs.
15            THE COURT:  Thank you.
16            MR. KLEIN:  Good afternoon, Your Honor.  Sheldon
17   Klein on behalf of the City of Flint.
18            MR. MORGAN:  Thaddeus Morgan for Liane Shekter Smith.
19            MR. PATTWELL:  Mike Pattwell for Dan Wyant and Brad
20   Wurfel.
21            MR. GRASHOFF:  Philip Grashoff on behalf of Stephen
22   Busch.
23            MR. ZEINEH:  Good afternoon, Your Honor.  Edwar
24   Zeineh on behalf of Daugherty Johnson.
25            MR. MARKER:  Good afternoon, Your Honor.  Christopher
```

September 25, 2019                                           12

1    Marker here on behalf of Michael Glasgow.

2            MS. SMITH:  Susan Smith here on behalf of McLaren

3    Mutual Medical Center.

4            MR. BARBIERI:  Charles Barbieri on behalf of Patrick

5    Cook and Michael Prysby.

6            MR. SEGARS:  Darryl Segars on behalf of the Alexander

7    plaintiffs.

8            MS. SHEA:  Ashley Shea on behalf of the class

9    plaintiffs.

10           MR. PERKINS:  Good afternoon, Your Honor, and good

11   afternoon to your staff.  May it please this honorable Court,

12   my name is Todd Russell Perkins appearing on behalf of Mr.

13   Earley.

14           THE COURT:  Thank you.

15           MR. MATEO:  Good afternoon, Your Honor.  T. Santino

16   Mateo also on behalf of Mr. Earley.

17           MR. KUHL:  Good afternoon.  Richard Kuhl for the

18   state defendants.

19           MR. GALVIN:  Good afternoon, Your Honor.  Joseph

20   Galvin for Jeff Wright, Genesee County Drain Commission.

21           MR. WOLF:  Good afternoon, Your Honor.  Barry Wolf on

22   behalf of Gerald Ambrose.

23           MR. JENSEN:  Good afternoon, Your Honor.  Larry

24   Jensen on behalf of Hurley Medical Center, Ann Newell, and

25   Nora Birchmeier.

```
 1              THE COURT:  It's just not enough lawyers.  Okay.
 2         Well, what we have is the agenda to work through.
 3    And the first issue on the agenda took the majority of our
 4    time in chambers.  And it's the issue of scheduling
 5    depositions.
 6         And what has become evident is now that discovery is
 7    underway in these cases, the scheduling of depositions, which
 8    is the oral questioning of witnesses or parties in the case,
 9    has become a little bit unwieldy.
10         And Mr. Campbell for the VNA defendants, Mr.
11    Erickson, and others for LAN explained.  And we discussed
12    together that there are potentially in the next wave of the
13    litigation 600 depositions to be taken over significantly
14    fewer than 600 days.  And so that means that more than one
15    deposition will need to take place on a day.
16         Some depositions can take 7 hours.  But also I have
17    authorized depositions to last more than -- longer than the
18    rules provide for in this case because there are multiple
19    parties wanting to question the same witness.
20         So what we have -- what we arrived at as -- is that
21    we could not solve the problem in chambers in terms of how the
22    get these scheduled when everyone that needs to or wants to
23    attend is available to attend and how to make sure that no one
24    goes without notice of when their deposition is.
25         So to that end, what we're going to do is have a
```

1   group of representative lawyers propose an amendment to the

2   case management order that would have a discovery scheduling

3   and a discovery taking protocol in it.  And that will include

4   a representative of the class plaintiffs.

5        I think I heard that Jordan Connors will do that on

6   behalf of the putative glass.  A represented from Veolia from

7   LAN from the individual plaintiffs.  Ms. Smith for McLaren.

8   Potential -- did we end up including -- Mr. Kim, did you want

9   --

10        MR. KIM:  Yes, Your Honor.

11        THE COURT:  Okay.  You are on this.  And this group

12  will present -- submit by e-mail a proposed protocol to be

13  added to the -- an amended case management order.  It will

14  include, as I just said, how to schedule these things.  But

15  also a protocol for the allocation of time during a deposition

16  with a lead questioner.  But time reserved for other lawyers

17  for other parties to ask questions as well.

18        And I just want to remind everybody that depositions

19  are a matter of public interest at times and members of the

20  public can attend depositions.  They usually don't.  I know of

21  very few times that they have done that.  But so I just take

22  the issue of scheduling them and conducting them in an orderly

23  way very seriously.

24        So is there anything further on that that anyone

25  wants to be heard on?

*In Re* Flint Water Cases - Case No. 16-10444

