# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER CASES | No. 5:16-cv-10444-JEL-MKM (consolidated)<br>Hon. Judith E. Levy |

# BRIEF IN RESPONSE TO
# CLASS PLAINTIFFS' MOTION FOR PROTECTIVE ORDER LIMITING
# <u>PUBLIC ACCESS TO DEPOSITIONS OF CLASS REPRESENTATIVES</u>

## STATEMENT OF ISSUE PRESENTED

1. Should the Court limit access to the depositions of Class Plaintiffs to only the parties and their counsel without implementing similar protections for the depositions of other parties?

    **VNA Defendants answer:** "No."

    **Class Plaintiffs answer:** "Yes."

## CONROLLING OR MOST APPROPRIATE AUTHORITIES

*Flagg ex rel. Bond v. City of Detroit*,
    268 F.R.D. 279 (E.D. Mich. 2010)

*Kimberlin v. Quinlan,*
    145 F.R.D. 1 (D.D.C. 1992)

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984)

## INTRODUCTION

A few days before the first deposition of a putative class plaintiff in these cases was set to proceed, and weeks after that same deposition was confirmed, counsel for the putative class plaintiffs announced that they intended to move for a protective order limiting access to the deposition to parties and their counsel. Endeavoring to resolve the issue quickly, the VNA Defendants agreed to consent to Class Plaintiffs' motion so long as access to the depositions of VNA witnesses is similarly limited. The MDEQ defendants said the same. Class Plaintiffs rebuffed this conditional agreement, insisting that "unique privacy interests" warrant "special protections for [their] depositions" and proceeded to file their motion for a one-sided protective order.

The parties, of course, have been wrestling over issues of deposition access for some time in connection with discussions about an expected second amended case management order. And as a general matter, the VNA Defendants agree that the depositions in these consolidated actions should *not* be public proceedings. Yet Class Plaintiffs want more: They want to exempt their own depositions from public access—invoking illusory "unique" interests—while leaving the other depositions open to public view. But "in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson*, 136 S. Ct. 1412, 1418 (2016). That adage is as true here as it is in other contexts. The Class Plaintiffs have not identified

1

any interest entitling them to special protection and separate standards. An order should be entered protecting everyone.

Thus, the Court should enter a protective order that limits access to *all* depositions to parties and their attorneys.

## LEGAL STANDARD

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Among other things, the Court may "designat[e] the persons who may be present while the discovery is conducted." Fed. R. Civ. P. 26(c)(1)(E). "The burden of establishing good cause for a protective order rests with the party seeking the order." *Webasto Thermo & Comfort N. Am., Inc. v. BesTop, Inc.*, 326 F.R.D. 465, 468 (E.D. Mich. 2018).[1] "To show good cause for a protective order, the moving party is required to make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019).

## ARGUMENT

The VNA Defendants believe that good cause exists to enter a protective order limiting public access as to *all* depositions. But Class Plaintiffs do not ask for that

---

[1] Internal quotation marks, citations, footnotes, and alterations are omitted throughout this brief unless otherwise noted.

relief. Instead, Class Plaintiffs ask to be afforded special treatment. They have not identified any "unique" interest, however, that would justify unique protections for their depositions. The Court should not enter an asymmetric order benefitting only Class Plaintiffs, but should instead give all parties equal protection.

    A.    **The VNA Defendants Agree That Depositions In These Cases Should Not Be Public.**

The VNA Defendants believe that good cause would exist to conduct *all* depositions in these cases in a private setting, with access limited to parties and their counsel. "Secrecy is fine at the discovery stage, before the material enters the judicial record[.]" *Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 293 (E.D. Mich. 2010). "The discovery process is generally private[.]" *Marshall v. Bramer*, 828 F.2d 355, 360, 140 L. Ed. 2d 180 (6th Cir. 1987). "[P]retrial depositions and interrogatories are not public components of a civil trial." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see also The Courier Journal v. Marshall,* 828 F.2d 361, 364 (6th Cir. 1987) ("[T]he fruits of [discovery] are not presumptively public."). Accordingly, "it has been held that neither the public nor representatives of the press have a right to be present at the taking of a deposition." Richard Marcus, *Federal Practice and Procedure* § 2041 (3d ed. 2019 supp.); *see, e.g.*, *Kimberlin v. Quinlan*, 145 F.R.D. 1, 2 (D.D.C. 1992) (noting the lack of authority for a contrary rule supporting broader access).

