# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases.

_____/

Judith E. Levy
United States District Judge

This Order Relates To:

ALL CASES

_____/

# ORDER AND OPINION ON JOINT MOTION FOR PROTECTIVE ORDER [957]

Three City of Flint Defendants, Gerald Ambrose, Darnell Earley, and Howard Croft, (referred to in their motion as Individual City Defendants, "ICDs") sought a protective order on September 27, 2019. (ECF No. 957.) ICDs ask this Court to enter a protective order that will "temporarily shield them from depositions and future written discovery in this matter until May 1, 2020" while they are under threat of criminal charges related to the facts alleged in these cases. (*Id.* at PageID.24523.) LAN and VNA Defendants both filed responses on October 11, 2019. LAN Defendants argue that the best approach is to require discovery to go

forward but to seal the transcripts until May 2020. (ECF No. 963.) VNA Defendants disagree that sealing discovery is a workable solution; they argue that discovery should not be postponed, and that ICDs can invoke their Fifth Amendment rights as needed during discovery. (ECF No. 964.)

On November 6, 2019, a hearing was held and oral argument heard. For the reasons set forth below, as well as those set forth on the record, ICDs' motion for a protective order is granted in part and denied in part. Their motion to postpone discovery until May 2020 is denied. But because the ICDs have an interest in protecting their Fifth Amendment rights, the Court will grant ICDs' request to temporarily seal their written discovery and depositions. ICDs' request to limit attendance at depositions to party attorneys is also granted, but their request to forbid questions related to issues of potential criminal liability is denied.

**I.   Background**

**a. Criminal Charges**

Defendants Earley and Ambrose were both state appointed Emergency Managers—Earley from October 2013 to January 2015, and Ambrose from January 2015 to April 2015. Defendant Croft was Flint's former Director of Public Works. On or about December 19, 2016, the

Michigan Attorney General ("AG") charged all three ICDs with (1) false pretenses and (2) conspiracy to commit false pretenses. Defendants Earley and Ambrose were also charged with (3) misconduct in office and (4) willful neglect of duty.

As for the false pretenses charges, these related to allegations that ICDs acted or conspired to obtain an Administrative Consent Order from the Michigan Department of Environmental Quality that would allow Flint to obtain bonds to finance its portion of the Karegnondi Water Authority in excess of the debt limits imposed by state law, MCL § 117.4a. (ECF No. 957, PageID.24535.) As for the misconduct in office and willful neglect of duty charges, these related to Earley and Ambrose's actions taken as state appointed Emergency Managers for the City of Flint that allegedly resulted in prolonged exposure to lead and Legionella. (*Id.*)

ICDs note that in June of 2017, the Michigan AG published a "Notice" stating that it would seek additional charges of Involuntary Manslaughter against Earley and Croft. (*Id.* at PageID.24536.) ICDs assert that Special Assistant Todd Flood also "threated counsel for Mr. Ambrose" with Involuntary Manslaughter charges "in an attempt to force and/or entice Mr. Ambrose into a plea agreement." (*Id.*) None of these

3

charges were ever filed. In June of 2019, the AG's office dismissed all criminal charges against ICDs without prejudice. (ECF No. 957-5, PageID.24591–24593.)

### b. Continued Threat of Criminal Charges

ICDs argue that criminal charges are likely—they point to public and private statements made by the AG's office along with the fact that all charges were dismissed without prejudice. (ECF No. 957, PageID.24537.) For example, on June 13, 2019, the AG's office released a statement emphasizing that by dismissing the charges, it was not "precluded from refiling charges against the defendants listed below," which included the three ICDs along with six other government officials. (ECF No. 957-6, PageID.24595.) ICDs also point to a statement Michigan Solicitor General Fadwa Hammoud made on June 3, 2019 to *The Flint Journal* alluding to "substantial potential evidence that was not provided to the original prosecution team" and stating that their team was going through new evidence. (ECF No. 957, PageID.24538.)

ICDs contend that the allegations in Plaintiffs' complaints mirror the allegations in the former criminal complaint. ICDs explain that the statute of limitations on the prior criminal charges has at longest six

4

years. This means that the AG must recharge them, if at all, by April 2020 for liability for events that happened as late as April 2014. ICDs therefore ask the Court to postpone discovery to May 1, 2020.

## II. Analysis

ICDs argue that discovery ought to be postponed until May 1, 2020 when the statute of limitations runs on potential criminal charges against them. Alternately, ICDs ask this Court to seal or otherwise further protect discovery.

### a. Postponing Discovery

ICDs argue that postponing discovery is the best option given the potential criminal charges and the fact that May 1, 2020 is the date the statute of limitations would run on most charges. They contend that postponing would not harm the parties because there is voluminous discovery that can be conducted in the meantime. ICDs also argue that postponing will prevent them from choosing between asserting their Fifth Amendment rights or suffering adverse inferences against them in this case.

