# Exhibit 1

Exhibit 1

⑤ 1-14-19

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | |
|---|---|
| In re Flint Water Litigation | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No. 5:16-cv-10444 |
| | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Karegnondi Water Authority
_____
*(Name of person to whom this subpoena is directed)*

[X] *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See attached Schedule A form.

| Place: Weitz & Luxenberg, P.C.<br>The Fisher Building<br>3011 West Grand Boulevard, Suite 2150<br>Detroit, MI 48202 | Date and Time: [45 days from service] |
|---|---|

[ ] *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/11/2019

*DAVID J. WEAVER, CLERK OF COURT*

OR   Paul F Novak

_____        _____
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:

SEE NEXT PAGE FOR ISSUING ATTORNEYS

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**ISSUING ATTORNEYS**

Paul F. Novak
Weitz & Luxenberg, PC
The Fisher Building
3011 West Grand Boulevard, Suite 2150
Detroit, MI 48202
(313) 800-4170
pnovak@weitzlux.com
*Attorneys for Proposed Class Plaintiffs*

James M. Campbell
John A.K. Grunert
Campbell, Conroy & O'Neil, P.C.
One Constitution Center
Third Floor
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
jgrunert@campbell-trial-lawyers.com
*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Susan E. Smith
Beveridge & Diamond, P.C.
1350 I Street N.W.
Suite 700
Washington, DC 20005
202-789-6031
ssmith@bdlaw.com
*Attorney for McLaren Regional Medical Center*

J. Brian MacDonald
Cline, Cline & Griffin, P.C.
Mott Foundation Building
503 S. Saginaw Street
Suite 1000
Flint, MI 48502
(800) 121-3141
bmacdonald@ccglawyers.com
*Attorney for McLaren Regional Medical Center*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* Flint Water Cases

No. 5:16-cv-10444

HON. JUDITH E. LEVY

MAG. MONA K. MAJZOUB

## SCHEDULE A TO SUBPOENA TO PRODUCE DOCUMENTS

To:   Karegnondi Water Authority
      G4610 Beecher Road
      Flint, MI 48532-2617

### DEFINITIONS

1.     The term "document" or "documents" is used in the broadest sense permitted by the Federal Rules of Civil Procedure and means documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

2.     The term "communication" means each manner or means of disclosure, transmittal, or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, email (desktop or mobile device), email attachments, text

message, instant message, MMS or SMS message, regular mail, releases, or otherwise.

3.      "Relating to" as used herein means, directly or indirectly, referring to, reflecting, mentioning, describing, pertaining to, arising out of or in connection with the matter discussed.

4.      "Electronically Stored Information" shall mean the complete original and any non-identical copy (whether different from the original because of notations, different metadata, or otherwise), regardless of origin or location, of any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any electronic medium from which information can be obtained either directly or, if necessary, after translation by you into a reasonably usable form.  This includes, but is not limited to, electronic mail, instant messaging, videoconferencing, and other electronic correspondence (whether active, archived, or in a deleted items folder), word processing files, spreadsheets, databases, and video and sound recordings, whether stored on: cards; magnetic or electronic tapes; disks; computer hard drives, network shares or servers, or other drives; cloud-based platforms; cell phones, PDAs, computer tablets, or other mobile devices; or other storage media.

5.      The terms "all," "any," "each," or "every" mean all, any, each, and every.

2

6. The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information which might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

7. The terms "person" or "persons" mean natural persons, firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, or other legal, business or government entities, and all subsidiaries, affiliates, divisions, departments, branches, or other units thereof.

8. The term "employee" means agent, borrowed employee, casual employee, consultant, contractor, de facto employee, independent contractor, joint adventurer, loaned employee, part-time employee, permanent employee, provisional employee, subcontractor, or any other type of service provider.

9. "Protected health information," "individually identifiable health information," and "qualified protective order" have the same meaning as provided in the Health Insurance Portability and Accountability Act of 1996, including all pertinent regulations (45 CFR Parts 160 and 64) issued by the U.S. Department of Health and Human Services as either have been amended by Subtitle D of the Health Information Technology of Economic and Clinical Health Act, as Title XIII of

3

Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, 42 U.S.C. §§ 17921, 17931-17932 & 17934.

## INSTRUCTIONS

1.    In complying with this subpoena, you are required to produce all responsive documents and physical evidence that are in your possession, custody, or control, whether held by you or agents, employees, and representatives acting on your behalf. You should also produce documents and physical evidence that you have a legal right to obtain or to copy, as well as documents and physical evidence that you have placed in the temporary possession, custody, or control of any other person or entity. Requested records, documents, data, information or physical evidence should not be destroyed, modified, removed, transferred or otherwise made inaccessible.

