```
 1                    UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF MICHIGAN
 2                          SOUTHERN DIVISION

 3

 4
                  In Re   FLINT WATER CASES     Case No. 16-10444
 5

 6

 7    _____/

 8                          STATUS CONFERENCE

 9
              BEFORE THE HONORABLE JUDITH E. LEVY
10                 UNITED STATES DISTRICT JUDGE

11                        NOVEMBER 6, 2019

12
                          APPEARANCES IN ALPHABETICAL ORDER:
13
                          Edward Bajoka
14                        Bajoka Law Group PLLC
                          8424 East 12 Mile Road, Suite 200
15                        Warren, MI 48093

16                        Charles E. Barbieri
                          Foster, Swift, Collins & Smith, P.C.
17                        313 South Washington Square
                          Lansing, MI 48933
18
                          Esther Berezofsky
19                        Berezofsky Law Group, LLC
                          210 Lake Drive East, Suite 101
20                        Cherry Hill, NJ 08002

21                        (Appearances continued on next page)

22
                          For a Certified Transcript Contact:
23                        Jeseca C. Eddington, RDR, RMR, CRR, FCRR
                          Federal Official Court Reporter
24                        United States District Court
                          200 East Liberty Street
25                        Ann Arbor, Michigan 48104
```

```
 1                         Frederick A. Berg
                           Butzel Long
 2                         150 West Jefferson, Suite 100
                           Detroit, MI 48226
 3
                           Jay M. Berger
 4                         Clark Hill
                           500 Woodward Avenue, Suite 3500
 5                         Detroit, MI 48226

 6                         Teresa Ann Caine Bingman
                           Law Offices of Teresa A. Bingman
 7                         1425 Ambassador Drive
                           Okemos, MI 48864
 8
                           Jayson E. Blake
 9                         McAlpine PC
                           3201 University Drive, Suite 100
10                         Auburn Hills, MI 48326

11                         James M. Campbell
                           Campbell, Campbell, Edwards & Conroy
12                         One Constitution Plaza, Suite 300
                           Boston, MA 02129-2025
13
                           Nancy K. Chinonis
14                         Cline, Cline & Griffin
                           503 Saginaw Street
15                         Flint, MI 48502

16                         Alaina Devine
                           Campbell Conroy & O'Neil PC
17                         1 Constitution Wharf, Suite 310
                           Boston, MA 02129
18
                           Philip A. Erickson
19                         Plunkett & Cooney
                           325 East Grand River Avenue, Suite 250
20                         East Lansing, MI 48823

21                         James A. Fajen
                           Fajen & Miller, PLLC
22                         3646 West Liberty Road
                           Ann Arbor, MI 48103
23
                           Shayla A. Fletcher
24                         The Fletcher Law Firm, PLLC
                           1637 South Huron
25                         Ypsilanti, MI 48197
```

November 6, 2019

```
 1              Joseph F. Galvin
                Genesee County Drain Commissioners
 2              4610 Beecher Road
                Flint, MI 48532
 3
                William H. Goodman
 4              Goodman and Hurwitz, P.C.
                1394 East Jefferson Avenue
 5              Detroit, MI 48207

 6              Deborah E. Greenspan
                Special Master
 7
                Krista A. Jackson
 8              Kotz Sangster Wysocki P.C.
                40 Pearl Street, Northwest, Suite 400
 9              Grand Rapids, MI 49503

10              Larry R. Jensen
                Hall Render Killian Heath & Lyman, PLLC
11              201 West Big Beaver Road, Suite 1200
                Troy, MI 48084
12
                William Young Kim
13              City of Flint
                1101 South Saginaw Street, Third Floor
14              Flint, MI 48502

15              Sheldon H. Klein
                Butzel Long, P.C.
16              Stoneridge West, 41000 Woodward Avenue
                Bloomfield Hills, MI 48304
17
                Richard S. Kuhl
18              Michigan Department of Attorney General
                ENRA Division, P.O. Box 30755
19              Lansing, MI 48909

20              Theodore J. Leopold
                Cohen Milstein Sellers and Toll PLLC
21              2925 PGA Boulevard, Suite 200
                Palm Beach Gardens, FL 33410
22
                Emmy L. Levens
23              Cohen Milstein Sellers and Toll PLLC
                1100 New York Avenue, NW,
24              Suite 500, West Tower
                Washington, DC 20005
25
```

```
 1                          Cynthia M. Lindsey
                            Cynthia Lindsey & Associates
 2                          8900 East Jefferson Avenue, Number 612
                            Detroit, MI 48214
 3
                            Christopher J. Marker
 4                          O'Neill, Wallace & Doyle P.C.
                            300 Saint Andrews Road, Suite 302
 5                          Saginaw, MI 48638

 6                          James Mason
                            Marc J. Bern & Partners LLP
 7                          225 West Washington Street, Suite 2200
                            Chicago, IL 60606
 8
                            T. Santino Mateo
 9                          Perkins Law Group, PLLC
                            615 Griswold, Suite 400
10                          Detroit, MI 48226

11                          Thaddeus E. Morgan
                            Fraser, Trebilcock
12                          124 West Allegan Street, Suite 1000
                            Lansing, MI 48933
13
                            Marie Napoli
14                          Napoli Shkolnik PLLC
                            360 Lexington Avenue, 11th Floor
15                          New York, NY 10017

16                          Paul J. Napoli
                            Napoli Shkolnik PLLC
17                          360 Lexington Avenue, 11th Floor
                            New York, NY 10017
18
                            Paul F. Novak
19                          Weitz & Luxenberg, P.C.
                            Chrysler House
20                          719 Griswold Street, Suite 620
                            Detroit, MI 48226
21
                            Todd Russell Perkins
22                          Perkins Law Group, PLLC
                            615 Griswold, Suite 400
23                          Detroit, MI 48226

24                          Michael L. Pitt
                            Pitt, McGehee, Palmer & Rivers, PC
25                          117 West Fourth Street, Suite 200
                            Royal Oak, MI 48067-3804
```

```
 1                      Alexander S. Rusek
                        White Law PLLC
 2                      2400 Science Parkway, Suite 201
                        Okemos, MI 48864
 3
                        Darryl Segars
 4                      The Segars Law Firm
                        615 Griswold Street, Suite 913
 5                      Detroit, MI 48226

 6                      Corey M. Stern
                        Levy Konigsberg, LLP
 7                      800 Third Avenue, Suite 11th Floor
                        New York, NY 10022
 8
                        Craig S. Thompson
 9                      Sullivan, Ward
                        25800 Northwestern Highway, Suite 1000
10                      Southfield, MI 48075

11                      Valdemar L. Washington
                        718 Beach Street, P.O. Box 187
12                      Flint, MI 48501

13                      Todd Weglarz
                        Fieger, Fieger, Kenney & Harrington, PC
14                      19390 West 10 Mile Road
                        Southfield, MI 48075
15
                        Matthew Wise
16                      Foley & Mansfield, PLLP
                        130 East Nine Mile Road
17                      Ferndale, MI 48220

18                      Barry A. Wolf
                        Barry A. Wolf, Attorney at Law, PLLC
19                      503 South Saginaw Street, Suite 1410
                        Flint, MI 48502
20
                        Trachelle Young
21                      Trachelle C. Young & Associates, PLLC
                        2501 North Saginaw Street
22                      Flint, Michigan 48505

23            To Obtain a Certified Transcript Contact:
              Jeseca C. Eddington, RDR, RMR, CRR, FCRR
24                 Federal Official Court Reporter
                   United States District Court
25        200 East Liberty Street - Ann Arbor, Michigan 48104
```

November 6, 2019

# **I N D E X**

MISCELLANY

Proceedings..................................7
Certificate.................................63

1               **P R O C E E D I N G S**

2          THE CLERK:  Now calling the Flint Water Cases.

3          THE COURT:  Well, thank you.  Please be seated.  And

4   before we put appearances on the record, I want to introduce

5   everyone to Darlene May.  And Darlene is a court reporter for

6   the Eastern District of Michigan.

7          And our court reporter, Jeseca, will be taking a

8   maternity leave at some point between now and the end of the

9   year when her baby is due to be born.  And since we don't know

10  when that is, we thought it would be a good idea for Darlene

11  to be here to see the process that takes place and get --

12  start to become familiar with these cases so she can take over

13  and there will be a seamless transition in terms of the record

14  being accurate and complete.

15         So welcome to Darlene.  And just hoping for the best

16  for Jeseca and her family.

17         So why don't we start with appearances for the

18  record.  Yes.

19         MS. GREENSPAN:  Deborah Greenspan, Special Master.

20         MR. WASHINGTON:  Good afternoon, Judge.  Val

21  Washington on behalf of the Anderson plaintiffs and Joel

22  Dennis Lee.

23         MS. BINGMAN:  Good afternoon, Your Honor.  Teresa

24  Bingman representing class plaintiffs.

25         MR. NOVAK:  Good afternoon, Your Honor.  Paul Novak

```
 1    on behalf of class plaintiffs.
 2            MS. LINDSEY:  Good afternoon, Your Honor.  Cynthia
 3    Lindsey on behalf of class plaintiffs.
 4            MR. GOODMAN:  Good afternoon, Your Honor.  Bill
 5    Goodman on behalf of the Marble plaintiffs and class
 6    plaintiffs.  And I have with me my assistant law student
 7    intern Mr. James Johnson.
 8            THE COURT:  Great.  Wonderful.  I think I met Mr.
 9    Johnson recently and suggested to him that he come along.  We
10    just happen to be at a federal bar event that I was
11    participating in and I met him there.
12            MR. BLAKE:  Good afternoon, Your Honor.  Jayson
13    Blake, liaison counsel for the state court class action.
14            THE COURT:  Thank you.
15            MS. YOUNG:  Good afternoon, Your Honor.  Trachelle
16    Young with the class plaintiffs.
17            MS. BEREZOFSKY:  Good afternoon, Your Honor.  Esther
18    Berezofsky for the class plaintiffs.
19            THE COURT:  Okay.
20            MR. STERN:  Your Honor, Corey Stern on behalf of
21    individual plaintiffs.
22            MR. NAPOLI:  Good afternoon.  Paul Napoli on behalf
23    of individual plaintiffs.
24            MR. PITT:  Michael Pitt for class.
25            MR. LEOPOLD:  Ted Leopold for the putative class.
```

1          MR. KIM:  Good afternoon, Your Honor.  William Kim

2    for the City of Flint and former Mayor Dayne Walling.

