## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.                    Hon. Judith E. Levy

_____/          No. 5:16-cv-10444-JEL-MKM

This Filing Relates to:

ALL CASES

_____/

## THE VNA DEFENDANTS'
## RESPONSE TO THE COURT'S APRIL 2, 2020 ORDER

By order dated April 2, 2020, the Court required the VNA
Defendants to respond to Plaintiffs' allegations regarding certain
subpoenas for home inspections.  Specifically, the Court asked the VNA
Defendants to explain why the issuance of the subpoenas without notice
to other parties and to some individuals who are represented by counsel
was not an abuse of the judicial process.  *See* ECF No. 1096.

Counsel for the VNA Defendants made a mistake when they failed
to notify other parties before issuing the subpoenas and failed to discern
that some of the subpoena recipients were represented by counsel.  But
it was just that—a mistake—not any intentional conduct designed to

1

flout the Court's rules.  The VNA Defendants gained no strategic benefit as a result of counsel's mistakes, and Plaintiffs suffered no prejudice. Moreover, counsel for the VNA Defendants have taken steps to ensure that no similar mistakes will occur in the future.

The VNA Defendants acknowledge that their counsel erred in issuing the subpoenas described in the Court's order without first providing notice to all other counsel.  As explained below, counsel for the VNA Defendants did not notify counsel for the other parties because counsel for the VNA Defendants had a misunderstanding among themselves about who was to provide that notice.  Counsel regret this mistake.  Counsel for the VNA Defendants also mistakenly believed that none of the individuals upon whom they caused the subpoenas to be served were plaintiffs who are represented by counsel in the litigation. Again, the mistake was an honest one.  Counsel for the VNA Defendants apologize to everyone—Plaintiffs' counsel, individual plaintiffs, and this Court—for not providing appropriate notice and for serving represented parties.

Finally, at the time the subpoenas were served, the seriousness of the COVID-19 situation was not yet clear.  Michigan was not operating

under stay-at-home restrictions, and courts were open as normal. Counsel for the VNA Defendants were trying to meet scheduling-order deadlines and to comply with applicable rules requiring personal service. They did not intend for anyone to be made to feel unsafe, and both they and their clients sincerely apologize to subpoena recipients who may have felt fear or concern because of the manner in which the subpoenas were served.

Counsel for the VNA Defendants have tried to fix their errors. They alerted Plaintiffs' counsel within hours of realizing that notice had not been given and that represented persons had been served. Counsel for the VNA Defendants also issued written apologies to the relevant Plaintiffs' counsel and withdrew the subpoenas. They then issued notices by overnight express to all subpoena recipients, informing them that the subpoenas had been withdrawn and apologizing for issuing them. No inspections took place. The VNA Defendants have since worked with the other parties to memorialize a process for issuing subpoenas for home inspections in the case-management order and have submitted it to the Court.

The home-inspection process should have been handled differently. Counsel for the VNA Defendants (much less the VNA Defendants themselves) did not, however, act in bad faith or with any ill intent, and Plaintiffs were not prejudiced as a result of counsel's mistakes.

## BACKGROUND

### A.   The Home-Inspection Subpoena Process[1]

In mid-February 2020, the VNA Defendants began a process of identifying owners of homes previously occupied by bellwether plaintiffs in this litigation, in order to contact the current owners about home inspections.[2]  After finding the current owners in public databases, the VNA Defendants prepared Rule 45 subpoenas.  Counsel for the VNA Defendants believed that each of the homeowners identified by this search was a non-party who was not represented by counsel.  Each subpoena was to be accompanied by the inspection protocol and a letter

---

[1]    The facts set forth in this section are supported by the declarations of David M. Rogers and Michael R. Williams, which are attached as Exhibits A and B, respectively.

[2]    This process was an extension of efforts that began in November 2019 to inspect bellwether plaintiffs' homes.  After Rule 34 notices for inspection were sent to bellwether plaintiffs in November, counsel for the VNA Defendants and Plaintiffs' counsel finalized a house-inspection protocol on January 31.

asking the recipient to contact counsel for the VNA Defendants to schedule the inspection at an agreeable time. Counsel for the VNA Defendants understood, based on authority from the Eastern District, that the subpoenas needed to be personally served.

Counsel for the VNA Defendants sent the subpoenas and accompanying materials to a process server for service. Most were provided to the process server on the afternoon of March 10. According to the proofs of service returned by the process server, all but two of the subpoenas was served on March 11. A subpoena was served on Lateela Bonner on March 14. The final subpoena was served on Apricott Teed on March 16.

