## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re Flint Water Cases*                              NO. 5:16-cv-10444
                                                      Honorable Judith E. Levy

_____

## PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

## BACKGROUND

On July 25, 2019, numerous parties to the litigation, including Co-Liaison Counsel for Individual Plaintiffs and Interim Co-Lead Counsel for the Putative Class (collectively, "Plaintiffs"), served a documents-only subpoena on the Michigan Attorney General's Office.[1] On August 8, 2019, the Government Defendants objected to the subpoena. At the heart of the Government Defendants' objection was that Michigan's investigative subpoena statute contains a section that makes those proceedings confidential. *See* MCL § 767A.8.

This case suffers from a significant disparity in access to crucial documents and testimony that have been compiled over the years by criminal investigative attorneys in the Michigan Attorney General's office. In spite of the statutory protections that the Attorney General and MDEQ Defendants assert as a basis to withhold such materials from production to Plaintiffs, Plaintiffs have learned that

_____

[1]        *See* Subpoena and Schedule A to Subpoena, attached as **Exhibit A**.

1

access to such materials has trickled into the hands of other litigants—and created

an uneven playing field in the process—in a number of ways:

1. MDEQ Defendants have received production of such materials (or at least a subset of them) in criminal discovery that corresponded with the filing of (now dismissed or resolved) criminal charges against them;

2. During the taking of criminal investigative testimony in at least some of the underlying investigative depositions, at least one former Special Assistant Attorney General (Noah Hall) attended, even though he subsequently appeared and participated in *parens patriae* civil litigation brought by former Attorney General Bill Schuette concerning the Flint Water crisis;

3. During the taking of some criminal investigative testimony, it appears that Assistant Attorney Generals who now represent the State Defendants, and the State generally, attended and represented the deponents; and

4. Due to the existence of a joint prosecution agreement that has been entered into by MDEQ Defendants, former Governor Snyder and others, it must be presumed that information in the hands of *any one* of these litigants is in the hands of *all* of them.[2]

The passage of time makes disparate access to these materials all the more

prejudicial to Plaintiffs.  In the civil depositions in this case, many witnesses have

testified that they simply no longer remember crucial facts.  And at least one

---

[2]    Even if certain individuals, or counsel representing them, do not have physical possession of criminal investigative transcripts, to the extent that they were participants in such proceedings, they have (or had) access to what was said by witnesses in those proceedings.  Thus, it must be presumed that access to such testimony exists for the MDEQ Defendants and State Defendants in this case who entered the joint prosecution agreement, even if they do not have possession, custody or control of the underlying transcripts or documents.

witness testified that he now is being treated for memory issues that have surfaced in the intervening years. To the extent that these witnesses were deposed by criminal investigative attorneys in earlier years, access to that testimony provides far more reliable testimony than what can be obtained now.

In deference to criminal investigative authorities, Plaintiffs have not aggressively sought production of the criminal investigative materials until after April 25, 2020 – the six year anniversary of the switch from Detroit-sourced Lake Huron water to Flint River water. The Michigan Attorney General's office had publicly pronounced in earlier media statements that they believed this date would mark the running of the criminal statute of limitations as it concerns such matters.[3]

Because Plaintiffs are the victims of what happened in Flint, they also sought voluntary production of the materials from the Attorney General pursuant to Michigan's Crime Victim Rights Act. The Attorney General did agree to production of any criminal investigative materials that were produced in open court proceedings, but have otherwise refused to produce the criminal investigative materials.

---

[3] *See* June 28, 2019 MLive article noting that Special Prosecutor Kim Worthy said the prosecution team had nine months bring charges because of the statute of limitations *available at* :
https://www.mlive.com/news/flint/2019/06/flint-residents-express-hope-and-skepticism-at-water-crisis-forum.html

The sole point of the dispute is the application of MCL § 767A.8, which forbids a prosecuting attorney who obtains materials or takes deposition testimony pursuant to an investigative subpoena from making those materials available for public inspection or divulging them in response to a request under Michigan's freedom of information statute.[4] Yet, as set forth herein, MCL § 767A.8 does not apply in this federal question case at all, and even if it did, its plain text sharply limits its scope. Furthermore, even if MCL § 767A.8 did create a privilege that could justify quashing a subpoena, it would be a qualified one—and the circumstances here show both that the privilege has been waived, and that the public interest in obtaining the investigative materials outweighs any interest in maintaining their confidentiality.

