# EXHIBIT C



**User Name:** RENNER WALKER

**Date and Time:** Tuesday, May 5, 2020 4:04:00 PM EDT

**Job Number:** 116155617

## Document (1)

1. *Jean D. v. Cuomo, 1993 U.S. Dist. LEXIS 9887*

   **Client/Matter:** 160044

   **Search Terms:** Jean D. v. Cuomo, 1993 U.S. Dist. LEXIS 9887

   **Search Type:** Natural Language

   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |



Cited
As of: May 5, 2020 8:04 PM Z

# *Jean D. v. Cuomo*

United States District Court for the Southern District of New York

July 20, 1993, Decided ; July 20, 1993, Filed

90 Civ 0861 (SS)

**Reporter**
1993 U.S. Dist. LEXIS 9887 *; 1993 WL 276067

JEAN D., STEVEN R., et al., Plaintiffs, v. MARIO CUOMO, as Governor of the State of New York, et al., Defendants.

**Judges:** [*1] Lee

**Opinion by:** BARBARA A. LEE

## Opinion

MEMORANDUM ORDER

BARBARA A. LEE, United States Magistrate Judge.

This is an action pursuant to § 504 of the Rehabilitation Act of 1973, *29 U.S.C. § 794* and *42 U.S.C. § 1983* on behalf of patients at mental hospitals challenging policies and procedures of the New York State Department of Mental Health which they contend deny them access to fresh air. It was referred for pretrial supervision by the Hon. Shirley Wohl Kram, U.S.D.J. by Order of Reference entered May 15, 1990. Discovery is virtually complete and the parties have, pursuant to my "Procedures for Informal Resolution of Discovery Disputes" previously distributed to all counsel, submitted a joint letter summarizing defendants' objections to the production of certain specific documents pursuant to plaintiffs' contention interrogatories, and plaintiffs' arguments in favor of production. [1] For the reasons discussed below, defendants' objections are overruled and the documents are directed to be produced no later than August 16, 1993.

[*2] Plaintiffs seek production of (1) the reports of four expert consultants referred to in the deposition testimony of OMH Deputy Commissioner Sandra Forquer and (2) five specific documents listed in the joint letter, consisting of specific program evaluation reports and documents relating to certain types of patient injuries.

The expert reports about which Dr. Forquer testified at her deposition appear to be directly related to her expected trial testimony relating to the accreditation of the Pilgrim Psychiatric Center, one of the State institutions whose policies and procedures are at issue. In the circumstances of this case and the particular factual issues raised (as discussed in the joint letter), the expert reports reviewed by Dr. Forquer must be produced in order to give plaintiffs an opportunity to adequately prepare their cross-examination of Dr. Forquer.

Defendants' claims of privilege as to the expert reports and the other disputed documents are without merit. [2]

---

[1] The joint letter is attached to this memorandum order.

Disputes submitted by joint letter are normally resolved by memorandum endorsement thereon. The issues raised in this case require somewhat fuller discussion than would be feasible in that format.

[2] The privilege issues discussed in the succeeding paragraphs have been determined without examination of any documents in camera, although a stack of documents approximately one inch thick was submitted with the joint letter, with the implied request that they be so reviewed. In camera inspection is a method of dispute resolution of last resort, which should occur only when a dispute over the applicability of a privilege turns on the content of the document(s) in question. See ***Grossman v. Schwarz, 125 F.R.D. 376, 390 (S.D.N.Y. 1989)***. That is not the case here, where the facts stated in the joint letter, together with the

[*3] 1. "Investigative" privilege. Since defendants are the subject of the alleged investigation, rather than the law enforcement agency conducting it, their assertion that their interest in the confidentiality of the investigation is "similar to that of DoJ, the agency conducting the investigation" is not an accurate statement of the law. Cf. *King v. Conde, 121 F.R.D. 180, 192 (E.D.N.Y. 1988)*, requiring parties seeking to limit disclosure of law enforcement materials "to set forth in competent declarations the specific programs at risk, their value to law enforcement, and the extent of harm projected to be caused by disclosure." Any such issues must in any event be raised by an affidavit or declaration on personal knowledge by a responsible person within the agency (i.e., not the litigation attorney) who has personally reviewed the documents and states the specific interests of law enforcement or public concern that would be injured by disclosure. *Id. at 189*; see also *United States v. Reynolds, 345 U.S. 1, 97 L. Ed. 727, 73 S. Ct. 528 (1953)*; *Martin v. New York City Transit Auth., 148 F.R.D. 56, 59 (E.D.N.Y. 1993)* [*4] and cases there cited; *Grossman,* 125 F.R.D. at 381 and cases there cited.

