April 15, 2020                                        1

```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3

 4
                In Re   FLINT WATER CASES     Case No.  16-10444
 5

 6

 7   _____/

 8                          STATUS CONFERENCE

 9
                 BEFORE THE HONORABLE JUDITH E. LEVY
10                   UNITED STATES DISTRICT JUDGE

11                          APRIL 15, 2020

12
                      APPEARANCES IN ALPHABETICAL ORDER
13
                      Charles E. Barbieri
14                    Foster, Swift, Collins & Smith, P.C.
                      313 South Washington Square
15                    Lansing, MI 48933

16                    Frederick A. Berg
                      Butzel Long 150
17                    West Jefferson, Suite 100
                      Detroit, MI 48226
18
                      Margaret A. Bettenhausen
19                    Michigan Department of Attorney General
                      P.O. Box 30755
20                    Lansing, MI 48909

21
                      (Appearances continued on next page)
22
                      For a Certified Transcript Contact:
23                    Jeseca C. Eddington, RDR, RMR, CRR, FCRR
                      Federal Official Court Reporter
24                    United States District Court
                      200 East Liberty Street
25                    Ann Arbor, Michigan 48104
```

```
 1              James W. Burdick
                Burdick Law, P.C.
 2              1760 South Telegraph Road, Suite 300
                Bloomfield Hills, MI 48302
 3
                James M. Campbell
 4              Campbell, Campbell, Edwards & Conroy
                One Constitution Plaza, Suite 300
 5              Boston, MA 02129-2025

 6              Jason T. Cohen
                U.S. Department of Justice Civil
 7              Division Torts Branch-Environmental Tort
                Litigation
 8              175 North Street, NE
                Washington, DC 20002
 9
                Donald H. Dawson, Jr.
10              Fieger, Fieger, Kenney & Harrington, PC
                19390 West Ten Mile Road
11              Southfield, MI 48075

12              Alaina N. Devine
                Campbell Conroy & O'Neil, P.C.
13              1 Constitution Wharf, Suite 310
                Boston, MA 02129
14
                Philip A. Erickson
15              Plunkett & Cooney
                325 East Grand River Avenue, Suite 250
16              East Lansing, MI 48823

17              Nathan A. Gambill
                Michigan Department of Attorney General
18              ENRA Division
                P.O. Box 30755
19              Lansing, MI 48909

20              Deborah Greenspan, Special Master

21              David E. Hart
                Maddin Hauser Roth & Heller PC
22              28400 Northwestern Highway, Second Floor
                Southfield, MI 48034
23
                Larry R. Jensen, Jr.
24              Hall Render Killian Heath & Human PLLC
                Columbia Center, Suite 745
25              101 West Big Beaver Road
                Troy, MI 48084
```

April 15, 2020

```
 1              Theodore J. Leopold
                Cohen Milstein Sellers and Toll PLLC
 2              2925 PGA Boulevard, Suite 200
                Palm Beach Gardens, FL 33410
 3
                Wayne B. Mason
 4              Faegre, Drinker Biddle & Reath LLP
                1717 Main Street, Suite 5400
 5              Dallas, TX 75201

 6              Michael L. Pitt
                Pitt, McGehee, Palmer & Rivers, PC
 7              117 West Fourth Street, Suite 200
                Royal Oak, MI 48067
 8
                Eric Rey
 9              U.S. Department of Justice
                175 North Street, NE
10              Washington, DC 20002

11              David M. Rogers
                Campbell Conroy & O'Neil, PC
12              1 Constitution Wharf, Suite 310
                Boston, MA 02129
13
                Alexander S. Rusek
14              White Law PLLC
                2400 Science Parkway, Suite 201
15              Okemos, MI 48864

16              Hunter Shkolnik
                Napoli Shkolnik Law PLLC
17              1301 Avenue of the Americas
                10th Floor
18              New York, NY 10019

19              Susan Elizabeth Smith
                Beveridge & Diamond, PC
20              1350 I Street N.W., Suite 700
                Washington, DC 20050
21
                Corey M. Stern
22              Levy Konigsberg, LLP
                800 Third Avenue, Suite 11th Floor
23              New York, NY 10022 C

24              Craig S. Thompson
                Sullivan Ward Patton Gleeson & Felty
25              400 Galleria Officentre, Suite 500
                Southfield, MI 48034
```

April 15, 2020                                              4

```
 1                          Valdemar L. Washington
                            718 Beach Street, P.O. Box 187
 2                          Flint, MI 48501

 3                          Michael L. Williams
                            U.S. Department of Justice
 4                          175 North Street, NE
                            Washington, DC 20002
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23           To Obtain a Certified Transcript Contact:
            Jeseca C. Eddington, RDR, RMR, CRR, FCRR
24               Federal Official Court Reporter
                 United States District Court
25      200 East Liberty Street - Ann Arbor, Michigan 48104
```

April 15, 2020

1

**I N D E X**

2  MISCELLANY

3          Proceedings....................................5
           Certificate....................................44
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|   |   |
|---|---|
| 1 | **P R O C E E D I N G S** |
| 2 | THE CLERK:  Now calling case number 16-10444, the |
| 3 | Flint Water cases. |
| 4 | THE COURT:  Good.  Thank you, Abigail.  And in |
| 5 | addition to 16-10444, we have essentially all of the pending |
| 6 | Flint Water cases.  In addition to that, we also have present |
| 7 | with us today counsel from the Department of Justice on the |
| 8 | Meeks federal tort claims case that they have not yet answered |
| 9 | in but there is -- or filed a motion to dismiss.  But there is |
| 10 | a pending motion and an issue related to that case on the |
| 11 | agenda today.  So I appreciate their presence. |
| 12 | So first, I wanted to welcome Judge Farah and his |
| 13 | staff and go through just a few sort of protocols for how |
| 14 | we're going to try to conduct this meeting or this hearing. |
| 15 | But before I do that, I want to welcome everyone to |
| 16 | the conference call, including anyone who's on by either video |
| 17 | teleconference or telephone.  And I sincerely hope that all of |
| 18 | you are able to stay home and stay safe and that you and |
| 19 | everyone you love is healthy and doing okay. |
| 20 | So I know many of us now know people who have been |
| 21 | sickened by COVID-19.  Some have died.  And so it is an |
| 22 | especially difficult time for all of us.  And so I appreciate |
| 23 | that on this case we're continuing to do everything we can to |
| 24 | move the case forward -- cases forward and in light of all |
| 25 | that's going on around us. |

