UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re Flint Water Cases*

No. 5:16-cv-10444-JEL-MKM
(Consolidated)

HON. JUDITH E. LEVY

_____

Renner Walker
Attorney for Individual Plaintiffs
800 Third Street, 11 Floor
New York, New York 10022
(212) 605-6200

Paul F. Novak (P39524)
Attorney for Putative Class Plaintiffs
3011 W. Grand Blvd., Suite 2150
Detroit, Michigan 48202
(3130 800-4170

Fadwa A. Hammoud (P74185)
Solicitor General
Attorney for the People
Michigan Department of Attorney General
3030 W. Grand Blvd., Suite 10-200
Detroit, Michigan 48202
(313) 456-3870

_____

**RESPONSE AND BRIEF IN SUPPORT
OF THE PEOPLE OF THE STATE OF MICHIGAN
OPPOSING PLAINTIFFS' MOTION TO COMPEL**

In their motion to compel the production of documents demanded

in a July 25, 2019 subpoena, the plaintiffs make an exorbitant request for relief, asking this Court to compel production of "*any criminal investigative materials in the possession of the Michigan Attorney General's office.*" (Pl. Br. at 20 (emphasis added).)  Enforcing the plaintiffs' sweeping demands would comprise an unprecedented breach of the barrier traditionally erected between an active law-enforcement investigation and a civil action for money damages.

In addition to the impropriety of this request, there is a glaring problem with plaintiffs' demand:  as set forth more fully below, nothing in the subpoena refers to the investigative materials that have somehow become the focus of this conversation, i.e., interview transcripts.  The plaintiffs are asking this court to compel compliance with a subpoena that was never served.  But even if this Court bypasses or otherwise excuses the fact that the motion to compel has no support in the very subpoena on which it is based, it should conclude that the motion has no support in the law or the facts.

One important premise to the plaintiffs' motion to compel is that the criminal investigations are concluded.  They cannot possibly believe this, having been corrected numerous times, including in this Court, by

the only entity that has knowledge of this fact.  Regardless, they maintain that it is true, either because of an incorrect interpretation of the statutes of limitations, or because of the fact that the prior deeply flawed prosecutions were dismissed *without prejudice* to allow for thorough, professional prosecutions that comport with widely accepted standards of criminal law.

Let us be clear:  The prosecutors representing the People of the State of Michigan have an unwavering commitment to achieving justice for anyone who was affected by the Flint Water Crisis.  To that end, the People are conducting an active investigation.  And they have maintained that this is true whenever they speak to the courts, the public, or anyone else.  Even in the midst of the current public health crisis, the People are conducting interviews remotely, gathering evidence, reviewing documents, and advancing multiple strands of its prosecution.

It is for that reason—not Mich. Comp. Laws § 767A.8—that the People object to the plaintiffs' subpoena, which seeks unprecedented access to the prosecution's work product and would undermine the ongoing investigation.  Additionally, the plaintiffs make no effort to

tailor their demand to their own theories.

For the reasons that follow, the People respectfully ask this Court to deny the plaintiffs' motion to compel.  In the interest of judicial economy, the People also ask this Court to exercise its discretion by construing this response as a cross-motion to quash the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3).  Even if it declines to do that, this Court should nevertheless consider the undue burden on the People under Rule 45(d)(1) and general non-party discovery law.

## BRIEF IN SUPPORT

According to the plaintiffs, the "sole point of the dispute is the application of [Mich. Comp. Laws §] 767A.8, which forbids a prosecuting attorney" from disclosing certain materials to others.  (Pl. Br. at 4.)

Not so.  The People's objections raised various qualified privileges, as well as general principles of discovery law, as their primary objections.  (*See, e.g.*, 8/8/19 Resp. to Subpoena at 33–39, attached as **Exhibit A**.)  In fact, the People do not dispute that Mich. Comp. Laws § 767A.8 does not prohibit this Court from ordering discovery.  *See, e.g.*, *Crochran v. Columbus Bd. of Educ.*, No. 2:15-CV-00632, 2016 WL

5957677, at *4 (S.D. Ohio Oct. 14, 2016).[1]  Thus, notwithstanding the merit of the plaintiffs' arguments regarding the statute, they have abandoned any challenge to the other bases for the People's response.

