```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF MICHIGAN
 2                         SOUTHERN DIVISION

 3

 4  In Re:  FLINT WATER CASES        Case No.  16-10444

 5  _____/

 6
               VIDEO DISCOVERY AND CASE MANAGEMENT CONFERENCE
 7             BEFORE THE HONORABLE JUDITH E. LEVY
                    UNITED STATES DISTRICT JUDGE
 8                            and
               THE HONORABLE JOSEPH J. FARAH
 9             GENESEE COUNTY CIRCUIT COURT JUDGE
        Virtual Hearing Via Zoom - Wednesday, July 15, 2020

10

11                   APPEARANCES IN ALPHABETICAL ORDER:

12                   Charles E. Barbieri, Esq.
                     Foster, Swift, Collins & Smith, P.C.
13                   313 South Washington Square
                     Lansing, Michigan 48933

14
                     Margaret A. Bettenhausen, Esq.
15                   Michigan Department of Attorney General
                     525 West Ottawa Street, P.O. Box 30755
16                   Lansing, Michigan 48909

17                   Jayson E. Blake, Esq.
                     McAlpine PC
18                   3201 University Drive, Suite 100
                     Auburn Hills, Michigan 48326

19
                     Peretz Bronstein, Esq.
20                   Bronstein, Gewirtz & Grossman LLC
                     60 East 42nd Street, Suite 4600
21                   New York, New York 10165

22                   Jordan W. Connors, Esq.
                     Susman Godfrey L.L.P.
23                   1201 Third Avenue, Suite 3800
                     Seattle, Washington 98101

24

25
```

```
 1  APPEARANCES (Continued):

 2                      Kristin Michele Dupre, Esq.
                        Campbell Conroy and O'Neil PC
 3                      1 Constitution Wharf
                        Suite 310
 4                      Boston, Massachusetts 02129

 5                      Joseph F. Galvin, Esq.
                        Genesee County Drain Commissioners
 6                      4610 Beecher Road
                        Flint, Michigan 48532
 7
                        Deborah E. Greenspan
 8                      Special Master
                        Blank Rome, LLP
 9                      1825 Eye Street, N.W.
                        Washington, DC 20006
10
                        Krista A. Jackson, Esq.
11                      Kotz Sangster Wysocki P.C.
                        40 Pearl Street, Northwest, Suite 400
12                      Grand Rapids, Michigan 49503

13                      Larry R. Jensen, Esq.
                        Hall Render Killian Heath & Lyman, PLLC
14                      201 West Big Beaver Road, Suite 1200
                        Troy, Michigan 48084
15
                        David C. Kent, Esq.
16                      Faegre Drinker Biddle Reath LLP
                        1717 Main Street
17                      Suite 5400
                        Dallas, Texas 75201
18
                        William Young Kim, Esq.
19                      City of Flint
                        1101 South Saginaw Street, Third Floor
20                      Flint, Michigan 48502

21                      Sheldon H. Klein, Esq.
                        Butzel Long, P.C.
22                      Stoneridge West, 41000 Woodward Avenue
                        Bloomfield Hills, Michigan 48304
23
                        Richard S. Kuhl, Esq.
24                      Michigan Department of Attorney General
                        ENRA Division, P.O. Box 30755
25                      Lansing, Michigan 48909
```

```
 1   APPEARANCES (Continued):

 2                        Patrick J. Lanciotti, Esq.
                          Napoli Shkolnik Law PLLC
 3                        360 Lexington Avenue, 11th Floor
                          New York, New York 10017

 4
                          Theodore J. Leopold, Esq.
 5                        Cohen Milstein Sellers and Toll PLLC
                          2925 PGA Boulevard, Suite 200
 6                        Palm Beach Gardens, Florida 33410

 7                        Emmy L. Levens, Esq.
                          Cohen Milstein Sellers and Toll PLLC
 8                        1100 New York Avenue, NW,
                          Suite 500, West Tower
 9                        Washington, DC 20005

10                        T. Santino Mateo, Esq.
                          Perkins Law Group, PLLC
11                        615 Griswold, Suite 400
                          Detroit, Michigan 48226

12
                          Paul F. Novak, Esq.
13                        Weitz & Luxenberg, P.C.
                          Chrysler House
14                        719 Griswold Street, Suite 620
                          Detroit, Michigan 48226

15
                          Joseph E. O'Neil, Esq.
16                        Campbell Conroy & O'Neil, P.C.
                          1205 Westlakes Drive, Suite 330
17                        Berwyn, Pennsylvania 19312

18                        Eric Rey, Esq.
                          US Department of Justice
19                        Civil Division
                          175 N Street, NE
20                        Washington, DC 20002

21                        David M. Rogers, Esq.
                          Campbell Conroy & O'Neil, P.C.
22                        1 Constitution Wharf, Suite 310
                          Boston, Massachusetts 02129

23
                          Alexander S. Rusek, Esq.
24                        White Law PLLC
                          2400 Science Parkway, Suite 201
25                        Okemos, Michigan 48864
```

```
 1  APPEARANCES (Continued):

 2                      Teresa Marie Russo, Esq.
                        Marc J. Bern & Partners, LLP
 3                      225 W Washington St
                        Suite 2200
 4                      Chicago, Illinois 60606

 5                      Hunter Shkolnik, Esq.
                        Napoli Shkolnik Law PLLC
 6                      1301 Avenue of the Americas, 10th Floor
                        New York, NY 10019
 7
                        Susan Elizabeth Smith, Esq.
 8                      Beveridge & Diamond, PC
                        1350 I Street N.W.
 9                      Suite 700
                        Washington, DC 20005
10
                        Corey M. Stern, Esq.
11                      Levy Konigsberg, LLP
                        800 Third Avenue, Suite 11th Floor
12                      New York, New York 10022

13                      Craig S. Thompson, Esq.
                        Sullivan, Ward
14                      25800 Northwestern Highway, Suite 1000
                        Southfield, Michigan 48075
15
                        Cindy Tsai, Esq.
16                      Loevy & Loevy
                        311 N. Aberdeen Street
17                      Chicago, Illinois 60602

18                      Renner K. Walker, Esq.
                        Levy Konigsberg, LLP
19                      800 Third Avenue, Suite 11th Floor
                        New York, New York 10022
20
                        Valdemar L. Washington, Esq.
21                      718 Beach Street, P.O. Box 187
                        Flint, Michigan 48501
22
                        Todd Weglarz, Esq.
23                      Fieger, Fieger, Kenney & Harrington, PC
                        19390 West 10 Mile Road
24                      Southfield, Michigan 48075

25
```

```
 1   APPEARANCES (Continued):

 2                         Jessica B. Weiner, Esq.
                           Cohen Milstein Sellers and Toll PLLC
 3                         1100 New York Avenue, NW, Suite 500
                           Washington, DC 20005
 4
                           Edwar A. Zeineh, Esq.
 5                         Law Office of Edwar A. Zeineh, PLLC
                           2800 East Grand River Avenue, Suite B
 6                         Lansing, Michigan 48912

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   REPORTED BY:          Darlene K. May, CSR, RPR, CRR, RMR
                           231 W. Lafayette Boulevard
24                         Detroit, Michigan 48226
                           (313) 234-2605
25
```

1                        <u>TABLE OF CONTENTS</u>

2    <u>PROCEEDINGS:</u>                                    <u>PAGE:</u>

3      Panelists roll call by court reporter            7

4      Remarks by Judge Farah                           7

5      Court addresses Sealed Documents                 8

6      Discussion on Class Certification                8

7      Discussion on Experts                           24

8      Discussion on Paragraph Eight                   39

9      Request by Mr. Leopold                          42

10     Discussion on Depositions                       49

11     Discussion on Home Inspections                  62

12     Court Reporter's Certificate                    70

13

14

15

16

17

18

19

20

21

22

23

24

25

1           Wednesday, July 15, 2020

2           2:08 p.m.

3                      -- --- --

4           THE COURT:  So I'll call the case.  This is in re

5   Flint Water Litigation.  We're on the record.

6           And, Darlene, do you want to begin by reading the

7   names that you see and have took down or do you want people to

8   announce themselves?

9       (Appearances read by reporter.)

10          THE COURT:  Thank you.

11          This is the date and time that was set aside to

12  address some nondispositive issues, discovery disputes and

13  timing and scheduling and things of that nature.  First I want

14  to welcome back Judge Farah.

15          And thank you for taking the time to be here.

16          JUDGE FARAH:  Thank you, Judge.

17          THE COURT:  It's good to see you.  And I should just

18  pause now and ask if there is anything you wanted to add to the

19  list of what we'll be discussing today?

20          Anything you want to add to this, Judge Farah?

21          JUDGE FARAH:  No.  Not really.  It's been not too long

22  since we last got together.  I will say I believe, looking at

23  some of the other things I have to do, I will be getting back

24  to opinion writing on these cases the week of July 27th.

25          THE COURT:  Okay.

1           JUDGE FARAH:  I am going to try to finish some other

2    things and get back to the two or three we have remaining.

3           And I understand we'll be seeing a couple of you by

4    Zoom, most likely, for oral argument, I believe, on August 6th

5    on the individual plaintiffs, I believe it is?  And I think the

6    City defendants.

7           Well, we're going to be having argument on some

8    motions that were not necessarily part of Judge Ewell's

9    November 19 ruling, I think need to be decided, for instance.

10   So I'm going to allow oral argument for those the first week of

11   August.

12          (Court reporter clarification.)

13          THE COURT:  Okay.  Great.  And thank you, Darlene.

14   Feel free at any time to let us know.  Because doing this whole

15   phonetic thing that you do is remarkable to me.  So thank you

16   for breaking in and trying to get that clear now instead of

17   later.

18          Before we move on with the agenda, I wanted to also

19   mention that I asked Debra Greenspan to join us in general for

20   these calls in the event that there's some way she may be able

21   to be of assistance in the process.  So she's here with us as

22   well.

23          I think Abigail sent an E-mail out regarding the class

24   plaintiff -- putative class plaintiffs' motion for class

25   certification that was filed on June 30th.  And it was filed

1   with portions of it under seal.  And as you know, that's

2   prohibited in the Eastern District of Michigan without a

3   pending motion.  You have to -- in the confidentiality order

4   that I think is Exhibit C to the CMO.

5           But in any event, it's ECF number 1162-3.  And in

6   paragraph nine of that order, there is a process that I think

7   putative class plaintiffs undertook.  I'm trying to get to it

8   right now.

9           There is a process for filing materials that -- at

10  paragraph nine says filing protective materials and.  And I

11  believe this is what you undertook, Mr. Leopold and Mr. Pitt

12  and others, in filing this because you initially filed a

13  redacted version omitting the protected material that anyone

14  could have designated in the course of a deposition or document

15  production and so on.

