```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4    In Re:  FLINT WATER CASES        Case No.  16-10444

 5    _____/

 6
                            STATUS CONFERENCE
 7             BEFORE THE HONORABLE JUDITH E. LEVY
                  UNITED STATES DISTRICT JUDGE
 8                            and
                THE HONORABLE JOSEPH J. FARAH
 9             GENESEE COUNTY CIRCUIT COURT JUDGE
         Virtual Hearing Via Zoom - Wednesday, July 29, 2020
10

11                  APPEARANCES IN ALPHABETICAL ORDER:

12                  Charles E. Barbieri, Esq.
                    Foster, Swift, Collins & Smith, P.C.
13                  313 South Washington Square
                    Lansing, Michigan 48933
14
                    Esther Berezofsky, Esq.
15                  Berezofsky Law Group, LLC.
                    210 Lake Drive East, Suite 101
16                  Cherry Hill, New Jersey 08002

17                  Frederick A. Berg, Esq.
                    Butzel Long
18                  150 West Jefferson, Suite 100
                    Detroit, Michigan 48226
19
                    Margaret A. Bettenhausen, Esq.
20                  Michigan Department of Attorney General
                    525 West Ottawa Street, P.O. Box 30755
21                  Lansing, Michigan 48909

22                  Teresa Ann Caine Bingman, Esq.
                    Law Offices of Teresa A. Bingman
23                  1425 Ambassador Drive
                    Okemos, Michigan 48864
24

25
```

```
 1   APPEARANCES (Continued):

 2                     Jayson E. Blake, Esq.
                       McAlpine PC
 3                     3201 University Drive, Suite 100
                       Auburn Hills, Michigan 48326
 4
                       Peretz Bronstein, Esq.
 5                     Bronstein, Gewirtz & Grossman LLC
                       60 East 42nd Street, Suite 4600
 6                     New York, New York 10165

 7                     James M. Campbell
                       Campbell, Campbell, Edwards & Conroy
 8                     One Constitution Plaza, Suite 300
                       Boston, MA 02129-2025
 9
                       Jordan W. Connors
10                     Susman Godfrey L.L.P.
                       1201 Third Avenue, Suite 3800
11                     Seattle, WA 98101

12                     Jason T. Cohen, Esq.
                       U.S. Department of Justice Civil Division
13                     Torts Branch-Environmental Tort
                       Litigation
14                     175 N. Street, NE
                       Washington, DC 20002
15
                       Alaina Devine, Esq.
16                     Campbell Conroy & O'Neil PC
                       1 Constitution Wharf, Suite 310
17                     Boston, Massachusetts 02129

18                     James A. Fajen, Esq.
                       Fajen & Miller, PLLC
19                     3646 West Liberty Road
                       Ann Arbor, Michigan 48103
20
                       Joseph F. Galvin, Esq.
21                     Genesee County Drain Commissioners
                       4610 Beecher Road
22                     Flint, Michigan 48532

23                     John S. Gilliam, Esq.
                       Foley & Mansfield
24                     130 East Nine Mile Road
                       Ferndale, Michigan 48220
25
```

```
 1   APPEARANCES (Continued):

 2                        Philip A. Grashoff, Jr., Esq.
                         Smith Haughey Rice & Roegge
 3                       213 South Ashley, Suite 400
                         Ann Arbor, Michigan 48104
 4
                         Deborah E. Greenspan, Esq.
 5                       Special Master
                         Blank Rome, LLP
 6                       1825 Eye Street, N.W.
                         Washington, DC 20006
 7
                         Sarah T. Hansel, Esq.
 8                       Motley Rice, LLC
                         210 Lake Drive East, Suite 101
 9                       Cherry Hill, New Jersey 08002

10                       Steven A. Hart, Esq.
                         Hart, McLaughlin & Eldridge
11                       121 West Wacker Drive, Suite 1050
                         Chicago, Illinois 60601
12
                         William Young Kim, Esq.
13                       City of Flint
                         1101 South Saginaw Street, Third Floor
14                       Flint, Michigan 48502

15                       Sheldon H. Klein, Esq.
                         Butzel Long, P.C.
16                       Stoneridge West, 41000 Woodward Avenue
                         Bloomfield Hills, Michigan 48304
17
                         Richard S. Kuhl, Esq.
18                       Michigan Department of Attorney General
                         ENRA Division, P.O. Box 30755
19                       Lansing, Michigan 48909

20                       Patrick J. Lanciotti, Esq.
                         Napoli Shkolnik Law PLLC
21                       360 Lexington Avenue, 11th Floor
                         New York, New York 10017
22
                         Theodore J. Leopold
23                       Cohen Milstein Sellers and Toll PLLC
                         2925 PGA Boulevard, Suite 200
24                       Palm Beach Gardens, FL 33410

25
```

```
 1   APPEARANCES (Continued):

 2                          Emmy L. Levens
                            Cohen Milstein Sellers and Toll PLLC
 3                          1100 New York Avenue, NW,
                            Suite 500, West Tower
 4                          Washington, DC 20005

 5                          Wayne Brian Mason, Esq.
                            Drinker Biddle & Reath LLP
 6                          1717 Main Street, Suite 5400
                            Dallas, Texas 75201
 7
                            T. Santino Mateo, Esq.
 8                          Perkins Law Group, PLLC
                            615 Griswold, Suite 400
 9                          Detroit, Michigan 48226

10                          Todd R. Mendel, Esq.
                            Barris, Sott, Denn & Driker, PLLC
11                          333 West Fort Street, Suite 1200
                            Detroit, Michigan 48226-3281
12
                            Paul J. Napoli, Esq.
13                          Napoli Shkolnik PLLC
                            360 Lexington Avenue, 11th Floor
14                          New York, New York 10017

15                          Paul F. Novak, Esq.
                            Weitz & Luxenberg, P.C.
16                          Chrysler House
                            719 Griswold Street, Suite 620
17                          Detroit, Michigan 48226

18                          Michael J. Pattwell, Esq.
                            Clark Hill, PLC
19                          212 East Cesar E. Chavez Avenue
                            Lansing, Michigan 48906
20
                            Katherine M. Peaslee, Esq.
21                          Susman Godfrey L.L.P.
                            1201 Third Avenue, Suite 3800
22                          Seattle, Washington 98101

23                          Michael L. Pitt, Esq.
                            Pitt, McGehee, Palmer & Rivers, PC
24                          117 West Fourth Street, Suite 200
                            Royal Oak, Michigan 48067-3804
25
```

```
 1  APPEARANCES (Continued):

 2                      Eric Rey, Esq.
                        US Department of Justice
 3                      Civil Division
                        175 N Street, NE
 4                      Washington, DC 20002

 5                      Jared A. Roberts, Esq.
                        Fraser Trebilcock
 6                      124 W. Allegan, Suite 1000
                        Lansing, Michigan 48933
 7
                        Alexander S. Rusek, Esq.
 8                      White Law PLLC
                        2400 Science Parkway, Suite 201
 9                      Okemos, Michigan 48864

10                      Teresa Marie Russo, Esq.
                        Marc J. Bern & Partners, LLP
11                      225 W Washington St
                        Suite 2200
12                      Chicago, Illinois 60606

13                      Herbert A. Sanders, Esq.
                        The Sanders Law Firm, PC
14                      615 Griswold Street, Suite 913
                        Detroit, Michigan 48226
15
                        Hunter Shkolnik, Esq.
16                      Napoli Shkolnik Law PLLC
                        1301 Avenue of the Americas, 10th Floor
17                      New York, New York 10019

18                      Susan Elizabeth Smith, Esq.
                        Goldberg Segalla LLP
19                      One North Charles Street, Suite 2500
                        Baltimore, Maryland 21201
20
                        Corey M. Stern, Esq.
21                      Levy Konigsberg, LLP
                        800 Third Avenue, Suite 11th Floor
22                      New York, New York

23                      Craig S. Thompson, Esq.
                        Sullivan, Ward
24                      25800 Northwestern Highway, Suite 1000
                        Southfield, Michigan 48075
25
```

```
 1   APPEARANCES (Continued):

 2                            Cindy Tsai, Esq.
                             Loevy & Loevy
 3                           311 N. Aberdeen Street
                             Chicago, Illinois 60602
 4
                             Valdemar L. Washington, Esq.
 5                           718 Beach Street, P.O. Box 187
                             Flint, Michigan 48501
 6
                             Todd Weglarz, Esq.
 7                           Fieger, Fieger, Kenney & Harrington, PC
                             19390 West 10 Mile Road
 8                           Southfield, Michigan 48075

 9                           Jessica B. Weiner, Esq.
                             Cohen Milstein Sellers and Toll PLLC
10                           1100 New York Avenue, NW, Suite 500
                             Washington, DC 20005
11
                             Michael R. Williams, Esq.
12                           Bush, Seyferth & Paige, PLLC
                             3001 West Big Beaver Road, Suite 600
13                           Troy, Michigan 48084

14                           Barry A. Wolf, Esq.
                             Barry A. Wolf, Attorney at Law, PLLC
15                           503 South Saginaw Street, Suite 1410
                             Flint, Michigan 48502
16
                             Edwar A. Zeineh, Esq.
17                           Law Office of Edwar A. Zeineh, PLLC
                             2800 East Grand River Avenue, Suite B
18                           Lansing, Michigan 48912

19

20

21

22   REPORTED BY:            Darlene K. May, CSR, RPR, CRR, RMR
                             231 W. Lafayette Boulevard
23                           Detroit, Michigan 48226
                             (313) 234-2605
24

25
```

