UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* Flint Water Cases                 No. 5:16-cv-10444

HON. JUDITH E. LEVY

MAG. MONA K. MAJZOUB

_____

## DOCUMENT PRODUCTION PROTOCOL

**I.    SCOPE**

**A.    General**

The procedures set forth in this Document Production Protocol (the "Order") shall govern the production of Documents in this above-captioned matter (the "Litigation"), unless otherwise agreed to in writing by the Parties or as ordered of the Court.  To the extent that non-parties produce Documents in this case, the Parties agree to request that such non-parties adopt this Order.

**B.    Scope of Production**

This Order does not address the scope of the Parties' productions.

**C.    Subsequent Orders and Modification**

This Order shall not preclude subsequent agreements between the Parties relating to Documents, nor shall it preclude any Party from seeking an amendment or modification of this Order from the Court.

This Order may not be modified or amended except in writing signed by all Parties.  Court approval is not required to modify

or amend this Order, provided that such modification or amendment is in writing signed by all Parties.

**D.    Previously Produced Documents**

The Parties agree that Documents that have previously been produced in the Litigation, or in other related litigation, need not be re-produced to be consistent with this Order so long as the earlier productions are consistent with the attached ESI protocol(s). This provision only applies to productions made prior to the entry of this Order.

**E.    Confidentiality of Produced ESI**

Nothing in this Order is intended to be inconsistent with the Stipulated Confidentiality Order that the Court has entered in this Litigation  (Dkt. 299), and where anything in this Order is inconsistent with the terms of the Confidentiality Order, the terms of the Confidentiality Order shall prevail.  If a document is produced subject to a claim that it is protected from disclosure under the Confidentiality Order, the word "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" shall be burned electronically on each page of such document or otherwise identified as such consistent with this Order and any other orders entered by this Court.

## II.    DEFINITIONS

**A.    "Documents"** means "Documents" as defined in Federal Rule of Civil Procedure 34(a)(1)(A), and Electronically Stored Information, as defined below, and shall be interpreted in the broadest sense possible.

**B.    "Electronically stored information"** or **"ESI,"** as used herein, means and refers to computer-generated information or data, stored in or on any storage media located on computers, file servers, disks, tape, USB flash ("thumb") drives or other real or virtualized devices or media, as such

information is defined in Federal Rule of Civil Procedure 34(a)(1)(A).

**C.**     **"Native Format"** means and refers to the format of ESI in which it was generated or as it is used by the Producing Party in the usual course of its business and in its regularly conducted activities.

**D.**     **"Media"** means an object or device, including but not limited to a disc, tape, computer, drive, or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

**E.**     **"Metadata"** means and refers to: (i) information embedded in a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

**F.**     **"OCR"** means and refers to an optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based Documents and making such Documents searchable using appropriate software.

**G.**     **"Party"** or **"Parties"** means and refers to the named Plaintiffs and/or Defendants in the above-captioned matter. "Producing Party" refers to a Party (or non-party that avails itself of this Order) that produces Documents in this Litigation.

**H.**     "**Redacted Document**" means any Document that contains a text box redaction over any portion of the Document, or contains other means to intentionally obscure any portion of the Document.

I.    "**Withheld document**" means any Document that is omitted from production due to privilege or non-responsiveness.

## III.   MISCELLANEOUS

### A.   English Language

To the extent any data exists in more than one language, the data shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

### B.   Cooperation

The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of Documents.

### C.   Reservation of Rights

Nothing contained herein is intended to create a precedent for, or to constitute a waiver or relinquishment of, any Party's objections or arguments pertaining to any potential future productions of Documents.

### D.   Relief from this Order

Any Party may request that the Court modify or amend the terms of this Order by the filing of an appropriate motion. Prior to filing such a motion, the Party seeking such modification or amendment must first meet and confer with the relevant Parties.

### E.   Production Costs

This Order does not address the costs of Document production and the Parties reserve their rights with respect to the allocation of those costs.

## IV.   TECHNICAL SPECIFICATIONS

### A.   Image Files

All Documents are to be produced as black and white images, unless otherwise addressed herein.

