UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE FLINT WATER CASES

Civil Action File No.
5-16-CV-10444-JEL-MKM

**CO-LIAISON COUNSEL'S SUPPLEMENTAL RESPONSE IN OPPOSITION TO THE ANDERSON,[1] ALEXANDER,[2] WASHINGTON,[3] AND CHAPMAN[4] PLAINTIFFS' MOTION FOR REMOVAL OF CURRENT LIAISON COUNSEL**

Co-Liaison Counsel submit this supplemental response in opposition to the Anderson Plaintiffs' motion (ECF. No.1293), which was recently joined by three groups of plaintiffs: Alexander Plaintiffs (ECF. No. 1296); Washington Plaintiffs (ECF. No. 1299); and Chapman Plaintiffs (ECF. No. 1300). To the extent that attorneys Sanders, Bern, and Cuker seek the same relief as Washington, Co-Liaison Counsel adopts by reference their previous response (ECF. No. 1295) as if fully stated herein.

Neither Bern, Sanders nor Cuker provide any substantive or factual argument in support of Washington. Likewise, they utterly fail to provide any legal support for the relief Washington seeks. In sum, neither Movant, nor Joinder Plaintiffs, have come forward with anything to support the current motion.

---

[1] The original motion was filed by attorney Valdemar Washington ("Washington") on behalf of the Anderson Plaintiffs.
[2] The Alexander Plaintiffs are represented by attorney Herb Sanders ("Sanders"). Co-Liaison Counsel tangentially referenced the Sanders concurrence in their initial response (ECF. No. 1298) to the Anderson Plaintiffs' motion.
[3] The Anderson Plaintiffs are represented by attorney Marc Bern ("Bern").
[4] The Chapman Plaintiffs are represented by attorney Mark Cuker ("Cuker").

While neither Sanders, Bern, or Cuker submitted any new facts or information in support of Washington's motion, Co-Liaison Counsel submits the following facts for the Court's further consideration:

1. On behalf of Co-Liaison Counsel, Mr. Stern has repeatedly discussed certain aspects of the settlement negotiations (those which he has been permitted to discuss) with Sanders and his team, in person and over the phone, including at least one meeting at Sanders' (or his co-counsel's) office in Flint.

2. After the settlement was announced on August 20, 2020, Mr. Stern and Special Master Greenspan discussed the settlement with Sanders, at length, during the week of August 24, 2020. At that time, Sanders was in possession of Exhibit 4 – Terms of Settlement of Flint Water Cases Against the State of Michigan ("Exhibit 4"), attached hereto as Exhibit A and incorporated by reference as if fully stated herein.

3. In the Spring of 2020, during the height of the pandemic, and while negotiations were still ongoing remotely, Mr. Stern had at least two lengthy calls with Bern and Cuker to inform them of the general nature and status of the settlement discussions, and to answer any questions either had about the negotiations. Mr. Stern, in accordance with the authorized parameters set by the neutrals and the Special Master, answered as many of Bern's and Cuker's questions as was permitted. During both calls, Bern and Cuker were advised that Co-Liaison Counsel was not supporting class treatment of individuals, including their clients.

4. As the Court is aware, on the evening of August 19, 2020, the proposed $600 million settlement with the State of Michigan ("State") was leaked to the press. As a result of the leak, and with the Court's approval, negotiating counsel, including Co-Liaison Counsel, Interim Lead Counsel for the Putative Class, and counsel for the State immediately began to prepare public

statements for release, setting forth details of the settlement under the supervision of the Special Master and the Court appointed neutrals.

5. At 11:39 p.m., on August 19, 2020, Mr. Stern emailed Cuker, and asked if he could speak to him the next morning about the proposed settlement.

6. At 12:24 a.m., on August 20, 2020, Mr. Stern emailed Sanders, wherein he asked if they could speak in the morning.

7. At 12:25 a.m., on August 20, 2020, Mr. Stern emailed Bern, wherein he asked if they could speak in the morning.

8. At 9:59 a.m., on August 20, 2020, after speaking with Cuker on the phone, and a minute before the State publicly issued its statement regarding the settlement, Mr. Stern emailed Cuker Exhibit 4.

