```
 1              IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4   In Re:  FLINT WATER CASES        Case No.  16-10444
     _____/
 5

 6                   DISCOVERY STATUS CONFERENCE
               BEFORE THE HONORABLE JUDITH E. LEVY
 7                 UNITED STATES DISTRICT JUDGE
         Virtual Hearing Via Zoom - Wednesday, October 21, 2020
 8

 9                      APPEARANCES IN ALPHABETICAL ORDER:

10                      Margaret A. Bettenhausen, Esq.
                        Michigan Department of Attorney General
11                      525 West Ottawa Street, P.O. Box 30755
                        Lansing, Michigan 48909
12
                        Joseph F. Galvin, Esq.
13                      Genesee County Drain Commissioners
                        4610 Beecher Road
14                      Flint, Michigan 48532

15                      Deborah E. Greenspan
                        Special Master
16                      Blank Rome, LLP
                        1825 Eye Street, N.W.
17                      Washington, DC 20006

18                      Steven A. Hart, Esq.
                        Hart, McLaughlin & Eldridge
19                      121 West Wacker Drive, Suite 1050
                        Chicago, Illinois 60601
20
                        Richard S. Kuhl, Esq.
21                      Michigan Department of Attorney General
                        ENRA Division, P.O. Box 30755
22                      Lansing, Michigan 48909

23                      Patrick J. Lanciotti, Esq.
                        Napoli Shkolnik Law PLLC
24                      360 Lexington Avenue, 11th Floor
                        New York, New York 10017

25
```

```
1   APPEARANCES (Continued):

2                       David Alexander Latanision, Esq.
                        Levy Konigsberg, LLP
3                       800 Third Ave
                        11th Floor
4                       New York, New York 10022

5                       Theodore J. Leopold, Esq.
                        Cohen Milstein Sellers and Toll, PLLC
6                       2925 PGA Boulevard, Suite 200
                        Palm Beach Gardens, Florida 33410
7
                        Cynthia M. Lindsey, Esq.
8                       Cynthia Lindsey & Associates
                        8900 East Jefferson Avenue, Number 612
9                       Detroit, Michigan 48214

10                      T. Santino Mateo, Esq.
                        Perkins Law Group, PLLC
11                      615 Griswold, Suite 400
                        Detroit, Michigan 48226
12
                        Joseph E. O'Neil, Esq.
13                      Campbell Conroy & O'Neil, P.C.
                        1205 Westlakes Drive, Suite 330
14                      Berwyn, Pennsylvania 19312

15                      Michael L. Pitt, Esq.
                        Pitt, McGehee, Palmer & Rivers, PC
16                      117 West Fourth Street, Suite 200
                        Royal Oak, Michigan 48067-3804
17
                        David M. Rogers, Esq.
18                      Campbell Conroy & O'Neil, P.C.
                        1 Constitution Wharf, Suite 310
19                      Boston, Massachusetts 02129

20                      Teresa Marie Russo, Esq.
                        Marc J. Bern & Partners, LLP
21                      225 W Washington St
                        Suite 2200
22                      Chicago, Illinois 60606

23                      Hunter Shkolnik, Esq.
                        Napoli Shkolnik Law PLLC
24                      1301 Avenue of the Americas, 10th Floor
                        New York, New York 10019
25
```

```
1   APPEARANCES (Continued):

2                        Corey M. Stern, Esq.
                         Levy Konigsberg, LLP
3                        800 Third Avenue, Suite 11th Floor
                         New York, New York
4
                         Christopher A. Stritmatter, Esq.
5                        Simen, Figura & Parker
                         5206 Gateway Centre, Suite 200
6                        Flint, Michigan 48507

7                        Renner K. Walker, Esq.
                         Levy Konigsberg, LLP
8                        800 Third Avenue, Suite 11th Floor
                         New York, New York 10022
9
                         Timothy B. Walthall, Esq.
10                       United States Department of Justice
                         Civil Division, Torts Branch
11                       Environmental Tort Litigation
                         175 N Street, NE
12                       Washington, DC 20002

13                       Valdemar L. Washington, Esq.
                         718 Beach Street, P.O. Box 187
14                       Flint, Michigan 48501

15                       Matthew Wise, Esq.
                         Foley & Mansfield, PLLP
16                       130 E. 9 Mile Rd.
                         Ferndale, Michigan 48220
17

18   ALSO PRESENT:       Gladys Christopherson

19

20

21

22   REPORTED BY:        Darlene K. May, CSR, RPR, CRR, RMR
                         231 W. Lafayette Boulevard
23                       Detroit, Michigan 48226
                         (313) 234-2605
24

25
```

