## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| | MAG. MONA K. MAJZOUB |

## PLAINTIFFS' MOTION TO ESTABLISH SETTLEMENT CLAIMS PROCEDURES AND ALLOCATION AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT COMPONENTS

For the reasons stated in the attached Memorandum of support, and supporting declarations and exhibits, Plaintiffs, through their counsel, move[1] the Court to:

- Preliminarily approve the Settlement Agreement set forth in Exhibit A to the Declaration of Theodore J. Leopold in Support of Plaintiffs' Motion ("MSA" or "Settlement Agreement"), under Federal Rule of Civil Procedure 23;

- Preliminarily approve the Settlement Allocation set forth in the Settlement Agreement, and plan of distribution;

- Appoint the firms currently serving as Interim Co-Lead Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee, as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class;

- Conditionally certify the Settlement Class and Subclasses set forth in the Settlement Agreement under Federal Rule of Civil Procedure 23(a) and (b)(3);

---

[1] Pursuant to Local Rule 7.1, Class Plaintiffs sought consent in this motion from Defendants. Settling Defendants do not object to the relief in this motion.

- Appoint Settlement Subclass Representatives as representatives of the Settlement Class as follows:

    o Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael Snyder, as personal representative of the Estate of John Snyder, as representatives of the Adult Exposure Subclass;
    o Elnora Carthan and David Munoz as representatives of the Property Damage Subclass;
    o 635 South Saginaw LLC; Frances Gilcreast; and Neil Helmkay as representatives of the Business Economic Loss Subclass.

- Authorize dissemination of the Settlement Class Notice to the Settlement Class, including the proposed form of, method of, and schedule for dissemination of the Settlement Class Notice;

- Appoint Epiq Class Action & Claims Solutions, Inc. as the Notice Administrator;

- Appoint ARCHER Systems, LLC as the Claims Administrator and QSF Administrator;

- Appoint Deborah Greenspan as the Special Master;

- Appoint ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator;

- Appoint Forge Consulting, LLC as the Settlement Planning Administrator;

- Approve the proposed Registration Form, MSA Exhibit 5, and Claim Form, MSA Exhibit 2;

- Approve and establish the processes and procedures for handling claims by Minors and Legally Incapacitated or Incompetent Individuals (LIIs) as set forth in Article XXI–Minors and LIIs of the Settlement Agreement;

- Establish a stay of all proceedings against Settling Defendants except those proceedings provided for or required by the Settlement Agreement;

- Authorize payment from the Settlement Fund of certain expenses of settlement administration described in Paragraph 10.2 of the Settlement Agreement; and

- Enter the Proposed Order submitted to the Court, including deadlines set forth for: (a) objecting to the Settlement or requesting exclusion from the Settlement Class; (b) fairness hearing; (c) filing a motion for final approval of the Settlement; and (d) petitioning the Court for attorneys' fees, expenses and plaintiff incentive awards.

Dated: November 17, 2020

Respectfully submitted,

/s/ Corey M. Stern
Corey M. Stern
**LEVY KONIGSBERG, LLP**
800 Third Avenue,
11th Floor
New York, NY 10022
(212) 605-6298 Telephone
cstern@levylaw.com

/s/ Hunter Shkolnik
Hunter Shkolnik
**NAPOLI SHKOLNIK PLLC**
270 Munoz Rivera Avenue,
Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088 Telephone
hunter@napolilaw.com

Joseph M. Sellers
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner

/s/ Theodore J. Leopold
Theodore J. Leopold
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

/s/ Michael L. Pitt
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER BONANNI & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Alison S. Deich
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
jsellers@cohenmilstein.com
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150
Detroit, MI 48226
(313) 800-4170 Telephone
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA
A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**

(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI  48034
(248) 354-0224 Telephone

1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.
LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &
ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue

david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI  48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
jeblake@mcalpinelawfirm.com

Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| | MAG. MONA K. MAJZOUB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ESTABLISH SETTLEMENT CLAIMS PROCEDURES AND ALLOCATION AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT COMPONENTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

CONCISE STATEMENT OF THE ISSUES PRESENTED ................................... x

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ xi

I.      INTRODUCTION ......................................................................... 1

II.     BACKGROUND ............................................................................ 4

        A.      Procedural History .......................................................... 4

        B.      Settlement Negotiations ................................................... 5

        C.      The Proposed Settlement .................................................. 7

                1.      Settlement Eligibility ............................................ 9

                2.      Process for Claims Submission ............................ 11

                3.      Allocation ........................................................... 12

                4.      Protections for Minors, LIIs, and Future Minor Claimants ...... 13

                5.      Programmatic Relief ........................................... 14

III.    ARGUMENT ............................................................................. 14

        A.      The Court Should Preliminarily Approve the Plan of Allocation
                and the Claim Form ........................................................ 14

        B.      The Court Should Approve the Process for Handling Minor and
                LII Claims .................................................................... 20

C.   The Court Should Grant Preliminary Approval of the Proposed Class Settlement ..................................................................22

    1.   The Class Representatives and Interim Class Counsel Have Adequately Represented the Class and the Proposed Settlement Was Negotiated at Arm's-Length...........24

    2.   The Relief Provided to the Class Is More than Adequate ........28

    3.   The Costs, Risks, and Delay of Trial and Appeal....................28

    4.   The Settlement Treats Class Members Equitably Amongst Each Other and Other Settlement Participants..........34

    5.   The Settlement is Consistent with the Public Interest ..............36

D.   Provisional Certification of the Proposed Settlement Class and Subclasses is Warranted ........................................................36

    1.   The Proposed Settlement Class and Subclasses Satisfy Rule 23(a)...............................................................................38

    2.   Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes .............................................47

E.   The Court Should Approve the Notice Plan and Authorize Class Counsel to Disseminate Notice .........................................................53

1.    The Proposed Notice and Dissemination Plan Fully

Describes the Class Settlement and Is Designed to Reach

as Many Potential Participants as Possible ..............................54

IV.    CONCLUSION...............................................................................57

**CERTIFICATE OF SERVICE** ...........................................................61

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ..............................................................41

*In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*,
  No. 2:12-cv-00101-MOB-MKM, 2017 WL 469734 (E.D. Mich.
  Jan. 4, 2017) ......................................................................................37

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2016 WL 9280050 (E.D. Mich. Nov. 28, 2016).................23

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d. 336 (E.D. Pa. 2007)..................................................28

*Barry v. Corrigan*,
  79 F. Supp. 3d 712 (E.D. Mich. 2015), *aff'd*, *Barry v. Lyon*, 834 F.
  3d 706 (6th Cir. 2016)...................................................................38, 41

*Brotherton v. Cleveland*,
  141 F. Supp. 2d 894 (S.D. Ohio 2001) ................................................32

*Busch v. Guertin*,
  140 S. Ct. 933 (2020)...........................................................................49

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003), *appeal dismissed*, 391 F.3d 812
  (6th Cir. 2004)..................................................................30, 36, 37, 52

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981)...............................................................................28

*Collins v. Olin Corp.*,
  248 F.R.D. 95 (D. Conn. 2008) ..........................................................40

*Concerned Pastors for Social Action v. Khouri*,
  No. 2:16-cv-10277-DML-SDD (E.D. Mich.)....................................14

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ..............................................................46

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
    No. 3:08–MD–01998, 2010 WL 3341200 (W.D. Ky. Aug. 23,
    2010))) ........................................................................................................27

*Date v. Sony Elecs., Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013)...................31, 41

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) .....................................................................31

*Dick v. Sprint Commc'ns Co.*,
    297 F.R.D. 283 (W.D. Ky. 2014) .......................................................................27

*In re Flint Water Cases*,
    Nos. 5:17-cv-10342-JEL-EAS, 17-10164, 17-cv-10342, 2019 WL
    3530874 (E.D. Mich. Aug. 2, 2019), *aff'd in part and remanded in
    part on other grounds*, 969 F.3d 298 (6th Cir. 2020) .........................................50

*Ford v. Fed.-Mogul Corp.*,
    No. 2:09-CV-14448, 2015 WL 110340 (E.D. Mich. Jan. 7, 2015)..............29, 31

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    333 F.R.D. 614 (E.D. Mich. 2020) ...................................................24, 27, 29, 30

*Garner Props. & Mgmt., LLC v. City of Inkster*,
    No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ...................36

*Granada Invs. Inc. v. DWG Corp.*,
    962 F. 2d 1203 (6th Cir. 1992) ..........................................................................36

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....23, 36, 41

*Guertin v. Michigan*,
    912 F.3d 907 (6th Cir. 2019), *reh'g en banc denied*, 924 F.3d 309
    (6th Cir.), *and cert. denied sub nom. City of Flint v. Guertin*, 140
    S. Ct. 933 (2020) and *Busch v. Guertin*, 140 S. Ct. 933 (2020) ........................49

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) .............................................................................35

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007).............................................................26

*Hoving v. Lawyers Title Ins. Co.*,
    256 F.R.D. 555 (E.D. Mich. 2009) ....................................................47

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
    204 F.R.D. 330 (N.D. Ohio 2001) ....................................................26

*IUE-CWA v. Gen. Motors Corp.*,
    238 F.R.D. 583 (E.D. Mich. 2006) ....................................................28

*Kis v. Covelli Enters., Inc.*,
    Nos. 4:18-cv-54, 4:18-cv-434, 2020 WL 2812405 (N.D. Ohio May
    29, 2020) ...........................................................................................34

*Mitcham v. Intrepid U.S.A., Inc.*,
    No. 3:17-CV-703-CHB, 2019 WL 2269918 (W.D. Ky. May 28,
    2019) .................................................................................................46

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)...........................................................................54

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014)........................................................35

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*,
    910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd*, 739 F.3d 790 (5th Cir.
    2014) ...............................................................................15, 16, 35, 52

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*,
    No. 2:10-md-02179-CJB-DPB (E.D. La. May 2, 2012) ..............15, 16

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ....................................................30

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) .................22

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............31, 36

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir.
    1997) .................................................................................................16

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016), *appeal dismissed*, 2016
    WL 6599570 (6th Cir. 2016) ..............................................................................35

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015),
    *appeal dismissed*, Nos. 15-3481, 15-3680 (6th Cir. Dec. 4, 2015) ...................23

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) .............................................................................41

*Rankin v. Rots*,
    No. 02-CV-71045, 2006 WL 1876538 (E.D. Mich. June 27, 2008)..................31

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011)..................................................................16

