# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In Re* Flint Water Cases                              No. 5:16-cv-10444-JEL-MKM

                                                       HON. JUDITH E. LEVY

                                                       MAG. MONA K. MAJZOUB

_____

## AMENDED SETTLEMENT AGREEMENT

Dated:  November 16, 2020

# TABLE OF CONTENTS

Preamble ........................................................................................................ 1

Recitals ......................................................................................................... 1

Article I–Definitions ..................................................................................... 4

Article II–Payments by Defendants............................................................ 15

Article III–Registration for and Participation in Settlement Program..................... 17

    A.    Requirements for Registration of Persons and Entities....................... 17

    B.    Review of Registration Forms................................................. 18

    C.    Claims Materials Required to be Submitted to Participate in the Settlement Program ................................................... 19

    D.    Review of Claims Material.................................................... 21

Article IV–Settlement Categories ............................................................... 22

Article V–Monetary Awards........................................................................ 23

Article VI–Future Minor Claimants ........................................................... 25

Article VII–Programmatic Relief ................................................................ 26

Article VIII–Preliminary Approval Orders, Class Certification, Final Orders, Judgments, and Related Orders .................................................... 27

    A.    Individual Plaintiffs .......................................................... 27

    B.    Class Members .................................................................. 30

    C.    Final Settlement Agreement ................................................. 33

Article IX–Related Lawsuits ....................................................................... 34

Article X–The Qualified Settlement Funds ................................................. 34

Article XI–Attorneys' Fees, Costs, and Expenses ....................................... 36

Article XII–Settlement Agreement Administration..................................... 37

    A.    Claims Administrator ........................................................ 37

    B.    Special Master .................................................................. 40

    C.    Settlement Planning Administrator ....................................... 41

Article XIII–Reconsideration Requests and Appeals .................................. 45

    A.    Settlement Category Reconsideration Request.......................... 45

    B.    Appeals to the Special Master .............................................. 46

Article XIV–Dispute Resolution.................................................................. 47

Article XV–Liens.......................................................................................... 48

Article XVI–Releases and Covenants Not to Sue........................................ 52

Article XVII–Rescission ................................................................................................ 55

Article XVIII–Walk-Away Provisions ......................................................................... 58

Article XIX–Opt-Outs .................................................................................................. 59

Article XX–Objections ................................................................................................. 61

Article XXI–Minors and LIIs ...................................................................................... 62

    A.    Preliminary Motions in State and Federal Courts ............................. 62

          i.    Genesee County Circuit Court .................................... 62
          ii.    Court of Claims ........................................................... 63
          iii.    Federal Court ............................................................... 63

    B.    Registration and Submission of Claims Materials on Behalf of a Minor or LII ...................................................................................... 64

    C.    Second Stage Approval Process—Favorable Notices ........................... 65

    D.    Second Stage Approval Process—Unfavorable Notices, Reconsideration Requests, and Appeals to the Special Master ..................................... 67

    E.    Non-Participating Minors and LIIs ................................................ 67

    F.    Monetary Awards to Minors and LIIs ............................................. 68

    G.    Class Actions in State Courts ........................................................ 69

Article XXII–Lawyer Participation Provisions ............................................................ 69

Article XXIII–Miscellaneous ........................................................................................ 69

## Preamble

This Amended Settlement Agreement is made and entered into this 16th day of November, 2020, by and between Plaintiffs, individually and on behalf of a Settlement Class, and Defendants, who are parties to multiple lawsuits in state and federal court, including *In re Flint Water Cases*, Case No. 5:16-cv-10444-JEL-MKM (E.D. Mich.). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle all Released Claims against the Released Parties, as set forth below, subject to review and approval by the Federal Court, Court of Claims, and Genesee County Circuit Court.[1]

## Recitals

A.     Multiple lawsuits have been filed in, removed to, or transferred to the United States District Court for the Eastern District of Michigan that have become known as *In re Flint Water Cases*, 5:16-cv-10444. Interim Co-Lead Class Counsel for the Putative Class filed a Fourth Consolidated Amended Class Complaint for Injunctive and Declaratory Relief, Money Damages, and Jury Demand in *Carthan v. Governor Rick Snyder*, 5:16-cv-10444, and Interim Co-Liaison Counsel filed an Amended Master Complaint in *Walters v. Governor Richard Snyder*, 5:17-cv-10164. Related Lawsuits have been filed that: (1) adopted in whole or in part the Amended Master Complaint; (2) were initially filed in the Michigan Court of Claims, Genesee County Circuit Court or Eastern or Western Districts of Michigan; or (3) are currently on appeal in state or federal court.

B.     The lawsuits arise from alleged personal injury, property damage, or economic loss incurred by Plaintiffs due to exposure to allegedly contaminated water received from the Flint Water Treatment Plant or legal liability for the payment of bills for such water between April 25, 2014 and the Execution Date. Plaintiffs seek to hold Defendants, among others, liable under various theories of liability, including negligence, unjust enrichment, breach of contract, constitutional violations, and inverse condemnation.

C.     Defendants deny Plaintiffs' allegations in the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and the Related Lawsuits. Defendants also deny having any liability for any claims, causes of action, costs, expenses, attorneys' fees, or damages of any kind. Defendants have asserted legal and factual defenses against Plaintiffs' claims in these lawsuits.

---

[1] Capitalized terms have the meanings provided in Article I–Definitions, unless a section or subsection of this Settlement Agreement states otherwise.

D.     Plaintiffs, through their counsel, have engaged in substantial fact gathering to evaluate the merits of their claims and Defendants' defenses.   In addition, Plaintiffs have analyzed the legal issues raised by their claims and Defendants' defenses.

E.     The Federal Court appointed Theodore J. Leopold of Cohen Milstein Sellers & Toll PLLC and Michael L. Pitt of Pitt McGehee Palmer & Rivers, P.C. as Interim Co-Lead Class Counsel for the Putative Class and Corey M. Stern of Levy Konisberg, LLP and Hunter Shkolnik of Napoli Shkolnik, PLLC as Interim Co-Liaison Counsel for the Individual Plaintiffs.

F.     On January 16, 2018, the Federal Court ordered Plaintiffs and Defendants to engage in facilitative mediation to determine if consensual resolution was possible and appointed former Wayne County Chief Pro Tem Judge Pamela Harwood and Senator Carl Levin (retired) to serve as Mediators.

G.     On July 31, 2018, the Federal Court appointed Deborah E. Greenspan of Blank Rome LLP as Special Master in *In re Flint Water Cases*, 5:16-cv-10444.

H.     On August 26, 2019, the Federal Court appointed interim subclass settlement counsel to protect and represent the interests of the potential subclasses in negotiations regarding allocation of settlement assets.

I.     The Parties, by and through their respective counsel, engaged in settlement negotiations under the direction of the Mediators and the Special Master.

J.     After careful consideration, Plaintiffs, and their respective counsel, have concluded that it is in Plaintiffs' best interest to compromise and settle all Released Claims against the Released Parties for the consideration reflected in the terms and benefits of this Settlement Agreement.   After arm's-length negotiations with counsel for Defendants, including the efforts of the Mediators and Special Master, Plaintiffs have considered, among other things: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the litigation and amount of fact gathering completed; (3) the potential for Defendants to prevail on threshold issues and on the merits; and (4) the range of possible recovery, and have determined that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs.

K.     Co-Lead Class Counsel for the Putative Class and Co-Liaison Counsel agree that this Settlement Agreement is in the best interests of the Plaintiffs and will provide a fair, just, and efficient process to resolve their claims.   Plaintiffs' Counsel and counsel in the Related Lawsuits agree to, subject to the exercise of their independent professional judgment and ethical obligations, recommend to their clients, whether Individual Plaintiffs or putative Class Members, that they register

for and provide the required information necessary to participate as a Claimant in the Settlement Program.

L.     Defendants have concluded, in light of the costs, risks, and burden of litigation, that this Settlement Agreement in this complex individual and putative class action litigation is appropriate.  Defendants and their respective counsel agree with Plaintiffs and their respective counsel that this Settlement Agreement is a fair, reasonable, and adequate resolution of the Released Claims.  Defendants reached this conclusion after considering the factual and legal issues relating to the litigation, the substantial benefits of this Settlement Agreement, the expense that would be necessary to defend claims by the Plaintiffs through trial and any appeals that might be taken, the benefits of disposing of protracted and complex litigation, and the desire of Defendants to conduct their business and activities unhampered by the costs, distraction, and risks of continued litigation over Released Claims.

M.     The Parties desire to settle, compromise, and resolve fully all Released Claims.

N.     The Parties will seek Federal Court review and approval of the Settlement Agreement as set forth in Article VIII, and upon approval by the Federal Court, the Parties will seek Final Orders and Judgments from the Federal Court dismissing with prejudice the Fourth Consolidated Amended Class Complaint, and the Amended Master Individual Complaint, as well as dismissing the Related Lawsuits with prejudice or ordering their dismissal with prejudice.

O.     The Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and the Related Lawsuits that have been filed against Defendants in a variety of Michigan state and federal courts include claims filed by or on behalf of Plaintiffs who are Minors or LIIs.  These claims are currently pending in the Genesee County Circuit Court, Michigan Court of Claims, Michigan Court of Appeals, Michigan Supreme Court, United States District Courts for the Eastern and Western Districts of Michigan, and United States Sixth Circuit Court of Appeals.  In addition, some individuals who are Minors or LIIs, or their representatives, have filed notices of intent to file claims and similar notices in state and federal venues, but have not yet filed their formal claims in state or federal courts.  As a result, settlement of some of these claims are governed by the Michigan Court Rules and Michigan law and some by the Federal Rules of Civil Procedure and federal law.  In order to have consistency in the procedures and substance of the settlement of all claims involving Minors and LIIs, the agreed upon settlement procedures for such state and federal court claims and notices shall be as described in Article XXI–Minors and LIIs.

P.     This Settlement Agreement shall not be construed as evidence of, or as an admission by Defendants of any liability or wrongdoing whatsoever or as an admission by Plaintiffs of any lack of merit in their claims.

Q.    By entering this Settlement Agreement, the State of Michigan, its officers, employees, and departments do not waive any immunity, except to the extent necessary for the interpretation or enforcement of this Settlement Agreement as set forth in Article XIV–Dispute Resolution.  Nothing stated here should be construed as a waiver of any immunity available to the State of Michigan or its officers, employees, or departments, and all such rights are expressly reserved.

NOW, THEREFORE, it is agreed that the foregoing recitals are hereby expressly incorporated into this Settlement Agreement and made a part hereof and further, that in consideration of the agreements, promises, and covenants set forth in this Settlement Agreement, including the Releases and Covenant Not to Sue in Article XVI, the Federal Court's entry of the Final Orders and Judgments dismissing the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and the Related Lawsuits, and the Federal Court's approval of the terms and conditions of the Settlement Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, this action shall be settled and compromised under the following terms and conditions:

## Article I–Definitions

1.1    For the purposes of this Settlement Agreement, the following terms (designated by initial capitalization throughout this Settlement Agreement) will have the meanings set forth in this Section.

1.2    Unless the context requires otherwise, (i) words expressed in the masculine will include the feminine and neuter gender and vice-versa; (ii) the word "will" shall be construed to have the same meaning and effect as the word "shall"; (iii) the word "or" will not be exclusive; (iv) the word "extent" in the phrase "to the extent" will mean the degree to which a subject or other thing extends, and such phrase will not simply mean "if"; (v) references to "day" or "days" in the lower case are to calendar days, but if the last day is a Saturday, Sunday, or legal holiday (as defined in Fed. R. Civ. P. 6(a)(6)), the period will continue to run until the end of the next day that is not a Saturday, Sunday, or legal holiday; (vi) references to this Settlement Agreement will include all exhibits, schedules, and annexes hereto; (vii) references to any law will include all rules and regulations promulgated thereunder; (viii) the terms "include," "includes," and "including" will be deemed to be followed by "without limitation," whether or not they are in fact followed by such words or words of similar import; and (ix) references to dollars or "$" are to United States dollars.

1.3    "Adult" shall mean any person 18 years or older.

1.4    "Adult Exposure Subclass" means all persons who were Adults during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who

are claiming or could claim a resulting personal injury. All Adults listed on Exhibit 1 are excluded from this Subclass.

1.5 "Adverse Notice" means the notice issued by the Claims Administrator: (i) pursuant to Paragraphs 3.15 and 3.17 to any person who has failed to submit all information required by the Registration Form, or failed to timely submit the Registration Form, or has been found to be ineligible to register to participate in the Settlement Program, (ii) pursuant to Paragraph 3.34 to any Claimant who has not timely submitted all proper, complete, and fully executed Claims Materials, or (iii) pursuant to Paragraph 21.12 to any Next Friend that has failed to submit proofs necessary to demonstrate that they meet the requirements to act as a Next Friend for a Minor or LII.

1.6 "Amended Master Complaint" means the Amended Master Complaint in *Walters v. Governor Richard Snyder*, 5:17-cv-10164.

1.7 "Business Economic Loss Subclass" means all individuals or entities who owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss. Excluded from the Business Economic Loss Subclass are all local, state, or federal government offices or entities and any individual or entity listed on Exhibit 1.

1.8 "Claimant" means a person or entity who has timely submitted a proper, complete, and fully executed Registration Form in order to participate in the Settlement Program.

1.9 "Claim Form" means the form at Exhibit 2 and any required proofs as set forth in Paragraph 3.19.1.

1.10 "Claims Administrator" means ARCHER Systems, LLC, which shall be appointed by the Federal Court, to perform the responsibilities assigned to the Claims Administrator under this Settlement Agreement.

1.11 "Claims Material" means the Claim Form and required proofs, Release(s), and Lien Disclosure Form as set forth in Paragraphs 3.19.1–3.19.3.

1.12 "Class Action" means the Fourth Consolidated Amended Class Complaint and any putative class actions that are part of the Related Lawsuits, including but not limited to those lawsuits listed on Exhibit 3.

1.13 "Class Settlement Notice" means that notice agreed to by Co-Lead Class Counsel and Defendants' Counsel, and as approved by the Court in the Preliminary Approval Order applicable to Settlement Class.

1.14   "CMS" means the Centers for Medicare & Medicaid Services, the agency within the United States Department of Health and Human Services responsible for administration of the Medicare Program and the Medicaid Program.

1.15   "Co-Lead Class Counsel" means Theodore J. Leopold of Cohen Milstein Sellers & Toll PLLC and Michael L. Pitt of Pitt McGehee Palmer & Rivers, P.C.

1.16   "Co-Liaison Counsel" means Corey M. Stern of Levy Konisberg, LLP and Hunter Shkolnik of Napoli Shkolnik, PLLC.

1.17   "Defendants' Counsel" means Assistant Attorney General Richard S. Kuhl of the Michigan Department of Attorney General for the State Defendants, and Assistant City Attorney William Y. Kim of the Flint Law Department and Fredrick A. Berg of Butzel Long, P.C. for the City of Flint, J. Brian MacDonald of Cline, Cline & Griffin, P.C. and Susan E. Smith of Beveridge & Diamond, P.C. for the McLaren Defendants, and Craig S. Thompson of Sullivan, Ward, Patton, Gleeson & Felty, P.C. for Rowe.

1.18   "Defendants" means the entities and persons participating in this settlement that are or were defendants in any federal or state court, both trial and appellate, in which claims have been made or notices of intention to file a claim under the Michigan Court of Claims Act, Mich. Comp. Laws § 600.6431, asserting personal injury, property damage or economic loss as a result of exposure to water received from the Flint Water Treatment Plant, or any bills paid for such water, at any time during the Exposure Period, including:  State of Michigan; Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy); Michigan Department of Health and Human Services; Michigan Department of Treasury; former Governor Richard D. Snyder; Governor Gretchen Whitmer; the City of Flint; the Flint Receivership Transition Advisory Board; Darnell Earley; Howard Croft; Michael Glasgow; Gerald Ambrose; Edward Kurtz; Michael Brown; Dayne Walling; Daugherty Johnson; Liane Shekter Smith; Daniel Wyant; Stephen Busch; Kevin Clinton; Patrick Cook; Linda Dykema; Michael Prysby; Bradley Wurfel; Eden Wells; Nick Lyon; Dennis Muchmore; Nancy Peeler; Robert Scott; Adam Rosenthal; Andy Dillon; McLaren Regional Medical Center, McLaren Flint Hospital, McLaren Health Care Corporation, and Rowe Professional Services Company.  Any other entity or person that decides to participate in this Settlement Agreement may be added as a Defendant by written agreement of Plaintiffs' Counsel and Defendants' Counsel.

1.19   "Effective Date" shall mean the date that the Settlement Agreement becomes Final as set forth in Paragraphs 8.12.1–8.12.6.

1.20   "Execution Date" means the earliest date by which all Plaintiffs' Counsel and Defendants' Counsel have signed this Settlement Agreement.

1.21   "Exposure Period" means April 25, 2014 to the Execution Date.

1.22  "Favorable Notice" means the notice issued by the Claims Administrator pursuant to Paragraph 3.33 to a Claimant who has timely submitted all proper, complete, and fully executed Claims Materials.

1.23  "Federal Court" means the United States District Court for the Eastern District of Michigan, Judge Judith E. Levy (or any successor judge designated by the United States District Court for the Eastern District of Michigan), presiding in *In re Flint Water Cases*, 5:16-cv-10444, *Carthan v. Governor Rick Snyder*, 5:16-cv-10444, *Walters v. Governor Richard Snyder*, 5:17-cv-10164, and certain Related Lawsuits.

1.24  "Final Orders and Judgments" means the final judgments and orders entered by the Federal Court as to the Individual Plaintiffs, the Settlement Class, and unrepresented Claimants on terms substantially consistent with the terms of this Settlement Agreement.

1.25  "Final Settlement Agreement" means the agreement that becomes final upon the completion of all events listed in Paragraphs 8.12.1–8.12.6.

1.26  "Flint Defendants" mean The City of Flint, Howard Croft, Michael Glasgow, Dayne Walling, and Daugherty Johnson (collectively "City Personnel") and Gerald Ambrose, Edward Kurtz, Darnell Earley, and Michael Brown (collectively "Emergency Managers").

1.27  "Flint Water Treatment Plant" is the facility at 4500 Dort Highway, Flint, MI 48506 that treats and distributes water to Flint residents and service areas identified on Exhibit 4.

1.28  "Fourth Consolidated Amended Class Complaint" means the Fourth Consolidated Amended Class Complaint for Injunctive and Declaratory Relief, Money Damages, and Jury Demand filed in *Carthan v. Governor Rick Snyder*, 5:16-cv-10444.

1.29  "Future Minor Claimant" means a person that was less than eighteen (18) years of age as of the date they first ingested or came into contact with water received from the Flint Water Treatment Plant during the Exposure Period, and failed for any reason to timely register for the Settlement Program or did not receive a Favorable Notice prior to the date that the lists are posted in Paragraph 3.36.

1.30  "FWC Qualified Settlement Fund" shall be a fund established within the meaning of Treas. Reg. § 1.468B-1, and that will be established for purposes of Defendants paying or causing to be deposited the Settlement Amount.

1.31  "Governmental Payor" shall mean any federal, state, or other governmental body, agency, department, plan, program, or entity that administers funds, pays, contracts for, or provides medical items, services, and/or prescription drugs, including, but not limited to, Medicare, Medicaid, Tricare, the Department of Veteran Affairs, and the Department of Indian Health Services.

7

1.32   "HIPAA" means the administrative simplification provisions of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) (codified as amended in scattered sections of 42 U.S.C.) and the implementing regulations issued by the United States Department of Health and Human Services thereunder, and incorporates by reference the provisions of the Health Information Technology for Economic and Clinical Health Act (Title XIII of Division A and Title IV of Division B of the American Recovery and Reinvestment Act of 2009, Pub. L. No. 111-5 (2009)) pertaining to Protected Health Information.

1.33   "Individual Plaintiffs" means all persons and entities listed on Exhibit 1.

1.34   "Legally Incapacitated or Incompetent Individual" or "LII" means an individual described in Mich. Comp. Laws § 700.1105(a).

1.35   "Lien" means any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, pledge, charge, entity, where there is a legal obligation to withhold payment of a Monetary Award, Supplemental Monetary Award, Derivative Claimant Award, or some portion thereof, to anyone settling under the Settlement Program under applicable federal or state law.

1.36   "Lien Disclosure Form" means the form and any required proofs described at Paragraph 3.19.3.

