## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

ALL CASES

_____/

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO ESTABLISH SETTLEMENT CLAIMS PROCEDURES AND ALLOCATION AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT COMPONENTS [1318] AND GRANTING PLAINTIFFS' MOTION FOR AN ORDER ADOPTING THE PROPOSED MOTION FOR APPROVAL OF WRONGFUL DEATH <u>SETTLEMENT [1334]</u>

Before the Court is Plaintiffs' motion to establish settlement claims procedures and allocation and for preliminary approval of class settlement components (ECF No. 1318) and Individual Plaintiffs' motion for an order adopting the proposed motion for approval of wrongful death settlement. (ECF No. 1334).

Plaintiffs are thousands of children, adults, property owners, and business owners who allege they were exposed to lead, *legionella*, and other contaminants from the City of Flint's municipal water supply. The

events that resulted in this large-scale municipal water contamination are now known as the Flint Water Crisis. In their lawsuits, both the putative class members and Individual Plaintiffs allege that Defendants caused, prolonged, concealed, ignored, or downplayed the risks of Plaintiffs' exposure to the City's water, which injured Plaintiffs and damaged their property and commercial interests.

The settlement before the Court is a partial settlement and therefore does not represent the end of the Flint Water Crisis litigation. It would allow recovery of monetary awards for persons (children and adults) exposed to Flint water during a specified exposure period, along with property owners, renters, and business owners. Specifically, the settlement provides the opportunity for monetary awards for every person exposed while a minor child; every adult exposed with a resultant injury; every residential property owner, renter, or person responsible for paying Flint water bills; and certain business owners impacted during the relevant time period.

The proposed settlement creates a comprehensive settlement program that will address all individually represented persons and all

Minors[1] (both represented and unrepresented). It also provides a 'class action' resolution for those adults who have not hired their own lawyer. The compensation process and timeline are the same for every person— and the amount of money that a claimant will receive is based on objective factors such as age, exposure to the water, test results, specific identified injuries, property ownership or lease, payment of water bills, and commercial losses. Significantly, the compensation will be the same for similarly situated individuals and entities—regardless of whether they are represented, unrepresented, or are a member of the 'class.'

This motion is Plaintiffs' first step towards resolving their claims against the "Settling Defendants": the State of Michigan and its

---

[1] "Minor" is defined in the Master Settlement Agreement (the "MSA") as "any Claimant participating in the Settlement program that will be less than eighteen (18) years of age at the time an election is made by a Next Friend from the options on how a Monetary Award should be distributed as set forth in Paragraph 21.28 [of the MSA]." (ECF No. 1319-1, PageID.40340.) Notably, there are some individuals who were legal minors at the time of exposure, but either have already turned eighteen before registering (and therefore register as adults), or are legal minors at the time of registration, but will turn eighteen before the time that they elect the form by which to receive a monetary award. Those persons are no longer "Minors" at the election time and, under the MSA, control their own claim. The Court will distinguish between "Minors" under the MSA and legal "minors" with appropriate capitalization in this Opinion.

individual officials;[2] the City of Flint, three Emergency Managers, and several City employees;[3] the "McLaren Defendants," which are McLaren Health Care Corporation, McLaren Regional Medical Center, and McLaren Flint Hospital; and Rowe Professional Services Company ("Rowe"). It does not resolve all of the Flint Water Cases, and the first round of bellwether trials against the non-settling Defendants are currently set for June 4, 2021.[4]

---

[2] These are collectively referred to as the "State Defendants" and include: the State of Michigan, the Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy), the Michigan Department of Health and Human Services, the Michigan Department of Treasury, former Governor Richard D. Snyder, current Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Liane Shekter Smith, Daniel Wyant, Stephen Busch, Kevin Clinton, Patrick Cook, Linda Dykema, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Dennis Muchmore, Nancy Peeler, Robert Scott, Adam Rosenthal, and Andy Dillon.

[3] These are collectively referred to as the "City Defendants" and include the City of Flint, Darnell Earley, Howard Croft, Michael Glasgow, Gerald Ambrose, Edward Kurtz, Michael Brown, Dayne Walling, and Daugherty Johnson.

[4] The Settling Defendants do *not* include private engineering firm Defendants Veolia Water North America Operating Services, LLC; Veolia North America, LLC; Veolia North America, Inc.; Veolia Environment, S.A.; Lockwood Andrews & Newnam, P.C.; Lockwood Andrews & Newnam, Inc.; Leo A. Daly Company; United States of America; and United States Environmental Protection Agency and their affiliates. Accordingly, even if the proposed settlement receives final approval, the litigation against these Defendants continues.

4

The Court's role at the preliminary approval stage is circumscribed. The Court may not rewrite the settlement but may only reject it or grant it preliminary approval. Generally, a settlement between an adult plaintiff and a defendant does not require court approval. But because this settlement presents a hybrid structure that includes a class component for unrepresented adults—and involves a substantial number of potential claims of Minors—preliminary approval of certain aspects of the proposed settlement is both appropriate and necessary.

For the reasons set forth below, the Court grants preliminary approval of this settlement. This approval will trigger a period of time in which minors, adults, property owners/renters, and commercial entities may decide whether to participate in the settlement. If a qualifying person or entity chooses to register as a participant, they may then formally object to aspects of the settlement and set forth any reasons why it should not be afforded final approval. Participants may also proceed with their litigation against the non-settling Defendants and, if summary judgment is sought and denied, be heard in front of a jury.[5]

---

[5] Those who are members of any class have the additional choice to opt out of this settlement entirely and proceed with their individual litigation against the Settling Defendants.

The Court has heard from some Flint residents who have expressed frustration with aspects of this settlement. Though the Court's role in responding to these concerns is limited, these impacted individuals may join the settlement and still continue in the political process to seek the justice they have told the Court this settlement does not provide. Those affected will have to decide whether the risks of litigation—and there are many—outweigh the benefit of a certain resolution with the Settling Defendants. The Court is sympathetic to the complexity of these decisions. Indeed, there may be no amount of money that would fully recognize the harm the residents of Flint have experienced, including their anxiety, fear, distrust, and anger over the events of last seven years. Litigation has its benefits, but also its limitations, and the preliminary approval of this settlement does not affect or preclude other avenues of redress. This litigation—however it concludes—need not be the final chapter of this remarkable story.

To grant preliminary approval, the Court must determine whether the proposed Master Settlement Agreement (the "MSA") is within the range of possible final approval. Specifically, at this stage, the Court is to review the procedures related to Minors and Legally Incapacitated

Individuals[6] ("LIIs") to determine whether they are fair and in the best interests of Minors and LIIs. And also, the Court must determine whether there is a sufficient basis to conditionally certify a settlement class and subclasses as proposed. The Court must determine whether the proposed settlement class and subclasses fall within the range of possible approval, appear to be fair, and are free of obvious deficiencies.

Preliminary approval, therefore, is the first step in the multi-stage settlement process. Before final approval can be granted, claimants will have an opportunity to evaluate whether it is in their best interests to join the settlement. They will also have an opportunity to object to the settlement and to opt out of the settlement (or, if they are not a class member, to simply reject the settlement) and proceed to litigate their claims individually.

Plaintiffs in three of the Flint Water Cases filed responses to the motion for approval: the *Anderson* Plaintiffs[7] (ECF No. 1338); Plaintiffs

---

[6] A Legally Incapacitated or Incompetent Individual means an individual described in Mich. Comp. Laws §700.1105(a).

[7] The *Anderson* Plaintiffs, through their counsel, notified the Court at the December 21, 2020 hearing that the issues raised in their response are resolved pending submission of an errata sheet. The errata sheet has been submitted, and it addresses and resolves the *Anderson* Plaintiffs' specific issue. (ECF No. 1394-7, PageID.54248.)

7

Gradine Rogers and the Estate of Odie Brown (ECF No. 1340); and the *Chapman* Plaintiffs. (ECF No. 1341.) These filings will be addressed below.

On December 21, 2020, the Court held a hearing on these motions via video teleconference. The Honorable Christopher M. Murray of the Michigan Court of Claims and the Honorable Joseph J. Farah of Genesee County Circuit Court were in attendance. Also in attendance were the Special Master Deborah E. Greenspan and the Court-appointed Guardian Ad Litem Miriam Z. Wolock.

For the reasons set forth below, the Court grants Plaintiffs' motions.

## I.   Settlement Negotiations

The Flint Water Cases include scores of separate lawsuits pending in the Genesee County Circuit Court and the Michigan Court of Claims, and this Court. The first case—*Mays v. Snyder*, No. 15-14002 (now consolidated)—was filed on November 13, 2015, and the most recent—*Atkins v. City of Flint*, No. 20-12005—was filed on July 28, 2020. These cases comprise both putative class action lawsuits and lawsuits brought by thousands of Individual Plaintiffs.

