# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated) |
| | Hon. Judith E. Levy |
| | Mag. Mona K. Majzoub |

## MOTION FOR A PRELIMINARY INJUCTION AND TEMPORARY RESTRAINING ORDER

COME NOW, Co-Liaison Counsel for the Individual Plaintiffs and Interim Co-Lead Class Counsel (collectively "Plaintiffs"), by and through the undersigned Counsel, move for an Order pursuant to Fed. R. Civ. P. 65(a) and (b) and Fed. R. Civ. P. 23: (1) enjoining Attorney Loyst Fletcher, Jr. of the law firm Loyst Fletcher Jr., & Associates, 718 Beech Street, Flint, MI 48502 (the "Fletcher Firm"), and any affiliates or agents, from communicating with putative class members and individually represented plaintiffs regarding matters relating to the proposed Settlement in this matter; (2) requiring Mr. Fletcher to inform this Court and Plaintiffs the names of all individuals who received his January 17, 2021 communication; and (3) requiring Mr. Fletcher to inform this Court and Plaintiffs of the names of all individuals who signed the retainer agreement that accompanied the January 17, 2021 letter.

Dated: February 3, 2021                    Respectfully submitted,

By: <u>Hunter J. Shkolnik</u>                    By: <u>/s/ Theodore J. Leopold</u>
Hunter J. Shkolnik                         Theodore J. Leopold
Napoli Shkolnik PLLC                       Cohen Milstein Sellers & Toll PLLC
270 Munoz Rivera Avenue, Suite 201         11780 U.S. Highway One
Hato Rey, Puerto Rico 00918                Suite N500
(787) 493-5088                             Palm Beach Gardens, FL 33408
hunter@napolilaw.com                       (561) 515-1400
                                           tleopold@cohenmilstein.com


By: <u>/s/ Corey M. Stern</u>                    By: <u>Michael L. Pitt</u>
Corey M. Stern                             Michael L. Pitt
Levy Konigsberg, LLP                       Pitt McGehee Palmer Bonanni & Rivers
800 Third Avenue, 11th Floor               PC
New York, NY 10022                         117 W. Fourth Street, Suite 200
(212) 605-6298                             Royal Oak, MI 48067
cstern@levylaw.com                         (248) 398-9800
                                           mpitt@pittlawpc.com


Co-Liaison Counsel for Individual          Co-Lead Interim Class Counsel
Plaintiffs

ii

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DISTRICT

*In Re* Flint Water Cases,

No. 5:16-cv-10444-JEL-MKM
(consolidated)

Hon. Judith E. Levy

Mag. Mona K. Majzoub

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ...................................................................... iii

STATEMENT OF ISSUES PRESENTED ...................................................v

CONTROLLING AUTHORITY ............................................................... vi

PRELIMINARY STATEMENT ..................................................................1

STATEMENT OF FACTS ..........................................................................2

   I.    MR. FLETCHER HAS SENT UNSOLICITED LETTERS TO
       REPRESENTED INDIVIDUALS ................................................3

   II.   MR. FLETCHER'S MISLEADING COMMUNICATION HAS ALSO
       BEEN SENT TO ABSENT MEMBERS OF THE CONDITIONALLY
       CERTIFIED SETTLEMENT SUBCLASS. ..................................5

LEGAL STANDARDS ...............................................................................6

ARGUMENT ..............................................................................................9

   I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. .............9

   II.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A
       TEMPORARY RESTRAINING ORDER AND INJUNCTION ARE NOT
       ISSUED ....................................................................................12

   III.  MR. FLETCHER WILL NOT BE HARMED BY THE INJUNCTION. ..15

   IV.  THE INJUNCTION IS IN THE PUBLIC INTEREST. ...........................16

CONCLUSION .........................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Carlson v. Thomas*, 159 F.R.D. 661 (E.D. Ky. 1994) ...............................................17

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007)........................................................................................................14

*Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696 (S.D. Ala. 2003) ...........................................................................................................19

*Gulf Oil Co . v. Bernard*, 452 U.S. 89 (1981)............................................. 14, 15, 23

*In re Eagle-Picher Indus., Inc.*, 963 F.2d 855 (6th Cir. 1992) ................................14

*Int'l Bd. of Teamsters Local 651 v. Philbeck*, No. No. 5: 19-105-DCR, 2019 U.S. Dist. LEXIS 47969 (E.D. Mar. 22, 2019).............................................................23

*Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554 (S.D. Fla. 2008)........................................19

*Little Caesar Enterprises, Inc. v. Miramar Quick Serv. Rest. Corp.*, No. 2:18-CV-10767, 2019 WL 3219844 (E.D. Mich. July 16, 2019).........................................16

*Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393 (6th Cir. 1997) 16

*Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016)........................................................................................................14

*U.S. v. Edward Rose & Sons*, 384 F.3d 258 (6th Cir. 2004) ...................................22

*UAW v. GMC*, 497 F.3d 615 (6th Cir. 2007)...........................................................23

*Uniroyal Goodrich Tire Co. v. Hudson*, 856 F. Supp. 348 (E.D. Mich. 1994).......19

*United States v. Miller*, 624 F.2d 1198 (3d Cir. 1980) ............................................17

*Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp. 2d 730 (E.D. Mich. 2011) ...................................................................................................................14

*Williams v. U.S. Dist. Court.*, 658 F.2d 430 (6th Cir. 1981) ...................................15

*Workman v. Bredesen*, 486 F.3d 896 (6th Cir. 2007)..............................................22

**Statutes**

MCR 8.121(B) ....................................................................................11

**Rules**

ABA Model Rules of Professional Conduct 4.2, cmt. a ..........................20

Fed. R. 23(d)(1)(C) ............................................................................14

MRPC 4.2.................................................................................... 16, 17

MRPC 7.3.........................................................................................16

MRPC 8.4(a) ....................................................................................16

**Other Authorities**

3 Newberg on Class Actions § 9:2 (5th ed.) .........................................18

## <u>STATEMENT OF ISSUES PRESENTED</u>

The issues presented in this Motion are:

1)      Whether a TRO effective for ten (10) days is merited pursuant to Federal Rule of Civil Procedure 65(b) until hearing on a Preliminary Injunction is merited pursuant to Fed. R. Civ. P. 65(b).

2)      Whether the Court should issue an order restricting Mr. Fletcher's communications with absent members of the conditionally certified Settlement Class.

## **CONTROLLING AUTHORITY**

Federal Rule of Civil Procedure 65(b).

Federal Rule of Civil Procedure 23.

## **PRELIMINARY STATEMENT**

Co-Liaison Counsel for the Individual Plaintiffs and Interim Co-Lead Class Counsel (collectively, "Plaintiffs"), by and through the undersigned attorneys, respectfully submit this brief in Support of Motion for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65(a) and Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b), to immediately stop Attorney Loyst Fletcher, Jr. and Loyst Fletcher, Jr. & Associates (the "Fletcher Firm") from engaging in misleading class communications and inappropriate solicitation of represented individuals in Flint.

Mr. Fletcher sent letters bearing the Fletcher Firm's letterhead—at least some of which were unsolicited—to Flint residents concerning the Flint Water Crisis settlement. This was a maneuver calculated to inject confusion into the Amended Settlement Agreement, which was the product of years of good faith negotiations and sincere compromise between Plaintiffs and the settling defendants. Mr. Fletcher's unsolicited letter contains several false and misleading statements that risk Plaintiffs—both represented and those participating as members of the Settlement Class—making legal decisions based on faulty information. The Rules of Professional Responsibility, as well as the caselaw regarding appropriate limitations on communications with class members, exists precisely to curtail such an eventuality.

Mr. Fletcher should not be permitted to continue to cause confusion about the Settlement. Accordingly, Plaintiffs respectfully ask the Court to grant a temporary restraining order so that it may conduct a fact-finding hearing to determine whether a permanent Order or corrective action is necessary.

## STATEMENT OF FACTS

In the past few weeks, seemingly following the Court's Order granting Preliminary Approval of the Settlement, Mr. Fletcher began sending letters bearing the Fletcher Firm's letterhead to residents in Flint concerning the Flint Water Crisis litigation. *See* Exhibit A. On information and belief, at least some of the Flint residents who received this letter had not requested it. Mr. Fletcher's letter contains multiple inaccurate statements about the Amended Settlement Agreement, distorts the opt-out procedures as articulated in the Amended Settlement Agreement (Dkt. No. 1394-2) and Order on Preliminary Approval (Dkt. No. 1399), improperly solicits individuals who have been retained by counsel to represent them for their Flint Water Crisis claim, and constitutes a misleading communication with absent members of the Settlement Class.

If not temporarily restrained and preliminarily enjoined by this Court, Mr. Fletcher will continue his inappropriate communications, in violation of Michigan Rules of Professional Conduct 4.2 and 7.3, to the putative class and represented individuals in hopes of dismantling the proposed settlement before this Court,

2

thereby irreparably harming Plaintiffs and putting the integrity of the proposed settlement at risk.

## I.    MR. FLETCHER HAS SENT UNSOLICITED LETTERS TO REPRESENTED INDIVIDUALS

Beginning on or about January 17, 2021, Mr. Fletcher began sending unsolicited packages to members of the putative settlement class and represented individuals of the Flint community, at least some of which Counsel believe were unsolicited. *See* Letter from Loyst Fletcher, Jr. to Mr. Mitchell Harris, attached hereto as Exhibit A. Mr. Harris retained Napoli Shkolnik PLLC ("Napoli Shkolnik") on November 1, 2018, and has been in regular communications with Napoli Shkolnik since that time. Additionally, Mr. Harris is included on the list of retained-Plaintiffs attached to the MSA. ECF No. 1319-2 at PageID.40529. The January 17, 2021 package is signed by Mr. Fletcher and enclosed a template opt-out and objection letter addressed to this Court to be signed by Mr. Harris, stating:

> I am a resident of the City of Flint. I paid water bills between January 1, 2017 and June 2019. I acknowledge that I have no medical records, nor have I had a lead level test of bone lead test between May 16, 2014 and August 2016. I have no proof of any damages to my residential property as required in Section V., p. 38 and 39 entitled "Property Damage and Business Economic Loss Categories."

> As such, given the $1,000.00 maximum limit, I intend to opt out of the Settlement Agreement and request of you the 2% relief as filed by my Attorney Loyst Fletcher, Jr.

> Further, as a water paying adult resident of the City of Flint, I object to the Amended Settlement Agreement as being totally unfair to the adults that also suffered.

Exhibit A.

The unsolicited January 17, 2021 package also enclosed an Attorney-Client Representation Agreement ("Fletcher Retainer") to hire the Fletcher Firm to represent Mr. Harris for his Flint Water Crisis Claim.[1]

This Court has the responsibility to ensure that parties in a class and collective action do not engage in abusive, deceptive, or coercive communications with class members and represented individuals. But that is exactly what Mr. Fletcher has done here. The opt-out and objection letter enclosed in Mr. Fletcher's January 17, 2021 package contained inaccurate and misleading statements concerning the proposed Amended Settlement Agreement. Specifically, Mr. Fletcher suggests to members of the putative class and represented individuals that they may request "the 2% relief as filed by my Attorney Loyst Fletcher, Jr." *See* Exhibit A.[2]

Mr. Fletcher's opt-out and objection letter is deceptive in that it suggests that eligible Settlement claimants and absent Settlement Class members may choose between participating in the Settlement or being compensated via the "2% relief"

---

[1] In addition to the other issues described herein, the Fletcher Retainer impermissibly provides for a 40% contingency fee, in violation of Michigan Rules. *See* Ex. A; MCR 8.121(B) ("The maximum allowable fee for the claims and actions referred to in subrule (A) is one-third of the amount recovered.")

[2] It is unclear from the letter what, exactly, Mr. Fletcher is referring to here. Plaintiffs have interpreted the reference to coincide with Mr. Fletcher's statements in the reply brief he filed in support of his motion to intervene. *See* ECF No. 1396 at PAGEID.54356.

referenced in the form letter. But there currently is no Settlement which provides the type of alternate relief reference in this letter, nor can the Court order that such relief be provided. *See* ECF No. 1399 at PageID.54460 ("The Court does not have the power or authority to impose additional terms, additional monetary amounts, or a different allocation to an agreement reached between the parties.").

Further, Mr. Fletcher's letter is intended to chill participation in this proposed settlement by providing unsolicited opt-out and objection letters, discouraging putative class members and represented individuals from joining the proposed settlement. Mr. Fletcher's communications are thus deceptive and coercive.

## II.    MR. FLETCHER'S MISLEADING COMMUNICATION HAS ALSO BEEN SENT TO ABSENT MEMBERS OF THE CONDITIONALLY CERTIFIED SETTLEMENT SUBCLASS.

On January 21, 2021, the Court preliminarily approved the proposed Amended Settlement Agreement and, in doing so, conditionally certified a Settlement Class and Subclasses. ECF No. 1399. Consistent with Federal Rule of Civil Procedure 23(e), the Court also reviewed and approved Notice to members of the Settlement Class and Subclasses. *Id.* at PageID.54450-51

In addition to contacting retained individuals, Mr. Fletcher has sent the same misleading packet of information described above to Flint residents who are likely members of the conditionally certified Settlement Class. *See* Ex. B. As explained above, the information contained in Mr. Fletcher's correspondence inaccurately

describes the relief available to potential Settlement claimants and deceptively attempts to dissuade participation in the Settlement. Additionally, the letter wrongly describes the process in which absent class members may opt-out of the proposed Settlement.

The Court-approved Notice explains that for members of the Settlement Class to opt out and preserve their right to bring an individual action, they must sign a specific form and submit that form to the Claims Administrator. Moreover, the letter wrongly suggests that absent class members may *both* object to, and opt-out of, the proposed Settlement. Wrongly advising absent Settlement Class Members regarding their legal rights under the settlement could result in class members unknowingly releasing their claims, receiving nothing from the Settlement, and/or failing to object in a manner that can be taken into consideration by the Court. This is precisely why the Federal Rules and Due Process Clause require Courts to review and approve the Notice to absent class members that describes these legal rights and how to exercise them.

## **LEGAL STANDARDS**

Courts consider four factors in determining whether to issue a temporary restraining order and preliminary injunction:

1)      whether the movant has a strong likelihood of success on the merits;

2)      whether the movant would suffer irreparable injury without the injunction;

3)      whether issuance of the injunction would cause substantial harm to others; and

4)      whether the public interest would be served by the issuance of the injunction.

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc*., 963 F.2d 855, 859 (6th Cir. 1992) (citations omitted); *see also Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp. 2d 730, 733 (E.D. Mich. 2011).

Regarding Mr. Fletcher's communications with absent members of a class, the Court also has authority to enjoin his communications under Rule 23(d) and need not find that the four preliminary approval factors have been satisfied. *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016) citing *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1201 (11th Cir. 1985). In the context of a class action, the Supreme Court has held that Courts also have a "duty to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981); *see also* Fed. R. 23(d)(1)(C)(permitting courts to issue orders that, "impose conditions on the representative parties or on intervenors.").[3] That control

---

[3] This authority exists both before, and after, a Court has decided to certify a class. *See* Manual for Complex Litig. at 259 (4th Ed.) ("If class members have received

7

includes restricting communications between an attorney and the class where such communications are abusive, deceptive, or coercive. *Gulf Oil Co.*, 452 at 101.

When considering requests to limit communications with absent class members, the Court and parties must be particularly mindful of potential First Amendment concerns. *Id.* at 103-04. As a result, the Supreme Court held that, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101; *see also Williams v. U.S. Dist. Court.*, 658 F.2d 430, 436-37 (6th Cir. 1981) (holding restrictions on communications with absent class members must be premised on legal and/or factual findings of abuse or potential abuse).

Because the arguments supporting Plaintiffs' request that the Court impose restrictions on Mr. Fletcher's communications with absent class members are largely coextensive with the analysis required in deciding whether to impose a preliminary injunction, they will be addressed simultaneously. Here, all of the preliminary junction factors, as well as the caselaw regarding restrictions on communications with absent class members, weigh in favor of restricting Mr. Fletcher's misleading and unsolicited communications.

---

inaccurate precertification communications, the judge can take action to cure the miscommunication and to prevent similar problems in the future.")

## ARGUMENT

## I.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.

In establishing the first TRO and preliminary injunction factor, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Little Caesar Enterprises, Inc. v. Miramar Quick Serv. Rest. Corp.*, No. 2:18-CV-10767, 2019 WL 3219844, at *3 (E.D. Mich. July 16, 2019), *aff'd*, No. 19-1860, 2020 WL 4516289 (6th Cir. June 25, 2020).

At least three rules of the Michigan Rules of Professional Conduct are relevant here. First, Rule 4.2 of the Michigan Rules of Professional Conduct prohibits a lawyer from communicating "about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." Second, Rule 7.3 of the Michigan Rules of Professional Conduct states that "[a] lawyer shall not solicit professional employment from a person with whom the lawyer has no family or prior professional relationship when a significant motive for doing so is the lawyer's pecuniary gain." Third and finally, Rule 8.4(a) states that professional misconduct occurs when a lawyer "violate[s] or attempt[s] to violate

the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another." This Court has the inherent authority and the duty to prohibit or remedy litigation practices which raise ethical concerns or may constitute ethical violations. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980); *Carlson v. Thomas*, 159 F.R.D. 661, 663 (E.D. Ky. 1994).

Although Mr. Fletcher is not a party to the consolidated action before this Court, Mr. Fletcher has knowingly participated in efforts to engage in improper communications with represented parties and punitive class members and thus can be found to have engaged in *ex parte* communications. *See* MRPC 4.2(a). The January 17, 2021 package clearly addresses the legal rights of Mr. Harris and other recipients of the package, specifically their right to opt out and object to the potential settlement. It is inappropriate for Mr. Fletcher to issue such a letter to putative class members and represented individuals when he is not class counsel nor represents the targeted individual.

Unlike most other cases, in this litigation retained plaintiffs are listed in records maintained by the Special Master as a part of the extensive and ongoing census. Additionally, the MSA includes exhibits listing individuals who have retained counsel in this matter. Mr. Fletcher could have easily consulted either of these sources to avoid contacting those individuals who had retained counsel. That he either did not do so, or moved forward regardless, is troubling and supports

intervention by the Court. Moreover, even if some of the individuals Mr. Fletcher solicited had not retained individual counsel, to the extent they are members of a conditionally certified Settlement Subclass, Mr. Fletcher's communications were improper.[4]

Mr. Fletcher was not authorized by statute, law, Plaintiffs' counsel, or this Court to engage in these *ex parte* communications with putative class members and represented individuals. According to the ABA's Committee on Ethics and Professional Responsibility, a communication is "authorized by law" if "a constitutional provision, statute or court rule, having the force and effect of law . . . expressly allows a particular communication to occur in the absence of counsel." ABA Comm. on Ethics and Prof. Responsibility, Formal Op. 95-306 (1995). Such communications include "court rules providing for service of process or a statute authorizing a government agency to inspect certain regulated premises." *Id*. Mr. Fletcher can point to no provision which would expressly authorize the communication at issue here. Of course, Plaintiffs' counsel has not authorized any such communication and has, in fact, objected to such communications. Mr.

---

[4] *See* 3 Newberg on Class Actions § 9:2 (5th ed.) (explaining that, "professional ethics rules regulate the manner in which attorneys may communicate with absent class members" and referencing model rules which restrict solicitation, prohibit *ex parte* communications, and forbid misleading or deceptive communications).

Fletcher's communications are misleading and likely unethical, violating Michigan Rules of Professional Conduct 4.2 and 7.3.

Accordingly, Plaintiffs are likely to succeed in their request for an Order limiting Mr. Fletcher's communications with retained Plaintiffs. Additionally, Courts have limited communications with absent class members where, like here, those communications contained incorrect or misleading information. *See*, *e.g.*, *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 564 (S.D. Fla. 2008) (limiting communications with absent class members designed to encourage opt-outs where, " has the potential to have a misleading and coercive effect on putative class members."); *Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc.*, 214 F.R.D. 696, 698 (S.D. Ala. 2003) (holding, "communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel.")

## II. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY IF A TEMPORARY RESTRAINING ORDER AND INJUNCTION ARE NOT ISSUED

Plaintiffs will suffer irreparable harm in the absence of immediate injunctive relief. An injury is irreparable if it is not fully compensable in monetary terms. *See, e.g., Uniroyal Goodrich Tire Co. v. Hudson*, 856 F. Supp. 348, 356 (E.D. Mich. 1994).

Here, Plaintiffs have shown a strong likelihood of confusion by showing that Mr. Fletcher's letter (i) contains false statements and (ii) is directed at persons who are represented by attorneys and are putative class members. In light of the fact that the January 17, 2021 letter contained a retainer agreement to hire Mr. Fletcher for claims arising out of the Flint Water Crisis, there can be little doubt, however, that Mr. Fletcher intended the opt-out/objection letter and proposed retainer agreement to be delivered to absent class members and individuals he knew (or should have known) were represented by counsel. He also knew, or should have known, that the language in that letter could affect the recipients' legal rights and behavior.

One of the main purposes of MRPC 4.2(a) is to protect the integrity of the lawyer-client relationship. Indeed, the comments to ABA Model Rule 4.2 (upon which MRPC 4.2(a) is based) indicate that its central prohibition "contributes to the proper functioning of the legal system" by guarding against "possible overreaching" by lawyers, including whose conduct may "interfere[] with the client–lawyer relationship." *See* ABA Model Rules of Professional Conduct 4.2, cmt. a.

Mr. Fletcher's actions here—in addition to prejudicing Plaintiffs' counsel—have greatly impaired Plaintiffs' counsels' relationship with represented clients and the putative settlement class. Indeed, the content of Fletcher's letter suggests it was his intention to do so. Although Plaintiffs do not know the exact number of clients and putative class members that were sent improper solicitation letters by Mr.

Fletcher, early indications suggest the number is likely substantial. Based upon the telephone calls and other inquiries made by Plaintiffs thus far, the communication has already caused distress and confusion among the residents of Flint. Plaintiffs and members of the Settlement Class are understandably confused as to why they are receiving letters and retainer agreements from lawyers they have never heard of nor sought counsel from.

Because of Mr. Fletcher's improper communications, Plaintiffs' counsel will now be required to participate in needless phone calls and correspondence with potentially thousands of plaintiffs and residents concerned about this letter. Not only will these communications take copious amounts of time, but they will have the effect of making Plaintiffs' counsel appear ineffective and incompetent—undermining the attorney-client relationship.

Worse yet, Plaintiffs may make decisions based on the misinformation contained in Mr. Fletcher's communication—his letter expressly seeks to have potential claimants refrain from participating in the Settlement in order to partake in a non-existent, alternative "2% relief." But, as discussed previously, there is currently no alternative to the Settlement that compensates claimants and the form letter provided by Mr. Fletcher does not constitute an effective opt-out and thus does not preserve the signatory's ability to bring their own claim. Those Plaintiffs who

act on the information provided in Mr. Fletcher's communication could end up without any remuneration or even the ability to bring their own claim.

The injuries Mr. Fletcher's letter threatens to inflict will be irreparable. Some clients may elect to change representation altogether; others may simply lose faith in their attorneys or the process in subtle ways, including by seeking *yet other* representation apart from their current attorneys or Mr. Fletcher; still others may drop out of the process altogether. If the misinformation prompts large number of opt-outs and objections, it may imperil the settlement.

## III.    MR. FLETCHER WILL NOT BE HARMED BY THE INJUNCTION.

The goal of preliminary relief is to preserve the status quo ante pending an adjudication on the merits. "TRO's have the modest purpose of preserving the status quo to give the court time to determine whether a preliminary injunction should issue." *Workman v. Bredesen*, 486 F.3d 896, 922 (6th Cir. 2007). Similarly, "the purpose of a preliminary injunction is simply to preserve the status quo." *U.S. v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004).

The balance of hardships clearly favors Plaintiffs. Insofar as the communications from Mr. Fletcher are unlawful and unethical, enjoining those practices will impose no hardship on Mr. Fletcher. On the other hand, in the absence of an injunction, the unlawful communications will continue to confuse and

intimidate putative class members and represented individuals and deter some number of them from participating in the proposed settlement.

Chilling participation in a proposed settlement is particularly insidious because neither the Court nor Plaintiffs' counsel can know when a class member refuses to join, or opts out of a case, whether the reason was coercive conduct by the chilling party. Plaintiffs seek nothing more than to preserve the status quo by preventing Mr. Fletcher from continuing to communicate with putative class members and represented individuals.

## IV.   THE INJUNCTION IS IN THE PUBLIC INTEREST.

A preliminary injunction enjoining Mr. Fletcher from disseminating deceptive and misleading information regarding the proposed settlement is in public interest. *See Int'l Bd. of Teamsters Local 651 v. Philbeck*, No. No. 5: 19-105-DCR, 2019 U.S. Dist. LEXIS 47969, at *14 (E.D. Mar. 22, 2019) ("The public interest would be served by enjoining Philbeck from posting on the Facebook accounts because it would stop posts from a non-Union official and may help stop the spread of misinformation."). Of course, the public interest in maintaining the integrity of the proposed settlement agreement and class notice process is of paramount importance. *See UAW v. GMC*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions").

The public interest, as well as this Court's "duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties," *Gulf Oil Co.*, 452 U.S. at 100, all counsel in favor of issuance of preliminary injunctive relief. For each of the reasons set forth above, Plaintiffs respectfully submits that the public interest can only be served if Mr. Fletcher is enjoined from disseminating any further communications to the putative class and represented individuals.

The Michigan Rules of Professional Conduct and requirements under Rule 23 exist to protect the public interest—to protect the attorney-client relationship and ensure class members are not misled regarding their legal rights. Issuing a temporary restraining order and injunction to prevent additional violations these rules and the policies they promote is, accordingly, fully in the public interest.

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court enter an Order granting the requested temporary restraining order and preliminary injunction, and for such other and further relief the Court deems just and proper.

Dated: February 3, 2021

Respectfully submitted,

By: <u>Hunter J. Shkolnik</u>
Hunter J. Shkolnik
Napoli Shkolnik PLLC
270 Munoz Rivera Avenue, Suite 201

By: <u>/s/ Theodore J. Leopold</u>
Theodore J. Leopold
Cohen Milstein Sellers & Toll PLLC
11780 U.S. Highway One

17

Hato Rey, Puerto Rico 00918
(787) 493-5088
hunter@napolilaw.com

By: /s/ Corey M. Stern
Corey M. Stern
Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, NY 10022
(212) 605-6298
cstern@levylaw.com

Co-Liaison Counsel for Individual
Plaintiffs

Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400
tleopold@cohenmilstein.com

By: Michael L. Pitt
Michael L. Pitt
Pitt McGehee Palmer Bonanni & Rivers
PC
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com

Co-Lead Interim Class Counsel

18

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing upon counsel of record.

Dated: February 3, 2021

_____/s/ Patrick J. Lanciotti_____