## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELNORA CARTHAN, et al., | | |
| | Plaintiffs, | |
| v. | | Case No. 5:16-cv-10444-JEK-MKM |
| RICK SNYDER, et al., | | |
| | Defendants. | Hon. Judith E. Levy |
| | | Magistrate Judge Mona K. Majzoub |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE THE SECOND REPORT OF DAVID A. KEISER, PH.D.

Pursuant to Federal Rule of Civil Procedure 37(c)(1), Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) move to exclude as untimely the second report submitted by plaintiffs' expert David A. Keiser, Ph.D.

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel concerning this motion. After VNA explained the nature and legal basis for the motion, Plaintiffs' counsel said that they would oppose it.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**                    **BUSH SEYFERTH PLLC**

By:  */s/ James M. Campbell*                    By:  */s/ Cheryl A. Bush*
James M. Campbell                    Cheryl A. Bush (P37031)
Alaina N. Devine                    Michael R. Williams (P79827)
One Constitution Wharf, Suite 310                    100 W. Big Beaver Road, Suite 400
Boston, MA 02129                    Troy, MI 48084
(617) 241-3000                    (248) 822-7800
jmcampbell@campbell-trial-lawyers.com                    bush@bsplaw.com
adevine@campbell-trial-lawyers.com                    williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  February 5, 2021

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELNORA CARTHAN, et al.,

                                    Plaintiffs,

        v.                                          Case No. 5:16-cv-10444-JEK-
                                                    MKM
RICK SNYDER, et al.,

                                    Defendants.     Hon. Judith E. Levy
                                                    Magistrate Judge Mona K.
                                                    Majzoub

---

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE THE SECOND REPORT OF DAVID A. KEISER, Ph.D.

## STATEMENT OF THE ISSUE PRESENTED

1.      Should the Court exclude Dr. Keiser's untimely second report?

> **VNA answers:**  "Yes."
>
> **Plaintiffs answer:**  "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003))

*United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016)

*Moonbeam Capital Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-dv-12606, 2020 WL 1502004, at *7 (E.D. Mich. Mar. 30, 2020)

Fed. R. Civ. P. 26

Fed. R. Civ. P. 37

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND .................................................................................................2

LEGAL STANDARD ...........................................................................................5

ARGUMENT ......................................................................................................7

I.    The Second Report Is Not A "Supplement" To Dr. Keiser's Original
Report ......................................................................................................7

II.   Plaintiffs Cannot Satisfy Their Burden Of Showing That Dr. Keiser's
Delay In Submitting His Second Report Was Either Substantially
Justified Or Harmless .............................................................................8

      A.   There Is No Justification For The Untimely Submission Of Dr.
Keiser's Second Report .................................................................8

      B.   Plaintiffs' Untimely Submission Of The Second Report Is
Prejudicial To VNA ....................................................................12

CONCLUSION ..................................................................................................17

## INTRODUCTION

David Keiser, Ph.D., is an economics professor.  Plaintiffs offer his opinions to attempt to show that they can establish causation, injury, and damages for their property-damage subclass on a class-wide basis.  Plaintiffs submitted an expert report from Dr. Keiser in support of their motion for class certification on June 30, 2020.  VNA has moved to exclude the opinions expressed in that report.

On January 4, 2021, Plaintiffs served on VNA a second expert report from Dr. Keiser.  The second report was served more than six months after the deadline for Plaintiffs' expert reports and only three days before the deadline for VNA's opposition to Plaintiffs' motion for class certification, VNA's expert reports, and its motions to exclude the opinions of Dr. Keiser and Plaintiffs' other expert witnesses. Because the second report was filed immediately before the deadline for the class-certification opposition, VNA was not able to obtain discovery from Dr. Keiser related to the second report, depose Dr. Keiser about the contents of the second report, or have its experts review or respond to the second report.

The second report contains an entirely new model for evaluating changes in property values in Flint, comparing the performance of the housing market in Flint to a new set of control cities and using a different type of analysis.  Dr. Keiser applies that new model (as well as his original model) to an expanded and altered data set. The second report makes many changes to Dr. Keiser's methodology and contains

new opinions on issues that were not addressed in either his original report or his deposition.

All of this could have been included in Dr. Keiser's original expert report. Yet Dr. Keiser did not submit it until just before the class certification opposition was due. Unless this eleventh-hour report is excluded, there will need to be significant additional proceedings. Dr. Keiser first will have to disclose to VNA and LAN the new data set he used in his second report and any other new materials on which he relied. Then VNA's expert will need to have an opportunity to analyze Dr. Keiser's new opinions, and VNA will need to have a chance to depose Dr. Keiser. Finally, VNA will need to file a new *Daubert* motion, a supplement to its class-certification opposition, and a supplement to its own expert's report. All of that would be prejudicial to VNA and cause significant delay in the Court's schedule. For all of these reasons, the Court should exclude Dr. Keiser's untimely second report.

## BACKGROUND

Plaintiffs have sought certification of a "Residential Property Subclass" consisting of "all persons and entities, who, from April 25, 2014 to present, owned residential property within the City of Flint." Pls.' Mot. for Class Certification xii, ECF No. 1207, PageID.34436. On June 30, 2020—the last day allowed by the CMO, ECF No. 1255, PageID.39323—Plaintiffs submitted a 69-page report from

Dr. Keiser in support of their motion for class certification.  Dr. Keiser opined that a subsector of Flint residential property had lost value because of the water crisis. *See* Keiser Report, ECF No. 1208-128, PageID.37474, 37529 (Report).  The report relies in part on a working paper that Dr. Keiser hopes to publish.  *Id.* at 1, PageID.37480; Ex. 2, Keiser Dep. 283:18-20 (Dep.); *see* Ex. 3, P. Christensen, et al., *Economic Effects of Environmental Crises: Evidence from Flint, Michigan* 2 (2019) (Keiser Working Paper).  Dr. Keiser's original report compares the housing market in Flint to the aggregated housing markets of a control group of three cities between 2006 and June 2017.  He purports to identify a loss of valuation in single-family Flint residences valued above $25,000 following the water crisis.

At 10:03 p.m. on January 4, 2021, Plaintiffs served VNA with a second report from Dr. Keiser. Ex. 4, Supplemental Expert Report of David Keiser, Ph.D. (Second Report).  Plaintiffs served Dr. Keiser's second report more than six months after the deadline for expert reports in support of class certification and three days before the due date for VNA's opposition to class certification (and accompanying expert reports and motions to exclude the opinions of Plaintiffs' experts).  *See* ECF No. 1255, PageID.39323.  The second report does not say why the opinions it contains could not have been included in Dr. Keiser's original report.  Notably, the "updated" data set used in Dr. Keiser's second report ends in August 2019, almost a year before he submitted his original report, on June 30, 2020.  Second Report 4.

3

The second report adds a significant amount of new material.  It incorporates an updated draft of Dr. Keiser's working paper, which includes 30 pages of text and 39 pages of data and analysis.  Second Report, Ex. A[1].  The second report and the attached working paper modify Dr. Keiser's original opinions in this case by adding an entirely new methodology for assessing property values in the Flint residential housing market; selecting a new group of control cities for the new methodology; applying the new methodology, as well as his original methodology, to an expanded and altered data set that includes housing transactions through August 2019; making numerous changes to the assumptions and methodological choices from his original report; offering numerous new opinions not included in his original report; and altering Dr. Keiser's damages estimates.  Second Report 2-9.

On January 7, 2021, VNA filed its opposition to Plaintiffs' motion for class certification, ECF No. 1369, PageID.45323-45495, along with a *Daubert* motion to exclude the opinions in Dr. Keiser's original report, ECF No. 1378, PageID.49948-49985.  In support of the *Daubert* motion, VNA provided the report of its expert, Prof. Christian Redfearn.  ECF No. 1378-5, PageID.50085-50174.  Over the course of 87 pages, Prof. Redfearn dissected the opinions from Dr. Keiser's original report

---

[1] Class Plaintiffs have asserted that Exhibit A to Dr. Keiser's Second Report is "Confidential" under this Court's Confidentiality Order because it has not yet been published or publicly disclosed.

and showed why they were inconsistent with basic tenets of economic methodology, were grounded in an invalid comparison between Flint and control cities that have housing markets that do not behave like Flint's housing market, used unreliable and inadequate data, and produced absurd results that cannot be squared with reality. *Id.*

## LEGAL STANDARD

Under the Federal Rules, there are consequences for failure to disclose expert reports on the schedule ordered by the district court. In particular, Rule 37 states that "the party is not allowed to use" evidence or testimony that was not provided in compliance with Rule 26 "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). And Rule 26 states that a party "must make [expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). The "main purpose of Rule 26(a) is to ensure that parties can properly prepare for cross-examination and that 'deposition testimony can proceed with parties already armed with the expert's report, so as to be able to evaluate the opinions to be offered.'" *Tanner v. Grand River Navigation Co., Inc.*, No. 14-cv-13478, 2015 WL 8310291, at *3 (E.D. Mich. Dec. 9, 2015) (quoting *Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003)).

If a party fails to make expert disclosures as specified in Rule 26, "'exclusion of non-disclosed evidence is *automatic and mandatory* under Rule 37(c)(1) unless non-disclosure was justified or harmless.'" *Dickenson v. Cardiac & Thoracic*

5

*Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004) (emphasis added) (quoting

*Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).  "[A]bsolute

compliance" with disclosure requirements is required because the rule is such a

central part of trial preparation, and "the burden is on the potentially sanctioned party

to show harmlessness."  *United States ex rel. Tenn. Valley Auth. v. 1.72 Acres of

Land in Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016); *see Auto Club Grp. Ins. Co. v.

Omega Flex, Inc.*, No. 16-cv-12227, 2017 WL 3263355, at *3-*4 (E.D. Mich. Aug.

1, 2017) (striking untimely disclosed expert report); *Jennings v. Dow Corning Corp.*,

No. 12-12227, 2013 WL 625591, at *1 (E.D. Mich. Feb. 20, 2013) (striking untimely

disclosed expert testimony).

These rules apply with full force to an untimely second report from an expert

that contains new information or opinions that could have been disclosed in the

original report—even if the expert characterizes the second report as a "supplement"

to the expert's original timely report.  A party must supplement its expert's report

"if the party learns that in some material respect the disclosure or response is

incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in

writing." Fed. R. Civ. P. 26(e)(1)(A).  However, "[a] party may not use a

supplemental report to disclose information that should have been disclosed in the

initial expert report, thereby circumventing the requirement for a timely and

complete expert witness report.  Accordingly, a supplemental report that states additional opinions or seeks to strengthen or deepen opinions expressed in the original report is beyond the scope of proper supplementation and subject to exclusion under Rule 37(c)." *Moonbeam Capital Invs., LLC v. Integrated Constr. Sols., Inc.*, No. 2:18-dv-12606, 2020 WL 1502004, at *7 (E.D. Mich. Mar. 30, 2020) (quoting 6 James W. Moore et al., MOORE'S FEDERAL PRACTICE § 26.131[2] (3d ed.)); *see, e.g., Doe v. Livonia Pub. Sch.*, No. 13-cv-11687, 2018 WL 500249, at *1-*4 (E.D. Mich. Jan. 22, 2018) (Levy, J.) (striking expert's untimely second report); *Eiben v. Gorilla Ladder Co.*, No. 11-CV-10298, 2013 WL 1721677, at *5-*6 (E.D. Mich. Apr. 22, 2013) (striking untimely second report and explaining that "Rule 26(e) does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement[al] label" and thereby "sandbag one's opponent") (internal quotation marks omitted).

## ARGUMENT

## I.  The Second Report Is Not A "Supplement" To Dr. Keiser's Original Report

Dr. Keiser's second report does not correct omissions or acknowledge errors in his original report.  Instead, it offers numerous new opinions and attempts to address methodological flaws in his original report.  Because the second report "states additional opinions [and] seeks to strengthen or deepen opinions expressed in the original report [it] is beyond the scope of proper supplementation and subject

to exclusion under Rule 37(c)." *Moonbeam Capital*, 2020 WL 1502004, at *6; *see also Eiben*, 2013 WL 1721677, at *5-*6 ("Rule 26(e) does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement[al] label"). If Plaintiffs wanted to present these additional opinions of Dr. Keiser, they should have done so by the original deadline.

## II. Plaintiffs Cannot Satisfy Their Burden Of Showing That Dr. Keiser's Delay In Submitting His Second Report Was Either Substantially Justified Or Harmless

As noted above, an expert report that is served after the disclosure deadline must be excluded unless the delay was either substantially justified or harmless. For the reasons discussed below, Plaintiffs' service on VNA of Dr. Keiser's second report more than six months after the disclosure deadline was neither substantially justified nor harmless.

### A. There Is No Justification For The Untimely Submission Of Dr. Keiser's Second Report

Dr. Keiser does not explain why he was prevented from including the new material in his original report or justify providing his new opinions only three days before VNA was required to file its motion to exclude his opinions, its own expert reports, and its opposition to Plaintiffs' motion for class certification. In fact, there is no reason why the opinions in his second report could not have been included in the original report that Plaintiffs submitted from Dr. Keiser on June 30, 2020.

8

Dr. Keiser says that the opinions in his second report are "based on a revised version of [his] co-authored academic paper on the Flint drinking water contamination." Second Report 2. But the obstacles that Dr. Keiser has faced trying to publish his working paper—and changes he has made in an attempt to salvage that paper (and to respond to other flaws pointed out during his deposition)—do not "substantially justif[y]" an eleventh-hour modification of his opinions in this litigation. If an expert were allowed to modify his opinions any time that he had a new idea about the topics in his expert report—forcing the expert discovery process to start over again—then litigation schedules would become meaningless.

As Chief Judge Rosen explained in striking an expert's late-filed second report, "[t]o rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant further consultation with one's own expert and virtually require new rounds of depositions." *Eiben*, 2013 WL 1721677, at *6 (internal quotation marks omitted).

Dr. Keiser also states in his second report that he has "incorporate[d] newly available data from January 2006 to August 2019" "from Zillow's ZTRAX database." Second Report 4. But Dr. Keiser does not identify when this data first became available. In particular, he did not specify whether it was available when he filed his original report in June 2020. Zillow states that "ZTRAX is updated quarterly." www.zillow.com/research/ztrax/. The data set used in the second report ends in August 2019, almost a year before the June 2020 filing deadline for Dr. Keiser's original report.[2] This strongly suggests that the data set that Dr. Keiser used in his second report *was* available at the time that he filed his original report. At the very least, there is no demonstration in the second report that Dr. Keiser was for some legitimate reason prevented from incorporating this "new" data into his original report (or at least supplementing his original report with this data at an earlier date that would have allowed VNA time to respond). *See Doe*, 2018 WL 500249, at *4 (rejecting argument that stay of proceedings justified untimely disclosure of second report because plaintiff did not disclose the report even during the many months during which the stay was not in effect).[3]

---

[2]   Dr. Keiser's original report used a data set that ended in June 2017. *See* Report 45, PageID.37524.

[3]   If the Court nevertheless were inclined to allow Dr. Keiser to update his original report with more recent data, it should exclude his second report and direct Plaintiffs to file an updated version of Dr. Keiser's original report making no changes other than those necessitated by incorporating the most recent transaction data from the

Plaintiffs have had years to prepare their case and to obtain expert testimony in support of their motion for class certification.  In September and October 2020, the parties negotiated and jointly moved for (and the Court granted) a schedule with deadlines for expert depositions as well as class-certification oppositions and reply briefs.  During those negotiations, Plaintiffs did not propose delaying the expert-disclosure timeline so that Dr. Keiser could develop additional opinions.  And Plaintiffs never sought to extend the time for expert disclosures after that.  *See Doe*, 2018 WL 500249, at *3 (noting that "Plaintiffs have not moved to extend the time to file expert reports, and no such extension has been granted").

Instead, at the deadline set forth in the CMO, they filed a lengthy and complex report from Dr. Keiser in support of their motion for class certification.  In reliance on the completeness of that disclosure, VNA invested significant resources in deposing Dr. Keiser over two days, developing sophisticated expert testimony analyzing and responding to Dr. Keiser's report, and addressing his opinions both in its *Daubert* motion and in its opposition to the motion for class certification.  There is no justification for Plaintiffs' submission of a new set of opinions only three days

---

ZTRAX database (which should extend well beyond August 2019 at this point). Even that change would require VNA to obtain the new data, analyze the new data and new results with the assistance of its own expert, and, if necessary, reopen the deposition of Dr. Keiser to explore any questions presented by the new data and analysis.

11

before VNA's filing deadline when VNA could no longer investigate, analyze, or address these new opinions.[4]

**B.    Plaintiffs' Untimely Submission Of The Second Report Is Prejudicial To VNA**

**1.    The Second Report Presents A Large Amount Of New Information**

The opinions expressed in Dr. Keiser's second report differ from and add to those in his original report in numerous ways.

a.    The original report offered opinions based on a comparison between the housing market in Flint and the housing markets in three cities that Dr. Keiser maintained had housing markets like Flint's: Pontiac, Michigan; Youngstown, Ohio; and Camden, New Jersey.   As Dr. Keiser admitted during his deposition, peer reviewers rejected his working paper, in part because this control group did not account for the fact that Flint was in receivership leading up to, during, and after the water crisis.   Dep. 308:24-310:11, 312:22-313:5.   In an attempt to address that criticism, the second report adds an entirely new comparison between Flint and five

---

[4]   In contrast, one of Plaintiffs' other experts, Dr. Robert A. Simons, submitted a supplemental report before his deposition.  As a result, VNA was able to question him about the supplemental report during the deposition, its expert was able to respond to the supplemental report in his own report, and VNA was able to address the opinions in the supplemental report in its motion to exclude Dr. Simons's opinions and in its opposition to class certification.  VNA therefore did not move to strike the supplemental report even though it was filed three months after the disclosure deadline.

cities in Michigan that did go through a period of receivership. Second Report 2. This new model is substantively different from the model in his original report, using "event time, not calendar time" to compare how the housing market in Flint and the aggregated housing markets in the ostensible control cities performed before and after the terms of their respective emergency managers. *Id.* at 3. Just as this Court stated in *Doe*, "[t]hat is a different analysis altogether, and it cannot be fairly said to 'supplement' the first report . . . ." 2018 WL 500249, at *3.

This new analysis raises many questions that VNA would need to explore through discovery. Because the second report was filed only a few days before VNA's deadline for filing its opposition to class certification, its expert reports, and its *Daubert* motions, however, VNA had no opportunity to question Dr. Keiser about the numerous issues raised by his new methodology. Nor did it have the opportunity to seek expert advice about the new methodology, the new control cities, and the new results in Dr. Keiser's second report.

b. The first report used housing transaction data from Zillow's ZTRAX database through June 2017. Report 44-45, PageID.37523-37524. The second report uses ZTRAX data that extend through August 2019. Second Report 4. But Dr. Keiser says that "[i]n addition to more years of data, these Zillow data provide more transactions overall." *Id.* This suggests that he has added new data during the period covered by his original report. Dr. Keiser also says that with "new guidance

from Zillow" he has "refine[d] a few variables" in the data "including the transaction date." *Id.* It is not clear exactly what changes were made to the data set, whether Dr. Keiser's manipulation of the data is justified, or why the "guidance" that supposedly resulted in these alterations was not sought when Dr. Keiser was preparing his original report.

Because Dr. Keiser's second report uses a data set that is different in numerous respects from the data set provided to VNA during discovery, VNA and its experts are currently unable to analyze his new opinions or identify issues related to that expanded and altered data. The process of assessing Dr. Keiser's new opinions could start only after production of the new data set used in Dr. Keiser's second report.

c.   Not only does the second report introduce a new methodology and a new data set, it alters the methodology used in Dr. Keiser's original report in several ways. For example, Dr. Keiser says that he has used a new set of controls in his regression analysis. Second Report 3 & n.2. He also "adds specifications that use quadratic city-specific time trends" and employs "a new difference-in-differences approach that allows for linear violations of pre-trends in prices." *Id.* at 6.

VNA has had no opportunity to question Dr. Keiser about the details of these changes to his original methodology, the reasons for making them, the reasons they were not made originally, or their impact on his analysis. Neither has VNA had the opportunity to consult with its expert about whether these changes are justified and

14

whether Dr. Keiser's new, modified methodology is consistent with economic practice and produces results that are considered reliable by other experts in the field.

     d.     The second report also contains a number of entirely new opinions on issues that were not addressed in Dr. Keiser's original report. ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Second Report 6, Ex. A, at 21-22[5]. Each of these are new opinions that neither VNA nor its experts have had an opportunity to explore or analyze. *See Doe*, 2018 WL 500249, at *3.

     e.     ███████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████ *Id.* Once again,

---

[5] Class Plaintiffs have asserted that Exhibit A to Dr. Keiser's Second Report is "Confidential" under this Court's Confidentiality Order because it has not yet been published or publicly disclosed.

VNA has had no opportunity to question Dr. Keiser about these changes or to obtain advice from its expert about the legitimacy of these new opinions.

### 2.  The Late Disclosure Was Not Harmless

VNA would be greatly prejudiced if the Court were to decide the motion for class certification in reliance on Dr. Keiser's second report while depriving VNA of the ability to explore these and numerous other aspects of the new and modified opinions offered in that report.  Plaintiffs' violation of the expert disclosure deadline is thus far from "harmless."  *See Doe*, 2018 WL 500249, at *3 (late disclosure of second report was not harmless because "Defendants . . . moved for summary judgment with no knowledge of the second expert report, meaning that they were unable to account for or address the contents of that report in their primary brief").

That prejudice could be avoided only if the Court were to require Dr. Keiser to provide VNA with the data and materials on which he relied in developing his new opinions, allow VNA to reopen Dr. Keiser's deposition, authorize VNA's expert to submit a supplemental report addressing Dr. Keiser's new opinions, and then allow VNA to file a new motion to exclude Dr. Keiser's opinions and to file a supplemental brief in opposition to class certification that addresses those new opinions.  However, the delay and the additional costs that would be imposed on VNA as a result would themselves constitute prejudice and provide further reason to conclude that the untimely submission of Dr. Keiser's second report is not

"harmless." *See, e.g.*, *Musser*, 356 F.3d at 759 ("the additional costs . . . of preparing a new summary judgment motion and further delay . . . are not harmless").

## CONCLUSION

The Court should exclude the second report of Dr. David A. Keiser.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
One Constitution Wharf, Suite 310
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
Michael R. Williams (P79827)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com
williams@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: February 5, 2021

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*

Dated:  February 5, 2021