## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| | MAG. MONA K. MAJZOUB |

## PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

For the reasons stated in the attached Memorandum of support, and supporting declarations and exhibits, Plaintiffs, through their counsel, move the Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) to approve their proposal for attorneys' fees to be awarded to Movants Co-Lead Class Counsel and Co-Liaison Counsel, as well as Settlement Subclass Counsel and the law firms that have worked with and under the supervision of Co-Lead Class Counsel, including the Plaintiffs' Executive Committee ("Plaintiffs' Counsel"), as described in further detail in the accompanying Memorandum, and their request for reimbursement of expenses incurred by Plaintiffs' Counsel.[1]

---

[1] The Settling Defendants (defined in the attached Memorandum) have agreed to take no position with respect to this motion. *See* Notice Regarding Pls.' Mot. for Settlement Approval, Ex. A, Amended Settlement Agreement ¶ 11.2, Jan. 15, 2021, ECF No. 1394-2, PageID.54160.

Dated: March 8, 2021

Respectfully submitted,

/s/ Corey M. Stern
Corey M. Stern
**LEVY KONIGSBERG, LLP**
800 Third Avenue,
11th Floor
New York, NY 10022
(212) 605-6298 Telephone
cstern@levylaw.com

/s/ Hunter Shkolnik
Hunter Shkolnik
**NAPOLI SHKOLNIK PLLC**
270 Munoz Rivera Avenue,
Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088 Telephone
hunter@napolilaw.com

Joseph M. Sellers
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner
Alison S. Deich
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
jsellers@cohenmilstein.com
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**

/s/ Theodore J. Leopold
Theodore J. Leopold
Leslie M. Kroger
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

/s/ Michael L. Pitt
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER
BONANNI & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150
Detroit, MI 48226
(313) 800-4170 Telephone
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway

1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1901 Avenue of the Stars

New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A. LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

3

Suite 950
Los Angeles, CA 90067
(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI  48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI  48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
jeblake@mcalpinelawfirm.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &
ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| | MAG. MONA K. MAJZOUB |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN**
**AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................iv

CONCISE STATEMENT OF THE ISSUES PRESENTED ........................................ ix

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................... x

I.    INTRODUCTION............................................................................... 1

II.   PROCEDURAL HISTORY.................................................................. 4

III.  THE FEE PROPOSAL ....................................................................... 7

IV.   ARGUMENT .................................................................................... 9

      A.   The Court Should Approve Plaintiffs' Fee Proposal................................. 9

           1.   The Proposed Common Benefit Assessments Are Appropriate .............. 11

           2.   Co-Lead Class Counsel Should Be Awarded Fees from the Settlement Subclass Funds and the Programmatic Relief Sub-Qualified Settlement Fund ........................................................................................ 20

           3.   The Court Should Award Attorney Fees Using the Percentage-of-the-Fund Approach ................................................................................ 22

           4.   The Fee Proposal Is Appropriate When Compared to Other Percentage of the Fund Awards ........................................................................ 25

           5.   The Relevant Factors Justify the Fee Proposal......................................... 27

                i.    The Value of the Benefit Achieved......................................... 27

                ii.   Risks of Litigation and Contingent Nature of the Fee ...................... 28

                iii.  Public Policy Considerations ............................................ 29

                iv.   The Value of Services on an Hourly Basis........................................ 30

                v.    The Complexity of the Litigation ....................................... 35

vi.   The Quality of the Representation.......................................................... 36

B.   The Court Should Approve Plaintiffs' Counsel's Request for Reimbursement of Reasonable Litigation Expenses ................................. 37

V.   CONCLUSION ....................................................................................... 40

CERTIFICATE OF SERVICE.......................................................................... 44

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972,*
    549 F.2d 1006 (5th Cir. 1977) ................................................................. 13

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,*
    684 F. Supp. 953 (N.D. Ohio 1988) ....................................................... 33

*In re Auto. Parts Antitrust Litig.,*
    No. 12-md-02311, 2018 WL 7108072 (E.D. Mich. Nov. 5, 2018) ................. 32, 34

*Barnes v. City of Cincinnati,*
    401 F.3d 729 (6th Cir. 2005) ............................................................... x, 33

*In re Bayou Sorrel Class Action,*
    No. 6:04CV1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ....................... x, 20

*Blum v. Stenson,*
    465 U.S. 886 (1984) .............................................................................. 23

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) .......................................................................... x, 11

*Bowling v. Pfizer, Inc.,*
    102 F.3d 777 (6th Cir. 1996) ...................................................... x, 26, 28, 31

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
    946 F.2d 768 (11th Cir. 1991) ................................................................ 24

*In re Cardinal Health Inc. Sec. Litigs.,*
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ................................................ 32, 35

*In re Cardizem CD Antitrust Litig.,*
    218 F.R.D. 508 (E.D. Mich. 2003) ................................................. *passim*

*Cent. R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885) .............................................................................. 11

*Connectivity Sys. Inc. v. Nat'l City Bank,*
    No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..................... 33

*In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ........................................................... 24

*Doe 1-2 v. Deja Vu Servs., Inc.*,
    No. 2:16-cv-10877, 2017 WL 2629101 (E.D. Mich. June 19, 2017) ..................... 34

*In re DPL Inc., Sec. Litig.*,
    307 F. Supp. 2d 947 (S.D. Ohio 2004) ..................................................... 21

*Ford v. Fed.-Mogul Corp.*,
    No. 2:09-cv-14448, 2015 U.S. Dist. LEXIS 3399 (E.D. Mich. Jan. 7,
    2015) ............................................................................................. 32

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016) ............................................................. x, 32

*In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*,
    No. MDL 05-1708, 2008 WL 682174 (D. Minn. Mar. 7, 2008)
    *amended in part*, No. MDL 05-1708 (DWF/AJB), 2008 WL 3896006
    (D. Minn. Aug. 21, 2008) ............................................................. x, 12, 21

*Hadix v. Johnson*,
    65 F.3d 532 (6th Cir. 1995) ............................................................. x, 32

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) .......................................................................... 28

*Internal Imp. Fund Trs. v. Greenough*,
    105 U.S. 527 (1881) .......................................................................... 11

*Kogan v. AIMCO Fox Chase, L.P.*,
    193 F.R.D. 496 (E.D. Mich. 2000) ......................................................... 35

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ..................................................... 37

*Martin v. Trott Law, P.C.*,
    No. 15-12838, 2018 WL 4679626 (E.D. Mich. Sept. 28, 2018) ........................ 34

*McHugh v. Olympia Entm't, Inc.*,
    37 F. App'x 730 (6th Cir. 2002) ........................................................... 32

*In re MGM Grand Hotel Fire Litig.*,
    660 F. Supp. 522 (D. Nev. 1987) ................................................... 13, 17, 27

*Missouri v. Jenkins ex rel. Agyei*,
   491 U.S. 274 (1989) ..................................................................... x, 26, 33

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
   No. 2:12-MD-02323-AB, 2018 WL 1658808 (E.D. Pa. Apr. 5, 2018) ........... *passim*

*In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel*
   *Fire Litig.*, 982 F.2d at 610 ............................................................. 12, 18

*In re NuvaRing Prod. Liab. Litig.*,
   No. 4:08 MDL 1964 RWS, 2014 WL 7271959 (E.D. Mo. Dec. 18,
   2014).................................................................................. x, 16, 21, 39

*N.Y. State Tchrs.' Ret. Sys v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D.
   Mich. 2016) *aff'd*, *Marro v. N.Y. Tchrs.' Ret. Sys.*, No. 16-1821, 2017
   WL 6398014 (6th Cir. Nov. 27, 2017)................................... 12, 21, 24, 35

*In re Oil Spill by Oil Rig "Deepwater Horizon"*,
   No. MDL 2179, 2012 WL 2236737 (E.D. La. June 15, 2012) .............................. 18

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
   2000 WL 1622741 (E.D. Pa. Oct. 23, 2020)............................................ 39

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) .......... x, 24, 28

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542 (2010) ........................................................................ x, 33

*Phipps Grp. v. Downing (In re Genetically Modified Rice Litig.)*,
   764 F.3d 864 (8th Cir. 2014).................................................................. 39

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974)............................................................. x, 31

*Rawlings v. Prudential-Bache Props., Inc.*,
   9 F.3d 513 (6th Cir. 1993)............................................................... *passim*

*Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016)..................................................... *passim*

*Smiley v. Sincoff*,
   958 F.2d 498 (2d Cir. 1992) ................................................................... 13

*Smillie v. Park Chem. Co.*,
   710 F.2d 271 (6th Cir. 1983) ....................................................... 28, 29, 31

*Sprague v. Ticonic Nat'l Bank*,
   307 U.S. 161 (1939) (Frankfurter, J.) ................................................ 11, 12

*Stanley v. U.S. Steel Co.*,
   No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ......................... 24, 25

*In re Superior Beverage/Glass Container Consol. Pretrial*,
   133 F.R.D. 119 (N.D. Ill. 1990) ............................................................. 35

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .................................................................. 39

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989) .................................................................. 39

*In re Vioxx Prods. Liab. Litig.*,
   650 F. Supp. 2d 549 ............................................................................ 19

*In re Vioxx Prods. Liab. Litig.*,
   760 F. Supp. 2d 640 (E.D. La. 2010) ....................................................... 13

*Walitalo v. Iacocca*,
   968 F.2d 741 (8th Cir. 1992) ............................................................. 13, 19

*In re World Trade Ctr. Disaster Site Litig.*,
   754 F.3d 114 (2d Cir. 2014) .................................................................. 18

*In re Zyprexa Prods. Liab. Litig.*,
   424 F. Supp. 2d 488 (E.D.N.Y. 2006) .................................................... 19, 27

**RULES**

Mich. Ct. R. 8.121 ............................................................................ 7, 27

**OTHER AUTHORITIES**

David F. Herr, *Annotated Manual for Complex Litigation* § 14.11 (4th ed.
   2020) ............................................................................................ 13

vii

David F. Herr, *Annotated Manual for Complex Litigation* § 22.927 (4th ed. 2020) ............................................................................................... 19

Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* (3d ed. 2015) ........................................................................ 13

5 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2020) ........................... 32

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.    Should the Court approve Plaintiffs' proposed structure for attorneys' fees to be awarded to Plaintiffs' Counsel?

2.    Should the Court approve Plaintiffs' motion for a common benefit assessment from the Qualified Settlement Fund?

3.    Should the Court approve Plaintiffs' motion for reimbursement of expenses incurred by Plaintiffs' Counsel?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Fed. R. Civ. P. 23(h)

- Fed. R. Civ. P. 54(d)

- Mich. Ct. R. 8.121

- *Barnes v. City of Cincinnati*, 401 F.3d 729 (6th Cir. 2005)

- *In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006)

- *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)

- *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

- *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 682174 (D. Minn. Mar. 7, 2008)

- *Hadix v. Johnson*, 65 F.3d 532 (6th Cir. 1995)

- *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274 (1989)

- *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808 (E.D. Pa. Apr. 5, 2018)

- *In re NuvaRing Prod. Liab. Litig.*, No. 4:08 MDL 1964 RWS, 2014 WL 7271959 (E.D. Mo. Dec. 18, 2014)

- *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)

- *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010)

- *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)

- *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513 (6th Cir. 1993)

- David F. Herr, *Annotated Manual for Complex Litigation* § 14.11 (4th ed. 2020)

# I.   INTRODUCTION

Working together, Plaintiffs' Counsel[2] have achieved a landmark, $641.25 million partial settlement in these cases that the Court has rightly called "complex" and "intensely litigated."[3] This substantial recovery was secured only through the focused and diligent advocacy and considerable investment of time, expenses, and risk-taking of Plaintiffs' Counsel, led by Co-Liaison Counsel, Co-Lead Class Counsel, the Plaintiffs' Executive Committee for the Proposed Class ("Plaintiffs' Executive Committee"), and Subclass Settlement Counsel.

Plaintiffs' Counsel have worked on a contingent basis for more than five years now, without compensation of any kind, to achieve this remarkable result. Moreover, Plaintiffs' Counsel have invested and will continue to invest time and resources into implementing this Settlement (while also continuing to litigate against the Non-Settling Defendants[4]). To compensate Plaintiffs' Counsel for their services and the risk they

---

[2] "Plaintiffs' Counsel" refers to Movants Co-Lead Class Counsel and Co-Liaison Counsel, as well as Settlement Subclass Counsel and the law firms that have worked with and under the supervision of Co-Lead Class Counsel, including the Plaintiffs' Executive Committee.

[3] Op. & Order Granting Pls.' Mot. to Establish Settlement Claims Procedures & Allocation & for Preliminary Approval of Class Settlement Components & Granting Pls.' Mot. for an Order Adopting the Proposed Mot. for Approval of Wrongful Death Settlement (the "Prelim. Approval Order") at 13, Jan. 21, 2021, ECF No. 1399, PageID.54410.

[4] "Non-Settling Defendants" refers to Lockwood, Andrews & Newman, Inc., Lockwood, Andrews & Newman, P.C., Leo A. Daly Company, Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC.

1

undertook in prosecuting these cases, Plaintiffs request that the Court approve their proposed framework for attorneys' fees to be awarded to Plaintiffs' Counsel (the "Fee Proposal" or "Proposal").

The Fee Proposal is designed to provide reasonable and fair compensation to Plaintiffs' Counsel and to ensure equitable treatment for all who make claims under the Settlement. It also provides distinct fees for work performed by both Co-Liaison Counsel and Class Counsel for the benefit of all Plaintiffs ("common benefit work"), for Class Counsel's work on behalf of the Settlement Subclasses, and for non–common benefit work performed by counsel individually retained by individual Claimants. A significant amount of the work performed by Plaintiffs' Counsel has benefitted all Plaintiffs in this litigation. Long-standing precedent recognizes that in common fund cases, counsel are entitled to compensation for such common benefit work.

As compensation for common benefit work performed by Plaintiffs' Counsel, the Proposal includes a global Common Benefit Assessment ("CBA") of 6.33% of the Qualified Settlement Fund (the "Fund"), to be divided equally between Co-Lead Class Counsel and Co-Liaison Counsel and paid beginning on final approval of the Settlement and thereafter as the Fund is further funded. Beyond that global CBA, the Proposal provides that Co-Lead Class Counsel will be compensated for their work on behalf of the Settlement Subclasses, in the amount of 27% of the value of all resolved Subclass claims, and 27% of the value of the Programmatic Relief Sub-Qualified Settlement

Fund.

Contingency fees for individually retained counsel ("IRC") are capped at 27%. The Proposal also caps the contingency fee for IRC at a lower 10% for <u>any contingency fee contract entered on or after July 16, 2020</u> and assesses an additional 17% CBA of the gross award to such Claimant who retained counsel, or as to Minors assisted by counsel, on or after July 16, 2020. Contingency fees for IRC on such claims are correspondingly capped such that no claim is subject to total fees greater than 27% after the 6.33% global CBA. Other than the global 6.33% CBA, which serves to provide some upfront compensation to counsel who have led these cases for the benefit of all Plaintiffs, all fees are to be distributed only as and to the extent that claims are paid out.

In this way, consistent with the law and equitable principles, the Proposal has all claims contribute an equal *pro rata* share to Plaintiffs' Counsel's fees, while also contributing to common benefit compensation in proportion to Claimants' reliance on common benefit work. The structure of the Proposal is therefore sound. Moreover, the amounts requested under the Proposal are reasonable under the factors courts weigh in determining fee awards. The percentage amounts contemplated by the Proposal are in line with the awards approved in similar complex litigation. Plaintiffs' Counsel's efforts, already commended by the Court, have produced a sizable recovery for the Plaintiffs, with the potential for additional recovery from the Non-Settling Defendants. Plaintiffs' Counsel also took on considerable risk in litigating these complex cases on a contingent

basis. Plaintiffs' Counsel have invested 182,571 hours of work into this litigation, representing more than $84 million of lodestar at current rates, and have advanced more than $7 million in expenses. Plaintiffs' Counsel could have received no reimbursement whatsoever had the cases failed. Finally, public policy supports incentivizing counsel to take on important cases like these without upfront or certain compensation, as they otherwise might not be undertaken.

Plaintiffs' Counsel also request reimbursement from the Fund for their expenses of $7,158,987.33 incurred to date in prosecuting this litigation, which have also provided a common benefit to all Plaintiffs.

## II.    PROCEDURAL HISTORY

Plaintiffs filed the first complaints related to this litigation in November 2015.[5] After over a year of litigation and appeals, the Flint Water Cases were consolidated in this Court on July 27, 2017.[6] The Court appointed Theodore Leopold and Michael Pitt as Interim Co-Lead Class Counsel and Hunter Shkolnik and Corey Stern as Co-Liaison Counsel for the Individual Plaintiffs.[7] In accordance with their Court-appointed roles, Class Counsel and Co-Liaison Counsel, alongside a Court-appointed Plaintiffs'

---

[5] Compl., *Mays v. Snyder*, No. 5:15-cv-14002 (E.D. Mich. Nov. 13, 2015), ECF No. 1.

[6] Order Granting in Part *Waid* Mot. for Consolidation & Appointment of Interim Co-Lead Class Counsel & Appointment of Liaison Counsel, July 27, 2017, ECF No. 173.

[7] *Id.* The Court renewed these appointments on December 7, 2018, December 20, 2019, and November 2, 2020. ECF Nos. 696, 1021, 1306.

Executive Committee, have propelled this litigation forward, including through motions to dismiss, lengthy discovery, and several appeals. Discovery, which is ongoing, has been substantial, including millions of pages of document production and review, the exchange of substantive written interrogatories, more than eighty depositions, and extensive expert analysis and discovery. In addition, since January 2018, Class and Co-Liaison Counsel, with the help of experienced Court-appointed mediators and a Court-appointed Special Master, have spearheaded settlement negotiations with the Defendants. On August 26, 2019, at the request of Class Counsel, the Court also appointed experienced Settlement Subclass Counsel ("SSC") to negotiate allocation. Order Granting Class Pls.' Renewed Mot. in Part, ECF No. 929.

After nearly four years of litigation, discovery, appeals, and settlement negotiations, Plaintiffs and the Settling Defendants[8] executed the Amended Settlement

---

[8] "Settling Defendants" refers to The State of Michigan, Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy), Michigan Department of Health and Human Services, Michigan Department of Treasury, former Governor Richard D. Snyder, Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Liane Shekter Smith, Daniel Wyant, Stephen Busch, Kevin Clinton, Patrick Cook, Linda Dykema, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Dennis Muchmore, Nancy Peeler, Robert Scott, Adam Rosenthal, Andy Dillon ("State Defendants"); the City of Flint, Darnell Earley, Howard Croft, Michael Glasgow, Gerald Ambrose, Edward Kurtz, Michael Brown, Dayne Walling, Daugherty Johnson ("City Defendants"); McLaren Health Care Corporation, McLaren Regional Medical Center, McLaren Flint Hospital, ("McLaren Defendants"); and Rowe Professional Services Company.

Agreement (the "Settlement" or "Settlement Agreement") on November 16, 2020.[9] On January 21, 2021 the Court approved the Settlement's claims procedures and allocation, granted preliminary approval of the Class Settlement components, and approved the wrongful death settlement. Approval Order, ECF No. 1399. As the Court noted in its Order, *id.* at 14, PageID.54411, the Settlement provides that "Counsel for Individual Plaintiffs and Class Members shall be reimbursed and paid solely out of the FWC Qualified Settlement Fund for all expenses and fees, including but not limited to: attorneys' fees; past, current, or future litigation and administration expenses (including, but not limited to, experts', consultants', and guardians ad litem fees and expenses); and the costs of providing the Settlement Class Notice and Individual Notice." Settlement Agreement ¶ 11.1, PageID.54159. The Court directed counsel to make any motion for attorneys' fees and expenses on or before February 26, 2021. Approval Order at 70, PageID.54467.

The first bellwether trials of individual cases are scheduled to commence in or around October 2021. Co-Lead Class Counsel moved for class certification on June 30, 2020; that briefing is ongoing. Resolution of the Motion for Class Certification, trial of

---

[9] Decl. of Theodore J. Leopold in Supp. of Pls.' Mot. (the "Preliminary Approval Motion") to Establish Settlement Claims Procedures & Allocation & for Prelim. Approval of Class Settlement Components, Ex. A, Amended Settlement Agreement, Nov. 18, 2020, ECF No. 1319-1. An amended agreement was filed on January 15, 2021. Notice Regarding Pls.' Mot. for Settlement Approval, Ex. A, Amended Settlement Agreement, ECF No. 1394-2.

the Individual Plaintiffs and any potential Class claims, and related appeals could require many years to fully resolve.

## III.   THE FEE PROPOSAL

Plaintiffs' Fee Proposal is designed to provide reasonable and equitable compensation to Plaintiffs' Counsel for the work they have performed, the risk and expenses they have shouldered in prosecuting these cases, and future work they will do in implementing the Settlement. The Proposal entails common benefit assessments for work performed for the benefit of all Plaintiffs, separate compensation for Co-Lead Class Counsel for their work on behalf of the Settlement Subclasses, and separate fees for non–common benefit work performed by individually retained counsel. All claims contribute an equal *pro rata* share to Plaintiffs' Counsel's fees, in the form of an upfront, global CBA of 6.33%, and additional fees are capped at 27% (less than the one-third maximum amount permitted under Michigan law, *see* Mich. Ct. R. 8.121). In other words, every Claimant who recovers from the Fund will effectively pay these same percentage attorneys' fees, ensuring equal treatment of all Claimants. At the same time, all Claimants contribute to common benefit compensation in proportion to their reliance on common benefit work. Common benefit assessments are to be distributed to Plaintiffs' Counsel in proportion to the firms' contributions to common benefit work. The global CBA is to be paid beginning on final approval of the Settlement, whereas all other fees are paid only as and to the extent claims are paid out.

The Proposal achieves these goals and this structure through the following

specific components:

- To provide some upfront compensation to Plaintiffs' Counsel who have contributed common benefit work thus far, the Proposal includes a CBA of 6.33% of the Fund (the "global CBA"). This amounts to $40,591,125.00 of the $641.25 million Fund. This assessment is to be divided between Co-Lead Class Counsel and Co-Liaison Counsel and paid beginning on final approval of the Settlement and thereafter as the Fund is further funded pursuant to the terms of the Settlement.

- Co-Lead Class Counsel will receive an assessment of 27% of the gross value of (a) claims that are resolved through the Adult Exposure, Property Damage, and Business Economic Loss Subclasses (b) the Programmatic Relief Sub-Qualified Settlement Fund, plus (c) any claims involving a Minor who entered into a retainer agreement with Co-Lead Class Counsel and/or the Plaintiffs' Executive Committee prior to July 16, 2020. In effect, beyond their share of the 6.33% CBA, Co-Lead Class Counsel's fees are also capped at 27%. These assessments compensate Co-Lead Class Counsel for the results they have achieved and risk and expense they have borne specifically on behalf of the Settlement Class and all Individual Plaintiffs who retained them before July 16, 2020. Co-Lead Class Counsel will further distribute portions of the 27% assessments to the firms comprising the Plaintiffs' Executive Committee, SSC, and other counsel who have worked on behalf of the Settlement Subclasses at Co-Lead Class Counsel's direction to compensate them for their contributions to these cases.

- Contingency fee retainer agreements for individually represented Claimants are capped at 27%. In other words, Individual Plaintiffs will pay a contingent fee of no more than 27% of any Monetary Award they receive. Contingency fee contracts entered into on or after July 16, 2020 are limited to a 10% fee, to reflect the reduced risk assumed by these counsel.

- After July 16, 2020, any attorney who assists and advocates for a Minor in submitting a claim, whether retained or unretained, will receive a fee of 10%.

- An additional CBA of 17% will apply to the gross award received by any Claimant who retained counsel on or after July 16, 2020, or by any Minor who was assisted by counsel on or after July 16, 2020. The 17% assessment applying to these claims reflects the fact that, under the Proposal, any contingency fee contracts entered into on or after July 16, 2020 are capped at 10%, and that any attorney who assists and advocates for a Minor in submitting

8

a claim, whether retained or unretained, is entitled to the same 10% fee. If an unrepresented Minor does not retain and does not receive any assistance from an attorney, but submits a claim and receives an award, 27% of the gross value of the award will be assessed as CBA to ensure parity with other retained individuals and Settlement Class Members and reflect those Claimants' greater reliance on common benefit work.

- All CBA sums will be divided equally between Co-Lead Class Counsel and Co-Liaison Counsel, and will be further distributed among firms (including the Plaintiffs' Executive Committee, SSC, and other counsel who have worked on behalf of the Settlement Subclasses at Co-Lead Class Counsel's direction) contributing common benefit work under the supervision of Co-Lead Class Counsel and Co-Liaison Counsel for their respective common benefit contributions. Consistent with the Case Management Order Regarding Time and Expense Procedures (the "Time and Expense CMO"), ECF No. 507, only properly designated common benefit time approved by Co-Lead Class Counsel and Co-Liaison Counsel will be entitled to compensation. CBA sums will be divided between Co-Lead Class Counsel and Co-Liaison Counsel as follows:

  o equally (50/50) for the 6.33% Fund assessment;

  o equally (50/50) for the 17% of the gross award for claims awarded to Minors who retained counsel or were assisted by counsel on or after July 16, 2020;

  o 75% to Co-Lead Class Counsel and 25% to Co-Liaison Counsel for the 17% of the gross award for any Adult, Property Damage, Business Economic, or Programmatic Relief awards to Claimants retained by counsel on or after July 16, 2020; and

  o equally (50/50) for the 27% of the gross award received by unrepresented Minors who do not retain and do not receive any assistance from an attorney.

## IV.   ARGUMENT

### A. The Court Should Approve Plaintiffs' Fee Proposal

Plaintiffs' Fee Proposal is fair, reasonable, and consistent with the law. It is designed to provide reasonable compensation to Plaintiffs' Counsel for common benefit

work, work benefitting the Settlement Subclasses, and non–common benefit work by individually retained counsel. Long-standing precedent recognizes that in common fund cases counsel are entitled to compensation for common benefit work. The Proposal is appropriately and fairly structured so that all Claimants contribute an equal *pro rata* share to Plaintiffs' Counsel's fees while funding common benefit awards in proportion to reliance on common benefit work. The Proposal allows Plaintiffs' Counsel who have taken the lead in litigating these cases and settling against this subset of Defendants to receive some compensation for their common benefit work upon final approval of the Settlement and capitalization of the Fund, while deferring all other attorneys' fees until claims are actually paid out.

Moreover, the amounts requested under the Proposal are reasonable under the factors courts weigh in determining fee awards. The percentage amounts contemplated by the Proposal are consistent with the awards approved in similar complex litigation. Plaintiffs' Counsel's efforts have produced an excellent result for victims of the Flint Water Crisis in the form of the $641.25 million Settlement, with the potential for additional recovery from the Non-Settling Defendants. Plaintiffs' Counsel also took on considerable risk in litigating these complex cases on a contingent basis. Plaintiffs' Counsel have invested 182,571 hours of work into this litigation, representing more than $84 million of lodestar at current rates, and have advanced more than $7 million in expenses, without any compensation to date. Finally, the Proposal is supported by the

10

public policy of encouraging counsel to take on important cases like these on a contingent basis, which otherwise might not be undertaken.

### 1. The Proposed Common Benefit Assessments Are Appropriate

Plaintiffs' Fee Proposal contemplates distinct fees for common benefit work, work benefitting the Settlement Subclasses, and work only benefitting an individual client's claims. The common benefit work includes work performed by Co-Lead Class Counsel and Co-Liaison Counsel.

It is well established that counsel who perform common benefit work resulting in recovery of a common fund are entitled to compensation for those services from the fund. As the Supreme Court has explained in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980):

> [T]his Court has recognized consistently that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. . . . The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. Jurisdiction over the fund involved in the litigation allows a court to prevent . . . inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.

The common benefit doctrine was established by the Supreme Court over 125 years ago and is merely an application of a district court's "original authority . . . to do equity in a particular situation."[10] The rationale for applying the common benefit doctrine in this

_____

[10] *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166 (1939) (Frankfurter, J.); *see*

11

type of case is compelling:

> "[W]hen a court consolidates a large number of cases, stony adherence to the American rule [in which each litigant pays his or her own attorneys' fees] invites a serious free-rider problem. . . . If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals." . . . Therefore, a court supervising mass tort litigation is allowed to "intervene to prevent or minimize an incipient free-rider problem" and may use "measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs."[11]

Consistent with this precedent, "[t]he Sixth Circuit has held that in common fund cases, 'a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved.'"[12] This rule applies to class actions but also to non-class actions in which counsel secure a benefit shared by persons beyond counsel's immediate clients.[13] The principle that counsel are compensated for common benefit

---

*also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 123 (1885); *Internal Imp. Fund Trs. v. Greenough*, 105 U.S. 527, 532-33 (1881).

[11] *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL 05-1708 (DWF/AJB), 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008) (quoting *In re Nineteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992), *amended in part*, No. MDL 05-1708 (DWF/AJB), 2008 WL 3896006 (D. Minn. Aug. 21, 2008).

[12] *N.Y. State Tchrs.' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 242 (E.D. Mich. 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)), *aff'd*, *Marro v. N.Y. Tchrs.' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017).

[13] *See, e.g.*, *Sprague*, 307 U.S. at 166-67 ("Whether one professes to sue representatively or formally makes a fund available for others may, of course, be a

services is so widely accepted that courts handling this type of complex litigation often

approve common benefit assessments even before any recovery has been achieved.[14]

---

relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation — [including] the absence of an avowed class suit . . . — hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation."); *Walitalo v. Iacocca*, 968 F.2d 741, 747 (8th Cir. 1992) ("It is well established that courts can impose liability for court-appointed counsel's fees on all plaintiffs benefitting from their services."); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 647 (E.D. La. 2010) ("[T]he common fund doctrine is not limited solely to class actions. . . . As class actions morph into multidistrict litigation, . . . the common benefit concept has migrated into the latter area. The theoretical bases for the application of this concept to MDLs are the same as for class actions, namely equity and her blood brother, quantum meruit."); Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation* at 68 (3d ed. 2015) ("[T]he common fund doctrine is not limited to class actions . . . ."); David F. Herr, *Annotated Manual for Complex Litigation* § 14.11 (4th ed. 2020) ("If attorneys' efforts create or preserve a fund or benefit for others in addition to their own clients, the court is empowered to award fees from the fund. . . . The award may be made from recoveries obtained by settlement or by trial. Common-fund cases are predominantly, but not exclusively, class actions . . . . A variant on the traditional common-fund case occurs frequently in mass tort litigation—in both class actions and large consolidations—where a separate fund to pay attorney fees is created as a part of a settlement. The court must distribute the fund among the various plaintiffs' attorneys, which may include class counsel, court-designated lead and liaison counsel, and individual plaintiff's counsel.").

[14] *See, e.g.*, *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1011-16 (5th Cir. 1977) (observing that "[i]f lead counsel are to be an effective tool the court must have means at its disposal to order appropriate compensation for them" and where attorneys perform "duties beyond their responsibilities to their own clients," an assessment of prospective recoveries is "a necessary incident to achievement of the goals of multidistrict litigation"); *Smiley v. Sincoff*, 958 F.2d 498 (2d Cir. 1992) (court had authority to assess fees on all counsel in consolidated cases for work performed by committee appointed to coordinate all aspects of litigation); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 525-29 (D. Nev. 1987).

Here, by consolidating these cases and appointing Interim Co-Lead Class Counsel and its Executive Committee, Interim Co-Liaison Counsel, and Settlement Subclass Counsel, the Court directed these firms to take leadership roles in this litigation on behalf of all Plaintiffs.[15] For example, the Court ordered Co-Lead Class Counsel and Co-Liaison Counsel to "coordinate" and "conduct" all discovery "on behalf of and for the benefit of the putative class or individual actions," to "act as spokesperson for all plaintiffs" at all hearings, to negotiate with Defendants, to have exclusive authority to pursue settlement with the Defendants, to keep other Plaintiffs' counsel advised of the progress of the litigation.[16]

Moreover, the Time and Expense CMO, which sets forth certain standards and procedures for counsel seeking a common benefit award, reflects that Plaintiffs, their counsel, and the Court contemplated that common benefit work by Plaintiffs' Counsel could be entitled to compensation in the form of a common benefit award.[17] The Order

---

[15] *See, e.g.*, Order, July 27, 2017, ECF No. 173 (consolidating cases and appointing Interim Co-Lead Class Counsel and Co-Liaison Counsel); Order Delineating the Duties of Interim Co-Lead Class Counsel & Co-Liaison Counsel for the Individual Actions & Creating a Pls.' Executive Committee for the Proposed Class ("Order Delineating Duties"), Oct. 26, 2017, ECF No. 234.

[16] Order Delineating Duties ¶ 1, PageID.8722-8726.

[17] ECF No. 507. Among other things, the order stated that the "Court reserves decision on whether certain work performed by various plaintiffs' counsel in the Flint Water Cases may inure to the common benefit of the litigation as a whole, or to specific portions of the litigation. The Court further reserves judgment as to whether any time recorded, or expenses incurred, shall be recognized as common benefit time or expense and will address whether to assess a surcharge on any monetary settlements in Flint

specifically assigned to Co-Lead Class Counsel and Co-Liaison Counsel responsibility for coordinating and approving common benefit work by other Plaintiffs' Counsel.[18] Under the order, "[o]nly time spent on matters common to all plaintiffs in the Flint Water Cases ("Common Benefit Time") will be considered in determining fees. No time spent on developing or processing any case for an individual client/Claimant will be considered except as approved by Co-Lead Class Counsel or Co-Liaison Counsel as work that serves a common benefit."[19]

In their leadership roles, Plaintiffs' Counsel have performed a tremendous amount of work, and have taken on sizeable expenses and risk, to litigate these consolidated cases and to achieve this Settlement, which benefits all Plaintiffs. As detailed in the declarations submitted by Plaintiffs' Counsel in support of this Motion, and as described more fully below, *infra* § IV.A.4.iv, Plaintiffs' Counsel have performed a total of 182,571 hours of common benefit work through February 15, 2021, representing a lodestar of more than $84 million. This work includes:

- Investigating, researching, and drafting multiple consolidated complaints;
- Researching and drafting briefing for the numerous dispositive motions made by Defendants, including motions to dismiss and related motions for reconsideration;
- Formulation of strategy and drafting of briefing relating to the multiple appeals

---

Water cases, or any portion of such cases, at a future point in time." *Id.* ¶ 34, PageID.15842.

[18] *Id.* ¶¶ 5-6, 12-13, PageID.15827, 15829-15830.

[19] *Id.* ¶ 12, PageID.15829.

that have taken place in the litigation, including concerning Defendants' qualified immunity defenses;

- Extensive discovery work, including drafting discovery requests and responses and briefing for discovery-related motions and review of millions of pages of documents produced by Defendants and third parties, preparing for and participating in Court conferences regarding discovery disputes, taking and defending more than 80 depositions, conducting extensive expert consultant and witness analysis and discovery; and

- Extensive, multi-year mediation and settlement negotiations involving dozens of in-person meetings and multiple one-on-one sessions with the Mediators and/or Special Master.

In addition, Plaintiffs' Counsel will continue to perform substantial common benefit work in administering the Settlement.

Plaintiffs' Counsel who performed this work and bore the associated risk are therefore entitled to reasonable compensation for these services from the common settlement fund they successfully negotiated.[20] The Proposal accomplishes that through

---

[20] *See, e.g.*, *In re NuvaRing Prods. Liab. Litig.*, No. 4:08 MDL 1964 RWS, 2014 WL 7271959, at *1 (E.D. Mo. Dec. 18, 2014) ("[U]ntil a Master Settlement Agreement was reached . . . a number of attorneys performed an extraordinary amount of work and advanced substantial expenses which benefited all plaintiffs and claimants who asserted NuvaRing related injuries against the defendants. These 'common benefit attorneys' should and must be compensated for their efforts."); *In re MGM Grand Hotel Fire*, 660 F. Supp. at 528 ("For the contingency factor the court must focus on the [Plaintiffs' Legal Committee]'s legal and financial risk in undertaking this case. The PLC risked nonpayment if the case was lost . . . . If the case is a difficult one or is strongly opposed by defense counsel, the risks are obviously higher, especially when opposing counsel are extremely able as was the case here. Also, if, as in this case, the litigation is lengthy and complex, counsel suffers the risk of nonpayment over a longer period of time. The risk, thus, includes the scope of the PLC's professional burden as viewed at the outset, the number of hours expended without guarantee of payment, and the delay in receipt of

reasonable CBAs that are fairly allocated according to the extent of a particular Claimant's reliance on common benefit work.

In recognition of the fact that all Plaintiffs have substantially benefitted from common benefit work by Plaintiffs' Counsel, all Plaintiffs effectively contribute at least some to the CBA award, in the form of a 6.33% assessment. In addition, Claimants outside the Settlement Subclasses who retained counsel, or Minors who are assisted by counsel, on or after July 16, 2020 are assessed an additional CBA in the amount of 17% of their gross award (while their individual counsel's fees, or in the case of Co-Lead Class Counsel assisting Minors filing claims, are capped at 10% of the gross award). This is in recognition of their increased reliance on common benefit work—and the correspondingly reduced risk assumed by their IRC, who were retained relatively late— compared to similarly situated Plaintiffs who retained IRC before that.

Finally, Minors who receive no assistance from counsel are assessed a CBA in the amount of 27% of their gross award, reflecting that no IRC contributed to the benefit they received, which is entirely common benefit. (Meanwhile, Claimants in the Settlement Subclasses are assessed a fee awarded to Co-Lead Class Counsel, a type of fee traditionally characterized as a "common fund" award rather than a CBA. *See infra*

_____

payment.").

§ IV.A.2.) Through this structure, all Plaintiffs pay the same *pro rata* share in total attorneys' fees, while the attorneys' fees are distributed equitably among counsel in proportion to their contributions to litigating these cases.[21]

In conjunction with awarding the CBAs, the Court also has the authority to cap the fees of individually retained attorneys as contemplated by the Proposal. "In MDLs and class actions, 'district courts have routinely capped attorneys' fees . . . .'"[22] Capping

_____

[21] Courts recognize that assessing the distribution of common benefit in complex mass tort litigation involves some degree of approximation. *See, e.g.*, *In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d at 610 ("[W]hile the extent to which each individual plaintiff and each IRPA benefitted from the PSC's efforts cannot be quantified with mathematical precision, it is possible to study the PSC's contribution to the overall success of the litigation and approximate the incremental benefits with some accuracy.").

[22] *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808, at *2 (E.D. Pa. Apr. 5, 2018) (quoting *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 126 (2d Cir. 2014)); *see also In re Oil Spill by Oil Rig "Deepwater Horizon"*, No. MDL 2179, 2012 WL 2236737, at *1-3 (E.D. La. June 15, 2012) (order setting cap on individual attorneys' fees in MDL involving class action settlements); *In re Vioxx Prods. Liab. Litig.*, 650 F. Supp. 2d 549, 563-65 (capping IRC contingent fees, which were also to fund CBAs, at 32% and observing, "To ensure a consistent and fair result for all plaintiffs, the fee agreements must be reexamined in light of the economies of scale and other efficiencies afforded by consolidation"); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491, 496-97 (E.D.N.Y. 2006) (generally capping contingent fees at 35%, with common benefit fees for plaintiffs' steering committee to be assessed separately against common fund); David F. Herr, *Annotated Manual for Complex Litigation* § 22.927 (4th ed. 2020) ("The judge can protect members of the class from excessive fees by limiting the amount of contingent fees awarded for pursuing individual claims in a common-fund settlement. If there is a combination of individual settlements and a class-wide settlement, the judge sometimes orders individual plaintiffs' lawyers to pay a certain percentage of the fees they received into a common fund to contribute to the fees of the class counsel, whose work in discovery and trial preparation contributed to the settlement of the individual cases as

the fees of IRC is appropriate where, as here, they have benefitted from common benefit work performed by various Plaintiffs' Counsel, and to ensure that no Plaintiff pays twice for the same work and results.[23]

Finally, the amounts of the CBAs contemplated by the Proposal are reasonable and justified. As noted above, Co-Lead counsel in these consolidated cases have taken on the majority of the expense, risk, and burden in litigating these cases to the benefit of all Plaintiffs. Their common benefit lodestar to date measures more than $84 million. It is therefore appropriate to award them the 6.33% global CBA, amounting to $40,591,125.00,[24] while capping all other attorneys' fees (including those of IRC) at 27%.

It is also appropriate to award Co-Lead Class Counsel and Co-Liaison Counsel the further CBAs applying to the claims of those who retained IRC only after July 16, 2020 and those who have relied entirely on common benefit. Plaintiffs with IRC retained

_____

well.").

[23] *See, e.g.*, *Concussion Inj. Litig.*, 2018 WL 1658808, at *2; *In re Zyprexa*, 424 F. Supp. 2d at 493 ("[T]hese firms all benefitted from the effectiveness of coordinated discovery carried out in conjunction with the plaintiffs' steering committee and from other economies of scale, suggesting a need for reconsideration of fee arrangements that may have been fair when the individual litigations were commenced."); *Walitalo*, 968 F.2d at 749 (acknowledging that class counsel reduced the amount of work required of individual counsel and directing "the district court to review the plaintiffs' fee arrangements with their individual counsel for reasonableness in light of their decreased responsibilities and the fee award to [class] counsel").

[24] The 6.33% global CBA leaves $600,658,875.00 in the Fund for distribution.

after that date pay a CBA of 17% of their gross award, leaving 10% of their gross award for their IRC. Thus, IRC for these Claimants will still receive 37% (10% divided by 27%) of the attorneys' fees applicable to these Claimants' awards (setting aside the 6.33% global CBA). That is eminently fair compensation for IRC who were retained relatively late and who have thereby assumed comparatively little risk. This CBA structure is consistent with what courts have approved in comparable mass tort cases, including those involving both class and individual actions, where CBAs have commonly been assessed as a percentage of the recovery with capped fees for IRC.[25]

*See also infra* § IV.A.4 (discussing appropriateness of overall fee amounts).

Accordingly, the CBAs provided by the Proposal are reasonable and appropriate.

## 2. Co-Lead Class Counsel Should Be Awarded Fees from the Settlement Subclass Funds and the Programmatic Relief Sub-Qualified Settlement Fund

The Class Settlement that is part of the broader Settlement here is a classic

---

[25] *See, e.g., In re Bayou Sorrel Class Action*, No. 6:04CV1101, 2006 WL 3230771, at *6 (W.D. La. Oct. 31, 2006) (setting fees at "36% for *all* plaintiff's attorneys, 50% of which is to be distributed to the PSC for the common benefit work and 50% to the various private attorneys representing individual plaintiffs," yielding 18% IRC rate); *In re Guidant*, 2008 WL 3896006, at *8-9 (adjusting overall fee cap to 37.18% and adopting complex formula effectively setting IRC fees at about 22.18% of gross recovery, with 15% of gross recovery allocated toward common benefit fees and costs); *Concussion Inj. Litig.*, 2018 WL 1658808, at *3 (awarding Class Counsel 11% and IRC 22% of recovery); *In re NuvaRing*, 2014 WL 7271959, at *4 (awarding 11% of settlement fund to common benefit attorneys for attorneys' fees and 4.5% of fund for common benefit expenses).

example of a common fund case, "where named Plaintiffs have created a common fund by securing a recovery for themselves and the class they represent."[26] The principle that "in common fund cases, 'a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved" is axiomatic to class actions.[27]

Here, 20.5% of the Qualified Settlement Fund, or $131,456,250.00, will be allocated to Settlement Subclasses and Programmatic Relief.[28] Under the Proposal, 27% of the gross value of the claims resolved through the Subclasses plus 27% of the value of the Programmatic Relief Fund is to be allocated as fees for Class Counsel (including the Plaintiffs' Executive Committee, Subclass Counsel, and other firms working under the supervision of Co-Lead Class Counsel) ("Class Counsel Fees"). Claims resolved through the Subclasses do not include the claims of Individual Plaintiffs or other individual Claimants with IRC.[29] Hypothetically, if all Settlement Subclass funds were

---

[26] *N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 242 (quoting *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949 (S.D. Ohio 2004)).

[27] *Id.* (quoting *Rawlings*, 9 F.3d at 516).

[28] Settlement Agreement ¶ 5.2, PageID.54146. Any excess funds remaining in the Adults and Property Damage Sub-Qualified Settlement Fund and the Business Economic Loss Sub-Qualified Settlement Fund will be redistributed to the Minor Child, Minor Adolescent, and Minor Teen Settlement Categories. *Id.* ¶ 5.5, PageID.54147.

[29] The attorneys' fees for individually represented Adults, property owners, and businesses retained before July 16, 2020 will equal 27% of the claim and be paid to retained counsel. For those Adults, property owners, and businesses who retain counsel after July 16, 2020, retained counsel's fees will be capped at 10% and Co-Lead Class

distributed via claims resolved through the Settlement Subclasses, Class Counsel Fees would amount to $35,493,187.50. The fees Class Counsel will receive from the class portion of the settlement will be less than this amount, however, because Settlement Subclass funds will also be distributed to Individual Plaintiffs or other individual Claimants with IRC.

These assessments compensate Co-Lead Class Counsel for the results they have achieved and risk and expense they have borne specifically on behalf of the Settlement Class. As discussed below, *infra* § IV.A.5, Class Counsel Fees in this range are reasonable.

### 3. The Court Should Award Attorney Fees Using the Percentage-of-the-Fund Approach

Courts generally approve of awarding fees from a common fund based on the percentage-of-the-fund method.[30] "The Sixth Circuit has observed a 'trend[] towards adoption of a percentage of the fund method in [common fund] cases."[31] This trend holds true for courts in this District, which regularly utilize the percentage-of-the-fund

---

Counsel will receive an additional CBA of 12.75% of the claim and Co-Liaison Counsel will receive an additional CBA of 4.25%.

[30] *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").

[31] *N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 243 (quoting *Rawlings*, 9 F.3d at 515).

approach in common fund cases.[32] A percentage-of-the-fund approach fosters judicial economy by eliminating a detailed, cumbersome, and time-consuming lodestar analysis.[33] Compared to the lodestar method, the percentage-of-the-fund approach is "easy to calculate" and "establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery."[34]

Here, Plaintiffs' Counsel's efforts have resulted in the creation of a common Qualified Settlement Fund of $641.25 million. The attorneys' fees contemplated under the Proposal are all calculated as a percentage of either collective funds recovered or, what is functionally similar in the aggregate, individual recoveries from these funds. The 6.33% global CBA is a straightforward percentage-of-the-fund fee, as is the 27% assessment of the value of the Programmatic Relief Fund, to be allocated to Class Counsel. All other fees are calculated as percentages of individual recoveries from

---

[32] *See, e.g.*, *id.*; *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011) (noting that the Sixth Circuit has recognized "a number of advantages" of the percentage of the fund method (quoting *Rawlings*, 9 F.3d at 516)); *In re Delphi Corp. Secs., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502-03 (E.D. Mich. 2008); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531-32 (E.D. Mich. 2003).

[33] *Rawlings*, 9 F.3d at 516-17; *N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 243; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009) ("Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement."); *In re Cardizem CD*, 218 F.R.D. at 532.

[34] *Rawlings*, 9 F.3d at 516.

various Sub-Qualified Settlement Funds. As described above, beyond the 6.33% global CBA, all claims are subject to the same maximum 27% total fee assessment, which is allocated to Co-Lead Class Counsel, Co-Liaison Counsel, and/or IRC in various ways depending on their roles in relation to the claim. Seen another way, beyond the 6.33% global CBA, the Sub-Qualified Settlement Funds from which these Claimants will recover are all effectively subject to an aggregate maximum 27% fee assessment. With respect to the common fund specifically available to Settlement Subclass Members, Class Counsel will receive 27% of the gross claims resolved through these Subclasses— except for Claimants individually represented by Co-Liaison Counsel or other IRC, who will pay a portion of the 27% to Co-Liaison Counsel or their other IRC, as applicable.

Thus, the Proposal uses a combination of classic percentage-of-the-fund fees and functionally similar percentage-of-individual-recovery fees or fee caps to establish an equitable system of attorney compensation that eliminates the need for a "full-blown detailed and time consuming lodestar analysis."[35] Such an analysis would be particularly complex, burdensome, and time-consuming here given the many firms representing both Class and Individual Plaintiffs in these cases, and the volume of Individual Plaintiffs and their counsel. Adopting the Proposal's percentage-based approach will also help meet Plaintiffs' Counsel's "reasonable expectations . . . as to their expected recovery"

---

[35] *Stanley*, 2009 WL 4646647, at *1.

here.[36] The percentages requested here represent a reasonable fee structure to which Co-Lead Class Counsel and Co-Liaison Counsel agreed *ex ante* with each other with the goal of arriving at an equitable allocation for both Claimants and counsel. This agreement and the expectations it formed were instrumental in facilitating their efficient cooperation on this complex litigation.

### 4. The Fee Proposal Is Appropriate When Compared to Other Percentage of the Fund Awards

An "award of attorneys' fees in common fund cases need only be 'reasonable under the circumstances.'"[37] The court "must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee."[38] An appropriate fee is intended to approximate what counsel would receive if they were bargaining for their services in the marketplace.[39]

The Proposal's combined fees and their structure are in line with the fee amounts and structures approved by courts in comparable mass tort litigation. In such cases, courts have commonly approved the same general approach used here, where certain percentages of the recovery are assessed as common benefit fees while fees for

---

[36] *Rawlings*, 9 F.3d at 516.

[37] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings*, 9 F.3d at 516).

[38] *Rawlings*, 9 F.3d at 516.

[39] *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 285 (1989).

individually retained counsel are capped at defined percentages, resulting in overall fees typically in the range of 32% to 35%.[40] Here, the 6.33% global CBA and additional fees capped at 27% of the remaining funds amount to a total maximum fee percentage of 31.6%, less than the typical fee in comparable cases and the one-third maximum amount permitted under Michigan law, *see* Mich. Ct. R. 8.121.[41]

Moreover, except for the 6.33% global CBA and the CBA applicable to the Programmatic Relief Sub-Qualified Settlement Fund, fees under the Proposal are to be distributed only as and to the extent that claims are successfully paid out. This, and the fact that Settling Defendants have rights to rescind the Settlement if participation does not reach certain thresholds,[42] further ensure Plaintiffs' Counsel will not receive a windfall and incentivize them to maximize actual recoveries by Claimants.

Finally, the 27% assessment Co-Lead Class Counsel request from the Settlement Subclass Funds and the Programmatic Relief Sub-Qualified Settlement Fund is

---

[40] *See supra* § IV.A.1, n.22; *In re Zyprexa*, 424 F. Supp. 2d at 491, 496-97 (generally capping contingent fees at 35%, with common benefit fees for plaintiffs' steering committee to be assessed separately against common fund); *In re MGM Grand Hotel Fire*, 660 F. Supp. at 524-25, 529 (instituting 33.33% overall cap, granting 7% in fees to steering committee and also requiring IRC to pay 1.5% in common benefit expenses).

[41] This is because the 27% amounts are assessed against only funds that remain after the 6.33% global CBA. In other words, to calculate the total maximum fee percentage here, we take 6.33% and add 27% of 93.67%.

[42] ASA Art. XVIII, § 19.3, PageID.54181-54183.

consistent with fee awards to class counsel in other class actions in this Circuit.[43]

### 5. The Relevant Factors Justify the Fee Proposal

A court is tasked with ensuring that counsel are fairly compensated for the work

performed and the result achieved.[44]

> Courts in the Sixth Circuit evaluate the reasonableness of a requested fee
> percentage award using six factors: (1) the value of the benefit rendered to the
> plaintiff class; (2) the value of the services on an hourly basis; (3) whether the
> services were undertaken on a contingent fee basis; (4) society's stake in
> rewarding attorneys who produce such benefits in order to maintain an
> incentive to others; (5) the complexity of the litigation; and (6) the
> professional skill and standing of counsel involved on both sides.[45]

Under these factors, the Fee Proposal is fair, reasonable, and justified.

### i. The Value of the Benefit Achieved

Courts have consistently recognized that the result achieved is a major factor to

be considered in making a fee award.[46] The $641.25 million Qualified Settlement

Fund—part of a settlement that is the result of more than two years of Court-supervised

---

[43] *See, e.g.*, *In re Packaged Ice*, 2011 WL 6209188, at *19 ("[T]he requested award of close to 30% appears to be a fairly well-accepted ratio . . . generally in complex class actions."); *In re Cardizem*, 218 F.R.D. at 532 (collecting cases and noting "20–30% range of reasonable attorneys' fees generally awarded in this Circuit").

[44] *Rawlings*, 9 F.3d at 516.

[45] *In re Cardizem CD*, 218 F.R.D. at 533 (citing *Bowling*, 102 F.3d at 780); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

[46] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516 (percentage of the fund method is well suited to compensate counsel for the result achieved); *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

negotiations—is an excellent result for victims of the Flint Water Crisis against the Settling Defendants. The Settlement will provide certain compensation without further delay and avoid the risks associated with litigating to completion against these Defendants.[47] Moreover, the Settlement leaves open the possibility for additional recovery from the Non-Settling Defendants.

### ii.  Risks of Litigation and Contingent Nature of the Fee

A determination of a fair fee must include consideration of the contingent nature of the fee and the risk that counsel assumed.[48] Here, Plaintiffs' Counsel have vigorously prosecuted these cases for more than four years on a wholly contingent basis. Contingent fee cases sometimes result in no compensation whatsoever for plaintiffs' counsel, even after the expenditure of thousands of hours of work. That can happen for any number of reasons in complex cases like these, including the discovery of facts unknown when the case is commenced, changes in the law during the pendency of the case, or a decision of

---

[47] As noted in Plaintiffs' preliminary approval brief, the Settling Defendants are represented by experienced counsel, and undoubtedly would continue to deny Plaintiffs' allegations, contest liability, and appeal any result adverse to them. Moreover, because many of the individual Settling Defendants are entitled to invoke qualified immunity defenses, they could further delay litigation with interlocutory appeals of an unfavorable summary judgment opinion.

[48] *See, e.g.*, *In re Cardizem CD*, 218 F.R.D. at 533 ("Plaintiffs' Counsel undertook representation of the Class on a contingent fee basis, thus bearing the risk of recovery inherent in litigation, and expended millions of dollars in attorney time and expenses in their prosecution of this litigation over the past five years. Plaintiffs' Counsel also faced the substantial legal talent and financial resources of Defendants, which increased the risk of litigating this action.").

a judge or jury following a trial on the merits.  Even plaintiffs who prevail at trial may find their judgment overturned on appeal.

Plaintiffs' Counsel have assumed considerable risk in taking on and investing substantial resources into these cases with no guarantee of recovery. This case has entailed extensive discovery and lengthy motion practice and appeals. The Settling Defendants are represented by experienced counsel, and absent the Settlement would undoubtedly continue to deny Plaintiffs' allegations, contest liability, and appeal any contrary result. Moreover, because many of the individual Settling Defendants are entitled to invoke qualified immunity defenses, they could further delay litigation with interlocutory appeals of an unfavorable summary judgment opinion. In addition to counsel's own substantial lodestar (detailed below), Plaintiffs' Counsel's investments have included costly expert consultation and other expenses, all borne by Plaintiffs' Counsel with no guarantee of recoupment. Given the contingent fee arrangements and significant risks assumed, the Fee Proposal is reasonable.

### iii. Public Policy Considerations

Courts recognize that public policy supports rewarding plaintiffs' counsel who take on challenging cases like these on a contingent basis on behalf of plaintiffs who might otherwise not be able to prosecute them.[49] Plaintiffs in complex mass tort

_____

[49] *See, e.g.*, *In re Cardizem CD*, 218 F.R.D. at 534 ("Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society."); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.

litigation such as this are often represented by counsel who are retained on a contingent basis, largely due to the significant commitment of time and expense required in comparison to the plaintiffs' financial resources. Many individual plaintiffs and class representatives are unlikely to be able to pursue protracted and costly litigation at their own expense. That is especially true where, as here, the claims are complex and require expert testimony, the individual damages suffered by some Plaintiffs may be significantly less than the cost of prosecuting the action, and many Plaintiffs are part of lower-income households. The significant expenses, combined with the high degree of uncertainty of ultimate success, make contingent fees a virtual necessity for such cases.

Public policy thus strongly supports the Fee Proposal. Without the prospect of eventual compensation for Plaintiffs' Counsel here, these cases might never have been brought. Approving the Proposal will help ensure that plaintiffs' attorneys continue to take up important cases like these in the future.

### iv. The Value of Services on an Hourly Basis

Courts commonly use counsel lodestar as a "cross-check" to confirm the reasonableness of a percentage award.[50] This analysis is not a precise science, but rather

---

1974) ("society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others" is an important factor); *Bowling*, 102 F.3d at 780; *Smillie*, 710 F.2d at 275.

[50] 5 William B. Rubenstein, *Newberg on Class Actions* §§ 15:84, 15:88 (5th ed. 2020).

a tool for rough comparison among cases. "In contrast to employing the lodestar method in full, when using a lodestar cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court."[51] "To determine the lodestar figure, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. The court may then, within limits, adjust the lodestar to reflect relevant considerations peculiar to the subject litigation."[52] "A reasonable hourly rate is determined according to the prevailing market rates in the relevant community. To ascertain that community, district courts 'are free to look to a national market, an area of specialization market, or any other market they believe appropriate to fairly compensate particular attorneys in individual cases.'"[53] "[N]ormal billing rates usually provide an efficient and fair short cut for determining the market rate."[54]

As described in the declarations submitted in support of this motion, Plaintiffs' Counsel have spent 182,571 hours performing common benefit work for the Plaintiffs

---

[51] *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (citation and internal quotation marks omitted).

[52] *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (internal citation and quotation marks omitted).

[53] *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2018 WL 7108072, at *3 (E.D. Mich. Nov. 5, 2018) (quoting *Ford v. Fed.-Mogul Corp.*, No. 2:09-cv-14448, 2015 U.S. Dist. LEXIS 3399, at *2-3 (E.D. Mich. Jan. 7, 2015) (quoting *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002))).

[54] *Hadix v. Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (citation and quotation marks omitted).

here.[55] This results in a lodestar of more than $84,510,456 at Plaintiffs' Counsel's current rates[56] and approximately $80 million at historical rates.[57] This lodestar includes only common benefit work performed in conformance with the Time and Expense CMO. Therefore, it does not include additional legal work performed by individually retained counsel solely on behalf of their clients. This common benefit time has been submitted to Special Master Greenspan on a monthly basis for review.[58] The lodestar

---

[55] *See* Decl. of Theodore J. Leopold in Supp. of Pls.' Mot. for an Award of Attorneys' Fees & Reimbursement of Expenses ("Leopold Decl.") ¶ 5, Ex. 1; Decl. of Corey Stern in Supp. of Pls.' Mot. for Award of Attorneys' Fees & Reimbursement of Expenses ("Stern Decl.") ¶ 6, Ex. 2; Decl. of Hunter J. Shkolnik in Supp. of Pls.' Mot. for Award of Attorneys' Fees & Reimbursement of Expenses ("Shkolnik Decl.") ¶ 3, Ex. 4. Should the Court request, Plaintiffs' Counsel will provide detailed time records for the Court to review *in camera*.

[56] The Supreme Court and courts in this Circuit have recognized that, "[t]o compensate for the delay Plaintiffs' Counsel encounter[] in receiving compensation" in contingent fee cases, "it is appropriate to use current fee rates in calculating the lodestar." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (citing *Missouri v. Jenkins*, 491 U.S. at 283-84 (using current rates)); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) ("Compensation for this delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (citation and quotation marks omitted)). The Sixth Circuit has approved the application of current billing rates in cases involving significant delay in receiving compensation. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (finding current market rates reasonable because litigation "had been ongoing for nearly six years"); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (N.D. Ohio 1988) (noting that current rates were appropriate to counterbalance a delay in payment).

[57] Leopold Decl. ¶ 5. Neither of these totals include Levy Konigsberg, LLP's total lodestar, which will be provided separately. Certain firms have not provided their lodestar at historical rates here.

[58] Time and Expense CMO ¶ 9, PageID.15829; Prelim. Approval Order at 10-11,

also excludes all time spent on the preparation of this fee petition and other Time and Expenses Admin time.[59] Class Counsel's total lodestar as of February 15, using the same methods, is $67,732,431.50 using current rates and $65,682,510.50 using historical rates. Plaintiffs' Counsel's blended hourly rate (total lodestar divided by total hours) for the common benefit time is $558.57 (and $561.35 for Class Counsel).[60] Courts in this District have found comparable rates to be reasonable in other complex litigation.[61]

Courts in this Circuit also recognize that a fee award may appropriately use a "multiplier" or enhancement of counsel's lodestar. The multiplier is the ratio of the fee awarded to counsel's lodestar. "[E]nhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the

---

PageID.54407-54408.

[59] Leopold Decl. ¶ 5.

[60] This calculation excludes Levy Konigsberg, LLP, which will provide its lodestar separately.

[61] *Martin v. Trott Law, P.C.*, No. 15-12838, 2018 WL 4679626, at *9 (E.D. Mich. Sept. 28, 2018) (finding $570 blended hourly rate reasonable); *Doe 1-2 v. Deja Vu Servs., Inc.*, No. 2:16-cv-10877, 2017 WL 2629101, at *10 (E.D. Mich. June 19, 2017) (finding blended hourly rate of $542 reasonable), *aff'd sub nom.*, *Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019); *see also In re Auto. Parts*, 2018 WL 7108072 at *3 ("In national markets, partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400. In specialties such as "antitrust and high-stakes litigation and appeals . . . [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950. Some "difference makers" in the most complex fields . . . even charge $2,000 an hour." (internal citations and quotation marks omitted)).

quality of the attorney's work product, and the public benefit achieved."[62]

While the total amount of attorneys' fees to be paid under the Proposal is yet to be determined because certain attorneys' fees contemplated by the Proposal will be paid only upon successful recovery by individual Claimants from the Fund, the lodestar can be used to gauge the reasonableness of the global 6.33% CBA Plaintiffs' Counsel seek upfront. That CBA amounts to $40,591,125.00, well less than Plaintiffs' Counsel's more than $84 million of common benefit lodestar to date. Courts routinely approve awards that represent a substantial *increase* of counsel's actual lodestar.[63] Although the 6.33% global CBA is not the only fee contemplated by the Proposal, the lodestar cross-check nevertheless clearly demonstrates the reasonableness of this component of the Proposal.

Although involving considerable extrapolation and approximation, a lodestar cross-check can also be performed to roughly gauge the reasonableness of the overall

---

[62] *Rawlings*, 9 F.3d at 516; *see also In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990) ("[M]ultipliers should compensate counsel for the risk they incurred in bringing a case in which their compensation was contingent on their success, should recognize any extraordinary performance by particular counsel and should encourage the filing of meritorious class actions. Straight hourly rates will rarely, if ever, accomplish these objectives.").

[63] *See, e.g.*, *In re Cardinal Health*, 528 F. Supp. 2d at 767-68 (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *Concussion Inj. Litig.*, 2018 WL 1635648, at *9 (E.D. Pa. Apr. 5, 2018) (awarding multiplier of 2.96 excluding settlement implementation), *aff'd in relevant part,* 814 F. App'x 678 (3d Cir. 2020); *N.Y. State Tchrs.' Ret. Sys.*, 315 F.R.D. at 243-44 (noting court agreement for typical multipliers ranging from 1.3 to 4.5 and awarding multiplier of 1.9); *Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 503-04 (E.D. Mich. 2000) (approving an effective multiplier of 2.21).

34

attorneys' fees contemplated by the Proposal. This lodestar cross check is inherently conservative and approximate for several reasons. First, the lodestar to date does not factor in the extensive time Plaintiffs' Counsel will spend administering the Settlement. Second, the lodestar reported here excludes all lodestar accumulated by individually retained counsel for non–common benefit work, which is also meant to be compensated under the Proposal. With those caveats, if one assumes that all net Settlement funds ($600,658,875.00) are paid out, and that those funds are universally subject to the maximum attorneys' fees of 27% applying to those funds (*i.e.*, $162,177,896.00), the total fee award to all Plaintiffs' Counsel in these cases would amount to $202,769,021.00. That would yield a lodestar multiplier of less than 2.4 given that Plaintiffs' Counsel's common benefit lodestar to date alone (not including Levy Konigsberg, LLP and its more than 30,000 hours of common benefit work) is already $84,510,456.

By all measures, the total fees requested by Plaintiffs' Counsel are a reasonable multiple of their lodestar. The resulting blended rate is in line with those approved in this District and rates approved in fee shifting contexts. Accordingly, the requested fees amounting to a maximum of 31.6% of the Settlement Fund are reasonable in light of the value of Plaintiffs' Counsel's time on an hourly basis.

### v.  The Complexity of the Litigation

Prosecution of virtually any mass tort or complex class action presents intricate and novel issues. This case is no exception. The legal and factual issues surrounding this

case have been highly complex. Indeed, this Court has noted how "the Flint Water Cases are abundant, complex, and have been intensely litigated."[64] This factor strongly favors Plaintiffs' Fee Proposal.

### vi. The Quality of the Representation

Plaintiffs' Counsel are known leaders in class action, mass tort, and complex litigation. The quality of their representation here is demonstrated by the substantial benefit achieved through the Settlement for the Plaintiffs and the effective prosecution and resolution of the action vis-à-vis the Settling Defendants. The quality of opposing counsel is also important when a court evaluates the services rendered by plaintiffs' counsel.[65] Nationally known, prominent, and extremely capable counsel represent Defendants and have vigorously defended this action. The ability of Plaintiffs' Counsel to obtain a favorable result in the face of such qualified opposition is further evidence of the quality of their work.

This Court has recognized the quality of representation here in recently reappointing Co-Liaison Counsel and Co-Lead Class Counsel, noting that "Counsel's

---

[64] Prelim. Approval Order at 13, PageID.54410; *see also id.* at 51, PageID.54448 ("Class representatives and class counsel have been litigating this case for nearly five years in a suit that has involved extensive motion practice, numerous appeals, and petitions for certiorari filed with the United States Supreme Court. . . . This case has been zealously litigated already, by a team of national and local firms on all sides." (quotation marks and citation omitted)).

[65] *E.g.*, *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 373 (S.D.N.Y. 2002).

performance warrants reappointment for many reasons, including but not limited to, the ongoing settlement process and litigation work."[66] In granting preliminary approval of the Class Settlement, the Court similarly "conclude[d] that Co-Lead Class Counsel, as well as Subclass Settlement Counsel . . . have lived up to their appointments in vigorously representing Plaintiffs through the litigation and settlement processes."[67]

These factors accordingly all weigh in favor of the fee award requested.  The Court should grant Plaintiffs' Fee Proposal.

## B. The Court Should Approve Plaintiffs' Counsel's Request for Reimbursement of Reasonable Litigation Expenses

Plaintiffs' Counsel also request reimbursement of common benefit expenses incurred so far in connection with the prosecution of this litigation. Pursuant to the Time and Expense CMO, ECF No. 507 ¶¶ 20-32, PageID.15834-15842, these expenses include both Shared Costs paid by the Flint Litigation Fund and Held Costs paid by individual firms for the common benefit of Plaintiffs. Plaintiffs' Counsel have incurred common benefit expenses in the aggregate amount of $7,158,987.33.[68] Of this, $4,228,380.33 has been incurred by Class Counsel, with the Class Litigation Fund

---

[66] Order Reappointing Interim Individual Co-Liaison Counsel and Interim Co-Lead Class Counsel at 2, Nov. 2, 2020, ECF No. 1306, PageID.39846.

[67] Prelim. Approval Order at 46, PageID.54443.

[68] Leopold Decl. ¶¶ 7-10; Shkolnik Decl. ¶ 7; Stern Decl. ¶ 10. Plaintiffs' Counsel may later seek reimbursement of future expenses.

paying $3,477,019.40, and Held Costs constituting $751,360.93.[69]

"The common fund doctrine . . . authorizes reimbursement of the reasonable amounts paid out-of-pocket to achieve a common benefit recovery or to advance the common goals of plaintiffs."[70] This rule applies in the class action context as well:

> Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses. "Expense awards are customary when litigants have created a common settlement fund for the benefit of a class."[71]

Expenses are compensable in a common fund case if the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.[72] The categories of expenses for which counsel seek reimbursement here are the type of expenses routinely charged to hourly clients, were necessary to the prosecution of the case, and should therefore be reimbursed out of the common fund. The Settlement

---

[69] Leopold Decl. ¶¶ 7-10.

[70] *In re NuvaRing*, 2014 WL 7271959, at *4; *see also In re Orthopedic Bone Screw Prods. Liab. Litig.*, 2000 WL 1622741 (E.D. Pa. Oct. 23, 2020) (awarding 4% of the gross recovery for reimbursement of litigation expenses); *Phipps Grp. v. Downing (In re Genetically Modified Rice Litig.)*, 764 F.3d 864 (8th Cir. 2014) (approving over $5,000,000.00 in expenses to the common benefit attorneys).

[71] *In re Cardizem CD*, 218 F.R.D. at 535 (citation omitted).

[72] *Id.* (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001)); *see also U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) ("[W]e have held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.").

Agreement states that "Counsel for Individual Plaintiffs and Class Members shall be reimbursed and paid solely out of the FWC Qualified Settlement Fund for all expenses . . . , including but not limited to: . . . past, current, or future litigation and administration expenses (including, but not limited to, experts', consultants', and guardians ad litem fees and expenses); and the costs of providing the Settlement Class Notice and Individual Notice." Settlement Agreement ¶ 11.1, PageID.54159-54160.

A significant component of Plaintiffs' Counsel's expenses here is the cost of the expert work performed on behalf of the Plaintiffs.[73] Plaintiffs' Counsel retained more than 20 highly qualified experts in a variety of fields—including civil and environmental engineering, chemical engineering, urban planning, human health, economics, and ethics—to analyze the circumstances giving rise to the water crisis, the responsibilities of the engineering defendants, the medical and economic impact of the crisis on residents and businesses in Flint, and the remedial work that must occur to make them whole. The reports provided by Plaintiffs' experts include technical analysis of the circumstances leading to lead leaching into Flint water; geospatial analysis of the homes in Flint with increased lead; analyses regarding the various consequences of increased lead exposure for children and adults; economic analyses of the impact of the water crisis on residential property values and businesses in Flint; and analysis of the cost to remediate homes damages by Flint's contaminated water. This work required many

---

[73] *See* Leopold Decl. ¶ 8.

hours of research, calculating, and drafting, and was further complicated by the need to find alternative sources for materials that were inaccessible due to COVID-related restrictions on libraries and universities. These experts provided significant services on Plaintiffs' behalf, and their expenses were necessarily incurred for the successful prosecution of this litigation and instrumental in procuring the Settlement.

Because these expenses were necessary to prosecute this litigation and achieve the Settlement, and because they are the types of expenses typically reimbursed in such cases, the Court should grant this request.

## V.    CONCLUSION

For the reasons stated herein, Plaintiffs request that the Court grant their Motion.

Dated: March 8, 2021

/s/ Corey M. Stern
Corey M. Stern
**LEVY KONIGSBERG, LLP**
800 Third Avenue,
11th Floor
New York, NY 10022
(212) 605-6298 Telephone
cstern@levylaw.com

/s/ Hunter Shkolnik
Hunter Shkolnik
**NAPOLI SHKOLNIK PLLC**
270 Munoz Rivera Avenue,
Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088 Telephone
hunter@napolilaw.com

Joseph M. Sellers
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner
Alison S. Deich
**COHEN MILSTEIN SELLERS &**
**TOLL PLLC**
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
jsellers@cohenmilstein.com
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**

Respectfully submitted,

/s/ Theodore J. Leopold
Theodore J. Leopold
Leslie M. Kroger
**COHEN MILSTEIN SELLERS &**
**TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com

/s/ Michael L. Pitt
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER**
**BONANNI & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150
Detroit, MI 48226
(313) 800-4170 Telephone
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway

1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1901 Avenue of the Stars

New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA
A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.
LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Suite 950
Los Angeles, CA 90067
(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI  48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI  48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
jeblake@mcalpinelawfirm.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG & ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY & ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on March 8, 2021.

Dated: March 8, 2021

*/s/ Theodore J. Leopold*
Theodore J. Leopold
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com