| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated) |
| | Hon. Judith E. Levy |
| | Mag. Mona K. Majzoub |
| *Helen Chapman et al.,* | No. :-cv--JEL-MKM |
|      *Plaintiffs* | |
| *v.* | |
| *City of Flint, Michigan, et al.,* | |
|      *Defendants.* | |

## <u>OBJECTIONS OF FLORLISA FOWLER STEBBINS REGARDING THE PROPOSED FLINT WATER SETTLEMENT AGREEMENT</u>

Pursuant to the Revised Settlement Agreement, ECF 1394-2, PageID.54184, Article XX – Objections, filed with this Court on January 15, 2021, the following are my ". . . written objections why … (I) believe the Settlement Agreement, as currently proposed, for the sections discussed in this objection only, should not be approved…" by this Court:

My name is Florlisa Fowler Stebbins and I have resided in Flint since I was born at McLaren Hospital in 1978.

Pursuant to Article XX – Objections Section 20.1, my written statement of objection follows:

**Objection To Bone Lead Testing  As the Sole Means for Adults to Qualify for enhanced payments with out blood lead tests or a doctor's opinion that their disease was caused or exacerbated by exposure to Flint water**

As explained in detail in the Appendix below, the only way for the overwhelming majority of adults to qualify for more than a maximum payment of $1,000 per property is to receive bone lead testing, Bone lead testing did not become available to me until I early March, when I learned that Napoli Shkolnik was making slots available for testing on Sundays from 1 PM to 3:45 PM. I made a reservation for myself on Sunday March 28 and April 25. In making the reservation, I designated Mark Cuker Esq. as my attorney.

At about 8:40 PM on Thursday March 11, without any prior warning, I received email notice from the Napoli firm that my appointment was cancelled. Copies of those notices are attached. I have since been informed that Mr. Napoli personally ordered my appointment cancelled, because I am a client of Mark Cuker, and that Mr. Cuker would not agree to pay $500—no questions asked—for the cost of the test.

- Mr. Cuker would not agree to let Napoli Personnel ask me to sign documents he did not agree to in advance
- Mr. Cuker would not agree to let me waive my privacy right to insist that my bone lead test results be kept private, and not be shared with Napoli Shkolnik

See Appendix for a more detailed statement about Napoli Shkolnik's unacceptable treatment people like me who are  Mr. Cuker's clients.

All of these conditions are unreasonable and unfair, and I will not undergo bone lead testing through Napoli Shkolnik under these circumstances.

Because the main method for me to receive an enhanced settlement payment is through bone lead testing, but Napoli Shkolnik has a monopoly on bone lead testing in Flint, and refuses  to allow me to be tested because of my choice of lawyer, the settlement is unfair, unreasonable and should not be approved.

I am aware of the objections of Lawrence A Reynolds MD about the suitability of portable XRF  bone lead testing for use in humans and  the concerns he raises. Even if, however, bone lead testing by portable XRF device were an undisputedly  safe and reliable means of testing for bone lead, it is not a fair criteria for the settlement because  it is only available through Napoli Shkolnik, under terms and conditions which are unacceptable to me.

**Appendix on Importance of Bone  Lead testing  to enhanced recoveries under the settlement**

Here is why access to bone lead testing is important.  Among children 6 and under exposed before July 31, 2016, money is allocated as follows:

| Category | Age | Payment | Criteria 1 | Criteria 2 | Criteria 3 |
|---|---|---|---|---|---|
| 1 | 6 and under | 2x | Blood lead >10 | Bone lead >10 | N/A |
| 2 | 6 and under | 1.5x | Blood lead 5-9.9 | Bone lead 5-9.9 | Cognitive deficit determined by neuropsych and |

| | | | | | pediatrician X2 std. dev. |
|---|---|---|---|---|---|
| 3 | 6 and under | X | Blood lead 3-4.9 | Bone lead 3-4.9 | Cognitive deficit determined by neuropsych and pediatrician X 1 std. dev. |
| 4 | 6 and under | 0.5x | Blood lead 0.1-2.9 | Bone lead 0.1-2.9 | Formula fed infant |
| 5 | 6 and under | 0.2x | Lead service line | Lead in water >15 | N/A |
| 6 | 6 and under | 0.15x | Any exposure before 7/31/1996 | | |

*Id.*

For all categories, blood lead testing only counts if it occurred between May 16, 2014 and August 31, 2016. On the other hand, bone lead testing can be done ***today, and up to 90 days after the Preliminary Approval order***. ECF 1319-2 .

A similar hierarchy exists, with payments in the same proportions to parallel categories in the other child age groups. *Id.* at. pp. 381-382, 393-394, 401-402.

The Third Report of the Special Master shows that only 2,947 out of 9402 children under 18 (as of 12/31/2014), or slightly over 30%, had blood lead testing. ECF 1105 at. pp. 11, 18. This means that about 70% of children can ***only*** qualify for the category 1 through ***bone lead testing***.

Without blood or bone lead testing, a child can only qualify for categories 2 and 3 by undergoing a "full individual evaluation from a multidisciplinary team

which **shall include a board-certified pediatrician _and_ neuropsychologist**." ECF 1319-2 at p. 384. This testing requires 6 hours to complete and is only available in Flint at the Neurodevelopmental Center for Excellence, which has few, if any, appointments available.

The next category—Category 4—pays 0.5x to children with blood or bone lead results as low as 0.1, and the same amount to documented formula fed infants. This means about 70% of children who were not formula fed infants during the period in question can only qualify for Category 4 through bone lead testing.

These first four categories ignore another metric for lead exposure— a finding that the home was connected to a lead service line or had test results showing lead in the water at or above 15 ppb, which first appears in Category 5. Without bone lead testing, these children receive only 0.2x.

This same structure repeats itself for the other age groups. *See* Categories 8 through 21, ECF 1319-2 at pages 393-409.

**The Proposed allocation for Adults**

The allocation proposed for adults exposed before July 31, 2016 can be summarized by the table below:

| Category | Age | Payment | Criteria 1 | Criteria 2 | Criteria 3 |
|---|---|---|---|---|---|
| 22 | Adults | 2AX | Blood lead >10 | Bone lead >10 | |
| 23 | Adults | AX | Blood lead 5-9.9 | Bone lead 5-9.9 | Serious physical injury with |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | documented causation |
| 24 | Adults[3] | 0.5AX | N/A | N/A | Non-serious physical injury (such as skin rashes) with documented causation. |

*Id*. at 411-413.  Adults exposed before July 31, 2016 who do not meet these criteria (and do not fit the criteria for miscarriage or Legionnaire's disease) default to the "property damage" category, which is capped at ***$1,000 per property***. *Id.* at 839-840.

The highest paying adult category, 22, pays "2AX" for a blood or bone lead reading at or above 10—***even without any evidence of injury.***  According to the Special Master's Third Report, only 1,659 of 15,738 adults, (age over 18 as of 12/31/2014) or slightly more than 10%, had any blood lead testing.  ECF 1105 at pp. 11, 18. This means that about 90% of adults can only qualify for this category through bone lead testing.

The next category, 23, pays "AX" for adults with blood or bone lead between 5.0 and 9.9 who have ***no physical injury*** —the same amount it pays to adults with devastating injuries like stroke, neuropathy and renal insufficiency which are medically attributed to their exposure to contaminated water.

Unlike children, adults receive no enhancement for drinking from the same lead service line as their children.

**Bone lead testing is unavailable to thousands of individual plaintiffs**

Bone lead testing by x-ray fluorescence (XRF) is only performed by three entities in the United States:

- Mt. Sinai Hospital and Dr. Andrew Todd have a stationary XRF machine; anyone wanting to be tested by Mt. Sinai would have to travel to New York City. This would be daunting enough for Flint residents without a pandemic. Cuker Dec ¶11.

- Dr. Linda Nie and her lab at Purdue have both a stationary and a portable XRF, but she is not available to provide testing on Flint residents (See email exchange with Dr Nie dated Nov. 23, 2020 Cuker Dec Ex 8.

- Finally, Dr Aaron Specht of Harvard has a portable XRF machine; he has been engaged by Liaison Counsel as an expert on their individual cases (See, e.g. ECF 1281)  He has refused to respond to inquiries from other law firms. See, *e.g*., Cuker Dec. Ex. 7.

At the time this court granted preliminary approval, it noted concerns about the availability of bone scans in Flint. But stated that "this objection may be rendered moot" because Co-Lead Class counsel stated on the record that "they are optimistic that they have located individuals who can, and appear willing to, provide bone scans in Flint." ECF No, 1399 at p. 61-61. This, however, has not happened.

**Problems Cuker law Firm Clients have encountered with Napoli Shkolnik**

Instead, beginning on February 21, a limited amount of bone scan slots became available at the Flint office of Liaison Counsel Napoli Shkolnik ("Napoli"). The only availability was on Sundays between 1 and 3:45 PM. The remaining 6 days of the week, between 11 AM and 5 PM was devoted exclusively to testing the clients of liaison counsel. Available slots quickly filled up, and many people who wanted scans could not get them.

Things got worse. Napoli made conflicting and misleading statements to people who went for testing; the Napoli website promised "free' bone testing, buy people who went there were asked to sign a form which said it they might have to pay up to $500. Napoli had not registered a radiation-emitting machine, as required by Michigan law, until Feb 24, 2021; even after that, he had only one license for two devices, so one device was still unregistered. The class notice never disclosed how difficult it would be to get a bone lead test, and the fact that there was no legal facility for bone lead testing in the entire State of Michigan.

Clients of other attorneys who showed up at Napoli's office to be tested were given a form to sign which was not shown to their attorneys in advance. This *ex parte* communication with clients of other lawyers violated Michigan Ethics Rule 4.2.

It was one of many violations.

The disclosure which people were asked to sign was confusing and misleading. In one paragraph it said the method by which [the cost of the test] will be paid will be subject to a determination by the court."  In another it said: "If I am represented by a law firm then my attorney will pay the cost of the bone test and report before receiving a copy of the bone test."  See Ex. A, redacted consent form.

There is no transparency as to how the tests are being done or where the money to pay for them will go. Napoli told my lawyer he wanted $500. He told another lawyer he wanted $350. Either number seems excessive; Each test takes only 3 minutes to run; Dr. Specht charges $200 per hour and can review multiple tests in an hour. If Napoli is making a profit on what he is charging other lawyers for these tests, he is also violating Ethics Rule 1.8

Although Napoli sought a protective order against the disclosure of his own clients bone lead test information, he refused to assure the confidentiality of these bone lead results, and asked that persons undergoing the test waive allow him to see their results. At the same time, he allowed no direct access to Dr. Specht— everything must go through the Napoli firm. There is no way to audit the integrity or accuracy of the results being provided.

Finally, when my lawyer complained about all these improprieties, Napoli cancelled all the appointment my lawyer made. See Ex. B. Thread of email exchange between Paul Napoli and Mark Cuker and attachments. The only way I

can get a bone lead test is to fire my lawyer. But I trust my lawyer; I do not trust

Napoli or his firm.

      Pursuant to Article XX – Objections, Section 20.1:

      My Name is:  Florlisa Fowler

      I reside at:  341 Robbie Lane, Flint, MI 48505

      My Phone # is: (810) 444-5794

      The Year of My Birth: 1978

      I am a claimant in this proposed settlement.  I am represented by the Cuker

Law Firm.  Attached is a copy of my Registration Form that will be, or has been

submitted in this litigation.

_____

Florlisa Fowler Stebbins

Date: March 16, 2021

Cuker Law firm
Suite 1200
One Logan Sq.
Philadelphia, PA 19103
mark@cukerlaw.com
215-531-8512

Exhibit "A"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated) |
| | Hon. Judith E. Levy |
| | Mag. Mona K. Majzoub |

I, ▮▮▮▮▮▮▮▮▮▮ under penalty of perjury, hereby affirms that the foregoing is true and correct:

1. I currently reside at ▮▮▮▮▮▮▮▮▮

2. I want to receive the bone lead test so that I can use it for my claim in the partial settlement.

3. I understand that this is not a medical test and that the results of the test are not for purposes of any diagnosis or treatment.

4. I understand there is a cost for the bone test and report and that the cost will be no more than $500. I also understand that the payment will be deferred at this time and that the method by which it is paid will be subject to a determination by the Court. I understand that it is possible that the cost may be deducted from any settlement payment I receive. If I do not receive a settlement payment I will not be obligated to pay any cost.

5. I am / ~~am not~~ (Strike one) represented by a law firm.

6. If I am represented by a law firm then my attorney will pay the cost of the bone test and report before receiving a copy of the bone test results and report. I understand that my attorney might seek to be reimbursed for this cost from any settlement payment that I receive. Whether or

not my attorney seeks reimbursement is solely between me and my attorney and the persons operating the bone scan program have no involvement in that process.

      7.     In addition, I understand that any and all testing being performed is to help with the lawsuit and is the sole property of Dr. Aaron Specht.

      8.     I understand that I am not obligated to take this test. I have agreed to take this test of my own free will. I further understand that one can qualify for a settlement payment based on many different factors and that this bone lead test is not required in order to apply for a settlement payment.

Dated: ███████████

███████████████████

Sign Name

███████████████████

Print Name

Exhibit "B"

**Pam Keys**

---

| | |
|---|---|
| **From:** | Paul Napoli <PNapoli@NSPRLaw.com> |
| **Sent:** | Thursday, March 11, 2021 11:16 AM |
| **To:** | Mark Cuker; Greenspan, Deborah; Patrick Lanciotti; Hunter Shkolnik |
| **Cc:** | Robert Gali |
| **Subject:** | RE: Flint - Cuker Law bone scans (2021.02.21) |

Not yet, we will do it at 5 today unless you withdraw your allegations of ethics. We will be sending an updated affidavit for clients to sign shortly. We can take care of canceling via the scheduling software.

---

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Thursday, March 11, 2021 10:57 AM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Greenspan, Deborah <DGreenspan@blankrome.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Paul

Have you cancelled my clients?
If so, I need to let them know.

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

---

**From:** Paul Napoli <PNapoli@NSPRLaw.com>
**Sent:** Monday, March 8, 2021 5:34 PM
**To:** Greenspan, Deborah <DGreenspan@blankrome.com>; Mark Cuker <mark@cukerlaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Lol a spoilation claim. Add indemnity to the list. Rob please cancel all his future appointments now.

---

**From:** Greenspan, Deborah <DGreenspan@blankrome.com>
**Sent:** Monday, March 8, 2021 5:27 PM
**To:** Mark Cuker <mark@cukerlaw.com>; Paul Napoli <PNapoli@NSPRLaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>

**Cc:** Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

I am just seeing this – getting into another meeting right now.  I will circle back later

**Deborah Greenspan** | BLANK**ROME**
1825 Eye Street NW | Washington, D.C. 20006
O: 202.420.3100 | F: 202.379.9300 | dgreenspan@blankrome.com

---

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Monday, March 8, 2021 5:19 PM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

I do not accept all the changes.
If you choose to order the data to be erased, make sure you put your carrier on notice of a spoliation claim.

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

---

**From:** Paul Napoli <PNapoli@NSPRLaw.com>
**Sent:** Monday, March 8, 2021 5:08 PM
**To:** Mark Cuker <mark@cukerlaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Here are my edits. I extended the cancellation till 6. You need to:

1. Accept ALL The changes. Also accept my comments.
2. Waive any purported ethical violations in the past and the future affirmatively for scheduling or talking to clients about these tests. I cant guarantee who says what to whom.
3. Agree to the 500$ charge past and future. (or go to NYU where it is 800$)

All this must be accepted for future and past cases. If you don't accept for past, I will ask that the reports not be issued and the data erased so you have no privacy concerns tomorrow morning.

Paul

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Monday, March 8, 2021 3:12 PM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

I attach two different redined versions—either would be acceptable to me

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

**From:** Paul Napoli <PNapoli@NSPRLaw.com>
**Sent:** Monday, March 8, 2021 3:08 PM
**To:** Mark Cuker <mark@cukerlaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Not really I am on a zoom and then back to my brief. ROB 5PM!!!

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Monday, March 8, 2021 2:58 PM
**To:** Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Paul Napoli <PNapoli@NSPRLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Before I redline this, can you explain the "sole property of Dr Specht" language?
I don't understand what it means, and why it's there

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST

One Logan Square, Suite 1200
Philadelphia, PA 19103

**From:** Patrick Lanciotti <PLanciotti@NapoliLaw.com>
**Sent:** Monday, March 8, 2021 2:47 PM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Mark Cuker <mark@cukerlaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Mark – attached is the form in word.

**From:** Paul Napoli <PNapoli@NSPRLaw.com>
**Sent:** Monday, March 8, 2021 2:44 PM
**To:** Mark Cuker <mark@cukerlaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Mark to be clear it is 500$ if you don't want it other people want the spots. Patrick will send you the form and you can redline it. If the terms are acceptable then we can move forward, if not they will all be canceled at 5pm this evening until you can figure it out. I have 4 briefs due in the next two days, I don't have time to deal with your nonsense. So it is your choice if you want your clients tested but not with us if you cant be civil, and starting with ethics violations are serious accusations and cause to cancel you. Rob as I stated earlier CANCEL EVERYTHING AT 5 if you don't here from me. Thank you.

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Monday, March 8, 2021 2:36 PM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Paul

To be clear, I am not looking for welfare, but I am also not looking to be gouged, or make you any richer.
The form you proffer says the charge will not exceed $500 but does not give a final, definitive number.
I have every right to inquire about the reasonableness of the charge, how it was determined, and how much of it is going back to your firm.

Are you saying that you are going to cancel all my clients unless I let them sign papers which are, at best confusing and at worst misleading, which I am not allowed to see in advance, and which you will not let them copy or have a copy? Or are you willing to make a good faith effort negotiate a mutually agreeable form?

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

---

**From:** Paul Napoli <PNapoli@NSPRLaw.com>
**Sent:** Monday, March 8, 2021 2:17 PM
**To:** Mark Cuker <mark@cukerlaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>; Robert Gali <RGali@napolilaw.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

No, to be clear you pay for your client reports.  The Court only deals with paying for UNREPRESENTED. If you don't pay you don't get reports. I am not the welfare for Cuker. Now that you have raised ethics issues, I will cancel all your appointments at 5pm  this evening if you don't accept these terms and retract your nonsense.  Mr. Gali please cancel all Cuker's appointments at 5pm tonight unless you hear from me.

---

**From:** Mark Cuker <mark@cukerlaw.com>
**Sent:** Monday, March 8, 2021 1:12 PM
**To:** Paul Napoli <PNapoli@NSPRLaw.com>; Patrick Lanciotti <PLanciotti@NapoliLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>
**Cc:** Greenspan, Deborah <DGreenspan@blankrome.com>
**Subject:** FW: Flint - Cuker Law bone scans (2021.02.21)

I am following up again for a report on my clients who appeared for bone lead testing on Feb. 27 and on March 7. Please note that under MI RPC 4.2 , these are all **my** clients and any communications which your personnel have with them should be strictly limited to the logistics of scheduling and performing the bone lead test.

Rule: 4.2 Communication With a Person Represented by Counsel (a) In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

NONE of my clients should be given ANYTHING to sign unless I approve it first.
To the extent this form purports to waive any rights of my clients, and my clients were required to sign this form without consulting their attorney before getting bone lead testing, the waiver is ineffective.

The "consent form" you presented to my clients is unacceptable for  several other reasons:

First, there is a contradiction between the statement in paragraph 4 "the method by which [the cost of the test] will be paid will be subject to a determination by the court"
And paragraph 6: "If I am represented by a law firm then my attorney will pay the cost of the bone test and report before receiving a copy of the bone test."
The statement in paragraph 6 is problematic and should be deleted.
- it usurps the role of the court in deciding how the cost of the test is to be paid.
- It purports to have the client bind the attorney to make a payment, without the attorney even seeing the document before the client signs it.

In addition, the statement that "all testing…is the sole property of Dr. Aaron Specht" is confusing and misleading.  You have informed the State of Michigan that Dr. Specht does not own the equipment—Napoli Shkolnik does. How then is "all testing" the property of Dr Specht?

Moreover, in light of recent disclosures, the consent form should be amended to disclose that the test involves some degree of radiation. Good practice may require other disclosures as well.

Yesterday, your personnel refused to give one of my clients—Nadine Roberts—a copy of what she signed when she requested it.  They also refused to let her take a picture of what she signed, when she asked to, and refused to get on the phone with me when I asked to speak to them.

This is entirely unacceptable—every person  is entitled to a copy of what they sign upon request.

Your staff also "advised" Ms. Roberts that I would charge her $500 out of her recovery for the cost of the test. In addition to being an improper communication with my client, and purporting to dictate the terms of my attorney client relationship with her, this statement is false in that:

1) whether $500 is a fair and reasonable charge remains to be determined
2) what I can charge out of her recovery  needs to be decided by the court

Please advise, ASAP, whether you intend to revise your procedures to address these issues.

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

**From:** Mark Cuker
**Sent:** Thursday, March 4, 2021 1:43 PM
**To:** 'Patrick Lanciotti' <PLanciotti@NapoliLaw.com>
**Cc:** 'Paul Napoli' <PNapoli@NSPRLaw.com>; 'Hunter Shkolnik' <Hunter@NapoliLaw.com>; 'Greenspan, Deborah'

<DGreenspan@blankrome.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Patrick

Would you be so kind as to respond to my inquiry below?

Thank you for your anticipated cooperation.

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

---

**From:** Mark Cuker
**Sent:** Monday, March 1, 2021 5:04 PM
**To:** 'Patrick Lanciotti' <PLanciotti@NapoliLaw.com>
**Cc:** Paul Napoli <PNapoli@NSPRLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>; Greenspan, Deborah <DGreenspan@blankrome.com>
**Subject:** RE: Flint - Cuker Law bone scans (2021.02.21)

Can you tell me which of my clients showed up for bone lead testing yesterday?

MARK R. CUKER
Cuker Law Firm
mark@cukerlaw.com
215.531.8512 – Direct Dial
215.531.8522 – Main Dial
215-266-5717 (Cell)
www.cukerlaw.com

Please note new address
130 N. 18TH ST
One Logan Square, Suite 1200
Philadelphia, PA 19103

---

**From:** Patrick Lanciotti <PLanciotti@NapoliLaw.com>
**Sent:** Monday, February 22, 2021 3:38 PM
**To:** Mark Cuker <mark@cukerlaw.com>
**Cc:** Paul Napoli <PNapoli@NSPRLaw.com>; Hunter Shkolnik <Hunter@NapoliLaw.com>; Greenspan, Deborah <DGreenspan@blankrome.com>
**Subject:** Flint - Cuker Law bone scans (2021.02.21)

Mark,

Below is a list of your clients who had a bone scan performed on February 21, 2021. I have attached the signed affidavits from clients acknowledging the associated cost and other provisions related to the exam.

Doris Henry, DOB 4/20/1946
David Clark, DOB 1/23/1967
Angela Thomas, DOB 12/31/1970
Leonia Green, DOB 12/11/1953
Roderic Green, DOB 6/12/1956
Timothy Bell, DOB 9/22/1967


Regards,
Patrick


**Patrick Lanciotti**
**Associate**

(212) 397-1000 Ext. 1036 | PLanciotti@NapoliLaw.com
360 Lexington Avenue, 11th Floor, New York, NY 10017 | vCard

Our Mission Statement

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated.


**Patrick Lanciotti**
**Associate**

(212) 397-1000 Ext. 1036 | PLanciotti@NapoliLaw.com
400 Broadhollow Rd, Suite 305, Melville, NY 11747 | vCard

Our Mission Statement

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

This e-mail and all other electronic (including voice) communications from the sender's firm are for informational purposes only. No such communication is intended by the sender to constitute either an electronic record or an electronic signature, or to constitute any agreement by the sender to conduct a transaction by electronic means. Any such intention or agreement is hereby expressly disclaimed unless otherwise specifically indicated.


**Paul Napoli**
**Of Counsel**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated)<br><br>Hon. Judith E. Levy<br><br>Mag. Mona K. Majzoub |

I, _____, under penalty of perjury, hereby affirms that the foregoing is true and correct:

1.      I currently reside at _____

2.      I want to receive the bone lead test so that I can use it for my claim in the partial settlement.

3.      I understand that this is not a medical test and that the results of the test are not for purposes of any diagnosis or treatment.

~~3.~~4.     I understand that this test involves some exposure to radiation, but no more than a typical x-ray.

~~4.~~5.     I understand there is a cost for the bone test and report and that the cost will be no more than $500. I also understand that the payment will be deferred at this time and that the method by which it is paid will be subject to a determination by the Court. I understand that it is possible that the cost may be deducted from any settlement payment I receive. If I do not receive a settlement payment I will not be obligated to pay any cost.

~~5.~~6.     I am// am not (Strike one) represented by a law firm.

6.7.    If I am represented by a law firm then my attorney will pay  the reasonable cost of the bone test and report before receiving a copy of the bone test results and report. The amount to be paid will either be agreed to by my attorney or determined by the court. I understand that my attorney might seek to be reimbursed for this cost from any settlement payment that I receive. Whether or not my attorney seeks reimbursement is solely between me and my attorney and the persons operating the bone scan program have no involvement in that process.

7.8.    In addition, I understand that any and all testing being performed is to help with the lawsuit and is the sole property of Dr. Aaron Specht.

8.9.    I understand that I am not obligated to take this test. I have agreed to take this test of my own free will. I further understand that one can qualify for a settlement payment based on many different factors and that this bone lead test is not required in order to apply for a settlement payment.

10.    I do__ do not__ want to have a copy of this signed document.

9.11.    I do not  consent to have Napoli Shkolnik see the results of my test.

Dated: _____

_____
Sign Name

_____
Print Name

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated) |
| | Hon. Judith E. Levy |
| | Mag. Mona K. Majzoub |

I, _____, under penalty of perjury, hereby affirms that the foregoing is true and correct:

1.      I currently reside at _____

2.      I want to receive the bone lead test so that I can use it for my claim in the partial settlement.

3.      I understand that this is not a medical test and that the results of the test are not for purposes of any diagnosis or treatment.

3.4.    I understand that this test involves some exposure to radiation, but no more than a typical x-ray.

4.5.    I understand there is a cost for the bone test and report and that the cost will be no more than $500. I also understand that the payment will be deferred at this time and that the method by which it is paid will be subject to a determination by the Court. I understand that it is possible that the cost may be deducted from any settlement payment I receive. If I do not receive a settlement payment I will not be obligated to pay any cost.

5.6.    I am// am not (Strike one) represented by a law firm.

6.7.    If I am represented by a law firm then my attorney will pay  the reasonable cost of the bone test and report before receiving a copy of the bone test results and report. The amount to be paid will either be agreed to by my attorney or determined by the court. I understand that my attorney might seek to be reimbursed for this cost from any settlement payment that I receive. Whether or not my attorney seeks reimbursement is solely between me and my attorney and the persons operating the bone scan program have no involvement in that process.

7.8.    In addition, I understand that any and all testing being performed is to help with the lawsuit and is the sole property of Dr. Aaron Specht, that Dr. Specht will be the sole recipient of any funds which will be paid for the cost of the test, and that none of the money paid for the test will be going to Napoli Shkolnik.

8.9.    I understand that I am not obligated to take this test. I have agreed to take this test of my own free will. I further understand that one can qualify for a settlement payment based on many different factors and that this bone lead test is not required in order to apply for a settlement payment.

10.    I do    do not    want to have a copy of this signed document.

9.11.    I do not consent to have Napoli Shkolnik see the results of my test.

Dated: _____

_____
Sign Name

_____
Print Name

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM (consolidated) |
| | Hon. Judith E. Levy |
| | Mag. Mona K. Majzoub |

I, _____, under penalty of perjury, hereby affirms that the foregoing is true and correct:

1. I currently reside at _____

2. I want to receive the bone lead test so that I can use it for my claim in the partial settlement.

3. I understand that this is not a medical test and that the results of the test are not for purposes of any diagnosis or treatment.

~~3.~~4. I understand that this test involves some exposure to radiation, but no more than a typical x-ray.

~~4.~~5. I am not represented by an attorney. I understand there is a cost for the bone test and report and that the cost will be ~~no more than~~ $500. I also understand that the payment will be deferred at this time and that the method by which it is paid will be subject to a determination by the Court. I understand that it is possible that the cost may be deducted from any settlement payment I receive. If I do not receive a settlement payment I will not be obligated to pay any cost.

~~5.     I am// am not (Strike one) represented by a law firm.~~

6.        I am represented by an attorney.  If I am represented by a law firm then my attorney will pay ~~the reasonable~~the $500 cost of the bone test and report before receiving a copy of the bone test results and report. ~~The amount to be paid will either be agreed to by my attorney or determined by the court.~~ I understand that my attorney might seek to be reimbursed for this cost from any settlement payment that I receive. Whether or not my attorney seeks reimbursement is solely between me and my attorney and the persons operating the bone scan program have no involvement in that process.

7.      In addition, I understand that any and all testing being performed is to help with the lawsuit ~~and is the sole property of Dr. Aaron Specht~~.

8.      I understand that I am not obligated to take this test. I have agreed to take this test of my own free will. I further understand that one can qualify for a settlement payment based on many different factors and that this bone lead test is not required in order to apply for a settlement payment.

~~I do    do not    want to have a copy of this signed document.~~

9.      ~~I do not  consent to have Napoli Shkolnik see the results of my test.~~ I understand the Napoli Shkolnik may see a copy of my test and this is not a HIPPA violation. I consent to Napoli Shkolnik seeing a copy of my results.

9.      I understand that I may be talking to people from the firm of Napoli Shkolnik and my lawyer and I consent to such communications.

Dated: _____

_____

Sign Name

**Formatted:** Underline

**Commented [PN1]:** We don't have time to be a copy service to. One person asked and we gave a copy. This is the exception. We scan them to people and TOYOU at the end of the day.

**Commented [PN2]:** We are involved and cant guarantee what we see or don't. if this si a problem ok, cant help you.

**Formatted:** Underline

_____
Print Name