# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith Levy |
| | Mag. Mona K. Majzoub |

## HALL OBJECTORS' MOTION TO REVIEW AND RESPOND TO HOURLY BILLING AND COSTS; AND FOR DISCOVERY OF FEE-SHARING AGREEMENTS AND INVOICES/AGREEMENTS PERTAINING TO CLAIMED CONTRACT ATTORNEYS

For the reasons stated in the attached Memorandum of support, Raymond Hall, Robert Hempel, Ashley Jankowiak ("Hall Objectors") move the Court for an order requiring:

- Plaintiffs to disclose claimed hourly billing and costs, which are an essential part of their Fee Motion (ECF No. 1458);

- Plaintiffs to produce all fee sharing agreements that pertain to common benefit fees requested in their Fee Motion;

- Plaintiffs to produce invoices and agreements for temporary contract or project attorneys whose time is included in any firm's claimed lodestar, including contract attorney hours misclassified as $500/hour "associates" on behalf of Napoli Shkolnik;

and granting:

- Hall Objectors leave to respond in writing with a supplemental objection after reviewing these materials.

This limited review could conclude within weeks, and Hall Objectors could be required to file a supplement to their objection by June 4—well before the July 12 fairness hearing.

Pursuant to Local Rule 7.1, the Hall Objectors conferenced with the parties to ascertain whether they might be consent in this motion. The Settling Defendants take no position on the relief in this motion (except for Rowe, which the undersigned has not heard from at this time). Both Co-Liaison Counsel oppose the motion. Both Co-Lead Class Counsel oppose the motion.

Dated: April 9, 2021              /s/ M. Frank Bednarz
                                 M. Frank Bednarz (IL ARDC No. 6299073)
                                 HAMILTON LINCOLN LAW INSTITUTE
                                 CENTER FOR CLASS ACTION FAIRNESS
                                 1145 E. Hyde Park Blvd. Unit 3A
                                 Chicago, IL 60615
                                 Phone: 801-706-2690
                                 Email: frank.bednarz@hlli.org

                                 *Attorneys for Hall Objectors*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| *In re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
|  | Hon. Judith Levy |
|  | Mag. Mona K. Majzoub |

## MEMORANDUM IN SUPPORT OF HALL OBJECTORS' MOTION TO REVIEW AND RESPOND TO HOURLY BILLING AND COSTS; AND FOR DISCOVERY OF FEE-SHARING AGREEMENTS AND INVOICES/AGREEMENTS PERTAINING TO CLAIMED CONTRACT ATTORNEYS

## STATEMENT OF ISSUES PRESENTED

The issues presented in this Motion are:

1)      Whether class members and claimants to the Settlement have the right to inspect records submitted to the Special Master and offered to the Court *in camera* in support of their Fee Motion, namely detailed hourly billing and claimed costs.

Hall Objectors' Answer: Yes

Co-Lead Class Counsel and Co-Liaison Counsel's Answer: No

Settling Defendants' Answer: No Position


2)      Whether class members and claimants to the Settlement are entitled to limited discovery of (1) fee-sharing agreements among firms and any other entities entitled to receive common benefit fees from class members and claimants, and (2) invoices and agreements governing contract attorneys claimed as part of the lodestar of any firm entitled to common benefit fees.

Hall Objectors' Answer: Yes

Co-Lead Class Counsel and Co-Liaison Counsel's Answer: No

Settling Defendants' Answer: No Position

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23(h)

*Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016)

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277 (7th Cir. 2002)

*In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010)

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016)

*In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 216 (2d Cir. 1987)

*In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018)

# TABLE OF CONTENTS

Statement of Issues Presented ................................................................ ii

Controlling or Most Appropriate Authority ................................................ iii

Table of Contents .................................................................................. iv

Table of Authorities ............................................................................... v

Introduction ......................................................................................... 1

I.    Class members have a right to review class counsel's hourly billing records
      submitted in support of a fee application. ........................................... 2

      A.    Class and Liaison Counsel have inappropriately refused to disclose
            the basis of their Fee Motion. .................................................. 3

      B.    The vast majority of hourly billing is not privileged. .................... 8

      C.    Review is necessary to verify the claimed common benefit work has
            occurred, and CCAF wishes to adversarially test the Fee Motion. ......... 10

      D.    Plaintiffs must also disclose claimed common benefits costs.............. 13

II.   Additional discovery is justified. ..................................................... 14

      A.    Fee sharing agreements among the firms must be publicly disclosed,
            as Co-Liaison Counsel correctly argued three years ago. ................ 16

      B.    Counsel should also disclose their actual costs and agreements
            concerning contract attorneys.................................................. 20

III.  Hall Objectors' requests will not interfere with ongoing litigation.............. 21

IV.   Hall Objectors' requests will not delay recovery, but may enhance it............. 23

Conclusion........................................................................................... 25

Certificate of Service ............................................................................ 27

# TABLE OF AUTHORITIES

## Cases

*Ahdoot v. Babolat,*
    2014 U.S. Dist. LEXIS 124115 (C.D. Cal. Sept. 4, 2014) .................................... 7

*In re "Agent Orange" Prod. Liab. Litig.,*
    818 F.2d 216 (2d Cir. 1987) ...................................................................... 11-12, 18

*Allen v. Bedolla,*
    787 F.3d 1218 (9th Cir. 2015) ................................................................................ 22

*Anklam v. Delta Coll. Dist.,* No. 317962,
    2014 Mich. App. LEXIS 1246 (Ct. App. June 26, 2014) ...................................... 5

*In re Anthem, Inc. Data Breach Litig.,* No. 15-MD-02617-LHK,
    2018 U.S. Dist. LEXIS 226119 (N.D. Cal. Mar. 16, 2018) ............................. 9, 24

*In re Anthem Inc. Data Breach Litig.,* No. 2018 WL 3960068,
    2018 U.S. Dist. LEXIS 140137 (N.D. Cal. Aug. 17, 2018) ................ 1, 6-7, 9, 20

*Arctic Cat Inc., v. Polaris Indus.,* No. 16-cv-0009, 2017 WL 6187325,
    2017 U.S. Dist. LEXIS 218031 (D. Minn. May 15, 2017) .................................... 8

*Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.,* No. 11-10230-MLW,
    2018 U.S. Dist. LEXIS 111409 (D. Mass. May 14, 2018) .................................. 21

*Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.,* No. 11-10230-MLW,
    2020 U.S. Dist. LEXIS 33552 (D. Mass. Feb. 27, 2020) .................................... 18

*Avgoustis v. Shinseki,*
    639 F.3d 1340 (Fed. Cir. 2011) .............................................................................. 8

*Bowling v. Pfizer, Inc.,*
    159 F.R.D. 492 (S.D. Ohio 1994) ........................................................................ 15

*Bowling v. Pfizer, Inc.,*
    102 F.3d 777 (6th Cir. 1996) .......................................................................... 18, 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.,* 2016 U.S. Dist. LEXIS 35627,
    2016 WL 1072097 (N.D. Cal. Mar. 17, 2016) ................................................. 4-5

*In re Cendant Corp. Prides Litig.*,
    243 F.3d 722 (3d Cir. 2001) ................................................................. 14

*Chambers v. Whirlpool.*
    980 F.3d 645 (9th Cir. 2020) ................................................................. 7

*In re Citigroup Inc. Secs. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ................................................. 13

*In re Diet Drugs Prods. Liab. Litig.*,
    401 F.3d 143 (3d Cir. 2005) ................................................................. 19

*In re Dry Max Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ............................................................... 10

*Fangman v. Genuine Title*,
    2016 U.S. Dist. LEXIS 160434 (D. Md. Nov. 18, 2016) ...................... 7

*In re FPI/Agretech Sec. Litig.*,
    105 F.3d 469 (9th Cir. 1997) ............................................................... 19

*In re General Tire & Rubber Co. Sec. Litig.*,
    726 F.2d 1075 (6th Cir. 1984) ............................................................. 14

*Goldberger v. Integrated Resources, Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................. 11

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*,
    517 F.3d 220 (5th Cir. 2008) ......................................................... 18, 22

*Jordan v. Mark IV Hair Styles, Inc.*,
    806 F.2d 695 (6th Cir. 1986) ............................................................... 13

*Laffitte v. Robert Half Int'l*,
    376 P.3d 672 (Cal. 2016) ................................................................... 23

*Lawler v. Johnson*,
    253 So. 3d 939 (Ala. 2017) ................................................................. 5

*Linneman v. Vita-Mix Corp.*,
    394 F. Supp. 3d 771 (S.D. Ohio 2019),
    *rev'd on other grounds* 970 F.3d 621 (6th Cir. 2020) ...................... 9-10

*Martin v. Global Mktg. Research Servs.,* 2016 WL 4129033,
2016 U.S. Dist. LEXIS 101898 (M.D. Fla. Aug. 3, 2016) ...................................... 7

*In re Master Key Antitrust Litigation,* MDL No. 45, 1977 WL 1545,
1977 U.S. Dist. LEXIS 12948 (D. Conn. Nov. 14, 1977) ................................... 15

*In re Mercury Interactive Corp. Secs. Litig.,*
618 F.3d 988 (9th Cir. 2010) .............................................................. 1, 4, 11, 16

*Moulton v. United States Steel Corp.,*
581 F.3d 344 (6th Cir. 2009) .................................................................. 13

*In re Nat'l Prescription Opiate Litig.,*
927 F.3d 919 (6th Cir. 2019) .................................................................. 22

*In re Polyurethane Foam Antitrust Litig.,*
2016 U.S. Dist. LEXIS 156339 (N.D. Ohio. Oct. 24, 2016) .............................. 13

*In re Polyurethane Foam Antitrust Litig.,*
168 F. Supp. 3d 985 (N.D. Ohio. 2016) ................................................ 20-21

*Rawlings v. Prudential-Bache Properties, Inc.,*
9 F.3d 513 (6th Cir. 1993) ................................................................... 1, 10

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277 (7th Cir. 2002) .................................................................. 6, 7

*Rodriguez v. Evergreen Prof'l Recoveries, Inc.,* 2021 WL 603319,
2021 U.S. Dist. LEXIS 15560 (W. D. Wash. Jan. 27, 2021) ............................... 7

*Shane Grp., Inc. v. Blue Cross Blue Shield,*
825 F.3d 299 (6th Cir. 2016) ........................................ 1, 3, 4, 8, 12, 18, 21, 22, 23

*Strack v. Cont'l Res., Inc.,*
2020 Okla. Civ. App. LEXIS 3 (Okla. Civ. App. Feb. 20, 2020) ........................ 5

*Strauch v. Computer Sciences Corp.,* No. 14-cv-956,
2020 U.S. Dist. LEXIS 62523 (D. Conn. Apr. 9, 2020) ...................................... 5

*Torres v. SGE Mgmt., L.L.C.,*
945 F.3d 347 (5th Cir. 2019) ................................................................... 18

*United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.,*
732 F.2d 495 (6th Cir. 1984) ................................................................ 5, 13

*Wininger v. SI Mgmt. L.P.*,
    301 F.3d 1115 (9th Cir. 2002)............................................................12-13

*In re World Trade Ctr. Disaster Site Litig.*,
    754 F.3d 114 (2d Cir. 2014)............................................................10-11

*Yamada v. Nobel Biocare Holding AG*,
    825 F.3d 536 (9th Cir. 2016).............................................................5-6

## Rules and Statutes

Fed. R. Civ. P. 23(e) .................................................................................. 4

Fed. R. Civ. P. 23(h).........................................1, 3, 6, 7, 11, 16, 18, 21

Fed. R. Civ. P. 23(h)(1) ........................................................................... 1

Fed. R. Civ. P. 23(h)(2) ........................................................................... 1

Fed. R. Civ. P. 23(h)(4) ......................................................................... 22

Fed. R. Civ. P. 53(a)(1) ......................................................................... 22

Fed. R. Civ. P. 54(d)(2)(D) .................................................................... 22

Fed. R. Civ. P. 72(b).............................................................................. 22

## Other Authorities

Stephen J. Choi, Jessica Erickson, & Adam C. Pritchard, *Working Hard or
    Making Work? Plaintiffs' Attorney Fees in Securities Fraud Class Actions*,
    17 J. EMPIRICAL LEGAL STUD. 438, 464 (2020) ..................................... 17

5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009).......................... 15

# INTRODUCTION

Rule 23(h) affords absent class members the right to receive notice of fee motions and to object to such motions. Fed. R. Civ. P. 23(h)(1)-(2). These rights purposely enable objectors to "provide the court with critiques of specific work done by counsel" and furnish them with "information of what that work was, how much time it consumed, and whether and how it contributed to the benefit of the class." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

When common benefit lawyers seek fees from a common fund, as in this case, the lawyers' interests become directly adverse to the claimants' interests. *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). The lawyers would like to take their fees from the fund; claimants would like to retain the maximum possible share of the common fund. Thus, denying class members access to lodestar information would raise "due process concerns." *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *182 (N.D. Cal. Aug. 17, 2018) (Koh, J.). Hall Objectors seek access to hourly billing and costs, which are judicial records under the Case Management Order and which Plaintiffs offered to have the Court inspect *in camera*. No "compelling reasons" exist to "justify non-disclosure of judicial records." *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016).

The Hall Objectors also request limited disclosure, which is necessary in view of Plaintiffs' fee motion ("Fee Motion," ECF No. 1458). First, Plaintiffs admit the existence of fee sharing agreements that influenced the incentives of counsel, and these should be disclosed as Napoli Shkolnik correctly argued three years ago. Second, Napoli

1

Shkolnik's misclassification of contract attorneys as "associates" highlights the need to disclose the actual costs these attorneys imposed on Liaison Counsel, so relevant invoices and agreements covering these attorneys should be produced.

Counsel seeks tens of millions of dollars out of the recovery to profoundly victimized claimants, some of whom will have to deal with life-long disabilities. Attorneys are entitled to fees, but they are not entitled to short-circuit the rights of claimants responsible for paying them. Flint residents deserve no less due process than corporations to review and challenge the fees to be paid from their money.

## I.      Class members have a right to review class counsel's hourly billing records submitted in support of a fee application.

Class and Liaison Counsel have refused to provide the hourly billing and costs that they submitted to the Special Master monthly. Yet they have asked the Court to tax the awards of every Settlement claimant and apply Special Assessments of 17-27% to claimants like the Hall Objectors who never retained an attorney or retained one after July 16, 2020. *See* ECF No. 1548 ("Hall Objection"), PageID.60220-21.

Due process requires those liable for fees—Flint claimants—have the opportunity to examine and challenge the basis for those fees. Whatever limited billing may be protected by attorney-client or work product privilege may be redacted, but review of the hours is imperative to remove non-common benefit work. Hunter Shkolnik declared that non-common benefit work had been included in Class Counsel's billing, so class members certainly have good cause to investigate the matter for themselves. Additionally, detailed hourly fees and costs are part of the Fee Motion, and

it would violate Rule 23(h) and principles of class action transparency for these records to be provided *in camera* as Plaintiffs suggest. *Shane Group*, 825 F.3d at 305.

### A. Class and Liaison Counsel have inappropriately refused to disclose the basis of their Fee Motion.

Since 2018, the Court has required Co-Liaison Counsel (collectively "Liaison Counsel") and Co-Lead Class Counsel (collectively "Class Counsel") to keep contemporaneous billing records for later review. The Case Management Order Regarding Time and Expense Procedures (ECF No. 507, "CMO"), requires periodic submission of common benefit time and expenses to the Special Master. PageID.15829. The CMO contemplates that Class and Liaison Counsel, along with the Special Master, "shall meet quarterly to review and audit all time and expense submissions." *Id.* However, the CMO contemplates that Class and Liaison Counsel—not the Special Master—are solely responsible for bringing disputes about common benefit time to the Court's attention. *Id.* At the time of the CMO, the Court "reserve[d] judgment as to whether any time recorded, or expenses incurred, shall be recognized as common benefit or expense." *Id.* at PageID.15842. The Fee Motion reported that hourly billing had been "submitted to Special Master Greenspan on a monthly basis for review," but did not report the results of any such review. PageID.57189. The Fee Motion does not even clearly confirm that the hours and costs listed in the supporting declarations are identical to those conveyed to the Special Master.

Rather than disclose the billing records that have been collected for exactly this eventuality, Plaintiffs' Counsel suggest they "will provide detailed time records for the Court to review *in camera*," upon request. Fee Motion, PageID.57189. Class and Liaison

Counsel have cited this offer as reason to refuse providing their basis for fees to objectors. ECF No. 1548-12, PageID.60317; ECF No. 1548-10, PageID.60307.

However, Plaintiffs' suggestion contravenes fundamental norms of American courts, which provide a strong presumption in favor of transparency. They make no showing at all for proceeding *ex parte* to justify their fee request. "The burden is a heavy one: 'Only the most compelling reasons can justify non-disclosure of judicial records.'" *Shane Group*, 825 F.3d at 305. At the time that they were submitted to the special master, counsel's billing records became "judicial records" by crossing the "line" into the "adjudicative stage" of proceedings. *Id.* "Moreover, the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id.* Flint residents have a colossal interest in the $202 million fee request.

Plaintiffs' offer to provide essentially *ex parte* evidence in support of their Fee Motion would abridge class rights under Rule 23. "Class members cannot participate meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record." *Id.* at 309. "Allowing class members an opportunity thoroughly to examine counsel's fee motion [and] inquire into the bases for various charges" "is essential" to protecting class members and ensuring the court is presented with and "adequately-tested" information. *Mercury Interactive*, 618 F.3d at 994-95 (cleaned up).

"Where *in camera* review was challenged and litigated, courts have held that due process requires filing billing records on the docket so that opposing parties can examine all materials on which the court relied." *In re Cathode Ray Tube (CRT) Antitrust*

*Litig.*, 2016 U.S. Dist. LEXIS 35627, 2016 WL 1072097, *3 (N.D. Cal. Mar. 17, 2016) (citing cases).[1]

This is fair. Class and Liaison Counsel seek tens of millions of dollars of common benefit fees from each and every claimant—so they must carry the burden proving their entitlement to the outsized fees they request. "A motion for attorneys' fees necessarily places documentation of litigation time records at issue." *Strauch v. Computer Sciences Corp.*, No. 14-cv-956, 2020 U.S. Dist. LEXIS 62523, at *10 n.5 (D. Conn. Apr. 9, 2020) (denying motion to seal class counsel's time records). Indeed, "documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).

Claimants also have a *due process right* to examine the proposed *in camera* evidence. This is because claimants—not the Court—will pay the attorneys' fees, and these claimants have the right and prerogative to review and challenge the billing. "Here, the Due Process Clause requires that opposing counsel have access to the timesheets relied on to support the fee order." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 545

---

[1] State courts concur, sometimes also ruling on the basis of federal due process. *Lawler v. Johnson*, 253 So. 3d 939, 948-52 (Ala. 2017); *Strack v. Cont'l Res., Inc.*, 2020 Okla. Civ. App. LEXIS 3, at *17-*18 (Okla. Civ. App. Feb. 20, 2020) ("judicial review of the billing records *in camera*, depriving Objector of the opportunity to review them, was an improper procedure requiring reversal"). *See also Anklam v. Delta Coll. Dist.*, No. 317962, 2014 Mich. App. LEXIS 1246, at *12 (Ct. App. June 26, 2014) (reversing trial court's acceptance of defendant's redaction of attorney billing statements for purported privilege in response to a public records request as "conclusory").

(9th Cir. 2016) (finding an abuse of discretion where the district court relied on *in camera* inspection of detailed billing in a class action). In *Yamada*, the Ninth Circuit reversed a district court because it did not allow the defendant—a dental manufacturing company—to review and oppose the bills it was ordered to pay. Why should Flint claimants like the Hall Objectors have less right than a corporation to review billing?

Objectors have access to counsel's billing records as a matter of right according to the vast consensus of cases. Nearly 20 years ago, and even before Rule 23(h) was added in 2003, Judge Posner laid down an exemplary path in *See Reynolds v. Beneficial Nat'l Bank*. In that case, the district court judge requested that the class's lawyers submit their fee applications *in camera*, "lest the paucity of the time they had devoted to the case…be used as ammunition by objectors." 288 F.3d 277, 284 (7th Cir. 2002). On appeal, the Seventh Circuit "disapprove[d]" the practice of *in camera* submissions, a practice it "had never heard of and can find no case law concerning." *Id.* at 286. "To conceal the applications and in particular their bottom line paralyzes objectors, even though inflated attorneys' fees are an endemic problem in class action litigation and the fee applications of such attorneys must therefore be given beady-eyed scrutiny by the district judge." *Id. Reynolds* dismissed as "unlikely" the concern about confidentiality and further suggested any atypical confidential material in the bills "can be whited out." *Id.* If the records contain some attorney-client confidences or work product revelations, narrow and limited redactions can protect it. *See In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, 2018 U.S. Dist. LEXIS 140137, at *182-*183 (describing how the court

ordered the filing of hourly billing records from Cohen Milstein, among other firms) (N.D. Cal. Aug. 17, 2018); *accord Reynolds*, 288 F.3d at 286.[2]

To Objectors' knowledge, the only appellate opinion denying an objector's request for access to class counsel's billing records under Rule 23(h) is *Chambers v. Whirlpool*. 980 F.3d 645, 672 (9th Cir. 2020). However, two facts set this case apart. First, the objector failed to preserve the issue before the district court. Second, in *Chambers* the defendant was responsible for paying class counsel's fee independently of class recovery, so the defendant had the due process interest—*and* the defendant had been given access to the timesheets so it could oppose class counsel's fee request, which it did strenuously. *Id.*

Here, the Hall Objectors timely seek hourly billing over three months before the fairness hearing. The Fee Motion demands that all Settlement claimants foot the bill.

---

[2] Other decisions reflect this Rule 23(h) principle. *See, e.g.*, *Rodriguez v. Evergreen Prof'l Recoveries, Inc.,* 2021 WL 603319, 2021 U.S. Dist. LEXIS 15560, *5 (W. D. Wash. Jan. 27, 2021) (finding Rule 23(h) violation where class members could not review "the fee motion itself" or the forthcoming "time sheets detailing how many hours were spent by each attorney on specific tasks"); *Fangman v. Genuine Title*, 2016 U.S. Dist. LEXIS 160434, at *11-*12 (D. Md. Nov. 18, 2016) (denying motion to seal billing sheets and affidavits of class counsel even where class counsel sought percentage-based award); *Ahdoot v. Babolat*, 2014 U.S. Dist. LEXIS 124115 (C.D. Cal. Sept. 4, 2014) (requiring class counsel to submit lodestar information where class counsel sought percentage-based award); *Martin v. Global Mktg. Research Servs.,* 2016 WL 4129033, 2016 U.S. Dist. LEXIS 101898, at *4 (M.D. Fla. Aug. 3, 2016) ("regardless of what the settlement agreement requires or does not require to be posted, potential class members are entitled to make their own assessment. Accordingly, the time sheets must be docketed and posted on the class action settlement website.").

Why should Flint residents have less right to review and challenge billing than Whirlpool, Facebook, or any other corporation?

**B.   The vast majority of hourly billing is not privileged.**

The Hall Objectors anticipate that Plaintiffs will argue their hourly billing is privileged, as they have said in response to the undersigned's request. ECF No. 1548-12, PageID.60317. But privilege provides no excuse because most billing descriptions simply do not contain privileged information.

To the extent Plaintiffs contend that particular billing descriptions reveal work product or attorney-client communications, Hall Objectors are amenable to allowing Plaintiffs to excise the odd privileged billing description.[3] Redactions for privilege or any other reason "must be narrowly tailored to serve that reason." *Shane Group*, 825 F.3d at 305. A "blanket claim of privilege"—work product or attorney-client—cannot succeed. *Arctic Cat Inc., v. Polaris Indus.*, 2017 WL 6187325, 2017 U.S. Dist. LEXIS 218031, at *5-*6 (D. Minn. May 15, 2017). Blanket privileges "cannot preclude the opposing party from conducting an analysis of the reasonableness of the petitioning party's claim for attorneys' fees." *Id.*, 2017 U.S. Dist. LEXIS 218031, at *5-*6 (cleaned up). More generally, "no court of appeals has held that disclosure of the general subject matter of a billing statement…violates attorney-client privilege." *Argoustis v. Shinseki*, 639 F.3d 1340, 1344-45 (Fed. Cir. 2011) (noting, that, among others, the Sixth Circuit

---

[3] Presumably, all of the claimed hourly fees and costs were sent to the Special Master, who is not an agent of Plaintiffs. Arguably, Plaintiffs have categorically waived all privilege claims over the billing.

upheld a fee reduction for vague entries that did not permit meaningful review of the hours claimed).

*Anthem* is particularly instructive. There, accompanying their full fee application, plaintiffs moved to seal "all narrative descriptions of each attorney's work" in its billing records. *Anthem*, 2018 U.S. Dist. LEXIS 140137, at *182-*183. An objecting class member (represented by the Center for Class Action Fairness ("CCAF")) opposed those motions, contending that adversaries are entitled to review opposition billing entries. *Anthem*, Dkts. 975 (Feb. 5, 2018), 989 (Feb. 9, 2018). Judge Koh denied plaintiffs' motion to seal the narrative descriptions of each attorney's work. *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 226119, at *82 (N.D. Cal. Mar. 16, 2018). Plaintiffs then submitted an amended and narrowed motion that agreed to "publicly disclose[]" "almost the entirety of each attorney's narrative descriptions" with minor redactions in two basic patterns. *Anthem*, 2018 U.S. Dist. LEXIS 140137, at *182-*183. To account for attorney-client privilege, "[t]he first takes the form: 'Email/call to [client] regarding ____.'" *Id.* at 183. And then, to account for work-product doctrine, the second pattern redacted "particular work or research" that revealed mental thought process, as in the form: "Research legal issues relating to ___." *Id.* But for the most part, all the basics (which biller, did what work, for how long, at what time) were fully disclosed. CCAF's client did not object and the court granted the narrowed motion. *Id.*

Plaintiffs should not attempt to over-redact their hours, however. In *Linneman v. Vita-Mix Corp.*, the defendant corporation challenged plaintiffs' fee request, so the court required filing of a redacted public version and submission of unredacted hours under

seal. The court found that "Class Counsel have overused the work product privilege to redact innocuous details that do not reveal an attorney's mental impressions or judgments about the case," and invited counsel to re-submit their hours in view of her comments. 394 F. Supp. 3d 771, 784 (S.D. Ohio 2019), *rev'd on other grounds* 970 F.3d 621 (6th Cir. 2020).

Shielding billing because of Plaintiffs' conclusory and blanket claim of privilege would assign the citizens of Flint fewer rights than a kitchen appliance company.

## C. Review is necessary to verify the claimed common benefit work has occurred, and CCAF wishes to adversarially test the Fee Motion.

Plaintiffs may argue that the summary information they provided suffices to grant a $202 million fee award, but no other than Mr. Shkolnik questioned the common benefit time logged in this case.

"The interest of class counsel in obtaining fees is adverse to the interest of the class in obtaining recovery because the fees come out of the common fund set up for the benefit of the class." *Rawlings*, 9 F.3d at 516. "In class-action settlements, the adversarial process—or … 'hard fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is allocated between the class representatives, class counsel, and unnamed class members." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013). For this reason, the Second Circuit appointed *amicus* counsel to argue in support of the district court's decision to limit contingency fees. *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 121 n.4 (2d Cir. 2014). There, *amicus* counsel vindicated the district court's concern that "overcompensation of attorneys would take away money from needy plaintiffs, and…[its] rightful[] sensitiv[ity]

to the public perception of overall fairness." *Id.* at 127. Even without an operative "clear sailing" clause, a common fund settlement structure results in the same "diluted—indeed, suspended" "adversary system." *Goldberger v. Integrated Res.*, 209 F.3d 43, 52 (2d Cir. 2000).[4]

Without providing detailed hourly billing, the Fee Motion cannot be granted. It does not suffice that class members can make "generalized arguments about the size of the total fee"; the notice must enable them to determine *which* attorneys seek *what* fees for *what* work. *Mercury Interactive*, 618 F.3d at 994. The fee request fails to provide this basic information and thus undermines Rule 23(h)'s policy of "ensur[ing] that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee." *Id.*

More than usual, the claimed common benefit work in this case should be scrutinized. Counsel have an incentive to classify as much work as "common benefit" as possible to make the unified fee petition more impressive. The possibility that Plaintiffs' Counsel shifted work into the "common benefit" category is not merely speculative. According to Mr. Shkolnik's sworn testimony, it actually occurred in his case. ECF No. 444-2, PageID.14146-47. Settlement claimants are entitled to get to the bottom of this issue themselves by reviewing detailed hourly billing; "the distribution of fees must bear some relationship to the services rendered." *In re "Agent Orange" Prods.*

---

[4] The Settlement forbids defendants from taking a position of the fee request "[u]nless requested to do so by the Federal Court." PageID.54160. The Hall Objectors urge the Court to make this request because it appears that the state defendants, at least, might assist the Court in reviewing the Fee Motion. Objection, PageID.60223.

*Liab. Litig.*, 818 F.2d 216, 223 (2d Cir. 1987). Likely, Class and Liaison Counsel will each reassert that no misclassified common benefit time or costs wound up in the Fee Motion, but the lack of adversarial testing ill serves Flint residents.

As in *Shane Group*, "class counsel provided no backup whatsoever—no time records, no descriptions of work done—in support of their hours … [but just] a single page of documentation for each firm, listing only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm." 825 F.3d at 310. And Levy Konigsberg did not even provide this much—the Stern declaration only lists a purported total number of hours. The Fee Motion promised that "Levy Konigsberg, LLP…will provide its lodestar separately" (ECF No. 1458, PageID.57190), but the objection deadline expired 10 days ago and Flint residents still know little about millions of dollars the firm hopes to tax from every claimant.[5]

"Giving counsel the benefit of the doubt even in light of apparently improperly claimed hours…runs counter to the rule…that the burden to submit detailed records justifying hours reasonably expended falls upon the claiming attorneys." *Wininger v. SI*

---

[5] Mr. Stern opined to the press that "[t]he class action fairness center [sic] has no right to opine about the fees of the individuals who hired me." Beth Leblanc, *3 Flint residents challenge $202 million attorney fee plan*, The Detroit News (Mar. 30, 2021) https://www.detroitnews.com/story/news/local/michigan/2021/03/30/3-flint-residents-challenge-202-million-attorney-fee-plan/7060629002/. Of course, this is false for several reasons, not the least of which is that the *Hall Objectors* have standing to object, not their counsel. The Hall Objectors have an interest in Liaison Counsel fees *because they are being asked to pay them*. The Fee Motion seeks a class-wide contribution of 6.33% from every cent of the *gross* fund and an additional 17% from the Hall Objectors individual recoveries, which is split between Class and Liaison Counsel.

*Mgmt. L.P.*, 301 F.3d 1115, 1126 (9th Cir. 2002). Lodestar "serves little purpose as a cross-check if it is accepted at face value." *In re Citigroup Secs. Litig.*, 965 F. Supp. 2d 369, 389 (S.D.N.Y. 2013). A district court "would do violence to its judicial obligations were it to accept the amounts claimed at their value" "where the documentation is inadequate." *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). To survive appellate review, it must undertake the factual finding necessary under Rule 23. *E.g., Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009); *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir. 1986).

### D.     Plaintiffs must also disclose claimed common benefits costs.

No costs should be awarded unless and until counsel provides detailed costs so that Hall Objections have an "opportunity for review, comment, or object[]" to the costs they're being asked to pay. *In re Polyurethane Foam Antitrust Litig.,* 2016 U.S. Dist. LEXIS 156339 (N.D. Ohio. Oct. 24, 2016).

Currently, the details of the claimed $7,158,987.33 in costs are vague, especially in the case of Levy Konigsberg, which reported only that "[t]he total amount of unreimbursed expenses incurred by LK directly … in connection with the prosecution of this litigation from inception through February 15, 2021 is $1,793,921.51." ECF No. 1458-3, PageID.57229. Each of the other firms reports broad categories of expenses, which makes it impossible to tell whether the costs contributed to the common benefit as claimed.

Direct review of costs sometimes reveals questionable charges. For example, Cohen Milstein and two other lead counsel recently provided detailed billing and costs for a class action settlement with Facebook. There, plaintiffs' firms (not Cohen Milstein

itself) seek reimbursement for two $5000 hotel rooms to cover a half-day mediation and a $1020.25 stay at a Detroit hotel. *See Adkins v. Facebook, Inc.*, No. 3:18-cv-05982, No. 323 at 24 (N.D. Cal. Mar. 8, 2021). The CMO was designed to prevent such shenanigans, but without an adversarial review, Flint residents cannot be certain.

Notably, plaintiffs in *Adkins* provided detailed hours and costs without demanding a court order, presumably because they knew that Facebook would vigorously protect its own rights. In contrast, Mr. Leopold for Cohen Milstein categorically refused to provide similar information in this case. ECF No. 1548-12, PageID.60317. And Mr. Stern for Levy Konigsberg, along with some more colorful language, advised: "Unless ordered by a court, I will provide you <u>nothing</u>." ECF No. 1548-10, PageID.60307.

Hall Objectors therefore seek a court order to confirm that poisoned Flint claimants have the same right to examine billing as billion-dollar social media platforms.

## II. Additional discovery is justified.

In Section I, the Hall Objectors seek access to material that is best considered part of the Fee Motion—material that Plaintiffs offer to submit *in camera* to the Court, and have submitted under the CMO to the Special Master. The facts of this case also suggest the necessity of targeted discovery from Class and Liaison Counsel.

Hall Objectors file these discovery requests in the instant motion rather than serving discovery because counsel has made clear that unless ordered they "will provide you <u>nothing</u>." *Id.* Justice delayed is justice denied, so Hall Objectors move for an order directing Plaintiffs to file or serve narrowly-tailored discovery expeditiously, so that issues pertaining to fees can be briefed well before the July 12 fairness hearing.

Although objectors are "not automatically entitled to discovery," if the district court does not have sufficient facts before it to intelligently approve, it is error to deny discovery. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 (6th Cir. 1984). Here, the record regarding fees omits information Co-Liaison Counsel itself found indispensable, and objectors intend to develop the record and enhance the proceedings with limited discovery. "[T]he contribution a particular class member's attorney [can make], by providing an adversarial context in which the district court could evaluate the fairness of attorneys' fees, [is] substantial." *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 743-44 (3d Cir. 2001) (cleaned up).

Leeway for objector discovery is greater when the dispute goes to the fee petition rather than second-guessing the merits of the underlying litigation. Objectors should receive "an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request." 5 Moore's Federal Practice § 23.124[4] (Matthew Bender 3d ed. 2009); *see also In re Capital One TCPA Litig.*, No. 12-cv-10064, Dkt. 209 (N.D. Ill. Oct. 30, 2014) (granting objector's motion to lift stay to obtain discovery regarding class counsel's fee request); *Bowling v. Pfizer, Inc.,* 159 F.R.D. 492, 498 (S.D. Ohio 1994) (granting objectors' motion for discovery regarding attorneys' fees); *In re Master Key Antitrust Litigation*, MDL No. 45, 1977 WL 1545, 1977 U.S. Dist. LEXIS 12948, *3 (D. Conn. Nov. 14, 1977) (noting that the court had continued "the hearing for a month to allow objectors an opportunity to engage in discovery to test the fee petitions").

The Hall Objectors flag two discrete issues. First, fee sharing agreements between the firms must be disclosed, as Co-Liaison Counsel itself insisted three years

ago. Fee sharing agreements warp the incentives of attorneys to bill in a case, and the Hall Objectors (and the Court) should understand what the agreements contemplated. Additionally, because plaintiffs' firms disagree about the allocation of fees, the Court has a responsibility to independently set a just award for each firm.

Second, Napoli Shkolnik's misrepresentation of dozens of contract attorneys as "associates" necessitates discovery of contract attorney costs and agreements. Because Plaintiffs' Counsel permitted Napoli Shkolnik to misrepresent its contract attorneys as $500/hour associates to the tune of $11 million, Flint Claimants deserve know whether other firms submitted similar misrepresentations and the actual costs of these attorneys.

### A. Fee sharing agreements among the firms must be publicly disclosed, as Co-Liaison Counsel correctly argued three years ago.

It is not sufficient that class members are able to make "generalized arguments about the size of the total fee"; the notice must enable them to determine *which* attorneys seek *what* fees for *what* work. *Mercury Interactive*, 618 F.3d at 994.

For this reason, secret fee sharing agreements violate Rule 23(h).

Hunter Shkolnik correctly declared that "secretive agreements are detrimental to both the class and individual litigants." ECF No. 444-2, PageID.14140. Fee-sharing agreements can completely blunt the incentive for attorneys to "rein in and track 'common benefit' lodestar work being handed out by [lead counsel] to law firms they have side fee-sharing agreements with." *Id.*

While Mr. Shkolnik averred that he would "put an end to these agreements that has led to the allegations of ethical violations by me" (*id.*) his firm instead apparently entered a previously-undisclosed fee sharing agreement of its own. Class and Liaison

Counsel report that they "agreed *ex ante*" on a fee structure and percentages. Fee Motion, PageID.57182. For most recovery, Liaison and Class Counsel agreed to split common benefit fees 50/50 (*id.*), and to the extent this was agreed in advance, neither side would have any incentive to scrutinize the billing. This is because misclassified charges could not affect other firms bound by the 50/50 fee sharing agreement. Whether the attorneys exaggerate their hours or bill the class conscientiously, the bottom-line distribution of attorneys' fees would not change. As Napoli Shkolnik's expert Prof. Maureen Carroll wrote, "undisclosed assessment and allocation agreements involve a significant risk of self-dealing" because "Counsel who have entered into such agreements may give preference to other signatories in the assignment of common benefit work, approve or *fail to object to work that is not properly compensable*, or otherwise make decisions based on factors other than shared client interests." ECF No. 444-3, PageID.14181 (emphasis added).

In fact, Class and Liaison Counsel might *prefer* if claimed common benefit work were exaggerated, because this would mean their joint application appears more proportional. Stephen J. Choi, Jessica Erickson, & Adam C. Pritchard, *Working Hard or Making Work? Plaintiffs' Attorney Fees in Securities Fraud Class Actions*, 17 J. EMPIRICAL LEGAL STUD. 438, 464 (2020) (empirically supporting the idea that lodestar "make work" occurs regularly in megafund class actions "especially in cases with multiple lead counsel"). This may help explain how Napoli Shkolnik lists $11 million worth of temporary contract attorney time that no paying client would reimburse significantly above cost. Hall Objection, PageID.60241-42. Other firms simply have no incentive to

curtail such practices when they are bound by a fee sharing agreement. Such agreements can also conceal questionable fee splitting arrangements.[6]

Even prior to the enactment of Rule 23(h), the Second Circuit rejected the notion that class counsel may "divide the award among themselves in any manner they deem satisfactory under a private fee sharing agreement." *Agent Orange,* 818 F.3d at 223. "Such a division overlooks the district court's role as protector of class interests under Fed. R. Civ. P. 23(e)." *Id.* Allowing attorneys to divvy up their own fees out of public view is "inconsistent with well-established class action principles and basic judicial standards of transparency and fairness." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008) (reversing a district court's decision to delegate fee awards to a five-firm committee).[7] *See also* Carroll Decl., ECF No. 444-3, PageID.14181.

---

[6] For example, in the *State Street* securities litigation, it was discovered that lead counsel agreed to pay $4.1 million or 5.5% of fees to a law firm that had done no work in the case, but who had provided donations and free rent to a state politician with oversight responsibility, who was later convicted of accepting bribes. *Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.*, No. 11-10230-MLW, 2020 U.S. Dist. LEXIS 33552, at *70-*73 (D. Mass. Feb. 27, 2020). To be clear, Hall Objectors have no reason to suspect such a deal exists here, but the *State Street* arrangement was only uncovered fortuitously because a special master was appointed investigate unrelated errors.

[7] The Fifth Circuit arguably limited *High Sulfur* to settlements where an "agreement among all" plaintiffs' counsel does not exist as to fee sharing. *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 355 (5th Cir. 2019) (vacating and remanding fee award). The Sixth Circuit likely would take the same approach. *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996). No such unanimity exists here. Four firms representing thousands of clients objected to the proposed fee distribution. ECF Nos. 1556 & 1562. While *Bowling* affirmed the denial of discovery and only an *in camera* inspection of fee sharing agreement, the more recent *Shane Group* opinion suggests that *in camera* inspection would be inadequate.

The Second Circuit decreed that "in all future class actions counsel must inform the court of the existence of a fee sharing agreement at the time it is formulated." *Id.* at 226; *see also In re FPI/Agretech Sec. Litig.*, 105 F.3d 469, 473-74 (9th Cir. 1997) (citing favorably *Agent Orange*); *see also In re Diet Drugs Prods. Liab. Litig.*, 401 F.3d 143, 173 (3d Cir. 2005); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 781 (6th Cir. 1996) (upholding a district court's requirement of *in camera* disclosure of a fee sharing agreement). Class and Liaison Counsel have failed to do this, even though Mr. Shkolnik insisted it should be done.[8]

For these reasons, the Court should inquire into and, if appropriate, abrogate the secret fee sharing agreements. Class Counsel could not deny the existence of such agreements three years ago (ECF No. 473, PageID.14905-06), and Plaintiffs apparently admit to an *ex ante* deal between Liaison and Class Counsel. Fee Motion, PageID.57182. "The existence, and extent, of the side fee deals, and percentages should have been disclosed to the Court and other parties when … PEC members sought appointment to their respective positions." ECF No. 479, PageID.15149.

Plaintiffs should not only disclose their current terms (to apparently split most fees 50/50 between Class and Liaison Counsel), but the *entire* content of any fee-sharing agreements struck, whether written or unwritten. The Court should further require the

---

[8] Hall Objectors note that an individual's retention package, mistakenly sent to the Court, purported to retain "the law firm of Napoli Shkolnik PLLC," but in fact executed a contract with two different firms that have never appeared in this case. Presumably fee sharing agreements between these entities exist. The retention package was formerly filed at ECF No. 1575 prior to the Court striking it. ECF No. 1582. Hall Objectors could file a carefully-redacted version of the document to remove all personally-identifying information altogether, if it would assist the Court.

production of every fee sharing agreement with any firm, vendor, or other entity that stands to receive money from common benefit fees, including all 30 firms with declarations attached to the Fee Motion. The Hall Objectors agree with Professor Carroll: "Finally, by hiding important information about common benefit work from judicial view—even if temporarily—private, undisclosed assessment and allocation agreements hinder a court's exercise of its authority and obligation to conduct mass tort proceedings in a fair and efficient manner." ECF No. 444-3, PageID.14182.

## B. Counsel should also disclose their actual costs and agreements concerning contract attorneys.

The Court should order the disclosure of all invoices and agreements covering temporary contract attorneys submitted with the billing. As detailed in the Hall Objection, Napoli Shkolnik appears to have submitted about $11 million worth of such time, misleadingly attributed to $500/hour "associates." PageID.60241-43. Corporations would never tolerate this kind of markup, and Hall Objectors are entitled to know the actual costs paid that Co-Liaison Counsel proposes to pass on to class members at perhaps ten times their actual market rate.

Other courts have required disclosure of contract attorney costs—even where counsel did not misrepresent them as associates. For example, in *Anthem*, the court learned that "non-salaried contract and staff attorneys' hourly rates ranged from $25.00 to $65.00." 2018 U.S. Dist. LEXIS 140137, at *130. The *Polyurethane* court reviewed a chart of contract attorneys *in camera* and observed "there is absolutely no excuse for paying these temporary, low-overhead employees $40 or $50 an hour and then marking up their pay ten times for billing purposes." *In re Polyurethane Foam Antitrust Litig.*, 168

F. Supp. 3d 985, 1012-13 (N.D. Ohio. 2016) (cleaned up).[9] In *State Street*, a special master extensively reviewed contract attorney agreements. *Ark. Teacher Ret. Sys. v. State Street Bank & Tr. Co.*, 2018 U.S. Dist. LEXIS 111409, at *245 (D. Mass. May 14, 2018).

The cause for disclosure is much stronger in this case where Napoli Shkolnik attempted to pass off dozens of contract attorneys as its own associates. Hall Objection, PageID.60241-43. Liaison Counsel should be compelled to provide *all* invoices and agreements pertaining to these "associates." The same should be asked for all contract attorneys that appear in any firm seeks payment for through the Fee Motion. While other firms, like Cohen Milstein, appear to have appropriately identified their contract attorneys, Hall Objectors cannot be confident they understand the scope of the phenomenon because Liaison Counsel feels free to disclose no information about attorneys whatsoever in the case of Levi Konigsberg, and false characterizations of scores of "associates"—many more associates than the firm even employees—in the case of Napoli Shkolnik. These deficient and misleading declarations underscore that whatever "audits" may have occurred under the CMO could not possibly vindicate claimants' due process rights.

## III. Hall Objectors' requests will not interfere with ongoing litigation.

Rule 23(h) rights belong to each class member. Thus, normally the best way to fully cure a Rule 23(h) deficiency like the one here is to require full disclosure to the class on the docket and on the settlement website. By its terms, Rule 23(h) requires then giving "the entire class and not just the [objector] here—the opportunity to review class

---

[9] *Shane Group*, decided after this order, strongly suggests the submission should have been public or at least accessible to the objectors.

counsel's completed fee motion and to submit objections if they so choose." *Allen v. Bedolla*, 787 F.3d 1218, 1226 (9th Cir. 2015).

While the Settlement goes beyond the class action, the same aims militate in favor of increasing accountability and transparency. The public's interest in transparent court proceedings cannot be sacrificed at the altar of efficiency. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019). In *Nat'l Prescription Opiate*, for example, the Sixth Circuit recognized the "importance of [a retail pharmacy sales database] in educating the public about and drawing attention to the opioid crisis." *Id.* at 934. No class had yet been certified. *Shane Group*, which concerned a settlement with the largest health insurer in the state of Michigan observed that "by definition some members of the public are also parties to the case." 825 F.3d at 305 (cleaned up). The Fee Motion draws intense public interest from Flint residents. *See* ECF No. 1555-1 (Flint City Council resolution requesting an "expert, independent review" of the Fee Motion).[10]

─────────────────────

[10] Hall Objectors support this suggestion, particularly for setting an appropriate fee cap for IRC fees, as was done in *NFL Players* litigation. *See* Hall Objection, PageID.60236; *see also High Sulfur*, 517 F.3d at 234 & n.21 (observing that special masters can be used to recommend reasonable fee allocations through an open and transparent process). Fed. R. Civ. P. 23(h)(4) provides, "The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D)." In turn, Rule 54(d)(2)(D) provides that "the court may refer issues concerning the value of services to a special master under Rule 53 without regard to the limitations of Rule 53(a)(1), and may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Any court-appointed expert would require access to at least the information requested by this motion.

That said, the appointment of a special master to provide a report and recommendation on fees would not diminish Hall Objectors' own due process rights to scrutinize bills the Fee Motion suggests they pay.

Transparency also instills "[p]ublic confidence in the fairness of attorney compensation in class actions" which "is vital to the proper enforcement of substantive law." *Laffitte v. Robert Half Int'l*, 376 P.3d 672, 688-92 (Cal. 2016) (Liu, J., concurring). Principles of openness should thus be observed "with particular strictness" in class and mass tort settings. *Shane Group*, 825 F.3d at 305.

Under ordinary circumstances, billing information should be publicly filed.

However, different procedures could be adopted to avoid interfering with ongoing litigation. Plaintiffs may be concerned that the remaining defendants will glean strategic information from their hourly descriptions and invoices. To the extent that the Court shares this concern, Hall Objectors propose that hours and costs be filed under seal and that their counsel be given access to all requested information under protective order, so they cannot share it with anyone not working for the Hall Objectors.

Whether or not the Court agrees that the hours and costs should be publicly filed on the docket, Hall Objectors request native production of such files. That is, hours maintained in a spreadsheet or database should be produced as a spreadsheet or database for easier analysis. The Fee Motion appeared to be intentionally degraded in violation of the local rules.[11] Plaintiffs should not to do that with the hours and costs.

## IV.   Hall Objectors' requests will not delay recovery, but may enhance it.

The requested review, which is necessary to vindicate the due process rights of Flint residents, will not slow settlement administration in the slightest. Assuming the Court grants final approval to the underlying Settlement, the Court's decision on

---

[11] Hall Objection, ECF No. 1548, PageID.60241 n.9.

attorneys' fees would not delay class recovery so long as the decision issues before the Settlement Administrator receives claims on August 26. In fact, the Court could probably issue its fee decision even later because the Settlement contemplates several mechanisms of reviewing denied claims. Settlement, PageID.54168-71. The Settlement Administrator advises Flint residents that, absent appeals, "payments could be issued in the first quarter of 2022." www.officialflintwatersettlement.com/faq.

Much less time than that is required to review the hourly billing. The requested information can be provided to the Hall Objectors within days—most of it already exists and has already been submitted to the Special Master. Any privilege redactions can be accomplished quickly because most billing descriptions simply don't contain privileged material. Class counsel in *Anthem*, including Cohen Milstein, produced selectively-redacted billing records for 53 different law firms and 78,892.5 hours of claimed billing just 10 days after being ordered to do so by Judge Koh. *Compare Anthem*, 2018 U.S. Dist. LEXIS 226119 (N.D. Cal. Mar. 16, 2018) *with Anthem*, No. 15-MD-02617-LHK, Dkt. 1002 (N.D. Cal. Mar. 26, 2018).

Here, the Court could order similar production within, say, three weeks, for a schedule something like this:

- May 14 – Plaintiffs provide requested material to Hall Objectors.
- June 11 – Hall Objectors supplement their objection in view of material.
- June 25 – Plaintiffs and any other parties or objectors file response to Hall Objectors' supplemental objection.

All of this can be briefed comfortably before the July 12 fairness hearing—which is itself months before any delay in awarding fees could plausibly delay class recovery.

The motion will not delay or deny justice in this case—it does the reverse. Reaching a fair fee award will improve the lives of thousands of Flint residents for years to come. While the Settlement only represents a partial settlement, many Flint residents were systemically disadvantaged to begin with and need all the help they can get.

Due to the settling defendants' negligence and lies about Flint's water, many young claimants will struggle to become their best selves, or may never do so at all. Some claimants will endure hardship for decades because lead-induced impairment stacks on top of existing social, racial, economic, and geographical disadvantages. The Court should ensure that claimants receive every drop of assistance they can from this Settlement. Claimants with developmentally-scarred brains will have to cope with their injuries long after every Settlement dollar has been depleted and every attorney paid.

## CONCLUSION

The Court should require Plaintiffs to produce their claimed hourly billing, and detailed costs. Further, the Court should direct Plaintiffs' Counsel to reveal all fee sharing agreements with any entity that stands to receive common benefit fees, and all contract attorney invoices and agreements covering contract attorneys claimed to be part of common benefit fees.

To the extent that the Court does not believe public filing would be appropriate, it should allow Hall Objectors' counsel to examine the records under the Protective Order, and allow similar access to any appointed expert, objector, or settling defendant who intends to opine on Plaintiffs' Fee Motion.

Dated: April 9, 2021

/s/ M. Frank Bednarz
M. Frank Bednarz (IL ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Hall Objectors*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on April 9, 2021, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ M. Frank Bednarz
M. Frank Bednarz