# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith Levy |
| | Mag. Mona K. Majzoub |

## HALL OBJECTORS' MOTION TO ATTEND FURTHER CONFERENCES WITH SETTLING COUNSEL AND FOR SETTLING PARTIES TO PROVIDE A DESCRIPTION OF NON-PUBLIC HEARINGS

For the reasons stated in the attached Memorandum in support, Objectors Raymond Hall, Robert Hempel, and Ashley Jankowiak ("Hall Objectors") are unfairly prejudiced by non-public proceedings regarding the Settlement. By definition, the settling parties do not represent objectors' interests. Even if they did, the Hall Objectors cannot know whether and how to respond to essentially *ex parte* communication from settling parties that are pledged to not oppose the settlement or even the fee request. Hall Objectors move the Court for an order ensuring that represented objectors will be invited to further conferences with settling counsel, and also requiring the settling parties to summarize the two off-the-record conferences that have occurred since objections have been filed in this case.

As Local Rule 7.1 requires, the Hall Objectors conferenced with the parties to ascertain whether they might consent to this motion. Mr. Stern opposes the motion; Mr. Shkolnik opined that the relief requested is "sole[l]y within the Court's discretion,"

but did not provide his position on the relief sought at this time. Mr. Leopold advised

"[c]lass counsel objects to such filing." The State and McLaren defendants oppose the

relief sought by this motion, and the undersigned has not heard from the remaining

defendants at this time. The Anderson and Chapman objectors support the motion,

and the undersigned has not heard from the remaining objectors at this time.


Dated: May 10, 2021        /s/ M. Frank Bednarz____
                        M. Frank Bednarz (IL ARDC No. 6299073)
                        HAMILTON LINCOLN LAW INSTITUTE
                        CENTER FOR CLASS ACTION FAIRNESS
                        1145 E. Hyde Park Blvd. Unit 3A
                        Chicago, IL 60615
                        Phone: 801-706-2690
                        Email: frank.bednarz@hlli.org

                        *Attorneys for Hall Objectors*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith Levy |
| | Mag. Mona K. Majzoub |

**MEMORANDUM IN SUPPORT OF HALL OBJECTORS' MOTION**
**TO ATTEND FURTHER CONFERENCES WITH SETTLING COUNSEL**
**AND FOR SETTLING PARTIES TO PROVIDE A DESCRIPTION OF**
**THE NON-PUBLIC HEARINGS**

## STATEMENT OF ISSUES PRESENTED

The issues presented in this Motion are:

1)      Whether objector parties—whose interests diverge from settling counsel and who have pending motions before the Court—are entitled to attend off-the-record and otherwise effectively *ex parte* conferences with settling attorneys pledged to defend the Settlement and to not oppose the fee request.

2)      Whether, to ameliorate the effectively *ex parte* communication and level the playing field, the Court should require settling parties to summarize for objectors all non-public proceedings that have occurred since objections were filed in this case.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Canon 3A(4) of the Code of Conduct for United States Judges

28 U.S.C. § 753

*Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016)

*Edgar v. K.L.*, 93 F.3d 256 (7th Cir. 1996)

*Nat'l Farmers' Org., Inc. v. Oliver*, 530 F.2d 815 (8th Cir. 1976)

*Devlin v. Scardelletti*, 536 U.S. 1 (2002)

# TABLE OF CONTENTS

Statement of Issues Presented ................................................................ ii

Controlling or Most Appropriate Authority ........................................ iii

Table of Contents .................................................................................... iv

Table of Authorities ................................................................................ v

Introduction .............................................................................................. 1

I.     Hall Objections must be invited to participate in further conferences, which must be recorded whether or not the Court or the settling parties may wish them to be sealed. .............................................................. 2

     A.    Counsel for the Hall Objectors should be allowed to participate in every conference with settlement counsel to avoid *ex parte* communication and provide adversarial presentation. .............................. 3

     B.    Objectors have a right to ensure that proceedings before the Court are recorded, and the Hall Objectors invoke that right. ........................... 7

     C.    The Court should default toward open proceedings given the strong class and public interests concerning settlement. ........................... 8

II.    Hall Objectors should be provided a complete summary of off-the-record conferences. .............................................................................................. 14

     A.    Bone lead testing and other issues pertain to the Hall Objection and merit a corrective description of the proceedings. ................................... 15

     B.    Settling parties must describe the conferences to reduce the prejudice to the objectors. .......................................................................... 19

Conclusion ............................................................................................... 21

Certificate of Service ............................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*BP Exploration & Prod. v. Claimant ID 100246928,*
  920 F.3d 209 (5th Cir. 2019) ................................................................. 9

*Brown & Williamson Tobacco Corp. v. F.T.C.,*
  710 F.2d 1165 (6th Cir. 1983) ............................................................... 8

*In re Cendant Corp.,*
  260 F.3d 183 (3d Cir. 2001) .................................................................. 9

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Loan Litig.,*
  418 F.3d 277 (3d Cir. 2005) ............................................................... 4-5

*Devlin v. Scardelletti,*
  536 U.S. 1 (2002) .................................................................................. 7

*In re Dry Max Pampers Litig.,*
  724 F.3d 713 (6th Cir. 2013) ........................................................... 4, 11

*Edgar v. K.L.,*
  93 F.3d 256 (7th Cir. 1996) .................................................................. 5

*EEOC v. Sears, Roebuck & Co.,*
  839 F.2d 302 (7th Cir. 1988) ................................................................ 7

*In re Kensington Int'l, Ltd.,*
  368 F.3d 289 (3d Cir. 2004) ........................................................... 5-6, 7

*Miller v. Ind. Hosp.,*
  16 F.3d 549 (3d Cir. 1994) ................................................................... 9

*Nat'l Farmers' Org., Inc. v. Oliver,*
  530 F.2d 815 (8th Cir. 1976) ................................................................ 8

*In re Nat'l Prescription Opiate Litig,*
  927 F.3d 919 (6th Cir. 2020) .......................................................... 7, 14

*Pearson v. Target Corp.,*
  893 F.3d 980 (7th Cir. 2018) ................................................................ 8

*Pittsburgh v. Simmons*,
    729 F.2d 953 (3rd Cir. 1984)............................................................................ 8

*Shane Group, Inc. v. Blue Cross Blue Shield*,
    825 F.3d 299 (6th Cir. 2016)..............................................2, 8-9, 11, 14, 19

*Thompson v. Greene*,
    427 F.3d 263 (4th Cir. 2005).......................................................................... 4

*Young v. United States ex rel. Vuitton et Fils S.A.*,
    481 U.S. 787 (1987)......................................................................................... 6

## Rules and Statutes and Other Authority

Canon 3A(4) of the Code of Conduct for United States Judges.................. 2, 3-4, 6, 20

28 U.S.C. § 753 .......................................................................................... 3, 7, 8

Fed. R. App. P. 10(c)....................................................................................... 20

Alexandra Lahav, *Fundamental Principles for Class Action Governance*,
    37 Ind. L. Rev. 65 (2003)............................................................................ 19

## INTRODUCTION

The Hall Objectors have a motion pending before the Court and objected to the pending fee request in this case. ECF. Nos. 1548 & 1586.[1] Other objectors have filed unresolved and significant objections, notably Dr. Lawrence Reynolds' February 26 objection focused on X-Ray fluorescence (XRF) bone lead tests, which has generated significant interest in the Flint community. ECF No. 1436.

The Court has twice conducted off-the-record and effectively *ex parte* conferences with only settling counsel who are adverse to objectors. In the first such conference, on March 1, the Court apparently convinced Class Counsel during a 26-minute off-the-record discussion to withdraw a then-recently filed motion for an immediate suspension of XRF bone testing. ECF. No. 1450, PageID.57092. More recently, last Monday, the Court conducted a completely off-the-record conference memorialized with a minute entry "'In-chambers' status conference with settlement counsel held on 5/3/2021; (Court Reporter: None Present, Not on the Record)."

Hall Objectors have no idea what might have been discussed and whether it pertains to their Objection or pending motion. This uncertainty is the entire problem with such unopposed non-transparent proceedings; the Hall Objectors are handicapped

---

[1] The Hall Objectors filed their motion for discovery almost a month ago in hopes that any discovery could be provided and supplemental briefing complete well in advance of the July 12 fairness hearing. ECF No. 1586, PageID.60979. The Court ordered that response to the motion should be addressed in the motion for final approval—*i.e.* not until May 27. ECF No. 1590.

because they cannot know what representations settling parties have made to the Court, and cannot respond to any errors, concerns, or arguments that might have been aired.

Therefore, the Hall Objectors move the Court for an order permitting the attendance of their counsel at any hearing pertaining to the settlement where settling counsel are present. Essentially *ex parte* conferences should not occur without the assent of opposing parties, including the objecting class members. If the Court decides such hearings should be sealed, the undersigned will of course preserve their confidence.

Additionally, in order to remedy the past *ex parte* proceedings, the Hall Objectors move for the settling parties to swear to a full and impartial accounting of what transpired during these two off-the-record conferences. Such account may be filed under seal, if necessary, but Hall Objectors reserve their right to challenge any excessive redactions given the "great importance to the public"—both unrepresented class members and Flint residents. *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 307 (6th Cir. 2016).

## I.   Hall Objections must be invited to participate in further conferences, which must be recorded whether or not the Court or the settling parties may wish them to be sealed.

Further hearings concerning the settlement should be conducted on the record and with the participation of objectors adverse to the settling parties. Three reasons demand objector participation and, where appropriate, public proceedings.

First, *ex parte* communication with settling parties violates Canon 3A(4) of the Code of Conduct for United States Judges, which forbids such conferences, and certainly when objections and other motions remain pending before the Court. The

attendance of objectors ensures their due process rights are preserved and that the Court receives adversarial presentations.

Second, the objectors are parties to the pending settlement and therefore have the right to invoke the basic protection of 28 U.S.C. § 753, which requires that hearings should be recorded to create a public record when parties request it. The Hall Objectors hereby invoke this right.

Third, American courts are subject to powerful presumptions in favor of open and public proceedings, especially in class actions and in cases of great public interest. Not many cases have more public interest than this one. Thousands of Flint residents were forced to decide whether they should expose themselves to ionizing radiation in order to secure a larger slice of the settlement, and were forced to do so after Class Counsel moved to cease such testing, only to withdraw the motion after a mysterious 26-minute conference. Secrecy not only hurts the process, it can injure the public at large.

Conferences may be closed if sensitive matters are discussed, but the presence of objectors ensures a vigorous and fair proceeding, and the creation of a record ensures that necessary redactions may be narrowly tailored to ensure appropriate transparency.

## A.  Counsel for the Hall Objectors should be allowed to participate in every conference with settlement counsel to avoid *ex parte* communication and provide adversarial presentation.

Canon 3A(4) of the Code of Conduct for United States Judges provides that, with specific exceptions not applicable here, "a judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their

lawyers." This rule exists to ensure that "every person who has a legal interest in a proceeding, and that person's lawyer, [have] full right to be heard according to law." *Id.* Off-the-record hearings with settling counsel abridge objectors' rights and must cease immediately.

The Court may have believed that the conferences were not actually *ex parte* because counsel for plaintiffs and (some) defendants attended, but this misunderstands the current relationship between the parties. Having reached settlement, the settling parties are no longer adversaries—the objectors are. *E.g., In re Dry Max Pampers Litig.,* 724 F.3d 713, 718 (6th Cir. 2013) ("in class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class"). Defendants, Class Counsel, Liaison Counsel, are all contractually obligated to advance the proposed settlement toward approval. Settlement, PageID.54192. In fact, the settling parties bound themselves to attempt to "revive" the proposed settlement even if this Court finds that parts of it are unfair, unreasonable, or inadequate. PageID.54180. And—most significantly for the Hall Objectors' objection to the attorneys' fee request—the defendants remain contractually forbidden from taking a position on attorneys' fees. PageID.54160. Thus, not one person who attended the unrecorded conferences on March 1 and May 3 could speak in favor of objectors' interests. "As a general rule, *ex parte* communications by an adversary party to a decision-maker in an adjudicatory proceeding are prohibited as fundamentally at variance with our conceptions of due process." *Thompson v. Greene,* 427 F.3d 263, 269 n.7 (4th Cir. 2005) (cleaned up). Omitting objectors therefore constitutes "*ex parte*" communication. *In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee*

*Second Mortg. Loan Litig.*, 418 F.3d 277, 319 (3d Cir. 2005) (reversing and remanding approval of settlement held after district court directed class counsel to prepare findings "in an *ex parte* closed door session held before the settlement hearing, when counsel for [objectors] were not present").

    *Edgar v. K.L.* makes the improper *ex parte* character of these conferences clear. 93 F.3d 256 (7th Cir. 1996) (Easterbrook, J.) (granting mandamus). In *K.L.*, a district court judge appointed, with all parties' consent, a panel of experts. Later, the defendants learned that the judge had discussed the case and possibly an unfinished draft report with one of the experts. *Id.* at 257-58. The defendants moved for discovery and disqualification, which the district court denied. But the Seventh Circuit easily identified the *ex parte* nature of the problem. "Did any meeting between judge and experts touch the merits, or procedures affecting the merits? We cannot know, because the district judge has blocked discovery from other participants and has declined to state on the record his own memories of what happened." *Id.* at 258. While the petitioners in *Edgar* of course did not know what was discussed, the panel reached a "natural" inference that the meetings concerned the merits. *Id.* The Seventh Circuit "did not hesitate to disqualify the district court judge under § 455(a) even though there was no evidence of actual bias." *In re Kensington Int'l, Ltd.*, 368 F.3d 289, 308 (3d Cir. 2004).

    Off-the-record conferences in this case are especially prejudicial because the only truly adverse parties—the objectors—cannot learn what was discussed. The March 1 hearing in particular appears to have reached the merits of Class Counsel's motion, concluding it to be "noncompliant with the Court's practice guidelines as well as the duties of the counsel." ECF No. 1450, PageID.57092. But even if both conferences

could be characterized as ministerial, no further such *ex parte* conferences should occur. Canon 3A(4), as amended in 2009, bars ***all*** *ex parte* communications (with limited exceptions), not merely communications to the merits, as the rule said at the time of *K.L.*

Because these *ex parte* conferences also occurred without recording, "there was no way for [objectors] to adequately respond to or counter facts presented by their adversaries because they had no way of knowing what was said during those unrecorded meetings." *Kensington Int'l*, 368 F.3d at 310-11 (granting mandamus to disqualify judge). In *Kensington*, a district judge and his appointed advisors engaged in numerous *ex parte* meetings with all parties and without objection until one of the parties grew dissatisfied. The Third Circuit found that long acquiescence to the practice and "equal opportunity" nature of the meetings provided no defense for the conduct. "To fulfill the principles and objectives of Canon 3 of the Code of Conduct, which proscribes *ex parte* communications except with consent, affirmative consent is dictated. The record reveals no such consent was ever given." *Id.* at 311.

A key problem with such conferences is how they short-circuit due process. This occurs because "*ex parte* communications run contrary to our adversarial trial system. The adversary process plays an indispensable role in our system of justice because a debate between adversaries is often essential to the truth-seeking function of trials." *Id.* at 310. Violations of Canon 3A(4) cannot be "harmless error" because they pose fundamental fairness issues. *Cf. Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 809-10 (1987) (plurality opinion) (ethics concern presented there was not subject to harmless error analysis because it "undermines confidence" in the fairness of the

proceeding); *see also EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 357 (7th Cir. 1988) (applying *Young* to a civil case).

The Hall Objectors appreciate the uniqueness of this case; innovative procedures may sometimes be appropriate to shepherd such unwieldly litigation. But the essential characteristics of American courts—transparency, due process, and adversarial proceedings—are not disposable formalities. "Whatever value the *ex parte* meetings may have had in moving the … Cases along or creating a settlement-friendly atmosphere was outweighed by the attendant risks and problems." *Kensington Int'l*, 368 F.3d at 294-95; *see also In re Nat'l Prescription Opiate Litig,* 927 F.3d 919, 933 (6th Cir. 2020) ("'improper'" for district court to use right of public access as a "bargaining chip" to promote settlement).

## B. Objectors have a right to ensure that proceedings before the Court are recorded, and the Hall Objectors invoke that right.

Hearings must be recorded when any party requests it, as the Hall Objectors do here. "Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method," including "all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary." 28 U.S.C. § 753(a) & (b).

Objectors are parties for many purposes of § 753. While non-named class member objectors are not parties for *all* purposes, they are parties with the "power to preserve their own interests in a settlement that will ultimately bind them, despite their expressed objections before the trial court." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002).

And they are parties for the purposes of motion practice regarding the settlement. *Pearson v. Target Corp.*, 893 F.3d 980, 984 (7th Cir. 2018). By the same reasoning, objectors should be parties for the purpose of § 753, which is intended to preserve records for appeals.

Neither the Hall Objectors nor any of the other objectors adverse to the settling parties have assented to conducting substantial proceedings off-the-record. Thus, no further off-the-record conferences should occur now that the Hall Objectors have made their "right to a record" known. *Nat'l Farmers' Org., Inc. v. Oliver*, 530 F.2d 815, 817 (8th Cir. 1976) (granting "extraordinary relief" of mandamus to require district court to "hold no further off-the-record proceedings in this case which any party requests be recorded."); *see also Pittsburgh v. Simmons*, 729 F.2d 953, 955 (3rd Cir. 1984) (denying writ of mandamus that sought recusal of judge for holding off the record proceedings but noting that it "might well have voted to issue the writ" if the petitioner sought "a writ directing a verbatim transcription of the proceedings").

## C.  The Court should default toward open proceedings given the strong class and public interests concerning settlement.

The transparency of hearings is not only important for objectors to advance their cause, but also for class members and the public at large, who have an enormous interest in these proceedings. "The public has a strong interest in obtaining the information contained in the court record." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983). "In either the civil or the criminal courtroom, secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* at 1179 (quoted by *Shane Group, Inc. v. Blue Cross Blue Shield*,

825 F.3d 299, 305 (6th Cir. 2016)). This is why courts apply a "strong presumption in favor of openness" which can only be overcome by providing "compelling reason" and even then such sealing must be "narrowly tailored." *Shane Group*, 825 F.3d at 305. The Court must give reasons even if "neither party" objects to the secrecy. *Id.* at 306. In any event, as discussed above, the Hall Objectors (and likely other objectors) *do* object.

This presumption of transparency is even stronger in class actions and cases of intense interest to the public, like this case. "For example, in class actions—where by definition 'some members of the public are also parties to the [case]'—the standards for denying public access to the record 'should be applied . . . with particular strictness.'" *Id.* at 305 (quoting *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001)).

The presumption of transparency applies not just to sealed filings, but also to closed proceedings. *See, e.g., BP Exploration & Prod. v. Claimant ID 100246928,* 920 F.3d 209 (5th Cir. 2019) (denying Tampa Bay Buccaneers' motion to seal the courtroom and bar public access to the recording of oral argument in an appeal related to a claim against the BP class settlement). In *Cendant Corp.*, the district court sealed filings *and proceedings* related to bidding for the appointment of lead counsel. The Third Circuit found this untenable. "Even if a sealing order was proper at the time when it was initially imposed, the sealing order must be lifted at the earliest possible moment when the reasons for sealing no longer obtain." *Cendant Corp.*, 260 F.3d at 196. "The party seeking to seal any part of a judicial record bears the heavy burden of showing that 'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure.'" *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994).

The public has an especially strong interest in the March 1 hearing. Just days before this hearing, Dr. Reynolds filed his widely-reported objection pertaining primarily to the XRF bone testing—the very subject of the off-the-record proceedings. ECF No. 1436. Class Counsel—which owes a duty to unrepresented class members—filed a mostly-uncontradicted 14-page motion to immediately suspend XRF bone testing conducted using devices against the manufacturer's own recommendations. ECF No. 1443. The motion was in line with what certain objectors had been requesting, and continue to request. Notably this motion was also *supported* by defendant McLaren Hospital. *Id.* at PageID.55698. The motion was not the product of inexperienced or confused attorneys either. Class Counsel also had peculiar insight into XRF bone testing, having tried unsuccessfully to establish a bone testing center, apparently even contacting objector Dr. Reynolds, who declined the project for ethical concerns. ECF No. 1436, PageID.55026. Class Counsel also consulted with Drs. Andrew C. Todd and Karl John Jepsen, who swore he was unable to help establish a bone testing clinic because he had "not received written detailed protocols to replicate the existing assessment site, combined with challenges in purchasing XRF devices from a manufacturer that is not willing to confirm the device is acceptable for use on living humans." ECF No. 1497, PageID.58187. The motion itself describes the impasses Class Counsel encountered: that the manufacturer not only *emphatically* warns against pointing their devices at humans, but *refuses to sell* the devices to anyone who intends to use them on living people. ECF No. 1443, PageID.55705-10. Class Counsel's motion was thus credible, important, of high public interest, and pertained to the health and wellbeing of all Flint residents, including the absent class members that Class Counsel is duty-

bound to safeguard. *See Dry Max Pampers*, 724 F.3d at 718 ("the law relies upon the 'fiduciary obligation[s]' of…class counsel to protect [the class's] interests.").

But at a 6 pm hearing on March 1, which was not noticed on the docket, the Court apparently persuaded Class Counsel to withdraw their motion. Following a 26-minute off-the-record discussion, the Court found that "the motion must be withdrawn as noncompliant with the Court's practice guidelines as well as the duties of the counsel." ECF No. 1450, PageID.57092. Class Counsel's motion does not appear to violate any of the Court's practice guidelines, which is hardly surprising because they have correctly and professionally filed dozens of motions in this case alone. Whatever "duties of counsel" Class Counsel supposedly violated is of intense interest to Flint residents who needed to decide whether to expose themselves or their children to ionizing radiation to enhance the value of claims under the Settlement.

Thousands of Flint residents were forced to decide within weeks, and on an incomplete record, whether to expose their children to ionizing radiation in hopes of securing thousands of dollars of addition recovery. No reason whatsoever was given for conducting an off-the-record conference, yet these were clearly "adjudicative" and not "discovery" proceedings. *Shane Group*, 825 F.3d at 305. The proceedings resulted in the withdrawal of the motion that Class Counsel felt ethically compelled to file just hours earlier. As a result of these secretive proceedings, the public has been left in grave and possibly unnecessary doubt over the propriety of XRF bone lead testing.

Several challenges to the safety of XRF bone testing have been levelled, so the public had a unique interest in understanding why an apparently credible and serious motion on the subject was withdrawn. For example, Dr. Mona Hanna-Attisha, often

called the "Flint whistleblower," has publicly recommended against having these tests performed. "For so long, the people of Flint have felt, you know, experimented on, and rightly so, and this is another example of this injustice -- where something is being applied on them that is not tested, that has not been approved ... and also (produces) a massive underestimation of exposure." Ron Fonger, *Flint pediatrician who blew the whistle on water crisis won't recommend bone scans for kids*, mlive.com (Mar. 15, 2021), ECF No. 1494-6. "Bone scans are never a good idea for children ... there's risk and no benefit." *Id.* at PageID.58140. Dr. Hanna-Attisha opined:

> "It's a painful choice for a parent to have to make," she said. "Do I let my child be subject to equipment that was designed for inanimate objects -- not even animals ... when this is what may allow them to get resources or not?
>
> "It's ultimately up to the person (and) their family, but no, I wouldn't recommend it."

*Id.* at PageID.58141.

Objector Dr. Reynolds has likewise cautioned against the XRF testing, comparing it to the Tuskegee experiment, where black men were experimented on for decades without their consent so that researchers could learn the effects of untreated syphilis. *See* Ron Fonger, *Attorneys pull request to stop bone lead testing in Flint water settlement without explanation*, mlive.com (Mar. 3, 2021), available online at: https://www.mlive.com/news/flint/2021/03/attorneys-pull-request-to-stop-bonelead-testing-in-flint-water-settlement-without-explanation.html.

Against this, Liaison Counsel provided claimants with a four-page letter, not filed under the penalty of perjury or Rule 11, nor by doctors, but instead written by attorneys

who appear to owe no duty to any claimant they do not represent, and who have significant financial interest in the bone scanning clinic they established.[2] The letter assured potential claimants that XRF bone scanning is safe because, among other things, the experts Liaison Counsel retained served on EPA committees and so would not "allow any risk to the community." ECF No. 1455, PageID.57130. An imperfect kind of reassurance in litigation where the EPA is a defendant! Liaison Counsel wrote that radiation exposure "is much less than from a dental X-ray or from an X-ray taken of a bone." ECF No. 1454-1, PageID.57125.[3] Of course, this non-expert and unsworn

---

[2] The financial arrangement of the clinic is unclear. Whether or not Liaison Counsel has a direct financial stake in $500 fees charged by the center with a *de facto* monopoly, Liaison Counsel has an enormous financial interest in the *results* produced by the clinic. Liaison Counsel likely has at least one order of magnitude more bone lead test results for its clients than all other claimants combined, given that it has been running such tests since at least fall, and it only opened to non-clients for a few hours each Sundays from late February until April 25, 2021, perhaps 120 appointments in all. As discussed in below, bone test results are worth thousands or even tens of thousands of dollars to claimants who do not qualify for other categories under the Settlement. Because claimants in each age group split their portion of the settlement fund proportionally based on the share values of their claims, Liaison Counsel benefits financially by ensuring its bone scanning results are accepted. Liaison Counsel would secure even greater financial benefit when non-clients have limited access to bone tests, because it ensures non-clients will tend to have smaller shares of the settlement, locking in more contingency fees from Liaison Counsel's clients.

[3] Interestingly, Mr. Napoli later suggested that a pregnant woman would not need to be shielded from radiation because the test is *unlike* an x-ray: "the fetus would receive no radiation because the dose is restricted to a 1-centimeter area of the lower leg." Paul Egan, *Flint residents affected by water crisis may be getting exposed to harmful radiation*, Detroit Free Press: https://www.freep.com/story/news/local/michigan/flint-water-crisis/2021/04/28/flint-bone-scanner-radiation/4852861001/.

missive does not justify closing the March 1 conference, much less explain what transpired off the record.

Perhaps Liaison Counsel's letter is correct, and there is no harm to bone scanning. But either way, Flint residents deserve to know the exact circumstances that disposed of Class Counsel's motion. "Only the most compelling reasons can justify non-disclosure of judicial records." *Shane Group,* 825 F.3d at 305; *see also In re Nat'l Prescription Opiate Litig.,* 927 F.3d at 939-40. No reason at all exists here, and certainly none to conceal proceedings related to thousands for Flint residents receiving ionizing radiation in order to enhance their recovery under the proposed settlement.

## II.   Hall Objectors should be provided a complete summary of off-the-record conferences.

The Court should order remedial action to ameliorate the *ex parte* conferences. Both the March 1 and May 3 conferences should be described by settling counsel with detailed summaries that counsel swears under oath to be complete. Only in this way can objectors know what transpired and rebut any arguments and representations conveyed to the Court *ex parte*. Only in this way can objectors share equal footing with settling counsel in understanding the Court's views.

The settling parties may argue that the topics discussed at the off-the-record conferences have no bearing on any issues raised by the Hall Objectors' motion and objection. This is certainly untrue for the March 1 conference, which pertained to bone lead scanning, which is paramount to plan of allocation and therefore the pending fee request. Both fees to individually-retained counsel ("IRC") and the Special Assessments of 17%-27% that Class and Liaison Counsel request derive from each claimant's

individual recovery. For child claimants without contemporaneous blood testing (which most Flint residents lack), a bone test result of only 0.1 μg/g—which in all likelihood all humans have—increases the value of claims by 333%, or over $10,000 in the case of children under six. Of course, the settlement pot is fixed, so when one firm or group of firms (Liaison Counsel) controls the vast majority of bone test results, this draws recovery (and thus attorneys' fees) away from claimants who could not get a bone test before the deadline, including those who simply did not trust that the test was safe. The March 1 conference therefore directly pertains to the Hall Objection. The May 3 conference also likely dealt with objectors' motions or bone scanning—all relevant.

Of course, the only way to verify whether relevant business occurred is for the parties to describe what *did* transpire at the hearings. In any event, the right of public and oppose party access doesn't turn on findings of "relevance." Having held the conferences without objectors' consent and without using extemporaneous recording, the Court should correct the information asymmetry by requiring parties to provide a complete recounting of the proceedings under oath.

### A. Bone lead testing and other issues pertain to the Hall Objection and merit a corrective description of the proceedings.

The settling parties may argue that Hall Objectors are not entitled to a summary of these proceedings because they concerned "unrelated" issues like (1) bone scanning, (2) the Chapman plaintiffs' motion for discovery, (3) the Washington and Chapman plaintiffs' motion to extend the deadlines for bone scanning and medical causation reports, ECF Nos. 1714 & 1717, or (4) the Order to Show Cause Regarding Attorney

Mark Cuker, ECF No. 1716. "Relatedness" is not the standard for relief, but even if it were, all of these issues pertain to Hall Objectors' pending filings.

While the Hall Objectors do not object to the inclusion of bone scanning in the settlements *per se*, the financial incentives caused by the "grid" of Exhibit 8 to the Settlement exacerbate problems with the fee request. For example, time spent on bone testing may be inappropriately categorized as common benefit work (Hall Objection, PageID.60229), given that Liaison Counsel only opened up testing to non-clients in late February, after testing thousands of its own clients who will already compensate Liaison Counsel for that work. The stakes for claimants who do not have contemporaneous blood tests are enormous. For example, Flint residents first exposed to the Flint River water under the age of six without other test results are entitled to 0.15X of a share from the under-six sub-fund, which is by far the largest component of the settlement fund. ECF No. 1319-2, PageID.40801. While the ultimate payouts cannot be precisely estimated at this time because they depend on the number of valid claims received and the sum share value of all claims, a reasonable estimate is that 0.15X would amount to about $6,000 per claimant.[4] But with a bone scan test result of only 0.1 μg/G, claimants would be entitled to a payment over three times as large, 0.5X (or $20,000 if no-results

---

[4] Slightly more than $600 million remains in the fund if no defendants walk away and a 6.33% attorneys' fee tax is applied as Plaintiffs' request. If $40 million in costs are deducted, portion of the fund for children exposed by age 6 (64.5%) comes to some $362 million, and if there are 9,000 valid claims with an average weight of 1X, this implies 0.15X is worth about $6,000 prior to any deduction of Special Assessments for unrepresented claimants. (As explained in the Hall Objection, the novel Special Assessment fee arrangement should not be approved at all. ECF No. 1548, PageID.60226-27.)

16

claimants receive \$6,000). ECF No. 1319-2, PageID.40798. An XRF reading of 0.1 μg/G appears to be *much* smaller than the margin of error of portable XRF measurements that Dr. Specht has previously published. ECF No. 1341-2, PageID.41911. Thus, **child claimants will either uniformly or randomly receive 0.5X shares—more than triple the amount of class members without test results—simply by virtue of obtaining bone scanning**. For children expose by age six with no blood test results and no documented developmental impairments, the increased award cause by an XRF bone test result almost certainly exceeds \$10,000. And with a bone test of 10 μg/G or higher, claimants could receive four times *this* amount (so \$80,000 if 0.15X is \$6000). Under the fee proposal, Liaison Counsel profits directly from its clients have such test results, securing up to 27% of the enhanced gross awards for itself. Hall Objection, ECF No. 1548, PageID.60220. These awards in turn dilute the shares paid to other class members who did not seek bone scanning— including class members who might not have been able to safely schedule an appointment at the height of Michigan's recent wave of COVID-19 during any of the 30 or so hours of appointments Liaison Counsel permitted for non-clients on Sundays from late February to April 25, 2021. To put it bluntly, bone testing and the squabbles over it appear to be motivated by attorneys' fees. Pending further review of counsel's detailed hours, Hall Objectors suspect Liaison Counsel claimed time on bone scanning that did not confer any common benefit. It is possible that Liaison Counsel self-dealt in the negotiation of the settlement to require an unnecessary test to maximize its own share of the fees instead of having a simpler claims process that unrepresented Flint

citizens could more easily navigate. Thus, proceedings concerning bone lead testing pertain to the Hall Objection.

Any discussion of the Chapman plaintiffs' motion for discovery also directly pertains to the Hall Objectors. The second of Chapman plaintiffs' three requests expressly join the Hall Objectors' motion. ECF No. 1710, PageID.62289. Moreover, discovery of claimed hours and expenses spent on bone lead testing may further bolster Hall Objectors' contention that Liaison Counsel may have claimed excessive common benefit time.[5] If the parties discussed the Chapman plaintiffs' discovery motion, its briefing, or its potential disposition, the Hall Objectors must know what was said.

Other objectors' motions to extend evidence deadlines (ECF Nos. 1714 & 1717) likewise pertain to whether bone testing primarily benefits Liaison Counsel.

Finally, the Order to Show Cause proceedings directly impacts the Hall Objectors, who are handicapped by having never seen the deposition of Dr. Specht. The Specht deposition pertains to a XRF bone testing procedure that thousands of Flint residents—including some of the Hall Objectors—have undergone. If the transcript may now be distributed under the generally-applicable protective order (ECF No. 1162-3), the undersigned would immediately request a copy from one of the other attorneys in this case. But due to the unresolved Order to Show Cause (and perhaps also the *ex parte* conference), it remains entirely unclear whether the Courts' October 21, 2020 order from the bench that copies of the Specht transcripts must be destroyed by must counsel remains in force. ECF No. 1311, PageID.39881. Thus, Hall Objectors

---

[5] The Hall Objectors now expressly join the portions of the Chapman Plaintiffs' motion (ECF No. 1710) not already covered by their own motion (ECF No. 1586).

find themselves uniquely disadvantaged in this case. *See* ECF No. 1720, PageID.62519-23 (emails describing distribution of the transcript from defense counsel to Class Counsel and then to other attorneys).[6]

In the unlikely event that none of the four topics above was discussed on May 3, settling counsel should nevertheless swear to whatever topics were discussed, so that Hall Objectors can have confidence that *ex parte* argument and assertions will not prejudice their motion and objection. It is a litigant's prerogative to determine which topics are relevant to pursue and which are not.

### B. Settling parties must describe the conferences to reduce the prejudice to the objectors.

Full disclosure is the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118-125 (2003). That's especially true here where the XRF bone testing issues pertain to the health and financial wellbeing of thousands of Flint claimants.

_____

[6] If, during the May 3 off-the-record conference it was resolved that Mr. Cuker should not be sanctioned because the October 21 order has been overtaken by events, the Hall Objectors submit that the Specht transcripts should be filed on the docket in their entirety. It should need only minimal redactions to protect the personal information of the minor clients because "in a case of great importance to the public" orders to seal information from the public must be "narrowly tailored." *Shane Group*, 825 F.3d at 307. The deposition transcript, cited by Chapman plaintiffs and considered by a defense expert adverse to Class Counsel (ECF No. 1371-4, PageID.47581), has ceased being a mere "discovery" document. The Hall Objectors find it manifestly offensive that the LAN and Veolia corporations know more about technology used to irradiate thousands of Flint residents than those residents themselves.

To remedy the *ex parte* hearings, the Hall Objectors suggest looking to the rules for guidance. Canon 3A(4) provides that "[i]f a judge receives an unauthorized *ex parte* communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." The Court initiated the *ex parte* communication, but the remedy should be similar to what Canon 3A(4) recommends. The Hall Objectors should be informed as to the entire contents of these discussions as completely as possible and furnished with an opportunity to respond.

Hall Objectors recommend one change from Canon 3A(4)'s remedial action, so as to avoid causing the Court itself to become a witness to the conferences. Unsolicited *ex parte* communications might often consist of an unsolicited letter or brief message that the Court can easily summarize, but the 26-minute March 1 conference and the indeterminately long May 3 conference might not be tersely summarized. Therefore, the Hall Objectors suggest drawing inspiration from Fed. R. App. P. 10(c), which provides a mechanism for when a recording or transcript is unavailable. An "appellant may prepare a statement of the evidence or proceedings from the best available means including the appellant's recollection. The statement must be served on the appellee, who may serve objections or proposed amendments within 14 days after being served." *Id.* Normally, this rule is invoked by appellants who know what transpired in the unrecorded hearings. However, because objectors were denied this courtesy, the Court should instead compel the other attendees of these conferences—the settling parties— to supplement the record. Hall Objectors move that four summaries be filed independently by Class Counsel, Liaison Counsel, the Special Master, and one jointly

by the attending defendants. Redundancy is appropriate because each faction may simply recall different aspects of the proceedings, and also because each party has little interest (indeed antipathy) in describing discussion relevant to the objectors. Hall Objectors do not waive their right to seek further discovery of the hearings if these summaries appear manifestly deficient, but hopefully redundant recollections will avoid the need. Following these summaries, the parties could have 14 days to object to aspects of each other's summaries and thereby complete the record.

Following the corrected supplement of the record, objectors should be allowed to respond to any representations or concerns raised during the proceedings. These could occur within a consolidated briefing schedule for all objectors to reply in support of their respective motions and against the settling parties' responses to objections.

## CONCLUSION

Counsel for the Hall Objectors must be invited to future conferences pertaining to the Settlement because their interests are not adequately represented by any settling parity. To remedy the prejudice Hall Objectors, the Court should order that the settling parties fully describe the March 1 and May 3 *ex parte* conferences under oath, and provide some future date that objectors can respond to these proceedings.

Dated: May 10, 2021        <u>/s/ M. Frank Bednarz</u>

M. Frank Bednarz (IL ARDC No. 6299073)
HAMILTON LINCOLN LAW INSTITUTE
CENTER FOR CLASS ACTION FAIRNESS
1145 E. Hyde Park Blvd. Unit 3A
Chicago, IL 60615
Phone: 801-706-2690
Email: frank.bednarz@hlli.org

*Attorneys for Hall Objectors*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system on May 10, 2021, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ M. Frank Bednarz
M. Frank Bednarz