# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re: Flint Water Cases*

Case No. 5:16-cv-10444-JEL-MKM

Hon. Judith E. Levy

Magistrate Judge Mona K. Majzoub

---

## CLASS PLAINTIFFS' MOTION FOR CERTIFICATION OF A SETTLEMENT CLASS, FINAL APPROVAL OF CLASS SETTLEMENT, AND APPOINTMENT OF SETTLEMENT CLASS COUNSEL

For the reasons stated in the attached memorandum and supporting declarations and exhibits, Class Plaintiffs, through their counsel, move the Court to:

- Grant final approval of the class components of the Amended Master Settlement Agreement under Federal Rule of Civil Procedure 23(e);

- Certify the Settlement Class and Subclasses set forth in the Amended Master Settlement Agreement under Federal Rule of Civil Procedure 23(a) and (b)(3); and

- Appoint the firms previously appointed as Interim Settlement Class Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee, as Settlement Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class.

Pursuant to Local Rule 7.1, Class Plaintiffs sought consent in this motion from Settling Defendants. Settling Defendants concur in the relief sought in this motion.

Dated: May 27, 2021

By: */s/ Theodore J. Leopold*
Theodore J. Leopold
COHEN MILSTEIN SELLERS
 & TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com
***INTERIM CO-LEAD COUNSEL***

Stephen Morrissey
SUSMAN GODFREY L.L.P.
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
(206) 516-3883 Facsimile
smorrissey@susmangodfrey.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Paul Novak (P39524)
WEITZ & LUXENBERG, P.C.
The Fisher Building
3011 W. Grand Boulevard, Suite 2150
Detroit, MI 48203
(313) 800-4170
pnovak@weitzlux.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Esther Berezofsky
MOTLEY RICE LLC
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
Office: 856-667-0500 x1417
Cell: 856-866-6038

Respectfully submitted,

By: */s/ Michael L. Pitt*
Michael L. Pitt
PITT MCGEHEE PALMER &
RIVERS, P.C.
117 West 4th Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
mpitt@pittlawpc.com
***INTERIM CO-LEAD COUNSEL***

Peretz Bronstein
BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Teresa A. Bingman
LAW OFFICES OF TERESA A.
BINGMAN, PLLC
4131 Okemos Road, Suite 12
Okemos, Michigan 48864
(877) 957-7077
tbingman@tbingmanlaw.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Fax:  856-667-5133
eberezofsky@motleyrice.com
***Executive Committee for Class
Plaintiffs***

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*In re:  Flint Water Cases*                    Case No. 5:16-cv-10444-JEL-MKM

                                               Hon. Judith E. Levy

                                               Magistrate Judge Mona K. Majzoub

_____

**BRIEF IN SUPPORT OF CLASS PLAINTIFFS' MOTION FOR
CERTIFICATION OF A SETTLEMENT CLASS, FINAL APPROVAL OF
CLASS SETTLEMENT, AND APPOINTMENT OF SETTLEMENT CLASS
COUNSEL**

## ISSUES PRESENTED

1. Whether the Court should grant final approval of the class components of the Amended Master Settlement Agreement ("MSA") because they are fair, reasonable, and adequate as required for final approval under Federal Rule of Civil Procedure 23(e).

2. Whether the notice provided to Settlement Class members by the MSA's previously-approved Notice Plan satisfied Federal Rule of Civil Procedure 23(e) and Due Process.

3. Whether the Court should grant final certification of the Settlement Class and Subclasses provided for by the MSA, which the Court previously preliminarily certified.

4. Whether the Court should appoint the firms previously appointed as Interim Settlement Class Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee, as Settlement Class Counsel under Federal Rule of Civil Procedure 23(g).

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Federal Rule of Civil Procedure 23

*Sterling v. Velsicol Chemical Corp*., 855 F.2d 1188 (6th Cir. 1988)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008)

# **Table of Contents**

**Page**

INTRODUCTION ..................................................................................... 1

BACKGROUND ..................................................................................... 3

  A.  Preliminary Approval ...................................................................... 4

  B.  Notice and Registration .................................................................. 5

LEGAL STANDARD ............................................................................. 6

ARGUMENT ........................................................................................... 8

I.   The Class Components of the MSA Are Fair, Reasonable, and Adequate. ........ 8

  A.  The likelihood of success on the merits supports final approval when weighed against the relief provided by the MSA. .................................................. 9

  B.  The complexity, expense, and likely duration of litigation favor final approval. ................................................................................................ 12

  C.  The judgement of experienced class counsel supports final approval ........ 12

  D.  The overall reaction of class members weighs in favor of final approval .. 15

     1.  The overwhelming majority of Settlement Class members have not objected ............................................................................................ 15

     2.  The objections filed do not warrant denial of final approval of the class components of the MSA. .................................................................. 18

         a.  Notice Objections ...................................................................... 20

         b.  Objections to Residential Property Compensation Amount ............. 24

         c.  Objections to Compensation for Representatives ............................. 26

         d.  Bone Scan Objections ................................................................. 28

         e.  COVID-19 Related Objections ...................................................... 29

         f.  Minors-Related Objections ........................................................... 31

  E.  The MSA is consistent with the public interest ........................................... 32

  F.  The MSA is the result of prolonged arm's-length negotiations conducted by highly experienced counsel before Court-appointed third-party neutrals. ......... 33

G.   The MSA treats Class Members equitably with respect to one another .....34

II.   Notice of the MSA Satisfied Rule 23(e) and Due Process. ...............................35

III.  The Court Should Certify the Settlement Class and Subclasses ....................40

A.   The Settlement Class and Subclasses satisfy Rule 23(a) ...........................40

B.   The Settlement Class and Subclasses satisfy Rule 23(b)(3) ......................48

IV.  The Court Should Appoint Interim Co-Lead Class Counsel and the Executive Committee as Class Counsel .....................................................................................53

CONCLUSION ........................................................................................................55

iv

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ....................................................................... 50

*Bacon v. Honda of Am. Mfg., Inc.*,
   370 F.3d 565 (6th Cir. 2004) ......................................................... 40

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ......................................................... 48

*Bowling v. Pfizer*,
   102 F.3d 777 (6th Cir. 2006) ......................................................... 27

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ........................................................................... 7

*Cole v. City of Memphis*,
   839 F.3d 530 (6th Cir. 2016) ......................................................... 52

*Collins v. Olin Corp.*,
   248 F.R.D. 95 (D. Conn. 2008) ..................................................... 43

*Date v. Sony Elecs., Inc.*,
   No. 07-cv-15474, 2013 WL 3945981 (E.D. Mich. July 31, 2013) .................... 13

*Davidson v. Henkel*,
   302 F.R.D. 427 (E.D. Mich. 2014) ................................................ 41

*Dick v. Spring Commc'ns*,
   297 F.R.D. 283 (W.D. Ky. 2014) ................................................ 7, 13

*Feder v. Elec. Data Sys. Corp.*,
   248 Fed. App'x 579 (5th Cir. 2007) ............................................... 19

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ......................................................... 36

*Garner Props. & Mgmt., LLC v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020) ............................................ 33, 41

*Garner Props. & Mgmt., LLC v. City of Inkster*,
  No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ................. 32

*Golden v. City of Columbus*,
  404 F.3d 950 (6th Cir. 2005) ................................................................ 40

*Good v. W. Virginia-Am. Water Co.*,
  CV 14-1374, 2017 WL 2884535 (S.D.W. Va. July 6, 2017) ........................... 49

*Grenada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ........................................................... 9, 32

*Griffin v. Flagstar Bancorp, Inc.*,
  No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ...... 6, 32, 40

*Grunin v. Int'l House of Pancakes*,
  513 F.2d 114 (8th Cir. 1975) ................................................................ 36

*Hainey v. Parrott*,
  617 F. Supp. 2d 668 (S.D. Ohio 2007) .................................................... 33

*In re Agent Orange Product Liability Litig.*,
  597 F. Supp. 740 (D.C.N.Y. 1984), *aff'd in part and rev'd in part on
  other grounds*, 818 F.2d 226 (2d Cir. 1987) ........................................... 24

*In re Auto. Parts Antitrust Litig.*,
  2:12-CV-00203, 2017 WL 3499291 (E.D. Mich. July 10, 2017) ............... 27, 32

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d. 336 (E.D. Pa. 2007) ................................................ 13, 18

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ................................................ 7, 11, 32, 51

*In re Chambers Dev. Sec. Litig.*,
  912 F. Supp. 822 (W.D. Pa. 1995) ........................................................ 11

*In re Delphi Corp. Sec., Deriv. & ERISA Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) ......................................................... 12

*In re Foundry Resins Antitrust Litig.*,
  242 F.R.D. 393 (S.D. Ohio 2007), *abrogated on other grounds by In
  re Behr Dayton Thermal Prod., LLC*, No. 3:08-CV-326, 2015 WL
  13651286 (S.D. Ohio Feb. 27, 2015) ................................................ 41, 46

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
  301 F.R.D. 191 (E.D. Pa. 2014) ............................................................ 35

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) .................................................................. 50

*In re Nationwide Fin. Servs. Litig.*,
  No. 2:08–cv–00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ............... 19

*In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*,
  910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re*
  *Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014) .................................... 34, 51

*In re Packaged Ice Antitrust Litig.*,
  No. 08-md-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011) ............ *passim*

*In re Polyurethane Foam Antitrust Litig.*,
  168 F. Supp. 3d 985 (N.D. Ohio 2016) ............................................... 24

*In re Scrap Metal Antitrust Litig.*,
  527 F.3d 517 (6th Cir. 2008) ........................................................... 48

*In re Se. Milk Antitrust Litig.*,
  No. 2:07-CV-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................. 13

*In re Telectronics Pacing Sys. Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ............................................ 7, 10

*In re Whirlpool Corp.*,
  722 F.3d at 854 ...................................................................... 49, 50

*In re: Whirlpool Corp. Front-loading Washer Products Liab. Litig.*,
  1:08-WP-65000, 2016 WL 5338012 (N.D. Ohio Sept. 23, 2016) ................. 38

*Int'l Union, UAW v. Ford Motor Co.*,
  No. 05-cv-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006),
  *aff'd sub nom. UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir.
  2007) ............................................................................... 8, 17

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ............................................. 6, 7, 10

*Kis v. Covelli Enters., Inc.*,
  Nos. 4:18-cv-54, 4:18-cv-434, 2020 WL 2812405 (N.D. Ohio May
  29, 2020) ............................................................................ 34

*Lasalle Town Houses Coop. Ass'n v. City of Detroit*,
  4:12-CV-13747, 2016 WL 1223354 (E.D. Mich. Mar. 29, 2016) ................. 32

*Marcus v. Dep't of Revenue*,
   206 F.R.D. 509 (D. Kan. 2002) .................................................................... 46

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co*.,
   315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y.
   State Teachers' Ret. Sys*., 16-1821, 2017 WL 6398014 (6th Cir.
   Nov. 27, 2017) .......................................................................................... 18

*Olden v. LaFarge Corp*.,
   472 F. Supp. 2d 922 (E.D. Mich. 2007) ...................................................... 24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................... 36

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc*.,
   863 F.3d 460 (6th Cir. 2017) ...................................................................... 48

*Senter v. Gen. Motors Corp*.,
   532 F.2d 511 (6th Cir. 1976) ...................................................................... 46

*Sheick v. Auto. Component Carrier LLC*,
   No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ............. 9, 10

*Sprague v. Gen. Motors Corp*.,
   133 F.3d 388 (6th Cir. 1998) ...................................................................... 42

*Sterling v. Velsicol Chemical Corp*.,
   855 F.2d 1188 (6th Cir. 1988) .................................................................... 49

*Stoetzner v. U.S. Steel Corp*.,
   897 F.2d 115 (3d Cir. 1990) ........................................................................ 17

*Taifa v. Bayh*,
   846 F. Supp. 723 (N.D. Ind. 1994) .............................................................. 18

*TBK Partners, Ltd. v. W. Union Corp*.,
   675 F.2d 456 (2d Cir. 1982) ........................................................................ 17

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
   262 F.3d 559 (6th Cir. 2001) ...................................................................... 19

*UAW v. Gen. Motors Corp*.,
   497 F.3d 615 (6th Cir. 2007) ...........................................................7, 9, 36, 38

*Widdis v. Marathon Petroleum Co.*,
   13-CV-12925, 2014 WL 11444248 (E.D. Mich. Nov. 18, 2014) ............... 43, 49

*Williams v. Vukovich*,
　720 F.2d 909 (6th Cir. 1983) ................................................................. 7

**Statutes**

42 U.S.C. § 1983 ..................................................................................... 25

**Rules**

FED. R. CIV. P. 23(a) .......................................................40, 42, 43, 45, 48

FED. R. CIV. P. 23(b)(3) ...............................................................*passim*

FED. R. CIV. P. 23(e) ....................................................................*passim*

FED. R. CIV. P. 23(g) ......................................................4, 46, 53, 54, 55

**Other Authorities**

2 MCLAUGHLIN ON CLASS ACTIONS § 6:23 (17th ed.) ............................. 23

1 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:75 (5th ed.
　2020) ..................................................................................................... 47

4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:44 (5th
　ed. 2020) .............................................................................................. 12

## INTRODUCTION

Plaintiffs have reached an agreement with the State of Michigan, City of Flint, and additional Settling Defendants that will provide $641.25 million in relief to adults, children, and businesses in Flint for the harm they suffered as a consequence of those Defendants' role in the events known as the Flint Water Crisis. This agreement, which comes more than six years after the Flint Water Crisis became headline news, is the culmination of years of vigorous litigation before this Court and extended negotiation before Court-appointed mediators. As the Court noted in its order preliminarily approving the settlement, "there may be no amount of money that would fully recognize the harm the residents of Flint have experienced, including their anxiety, fear, distrust, and anger over the events of last seven years." ECF No. 1399, PageID.54403. But the proposed settlement provides important and significant compensation for that harm—as well as long-awaited recognition of the injuries Settlement Class members suffered as a consequence of the Flint Water Crisis and certainty with respect to their claims against the Settling Defendants, without compromising their ability to continue pursuing claims against the non-settling defendants. The Court should grant final approval of the settlement agreement and certify the Settlement Class and Subclasses under Federal Rule of Civil Procedure 23(e).

As set forth in Plaintiffs' Motion for Preliminary Approval, the proposed

Master Settlement Agreement ("MSA") allows participation by three categories of claimants: (1) minors, participating through their representatives, (2) individual adult plaintiffs who have retained counsel, and (3) members of the Settlement Subclasses (collectively the "Settlement Class"), who are adults, residential property owners, and businesses in the City of Flint that suffered harm as a consequence of the Water Crisis.

In an effort to streamline briefing and present issues to the Court in an efficient manner, Plaintiffs' Preliminary Approval Motion addressed both the process and protections in place for claim by Minors and Legally Incapacitated Individuals ("LII"), and the requirements for preliminary approval of a settlement class, in a single brief. *Id*., PageID.40265–40266. However, Minor and LII claimants are not part of the Settlement Class or Subclasses—nor are Individual Plaintiffs. Federal Rule of Civil Procedure 23(e) requires final approval of the settlement of a *class's* claims, and this Motion seeks certification of a Settlement Class and Subclasses, as well as Rule 23(e) final approval of the MSA as it applies to Settlement Class and Subclass members. Consequently Class Counsel do not here address the provisions of the MSA specific to Minors or LII claimants, whose claims are resolved in a non-class capacity.

The Court found at the preliminary approval stage that the MSA likely met the requirements for final approval of a settlement. Now that notice has been

2

successfully provided and Settlement Class members have had an opportunity to be heard, the Court should enter final approval.

## <u>BACKGROUND</u>

On November 17, 2020, Plaintiffs filed their Motion to Establish Settlement Claims Procedures and Allocation and for Preliminary Approval of Class Settlement Components ("Preliminary Approval Motion"). ECF No. 1318.[1] Interim Co-Lead Class Counsel incorporate by reference the Background set forth in their Preliminary Approval Motion, which provides an overview of the history of this litigation, discussion of the settlement negotiation process, and a detailed explanation of the proposed settlement. *Id*., PageID.40266–40276. As set forth there, the agreement reached between Plaintiffs and the Settling Defendants resolves all of Plaintiffs' pending claims against those Settling Defendants, while Plaintiffs continue to litigate their claims against the engineering firm defendants LAN and Veolia.[2]

---

[1] On January 15, 2021, Plaintiffs filed a Notice with the Court correcting minor typographical errors to the MSA and its exhibits and otherwise clarifying certain language, including on the proposed Registration and Claims Forms. ECF No. 1394. All references to the MSA and Registration and Claims Forms are to those attached to Plaintiffs' Notice at ECF No. 1394 unless otherwise specified.

[2] "Settling Defendants" refers to: The State of Michigan, Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy), Michigan Department of Health and Human Services, Michigan Department of Treasury, former Governor Richard D. Snyder, Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Liane Shekter Smith, Daniel Wyant, Stephen Busch, Kevin Clinton, Patrick Cook, Linda Dykema, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Dennis Muchmore, Nancy Peeler, Robert Scott, Adam Rosenthal, Andy Dillon

## A.    Preliminary Approval

On January 21, 2021, the Court issued an order granting Plaintiffs' Preliminary Approval Motion. ECF No. 1339 ("Preliminary Approval Order"). The Court conditionally certified the Settlement Class and Subclasses set forth in the MSA, finding that Plaintiffs had "preliminarily met the Rule 23 requirements for certification of this putative class," and "direct[ing] notice of the certification, proposed settlement, and date of the final fairness hearing." *Id*., PageID.54431. The Court additionally appointed the firms serving as Interim Co-Lead Class Counsel, Cohen Milstein Sellers & Toll PLLC, and Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee, as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the Settlement Class,[3] and appointed Settlement Subclass Representatives as representatives of the Settlement Class as follows:

- Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael

---

("State Defendants"); the City of Flint, Darnell Earley, Howard Croft, Michael Glasgow, Gerald Ambrose, Edward Kurtz, Michael Brown, Dayne Walling, Daugherty Johnson ("City Defendants"); McLaren Health Care Corporation, McLaren Regional Medical Center, McLaren Flint Hospital, ("McLaren Defendants"); and Rowe Professional Services Company.

"LAN" refers collectively to Lockwood, Andrews & Newnam, P.C.; Lockwood, Andrews & Newnam, Inc.; Leo A. Daly Company.

"Veolia" refers collectively to Veolia North America, LLC; Veolia North America, Inc.; Veolia Water North America Operating Services, LLC.

[3] The Court's Preliminary Approval Order does not specify whether appointment of Settlement Class Counsel was interim under Federal Rule of Civil Procedure 23(g)(3). However, because the Settlement Class was not finally certified in that Order, Plaintiffs seek confirmation of that appointment here. *See* FED. R. CIV. P. 23(g)(3).

Snyder, as personal representative of the Estate of John Snyder, as representatives of the Adult Exposure Subclass;

- Elnora Carthan and David Munoz as representatives of the Property Damage Subclass;

- 635 Saginaw LLC; Frances Gilcreast; and Neil Helmkay as representatives of the Business Economic Loss Subclass.

*Id.*, PageID.54463, 54465. The Court also approved Plaintiffs' proposed Notice plan, and appointed Plaintiffs' proposed Notice and Claims Administrators, Registration Form, and Claim Form. *Id*., PageID.54466. The Court directed notice to be mailed no later than February 26, 2021, and set March 29, 2021, as the deadline for an individual or entity to either register for or request exclusion from the settlement, as well as the deadline for the filing of objections. *Id*., PageID.54467–54468.

## B.    Notice and Registration

Following entry of the Court's Preliminary Approval Order, Interim Co-Lead Class Counsel and the Court-appointed Notice Administrator, Epiq Class Action & Claims Solutions, Inc. ("Epiq"), implemented the Notice Plan approved by the Court. Settlement Class members for whom a valid mailing address could be located through City of Flint records received direct notice via U.S. mail, and those for whom a valid email address could be located additionally received emailed notice. Ex. 1 (Declaration of Cameron R. Azari), ¶¶ 9, 13–16, 21.[4] As detailed further below

---

[4] Exhibits filed in support of this Motion are attached to the supporting Declaration of Katherine M. Peaslee, unless otherwise noted.

and in the attached declaration from the Notice Administrator (Ex. 1), the Notice Administrator implemented a comprehensive media campaign designed to provide publication notice to as many Settlement Class members as possible, through targeted internet banner ads, print publications, radio and television spots, and sponsored internet search listings. *Id.*, ¶¶ 23–44.

Settlement registration data is still being processed, and current figures are subject to change. However, according to the most recent information provided by Special Master Deborah Greenspan, over 85,000 registration forms have been submitted, and approximately 50,614 of those have been tentatively identified as unique submissions. *See* ECF No. 1790, PageID.64248.

## **LEGAL STANDARD**

"[T]he law favors the settlement of class action lawsuits." *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013). As a result, "the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole is fair, reasonable and adequate to all concerned." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 594 (E.D. Mich. 2006) (internal quotes omitted).

After preliminary approval, notice of the proposed settlement must be given

to the settlement class members, and the Court must hold a hearing before granting final approval. *In re Telectronics Pacing Sys. Inc*., 137 F. Supp. 2d 985, 1026 (S.D. Ohio 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). The ultimate question for the Court at this stage is "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citation omitted). In reaching that determination, the Court has broad discretion to approve a class action settlement. *UAW v. Gen. Motors Corp*., 497 F.3d 615, 636 (6th Cir. 2007). In exercising this discretion, courts give considerable weight and deference to the view of experienced counsel regarding the merits of an arm's-length settlement. *Dick v. Spring Commc'ns*, 297 F.R.D. 283, 297 (W.D. Ky. 2014) ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation.").

Because a settlement represents an exercise of judgment by the negotiating parties, the Court in reviewing this settlement should not "substitute [its] judgment for that of the litigants and their counsel." *IUE-CWA*, 238 F.R.D. at 593 (quotations omitted). Nor should it "decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc*., 450 U.S. 79, 88 n.14 (1981). Instead, the Court should evaluate the plaintiffs' recovery in light of the fact that a settlement "represents a compromise in which the highest hopes for recovery are yielded in

exchange for certainty and resolution." *Int'l Union, UAW v. Ford Motor Co.*, No.

05-cv-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006), *aff'd sub nom.*

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).

## **ARGUMENT**

## I.    **The Class Components of the MSA Are Fair, Reasonable, and Adequate.**

The class components of the MSA meet the criteria for final approval under

Federal Rule of Civil Procedure 23. They provide meaningful benefits to the

members of the Settlement Class and Subclasses, and they were reached after

extended arm's-length negotiations between experienced counsel, including Court-

appointed Subclass Settlement Counsel regarding allocation issues, who had

sufficient information about the merits of, and defenses to, the claims asserted in this

litigation. The MSA reflects a reasonable compromise in light of the procedural,

liability, and damages-related questions facing Settlement Class and Subclass

members with respect to their claims against the Settling Defendants.

Pursuant to Rule 23(e), the Court may approve a proposal that would bind

class members if "the class representatives and class counsel have adequately

represented the class," "the proposal was negotiated at arm's length," "the relief

provided for the class is adequate," and "the proposal treats class members equitably

relative to each other." Courts in the Sixth Circuit consider the following factors

when determining whether to grant final approval of a class action settlement: "(1)

the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and the class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest." *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011) (quoting *UAW*, 497 F.3d at 631). The Court has wide discretion in assessing the weight and applicability of these factors. *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992).

The proposed agreement and Settlement Class meet each of Rule 23(e)'s conditions, and consideration of each of the factors set forth by the Sixth Circuit supports final approval and certification of the Settlement Class.

### A. The likelihood of success on the merits supports final approval when weighed against the relief provided by the MSA.

When considering the likelihood of class plaintiffs' success on the merits of the litigation, the ultimate question is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued to trial and judgment. *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010); *see also* FED. R. CIV. P. 23(e)(2)(C)(i) (courts must consider whether the "relief provided for the class is adequate, taking into account" factors including "(i) the costs, risks, and delay of

trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment").[5] Courts assess class action settlements "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick*, 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594). Settlement is advantageous because it "avoids the costs, delays, and multitude of other problems" associated with continuing litigation. *Telectronics*, 137 F. Supp. 2d at 1013.

While Plaintiffs are confident in their claims against Settling Defendants, they are not without significant risks and inevitable future expenses. The Settling Defendants' experienced and capable counsel have vigorously defended their clients thus far and Settling Defendants have shown every indication that they would continue to deny the allegations against them, contest liability, and appeal unfavorable results. The potential invocation of qualified immunity by many of the individual Settling Defendants provides a further risk, as those Defendants could pursue interlocutory appeals of a summary judgment opinion that rules against them.

---

[5] Plaintiffs are filing a separate supplemental brief in support of their request for attorneys' fees and reimbursement of costs concurrently with this Motion, and previously filed a Motion for an Award of Attorneys' Fees and Reimbursement of Expenses filed on March 8, 2021 (ECF No. 1458). Both of these address the fairness of the attorneys' fees sought under the MSA.

And, inevitably, "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In re Cardizem*, 218 F.R.D. at 523. Given these factors, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Against this backdrop, and as the Court has stated, the MSA "presents a complex, detailed, and orderly proposal for resolution of Plaintiffs' claims against the Settling Defendants." Order, ECF No. 1399, PageID.54411. The MSA provides the settling Plaintiffs with $641.25 million from Settling Defendants, approximately $86.76 million of which will go to the adult claimants, Flint businesses, and residential property owners that make up the Settlement Class, as well as to funding programmatic relief for the Flint community.[6] And, in contrast to the requirements for a class to recover in litigation, putative class members who submit claims under the MSA "are not required to prove legal liability or causation," but rather need only provide specified forms of documentation to ensure appropriate distribution of funds. *Id*. This substantial relief, weighed against the risks presented by litigation, supports final approval of the class components of the MSA.

---

[6] This figure is net of any costs and fees awarded to counsel and assumes the Court grants Plaintiffs' pending motion for fees and costs in full.

**B.    The complexity, expense, and likely duration of litigation favor final approval.**

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals." 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:44 (5th ed. 2020). This matter presents such a case. Interim Co-Lead Class Counsel filed their consolidated complaint in this action in 2017, and, four years later, much remains to be done before a litigation class can proceed at trial. This consolidated action presents complicated legal, factual, and procedural issues: the case being litigated by Interim Co-Lead Class Counsel is but one of many cases in both federal and state court implicated by the MSA. Multiple decisions issued by the Court already have been appealed to the Sixth Circuit, and if the litigation against Settling Defendants were to proceed, more appeals would undoubtedly follow. The MSA provides a set measure of relief to the Flint community *now*, rather than some unknown amount of possible—but by no means certain—relief at some unknown date well in the future. This too weighs in favor of final approval of the Class components of the MSA.

**C.    The judgement of experienced class counsel supports final approval.**

In considering whether to grant final approval, the Court also should "consider the judgment of counsel and the presence of good faith bargaining between the contending parties." *In re Delphi Corp. Sec., Deriv. & ERISA Litig.*, 248 F.R.D. 483,

498 (E.D. Mich. 2008). Counsel's judgment "that settlement is in the best interests of the class is entitled to significant weight, and supports the fairness of the class settlement." *In re Packaged Ice*, 2011 WL 717519, at *11 (quotation omitted). In a complex class action litigation such as this, the "Court should defer to the judgment of experienced counsel who has competently evaluated the strength of [their] proofs." *Date v. Sony Elecs., Inc.*, No. 07-cv-15474, 2013 WL 3945981, at *9 (E.D. Mich. July 31, 2013) (quotation omitted); *see also Dick*, 297 F.R.D. at 296 ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arm's-length settlement negotiations, is appropriate." (quotation omitted)); *accord In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

Here, Interim Co-Lead Class Counsel have deemed the proposed settlement to be in the best interests of the Settlement Class and Subclass Members. Interim Co-Lead Class Counsel have represented putative class members for more than four years and have spent hundreds of hours researching, reviewing documents, briefing motions, attending hearings, taking and defending depositions, and negotiating settlement with Defendants.[7] Additionally, in August 2019, the Court granted

---

[7] For further details regarding the efforts expended by Class Counsel in this case, Class Plaintiffs incorporate by reference the argument and evidence set forth in their Supplemental Memorandum in Support of Plaintiffs' Counsel's Motion for

Interim Co-Lead Class Counsel's motion to appoint Interim Subclass Settlement

Counsel ("SSC"), providing that those SSC would represent the six separate

settlement subclasses for purposes of allocation of a settlement fund: injured

children; injured young children; injured adults; persons with property damage;

persons who suffered business losses; and future manifesting injuries. Motions, ECF

Nos. 136 & 922; Order, ECF No. 929. Each of Interim Co-Lead Class Counsel and

SSC have extensive experience litigating class action and mass tort cases, *see* Order,

ECF No. 929, and both groups of counsel believe the agreement memorialized in the

MSA to be in the best interests of the Settlement Class and Subclass members they

have committed to represent in light of the risks and time of continued litigation.[8]

    In determining whether the judgment of counsel supports final approval of the

---

an Award of Attorneys' Fees and Reimbursement of Expenses, filed on May 27, 2021, as well as Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses filed on March 8, 2021 (ECF No. 1458).

    [8] Each of the SSC have submitted declarations in support of the MSA. *See* ECF No. 1319-8 (Decl. of Sarah London, Interim Subclass Settlement Count for Property Damage Subclass); ECF No. 1319-9 (Decl. of Dennis C. Reich, Interim Subclass Settlement Count for Business Economic Loss Subclass); ECF No. 1319-10 (Decl. of Vincent J. Ward, Interim Subclass Settlement Count for Adult Injury Subclass). Though minors are not members of the Settlement Class or Subclasses, they too were represented in allocation negotiations by Court-appointed Interim Settlement Counsel who have submitted declarations in support of the MSA. *See* ECF No. 1319-5 (Decl. of Larry E. Coben, Interim Subclass Settlement Count for Children's Injury Subclass, Young Children); ECF No. 1319-6 (Decl. of Reed Colfax, Interim Subclass Settlement Count for Children's Injury Subclass, Older Children); ECF No. 1319-7 (Decl. of Seth R. Lesser, Interim Subclass Settlement Count for Future Manifesting Injury Subclass)).

settlements, the Court should consider the amount of discovery completed in the action and thus the information available to counsel. *In re Packaged Ice*, 2011 WL 717519, at *8, 11. Here, the parties have produced and reviewed millions of pages of documents, have served and responded to written discovery requests, and conducted over eighty depositions. As the Court noted, it has "managed extensive discovery" in this litigation to date, which has included regular discovery conferences for nearly two years. Order, ECF No. 1399, PageID.54410. Interim Co-Lead Class Counsel and SSC consequently had ample information with respect to Plaintiffs' claims against the Settling Defendants when assessing whether the relief set forth in the MSA is in the best interest of the Settlement Class and Subclass members they represent, and have concluded that it is.[9] This too supports final approval of the class components of the MSA.

### D. The overall reaction of class members weighs in favor of final approval.

#### 1. The overwhelming majority of Settlement Class members have not objected.

The Settlement Class consists of adult residents, residential property owners, and businesses in the City of Flint that either received or paid for water from the

---

[9] Interim Co-Lead Class Counsel shared discovery in this matter with SSC. *See* Declarations, ECF Nos. 1319-8, PageID.41268; 1319-9, PageID.41272–41273; 1319-10, PageID.41277; 1319-5, PageID.41253; 1319-6, PageID.41258; 1319-7, PageID.41263.

Flint Water Treatment Plant. MSA, ECF No. 1394-2, PageID.54135. According to

2010 United States Census data, Flint had a population of 102,434 in 2010.[10] Based

on information received from Special Master Greenspan, Class Plaintiffs estimate a

population of approximately 20,000 potential Minor claimants and 20,000

individually represented Adults who are not part of the Settlement Class.[11] *See* ECF

No. 1394-2, PageID.54135 (Settlement Class definition excluding Individual

Plaintiffs from Settlement Class). Removing these individuals, and using a

conservative City of Flint population estimate of 100,000, the potential Settlement

Class consists of approximately 60,000 individuals—and this class figure increases

when taking into account business entities. To date, 91 objections have been filed by

potential Settlement Class members.[12] That is 0.15% of the potential membership of

---

[10] https://www.census.gov/quickfacts/fact/table/flintcitymichigan/
POP010210

[11] As with the registration data, Class Plaintiffs understand these figures are
approximations and have included them—and the percentages that follow in this
section—solely to provide the Court with an estimation of the general size of the
Settlement Class relative to the number of objections filed.

[12] This number includes objections filed on the docket by objectors who are
neither Minors nor individually represented Adults. An additional 118 objections
have been filed by Minors or represented Adults.

   In at least two instances, checklist forms were filed on the docket without any
objections indicated. *See* ECF No. 1740, 1744. Because these forms do not indicate
any basis for an objection, they should not be considered under the Rule 23 analysis.
*See* Committee Note to 2009 Amendment, Fed. R. Civ. P. 23 ("[O]bjections must
provide sufficient specifics to enable the parties to respond to them and the court to
evaluate them."). Interim Co-Lead Class Plaintiffs have nevertheless included these
blank objection forms in the 91-count total listed above in an effort to acknowledge

the Settlement Class. Of these 91 objectors, present data indicates that only 67 have registered to participate in the Settlement so as to have standing to object;[13] that amounts to 0.11% of the potential Settlement Class.

"[A]lthough the Court must evaluate objections, it has an obligation to protect the interests of the 'silent class majority,' even over 'vociferous opposition by a vocal minority to the settlement.'" *Ford Motor Co*., 2006 WL 1984363, at *27 (citation omitted). In *Ford Motor Co*., the court found that "the minority was very small. Less than 800 out of more than 170,000 class members—less than one half of one percent—submitted an objection to the Settlement Agreement." *Id*. Here, the minority is even smaller: 91 objections from approximately 60,000 eligible Settlement Class members is less than one fifth of one percent—and, as noted above, this number gets even smaller (approximately 67 of 60,000, or 0.11%) when considering only those objectors who, based on present data, are actually participating in the Settlement. This comparatively small number of objections weighs in favor of final approval of the MSA. *See, e.g., Stoetzner v. U.S. Steel Corp*., 897 F.2d 115, 118–19 (3d Cir. 1990) (holding that objections by about 10% of class "strongly favors settlement"); *TBK Partners, Ltd. v. W. Union Corp*., 675 F.2d 456,

---

all objection forms filed on the docket and because they have been filed *pro se*.

[13] As noted earlier in this memorandum, registration data is only preliminary and is subject to change. *See* Special Master Report, ECF No. 1790.

458, 462 (2d Cir. 1982) (approving settlement despite objections of large number of class members); *In re Auto. Refinishing Paint Antitrust Litig*., 617 F. Supp. 2d at 342 ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements."); *Taifa v. Bayh*, 846 F. Supp. 723, 728 (N.D. Ind. 1994) (approving class settlement despite objections from more than 10% of class).

### 2. The objections filed do not warrant denial of final approval of the class components of the MSA.

None of the filed objections warrant denial of approval for the Settlement Class set forth in the MSA. First, a number of objections have been filed by individually represented plaintiffs who are, under the terms of the MSA, not part of the proposed Settlement Class. *See* ECF No. 1394-2, PageID.54135. These non-class members have no standing to object to final approval of the class settlement for the purpose of approval under Rule 23(e).[14] *See, e.g., N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co*., 315 F.R.D. 226, 239 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys*., 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017)

---

[14] Even were the Court to consider *all* objections in its final approval decision from *any* potential claimant, whether the potential claimant is a Settlement Class member or not, that would amount to 209 objections for a group of approximately 102,434 potential claimants (the estimated population of Flint, which presents a conservative number because it does not take into consideration eligible business entities). That amounts to objections from approximately 0.002% of potential claimants, or one *fiftieth* of one percent.

(holding that absent evidence of class membership, individuals failed to establish standing to object); *In re Nationwide Fin. Servs. Litig*., No. 2:08–cv–00249, 2009 WL 8747486, at *8 (S.D. Ohio Aug. 19, 2009) ("objectors failed to establish their membership in the Class or their standing to object."); *Feder v. Elec. Data Sys. Corp*., 248 Fed. App'x 579, 581 (5th Cir. 2007) (objector lacked standing where he "produced no evidence substantiating his membership in the class."); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) (holding that plain language of Rule 23(e) only contemplates allowing class members to object to lack of notice).

The MSA provides a mechanism for Individual Plaintiffs, who are not members of the Settlement Class, to submit objections to the Court. However, this mechanism for claimants to voice an opinion does not alter an individual's legal standing under Rule 23(e) or the relevant considerations for approval under that Rule, which expressly provides that "[a]ny *class member* may object," (emphasis added). As the Committee Note to Rule 23 explains, the Rule "confirms the right of class members to object to a proposed settlement, voluntary dismissal, or compromise," which are dispositions that "would bind the class." Non-Class Members are not similarly bound.

Of the objections filed by Settlement Class members, all but five used one of two pre-printed checklist forms to indicate objections. *See, e.g*., ECF No. 1560

(Example of objections using checklist form); ECF No. 1574 (Example of objections using second checklist form). Of the five objectors that did not use those forms, objections fell into the same categories as set forth on the checklists.[15] Interim Co-lead Class Counsel therefore address those categories here.

### a.   Notice Objections

Objectors using both forms in some instances indicated that "[t]he Notice of Settlement is vague and the details have not been easily available for me to have [an] understanding of what I am being asked to agree to." *See, e.g.*, ECF No. 1566, PageID.60581, ECF No. 1603, PageID.61152.[16] However, when the Court granted preliminary approval of the MSA, the Court "carefully examined Plaintiffs' prospective plan for Class Notice" and found that "the Settlement Agreement's plan for Class Notice is the best notice practicable under the circumstances." ECF No. 1399, PageID.54451. As explained below in Part II of this memorandum and the attached declaration from the Notice Administrator, that Notice plan has been carried out. This included dissemination of notices in "plain language," designed to be clearly understood and to encourage readership and comprehension and following

---

[15] The objections filed by Settlement Class members using a format other than the checklist forms appear at ECF Nos. 1623, 1684, 1697, 1700, and 1765.

[16] For each category of objections, this memorandum provides exemplary citations to objections filed on the docket using the checklist forms to assert the relevant objection(s). These citations are not intended to suggest that the cited docket entries are the only instances in which an objector asserted the given objection(s).

the principles set forth in the Federal Judicial Center's model notices. ECF No. 1319-11, PageID.41299–41300; *see id*. at PageID.41353 (Settlement Notice Overview); Ex. 1, ¶ 47; *see id*., Attachments 2 (Long Form Notice) & 3 (Email Notice).

In order to ensure that potential class members had as many opportunities as possible to ask questions and receive information, Interim Co-Lead Class Counsel took steps even beyond those set forth in Plaintiffs' motion for preliminary approval. Interim Co-Lead Class Counsel have held numerous town hall meetings, both via telephone and Zoom, to explain the proposed settlement and the registration or opt-out process. Ex. 2 (Declaration of Leslie M. Kroeger), ¶ 8. They ran radio ads providing general information about the settlement and providing a phone number and website that listeners could visit for further information on seven local radio stations in Flint, resulting in over 2.7 million delivered impressions. *Id.*, ¶ 9. They established an answering service that is and has been available 24 hours a day, 7 days a week, since the announcement of the settlement in August 2020. *Id.*, ¶¶ 2–3. They have had personnel available to take live calls and return voicemails Monday through Friday from 9 am to 5 pm—and for the initial 30 days after announcement of the proposed settlement and during the 60-day registration period, took live calls on the weekends as well. *Id.*, ¶ 3. As of May 18, 2021, personnel from the law firms of Interim Co-Lead Class Counsel had fielded 5,562 calls regarding the proposed settlement. *Id.*, ¶ 4. This additional call line buttressed the 24-hour hotline

established by the Claims Administrator, which allowed Settlement Class members to listen to answers to frequently asked questions and request that a notice package be mailed to them. Ex. 1, ¶ 45. Interim Co-Lead Class Counsel also created an email address specifically to field settlement-related questions from class members and have received and responded to approximately 5,000 emails regarding the settlement registration process. Ex. 2, ¶ 7.

Although efforts to provide information in-person were restricted by the ongoing public health crisis caused by COVID-19, Interim Co-Lead Class Counsel nevertheless re-opened an office in Flint on January 29, 2021, under strict COVID guidelines, where counsel have helped more than 2,000 individuals complete registration forms and where Settlement Class members could drop off forms for submission to the Claims Administrator. *Id.*, ¶ 10. In sum, the notice of the MSA sets forth clear and specific information regarding the settlement in accordance with both Federal Rule 23(e) and the notice plan approved by the Court has been executed. And Interim Co-Lead Class Counsel have provided numerous opportunities for Settlement Class members to ask questions and receive answers even beyond the mechanisms offered by the Claims Administrator.

Objectors using both forms have further indicated in some instances that the objector has "no idea of an estimated amount of my recovery which prevents me from knowing whether or not this is a matter which I want to pursue," and that "I

have not been explained how it was determined how much I am entitled to, and the basis for this determination." *See, e.g.*, ECF No. 1566, PageID.60581, ECF No. 1603, PageID.61152. However, the MSA includes as an exhibit a detailed grid—which was included in the notice package—explaining the manner in which claimants will be compensated for each category of claimants. *See* ECF No. 1319-2 (MSA Ex. 8, "Flint Water Cases (FWC) Qualified Settlement Fund Categories, Monetary Awards, and Required Proofs Grid (11/11/20)"); Ex. 1, Attachment 2. As the grid further explains, actual dollar amounts of awards to adult claimants will be determined by the Claims Administrator "after processing all Claims," with some exceptions, because specific award amounts are "based in part upon the number of Claimants receiving Monetary Awards in each respective Category." ECF No. 1319-2, PageID.40819. The same is true of property damage and business economic loss claimants, with the added condition that "no recovery in this Category shall exceed $1,000 per parcel of residential real property." *Id.*, PageID.40826. The MSA thus spells out, to the extent possible without knowing in advance the number and character of the claims that will be submitted, the recovery to which a claimant will be entitled. *See* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:23 (17th ed.) ("The methodology or formula for the calculation of a claimant's share should be described [in a settlement allocation plan]. This is all that is required, and class members usually will not know the amount they actually will receive until after final approval

is granted.")

### b.    Objections to Residential Property Compensation Amount

Some objectors have submitted forms indicating that "[i]n light of the harm suffered by homeowners and the extent of Defendants' wrongdoing, the proposed settlement is not fair, reasonable and/or adequate" for those homeowners. *See, e.g.*, ECF No. 1568, Page.ID60590; ECF No. 1613, PageID.61192. Objectors have further submitted forms indicating in some instances that "[t]he $1,000.00 cap to residents who own or rent residential property is too low" (*e.g.,* ECF No. 1568, PageID.60590) and some individuals have submitted written objections to the same effect (*see, e.g.*, ECF No. 1756). However, "[t]he dollar amount of the settlement by itself is not decisive in the fairness determination," and "[t]he fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (citation omitted). "Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Id.* (*quoting In re Agent Orange Product Liability Litig.*, 597 F. Supp. 740, 762 (D.C.N.Y. 1984), *aff'd in part and rev'd in part on other grounds*, 818 F.2d 226 (2d Cir. 1987)); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) ("[i]t is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se*

render the settlement inadequate or unfair. Indeed, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." (citation omitted)); *see also supra*, §§ I.A & C.

Here, the class claims being settled through the MSA include, among others, constitutional tort claims—as to State Defendants, bodily integrity under 42 U.S.C. § 1983, and as to the City of Flint, *Monell* liability for bodily integrity—for which recovery to residential property owners through litigation would face significant challenges over and above those to individuals and would be subject to appeal if successful.[17] SSC for the Residential Property Class factored all of this into the arm's-length settlement allocation discussions. *See* ECF No. 1319-8, ¶¶ 2 & 7–8. In light of the challenges Class Plaintiffs will face litigating these claims against the Settling Defendants, Co-Lead Class Counsel and SSC for the Residential Property Subclass believe that the allocation provided for in the MSA presents fair and adequate relief for property owners from the Settling Defendants. *See generally id*.

Class Plaintiffs have additionally asserted claims for professional negligence against the Engineering Defendants and continue to vigorously litigate those unsettled claims. As set forth in Class Plaintiffs' motion for certification of a

---

[17] Claims for unjust enrichment on behalf of property owners who paid for Flint Water were also asserted in State Court. *See* ECF No. 1355.

litigation class, Class Plaintiffs believe they are entitled to recovery for property owners on those claims and are zealously pursuing such relief. *See* ECF No. 1207. Should Class Plaintiffs prevail against the Engineering Defendants, the allocation of any recovery may differ from that set forth in the MSA and would provide an avenue for additional recovery for residential property owners.

Finally, some objectors objected that the MSA "does not expressly include payment of water bills by the residents of the City of Flint." *See, e.g.*, ECF No. 1568, PageID.60590; ECF No. 1613, PageID.61193. However, the MSA *does* expressly include, as persons or entities eligible to register to participate in the Settlement Program, adults who "were legally liable for the payment of bills" for water from the Flint Water Treatment Plant, whether for a residence or a business, MSA, ECF No. 1394-2, PageID.54140, and consequently provides compensation for harm suffered through "payment of water bills by the residents of the City of Flint."

### c. Objections to Compensation for Representatives

Objectors using both forms objected that "Plaintiffs' attorneys" are receiving too much compensation while community residents are receiving too little, and that Class Representatives are similarly "being paid too much" compared to community members. *See, e.g.*, ECF No. 1701, PageID.61636; ECF No. 1687, PageID.61574. With respect to attorney compensation, Interim Co-Lead Class Counsel are simultaneously submitting a brief in support of attorneys' fees, and incorporate by

reference the discussion set forth there, which is responsive to this objection. *See In re Auto. Parts Antitrust Litig.*, 2:12-CV-00203, 2017 WL 3499291, at *11 (E.D. Mich. July 10, 2017) ("Because an award of attorneys' fees is a matter separate and apart from determining whether a proposed settlement is fair, adequate, and reasonable, *see Bowling v. Pfizer*, 102 F.3d 777, 779 (6th Cir. 2006), the Court will issue a separate order regarding attorneys' fees that addresses those objections.").[18]

Regarding compensation to the named plaintiffs, the MSA provides that Class Counsel *may* seek an incentive award of up to $15,000 each for the Class Representatives, MSA, ECF No. 1394-2, PageID.54155. However, Interim Co-Lead Class Counsel have not requested incentive awards for named plaintiffs. Accordingly, those class representatives are receiving the same amount as similarly-situated members of the Flint community, and the objection that they are receiving comparatively "too much" is moot.

---

[18] The checklist forms also include the objection, selected in some instances, that "The lawyers for the Class and Plaintiffs will not represent me in my Objection Rights and Fairness Hearing to be held on July 12, 2021." *See, e.g.,* ECF No. 1641, PageID.61343. However, it is not clear how this translates as an objection to the proposed settlement.

Interim Co-Lead Class Counsel will appear at the final approval hearing on behalf of the Settlement Class and Subclasses and have, along with SSC and as set forth herein, diligently represented the best interests of Class and Subclass members. It is true, however, that at the final approval hearing, Interim Co-Lead Class Counsel will argue in full support of the proposed settlement and will not offer argument in support of objections. Potential class members wishing to obtain separate counsel may do so—and in many instances have, as reflected by the objections filed on the docket by such separate counsel.

### d.    Bone Scan Objections

Some objectors have indicated via checklist forms that they "have not been given the opportunity to have a bone lead scan test to know if [they] have suffered a personal injury and the bone lead scan test has not been approved by the FDA for use in humans." *See, e.g*., ECF No. 1641, PageID.61343; *see also* ECF No. 1645, PageID.61366 (example of checklist objection to bone scans based on lack of opportunity to receive one).

Bone scans serve as one form of proof for an Adult Injury claimant to participate in the mostly highly compensated categories. *See* ECF No. 1319-2, PageID.40822–40823. Individuals without bone scan records may still participate by providing blood lead level records or by participating in the settlement in a lower category. Because bone scans are not required for participation—and indeed, are not even the only means of qualifying for any given category on the Settlement Grid— the assertion of some class members that they were unable to obtain an appointment does not render the Settlement unreasonable.

That said, Interim Co-Lead Class Counsel are aware of concerns regarding the accessibility of obtaining a bone scan and have worked and continue to work diligently to provide bone scans in as safe and equitable manner as possible for adult claimants who wish to receive them. Interim Co-Lead Class Counsel have worked closely with Dr. Andrew C. Todd and Dr. Karl J. Jepsen to expand access to bone

scans for Settlement Class members. *See* ECF No. 1497. However, as Drs. Todd and Jepsen explain, Interim Co-Lead Class Counsel encountered significant hurdles establishing a second site to administer scans, including obstacles to purchasing the necessary X-Ray Fluorescence (XRF) device. *Id*., PageID.58187.

Given the small number of objections filed on this issue and the ability of claimants to participate in the settlement absent a bone scan—or to opt-out of the settlement altogether should they wish to do so—objections regarding the use of bone scans do not justify denying final approval. However, to address concerns about the availability of bone scans, Interim Co-Lead Class Counsel would not oppose extending the deadlines to submit bone scans as evidence of exposure, and/or of claims or registration forms, in order to allow potential claimants a further opportunity to pursue such scans.

### e.  COVID-19 Related Objections

Objectors used the checklist forms to, in some instances, raise several objections related to the impact of the COVID-19 pandemic. These include:

- "The deadline registration period is too short and . . . many Class members [will] be arbitrarily excluded due to their inability to submit the necessary paperwork to either opt-in or opt-out. The U.S. Mail has been slow due to COVID-19, and not all residents received the necessary paperwork within the 30-60 day period."

- "The COVID 19 pandemic shut down of businesses hindered me being able to meet with attorneys representing the Class. As a result of the office hours being almost none, I have had minimum contact with the attorneys representing the Class or Plaintiffs."

- "As an elderly person with insufficient skills to do Zoom, I was not able to participate in the Zoom meetings concerning the registration process, and allowing communications with the attorneys."

*See, e.g.*, ECF No. 1746, PageID.62861; ECF No. 1645, PageID.61366.

As explained above, as well as below with respect to the Notice program, Interim Co-Lead Class Counsel and the Claims Administrator have provided numerous methods and opportunities for Settlement Class members to connect with counsel, to ask questions and receive answers, and to receive assistance in preparing and submitting claims forms. Ex. 2, ¶¶ 3–8, 10; *see also* Ex. 1, ¶¶ 44–45. And, as indicated both by the volume of calls and emails to which counsel have responded, delivered notices, and the steady stream of registration forms submitted, these efforts have been largely successful. *See* Ex. 2, ¶¶ 4–7, 9; Ex. 1, ¶¶ 19, 23–42; ECF No. 1790 (Special Master Report providing preliminary registration numbers). With regard to the concern that some residents might not timely receive paperwork related to the settlement, this objection is purely speculative: it does not reflect the reality of the objectors submitting the objection, given that those individuals have received notice of the settlement in sufficient time to file objections.

Interim Co-Lead Class Counsel believe that their efforts to ensure full opportunity to learn of and participate in the settlement have been, as the Court found, the "best notice practicable under the circumstances." ECF No. 1399, PageID.54451. However, they acknowledge the unique challenges imposed by the

COVID-19 pandemic. To the extent the Court has concerns regarding the impact of COVID-19 on the claims registration process raised by objectors, Interim Co-Lead Class Counsel would not oppose extending the deadline for registration, which would appropriately address these objections.

### f.    Minors-Related Objections

Some objectors used checklist forms to indicate that "The break-down to children is not adequate or fair, and the percentages for the age classifications appear to be arbitrary and capricious," *e.g.,* ECF No. 1568, PageID.60590, and/or that "My child has not been given the opportunity to have a neuropsychological test to know if she/he has suffered a personal injury, *e.g.,* ECF No. 1635, PageID.61313. However, Minor claimants are not part of the Settlement Class. Accordingly, the amount going to Minor claimants, and particularly the internal distribution of that amount between minor age categories and the mechanism for determining individual Minor award amounts, do not require final approval under Rule 23(e). *Cf.* ECF No. 1399, PageID.54441, n.13 (Order noting that because Minors are not part of the Settlement Class, the Court need not consider whether provisions specific to Minors satisfy Rule 23(e)).

Regardless, with respect to objections to the amount—which accounts for 79.5% of the Settlement—to children is inadequate or fair, the involvement of three separate Subclass Settlement Counsel on behalf of Minors (one for younger children,

31

one for older children, and one for children with future manifesting injuries) in the negotiation process, and their endorsement of the result, weigh in favor of finding the ultimate agreement adequate and fair. *See* ECF Nos. 1319-5 (Declaration of SSC for Young Children); 1319-6 (Declaration of SSC for Older Children); 1319-7 (SSC for Future Manifesting Injury).

### E.     The MSA is consistent with the public interest.

Courts in this District and beyond have repeatedly recognized that "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205 (6th Cir. 1992)). *Accord Griffin*, 2013 WL 6511860, at \*5; *Packaged Ice*, 2011 WL 717519, at \*12; *In re Auto. Parts Antitrust Litig.*, 2017 WL 3499291, at \*12. That is particularly so here, where Settlement Class members have been waiting for years for relief. *See Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 WL 4726938, at \*10 (E.D. Mich. Aug. 14, 2020) (concluding settlement was in the public interest where "allowing settlement in this matter will promote the fair and expeditious resolution of the matter"). Furthermore, the Settling Defendants include public entities for which achieving the certainty of settlement is also in the public interest. *See, e.g., Lasalle Town Houses Coop. Ass'n v. City of Detroit*, 4:12-CV-13747, 2016 WL 1223354, at

*8 (E.D. Mich. Mar. 29, 2016) (settlement served "public interest by achieving certainty for parties," including defendant City of Detroit). Consideration of the public interest weighs in favor of final approval.

### F. The MSA is the result of prolonged arm's-length negotiations conducted by highly experienced counsel before Court-appointed third-party neutrals.

Courts presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion unless there is contrary evidence. *In re Packaged Ice*, 2011 WL 717519, at *12. Such evidence does not exist here. On the contrary, two Court-appointed mediators, former United States Senator Carl Levin and former Wayne County Circuit Court Judge Pamela Harwood, have actively facilitated the settlement discussions in this matter since their appointment over three years ago, in 2018. *See* ECF No. 324, PageID.11687–11693. They have been assisted in this by Special Master Greenspan, who has been actively involved in managing various aspect of this case and is well familiar with the parties and the facts. *See* ECF No. 544, PageID.16581–16590. Such "participation of an independent mediator"—or, in this case, several independent mediators—"in the settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties," and thus "weighs in favor of approving the settlement." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007); *see also Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 627

(E.D. Mich. 2020) ("The negotiations of the Settlement Agreement were conducted at arms-length by adversarial parties and experienced counsel, with facilitative assistance from Judge Roberts."). This factor too supports final approval and the settlement.

### G. The MSA treats Class Members equitably with respect to one another.

As the Court stated in its Preliminary Approval Order, the settlement distribution process set forth in the MSA "requires that similarly situated claimants receive the same monetary award (subject to lawful liens that might be asserted). In this way, the settlement assures 'horizontal equity' among claimants." Order, ECF No. 1399, PageID.54411. It does so by providing a detailed grid describing the categories of monetary awards available to claimants and the proofs required to qualify for each. *See* ECF No. 1319-2. In this manner, the MSA's method of apportionment treats claimants within any given category equitably, while also taking "appropriate account of difference" among categories of claims by considering the extent of each claimant's injury. *Kis v. Covelli Enters., Inc.*, Nos. 4:18-cv-54, 4:18-cv-434, 2020 WL 2812405, at *5 (N.D. Ohio May 29, 2020) (quoting FED. R. CIV. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments); *see also In re Oil Spill by Oil Rig "Deepwater Horizon" in Gulf of Mexico*, 910 F. Supp. 2d 891, 957 (E.D. La. 2012)*, aff'd sub nom. In re Deepwater Horizon,* 739 F.3d 790 (5th Cir. 2014) ("[T]here is nothing improper in the parties' negotiation of

claims frameworks that compensate class members in light of the strength of their claims."); *In re Nat'l Football League Players' Concussion Inj. Litig.*, 301 F.R.D. 191, 196 (E.D. Pa. 2014) (Maximum monetary awards ranging in value from $1.5– 5 million were determined by six separate Qualifying Diagnoses).

As discussed above, a relatively small number of objectors have pointed to the availability of bone scans as creating an imbalance between claimants who have received such scans and those who have not. However, as stated above, bone scans are only one means of providing proof of exposure under the MSA. Moreover, to the extent the Court has concerns regarding the availability of bone scans, Interim Co-Lead Class Counsel would not oppose an extension of the deadlines to submit bone scan evidence and the relevant forms to permit further efforts to establish an additional testing facility.

The "horizontal equity" between similarly situated class claimants created by the categorical award grid, paired with its appropriate consideration of relevant differences, supports final approval of the MSA.

## II.   Notice of the MSA Satisfied Rule 23(e) and Due Process.

Under Rule 23, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]." FED. R. CIV. P. 23(e)(1). In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). Due process similarly requires that absent class members be provided the best notice practicable, reasonably calculated to apprise them of the pendency of the action, and affording them the opportunity to opt out or object. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *UAW*, 497 F.3d at 629.

The "best notice practicable" standard does not require actual notice, nor does it require direct notice when class members' individual addresses are not readily available or where it is otherwise impracticable. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.311, at 288 (2004). The mechanics of the notice process "are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due-process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975).

In its Preliminary Approval Order, the Court found that "the Settlement Agreement's plan for Class Notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1) of the Federal Rules of Civil Procedure." ECF No. 1399, PageID.54451. That plan has now been carried out. Specifically, a Long Form Notice packet has been mailed to each Settlement Class Member for which Interim Co-Lead Class Counsel have been able to determine a likely mailing address—a list of over 57,000 addresses—over 90% of which resulted in successful delivery. Ex. 1, ¶¶ 16–19. Email Notices have

additionally been sent to addresses that could be determined for Settlement Class members. *Id.*, ¶¶ 21–22.

In addition to providing direct notice to as many Settlement Class members as reasonably possible, the Notice Administrator implemented a comprehensive media notice campaign. This included both weekday and Sunday publication in *The Flint Journal*, *id.*, ¶ 24; publication of local digital banners on Facebook, Instagram, and the Google Display Network, which resulted in approximately 49.8 million adult impressions, *id.*, ¶ 26–31; publication of supplemental digital banners on the same platforms targeting a broader geographic area, in the event some Settlement Class members are no longer residing in Michigan, *id.*, ¶ 32–34; television spots aired on six local television stations in Flint every day for a two-week period in March 2021, *id.*, ¶ 35; radio spots aired on 10 local radio stations in Flint every day for two weeks in March 2021, *id.*, ¶¶ 36–37; banner notices and radio ads placed on the streaming services Pandora and SoundCloud, *id.*, ¶ 38; video ads placed on YouTube, *id.*, ¶ 39; PSA radio ads distributed throughout the State of Michigan, *id.*, ¶ 40; and sponsored search listings to facilitate locating the Settlement Website, *id.*, ¶ 41–42. The Settlement Website established by the Notice Administrator, www.OfficialFlintWaterSettlement.com, provides detailed information about the litigation and settlement, including the Settlement Agreement, Long Form Notice, Settlement Program Overview Notice (contained in the Long Form Notice Package),

Registration Form, Opt Out Form, Compensation Grid, and other important court documents as well as answers to frequently asked questions. *Id.*, ¶ 44.

Finally, "because this case has received widespread attention from the media, the official settlement notice was supplemented informally by numerous news reports." *In re: Whirlpool Corp. Front-loading Washer Products Liab. Litig.*, 1:08-WP-65000, 2016 WL 5338012, at *9 (N.D. Ohio Sept. 23, 2016). This included, for instance, coverage by major news outlets such as ABC, NBC, and PBS, and national publications such as the New York Times.[19]

With respect to content, the class notice must contain a summary of the litigation sufficient "to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quotation omitted). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting; and (7) the binding effect of a class judgment on class members. FED.

---

[19] *See* stories available online at: https://www.abc12.com/2021/03/24/more-than-33000-registrations-so-far-for-flint-water-settlement/; https://www.nbcnews.com/news/us-news/michigan-reaches-600m-deal-with-flint-water-crisis-attorney-says-n1237430; https://www.pbs.org/newshour/nation/flint-joins-641-million-deal-to-settle-lawsuits-over-lead-in-water; https://www.nytimes.com/2020/08/19/us/flint-water-crisis-settlement.html.

R. Civ. P. 23(c)(2)(B).

The Notice provided here meets this standard: The Court previously held that "the Class Notice (attached to Plaintiffs' motion as Exhibit K), and the Claim Form included as part of the Class Notice, comply with Rules 23(e)(1) and 23(c)(2)(B) of the Federal Rules of Civil Procedure." ECF No. 1399, PageID.54451. That Notice clearly, concisely, and accurately summarizes the Settlement, the available benefits, the steps that Settlement Class members must take to participate, and the relevant deadlines. *See generally* ECF No. 1319-11, PageID.41356 and 41358–41366. It also sets forth the Settlement Class definition and explains that Settlement Class members may opt-out of the Settlement or may enter an appearance through counsel. *Id.*, PageID.41358–41369. Likewise, the Notice further provides contact information for counsel and directs recipients to a website dedicated specifically to the Settlement where they can access additional information. *Id.*, PageID.41368, 41371. A copy of the Long Form Notice Package provided to Settlement Class members via mail and available on the Settlement Website is attached to the Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Settlement Notice Plan filed with this Motion. *See* Ex. 1, ¶ 16 & Attachment 2.

The Notice form and the plan for its dissemination that was approved by the Court, and which has now been successfully implemented, satisfy the requirements of Rule 23(e)(1) and Due Process.

**III.    The Court Should Certify the Settlement Class and Subclasses.**

In its preliminary approval orders, the Court found that Rule 23's requirements were met and provisionally certified the Settlement Class and Subclasses. Because the proposed Settlement Class and Subclasses meet the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3), the Court should likewise grant final certification of the Settlement Class and Subclasses.

**A.    The Settlement Class and Subclasses satisfy Rule 23(a).**

A class satisfies Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. *Griffin*, 2013 WL 6511860, at *6. The Settlement Class meets all of the requirements of Rule 23(a).

*Numerosity*. To establish numerosity, plaintiffs need only show that joining all members of the potential class is extremely difficult or inconvenient. *Golden v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). Courts in the Sixth Circuit have recognized that "more than several hundred" class members can satisfy numerosity based simply on the number of potential litigants. *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

As noted above, the Settlement Class consists of approximately 60,000

40

potential Adult Injury claimants.  In Plaintiffs' Motion for Preliminary Approval, Plaintiffs cited the Report of Dr. Robert Simons regarding business losses, which reflected an estimated 700 impacted businesses. *See* Order, ECF No. 1399, PageID.54435 (citing Plaintiffs' motion). Dr. Simons has since provided a revised estimate of impacted businesses based on a conservative interpretation of updated data, which indicates approximately 400 impacted businesses. *See* ECF No. 1535, PageID.59369–59371. This updated figure still easily satisfies the numerosity requirement for the Business Economic Loss Subclass. *See Garner Prop.*, 333 F.R.D. at 622 ("[A] class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (numerosity is satisfied with a putative class of at least "between 21 and 40" members).

The Settlement Class consists of approximately 60,000 individual claimants and 400 businesses.[20] These numbers more than satisfy the numerosity threshold.

***Commonality***. Commonality requires only "one issue whose resolution will advance the litigation by affecting a significant number of the proposed class." *In re*

---

[20] The Court's Preliminary Approval Order cites the figure for the approximate population of Flint, 100,000, as the number of potential members of the personal exposure and property damage subclasses. ECF No. 1399, PageID.54436. However, individuals who were under the age of 18 at the time of exposure are not members of the Settlement Class or Subclasses. As explained above, the universe of Adult Injury and Residential Property Owner Subclass members is approximately 60,000 once Minors and Individual Plaintiffs are accounted for.

*Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 404 (S.D. Ohio 2007), *abrogated on other grounds by In re Behr Dayton Thermal Prod., LLC*, No. 3:08-CV-326, 2015 WL 13651286, at *4 (S.D. Ohio Feb. 27, 2015); *see Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) ("Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class.").

Several common questions exist here, but as the Court found in its Preliminary Approval Order, the Court need not go beyond one: whether the State and City Defendants had the opportunity to reflect and deliberate before they acted or failed to act. ECF No. 1399, PageID.54437. As the Court explained,

> The premise of this litigation as it pertains to the governmental defendants is that action or inaction of certain State and City officials resulted in (1) the decision to switch the source of Flint's water; and (2) a failure to address the consequent contamination of the water, which in turn lead to exposure and damage. The factual underpinnings that must be resolved in order to determine liability and damages to the governmental defendants are common to the class. There would not and could not be different factual findings in separate cases.

*Id.*, PageID.54438. This presents "a common issue the resolution of which will advance the litigation," and thus satisfies the commonality requirement. *Id.* (quoting *Sprague*, 133 F.3d at 397).

As set forth in Plaintiffs' Preliminary Approval Motion, this action present multiple other common questions, including at least:

- whether the conduct of the State Defendants and City Defendants directly and proximately caused the Flint water system to be contaminated with

corrosive water, lead, and dangerous bacteria, and/or increased the risk of harm to the Class and/or Subclasses;

- whether the implementation or execution of a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the City of Flint violated Plaintiffs' fundamental liberty interest in bodily integrity; and

- whether the actions of the Rowe and McLaren Defendants—both of which are Settling Defendants, though not named in the Class Complaint—violated Plaintiffs' rights.

The presence of these further questions common to the Settlement Class underscore that commonality is satisfied here. *See, e.g., Widdis v. Marathon Petroleum Co.,* 13-CV-12925, 2014 WL 11444248, at *5 (E.D. Mich. Nov. 18, 2014) (common questions in an environmental mass tort included whether an explosion was foreseeable, whether defendant took available precautions to prevent the explosion, and whether defendant or its negligence was the cause of an evacuation); *Collins v. Olin Corp.*, 248 F.R.D. 95, 101 (D. Conn. 2008) (the "course of conduct of [defendant] allegedly leading to the contamination of [plaintiffs'] properties" presented common question in class action seeking damages for that contamination).

*Typicality*. Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defense of the class." FED. R. CIV. P. 23(a)(3). In its Preliminary Approval Order, the Court held that "the representatives of each class—the Adult Exposure Subclass, the Property Damage Subclass, and the Business Economic Loss Subclass—satisfy the typicality

43

requirement, because the representatives' claims (1) 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members'; and (2) are 'based on the same legal theor[ies]' as other class members' claims." ECF No. 1399, PageID.54438–54439. The Court should enter the same ruling now.

The representatives of the Adult Exposure Subclass Representatives— Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael Snyder— are individuals or representatives of individuals who resided in the City of Flint; were exposed to Flint tap water during the relevant time period; and suffered medical, financial, and/or emotional damages as a result of Settling Defendants' actions. *See* ECF No. 1318, PageID.40304–40305 (describing specific harm suffered by each Adult Exposure Subclass Representative). Their claims are accordingly typical of the Adult Exposure Subclass, whose members "ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting personal injury." ECF No. 1399, PageID.54439 (quoting ECF No. 1319-1, PageID.40335–40336 (as amended, ECF No. 1394-2, PageID.54127–54128)).

The representatives of the Property Damages Subclass—Elnora Carthan and David Munoz—owned homes in Flint during the relevant time period, received water from the Flint Treatment Water Plant, and suffered diminished property and appliance values as a result of Settling Defendants' actions. *See* ECF No.1318,

PageID.40305–40306. As the Court previously held, these representatives' claims "align with absent Property Damages Subclass members who 'owned or were the lessee of a residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period.'" ECF No. 1399, PageID.54440 (quoting (ECF No. 1319-1, PageID.40341 (as amended, ECF No. 1394-2, PageID.54133)).

The representatives of Business Economic Loss Subclass Representatives—635 South Saginaw LLC (which does business as "Cork on Saginaw"), Frances Gilcreast, and Neil Helmkay—each owned at least one commercial property in Flint during the relevant period, and suffered diminished profits due to commercial reticence to patronize Flint businesses as a result of Settling Defendants' actions. *See* ECF No. 1318, PageID.40306. Once again, as the Court has held, "[t]hese claims align with absent Business Economic Loss Subclass members who 'owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss.'" ECF No. 1399, PageID.54441 (quoting (ECF No. 1319-1, PageID.40336 (as amended, ECF No. 1394-2, PageID.54128).)

***Adequacy***. In a class action, a class's representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requires

45

the class representatives to "have common interests with unnamed members of the class" and to "vigorously prosecute the interests of the class through qualified counsel." *Foundry Resins*, 242 F.R.D. at 407. A court also must examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the class under Federal Rule of Civil Procedure 23(g). *Id.* "In absence of evidence to the contrary, courts will presume the proposed class counsel is adequately competent to conduct the proposed litigation." *Marcus v. Dep't of Revenue*, 206 F.R.D. 509, 512 (D. Kan. 2002).

As the Court previously held, the requirement that named plaintiffs have common interests with absent class members "is easily met here." ECF No. 1399, PageID.54442. Each of the named plaintiffs seeks to hold Defendants liable for the same misconduct, and they have diligently sought recovery that would benefit the Class as a whole. *See* ECF No. 1318, PageID.40308. Because the named plaintiffs' interests "are identical to those of the unnamed members of the class," the "'common interests' requirement is accordingly met." ECF No. 1399, PageID.5442 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976)).

The second requirement for adequacy is similarly met in this case. The named plaintiffs have worked closely with counsel throughout this action, dedicating significant time and energy to responding to multiple rounds of written discovery, preparing and sitting for depositions, and undergoing home inspections. Interim Co-

Lead Class Counsel and the Court-appointed Executive Committee have, for their part, vigorously litigated this case, at set forth in Part IV below. The Court has also appointed independent Subclass Settlement Counsel in a manner that serves the interests of each of the subclasses and avoids the risks of any intraclass conflict, and who are active and experienced litigators that this Court found possess "the qualifications and experience to adequately and fairly represent clients in this case." Ordre, ECF No. 929, PageID.24354.

The fact that Class Counsel represent the proposed Subclasses does not present any conflict. As a leading treatise has recognized, when multiple subclasses work together and are represented by the same attorneys, they can often "leverage a better settlement . . . due to a defendant's desire to obtain a global resolution." 1 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 3:75 (5th ed. 2020). The only instance in which Subclasses might have divergent interests is in allocating damages, but any concerns in this regard are resolved by the Court's appointment separate settlement counsel for each Subclass.

The Court stated in its Preliminary Approval Order that Interim Co-Lead Class Counsel and Subclass Settlement Counsel "have lived up to their appointments in vigorously representing Plaintiffs through the litigation and settlement processes." ECF No. 1399, PageID.5443. They have continued to do so throughout the Notice and Registration process. *See generally* Ex. 2. Accordingly, both named plaintiffs

and counsel satisfy Rule 23(a)(4)'s adequacy requirement.

**B.      The Settlement Class and Subclasses satisfy Rule 23(b)(3).**

In addition to the requirements of Rule 23(a) discussed above, certification of a settlement class requires that the putative class falls under at least one of the three subsections of Rule 23(b). Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). The Sixth Circuit has also recognized "an implied ascertainability requirement" for Rule 23(b)(3) classes. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). Once again, the preliminarily-certified Settlement Class and Subclasses satisfy each of these requirements.

*Predominance*. The Rule 23(b)(3) predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted). The requirement serves the interests of efficiency and pragmatism: "When common questions represent a significant aspect of the case

48

they can be resolved for all members of the class in a single adjudication, there is a

clear justification for handling the dispute on a representative rather than on an

individual basis.'" *Widdis*, 2014 WL 11444248, at *7 (alteration in original)

(citation omitted). Consequently, "[c]ourts have frequently held that this merely

requires a 'common nucleus of operative facts'. . . even though other important

matters will have to be tried separately." *Id*. (alternation in original) (citation

omitted).

   As this Court has observed, in some "mass tort accidents," predominance

may be satisfied even if "questions peculiar to each individual member of the class

remain after the common questions of the defendant's liability have been resolved."

ECF No. 1399, PageID.5445 (quoting *Sterling v. Velsicol Chemical Corp*., 855 F.2d

1188, 1197 (6th Cir. 1988)). The Sixth Circuit has explained that in such

circumstances, "[n]o matter how individualized the issue of damages may be . . . the

factual and legal issues of a defendant's liability do not differ dramatically from one

plaintiff to the next." *Sterling*, 855 F.2d at, 1197; *see also In re Whirlpool Corp*.,

722 F.3d at 854 ("When adjudication of questions of liability common to the class

will achieve economies of time and expense, the predominance standard is generally

satisfied even if damages are not provable in the aggregate."); *Good v. W. Virginia-

Am. Water Co*., CV 14-1374, 2017 WL 2884535, at *12 (S.D.W. Va. July 6, 2017)

(collecting cases in which courts found "predominance in the mass tort arena when

a single common event or common cause gave rise to the claims of each class member").

As the Court further held in its Preliminary Approval Order, "[t]his is one such mass tort accident," ECF No. 1399, PageID.54446. The common liability questions here—including whether the State and City Defendants had the opportunity to reflect and deliberate before they acted or failed to act; whether the State and City Defendants' conduct directly and proximately caused contamination of the Flint water system; whether a policy or practice of the City of Flint violated Plaintiffs' fundamental liberty interest in bodily integrity was; and whether the actions of the Rowe and McLaren Defendants violated Plaintiffs' rights—satisfy the predominance requirement for certification for a class settlement. *Id.* (citing *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 434 (3d Cir. 2016); *In re Whirlpool*, 722 F.3d at 854; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

***Superiority***. Federal Rule of Civil Procedure 23(b)(3) provides several factors for determining whether a class action presents the superior method for resolving claims, including: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the

difficulties likely to be encountered in management of the class action. FED. R. CIV. P. 23(b)(3). However, "when '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* FED. R. CIV. P. 23(b)(3)(D), for the proposal is that there be no trial." *In re Oil Spill*, 910 F. Supp. 2d at 911 (alteration in original); *see also Cardizem*, 218 F.R.D. at 517. Accordingly, the relevant factors for the Court's consideration are the first three; and, as the Court has held, they are satisfied here.

In the Court's Preliminary Approval Order, it found that that: (1) "the class members' interest in individually controlling the litigation weighs in favor of conditional class certification, because individuals seeking individualized relief either already chose to file their own complaints or hire individual counsel to address their claims . . . or may eventually seek exclusion from the settlement class," and class litigation serves economic efficiency for Settlement Class members; (2) "the extent and nature of class members' litigation in this case weighs in favor of certification" in light of the years of zealous litigation by class representatives and class counsel; and (3) "all federal litigation concerning the Flint Water Cases has been centralized in the Eastern District of Michigan, rendering this forum ideal for resolving the dispute." ECF No. 1399, PageID.54447–54448.

For the reasons set forth in this Court's Preliminary Approval Order, *id*., as

well as in Plaintiffs' Motion for Preliminary Approval, ECF No. 1318, PageID.40314–40315, and Class Plaintiffs' Motion for Class Certification, ECF No. 1207, PageID.34516–34522, the Settlement Class and Subclasses satisfy the superiority requirement of Rule 23(b)(3).

   *Ascertainability*. The implied ascertainability requirement recognized by the Sixth Circuit requires plaintiffs to demonstrate "that the members of the class [are] *capable* of specific enumeration." *Cole v. City of Memphis*, 839 F.3d 530, 542 (6th Cir. 2016) (emphasis in original) (internal citations omitted). This condition is satisfied by "a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Id.*

   Here, the MSA provides objective definitions of the Settlement Class and Subclasses and sets forth specific methods for claimants to demonstrate their membership in a given Subclass. *See* ECF No. 1399, PageID.54463–54464, 54449–54450. These include:

- **Adult Exposure Subclass**: membership may be demonstrated by age (18 years or older at the time of first exposure); exposure to Flint water through residence, dwelling, school attendance, or work in the City of Flint; <u>and</u> either documented blood lead levels ("BLL") above a certain threshold, <u>or</u> a bone lead test demonstrating elevated bone lead levels, <u>or</u> medical records documenting injury caused by exposure to Flint water, ECF No. 1319-2, PageID.40818–40824;

- **Property Damage Subclass**: membership may be demonstrated by documents showing residential property ownership or lease in the City of

Flint during the relevant period, such as, for instance, a water bill, deed, lease, or tax records. *Id*., PageID.40827;

- **Business Economic Loss Subclass**: membership may be demonstrated by documents showing proof of business ownership in the City of Flint during the relevant period, such as, for instance, a water bill, deed, lease, tax records, certificate of incorporation; and tax filings showing lost net profits. *Id*., PageID.40829.

Because the Class and Subclass descriptions are sufficiently definite to allow the Claims Administrator to determine whether a given individual or entity is a Settlement Class Member, and for the reasons set forth in the Court's Preliminary Approval Order, ECF No. 1399, PageID.54449–54450, the proposed Settlement Class and Subclasses satisfy Rule 23(b)(3)'s ascertainability requirement.

## IV.   The Court Should Appoint Interim Co-Lead Class Counsel and the Executive Committee as Class Counsel.

Rule 23(g) requires that a court that certifies a class, including for settlement, "must appoint class counsel." FED. R. CIV. P. 23(g)(1). Here, Interim Co-lead Class Counsel and the Executive Committee have vigorously prosecuted the interests of the Settlement Class and Subclasses, and therefore meet the standard of adequate counsel under Rule 23.

The Court noted in its Preliminary Approval Order that it "has become very familiar" with Interim Co-Lead Class Counsel through the previous four years of this case. ECF No. 1399, PageID.54442–54443. Thus, rather than restating Class Counsel's qualifications and dedication to vigorously litigating this action, Class

Plaintiffs incorporate and refer the Court to their previous submissions regarding the appointment of Interim Co-Lead Class Counsel and Class Plaintiffs' Executive Committee for further discussion of their background and efforts.[21]

This Court found that Class Counsel satisfy the criteria for formal appointment as interim class counsel under Rule 23(g)(1)(A) when it granted Plaintiffs' joint motion for consolidation. ECF No. 173. Subsequently, this Court has twice reevaluated Class Counsel's qualifications and contributions to the litigation, and in both instances has reappointed Michael L. Pitt and Theodore J. Leopold as Interim Co-Lead Class Counsel. *See* ECF Nos. 696, 1021. Class Counsel have expended thousands of hours of work toward the prosecution of this case—attending over eighty depositions, reviewing hundreds of thousands of documents, attending status conferences and hearings, propounding and responding to written discovery, and briefing a multitude of issues ranging from Defendants' motions to dismiss and Class Plaintiffs' amendment of the pleadings to qualified immunity and appellate issues—demonstrating their ongoing commitment to achieving the best possible

---

[21] *See* Joint Mot. to Consolidate Cases, Appoint Interim Co-Lead Counsel, & Appoint Liaison Counsel for the Individual Actions, June 9, 2017, ECF 136; Statement of Submission Regarding the Interim Co-Lead Counsel's Duties, the Duties of Co-Liaison Counsel for the Individual Actions, & Creation of Pls.; Executive Committee for Proposed Class, Sept. 29, 2017, ECF 212; Application for Reappointment as Interim Co-Lead Class Counsel, Nov. 30, 2018, ECF 690; Application for Reappointment as Interim Co-Lead Counsel, Dec. 18, 2019, ECF 1019.

result for Class and Subclass members. Indeed, they continue to push this litigation forward against the non-settling Defendants, while simultaneously dedicating significant efforts to answering questions from Settlement Class members with respect to the settlement and facilitating the claims registration process. *See generally* Ex. 2. The Court should accordingly appoint Interim Co-Lead Class Counsel and the Executive Committee as Settlement Counsel under Rule 23(g).

## CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court grant the relief requested herein.

Dated: May 27, 2021

<table>
<tr><td>

*/s/ Theodore J. Leopold*
Theodore J. Leopold
Leslie M. Kroeger
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com

Joseph M. Sellers
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner
Alison S. Deich
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW

</td><td>

*/s/ Michael L. Pitt*
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER BONANNI & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150
Detroit, MI 48226
(313) 800-4170 Telephone

</td></tr>
</table>

Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
jsellers@cohenmilstein.com
kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
Katherine M. Peaslee
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com

pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI 48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI 48326
(248) 373-3700 Telephone

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.
LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &
ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**

mlmcalpine@mcalpinelawfirm.com    246 East Saginaw Street
jeblake@mcalpinelawfirm.com      Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

*/s/  Katherine M. Peaslee*_____
Katherine M. Peaslee