# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-MKM |
| | HON. JUDITH E. LEVY |
| | MAG. MONA K. MAJZOUB |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

CONCISE STATEMENT OF ISSUES PRESENTED ............................. x

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............... xi

I. INTRODUCTION ......................................................................... 1

II. ARGUMENT ................................................................................. 4

    A. The Class Counsel Fee Request Satisfies Rule 23(h)'s
        Procedural Requirements. ..................................................... 5

    B. The Requested Attorneys' Fees Are Reasonable Given the
        Complexity of the Case and Significant Recovery Obtained. ............ 11

        1. An Aggregate Fee Award—for Plaintiffs' Counsel, Class
            Counsel Fees, and Individually Retained Counsel—of 31.6% Is
            Reasonable ................................................................... 11

        2. The Objectors Confuse Common Benefit Fees and Individual
            Case Fees (Retainer Contractual Fee). ................................ 16

        3. The Optional Lodestar Crosscheck Supports the
            Reasonableness of the Requested Fees. ............................... 17

        4. The Court May Calculate Attorneys' Fees Considering the
            Gross Benefit Obtained for the Class. ................................. 22

        5. The Proposed Fee Cap for Individual Counsel Is Fair and
            Workable. .................................................................. 26

    C. Objectors Are Not Entitled to Additional Billing Records or
        Discovery ........................................................................ 26

        1. The Records Plaintiffs' Counsel Provided to the Court and
            Special Master Are Sufficient to Evaluate the Attorney Fee Motion. 26

i

2.      It Is Common and Appropriate for the Court or a Special Master to Review Detailed Billing Records *in Camera*. ....................29

3.      Liaison Counsel Are Not Seeking Common Benefit Fees Related to the Bone Scan Program and Thus Additional Discovery on This is Inappropriate............................................................................40

4.      Objectors Have Not Shown Any Need for or Right to Additional Discovery. ...........................................................................41

      i.      Plaintiffs' Counsel Need Not Produce Fee Sharing Agreements. ..................................................................42

      ii.     There Is No Basis for Requiring Discovery Regarding Contract Attorneys.........................................................45

      iii.    Discovery of Records Related to Bone Scans Are Not Necessary or Relevant in Determining a Common Benefit Award...................................................................46

III.    CONCLUSION...............................................................................47

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re "Agent Orange" Product Liab. Litig.*,
  818 F.2d 216 (2d Cir. 1987) ...........................................................9, 44

*Adkins v. Facebook, Inc.*,
  No. 3:18-cv-05982 (N.D. Cal. Mar. 8, 2021) ....................................39

*In re Anthem, Inc. Data Breach Litig.*,
  No. 15-MD-02617-LHK, 2018 WL 3960068
  (N.D. Cal. Aug. 17, 2018)....................................................19, 32, 45

*Ark. Tchr. Ret. Sys. v. State Street Bank & Tr. Co.*,
  Nos. 11-10230-MLW, 11-12049-MLW, 12-11698-MLW,
  2020 WL 949885 (D. Mass. Feb. 27, 2020) .........................................44, 45, 46

*Arp v. Hohla & Wyss Enters., LLC*,
  No. 3:18-cv-119, 2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)........................18

*In re Auto. Parts Antitrust Litig.*,
  No. 12-md-02311, 2020 WL 5653257 (E.D. Mich. Sept. 23, 2020).................43

*In re Auto. Refinishing Paint Antitrust Litig.*,
  MDL Docket No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ....................12

*Bessey v. Packerland Plainwell, Inc.*,
  No. 4:06-CV-95, 2007 WL 3173972 (W.D. Mich. Oct. 26, 2007) .....................6

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)...................................................................3, 4, 8

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) .................................................4, 9, 10, 44

*Bowling v. Pfizer, Inc.*,
  159 F.R.D. 492 (S.D. Ohio 1994)....................................................41, 42

*Bradburn Parent Tchr. Store, Inc. v. 3M (Minn. Mining & Mfg. Co.)*,
  513 F. Supp. 2d 322 (E.D. Pa. 2007)...............................................12, 13

*Caligiuri v. Symantec Corp.*,
  855 F.3d 860 (8th Cir. 2017) ..................................................................23

*In re Capital One TCPA Litig.*,
  No. 12-cv-10064 (N.D. Ill. Oct. 30, 2014) ..........................................42

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) ..................................................10

*Cassese v. Williams*,
  503 F. App'x 55 (2d Cir. 2012) .......................................................31, 32

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. C-07-5944 JST, 2016 WL 1072097 (N.D. Cal. Mar. 17, 2016)..................36

*In re Cendant Corp. Prides Litig.*,
  243 F.3d 722 (3d Cir. 2001) ..................................................................41

*Chambers v. Whirlpool Corp.*,
  980 F.3d 645 (9th Cir. 2020) ................................................................38

*Cheng Jiangchen v. Rentech, Inc.*,
  No. CV 17-1490-GW-FFMx, 2019 WL 6001562 (C.D. Cal. Nov. 8, 2019) .....12

*Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*,
  Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466
  (W.D. Okla. June 8, 1993) .....................................................................13

*In re Citigroup Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013) ..................................................35

*In re Corel Corp. Inc. Secs. Litig.*,
  293 F. Supp. 2d 484 (E.D. Pa. 2003).....................................................13

*Dardarian v. OfficeMax N. Am., Inc.*,
  No. 11-cv-00947-YGR, 2014 WL 7463317 (N.D. Cal. Dec. 30, 2014) ...........37

*In re DDAVP Direct Purchaser Antitrust Litig.*,
  No. 05 Civ. 2237(CS), 2011 WL 12627961 (S.D.N.Y. Nov. 28, 2011) ...........12

*In re: Dental Supplies Antitrust Litig.*,
  No. 16-CV-696 (BMC), (E.D.N.Y. Mar. 22, 2019 & Jan. 3, 2020).............21, 22

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*,
   401 F.3d 143 (3d Cir. 2005) ............................................................9, 45

*In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*,
   582 F.3d 524 (3d Cir. 2009) ....................................................................27

*In re Dry Max Pampers Litig.*,
   724 F.3d 713 (6th Cir. 2013) ...................................................................34

*In re Enron Corp. Secs., Derivative & ERISA Litig.*,
   586 F. Supp. 2d 732 (S.D. Tex. 2008)....................................................20

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   No. 3:02-cv-1152-M, 2018 WL 1942227 (N.D. Tex. Apr. 25, 2018)...............13

*Faircloth v. Certified Fin. Inc.*,
   No. Civ.A. 99-3097, 2001 WL 527489 (E.D. La. May 16, 2001) ....................13

*In re Ferrero Litig.*,
   583 F. App'x 665 (9th Cir. 2014) ............................................................9

*In re Flint Water Cases*,
   960 F.3d 3030 (6th Cir. 2020) ................................................................15

*In re FPI/Agretech Sec. Litig.*,
   105 F.3d 469 (9th Cir. 1997) ..........................................................44, 45

*Ganci v. MBF Inspection Servs., Inc.*,
   No. 2:15-cv-2959, 2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) ....................31

*Garner Props. & Mgmt., LLC v. City of Inkster*,
   No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) ....................5

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ........................................................*passim*

*In re Gen. Tire & Rubber Co. Sec. Litig.*,
   726 F.2d 1075 (6th Cir. 1984) .................................................................41

*In re Genetically Modified Rice Litig.*,
  764 F.3d 864 (8th Cir. 2014) ..............................................................27

*Greer v. Dick's Sporting Goods, Inc.*,
  No. 2:15-CV-01063-KJM-CKD, 2020 WL 5535399
  (E.D. Cal. Sept. 15, 2020)....................................................................12

*In re High Sulfur Content Gasoline Prod. Liab. Litig.*,
  517 F.3d 220 (5th Cir. 2008) ..............................................................44

*Jones v. H&J Rests., LLC*,
  No. 5:19-CV-105-TBR, 2020 WL 6877577 (W.D. Ky. Nov. 23, 2020) ...........31

*Jordan v. Mark IV Hair Styles, Inc.*,
  806 F.2d 695 (6th Cir. 1986) ..............................................................35

*Keener v. Dep't of Army*,
  136 F.R.D. 140 (M.D. Tenn. 1991) ....................................................29

*Keil v. Lopez*,
  862 F.3d 685 (8th Cir. 2017) ..............................................................23

*In re KeySpan Corp. Sec. Litig.*,
  No. 01 CV 5852(ARR), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005)............37

*Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*,
  No. 2:21-cv-00999-AJS, 2013 WL 3048919 (W.D. Pa. June 17, 2013)............24

*In re: Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*,
  847 F.3d 619 (8th Cir. 2017) .........................................................31, 43

*In re Master Key Antitrust Litig.*,
  MDL No. 45, 1977 WL 1545 (D. Conn. Nov. 14, 1977) ...................................42

*Mattel, Inc v. MGA Ent., Inc.*,
  705 F.3d 1108 (9th Cir. 2013) ...............................................29, 30, 31

*In re Mercury Interactive Corp. Sec. Litig.*,
  618 F.3d 988 (9th Cir. 2010) ..............................................8, 9, 43, 44

*Mitchell v. Indep. Home Care, Inc.*,
  No. 2:17-cv-717, 2019 WL 696941 (S.D. Ohio Feb. 20, 2019)........................31

*Moulton v. U.S. Steel Corp.*,
    581 F.3d 344 (6th Cir. 2009) ...............................................................35

*In re Namenda Direct Purchaser Antitrust Litig.*,
    No. 15 Civ. 7488 (CM), 2020 WL 3170586 (S.D.N.Y. June 15, 2020) ............31

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    768 F. App'x. 651 (9th Cir. 2019) ......................................................23

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
    No. 2:12-md-02323-AB, 2018 WL 1658808 (E.D. Pa. Apr. 5, 2018) .........14, 26

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*,
    MDL No. 2179, 2016 WL 6215974 (E.D. La. Oct. 25, 2016) ....................13, 14

*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mex.*,
    MDL No. 2179, 2012 WL 2236737 (E.D. La. June 15, 2012)..........................14

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................................9

*In re Pall Corp.*,
    No. 07-CV-3359 (JS)(ARL), 2013 WL 3244824
    (E.D.N.Y. June 25, 2013) ......................................................................32

*Parkinson v. Hyundai Motor Am.*,
    796 F. Supp. 2d 1160 (C.D. Cal. 2010) .............................................27, 37

*Paschal v. Flagstar Bank*,
    297 F.3d 431 (6th Cir. 2002) ..............................................................4, 5

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ........................................19, 43, 45

*In re Polyurethane Foam Antitrust Litigation*,
    No. 1:10 MD 2196, 2016 U.S. Dist. LEXIS 156339
    (N.D. Ohio. Oct. 24, 2016) ...................................................................39

*In re Prandin Direct Purchaser Antitrust Litig.*,
    No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473
    (E.D. Mich. Jan. 20, 2015)....................................................................43

vii

*Rawlings v. Prudential–Bache Props., Inc.*,
  9 F.3d 513 (6th Cir. 1993) ......................................................................11

*Redman v. RadioShack Corp.*,
  768 F.3d 622 (7th Cir. 2014) ..............................................................23, 24

*In re: Resistors Antitrust Litig.*,
  No. 3:15-cv-3820-JD (N.D. Cal. Aug. 13, 2019 & Mar. 24, 2020) ..................21

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002) ............................................................38, 39

*Rodriguez v. Evergreen Pro. Recoveries, Inc.*,
  No. C19-0184-JCC, 2021 WL 603319 (W.D. Wash. Jan. 27, 2021).................38

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
  825 F.3d 299 (6th Cir. 2016) ................................................................33

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ..............................................................10

*Stanley v. U.S. Steel Co.*,
  No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009)....................17, 18

*Strauch v. Comput. Scis. Corp.*,
  No. 3:14-cv-956 (JBA), 2020 WL 1812715 (D. Conn. Apr. 9, 2020) ...............32

*Team Sys. Int'l, LLC v. Haozous*,
  706 F. App'x 463 (10th Cir. 2017) ........................................................30

*Thacker v. Chesapeake Appalachia, L.L.C.*,
  695 F. Supp. 2d 521 (E.D. Ky. 2010) .....................................................12

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
  No. 1:14-md-02583-TWT, 2017 WL 9605208 (N.D. Ga. Aug. 1, 2017) ..........31

*In re Titanium Dioxide Antitrust Litig.*,
  No. 10-CV-00318(RDB), 2013 WL 6577029 (D. Md. Dec. 13, 2013) .............12

*In re Tyco Int'l, Ltd. Multidist. Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)........................................................20

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*,
732 F.2d 495 (6th Cir. 1984) ..................................................29, 35, 36

*United States v. Eyraud*,
809 F.3d 462 (9th Cir. 2015) .......................................................37, 38

*Vega v. Chi. Park Dist.*,
No. 13 C 451, 2020 WL 4053821 (N.D. Ill. July 20, 2020)..............................20

*In re Visa Check/Mastermoney Antitrust Litig.*,
297 F. Supp. 2d 503 (E.D.N.Y. 2003) ..........................................23, 24

*Wallace ex rel. Ne. Utilities v. Fox*,
7 F. Supp. 2d 132 (D. Conn. 1998)....................................................37

*In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*,
No. 1:08-WP-65000, 2016 WL 5338012
(N.D. Ohio Sept. 23, 2016)..........................................30, 32, 33

*In re World Trade Ctr. Disaster Site Litig.*,
754 F.3d 114 (2d Cir. 2014) ..............................................................26

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016) ..................................................37, 38, 39

## RULES

Fed. R. Civ. P. 23 .........................................................................*passim*

Fed. R. Civ. P. 54(d)(2)....................................................................5, 6

Mich. Ct. R. 8.101 ............................................................................25

Mich. Ct. R. 8.121(C)(1)....................................................................25

## OTHER AUTHORITIES

5 William B. Rubenstein, *Newberg on Class Actions* § 15:11 (5th ed. 2020) ........36

5 William B. Rubenstein, *Newberg on Class Actions* § 15:81 (5th ed. 2020) ........15

5 William B. Rubenstein, *Newberg on Class Actions* § 15:83 (5th ed. 2020) ........13

## CONCISE STATEMENT OF ISSUES PRESENTED

1.    Should the Court grant Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 1458)?

      Plaintiffs' Answer: Yes.

2.    Should the Court deny objectors' motions for discovery (ECF Nos. 1586, 1710)?

      Plaintiffs' Answer: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Fed. R. Civ. P. 23(h)

- Fed. R. Civ. P. 54(d)

- *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)

- *Bowling v. Pfizer, Inc.*, 102 F.3d 777 (6th Cir. 1996)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016)

- *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-MD-02323-AB, 2018 WL 1658808 (E.D. Pa. Apr. 5, 2018)

## I.   INTRODUCTION

Plaintiffs' Counsel[1] submit this supplemental brief in order to address objections, responses, and related motions that were filed in response to the Plaintiffs' Motion for an Award of Attorneys' Fees & Reimbursement of Expenses.[2] Following preliminary approval of a landmark, $641.25 million partial Settlement[3] in these cases, Plaintiffs' Counsel filed their Fee Motion, in accordance with the schedule set forth by the Court.[4] *See generally* Fee Motion.

This hybrid Settlement involves individual and Class Claimants. Indeed, nearly 80% of the Settlement Fund is allocated for individual children not proceeding as part of the Class and a limited number of adults, property owners, and

---

[1] "Plaintiffs' Counsel" refers to movants Interim Co-Lead Class Counsel ("Class Counsel") and Interim Co-Liaison Counsel ("Liaison Counsel"), as well as Settlement Subclass Counsel and the law firms that have worked with and under the supervision of Class Counsel, including the Plaintiffs' Executive Committee.

[2] Pls.' Mot. for an Award of Att'ys' Fees & Reimbursement of Expenses ("Fee Motion"), Mar. 8, 2021, ECF No. 1458; Order Regarding Resps. to Objs. & to Other Settlement-Related Filings, Apr. 12, 2021, ECF No. 1590.

[3] "Settlement," "Settlement Agreement," or "MSA".

[4] Op. & Order Granting Pls.' Mot. to Establish Settlement Claims Procedures & Allocation & for Prelim. Approval of Class Settlement Components & Granting Pls.' Mot. for an Order Adopting the Proposed Mot. for Approval of Wrongful Death Settlement ("Prelim. Approval Order") at 70, Jan. 21, 2021, ECF No. 1399; Stip. to Extend Time to File Pls.' Counsel's Mot. for Fees & Expenses, Feb. 24, 2021, ECF No. 1434 (granted via Text-Only Order on February 25, 2021).

businesses are also proceeding individually. According to the initial tally, tens of thousands of Claimants have registered for the Settlement, many of which have retained separate counsel to represent them.[5]

Under Plaintiffs' Counsel's proposed fee structure, much of the aggregate fee request will go to these individual attorneys—parties with privately-negotiated fee contracts which obligate the client to pay their attorney a one-third contingency fee. Such agreements are allowed under the Michigan Rules of Professional Conduct, do not require judicial approval, and provide insight into the market value of the work done by Plaintiffs' Counsel where, as here, there is no guarantee of victory. Some objectors have claimed that Plaintiffs' Counsel seek an award of more than $200 million in attorneys' fees. This is not true—a *substantial portion* of the attorneys' fees in this matter will be paid by Claimants to their *individually retained counsel* ("IRC").

Plaintiffs' Counsel have worked diligently to establish the substantial Settlement Fund that benefits thousands of victims of the Flint Water Crisis. All Claimants—whether individually represented by IRC, members of the Class, or individual registrants—have benefited from the work performed by Plaintiffs'

---

[5] Notice of the Special Master Regarding Update on Registration Process for Am. Settlement Agreement at 2-4, May 27, 2021, ECF No. 1790, PageID.64247-64249.

Counsel and precedent dating back more than a hundred years provides that a "lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Plaintiffs' Counsel's proposed fee structure takes into account the *total* fees that could or would be paid by Claimants—whether as part of a common benefit assessment or to their IRC. The proposal ensures parity among similarly-situated Claimants and fairly apportions the aggregate attorneys' fees among all the attorneys that have worked on this case. As such, Plaintiffs' Counsel have moved for an Order regarding:

(1) **Common Benefit Award:** Plaintiffs' Counsel ask that they be awarded fees of 6.33% (for all Claimants) as well as a percentage of fees for unrepresented and Class plaintiffs that will permit parity in Class and represented Claimants' awards.

(2) **Class Counsel Fees:** Class Counsel ask for attorneys' fees attributable to Claimants participating in the Settlement by way of the Settlement Subclasses. Class Counsel request fees equal to 27% of the Settlement funds earmarked for Settlement Subclass members which consists solely of adults, property owners, and businesses that are not "Individual Plaintiffs" with separately retained counsel as defined in the Settlement Agreement, and programmatic relief, in addition to the Common Benefit award sought jointly by Plaintiffs' Counsel.

(3) **Modification of Individual Retainers:** Thousands of Claimants retained private contingency counsel. These Claimants benefitted from the work of Plaintiffs' Counsel but also have to some extent benefitted from the work of their retained counsel. In recognition of this, Plaintiffs' Counsel therefore request that for this group of Claimants, the Court exercise its equitable authority and authorize contingency fee contracts only at a

3

reduced rate of 27% of the recovery, or 10% of recovery for individual counsel retained after July 16, 2020.

(4) **Expenses:** Finally, Plaintiffs' Counsel ask that the Court reimburse Plaintiffs' Counsel for necessary expenses advanced as part of this litigation.

For the reasons stated herein and in the Fee Motion, Plaintiffs' Counsel ask that the Court grant this relief. As extensive supporting materials were provided to demonstrate the reasonableness of requested attorneys' fees and expenses, additional discovery related to Plaintiffs' Counsel's work on this matter is not appropriate or necessary and requests for such should be denied.

## II.   ARGUMENT

Federal Rule of Civil Procedure 23(h) allows courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Likewise, counsel who perform common benefit work resulting in recovery of a common fund are entitled to compensation for those services from the fund. *See Boeing Co.*, 444 U.S. at 478; *see also generally* Fee Mot. at 11-14, 25-26, PageID.57168-57171, 57182-57183. An "award of attorneys' fees in common fund cases need only be 'reasonable under the circumstances.'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (citation omitted); *see also Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) ("The primary concern in evaluating a request for attorney fees 'is that the fee awarded be reasonable.'"

(citation omitted)); *Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 WL 4726938, at *10 (E.D. Mich. Aug. 14, 2020) (same).[6]

## A. The Class Counsel Fee Request Satisfies Rule 23(h)'s Procedural Requirements.

The requested award of attorneys' fees fully comports with the requirements of Federal Rule of Civil Procedure 23(h) which provides that a "court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." The rule further requires that any fee request be made by motion under Rule 54(d)(2) and that, "[n]otice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

Consistent with this requirement, the Court ordered that any motion for attorneys' fees be filed no later than March 8, 2021. The Class Notice contained a section explaining the process through which fees would be requested and approved.

---

[6] This brief addresses objections and motions that address Plaintiffs' Counsel's Fee Motion. Some of these objections have been filed on behalf of Individual Plaintiffs or Minors who are, under the terms of the Settlement Agreement, not part of the proposed Settlement Class. *See* Notice Regarding Pls.' Mot. for Settlement Approval, Ex. A, MSA ¶¶ 1.72-73, Jan. 15, 2021, ECF No. 1394-2, PageID.54135. Plaintiffs address standing issues associated with such objections in their motion for final approval, filed concurrently. Nonetheless, all objections and motions related to fees are addressed substantively here.

Decl. of Theodore J. Leopold in Supp. of Pls.' Mot. to Establish Settlement Claims Procedures & Allocation & for Prelim. Approval of Class Components, Ex. K, Attach. 2, Long Form Notice at 14, Nov. 18, 2020, ECF No. 1319-11, PageID.41368. And the Fee Motion, and all supporting materials, were made available to the public via the Court's website[7] as well as the Settlement website.[8] Class members could—and some did—object to the requested attorneys' fees on various grounds.

Plaintiffs' Counsel provided an estimate of the total amount requested in attorneys' fees and how those fees will be allocated among IRC, Liaison Counsel, and Class Counsel. *See* Fee Mot. at 8-9, PageID.57165-57166. This is all that is required under Rule 54(d)(2)(B) and has been deemed sufficient by other courts. *See, e.g.*, *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-CV-95, 2007 WL 3173972, at *3 (W.D. Mich. Oct. 26, 2007) (holding that class notice providing that counsel would ask for attorneys' fees and expenses up to 33% of the settlement fund "provides a fair estimate of the amount counsel would seek, consistent with the requirement of Fed. R. Civ. P. 54(d)(2)(B)"). In addition to this estimate, Plaintiffs' Counsel proposed a structure for dividing this amount among various attorneys that have worked on this case, Fee Mot. at 7-9, PageID.57164-57166, as well as

---

[7] *See* Eastern District of Michigan United States District Court website, https://www.mied.uscourts.gov/index.cfm?pageFunction=CasesOfInterest

[8] *See* https://www.officialflintwatersettlement.com/court-documents

Plaintiffs' Counsel's lodestar information with breakdowns by firm, task code, biller, Fee Mot., Exs. 1-30, Pls.' Counsel's Decls., ECF Nos. 1458-2 to 1458-31. Accordingly, Plaintiffs' Counsel have more than satisfied the procedural requirements of Rule 23(h).

The Hall objectors (Raymond Hall, Robert Hempel, and Ashley Jankowiak) wrongly argue that the proposed fee structure is unfair as to unrepresented Claimants because it requires more of them in fees that they characterize as, "special assessments." Obj. to Pls.' Mot. for an Award of Att'ys' Fees ("Hall Obj.") at 6-10, Mar. 29, 2021, ECF No. 1548, PageID.60224-60228. But the proposed common benefit assessment is typical of how absent class members "pay" fees in these cases. In addition to the litigation and negotiation efforts that resulted in the proposed Settlement in question, Class Counsel conducted town halls to educate unrepresented Claimants about the Settlement, and set up a hotline for questions as well as physical office space for those Claimants who preferred to confer with counsel in person.[9] While represented individuals turned to their retained counsel for questions regarding Settlement registration, Plaintiffs' Counsel provided this

---

[9] Class Pls.' Mot. for Certification of a Settlement Class, Final Approval of Class Settlement, & Appointment of Settlement Class Counsel, Ex. 2, Decl. of Leslie M. Kroeger in Supp. of Class Pls.' Mot. for Certification of Settlement Class, Final Approval of Class Settlement, & Appointment of Settlement Class Counsel, May 27, 2021, ECF No. 1794-4.

common benefit to any and all Claimants regardless of representation.

Attorneys' fees in a traditional class action are taken from the fund, *see Boeing Co.*, 444 U.S. at 478. The percentage of awarded attorneys' fees does not vary among class members—rather, all class members have an "equitable obligation to share the expenses of litigation." *Id.* at 482. Here too, the same fees are requested from the Settlement beneficiaries regardless of whether they participate as a Class member, un-retained Minor, or individually represented Claimant. The proposed fee structure *apportions* the requested fees among counsel to reflect the different roles provided in this matter.

Finally, the Hall objectors argue that Plaintiffs' Counsel's Fee Motion somehow "violates" Rule 23(h) because it does not disclose information regarding how fees will be allocated among the individual firms and any related fee sharing agreements. Hall Obj. at 7, 11-12, PageID.60225, 60229-60230. Relying on a Ninth Circuit opinion, *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 994 (9th Cir. 2010), the Hall objectors contend that Federal Rule of Civil Procedure 23(h) requires that notice regarding the requested attorneys' fees, "must enable them to determine *which* attorneys seek *what* fees for *what* work." Hall Obj. at 11, PageID.60229 (emphasis in original).

This is not a fair interpretation of *Mercury Interactive*, which stands only for the principle that a motion for attorneys' fees be filed sufficiently in advance of the

deadline for objections. 618 F.3d at 993-94 ("We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion."). There is no credible argument that this case faces the same deficiency as in *Mercury Interactive* because Plaintiffs' Counsel's Fee Motion was filed twenty-one days before the deadline for objections which is more than sufficient.[10]

Indeed, *none* of the Hall objectors' cited authority supports the proposition that Rule 23(h) requires the disclosure of fee agreements and other information related to what individual firms or attorneys will be paid.[11] Far from deeming such

---

[10] None of the objections argue that this was an insufficient amount of time and, indeed, several courts have held shorter periods to be sufficient. *See, e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954 (9th Cir. 2015) (fifteen-day period to object to class counsel's fee motion satisfied Rule 23); *In re Ferrero Litig.*, 583 F. App'x 665, 667-68 (9th Cir. 2014) (holding two week period sufficient for satisfying Rule 23(h) and *Mercury Interactive*).

[11] As the Sixth Circuit explained in *Bowling*, *In re "Agent Orange" Product Liability Litigation*, 818 F.2d 216 (2d Cir. 1987) stands only for the proposition that counsel should disclose the existence of such agreements to the Court—not that they need be produced—which Plaintiffs' Counsel have done here. *Bowling*, 102 F.3d at 781. Similarly, *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Products Liability Litigation* held only that the district court should closely scrutinize counsel's recommendations regarding how to allocate attorneys' fees and consider soliciting, "the views of less interested individuals or a disinterested body." 401 F.3d 143, 173 (3d Cir. 2005). The court did not require the production of fee

disclosures necessary, the Sixth Circuit has questioned the relevance of such agreements where attorneys' fees are awarded based on a percentage of the fund. *Bowling*, 102 F.3d at 781. In affirming a district court's award of attorneys' fees and denial of a motion to compel discovery regarding fee sharing agreements, the Court reasoned:

> The district court examined the work performed by class and special counsel and the value their work conferred upon the class. Thus, the district court decided exactly what that group of attorneys' work was worth and then awarded a fee commensurate with that worth. How special counsel and class counsel ultimately divide that fee among themselves appears to be irrelevant. As long as class and special counsel are paid only what their collective work is worth, their distributions among themselves, even if done in a manner unrelated to the services a particular counsel has performed for the class, will in no way harm the class or negatively impact the fund from which the class's benefit is measured.

*Id.*[12]

As in *Bowling*, Plaintiffs' Counsel have requested attorneys' fees based on the

---

agreements to third parties. Plaintiffs' Counsel have disclosed the existence of such agreements and provided substantial documentation for the Court, Special Master, and Settlement Claimants to review in order to assess the reasonableness of the proposed fee request. That is more than sufficient.

[12] *See also Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (counsel free to divide lump sum award as they see fit without disclosure); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (awarding fees "as a lump sum, to be divided among class counsel"), *appeal dismissed sub nom. Carlin v. Spooner*, 808 F. App'x 571 (9th Cir. 2020).

percentage of the recovery obtained for Settlement Subclass members and individual Claimants. Plaintiffs also provided extensive supporting information including detailed lodestar information broken down by firm and biller. The extent to which Counsel have agreed to divide fees has no bearing on whether the requested fees represent fair compensation for the work expended to date.

**B. The Requested Attorneys' Fees Are Reasonable Given the Complexity of the Case and Significant Recovery Obtained.**

**1. An Aggregate Fee Award—for Plaintiffs' Counsel, Class Counsel Fees, and Individually Retained Counsel—of 31.6% Is Reasonable.**

In a common fund case, an award of attorneys' fees must be, "reasonable under the circumstances." *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (citation omitted). As explained in Plaintiffs' Counsel's Fee Motion, the reasonableness of a requested fee award is assessed based on six factors including: the value of the benefit rendered to the class, the value of the services on an hourly basis, whether the services were undertaken on a contingent fee basis, the benefit to society, the complexity of the litigation and the professional skill and standing of counsel. Fee Mot., Section IV.A.5., PageID.57184-57194. Plaintiffs analyzed all six factors and submitted declarations supporting that analysis. *Id.*; Pls.' Counsel's Decls., ECF Nos. 1458-2 to 1458-31. Based on the unique circumstances

of this case, an aggregate award of 31.6% of the common fund is reasonable.[13]

District courts across the country have awarded similar[14] and greater awards.[15]

---

[13] This aggregate percentage includes fees from individual contingency agreements between attorneys and their clients. The percentage of the fund that Plaintiffs' Counsel has requested as common benefit and Class fees is considerably lower. Fee Mot. at 7-9, PageID.57164-57166. Hypothetically, if all Settlement Subclass funds were distributed via claims resolved through the Settlement Subclasses, Class Counsel Fees would amount to $35,493,187.50. The fees Class Counsel will receive from the Class portion of the Settlement will be less than this amount, however, because Settlement Subclass funds will also be distributed to Individual Plaintiffs or other individual Claimants with IRC.

[14] *See, e.g.*, *In re Auto. Refinishing Paint Antitrust Litig.*, MDL Docket No. 1426, 2008 WL 63269, at *1-4 (E.D. Pa. Jan. 3, 2008) (awarding 32% of a settlement fund for attorneys' fees); *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable." (citation omitted)), *aff'd*, 636 F.3d 235 (6th Cir. 2011).

[15] *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-CV-01063-KJM-CKD, 2020 WL 5535399, at *8 (E.D. Cal. Sept. 15, 2020) (Awarding attorneys' fees equal to one-third the settlement fund and noting that the amount, "is in line with other awards made within this circuit and within California, supporting its reasonableness."); *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW-FFMx, 2019 WL 6001562, at *1 (C.D. Cal. Nov. 8, 2019) ("Lead Counsel are hereby awarded attorneys' fees in the amount of 33⅓% of the Settlement Fund . . . ."); *In re Titanium Dioxide Antitrust Litig.*, No. 10-CV-00318(RDB), 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) ("Class Counsel is hereby awarded thirty-three and one-third percent (33 1/3 %) in reasonable attorneys' fees from the $163.5 million in Settlement Fund . . . ; Class Counsel are also authorized to allocate to other Plaintiffs' counsel the fees awarded herein, taking into account their relative contributions to this litigation."); *In re DDAVP Direct Purchaser Antitrust Litig.*, No. 05 Civ. 2237(CS), 2011 WL 12627961, at *5 (S.D.N.Y. Nov. 28, 2011) ("Class Counsel are hereby awarded attorneys' fees in the amount of 33 ⅓ % of the gross"); *Bradburn Parent Tchr. Store, Inc. v. 3M (Minn. Mining & Mfg. Co.)*, 513

According to the Newberg on Class Actions Treatise, "recent empirical data on fee awards demonstrate that percentage awards in class actions are generally between 20–30." 5 William B. Rubenstein, *Newberg on Class Actions* § 15:83 (5th ed. 2020). These findings were roughly consistent across circuit and case type with civil rights cases trending towards the high-end of the range. *Id.* Given that this is a particularly complex civil rights matter, it is entirely appropriate to award fees at the high end of the range.[16]

What's more, the aggregate fee request here is comparable to other hybrid class-mass-tort actions. *See, e.g.*, *In re Oil Spill by the Oil Rig "Deepwater Horizon"*

---

F. Supp. 2d 322, 342 (E.D. Pa. 2007) (approving a percentage of recovery of 35%, plus reimbursement of expenses); *Faircloth v. Certified Fin. Inc.*, No. Civ.A. 99-3097, 2001 WL 527489, at *12 (E.D. La. May 16, 2001) (awarding attorneys' fees of 35% of settlement plus interest and reimbursement of expenses); *In re Corel Corp. Inc. Secs. Litig.*, 293 F. Supp. 2d 484, 497-98 (E.D. Pa. 2003) (awarding counsel one-third of the settlement fund in addition to the reimbursement of litigation expenses); *Cimarron Pipeline Const., Inc. v. Nat'l Council on Comp. Ins.*, Nos. CIV 89-822-T, CIV 89-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("the Court finds that attorneys' fees of 33 ⅓% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases").

[16] *See, e.g.*, *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-cv-1152-M, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) (Awarding attorneys' fees of 33 ⅓% of the fund and explaining that "Class Counsel is not asking for an unusually large or high fee. Furthermore, there are significant considerations that further justify the fee, such as the dogged perseverance Class Counsel showed in this case, such as eventually convincing the Supreme Court to overturn adverse Fifth Circuit precedent.").

*in the Gulf of Mex.*, MDL No. 2179, 2016 WL 6215974, at \*16, \*20-21 (E.D. La. Oct. 25, 2016) (awarding common benefit fees of 4.3%); *In re Oil Spill*, MDL No. 2179, 2012 WL 2236737, at \*1 (E.D. La. June 15, 2012) (capping individual retainers at 25%); *In re Nat'l Football League Players' Concussion Inj. Litig.*, No. 2:12-md-02323-AB, 2018 WL 1658808, at \*3 (E.D. Pa. Apr. 5, 2018) (awarding class counsel common benefit fees of 11% and capping individual retainers at 22%); *see also* Fee Mot. at 18 n.22, 20 n.25, PageID.57175, 57177.

The Hall objectors characterize this Settlement as a "megafund" which, they argue, necessitates a lower fee percentage because, "[a] reasonable percentage award should recognize economies of scale" and "high-dollar recoveries tend to be the result of class size and claim strength rather than attorney skill." Hall Obj. at 13, PageID.60231. This rationale is not applicable to this case. Notably, the substantial recovery obtained is not simply a result of "class size" or "claim strength." The Settlement provides relief for several different categories of damages, each of which required its own evidentiary support. Moreover, contrary to every single "megafund" case cited by the Hall objectors, this case involved complicated questions of sovereign immunity which necessarily rendered the case riskier and required a

14

heightened level of skill.[17]

Importantly, while there is an inverse relationship between fund size and fee percentages such that larger recoveries, on average, tend to award lower fee percentages, *see* 5 William B. Rubenstein, *Newberg on Class Actions* § 15:81 (5th ed. 2020), multipliers tend to increase as the fund size increases, *id.* § 15:89. Taking these two phenomena in tandem suggests that the considerations relevant to determining appropriate attorneys' fees in megafund cases may not be all that different than any other case: while the most important factor in determining an appropriate fee award should be the benefits obtained for the class, a lodestar crosscheck will sometimes be employed to assess the extent to which the requested fees award counsel more than their normal billing rate.

Here, Plaintiffs' Counsel spent 183,185 hours performing common benefit

---

[17] The Hall objectors argue that, "[c]ommon sense dictates . . . that a major national scandal of the type involved here could only result in a sizable settlement." Hall Obj. at 16, PageID.60234. This conclusory assertion fails to consider the complexities involved in matters involving constitutional violations and claims of sovereign immunity, which the Sixth Circuit noted in this very case. *See generally In re Flint Water Cases*, 960 F.3d 3030 (6th Cir. 2020). That several attorneys stepped up to prosecute this matter does nothing to minimize the risk inherent to this type of litigation. There has been no analysis suggesting that complex class actions in which multiple plaintiffs' attorneys stepped forward are somehow more successful. And notably, neither of the cases in which courts referenced this factor involved issues of constitutional law or sovereign immunity.

work resulting in a lodestar in excess of $80 million.[18] Accordingly, there is no risk that the requested attorneys' fees constitute a "windfall" warranting a lower percentage award as in some "megafund" cases.[19]

### 2. The Objectors Confuse Common Benefit Fees and Individual Case Fees (Retainer Contractual Fee).

The Hall objectors mistakenly suggest that the entire 31.6% fee request would be paid to Plaintiffs' Counsel as common benefit or Class fees. Hall Obj. at 1, PageID.60219. This is simply not correct. Plaintiffs' Counsel seek a baseline award of 6.33% of the Settlement Fund as a common benefit fee and additional funds to reimburse actual out of pocket costs incurred in the prosecution of the litigation (not

---

[18] The lodestar figure—$84,510,654—is slightly higher ($198) than what was reflected in the Fee Motion; similarly, the total hours reported herein—183,185—is slightly higher (614 hours difference) than what was reflected in the Fee Motion. These changes correct a slight arithmetic error and removes .1 hours of time that was erroneously included. Plaintiffs' Counsel have made a *de minimus* change to the expenses requested herein, reducing the request by $229.10 to $7,158,758.23.

[19] Individual Plaintiff Brown objects to Plaintiffs' Counsel's fee request to the extent it applies to the McLaren portion of the Settlement, arguing that "any McLaren paid settlement cannot be said to have resulted from common benefit work Plaintiffs conducted as to McLaren." Individual Pl. Brown's Resp. to Pls.' Mot. for an Award of Att'ys' Fees & Reimbursement of Expenses at 3, Apr. 5, 2021, ECF No. 1556, PageID.60404. But Brown's Objection ignores all the work Plaintiffs' Counsel performed that befitted *all Claimants,* including moving the case forward and negotiating the Settlement Agreement. Moreover, Brown cites no legal support for the contention that she should be treated differently from other Claimants with respect to attorneys' fees.

for work on individual retainer contract cases). This 6.33% shall be charged against the retainer contracts which leadership is requesting the Court reduce from the statutory Michigan contingency fee amount of 33.3% down to 27% for cases retained prior to July 16, 2020 and 10% for those retained after. Such reductions are well within the equitable powers of this Court, and will allow for some of each contracted attorneys' fee to be paid to the common benefit fund. In addition, Class Counsel request 27% of the funds earmarked for Settlement Class members and programmatic relief. Finally, Plaintiffs' Counsel request a common benefit award of 17% (for Minor Claimants that retained counsel after July 16, 2020) and 27% (for Minor Claimants who did not retain their own counsel and benefitted solely from the work of Plaintiffs' Counsel). Much of the aggregate fee request accounts for fees paid in accordance with private contracts between attorneys and their clients. To the extent objectors contend that Plaintiffs' Counsel should *only* receive common benefit or class fees, they offer no legal support for that incorrect proposition.

### 3. The Optional Lodestar Crosscheck Supports the Reasonableness of the Requested Fees.

"[D]istrict courts generally have discretion to apply either the percentage of the fund or the lodestar method in calculating fee awards," and "the Sixth Circuit has observed a trend towards adoption of a percentage of the fund method in [common fund] cases." *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647,

at *1 (E.D. Mich. Dec. 8, 2009) (internal citations and quotation marks omitted); *see also Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *6 (S.D. Ohio Nov. 5, 2020) (noting that the "flexible approach" of allowing district court discretion in using percentage of the fund or lodestar approach "allows the Court to account for the unique and varied circumstances present in each" case). Although district courts may use a lodestar crosscheck when employing the percentage of the fund approach, "a lodestar cross-check is not required." *Id.* at *8.

To the extent the Court wishes to perform a lodestar crosscheck, the records Plaintiffs' Counsel submitted in support of their motion support the requested award. *See generally* Fees Mot. at 30-35, PageID.57187-57192. If the Court wishes to confirm the figures Plaintiffs' Counsel provided with more detailed records, it may do so, either by asking the Special Master to review Plaintiffs' Counsel's detailed billing records (which the Court has already done), or by reviewing those records *in camera*. The crux of the Hall objectors' argument is that *they* are entitled to perform a lodestar crosscheck, which is not supported by any of the cases they cite. *See* Section II.C.1, *infra*.[20]

---

[20] The Hall objectors' contention, based on prior briefing in this case, that Class Counsel has "misclassified" common benefit time, Hall Obj. at 22, PageID.60240, is incorrect. As Interim Co-Lead Class Counsel explained to the Court at the time, the actions described "simply did not occur." Reply Br. in Supp.

The objectors largely do not challenge the specific rates charged by Plaintiffs' Counsel, instead focusing on two particular rates—for contract attorneys and law clerks—that they contend are too high. Hall Obj. at 23-25, PageID.60241-60243; and Corrected Obj. to Pls.' Mot. for an Award of Att'ys' Fees ("Chapman/Washington Obj.") at 15-16, Apr. 6, 2021, ECF No. 1562, PageID.60517-60518.

The Hall objectors incorrectly argue that counsel must bill contract attorneys at cost. Hall Obj. at 23-24, PageID.60241-60242. But that practice is not required.[21]

---

of Interim Co-Lead Class Counsel's Mot. for Replacement of Co-Liaison Counsel & Opp'n to Co-Liaison Counsel's Cross-Mot. to Discharge Interim Co-Lead Class Counsel at 22, Apr. 30, 2018, ECF No. 473, PageID.14905; *see also generally id.* at 22-24, PageID.14905-14907. The Hall objectors provide no basis for their specious assertion that "[t]he Fee Motion appeared to be intentionally degraded in violation of the local rules." Hall Obj. at 23 n.9, PageID.60241; Hall Objectors' Mot. to Review & Resp. to Hourly Billing & Costs; & for Disc. of Fee-Sharing Agreements & Invoices/Agreements Pertaining to Claimed Contract Att'ys ("Hall Br.") at 23, Apr. 9, 2021, ECF No. 1586, PageID.61010. This was an inadvertent filing error, and Plaintiffs' Counsel can re-file if the Court wishes.

[21] The cases the Hall objectors cite do not require this practice, and one even notes that courts generally have not required it. *See In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *18 (N.D. Cal. Aug. 17, 2018) ("To the extent that Schulman advocates for a categorical rule that contract and staff attorneys must be billed at cost, the Court disagrees."); *see also id.* (distinguishing *Dial* and *Banas*, on which the Hall objectors rely, noting that in those cases, "the courts approved those expenses without requiring that approach"). In *In re Polyurethane Foam Antitrust Litigation*, 168 F. Supp. 3d 985, 1012-13 (N.D. Ohio. 2016), the court lowered the rate for contract attorneys, but did not require that they be billed at cost.

Courts routinely approve contract attorney work at market rates, reflecting that "[a]n attorney, regardless of whether she is an associate with steady employment or a contract attorney whose job ends upon completions of a particular document review project, is still an attorney." *In re Tyco Int'l, Ltd. Multidist. Litig.*, 535 F. Supp. 2d 249, 272 (D.N.H. 2007); *see also In re Enron Corp. Secs., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 783 (S.D. Tex. 2008) ("[A]n attorney may bill the contract attorney's charges to the client as fees rather than costs when "'the client's reasonable expectation is that the retaining lawyer has supervised the work of the contract lawyer or adopted that work as her own.'" (citations omitted)); *Vega v. Chi. Park Dist.*, No. 13 C 451, 2020 WL 4053821, at *5 (N.D. Ill. July 20, 2020) (approving fee request where counsel charged "$100-$325 per hour for associates, contract attorneys and staff members"), *appeal filed sub nom. Lydia Vega v. Chi. Park Dist.*, No. 20-3492 (7th Cir. Dec. 22, 2020).[22]

The Hall objectors also suggest that Napoli Shkolnik's use of contract attorneys was somehow inappropriate. *See* Hall Obj. at 24, PageID.60242. This

---

[22] Although the Hall objectors contend that "[s]everal declarations appear completely unreasonable," they cite as support for their argument only one purportedly unreasonable rate from one firm's declaration. *See* Hall Obj. at 23-24, PageID.60241-60242. The Hall objectors' objection to Plaintiffs' Counsel's claimed costs mirrors their argument that they are entitled to review detailed cost records, *see* Hall Obj. at 25, PageID.60243, and fails for the same reasons. *See* Section II.C.2., *infra*.

assertion is entirely baseless. "[I]t is common practice to rely on contract lawyers particularly in mass litigation where law firms need to add professional staff to quickly and competently prosecute, or defend, a case." Ex. 1, Decl. of Hunter J. Shkolnik ("Shkolnik Decl.") ¶ 4. The suggestion that contract lawyers are either more or less worthy of respect than non-contract lawyers is misplaced. "While these individuals are employed on a project-related basis, all are experienced attorneys working exclusively on the Flint matter for Napoli Shkolnik." *Id.* "These lawyers are integrated into the firm using Napoli Shkolnik email accounts, attend strategy meetings with counsel, and were actively engaged in the prosecution of the bellwether cases and the generic liability discovery over the past four (4) years." *Id.*

The Chapman/Washington objectors argue—without citation to authority—that a $300/hour rate for law clerks is too high. Chapman/Washington Obj. at 15-16, PageID.60517-60518. However, similar rates have been approved in other cases, and the Chapman/Washington objectors have not demonstrated otherwise. *See, e.g.*, Order Granting Indirect Purchaser Pls.' Mot. For Award of Att'ys' Fees at 2, and Indirect Purchaser Pls.' Mot. For Award of Att'ys' Fees, *In re: Resistors Antitrust Litig.*, No. 3:15-cv-3820-JD (N.D. Cal. Aug. 13, 2019 & Mar. 24, 2020), ECF Nos. 548, 584 (awarding law clerk rates between $270-290/hour for petition filed in 2019); Tr. of Civil Cause for Fairness Hr'g 21:12-20, and Decls. in Supp. of Pls.' Mot. For Award of Attorneys' Fees, *In re: Dental Supplies Antitrust Litig.*, No. 16-

CV-696 (BMC), (E.D.N.Y. Mar. 22, 2019 & Jan. 3, 2020) ECF Nos. 329, 350 (awarding fees including law clerk rates of $280/hour for fee petition filed in 2019).

Although other objectors noted their objections to attorneys' fees, none specified any rates they found objectionable, and nearly all simply checked a box that states, "Plaintiffs' attorneys are being paid too much and community residents are not receiving adequate compensation in view of the long-term harm the water crisis created. Plaintiffs' attorneys will receive much more compensation than the average adult in the settlement."[23] None of these objections offer legal support for their contention that Plaintiffs' Counsel's fees are too high. Moreover, the reasonableness of attorneys' fees is measured with respect to the entire Settlement Fund, not to the individual amounts claimed by Class members. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 283 (6th Cir. 2016) ("[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" (citation omitted)).

### 4. The Court May Calculate Attorneys' Fees Considering the Gross Benefit Obtained for the Class.

Relying entirely on authority from other circuits, the Hall objectors argue that

---

[23] *See, e.g.*, Obj. to Settlement by Velver Jean Henry, Apr. 21, 2021, ECF No.1644, PageID.61358; *see also* Obj. to Settlement by Diane Kelly, Apr. 22, 2021, ECF No. 1697, PageID.61620, and Obj. to Settlement by Glen Kelly, Apr. 22, 2021, ECF No. 1700, PageID.61633 (using language nearly identical to checklists).

it is improper to calculate fees as a percentage of the gross Settlement Fund obtained. Hall Obj. at 18-20, PageID.60236-60238. The Hall objectors elide any reference to the law in this Circuit which provides that, in performing a percentage of the fund analysis:

> courts must calculate the ratio between attorney's fees and benefit to the class. Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the "benefit to class members," the attorney's fees *and may include the costs of administration*).

*Gascho*, 822 F.3d at 282 (emphasis added). The Court went on to explain that, "[b]ecause a settlement addresses the particular facts of and parties in a case, calculation of the denominator is necessarily case specific." *Id.*[24] The Eighth and Ninth Circuits[25] have taken a similar approach, as have several district courts.[26] The

---

[24] Judge Clay's dissenting opinion in *Gascho* embraced the Seventh Circuit's language in *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014), regarding the appropriateness of calculating attorneys' fees as a percentage of the net recovery to the class. 822 F.3d at 299-301.

[25] *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) (rejecting the approach advanced in the Seventh Circuit and holding that, "the rule in this circuit is that a district court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount" (citation omitted)); *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017) (same); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x. 651, 654 (9th Cir. 2019) (holding that district courts have discretion to determine whether attorneys' fees should be calculated using the gross or net settlement fund).

[26] *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 525

Seventh Circuit stands alone as the only circuit to *require* courts to assess attorneys' fees on the net recovery to the class exclusive of costs and expenses.[27]

In conducting a case-specific analysis to determine the appropriate denominator, the court must, "give[] appropriate consideration to all components that the parties found necessary for settlement." *Gascho*, 822 F.3d at 282. Here, the costs advanced by Plaintiffs' Counsel to litigate this matter conferred a substantial benefit on Class members and other Settlement Claimants because they were critical to the successful prosecution of this matter, without which there would be no Settlement Fund. *See generally* Fee Mot., Section IV.B., PageID.57194-57197. Moreover, a robust Settlement administration program is critical to assessing each Claimants' injuries and fairly apportioning the Settlement funds.

Counsel have every incentive to minimize costs because most costs are

n.34 (E.D.N.Y. 2003) (rejecting an argument that courts "should award attorneys' fees calculated on the net recovery to the Class, excluding costs and expenses"), *aff'd*, 396 F.3d 96, (2d Cir. 2005); *Lake Forest Partners, L.P. v. Sprint Commc'ns Co. L.P.*, No. 2:21-cv-00999-AJS, 2013 WL 3048919, at *2 (W.D. Pa. June 17, 2013) (holding that "under the percentage-of-the-fund method, it is appropriate to base the percentage on the gross cash benefits available for class members to claim, plus the additional benefits conferred on the class by the Settling Defendants' separate payment of attorney's fees and expenses, and the expenses of administration").

[27] *Redman*, 768 F.3d at 630 (holding an attorneys' fees should be calculated net of "administrative costs should not have been included in calculating the division of the spoils between class counsel and class members").

advanced *prior* to any settlement agreement—should the case prove unsuccessful, none of the advanced costs are recoverable. And, not only do Plaintiffs' Counsel have an ethical obligation to minimize Settlement administration fees, the payment of any such fees in this case are also reviewed by a neutral third party—the Court-appointed Special Master. Am. Order Appointing Special Master ("Special Master Order") ¶ 8, July 31, 2018, ECF No. 544, PageID.16584-16585.

The Hall objectors suggest that calculating fees as a percentage of the gross Settlement Fund "would run afoul [of] Mich. Ct. R. 8.121(C)(1)" which requires such fees be calculated net of costs. Hall Obj. at 18, PageID.60236. In making this argument they fail to mention that that this rule applies only to, "courts established by the constitution and laws of Michigan, unless a rule otherwise provides," Mich. Ct. R. 8.101, and has no applicability to this matter proceeding in federal court. Notably, the Michigan Rules of Professional Conduct—which do apply to attorneys admitted to practice in Michigan or providing legal services within Michigan—does not contain a provision requiring that contingency fees be calculated net of expenses. Mich. R. Pro. Conduct 1.5, 8.5.[28]

---

[28] *Available at* Michigan Courts website, https://courts.michigan.gov/Courts/MichiganSupremeCourt/rules/Documents/Mich igan%20Rules%20Of%20Professional%20Conduct.pdf.

### 5.  The Proposed Fee Cap for Individual Counsel Is Fair and Workable.

The proposed caps on fees for IRC—27% and 10% for agreements entered into before or after July 16, 2020 respectively—are both fair and workable. As explained in Plaintiffs' Counsel's Fee Motion, "[i]n MDLs and class actions, 'district courts have routinely capped attorneys' fees.'" *Concussion Inj. Litig.*, 2018 WL 1658808, at *2 (quoting *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 126 (2d Cir. 2014)); *see also generally* Fee Mot. at 18-20, PageID.57175-57177.

The Hall objectors do not oppose the principle of a fee cap, but argue that 27% is "too high under the circumstances." Hall Obj. at 17, PageID.60235. Not so. In cases like this one, courts have imposed caps anywhere from 5% to 33%. *Concussion Inj. Litig.*, 2018 WL 1658808, at *4. Plaintiffs' Counsel's proposal is well within that range. Contrary to the Chapman/Washington objectors' assertions, Plaintiffs' Counsel's proposed 10% cap is also well within the range approved by courts. *See id.*

### C. Objectors Are Not Entitled to Additional Billing Records or Discovery.

### 1.  The Records Plaintiffs' Counsel Provided to the Court and Special Master Are Sufficient to Evaluate the Attorney Fee Motion.

Plaintiffs supported their Fee Motion with comprehensive declarations from each firm requesting fees, which outline the work performed on the case, and include

thorough breakdowns of the work performed by attorney and by the task codes set forth in the Court's Time & Expense Order.[29] *See generally* Case Management Order Regarding Time & Expense Procedures ("Time & Expense CMO"), June 19, 2018, ECF No. 507, and Mot. for Entry of the Proposed Time & Expense Administration Reporting Sheet, Ex. 1, Proposed Time & Expense Reporting Sheet, July 6, 2018, ECF No. 526 (granted via Text-Only Order on July 13, 2018). Records such as these are commonly provided in support of motions for attorneys' fees in lieu of line-by-line billing records. *See, e.g.*, *Diet Drugs*, 582 F.3d 524, 539 (3d Cir. 2009) ("In large cases . . . reliance on summaries [rather than detailed time sheets] is certainly within the discretion of the district court."); *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 869 (8th Cir. 2014) ("reviewing court 'may rely on summaries of attorneys and need not review actual billing records'").[30] Moreover, in accordance

---

[29] The Hall and Chapman objectors take issue with Levy Konigsberg LLP's submission. Hall Br. at 12, PageID.60999; Chapman Pls.' Mot. to Review & Resp. to Hourly Billing & Costs ("Chapman Brief") at 11, Apr. 24, 2021, ECF No. 1710, PageID.62289. Although that submission did not include detailed lodestar information, Liaison Counsel Stern will submit detailed time and expense records to the Court *in camera*.

[30] *See also Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1165 (C.D. Cal. 2010) (noting that "[i]n lieu of daily time sheets, plaintiffs provide[d] a summary of all work undertaken at each stage of the litigation, supported by declarations from co-lead class counsel, as well as the other law firms involved in this case," and offered to produce more detailed records *in camera* at the court's

with the Court's Time & Expense CMO, Plaintiffs' Counsel *have* provided line-by-line time and cost records to the Court-appointed Special Master, Time & Expense CMO ¶ 9, PageID.15828, and offered to submit the same to the Court *in camera*. Fee Mot. at 32 n.55, PageID.57189.[31]

"[T]he key requirement for an award of attorney fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Gascho*, 822 F.3d at 281 (citation omitted). The records filed by Plaintiffs' Counsel and submitted to the Special Master (which will be provided to the Court *in camera*) are sufficient to meet this standard. Objectors have not demonstrated otherwise, or

---

request).

[31] On May 17, 2021, the Court ordered the Special Master to provide these records to the Court for *in camera* review by June 11, 2021. Order to Provide Data to the Court for in Camera Review, ECF No. 1776. In light of this Order, and the Time & Expense CMO's provision that billing records be provided to the Special Master, the Chapman/Washington objectors' argument that the Time & Expense CMO allows Liaison and Class Counsel to "self-determine what is or is not common benefit work," Chapman/Washington Obj. at 3, PageID.60505, and Hall objectors' similar contention, *see* Hall Obj. at 22, PageID.60240, is incorrect. The Chapman/Washington Objection's argument that the Time & Expense CMO "provides no mechanism" for individual plaintiffs to review other attorneys' detailed time and expense records, Chapman/Washington Obj. at 3, PageID.60505, is irrelevant. The Chapman/Washington objectors demonstrate no such requirement.

28

shown that discovery of billing records or other materials is warranted or appropriate here.

The Hall objectors contend that detailed billing records are required to perform a lodestar crosscheck of Plaintiffs' Counsel's fee request. Hall Obj. at 21-22, PageID.60239-60240. But they fail to demonstrate that *they* are entitled to those records. None of the cases cited by the Hall objectors require that *objectors* be permitted to perform their own crosscheck. *See* Hall Obj. at 21-22, PageID.60239-60240.[32] To the extent the District Court wishes to perform a lodestar crosscheck, it has the records to do so, either via the Special Master, or by the Court *in camera*.[33]

### 2. It Is Common and Appropriate for the Court or a Special Master to Review Detailed Billing Records *in Camera*.

As courts have recognized, attorney billing records often contain information that is privileged or contains attorney work product. *See, e.g.*, *Mattel, Inc v. MGA*

---

[32] The cases cited by the Hall objectors are also readily distinguishable. In both *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984), and *Keener v. Department of Army*, 136 F.R.D. 140, 147 (M.D. Tenn. 1991), *aff'd*, 956 F.2d 269 (6th Cir. 1992), the courts addressed situations where counsel had not kept contemporaneous time records. And in *Keener*, counsel "conceded his time-keeping practices were sloppy and at his deposition he flippantly commented about maintaining his records on napkins." 136 F.R.D. at 147.

[33] The Hall objectors' contention, based on prior briefing in this case, that class counsel has "misclassified" common benefit time, Hall Obj. at 22, PageID.60240, is incorrect. *See supra* note 20.

*Ent., Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013) (affirming denial of plaintiffs' request for unredacted copies of legal invoices, and noting that those invoices were "attorney work product"); *In re: Whirlpool Corp. Front-loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *18 (N.D. Ohio Sept. 23, 2016) ("Documents supporting attorney fees and expenses are often filed under seal because they obviously include matters covered by attorney work-product and attorney-client privilege."). These considerations are particularly acute where, as here, there is still ongoing litigation against other defendants. *See Mattel*, 705 F.3d at 1111 (noting that "[p]rotecting . . . work product was particularly important" because of ongoing litigation).[34]

For these reasons, courts or special masters often review detailed billing records *in camera*. *See, e.g.*, *Team Sys. Int'l, LLC v. Haozous*, 706 F. App'x 463, 466 (10th Cir. 2017) ("*In camera* review enables protection of privileged material . . . ."); *Mattel*, 705 F.3d at 1111 (affirming award of attorneys' fees where district court reviewed detailed billing records *in camera*). This type of *in camera* review "is a sufficient safeguard against unreasonable bills," *Mattel*, 705 F.3d at

---

[34] The Hall objectors' argument that "the vast majority of hourly billing" records are not privileged, Hall Br. at 8-10, PageID.60995-60997, is incorrect and inapposite. None of the cases cited for this argument addressed concerns about ongoing litigation, *see id.*, and the Hall objectors cite numerous cases where counsel was permitted to redact billing records or file them under seal to protect privilege and work product.

1111, and is a common practice in this Circuit and others. *See id.*; *see also, e.g.*, *In re: Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 621, 624 (8th Cir. 2017) (affirming award of attorneys' fees where district court reviewed detailed billing records *in camera*); *Jones v. H&J Rests., LLC*, No. 5:19-CV-105-TBR, 2020 WL 6877577, at *4 (W.D. Ky. Nov. 23, 2020) (noting that plaintiffs' counsel provided "detailed billing information for *in camera* review").[35]

The law does not support the Hall objectors' sweeping argument that providing detailed billing records to the Court or Special Master *in camera* would violate Rule 23(h) and principles of transparency and due process. *See* Hall Br. at 2-5, PageID.60991-60992.[36] Indeed, courts have held precisely the opposite. *See, e.g.*,

---

[35] *See also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-cv-717, 2019 WL 696941, at *7 (S.D. Ohio Feb. 20, 2019) (explaining that the court reviewed plaintiffs' detailed billing records *in camera*), *report and recommendation adopted*, 2019 WL 1125760 (Mar. 12, 2019); *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (same); *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2017 WL 9605208, at *1 (N.D. Ga. Aug. 1, 2017) ("In support of their Motion, Class Counsel has submitted to the Court *in camera* detailed billing records reflecting their work on behalf of the Settlement Class . . . ."); *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM), 2020 WL 3170586, at *3 (S.D.N.Y. June 15, 2020) (noting that plaintiffs' counsel made detailed time records available to the court *in camera*).

[36] To the extent the Chapman/Washington objectors make a similar argument, *see* Chapman/Washington Obj. at 2-5, PageID.60504-60507, that argument fails for the same reasons.

*Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012) ("[W]hether to grant objectors access to billing records is a matter within the district court's discretion."); *Whirlpool*, 2016 WL 5338012, at *18 (concluding "that objectors [had] no right to see Class Counsel's fee and expense records"); *In re Pall Corp.*, No. 07-CV-3359 (JS)(ARL), 2013 WL 3244824, at *2, *4 (E.D.N.Y. June 25, 2013) (noting that objector's request to see more detailed records had been rejected and referring to the objector having access to a "summary of tasks" provided by class counsel).[37]

---

[37] Many of the cases on which the Hall objectors rely address situations where attorneys filed motions to seal time records, and even in those cases, courts acknowledged that it was appropriate to seal information related to "litigation strategy" or other protected matters. *See, e.g.*, *Strauch v. Comput. Scis. Corp.*, No. 3:14-cv-956 (JBA), 2020 WL 1812715, at *2 (D. Conn. Apr. 9, 2020) (citation omitted); *Anthem*, 2018 WL 3960068, at *34 (noting "the potential due process concerns about overly broad sealing," but ultimately granting Plaintiffs' motion to seal portions of billing records that contained privileged information or attorney work product). Accordingly, to the extent the Court decides to order disclosure of detailed billing records to Objectors, it should do so under a Protective Order, and allow Plaintiffs to move to seal privileged information and protected work product. The Hall objectors are amenable to this resolution. Hall Br. at 6-7, 23, PageID.60993-60994, 61010. The additional cases relied on by the Chapman/Washington objectors for the proposition that they have a due process right to detailed billing records, Chapman/Washington Obj. at 4, PageID.60506, address due process generally, but say *nothing* about class members' or objectors' rights to detailed billing records. To the extent the requirements of due process require notice and an opportunity to be heard, the Class members have those rights here through the objection and opt-out process. Prelim Approval Order at 5, 7, 54, PageID.54402, 54404, 54451.

The Hall objectors rely heavily on *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299 (6th Cir. 2016), for the proposition that the Court may not review billing records *in camera*. Hall Br. at 2-4, PageID.60989-60991. But *Shane* does not stand for so broad a proposition. In *Shane*, the Sixth Circuit remanded approval of a settlement where "the district court [had] sealed most of the parties' substantive filings from public view," and had not performed a meaningful review of the settlement's fairness. *Shane*, 825 F.3d at 302. Although *Shane* addresses standards for sealing, it says nothing about whether a court may review attorney billing records *in camera* in support of a motion for attorneys' fees.[38]

Moreover, "the Sixth Circuit has also explained that the standard that applies to documents supporting a request for attorneys' fees is at least slightly different" than the standard set forth in *Shane*. *Whirlpool*, 2016 WL 5338012, at \*17-18. In particular, for fee applications, "the only requirement is that [supporting] documents must be provided to *the Court* for its own review," not necessarily to all class members or objectors. *Id.* (citing *Gascho*, 822 F.3d at 281). The Hall objectors gloss over this distinction, arguing instead that *they* must adversarially test the fee

---

[38] In *Shane*, the plaintiffs also provided far fewer records in support of their fee petition than Plaintiffs' Counsel in the instant case. *See Shane*, 825 F.3d at 310 (noting that plaintiffs had provided, in support of their fee petition, "only the employee names, titles, rates, hours, and—by multiplying the rates and hours—the total lodestar for that firm").

application. *See* Hall Br. at 10-13, PageID.60997-61000. But the cases on which they rely do not require that. For example, *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013), addressed settlement approval, not a fee application, and involved circumstances that were completely different from the instant case. There, the court noted that the "signs" that class counsel had pursued its own self-interest were "not particularly subtle" because the settlement provided only injunctive relief to the class and a large fee to class counsel, "in a case where counsel did not take a single deposition, serve a single request for written discovery, or even file a response to [the defendant's] motion to dismiss." *Id.* at 718. In contrast, Plaintiffs' Counsel in this case have performed significant work and obtained an extraordinary monetary result. *Cf. Gascho*, 822 F.3d at 275 (distinguishing *Pampers* from case that "had been 'vigorously litigated' for two-and-a-half years prior to settlement and involved 'extensive' discovery and motion practice, and because class counsel obtained 'significant monetary relief to class members' rather than the 'illusory injunctive relief' obtained in the *Pampers* settlement").[39]

---

[39] The other cases on which the Hall objectors rely similarly do not require disclosure of detailed billing records to objectors. The Hall objectors cite several cases for the proposition that class counsel fee applications have a "diluted . . . adversary system," Hall Br. at 10-11, PageID.60997-60998, but that does not entitle objectors to more detailed records. Indeed, many of the cases cited by the Hall objectors say nothing about the level of detail that must be provided in billing

The Hall objectors suggest that the Court must allow them access to Class Counsel's detailed billing records "[t]o survive appellate review." Hall Br. at 13, PageID.61000. But neither case cited supports that proposition. In both *Moulton v. United States Steel Corp.*, 581 F.3d 344 (6th Cir. 2009), and *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695 (6th Cir. 1986), the district courts had made only cursory statements to support their fee decisions, and "did not make any determinations concerning the reasonableness of the requested fees." *Jordan*, 806 F.2d at 697; *see also Moulton*, 581 F.3d at 352 ("[H]ere the district court's only on-the-record explanation was this: the 'attorney fee percentage [is] fair and reasonable considering the several years of litigation.'"). Neither case supports Hall objectors' entitlement to detailed time and billing records in order to survive appellate review.

Many of the cases on which Hall objectors rely stand for the uncontroversial proposition that the records submitted in support of a fee application must be sufficiently detailed to enable the court's review, but do not specify what level of detail is required. For example, in *United Slate, Local 307*, the court discussed time record requirements in contrast to the "recently compiled retrospective estimations

---

records, let alone to objectors. *See, e.g.*, *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 388-89 (S.D.N.Y. 2013) (not addressing level of detail required, and holding that "[b]ecause the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable" (citation omitted)).

of time expended" that have been provided in that case. 732 F.2d at 502. But that is not what Plaintiffs have provided here. To the contrary, the billing summaries provided by Plaintiffs' Counsel were compiled from contemporaneously kept time records, and break down time and expenses according to Court-ordered categories.[40] *See generally* Pls.' Counsel's Decls., ECF Nos. 1458-2 to 1458-31.

The cases on which the Hall objectors rely similarly do not support their argument that objectors have an absolute due process right to review detailed time and expense records. Hall Br. at 4-7, PageID.60991-60994. In *In re: Cathode Ray Tube (CRT) Antitrust Litigation*, No. C-07-5944 JST, 2016 WL 1072097 (N.D. Cal. Mar. 17, 2016), the court noted that "the practice [of submitting billing records *in camera*] is common," but concluded that where the issue was disputed, courts did not review detailed billing records *in camera*. *Cathode Ray*, 2016 WL 1072097, at *3. But *none* of the cases cited by the *Cathode Ray* court support the proposition that

---

[40] *United Slate, Local 307*, 732 F.2d at 502 n.2, on which the Hall objectors rely, also addressed a situation where "estimates [of billing time were] made on the eve of payment," which is not the case here. The section of Newberg on which the Chapman/Washington objectors rely, Chapman/Washington Obj. at 4, PageID.60506, likewise does not specify the precise detail for records that must be submitted with the fee petition, and indeed notes that "[t]he best practice is for counsel to submit their time records and hourly rates—that is, their lodestar information—via an affidavit accompanying the fee motion." 5 William B. Rubenstein, *Newberg on Class Actions* § 15:11 (5th ed. 2020). That is precisely what Plaintiffs' Counsel have done here.

36

detailed billing records may *never* be reviewed *in camera* where another party requests access—indeed, most of the cases relied on for that proposition do not address the issue at all.[41] Moreover, the proposition itself is inaccurate. *See* Section II.C.1., *supra* (citing cases where court reviewed detailed billing records *in camera* even where the issue was disputed).

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536 (9th Cir. 2016), likewise does not support a class member or objector's due process right to detailed billing records. In *Yamada*, the Ninth Circuit held that defendants had a due process right to detailed billing records, but distinguished the case before it from one where a defendant "had access to the . . . law firm's declaration describing the work it performed relating to [the case] and the invoice summaries listing the amount of time that work took." *Id.* at 545 n.7. In the latter situation—which is similar to the instant case—the Ninth Circuit found no error in the district court reviewing more detailed records *in camera* to verify that the summaries provided by counsel were accurate

---

[41] *Parkinson*, 796 F. Supp. 2d at 1163, 1167 (court did not order detailed billing information disclosed, and portion quoted in *Cathode Ray* was a description of the defendant's argument); *Dardarian v. OfficeMax N. Am., Inc.*, No. 11-cv-00947-YGR, 2014 WL 7463317, at *4 n.8 (N.D. Cal. Dec. 30, 2014) (court did not order disclosure of billing records); *In re KeySpan Corp. Sec. Litig.*, No. 01 CV 5852(ARR), 2005 WL 3093399, at *3 n.4 (E.D.N.Y. Sept. 30, 2005) (refusing to review records *in camera* where counsel had provided *no basis* to do so); *Wallace ex rel. Ne. Utilities v. Fox*, 7 F. Supp. 2d 132, 140 (D. Conn. 1998) (court neither reviewed, nor ordered disclosure of time records).

*Id.* (citing *United States v. Eyraud*, 809 F.3d 462, 471 (9th Cir. 2015)). The Hall objectors do not cite—and Plaintiffs are not aware of—any courts in this Circuit that have relied on *Yamada*, let alone for the broad proposition the Hall objectors invoke. Further, even the Ninth Circuit has refused to expand *Yamada*'s holding to allow objectors "full access to class counsel's billing records." *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 672 (9th Cir. 2020) (holding that *Yamada* did not entitle objectors to class counsel's billing records).[42] The Seventh Circuit's opinion in *Reynolds v. Beneficial National Bank*, 288 F.3d 277 (7th Cir. 2002), is similarly distinguishable. There, in language that the court itself noted was *dicta*, the Seventh Circuit cautioned against the "submission of *fee applications* in camera," and "in particular their bottom line." *Id.* at 286 (emphasis added). Unlike in *Reynolds*, Plaintiffs' Counsel in this case have submitted both their fee application and supporting documentation on the public docket.[43]

---

[42] The Court in *Chambers* noted that the defendants in that case *did* have access to class counsel's billing records. 980 F.3d at 672. Although Defendants in this case do not have Plaintiffs' Counsel's billing records, the Court and Special Master have access to the records to test them and verify Plaintiffs' Counsel's assertions regarding time and expenses.

[43] In *Rodriguez v. Evergreen Professional Recoveries, Inc.*, No. C19-0184-JCC, 2021 WL 603319 (W.D. Wash. Jan. 27, 2021), class members similarly were not even given notice of "the fee motion itself," in a case where counsel sought 68% of the fund as fees. *Id.* at *2-3 (citation omitted). Moreover, in both *Yamada* and *Reynolds*, as well as many other cases cited by the Hall objectors, the courts noted

The Hall objectors' request for detailed cost records, Hall Br. at 13-14, PageID.61000-61001, fares no better. *First*, the request is largely based on Liaison Counsel Levy Konigsberg's submission. As discussed, Levy Konigsberg will submit detailed time and expense records to the Court *in camera*. *Supra* note 29. The Hall objectors cite Defendant Facebook, Inc.'s Opposition to Plaintiff's Motion for Attorneys' Fees in *Adkins v. Facebook, Inc.*, No. 3:18-cv-05982 (N.D. Cal. Mar. 8, 2021), ECF No. 323, for the proposition that "[d]irect review of costs sometimes reveals questionable charges," Hall Br. at 13-14, PageID.61000-61001, but point to no indication based on the records they do have that there have been any such questionable charges here.[44]

---

that any privileged information in detailed billing records could be redacted or filed under seal. *See Yamada*, 825 F.3d at 546; *Reynolds*, 288 F.3d at 286. Indeed, Hall objectors appear to concede that Plaintiffs may redact any privileged information, even if the Court orders disclosure of additional records. *See* Hall Br. at 6-8, PageID.60993-60994.

[44] The Hall objectors misleadingly cite a case involving Cohen Milstein as an example of excessive costs, while acknowledging that the cited costs were "not [submitted by] Cohen Milstein." Hall Br. at 13-14, PageID.61000-61001. *In re Polyurethane Foam Antitrust Litigation*, No. 1:10 MD 2196, 2016 U.S. Dist. LEXIS 156339 (N.D. Ohio. Oct. 24, 2016) (attached as Exhibit 2), on which the Hall objectors also rely, is not applicable. There, the court denied plaintiffs' counsel's request to reimburse fees that they had inadvertently omitted from the fee petition, and requested *after* final approval. *Id.* It does not support the proposition that the Hall objectors are entitled to detailed cost records.

Objectors have not demonstrated that they are unable to "test" Plaintiffs'
Counsel's fee application with the records provided, or that Plaintiffs' Counsel's
proposal of *in camera* review by the Court or Special Master is inappropriate.
Accordingly, their Motion and Objections should be denied.[45]

### 3. Liaison Counsel Are Not Seeking Common Benefit Fees Related to the Bone Scan Program and Thus Additional Discovery on This is Inappropriate.

The Chapman objectors mischaracterize Liaison Counsel's declarations in
support of their application for common benefit fees. To be clear, Liaison Counsel
are not seeking common benefit fees related to the bone scan program. Shkolnik
Decl. ¶ 5. Liaison Counsel included in its declaration a paragraph outlining the
efforts of counsel in marshalling this litigation from its infancy though the landmark
Settlement. Included in those efforts are Liaison Counsel's efforts to open their bone
scan program, at the request of the objectors, to members of the community and
individually represented Claimants. This was highlighted in the declaration simply
as an illustration of the work and dedication Liaison Counsel has brought to this
litigation and is not being offered as a basis for a common benefit award. Liaison

---

[45] To the extent the Hall objectors note their support for independent review
of Plaintiffs' Counsel's fee request, Hall Br. at 22 n.10, PageID.61009, the Court has
*already* ordered that a neutral Special Master to do so, *see* Time & Expense CMO
¶¶ 9-11, PageID.15828-15829; Special Master Order ¶ 8, ECF No. 544,
PageID.16584-16585, and Plaintiffs have submitted records to the Special Master in
compliance with that order, Fee Mot. at 32, PageID.57189.

Counsel has not submitted a single time or expense entry for common benefit reimbursement as it relates to the bone scan program. *Id.*

### 4. Objectors Have Not Shown Any Need for or Right to Additional Discovery.[46]

In addition to more detailed time and cost records, the Hall objectors also request additional discovery in order to oppose Plaintiffs' Counsel's fee application, in particular: (1) fee sharing agreements, and (2) contract attorney costs and agreements. Hall Br. at 14-21, PageID.61001-61008. As the Hall objectors acknowledge, they are "not automatically entitled to discovery," *id.* at 15, PageID.61002 (citation omitted), and they have not demonstrated that discovery is necessary here.[47]

---

[46] The Chapman objectors "join in the request of Hall objectors for the detailed time and expense records of Liaison Counsel, as well as any fee sharing agreements between them." Chapman Br. at 11, PageID.62289. To the extent the Chapman objectors join the Hall motion, those arguments are addressed here. Issues raised in the Chapman objectors' motion that relate solely to Liaison Counsel are addressed in Sections II.C.3. and II.C.4.iii, *infra*.

[47] *In re General Tire & Rubber Co. Securities Litigation*, 726 F.2d 1075, 1084 & n.6 (6th Cir. 1984) ("*General Tire*"), on which Hall objectors rely for the proposition that the court cannot deny a request for discovery where it "does not have sufficient facts before it to intelligently approve" the fee petition, Hall Br. at 15, PageID.61002, does not even address an objector's entitlement to discovery, other than to note that no such entitlement exists. Similarly, the language the Hall objectors cite from *In re Cendant Corp. Prides Litigation*, 243 F.3d 722, 743-44 (3d Cir. 2001), was not about discovery, but rather whether the objector's attorneys were entitled to fees. *Bowling v. Pfizer, Inc.*, 159 F.R.D. 492, 498 (S.D. Ohio 1994), *aff'd*,

### i.   Plaintiffs' Counsel Need Not Produce Fee Sharing Agreements.

In their Fee Motion, Plaintiffs' Counsel described in detail the terms of an agreement between Class Counsel and Liaison Counsel, for which Plaintiffs' Counsel request Court approval. Fee Mot. at 7-9, PageID.57164-PageID.57166; *see also* Mem. in Supp. of Pls.' Mot. to Establish Settlement Claims Procedures & Allocation & for Prelim. Approval of Class Settlement Components at 33 n.41, Nov. 17, 2020, ECF No. 1318, PageID.40295 (identifying existence of agreement under Fed. R. Civ. P. 23(e)). By identifying this agreement, Plaintiffs' Counsel have complied with Federal Rule of Civil Procedure 23(e)'s requirement that they provide "a statement identifying any agreement made in connection with the proposal." Nothing in the Rule requires a party to attach a written agreement to a filing, and the Committee Notes specifically caution that "[f]urther inquiry into the agreements identified by the parties [under Rule 23(e)] should not become the occasion for discovery by the parties or objectors." Fed. R. Civ. P. 23 advisory committee's note

---

103 F.3d 128 (6th Cir. 1996), and *In re Master Key Antitrust Litigation*, MDL No. 45, 1977 WL 1545, at *3 (D. Conn. Nov. 14, 1977) do not address the merits of the discovery motions they mention. *See also* Minute Entry, *In re Capital One TCPA Litig.*, No. 12-cv-10064, (N.D. Ill. Oct. 30, 2014), ECF No. 209 (docket number cited by Hall objectors is a minute entry that provides no reasoning about why discovery was allowed).

to 2003 amendment.[48]

Contrary to the Hall objectors' arguments, they are not entitled to "determine *which* attorneys seek *what* fees for *what* work." Hall Br. at 16, PageID.60998. "Courts routinely permit counsel to divide common benefit fees among themselves." *Polyurethane Foam*, 168 F. Supp. 3d at 1006 (citing cases and overruling objection that "Rule 23(h) requires the district court to set and allocate the fee award"). *See also, e.g.*, *In re Life Time Fitness*, 847 F.3d at 623-24 (holding that district court did not "abuse its discretion by allowing class counsel themselves to determine how to allocate the total $2.8 million attorney's fee award without further judicial oversight or approval"); *In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2020 WL 5653257, at *4 (E.D. Mich. Sept. 23, 2020) ("Co-Lead Counsel are hereby authorized to allocate the attorneys' fees awarded herein among EPP Class Counsel who performed work on behalf of EPPs in accordance with Co-Lead Counsel's assessment of each firm's contribution to the prosecution and settlement of these actions."); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) (awarding class counsel fees, "to be allocated among Class Counsel").

The cases on which the Hall objectors rely do not compel otherwise. *Mercury*

---

[48] To the extent the Court wishes to review a copy of this agreement, Plaintiffs ask that they be permitted to submit the agreement for review *in camera*.

*Interactive*, for example, says nothing about fee sharing agreements or what specific records must be provided. Rather, it addressed a situation where objectors were not even given an opportunity to respond to the fee motion itself. *Mercury Interactive*, 618 F.3d at 993-95. Many of the other cases on which the Hall objectors rely involve situations where plaintiffs' counsel disputed the allocation, requiring court involvement. These cases say nothing about *objectors'* entitlement to discovery of fee sharing agreements, nor do they even address the issue. *See Agent Orange*, 818 F.2d at 223 (noting, "the practice of allowing class counsel to distribute a general fee award in an equitable fund case among themselves pursuant to a fee sharing agreement is unexceptional"); *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 229 (5th Cir. 2008) (describing dispute among plaintiffs' counsel and noting that district court's review of fee allocation was "perfunctory").[49]

---

[49] Other cases on which the Hall objectors rely are similarly distinguishable. In *Bowling*, 102 F.3d at 780-81, the Sixth Circuit affirmed denial of a motion to compel disclosure of fee sharing agreements, *id.*, specifically holding that disclosure of such agreements to anyone other than the court was not required, and explaining that *Agent Orange* "does not require discovery of" such agreements, *id.* at 781. *Arkansas Teacher Retirement System v. State Street Bank & Trust Co.*, Nos. 11-10230-MLW, 11-12049-MLW, 12-11698-MLW, 2020 WL 949885, at *21-23 (D. Mass. Feb. 27, 2020), *appeal dismissed*, No. 20-1365, 2020 WL 5793216 (1st Cir. Sept. 3, 2020), *appeal filed*, No. 21-1069 (1st Cir. Feb. 1, 2021), involved a significant amount of misinformation provided to the court by plaintiffs' counsel, but Hall objectors concede that they "have no reason to suspect such a deal exists here." Hall Br. at 18 n.6, PageID.61005. Moreover, in *State Street*, the court

### ii.  There Is No Basis for Requiring Discovery Regarding Contract Attorneys.

The Hall objectors' request for detailed cost information regarding contract attorneys, Hall Br. at 20-21, PageID.61007-61008, provides no basis for such discovery. Plaintiffs' Counsel have provided detailed information about the rates charged for contract attorneys,[50] which has already enabled the Hall objectors to raise issues with those rates.

The cases on which the Hall objectors rely to support disclosure of more detailed contract attorney costs do not support the blanket disclosure of such rates to Class members or objectors. In *Anthem*, the opinion Hall objectors cite *granted* a motion to seal contract attorney rates. *See* 2018 WL 3960068, at *34. In *Polyurethane Foam*, "Counsel submitted for *in camera* review a chart showing what

---

appointed a special master to look into the issue; it *did not* order discovery for objectors. *See* 2020 WL 949885, at *4. *In re FPI/Agretech Securities Litigation*, 105 F.3d 469, 474 (9th Cir. 1997), does not address discovery of fee sharing agreements, and addressed a situation where counsel merely informed the court orally of an agreement made "on the courthouse steps," which is not the case here. The page the Hall objectors cite from *Diet Drugs*, 401 F.3d at 173, is from a concurrence in that case, and the opinion does not address discovery of fee sharing agreements.

[50] Fee Mot., Ex. 1, Cohen Milstein Sellers & Toll PLLC Decl., ECF No. 1458-2, PageID.57214-57215, PageID.57218-57219; Fee Mot., Ex. 7, Bronstein, Gerwirtz & Grossman, LLC Decl., ECF No. 1458-8, PageID.57304.

contract attorneys were paid." 168 F. Supp. 3d at 1012.[51] At best, these cases support providing additional information to the Court, which Plaintiffs have already offered to do.[52]

### iii. Discovery of Records Related to Bone Scans Are Not Necessary or Relevant in Determining a Common Benefit Award.

The Chapman objectors have moved this Court for an order requiring the disclosure of confidential bone scan information related to Liaison Counsel's clients. *See* Chapman Br. at 1-2, PageID.62279-62280. All the requested material is irrelevant to Plaintiffs' Counsel's Fee Motion.

First, discovery of the number of bone scans conducted by Liaison Counsel is of no import to the Fee Motion. The Chapman objectors seek confidential work product information about how and when Liaison Counsel developed their own cases to establish causation for discovery and beyond. As stated above, Liaison Counsel are not seeking time or expense reimbursement for the bone scan program, despite making the facility available to the general public, including the Chapman objectors. Discovery regarding the timeframe of when Liaison Counsel scanned their clients is not only improper and runs afoul of potential privilege issues. *See* Shkolnik

---

[51] In *State Street*, the records in question were produced to a special master, not to objectors, as the Hall objectors acknowledge. Hall Br. at 21, PageID.61008.

[52] As discussed *supra*, it is common and appropriate to bill contract attorneys at market rates. *See* Section II.B.3., *supra*.

Decl. ¶ 5. Moreover, this information will also not provide any instructive information for this Court to make a determination regarding common benefit fees and costs.

The Chapman objectors' request for the "standard operating procedures and calibrations [Liaison Counsel] claim to use at their private bone scanning lab" is similarly improper. Chapman Br. at ii, PageID.62275. Liaison Counsel addressed these issues in their Response to the Motions to Extend Deadlines. Co-Liaison Counsel's Resp. to Washington & Chapman Pls.' Mot. to Extend the 90-Day Deadline Regarding Bone Scanning, May 26, 2021, ECF No. 1789.

Finally, Chapman objectors' request for discovery of actual costs related to the bone scan program set up by Liaison Counsel is improper. Liaison Counsel are not seeking reimbursement for any time and expense related to bone scans. Shkolnik Decl. ¶ 5. The Chapman objectors are requesting Liaison Counsel's costs for their own cases, unrelated to the common benefit work for which they are seek reimbursement. This information is privileged and entirely irrelevant to the Fee Motion.

### III. CONCLUSION

For the reasons stated in Plaintiffs' Counsel's Fee Motion and herein, Plaintiffs' Counsel request that the Court grant their Motion for an Award of

Attorneys' Fees and Reimbursement of Expenses and deny objectors' discovery requests.

Dated: May 27, 2021

*/s/ Corey M. Stern*
Corey M. Stern
**LEVY KONIGSBERG, LLP**
800 Third Avenue,
11th Floor
New York, NY 10022
(212) 605-6298 Telephone
cstern@levylaw.com

*/s/ Hunter Shkolnik*
Hunter Shkolnik
**NAPOLI SHKOLNIK PLLC**
270 Munoz Rivera Avenue,
Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088 Telephone
hunter@napolilaw.com

Joseph M. Sellers
Kit A. Pierson
Emmy L. Levens
Jessica B. Weiner
Alison S. Deich
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW
Suite 500
Washington, DC 20005
(202) 408-4600 Telephone
jsellers@cohenmilstein.com

Respectfully submitted,

*/s/ Theodore J. Leopold*
Theodore J. Leopold
Leslie M. Kroeger
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One
Suite N500
Palm Beach Gardens, FL 33408
(561) 515-1400 Telephone
tleopold@cohenmilstein.com
lkroeger@cohenmilstein.com

*/s/ Michael L. Pitt*
Michael L. Pitt
Cary S. McGehee
**PITT MCGEHEE PALMER BONANNI & RIVERS, P.C.**
117 West 4th Street
Suite 200
Royal Oak, MI 48067
(248) 398-9800 Telephone
mpitt@pittlawpc.com
cmcgehee@pittlawpc.com

Paul Novak (P39524)
Diana Gjonaj (P74637)
Gregory Stamatopoulos (P74199)
**WEITZ & LUXENBERG, P.C.**
3011 West Grand Boulevard
Suite 2150

kpierson@cohenmilstein.com
elevens@cohenmilstein.com
jweiner@cohenmilstein.com
adeich@cohenmilstein.com

Vineet Bhatia
Shawn Raymond
**SUSMAN GODFREY, L.L.P.**
1000 Louisiana Street
Suite 5100
Houston, TX 77002
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com
sraymond@susmangodfrey.com

Stephen Morrissey
Jordan Connors
**SUSMAN GODFREY, L.L.P.**
1201 Third Ave.
Suite 3800
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**

Detroit, MI 48226
(313) 800-4170 Telephone
pnovak@weitzlux.com
dgjonaj@weitzlux.com
gstamatopoulos@weitzlux.com

Robin L. Greenwald
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
(212) 558-5500 Telephone
rgreenwald@weitzlux.com

Esther E. Berezofsky
**MOTLEY RICE LLC**
210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA
A. BINGMAN, PLLC**
120 N. Washington Square
Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com

49

4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

Kathryn P. Hoek
**SUSMAN GODFREY, L.L.P.**
1901 Avenue of the Stars
Suite 950
Los Angeles, CA 90067
(310) 789-3100 Telephone
khoek@susmangodfrey.com

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO
MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001
(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI 48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive

kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.
LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &
ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone
bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &
ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Suite 100
Auburn Hills, MI  48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
jeblake@mcalpinelawfirm.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone
andrew@aboodlaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on May 27, 2021.


Dated: May 27, 2021                    */s/ Jessica B. Weiner*
                                       Jessica B. Weiner
                                       **COHEN MILSTEIN SELLERS**
                                       **& TOLL PLLC**
                                       1100 New York Ave. NW
                                       Suite 500
                                       Washington, DC 20005
                                       (202) 408-4600 Telephone
                                       jweiner@cohenmilstein.com