UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases. _____/ | Judith E. Levy<br>United States District Judge |

This Order Relates To:

ALL CASES

_____/

## ORDER DENYING *HALL* OBJECTORS' MOTION [1736]

Before the Court is the *Hall* Objectors' Motion to Attend Further Conferences with Settling Counsel and for Settling Parties to Provide a Description of Non-Public Hearings. (ECF No. 1736.) State Defendants and Co-Liaison Counsel for Individual Plaintiffs filed responses (ECF Nos. 1798, 1799) and the *Hall* objectors filed a reply. (ECF No. 1802.) The *Hall* objectors' motion wrongly assumes that the Court has conducted *ex-parte* hearings and adjudicated matters behind closed doors. For this and other reasons set forth below, the motion is denied.

**I. BACKGROUND**

The Flint Water Cases include tens of thousands of plaintiffs who are represented by over 200 individually retained attorneys and putative

class counsel. These lawyers practice in at least nine different states and Puerto Rico. As of today's date, there are over 1820 docket entries on the *Carthan v. Snyder, et al.*, No. 16-10444, docket alone, and over 360 docket entries in *Walters v. Flint, et al.*, No. 17-10164. *Carthan* and *Walters* are just two of the 88 Flint Water Cases (85 of which are still pending) assigned to the undersigned. The Court has held countless hearings in these cases since the litigation began in 2016, and has adjudicated hundreds of issues, ranging from discovery disputes to dispositive motions.

Before the COVID-19 pandemic, hearings in the Flint Water Cases took place in the courthouse in Ann Arbor, Michigan and via teleconference. In order to welcome the number of lawyers, spectators, and members of the media who wished to be present, the Court provided extra chairs throughout the courtroom and permitted lawyers and spectators to fill the jury box and the well of the courtroom. Once the COVID-19 pandemic hit in March 2020, proceedings moved quickly to online video-teleconference to allow the case to proceed efficiently. The Court made these hearings available to the public through the Eastern District of Michigan's website, where the public can watch the

2

proceedings on YouTube. The Court also developed video-teleconference guidelines and requirements,[1] which it seems that the *Hall* objectors have not reviewed.

## II. LEGAL STANDARD

District Courts have discretion to manage their own dockets as they see fit. *See Jordan v. City of Detroit*, 557 Fed. App'x 450, 456–57 (6th Cir. 2014) (discussing the district court's "inherent authority to control its docket in promoting economies of time and effort for the court, the parties, and the parties' counsel" (internal citations omitted)); *Bowles v. City of Cleveland*, 129 Fed. App'x 239, 241 (6th Cir. 2005) ("[A] district court has inherent power to protect[ ] the due and orderly administration

---

[1] The *Hall* objectors' Reply brief reveals their counsel's ignorance regarding the Court's well-established processes and procedures for obtaining Zoom links to hearings. For example, their brief states, "Fortunately other objectors' attorneys have asked on my behalf for links to attend the conferences via Zoom, which I would not have otherwise been invited to." (ECF No. 1802-2, PageID.64679.)

The Court sends Zoom links directly to those counsel whom it anticipates will have a speaking role at a particular hearing, which is determined by the hearing agenda. If other counsel wish to speak at the hearing and have not received the link, they are directed to submit a request to Co-Liaison Counsel for Individual Plaintiffs (copying all other lead counsel) in advance of the hearing. Co-Liaison Counsel are required to compile such requests and submit them to the Court. Although the Court has never denied counsel for the *Hall* objectors -- or any other counsel of record -- access to the Zoom links for hearings, it is within the Court's authority to do so.

of justice and ... maintain [ ] the authority and dignity of the court....") (internal citations omitted).

The Federal Rules of Civil Procedure grant the Court wide discretion to convene meetings, conferences, and even to adjudicate proceedings in chambers with or without a court reporter. Rule 77(b) states:

> Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom. *Any other act or proceeding may be done or conducted by a judge in chambers, without the attendance of the clerk or other court official, and anywhere inside or outside the district.* But no hearing--other than one ex parte--may be conducted outside the district unless all the affected parties' consent.

Fed. R. Civ. P. 77(b) (emphasis added). In other words, every proceeding, save for trial, is permitted under this rule to be conducted in chambers and off the record, if the Court so chooses. However, as set forth above, the Court has largely not chosen this route in the Flint Water Cases and has always adjudicated motions and other matters in public hearings on the record.

In the Sixth Circuit, off-the-record meetings are common. This is particularly true for scheduling matters, and for matters related to settlement. The Sixth Circuit encourages courts to hold certain

4

settlement discussions in private. "In fact, to achieve the purposes that the Rules do permit, settlement conferences should be private, not open to the media and the public." *In re University of Michigan*, 936 F.3d 460, 464 (2019). The Sixth Circuit states:

> for a settlement conference to work, "parties must feel uninhibited in their communications." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). They must be free to make candid assessments, admit their strengths and weaknesses, offer concessions, and put on hold the performative aspects of trial. For this reason, "confidential settlement communications are a tradition in this country" and "[t]his Court has always recognized the need for ... secrecy in settlement proceedings." *Id*.

*Id*. at 465.

Further, management of complex litigation must be done efficiently and economically. The Federal Judicial Center's *Manual on Complex Litigation* section 10.22, (4th ed. 2004) endorses methodologies that minimize unnecessary waste of time and money. Conducting some conferences off the record, while favoring on-the-record hearings in general, is recommended in the *Manual on Complex Litigation* where it states:

> On-the-record conferences will minimize later disagreements, particularly if the judge anticipates issuing oral directions or

5

rulings. Many judges hold all conferences on the record, particularly where numerous attorneys are in the courtroom. Nevertheless, an informal off-the-record conference held in chambers or by telephone can sometimes be more productive; a reporter can later be brought in to record the results of the conference. (28 U.S.C. § 753(b) sets forth the requirements for recording various proceedings.) Rule 16 requires (and sound practice dictates) that all matters decided at pretrial conferences be memorialized on the record or in a written order. Counsel may be directed to submit proposed orders incorporating the court's oral rulings.

*Id.* § 11.22.

Finally, neither the Sixth Circuit, the Michigan Rules of Professional Conduct, nor the Code of Conduct for United States Judges define "*ex parte* communication." However, the meaning is not complicated. Black's Law Dictionary defines an *ex parte* communication as "[a] communication between counsel and the court when opposing counsel is not present. Such communications are ordinarily prohibited." Black's Law Dictionary (11th ed. 2019).

## III. DISCUSSION

The *Hall* objectors' motion focuses on two meetings held in chambers with counsel to the settlement ("Settlement Counsel").[2] The

---

[2] These include, for Plaintiffs, Co-Lead Class Counsel and Co-Liaison Counsel for Individual Plaintiffs. And for the Defendants in the settlement, these include

6

first was held on March 1, 2021, and the second on May 3, 2021. The *Hall* objectors speculate that the Court held "hearings" and adjudicated motions at these meetings. These meetings were neither "hearings" nor adjudicative. While Rule 77(b) and the Court's inherent managerial authority would certainly have permitted the Court to hold off-the-record adjudicative hearings in chambers if it so chose, that is not what occurred here. It was both appropriate and permissible to hold the March 1, 2021 and May 3, 2021 meetings in chambers. The Court has no interest in "secret meetings" or clandestine activities of any sort. As all parties who have participated in this litigation for the past five years know, the reality is quite the opposite: this Court welcomes the opportunity that this litigation presents – to work hard on complicated legal and

---

counsel for the State of Michigan the Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy), the Michigan Department of Health and Human Services, the Michigan Department of Treasury, former Governor Richard D. Snyder, current Governor Gretchen Whitmer, the Flint Receivership Transition Advisory Board, Liane Shekter Smith, Daniel Wyant, Stephen Busch, Kevin Clinton, Patrick Cook, Linda Dykema, Michael Prysby, Bradley Wurfel, Eden Wells, Nick Lyon, Dennis Muchmore, Nancy Peeler, Robert Scott, Adam Rosenthal, and Andy Dillon, counsel for the City of Flint, Darnell Earley, Howard Croft, Michael Glasgow, Gerald Ambrose, Edward Kurtz, Michael Brown, Dayne Walling, and Daugherty Johnson, counsel for McLaren Health Care Corporation, McLaren Regional Medical Center, and McLaren Flint Hospital; and counsel for Rowe Professional Services Company (together, the "Settling Defendants").

procedural issues so that a just outcome can be achieved in an efficient and fair manner. The job of the judge is to be fair and impartial and to adhere to the applicable law and procedure regardless of the emotional responses and criticism that might follow. Although the undersigned does not take offense at the strident and insulting tone of the pending motion, such a tone does not benefit the arguments made. But if the Court had erred and had violated the Judicial Canons of Ethics, as counsel insists it did, the undersigned would take responsibility for those missteps and do what is necessary to correct them.

Although this opinion and order could end here, the Court will expend additional time and effort to set forth for the *Hall* objectors what happened in the two meetings they identify and why the relief they seek need not and will not be granted.

On March 1, 2021, Co-Lead Class Counsel filed a motion asking the Court to "immediately suspend" the administration of bone scans. (ECF No. 1443, *corrected* ECF No. 1446). The relief sought in that motion appeared to directly contradict the position Co-Lead Class Counsel took when they signed the Master Settlement Agreement ("MSA"), which includes a provision for bone scans and one that requires that all

8

Plaintiffs' counsel listed in Exhibit 17 to "[p]ublicly support the approval of and implementation of the Settlement Program" as appropriate. (MSA ¶ 22.1.2, ECF No. 1394-2, PageID.54192.) Co-Lead Class Counsel are listed in Exhibit 17. (ECF No. 1319-2, PageID.41232–41240.) In addition, the Court's standard Practice Guidelines require that counsel who wish to file non-dispositive motions must contact the Court and request time to address the issue at a discovery-dispute resolution conference. The Fifth Amended CMO contains directions for requesting that issues be addressed at regularly scheduled status and discovery conferences. (ECF No. 1255, PageID.39351–53.)

In response to this development, the Court convened a meeting with Settlement Counsel on March 1, 2021 at 6:00pm EST. The meeting was held in chambers to permit a frank, uninhibited discussion regarding Co-Lead Class Counsel's decision to file a motion that 1) was in violation of the terms of the MSA; and 2) failed to follow the Court's standard Practice Guidelines or the Fifth Amended CMO's protocol for resolving disputes that arise between regularly scheduled status conferences. At the in-chambers meeting, Co-Lead Class Counsel Michael Pitt indicated that he would withdraw the motion. He then did so that day. (ECF No. 1449.) He

9

certainly could have withdrawn as Co-Lead Class Counsel, or he could have requested that this subject be heard at the next status conference if he believed the relief sought did not violate the terms of the MSA. However, Co-Lead Class Counsel chose not to pursue either of these options. For this reason, the merits of the motion were never reached, and the motion was never adjudicated.

Next, several months later, the *Chapman* objectors filed a Motion to Review and Respond to Hourly Billing and Costs; and for Discovery of Bone Scan Information. (ECF No. 1710, PageID.62272.) That filing contained portions of a deposition that the Court had previously ordered sealed and not to be distributed beyond counsel to the bellwether cases. (*See e.g.*, *Id.* at PageID.62284.). The Court issued a show cause (ECF No. 1718) and learned that Co-Lead Class Counsel, Michael Pitt, had provided the confidential and sealed deposition transcript to counsel for various objectors who are not counsel in the bellwether cases. (See ECF No. 1720, PageID.52519.) This was a violation of a court order (ECF No. 1290, PageID.39774) and appears at least arguably at odds with Mr. Pitt's obligations under the MSA.

10

Accordingly, the Court held a meeting in chambers with Settlement Counsel on May 3, 2021 at 3:00pm ET to discuss whether Mr. Pitt wished to continue as one of the court-appointed Co-Lead Class Counsel. At the meeting, Mr. Pitt vehemently re-affirmed his commitment to his role as Co-Lead Class Counsel, as well as to the terms and conditions of the MSA. He further stated that, based on the experts to whom he had spoken, he believed that the bone scans conducted with a modified portable XRF bone scanner are safe. Mr. Pitt also indicated that he had no reason to object to any aspect of the MSA's terms—including bone scans—or to assist other counsel in doing so. The Court reasonably requested that Mr. Pitt confirm his statements in writing. Therefore, at the Court's request, Mr. Pitt wrote letters--dated May 5, 2021[3] and May

---

[3] The *Hall* objectors' discussion of Mr. Pitt's May 5, 2021 reveals their confusion. They state, "The Court further admitted to circulating these letters to other attorneys, presumably settling parties, but apparently not to the objectors who these letters were aimed toward." (ECF No. 1802, PageID.64662.) First, the letters were addressed to the undersigned; not "aimed toward" any objectors. Second, the Court does not "admit" anything; and characterizing the undersigned's statements during a hearing as an "admission" is a bewildering, if not a troubling look into the way counsel views the Court and its role. And finally, counsel for the *Hall* objectors is directed to read the order appointing Co-Lead and Co-Liaison Counsel, cited herein, in order to understand the duties assigned to these lawyers, which includes communication with individually-represented Plaintiffs, such as the *Hall* objectors.

11

13, 2021-- to confirm that he remained committed to the terms of the MSA and his duties as Co-Lead Class Counsel.[4] Nothing was adjudicated in the Court's May 3, 2021 meeting, and the Court did not make any decisions affecting the merits of any pending issues.

Next, the *Hall* objectors argue that the in-chambers meetings held on March 1, 2021 and May 3, 2021 were improper "*ex parte*" gatherings. Significantly, Co-Liaison Counsel for Individual Plaintiffs, Co-Lead Class Counsel, and counsel for the Settling Defendants were all present in chambers at both meetings. The *Hall* objectors argue that these parties are not opposed to one another because they have settled their dispute. This is wrong. These are adversaries for several reasons. First, they are both Plaintiffs' and Defendants' counsel in the litigation, and second, the settlement is not yet final. Preliminary approval was granted on January 21, 2021. (ECF No. 1399.) But the walk-away period has not yet been triggered, the claims process has not yet begun, and the Court has not

---

[4] The *Hall* objectors raise one issue--out of all 72 pages in their motion and reply--that warrants an honorable mention. To wit: Mr. Pitt improperly sent his two letters to the Court without copying Settlement Counsel. After the Court saw this, the Court's law clerk distributed the letters to those other counsel. Both letters are now on the docket and published in several newspapers, so the Court need not docket them on its own as it did with Mr. Stern and Mr. Shkolnik's letter about the safety of portable bone scans. (ECF No. 1455, PageID.57127.)

12

yet adjudicated the motion for final approval or any of its adjacent motions including Plaintiffs' Motion for Attorney Fees and Reimbursement of Expenses (ECF No. 1458) to which the *Hall* objectors object. (ECF No. 1548.) The meeting does not become *ex-parte* merely because counsel to an objection was not present.

Not only were the parties in the meeting adversaries, the Court takes care in all of its work to ensure that no discussions take place related to motions filed or opposed by counsel who are not present. None of the objections, including that of the *Hall* objectors, have been discussed, adjudicated, or decided. Mr. Pitt's letters have no bearing, whatsoever, on the objections, and neither do the in-chambers meetings.

Next, the *Hall* objectors request an order permitting their counsel to attend any hearing or meeting pertaining to the settlement where settlement counsel are present. The *Hall* objectors' counsel is subject to the same rules and requirements as all other counsel. Hearings are conducted in open court, currently via video-teleconference, and that process will continue for the duration of the Administrative Orders in the Eastern District of Michigan that limit in-person hearings during the COVID-19 pandemic. (*See* Eastern District of Michigan Administrative

13

Order, 20-AO-021, http://www.mied.uscourts.gov/pdffiles/20AO021.pdf). Counsel may request the Zoom link using the Court's procedures as set forth above.

As to the *Hall* objectors request that the court "remedy" past *ex parte* proceedings by requiring setting parties to "swear to a full and impartial accounting of what transpired during those two off-the-record conferences," the request is denied. As set forth above, there are no "*ex parte* proceedings" to be remedied and the proposed relief is not warranted. Moreover, the methodology proposed by the *Hall* objectors to "remedy" the nonexistent issue is wholly unsupported by authority and is an extraordinary and burdensome (if not vexatious) proposal. This is particularly true where counsel in this litigation should focus their time and attention on the scores of pending motions and preparation for the upcoming bellwether trials. The *Hall* objectors' proposal is as follows:

> Hall objectors move that four summaries be filed independently by Class Counsel, Liaison Counsel, the Special Master, and one jointly by the attending defendants. Redundancy is appropriate because each fraction may simply recall different aspects of the proceedings, and also because each party has little interest (indeed antipathy) in describing discussion relevant to objectors. Hall objectors do not waive their right to seek further discovery of the hearings if these summaries appear manifestly deficient, but hopefully

14

redundant recollections will avoid the need. Following these summaries, the parties could have 14 days to object to aspects of each other's summaries and thereby complete the record. Following the corrected supplement of the record, objectors should be allowed to respond to any representations or concerns raised during these proceedings. These could occur within a consolidated briefing schedule for all objectors to reply in support of their respective motions and against the settling parties' responses to objections.

(ECF No. 1736, PageID.62819–20.) This proposal is an unnecessary and outrageous waste of time.

The *Hall* objectors' suggestion that the undersigned violated Canon 3A(4) of the Judicial Code of Conduct is likewise not well taken. (*i.e.*, ECF No. 1802, PageID.64663 ("To level the playing field and restore some semblance of compliance to Canon3A(4), the Court should grant the Motion. . .").) There is no need to "restore some semblance of compliance" with the Judicial Canons because they have not been violated. But if there had been a violation, a full remedy would be implemented, and it would accomplish much more than "restor[ing] some semblance of compliance." The Court would address the violation and proceed in full compliance with Canon 3A(4).

As to the *Hall* objectors' request under 28 U.S.C. § 753(a) & (b) that all hearings be recorded and that the Court should "default toward open

15

proceedings," the Court already holds all hearings on the record and has always done so. To this end, the *Hall* objectors seek relief that is already the "default" in these cases, and their motion is accordingly denied as moot.

Finally, the Court notes that the *Hall* objectors' counsel attempted to improperly "take discovery" on the Court in support of this motion by sending an e-mail to the Court's law clerk. (ECF No. 1802-5, PageID.64699.) The Court is perplexed by the *Hall* objectors' methodology, which is, to use counsel's own words, "just *weird*." (ECF No. 1802-2, PageID.64681 (emphasis in original).)

## IV. CONCLUSION

In sum, this Court strives to conduct these cases in a transparent and open manner with strict adherence to the Federal Rules of Civil Procedure, the Judicial Canons of Ethics, and the applicable law. The *Hall* objectors' misinformed, unsupported, and speculative narrative aside, they have not been prejudiced, much less unfairly prejudiced or "uniquely disadvantaged" (ECF No. 1736, PageID.62818) by the Court's decision in this complex litigation to hold two in-chambers meetings with settlement counsel, which do not regard or have any impact on the merits

of any pending motions or objections. Accordingly, the *Hall* objectors' motion is denied with prejudice.

    IT IS SO ORDERED.

Dated: June 16, 2021　　　　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　　United States District Judge

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2021.

　　　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　　　　Case Manager