# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Flint Water Cases

Case No. 5:16-cv-10444-JEL-MKM
Hon. Judith Levy
Mag. Mona K. Majzoub

_____

## DECLARATION OF MICHAEL L. PITT

Michael L. Pitt, pursuant to 28 U.S.C. § 1746, declares as follows:

**A.     Court's assertion regarding Counsel violating a Court Order:**

1. The Court asserts in its Opinion denying the Hall Objectors' Motion that the sharing of Dr. Specht's deposition transcript "appears arguably at odds with [my] obligations under the MSA." ECF No. 1830 PageID. 65303. This assertion is not supported by any record evidence and is based on off-the-record colloquy with the Court at proceedings held on May 3, 2021, and May 10, 2021.

2. The Court specifically asserts that my sharing of the transcript with Valdemar Washington, an attorney of record in this case, was a violation of a Court order. ECF No. 1830 PageID. 65303.

3. This "finding" is based on the off-the-record colloquy with the Court on May 3rd and May 10th and therefore cannot be considered a valid "finding" because there is no record of what the Court based this conclusion on. Moreover, the "finding" is contrary to the record evidence in this case.

4. The Court's order found at ECF No. 1290, PageID. 39774 provides that "For the reasons set forth on the record, copies of the transcript of Dr. Aaron Spect's (sic) deposition that have been disseminated to any counsel who is not counsel of record in the four bellwether cases must be destroyed."

5. The transcripts which were the subject of that order were destroyed and that fact was made clear to the Court at the May 3rd off-the-record conference.

6. At the May 3rd off-the-record conference and again at the May 10th off-the-record proceeding, I informed the Court that approximately 4 months later I received a different copy of the deposition transcript provided by counsel for VNA.

7. A request was made to Mr. Stern for the release of the transcript because it was the subject matter of a contested VNA expert's opinion. VNA expert witness David W. Thompson said in his January 2021 declaration that he relied on Dr. Specht's deposition testimony in formulating his opinions. ECF No. 1371-4 PageID. 47581. Thus, Dr. Specht's testimony became at issue for an entirely different reason. In response to our request, Mr. Stern released the transcript unconditionally. ECF No. 1319 PageID. 40324.

8. When I received the transcript from Mr. Stern in February 2021, I noted it was marked "Highly Confidential." I consulted the Confidentiality Order entered by the Court on December 19, 2017. ECF No. 299, PageID 11446. At paragraph 12(b)(iv), the Order provided that all counsel of record for parties in the

2

Flint Water Cases are entitled to access any material labeled "Highly Confidential". Id. PageID. 11463 and that this material may be used at trial or at an evidentiary hearing. Id. PageID. 11461.

9. As I explained at the May 3rd and May 10th off-the-record proceedings, I made a good faith determination that I was authorized to share this new transcript with attorney of record Valdemar Washington because it was released for an entirely different purpose and was relevant to an issue under consideration by the Court and the parties.

10. As I stated to the Court on May 3rd, I shared the transcript with Mr. Washington so that he could read firsthand how the device was utilized so that an informed decision could be made as to the safety aspects of the bone scan process.

11. Mr. Washington was fully aware that I was a proponent of using bone scans if both safely and equitably administered. Mr. Washington knew that I was working tirelessly to secure a second site for anyone who wanted a bone scan to get one, including Mr. Washington's clients.

12. The evidence on the "record" demonstrates unequivocally that I did not violate the court's order and that given the change in circumstances over a 4-month period of time, the sharing of the transcript with counsel of record was authorized by the 2017 Confidentiality Order.

13. Moreover, Co-Lead counsel have an obligation to disseminate discovery materials to other counsel of record as part of their obligation to co-ordinate discovery ECF 234.

14. The Court's finding that I violated a Court Order does not reflect an actual ruling that would be subject to appeal, but rather is derived solely from off-the-record proceedings, which failed to include any documentation of the discussion or any opportunity to respond on the record.

### B.     Motion for Show Cause Hearing on Bone Scan Safety and Accessibility

15. Contrary to the Court's characterization of the March 1, 2021, the motion brought by Co-Lead Class Counsel as seeking to suspend the bone scans ("Motion") and also as being inconsistent with Counsel's obligation to the class, the Motion was fully consistent with Counsel's obligation to our clients. The Motion only sought to suspend the bone scans that were being performed, pending a hearing on the regulatory approval, safety and equal accessibility of the bone scans to the class as a whole.

16. The record evidence indicates that the Motion was signed by and approved by the entire Executive Committee for Class Plaintiffs. The Executive Committee voted unanimously on February 26, 2021, to file the Motion.

17. The Court does not accurately characterize the scope and content of the

Motion.

18. Moreover, the Court stated on March 1, 2021 that filing the Motion was inconsistent with my role as Class Counsel and if I elected to pursue the Motion I would have to withdraw as Class Counsel. Based on this statement to me, the Motion was withdrawn.

19. The Court relies on an inaccurate summary of the Motion as "proof" to buttress a conclusion that I was trying to undermine the settlement, notwithstanding the actual facts and all my efforts to the contrary.

20. The Court erroneously states that on March 1, 2021 "Co-Lead Class Counsel Michael Pitt indicated that he would withdraw the [March 1] motion." The Court further states that I chose not to refile the motion without addressing the Court's directives that made the refiling of the Motion a moot point.

21. If there was a proper record made of this event, it would reveal that I did not speak at that hearing because I was at Cedars-Sinai Hospital in Los Angeles at 3:00 pm local time sitting bedside with my wife who was undergoing a high-risk medical procedure. I was wearing a surgical mask and I was not in a position to speak. Mr. Leopold represented the Plaintiff class that day and it was he who had the off-the-record colloquy with the Court.

22. On March 1, 2021, I believed that my clients, the Plaintiff class, would unduly suffer and be prejudiced if their counsel, who have represented them since

the beginning of this case filed in November 2015, were to withdraw or be removed.

### C. Letters to the Court

23. The Court's recitation of the impetus for my filing letters directly with the Court in its order denying the Hall Objectors' motion is not an accurate reflection of what occurred.

24. First, the Court's opinion fails to acknowledge that there was in fact an off-the-record proceeding held on May 10, 2021 and that during that meeting that I was ordered twice to revise my May 5, 2021 letter.

25. Submission of the May 5, 2021 letter was not an *ex parte* filing. I was complying with a directive of the Court to submit the letter directly to the Court for review and approval. Ultimately the Court did not find that letter sufficient and at the subsequent May 10, 2021 off-the-record proceeding directed me to submit another letter.

### D. Counsel's effort in support of Class and Settlement

26. Much of the discussions at the unrecorded conferences related to the Court's assertion that my efforts to make sure everyone had equal access to the bone scan option to establish their claim constituted an undermining of the settlement terms.

27. For many children who have registered for the settlement, an elevated bone scan readout will be the only way that a child can achieve a substantial award

6

under the GRID. The record evidence and information provided at the conferences of my enduring commitment to make sure that there is universal accessibility to bone scans is undisputed and yet is omitted by the Court in its summary of what occurred. This one sided and limited presentation of what occurred at the conferences fails to present an accurate record of the facts necessary to address the Court's stated concern with my proper representation of the Class in this case.

28. Prior to the November 18, 2020 public release of the Master Settlement Agreement and compensation GRID, I engaged in considerable efforts to make bone scans accessible to class members and residents who registered for the settlement.

29. In the fall of 2020, the Napoli Shkolnik Firm made it clear to me that it would not share its bone scan operation with residents who signed onto the settlement and who were not their clients. I had no choice but to set up my own bone scan operation.

30. In October 2020, I approached Dr. Ni of Purdue University to help us develop a second Flint site for bone scans. Dr. Ni, who trained Dr. Specht, belonged to a very small group of scientists who were conducting research using a customized Thermo Fisher handheld XRF analyzer to detect lead in human bones *in vivo*.

31. After several weeks of discussion, we were informed that neither Dr. Ni nor Purdue University would be a position to set up a second Flint bone scan test site.

32. I then contacted Drs. Jepsen of the University of Michigan and Andrew Todd of Mt. Sinai Hospital in NYC on December 21, 2020, for the purpose of setting up a second bone testing site. Both doctors were experienced in using the stationary KXRF bone scan technology to read out lead levels in human bones. Todd/Jepsen Declaration, ECF No. 1497, PageID. 58184. Neither doctor was experienced in using the customized Thermo Fisher handheld analyzer used by Dr. Specht. Nonetheless, both doctors enthusiastically agreed to work with us to set up a second testing site which would be open to any registrant who wanted a bone scan. Todd/Jepsen Declaration Id. PageID. 58185.

33. Drs. Todd and Jepsen advised me that they would move forward if I could secure the handheld devices from Thermo Fisher for them to use. They also requested that Dr. Specht provide "complete, written protocols including details of the calibration materials and process" that he was using. Dr. Specht agreed to provide the written protocols and I agreed to secure two handheld devices from Thermo Fisher. *Id*. PageID. 58185.

34. On January 29, 2021, Drs. Todd and Jepsen met with Mr. Napoli and Dr. Specht and he agreed to provide the written materials requested by Dr. Jepsen and Dr. Todd. Id. Special Master Greenspan participated in that call. She made the introductions and left the scientists to discuss how they might collaborate on this project.

8

35. Notwithstanding weeks of prodding by Special Master Greenspan and Co-Lead Class Counsel, Dr. Specht did not provide Drs Todd and Jepsen with the written protocols. *Id*.

36. Thermo Fisher refused to sell to me the handheld devices because the devices were not to be used on humans even if customized. *Id*. PageID. 58186.

37. Moreover, Special Master Greenspan was either party to many of Class Counsel's conversations with Drs. Todd and Jepsen and/or she was kept apprised of the progress that I was making in establishing a second test site.

38. Special Master Greenspan assured me that she was keeping the Court advised of my efforts to establish universal accessibility through the establishment of a second testing site.

39. In an effort to reverse Thermo Fisher's decision, I spoke directly with the Thermo Fisher Regional Sales Manager and its legal counsel to provide Thermo Fisher with assurances that the handheld devices could be used safely on humans. By Mid-May 2021, Thermo Fisher closed the issue by refusing to sell the devices for the intended use and advised Mr. Napoli that he is not permitted to use the device on humans. ECF No, 1840-2 PageID. 65635.

40. When this door was closed, I then re-opened dialogue with Dr. Todd regarding the availability of the KXRF stationary device that he was using in New

9

York. Due to certain obligations, I was informed that the KXRF device would not be available to us for creating a second Flint site.

41. In mid-June 2021, I contacted Dr. Fiona McNeill of McMaster University located in Hamilton, Ontario. She in an expert in KXRF technology. Dr. McNeill initially agreed to assist us since her machine was idle because of the COVID shutdown in Canada. One-week later Dr. McNeill informed me that the Canadian government was lifting the shutdown at McMaster so that her research could continue. As a result of this development, the KXRF device she was offering was no longer available. Travel to Hamilton, Ontario is not possible because the US-Canadian border remains closed.

42. As of June 15, 2021, it became clear that the establishment of a second site was unlikely to occur because the manufacturer would not permit us to use the handheld device and there are no available KXRF devices which can be called into action to provide bone scan readouts for Flint registrants.

43. As further evidence of my commitment to the Settlement, I asked Special Master to arrange for a hearing with the Court so that we could share with her concerns about making sure every registrant who wanted a bone scan could get one. Special Master Greenspan, apparently with the Court's approval, asked me to send to the Court correspondence outlining our concerns.

44. By March of 2021, the Napoli Firm had agreed to provide bone scans of individuals who were not their clients. Scheduling issues soon developed.

45. A letter was sent to the Court with copies to the group of lawyers representing the "Settling Defendants."

46. On March 19, 2021, I raised these concerns with the Court:

> Dear Judge Levy:
>
> Thank you for the opportunity to address our ongoing concerns about bone scans. We have four concerns:
>
> 1. Impediments to our efforts in establishing a second site for bone scans.
>
> 2. Issues regarding accessibility of the bone scan site operated by the Napoli Firm.
>
> 3. Ensuring that the Court understands the importance of the bone scan option in meeting the goals of equity and inclusion for all Flint registrants.
>
> 4. Safety determinations to encourage increased registrant utilization of the bone scan option.
>
> We will be in a position to elaborate on these issues at the conference set for March 24th or at some other time as designated by the Court. We continue to work closely with Special Master Greenspan to find solutions to our concerns. Signed Michael L. Pitt

47. Since the receipt of this letter, the Court has not directly addressed these concerns.

48. These actions are consistent with the reservations I submitted at the time of the settlement specifically with regard to the equal accessibility of the bone scans.

I declare under penalty of perjury that the statements above are true based upon my own personal knowledge, information and belief.

**FURTHER, DECLARANT SAYETH NOT.**

_____
Michael L. Pitt

Dated: June 30, 2021