**NOTICE OF APPEAL to the 6th Circuit Court of Appeals (and/ or) Permission to APPEAL ECF Dco. # 1993 dated October 20th, 2021 in Flint Water Crisis Case # 16-cv-10444.**

**Please note: that [I] Melvin Jones Jr. (e.g. current address 1935 Hosler St. Flint, Michigan ph # 810-962-6225; email - meljonesjr@gmail.com).... [am] the Pro Se Appellant in Appeal # 21-1530.**

**Please FILE my appeal (e.g. as the 6th Cir.) on previous occasion [VIA EMAIL] has specifically noted that i MUST submit such DIRECTLY to the Detroit District Court. Thank you,**

X_____

**Melvin Jones Jr. - disabled Flint Resident**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*ECF Doc. #1993*

*In re* Flint Water Cases.

_____/

This Order Relates To:

ALL CASES

_____/

Judith E. Levy
United States District Judge

---

## OPINION AND ORDER GRANTING PLAINTIFFS', STATE DEFENDANTS', ROWE'S, AND THE MCLAREN DEFENDANTS' STIPULATED ORDER [1980-1] AND GRANTING THE FLINT DEFENDANTS' MOTION TO FILE A SUR-REPLY [1992]

Before the Court is Plaintiffs' and the McLaren Defendants'[1] motion for entry of a stipulated order. (ECF No. 1980.) The stipulated order they seek to have entered is attached as Exhibit 1 to their motion. (ECF No. 1980-1.) The Flint Defendants filed a motion for leave to file a sur-reply, which is granted. (ECF No. 1992.) For the reasons set forth below, the stipulation is granted and will be entered as an Order of this Court.

## I. BACKGROUND

---

[1] Capitalized terms are defined as set forth in the Amended Master Settlement Agreement (ECF No. 1319-1) unless otherwise defined.

The Amended Master Settlement Agreement ("AMSA") that has received preliminary approval from this Court has a variety of Walk Away rights that permit Defendants to withdraw from the settlement if various registration thresholds are not met. In addition to those rights, the McLaren Defendants also have Walk Away rights set forth in Section 18.2 of the AMSA, which states:

> The McLaren Defendants in their sole and absolute discretion, will have the right to rescind, terminate, or cancel this Settlement Agreement as to the McLaren Defendants only if any of the persons listed on Exhibit 19 who allege exposure to Legionella at McLaren Flint Hospital during the period of April 25, 2014 through December 31, 2018 fail to timely register and provide required information to participate as a Claimant in the Settlement Program.

(*Id*. at PageID.40389–40390.)

Although the final list of registrations is not yet available, it is clear that the McLaren Defendants will be able to exercise their right to Walk Away from the settlement along with the $20,000,000 they committed to contributing to the Qualified Settlement Fund ("QSF").[2] If

---

[2] Under the AMSA, each participating Defendant negotiated certain rights and preconditions whereby they can walk away and terminate their involvement in the settlement. (ECF No. 1319-1, PageID.40389 (Article 18).) The existence of Walk Away rights in the AMSA is not unique to the McLaren Defendants.

the McLaren Defendants leave the settlement, then the following will occur. First, the McLaren Defendants' contributions to the QSF must be returned to them. Second, the entire QSF is reduced by $20,000,000 (which, in turn, reduces the total amount of funds available for Monetary Awards for *all* Claimants—not just those who sued the McLaren Defendants or have other Legionella claims). Third, Category 27 of the compensation grid is replaced with Exhibit 18 to the AMSA which affects the Monetary Award for certain Claimants asserting death from Legionella. (*Id.*; *see also*, ECF No. 1319-2, PageID.40825 n. 4.) Moreover, co-Defendants including the Flint Defendants[3] would not receive the benefit of a cross-claim release from the McLaren Defendants. (ECF No. 1991, PageID.68557 (citing ECF No. 1319-1, PageID.40385, ¶16.6).)

The McLaren Defendants have expressed a willingness to remain a party to the settlement even though many of the individuals who filed cases against them have elected not to participate in the AMSA. They

---

[3] The Flint Defendants include not just the City of Flint itself, but also individuals Howard Croft, Michael Glasgow, Dayne Walling, Daugherty Johnson, Gerald Ambrose, Edward Kurtz, Darnell Earley, and Michael Brown. (ECF No. 1319-2, PageID.40338 (AMSA Para. 1.26).) While all of these individuals are represented by the City of Flint's attorneys, it is not clear that the *City Council* has the authority to make decisions on behalf of these individuals.

seek to contribute $5,000,000 to the QSF in lieu of exercising their Walk Away rights. This $5,000,000 would increase the total amount of funds for Monetary Awards for all Claimants. The McLaren Defendants put it this way: "it is appropriate and reasonable that the McLaren Defendants pay $5,000,000 as their agreed portion of the Settlement Amount" which is an amount that "appropriately reflects the level of registration, and it is preferable to having the McLaren Defendants rescind their participation and funding entirely." (ECF No. 1980, PageID.68478.) Co-Lead Class Counsel and Co-Liaison Counsel for the Individual Plaintiffs agreed with the McLaren Defendants' offer to continue participating in the settlement. All the Defendants except the City of Flint Defendants agree to the stipulation. (ECF No. 1980, PageID.68481.)

The McLaren Defendants' decision to remain in the settlement primarily impacts the registered participants in the AMSA and the McLaren Defendants, but it also preserves the cross-claim releases benefitting each Defendant. Although no Settling Defendant's Walk Away or other rights affect another Settling Defendant's rights and obligations under the AMSA (*see* ECF No. 1319-1, PageID.40389 (Article 18)), both the State Defendants and Defendant Rowe agreed to the plan

4

for the reasons stated in the stipulation, and, undoubtedly, because the cross-claim releases benefit them as well.

The City of Flint Defendants, however, have neither agreed to nor rejected the McLaren Defendants' and Plaintiffs' agreement to retain McLaren as a participating Defendant in the settlement. They determined that, unlike several previous stipulations regarding the AMSA's terms, this stipulation needed to be a "decision of a legislative body," meaning, the Flint City Council needed to vote on it. (ECF No. 1983, PageID.68527.)

Counsel for the City "submitted a resolution approving the proposed Amendment. . . and recommended its approval" to the City Council. (*Id*. at PageID.68528.) Upon review, the Flint City Finance Committee voted to submit a resolution approving the amendment to the full City Council at the September 13, 2021 City Council meeting. (*Id*. at PageID.68528.) Once the resolution reached the full City Council on September 13, 2021, however, the City Council decided to "table[] the resolution." (*Id*. at PageID.68531–68532.) In other words, "the Council never approved the proposed amendment," nor did it vote against it. (*Id*. at PageID.68529.) Even though the City Council has not rejected the

5

stipulation, the City of Flint contends that absent their agreement, the McLaren Defendants are prohibited from contributing funds to the settlement. They base this assertion not on any interpretation of the AMSA, but rather on general contract law that a contract cannot be amended absent agreement of all parties. They further assert that the decision of the City Council to table a proposed resolution is a decision that cannot be reviewed by any court and therefore this Court is barred from considering or granting the motion.

For the reasons set forth below, the Flint Defendants' position reflects a misinterpretation of the AMSA and of Michigan contract law. The Flint City Council may not halt a *co-defendant* from *contributing funds* to the QSF for the benefit of Plaintiffs, nor may the Flint Defendants prevent this Court from interpreting the terms of the AMSA. Fortunately, the Flint Defendants' error can be rectified before its effects ripple further.

## II.   APPLICABLE LAW

"Settlement agreements are a type of contract and are therefore governed by contract law." *Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). As set forth by the Michigan Supreme Court,

"[t]he primary goal in the construction or interpretation of any contract is to honor the intent of the parties." *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n. 28 (1994). The Court looks to "the words used in the instrument," for the parties' intent. "Generally, if the language of a contract is unambiguous, it is to be construed according to its plain meaning. On the other hand, if the language of a contract is ambiguous, courts may consider extrinsic evidence to determine the intent of the parties." *Shay v. Aldrich*, 487 Mich. 648, 660 (2010.)

Michigan law implies a covenant of good faith and fair dealing in every contract. *See Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476 (2003) (citing *Ulrich v. Fed. Land Bank of St. Paul*, 192 Mich. App. 194, 197, (1991)); *see also, Hammond v. United of Oakland, Inc.*, 193 Mich. App. 146, 151–52 (1992) ("It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.") (internal citations omitted).

## III.   DISCUSSION

### A. The Implied Covenant of Good Faith in Michigan Contract Law and the AMSA's Modification Provisions

When each of the parties signed onto the AMSA, they did so with an implied covenant to act in good faith. And in exercising their duties under the AMSA, including when modifying the AMSA, they must act in good faith, and not unreasonably withhold consent. This duty is both with respect to the registered participants to the AMSA and with one another. Section 23.3 of the AMSA governs modifications and amendments, where it states: "This Settlement Agreement may be modified or amended only by a writing executed by Co-Lead Class Counsel, Co- Liaison Counsel, and Defendants' Counsel and approved by the Federal Court." (ECF No. 1319-1, PageID.40401.) The duty of good faith applies to the entire AMSA, including Section 23.3.

The decision of each Defendant to participate in the AMSA was entirely voluntary.[4] The AMSA contemplates a City Council vote on whether to participate in the settlement where it states in paragraph 2.6:

> Flint Defendants' *obligation to pay* is subject to their ability to obtain Flint City Council authorization, appropriation, and approval to pay the above sums into the FWC Qualified Settlement Fund. If the Flint Defendants fail to obtain that authorization, appropriation, and approval by December 31,

---

[4] Indeed, not all Defendants in the Flint Water cases participated in the AMSA, and those non-settling Defendants will be part of the first round of bellwether trials beginning in February 2021.

2020 then the Flint Defendants' participation in this Settlement Agreement shall be cancelled and rescinded as set forth in Article XVII-Rescission.

(ECF No. 1319-1, PageID.40348 (emphasis added).) Notably, this is the *only* mention of the Flint City Council's involvement anywhere in the AMSA – and it expressly refers to the approval for the obligation to pay. The Flint Defendants had the option of participating in the settlement provided that they obtained authorization, approval, and *appropriation* from the City Council by December 31, 2020. The Flint City Council voted in favor of joining the settlement for $20 million on December 21, 2020. *See*, City of Flint, Michigan, Press Releases, *Flint City Council Majority Supports $20 Million Insurance Payment for Residents* (https://www.cityofflint.com/2020/12/22/flint-city-council-majority-supports-20-million-insurance-payment-for-residents/) (last visited Oct. 20, 2021). Accordingly, after this point, the Flint Defendants are bound by the AMSA[5] and by Michigan law's implied covenant of good faith in contracting.

---

[5] Pending the outcome of the Plaintiffs' unopposed motion for final approval of the settlement.

9

The Flint Defendants determined that they needed full City Council approval before the agreement between the McLaren Defendants and Plaintiffs can be entered by the Court. They base that position on their interpretation of the City Charter, where it states:

> The approval of litigation settlements is covered by Sections 4.604 (A) and (B) in the City Charter[] which state:
>
> (A) [T]he City Attorney[] shall [] be the attorney and counselor to the municipal corporation of the City of Flint, its commissions, agencies, and other legal bodies of the city, its Mayor, its City Council and department heads and as such be responsible for all the legal affairs of the city.
>
> (B) [T]he City Attorney shall defend actions and lawsuits against the City of Flint, its agencies and its public servants, in which the City of Flint or public servants are a party, when they act in their scope and course of their employment. ***[However, n]o civil litigation of the City of Flint, [] may be settled without the approval and consent of the City Council.***

(ECF No. 1983, PageID.68531 (emphasis in original) (footnotes omitted).)

As set forth in the McLaren Defendants' reply brief, the Flint Defendants did not decide to participate in the settlement until November 2020. (ECF No. 1991, PageID.68556.) This was after the McLaren Defendants negotiated the provisions uniquely applicable to them with Plaintiffs and the State -- not the Flint Defendants. (*Id*.) The

10

AMSA does not contemplate any type of right held by the Flint Defendants (a co-Defendant) to assent to terms that uniquely apply to the McLaren Defendants and Plaintiffs.

## B. The Flint Defendants' Position

As set forth above, the City of Flint attorneys determined that the issue of modifying the AMSA so that the Plaintiffs may retain a contribution from the McLaren Defendants and so that the McLaren Defendants may continue to participate in the settlement should be submitted to the City Council and approved by a resolution. (ECF No. 1983, PageID.68531.) This modification – unlike the approval required in Section 2.6 – does not involve an obligation by the Flint Defendants to pay anything or do anything at all. As far as this Court knows, no other modifications or clarifications of the AMSA have been brought to the full City Council, or any committee of it, for a vote.

The Flint Defendants argue that the movants have turned "Michigan contract law on its head" with the movants' position that "an amendment is not a 'new' contract, requiring the same requisites to formation as an initial agreement." (ECF No. 1992, PageID.68592.) This argument is rejected. Movants have not turned Michigan contract law on

11

its head. The Flint Defendants correctly characterize the McLaren Defendants' and Plaintiffs' stipulation as an "amendment" in the very sentence quoted above. But then, they incorrectly argue that an "amendment" sets forth a "new" contract. By definition, an "amendment" is not an entirely "new" contract. Black's Law Dictionary defines an amendment as "1. A formal and usu. minor revision or addition proposed or made to a statute, constitution, pleading, order, or other instrument; specif., a change made by addition, deletion, or correction; esp., an alteration in wording. 2. The process of making such a revision." *Amendment*, *Black's Law Dictionary* (11th ed. 2019). The definition and common usage of the term "amendment" presupposes that a contract already exists. When a party proposes an amendment to their existing agreement, an entirely "new" contract is not the result, particularly where, as here, the provisions of the AMSA that apply to the City of Flint and Flint Defendants remain unchanged by the McLaren Defendants' and Plaintiffs' proposal. For sure, this is not a new contract with the City of Flint Defendants because it has no impact on them.

Additionally, as set forth above, the AMSA itself governs amendments and modifications to its terms in Section 23.3. As a matter

of contract interpretation, nothing in this paragraph or anywhere else in the AMSA lends support to the notion that one Defendant would have the ability to act in a way that impairs upon another party's contractual rights. The modification sought by all parties except the Flint Defendants would impose no additional obligations, nor would it take any rights away from the Flint Defendants. The principles of good faith and fair dealing that require the parties to act in a way that does not interfere with other parties' performance, is the very essence of the duty of good faith set forth in Michigan law, and the Court interprets Section 23.3 to include the implied duty of good faith such that no party can unreasonably withhold consent.

The Michigan doctrine of good faith and fair dealing is incorrectly interpreted by the Flint Defendants in their sur-reply where they indicate that movants "misunderstand" the duty of good faith, because, they argue, good faith "applies only in connection with the performance of a contract, not in connection with the decision to enter into, or modify, a contract, as is the case here." (ECF No. 1992, PageID.68592–68593.) This argument attempts to make a distinction where there is none recognized in Michigan law or in the AMSA. The duty of good faith and

13

fair dealing applies to the parties' performance under the terms of the AMSA, *including* section 23.3 governing amendments and modifications.

The Flint Defendants rely on the case *Stephenson v. Allstate Ins. Co.*, for the principle that "[a]n implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." 328 F.3d 822, 826 (6th Cir. 2003). *Stephenson*, in turn cites to a Fifth Circuit Court of Appeals case applying Michigan law, and an Eastern District of Missouri case applying Michigan law for that proposition.[6] *Id*. But this analysis misses an essential key, which is how

---

[6] Moreover, *Stephenson* involves a very different set of facts than are presented here. First, *Stephenson* involves a bilateral contract. But here, the AMSA is an agreement under which several defendants separately settled with Plaintiffs under one agreement.

Additionally, *Stephenson* involves a dispute over an insurance agent's proposed purchase of another agent's book of business, where the underlying company's agreement stated that the insurance company, "retains the right in its exclusive judgment to approve or disapprove such a transfer." *Id*. at 824. That provision was deemed to 'presume' no discretion. *Stephenson* stands for the proposition that if a contract contains an 'exclusive' right to make a determination, there is no discretionary decision that could be subject to the implied covenant. In other words, there would be no basis to create an obligation that is contrary to the terms of the contract based on an implied covenant of good faith.

Here, there is no attempt to impose an obligation on the Flint Defendants. To the contrary, the Flint Defendants seek to preclude other parties from acting. There is no provision present anywhere in the AMSA that would give the Flint Defendants,

14

the *Michigan courts* interpret their *own* laws. "As a federal district court, this Court is bound by the decisions of Michigan's intermediate appellate courts unless it is convinced that the Michigan Supreme Court would decide the question differently." *United States v. Wayne Cnty. Cmty. Coll. Dist.*, 242 F. Supp. 2d 497, 507 (E.D. Mich. 2003) (citing *Comiskey v. Auto. Indus. Action Grp.*, 40 F. Supp. 2d 877, 891 (E.D. Mich. 1999); *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 789 (6th Cir.1997)). And here, where the Michigan courts have spoken many times regarding the duty of good faith and fair dealing, this Court has good reason to be convinced that the Michigan Supreme Court would construe its own laws regarding good faith and fair dealing to apply to Section 23.3 and to preclude the Flint Defendants from interfering with the rights of other parties to a multiple party contract on issues that do not apply to Flint. *See e.g. Wedding Belles v. SBC Ameritech Corp.*, No. 250103 2005 WL 292270 (Mich. Ct. App. Feb. 8, 2005) ("Generally, there exists an implied covenant of good faith and fair dealing in all contracts 'that neither party

---

much less the Flint City Council or anyone else, a right in their "exclusive judgment" to approve or disprove a modification to an existing contract, particularly where, as set forth many times, that modification does not affect the Flint Defendants' own obligations, rights, and privileges under the AMSA.

shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' *Hammond v. United of Oakland, Inc*, 193 Mich. App 146, 151-152; 483 NW2d 652 (1992), quoting *Fortune v. National Cash Register Co*, 373 Mass 96, 104; 364 N.E.2d 1251 (1977). '[A]n implied covenant of good faith and fair dealing ... applies to the performance and enforcement of contracts,' limits 'the parties' conduct when their contract defers decision on a particular term, omits terms or provides ambiguous terms,' *Hubbard Chevrolet Co v. GM Corp*, 873 F.2d 873, 876-877 (CA 5, 1989), or leaves the manner of performance to a party's discretion. *Ferrell v. Vic Tanny Int'l, Inc.* 137 Mich.App 238, 243; 357 NW2d 669 (1984); *Burkhardt v City National Bank of Detroit*, 57 Mich.App 649, 652; 226 NW2d 678 (1975).''). None of the Settling Parties are imposing something "new" on the Flint Defendants. To the contrary, the Flint City Council is seeking to impose its own non-decision on the other parties, including the individual Flint Defendants.

Finally, moving parties have a duty under Eastern District of Michigan Local Rule 7.1(a) to seek concurrence before filing a motion and, if concurrence is obtained, "request a matter of record by stipulated

order." E.D. Mich. L.R. 7.1(a). The local rules authorize the Court to "tax costs for unreasonable withholding of consent." E.D. Mich. L.R. 7.1(a)(3). This rule is rarely triggered in the Eastern District of Michigan. *See, e.g., Dupree v. Cranbrook Educ. Acad.*, No. 10-12094, 2012 WL 1060082 (E.D. Mich. Mar. 29, 2012). Arguably, the Flint Defendants' withholding consent where the modification that does not impact the City of Flint Defendants whatsoever is unreasonable. The only impact on the City of Flint Defendants is the cross-claim release they gain by having the McLaren Defendants remain in the settlement. However, if the Flint Defendants wish to waive the cross-claim release from the McLaren Defendants, they may certainly address that issue as they deem appropriate.

The Flint Defendants argue that *Warda v. City Council of Flushing* is "on point," and prohibits any challenge to or review of the City Council's decision to table the resolution - but they are incorrect, and that is not what is happening here. 472 Mich. 326 (2005). In *Warda*, the plaintiff police officer sought reimbursement for his attorney fees (under Mich. Comp. Laws § 691.1408(2), which provides for indemnification of a police officer's attorney fees incurred in the discharge of the officer's

duties) from the defendant city after the plaintiff incurred legal fees defending himself against criminal charges incurred while moonlighting with another municipality. The defendant city council declined to reimburse the plaintiff's legal fees, finding that the attorney fees were not incurred in the officer's duties for the defendant city, and the plaintiff sued.

The Flint Defendants' argument that *Warda* precludes any judicial review or determination in this situation is overbroad. *Warda* recognizes, as it must, that the decision of a legislative body is not inviolate: it is subject to challenge as illegal or unconstitutional. Thus, the *Warda* court expressly notes that if the statutory basis for an award of fees is not met, the legislative body could not award the fees. And if the legislative body did award fees in a situation that did not meet the statutory requirements, then the court could find that determination unlawful or outside the scope of the power of the legislative body. Similarly, here, there is nothing in the Flint City Charter that permits the City to determine whether another Defendant in a settlement may resolve claims brought by Plaintiffs in the settlement. The Charter only requires

that the City Council authorize settlements involving "civil litigation of the City," which is not present here.

There are also significant factual differences between *Warda* and this case that also make it an unsuitable illustration of the Flint Defendants' points. For example, in *Warda*, the plaintiff was seeking the city council's reimbursement out of its own coffers for the plaintiff's attorney fees, and the city council voted not to permit the payment. Nothing even remotely similar is happening here. The McLaren Defendants would pay their own money into the settlement fund. They are not asking the Flint Defendants to pay more or less than the Flint Defendants have already agreed to, or anything of the sort. The McLaren Defendants' desire to contribute to the QSF has no financial impact on the City of Flint, nor does it involve a settlement "of the City of Flint." The *Warda* defendants were voting on their *own* budgetary spending, which is not the case with the Flint Defendants here.

The circumstance now is whether *the McLaren Defendants, Plaintiffs, and class members* can agree to resolve claims between them through a stipulation. This is not a decision that affects litigation "of the

City."[7] Each Defendant has an independent right to Walk Away from the AMSA if triggered, and no Defendant can preclude another from exercising these rights. The McLaren Defendants' decision to walk away (or not) is the McLaren Defendants' decision alone. Similarly, the McLaren Defendants' decision to contribute to the settlement, and the amount of the contribution, is between them and Plaintiffs – not the Flint Defendants.

---

[7] The Flint Defendants' sur-reply makes much of their interpretation of the City Charter's direction regarding the circumstances where a full-City Council vote is required. The Flint Defendants argue that movants essentially have no right to interpret the City Charter and by doing so, they are "officious intermeddlers with respect to the meaning of the Charter." (ECF No. 1992, PageID.68592.) This is an unnecessarily inflammatory accusation, and the Court rejects it. The movants and now the Court are merely trying to resolve a conflict that has arisen – something the Court does nearly every day in this case. Intermeddling aside, it is the Court's duty to address a pending motion. Meanwhile, the Court would be happy to remain focused on the core issues in this litigation, including whether final approval of the settlement is appropriate, among many other issues.

Assuming hypothetically that the City Council had not had the resolution brought to it for a full-City Council vote and the City Council had not tabled the resolution but rather the City's attorneys determined on their own not to consent to the stipulation, the result here would still be the same: this would still be an act contrary to the Court's interpretation of the AMSA's terms, including the meaning of Section 23.3 and the implied covenant of good faith and fair dealing. And additionally, Eastern District of Michigan Local Rule 7.1(a)(3) would remain applicable.

Accordingly, the Flint Defendants need not take offense at the notion that someone other than its own attorneys would look to its City Charter to try to understand the circumstances here.

20

The Flint Defendants argue that the City Council's decision to table the resolution is a legislative act that is inviolate, and that even this Court cannot look at this matter. The proper interpretation of the AMSA and applicable law makes the decision to table the resolution irrelevant. *See* fn. 7, above. The Flint Defendants' interpretation is inconsistent with the AMSA, logic, principles regarding separation of powers, and the implied covenant of good faith. There is nothing in the AMSA that lends support to the notion that one Defendant to the AMSA may control how another Defendant modifies provisions that resolve a dispute between Plaintiffs and that Defendant.

Moreover, the City Council's decision to table the resolution is not a "decision" at all, much less a decision that is outside of the bounds of this Court's ability to interpret. Nor is this a matter of the Court second-guessing the City Council's failure to act because the Court disagrees with the City Council. Granted, tabling a vote regarding a *separate* Settling Defendant's desire to *increase* the total QSF, which, in turn benefits *all* registered participants and has *no additional financial impact* on the City's own participation and obligations is difficult to understand. Particularly since many of the individual participants in the

settlement are also City Council members' own constituents – and even some of its members – all of whom would benefit from an increased Monetary Award if the settlement is given final approval. But that is not for the Court to decide or pass judgment on, and that is not what is being decided here. Rather, all that guides the Court's decision here is its interpretation of the AMSA, basic Michigan contract law, and the Court's Local Rules. It would be inconsistent with the implied covenant of good faith and with logic for the Court to interpret the AMSA as the Flint Defendants urge.

In their sur-reply, the Flint Defendants argue that movants are unreasonably demanding a "reason" for the Council's decision to table the resolution. (ECF No. 1992, PageID.68591.) The Court disagrees. The Flint Defendants overstate movants' position. While the movants mention that they do not know or understand the reason for Council's decision, in the end it does not matter what the Council's motives were. All that matters is what the Court has already analyzed, which is whether the City Council can speak for the individual Flint Defendants, the impact of the decision to table the resolution, and whether that aligns with the AMSA and Michigan law.

The Flint Defendants also suggest that there is no duty to contract in Michigan, or any other state for that matter. First, this is not a new contract, so this argument can be set aside on that basis alone. Second, even if it were a new contract, it is not one with the City of Flint – the modification is between the McLaren Defendants and Plaintiffs and class members. But, even so, the Flint Defendants argue as follows: that even if there is a great car for sale at an excellent price and the potential purchaser needs a car, there is no cause of action against the potential purchaser for failure to buy the car. (ECF No. 1983, PageID.68530.) But that is not what is happening here. Here, there is a car for sale at an advantageous price for the Plaintiffs and they have signed a purchase agreement. Yet, the Flint Defendants, who will never drive the car, have no interest in the car whatsoever, and might even benefit from the Plaintiffs purchasing the car, are standing in the way of the sale. That cannot be what Michigan contract law, the terms of the AMSA, or the Local Rules allow.

## IV.   CONCLUSION

As a matter of Michigan law and under the AMSA, the Flint Defendants have not cited any authority supporting their position that

this issue constituted a "new" settlement involving "civil litigation of the City" requiring a full City Council vote.

Further, it would be inconsistent with the AMSA to find that the Flint City Council's decision to table this resolution is a decision "inviolate." The issue of the McLaren Defendants' contribution to the QSF, and its amount, is a matter of the McLaren Defendant's settlement with Plaintiffs and class members, not the Flint Defendants.

For the reasons set forth above, the Court grants the stipulation attached as Exhibit 1 to the McLaren Defendants' Motion. (ECF No. 1980-1 (Stipulation and Order to Amend Paragraphs 2.1.3 and 2.3 of the Amended Settlement Agreement).)

**IT IS SO ORDERED.**

Dated: October 20, 2021           s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 20, 2021.

                                  s/William Barkholz
                                  WILLIAM BARKHOLZ
                                  Case Manager

24