```
 1                  UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
 2                        SOUTHERN DIVISION

 3

 4
            In Re   FLINT WATER CASES    Case No. 16-10444
 5

 6

 7   _____/

 8                       STATUS CONFERENCE

 9
                 BEFORE THE HONORABLE JUDITH E. LEVY
10                  UNITED STATES DISTRICT JUDGE

11                       DECEMBER 22, 2021

12
                       APPEARANCES IN ALPHABETICAL ORDER:
13
                       Frederick A. Berg
14                     Butzel Long
                       150 West Jefferson, Suite 100
15                     Detroit, Michigan 48226

16                     Teresa Ann Caine Bingman
                       Law Offices of Teresa A. Bingman
17                     1425 Ambassador Drive
                       Okemos, Michigan 48864
18
                       James M. Campbell
19                     Campbell Conroy & O'Neil, P.C.
                       1 Constitution Wharf, Suite 310
20                     Boston, Massachusetts 02129

21                     (Appearances Continued on Next Page)

22

23   To Obtain a     Jeseca C. Eddington, RDR, RMR, CRR, FCRR
     Certified           Federal Official Court Reporter
24   Transcript           United States District Court
     Contact:         200 East Liberty Street - Ann Arbor,
25                            Michigan 48104
```

```
 1                      Alaina N. Devine
                        Campbell Conroy & O'Neil, P.C.
 2                      1 Constitution Wharf, Suite 310
                        Boston, Massachusetts 02129
 3
                        Philip A. Erickson
 4                      Plunkett & Cooney
                        325 E. Grand River Avenue, Suite 250
 5                      East Lansing, Michigan 48823

 6                      Nathan A. Gambill
                        Michigan Department of Attorney General
 7                      ENRA Division
                        P.O. Box 30755
 8                      Lansing, Michigan 48909

 9                      William Young Kim
                        City of Flint
10                      1101 South Saginaw Street, Third Floor
                        Flint, Michigan 48502
11
                        Leslie M. Kroeger
12                      Cohen Milstein Sellers & Toll PLLC
                        11780 US Highway One, Suite 500
13                      Palm Beach Gardens, Florida 33408

14                      Theodore J. Leopold
                        Cohen Milstein Sellers & Toll PLLC
15                      11780 U.S. Highway One, Suite N500
                        Palm Beach Gardens, Florida 33408
16
                        Wayne Brian Mason
17                      Faegre Drinker Biddle & Reath LLP
                        1717 Main Street, Suite 5400
18                      Dallas, Texas 75201

19                      Eric Rey
                        US Department of Justice
20                      Civil Division
                        175 N Street, NE
21                      Washington, DC 20002

22                      Susan Elizabeth Smith
                        Beveridge & Diamond, P.C.
23                      1350 I Street N.W.
                        1900 N Street N.W.
24                      Suite 100
                        Washington, DC 20036
25
```

```
 1                          Corey M. Stern
                            Levy Konigsberg, LLP
 2                          605 Third Avenue, Suite 33rd Floor
                            New York, NY 10158
 3
                            Jessica B. Weiner
 4                          Cohen Milstein Sellers & Toll PLLC
                            1100 New York Avenue, NW
 5                          Washington, DC 20005

 6    Also Present:         Deborah E. Greenspan
                            Blank Rome LLP
 7                          1825 Eye Street, NW
                            Washington, DC 20006
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23            To Obtain a Certified Transcript Contact:
              Jeseca C. Eddington, RDR, RMR, CRR, FCRR
24                  Federal Official Court Reporter
                     United States District Court
25       200 East Liberty Street - Ann Arbor, Michigan 48104
```

1 **I N D E X**

MISCELLANY

Proceedings...................................4
Certificate..................................20

**P R O C E E D I N G S**

THE CLERK: Calling the Flint Water Cases.

THE COURT: Thank you, everyone, for being here. And let me make sure Jeseca, do you have everyone down or do we need appearances?

MADAM COURT REPORTER: I have everyone, Judge. I'm not sure if Ms. Leslie Kroeger is an attorney.

MS. KROEGER: I am. Hi, Jeseca. I'm with Ted Leopold's office and I'm with Jessica Weiner.

MADAM COURT REPORTER: Thank you.

THE COURT: Good. Thank you. Good.

Well, I'm very sorry for the delay in getting started. But I'm thankful that you're all here and have patience. So thank you, very much, for that.

The agenda is going to be a little shorter than I thought it would be because the first item on the agenda was to address some trial subpoenas for the bellwether cases and that issue is in the process of being resolved among the parties. So we won't need to address that today.

And the second issue was to have a report from Deborah Greenspan and -- hi Deborah -- on the status of the settlement claims process and where we are with that.

SPECIAL MASTER GREENSPAN: Okay. Thank you, your Honor. I'm very pleased to be here today to provide an update on the settlement claims process. I have provided some

1 updates in the past.

2 　　　　We had been somewhat optimistic sometime ago that the
3 process would start sooner and it has not, as everybody knows.
4 But we are now ready to proceed. And I want to outline for
5 the Court what has transpired and what I would least recommend
6 as a starting date for your consideration.

7 　　　　THE COURT: Okay.

8 　　　　SPECIAL MASTER GREENSPAN: So there have been a
9 number of factors that have delayed the start of this claims
10 process.

11 　　　　And I'm not going to go into what all of those were.
12 But I do want to report that over the past several weeks, the
13 claims administrator has been conducting a due diligence
14 process to test the claim system to make sure that all of its
15 components work correctly and that the process will be easy to
16 work for all of the claimants. And has also run some test
17 claims through the system and through a review process again
18 to evaluate the procedures and the policies and the time
19 periods and to be assured that the claims process will work
20 correctly once it starts.

21 　　　　So as a result of that process, there were a few
22 modifications made to the system. And when I say the system,
23 what I mean is the software system, the electronic system that
24 the claims administrator uses to intake claims and supporting
25 documents and then to log them and track them in the correct

1  way so that they can be assured that they have received all of
2  the appropriate materials from -- for an individual claim.  So
3  that's what the system is.
4         And then of course the review process is the actual
5  act of reviewing the submissions and determining whether they
6  meet the criteria of the settlement and where in the
7  settlement compensation categories the claim is most
8  appropriately placed under the terms of the agreement.
9         So both of those components of the claims evaluation
10  process have been tested.  And as I said, we've -- the claims
11  administrator made some modifications.  And those
12  modifications were intended to make it simpler for people to
13  submit claims and to clarify how people can, using the online
14  system, upload their documents.
15         And so there's a few other factors that were
16  involved.  But basically the goal is to make it more user
17  friendly as user friendly as it can possibly be made.
18         So let me just take a moment to give -- this is
19  something that I reported on a while ago but I'm sure that it
20  bears repeating.  Claimants will be able -- when this opens
21  up, claimants will be able to submit their claims through the
22  online process or they can submit their claims in a hardcopy
23  version by mailing their claim materials in to the claims
24  administrator.
25         Those people who registered online will receive an

1 email message notifying them that the claims process is open
2 and that they will be able then to login and they will be able
3 to see their instructions and the forms will be available to
4 them so they can complete everything online.
5 Those people who submitted their registrations by
6 mail instead of online, will receive a claims package in the
7 mail. And that claims package will include all the forms and
8 instructions that they will need.
9 I think it's important to note that it's my
10 understanding that about 13,000 registrants submitted their
11 registrations by mail and so those individuals, like I just
12 said, will get their claims package in the mail.
13 If somebody is having difficulty submitting their
14 claim online, a person who receives an email and tries to
15 submit their claim online, they will, first, be able to
16 contact a telephone help line that the claims administrator
17 has established to help them. But ultimately if they really
18 can't manage the online system, they can always request a
19 hardcopy form.
20 I know that it will be faster for the claims to go
21 through the process if claims are submitted online, but we
22 certainly don't want people to get stuck and be unable to
23 submit their claim because they're having some technical
24 issues. So that option is available to everyone.
25 I also want to emphasize -- and this will be in the

1   instructions -- but claimants are going to be asked to sign
2   certain documents.  In particular there are two documents that
3   will need to be signed.  One is a release and one is a
4   signature attestation form.
5           And I mention this because the system, the claims
6   administrations system will not -- these claims will not start
7   being reviewed until those documents are signed.  Again, that
8   will be very clear in the instructions but I think it bears
9   repeating.  Because people sometimes may think that they have
10  submitted everything, but if they haven't gone through the
11  signature process, the claim won't be -- won't go through the
12  review system.
13          So after meeting with the claims administrator, meet
14  with the settling parties, reviewing the status of the
15  policies and procedures, and the updates to the system, and
16  the necessity of printing and mailing 13,000 packages to
17  individual registrants, I'd like to suggest to the Court that
18  the claims process can commence reasonably on
19  January 12, 2022.
20          So that is the second week of January.  That's not
21  right after the holidays.  And I have been advised that the
22  claims administrator will be able to print the forms and have
23  them sent in the mail on January 5, which means that it should
24  be -- it should be a sufficient amount of time so that people
25  can receive those hardcopy forms by the 12th, which will be

1 the date that the online system opens.

2 So I know that this may be sort of confusing in the
3 abstract for people. But once people get their emails and
4 their packages in the mail, it will, I think, become very
5 clear to them. And I also want to make it clear there are
6 many thousands of people who are represented by lawyers. The
7 law firms are in the process of organizing their client files
8 to make sure that they can file the claims.

9 So if an individual is represented, they should make
10 sure that they've communicated with their lawyer and make sure
11 that they've given all of the information that the lawyer has
12 asked for so the claim can be filed and they do not need to
13 independently submit a claim.

14 So Your Honor, I would like to defer to how the Court
15 wants to proceed. But my thought was to submit -- that I
16 could submit a notice to the Court with the recommendation
17 about the start date and the Court could consider whether that
18 makes -- is reasonable. And then that will, of course, then
19 determine the deadline date for filing claims. Under the
20 master settlement agreement it's 120 days.

21 THE COURT: Okay.

22 SPECIAL MASTER GREENSPAN: The sort of claims period.
23 And the deadline date will need to be printed on the forms.
24 So it will be important to make sure that that is clarified.

25 So that is the end of my report. And I'm happy to

1    answer any questions.

2           THE COURT: Well, first of all, thank you for your
3    report and thank you for the work with the claims
4    administrator and the settling parties to come up with a
5    proposal. I think it's very helpful. And from everything
6    that I've heard from you today and from an earlier update, I
7    think beginning on January 12 makes a great deal of sense.

8           If we were to start any earlier, there would be sort
9    of Christmas-related mail causing delays and things of that
10   nature. And so January 12 makes abundant sense to me. So I'm
11   happy to indicate that now and formally on the docket as soon
12   as the recommendation is filed.

13          I can't tell you right now exactly how many 120 days
14   is from then, but I'm sure it will be in your notice. I have
15   a little calculator that I use. I think your admonition or
16   warning or encouragement for as many people to use the online
17   system as they can is worth repeating.

18          I know from my own experience filing my own taxes
19   that when I'm able to do it electronically, it goes a lot
20   faster than when I try to mail things in, especially if I'm
21   getting a refund. If that's the way to go is to use an online
22   system that's been developed for that process.

23          However, I am aware that not everyone has access or a
24   comfort level with making online submissions. So we -- the
25   system is absolutely equipped to receive hard copies of

1  records and so on that are needed for this.

2  I have received a number of letters at the court and
3  communications at the court from citizens in Flint who are --
4  have registered for the settlement and want to know why they
5  need to do anything further. They sort of -- some of the
6  correspondence to me indicates that people feel that
7  registering is enough.

8  And I just want to make sure that everyone
9  understands that there are 30 different categories of monetary
10 awards that are to be considered here. And sorting out which
11 category a person goes into absolutely requires filing a
12 claim, including a signature. So hopefully that message can
13 be emphasized as well. So thank you.

14 Are there other questions from counsel for Ms.
15 Greenspan? Okay. Well, thank you, Deborah, for your work
16 today but throughout this period of trying to assist and keep
17 everything on track. There's a lot going on behind the scenes
18 trying to get this all to work.

19 I will say in terms of sort of what's next on the
20 Court's docket, I notice Mr. Rey here from the United States
21 patiently there listening. And I have had for over a year a
22 motion from the United States for what's called interlocutory
23 appeal seeking to get the Sixth Circuit Court of Appeals to
24 review a decision I made denying the government's motion to
25 dismiss. So keeping the US EPA in the case.

1         And so I just want you to know, Mr. Rey, I have not
2    lost track. The motion is right over here on my list of
3    things to do and I will get to it.
4         Also Mr. Stern being here again reminds me that I
5    have the underwriters motion to dismiss. And I don't think we
6    have their counsel here. But that's also very high on my list
7    of things to try to address in the very future.
8         One of the reasons those two decisions are still on
9    the credenza next to my desk is because we do have a trial
10   starting. It's called the bellwether trial. There will be
11   four plaintiffs who are going to trial against non settling
12   defendants. And that's scheduled for February 15. And so a
13   great -- 2022.
14        So a great deal of work by counsel on the screen here
15   and by the Court is going into sorting out all of the pretrial
16   issues that are required to be decided by the time of that
17   trial. And we're also sorting out the exact location of the
18   trial and all of the processes that have to be just a little
19   bit different because of COVID and the ongoing concerns with
20   the pandemic. So a lot of effort is going into that.
21        There are still three dispositive motions, motions to
22   dismiss that are pending before me and a significant motion
23   pending before Judge Farah. Who I should say I met with
24   yesterday. He's traveling and is unable to be here today.
25        So let me go to the next issue that's on the agenda,

1  which is LAN and VNA, the non-settling defendants, along with
2  EPA and so on. But LAN and VNA particularly filed a motion to
3  stay notice of the issues class that I certified in the class
4  action side of this. Not the bellwether side.
5  There are forks in the road but then the road forks
6  again in some of this litigation. So there's the settlement
7  on one side, litigation on the other side. Then on the
8  litigation side we have individual plaintiffs where we're
9  starting the bellwether trial and then we have class
10 plaintiffs.
11 And I got those motions from LAN and VNA to stay any
12 further litigation or notice I guess is what it is of that.
13 And to me, the purpose of that stay was because LAN and VNA
14 are seeking permission from the Sixth Circuit Court of Appeals
15 to appeal my decision certifying a class.
16 And I checked that docket at noon today and there was
17 no -- no activity on the Sixth Circuit's docket since October
18 13.
19 So I think your motion makes abundant sense to me,
20 Mr. Campbell and Mr. Mason, because the last thing we want is
21 for a notice to go out to individuals that there's an
22 additional -- a litigation class if the Sixth Circuit decides
23 to accept your request for an appeal and would then change the
24 composition of the class, the definition of the class, or
25 decertify it altogether.

|   |   |
|---|---|
| 1 | So why don't I hear from plaintiffs instead of |
| 2 | hearing from the moving party. Because I think it makes good |
| 3 | sense not to have a notice go out then have to retract it. |
| 4 | And we're talking about tens of thousands of notices. |
| 5 | So Mr. Leopold, I know you had another matter. Are |
| 6 | you going to argue this? |
| 7 | MR. LEOPOLD: I am, Your Honor. Thank you for |
| 8 | allowing me to go to the other hearing. I appreciate it very |
| 9 | much. |
| 10 | It is hard to disagree with Your Honor in terms of |
| 11 | that issue. I certainly understand the reasoning why Your |
| 12 | Honor believes that and for the purposes of the motion. |
| 13 | Hopefully shortly after the holiday the Sixth Circuit may |
| 14 | rule. So again, I appreciate where you're coming from and |
| 15 | it's hard to argue against it especially with the number of |
| 16 | claimants that are out there and perhaps the confusion. |
| 17 | I would like to stress, however, Your Honor, that |
| 18 | even though you want to stay the notice issue, we'd like to |
| 19 | proceed forward with the, you know, the actual litigation |
| 20 | itself related to VNA and LAN, you know, such as scheduling |
| 21 | summary judgment, expert disclosures, discovery, whatever may |
| 22 | happen, so that we can keep that timeline moving forward so |
| 23 | we're not delaying. Assuming the Sixth Circuit either |
| 24 | confirms Your Honor's ruling or teeters a little bit one way |
| 25 | or another on it, but the class is still a class and we are |

1  getting ready for trial.
2      We'd like to keep the train moving forward, if we
3  could.  So I would appreciate if the Court would consider not
4  staying everything in that regard.
5      THE COURT:  I don't think the request was to stay
6  everything.  Mr. Campbell?
7      MR. CAMPBELL:  The request was not to stay
8  everything.
9      THE COURT:  Right.
10      MR. LEOPOLD:  I guess then the issue is, which we
11  would normally have probably raised with Your Honor as a
12  status conference, but should the parties work together to try
13  and perhaps formulate some kind of CMO, if you will, moving
14  forward on what we need to do, get ready, and even a potential
15  trial date?
16      THE COURT:  I think what I would focus on right now
17  is the completion of any discovery.  Is there still
18  outstanding class related discovery?
19      MR. LEOPOLD:  Not really, Your Honor.  We sort of
20  took discovery in the course of everything.  There may be a
21  few things that I'm sure we can work out with the defendants
22  if there is.  But I think it's more teeing up the issues of if
23  they are going to move for summary judgment, whatever
24  discovery may be needed for that.
25      Once they file, perhaps we may need some additional

1 discovery, which is allowed under the rule, as Your Honor is
2 aware. And just moving forward and trying to set -- if we can
3 get perhaps a trial date from Your Honor, we can then work
4 backwards on an appropriate schedule probably perhaps the
5 easiest way to do it. But I leave that to Your Honor however
6 you'd like us to handle it.
7     MR. ERICKSON: Your Honor, Philip Erickson.
8     THE COURT: Sure.
9     MR. ERICKSON: I just wanted to mention in response
10 to the Court's question regarding discovery that Judge Farah
11 had a recent status conference in which he announced a desire
12 to have a legionella trial in the fall.
13     THE COURT: Yes.
14     MR. ERICKSON: And has asked the parties, most
15 particularly Mr. Fieger's office and the McLaren defendants to
16 let the Court know what discovery they need. And of course
17 any legionella discovery would be relevant to the class and
18 would be something that all defendants would need to pay
19 attention to given the one deposition rule.
20     So there will be discovery proceeding that's relevant
21 to the class.
22     THE COURT: That's interesting. Thank you. And I
23 had heard -- I attended the conference with Judge Farah and
24 the legionella McLaren counsel. So that makes a good deal of
25 sense that that will be relevant discovery.

|   |   |
|---|---|
| 1 | What I would ask is that counsel to the class case |
| 2 | meet and confer and come up with a proposal. |
| 3 | MR. CAMPBELL: Your Honor, that makes perfect sense. |
| 4 | THE COURT: Yeah. I can't think of anything else. I |
| 5 | can't take out the calendar and start scheduling things right |
| 6 | now. |
| 7 | MR. LEOPOLD: Try and work on at least what we |
| 8 | believe to be an appropriate timeframe for not only summary |
| 9 | judgment for trial and then bring it to Your Honor and see if |
| 10 | it works within your schedule and we can go from there. |
| 11 | THE COURT: Sure. |
| 12 | MR. LEOPOLD: Thank you, your Honor. |
| 13 | THE COURT: Okay. I didn't have anything else on the |
| 14 | list here unless there's something that I missed. Anyone? I |
| 15 | would just encourage everybody keep on top of boosters and |
| 16 | stay safe and enjoy your families. |
| 17 | MR. LEOPOLD: Your Honor, I can give you a little bit |
| 18 | of a tidbit where I was just on a hearing with Federal Judge |
| 19 | Saylor in Boston. He is the chief judge in that district. |
| 20 | THE COURT: Yeah. |
| 21 | MR. LEOPOLD: And I don't know if all the federal |
| 22 | courts use the same doctors, immunologists, or whatever. But |
| 23 | they had a conference today and he said they were telling them |
| 24 | that this new COVID is just spreading like wildfire around the |
| 25 | country. Essentially we're going to have herd immunity and |

1 their courts are not going to be closed down. But nothing in
2 person, no jury trials, anything, for the foreseeable future.
3      So I don't know what that means around the country,
4 but that's what they were telling them about.
5      THE COURT: You know what's interesting, Mr. Leopold,
6 is that all of the 94 different federal courts do not use the
7 same medical consultants. The judicial conference certainly
8 has some process by which they make decisions. But it's been
9 left largely to the courts. And I know a number of courts
10 where I have colleagues that have brought medical
11 professionals in to provide advice.
12      And I do know -- I talked to Judge Farah yesterday
13 and the Genesee County Circuit Court is closing for the first
14 two weeks of January. I know that much from him. For jury
15 trials or for members of the public, I guess.
16      Nothing of that nature has been discussed here. So
17 that's all I can tell you and it's my hope that we can just
18 take all of the possible precautions we can, safety and health
19 precautions, to make sure we're all safe and healthy and our
20 families are as well. But also that we can get our work done
21 productively in the courtroom, which is where we should be.
22 But only if it's safe.
23      So I won't keep my eyes on -- I'll take a look at
24 what the District of Massachusetts is doing. So thank you for
25 that. All right. Well, take care everybody. And if we're

1  all fortunate we won't see one another until the new year. So
2  I hope that everybody has a safe and peaceful and good
3  holiday. So we will adjourn.
4                    (Proceedings Concluded)
5                      -    -    -
6
7            CERTIFICATE OF OFFICIAL COURT REPORTER
8       I, Jeseca C. Eddington, Federal Official Court
9  Reporter, do hereby certify the foregoing 20 pages are a true
10 and correct transcript of the above entitled proceedings.
11 /s/ JESECA C. EDDINGTON____                    12/22/2021
   Jeseca C. Eddington, RDR, RMR, CRR, FCRR       Date