**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: January 24, 2022

Ms. Esther Berezofsky
Mr. Timothy S. Bishop
Mr. James Michael Campbell
Mr. Donald H. Dawson Jr.
Ms. Josephine A. DeLorenzo
Mr. Ari Kresch
Mr. Michael E. Lackey Jr.
Ms. Emmy L. Levens
Ms. Mary Massaron
Mr. Brian J. McKeen
Mr. Paul F. Novak
Ms. Beth M. Rivers
Ms. Channing Elizabeth Robinson-Holmes
Mr. Adam Theodore Schnatz
Mr. David J. Shea
Mr. Hunter J. Shkolnik
Mr. Gregory Stamatopoulos
Mr. Evan Mark Tager
Ms. Jessica B. Weiner

               Re:  Case No. 21-103/21-104/21-105, *In re: Veolia North America, LLC, et al*
                    Originating Case No. : 5:16-cv-10444

Dear Counsel,

    The Court issued the enclosed Order today in this case.

                                         Sincerely yours,

                                         s/Ryan E. Orme
                                         Case Manager
                                         Direct Dial No. 513-564-7079

cc:  Mr. Mark Alan Behrens
      Ms. Kinikia D. Essix
      Mr. Cary Silverman
      Mr. Jonathan D. Urick

Enclosure

No mandate to issue

Nos. 21-0103/0104/0105

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| In re: VEOLIA NORTH AMERICA, LLC, et al., | ) | |
| | ) | FILED |
| Petitioners (21-0103/0104). | ) | Jan 24, 2022 |
| _____ | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| | ) | O R D E R |
| In re: LOCKWOOD, ANDREWS & NEWNAM, INC., et al., | ) | |
| | ) | |
| | ) | |
| Petitioners (21-0105). | ) | |

Before: NORRIS, WHITE, and THAPAR, Circuit Judges.

The panel delivered an order granting two motions for leave to file an amicus brief, granting motions for leave to file reply briefs and for an extension of time, denying all of a Flint resident's motions, and denying petitions for permission to appeal. THAPAR, J., dissented in part, and would grant the petitions for permission to appeal.

In these cases arising from the Flint Water Crisis, Defendants Veolia North America, LLC; Veolia Water North America Operating Services, LLC; and Veolia North America, Inc. (collectively "VNA") petition for permission to appeal the district court's class certification order and amended class-certification order, and Defendants Lockwood, Andrews & Newnam, Inc.; Lockwood, Andrews & Newman, P.C.; and the Leo A. Daly Company (collectively "LAN") petition for permission to appeal the district court's amended class-certification order. Plaintiffs oppose all three petitions. VNA and LAN (together, Petitioners) both move for leave to reply—LAN moves for an extension of time to do so—and have tendered their replies. Plaintiffs oppose leave to reply.

In No. 21-0103, Flint resident Melvin Jones, Jr., moves to intervene, to file an amicus brief, to take judicial notice, and for guidance, and the United States Chamber of Commerce also moves for permission to file an amicus brief in support of the petition. In No. 21-0105, the American Council of Engineering Companies moves for leave to file an amicus brief in support of the petition, wholly adopting the Chamber of Commerce's amicus brief in No. 21-0103.

First, we address the pending procedural motions. The Chamber of Commerce, and the American Council of Engineering Companies ("ACEC") each move for leave to file an amicus brief. Federal Rule of Appellate Procedure 5, governing petitions for permission to appeal, does not address whether we may entertain amicus appearances on petitions for review. But we may grant leave to file an amicus brief when "desirable and . . . the matters asserted are relevant to the disposition of the case," but the brief must comply with several formatting requirements, including a table of contents and a table of authorities. Fed. R. App. P. 29(a)(3)–(4). That is the case here.

VNA and LAN both move for leave to file a reply to their petitions, and LAN requests an extension of time to file its reply. Rule 5 neither permits nor prohibits a reply. Fed. R. App. P. 5(b)(1)–(2). We have denied leave to file a reply if "the reply largely reiterates prior arguments . . . ." *In re Carpenter Co.*, No. 14-0302, 2014 WL 12809636, at *2 (6th Cir. Sept. 29, 2014). The replies here are helpful in discerning the specific arguments raised by the parties, so we will grant the motions.

Finally, Melvin Jones Jr., a Flint resident proceeding pro se, moves to intervene and for leave to file an amicus brief. "On timely motion, the court must permit anyone to intervene who . . . is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest [in the suit], unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Having examined Jones's filing and his interest in the litigation,

Case 5:16-cv-10444-JEL-EAS ECF No. 2097, PageID.71984 Filed 01/24/23 Page 4 of 13
Case: 21-0103 Document: 92-2 Filed: 07/28/22 Page: 4 of 13 (4 of 13)

Nos. 21-0103/0104/0105
-3-

we conclude that neither intervention nor an amicus brief would be helpful. Jones also moves to take judicial notice and to "give[] guidance." Because he is not a party to this appeal and is not entitled to intervene, we will also deny these motions.

Next, we address the petition for permission to appeal. Federal Rule of Civil Procedure 23(f) authorizes circuit courts to "permit an appeal from an order granting or denying class-action certification." We are "given unfettered discretion whether to permit the appeal, akin to the discretion exercised by the Supreme Court in acting on a petition for certiorari." Fed. R. Civ. P. 23(f) Advisory Committee's Note to 1988 amendment. Still, "Rule 23(f) appeal is never to be routine." *In re Delta Air Lines*, 310 F.3d 953, 959 (6th Cir. 2002) (per curiam). "[W]e eschew any hard-and-fast test in favor of a broad discretion to evaluate relevant factors that weigh in favor of or against an interlocutory appeal." *Id.*

Four factors guide our consideration of a Rule 23(f) petition. *See id.* at 960. First, "[t]he case that raises a novel or unsettled question may . . . be a candidate for interlocutory review." *Id.* "[T]his factor weigh[s] more heavily in favor of review when the question is of relevance not only in the litigation before the court, but also to class litigation in general." *Id.* Second, "the likelihood of the petitioner's success on the merits is a factor in any request for a Rule 23(f) appeal." *Id.* "[I]n examining a petitioner's likelihood of succeeding on the merits of an appeal, . . . the standard of review is whether the district court committed an abuse of discretion." *Id.* Third, "[t]he 'death-knell' factor . . . recogni[zes] that the costs of continuing litigation for either a plaintiff or defendant may present such a barrier that later review is hampered." *Id.* Fourth, "the posture of the case as it is pending before the district court is of relevance." *Id.*

Some brief background is helpful. VNA and LAN provided professional services to municipal leaders managing what has come to be known as the Flint Water Crisis. Plaintiffs allege

that LAN's and VNA's advice made matters worse, rising to the level of professional negligence. Plaintiffs moved in the district court to proceed as a traditional class action, in which "[o]ne or more members of a class may sue or be sued as representative parties on behalf of" numerous others with similar claims. Fed. R. Civ. P. 23(a). Instead of certifying classes, Plaintiffs also sought to certify subclasses of minors, property owners, and business owners, who allegedly suffered distinct injuries. The district court found that these proposed subclasses could not be certified because "individualized issues and defenses overwhelm the cause of action and defeat the predominance and superiority requirements" and would infringe on certain protections provided for minors under federal and Michigan law.

Instead, the district court certified nine issues that it concluded were applicable to all plaintiffs, finding that resolving those issues at the outset would be more efficient. It then separated Plaintiffs into two issues classes based on when their alleged injuries occurred. Before us, Petitioners argue that the district court abused its discretion when it certified those issues for class treatment. More specifically, they argue that the district court certified issue classes that do not meet the superiority, predominance, or ascertainability requirements, and that certification runs afoul of the Seventh Amendment. In addition, Petitioners assert that the district court should have subjected Plaintiffs' expert witness reports to a full analysis under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Both Federal Rule of Civil Procedure 23 and our precedent support issue-class treatment. Fed. R. Civ. P. 23(c)(4) ("[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues"); *Martin v. Behr Dayton Thermal Prod. LLC*, 896 F.3d 405, 411–12, 415 (6th Cir. 2018). VNA disagrees with the holding in *Martin*. So long as *Martin* remains good law, however, that request is tantamount to a disagreement with the district court's

Case 5:16-cv-10444-JEL-EAS ECF No. 2097, PageID.71983 Filed 01/24/23 Page 6 of 13
Case: 21-0103 Document: 97-2 Filed: 01/23/2023 Page: 6 (6 of 13)

Nos. 21-0103/0104/0105
-5-

application of the rule rather than a novel nor unsettled question of law. *In re Delta*, 310 F.3d at 959–60. LAN offers no argument that this case involves a novel or unsettled question of law; it merely argues that *Martin* is inapposite because the facts of this case are far more diverse. For reasons discussed below, that argument is unavailing. Because *Martin* remains good law and Petitioners fail to make a strong showing that it should not be applied in this case, the district court's decision to consider issue-certification was not an abuse of discretion.

Nonetheless, Petitioners argue that the district court erred when it found that this case is amenable to issue-class certification. "In the class action context, a district court is given 'substantial discretion in determining whether to certify a class, as it possesses the inherent power to manage and control its own pending litigation.'" *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (quoting *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 504 (6th Cir. 2015)). Accordingly, we will reverse "only if a strong showing is made that the district court clearly abused its discretion." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 536 (6th Cir. 2012) (citing *Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004).

Certification requires predominance; "the questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Petitioners argue that the district court's decision was internally inconsistent insofar as it found Plaintiffs' claims too diverse for traditional class treatment but similar enough for issue-class treatment. Importantly, "[a] majority of the courts of appeals have concluded that in appropriate cases Rule 23(c)(4) can be used even though full Rule 23(b)(3) certification is not possible due to the predominance infirmities." *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259 (3d Cir. 2021); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 439–45 (4th Cir. 2003);

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012); *In re St. Jude Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008); *Valentino, Inc.*, 97 F.3d at 1234; *Harris v. Med. Transp. Mgmt., Inc.*, No. 17-CV-01371 (APM), 2021 WL 3472381, at *7 (D.D.C. Aug. 6, 2021); *but see Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996). We endorsed that broad view in *Martin*. 896 F.3d at 412. We agree with this broad approach because "[a] requirement that predominance must first be satisfied for the entire cause of action would undercut the purpose of Rule 23(c)(4) and nullify its intended benefits." *Martin*, 896 F.3d at 413 (citation omitted).

In this case, common questions predominate within certain issues. A professional negligence claim in Michigan has four elements: (1) a duty owed by defendants to plaintiffs, "(2) a breach of that duty, (3) causation, and (4) damages." *In re NM Holdings Co.*, 622 F.3d 613, 618 (6th Cir. 2010). In addition, Michigan law requires the trier of fact to allocate fault between all those found liable, including nonparties. Mich. Comp. Laws § 600.2957(1).

We agree with the district court that some aspects of Plaintiffs' professional negligence claims are "capable of resolution with generalized, class-wide proof." *Martin*, 896 F.3d at 414. For instance, an individual plaintiffs' identity, medical history, exposure, or specific injury has no bearing on the purely legal question of "[whether Petitioners'] contracts with the City create[d] a duty of care to third parties" (Issue 1). *See Hill v. Sears, Roebuck & Co.*, 822 N.W.2d 190, 195 (Mich. 2012). Likewise, "the standard of care in a professional engineering case" (Issue 2) is the same for all plaintiffs. Plaintiffs assert that they were injured because of exposure to unsafe conditions—Petitioners' role in creating or failing to correct those conditions is the same for every plaintiff in an issue class, regardless of that plaintiff's individual experience. To that end, either Petitioners "breach[ed] th[eir] duty by failing to provide appropriate advice to the City of Flint

regarding treating the water" (Issue 3) or they did not; either the breach "cause[d] corrosive water conditions in the Flint water distribution system (Issue 4), or it did not. Whether and to what extent petitioners and others created or exacerbated those conditions (Issues 5 & 7), whether those conditions were capable of causing harm (Issue 6), and whether petitioners should have foreseen and taken precautions to avoid that risk of harm (Issues 8 & 9), are also questions that will be answered the same for every plaintiff. Only after those issues are resolved do individualized inquiries into a given plaintiff's circumstances become necessary. In short, the answers to the certified issues are the same for all would-be class members, minor, adult, property holder, business owner, or otherwise; unlike the proposed damages classes, the certified issues are "capable of resolution with generalized, class-wide proof." *Martin*, 896 F.3d at 414. Accordingly, the certified issues predominate over the individualized inquiries.

Certification also requires superiority—"a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Petitioners argue that resolving the certified issues would not materially advance the litigation because they do not definitively establish the elements of a professional negligence claim. "Class treatment of the [nine] certified issues [may] not resolve Defendants' liability entirely, but it will materially advance the litigation." *Martin*, 896 F.3d at 416. Issues 1, 2, and 3 go directly to the presence (or absence) of the asserted duty of care. Issues 3, 5, 8, and 9, speak to whether VNA breached that duty. Issues 4, 5, 6, 7, 8, and 9 all bear directly on the causation element, and Issues 7 and 9 allow a jury to address the petitioners' comparative fault, if any, as required by Michigan law. *See Jones v. Enertel, Inc.*, 656 N.W.2d 870, 872 (Mich. Ct. App. 2002) (per curiam). "The issue classes therefore satisfy Rule 23(b)(3)'s superiority requirement." *Martin*, 896 F.3d at 416.

Both VNA and LAN argue that the certified questions duplicate, rather than save, judicial resources, because juries in subsequent individual actions will have to consider the same evidence and answer the same questions. Not so. Resolving the certified issues could resolve every claim against one or both petitioners "in one fell swoop," *Martin*, 896 F.3d at 416, should it be found that they owed no duty, committed no breach, or bear no responsibility for causing the alleged harm. If, instead, it is found that petitioners are responsible for harm caused by their breach of duty, that holding still significantly narrows the scope of subsequent trials to proof of proximate cause, relative fault, and damages. No matter what, the holdings function like stipulated facts that need not be found by subsequent juries, saving time and resources. Meanwhile, "if the class members brought suit individually, the [nine] certified issues would need to be addressed in each of their cases." *Id*.

VNA argues that the requirement to determine comparative fault is fatal to issue certification "because the period when class members were exposed is not uniform." To the contrary, by resolving the questions presented in the certified issues, most especially Issue 5, the district court can establish something approaching a timeline of the petitioners' comparative faults, identifying watershed events caused by petitioners and by third parties. A class member's exposure could then be lain over that timeline when assigning fault. The efficiencies of an established, uniform set of facts for determining comparative fault are clear, and the bulk of the evidence adduced at later trials would be confined to the relevant class member's damages; a much smaller inquiry which federal courts routinely try separately. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453–54 (2016) ("[An] action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."). Absent issue

certification, petitioners could be subject to as many different fault allocations as there would be individual or bellwether trials, resulting in different allocations of fault even for plaintiffs whose exposures were similar in time and scope. Establishing relative fault over and over again to numerous juries could never be more efficient or consistent.

For similar reasons, we reject Petitioners' argument that issue-class certification offends the Seventh Amendment's Reexamination Clause. The Seventh Amendment prohibits reexamination of "[any] fact tried by a jury." U.S. Const. amend. VII. But the preclusive effect of issue-class treatment means resolution of the certified issues actually relieves later juries of having to consider those factual issues at all. And, in any event, "[b]ecause the district court has not settled on a specific procedure, no constitutional infirmities exist at this time." *Martin*, 896 F.3d at 417.

Both VNA and LAN argue that bellwether trials are superior to certifying class issues. But bellwether trials have no preclusive effect on later suits. *See Binding effect of bellwether trials—Generally*, 4 Newberg on Class Actions § 11:18 (5th ed.). Accordingly, they do not conclusively resolve issues of duty, comparative fault, and proximate cause for non-party plaintiffs and therefore offer no guaranteed efficiencies over issue certification. Likewise, as discussed above, they can neither resolve liability outright—by finding, conclusively, that the petitioners owed no duty or committed no breach—nor provide a binding timeline of events for use in later actions. Moreover, the bellwether trials will happen regardless, meaning their many potential benefits will be realized whether or not the district court proceeds with the certified issues. But, for all the reasons already discussed, issue certification moves the ball forward in ways bellwether cases cannot.

Issue classes must be ascertainable—they must be sufficiently defined such that the court is "able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria." *Young*, 693 F.3d at 538 (quoting *Moore's Federal Practice* § 23.21[3]). The district court certified two issues classes, each defined as "All persons and entities who . . . were exposed to or purchased drinking water supplied by the City of Flint, owned real property in the City of Flint, or owned or operated a business in the City of Flint," and distinguished by the date of the exposure or purchase. Thus, issue-class membership depends on a factual determination based on objective criteria—the date and duration of exposure. The issue classes are not impermissible "fail-safe" classes because membership can be defined without first resolving the merits of the case. *Young*, 693 F.3d at 538.

Each class must also be administratively feasible—it should not "require a significant number of individual determinations." *Id.* VNA argues that the "expansive 'exposure' criterion means that . . . there is no practical method of determining whether a person is a class member without individualized inquiry into the person's exposure." But "a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition." *Id.* (quoting *Moore's Federal Practice* § 23.21[3]). And although it may be difficult or even impossible to proactively identify every potential plaintiff, a "class properly could be certified without . . . 100% accuracy," *id.* at 539, and the class members are, in large part, readily identifiable as individuals who lived, worked, or owned property in Flint during the class periods.

Petitioners last argue that the district court abused its discretion when it relied on expert reports in support of certification without properly vetting that testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "The Supreme Court has not yet decided

whether a district court must undertake a *Daubert* analysis at the class-certification stage when an expert's report is critical to the class certification analysis." *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 465 (6th Cir. 2020) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 39 (2013) (Ginsburg, J., dissenting). "We have yet to settle this matter," and "[t]he courts of appeals have taken different approaches to this issue." *Id.*

In this case, however, the *Daubert* issue does not necessitate immediate review. To begin, the district court did examine the reliability of the expert's reports before considering whether it supported certification. The district court denied Petitioners' *Daubert* motions, finding that, although the experts' testimony was central to its certification analysis, at this stage the testimony was for the court's benefit only and, therefore, *Daubert* need not serve its ordinary role as "gatekeeping for a *jury*"; the court could hear all expert testimony and then simply give the testimony the weight it deserves. The district court has dealt with dozens of cases arising out of the same complex events underlying this suit and is well-acquainted with the relevant factual and scientific issues. Moreover, the district court expressly authorized Petitioners to refile their *Daubert* challenges later if appropriate, when a full *Daubert* analysis can be conducted to ensure the jury is not misled by unreliable evidence. In the end, Petitioners have not shown that they are likely to succeed on appeal in challenging the district court's *Daubert* approach or any other alleged error.

The remaining factors are not dispositive. The parties do not mention the death-knell factor in their petitions or responses. Meanwhile, the procedural posture of the district court case cuts both ways. On the one hand, this is part of an archipelago of cases arising from the Flint Water Crisis and an interlocutory appeal would interrupt the district court's steady progress towards resolving those cases. On the other hand, this appeal involves only two defendants, and many of

those at the center of the crisis have already settled with the victims, *see In Re Hall*, 4 F.4th 376, 378 (6th Cir. 2021) (order). Finally, the district court has given no indication that it "will reexamine the certification decision following discovery." *In re Delta*, 310 F.3d at 960.

Ultimately, because Petitioners are unlikely to succeed on the merits of their challenge to the district court's class-certification order and neither the death-knell factor nor the procedural posture impels immediate review, interlocutory review is not warranted.

The Chamber of Commerce and ACEC's motions for leave to file an amicus brief are **GRANTED**. Petitioners' motions for leave to file a reply to the petitions for permission to appeal and for an extension of time to reply are **GRANTED**. Jones's motions are **DENIED**. The petitions for permission to appeal are **DENIED**.

THAPAR, J., dissenting in part, would grant the petitions for permission to appeal.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk