UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases.  _____/ | Judith E. Levy  United States District Judge |

This Order Relates To:

ALL CASES

_____/

**OPINION AND ORDER DENYING CO-LIAISON COUNSEL'S MOTION TO DISQUALIFY ATTORNEY MARK CUKER [2045]**

Before the Court is Co-Liaison Counsel Napoli Shkolnik's ("the Napoli firm") motion for an order disqualifying attorney Mark Cuker from the Flint Water litigation. (ECF No. 2045, PageID.71142.) For the reasons set forth below, the motion to disqualify is DENIED.

I. **BACKGROUND**

Mr. Cuker and the Napoli Firm represent individual non-class Plaintiffs in the Flint Water Crisis civil litigation. The Napoli firm is one of two firms that the Court appointed as Co-Liaison Counsel for the individual Plaintiffs (*see* Case No. 16-10444, ECF No. 1306), and it

represents thousands of individual Plaintiffs. Mr. Cuker represents approximately 980 individual Plaintiffs.

On November 10, 2021, the Court granted final approval to a partial settlement resolving claims that were brought by the Napoli firm, Mr. Cuker, and many others, on behalf of their clients against the settling Defendants. *See In re Flint Water Cases*, --F. Supp. 3d--, No. 16-10444, 2021 WL 5237198 (E.D. Mich. Nov. 10, 2021) ("Final Approval Opinion") Both the Napoli firm and Mr. Cuker registered all of their clients for participation in the partial settlement. Mr. Cuker filed objections to the settlement on behalf of twelve of his clients, but not for his remaining 968 individual clients.[1] When the Court granted final approval to the settlement, it denied the objections that Mr. Cuker filed on behalf of his objecting clients.

On November 24, 2021, Mr. Cuker filed a motion for reconsideration of the Final Approval Opinion (ECF No. 2021), which the Court denied. (ECF No. 2118.) But before the Court addressed the motion for reconsideration, the Napoli firm filed the present motion, arguing that

---

[1] The Napoli firm did not file objections to the settlement on behalf of any of their clients.

2

Mr. Cuker created an irreconcilable conflict when he filed objections on behalf of twelve of his clients, but did not do so for his remaining 968 clients. (ECF No. 2045, PageID.71145–71146.) The Napoli firm's position is that these two groups are "directly adverse" to one another because their "financial interests may conflict." (*Id.*)

In support of its motion to disqualify, the Napoli firm attached a document entitled "Expert Report" from University of Michigan law professor Robert E. Hirshon. (ECF No. 2045-1.) Professor Hirshon, whose extensive background and experience in the field of professional legal ethics is unchallenged, opines:

> It should not be surprising that it is impossible for an attorney to argue on behalf of one client that the Court should approve the mediated settlement and on behalf of another client that the Court should reject the same mediated settlement. This situation creates a classic conflict of interest. Moreover, under the rule there is no way that an attorney can reasonably believe that the joint representation will not be adverse to at least one client. MPRC[2] 1.7(a)(1).

---

[2] The "MPRC" are the Michigan Rules of Professional Conduct. (https://www.courts.michigan.gov/4a5a9b/siteassets/rules-instructions-administrative-orders/rules-of-professional-conduct/michigan-rules-of-professional-conduct.pdf)

3

(ECF No. 2045-1, PageID.71154–71155.) Professor Hirshon opines further:

> Under certain circumstances a client may consent to an attorney's conflict after "consultation." "Consultation" is a defined term under MRPC and requires that the client "appreciates the significance of the matter in question." MRPC 1.0. There is nothing in the record which allows me to determine whether Attorney Cuker has met the consultation requirements of MRPC 1.7. I attach Exhibits B and C as examples of the types of consent required by this rule. Even if he has met these requirements, however, it is clear that a conflict still exists under MRPC 1.7(a)(1), since objecting to this settlement flies in the face of the desire of at least one of Attorney Cuker's clients.

(*Id.* at PageID.71154.)

In his response brief, Mr. Cuker makes three points. (ECF No. 2070, PageID.71612.) First, he argues that the Napoli firm "lacks standing to raise the conflict which it claims to exist."[3] (*Id.*) Second, he argues that "there is no conflict," because "[e]very Cuker client's interest would be best served by replacing the current plan of allocation with a fairer, more

---

[3] The law is well-settled that "the proper method for a party to bring an alleged breach of ethical duties to the court's attention" is through a motion to disqualify. *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003). Accordingly, this argument is rejected and need not be addressed further.

4

equitable one. . ." (*Id.*) And third, he argues that if there is a conflict, "the root of it was manufactured by the Napoli firm itself." (*Id.*)

No oral argument was held on the motion to disqualify, and it has been fully briefed. *See MJK Family LLC v. Corporate Eagle Mgmt. Svcs, Inc.*, 676 F. Supp. 2d 591, 592 (E.D. Mich. 2009) ("A decision to disqualify counsel must be based on a factual inquiry conducted in a manner allowing appellate review, but an evidentiary hearing is not necessarily required."); *see also* E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

### A. Governing Ethical Standards

The Michigan Rules of Professional Conduct set forth the "appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether a lawyer should be disqualified in a particular case." *Glenn v. Nasscond*, No. 15-cv-10270, 2016 WL 409409 (E.D. Mich. Feb. 3, 2016) (Berg, J.) (citing *Natn'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 458 (6th Cir. 2006) *vacated on other grounds*, 472 F. 3d 436 (6th Cir. 2006)). The Eastern District of Michigan's Local Rules specifically state that the

Michigan Rules of Professional Conduct apply to proceedings in this District:

> An attorney admitted to the bar of this court or who practices in this court as permitted by this rule is subject to the Rules of Professional Conduct adopted by the Michigan Supreme Court, as amended from time to time, and consents to the jurisdiction of this court and the Michigan Attorney Grievance Commission and Michigan Attorney Discipline Board for purposes of disciplinary proceedings.

E.D. Mich. LR 83.20(j).

Michigan Rule of Professional Conduct Rule 1.7 governs conflicts of interest. It states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and

> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Rule 1.8(g) governs aggregate settlements. It provides:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients, or, in a criminal case, an aggregated agreement as to guilty or nolo contendere pleas, unless each client consents after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the participation of each person in the settlement.

### B. Standards for Motions to Disqualify

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003) (internal citations omitted). "The power to disqualify an attorney from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it." *Id.* (internal citations omitted).

However, the Court's power should be exercised with caution. "[A] trial court does not possess unfettered discretion to disqualify counsel… The extreme sanction of disqualification should only be utilized when

there is a 'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *Id.* (internal citations omitted). As the Sixth Circuit has explained, the Court's consideration should be guided by "the traditional concerns of the legal profession that client confidences be protected and that appearances of professional impropriety be avoided." *See, e.g., Manning v. Warring, Cox, James, Sklar, and Allen*, 849 F.2d 222, 225 (6th Cir. 1988).

In general, "…disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary. *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), aff'd 5 Fed. App'x 396 (6th Cir. 2001).

### III.  DISCUSSION

Courts analyzing a motion to disqualify counsel must begin by determining whether an ethical violation occurred. *See, e.g., Allstate Ins. Co. v. Inscribed PLLC*, --F.Supp.3d--, No. 19-13721, 2021 WL 5287283 at *6–9 (E.D. Mich. Nov. 15, 2021) (first addressing alleged ethical violations, then determining whether disqualification is the appropriate

remedy). If a violation did occur, the Court must consider whether it warrants the extraordinary remedy of disqualification. *Id.* For the reasons set forth below, Mr. Cuker likely violated the rules of professional conduct, but his violation was not so extraordinary as to render disqualification "absolutely necessary." *Valley-Vulcan Mold Co.*, 273 B.R. at 237. Accordingly, the motion is denied.

### A. Michigan Rule of Professional Conduct

As to the first inquiry, whether Mr. Cuker's simultaneous representation of objecting and non-objecting clients potentially violates the Michigan Rules of Professional Conduct, the Court finds that there is a serious risk that a violation took place under these facts.[4]

The parties have not cited any factually analogous cases or State Bar of Michigan Ethics Opinions. That is likely because most cases regarding violations of Michigan Rules of Professional Conduct 1.7 and 1.8 involve an attorney representing clients on different sides of the "v"

---

[4] The Michigan Attorney Grievance Commission ("MGC") has jurisdiction over ethical decisions related to all Michigan-licensed attorneys. Mr. Cuker is not licensed in Michigan, but is admitted to practice in the Eastern District of Michigan. Since this motion is before this Court for a decision, this Court is empowered to make a decision regarding these alleged violations of the rules. (*Compare* ECF No. 1431 (stating that the MGC had jurisdiction over ethical rulings related to attorneys licensed in Michigan).)

9

in a lawsuit, where here, both the Napoli firm and Mr. Cuker represent individual Plaintiffs.[5] *See, e.g.*, *MJK Family LLC*, 676 F. Supp. at 586 (regarding a law firm's alleged representation of both the plaintiff corporation and the defendant corporation).

The Napoli firm's position that "Mr. Cuker cannot be loyal to his objecting clients when his non-objecting clients want the partial settlement to proceed" is persuasive. (ECF No. 2045, PageID.71147.) The remedy sought by, indeed the only remedy available to, objectors is that the Court reject the settlement entirely and deny final approval. *Final Approval* Opinion, 2021 WL 5237198, *34. Non-objectors support the Court's approval of the settlement. By representing both objectors and non-objectors, then, Mr. Cuker effectively advocated both that the settlement proceed as-is, and that the settlement be rejected. These positions are irreconcilable. As Prof. Hirshon notes, Mr. Cuker created "a

---

[5] Attorney Valdemar Washington represents a group of individual Plaintiffs in the Flint Water Crisis litigation. He filed one objection on behalf of one of his clients, Dr. Lawrence Reynolds, but did not file objections on behalf of any of his other clients, all of whom registered to participate in the settlement. (*See* ECF Nos. 1436 (Objection), 1437 (Notice), 1444 (Notice), and 1445 (Certificate of Service).) Washington later withdrew from representing Dr. Reynolds. (*See* ECF No. 1898 (Order granting ECF No. 1891).)

classic conflict of interest" by simultaneously representing clients with contrary positions. (ECF No. 2045-1, PageID.71154.)

According to Mr. Cuker, there is no conflict of interest because both his objecting and his non-objecting clients would prefer a different settlement—one that is more favorable to them. (ECF No. 2070, PageID.71618, 71620.) Thus, Mr. Cuker asks rhetorically whether "the court wish[es] to conclude that just because [non-objectors] failed to submit objections, adults are satisfied with $1,000 per property?" (*Id.* at PageID.71621.) But Mr. Cuker conflates dissatisfaction with the settlement with endorsement of the legal position that the settlement ought not be approved. As efforts at compromise, settlements rarely leave all parties fully satisfied. Nevertheless, parties may well choose the immediate benefits provided by a settlement over the costly, fraught, and uncertain process of continued litigation. That is precisely what 968 of Mr. Cuker's clients decided to do in this case.

Mr. Cuker argues that in class cases, a failure to object does not indicate approval. (*Id.* at PageID.71620–71621.) He cites a long string of cases and articles for the proposition that silence ought not be interpreted as assent. *See, e.g., Redman v. Radioshack*, 768 F.3d 622, 628 (7th Cir.

11

2014) (assumption that silence equates to approval is "naïve"); Debra Lyn Bassett, *Class Action Silence*, 94 Boston U. L. Rev. 1781, 1799 (2014) ("ascribing any meaning to silence in response to publication notice is untenable"). This law does not help Mr. Cuker because his clients are not class members and they did not stay silent. This was not an "opt out" settlement; it was "opt in:" participation required his clients to take (or assent to Mr. Cuker taking on their behalf) the affirmative step of registration. Had Mr. Cuker's clients remained silent, they would not have become part of the settlement. That is not the decision they made. Indeed, under the terms of the settlement itself, the *only* interpretation that can be made of a participant's decision to register and not file an objection is that they approve of it as-is.

Mr. Cuker next argues that various obstacles related to the Napoli firm's bone scan facility, the registration deadlines, and the wet signature requirements prevented him from timely filing objections on behalf of additional clients. (*Id.* at PageID.71619–71620.) But these arguments side-step the issue before the Court, which is whether a violation of the Michigan Rules of Professional Conduct rules has occurred. Further, Mr. Cuker's arguments regarding the deadlines are

belied by the fact that he registered all 980 of his clients and objected on behalf of twelve in a timely fashion. In any event, all of these arguments regarding perceived flaws in the settlement agreement and its deadlines were already considered and rejected by the Court in the Final Approval Opinion. *Final Approval Opinion*, 2021 WL 5237198 at *34–59.

For these reasons, Mr. Cuker's representation of non-objectors and objectors involved a conflict of interest within the meaning of Rule 1.7(a), because his representation of objectors was "directly adverse" to his representation of non-objectors. Mr. Cuker's representation may still have been permissible under the rules if he reasonably believed his representation would not be adversely affected and sought the consent of his clients "after consultation." Mich. R. Prof. Conduct 1.7(a)(1)-(2). The Michigan Rules of Professional Conduct define "consultation" as "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question." MPRC 1, *Terminology*. As Professor Hirshon notes, it is difficult to determine in this case whether Mr. Cuker has met the consultation requirements of the rule, since Mr. Cuker's communications are not in the record. (ECF No. 2045-1, PageID.71154.)

13

Mr. Cuker argues that "the record actually supports" that he has consulted all of his clients regarding his representation of both objectors and non-objectors. (ECF No. 2070, PageID.71622, fn. 2.) He cites to the July 12, 2021 fairness hearing transcript, where he stated:

> MR. CUKER: [. . .] And I can tell you I have communicated with all of my clients. Every client I've spoken to I advised them of our position. I haven't spoken to a single client who thinks the settlement is fair as structured or who wants me to support it for any of them.
>
> THE COURT: So the 968 who registered and did not file an objection, you're now representing what – you've talked to every one of them –
>
> MR. CUKER: I'm not going to tell you I spoke to every single one. I will say that every one I spoke to -- I certainly sent email blasts out, I sent letters out to everyone. I've certainly spoke to hundreds. I have not heard from a single client that they liked the settlement as it is and don't want me to object to it. They think it's fine.

(ECF No. 1904, PageID.66687.) Clearly this transcript provision does not clarify that consultation under the meaning and spirit of the Michigan Rules of Professional Conduct has occurred. Indeed, Mr. Cuker's persistent denial that there *was* any divergence of interests between his objecting and non-objecting clients does not inspire great confidence that he properly appraised all of his clients of that divergence of interest. (ECF

14

No. 2070, PageID.71622.) Accordingly, it is likely that Mr. Cuker violated the Michigan Rules of Professional Conduct.

### B. Disqualification

Although it is likely that Mr. Cuker violated the relevant ethical rules, "a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney." *E.g. SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F.Supp.2d 863, 865 (S.D. Ohio 2002). In this instance, the "extreme sanction of disqualification" is not warranted. *Id.* The conflict of interest generated by Mr. Cuker's representation of twelve objectors to the settlement was short-lived and did not ultimately affect any of Mr. Cuker's clients.[6] After all, Mr. Cuker's objecting clients' objections were denied, the motion for reconsideration he filed on their behalf was denied, the objectors did not appeal the final approval of the settlement, and have not taken any further actions that would be inconsistent with the interests of Mr. Cuker's non-objecting

---

[6] The Special Master has indicated to the Court that Mr. Cuker has been submitting settlement-related forms to the settlement administrator, Archer, on behalf of all of his clients. There is no indication that Mr. Cuker is pursuing the submission of settlement documents with any less zeal with respect to his objecting or non-objecting clients.

15

clients.[7] Indeed, none of Mr. Cuker's clients have brought any complaints to the Court related to his conduct. Nor was Mr. Cuker's conduct so egregious as to warrant disqualification for the purpose of maintaining "the public interest in requiring professional conduct by an attorney." *Id.* Therefore, disqualification would be an excessive measure to take in this case.

## IV. CONCLUSION

For the reasons set forth above, the Napoli firm's motion to disqualify Mr. Cuker is denied.

**IT IS SO ORDERED.**

Dated: April 15, 2022  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
 United States District Judge

---

[7] Mr. Cuker filed a Notice of Appeal related to the Court's February 4, 2022 Order granting in part and denying in part the motion for attorney fees and reimbursement of expenses. (ECF No. 2105 (Opinion and Order); ECF No. 2136 (Notice of Appeal). The Court of Appeals ordered that the appellants (Mr. Cuker's clients) file certain documents related to his appeal no later than March 28, 2022, or "the appeal will be dismissed for want of prosecution." (Sixth Cir. Case: 22-1197 Document: 1 Filed: 03/14/2022 Page: 2.) This Sixth Circuit docket reflects that Mr. Cuker did not file those documents. Whether Mr. Cuker's appeal will survive this deficiency is up to the Sixth Circuit. In any event, Mr. Cuker's clients do not have clearly disparate interests with respect to the attorney fee decision.

16

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 15, 2022.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
