UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | ) | |
|---|---|---|
| *IN RE* FLINT WATER CASES | ) | |
| | ) | |
| ──────────────────────── | ) | Case: 1:22-cv-4810 |
| | ) | |
| In re: | ) | |
| | ) | |
| Subpoena to Tarrah Cooper Wright | ) | |

**EMERGENCY MOTION TO TRANSFER
AND TO EXPEDITE CONSIDERATION**

In 2016, tens of thousands of victims of the Flint Water Crisis filed claims in the Eastern District of Michigan against government officials and private engineering firms. Ex. A, Order Granting Final Approval of Settlement, p. 5. While many victims are likely to benefit from a partial settlement reached with certain defendants in 2020, a number of non-settling defendants – including Veolia North America, Inc., Veolia North America Operating Services, LLC, Veolia North America LLC, Veolia Water Logistics, LLC, Veolia Water Municipal Services North America, LLC, Veolia Water North America Operating Services, LLC, (collectively "Veolia") – continue to litigate hundreds of lawsuits involving those same victims.

To date, there has been one bellwether trial, which resulted in a hung jury on August 15, 2022. *Id*. at p. 6; *see also* Ex. B, *Walters, et al. v. Veolia North America, Inc., et al.*, 5:17-cv-10164, Order Declaring Mistrial. ECF No. 907. The undersigned counsel was Lead trial counsel for the Plaintiffs. Daniel Stein, then a Partner at the law firm Mayer Brown, LLP, was Lead trial counsel for Veolia.

Additionally, two trials that involve Veolia have been scheduled for September 2023 and January 2024. The September trial is for a certified issues class in *Waid v. Veolia, et al.*, No. 16-cv-10444, which is also before Judge Levy. The January 2024 trial is for a second group of bellwether plaintiffs, and the first bellwether case that ended in a mistrial is expected to be reset for trial in 2023. Regarding the class case, the communications at the center of the subpoena here are material for the same and additional reasons, in that they pertain to Veolia's communications with certified class members. These complex cases are collectively referred to as the Flint Water Cases. Ex. A, p. 6. For discovery purposes, all of the cases in

State and Federal court involving the Flint Water Crisis are being coordinated, meaning that all of the parties to all of the actions have the opportunity to depose a witness once, and typically only once.

The Honorable Judith E. Levy has presided over the litigation for seven years. Judge Levy is intimately familiar with the substantive and procedural complexities of these cases; the interplay between settling and non-settling defendants; every discovery issue that has arisen since the litigation's inception; the substance of more than three thousand (3,000) filings in the various cases before her; the depth and intricacy of the issues that arose during the first bellwether trial; the manner in which defendants have advertised their positions publicly; and the communications between parties and the public. Thus, it is without question that Judge Levy is the proper arbiter for deciding the *Motion to Quash*. ECF No. 1.

In actively managing cases involving more than twenty thousand (20,000) plaintiffs, as well as in approving a 626.5 million dollar partial settlement (which will compensate as many as ninety thousand 90,000 Flint residents), Judge Levy has dealt extensively with regulatory, environmental, constitutional, and other complex matters. There is no one better positioned to determine the issues raised in the instant *Motion to Quash* than Judge Levy. Further, the subpoena at issue is of significantly more import than how it was described and minimized by the movant in her motion. To that end, it is becoming clearer by the day that defendant Veolia undertook an elaborate disinformation campaign (which only a corporation worth billions of dollars could afford), in an effort to influence potential jurors prior to the first bellwether trial, as well as jurors actually selected for the trial, and potential jurors in the future. Ex. C, *The Detroit News*: "Company sued over Flint's water crisis wages digital war during trial."

The subpoena at issue seeks the deposition testimony of Tarrah Cooper Wright ("Wright"), CEO and Founder of Rise Strategy Group (hereinafter "Rise"), formerly of Mercury Public Relations. Based on internal Veolia emails it produced in the litigation, beginning in June 2016, Wright became an architect of a disinformation campaign, which ramped up significantly in 2021 when Veolia was receiving juror-specific information about potential jurors for the first trial. The ongoing campaign continues to pose an inherent risk of influencing an entire venire of potential jurors who will sit for the upcoming trials, and may constitute improper communications with class members. Additionally, *The Detroit News* article, wherein

2

Wright is quoted extensively, and which was published after the instant motion was filed and after Wright executed her accompanying declaration, clearly evidences that Wright's involvement is far more extensive than what she and her counsel claim in their moving papers, and is far more sinister than what was known prior to issuance of the subpoena.

Federal Rule of Civil Procedure 45(f) and principles of judicial comity dictate in favor of transferring this matter to the Eastern District of Michigan in light of the exceptional circumstances present here. The subpoenas not only seek relevant information, but they present perhaps the deepest degree of import to the Flint Water litigation in that the disinformation campaign threatens the integrity of intensely complex judicial proceedings in the Eastern District of Michigan, as well as the sacred role of the jury therein.

Given the continuing nature of Veolia's campaign, the ongoing litigation, and the upcoming trials, Wright's motion constitutes "a matter of such a nature that the delay in hearing it that would result from its being treated as any other matter would cause serious and irreparable harm." LR77.2(3). As such, Respondents request, to the extent the Court deems a hearing is even necessary, that such be expedited, and that the transfer of this matter issue forthwith.

**PROCEDURAL AND FACTUAL BACKGROUND**

The subpoena was issued to Wright on August 7, 2022, seeking information and deposition testimony pertaining to the disinformation campaign. Ex. D, Subpoena.[1] Wright's name appears in at least 100 documents produced by Veolia over the course of the litigation, a few examples of which are attached to this motion. *See* Ex. E, Documents. *See also* Ex. F, Declaration of Corey M. Stern. Wright concedes that as early as 2016, she "advised [Veolia] on media and PR strategy related to is work in Flint," and that prior to trial, she served "as a sub-contractor to support the media relations needs during a trial regarding Veolia's work in Flint[.]" ECF No. 1, Ex. B, Wright Declaration. While these concessions underscore the importance

---

[1] The *Motion to Quash* is incorrectly filed on behalf of Rise, not Wright. The subpoena was not for 30(b)(6) testimony, or for Wright as an agent of said company. It was issued to her personally, based on her own personal knowledge, seeking information about her involvement over the course of her employment with two companies, not just Rise. *See* Appendix to Ex. D.

3

of her testimony, they also purposefully and deceptively minimize the extent of her involvement in the campaign. When juxtaposing her statements to *The Detroit News* with the substance of her declaration, it is abundantly clear that Wright intentionally minimized her role for purposes of this proceeding, and that the issues raised in her motion are significantly larger in scope than what the moving papers describe. Thus, the motion ought to be denied on its face, immediately, or alternatively, it should be transferred to the Eastern District of Michigan without delay and without oral argument. For example, in statements she provided to *The Detroit News*, Wright demonstrates an intense and intimate association with Veolia that began around the time Veolia was first sued, *to wit*:

> To ensure that people who were searching for information got the truth, six years ago [Veolia] created (VeoliaFlintFacts.com) as a comprehensive and accurate resource for anyone looking for the facts about Flint … As a standard practice in most companies, once a new website is created, keyword-based ads are placed and [Veolia's] ran across the United States and Canada. The ads have never targeted any specific state or region and have not been edited since the site was created.
>
> It's obvious that the trial lawyers are disappointed with the outcome of the trial, but any claim that (Veolia) attempted to influence the jury pool through a website that contains public information is just as weak as the case they just lost.

*See* Ex. C. Of course, her characterization of the hung jury as "the case [the trial lawyers] just lost[,]" is itself false and evinces a mild sample of her own misleading character and that of the campaign. No one "lost" a case. The jury hung, and the case will be retried.

*The Detroit News* article focuses on a website created by Veolia, VeoliaFlintFacts.com, and Veolia's possible targeted campaign to drive traffic to the site utilizing an intricate web of keywords, constantly updated content, and may also have included geo-targeting advertisements and geofencing, two forms of location targeting. *See* Ex. C. While she alleges in statements to *The Detroit News* that the company has not edited VeoliaFlintFacts.com since it was published over six years ago, advertising data from third-party analytics sites suggests quite the opposite. For example, *The Detroit News* reports that "advertising from multiple analytics sites indicates a lull in Google advertising activity by late 2017 before picking up again at the end of 2019, as settlement negotiations between plaintiffs' attorneys and several entities were reaching an inflection point." Moreover, Veolia "broadened its use of Google ads in October and sustained the ad

4

blitz through July. Between those months, the number of keyword searches Veolia bought for the top spot-on Google searches related to the Flint Water Crisis increased 219%[.]" *The Detroit News* itself questioned Wright's contention, reporting that "[w]hile [Wright] said the company has not edited its advertisements since launching VeoliaFlintFacts.com in 2016, internal communications, advertising analytics and archives of the website itself indicate an evolution of language."

In fact, Veolia is reported to have "ramped up a digital advertising campaign to push its messaging in late 2021 *ahead of jury selection* [in the first bellwether trial]. [Veolia] is reported to have "more than tripled the number of keyword searches it bought on Google for a digital ad campaign about its role in Flint's water crisis" in the months before and during the first bellwether trial." *See* Ex. C, emphasis added.

Curiously, and notwithstanding Wright's misleading statements throughout the article, when asked to comment about the geo-targeted nature of the campaign, the article states:

> [Veolia] did not respond to questions about whether the company — or another vendor operating on behalf of the company — had geotargeted at the ZIP code level, a common form of location-based targeting that allows advertisers to zero in on a more specific area. Google allows companies to target hundreds of ZIP codes at the same time. Veolia also did not respond when asked whether any of its advertisements had used radius targeting, also referred to as geofencing, a standard form of location targeting that serves advertisements to someone in a specific area using their real-time location. *See* Ex. C.

Thus, Wright exhibits an absence of candor not only to *The Detroit News*, but more importantly to this Court by downplaying both the pivotal role she played in Veolia's campaign and the potential extent of the campaign's temporal and geo-targeted nature.

The trial referenced in Wright's declaration and statements to *The Detroit News* was the first bellwether trial, which spanned close to six months, ending in August, 2022. *See* Case No. 5:17-cv-10164 (E.D. Mich.). During the trial, a Twitter account with the handle "@VeoliaFlintFacts" began providing false information about the proceedings. Suspecting that the account was influenced by Veolia's trial counsel and designed to taint the empaneled jury, plaintiffs filed a motion to compel discovery surrounding certain tweets during the trial. Ex. G, Motion to Compel. Despite Wright's and her counsel's attempts to describe the information sought through the subpoena at issue as the same information sought during trial, she and

5

her counsel know full well that nothing could be further from the truth, and this mischaracterization plainly evidences her lack of credibility. And it should be noted that none of the subpoenas issued during the trial were directed at Wright.

The trial motion centered on and was tailored to a handful of specific "tweets" (out of approximately sixty). The small number of subject tweets contained false statements about at least one testifying expert, and made false statements about plaintiffs' trial counsel. The trial motion had literally nothing to do with an orchestrated disinformation campaign spanning six years of litigation, including increased funding prior to and during trial. And despite Wright's description of how the motion was disposed, Judge Levy denied the motion *without prejudice* during trial, because there was not a showing that the then-empaneled jury had seen or been influenced by the twitter account. Judge Levy stated, however, that:

> [T]he subpoenaed information could be relevant to the ongoing trial if there is a showing that the tweets or information contained in the tweets originated from one of the lawyers for VNA … If [p]laintiffs learn that an attorney for VNA is involved with the tweets they may re-raise their motion at that time. ***This issue may also be re-raised as the litigation proceeds and future juries are selected***." Ex. H, Order Denying Motion to Compel, Emphasis Added.

Judge Levy's order regarding a small number of discreet tweets during trial is at best tangential to information sought by way of the subject subpoena, and it should bear no significance to this Court (or to Judge Levy) regarding the exceptional circumstances existing at this juncture, including, but not limited to an apparent campaign extending far beyond a Twitter account into a holistic six-year digital disinformation campaign replete with a misleading website and perhaps geo-targeted ads. The scope of Veolia's deception, employed by Wright on its behalf, has expanded exponentially beyond the tweets raised during trial, and continues in the wake of the mistrial, thus posing a substantial risk that jurors in the retrial and subsequent trials will be improperly influenced.

Moreover, in contrast to the intra-trial twitter subpoenas, the subpoenas issued to Wright in this matter bear no mention of Twitter or the referenced accounts at issue, because these tweets were such an infinitesimal piece of the campaign, the seismic proportions of which were not evident during the trial. The true scope of the disinformation campaign has only recently been brought to light and might not even be

fully captured by the aforementioned article, which is why this subpoena and Ms. Wright's testimony is of such import.

In light of the mistrial, the campaign is ever more dangerous now. During the first bellwether trial, Judge Levy ordered an empaneled jury to refrain from reading anything regarding the case. Ex. H, Order, p. 5. Now, by contrast, Veolia, Wright, and possibly others continue to impose misinformation upon an entire community from which a jury will be selected to hear trial after trial before Judge Levy.

Clearly the interests of judicial comity, judicial integrity, and other exceptional circumstances dictate that this action be transferred to the Eastern District of Michigan or, in the alternative, denied on its face so the deposition can go forward as soon as possible.

## ARGUMENT

**I.    THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF MICHIGAN PURSUANT TO THE EXCEPTIONAL CIRCUMSTANCES PROVISION OF RULE 45(f).**

Rule 45(f) provides: "When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). "Rule 45(f) allows for consolidation of motions in a single appropriate court, thereby avoiding piecemeal litigation in multiple fora as well as piecemeal appeals." *P.H. Glatfelter Co. v. Windward Prospects Ltd.*, 847 F.3d 452, 458 (7th Cir. 2017).

This Court, in granting a motion to transfer to the Eastern District of Michigan, relied on the Advisory Committee note to Rule 45(f), which states:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. *In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts.* Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*Cont'l Auto. Sys., U.S. v. Omron Auto. Elecs., Inc.*, No. 14 C 3731, 2014 U.S. Dist. LEXIS 84080, at *5-6 (N.D. Ill. June 20, 2014)(quoting Fed. R. Civ. P. 45(f), 2013 Amend. Cmt.)(emphasis added). Thus, this

7

comment contemplates two non-exhaustive scenarios of disruptions to the issuing court's management of the underlying litigation, both of which, among others, exist here.

### a. Transfer is necessary to avoid disrupting the issuing court's management of the underlying litigation because the same issues are likely to arise in many districts.

One scenario dictating in favor of transfer is when "the same issues are likely to rise in discovery in many districts." *Id.* Here, Respondents have issued similar subpoenas to individuals residing in Illinois, Maryland, Massachusetts, Michigan, and New York. Ex. I, Subpoenas and Subpoena Returns. Therefore, four districts outside the Northern District of Illinois will potentially be deciding this or similar issues, including the issuing court in which the Flint Water litigation remains active. Furthermore, there are pleadings containing overlapping issues with the present motion currently pending in the Flint Water litigation. Ex. J, Requests to Admit. As such, this matter should be transferred to the Eastern District of Michigan.

### b. Transfer is necessary to avoid disrupting the issuing court's management of the underlying litigation because it has ruled on related issues without prejudice and contemplated that larger issues may arise in the future.

Another scenario contemplated in the comment to Rule 45 is that in which a court has already ruled on issues similar to those raised in the motion. *Id*. Judge Levy issued her order denying **without prejudice** plaintiffs' motion to compel distantly similar discovery as at issue here. In so doing, the court contemplated the potential for similar issues to arise again in the future, stating that "[t]his issue may also be re-raised as the litigation proceeds and future juries are selected." Ex. H, Order. While both the context of and the conduct giving rise to the present subpoena is more expansive and dire than those previously presented to Judge Levy, the principles underlying the present subpoenas as well as those subject to Judge Levy's order overlap. Furthermore, by claiming the issues are identical or close to the same, movants have highlighted the need to transfer. Yet despite crafting her entire argument to quash the subpoena on the premise that the issues are the same, instead of filing her motion in the Eastern District if Michigan, Wright chose to file in this Court and to wholly mischaracterize the issue as follows: (1) Judge Levy denied "essentially the same discovery it now seeks from non-parties" [*Motion to Quash*, Pg. 1]; (2) "Plaintiffs now seek to use the

8

Subpoena to obtain from the non-party Subpoena Recipients the same information that Judge Levy refused to allow it to obtain from an actual party." [*Motion to Quash*, Pg. 4]; (3) "Judge Levy has already determined [the subpoenaed information] is not relevant to the parties' claims and defenses." [*Motion to Quash*, Pg. 5]; and (4) "[T]hat is the same argument that Plaintiffs unsuccessfully made to Judge Levy." [*Motion to Quash*, Pg. 9, n. 4].

But this Court has recognized that "[d]elving into the merits of the litigation in the Eastern District of Michigan constitutes disrupting that court's management of the underlying litigation. A ruling here may turn out to be inconsistent with the rulings in the Michigan case." *Omron Auto*, 2014 U.S. Dist. LEXIS 84080, at *6 (N.D. Ill. June 20, 2014). As was the case in *Omron Auto*, this matter should be transferred to the Eastern District of Michigan.

### c. Transfer is necessary given the complexity of the underlying litigation.

The foregoing two scenarios are but two of multiple exceptional circumstances under Rule 45(f) that exist here. Against the complex backdrop of the Flint Water litigation barely touched upon herein, Judge Levy is best positioned both to interpret the import, if any, of her prior order to the present subpoenas, and to determine their relevance within the complex nature of the Flint Water litigation.

As the Southern District of Illinois has previously recognized in issuing a Rule 45(f) transfer to the issuing court in another complex litigation, "the court with the most familiarity with the case is better positioned to determine whether the documents are indeed relevant and could better balance whatever relevance exists against the need to protect non-parties." *Adderley v. Three Angels Broad. Networks, Inc.*, No. 3:19-MC-00045-NJR, 2019 U.S. Dist. LEXIS 151348, at *4 (S.D. Ill. Sep. 5, 2019)(quoting *Patriot Nat. Ins. Grp. v. Oriska Ins. Co.*, 973 F. Supp. 2d 173, 176 (N.D. N.Y. Sept. 23, 2013))(punctuation omitted). As such, this matter should be transferred to the Eastern District of Michigan, which is most familiar with the underlying litigation.

9

### d. Respondents conduct is a threat to the integrity of the judicial process in the Eastern District of Michigan.

Wright's and Veolia's possible targeting of empaneled and potential jurors is appalling, and constitutes an exceptional circumstance in and of itself under Rule 45(f). As inexcusable as the campaign is, Rule 45(f) dictates in favor of transfer because the conduct is distinctly targeted at and threatens the integrity of the judicial process **in the Eastern District of Michigan**.

These efforts transgress the very core of the judicial process and the jury's role therein. "The basic premise of our legal system is that lawsuits should be tried in court, not in the media." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1080 n.6, 111 S. Ct. 2720, 2747 (1991)(Rehnquist, W. dissenting in case involving an attorney's public statements and analyzing whether there was "substantial likelihood of material prejudice" that would usurp the attorney's First Amendment interest). "The process of adjudication is designed to be removed from public influence." *Guffey v. Duff*, 459 F. Supp. 3d 227, 242 (D.D.C. 2020). "Jury service preserves the democratic element of the law, as it guards the rights of the parties and ensures continued acceptance of the laws by all of the people. It affords ordinary citizens a valuable opportunity to participate in a process of government, an experience fostering, one hopes, a respect for law." *Powers v. Ohio*, 499 U.S. 400, 407, 111 S. Ct. 1364, 1369 (1991)(internal punctuation and citations omitted).

The Eastern District of Michigan is best positioned to protect this sacred role of the jury in its jurisdiction as threatened by Wright and Veolia, and Judge Levy is inherently empowered to regulate the presentation of evidence as well as the conduct of the parties and their agents. Not only does VNA and Cooper Wright's conduct diminish the ability of victims of the Flint Water Crisis to present their claims through a fair trial, but it also ventures into the realm of sanctionable, contemptable, or criminal conduct.

For example, in Michigan, "[T]he primary purpose of the contempt power is to preserve the effectiveness and sustain the power of the courts." *In re Contempt of Auto Club Ins Ass'n*, 243 Mich. App. at 708. See also *People v Kurz*, 35 Mich. App. 643, 656 (1971). "Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court." *In re Contempt of Robertson*, 209 Mich. App. 433, 436 (1995). See also *In re Contempt of Auto Club Ins Ass'n*, 243 Mich.

10

App. 697, 708 (2000). Wright's and Veolia's conduct inherently impedes the functioning the Eastern District of Michigan in this case.

Michigan's criminal and contempt statutes, *infra*, more specifically encompass Wright's and Veolia's conduct. "[A]ll other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in … [t]he publication of a false or grossly inaccurate report of the court's proceedings," Mich. Comp. Laws Serv. § 600.1701(i). "A person who willfully attempts to influence the decision of a juror in any case by argument or persuasion, other than as part of the proceedings in open court in the trial of the case, is guilty of a misdemeanor[.]" Mich. Comp. Laws Serv. § 750.120a(1).

Even in the presence or absence of these mechanisms, District Courts have inherent authority to sanction bad faith conduct. *See e.g. King v. Whitmer*, 556 F. Supp. 3d 680, 706 (E.D. Mich. 2021)("Even if there are sanctions available under statutes or specific federal rules of procedure, the inherent authority of the court is an independent basis for sanctioning bad faith conduct in litigation.")(collecting cases)(internal punctuation omitted).

These inherent powers of the court and of law are fundamental to ensure that only the evidence presented at trial, not a multi-million-dollar digital media campaign, supports a jury's decision. "The very word 'trial' connotes decisions on the evidence and arguments properly advanced in open court. Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California*, 314 U.S. 252, 271, 62 S. Ct. 190, 197-98 (1941)(reversing contempt order against the *Los Angeles Times* and enunciating a standard of consideration that includes "the extent to which the substantive evil of unfair administration of justice was a likely consequence, and whether the degree of likelihood was sufficient to justify summary punishment."). Here, by contrast to the *Los Angeles Times*, Wright is not a member of the press, and by her own admission she acts instead as an agent and spokesperson of Veolia, a party to the underlying litigation. Moreover, this Court need not be encumbered with a granular assessment of the falsity of Wright's and Veolia's campaign, because even accepting solely for the sake of argument

11

that its content is entirely true (it is not), the contemptuous conduct is also found in the targeted *influence* over the jury, regardless of the substance of the campaign.

As such, this matter should be transferred to the Eastern District of Michigan, which is most familiar with the underlying case and whose administration of justice is distinctly targeted by Wright's and Veolia's conduct.

### e. These exceptional circumstances outweigh any burden to Respondents.

These several factors dictate in favor of transfer and Wright will not suffer either prejudice or any discernable burden by complying with this subpoena for electronic production of documents and participation at a Zoom deposition. At least one district court in the Seventh Circuit has found that "electronic production creates no geographical burden[.]" *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 3:11-cv-00268-JD-CAN, 2014 U.S. Dist. LEXIS 204449, at *8 (N.D. Ind. Nov. 20, 2014).

However, the movant presents undue burden arguments not involving geographic location and relies instead on the size of the company, the time and cost it would take to obtain documents responsive to the subpoena, and the breadth of the material requested. Not only does this beg the question as to how Wright's role can be so minimal, while simultaneously the production of documents could be so cumbersome, but whether the subpoena is overly broad, unduly burdensome, or in some way subject to more narrow tailoring is inherently an issue due to be resolved by the Eastern District of Michigan. Furthermore, these overbreadth arguments are essentially arguments regarding relevance. *But see Adderley, Inc.*, *supra*, 2019 U.S. Dist. LEXIS 151348, at *4 ("the court with the most familiarity with the case is better positioned to determine whether the documents are indeed relevant and could better balance whatever relevance exists against the need to protect non-parties.").

Wright also maintains that the requested discovery is "readily available from a party through discovery." ECF. No. 1, p. 8. But deposing Wright can only be achieved **by deposing Wright**, not by deposing Veolia. Further, as Veolia's agent, who has corresponded at length with a significant number of

Veolia executives and other employees, she is the likely custodian of several admissions by a party opponent, and the subpoenas are reasonably calculated to lead to the discovery of admissible evidence.

## CONCLUSION

For the reasons set forth herein, the *Motion to Quash* should be transferred to the Eastern District of Michigan.

Respectfully submitted, this the 14th day of September, 2022.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
Michigan Bar No. P 80794
*Pro Hac Vice Motion Pending*
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
(212) 605-6290 (facsimile)
cstern@levylaw.com

## CERTIFICATE OF SERVCE

      I hereby certify that I have this day caused the foregoing document to be filed with the Clerk of the Court and served via email and the CM/ECF filing system upon the following:

      Michael Frisch
      Pantelis Danos
      Croke Fairchild Morgan & Beres
      180 N. LaSalle St., Ste. 2750 Chicago, Illinois 60601
      mfrisch@crokefairchild.com
      pdanos@crokefairchild.com


Respectfully submitted, this the 14th day of September, 2022.

                                              **LEVY KONIGSBERG, LLP**

                                              /s/ COREY M. STERN
                                              Corey M. Stern
                                              Michigan Bar No. P 80794
                                              *Pro Hac Vice Motion Pending*
                                              605 Third Avenue, 33rd Floor
                                              New York, New York 10158
                                              (212) 605-6200
                                              (212) 605-6290 (facsimile)
                                              cstern@levylaw.com