## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| *Waid, et al.*, | |
| *Plaintiffs* | No. 5:16-cv-10444 |
| *v.* | Hon. Judith E. Levy |
| *City of Flint, et al.*, | |
| *Defendants.* | |

### PLAINTIFFS' OPPOSITION TO
### SUBPOENA RECIPIENTS' MOTION TO QUASH

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Plaintiffs oppose the Motion to Quash filed by Gary Miles and Brendan Clarey (collectively the "Subpoena Recipients"). The Subpoena Recipients are employed by *The Detroit News* — a Michigan publication. Through this platform, the Subpoena Recipients published an opinion article authored by Tiger Joyce, President of the American Tort Reform Association ("ATRA"). Plaintiffs have a good faith belief that Joyce's article is part of Defendant Veolia's ongoing digital advertising misinformation campaign ("campaign"), which appears to target the juror pool in the Flint Litigation.

On September 1, 2022, the Subpoena Recipients were served with subpoenas seeking their deposition testimony and the production of documents related to the campaign. The Subpoena Recipients moved to quash, or alternatively to limit the

scope of the subpoenas. The motion is unjustified and should be denied, and the Subpoena Recipients should be compelled by the Court to provide the requested testimony and documents associated therewith.

## **FACTUAL BACKGROUND**

In order to fully appreciate the relevancy of the subpoenas, a brief discussion of the recent background concerning the ongoing litigation is critical. During the Bellwether I trial, Plaintiffs' counsel became aware of the Veolia Twitter account, "@VNAFlintFacts," and Veolia's accompanying website, "veoliaflintfacts.com." Plaintiffs believe Veolia may have used the account and website as mechanisms to spread misinformation on aspects of the trial happening in real time, and on the larger litigation more generally.

On March 30, 2022, during the trial, the Court inquired whether "counsel was involved" in the Twitter posts addressing courtroom events, implicating Professional Rule of Conduct 3.6A. *See* Exhibit A (Excerpt of March 30, 2022 Trial Transcript). Thereafter, Plaintiffs' counsel subpoenaed multiple Veolia entities, seeking production of documents related to the Twitter handle @VeoliaFlintFacts. The Veolia entities objected, and Plaintiffs filed a motion to compel, which the Court denied without prejudice on July 11, 2022. *See* (ECF No. 870, Or.).

Notably, however, the Court advised that the information sought would become relevant if there was evidence that the jury was aware of the tweets. *Id.* at

PageID 53692. Further, the Court also explained the information sought would become relevant if there was a showing of attorney involvement. *Id*. Subsequently, compelling information has come to light indicating that Veolia intended (and perhaps succeeded) in spreading misinformation to the Bellwether I jurors and potentially hundreds of thousands of future jurors. Exhibit B (September 9, 2022 Article, "Company sued over Flint's water crisis wages digital PR war during trial");[1] *see also* Exhibit C (October 26, 2022 Investigative Article, "Veolia Exec To Be Deposed Over Alleged Flint Juror Targeting").

The campaign is larger than a website and a Twitter handle, and likely includes an entire buffet of search optimization and potentially geo-targeted advertisements. It also likely includes the subject opinion column. The author, Mr. Joyce, consistently pens editorials criticizing plaintiff trial lawyers, and their use of the civil justice system. But typically, Mr. Joyce's editorials are nationally

---

[1] As the Court is aware, on September 8, 2022, Kayla Ruble from *The Detroit News* published an investigative article which analyzed VNA's digital advertising campaign from 2016 to present day. In the article, Ruble explained how her investigation revealed that Veolia used an "ad blitz" from October 2021 to July 2022 and "dynamic ads" to target Google searches in order to direct users to their website– veoliaFlintFacts.com. As now relevant, Ruble explained that publicly available data revealed that during the Flint Bellwether I trial Veolia purchased dynamic Google ads to promote their alternative Flint Facts website. (Dynamic ads are a form of advertising Google offers ad purchasers to "find customers searching on Google for precisely what you offer." *See* Exhibit D (Webpage, "About Dynamic Search Ads"). These ads offer a variety of targeting options which allow ad purchasers to geotarget at a ZIP code level as well as radius targeting. Both forms of targeting allow ad purchasers to tailor their ad buys to a relevant audience.)

syndicated or published to trade outlets.[2] Strangely, however, on August 31, 2022, Joyce's article was published in *The Detroit News*, the hometown paper for the jury pool in this District. It was prior to and during this time that Ms. Ruble was reaching out for comment to counsel of record for the Bellwether I trial regarding her investigation into Veolia. And suddenly, as though the tort-reform Gods had spoken, Mr. Joyce took interest in the local publication, a strange deviation from years of focusing on a much different audience.

The opinion editorial, titled "Flint civil trial shows consequences of lawsuit abuse," attacked not only the merits of Plaintiffs' claims, but also the character of Plaintiffs' counsel. *See* Exhibit F (August 31, 2022 Article, "Joyce: Flint civil trial shows consequences of lawsuit abuse"). Further, Joyce's article spread patently false and misleading information regarding not just the Bellwether I trial, but about the Flint litigation as a whole. Joyce wrote that "meritless cases," like the recent Bellwether I mistrial, clog up and "prevent legitimate claims from being heard." *Id*. Joyce also attacked statements made by attorneys for Plaintiffs, claiming that the

---

[2] On July 4, 2022, *InsideSource.com* published another opinion article Joyce authored concerning the Flint Water Crisis. Joyce's column in *The Detroit News* closely tracked this earlier editorial. There is a remarkable shift in tone toward Plaintiffs' counsel and notable facts omitted between the two publications. Exhibit E (July 4, 2022 Article, "Latest Flint Water Trial Unlikely to Result in Help for Victims").

attorneys' words "demonstrate the trial bar's view that the purpose of our civil justice system is ***not to find liability but rather to destroy a business***." *Id*. (emphasis added).

Joyce characterized the civil trials as "lawsuit abuse," claiming that "when lawsuit abuse is allowed to flourish, it undermines the very foundation of our justice system." (That's his opinion, and he's certainly entitle to it and to express it however and whenever he sees fit). Joyce went on to state:

> While there is no doubt that the residents of Flint suffered tremendously, ***it's clear that some of the subsequent lawsuits are nothing more than opportunistic attempts to cash in on the crisis***. As a result, [the Flint Litigation] has become a prime example of how lawsuit abuse can take advantage of innocent victims.

*Id*. (emphasis added).

Joyce also portrayed Veolia as victims of a scheme by Plaintiffs' counsel to "***get rich by bankrupting companies with deep pockets[,]***" and flat-out lied when he stated that attorneys for the Plaintiffs in the Flint Water Crisis collected $200 million from a $626 million settlement. *Id*. (emphasis added). To this day, not a single cent of the settlement has been paid to Plaintiffs or their counsel. He also omitted that the Flint Bellwether I Defendants are not and have never been part of the settlement — a crucial fact in the litigation. And one that would have created a much different tenor in his article. Clearly, and despite Joyce's averments, Plaintiffs are not seeking compensation from defendants who have settled, but rather are pursuing claims that have survived summary disposition against companies who

indisputably were contracted by the City of Flint prior to and during the crisis, and who to date take no responsibility for the crisis. Quite obviously, to the Court, though not to Joyce's taget audience, the Flint Bellwether I trial (and those scheduled in the future) involve non-settled defendants.

Joyce's column — coupled with its timing and the mounting evidence of Veolia's attempts to speak to empanelled and future jurors through the media — supports the need for the subject discovery. Plaintiffs have a good faith basis to believe that this article could be part of Veolia's efforts to influence jurors. And it ought to be noted that Plaintiffs are not seeking to curtail Joyce's (or anyone else's) speech. But *The Detroit News* has covered the Flint Water Crisis extensively for close to eight years, including wide-ranging coverage of the referenced settlement. It would be far-fetched for anyone to believe that the publication was simply unaware that the settlement (referenced by Joyce) is on appeal, and that not a single attorney or resident of Flint has received a single cent at the time the Joyce article was published. While the Subpoena Recipients are not parties to the litigation, they are responsible for content published in *The Detroit News*. Gary Miles is the newspaper's Editor and Publisher while Brendan Clarey works as an opinion writer and editor. Upon information and belief, both of the Subpoena Recipients edited and signed off on Joyce's article before it was published. As such, the Subpoena Recipients are in possession of material Plaintiffs cannot access except through these

indiviudals and the discovery mechanisms available through these subpoenas, namely how and who was responsible for pitching the article, edits made to the article and by whom, and whether Veolia, its agents or representatives were part of the process.

## APPLICABLE LAW

Federal Rule of Civil Procedure 45 permits a party to serve a subpoena on non-parties. Fed. R. Civ. P. 45(d). "A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 22 (E.D. Mich. 2016). Rule 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Courts interpreting this standard have repeatedly held that the scope of discovery is "traditionally quite broad." *Parrottino v. Bankers Life & Cas. Co.*, No. 12-CV-13084, 2014 WL 1516195, at *1 (E.D. Mich. Apr. 17, 2014) (citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir.1998).

## ARGUMENT

The Subpoena Recipients moved to quash Plaintiffs' subpoenas, claiming that the requests are improper. In the alternative, they seek to limit the scope of the subpoenas by way of a protective order. They also seek costs and fees. However, the

Subpoena Recipients have not shown they are entitled to any relief whatsoever. Plaintiffs' requests are relevant, as they go to the heart of a coordinated campaign to influence an entire jury pool, which directly impacts Plaintiffs' claims. The requests are not unduly burdensome or overly broad. Rather, the information sought is narrowly tailored and specific to the opinion article authored by Joyce. Accordingly, Plaintiffs respectfully request that the Court deny the motion and compel the Subpoena Recipients to provide testimony and documents pursuant to the subpoenas.

## I.   PLAINTIFFS' SUBPOENAS SEEK RELEVANT INFORMATION ESSENTIAL TO THE FLINT WATER LITIGATION.

The Subpoena Recipients argue that Plaintiffs' subpoenas are outside the scope of discovery because they do not seek relevant information. This argument is without merit. The Sixth Circuit has held that "because discovery is designed to help define and clarify [] issue[s], the limits set forth in Rule 26, [including relevancy], must be construed broadly to encompass any matter that bears on, ***or that reasonably could lead to other matters that could bear on***, any issue that is or may be in the case." *Conti v Am Axle & Mfg*, Inc., 326 Fed Appx 900, 904 (6th Cir. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (internal quotation marks omitted) (emphasis added).

Here, the information requested in the subpoenas at issue – information related to the publishing of Joyce's article in *The Detroit News* – reasonably could

lead to information related to Veolia's ongoing digital advertising misinformation campaign, which is clearly relevant to Plaintiffs' claims, to the extent the campaign targets and directly attempts to influence potential jurors in the Flint litigation.

An analysis of Joyce's August 2022 article illuminates why information about how Joyce's article came to be published could lead to relevant discovery related to Veolia's attempts to influence the jurors.

First, Joyce's August article was not his first foray into writing about the Flint litigation. In July 2022, Joyce wrote his first opinion article criticizing the Flint litigation. *See* Exhibit E. Joyce's July article reads similarly to the August article published in *The Detroit News*. However, there are several key differences between the two columns and these differences heighten the relevancy of Plaitniffs' requests seeking information on how the article came to be published.

The July article was published on *InsideSources.com*, a website catering to policymakers with content from "decision makers and wonks who understand the issues and shape our policies." Exhibit G (Webpage "About InsideSources"). Whereas for the August article, Joyce strategically chose *The Detroit News* as a landing spot, a Michigan centered newsource where the Flint litigation jury pool just so happens to reside.

While that fact, in and of itself is at least interesting, even more alarming is the shift in Joyce's tone toward Plaintiffs' counsel, the body of litigation itself, and

the facts surrounding the Bellwether I trial. In the July article, Joyce explicitly stated that neither of the Bellwether Defendants were involved in the settlement. Despite significant redundance in the two articles, that particular information was omitted from the August *Detroit News* article. Additionally, in the July *InsideSources.com* article, Joyce focused on the failure of government. He wrote: "The civil justice system exists to resolve disputes — not to perform the functions of public health officials, legislators and regulators." *See* Exhibit F. This is a stark contrast from the "get rich by bankrupting companies with deep pockets" angle Joyce wrote specifically for his August *Detroit News* article.

Second, the timing of Joyce's August *Detroit News* article is no accident. Because Veolia was extensively quoted in the Ruble investigative article, it was obviously put on notice that the Ruble article – which explained that an investigation revealed that Veolia used an "ad blitz" and "dynamic ads" to potentially geo-target potential jurors – was going to be published in late August or early September. It is therefore more than curious that Joyce's article was published at that same time. This suspicious timing makes it logical to infer that Joyce's article was part of Veolia's coordinated effort to continue to spread its misinformation campaign by undermining the Ruble article before it was made public.

Given the content of Joyce's article published in *The Detroit News,* its timing in conjunction with the Ruble investigative article, and Veolia's apparent

coordinated misinformation campaign, it is beyond doubt that the evidence Plaintiffs

are seeking through their subpoenas is proper and within the scope of Rule 26.

## II.   THE SUBPOENA RECIPIENTS' REMAINING ARGUMENTS ARE VAGUE AND WITHOUT MERIT.

The Subpoena Recipient's remaining arguments are difficult to discern and

far too vague to justify quashing Plaintiffs' subpoenas.  First, they argue that "the

burden on Mr. Miles and Mr. Clarey to attend depositions and produce documents

is great, as it potentially requires them to produce confidential, unpublished material

and communications from Mr. Miles and Mr. Clarey related to their editorial

functions." However, Courts in this district have held that such bare assertions are

insufficient to bar compliance with a subpoena request. *See State Farm Mut. Auto.*

*Ins. Co. v. Physiomatrix, Inc.*, Civil Action No. 12-cv-11500, 2013 U.S. Dist. LEXIS

189832, at *48 (E.D. Mich. Nov. 26, 2013) ("Where [subpoena recipient] has not

supported his claim of burden by affidavit or otherwise, his bare assertion is

insufficient to permit refusal to comply with the subpoena in its entirety.") Rather,

objections "must show specifically how a discovery request is overly broad,

burdensome, or oppressive, by submitting affidavits or offering evidence which

reveals the nature of the burden." *United States v. Marsten Apartments*, CASE NO.

95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262, at *5 (E.D. Mich. June 16, 1997)

(alterations, internal citations and quotations omitted). The Subpoena Recipients

have not met this burden; they failed to offer any such evidence to justify quashing Plaintiffs' subpoenas.

Second, the Subpeona Recipients argue that complying with the subpoena will inhibit the journalistic process and that this process is entitled to certain protections from discovery. However, the Subpoena Recipients entirely fail to support that these protections apply here. For example, they rely on *In re DaimlerChrysler AG Securities Litigation*, 216 F.R.D. 395, 406 (E.D. Mich. 2003) in support of their tenuous position. In that case, however, the court acknowledged that there is "no protection [for the press] for a request in a civil case for nonconfidential materials." *Id*.

While the *DaimlerChrysler* subpoenas were ultimately quashed, the court clarified that this was because the discovery request sought "unpublished material that was obtained from named informants and relates to communications with those informants." *Id*. This situation is clearly distinguishable. Here, Plaintiffs seek specific information regarding the steps taken to publish an editorial column by a non-party, which could heavily influence the outcome of current and future litigation. Joyce is not an unnamed source, nor is his article (or the documents and communications related thereto) confidential material.

Third, the Subpoena Recipients argue that Plaintiffs' subpoenas seek documents "related to a meritless defamation claim, not the actual litigation." This

is patently false and could not be more unfounded. This is not about a defmation claim, and the Subpeona Recipients attempt to paint it as a such is at best a red herring and at worst a calcuted attempt to disparage Plaintiffs counsel. As discussed above, uncovering the breadth and depth of Veolia's coordinated digital advertising misinformation campaign is material to the litigation of Plaintiffs' claims and to Flint litigation in general. And determining how Joyce's article was selected to run in *The Detroit News,* who was responsible for pitching it, and who contributed to it, are vital to the Flint litigation. Fed. R. Civ. P. 26(b)(1).

In their final attempt to undermine the relevancy of this discovery, the Subpoena Recipients point to a previous Order which quashed ***different subpoenas than those at issue here***.  While those subpoenas were related to discovery of Veolia's digital advertising misinformation campaign, the Court carefully noted that the information could become relevant at a later date if evidence that jurors had been targeted came to light. *See* ECF No. 870 at PageID 53692-53693. Since that order, mounting evidence of Veolia's direct efforts to speak to and influence jury pools in the Flint litigation has revived this relevancy argument. Indeed, this Court has already ordered testimony regarding other elements of this very misinformation campaign.

## III.   THE SCOPE OF THE SUBPOENAS SHOULD NOT BE LIMITED

As an alternative to quashing the subpoenas outright, the Subpoena Recipients seek limitations on the scope of the subpoenas. Pursuant to Federal Rule of Civil Procedure 26 (b)(5)(A), a party withholding information otherwise discoverable by claiming that the information is privileged must: (1) "expressly make the claim;" and (2) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "The burden of establishing privilege and non-waiver rests with the person asserting it." *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys. Llc*, No. 07-CV-15280, 2010 U.S. Dist. LEXIS 3175, at *4 (E.D. Mich. Jan. 15, 2010).

The Subpoena Recipients have simply failed to meet that burden. They have not even atttepted to describe the nature of the withheld documents and/or tangible things that they claim to be privlegded as is required by the rule. Fed. R. Civ. P 46(e)(2)(A)(ii).

14

## IV.    THE SUBPOENA RECIPIENTS ARE NOT ENTITLED TO FEES

The Subpoena Recipients are not entitled to attorney fees. For the reasons set forth above, Plaintiffs' position is "substantially justified." Fed. R. Civ. P. 37(a)(5). Further, counsel has taken reasonable steps to avoid imposing undue burden or expense on them. Fed. R. Civ. P. 45(d)(1). The requests are narrowly tailored to certain documents and merely ask that the documents be brought to a deposition, which the Subpoena Recipients may attend remotely.

## <u>CONCLUSION</u>

In light of the forgoing, Plaintiffs respectfully request this Court deny the Motion to Quash and compel the Subpoena Recipients to provide the requested testimony and documents associated therewith.

Dated: October 31, 2022.                         Respectfully submitted,

                                                 **LEVY KONIGSBERG LLP**

                                                 <u>/s/COREY M. STERN</u>
                                                 Corey M. Stern
                                                 605 Third Ave., 33rd Floor
                                                 New York, New York 10158
                                                 (212) 605
                                                 (212) 605 – (facsimile)
                                                 cstern@levylaw.com

                                                 ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2022 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONISBERG, LLP**

<u>/s/ COREY M. STERN</u>
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6298
(212) 605-6290 (facsimile)
cstern@levylaw.com

16