# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases. | Judith E. Levy |
| | United States District Judge |
| _____/ | |

This Order Relates To:

ALL CASES

_____/

## OPINION AND ORDER GRANTING NON-PARTIES GARY MILES AND BRENDAN CLAREY'S MOTION TO QUASH SUBPOENAS [2233]

Before the Court is non-parties' Gary Miles and Brendan Clarey's motion to quash subpoenas. (ECF No. 2233.) Plaintiffs served subpoenas for documents and depositions on Gary Miles, Editor and Publisher of *The Detroit News*, and Brendan Clarey, an opinion writer and editor for *The Detroit News*. (ECF No. 2233; 2240.) Miles and Clarey argue that the subpoenas seek documents and information that go beyond the scope of the claims and defenses in the underlying litigation. Further, they argue that the subpoenas seek information that is more properly discoverable from Defendants and other non-media non-parties. (ECF No. 2233,

PageID.73813–73814.) For the reasons set forth below, Miles' and Clarey's motion is granted.

## I. Background

Plaintiffs' subpoenas to Miles and Clarey seek the same information. (ECF No. 2233-3, PageID.73834–73838 (Miles subpoena); ECF No. 2240, PageID.73875–73879 (Clarey subpoena).) They seek:

> All documents/tangible things and communications related to your/anyone at Detroit News' communications related to Tiger Joyce's Op-ed, published on August 31, 2022, related to the Flint Water Crisis, including but not limited to correspondence with:
>
> a. The American Tort Reform Association;
>
> b. Tiger Joyce;
>
> c. Any/all Veolia Entities;
>
> d. Lockwood Andrew Newman [sic];
>
> e. Leo A. Daly Company
>
> f. Rise Public Strategies;
>
> g. Tarrah Cooper Wright;
>
> h. Simpli.fi;
>
> i. Mercury Public Affairs;
>
> j. Rasky Partners, Inc.;
>
> k. Any/all public relation firms that had any contact with you/Detroit News about Tiger Joyce's Op-ed,

2

published on August 31, 2022, related to the Flint water crisis.

2. All documents/tangible things and communications related to your/anyone at Detroit News' communications related to vetting Tiger Joyce's Op-ed, specifically but not limited to the following assertions therein:

a. "Instead, this latest civil trial has exposed the true intentions of the plaintiffs' attorneys involved: to get rich by bankrupting companies with deep pockets."

b. "So why bring additional litigation against two engineering companies who claim they were kept out of the loop or only entered the Flint water crisis after lead was already detected?[']"

c. "The trial lawyers' incendiary statements seem to indicate that it's because the $200 million in legal fees they collected from the original settlement was not enough."

d. "These abuses can have devastating impacts on businesses, large and small. But more importantly, it often ends with trial lawyers taking home millions while real victims are left with pennies. That was the case in the original 2021 Flint water settlement where victims took home on average only $4,500 each."

e. Compared to the millions that trial attorneys received, former mayor of Flint Karen Weaver responded calling the 2021 settlement, [']a slap in the face['] and saying [']this was not justice for the people of the city of Flint.[']"

(ECF No. 2233-3, PageID.73838; ECF No. 2240, PageID.73878.)

3

Miles and Clarey argue that the subpoenas are overly broad, unduly burdensome, and do not seek information relevant to the underlying claims and defenses in the Flint water litigation. (*Id.* at PageID.73819.) As to the scope of the subpoenas, Miles and Clarey argue that "the placement of an op-ed in 2022 is of no relevance to a dispute regarding lead in Flint water spanning years." (*Id.* at PageID.73820.)

As to the undue burden, Miles and Clarey emphasize that the unique role of the media should be considered when the Court assesses their burden to comply with the subpoenas. They argue that this burden is particularly high where the information sought is available from other non-media sources, beginning with the Defendants in this case. (*Id.* at PageID.73820.) They argue that the burden of compliance could impact the dissemination of information to the public as follows:

> the burden on Mr. Miles and Mr. Clarey to attend depositions and produce documents is great, as it potentially requires them to produce confidential, unpublished material and communications from Mr. Miles and Mr. Clarey related to their editorial functions. Allowing access to these materials and communications from a journalist will severely inhibit the flow of accurate information to the interested public.

(*Id.* at PageID.73821–73822.)

4

Plaintiffs' respond that Tiger Joyce's op-ed, which ran in Miles' and Clarey's newspaper, *The Detroit News*, on August 31, 2022, is part of a larger scheme orchestrated by the Veolia Defendants to "spread[] misinformation to the Bellwether I jurors and potentially hundreds of thousands of future jurors." (ECF No. 2248, PageID.73909.) Plaintiffs argue that it is "strange[]" that Mr. Joyce, who typically publishes editorials in trade outlets, would publish his op-ed in *The Detroit News*, which is the "hometown paper for the jury pool in this District." (*Id.* at PageID.73910.)

Plaintiffs also point to the timing of the Joyce op-ed as "no accident." (*Id.* at PageID.73916.) Shortly after the Joyce piece appeared, *The Detroit News* published an article regarding a digital media campaign that was allegedly being waged by the Veolia Defendants during the Bellwether I trial jury selection. (*See, generally*, Case 5:17-cv-10164-JEL-KGA ECF No. 990 (mentioning article written by Kayla Ruble, *Company Sued Over Flint's Water Crisis Wages Digital PR War During Trial*, The Detroit News, September 8, 2022 (https://perma.cc/P8NB-NFCM)).) The Joyce article, Plaintiffs argue, was published to "undermine the Ruble article before it was made public." (*Id.*) Plaintiffs suspect that Joyce's article

5

"could be part of Veolia's efforts to influence jurors." (*Id.* at PageID.73912.)

Plaintiffs argue that Miles and Clarey's roles at *The Detroit News* mean they would have "signed off on Joyce's article before it was published," and it is important for Plaintiffs to learn whether Veolia was "part of the process." (*Id.* at PageID.73912–73913.) Miles and Clarey's reply argues that the Court should quash Plaintiffs' subpoena because Plaintiffs' theories of relevance are "entirely speculative" and "meritless." (ECF No. 2254, PageID.74022.)

## II. Legal Standard

Miles and Clarey move to quash their subpoenas, or, in the alternative, for the Court to limit the subpoenas' scope. (ECF No. 2233.) Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

The trial court may limit discovery and, in its discretion, may "determine that a discovery request is too broad or oppressive." *Superior Production P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 321

6

(6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

Under Federal Rule of Civil Procedure 45, the Court "must quash or modify a subpoena that:. . . subjects a person to undue burden." Fed. R. Civ. P. 45(b)(3)(A)(iv). The Circuit recognizes that the burden imposed on journalists due to their status as news-gatherers should be carefully balanced against the interests of the party seeking the discovery. *See In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395 (E.D. Mich. 2003) ("*In re Daimler*").

### III. Discussion

Miles and Clarey's motion to quash is granted. While there are certainly some circumstances where it would be appropriate for a party to take third-party discovery from a media outlet, this is not one of them.

In the case *In re Daimler*, the plaintiff alleged that the defendant violated the Securities and Exchange Act through its misrepresentations to its shareholders during a corporate merger. 216 F.R.D. at 396. The plaintiff subpoenaed two third-party business reporters for *The Detroit News*. These reporters had covered the merger events as they unfolded and, following the merger, wrote a book about it. *Id.* at 396–97. The two

7

reporters conducted more than two hundred interviews for their book. *Id.* at 397. The plaintiffs' subpoena sought "production of essentially all notes, recordings, source material, secondary sources, and any other material reviewed or utilized in any way in the preparation" of the book, among other things. *Id.* The plaintiffs later narrowed the scope of their request, but the narrowed-down scope still included information that the two reporters obtained about 97 people acknowledged in the book. *Id.* The plaintiff moved to compel compliance with the subpoenas after the third-party reporters objected to them. *Id.* at 395.

The *In re Daimler* court[1] denied the plaintiffs' motion to compel for several reasons including that much (if not all) of the evidence sought "may well be obtainable from other sources" which the plaintiffs had not explored. *Id.* at 403. The reporters' status as news-gatherers mattered in the Court's analysis. *Id.* at 403. The Court cautioned, "[g]iven the important role that newsgathering plays in a free society, courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents." *Id.* at 406. Accordingly, the Court held that after:

---

[1] Magistrate Judge R. Steven Whalen issued the opinion of the Court.

> looking at the totality of the circumstances, including the Respondents' position as news-gatherers, I find, in the exercise of my discretion, that the information sought by the Plaintiffs is obtainable by other sources less burdensome to Respondents; that Plaintiffs have ample opportunity to obtain the information they seek within the scope of the discovery [. . .]; and that the burden on these third-party Respondents of producing the requested documents outweighs the likely benefit to the Plaintiffs.

*Id.* at 406.

Similarly, here, the burden on Miles and Clarey to comply with this subpoena in their roles at *The Detroit News* outweighs the benefit to Plaintiffs. The information that Plaintiffs seek from Miles and Clarey is available from other, non-news media sources, including Defendants or even Mr. Joyce. Burdening the news media with a subpoena such as this could potentially inhibit the newspaper staff's roles as members of the media.

Even if Miles and Clarey were non-media, however, Plaintiffs' subpoena would be quashed because they have not demonstrated a clear link between discovery of information regarding the Joyce op-ed from Miles and Clarey and the allegations against the Veolia Defendants involving geo-targeting and potentially influencing the Bellwether I jury. For one thing, the Joyce article was published after the Bellwether I trial

ended in a mistrial, so it could not have been an attempt to influence *that* jury. Given that the Joyce op-ed was published in August 2022 and the re-trial will not take place until late February 2023, concerns regarding its influence on a future jury are too remote. Nor is the fact that the op-ed was published in *The Detroit News*, a local southeast Michigan newspaper, of great concern because the trial is a newsworthy event in this region.

    Notably, Plaintiffs are correct that there are a concerning number of factual inaccuracies in Joyce's op-ed that range from relatively innocuous (i.e., "The previous judge overseeing the case, Judith E. Levy. . ." is inaccurate because the undersigned was and remains the only district judge assigned to this case) to utterly baseless (i.e., "That was the case in the original 2021 Flint water settlement where victims took home on average only $4,500 each," is inaccurate because no payments can possibly be made to claimants while an appeal is underway in the Sixth Circuit. Moreover, the Court knows of no basis, whatsoever that underlies the "$4,500 each" claim, which by all accounts appears entirely fabricated and inflammatory). There are more inaccuracies in the Joyce op-ed regarding even elementary facts of this case and the partial

10

settlement that do not warrant mention. Regardless, these inaccuracies may be of interest to Miles, Clarey, and their readership, but they do not make a difference in the Court's decision to quash the subpoenas of Miles and Clarey.

## IV. Conclusion

In conclusion, Miles and Clarey's motion to quash is granted.

IT IS SO ORDERED.

Dated: November 17, 2022  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 17, 2022.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager