**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

*In re Flint Water Cases 16-10444*
_____/     *The Hon. Judith E. Levy*


*Bellwether III Case No. 17-10164*
_____/

## PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS AND REQUEST FOR PRODUCTION OF DOCUMENTS

1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND ...................................................................1

APPLICABLE LAW .............................................................................6

ARGUMENT .......................................................................................7

I.   VEOLIA'S RESPONSES THAT NEITHER ADMIT NOR DENY A
     REQUEST FOR ADMISSION ARE INSUFFICIENT. ..........................8

II.  VEOLIA'S RESPONSES TO PLAINTIFFS' REQUEST FOR
     ADMISSIONS REGARDING DYNAMIC ADVERTISEMENTS
     AND TARGETING ARE QUALIFIED, EVASIVE, AND
     INTENTIONALLY INCOMPLETE. .......................................................9

III. VEOLIA'S OBJECTIONS TO THE REQUEST FOR ADMISSIONS
     AND REQUEST FOR PRODUCTION OF DOCUMENTS NOS. 1-
     22 ARE IMPROPER AND UNJUSTIFIED ...........................................13

     A.  Plaintiffs' requests are relevant to the parties' claims and defenses. .....14

     B.  Plaintiffs' requests are not unduly burdensome or harassing................17

     C.  Veolia may not assert privilege as an objection without providing
         more information. ...................................................................19

     D.  Veolia's First Amendment objection is vague and non-sensical. ..........20

     E.  Plaintiffs' various requests are specific and unambiguous. ..................21

IV.  VEOLIA'S OBJECTIONS TO THE REMAINING REQUEST FOR
     PRODUCTION (NOS. 23-40) ARE EQUALLY IMPROPER AND
     UNJUSTIFIED ...............................................................................23

CONCLUSION ..................................................................................26

# TABLE OF AUTHORITIES

## Cases

*Akins v. State Farm Mut. Auto. Ins. Co.*, No. 10-CV-12755, 2011 U.S. Dist. LEXIS 82806 (E.D. Mich. July 28, 2011)....................................................................21

*Baker v. Cty of Missaukee*, No. 1:09-cv-1059, 2013 U.S. Dist. LEXIS 154072 (W.D. Mich. Oct. 28, 2013) ..............................................................................7

*Baugh v. Bayer Corp*, No. 4:11-cv-525, 2012 U.S. Dist. LEXIS 131867 (D. S.C. Sept. 17, 2012) ..............................................................................................22

*Broad. Music, Inc. v. Marshall, No. 77-40087*, 1978 U.S. Dist. LEXIS 14044 (E.D. Mich. Dec. 4, 1978) ..............................................................................11

*Cf. Compuware Corp. v. Opnet Techs., Inc.*, No. 04-73749, 2005 U.S. Dist. LEXIS 50864 (E.D. Mich. Oct. 21, 2005) ...............................................12

*Dyna Grind Servs. v. City of Riverview*, No. 255825, 2006 Mich. App. LEXIS 1545 (Ct. App. May 4, 2006) ....................................................................20

*Falcone v. Provident Life & Accident Ins. Co.*, No. 2:08-CV-300, 2008 U.S. Dist. LEXIS 116426 (S.D. Ohio Oct. 23, 2008)................................................12

*Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991) ...............................................16

*In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289 (6th Cir. 2002)........................................................................20

*Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control, Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306 (E.D. Mich. Nov. 3, 2015) ...................................................................................................6

*Nash v. City of Grand Haven*, 321 Mich. App. 587 (2017) ....................................19

*Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06-CV-02389-DDD, 2008 U.S. Dist. LEXIS 54573 (N.D. Ohio June 4, 2008)............................................11

*Parrottino v. Bankers Life & Cas. Co.*, No. 12-CV-13084, 2014 WL 1516195 (E.D. Mich. Apr. 17, 2014) ...................................................................14

*Schmalz, Inc. v. Better Vacuum Cups, Inc.,* No. 16-10040, 2017 U.S. Dist. LEXIS 154260 (E.D. Mich. July 14, 2017).........................................................9

*Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200 (E.D. Mich. 2018)...............17

*United States v. Marsten Apartments*, CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262 (E.D. Mich. June 16, 1997)................................................17

*Waters v. Drake, No.* 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179 (S.D. Ohio Dec. 8, 2015)..............................................................................................19

**TABLE OF AUTHORITIES**
**(continued)**

**Rules**

Fed R. Civ. P. 26(b)(1) ...................................................................6

Fed R. Civ. P. 36(a) ......................................................................6

Fed. R. Civ. P. 36(a)(1) ..................................................................6

Fed. R. Civ. P. 36(a)(6) ..................................................................6

Fed. R. Civ. P. 26(a)(1) ..................................................................6

Fed. R. Civ. P. 26(b) ....................................................................14

Fed. R. Civ. P. 26(b)(5)(A) .............................................................19

Fed. R. Civ. P. 34(a) ......................................................................6

Fed. R. Civ. P. 34(b)(1)(A) (B) .......................................................18

Fed. R. Civ. P. 36(a)(4) ..................................................................8

Fed. R. Civ. P. 37(a)(3)(B) ..............................................................7

Local Rule 7.1(a) ..........................................................................5

iii

## INTRODUCTION

Following alarming revelations from an investigative article, Plaintiffs served Veolia Water North America Operating Services, LLC, Veolia North America, Inc., and Veolia North America, LLC (collectively "Veolia") with two discovery demands – a Request for Admissions and a Request for Production of Documents.[1] Plaintiffs seek to uncover, *inter alia*, the purpose and scope of Veolia's ongoing digital advertising campaign, including whether jurors/potential jurors were targeted in conjunction with the Bellwether I trial, and more generally whether future jurors have been targeted, reached, or otherwise compromised.

Veolia offered mostly insufficient responses to both discovery requests and did not produce a single document in response to the Request for Production of Documents. Plaintiffs therefore challenge the sufficiency of those responses; move the Court to deem Plaintiffs' requested admissions admitted; and seek to compel Veolia to produce the requested documents.

## FACTUAL BACKGROUND

During the Bellwether I trial, Plaintiffs' counsel became aware of a Veolia Twitter account, "@VNAFlintFacts" ("Twitter Account"), and its blatant and incessant attempts to push individuals to Veolia's accompanying website,

---

[1] *See* Ex. 1 (Plaintiffs' Request for Admission); Ex. 2 (Plaintiffs' Request for Production)

1

"veoliaflintfacts.com" ("Website"). Plaintiffs believe Veolia used the Twitter Account and Website as part of a larger scheme to spread misinformation about the trial as it happened in real time, as well as about larger aspects of the litigation, with the desired effect that this misinformation would reach sitting and future jurors. Furthermore, it appears the campaign is larger than a website and a Twitter handle, and likely includes a buffet of intricate search optimization tools and targeted advertisements. While there is only still a little bit known about Veolia's intentions, and about the full scope of the campaign, a review of what is currently known is beyond concerning and warrants significant and continued investigation.

First, despite repeatedly claiming the Twitter account and Website are not meant to influence or communicate with jurors, directly following the conclusion of the Bellwether I trial, @VeoliaFlintFacts posted a series of tweets[2] **speaking directly to jurors**, "thank[ing] all eight members of the jury for their dedication and commitment[,]" and rejoicing with pleasure that "the meritless allegations of the plaintiffs' lawyers failed to convince the jury." *See* Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at 1-3.[3]   The thread inexplicably celebrated that

---

[2] Also referred to as a "thread." This thread is pinned to the top of @VeoliaFlintFacts' Twitter page, making it the first thing users see when they visit the page. The thread is also replicated on the Website, under the "Facts from the courtroom" section. *See* Ex. 3 (Screenshots of "Facts from the courtroom" from VeoliaFlintFacts.com) at 80. The Facts from the courtroom" section of the Website generally replicates all the tweets from the Twitter Account.

[3] References to exhibits refer to PDF pagination.

2

"plaintiffs' lawyers [sic] attempts to create a corporate scapegoat where none exists, while shielding the government officials who are truly responsible from facing justice, was a waste of time, energy, and money." *Id.*

Second, on September 8, 2022, *The Detroit News* published an investigative article analyzing Veolia's digital advertising campaign from 2016 to present day. *See* Ex. 5 (Kayla Ruble, "Company sued over Flint's water crisis wages digital PR war during trial," *The Detroit News*). In the article authored by Kayla Ruble, she described revelations that Veolia used an "ad blitz" from October 2021 to July 2022, as well as "dynamic [search] ads,"[4] targeting Google searches from direct users to the Website. Ruble further explained how publicly available data revealed that during the Bellwether I trial, Veolia utilized dynamic search ads to promote the Website. A cursory review of the Website today (and throughout the Bellwether I trial) shows that (despite content dormancy for a long period of time prior to trial), during the trial significant content was added, including a section titled "Facts from the Courtroom."

---

[4] Dynamic search ads are a form of advertising Google offers ad purchasers to "find customers searching on Google for precisely what you offer." *See* Ex. 6, ("About Dynamic Search Ads, Google Ads Help."). These ads offer a variety of targeting options which allow ad purchasers to geotarget at a ZIP code level as well as radius targeting. Both forms of targeting allow ad purchasers to tailor their ad buys to a relevant audience.

As part of the reporting, a Veolia spokesperson confirmed Veolia's purchase of dynamic search ads, and admitted that "[w]ith dynamic [search] ads … Google automatically matches a URL page that is relevant to a search term the user is searching … [T]his happens on the Google side based on their algorithm of information they have on the user who is searching." *Id.* at 2. According to the reporting, Veolia did not respond to questions from *The Detroit News* regarding whether it targeted advertising based on locations—like the courthouse or potential jurors' neighborhoods.

The two events described above – Veolia's posts speaking **directly** to the jurors and the investigation conducted by Ruble – are but two examples supporting the need for information from Veolia regarding the scope and intention at the core of its ongoing campaign.

Thus, Plaintiffs served the above-referenced discovery demands, seeking thirty-six admissions and twenty-two categories of documents related to Veolia's advertising campaign (Request Nos. 1-22).

Plaintiffs also sought documents unrelated to the campaign, which stem from other issues raised during the Bellwether I trial. Specifically, Plaintiffs requested "all text messages, chat logs, and emails to or from" specific Veolia employees regarding a list of subtopics related to the Flint Water Crisis, spanning from January 1, 2015,

to present day, as well as documents pertaining to specific investigations and lawsuits involving Veolia (Request Nos. 22-40).

In response to Plaintiffs' Request for Admissions, Veolia set out a suspect preliminary statement. *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions). Thereafter, it denied seven assertions contained in specific requests (Nos. 2, 6, 8, 9, 11, 12, 15) and admitted to five (Nos. 5, 7, 13, 14, 24). *Id.* The remaining "responses," however, are either unresponsive (Nos. 1, 3, 4, 10, 16, 17, 18, 19, 20, 22, 23), or rely on unjustified objections (Nos. 21, 23, 25-36).[5] *Id.*

In response to Plaintiffs' Request for Production of Documents, Veolia did not provide a single document. Rather, they simply objected, repeating virtually the same suspect preliminary statement set forth in their response to the Request for Admissions, as well as other (unjustified) objections. *See* Ex. 8 (Veolia Response to Plaintiffs' Request for Production of Documents).

On November 29, 2022, counsel for Plaintiffs met and conferred with counsel for Veolia explaining how and why their responses to both discovery requests are

---

[5] Along with their Objections and Responses to Plaintiffs' Request for Admissions, Veolia produced some documents that purport to capture Veolia's Google ad spending, but do not list anything specific related to Google ad purchases, or even identify to which specific Request for Admissions the documents are responsive to. The majority of documents are undated, and to be of any use would first require significant speculation and guessing.

deficient. The parties were unable to reach any common ground whatsoever, giving rise to the instant motion.[6] *See* Ex. 9 (Rule 37(a)(1) Certification).

## APPLICABLE LAW

The Federal Rules of Civil Procedure authorize parties to make requests for admissions to facts and production of materials within the scope of Rule 26. Fed. R. Civ. P. 34(a); Fed R. Civ. P. 36(a). "The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control, Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306, at *11 (E.D. Mich. Nov. 3, 2015). "Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence." *Id*; *see also* Fed. R. Civ. P. 26(b)(1).[7]

Federal Rule of Civil Procedure 36 provides that a party may request admissions as to facts related to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed R. Civ. P.

---

[6] As Local Rule 7.1(a) requires, Plaintiffs' counsel conferred with Veolia's counsel concerning this motion. Counsel for Veolia did not concur.

[7] While Veolia has continuously argued to the Court that the issues surrounding its campaign do not touch upon any party's claims or defenses, the jury system is the bedrock of our civil justice system. A jury's job is to determine the facts of a trial. In our system, there is absolutely nothing more crucial than for an **impartial** jury to determine the facts associated with and propriety of a party's claims and defenses. A campaign filled with misinformation, intended to reach what would otherwise be an impartial jury, is vital to every claim and defense.

36(a)(1); Fed R. Civ. P. 26(b)(1). When a defendant's responses are insufficient or its objections are unjustified, Rule 36 authorizes the requesting party to seek relief by way of motion. Fed R. Civ. P. 36(a)(6). Upon such a motion, the court "must order that an answer be served[,]" unless "the court finds [the] objection [is] justified." Additionally, on finding that an answer does not comply with Rule 36, **the court may order either that the matter is admitted,** or that an amended answer be served. *Id.* The court has substantial discretion to determine the propriety of such requests and the sufficiency of the responses. *Baker v. Cty of Missaukee*, No. 1:09-cv-1059, 2013 U.S. Dist. LEXIS 154072, at *15 (W.D. Mich. Oct. 28, 2013).

Similarly, Federal Rule of Civil Procedure 34 provides that a party may serve a request for production of documents. When a defendant fails to produce documents in response to that request, "Rule 37 provides the party who sent the discovery [request] with the means to file a motion to compel." *Macomb Interceptor Drain Drainage Dist.*, 2015 U.S. Dist. LEXIS 149306 at *12; Fed. R. Civ. P. 37(a)(3)(B).

## ARGUMENT

The subject discovery and Veolia's "responses" relate to an overall concern regarding Veolia's misinformation campaign, and its potential to jeopardize the sanctity of this litigation. As the Court has recognized, these are serious concerns

vital to the ongoing Flint Water Crisis litigation. Veolia's continued evasiveness[8] regarding this issue is an insult to the Court, to the litigation, and to the civil justice system, and it must end. As such, the Court should grant Plaintiffs' motion regarding these responses, and use the full extent of its powers to swiftly and decisively force Veolia to modify its laissez faire attitude regarding this most serious issue.

## I.   VEOLIA'S RESPONSES THAT NEITHER ADMIT NOR DENY A REQUEST FOR ADMISSION ARE INSUFFICIENT.

Veolia's responses to Plaintiffs' Request for Admissions Nos. 1, 3, 4, 10, 16, 17, 18, 19, 20, 22, and 23 are entirely insufficient. Rule 36 provides that "[i]f a matter is not admitted, the answer must specifically deny it *or state in detail why the answering party cannot truthfully admit or deny it*." Fed. R. Civ. P. 36(a)(4) (emphasis added). Veolia has not even attempted to meet this standard – none of the listed responses admit or deny the request or provide an explanation for Veolia's inability to either admit or deny.

As an example, Request No. 1 states: "Admit that Veolia's keyword advertisements related to the Flint Water Crisis increased between September 1, 2021 and July 28, 2022." *See* Ex.1 (Plaintiffs' Request for Admission). In response, Veolia states: "[I]n 2016, it supplied certain keywords … for Google to use to

---

[8] *See* for example 5:16-cv-10444, ECF No. 2297, PageID.74243 ("based on, *inter alia*, the General Data Protection Regulation, VE is unable to disclose Mr. Farcot's address without subjecting itself to the risk of sanctions."

promote the website. As set forth in the Preliminary Statement above, at no time after 2016 did VNA increase the number of keywords for Google to use to promote the website. Any increase in advertisements during this period was a function of increased Google searches involving VNA's keywords." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions).

This response is plainly oblique in that it does not admit or deny anything, and it certainly does not evidence any effort to detail an inability to do so. Indeed, Veolia is playing a game of semantics. Veolia's responses to Request Nos. 3 and 4 are identically circuitous. And their responses to Nos. 10, 16, 17, 18, 19, 20, 22, 23 are even worse insofar as they merely incorporate by reference the preliminary statement or other responses (which merely object).

As such, each of these responses is insufficient under the federal rules. *See Schmalz, Inc. v. Better Vacuum Cups, Inc.,* No. 16-10040, 2017 U.S. Dist. LEXIS 154260, at *5 (E.D. Mich. July 14, 2017) ("According to Wright and Miller, a response may be considered insufficient where it "is not 'specific' or ... the explanation for failure to admit or deny is not 'in detail' as the rule requires.""). Because Veolia's responses are insufficient, the Court may "either treat the matter as admitted (essentially treating the insufficient answer as non-responsive), or order that "an amended answer be served." *Id.* (citing Fed. R. Civ. P. 36(a)).

## II.   VEOLIA'S RESPONSES TO PLAINTIFFS' REQUEST FOR ADMISSIONS REGARDING DYNAMIC ADVERTISEMENTS

**AND TARGETING ARE QUALIFIED, EVASIVE, AND INTENTIONALLY INCOMPLETE.**

Plaintiffs' Request No. 7 states: "Admit that by October 1, 2021, Veolia was using a form of digital advertising known as "dynamic search ads." *See* Ex. 1 (Plaintiffs' Request for Admission). In response, Veolia states: "VNA admits that, beginning in July 2016, it has utilized a Google feature known as 'dynamic search ads,' as that function is described in the Preliminary Statement. As described in the Preliminary Statement, these 'dynamic search ads' simply referred a user to a specific page on the website, rather than the website's homepage." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions).

In their preliminary statement, Veolia claims that:

> Google's sponsored search results advertising program allow advertisers to target specific regions, states, counties, cities, neighborhoods, zip codes, locations, or radiuses from a specific point. VNA never utilized these geo-targeting or geo-fencing features. VNA instead requested that Google serve its advertisements to all users whose queries hit on VNA's key words so long as those users were located anywhere in the United States or Canada.

This self-serving definition of "dynamic search ads" is confusing at best, and suspicious at worst. It is particularly mistrustful given that an undated document

recently produced by Veolia[9] – which by their counsel's own admission[10] is related to the dynamic search ads and targeting issue – shows overwhelmingly that Michigan's engagement with Veolia's advertising far outnumbers the rest of states and Canadian provinces. In fact, it shows that Veolia's "impressions"[11] in Michigan total 326,222, while no other state or province in Canada breaks ten thousand impressions. *See* Ex. 12 (Spreadsheet Produced by Veolia).

Setting aside those concerns, Veolia has effectively "qualified [their] responses so as to make them nonresponsive." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06-CV-02389-DDD, 2008 U.S. Dist. LEXIS 54573, at *7-8 (N.D. Ohio June 4, 2008) ("Generally … '[t]he admissions or denials must be forthright, specific, and unqualified.'") (Internal citation omitted). Therefore, all of Veolia's responses are insufficient under Rule 36. *Id.* ("ORW' s qualified denials thus fail to comply with Rule 36.").

---

[9] This production was not made in response to the subject Request for Production of Documents. *See* Ex. 10 (Email dated November 8, 2022, Subject: "Flint: Bellwether III First Requests to Admit to VNA - Document Production.")

[10] Veolia's counsel represented at the November 30, 2022 status conference, that Veolia had submitted all of the documents related to this issue. *See* Exhibit 11 (Excerpt of Transcript from November 30, 2022 Status Conference) at PageID 74175 and 74182-74184.

[11] According to Google: "An impression means that a user has seen (or potentially seen) a link to your site in Search, Discover, or News." *See* https://support.google.com/webmasters/answer/7042828?hl=en#impressions (last visited Dec. 5, 2022).

Additionally, Veolia's responses are incomplete because they are void of information available to them from their French parent company, Veolia Environnement, SE ("Veolia, S.E."). Veolia was required to include "information in [their possession], *or **which could be reasonably ascertained***." *Broad. Music, Inc. v. Marshall,* No. 77-40087, 1978 U.S. Dist. LEXIS 14044, at *4 (E.D. Mich. Dec. 4, 1978) (emphasis added). Throughout their responses, Veolia asserts that the North American company, itself, "never utilized … geo-targeting or geo-fencing features." However, recent deposition testimony from Carrie Griffiths, Senior Vice President of Communications for Veolia North America, makes clear that the campaign was developed and executed by Veolia S.E. and its employees. Indeed, Griffiths expressly testified that a specific French employee, Pierre Farcot, "was the point person for the communications related to the [Bellwether I] trial." *See* Ex. 13 (Excerpt from Deposition of Carrie Griffiths).

Thus, by failing to include information reasonably ascertainable from Veolia, S.E., Veolia has failed to proffer complete responses. The Court should therefore deem Veolia's response to this request noncompliant. *See Compuware Corp. v. Opnet Techs., Inc*., No. 04-73749, 2005 U.S. Dist. LEXIS 50864, at *4-5 (E.D. Mich. Oct. 21, 2005) (referring to "evasive or incomplete response[s] to a request for admissions" as noncompliant); *Falcone v. Provident Life & Accident Ins. Co.*, No. 2:08-CV-300, 2008 U.S. Dist. LEXIS 116426, at *7 (S.D. Ohio Oct.

23, 2008) ("Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond.") (Quoting Fed. R. Civ. P. 37(a)(4)).

### III.   VEOLIA'S OBJECTIONS TO THE REQUEST FOR ADMISSIONS AND REQUEST FOR PRODUCTION OF DOCUMENTS NOS. 1-22 ARE IMPROPER AND UNJUSTIFIED

Veolia's responses to Plaintiffs' Request for Admissions, Nos. 21, 23, and 25-36 rely on unjustified objections. Veolia asserts that: (1) the requests are not relevant; (2) the requests are unduly burdensome and harassing; (3) the requests seek privileged information; (4) the requests infringe on the First Amendment rights of numerous parties; and (5) the requests include vague and ambiguous language.

In response to Plaintiffs' Request for Production Nos. 1-22, Veolia did not provide a single document and merely objected to same, reiterating similar assertions set forth in their response to Plaintiffs' Request for Admissions. Veolia repeats the same boilerplate objections, over and over, arguing that the information sought by Plaintiffs, is: (1) irrelevant; (2) overly broad, unduly burdensome and harassing; (3) in violation of Court Order ECF 938; (4) seeks privileged information; and (5) infringes on First Amendment Rights.

Because the objections to Plaintiffs' Request for Admissions and the objections to Plaintiffs' Request for Production, Nos. 1-22, are virtually identical (and fail for the same reasons), Plaintiffs address them together here.

13

**A.     Plaintiffs' requests are relevant to the parties' claims and defenses.**

Veolia objects that Plaintiffs' Requests seek information "not relevant to any party's claims or defenses." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions); Ex. 8 (Veolia Response to Plaintiffs' Request for Production). This objection is unjustified.

Veolia's misinformation campaign is highly relevant to Plaintiffs' claims as well as to Veolia's defenses. Rule 26(b) defines the scope of discovery as ***any*** non-privileged matters ***relevant*** to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b). Courts interpreting this standard have repeatedly held that the scope of discovery is "traditionally quite broad." *Parrottino v. Bankers Life & Cas. Co.*, No. 12-CV-13084, 2014 WL 1516195, at *3 (E.D. Mich. Apr. 17, 2014).[12]

It goes without saying that any party's potential attempts to influence jurors outside of the trial itself is of consequence to the determination of the action and thus is relevant. But even beyond the targeting of jurors, Veolia's campaign should be of major concern to everyone involved in the litigation. Veolia's public posts speak

---

[12] Indeed, the Sixth Circuit stated: "As the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issue,' the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 904 (6th Cir. 2009) (Internal citation omitted).

directly to virtually **all** the facts associated with the litigation. Beyond targeting, the substance of the posts is simply inappropriate.[13] Veolia disparages Plaintiffs' experts.[14] Veolia cherry-picks witness testimony.[15] Veolia persistently touts its main defense — that the Flint Water Crisis was a massive failure of government on all levels.[16] And Veolia negatively comments upon[17] and purposefully mischaracterizes[18] this Court's rulings.

---

[13] Contrary to counsel for Veolia's recent argument at the November 30 status conference, Plaintiffs' position is – and has always been – that the content of many posts on the Twitter page and the Website are problematic, in that they are either utterly false or intentionally misleading. *See* Ex. 11 (Status Conference) at at PageID 74171-74179.

[14] For example, *see* Veolia's June 2, 2022 post: "FACT: Dr. William Bithoney, a paid witness who recently testified in the #FlintWaterCrisis trial, relied on the dubious findings of Aaron Specht and Dr. Mira Krishnan to reach his conclusions. Here's why Aaron Specht and Dr. Krishnan's reports are flawed." Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at 66

[15] For example, *see* Veolia's June 23, 2022 post: "Dr. Graham Gagnon confirmed VNA's recommendations to the City for minimizing natural organic material and corrosion control were consistent with scientific knowledge and would have addressed the lead issues in Flint had they been implemented. Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at 43.

[16] For example, *see* Veolia's March 8, 2022 post: "City, State and Federal officials failed in their duties to protect the health & wellbeing of #Flint residents. Not only did they not fix the problem, they lied to minimize the scale of the crisis, and they deceived both the citizens of Flint, LAN & VNA." Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at 142.

[17] For example, *see* Veolia's May 24, 2022 post: "The 6th Circuit's decision today to schedule a hearing for late July-when our trial will be over by then-continues more than eight years of utter failure to hold those responsible for the #FlintWaterCrisis accountable." Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at 68

[18] For example, *see* Veolia's March 25, 2022 post: "Earlier this week, Judge Levy affirmed that former Gov Rick Snyder & other gov't officials responsible for

Taken as a whole, these public posts constitute extra judicial statements by Veolia, which effectively create a shadow trial, where Veolia can manipulate the evidence without the safeguards of the Federal Rules of Evidence to influence jurors and witnesses. Obviously, this adds a more subtle, but highly relevant concern: the impact of Veolia's campaign on the overall fairness of a trial.

And this is not a new concern, nor is it a concern harbored by Plaintiffs alone. As the Court discussed during its November 30, 2022 conference, the Supreme Court recognizes that "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991). Also, the American Bar Association recently published an article explaining how posts on social media have the potential to "hijack" the impartiality and fairness of a trial. *See* Ex. 14 (*ABA Journal Magazine*, "How Social Media Hijacked the Depp v. Heard Defamation trial" (October 1, 2022)).

Given the forgoing, it is beyond any doubt that the evidence Plaintiffs seek through their requests — admissions and documents related to whether and how Veolia targeted and continues to target jurors, and the scope and intention behind

---

the #FlintWaterCrisis cannot hide behind the 5th amendment to avoid testifying." Ex. 4 (Screenshots of various tweets from @VeoliaFlintFacts) at at 122.

Veolia's campaign — is relevant. Indeed, one would be hard-pressed to find evidence that is more consequential to the determination of facts at a trial.

### B. Plaintiffs' requests are not unduly burdensome or harassing.

Veolia objects on the basis that the requests are "overly broad, unduly burdensome, and harassing." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions); Ex. 8 (Veolia Response to Plaintiffs' Request for Production). This objection is unjustified. This objection is both unjustified and unsupported.

Once the requesting party makes a threshold showing of relevance — as Plaintiffs have done above — the burden shifts to the party resisting discovery to show ***how*** it is overly broad, burdensome, or oppressive. *United States v. Marsten Apartments*, CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262, *4-6 (E.D. Mich. June 16, 1997). Simply objecting to a request as overly broad, unduly burdensome, and harassing is not sufficient to meet that burden. *Siser N. Am., Inc. v. Herika G. Inc*., 325 F.R.D. 200, 209-10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."). Rather, objections "must show specifically how a discovery request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Marsten Apartments*, CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262, at *5.

Here, Veolia has not even tried to meet this standard. They simply object, failing to offer anything at all as to the nature of the supposed burden. This is wholly insufficient as "the mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden." *Id.*

Moreover, Plaintiffs' Request for Production of Documents[19] is not overly broad or burdensome, as it complies with Rule 34(b)(1)(A)(B), insofar as: (1) Plaintiffs seek specific documents, describing with reasonable particularity the relationship between the requested documents and the digital advertising campaign; and (2) each request is purposefully and narrowly tailored to a specific timeframe, and relates almost exclusively to electronic communications. For instance, Plaintiffs' Request No. 20 seeks "communications between Prioleau and the Veolia Defendants since January 1, 2015, including all text messages between anyone from Veolia (or anyone acting on Veolia's behalf), and Prioleau." *See* Ex. 8 (Veolia Response to Plaintiffs' Request for Production). This objection is unjustified This request is tailored to the last seven years, and states with reasonable particularity what it seeks and where it can be found. *See* Fed. R. Civ. P. 34(b)(1)(A)(B).

---

[19] Veolia also objects that the request violates the Court's prior discovery order because Veolia apparently does not believe it needs to produce any documents that postdate January 31, 2017 (ECF 938). However, that order set forth that Plaintiffs "may seek to extend the end-date limitation beyond January 31, 2017, upon a showing that doing so would likely lead to the discovery of relevant information and be proportional to the needs of the case." ECF No. 938 at PageID 24435. For the reasons set forth in Section I of this brief, Plaintiffs' have made such a showing.

### C.   Veolia may not assert privilege as an objection without providing more information.

Veolia broadly objects that Plaintiffs' Request for Admissions and Plaintiffs' Request for Production of Documents calls for privileged information. *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions); Ex. 8 (Veolia Response to Plaintiffs' Request for Production). This objection is unjustified These objections are insufficient. A party claiming privilege under these circumstances must: (1) expressly make the claim; (2) describe the nature of the documents, communications, or tangible things not produced or disclosed; and (3) do so in a manner that, without revealing information that is itself privileged or protected, will enable other parties to assess the claim of privilege. Fed. R. Civ. P. 26(b)(5)(A). Veolia has failed each part of the rule. They do not expressly state what type of privilege is being asserted, and they wholly fail to provide an accompanying privilege log describing the nature of the documents, communications, or tangible things not produced or disclosed.

Moreover, assuming Veolia is asserting attorney-client privilege, there are a multitude of reasons why the information sought would not constitute privileged information. First, most of the requested information relates to Veolia's communications regarding public relations strategies **and not legal advice**. Thus, any claim of attorney-client privilege would be improper. *See Nash v. City of Grand Haven*, 321 Mich. App. 587, 593 (2017) ("The attorney-client privilege attaches to

communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice.") (emphasis added); *Waters v. Drake, No.* 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179, at *6 (S.D. Ohio Dec. 8, 2015) ("Case law makes it clear that a media campaign is not a litigation strategy.") (alterations, citations, and internal quotations marks omitted).

And even if there was a basis for asserting the attorney-client privilege – which there is not – most of the information sought is related to communications with third parties (namely members of public relations firms), which destroys the privilege.[20] *See Dyna Grind Servs. v. City of Riverview*, No. 255825, 2006 Mich. App. LEXIS 1545, at *28-29 (Ct. App. May 4, 2006) ("Once otherwise privileged information is disclosed to a third party … or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears.") (Citation omitted).

### D.   Veolia's First Amendment objection is vague and non-sensical.

Veolia's objections also include a vague assertion of First Amendment Rights, *to wit*: "VNA objects to the Request because it infringes on the First Amendment

---

[20] Also, as to the Request for Admissions, such is based in part on statements Veolia has already made to the public, and so, Veolia has waived any sort of privilege claim over this information. *See In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 302 (6th Cir. 2002) (finding that the defendant's release of privileged information to the Department of Justice in a separate investigation effected a waiver of the privilege).

rights of numerous parties, including VNA, co-defendants, and non-parties to this litigation, which all have constitutionally protected rights to express opinions regarding the subject matter of the trial." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions); Ex. 8 (Veolia Response to Plaintiffs' Request for Production). This objection is unjustified.

If Veolia was serious about this objection, it is not enough to vaguely claim that the Request "infringe[s] upon the First Amendment rights of numerous parties." *See Akins v. State Farm Mut. Auto. Ins. Co.*, No. 10-CV-12755, 2011 U.S. Dist. LEXIS 82806, at *8-9 (E.D. Mich. July 28, 2011) (finding that defendant's "vague" objections were insufficient). The objection offers no specific explanation as to ***how*** the requests infringe on Veolia's (or anyone else's) First Amendment rights.

### E.    Plaintiffs' various requests are specific and unambiguous.

Veolia makes an additional objection with respect to Plaintiffs' Request for Admissions Nos. 4-6, 11-20, and 27: that certain terms are "vague and ambiguous." *See* Ex. 7 (Veolia Response to Plaintiffs' Request for Admissions). This objection is unjustified. This objection is not only improper, but it is absurd. Veolia knows exactly what Plaintiffs are referencing when they utilize phrases[21] like "keyword advertisements," "initial advertisements," "appearing on," and "promoting." Within

---

[21] Despite its Preliminary Statement, Veolia claims the following terms are vague and undefined: search ads, Veolia bought, top position, initial advertisements, and appearing on.

the preliminary statement set out at the beginning of Veolia's response to Plaintiffs'
Request for Admissions, Veolia admits to using the digital ad practices outlined in
Ruble's article. These eight paragraphs discuss Veolia's understanding of Google's
Dynamic Ad functions — including "advertiser's key words" and "public relations
strategy." Clearly Plaintiffs' various requests and Veolia's responses address the
same universe of facts, albeit with stylistic differences in language used.

In any event, even if Veolia finds the wording of Plaintiffs' requests to be
vague, it is still obligated to "set forth a qualified answer that fairly meets the
substance of the request," and Veolia has failed to do that. *Baker*, 2013 U.S. Dist.
LEXIS 154072, at *14-15; *see also Baugh v. Bayer Corp*, No. 4:11-cv-525-RBH,
2012 U.S. Dist. LEXIS 131867 at *7 (D. S.C. Sept. 17, 2012); ("[R]equests for
admission are not games of 'Battleship' in which the propounding party must guess
the precise language coordinates the responding party deems answerable.").

## IV.   VEOLIA'S OBJECTIONS TO THE REMAINING REQUEST FOR PRODUCTION (NOS. 23-40) ARE EQUALLY IMPROPER AND UNJUSTIFIED

In response to Request for Production Nos. 23-36,[22] Veolia sets forth a lengthy and largely incomprehensible objection, which can perhaps be best summarized as asserting that these requests are:

- overly broad and unduly burdensome;
- in violation of the Court's discovery order because Veolia apparently does not believe it needs to produce any documents that post-date January 31, 2017 (ECF 938);
- irrelevant and immaterial to the claims or defenses in the case;
- seek documents and communications protected from discovery by one or more of the attorney-client privilege, Rule 26(b)(3), and work-product immunity;
- redundant, and intended to embarrass and harass, because "the VNA Defendants have already produced thousands of documents that … may be responsive to this request[,]" and because certain named individuals have testified in depositions and (some) at trial; and
- inappropriate because discovery search terms previously addressed by the Court do not include any that relate to the subject requests (ECF 980).

In response to Request for Production Nos. 37- 40,[23] Veolia broadly objects, asserting that the specific requests:

- seek information protected by privilege;
- are outside the scope of permissible discovery;
- are overly broad and unduly burdensome;

---

[22] As noted in the fact section of this brief, these Requests seek "all text messages, chat logs, and emails to or from" Veolia employees regarding a list of subtopics related to the Flint Water Crisis.

[23] As noted in the fact section of this brief, these Requests seek information regarding Veolia's internal investigations related to its work and resulting lawsuits in the cities of Flint, MI, Pittsburg, PA, and Plymouth.

23

- are unduly cumulative and duplicative; and
- are irrelevant.

Each of these objections is unjustified and improper. Veolia's claims that the specific requests are overly broad and unduly burdensome,[24] privileged, and run afoul of the end date of the Court's discovery order, fail for the same reasons set forth in Section III (B) and (C) of this brief: they lack specificity and good cause exists to extend the end date set out by the Court's prior discovery order in light of the foregoing.

Veolia's objection that the requests are unduly cumulative, harassing, and redundant is equally improper. Veolia has not produced the requested documents, and its prior productions do not relieve it of its duty to disclose under Federal Rule 26.

Veolia's objection that the requests are inappropriate because search terms previously addressed by the Court do not include any that relate to the present subject requests also fails. While the Court previously set forth certain search criteria in a discovery order (ECF 938), that does not require that discovery efforts made after the entry of the order are by any means limited to those search terms. Obviously, had

---

[24] Veolia indicates that the requests are overly broad because they "fail[] to specify with particularly which recipients or senders the request for communications is specifically seeking." Veolia is incorrect, each request clearly identifies that it is seeking material sent to and from the individual identified in the request. *See, e.g.,* Request No. 25 ("All text messages, chat logs, and emails ***to or from*** Depin Chen, between January 1, 2015 and present, which discuss") (emphasis added).

Plaintiffs' counsel contemplated that Veolia might attempt to reach sitting and potential jurors, there would have been additional search terms requested and likely made part of the Court's order.

Finally, Veolia's objection that the specific requests seek information that is irrelevant or immaterial is entirely nonsensical. Request for Production Nos. 23-36, seek communications to and from Veolia employees, which address a litany of topics that are at the absolute heart of Plaintiffs' professional negligence claims **and** Veolia's defenses. For example, Request No. 23 seeks communications to and from Marvin Gnagy regarding LeeAnne Walters. This could not be more relevant to the parties underlying claims or defenses insofar as Veolia's alleged lack of knowledge regarding the Walters' residence was central to Veolia's defense at trial, and continues to be central to their overall defense in the larger litigation.

Request for Production Nos. 37-40 seek information regarding Veolia's internal investigation(s) related to its work in Flint, as well as regarding lawsuits in the cities of Flint, Pittsburg, and Plymouth. This is extremely relevant. How or if Veolia engaged in digital campaigns in Pittsburgh and/or Plymouth, misleading or otherwise, and the extent of those campaigns could absolutely shed light on Veolia's intentions regarding the campaign in Flint.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deem the subject Request(s) for Admissions admitted and compel Veolia to produce the documents sought by way of the subject Request for Production of Documents.

Dated:          December 12, 2022                    Respectfully submitted,

                                                     **LEVY KONIGSBERG LLP**

                                                     /s/ Corey M. Stern
                                                     Corey M. Stern
                                                     605 Third Ave., 33rd Floor
                                                     New York, New York 10158
                                                     (212) 605
                                                     (212) 605 – (facsimile)
                                                     cstern@levylaw.com


                                                     /s/ Melanie Daly
                                                     Melanie Daly
                                                     605 Third Ave., 33rd Floor
                                                     New York, New York 10158
                                                     mdaly@levylaw.com

                                                     /s/ Kimberly Russell
                                                     Kimberly Russell
                                                     605 Third Ave., 33rd Floor
                                                     New York, New York 10158
                                                     klrussell@levylaw.com

                                                     ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2022 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

<u>/s/ COREY M. STERN</u>
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6298
(212) 605-6290 (facsimile)
cstern@levylaw.com

27