# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

Walters, et al.

v.

Veolia North America, Inc., et al.

CIVIL ACTION
2017-cv-10164

Honorable Judith E. Levy

_____

## BELLWETHER III PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Bellwether III Plaintiffs hereby request that Defendants Veolia North America, Inc., Veolia North America Operating Services, LLC, Veolia North America LLC, Veolia Water Logistics, LLC, Veolia Water Municipal Services North America, LLC, Veolia Water North America Operating Services, LLC, (collectively "Veolia") admit the truth of the matters set forth in this Request for Admissions (the "Request").

The following instructions and definitions shall apply to each and every part of this Request as if fully set forth therein:

## INSTRUCTIONS

1. Defendant Veolia must respond to each of the following Requests separately and fully.

2. Each Request shall be construed independently and not with reference to any other Request for the purpose of limitation.

3. If Defendant Veolia withholds any information called for by a Request on the basis of a claim or privilege or attorney work product, Defendant Veolia shall furnish a list setting forth, as to each objection, the nature of the privilege that is being claimed.

4. Each Request shall be deemed continuing so as to require prompt supplemental responses, if Defendant Veolia obtains or discovers further information called for herein between the time of responding to these Requests and the time of trial.

5. If any documents or tangible things are produced in response to these Requests, indicate for each Request, by Bates numbers or their equivalent, the documents or things that are responsive to that Request.

6. Unless otherwise stated or obvious from the context, the Requests herein cover the period from January 1, 2016 through the present.

7. As specified by Federal Rule of Civil Procedure 34(b)(2)(E), if responsive material is in electronic, magnetic, or digital form, Plaintiffs specifically requests production of such material pursuant to the protocol previously implemented by the Court.

8. In the event an objection is made as to any specific request, nevertheless, respond to all portions of the Request that do not fall within the scope of the objection. For example, if a Request is objected to on the grounds that it is

too broad, insofar as it seeks information covering years Defendant believes are not relevant to this litigation, nevertheless, provide information for all years which Defendant concedes are relevant. See Federal Rules of Civil Procedure 33(b)(3) and 34 (b)(2)(C).

## **GENERAL DEFINITIONS**

As used in these requests, the following terms mean:

1. Communication. The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2. Document. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents" or "electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

3. Identify (with respect to persons). When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

4. Identify (with respect to documents). When referring to documents, "to identify" means to give, to the extent known, the (i) type of document; (ii)

general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

5. Parties. The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6. Person. The term "person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

7. Concerning. The term "concerning" means relating to, referring to, describing, evidencing or constituting. The following rules of construction apply to all discovery requests:

    (1) All/Any/Each. The terms "all," "any," and "each" shall each be construed as encompassing any and all.

    (2) And/Or. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that

    might otherwise be construed to be outside of its scope.

  (3) Number. The use of the singular form of any word includes the plural and vice versa.

## REQUESTS TO ADMIT

1. Admit that Veolia's keyword advertisements related to the Flint Water Crisis increased between September 1, 2021 and July 28, 2022.

2. Admit that between September 1, 2021 and July 28, 2022, Veolia more than tripled the number of keyword search terms on Google in relation to the Flint Water Crisis.

3. Admit that advertisements for Veolia's website, VeoliaFlintFacts.com ("website") appeared on Google during that time.

4. Admit that Veolia's first Google search ads for the website were placed in July 2016, after Veolia launched VeoliaFlintFacts.com.

5. Admit that between December 2017 and November 2019, Veolia decreased its advertisement spend for the website.

6. Admit that between October 1, 2021 and July 28, 2022, the number of keyword searches Veolia bought for the top position on Google searches related to the Flint water crisis increased by more than 200%.

7. Admit that by October 1, 2021, Veolia was using a form of digital advertising known as "dynamic search ads."

8. Admit that Veolia's use of "dynamic search ads" was to allow Google to tailor Veolia's advertisements to the content contained on the website.

9. Admit that Veolia's use of "dynamic search ads" allowed Google to monitor information from the website, and alter the advertisements automatically, based on the content Veolia and/or its agents created for the website.

10. Admit that the initial advertisements for the website appeared for search results for the term "city of flint water bill."

11. Admit that the initial advertisements for the website appeared with headlines that included "Veolia in Flint."

12. Admit that the initial advertisements for the website appeared with a description that read: "Get the facts about Veolia in Flint."

13. Admit that the initial advertisements for the website appeared with a description that read: "Veolia Wrongly Blamed."

14. Admit that the initial advertisements for the website appeared with a description that read: "Expert advice disregarded."

15. Admit that at least one of the initial advertisements for the website appeared when anyone searched for information about the murder of Sasha Bell, one of the first plaintiffs to file a lawsuit against Veolia.

16. Admit that initial advertisements for the website appeared for search

results for terms like "city of flint water bill."

17. Admit that initial advertisements for the website appeared with the headline that included: "Veolia in Flint."

18. Admit that initial advertisements for the website appeared with a description below that read: "Get the facts about Veolia in Flint."

19. Admit that initial advertisements for the website included a headline that said: "Veolia Wrongly Blamed."

20. Admit that initial advertisements for the website included a description that read: "Expert advice disregarded."

21. Admit that in December 2019, one of the search terms that ads for the website appeared on was: "Flint Michigan water lawsuit."

22. Admit that in December 2019, advertisements for the website included the headline: "Veolia offered Flint help."

23. Admit that in December 2019, advertisements for the website included a description of Veolia's conduct, which stated: "Support and advice ignored – Read the facts here."

24. Admit that in December 2019, advertisements for the website appeared when the search term "flint water lawsuit" was used.

25. Admit that in December 2019, Veolia updated the website to include a post responding to an article published by the Flint Journal and the

Guardian, which revealed internal communications from early 2015 between Veolia executives regarding lead in Flint.

26. Admit that after the Bellwether I trial began, the content on the website shifted toward a focus on providing details about day-to-day developments at the trial.

27. Admit that after the Bellwether I trial began, posts on the website focused on discrediting or promoting certain witness' testimony.

28. Admit that after the Bellwether I trial began, posts on the website focused specifically on legal elements of the case, like: "standard of care."

29. Admit that after the Bellwether I trial began, posts on the website focused specifically on legal elements of the case, like: "reasonable degree of scientific certainty."

30. Admit that Veolia, through its agents, employees, and/or attorneys, communicated with individuals employed by, or agents of the American Tort Reform Association.

31. Admit that beginning in 2016, Tarrah Cooper Wright played a role in Veolia's public relations strategies.

32. Admit that during the Bellwether I trial, Tarrah Cooper Wright played a role in Veolia's public relations strategy.

33. Admit that between 2016 and 2022, Jonathan Karush played a role in

Veolia's public relations strategy.

34. Admit that between 2016 and 2022, Hillary Ziegenhagen played a role in Veolia's public relations strategy.

35. Admit that Veolia, through its agents, employees, and/or attorneys were aware of the contents of an Op-ed, written by Tiger Joyce of the American Tort Reform Association ("Joyce Op-ed"), BEFORE it was published by the Detroit News on or about September 1, 2022.

36. Admit that attorneys for LAN/LAD were made aware of the website prior to trial, by Veolia, through its agents, employees, and/or attorneys.

Respectfully submitted, this 9th day of September, 2022.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
605 Third Avenue, 33rd Floor
New York, New York 10158
cstern@levylaw.com
(212) 605-6200
(212) 605-6290

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 9, 2022, I caused the within First Request for Admissions to be served electronically on Veolia, as well as on all counsel of record for all parties to the above-captioned action at their e-mail addresses on file with the Court.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
605 3rd Avenue, 33rd Floor
New York, New York 10158
(212) 605-6298
(212) 605-6290 (facsimile)
cstern@levylaw.com