# EXHIBIT 5



SUBSCRIBE NOW
$1 for 6 Months

SUBSCRIBE NOW
$1 for 6 Months

[ News ]   Sports   Autos   Business   Michigan   Life + Home   Entertainment   Opinion   Obituaries     61°F   Subscribe   Sign In

MICHIGAN

# Company sued over Flint's water crisis wages digital PR war during trial

**Kayla Ruble**
The Detroit News
Published 11:00 p.m. ET Sept. 8, 2022 | Updated 12:37 a.m. ET Sept. 9, 2022

View Comments

We're always working to improve your experience. Let us know what you think.

The engineering firm originally hired by Flint to evaluate the city's troubled water system ramped up a digital advertising campaign to push its messaging in late 2021 ahead of jury selection in a multimillion-dollar civil lawsuit over the firm's culpability in Flint's lead-tainted drinking water crisis.

Veolia North America's advertising has sparked criticism from the plaintiffs' attorney and raised concerns with legal and digital marketing experts who question whether the timing of the digital advertising targeted the prospective jury pool or the judge, or if it otherwise sought to influence the outcome of the trial from beyond the courthouse walls — accusations the company rejects.

Although experts have expressed serious concerns about the practice, they add it might be protected by the First Amendment.



Veolia North America more than tripled the number of keyword searches it bought on Google for a digital ad campaign about its role in Flint's water crisis in the months before and during a civil lawsuit trial over the engineering giant's culpability in the city's water being tainted with toxic lead in 2014-2015. *Screenshot*

The ad blitz kicked off last fall after a trial date was set by a federal judge, with the number of keyword ads increasing steadily from September 2021 to July, according to publicly available data from third-party analytics sites reviewed by The Detroit News. The third-party analytics revealed Veolia more than tripled the number of keyword search terms on Google, where advertisements for its website, VeoliaFlintFacts.com, appeared during that time.

Throughout the civil trial, Veolia's digital ads with such headlines as "Veolia wrongly blamed" and "Veolia offered Flint help" appeared on computers and mobile phones nationally, including in Ann Arbor and other areas of southeast Michigan where the jury pool was selected.

"Not only did Veolia play a significant role in poisoning a community, but they've now put my clients, as well as honest witnesses, a federal judge and the legal system as a whole at the center of a well-orchestrated corporate disinformation campaign," said Corey Stern, an attorney at the New York law firm Levy Konigsberg.

"... And if a single juror was affected by Veolia's insidious efforts, then we ought to light the Constitution on fire and start holding our trials in Moscow."

During the trial, Veolia's paid search engine-generated ads at times appeared multiple times on a Google search result page that could be viewed at the federal courthouse in Ann Arbor, where lawyers for the company and engineering firm Lockwood, Andrews & Newnam (LAN) were staving off a jury verdict finding liability inside.

A judge declared a mistrial in early August after jurors deadlocked on whether the two companies were to blame for Flint's water becoming tainted with lead in 2014-15 when the Genesee County city started using the corrosive Flint River for its drinking water. Veolia was hired by the city to conduct an evaluation of Flint's water treatment plant operations.

In response to the accusations over its ads, Veolia, a Boston-based water services company and a subsidiary of the $30 billion French conglomerate Veolia, explained it "never targeted any specific state or region" with them for the Veolia

1

Flint Facts website, according to company spokeswoman Harlan Cooper Wright.

"To ensure that people who were searching for information got the truth, six years ago VNA created (VeoliaFlintFacts.com) as a comprehensive and accurate resource for anyone looking for the facts about Flint," Cooper Wright said in a statement to The News. "As a standard practice in most companies, once a new website is created, keyword-based ads are placed and VNA's ran across the United States and Canada. The ads have never targeted any specific state or region and have not been edited since the site was created.

"It's obvious that the trial lawyers are disappointed with the outcome of the trial, but any claim that (Veolia) attempted to influence the jury pool through a website that contains public information is just as weak as the case they just lost."

Advertising data from third-party analytics sites that frequently crawl search engines indicate the first Google search ads for the website were placed in July 2016 after VeoliaFlintFacts.com launched within days of being sued. Advertising from multiple analytics sites indicates a lull in Google advertising activity by late 2017 before picking up again at the end of 2019, as settlement negotiations between plaintiffs' attorneys and several entities were reaching an inflection point.

Data also shows Veolia broadened its use of Google ads in October and sustained the ad blitz through July. Between those months, the number of keyword searches Veolia bought for the top spot on Google searches related to the Flint water crisis increased 219%, according to data compiled by SEMRush and SpyFu, another third-party digital marketing website.

SEMRush and SpyFu provide digital advertising data recorded from real-time Google search result pages for hundreds of millions of keywords, offering more than a decade's worth of archived search result pages and copies of advertisements to review. While the sites only provide data on crawled keywords, they provide snapshots of trends.

While Google itself provides data about how often keywords are searched, the site does not provide historical data on what advertisements appeared on its results pages. Google also maintains a library of current advertisements placed by a company but does not maintain a public archive of past search result pages or old advertisements. As of Thursday, Veolia had at least two Flint-related ads placed with Google: "Veolia wrongly blamed" and "Veolia offered Flint help."

Archived links to a page on the Veolia Flint Facts website show by last September, the company also started employing a form of digital advertising known as dynamic search ads. That allows Google to tailor a company's advertisements to the content contained on a website. After a company elects to employ this kind of advertising campaign, Google monitors information on a specific website and alters the advertisements automatically based on the content a company itself inputs on its site. The ads are generated by Google through an automated process, but it's an option that must first be selected by the company itself.

Veolia confirmed it used dynamic search advertising for its Google ad campaigns, and reiterated the company had not changed its ads since 2016. According to the company, the difference in advertising headlines and copy is the result of Google's algorithm.

"As mentioned before the ads have not been changed by VNA since they were initially launched," said Cooper Wright in an email, noting the company has employed multiple ad groups broken out into different titles and descriptions.

While the website has been edited in the six years since it was launched, the company said the homepage continues to serve as the official URL for the website's ads.

"With dynamic ads (which are standard), Google automatically matches a URL page that is relevant to a search term the user is searching," she said. "Again, this happens on the Google side based on their algorithm of information they have on the user who is searching."

### What was seen

While Cooper Wright said the company has not edited its advertisements since launching VeoliaFlintFacts.com in 2016, internal communications, advertising analytics and archives of the website itself indicate an evolution of language.

The Veolia Flint Facts website launched in June 2016, within days of then-Michigan Attorney General Bill Schuette filing suit against the company on the state's behalf. The first advertisements visible in historical archives show the company's advertising activity began in July of that year. The records show initial

2

advertisements appeared for search results for terms like "city of flint water bill" with headlines that included "Veolia in Flint," with a description below that read: "Get the facts about Veolia in Flint." The other headline said "Veolia Wrongly Blamed" with a description that read "Expert advice disregarded."

In December 2019, one of the search terms that ads appeared on was "flint michigan water lawsuit," with the headline "Veolia offered Flint help" and below that a description that read: "Support and advice ignored - Read the facts here." Another ad appeared on the search term "flint water lawsuit" with the summary "Never hired to test for lead - expert advice disregarded." Both versions of the ads directed people to VeoliaFlintFacts.com.

In December 2019, the company also updated its website to include a post responding to an article published by the Flint Journal and the Guardian that revealed internal communications from early 2015 between Veolia executives regarding concerns about lead problems in Flint. Within weeks, a direct link to the Veolia Flint Facts post about the article began appearing at the bottom of the website's Google search ads, according to archived search results pages from January 2020.

After the civil trial started in February, the content on the website shifted toward a focus on providing details about day-to-day developments at the trial, with posts focused on discrediting or promoting certain witness testimonies, as well as posts focused specifically on elements of the case that were essential to jury deliberations.

Through its spokeswoman, Veolia denied geographically targeting its Google search ads at the state or metro level, but it did not respond to questions about whether the company — or another vendor operating on behalf of the company — had geotargeted at the ZIP code level, a common form of location-based targeting that allows advertisers to zero in on a more specific area. Google allows companies to target hundreds of ZIP codes at the same time. Veolia also did not respond when asked whether any of its advertisements had used radius targeting, also referred to as geofencing, a standard form of location targeting that serves advertisements to someone in a specific area using their real-time location.

## Veolia's role in Flint

Veolia's ad buys were part of a years-long public relations campaign aimed at promoting the crux of the company's defense in the case: that the blame for the Flint water crisis rests solely on the shoulders of the government officials who oversaw and covered up the botched water supply switch; not with the corporations staffed with water treatment professionals who were hired to provide guidance about Flint's water quality problems.

Veolia was contracted by the city of Flint in early 2015 to help Flint address the water quality problems it was dealing with in the aftermath of the switch to the river. By that point in the crisis, Flint residents were packing city council meetings and holding jugs of brown water demanding answers about the safety of their drinking water.

The company's executives recognized the potential corrosion and lead problems, and discussed the issues internally. They also privately stated that it was in the city's best interests to switch back to the Detroit water supply, according to email evidence presented at trial. In its final report to the city, however, Veolia did not make any formal recommendation related to lead or reconnecting to Detroit. The company also did not alert the public to its concerns and instead told residents that the water met safety standards.

Veolia has argued it was not provided with sufficient data from city officials to conclude that lead was a problem, despite the pronouncements that were made about it in internal emails. At the time, the city of Flint was recording incorrect data and submitting inaccurate reports to state environmental regulators.

While public attention has often focused on what role government officials — including former Gov. Rick Snyder, his cabinet members, state environmental regulators and the slate of emergency managers and city officials — played in the water crisis, the involvement of private contractors and consultants has attracted less attention.

The trial against Veolia stemmed from individual lawsuits brought by four children who lived in Flint during the city's contaminated water crisis in 2014-15. The lawsuit accuses Veolia and another engineering firm, Lockwood, Andrews & Newnam, of contributing to the manmade disaster.

3

Plaintiffs Emir Sherrod, Andrea Teed and Daylanna Ware were 3, 4, and 5 years old, respectively, when the water crisis began after Flint. The fourth plaintiff, Riley Vanderhagen, was less than a year old and still drinking baby formula.

"There is a puzzle of liability that exists in this case, and it's going to be your job to put all of the pieces together," Stern, the plaintiffs' attorney, told the jury during opening statements. "We are not here to tell you that all of the puzzle pieces consist of LAN and VNA. But we're here to tell you that plenty of them do."

### Influential or informative?

The use of digital advertising highlights the challenges judges face in keeping jurors away from messaging outside of the courthouse that rests in the palm of their hands at home, legal experts said.

"That to me is very clear circumstantial evidence that they're trying to influence the outcome of the trial. It's not like the Flint water crisis started in November 2021," said Megan La Belle, a law professor and co-director of the Law and Technology Institute at Catholic University's Columbus School of Law.

Over the winter, when potential jurors were asked to come into the courthouse to fill out a questionnaire to help the lawyers narrow down the jury pool, Veolia's advertisements could be seen at the top of search results for such search terms as "flint michigan water crisis" with headlines of "The Truth Behind the Flint water crisis" and "Flint Facts: Timeline of Veolia's Flint, Michigan Study."

On Feb. 28, when Veolia and LAN's bellwether trial got underway at the federal courthouse on Liberty Street in downtown Ann Arbor, U.S. District Court Judge Judith Levy instructed the jury "not use electronic means to investigate or communicate about the case because it's important that you decide the case based solely on the evidence here in the courtroom."

"Information on the internet or available through social media could be wrong, incomplete or not legally relevant to our case," the judge said.

Around the time the jurors were being instructed not to do any outside research on the case and not to interact with the attorneys or other parties involved, Veolia had redesigned the Veolia Flint Facts site and publicly started pushing the material on a new Twitter account called @VNAFlintFacts. It also continued to buy search ads in Michigan that continued driving Flint water-related search traffic to the website.

The expansion of the company's public relations efforts drew concern from the plaintiffs' counsel early in the trial. In the spring, the plaintiffs' attorneys sought to get information from Veolia regarding the Twitter handle.

"It appears that the Twitter handle … is being used, through an apparent coordinated effort by VNA, to live tweet trial updates from the courtroom and misinform or influence the public concerning the trial," attorneys for the plaintiffs wrote in a motion filed in May seeking to compel the defendants to produce related documents.

In a court hearing about the issue, Veolia's lawyers said the "request infringed on the First Amendment rights of numerous parties," the Flint Journal reported. The defense attorneys said they were not involved in Veolia's social media account but had provided the transcripts that were used by the company's public relations department to write the posts about the trial.

Levy denied the plaintiffs' motion to compel in July, saying the information sought was not relevant to the claims or defenses in the ongoing trial.

Jonathan Pollard, a Florida-based attorney specializing in competition law who has advocated for lawyers to engage in proactive public relations strategies involving their cases, said it's problematic for companies to make major advertising buys during a trial.

"If a company has ratcheted its public relations efforts during the trial, that raises some significant ethical concerns," Pollard said.

According to Northwestern University marketing professor Kelly Cutler, the data indicates that the advertising strategy was "very effective" at getting ads in front of people. The frequency of the advertisements and the information included in the ads themselves also helped to spread the company's message, regardless of whether someone actually clicked on the link, Cutler said.

"They're getting their point across without having to force people to click through," she said. "This website is a landing page for this Google ads campaign."

4

Historically, corporate defendants have found success in defending their litigation public relations campaigns by citing First Amendment protections, or a need to defend their company's reputation to the public.

"I doubt the judge can say you're forbidden from having that website," said Richard Marcus, a law professor at the University of California Hastings, explaining it would also likely be problematic for "the judge to say you're not allowed to make public statements."

"I think (the website) is materially different from bribery or threatening to break your leg or a lot of other things that might be considered jury tampering. That's jury influencing," said Marcus, who serves on the civil rules advisory committee for the Judicial Conference, the body that sets policies for the federal court system.

One example where a party's actions were deemed problematic occurred in 2002 in Colorado. Plaintiffs in a case against Walmart took out local television advertisements promoting their case. As a result of the ads, a judge granted Walmart a change of venue to a different jurisdiction.

In another instance involving a lawsuit against Bayer about health problems allegedly caused by a cholesterol drug, the pharmaceutical company's public relations staff mailed letters to thousands of residents promoting the company's "tremendous contributions" to global health and urging potential jurors to "keep an open mind." Upon learning about the letters, the judge in the case called for an investigation, according to a New York Times report at the time. The local district attorney's office ultimately declined to charge the company with jury tampering.

As the plaintiffs' attorneys prepare for a retrial of the Flint water case, the new insight into Veolia's public relations strategy exposes what experts say is a glaring, but overlooked potential threat to the legal system that has the capacity to jeopardize the impartiality of jury pools.

"It's something that I think companies are doing that is flying under the radar because they can sort of mask it. ... It's easy to skirt the issue," La Belle said. "If there's going to be a second trial, this issue becomes incredibly important."

*KRuble@detroitnews.com*

   



**The Detroit News**

| About | Support | Stay Connected | Our Partners |
|---|---|---|---|
| Staff Directory | Contact Us | Subscribe Today | Jobs |
| Site Map | Advertise Your Business | Newsletters | Cars |
| Legals | Buy and Sell | Mobile Apps | Homes |
| Terms of Service | Licensing & Reprints | Facebook | Classifieds |
| Privacy Policy | Help Center | Twitter | Renvy.com |
| Your California Privacy Rights / Privacy Policy | Subscriber Guide | eNewspaper | Michigan.com |
| Cookie Settings | My Account | Archives | |
| | Give Feedback | RSS Feeds | |

© 2022 www.detroitnews.com. All rights reserved.