# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WALTERS, et al.,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>VEOLIA NORTH AMERICA, INC., et al.,<br><br>　　　　Defendants. | Case No. 5:17-cv-10164-JEL-KGA<br><br>Hon. Judith E. Levy<br>Magistrate Judge Kimberly G. Altman |

**OBJECTIONS AND RESPONSES OF VEOLIA DEFENDANTS TO BELLWETHER III PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS**

Pursuant to Rule 36(a)(5) of the Federal Rules of Civil Procedure, Defendants Veolia Water North America Operating Services, LLC; Veolia North America, Inc.; and Veolia North America, LLC (collectively, "VNA"), by and through undersigned counsel, respond and object to the request for admissions issued by Plaintiffs in connection with the above-captioned matter on or about September 9, 2022 ("the RFA") as follows:

**GENERAL OBJECTIONS**

　　1.　　VNA's response to any of the requests contained in the RFA (each, a "Request," collectively, the "Requests") is not an admission or acknowledgement that such Requests seek information that is relevant to the subject matter of the above-captioned case.

　　2.　　VNA objects to the Requests to the extent they seek information that is not relevant to the parties' claims or defenses or not proportional to the needs of the case.

　　3.　　VNA objects to the Requests to the extent they seek information or admissions concerning matters that are privileged or otherwise protected from disclosure pursuant to the attorney-client privilege, the work-product doctrine, the joint defense privilege or any other

applicable privilege or immunity. To the extent that such information is inadvertently produced, the production of such information shall not constitute a waiver of VNA's right to assert the applicability of any privilege or immunity to the information, and any such information shall be subject to return on demand.

4. VNA objects to the Requests to the extent they seek information that is not within VNA's possession, custody, or control.

5. VNA objects to the Requests to the extent they seek cumulative or duplicative information.

6. VNA objects to the Requests to the extent they call for confidential information unrelated to the case.

7. VNA objects to the Requests to the extent they are unduly vague, precluding VNA from determining with sufficient precision the information that is sought.

8. VNA expressly reserves its right to modify, amend, or supplement its objections.

## PRELIMINARY STATEMENT

Subject to General Objections, and without waiving its objections that each and every one of the Requests seek information that is not relevant to any party's claims or defenses, unduly burdensome, and disproportionate to the needs of the case, VNA responds to the Requests as follows:

1. In 2016, VNA began purchasing sponsored search results from Google in connection with the Flint Water Crisis. These advertisements included headlines and a link to the www.VeoliaFlintFacts.com website ("website"). As VNA understands it, Google's sponsored search advertising program uses an algorithm that considers, among other things, (1) the location of Google's users and (2) whether the text of a user's queries match an advertiser's "key words."

As a general matter, VNA understands that, when a user in a designated location enters a search that matches or "hits on" an advertiser's key words, the Google search result page includes at the top of the page a sponsored search result with a link to the website. The sponsored search result and the link are labeled (in bold text) as an "Ad."

2. VNA understands that Plaintiffs (citing a September 8, 2022 article in *The Detroit News*) and the Court have expressed concern about possible "geo-targeting" of these sponsored search results. VNA understands that Google's sponsored search results advertising program has the ability to allow advertisers to target specific regions, states, counties, cities, neighborhoods, zip codes, locations, or radiuses from a specific point. **VNA never utilized these geo-targeting or geo-fencing features.** VNA instead requested that Google serve its advertisements to all users whose queries hit on VNA's key words so long as those users were located anywhere in the United States or Canada.

3. As for key words, in July 2016, when it began utilizing the sponsored search result program, VNA provided Google with a short list of key word combinations. Fourteen of these key word combinations were enabled in 2016. Two of these key word combinations were subsequently paused. VNA has not otherwise changed the key words, which remain in place to this day.

4. Regarding the text of the sponsored advertisements, in July 2016 VNA provided Google with text for four headlines ("Veolia offered Flint help," "Veolia wrongly blamed," "Veolia advice ignored," "Veolia Not to Blame") and six descriptions ("Never hired to test for lead," "Expert advice disregarded," "Support and advice ignored," "Read the facts here," "Recommendations not heeded - Discover the truth about Flint," "Veolia hired for limited study- Work unrelated to lead issues"). Two of these headlines ("Veolia advice ignored" and "Veolia

3

Not to Blame") and two of these descriptions ( "Recommendations not heeded - Discover the truth about Flint" and "Veolia hired for limited study-Work unrelated to lead issues") were subsequently paused. VNA has not otherwise changed the headlines or descriptions, which remain in place to this day.

5. VNA's participation in this advertising program has been limited. Since the advertisements' inception, users have "clicked through" to the website through these advertisements approximately 19,000 times, resulting in total, cumulative charges to VNA of approximately $42,000.

6. Plaintiffs have suggested (citing the same article) that VNA may have intentionally or purposefully "ramped up" or increased the number of sponsored search results to Google users in connection with the Bellwether I trial. That is inaccurate. As VNA understands it, the number of sponsored search results that are served in any given time period is a function of the number of user searches that "hit on" or match VNA's key words. Similarly, it is VNA's understanding that, because Google charges VNA based on the number of users who "click through" to its website, VNA's expenditures for this program vary from month-to-month based in large part on the number of searches by Google users who click one of VNA's sponsored search result.

7. Since July 2016, VNA has purchased both "reactive" and "dynamic" advertisements. As VNA understands it, the difference between these advertisements is that "reactive" advertisements will always link a user to the a website's homepage, whereas "dynamic" advertising allows for users to be linked to a specific page within a website if that page is more relevant to the Google user's search. VNA has utilized the "reactive" and "dynamic" search feature of Google since July 2016. As VNA understands it, a user's geographic location is not relevant to whether a "reactive" or a "dynamic" search feature will be used by Google's algorithm.

4

8. Utilizing Google ad words is a routine part of a company's public relations strategy. VNA has not utilized this program for any improper purpose, and it categorically denies that it sought to use these advertisements as part of an effort to influence any judicial proceeding or any past, prospective, or potential jurors. Rather, the website was intended to be a one-stop shop to provide VNA's position on the Flint litigation and the Flint Water Crisis to Veolia's stakeholders, including regulators, investors, and current and potential customers. The Google advertising program was designed and intended to assist interested parties in locating the website.

## SPECIFIC OBJECTIONS AND RESPONSES

1. Admit that Veolia's keyword advertisements related to the Flint Water Crisis increased between September 1, 2021 and July 28, 2022.

**Objections:** Rule 36(a)(1)(A) only authorizes requests for admission that are "within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either." Rule 26(b)(1), in turn, limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." VNA objects to this Request because it seeks information that is not relevant to any party's claims or defenses. VNA further objects because the Request is unduly burdensome, and harassing. VNA further objects to the Request to the extent it could be construed to seek privileged information. VNA further objects to the Request because it infringes on the First Amendment rights of numerous parties, including VNA, co-defendants, and non-parties to this litigation, which all have constitutionally protected rights to express opinions regarding the subject matter of the trial. Finally, Veolia further objects to the Request as vague to the extent that the phrase "keyword advertisements" is ambiguous and undefined.

**Response:** Subject to and without waiving the foregoing objections, VNA responds that in 2016, it supplied certain key words to Google for Google to use to promote the website. As set

forth in the Preliminary Statement above, at no time after 2016 did VNA increase the number of key words for Google to use to promote the website. Any increase in advertisements during this period was a function of increased Google searches involving VNA's key words.

2. Admit that between September 1, 2021 and July 28, 2022, Veolia more than tripled the number of keyword search terms on Google in relation to the Flint Water Crisis.

**Objections:** VNA incorporates and repeats its Objections and Response to Request #1.

**Response:** Subject to and without waiving the foregoing objections, VNA denies this Request.

3. Admit that advertisements for Veolia's website, VeoliaFlintFacts.com ("website") appeared on Google during that time.

**Objections:** VNA incorporates and repeats its Objections to Request #1. VNA further objects that the terms "advertisements" is ambiguous and undefined. VNA further objects that the phrase "that time" is ambiguous and undefined.

**Response**: Subject to and without waiving the foregoing objections, VNA responds that, between 2016 and the present, Google, in response to user searches, and through processes run by Google, posted sponsored search results with links that, when clicked on, would take users to the website.

4. Admit that Veolia's first Google search ads for the website were placed in July 2016, after Veolia launched VeoliaFlintFacts.com.

**Objections:** VNA incorporates and repeats its Objections to Request #1. VNA further objects to the Request as vague in that the term "search ads" is ambiguous and undefined.

**Response**: Subject to and without waiving the foregoing objections, VNA responds that it first purchased sponsored search results for the website after the website was launched.

5. Admit that between December 2017 and November 2019, Veolia decreased its advertisement spend for the website.

**Objections:** VNA incorporates and repeats its Objections to Request #1. VNA further objects to the phrase "decreased its advertisement spend" as vague and ambiguous to the extent it suggests VNA deliberately decreased its advertisement spending at the beginning of that period.

**Response:** Subject to and without waiving the foregoing objections, VNA admits that its advertisement expenses for the website were lower during this period than they were before this period.

6. Admit that between October 1, 2021 and July 28, 2022, the number of keyword searches Veolia bought for the top position on Google searches related to the Flint water crisis increased by more than 200%.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the phrase "Veolia bought" as vague and ambiguous to the extent it suggests VNA made discrete purchases for additional keywords between October 1, 2021 and July 28, 2022. VNA also objects to the phrase "top position" as vague and undefined.

**Response:** Subject to and without waiving the foregoing objections, VNA denies this request to the extent it requests that VNA admit it took any affirmative action resulting in an increase in charges from Google associated with advertisements for the website. VNA further denies: (a) that that it ever purchased "searches;" and (b) that it ever purchased the "top position" of any Google search result. VNA further states that any increase in the number of advertisements during this period was a function of increased searches by Google users utilizing the key words provided to Google by VNA in 2016.

7. Admit that by October 1, 2021, Veolia was using a form of digital advertising known as "dynamic search ads."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

7

**Response:** Subject to and without waiving the foregoing objections, VNA admits that, beginning in July 2016, it has utilized a Google feature known as "dynamic search ads," as that function is described in the Preliminary Statement. As described in the Preliminary Statement, these "dynamic search ads" simply referred a user to a specific page on the website, rather than the website's homepage.

8. Admit that Veolia's use of "dynamic search ads" was to allow Google to tailor Veolia's advertisements to the content contained on the website.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

**Response:** Subject to and without waiving the foregoing objections, VNA denies this Request.

9. Admit that Veolia's use of "dynamic search ads" allowed Google to monitor information from the website, and alter the advertisements automatically, based on the content Veolia and/or its agents created for the website.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

**Response:** Subject to and without waiving the foregoing objections, VNA denies this Request.

10. Admit that the initial advertisements for the website appeared for search results for the term "city of flint water bill."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

**Response:** Subject to and without waiving the foregoing objects, VNA responds to this Request by incorporating and repeating its Preliminary Statement.

11. Admit that the initial advertisements for the website appeared with headlines that included "Veolia in Flint."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that "initial advertisements" is undefined.

**Response:** Subject to and without waiving the foregoing objects, VNA denies this Request.

12. Admit that the initial advertisements for the website appeared with a description that read: "Get the facts about Veolia in Flint."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that "initial advertisements" is undefined.

**Response:** Subject to and without waiving the foregoing objects, VNA denies this Request.

13. Admit that the initial advertisements for the website appeared with a description that read: "Veolia Wrongly Blamed."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that "initial advertisements" is undefined.

**Response:** Subject to and without waiving the foregoing objects, VNA admits this Request.

14. Admit that the initial advertisements for the website appeared with a description that read: "Expert advice disregarded."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that "initial advertisements" is undefined.

**Response:** Subject to and without waiving the foregoing objects, VNA admits this Request.

15. Admit that at least one of the initial advertisements for the website appeared when anyone searched for information about the murder of Sasha Bell, one of the first plaintiffs to file a lawsuit against Veolia.

9

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that "initial advertisements" is undefined.

**Response:** Subject to and without waiving the foregoing objects, VNA denies this Request.

16. Admit that initial advertisements for the website appeared for search results for terms like "city of flint water bill."

**Objections and Response:** VNA incorporates and repeats its Objections and Response to Request #10.

17. Admit that initial advertisements for the website appeared with the headline that included: "Veolia in Flint."

**Objections and Response:** VNA incorporates and repeats its Objections and Response to Request #11.

18. Admit that initial advertisements for the website appeared with a description below that read: "Get the facts about Veolia in Flint."

**Objections and Response:** VNA incorporates and repeats its Objections and Response to Request #12.

19. Admit that initial advertisements for the website included a headline that said: "Veolia Wrongly Blamed."

**Objections and Response:** VNA incorporates and repeats its Objections and Response to Request #13.

20. Admit that initial advertisements for the website included a description that read: "Expert advice disregarded."

**Objections and Response:** VNA incorporates and repeats its Objections and Response to Request #14.

10

21. Admit that in December 2019, one of the search terms that ads for the website appeared on was: "Flint Michigan water lawsuit."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the Request as vague and ambiguous to the extent that it speaks of ads "appearing on" search terms.

**Response:** Subject to and without waiving the foregoing objections, VNA responds to this Request by incorporating and repeating its Preliminary Statement.

22. Admit that in December 2019, advertisements for the website included the headline: "Veolia offered Flint help."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

**Response:** Subject to and without waiving the foregoing objects, VNA responds to this Request by incorporating and repeating its Preliminary Statement.

23. Admit that in December 2019, advertisements for the website included a description of Veolia's conduct, which stated: "Support and advice ignored – Read the facts here."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

**Response:** Subject to and without waiving the foregoing objects, VNA responds to this Request by incorporating and repeating its Preliminary Statement.

24. Admit that in December 2019, advertisements for the website appeared when the search term "flint water lawsuit" was used.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1. VNA further objects to the request as irrelevant in that it seeks information about a search executed by users rather than search terms supplied by VNA to Google.

**Response:** Subject to and without waiving the foregoing objections, VNA admits this Request. VNA adds that this search string has resulted in 40 visits to the website since July 2016.

25. Admit that in December 2019, Veolia updated the website to include a post responding to an article published by the Flint Journal and the Guardian, which revealed internal communications from early 2015 between Veolia executives regarding lead in Flint.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

26. Admit that after the Bellwether I trial began, the content on the website shifted toward a focus on providing details about day-to-day developments at the trial.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1 and notes that the website speaks for itself.

27. Admit that after the Bellwether I trial began, posts on the website focused on discrediting or promoting certain witness' testimony.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1 and notes that the website speaks for itself. VNA further objects to this Request on the grounds that the terms "discrediting" and "promoting" are vague and undefined.

28. Admit that after the Bellwether I trial began, posts on the website focused specifically on legal elements of the case, like: "standard of care."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1 and notes that the website speaks for itself.

29. Admit that after the Bellwether I trial began, posts on the website focused specifically on legal elements of the case, like: "reasonable degree of scientific certainty."

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1 and notes that the website speaks for itself.

30. Admit that Veolia, through its agents, employees, and/or attorneys, communicated with individuals employed by, or agents of the American Tort Reform Association.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

31. Admit that beginning in 2016, Tarrah Cooper Wright played a role in Veolia's public relations strategies.

12

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

32. Admit that during the Bellwether I trial, Tarrah Cooper Wright played a role in Veolia's public relations strategy.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

33. Admit that between 2016 and 2022, Jonathan Karush played a role in Veolia's public relations strategy.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

34. Admit that between 2016 and 2022, Hillary Ziegenhagen played a role in Veolia's public relations strategy.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

35. Admit that Veolia, through its agents, employees, and/or attorneys were aware of the contents of an Op-ed, written by Tiger Joyce of the American Tort Reform Association ("Joyce Op-ed"), BEFORE it was published by the Detroit News on or about September 1, 2022.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.

36. Admit that attorneys for LAN/LAD were made aware of the website prior to trial, by Veolia, through its agents, employees, and/or attorneys.

**Objections:** VNA incorporates and repeats its Specific Objections to Request #1.


Dated: November 4, 2022

                                                */s/ Michael A. Olsen*
                                                MAYER BROWN LLP
                                                71 South Wacker Drive
                                                Chicago, IL 60606

                                                *Counsel for VNA Defendants*

## CERTIFICATE OF SERVICE

      I, Alaina N. Devine, hereby certify that on November 4, 2022, I caused the within Responses and Objections to be served electronically on counsel of record for all parties to the above-captioned action at their e-mail addresses on file with the Court.

      /s/ Alaina N. Devine

      Alaina N. Devine

      adevine@campbell-trial-lawyers.com