## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE FLINT WATER LITIGATION

Case No. 5:16-cv-10444-JEL-MKM
Hon. Judith E. Levy

---

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR PROTECTIVE ORDER BARRING THE DEPOSITION OF FRANCIS FERRARA

Pursuant to Federal Rule of Civil Procedure 26, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move for a protective order prohibiting Plaintiffs from taking the deposition of VNA's former in-house counsel and the supervisor of VNA's trial efforts, Francis Ferrara. Plaintiffs claim that Mr. Ferrara has discoverable information regarding the @VNAFlintFacts Twitter handle and www.veoliaflintfacts.com website. But they have fallen far short of the showing they need to justify the highly "disfavored" practice of deposing their opponent's attorney. *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999).

Plaintiffs' entire justification for deposing Mr. Ferrara is their assertion that VNA has targeted jurors through public statements made on the Internet. Plaintiffs believe that Mr. Ferrara has information about VNA's public-relations efforts. But

1

as a party to a civil action, VNA has a First Amendment right to discuss the case against it. *CBS Inc. v. Young*, 522 F.2d 234, 241-42 (6th Cir. 1975). Like any person or business, VNA can respond to the accusations against it in the venues where its reputation has been attacked. In fact, VNA's free-speech rights are co-extensive with the right of the media to comment upon pending litigation. *See United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987). This Court already has quashed Plaintiffs' attempt to extract discovery responses from The Detroit News. *See* Order Granting Mot. to Quash, *In re Flint Water Cases* (E.D. Mich. Nov. 17, 2022), ECF No. 2267, PageID.74087-74097. VNA's First Amendment rights are equally protected, and its speech will be unconstitutionally chilled if the consequence of publicizing its opinion on litigation against it is that its long-time in-house counsel is subjected to a deposition. Having to prepare in-house counsel for a deposition is burdensome, and whenever attorneys are deposed regarding their clients, the attorneys risk accidentally disclosing privileged information.

Moreover, in the Sixth Circuit, parties may not depose opposing counsel unless they can show that "the information sought is relevant and nonprivileged," "no other means exist to obtain the information," and "the information is crucial to the preparation of the case." *See Nationwide Mut. Ins. v. Home Ins.*, 278 F.3d 621, 628 (6th Cir. 2002) (adopting the factors outlined in *Shelton v. Am. Motors Corp.*,

805 F.2d 1323, 1327 (8th Cir. 1986)) (internal quotation marks omitted).  None of those requirements is met here.

Regarding the first *Shelton* factor, the information is not relevant because nothing about the @VNAFlintFacts Twitter handle and www.veoliaflintfacts.com website makes any fact relevant to "any party's claim or defense" in this action more or less likely.  Fed. R. Civ. P. 26(b)(1).  Plaintiffs contend that the information is highly relevant to their assertion that VNA targeted jurors—but no court has ever held that publishing statements on Twitter or on a website like www.veoliaflintsfacts.com constitutes improper conduct that could prejudice a fair trial.  In fact, it is constitutionally protected speech, and neither the Court's nor the parties' time should be wasted on this patently irrelevant line of discovery.

Second, virtually all of the information that Mr. Ferrara may have about the @VNAFlintFacts Twitter account and the www.veoliaflintfacts.come website is privileged because, to the extent he would have been included in those conversations, it would have been for the purpose of providing legal advice.

Third, while any discovery on this topic is unjustified, Mr. Ferrara is not the only source of information about VNA's public statements.  In fact, Plaintiffs have been pursuing depositions against at least half a dozen other individuals seeking the same information, and have issued requests for documents and requests for

admission to VNA on this topic as well.  There is no conceivable need to depose VNA's in-house counsel.

Fourth, the information Plaintiffs seek is not "crucial to the preparation of [Plaintiffs'] case." *Nationwide*, 278 F.3d at 628.  In fact, the information would not help Plaintiffs prove a single element of their professional-negligence claim against VNA.  Because it is not relevant at all, Plaintiffs have no need for this information to pursue their claims.

Finally, even apart from the *Shelton* factors and the chilling effect of this discovery on VNA's First Amendment rights, the discovery sought by Plaintiffs would burden and harass both Mr. Ferrara and VNA, and should be prohibited on that basis.

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel about this motion.  After VNA explained the nature and basis for the motion, Plaintiffs' counsel stated that they would oppose it.

4

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: December 20, 2022

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| This Document Relates To: | |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM |
| *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |

---

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER BARRING THE DEPOSITION OF FRANCIS FERRARA

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court grant a protective order barring the deposition of VNA's former in-house counsel Francis Ferrara because the discovery would chill speech protected by the First Amendment?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

2.  Should the Court grant a protective order barring the deposition of VNA's former in-house counsel Francis Ferrara because Plaintiffs cannot satisfy the heightened requirements for deposing opposing counsel outlined in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), which were adopted by the Sixth Circuit in *Nationwide Mut. Ins. v. Home Ins.*, 278 F.3d 621 (6th Cir. 2002)?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

3.  Even if the *Shelton* factors do not apply, should the Court grant a protective order barring the deposition of VNA's former in-house counsel Francis Ferrara because any non-privileged information he may have about VNA's public-relations statements is not relevant?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

ii

4.   Should the Court grant a protective order barring the deposition of VNA's former in-house counsel Francis Ferrara because the discovery would be harassing and unduly burdensome?

>   **VNA answers:**  "Yes."

>   **Plaintiffs answer:**  "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)

*Crabb v. KFC Nat'l Mgmt. Co.*, No. 91-5474, 1992 WL 1321 (6th Cir. Jan. 6, 1992)

*Nationwide Mut. Ins. v. Home Ins.*, 278 F.3d 621 (6th Cir. 2002)

*Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986)

*State v. Springer-Ertl*, 610 N.W.2d 768 (S.D. 2000)

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987)

Fed. R. Civ. P. 26(b)(1)

Fed. R. Civ. P. 26(c)(1)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................4

    A.    The Court Denies Plaintiffs' May 2022 Motion To Compel ..............5

    B.    Plaintiffs Seek Discovery From Public-Relations Professionals ........5

    C.    Plaintiffs Subpoena The Detroit News Editors And ATRA ...............7

    D.    Plaintiffs Issue Requests For Admission And Requests For Documents To VNA ...........................................................................8

    E.    Plaintiffs Subpoena Google, LLC And Twitter ..................................9

    F.    Plaintiffs Pursue Discovery From VNA's Parent Company ...............9

    G.    Plaintiffs Seek Mr. Ferrara's Deposition ..........................................10

LEGAL STANDARD ..........................................................................10

ARGUMENT ......................................................................................12

THE COURT SHOULD PROHIBIT PLAINTIFFS FROM DEPOSING VNA'S FORMER IN-HOUSE COUNSEL, FRANCIS FERRARA .....................12

    A.    Deposing Mr. Ferrara Would Impermissibly Chill VNA's Exercise Of Its First Amendment Rights ...........................................12

    B.    Plaintiffs Cannot Satisfy The Heightened Showing Needed To Justify A Deposition Of Opposing Counsel Under *Shelton* ..............17

        1.    Information About Public Statements VNA Made Years After The Water Crisis Ended Is Irrelevant ...........................17

        2.    Much Of The Information That Mr. Ferrara Has Is Privileged .................................................................................19

        3.    There Are Other Means To Obtain Information About VNA's Public Statements ...........................................................21

        4.    Information About VNA's Public Statements Is Not Crucial To The Preparation Of Plaintiffs' Case .....................23

        5.    Mr. Ferrara's Deposition Should Be Prohibited Even If *Shelton* Does Not Apply ...........................................................23

    C.    The Discovery Would Unduly Burden And Harass Mr. Ferrara And VNA ...........................................................................................24

# TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION ...................................................................................................25

## INTRODUCTION

This Court should prohibit Plaintiffs from taking the deposition of VNA's recently retired in-house counsel, Francis Ferrara.

For years, VNA has been subjected to unjustified accusations of misconduct related to its work in Flint.  Like any other person or business, VNA has the First Amendment right to respond to these accusations, especially in the same venues where its reputation has been attacked.  There is nothing underhanded or sinister about VNA's desire to respond and make its position known in the venues where its conduct is being discussed.  VNA has existing customers and future customers (many of whom must be responsive to concerns voiced by members of the public) who no doubt hear these serious allegations and wonder whether they are true.  Thus, when people search for stories on the Internet that are likely to include accusations against VNA, VNA wants to make sure that they have access to a resource that explains VNA's side as well.

VNA's public response to Plaintiffs' allegations is not only understandable, it is constitutionally protected.  The Sixth Circuit has made it clear that defendants in civil actions have a First Amendment right to publicly discuss their cases.  *See CBS Inc. v. Young*, 522 F.2d 234, 241-42 (6th Cir. 1975).  This right is coextensive with the right of the media to comment on the litigation.  *United States v. Ford*, 830 F.2d 596, 598 (6th Cir. 1987).  In this case, the media commentary has been extensive,

1

particularly because the Bellwether I trial was livestreamed, so that anyone in the world could watch.  VNA has every right to engage in speech about the litigation—which is simply counter-speech against its public critics.

Despite this unequivocal, constitutionally based rule, Plaintiffs have spent months accusing VNA of trying to influence jurors based on nothing more than VNA's public statements on the Internet.  Plaintiffs have launched a broad campaign to obtain information about the genesis of the statements on the @VNAFlintFacts Twitter account, the www.veoliaflintfacts.com website, and any Google advertising VNA may have purchased to bring attention to those statements.  To that end, Plaintiffs have issued requests for depositions and documents from:

- two editors of The Detroit News,

- employees of the American Tort Reform Association (ATRA),

- Google and Twitter,

- current and former VNA employees from the communications and marketing departments,

- Laurent Obadia, a senior executive vice president of VNA's parent company, who already has been deposed once in this matter,

- Pierre Farcot, a former employee in Mr. Obadia's department in VNA's parent company, and

- outside public relations professionals from multiple firms that have provided services to VNA.

Plaintiffs also sent VNA requests for documents and requests for admissions seeking information and admissions about VNA's Google ad buys and about VNA's

relationships with various public-relations professionals and ATRA.

This discovery is not yet completed, but the information that Plaintiffs have obtained to date has unequivocally shown that VNA at no point engaged in any efforts to target members of the jury from the Bellwether I trial or the venire pool of any future trial. Despite that fact, Plaintiffs' counsel have now set their sights on Mr. Ferrara, VNA's long-time in-house counsel and the individual responsible for supervising VNA's litigation strategy in this case. Plaintiffs desire to depose Mr. Ferrara because, at some point during the Bellwether I trial, Plaintiffs' counsel saw Mr. Ferrara speaking with Mr. Farcot—the person Plaintiffs believe is responsible for the @VNAFlintFacts Twitter handle. Plaintiffs' counsel now contend that witnessing that conversation entitles them to depose Mr. Ferrara about VNA's public statements regarding this litigation.

Plaintiffs have failed to make the extraordinary showing needed to justify deposing an opposing counsel.

First, their attempt to depose opposing counsel is constitutionally impermissible. The sole goal of Mr. Ferrara's deposition is to seek information about VNA's public statements. As a discovery request backed by the authority of the federal courts, Plaintiffs' notice to depose Mr. Ferrara—if enforced—would be government action that imposes a chilling effect on VNA's constitutionally protected speech.

3

Second, Plaintiffs cannot make the heightened showing required under *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), for requests to depose opposing counsel. *See Nationwide Mut. Ins. v. Home Ins.*, 278 F.3d 621, 628 (6th Cir. 2002) (adopting *Shelton* factors). Plaintiffs cannot show that "the information sought is relevant and nonprivileged," "no other means exist to obtain the information," and "the information is crucial to the preparation of the case." *Id.*

Finally, Mr. Ferrara's deposition would unduly burden and harass both Mr. Ferrara and VNA. Neither should have to prepare for or attend a deposition that serves more to punish VNA for voicing opinions that Plaintiffs' counsel happens to dislike, than to uncover anything relevant to Plaintiffs' claims.

This Court already has quashed a subpoena that Plaintiffs issued in their quest to paint VNA's constitutionally protected speech as wrongful. This Court recognized that Plaintiffs' attempt to glean information from The Detroit News was patently improper, in part because of the critical—and constitutionally protected—role played by the media in our society. *See* Order Granting Mot. to Quash 8-9, ECF No. 2267, PageID.74094-74095. The sanctity of the attorney-client relationship is no less critical, and VNA's right to publicly opine about the litigation against it is no less constitutionally protected. The Court should bar Mr. Ferrara's deposition.

## BACKGROUND

Plaintiffs' request to depose Mr. Ferrara is part of a much broader campaign

in which Plaintiffs are seeking to substantiate their claim that VNA has targeted jurors by, among other things, posting information on the @VNAFlintFacts Twitter account and the www.veoliaflintfacts.com website.

### A.    The Court Denies Plaintiffs' May 2022 Motion To Compel

Plaintiffs' campaign started during the Bellwether I trial, when Plaintiffs moved to compel VNA to produce documents related to a handful of tweets from the @VNAFlintFacts Twitter account.  In that motion, Plaintiffs asserted that the tweets were part of "an apparent coordinated effort by VNA" to "misinform or influence the public concerning the trial."  Pls.' Mot. to Compel, *Walters v. City of Flint*, No. 17-10164 (E.D. Mich. May 19, 2022), ECF No. 840, PageID.52727. Plaintiffs also claimed that they needed the discovery to determine whether Defendants are attempting to "misinform or influence . . . current jurors[] and potential jurors in future trials."  Pls.' Reply ISO Mot. to Compel, *Walters v. City of Flint*, No. 17-10164 (E.D. Mich. June 1, 2022), ECF No. 856, PageID.53315.

The Court denied the motion to compel.  Information about the @VNAFlintFacts handle, this Court explained, "is not relevant to the *claims or defenses* in the ongoing Bellwether I trial."  Order 5, *Walters v. City of Flint*, No. 17-10164 (E.D. Mich. July 11, 2022), ECF No. 870, PageID.53692 (July 2022 Order).

### B.    Plaintiffs Seek Discovery From Public-Relations Professionals

Despite the Court's denial of Plaintiffs' motion to compel, Plaintiffs sought

more discovery about VNA's public-relations efforts.  Beginning in August 2022,

Plaintiffs issued subpoenas or notices of deposition to:

- Tarrah Cooper Wright, the founder of the public-relations firm Rise Strategy Group, which VNA hired in February 2022 to assist in the company's public relations surrounding the bellwether trial[1];

- Carrie Griffiths, VNA's executive vice president for communications;

- Hillary Ziegenhagen and Jon Karush, who are third-party contractors who have provided public-relations services to VNA in the past, and Frost Prioleau, who is the CEO of an internet advertising company;

- Paul Whitmore, Elinor Haider, and Karole Colangelo, who are former VNA employees.  Mr. Whitmore was already deposed in January 2020; and

- Jace Connor, VNA's Director of Digital Public Relations.

At this point, Plaintiffs have taken the depositions of Ms. Cooper Wright, Ms.

Griffiths, Mr. Karush, Ms. Colangelo, and Mr. Connor.  Not one of these depositions

has produced evidence that VNA targeted jurors in any fashion.  In fact, Mr. Con-

nor—who was responsible for VNA's Google ad buys—testified that VNA made a

---

[1]    Ms. Cooper Wright filed a motion to quash the subpoena against her in the U.S. District Court for the Northern District of Illinois.  Magistrate Judge Kim granted the motion to the extent Plaintiffs sought documents.  He allowed Plaintiffs to depose Ms. Cooper Wright for up to seven hours because Plaintiffs told him that there was a possibility that VNA employees had made admissions to her about their work in Flint, a possibility that Plaintiffs based on speculation.  *See* Minute Entry, *In re Subpoena to Rise Strategy Grp. & Tarrah Cooper Wright*, No. 22-4810, ECF No. 20, PageID.420-421 (N.D. Ill. Oct. 3, 2022).  Ms. Cooper Wright's subsequent deposition testimony proved that Plaintiffs' speculation was wholly inaccurate— VNA at no point made admissions to her regarding its time in Flint.

modest Google ad purchase in 2016 to promote its www.veoliaflintfacts.com web-site, that the size of the ad buy has not changed since 2016, and that VNA at no point "geo-targeted" Michigan, let alone the area from which the Eastern District draws its jury pool.  *See* Ex. 1, Connor Dep. Tr. 103:11-113:19 (describing the scope, budget, purpose, and audience of the Google ads purchase).[2]  He also explained that, unlike some types of online ads that appear as pop-ups, the ads purchased through Google appear only after someone has run a Google search for the key terms chosen by the ad purchaser.  *Id*. at 106:20-107:15.  Who sees the ad is therefore highly de-pendent on what people are interested in.  One would naturally anticipate that indi-viduals in Michigan are more likely to search for information about the Flint water crisis than individuals in other states and that more people would perform Google searches on the water crisis when the water crisis—or the litigation regarding the water crisis—is in the news.  These trends happen without VNA changing its Google ad purchase in any way.

### C.    Plaintiffs Subpoena The Detroit News Editors And ATRA

On August 31, 2022, The Detroit News published an opinion piece by Tiger Joyce, the president of the American Tort Reform Association; the opinion piece criticized Plaintiffs' counsel for bringing this lawsuit against VNA and LAN.  *See*

---

[2]    "Geo-targeting" refers to the practice of limiting an ad campaign so that the ads appear only to individuals within a particular geographic area.

Mot. to Quash Ex. A, *In re Flint Water Cases*, No. 16-10444 (E.D. Mich. Oct. 17, 2022), ECF No. 2233-2, PageID.73830-73832.

Plaintiffs' counsel immediately issued subpoenas to Tiger Joyce, ATRA's public-affairs manager, and two editors at The Detroit News, and they also threatened to sue attorneys representing The Detroit News. *See* Mot. to Quash Ex. D, PageID.73846-73849. The subpoenas sought information about how the op-ed came about and whether VNA or VNA's public-relations providers were behind its publication. *See* Mot. to Quash Ex. B, PageID.73834-73838.

This Court quashed the subpoena. *See* Order Granting Mot. to Quash, ECF No. 2267, PageID.74087-74097. "'Given the important role that newsgathering plays in a free society,'" the Court explained, "'courts must be vigilant against attempts by civil litigants to turn non-party journalists or newspapers into their private discovery agents.'" *Id.* at 8, PageID.74094 (alteration omitted; quoting *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395, 406 (E.D. Mich. 2003)). Further, Plaintiffs failed to show any link between the ATRA opinion piece and Plaintiffs' accusations that VNA was trying to influence jurors. *Id.* at 9-10, PageID.74095-74096.

### D. Plaintiffs Issue Requests For Admission And Requests For Documents To VNA

The Bellwether III Plaintiffs served their first Requests for Admission and Requests for Production of Documents on VNA in September 2022. The discovery

requests focused almost entirely on obtaining information about VNA's public relations and whether VNA played a role in the ATRA op-ed.  VNA responded to the Requests for Admission and objected to the Requests for Production of Documents. Plaintiffs have filed a motion to compel VNA's responses; the briefing on that motion is not yet complete.  *See* Pls.' Mot. to Compel, *In re Flint Water Cases*, No. 16-10444 (E.D. Mich. Dec. 12, 2022), ECF No. 2298, PageID.74245-74274.

### E.    Plaintiffs Subpoena Google, LLC And Twitter

In October 2022, Plaintiffs issued subpoenas to Google, LLC and Twitter. Plaintiffs asked Google to provide all documents relating to keyword advertisements purchased by VNA for the www.veoliaflintfacts.com website.  VNA has since voluntarily provided that information to Plaintiffs.  Plaintiffs asked Twitter to provide documents regarding the @VNAFlintFacts handle, thereby attempting to get from non-party Twitter the very same information that this Court ruled Plaintiffs could not get directly from VNA.  *See* July 2022 Order 5, PageID.53692.

### F.    Plaintiffs Pursue Discovery From VNA's Parent Company

In November 2022, Plaintiffs deposed VNA's executive vice president for communications, Carrie Griffiths.  Ms. Griffiths testified that she did not control VNA's public communications regarding the bellwether trial.  Instead, she testified that VNA's parent company, Veolia Environnement S.A. (VE), took the lead, and that it was her understanding that Pierre Farcot, a VE employee, handled the day-to-

day management of the company's communications regarding the trial.

Plaintiffs immediately sought to depose Mr. Farcot as well as Laurent Obadia, a VE senior executive vice president, who was Mr. Farcot's direct supervisor. Neither of these depositions has yet taken place.

### G.    Plaintiffs Seek Mr. Ferrara's Deposition

After learning of Ms. Griffiths' belief that Mr. Farcot was handling trial-related communications, including the @VNAFlintFacts Twitter account and www.veoliaflintfacts.com website, Plaintiffs' counsel also sought to depose Mr. Ferrara, who served as VNA's in-house counsel until his retirement in August 2022. When asked why they believe that they are entitled to depose VNA's attorney, Plaintiffs' counsel responded that they witnessed Mr. Ferrara speak to Mr. Farcot *on one occasion* when both men were in the courtroom watching the Bellwether I trial.

### LEGAL STANDARD

Parties may seek discovery on "nonprivileged matter[s] that [are] relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). But because the "potential for discovery abuse is ever-present," *Katz v. Batavia Marine & Sporting Supplies, Inc.* 984 F.2d 422, 424 (Fed. Cir. 1993), discovery "has ultimate and necessary boundaries," *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Rule 26(c) empowers district courts to enforce those boundaries. It provides

10

that for "good cause" courts may issue a protective order barring discovery.  Good cause exists if the discovery seeks information that is privileged or irrelevant, or if it would cause a party or non-party "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1); *see Tribula v. SPX Corp.*, No. 08-13300, 2009 WL 87269, at *1 (E.D. Mich. Jan. 12, 2009) ("[S]howing that the proposed discovery is irrelevant can satisfy the 'good cause' requirement of Rule 26(c)."); *Jaguar Land Rover Ltd. v. Bombardier Recreational Prods., Inc.*, No. 16-13386, 2018 WL 2276640, at *1 (E.D. Mich. May 18, 2018) (granting protective order barring deposition of party's general counsel based on privilege).

In the Sixth Circuit, parties wishing to depose opposing counsel must satisfy additional hurdles:  "Discovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.'"  *Nationwide*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).  When a litigant seeks to depose opposing counsel, "the cards are stacked against the requesting party from the outset and they must prove the deposition's necessity."  *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 8 (D.D.C. 2009).[3]

---

[3]     "[A] party" may "move for a protective order in the court where the action is pending."  Fed. R. Civ. P. 26(c)(1).  It is therefore appropriate for this Court to issue a protective order to stop Mr. Ferrara's deposition.  *See Thogus Prods. Co. v. Bleep,*

## ARGUMENT

## THE COURT SHOULD PROHIBIT PLAINTIFFS FROM DEPOSING VNA'S FORMER IN-HOUSE COUNSEL, FRANCIS FERRARA

### A. Deposing Mr. Ferrara Would Impermissibly Chill VNA's Exercise Of Its First Amendment Rights

Plaintiffs seek to depose a former in-house lawyer regarding public statements made by or on behalf of his former client about pending litigation on a matter of great public interest.  If the Court permits Mr. Ferrara's deposition, its decision will have an unconstitutional chilling effect on speech protected by the First Amendment.

"The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).  Consistent with that commitment, "the right of publicity concerning [court] operations goes to the heart of their function"—they are "public institutions funded with public revenues for the purpose of resolving public disputes." *Ford*, 830 F.2d at 599.

The right to speak about what is happening in court belongs to parties in pending litigation, no less than to the public and the media.  This is particularly true here, where a highly public trial was livestreamed to the world.  In fact, the free-speech right of litigants to comment on their pending case is coextensive with the right of

---

*LLC*, No. 20-1887, 2021 WL 827003, at *2-3 (N.D. Ohio Mar. 4, 2021) (granting protective order regarding subpoenas issued in multiple states).

the press to report on it. *See Ford*, 830 F.2d at 598-99 ("We see no legitimate reasons for a lower threshold standard for individuals, including defendants, seeking to express themselves outside of court than for the press.").

Further, when court proceedings are public, "[t]hose who see and hear what transpired can report it with impunity." *Craig v. Harney*, 331 U.S. 367, 374 (1947). This is true even when the court finds the reporting biased or slanted or even outright inaccurate. *See, e.g.*, *id.* at 374-75 (a "sketchy and one-sided report of a case" that was "an unfair report of what transpired" in court because the speaker failed to include a key aspect of the court's ruling was fully protected speech); *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 100 (3d Cir. 1988) (holding that even "deliberately slanted" speech regarding pending litigation was constitutionally protected).

 As a party to the litigation, VNA has the constitutionally protected right to make public statements about what is happening in the case.  And while VNA maintains that its public statements have been accurate, VNA would have the right to freely speak about this litigation even if its statements were unfair or biased.  VNA's speech rights include the right to advocate for itself in the public square.

The Supreme Court of South Dakota's decision in *State v. Springer-Ertl*, 610 N.W.2d 768 (S.D. 2000), is instructive.  After her son was charged with murder, Ms. Springer-Ertl drove to where his trial would be held and distributed posters across the city, notifying the public that the court had excluded his lie-detector test and that

"an innocent young man is being persecuted." *Id*. at 769.  She was charged with jury tampering, or "attempt[ing] to influence a juror . . . [b]y means of any communication, oral or written." *Id*. at 770 n.1.[4]  But, the South Dakota Supreme Court held, she could not be convicted simply because she had "impart[ed] information" in an attempt to "influence the public," and this was so "regardless of whether jurors—drawn, summoned, or sworn—may be among the public." *Id*. at 776-77.  And this was so even though her posters were hung solely "in one small community where a trial was about to begin," and even though—as the mother of the defendant—she was hardly an unbiased observer of the case. *Id*. at 772 ("[T]he First Amendment protects speech even if biased or improperly motivated.").  Consistent with *Springer-Ertl*, VNA has not found a single case in which someone was found to have committed jury tampering based on public statements regarding an ongoing case.

VNA vigorously contests Plaintiffs' accusations that it has, in any way, "targeted" jurors.  And none of the depositions taken to date has supported Plaintiffs' accusations.  But even if VNA had taken steps to ensure that its speech was heard in Michigan, that is not only permissible but constitutionally protected—just as it would have been constitutionally protected speech if local papers had published in

---

[4]     Plaintiffs have not claimed that VNA violated a criminal statute.  *See, e.g.*, Pls.' Mot. to Compel 16, ECF No. 2298, PageID.74264 ("Taken as a whole, these public posts constitute extra judicial statements by Veolia, which effectively create a shadow trial, where Veolia can manipulate the evidence without the safeguards of the Federal Rules of Evidence to *influence jurors* and witnesses." (emphasis added)).

full the pages from the www.veoliaflintsfacts.com website.  The First Amendment right to speak about pending litigation is sacrosanct.[5]

Because VNA's speech about this litigation is protected, the First Amendment bars government action that would chill that speech.  The Free Speech Clause not only prevents outright prohibitions of speech, but also government actions that would have a "chilling" effect on speech.  *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388-89 (2021).  To that end, courts have barred attempts to unmask anonymous speakers, *see, e.g.*, *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995), prevented the disclosure of financial contributions, *see, e.g.*, *Davis v. FEC*, 554 U.S. 724, 744 (2008), and prohibited discovery into the "lawful actions" that individuals have taken to voice their opinion "on a matter of public debate," *Muslim Comty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-10803, 2014 WL 10319321, at *5 (E.D. Mich. July 2, 2014).  Thus, when organizations have participated in public advocacy campaigns on matters of public concern, courts have barred discovery regarding the organizations' internal communications on when and

---

[5]     *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), is not to the contrary. There, the Court addressed whether a state bar's "narrow and necessary limitations on lawyers' speech" were constitutionally permissible.  *Id*. at 1075. The Court held that they were, because courts have a long history of regulating attorney conduct and because the restraint on speech was "narrowly tailored" to achieve the state's "substantial interest in preventing officers of the court, such as lawyers," from undermining "the integrity and fairness of [the] State's judicial system."  *Id*.  Lawyer speech is not at issue here, and so *Gentile* is inapplicable.

how they would participate in those campaigns.  *See Perry v. Schwarzeneggar*, 591

F.3d 1147, 1164-65 (9th Cir. 2010); *Chevron Corp. v. Donziger*, No. 13-mc-80038,

2013 WL 1402727, at *3 (N.D. Cal. Apr. 5, 2013).

Requiring VNA's long-time in-house counsel to sit for a deposition and dis-

close private information about his client's speech will have the very type of chilling

effect that is foreclosed by these precedents.  Few things will silence litigants faster

than the possibility that their lawyers will be deposed if the litigants dare to speak

publicly about what is happening.  Lawyers too will hesitate to represent litigants

who speak out, for fear that they will be deposed because of their clients' speech.

Plaintiffs appear to be unhappy that "permitting [VNA] to defend [itself] pub-

licly may result in overall publicity that is somewhat more favorable to the defendant

than would occur when all participants are silen[t]."  *Ford*, 830 F.2d at 600.  But free

speech by VNA "does not result in an 'unfair' trial" for Plaintiffs. *Id*.  In fact, "[p]ub-

licity often accompanies trials, including trials in which the public has a keen and

understandable interest."  *In re Murphy-Brown, LLC*, 907 F.3d 788, 798 (4th Cir.

2018).  This is precisely why the Court repeatedly instructed the jurors at the Bell-

wether I trial to neither research the case nor view media coverage of it.[6]

"The judicial process does not run and hide . . . when public appraisal of its

---

[6]    Indeed, it is highly *un*likely that the jurors ever saw any of VNA's public
statements about the trial.  To do so they would have had to flagrantly disobey this
Court's instructions.

workings is most intense," nor are jurors so "fragile" that the mere fact of publicity *somewhere* will prevent them from complying with the court's instructions. *Murphy-Brown*, 907 F.3d at 798-99 (overruling gag order on parties discussing pending litigation). Instead, the Founders long ago decided that the appropriate disinfectant for ideas with which we disagree is more speech, not less. Plaintiffs' invasive discovery into constitutionally protected conduct should not be tolerated.

**B.    Plaintiffs Cannot Satisfy The Heightened Showing Needed To Justify A Deposition Of Opposing Counsel Under *Shelton***

Plaintiffs cannot depose Mr. Ferrara unless they satisfy the factors laid out in *Shelton*. Plaintiffs fail that requirement because they cannot show that "'the information sought is relevant and nonprivileged,'" "'no other means exist to obtain the information,'" and "'the information is crucial to the preparation of the case.'" *Nationwide*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).

**1.    Information About Public Statements VNA Made Years After The Water Crisis Ended Is Irrelevant**

Plaintiffs are seeking information that is completely irrelevant to this lawsuit.

Plaintiffs' professional-negligence claim against VNA is premised on VNA's actions during a 30-day period from February 10, 2015, to March 12, 2015. Events that took place years later are irrelevant. Indeed, the parties already thoroughly litigated whether events that happened long after the water crisis ended are relevant to this case. The Court implicitly ruled that they are not by setting January 31, 2017 as

the cut-off date for VNA's responses to document requests.  *See* Order 2, *In re Flint Water Cases*, No. 16-10444 (E.D. Mich. Sept. 6, 2019), ECF No. 938, PageID.24435.

Plaintiffs seek to depose Mr. Ferrara regarding Mr. Farcot's public-relations work during the Bellwether I trial.  But any information regarding those public-relations efforts will date from well after the January 2017 cut-off date—after which VNA's conduct is presumed irrelevant.

Indeed, this Court has already ruled that information about VNA's public-relations efforts is irrelevant to Plaintiffs' case.  In ruling on Plaintiffs' May 2022 motion to compel during the Bellwether I trial, the Court held that the assertion that "alleged misinformation could cause the public to question or doubt Plaintiffs' legal position or their attorneys' integrity" "is not relevant to the *claims or defenses* in the ongoing Bellwether I trial."  July 2022 Order 5, PageID.53692.  That ruling is plainly correct.  A media campaign that occurred years after the water crisis took place neither "has any tendency to make a fact [that Plaintiffs must prove] more or less probable" nor "is of consequence in determining [Plaintiffs'] action" for professional negligence.  Fed. R. Evid. 401 (defining "relevant evidence"); *see Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 213-14 (D.D.C. 2006) (denying discovery of public-relations documents that were irrelevant to merits of plaintiff's claims).

Plaintiffs likely will contend that they are not seeking information about the water crisis, but are trying to uncover a campaign by VNA to spread misinformation about its role in Flint. *See, e.g.*, Pls.' Mot. to Compel 7, ECF No. 2298, PageID.74255. But Plaintiffs cannot just declare VNA's constitutionally protected speech a "disinformation campaign" and throw open the door to discovery that is far afield from their claims. Whether or not VNA's public-relations activity constitutes "disinformation" (it does not), VNA is not aware of—and Plaintiffs have not cited— a single case in which a party was allowed to make its opponent's public statements about the litigation a subject for discovery.

### 2.   Much Of The Information That Mr. Ferrara Has Is Privileged

Plaintiffs also cannot depose Mr. Ferrara on VNA's public-relations efforts because virtually all the information he may have on that topic would be privileged.

The "purpose of the attorney-client privilege is to permit a client to confide in the client's counselor, knowing that the communications are safe from disclosure." *Co–Jo, Inc. v. Strand*, 226 Mich. App. 108, 112 (1997). The privilege attaches to communications "made for the purpose of obtaining legal advice." *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich. App. 614, 618-19 (1998). "Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to

speak on its behalf in relation to the subject matter of the communication." *Id.*[7]

As in-house counsel with significant responsibility for supervising VNA's litigation strategy, to the extent that Mr. Ferrara would have been given information about VNA's public-relations efforts, it would have been for the purpose of providing VNA with legal advice.  It would be highly difficult for Mr. Ferrara to discuss VNA's public-relations efforts without revealing privileged communications.  Further, Plaintiffs want to show that VNA's public-relations efforts were motivated by a bad intent—to influence the jurors.  Plaintiffs' speculation about VNA's motives is baseless.  Regardless, asking Mr. Ferrara about the intent behind his client's actions would likely constitute asking him to reveal privileged information.  Even in circumstances in which Mr. Ferrara could confirm the innocent intent behind VNA's actions, he would be unable to answer without violating attorney-client privilege.

Plaintiffs may point to the fact that Mr. Ferrara spoke with Mr. Farcot during the Bellwether I trial and argue that they should be able to ask about that conversation because Mr. Farcot worked for VNA's parent corporation, not VNA itself.

---

[7]     "In a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).  Under Michigan law, the court will "look[] to federal precedent for guidance in determining the scope of the attorney-client privilege when a particular issue has been addressed by a federal court." *Est. of Nash by Nash v. City of Grand Haven*, 321 Mich. App. 587, 594 (2017).

But—assuming that they were discussing the case at all—Mr. Ferrara's conversations with Mr. Farcot were likely privileged. VNA and VE have executed a common-interest agreement, which was produced to Plaintiffs during this litigation. *See* VWNAOS028285-VWNAOS028292. Further, when, as here, an attorney works for an organizational client that is part of a larger corporate family, "[t]he cases clearly hold that a corporate 'client' includes not only the corporation by whom the attorney is employed or retained, but also parent, subsidiary and affiliate corporations." *Crabb v. KFC Nat'l Mgmt. Co.*, No. 91-5474, 1992 WL 1321, at * 3 (6th Cir. Jan. 6, 1992); *see also Glidden Co. v. Jandernoa*, 173 F.R.D. 459, 473 (W.D. Mich. 1997) (stating that, "for purposes of the attorney-client privilege, the subsidiary and the parent are joint clients, each of whom has an interest in the privileged communications" and listing cases).[8]

### 3. There Are Other Means To Obtain Information About VNA's Public Statements

A deposition of an opposing party's attorney is not allowed when "other means exist to obtain the information." *Nationwide*, 278 F.3d at 628. And Plaintiffs have an abundance of unexhausted sources for the information they want.

---

[8] *See also, e.g.*, *Admiral Ins. v. U.S. Dist. Ct. for the Dist. of Ariz.*, 881 F.2d 1486, 1493 n.6 (9th Cir. 1989) (attorney-client privilege attaches to communications between attorney for parent company and employee of subsidiary); *Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 503 (E.D.N.Y. 1986) ("[T]he attorney-client protection provided for corporate clients includes, the corporation who retained an attorney, its parent, and its wholly-owned and majority-owned subsidiaries . . . .").

Plaintiffs already have deposed multiple VNA employees and outside consultants with knowledge about VNA's public-relations efforts—including Tarrah Cooper Wright, Carrie Griffiths, Jon Karush, Karole Colangelo, and Jace Connor. And Plaintiffs are seeking to depose even more people.  Depositions are still pending for Elinor Haider, Paul Whitmore, Hillary Ziegenhagen, Laurent Obadia, and Pierre Farcot.  In addition, Plaintiffs have been given access to numerous documents that provide detailed information about VNA's Google ad buys—which, according to Plaintiffs, are a particular source of their concern.  *See* Pls.' Mot. to Compel 3-4, 16-17, ECF No. 2298, PageID.74251-74252, 74264-74265.  These sources more than suffice to give Plaintiffs the information they seek.  *See Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 7047533, at *2 (E.D. Mich. Nov. 30, 2020) (denying request to depose attorney because plaintiff had obtained sufficient information through document production and other depositions).

Indeed, one must question why Plaintiffs would insist on deposing Mr. Ferrara when all of these other sources of information remain.  As VNA's in-house counsel, Mr. Ferrara's knowledge of VNA's public-relations efforts would be far more limited than that of the public-relations professionals whom Plaintiffs have already deposed.  And the documents describing VNA's Google ad buys would provide far more definitive information about the scope of those ads than would Mr. Ferrara. But Plaintiffs did not even question Mr. Connor—the VNA employee charged with

managing the Google ad buy—about that production during his deposition.

At best Plaintiffs cannot satisfy *Shelton*'s requirement that no other source can provide the information they seek until after they have completed all of the depositions noticed for public-relations professionals.  Even then, Plaintiffs would need to identify with specificity the information that Mr. Ferrara alone could provide.  Plaintiffs have not come close to meeting this exacting requirement.

### 4. Information About VNA's Public Statements Is Not Crucial To The Preparation Of Plaintiffs' Case

Finally, the information Plaintiffs seek is plainly not "crucial to the preparation of [Plaintiffs'] case." *Nationwide*, 278 F.3d at 628.  Evidence regarding VNA's public-relations statements will not demonstrate whether VNA or LAN contributed to the water crisis, let alone whether their actions contributed to Plaintiffs' alleged injuries.  On the contrary, this entire pursuit is nothing more than a side show, apparently designed to make VNA look like a bad actor in local media.

### 5. Mr. Ferrara's Deposition Should Be Prohibited Even If *Shelton* Does Not Apply

Plaintiffs may argue that *Shelton* does not apply because Mr. Ferrara is not counsel of record in this matter.  That argument is wrong because Mr. Ferrara supervised VNA's litigation strategy in this case. *See Shelton*, 805 F.2d at 1325 (applying *Shelton* factors to deposition of in-house counsel "supervising" the litigation); *Epling v. UCB Films, Inc.*, 204 F.R.D. 691, 693 (D. Kan. 2001) (applying *Shelton*

factors to deposition of in-house counsel "managing this litigation"); *Massillon Mgmt., LLC v. Americold Realty Trust*, No. 08-799, 2009 WL 614831, at *4-5 (N.D. Ohio Jan. 21, 2009).  But even if *Shelton* did not apply, Mr. Ferrara's deposition should be prohibited because Plaintiffs seek irrelevant information and much of the information that Mr. Ferrara might have is privileged.  *See supra* pp. 18-21.

### C.   The Discovery Would Unduly Burden And Harass Mr. Ferrara And VNA

The deposition also would subject Mr. Ferrara and VNA to "annoyance," "oppression," and "undue burden [and] expense."  Fed. R. Civ. P. 26(c)(1).

Whether a burden is "undue" "relates to the reasonableness" of the discovery requested.  *Seven Bros. Painting, Inc. v. Painters & Allied Trades Dist. Council No. 22*, No. 09-12506, 2010 WL 11545174, at *3 (E.D. Mich. June 7, 2010).  When the information sought has little to no relation to the claims at issue, even a small burden is "undue."  As the Sixth Circuit has explained, "even very slight inconvenience may be unreasonable"—and thus justify barring the discovery—"if there is no occasion for the inquiry."  *Serrano v. Cintas Corp.*, 699 F.3d 884, 900-01 (6th Cir. 2012).

The Court should not allow Plaintiffs to burden and harass Mr. Ferrara and VNA in the pursuit of information that cannot further a claim or defense in this litigation.  A deposition "of a party's attorney is usually both burdensome and disruptive," *Hilton Hotels Corp. v. Dunnet*, No. 00-2852, 2001 WL 1910057, at *3 (W.D. Tenn. Sept. 5, 2001), largely because deposing an attorney requires parsing through

complicated issues of privilege and relevance, both prior to and during the deposition, *see Shelton*, 805 F.2d at 1327 ("It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections" arising from an attorney deposition.).  The result is that "the mere request to depose a party's attorney constitutes good cause for obtaining a [Rule 26(c)] protective order unless the party seeking the deposition can show both the propriety and need for the deposition"—and Plaintiffs have shown neither.  *Hilton Hotels*, 2001 WL 1910057, at *3.

Plaintiffs have no valid reason for disturbing Mr. Ferrara's retirement and imposing upon him and VNA the immensely burdensome exercise of preparing for and being deposed in his capacity as VNA's counsel.  The deposition should be barred.

## CONCLUSION

The Court should issue a protective order barring Plaintiffs from deposing former in-house counsel Francis Ferrara.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 20, 2022

26

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   */s/ James M. Campbell*
      James M. Campbell
      jmcampbell@campbell-trial-lawyers.com