```
 1              The schedule is not a part of the docket of a case.
 2    That's among the lawyers to work out.  But it's important to
 3    me that it be worked out so that all parties to the case have
 4    access to the depositions.  So okay.  Great.
 5              And the next issue is -- also relates to discovery.
 6    And there is a protocol in place already for nonparty
 7    subpoenas that has been already sort of hammered out and
 8    agreed upon and implemented and ordered by myself in the case.
 9    And but Mr. Weglarz -- is Mr. Weglarz here?
10              MS. DEZBOR:  No.  I'm here for him, Judge.
11              THE COURT:  Okay.  State your name, your client, and
12    what you'd like to say on this issue.
13              MS. DEZBOR:  Yes, Your Honor.  Danielle Dezbor here
14    for Todd Weglarz for the individual plaintiffs Brown and
15    Rogers.  And Mr. Weglarz and I discussed this point this
16    morning.  And our only concern is at present we have to go
17    through other counsel, other plaintiffs counsel, to issue
18    subpoenas.
19              We just wanted to be able to issue subpoenas prior to
20    depositions in order to get the records that we need prior to
21    these depositions to be able to engage in meaningful deps.
22              THE COURT:  Okay.  And I -- that's what I sort of
23    understood in the submission from the co-liaison counsel was
24    the issue that you wanted to bring to my attention.
25              MS. DEZBOR:  Yes.
```

1          THE COURT:  And at this point the protocol is there

2    because this is an unwieldy complex piece of litigation.  And

3    there is a significant and important need to have things

4    coordinated.  Because undoubtedly some of the subpoenas you

5    want to issue either have already been issued and then we

6    don't want to burden the target of these subpoenas to reissue

7    information.  And other people may also want that information.

8          And so I -- at this point I will deny the request to

9    issue your own subpoenas in your case.  In part because at

10   this point we're traveling down a road to address the

11   legionella cases.  And we -- I have not yet -- it's not fully

12   briefed even in terms of knowing what causes of action survive

13   the motions to dismiss and what don't.

14         So I think at this point I don't see a compelling

15   reason to have one case of all this litigation go off on its

16   own track issuing subpoenas, getting documents, not putting

17   them -- not identifying them in the same way that the protocol

18   requires.

19         So I appreciate your interest in that and understand

20   it but ask that at this time you continue to abide by the

21   protocol.  And if you have a problem and it's not working, you

22   can certainly seek to get that issue on a discovery conference

23   call at a later date.

24         MS. DEZBOR:  Thank you, Judge.

25         MR. GOODMAN:  Your Honor, may I?

September 25, 2019                                              17

1           THE COURT:  Certainly.

2           MR. GOODMAN:  William Goodman on behalf of -- in this

3    case on behalf of the Marble plaintiffs.  It's true that --

4    everything you said of course is absolutely true and in order.

5               However the cases, Mr. Weglarz's cases as well as the

6    Marble case, have a novel and separate defendant in them in

7    the guise of McLaren Hospital.  And with regards to taking

8    those depositions, I take it what the Court was saying is that

9    we need to wait for further instruction as to the direction of

10   that part of the case and then consider both issuance of

11   subpoenas and taking depositions at that point.

12          THE COURT:  Yes.  I mean -- yes.  I mean, and what

13   was on the agenda was the document -- nonparty document

14   subpoenas.  And now you're referring to taking depositions in

15   a case that has not yet got an answer.

16          MR. GOODMAN:  That's right.

17          THE COURT:  Yeah.  So what I ask is that you, you

18   know, await your case to have an answer and enter into

19   discovery.

20          MR. GOODMAN:  However, in the course of the discovery

21   that is going to be scheduled or scheduled, there may be

22   questions that arise with regard to these cases which I take

23   both counsel and I would like to be able to pose in the course

24   of those depositions.

25          THE COURT:  Absolutely.  And that's where you have

September 25, 2019                                            18

```
 1    Mr. Stern and Mr. Lanciotti and others representing your
 2    interest in getting a discovery protocol in place so that more
 3    than one lawyer can ask questions of a defendant or a party or
 4    a witness.
 5           So I don't yet know what they're going to present to
 6    me.  I'm looking forward to it.  But I'm certain it has been
 7    resolved in other cases and can be resolved here so that you
 8    can either have a certain amount of time reserved to ask the
 9    questions specific to your clients' interest.
10           MR. GOODMAN:  Our clients and our novel defendant as
11    well.
12           THE COURT:  Certainly.
13           MR. GOODMAN:  Thank you.
14           THE COURT:  Yeah.
15           MR. GRASHOFF:  Your Honor.
16           THE COURT:  Mr. Grashoff.  So please state your name
17    and your client.
18           MR. GRASHOFF:  Philip Grashoff on behalf of Stephen
19    Busch.
20           May I take a step back and ask for clarification?
21           THE COURT:  Yes.
22           MR. GRASHOFF:  I heard the Court indicate that the
23    depositions are basically open to the public.  If that is the
24    case, has the Court considered that some of the public that
25    may attend these depositions may be parties to this
```

1    litigation?  Either individual plaintiffs or they may be class

2    action representatives.

3            I would ask the Court to clarify whether they should

4    be allowed to hear what other witnesses are testifying to.  I

5    don't think that that's proper and would urge the Court to

6    exclude.

7            THE COURT:  Certainly parties could be sequestered if

8    you think it's appropriate and not permitted in the room.

9            MR. GRASHOFF:  I mean, we've got --

10           THE COURT:  I'm not saying anything new about this

11   case.  It's all cases.  Depositions are not sealed proceedings

12   unless ordered by the Court to be sealed.

13           MR. GRASHOFF:  As you have said many times, this is a

14   little bit of a unique circumstance.  We have this overarching

15   class action that we just know the representatives.  And we

16   have individual plaintiffs.  I am suggesting that it's

17   probably not proper for them to attend a deposition to hear

18   what other witnesses are saying.

19           THE COURT:  Okay.  Well, then we'll take that on a

20   case by case basis.  If a witness shows up -- or a party shows

21   up or and wants to listen to another person's deposition that

22   they really should be sequestered from, you'll request it

23   right then and there.

24           And if that can't be accomplished, you'll call me.

25   There will be a court reporter present there.  We'll go on the

 1   record.  And I'll make a decision at that time.

 2          MR. GRASHOFF:  Thank you.

 3          THE COURT:  But I would urge people to tell your

 4   clients that they don't want to jeopardize their position in

 5   the case by listening to another party's testimony that could

 6   impact them.  But if it's an expert and a plaintiff wants to

 7   listen to the legionella expert, I don't see why -- how that

 8   could be a problem, but ...

 9          MR. GRASHOFF:  As you say, we'll deal with it on a

10   case by case basis.

11          THE COURT:  Yeah.

12          MR. GRASHOFF:  Thank you.

13          THE COURT:  Exactly.  But Mr. Grashoff, while I have

14   your attention, we previously had a discovery conference call

15   where -- which related to whether Mr. Stephen Busch, your

16   client, could be called in to a deposition prior to December

17   26th of 2019.

18          And I asked that the plea agreement that he entered

19   into with the State of Michigan be provided to me, which you

20   did.  And I appreciate it very much.  And I was surprised but

21   also pleased to read that there was a provision that you did

22   not share with me, which reads that your client understands

23   that he may be subpoenaed to testify at a hearing and/or trial

24   and he agrees to appear at any hearing and/or trial and will

25   not invoke the Fifth Amendment right not to testify.

```
 1              So we don't need to wait until December 27th of 2019
 2      for his deposition because it's part of his plea agreement
 3      with the State of Michigan that he won't invoke the Fifth
 4      Amendment right not to testify at a hearing or trial.  And in
 5      this case, hearing.
 6              MR. GRASHOFF:  Did I hear you say I didn't share that
 7      with you?
 8              THE COURT:  You sent this to me.  But you said that
 9      -- I understood you to be indicating that there was -- that he
10      needed to wait until after the 26th of December because
11      otherwise he would need to invoke his Fifth Amendment right
12      not to testify.
13              MR. GRASHOFF:  That's correct.
14              THE COURT:  And he doesn't.  He's agreed here --
15              MR. GRASHOFF:  With the state Attorney General's
16      Office on the state charges.
17              THE COURT:  It's not limited to that.  But we won't
18      go into that.  So I'm just indicating I think it was LAN that
19      was seeking his deposition that if they wished to do it before
20      December 26th, I think this agreement requires that he appear
21      and testify and not invoke his Fifth Amendment rights.
22              MR. GRASHOFF:  Your Honor, may I request the
23      opportunity to have Mr. Mark Kriger submit a memo to you
24      explaining why that is not correct interpretation?
25              THE COURT:  No.  You can submit it.  Mr. Kriger is
```

```
 1   not on our docket.  If he wants to file an appearance, he can
 2   file an appearance.  But I can't accept a brief from somebody
 3   who doesn't represent a party.
 4          MR. GRASHOFF:  I will file it and attach his
 5   declaration and memo to it.  And he is --
 6          THE COURT:  Well only do that if you learn from I
 7   think it's Mr. Erickson that he wants to take the deposition
 8   before December 26th.  We don't need unnecessary filings.  But
 9   this is clearly important and I read this as saying he won't
10   invoke his Fifth Amendment rights.
11          MR. GRASHOFF:  For the record, Your Honor,
12   respectfully we disagree with the Court's interpretation of
13   that order and interpretation of that language as it applies
14   to these proceedings.
15          THE COURT:  Okay.
16          MR. GRASHOFF:  Thank you.
17          THE COURT:  Thank you.  All right.  So we're up to
18   the third item to be discussed today.  And what I have is I
19   have a motion from Veolia to strike the proposed definitions
20   of classes in the Carthan master class action.  And that has
21   been fully briefed and I will hold an oral argument on that at
22   our next status conference which is November 6th.
23          So for those lawyers who are party to that motion,
24   that is when we will hear.  We'll put this in an order.  But
25   that's when we'll have an oral argument.  I don't anticipate
```

1    making a decision at the hearing.  But that could change if I

2    don't even -- if it changes.  We'll find out.

3           So we now are up to going from the weeds to the tiny

4    blades of grass on the master and short form complaints.  And

5    the first issue is whether Liane Shekter Smith's name should

6    be removed from the amended short form complaint.  Liane

7    Shekter Smith is no longer in those cases.  And so it is fine

8    with me to remove it going forward.

9           But Mr. Stern, did you have a proposal for how we

10   might address that?

11          MR. STERN:  Your Honor, Corey Stern.  If the idea is

12   that the actual short form complaint that is available to

13   people has her name removed, that's fine for us to do.  If the

14   idea is that everybody who's ever filed a short form complaint

15   is going to file a new short form complaint, then that would

16   be very difficult.

17          THE COURT:  No, I don't want to do that.  But I think

18   going forward it makes sense to not have her name on the short

19   form complaint.  Just not to confuse any new cases.  We've had

20   a couple of new cases filed within the last month.  So I just

21   want to make sure that --

22          MR. STERN:  So I think that the short form complaint

23   might be available on the Court's website.  Because I'm not

24   sure how new filers are getting it.  Because until they enter

25   the litigation, I'm not sure that they're aware of even what

1    the process is.

2              So I can submit to the Court a new short form

3    complaint that does not contain the names of defendants that

4    have been dismissed from the case.

5              THE COURT:  Okay.

6              MR. STERN:  And then if the Court, if there's some

7    electronic way in which the Eastern District of Michigan can

8    put the short form complaint on the website as it has with

9    other documents that make it available to potential

10   plaintiffs, that would probably be the best way to deal with

11   it.

12             THE COURT:  Okay.  That sounds good.

13             MR. STERN:  And I can get that to you as early as

14   Monday or Tuesday of next week.

15             THE COURT:  Okay.

16             MR. MORGAN:  Your Honor, Thad Morgan for Liane

17   Shekter Smith.

18             THE COURT:  Yes, Mr. Morgan.

19             MR. MORGAN:  So to clarify, what I just heard the

20   Court say is that my client does not have to answer any

21   nonclass individual lawsuits even if their name is checked?

22             THE COURT:  Absolutely.

23             MR. MORGAN:  Okay.

24             THE COURT:  And that brings up -- thank you for

25   stating it that way.  That really brings up the next -- well,

```
 1    an issue that's in here.  Which is that as the case has
 2    evolved, after the Walters and Sirls opinion from the Court
 3    came out, there were certain causes of action that were not
 4    viable and are not going to continue.
 5            No defendant has to answer allegations that might
 6    have been incorporated in a short form complaint about causes
 7    of action that no longer exist.
 8            MR. MORGAN:  I have one other issue and this comes
 9    under --
10            MADAM COURT REPORTER:  It comes under what?
11            THE COURT:  Thad Morgan.
12            MR. MORGAN:  Thad Morgan for Liane Shekter Smith.
13    Sorry.  There is no hyphen between Shekter and Smith.  I don't
14    know if the Court can correct that in the captions.
15            THE COURT:  Okay.  We weren't sure.  We spent quite a
16    bit of time going back through the record.  And we will
17    correct it now that we know.
18            MR. MORGAN:  Thank you.  It will save phone calls
19    from my client.
20            THE COURT:  Okay.  We have Mr. Goodman then Mr. Klein
21    and Mr. Erickson.
22            MR. GOODMAN:  Is the Court's ruling with regard to
23    Shekter Smith being essentially struck from the short form
24    complaints applicable to the Marble case as well?  Because I
25    think Marble was different than Sirls and --
```

```
 1              THE COURT:  Well, I don't know.  I'd have to look
 2    back at the Marble case.  I mean, Walters and Sirls there was
 3    a statute of limitations problem with Shekter Smith.  And Mr.
 4    Morgan can you tell me where she has landed in Carthan?
 5              MR. MORGAN:  Carthan she's still a party to.  Carthan
 6    is a class action.
 7              THE COURT:  Yeah, yeah.  So --
 8              MR. GOODMAN:  I was addressing the Marble case.
 9              THE COURT:  Oh, the Marble.
10              MR. GOODMAN:  I'm sorry, Your Honor.
11              THE COURT:  I see.
12              MR. GOODMAN:  Because in Marble in the original
13    filing so called long-form complaint --
14              THE COURT:  Yes, it's applicable.
15              MR. GOODMAN:  She was identified as a defendant, I
16    believe.  And that was within the statute of limitations.
17              MR. MORGAN:  But Your Honor, Thad Morgan for Liane
18    Shekter Smith.  The Court's orders are clear in that the
19    master short form complaint is the controlling and operative
20    pleading for all individual non class --
21              THE COURT:  This is a tough question.
22              MR. MORGAN:  Which is why I asked for clarification.
23              THE COURT:  Yeah.
24              MR. MORGAN:  So if that's the case, even if she was
25    named in the original Marble complaint, that was superseded
```

1    and supplanted by the master long form --

2              THE COURT:  It was.  I understand what you're saying.

3    But Mr. Goodman is pointing out that in Walters and Sirls, she

4    was not in their complaints.  And they wanted to amend to

5    include her.  And I didn't permit that because they were

6    outside of the statute of limitations.  Mr. Stern.

7              MR. STERN:  I think -- I was just going to --

8              THE COURT:  You're Corey Stern on behalf --

9              MR. STERN:  Sorry.  Corey Stern on behalf of

10   individual plaintiffs.

11             This issue, how the Court decides this issue actually

12   impacts whether to remove somebody from a short form

13   complaint.  Because if Your Honor decides that in Marble and

14   Brown and in other legionella cases who properly pled Liane

15   Shekter Smith as a defendant initially and there are claims

16   that survive against Liane Shekter Smith, other legionella

17   plaintiffs who file lawsuits by way of a short form complaint

18   using Your Honor's protocol, they should have the opportunity

19   to check a box that includes Liane Shekter Smith or any other

20   defendant if those claims survive.

21             If we're utilizing the same short form complaint,

22   which we are, for legionella cases and lead cases and property

23   damage cases and any type of case that involves an individual,

24   before we just blanket remove a defendant, unless Your Honor

25   says that it applies, I think that it is important to first

1    figure out what happens in Brown and Marble before we take

2    such a step to put on a website a very confined short form

3    which limits who people might be able to sue.

4              THE COURT:  I think that's the case.  So --

5              MR. MORGAN:  Thad Morgan for Liane Shekter Smith.

6    Then I don't understand the Court's orders.  I think they're

7    docket numbers 114 and 347 that made it clear that the long

8    form complaint regardless of any other individual complaints

9    is the operative and controlling pleading.

10             THE COURT:  You're absolutely right about that.  But

11   I think what has been identified is a potential problem with

12   that, those previous orders, is that if Mr. Goodman had

13   previously sued within the statute of limitations Liane

14   Shekter Smith, others did not that were the sample cases

15   coming forward.  I just need to give that a little bit more

16   thought and potentially some briefing.

17             Mr. Erickson.

18             MR. ERICKSON:  Thank you, your Honor.  Philip

19   Erickson for the LAN defendants.  A couple of things.  My

20   understanding -- and I'll stand corrected if I'm wrong.  But I

21   thought that the prior orders of the Court reflected that it

22   was the short form complaints which were the operative

23   complaints.

24             And of course those short form complaints incorporate

25   by reference the master long form complaint.  But I just

1    thought that should be clarified.  Because I believe it is the

2    short form complaints which are operative based on the Court's

3    prior orders.

4            MR. STERN:  Your Honor, again I'm advocating in many

5    ways for Mr. Goodman's clients.

6            But the reality is if Hunter Shkolnik and I drafting

7    a master complaint made a decision based on all the

8    submissions that came in that Liane Shekter Smith should not

9    be included or anybody should not be included or we fail to

10   include it by mistake or purposefully, if someone else has

11   filed a complaint within the applicable statute and they bring

12   a claim that wasn't included or they have a plaintiff or

13   defendant that wasn't included, they can't be penalized -- I

14   would submit that they should not be penalized --

15           THE COURT:  No, I agree with you.  So, okay, Mr.

16   Morgan, here's the -- I think this is worth focusing on

17   because it is potentially more than just the Marble case will

18   have that issue come up.

19           So what we can do is set a briefing schedule to

20   address just this issue so that we don't have to wait for the

21   outcome of the Marble and the Brown case to know the answer.

22           MR. GOODMAN:  If I may just add one thing, Your

23   Honor.  William Goodman on behalf of the Marble plaintiffs.

24   If I may just add one more consideration which is that I

25   believe at some point in time this Court has expressed some

```
1    uncertainty as to whether the Marble and other McLaren cases

2    are to be consolidated in total, let us say, with Mr. Stern's

3    case.

4              THE COURT:  Yeah, I'm not revisiting that right now.

5              MR. GOODMAN:  Right.

6              THE COURT:  I know that has been a thread.  Yeah.

7              MR. GOODMAN:  Just adding a wrinkle.

8              THE COURT:  Okay.

9              MR. MORGAN:  Your Honor, Thad Morgan for Liane

10   Shekter Smith.  Can I ask the Court's indulgence then to the

11   extent there are answer deadlines coming up for short form

12   complaints that my client be excused from that until the Court

13   makes a final decision?

14             THE COURT:  Until we resolve this, absolutely.

15   Because I was about to say she doesn't have to answer anything

16   and now I'm thinking that she may have to answer some that

17   incorporated her before the statute of limitations problem was

18   identified.

19             MR. MORGAN:  Thank you.

20             THE COURT:  So what we'll do in the order following

21   this hearing is indicate that Liane Shekter Smith, that

22   answering her requirement to answer any complaints is stayed

23   at this time until the Court resolves this issue.  Mr. Klein.

24             MR. KLEIN:  Thank you, your Honor.  Sheldon Klein for

25   the City of Flint.  I have two quick things.  One, Ms. Smith
```

1      is in a unique situation because of the statute of limitations

2      defense.  There are other individuals who were dismissed

3      because plaintiffs have failed to state a claim against them.

4            THE COURT:  Right.

5            MR. KLEIN:  Including Mayor Walling, including former

6      EM -- former Mayor Walling, former EM Ed Kurtz.  I assume that

7      they don't have to --

8            THE COURT:  Correct.

9            MR. KLEIN:  -- answer.

10           THE COURT:  That's a substantive ruling regarding

11     their liability.  They are not in the litigation and do not

12     need to answer.

13           MR. KLEIN:  Okay.  And then the final point is if in

14     fact we are going to do a modified short form complaint to get

15     rid of people who are no longer in the case, it seems to me

16     it's equally efficient and clarifying to get rid of counts

17     that are no longer in the case.

18           THE COURT:  It certainly is.  I just don't want to do

19     it before we know what's happening with Ms. Liane Shekter

20     Smith, so ...

21           MR. KLEIN:  Thank you, your Honor.

22           THE COURT:  Yeah.  Okay.  We've got an issue for Mr.

23     Wright.

24           MR. GALVIN:  Your Honor, Joseph Galvin for Mr.

25     Wright.  May I assume that Mr. Wright is not obligated to

1    answer anything until after the Marble and Brown decisions?

2    He has at this point been dismissed from everything else.

3              THE COURT:  Yes.  That's a fair assumption.

4              MR. GALVIN:  Thank you.

5              THE COURT:  Mr. Erickson.

6              MR. ERICKSON:  Your Honor, Philip Erickson for the

7    LAN defendants.

8              The Court has already indicated that if a cause of

9    action has been dismissed in Walters and Sirls, you don't need

10   to answer any of the other individual cases.

11             I believe the Court also intended in our discussions

12   upstairs to clarify and enter an order saying that if there's

13   a box checked in a short form complaint that corresponds to

14   the cause of action which was omitted in the amended master

15   complaint, that that checking of the box is a nullity and we

16   don't have to answer that cause of action either.

17             THE COURT:  Correct.  So if any individual lawyers

18   for individual plaintiffs wish to sue or bring their own cause

19   of action that we've not yet even seen, that has to be in an

20   addendum to the short form with an explanation and the details

21   of what the cause of action is, or if you wish to add a

22   defendant that we don't even know about, you can do that.

23             But you have to do it in a way where you have

24   explained who that defendant is, what their role was, and so

25   on.  Okay.

 1              So then we have the issue of whether any answers or

 2      responsive motions need to be filed in other cases with short

 3      form complaints alleging legionella related injuries, whether

 4      any answers need to be filed or motions before the decision in

 5      Marble and Brown.

 6              And the answer is they do not.  All litigation

 7      against the legionella related litigation involving McLaren

 8      and Hurley will be stayed until we have -- until I have

 9      addressed the Marble and Brown cases.  And Deborah Greenspan

10      will be working with the census data to make sure we've

11      identified what those cases are.

12              MR. STERN:  Your Honor, Corey Stern.  To that end,

13      when we were in chambers there was a request that I forward an

14      e-mail --

15              THE COURT:  Yes.

16              MR. STERN:  -- from February of 2018 to Susan Smith

17      relating to an order from Your Honor.  That e-mail was sent a

18      few minutes after we left chambers to Ms. Smith.  I just

19      wanted the record to reflect that per Ms. Smith's request, the

20      e-mail was sent.

21              THE COURT:  Okay.  And did you also copy Ms.

22      Greenspan or could you?

23              MR. STERN:  I shall.

24              THE COURT:  Thank you.  Ms. Smith.

25              MS. SMITH:  This is Ms. Smith for McLaren confirming

 1   receipt of Mr. Stern's e-mail.

 2           THE COURT:  Thank you.

 3           MS. SMITH:  I've been through this enough.  I don't

 4   want to have [Inaudible].

 5           THE COURT:  Okay.  Good.  Okay.

 6           We agreed on issue 5, the nonparties at fault filings

 7   that LAN and/or -- well, I guess that Veolia has -- wishes to

 8   file in the individual cases.  That can be achieved with a

 9   one-page filing that references the nonparty at fault much

10   longer document that's 40, 50 pages long that's filed in

11   Walters and Sirls.

12           So that has been taken care of.  And the case

13   management order will be amended to include that language.

14   And what I would ask Mr. Campbell is if you could submit to

15   the Court the proposed language that you think is appropriate

16   to amend the CMO.

17           MR. CAMPBELL:  Yes, Your Honor.  James Campbell for

18   VNA.  We'll do that.  Thank you, Your Honor.

19           THE COURT:  Okay.  There was some discussion in

20   chambers about whether there's any further coordination with

21   the state court cases that need to take place that I could

22   assist in facilitating or should be aware of.  And I learned

23   that there has not been any significant progress.  Or no

24   orders entered at least by the state court judge in this

25   particular case in the recent period.

```
 1              So we're charging on ahead here.  And the parties to

 2   that litigation are also here.  So they should be making

 3   progress in that matter.

 4              And I think next we're up to a recover from our

 5   special master.

 6              SPECIAL MASTER GREENSPAN:  Thank you, your Honor.

 7   Deborah Greenspan, Special Master.

 8              I'm going to give a brief status update.  I think as

 9   the Court knows and probably everybody here knows, I filed a

10   second interim report of the special master regarding data

11   compilation on September 16th.  So it was filed just recently.

12   And this -- I want to give a bit of an overview of this.  I

13   think I did a preview at the last status conference, but

14   there's a couple of interesting points to note for everybody.

15              As you know, this is a -- this process has been

16   implemented in order to get us an idea of the scope of this

17   litigation how many claims have actually taken steps or how

18   many people have taken had steps to hire counsel or bring

19   lawsuits so we have a better idea of the breadth, the scope of

20   the litigation, and also understand as best we can something

21   about those claims.

22              So as of the date of the second interim report, we

23   have identified 30,948 alleged injured parties.  We define

24   that as somebody who's asserting a claim or has been -- has

25   taken a step to assert or believe they might have a claim.
```

1          Some of these have retained counsel.  Some of them

2     have not retained counsel.  And they are -- they have been

3     provided to me because they have contacted counsel.  And so

4     their names are known.  But they haven't yet maintained a

5     lawyer.  There's 11,321 of that 30,000 number that have not

6     actually hired a lawyer but have contacted a lawyer.

7          We also have duplicate submissions, meaning somebody

8     has hired perhaps more than one law firm, which is not

9     infrequent.  And we are working with the law firms to try to

10    identify which law firm actually represents the individual and

11    if, in fact, they are duplicates.  Because in some cases we

12    are going by the data we have.

13         There may be misspelling of a name or something that

14    means they're actually not the same person.  So we're going

15    through that process.

16         But once we identified the account for the duplicates

17    that we think we have and the non retained -- the client who

18    have not retained lawyers, the net number of parties who have

19    retained counsel that we can identify as unique individuals or

20    entities is 17,720.  96 percent of those are individuals.  89

21    percent of the claims are either personal injury or wrongful

22    death claims.  At least that's what they've identified to us.

23         There are multiple types of injuries that have been

24    asserted.  The largest category of claimed injury is just

25    simply identified as lead exposure.  But there are other

1    injuries, the largest single -- the next largest single

2    category is emotional or psychological injury.  That is skin

3    rash or irritation, headache, high blood pressure, digestive

4    or gastrointestinal issues.

5         So those are the types of injuries that are asserted

6    the most in the information that we have received.

7         There are about 73 individuals who asserted

8    legionella disease or legionella exposure in their claim

9    submissions or the data submissions.  About 40 percent of the

10   claims are asserted by minors.  Although a footnote to that

11   statistic, we have about 1,500 individuals who have not

12   provided a date of birth so we don't know if they're minors or

13   not.

14        About 7,400 have filed lawsuits out of this group

15   that we've identified so far.  And about 4,000 individuals

16   report having a blood lead level test taken.  They have not

17   all reported the results of the test, but they have reported

18   that a test has been taken.

19        So those are sort of basic overview statistics.

20        As I mentioned, we are in the process of trying to

21   confirm and clarify this duplicate issue to try to determine

22   whether, in fact, the people we've identified are, you know,

23   are represented twice in the data or more than twice in the

24   data or who represents those individuals.  And it looks like

25   --

| | |
|---|---|
| 1 | THE COURT:  Can you slow down?  Can you slow down |
| 2 | just a little bit? |
| 3 | MS. GREENSPAN:  Oh, I'm sorry. |
| 4 | It looks like from the responses we have received on |
| 5 | the duplicate inquiry, we have about 72 percent of them are |
| 6 | disputed.  So there will be some further work to try to |
| 7 | clarify the actual representation in those cases. |
| 8 | THE COURT:  Okay. |
| 9 | MS. GREENSPAN:  I think other than that there's some |
| 10 | ongoing work to clarify data.  Again, too, there's some things |
| 11 | that we've noticed in the data.  There are obvious |
| 12 | inconsistencies so that we're trying to make sure that we get |
| 13 | the right information.  Maybe some errors in the way it was |
| 14 | submitted.  So we're in that process right now following up |
| 15 | with all the plaintiff firms. |
| 16 | THE COURT:  Okay. |
| 17 | MS. GREENSPAN:  Thank you. |
| 18 | THE COURT:  Excellent.  Thank you very much.  And |
| 19 | although the report is short, the amount of work and time and |
| 20 | hours that goes into preparing or dealing with this quantity |
| 21 | of data is tremendous.  And I appreciate it a great deal. |
| 22 | The only other thing that I have on the agenda is |
| 23 | indicating that the next status conference of this nature will |
| 24 | be -- oh, I know.  There's something that I did forget.  Which |
| 25 | is that I have refined at least in some small ways a discovery |

```
 1    dispute resolution protocol.  And I will include that in the
 2    next amended case management order.
 3            But it essentially sets up a biweekly conference call
 4    with myself and any lawyers relevant to a discovery dispute
 5    that has reached an impasse.  And indicates that in general
 6    there will be biweekly calls for approximately one hour to be
 7    held to try to resolve issues as they come up so that they
 8    don't stall out the litigation in any unnecessary way.
 9            And to that end one thing that's not in here that I
10    do in all of my other cases and hopefully would not be a
11    problem in this case which is that I indicate to parties that
12    if they're in a deposition and there's a dispute over whether
13    a witness should answer a question or not and also what we
14    discussed earlier, whether someone should be sequestered or
15    not, you can always try calling chambers.
16            If I'm free and you have a court reporter, I'm happy
17    to get on the record and try to resolve the issue then so that
18    the deposition doesn't have to be rescheduled.  So and I can't
19    guarantee that that will work because I have about 300 other
20    cases.  So but generally it does work.  So just be aware of
21    that.
22            Is there anything else that has not been covered?
23    All right.  Well, then we will issue an order including some
24    of the dates and issues.  I guess the one thing that we do
25    need to figure out is a briefing schedule to address the issue
```

1    of Ms. Shekter Smith as a defendant.

2           And Mr. Morgan, it seems like it may make sense for

3    you to have the opening brief on that.  And what I would ask

4    you to address is the impact.  Knowing that I've issued an

5    order that says the master long form is what survived in

6    Walters and Sirls as well as the short form.

7           But knowing that this issue wasn't identified at that

8    time that Shekter Smith was in pending litigation already,

9    that's now before the Court.  So I just want you to not work

10   under the illusion that orders that were entered can't be

11   unentered.  So I just don't want you to focus exclusively on

12   that.  But tell me why the master complaint in Walters and

13   Sirls should keep her out in cases where she was in and it was

14   not a statute of limitations problem.

15          So how much time do you need to prepare that brief.

16          MR. MORGAN:  If you can give me two weeks, Your

17   Honor.  And more than that if there can be a specific

18   identification of the cases at issue.  I mean, I know it's

19   Marble and Brown.  But any others?

20          THE COURT:  That's a reasonable question.

21          MR. MORGAN:  Thank you.

22          THE COURT:  I don't know about getting an answer.

23          MR. STERN:  Your Honor, it's hard to identify.  Corey

24   Stern.  It's not like any time a case is filed there's a

25   master list that gets served with a copy of it.  The best

September 25, 2019

1    thing that I would do, you know, for my advice because I've
2    done it in other cases is to search pacer for the name that is
3    the defendant and normally the cases.

4         And it's a hard name because there's not a hyphen or
5    there is a hyphen.  So you may get some that have it and some
6    that don't.  But I think that's the only way to figure it out.

7         MR. MORGAN:  And Your Honor, I guess for my purposes,
8    I went back and looked at the order after Mr. Erickson's
9    statement.  It's number 114.  And it says the master complaint
10   shall be the operative pleading for all pending and future
11   cases.

12        THE COURT:  Yes, I know.  But what I'm telling you is
13   that I did not foresee this problem.

14        MR. MORGAN:  Right.

15        THE COURT:  And so I need to revisit that.  Just with
16   respect to this one issue, please.  Not on any other issues.
17   So and that's what I'm recommending is that do not hang your
18   hat exclusively on that.

19        If there's a way in which you can argue make your
20   argument about your client without exclusively relying on the
21   fact that I was not aware of this issue.  I did not know that
22   she had been sued within the statute of limitations in certain
23   short form complaints.

24        MR. MORGAN:  Okay.  It's going to make it very
25   difficult for me to try to dig in to find out.  Because all --

1          THE COURT:  Just work on -- I don't need to know

2     every case.

3          MR. MORGAN:  All the case either pending or future I

4     thought covered the rubric of every individual nonclass

5     indication.

6          THE COURT:  Right.  I understand why you would think

7     that.  That's exactly what I said.

8          MR. MORGAN:  Yeah.

9          THE COURT:  So I understand your thought process, but

10    I'm asking you to stretch it out a little.  You know, go in a

11    new direction with the thought process which is that that may

12    have been in error.  And I make more mistakes than the average

13    person.  I'm here to tell you that.  And that may be one that

14    I made.

15         MR. MORGAN:  I just want to make sure it's not the

16    onus on me to go back and find out every case that was filed

17    --

18         THE COURT:  No.  Let's just use Marble as an example.

19    You don't have to file that in every case.  Just file it in

20    the Marble case in two weeks.

21         Ms. Smith?

22         MS. SMITH:  I was simply -- this is Ms. Smith for

23    McLaren.  I'd be happy to share Mr. Stern's e-mail with Mr.

24    Morgan to identify the other legionella cases where Ms.

25    Shekter Smith may have been named in an original complaint,

 1  | not the short form.
 2  |        THE COURT:  Okay.
 3  |        MS. SMITH:  So he can address that, at least define
 4  | concerns.
 5  |        THE COURT:  That would be nice.  What I really want
 6  | to do is figure out the answer to the problem in general.  And
 7  | it only takes one case as an example for me to try to sort it
 8  | out.
 9  |        MS. SMITH:  Understood.
10  |        THE COURT:  So Mr. Goodman, we need a response to Mr.
11  | Morgan's motion from someone.
12  |        MR. GOODMAN:  Well, William Goodman on behalf of the
13  | Marble plaintiffs.  We intend to respond.
14  |        THE COURT:  Okay.
15  |        MR. GOODMAN:  Certainly.
16  |        THE COURT:  Good.
17  |        MR. GOODMAN:  Within I assume that the response date
18  | will be controlled by federal rules of civil procedures.
19  |        THE COURT:  Yeah.  Or the local rules.  Yeah, there
20  | will be.
21  |        MR. MORGAN:  Your Honor, Thad Morgan for Liane
22  | Shekter Smith.
23  |        Do you want me to just file a brief or a motion?  And
24  | if so, what's the title of the motion?
25  |        THE COURT:  The motion is going to be motion -- it

1    can even be motion to enforce the Court's order regarding

2    application of short form complaints following Walters and

3    Sirls.  And tell me why that's the right decision.

4              MR. MORGAN:  Okay.

5              THE COURT:  In light of the fact that the decision

6    was made based on the statute of limitations that doesn't

7    exist in the Marble case.  That's going to be tough.  But --

8    yeah.

9              MR. STERN:  Your Honor, Corey Stern.  I just want to

10   note that to the extent there's information being shared about

11   what the legionella cases are and what the legionella cases

12   that have been filed are, it's better to use the census data

13   that has been compiled as of today than to use an e-mail that

14   contains three or four cases from two years ago or a year and

15   a half ago in February.

16              So to the extent that there is an e-mail based on

17   Your Honor's request that identified as of February 2018 what

18   those cases are, anything that Special Master Greenspan is to

19   share with Ms. Smith should probably be also shared with Mr.

20   Morgan so that if he plans on using as an exhibit all the

21   cases that we know are filed, it's not from an old e-mail but

22   rather from what's actually been compiled by the Special

23   Master.

24              THE COURT:  Okay.  All right.  Anything further?

25   Okay.  All right.

September 25, 2019

```
 1            Well then that will conclude our hearing for today.

 2   I appreciate that all of you are here.  And we'll just

 3   continue working hard on these cases.

 4                   (Proceedings Concluded)

 5               -          -          -

 6

 7            CERTIFICATE OF OFFICIAL COURT REPORTER

 8       I, Jeseca C. Eddington, Federal Official Court

 9   Reporter, do hereby certify the foregoing 45 pages are a true

10   and correct transcript of the above entitled proceedings.

11   /s/ JESECA C. EDDINGTON                      10/8/2019
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR      Date
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```