3

Particularly in this litigation, public access would be appropriately restricted as to all depositions. No outside persons have pressed for access to the depositions to date; in contrast, the parties are in near universal agreement that access should *not* be given. Many of the depositions will involve non-parties. They could well involve sensitive information of various forms. And managing depositions in a litigation of this scale is a logistical challenge all its own; accounting for public access merely piles other burdens on top of these already formidable challenges. *See, e.g., Melendres v. Arpaio*, 2009 WL 3489402, at *2 (D. Ariz. Oct. 28, 2009) (explaining that attendance by the public at depositions in a case of "considerable public interest … would detract from the ability of the parties to conduct orderly depositions and obtain the testimony necessary to proceed with this action without the deponents and the lawyers being distracted by attempts to play to the media, the general public, or perhaps the Department of Justice").

Public access could be accomplished by making transcripts and videos of depositions available later, rather than requiring the witnesses to deliver their testimony to a live audience at the outset. *See, e.g., Bal v. Hughes*, 1995 WL 244757, at *1 (S.D.N.Y. Apr. 26, 1995) (distinguishing between the need for outside access to the live deposition and the need for outside access to the deposition transcript, and limiting access to the former while reserving judgment on the latter); *Amato v. City of Richmond*, 157 F.R.D. 26, 27 (E.D. Va. 1994) (same); *Kimberlin*, 145 F.R.D. at 2

4

(same). The Second Amended Case Management Order contemplates that a party can deem deposition testimony as "confidential" or "highly confidential" by designating it as such at the time that the testimony is offered. The already-entered Confidentiality Order contemplates designation of deposition testimony, too. *See* Confidentiality Order at 2-3, 8-9, ECF No. 299. But "[i]t is impractical to screen out in advance all the sensitive security information that could be revealed in the course of the [deponent]'s examination and cross-examination." *United States v. Poindexter*, 732 F. Supp. 165, 167 (D.D.C. 1990). By declining to throw open the doors to depositions to the public, the Court would ensure that the important protections found in the Confidentiality Order and Case Management Order could be meaningfully and effectively implemented. If a need for public access were to be established, then limiting access to the live testimony would enable the parties to redact sensitive information and give the public all the rest—as is usually the case in litigation. *See United States v. McDougal*, 103 F.3d 651, 659 (8th Cir. 1996) (holding that press's access to audiotapes and transcripts of deposition satisfied First Amendment concerns). Further, the VNA Defendants have already designated 11,404 documents as confidential. Other parties have designated many more. Any time one of these documents would be used during a public deposition, public access would have to be paused—a room would have to be emptied, a video feed stopped,

or otherwise. That repeated need for starts and stops to access would only prolong an already extended discovery process.

Thus, the VNA Defendants would agree with Class Plaintiffs' requested relief *if* that relief were applied equally to all parties to the litigation. *See Lewis v. Mt. Morris Twp.*, 2007 WL 3053656, at *2 n.2 (E.D. Mich. Oct. 19, 2007) (endorsing "the principle of equality and even-handedness" in discovery matters "emphatically").

### B. The VNA Defendants Do Not Agree That Depositions Of Class Plaintiffs Warrant Special Protection.

Plaintiffs do not seek an order limiting access to all depositions, but instead seek an inequitable order that inures to their benefit alone. In particular, Class Plaintiffs maintain that they have "unique privacy interests." But in the end, Class Plaintiffs' interests are similar to those held by all the parties to the case. Given that reality, the same interests that would justify limiting access to Class Plaintiffs' depositions would justify limiting live access to the VNA Defendants' depositions, too.

Many of the privacy interests that Class Plaintiffs describe are also held by the VNA Defendants. For example, Class Plaintiffs raise concerns about the potential disclosure of certain financial information. But the VNA Defendants—which, of course, did not voluntarily initiate this litigation—also have confidential financial information that could be exposed: pricing information, how contracts and

6

services are negotiated, financial performance, and more. The depositions might even expose financial information concerning other non-party members of the Veolia corporate structure. So, this "interest" could hardly justify a one-sided protective order limited to the Class Plaintiffs' depositions. Class Plaintiffs also talk about the rights of non-parties. But various non-party employees of the VNA Defendants have already been summoned to testify, and those persons have the same interest in personal privacy that plaintiff-side individuals would. *See, e.g.*, *Knoll v. American Telephone & Telegraph Co.,* 176 F.3d 359, 365 (6th Cir. 1999) (finding that district court did not abuse its discretion in issuing protective order as to non-party employees' personnel files). Here again, those non-parties never made a choice to involve themselves in litigation, and their interests should be respected as well.

True, Plaintiffs identify one sensitive area—medical records—that would not be implicated in testimony from the VNA Defendants' witnesses. No matter. For one thing, "[c]ourts have routinely held that, by putting one's medical condition at issue in a lawsuit, a plaintiff waives any privilege to which he may have otherwise been entitled as to his privacy interests in his medical records." *Stogner v. Sturdivant*, 2011 WL 4435254, at *5 (M.D. La. Sept. 22, 2011); *see also, e.g.*, *Equal Employment Opportunity Comm'n v. Cheesecake Factory, Inc.*, 2017 WL 3887460, at *7 (W.D. Wash. Sept. 6, 2017) ("[M]ultiple district courts have held that the right

7

to privacy of medical records is waived when the plaintiff's medical condition is 'at issue' in a lawsuit."). Class Plaintiffs have put their medical conditions at issue here. *See* Pls.' Fourth Consol. Am. Class Compl. ¶ 606 (alleging that all of the defendants' actions caused them "[s]erious and in some cases life threatening and irreversible bodily injury"). For another, the VNA Defendants have interests of their own that would not be held by Plaintiffs; for instance, proprietary business practices and trade secrets are interests that are exclusive to the corporate defendants. The bottom-line point, then, is plain: Each party has privacy interests at play here, and each party would be equally likely to face potential abuse or harm should the public be permitted to attend. All parties should therefore receive consistent protection for their depositions.

Lastly, Class Plaintiffs seem to argue outright that plaintiffs deserve more protection than defendants. Class Plaintiffs, they say, should not be compelled to recount their "trauma" publicly, while the defendants' witnesses should have to provide their accounts in public because the plaintiffs presume them to have done something wrong. *See* Mot. at 6 ("[W]hile there may be strong public interest in learning the details of what lead [sic] to the disaster, there is no corresponding public interest in the sensitive health and financial information of the class representatives."). But Class Plaintiffs do not—and cannot—cite any supporting authority for that remarkable idea. The underlying premise is shocking: that

8

defendants should be presumed guilty and publicly shamed, while their accusers—class representatives who made a deliberate choice to act as the public face of the putative class—should be offered a cloak of secrecy. Class Plaintiffs chose to go to court; the VNA Defendants did not. As one judge has said, "Defendants rarely have much say about being hauled into court. I doubt that they somehow waive all or most of their privacy privileges simply because someone—justifiably or not—files suit against them." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1017 (11th Cir. 1992) (Edmondson, J., dissenting). Why then should individuals like non-party VNA employees receive lesser protections? Why, if the risk of exposure in the "press and on social media" is so great, should that risk not be addressed in the same way for all deponents? Indeed, if party status alone were to be the determinant, then the defendants might be said to have greater interests in limiting access because of the potential risk of reprisal from those angry about the circumstances in Flint.

Access to all upcoming depositions should be curbed. An asymmetric order of the sort that Class Plaintiffs request should not be entered.

## CONCLUSION

For all these reasons, the Court should reject Class Plaintiffs' attempt to obtain an inequitable, one-sided protective order. VNA Defendants respectfully request that the Court enter a protective order limiting access to *all* depositions to parties and their counsel.

9

Respectfully submitted,

| | |
|---|---|
| **CAMPBELL, CONROY & O'NEIL P.C.** | **BUSH SEYFERTH PLLC** |
| By: /s/ *James M. Campbell* | By: /s/ *Cheryl A. Bush* |
| James M. Campbell | Cheryl A. Bush (P37031) |
| Alaina N. Devine | Michael R. Williams (P79827) |
| One Constitution Wharf, Suite 310 | 100 W. Big Beaver Road, Suite 400 |
| Boston, MA 02129 | Troy, MI 48084 |
| (617) 241-3000 | (248) 822-7800 |
| jmcampbell@campbell-trial-lawyers.com | bush@bsplaw.com |
| adevine@campbell-trial-lawyers.com | williams@bsplaw.com |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: November 6, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: /s/ *James M. Campbell*

James M. Campbell
jmcampbell@campbell-trial-lawyers.com