Generally, the United States Constitution does not require that a court stay a civil proceeding pending a parallel criminal proceeding. *FTC*

5

*v. EMA Nationwide, Inc.*, 767 F.3d 611, 627 (6th Cir. 2014). The determination of whether to grant a stay of discovery "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). The burden is on the party seeking the stay "to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S. Dist. Court, S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). In determining whether to grant a stay, courts consider six factors:

> 1) the extent to which the issues in the criminal case overlap with those presented in the civil case; 2) the status of the case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; 4) the private interests of and burden on the defendants; 5) the interests of the courts; and 6) the public interest.

*EMA Nationwide, Inc.*, 767 F.3d at 627. As explained below, of these six factors, only the fourth factor weighs in favor of granting a stay. ICDs have not met their burden to show that there is a pressing need for delay that outweighs the other interests at stake.

When an indictment has not been issued, factor one is neutral. *Id.* at 628. Here, although the ICDs were once charged, they no longer face

criminal charges, and so this factor is neutral. Factor two weighs against ICDs as well because they have not been charged. "[C]ourts generally do not stay proceedings in the absence of an indictment," and "a stay of civil proceedings due to a pending criminal investigation is an extraordinary remedy." *Id.* at 627–28. Still, courts may consider the status of criminal proceedings generally and some have granted a stay pre-indictment. *See Chao v. Fleming*, 498 F. Supp. 2d 1034, 1039 (W.D. Mich. 2007) (granting a stay when a defendant had not been indicted but "based upon statements" by an AUSA, the indictment seemed "an eventuality.").

The third factor also weighs against granting the relief sought by ICDs. This factor involves balancing a plaintiff's interest in proceeding expeditiously against the prejudice that a delay would cause. *EMA Nationwide*, 767 F.3d at 628–29. In *EMA Nationwide*, the Federal Trade Commission brought an action against defendants, marketers of debt-related services, who asserted that a stay of discovery was necessary because a criminal investigation had been launched into their business activities. *Id.* at 618. The court in *EMA Nationwide* found that the individuals in the consumer fraud suit were "desperate to recover their lost funds as quickly as possible" and so this third factor "weigh[ed]

7

heavily in favor of denying the motion for a stay." *Id.* at 629; *see also Chao*, 498 F. Supp. 2d at 1040 ("the Court is concerned that . . . a stay of indefinite duration will further delay any ultimate recovery."). Spoliation of evidence due to the passage of time is also part of a plaintiff's interest. *Chao*, 498 F. Supp. 2d at 1040. The Flint Water cases are a massive and complex piece of litigation where plaintiffs seek relief for many thousands of people. Moreover, it has been more than five years since the events alleged in the complaint took place, and so there are ever-increasing risks of spoliation, failed memories, and witnesses who leave the jurisdiction or become otherwise unavailable.

The fourth factor weighs in favor of ICDs. This factor asks the Court to consider ICDs' interests in issuing a stay. As ICDs point out, they may face a choice between invoking or waiving their Fifth Amendment rights. If ICDs invoke their Fifth Amendment rights, they argue this could prejudice them in these civil proceedings. Courts have stayed depositions or discovery when a defendant is criminally charged. *See National Discount Corp. v. Holzbaugh*, 13 F.R.D. 236, 237 (E.D. Mich. 1952) (deposition stayed in a civil action against a criminally charged defendant where "the fabric of the fraud is identical with the fraud

embraced by the allegations contained in the criminal proceedings now pending"); *United States v. U.S. Currency*, 626 F.2d 11, 15 (6th Cir. 1980) (dismissal reversed, "[c]learly, appellees should not be compelled to choose between the exercise of their Fifth Amendment privilege and the substantial sums of money which are the subject of this forfeiture proceeding.").

The fifth factor weighs against ICDs' requested relief. This factor considers the Court's interest, essentially asking how issuing or denying a stay will impact the Court's ability to manage its docket and resolve cases expeditiously. *See Chao*, 498 F. Supp. 2d at 1040 (finding that "scarce judicial resources in this district at this time would be best used by staying this case."). This factor cuts against issuing a stay because the Court's resources are best used to resolve this complex dispute in an efficient and expeditious manner.

The sixth factor similarly weighs against ICDs; it asks the Court to consider the public's interest in a stay. *EMA Nationwide*, 767 F.3d at 629 (explaining the "public interest is furthered when individuals' injuries are remedied in a timely manner."). The injunctive and monetary relief sought in this case, if obtained, would provide relief to many thousands

9

of Flint residents. Even if ICDs prevail on a pretrial motion or at trial, resolving this litigation is still most certainly in the public interest. Additionally, part of this public interest also involves weighing the interests of other Defendants in this case, including LAN and VNA. Delaying discovery could impede these other Defendants' ability to defend themselves, especially with the bellwether trials scheduled for October 2020.

In summary, these factors weigh strongly against issuing a stay of discovery for ICDs. There are other, less burdensome options to safeguard ICDs' Fifth Amendment rights. It is rare that circumstances will "justify an order that a deposition not be taken at all, and the existence of [a Fifth Amendment] privilege is not one of those circumstances." *Flagg v. City of Detroit*, No. 05–74253, 2010 WL 3070104, at *1 (E.D. Mich. Aug. 4, 2010). Discovery will proceed, and the Court will address any resulting issues as they arise, keeping in mind the difficult balance between ICDs' Fifth Amendment rights and the public and plaintiffs' interests in the resolution of these cases.

**b. Discovery Protective Orders**

ICDs ask this Court to "seal or otherwise protect the depositions of the ICDs and further written discovery as to the ICDs" as provided in Federal Rule 26(c)(1). (ECF No. 957, PageID.24553.) ICDs ask for a protective order to "forbid inquiries into issues where potential criminal liability for ICDs is present" as per 26(c)(1)(D), and to "designate that only the attorneys in these cases be allowed to attend any depositions," as set forth in 26(c)(1)(E). (*Id.* at PageID.24554.)

### *i. Standard for Protective Orders under FRCP 26(c)(1)*

Protective orders are governed by Federal Rule of Civil Procedure 26(c)(1), which states in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . .

Fed. R. Civ. P. 26(c)(1). The Rule then provides a non-exhaustive list of options a court may choose when crafting a protective order.

### *ii. Sealing Discovery under FRCP 26(c)(1)*

11

Federal Rule of Civil Procedure 26(c)(1)(F) specifically suggests sealing a deposition as one of the many protective orders a court can enter. ICDs argue that this option "will allow ICDs to testify at depositions and respond to written discovery without being forced to choose between asserting their Fifth Amendment Rights or fully defending themselves in these actions." (ECF No. 957, PageID.24554.) The Court agrees.

ICDs contend, however, that sealing discovery will "present additional issues as this litigation proceeds," and so postponing is the superior option. (ECF No. 957, PageID.24554.) The VNA Defendants in their Response also argue that placing discovery "under seal is not a workable option, given the number of filings that may need to rely on their written and oral testimony." (ECF No. 964, PageID.24673.) ICDs cite to *Shane Group v. Blue Cross Blue Shield of Michigan* where the Sixth Circuit vacated a district court's order to seal the record and argue that issues similar to *Shane Group* are likely to arise as this case moves closer to the adjudicative phase. 825 F.3d 299 (6th Cir. 2016).

*Shane Group* is readily distinguishable from the limited protective order this Court would enter temporarily sealing discovery related to

12

ICDs. In *Shane Group*, the "district court sealed most of the parties' substantive filings from public view, including nearly 200 exhibits and an expert report upon which the parties based a settlement agreement that would determine the rights of those millions of citizens." *Id.* at 302. The district court erred in sealing significant court records, including the plaintiffs' amended complaint and motion for class certification. *Id.* at 306.

The fear ICDs raise is that, as this case moves from discovery to the adjudicative or settlement phase, sealing their discovery would mean that future aspects of the public record would also need to be sealed. However, there are several tools the Court may use to ensure that the public has broad access to this Court's decisions and the parties' documents. As the Sixth Circuit made clear in *Shane Group*, "there is a stark difference between so-called 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Id.* at 305. No court records are authorized to be filed under seal at this time.

### *iii. Other Protective Orders*

In addition to sealing depositions and written discovery, ICDs ask that the Court "forbid inquiries into issues where potential criminal liability for the ICDs is present," and to "designate that only the attorneys in these cases be allowed to attend any depositions." (ECF No. 957, PageID.24554.) LAN Defendants object to the first request, contending that it is "unduly vague" and that ICDs should decide whether to invoke the Fifth Amendment during the depositions. (ECF No. 963, PageID.24656.) LAN Defendants agree, however, that only attorneys to the litigation should be present if the depositions are sealed. (*Id.*)

The first request to forbid inquiries into issues of potential criminal liability is overbroad. Courts typically require a witness to face questioning, assert privilege as to each question, and where necessary, provide evidence showing the risk of criminal prosecution. *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983); *United States v. Bates*, 552 F.3d 472, 475 (6th Cir. 2009) ("The longstanding rule of [the Sixth Circuit] is that a defendant must take the stand and answer individualized questions in order to invoke his Fifth Amendment privilege."). The Sixth Circuit has said a "blanket assertion of the [Fifth

14

Amendment] privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions." *In re Morganroth*, 718 F.2d, 167*; but see United States v. McAllister*, 693 F.3d 572, 583 (6th Cir. 2012) (recognizing that in some instances a witness is clearly entitled to claim the privilege and so forcing the witness to take the stand would be futile). By requiring the witness to assert the privilege as to each question, the Court can develop a record upon which to review the validity of the assertion of privilege. *United States v. Arnott*, 704 F.2d 322, 324–25 (6th Cir. 1983). It is for the courts to determine whether a witness has validly asserted the privilege. *In re Morganroth*, 718 F.2d at 167. In general, ICDs have set forth a plausible fear of criminal prosecution. But, even though there is overlap between the civil and criminal allegations, they cannot assert their Fifth Amendment rights in advance of being asked a question.

The ICDs' second request to limit attendance to only the attorneys on the case is granted.

### III. Conclusion

For the reasons stated above, Individual City Defendants' motion for a protective order is **GRANTED** in part and **DENIED** in part.

IT IS SO ORDERED.

Dated: November 7, 2019  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge


**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 7, 2019.

 s/William Barkholz
 WILLIAM BARKHOLZ
 Case Manager