2.    In the event that any entity, organization or individual denoted in this Schedule A has been or is also known by any other name than that herein denoted, the description shall be read also to include that alternative identification.

3.    Electronically Stored Information is to be produced in native format.

4.    It is the requestors' preference to receive documents in electronic form (i.e., CD, memory stick, or thumb drive) in lieu of paper productions.

5.    It is the requestors' preference that the documents produced in electronic format be organized, identified, and indexed electronically.

4

6.     It is the requestors' preference that electronic document productions be prepared according to the standards set forth in the Document Production Protocol that has been accepted by the Court in this litigation.  The relevant portions of the Document Protocol that contain the technical specifications for electronic document productions are attached hereto as Attachment 1.

7.     It is the requestors' preference that the documents produced include an index describing the contents of the production.  It is the requestors' preference that, to the extent more than one CD, hard drive, memory stick, thumb drive, box or folder is produced, each CD, hard drive, memory stick, thumb drive, box or folder contain an index describing its contents.

8.     Documents produced in response to this subpoena shall be produced together with copies of file labels, dividers or identifying markers with which they were associated when the subpoena was served.

9.     It is the requestors' preference that when you produce documents, you identify the paragraphs in this Schedule A to which the documents respond.

10.     It is not a basis for refusal to produce documents that some other person or entity also possesses non-identical or identical copies of the same documents.

11.     Production of Physical Evidence: If it is inconvenient for you to produce requested items of physical evidence on the date and at the place specified in this subpoena, the requesters will be pleased to negotiate with you for their production on

5

one or more different reasonable dates, at one or more different reasonable locations, and subject to appropriate provisions to preserve the evidence without alterations that would be prejudicial to you or to parties to the Flint Water Cases. Should you wish to discuss these matters, please contact one or more of the attorneys who have signed the subpoena.

12.     If Karegnondi Water Authority ("KWA") anticipates that it will not be possible through the exercise of reasonable diligence to comply fully with this subpoena by the specified return date, KWA should, within 10 days after it is served with the subpoena, contact one or more of the attorneys who have signed the subpoena to discuss a reasonable enlargement of time for compliance.

13.     In the event that a document is withheld on the basis of a privilege or the work product immunity, KWA should, no later than the date compliance with the subpoena is due, provide a privilege log as required by Fed. R. Civ. P. 45(e)(2) which identifies with specificity the claimed privilege or immunity and which describes the nature of the withheld documents in a manner that, without revealing information that is itself protected from disclosure, will enable the parties to assess the claim of privilege or immunity. It is the requestors' preference that the privilege log contain the following information concerning any such document: (a) the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author and addressee, including identification of the employment and title of

6

each such person; (e) the relationship of the author and addressee to each other; and (e) the number of pages, attachments, and appendices.

14.     To the extent that KWA contends that any materials requested in this document include protected health information or individually identifiable health information and requires redaction, KWA is instructed to contact one or more of the signatories to this subpoena, within 10 days of the service of the subpoena, to discuss whether the proposed redaction is appropriate or whether production in unredacted form subject to the existing Confidentiality Order suffices.

15.     If a date or other descriptive detail set forth in this Schedule A referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the description, you are required to produce all documents which would be responsive as if the date or other descriptive detail were correct.

16.     Unless otherwise indicated, this subpoena seeks documents dated or created between January 1, 2009 and the present.

17.     It is the requestors' preference that all documents be Bates-stamped sequentially and that the Bates-stamps' naming convention identify that the documents were produced by KWA.

7

## <u>REQUESTED DOCUMENTS AND THINGS</u>

1.    All documents and/or communications related to the alleged contamination of Flint's drinking water following decisions to switch Flint away from a contract with the Detroit Water and Sewerage Department to a contract with KWA, and to rely during the transition on water drawn from the Flint River that you provided to or received from:

   A.    The Michigan Department of Environmental Quality, including but not limited to the Office of Drinking Water and Municipal Assistance, (or their officers, employees or representatives);

   B.    The Joint Select Committee on the Flint Water Emergency (or their officers, employees or representatives);

   C.    The Flint Water Advisory Task Force (or their officers, employees or representatives);

   D.    The Michigan Department of Health and Human Services (or their officers, employees or representatives);

   E.    The Michigan Governor's Office (or their officers, employees or representatives);

   F.    The Michigan Department of Natural Resources (or their officers, employees or representatives);

   G.    The Michigan Department of Transportation (or their officers, employees or representatives);

   H.    The City of Flint, including its Public Works Department and Water Treatment Plant (or their officers, employees or representatives);

   I.    The United States Environmental Protection Agency (or their officers, employees or representatives);

   J.    The United States Centers for Disease Control and Prevention (or their officers, employees or representatives);

   K.    The United States Agency for Toxic Substances and Disease Registry (or their officers, employees or representatives);

8

L.   The Emergency Managers appointed for the City of Flint (or their officers, employees or representatives);

M.   The Office of the Michigan Attorney General (or their officers, employees or representatives);

N.   The Office of the Auditor General of Michigan (or their officers, employees or representatives);

O.   KWA (or their officers, employees or representatives);

P.   The Genesee County Drain Commission (or their officers, employees or representatives);

Q.   The Detroit Water and Sewerage Department (or their officers, employees or representatives);

R.   The Great Lakes Water Authority (or their officers, employees or representatives);

S.   The Michigan Lead Poisoning Prevention Program (or their officers, employees or representatives);

T.   Any academic institution, including but not limited to the University of Michigan, Michigan State University, or Wayne State University (or their officers, employees or representatives);

U.   Any resident or citizen of the City of Flint (or their agents, guardians, or legal representatives);

V.   Any Committee or Sub-Committee of the United States Congress (or their officers, employees or representatives);

W.   The Michigan State Police Emergency Management and Homeland Security Division (or their officers, employees or representatives);

X.   Hurley Medical Center (or its officers, employees, or representatives, including but not limited to Mona Hanna-Attisha, MD);

Y.   Dr. Mona Hanna-Attisha, MD;

Z.   Special Prosecutor Todd Flood;

9

AA.  The Virginia Tech Research Team at Virginia Tech, including but not limited to Dr. Marc Edwards, Amy Pruden, and Joseph Falkinham III;

BB.  Any news or media outlet or their employees, including but not limited to any websites, newspapers, television stations, and/or radio stations;

CC.  Any member of the Michigan State Legislature (or their employees or representatives);

DD.  Martin Waymire public relations firm (or its officers, employees, or representatives);

EE.  Vanguard Communications (or its officers, employees, or representatives);

FF.  Sierra Club (or its officers, employees or representatives);

GG.  Natural Resources Defense Council (or its officers, employees, or representatives);

HH.  Coalition for Clean Water (or its officers, employees, or representatives);

II.  Concerned Pastors for Social Action (or its officers, employees, or representatives);

JJ.  Any member of the Flint Water Advisory Task Force (or its employees or representatives);

KK.  The Flint Water Interagency Coordinating Committee (or its employees or representatives);

LL.  The Michigan Joint Committee on the Flint Water Public Health Emergency (or its employees or representatives);

MM.  Tucker, Young, Jackson, Tull Inc. (or its officers, employees, or representatives);

NN.  Governor Rick Snyder;

OO.  The State of Michigan;

PP.  The City of Flint;

10

QQ.  Daniel Wyant;

RR.  Andy Dillon;

SS.  Nick Lyon;

TT.  Nancy Peeler;

UU.  Liane Shekter-Smith;

VV.  Adam Rosenthal;

WW. Stephen Busch;

XX.  Patrick Cook;

YY.  Michael Prysby;

ZZ.  Bradley Wurfel;

AAA. Jeff Wright;

BBB. Edward Kurtz;

CCC. Darnell Earley;

DDD. Gerald Ambrose;

EEE.  Michael Brown

FFF.  Dayne Walling;

GGG. Howard Croft;

HHH. Michael Glasgow;

III.  Daugherty Johnson;

JJJ.  Lockwood, Andrews & Newnam, P.C.;

KKK. Lockwood, Andrews & Newnam, Inc.;

LLL.  Leo A. Daly Company;

MMM.  Veolia North America, LLC;

11

NNN. Veolia North America, Inc.;

OOO. Veolia Water North America Operating Services, LLC;

PPP. Robert Scott;

QQQ. Eden Wells;

RRR. Rowe Professional Service Company;

SSS. McLaren Healthcare Corporation;

TTT. United States Center for Disease Control and Prevention; and

UUU. The American Civil Liberties Union ("ACLU") (including any employee, agent, or representative of the ACLU and/or any regional, state, or local chapter).

2. All documents and/or communications related to Flint's reliance on or use of water drawn from the Flint River that you provided to or received from:

A. The Michigan Department of Environmental Quality, including but not limited to the Office of Drinking Water and Municipal Assistance, (or their officers, employees or representatives);

B. The Joint Select Committee on the Flint Water Emergency (or their officers, employees or representatives);

C. The Flint Water Advisory Task Force (or their officers, employees or representatives);

D. The Michigan Department of Health and Human Services (or their officers, employees or representatives);

E. The Michigan Governor's Office (or their officers, employees or representatives);

F. The Michigan Department of Natural Resources (or their officers, employees or representatives);

G. The Michigan Department of Transportation (or their officers, employees or representatives);

12

H.    The City of Flint, including its Public Works Department and Water Treatment Plant (or their officers, employees or representatives);

I.    The United States Environmental Protection Agency (or their officers, employees or representatives);

J.    The United States Centers for Disease Control and Prevention (or their officers, employees or representatives);

K.    The United States Agency for Toxic Substances and Disease Registry (or their officers, employees or representatives);

L.    The Emergency Managers appointed for the City of Flint (or their officers, employees or representatives);

M.    The Office of the Michigan Attorney General (or their officers, employees or representatives);

N.    The Office of the Auditor General of Michigan (or their officers, employees or representatives);

O.    KWA (or their officers, employees or representatives);

P.    The Genesee County Drain Commission (or their officers, employees or representatives);

Q.    The Detroit Water and Sewerage Department (or their officers, employees or representatives);

R.    The Great Lakes Water Authority (or their officers, employees or representatives);

S.    The Michigan Lead Poisoning Prevention Program (or their officers, employees or representatives);

T.    Any academic institution, including but not limited to the University of Michigan, Michigan State University, or Wayne State University (or their officers, employees or representatives);

U.    Any resident or citizen of the City of Flint (or their agents, guardians, or legal representatives);

13

V.   Any Committee or Sub-Committee of the United States Congress (or their officers, employees or representatives);

W.   The Michigan State Police Emergency Management and Homeland Security Division (or their officers, employees or representatives);

X.   Hurley Medical Center (or its officers, employees, or representatives, including but not limited to Mona Hanna-Attisha, MD);

Y.   Dr. Mona Hanna-Attisha, MD;

Z.   Special Prosecutor Todd Flood;

AA.  The Virginia Tech Research Team at Virginia Tech, including but not limited to Dr. Marc Edwards, Amy Pruden, and Joseph Falkinham III;

BB.  Any news or media outlet or their employees, including but not limited to any websites, newspapers, television stations, and/or radio stations;

CC.  Any member of the Michigan State Legislature (or their employees or representatives);

DD.  Martin Waymire public relations firm (or its officers, employees, or representatives);

EE.  Vanguard Communications (or its officers, employees, or representatives);

FF.  Sierra Club (or its officers, employees or representatives);

GG.  Natural Resources Defense Council (or its officers, employees, or representatives);

HH.  Coalition for Clean Water (or its officers, employees, or representatives);

II.  Concerned Pastors for Social Action (or its officers, employees, or representatives);

JJ.  Any member of the Flint Water Advisory Task Force (or its employees or representatives);

KK.  The Flint Water Interagency Coordinating Committee (or its employees or representatives);

14

LL. The Michigan Joint Committee on the Flint Water Public Health Emergency (or its employees or representatives);

MM. Tucker, Young, Jackson, Tull Inc. (or its officers, employees, or representatives);

NN. Governor Rick Snyder;

OO. The State of Michigan;

PP. The City of Flint;

QQ. Daniel Wyant;

RR. Andy Dillon;

SS. Nick Lyon;

TT. Nancy Peeler;

UU. Liane Shekter-Smith;

VV. Adam Rosenthal;

WW. Stephen Busch;

XX. Patrick Cook;

YY. Michael Prysby;

ZZ. Bradley Wurfel;

AAA. Jeff Wright;

BBB. Edward Kurtz;

CCC. Darnell Earley;

DDD. Gerald Ambrose;

EEE. Michael Brown

FFF. Dayne Walling;

GGG. Howard Croft;

15

HHH. Michael Glasgow;

III.   Daugherty Johnson;

JJJ.   Lockwood, Andrews & Newnam, P.C.;

KKK. Lockwood, Andrews & Newnam, Inc.;

LLL.  Leo A. Daly Company;

MMM.        Veolia North America, LLC;

NNN. Veolia North America, Inc.;

OOO. Veolia Water North America Operating Services, LLC;

PPP.  Robert Scott;

QQQ. Eden Wells;

RRR. Rowe Professional Service Company;

SSS.  McLaren Healthcare Corporation;

TTT.  United States Center for Disease Control and Prevention; and

UUU. The American Civil Liberties Union ("ACLU") (including any employee, agent, or representative of the ACLU and/or any regional, state, or local chapter).

3.      All minutes and agendas from all meetings of the KWA Board of Commissioners between January 1, 2011 and the present in which the issues of water service to the City of Flint or the Flint/KWA plan was discussed or listed as an Agenda item.

4.      All Documents and/or communications relating to water service to the City of Flint and/or the Flint/KWA plan that you provided to, or received from, the following governmental entities, offices, divisions, agencies, laboratories, or departments (or their officers, employees, or representatives), including, but not limited to:

16

A.  The Michigan Department of Environmental Quality, including but not limited to the Office of Drinking Water and Municipal Assistance, (or their officers, employees or representatives);

B.  The Joint Select Committee on the Flint Water Emergency (or their officers, employees or representatives);

C.  The Flint Water Advisory Task Force (or their officers, employees or representatives);

D.  The Michigan Department of Health and Human Services (or their officers, employees or representatives);

E.  The Michigan Governor's Office (or their officers, employees or representatives);

F.  The Michigan Department of Natural Resources (or their officers, employees or representatives);

G.  The Michigan Department of Transportation (or their officers, employees or representatives);

H.  The City of Flint, including its Public Works Department and Water Treatment Plant (or their officers, employees or representatives);

I.  The United States Environmental Protection Agency (or their officers, employees or representatives);

J.  The United States Centers for Disease Control and Prevention (or their officers, employees or representatives);

K.  The United States Agency for Toxic Substances and Disease Registry (or their officers, employees or representatives);

L.  The Emergency Managers appointed for the City of Flint (or their officers, employees or representatives);

M.  The Office of the Michigan Attorney General (or their officers, employees or representatives);

N.  The Office of the Auditor General of Michigan (or their officers, employees or representatives);

17

O.   KWA (or their officers, employees or representatives);

P.   The Genesee County Drain Commission (or their officers, employees or representatives);

Q.   The Detroit Water and Sewerage Department (or their officers, employees or representatives);

R.   The Great Lakes Water Authority (or their officers, employees or representatives);

S.   The Michigan Lead Poisoning Prevention Program (or their officers, employees or representatives);

T.   Any academic institution, including but not limited to the University of Michigan, Michigan State University, or Wayne State University (or their officers, employees or representatives);

U.   Any resident or citizen of the City of Flint (or their agents, guardians, or legal representatives);

V.   Any Committee or Sub-Committee of the United States Congress (or their officers, employees or representatives);

W.   The Michigan State Police Emergency Management and Homeland Security Division (or their officers, employees or representatives);

X.   Hurley Medical Center (or its officers, employees, or representatives, including but not limited to Mona Hanna-Attisha, MD);

Y.   Dr. Mona Hanna-Attisha, MD;

Z.   Special Prosecutor Todd Flood;

AA.   The Virginia Tech Research Team at Virginia Tech, including but not limited to Dr. Marc Edwards, Amy Pruden, and Joseph Falkinham III;

BB.   Any news or media outlet or their employees, including but not limited to any websites, newspapers, television stations, and/or radio stations;

CC.   Any member of the Michigan State Legislature (or their employees or representatives);

18

DD. Martin Waymire public relations firm (or its officers, employees, or representatives);

EE. Vanguard Communications (or its officers, employees, or representatives);

FF. Sierra Club (or its officers, employees or representatives);

GG. Natural Resources Defense Council (or its officers, employees, or representatives);

HH. Coalition for Clean Water (or its officers, employees, or representatives);

II. Concerned Pastors for Social Action (or its officers, employees, or representatives);

JJ. Any member of the Flint Water Advisory Task Force (or its employees or representatives);

KK. The Flint Water Interagency Coordinating Committee (or its employees or representatives);

LL. The Michigan Joint Committee on the Flint Water Public Health Emergency (or its employees or representatives);

MM. Tucker, Young, Jackson, Tull Inc. (or its officers, employees, or representatives);

NN. Governor Rick Snyder;

OO. The State of Michigan;

PP. The City of Flint;

QQ. Daniel Wyant;

RR. Andy Dillon;

SS. Nick Lyon;

TT. Nancy Peeler;

UU. Liane Shekter-Smith;

19

VV.   Adam Rosenthal;

WW. Stephen Busch;

XX.   Patrick Cook;

YY.   Michael Prysby;

ZZ.   Bradley Wurfel;

AAA. Jeff Wright;

BBB. Edward Kurtz;

CCC. Darnell Earley;

DDD. Gerald Ambrose;

EEE. Michael Brown

FFF. Dayne Walling;

GGG. Howard Croft;

HHH. Michael Glasgow;

III.   Daugherty Johnson;

JJJ.   Lockwood, Andrews & Newnam, P.C.;

KKK. Lockwood, Andrews & Newnam, Inc.;

LLL. Leo A. Daly Company;

MMM.      Veolia North America, LLC;

NNN. Veolia North America, Inc.;

OOO. Veolia Water North America Operating Services, LLC;

PPP.   Robert Scott;

QQQ. Eden Wells;

RRR. Rowe Professional Service Company;

20

SSS. McLaren Healthcare Corporation;

TTT. United States Center for Disease Control and Prevention; and

UUU. The American Civil Liberties Union ("ACLU") (including any employee, agent, or representative of the ACLU and/or any regional, state, or local chapter).

5.  All Documents and/or communications relating to any and all:

A.  Flint Data Summits hosted by the EPA or any other state or federal agency, department, official, or employee;

B.  Flint Water Infrastructure Summits.

6.  All documents and/or communications relating to:

A.  Water tests or samples of Flint Public Water or residential water;

B.  Data regarding blood lead levels of Flint residents and/or citizens.

7.  All documents and/or communications relating to the alleged contamination of Flint's public water supply or the location of Flint's water service lines, provided to, or received from, any investigators, experts, academic researchers, or Professors, including, but not limited to:

A.  Terese M. Olson, Ph.D.;

B.  Jacob Abernethy, Ph.D.;

C.  Martin M. Kaufman, Ph.D.;

D.  Susan J. Masten, Ph.D.;

E.  Shawn P. McElmurry, Ph.D.; and

F.  Marc Edwards, Ph.D.

21

8.     All physical objects relating to the City of Flint's FAST Start Pipe Replacement Program, the alleged contamination of Flint's public water supply, or the location of Flint's water service lines (e.g., water service lines, interior premise plumbing or fixtures), provided or transmitted to or received from any investigators, experts, consultants, academic researchers, or Professors, including, but not limited to:

     A.     Terese M. Olson, Ph.D.;

     B.     Jacob Abernethy, Ph.D.;

     C.     Martin M. Kaufman, Ph.D.;

     D.     Susan J. Masten, Ph.D.;

     E.     Shawn P. McElmurry, Ph.D.; and

     F.     Marc Edwards, Ph.D.

9.     All documents and/or communications relating to all tests or sampling results relating to the water quality or water chemistry at any residence in Flint, related to:

     A.     The presence of soluble or particulate lead in the residential water supply or tap water;

     B.     The presence of particulate lead in the Flint water distribution system (including residential service lines);

     C.     The presence of Legionella or any other bacteria in the Flint water distribution system (including residential service lines);

     D.     The presence of Total Tri-halomethanes (TTHMs) or any other contaminant in the Flint water distribution system (including residential service lines);

     E.     Sections, coupons, or samples of water service lines taken or saved from the pipe replacement initiative;

     F.     Photographs or videos of pipe replacements, sections of pipe, or from inspections of interior plumbing;

G.   Water usage records.

10.   All Documents and/or communications relating to the alleged contamination of Flint's drinking water provided to or received from:

A.   Any state or federal government agency (or its officers, employees or representatives);

B.   Any resident or citizen of the City of Flint (or their agents, guardians, or legal representatives).

11.   All documents relating to the drinking water supply in Flint.

12.   All documents relating to the quality and characteristics of the City of Flint's municipal drinking water, including all documents relating to analytical testing of untreated and treated Flint water and all test results.

13.   All documents relating to the treatment of the City of Flint's water at the Flint Water Treatment Plant.

14.   All documents relating to the distribution of drinking water to the residents of Flint, including operation, maintenance and replacement of drinking water system related infrastructure, and planning for infrastructure replacement and improvements.

15.   All reports, studies, and analyses (including all drafts thereof) prepared by or for the Karegnondi Regional Water Planning Group ("Planning Group") concerning, in whole or in part, dates by which the water authority contemplated by the Planning Group would or could begin supplying Lake Huron water to the City of Flint.

16.   All paper and electronic correspondence among members of the Planning Group concerning, in whole or in part, dates by which the water authority contemplated by the Planning Group would or could begin supplying Lake Huron water to the City of Flint.

17.   All reports, studies, and analyses (including all drafts thereof) prepared by or for the Planning Group concerning, in whole or in part, the cost to the City of Flint of Lake Huron water to be supplied to the city by the water authority contemplated by the Planning Group.

23

18.   All paper and electronic correspondence among members of the Planning Group concerning the cost to the City of Flint of Lake Huron water to be supplied to the city by the water authority contemplated by the Planning Group.

19.   All reports, studies, and analyses (including all drafts thereof) prepared by or for the Planning Group concerning, in whole or in part, potential routes for the pipeline they contemplated would deliver Lake Huron water to the City of Flint or concerning real estate that would need to be acquired or leased for that pipeline or associated pumping stations.

20.   All paper and electronic correspondence among members of the Planning Group concerning potential routes for the pipeline they contemplated would deliver Lake Huron water to the City of Flint or concerning real estate that might be acquired or leased for construction of that pipeline or associated pumping stations.

21.   All paper and electronic correspondence between members of the Planning Group and other persons (including natural persons, business entities, institutions, and government entities) concerning potential routes for the pipeline members of the Planning Group contemplated would deliver Lake Huron water to the City of Flint or concerning real estate that might be acquired or leased for construction of that pipeline or associated pumping stations.

22.   All reports, studies, and analyses (including all drafts thereof) prepared by or for KWA concerning, in whole or in part, dates by which KWA would or could begin supplying Lake Huron water to the City of Flint.

23.   All paper and electronic correspondence among trustees or officers of KWA concerning, in whole or in part, dates by which KWA would or could begin supplying Lake Huron water to the City of Flint.

24.   All reports, studies, and analyses (including all drafts thereof) prepared by or for KWA concerning, in whole or in part, the cost to the City of Flint of Lake Huron water to be supplied by KWA to the city.

25.   All paper and electronic correspondence among trustees or officers of KWA concerning the cost to the City of Flint of Lake Huron water to be supplied to the city by KWA.

26.   All reports, studies, and analyses (including all drafts thereof) prepared by or for KWA concerning, in whole or in part, potential routes for the pipeline KWA

24

contemplated would deliver KWA water or concerning real estate that might need to be acquired or leased for that pipeline or associated pumping stations.

27.    All paper and electronic correspondence among trustees or officers of KWA concerning potential routes for the pipeline they contemplated would deliver KWA water or concerning real estate that might be acquired or leased for construction of that pipeline or associated pumping stations.

28.    All paper and electronic correspondence between trustees or officers of KWA and persons (including natural persons, business entities, institutions, and government entities) unaffiliated with KWA concerning potential routes for the pipeline that trustees or officers of KWA contemplated would deliver KWA water or concerning real estate that might be acquired or leased for construction of that pipeline or associated pumping stations.

29.    All paper and electronic correspondence between trustees or officers of KWA and persons (including natural persons, business entities, institutions, and government entities) unaffiliated with KWA concerning potential routes for the pipeline that would deliver KWA water or concerning real estate that might be acquired or leased for construction of that pipeline or associated pumping stations.

30.    All paper and electronic correspondence among trustees or officers of KWA concerning the identities of contractors or subcontractors which might be hired to construct the pipeline that would deliver KWA water or pumping stations associated with that pipeline.

31.    All requests for bids and requests for proposals issued by KWA with respect to construction of the pipeline it planned to build, or for construction of pumping stations associated with that pipeline, and all responses received by KWA to such requests.

32.    All requests for bids and requests for proposals issued by KWA on or before November 1, 2017, with respect to maintenance or operation of the pipeline that delivers KWA water to its customers or pumping stations associated with that pipeline, and all responses received by KWA to such requests.

33.    All contracts executed by KWA for construction of the pipeline it built to deliver water to its customers or for pumping stations associated with that pipeline.

34.   All contracts executed by KWA on or before November 1, 2017, for maintenance services or operating services for the pipeline that delivers KWA water to its customers or pumping stations associated with that pipeline.

35.   All documents and other materials KWA has provided in response to subpoenas, CIDs, or other demands to produce issued by the Michigan Attorney General's office, the Michigan Auditor General's office, Special Prosecutor Todd Flood, or the United States Attorney's office.

36.   All paper and electronic correspondence between KWA and Tucker, Young, Jackson, Tull Inc. concerning anticipated costs of water to be supplied by KWA, and all copies of all documents supplied by KWA to Tucker, Young, Jackson, Tull Inc. related to that subject.

37.   All communications between KWA and Veolia Water North America Operating Services, LLC, Veolia North America, LLC, or Veolia North America, Inc. between January 1, 2012 and January 1, 2016.

38.   All communications between KWA and Lockwood Andrews and Newnam, Inc., Lockwood, Andrews and Newnam, Inc., or Leo A. Daly, Inc. between January 1, 2012 and January 1, 2016.

39.   All communications between KWA and Rowe Professional Services between January 1, 2012 and January 1, 2016.

40.   All paper and electronic correspondence between KWA and the Flint City Council, the Mayor of Flint, or Emergency Managers of the City of Flint between January 1, 2012 and January 1, 2017.

41.   All reports, studies, and analyses prepared by or for KWA and supplied by KWA to the City of Flint concerning the anticipated costs to the City of Flint for water supplied or to be supplied by KWA to the city.

42.   Documents sufficient to disclose the reasons why KWA was not prepared to begin delivering water to the City of Flint on or before the end of 2016.

43.   All reports, correspondence, and notices, both paper and electronic, provided by KWA to the Flint City Council, the Mayor of Flint, or Emergency Managers of the City of Flint between January 1, 2013 and January 1, 2015 concerning the date by which KWA would be prepared to begin delivering water to the City of Flint.

44.     All agendas and minutes of meetings convened by members of the Planning Group.

45.     All agendas and minutes of meetings convened by the trustees of KWA between the date of KWA's formation and January 1, 2017.

46.     All paper and electronic correspondence generated between January 1, 2013, and May 1, 2014, between KWA, or any of its officers, trustees, or attorneys, and officials in the Michigan Treasury Department concerning an Administrative Consent Order authorizing the City of Flint to borrow funds.

47.     All paper and electronic correspondence generated between January 1, 2013, and May 1, 2014, between KWA, or any of its officers, trustees, or attorneys, and officials in the MDEQ concerning an Administrative Consent Order authorizing the City of Flint to borrow funds.

48.     All paper and electronic correspondence between January 1, 2013, and May 1, 2014, between KWA, or any of its officers, trustees, or attorneys, and attorneys representing the MDEQ, the City of Flint, or the Michigan Treasury Department concerning an Administrative Consent Order authorizing the City of Flint to borrow funds.

27

## CERTIFICATE OF SERVICE

    I, Gregory Stamatopoulos, hereby certify that on January 11, 2019, the forgoing non-party subpoena was served electronically (via electronic mail) to the following counsel of record:

| | |
|---|---|
| Alexander S. Rusek | alexrusek@whitelawpllc.com |
| Charles E. Barbieri | cbarbieri@fosterswift.com |
| Cheryl A. Bush | bush@bsplaw.com |
| Christopher B. Clare | cclare@clarkhill.com |
| Corey M. Stern | cstern@levylaw.com |
| Craig S. Thompson | cthompson@swappc.com |
| Deborah A. LaBelle | deblabelle@aol.com |
| Deborah E. Greenspan | DGreenspan@blankrome.com |
| Esther Berezofsky | eberezofsky@eblawllc.com |
| Gregory Stamatopoulos | gstamatopoulos@weitzlux.com |
| Herbert A. Sanders | haslawpc@gmail.com |
| Hunter Shkolnik | hunter@napolilaw.com |
| Jessica B. Weiner | jweiner@cohenmilstein.com |
| Margaret A. Bettenhausen | bettenhausenm@michigan.gov |
| Mark L. McAlpine | mlmcalpine@mcalpinepc.com |
| Mark R. Cuker | mark@cukerlaw.com |
| Michael J. Pattwell | mpattwell@clarkhill.com |
| Michael L. Pitt | mpitt@pittlawpc.com |
| Michael R. Williams | williams@bsplaw.com |
| Paul F. Novak | pnovak@weitzlux.com |
| Philip A. Erickson | perickson@plunkettcooney.com |
| Philip A. Grashoff , Jr. | pgrashoff@kotzsangster.com |
| Richard S. Kuhl | kuhlr@michigan.gov |
| Sheldon H. Klein | klein@butzel.com |
| Susan Elizabeth Smith | ssmith@bdlaw.com |
| Teresa Ann Caine Bingman | tbingman@tbingmanlaw.com |
| Thaddeus E. Morgan | tmorgan@fraserlawfirm.com |
| Theodore J. Leopold | tleopold@cohenmilstein.com |
| Todd R. Mendel | tmendel@bsdd.com |
| Valdemar L. Washington | Val@vlwlegal.com |
| William H. Goodman | bgoodman@goodmanhurwitz.com |
| William Young Kim | wkim@cityofflint.com |
| Wayne Mason | wayne.mason@dbr.com |

*/s/ Gregory Stamatopoulos*
Gregory Stamatopoulos