3          MR. BERG:  Good afternoon, Your Honor.  Rick Berg

4    here on behalf of City of Flint.

5          MR. RUSEK:  Good afternoon, Your Honor.  Alexander

6    Rusek on behalf of defendant Howard Croft.

7          MR. ERICKSON:  Good afternoon, Your Honor.  Philip

8    Erickson on behalf of defendants Lockwood Andrews and Newnam

9    and Leo A Daly company.

10         MR. CAMPBELL:  Good afternoon, Your Honor.  James

11   Campbell.  I represent the VNA defendants.

12         MS. DEVINE:  Alaina Devine for the VNA defendants.

13         MS. NAPOLI:  Marie Napoli for individual plaintiffs.

14         MR. FAJEN:  James Fajen, Adam Rosenthal.

15         THE COURT:  Thank you.

16         MS. FLETCHER:  Good afternoon, Your Honor.  Shayla

17   Fletcher on behalf of Alexander plaintiffs.

18         MR. SEGARS:  Good afternoon.  Darryl Segars for the

19   Alexander plaintiffs.

20         MR. BARBIERI:  Charles Barbieri for Patrick Cook and

21   Michael Prysby.

22         MR. THOMPSON:  Good afternoon, Your Honor.  Craig

23   Thompson for defendant Rowe Professional.

24         MR. MORGAN:  Thaddeus Morgan for Liane Shekter Smith.

25         MR. MASON:  Good afternoon, Your Honor.  James Mason

1  for Washington plaintiffs.

2          THE COURT:  Okay.

3          MR. MATEO:  T. Santino Mateo on behalf of Darnell

4  Earley.

5          MR. PERKINS:  Good afternoon, Your Honor.  May it

6  please this honorable Court, my name is Todd Russell Perkins

7  appearing on behalf of Mr. Earley.

8          THE COURT:  Thank you.

9          MR. MARKER:  Good afternoon, Your Honor.  Christopher

10  Marker here on behalf of Michael Glasgow.

11          MR. KUHL:  Good afternoon.  Richard Kuhl for the

12  state defendants.

13          MS. JACKSON:  Krista Jackson for Stephen Busch.

14          MR. WEGLARZ:  Good afternoon.  Todd Weglarz for Brown

15  and Rogers plaintiffs.

16          MR. BERGER:  Good afternoon, Your Honor.  Jay Berger

17  on behalf of Brad Wurfel and Daniel Wyant.

18          MR. BAJOKA:  Good afternoon, Your Honor.  Edward

19  Bajoka appearing on behalf of Daugherty Johnson.

20          MR. KLEIN:  Good afternoon.  Sheldon Klein for the

21  city.

22          MS. CHINONIS:  Good afternoon.  Nancy Chinonis on

23  behalf of McLaren Flint.

24          MR. WISE:  Good afternoon, Your Honor.  Matt Wise on

25  behalf of Jeffrey Wright.

1          MR. GALVIN:  Good afternoon, Your Honor.  Joseph

2     Galvin on behalf of Jeffrey Wright.

3          MR. WOLF:  Good afternoon, Your Honor.  Barry Wolf on

4     behalf of Gerald Ambrose.

5          MR. JENSEN:  Good afternoon, Your Honor.  Larry

6     Jensen on behalf of Hurley Medical Center, Ann Newell, and

7     Nora Birchmeier.

8          MS. LEVENS:  Emmy Levens on behalf of the proposed

9     class.

10         THE COURT:  Okay.  Well, thank you, very much.

11         What we have is an agenda that has a fair amount on

12    it so we'll try to work through it pretty efficiently.  I do

13    want to mention for anyone who's here from the City of Flint

14    who's not a lawyer or who is a defendant who's also not a

15    lawyer or anyone in between all of that, that in the last

16    month and a half or so since the last status conference on I

17    think it was September 25th, there has been a lot of activity

18    in the case.

19         Depositions are now being scheduled.

20    Interrogatories, document requests are going back and forth

21    and are being worked on.  And so it just bears repeating that

22    this is remarkably complex litigation with a lot of moving

23    pieces.  And that from my observation, the lawyers are working

24    hard on behalf of their clients on all sides of this case.

25         And so even though it may look as if we're not making

1    progress, it's my view from where I am that we are keeping to

2    the schedule that was set in the case management order.  We

3    are making progress although it's never as fast as anybody

4    wants it to be.

5         So the first item on the agenda was to discuss issues

6    that came up in a proposed deposition protocol.  At our last

7    status conference, I appointed a group of lawyers who

8    essentially volunteered.  That was open to any lawyer on the

9    case so that we would have a representative group to come up

10   with a proposed protocol for scheduling depositions in a case

11   as complicated as this one.

12        That protocol was submitted to me through a e-mail to

13   my law clerk, Abigail DeHart.  And I had some feedback and so

14   on.  And then somewhat surprise to me, I received both some

15   e-mail and a motion from Mr. Kuhl and e-mail I think from MDEQ

16   defendants with some concerns about one narrow part of the

17   protocol.

18        So I don't know whether Mr. Kuhl wishes to have

19   anything further to say.  I've read your motion.  And as a

20   result of both the protocol looking at your motion, the

21   e-mails, and so on, I am prepared to amend the deposition

22   protocol.

23        And what the issue was is that the State of Michigan

24   was identified in the deposition protocol as a defendant given

25   16.6 percent of defendant's time at each deposition as opposed

1    to being viewed as a plaintiff, which the State of Michigan

2    lawyers represent the people in their case.  The People of the

3    State of Michigan in state court in their case against the

4    Veolia defendants and the LAN defendants.

5            And so we had an initial discussion sort of a problem

6    solving discussion upstairs in chambers as to what could

7    resolve this dispute.  And I'm prepared as a result of that to

8    enter additional time for the State of Michigan.

9            And I realized in coming downstairs from upstairs

10   that my math needs some sharpening of those skills.  My math

11   skills were never strong.  And I think they're only getting

12   weaker over time.  So I'm not going to set forth those hours

13   right now.

14           But what I understand the State of Michigan to be

15   asking for is a total of three hours to be taken.  Half from

16   plaintiffs' time.  Half from defendant's time.  And I think

17   that may be a little bit more than can possibly be given so

18   that other defendants and plaintiffs all have time to ask

19   their questions.

20           But I'm prepared to enter something close to that for

21   when at least VNA and LAN individuals or witnesses are being

22   deposed.  Something less for other witnesses.  And the

23   question outstanding is how much time when the City of Flint

24   witnesses are being deposed.  So I think I've got enough

25   information to go back upstairs and make this decision.

1          But Mr. Kuhl, is there anything further you want to

2     say on your motion?

3          MR. KUHL:  No, Your Honor.  We stand by what we

4     filed.

5          THE COURT:  Okay.  And is there anything further from

6     this?  Okay.  Mr. Barbieri.

7          MR. BARBIERI:  Yes, Your Honor.  As indicated --

8          THE COURT:  You know, it would be very helpful if

9     you're going to say more than a short yes or no such as what

10    Mr. Kuhl did, if you state your name for the record.  Because

11    although Jeseca and I have now gotten to know most of you,

12    we're introducing Darlene.

13         MR. BARBIERI:  Thank you, your Honor.  Charles

14    Barbieri.  I'm speaking on behalf of the MDEQ defendants at

15    this point.

16         As indicated in chambers, we had requested that we be

17    allotted some time which we did not believe to be the case in

18    reviewing the draft of the amended case management order and

19    protocol.

20         And I didn't suggest a percentage, but I suggested

21    some minutes, about 30 minutes in particular for what would be

22    considered to be plaintiffs' depositions.  And then for any

23    other depositions involving other defendants, I suggested

24    around one hour.

25         THE COURT:  Okay.

```
 1              MR. BARBIERI:  Thank you, your Honor.

 2              THE COURT:  Okay.  So I'll sort all of that out.  And

 3    I just should note for everybody the second amended case

 4    management order has not yet been entered.  But as soon as I

 5    resolve this issue, I intend to enter it.  So now would be the

 6    time to set forth your concerns about it.

 7              And what I decided in looking through it is that it

 8    is my intention to have one consolidated case management order

 9    that progresses with the case.

10              So instead of just filing a new appendix in three

11    months or some new issue comes up, we'll reenter the third

12    amended case management order so there's one working document

13    that anyone in this case can take a look at and it will be the

14    most recent amended case management order that will be the

15    operative order.

16              So to that end, I had asked the lawyers to

17    consolidate this all into one document.  And I think Ms.

18    Devine may have been the one responsible for assisting with

19    that.  And thank you for that work.

20              So is there anything else on the first with respect

21    to discovery at this point?

22              The second amended case management order also has

23    incorporated into it the Court's discovery dispute resolution

24    process.  So I would just recommend that you look at it before

25    the calling or contacting the court via e-mail for the next
```

1    discovery dispute which will inevitably take place so that it

2    can be adhered to strictly.  And then we know what -- everyone

3    knows what will be discussed and what won't.

4          And to the extent anyone sort of wonders why am I

5    handling these discovery disputes when I have 219 other cases

6    on my docket.  And I can answer that quite simply, which is

7    that all of the cases are important cases.  But this is a

8    particularly important case in terms of management of the case

9    itself.

10          And the bird's eye view that I get by being able to

11   participate in the discovery dispute resolution, it helps me

12   understand what the lawyers are doing, how you're approaching

13   the litigation, what the problem areas are, and what I can do

14   to help resolve them.  So I think it helps me in the long --

15   for the long haul in being able to make fair decisions as the

16   cases progress in terms of just understanding what -- who is

17   doing what and how are they doing it and what's going on.

18          So if it gets to a point where it is just

19   overwhelming, then I'll try to get some help with an

20   additional special master or some other method.  Or I'll beg

21   Ms. Greenspan to help if needed.  But for now, I'm learning a

22   great deal about the case staying on top of it.  And I think

23   it will help me ultimately manage it in the future.

24          So the next item was coordination of cases involving

25   the EPA.  And as many of you know, there are federal tort

1    claims act cases, some 8,000 individual plaintiffs in front of

2    Judge Parker in I think there are now five cases with a sum

3    total of those individuals in it.

4           Several people suggested or several parties suggested

5    this as an issue for discussion.  We talked about it upstairs

6    as well.  My goal is that all of the Flint water cases be

7    handled in an efficient and fair productive way.  So I think

8    the parties are going to have further discussion on whether

9    you're going to seek to have Judge Parker's case assigned to

10   this Court and then to have me consolidate if it is

11   reassigned.

12          But is there anything further?  I think that was Mr.

13   Campbell who had already circulated a request for concurrence

14   in that.

15          MR. CAMPBELL:  Yes, Your Honor.

16          THE COURT:  So Mr. Campbell on behalf of VNA.

17          MR. CAMPBELL:  I'm sorry, Judge.

18          THE COURT:  That's all right.

19          MR. CAMPBELL:  James Campbell on behalf of VNA.

20          Your Honor, as we discussed in your chambers, we'll

21   convene on a meet and confer and determine where the parties

22   are and proceed from there.

23          THE COURT:  Okay.

24          MR. CAMPBELL:  Thank you.

25          THE COURT:  Thank you.  Then next up is the motion to

1    strike class allegations.

2            MR. CAMPBELL:  Good afternoon again, Your Honor.

3    James Campbell on behalf of VNA, the three VNA defendants.

4            So this motion has been pending for some time.  And

5    we filed it with the motions to dismiss originally.  It's had

6    some refinement and with the fourth amended complaint Your

7    Honor decided to hear it today.  So there is a history with

8    this.

9            I feel as though the issues are in the brief.  So as

10   I prepared for this, I was somewhat -- I don't want to belabor

11   the point.  And I -- the issues are really three.  The class

12   definition as it currently stands is a failsafe class for the

13   reasons why we state in the briefing.  That is that the -- it

14   incorporates liability issues so that if the case were tried

15   and lost by the plaintiffs, no one would be bound other than

16   the class representative plaintiffs.

17           THE COURT:  In what words do you think incorporate

18   liability?  The word toxic?

19           MR. CAMPBELL:  It's the two phrases read together,

20   Judge.  Exposed to toxic water and experienced injuries and

21   damages.  With that is implicit a causation argument.

22           In the plaintiffs' briefing in response it was it

23   could be any injuries or damages.  You know it's not related

24   to the toxic water, the alleged toxic water in Flint.  That

25   somehow that that's different.  But that's one of the issues,

```
 1    that causation is implicit when those are read together.

 2              Injuries and damages presuppose that there are

 3    injuries and damages related to the water.  And that creates a

 4    management issue for the Court in figuring out whether or not

 5    any individual plaintiff is actually injured or damaged by the

 6    Flint water issues.

 7              So those would be -- there's really two or three

 8    toxic water as it's phrased in the complaint injuries and

 9    damages.  That phrase.  And the causation element that is

10    created when those phrases are read together.

11              THE COURT:  Okay.

12              MR. CAMPBELL:  So and that's throughout the class

13    definitions in the fourth amended complaint.

14              The other issues that we raise, Your Honor, are that

15    is apparently the class definitions are overinclusive as they

16    apply to the VNA defendants.  It's undisputed that VNA didn't

17    arrive in Flint until February 2015.  And the involvement

18    ended in 30 to 60 days or so.

19              THE COURT:  But can't that issue just be handled in

20    an efficient way either in a verdict form that here's the

21    class definition with respect to VNA?  If you find for

22    plaintiffs you may only find damages that occurred from

23    whatever date in 2015 to the following day?

24              MR. CAMPBELL:  I think that that is an inefficient

25    way to deal with it, Your Honor.  Because it's undisputed that
```

1    VNA was not on scene until nine months after the issue

2    started.  With the water switch in April 2014 there's nine

3    months of time that VNA simply can't have anything to do with.

4            THE COURT:  So if the Court were to certify a class,

5    you're suggesting there would be a separate class for VNA?

6            MR. CAMPBELL:  As it would be for VNA in order for it

7    to make sense as to VNA and not be overinclusive, it would

8    start from the date of our involvement going forward.  And we

9    can't -- you know, we weren't there.  We didn't -- and it's

10   not that this is a fact outside the pleadings.  That's how

11   it's alleged in the complaint.  It's undisputed.

12           THE COURT:  No, it's undisputed.  It's absolutely

13   undisputed.  And any order of damages for things that took

14   place before VNA arrived on the scene that are determined

15   against VNA would have to be set aside.  So there would have

16   to be a method at trial to ensure that the jury understands

17   that the date that VNA's liability could have possibly begun

18   was the date you began your work there.

19           MR. CAMPBELL:  That's right.

20           THE COURT:  So I have no doubt that you're right on

21   that.  My doubt is that it has to take place at this point in

22   the case and that it has to involve a whole separate class

23   being identified for VNA to avoid this problem.

24           MR. CAMPBELL:  As these allegations are advanced

25   against VNA, I respectfully disagree with you, Your Honor.  On

 1   a class definition basis as to VNA as opposed to some other

 2   defendant, this class is overbroad based upon fair reading of

 3   the complaint itself because of the issue we're talking about.

 4        THE COURT:  Right.  No, I agree with you that it's

 5   overbroad as currently defined with respect to your client

 6   looking just at the dates.  It just can't possibly be that if

 7   somebody was only living in Flint from April 25, 2014, until a

 8   month before VNA arrived, they could be in the class as it's

 9   currently defined but they couldn't find against your client.

10        MR. CAMPBELL:  That's correct.

11        THE COURT:  The jury couldn't find against your

12   client on behalf of those plaintiffs.  So that will have to

13   get resolved.

14        MR. CAMPBELL:  And I was thinking about why should

15   Your Honor take action now on the pleadings.

16        THE COURT:  Yeah.  And you said in your papers I

17   should take action now because you don't know what discovery

18   to take.

19        MR. CAMPBELL:  It's a discovery issue, Your Honor.

20   It's a large case as you have frequently opened your

21   conferences on.  And for -- just for the efficiency reasons or

22   the discovery reasons and when we ultimately get to a class

23   certification hearing --

24        THE COURT:  But tell me what discovery -- let's say

25   today I say I must strike these classes and I must create one

1    this afternoon and it's going to say exposed to water in Flint

2    from the date VNA showed up moving forward.  What discovery

3    would you do differently?

4           MR. CAMPBELL:  Well, Your Honor, discovery is defined

5    by Rule 26 so it has to be related to a claim that's advanced.

6    Since there can't be any claim advanced against VNA for things

7    that took place before we were there, the discovery as the

8    those issues is improper.

9           THE COURT:  Well, I'm here to tell you you don't have

10   to worry about those issues before you showed up.  It's on the

11   record now.  Don't take any discovery about what VNA did in

12   Flint before VNA went to Flint.

13          MR. CAMPBELL:  Okay.  Well, I can tell you that at

14   least a fair reading of some of the discovery it goes beyond

15   that, so.

16          THE COURT:  There may be relevant discovery of your

17   company about how do you prevent negligence or how -- what are

18   your duties and how -- so I'm not saying you don't have to

19   answer discovery about your company's work before April 25th

20   of 2014.

21          I'm just suggesting when you go to defend yourself

22   and figure out what depositions you need to take and what

23   questions you need to take, your liability starts when you

24   showed up.  And it can't -- you can't be held responsible for

25   things that happened before then.

```
 1              So I don't find that to be very complicated.  That's
 2      the one thing in this whole case that seems uncomplicated to
 3      me.
 4              MR. CAMPBELL:  The other points that we raised are
 5      there's claims about injunctive relief that may effect other
 6      defendants.  They don't effect VNA.  So those class
 7      definitions should be amended because it doesn't apply to us.
 8      There's no claim.
 9              THE COURT:  Okay.
10              MR. CAMPBELL:  And the final issue we raise is as to
11      the issues that are identified.  I think the fourth amended
12      complaint identifies 12 issues, only six of which originally
13      pertain to VNA.  I believe the plaintiffs agree that three of
14      the remaining six have been eliminated by Your Honor's
15      previous rulings and there's only three issues that pertain to
16      VNA.
17              THE COURT:  Right.  And so currently there's a class
18      that's defined by race, for example.  Is this what you're
19      getting at at this time?
20              MR. CAMPBELL:  That's correct.
21              THE COURT:  Yeah.  And so -- well, let me hear a
22      response from plaintiffs.
23              MR. CAMPBELL:  Thank you.
24              MS. LEVENS:  Good afternoon, Your Honor.  Emmy Levens
25      for the putative class.
```

 1              THE COURT:  Thank you.

 2              MS. LEVENS:  It's class plaintiffs' position that

 3    Veolia and the other defendants that have signed on have not

 4    overcome the strong presumption that we're entitled to get

 5    discovery before proceeding with the discussion of whether or

 6    not this class should be certified.

 7              THE COURT:  Yeah.  This isn't about certification or

 8    discovery leading up to a motion for class certification.  As

 9    I understand Mr. Campbell and his client's argument it's that

10    he disagrees with your proposed definitions of the class.

11              MS. LEVENS:  Yes, Your Honor.  But it's commonplace

12    that the class definitions were fined to conform to what comes

13    out of discovery at the point at which we move for class

14    certification.

15              And then the Court has the benefit of both a refined

16    class definition as well as the examples of the types of

17    evidence the class plaintiffs intend to rely on.  And that is

18    how the Court is able to assess that evidence to see how many

19    of the issues that the plaintiffs are trying to get certified

20    are provable using class wide evidence.

21              I think if you look at how the Sixth Circuit has

22    addressed this in a couple of cases, both Randleman and Young

23    were insurance cases.  They both involved essentially breach

24    of contract cases.  And they both had definitions that on some

25    level talked about injuries or damages.

 1           In Randleman the Sixth Circuit said this isn't okay.

 2    This is failsafe.  We need -- we can't certify this class.   In

 3    Young, the court said it was fine.

 4           So what was the key difference between these two

 5    cases?  The key difference was the type of evidence the

 6    plaintiffs wanted to proffer to prove up their claims.

 7           In Young, the plaintiffs had evidence that there were

 8    certain presumptions that it was a common policy that applied

 9    to all of the proposed class members.  Whereas in Randleman

10    through discovery it became apparent that the actual issue

11    that the class representatives were bringing did not apply in

12    a widespread manner to the entire class.

13           And so that's why I think there is this strong

14    presumption of attempting to modify, amend, strike class

15    definitions at this stage.

16           It's why in Your Honor's opinion you said unless the

17    class definition as phrased clearly violates established law,

18    that we shouldn't be striking it now.  We should be proceeding

19    with discovery and then assessing the exact class that

20    plaintiffs seek to have certified.  And the precise types of

21    evidence that we're providing Your Honor with to prove those

22    different classes' claims.

23           THE COURT:  Okay.  So here's my perspective on this,

24    Mr. Campbell and Ms. Levens, which is that I don't see that

25    much has changed from my decision in the Carthan fourth

1    amended complaint in that the state of the law in the Sixth

2    Circuit and I think in the Supreme Court, but mostly in the

3    Sixth Circuit is set forth in the Operating Engineers Local

4    324 Healthcare Plan case that motions to strike are not

5    frequently granted because there's a presumption in a class

6    action lawsuit should be that plaintiffs will have the

7    opportunity to conduct discovery and to proceed to argue

8    certification of the class.

9         Now that shifts if you can show that it's an

10   impermissible class, which I think is what Mr. Campbell is

11   trying to do and has put forth as a failsafe class where heads

12   I win, tails you lose.  And I think the plaintiffs have made

13   an argument that is colorable and is reasonable that saying

14   exposed to toxic Flint water.

15        We know whether the word toxic implies something more

16   than it is meant.  I don't know.  But we know the water

17   changed April 25th of 2014.  We know that issues took place.

18   So I don't think that on its own incorporates an issue of

19   liability.

20        And the fact that injuries and damages are in there,

21   this may need work.  I'm not suggesting that this is the final

22   class that ought to be proposed by the plaintiffs.  But I do

23   -- the law states that either the Court or the plaintiffs can

24   refashion the class.  And the plaintiffs have suggested some

25   alternative classes in their motion or in their last proposed

1    amended complaint.

2            I'm not prepared to rule on what I think -- how I

3    think they should proceed, if they should proceed at all.   I

4    think that's something that I'm better off leaving to the

5    plaintiffs in the first instance.

6            If they come forward at the motion to certify stage

7    and can't get over the finish line and I think there is a way

8    that it can happen, then it would be my duty to set that

9    forth.  But I don't think that we're there yet.

10           And I think plaintiffs have pointed out, Ms. Levens

11   in her brief on this, that there are still legal questions

12   where somebody could be a member of this class and still lose

13   but not be able to bring their own case.  So there are still

14   questions.

15           She's pointed out approximate cause that are separate

16   from determining class membership that are not incorporated

17   into the definition in other words.  There are other issues

18   that would still need to be resolved.

19           So I think it's not a glaring failsafe class.  It

20   kind of looks like it and feels like it a little bit.  I'll

21   put that out there, that it's close.  When you say we're

22   limiting this to people who were exposed to toxic water and

23   had damages.

24           But I -- what I looked at most carefully Mr. Campbell

25   in your brief was the allegation or concern that you don't

1    know how to litigate your case with these current definitions

2    out there.  And I'm sympathetic to that so I tried to think it

3    through of how would it change a single deposition

4    interrogatory or document request or request to admit or

5    anything about your case to have a new definition put forward

6    by plaintiffs right now.

7              And I simply can't see how it would impact you in any

8    way that cries out or calls out in any way for relief at this

9    point.

10             So my perspective on this is what I think I've been

11   trying to telegraph the whole time, which is to deny it

12   without prejudice.  I mean, this very well could be set forth

13   in your response to the motion to certify when we know exactly

14   which of these alternatives the plaintiffs are going to stick

15   with.

16             We know the equal protection claim is out.  So I

17   suggest you not spend a lot of time defending that.  Even if

18   it's still listed as a class, it's just a thought.  So that's

19   what I would do -- what I will do with this at this point.

20             And you certainly had a right to bring the motion,

21   brief it.  It was responded to.  And I think you can litigate

22   your case and not be at a disadvantage with the current

23   definitions.  Thank you.  You may sit down.

24             MS. LEVENS:  Thank you.

25             MR. CAMPBELL:  Thank you, your Honor.

| | |
|---|---|
| 1 | THE COURT:  Sure.  Thank you. |
| 2 | So let's see where we are.  Now we are up to the |
| 3 | motion for protective order by Mr. Ambrose, Mr. Earley, and |
| 4 | Mr. Croft. |
| 5 | MR. RUSEK:  Good afternoon, again, Your Honor. |
| 6 | Alexander Rusek on behalf of Mr. Croft.  And I'm also speaking |
| 7 | today for Mr. Ambrose and Mr. Earley. |
| 8 | These are the three defendants who have brought this |
| 9 | motion.  And the three defendants who are in pretty much the |
| 10 | same position in relation to this civil case and the criminal |
| 11 | cases that are currently ongoing. |
| 12 | All three of these gentlemen were charged with false |
| 13 | pretenses over a hundred thousand dollars, conspiracy to |
| 14 | commit the same.  Mr. Ambrose and Mr. Earley were charged with |
| 15 | additional essentially negligence in office charges.  And then |
| 16 | all three of these gentlemen have been put on notice or |
| 17 | threatened in the past with being charged with involuntary |
| 18 | manslaughter by the former Office of Special Counsel. |
| 19 | We spent quite a bit of time in our briefing giving |
| 20 | the background and the facts leading up to this motion.  So |
| 21 | I'm not going to be belabor them other than to discuss some of |
| 22 | the very relevant points that we have right now. |
| 23 | THE COURT:  Okay. |
| 24 | MR. RUSEK:  The charges against the three gentlemen |
| 25 | were brought in December of 2016 when they were charged.  The |

1  false pretenses charges arose from their alleged roles in the

2  City of Flint and the bonding that surrounded the switch from

3  DWSD water to the KWA pipeline system that eventually resulted

4  in the switch of the water in April of 2014.

5          In June of this year, those charges were officially

6  dismissed by the new solicitor general, Ms. Hammoud and they

7  were dismissed without prejudice.  These gentlemen were under

8  the specter of these charges for multiple years.

9          Mr. Ambrose waived his preliminary examination.  Mr.

10  Cross and Mr. Earley had approximately a morning of testimony

11  at preliminary examination.  Otherwise the cases were still

12  ongoing up until a point that they were dismissed in June of

13  this year.

14          Over the course of time, the former Office of Special

15  Counsel produced millions of documents.  It is a huge criminal

16  case.  It's pretty unprecedented to have a preliminary

17  examination be open for years at a time.

18          Generally you have a preliminary examination in state

19  court within 21 days of arraignment.  Here these gentlemen

20  were under indictment for years.  And right now, the solicitor

21  general is reviewing those millions of pages of documents.

22  She only came into office in January of this year.  And she

23  was appointed to look into this case along with Wayne County

24  prosecutor Kim Worthy a couple of months after she came into

25  office.

```
 1            So they haven't had a ton of time to review this
 2   case.  As recent as Monday of this week, the defense teams for
 3   Mr. Earley and Mr. Croft have been in contact with both
 4   Solicitor General Hammoud and Kim Worthy.  And the criminal
 5   cases are active at this point even though these gentlemen
 6   aren't charged.  The specter --
 7            THE COURT:  What do you mean they were in touch with
 8   her or them?  That criminal defense counsel for these three
 9   individual city defendants were in touch with the prosecutors?
10            MR. RUSEK:  For Mr. Croft and Mr. Earley, I can't
11   reveal the contents.  But we are in active negotiations and
12   contact with the prosecutorial team --
13            THE COURT:  I see.
14            MR. RUSEK:  -- in regards to the prior charges and
15   these involuntary manslaughter charges that were threatened by
16   the former team.
17            THE COURT:  Okay.
18            MR. RUSEK:  So it's still an active open
19   communication without revealing what that is at this time.
20            THE COURT:  Okay.  Fair enough.
21            MR. RUSEK:  So right now that investigation is still
22   open.  The charges were dismissed without prejudice.
23            THE COURT:  Right.
24            MR. RUSEK:  So these gentlemen who were under
25   indictment for years still have a very real fear that they may
```

1    once again be charged with crimes.  But because of the statute

2    of limitations for false pretenses, we know that there is an

3    end date because the allegations all arose before April of

4    2014.

5              THE COURT:  Right.

6              MR. RUSEK:  They involved a switch and the bonding

7    for -- to pay for the switch.  So we know that six years after

8    April of 2014 places this in April of next year.  We expect

9    that the prosecutor team that's now in place is going to make

10   some substantial decisions about these charges because they're

11   forced to by April of next year.  Otherwise they can't bring

12   those cases.

13             The Veolia defendants in their response, they brought

14   up a valid point that involuntary manslaughter does have a

15   ten-year statute of limitations which would put us several

16   years down the line before that decision has to be made.

17             But we have significant charging decisions that will

18   be made by April of next year.  They just have to.  Otherwise

19   those charges are lost forever.  There's no tolling and

20   provisions that I can think of that would preclude or, excuse

21   me, would allow the prosecutors to come back.

22             So the three defendants who are in this similar

23   position , we conferred and we thought through how can we

24   balance these gentlemen's Fifth Amendment rights and

25   protections along with participating in this litigation,

1   moving things forward, not asking to stay the entire case to

2   them or anything like that.

3         And these three defendants they've already engaged in

4   document production, I believe tens of thousands of documents

5   individually.  And then the city has also produced all of the

6   e-mails that these gentlemen sent during their time when they

7   were with the city.  Which their time with the city is

8   concurrent with the criminal charges that may be brought

9   against them.

10         It's only their roles at the city.  There's nothing

11   that I've heard in this litigation or that litigation for any

12   wrongdoing that they may have done outside of their position.

13         THE COURT:  Mr. Rusek, have these three individuals

14   depositions been scheduled already?

15         MR. RUSEK:  They were originally scheduled by LAN

16   which prompted us to file the motion for protective order.

17   And because we wanted to address critical issues going forward

18   at the same time, part of that protective order and motion was

19   also to address interrogatories and admissions that have not

20   been served on the three defendants at this time.

21         THE COURT:  Okay.

22         MR. RUSEK:  And the depositions were adjourned as

23   soon as we filed that motion for protective order.  And so

24   that the Court could rule on it.  Because these three

25   defendants are in I believe a very unique position in this

1   litigation.

2          We have defendants such as Daugherty Johnson and

3   Michael Glasgow who were also with the city.  They entered

4   into plea agreements.  And they're currently on probation and

5   they'll have their charges dismissed as part of their plea

6   agreements.  They don't have the same Fifth Amendment concerns

7   that we do.  And the same applies to some of the MDEQ

8   defendants and DHS defendants as well.

9          So with that in mind, we tried to balance as best we

10  could those two factors of protecting their rights, not

11  wasting the time of the litigants in this matter by doing

12  depositions where potentially we're spending two days saying

13  upon advice of counsel, I am respectfully declining to answer

14  because of the Fifth Amendment.

15         THE COURT:  I don't want to come between you and your

16  -- the recommendation to your client as to how your client or

17  the other lawyers and their clients proceed.  But if I

18  balanced the I believe it's five factors -- maybe there's more

19  than five -- as to whether to grant a stay in this -- under

20  these circumstances -- there are six factors.

21         Let's assume -- and we'll go through that in a minute

22  -- that I decide against that.  There was an alternative

23  proposal of sealing and otherwise protecting the depositions

24  of these three defendants as well as further written discovery

25  for them.  And one of the proposals which I have the authority

1    to do under Federal Rule of Civil Procedure 26(c)(1) was to

2    seal the deposition and the documents pending the May 2020

3    time period when the threat of criminal prosecution

4    dramatically goes down.

5            And I would hesitate to say that if the state isn't

6    considering involuntary manslaughter charges, they certainly

7    would need to make a decision on neglect of duty and the other

8    charges before then.  So that could at least be a signal as to

9    whether they're headed in that direction.

10           MR. RUSEK:  Absolute ly, Your Honor.  And that I

11   think is our --

12           THE COURT:  Yeah.  I think --

13           MR. RUSEK:  -- opinion as well.

14           THE COURT:  -- that's where you're coming from.

15           MR. RUSEK:  We're going to do something by then.

16           THE COURT:  But let's say I order this alternative

17   sealing of depositions limiting who can attend to -- I think

18   this is a compelling reason for limiting who can have access

19   to the depositions.  Would you still then be objecting to each

20   -- you can't make a blanket objection to questions before

21   they've been asked.  But is this going to be a productive

22   exercise?

23           MR. RUSEK:  I don't believe so, Your Honor.  And that

24   was the LAN proposal, I believe.

25           THE COURT:  Yeah.

1          MR. RUSEK:  Is, you know, let's do the depositions

2     now.  We'll seal them.  And then unseal in May of 2020.  And

3     essentially that doesn't really do anything to advance the

4     litigation.  Because if they testified tomorrow and the

5     prosecutors charge them in March of next year, when that

6     testimony is unsealed, if they didn't assert the Fifth

7     Amendment, they now have under oath sworn testimony that could

8     be used against them in the prosecution of those cases.

9          THE COURT:  If they're searched, yeah.

10          MR. RUSEK:  So it's very likely highly likely that we

11     would be asserting the Fifth Amendment to essentially every

12     question that could be asked.  And that was one of the first

13     factors in deciding whether or not to stay or postpone

14     depositions for the Fifth Amendment is how much do these cases

15     overlap.  And for these three defendants, there's not much

16     that can be asked that is not overlapping in both cases.

17          THE COURT:  Well, certainly they could be asked about

18     their job duties.  They could be asked about did you attend a

19     meeting, not what you said or what your recommendation was.

20     But I can see that there would be questions that could be

21     asked that would not implicate them criminally.

22          MR. RUSEK:  There could be, Your Honor.  But even if

23     there was a question of, "Did you attend this meeting?  Who

24     was there?"  That could be used against them to prove such as

25     a neglect of duties.  What are your duties?  Well, I believed

1   that I had to do XYZ and I didn't do XYZ.  That could be a

2   neglect of duty charge potentially.  I'm opening up liability.

3              So I think any question that really relates to their

4   role with the city has the potential to be the basis for a

5   charge or lead to more evidence that could support additional

6   charges or be used in the prosecution of these gentlemen.

7              THE COURT:  Okay.

8              MR. RUSEK:  And we also have the issues I believe it

9   was the Shane Group, Inc. case.

10             THE COURT:  Yeah.  But Shane is so very different.

11  So very different.

12             MR. RUSEK:  I agree.

13             THE COURT:  Yeah.  Because Shane was after a case was

14  finally resolved, a class action was finally resolved against

15  Blue Cross Blue Shield that had millions supposedly.  Well --

16             MR. RUSEK:  That's correct, Your Honor.  Some of the

17  class members objected to the settlement.  And then the basis

18  for that decision was essentially they didn't know what the

19  evidence was so how could they consent to a class settlement.

20             THE COURT:  And we don't have that here.  We're in

21  discovery.  I think everyone in this room should be hopeful

22  that this case resolves prior to a trial by every -- all the

23  plaintiffs.  But so we don't know if that's going to happen.

24  And if we get there and these depositions are sealed.  And

25  well there wouldn't be any material in the depositions anyway

 1   from what you're saying.

 2           MR. RUSEK:  That's correct, Your Honor.

 3           THE COURT:  So it's not like the public would be

 4   precluded from knowing anything at all.

 5           MR. RUSEK:  My takeaway from the Shane case is that

 6   we have the discovery phase and then the adjudication case.

 7           THE COURT:  Right.

 8           MR. RUSEK:  So the sealed transcripts, they're

 9   admissions.  They would become public at some point.  So we

10   know that.  They can't just be kept confidential in

11   perpetuity.  And that's our concern.

12           THE COURT:  Not in perpetuity.  But May 2020 is not

13   perpetuity.  It's like six and a half or seven months from.

14           MR. RUSEK:  It seems far away at this point.

15           THE COURT:  It seems close to me.

16           MR. RUSEK:  I'm trying to put off winter.

17           THE COURT:  Yeah.  But see we'll be on the other side

18   of winter.

19           MR. RUSEK:  The big problem with unsealing is we

20   don't know if charges -- so if depositions occurred tomorrow,

21   these gentlemen don't assert the Fifth.  They can be charged

22   on Friday.  And then in May, their cases won't be adjudicated

23   by then in the criminal system.  I can pretty much assert the

24   Court of that even if they started on Friday.  Then their

25   testimony becomes public and can be used against them.

1          So at this point, until we're in May and we know that

2   statute of limitations has run, the specter of the dangers of

3   providing testimony is very real.  And it's at the forefront

4   of these gentlemen's minds.  And I can't blame them.

5          I can speak for Mr. Croft is that he's endured years

6   of being under indictment with truly no movement of the cases.

7   And many reasons for that I won't share with the Court.

8          THE COURT:  Right.

9          MR. RUSEK:  But it's certainly a real concern.  And

10  some of the case law I cite is even if you're an innocent

11  person, the Fifth Amendment still protects you.

12         THE COURT:  Oh, absolutely.

13         MR. RUSEK:  And that's for these gentlemen is really

14  their concerns is how they've been treated in the past in

15  these prosecutions from their point of view of course.  And

16  anything that they say, even if they tell the truth and they

17  don't believe they've committed a crime, that could be used

18  against them to pursue charges against them in the future.

19         And I don't think it's fantastical or out there

20  because they've lived this for years.  And they've been under

21  those indictments for years until June of this year.

22         We also have a lot of discovery.  And I'm not sure

23  how much was shared with the Court as far as the scheduling of

24  depositions.  By my count, we have approximately 50

25  depositions scheduled, 100 days of depositions scheduled.  And

1    that is through April 16th of next year.

2            So everyone's going to be very busy.  And asking to

3    postpone their depositions until May of next year fits right

4    in that timeline of where we're already at.

5            THE COURT:  Okay.  Well, let me hear -- VNA and LAN

6    filed responses and --

7            MR. ERICKSON:  Your Honor, Philip Erickson on behalf

8    of the LAN defendants.  We -- the motion was filed in response

9    to our notice of depositions.

10           THE COURT:  Right.

11           MR. ERICKSON:  So I'll go first.  First thing I

12   wanted to mention is respond to the Court's question.  The

13   question was have any of these gentlemen already testified?

14   And the answer to that I believe is yes.  I believe that both

15   Mr. Ambrose and Mr. Earley have testified at length before

16   Congress regarding matters at issue.

17           I have read the transcript of Mr. Earley.  I'm not

18   sure I read the transcript of Mr. Ambrose, but it is my belief

19   that he has also testified.  And as for Mr. Earley, I know

20   that he testified at length without taking the Fifth.  And

21   those transcripts I think are available through a Google

22   search.

23           THE COURT:  When was that testimony?

24           MR. RUSEK:  It was part of the congressional

25   investigation.  I believe that the testimony would have

1    occurred sometime in early 2018 is a good ballpark.

2              THE COURT:  Okay.  Have the original criminal charges

3    been lodged by that time?

4              MR. ERICKSON:  I don't know.  We could check.

5    They're attached to --

6              THE COURT:  Mr. Rusek is going to tell us.

7              MR. RUSEK:  Alexander Rusek on behalf of Mr. Croft,

8    Your Honor.  I believe that that testimony came prior to

9    December of 2016 when the criminal charges were issued.  Not

10   after the criminal charges were issued.

11             THE COURT:  Okay.

12             MR. ERICKSON:  Turning to our --

13             THE COURT:  Mr. Erickson, what benefit will you or

14   your client have if the depositions are sealed -- take place,

15   sealed or unsealed, and they take the Fifth?

16             MR. ERICKSON:  So these witnesses are central to the

17   litigation.  Mr. Earley and Mr. Ambrose were emergency

18   managers, key decisionmakers at the time that the decision was

19   made.  They were -- Mr. Ambrose and Mr. Croft were key

20   decisionmakers at the time the decision was made to join KWA.

21   Mr. Earley was the emergency manager at the time of the

22   changeover to the new water source in April of 2014.

23             And these people are so central to the litigation

24   that all the parties other than these individuals would be

25   harmed by not getting information that they have to place

1    other events into context as discovery proceeds.

2          THE COURT:  But it's sounding like you're not going

3    to get that information.

4          MR. ERICKSON:  Well, what we have proposed --

5          THE COURT:  You proposed the sealing, which I think

6    is very -- sealing, S-E-A-L-I-N-G -- which is a very

7    thoughtful proposal, very appealing to me.  But we're also

8    learning that these witnesses may perceive risk and plead the

9    Fifth and not testify, not answer your questions.

10         MR. ERICKSON:  I will get to your direct question.

11         THE COURT:  Okay.

12         MR. ERICKSON:  But let me back up a step and set it

13   up if I might.

14         So the witnesses Ambrose, Earley, and Croft, have

15   asserted that they shouldn't have to testify at all until

16   April of next year.  Excuse me, May of next year.  And the

17   Veolia defendants have said that they shouldn't have any

18   relief and they should be forced to testify now and they

19   should have to make decisions now about whether they want to

20   take the Fifth or not.

21         And our only tweak from the Veolia position is that

22   the transcripts would be sealed between now and May 1st.  So

23   that would give them some relief.  But they still would have

24   to make decisions now about whether to take the Fifth or not.

25   And as --

1          THE COURT:  But Mr. Rusek says if you take his

2    client's deposition in February and he's charged in March and

3    it's unsealed in May and he -- his client answers the

4    questions, that will be evidence that could be used against

5    him in the March prosecution.

6          MR. ERICKSON:  And that is true.  And that is why

7    they have to make a determination now as to whether to take

8    the Fifth or not question by question.

9          I would note that most of the lawyers -- the lawyers

10   pretty much agree on all of the law here.  We agree that they

11   have to make that -- we agree that if they make that

12   determination and they take the Fifth, that there can be a

13   negative inference that the Court or the jury could take with

14   regard to that testimony.

15         So I don't believe that these people are going to be

16   as cavalier as was suggested in taking the Fifth.

17         THE COURT:  I see.

18         MR. ERICKSON:  Because you know, are they really

19   going to say we don't want to tell you what meetings we

20   attended?  I mean, I don't think they would.  I think that

21   would be not a good strategy on their part.

22         So you know they're the ones who suggested the end

23   date.  They suggested the end of April as the end date that

24   they needed some relief for.  And so we proposed what we

25   proposed as a compromise.  And I think it's maybe the most

1    workable approach.

2              THE COURT:  Okay.

3              MR. ERICKSON:  Veolia raised an argument that we

4    didn't raise in our brief that I think is important here.  I

5    mean, they lay out that there's due process considerations for

6    the Court and for the plaintiffs and for all the other

7    defendants.  And you know these witnesses are essential to the

8    litigation.

9              THE COURT:  Okay.

10             MR. ERICKSON:  The final thing that I want to say, I

11   just want to emphasize the case that we cited on page 2 of our

12   brief, FTC v E.M.A. Nationwide.

13             THE COURT:  Right.

14             MR. ERICKSON:  Stands for the proposition that this

15   is extraordinary relief that the witnesses are requesting and

16   the Court is not at all required to do this what they offer.

17             And then finally, they had suggested in their papers

18   that as an alternative form of relief the Court should limit

19   the areas of inquiry.  And there's never really been any

20   fleshing out of what that means.  And our position is that

21   it's unduly vague and just unworkable.

22             THE COURT:  Right.  I agree with that.

23             MR. ERICKSON:  And that's all I have.  Thank you.

24             THE COURT:  Mr. Campbell.

25             MR. CAMPBELL:  Good afternoon again, Your Honor.

1    James Campbell.  I represent the VNA defendants.

2            THE COURT:  And just say anything that Mr. Erickson

3    didn't say you can add in.

4            MR. CAMPBELL:  I was going to actually start with

5    that.

6            THE COURT:  Oh, good.

7            MR. CAMPBELL:  The only thing I want to add to what

8    Mr. Erickson said was to perhaps emphasize the point that in

9    our view, Your Honor, this is not going to be the last time

10   that we hear about this.  I don't think that the exposure that

11   these three gentlemen have to the criminal process ends next

12   year.

13           I think that there's -- you know, the Flint issues

14   extended into 2015.  I have to confess I haven't studied the

15   criminal complaints or issues.  Mr. Rusek, I defer to him.

16           But there are issues that happened in 2015 that may

17   or may not cause them to come to the Court when this if you

18   were to agree to this stay or hold until May of next year.

19   And the argument is going to be we need more time.  We can't

20   do it because we're still at risk.  Not only because of the

21   manslaughter issue but because of the conduct I think goes

22   into 2015.

23           We have our schedule.  Your Honor, I think as Mr.

24   Erickson said, we understand what the rules are.  And a

25   blanket assertion of the privilege is really what we're doing

1    here.  We should go question by question.

2              THE COURT:  Oh, certainly.

3              MR. CAMPBELL:  Thank you.

4              THE COURT:  Thank you.  Now Mr. Leopold, did you file

5    a brief in this?

6              MR. LEOPOLD:  We did not file -- Ted Leopold on

7    behalf of the putative class plaintiffs.  We did not file a

8    brief on it, Your Honor.  But if the Court is allowing us to

9    speak, I can address a specific question I think the Court

10   inquired about because it affects us as well in terms of

11   asking questions during the scope of depositions.

12             THE COURT:  Okay.  Well, I would just ask you to

13   limit your remarks to about two minutes.

14             MR. LEOPOLD:  I can do it in probably less than that,

15   Your Honor.

16             THE COURT:  Okay.

17             MR. LEOPOLD:  Clearly the issue before the Court is a

18   sensitive issue and I think we all understand that.  Right now

19   there is not a criminal proceeding going on.  But there

20   possibly or potentially could be in the long run.

21             What I would tell the Court is for purposes of

22   discovery even if they take the Fifth, there's a lot of

23   information that can be garnered during the course of these

24   depositions.  And I think that's the key that transpires these

25   types of litigations with these types of issues having

 1    experiencing something in a high profile case like this where

 2    I dealt exactly with this issue.

 3            For example, if there are e-mails with these

 4    gentlemen's name on it, either they wrote them or they

 5    received them or in a meeting, documents don't speak.

 6    Witnesses have to speak.

 7            And if we try to get those documents into evidence, I

 8    can assure you these defendants would object to all of that

 9    evidence without laying the preparatory foundation for each

10    one of those documents.

11            And by putting these documents in front of these

12    individuals going through just is this a document, is this a

13    e-mail, does it have your name, what's the date, who was in

14    attendance, and having go through that document without any

15    admissions on their part lays a tremendous foundation for

16    getting those documents into evidence.

17            And I think that's what really what we are looking to

18    do.  I don't think any of us are intending to put any

19    additional burden on those individuals by breaching their

20    Fifth Amendment.

21            THE COURT:  Okay.  Thank you.  Well, what I have done

22    is started working on an opinion and order on this particular

23    question.  I think it's worth setting forth in writing and not

24    simply on the record.  Because it is an important and

25    compelling issue.

1          I am required to look at six different factors when

2    deciding whether a stay is appropriate where a defendant has

3    raised Fifth Amendment concerns.  The first is the extent to

4    which the issues in the criminal case overlap with those in a

5    civil.  And in this instance that's neutral in the sense that

6    there is no current criminal case.

7          The cases that discuss factor one as being

8    dispositive, there are pending criminal charges in those

9    cases.  And in this instance we have the prosecutor

10   withdrawing the charges entirely.  Admittedly without

11   prejudice to bringing them again.

12         But at least at the present time when the testimony

13   would be sought, there are no pending criminal cases.  And I

14   have -- there are many cases that stand for this which is that

15   courts generally do not stay proceedings in the absence of an

16   indictment.  And the stay of a civil proceeding due to a

17   pending criminal investigation is an extraordinary remedy.

18   And that's from the E.M.A. Nationwide case.

19         So the second factor is the status of the case

20   including whether defendants have been indicted.  And again at

21   this time they have not.  The third is the private interests

22   of the plaintiffs in proceeding expeditiously weighed against

23   the prejudice to plaintiffs caused by the delay.

24         And that factor weighs against the relief being

25   sought by the individual city defendants in that these cases

1     have now been pending for many years.  And it would from my

2     perspective potentially injure all parties, plaintiffs and

3     defendants, to have any further delays in the discovery.

4            The private interest of and burden on the defendants.

5     And here I'm looking at the word defendants writ large in

6     terms of co-defendants as well as these individual defendants

7     or that factor of the other defendants could easily be placed

8     with the public's interest.  Because certainly the other

9     co-defendants are members of the public.

10           So this factor of the private interests of and burden

11    on these named individual city defendants certainly weighs in

12    their favor.  But that's essentially the six factors, one that

13    weighs in their favor.  But at this point without an

14    indictment or a criminal charges, the burden is at least

15    lessened.

16           The interests of the Court and in here I can tell you

17    without any doubt my interests as the spokesperson for this

18    Court is to see these cases make progress.  We've set forth in

19    a case management order a timeline that will ultimately

20    resolve these cases, which will be to the benefit of everyone

21    involved.  And beyond just the named plaintiffs or putative

22    class members.  But to a much larger sort of public interest

23    in seeing a resolution of these cases.

24           So I can tell you that's the direction I'm headed in.

25    I am sensitive to the burden that these individual defendants

1    have been facing with criminal charges and civil litigation

2    pending at the same time.  But having balanced that, I think

3    the proposal that -- LAN's proposal I guess it is, of setting

4    forth a protective order is one that will assist in balancing

5    that fourth factor in protecting the defendants as much as

6    possible.  Which would be to during the course of discovery at

7    least until May of 2020 to seal both the responses to requests

8    to admit.

9         Are there -- there are outstanding requests for

10   documents, Mr. Rusek?

11        MR. RUSEK:  There been requests for production of

12   documents.  Excuse me.  Alexander Rusek.  To all three of the

13   individual city defendants.  I believe all those have been

14   complied for.

15        THE COURT:  Okay.

16        MR. RUSEK:  I can say on Mr. Croft we've produced

17   documents that we have as has Mr. Ambrose.  And I believe Mr.

18   Earley has as well.

19        THE COURT:  Okay.  Well, then the real issue is the

20   request to admit and depositions.  But you could certainly

21   seek relief beyond that.  But I would order that those be

22   sealed and that those present at the deposition hearings be

23   limited to counsel for parties in the case to further protect

24   their rights.

25        So I'll sort out how exactly to fashion that order.

1    I'll continue to think about it.  But that's certainly the

2    direction I'm headed in.  And I think everyone here -- no one

3    has suggested otherwise -- that a party cannot have a blanket

4    Fifth Amendment objection.

5         So your clients would need to attend the deposition,

6    answer every question they possibly can and then certainly

7    raise their Fifth Amendment rights upon advice of counsel

8    question by question.

9         MR. RUSEK:  Alexander Rusek.  May I address one point

10   that was brought up by Mr. Erickson?

11        THE COURT:  Sure.

12        MR. RUSEK:  And keeping in mind the position that the

13   Court just laid out.  The case that was cited by LAN in their

14   response, that was the State Farm Mutual case.  In there a

15   co-defendant wanted to take the deposition of another

16   co-defendant who also had the possibility of criminal charges

17   hanging over him.  It was an Eastern District case.

18        THE COURT:  Right.  Exactly.

19        MR. RUSEK:  And the case really discusses meaningful

20   discovery.  What can we get here that's going to be

21   meaningful.  And for me, after April 25, 2020, I believe that

22   there probably will be much more meaningful discovery

23   available through depositions and admissions than there is

24   now.  Because I can say it's very highly likely there's not

25   going to be much meaningful discovery taken at this point

1    until that statute of limitations runs.

2         THE COURT:  I'm glad you took the opportunity to say

3    that because you're now sending a message to those who would

4    take your client's deposition before then.  It sure seems

5    valuable that if you've got how many depositions in the next

6    100 days?

7         MR. RUSEK:  Approximately 50, Your Honor.

8         THE COURT:  Fifty depositions.  That these three

9    could be at the very end of that after April 25th of 2020.

10        MR. RUSEK:  And --

11        THE COURT:  That sure seems like a favorable way to

12   go.

13        MR. RUSEK:  I would agree with you.  There's also

14   some case law in the Sixth Circuit that there can be a blanket

15   assertion of Fifth Amendment when the case is overlap so much.

16   I have a case, United States v Medina, 992 F.2d.

17        THE COURT:  I looked at that.

18        MR. RUSEK:  So that's out there.  And that was cited

19   more recently by case Nunn v Michigan Department of

20   Corrections that when the cases overlap, there can be a

21   blanket assertion or a blanket assertion to specific areas of

22   questioning.

23        THE COURT:  Okay.

24        MR. RUSEK:  That was the Nunn case and that was a

25   sexual assault that occurred in a prison I believe where no

1    questions were allowed about the actual sexual assault.  But

2    the corrections officer was able to be questioned about his

3    training and things like that, if I can remember correctly.

4            THE COURT:  Okay.  Well, thank you.

5            MR. RUSEK:  Thank you, Judge.

6            THE COURT:  Okay.  So I'll work on a written opinion

7    and order on this issue.  Okay.

8            Now we're up to my least favorite subject matter

9    which is Ms. Shekter Smith.  And I only say that -- I mean,

10   I've never met her.  I hope I have that opportunity at some

11   time.  But it's just a procedural quagmire that doesn't have

12   an easy answer.

13           But here's what I think is -- Mr. Morgan submitted a

14   brief on behalf of your client.  And I have read it a couple

15   of times.  And thank you for the brief.  But it sadly wasn't

16   able to help me because I think it's just very procedurally

17   unusual what has happened here.

18           But the way I'm seeing this -- and I see Mr. Goodman

19   over there getting ready to stand up.  But I'm not sure it's

20   necessary.  Because if I understand what happened, in the

21   Walters and Sirls case, Ms. Shekter Smith was not originally

22   listed as a defendant.  But in the motion to amend she was

23   listed as a defendant with allegations against her but they

24   were after the statute of limitations had run.  So I granted

25   her motion to dismiss on the basis of statute of limitations.

1        I'm not even sure it was raised by her.  But I have a

2   duty to make sure I have jurisdiction over everybody in a

3   case.

4        In the meantime, in the Marble and Brown cases, the

5   motions -- your amended complaints were filed before the

6   statute ran.  The statute ran on October 19th of 2018 for

7   Shekter Smith and both Marble and Brown were filed before then

8   by checking the box on the short form for Shekter Smith.

9        However, that related back to originally back to the

10  master form complaint that didn't have allegations against

11  her.  But now you do have allegations against her, if I

12  understand this properly, that were filed before the -- I

13  believe before the statute ran.  Which would mean that she

14  simply is in the Marble and Brown litigation.

15       And Mr. Thaddeus Morgan on her behalf can file or can

16  even amend your motion to dismiss because perhaps you thought

17  that she wasn't going to be in those cases.  But there simply

18  are not easy or good answers for the procedural complexity

19  we're facing here.

20       And so she is in the Guertin case.  We know that.

21  She survived my consideration of the motion to dismiss and the

22  Sixth Circuit's consideration of it.  She's also in the

23  Carthan case.

24       So we know that she is in this litigation as a

25  defendant.  And certainly every case, every case matters

 1    separately.  And so at this point I think I have no choice but

 2    to keep her in the Marble -- and I think Mr. Weglarz is there

 3    -- Brown litigation.  And see how she fairs in response to the

 4    currently existing motion to dismiss.

 5            And Mr. Morgan, if based on what you've heard now you

 6    want to amend your motion to dismiss, we can discuss that.

 7    But I would leave that to you.  You've already filed it and

 8    had all of the arguments available to you at that time.

 9            MR. MORGAN:  Your Honor, Thad Morgan on behalf of

10    Liane Shekter Smith.  What timeframe would the Court give me

11    to amend that motion?

12            THE COURT:  Hold on.  I've just been informed by my

13    law clerk that I think plaintiffs' reply brief -- no.  It

14    would be response brief is due Friday.  Mr. Goodman on behalf

15    of the Marble -- you can stay there.  But just speak loudly.

16            MR. GOODMAN:  Thank you, Your Honor.  That's correct.

17    And that was pursuant to a stipulation of all counsel and an

18    order from the Court.

19            THE COURT:  Right.

20            MR. GOODMAN:  However and I would like to make clear

21    that I'm acting only as local counsel in this matter, that the

22    lead counsel is the law firm of Loevy and Loevy from Chicago.

23    And the attorney is Ms. Cindy Tsai, who is unfortunately is in

24    trial and could not be here today.  So I'm speaking on her

25    behalf.

1               THE COURT:  Okay.  Thank you.

2               MR. GOODMAN:  Ms. Tsai -- just one other thing

3      though.  She has asked for a second extension to file a

4      response to these motions to I believe either the 27th or the

5      28th of this month and has received agreement from a number of

6      defendants.  But there are some who have not yet acknowledged

7      her or responded to that.

8               THE COURT:  Okay.  Well, why don't we cut that

9      process short.

10              Mr. Morgan, how much more time do you need?

11              MR. MORGAN:  Ten days.

12              THE COURT:  Let me look at the calendar.  How about

13     we have you file it by the 15th, which is a week and a half.

14     It's one day short of ten days.

15              MR. MORGAN:  Fine.

16              THE COURT:  Okay.  And then the response can still be

17     due the same time Mr. Goodman is saying.  Isn't the 28th

18     Thanksgiving?

19              MR. WASHINGTON:  Yes.

20              MR. ERICKSON:  Your Honor, it was the Wednesday

21     before Thanksgiving that Ms. Tsai had requested.

22              THE COURT:  That's what we'll do.  We'll still have

23     it on the 27th.  It's going to be a small tweak to Mr.

24     Morgan's brief.  So that's granted.  We'll include it in our

25     order following this hearing.  So no further concurrence is

 1    needed.  Okay.

 2            MR. MORGAN:  And Your Honor, Thad Morgan on behalf of

 3    Ms. Smith.  One other question.  Can I file what I'll

 4    determine addendum?

 5            THE COURT:  Sure.  That'd be much easier.

 6            MR. MORGAN:  Rather that have to recite facts.

 7            THE COURT:  Thank you.  No.  Just an addendum.

 8    Because then we -- yeah.

 9            MR. MORGAN:  And then I have one other issue for the

10    Court.  It's going to further --

11            MADAM COURT REPORTER:  Counsel, can you come to the

12    podium?

13            THE COURT:  Can you come to the lectern?

14            MR. MORGAN:  Thad Morgan on behalf of Liane Shekter

15    Smith.  A concern popped in my head that may make the

16    procedural quagmire worse.  That being that, for example, if a

17    bellwether individual case goes to conclusion which my client

18    is not a defendant but findings are made against her for

19    example as a nonparty at fault, I think that's something we're

20    going to have to deal with down the road because I'm not going

21    to be able to stand up and argue against that because my

22    client's not a party.

23            THE COURT:  But that's just life.  That's the way the

24    rules work.  Isn't it?  I mean, am I missing --

25            MR. MORGAN:  How would that affect the cases in which

1    my client is a defendant?

2            THE COURT:  So if there's like ten bellwether

3    plaintiffs and your client is in some of them and not others

4    -- is that what you're saying?

5            MR. MORGAN:  No.  I'm saying what if a bellwether

6    case goes to conclusion in which findings are made and my

7    client is not a party to that case but findings are made as a

8    nonparty at fault against her, how does that affect my ability

9    --

10           THE COURT:  I think -- your ability to do what?

11           MR. MORGAN:  Argue against whatever findings are in a

12   case in which she is a named defendant?

13           THE COURT:  I think it would just happen as if she

14   was out of everything and she's a nonparty at fault.  So I

15   think it would just follow the rules.

16           MR. MORGAN:  Okay.

17           THE COURT:  For nonparty at fault.  And I don't know

18   enough about it yet.

19           MR. MORGAN:  Okay.  Very good.  Thank you.

20           THE COURT:  To answer any further than that.  Okay.

21   We're going to speed this up now.

22           The bellwether selection process, we discussed

23   briefly in chambers that they're the group that initially

24   proposed the case management order will come up with a new

25   proposal for the second round of bellwether cases to be

1    selected.  And very likely it will conform to a similar

2    process that we have for the first pool.  But if there have

3    been issues they can be resolved the second time around.

4            And Mr. Stern is taking responsibility for making

5    sure that gets to me before the December 10th status

6    conference.

7            So now we're up to the report from the special

8    master.

9            MS. GREENSPAN:  Good afternoon, Your Honor.  Thank

10   you.  I'll be very brief.  I have a short report today.

11           The last time I was here I walked through a

12   substantial amount of material about where the process had

13   gone with respect to collecting data about the cases and the

14   claims that have been identified that have either been filed

15   or where people have retained or contacted lawyers.  And so we

16   now have information about a substantial number of people.

17           Since the time I was last here, we have received

18   further updated information from 12 law firms.  And I now -- I

19   will give you just a few brief numbers for everybody's

20   benefit.

21           The number of what we've called injured party

22   records, these are individuals or entities that have been

23   identified by counsel as having either retained a law firm or

24   contacted a law firm and been in contact with a law firm is

25   now up to 32,301.  That's an increase of slightly over 1,300

1     from the last report that I gave.

2            The total number of retained individuals without

3     trying to address the duplicate issue that we've previously

4     identified is up to 20,788.

5            THE COURT:  Did you say 28 --

6            MS. GREENSPAN:  20,788.  So the numbers are moving

7     up.  They're not -- you know there's not a huge spike each

8     month, but we are getting additional claims in the door.

9            I wanted to just point out a couple of other pieces

10    of information.  As we've been collecting claim data, we've

11    been collecting information about injuries alleged and the

12    types of injuries.

13           And at this point I'm not prepared to go through the

14    newest compilation of all of these separate injuries.  But I

15    can tell you that counsel have provided information about

16    injuries related to lead and injuries related to other

17    contaminants.

18           And I have based on those submissions 88 percent of

19    claimants -- and I'm excluding property damage.  These are

20    individual claims -- allege at least one injury that they say

21    results from lead exposure.  And 73 percent of claimants,

22    again excluding property damage claims, allege a at least one

23    injury related to non lead contaminant exposure.

24           I have excluded from this information these numbers

25    the psychological injuries.  I'm not sure people can relate

1    them to one exposure or another.  But at any rate, these are

2    physical injuries.

3              THE COURT:  Okay.

4              MS. GREENSPAN:  And then finally I just want to

5    report on the duplicate issue.  We have as previously reported

6    identified a number of duplicate claims, meaning a law firm --

7    more than one law firm has listed the same individual or

8    entity.  It's not an overwhelming number, but there are

9    significant number of duplicates.

10             I sent notices out to law firms.  And currently we

11   have resolved 27 percent of the duplicates.  So there's a

12   number -- there's a number of disputed issues.  And we're

13   about to move into that phase to try to see if we can figure

14   out and resolve who actually represents some of these

15   individuals.

16             I guess one other point.  We have also identified

17   some additional firms that had not previously submitted

18   records in this process.  I have received a submission from

19   one of those firms.  Another is in the process of providing

20   it.  One says that they're not -- they don't believe that

21   they're subject to the order.  They're not a reporting

22   counsel.  So I'm following up on that.  But I still have a

23   couple of others to hear from.

24             So we have identified some firms that have not

25   previously been involved and are pursuing getting the

1    information from them as appropriate.  Thank you.

2          THE COURT:  Okay.  Thank you, very much.  And I just

3    want to thank Ms. Greenspan for all the work that she does to

4    assist with these cases.  Okay.

5          There was one other issue that was brought to my

6    attention in the in chambers discussion which was who may

7    attend deposition -- the fact depositions in this case.  And I

8    was provided some feedback about the difficulty in scheduling

9    a location and so on that I will take into consideration.

10         But the big picture that was discussed is that if a

11   member of the public is interested in knowing what goes on in

12   a deposition, that's a legitimate interest and they can order

13   a transcript from the court reporter service.  Or if it's a

14   video deposition, a copy of footage of the deposition in order

15   to have access to it.

16         So I'll sort out exactly how best to amend the case

17   management order.  Because that way a room of a definite size

18   can be reserved.  And the right number of chairs can be

19   provided.  And enough desk space for people to put their

20   materials down on.

21         So that -- the purpose of making sure the public can

22   get access to transcripts is to have transparency throughout

23   the process.  Anyone who wants to know what's going on in this

24   litigation can find out.  And transcripts are probably the

25   best way for that to happen because they're verbatim

```
 1    recordings of what was said in a deposition instead of getting

 2    someone's summary that they might put out in some way.

 3               So if there's nothing else, next status conference

 4    will be on Tuesday, December 10th at 2:00 PM.  Everybody got

 5    that.  Tuesday, December 10th at 2:00 PM.  And the proposed

 6    agenda items would need to be filed by November 26, 2019.  All

 7    right.  So I think that will sum it up.  Thank you everybody.

 8                        (Proceedings Concluded)

 9               -            -            -

10

11              CERTIFICATE OF OFFICIAL COURT REPORTER

12          I, Jeseca C. Eddington, Federal Official Court

13    Reporter, do hereby certify the foregoing 63 pages are a true

14    and correct transcript of the above entitled proceedings.

15    /s/ JESECA C. EDDINGTON____               11/27/2019
      Jeseca C. Eddington, RDR, RMR, CRR, FCRR      Date
16

17

18

19

20

21

22

23

24

25
```