Counsel for the VNA Defendants first realized that there were problems with the subpoenas on March 17. Ms. Teed had contacted one of the attorneys for the VNA Defendants, David Rogers, on the evening of March 16 and left a voicemail. Mr. Rogers listened to that voicemail on the morning of March 17 and recognized that "Teed" was the name of a plaintiff. Mr. Rogers set about trying to confirm whether other subpoena recipients were represented parties—and located at least one other recipient who was a plaintiff. (Two other represented parties were

later identified.)   While investigating the represented-party issue, counsel for the VNA Defendants discovered a second issue:   the subpoenas had not been properly provided to other parties before service. Mr. Rogers believed that local counsel was to provide (and had provided) that notice, while local counsel believed that Mr. Rogers was to provide (and had provided) it.   With each lawyer assuming that the other was handling this task, neither did.

Counsel for the VNA Defendants tried to fix these problems.   Mr. Rogers notified counsel for the two known represented parties about the issue on the afternoon of March 17.   The VNA Defendants' counsel also sent notice to *all* counsel that the subpoenas had been issued.   The parties held a meet-and-confer call the next day to discuss the situation.   After that call, counsel for the VNA Defendants informed everyone that they would send a notice withdrawing the subpoenas via Federal Express and would work with counsel for all parties to develop a suitable process to schedule inspections.

Following a telephonic conference with the Court, the VNA Defendants agreed to send letters of apology to counsel for any represented parties.   The VNA Defendants' counsel sent those letters on

March 20 (and revised them to include a formal withdrawal of the subpoenas on March 23).  Notices withdrawing the subpoenas were sent by overnight mail to remaining subpoena recipients on March 24, after a period for review and comment by all counsel had passed.[3]  No home inspections occurred.  All counsel also agreed to amend the case-management order to address the process for these inspections; that amendment was submitted to the Court on March 26.

## B.    COVID-19 in Michigan

Late on March 10 (the same day on which counsel for the VNA Defendants had provided most of the subpoenas to the process server), Governor Gretchen Whitmer announced Michigan's first cases of COVID-19 in Oakland and Wayne Counties and declared a state of emergency.[4] *See Read Gov. Whitmer's State of Emergency Declaration Amid First*

---

[3]    During this review period, attorney Val Washington informed Mr. Rogers that Mr. Washington represented Leon El-Alamin.  No letter was therefore sent to Mr. El-Alamin, but Mr. Rogers confirmed that no inspection would take place.

[4]    Unfortunately, states of emergency are not unusual in Michigan. For instance, Governor Whitmer's first executive order was a declaration of a statewide state of emergency because of extremely cold weather conditions.  *See* Executive Order 2019-01 (Jan. 28, 2019).  Such orders do not ordinarily result in suspension of litigation rules, such as the requirement that subpoenas be personally served.

*Coronavirus Cases*, WXYZ (Mar. 11, 2020), *available at* https://bit.ly/2Jw3R5d. At that time, despite the announcement, communities continued to function largely as normal. Courts and schools remained open, businesses largely ran as usual, and even sports continued for some time.

Things changed quickly after that. Effective March 13 (after all but two of the subpoenas had already been served), Governor Whitmer banned gatherings of 250 or more. *See* Executive Order 2020-05 (Mar. 13, 2020). Starting on the afternoon of March 16 (the same day that the final subpoena was served), the Governor closed bars, restaurants, and other places of public accommodation. *See* Executive Order 2020-09 (Mar. 16, 2020), *rescinded and replaced by* Executive Order 2020-20 (Mar. 22, 2020). Schools closed the same day. *See* Executive Order 2020-11 (Mar. 16, 2020). And effective March 24, Governor Whitmer implemented a stay-at-home order that remains in effect today. *See* Executive Order 2020-21 (Mar. 23, 2020).

For a time, courts continued to function with some degree of normalcy. This district imposed limited courthouse visitor restrictions on March 11, and the district did not close any courthouse facilities until

8

March 25.  *See* News and Notices, *U.S. District Court for the Eastern District of Michigan* (Apr. 2, 2020), *available at* https://bit.ly/39Fzxzu. Emergency procedures were implemented in Michigan state courts on March 15.  *See* Administrative Order No. 2020-1 (Mich. Mar. 15, 2020). State-court operations in the county in which this Court sits were not broadly suspended until March 16.  *See* Washtenaw County Courts Response to COVID-19, *Washtenaw County, Michigan* (Mar. 16, 2020), *available at* https://bit.ly/348gVa9.

## DISCUSSION

The Court has asked whether the above events reflect an abuse of the judicial process.  The short answer is "no."

Abuse of process generally involves the use of process for improper purposes or in bad faith.  *See United States v. Powell*, 379 U.S. 48, 58 (1964) (explaining that a summons could be deemed an abuse of the judicial process if it had "been issued for an improper purpose, such as to harass the [recipient] or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation [that spurred the summons]"); *see also, e.g.*, *Sage Int'l, Ltd. v. Cadillac Gage Co.*, 556 F. Supp. 381, 389–90 (E.D. Mich.

1982) (explaining that, under state law, abuse of process is "focused on the impermissible pressures put on one's adversary").

***Service on Represented Parties.***   Counsel for the VNA Defendants mistakenly sent certain subpoenas, protocols, and cover letters to persons who were represented by counsel.[5]   As the attached declarations from counsel attest, this was indeed an honest mistake; there was no intent to serve subpoenas on represented parties. The VNA Defendants' counsel have, over the past four years, worked hard to follow the rules.  They take their ethical obligations seriously and would never intentionally initiate a communication with individuals whom they know or suspect are represented by counsel.   But as this Court well understands, this case is unusual in the number of individual plaintiffs involved.   As the Court's order itself notes, the consolidated cases

---

[5]   During the telephonic status conference on this matter, a suggestion was raised that *any* contact with a Flint resident—whether or not he or she had retained a lawyer—would be improper because that person would be a member of the putative class.  That contention is mistaken.  In Michigan, "a putative member of a certified class who has not yet exercised an option to opt out of the class action, and has not specifically sought representation by the class representative's lawyer or another lawyer, is not 'known to be represented in the matter.'"  Mich. Ethics. Op. RI-219 (Sept. 6, 2014).  Here, of course, no class has been certified.

"involve[] thousands of individuals who are represented by counsel[.]" *See* ECF No. 1096, at 3. Counsel's conduct was nothing more than an unfortunate mistake. Counsel for the VNA Defendants (much less the VNA Defendants themselves) did not "know[]" any of the subpoena recipients "to be represented in the matter." Mich. R. Prof. Cond. 4.2(a).[6]

In addition, counsel for the VNA Defendants did not offend the underlying purposes of the applicable ethical rule. Michigan Rule of Professional Conduct 4.2 "must be narrowly construed." *Ondricko v. MGM Grand Detroit, LLC*, No. 09-11073, 2010 WL 11679761, at *2 (E.D. Mich. May 27, 2010). The rule is intended "(1) to prevent an attorney from circumventing opposing counsel in order to obtain statements from the adversary; (2) to preserve the integrity of the attorney-client

---

[6] Courts in this district have held that subpoenas *must* be personally on non-parties, even when those non-parties are known to have retained counsel. *See In re Seizure of $143,265.78 from Comerica Checking Account No. 1851349546 & $28,687,40 from Checking Account No. 1080022185*, 616 F. Supp. 2d 699, 706 (E.D. Mich. 2019). In that circumstance, the "communication" with the represented party would be appropriate under Michigan Rule of Professional Conduct 4.2 because it would be "authorized by law." *Inland Waters Pollution Control, Inc. v. Jigawon, Inc.*, No. 05-74785, 2008 WL 11357838, at *2 (E.D. Mich. Feb. 21, 2008). Thus, had the VNA Defendants been correct in thinking that none of these persons were parties, the subpoenas would have been proper even as to persons who had hired lawyers.

relationship; (3) to prevent the inadvertent disclosure of privileged information; and (4) to facilitate settlement by involving lawyers in the negotiation process." *Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883, 888 (W.D. Mich. 2004). Here, the VNA Defendants did not obtain or intend to obtain information from any represented parties. They did not discuss "settlement." And they took immediate measures to ensure that the attorney-client relationship was preserved after the error was discovered—namely, by alerting counsel and then issuing the apology letter.

In the end, serving subpoenas on represented plaintiffs was a mistake. Counsel for the VNA Defendants sincerely and deeply regret that mistake, but it should not be considered an abuse of process. *See, e.g., In re Brown,* 178 B.R. 722, 729 (Bankr. E.D. Tenn. 1995) ("This kind of sloppiness does not rise to the level of fraud or abuse of process[.]"); *PaineWebber Inc. v. Farnam*, 870 F.2d 1286, 1291 n.3 (7th Cir. 1989) (explaining that a party had "muddied the proceedings" by making "admittedly mistaken arguments," but that there was no evidence of "abuse of judicial processes" because "there [was] no indication that these

arguments were purposefully made to confuse, distract, or mislead the court").

***Lack of Notice to Other Parties.*** The VNA Defendants recognize that their mistake in serving represented plaintiffs was compounded by their failure to provide advance notice of the subpoenas to other parties. As the Court observed, prior notice was required, and had that notice been provided someone might have pointed out that some of the intended subpoena recipients were represented plaintiffs. The failure to give notice, however, was not malicious. It was a mistake stemming from a miscommunication among the VNA Defendants' counsel about which law firm would send that notice. The VNA Defendants take the notice requirement seriously. Whenever discovery has been issued in the past, the VNA Defendants have supplied notice to other parties. And here, when the error was discovered, the VNA Defendants acted to rectify it within hours.

Particularly in circumstances like these, "not complying with Rule 45(b)(1) when seeking relevant documents is not an abuse of process." *Bailey v. Scoutware, LLC*, No. 12-10281, 2013 WL 12177262, at *5 (E.D. Mich. Jan. 24, 2013); *see also, e.g., Dikker v. 5-Star Team Leasing LLC,*

No. 115CV01201RJJPJG, 2016 WL 11637106, at *1 (W.D. Mich. Sept. 1, 2016) (declining to sanction a party for "an isolated violation of Rule 45(a)(4)'s prior notice requirement"); *Cryotech Int'l, Inc. v. Technifab Prod., Inc.,* No. C08-02921 HRL, 2009 WL 3021185, at *4 (N.D. Cal. Sept. 17, 2009) (finding sanctions inappropriate because the "failure to provide prior notice [of fifteen subpoenas] was not intentional and [the requesting party's] counsel took action to remedy the problem once they became aware of the issue"); *Dugle v. Norfolk S. Ry.*, No. CV 07-40-KKC, 2010 WL 11530697, at *1 (E.D. Ky. Jan. 6, 2010) ("A mere 'mistake' by Defendant's counsel in failing to provide for service would not be sufficient to meet the bad faith standard required for imposing sanctions.").

***Service During State of Emergency.*** The VNA Defendants recognize the seriousness of the COVID-19 situation. They do not wish to contribute to the spread of the virus or put anyone at risk for the sake of this litigation. That was true at the time these subpoenas were issued, and that is true now.

The present public-health situation has escalated dramatically in the past few weeks and, as a result, "public health recommendations [are]

14

rapidly changing." *United States v. Gileno*, No. 3:19-CR-161-(VAB)-1, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020). When counsel for the VNA Defendants prepared and issued these subpoenas, large public gatherings still were permitted, restaurants remained open, and life in Michigan was largely continuing as normal. At that time, courts were still running, and the VNA Defendants were faced with the task of completing timely inspections via subpoenas that needed to be personally served. *See Blankenship v. Superior Controls, Inc.*, No. 13-12386, 2014 WL 12659919, at *2 (E.D. Mich. Oct. 2, 2014) (holding that an "alternate means [of service for a Rule 45 subpoena] is only permissible after the party has attempted personal service and has demonstrated that the attempted personal service was diligent"). Michigan's stay-at-home order had not yet issued. *Cf. Greenlee v. Rettich*, No. 3:20-CV-023, 2020 WL 1439892, at *1 (S.D. Ohio Mar. 24, 2020) (issuing limitations on the personal service of documents until "the Governor has announced an end to the stay-at-home directions presently in force"). In short, things were very different in mid-March than they are now.

The time before the current "lockdown" feels like a distant memory. Each   day   brings   added   information   about   the   severity   and

contagiousness of the virus.  But when the subpoena process played out, counsel for the VNA Defendants did not contemplate that the momentary interaction required by service of a subpoena would present a danger to others.  Moreover, our subsequent research has failed to unearth any restriction on the service of process or the like at that time in any court, federal or state.  The VNA Defendants would not have these subpoenas personally served today.  But the relevant question is what they should have done *then*.  The answer is that the VNA Defendants were complying with applicable law and did not knowingly put any subpoena recipient at risk.

## CONCLUSION

Counsel for the VNA Defendants recognize their errors.  They have worked to correct them.  The VNA Defendants did not gain any advantage from these events, and Plaintiffs have not been prejudiced. Indeed, Plaintiffs have not sought any further sanction now that the VNA Defendants have withdrawn the subpoenas.  On these facts, the VNA Defendants respectfully submit that there has been no abuse of the judicial process.

Respectfully submitted,

**CAMPBELL, CONROY &
O'NEIL P.C.**

By: /s/ *James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-
lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH
PLLC**

By: /s/ *Michael R. Williams*
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
100 W. Big Beaver Road, Suite
400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America,
Inc., and Veolia Water North America Operating Services, LLC*

Dated:  April 8, 2020

17