Accordingly, Plaintiffs are, at a minimum, entitled to a production of the responsive materials from the MDEQ Defendants. In truth, however, MCL §

---

[4]     MCL § 767A.8 provides:

Petitions for immunity, orders of immunity, transcripts of testimony delivered to witnesses pursuant to grants of immunity, and records, documents, and physical evidence obtained by the prosecuting attorney pursuant to an investigation under this chapter are confidential and shall not be available for public inspection or copying or divulged to any person except as otherwise provided in this chapter. Material and information obtained under this act are exempt from disclosure under the freedom of information act, Act No. 442 of the Public Acts of 1976, being sections 15.231 to 15.246 of the Michigan Compiled Laws.

MCL § 767A.8.

767A.8 does not apply at all, or has been waived, and so Plaintiffs are entitled to production of a comprehensive set of materials from the Michigan Attorney General's Office.

## ARGUMENT

The Court should compel compliance with the subpoena for four essential reasons. First, this is a federal question case, and so MCL § 767A.8 does not apply. Second, even if MCL § 767A.8 does apply, it does not protect documents in the possession of parties to this litigation, namely the MDEQ Defendants, as opposed to the Michigan Attorney General. Third, the plain text of MCL § 767A.8 makes clear that any materials in the possession of the Michigan Attorney General, which *were not* obtained pursuant to an investigative subpoena, are not protected from disclosure. Finally, to the extent that MCL § 767A.8 applies, it creates a qualified privilege, which can be waived; and the Michigan Attorney General's Office and the MDEQ Defendants have waived the privilege through their conduct.

## I.     MCL § 767A.8 does not apply.

As a threshold matter, there is no good reason to apply MCL § 767A.8 as a basis for prohibiting disclosure of documents to the Plaintiffs. To the extent that MCL § 767A.8 creates protection from state law discovery,[5] it does not apply in a

---

[5]     It only makes a certain subset of records confidential in response to certain requests. *See Pearson v. Miller*, 211 F.3d 57, 68 (3d Cir. 2000) ("Statutory provisions providing for duties of confidentiality do not automatically imply the

federal question case. *See Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998); *cf.* Fed. R. Evid. 501.

For example, in *Thayer v. Chiczewski*, a District Court for the Northern District of Illinois declined to quash a Rule 45 subpoena on the basis of an Illinois statute creating a privilege for journalists. *See* 257 F.R.D. 466, 469 (N.D. Ill. 2009) ("'State-law privileges are not "legally applicable" in federal question cases like this one.'" (quoting *McKevitt v. Pallash*, 339 F.3d 530, 533 (7th Cir. 2003))). Notably, the journalistic privilege there implicated weighty concerns surrounding the freedom of the press, but the court had no trouble ordering production of the relevant materials.[6] Likewise, the Western District of New York ordered

---

creation of evidentiary privileges binding on courts."); *Martin v. Lamb*, 122 F.R.D. 143, 146 (W.D.N.Y. 1988) ("Merely asserting that a state statute declares that the records in question are 'confidential' does not make out a sufficient claim that the records are 'privileged' within the meaning of Fed. R. Civ. P. 26(b)(1) and Fed. R. Evid. 501.").

Indeed, not only MCL § 767A.8 does not explicitly create an evidentiary privilege, it does not create a "privilege" at all. The statute's plain language does no afford prosecutors a choice whether to disclose materials that were obtained pursuant to an investigative subpoena, which is the hallmark of a privilege. *See* Bryan A. Garner, *Black's Law Dictionary* 1449 (11th ed. 2019) ("A privilege grants someone the legal freedom to do or not to do a given act."). Nor does it give a prosecutor (the ostensible privilege holder here) the right to forbid another party from disclosing communications to others, which is another common feature of a privilege (e.g., the attorney–client privilege, the doctor–patient privilege, and the clerical privilege).

[6]     Like this case, *Thayer v. Chiczewski*, 257 F.R.D. 466, 469 (N.D. Ill. 2009) also involved state-law claims. However, the court there found no reason not to enforce the Rule 45 subpoena there since the evidence sought would be relevant

compliance with a subpoena notwithstanding a New York statute that (using language that is very similar to MCL § 767A.8) made it illegal to "to divulge or make known in any manner any particulars set forth or disclosed in any such [tax] return or report." *See In re New York State Sales Tax Records*, 382 F. Supp. 1205, 1206 (W.D.N.Y. 1974).

Admittedly, a previous decision applied MCL § 767A.8 in a distinguishable situation in light of asserted interests relating to the Tenth Amendment and "federal/state comity." *See Moody v. Mich. Gaming Control Bd.*, Civ. No. 12-cv-13593, 2013 U.S. Dist. LEXIS 84918, at *15, 2013 WL 3013862 (E.D. Mich. June 18, 2013).[7] To be clear, though: the Tenth Amendment is not an independent basis for applying a state law privilege to quash a subpoena. *See In re Special April 1977*

---

to the federal claims. *See* 257 F.R.D. at 469 n.4. Indeed, other courts have likewise rejected applying a state law privilege that would conceivably bear on state law claims but not on federal claims. *See Pearson v. Miller*, 211 F.3d 57, 66 (3d Cir. 2000) (holding that when evidence covered by a privilege is relevant to both a federal and state claim or defense, the courts generally apply the federal law of privilege); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 525 (N.D. Fla. 2013) (same); *FDIC v. Mercantile Nat'l Bank*, 84 F.R.D. 345, 349 (N.D. Ill. 1979) (holding that "where information sought pursuant to discovery is relevant to federal claims, the Illinois accountant privilege will not be recognized, notwithstanding that the same information is relevant to claims founded upon Illinois law" and noting that were application of Federal Rule of Evidence 501 results in "two conflicting bodies of privilege law applying to the same piece of evidence in the same case, it is contemplated that the rule favoring reception of the evidence should be applied" (quoting S. Rep. No. 1277, 93d Cong., 2d Sess. (1974), *reprinted in* U.S.C. & Admin. News, pp. 7051, 7059 n. 17 (1974))).

[7]      A copy of *Moody v. Mich. Gaming Control Bd.*, Civ. No. 12-cv-13593, 2013 U.S. Dist. LEXIS 84918, 2013 WL 3013862 (E.D. Mich. June 18, 2013) is attached as **Exhibit B** for the Court's convenience.

*Grand Jury*, 581 F.2d 589, 592 (7th Cir. 1978); *In re Grand Jury Empanelled January 21, 1981*, 585 F. Supp. 537, 539 (D.N.J. 1982); *In re Grand Jury Subpoena for New York State Income Tax Records*, 468 F. Supp. 575, 577 (N.D.N.Y. 1979).

Furthermore, the "doctrine of comity" does not require the automatic application of state privilege in all situations. *See King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("Mere adherence to state rules would often improperly elevate the role of privileges in federal question cases."). Rather, "comity 'impels federal courts to recognize state privileges where this can be accomplished *at no substantial cost* to federal substantive and procedural policy.'" *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004) (quoting *Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981)).

Consequently, the interests of comity require narrow tailoring, and a careful balancing of the materials subpoenaed and the need for them in litigation, against the purposes of the state statutory privilege. *See Patterson v. Norfolk & W.R. Co.*, 489 F.2d 303, 306–07 (6th Cir. 1973); *see also United States v. One Parcel of Prop. Located at 31-33 York Street*, 930 F.2d 139, 141 (2d Cir. 1991) ("While as a matter of comity federal courts accord deference to state-created privileges, such privileges are construed narrowly, and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." (citations omitted.)).

8

Thus, for instance, where a subpoena had sought highly confidential tax records, but had not otherwise embarked on a "grandiose, brazen fishing expedition," giving effect to the privilege was unwarranted, and disclosure was therefore appropriate. *See In re Special April 1977 Grand Jury*, 581 F.2d at 592.

Here, MCL § 767A.8's plain text does not create an evidentiary privilege. *See Pearson*, 211 F.3d at 68; *Martin*, 122 F.R.D. at 146. Giving it an appropriately narrow interpretation, it is apparent it was designed to prohibit a prosecuting attorney from disclosing a certain subset of investigative materials (those generated or obtained pursuant to an investigative subpoena under chapter 767A) in response to a state law freedom of information request.[8] To be sure, there is a manifest intention to keep the inner workings of these kinds of investigations confidential. Yet, quite apart from being the kind of purpose this Court should defer to in the name of comity, this purpose must actually "be viewed with caution because [it] may be parochially designed to thwart federal interests." *King*, 121 F.R.D. at 187.

In point of fact, the substantive due process claims Plaintiffs' have brought under § 1983 are precisely the kinds of claims where comity would gravely undermine federal interests:

> It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of

---

[8]   These textual limitations on the scope of MCL § 767A.8 are discussed in greater depth in Parts II and III below.

> power by state and local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they needed to prosecute their federal claims.

*Kelly v. City of San Jose*, 114 F.R.D. 653, 656 (N.D. Cal. 1987). "In other words, state privilege rules should not be permitted to 'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.'" *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010) (quoting *King*, 121 F.R.D. at 187).

Accordingly, there is no basis to apply MCL § 767A.8 at all. Any concerns with the interests that MCL § 767A.8 was intended to protect is further attenuated by the Attorney General's earlier public pronouncements that, in their view, the statute of limitations has passed for any crimes that were under investigation. As set forth in greater detail below, the Michigan Attorney General previously represented that the six-year statutes of limitation would expire on April 25, 2020.[9] In contrast, not applying MCL § 767A.8 appreciably and directly advances the paramount federal interests of ascertaining the truth and vindicating fundamental constitutional rights. Finally, Plaintiffs' requests are reasonable in light of the circumstances and are certainly not a "grandiose, brazen fishing expedition." *See*

---

[9]     *See* Part IV below.

*In re Special April 1977 Grand Jury*, 581 F.2d at 592. The Court should decline to apply MCL § 767A.8 and compel the Attorney General to produce all relevant and responsive materials.

## II. MCL § 767A.8 does not prohibit production of documents, transcripts, and other materials generated or produced pursuant to investigative subpoenas, which are currently in the possession of the MDEQ Defendants.

Even if MCL § 787A.8 applies, it does not prohibit production of any documents, transcripts, and other materials currently in the possession of the MDEQ Defendants. The MDEQ Defendants' objection is predicated on application of MCL § 767A.8 to criminal investigative materials in their possession. This assumption is not supported by MCL § 767A.8 or any decision interpreting it.

This statute does not exempt the MDEQ Defendants or any other party from producing documents as a part of civil discovery. As this Court observed two years ago, MCL § 767A.8 applies to a "prosecuting attorney" and so on its face limits only what the State is permitted to divulge. *See* Status Conf. Tr. Jan. 11, 2018, *Waid v. Snyder*, ECF No. 351, at 95 (PageID.12013); *see also* MCL § 767A.1. Nothing in section 767A.8's text or apparent purpose gives private individuals an independent right to refuse to disclose materials that they either received from or provided to the State prosecutor in a criminal case.

The narrow application of section 767A.8 is readily apparent when that section is compared with Michigan's Grand Jury Act. While the investigative

subpoena statute applies only to a "prosecuting attorney," *see* MCL § 767A.1, the Grand Jury Statute applies to "a person," *see id.* § 767.19f(1). By the same token, the verbs used in the investigative subpoena statute are narrower than those in the Grand Jury Statute: documents obtained pursuant to an investigative subpoena "shall not be available for public inspection or copying or divulged," while a person "shall not publish or make known" documents used in connection with a grand jury proceeding. *Compare id.* § 767A.8, *with id.* § 767.19f(1). The former contemplates the narrow confines of FOIA and production *by a prosecutor*; the latter encompasses the traditionally broad reach of publication, *see Grist v. Upjohn Co.*, 16 Mich. App. 452, 483; 168 N.W.2d 389, 405 (1969) (holding publication in the defamation context is any "communication intentionally or by negligent act to one other than the person defamed"), and the even broader concept of simply "mak[ing] known" the grand jury proceedings.

These differences are crucial because the investigative subpoena statute was "modeled" on the Grand Jury Act. *Truel v. City of Dearborn*, 291 Mich. App. 125, 133; 804 N.W.2d 744, 750 (2010). It is a cardinal rule of statutory construction that "[w]hen the Legislature includes a provision in one statute and omits the provision in a related statute, the Court should construe the omission as intentional and should not include an omitted provision where none exists." *Wolverine Power*

*Coop. v. Dep't of Envtl. Quality*, 285 Mich. App. 548, 564; 777 N.W.2d 1, 10 (2009).

Neither the Government Defendants nor the Attorney General's Office can point to a decision that expands the investigative subpoena statute's protection beyond these narrow confines. Indeed, the only circumstance in which a Michigan court has held that MCL § 767A.8 restricts a civil litigant's right to take discovery applied its ruling to discovery sought ***from a prosecutor***. *See Truel*, 291 Mich. App. at 134–35; 804 N.W.2d at 751. *See also Moody*, 2013 U.S. Dist. LEXIS 84918, at *15 (holding plaintiffs were "not entitled" to a statement obtained by Special Assistant Attorney General in connection with investigation of race-fixing scheme). But no Michigan court has applied MCL § 767A.8 to restrict civil discovery of materials in the possession of a private party—as opposed to a prosecutor.

Therefore, the MDEQ Defendants here may not refuse to disclose materials in their possession under MCL § 767A.8—regardless of whether they may have obtained those materials from, or provided them to, a State prosecutor.[10] As one court outside Michigan has explained in applying a statute similar to MCL §

---

[10]    At one time, these materials may have been protected from disclosure by the protective orders filed in the criminal cases in which the special prosecutor turned them over to Government Defendants. *See* MCR 6.201(E). Even if that was so, however, the criminal cases have all been closed, and the protective orders filed in them have expired by their own terms. Thus, the protective orders can no longer prevent discovery of materials obtained from the state prosecutors.

767A.8, a party who is "the subject of the alleged investigation, rather than the law enforcement agency conducting it," may not assert an "'investigative' privilege." *Jean D. v. Cuomo*, 90-civ-0861, 1993 U.S. Dist. LEXIS 9887, at *3, 1993 WL 276067 (S.D.N.Y. July 20, 1993) (citing *King*, 121 F.R.D. at 192) (rejecting defendants' "asserting that their interest in the confidentiality of the investigation is 'similar to that of DoJ'"); *see also* N.Y. Civ. Rights Law § 50-a.[11]

The Government Defendants' interpretation of section 767A.8 would make the state prosecutor a permanent repository of illicit materials, even if copies or originals of the documents or materials remain in the possession of the individual who was subject to the subpoena. MCL § 767A.8 cannot possibly insulate relevant materials ***in the Government Defendants' own possession*** from discovery for the sole reason that those materials have ***also*** been disclosed pursuant to an investigative subpoena.[12] Indeed, this Court previously rejected Government Defendants' assertion that they are obligated to withhold such materials from

---

[11]   A courtesy copy of *Jean D. v. Cuomo*, 90-civ-0861, 1993 U.S. Dist. LEXIS 9887, 1993 WL 276067 (S.D.N.Y. July 20, 1993) is attached as **Exhibit C** for the Court's convenience.

[12]   This is no less true if a Government Defendant no longer possess the originals of the documents they produced to the prosecutors—as Defendant Howard Croft alleges (*see* Defendant Howard Croft's Response to Putative Class Plaintiffs' and Individual Plaintiffs' Requests for Production of Documents to Defendant Howard Croft, *Carthan v. Snyder*, 5:16-cv-10444, ECF No. 1078-1, at 6 (PageID.27021))—and if the only copies of those documents now in their possession were transmitted to them electronically by the prosecutors.

discovery. *See* ECF No. 351, at 97 (PageID.12015) (observing that MCL § 767A.8 "can't possibly mean" that parties may refuse to produce "documents [they] produced to the state attorney general or special prosecutor").

Accordingly, MCL § 767A.8 does not provide any basis at all to preclude production of investigative documents in the possession of the MDEQ Defendants. As alternative relief to the production of a comprehensive set of materials by the Attorney General, the Court should order the MDEQ Defendants to produce a partial set of any criminal investigative materials in their possession, custody or control.

**III.   MCL § 767A.8 does not prohibit the Attorney General's Office from disclosing documents in its possession that were not generated or obtained pursuant to an investigative subpoena.**

MCL § 767A.8 does not apply to every document, transcript, or other record or item in the Attorney General's possession. Rather, its scope is narrowly circumscribed to "an investigation under this chapter." MCL § 767A.8. The Solicitor General has repeatedly confirmed this plain implication of the statutory language in her communications with Government Defendants. *See* Email from Solicitor General Fadwa A. Hammoud, dated Sept. 9, 2019, *Waid v. Snyder*, 5:16-cv-10444, ECF No. 1078-3, at PageID.27083; Email from Solicitor General Fadwa A. Hammoud, *Waid v. Snyder*, 5:16-cv-10444, ECF No. 1078-4, at PageID.27086.

Simply put, the Attorney General may not use MCL §767A.8 as a basis to refuse to produce responsive materials if those materials were not obtained pursuant to an investigative subpoena.[13] Both MDEQ Defendants and the Solicitor General have indicated that many of the millions of pages of documents that the prosecutor produced to MDEQ Defendants may **not** have been obtained by investigative subpoenas. *See* ECF No. 1078-3, at PageID.27082, 27083. The other parties to this litigation have a right to obtain discovery of any documents and testimony that were not obtained by investigative subpoena.

There is no basis for giving MCL § 767A.8 the unduly broad reach the Government Defendants and Michigan Attorney General's Office propose. Accordingly, at a minimum the Court should order the Michigan Attorney General to produce documents responsive to the subpoena that the Attorney General did not obtain pursuant to an investigative subpoena under MCL § 767A.8.

---

[13]    A free-floating privilege from disclosure is not only at odds with the plain text of MCL § 767A.8, it would also cause the narrow exception section 767A.8 creates to swallow the general rule in favor of disclosure found both in ordinary discovery rules, *see, e.g.*, Fed. R. Civ. P. 26(b)(1), and in the Michigan Freedom of Information Act, *see* MCL § 15.231(2) ("It is the public policy of this state that all persons, except those persons incarcerated in state or local correctional facilities, are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process.").

**IV.    Any privilege the Michigan Attorney General holds by virtue of MCL §
767A.8 is qualified and can be waived—and the Attorney General has
waived it.**

Finally, if any privilege exists, it is a qualified one. No Michigan court has
held that MCL § 767A.8 absolutely protects materials obtained pursuant to an
investigative subpoena from disclosure. On the contrary, other courts applying
investigative privileges recognize they are necessarily "qualified," and the "public
interest in nondisclosure must be balanced against the need of a particular litigant
for access to the privileged information." *In re Sealed Case*, 856 F.2d 268, 272
(D.C. Cir. 1988); *accord Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122,
1125 (7th Cir. 1997); *Jabara v. Kelley*, 75 F.R.D. 475, 493 (E.D. Mich. 1977).
Production of the criminal investigative materials is warranted in this instance for
two reasons.

*First*, Plaintiffs' need for the materials, and the federal interest in
ascertaining the truth and in vindicating constitutional rights, greatly outweighs
any interest the State of Michigan may have in maintaining their confidentiality.
Plaintiffs anticipate that the MDEQ Defendants and the Attorney General's Office
will claim that the criminal proceedings outweigh this interest. However, the State
can have little interest in maintaining the secrecy of materials obtaining during past
criminal investigations. The criminal cases have been closed, and the State has not
brought any new criminal charges.

Plaintiffs waited until the sixth anniversary of the water's switch on April 25, 2014 because the MDEQ Defendants and the Attorney General had previously pronounced that, in their view, any criminal statute of limitations would expire after six years from that date. Further, as above, the Attorney General has produced at least some of these materials to certain MDEQ Defendants. The materials are presumably factual, and so their disclosure is unlikely to chill government functions like deliberation or self-evaluation. And there has been **no** claim that sensitive information like the identities of informants would be revealed.

In contrast, Plaintiffs' need for documents and information obtained by state prosecutors in connection with their criminal investigations is substantial. Because these materials were obtained by prosecutors to prove the Government Defendants' criminal liability, they relate directly to Plaintiffs' due process claims under 42 U.S.C. § 1983 that the Government Defendants were deliberately indifferent of Plaintiffs' clearly established constitutional right to bodily integrity. Moreover, as above, the public interest strongly favors compelling disclosure of these materials. Most obviously the disclosure of transcripts and sworn statements would obviate or least reduce the need to depose the individuals who provided the testimony in question. That in turn would help ensure that the litigation is able to proceed as scheduled. Needless to say, the public has a strong interest in ascertaining the truth—and in vindicating Plaintiffs' meritorious civil rights claims. The balance of

interests weighs overwhelmingly in favor of compelling the MDEQ Defendants and the Attorney General to produce the criminal investigative materials. *See In re Sealed Case*, 856 F.2d at 272 (directing courts to balance the "interest in nondisclosure" against a litigant's "need" "for access").

*Second*, to the extent that the privilege exists, it has been waived. *See Dellwood Farms*, 128 F.3d at 1125; *see also* Fed. R. Civ. P. 26(b)(5), 45(e)(2). And there is good reason to follow the "prevailing" rule of waiver of attorney–client privilege: "[O]nce a client waives the privilege to one party, the privilege is waived en toto." *Tenn. Laborers Health & Welfare Fund v. Columbia/Hca Healthcare Corp.*, 293 F.3d 289, 294 (6th Cir. 2002). Quite so, the Attorney General has produced at least a subset of the materials to MDEQ Defendants,[14] and the materials or a summary of their contents has likely been shared with parties like Governor Snyder, who were also parties to a joint defense agreement with the MDEQ Defendants. Additionally, if the Attorney General used attorneys on the *civil* side of the "conflict wall" during the gathering of criminal investigative

---

[14]   Likewise, some of the Assistant Attorneys General who now represent the civil litigants were representing those individuals during the investigative process. What's more, some of the Assistant Attorneys General who now represent MDEQ Defendants were not representing them then—they were representing other state government officials from whom testimony and documents were gathered. To be clear, it is a not a matter of whether any of those attorneys has the transcript; those attorneys were in the room at the time the interviews were taking place and may have had full access to the materials produced as a part of the investigative process.

testimony or the representation of witnesses who provided such testimony, any assertion that the criminal investigative privilege shields production to civil litigants has been waived.

The net effect is that the MDEQ Defendants (and, likely, at least some other State Defendants who are parties to the joint defense agreement) have created an uneven playing field. It is, in the Seventh Circuit's words, an "unearned advantage." *Dellwood Farms*, 128 F.3d at 1125. This is precisely the concern animating cases like *King*, 121 F.R.D. at 187, and *Kelly*, 114 F.R.D. at 656. This is, in other words, not a situation where ***none*** of the civil litigants has access to a particular confidential investigative record; rather ***some*** of the litigants have access shared the records while depriving ***others***.

In sum, even to the extent the Court concludes that MCL § 767A.8 applies to some narrow subset of testimony and documents as a part of the criminal investigation into the Flint Water Crisis, the resulting privilege would be qualified and waivable. The Attorney General and the Government Defendants have waived the privilege, and  the Plaintiffs' need for access to the materials greatly outweighs any slim interest in nondisclosure the Attorney General may have.

## CONCLUSION

The Court should compel the production of any criminal investigative materials in the possession of the Michigan Attorney General's Office.

Alternatively, and at a minimum, the Court should compel the production of criminal investigative documents in the possession, custody or control of the MDEQ Defendants, to whom MCL § 767A.8 does not apply.

Respectfully submitted, this 5th day of May, 2020.

**On behalf of Individual Plaintiffs**

/s/ RENNER K. WALKER
Renner K. Walker
**LEVY KONIGSBERG, LLP**
800 Third Avenue, 11th Floor
New York, New York 10022
(212) 605-6200
rwalker@levylaw.com

**On behalf of Putative Class Plaintiffs**

/s/ PAUL F. NOVAK
Paul F. Novak (P-39524)
**WEITZ & LUXENBERG, P.C.**
3011West Grand Blvd., Ste. 2150
Detroit, Michigan 48202
(313) 800-4170
pnovak@weitzlux.com

## <u>CERTIFICATE OF SERVICE</u>

I, Corey M. Stern, hereby certify that on May 5, 2020, the foregoing Plaintiffs' Brief in Support of Motion to Compel Production of Documents, including all exhibits annexed thereto, was served electronically (via ECF) to all counsel of record.

Additionally, the foregoing Plaintiffs' Brief in Support of Motion to Compel Production of Documents, including all exhibits annexed thereto, was served on the State of Michigan, Department of the Attorney General, a non-party, by emailing the foregoing papers to miag@michigan.gov.

*/s/ Corey M. Stern*
Corey M. Stern