2. Confidentiality. Defendants' interest in confidentiality can be dealt with by a stipulation and order in the form customary in this district to assure that sensitive documents are used only for purposes of this litigation and that access is limited to lawyers and expert witnesses.

3. "Predecisional, deliberative process privilege." This privilege is apparently claimed for the first time in this joint letter. "Failure to comply with the explicit requirements of [local Civil] Rule 46(e) will be considered presumptive evidence that the claim of privilege is without factual or legal foundation." *Grossman,* 125 F.R.D. at 86-87, quoted in *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964 F.2d 159, 166 (2d Cir. 1992)*. This claim is in any event without merit. New York does not recognize any common law "predecisional" privilege. *Grossman, 125 F.R.D. at 381*. New York law recognizes a limited "executive privilege" which is "confined to 'confidential communications between public [*5] officers and to public officers, in the performance of their duties, where the public interest requires that such confidential communications or the sources should not be divulged.'" *Kwitny v. McGuire, 102 Misc. 2d 124, 125, 422 N.Y.S.2d 867, 868 (S. Ct.N.Y.Co. 1979)*, aff'd on the opinion of *Special Term, 53 N.Y.2d 968, 441 N.Y.S.2d 659, 424 N.E.2d 546 (1981)* (quoting *People v. Keating, 286 A.D.150,*, *153, 141 N.Y.S.2d 562, 565* (1st Dep't 1955) (emphasis Special Term's). The reports of the four expert consultants described at p. 3 of the joint letter do not satisfy those requirements. Nor are they protected by the federal common law "deliberative" privilege see *Ernest & Mary Hayward Weir Foundation v. United States, 508 F.2d 894, 895 n.2 (2d Cir. 1974)* (per curiam), which is properly applicable only to communications relating to policy formulation at the higher levels of government; it does not operate indiscriminately to shield all decision-making by public officials. *Grossman,* 125 F.R.D. at 381; [*6] *Kelly v. San Jose, 114 F.R.D. 653, 656-59 (N.D. Cal. 1987)*. Questions of privilege in federal civil rights cases are in any event governed by federal law. *King, 121 F.R.D. at 181* and authorities there cited. To justify withholding of evidence in a civil rights action, a claim of privilege "'must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action.'" *Skibo v. City of New York, 109 F.R.D. 58, 61 (E.D.N.Y. 1985)* (quoting *Wood v. Breier, 54 F.R.D. 7, 13 (E.D. Wis. 1972))*.

It is so ordered.

Barbara A. Lee

United States Magistrate Judge

Dated: New York, New York

July 20, 1993

ATTACHMENT

NEW YORK LAWYERS FOR THE PUBLIC INTEREST, INC.

30 West 21st Street, 9th Floor, New York, NY 10010-6905

(212)727-2270

Fax: (212)727-2996

TDD: (212)727-2997

DAVID M. BRODSKY

Schulte Roth & Zabel

---

descriptions of the disputed documents and the arguments of counsel, are sufficient to resolve the privilege issues. Defendants' counsel is directed to pick up the documents submitted with the joint letter no later than July 30, 1993; if not picked up by that date, they will be destroyed.

*Chair*

CHARLES R. HAGER

Dewey Ballantine

*Vice Chair for Member Recruitment & Development*

JOHN H. HALL

Debevoise & Plimpton

*Vice Chair for Board Development*

GERALD A. ROSENBERG

Roseman & Colin

[*7] *Vice Chair for Member Relations*

ALEXANDER R. SUSSMAN

Fried, Frank, Harris, Shriver & Jacobson

*Vice Chair for Litigation & Program*

MOLLY BOAST

LeBouef, Lamb, Leiby & MacRae

*Secretary*

PATRICIA A. MARTONE

Fish & Neave

*Treasurer*

JOAN VERMEULEN

Executive Director

HERBERT SEMMEL

Litigation Director

JOHN A. GRESHAM

Senior Staff Attorney

EDDIE BAUTISTA

Community Liaison

LOURDES ZAPATA-PEREZ

Director, Private Bar Involvement Programs

Staff Attorneys

PAULA DiSTABILE

CARY LaCHEEN

RUTH LOWENKRON

SAM SUE

Paralegal

EMMA TORRES-MUHTI

RECEIVED

JUL 15 1993

CHAMBERS OF BARBARA A. LEE

U.S.M.J.

<u>BY HAND</u>

July 15, 1993

Hon. Barbara A. Lee

United States Magistrate-Judge

United States District Court

Southern District of New York

Foley Square

New York, NY 10007

Re: <u>Jean D. v. Cuomo</u>

90 Civ. 0861 (SS)

Your Honor:

This is a joint submission on a discovery dispute concerning one of plaintiffs' contention interrogatories. Counsel have conferred in writing and by telephone (June 24 and 29, July 7 and 13, and finally today) in an attempt to reduce the dispute and to fashion this letter.

RENNER WALKER

Case 5:16-cv-10444-JEL-EAS ECF No. 1118, PageID.27761 Filed 05/05/20 Page 6 of 8

Page 4 of 6
1993 U.S. Dist. LEXIS 9887, *7

Counsel have made much progress in excluding documents which are within **[*8]** the original wording of the request, based on an extensive list of responsive documents which reached plaintiffs' counsel July 6. Notwithstanding that progress, certain documents remain in dispute.

Meanwhile counsel continue to work on additional items from the same interrogatories, but at this time the matter presented here is the only one which we know needs to be placed before you. We are therefore submitting this issue without waiting to see whether we can resolve all the others. Proposed stipulations on some of the others are now being weighed by defendants' counsel.

Nature of the Disputed Documents

The dispute covered here concerns documents related to a Department of Justice (DoJ) investigation of Pilgrim Psychiatric Center (PPC) under the Civil Rights of Institutionalized Persons Act (CRIPA), *42 U.S.C. §§ 1997 et seq.* Under CRIPA, DoJ may sue on behalf of the United States to prevent egregious or flagrant conditions which violate the constitutional rights of persons in state institutions. Plaintiffs' counsel have secured letters DoJ sent Gov. Cuomo and Office of Mental Health (OMH) Commissioner Surles, both defendants in the **[*9]** present case, which enclose findings that PPC subjects its patients to flagrant or egregious violations of their constitutional rights. Copies are enclosed.

Plaintiffs sought information on the DoJ investigation as relevant to OMH's contention that accreditation of its hospitals by a private standard-setting body and a government body which regulates Medicaid payments is prima facie evidence of constitutionality. DoJ's findings were made at a time PPC was approved by both bodies.

OMH has released the enclosed letters to Gov. Cuomo and Dr. Surles, and the attached findings, through the state Freedom of Information Law, to another advocacy organization. However, defendants decline to produce in discovery further documents related to the investigation.

Relevant Interrogatories and Responses

> 82. Do you contend that the accreditation or certification status of MPC or PPC with the Joint Commission on Accreditation of Healthcare Organizations or the Health Care Financing Administration or any other body is relevant to whether each hospital meets its legal obligations to patients to provide access to exercise and the outdoors?
>
> Answer: Yes.
>
> 83. If your answer to the **[*10]** last question is affirmative:
> a. Please state in detail all facts, claims, contentions, and legal theories on which you rely. . . .
>
> . . .
> c. Provide copies of all communications between the United States Department of Justice and any of the defendants or their subordinates, or the New York State Attorney General or his subordinates, concerning the compliance or non-compliance of MPC or PPC with the rights enforceable through the Civil Rights of Institutionalized Persons Act. . . .
>
> Answer: a. JCAHO accreditation and HFCA certification are each prima facie evidence that a hospital meets constitutional standards of care. See *Woe v. Cuomo, 729 F.2d 96 (2d Cir. 1984)*.
>
> . . .
> c. No such documents exist with respect to MPC. Defendants object to providing copies of such documents with respect to PPC because the Justice Department's investigation into PPC is still ongoing.

Defendants' Arguments

Defendants contend that the requested communications are privileged because they were generated during an investigation conducted by DoJ pursuant to CRIPA, which is still ongoing. As the subjects of this investigation, defendants have an interest **[*11]** in maintaining the confidentiality of the investigation and in insuring the free flow of information with DoJ without fear of premature disclosure. This interest of the investigation's subjects is similar to that of DoJ, the agency conducting the investigation. That is especially true in light of Congress' expectation that a CRIPA investigation would be a cooperative process.

In addition, as to the reports of DoJ's four expert consultants (Rebecca D. Elon [geriatric consultant], Bruce Hershfield [psychiatric consultant], Richard Hussian [psychological consultant] and Miriam Kile [nursing consultant]), defendants assert the predecisional, deliberative process privilege. DoJ

shared these reports with defendants as part of the statutorily required process of conciliation and negotiation, 42 U.S.C. § 1997b)(a)(2)(b). Defendants have used these reports in internal deliberations leading up to the preparation and submission of counterproposals to DoJ's proposed settlement agreement.

Plaintiffs' Arguments and the Precise Documents Now Sought

Documents relating to DoJ's investigation will bear on the weight of the defendants' claim that their **[*12]** accreditation and certification status is prima facie evidence that their hospitals are constitutional. DoJ found unconstitutionality at the same time PPC was accredited and certified, based at least in part on the reports of DoJ's impartial experts.

The DoJ documents already in plaintiffs' hands show there is likely to be material relevant to this case in the other documents which they seek. DoJ found, among other things, an excessive number of patient injuries due to the aggressiveness of other patients, and to falls among elderly patients, and the over-use of medications (which can have serious, permanent side-effects) to control restlessness and agitation. Plaintiffs will maintain through expert testimony and the depositions of many OMH psychiatrists that permitting psychiatric patients to go outside daily reduces aggressiveness and restlessness, and is likely to strengthen bone and muscle in the elderly and reduce falls. Thus, DoJ material on these matters will bear on the harm of not permitting patients to go outdoors, a point in considerable dispute in this case.

During her deposition on June 14, 1993, OMH Deputy Commissioner Sandra Forquer indicated she has read DoJ's **[*13]** expert reports on PPC. Apparently these are among the bases of the DoJ findings of unconstitutionality. In draft direct testimony recently provided plaintiffs' counsel, Dr. Forquer indicates she will testify about PPC's accreditation by JACHO, on which defendants plan to rely as prima facie evidence of constitutionality. Fair cross-examination will be facilitated by plaintiffs' having access to the DoJ expert reports, which they expect to rebut defendants' claim of prima facie constitutionality.

Defendants concede they received from DoJ the reports of four experts, and the resumes of three of those experts. It is these documents plaintiffs now seek, along with a letter from a DoJ lawyer dated June 19, 1992, about providing these reports to OMH. Also, plaintiffs seek the following five documents from a list 51 pages long showing what OMH supplied DoJ:

> FRACTURE INCIDENTS PER 100 PATIENTS PER YEAR: 1988 THROUGH MAY, 1990 (GRAPH) PLUS TABLE INDICATING NUMBER OF INCIDENTS RESULTING IN FRACTURES; JAN. THRU MAY 1990 (BY BLDG./WARD/SHIFT) (PREPARED BY PROGRAM EVALUATION DEPT., PPC)
> Program Evaluation Report #769 (dated July 1991) - Incident Analysis for 1989 - 1991
>
> Program **[*14]** Evaluation Report #787 dated October 1991) - Analysis of Aggressive Incidents on MR Wards
> One page listing of specific incident categories May - October 1991 [responding to an inquiry about patient injuries]
> Table prepared by Program Evaluation re: [fractures and fractures resulting from altercations) (broken down by 4th Quarter 1991 and Jan. '92, Feb. '92)

Defendants have agreed to submit the expert reports and resumes, the DoJ letter and these five documents with this letter for your inspection in camera. Plaintiffs have agreed to forego seeking other documents through this interrogatory, at least pending seeing the expert reports, and not to seek proposed settlement agreements between DoJ and OMH concerning DoJ's findings of unconstititional conditions at PPC.

Interrogatory 83(c) seeks only materials exchanged between state and federal officials. The state officials are the targets of the investigation, not the investigators. Targets have no standing to assert the governmental investigative privilege. The design of the privilege is to prevent targets from having an undue advantage over the investigating government body in court, should litigation ensue, through **[*15]** early disclosure of information obtained by the investigators which is unknown to the targets.

Since the purpose of the privilege is to avoid giving the targets premature disclosure, it has no application to materials the targets already have. What DoJ has provided state officials, and what state officials have provided DoJ, is already known to the targets. Providing these documents to plaintiffs in the present case would pose no threat of harm or prejudice to the DoJ's case against state officials in court, should one ever be brought.

The general contours of DoJ's findings are public knowledge. See enclosed Newsday article, apparently published in July, 1992.

For defendants' invocation of investigative privilege to succeed, the privilege would need to be expanded well beyond its purpose and traditional application, to block appropriate discovery notwithstanding the general principal of broad federal discovery. Defendants' theory is entirely novel. Having provided its expert reports to OMH, DoJ has already given its potential adversary the benefit of what they contain. The material plaintiffs seek which was given by OMH to DoJ appears to be items produced routinely within **[*16]** OMH or compilations of information routinely tracked in its record systems.

Investigative privilege was the only objection raised by defendants within the stipulated time for them to make objections. They now attempt to raise also deliberative privilege. The defendants' argument on deliberative privilege is reports, may have stimulated deliberations within OMH. However, the documents themselves reflect absolutely nothing about those deliberations, and the expert reports do not reflect the thought processes of OMH officials, as they were written by DoJ's experts.

Further, the defendants' attempt to invoke deliberative privilege through trial counsel alone, with no showing of a weighing of the matter by the Commissioner or his high-ranking designee, is procedurally defective.

Thank you for your consideration.

Sincerely,

John A. Gresham

Senior Staff Attorney

New York Lawyers for the Public Interest

Attorneys for Plaintiffs

Dvora Wolff Rabino

Assistant Attorney General

New York State Department of Law

Attorneys for Defendants

c.c. Stephan Haimowitz, Esq.

**End of Document**