April 15, 2020

```
 1              So we are a court of public record.  And it's very

 2    important to me, and it has been since the beginning of my

 3    judgeship, to ensure that the courthouse doors are open to

 4    anyone who has or believes they may have an interest in a

 5    particular proceeding.  And that certainly is at its height in

 6    criminal matters about whether our constitutional rights at

 7    issue when the door is closed.

 8              But it's also an issue especially in a case like this

 9    where there are a great many people who either are involved as

10    plaintiffs or defendants.  But also there's some interest

11    beyond the jurisdiction of Flint in this case.

12              So to that end, that's why I set up the additional

13    conference call feature so that anyone who has an interest in

14    this litigation can be present.  We won't know for sure if it

15    all works and until we conclude the hearing and receive all

16    the criticism about what worked or what didn't work.  That's

17    usually what we hear about.  We rarely hear when something

18    works out.  That's okay.  I don't need to hear that.

19              But from my perspective, if there's a possibility

20    that doing some of this remote work, which will certainly end

21    when we're able to end it, permits greater access to the

22    court, then I'm all for it.  Because the drive from Flint to

23    Ann Arbor is a long one.  I'm so thankful that Judge Farah and

24    his law clerk have made that drive.  But it's not the easiest.

25              So if this permits people in Flint to be able to
```

```
 1    listen in or participate in a more fulsome way, then I hope we
 2    can take advantage of that.
 3           Today's agenda -- and we'll get to appearances in
 4    just a minute -- contains matters that are almost exclusively
 5    related to case management.  We don't have substantive motions
 6    about the law that governs the underlying claims in this case
 7    to be addressed today.
 8           But in a case like this, case management can have a
 9    significant impact on the equities in the case and on the
10    outcome of a case.  So I appreciate your presence today on the
11    hearing and your patience as we try to make sure that the
12    technology works.
13           Before we have appearances, I want to remind
14    everybody to mute your phone.  My court reporter Jeseca
15    Eddington is present.  She's taking down the record.  And we
16    ask that everyone who possibly can have their full name
17    identified on their device that they're connecting with.
18           And I see that that has generally worked.  But not --
19    it's not 100 percent.  And that's understandable.  So please
20    identify yourself when you speak.  I think many -- most of you
21    have your full name there.  And when you speak, Jeseca will be
22    able to tell that it's you.  So I just ask that you do your
23    best in that regard.
24           So why don't we start with appearances for the
25    record.  And what I'll do is call out who I believe is here by
```

1    video Zoom link.  And then I have a list of people who I

2    believe are on the telephone who wish to make appearances as

3    well.  Those appearances have been made by e-mail and we'll

4    convey that to Jeseca so that the record reflects your

5    presence.

6            But I'll start with the LAN defendants.  I believe

7    that by video -- and please just say yes if I've got this

8    right.  We have Mr. Mason.  And what you have to do is press

9    the space bar to unmute.  It's not working.  I'll unmute you.

10   Go ahead.

11           MR. MASON:  Yes, Your Honor.  This is Wayne.  I got

12   kicked off.  I'm sorry.

13           THE COURT:  Oh, okay.  Feel free -- if something like

14   that is happening, when you get back on, will you try to let

15   us know.  You can send a message, a chat.  But you could also

16   just -- you can also raise your hand by Zoom technology.  In

17   some way, try to let me know that we're having a problem.  But

18   thank you, Mr. Mason.

19           And Mr. Erickson.  You're on?  Pretty sure I've

20   already heard -- there's Mr. Erickson.  Can't hear you, Mr.

21   Erickson.  And you're not muted.  Let's see.  Oh, I see, Ms.

22   Smith, what you're talking about with the pin.  Oh, well.  Mr.

23   Erickson's on.  We can see him.  Mr. Campbell for VNA.

24           MR. CAMPBELL:  Yes, Your Honor, I'm here.

25           THE COURT:  Thank you.  Mr. McDonald for McLaren?

```
 1            MS. SMITH:  Mr. McDonald is unable to attend the
 2   status conference.  I'm here on behalf of McLaren.  This is
 3   Susan Smith counsel for McLaren.
 4            And while I have you, let me indicate that Mr.
 5   Erickson is using the chat function to indicate that he's
 6   present and not on mute.  So the issue with being able to hear
 7   his audio must be on the Court's end.
 8            THE COURT:  Okay.  And I am -- yeah.  I'm very
 9   thankful that Josh Matta, the Court's IT director, is on this
10   with us.  So I'm going to see whether he can help sort that
11   out.
12            So for the city defendants, Mr. Berg, are you on?
13            MR. BERG:  Yes, Your Honor.  Rick Berg here for the
14   city defendants.
15            THE COURT:  Okay.  And is Mr. Kim also on or he's on
16   by telephone?  Okay.  Is Alexander Rusek, are you on?
17            MR. RUSEK:  Alexander Rusek.  Good afternoon, Your
18   Honor.  I'm appearing for Mr. Croft and then also for the
19   other individual city defendants today.  And if you hear horns
20   in the background, I live in downtown Lansing and there's a
21   protest going on outside my front window right now.  So I'll
22   be on mute as much as possible.
23            THE COURT:  Okay.  I read about that protest.
24            So for Hurley Hospital, is Mr. Jensen on?
25            MR. JENSEN:  Yes, Your Honor.  Larry Jensen on behalf
```

```
 1    of Hurley defendants.

 2           THE COURT:  Thank you.  For MDEQ defendants, Mr.

 3    Barbieri.

 4           MR. BARBIERI:  Yes, Your Honor.  Charles Barbieri for

 5    MDEQ defendants Patrick Cook and Michael Prysby along with the

 6    other MDEQ defendants.

 7           THE COURT:  Okay.  And unless I get it wrong, feel

 8    free to just say yes.  So it's Mr. Thompson on for Rowe?

 9           MR. THOMPSON:  Yes.

10           THE COURT:  Thank you.  For the State of Michigan,

11    Ms. Bettenhausen?

12           MR. BETTENHAUSEN:  Yes, Your Honor.

13           THE COURT:  And Mr. Gambill?

14           MR. GAMBILL:  Yes, I'm here, Your Honor.

15           THE COURT:  Good.  And co-liaison and individual

16    plaintiffs' counsel, Mr. Shkolnik.

17           MR. SHKOLNIK:  Good afternoon, Your Honor.

18           THE COURT:  Hi.  Mr. Stern.

19           MR. STERN:  Yes, Your Honor.

20           THE COURT:  Good.  And Mr. Dawson.

21           MR. DAWSON:  Yes, Your Honor.

22           THE COURT:  Great.  And you're on for the Brown

23    cases?

24           MR. DAWSON:  That is correct, Your Honor.

25           THE COURT:  And Mr. Washington, are you with us?
```

```
 1              MR. WASHINGTON:  Yes, I am, Judge.
 2              THE COURT:  Great.  Thank you.  Welcome.
 3              MR. WASHINGTON:  Thank you.
 4              THE COURT:  Mr. Washington, could you name your
 5     client, please?
 6              MR. WASHINGTON:  I have the Anderson plaintiffs and I
 7     have the Joel Lee as my clients, Judge, in this litigation.
 8              THE COURT:  Good.  And the interim class counsel, Mr.
 9     Leopold.
10              MR. LEOPOLD:  Mr. Leopold is here, Your Honor.
11              THE COURT:  And Mr. Pitt.
12              MR. PITT:  Present, Your Honor.  Good afternoon.
13              THE COURT:  Hi.  And for the EPA, Mr. Williams.
14              MR. WILLIAMS:  Yes, Your Honor.
15              THE COURT:  And I'd like to note that you are the
16     second Mr. Michael Williams on this case.  We have so many
17     lawyers --
18              MR. WILLIAMS:  I was hoping that I chose DOJ Williams
19     to differentiate us, but it's a common name.
20              THE COURT:  And then I think we're also joined by our
21     Special Master Deborah Greenspan.
22              SPECIAL MASTER GREENSPAN:  Yes, Your Honor.
23              THE COURT:  Thank you.  And of course we have Judge
24     Farah and his law clerk Samantha Weinstein.  And my law clerk
25     Abigail.  Another law clerk has assisted in having the folks
```

1    on the telephone join us.

2           On the telephone I have -- just one second.  On the

3    telephone I have that Alaina Devine, David Rogers, Jason

4    Cohen, and Mr. Burdick are present.  And then I believe Mr.

5    Hart, are you also on the video?

6           MR. HART:  Yes, Your Honor.  David Hart for the

7    Guertin plaintiffs.

8           THE COURT:  Good.  And there are at least five more

9    people on the telephone who we're now aware of but I don't

10   have all of your names.  So we'll make sure that the record

11   reflects everyone we know is present.

12          So I'd like to begin by asking Judge Farah if he

13   would like to talk about any issues involved in the state

14   court litigation.

15          THE HONORABLE JUDGE FARAH:  Yes.  Thank you, Judge.

16          I would like to just address the few pending motions

17   that are in front of this Court.  Not substantively, but

18   rather we listed responses from the lawyers involved as to the

19   process and procedure of handling the pending motions, many

20   left over from prior judicial involvement.

21          We have prioritized the disqualification motion

22   brought and joined in to have the Attorney General's office

23   disqualified in all matters.  That motion will be decided

24   first after receiving your input.  I've determined that motion

25   will be decided on papers.  There will not be an evidentiary

 1    hearing nor will there be oral arguments.

 2            The reasoning on that is, one, we have a hundred

 3    pages of briefing or more affidavits, citations galore.  And

 4    secondarily, we don't know when we'd be able to have a live

 5    evidentiary hearing with the COVID-19 situation.  Rather than

 6    hold things up, I think we need to get that one decided.  We

 7    will decide it on papers and we are shooting for May the 6th

 8    for that decision to come out.

 9            I'm bracketing that on the front end.  On the back

10    end is the motion for a change of venue.  That will be decided

11    most likely down the road, if at all.

12            In between, however, will be a series of motions for

13    reconsideration on various orders previously entered by Judge

14    Yuille.  The court will issue an order emanating from today's

15    conference that will embrace all these various processes on

16    these various motions.  And in that order most likely I will

17    direct under our court rule that we have responses to the

18    motion for reconsideration.

19            Other motions on our list will be in between those

20    parameters and you'll get an order reflective of everything

21    I've said by the end of this week by e-mail.  Thank you, Judge

22    Levy.

23            THE COURT:  Great.  Thank you, very much.  And I

24    can't thank you enough for being present.  And also for

25    inviting me to participate last month, which feels like a

1    lifetime ago, by telephone in your hearing that you had to

2    begin to schedule some of this.  Or I guess it was in

3    chambers.  "In chambers" meeting.  So thank you.

4           The next issue on the discovery coordination was

5    brought to my attention by co-liaison counsel and the LAN

6    defendants.  And it was a request to have some further

7    discussion about coordination of discovery between -- let's

8    see.

9           INFORMATION TECHNOLOGIST MATTA:  Sorry, Judge.  We

10   had some feedback.  We got Mr. Erickson back online.

11          THE COURT:  Thank you, Josh.

12          INFORMATION TECHNOLOGIST MATTA:  No problem.

13          THE COURT:  I just received a message from Jason

14   Cohen that Mr. Eric Rey and Mr. Cohen have joined us on behalf

15   of the United States via Zoom.  But that Mr. Williams will

16   continue to speak on behalf of the Federal Government.  That's

17   just fine.  Thank you Mr. Rey, R-E-Y, and Mr. Cohen,

18   C-O-H-E-N.

19          So it was brought to my attention by co-liaison

20   counsel and LAN defendants that they wish to have some further

21   discussion about coordinating the discovery and the EPA's

22   involvement in depositions.

23          So does someone want to identify the issue for

24   co-liaison counsel first?  And then I'll turn to the LAN

25   defendants.  And then Mr. Williams can respond.

1           MR. STERN:  Your Honor, this is Corey Stern.  I was

2     one of the individuals who raised this issue.

3           The Meeks case was filed on November 13th, 2019.  And

4     it's been, you know, close to six months since it's been

5     filed.  And only recently I assume a request was made for

6     underlying documents associated with those depositions.  And

7     it was never made to me as counsel for Meeks.  I just heard it

8     in the, you know, the preconference meeting that we had.

9           I believe co-liaison counsel for Judge Parker in her

10    FTCA cases are Michael Pitt and Paul Napoli.  It's my

11    understanding that only Monday was there a conference with

12    Judge Parker to discuss the viability and appropriateness of

13    participation in the depositions that are taking place before

14    this Court or in conjunction with this Court's CMO.

15          My understanding about the entry of complimentary

16    case management orders starting back with Judge Yuille a year

17    or year and a half ago, which at that time the parties to this

18    case I believe attempted to get Judge Parker to join with some

19    pushback by the EPA from what I understand.  And so it's been

20    -- you know, there's been a number of depositions that have

21    taken place not just of plaintiffs but of defendants.

22          And Mr. Pitt respectfully opposes the consolidation

23    of the Meeks case with the Walters case as well as with any

24    other FDCA cases with the Walters case.  And the EPA has never

25    once asked me as counsel for the plaintiff in Meeks as far

1   back as November despite the public nature of this Court's

2   case management order that attempts at least to coordinate

3   discovery for every litigant so that depositions won't have to

4   take place twice such that I genuinely believe regardless of

5   what this Court does.

6           Whether this Court consolidates Meeks with Walters,

7   keeps Meeks but doesn't consolidate it with Walters, sends

8   Meeks to Judge Parker to be consolidated with the FDCA cases.

9   Or maybe more drastically bring the FDCA cases over to, you

10  know, be under Your Honor.

11          The way this is heading right now with the EPA is

12  that there will likely be duplicate depositions that are going

13  to be required because they are not participating in the

14  depositions as they're moving forward.  And so there was a

15  deposition very recently of an employee of the State of

16  Michigan, a former employee of the State of Michigan.

17          And a week in advance of that deposition I wrote to

18  Mr. Williams.  I wrote to Mr. Rey.  I wrote to Mr. Cohen.  And

19  I said to them and I copied the entire executive committee for

20  the defendants as well as interim lead counsel for the

21  putative class and I suggested we have a meet and confer to

22  discuss an allocation of time for the EPA because that's been

23  such a hot issue before Your Honor.

24          I invited the EPA to, A, let us know if it was

25  intending to attend that deposition.  And then B what its

1    availability would be for discussion about an allocation of

2    time.  And they responded, the EPA, you know, respectfully

3    that they had no intention of participating in that

4    deposition.

5          During the pendency -- during that deposition, the

6    VNA attorneys led that deposition because they noticed it.

7    And then I followed the VNA defendants.  And the testimony

8    included some damning statements about the EPA's role in this

9    litigation.

10          And if I was counsel for the EPA, I would have wanted

11   to be there to follow-up, to ask my own questions, to figure

12   out, you know, the background and foundational basis for this

13   witness's testimony regarding EPA.  But instead the EPA wasn't

14   present despite me letting them know that I thought they ought

15   to be and inviting them to be and offering to discuss the time

16   allocations.

17          So earlier in the in conference meeting, which

18   obviously wasn't on the record, the two issues that I believe

19   the EPA have most glaringly with participation at this point

20   is, one, they believe they don't have documents.

21          As far as I know, not until Monday was there a

22   request made for those documents from Mr. Pitt who had no

23   interest in these cases being consolidated with Walters, and

24   from Mr. Napoli.  And two, that if this case is transferred to

25   Your Honor, the EPA intends to file a motion to dismiss.

```
 1            The reality is is I imagine that the EPA's going to
 2    file the exact same motion to dismiss regardless of who the
 3    judge is on the case because I don't know why which judge is
 4    assigned to a case will determine whether a motion to dismiss
 5    would be filed.  The reason a motion to dismiss would be filed
 6    would be because there's something about this case that they
 7    believe has not been pled appropriately irrespective of Judge
 8    Parker's order in the other FDCA cases.
 9            So I understand it's not a perfect situation for the
10    EPA.  I'd be willing if Mr. Pitt and Napoli can't do it or the
11    EPA feel that it's not being done fast enough, I'd be willing
12    to give them the documents that they need to participate in
13    these depositions.  And I would expect that even those who
14    oppose the consolidation would be very in favor of their
15    participation so that they are not required to take the same
16    depositions twice as well.
17            It's not as if I'm the only one that has, you know,
18    issues with the EPA that are being discussed during these
19    depositions.  Mr. Leopold and Mr. Pitt for the putative class
20    also have EPA claims that are before Judge Parker.  But why
21    they would want to take depositions twice doesn't make any
22    sense to me.
23            So I'm not trying to take anyone's rights away or
24    hamstring them with regard to what's available to them for the
25    deposition, but there's got to be a way for the EPA to
```

April 15, 2020

1    participate in these depositions.

2            THE COURT:  And Mr. Stern, I'll turn to LAN and then

3    give Mr. Williams a chance to respond.  But what we know from

4    earlier today we had a what I call an in chambers off the

5    record just work session on this case just trying to sort out

6    some of these issues.  And Mr. Williams told us that without

7    the documents, he doesn't feel prepared.  And of course I

8    don't want a situation going on where people can sort of

9    willfully not request documents and so on.  I'm not suggesting

10   that happened at all.

11           But we want all of these cases to proceed as

12   efficiently and effectively as they can.

13           But what do you suggest doing about that, Mr. Stern?

14   The fact is he didn't have the documents.  And he also

15   indicated that perhaps they don't even want to take Valerie

16   Brader -- is that who -- that's who it was, Valerie Brader?

17           MR. STERN:  Yes, Your Honor.

18           THE COURT:  That they don't even want to take her

19   deposition.

20           MR. STERN:  I have no issue if -- I mean, in the

21   correspondence that went back and forth between the EPA and me

22   during the period prior to and subsequent to Ms. Brader's

23   deposition, I didn't suggest that they necessarily have to

24   take it again.  I just suggested that in light of having been

25   offered to sit in the deposition, to participate in the

1    deposition.

2           You know, when I sent the first e-mail saying, hey,

3    we'd like to know if you're participating and our group would

4    be willing to meet and confer so that you could have adequate

5    time to participate during the deposition, not once did

6    anybody respond to me and say, hey, we'd really like to

7    participate but we don't have the documents and so we can't do

8    it because we don't have the documents.

9           That was not the basis.  Had that been the basis I

10   would have had my IT people who run relativity do whatever

11   they could as quickly as they could to get the documents that

12   were acquired by the EPA.

13          And in fact if in November of 2019 when this case was

14   originally assigned to Your Honor the EPA had looked at the

15   docket and seen the consolidation, the discovery order, which

16   they knew about because it had been raised prior to the filing

17   of my case which ended up before Your Honor.  They had known

18   about it because Judge Parker at a minimum was considering

19   entering an order that was similar to the coordination order

20   that Judge Yuille ultimately had entered, I would have had no

21   problem getting them any documents whatsoever.  And that to me

22   is not a reason not to participate because those documents can

23   easily be transmitted to them.

24          THE COURT:  Okay.  And for LAN.

25          MR. ERICKSON:  Yes, Your Honor.  Can you hear me?

```
 1            THE COURT:  I can.
 2            MR. ERICKSON:  So our -- we put the issue on the
 3     agenda also.  Our concern was just the same general concern
 4     that we've been raising going back several months, probably
 5     five or six months.  And that is simply that the purpose of
 6     the discovery coordination order was to seek to ensure as much
 7     as possible the depositions be taken only once.
 8            And for many months the answer was, well, we can't do
 9     anything with the EPA cases right now because the motion to
10     dismiss is pending.  And then that decision was made and the
11     case was still there.  And then I heard that there was a
12     discovery coordination order entered in those cases.
13            And I have not seen that order myself.  So I don't
14     know the details.  But I assume it's a complimentary order
15     like what was entered in state court.  And then I didn't
16     anybody participating from the EPA at any of the depositions
17     and thought that it was something that should be on the agenda
18     and discussed.
19            And so my concern is just a generalized concern that
20     we, like all the parties, don't want our witnesses to be
21     deposed more than once.  And we don't want to have to take --
22     you know, we don't want to have to come back for other
23     depositions more than once.  And I think Mr. Stern's example
24     in the Brader example is probably a good one to lead the
25     discussion.
```

```
 1              THE COURT:  Okay.  Thank you.  One of the challenges
 2    here is that I have not made a decision on whether to keep the
 3    Meeks case and combine it with Walters or send it to Judge
 4    Parker.  The one thing that I don't have any authority to do
 5    and would not and just simply cannot do is bring Judge
 6    Parker's cases into -- onto my docket.
 7              So Mr. Williams, do you want to respond?  And I have
 8    really no authority over the United States in this case at
 9    this time.  There's not either a motion to dismiss pending or
10    an answer in the case.
11              But I think -- you are an officer of the court and I
12    think it's in that spirit that Mr. Stern and Mr. Erickson are
13    to just simply make progress in this litigation.  And you are
14    late to the game.  You were sued later and so on.  And the
15    Meeks case was only filed in November.
16              So can you -- I guess what I'm just looking for is a
17    representation that once you get these documents, if you're in
18    the litigation in my court, that you'll be doing everything
19    you can to get up to speed so that you will not duplicate
20    depositions.
21              These individuals, defendants, plaintiffs have been
22    in this litigation a very long time.  Everyone wants to move
23    on with their lives and not spend time preparing and sitting
24    in depositions over and over and over that can be avoided.
25              MR. WILLIAMS:  I'm happy to respond to several points
```

1   that were raised here, Your Honor.  I think I'm no longer on

2   mute.

3           The first point asking for representation from DOJ,

4   the answer is yes.  We fully expect to have discovery

5   coordinated between the different judges who have docketed

6   cases.  So we have a complimentary discovery coordination

7   order before Judge Parker.  It was largely inspired or copied

8   by your prior order.  It's entirely consistent with it.  I

9   think her order is consistent with yours.

10          To the extent as we pursue common discovery in these

11  dockets, the FDCA docket, your civil rights docket, to the

12  extent we have disputes about depositions or documents, I

13  expect and happy to be available to resolve any disputes that

14  might come up.  So the representation is definitely there.

15          It's also consistent with the language of the

16  discovery coordination order entered by Judge Parker on March

17  3, 2020, ECF 112.  We're not looking to have anyone sit more

18  than once for depositions.  It's one of the highlights of the

19  discovery coordination protocol orders.  Not looking to have

20  people be unduly burdened by discovery.  The opposite.

21          We're looking to be efficient and to coordinate and

22  the complimentary discovery coordination protocol orders are

23  the cure for making sure that that happens.

24          Several other points were raised.  I'd like to

25  comment, if I may.  I think we're in agreement that the

1        consolidation of Meeks is a separate issue.  It's not a

2        discovery coordination issue.

3              Apart from that we have discovery coordination issues

4        coming up here on a couple of fronts.  First one is about

5        whether or not DOJ should be attending depositions of third

6        parties or parties who have not yet -- defendants who have not

7        yet answered under your case management provision.  So this

8        was not addressed for the first time in our telephonic hearing

9        before Judge Parker on Monday.  It was first addressed at our

10       November 15th, 2019, case management conference where all of

11       the plaintiff's counsel MDOJ were present including a lawyer

12       from Mr. Stern's firm and we talked about a variety of issues

13       about what we need to do to get the case rolling on the merits

14       front.

15             One of those items was developing a mutually

16       agreeable discovery coordination protocol and a mutually

17       agreeable case management order that has a bellwether process.

18       Between November 15th and close to New Year's 2019 we

19       negotiated both documents.  Discovery coordination protocol

20       and case management order.

21             They were submitted to Judge Parker as agreed orders

22       all counsel of record January 15th.  Both orders were entered

23       by Judge Parker on March 2, 2020.  So the specific issue of

24       when EPA would participate in depositions or other discovery

25       in the cases before Your Honor is specifically addressed in

1    the order.

2            The plan was, in short, to have plaintiff's counsel

3    give us what we're calling here I think all of the documents

4    which includes -- it's specified in the order.   Interrogatory

5    answers from transcript production yields.   Also deposition

6    transcripts.   All of the materials.

7            So we've been waiting pretty patiently for all of

8    those materials to be compiled.   We've conferred about it

9    prior to the hearing before Judge Parker on Monday.   We're

10   told that plaintiffs' liaison counsel for the FDCA cases has a

11   contractor who's doing the work to compile all the materials.

12           For me, that's acceptable.   There's a process in

13   place.   We've had some COVID limitations in March and April

14   obviously.   So we reported to Judge Parker on Monday a plan is

15   in place to get those materials to us.   And when we have them

16   we'll need some time to review them, but we certainly plan to

17   review them.   And then to the extent necessary plan to

18   participate in other discovery and depositions.

19           It may very well be our team does not need to ask for

20   additional deposition time of anyone who's been deposed

21   before, especially for the individual defendants.   Footnoting,

22   putting aside the plaintiffs, I know that you and Mr. Rey

23   talked about plaintiffs' specific jurisdictional issues.   So

24   maybe we should leave that there.   I think pertains to the

25   Meeks consolidation issue.

```
 1              But with respect to the parties who have not yet
 2    answered that discovery, we'll even make an assessment if
 3    necessary.  That phenomenon of our requesting leave to
 4    re-depose certain people for a certain amount of time, it's
 5    specifically addressed in our discovery coordination protocol.
 6              This was negotiation that happened Christmas to New
 7    Year's.  Mr. Stern was invited.  He chose not to attend.
 8    Okay.  We agreed to it by all of the lawyers in those cases.
 9    Napoli, Shkolnik, Michael Pitt, everyone else.  It's page 11
10    section 2GA.
11              We have -- once we have a certification -- that's the
12    term we use.  Certification that you've given us all of the
13    documents.  That term meaning is pretty broad.  It actually is
14    inspired by language you had used in your prior discovery
15    coordination protocol or perhaps Judge Yuille.
16              Once we have those names, we'll make an assessment if
17    we do need to participate in other depositions in the docket
18    before Your Honor.
19              Secondly --
20              MR. MASON:  Can I address --
21              MR. WILLIAMS:  -- [Inaudible] EPA depositions.  We
22    have dates on the calendar.  We've negotiated those with
23    counsel who requested those depositions.  I don't mean to
24    speak out of turn.  Is it Mr. Mason?
25              MR. MASON:  I'd like to speak if I could.  I didn't
```

1    mean to interrupt you though.  I'm sorry.

2              THE COURT:  Go ahead, Mr. Mason.

3              MR. MASON:  So let me say I've known Mike Williams

4    for years and I have great respect for him.  So this is not --

5    my comments are not directed at him as an individual, but just

6    the status of where we sit.

7              And my only concern is the concern of the

8    coordination and not doing this more than once.  But this

9    issue of documents, the EPA has been involved in this and

10   aware of the litigation for many years, Your Honor.

11             And the fact is to now suggest that they now need

12   documents when taking no effort to be up to speed knowing that

13   this day and these days coming and the need to coordinate is

14   coming, I just -- I struggle with this because the reality is

15   it's not like they're brand new to the case and new and need

16   something.

17             They've been aware of this and have based on my view

18   have chosen to put their head in the sand a little bit about

19   it instead of being proactive and get what they need and know

20   that they need it so that they can participate like everybody

21   else.  And so strategically if that's been the case, it's

22   water under the bridge.  But we need to get on with it.  They

23   need to get what they need and participate so that we have no

24   question about needing to ask for more or re-deposing people.

25             THE COURT:  And Mr. Mason, what do you suggest that I

1    do?  What I'm interested in seeing is as long as I have

2    Meeks -- and I'll sort out a decision soon on that -- I'd like

3    to know when that certification is going to be provided that

4    all of the documents have been provided to EPA.  And I guess

5    that's not a question for you, Mr. Mason.  It would be for Mr.

6    Stern or -- who is it who's supposed to --

7                 MR. STERN:  Your Honor, this is Corey Stern.  First

8    of all, it's supposed to be Mr. Pitt and Mr. Napoli who are

9    providing the documents.

10                Number two, of course I was invited to conferences

11   and meetings about discovery before Judge Parker.  But I

12   didn't have a case before Judge Parker.  And a lot's been made

13   about how long I waited to file FDCA case against the EPA.

14   I'm not sure why the EPA waited from November until late

15   February or March to file a motion to consolidate.  And so at

16   every meeting I ever participated in, I repeatedly said --

17                THE COURT:  I don't care about any of that actually.

18   I don't care about any of that.  It doesn't even matter to me.

19                MR. STERN:  So it's Mr. Pitt and Mr. Shkolnik -- Mr.

20   Pitt and Mr. Napoli who were supposed to certify to the EPA

21   the documents had been produced.  And that's under the

22   authority of Judge Parker.

23                THE COURT:  Okay.  So let me ask Mr. Pitt.  Mr. Pitt

24   --

25                MR. PITT:  Yes, Your Honor.

```
 1              THE COURT:  When will you be able to provide that
 2   certification?
 3              MR. PITT:  We should be able to do it early next
 4   week.  We have a vendor that has all of the discovery
 5   documents on a document platform.  We have been told that with
 6   proper security and firewalls established, the DOJ will be
 7   given an access code to that database that will exclude
 8   plaintiffs' work product, of course, so that they would have
 9   access to all of the documents that we have assembled over the
10   last three years all in one place and they would have, you
11   know, word search ability.
12              It would be user friendly to the nth degree and they
13   would have full access to it.  And we're in contact with our
14   vendor today just to find out where we're at.  And I was told
15   by the end of the week, early next week all the firewall
16   safeguards will be put in place.  And we can just e-mail to
17   Mr. Williams, Mr. Rey, and Mr. Cohen the access code and they
18   will then have all of the documents that we have.
19              THE COURT:  Okay.  Thank you.  So Mr. Williams,
20   knowing that, I'm not very interested in reviewing a lot of
21   history of who attended what and when things happened that
22   don't relate to what we're trying to sort out.  Not that you
23   were going to do that, but I'm just saying that for everybody.
24              Knowing that you'll have the documents by the end of
25   next week, do you anticipate being able to get started
```

1    attending depositions or waiving your presence?  You don't

2    have to take anyone's deposition or observe a deposition if

3    you don't want to.

4         MR. WILLIAMS:  Happy to respond, Your Honor.  So I

5    haven't seen the materials yet.  So it's a black box to a

6    certain degree.  I'm very interested in seeing them.

7    [Inaudible] initial assessment I think and relatively quickly.

8         I think there is one more point that I think is very

9    relevant to what you're focusing on now.  And the information

10   --

11        THE COURT:  Mr. Williams, sometimes your voice is

12   going out.  It's a little bit in and out.  So here's a

13   solution --

14        MR. WILLIAMS:  Is this any better if I move my

15   headset?

16        THE COURT:  I think it might be.  But can you also

17   try to speak a little slower?  Because when you're going out,

18   I have a feeling my court reporter can start to figure out

19   what you're saying if you go a little slower.

20        MR. WILLIAMS:  Okay.  Thank you, your Honor.  I think

21   I talked about the first part of that how we're [Inaudible]

22   interested in -- maybe I'll try to ditch the headset.

23        THE COURT:  Yeah.  That might be necessary.

24        MR. WILLIAMS:  Is that any better, Your Honor?  It is

25   better.

1          THE COURT:  Good.

2          MR. WILLIAMS:  So on the first part we're interested

3    in seeing the documents, the written discovery depositions.

4    We'll assess it as quickly as practicable.  We don't know the

5    scope of it.

6          The second point I think is what we're considering

7    here is in part based on what Mr. Mason is talking about.  The

8    EPA depositions, we have offered a date [Inaudible] rule.

9    Specifically we are familiar with EPA's documents.  We have

10   been doing this for some time.  We're not seeking to delay

11   things in any way.  We have dates -- we had dates on the

12   calendar in April through July for 10 EPA depositions.

13         Sorry.  Have I lost you?

14         THE COURT:  No.  You're still going in and out a

15   little bit.  It's okay.  Just a minute.

16         MR. WILLIAMS:  So my point is, we have scheduled 10

17   EPA depositions.  We're not looking to slow things down at

18   all.  We had to navigate COVID concerns in April for one

19   witness.  She was rescheduled for June or July.

20         But on the state's documents, for example, the

21   discovery responses, we've never received them.  And we raised

22   it in conference November 15th.  It's taken some time.  It

23   hasn't happened yet.  It sounds like it's going to be

24   happening soon.  We're very interested.  Not looking to delay.

25   And as to [Inaudible] those are my answers, Your Honor.

```
1              THE COURT:  Thank you.  I think it's the best we can
2      do at this point -- Mr. Williams, are you on --
3              MR. WILLIAMS:  I'm not hearing you, Your Honor.
4              THE COURT:  Are you on by telephone and --
5              MR. WILLIAMS:  No, Your Honor.  This is purely on my
6      DOJ laptop.  I'm not currently on the phone.
7              THE COURT:  Okay.  All right.  Thank you.  I'm
8      hearing feedback.  Unless Mr. Stern, Mr. Mason, Mr. Erickson,
9      whoever has spoken has a specific proposal that I can take
10     into consideration, I think the issue has been laid out for
11     what the concern is.  Mr. Williams has heard it.  He's
12     responded.  And it's my inclination that we move on from
13     there.
14             But Mr. Stern, do you have anything further on this?
15             MR. STERN:  Only that, you know, within a few days I
16     think of either filing the motion to consolidate or Your Honor
17     hearing the motion, the EPA did, in fact, file notices of
18     nonparty fault that include many of the defendants that are
19     before Your Honor.
20             And so it's not just a matter of nonparties who have
21     not yet answered.  I mean, there's just -- you know, it's fine
22     with me.  It doesn't matter to me.  But I think the option
23     should be available.  And I think if the opportunity to depose
24     some of these folks isn't taken for whatever reason, it should
25     at least be considered down the road at a point in time where
```

1    the EPA moves to re-depose individuals.

2            THE COURT:  Okay.  Well, a record has been made now

3    of the concern and I think we should move on.

4            MS. SMITH:  Your Honor?

5            THE COURT:  Yes.

6            MS. SMITH:  I'm sorry.  This is Susan Smith.  I

7    simply want to flag a concern.

8            Early on when Your Honor issued an order requiring

9    counsel to register on your docket to ensure we all were

10   notified and events were occurring, having now heard what's

11   happening with Judge Parker's docket, I'm interested in

12   knowing if there is a mechanism by which lawyers for parties

13   who were made named in this nonparty at fault but are not

14   litigants in Judge Parker's cases can be apprised of what's

15   occurring on that docket other than [Inaudible].

16           For example, if there are depositions to be noted in

17   the cases before Judge Parker, how is it that -- is there a

18   communication tool that we have that will inform everybody

19   else what's occurring so we can opt in to participate if

20   needed?

21           THE COURT:  That's a very good question.  And I would

22   recommend to the parties that the case management order before

23   Judge Parker, that the parties suggest implementing such a

24   protocol.  There's probably no authority that I have to do

25   that, although I can communicate the request to Judge Parker

1   and brainstorm some ideas for it.

2          MS. SMITH:  I'm concerned if they proceed with

3   depositions that they view as relevant only to their

4   litigation and the rest of us aren't aware of it, that that

5   may then raise the need for duplication.

6          MR. STERN:  So the one --

7          MS. SMITH:  I haven't seen the [Inaudible] entered in

8   the Parker cases so I don't know that it calls for that type

9   of mechanism.

10          MR. STERN:  This is for the court reporter.  This is

11   Corey Stern.

12          So I was ordered -- I'm not sure how.  But I was

13   ordered by Judge Parker to make an appearance in Meeks -- I'm

14   sorry.  In the consolidated FDCA cases during the pendency of

15   one of the motions that was filed.  And as a result of my

16   appearance on behalf of an interested party or the nonparty, I

17   have begun getting pleadings from the FDCA cases.

18          And so it may not be the most efficient thing for

19   anybody to do.  But if you file an entry of appearance on

20   behalf of an interested party in the *Burgess FDCA

21   consolidated cases, I believe all pleadings are being entered

22   on that docket.  Whether notices of depositions are being

23   filed on the docket, I haven't seen any.  And typically

24   they're not.  So it does raise a concern involving that.

25          But perhaps the parties who are all on this call

1    anyway can agree that any time a noticed deposition take

2    place, they will file it on the docket for the benefit of all

3    of us who are presently nonparties to that litigation.  That

4    may solve that problem.

5            MS. SMITH:  Well, I --

6            THE COURT:  You know I'm a little concerned that I

7    think the Court may automatically strike notices of discovery.

8    I think our clerks office may block those as prohibited

9    filings.  There's got to be a way around that.

10           But I guess what I would ask in the interest of

11   everyone's time -- there are 38 people on the Zoom link and

12   another good 10 or more on the telephone -- that the parties

13   to the *Burgess combined cases get together and see if there's

14   something that can be done.  Because it will serve no one's

15   interest to repeat depositions that don't need to be repeated.

16   And where it can be avoided.

17           So to that end, I have set aside three additional

18   dates for discovery dispute resolutions.  And that's April

19   29th -- I'm sorry.  Just two.  April 29th at 2:00 PM and May

20   6th at 2:00 PM.  I anticipate using Zoom technology for that

21   as well.

22           So then I wanted to just indicate that I will by the

23   end of the week make a decision on the motion for extension of

24   time filed by Mr. Shkolnik in response to the MDEQ motions to

25   dismiss.

1           I also learned earlier today that the City of Flint

2    may have some similar motions that they will be filing and I

3    would just ask that you hold off on filing those motions until

4    I've made a decision in the MDEQ motion or the motion for

5    additional time I guess is what I need.  I won't be deciding

6    the motions.  I'll be deciding the motion for additional time

7    filed by Mr. Shkolnik.

8           The other thing is that now that the Brown and Marble

9    decisions have been made, we have additional legionella cases

10   where those decisions need to be applied if they apply.  I

11   have six -- I've identified six of them with the assistance of

12   my law clerk, Abigail DeHart.

13          And in several of them, the allegation is legionella

14   exposure but it's not clear whether the plaintiff ultimately

15   came down with legionella disease and suffered damages.  One

16   in such case is 20-10330 filed by Robert Giroux, who I don't

17   know if he's on the telephone.

18          But there's also -- I think Mr. Shkolnik, you may

19   have a case, 17-12153, where there's allegations of legionella

20   exposure.  And I just have not looked closely enough to know

21   whether there's legionnaires disease or whether there is a

22   cause of action for exposure without coming down with

23   legionnaires pneumonia.

24          MR. SHKOLNIK:  Judge Levy, if I can -- we're double

25   checking.  We may have checked the wrong box and it may not be

```
1    exposure.  It may, in fact, be the diagnosis of legionnaire is
2    what I think it is.  But I don't want to make that
3    representation for sure.  But we're double checking.  I don't
4    believe it was exposure to legionnaire -- legionella.
5              THE COURT:  All right.  What I'll do though is
6    there's going to be some additional work done by Debra
7    Greenspan to make sure we know the whole universe of
8    legionnaires cases, legionella cases.
9              So once that's done I'll set a briefing schedule for
10   motions to be filed.  And the plan will be to apply the
11   decision essentially in Marble and Brown to the extent of it
12   applies.  And what I would want in those briefs, everyone is
13   preserving all of those arguments.
14             Lawyers always need to preserve arguments and I
15   understand that.  But what I'll really want is to know why
16   these cases are different if they are and should be treated
17   differently.  And I think the key area where that could apply
18   is in the bodily integrity count in terms of when the
19   individual suffered from legionnaires disease.
20             So I'll set that very soon.  I'll sort that out.
21             And now I think we're up to the point in the agenda
22   where Debra Greenspan will give us an update on the work that
23   she's been doing, which I think is quite significant.
24             Debra, are you there still?
25             SPECIAL MASTER GREENSPAN:  I am.  Hopefully you can
```

```
 1    hear me.  I unmuted.
 2             THE COURT:  Good.
 3             SPECIAL MASTER GREENSPAN:  Thank you, your Honor.
 4    I'm going to give a report on the claim data analysis and
 5    collection that you continue to talk about at each one of
 6    these status conferences.
 7             I am preparing to file what I'm calling the third
 8    interim report on the collection of claim data.  The second
 9    report was filed in September.  So this is about a six month
10    interval in the following sense.
11             The data that is being reported on in this third
12    interim report is as of March 7th.  So it's approximately 6
13    months since the last report.  Obviously we have a bit more
14    data since the time I cut it off for purposes of this.  But
15    let me just give you a couple of highlights.  And again, I
16    plan to file this by the end of the week.
17             THE COURT:  And can you talk just a little bit
18    slower?
19             SPECIAL MASTER GREENSPAN:  Oh I'm sorry.  Okay.
20             THE COURT:  Go ahead.
21             SPECIAL MASTER GREENSPAN:  I just want to repeat that
22    I plan to file it by the end of the week.  And it again
23    collects data as of March 7th.
24             So since our last report, we have slightly under
25    2,000 newly retained clients reported by plaintiffs' counsel.
```

1    So in that period, we've gained close to 2,000 additional

2    people.  There are still some issues with duplicate claims.

3    And so I'm not giving you -- those have to be worked out.  But

4    basically in our raw data, we have another 2,000 or so people

5    retained counsel.

6         So that brings us to about 21,587 individuals who've

7    retained counsel.  There's another 11,000 or so who have been

8    listed in the data as contacts.  Meaning they have a

9    relationship or some sort of contact relationship with a law

10   firm.  And so they have been listed and we've collected that

11   data as well.

12        Important just other highlights that the report will

13   include, the kind of charts and tables that I've included in

14   prior reports.  It breaks the individuals down by the times

15   that they're asserting.  Whether it's a personal injury claim,

16   a wrongful death claim, a business claim.

17        It breaks the group of people down by age.  So we

18   have date of birth basically.  So I have approximately it's in

19   the neighborhood of 37 to 40 percent of the people in this

20   report are under 18.  And I'm counting under 18 as of the date

21   of exposure.  So we're using a period that's 2014 to 2016 for

22   that purpose.

23        We have charts on the injuries that people are

24   claiming.  I don't think it is -- I don't think anyone should

25   view it as the end, in the ending and final injuries.  But I

1    have -- just so it's clear because of the discussion that

2    we've had so far today, we have -- I have 103 people who've

3    asserted legionella claims in this data.  So they had not all

4    filed cases.  But they have been presented claims in this

5    process.

6              I also just want to note just again for purposes of

7    understanding what we have in terms of the individuals that

8    have come forward versus the individuals who filed claims,

9    it's only about 25 percent of the people who've come forward

10   in these reports who have actually filed cases.

11             So it's -- so we don't have cases for a lot of

12   people.  We have people who've identified themselves.  They

13   haven't filed an actual lawsuit.

14             Now I do want to mention that since March 7th, I've

15   received a substantial amount of additional data from

16   plaintiffs' firms.  So I will be reporting on that at our next

17   status conference.  But I believe we have more claims that

18   have been -- that have come forward and retained counsel than

19   we had for this current report.  And we have a lot of other

20   additional updates.

21             I get updates constantly.  Sometimes they are

22   clarifications.  Sometimes they are supplementing information

23   that we have previously requested.  And the counsel has just

24   been able to ascertain the information.  So again, it's a

25   moving -- it's constantly moving.

1        We have, again, also in our -- in these charts, we
2   have information about people who've obtained blood lead level
3   testing and what those results are and how many people have
4   reported on them.  Again, I want to emphasize just because
5   it's not in there doesn't mean somebody hasn't had a blood
6   test.  I can only report on what has been provided to me.  We
7   also have data on water testing at people whose homes have had
8   their water tested for the presence of lead.  And we have all
9   of that data reflected in this report as well.

10       So when it is filed, I think everybody will be able
11  to read it.  And certainly if there are other kinds of
12  information that will be useful to the Court or to the
13  parties, we can certainly put that together or evaluate
14  whether it's possible to put it together in a straightforward
15  manner or with the data that we already have.

16       And I certainly welcome any questions from anybody
17  about the data in the report or how best to report on the
18  data.  So that's all I have for today.

19       THE COURT:  Thank you, very much.  I had to unmute
20  myself.  And I've seen a draft of this report.  And it is
21  remarkably detailed.  I think it will help everyone
22  enormously.  And as Debra say, it's only as accurate as the
23  reporting that she receives.

24       So I just ask that everybody continue to focus on
25  getting accurate data to Ms. Greenspan because it's a very

1    valuable source of what has happened and where we are.  And I

2    think it can be used in a variety of important ways.  So thank

3    you very much for all of the work that went into that.

4            Are there any questions for Ms. Greenspan?  Okay.  I

5    don't see any.  Okay.

6            Well, I also have for decision a smaller issue which

7    is a request by class plaintiffs for the Court to issue

8    letters rogatory regarding a deposition they wish to take in

9    France.  And so I will be addressing that.  I'll take a look

10   at whether I want a reply brief.  Initially I thought that

11   wouldn't be necessary and probably it still will not be

12   necessary.  But if it is, I'll issue an order and let you

13   know.

14           The next status conference will be Wednesday, May

15   20th, 2:00 PM.  The current agenda for this conference

16   indicates that it will be in Ann Arbor Michigan.  And I

17   sincerely believe it will need to be done by video

18   teleconference and telephone conference call.

19           So if we -- let's assume that for this -- at this

20   time.  I don't think people should start making reservations

21   to fly in here at all.  So I'll set up the technology and send

22   out the notice well ahead of time.

23           So is there anything else to be addressed at this

24   time?  Okay.  Hearing nothing, thank you, all, very much.

25   Stay home, stay safe, and stay healthy.  And that will

```
 1   conclude our meeting and court is adjourned.
 2                    (Proceedings Concluded)
 3               -          -          -
 4
 5
 6
 7        CERTIFICATE OF OFFICIAL COURT REPORTER
 8        I, Jeseca C. Eddington, Federal Official Court
 9   Reporter, do hereby certify the foregoing 44 pages are a true
10   and correct transcript of the above entitled proceedings.
11   /s/ JESECA C. EDDINGTON                    5/8/2020
     Jeseca C. Eddington, RDR, RMR, CRR, FCRR   Date
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```