Abandonment or not, this Court should deny the plaintiff's motion.  First, the motion expands the scope of the subpoena far beyond its terms.  Second, the factors relevant to the qualified law-enforcement privilege almost universally weigh in favor of respecting the privilege here.  Third, the plaintiffs' indisputably broad, untailored requests would impose an undue burden on the People—particularly considering that a primary reason for the plaintiffs' demand (an "uneven playing field" vis-à-vis the defendants in this case) can be remedied by an order directed to the parties, in lieu of involving a non-party.

---

[1] Invoking § 767A.8 was necessary, proper, and done in good faith at the subpoena stage.  The statute bars dissemination of the materials in issue, and, in any event, compliance with a subpoena prior to a court order can comprise a "voluntary" disclosure that waives any privileges.  *See In re Columbia/HCA Healthcare Corp Billing Practices Litigation*, 293 F.3d 289, 298 (6th Cir. 2002) (citing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977)).  The statute remains relevant to the extent that its existence confirms the principle underlying the law-enforcement privilege.

## The plaintiffs' motion exclusively concerns materials that were not demanded in their subpoena.

Read narrowly, the plaintiffs' motion addresses only materials that were gathered pursuant to Michigan's investigative subpoena statutes, Mich. Comp. Laws § 767A.1 *et seq.*  (Read broadly, it demands the prosecution's entire file.)  But the plaintiffs' original subpoena never refers to these materials.  Moreover, they do not tailor their request to information relevant to their lawsuit in any way, nor do they cite to particular provisions in their subpoena or particular objections.

The People searched the subpoena for any possible reference to materials such as investigative-subpoena transcripts.  The closest candidates appear in paragraphs 22 through 25, and a representative sample demands

> [a]ll inventories of documents gathered by the Department of Attorney General after discharging Special Prosecutor Flood from state and city entities, offices, or employees in conjunction with discovery and production of documents and other evidence in criminal cases against state and city employees.

(7/25/19 Subpoena ¶ 24; *see also* Pl. Br. at 20.)

At best, the subpoena demands "*inventories* of documents" (not the documents themselves) that were "gathered" by the People (i.e., they were preexisting, not created) from only "state and city entities."  (*E.g.*,

6

7/25/19 Subpoena ¶¶ 22–25, R. 1117-1, PageID # 27703 (emphasis added).)  *See also Truel v. City of Dearborn*, 804 N.W.2d 744, 750–51 (Mich. Ct. App. 2010) (explaining that "a transcript of testimony . . . is not a record or document 'obtained by the prosecution attorney pursuant to an investigation under'" the investigative subpoena statutes).  Furthermore, in every relevant paragraph, the subpoena limits the scope of these inventories to records that were either received from or produced to various defendants in the course of the discovery phase of the prior criminal cases.  (7/25/19 Subpoena ¶¶ 22–27, R. 1117-1, PageID # 27703–04 (demanding materials "gathered . . . in conjunction with discovery and production of documents and other evidence in criminal cases . . . .").)  No fair reading of the subpoena includes the materials demanded in the plaintiffs' motion to compel.

Such "inventories" would not even *reference* the interviews because, again, the subpoena demands inventories of only preexisting documents that were furnished to defendants pursuant to the People's discovery obligations in a given criminal action.  In any event, any inventory would need to be prepared—at no small burden to the

People—in response to the subpoena. (*See* Hammoud Decl. ¶¶ 9–10, attached as **Exhibit B**.)

Although it is acceptable to "narrow" a subpoena in subsequent motion practice, *see, e.g.*, *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 354–55 (D.D.C. 2018), the People are not aware of any authority permitting a party to *broaden* the scope of the subpoena in a motion to compel. This Court should disregard the new demands that are not reflected in the subpoena. Had the People known that the demands in the subpoena would mutate into the demands appearing in the motion to compel—which are far more harmful to the public interest in investigative integrity than what appeared in the subpoenas—they would have filed a motion to quash when the subpoena was served, to avail themselves of Federal Rule of Civil Procedure 45(d)(3).

## The law-enforcement privilege bars the production of the People's confidential work product.

At the heart of the People's opposition to the plaintiffs' subpoena is the public's interest in a thorough investigation into the criminality that led to the Flint Water Crisis, as well as the criminality that occurred in its aftermath. It goes without saying that secrecy during

the pendency of the investigation *furthers* that public interest.

*BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 362 (D.D.C. 2018) ("Ordinarily, this court would be disinclined to compel even modest factual disclosures about an ongoing law enforcement investigation.  The risk attendant to such judicial intervention is obvious.").  Likewise, disseminating that information into a civil case involving the very targets of that ongoing investigation *destroys* that interest.  For the reasons that follow, the plaintiffs have not carried their burden to show relevance or a compelling need, either for interview transcripts or total access to the prosecution's file.  Even if they clear that hurdle, this Court should not pierce the investigative wall that preserves the integrity of the ongoing investigation.

**Background on the law-enforcement privilege**

After the movants establish the relevance of the material they seek, this Court evaluates any objections to the subpoena under the standards supplied by Federal Rule of Civil Procedure 45, which "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden."  *Watts v. S.E.C.*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007).  The plaintiffs have established neither

relevance nor compelling need, and, in any event, the law-enforcement privilege should not yield to their alleged need.

"The purpose of [the law-enforcement] privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988). Stated differently, the privilege is "designed to prevent disclosure of information that would be contrary to the public interest in the effective functioning of law enforcement." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 10 (D.D.C. 2010).

The law enforcement privilege is qualified, not absolute, and "[t]he public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information." *In re City of N.Y.*, 856 F.2d at 484; *see also Hamama v Adducci*, No. 17-11910, 2018 WL 2445042, at *2 (ED Mich, May 31, 2018) (Goldsmith, J.). There is a presumption in favor of the privilege, which places a burden on the non-governmental entity to show that its "objective, rather than its

subjective, need for the documents overrides the governmental interest in secrecy." *United States v Leggett & Platt, Inc.*, 542 F.2d 655, 658 (6th Cir. 1976); *see also In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010) (holding that parties seeking disclosure of information protected by the law-enforcement privilege must show a "compelling need" for the information).  True, the ultimate burden of demonstrating the law-enforcement privilege is on the party asserting the privilege—but the "compelling need" requirement still harmonizes with that ultimate burden, because "the party seeking disclosure of information is uniquely situated to explain to a court why it wants and needs that information." *In re The City of New York*, 607 F.3d at 945 n.23.

After the movant sufficiently has explained relevance and its need for the information, courts weigh the public's interest in investigatory secrecy against the interest of the private litigant seeking discovery. Courts generally consider ten non-exclusive factors, often called *Tuite* factors, when balancing those interests.  Those factors include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement

will be chilled by disclosure; (4) whether the information
sought is factual data or evaluative summary; (5) whether
the party seeking discovery is an actual or potential
defendant in any criminal proceeding either pending or
reasonably likely to follow from the incident in question;
(6) whether the investigation has been completed; (7)
whether any interdepartmental disciplinary proceedings
have arisen or may arise from the investigation; (8)
whether the plaintiff's suit is nonfrivolous and brought in
good faith; (9) whether the information sought is
available through other discovery or from other sources;
and (10) the importance of the information sought to the
plaintiff's case.

*Hamama*, 2018 WL 2445042, at *3 (quoting *Tuite v. Henry*, 181 F.R.D.
175, 177 (D.D.C. 1998)). "Although a district court has considerable
leeway in weighing the different factors, . . . the failure to balance at all
requires remand . . . to consider the respective interests." *In re Sealed
Case*, 856 F.2d 268, 272 (D.C. Cir. 1988).

## Application

### The plaintiffs have not established the relevance of their requested documents, let alone a compelling need.

The plaintiffs make no effort—either in the original subpoena or
in their motion to compel—to establish a connection between the
questions of fact raised in their lawsuit and the requested materials.

12

The plaintiffs' unparticularized demands necessarily assume that *everything* gathered in the course of the criminal investigation is relevant to the plaintiffs' causes of action.  In other words, plaintiffs assume that their lawsuit's fact issues must overlap with all potential areas of criminal inquiry.  But many of the theories of liability that the People are exploring have no private causes of action and would be barred by standing doctrines.  By simply identifying the prosecution's investigative materials without regard to topic, the plaintiffs have not tailored their requests to information potentially relevant to their lawsuit.  *See In re The City of New York*, 607 F.3d at 946 (evaluating "need" requires the court "to review the general contours" of the theory of the case); *Dobyns v. United States*, 123 Fed. Cl. 481, 491 (2015) (request invokes relevant documents when it "speak[s] . . . to the precise question presented").

Even to the extent that the information sought by the plaintiffs is *relevant*, that relevance does not translate to a compelling *need* for that information.  Only two of the plaintiffs' arguments relate to "need."

One argument invokes witnesses' fading memories. (Pl. Br. at 2–3.)[2] Setting aside its lack of factual support, this argument has limited force because it implicates only one form of evidence (memorialized interviews), its relevance is even more attenuated due to evidentiary barriers to admitting the interviews in the civil action, and it has no bearing on newer evidence gathered by the People, as explained more fully below. The other argument is that the discovery can remedy an uneven "playing field" between the parties. (Pl. Br. at 2, 19–20.) This argument does not implicate "need," because the information necessarily is available from the defendants.

With respect to the remaining information, the plaintiffs can generate it themselves, or they can obtain it from other parties. Their desire to benefit from the People's work product is understandable, but it does not justify the burden it would foist upon a non-party, nor setting aside the privilege.

---

[2] The People object to Veolia's late-filed "notice of joinder" (R. 1132) and ask this Court to strike it to the extent that it expands on the plaintiffs' motion, rather than simply joining in their request for relief.

**Even if the plaintiffs have a compelling need for the documents, that must yield to the law-enforcement privilege.**

The ten *Tuite* factors confirm that this Court should deny the plaintiffs' motion. The People concede that the eighth factor weighs in plaintiffs' favor. Certainly, they brought their lawsuit in good faith, and the fact that the suit remains pending after multiple dispositive motions shows that it is not frivolous. But each of the remaining factors weighs in favor of preserving the secrecy of the ongoing criminal investigation.

The first two factors address "the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information" and "the impact upon persons who have given information of having their identities disclosed." These weigh against compelled disclosure. The People have not completed interviewing persons of interest in their investigation into the Flint Water Crisis. Individuals who have agreed to be interviewed have received assurances that their testimony would remain confidential to the greatest degree possible. (*See* Hammoud Decl. ¶¶ 5–6.) Ordering disclosure at this point will undermine the prosecution's credibility with those to whom it has already made such assurances, chilling them from

15

future participation in the prosecution.  It also will signal to those who have not yet been interviewed that their testimony is subject to dissemination.

Moreover, certain interviewees either remain with their former employers or in the same industry, and disclosure of their testimony to current and former higher-ups in that industry is expected to have an adverse impact on them.

The third factor concerns the degree to which disclosure will chill governmental self-evaluation.  Among the information in the prosecution's file are internal communications between and among State agencies and their employees.  This weighs against disclosure. Furthermore, many interviews were facilitated by promises of immunity and an understanding that the purpose of the interview was this criminal investigation—not a civil action that could have unintended consequences for the interviewee.  *E.g.*, *Dowell v. Griffin*, 275 F.R.D. 613, 618 (S.D. Cal. 2011) ("The third factor . . . favors applying the privilege. . . .  [T]he government may be less inclined to self-evaluate if it knows the information gathered can ultimately be used against it in a civil action.").

The fourth factor asks whether the data requested is either factual or evaluative summary.  The plaintiffs, having centered their motion around Mich. Comp. Laws § 767A.8, purport to request the materials that reflect the prosecution's strategy.  These materials are classic examples of evaluative work product.  *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) (recognizing that an attorney's "legal theories and . . . strategy" are "reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" and are therefore "inviolate.").  It is not difficult to infer that the prosecution is considering a particular cause of action from a line of questioning that happens to track the elements of a crime.  Nor is it difficult to deduce that the prosecution is interested in a particular person (and why) from questions regarding that person.

In any event, plaintiffs later clarify that they are requesting "*any criminal investigative materials in the possession of the Michigan Attorney General's Office.*"  (Pl. Br. at 20 (emphasis added).)  Yet they point to no case granting this kind of unbridled access to a prosecutor's file in the midst of an active investigation.  And the People's review has

uncovered no such case.  In *Hamama*, for example, the petitioners wanted only the names of certain individuals involved in diplomatic negotiations, and the court, granting relief, held that this fell outside the scope of the privilege entirely.  2018 WL 2445042, at *2.  Similarly, in *BuzzFeed*, the petitioner successfully moved for "a response to three narrow questions" about a particular document—including "whether and when the FBI or any other Government Respondent acquired the [document], and whether senior intelligence officials briefed President Obama on its contents . . . ."  318 F. Supp. 3d at 352, 358.  The answers to these questions were factual, and the respondent had essentially waived the privilege by choosing to eschew investigative secrecy.  The plaintiffs, by contrast, are asking for closely guarded work product.  This factor weighs against disclosure.

The fifth factor asks "whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question."  Although the plaintiffs are not actual or potential defendants, their opponents are.  For practical purposes, this is a distinction without a difference, so

18

this factor weighs against disclosure.[3]  Indeed, the People object due to to the possibility that the investigative material will make its way into the hands of potential criminal defendants.

The sixth factor asks whether the investigation has been completed.  "[T]here is less government interest in secrecy in completed, than in ongoing, investigations." *Leggett & Platt, Inc.*, 542 F.2d at 659. Let's put this to rest once and for all.  *The investigations are ongoing.* (Hammoud Decl. ¶¶ 3–4.)[4]  Like the fifth factor, the simplicity of this factor should not detract from its paramount importance.  The fact that the investigations are pending is the main reason that the People object to opening their investigative file to civil plaintiffs, who likely will be obligated to furnish that same information to the civil defendants. Upon information and belief, certain of the civil defendants have entered into "mutual defense agreements" with current and former

---

[3] This Court's most recent case management order confirms the common-sense proposition that discovery obtained from a non-party is equally available to all parties, not just the party who issued the subpoena. (*See* 5/8/20 CMO at 12–13, R. 1131, PageID 27859–60.)

[4] To whatever limited extent an informal, out-of-court court statement, not directed to the media, regarding the statute of limitations expiring in April 2020 is properly before this Court, the People repeatedly have clarified that the truth of the matter is more complicated.  Suffice it to say, the People are investigating criminal activity, the prosecution of which is not yet barred by the statute of limitations.

persons of interest in the criminal prosecutions, and there is an
untenable risk that disclosing work product to the plaintiffs in this case
is the first link in a chain of events that will put this data right into the
hands of the targets of the investigation.

The seventh factor asks "whether any interdepartmental
disciplinary proceedings have arisen or may arise from the
investigation."  To the extent it is relevant, this factor weighs against
disclosure.  The Flint Water Crisis did result in interdepartmental
disciplinary proceedings.  *See, e.g.*, Mitch Smith, *Michigan Water
Regulator Fired for Role in Flint Crisis as Fallout Continues*, NEW YORK
TIMES, at A10 (Feb. 6, 2016) ("Liane Shekter Smith, who led the
Michigan Department of Environmental Quality's Drinking Water and
Municipal Assistance unit, was fired after a disciplinary conference.").

Again, the eighth factor (i.e., whether the plaintiff's lawsuit was
filed in good faith) is conceded.  The ninth factor asks whether the
information sought is available through other discovery or from other
sources.  This factor weighs heavily in favor of nondisclosure by the
prosecution.  One of the pillars of the plaintiffs' brief is their
assumption that they and the defendants have "disparate access" to the

materials that they seek (i.e., the defendants are privy to materials they are not), and they hope to use their subpoena to remedy the "uneven playing field."  (Pl. Br. at 2, 19–20.)  Plaintiffs can accomplish this by communicating within the caption of their case.  There is simply no good reason to impose a burden on the People to disclose every facet of an historic, large-scale criminal investigation to accomplish the express, narrow goal of leveling the playing field between the parties.

The plaintiffs assert, without (timely) support, that "many witnesses" no longer remember certain facts, and one unidentified witness is being treated for memory issues.  (Pl. Br. at 2–3.)  First, the People note that the better part of a *year* passed between the Department's objections to the subpoena and the instant motion to compel.  That suggests that some extent of the passage of time should be attributed to plaintiffs themselves.  *Accord Overly v. Hall-Neal Furnace Co.*, 12 F.R.D. 112, 114 (N.D. Ohio 1951) ("Diligence upon the part of both parties to a suit [in interviewing witnesses] ought to be encouraged . . . .").

In any event, to the extent this Court orders discovery, the People ask it to limit its order to materials that actually would remedy the

issue that plaintiffs identify.  The Veolia "notice of joinder" identifies only four witnesses (none of whose excerpts reflect medical treatment for a memory problem that plaintiffs reference).  The People have conducted myriad interviews in the past year alone, and disclosing that work product would not solve the plaintiffs' "memory" problem; those interviews are nearly as temporally removed from the Flint Water Crisis as plaintiffs' depositions.  Disclosure of those materials serves no purpose other than shifting plaintiffs' burden to prosecute their case onto a non-party.

**Any waiver by the People does not extend to any interpretation of the relief the plaintiffs seek.**

The plaintiffs assert that the People have waived the privilege by producing certain documents to the "MDEQ defendants."  (Pl. Br. at 19–20.)  The People might agree that they have waived the law-enforcement privilege—but *only* to the extent that they might have voluntarily produced particular materials to the MDEQ defendants.  Regardless, plaintiffs should first look to those defendants before burdening a non-party with the production of materials possessed by that party.  If this Court, in its discretion, declines to order production

22

of those materials from the MDEQ defendants and instead involves a non-party, the People of course will produce those documents.

## Granting the plaintiffs' motion would impose an undue burden on the People.

Even if this Court does not agree that the requested disclosure is barred by privilege, it also must quash the subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). This entails a case-specific inquiry into "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quotation omitted). Courts must balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of that person as a non-party is a factor. *Id.* (quotation omitted).

To the extent that the motion to compel accurately reflects the subpoena, it is facially overbroad. For the reasons set forth above, it is not tailored to the questions of fact raised by the plaintiffs' controlling Complaint. The plaintiffs failed to identify particular individuals of

interest, or unknown individuals' job descriptions, employers, duties, places of employment, and so on.  Neither is there any delineation as to subject matter or time period—even though the plaintiffs presumably are aware of the scope of their civil claims; even though the plaintiffs' motion makes a temporal argument about fading memories that only applies to older interviews; and even though the plaintiffs claim to be worried about the defendants' disparate access to information that could be cured by an order directed to those parties.

In addition to the harm caused by virtually publicizing the People's investigative file, complying with an order from this Court that incorporates the demands made in the plaintiffs' motion would cripple the People's investigation, diverting resources that already are stretched thin.  (Hammoud Decl. ¶¶ 8–10.)  The volume of the materials within the custody of the People is difficult to overstate, and those materials are not organized in a fashion that would permit compliance without the significant expenditure of resources—the final result of which might be the *actual* running of the limitations period.  (*Id.*)  The People ask this Court to "enforce [its] duty" to protect the public's interest in law enforcement from this result.  Fed. R. Civ. P. 45(d)(1);

*see Watts*, 482 F.3d at 509 ("The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties.").

## CONCLUSION AND RELIEF REQUESTED

The People respectfully ask this Court to deny the plaintiffs' motion to compel compliance with the July 2019 subpoena, construe this response as a cross-motion to quash the same subpoena, and grant its motion.

In the alternative—and without waiving their right to appeal this Court's decision—the People ask this Court to (1) order the plaintiffs to provide a more definite statement as to the relevance of the materials they request and (2) limit any relief to materials actually necessary to address the specific concern identified by the plaintiffs that cannot be

remedied by the parties, i.e., testimony limited by memory loss.

Respectfully submitted,


/s/ Fadwa A. Hammoud
Solicitor General
HammoudF1@michigan.gov
P74185

Daniel J. Ping
Assistant Attorney General
PingD@michigan.gov
P81482
Attorneys for the People
3030 W. Grand Boulevard
Detroit, Michigan 48202
(313) 456-3870


Dated: May 13, 2020


## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2020, I electronically filed the above document with the Clerk of the Court using ECF system, which will provide electronic copies to counsel of record.

/s/ Fadwa A. Hammoud
Solicitor General
Attorney for the People
3030 W. Grand Boulevard
Detroit, Michigan 48202
(313) 456-3870
HammoudF1@michigan.gov
P74185

Dated:  May 13, 2020

SG Flint/Response Opposing Motion to Compel