16          And I appreciate that you followed that.  I can only

17  imagine the amount of time and effort and labor to be very

18  careful to keep track of all that.  So I appreciate your work,

19  your associate's work and any supporting staff.

20          However, I remember specifically making sure that

21  paragraph 10 would be in this as well because the Sixth Circuit

22  is enormously clear with the district court that we cannot

23  accept anything filed under seal without an appropriate motion

24  and a careful examination of whether something should be

25  sealed.

1            So paragraph 10 says:  "This order does not itself

2    authorize the filing of any documents under seal.  Documents

3    may be sealed only if authorized by a separate order of the

4    Court."

5            And those, of course, have to be filed.

6            So I realize that paragraph nine and paragraph 10 are

7    a little bit contradictory, but we -- I guess what I want to

8    know now is the 14 days set forth in paragraph nine has

9    expired.  And I only have one motion to seal that was sent by

10   E-mail and that was by putative class members counsel regarding

11   personal identifying information and so on.  So I'm assuming

12   that no one else has any matter or statement or sentence or

13   word in this motion that they want sealed?

14           Am I correct in that?

15           Mr. Campbell, are you trying to speak?

16           MR. CAMPBELL:  No, Your Honor.

17           THE COURT:  I think it was your typewriter brought you

18   to the front.

19           What I would like you to do, Mr. Leopold, is refile

20   it.  I want you to file the motion that you sent to Abigail.

21   That Ms. Weiner sent to Abigail.  I'd like that motion to seal

22   filed first and simultaneously everything unredacted except for

23   what you have in your motion to seal.

24           And let me ask now, does anyone wish to file a

25   response to the motion to seal?

1        (No response.)

2              THE COURT:  Disagreeing with it in any way?

3              Okay.  Hearing that no one is going to oppose that,

4    the only question -- I've looked at it and the only question I

5    have is whether there are any conclusions about medical

6    conditions that ought to be in the public domain.  So I need to

7    take a look at the -- I think all of the personal addresses and

8    other personally identifying information should be redacted.

9    The Sixth Circuit supports that, endorses it as long as it's

10   been line by line verified that that's what it is.

11             I have not had a chance to carefully look at the

12   medical information you want redacted and in light of the fact

13   that plaintiffs have put their medical conditions before the

14   Court and before the public by filing the case, I just want to

15   be careful to look at that another time.  So what we'll do is

16   put that on the agenda for a decision at our next conference.

17   I need to look at the calendar to know exactly.

18             And I anticipate granting your motion, but I want to

19   be abundantly careful before doing that.

20             Is our next hearing on the ...

21             29th.

22             So I'll have it on the record on the 29th, a decision

23   about that.  And I'm assuming that most of it will remain

24   redacted, but I'll take a closer look between now and then.

25             MR. KLEIN:  Your Honor, this is Sheldon Klein.  May I

1    be heard?

2             THE COURT:  Sure.

3             MR. KLEIN:  I was slow getting off of mute when you

4    first asked did anyone want to be heard.  So I apologize.

5             First, in all honesty, I have not looked at the

6    redactions to assess the appropriateness.  The only thing

7    that that -- and so I don't have any objection to any

8    particular redaction.  I do want to remind that the seminole

9    Sixth Circuit case, the Blue Cross case was in the context of a

10   class certification motion.

11            THE COURT:  Absolutely.

12            MR. KLEIN:  And the class members didn't have a reason

13   basis to assess the settlement, object, et cetera, given the

14   extent of the sealing.

15            THE COURT:  Correct.

16            MR. KLEIN:  So I think everyone is appropriately

17   judicious in using the sealing.

18            THE COURT:  Well, the fact is almost nothing is going

19   to be sealed.  Because tomorrow -- by close of business today,

20   Ms. Weiner will file her motion to seal just those personally

21   protected Social Security numbers, driver's license, things

22   like that.  So the things that are subject to -- that her

23   motion has can be sealed until I decide the motion, but

24   everything else is going to be unsealed this afternoon.

25            As far as I'm concerned, it was on there too long

1   already sealed, but I knew we had this conference coming up and

2   so it seemed more efficient to deal with it this way than to

3   deal with it before today.

4           MR. LEOPOLD:  Thank you, Your Honor.

5           THE COURT:  So we're going to be in compliance with

6   *Blue Cross versus Shane* immediately.

7           And then from here on out paragraph 10 supersedes

8   paragraph nine in how it should be done.  So I think paragraph

9   nine needs to be -- that's -- somehow you need to warn people

10  I'm going to file this that you have designated confidential,

11  14 days before you file it, I guess.

12      Or else you file it with a motion to seal setting forth

13  this procedure and the public will know that in 14 days it will

14  be made public or adjudicated.  So we can deal with it

15          MR. LEOPOLD:  Your Honor, this is Mr. Leopold.  Just

16  one thing.  Because of the time of this hearing and these

17  issues arising now, can we have until tomorrow to file our

18  papers on this?

19          THE COURT:  Sure.

20          MR. LEOPOLD:  Thank you.

21          THE COURT:  No problem.

22          So the next issue -- or the first issue that was on

23  the agenda is the issue of how we're going to address the class

24  certification motion in light of the State of Michigan,

25  Governor Snyder and Treasurer Dillon's posture in the case.

1    And we had the development yesterday of the Sixth Circuit

2    unanimously denying the en banc consideration.  And I think

3    counsel -- their counsel, was preparing for that eventuality in

4    their submission.

5            But I have just lost it on my screen.  So give me a

6    minute.

7            And they submitted a very detailed proposal in the

8    event that that happened.  But I have to get it back up in

9    front of me.

10           Oh, there it is.  Okay.

11           So Mr. Kuhl -- or Ms. Bettenhausen?

12           MR. KUHL:  Yes, Your Honor.

13           THE COURT:  Yeah.  I guess the one thing that your

14    submission implies is that you've made a decision not to seek

15    cert in the Supreme Court; is that fair?

16           MR. KUHL:  I haven't discussed it with the solicitor

17    general's office yet because I was defending depositions all

18    day yesterday.

19           THE COURT:  Okay.

20           MR. KUHL:  So I still need to do that, frankly.  All

21    of our witnesses have been deposed or the relevant ones have

22    been deposed we know what the testimony is.  From my

23    perspective it may be better to just bring it down and go up on

24    the merits than to pursue it further.

25           THE COURT:  Okay.

1      MR. KUHL:  But I have to get final decision from those

2   that are much smarter than I am.

3      THE COURT:  I understand.  I've been in that position.

4      MR. KUHL:  Including Ms. Bettenhausen.

5      THE COURT:  There you go.  So when will that decision

6   be made?

7      MR. KUHL:  I expect it will be made very quickly.  I

8   would certainly expect it by the end of the week.

9      And I'll let everybody know.  We're certainly not

10  going to hide what our decision is on that.

11     THE COURT:  Okay.  And I would ask you to inform me

12  through an E-mail to counsel and Ms. DeHart.

13     MR. KUHL:  Okay.

14     THE COURT:  Because what I want to do is set up a

15  schedule assuming that your proposals set forth on page four,

16  which says, "If the petition for reconsideration en banc is

17  denied, the State defendants request the following scheduling

18  order."

19     Let me -- I have not had enough appellate work

20  that -- my appellate experience is pretty spotty.

21     How long do you anticipate -- let's assume you don't

22  seek cert.  How long do you anticipate before the mandate

23  issues?

24     MR. KUHL:  Mandates typically issue pretty quickly.

25     THE COURT:  I've never been in -- it's a mystery to

1   me.  Because I find that in some cases and then in others it's

2   months.

3           MR. KUHL:  I haven't had the --

4           MS. BETTENHAUSEN:  Your Honor?  This is Margaret

5   Bettenhausen.  I believe it should issue in seven days and if

6   not it's kind of unusual.

7           THE COURT:  Okay.

8           MS. BETTENHAUSEN:  It should happen very quickly, but

9   they rarely let us tell them what to do in the Sixth Circuit.

10          THE COURT:  I know.

11          MS. BETTENHAUSEN:  That is what I understand their

12  goal to be.

13          THE COURT:  Okay.  They never ask me either.

14          Okay.  So that won't be a holdup.  That's good to

15  know.  So, then, you're suggesting that you would file an

16  answer within 21 days for Governor Snyder and within that same

17  21 days, you would file your memorandum on former Treasurer

18  Dillon?

19          MR. KUHL:  Correct.

20          THE COURT:  Okay.

21          MR. KUHL:  Unless class plaintiffs, now that they've

22  deposed Mr. Dillon, are agreeing that they're not going to

23  pursue their claims against him.

24          THE COURT:  Let's find out.

25          Mr. Leopold?

1      MR. LEOPOLD:  We intend to go forward at this point in

2  time, Your Honor, with Mr. Dillon.

3      THE COURT:  Okay.  All right.  And when was he

4  deposed?

5      MR. KUHL:  I believe it was last ...

6      THE COURT:  Mr. Kuhl, you went out.

7      I can't hear you.  Darn.

8      MR. BLAKE:  Jordan or Katie, do you know when he was

9  deposed?

10     FEMALE SPEAKER:  The 7th and 8th.  I believe it was

11  July 7th and 8th.

12     THE COURT:  Okay.

13     MR. KUHL:  Sorry.  A little screen freeze there.

14     THE COURT:  That's okay.  All right.  So I think the

15  21 days is very reasonable in light of getting -- you need the

16  transcript.  You need to figure out your position based on the

17  testimony.

18     Although this is a not a summary judgment.

19     Well, that's what we'll do.  We'll do the 21 days and

20  then there will be 14 days for class plaintiffs to respond.

21  Unless you want to shrink it right here.  You have an

22  opportunity to shrink the time line and do it in seven days, if

23  you want.

24     MR. LEOPOLD:  You're talking about for Mr. Dillon?

25     THE COURT:  Yes.

1    MR. LEOPOLD:  We'll do it in seven days, Your Honor.

2    THE COURT:  Okay.  And then Mr. Kuhl, explain number

3    four to me.

4    "Within 14 days of the state defendant's filing and

5    answer, putative class plaintiffs will provide the state

6    defendants with a list of any additional depositions that must

7    be taken before former Governor Snyder's defense of qualified

8    immunity."

9    Do you mean in a summary judgment?  What do you mean

10   there?

11   MR. KUHL:  Right.  I mean, well, the case law is

12   already established that we have to prioritize discovery for

13   purposes of the qualified immunity defenses.

14   THE COURT:  Correct.

15   MR. KUHL:  And the vast majority of our witnesses have

16   already been deposed or are scheduled to be deposed here over

17   the next 30 days.  So our thought process is we have these two

18   things going on.  We have class certification.  We have to

19   prioritize discovery.  So I thought we had to address that in

20   this order.  I thought it was an appropriate mechanism to do

21   it.

22   We need to know what, if any, additional depositions

23   do class plaintiffs think are necessary.  If there's none,

24   that's great.  Then we can proceed.

25   THE COURT:  Okay.  Okay.

1    MR. LEOPOLD:  But they should be able to identify them

2    and get them done so we can then make decisions on how to

3    proceed.

4         THE COURT:  Mr. Leopold?

5         MR. LEOPOLD:  Your Honor, thank you.  I'm not sure at

6    this point in time for purposes of our class certification

7    papers we need to have any additional depositions taken.  I was

8    trying to understand.

9         THE COURT:  This is regarding Governor Snyder's

10   defense of qualified immunity.

11        MR. LEOPOLD:  I understand.  I think we are

12   sufficient if we have 24-hours to be able to digest that and

13   see if there is anything else, but I'm not of the view at this

14   point in time that we do.  I think we're comfortable in the

15   status that we are now.  And I -- you know, in regards to

16   number four, I'm not sure what else we need to do in terms of

17   either the state wanting discovery.  If they do, we can

18   expedite anything that they want so that we can all be on the

19   same schedule.

20        THE COURT:  Okay.  This is for you to identify, this

21   particular entry.  It sounds like you've had this for 48 hours

22   or something.  I know I have.

23        So I'm going to assume there's no one there and you'll

24   have to let me know if there is.  So I'm not going to

25   include --

1    MR. LEOPOLD:  We'll let you know no later than the end

2 of business tomorrow.

3    THE COURT:  Okay.  All right.  And number five

4 probably doesn't need to be there.  Because it said you would

5 do those depositions that so far you have not identified within

6 30 days.  And then state defendants would have 90 days after

7 filing their answer.

8    Now, a great deal of written and deposition discovery

9 has already been done.  There's a home inspection protocol for

10 the bellwether plaintiffs.  So what are you -- Mr. Kuhl, what

11 are you anticipating for the home inspections now of each named

12 class plaintiff or what?

13    MR. KUHL:  We haven't done any home inspections, Your

14 Honor?

15    THE COURT:  I know you haven't.

16    MR. KUHL:  We haven't been part of the process.  So I

17 can't rely on somebody else's.

18    THE COURT:  Stop.  You don't know if you can or not

19 until you look at the protocol, which we've all seen.  Do a

20 background check on who is doing it and then decide if that's a

21 reliable source.  You don't want to just redo it for the sake

22 of spending taxpayer's money and redoing it.

23    MR. KUHL:  Yeah.  Maybe it's my misunderstanding.  I

24 thought individual defendants were doing inspections.

25    THE COURT:  They can.  You certainly can.  But if you

1   don't need to, I don't know why you would.  If you --

2           MR. KUHL:  Okay.  Fair ...

3           THE COURT:  If you get it from an expert.

4           MR. KUHL:  Fair enough.

5           THE COURT:  But if you rely --

6           MR. KUHL:  But I find it hard to rely on an expert

7   from Veolia or VNA in light of the dispute between the parties.

8           MR. STERN:  Your Honor, this is Corey Stern.

9           THE COURT:  Somebody's -- for a minute there, somebody

10  was hammering.

11          MR. STERN:  There are workers in my house.  So it's

12  probably me.  I apologize.

13          I just want to note that in terms of home inspections,

14  the bellwether cases as they pertain to Governor Snyder or any

15  of the state defendants are presently still up on appeal.  And

16  while I think the decisions will follow form, you're talking

17  about home inspections of class representatives, I believe,

18  because I don't think the state is yet conceding that they're

19  in the bellwether cases.  So I just wanted to make that clear.

20          THE COURT:  Thank you.  So the home inspections are

21  not the ones that Veolia is doing now; is that the case?

22          MR. STERN:  Mr. Campbell, is that the correct answer?

23          MR. CAMPBELL:  I'm sorry.  That is the correct -- the

24  home inspections -- and I defer to Mr. Rogers on this.

25          But the home inspections that we have been pursuing to

1   date have been of the bellwether plaintiffs.  Those have not

2   occurred as of yet.  But we will be seeking to have inspections

3   of the homes related to the class representative.  We haven't

4   started that process as of yet, but we'd be in a position to

5   follow the existing protocol.  We just need to get arrangements

6   with the class lawyers and make that schedule, get it in place.

7           MR. LEOPOLD:  Your Honor, this is Mr. Leopold.  That

8   is fine.  We have not been apprised they want to do that, but

9   we'll do it on an expedited basis and I would only ask that the

10  state, if they are going to do it, they work in tandem so we

11  don't have multiple inspections.  They could all do it at the

12  same time.

13          THE COURT.  Absolutely.

14          MR. KUHL:  But, Your Honor, the point is we have not

15  participated in plaintiff discovery at all.  I don't even know

16  if we have deposition transcripts for the class plaintiffs, let

17  alone discovery responses.  None of that has been done.  So we

18  need to get that.  We need to review it.  Move for it.  We

19  haven't issued any discovery as to class plaintiffs'

20  allegations, which are important for commonality, typicality.

21  And as we know now from the depositions that have been taken,

22  many of which are false.  So we need to have the opportunity

23  because they're going to go to some significant issues for

24  class certification.

25          THE COURT:  Okay.  So the 90 days just seems like a

1 long time, but I'm not sure there's a way around that.

2         MR. KUHL: Your Honor, let me ask you about --

3         MR. LEOPOLD: May I? This is Mr. Leopold. May I make

4 a suggestion?

5         THE COURT: Sure.

6         MR. LEOPOLD: If there is a reasonable time frame that

7 the state can provide us, for example, what transcripts they

8 want, we'd be happy to provide them. What discovery, written

9 discovery, they want within a short time frame, we will move

10 on an expedited basis and get that to them. Because I think

11 90 days is a long way off and we can do it since we want to be

12 as cooperative as possible so everybody stays on the same time

13 line for class certification briefing purposes to work with

14 them in whatever way we can.

15         MR. KUHL: I appreciate that, Mr. Leopold.

16         I guess one question I had for Your Honor -- and this

17 goes back quite a ways. My recollection is Your Honor was

18 going to wait to make a decision on class certification until

19 after the first bellwether. Is that accurate?

20         THE COURT: If I once said that, it's not been on my

21 mind lately.

22         MR. KUHL: Okay.

23         THE COURT: Because I don't see any benefit to it one

24 way or another. I want to keep both tracks going.

25         MR. KUHL: That's fine. In looking at our dates, that

1   had been a recollection I had -- and this goes back quite a

2   ways -- is that our timing kind of lined up with where

3   completion of the first bellwether trials.  So that I thought

4   Your Honor had wanted the benefit of that.  In fact, that could

5   be an error in my recollection.

6          THE COURT:  I think that could even be a bit of a

7   problem.  So I'm going to just keep the foot on the pedal on

8   both of them.  So I'm going to change the 90 days to 70 days in

9   light of Mr. Leopold's offer to get expedited responses.

10         MR. LEOPOLD:  Your Honor, is this item number six that

11  you're referring to?

12         THE COURT:  Number six will go to 70 days.

13         So if we're at -- so we're at 91 days past an answer.

14         Now, here's the problem with number seven.  Is that

15  the experts are going to be starting to get deposed and I think

16  you just have to participate in that as you go.

17         MR. KUHL:  Your Honor, I would strongly push back on

18  that as being unfair.  I got to admit, I haven't even read the

19  attachments to the motion for class certification at this

20  point.  We don't have experts to assist us to prepare for those

21  depositions.  There is no possibility that we're going to be

22  prepared to participate in those depositions in any significant

23  way on the current schedule.  That would be unfair, Your Honor.

24         THE COURT:  I hear you.  Let me try to -- because I

25  don't want the experts deposed twice.  I am all in favor of two

1   full days.  I think that's very reasonable.  I think the City

2   of Flint used the word "breathtaking stroke" for class

3   certification.  And it is breathtaking in terms of some 14

4   experts and so on with all lengthy reports and deeply

5   meaningful report -- you know, substantive reports.

6           MR. KUHL:  In my proposal -- you're right.  I

7   understand we're going to have two days for the deposition.  My

8   thought had been that we'll have one day for the engineering

9   defendants and then a second day down the road for the

10  governmental defendants.

11          THE COURT:  Oh, I see.

12          MR. KUHL:  And the time period.  It's really just

13  giving us time to get up to speed.

14          THE COURT:  You're suggesting two different times.

15          MR. LEOPOLD:  Your Honor, may I just weigh in on this?

16  Because this is an important issue, of course, for everybody.

17          THE COURT:  Yes.

18          MR. LEOPOLD:  But from the plaintiff's perspective,

19  they are detailed, important depositions.  They are very

20  substantive.  If anybody, including the Court, has had an

21  opportunity to review them in some semblance, I think everyone

22  would be in agreement they are very substantive in nature,

23  which is our responsibility that we wanted to accomplish, which

24  we believe that we have.

25          That said, to do these on two separate days, you're

1  dealing with not only time, but a tremendous amount of cost to

2  take care of one expert and prep them at two different times

3  over long periods of time.  That's not fair, number one.

4  Number two, with all due respect to the state, the

5  state has been in this case for five years and although that

6  they have been up on appeal, to just say that they put a

7  curtain up between them and what has been going on in the case

8  is not necessarily fair to all the other 18 attorneys and

9  parties that are involved in the case and they should have, in

10  some semblance, have experts talk to experts and be somewhat

11  prepared for what, inevitably, you know, over at least the last

12  month and a half, everybody sort of knew what was going to

13  happen with the en banc ruling.

14  So I think it's not fair to put all of this off and

15  have two separate tracks just for the state.

16  MR. KUHL:  Whatever the deep pockets are that

17  plaintiff's counsel is talking about, the state does not have

18  those at this time.  There are significant limitations in our

19  ability to do anything.

20  THE COURT:  No, I understand that.

21  Here's what, Mr. Kuhl.  I think this is a tough one

22  because, as Mr. Leopold said, you've been in this litigation

23  for six years.  I understand you couldn't go hiring experts

24  before you knew how -- what was going to happen at the Court of

25  Appeals and you wouldn't have filed for en banc if you didn't

1   think there was a chance of getting it.

2           But I think that the depositions have to be back to

3   back on two consecutive days where possible.  If there's an

4   expert who can't do that or doesn't wish to do that, that's

5   fine.  But I do think that the degree of time that goes into

6   preparing to be deposed on the kind of detailed reports that

7   are provided, it would not be helpful to any of you to have to

8   prepare twice to even observe the deposition, consider followup

9   and so on.

10          MR. KUHL:  In that case, Your Honor, we just ask that

11  the expert depositions move back so we'll have time to prepare.

12          THE COURT:  I'm going to do that.

13          So right now -- what is the plan, Mr. Leopold, now for

14  when you would be starting to produce your experts?

15          MR. LEOPOLD:  We've been asked by the engineering

16  defendants to proffer these experts for depositions beginning,

17  I believe, first or second week of August to run through

18  whenever we can complete them early enough in September so that

19  they would have time to prepare their briefing.  We intended to

20  do that.  We've been in touch with our experts and working on

21  dates.

22          We also need to be mindful -- which I know the Court

23  is when this issue came up before.  A few of the experts are

24  dealing with the COVID issue and so their time is a little bit

25  limited due to the nature of the work that they're doing.  So

1   we are working around those schedules as well.

2          MR. CAMPBELL:  Your Honor, this is James Campbell.  We

3   did ask Mr. Leopold and the other class lawyers for dates for

4   the experts, you know, pretty much as soon as we got that

5   motion.  Just knowing that with 14 professionals and experts

6   like this and some that had indicated they were involved in the

7   coronavirus and COVID issues, that we wanted to just get

8   those -- the requests out there right away.  But we also

9   have -- we don't have anything set as of yet.

10          So although the efforts to try to make that happen

11  started right away, we don't have dates and, you know, one of

12  the impediments was the issue that we'll address next, I think,

13  regarding the amount of time for the expert depos.

14          MR. LEOPOLD:  Well, we should also say the reason why

15  there's been a few days' delay is because of the last hearing

16  last week dealing -- before we knew the appellate court was

17  ruling, that we thought we were going to be changing the entire

18  schedule to a certain extent.  But we are endeavoring as we

19  speak to get those dates.

20          THE COURT:  Okay.  Then what I think we need to do is,

21  sadly, I know you're endeavoring to get them now, but I think

22  we need to postpone them for a period of time for the state to

23  get up to speed.  And so I think we need a sort of moratorium

24  or whatever, a stay, on that portion of the discovery for 60

25  days from today.  Which will permit the state to read the brief

1  and the reports, more importantly, or as importantly, and

2  figure out who they're going to consult with to prepare for the

3  depositions.

4         They have a right to appeal.  Qualified immunity is a

5  well-established principle and they made that argument.  They

6  pursued it.  It has thus far not been successful, but I can't

7  punish them for doing that.  And so we'll put -- so we won't

8  begin experts for 65 days.

9         MR. LEOPOLD:  So, Your Honor, just to be clear where

10  we're at, is 65 --

11         THE COURT:  From today.  Not from --

12         MR. LEOPOLD:  65 days from today.  So the middle of

13  September, if you will, we should look to be getting dates now

14  to try and get them all on the books for the middle of

15  September moving forward for at least a couple of weeks?

16         THE COURT:  Correct.

17         MR. LEOPOLD:  Thank you.

18         MR. KLEIN:  Your Honor, this is Sheldon Klein.  Could

19  I chime in for a minute?

20         THE COURT:  Yes.

21         MR. KLEIN:  Two days -- 14 depositions in two days,

22  the notion we're going to get this done in a couple of weeks or

23  a month strikes me as highly infeasible.

24         THE COURT:  I didn't have that idea.

25         MR. KLEIN:  It's an unrealistic schedule.

1          THE COURT:  Yeah.  No.  That's not what I was thinking

2    was going to happen.  Also, you'll have to breathe and you have

3    to lead your lives.  So back to back to back with these experts

4    is just not manageable.

5          So how much time, Mr. Klein, do you think should be

6    set aside to get them done?

7          MR. KLEIN:  It's hard for me to see them getting done

8    in -- I mean, two months would be achievable.  I just don't see

9    how it works in much -- I mean, that's 28 deposition days over

10   two months.  That's not -- you know, that's not extravagant.

11         THE COURT:  No.

12         MR. LEOPOLD:  Your Honor, this is Mr. Leopold.  Could

13   I just be heard on this, too?  With all due respect --

14         THE COURT:  Yeah.  Mr. Stern asked to be heard.

15         What was that, Mr. Stern?

16         MR. STERN:  I apologize.  I think it's important if

17   we're going to see the forest through the trees or whatever,

18   there's going to come a point in the next 30 days when the

19   defendants are going to seek to depose the experts that are

20   being proffered in the bellwether cases as well in anticipation

21   of an early February trial.  And so any considerations that are

22   being made for timing should probably include -- and this

23   isn't to try to and jump over the class, but the reality is the

24   same lawyers are going to be presenting experts and ...

25         THE COURT:  You just went mute.

1      You're still muted.  You'll have to go back.

2           MR. STERN:  Can you hear me now?

3           THE COURT:  Yeah.  And I think you were saying that --

4           MR. STERN:  Just any consideration on timing should

5  probably also include any experts that are going to be named by

6  both the individual plaintiffs and defendants for the

7  bellwether cases.

8           THE COURT:  And how many experts do you anticipate

9  having between and you Mr. Scholnik?

10          MR. STERN:  I believe we have 10.

11          THE COURT:  Okay.

12          MR. LEOPOLD:  Your Honor, this is Mr. Leopold.  Can I

13  just address this particular issue?  And I appreciate -- there

14  are a lot of lawyers that have tried a lot of cases and have

15  been practicing a long time in dealing with these types of

16  issues.  I appreciate experts and the time that it takes, but

17  in all of these complex litigations, rarely have I seen courts

18  that do not require, where appropriate, especially with the

19  number of firms and lawyers in these firms, not to have to

20  double up and get these depositions done.  To just say these

21  depositions are going to go on for three months is not fair.

22          THE COURT:  I didn't say that.

23          MR. LEOPOLD:  It's routine to have multiple

24  depositions.  Two experts even on the same day with the amount

25  of lawyers involved in these firms to have to take depositions.

1          THE COURT:  That's -- stop.  Stop.

2          MR. LEOPOLD:  Mr. Klein may not be able to be at

3  all the depositions.

4          THE COURT:  Stop.  You can stop talking.

5          That's not what I was suggesting.  I'm just trying to

6  figure out a plan now that I'm reminded that we have ten more

7  experts to take during this same time period.

8          Mr. Stern and Mr. Scholnik, when will your experts be

9  identified?

10         MR. STERN:  It's the first week of August, Your Honor.

11  I believe it's the August 7th is the date.

12         THE COURT:  And when does the CMO anticipate the

13  depositions of them will begin?

14         MR. STERN:  I'm not sure that the case management

15  order states it.

16         THE COURT:  Yeah.

17         MR. STERN:  But Mr. Campbell and Mr. Mason and

18  Mr. Rogers for the defendants would probably know better than

19  we do.

20         MALE SPEAKER:  Your Honor, if I can just add something

21  on there.  We intend to provide a few dates for each expert to

22  be available for deposition with the reports.  So we're going

23  to try to help expedite this procedure.  We generally try to do

24  that.

25         THE COURT:  And what are we going to do about the fact

1   that Governor Snyder is -- correct me if I'm wrong.  We're

2   still waiting for the mandate for Snyder in *Walters* and *Sirls*.

3   Is that right, Mr. Scholnik?

4          MR. SCHOLNIK:  I believe so, yes.

5          MR. KUHL:  Do we have an opinion yet in *Walters* and

6   *Sirls*?  I don't think so.

7          THE COURT:  We had argument.  You had an argument.

8          MR. KUHL:  Ms. Bettenhausen will know better than I

9   do.

10         MS. BETTENHAUSEN:  This is Margaret Bettenhausen.  No,

11  we haven't.  The opinions haven't issued in *Walters* and *Sirls*

12  yet.

13         MR. BARBIERI:  That's correct.  Charles Barbieri says

14  the same.

15         MR. STERN:  That's true.  But as someone who passively

16  participated in the oral argument there, it was pretty clear

17  from the judges that they were going to follow form in terms of

18  their decision when it came to the *Carthan* decision.  And, in

19  fact, even said so on the record.  And so Walter -- the state

20  sought to stay the oral argument pending the outcome of the

21  *Carthan* case and was denied.

22         Then at oral argument, the justices indicated that

23  this was the same issues and it would come to the same

24  conclusion and I don't believe anybody had any argument to the

25  contrary.

1            So for anybody to believe at this point that there

2 won't be a mandate issued, I think, would be -- you know, I

3 don't want to use any bad adjectives. But I would bet

4 significant money that mattered to me that the Court is going

5 to follow form as indicated on the record by the Court.

6            THE COURT: Yeah. I was an even more passive

7 participant than you and Mr. Walker and I reached the same

8 conclusion listening to it.

9            Not withstanding that Ms. Bettenhausen and

10 Mr. Barbieri and many others have some things to offer there.

11 But in terms of the questions that were asked, I didn't hear

12 answers to those questions that would lead to a different

13 conclusion.

14            So I hope that the state is thinking ahead in that

15 regard as well. Because I know I said a moment ago you have a

16 right to appeal. It's not only a right. You may have a duty

17 to test these decisions and so on to your client. But you also

18 have to be realistically planning ahead, making contingencies

19 for "In the alternative, if we don't prevail, then we're going

20 to be ready."

21            So for now be aware that at the beginning of August

22 you're going to get notice of the plaintiff in *Walters* -- well,

23 in those cases.

24            MR. BARBIERI: Your Honor, Charles Barbieri. May I be

25 permitted just to speak briefly?

1            THE COURT:  Sure.

2            MR. BARBIERI:  We have not -- and I don't disagree

3  with Mr. Stern's belief that he thinks a mandate will issue and

4  it will be adverse to us.  But we still have not answered any

5  complaint in that matter.  We just answered the *Carthan*

6  complaint today.  And, quite frankly, you have to take that

7  into account when we fold in.

8            You said originally in the amended case management

9  order that when we answered, we would be folded into the case.

10           THE COURT:  Yes.

11           MR. BARBIERI:  And it would be determined at that time

12 what discovery would be permitted.  And, obviously, we have

13 qualified immunities, too -- Governor Snyder is not the only

14 one here -- and we have a right to be heard on those.  So there

15 has to be some process allowed for that and it cannot be on a

16 slippery slope that we'll be in a trial with the bellwether

17 plaintiffs in January or February.  We're just not in that

18 position given the posture of where we are.

19           THE COURT:  Right.  So what do you suggest,

20 Mr. Barbieri?  So what is your proposal?  I identified the

21 problem, but what I need is an answer.

22           MR. BARBIERI:  Yeah.  What I wanted to do -- and I

23 believe it will be filed with Your Honor this afternoon -- is

24 for our next status conference, we would be folded into the

25 case management order.  You would provide some dates on what we

1  needed to do with any paper discovery.  It maybe

2  self-implementing in some respects.  And then if we wanted to

3  do any further discovery, we would be permitted.  And then we

4  believe that we were entitled to seek summary judgment based on

5  the discovery that's been conducted.

6           And we may not be that far off the schedule that the

7  state just suggested to Your Honor today.

8           THE COURT:  Okay.

9           MR. BARBIERI:  But I want to see it and do it in a way

10 that's going to protect my clients adequately.

11          THE COURT:  Okay.

12          MR. ROGERS:  Your Honor, it's David Rogers.  You had

13 asked -- in answer to your question on the expert discovery

14 schedule, the period of time during which the bellwether

15 experts are to be deposed under the existing CMO that was

16 modified by you recently August 27th through October 28th, a

17 60-day period.

18          THE COURT:  Okay.  Well, I think what we should do is

19 keep that for now because it's not really been -- people have

20 not -- you all have not submitted concrete proposals or counter

21 proposals.  So I'll maintain that for now.

22          And I do appreciate the offer, Mr. Scholnik and Stern,

23 to make sure that when you issue those -- when your experts

24 issue those reports, that you include in any cover letter or

25 how you wish to do it the dates they'll be available.  Because

1   I think that will streamline the process.

2           But let's go back ...

3           And Mr. Barbieri, when you submit your proposal, if

4   you could model it after what Ms. Bettenhausen and Mr. Kuhl

5   have done here.

6           MR. BARBIERI:  I think it may already be in the

7   process of going out.  But if you permit me, perhaps, by Friday

8   or Monday to supplement it.  I wasn't that farsighted, Your

9   Honor, when I identified the issue.

10          THE COURT:  Okay.  I just find that the author of the

11  proposal -- the concrete proposal is an advantage.  And if you

12  want an advantage, the more concrete you are with me, the more

13  helpful it is.

14          MR. BARBIERI:  Would I be allowed on Monday to submit

15  that, Your Honor?

16          THE COURT:  Yeah, that would be fine.

17          MR. LEOPOLD:  Your Honor, this is Mr. Leopold.  Could

18  we go back to the issue of depositions of class experts?

19          THE COURT:  Yes.  That's what I'm doing right now.

20          MR. LEOPOLD:  One of the things that we try to do --

21  and I think it's normal to do in cases of this kind -- is when

22  we give the dates, we will give two different dates for the

23  same expert that they are available so that the defendants can

24  work amongst themselves and have a choice of two days instead

25  of just saying, "Here's one date."  Because it's likely others

1    may have conflicts, whatever it may be.  But, other than giving

2    those two dates, they need to pick one of those two dates.  Or

3    else with so many counsel, somebody's going to have a conflict

4    and we're never going to get anything set.

5            So that's number one.  And number two, we're going to

6    also want to do those depositions.  We on the class side are

7    prepared to cover multiple depositions in a short period of

8    time even if it's two on a particular day.  So we're going to

9    give dates, again, two for each expert, but we're going to give

10   dates that are going to be in a time sensitive manner.

11   Meaning, you know, over a 30-day period or so.

12           MR. CAMPBELL:  Your Honor, this is James Campbell.

13           THE COURT:  Uh-huh.

14           MR. CAMPBELL:  I believe -- and I'd stand corrected

15   because I haven't read it before I make this comment.

16           But I believe the CMO for the bellwether requires that

17   when the bellwether experts are identified or disclosed that

18   three sets of dates be provided.  And, again, I'd stand

19   corrected.  So that was part of the CMO.

20           For whatever reason, that was not part of the class

21   parts of the CMO with the disclosure capability.  With respect

22   to the time over which 28 days of expert depositions take

23   place, I would request, as Mr. Klein has already requested and

24   I think Your Honor was accepting of the notion, that those 14

25   experts in 28 days take place over, basically, a 60-day period

1 || or a two-month period.

2 ||        THE COURT:  I think that's reasonable.

3 ||        So at this point those depositions will not start for

4 || 65 days from today and then they'll need to be completed over a

5 || two-month period.  Let's say a 60-day period.  And whenever

6 || possible, I would recommend avoiding double depositions on the

7 || same day, but I'll leave that to all of you to sort out.

8 ||        And Mr. Campbell, are you telling me that you need

9 || additional dates from counsel?

10 ||        MR. CAMPBELL:  No, Your Honor.  I only offered that

11 || just because it's part of the CMO as I recall it.

12 ||        THE COURT:  Okay.

13 ||        MR. CAMPBELL:  And it wasn't part of the -- for

14 || whatever reason, the class aspect of, you know, the rules

15 || of -- the case rules, the CMO rules for class although it was

16 || in the bellwether section.

17 ||        THE COURT:  I get it.  I get it.

18 ||        Okay.  It's a good practice.

19 ||        MR. CAMPBELL:  It makes it easier.

20 ||        THE COURT:  I think we're on paragraph eight of the

21 || State's proposal.  Which is still a good proposal as far as I'm

22 || concerned.  So that's triggered 30 days after the end of the

23 || time period for deposing class plaintiffs' experts and

24 || paragraph nine, unless putative class plaintiffs want less

25 || time.  If you do, let me know.  Now would be a good time for a

1  reply in support of your motion for class certification would

2  be filed 30 days from when the opposition is filed.

3          MR. LEOPOLD:  We could do it --

4          THE COURT:  Did we set the date for the opposition,

5  Mr. Kuhl?

6          MR. KUHL:  I'm sorry, Your Honor.  Could you say it

7  again?

8          THE COURT:  Did we set -- oh, right there.  I'm sorry.

9  That's in number eight.  It's Your opposition and expert

10  reports and disclosures.  Got it.  Of course.

11          So it sounds like 30 days is already pretty expedited,

12  but if you want less time ...

13          Because you may want to take their experts'

14  depositions.

15          MR. LEOPOLD:  We do, Your Honor.  We need the 30 days.

16          THE COURT:  Okay.  Then we've got the hearing.

17          And tell me if any -- okay.  Here's where we're going

18  get to whether there's a request for an evidentiary hearing.

19          So now what we have to figure out is if there is any

20  reason to have a separate schedule for the private defendants.

21  And I think it's not going to work to have a separate

22  bifurcated process because it's all triggered by getting these

23  depositions done.  So we're going to have one omnibus schedule

24  for everybody and it'll be this one.

25          The only thing I'm going to tell you now is that as

1    I'm working my way through the motion, there's one or two

2    issues that become red flags, so to speak, of concern for me

3    and I may want to break those issues off, for example.  And

4    this is not necessarily going to happen, but something I've

5    been percolating is whether there can be a class -- a damages

6    class of minors in a case -- in this case.

7            And so if, as I read that more carefully, do the

8    research and determine that I have significant concern about

9    it, I'm going to let you know.  And if there are other

10   issues -- because I may want just early briefing on that.  So

11   that if I think it can't be done, I'm going to let you know so

12   that no one's doing discovery and so on regarding a subclass of

13   minors.

14           So don't, you know, count on it, but it's something

15   that I'm thinking about.  And the sooner I can get to it, the

16   happier I'll be.  Because I don't want unnecessary work to be

17   done on that if I can figure out an answer sooner rather than

18   later.  But of course, I'd let everybody brief it.

19           MR. LEOPOLD:  This is Mr. Leopold, Your Honor.  We

20   certainly would vigorously want to be able to brief that issue

21   to the Court.

22           THE COURT:  Well, I had --

23           MR. LEOPOLD:  If I can go back, Your Honor, to one

24   issue about -- I think it's number nine, paragraph number nine.

25           THE COURT:  Okay.

1          MR. LEOPOLD:  I think class for its reply is going to
2     need more than 30 days.  If the state has experts, which I'm
3     assuming they're going to have several, I would think, in order
4     for us to get expert dates, take their depositions, get the
5     transcripts and then also incorporate that briefing into the
6     reply, it's quite burdensome for us.  Especially in light of
7     the fact that the defendants --
8          THE COURT:  Of course.  Just make your proposal.
9          MR. LEOPOLD:  I'm sorry?
10         THE COURT:  I understand that.  I get it totally.
11         MR. LEOPOLD:  But we need additional time, Your Honor,
12    than the 30 days.
13         THE COURT:  Right.  But tell me how much time.  You
14    know better than I do.
15         MR. LEOPOLD:  Sixty days, Your Honor.  We'd like 60
16    days for that.
17         THE COURT:  Okay.
18         MR. LEOPOLD:  Thank you.
19         THE COURT:  That's okay with me.
20         All right.  Great.  Okay.  Well, then, do we have that
21    sufficiently addressed?
22         MR. LEOPOLD:  Your Honor, I need to go back to one
23    other paragraph because I'm not sure I'm clear on what the
24    Court said.  On paragraph seven the Court reduced it from 90
25    days to 70 days in terms of the additional discovery or any

1    discovery the state would like to do.  Do you recall that?

2              THE COURT:  Correct.  Yes.

3              MR. LEOPOLD:  Okay.  So I believe Your Honor said 70

4    days from the time of the answer.  But wouldn't it be 70 days

5    from today so that they have to work to get us whatever

6    discovery they want?  If not, then it's really 90 days from

7    today.

8              THE COURT:  It's 91 days from today.  Because it was

9    21 days -- well, not from today.  From the mandate.  It's 21

10   day from the mandate plus 70 days.

11             MR. LEOPOLD:  Right.  But is there a reason why we

12   can't start the clock now in terms of them providing us

13   discovery that they want so that we can move the ball a little

14   quicker?

15             THE COURT:  I don't have the mandate and I don't have

16   jurisdiction to require that.  This is all dependent on the

17   mandate issuing.  So I've got to get that.

18             MR. LEOPOLD:  But everything we're doing is without

19   the mandate right now.

20             THE COURT:  I know.

21             MR. LEOPOLD:  So why would it matter?

22             THE COURT:  Because it's triggered by the mandate.  So

23   if we don't get the mandate, we're going to get back together

24   by the 29th and fix this schedule up in a different manner.

25             If it turns out that the solicitor general authorizes

1   and the client requests or however it works, a cert petition,

2   then I think we're going to have to get a motion -- I don't

3   know exactly what happens then, but it's all got to be

4   triggered from the mandate.

5           Does that satisfy you?

6           MR. LEOPOLD:  So all of these dates are stayed until

7   we get the mandate and then they jump from the mandate date?

8           THE COURT:  Yes.

9           MR. LEOPOLD:  So the 30 days for the answer is not 30

10  days from today.  It's whenever the mandate issues?

11          THE COURT:  I think it was 21.

12          MR. KUHL:  21.

13          THE COURT:  21 days.  Yeah.

14          MR. LEOPOLD:  So if we're three or four weeks from now

15  and we don't have a mandate, we're looking at an answer not

16  until September.

17          THE COURT:  Well, but we're going to be back together

18  in two weeks.  And we're going to come up with some way to

19  address that.  That's why I was asking you.  Ms. Bettenhausen

20  answered and she said she thinks it should be within seven

21  days, within about a week from today.  Or from Thursday.

22          And that's why I was expressing frustration that I've

23  had other cases where it just seemed to be a month or so or

24  more.  So that's -- but, you know, all of you have a lot of

25  letter writing capacity and maybe there will be a letter sent

1   to the Court of Appeal's clerk asking when it will be issued.

2   Because we're waiting for it.

3            MR. LEOPOLD:  I realize the Court has no, I guess,

4   really no jurisdiction to force anybody -- to state, I guess,

5   these individuals to do anything.  But knowing that we are just

6   waiting for the mandate.  I guess can we not get the state to

7   send us what they want by way of discovery instead of waiting

8   for those time periods to start?

9            THE COURT:  I would love that.

10           MR. KUHL:  We'll certainly get it out as quick as we

11  can by the time we file or even before.  We're not going to

12  issue it before our mandate and it's got to be drafted.  At the

13  same time we're defending depositions every day.  Every day.

14           MR. LEOPOLD:  Well, it could be an informal request is

15  what I'm saying.

16           MR. KUHL:  Still, somebody has to go through and put

17  them together, Ted.  When right now we have a completely full

18  plate.  And every one of my team members is on a furlough every

19  day, every week.

20           MR. LEOPOLD:  Okay.

21           THE COURT:  Okay.  I don't have authority to do

22  anything other than what I'm doing.

23           MR. LEOPOLD:  I appreciate that, Your Honor.

24           THE COURT:  Here's the situation, Mr. Leopold, if you

25  have a concrete proposal that provided another way to go

1    forward, bring it on.  And I will absolutely consider it.

2              MR. LEOPOLD:  I would love to be able to do that, but

3    if it's the Court's position -- and, I guess, legally, the

4    Court is certainly correct, I guess.  There's no jurisdiction

5    against the state.  Although there are all the other parties

6    that the Court does have jurisdiction over.  And I don't see

7    why -- with all due respect the plaintiff class is very

8    prejudice because the defendants are going to have the

9    briefing, the reports for months and months and months to file

10   in opposition brief, et cetera.  And it's, you know --

11   respectfully, it's unfair.

12             THE COURT:  Well, it's not fair or unfair.  It's what

13   the law requires.  It's just neutral.  I know it has an impact

14   of delay, but it --

15             MR. LEOPOLD:  No, Your Honor.

16             THE COURT:  I don't have a way around it.

17             MR. LEOPOLD:  It is unfair -- whether the law allows

18   it or not, it doesn't mean it's not unfair.  It is unfair when

19   a party has months and months to respond to extensive briefing

20   and we don't have that opportunity.  All the other defendants

21   are in the case right now.  There's no reason -- and,

22   especially, the state is in the case on the injunction issue.

23             THE COURT:  Well, if you want to --

24             MR. LEOPOLD:  We can move forward as to the time we

25   had.

1          THE COURT:  If you want to produce your experts twice,

2    we can do it that way.

3          MR. LEOPOLD:  We might want to do that.  If we keep

4    the schedule as is, we might want to do that.

5          THE COURT:  Okay.  But as of now, this is what we've

6    worked out on --

7          MR. LEOPOLD:  Your Honor, if I'm on the record right

8    now --

9          THE COURT:  Just stop.  Stop.  Stop, Mr. Leopold.  I'm

10   going to mute you right now if you don't.

11         MR. LEOPOLD:  Can I just say?

12         THE COURT:  No, you can't.

13         MR. LEOPOLD:  Our position is we'll produce our

14   experts twice if we can schedule them now --

15         THE COURT:  Mr. Leopold, if I can figure out how to

16   mute you at this point I would have to do that.

17       (Mr. Leopold placed on mute.)

18         THE COURT:  So here's the situation about fair and

19   unfair.  That implies that someone is intentionally doing

20   something and at this point, the intentionality is missing.

21         And so I'm sorry that we had to mute you on that, but

22   we can't have two people talking because you won't be on the

23   record when that happens.

24         So we're going to move on.  And no one wants this case

25   to move forward faster than I do and all of you.  And so

1   everyone has their own motivations here for needing this to
2   come to a conclusion.  Some may wish to drag on, I don't know.
3   But I don't wish to have that happen on my watch and I'm doing
4   what I can to keep it going forward.
5          Here's on the *Bacon* versus Newman -- I mean, versus
6   LAN.  Here's what I think I'm going to do.  This -- what I'm
7   trying to avoid here is having various sort of individual cases
8   require a sort of more time than sort of the bellwether
9   process, the class process, the sort of test cases with *Brown*
10  and *Marble* to test those pleadings.
11         And the *Bacon* case is sort of rising to the top of the
12  small number of cases that are sort of posing that challenge
13  for me.  And so what I'm going to do is consider the pending
14  motions to dismiss on the existing now filed amended complaint.
15  Not the newly proposed amended complaint, but the one that's
16  there.  And I have a response and I'll permit a reply.
17         So anyone who -- I think I have MDEQ and I have City
18  of Flint motions to dismiss.  I'm not sure how many other
19  motions to dismiss in *Bacon*, but I do have a response from
20  plaintiff's estate.  And so does anyone who has filed a motion
21  to dismiss wish to file a reply to the response?
22         MR. KIM:  Your Honor, William Kim for the City.  Yes.
23  We were planning on filing a response to the *Bacon* -- or reply
24  to the *Bacon*'s response to our motion.
25         THE COURT:  Okay.

1      MS. JACKSON:  Your Honor, this is Krista Jackson on

2   behalf of the MDEQ defendants, employee defendants.  We also

3   plan to file a reply brief in *Bacon*.

4      THE COURT:  Okay.  Good.

5      Well, that will all just follow the local rules.  And

6   then, I'm not anticipating an oral argument in that, but anyone

7   who wishes to have an oral argument, if so, you can let me

8   know.

9      Okay.  Let's go to the deposition issue where VNA has

10  listed nine additional potential witnesses to be deposed.  So

11  Mr. Campbell, you have -- let me go to that submission.  Here

12  it is.  You want to depose Alicia Bibbs (ph).

13     MR. CAMPBELL:  Your Honor, Dave Rogers is going

14  address this issue.

15     THE COURT:  Okay.  Let me tell you.  The response that

16  I got from, I think, Mr. Stern, indicates that it's the

17  teachers that he objects to at this point.  Let me make sure I

18  understand Mr. Stern's response.  Let's go through these one by

19  one.

20     Mr. Stern, do you have an objection to Ampy's mother,

21  Alicia Bibbs being deposed?

22     MR. STERN:  Yes.

23     THE COURT:  And what is the basis of that objection?

24     MR. STERN:  They've already deposed one of the parents

25  and it seems too much to depose another parent.  It's -- you

1  know, we're on a pretty short time frame.  If they're a parent

2  of a party, I see no reason why they can't serve some

3  additional Interrogatories or admissions -- request to admit to

4  sort of, you know, preserve some of the time associated with

5  the six-hour home inspections and the depositions that are

6  still scheduled, the fact witnesses and then the expert

7  depositions and then responses to summary judgment.

8          There's just so many hours in the day and each one of

9  the parents has been deposed for two days to the extent they

10  had questions for those parents.  So we've prepared for and

11  reserved two days of time for the parents that were deposed to

12  now depose the other parent or grandparent to ask the same

13  questions.  I've agreed and offered to provide responses to

14  written discovery to the extent there's additional information

15  that's needed on family members, especially because they've

16  already deposed a parent and/or, you know, legal guardian.  I

17  just don't see the need for a second parent.

18          THE COURT:  Okay.  So Mr. Rogers, why do you need the

19  mother of Ampy, A-m-p-y?  That mother apparently went to the

20  parent/teacher conferences and helped with homework.  But the

21  mother isn't an expert in cognitive disorders related to lead.

22  So the mother's going to say I worked on spelling words and it

23  took Ampy a long time to spell.

24          I mean, how is that going to help you in a way that

25  the testing and all the other can't accomplish?

1          MR. ROGERS:  By way of background.  I think this would

2     help the Court in resolving this and going forward.  We were

3     very careful in reviewing all of the plaintiff's

4     representatives' depositions very carefully and all the written

5     discovery and narrowing down to the utmost extent the number of

6     additional fact witness depositions that we were seeking to the

7     point where we're now with the nine.

8          THE COURT:  Okay.

9          MR. ROGERS:  With respect to each one of these, as you

10    will see in our submission, either the grandparent, the other

11    parent or the teachers that we've identified, had some role

12    distinct and separate from the parent who was the

13    representative of the minor plaintiff who testified in the

14    case.

15         So they have distinct and separate roles and

16    information that no one disputes is relevant to the damages

17    and, perhaps, liability issues in the case.  And with respect

18    to Ampy, as you can see, Mr. Ampy, who was the representative

19    who testified at deposition, said that the mom was the one who

20    was involved in the parent/teacher conferences and who knew all

21    about the plaintiff's treatment from various medical care

22    providers that the father did not know about.  So for each one

23    of these individuals, they absolutely possessed discoverable

24    information.  We were very narrowly focused.

25         THE COURT:  Then why can't -- Mr. Rogers, why can't

1  you do what Mr. Stern just suggested of submitting written

2  Interrogatories regarding the mother's responses?

3        MR. ROGERS:  Well, first, they're not a party.

4  The person we're seeking to depose is not a party so the

5  Interrogatory rule wouldn't apply.  But in terms of -- it's

6  just not the same.  I mean, we could probably do these

7  depositions in -- they wouldn't take two days.  They would

8  probably take half a day, at least, from our point of view.

9  And to ask for nine additional fact witness depositions who

10  have very important evidence that is relevant, there's no

11  contest or dispute that it's relevant, and to have a half a day

12  of depositions for each one of these nine folks with respect to

13  the 14 bellwethers is not unduly burdensome, we believe.  And

14  the deposition practice is much preferred over Interrogatories.

15        And with respect to some of them, you know, they're

16  not relatives.  They're teachers and medical care providers and

17  the like and they wouldn't be required to answer those type of

18  discovery requests anyway.

19        THE COURT:  Right.

20        MR. STERN:  Your Honor, if I just may respond?  The

21  reason I didn't address the parents or the grandparents in my

22  letter to the Court was because I thought that I had an

23  agreement with Mr. Ken Halligan that Interrogatories and

24  written discovery were sufficient and that the only thing we

25  were arguing over or disagreeing over were the teachers.

1          To the extent that these are nonparties to the suit,

2     they are the individuals who hired my firm to represent the

3     interest of the children and I've agreed to assist them,

4     provide written discovery in conjunction with it on behalf of

5     those individuals.

6          There has not been a single deposition in this case

7     that has taken half a day.  The VNA defendants are not the only

8     defendants in the case.  If my clients are put up for

9     bellwether -- you know, for another round of depositions or

10    their parents, then in all likelihood by then a mandate may

11    have come from the state.  All of the folks who were there

12    participating in the bellwether depositions previously will

13    likely be there to participate again.  And there's no way these

14    depositions are going to take half a day.  They're just not.

15    That's never happened yet.

16          THE COURT:  Okay.  Mr. Rogers, I understand why you

17    want a deposition instead of written Interrogatories.  I see

18    each of the explanations.  And if we had a single case of

19    Ampy versus VNA, I'd allow this deposition and probably

20    another -- another one regarding Ampy.  But we're trying to

21    balance and have this be proportional, observe the

22    proportionality guiding principle in discovery.

23          So what I will permit you to do is submit written

24    Interrogatories, Mr. Stern, offering to get sworn answers to

25    those questions or to provide the answers to you.  If at that

1  point you can show me that there is something critical that is

2  going to be learned, then, you know, there may be one or two

3  depositions that could be done by way of followup in the days

4  leading up to the trial, if needed.

5           MR. ROGERS:  Understood, Your Honor.  I guess we still

6  have to address the teachers.

7           THE COURT:  That goes for the teachers, too.  I mean,

8  you can subpoena the school records.

9           MR. ROGERS:  We have.  We have, Your Honor.

10          THE COURT:  If you have the IEP, you have everything

11  that teacher's going to tell you.

12          MR. ROGERS:  Well, I respectfully disagree, Your

13  Honor.  You know, the fact that we have the education records

14  is what led us to notice the depositions of those teachers.

15  Because there's more information and it's information in there

16  that they can provide to us in the deposition that goes beyond

17  the education records.

18          So, again, we were very selective in what we requested

19  and tried to keep it very narrow.

20          THE COURT:  I see that.

21          Tell me about Ann Wagar, W-a-g-a-r, who is Davis'

22  special education teacher.  You have his high school

23  performance and you have his IEP.  What is she going to tell

24  you?  What do you want to ask her.

25          MR. ROGERS:  The details of those IEPs and how they

1 relate to the actual performance in the classroom.  IEP is, as
2 you know, individualized education programs.  We want to know
3 how they were implemented; whether the student, in fact, met
4 the goals in the IEP and how it changed from year to year.  So
5 the IEPS are sort of -- there are hopes as to how kids will do
6 in school, but we want to know how the IEPs were implemented
7 and what impact they had to find out with respect to that
8 individual plaintiff the extent to which that student was able
9 to overcome any difficulties that they had in academic
10 performance.

11          And, again, this wouldn't take two days of
12 depositions.  We could do that deposition in half a day.  You
13 know, the other defendants, I'm sure, would benefit from it as
14 well.

15          THE COURT:  Okay.  Let me tell you.  I do want to
16 permit the deposition of Kathy Eaton, R-y-d-e-r's grandmother,
17 because, apparently, she's going to be able to tell you the
18 extent of the exposure to unfiltered Flint water from when that
19 ended and use of bottle or filtered water began for that
20 particular child.

21          So I know I interrupted you, but ...

22          And Mr. Stern, how are you going to get the
23 information that George Lee might have in September 2017
24 regarding the condition of a Flint home purchased in 2014?
25 Will you be able to get answers to questions.  Because it's a

1  real concrete thing that an Interrogatory ought to able to

2  answer.

3       MR. STERN:  Any Interrogatory or request to admit or

4  request for production of documents that the defendants want to

5  have produced to them, we are in contact with the families.  We

6  are the ones who produce the parents that gave this information

7  in the first place and I have zero doubt that we can get them

8  all of the information they want.  On any one of the parents or

9  relatives of our clients.

10      THE COURT:  Okay.

11      MR. STERN:  I don't represent the teachers.  I don't

12 represent physicians.  My objection to those depositions are

13 just the timing and threat of what is occurring right now.  I

14 mean, those are not summary judgment issues.  Those are not --

15 you know, it's common practice in my business -- in our

16 business to prior to trial, but potentially post-summary

17 judgment, to be taking a few depositions here and there in

18 advance of trial.

19      THE COURT:  Of course.

20      MR. STERN:  And, you know, why are we going to take

21 five damages depositions to see how someone met at five or

22 seven or nine-years-old in an IEP in advance of what I am

23 certain VNA is going to say they have no liability because this

24 person wasn't even potentially exposed in their home, hence the

25 six-hour home inspection that they want to do prior to March

1   2015 when VNA left Flint forever.

2          So I think it's putting the cart way ahead of the

3   horse.  I think these issues are, potentially, issues for later

4   when it comes to teachers and doctors.  But to the extent it's

5   family members I will bend over backwards to get them the

6   information they need sworn under oath.  And the minute I have

7   a problem with it, I'll let them know.

8          THE COURT:  Okay.  Then I'll permit the Kathy Eaton

9   deposition and order the responses to Interrogatories or

10  request to admit for the other witnesses.

11         MR. ROGERS:  Thank you, Your Honor.

12         And then, Mr. Rogers, you have every right come back

13  and let me know that that was inadequate in terms of what you

14  were actually seeking to find out?

15         MR. ROGERS:  Understood, Your Honor.

16         MR. LANCIOTTI:  Your Honor?

17         THE COURT:  Yes.

18         MR. LANCIOTTI:  This is Patrick Lanciotti.  Can I be

19  heard on this?

20         THE COURT:  Sure.

21         MR. LANCIOTTI:  Our office represents Kathy Eaton's

22  grandchild and it sounds like VNA is looking for facts and

23  information related to the child's consumption of water.

24  Couldn't that be answered in an Interrogatory as well?  Why do

25  we need a deposition?

1    THE COURT:  Well, that's a good deposition.  Why do

2  you need that in a deposition?  If Kathy Eaton is able to say

3  young Ryder -- I guess Ryder is his first name -- drank, you

4  know, water from X until Y, why do you need it in a deposition?

5    MR. ROGERS:  Given Your Honor's comments, I don't see

6  it as materially different provided that Mr. Lanciotti has the

7  same, you know, requirements that are imposed on Mr. Stern to

8  answer fully, completely and provide the information and that

9  we have the right to seek more if we feel it's incomplete.  I

10  don't see a difference between the two, Your Honor.

11    THE COURT:  Okay.  Then we'll do it that way.

12    Thank you, Mr. Lanciotti.

13    And thank you Mr. Rogers with your cooperation with

14  that.

15    MR. LANCIOTTI:  Thank you, Your Honor.

16    THE COURT:  Let's go back to the depositions.  I hate

17  to do this.  Because I realize that there was some question

18  about whether I'm going to order the expert depositions and

19  motion for class certification to be set for two days.  And my

20  thought was that what I would do is give co-liaison counsel one

21  hour of that time.  I think that Mr. Shkolnik pointed out in

22  his submission and Mr. Stern as well that there are issues --

23  for example, if those experts disagree with what their experts

24  say, they could end up getting called by defense counsel at

25  bellwether trials and so on.  So I think one hour is fair.

1    And then my thought was that the remainder of the time

2    would be divided among defendants as set forth in the CMO.  And

3    you can decide what order that is, but I don't see a reason for

4    any different division of the time.

5    MR. LEOPOLD:  Thank you, Your Honor.  For the record,

6    can the plaintiffs class counsel be heard on the issue?

7    THE COURT:  Sure.

8    MR. LEOPOLD:  Just a short position on the record.

9    THE COURT:  Yeah.

10   MR. LEOPOLD:  Is the Court's view that if the class

11   counsel -- or class putative class experts were to say

12   something in some fashion negative towards the bellwether

13   trials, the Court would allow cumulative experts in the defense

14   side to address those issues?

15   THE COURT:  Just a minute.

16   Just one second.  I got a note from Ms. Greenspan that

17   she got knocked off so I'm trying to get her back on.

18   Could you say that again, Mr. Leopold?

19   MR. LEOPOLD:  Would you like me to wait, Your Honor?

20   THE COURT:  No.  I think she's back so go ahead.

21   MR. LEOPOLD:  Just for the record, I'm trying to

22   understand, essentially, what the Court is saying.  If there is

23   multiple experts on the class side, the defendants, per se, may

24   use those experts in the class case in the bellwether case even

25   though they already have experts of their own.  So one would

1  think that those would be cumulative experts.  I'm not sure the
2  Court would allow that.  I'm trying to understand.

3         THE COURT:  What I'm saying is that the plaintiff's --
4  individual plaintiffs' experts and class plaintiffs' experts
5  may diverge on some threshholds, for example.

6         MR. LEOPOLD:  Right.

7         THE COURT:  So your expert may say 14 days of exposure
8  to bathing and consuming food cooked with unfiltered water
9  during this time period.  Their expert might say 90 days.  And
10 then -- I mean, or might say two days.  So I'm just saying
11 there could be overlap that's critical to prosecution of the
12 case by the plaintiffs to understand that defendants could end
13 up using, well, isn't it true the other Flint water individuals
14 have expert testimony that disagrees with your expert and says
15 it has to be longer period of time or a shorter or something.

16        So it's for those reasons that it seems that if they
17 need up to an hour to talk to these experts, get some questions
18 answered, that that would be available to them.

19        MR. LEOPOLD:  I understand and I appreciate Your
20 Honor's comments.  But there's two separate total different
21 litigations that are transpiring here.  And if, hypothetically,
22 counsel for liaison were to ask questions, they would
23 essentially and in a totally separate unrelated case to the
24 class case be impeaching or attacking the class expert.  Just
25 like we couldn't come into their expert depositions and

1    cross-examine their experts.  Just they're totally separate

2    litigations.  Why would the Court want to that happen?

3            THE COURT:  If you request it, I would grant it, first

4    of all.  But this is one massive piece of complex litigation

5    and for that reason, I think it's the most efficient way to

6    handle it.  And it shouldn't -- I don't think it's going to be

7    a distraction.  It's one hour out of a two-day deposition.  It

8    could potentially resolve discrepancies or enlighten everyone

9    about discrepancies between one group of plaintiffs' experts

10   and the other groups.

11           So I know you disagree.

12           MR. LEOPOLD:  No.  I respect that.  I respect the

13   Court's ruling.  It's not an issue of it being -- upsetting

14   time or people's time.  It's an issue of what is evidentiary,

15   admissible and from an expert's standpoint.  And I just don't

16   see how any of that would ever come into a trial, but I

17   appreciate and respect the Court's view.

18           THE COURT:  Okay.  Thank you.  So now we're ...

19           MR. SCHOLNIK:  Your Honor, this is Hunter Scholnik.

20   If I can be heard on just one issue here regarding the length

21   of time for experts because I think it applies to defendants

22   and plaintiffs as well.

23           Unless I'm misunderstanding the case management order,

24   the two days for the most part allowed plaintiff the day, the

25   defendants the day and they split up for the most part.  So if

1  there's only one hour for liaison counsel, if we even want to

2  use it, it seems like --

3          THE COURT:  Yeah.

4          MR. SCHOLNIK:  It seems like an awful lot of extra

5  time being given to the defendants to question these experts.

6  Whether they're our experts, their experts, class experts, it

7  just seems like that --

8          THE COURT:  But that was already -- we've already

9  addressed that issue in that -- and now you're helping

10 Mr. Leopold, which I really appreciate.

11         MR. SCHOLNIK:  We agree on something sometimes.

12         THE COURT:  Yeah.  This is good.  This is progress.

13         But I think it was Mr. Klein or whoever wrote the City

14 of Flint's submission that mentioned that the testimony from

15 the experts was breathtakingly large in scope.  And it's for

16 that reason that there will be extra time permitted for defense

17 counsel to sort this out.

18         MR. SCHOLNIK:  Thank you.

19         THE COURT:  Yeah.  So now we're up to the home

20 inspections.

21         MR. ROGERS:  Your Honor?  I'm sorry.

22         THE COURT:  Yes.  Go ahead, Mr. Rogers.  This is

23 yours.

24         MR. ROGERS:  Yes.  I'm sounding like a broken record

25 on this issue, but it's for good reason.  I'll be brief.  You

1  may recall the last time we were together both co-liaison,

2  bellwether counsel, stated that they would provide dates for

3  inspections to begin starting on July 6th.  We still have zero

4  dates on the calendar.  Mr. Klein and I -- Mr. Klein for the

5  City of Flint.

6         We've been trying our best to get dates on the

7  calendar.  There are logistics involved.  Our folks need about

8  a week's notice to be prepared.  Mr. Stern in his letter

9  yesterday said that he's prepared to by July 20th start

10 providing dates by July 27th.  If, in fact, that happens, we

11 should be able to get them done, given that the Court extended

12 the deadlines by 30 days.  But I'm going to ask that the Court

13 order both co-liaison bellwether plaintiff's counsel to, in

14 fact, do that and to provide dates to us before the end of

15 August, starting on July 27th.  Because, you know, they've said

16 they will do it, but they just haven't yet.

17         THE COURT:  Yeah.

18         MR. ROGERS:  If they don't, we will need to come back

19 to the Court and request some alternative relief which, you

20 know, would have to be determined based on how many of these

21 house inspections we actually get done.

22         So we are absolutely out of time if we want to stick

23 to the schedule that Your Honor has imposed on us to get these

24 done.  So I'm requesting that the Court order the plaintiffs

25 to do what they said they would do.  Both Mr. Lanciotti and

1 | Mr. Stern, co-liaison counsel for all of the Bellwether
2 | plaintiffs.

3 | THE COURT:  Mr. Stern?

4 | MR. STERN:  So I felt as though the Court had already
5 | ordered us to do what we said we would do the last time.  And
6 | it's not that I said -- I don't believe we said the home
7 | inspections would start July 6th.  I believe we said that we
8 | would get them dates by July 6th.  The week before July 6th, we
9 | were told that there were new constraints that were put on
10 | their experts that required a week's notice in advance of any
11 | inspections.

12 | And in between that time, every bit of the schedule
13 | got extended for 30 days.  So whether the Court orders it or
14 | not and I am fine agreeing to an order and stipulating to it, I
15 | am no more moved by my own words when I say I'll do something
16 | than I am then when I'm instructed to do it.

17 | And I have every intention of providing dates, as I
18 | stated in my letter for Mr. Rogers.  So, semantically, what I
19 | said in the then -- yeah.

20 | THE COURT:  Then what'll do is -- I pretty much
21 | consider what I'm saying in all of these hearings to be an
22 | order.  Because what I do is with the order following this
23 | conference, I consider all of that to have been ordered.

24 | So, Mr. Rogers, your request is granted to that extent
25 | and it's not opposed.

1        So, Mr. Stern, you'll get those -- I don't know if I

2  have your letter right in front of me.  But you said something

3  like the 20th with a week's notice.

4        MR. STERN:  I will have dates on the 20th to Mr.

5  Rogers for the week of 27th.  Because according to Mr. Rogers

6  they need one week's notice.

7        THE COURT:  Right.

8        MR. STERN:  For their experts.  So that will be done.

9  And if Mr. Rogers could state how many inspections per week are

10  you seeking on behalf of you and Mr. Klein?

11        MR. ROGERS:  Yeah.  Corey, the one week's notice is

12  the minimum required.  Is there any reason that you couldn't

13  provide dates for all 10 of the bellwethers that you represent

14  who either presently still live in the same house or live in

15  houses owned by relatives of theirs?  Why can't you give us the

16  dates for those 10 on July 20th for all of them and that will

17  greatly assist in the scheduling and the logistics involved

18  between Mr. Klein's experts and mine.

19        The seven days is the minimum that it's going to take

20  to turn this around.  So that's what I would request.

21        And similarly, to Mr. Lanciotti who has two bellwether

22  plaintiffs whose houses they still live in or are owned by

23  relatives, Your Honor, I don't see any reason why by July 20th

24  we can't have all 12 dates selected to be done, you know,

25  before the end of August.

1    THE COURT:  Yeah.  That seems reasonable.  Why can't

2  we do that?

3    MR. STERN:  We potentially can, Your Honor, but I need

4  to know how many you're planning on doing per week.  Because we

5  have hired an expert to attend the depositions.  And it's not

6  just a matter of scheduling with our individual parents of

7  plaintiffs, but we have to have our experts present to observe

8  the -- to observe the inspection.

9    MR. ROGERS:  We can do one per day.

10    MR. STERN:  Okay.

11    MR. ROGERS:  So that would be, assuming business days,

12  five per week.  Since you have 10, that would be two weeks or

13  spread out over the 30 days.

14    But we think it might be possible to do two in one

15  day.  But since we haven't done any yet, Your Honor, you may

16  recall, we talked about this ...

17    THE COURT:  Yeah.

18    MR. ROGERS:  We need to get a few under our belt.  If

19  it turns out that we can, we will, you know, make that known

20  and everyone will know.

21    But one per day, Corey.

22    MR. STERN:  Okay.  So on July 20th, I will provide

23  dates to the extent that I can for every single one of the 10

24  plaintiffs over the course of what you said was 30 days,

25  correct?  Even though you would like to do one per week.

1     MR. ROGERS:  One per day.

2     MR. STERN:  I'm sorry.  One per day over the course of

3  30 days.  You said you have a month to do them, correct?

4     MR. ROGERS:  That would be the last opportunity that

5  we would have to comply with the Court's order.  The sooner the

6  better, but that would be the answer.

7     MR. STERN:  I understand.  All I'm saying is that it's

8  not as easy to get 10 plaintiffs on 10 days with one inspector

9  for all 10.  And if I know that there's a 30-day window, then

10 it will be easier for me on the 20th to provide you with dates

11 over 30 days for 10 plaintiffs, than it would be over 10 days

12 for 10 plaintiffs.

13    MR. ROGERS:  That's exactly what I want.

14    THE COURT:  It will be over 30 days.  That's what he's

15 offering.

16    MR. ROGERS:  Yes.

17    MR. STERN:  Thank you.

18    THE COURT:  And, Mr. Lanciotti, that will go for your

19 clients as well, okay?

20    MR. LANCIOTTI:  Yes, Your Honor.  We'll coordinate

21 with Mr. Stern and make sure that we're not proposing the same

22 dates for our plaintiffs over the 30-day course.

23    THE COURT:  Okay.  And, Mr. Stern, at one point in

24 there you said I'll get these dates to you by July 20th as best

25 I can or something like that.

1          MR. STERN:  I'm going to get every one --

2          THE COURT:  If you can do it.  I want you to do it, of

3    course.  But if there is some emergency, et cetera, be sure on

4    the 20th by the close of business to notify me through an

5    E-mail to Abigail DeHart if there's a reason that one is a

6    straggler out there.

7          MR. STERN:  No problem, Your Honor.

8          THE COURT:  And give me a proposal for how you're

9    going to resolve it.

10         MR. STERN:  Okay.

11         MR. ROGERS:  Your Honor.  May I give the Court some

12   information about moving forward?  As you may recall, there

13   were four houses that bellwether plaintiffs used to live in

14   that are now owned or occupied by others.  We've taken the

15   steps necessary to request inspections of those homes.  We've

16   sent letters pursuant to the CMO to the owners.  Thus far, we

17   haven't received a positive response from those folks to allow

18   us to inspect their home.

19         We're on the verge of, perhaps, having to go to the

20   point of issuing subpoenas and requesting that they be

21   enforced.  We don't want to have to do that.  But I just alert

22   the Court that there are an additional four that are beyond the

23   plaintiff's control and we may have to seek assistance from the

24   Court in getting those done.  But it's an absolute last resort.

25   We're trying not to have to do that.  But it may be that we'll

1  come to you and ask for assistance at some point over the next

2  six weeks or so.

3          THE COURT:  Okay.  I'm not surprised.

4          But I'll be ready for that.  Thank you.

5          MR. ROGERS:  Thank you.

6          MR. STERN:  And just to be clear, Your Honor, we have

7  no control over those people.  We don't represent those people.

8          THE COURT:  I know that.  Yeah.

9          MR. STERN:  Okay.

10          THE COURT:  Yeah.  I know that.

11          And maybe, Mr. Rogers, you'll figure out that what

12  you're learning from these home inspections may, for instance,

13  maybe those four instances not do it and still go forward.  But

14  we'll figure it out when we need to.

15          MR. ROGERS:  Yeah.

16          THE COURT:  Okay.  Thank you everybody for your time.

17  Stay healthy and safe and well.  Things are not going in the

18  direction we want them to with this virus.  So I appreciate all

19  of the contributions that you're making to ensure the whole

20  community safety and well being.

21          So I think the next time I'll see you is on the 29th

22  and we'll go from here.  So thank you very much.

23      (At 3:47 p.m., matter concluded.)

24                        -   -   -

25

1          C   E   R   T   I   F   I   C   A   T   E

2

3          I, Darlene K. May, Official Court Reporter for the

4   United States District Court, Eastern District of Michigan, do

5   hereby certify that the foregoing is a true and correct

6   transcript, to the best of my ability, from the record of

7   proceedings in the above-entitled matter.  I further certify

8   that the transcript fees and format comply with those

9   prescribed by the Court and the Judicial Conference of the

10  United States.

11

12  July 28, 2020              /s/ Darlene K. May
    Date                       Darlene K. May, CSR, RPR, CRR, RMR
13                             Federal Official Court Reporter
                               Michigan License No. 6479
14

15

16

17

18

19

20

21

22

23

24

25