1                        TABLE OF CONTENTS

2     PROCEEDINGS:                                          PAGE:

3       Court opened                                          8

4       Remarks by Judge Farah                                8

5            Request by Ms. Smith                            11

6       Court addresses Motion to Seal                       13

7            Remarks by Ms. Weiner                           14

8       Court addresses Motion to Amend                      22

9            Remarks by Mr. Campbell                         25
             Remarks by Mr. Klein                            27
10           Remarks by Mr. Washington                       31

11      Court addresses Rogers versus Snyder                 40

12           Remarks by Ms. Devine                           42
             Remarks by Mr. Klein                            42
13           Remarks by Mr. Pattwell                         43
             Remarks by Mr. Weglarz                          44
14           Remarks by Ms. Devine                           45

15      Report by Ms. Greenspan                              48

16      Court Reporter's Certificate                         51

17

18

19

20

21

22

23

24

25

1    Wednesday, July 29, 2020

2    2:10 p.m.

3               -- --- --

4         THE CLERK OF THE COURT:  The United States District

5    Court for the Eastern District of Michigan is now in session.

6    The Honorable Judith E. Levy presiding.  Joined today by the

7    Honorable Joseph J. Farah of Genesee County Circuit Court.

8         Now calling the Flint Water Cases.

9         THE COURT:  Okay.  Well, welcome everyone.  And this

10   is the date and time for a status conference to go over some

11   items that are set forth in the agenda for the hearing.

12        And I want to welcome Judge Farah from Genesee County.

13        Judge Farah, can you now see the screen or are you

14   still on that limited --

15        JUDGE FARAH:  Yes.  No, I can see and hear.  I've got

16   a full Hollywood Squares board of participants that I can see.

17        THE COURT:  Great.  So welcome once again.  I just

18   want to express my continued appreciation that Judge Farah and

19   I are able to work on the cases together and coordinate between

20   the federal and the state litigation so that there's the least

21   amount of repetition and disruption as we just try to

22   coordinate two very complicated pieces of litigation.

23        So thank you, thank you, Judge Farah, for being here.

24        JUDGE FARAH:  Thank you, Judge.

25        THE COURT:  Yeah.  And if you have anything you want

1    to start out with, I'd be happy to start right there.

2              JUDGE FARAH:  All right.  I would simply say that we

3    are available to hear requests.  Our typical motion day is

4    Monday at 10:00, but for this case, all days can be motion

5    days.  We'll work with your schedules and at your convenience.

6              However, we are not interested in hearing any motions

7    that by their hearing would be inconsistent with what Judge

8    Levy is doing on the cases.  So I think some coordination there

9    will be important.

10             The one o'clock session we discussed that there was

11   a motion that had been filed and noticed for a hearing by

12   Mr. Weglarz on the McLaren legionella cases set for this

13   Monday, August 3rd.  The Court has prerogative to set motions

14   when it believes it appropriate to hear them and that motion

15   will not be heard on August 3rd.  But we will discuss in this

16   meeting, if need be, when we can coordinate the hearing of

17   maybe a similar motion in Judge Levy's court or at least when

18   we can coordinate the hearing of the motion when it's more

19   convenient for counsel and the court.

20             If you want something heard and decided, so long as

21   it's not stepping on the toes of Judge Levy and/or her

22   scheduling order and case management order, our courtroom is

23   open for Zoom hearings.  Our courtroom is open for live

24   hearings on motions, but limited to 10 people or less in the

25   courtroom.

1       So that's where we are right now.  And let us know

2   what we can do.

3       THE COURT:  And based on the 63 total participants in

4   today's hearing, it seems that there would be more than 10

5   people, potentially.

6       But thank you very much.  And I should say just a very

7   brief word about reconstituting the court in the Eastern

8   District of Michigan, the federal court.  We're moving at a

9   much slower pace than the Genesee County Circuit Court and so I

10  just want to caution everybody to be aware of that.  We are

11  going full speed with video teleconference hearings such as

12  this.  But at this point, we're not authorized to be back in

13  the buildings except as absolutely necessary between the hours

14  of 10:00 a.m. and 2:00 p.m. and then only if we've had a COVID

15  test that's negative within four days of our initial entry.  We

16  fill out a questionnaire.  We go through processing.  And if

17  you've been out of state within 14 days, you're not permitted

18  to go in until that 14 days elapses.

19      So the majority of you -- or many, many of you are out

20  of state.  So there's just literally no way I could contemplate

21  having something in person the way that Judge Farah is able to

22  do or permitted or even encouraged, I don't know, in Genesee

23  County.  It's a very different situation in the Eastern

24  District of Michigan Federal Court.

25      But that said, we're doing it so that when we are able

1    to open, we'll be able to do so under the safest possible

2    circumstances for everybody.  So I hope that our -- I hope that

3    it all pays off, our delay in reconstituting our court so that

4    the community can be safe and all of you and your families and

5    those you love can be safe as well.

6              So with that, I just want to welcome everybody to the

7    hearing.  And thank Judge Farah for that.  So what we'll do

8    with that motion, that was -- there was a motion.  I think

9    Mr. Weglarz may have filed it with Judge Farah for an August

10   3rd hearing.  We'll try to coordinate and perhaps doing that

11   during either the August 5th or August 12th time slot at 2 p.m.

12   that's already set aside, if there are discovery motions.

13             Is there any -- August 5th may be too soon to get up

14   to speed on exactly what we need to know.  Is there any

15   objection to potentially working together on that, Judge Farah

16   and I, at a hearing on August 12th?

17             Ms. Smith?

18             MS. SMITH:  Thank you, Your Honor.  I just want ...

19             THE COURT:  I can't hear you, Ms. Smith.

20             MS. SMITH:  Let me double check the calendar to make

21   sure.

22             THE COURT:  Mr. Weglarz?

23             MS. SMITH:  I don't anticipate a problem on August

24   12th.  Let me double check the calendar for any depositions.

25             There is a 30(b)(6) deposition scheduled that day, but

1    I'll be available.

2            Nope.  No objection, Your Honor.

3            THE COURT:  Okay.  Mr. Weglarz?

4            MR. WEGLARZ:  No objection to the 12th, Your Honor.

5            THE COURT:  Okay.  And, Judge Farah, are you available

6    on that day?

7            JUDGE FARAH:  I will rearrange some things to become

8    available.  What time would you like that to be heard?

9            THE COURT:  I have set aside 2:00 p.m. on my docket.

10   I can switch my docket, if needed.

11           JUDGE FARAH:  Would it be possible?  Would it be

12   problematic for anybody if we heard that at 3:30 instead of at

13   2:00?

14           THE COURT:  Let me just ...

15           No.  It's just fine with me.

16           MS. SMITH:  That's fine with me as well.

17           THE COURT:  Okay.

18           JUDGE FARAH:  Mr. Weglarz, is 3:30 okay with you?

19           MR. WEGLARZ:  3:30 is fine, Judge.  Thank you.

20           JUDGE FARAH:  All right.  Thank you.  I appreciate it.

21           MR. WEGLARZ:  And I just wanted to represent -- I want

22   to make sure this is clarified.  That motion to open discovery

23   on the state case, that was a motion that we filed back in May.

24           And, Judge Farah, I believe your court did tell us to

25   request a hearing eventually.  So that's why we did that.  I

1   didn't want you to think that we weren't following up with your

2   instructions.

3           JUDGE FARAH:  No, no.  We don't interpret it that way.

4   We'll be happy to take a look at it for the 12th at 3:30.

5           MR. WEGLARZ:  Great.  Thank you.

6           JUDGE FARAH:  All right.

7           THE COURT:  And, Judge Farah, can you or Samantha

8   E-mail that my way so I can take a look at it?

9           JUDGE FARAH:  Yes.  We just had it drawn up and we

10  have it here in the office.  So we'll get it to you.

11          THE COURT:  Thank you.

12          JUDGE FARAH:  Okay.

13          THE COURT:  Okay.  So the next thing I wanted to talk

14  about is a little bit in the weeds, but not too far.  It's the

15  putative class plaintiffs have a motion to seal, which is ECF

16  number 1204.  It's just to seal portions of deposition

17  testimony and evidence attached to their motion for class

18  certification.  And pursuant to the Sixth Circuit's decision in

19  *Shane Group versus Blue Cross*, I'm required to make a

20  determination before sealing a document or granting a motion to

21  seal.

22          And the Sixth Circuit instructed that there's a strong

23  presumption in favor of openness.  And when we were last

24  together, someone commented that the Shane Group was also a

25  class action and so on.  So only the most compelling reasons

1   can justify nondisclosure of judicial records and so on.  And

2   that is particularly true in class actions where some members

3   of the public are also parties to the case and may have a

4   special interest in following it along and determining whether

5   they may indeed be a party to the case and so in the future and

6   should it be certified.

7          So with that said, I've looked at all of the entries

8   and the ones that I wanted to just hear a little bit more on is

9   on the deposition of Rhonda Kelso, K-e-l-s-o.

10         There is on page 63 of the filing, which is page ID

11  34,288.  You have suggested that the -- the information on the

12  blood test should be redacted.

13         And, Mr. Leopold -- or who will be responding on

14  whether you ...

15         MR. LEOPOLD:  Ms. Weiner will be, Your Honor.

16         THE COURT:  Okay.  Ms. Weiner?

17         MS. WEINER:  Yes.

18         THE COURT:  You've suggested that the blood test

19  information should be redacted.  And wouldn't this information

20  be relevant -- important for the public to know whether a named

21  plaintiff had a blood/lead test and so on?

22         MS. WEINER:  We do understand the Court's position.  I

23  think when it comes to plaintiff medical information, we did

24  seek to seal as much as possible where we thought it might

25  provide too much personal information or, perhaps, embarrass

1    the plaintiff.  And so we did -- I believe what you're looking

2    at are some proposed redactions where it describes how the test

3    was done and how it was taken.  And so the plaintiffs did wish

4    to have much of that sealed, but do understand that the Court

5    also has an interest in making some of this information public.

6         THE COURT:  Okay.  And I'm fine with her anxiety

7    medications, the specific medication remaining redacted, but I

8    think it's quite relevant to the public's interest in this case

9    to know that there was a blood/lead level taken.  That it was

10   taken from the vein.  Because what we're learning is that some

11   tests may have different degrees of accuracy and ranges and so

12   on.  So I'm going to require that that -- the particular

13   information about a blood/lead level test be unredacted.  And I

14   don't have a problem with the remaining information.  Her

15   address and so on, that can remain redacted.

16        And then number 83, which is the deposition of Barbara

17   Davis.  Let me go to that.

18        Which is ...

19        And here's where Ms. Davis is talking about the

20   distress she had from the lack of ability to bathe in the water

21   and how it impacted her personal hygiene.

22        MS. WEINER:  Yes.

23        THE COURT:  Yeah.

24        MS. WEINER:  I do see -- I apologize.

25        THE COURT:  No.  You go ahead.  Go ahead.

1    MS. WEINER:  So, as I said earlier, because some of
2    this information could be potentially embarrassing to some of
3    the class plaintiffs they did wish to have it redacted.  But if
4    there are certain parts that the Court -- and certainly much of
5    this is relevant to the case.  That we are, of course, willing
6    to unredact the portion as the Court wishes.
7    THE COURT:  Okay.  I think that's very true of this
8    particular information is that it's very relevant to what
9    you're alleging here in terms of how your client suffered
10    during this time period.  So I think the information on page 87
11    and 88 does need to be unsealed.
12    Actually, I mean, I think we can leave out lines five
13    and six about her bladder issues.  So let's leave out five
14    through nine.  But the rest of it I think needs to be unsealed.
15    Oh, on page 80 of the PDF, page ID 34,305, the length
16    of time she's lived at her residence I think is very relevant
17    and needs to be unredacted.
18    Okay.  Then let's go to the deposition of Darrell
19    Davis.
20    Hold on.
21    (Reviewing document)  And I don't see why this would
22    need to be sealed that he's aggravated his back and shoulder
23    from carrying water.  These are precisely the damages -- the
24    sorts of things you're trying to prove and that the public
25    would have an intense interest in knowing what is it you're

1    bringing in this case.

2          MS. WEINER:  To address your question, Judge Levy, we

3    do understand that that is relevant.  And, as I said, we did

4    seek to balance the class representatives' concerns about the

5    privacy of their -- any medical information with the public's

6    interest in this case.

7          The one line there that I would ask that we be able to

8    keep redacted is the specific name of his doctor.

9          THE COURT:  Yeah.  I was just going to get to that.  I

10   agree.  So we'll leave line 24 redacted.  No one needs that.

11         The next one I'm looking at is the deposition of

12   Tiantha Williams.

13         MS. WEINER:  Okay.

14         THE COURT:  And I'm on page ID 34,345.  This is where

15   she's establishing the age of her minor child.  And there's no

16   exact age here to identify him.  What is the purpose of this

17   redaction?

18         MS. WEINER:  I apologize.  I'm not sure which specific

19   redaction you're referring to.

20         THE COURT:  Number 94.

21         MS. WEINER:  Yes.  Is that the page 82 at the bottom?

22         THE COURT:  It is 82 on the bottom, yeah.

23         MS. WEINER:  In terms of Ms. Williams' minor child, we

24   did seek to redact any potentially identifying information

25   because he is a minor.  If there is certain information that

1   the Court would like unredacted, to the extent we can avoid any

2   identifying information we are, of course, willing to unredact

3   that.

4          THE COURT:  Okay.  What I would to do is you can take

5   out the name of the doctor and the name of the child.

6          MS. WEINER:  Okay.

7          THE COURT:  But on that page and the next, this is

8   critical information that the public would have an interest in.

9   Sort of what types of developmental delays this mother thinks

10   is attributable to her position in this lawsuit of lead

11   poisoning.  He runs.  He tries to run and he falls and so on.

12   So we can take out Dr. O'Connell and the name of the young

13   four-year-old, but I think we need the rest of this to be

14   publicly available.

15          MS. WEINER:  Understood.  And we can -- as long as we

16   can keep his name redacted and the identifying information of

17   the doctor, I believe that will be sufficient.

18          THE COURT:  Okay.  Now I'm on to number 96 on the

19   deposition of Frances Gilchrist.

20          MS. WEINER:  Yes.

21          THE COURT:  And now, this is interesting.  This is

22   where it's going through a tax return.  And isn't this what

23   you're trying to prove is that this business suffered losses as

24   a result of the Flint water issue?

25          MS. WEINER:  Yes.  And as I said earlier, we did try

1   to balance where information might embarrass the class

2   plaintiffs or where they wish for certain personal/financial

3   information to redacted or sealed.  And because the defendants

4   will have access to this information, it will be able to be

5   tested and because Rule 26 allows for the -- for a court to

6   seal information that might be embarrassing to a party or to a

7   person, we did seek to redact certain financial information

8   that the class plaintiffs wish to be sealed.

9           THE COURT:  This isn't their personal finances.  This

10  is the information from their rental industry and this is what

11  they're trying to prove in the case.  So although it's

12  embarrassing for your clients to have, you know, perhaps

13  suffered, you know, during this time period, this is what

14  they're here to prove.  So they're going to have to testify to

15  it in trial.  I mean, so maybe now is the time to start that

16  adjustment.  Particularly, for business.

17          MS. WEINER:  Okay.

18          THE COURT:  So we'll unseal the business record, the

19  business losses.  I mean, I think -- yeah.  That's what they're

20  here for.

21          MS. WEINER:  Understood.

22          THE COURT:  Okay.  Now I'm on number 98.  And this is

23  just that Mr. H-e-l-m-k-a-y declared bankruptcy.

24          MS. WEINER:  Yes.  This was related to a 2010

25  bankruptcy.  We sought to redact that.

1            THE COURT:  Okay.  That's reasonable.  I guess -- I'm

2 -- yeah, right.  It is 2010.  Okay.  We'll leave that redacted.

3            Can I ask you, on number 115, the Excel spreadsheet

4 with contact information and addresses of lead testing, the

5 purpose of that is what?  The purpose of the redaction is what?

6            MS. WEINER:  So what we sought to redact there are the

7 addresses and contact information of the individuals in the

8 spreadsheet.  Many of them -- most of them are not named

9 plaintiffs in the case.  So we didn't believe it was prudent to

10 put their contact information -- make their contact information

11 public.  Particularly, since their home address and phone

12 numbers and E-mail addresses were already in there.

13            MR. NOVAK:  Your Honor, may I be heard with respect to

14 that exhibit because I think I have some additional

15 information?

16            THE COURT:  Yes, please.

17            MR. NOVAK:  This is Paul Novak.

18            THE COURT:  Yes.

19            MR. NOVAK:  If it's the exhibit, I think you're

20 referring to the Virginia Tech produced data.  Virginia Tech

21 also designated it either as confidential or highly

22 confidential.  So since it was a third-party document and the

23 third-party producer affixed that level of confidentiality to

24 it, we felt that there was some obligation to adhere to the

25 level of confidentiality that they had applied to the data.

1    THE COURT:  Okay.  And I think at this point I'll keep

2  it sealed.  It has first and last names with addresses and all

3  this E-mail and so on.  And I would just have some concern that

4  if there's someone out there who doesn't wish one of these

5  individuals well and is trying to locate their address, I

6  wouldn't want to be the source of that information.

7    So for now we'll keep that redacted for that reason.

8  Because if we were to take all of the first names off or

9  something like that, and the addresses, telephone numbers,

10  E-mail, there would be not much left here to -- we would not

11  know where in town these things are.  It just wouldn't help the

12  case -- the public, to understand the strengths of the case.

13    JUDGE FARAH:  Judge Levy, if I may interject briefly

14  on another matter?

15    THE COURT:  Sure.

16    JUDGE FARAH:  We just got word -- and maybe everybody

17  knows this.

18    The Michigan Supreme Court just issued a decision in

19  *Melissa Mays versus Governor* in the Court of Appeals -- or in

20  the water case.  And the Supreme Court, we believe -- and I'm

21  just getting it handed to me right now.  I believe affirmed the

22  Court of Appeals.  Now, I don't know if that has any bearing on

23  anybody's cases, but it just came out and it looks like it's

24  not a unanimous decision, but that's not surprising.  It's

25  about 132 pages long so, obviously, we haven't digested it.

1   But if that has any bearing on any situations going on, that
2   just now got released.

3           THE COURT:  Oh, well, thank you for letting us know
4   that.  I was able to listen -- or I guess watched a video of
5   the argument.  That was early March, I think.  So thank you
6   very much for filling us in on that.

7           JUDGE FARAH:  Sure.  Sure.

8           THE COURT:  Yeah.

9           Well, I think that concludes the concerns I had
10  with ...

11          So, Ms. Weiner, is it clear to you what should be
12  unsealed in an amended filing?

13          MS. WEINER:  I believe so.  But if the Court would
14  issue an order and then we -- would the Court be willing to
15  issue an order with the lines that it would like unsealed?

16          THE COURT:  I think -- yeah.  We can do that.  Yeah.

17          And we'll just say for the reasons set forth on the
18  record.

19          MS. WEINER:  Thank you.

20          THE COURT:  Okay.  Good.

21          The next thing I wanted to go over is the motion to
22  amend the class action complaint to substitute two different
23  parties in.  And here's -- I've read, obviously, the motion and
24  response and reply.  Responses and reply.  And as I understand
25  it, there are two -- you're seeking to ...

1        Make sure I have the names right.  To add an

2   additional minor child, KC, and a restaurant plaintiff at

3   635 South Saginaw.  And to remove minor child KLD and the

4   business Epco, E-p-c-o, all caps, Sales.  And the VNA

5   defendants responded strenuously.  The city defendants and so

6   on.

7        The first thing is, I think the motion needs to be

8   dealt with slightly differently because instead of substituting

9   these plaintiffs, I think you're going to need to file -- or

10  you will need to file a motion to withdraw under Federal Rule

11  of Civil Procedure 42(a) for the two who are withdrawing.

12  Because I'm concerned that if I were to be dismissing them

13  with prejudice, if these individuals believed they could later

14  be a -- should there be a class certification later want to

15  join one of those classes, they may not be good representatives

16  for class action purposes as named plaintiffs, but they could

17  potentially want to make a claim under a class.

18       So not knowing what's happening there yet without the

19  benefit of the response and reply and adjudication of the class

20  action motion, I can't just substitute someone in and then have

21  dismissed with prejudice those two individuals.  So I would

22  require that there be a motion that they have voluntarily

23  withdrawn from the case.

24       And I, you know, indicated that we would have oral

25  argument on this, but I have read the briefs and I understand

1   that EPCO was terminated over a year ago by plaintiffs.  And

2   Ms. Brown for her child, KLD, has not been responsive to

3   discovery requests, and that VNA suggests and argues that there

4   would be prejudice and undue delay.  And that, furthermore, the

5   claims of these new plaintiffs are significantly different from

6   those they would be replacing.  For instance, South Saginaw

7   claims lost income where EPCO only claimed property damage.

8        And KLD had alleged lead exposure in utero while KC,

9   the new plaintiff, alleges harm from his mother drinking the

10  water.

11       City defendants also weighed in that there would be

12  prejudice and undue delay.  And that, again, that plaintiffs

13  have known about these deficiencies for sometime and failed to

14  fix them.

15       Here's my question.  Is at this point -- and this is

16  to VNA and the City.  The time line has been pushed back

17  significantly.  And in light of that, I don't see the prejudice

18  if you need to take these depositions.  You did not already

19  take the deposition of Ms. Brown, as I understand it, so it's

20  not like that's something that is lost or money that would need

21  to be compensated for or something.

22       So what is the harm in this now as a -- that there is

23  additional time in the schedule?

24       MR. CAMPBELL:  Your Honor, this is James Campbell.  If

25  I may go first?

1          THE COURT:  Sure.

2          MR. CAMPBELL:  Thank you.  With the change in the

3     schedule and I think that the submission of the joint

4     stipulation regarding the class schedule, it does effect the

5     motion, obviously.  The motion and our opposition was filed

6     before Your Honor took action.

7          THE COURT:  Right.

8          MR. CAMPBELL:  So that changed it.  But I would say,

9     Your Honor, that with reference to these two are the four

10    plaintiffs at issue.  Two that are no longer going to be

11    involved in the case and the two that the class plaintiffs

12    would like to add.

13         Your Honor recounted some of that, but with regard to

14    Amber Brown and minor child KLD, at least with respect to VNA,

15    I believe they were dismissed as to VNA on August 1st, 2018,

16    almost two years ago.  Because the alleged exposure was before

17    VNA arrived in Flint.  So the new plaintiff to be added alleges

18    exposure after that.  So to suggest that this is just

19    something, you know, to substitute, it's not.  At least with

20    respect to VNA and this child.

21         I would add, Your Honor, that in our last discovery

22    conference that we had, you expressed some issues with

23    regard -- concern for -- you said something about the minor

24    subclass of plaintiffs.  This plaintiff falls into that

25    category.  So Your Honor left that statement about the minor

1  subclass in your review of the motion, you know, subject to

2  further discussion or observation from the Court.

3          THE COURT:  Yeah.  And I'll tell you I have not gotten

4  to that.  So I don't have anything further I can say about it

5  right now.

6          MR. CAMPBELL:  So the point from my perspective would

7  be to the extent Your Honor is going to -- intending to address

8  something along those lines, this new plaintiff with respect to

9  VNA that lays the claims that were not raised, claim that were

10 not raised that were dismissed, you know, it seems like, yes

11 there is still a prejudice in that.

12          With reference to the other plaintiff there's the

13 change from -- EPCO was -- withdrew from the litigation June

14 25th, 2019, a year ago or so and you already identified the two

15 different types of claims.  Having said all of that, Your

16 Honor, we believe that there is still -- is a prejudice for

17 those reasons.  But if Your Honor is inclined, given the

18 extension of the class schedule, we would request -- we need to

19 issue discovery to these two individuals, two new plaintiffs

20 that would include interrogatories and document requests.

21          And I would add that there's reference here in these

22 papers that Ms. Brown was not deposed.  And at least with

23 respect to VNA, the reason why that didn't happen is because

24 she was dismissed from claims against VNA.

25          THE COURT:  I wasn't thinking there was any laziness

1  by anyone, anyone at all.  No.  No.  No.  No.

2          MR. CAMPBELL:  So that's the background to that.  And

3  so the written discovery and given the stipulation, I believe,

4  the state defendants are intending to redepose the class

5  plaintiff representatives anyway.

6          THE COURT:  Right.

7          MR. CAMPBELL:  But the point is we would have to do

8  this.  And I would like to add that these amendments were made

9  on the day that the class motion was filed.  And at that point

10  in time the issue's, well, we had to do expert discovery

11  starting right away.  And these were issues that teams like

12  they should have been brought up long ago with the amendments

13  rather than on the day that the motion was filed.

14          So other than that, Your Honor, the arguments in our

15  brief, that's what we have to say.

16          THE COURT:  Okay.  Thank you.

17          MR. KLEIN:  Your Honor, if I can very briefly add.  I

18  don't agree with anything that Mr. Campbell said.  From memory

19  it was either a day or two days -- we filed these oppositions a

20  day or two days before there was scheduled relief.

21          THE COURT:  Right.

22          MR. KLEIN:  The only thing I would add is I think it

23  would help if there was an expedited time for responding to

24  written discovery.  We have some schedule relief, but it's

25  still not all that much time to start from fresh, start from

1  scratch with responses to the written discovery, which we need

2  before we can go into deposition.

3          THE COURT:  Okay.  Thank you.

4          Well, I will grant the request, but I'll require that

5  plaintiffs file a motion under Rule 41(a) for withdrawal of the

6  two named plaintiffs and then I will grant the motion pursuant

7  to Rule 15(a).

8          And the briefs that came in opposing this noted that,

9  generally, courts deny motions to add or substitute class

10  representatives prior to class certification.  And I looked at

11  those.  I understand the reasons, but here there are also cases

12  where courts have granted motions to amend to add new

13  plaintiffs or even defendants before the class is certified.

14          And these cases that allow pre-class certification

15  substitution of claims of some plaintiffs who, for one reason

16  or another, were not going to serve adequately as named

17  representatives in the party -- in the case.  And then

18  certainly you would need to have discovery regarding those

19  plaintiffs.

20          So, for that reason, I will permit this.  Because what

21  could otherwise end up happening is in the response brief, I'm

22  going get a motion saying that there's an inadequate business

23  class representative, for example, and then we're going to be

24  right where we are anyway.

25          So I'd rather get this done efficiently.  So I'll look

1   for a Rule 41(a) motion from plaintiffs and then for the

2   reasons that are now on the record, the motion to add the two

3   named plaintiffs that you're seeking will be granted.

4           And on the issue of a minor class I just have not had

5   the time to turn to that.  And at the point that I do, I may

6   request supplemental briefing on that before people get too far

7   down the road on it.  So that'll permit me to manage the motion

8   in smaller chunks, I hope.  And we will go from there.

9           MR. SHKOLNIK:  Judge Levy?

10          THE COURT:  Yes.

11          MR. SHKOLNIK:  This is Hunter Shkolnik, if I can just

12  be heard on this.  With respect to a Rule 41(a) motion to

13  dismiss, the *Brown* plaintiff is not seeking to dismiss her

14  case.  And I don't think class counsel really have a standing

15  to make that motion since it's our client.

16          THE COURT:  Okay.

17          MR. SHKOLNIK:  She does not wish to be a class

18  representative and fall within some type of class.  So I think

19  it needs to be dealt with slightly different.

20          THE COURT:  How should it be dealt with?

21          MR. SHKOLNIK:  I would think that she could be

22  struck -- strucken -- stricken as a class rep, but that the

23  plaintiffs' individual claim should be allowed to proceed.

24          THE COURT:  That's what I wanted to achieve.

25          MR. SHKOLNIK:  And we would be happy to stipulate to

1    that as counsel.  We have the client's approval to do that.

2              THE COURT:  I don't have 41(a) open, but I think you

3    need the defendants' --

4              MR. SHKOLNIK:  I think we need the defendants'

5    agreement.

6              THE COURT:  I think so.

7              MR. SHKOLNIK:  After an answer has been filed, if I'm

8    not mistaken.

9              THE COURT:  Yeah.  Hold on.

10             MR. SHKOLNIK:  That's without a court order.  But with

11   a court order you can do whatever you like.

12             THE COURT:  Yeah.  And there will be a court order.

13             Okay.  She's only being voluntarily dismissed from

14   this action as a named plaintiff.  That's a stipulation of

15   dismissal signed by all parties who have appeared.

16             That's without a court order?

17             MR. SHKOLNIK:  Without a court order would be a

18   dismissal signed by all parties.

19             THE COURT:  Yeah.

20             MR. SHKOLNIK:  With a court order, on the terms the

21   Court considers proper.

22             THE COURT:  Okay.  Yeah.  And the terms would be that

23   she's only removed as a named plaintiff but not dismissed from

24   any other roles she wishes to have in the litigation including

25   either as an individual or class member, whatever it is, she's

1  going to pursue.

2  　　　　MR. SHKOLNIK:  Thank you, Your Honor.

3  　　　　THE COURT:  Okay.  So when can I get that?

4  　　　　MR. SHKOLNIK:  Can we have until the end of next week?

5  　　　　THE COURT:  Yes.

6  　　　　MR. SHKOLNIK:  Thank you.  That would be -- I'm

7  looking at the calendar.

8  　　　　The 7th?

9  　　　　THE COURT:  Yeah.

10 　　　　MR. SHKOLNIK:  Thank you.

11 　　　　THE COURT:  That would be good.

12 　　　　MR. WASHINGTON:  Judge, this is Val Washington.  I

13 represent EPCO individually and I just want to make sure that

14 the same kind of blanket that you're giving to Mr. Shkolnik

15 would apply to EPCO as well, Judge.

16 　　　　THE COURT:  Oh, okay.  I didn't know that.  Yes.  It

17 would apply to EPCO as well.

18 　　　　MR. WASHINGTON:  Thank you, Judge.

19 　　　　THE COURT:  Yeah.  There will be until the 7th to

20 enter this stipulation.

21 　　　　MR. SHKOLNIK:  Thank you.

22 　　　　THE COURT:  Okay.  Then the MDEQ defendants submitted

23 a proposal for the time line to be triggered for their role in

24 both the *Carthan versus Snyder* and the bellwether cases.

25 　　　　And is there -- has everybody had an opportunity to

1   review that?

2           MR. KLEIN:  Yes, Your Honor.

3           THE COURT:  So in *Carthan*, the MDEQ defendants filed

4   their answers on July 15 and proposed that they be placed on

5   the same schedule as the state defendants.  And that makes good

6   sense to me.  So hearing no objection to that, we'll do that.

7   And you're also seeking to have the Rule 56 summary judgment

8   motions be determined after class certification has been

9   decided.  That makes sense to me also.  Because I can't do both

10  at the same time.

11          Okay.  So then the bellwether cases, who's going to

12  speak for the MDEQ defendants here?

13          MR. BARBIERI:  Your Honor, this is Charles Barbieri.

14  As an outgrowth, a part of the discussion at the telephonic

15  status conference, there was anticipation that if the result

16  was the same in the Sixth Circuit decision on *Walters* and *Sirls*

17  that the issue of how that would occur from a discovery

18  standpoint following the answer, we tried to get some idea on

19  what the schedule could be.  To some extent it's copied or

20  modeled after --

21          THE COURT:  Right.

22          MR. BARBIERI:  -- it was put together.  That was an

23  intention about what was submitted and, obviously, we're still

24  at a disadvantage of not having any mandate, if there's going

25  to one issued at this point.  So it may be premature but we

1   didn't know at the time so we submitted it in addition to the

2   *Carthan* schedule that Your Honor has reviewed by way of our

3   submission and then also by the VNA stipulation that Your Honor

4   has in front of her.

5           THE COURT:  Okay.  Is there any objection to that

6   proposal that Mr. Barbieri just outlined and is set forth in

7   his submission?

8       (No response.)

9           THE COURT:  Okay.  So we will ...

10          Is somebody speaking?

11          MR. STERN:  I said, no, Your Honor.  But I was muted.

12          MR. KLEIN:  Yeah.  Same here.

13          THE COURT:  Then that's what we'll do is adopt this

14  proposal.

15          MR. KLEIN:  I'm sorry, Your Honor. This is Sheldon ...

16          THE COURT:  Okay.  Go ahead, Mr. Klein.

17          MR. KLEIN:  (No audio.)

18          THE COURT:  You're muted.

19          You're still muted.

20          MR. KLEIN:  Can you hear me now?

21          THE COURT:  Yes.

22          MR. KLEIN:  Zoom is a mysterious thing sometimes.

23          THE COURT:  I know.  Sometimes when you unmute, it

24  mutes.  It has a mind of its own.

25          MR. KLEIN:  Here's my concern -- and first of all, if

1   I can take a step back in terms of the summary judgment

2   schedule.  And this is just a question.  Is this now that MDEQ

3   is on a separate summary judgment track than everyone else or

4   the overall schedule is being pushed back?

5           THE COURT:  Okay.  What is -- I don't recall that we

6   ever set -- did we set a deadline for summary judgment?

7           MR. BARBIERI:  No, Your Honor.  When I submitted it,

8   the dilemma we were facing, is similar to what the state

9   defendants were facing.

10          And Mr. Kuhl, if you recall, at the last status

11   conference expressed the concern that he wanted to have the

12   ability to bring a summary judgment after whatever discovery

13   needs to be accomplished.  The MDEQ defendants, although on a

14   little bit different schedule, but it's going to be merged now,

15   had the same desire.

16          I'm not trying to foreclose what the City defendants

17   have in mind or anticipate by that, but I was only reacting to

18   what was out there for the State defendants and seeing how that

19   folded into it.  I apologize if I didn't take into account the

20   City defendants, too, in that.

21          THE COURT:  Well, I don't think an apology is needed,

22   but thank you.

23          So, Mr. Klein, I don't think we have a schedule for

24   summary judgment at this time.  And we need one.

25          MR. KLEIN:  Okay.

1          THE COURT:  Okay.

2          MR. KLEIN:  But whatever the schedule might be, are we

3    on dual tracks for summary judgment.

4          THE COURT:  I don't think so.  I think we have to have

5    one track.

6          MR. KLEIN:  So that leads to my second concern.  And

7    perhaps I misunderstand Mr. Barbieri's plan.  But, as I follow

8    along, it seems to me that we wind up having a second -- a

9    whole second, essentially, duplicative bellwether trial against

10   the MDEQ defendants.

11         THE COURT:  We're not going to do that.

12         MR. KLEIN:  And I see Mr. Barbieri shaking his head.

13         MR. BARBIERI:  That was not my intention, Mr. Klein.

14         MR. KLEIN:  So you are just a conscientious objector

15   from the bellwether process; is that fair?  I mean, these are

16   real questions.

17         THE COURT:  No.  These are good questions.  These are

18   my questions.

19         Let's ask Mr. Stern and Mr. Shkolnik what we're going

20   to do to make sure we're not doing two sets of the first set of

21   bellwether trials.

22         MR. STERN:  Your Honor, this is Corey Stern.  I guess

23   I've always felt without any real evidence to support this that

24   once it came time for the bellwether trials if, for instance,

25   the state's case or cases were still on appeal or the DEQ

1   individual defendants or anybody from the DEQ was up on appeal,

2   that because these were bellwether trials where it's clear that

3   apportionment of damages and liability would become part of the

4   defense and likely be presented to the jury, that those

5   defendants that were ready for that trial -- because, again,

6   these are bellwether trials.

7            THE COURT:  Right.

8            MR. STERN:  To make certain determinations that those

9   defendants that were ready for the trial would try the case.

10  And I guess I always assumed under the posture of the

11  litigation that that would most likely be VNA and LAN on that

12  first round of the trials and we would still be able to get a

13  relatively instructive determination about values and liability

14  in light of the fact that the claims and defense is litigated

15  by those defendants would be applicable to the other

16  defendants.

17            So when I see proposals that are verging on postponing

18  bellwether trials, I've never gotten overly worked up about it

19  because Your Honor has seemed to seemingly indicated over time

20  that we would go forward with who was there.  And I think there

21  was passive understanding, at least amongst counsel, that

22  there's a likelihood that not all defendants are participating

23  in the first bellwether.  That doesn't mean that we need to

24  relitigate the bellwether cases, the first round against those

25  defendants who don't participate.  Because, again, those

1 bellwether trials are more instructive than really, you know,
2 anything else.

3 So I don't want to put any defendant in a position
4 where they're litigating with a hand tied behind their back. I
5 also don't think that any defendant who joins later than others
6 is going to require the bellwethers to be paused or postponed.

7 THE COURT: Okay.

8 MR. STERN: So when I see a proposal from Mr. Barbieri
9 that borders on some of the concerns validly that Mr. Klein
10 has, I don't share those concerns so long as we're able to
11 proceed against whichever defendants are prepared to proceed.

12 THE COURT: Okay. So I guess we don't have to make a
13 decision about that at this point.

14 MR. BARBIERI: Your Honor, Charles Barbieri, again. I
15 think it is still premature. The mandate will come out at some
16 point.

17 THE COURT: Right.

18 MR. BARBIERI: We'll go on a schedule. I think we
19 are in a different phase than the first bellwethers. That's,
20 respectfully, the point that we've been making and I suspect
21 that would be shared if the state defendants share similarly.

22 THE COURT: Okay.

23 MR. STERN: And I'm excited to see Mr. Campbell and,
24 potentially, Mr. Mason drive up the values of the cases against
25 the other defendants by way of their nonparty fault arguments,

1  and they could probably do it much better than me.  So I'd like
2  to team up with them on that.
3              THE COURT:  There you go.
4              MR. KLEIN:  I get we're not making a decision.  I have
5  two concerns.  One, I think has been alleviated that,
6  basically, the MDEQ and other nonparticipating defendants would
7  kind of get to watch a dress rehearsal for their trial and that
8  seems fundamentally unfair.  But that seems to not be anyone's
9  idea.
10             The other is at least with respect to the city, it's
11 unfair to not have the other governmental defendants and,
12 frankly, in particular, the MDEQ defendants, up there with us.
13 I mean, it's no secret to anyone that, you know, at least
14 there's a possibility, if not a likelihood, that the jury might
15 be faced with a choice as to whether it is MDEQ or the city
16 that bears primary responsibility for some of what went on here
17 and for MDEQ to be absent from the trial makes it very
18 difficult to fairly frame that question for the city.
19             MR. STERN:  Your Honor?
20             THE COURT:  Well, I don't think we have to decide.
21 We're just going to put that off for another day, figure out
22 when *Walters* and *Sirls* gets decided what is said and then we'll
23 wait for the mandate and we'll just -- we'll just put that off
24 for another day.
25             MR. KLEIN:  That's fine.  Yeah, I wasn't asking for a

1    decision.  I wanted to explain why there's some heartburn here.

2         THE COURT:  Yeah.  I understand.

3         MR. CAMPBELL:  Your Honor, if I may, this is James

4    Campbell for VNA.  To state the obvious, I don't think that

5    having serial trials for the same set of plaintiffs or the same

6    plaintiff is going to --

7         THE COURT:  We're not going to.  What I heard

8    Mr. Stern say is you all will be up there defending your case,

9    those who are ready to go.  And for the first round of

10   bellwethers, you'll be doing everything you can to shift the

11   blame to whoever is not there and there will be a verdict.  And

12   in the sense of a bellwether trial, it will be an indication to

13   all of us of what might be coming down the pike in the case in

14   future trials.  And then we'll move on to the next round.  And,

15   hopefully, all the defendants will be at the table by then.

16        MR. SHKOLNIK:  Judge Levy, interestingly, this issue

17   recently was brought up before the Sixth Circuit on a writ in

18   the opioid litigation.  Because certain claims in certain

19   parties were severed out before trial and that case ended up

20   settling and then the judge issued a ruling saying now we're

21   going to go to trial against the next set of defendants for the

22   same plaintiffs.

23        Basically, the Sixth Circuit said there's nothing

24   wrong with it.  We're not suggesting try the case against those

25   remaining defendants.  But this is really not a significant

1    issue.  It happens sometimes some parties are just not ready
2    for trial and the Court can decide what parties, what claims go
3    forward.
4            THE COURT:  I think that's going to have to happen.
5    Because as I look at the lawyers for the government for the
6    United States, the EPA case is behind everybody.  So we're just
7    going to have to keep going forward on everything that's ready
8    to move forward.  And then we'll have -- those defendants who
9    are still in the case will catch up and be in the next round.
10   So it'll be like one of those brackets in sports that I know
11   nothing about, but somehow somebody's going to be in the final
12   bracket in the win/lose column.  So we'll just keep working our
13   way towards that.
14           So we'll adopt the dates that are in the submission
15   from the MDEQ defendants for now.  And then await the *Walters*
16   and *Sirls* decision from the Sixth Circuit and the mandate.
17           So I want to move on to the *Rogers versus Snyder*.
18   This is sort of a different level of issue.  And in this I had
19   issued a show cause why the case should not be dismissed for
20   failure to prosecute and follow the Court's order with respect
21   to amending it.
22           And so on July 17th, I think Mr. Weglarz filed a
23   response that included a motion to amend the complaint.  And
24   Mr. Weglarz had indicated that he had made a mistake about the
25   filing the amended complaints because he thought the June 3rd

deadline was permissive and not a mandatory requirement.

But, of course, Mr. Weglarz was at that hearing and so that's neither here nor there. I don't accept that explanation. But the fact is, it's now filed and there is significant -- in his proposed amended complaint, he has eliminated some of the conspiracy claims and so on that were not viable and has instead amended his complaint to no longer be suing Mr. Cook and Mr. Dillon, but he has retained Mr. Ambrose, Mr. Wurfel and then added VNA.

And Ambrose and Wurfel were dismissed in the *Brown* litigation. And, of course, that was because *Brown* had passed away before Ambrose was appointed to be an emergency manager so he couldn't have done anything wrong in that particular case, but the timing is different in this case. Mr. Wurfel was dismissed in *Marble* because the statements that he's liable -- you know, there's a claim stated against him for had happened after both *Marble* and *Brown* had passed away. And VNA, there's nothing different.

So I am inclined at this point, despite the fumbling around and getting this done in an efficient manner, to grant the motion to amend. And if -- because at this point we have finally a cleaned-up complaint that conforms to the Court's requirements and to the law and to the previous decisions in the case.

And I would not require the defendants to file a new

1   motion to dismiss, but if you want to file a supplemental

2   brief, you may.  So tell me, if anyone wishes to, what's wrong

3   with that.

4          MS. DEVINE:  Your Honor, if I may, this is Alaina

5   Devine for the VNA defendants.

6          THE COURT:  Yes.

7          MS. DEVINE:  I would point out that we, obviously,

8   haven't had an opportunity to respond to the motion to amend

9   the complaint or the amended complaint itself, but there was

10  one significant difference in the motion to amend and in the

11  amended complaint with respect to the allegations that are

12  being made.

13         In the original complaint that was filed in *Rogers*, it

14  was alleged that the plaintiff contracted legionnaires disease

15  in the fall and winter of 2014.  We filed our motion to

16  dismiss.  We notified attorney Weglarz of the issue.  Asked for

17  VNA to be dismissed from the case because that was, obviously,

18  prior to the time that we were involved in Flint.

19         The allegations in the amended complaint changed the

20  date in which it's alleged that the plaintiff contracted

21  legionnaires disease and it's now in later spring to summer of

22  2015.  So I would point out the allegations in the amended

23  complaint, it's not just a matter of conforming it to the

24  Court's requirements, but they've actively substantively

25  changed.

1          THE COURT:  So, then, you can certainly file a new
2   brief.  You're not -- I'm not holding you to your original
3   brief when the facts were different and your client wasn't
4   there.  So you can certainly file a new motion, if you think
5   that's the appropriate thing to do.
6          MR. KLEIN:  Your Honor, Sheldon Klein again.
7          THE COURT:  Okay.
8          MR. KLEIN:  And the same, whether this will be a brief
9   from Mr. Ambrose's counsel or the city or both, I haven't fully
10  thought through, but with respect to Mr. Stern, the readdition
11  of Mr. Ambrose, I think there's real question to whether it
12  applies from a pleading standpoint.  So if we can have a date
13  by which to file a -- I suppose it would just be a 12(b)(6)
14  motion.
15         THE COURT:  Absolutely.  How much time do you need?
16         And the same for Ms. Devine.
17         MR. PATWELL:  I'm sorry to interrupt, but just to sort
18  of add -- Mike Patwell on behalf of Brad Wurfel.
19         THE COURT:  Okay.
20         MR. PATTWELL:  I also shared the same comment.  The
21  date alleged in even the amended complaint as to when the
22  plaintiff contracted legionnaires disease is prior to any
23  public statement made -- or alleged to be made by Mr. Wurfel.
24  So we would like to also, whether file a brief or --
25         THE COURT:  Let's stop right there and just have

1   Mr. Weglarz answer to that.

2           If that's the case, let's agree right now to dismiss

3   *Wurfel*.  I don't need more briefs and no one needs to write

4   more briefs.  So what date did your client contract

5   legionnaires disease in *Rogers*?

6           MR. WEGLARZ:  Your Honor, we allege it's between the

7   end of March of 2015 and May 29th of 2015.  That's when she was

8   exposed.

9           THE COURT:  And, Mr. Weglarz, when was the conduct by

10  Mr. Wurfel, when did that take place that you're suing him

11  over?

12          MR. WEGLARZ:  Your Honor, we're just relying on the

13  facts as set forth in the most recent amended pleading.

14          THE COURT:  I know.  But I don't recall.  I can't

15  remember the exact date of his remarks.

16          MR. WEGLARZ:  And, Your Honor, I don't have that here

17  in front of me.  I apologize.  I will have those dates.

18          THE COURT:  Okay.  That's okay.  Mr. Patwell will

19  know.

20          MR. PATTWELL:  July 10th, 2015 is my understanding of

21  the first public comment.

22          THE COURT:  So what I want you to do, Mr. -- thank

23  you, Mr. Patwell.

24          What I want you to do, Mr. Weglarz, is check that.

25  The Sixth Circuit has already ruled on Mr. Wurfel and what

1   comments constituted liability.  Or, you know, not liability.

2   But were properly pled or plausible, et cetera.  So if it's

3   July 10th, do you agree you would have to dismiss your *Wurfel*

4   from *Rogers*?

5          MR. WEGLARZ:  I Would agree, Your Honor.

6          THE COURT:  So I will give you until August 7th to

7   check that and file a notice -- a new amended complaint.

8          MR. WEGLARZ:  Could I just submit a stip?

9          THE COURT:  Yeah, you can.

10         MR. WEGLARZ:  Thank you.

11         MS. DEVINE:  Your Honor, I would ask until August 12th

12  to file a motion to dismiss or an answer on behalf of the VNA

13  defendants.

14         THE COURT:  Okay.

15         MR. GRASHOFF:  Your Honor, on behalf of the MDEQ

16  employee defendants, this is Phil Grashoff.

17         THE COURT:  Uh-huh.

18         MR. GRASHOFF:  We would like that same extension until

19  August 12th to take a look at this amended complaint and renew

20  our motion to dismiss or supplement it if we determine to make

21  that decision.

22         THE COURT:  Absolutely.

23         MR. KIM:  Your Honor, for the City defendants, August

24  12th will work for us as well.

25         MR. MASON:  Can you just make that blanket for the

1 | named defendants?

2 | THE COURT:  Yes.

3 | MR. MASON:  You said you believed that the amended

4 | complaint complied with your prior rulings in the other

5 | matters.  That's the primary issue for us with respect to some

6 | of these claims and, additionally, with the *Williamson* matter

7 | that we discussed a little bit earlier.

8 | THE COURT:  Yes.  Now, let me -- so that's what we'll

9 | do with *Rogers*.  I'll permit the amended complaint, but require

10 | that by the 7th we figure out whether Mr. Wurfel is -- whether

11 | plaintiff will stipulate to his dismissal based on what we

12 | think the timing is.

13 | But earlier, when we had our meeting so-called in

14 | chambers, the *Gladys Williamson* case was brought up and the

15 | *Bacon* case.  On *Bacon*, I think the last time we were together I

16 | had indicated that I would decide those motions on the briefs.

17 | And they are fully briefed.  I think Mr. Mason was

18 | bringing that up to me earlier.  They're fully briefed now and

19 | I'll be able to decide those motions on the briefs.

20 | And *Williamson*, I've got up on my ...

21 | MR. GRASHOFF:  Your Honor?

22 | THE COURT:  Yes.

23 | MR. GRASHOFF:  Phil Grashoff.  *Williamson* filed a

24 | stipulation that we agreed to extend their date for filing that

25 | was due today until I believe the 19th of August.

1          THE COURT:  Okay.  So, yeah.  Thank you.

2          And so, in addition, it was Mr. Mason had a pending

3  motion and so that motion is not -- there's one pending that is

4  ECF number 38.  It's not a motion on the basis of statute of

5  limitations.  It's generally setting forth your previous

6  arguments that punitive damages is not a count.  Joint and

7  several liability, so on.  It's one of your more standard

8  motions.  So that will be dealt with as well.

9          MR. MASON:  If I may, Your Honor?

10         THE COURT:  Sure.

11         MR. MASON:  The response in *Williamson,* they have

12  acknowledged that they are now not asserting punitive damages

13  or joint and several liability.  So the only issue for our

14  motion is the exemplary damages, which we believe you have

15  already ruled on in your prior decisions and so.  Just to help

16  the Court short circuit that.

17         THE COURT:  Thank you.

18         MR. MASON:  That's the issue in *Williamson*.  The other

19  cases that I have a note about with pending motions, legionella

20  motions, are *Lee*, of course, *Rogers*.  *Long*, *Bacon* and

21  *Williamson*.

22         THE COURT:  Okay.  We'll be taking a look at them.

23         MR. MASON:  Thank you, Your Honor.

24         THE COURT:  How about we turn to Deborah Greenspan,

25  who is constantly working in the background.

1            And, Ms. Greenspan, do you have a report to make?

2            MS. GREENSPAN:  I have a very brief report, Your

3   Honor.  I will go through this quickly.  We, as you know, every

4   month, every day, really, we get updates to the submissions

5   that counsel have made to the census process, which is why

6   we're constantly updating everything.

7            Just to give you an idea.  Since the third report was

8   filed, we've received updates in 3,000 claim records.  So we

9   don't just get new claims.  We get clarifications, updates,

10   changes in the claims, which is why you see changes in the

11   statistics and the reports.

12            So right now we're tracking.  We're very close to

13   where we were last month.  We're tracking 25,330 individual,

14   what we're calling injured parties.  There are some within that

15   group that we've identified as potentially the same person

16   represented by different lawyers.  And we have been tracking

17   that and we've got now, again, updated lists of those different

18   claims, which we'll be circulating to counsel.

19            Of that total we have 8,382 are children.  Again,

20   based on the dates of birth information that we've been given.

21   And I will note that we do have claims that don't have a date

22   of birth.  So that number could grow if we get actual date of

23   birth information for some of those missing -- some of those

24   that are missing that information.

25            Again, over the last couple of months since the

1   last report, we had 3,750 new claims added to the list.  And

2   we -- they're primarily, personal injury claims.  But I do note

3   that about a third of the newer claims assert a property damage

4   claim as well.

5           THE COURT:  Okay.

6           MS. GREENSPAN:  So, again, still heavily personal

7   injury claims, but it seems to me to be some increasing numbers

8   of property damage claims that are being asserted.

9           And that's really my report for today.  Thank you,

10  Your Honor.

11          THE COURT:  Okay.  Thank you.

12          Well, thank you very much.

13          One thing I wanted to mention is I think I might have

14  gotten the first ever stipulated motion for clarification and

15  proposed order that came in just as expected and everyone

16  agreed to it and so I wanted to commend everyone for that.

17  It's ECF filing 1215.  So there is a proposed schedule here,

18  that we have already discussed, which will be adopted.

19          So that is what we will do.  I'm thankful for that.

20  So the next status conference that I have set aside is

21  Wednesday, August 26th at 2:00 p.m., also by video

22  teleconference with the dates for submitting proposed items for

23  discussion set forth in the agenda.

24          So is there anything we have not discussed that needs

25  to be discussed?

1          All right.  That is very good.  Well, I hope that

2    everybody continues to stay safe and healthy.  We will each be

3    doing our part to take care of our own communities and families

4    by doing that.

5          So thank you very much.  And I will -- well, right now

6    I have time set aside on August 5th at 2:00 p.m., but if we

7    don't have agenda items I'm sure we can all use the time

8    productively and certainly we'll be getting together on August

9    12th at 3:30 p.m. for Judge Farah.  Primarily, I think Judge

10   Farah, but also for me to hear about the coordination in the

11   legionella discovery or any other issues that come up.

12          Well, thank you, everybody.  Take good care.

13       (At 3:27 p.m., matter concluded.)

14                               -   -   -

15

16

17

18

19

20

21

22

23

24

25

1    C  E  R  T  I  F  I  C  A  T  E

2

3         I, Darlene K. May, Official Court Reporter for the

4    United States District Court, Eastern District of Michigan, do

5    hereby certify that the foregoing is a true and correct

6    transcript, to the best of my ability, from the record of

7    proceedings in the above-entitled matter.  I further certify

8    that the transcript fees and format comply with those

9    prescribed by the Court and the Judicial Conference of the

10   United States.

11

12   August 5, 2020            /s/ Darlene K. May
     Date                      Darlene K. May, CSR, RPR, CRR, RMR
13                             Federal Official Court Reporter
                               Michigan License No. 6479
14

15

16

17

18

19

20

21

22

23

24

25