Black and white images are to be produced as Group IV, black and white  single page TIFF images with the file extension, .TIFF.

To the extent a Party requests that any ESI be produced in color, as opposed to black and white, the Parties shall meet and confer as to whether reproduction in color is necessary and appropriate.

Each image file is to be named with its corresponding production bates number.

### B.   Image File Formats

Microsoft Word documents will be imaged showing track changes and comments.

Microsoft PowerPoint files will be imaged showing notes in Notes Pages.

### C.   Native Files

When producing Documents in Native Format, the files are to be named with the bates number assigned to the Document and the confidentiality legend, if applicable.  For Example: Bates123456 – Confidential.XLSX

For each Native Format file produced, a TIFF image placeholder should be included.  The placeholder is to state, "This document has been produced in native format" and it should be endorsed with the confidentiality legend, if applicable, and bates number.

A text file must be provided for each native file.  If extracted text is not available, the text file should include a machine generated OCR.

Both the image and text file must be named with the bates number.

Documents that cannot be accurately TIFF-imaged must be produced in their Native Formats, unless otherwise agreed to between the Parties, or as required by this Order.  Such files include video and audio recording and database files.

All spreadsheets should be produced in their Native Format, except those that require redaction (the requirements of which are detailed below).

The Parties agree to work out a future protocol governing the use and format of Documents produced pursuant to this paragraph at trial, depositions, and hearings.

**D.   Hard Copy Paper Documents**

Hard copy paper documents shall be produced as images files, and, to the extent reasonably practicable, produced in the manner in which those documents were kept in the ordinary course of business.  Where hard copy paper documents have "post-it notes," tabs, or other labels, such information shall be produced to the extent reasonably practicable.  The Producing Party will utilize reasonable best efforts to ensure that hard copy paper documents are produced in a manner that maintains the physical unitization of documents.

**E.   Proprietary Files**

To the extent that Documents produced cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in a reasonably usable format, including issues as may arise

with respect to obtaining access to any such software and operating manuals which are the property of a third-party.

**F.   Extracted Text/OCR**

Each produced Document will have a single text file, named for the production bates number.  The text files will delivered as multi-page ASCII.  The location of the text file for a document will be captured in the TextFileLink field.

For native files, extracted text is to be produced.

For any redacted Documents, a machine generated OCR text file from the redacted image is it to be provided, except that information which is redacted.

For any hard copy paper documents, a machine generated OCR text file is it to be provided.

**G.   Metadata**

Metadata fields associated with all Documents will be produced, as set forth below, except for Documents that do not include metadata, or the metadata is not machine extractable.  For Redacted Documents, metadata fields must be produced, except those that disclose redacted information

Metadata should be provided in a .DAT file.  The first line of the load file must include the field names.  Each subsequent line will contain the fielded information for the Document.  All .DAT files produced in this Litigation should contain the same fields in a consistent order.

This Order shall not be construed to affect whether information contained in the metadata produced shall be admissible evidence about the corresponding Document; rather, the Parties' positions with regard to admissibility shall be preserved.

### H.     Load File Specifications – Delimiters

The .DAT file will use the following delimiters for all Documents produced:

| Delimiter | Character | Function | ASCII Code |
|-----------|-----------|----------|------------|
| þ | Default | The field delimiter separates the load file columns | 254 |
| "\|" | Pipe | The text qualifier. Marks the beginning and end of each load file field. | 124 |
| ® | Newline | The delimiter that marks the end of a line of extracted or long text.  Concordance replaces all carriage returns or carriage return linefeed combinations with the newline code. | 174 |

Sample Concordance (.DAT) load file:
þProdBegBatesþþProdEndBatesþþProdBegAttachþþProdEndAttachþ
þGP0000001þþGP0000002þþþþ
þGP0000003þþGP0000057þþþþ

### I.     Load File Specifications – Production Fields

The following fields will be provided for all Documents produced.

| Field Name | Description | Applies To |
|---|---|---|
| ProdBegBates | Beginning bates number of all produced document | All Documents |
| ProdEndBates | Ending bates number of all produced documents | All Documents |
| ProdBegAttach | Beginning attachment number | All Documents |
| ProdEndAttach | Ending attachment number | All Documents |
| Confidential | Confidentiality designation | All Documents |
| NativeFileLink | Production path to native file | All Documents |
| TextFileLink | Production path to extracted text or OCR file | All Documents |

## J.    Load File Specifications – Metadata Fields

A Producing Party shall produce the following metadata fields for Documents, all Microsoft Word documents ("EDOC") and/or all email ("Email"), to the extent the information is available, as specified below:

| Field Name | Description | Applies To |
|---|---|---|
| Author | Native file author | EDOC |
| File Name | Name of the application file | EDOC |
| DateCreated | Date file was created | EDOC |
| TimeCreated | Time file was created | EDOC |
| DateMod | Date file was last modified | EDOC |

| Field Name | Description | Applies To |
|---|---|---|
| TimeLastMod | Time file was modified | EDOC |
| To | Recipient(s) | Email |
| From | Sender | Email |
| CC | Carbon copy recipient(s) | Email |
| BCC | Blind carbon copy recipient(s) | Email |
| Subject | Subject line of the email | Email |
| Date Sent | Email sent date | Email |
| TimeSent | Email sent time | Email |
| Date Rec | Email received date | Email |
| TimeRcvd | Email received time | Email |
| Custodian | Individual in possession of the document or Mailbox. | All Documents |
| Other Custodian or dup custodian | ***In the event cross custodian de-duplication is employed | All Documents |
| Source | Physical location, computer or server from which the data was collected | All Documents |
| DocType | Type of file (Word, Excel, email, etc) | All Documents |
| DocExt | File extension of document | All Documents |
| Native File Size | Size of file in bytes | All Documents |
| Hash Value | MD5 Hash Value | All Documents |
| Confidentiality Designation | | All Documents |

| Field Name | Description | Applies To |
|---|---|---|
| Redacted | | All Documents |
| Withheld | Identifies any Family Member of a Document that is omitted from production | All Documents |
| Email Folder Path | | All Documents |
| Page Count | | All Documents |
| Conversation Index | | All Documents |

## K.   Deduplication

ESI will be deduplicated globally following industry-standard global deduplication algorithms.  An acceptable method, such as the MD5 hash format, shall be used for any deduplication. Additional custodians who had a copy prior to deduplication, such as email recipients, copyees, or blind copyees, will be populated in the "DupCustodia" or "Other Custodian" metadata fields.

## L.   Document Families

Whenever a Document is produced, the entire corresponding family of Documents (i.e. parent and all children, the "Document Family," and individually a "Family Member") will be also produced.   If a Family Member is withheld for any reason, then that Document should be replaced by a placeholder identifying that it has been withheld. Document Families will be produced with a continuous bates range.  The Parties agree to meet and confer regarding any challenges to documents that are withheld from a document family as non-responsive.

Withholding non-responsive attachments cannot be used as a basis to challenge the completeness of a document for evidentiary purposes under FRE 106.

**M.  Email Threading**

For emails, in addition to de-duplication, email threading may be utilized. Threading allows emails that are wholly contained in a later, surviving email, with all of the recipients and attachments contained, to be identified and suppressed from production.  An email is only suppressed from production if 100% of the message body is contained, all addresses are included, and all attachments are included in a later email that is produced.

**N.  Voicemails, Text Messages and Smart Phone ESI**

For production of these forms of ESI, the Parties shall meet and confer regarding the scope of said production and the applicable custodians for whom an obligation to search and produce exists. Production requests for these forms of ESI shall identify the custodian, search terms, and timeframe. Indiscriminate terms, such as the Party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  The Parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

**O.  Redactions and Logs**

A Producing Party shall disclose and describe the basis for every redaction in a Redacted Document.

The basis for all redactions shall be specified in the appropriate metadata field that corresponds to the Redacted Document.

In addition, for each redaction, a Producing Party must also: (a) include a text box describing the basis for the redaction

("Text Box Redactions") on the Redacted Document; or (b) produce a corresponding log that identifies and describes the basis for the redaction.

If a Party opts to utilize Text Box Redactions, the redactions on images shall be made with white boxes with black borders, and shall contain black text that describes the basis for the redaction, for example, "Attorney-Client Privilege," "Work Product Privilege," "PPI" (Protected Personal Information), "PHI" (Protected Health Information, or "NRI" (Non-Responsive Information). If a Party has more than one basis for a redaction, then the Text Box Redaction need only identify one basis, but all basis must be identified in the metadata.

Where some or all of the e-mail string is privileged, the Parties need only include one entry on the privilege log for the entire e-mail string and need not log each e-mail contained in the chain separately.

Documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (as to spreadsheets, imaged unhiding hidden cells, rows, columns, or sheets),  with extracted text, with the relevant portions redacted, or in Native Format using a commercially available "native redaction" tool, or by producing a copy of the Native Format file with the relevant portions replaced with the mark "[REDACTED]"or a similar mark.  If modification of a Native Format file is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

## P.    De-Nisting of ESI

The Parties may remove operating system files and program files with the assistance of their respective information technology vendors or agents prior to conducting searches of data in accordance with the National Software Reference Library De-Nisting Process.

**Q.    Replacement Images**

In the event that an already produced Document or set of Documents has to be re-produced or a new load file or "overlay" is produced for any production, the new production shall always maintain the same bates number for any re-produced Documents, with the addition of the suffix "-R" at the end of the bates number.

**R.    Production of Databases and Other Structured Data**

Generally, databases should be produced in a mutually agreeable data exchange format, which may include production of reports generated from database rather than producing the entire database. To determine the data that is relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:

i.      Database Name
ii.     Type of Database
iii.    Software Platform
iv.     Software Version
v.      Business Purpose
vi.     Users
vii.    Size in Records
viii.   Size in Gigabytes
ix.     A List of Standard Reports
x.      Database Owner or Administrator's Name

Upon review of the list, the Parties agree to meet and confer regarding the data to be produced from each source, if any, and the form(s) of the production thereof.

## V.   PRODUCTION SPECIFICATIONS

### A.   All Deliveries

Productions may be delivered either via encrypted physical media or via secure electronic download, or as otherwise agreed by the Parties.

All file paths should be relative.

Data to be encrypted and the decryption key should be provided prior to the delivery of the physical media.

An electronic version of the cover letter should be included. The decryption key should not be contained in the cover letter accompanying the physical media.

### B.   Physical Delivery

Productions that are delivered via physical media should be self-contained and not require that multiple discs or drives be combined after delivery.

The disc or drive should be clearly labeled with the following information:

- Date of the production
- Producing Party
- Production Regarding
- Production Volume
- Bates Range
- Number of Records

### C.   Electronic Delivery

The production should be announced via e-mail and made available for immediate download upon receipt of the e-mail.

Delivery should be via a secure file transfer (SFT) system, or a password protected link.  Productions made via insecure file transfer sites or sent via email may be rejected.

Electronic deliveries must remain downloadable for seven days after the production date or until the production has been downloaded and confirmed to be complete.

# APPENDIX A(1)

## Appendix A(1) – ESI Protocol

**1.      Scope.**   The Parties agree that each producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for preservation, collection, and review of their own paper documents and electronically stored information (together with paper documents, "**ESI**").   Accordingly, this Protocol shall govern only the actual production of paper documents and ESI and shall in no way affect the Parties' respective rights and obligations concerning the preservation, collection, and review of ESI.   All Parties preserve their attorney-client privileges and other privileges, and there is no intent by this Protocol, or the production of documents pursuant to this Protocol, to in any way waive or weaken these privileges.   Nothing in this Protocol shall limit the Parties' respective rights and obligations concerning confidential, proprietary or private information, with respect to which they may make such agreements or stipulations as they see fit, subject to applicable law.   All documents produced pursuant to this Protocol are fully protected and covered by the Parties' confidentiality agreements, and orders of the Court, as well as any clawback agreements, and protective order(s) of the Court effectuating the same.

**2.      Hard Copy Paper Documents.**   Hard copy paper documents shall be scanned and, to the extent reasonably practicable, produced in the manner in which those documents were kept in the ordinary course of business.   Where hard copy paper documents have "post-it notes," tabs, or other labels, the information on the label shall be scanned and produced to the extent reasonably practicable.   The Parties will utilize reasonable best efforts to ensure that hard copy scanned paper documents are produced in a manner that maintains the physical unitization of documents.

**3.      Images.**   Except as otherwise provided in paragraph 4, below, all documents that are produced will be produced as images.   Images will be produced as Single Page Group IV, 300 DPI, black and white TIFF images named as the beginning Bates number.   To the extent that a party believes that any ESI should be produced in color, as opposed to black and white, the parties shall meet and confer as to whether reproduction in color is necessary and appropriate.   Page level Bates numbers will be branded in the lower right of the image and additional confidentiality legends applied to the lower left (if applicable).   The following formatting will be applied to Microsoft Word, Excel, and PowerPoint documents:

> a.   Word documents will be imaged showing track changes and comments;
>
> b.   Excel files with redactions will be imaged un-hiding any hidden cells, rows, columns, or sheets; and
>
> c.   PowerPoint files will be imaged showing notes in Notes Pages.

If a Party determines in good faith that it needs a document, which has been produced as an image, to be produced in its native file format, the Party will submit a request for such native file to the producing Party, in writing, and the Parties will meet and confer in good faith to discuss the request. Such request to the producing Party shall include the Bates number of each imaged document that is requested in native file format.

**4.    Native Files.** When available, native files will be produced for Excel documents that do not contain any redacted information. Native files will be produced for email messages (MSG format) unless: (1) the email message contains a redaction; (2) any attachment to the email message contains a redaction; or (3) the email contains a non-responsive attachment. Native files will be produced for all files that cannot be imaged (e.g. audio and video files). With the exception of email, when a native file is produced, the producing party will produce a placeholder (a single-page TIFF slip-sheet indicating that the native file was produced) along with the file itself in native format; and the name of the native file will be the Bates number of the corresponding slip-sheet. Email that is produced in native format will also include a TIFF image of the email as described in paragraph 3. The metadata load file that is included with a production shall include available native file link information for each native file that is produced.

**5.    Metadata.** A standard Concordance delimited load file (.DAT), with field header information added as the first line of the file, will be provided with each production. The Parties are not required to produce metadata from any electronic document if metadata does not exist in the document or the metadata is not machine-extractable. Documents will be produced with related metadata (to the extent it exists) as described in Appendix B. DAT file delimiters:

      a. Column delimiter: Default is ¶ (ANSI 182)

      b. Quote: Default is þ (ANSI 254)

      c. Record delimiter: Default is ® (ANSI 174)

      d. Multi-value delimiter: Default is ; (ANSI 059)

For redacted documents, metadata fields must be produced only to the extent such fields will not disclose redacted information.

**6.    Image Cross Reference.** A standard Opticon (.OPT) file will be provided with each production that contains imaged documents.

**7.    Text.** Document level text files (.TXT) will be provided for each document produced. Text files will be named the first Bates number of the respective document. Extracted text will be provided when it exists for non-redacted documents. When extracted text is provided for an email, the email header

information must appear in the extracted text. OCR text will be provided for documents when no extracted text exists, when the document is redacted, and for all PDF documents. A text load file (.LST) will be provided to load the text from the .TXT files into a review platform.

**8.** **Encoding Format**. TXT, DAT, OPT, and LST files will be provided in ANSI encoding.

**9.** **Deduplication**. ESI will be deduplicated across custodians (i.e. global deduplication) following industry-standard deduplication algorithms. An acceptable method, such as the MD5 hash format, shall be used for any deduplication. Additional custodians who had a copy prior to deduplication, such as email recipients, copyees, or blind copyees, will be populated in the "DupCustodian_w_Orig" metadata field referenced in Appendix B.

**10.** **Document Families**. Whenever a document is produced, the entire corresponding family of documents (i.e. parent and all children) will be produced, except to the extent any member of the family is withheld because of privilege or confidentiality. Notwithstanding the foregoing, if an email message is produced in response to a discovery request or a subpoena, then non-responsive attachments to the email are not required to be produced. If a family member is withheld for any reason then that document should be replaced by a placeholder identifying that it has been withheld. Families of documents will be produced with a continuous Bates range. Child documents will refer to their corresponding parent document via the "Production Bates – Attach Begin" metadata field referenced in Appendix B.

**11.** **Email Threading**. For emails, in addition to de-duplication across custodians, thread de-duplication may be applied prior to production. Thread de-duplication allows emails that are wholly contained in a later, surviving email, with all of the recipients and attachments contained, to be identified and suppressed from production. An email is only removed from production if 100% of the message body is contained, all addresses are included, and all attachments are included in a later email that is produced. To facilitate a receiving Party's use of email threading:

  a. When extracted text is provided for an email, the email header information must appear in the extracted text; and

  b. The Conversation Topic Index and Parent ID metadata fields referenced in Appendix B must be provided for all emails produced as images.

**12.** **Voicemails, Text Messages, and Smartphone ESI.** Production requests for these forms of ESI shall only be propounded for specific issues, rather than general discovery. In addition, discovery of this information shall be phased and initially limited to three (3) custodians. Production requests for these forms of ESI

shall identify the custodian, search terms, and timeframe. Indiscriminate terms, such as the Party's name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. The Parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe. Requests for additional custodians, search terms and timeframes shall only be discussed by the Parties after the initial phased production and only upon showing a distinct need.

**13.     Redactions**.   Redactions on images shall be made with white boxes and contain black text that reasonably describes the nature of the asserted privilege or confidential information such as, for example, "Attorney-Client Privilege," "Work Product Privilege," "PPI" (Protected Personal Information), "PHI" (Protected Health Information, or "NRI" (Non-Responsive Information). If a Party redacts a document based on more than one claim of privilege or confidentiality, then the text that appears on the redaction need only describe the nature of one of the claims of privilege or confidentiality, but the corresponding entry in a privilege log must state all claims of privilege and confidentiality. For example, and without limiting the foregoing, if a Party claims that redacted text is protected by both the attorney-client privilege and the work product privilege, then the text that appears on the redaction on the face of the document may state only "Attorney-Client Privilege," but the corresponding entry in a privilege log must state both "Attorney-Client Privilege" and "Work Product Privilege." In addition to redactions based on claims of privilege and confidentiality, the Parties may redact all non-responsive information.

**14.     De-Nisting of ESI**.   The Parties may remove operating system files and program files with the assistance of their respective information technology vendors or agents prior to conducting searches of data in accordance with the National Software Reference Library De-Nisting Process.

**15.     Third-Party Software**.   To the extent that documents produced cannot be rendered or viewed without the use of proprietary third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals which are the property of a third party.

**16.     No Waiver by Disclosure**.

> a. If a producing Party discloses information that the Party thereafter claims to be privileged or confidential (**"Disclosed Protected Information"**), the disclosure of the Disclosed Protected Information shall not constitute or be deemed a waiver or forfeiture of any claim of privilege or confidentiality that the Party would otherwise be entitled to assert with respect to the Disclosed Protected Information and its

subject matter in this litigation, any investigation, or any other federal, state, or administrative proceeding.

b. The producing Party may assert in writing any privilege or claim of confidentiality with respect to the Disclosed Protected Information. The receiving Parties must—unless they contest the claim of privilege or confidentiality for each document in the Disclosed Protected Information—within five (5) business days of receipt of that writing, (i) return or destroy all copies of the Disclosed Protected Information, and (ii) sequester the Disclosed Protected Information and (iii) provide a written notification to the producing Party that all of the Disclosed Protected Information has been sequestered, returned or destroyed. Within five (5) business days of receipt of the notification that the Disclosed Protected Information has been sequestered, returned or destroyed, the producing Party must provide a privilege log with respect to the Disclosed Protected Information to the receiving Parties. The Parties may stipulate in writing to extend the time periods set forth in this sub-paragraph.

c. If a receiving Party contests the claim of privilege or confidentiality for Disclosed Protected Information, the receiving Party may not disclose any of the Disclosed Protected Information, except under seal to a court of law, until the resolution of the objection. Pending such resolution, the receiving Party must sequester the Disclosed Protected Information and not use the Disclosed Protected Information or disclose it to any person other than as required by law.

d. Disclosed Protected Information that is sought to be reclaimed by a producing Party shall not be used as grounds by any other Party or third party to argue that any waiver of privilege or protection has occurred by virtue of its production.

e. The producing Party retains the burden of establishing the privileged or protected nature of the Disclosed Protected Information.

**17.** **Reservation of Rights.** Nothing contained herein is intended to create a precedent for, or to constitute a waiver or relinquishment of, any Party's objections or arguments pertaining to any potential future productions of ESI. Nothing contained herein constitutes a waiver of any Party's rights or obligations under any law, including but not limited to laws regarding any matter or information that is or may be claimed to be privileged, confidential, proprietary, or otherwise personal or private.

**18.** **Entire Agreement/Modification.** This Protocol contains the entire agreement of the Parties with respect to the production of ESI, and any statement, promise, or inducement made by either Party not set forth herein shall be of no effect, nor shall it be used in construing the terms of this Protocol. This Protocol

may not be modified or amended except in writing signed by all Parties. Court approval is not required to modify or amend this Protocol, provided that such modification or amendment is in writing signed by all Parties.

**19.     Relief from this Protocol.**     Any Party may request relief from any obligation set forth in this Protocol.    All such requests shall be in writing and submitted to the Court for consideration, with a copy of the request served to all Parties via email and U.S. mail.    Any Party may oppose any request for relief by submitting a written opposition to the Court, with a copy of the opposition served to all Parties via email and U.S. mail within five (5) days of service of the request for relief.

**20.     Cost Shifting.**    Each Party expressly reserves the right to petition the Court to shift the cost of the production of ESI to the requesting Party.

### ###

# APPENDIX A(2)

## Appendix A(2) – Metadata Fields

| Field | Description |
| --- | --- |
| Production Volume | Production volume name. |
| Production – Begbates | Beginning bates number of document. |
| Production – Endbates | Ending bates number of document. |
| Production Bates – Attach Begin | Beginning bates number of attached documents. |
| Production Bates – Attach End | Ending bates number of attached documents. |
| MD5 Hash | MD5 hash value of native file. |
| Application | Program commonly used to access the record. |
| Extension | File extension. |
| File Name | File name without the file path. |
| Time Zone Field | Time zone at which record was collected. |
| File Size (bytes) | Size of file in kilobytes. |
| Relativity Image Count | Number of pages imaged. |
| Custodian | Person, device, or organization in possession of the record at the time of collection. |
| DupCustodian_w_Orig | Name(s) of custodian(s) with exact copy of file before deduplication. |
| Created Date | Date an edoc (loose file) was created. |
| Created Time | Time edoc (loose file) was created. |
| Last Modified Date | Date edoc (loose file) was last modified. |
| Last Modified Time | Time edoc (loose file) was last modified. |
| App Created Date | Date email attachment was created. |
| App Created Time | Time email attachment was created. |
| App Last Modified Date | Date email attachment was last modified. |
| App Last Modified Time | Time email attachment was last modified. |
| Subject | Subject field of email. |
| From (Name) | Sender of email. |
| Sent To | The "to" addressee(s) of email. |

| Field | Description |
|---|---|
| CC | The carbon copy addressee(s) of email. |
| BCC | The blind carbon copy addressee(s) of email. |
| Sent Date | Date email was sent. |
| Sent Time | Time email was sent. |
| Received Date | Date email was received. |
| Received Time | Time email was received. |
| Conversation Topic Index (CTOPICINDEX) | Unique identifier assigned to email chain by Microsoft Outlook. |
| Parent ID | Unique identifier assigned to a child attachment's parent email. |
| Author | Last editor of edoc (attachments / loose files) either inputted manually by author or through a preference setting in file properties. |
| Title | Title of edoc (attachments / loose files) either inputted manually by last editor or through a preference setting in file properties. |
| Native File Link | This field will contain the full path on the production media to any native files being produced. |
| Internet Header | Section of the email message populated with source and destination information. It sometimes includes Sender IP Address, and Transit server information. Often includes Sender / Recipient, subject, date-stamps, message ID and more based on the originating Mail User Agent. |