9. On August 20, 2020, at 10:00 a.m., the State issued its public notice of the proposed settlement, which included Exhibit 4.

10. On August 21, 2020, Mr. Stern, on behalf of Co-Liaison Counsel, along with Special Master Greenspan, had an extensive conversation with Bern and Cuker, during which the authorized information about the settlement was relayed to them. At that time, Bern and Cuker were in possession of Exhibit 4, which was discussed at length with Mr. Stern and Special Master Greenspan.

11. Upon information and belief, between August 21, 2020 and October 23, 2020, Special Master Greenspan had at least one subsequent conversation with Bern and Cuker regarding details she was permitted to discuss with them about the proposed settlement.

12. Upon information and belief, on October 23, 2020, Special Master Greenspan discussed various details of the proposed settlement with Washington, Sanders, Bern and Cuker.

13. Upon information and belief, on October 26, 2020 (prior to the filing of Washington's motion), Special Master Greenspan spoke again with Washington, Sanders, Bern and Cuker, during which she explained and reminded them that:

(a) there was an escrow agreement;

(b) Mr. Stern and Mr. Shkolnik were constrained in what they could say about the settlement;

(c) there would be an opportunity to evaluate and opine on the settlement prior to Court approval; and

(d) their clients were not obligated to participate in it.

14. Importantly, and upon information and belief, Special Master Greenspan pointed out to Washington, Sanders, Bern and Cuker that utilization of bone lead levels as a means for compensation within the proposed settlement was included in Exhibit 4, which each of them possessed two months earlier.

As discussed in Co-Liaison Counsel's response to Washington's pleading, *ad-nauseum*, there was no secrecy related to, or confidential information associated with lead levels, including bone lead levels, serving as a basis for compensation in the settlement (which is the crux of Washington's request for relief). But as shocked as Co-Liaison Counsel was to receive Washington's pleading, what is more astonishing are the concurrences filed by Sanders, Bern and Cuker (which came <u>after</u> Co-Liaison Counsel's response was filed). None of them disputed anything that Co-Liaison Counsel laid out in their papers. None of them claimed <u>not</u> to have received Exhibit 4 roughly two months before the infomercial. None of them argued that Mr. Stern or Special Master Greenspan failed to explain the nature of the escrow agreement.

Instead of adding anything of substance or additional facts to either support Washington's motion or dispute the information contained in Co-Liaison Counsel's response thereto, Sanders, Bern and Cuker simply said "me too."

## CONCLUSION

As set forth previously, the actions of Co-Liaison Counsel (as well as those of all participating parties to the settlement negotiations) have been closely monitored by the Special Master. Sanders, Bern and Cuker were so advised prior to the filing of Washington's motion. Sanders, Bern and Cuker had opportunity to read Co-Liaison Counsel's opposition to Washington's pleading prior their concurrences, and each chose to file joinders anyway, without adding anything of substance, thus adopting in full Washington's motion. Not only should Washington's request be denied in its entirety with consideration given to sanctioning him, but the Court should absolutely sanction Sanders, Bern and Cuker for their blind support of the spurious motion.

Dated: October 28, 2020                                         Respectfully Submitted,

/s/ COREY M. STERN
Corey M. Stern (P80794)
**LEVY KONIGSBERG, LLP**
800 Third Avenue, 11th Floor
New York, New York 10022
(212)605-6298
(212)605-6290 (facsimile)
cstern@levylaw.com

/s/ HUNTER SHKOLNIK
Hunter Shkolnik
**NAPOLI SHKOLNIK**
Hato Rey, Puerto Rico 00918
(787)493-5088 Ext. 2007
hunter@napolilaw.com

## **CERTIFICATE OF SERVICE**

I certify that on October 28, 2020, I electronically served the forgoing via E-mail to the parties registered with the Court's ECF system in this matter.

                Respectfully Submitted,

                /s/ COREY M. STERN
                Corey M. Stern (P80794)
                **LEVY KONIGSBERG, LLP**
                800 Third Avenue, 11th Floor
                New York, New York 10022
                (212)605-6298
                (212)605-6290 (facsimile)
                cstern@levylaw.com