4

1                          TABLE OF CONTENTS

2     PROCEEDINGS:                                              PAGE:

3       Court opened                                             5

4       Proceedings                                              5

5         Remarks by Mr. Stern                                   9
          Remarks by Mr. Leopold                                14
6         Remarks by Mr. Pitt                                   17
          Court's ruling                                        18
7         Final remarks by counsel                              20

8       Court Reporter's Certificate                            24

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          Wednesday, October 21, 2020

2          2:09 p.m.

3                          -- --- --

4      (Appearances announced by court reporter.)

5          THE CLERK OF THE COURT:  The United States District

6  Court for the Eastern District of Michigan is now in session.

7  The Honorable Judith E. Levy presiding.

8          Calling the Flint Water cases.

9          THE COURT:  Okay.  Well, we now have appearances on

10  the record already.  So welcome.  And the purpose of this time

11  is to address what I consider to be a very narrow, discreet

12  issue in a dispute over the release of a transcript.

13          So it's not about the settlement.  It's not about the

14  proposed settlement or any of the meatier motions that are

15  before the Court.  But nonetheless, I hope that everyone is

16  staying healthy, safe and productive during this time.

17          There are -- at least in Michigan, the pandemic is on

18  the uptick instead of flattening or going down.  So I'm

19  concerned about everyone here and I think that's true in many

20  of your communities as well.  So please take good care of

21  yourselves.

22          And what has come to my attention through the process

23  of reaching out to the Court when there's an issue -- and this

24  one was sort of brewing awhile back, October 2nd, I guess, we

25  initially addressed this or after that.  And it relates to the

1    deposition transcript of Dr. Aaron Specht, S-p-e-c-h-t.  And I

2    want to start out by saying the following, which is that I

3    received Mr. Stern -- I think, Mr. Renner Walker might have

4    actually filed it.

5            A motion for protective order.  And those were -- are

6    contemplated and permissible under the Rules of Civil

7    Procedure.  And that written motion, which resulted in an oral

8    argument on October 2nd late in the day requested that the

9    depositions of four of the bellwether plaintiffs' experts be

10   limited to counsel to those cases and not be open to the public

11   at large, to clients in other cases and to lawyers in other

12   cases.  And the primary reason that was set forth in the motion

13   for a protective order was that these depositions were of

14   individuals who had evaluated the medical or mental health or

15   cognitive status of the plaintiffs and, thus, they were about

16   very personal and private health information.

17           And, of course, when you file a lawsuit, you know that

18   you're putting your health status -- a lawsuit of this nature.

19           You're putting it out in the public domain but not

20   until you're at trial and you decide what evidence you're going

21   to put in at trial.  And then, of course, it's open to the

22   public barring some extraordinary reason that would have to

23   exist to keep a courtroom sealed in a civil case.  And I can't

24   imagine anything other than national security interests that

25   would require that.

1           But we're not at that point now.  We're at the

2     pretrial point.  And in the Sixth Circuit one of the preeminent

3     cases is *Shane Group versus Blue Cross*.  And one of the

4     interesting things about the *Shane Group* case is it says the

5     following, that:  "Secrecy is fine at the discovery stage

6     before the material enters the judicial record."

7           And that's a Sixth Circuit published case from 2016.

8     And that's sort of the law of the land in terms of what we're

9     talking about today.

10          And as I went back to prepare for today's hearing, the

11    motion that was filed requested both a protective order

12    regarding who could attend the deposition and a protective

13    order about who could get a copy of the transcript of the

14    deposition.  And that's Page ID 39,700 where that was

15    requested.  And it was requested that it be limited to counsel

16    of record for parties named in the Gaddy and Meeks cases.

17          And what happened is we then had a hearing.  And to be

18    perfectly frank, I couldn't figure out why anybody else wanted

19    to attend the deposition and so I spent a good deal of that

20    hearing trying to guess and throwing out ideas.

21          Maybe you want to bolster the -- maybe the class

22    counsel wanted to bolster the witness and was worried that

23    Mr. Stern or Mr. Shkolnik wouldn't be able to defend their

24    witness or maybe it was the opposite.  I simply didn't know and

25    I still don't really know what's going on here.  But that often

1    happens where you're called upon to rule on things based on the

2    law and the facts that you have that the parties have chosen to

3    give you on any given issue.

4            And so at that time I said I do think we should limit

5    who attends the deposition.  And then I said, "Well, you can

6    just order transcript.  If you want to find out what happened,

7    order the transcript."

8            And so that would certainly seem like a reasonable

9    thing to do.  I said it on October 2nd.

10           Then I did something that was a little contradictory

11   to that statement on the record, which was I granted the

12   written motion in full.  And as I sat with my law clerk after

13   the hearing and we decided, well, are we granting it in part or

14   in full, I determined that we were granting in full.  So that's

15   what the order said.

16           So understandably there's confusion because at the

17   hearing I said we are -- you can order the transcript.

18   Following the hearing, I said for the reasons set forth on the

19   record the relief requested is granted in full.  So now what we

20   have to figure out is, apparently, there are standard orders as

21   there are in cases of this nature for deposition transcripts.

22   And pursuant to a standard order, many of the lawyers on this

23   call received a copy of the transcript of this deposition even

24   though that issue was ambiguous, at best.

25           And also at the beginning of the deposition, I learned

1  through E-mail communication to my law clerk, Leslie Calhoun,

2  Mr. Stern apparently asked -- or stated that the transcript

3  should not be released other than to parties in the case; to

4  those two bellwether cases.

5          So then, in order to have this hearing, I went through

6  the usual rigamarole and said I'd like a one-page summary from

7  both sides.  If somebody still wants this transcript, tell me

8  in your one-pager why you want it and if somebody doesn't want

9  it released, tell me.  And I don't think I got any one-page

10  summaries from either side.

11          So I guess, first of all, I want to know whether we

12  still have a problem.  So why don't I start with Mr. Stern who

13  requested this issue be addressed.

14          MR. STERN:  Yes, Your Honor.  Corey Stern as

15  co-liaison counsel.  As an initial matter, I don't think I

16  received a communication asking for a one-page summary.

17          THE COURT:  You know, I think what we did was -- this

18  was sort of last minute so we didn't quite have the timing in

19  place that we usually do and it was on the docket on the

20  hearing notice itself.

21          MR. STERN:  Okay.  I apologize.  I didn't submit one

22  but that's not because there's not an issue.

23          THE COURT:  Okay.

24          MR. STERN:  So, as an initial matter, on Sunday --

25  this past Sunday, I was contacted by Mr. Leopold to ask me to

1    please inform him who the court reporter was so that he could

2    order the transcript.  It was a pleasant interaction.  I wrote

3    back and said, "You know, you might be right that you're

4    entitled to it, but I don't think you are.  Perhaps we can just

5    get some guidance from the Court."  At which point Mr. Leopold

6    sent me the transcript Sunday evening.

7              I read the transcript, and I responded Monday morning

8    and said I'd like to get some guidance from the Court.  To

9    which he responded, no need, we've already received the

10   transcript.  We're only interested in certain information, and,

11   you know, that's that, essentially.

12             And I was very surprised that irrespective of how the

13   transcript got to anyone, the fact that I had stated before

14   they had possession of the transcript that there was a dispute

15   as to whether they should get the transcript.  I was surprised

16   that there was still receipt of a transcript and that as far as

17   class counsel was concerned the issue was moot because now they

18   had the transcript.

19             Not only did I read the order that Your Honor entered

20   as applying to the transcript as well as to the attendants in

21   the deposition, I also felt from reading the transcript itself

22   that the tenor of -- the tenor of the argument and the Court's

23   opinions as expressed during that hearing changed somewhat from

24   the beginning of the hearing where Your Honor may have been

25   leaning to the end of the hearing where you had told counsel

1    that they could contact Dr. Specht or they could contact

2    another expert and you don't really know what the reasons for

3    all this are, but you're just going to limit it and you're not

4    going to the hearing.  You're not going to ask questions at the

5    hearing.

6            So that deposition took place.  I put on the record at

7    the beginning of the deposition that the transcript wasn't to

8    be given to anybody.  At a minimum, if someone had read the

9    transcript who wasn't supposed to and saw at the beginning that

10   I had put that on the record, they should have known well and

11   good at that point to not proceed any further.

12           The fact that on a Sunday evening I said there's a

13   dispute about whether you should get the transcript should have

14   alerted folks that when they got the transcript they shouldn't

15   look at it, shouldn't touch it, should delete it until the

16   Court was brought into the matter.

17           And to the point itself, we have four children who the

18   deposition covered in terms of their bone scans and in terms of

19   their health and I maintained that it's not appropriate for

20   anybody besides the parties to this case at this stage of the

21   litigation to see the transcript.  I'm mostly disappointed

22   that -- I don't think it's possible at this point to put the

23   stick back in that horse.

24           I mean, there were, you know, 12 or 13 people who

25   received a copy of the transcript and, other than three or four

1    VNA attorneys, all of them were either with Cohen Milstein,
2    Susman Godfrey or the Pitt firm.  And I can't imagine that
3    between the time they received the transcript and the time Your
4    Honor sent an E-mail saying destroy it or don't read it or
5    whatever, that it hadn't been read.
6            You know, I take it personally.  These are my clients.
7    I understand that, you know, other people are handling the
8    cases in other ways, but I represent these people.  I represent
9    their parents.  I represent the kids.  They're not always
10   excited about showing up for depositions themselves.  They
11   don't love the idea about personal health information being
12   discussed during the deposition and there's a reason why the
13   Sixth Circuit has opined that secrecy is okay until you get to
14   trial.
15           So I don't know what can be done at this point, but
16   I'm extremely disappointed in the way this has all happened.  I
17   don't think it's appropriate that anyone read these depositions
18   even if they received them completely innocently from a court
19   reporter.  Because I made it known before the court reporter
20   sent the deposition transcripts that I was not okay with anyone
21   who wasn't a party to the deposition reading it.
22           So I'd like to know in addition to -- you know, if
23   Your Honor rules that anyone can see the transcript or that the
24   class lawyers can or anyone else can, then it's a moot point
25   but if the ruling is that they can't or they should destroy it

1 or it was not proper for them to receive it, I'd like to know

2 at this point who's read it. And I'd like to know how many

3 people read it and what they did with that information and

4 where we are with that.

5 THE COURT: Well, I -- let me hear ...

6 Is it Mr. -- who's responding? Is it Mr. Leopold?

7 MR. LEOPOLD: It is, Your Honor. Thank you.

8 THE COURT: And when you respond, here's what I would

9 like to know: At the hearing on October 2nd, Mr. Stern said,

10 "Dr. Specht is going to be talking about private, protected

11 health information. If Mr. Pitt wants it, he can potentially

12 order the deposition and then we have to fight that. This is

13 not intended -- these depositions are not seminars for people

14 to learn about things they want to educate themselves about."

15 And so I think there's at least fair warning, even if

16 there was confusion from some of the comments that I meant --

17 made, that Mr. Stern did not want these deposition transcripts

18 to be released. So I am interested in knowing the following:

19 I think it is -- I'd like you to tell me what the good cause is

20 on viewing this situation as one where I granted a protective

21 order. And the way around a protective order is to show me

22 good cause. What is the good cause for you prior to trial to

23 have this information? Why do you need it?

24 And tell me how you can't get it some other way. You

25 don't want the bone scans for these given children, do you?

14

```
1          MR. LEOPOLD:  No, Your Honor.  And that was gone into
2    at some length on the hearing on October 2nd, I believe.
3          THE COURT:  Right.
4          MR. LEOPOLD:  And as some of --
5          THE COURT:  Stop.  Stop talking.  Tell me why you
6    can't get the general information some other way that you're
7    speaking about about bone scans, if that's what you're seeking.
8          MR. LEOPOLD:  It's a little difficult to get too into
9    the weeds on the issue without getting into issues related to
10   the way, allocation of damages and settlement are resolved.  So
11   I'm very hesitant about doing that.  And I don't know if I can
12   say anything else other than that.
13         THE COURT:  Okay.  I don't want to hear about that
14   because I don't have the proposed settlement filed with me
15   yet.
16         MR. LEOPOLD:  Right.
17         THE COURT:  But what I want to hear is if what you
18   want is to be educated about this bone scan technique.  Is that
19   what you want is to learn about it?
20         MR. LEOPOLD:  In some semblance, yes.  Because
21   Dr. Specht is the individual that has been used by the parties
22   on -- for defendants and liaison counsel related to the bone
23   scan of which Dr. Specht has created with the help of his group
24   some aspect of this particular process and procedures for the
25   bone scan.
```

1        So he -- my understanding.  I have not read the

2    deposition.  I just very generally skimmed it just quickly.  I

3    didn't even read it page for page.

4        But my understanding is just by doing that, he went

5    into dramatic other things other than just the four

6    bellwethers.  It was about the process procedures,

7    proprietary-related issues of his bone scanning issues.  That

8    is what is at the heart of what we are attempting to try and

9    make sure that we all -- all of us, including other plaintiffs'

10   counsel, not just liaison, but the thousands of other

11   plaintiffs' individual counsel that have PI claims as well as

12   Mr. Pitt and myself's over a thousand minor claims, that will

13   be part of the evaluation process for damages.  That's why I'm

14   hesitant to go into anything more than that because I know the

15   Court doesn't have that information yet.

16       That said, that is the purpose for doing that, number

17   one.  Number two, in order to follow up on what Your Honor was

18   raising at the last hearing, why can't we just go out and get

19   our own expert, we are doing that.  In fact, the expert we have

20   that we had been talking to is the one who trained Dr. Specht.

21   They were all students under him -- under her, excuse me.  So

22   we're doing that.

23       But in order to make sure we're all talking apples to

24   apples, we need to understand and appreciate what Dr. Specht

25   has done by way of the processes and procedures.

1          So my only comment is twofold.  I have no idea -- the

2     reason -- I asked Mr. Stern for the copy of the transcript

3     because we understood from your ruling on the transcript of

4     which we looked at beforehand.  In two different sections of

5     the hearing Your Honor told Mr. Pitt that -- first you said why

6     don't you go to the deposition but you can't ask questions and

7     then Mr. Stern responded in that -- to that ruling by the

8     Court.

9          And then after that, Your Honor withdrew that aspect

10    and says just go get the transcript.  And you said that on two

11    different occasions.  It seemed to us respectfully that it was

12    quite specific that we can get the transcript.  That's why I on

13    Sunday I asked Mr. Stern for the transcript.  I had no idea who

14    the court reporter was.  I wasn't involved, et cetera.

15         Next thing I knew is later on, I think sometime

16    Sunday, maybe it was Monday.  I really don't recall.  Evidently

17    the protocol for all of these cases, all of them, this one

18    court reporter.  And I guess we -- we, meaning my firm.  I

19    don't know if any other firms.

20         But the class counsel, if you will, gets dirty copies

21    of the transcripts and they know to send us copies.  And that's

22    how we done it.  We didn't request anything specifically for

23    this deposition.

24         THE COURT:  Okay.  Thank you.

25         MR. PITT:  And, Your Honor, this is Michael Pitt.  Can

17

```
1   I just supplement what Mr. Leopold said?
2           THE COURT:  Sure.  Very briefly.
3           MR. PITT:  Okay.  Sure.  The technology is what we're
4   interested in knowing about.  We have no interest at all in
5   knowing about the medical condition of the four bellwether
6   children.  We made that clear before.
7           THE COURT:  Okay.
8           MR. PITT:  And the technology has very broad
9   implications across the community.
10          THE COURT:  Okay.
11          MR. PITT:  Very broad.
12          THE COURT:  Good.
13          MR. PITT:  So we need to know more about that
14  technology because it is unique and it is probably proprietary.
15  So we need to know more about it.
16          THE COURT:  Okay.  Then here's what we'll do.  I'm
17  going to require that the current copies of the transcript that
18  have been disseminated to people who are not counsel on the two
19  cases at issue or one -- any of those cases of the four
20  bellwether plaintiffs be destroyed.
21          And there are many ways to learn about this technology
22  without reviewing transcripts that have this material about
23  these four childrens' health care.  So I think it is a
24  reasonable request in that the -- I understand that there was
25  ambiguity between the transcript and ultimately when I entered
```

1    an order saying that I had granted the relief requested by

2    plaintiffs.  But there are many ways to find out about this

3    technology, including searching the internet and reading these

4    articles that I've -- I've seen the -- I mean, there are

5    articles.  I looked it up.  I thought, "What is this?"

6            So I'm requiring that those transcripts be returned

7    and not relied upon in terms of -- I mean, I don't know why --

8    where you could possibly cite them anyway.

9            So it just isn't necessary at this time.  And from my

10   perspective, individual plaintiffs have revealed a lot about

11   their physical condition and so on and to the extent children

12   in particular can be protected in this process, we're just

13   going to do that.  That's going to be -- if I'm going to make a

14   mistake, I'm going to make it in the direction of protecting

15   people's health information.  And there are many ways to learn

16   about this process of X-ray fluorescence that measures bone

17   lead levels with a portable X-ray system.

18           So I think that is consistent with Sixth Circuit law

19   that acknowledges that discovery information is very different

20   from trial or settlement or any sort of filing in court.  So at

21   the point that the trials take place or that there's motion

22   practice that any of the counsel on this call are a part of and

23   this deposition is cited, then the full deposition transcript

24   is reasonable to ask for.

25           So what I need to know is what are we going to do to

1  make sure that this doesn't happen the next time.  And because

2  there are standard orders and I have a feeling the court

3  reporter who took down that it shouldn't be disseminated had

4  nothing to do with actually sending it out.  It may have been

5  the company itself.

6       MR. STERN:  The court reporter, Your Honor -- sorry.

7  Corey Stern.

8       The court reporter actually contacted me after

9  Mr. Leopold told me had gotten the transcripts.  I wrote in

10 light of the request I made on the record that the transcript

11 not be shared, I just asked who had the transcript been

12 disseminated to and at that point she recognized that she

13 had -- I didn't say she made a mistake.  I didn't even raise

14 the issue with her.  I just asked her that question.  And she

15 said, oh, my God.  I'm sorry.  I did send it.  I shouldn't have

16 sent it and I won't send volume two or something like that.

17      At which time I asked her is there anybody else on the

18 list who may get the transcript and she said, "No.  Unless I

19 send it to them they're not going to get it."

20      THE COURT:  Okay.

21      MR. STERN:  So it does come directly from the court

22 reporter.  Again, the only people on the list who received it

23 were class counsel and VNA.  I guess in the future I'll

24 continue to put on the record and then follow up -- there's

25 only, I think, two more experts who are testifying about

1    personal medical information to the kids, you know.

2            And I guess my other question is did they receive the

3    transcripts from Dr. -- from our neuropsychologist, Dr. Mira

4    Krishnan.  Because if the same protocol is in place and there

5    was nothing -- this had nothing to do with anybody requesting

6    it and there's a standing order for these transcripts, then my

7    guess is they're also in possession of the Krishnan deposition

8    transcripts.  So I would like to know if that's accurate.

9            MR. LEOPOLD:  Your Honor, I don't know.  We'll find

10   out and, if so, we'll delete it.  I'm not aware of receiving

11   those at all.  So ...

12           I didn't even get this one until I asked if we had it

13   because I asked somebody that handles the depositions how we

14   get the deposition.

15           THE COURT:  Okay.

16           MR. LEOPOLD:  So that's how.

17           Your Honor, and if so, I will confirm, A, whether we

18   have it.  If we don't, I'll advise.  If we do, I'll advise that

19   they've been, I guess, deleted or trashed or something.

20   However it's done.

21           THE COURT:  Okay.

22           MR. LEOPOLD:  Your Honor, going back to what you said

23   earlier, I guess at the last hearing, our -- it's always a

24   difficult issue when it's not our expert and it's somebody

25   else's.  I'm not clear whether we can contact Dr. Specht,

1   whether we're supposed to set his deposition, neither, I'm not

2   sure.

3           THE COURT:  That's -- I think you have to answer that

4   yourself.

5           I mean, I don't see why you couldn't hire him.  I

6   don't know if you can or can't.  You definitely just need to

7   contact him.

8           He's not represented by Mr. Stern.  So you're not

9   prohibited for that reason.

10          MR. LEOPOLD:  Well, he's retained by Mr. Stern.

11          THE COURT:  Yeah.  And I haven't looked up any law

12   related to that.  So I ask you to do that research.

13          MR. LEOPOLD:  We will be happy to do that research.

14          THE COURT:  Okay.

15          All right.  Is there anything else for all of us to

16   talk about?

17      (No response.)

18          THE COURT:  Okay.  Good.  Well, I hope everybody takes

19   care and I will see you at our next conference.

20          MR. LEOPOLD:  Corey, could I just ask you to send me

21   the list of your experts so I can send it around and we --

22          MR. STERN:  Not only did we send you -- we sent you a

23   Dropbox with all of their reports from Patrick Lanciotti within

24   two days of the last hearing that we had other than the reports

25   from the four experts for whom the protected order applied.  So

1   you are in possession of not only the names of our experts, but

2   their reports for the global issues.

3           MR. LEOPOLD:  I know I have the reports.  But, okay,

4   thanks.  We'll try to dig it up and get it back to you as soon

5   as we can.

6           THE COURT:  And one other thing, Ms. Christopherson, I

7   think we don't have your appearance on the 16-10444 docket.  So

8   if you do wish to appear in these cases, you'll need to file

9   your appearance there.

10          MR. STERN:  Your Honor?

11          THE COURT:  Yes.

12          MR. STERN:  Your Honor, I apologize.  I just want to

13  say one more thing.  I think that there are a number of lawyers

14  that are working together on a number of these cases and they

15  don't always appear, though many of them do, at these remote

16  hearings and previously in-person hearings.

17          During the last deposition of Dr. Specht,

18  inadvertently -- and I don't think with any bad intentions --

19  someone from the class team did at one point appear in the

20  deposition of Dr. Specht.  At which time they were notified,

21  you know, the Court entered an order and you know, you just

22  can't be in the deposition.  And there was no harm.  No foul.

23  Nothing bad happened.  It's nobody's fault.  I would just ask

24  that counsel, you know, when these hearings take place and

25  issues like this arise that folks within the teams are notified

1   just to avoid issues like that in the future.

2          THE COURT:  Okay.  All right.

3          Yup.  We have co-liaison counsel and we have co-lead

4   counsel whose responsibility it is to communicate what orders

5   are coming out.

6          Okay.  Well, thank you all very much.  And take care,

7   everyone.

8      (At 2:39 p.m., matter concluded.)

9                              -   -   -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              C  E  R  T  I  F  I  C  A  T  E

 2

 3          I, Darlene K. May, Official Court Reporter for the

 4   United States District Court, Eastern District of Michigan, do

 5   hereby certify that the foregoing is a true and correct

 6   transcript, to the best of my ability, from the record of

 7   proceedings in the above-entitled matter.  I further certify

 8   that the transcript fees and format comply with those

 9   prescribed by the Court and the Judicial Conference of the

10   United States.

11

12   November 10, 2020        /s/ Darlene K. May
     Date                     Darlene K. May, CSR, RPR, CRR, RMR
13                            Federal Official Court Reporter
                              Michigan License No. 6479
14

15

16

17

18

19

20

21

22

23

24

25
```