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008) .............................................................................47

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-CV-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ...................28

*Senter v. Gen. Motors Corp.*,
    532 F.2d 511 (6th Cir. 1976) .............................................................................45

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) .....28, 31, 45

*Smith v. Gen. Motors Corp.*,
    Civil Action No. 5-71348, 1977 WL 831 (E.D. Mich. Mar. 3,
    1977) .................................................................................................................39

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) .............................................................................39

*Sterling v. Velsicol Chemical Corp.*
    855 F.2d 1188, 1196-97 (6th Cir. 1988)............................................................48

*The Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*,
    No. 10-cv-14360-DPH-MKM (E.D. Mich.).......................................................34

*UAW v. Ford Motor Co.*,
    Nos. 05-74730, 06-10331, 2006 WL 1984363 (E.D. Mich. July 13,
    2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007) ...........................................29, 37, 41

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ...............................................................23, 53, 54

*United States v. Sanders*,
    452 F. 3d 572 (6th Cir. 2006) ......................................................................49

*Vargas v. City of Philadelphia*,
    783 F.3d 962 (3d Cir. 2015) ........................................................................49

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) ..................................................................26, 46

*Wal-Mart Stores v. Dukes*,
    564 U.S. 338 (2011)......................................................................................51

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ..............................................................37, 38, 51

*In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
    No. 1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23,
    2016) ..........................................................................................................34

*Widdis v. Marathon Petroleum Co.*,
    No. 13-cv-12925, 2014 WL 11444248 (E.D. Mich. Nov. 18, 2014)
    (Levy, J.) ...............................................................................................*passim*

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .................................................................30, 31

## STATUTES AND RULES

Mich. Comp. Laws § 700.3924................................................................................3

Fed. R. Civ. P. 23 .................................................................................*passim*

Mich. Ct. R. 2.420.................................................................................20

## OTHER AUTHORITIES

*QuickFacts*, United States Census Bureau (Apr. 1, 2010) ......................................38

4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2020) ................................................................................................22

4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2020) ................................................................................................30

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.  Should the Court preliminarily approve the plan of allocation?

2.  Should the Court approve the procedures for handling claims of Minors and Legally Incapacitated and Incompetent Individuals ("LIIs")?

3.  Should the Court preliminarily approve the class portions of the Settlement Agreement under Federal Rule of Civil Procedure 23?

4.  Should the Court conditionally certify the Settlement Class and Subclasses under Federal Rule Civil Procedure 23(a) and (b)(3)?

5.  Should the Court appoint the firms currently serving as Interim Co-Lead Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni and Rivers, PC, and the Executive Committee, as Class Counsel under Federal Rule Civil Procedure 23(g) to represent the Settlement Class?

6.  Should the Court appoint Settlement Subclass Representatives?

7.  Should the Court approve the Class Notice, Notice plan, Registration Form, and Claim Form?

8.  Should the Court appoint Epiq Class Action & Claims Solutions, Inc. as the Notice Administrator; ARCHER Systems, LLC as the Claims Administrator and QSF Administrator; Deborah Greenspan as the Special Master; ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator; Forge Consulting, LLC as the Settlement Planning Administrator?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Michigan Court Rules 2.420

- Federal Rule of Civil Procedure 23

- *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010).

- *Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007)

- *Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008)

- *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, 910 F. Supp. 2d at 957 [full cite]

- *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

# I.   INTRODUCTION

The events that have come to be known as the Flint Water Crisis first came to light more than six years ago. In the intervening years, many lawsuits have been filed – on behalf of Individual Plaintiffs as well as proposed classes – seeking justice for the victims of the crisis. After years of hard-fought litigation and extensive negotiations, Plaintiffs have reached an agreement to resolve claims against the State of Michigan and other Settling Defendants[1] that would result in a Court-monitored Qualified Settlement Fund[2] of more than $640 million.

---

[1] The State of Michigan, Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy), Michigan Department of Health and Human Services, Michigan Department of Treasury, former Governor Richard D. Snyder, Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Liane Shekter Smith, Daniel Wyant, Stephen Busch, Kevin Clinton, Patrick Cook, Linda Dykema, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Dennis Muchmore, Nancy Peeler, Robert Scott, Adam Rosenthal, Andy Dillon ("State Defendants"); the City of Flint, Darnell Earley, Howard Croft, Michael Glasgow, Gerald Ambrose, Edward Kurtz, Michael Brown, Dayne Walling, Daugherty Johnson ("City Defendants"); McLaren Health Care Corporation, McLaren Regional Medical Center, McLaren Flint Hospital, ("McLaren Defendants"); and Rowe Professional Services Company (collectively the "Settling Defendants").

[2] All capitalized terms defined in the Settlement Agreement (referred to as the "Master Settlement Agreement", "Settlement Agreement", "MSA", "Settlement" or "Agreement" throughout), attached as Exhibit A to Theodore J. Leopold's Declaration, have the same definitions set forth in that Agreement. Unless otherwise noted, all exhibits referenced herein are exhibits to the Declaration of Theodore J. Leopold in support of this foregoing motion and memorandum.

The proposed Settlement establishes a hybrid structure in which, (1) children, through their appropriate representatives, may directly register to participate in the Settlement, (2) certain Adults who retained counsel may proceed individually, and (3) Settlement Subclasses, defined in the Settlement Agreement and herein, will allow Adults, property owners, and businesses in Flint to submit claims for relief. Critically, the Parties to the Settlement through their counsel – including Co-Liaison Counsel, Interim Co-Lead Class Counsel, and Interim Subclass Settlement Counsel (collectively "Plaintiffs' Settlement Counsel") – have ensured that the Settlement treats similarly situated Claimants[3] the same for purposes of determining individual Monetary Awards.

Among other provisions set forth more fully below, the Master Settlement Agreement also provides a process for the settlement of claims of Minors and Legally Incapacitated or Incompetent Individuals ("LII"). Plaintiffs' Settlement Counsel have worked diligently to ensure that procedures exist to allow for effective judicial review. Accordingly, this motion seeks:

> (1) approval of the proposed process for handling Minor and LII claims;

---

[3] Because the Settlement provides for Class and individual recovery, persons making claims from the Settlement are referred to herein as "Claimants."

(3) preliminary approval of those portions of the Settlement that resolve claims on a class-wide basis pursuant to Federal Rule of Civil Procedure 23(e);[4]

(4) certification of a Settlement Class and Subclasses to correspond with those portions of the Settlement that involve class-wide relief;

(5) approval of the proposed Notice plan for Settlement Class Members;

(6) preliminary approval of the plan of allocation, and Registration and Claim Forms; and

(7) appointment of, among others, ARCHER Systems, LLC as Claims Administrator; Epiq Class Action & Claims Solutions, Inc. ("Epiq") as Notice Administrator; ARCHER Systems, LLC and MASSIVE as Lien Administrators, Deborah Greenspan as the Special Master, and Forge Consulting, LLC as the Settlement Planning Administrator.[5]

Certain aspects of this motion are exclusively relevant to Individual Plaintiffs participating in the settlement while other aspects of this motion apply solely to

---

[4] The Settlement Agreement provides that individuals with representation, listed in Exhibit 1 to the Settlement Agreement will register to participate in the Settlement directly. Such individuals and entities are not part of the proposed Settlement Class or Subclasses ("Settlement Class" or "Settlement Subclasses"). All other Adults may participate via the Class Settlement. This process is described more fully herein.

[5] In accordance with Mich. Comp. Laws § 700.3924, the Settlement Agreement contemplates that a motion be filed setting forth orderly procedures for the review and approval the settlement of any wrongful death claim including the settlement award determined by the Claims Administrator. Plaintiffs anticipate filing a motion within seven days that attaches a proposed uniform motion for the resolution of wrongful death claims. Once the Court has reviewed and approved the proposed uniform procedures, the Settlement Website would be updated to reflect how these claims would be handled.

members of the proposed Settlement Class. Plaintiffs' Settlement Counsel have combined these requests in a single motion because all the requests stem from the same Settlement Agreement – an agreement that Plaintiffs' Settlement Counsel collectively believe provides much-needed monetary and programmatic relief to members of the Flint community. Accordingly, Plaintiffs' Settlement Counsel ask that the Court grant the requested relief.

## II.      BACKGROUND

### A. Procedural History

The Flint Water Cases currently pending in this Court include hundreds of individual actions and a proposed Class Action against: certain government entities including the State of Michigan and the City of Flint; individuals who worked for the State and City; and private engineering firms LAN,[6] Veolia,[7] and Rowe Professional Services Company for their alleged role in causing and prolonging the distribution of hazardous water to Flint residents. Related litigation also names the McLaren Defendants, the City Defendants, LAN, Rowe Professional Services Company, Veolia, the United States of America, and the United States

---

[6] As used herein, LAN includes the following entities: Lockwood, Andrews & Newnam, P.C.; Lockwood, Andrews & Newnam, Inc.; Leo A. Daly Company.

[7] As used herein, Veolia includes the following entities: Veolia North America, LLC; Veolia North America, Inc.; Veolia Water North America Operating Services, LLC.

Environmental Protection Agency for their alleged role in causing certain injuries. In addition to the actions proceeding in this Court, notices of intent and related actions have also been filed in the Genesee County Circuit Court and Michigan Court of Claims.[8]

Since the first lawsuits were filed in 2015, the cases have been vigorously prosecuted, resulting in multiple appeals to the Sixth Circuit and State appellate courts with mixed results that have allowed portions of the cases to move forward but affirming the dismissal of other claims. Additionally, discovery – which is ongoing – has been substantial including millions of pages of document production and review, the exchange of substantive written interrogatories, more than eighty depositions, and extensive expert analysis. Expert discovery is expected to continue for many months. The first bellwether trials of individual cases are scheduled to commence in or around June 2021 and Interim Co-Lead Class Counsel moved for class certification on June 30, 2020; that briefing is ongoing. Resolution of the motion for class certification, trial of the Individual Plaintiffs and any potential class claims, and related appeals could require many years to fully resolve.

**B. Settlement Negotiations**

In January 2018, the Court appointed two Mediators – former Wayne County Circuit Court Judge Pamela Harwood and former U.S. Senator Carl Levin – to

---

[8] Some of these cases remain pending in appellate courts.

facilitate settlement discussions among the parties. In July 2018, the Court appointed Special Master Deborah Greenspan to assist with certain pre-trial matters, ECF Nos. 524; 544, and she has managed certain structural aspects of the settlement process.

Following the appointment of the Mediators in January 2018, the Parties to this Agreement participated in extensive, arm's-length negotiations involving dozens of in-person meetings as well as multiple one-on-one sessions with the Mediators and/or Special Master.[9] As settlement discussions progressed, the Court appointed Interim Subclass Settlement Counsel ("SSC"), at Interim Class Counsel's request, to represent six subclasses of plaintiffs in allocation discussions. Order Granting Class Pls.' Renewed Mot., Aug. 26, 2019, ECF No. 929. Nearly a year later, in August 2020, Interim Class Counsel ("Class Counsel"), Co-Liaison Counsel, and State Defendants announced an agreement in principle to settle the claims against State Defendants for $600 million. In October 2020, the City Defendants agreed to settle the claims against them for $20 million; the McLaren Defendants agreed to settle claims against them for $20 million;[10] and Rowe Professional Services Company agreed to settle claims against it for $1.25 million. Plaintiffs now seek approval of the Settlement.

---

[9] This round of intense resolution talks was preceded by a prior attempt at mediation which did not result in a settlement.

[10] Only individual cases were brought against the McLaren Defendants.

## C. The Proposed Settlement

The Settlement – the result of over four years of litigation and over two years of Court supervised negotiations – creates a Court-monitored Qualified Settlement Fund of $**641.25** million that will provide direct payments to Flint residents. Ex. A, ("MSA") ¶¶ 2.1; 5.1-.2.

The Settlement seeks to provide relief to the Flint community for injuries stemming from exposure to hazardous water during the relevant time frame. A sizeable portion of the fund – 79.5% – will be allocated to those who were Minors at the time of the crisis and more susceptible to the hazards of lead exposure and related injury.[11] MSA ¶ 5.2. To be eligible for compensation, Minors must register and submit a claim. The registration and claims process is described more fully herein. The Settlement does not deprive non-settling minors of the opportunity to continue to pursue claims. Thus, minors who do not register or submit a claim during the claims period are not parties to the settlement and do not release or relinquish potential claims against any of the Settling Defendants. Under the terms of the Settlement Agreement, Minors who do not participate in Settlement at this time maintain their ability to participate until they reach the age of nineteen. *Id.* Art. VI.

---

[11] 64.5% of the fund will be allocated to those who were six years old and younger at the time of the crisis. MSA ¶ 5.2.1.

The Settlement also provides for resolution of claims by Flint Adults, property owners, lessees and persons legally responsible for the payment of water bills,[12] and businesses, who will be eligible to make claims from the compensation fund for personal injuries, and property and business damages. *Id.* ¶ 3.5. Those persons, who were represented by lawyers during the pendency of settlement negotiations – all of whom are listed in Exhibit 1[13] to the Settlement Agreement – may directly register and submit claims to participate in the Settlement, while all others will be considered members of the Settlement Class and Subclasses defined below. Settlement Class Members will have the opportunity to register and submit claims, and the proposed Notice program, discussed herein, will provide Settlement Class Members with information about how to go about submitting a claim as well as other procedural rights they have pertaining to the settlement.

Finally, the Settlement also takes into account community needs, providing a dedicated fund for special education programming for students who suffer long-term

---

[12] For simplicity, property owners, lessees and persons responsible for the payment of water bills are sometimes referred to collectively as "property owners."

[13] Exhibit 1 to the Settlement Agreement contains two parts sometimes referred to separately as Exhibit 1a and Exhibit 1b. All references herein to "Exhibit 1" are to Exhibit 1 in its entirety – including parts 1a and 1b. Plaintiffs have moved to file Exhibit 1b (as well as Exhibit 13b) under seal for the reasons set forth in the motion to seal and accompanying memorandum filed November 17, 2020.

health and behavioral impacts from lead exposure. *See* MSA ¶ 7.1. These provisions and others are described more fully below and in the attached exhibits.

### 1.  Settlement Eligibility

The Settlement Program establishes an administrative compensation system that defines the types of claims that are eligible for payment and the documentation required to support those claims. The following persons or entities will be eligible to participate in the Settlement if, from April 25, 2014 until November 16, 2020, the Execution Date of the Agreement, they:

> (1) owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water; (2) owned or operated a business that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water; (3) ingested or came into contact with water received from the Flint Water Treatment Plant for at least twenty-one (21) days during any thirty (30) day period during the Exposure Period; or (4) during the time period April 25, 2014 through December 31, 2018 were both exposed to water received from the Flint Water Treatment Plant and diagnosed with Legionnaires' Disease.

*Id.* at ¶ 3.5; *see also id.* ¶ 1.21 (defining Exposure Period).

**Eligible Minors:** Eligible Minors may participate in the Settlement by registering and submitting a Claim Form. *Id.* ¶ 3.19. This is the exclusive avenue through which Minors can participate. Minors who do not submit claims do not release potential rights/claims against any of the Settling Defendants. The Settlement includes special protections for such Claimants. *Id.* Art. XXI and *infra* Section III.B.

**Eligible Adults, Property Owners, and Businesses:** Eligible Adults, property owners, and businesses who retained counsel and are identified on Exhibit 1 to the Settlement Agreement, may participate in the Settlement by registering and submitting a Claim Form.[14] All other eligible Adults, property owners, and businesses may participate in the Settlement via the proposed Settlement Class.

The Settlement Agreement sets forth a proposed Settlement Class, defined as those who, during the Exposure Period:

> (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant.
>
> Excluded from the Settlement Class are: (1) Defendants; (2) the judicial officers to whom this case is assigned in the Federal Court, Genesee County Circuit Court, and Court of Claims, their staff, and the members of their immediate families; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt-out of the Settlement Class.

MSA ¶ 1.72.

The Settlement Class contains three Settlement Subclasses, defined as:

---

[14] Exhibit B to the Declaration of Theodore J. Leopold includes all the exhibits to the Settlement Agreement, except Exhibits 1b and 13b, which contain confidential information and are filed separately ("Ex. B., MSA Ex. _").

- **Adult Exposure Subclass:** all persons who were Adults during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting personal injury.[15] MSA ¶ 1.4.

- **Business Economic Loss Subclass:** all individuals or entities who owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss.[16] MSA ¶ 1.7

- **Property Damage Subclass:** all Adults or entities who owned or were the lessee of residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period.[17] MSA ¶ 1.57.

### 2. Process for Claims Submission

Claimants[18] can participate in the Settlement by signing and returning a Registration Form, and later a Claim Form. *Id.* ¶ 3.9. *Id.* ¶¶ 3.19; 3.29. These forms

---

[15] Individuals who have retained counsel and are listed in Exhibit 1 to the Agreement are excluded from this definition. Ex. B, MSA Ex. 1a; Ex. C, MSA Ex. 1b.

[16] Excluded from the Business Economic Loss Subclass are all local, state, or federal government offices or entities and any individual or entity listed on Exhibit 1 to the Agreement. Ex. B, MSA Ex. 1a; Ex. C, MSA Ex. 1b.

[17] Excluded from the Business Economic Loss Subclass are all local, state, or federal government offices or entities and any individual or entity listed on Exhibit 1 to the Agreement. Ex. B, MSA Ex. 1a; Ex. C, MSA Ex. 1b.

[18] Because the Settlement provides for Class and individual recovery, persons making claims from the Settlement are referred to herein as "Claimants."

11

will help streamline the process and ensure consistency across Claimants. *Id.* ¶ 3.23.

The Claims Administrator will then review the materials submitted and issue either

a "Favorable Notice" or "Adverse Notice" informing the Claimant whether they are

qualified to participate in the Settlement. *Id.* ¶ 3.31. Claimants receiving an Adverse

Notice will have an opportunity to seek reconsideration of or appeal the decision. *Id.*

¶ 3.35.

### 3. Allocation

After deducting attorneys' fees and costs from the total Settlement Fund,[19] the

net funds will be apportioned as follows:

- Minor Child Sub-Qualified Settlement Fund – 64.5%

- Minor Adolescent Sub-Qualified Settlement Fund – 10%

- Minor Teen Sub-Qualified Settlement Fund – 5%

- Future Minor Sub-Qualified Settlement Fund – $35,000,000 to be taken on a prorated basis from the total amount allocated to the Minor Child, Minor Adolescent, and Minor Teen Qualified Settlement Funds;

- Adults and Property Damage Sub-Qualified Settlement Fund – 18% (15% for Adult Claimants and 3% for Property Damage Claimants);

- Business Economic Loss Sub-Qualified Settlement Fund – 0.5%

- Programmatic Relief Sub-Qualified Settlement Fund – 2%

---

[19] How and when attorney fees and costs for Claimants that qualify for Settlement Category 27B are assessed could be handled differently depending on whether or not the McLaren Defendants exercise their right to walk-away or rescind the Settlement Agreement. *Id.* at ¶ 5.4.

*Id.* ¶ 5.2. Individual awards will be determined based on categories of injury, which take into account the extent of the injuries for categories of Claimants, and in some cases the proof of injury that a Claimant is able to provide. Ex. B, MSA Ex. 8, Flint Water Cases Qualified Settlement Fund Categories, Monetary Awards, and Required Proofs Grid ("Settlement Categories Grid").

### 4. Protections for Minors, LIIs, and Future Minor Claimants

The Agreement also provides specific procedures and protections for Claimants who are Minors or LIIs. *See generally* MSA Art. XXI. Under the Agreement, certain persons will be permitted to act as Next Friends on behalf of each Minor and LII, consistent with Michigan Law. *See id.* ¶ 21.3.

The Agreement requires potential Next Friends to submit information to the Claims Administrator as part of the registration process to demonstrate that they qualify to act as a Next Friend. *Id.* ¶ 21.3. In addition, Plaintiffs' and Settling Defendants' Counsel will move for appointment of a Master Guardian Ad Litem ("Master GAL") and two additional Guardians Ad Litem ("Panel GALs") to oversee claims by Minors and LIIs. *Id.* ¶ 21.4. The Settlement Agreement further provides a fund for Future Minor Claimants, those who were minors at the time of exposure to Flint water, but that failed to register or did not receive a Favorable Notice. *Id.* ¶ 1.29; *see also generally id.* Art. VI.

### 5.  Programmatic Relief

In addition to monetary damages, the Settlement Agreement provides programmatic relief for the Flint community. Per the Settlement Agreement, a Programmatic Relief Sub-Qualified Settlement Fund will be set up, to "enable the local school districts and public school academies within the Genesee Intermediate School District to provide special education services for students who resided in the City of Flint during the Exposure Period and require such services." *Id.* ¶ 7.1.[20]

## III.   ARGUMENT

### A. The Court Should Preliminarily Approve the Plan of Allocation and the Claim Form

The allocation process and the allocation categories set forth in the proposed Allocation Plan and incorporated into the Master Settlement Agreement constitutes a fair and appropriate method for providing compensation to Claimants under this Settlement.

Over a period of months the negotiating lawyers, including Interim Co-Lead Counsel for the Class, Settlement Sub-class Counsel (SSC), Co-Liaison Counsel, and the highly skilled and experienced lawyers representing the State of Michigan, both from the Attorney General's Office and outside counsel, and under the watchful

---

[20] In a separate settlement in *Concerned Pastors for Social Action v. Khouri*, No. 2:16-cv-10277-DML-SDD, in March 2017, the State also provided programmatic and other relief.

eye, and the working hand of the Special Master, negotiated at arm's-length the overall process on how the allocation process should be implemented. SSC were appointed on August 26, 2019, and handled negotiations for their respective settlement subclasses. Order, ECF No. 929. At each stage of the process the Special Master was called upon to both consult, and or, approve, the various recommendations for the general nature of the allocation grid suggested by the negotiating counsel.

The Settlement Agreement provides a system through which, once eligibility is determined, Claimants will receive monetary payments based on the extent of their injuries, with categories of Claimants being treated equitably. Monetary payments will be made based on the Settlement Categories set forth in the Settlement Categories Grid. These categories compensate groups of people based on the extent of their injuries and in some cases the proof they are able to provide of their injuries.

As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. For example, in *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, the court granted preliminary approval of settlements which compensated for personal and bodily injury claims of certain individuals related to their exposure to oil and/or chemical dispersant where the level of compensation was determined by a "Specified Physical Conditions Matrix." Preliminary Approval Order, No. 2:10-md-02179-CJB-DPB

(E.D. La. May 2, 2012), ECF No. 6418; Preliminary Approval Order at 6, No. 2:10-md-02179-CJB-DPB (E.D. La. May 2, 2012), ECF No. 6419; *see also, e.g.*, *In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, 910 F. Supp. 2d 891, 957 (E.D. La. 2012) ("[T]here is nothing improper in the parties' negotiation of claims frameworks that compensate class members in light of the strength of their claims."), *aff'd*, 739 F.3d 790 (5th Cir. 2014).[21]

This carefully crafted plan of allocation reflects (1) Class and Co-Liaison Counsel's, the SSC's, and the Special Master's reasonable judgment about the relative value of the different claims being settled, (2) a desire for an efficient and fair claims process, and (3) the arm's-length negotiations between the Parties. As such, the plan is within the range of possible approval as being fair, reasonable and adequate, and in the best interests of all eligible participants and should be granted preliminary approval.[22]

Court-appointed SSC familiarized themselves with the facts of the case and

---

[21] *See also, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011) ("[W]hen real and cognizable differences exist between the likelihood of ultimate success for different plaintiffs, it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprise the set that was more likely to succeed." (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997))).

[22] If there were no class component of the Settlement Agreement, approval of allocation would not be required at this stage.

strengths of the litigation, and vigorously advocated on behalf of their respective settlement subclasses.[23] SSC reviewed and provided input on the Flint Water Cases Qualified Settlement Fund Categories, Monetary Awards, and Required Proofs Grid that will be used to determine the amounts of any given monetary award under the Settlement Agreement, and determined that the Settlement Agreement is fair and in the best interests of the respective settlement subclasses they each represented,[24] and "will provide much-needed relief far sooner than would be the case if this matter were litigated through trial."[25]

For certain categories of injury, the final Settlement Subclasses do not separately reflect each negotiation subclass. However, SSC for subclasses not separately reflected in the final Settlement Agreement participated in negotiation of the Agreement, and have determined that the outcome is in the best interests of the subclass they represented for purposes of negotiation. For example, although minors will not participate in the Settlement via a class structure, Larry Coben, SSC who

---

[23] *See generally* Ex. G, Declaration of Seth R. Lesser ("Lesser Decl.") ¶¶ 2-3; Ex. H, Declaration of Sarah London ("London Decl.") ¶¶ 2-4; Ex. F, Declaration of Reed Colfax ("Colfax Decl.") ¶¶ 2-5; Ex. E, Declaration of Larry E. Coben ("Coben Decl.) ¶¶ 2-3, 5; Ex. I, Declaration of Dennis C. Reich ("Reich Decl.") ¶¶ 2-4; Ex. J, Declaration of Vincent Ward ("Ward Decl.") ¶¶ 2-4.

[24] Lesser Decl. ¶¶ 4-7; Colfax Decl. ¶¶ 6-9; Coben Decl. ¶¶ 6-8; Reich Decl. ¶¶ 5-8; Ward Decl. ¶ 7.

[25] London Decl. ¶ 7-8; *see also* Ward Decl. ¶ 7.

represented a proposed minor children's injury subclass, and Reed Colfax, SSC who represented an older Children's injury subclass, nonetheless believe that the Agreement is fair and in the best interests of children.[26] Seth Lesser, SSC for a negotiation subclass of individuals with future manifesting injuries, concluded that the Settlement Agreement is "in the best interest of future claimants, including most materially minors, participating in the settlement because it avoids the costs and inherent risks associated with continued litigation, as well as the further delays that would be caused by any appeal."[27]

Plaintiffs propose that to implement the allocation, the Claims Administrator will distribute the net funds[28] of the Qualified Settlement Fund to Eligible Claimants – including direct Claimants and Settlement Class Members – who submit timely and valid Registration and Claim Forms. The Claims Administrator will disseminate a Registration Form and later a Claim Form, substantially in the form attached to the Settlement Agreement as Exhibits 2 and 5, to Eligible Claimants. These forms, as well as other pertinent information about the Settlement, will be available on the

---

[26] Coben Decl. ¶¶ 7-8; Colfax Decl. ¶¶ 9-10.

[27] Lesser Decl. ¶ 8.

[28] The net funds "equal the amount of the FWC Qualified Settlement Fund less expenses, costs, and attorney fees permitted by the Settlement Agreement or the Final Orders and Judgments." MSA ¶ 5.1.

Settlement website and upon request.[29] *See* MSA ¶¶ 3.1-.2. The Class Notices will advise Class Members of how they can obtain the Registration and Claim Forms and the deadline for submitting a completed form. Ex. K, Attachment 2 ("Notice") to Decl. Cameron R. Azari, Esq. on Settlement Notice Plan ("Azari Decl.") at 8, 11. Completed Registration and Claims Forms may be mailed to the Settlement Administrator or submitted online, via the settlement website.

The Settlement provides a process for the Claims Administrator to review Registration Forms and determine eligibility to participate in the Settlement, as well as a reconsideration and appeals process for adverse rulings on this issue. MSA Art. III.B. It also sets forth a special process to protect Minor and LII Claimants, through which any potential Next Friend of such Claimant must provide proof that they are able to serve in that capacity. *Id.* ¶ 21.11

Plaintiffs also request that the Court approve the Claim Form attached to the Settlement Agreement as Exhibit 2. It is designed to clearly and efficiently elicit the information necessary to implement the Plan of Allocation.

Plaintiffs also request that the Court appoint ARCHER Systems, LLC ("Archer") as the Claims Administrator. Archer is an experienced Claims Administrator that has served this role in numerous complex cases, and "has

---

[29] The website will be established, by Plaintiffs' counsel and the Claims Administrator, following entry of a Preliminary Approval Order. MSA ¶ 3.1.

managed more than $12.5 billion in settlement funds and administered the claims of more than 450,000 individual Claimants in all 50 states and most U.S. Territories."[30]

## B. The Court Should Approve the Process for Handling Minor and LII Claims

The Settlement Agreement provides a detailed and robust set of special procedures and protections for Minors and LIIs, to ensure that any settlement on their behalf is fair and in the best interests of the Minor and LII Claimants. The Court should approve those procedures thereby assuring that Minors' and LIIs' individual allocations and agreements to settle are in their best interests. *See generally* Mich. Ct. R. 2.420 (requiring court approval for settlements involving minors and LIIs). The claims process for Minors and LIIs is similar to the general claims process, and for the same reasons is fair and in the best interests of Minors. *See infra* Section III.D.3.(a). However, the Settlement Agreement also includes special protections for Minor and LII Claimants that protect their rights, and address special considerations relevant to such Claimants, consistent with Michigan's Court Rules.

The Settlement Agreement provides that any person wishing to serve as a Next Friend to a Minor or LII Claimant must first submit a Registration and later a Claim Form and proof to the Claims Administrator demonstrating their eligibility for this role. MSA ¶¶ 21.3, 21.11. As part of the settlement, Plaintiffs will request that the

---

[30] Ex. L, Decl. of Scott H. Freeman on Behalf of Archer Systems, LLC ("Freeman Decl.") ¶¶ 3-4.

appropriate court order that any one of the following will be appointed as Next

Friend for any related Minor or LII, for the sole purposes of registering and pursuing

a claim and recovery under the Settlement Agreement and executing all related

necessary documents: parent (natural or adoptive), grandparent, legal guardian,

existing court-appointed representative, adult sibling (full, half, or step), or adult

aunt or uncle. In addition, Plaintiffs will request that an LII's spouse or adult child

can be appointed as Next Friend for such purposes. Further, to ensure fairness and

to further protect Minors and LIIs, Plaintiffs are seeking appointment of a Master

GAL and two additional Panel GALs to assist with the Claims process for Minors

and LIIs. *Id.* ¶ 21.4.[31]

The procedures set forth in the Settlement Agreement for addressing Minor

and LII claims will protect those Claimants and provide a streamlined and fair

process for handling their claims. Accordingly, Plaintiffs respectfully request that

the Court approve the process for handling Minor and LII claims.

---

[31] The Agreement also provides that the Plaintiffs will file motions seeking for proceedings involving Minors and LIIs to proceed before the Genesee County Circuit Court. MSA Art. XXI.A.

### C. The Court Should Grant Preliminary Approval of the Proposed Class Settlement[32]

The first step in approval of a class action settlement is preliminary approval of the proposed settlement. *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). "[T]he court's primary objective at [the preliminary approval stage] is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2020).

The 2018 amendments to Rule 23 have codified the preliminary approval process. First, "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Notice "is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The 2018 amendments to Rule 23(e) set forth a list of factors for a court to consider before approving a proposed settlement as "fair, reasonable, and adequate." The factors are whether:

---

[32] This Section addresses preliminary approval of the Class portions of the Settlement under Federal Rule of Civil Procedure 23. Section III.B., above, addresses portions of the Settlement affecting Minors and LIIs who are not part of the Settlement Class.

(A) the class representatives and class counsel have adequately
represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to
    the class, including the method of processing class-member claims, if
    required;
    (iii) the terms of any proposed award of attorney's fees, including
    timing of payment; and
    (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Historically, courts in the Sixth Circuit have considered factors comparable to those in Rule 23(e)(2) in determining whether a settlement is approvable.[33] The Advisory Committee Notes to Rule 23 acknowledge these judicially created standards, explaining that the newly enumerated Rule 23(e) factors are "core concerns" in every settlement and were not intended to displace a court's consideration of other relevant factors in a particular case. Fed. R. Civ. P. 23

---

[33] *See In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 WL 9280050, at *5 (E.D. Mich. Nov. 28, 2016) (considering "(1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest"). *Accord UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *3 (E.D. Mich. Dec. 12, 2013); *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), *appeal dismissed*, Nos. 15-3481, 15-3680 (6th Cir. Dec. 4, 2015).

Advisory Committee Note (2018 Amendments). Accordingly, Plaintiffs will address the "fair, reasonable and adequate" factors under Rule 23(e)(2) and the Sixth Circuit's and this Court's prior preliminary approval decisions.

The Court is not required at the preliminary approval stage to determine whether it will grant final approval of the proposed settlement, only that it is likely that it would. *Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). Here, initial consideration of the final approval factors supports preliminary approval of the settlement.

### 1. The Class Representatives and Interim Class Counsel Have Adequately Represented the Class and the Proposed Settlement Was Negotiated at Arm's-Length[34]

The first two factors of Rule 23(e)(2) (adequate representation by the class representative and class counsel and whether the settlement was reached at arm's-length) are procedural and focus on the history and conduct of the litigation and settlement negotiations. Fed. R. Civ. P. 23 Advisory Committee Note. Relevant considerations may include the experience and expertise of plaintiffs' counsel, the information available to counsel negotiating the settlement, the stage of the litigation and amount of discovery taken, the pendency of other litigation concerning the subject matter, the length of the negotiations, whether a mediator or other neutral

---

[34] In addition to Interim Class Counsel and SSC, Co-Liaison Counsel for Individual Plaintiffs, Mediators, and a Special Master were involved in the settlement process, further assuring it was negotiated at arm's-length.

facilitator was used, the manner of negotiation, whether attorneys' fees were negotiated with the defendant and if so how they were negotiated and their amount, and other factors that may demonstrate the fairness of the negotiations. *Id.*

Interim Class Counsel, SSC, and the Class Representatives, have adequately represented the proposed Settlement Class and Subclasses. Interim Class Counsel have litigated this case for over four years and have worked diligently to litigate the proposed Class's claims while simultaneously seeking relief through settlement negotiations. Over a year ago, at Interim Co-Lead Class Counsel's request, the Court appointed SSC to represent different segments of the Flint community in settlement allocation discussions. Class Pls.' Renewed Mot. to Appoint Interim Subclass Settlement Counsel, Aug. 15, 2019, ECF No. 922; Order, ECF No. 929. The Court's Order provided that SSC would represent six separate settlement subclasses for purposes of allocation of a settlement fund: injured children; injured young children; injured adults; persons with property damage; persons who suffered business losses; and future manifesting injuries. Motions, ECF Nos. 136, 922; Order, ECF No. 929.

Both Interim Class Counsel and SSC are experienced counsel that have represented plaintiffs in many class action and mass tort cases. Order, ECF No. 929. After their appointment, SSC familiarized themselves with the facts of the case, and worked diligently to negotiate a settlement allocation that is fair to the subclasses

they represented.[35] Interim Class Counsel worked closely with the Mediators to ensure a fair and adequate overall settlement, and SSC zealously represented the proposed subclasses in allocation discussions, ensuring adequate representation for the proposed Class and Subclasses. *Cf. In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 343 (N.D. Ohio 2001) (granting preliminary approval and holding that any potential antagonism between subclasses was "cured . . . by the use of separately represented subclasses"). And the Settlement Class Representatives "have common interests with unnamed members of the class," and have "vigorously prosecute[d] the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (internal quotation marks and citation omitted); *see also infra* Sections III.E.1.(c)-(d) (addressing typicality and adequacy of proposed class representatives).

Further, the negotiations that led to the Settlement were at all times conducted at arm's-length, with the assistance of two experienced neutral Mediators and a Special Master. "The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties," and therefore "weighs in favor of approving the settlement." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio

---

[35] Coben Decl. ¶¶ 3, 5, 7; Colfax Decl. ¶¶ 3, 5, 9; Lesser Decl. ¶¶ 3, 5, 7; London Decl. ¶¶ 2, 4; Reich Decl. ¶¶ 2, 4, 7; Ward Decl. ¶¶ 2, 4, 7.

2007); *see also Garner Props.*, 333 F.R.D. at 627 (noting, "The negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel, with facilitative assistance from Judge Roberts."). The participation of SSC further ensured that allocation discussions were fair and negotiated at arm's-length.[36]

During two years of settlement negotiations, Plaintiffs moved the case forward in discovery, and thus were well informed about the facts of the case. This information and Interim Class Counsel's legal analysis allowed Interim Class Counsel to effectively evaluate the strengths and weaknesses of the case.[37] Based on this information, Interim Class Counsel and SSC believe that the proposed Settlement is fair and reasonable, and their opinion supports both preliminary (and final) approval of the Settlement. *See, e.g.*, *Dick v. Sprint Commc'ns Co.*, 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate. . . ." (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD–01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)));

---

[36] Coben Decl. ¶ 4; Colfax Decl. ¶ 4; London Decl. ¶ 3; Reich Decl. ¶ 3; Ward Decl. ¶ 3.

[37] Information and facts learned from discovery were also shared with SSC. Coben Decl. ¶ 3; Colfax Decl. ¶ 3; Lesser Decl. ¶ 3; London Decl. ¶ 2; Reich Decl. ¶ 2; Ward Decl. ¶ 2.

*accord In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 WL 2155379, at \*5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d. 336, 341 (E.D. Pa. 2007).

### 2.  The Relief Provided to the Class Is More than Adequate

The relief provided to the Settlement Class and Subclasses consists of a cash payment by the Settling Defendants of over $640 million, including a dedicated fund that will be created to provide special education programming for students who suffer long term health and behavioral impacts from lead exposure. Interim Class Counsel, Co-Liaison Counsel, and SSC believe that this payment is adequate relief for the Settlement Class and Subclasses.

Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). Consideration of the relevant factors under Rule 23 counsels in favor of preliminary approval of the Settlement.

### 3.  The Costs, Risks, and Delay of Trial and Appeal

The Court should assess adequacy of relief to the class "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at \*15 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA v. Gen. Motors*

*Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006)); *see also Garner Props.*, 333 F.R.D. at 627; *UAW v. Ford Motor Co.*, Nos. 05-74730, 06-10331, 2006 WL 1984363, at *21 (E.D. Mich. July 13, 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007); *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015). These risks must be weighed against the settlement consideration: here the certainty of a cash settlement of more than $640 million, including for programmatic relief.

Class Counsel and SSC believe that the Settlement is an excellent result, particularly when weighed against the time and costs of continued litigation.[38] Plaintiffs are optimistic about the likelihood of ultimate success in this case, but success is not certain. Over the past five years, this case has proceeded through extensive discovery, and lengthy motion practice and appeals. The Settling Defendants are represented by experienced counsel, and undoubtedly would continue to deny Plaintiffs' allegations, contest liability, and appeal any contrary result. Moreover, because many of the individual Settling Defendants are entitled to invoke qualified immunity defenses, they could further delay litigation with interlocutory appeals of an unfavorable summary judgment opinion. Weighing the settlement's benefits against the risks and costs of continued litigation tilts the scale

---

[38] Coben Decl. ¶ 8; Colfax Decl. ¶ 10; Lesser Decl. ¶ 8; London Decl. ¶ 8; Reich Decl. ¶ 8; Ward Decl. ¶ 8.

toward approval. *See Garner Props.*, 333 F.R.D. at 627 (granting preliminary approval of settlement "as fair, reasonable, and adequate because it provide[d] reasonable and adequate benefits to the Class Members and reflect[ed] the parties' informed judgment as to the likely risks and benefits of litigation").

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)), *appeal dismissed*, 391 F.3d 812 (6th Cir. 2004). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are inherently complex. 4 William B. Rubenstein, *Newberg on Class Actions* § 13:44 (5th ed. 2020) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals."); *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding this factor counseled in favor of settlement in a case where trial "most likely would have been a lengthy proceeding involving complex scientific proof").[39]

---

[39] As the case is still ongoing until final approval is granted, it is not appropriate to discuss with any specificity Interim Class Counsel's analysis of the risks of litigation as Defendants could seek to use any such disclosures against Plaintiff going forward if final approval is not granted. Interim Class Counsel believe

In deciding whether a proposed settlement warrants approval, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (quoting *Rankin v. Rots*, No. 02-CV-71045, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2008)). Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9. "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'" *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) (quoting *Vukovich*, 720 F.2d at 922-23). Interim Class Counsel and SSC have extensive experience in handling class actions and other complex litigation, and their determination that the Settlement is adequate further counsels in favor of preliminary approval.

---

that at this point it is sufficient to state that complex litigation of this scope has certain inherent risks that the Settlement at least partially negates.

### a.   Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class Member Claims

The claims process was designed to be clear and efficient, and allows determination of awards based on a number of objective factors, to be determined by the Claims Administrator, in consultation with the Special Master. MSA ¶¶ 3.13-.14; *cf. Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 901 (S.D. Ohio 2001) (approving settlement where Special Master determined awards based on a number of factors). The claims process and method of distributing relief to the Class take into account the unique aspects of this case and offer easy access for potential Class Members to provide the required information and appeal any unfavorable decision by the Claims Administrator. MSA Art. XIII, XXI.D; *see also* Section II.C.2, *supra*. The proposed Claims Administrator, Archer, is experienced and well qualified to administer this process in conjunction with the Special Master. Moreover, based on Archer's experience in similar cases, they believe the claims process "appears to be both fair and effective." Freeman Decl. ¶ 8.

### b.   The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

The Settlement provides that attorneys' fees shall be paid solely out of the

Settlement Funds subject to court approval.[40] MSA Art. XI. The Court has the ultimate authority to determine what, if any, attorneys' fees should be awarded to Class Counsel. *See* Fed. R. Civ. P. 23(h). Pursuant to the schedule set forth in the Proposed Order, attached as Exhibit M, Plaintiffs' Counsel will file a motion for attorneys' fees for the Court to consider in making that determination.[41] Consistent with the process for requesting attorneys' fees in class cases, the motion for attorneys' fees will be filed within thirty days of an order granting preliminary approval – substantially prior to the deadline for Class Members to opt out or object to the Settlement, and prior to final approval – and posted to the Settlement website so that the motion and supporting materials can be considered by Class Members in

---

[40] How and when attorney fees and costs for Claimants that qualify for Settlement Category 27B are assessed could be handled differently depending on whether or not the McLaren Defendants exercise their right to walk-away or rescind the Settlement Agreement. MSA ¶ 5.4.

[41] In accordance with Federal Rule of Civil Procedure 23(e)(3), Plaintiffs wish to inform the Court that Interim Class Counsel and Liaison Counsel have reached an agreement regarding the amount of attorneys' fees they intend to request from the Settlement, including the extent to which common-benefit fees will be requested as well as a manner for allocating fees among Plaintiffs' attorneys. Counsel believe that submitting a single, agreed-upon request for fees will streamline the process for evaluating that request. The anticipated motion for attorneys' fees will provide additional information regarding what fees are requested, how Plaintiffs' Counsel propose allocating those fees, and the legal and factual support upon which Plaintiffs rely to support the request. There are no other agreements "made in connection with the" Settlement Agreement. Fed. R. Civ. P. 23(e)(3).

deciding how to exercise their rights under the Settlement.[42] *Cf. In re Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *19 (N.D. Ohio Sept. 23, 2016) (addressing attorney fee motion in conjunction with final approval); *see  also The Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, No. 10-cv-14360-DPH-MKM, ECF Nos. 269, 336, 351 (E.D. Mich.) (showing motion for attorneys' fees filed after preliminary approval but prior to final approval of settlement).

### 4.  The Settlement Treats Class Members Equitably Amongst Each Other and Other Settlement Participants

The Settlement treats Class Members equitably because "apportionment of relief among class members takes appropriate account of differences among their claims." *Kis v. Covelli Enters., Inc.*, Nos. 4:18-cv-54, 4:18-cv-434, 2020 WL 2812405, at *5 (N.D. Ohio May 29, 2020) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments). The Settlement sets forth a detailed grid that will be used to determine the Monetary Awards for Claimants who participate in the Settlement. Ex. B, MSA Ex. 8, Settlement Categories Grid.

The Settlement Categories Grid provides that Claimants will receive awards based on the extent of their injuries and in some cases based on the proof of injury

---

[42] The fact that Counsel will be asking for attorneys' fees and the reimbursement of costs is expressly noted in the proposed Notice. The proposed Notice also provides additional information for when the motion for attorneys' fees will be filed and how Class Members can access that information.

they are able to provide. By taking into account the extent of injury, the Settlement apportions damages in an equitable manner among all Claimants. *See In re Oil Spill*, 910 F. Supp. 2d at 957 ("[T]here is nothing improper in the parties' negotiation of claims frameworks that compensate class members in light of the strength of their claims."); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 196 (E.D. Pa. 2014) (Maximum monetary awards ranging in value from $ 1.5-5 million  were determined by six separate Qualifying Diagnoses). SSC appointed to protect the rights of separate groups of Claimants agree it treats Claimants equitably.[43]

The Settlement Agreement provides that Class Counsel may seek an incentive award of up to $15,000 each for the Class Representative(s). MSA ¶ 8.10.12. Such awards are justified as an incentive and reward for the efforts that lead plaintiffs take on behalf of the class. *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) (noting "the Sixth Circuit has endorsed the use of incentive awards"), *appeal*

---

[43] Coben Decl. ¶ 7 (settlement "provides clear guidelines for monetary awards such that all minors participating in the settlement will be on equal footing when filing their claims"); Reich Decl. ¶ 7 ("Flint businesses participating in the settlement will be on equal footing when filing their claims."); London Decl. ¶ 7 ("Flint residential property claimants participating in the settlement will be on equal footing when filing their claims"); Lesser Decl. ¶ 7 ("future minor claimants will be on equal footing when filing their claims"); Colfax Decl. ¶ 9 ("older children participating in the settlement will be on equal footing when filing their claims with class members and other children").

*dismissed*, 2016 WL 6599570 (6th Cir. 2016). Plaintiffs will submit this request along with the fee application, prior to the deadline for objections from Class Members. Thus, any incentive award will be subject to Court approval.

### 5.  The Settlement is Consistent with the Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205 (6th Cir. 1992)). *Accord Griffin*, 2013 WL 6511860, at *5; *Packaged Ice*, 2011 WL 717519, at *12. Moreover, the public interest is best served in this case by providing relief to Class Members and members of the Flint community as expeditiously as possible. *Cf. Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (concluding settlement was in the public interest where "allowing settlement in this matter will promote the fair and expeditious resolution of the matter"). Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlement. Thus, this factor also supports approval.

### D. Provisional Certification of the Proposed Settlement Class and Subclasses is Warranted

In order to grant preliminary approval, the Court must determine whether it is likely to be able to certify the proposed Settlement Class at final approval. Fed. R.

Civ. P. 23(e)(1)(B). It is well established that a class may be certified for purposes of settlement. *See, e.g.*, *In re Auto. Parts Antitrust Litig. (In re Wire Harness Cases)*, No. 2:12-cv-00101-MOB-MKM, 2017 WL 469734, at \*1 (E.D. Mich. Jan. 4, 2017) (granting preliminary approval upon preliminary determinations that the settlement was approvable and a settlement class could be certified). However, at this juncture, the Court need only decide that certification of the proposed Settlement Class and Subclasses is "likely" in order to justify sending notice to Settlement Class Members. Plaintiffs will later seek final approval of the Settlement Class for purposes of the Settlement. *See Ford*, 2006 WL 1984363, at \*3, \*18; *Cardizem*, 218 F.R.D. at 516-17. As they did with their preliminary approval analysis, Plaintiffs will address the factors for final certification here.

Class certification is appropriate where, as here, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)). To certify a class under Rule 23(b)(3), the court must also find "'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to

37

other available methods' to adjudicate the controversy fairly and efficiently." *Id.* at 850-51 (quoting Fed. R. Civ. P. 23(b)(3)).

As demonstrated below, the Settlement Class and Subclasses meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes, and therefore it is likely that the Court will be able to certify the proposed Settlement Class and Subclasses.

### 1. The Proposed Settlement Class and Subclasses Satisfy Rule 23(a)

#### a. The Class and Subclasses Meet the Numerosity Requirement

According to the 2010 census, the population of Flint, Michigan exceeded 100,000 people.[44] Even excluding those who were minors at the time of the Flint Water Crisis,[45] and Individual Plaintiffs participating in the Settlement,[46] the number of eligible Class Members more than meets this requirement. *Cf., e.g.*, *Barry v. Corrigan*, 79 F. Supp. 3d 712, 731 (E.D. Mich. 2015) (numerosity satisfied where plaintiffs produced evidence of 4,562 class members), *aff'd*, *Barry v. Lyon*, 834 F. 3d 706 (6th Cir. 2016).[47]

---

[44] *QuickFacts*, United States Census Bureau (Apr. 1, 2010), https://www.census.gov/quickfacts/fact/table/flintcitymichigan/PST040219.

[45] *See id.* (listing 25.6% of the population under the age of 18 in 2010).

[46] MSA Ex. 1.

[47] *See also Widdis v. Marathon Petroleum Co.*, No. 13-cv-12925, 2014 WL 11444248, at *5 (E.D. Mich. Nov. 18, 2014) (Levy, J.) (numerosity satisfied where,

Further, more than 700 businesses in Flint "appear to have experienced clear declines in gross sales volume" since the onset of the Flint Water Crisis in 2014.[48] More than 30,000 single- and multi-family residential properties and more than 5,000 multi-family units were impacted by the Water Crisis and require remediation.[49] With so many affected Class and Subclass Members, the numerosity requirement is readily met in this case. *See, e.g., Smith v. Gen. Motors Corp.*, 1977 WL 831, at *5 ("[P]roposed classes with over thirty-five members have normally been certified providing that the other requirements for certification have been met.").

### b.    The Flint Water Crisis Presents Factual and Legal Questions Common to the Class and Subclasses

To satisfy the commonality requirement, the Sixth Circuit has held that "there need only be one question common to the class." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). In this case, multiple factual and legal

---

"[e]ven though they do not have an exact figure, plaintiffs have adequately shown that the proposed class may include dozens if not hundreds of members"); *Smith v. Gen. Motors Corp.*, Civil Action No. 5-71348, 1977 WL 831, at *5 (E.D. Mich. Mar. 3, 1977) ("[P]roposed classes with over thirty-five members have normally been certified providing that the other requirements for certification have been met.").

[48] Decl. by Theodore J. Leopold in Support of Motion to Certify Class, Ex. 86, Simons Report at 4-5, July 16, 2020, ECF No. 1208-95, PageID.36139-36140. All exhibits to this declaration will herein be referred to as "Class Cert. Ex. _".

[49] Class Cert. Ex. 87, Gamble Report ¶ 18, ECF No. 1208-96, PageID.36197-36198.

questions pertaining to Settling Defendants are common to the entire Class and all

Subclasses, including, for example:

- whether the State Defendants and City Defendants had the opportunity to reflect and deliberate before they acted or failed to act;

- whether the conduct of the State Defendants and City Defendants directly and proximately caused the Flint water system to be contaminated with corrosive water, lead, and dangerous bacteria, and/or increased the risk of harm to the Class and/or Subclasses;

- whether the implementation or execution of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City of Flint violated Plaintiffs' fundamental liberty interest in bodily integrity was; and

- whether the actions of the Rowe and McLaren Defendants violated Plaintiffs' rights.[50]

These are precisely the types of questions that courts in this Circuit and others

have found sufficient to satisfy the commonality requirement. *See, e.g.*, *Widdis*, 2014

WL 11444248, at *5 (common questions in an environmental mass tort included

whether an explosion was foreseeable, whether defendant took available precautions

to prevent the explosion, and whether defendant or its negligence was the cause of

an evacuation); *Collins v. Olin Corp.*, 248 F.R.D. 95, 101 (D. Conn. 2008) (the

"course of conduct of [defendant] allegedly leading to the contamination of

---

[50] Although Rowe and McLaren Defendants are not named in the Class Complaint, they are participating in the global Settlement.

[plaintiffs'] properties" presented common question in class action seeking damages for that contamination). Thus, the commonality requirement is met in this case.

> ### c. Settlement Class Representatives' Claims Are Typical of the Claims of the Settlement Class and Subclasses

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford*, 2006 WL 1984363, at *19); *Date*, 2013 WL 3945981, at *3.

The Settlement Class Representatives' claims are typical of the Class and Subclasses they seek to represent because their claims arise from the same course of conduct as do the claims of the other members of the proposed Settlement Class and Subclasses, namely, Defendants' misconduct that led to their exposure to, or the exposure of their property to or business losses as a consequence of, toxic Flint water. *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007) (finding typicality satisfied where class representatives' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members," and were "based on the same legal theor[ies]" as other class members' claims (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996))); *see also Barry*, 79 F. Supp. 3d at 732 ("The Sixth Circuit has concluded a

proposed class representative's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." (internal quotation marks and citation omitted)). Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

Subclass Settlement Representatives' claims, like those of the absent Subclass Members, arise out of the same man-made crisis:

- ***Adult Exposure Subclass Representative Rhonda Kelso*** owns a home in Flint, where she has resided since the 1990s. Ms. Kelso drank Flint water until October 2014, and continued to cook, wash, and bathe with the water until March 2015. Ms. Kelso's home was tested for lead in August 2015 by researchers at Virginia Tech, who found elevated lead levels in her water. As a result of Defendants' actions, Ms. Kelso has suffered extreme disruption, inconvenience, discomfort, and emotional distress; financial damage; and still does not trust the water supply.[51] Ms. Kelso's claims are typical of and aligned with absent members of the Adult Exposure Subclass she seeks to represent.

- ***Adult Exposure Subclass Representatives Barbara and Darrell Davis*** are a married couple who live in Flint and have owned a home there since 2002. Mrs. Davis, an elementary school teacher, worked at two different schools in Flint during the Flint Water Crisis, where she drank the tap water. Both schools' tap water tested positive for high levels of lead. As a result of Defendants' actions, Mr. and Mrs. Davis lost the use and enjoyment of their home, and have suffered from skin problems including rashes and other medical issues. Mr. and Mrs. Davis's claims are typical of and aligned with absent members of the Adult Exposure Subclass she seeks to represent.[52]

---

[51] Class Pls.' Mot. for Class Certification 38, July 16, 2020, ECF No. 1207, PageID.34475.

[52] *Id.*

- ***Adult Exposure Subclass Representative Tiantha Williams*** has lived in Flint throughout the Class Period and until December 2015, regularly used the water for drinking, cooking, bathing/showering, and clothes washing. During this period, Ms. Williams alleges she suffered physical and emotional injuries as a result of Settling Defendants' conduct. Her claims are typical of and aligned with absent members of the Adult Exposure Subclass she seeks to represent.[53]

- ***Adult Exposure Subclass Representative Michael Snyder*** is the son and personal representative of the Estate of John Snyder. John Snyder died at the age of 83 on June 30, 2015. Hospital records establish that Mr. Snyder had the *legionella* antigen in his urine. Mr. Snyder alleges his father died because of pneumonia caused by exposure to *legionella* bacteria which he acquired through exposure to contaminated Flint River water flowing through Flint's water supply. His claims are typical of and aligned with absent members of the Adult Exposure Subclass he seeks to represent.[54]

- ***Property Damage Subclass Representative Elnora Carthan*** owns a home in Flint, was a customer of the Flint water district throughout the Class Period, and regularly used and paid for water distributed by the City of Flint throughout the Class Period. She seeks to hold Settling Defendants liable for damages resulting from diminished property values, and damage to pipes, fixtures, and appliances within her property. Like many homeowners in Flint, Ms. Carthan had to replace appliances due to interaction with Flint public water, including. Additionally, Ms. Carthan lost the use and enjoyment of her residence during the Class Period. Her claims are typical of the other Settlement Class Members in the Property Damage Subclass.[55]

- ***Property Damage Subclass Representative David Munoz*** has lived in Flint his entire life and has owned a home there since 1996. As a result of Defendants' actions, Mr. Munoz suffered diminution in the value of his home

---

[53] Class Cert. Ex. 94, Williams Dep. Tr., ECF No. 1222-4.

[54] Fourth Consolidated Am. Class Compl. ¶ 17, Oct. 8, 2018, ECF No. 620-3, PageID.17813-4.

[55] Mot. for Class Cert. 38, ECF No. 1207, PageID.34475.

and damage to appliances in his home. His claims are typical of the other Settlement Class Members in the Property Damage Subclass.[56]

- ***Business Economic Loss Subclass Representative 635 South Saginaw LLC*** (a/k/a Cork on Saginaw (hereinafter referred to as "Cork")) is seeking redress for economic losses resulting from the Flint Water Crisis. Having commenced business in Flint in 2011, by 2013, Cork had developed a loyal clientele. In the wake of the crisis, consumers became hesitant to visit Flint and patronize businesses there. Patrons' hesitance to frequent Cork and other businesses in the City of Flint resulted in a loss of revenue for Cork. Cork's claims for lost revenue are co-extensive with those of absent Class Members of the Business Economic Loss Subclass Cork seeks to represent.

- ***Business Economic Loss Subclass Representative Frances Gilcreast*** is a partner of FG&S Investments, which owned several properties in Flint during the class period. As a result of the Flint Water Crisis, FG&S's rental income fell dramatically. Ms. Gilcreast's claims for lost revenue are similar to those of absent Class Members of the Business Economic Loss Subclass that Ms. Gilcreast seeks to represent.[57]

- ***Business Economic Loss Subclass Representative Neil Helmkay*** owned and operated long-standing Flint Restaurant Angelo's Coney Island from 2012 until its closure in 2018. Angelo's profits diminished after the Flint Water Crisis became public and the Flint location is no longer in business. Mr. Helmkay's claims for lost revenue are similar to those of absent Class Members of the Business Economic Loss Subclass that he seeks to represent.[58]

Additionally, although the portion of the Settlement relating to Minors is not a class settlement, certain members of the SSC participated in settlement

---

[56] *Id.* at 39, PageID.34476.

[57] *Id.* at 40, PageID.34477.

[58] *Id.*

negotiations on behalf of minors, including: Larry Coben, on behalf of a young children's injury subclass; Reed Colfax, on behalf of an older children's (7-17) injury subclass; and Seth Lesser, on behalf of a future manifesting injury subclass. These SSC attorneys also represented and conferred with their clients including: Ms. Takisha Moller, on behalf of her four year old daughter, D.W.; Morghan Sullinger, on behalf of her seven year old child, M.S.; Ms. Eleasha Aubrey, on behalf of her seventeen year old child, J.W.; and then-seventeen year old subclass representative, N.B. These Plaintiffs, like many other children eligible for compensation under the settlement, suffered injuries as a result of exposure to Flint water.

> ### d. Settlement Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class and Subclasses

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class. "There are two criteria for determining whether the presentation of the class will be adequate: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel." *Sheick*, No. 09-14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here. The named Plaintiffs and members of the Class/Subclasses they seek to represent share common interests: they are all seeking to hold Defendants liable for the same misconduct. *See Vassalle*, 708 F.3d at 757 (class representatives "shared common interests with the unnamed class members" where "they all shared a desire to obtain both monetary and injunctive relief from [defendants]"). They are committed to achieving a recovery that would benefit the entire Class.[59] *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." (citation omitted)).

Moreover, as required of plaintiffs seeking to represent a class, the proposed Class and Subclass Representatives have already shown their vigorous commitment to this litigation, spending considerable time and emotional labor responding to written discovery requests, meeting with counsel, and sitting for depositions. *Mitcham v. Intrepid U.S.A., Inc.*, No. 3:17-CV-703-CHB, 2019 WL 2269918, at *4 (W.D. Ky. May 28, 2019) (to meet adequacy requirement, "1) [t]he representative must have common interests with unnamed members of the class, and 2) it must

---

[59] Mot. for Class Cert. 43 n.138, ECF No. 1207, PageID.34480.

appear that the representatives will vigorously prosecute the interests of the class through qualified counsel").

In addition to the Subclass Representatives, Interim Class Counsel and SSC zealously represented the Class and Subclasses during the settlement process, to ensure adequate representation of the Settlement Class. *See* Section III.C.1., *supra* (explaining adequacy of Interim Class Counsel and SSC).

### 2. Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes

In addition to satisfying Rule 23(a), Plaintiffs must show that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "[1] questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and . . . [2] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

### a. Common Questions of Law and Fact Predominate

The predominance standard "is essentially a pragmatic one: '[w]hen common questions represent a significant aspect of the case they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.'" *Widdis*,

2014 WL 11444248, at *7 (alteration in original) (citation omitted). Thus, "[c]ourts have frequently held that this merely requires a 'common nucleus of operative facts'. . . even though other important matters will have to be tried separately." *Id.* (alternation in original) (citation omitted).

The Sixth Circuit has made clear that common questions may predominate in cases arising out of an environmental disaster. In *Sterling v. Velsicol Chemical Corp.*, the Sixth Circuit explained that "where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy." 855 F.2d 1188, 1196-97 (6th Cir. 1988). Indeed, in *Sterling*, a mass tort event presented exactly the sort of situation for which class action litigation served its fundamental purpose, as class treatment of the plaintiffs' claims "avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts." *Id.* at 1197.

More recently, in *Widdis*, this Court certified a class of individuals forced to evacuate or remain in their homes as a consequence of an explosion and fire, and who additionally lost the use and enjoyment of their property for a period of time following the disaster, with subclasses for property owners in the affected area and a subclass for non-owner occupants. 2014 WL 11444248, at *1. In finding that

plaintiffs had satisfied Rule 23(b)(3)'s predominance requirement for their negligence claim, this Court explained that although the negligence claim would "require individualized proofs" regarding certain damages, those considerations were outweighed by common questions. *Id.* at *8. Precisely the same is true here.

The Class believes that common evidence would establish liability and Plaintiffs' entitlement to damages against the State and City Defendants.[60] "To sustain a substantive due process claim, a plaintiff must show that the particular interest in question is protected by the Fourteenth Amendment and that the government's deprivation of that interest 'shocks the conscience.'" *Guertin v. Michigan*, 912 F.3d 907, 922 (6th Cir. 2019) (quoting *Vargas v. City of Philadelphia*, 783 F.3d 962, 973 (3d Cir. 2015)) (citing *United States v. Sanders*, 452 F. 3d 572, 577 n.4 (6th Cir. 2006)), *reh'g en banc denied*, 924 F.3d 309 (6th Cir.), *and cert. denied sub nom. City of Flint v. Guertin*, 140 S. Ct. 933 (2020) and *Busch v. Guertin*, 140 S. Ct. 933 (2020). Evidence that is common to the Class could be used to demonstrate that the State and City Defendants acted in a manner that: (1) violated Plaintiffs' fundamental right to bodily integrity and (2) "shocks the conscience."

Common evidence as to each State and City Defendant would demonstrate their respective roles and decision-making responsibility regarding the Flint Water

---

[60] The State and City Defendants strongly contest both Class Plaintiffs' characterization of this evidence in this section of the motion as well as whether it satisfies the legal standard for Bodily Integrity claim.

Crisis. The Class contends that establishing the conduct of each State and City Defendant and their consequent participation in creating this disaster requires no individualized proof, but instead will turn on evidence reflecting those Defendants' actions, decisions, and awareness of the harm they were causing during the relevant timeframe. For example, Plaintiffs believe that they can demonstrate through common evidence that State and City Defendants' conduct was conscience-shocking including that State and City Defendants pressed forward with their water contamination operation in the face of signs that their decisions posed a substantial risk of serious harm and proceeded regardless. For purposes of class certification, the relevant question is not whether the evidence is admissible or legally sufficient, but rather whether the probative value or sufficiency of the evidence would vary between class members. Here Plaintiffs submit it would not.

Moreover, "officials can violate an individual's bodily integrity by introducing life-threatening substances into that person's body without their consent." *In re Flint Water Cases*, Nos. 5:17-cv-10342-JEL-EAS, 17-10164, 17-cv-10342, 2019 WL 3530874, at *14 (E.D. Mich. Aug. 2, 2019), *aff'd in part and remanded in part on other grounds*, 969 F.3d 298 (6th Cir. 2020). Exposing persons to contaminated water satisfies this standard. Class Plaintiffs' allege that the State and City Defendants' conduct resulted in class-wide exposure to elevated total trihalomethanes, *E. Coli*, and *legionella* bacteria. As Dr. Bruce Lanphear, an expert

on the health impacts of lead poisoning and the sources of lead exposure, explains,

even low levels of lead exposure are extremely harmful to children and also to

adults.[61] In addition to lead, the switch to Flint River water also coincided with "one

of the largest [outbreaks] of Legionellosis in the past decade."[62] And as Governor

Snyder's Flint Water Advisory Task Force found, "Flint endured a series of water

quality threats – from E coli contamination to high total trihalomethane (TTHM)

levels – that could have been prevented."[63]

By establishing that the State and City Defendants engaged in conduct that

invaded the bodily integrity of the Plaintiffs in a conscience shocking manner,

Plaintiffs believe they can establish the State and City Defendants' liability with

common proof. *See In re Whirlpool*, 722 F.3d at 855 ("Common proof will advance

the litigation by resolving this issue 'in one stroke' for all members of the class."

(quoting *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011))).

Plaintiffs believe they can also use common, class-wide evidence to establish

the existence of damages. Plaintiffs' experts demonstrate that the Flint Water Crisis

caused damages to Plaintiffs' health, quality of life, business profits, and property.

This expert testimony is based on public information, surveys, and data that are

---

[61] Class Cert. Ex. 99, Lanphear Decl. ¶ 23, ECF No. 1208-108, PageID.36889.

[62] Class Cert. Ex. 100, COF_FED_0676999 at COF_FED_0677026, ECF No. 1208-109, PageID.36976.

[63] *Id.* at COF_FED_0677045, PageID.36995.

common to all members of the class, and therefore would not require individualized proof to establish the fact of damages.

> **b.    A Class Settlement Is Superior to Other Methods for the Proposed Class and Subclasses.**

The factors to be considered in determining the superiority of proceeding as a class action include: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3). However, "when '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *In re Oil Spill*, 910 F. Supp. 2d at 911 (alteration in original); *See also Cardizem*, 218 F.R.D. at 517.

These factors favor certifying the Settlement Class and Subclasses here. All federal Flint Water Cases litigation has been centralized in this Court. If an affected Flint resident wanted to control their own litigation, they could have pursued an Individual case prior to the Settlement or may request exclusion from the Settlement Class.

Although hundreds of individual cases have been filed, many of those have been filed on behalf of minors. Indeed, the Settlement Class will provide relief for the vast majority of adult Flint residents. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action for the Settlement Class and Subclasses. Moreover, proceeding with a class settlement ensures that the largest number of Flint residents eligible to participate in the Settlement will receive notice and an opportunity to file a claim for damages.[64]

### E. The Court Should Approve the Notice Plan and Authorize Class Counsel to Disseminate Notice

The 2018 amendments to Federal Rule of Civil Procedure 23 provide that, "upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3) [ ] the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement.

Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497

---

[64] Plaintiffs incorporate the arguments made in their Motion for Class Certification. Mot. for Class Cert., ECF No. 1207.

F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, the "notice must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who validly requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

### 1. The Proposed Notice and Dissemination Plan Fully Describes the Class Settlement and Is Designed to Reach as Many Potential Participants as Possible

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 497 F.3d at 629 (quoting *Mullane*, 339 U.S. at 314). For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In addition, the notice must clearly and concisely state: (1) the nature of the action; (2) the class

definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3). *Id.* The Settlement Notice attached hereto as Exhibit K, meets these requirements.

The Settlement Notice clearly and concisely summarizes the Settlement, including Class and non-Class aspects of the Settlement, the available benefits, the actions that potential Eligible Participants must take to participate in the Settlement, and the relevant deadlines. *See* generally Notice at 2 and §§ 1-4. It lays out the Class definition, and explains that Class Members may request exclusion from the Settlement, or may enter an appearance through counsel. *Id.* §§ 5-9, 31. Likewise, the Notice describes other procedural rights available to members of the Proposed Settlement Class and other Eligible Participants. *Id.* §§ 10-15 (explaining registration and claims process). The Notice also directs recipients to a website dedicated specifically to the Settlement where they can access additional information. Notice at 17.

Epiq, an experienced notice administrator, will manage notice for the Settlement. The Notice Plan includes both individual mailed Notice and a media plan in order to reach the broadest number of Settlement Class Members. Azari Decl. ¶¶ 19, 24, 51. Prior to mailing Notice, Epiq will confirm all known addresses to the

best of its ability using the National Change of Address ("NCOA") database, the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code, and Delivery Point Validation ("DPV") to verify the accuracy of the addresses. *Id.* ¶ 21. Notices returned as undeliverable will be re-mailed to any new address available through postal service information. *Id.* ¶ 22. Notice will also be mailed to any person who requests one through the toll-free phone number or by mail, and will be available on the website. *Id.* ¶¶ 23, 44.

In addition, Epiq will spearhead a media campaign designed to inform potential Eligible Class Members about the Settlement. *Id.* ¶¶ 24-46. The media plan includes display online advertising, social media advertising, online radio ads, local television, newspaper, and radio ads, and earned media. *Id.* The Notice and Notice Plan are calculated to inform as many potential Class Members as possible of their rights under the Settlement Agreement, and are therefore fair, reasonable, and adequate.

Plaintiffs also request that the Court appoint Epiq as the Notice Administrator in this case. Epiq is an experienced notice administrator that has served this role in hundreds of cases. Azari Decl. ¶ 4.   A proposed timeline for Notice and final approval is provided in the Proposed Order.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

the relief requested herein.

Dated: November 17, 2020                 Respectfully submitted,

/s/ Corey M. Stern                       /s/ Theodore J. Leopold
Corey M. Stern                           Theodore J. Leopold
**LEVY KONIGSBERG, LLP**                 **COHEN MILSTEIN SELLERS &**
800 Third Avenue,                        **TOLL PLLC**
11th Floor                               11780 U.S. Highway One
New York, NY 10022                       Suite N500
(212) 605-6298 Telephone                 Palm Beach Gardens, FL 33408
cstern@levylaw.com                       (561) 515-1400 Telephone
                                         tleopold@cohenmilstein.com

/s/ Hunter Shkolnik                      /s/ Michael L. Pitt
Hunter Shkolnik                          Michael L. Pitt
**NAPOLI SHKOLNIK PLLC**                 Cary S. McGehee
270 Munoz Rivera Avenue,                 **PITT MCGEHEE PALMER**
Suite 201                                **BONANNI & RIVERS, P.C.**
Hato Rey, Puerto Rico 00918              117 West 4th Street
(787) 493-5088 Telephone                 Suite 200
hunter@napolilaw.com                     Royal Oak, MI 48067
                                         (248) 398-9800 Telephone
                                         mpitt@pittlawpc.com
Joseph M. Sellers                        cmcgehee@pittlawpc.com
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner                        Paul Novak (P39524)
Alison S. Deich                          Diana Gjonaj (P74637)
**COHEN MILSTEIN SELLERS &**             Gregory Stamatopoulos (P74199)
**TOLL PLLC**                            **WEITZ & LUXENBERG, P.C.**
1100 New York Ave. NW                    3011 West Grand Boulevard
Suite 500                                Suite 2150
Washington, DC 20005                     Detroit, MI 48226
(202) 408-4600 Telephone                 (313) 800-4170 Telephone
jsellers@cohenmilstein.com               pnovak@weitzlux.com
kpierson@cohenmilstein.com               dgjonaj@weitzlux.com
elevens@cohenmilstein.com

jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ &**
**GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone

gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA**
**A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.**
**LABELLE**

bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI  48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI  48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com

221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &
ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One

59

jeblake@mcalpinelawfirm.com

East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on November 17, 2020.


Dated: November 17, 2020              */s/ Emmy L. Levens*
                                      Emmy L. Levens
                                      **COHEN MILSTEIN SELLERS**
                                      **& TOLL PLLC**
                                      1100 New York Ave. NW
                                      Suite 500
                                      Washington, DC 20005
                                      (202) 408-4600 Telephone
                                      elevens@cohenmilstein.com