1.37   "Lien Resolution Administrator" means ARCHER Systems, LLC and MASSIVE, which shall be appointed by the Court to perform the responsibilities assigned to the Lien Resolution Administrator under this Settlement Agreement.

1.38   "Master GAL" means the guardian ad litem appointed by the Genesee County Circuit Court and Federal Court to supervise the Panel GALs and review Adverse Notices as set forth in Article XXI–Minors and LIIs, to supervise the Settlement Planning Administrator, and to carry out and to perform any other responsibilities assigned to the Master GAL under this Settlement Agreement or by the Federal Court or Genesee County Circuit Court.

1.39   "McLaren Defendants" means McLaren Health Care Corporation, McLaren Regional Medical Center, and McLaren Flint Hospital.

1.40   "Mediators" means former Wayne County Chief Pro Tem Judge Pamela Harwood and Senator Carl Levin (retired).

1.41   "Medicaid Program" means the federal program administered by the states under which certain medical items, services, and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1 *et seq*. Medicare Part C or Part D Program" means the program(s)

8

under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with CMS.

1.42    "Medicare Program" means the Medicare Parts A and B federal program administered by CMS under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*

1.43    "Michigan ABLE account" shall mean the Michigan Achieving A Better Life Experience Program Act, Mich. Comp. Laws § 206.981 *et seq.*

1.44    "Minor" means any Claimant participating in the Settlement Program that will be less than eighteen (18) years of age at the time an election is made by a Next Friend from the options on how a Monetary Award should be distributed as set forth in Paragraph 21.28.

1.45    "Minor Adolescent" means any person that was seven (7) years of age through eleven (11) years of age as of the date they first ingested or came into contact with water received from the Flint Water Treatment Plant during the Exposure Period.

1.46    "Minor Child" means any person that was six (6) years of age and under as of the date they first ingested or came into contact with water received from the Flint Water Treatment Plant during the Exposure Period.

1.47    "Minor Teen" means any person that was twelve (12) years of age through seventeen (17) years of age as of the date they first ingested or came into contact with water received from the Flint Water Treatment Plant during the Exposure Period.

1.48    "Monetary Award" means the payment of money from the Sub-Qualified Settlement Funds to a Claimant as set forth in Article V–Monetary Awards.

1.49    "MSP Laws" means the Medicare Secondary Payer Act set forth at 42 U.S.C. § 1395y(b), as amended from time to time, and implementing regulations, and other applicable written CMS guidance.

1.50    "Next Friend" shall mean an individual who is appointed under the order required under Paragraph 21.3 to represent the interests of another individual who lacks legal capacity to act on his or her own behalf due to being a Minor, or due to physical or mental impairment, and have been determined to lack legal capacity, being an LII.

1.51   "Opt-Out Deadline" shall mean the end of the period to request exclusion from the Settlement Class that will be established by the Federal Court and set forth in the Class Settlement Notice.

1.52   "Panel GAL" means the guardians ad litem appointed by the Genesee County Circuit Court and Federal Court to determine, as set forth in Article XXI–Minors and LIIs, if a Monetary Award is fair, reasonable, adequate, and in the best interests of a particular Minor or LII.

1.53   "Parties" means Plaintiffs and Defendants.

1.54   "Plaintiffs' Counsel" means Co-Lead Class Counsel and Co-Liaison Counsel.

1.55   "Plaintiffs" means plaintiffs in any federal or state lawsuit or whom have filed notices of intent to sue or notices of intention to file a claim under the Michigan Court of Claims Act, Mich. Comp. Laws § 600.6431, asserting Defendants are liable for personal injury, property damage or economic loss incurred as a result of exposure to water received or purchased from the Flint Water Treatment Plant, or any bills for such water, at any time during the Exposure Period, including all Individual Plaintiffs, Class and Subclass Representatives, and Settlement Class Members.  Plaintiffs shall not include the plaintiff in *Attorney General Dana Nessel, et. al. v. Veolia North America, Inc., et. al.*, Docket No. 16-107576-NM (Genesee County Circuit Court).

1.56   "Preliminary Approval Orders" means the orders, upon entry by the Federal Court, preliminarily approving the Case Management Order implementing the Settlement Agreement as to the Individual Plaintiffs referred to in Paragraphs 8.3–8.4 and conditionally certifying the Settlement Class and preliminarily approving the Settlement Agreement as to the Settlement Class as set forth in Paragraph 8.8.

1.57   "Property Damage Subclass" means all Adults or entities who owned or were the lessee of residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period.  Excluded from the Property Damage Subclass are all local, state, or federal government entities which own real property and any individual or entity listed on Exhibit 1.

1.58   "Protected Health Information" means individually identifiable health information, as defined in 45 C.F.R. § 160.103.

1.59   "QSF Administrator" means ARCHER Systems, LLC, which shall be appointed by the Federal Court to perform the responsibilities assigned to the QSF Administrator under this Settlement Agreement.

1.60 "Reconsideration Notice" means the Notice issued by the Claims Administrator informing a Claimant of the determination made on a Reconsideration Request as set forth in Paragraph 13.4.

1.61 "Reconsideration Request" means a Claimant's or Next Friend's request that the Claims Administrator reconsider its determination in an Adverse Notice or of the Settlement Category assigned in a Favorable Notice as set forth in Paragraphs 13.2–13.3.

1.62 "Registration Form" means the form at Exhibit 5, and any accompanying proofs, that must be submitted to demonstrate eligibility to participate in the Settlement Program as set forth in Paragraph 3.8.

1.63 "Related Lawsuits" means any notice or notices of intention to file a claim under the Michigan Court of Claims Act, Mich. Comp. Laws § 600.6431, or action in state or federal court, both trial and appellate, in which Individual Plaintiffs or Putative Class Members are alleging Defendants are liable for personal injury, property damage or economic loss as a result of the receipt of or exposure to water from the Flint Water Treatment Plant, or any bills paid for such water, at any time during the Exposure Period, including but not limited to those actions listed on Exhibit 6.

1.64 "Release" means the form at Exhibit 7 as set forth in Paragraph 3.19.2.

1.65 "Released Claims" means those claims released pursuant to Paragraphs 16.1–16.5 of this Settlement Agreement.

1.66 "Releasees" and "Released Parties" shall refer jointly and severally, individually and collectively to Defendants and their past and present, direct and indirect, parents, subsidiaries, affiliates, offices, departments, agencies, commissions, boards, officials, directors, employees, agents (including, but not limited to, brokers and landmen), attorneys, insurers, financial and business advisors, trusts, trustees, partners or general or limited partnerships, servants, and representatives (and any of the foregoing listed individuals' or entities' past and present officers, directors, employees, agents (including, but not limited to brokers and landmen), attorneys, financial and business advisors, trusts, trustees, partners or general or limited partnerships, servants, and representatives), and the predecessors, successors, heirs, spouses, family members, estate executors, administrators, insurers, and assigns of each of the foregoing. Veolia Water North America Operating Services, LLC, Veolia North America, LLC, Veolia North America, Inc., Veolia Environnement, S.A., Lockwood Andrews & Newnam, P.C., Lockwood, Andrews & Newnam, Inc., Leo A. Daly Company, United States of America, and United States Environmental Protection Agency, and their affiliates, are excluded from the definition of "Releasees" and "Released Parties".

11

1.67   "Releasors" shall refer jointly and severally, individually and collectively to Plaintiffs, Individual Plaintiffs, and Claimants that participate in the Settlement Program and all Settlement Class Members, and their respective past and present, direct and indirect, parents, guardians, conservators, fiduciaries, next friends, next of kin, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, and representatives (and any of the foregoing listed individuals' or entities' past and present officers, directors, employees, agents, attorneys, servants, and representatives), any person who may be a claimant under Michigan's Wrongful Death Act, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing.  Any person or entity that has timely and validly elected to opt-out of the Settlement Class shall not be directly or indirectly a "Releasor".

1.68   "Rowe" shall mean Rowe Professional Services Company.

1.69   "Settlement Agreement" means this Amended Settlement Agreement and all accompanying exhibits, schedules, annexes, and any subsequent amendments thereto and any exhibits to such amendments, all of which supersede and replace the previous August 12, 2020 settlement agreement and settlement escrow agreement executed by certain parties to this Settlement Agreement

1.70   "Settlement Amount" means the total amount set forth in Paragraphs 2.1.1–2.1.4.

1.71   "Settlement Category" means those categories set forth in Exhibit 8.

1.72   "Settlement Class" means all persons or entities who are or could be claiming personal injury, property damage, business economic loss, unjust enrichment, breach of contract, or seeking any other type of damage or relief because at any time during the Exposure Period they:  (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant.  Excluded from the Settlement Class are:  (1) Defendants; (2) the judicial officers to whom this case is assigned in the Federal Court, Genesee County Circuit Court, and Court of Claims, their staff, and the members of their immediate families; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt-out of the Settlement Class.

1.73   "Settlement Class Member" means each member of the Settlement Class certified by the Federal Court who has not timely and validly elected to opt-out of the Settlement Class.

1.74 "Settlement Class Notice" means that notice agreed to by Co-Lead Class Counsel and Defendants' Counsel, and as approved by the Federal Court in the Preliminary Approval Order applicable to Class Members, as set forth in Paragraph 8.8.

1.75 "Settlement Class Representatives" means Elnora Carthan; Rhonda Kelso; Darrell and Barbara Davis; Michael Snyder, as personal representative of the estate of John Snyder; David Munoz; Tiantha Williams; Frances Gilcreast; Neil Helmkay; and 635 South Saginaw LLC.

1.76 "Settlement Preservation Trust" shall mean the trust to be submitted for review and approval by the Genesee County Circuit Court as described in Paragraph 21.30. Settlement Preservation Trusts are generally for individuals who are not receiving means-tested government benefits, such as SSI, Medicaid, Social Security Disability Insurance, or Childhood Disabled Beneficiary Benefits.

1.77 "Special Master" means Deborah Greenspan, Esq. of Blank Rome LLP.

1.78 "Special Needs Trust" means the Special Needs Trust to be submitted for review and approval by the Genesee County Circuit Court as described in Paragraph 21.30. A Special Needs Trust is generally designed to provide a person with a disability with assets that are considered an exempt source for purposes of determining eligibility for means-tested government benefits, such as SSI, Medicaid, Social Security Disability Insurance, or Childhood Disabled Beneficiary Benefits.

1.79 "Special Purpose FWC Settlement Entity" means the trust or other entity to be created or identified to: receive the annual payments caused to be made by the State Defendants; make an application to the Michigan Strategic Fund to obtain a loan, the proceeds of which will benefit the FWC Qualified Settlement Fund and Plaintiffs; make the payment into the FWC Qualified Settlement Fund; and fulfill the other responsibilities as set forth in Paragraphs 2.4, 2.4.1., and 2.5. If established as a trust, the Special Purpose FWC Settlement Entity has the powers set forth in the Estates and Protected Individuals Code, PA 386 of 1998, as amended. The Plaintiffs require a single lump sum contribution to the FWC Qualified Settlement Fund instead of receipt of the annual payments to be made by the State Defendants, and accordingly require that the Special Purpose FWC Settlement Entity be established to make application to the Michigan Strategic Fund to obtain a loan in order to facilitate a single lump sum contribution to the FWC Qualified Settlement Fund.

1.80 "State Defendants" mean the State of Michigan, Michigan Department of Environmental Quality (now known as Michigan Department of Environment, Great Lakes, and Energy), Michigan Department of Health and Human Services, Michigan Department of Treasury, former Governor Richard D. Snyder, Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Lianne

13

Shekter Smith, Daniel Wyant, Stephen Busch, Patrick Cook, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Nancy Peeler, Robert Scott, Adam Rosenthal, Dennis Muchmore, Kevin Clinton, Linda Dykema, and Andy Dillon.

1.81 "Structured Settlement" means an agreement between the FWC Qualified Settlement Fund or any Sub-Qualified Settlement Fund and an individual Claimant, whereby the Claims Administrator or QSF Administrator agrees to distribute a Monetary Award to a Claimant or fees and expenses to their attorney, as the case may be, by paying, or causing to be paid, future periodic payments. Structured Settlements for Claimants and attorneys will be underwritten by an annuity contract issued by a company licensed to do business as an insurance company under the laws of the State of Michigan and that has an issuer credit rating equivalent to a National Association of Insurance Commissioners NAIC 1 designation. Structured Settlements for attorneys shall also be deemed to include any and all financial transactions that defer the receipt of an attorney's fees regardless of whether it is underwritten by an annuity or some other financial or investment product.

1.82 "Settlement Planning Administrator" means Forge Consulting, LLC, which shall be appointed by the Court, to perform the responsibilities assigned to the Settlement Planning Administrator under this Settlement Agreement.

1.83 "Subclasses" means the Adult Exposure Subclass, the Property Damage Subclass, and the Business Economic Loss Subclass.

1.84 "Subclass Counsel" means those attorneys appointed by the Federal Court to address allocation of the Settlement Amount for the Subclasses (ECF No. 929).

1.85 "Sub-Qualified Settlement Funds" means the Minor Child Sub-Qualified Settlement Fund, Minor Adolescent Sub-Qualified Settlement Fund, Minor Teen Sub-Qualified Settlement Fund, Future Minor Sub-Qualified Settlement Fund, Adults and Property Damage Sub-Qualified Settlement Fund, Business Economic Loss Sub-Qualified Settlement Fund, and Programmatic Relief Sub-Qualified Settlement Fund, which shall all be established within the meaning of Treas. Reg. § 1.468B-1, that will be established for purposes of receiving the net funds from the FWC Qualified Settlement Fund for distribution to Claimants that have been found eligible to participate in the Settlement Program.

1.86 "Tricare" means the federal program managed and administered by the United States Department of Defense through the Tricare Management Activity under which certain medical items, services, and/or prescription drugs are furnished to eligible members of the military services, military retirees, and military dependents under 10 U.S.C. § 1071 *et seq.*

14

1.87   "Walk-Away Rights" means Defendants' rights to rescind, terminate, or cancel this Settlement Agreement as set forth in Article XVIII–Walk-Away Provisions.

## Article II–Payments by Defendants

2.1   Plaintiffs, by and through their counsel, and Defendants, by and through their counsel, agree that, in consideration of the Releases and Covenant Not to Sue set forth in Article XVI, and the dismissal with prejudice of the Fourth Consolidated Amended Class Complaint, the Amended Master Individual Complaint, and the Related Lawsuits, and subject to the terms and conditions of this Settlement Agreement, Defendants will, in addition to other obligations set forth in this Settlement Agreement severally pay or cause to be paid the following agreed amounts into the FWC Qualified Settlement Fund:

2.1.1   State Defendants shall pay $600,000,000;

2.1.2   Flint Defendants shall pay $20,000,000;

2.1.3   McLaren Defendants shall pay $20,000,000; and

2.1.4   Rowe shall pay the remaining balance on XL Specialty Insurance Company policy number DPR9800523, or $1,250,000, whichever amount is greater as of the due date for the payment of the Rowe agreed amount pursuant to Paragraph 2.3.

2.2   Each Defendant will only be liable for its agreed amount, and under no circumstance for any greater amount.  Defendants are not jointly liable for the whole amount to be paid into the FWC Qualified Settlement Fund.

2.3   Flint Defendants and Rowe shall pay their agreed amount, McLaren Defendants will pay $10,000,000 of their agreed amount, and State Defendants will pay $5,000,000 of their agreed amount, into the FWC Qualified Settlement Fund on or before fifteen (15) calendar days after the Federal Court enters the Preliminary Approval Orders relating to this Settlement Agreement.  State Defendants shall cause to be paid the remainder of their agreed amount into the FWC Qualified Settlement Fund, in the manner described below, on or before the dates set forth in Paragraphs 2.4 and 2.4.1.  McLaren Defendants shall cause to be paid the remainder of their agreed amount into the FWC Qualified Settlement Fund on or before October 10, 2021.

2.4   State Defendants shall pay the remainder of their agreed amount by making annual payments to the Special Purpose FWC Settlement Entity on a schedule approximately equal to the schedule set forth as Exhibit 9.  State Defendants are aware that the Special Purpose FWC Settlement Entity intends to make an application to the Michigan Strategic Fund to obtain a loan against these

15

future years' payments. The proceeds of the loan shall be paid solely and exclusively into the FWC Qualified Settlement Fund and to reimburse the State Defendants for the $5,000,000 paid by the State into the FWC Qualified Settlement Fund as set forth in Paragraph 2.3. To facilitate this process, State Defendants agree, within reason, to modify the precise method, schedule, and termination date of the annual payments to the Special Purpose FWC Settlement Entity, as requested by the Special Purpose FWC Settlement Entity and agreed to by the Michigan Strategic Fund in relation to the bond issuance described below. The precise schedule will be provided to Plaintiffs' Counsel after such bonds are issued. To facilitate the bond issuance by the Michigan Strategic Fund, the Special Purpose FWC Settlement Entity shall be authorized to pledge and assign amounts paid and payable by State Defendants to obtain a loan funded from bonds issued by the Michigan Strategic Fund established pursuant to Act 270 of 1984 (as amended). The Special Purpose FWC Settlement Entity shall not be authorized to otherwise pledge or assign the amounts paid and payable by State Defendants.

2.4.1    After the authorizations, appropriations, approvals, and amendments set forth in Paragraph 2.5 are obtained, the trustee or other authorized agent for the Special Purpose FWC Settlement Entity will submit an application to the Michigan Strategic Fund with all necessary information to obtain a loan for the amount to be paid by the State Defendants under Paragraph 2.1.1. The Michigan Strategic Fund is expected to issue bonds to obtain such funds to loan to the Special Purpose FWC Settlement Entity. It is anticipated that the Michigan Strategic Fund will provide those loan proceeds to the Special Purpose FWC Settlement Entity on or before the latter of (a) March 1, 2021 or (b) one hundred-eighty (180) calendar days after the Federal Court enters the Preliminary Approval Orders relating to this Settlement Agreement. The Special Purpose FWC Settlement Entity will pay or cause to be paid the FWC Qualified Settlement Fund from such proceeds the remaining amount to be paid by the State Defendants under Paragraph 2.1.1. within five (5) days of receipt of the loan proceeds. The Special Purpose FWC Settlement Entity will repay the Michigan Strategic Fund in accordance with the precise schedule to be provided to Plaintiffs' Counsel after the bonds mentioned above are issued.

2.5    State Defendants' obligation to pay is subject to their ability to obtain legislative authorization, appropriation, and approval to pay the above sums into the Special Purpose FWC Settlement Entity, and to amend the Michigan Strategic Fund Act to authorize that Fund to issue bonds and make a loan to the Special Purpose FWC Settlement Entity. If State Defendants fail to obtain that authorization, appropriation, approval, and amendment within one hundred and twenty days after the entry of the Preliminary Approval Orders or the Michigan Strategic Fund fails to

16

make the loan to the Special Purpose FWC Settlement Entity, this Settlement Agreement shall be cancelled and rescinded as set forth in Article XVII–Rescission.

2.6    Flint Defendants' obligation to pay is subject to their ability to obtain Flint City Council authorization, appropriation, and approval to pay the above sums into the FWC Qualified Settlement Fund.  If the Flint Defendants fail to obtain that authorization, appropriation, and approval by December 31, 2020 then the Flint Defendants' participation in this Settlement Agreement shall be cancelled and rescinded as set forth in Article XVII-Rescission.

2.7    The funds paid into the FWC Qualified Settlement Fund from or on behalf of the Defendants, the initial payment from the State Defendants and the loan proceeds from the Michigan Strategic Fund shall be used to satisfy Monetary Awards to Claimants or Future Minor Claimants pursuant to the requirements and criteria set forth in this Settlement Agreement, and to pay any other amounts, costs, fees, and expenses permitted by this Settlement Agreement.

### Article III–Registration for and Participation in Settlement Program

3.1    Upon entry of the Preliminary Approval Orders, Plaintiffs' Counsel in conjunction with the Claims Administrator will establish and maintain a public website containing information about the Settlement Agreement, including the Settlement Class Notice, the Individual Notice, and "Frequently Asked Questions."

3.2    The website will be maintained by the Claims Administrator, who will post all necessary information about the Settlement Agreement, including information about Registration Forms, Claims Materials, deadlines, and Settlement Categories.  All content posted on the website will be subject to advance approval by Plaintiffs' Counsel and Defendants' Counsel.

3.3    The Claims Administrator will establish and administer both online and hard copy forms, to be pre-approved by Plaintiffs' Counsel and Defendants' Counsel, for persons and entities to register and participate in the Settlement Program.

3.4    Each person or entity seeking to participate in the Settlement Program must, as more fully set forth below, both register and provide required information regarding their claims.

### A.    Requirements for Registration of Persons and Entities

3.5    Persons or entities are eligible to register to participate in the Settlement Program if during the Exposure Period they:  (1) owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water; (2) owned or operated a business that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water; (3) ingested or came into contact with water received

17

from the Flint Water Treatment Plant for at least twenty-one (21) days during any thirty (30) day period during the Exposure Period; or (4) during the time period April 25, 2014 through December 31, 2018 were both exposed to water received from the Flint Water Treatment Plant and diagnosed with Legionnaires' Disease.

3.6     Each Plaintiff that is eligible may register to become a Claimant and to receive a Monetary Award from the FWC Qualified Settlement Fund.

3.7     It is not necessary for a person or entity to be a Plaintiff or to retain or enter into a representation agreement with a lawyer to participate in the Settlement Program. Any unrepresented person or entity that is eligible may register to become a Claimant and receive a Monetary Award. However, any unrepresented Minor or LII shall be required to participate through a Next Friend meeting the requirements of Paragraph 21.3.

3.8     In order to participate in the Settlement Program, persons and entities must submit the Registration Form at Exhibit 5. All Registration Forms and required proofs shall be submitted to the Claims Administrator under penalty of perjury.

3.9     Beginning on the date the Federal Court signs the Preliminary Approval Orders, each eligible person or entity shall have sixty (60) days to register as a Claimant with the Settlement Program.

3.10    No Class Member who fully and finally opts out pursuant to Article XIX–Opt-Outs shall be entitled to submit a Registration Form.

3.11    Specific processes and procedures for the registration of Minors and LIIs are set forth in Article XXI–Minors and LIIs.

3.12    Any person or entity who does not submit a proper, complete, and fully executed Registration Form within sixty (60) days from the date the Federal Court signs the Preliminary Approval Orders will be ineligible to participate in the Settlement Program and will not receive a Monetary Award. Any Individual Plaintiff or Claimant that participates in the Settlement Program and all Settlement Class Members (excluding opt-outs from the Settlement Class) will be considered a Releasor for purposes of this Settlement Agreement and will be subject to Article XVI–Releases and Covenants Not to Sue. This Paragraph shall not apply to Future Minor Claimants.

**B.     Review of Registration Forms**

3.13    Upon receipt of a Registration Form, the Claims Administrator will review the information and proofs provided to determine whether all required

18

information has been submitted and whether the Registration Form was timely submitted.

3.14   The Claims Administrator shall consult with the Special Master on discretionary decisions that must be made during the review process.  The Claims Administrator will implement any decision of the Special Master subject to any Claimant's right to seek reconsideration or appeal any such decision as set forth in Article XIII–Reconsideration Request and Appeals.

3.15   Within fourteen (14) days of receipt of a Registration Form, the Claims Administrator will issue an Adverse Notice to any person or entity who has failed to submit all information required by the Registration Form or has been found to be ineligible to participate in the Settlement Program.  The Adverse Notice will explain why the Registration Form was rejected.   To the extent that the volume of submissions so requires, the fourteen (14) day deadline may be extended by the Special Master.

3.16   Within fourteen (14) days following the receipt of such Adverse Notice, the person or entity receiving an Adverse Notice shall be entitled to re-submit a Registration Form once, prior to the registration deadline set forth in Paragraph 3.12, submitting additional information or correcting the deficiency identified in the Adverse Notice as being the reasons for rejection by the Claims Administrator.

3.17   Within fourteen (14) days of receipt of a re-submitted Registration Form pursuant to Paragraph 3.16, the Claims Administrator will issue an Adverse Notice to any person or entity who has failed to submit all information required by the Registration Form, failed to timely re-submit the Registration Form, or has been found to be ineligible to register to participate in the Settlement Program.   The Adverse Notice will explain the reasons the re-submitted registration was rejected. To the extent that the volume of submissions so requires, the fourteen (14) day deadline may be extended by the Special Master.

3.18   Following the expiration of the registration deadline set forth in Paragraph 3.12 plus an additional twenty-eight (28) days for the submittal and review of any re-submitted Registration Forms and an additional two (2) days to prepare the final list, the Claims Administrator will promptly post on the secure website and provide to Plaintiffs' Counsel and Defendants' Counsel a list of all persons and entities who have registered and been found eligible to participate as a Claimant in the Settlement Program.

## C.   Claims Materials Required to be Submitted to Participate in the Settlement Program

3.19   Claimants shall have one hundred and twenty (120) days from the date the list required by Paragraph 3.18 is posted on the secure website to deliver to the

Claims Administrator, using a method prescribed by the Claims Administrator, the following Claims Materials:

> 3.19.1   A Claim Form including required proofs in the form of Exhibit 2;

> 3.19.2   A fully completed and executed Release in the form of Exhibit 7 (a Next Friend or the fiduciary shall complete and execute on behalf of their respective Minor or LII a Release in the form of Exhibit 15 and may have to later complete and execute an additional Release as set forth in Paragraph 21.16).  Any Claimant listed on Exhibit 19 must also complete and execute a release addendum in the form of Exhibit 21; and

> 3.19.3   The applicable Lien Disclosure Forms attached at Exhibit 10.

3.20   All Claims Materials delivered to the Claims Administrator must be properly and fully completed in accordance with the directions on the forms.

3.21   Specific processes and procedures for Minors and LIIs to deliver Claims Materials are set forth in Article XXI–Minors and LIIs.

3.22   Any Claimant who fails to deliver proper, complete, and fully executed Claims Materials within one hundred and twenty (120) days from the date the list required by Paragraph 3.18 is posted on the secure website  shall not be able to participate in the Settlement Program and shall not receive a Monetary Award.  Any such Claimant that is a Settlement Class Member will still be considered a Releasor for purposes of this Settlement Agreement and shall be subject to Article XVI–Releases and Covenants Not to Sue.  Nothing stated in this Paragraph shall be construed as prohibiting a Future Minor Claimant from seeking a Monetary Award pursuant to Article VI–Future Minor Claimants.

3.23   The purpose of the Claim Form is to simplify and streamline the Claims Administrator's work to the extent reasonably possible and to ensure consistency of awards among individual Claimants.

3.24   The Claim Form will permit a Claimant to select a Settlement Category that he or she believes is applicable.  The Settlement Categories are set forth in Article IV–Settlement Categories.  The Claims Administrator shall assign the appropriate Settlement Category based upon the provided Claims Materials.  The Claims Administrator may seek advice from the Special Master if any questions arise as to the applicable Settlement Category for any Claimant.  If the Claims Administrator believes that a Settlement Category different from that selected by Claimant is applicable, after consulting with and receiving confirmation from the Special Master, the Claims Administrator shall assign that Settlement Category to

the Claimant, subject to any Claimant's right to make a Reconsideration Request or take an appeal as set forth in Article XIII–Reconsideration Requests and Appeals.

3.25    The Claim Form will identify each Settlement Category, including the information and proofs that must be submitted to qualify for each Settlement Category.

3.26    The Claims Materials shall be submitted to the Claims Administrator under penalty of perjury.

3.27    A Claimant has the responsibility to meet the requirements necessary to participate in the Settlement Program and the responsibility to timely deliver to the Claims Administrator the Claims Materials necessary to establish that they have met the requirements to participate in the Settlement Program.

3.28    None of the FWC Qualified Settlement Fund, Defendants, Claims Administrator, Special Master nor the Settlement Planning Administrator shall have any obligation to pay or reimburse a Claimant for costs and expenses incurred in preparing or submitting a Registration Form or Claims Materials, or for any other requirements necessary to participate in the Settlement Program.

3.29    A Claimant's Claims Materials, including the proofs submitted with the Claim Form, shall constitute a Claimant's entire submission to the Claims Administrator.  If the Claims Administrator requests additional information from a Claimant, such additional information will be provided to the Claims Administrator within the time required by the Claims Administrator and then included in the Claimant's Claims Materials.  For sake of efficiency and to ensure fairness and objectivity, no Claimant shall be entitled to a live hearing with the Claims Administrator, nor shall any Claimant communicate with the Claims Administrator in any manner not set forth in this Settlement Agreement.

3.30    If this Settlement Agreement does not become a Final Settlement Agreement pursuant to Article VIII(C), or is rescinded pursuant to Articles XVII, XVIII, or XIX, any and all executed Releases shall have no force or effect and shall be returned to Plaintiffs' Counsel.

### D.    Review of Claims Material

3.31    Within forty-five (45) days of receipt of a Claimant's Claims Materials, the Claims Administrator will either issue a Favorable Notice or Adverse Notice informing the Claimant whether or not the Claimant has met the requirements necessary to participate in the Settlement Program.  To the extent that the volume of submissions requires, the forty-five (45) day deadline may be extended by the Special Master.

3.32    The Claims Administrator shall consult with the Special Master on discretionary decisions that must be made during this process. The Special Master may at her discretion request access to a Claimant's Claims Materials in order to make a decision. The Claims Administrator will implement any decision of the Special Master subject to any Claimant's right to seek reconsideration or appeal any such decision as set forth in Article XIII–Reconsideration Request and Appeals.

3.33    Favorable Notices will be issued to Claimants who have been determined by the Claims Administrator to have timely submitted all proper, complete, and fully executed Claims Materials and will include information regarding the Settlement Category assigned to that person by the Claims Administrator.

>    3.33.1    If the Claims Administrator determines that a Claimant qualifies for more than one (1) Settlement Category as a Minor Child, Minor Adolescent, Minor Teen, or Adult, the Claims Administrator will solely assign the Settlement Category that would result in the projected highest Monetary Award for that Claimant.

3.34    Adverse Notices will be issued to any Claimant who has been determined by the Claims Administrator to not qualify for any Settlement Category, who has not timely submitted all proper, complete, and fully executed Claims Materials, or for whom it is discovered during the review of Claim Materials that such person or entity was not eligible to register to participate in the Settlement Program, and will include information explaining why Claimant does not qualify or why the Claims Materials were rejected as being not timely, proper, complete or fully executed.

3.35    A Claimant may seek reconsideration of or appeal (i) any Adverse Notice or (ii) the Settlement Category assigned by the Claims Administrator in a Favorable Notice. The process and procedures for any such Reconsideration Request and appeal are set forth in Article XIII–Reconsideration Request and Appeals.

3.36    The Claims Administrator will promptly notify Plaintiffs' Counsel and Defendants' Counsel when the time period for Claimants to deliver Claims Materials has passed and all Reconsideration Requests and appeals have been decided. Within sixteen (16) days of providing that notice, the Claims Administrator will post on the secure website and provide to Plaintiffs' Counsel and Defendants' Counsel a list of all Claimants that have been found eligible to participate in the Settlement Program and the Settlement Category assigned to each such Claimant.

## Article IV–Settlement Categories

4.1    The Settlement Categories established under this Settlement Agreement and the proof requirements necessary to qualify for each Settlement Category are as set forth in Exhibit 8. To the extent any direct conflict exists between the terms of the Settlement Agreement and Exhibit 8, the terms of the Settlement

Agreement shall control. If there is any dispute over whether such a direct conflict exists, it shall be submitted to the dispute resolution process in Article XIV–Dispute Resolution.

## Article V–Monetary Awards

5.1    The net funds to be made available from the FWC Qualified Settlement Fund for payment to the Claimants shall equal the amount of the FWC Qualified Settlement Fund less expenses, costs, and attorney fees permitted by the Settlement Agreement or the Final Orders and Judgments.

5.2    The net funds in the FWC Qualified Settlement Fund shall be distributed into the following Sub-Qualified Settlement Funds as follows:

> 5.2.1    Minor Child Sub-Qualified Settlement Fund–64.5% of the net funds in the FWC Qualified Settlement Fund;
>
> 5.2.2    Minor Adolescent Sub-Qualified Settlement Fund–10% of the net funds in the FWC Sub-Qualified Settlement Fund;
>
> 5.2.3    Minor Teen Sub-Qualified Settlement Fund–5% of the net funds in the FWC Qualified Settlement Fund;
>
> 5.2.4    Future Minor Sub-Qualified Settlement Fund–$35,000,000 to be taken on a prorated basis from the total amount allocated to the Minor Child, Minor Adolescent, and Minor Teen Qualified Settlement Funds;
>
> 5.2.5    Adults and Property Damage Sub-Qualified Settlement Fund–18% of the net funds in the FWC Qualified Settlement Fund (15% for Adult Claimants and 3% for Property Damage Claimants);
>
> 5.2.6    Business Economic Loss Sub-Qualified Settlement Fund–0.5% of the net funds in the FWC Qualified Settlement Fund; and
>
> 5.2.7    Programmatic Relief Sub-Qualified Settlement Fund–2% of the net funds in the FWC Qualified Settlement Fund.

5.3    The Settlement Amount for each Sub-Qualified Settlement Fund shall be distributed to provide the Monetary Awards established for each Settlement Category set forth on Exhibit 8. Each Claimant assigned to each Settlement Category (excluding Settlement Category 27B) shall receive the same net Monetary Award, subject to any deductions for lien obligations owed by the Claimant as set forth in Article XV–Liens. Claimants assigned to each identified age group in Settlement Category 27B shall all receive the same gross Monetary Award, subject to any deductions for lien obligations owed by the Claimant as set forth in Article XV-Liens

23

and payment of attorneys' fees and expenses subject to Section 5.4. Such attorneys' fees may be subject to a common benefit assessment if so ordered by the Court.

5.4   If the McLaren Defendants do not exercise the right to rescind, terminate, or cancel their participation in the Settlement Agreement as set forth in Paragraph 18.2 or Article XVII-Rescission, common benefit assessments, attorneys' fees and expenses to be paid by Claimants assigned to Settlement Category 27B shall be determined and subtracted from their Monetary Awards subject to review and approval by the Federal Court. If the McLaren Defendants exercise their right to rescind, terminate, or cancel their participation in the Settlement Agreement as set forth in Paragraph 18.2 or Article XVII-Rescission, common benefit assessments, attorneys' fees and expenses to be paid by Claimants assigned to Settlement Category 27B shall be determined and subtracted from their Monetary Awards pursuant to Article XI-Attorneys' Fees, Costs, and Expenses.

5.5   Prior to distributing the FWC Qualified Settlement Fund into the Sub-Qualified Settlement Funds as set forth in Paragraph 5.6, the Claims Administrator will determine if any excess funds will remain in the Adults and Property Damage Sub-Qualified Settlement Fund and the Business Economic Loss Sub-Qualified Settlement Fund after the disbursement of Monetary Awards to those Claimants. If so, the QSF Administrator shall reassign and transfer the remaining excess funds on a pro-rated basis to and for distribution as Monetary Awards for the Minor Child, Minor Adolescent, and Minor Teen Settlement Categories.

5.6   The QSF Administrator shall distribute the net funds from the FWC Qualified Settlement Fund into the Sub-Qualified Settlement Funds thirty (30) days after both of the following events have occurred: (1) the lists required under Paragraph 3.36 have been provided to Plaintiffs' Counsel, Defendants' Counsel, and the Claims Administrator and (2) the QSF Administrator is advised as set forth in Paragraph 8.14 that the Settlement Agreement has become a Final Settlement Agreement. Monetary Awards from the Sub-Qualified Settlement Funds will subsequently be distributed to Claimants, directly or indirectly through their representing counsel or an applicable third-party assignee in accordance with the terms of this Settlement Agreement and the engagement agreement(s) of Plaintiffs' Counsel with the QSF Administrator (including without limitation, via additional qualified settlement funds established upon request of Plaintiffs' Counsel to further facilitate payment of the Monetary Awards) as soon as reasonably possible.

5.7   No Monetary Award shall be made to a Claimant until all Lien and other fees and cost obligations of the Claimant have been resolved and paid or have been withheld subject to an applicable lien holdback. The Parties intend to and have set forth procedures to fully protect the interests of CMS and all other potential lien holders. As more fully set forth in Article XV–Liens, the Lien Resolution Administrator shall be responsible for determining from information contained in the Lien Disclosure Form or otherwise provided by the Claimant or received from CMS

whether there are any valid health care liens or recovery claims related to this Settlement Agreement that are or may be properly asserted against a Claimant on behalf of Medicare, any Medicare Advantage Organization, State Medicaid program, private insurers or health plans or any other governmental entity that provided or paid for health care services to the Claimant and for resolving any such applicable liens or providing directions for an applicable lien holdback before issuing a settlement payment to any Claimant who is found to have an applicable lien.

5.8     Monetary Awards to Minors and LIIs will be administered and paid only as provided for in Article XXI–Minors and LIIs.

5.9     No Monetary Award shall be paid to a third-party claims filer or claims filing service provider purporting to represent unrepresented persons or entities or Settlement Class Members seeking to register for and participate in the Settlement Program without Federal Court approval.

5.10     No Monetary Award or future payment made as a result of a Monetary Award shall be paid, transferred, alienated, or in any other manner assigned, hypothecated, factored, or pledged to any pre-settlement funding company or post-settlement factoring company. Plaintiffs' interest in the settlement proceeds shall be preserved from any form of assignment, factoring, reduction, offset, garnishment, attachment, liens, and all other claims, legal or equitable process that may be instituted by, or on behalf of a pre-settlement funding company or post-settlement factoring company. This anti-hypothecation and anti-alienation provisions shall also extend and apply to any claim or legal or equitable process instituted by a pre-settlement funding company or post-settlement factoring company against a Plaintiff's settlement proceeds or future benefits of the settlement proceeds.

## Article VI–Future Minor Claimants

6.1     The funds in the Future Minor Sub-Qualified Settlement Fund shall be used to establish a program to provide Monetary Awards to Minors that did not timely register for the Settlement Program or did not receive a Favorable Notice from the Claims Administrator.

6.2     A Future Minor Claimant may register to obtain a Monetary Award under the Settlement Program after this Settlement Agreement becomes Final under the terms and conditions set forth in this Article.

6.3     A Future Minor Claimant seeking to participate in the Settlement Program must comply with the requirements and procedures set forth in Article III–Registration For and Participation in Settlement Program (excluding any deadlines or timing requirements that ran from the date the Federal Court signs the Preliminary Approval Orders).

25

6.4     A Future Minor Claimant must be less than nineteen (19) years of age at the time they first register to seek a Monetary Award from the Future Minor Sub-Qualified Settlement Fund.

6.5     A Monetary Award to a Future Minor Claimant shall not exceed the Monetary Award distributed to a Claimant assigned to the same Settlement Category as set forth in Paragraph 5.3.

6.6     A Monetary Award shall be made to a Future Minor Claimant as soon as reasonably possible after the Claims Administrator issues a Favorable Notice and the time has passed for a Claimant to request Reconsideration and to make an appeal as set forth in Article XIII–Reconsideration Requests and Appeals.  However, in no event shall a Monetary Award be made to a Future Minor Claimant until two (2) years after the Settlement Agreement has become a Final Settlement Agreement.

6.7     No Monetary Award shall be made to a Future Minor Claimant until all Lien and other fees and cost obligations of the Claimant have been resolved and paid.

6.8     Monetary Awards to Future Minor Claimants that are Minors will be administered and paid only as provided for in Article XXI–Minors and LIIs.

6.9     Monetary Awards shall be made to Future Minor Claimants according to the order that (i) a Future Minor Claimant that is an Adult receives a Favorable Notice or (ii) the Next Friend accepts a Favorable Notice issued by the Claims Administrator as set forth in Paragraphs 21.17–21.22 for a Future Minor Claimant that is a Minor.  Any Future Minor Claimant that accepts a Monetary Award shall be considered a Releasor for purposes of Article XVI–Releases and Covenants Not to Sue.

6.10    To the extent that the funds in the Future Minor Sub-Qualified Settlement Fund are exhausted or insufficient to pay all Monetary Awards sought by Future Minor Claimants, the Claims Administrator shall stop accepting any further attempts by Future Minor Claimants to register for the Settlement Program and advise any Future Minor Claimants that have not yet received Monetary Awards that the funds are exhausted or insufficient.  Any Future Minor Claimant that does not receive a Monetary Award because of such exhaustion or insufficient funds will still have the right to file a lawsuit against the Defendants, and if they do so, will be required to comply with the Case Management Order attached as Exhibit 11. Nothing stated in this Settlement Agreement should be construed as a waiver of any right or defense that Defendants have or should have with respect to any such lawsuits, including but not limited to any applicable limitations period.

### Article VII–Programmatic Relief

7.1     The Programmatic Relief Sub-Qualified Settlement Fund shall be used to enable the local school districts and public school academies within the Genesee

Intermediate School District to provide special education services for students who resided in the City of Flint during the Exposure Period and require such services.

7.2     The special education services paid for by the Programmatic Relief Sub-Qualified Settlement Fund shall be provided to eligible students pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. 1400 *et seq.*; Section 504 of the Rehabilitation Act, 29 U.S.C. 794 *et seq.*; and the Michigan Administrative Rules for Special Education, Mich. Admin. Code r. 340.1701 *et seq.*

7.3     The governance of the Programmatic Relief Sub-Qualified Settlement Fund and the amount, timing, supervision, accountability and other criteria for the use, allocation, and distribution of the funds in the Programmatic Relief Sub-Qualified Settlement Fund shall be pursuant to the terms and guidelines established in a separate Settlement Agreement between the Education Law Center, American Civil Liberties Union, Michigan Department of Education, Genesee Intermediate School District, and Flint Community Schools in *D.R. et al., v. Michigan Department of Education*.

## Article VIII–Preliminary Approval Orders, Class Certification, Final Orders, Judgments, and Related Orders

8.1     Individual Plaintiffs and Class Members will either file jointly or separately motion seeking Preliminary Approval Orders and Final Orders and Judgments, which will address the issues unique to each group necessary to implement this Settlement Agreement.

8.2     Although Individual Plaintiffs and Class Members will both seek different types of approval of this Settlement Agreement, Individual Plaintiffs and their counsel will have no obligation to take action or ability to enforce sections of this Settlement Agreement that are solely applicable to Class Members or their counsel. Likewise, Class Members and their counsel will have no obligation to take action or ability to enforce sections of this Settlement Agreement that are solely applicable to Individual Plaintiffs and their counsel.

### A.     Individual Plaintiffs

8.3     Within four (4) business days after the Execution Date, Co-Liaison Counsel shall submit to the Federal Court a motion (which motion Defendants shall have the opportunity to review and approve) requesting entry of a Case Management Order implementing the operative terms of the Settlement Agreement as to Individual Plaintiffs as well as a stay of all proceedings against Defendants, except those proceedings provided for or required by this Settlement Agreement.  The Parties agree to maintain the confidentiality of the Settlement Agreement until the motions referenced in Paragraphs 8.4 and 8.8 are filed.

8.4     The motion shall seek a Case Management Order applicable to Individual Plaintiffs that:

>     8.4.1     Establishes the procedures for implementing the Settlement Agreement;
>
>     8.4.2     Establishes the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds, appoints the QSF Administrator, and approves the allocation and distribution of the funds from the FWC Qualified Settlement Fund into the Sub-Qualified Settlement Funds;
>
>     8.4.3     Appoints ARCHER Systems, LLC as the Claims Administrator and QSF Administrator, Deborah Greenspan as the Special Master, ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator, and Forge Consulting, LLC as the Settlement Planning Administrator;
>
>     8.4.4     Finds that the Individual Notice proposed in the motion fairly and adequately:  (i) describes the terms and effect of this Settlement Agreement; and (ii) constitutes due and sufficient notice of the matters set forth in the notice to all individuals entitled to receive it;
>
>     8.4.5     Establishes the processes and procedures for handling claims by Minors or LIIs as set forth in Article XXI–Minors and LIIs and Article III–Registration for and Participation in Settlement Program; and
>
>     8.4.6     Establishes the processes and procedures for handling any claims subject to Michigan's Wrongful Death Act, Mich. Comp. Laws § 600.2922.

8.5     On a date to be set by the Federal Court, the Co-Liaison Counsel will file a motion seeking entry of a Final Order and Judgment applicable to the Individual Plaintiffs, approval and entry of which shall be a condition of this Settlement Agreement, that:

>     8.5.1     Finds that the Settlement Agreement and Settlement Program with respect to Minors and LIIs, including the processes and procedures in Article XXI–Minors and LIIs, Article III–Registration for and Participation in Settlement Program, Article IV–Settlement Categories, and Article V–Monetary Awards, is fair, reasonable, and adequate;

28

8.5.2    Approves the Settlement Agreement and distribution of any proceeds for any claim brought by an Individual Plaintiff that is subject to Michigan's Wrongful Death Act, Mich. Comp. Laws § 600.2922;

8.5.3    Finds that that the distribution of the FWC Qualified Settlement Fund as provided in this Settlement Agreement should be approved;

8.5.4    Permanently bars, enjoins, and restrains the Releasors from commencing, filing, initiating, asserting, and or maintaining any and all Released Claims against the Releasees;

8.5.5    Dismisses with prejudice solely as to the Releasees the Amended Master Complaint and all Related Lawsuits filed by Individual Plaintiffs pending in the Federal Court without further costs, including claims for interest, penalties, cost, and attorney fees, except for the motions for an award of attorneys' fees and reasonable costs, as set forth in Article XI, which will be made at an appropriate time to be determined by the Federal Court;

8.5.6    Orders all Releasors with Related Lawsuits filed by Individual Plaintiffs pending in any state or federal court, other than the Federal Court, to promptly dismiss with prejudice, and without further costs, including claims for interest, penalties, cost, and attorney fees, all such Related Lawsuits as to the Released Parties, thereby effectuating in part the Releases;

8.5.7    Permanently bars and enjoins the commencement, assertion, and/or prosecution of any claim for contribution and/or indemnity arising out of or related to the Released Claims in the Federal Court, in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum against the Released Parties;

8.5.8    Confirms the appointment of ARCHER Systems, LLC as the Claims Administrator and QSF Administrator, Deborah Greenspan as the Special Master, ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator, and Forge Consulting, LLC as the Settlement Planning Administrator, and confirms that the Federal Court retains continuing jurisdiction over those appointed; and

8.5.9    Expressly incorporates the terms of this Settlement Agreement and provides that the Federal Court retains continuing and exclusive jurisdiction over the Individual Plaintiffs, Defendants, and this Settlement Agreement, solely to interpret, implement,

29

administer, and enforce the Settlement Agreement in accordance with its terms.

8.6    Defendants shall have the opportunity to review and approve the motion submitted by Co-Liaison Counsel seeking entry of the above Final Order and Judgment applicable to Individual Plaintiffs.  Co-Liaison Counsel and Defendants' Counsel will reasonably cooperate with one another in obtaining acceptable orders at the hearing and will not do anything inconsistent with obtaining them.

## B.    Class Members

8.7    Solely for purpose of effectuating this Settlement Agreement, Defendants consent to the certification of the Settlement Class defined herein and to the appointment of the Settlement Class Representatives.

8.8    Within four (4) business days after the Execution Date, Co-Lead Class Counsel shall submit to the Federal Court a motion (which motion Defendants shall have the opportunity to review and approve) requesting entry of a Preliminary Approval Order that:

8.8.1   Preliminarily approves this Settlement Agreement;

8.8.2   Appoints Co-Lead Class Counsel for purposes of this Settlement Agreement;

8.8.3   Conditionally certifies a Settlement Class for purposes of this Settlement Agreement;

8.8.4   Authorizes dissemination of the Settlement Class Notice to the Settlement Class, including the proposed form of, method of, and schedule for dissemination of the Settlement Class Notice;

8.8.5   Appoints ARCHER Systems, LLC as the Claims Administrator and QSF Administrator, Deborah Greenspan as the Special Master, ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator, and Forge Consulting, LLC as the Settlement Planning Administrator;

8.8.6   Establishes the processes and procedures for handling claims by LIIs, who are Settlement Class Members, as set forth in Article XXI– Minors and LIIs;

8.8.7   Establishes the processes and procedures for handling any claims subject to Michigan's Wrongful Death Act, Mich. Comp. Laws § 600.2922; and

8.8.8   Establishes a stay of all proceedings against Defendants except those proceedings provided for or required by this Settlement Agreement.

8.9     The Claims Administrator shall cause notice of this Settlement Agreement to be served upon appropriate state and federal officials to the extent and in the manner required by the Class Action Fairness Act, 28 U.S.C. § 1715.

8.10    On a date to be set by the Federal Court, the Co-Lead Class Counsel will file a motion seeking a Fairness Hearing and entry of a Final Order and Judgment applicable to the Settlement Class, approval and entry of which shall be a condition of this Settlement Agreement, that:

8.10.1   Certifies the Settlement Class and Subclasses for Adults, Property Damage, and Business Economic Loss pursuant to Fed. R. Civ. P. 23, solely for purposes of this settlement;

8.10.2   Approves this Settlement Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Fed. R. Civ. P. 23 and directing its consummation according to its terms;

8.10.3   Approves the Settlement Agreement and distribution of any proceeds for any claim brought by a Class Member that is subject to Michigan's Wrongful Death Act, Mich. Comp. Laws § 600.2922;

8.10.4   Confirms the appointments of the Class and Subclass Representatives;

8.10.5   Confirms the appointment of Co-Lead Class Counsel and Subclass Counsel;

8.10.6   Finds that the Settlement Class Notice satisfied the requirements set forth in Fed. R. Civ. P. 23(c)(2)(B);

8.10.7   Permanently bars, enjoins, and restrains the Releasors from commencing, filing, initiating, asserting, and or maintaining any and all Released Claims against the Releasees;

8.10.8   Dismisses with prejudice solely as to the Releasees the Fourth Consolidated Amended Class Complaint and all Related Lawsuits filed by Class Plaintiffs pending in the Federal Court without further costs, including claims for interest, penalties, cost, and attorney fees, except for the motions for an award of attorneys' fees and reasonable costs, as set forth in Article XI, which will be made at an appropriate time to be determined by the Federal Court;

31

8.10.9   Orders all Releasors with Related Lawsuits filed by Class Plaintiffs pending in any state or federal court, other than the Federal Court, to promptly dismiss with prejudice, and without further costs, including claims for interest, penalties, cost, and attorney fees, all such Related Lawsuits as to the Released Parties, thereby effectuating in part the Releases;

8.10.10 Permanently bars and enjoins the commencement, assertion, and/or prosecution of any claim for contribution and/or indemnity arising out of or related to the Released Claims in the Federal Court, in any other federal court, state court, arbitration, regulatory agency, or other tribunal or forum against the Released Parties;

8.10.11 Confirms the appointment of ARCHER Systems, LLC as the Claims Administrator and QSF Administrator, Deborah Greenspan as the Special Master, ARCHER Systems, LLC and MASSIVE as the Lien Resolution Administrator, and Forge Consulting, LLC as the Settlement Planning Administrator, and confirms that the Federal Court retains continuing jurisdiction over those appointed;

8.10.12 Co-Lead Class Counsel also intend to ask the Federal Court to award the class representatives service awards to recognize the time, effort, and expense they incurred pursuing claims against the settling Defendant(s), which benefitted the entire class. In addition to the substantial time and effort required to respond to discovery, there were unique risks associated with prosecuting this case. These unusual risks merit, in Plaintiffs' view, a service award. Class representatives will request a service award of up to $15,000 to be taken from that portion of the total Monetary Awards paid to the Settlement Class; and

8.10.13 Expressly incorporates the terms of this Settlement Agreement and provides that the Federal Court retains continuing and exclusive jurisdiction over the Settlement Class Members, Defendants, and this Settlement Agreement solely to interpret, implement, administer, and enforce the Settlement Agreement in accordance with its terms.

8.11   Defendants shall have the opportunity to review and approve the motion submitted by Co-Lead Class Counsel seeking entry of the above Final Order and Judgment as to Settlement Class Members. Co-Lead Class Counsel and Defendants' Counsel will reasonably cooperate with one another in obtaining the Final Order and Judgment and will not do anything inconsistent with obtaining them.

### C.  Final Settlement Agreement

8.12   This Settlement Agreement shall become final immediately upon the completion of the last of the following events:

> 8.12.1   The Federal Court's entry of a Final Order and Judgment approving this Settlement Agreement together with entry of a final judgment dismissing the Fourth Consolidated Amended Class Complaint and all claims therein against Defendants on the merits with prejudice as to all Settlement Class Members;

> 8.12.2   The Federal Court's entry of a Final Order and Judgment dismissing the Amended Master Complaint and any Related Lawsuits in this Federal Court solely as to Defendants on the merits with prejudice as to Individual Plaintiffs;

> 8.12.3   The dismissal with prejudice of Defendants from all Related Lawsuits (excluding any claims by persons or entities that have opted-out of the Settlement Class or Individual Plaintiffs that have not participated in the Settlement Program) pending in any other state or federal court, both trial and appellate;

> 8.12.4   The entry of the Case Management Orders at Exhibit 11 in this Federal Court, the Michigan Court of Claims, and Genesee County Circuit Court;

> 8.12.5   The expiration of the time for appeal or to seek permission to appeal from the dismissal with prejudice of Related Lawsuits, the Federal Court's entry of the Final Orders and Judgments or, if an appeal from one or more of the dismissals or Final Orders and Judgments is taken, the affirmance of the dismissals and Final Orders and Judgments in their entirety, without modification, by the court of last resort to which an appeal of such dismissals and Final Orders and Judgments may be taken; and

> 8.12.6   The State Defendants have made the initial payment of $5,000,000 and the Flint Defendants, McLaren Defendants, and Rowe have made the required payments into the FWC Qualified Settlement Fund as set forth in Paragraph 2.3 of the Article II–Payments by Defendants.

8.13   Neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

8.14    Plaintiffs' Counsel and Defendants' Counsel will issue a Written Notice to the Claims Administrator when all of the above events have taken place and the Settlement Agreement becomes final.  Their failure to do so does not affect the finality of the Settlement Agreement.

## Article IX–Related Lawsuits

9.1    The Parties will file motions to stay all proceedings against Defendants in Related Lawsuits not pending in the Federal Court, except for any proceedings provided for or required by this Settlement Agreement as soon as possible after the motions referenced in Paragraphs 8.3 and 8.8 are filed.

9.2    Within thirty (30) days of the Federal Court entering both of the Final Orders and Judgments, Plaintiffs' Counsel shall file or cause to be filed the necessary motions to obtain dismissals with prejudice solely as to Defendants of all Related Lawsuits pending in any other federal or state court, subject to any proceedings or actions necessary to implement Article XXI–Minors and LIIs.

9.3    Plaintiffs' Counsel and Defendants' Counsel shall jointly file or cause to be filed a motion seeking and strongly advocating for the entry of the Case Management Order at Exhibit 11 in each of those other federal and state courts, as part of the reasons supporting dismissal and as a necessary component of the Settlement Agreement.

9.4    Within thirty (30) days of the Final Orders and Judgments, Plaintiffs' Counsel and Defendants' Counsel will jointly seek and obtain the dismissal of any Related Lawsuit pending in an appellate court, subject to any proceedings or actions necessary to implement Article XXI–Minors and LIIs.

## Article X–The Qualified Settlement Funds

10.1    Each Claimant shall look solely to the Sub-Qualified Settlement Funds for settlement and satisfaction, as provided in this Settlement Agreement, of all claims released by the Releasors pursuant to Article XVI–Releases and Covenants Not to Sue.  Except as provided by the Final Orders and Judgments, no Plaintiff shall have any interest in the Sub-Qualified Settlement Funds or any portion thereof.

10.2    Before the Effective Date, disbursements for expenses directly associated with issuing the Settlement Notice and Individual Notice, expenses associated with administering the Settlement Agreement, and any payments and expenses incurred in connection with taxation matters relating to the FWC Qualified Settlement Fund, and this Settlement Agreement may be made from the FWC Qualified Settlement Fund, and such amounts shall not be refundable to Defendants in the event this Settlement Agreement does not become Final, is disapproved, rescinded, or otherwise fails to become effective.  The costs or expenses of Plaintiffs for retaining any experts or consultants concerning the content or sufficiency, or

34

manner of notice provided in the Settlement Notice shall not be made from the FWC Qualified Settlement Fund except as may be part of any attorney fee award to Plaintiffs.

10.3   The FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds shall be invested in United States Government Treasury obligations or money market funds invested solely in United States Treasury obligations, provided, however, that such portions of the FWC Qualified Settlement Fund as may reasonably be needed to pay current expenses associated with issuing the Individual Notice and the Settlement Class Notice and administering the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds may be deposited in a federally insured bank account.  All interest earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds shall become and remain part of each such Fund and may be used to pay any fees and expenses incurred to implement this Settlement Agreement.

10.4   Defendants shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds, including, but not limited to, the costs and expenses of such investment, distribution, or administration, except as otherwise provided in this Settlement Agreement.

10.5   The QSF Administrator shall be solely responsible for filing all informational and other tax returns necessary to report any taxable or net taxable income earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds.  The QSF Administrator shall disburse from the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds, as and when legally required, any tax payments, including interest and penalties due on income earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds. Defendants shall have no responsibility to make any filings relating to the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds and shall have no responsibility to pay tax on any income earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds or to pay any taxes on the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds unless the settlement is not consummated and the FWC Qualified Settlement Fund is returned to Defendants.  Other than as specifically set forth herein, Defendants shall have no responsibility for the payment of taxes or tax expenses.  If for any reason, for any period of time, Defendants are required to pay taxes on income earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds, the QSF Administrator shall, upon written instructions from Defendants with notice to Plaintiffs' Counsel, timely pay to Defendants sufficient funds to enable it to pay all taxes (state, federal, or other) on income earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds. Defendants disclaim any responsibility for characterizing, for tax purposes, the actual settlement amount paid to any

35

Claimant, or for the impact such payment has on any federal, state, local or other governmental benefit for that recipient.

10.6   For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds shall be ARCHER Systems, LLC, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds (including without limitation all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B-2(1)).

10.7   The Parties and their counsel shall treat, and shall cause the QSF Administrator to treat, the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds as being at all times "qualified settlement funds" within the meaning of Treas. Reg. § 1.468B-l.  The Parties, Plaintiffs' Counsel, Defendants' Counsel, and the QSF Administrator will not ask the Federal Court to take any action inconsistent with the treatment of the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds in such manner.  In addition, the QSF Administrator and, as required, the Parties shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-l(i)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  It shall be the responsibility of the QSF Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Settlement Agreement shall be interpreted in a manner that is consistent with the FWC Qualified Settlement Fund and the Sub-Qualified Settlement Funds being "qualified settlement funds" within the meaning of Treas. Reg.§ 1.468B-l.

## Article XI–Attorneys' Fees, Costs, and Expenses

11.1   Counsel for Individual Plaintiffs and Class Members shall be reimbursed and paid solely out of the FWC Qualified Settlement Fund for all expenses and fees, including but not limited to:  attorneys' fees; past, current, or future litigation and administration expenses (including, but not limited to, experts', consultants', and guardians ad litem fees and expenses); and the costs of providing the Settlement Class Notice and Individual Notice.  If the Federal Court establishes a common benefit fund, nothing in the Settlement Agreement precludes any attorney from applying to that common benefit fund for consideration that their work qualifies for an award of a common benefit fee.  Defendants shall have no obligation to pay such costs or fees above or in addition to the payments made into the FWC Qualified Settlement Fund as set forth in Article II–Payments by Defendants.  The methodology for determining attorneys' fees and expenses for all aspects of the

litigation, settlement and implementation of the settlement shall be determined in accordance with a separately negotiated agreement negotiated among Plaintiffs' Counsel, which shall be subject to the approval of the Federal Court.

11.2   Unless requested to do so by the Federal Court, Defendants will take no position with respect to any application to the Federal Court by Co-Lead Class Counsel, Co-Liaison Counsel or counsel in the Related Lawsuits for an award of attorneys' fees, and reimbursement of costs and expenses incurred in the prosecution of the Fourth Consolidated Class Complaint, the Amended Master Complaint, and the Related Lawsuits.  Defendants will rely on the discretion of the Federal Court, Court of Claims, and Genesee County Circuit Court to make the determinations on such applications in a fair and appropriate manner.

11.3   Apart from the Defendants' payments described in Article II–Payments by Defendants, Defendants shall have no responsibility whatsoever for the allocation or distribution of the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds and shall not be responsible or otherwise liable for any disputes relating to the amount, allocation, or distribution of any fees, costs, or awards. Further, the payments described in Article II–Payments by Defendants, are the sole and maximum amounts to be paid by each Defendant under this Settlement Agreement.

## Article XII–Settlement Agreement Administration

### A.   Claims Administrator

12.1   The motions seeking Preliminary Approval Orders filed by Co-Liaison Counsel and Co-Lead Class Counsel will request that the Federal Court appoint ARCHER Systems, LLC as Claims Administrator.  Within ten (10) days after the Federal Court enters the Preliminary Approval Orders, Co-Lead Class Counsel and Co-Liaison Counsel will retain the Claims Administrator appointed by the Federal Court.

12.2   The Claims Administrator shall perform actions reasonably necessary for the efficient and timely administration of the claims as set forth in this Settlement Agreement, including the following powers and duties:

> 12.2.1   Establish processes and procedures to implement the duties and obligations assigned to the Claims Administrator under this Settlement Agreement;

> 12.2.2   Establish evidentiary review procedures to detect and prevent the submission of fraudulent evidence; review and evaluate Registration Forms, Claim Forms, and Claims Materials in a timely, consistent, and accurate fashion to determine compliance with the submission requirements;

12.2.3   Set-up and maintain a secure database to contain all relevant data regarding each Claimant (and providing access and use to the Special Master), including but not limited to:  Registration Forms, Claim Forms, and Claims Materials; assigned Settlement Category; communications to/from Claimants (including but not limited to Adverse Notices, Favorable Notices, Reconsideration Requests, appeals); and any other data deemed relevant by the Parties, the Claims Administrator, Lien Resolution Administrator, QSF Administrator, or the Special Master;

12.2.4   Coordinate and communicate as necessary with the Parties, their counsel, and others as directed by the Parties; design and maintain an official settlement website; establish a "help line" to answer questions from Claimants regarding processes and procedures for registering for and participating in the Settlement Program; and coordinate with the Co-Lead Class Counsel, Co-Liaison Counsel, and Defendants' Counsel in drafting form letters for use in conveying such things as Adverse Notices, Favorable Notices, and Monetary Awards, if any, to Claimants;

12.2.5   Coordinate and communicate with the Settlement Planning Administrator and the Master GAL or other person designated by the Federal Court to ensure that all Structured Settlements are established in compliance with applicable laws and regulations, including "qualified assignments" that will comply with Section 130(c) of the Internal Revenue Code, and "non-qualified assignments" that will not rely upon nor comply with Internal Revenue Code 130(c) (see P.L.R. 200836019);

12.2.6   Provide monthly reports to Plaintiffs' Counsel and Defendants' Counsel regarding all tasks performed by the Claims Administrator, Special Master, and Lien Resolution Administrator in accordance with the Settlement Agreement, including (i) the status of the Claims Administrator's registration and Claims reviews and determinations; (ii) the number of Adverse Notices issued and the status of Claimants' responses thereto; (iii) the number and status of Reconsideration Requests; (iv) the number and status of appeals; (v) the number of Favorable Notices; (vi) the number of Claimants assigned to each Settlement Category; and (vii) the status of lien resolution by the Lien Resolution Administrator;

12.2.7   The Claims Administrator shall establish a secure website to facilitate the transmission of and access to in electronic form all submissions to and communications from the Claims Administrator or the Special Master authorized or required by this Settlement

38

Agreement.  This website shall be hosted in a secure environment. The Parties and their respective counsel shall make all submissions to the Claims Administrator, and shall communicate with the Parties and their respective counsel, by uploading or transferring electronically documents to the secure website;

12.2.8   Assist as necessary to provide the best notice practicable to the Individual Plaintiffs, Class Members, and Minors without counsel under the circumstances, including establishment of a website for this Settlement, publication and individual notices to all members who can be identified through reasonable effort; coordinate or perform any mailings associated with the Notice or additional elements of the notice plan;

12.2.9   Maintain appropriate books, records, and documents such as contracts, tax returns, invoices and receipts including those needed for the purpose of obtaining reimbursement of costs and expenses related to the performance of the Claims Administrator's duties under this Settlement;

12.2.10 Maintain a list of Claimants and, if any, their retained counsel.  The Special Master shall provide the Claims Administrator with any such lists prepared as part of the Interim Reports of the Special Master Regarding Data Compilation Based on Response to the Amended Order Regarding Collection of Data.  In the event that a Claimant has entered into multiple retainer agreements, and there has not been a determination of which retainer controls by the time the payments are to be distributed, then the earliest retainer agreement shall be used to identify retained counsel; and

12.2.11 Perform such other tasks reasonably necessary to accomplish the goals contemplated by this Settlement Agreement, as agreed to by Plaintiffs' Counsel, Defendants' Counsel, and the Claims Administrator.

12.3   In addition, and without limiting any of the provisions of the preceding paragraph of this Article, in accordance with HIPAA, and any other applicable laws or regulations protecting personal privacy, neither the Claims Administrator, Defendants, the Federal Court or its judicial officers or staff, nor any other person may disclose any individual Claimant's name, Social Security number, medical records, or proofs, as determined by the Claims Administrator, or other information that identifies a particular Claimant to any other Claimant, other Claimant's counsel (other than Co-Lead Class Counsel or Co-Liaison Counsel), or to any other third-parties due to privacy issues, including the protections afforded to Claimants under HIPAA; provided, however, that the Claims Administrator, and Defendants shall be

under no such limitations with respect to (i) any action to enforce this Settlement Agreement (including without limitation, sharing such information with the Special Master, Settlement Planning Administrator, and Lien Resolution Administrator with respect to their ability to perform the roles assigned to enforce this Settlement Agreement); and/or (ii) any action to enforce a Claimant's executed Release and Covenant Not to Sue.

12.4   Reasonable compensation of the Claims Administrator, as agreed to by Plaintiffs' Counsel and approved by the Federal Court, and any reasonable out-of-pocket costs and expenses directly incurred as a result of the Claims Administrator's responsibilities set forth in this Settlement Agreement, will be paid out of the FWC Qualified Settlement Fund.   The Claims Administrator shall submit an annual budget to the Federal Court for review and approval.   Plaintiffs' Counsel may challenge the reasonableness of the Claims Administrator's out-of-pocket costs and expenses, in which case the Federal Court will determine the reasonableness of such costs and expenses.   If the Federal Court determines that any costs and expenses are unreasonable, the Claims Administrator will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Claims Administrator will refund that amount to the FWC Qualified Settlement Fund.

12.5   The Parties, Plaintiffs' Counsel, and Defendants' Counsel will not be liable for any act, or failure to act, of the Claims Administrator.

12.6   The Claims Administrator shall be replaced for cause by motion of Plaintiffs' Counsel, upon order of the Federal Court.   If the Claims Administrator resigns, dies, is replaced, or is otherwise unable to continue employment in this position, Plaintiffs' Counsel will recommend a new proposed Claims Administrator for appointment by the Federal Court.

12.7   The Claims Administrator will also propose a budget to the Federal Court for any costs and expenses anticipated to be incurred after the Settlement Agreement becomes final.   The final amounts approved by the Federal Court shall be set aside from and not part of the FWC Qualified Settlement Fund to be distributed to the Sub-Qualified Settlement Funds or as Monetary Awards to Claimants.

12.8   The Federal Court will retain jurisdiction over and oversee the Claims Administrator and may at its sole discretion request reports or information from the Claims Administrator.   The Claims Administrator will be responsible for reporting and providing information to the Federal Court at such frequency and in such a manner as the Federal Court directs.

## B.   Special Master

12.9   The motions seeking Preliminary Approval Orders filed by Co-Liaison Counsel and Co-Lead Class Counsel will request that the Federal Court appoint Deborah Greenspan as Special Master.

12.10 The Special Master shall perform the actions necessary to (i) consult and make decisions required under Article III–Registration for and Participation in the Settlement Program, and (ii) timely consider and decide any appeal taken pursuant to Article XIII–Reconsideration Requests and Appeals.

12.11 Except for any disputes covered under Paragraphs 12.12–12.13, reasonable compensation of the Special Master, as agreed to by Plaintiffs' Counsel and approved by the Federal Court, and reasonable out-of-pocket costs and expenses will be paid out of the FWC Qualified Settlement Fund. Plaintiffs' Counsel may challenge the reasonableness of the Special Master's out-of-pocket costs and expenses, in which case the Federal Court will determine the reasonableness of such costs and expenses. If the Federal Court determines that any costs and expenses are unreasonable, the Special Master will not be paid for such costs and expenses or, if such costs and expenses have already been paid, the Special Master will refund that amount to the FWC Qualified Settlement Fund.

12.12 For any disputes between the Parties involving this Settlement Agreement, the Parties must first engage in the dispute resolution requirements in Article XIV–Dispute Resolution. Only if the Parties are unable to resolve any dispute following those requirements, may any Party request that the Special Master provide a recommendation to the Federal Court pursuant to the following terms:

> 12.12.1 The Special Master shall determine whether the Parties shall meet in person, by telephone, or submit the dispute for resolution by letter brief. The Special Master shall determine the length and schedule of any letter brief; and

> 12.12.2 The Special Master shall deliver her written recommendation to the Parties and the Federal Court within thirty days of the latter of either a meeting, telephone conference or receipt of the last permitted letter brief.

12.13 The Parties involved in any dispute shall be responsible for an equal share of any hourly costs and administrative costs incurred by the Special Master to perform the duties set forth in this Settlement Agreement or are assigned by the Federal Court.

12.14 If the Special Master dies, resigns, or is otherwise unable to continue employment in this position, Plaintiffs' Counsel and Defendants' Counsel will jointly recommend a new proposed Special Master for appointment by the Federal Court.

### C.  Settlement Planning Administrator

12.15 The motions seeking Preliminary Approval Orders filed by Co-Liaison Counsel and Co-Lead Class Counsel will request that the Federal Court appoint Forge Consulting, LLC as Settlement Planning Administrator.

12.16  The Settlement Planning Administrator will perform actions reasonably necessary in conjunction with and under the supervision of the Master GAL and/or Special Master as designated by the Federal Court for the efficient and timely funding of the Special Needs Trust and Settlement Preservation Trust and the appropriate documentation of Structured Settlements.  The duties of the Settlement Planning Administrator shall be set forth in detail in the engagement document to be submitted to the Federal Court for approval.  Such duties shall, in general terms, include the following:

12.16.1  Establish processes and procedures to implement the duties and obligations assigned to the Settlement Planning Administrator under this Settlement Agreement;

12.16.2  After the Federal Court enters the Preliminary Approval Orders relating to the Settlement Agreement, coordinate with the Master GAL and the Co-Lead Class Counsel and Co-Liaison Counsel to identify an appropriate entity(ies) to serve as the Trustee of the Special Needs Trust and the Settlement Preservation Trust, which entity(ies) shall be subject to Federal Court approval and to design and secure Federal Court approval of the implementing documents for the Special Needs Trust and the Settlement Preservation Trust;

12.16.3  Subject to Federal Court approval, the Settlement Planning Administrator may design and propose certain Structured Settlement options to be offered to Claimants along with the option of a customized Structured Settlement Option;

12.16.4  Upon Federal Court approval of the aforementioned options, design educational materials regarding the Special Needs Trust, Settlement Preservation Trust and Structured Settlement Options to be provided to the Claims Administrator to be included in the Claims Administrator's website;

12.16.5  Coordinate and communicate with the Claims Administrator, QSF Administrator, Sub-QSF Administrator if applicable, and the Master GAL or other guardian (or if applicable the Special Master) to finalize the elected option for any Minor or LII and to assure that such option comports with all applicable rules and guidelines;

12.16.6  Coordinate and communicate with the Claims Administrator, QSF Administrator, any Sub-QSF Administrator if applicable, and the Master GAL or other guardian (or if applicable the Special Master) to confirm the necessary documentation and to facilitate the distribution of Monetary Awards into a Special Needs

42

Trust or Settlement Preservation Trust or Structured Settlement. Such coordination and communication may include but not be limited to ensuring an efficient and timely funding of a Special Needs Trust, Settlement Preservation Trust, committing to an annuity purchase date with an annuity issuer, providing the QSF Administrator with the requisite assignment document, and providing the QSF Administrator with requisite text for inclusion in the FWC Qualified Settlement Fund's distribution or any associated Sub-Qualified Settlement Fund's distribution;

12.16.7 Coordinate and communicate, with Claimants and their financial professional, if applicable, who elect to deposit their Monetary Awards into a Special Needs Trust or Settlement Preservation Trust, and the Master GAL or other guardian (or if applicable the Special Master), as necessary, and the trustee of the Special Needs Trust and Settlement Preservation Trust to ensure a timely, efficient, and legally compliant funding of each trust account;

12.16.8 Serve as the primary point of contact for all Structured Settlements;

12.16.9 Ensure, subject to the approval of the Master GAL or other guardian (or if applicable the Special Master), that each Structured Settlement is setup in compliance with applicable laws and regulations, including "qualified assignments" that will comply with Section 130(c) of the Internal Revenue Code, and "non-qualified assignments" that will not rely upon nor comply with Internal Revenue Code 130(c) (see P.L.R. 200836019); that all documentation necessary for the proper procurement and funding of each Structured Settlement is completed;

12.16.10 Coordinate and communicate with the Claimant and their financial professional, if applicable, the Claims Administrator, QSF Administrator, Sub-QSF Administrator if applicable, and the Master GAL or other guardian (or if applicable the Special Master), as necessary, to ensure the proper funding of each Structured Settlement;

12.16.11 Coordinate and communicate with the Master GAL, Claims Administrator, QSF Administrator, any Sub-QSF Administrator if applicable, and any Structured Settlement provider to provide applications as required by any life insurance company issuing the Structured Settlement;

43

12.16.12 Coordinate and communicate with the Claims Administrator, QSF Administrator, any Sub-QSF Administrator, and the trustee of the Special Needs Trust and Settlement Preservation Trust to ensure that Claimants complete all paperwork necessary for the proper and timely funding of a trust account;

12.16.13 Once a Special Needs Trust or Settlement Preservation Trust account is funded, ensure each Claimant receives a copy of the trust agreement and any associated documents including but not limited to a joinder agreement, if applicable, and a welcome package from the trustee;

12.16.14 In coordination with the Claims Administrator, ensure that the Structured Settlement contract is provided to each Claimant or their legal representative or a Claimant's attorney; and

12.16.15 Under the guidance of the Master GAL (or other persons designated by the Federal Court, as appropriate) perform such other tasks reasonably necessary to accomplish the goals contemplated by this Settlement Agreement with respect to Special Needs Trusts, Settlement Preservation Trusts and Structured Settlements.

12.17 The Settlement Planning Administrator shall receive reasonable compensation for its services as approved by the Federal Court. The Settlement Planning Administrator shall be compensated primarily from commissions paid by insurance entities for the placement of Structured Settlements. Specifically, the Settlement Planning Administrator is authorized to serve as the broker for any Claimant who selects a Structured Settlement and who does not have a separate financial planner/broker assisting them with securing a Structured Settlement. To the extent that the Settlement Planning Administrator serves as the broker, the Settlement Planning Administrator shall be entitled to receive the standard commissions and fees paid by the insurance entity that underwrites the Structured Settlement and the Settlement Planning Administrator shall receive no other compensation from either the FWC Qualified Settlement Fund, Sub-Qualified Settlement Fund if applicable, or the Claimant with respect to that Claimant. To the extent that a Claimant who elects to receive the settlement proceeds in a Structured Settlement has a separate broker assisting them, the Settlement Planning Administrator shall be entitled to compensation for the work it performs to assist the QSF Administrator, or any Sub-QSF Administrator if applicable, and Claims Administrator in verifying documentation and compliance and for preparing the necessary materials for the QSF Administrator or any Sub-QSF Administrator if applicable, and for developing educational materials for use by the Claims Administrator. Subject to Federal Court approval, the Settlement Planning Administrator will be compensated reasonably for such services either by splitting the standard brokerage commission with the Claimants' advisor, or by another

44

method of reasonable compensation that the Federal Court adopts. Subject to Federal Court approval, the Settlement Planning Administrator will be compensated separately for work in connection with the funding of Trusts.

12.18 The Parties, Plaintiffs' Counsel, and Defendants' Counsel will not be liable for any act, or failure to act, of the Settlement Planning Administrator.

12.19 The Federal Court will retain jurisdiction over and oversee the Settlement Planning Administrator and may, at its sole discretion, request reports or information from the Settlement Planning Administrator.

12.20 The Settlement Planning Administrator shall be replaced for cause by motion of Plaintiffs' Counsel, upon order of the Federal Court. If the Settlement Planning Administrator resigns, is replaced, or is otherwise unable to continue employment in this position, Plaintiffs' Counsel will recommend a new proposed Settlement Planning Administrator for appointment by the Federal Court.

12.21 Neither the Claims Administrator, the Special Master, nor the Settlement Planning Administrator shall provide any legal advice to any Party or Parties, including with respect to:

> 12.21.1 The merits and/or terms of this Settlement Agreement; or
>
> 12.21.2 The nature, value and/or sufficiency of the Settlement Amount and/or any other payments described in this Agreement.

12.22 Nothing in this Settlement Agreement shall relieve any counsel of his or her sole responsibility, or otherwise alter or transfer that responsibility, to advise his or her respective client or clients concerning all matters set forth in this Settlement Agreement, including without limitation all notices from and determinations by the Claims Administrator and Special Master with respect to Claimants or to any Claimant.

## Article XIII–Reconsideration Requests and Appeals

### A. Settlement Category Reconsideration Request

13.1 Any Claimant or Next Friend who receives an Adverse Notice or disagrees with the Settlement Category assigned by the Claims Administrator in a Favorable Notice may request that the Claims Administrator reconsider its determination(s) with respect to such Claimant or Next Friend. Additional provisions or requirements relating to Reconsideration Requests by Minors and LIIs are set forth in Article XXI–Minors and LIIs.

13.2 Reconsideration Requests shall consist of a letter to the Claims Administrator of no more than five (5) pages setting forth the Claimant's or Next

Friend's grounds for reconsideration, in addition to any applicable proofs supporting those contentions and anything else the Claims Administrator requests. The Claims Administrator shall create a reconsideration request form to allow Claimants and Next Friend's to set forth grounds for reconsideration and submit additional proofs.

13.3    Reconsideration Requests must be submitted no later than thirty (30) calendar days after the date that the Claims Administrator issues the Adverse Notice or Favorable Notice forming the basis of the Reconsideration Request. All Reconsideration Requests shall be signed by the Next Friend, Claimant or his or her counsel and are subject to the Claimant's attestations in his or her Registration Form or Claim Form.

13.4    Within twenty-one (21) days of receiving the Reconsideration Request, the Claims Administrator shall issue a Reconsideration Notice to the Claimant or Next Friend, with a copy to Plaintiffs' Counsel. The Reconsideration Notice shall inform the Claimant or Next Friend of the Claims Administrator's decision on the Reconsideration Request. To the extent required, the twenty-one (21) day deadline may be extended by the Special Master.

13.5    Once the deadline to submit a Reconsideration Request has lapsed, or upon issuance of the Reconsideration Notice responding to a timely Reconsideration Request, the Claims Administrator's determinations with respect to all Claimants or Next Friends will be final, unless the Claimant or Next Friend submits an appeal to the Special Master pursuant to this Article.

**B.    Appeals to the Special Master**

13.6    Any Claimant or Next Friend who submits a timely Reconsideration Request pursuant to this Article may appeal the Claims Administrator's Reconsideration Notice relating to that Reconsideration Request to the Special Master. Additional provisions or requirements relating to appeals by Minors and LIIs are set forth in Article XXI–Minors and LIIs.

13.7    Any Claimant or Next Friend taking an appeal will be charged a fee of one hundred and seventy-five dollars ($175) by the Claims Administrator that must be paid before the appeal may proceed, which fee will be refunded if the Claimant's or Next Friend's appeal is successful. If the appeal is unsuccessful, the fee will be paid into the FWC Qualified Settlement Fund.

13.8    Each appeal shall consist of a letter from the Next Friend, Claimant or their counsel to the Special Master setting forth the basis of the appeal and the Next Friend's or Claimant's requested remedy(ies). The letter constituting the appeal shall be subject to the attestations in the Registration Form and Claim Form.

13.9    When deciding an appeal, the Special Master shall consider whether based upon the letter, and the Claimant's Claims Materials or the Next Friend's

46

proofs made available to the Claims Administrator, there is clear and convincing evidence that the Claims Administrator's decisions regarding the Claimant or Next Friend are in error.  Unless the Special Master determines that clear and convincing evidence exists that the Claim Administrator's decisions regarding the Claimant or Next Friend are erroneous, she shall affirm the Claims Administrator's Reconsideration Notice with respect to the Claimant or Next Friend.

13.10  In the course of evaluating an appeal, the Special Master may, in her sole discretion, consult with the Claims Administrator concerning the basis of the appeal and the Claimant's or Next Friend's requested remedy(ies).  The Special Master also may consult with any or all of the Parties' respective counsel, but only if the Special Master initiates such communications.  The Parties and/or their respective counsel shall not communicate with the Special Master other than through the procedures for appeals set forth herein.

13.11  All appeals must be in the form of a letter submitted to the Claims Administrator's website within twenty (20) days after the Claims Administrator issues its Reconsideration Notice with respect to the Claimant's Reconsideration Request.  The Special Master shall issue her determinations with respect to each appeal within twenty-one (21) days of its receipt by the Claims Administrator.  To the extent required, the twenty-one (21) day deadline may be extended by the Special Master.

13.12  The Special Master shall decide each timely appeal in a writing submitted to the Claims Administrator for uploading to its secure website.  The Special Master's determination with respect to all appeals shall be final, binding, and non-appealable by any means.  Once the Special Master has decided an appeal in writing, the Claims Administrator and QSF Administrator shall abide by that decision in all respects concerning all Monetary Awards, if any, to the Claimant due under this Agreement.

## Article XIV–Dispute Resolution

14.1   This Settlement Agreement provides for dispute resolution, which is the sole and exclusive mechanism to resolve disputes and disagreements arising under the Settlement Agreement, except where specifically stated otherwise.  Except as provided for in this Settlement Agreement, the Parties may not otherwise petition the Special Master or Federal Court for relief for violations of this Settlement Agreement or bring a new action for breach of this Settlement Agreement.

14.2   The Parties will make all reasonable efforts to resolve disputes and disagreements regarding the meaning of, compliance with, and/or implementation of the Settlement Agreement informally and in good faith prior to seeking any relief from the Special Master or Federal Court.

14.3   If a Party has a dispute concerning the meaning of, compliance with, and/or implementation of this Settlement Agreement, that Party will send written notice to all other Parties specifying the nature of the dispute.

14.4   Within fourteen (14) days of the date of the transmission of written notice under Paragraph 14.3, the Parties will meet and confer in a good faith attempt to resolve the dispute without soliciting the Federal Court or Special Master's involvement.  As part of the meet and confer, the Parties will comply with reasonable requests from another Party or Parties for information and documents related to the dispute, and will, upon request by another Party or Parties, provide reasonable access to client representatives with knowledge related to the dispute.

14.5   If the Parties are unable to resolve any dispute or disagreement, any Party or Parties may request review by the Special Master as provided in Paragraph 12.12 or by the Federal Court, who may refer the dispute or disagreement to the Special Master for a recommendation.  Any Party that intends to file a motion to enforce the Settlement Agreement must provide all other Parties with written notice of such intent at least seven (7) days prior to filing any such motion.

## Article XV–Liens

15.1   For any of a Claimant's medical expenses, benefits, or costs paid by the State of Michigan through Medicaid, incurred as a result of injuries allegedly caused by ingestion or contact with water from the Flint Water Treatment Plant at any time during the Exposure Period, and in order to resolve all claims and litigation, the State of Michigan agrees not to pursue the following limited rights:  enforcement of the State's own subrogation or priority right to the State-funded portion (but not the federally-funded portion) of costs paid under Medicaid from any Monetary Award to any Claimant; and any notification, certification, or discretionary fine to the State under Mich. Comp. Laws §§ 400.106(3),(4),(5),(6),(7), and (8).  The State of Michigan retains the right to pursue any amounts not collected or not asserted through other recovery methods permitted under Title XIX of the Social Security Act (including without limitation 42 U.S.C. 1396p) and the Social Welfare Act, Mich. Comp. Laws § 400.1 *et seq*.  Nothing in this section, Article or Agreement shall be deemed to waive or release any of the notifications, certifications, or discretionary fines relating to a contracted health plan under Mich. Comp. Laws §§ 400.106(3),(4),(5),(6),(7), and (8); or subrogation, priority, recovery, or other rights of any Medicaid managed care plan or payer, any contracted health plan, Medicare, non-State government entity, department, or agency, or any other entity or person.  Each Claimant acknowledges and agrees that the Michigan Department of Health and Human Services will continue to determine eligibility for the Medicaid program and that receiving a Monetary Award may affect a Claimant's eligibility for Medicaid.  The Claims Administrator and Lien Resolution Administrator shall provide information requested by the State of Michigan in order to comply with this Paragraph.

48

15.2   Each Claimant shall identify to the Claims Administrator and Lien Resolution Administrator on his or her Lien Disclosure Form all known lien holders with claims against any Monetary Award to be received by the Claimant under the Settlement Agreement, including without limitation, Medicare, Medicaid, the Michigan Department of Health and Human Services, all third-party public or private payors that have paid for and/or reimbursed the Claimant for medical expenses, pharmacy expenses, disability benefits, or any other costs and expenses incurred due to or arising out of injuries alleged.

15.3   Each Claimant shall cooperate with the Lien Resolution Administrator and Claims Administrator to identify all Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award as a prerequisite to receiving payment of any Monetary Award, including by providing the requested information in the Lien Disclosure Form and authorizations to the Claims Administrator in the timeframe specified for so doing.  The Claims Administrator shall provide all relevant responses to the Lien Disclosure Form and any authorizations submitted to it to the Lien Resolution Administrator.

15.4   Among other things, each Claimant will authorize the Claims Administrator to:

15.4.1   Establish procedures and protocols to identify and resolve Liens held or asserted by Governmental Payors or Medicare Part C or Part D Program sponsors with respect to any Monetary Award;

15.4.2   Undertake to obtain an agreement in writing and other supporting documentation with CMS promptly following the Execution Date that:

15.4.2.1   Establish a repayment process as agreed with CMS based upon the provision of medical care or treatment provided in connection with or alleged to be in connection with the Released Claims for Claimants who are or were beneficiaries of the Medicare Program, or, alternatively, otherwise sets forth a conditional payment resolution process.  Such amounts will be based on the routine costs associated with the medically accepted standard of care for the treatment and management of the Released Claims, as well as actual utilization of treatment by Claimants related to the Released Claims.  The agreement, in writing, and supporting documentation with CMS will demonstrate reasonable proof of satisfaction of Medicare's Part A and/or Part B fee-for-service recovery claim in connection with Claimant's (who are or were beneficiaries of the Medicare

49

Program) receipt of any Monetary Award and any benefits provided pursuant to this Settlement Agreement; and

15.4.2.2     Establish reporting processes by Claimants to provide Defendants with information necessary to satisfy the reporting obligations, if any, under the mandatory Medicare reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007, 110 Pub. L. No. 173, 121 Stat. 2492 ("MMSEA") in connection with this Settlement Agreement, unless such reporting obligations are otherwise waived in connection with a Medicare global resolution process agreement for Liens.

15.4.3     Fulfill all state and federal reporting obligations, including those to CMS that are agreed upon with CMS;

15.4.4     Satisfy asserted Lien claims by and amounts owed to a Governmental Payor or, to the extent identified by the Claimant pursuant to Paragraph 15.2, Medicare Part C or Part D Program sponsor for medical items, services, and/or prescription drugs paid on behalf of Claimant out of any Monetary Award; and

15.4.5     Transmit all information received from any Governmental Payor or Medicare Part C or Part D Program sponsor pursuant to such authorizations (i) to the Claims Administrator solely for purposes of verifying compliance with the MSP Laws or other similar reporting obligations and for verifying satisfaction and full discharge of all such Liens, or (ii) as otherwise directed by the Federal Court.

15.5    If the Lien Resolution Administrator is able to negotiate a global repayment amount for some or all of the medical care or treatment provided in connection with or alleged to be in connection with the Released Claims for Claimants who are or were beneficiaries of the Medicare Program with CMS, as set forth in Paragraph 15.4.2.1, the Lien Resolution Administrator shall:  (i) satisfy such global repayment amount out of any Monetary Award to such Claimant; and (ii) provide that reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award to such Claimant.

15.6    If the Lien Resolution Administrator is unable to negotiate a global repayment amount for some or all of the medical care or treatment provided in connection with or alleged to be in connection with, the Released Claims for Claimants who are or were beneficiaries of the Medicare Program with CMS, as set forth in Paragraph 15.4.2.1, the Lien Resolution Administrator will put in place a mechanism for resolving these Liens on an individual basis.  These mechanisms for resolving such Liens on an individual basis will allow the Lien Resolution

50

Administrator to: (i) satisfy claims for such Lien amounts owed for medical items, services, and/or prescription drugs paid on behalf of a Claimant out of any Monetary Award; and (ii) provide that the Lien Resolution Administrator's reasonable costs and expenses incurred in resolving such Liens, including the reasonable compensation of the Lien Resolution Administrator for such efforts, will be paid out of any Monetary Award.

15.7    The Parties further understand and agree that the Lien Resolution Administrator's performance of functions described in this Article is not intended to modify the legal and financial rights and obligations of Claimants, including the duty to pay and/or arrange for reimbursement of each Claimant's past, current, or future bills or costs, if any, for medical items, services, and/and prescription drugs, and to satisfy and discharge any and all statutory recovery obligations for any Liens.

15.8    Notwithstanding any other provision of this Settlement Agreement relating to timely payment, the QSF Administrator will not pay any Monetary Award to a Claimant who is or was entitled to benefits under a Governmental Payor program or Medicare Part C or Part D Program prior to the Lien Resolution Administrator's determination of the final amount needed to satisfy the reimbursement obligation that any Governmental Payor or Medicare Part C or Part D Program sponsor states is due and owing (as reflected in a final demand letter or other formal written communication), and satisfaction and discharge (or applicable Lien holdback) of that reimbursement obligation as evidenced by the Lien Resolution Administrator's certification of such amount and/or applicable Lien holdback from the applicable Governmental Payor or Medicare Part C or Part D Program sponsor.

15.9    Notwithstanding any other provision of this Settlement Agreement relating to timely payment, if any person or entity claims any Liens, other than those set forth above, with respect to a Claimant's Monetary Award, then the QSF Administrator will not pay any such Monetary Award if the QSF Administrator has received notice of that Lien and there is a legal obligation to withhold payment to the Claimant under applicable federal or state law.  The QSF Administrator will hold such Monetary Award in the applicable Sub-QSF Fund until the Claimant (and any counsel individually representing him or her, if any) presents documentary proof, such as a court order or release or notice of satisfaction by the party asserting the Lien, that such Lien has been satisfied and discharged.

15.10   Claimants who are or were entitled to benefits under Medicare Part C or Part D Programs may be required by statute or otherwise, when making a claim for and/or receiving compensation pursuant to this Settlement Agreement, to notify the relevant Medicare Part C or Part D Program sponsor or others of the existence of, and Claimant's participation in, this Settlement Program.  It is the sole responsibility of each Claimant to determine whether he or she has such a notice obligation, and to perform timely any such notice reporting.

15.11 Each Claimant, on his or her own behalf, and on behalf of his or her estate, predecessors, successors, assigns, representatives, heirs, next-of-kin, beneficiaries, executors, and administrators, in return for the benefits and consideration provided in this Settlement Agreement, will indemnify and forever hold harmless, and pay all final judgments, damages, costs, expenses, fines, penalties, interest, multipliers, or liabilities, including the costs of defense and attorneys' fees of, the Released Parties against any and all claims by other parties arising from, relating to, or resulting from (a) any undisclosed Lien relating to, or resulting from, compensation or benefits received by a Claimant pursuant to this Settlement Agreement and/or (b) the failure of a Claimant to use their best efforts to timely and accurately report or provide information that is necessary for compliance with the Medicare Secondary Payor laws, or for the Lien Resolution Administrator to identify and/or satisfy all Governmental Payors or Medicare Part C or Part D Program sponsors who may hold or assert a reimbursement right.   The amount of indemnification will not exceed the total Monetary Award for that Claimant. PLAINTIFFS AND CLAIMANTS ACKNOWLEDGE THAT THIS SECTION COMPLIES WITH ANY REQUIREMENT TO EXPRESSLY STATE THAT LIABILITY FOR SUCH CLAIMS IS INDEMNIFIED AND THAT THIS SECTION IS CONSPICUOUS AND AFFORDS FAIR AND ADEQUATE NOTICE.

15.12 Any reporting performed by the Lien Resolution Administrator for the purpose of resolving Liens, if any, related to compensation provided to Claimants pursuant to this Settlement Agreement does not constitute an admission by any Claimant or any Released Party of any liability or evidence of liability in any manner.

15.13 The foregoing provisions of this Article are solely for the several benefit of Defendants, the Lien Resolution Administrator, and the Claims Administrator.  No Claimant (or counsel individually representing them, if any) will have any rights or defenses based upon or arising out of any act or omission of Defendants, the Lien Resolution Administrator, or the Claims Administrator with respect to this Article.

## Article XVI–Releases and Covenants Not to Sue

16.1.   In addition to the effect of any final judgment entered in accordance with this Settlement Agreement, upon the occurrence of the Effective Date and in consideration of payment of the Settlement Amount specified in Article II–Payments by Defendants and the other consideration in this Agreement, the Releasees individually and jointly shall be completely released, acquitted, and forever discharged from:

16.1.1       any and all claims, notices, demands, actions, suits, and causes of action, whether class, individual, or otherwise in nature, legal or equitable, known or unknown, suspected or unsuspected, asserted or unasserted, in law, equity, or administratively;

16.1.2      damages whenever incurred and liabilities of any nature whatsoever, including costs, expenses, penalties, expenses of medical or psychological monitoring, and attorneys' fees, that Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against the Releasees or any of them, relating in any way to;

16.1.3      exposure to, use of, or receipt of water from the Flint Water Treatment Plant, or legal liability for the payment of such water, for the period April 25, 2014 to the Effective Date; and/or

16.1.4      any alleged acts or omissions by Releasees or any of them and/or any joint and/or several liability of any of them arising from the alleged acts or omissions of any of the Releasees pled in the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and any complaints in the Related Lawsuits from the beginning of time until the Effective Date or that could have been brought under any federal, state, local, administrative, or regulatory law or cause of action concerning exposure to, use of, or receipt of water from the Flint Water Treatment Plant, or legal liability for the payment of such water, during the period April 25, 2014 to the Effective Date, or any conduct in any related litigation or arising out of the litigation itself in Federal Court, the Court of Claims, or Genesee County Circuit Court.

16.2.   From and after the Execution Date, for the consideration provided for herein and by operation of the Final Orders and Judgments, Plaintiffs, Individual Plaintiffs, the Class and Subclass Representatives, each Settlement Class Member, and the Settlement Class, on behalf of the Releasors, and each of them, covenant, promise, and agree that they will not, at any time, continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, any proceeding:  (a) alleging or asserting any of his, her, or its respective Released Claims against the Released Parties in any federal court, state court, arbitration, regulatory agency, or other tribunal or forum or (b) challenging the validity of the Releases.  To the extent any such proceeding exists in any court, tribunal, or other forum as of the Execution Date, the Releasors covenant, promise and agree to withdraw, and seek a dismissal with prejudice of, such proceeding forthwith.

16.3.   In connection with the releases in Paragraphs 16.1–16.2, Plaintiffs and Releasors acknowledge that they are aware that they may hereafter discover claims now unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to actions or matters released herein.  Plaintiffs and Releasors explicitly took unknown or unsuspected claims into account in entering into the Settlement Agreement and it is the intention of the

53

Parties fully, finally, and forever to settle and release all Released Claims with respect to all such matters.

16.4.   Plaintiffs and Releasors waive California Civil Code Section 1542 and similar provisions in other states.  Plaintiffs and Releasors certify that they are aware of and have read and reviewed the following provisions of California Civil Code Section 1542 ("Section 1542"):

A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

16.5.   The provisions of the release set forth above shall apply according to their terms, regardless of provisions of Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction.  Plaintiffs and Releasors hereby expressly waive and relinquish any and all rights and benefits existing under (i) Section 1542 or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction and (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above.

16.6.   In consideration of the terms of this Agreement, including the payments specified in Article II–Payments by Defendants, Defendants hereby fully, completely, and forever release each other from:

16.6.1    any and all claims, notices, demands, actions, suits, and causes of action, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties, and attorneys' fees, legal or equitable, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that Defendants, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have against another Defendant, and which also relate or arise out of in any way to any of the following:

i.      the switch to the Flint River as the source of the water supply to the Flint Water Treatment Plant in 2014 and 2015, and the switch back to the Detroit water system in 2015 and thereafter;

ii.     any alleged acts or omissions by Defendants, or any joint and several liability, contribution, indemnity, or other liability arising from the alleged acts or omissions of any of the Defendants, pled in the

54

Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and any complaints in the Related Lawsuits, from the beginning of time until the Effective Date, that have or could have been brought under any federal, state, local, administrative, or regulatory law or cause of action relating or arising out of in any way to the switch to the Flint River as the source of the water supply to the Flint Water Treatment Plant in 2014 and 2015, and the switch back to the Detroit water system in 2015 and thereafter; or

iii.   any conduct in any litigation mentioned in the preceding paragraph, or any related litigation thereto, or arising out of any such litigations themselves, in Federal Court, the Court of Claims, Genesee County Circuit Court, or their respective appellate courts.

16.6.2   Defendants further covenant, promise, and agree that they will not, at any time, continue to prosecute, commence, file, initiate, institute, cause to be instituted, assist in instituting, or permit to be instituted on their, his, her, or its behalf, or on behalf of any other individual or entity, against any other Defendant any proceeding related to or arising out of the switch, conduct, acts or omissions set forth in subsections 16.6.1(i)-(iii).

16.7   Nothing stated in Paragraph 16.6 should be construed as releasing or preventing any regulatory, administrative or enforcement actions, notices, orders or suits, or any criminal claims, notices, demands, actions, or suits, brought at any time by the State Defendants or their departments.   Nor should it be construed as releasing or preventing any claim, demand or suit against Veolia Water North America Operating Services, LLC, Veolia North America, LLC, Veolia North America, Inc., Veolia Environnement, S.A., Lockwood Andrews & Newnam, P.C., Lockwood, Andrews & Newnam, Inc., Leo A. Daly Company, United States of America, and United States Environmental Protection Agency, or any of their affiliates.

### Article XVII–Rescission

17.1   If the Federal Court declines, preliminarily or otherwise, to approve this Settlement Agreement or any part hereof, or if such approval is materially modified

or set aside on appeal, or if the Federal Court does not enter the Final Orders and Judgments, or if the Federal Court enters the Final Orders and Judgments and appellate review is sought and, on such review, such Final Orders and Judgments are not affirmed in their entirety, or if any Related Lawsuits are not dismissed with prejudice, or if State Defendants exercise their rights to rescind, terminate or cancel this Settlement Agreement under Article XVIII–Walk-Away Provisions, Article XIX–Opt-Outs, or Article II–Payments by Defendants, or if the Settlement Agreement does not become Final, then any of the Defendants (solely as to itself) and Plaintiffs shall, each in their respective sole discretion, have the option to rescind this Settlement Agreement in its entirety.  If such Rescission option is exercised by any party, then any and all amounts constituting the FWC Qualified Settlement Fund (including, but not limited to, any interest earned on the funds while being held in escrow, fees, costs, and/or expenses advanced to Co-Liaison Counsel or Co-Lead Class Counsel) shall be returned to Defendants (or the rescinding Defendant if the Settlement Agreement is not rescinded as to all Defendants), except for any disbursements made or incurred in accordance with this Settlement Agreement, including costs associated with implementation of notice and claims administration (in which case those disbursements shall be borne by the rescinding Defendant(s) in proportion to their total contribution to the FWC Qualified Settlement Fund as set forth in Paragraphs 2.1.1-2.1.4).  A decision by the Genesee County Circuit Court that a single Minor's or LII's Monetary Award is not fair, reasonable, adequate or in the best interest of that Minor or LII shall not be a basis to permit Defendants to rescind the Settlement Agreement pursuant to this paragraph.

17.2    If the Rescission option is exercised, the QSF Administrator shall disburse the FWC Qualified Settlement Fund on a *pro rata* basis to each Defendant (or the rescinding Defendant if the Settlement Agreement is not rescinded as to all Defendants) according to the amounts paid into the FWC Qualified Settlement Fund, including any interest earned while the funds were held in escrow, in accordance with this Article within fifteen (15) business days after receipt of either (i) written notice signed by Defendants' Counsel, Co-Liaison Counsel, and Co-Lead Class Counsel stating that this Settlement Agreement has been rescinded, canceled, or terminated, or (ii) any order of the Federal Court so directing.

17.3    If this Settlement Agreement is rescinded, canceled, or terminated pursuant to this Article, any obligations pursuant to this Settlement Agreement (other than disbursement of the FWC Qualified Settlement Fund to Defendants as set forth above) shall cease immediately.  In addition, any releases previously signed by Claimants shall become null and void solely as to any Defendant that exercises its right to rescind, terminate or cancel its participation in this Settlement Agreement.

17.4    A modification or reversal on appeal of:  (i) any amount of fees and expenses awarded by the Federal Court from the FWC Qualified Settlement Fund to Co-Lead Class Counsel, Co-Liaison Counsel, or counsel in the Related Lawsuits; or (ii) any plan of allocation or distribution of the FWC Qualified Settlement Fund; shall

not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Orders and Judgments, and shall not give rise to any option to rescind this Settlement Agreement under this Article.

17.5   If McLaren Defendants exercise their right to rescind, terminate or cancel their participation in this Settlement Agreement under Article XVIII-Walk-Away Provisions, then Category 27 contained in the Compensation Grid, Exhibit 8 to this Settlement Agreement, shall be superseded and replaced with Category 27 described in Exhibit 18 to this Settlement Agreement.

17.6   In the event the Federal Court does not approve this Settlement Agreement, or it does not become part of the Final Orders and Judgments, Plaintiffs and Defendants shall negotiate in good faith in order to modify the terms of the Settlement Agreement in order to revive it.  In the event that such efforts are not successful:

17.6.1   Defendants will not be deemed to have consented to the certification of any class, and the agreements and stipulations in this Settlement Agreement concerning class definition or class certification shall not be used as evidence or argument to support class certification or class definition, and Defendants will retain all rights to oppose class certification, including certification of a class identical to that provided for in this Settlement Agreement for any other purpose;

17.6.2   Except for Paragraphs 17.1 – 17.3, this Settlement Agreement, including but not limited to the release and orders herein, shall become null and void and of no further force and effect, the Parties shall be deemed to have reverted to their respective status and positions as of the date immediately before the date of execution hereof, and the Parties shall proceed in all respects as if this Settlement Agreement had not been executed; and

17.6.3   Defendants will not be deemed to have waived any right to assert sovereign or qualified immunity as defenses to the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and any complaints in the Related Lawsuits.

17.7   This Settlement Agreement, whether or not it shall become final, and any and all negotiations, documents, and discussions associated with it, shall not be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Defendants or of the truth of any of the claims or allegations made in the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint or the Related Lawsuits, and evidence thereof shall not be admissible, discoverable or used directly or indirectly in any way in the Fourth

Consolidated Amended Class Complaint, the Amended Master Complaint or in Related Lawsuits (except an action to enforce or interpret the terms of this Settlement Agreement). The parties expressly reserve all of their rights if the settlement does not become a Final Settlement Agreement.

## Article XVIII–Walk-Away Provisions

18.1    Each Defendant, in their sole and absolute discretion, will have the right to rescind, terminate, or cancel this Settlement Agreement as to itself under any of the following circumstances:

18.1.1    More than five (5) percent of the Individual Plaintiffs listed on Exhibit 1 fail to timely register and provide required information to participate as a Claimant in the Settlement Program;

18.1.2    More than seven (7) percent of the persons listed on Exhibit 12, who have submitted a notice of intention to file a claim under the Michigan Court of Claims Act, Mich. Comp. Laws § 600.6431 alleging personal injury, property damage, or business economic loss as a result of exposure to water received from the Flint Water Treatment Plant, fail to timely register and provide required information to participate as a Claimant in the Settlement Program;

18.1.3    More than eight (8) percent of the persons listed on Exhibit 13, who have retained an attorney but have not filed claims in any court or filed a notice of intention to file a claim under the Michigan Court of Claims Act or the Federal Tort Claims Act alleging personal injury, property damage, or business economic loss as a result of exposure to water received from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water fail to timely register and provide required information to participate as a Claimant in the Settlement Program; or

18.1.4    If fewer than 95% of the Minor Children, Minor Adolescent, and Minor Teens listed on the last Interim Report of the Special Master Regarding Data Compilation Based on Responses to the Amended Order Regarding Collection of Data, to be filed before the Federal Court enters the Preliminary Approval Orders relating to this Settlement Agreement register and provide required information to participate as a Claimant in the Settlement Program;

18.2    The McLaren Defendants in their sole and absolute discretion, will have the right to rescind, terminate, or cancel this Settlement Agreement as to the McLaren Defendants only if any of the persons listed on Exhibit 19 who allege exposure to Legionella at McLaren Flint Hospital during the period of April 25, 2014

through December 31, 2018 fail to timely register and provide required information to participate as a Claimant in the Settlement Program.

18.3    Defendants will have thirty (30) days to exercise the right to rescind, terminate or cancel this Settlement Agreement from receipt of the final report from the Claims Administrator required under Paragraph 3.18 regarding the Claimants who have properly and timely registered and been found eligible to participate as a Claimant in the Settlement Program.

18.4    If any Defendant timely exercise their Walk-Away Rights, the Settlement Agreement shall not be considered Final as to that Defendant and the provisions in Article XVII–Rescission shall apply and be followed.

## Article XIX–Opt-Outs

19.1    An individual or entity who is a Class Member that requests to be excluded from the Settlement Class may do so only by sending a written request on the form attached as Exhibit 14, along with the information requested in that form, personally signed by the person, Next Friend, personal representative, or entity (as opposed to counsel), to the address provided in the Settlement Class Notice that is postmarked on or before the date to be ordered by the Federal Court.  If a Class Member files a request for exclusion, that person or entity may not file an objection under Article XX–Objections.

19.2    Within seven (7) calendar days after the date ordered by the Federal Court, Co-Lead Class Counsel shall provide Defendants, through their counsel, with a written list of all persons or entities who requested to be excluded, together with the form and information described in the preceding paragraph.

19.3    Each of the Defendants, in their sole discretion, shall have the option to rescind this Settlement Agreement as to itself:

19.3.1 If 200 or more members of the Adult Exposure Subclass request to be excluded;

19.3.2 If more than 100 but less than 200 members of the Adult Exposure Subclass request to be excluded and any of the following conditions are met:

19.3.2.1    more than 10 of the members requesting to be excluded had blood lead tests taken between April 25, 2014 and July 31, 2016 with results of 5 ug/dL or above;

19.3.2.2    more than 10 of the members requesting to be excluded lived or dwelled in a residence that had water samples

taken between April 25, 2014 and July 31, 2016 with lead results of 15 ppb or above; or

19.3.2.3    more than 10 of the members requesting to be excluded lived or dwelled in a residence between April 25, 2014 and July 31, 2016 that had lead or galvanized steel service lines.

19.3.3 If any of the members of the Adult Exposure Subclass requesting to be excluded contracted or died of Legionnaires' Disease between April 25, 2014 and December 31, 2018;

19.3.4 If 200 or more members of the Property Damage Subclass request to be excluded; or

19.3.5 If more than 100 but less than 200 members of the Property Damage Subclass request to be excluded and any of the following conditions are met:

19.3.5.1    more than 10 of the members owned real property that had water samples taken between April 25, 2014 and July 31, 2016 with lead results of 15 ppb or above; or

19.3.5.2    more than 10 of the members owned real property between April 25, 2014 and July 31, 2016 that had lead or galvanized steel service lines.

19.3.6 If 200 or more members of the Business Economic Loss Subclass request to be excluded.

19.4    Within seven (7) calendar days of the written list of all persons or entities requesting exclusion being provided, Co-Lead Class Counsel and rescinding Defendants' Counsel will determine whether the condition permitting termination as set forth in the preceding paragraph has been triggered.   Defendants shall have the right to rescind this Settlement Agreement by providing written notice to Co-Lead Class Counsel and Co-Liaison Counsel within fourteen (14) calendar days after the deadline for ascertaining whether this condition has been triggered.  The process and procedures for rescission shall be as set forth in Article XVII–Rescission.

19.5    Within seven (7) calendar days of receiving such notice, Co-Lead Class Counsel shall provide Defendants with any challenges by Plaintiffs to such claim of entitlement to rescind this Settlement Agreement.  If Co-Lead Class Counsel within that time provide Defendants with written notices from persons or entities on the list prepared pursuant to Paragraph 19.2 who rescind their requests for exclusion from the Settlement Class, then those prior persons or entities shall no longer be considered a person or entity seeking exclusion for purposes of this Article.  In the event the Parties are unable to agree upon whether the conditions stated in

Paragraph 19.3 has been triggered, they shall submit the issue to the Special Master for adjudication.

19.6    Co-Lead Class Counsel may attempt to obtain final rescission of any decision by a person or entity to request exclusion prior to Defendants invoking their rights under Paragraph 19.4.  Neither Plaintiffs nor Defendants, or their respective counsel, shall solicit or advise potential members of the Settlement Class to request exclusion from the Settlement Class.  If contacted by potential members of the Settlement Class about exclusion from the Class, Defendants will promptly refer such potential members of the Settlement Class to Co-Lead Class Counsel.

19.7    If any person or entity that has requested to be excluded from the Settlement Class subsequently files a lawsuit against the Defendants, that person or entity will be required to comply with the Case Management Order attached as Exhibit 11.

## Article XX–Objections

20.1    Provided a Claimant, including an unrepresented Minor, has not submitted a written request to be excluded from the Settlement Class, as set forth in Article XIX–Opt-Outs, such Claimant may present written objections, if any, explaining why he or she believes the Settlement Agreement should not be approved by the Federal Court as fair, reasonable, and adequate.  No later than such date as is ordered by the Federal Court, a Claimant who wishes to object to any aspect of the Settlement Agreement must file with the Federal Court, or as the Federal Court otherwise may direct, a written statement of the objection(s).  The written statement of objection(s) must include a detailed statement of the Claimant's objection(s), as well as the specific reasons, if any, for each such objection, including any evidence and legal authority the Claimant wishes to bring to the Federal Court's attention. That written statement also will contain the Claimant's printed name, address, telephone number, and date of birth, written evidence establishing that the objector is a Claimant, and any other supporting papers, materials, or briefs the Claimant wishes the Federal Court to consider when reviewing the objection.  A written objection may not be signed using any form of electronic signature but must contain the dated signature of the Claimant (not just counsel) making the objection.  The Federal Court shall determine whether any Claimants who do not follow the procedures will have waived any objections they may have.

20.2    A Claimant may object on his or her own behalf or through an attorney hired at that Claimant's own expense, provided the Claimant also signs the objection and has not submitted a written request to be excluded from the Settlement Class, as set forth in Article XIX–Opt-Outs.  Attorneys asserting objections on behalf of Claimants must:  (i) file a notice of appearance with the Federal Court by the date set forth in the Preliminary Approval Order, or as the Federal Court otherwise may direct; (ii) file a sworn declaration attesting to his or her representation of each

Claimant on whose behalf the objection is being filed or a copy of the contract (to be filed *in camera*) between that attorney and each such Claimant; and (iii) comply with the procedures described in this Article.

20.3    A Claimant (or counsel individually representing him or her, if any) seeking to make an appearance at the hearing must file with the Federal Court, by the date set forth in the Preliminary Approval Order, or as the Federal Court otherwise may direct, a written notice of his or her intention to appear at the hearing, in accordance with the requirements set forth in the Preliminary Approval Order.

20.4    Any Claimant who fails to comply with the provisions of this Article will waive and forfeit any and all rights he or she may have to object to the Settlement Agreement.

### Article XXI–Minors and LIIs

21.1    The provisions in this section shall govern the settlement of all claims by or on behalf of all Minors and LIIs, whether they are represented or unrepresented by counsel.

### A.    Preliminary Motions in State and Federal Courts

### i.    Genesee County Circuit Court

21.2    The Parties will file a motion in *In re Flint Water Litigation*, No. 17-108-NO asking the Genesee County Circuit Court to request approval from the Michigan Supreme Court pursuant to Mich. Comp. Laws § 600.408 to concurrently exercise the power and jurisdiction of the probate court.  The Motion shall also request the Supreme Court to order all probate proceedings in state court regarding Minors and LIIs arising out of the Settlement Agreement be transferred or assigned to the Genesee County Circuit Court.

21.3    Plaintiffs' Counsel will file a motion(s) in *In re Flint Water Litigation*, No. 17-108-NO pursuant to Mich. Ct. Rule 2.201(E) seeking an order identifying the types of persons that can act as a Next Friend on behalf of each Minor and LII and appointing these persons provisionally as Next Friends.  The Claims Administrator will require persons that are seeking to act as Next Friends on behalf of a Minor or LII to submit information in the registration process to submit proofs to demonstrate that they qualify under the order to act as a Next Friend.

21.4    Plaintiffs' Counsel and Defendants' Counsel will file a motion(s) in *In re Flint Water Litigation*, No. 17-108-NO seeking the appointment of a Master GAL and two (2) Panel GALs.  The Master GAL shall supervise the Panel GALs and propose additions to or eliminate the number of Panel GALs based upon the volume of claims submitted by Minors and LIIs.  Plaintiffs' Counsel and Defendants' Counsel may propose qualified candidates for these positions along with a compensation proposal

for GAL services.  Any such compensation will be paid from the FWC Qualified Settlement Fund as part of the expenses for administering the Settlement Program by the QSF Administrator.

### ii.  Court of Claims

21.5   Plaintiffs' Counsel and Defendants' Counsel who are parties to any lawsuit filed in the Court of Claims in which Minors or LIIs are named plaintiffs will file a motion in any such lawsuit asking that Court to (1) find that the Settlement Agreement, with respect to each Minor or LII is fair, adequate, and reasonable; (2) dismiss with prejudice those lawsuits and claims; and (3) order that all distribution or probate proceedings for Minors or LIIs seeking to participate in the Settlement Program be handled by the Genesee County Circuit Court.  Nothing stated in this paragraph shall constitute a waiver by the State Defendants or Emergency Manager Defendants of any right to assert that any claim, asserted or unasserted, is solely within the jurisdiction of the Court of Claims.

### iii.  Federal Court

21.6   Plaintiffs will file a motion(s) in *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-MKM pursuant to Fed. R. Civ. P. 17 asking the Federal Court to take judicial notice of and enter the same order identifying the types of persons that can act as a Next Friend on behalf of each Minor and LII as entered *In re Flint Water Litigation*, No. 17-108-NO as set forth in Paragraph 21.3.

21.7   Plaintiffs' Counsel and Defendants' Counsel will file a motion(s) in *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-MKM asking the Federal Court to (a) take judicial notice of and to appoint the same Master GAL and Panel GALs appointed in *In re Flint Water Litigation*, No. 17-108-NO as set forth in Paragraph 21.4 and (b) to order that all distribution or probate proceedings for Minors and LIIs seeking to participate in the Settlement Program be handled by the Genesee County Circuit Court.

21.8   Co-Lead Class Counsel are authorized to advise and assist any Minors who have not retained counsel in the following manner:  advising  them about their rights under the executed Settlement Agreement and their options; assisting such individuals by explaining the terms of the Settlement Agreement and the forms required to register and participate in the Settlement Program; assisting such individuals in completing the forms and compiling the necessary documents and tests to obtain Monetary Awards under the Settlement Program; and assisting and advocating for such individuals in navigating the settlement process.  In addition, Co-Lead Class Counsel shall explain to such individuals that they have the right to obtain counsel but need not do so in order to participate in the Settlement Program. Co-Lead Class Counsel may be retained to represent individual Minors except that Co-Lead Class Counsel may not represent any such Minor in presenting an objection

to the Settlement Agreement or its terms. Co-Lead Class Counsel may also refer Minors who have not retained counsel to other lawyers. Minors who have not initially retained counsel may later retain any lawyer they choose with respect to the Settlement Agreement or Settlement Program. Such retainers may be subject to fee procedures or limitations set by the Federal Court. Other counsel similarly may fulfill the functions described herein and nothing in this paragraph may in any way be deemed to prevent or prohibit lawyers or persons other than Co-Lead Class Counsel from assisting or advocating for Minors in the claims process who have not retained counsel with respect to the Settlement Agreement or Settlement Program.

21.9 Co-Liaison Counsel are authorized to advise and assist any Minors who have not retained counsel in the following manner: advising them about their rights under the executed Settlement Agreement and their options; assisting such individuals by explaining the terms of the Settlement Agreement and the forms required to register and participate in the Settlement Program; assisting such individuals in completing the forms and compiling the necessary documents and tests to obtain Monetary Awards under the Settlement Program; and assisting and advocating for such individuals in navigating the settlement process. In addition, Co-Liaison Counsel shall explain to such individuals that they have the right to obtain counsel but need not do so in order to participate in the Settlement Program. Co-Liaison Counsel may be retained to represent individual Minors except that Co-Liaison Counsel may not represent any such Minor in presenting an objection to the Settlement Agreement or its terms. Co-Liaison Counsel may also refer Minors who have not retained counsel to other lawyers. Minors who have not initially retained counsel may later retain any lawyer they choose with respect to the Settlement Agreement or Settlement Program. Such retainers may be subject to fee procedures or limitations set by the Federal Court. Other counsel (or others) similarly may fulfill the functions described herein and nothing in this paragraph may in any way be deemed to prevent or prohibit lawyers or persons other than Co-Liaison Counsel from assisting or advocating for Minors in the claims process who have not retained counsel with respect to the Settlement Agreement or Settlement Program.

### B. Registration and Submission of Claims Materials on Behalf of a Minor or LII

21.10 Minors and LIIs shall comply with all deadlines to register to participate, deliver Claims Materials, submit Reconsideration Requests, and make appeals to the Special Master set forth in Article III–Registration for and Participation in Settlement Program and Article XIII–Reconsideration Requests and Appeals.

21.11 The Next Friend appointed for a Minor or LII shall submit a Registration Form and Claims Materials to the Claims Administrator. The Registration Form and Claim Form will require the Next Friend to identify themselves as such for the Minor or LII and provide proof that they meet the

requirements of the orders entered by the Genesee County Circuit Court and the Federal Court. The Next Friend will be acting under supervision of the Genesee County Circuit Court or the Federal Court.

21.12 Within forty-five (45) days of receipt of receiving a Claim Form identifying a Next Friend for a Minor or LII, the Claims Administrator will send an Adverse Notice to any Next Friend that has failed to submit proofs necessary to demonstrate that they meet the requirements to act as a Next Friend for a Minor or LII. The Claims Administrator shall consult with the Special Master before issuing any such Adverse Notice.

21.13 A Next Friend may seek reconsideration of or an appeal of any Adverse Notice issued by the Claims Administrator pursuant to Paragraph 21.12. The process and procedures for any such Reconsideration Request and appeal are set forth in Article XIII–Reconsideration Request and Appeals.

21.14 The Claims Administrator shall promptly inform and provide necessary information to the Master GAL in the event of a dispute between two or more individuals seeking to act as a Next Friend for the same Minor or LII. The Master GAL may take action to secure consensual resolution among the potential Next Friends. If consensual resolution is not obtained, the Master GAL shall within twenty-one (21) days of being informed of the dispute refer the matter to the Special Master along with a report of his or her findings and recommendations.

21.15 The Special Master shall issue her determination within twenty-one (21) days of receipt of the findings and recommendations of the Master GAL. In the course of evaluating the dispute, the Special Master may, in her sole discretion, consult with the Master GAL or Claims Administrator. The Special Master may also consult with any or all of the Parties' respective counsel, but only if the Special Master initiates such communications. The Special Master's determination shall be final, binding, and non-appealable by any means. The Special Master's determination shall be sent to each of the individuals seeking to act as a Next Friend and submitted to the Claims Administrator for uploading to its secure website.

## C.   Second Stage Approval Process—Favorable Notices

21.16 After the Claims Administrator has determined that a Minor or LII is eligible to participate as a Claimant in the Settlement Program and before a Monetary Award is issued to that Minor or LII, the Claims Administrator must certify in the Favorable Notice that he or she has properly determined that the Minor or LII is eligible to participate as a Claimant in the Settlement Program and assigned the Settlement Category that will result in the highest monetary award to the Minor or LII based upon the submitted Claims Materials.

21.17  The Claims Administrator shall issue a Favorable Notice to the Next Friend appointed to act on behalf of a Minor or LII.  The Next Friend must accept or reject the terms stated in the Favorable Notice within fifteen (15) days of receipt.

21.18  If the Next Friend accepts the Favorable Notice, he or she must sign an additional release in the form attached as Exhibit 15 on behalf of the Minor or LII.  The Next Friend must elect at that time from the options in Paragraph 21.28 as to how the Monetary Award should be distributed to the Minor or LII.

21.19  If the Next Friend fails to timely accept or reject the Favorable Notice, the Claims Administrator shall send a second notice informing the Next Friend that the terms stated in the Favorable Notice must be accepted or rejected within 14 days of receipt.  If, after the second notice, the Next Friend fails to accept or reject the Favorable Notice, the Notice will be presumed to be rejected by the Next Friend.

21.20  If the Next Friend accepts a Favorable Notice and does not elect to receive a Structured Settlement as described in Paragraph 21.28.3, a Panel GAL will be randomly assigned for the Claimant.  A Structured Settlement described in Paragraph 21.28.3 that results in an annual payment of less than $5,000 until that Minor becomes an Adult does not require review and approval by a Panel GAL or the Genesee County Circuit Court.

21.21  The randomly assigned Panel GAL will evaluate whether the Settlement Category and Monetary Award assigned by the Claims Administrator, and the option elected by the Next Friend for the Minor or LII to receive a Monetary Award is fair, reasonable, adequate, and in the best interests of the particular Minor or LII.  If the Panel GAL agrees with the determinations of the Claims Administrator and Next Friend, such Panel GAL shall issue a report and recommendation regarding their findings.  The Panel GAL's evaluation will be presented to the Genesee County Circuit Court for determination of whether the Settlement Category, Monetary Award, and elected option to receive the Monetary Award is fair, reasonable, and in the best interests of the particular Minor or LII.  If the Panel GAL and Genesee Circuit Court agree that everything is in the best interest of the Minor or LII, then the settlement will be approved and the Claims Administrator will effectuate the option elected by the Next Friend for the Minor or LII.

21.22  If the Panel GAL or the Genesee County Circuit Court determines that the assigned Settlement Category, Monetary Award, or elected option to receive the Monetary Award is not fair, reasonable, adequate, or in the best interests of the Minor or LII, then the claim will be sent for a reevaluation by the Claims Administrator or Next Friend and the process repeated until the Monetary Award is approved by the Panel GAL and the Genesee County Circuit Court.

**D.     Second Stage Approval Process—Unfavorable Notices, Reconsideration Requests, and Appeals to the Special Master**

21.23  Any Minor or LII who receives an Adverse Notice or disagrees with the Settlement Category assigned by the Claims Administrator in a Favorable Notice may request that the Claims Administrator reconsider its determination(s) and appeal any Reconsideration Notice relating to a Reconsideration Request to the Special Master as set forth in Article XIII–Reconsideration Requests and Appeals.

21.24  If the Reconsideration Request results in the Claims Administrator issuing a determination in favor of the Claimant or the Special Master finds that the Claims Administrator's decisions regarding the Claimant are contrary to clear and convincing evidence, the processes and procedures in Paragraphs 21.28–21.33 shall be followed.

21.25  If a Minor or LII, who is not represented by an attorney, receives an Adverse Notice and does not timely submit a Reconsideration Request, the Claims Administrator shall, forward the Adverse Notice to the Master GAL for review to determine if the Adverse Notice is fair and reasonable.  If the Master GAL determines that the Adverse Notice is not fair and reasonable, the Master GAL shall state its determination in writing and send the claim back for reevaluation by the Claims Administrator.

21.26  If the Master GAL determines that the Adverse Notice is fair and reasonable, the Master GAL shall state its determination in writing and forward its determination and the Adverse Notice to the Genesee County Circuit Court for further review.  The Genesee County Circuit Court's determination shall be final.

**E.     Non-Participating Minors and LIIs**

21.27  For a Minor or LII that is an Individual Plaintiff to not register or participate as a Claimant in the Settlement Program, their Next Friend must timely submit the form attached as Exhibit 20, with the detailed information stated on the form, to the Federal Court, Court of Claims, or Genesee County Circuit Court on behalf of the Minor or LII indicating that they are not participating as a Claimant in the Settlement Program as an Individual Plaintiff.  The form attached as Exhibit 20 shall also notify them of the Case Management Order requirements set forth at Exhibit 11 to which they will be subject in order to maintain their case in either the Federal Court, Court of Claims, or Genesee County Circuit Court.

## F.   Monetary Awards to Minors and LIIs

21.28  The Next Friend shall select to receive a Monetary Award in excess of $5,000 for a Minor or LII from one or more of the following options:

      21.28.1      a Special Needs Trust;

      21.28.2      a Settlement Preservation Trust; or

      21.28.3      a Structured Settlement.

21.29  The Claims Administrator and Settlement Planning Administrator, subject to review and approval by the Master GAL, will provide general information on the website and in hard copy describing the potential benefits and limitations of each option listed in Paragraphs 21.28.1–21.28.3.   Defendants, Claims Administrator, and Defendants' Counsel shall have no responsibility or liability arising out of any option chosen by a Next Friend.

21.30  Within fourteen (14) days of the entry of the Preliminary Approval Orders, Plaintiffs' Counsel shall submit the proposed Special Needs Trust and Settlement Preservation Trust for review and approval by the Genesee County Circuit Court.  .

21.31  Nothing stated herein should be construed as preventing a Next Friend from electing to have the Monetary Award to be paid in whole or in part to fund a Structured Settlement with structure payments made payable to any of the trusts as outlined above, or subject to obtaining approval from a Panel GAL, to a competent adult with legal capacity, or their legal representative, in accordance with the structured settlement annuity contract terms.

21.32  If the Next Friend elects a Structured Settlement that results in an annual payment of less than $5,000 until that Minor becomes an Adult, no further review or approval by a Panel GAL or the Genesee County Circuit Court is required.

21.33  If the Monetary Award is for less than $5,000, or the Minor or LII receives less than $5,000 annually due to the purchase of a Structured Settlement, the Next Friend may elect to have that Monetary Award made payable to (a) to the court-appointed conservator, or if such a petition is pending to the conservator in their fiduciary capacity or (b) pursuant to Mich. Comp. Laws § 700.5102, the Monetary Award can be paid to an individual having the care and custody of the Minor, with whom the Minor resides, or a guardian of the Minor for use for the Minor's benefit.  For LII's receiving SSI benefits and receiving less than $5,000, such

Monetary Award may be paid to a Michigan ABLE account if they became disabled prior to age 20.

### G.    Class Actions in State Courts

21.34  All putative class action lawsuits filed in any Michigan state court listed on Exhibit 16 will be dismissed against Settling Defendants pursuant to stipulations. As a result, only the named Minors and LIIs in any class action lawsuit filed in state courts will need to obtain court approval to have their lawsuit settled and dismissed, and only for themselves as individuals.

## Article XXII–Lawyer Participation Provisions

22.1    Subject to the Michigan Rules of Professional Conduct or any other applicable rules, all lawyers listed on Exhibit 17 who represent any Plaintiffs shall as appropriate:

22.1.1 Recommend to all of their clients that they register for and participate as a Claimant in the Settlement Program;

22.1.2 Publicly support the approval of and implementation of the Settlement Program;

22.1.3 Not advance litigation expenses, including without limitation, expenses for experts, transcripts, documents, and travel, to or on behalf of any person, entity, or Plaintiffs:  (a) that Opts-Out or fails to register for and participate as a Claimant; or (b) in any Flint water-related litigation filed after the Execution Date; unless such attorney has contracted in writing before the Execution Date to advance such expenses to or on behalf of any person, entity, or  Plaintiff; and

22.1.4 Forgo any financial interest in any claim, filed or unfiled, that arises out of water received from the Flint Water Treatment Plant during the Exposure Period that is not resolved and concluded by the Settlement Agreement, unless such attorney has contracted before the Execution Date to obtain such financial interest.

## Article XXIII–Miscellaneous

23.1    This Settlement Agreement does not settle or compromise any claim other than those described in Article XVI–Releases and Covenants Not to Sue.

23.2    The terms of this Settlement Agreement are not severable.  Each of its terms is required as an integral part of this Settlement Agreement, and all terms must be enforceable for any of them to be enforceable.

69

23.3   This Settlement Agreement constitutes the entire, complete and integrated agreement among Plaintiffs and Defendants pertaining to the settlement of the Fourth Consolidated Amended Class Complaint, the Amended Master Complaint, and Related Lawsuits against Defendants only and supersedes and replaces any and all prior and contemporaneous undertakings of Plaintiffs and Defendants in connection therewith, including the previous August 12, 2020 settlement agreement and escrow agreement.  This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Class Counsel, Co-Liaison Counsel, and Defendants' Counsel and approved by the Federal Court.

23.4   All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of Michigan without regard to its choice of law or conflict of law principles.

23.5   The United States District Court for the Eastern District of Michigan retains exclusive jurisdiction over all matters relating to the interpretation, implementation, and enforcement of this Settlement Agreement.  Plaintiffs' Counsel acknowledges that this paragraph does not constitute a waiver or otherwise affect or impair the State of Michigan's sovereign immunity under the Eleventh Amendment of the U.S. Constitution.

23.6   This Settlement Agreement shall be binding upon and inure to the benefit of, the successors and assigns of the Settlement Class, Individual Plaintiffs, and Defendants.  Without limiting the generality of the foregoing, each and every covenant and agreement made herein by Plaintiffs, Co-Liaison Counsel or Co-Lead Class Counsel shall be binding upon all Settlement Class Members, Individual Plaintiffs, and Releasors.  The Releasees (other than entities and persons which are parties to this Agreement) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

23.7   Neither Plaintiffs nor Defendants shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

23.8   This Settlement Agreement may be executed in counterparts by Plaintiffs and Defendants, and a facsimile signature or a tangible communication from one authorized to sign indicating that a signature has been affixed shall be deemed an original signature for purposes of executing this Settlement Agreement.

23.9   Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement on behalf of his or her respective clients, subject to Federal Court approval.

23.10  All notices made under this Settlement Agreement shall be in writing. Each such notice shall be given by (a) hand delivery; (b) registered or certified mail, return receipt requested, postage pre-paid; or (c) Federal Express, United Parcel Service, or similar overnight courier, and shall be addressed to counsel listed below or to their partners or successors, as appropriate.  Copies of all notices under this Settlement Agreement shall also be transmitted by e-mail to those same counsel.

IN WITNESS WHEREOF, the parties to this Settlement Agreement, through their fully authorized representatives (subject to the limitations described above), have agreed to this Settlement Agreement as of the date first written above.

71

The State of Michigan and State
Defendants

Dana Nessel
Attorney General

_____

Richard S. Kuhl
Margaret A. Bettenhausen
Nathan A. Gambill
Charles A. Cavanagh
Assistant Attorneys General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
kuhlr@michigan.gov
bettenhausenm@michigan.gov
gambilln@michigan.gov
ccavanagh2@michigan.gov

Dated: _11-13-2020_____

Governor Gretchen Whitmer

_____

Todd R. Mendel
Eugene Driker
Special Assistant Attorneys General
Barris, Sott, Denn & Driker, PLLC
333. W. Fort Street, Suite 1200
Detroit, MI 48226
(313) 965-9725
tmendel@bsdd.com
edriker@bsdd.com

Dated: _11-13-2020_____

72

Co-Liaison Counsel for Individual
Plaintiffs

_____
Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com


Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs


_____
Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com


Dated: _____


Co-Counsel for McLaren Defendants


_____
Susan E. Smith
Beveridge & Diamond, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C. 20005-3311
(202) 789-6000
ssmith@bdlaw.com

Dated: _____

Co-Lead Class Counsel


_____
Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
tleopold@cohenmilstein.com


Dated: _____

Co-Lead Class Counsel


_____
Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com


Dated: _____


Co-Counsel for McLaren Defendants


_____
J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____

Dated: _Naumber 13, 2050_

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

_____

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: _____

Dated: _____

Co-Counsel for McLaren Defendants

Co-Counsel for McLaren Defendants

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C. 20005-3311
(202) 789-6000
ssmith@bdlaw.com

_____

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Muñoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

_____

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: _11/13/20_____

Dated: _____

Co-Counsel for McLaren Defendants

Co-Counsel for McLaren Defendants

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C. 20005-3311
(202) 789-6000
ssmith@bdlaw.com

_____

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI  48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: _____

Dated: _November 16, 2020_

Co-Counsel for McLaren Defendants

Co-Counsel for McLaren Defendants

_____

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1350 I Street, N.W., Suite 700
Washington, D.C. 20005-3311
(202) 789-6000
ssmith@bdlaw.com

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _November 13, 2020_

Dated: _November 13, 2020_

Counsel for Flint Defendants

Counsel for Flint Defendants

_William Y. Kim, Assistant City Attorney_
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 766-7146
wkim@cityofflint.com

Frederick A Berg, Jr.
Butzel Long, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com

Dated: 11/13/2020

Dated: 11/12/2020

Counsel for Rowe Professional Services
Company

_____

Craig S. Thompson
Sullivan, Ward, Patton, Gleeson, and
Felty, P.C.
400 Galleria Officentre
Suite 500
Southfield, MI 48034
(248) 746-0700
cthompson@sullivanwardlaw.com

Dated: _____

74

Counsel for Flint Defendants

Counsel for Flint Defendants

_____

_____

William Y. Kim, Assistant City
Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 766-7146
wkim@cityofflint.com

Frederick A Berg, Jr.
Butzel Long, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com

Dated: _____

Dated: _____

Counsel for Rowe Professional Services
Company

_____

Craig S. Thompson
Sullivan, Ward, Patton, Gleeson, and
Felty, P.C.
400 Galleria Officentre
Suite 500
Southfield, MI 48034
(248) 746-0700
cthompson@sullivanwardlaw.com

Dated: ___11/13/20_____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In Re* Flint Water Cases

No. 5:16-cv-10444-JEL-MKM

HON. JUDITH E. LEVY

MAG. MONA K. MAJZOUB

---

## ERRATA SHEET

Co-Lead Class Counsel, Co-Liaison Counsel, and Defendants' Counsel submit

this errata sheet to correct the following errors in the Settlement Agreement:

- Paragraph 3.34 – the language "Claims Materials or Registration Form" in the last two lines is changed to "Claims Materials";

- Paragraph 15.1 – the reference to "Lien Disclosure Administrator" is changed to "Lien Resolution Administrator"; and

- Paragraph 21.34 – the words "against Settling Defendants" are added after "dismissed".

Co-Lead Class Counsel, Co-Liaison Counsel, and Defendants' Counsel Parties

also submit this errata sheet to correct errors on Exhibits 2, 5, 6, and 11 to the

Settlement Agreement:

- Exhibits 2 and 5 – the Claim Form and Registration Form were edited to correct minor typographical errors and otherwise clarify certain language, which are reflected in the redlined documents submitted to the Federal Court;

- Exhibit 6 – references to *State of Michigan v. Veolia North America Inc., et al.*, 16-107175 and *Republic Services of Flint v. City of Flint*, 16-107526 were removed from the Exhibit, *Vanessa Singelton-Hill, et al. v. Lockwood, Andrews & Newnam, et al.*, 17-110098 was added to the Exhibit, and the case number for *Coalition for Clean Water v. City of Flint, et al.* was corrected to 15-104900; and

- Exhibit 11 – on page 1 of the proposed Case Management Order for the Michigan Court of Claims the reference to "Genesee County Circuit Court" is changed to "Court of Claims."

IN WITNESS WHEREOF, the Parties to this Settlement Agreement, through their fully authorized representatives, have agreed to the corrections set forth on this errata sheet.

The State of Michigan and State
Defendants

Dana Nessel
Attorney General

_Richard S. Kuhl (w/permission)_

Richard S. Kuhl
Margaret A. Bettenhausen
Nathan A. Gambill
Charles A. Cavanagh
Assistant Attorneys General
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
kuhlr@michigan.gov
bettenhausenm@michigan.gov
gambilln@michigan.gov
ccavanagh2@michigan.gov

Dated: _January 14, 2021_

Governor Gretchen Whitmer

_[signature]_

Todd R. Mendel
Eugene Driker
Special Assistant Attorneys General
Barris, Sott, Denn & Driker, PLLC
333. W. Fort Street, Suite 1200
Detroit, MI 48226
(313) 965-9725
tmendel@bsdd.com
edriker@bsdd.com

Dated: _January 14, 2021_

Co-Liaison Counsel for Individual
Plaintiffs

_____
Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com


Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs


_____
Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com


Dated: _____


Co-Counsel for McLaren Defendants


_____
Susan E. Smith
Beveridge & Diamond, P.C.
1900 N Street, Suite 100
Washington, D.C. 20036
(202) 789-6000
ssmith@bdlaw.com

Dated: _____

Co-Lead Class Counsel


_____
Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com


Dated: _____
Co-Lead Class Counsel


_____
Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com


Dated: _____


Co-Counsel for McLaren Defendants


_____
J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____
Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com


Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

_____
Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com

Dated: __1/14/2021__
Co-Lead Class Counsel


_____
Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com


Dated: _____


Co-Counsel for McLaren Defendants

_____
Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com


Dated: _____


Co-Counsel for McLaren Defendants


_____
Susan E. Smith
Beveridge & Diamond, P.C.
1900 N Street, Suite 100
Washington, D.C. 20036
(202) 789-6000
ssmith@bdlaw.com

Dated: _____

_____
J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com


Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com


Dated: __01-14-2021_____


Co-Counsel for McLaren Defendants

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1900 N Street, Suite 100
Washington, D.C. 20036
(202) 789-6000
ssmith@bdlaw.com

Dated: _____

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____

Co-Lead Class Counsel

_____

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: _____


Co-Counsel for McLaren Defendants

_____

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI  48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

Dated: _____

Co-Counsel for McLaren Defendants

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1900 N Street, Suite 100
Washington, D.C. 20036
(202) 789-6000
ssmith@bdlaw.com

Dated: _____

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____
Co-Lead Class Counsel

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: ____1.14.21____

Co-Counsel for McLaren Defendants

_____

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com


Dated: _____

_____

Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
PLLC
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com

Dated: _____

Co-Liaison Counsel for Individual
Plaintiffs

Co-Lead Class Counsel

_____

Hunter Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com


Dated: _____

_____

Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Dated: _____

Co-Counsel for McLaren Defendants

_____

Susan E. Smith
Beveridge & Diamond, P.C.
1900 N Street, Suite 100
Washington, D.C. 20036
(202) 789-6000
ssmith@bdlaw.com

Dated: January 14, 2021

Co-Counsel for McLaren Defendants

_____

J. Brian MacDonald
Cline, Cline & Griffin
503 S. Saginaw St., Suite 1000
Flint, MI 48503
(810) 232-3141
bmacdonald@ccglawyers.com

Dated: January 14, 2021

Counsel for Flint Defendants

William Y. Kim, Assistant City
Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 766-7146
wkim@cityofflint.com

Dated: 1/14/2021

Counsel for Rowe Professional Services
Company

Craig S. Thompson
Sullivan, Ward, Patton, Gleeson, and
Felty, P.C.
400 Galleria Officentre
Suite 500
Southfield, MI 48034
(248) 746-0700
cthompson@sullivanwardlaw.com

Dated: _____

Counsel for Flint Defendants

Frederick A Berg, Jr.
Butzel Long, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com

Dated: 1/14/2021

Counsel for Flint Defendants

Counsel for Flint Defendants

_____

William Y. Kim, Assistant City
Attorney
City of Flint, Department of Law
1101 S. Saginaw St., 3rd Floor
Flint, MI 48502
(810) 766-7146
wkim@cityofflint.com

Dated: _____

_____

Frederick A Berg, Jr.
Butzel Long, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
berg@butzel.com

Dated: _____

Counsel for Rowe Professional Services
Company

_____

Craig S. Thompson
Sullivan, Ward, Patton, Gleeson, and
Felty, P.C.
400 Galleria Officentre
Suite 500
Southfield, MI 48034
(248) 746-0700
cthompson@sullivanwardlaw.com

Dated: ___1/14/21___