8

In the proposed settlement, the putative class action Plaintiffs and the Individual Plaintiffs have joined together to resolve their claims against the Settling Defendants. If approved and accepted, the proposed settlement would resolve cases against the Settling Defendants in all courts and would further resolve claims of those who have not yet filed a lawsuit. Plaintiffs included a list of cases pending in this Court, the Genesee County Circuit Court, the Michigan Court of Claims, and the U.S. Court of Appeals that would be resolved with respect to the Settling Defendants, should the Plaintiffs who have filed individual cases agree to participate. This list is incorporated into this Order. (*Carthan*, No. 16-10444, ECF No. 1319-2, PageID.40765–40782 (as amended,[8] ECF No. 1394-7, PageID.54244–54263).)

In January 2018, the Court appointed two mediators pursuant to E.D. Mich. Local Rule 16.4 — former United States Senator Carl Levin and former Wayne County Circuit Court Judge Pamela Harwood — to facilitate settlement discussions. (ECF No. 324, PageID.11687–11693.) In July 2018, under Federal Rule of Civil Procedure 53, the Court

---

[8] As discussed regarding the *Anderson* Plaintiffs, the list was modified by the submission of the errata sheet. (ECF No. 1394-7, PageID.54244–54263.)

appointed Deborah E. Greenspan to serve as a Special Master to assist with certain pretrial matters and to manage aspects of the settlement process. (ECF No. 544, PageID.16581–16590.) Also, in September 2019, the Court appointed Subclass Settlement Counsel to represent six subclasses of Plaintiffs in settlement allocation discussions. (ECF No. 937, PageID.24430–24433.)

Sen. Levin and Ret. Judge Harwood reported to the Court periodically regarding the status of settlement negotiations. Additionally, beginning in September 2018,  Special Master Greenspan began collecting data regarding potential claimants across all Flint Water Cases. (ECF No. 519, PageID.15988; ECF No. 563, PageID.17097.) The primary purpose of the data collection was to understand the scope and nature of the claims, to facilitate and inform the parties' settlement discussions, and to develop a settlement structure. (ECF Nos. 614, 673.) Every forty-five days since December 28, 2018, counsel provided Special Master Greenspan with the Court-ordered data. (ECF No. 673.) Special Master Greenspan has filed three interim reports to the Court regarding the data. (ECF Nos. 772, 949, 1105.) She also collected Time and Expense

Common Benefit Data. Data collection is ongoing in light of the proposed settlement. (*See* ECF No. 1254.)

The negotiations on behalf of the Plaintiffs were conducted by Co-Liaison Counsel and Co-Lead Class Counsel appointed by the Court for this purpose, among other responsibilities. The Subclass Settlement Counsel later appointed by the Court participated in negotiations along with Co-Liaison Counsel over how to allocate any settlement funds among the various categories of claimants. These negotiations occurred under the auspices of the Court and the supervision of the Court-appointed Special Master.

In August of 2020, Plaintiffs and the State Defendants announced that they had reached an agreement to settle their claims for $600 million. In October of 2020, Plaintiffs and the City Defendants preliminarily agreed to a $20,000,000 settlement, which required approval from the Flint City Council on or before December 31, 2020. The Flint City Council voted to join the settlement on December 21, 2020. (ECF No. 1357, PageID.42106.) Plaintiffs and the McLaren Defendants also agreed to settle for $20 million, and Plaintiffs and Rowe agreed to settle for $1.25 million.

The Court appointed Miriam Z. Wolock on December 9, 2020 as Guardian Ad Litem, for the purpose of advising the Court on the fairness of the processes and procedures for handling claims under the proposed settlement related to Minors and LIIs. (ECF No. 1339, PageID.41798–41800.) Ms. Wolock provided a comprehensive oral report at the hearing held on December 21, 2020.

## II.    Procedural History

The Flint Water Cases have a complex procedural history. The cases fall into several broad categories, as discussed above, in both federal and state court, including putative class action cases, individual cases, and *legionella* cases. The Court has adjudicated scores of motions to dismiss in these cases and issued hundreds of opinions and orders and is therefore very familiar with the factual allegations and the applicable law that governs these cases. Many of its decisions have been appealed both to the United States Court of Appeals for the Sixth Circuit and to the United States Supreme Court. This Court's decisions have largely been upheld on appeal.

The Court has also managed extensive discovery in these cases.[9] Over the years, the Court has conducted conferences to adjudicate discovery disputes at least once per month, sometimes more, since 2019 and is very familiar with the development of the factual record in this case. As Plaintiffs have summarized in the present motion, discovery in these cases "has been substantial[,] including millions of pages of document production and review, the exchange of substantive written interrogatories, more than eighty depositions, and extensive expert analysis." (ECF No. 1318, PageID.40267.)

In sum, the Flint Water Cases are abundant, complex, and have been intensely litigated. The motion before the Court and the proposed settlement underlying it applies to all of these cases.

## III.    The Proposed Settlement Agreement

The MSA presents a complex, detailed, and orderly proposal for resolution of Plaintiffs' claims against the Settling Defendants. It creates an administrative compensation process and program that offers settlement opportunities to multiple categories of individuals and

---

[9] The most recent case management order ("CMO"), the Fifth Amended Case Management Order, was entered on September 8, 2020. (ECF No. 1255.)

entities. It sets forth a procedure for individuals to submit claims and to receive monetary awards if they meet the eligibility criteria. Plaintiffs are not required to prove legal liability or causation, though certain adult claimants may need to present a medical record linking their condition to exposure to lead or other contaminants in the water. They need only submit the prescribed documents and forms to receive an award. The settlement claims process protects against unauthorized persons obtaining money from the settlement by setting forth certain proof requirements.

The aggregate settlement amount of $641.25 million will be allocated among categories of claims as set forth in the MSA and will also be used to pay fees and expenses. The settlement distribution process requires that similarly situated claimants receive the same monetary award (subject to lawful liens that might be asserted). In this way, the settlement assures 'horizontal equity' among claimants. In light of the two-year negotiation process and strong representation of categories of claims by Co-Liaison Counsel on behalf of Individual Plaintiffs and by Subclass Settlement Counsel on behalf of the subclasses, each of whom have provided declarations supporting the allocation and attesting to its

fairness, the allocation among categories of claims is determined to be fair. The Court will revisit this determination at the final approval stage should there be evidence submitted to challenge the current allocation of settlement funds.

The Court will first discuss the provisions related to Minors and LIIs to determine whether the proposed settlement processes and procedures are fair and in their best interests. Next, the Court will determine whether the class and subclass portion of the settlement appears to be fair, be free of obvious deficiencies, and  fall within the range of settlements that can be approved. Third, the Court will address the responses, objections, and correspondence received thus far.

## A. Minors and LIIs

At the preliminary approval stage, the Court must review the MSA to determine whether the processes and procedures related to Minors' and LIIs' claims are fair and in their best interests. As set forth above, Guardian Ad Litem Miriam Z. Wolock assisted in this review. Ms. Wolock provided an oral report to the Court and the parties at the hearing held on December 21, 2020. For the reasons set forth below, the Court

concludes that the processes and procedures set forth in the MSA are fair and in the best interests of Minors and LIIs.

The provisions of the MSA applicable to Minors and LIIs are the following: (1) Article XXI of the MSA (ECF No. 1319-1, PageID.40393–40400 (as amended, ECF No. 1394-2, PageID.54185–54192)); (2) the Registration Form (ECF No. 1319-2, PageID.40757–40763 (as amended, ECF No. 1394-3, PageID.54214–54219)); (3) the Claim Form (ECF No. 1319-2, PageID.40740–40745 (as amended, ECF No. 1394-5, PageID.54231–54235)); (4) the monetary awards and proofs grid (ECF No. 1319-2, PageID.40789–40831); (5) the Case Management Order (ECF No. 1319-2, PageID.40848–40876 (as amended, ECF No. 1394-9, PageID.54286–54294)); (6) Plaintiffs' Fact Sheet (ECF No. 1319-2, PageID.40878–40897, 40899); (7) the Release by the Next Friend (ECF No. 1319-2, PageID.41223–41227); and (8) the Non-Participation Notice by Minors or LIIs (ECF No. 1319-2, PageID.41246).

## 1. Genesee County Circuit Court Assignment and Appointment of Next Friends

First, the MSA provides that the parties will file motions to permit the Genesee County Circuit Court, specifically Judge Farah, to exercise

the power and jurisdiction of the probate court for the purposes of: (1) approving the types of individuals who can act as Next Friends on behalf of Minors and LIIs under the MSA; and (2) appointing a Master Guardian Ad Litem ("Master GAL") and two Panel Guardians Ad Litem ("Panel GAL") to supervise submissions by Next Friends on behalf of Minors and LIIs. (ECF No. 1319-1, PageID.40393.) This appointment would provide for consistency in state-court rulings on settlement-related matters. Moreover, Judge Farah, as a result of managing the Genesee County Flint Water docket, is familiar with the unique nature of the claims and parties, including those of Minors and LIIs.

The MSA provides parameters for those who may be authorized to act as Next Friends on behalf of Minors and LIIs. (*Id*.) The MSA defines both the qualifications and proofs required for this role. It incorporates Michigan Court Rule 2.201(E), which sets forth the legal parameters applicable to proceedings involving a minor or incompetent person in Michigan, including that the person acting as Next Friend be "competent and responsible." Mich. Ct. R. 2.201(E)(1)(b).

The MSA contains a proposed Registration Form that participants in the settlement, including Minors and LIIs, must complete within sixty

17

days of the entry of an order granting preliminary approval.[10] (*See* ECF No. 1319-1, PageID.40348–40353 (as amended, ECF No.1394-2, PageID.54140–54145).) Section 3 of the Registration Form, which is applicable only to Minors and LIIs, identifies the person submitting the form on behalf of a Minor or LII, and requires that the individual provide documents proving their relationship to the claimant. (ECF No. 1319-2, PageID.40759–40761.) The information sought in Section 3 of the Registration Form mirrors the requirements set forth in Michigan Court Rule 2.201. Also, the Claim Form contains similar provisions and checkboxes to the Registration Form. (ECF No. 1319-2, PageID.40740–40745 (as amended, ECF No. 1394-3, PageID.54214–54219).)

Ms. Wolock concluded that the Registration Form has a "clear and understandable application to act as [N]ext [F]riend and defines a group of individuals who may serve in this capacity," and it "tracks all the requirements under Michigan law." (ECF No. 1363, PageID.42191.)

---

[10] As set forth further below, this Order will be effective on January 27, 2021, and, because Sunday March 28, 2021 falls on a weekend, the sixty-day deadline is Monday March 29, 2021.

18

After the Registration Form is submitted, the MSA provides that the Claims Administrator must review and approve the qualifications of the Next Friend, within a specified time frame. (ECF No. 1319-1, PageID.40395–40396 (as amended, ECF No. 1394-2, PageID.54187–54188).) If the Next Friend does not meet the qualifications or has not submitted the appropriate proofs, the MSA sets forth a reconsideration and appeals process, which ultimately involves the Special Master issuing a written decision. (ECF No. 1319-1, PageID.40396 (as amended, ECF No. 1394-2, PageID.54188); ECF No. 1391-1, PageID.40378 (as amended, ECF No. 1394-2, PageID.54170).) These protections ensure that only authorized individuals may register and submit claims for Minors and LIIs, and minimize the opportunity for fraudulent claims to be submitted.

The MSA also provides for protections for Minors and LIIs who do not have a Next Friend. As Ms. Wolock explained,

> And why is this important? Because a particular minor or claimant might need a [N]ext [F]riend who doesn't neatly fall into the categories [contained in the Registration Form]. The upshot is [ ] that no potential claimant is deprived of an appropriate representative in the course of this settlement.

19

(ECF No. 1363, PageID.42192.)

This protection for Minors and LIIs who do not have an appropriate representative also tracks Michigan Court Rule 2.201(E)(1)(b), which states, "If a minor or incompetent person does not have a conservator to represent the person as plaintiff, the court shall appoint a competent and responsible person to appear as next friend on his or her behalf." Accordingly, the MSA fairly protects Minors and LIIs who do not currently have a parent or court-appointed guardian at this time.

The MSA also covers situations where there is a dispute over who will act as Next Friend for a Minor or LII. (ECF No. 1319-1, PageID.40396 (as amended, ECF No. 1394-2, PageID.54188).) If this occurs, the MSA provides a clear procedure, involving independent review and assistance by the Master GAL, and, if not resolved by the Master GAL, by the Special Master. (*Id.*)

Ms. Wolock stated at the December 21, 2020 hearing that this process and the time frames for resolving such disputes constitute "a fair and efficient dispute resolution process." (ECF No. 1363, PageID.42192.)

Once an appropriate Next Friend is appointed for the Minor or LII, the Genesee County Circuit Court (or this Court) will supervise the Next

Friend. (ECF No. 1319-1, PageID.40393–40394 (as amended, ECF No. 54185–54186).)

The establishment of jurisdiction over probate proceedings with the Genesee County Circuit Court, the procedures for appointing a Next Friend, and the procedures for resolving any Next Friend-related disputes are all thorough, clear, and designed to promote consistency. As Ms. Wolock explained, the procedures set forth above for Next Friend appointments help facilitate "an appropriate financial recovery. [The plan is] prompt. It's cost effective. It's transparent and the administrative steps really help avoid a protracted and lengthy court proceeding. And so on this basis it's fair and in the best interest of the minors and [LIIs]." (ECF No. 1363, PageID.42193.)

## 2. Retention of Counsel

Another provision in the MSA that protects Minors and LIIs relates to the retention of counsel. Although Minors and LIIs are not required to retain a lawyer to obtain a monetary award under the settlement, the MSA provides that counsel, including Co-Lead Class and Co-Liaison Counsel, are authorized to assist Minors and LIIs to advise them of their rights and options under the MSA. (ECF No. 1319-1, PageID.40394–

21

40395 (as amended, ECF No. 1394-2, PageID.54186–54187).) These provisions provide an additional option for Minors and LIIs to have a lawyer to assist them in their claim submission and determination of payment distribution.

### 3. Second Stage Approval Process

The MSA contains provisions outlining what is called the "Second Stage Approval Process," which includes added protections for Minors and LIIs. For example, the Claims Administrator must first certify that the Minor or LII is assigned the settlement category that will result in the highest monetary award possible for that individual. (ECF No. 1319-1, PageID.40396 (as amended, ECF No. 1394-2, PageID.54188).) Ms. Wolock indicated that this step "clearly benefits this population." (ECF No. 1363, PageID.42193.)

The possible settlement categories are set forth in a settlement grid, which contains twenty-one categories devoted to individuals who were minors at the point of first exposure.[11] While there are different

_____

[11] Seven of the twenty-one categories are devoted to Minors ages six and younger at the time of their first exposure, seven are devoted to Minors ages seven through eleven at the time of their first exposure, and the remaining seven apply to Minors ages twelve through seventeen at the time of their first exposure.

allocations for recovery in each of the twenty-one categories, the grid provides a settlement for *all* minors, regardless of whether they have any proof of an injury. (ECF No. 1319-2, PageID.40790–40818.) The grid provides for different settlement values based on objective factors such as the age of the child at first exposure, the evidence of lead exposure, and the evidence of cognitive impairment related to lead exposure.

As explained by Special Master Greenspan at the hearing, the grid is set up in a manner such that, "People who were similarly situated would be treated in a similar way." (ECF No. 1363, PageID.42203.) This promotes fairness, particularly in litigation such as this where there are different levels of exposure and severity of injury. And Ms. Wolock succinctly stated,

> So the process set forth in the settlement grid or the required proof grid, I believe, promotes fairness in as much as it creates a very systematic approach for remedial relief based on objective criteria that are set forth in the grid. And each grid is accompanied by particular proofs that are required to be submitted. With the result that minors and LIIs with comparable claims are intended to receive comparable awards. And I believe that this is a fair and consistent approach for similarly situated claimants.

(ECF No. 1363, PageID.42195.)

Another way in which the Second Stage Approval Process addresses Minors and LIIs is that it provides that the Claims Administrator must issue a second notice if a Next Friend rejects the settlement category or fails to respond within the prescribed deadlines. (ECF No. 1319-1, PageID.40397 (as amended, ECF No. 1394-2, PageID.54189).) This second-chance provision is an additional layer of fairness and protection for Minors and LIIs.

### 4. Release by Next Friend

Another key provision in the MSA related to Minors and LIIs is the Release by Next Friend. (ECF No. 1319-2, PageID.41223–41227.) Most importantly, the Release states that the Next Friend releases the Minor's and LII's Flint Water-related claims against the Settling Defendants only. (*Id.*) Agreement to a release of claims in exchange for a monetary award is at the core of any settlement. The release is clearly written and understandable, and is publicly available for Next Friends to review and to determine whether they wish to agree to its terms in exchange for a monetary award.

### 5. Reconsideration and Appeal

24

The MSA also provides a procedure if the Next Friend disagrees with the settlement category assigned by the Claims Administrator, or otherwise disagrees with an unfavorable notice. The MSA contains provisions for reconsideration, and if the issue is not resolved on reconsideration, the MSA provides for a process to submit an appeal to the Special Master. (ECF No. 1319-1, PageID.40398 (as amended, ECF No. 1394-2, PageID.54190).)

If a Minor or LII (1) is not represented by counsel, (2) receives an Adverse Notice, and (3) does not follow the processes and procedures set forth in the MSA for reconsideration and appeal, then there is an additional process for independent review of the settlement category assigned by the Claims Administrator. In these circumstances, the Master GAL reviews the Adverse Notice to determine whether it is fair and reasonable. (*Id.*) If the Master GAL determines it is not fair and reasonable, they will send the claim back to the Claims Administrator for reevaluation. (*Id.*) If the Master GAL determines that it is fair and reasonable, then the Master GAL will state their determination in writing and forward the determination and the Adverse Notice to the Genesee County Circuit Court for further review and a final

determination. (*Id.*) All final determinations are made by the Genesee County Circuit Court.

Ms. Wolock stated in regard to this process that "there are multiple layers of protection here for the minors and LIIs and I believe that these procedures provide multiple opportunities for a meaningful opportunity to be heard in a cost-effective, transparent and efficient manner." (ECF No. 1363, PageID.42195.)

### 6. Distribution of Monetary Award

The MSA contemplates three options for Minors and LIIs to receive distribution of their monetary award, if the award exceeds $5,000: (1) a special needs trust, (2) a settlement preservation trust, or (3) a structured settlement. (ECF No. 1319-1, PageID.40399–40400 (as amended, ECF No. 1394-2 PageID.54191–54192).)

Michigan Court Rule 2.420 governs the procedure to be followed for a settlement in a next friend's action brought for a minor or LII. The rule states:

> If the settlement or judgment requires payment of more than $5,000 to the minor either immediately, or if the settlement or judgment is payable in installments that exceed $5,000 in any single year during minority, a conservator must be

appointed by the probate court before the entry of the judgment or dismissal. The judgment or dismissal must require that payment be made payable to the minor's conservator on behalf of the minor. The court shall not enter the judgment or dismissal until it receives written verification, on a form substantially in the form approved by the state court administrator, that the probate court has passed on the sufficiency of the bond of the conservator.

Mich. Ct. R. 2.420.

As Ms. Wolock indicated, these three options in the MSA "protect and preserve" the funds on behalf of the Minor and LII. (ECF No. 1363, PageID.42196.)

Relevant to this portion of the analysis is that, if a Minor or LII does not elect the structured settlement option for their distribution, then a Panel GAL, appointed by the Genesee County Circuit Court, is assigned to the Minor or LII. The Panel GAL's duty is to evaluate whether the settlement category and monetary award assigned by the Claims Administrator, and the distribution option selected by the Next Friend, is fair, reasonable, adequate, and in the best interests of the particular Minor or LII. If the Panel GAL agrees with the Claims Administrator's determination, then the Panel GAL presents their evaluation to the

27

Genesee County Circuit Court for approval. (ECF No. 1319-1, PageID.40399 (as amended, ECF No. 1394-2, PageID.54191).)

If the Panel GAL or Genesee County Circuit Court determines that the settlement category, monetary award, or elected option to receive a monetary award is not fair, reasonable, adequate, or in the Minor or LII's best interests, the claim will be sent back for reevaluation to the Claims Administrator or Next Friend, and the process will repeat until the monetary award is approved by the Panel GAL and the Genesee County Circuit Court. (*Id.*) For these reasons, the process and procedure is fair and thorough.

The Court concludes that the MSA's three options for Minors and LIIs to receive monetary awards, as well as the multi-layered review processes, are fair and in the best interests of Minors and LIIs.

### 7. Future Minor Claimants

Another way in which the MSA is fair and in the best interests of Minors is that it does not compel Minors to submit claims immediately. While it may be in the best interests of most or all Minors to submit their claims at the earliest opportunity, the proposed settlement provides a fund for Future Minor Claimants. A portion of the aggregate settlement

fund ($35 million) will be set aside to accommodate Minors who do not file their claims immediately or who do not finalize their claims. This means that individuals less than eighteen years of age on the date they first ingested Flint water (if ingested between April 25, 2014 and November 16, 2020), who failed to register or did not receive a Favorable Notice, can still participate in the settlement later on, before they turn nineteen years old, subject to available funds. (ECF No. 1319-1, PageID. 40338; 40356–40357 (as amended, ECF No. 1394-2, PageID.54130; 54148–54150).)

As Ms. Wolock explained, the Future Minor Claimant provisions are "akin to a safe harbor provision so that a minor has up to age 19 to participate in a program and I believe that this safe harbor provision gives adequate assurance that the settlement will be as much as feasibly possible widely available to this group." (ECF No. 1363, PageID.42197–42198.) This safe-harbor provision is fair and in the best interests of Future Minor Claimants.

## 8. Programmatic Relief

The MSA includes a provision whereby a portion of the settlement would be used to enable the local school districts and public school

29

academies within the Genesee Intermediate School District to provide special education services for qualifying students who resided in the City of Flint during the April 25, 2014 through November 16, 2020 time period. These provisions apply whether or not the individuals receiving such services are also individual claimants under the MSA. This global provision provides an added education-based benefit to Minors.

### 9. Non-Participating Minors and LIIs

Minors and LIIs can also choose not to participate in the settlement. If they choose not to participate, there is a clear procedure in the MSA for them to follow if they wish to proceed with their lawsuits against the Settling Defendants. (ECF No. 1319-1, PageID.40398 (as amended, ECF No. 1394-2, PageID.54190).) This procedure includes agreeing to a Case Management Order ("CMO"), with an accompanying Plaintiff Fact Sheet, (ECF No. 1319-2, PageID.40848–40876 (as amended, ECF No. 1394, PageID.54286–54294); ECF No. 1319-2, PageID.40878–40897)), and submitting a Notice of Intent Not to Participate. (ECF No. 1319-2, PageID.41246.) These documents are all publicly available for review. Minors and LIIs have the benefit of fully "weigh[ing] the cost benefit of . . . participating in this settlement or nonparticipation," and can make an

"informed decision on how to proceed." (M. Wolock. ECF No. 1363, PageID.42199.)

### 10.    Conclusions Regarding Minors and LIIs

In sum, for the reasons set forth above, at this stage of the process, the MSA appears fair and in the best interests of Minors and LIIs. Ms. Wolock stated at the hearing, "My conclusion in the report today is that the processes and procedures set forth in the proposed agreement are fair to the [M]inors and LIIs. Because those procedures are fair, I also report to the Court that those fair procedures serve the best interest of the [M]inors and LIIs." (ECF No. 1363, PageID.42190–42191.) The Court agrees for all of the reasons set forth above. Accordingly, preliminary approval of the MSA as it relates to Minors and LIIs is granted.

### B. Conditional Class Certification

Prior to approving a settlement that includes a class component, the Court must conditionally certify the class. Fed. R. Civ. P. 23(e); *see Garner Properties & Management, LLC v. City of Inkster*, 333 F.R.D. 614, 621–22 (E.D. Mich. 2020). Though still subject to the Court's final approval at a later date, preliminary certification indicates at this stage

that certification is sufficiently "likely" to justify sending notice to settlement class members. *See id.*

The settlement class is defined in the MSA at Section 1.72 as:

[A]ll persons or entities who are or could be claiming personal injury, property damage, business economic loss, unjust enrichment, breach of contract, or seeking any other type of damage or relief because at any time during the Exposure Period [of April 25, 2014 and November 16, 2020] they: (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant.[12]

(ECF No. 1319-1, PageID.40343 (as amended, ECF No. 1394-2, PageID.54135)).

---

[12] Excluded from the Settlement Class are: (1) Defendants; (2) the judicial officers to whom this case is assigned in federal court, Genesee County Circuit Court, and the Michigan Court of Claims, as well as these officers' staff and immediate family members; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt out of the Settlement Class. (ECF No. 1319-1, PageID.40343 (as amended, ECF No. 1394-2, PageID.54135).)

Adults (defined as those who were at least eighteen years old during the Exposure Period) who are not already represented by counsel are members of the proposed Settlement Class. In this way, the proposed settlement provides compensation options for those individuals who did not hire a lawyer or pursue a lawsuit.

These adults, along with those adults who are represented by a lawyer, are eligible to register to participate in the proposed settlement and seek a monetary award if:

    1) Between the dates of April 25, 2014 and November 16, 2020, they owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water;

    2) Between the dates of April 25, 2014 and November 16, 2020, they owned or operated a business that received water from the Flint Water Treatment Plant or were legally liable for the payment of bills for such water;

    3) Between the dates of April 25, 2014 and November 16, 2020, they ingested or came into contact with water received from the Flint Water Treatment Plant for at least twenty-one (21) days during any thirty (30) day period during the Exposure Period; or

    4) Between the dates of April 25, 2014 through December 31, 2018, they were both exposed to water received from

the Flint Water Treatment Plant and diagnosed with *Legionnaires*' Disease.

(ECF Nos. 1318, PageID.40271; 1319-1, PageID.40348–40349 (as amended ECF No.1394-2, PageID.54140–54141).) For the reasons set forth below, the Court finds that the parties have preliminarily met the Rule 23 requirements for certification of this putative class. Accordingly, the Court conditionally certifies this class for the purposes of settlement and directs notice of the certification, proposed settlement, and date of the final fairness hearing.

### 1. Applicable Law

At the preliminary certification stage, the judge makes "a preliminary fairness evaluation [finding] that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) . . . [as well as] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms [under Rule 23(e)]." Manual for Complex Litigation (Fourth) § 21.632 (2004). After doing so, the Court must "direct[] the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

34

Accordingly, pursuant to Rule 23(a), class certification is appropriate where plaintiffs demonstrate that the putative class meets all of the following requirements:

1) **Numerosity**: the class is so numerous that joinder of all members is impracticable;

2) **Commonality**: there are questions of law or fact common to the class;

3) **Typicality**: the claims or defenses of the representative parties are typical of the claims or defenses of the class as a whole; and

4) **Adequacy of representation**: the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

Additionally, because Plaintiffs seek certification under Rule 23(b)(3), they must also demonstrate the "**predominance**" and "**superiority**" requirements under this rule: namely, that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members;" and that (2) "the class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) additionally sets

forth four factors relevant to analyzing its predominance and superiority

requirements:

> A) The class members' interests in individually controlling the prosecution or defense of separate actions;
>
> B) The extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> C) The desirability of concentrating the litigation of the claims in the particular forum; and
>
> D) The likely difficulties in managing a class action.

*Id.*

> Finally, once the Court certifies a Rule 23(b)(3) class, it

> must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means [and must] clearly and concisely state in plain, easily understood language:
>
> > (i)    the nature of the action;
> > (ii)   the definition of the class certified;
> > (iii)  the class claims, issues or defenses;
> > (iv)  that a class member may enter an appearance through an attorney if the member so desires;

36

(v)  that the court will exclude from the class any member who requests exclusion;

(vi)  the time and manner for requesting exclusion; and

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

## 2. Plaintiffs Have Preliminarily Satisfied the Rule 23(a) Prerequisites

For the reasons set forth below, the Court finds that Plaintiffs have preliminarily met the Rule 23(a) numerosity, commonality, typicality, and adequacy requirements.

### a. Numerosity

To satisfy the numerosity requirement, Plaintiffs must demonstrate that the settlement class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There are "no strict numerical test[s] for determining impracticability of joinder." *In re American Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, numerosity "requires examination of the specific facts of each case and imposes no absolute limitations . . . . When class size reaches substantial proportions, however, the impracticability requirement is usually

37

satisfied by the numbers alone." *Id.* (quoting *General Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)).

Here the proposed class comprises a substantial portion of the population of Flint, Michigan. *See Garner Prop. & Mgmt., LLC*, 333 F.R.D. at 622 ("[A] class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (numerosity is satisfied with a putative class of at least "between 21 and 40" members). Plaintiffs point to the 2010 census finding that the population of Flint, Michigan at that time exceeded 100,000 people, and the Court infers the Flint population from 2014 through 2020 would be reasonably close to this number. (ECF No. 1318, PageID.40300 (citing *QuickFacts*, United States Census Bureau (Apr. 1, 2010), http://www.census.gov/quickfacts/fact/table/flintcitymichigan/PST04021 9.).) Additionally, Plaintiffs point to an expert report prepared by regional planner Dr. Robert A. Simons concluding that approximately 700 business enterprises in Flint may have been detrimentally impacted by the Flint Water Crisis. (ECF No. 1208-95, PageID.36139–36140.) The evidence does not suggest that the several hundred to several thousand individual lawsuits meaningfully detracts from either of these numbers.

Accordingly, between the 100,000+ individuals who could comprise the personal exposure and property damage subclasses, and the 700+ business which could comprise the business economic loss subclass, Plaintiffs have met the numerosity requirement. Fed. R. Civ. P. 23(a)(1).

### b. Commonality

To satisfy the commonality requirement, Plaintiffs must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Though the rule "speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be *one* question common to the class." *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (emphasis added). However, this one question must represent "a common issue the resolution of which will advance the litigation." *Id.*

Plaintiffs have asserted that there are at least four common questions that satisfy the commonality requirement:

1) Whether the State and City Defendants had the opportunity to reflect and deliberate before they acted or failed to act;

2) Whether the conduct of the State and City Defendants directly and proximately caused the Flint water system to be contaminated with corrosive water, lead, and dangerous

bacteria, and/or increased the risk of harm to the Class and/or Subclasses;

3) Whether the implementation or execution of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City of Flint violated Plaintiffs' fundamental liberty interest in bodily integrity; and

4) Whether the actions of the Rowe and McLaren Defendants—who are not named in the Class Complaint but who are participating in the global settlement—violated Plaintiffs' rights.

(ECF No. 1318, PageID.40302.) After years of litigation, the Court is intimately familiar with the factual and legal issues in this case. For purposes of preliminary approval and conditional certification, the Court need go no further than the first issue raised: whether the State and City Defendants had the opportunity to reflect and deliberate before they acted or failed to act. The premise of this litigation as it pertains to the governmental defendants is that action or inaction of certain State and City officials resulted in (1) the decision to switch the source of Flint's water; and (2) a failure to address the consequent contamination of the water, which in turn lead to exposure and damage. The factual underpinnings that must be resolved in order to determine liability and

damages to the governmental defendants are common to the class. There would not and could not be different factual findings in separate cases.

Thus, the first question constitutes "a common issue the resolution of which will advance the litigation." *See Sprague*, 133 F.3d at 397. Accordingly, Plaintiffs have met the commonality requirement. Fed. R. Civ. P. 23(a)(2).

### c. Typicality

To satisfy the typicality requirement, Plaintiffs must demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is "typical" if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007); *see also Sprague*, 133 F.3d at 399 ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").

In this case, the representatives of each class—the Adult Exposure Subclass, the Property Damage Subclass, and the Business Economic Loss Subclass—satisfy the typicality requirement, because the

representatives' claims (1) "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members"; and (2) are "based on the same legal theor[ies]" as other class members' claims." *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 618 (6th Cir. 2007).

Specifically, the Adult Exposure Subclass Representatives— Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael Snyder—are individuals or representatives of individuals who allege that they resided in Flint, Michigan; ingested or came into contact with Flint tap water during the relevant time period; and suffered medical, financial, and/or emotional damages as a result of Settling Defendants' actions. (*See* ECF No. 1318, PageID.40304–40305.) These claims align with absent Adult Exposure Subclass members who "ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting personal injury." (ECF No. 1319-1, PageID.40335–40336 (as amended, ECF No. 1394-2, PageID.54127– 54128).)

The Property Damages Subclass Representatives—Elnora Carthan and David Munoz—are individuals who allege that they owned homes in Flint during the relevant time period, who received water from the Flint Treatment Water Plant, and who suffered diminished property and appliance values as a result of Settling Defendants' actions. (*See* ECF No. 1318, PageID.40305–40306.) These claims align with absent Property Damages Subclass members who "owned or were the lessee of a residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period." (ECF No. 1319-1, PageID.40341 (as amended, ECF No. 1394-2, PageID.54133).)

Finally, the Business Economic Loss Subclass Representatives—635 South Saginaw LLC (a/k/a "Cork on Saginaw"), Frances Gilcreast, and Neil Helmkay—are all individuals or entities who allege that they owned at least one commercial property in Flint during the relevant period, and who suffered diminished profits due to commercial reticence to patronize Flint businesses as a result of Settling Defendants' actions. (ECF No. 1318, PageID.40306.) These claims align with absent Business Economic Loss Subclass members who "owned or operated a business,

43

including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss." (ECF No. 1319-1, PageID.40336 (as amended, ECF No. 1394-2, PageID.54128).)

Because the named Plaintiffs' claims arise from the same course of Settlement Defendants' conduct as those of putative class members, the Court finds that Plaintiffs have met the typicality requirement for purposes of preliminary settlement certification.[13] Fed. R. Civ. P. 23(a)(3).

### d. Adequacy of Representation

To satisfy the adequacy requirement, Plaintiffs must demonstrate that the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining whether the representation of the class will be adequate: 1)

---

[13] Plaintiffs also argue that the named minor plaintiffs, whose representatives participated in settlement negotiations, typify the claims of minors in this lawsuit. (ECF No. 1318, PageID.40306–40307.) However, because the portion of the settlement relating to minors is not a class settlement, the Court need not address these claims here.

the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976). "Thus, the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Garner Prop. & Mgmt, LLC*, 333 F.R.D. at 624 (quoting *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)).

The first adequacy requirement is easily met here: the named Plaintiffs in this case all seek to "hold [Settling] Defendants liable for [damages arising out of] the same misconduct." (ECF No. 1318, PageID.40308.) The named Plaintiffs' interests are identical to those of the unnamed members of the class, and the "common interests" requirement is accordingly met. *See Senter*, 532 F.2d at 524–25.

As to the second adequacy requirement, the Court concludes that the named Plaintiffs will, through qualified counsel, "vigorously prosecute the interests of the class." *Id.* The Court has become very familiar with the parties, class representatives, and Co-Lead Class Counsel and Subclass Settlement Counsel in this case through the

45

previous four years of litigation described above. Additionally, when the Court appointed the Subclass Settlement Counsel in August 2019, the Court found that counsel had "the qualifications and experience to adequately and fairly represent clients in this case" and that they were "active litigators [] in mass tort and other class actions [who] have all declared that they will devote the time and resources necessary to represent clients and work on apportionment issues in settlement discussions." (ECF No. 929, PageID.24354.) The Court concludes that Co-Lead Class Counsel, as well as Subclass Settlement Counsel—who have provided declarations supporting the allocation and attesting to its fairness—have lived up to their appointments in vigorously representing Plaintiffs through the litigation and settlement processes. The Court is confident that they will continue to vigorously prosecute the interests of the class.

Accordingly, Plaintiffs have met the adequacy requirement for purposes of preliminary settlement certification. Fed. R. Civ. P. 23(a)(4).

### 3. Plaintiffs Have Preliminarily Satisfied the Rule 23(b) Prerequisites

46

For the reasons below, the Court finds that Plaintiffs have preliminarily met the Rule 23(b) predominance, superiority, and ascertainability requirements. Fed. R. Civ. P. 23(b).

### a. Predominance

To satisfy the predominance requirement, Plaintiffs must demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011).

At this stage, the analysis of the predominance requirement must account for the fact that this class is proposed for settlement purposes only and that the alleged wrongdoing arises out of a common set of facts. Courts have found that settlements "obviate[] the difficulties inherent in proving the elements of varied claims at trial," and consequently, "courts are more inclined to find the predominance test met in the settlement context." *Good v. West Virginia American Water Co.*, No. 14-1374, 2017

47

WL 2884535, at *12 (S.D.W.V. Jul. 6, 2017) (quoting *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 & n.29 (3d Cir. 2011)).

In certain "mass tort accidents," plaintiffs may meet the predominance requirement even if "questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved . . . [such a finding] does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). This is because "[n]o matter how individualized the issue of damages may be . . . the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next," *id.*, and "[individualized] issues may be reserved for individual treatment with the question of liability tried as a class action." *In re Whirlpool Corp.*, 722 F.3d at 854 (internal quotations omitted) (citing *id.*) ("When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate."); *see also Good*, 2017 WL 2884535, at *12 (collecting cases in which courts found "predominance in

48

the mass tort arena when a single common event or common cause gave rise to the claims of each class member").

This is one such mass tort accident. The common liability questions noted above satisfy the predominance requirement for settlement purposes. *See In re National Football League Players Concussion Injury Litigation*, 821 F.3d 410, 434 (3d Cir. 2016) (finding that this mass tort action "presented predominate factual questions regarding the NFL's knowledge and conduct as well as common scientific questions regarding causation"); *see also In re Whirlpool*, 722 F.3d at 854; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("[M]ass tort cases arising from a common cause or disaster may, depending on the circumstances, satisfy the predominance requirement.").

Accordingly, Plaintiffs have met the predominance requirement for purposes of preliminary settlement certification. Fed. R. Civ. P. 23(b).

### b. Superiority

To satisfy the superiority requirement, Plaintiffs must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant factors in this inquiry include: (1) the interests of the class

members in individually controlling separate actions; (2) the extent and nature of the litigation already begun by members of the class; and (3) the desirability of concentrating the litigation in a particular forum.[14]

For purposes of settlement, the Court finds that the three relevant 23(b)(3) factors weigh in favor of the superiority of class certification. First, the class members' interest in individually controlling the litigation weighs in favor of conditional class certification, because individuals seeking individualized relief either already chose to file their own complaints or hire individual counsel to address their claims—as evidenced by the Individual Cases—or may eventually seek exclusion from the settlement class. Nor, after four years of very expensive class discovery, would individualized litigation be economically preferable for those plaintiffs who have not already elected to file suit as individuals. *See In re Whirlpool*, 722 F.3d at 861 ("Use of the class method is

---

[14] Typically, courts must additionally consider a fourth 23(b)(3) factor: "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). However, when confronted, as in this case, "with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *In re National Prescription Opiate Litigation*, 976 F.3d 664, 674 (6th Cir. 2020) (quoting *Amchem Prods., Inc.*, 521 U.S. at 620).

50

warranted particularly [when] the cost of litigation would dwarf any potential recovery.").

Second, the extent and nature of class members' litigation in this case weighs in favor of certification. Class representatives and class counsel have been litigating this case for nearly five years in a suit that has involved "extensive motion practice, numerous appeals, and petitions for certiorari filed with the United States Supreme Court. The docket on this consolidated case shows over 1,100 filings and is rising daily.[15] This case has been zealously litigated already, by a team of national and local firms on all sides." (ECF No. 1207, PageID.34519–34520.) Such an extensive history supports the superiority of class certification for the defined adult class for the purpose of this settlement.

Finally, all federal litigation concerning the Flint Water Cases has been centralized in the Eastern District of Michigan, rendering this forum ideal for resolving the dispute.

---

[15] With the entry of this Opinion and Order, that number has reached 1399 filings. (No. 16-10444.)

Accordingly, Plaintiffs have met the superiority requirement for purposes of preliminary settlement certification. Fed. R. Civ. P. 23(b).

### c. Ascertainability

In addition to the predominance and superiority requirements, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). Under this requirement, Plaintiffs must show "that the members of the class [are] *capable* of specific enumeration." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (emphasis in original) (internal citations omitted). Such a showing is required for (b)(3) class certification because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d. at 541. The ascertainability requirement is satisfied with "a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*

Though Plaintiffs did not discuss the implied ascertainability requirement, the Court nevertheless concludes that the proposed class is sufficiently ascertainable to justify certification. Plaintiffs have argued

52

in other motions that "[m]embership in the Class and Subclasses is ascertainable through property or rental records, or through certification by Flint residents or guardians that they and/or their children lived in Flint and were exposed to the water during the Class Period." (ECF No. 1207, PageID.34471.) The class definitions in this case are geographically circumscribed to one city in one state and are based on objective criteria, such as where an individual resided at a particular time or whether they owned or rented property.

Accordingly, Plaintiffs have met the ascertainability requirement for purposes of preliminary settlement certification. *Sandusky Wellness Ctr., LLC*, 863 F.3d at 466.

### 4. Rule 23(e) Prerequisite: Notice Plan

When requesting class certification for purposes of settlement, parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Additionally, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Such notice must include: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Court has carefully examined Plaintiffs' prospective plan for Class Notice, as well as the declaration of Cameron Azari, Director of Legal Notice for Hilsoft Notifications, which is the firm that assisted in designing this particular notice plan. (ECF No. 1319-11, "Exhibit K".) The Court finds that the Settlement Agreement's plan for Class Notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure. That plan is approved and adopted. The Court further finds that the Class Notice (attached to Plaintiffs' motion as Exhibit K), and the Claim Form included as part of the Class Notice, comply with Rules 23(e)(1) and 23(c)(2)(B) of the Federal Rules of Civil Procedure.

Accordingly, for the reasons set forth above, the Court conditionally and preliminarily certifies the class for settlement purposes subject to final approval, and approves the prospective plan for class notice.

## C. Responses and Objections to Motion for Preliminary Approval

Having preliminarily approved the proposed settlement as it relates to Minors and LIIs, and having preliminarily and conditionally approved the settlement class and subclasses for settlement purposes, the Court will now address the responses and objections received up to this point.

As set forth above, one of the responses to the partial settlement has been resolved. (ECF No. 1338). The remaining two that the Court will address are: (1) Plaintiffs Gradine Rogers and Estate of Odie Brown's response (ECF No. 1340); and (2) the *Chapman* Plaintiffs' response (ECF No. 1341). The Flint City Council also submitted a list of its concerns. These submissions will be addressed as set forth below.

### I. *Rogers* and *Brown*'s Response

The Court received a response from Gradine Rogers (*Rogers v. Snyder, et al.*, No. 18-10713) and from the Estate of Odie Brown (*Brown*

*v. Snyder, et al*, No. 18-10726).[16] (ECF No. 1340.) *Rogers* and *Brown* are *legionella* cases and their response sets forth several concerns with the MSA as it relates to the *legionella* cases.

First, Rogers and Brown argue that because the motion for preliminary approval was filed in federal court, the settlement should not apply to cases filed in the Genesee County Circuit Court against the McLaren Defendants.[17] But since *Rogers v. Snyder* and *Brown v. Snyder* are federal cases, this argument does not apply to their own cases. Moreover, the proposed MSA is a global resolution among the Settling

---

[16] The response is entitled "Individual Plaintiffs Brown and Rogers Response to Plaintiffs' Motion to Establish Settlement Claims Procedures and Allocation and for Preliminary Approval of Class Settlement Components." (ECF No. 1340, PageID.41801.) However, the caption included only *Brown v. Snyder*, No. 18-10726, and not *Rogers v. Snyder*, No. 18-10713. (*Id.*) The Court will view this omission as an inadvertent oversight, and evaluate the arguments as though the *Rogers*' caption was included, as it should have been.

[17] Rogers and Brown argue that there are thirty-one *legionella*-related cases pending against McLaren and only two—*Rogers* and *Brown*—are pending in this Court. The rest are pending in state court. Rogers and Brown argue that the state-court cases are "separate and distinct from general Flint Water cases," (ECF No. 1340, PageID.41804) but they do not further develop this argument. They also argue that the McLaren Defendants' $20 million contribution to the settlement will result in only $3 million reaching those Plaintiffs who have actually sued the McLaren Defendants. Plaintiffs' math on this point is speculative at this stage. Suffice it to say, however, that another way of looking at the MSA is that the contributions of the Settling Defendants other than the McLaren Defendants—which totals $620.25 million—will also benefit those Plaintiffs who only sued the McLaren Defendants.

56

Parties and it resolves all claims against the Settling Defendants related to the Flint Water Crisis, including those pending in the Genesee County Circuit Court and the Michigan Court of Claims. Rogers and Brown can elect to opt out of the settlement if they wish to pursue their litigation to trial.

Next, Rogers (who fortunately survived her bout with *Legionnaires'* disease) and Brown complain that the monetary awards for *legionella* claimants is too low and unknown. This is speculative at this time because the monetary awards for *legionella* injury other than death cannot be determined until after the claims process is complete.

Moreover, for adults whose *legionella* exposure caused death, such as is alleged by the Estate of Odie Brown, the projected monetary award for those claimants is known and is not subject to change based on the number of participants. Recovery for *legionella* death cases ranges from $300,000 to $1,500,000 no matter how many claims are made in this category. (ECF No. 1319-2, PageID.40825–40826.) Rogers and Brown's argument that the settlement amount is unknown is not applicable to Brown's allegations.

Finally, Rogers and Brown argue that the proposed CMO, which is applicable to individuals who choose not to participate in the settlement, is unfairly favorable to Settling Defendants. (*See* ECF No. 1319-2, PageID.40847–40876 (as amended, ECF No. 1394-9, PageID.54286–54294).) The Court has reviewed the CMO and in light of the vast amount of discovery already undertaken in this case, the CMO merely serves to expedite the route to trial for those who opt out of the settlement. It is not unfair, and individuals have access to it now so they can evaluate its terms when determining whether to continue with litigation or to participate in the settlement.

Rogers and Brown's objections are denied without prejudice. If either Plaintiff determines that they will be a participant in the settlement, they may object at the time[18] and in the manner set forth in the MSA and in the Order accompanying this opinion. (ECF No. 1319-1, PageID.40392–40393 (as amended, ECF No. 1394-2, PageID.54184–54185).)

## II.  *Chapman* Plaintiffs' Response

---

[18] Under the terms of the MSA, this Court will set the date by which a Claimant may object after entry of this Opinion and Order. (ECF No. 1319-1, PageID.40392.)

The *Chapman* Plaintiffs also submitted a response to the motion for preliminary approval. (ECF No. 1341.) In it they focus on the grid that sets forth categories for monetary awards. The grid provides that individuals may provide proof of lead exposure through blood lead test results or bone lead testing ("bone scans"). (*See* ECF No. 1319-2, PageID.40789–40824.) The *Chapman* Plaintiffs object to the inclusion of bone scans as a form of proof in the settlement grid.

First, this argument must be put into context. The *Chapman* Plaintiffs do not argue that it is inappropriate to require proof for participants to recover damages under the MSA. The *Chapman* Plaintiffs also do not contest the reliability of bone lead testing as one way to prove lead exposure. Rather, they argue that it is unfair that some lawyers, specifically Co-Liaison Counsel for Individual Plaintiffs, have obtained bone scans for some of their clients and that bone scans are included in the settlement grid as a form of proof.

The *Chapman* Plaintiffs' lawyer, however, did not obtain bone scans for his clients. At the hearing on December 21, 2020, the *Chapman* Plaintiffs' lawyer stated that in 2016 he contacted an individual at Mt. Sinai Hospital in New York who performs bone scan testing but that he

decided not to obtain bone scans for his clients because, "based on the information I received at the time, it did not make sense [to obtain them]." (ECF No. 1363, PageID.42188–42189.) However, now the *Chapman* Plaintiffs would like the option to receive bone scans. There is nothing in the MSA that prohibits the *Chapman* Plaintiffs from pursuing the bone scan procedure that they decided to forego in 2016. Moreover, their previous consideration of this option renders their assertion that the technology is somehow "secret" (ECF No. 1341, Page ID. 41815) confusing.

To the extent that the *Chapman* Plaintiffs' objection relates to the availability of bone scans in the City of Flint, this objection may be rendered moot. Co-Lead Class Counsel stated on the record at the status conference held on January 13, 2021 that they are optimistic that they have located individuals who can, and appear to be willing to, provide bone scans in Flint to residents who would like such scans for purposes of the settlement:

> [W]e have made some, I think, strong headway in making the . . . possibility of bone scanning [available] for the community generally that would be participating in the settlement of this matter. We're looking into that more and more and we believe

that we have a good core group of doctors and local individuals associated with those doctors to do a widespread [sic] accessibility for the community.

(ECF No. 1397, PageID.54373.) Indeed, Co-Lead Class Counsel are working to set up a bone scan program, which would render this issue moot.

The *Chapman* Plaintiffs similarly argue that it is difficult to obtain reports of neurocognitive deficits, and the MSA's inclusion of this grid category is therefore burdensome. (ECF No. 1341, PageID.41817.) The Court rejects these arguments: first, children obtain neurocognitive tests for many medical and educational reasons, and this provision allows those children to submit those test results to obtain compensation even if they never had their blood lead level tested. Second, there is no basis to conclude that the inclusion of this additional provision for obtaining a monetary award is anything other than a benefit to claimants.[19] Accordingly, this argument is rejected.

---

[19] Additionally, the Court points the *Chapman* Plaintiffs to Class and Co-Lead Plaintiffs' Reply, which states that the Neurodevelopmental Center of Excellence ("NCE") run by the Genesee Health System offers free testing.

The *Chapman* Plaintiffs are free to file an objection to the settlement at the time and in the manner set forth in the MSA if they choose to participate in the settlement. The Court will consider any such objections at that time.

### 3.   Flint City Council

The Flint City Council submitted five enumerated concerns regarding the MSA. They are:

1) That the State of Michigan is contributing insufficient funds;

2) That the proof of injury requirements may be unduly burdensome on some residents of the City of Flint;

3) That the proposed Settlement Agreement should more explicitly cover payment of water bills by the residents of the City of Flint;

4) That the proposed Settlement Agreement should allocate Settlement Funds to cover claims for payment of water bills in an amount not less than 2%;

5) That the City Council would prefer an additional two months to consider and deliberate regarding the proposed Settlement Agreement and conduct additional consultations.

The City Council seeks to have the Court impose additional requirements on the settlement which it believes may benefit its

constituents, many of whom are the very Plaintiffs suing the City.[20] Yet the Court cannot order the State of Michigan, the City of Flint, or any other Settling Defendant to contribute more funds to a settlement that was negotiated between the parties. The Court does not have the power or authority to impose additional terms, additional monetary amounts, or a different allocation to an agreement reached between parties.

The City Council also raises a concern about the proof necessary to make a claim under the terms of the MSA. The Court investigated this concern: the settlement provides that claimants must complete short registration and claim forms to obtain a payment. There are certain documentation requirements—and where the documents or information can be obtained by the Claims Administrator, the individual claimant need not submit the information. For example, a claimant can sign a release that allows the Claims Administrator to obtain blood lead test results, and thus the claimant need not worry about getting the test

---

[20] The Court is sensitive to the fact that the Flint City Council is in an unenviable position. The City of Flint, as a governmental entity, is being sued by thousands of people who allege they were poisoned by its water. In most instances, these are the very same people who the City Council members represent. After entry of this Order, these individuals will make a decision about whether to participate in the $641.25 million settlement.

information from their doctor. The document requirements are straightforward and reasonable to show that the claimant is eligible to participate. For example, an adult claimant seeking a property payment must show that they owned or leased property or paid for water bills.

If these documents were not required, any person could submit a claim for payment and deplete funds that should go to children, adults, and homeowners or renters. The required documents protect the funds from unlawful, ineligible, and inappropriate claims. All of the documentation requirements consist of documents that the claimants can easily obtain or already have available. For many individuals, they need only sign a release for the Settling Defendants to use data already in the State of Michigan's possession. Michigan law already requires that all children's blood lead testing results be reported to the Michigan Department of Health and Human Services ("MDHHS").[21] *See* Mich. Comp. Laws § 533.5474. The Court is confident that some degree of proof

---

[21] Moreover, if a Minor is enrolled in Michigan Medicaid or Women, Infants & Children ("WIC") programs, Michigan law requires that blood lead tests be performed, Mich. Comp. Laws § 280.400.111, and for many other children, their health care providers often determine that screening is appropriate. *See e.g.*, https://www.michigan.gov/documents/mdhhs/Metadata_-_Annual_Blood_Lead_Levels_557229_7.pdf .

64

is fair and in the best interest of all of those impacted by the Flint Water Crisis.

Finally, the Flint City Council asks that the Court expand the settlement to include payment of water bills. The funds allocated for the 'property' claims will be distributed to those who owned a residence, rented a residence, or were obligated to pay water bills for a residence. That is, the property fund covers any type of economic-loss claim related to the property—whether it be damage to pipes or payment of bills for water. The City may be asking that these funds reimburse claimants for the full amount of water bills, but the settlement does not require claimants to show proof of the amount of loss. Property owners or renters need only show their status (as described above) and the amount they receive will be based on the number of eligible claims in this category. The Court appreciates the Flint City Council's concerns and is hopeful that these responses are helpful to its members.

## IV.     Order

For the reasons set forth above, the Court orders:

> 1. Preliminary approval of the MSA (attached as Exhibit A to the Declaration of Theodore J. Leopold in support of Plaintiffs'

65

Motion) under Federal Rule of Civil Procedure 23 is GRANTED;[22]

2. Preliminary approval of the Settlement Allocation set forth in the MSA and plan of distribution is GRANTED;

3. Appointment of firms serving as Interim Co-Lead Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee, as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class is GRANTED;

4. Conditional certification of the Settlement Class and Subclasses set forth in the MSA under Federal Rule of Civil Procedure 23(a) and (b)(3) is GRANTED as follows for the purposes of Settlement:

**Settlement Class**: all persons or entities who are or could be claiming personal injury, property damage, business economic loss, unjust enrichment, breach of contract, or seeking any other type of damage or relief because at any time during the Exposure Period they: (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant. Excluded from the Settlement Class are: (1) Defendants; (2) the judicial officers

---

[22] As amended, ECF No. 1394-2.

to whom this case is assigned in the Federal Court, Genesee County Circuit Court, and the Michigan Court of Claims, their staff, and the members of their immediate families; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt out of the Settlement Class.

**Adult Exposure Subclass**: all persons who were Adults during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting personal injury. All Adults listed on Exhibit 1 to the Settlement Agreement are excluded from this Subclass.

**Business Economic Loss Subclass**: all individuals or entities who owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss. Excluded from the Business Economic Loss Subclass are all local, state, or federal government offices or entities and any individual or entity listed on Exhibit 1 to the Settlement Agreement.

**Property Damage Subclass**: all Adults or entities who owned or were the lessee of residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period. Excluded from the Property Damage Subclass are all local, state, or federal government entities which own real property and any individual or entity listed on Exhibit 1 to the Settlement Agreement.

5. Appointment of Settlement Subclass Representatives as representatives of the Settlement Class is GRANTED as follows:

- Rhonda Kelso, Barbra and Darrell Davis, Tiantha Williams, and Michael Snyder, as personal representative of the Estate of John Snyder, as representatives of the Adult Exposure Subclass;
- Elnora Carthan and David Munoz as representatives of the Property Damage Subclass;
- 635 Saginaw LLC; Frances Gilcreast; and Neil Helmkay as representatives of the Business Economic Loss Subclass.

6. The plan of notice presented in the Declaration of Cameron Azari in Support of Plaintiffs' Motion is approved. The form of notice attached as Exhibit K, Attachment 2, and the Registration and Claim Forms in the form attached as Exhibits 2 and 5 to the Settlement Agreement are GRANTED.[23] The Notice, Registration Form, and Claim Form shall be disseminated to the Settlement Class in accordance with the plan of notice and the Settlement Agreement;

7. Appointment of Epiq Class Action & Claims Solutions, Inc. as the Notice Administrator is GRANTED;

8. Appointment of ARCHER Systems as the Claims Administrator and QSF Administrator is GRANTED;

9. Appointment of Deborah Greenspan as the Special Master under the MSA is GRANTED;

---

[23] As amended, ECF No. 1394.

10. Appointment of ARCHER SYSTEMS, LLC and MASSIVE as Lien Resolution Administrator is GRANTED;

11. Appointment of Forge Consulting, LLC as the Settlement Planning Administrator is GRANTED;

12. Approval of the proposed Registration Form, MSA Exhibit 5, and Claim Form, MSA Exhibit 2, is GRANTED;[24]

13. Approval and establishment of the process and procedures for handling claims by Minors and LIIs as set forth in Article XXI-Minors and LIIs of the MSA is GRANTED;

14. Plaintiffs are ORDERED to pay the cost of implementing the plan of notice from the Settlement Fund in an amount not to exceed $500,000.

15. Adoption of the form motion for approval of wrongful death settlement for the sole purposes of registering and pursuing a claim for recovery under the MSA, in the form attached as Exhibit A to Plaintiffs' motion for preliminary approval of wrongful death claims (ECF No. 1334-1, PageID.41487–41489) is GRANTED.

16. Nothing in this Order should be construed as an abrogation of any immunity available to the State of Michigan or its officers, employees, or departments.

17. The Fairness Hearing is set for Monday, July 12, 2021, a minimum of 45 days after the Motion for final approval is filed, and the following schedule is set.

---

[24] As amended, ECF No. 1394.

69

*For purposes of the schedule below, this Order is effective on January 27, 2021.*

| Event | Deadline | Date |
|---|---|---|
| Settlement Website | Updated following this Order | Updated following this Order |
| Motion for Fees and Expenses | Filed within 30 days of the effective date of this Order | On or before Friday, February 26, 2021 |
| Notice Mailed | Within 30 days of the effective date of this Order | On or before Friday, February 26, 2021 |
| Deadline for Registration | Must be postmarked or submitted electronically within 60 days of the effective date of this Order | On or before Monday, March 29, 2021 |
| Deadline to Request Exclusion from Settlement | Must be postmarked or submitted electronically within 60 days of the effective date of this Order | On or before Monday, March 29, 2021 |
| Deadline for Objections to Settlement and Class Member Notice of | Must be filed within 30 days of Notice issuing/within 60 | Filed between Friday, February 26, 2021 and on or before |

| Intent to Appear at Fairness Hearing | days of the effective date of this Order | Monday, March 29, 2021 |
|---|---|---|
| Deadline for Objections to Settlement and Class Member Notice of Intent to Appear at Fairness Hearing | Must be Filed within 30 days of Notice issuing/ within 60 days of the effective date of this Order | Filed between Friday, February 26, 2021 and on or before Monday, March 29, 2021 |
| Motion for Final Approval | Filed within 120 days of the effective date of this Order | On or before Thursday May 27, 2021 |
| Fairness Hearing | Monday July 12, 2021 | Monday July 12, 2021 |
| Deadline for Claim Form | Must be postmarked or submitted electronically within 150 days of the deadline for Registration | On or before Thursday August 26, 2021 |

## V.    Conclusion

For the reasons set forth above, the Court GRANTS Plaintiffs' motion to establish settlement claims procedures and allocation and for preliminary approval of class settlement components (ECF No. 1318) and GRANTS Individual Plaintiffs' motion for an order adopting the proposed approval of wrongful death settlement. (ECF No. 1334).

71

IT IS SO ORDERED.

Dated: January 21, 2021          s/Judith E. Levy
Ann Arbor, Michigan              JUDITH E. LEVY
                                 United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 21, 2021.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager