## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| BELLWETHER III | Case No. 5:17-cv-10164-JEL-MKM |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' REQUESTS FOR ADMISSIONS AND REQUESTS FOR PRODUCTION OF DOCUMENTS

## STATEMENT OF ISSUES PRESENTED

1. Should the Court deny Plaintiffs' motion to compel because VNA has adequately responded to Plaintiffs' requests for information relating to their allegations that VNA targeted jurors?

> **VNA answers:** "Yes."

> **Plaintiffs answer:** "No."

2. Should the Court deny Plaintiffs' motion to compel because the requested discovery about VNA's public-relations efforts is not relevant?

> **VNA answers:** "Yes."

> **Plaintiffs answer:** "No."

3. Should the Court deny Plaintiffs' motion to compel because the requested discovery about VNA's public-relations efforts would chill speech protected by the First Amendment?

> **VNA answers:** "Yes."

> **Plaintiffs answer:** "No."

4. Should the Court deny Plaintiffs' motion to compel because the requested discovery seeking additional electronic communications from various VNA employees is irrelevant, cumulative, unduly burdensome, and harassing?

> **VNA answers:** "Yes."

> **Plaintiffs answer:** "No."

5.     Should the Court deny Plaintiffs' motion to compel because the requested discovery seeking information about VNA's work in cities other than Flint is irrelevant, unduly burdensome, and harassing?

     **VNA answers:** "Yes."

     **Plaintiffs answer:** "No."

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*CBS Inc. v. Young*,
    522 F.2d 234 (6th Cir. 1975)

*Fox v. Cnty. of Saginaw*,
    No. 19-cv-11887, 2022 WL 1198203 (E.D. Mich. Apr. 22, 2022)

*Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*,
    988 F.3d 260 (6th Cir. 2021)

*Henry v. Champlain Enter., Inc.*,
    212 F.R.D. 73 (N.D.N.Y. 2003)

*Muslim Comty. Ass'n of Ann Arbor v. Pittsfield Twp.*,
    No. 12-cv-10803, 2014 WL 10319321 (E.D. Mich. July 2, 2014)

*Rosenblatt v. Baer*,
    383 U.S. 75 (1966)

*Walters v. Dollar Gen. Corp.*,
    No. 19-cv-1010, 2019 WL 3934804 (D. Kan. Aug. 20, 2019)

Fed. R. Civ. P. 26(b)(1)

Fed. R. Civ. P. 26(b)(2)(C)

iv

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND ...........................................................................................2

    A.    Plaintiffs Issued 36 Requests For Admissions ....................................2

    B.    Plaintiffs Issued 40 Requests For Production Of Documents.............4

    C.    Plaintiffs Already Have Deposed Key People Involved In
        VNA's Public-Relations Efforts............................................................5

LEGAL STANDARD........................................................................................6

ARGUMENT ...................................................................................................7

I.    VNA HAS SUFFICIENTLY RESPONDED TO THE REQUESTS
    FOR ADMISSIONS ABOUT ITS GOOGLE AD BUY ............................7

    A.    The Discovery Obtained To Date Conclusively Shows That
        VNA Never Targeted Jurors ................................................................7

    B.    VNA's Responses To The Requests For Admission Clearly
        Explain That It Never Targeted Jurors................................................10

        1.    VNA's Responses Are Not Evasive ........................................10

        2.    When Responding To The RFAs, VNA Is Not Limited
            To Saying "Admit" Or "Deny"................................................11

        3.    VNA Does Not Have To Produce Information From Its
            Parent Company......................................................................12

II.    PLAINTIFFS ARE NOT ENTITLED TO FURTHER DISCOVERY
    ON VNA'S PUBLIC-RELATIONS ACTIVITIES ....................................13

    A.    The Additional Discovery Requests On VNA's Public-
        Relations Activities Seek Irrelevant Information...............................13

    B.    Requiring Further Disclosures From VNA About Its Public-
        Relations Efforts Would Have A Chilling Effect On VNA's
        First Amendment Rights .....................................................................17

III.    PLAINTIFFS ARE NOT ENTITLED TO SEVEN YEARS' WORTH
    OF ELECTRONIC COMMUNICATIONS FROM 14 VNA
    EMPLOYEES........................................................................................21

IV.    PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ABOUT
    VNA'S WORK IN OTHER CITIES........................................................24

CONCLUSION ..............................................................................................25

v

## INTRODUCTION

Plaintiffs move to compel responses to 36 requests for admissions (RFAs) and 40 requests for production of documents (RFPs).  The motion should be denied.

Plaintiffs claim that they need this information to find out whether VNA "targeted" jurors when making public statements about this litigation.  But only a few of these discovery requests actually ask about that.  Those requests are RFAs 1 through 24—and VNA fully answered them.  VNA also supplemented its RFA answers by voluntarily providing 193 documents relating to its Google ad buy.  VNA's responses and documents, as well as recent deposition testimony from multiple VNA employees and consultants, show that VNA never sought to influence jurors.

None of the remaining RFAs nor any of the RFPs ask about jury targeting.  Instead, the remaining RFAs ask VNA to characterize statements publicly available on the www.veoliaflintfacts.com website and probe VNA's relationships with public-relations professionals and the American Tort Reform Association (ATRA).  As for the RFPs, they are incredibly expansive and seek irrelevant information.  Plaintiffs ask for all communications since January 1, 2015, between VNA and a list of outside public-relations professionals and firms, as well as all documents that address VNA's relationship with these providers in connection with this litigation.  Plaintiffs also seek all electronic communications since January 1, 2015, from 14 VNA employees on 26 broad topics, most of which have nothing to do with the

1

underlying claims in this case, as well as documents relating to VNA's work for other cities, which also have nothing to do with this case.

VNA objected to these discovery requests because they are not designed to obtain information about any supposed scheme to target jurors, or information that is relevant to the claims in this case.  Instead, Plaintiffs are seeking to intrude into VNA's relationships with public-relations professionals, as well as its internal communications about this litigation, in order to harass VNA and punish it for speaking about this litigation.  The Court should deny the motion to compel.

## BACKGROUND

Plaintiffs have accused VNA of targeting actual and potential jurors through the @VNAFlintFacts Twitter handle, the www.veoliaflintfacts.com website, and Google ads.  To try to prove that, Plaintiffs have launched a broad campaign seeking discovery about VNA's public-relations efforts.  *See* VNA's Mot. for Protective Order 5-10, No. 16-cv-10444 ECF No. 2307, PageID.74561-74566 (describing Plaintiffs' efforts).  The RFAs and RFPs at issue are part of that campaign.

### A.    Plaintiffs Issued 36 Requests For Admissions

The 36 RFAs seek information about VNA's public-relations efforts.

RFAs 1 through 24 seek admissions about Google ads that directed people to www.veoliaflintfacts.com if the individual clicked on the ad.  Because VNA's use of Google ads was central to Plaintiffs' allegation that VNA improperly sought to

influence jurors, VNA responded fully to all of those RFAs.  *See* Pls.' Motion to Compel (MTC) Ex. 7, at 5-11, ECF No. 2298-8, PageID.74425-74431.

In support of its RFA responses, VNA also produced 193 documents that explain how VNA's Google ad buy worked.  When an entity purchases Google ads, it receives access to an online platform that tracks the ad buy.  The platform tracks how many people see the ad, how many people click on it, and when they click on it.  Purchasers of Google ads do not pay for ads upfront; instead, they pay for every click the ad receives.  The platform therefore also tracks how much the entity has spent on ads and when those costs accrued.  The online platform compiles the ad data in downloadable spreadsheets.  VNA produced screenshots of the entire online platform, so Plaintiffs can see what VNA sees when it logs in.  It also produced the spreadsheets of data, so Plaintiffs can see the same raw data available to VNA.

The data show the overall structure of VNA's Google ad purchase.  The information provided by VNA further shows the keywords that would trigger the ads to appear at the top of the Google search page, the ad schedule, all budget settings, a change-history log showing what changes were made to the Google ad buy and when, and all of the billing information from Google to VNA.  VNA thus has been transparent in explaining how its ad buy worked, and the information it provided shows that VNA did not target actual or potential jurors.

As for RFAs 25 through 36, VNA timely objected to those requests rather

3

than answering them, because they seek irrelevant information.

- RFAs 25 through 29 ask VNA to characterize statements made on the www.veoliaflintfacts.com website.  For instance, RFA 28 asks:  "Admit that after the Bellwether I trial began, posts on the website focused specifically on legal elements of the case, like: 'standard of care.'"  *See* MTC Ex. 7, at 12, PageID.74432.

- RFAs 30 and 35 ask whether VNA has communicated with ATRA.  *See* MTC Ex. 7, at 12-13, PageID.74432-74433.

- RFAs 31 through 34 ask VNA to admit that three people helped with its public-relations strategy.  *See* MTC Ex. 7, at 12-13, PageID.74432-74433.  Plaintiffs already have deposed two of them (Tarrah Cooper Wright and Jonathan Karush) and have noticed the deposition of the third (Hillary Ziegenhagen).

- RFA 36 asks VNA to admit that counsel for co-defendant LAN "were made aware of" the www.veoliaflintfacts.com website before the Bellwether I trial.  *See* MTC Ex. 7, at 13, PageID.74433.

### B.    Plaintiffs Issued 40 Requests For Production Of Documents

Plaintiffs also issued 40 RFPs.  VNA timely objected to all of those requests, and has not produced any documents in response, because they seek irrelevant information, impermissibly chill protected speech, and are unduly burdensome.

- RFPs 1-6 and 13-22 seek all documents relating to VNA's relationships with various public-relations professionals and firms, as well as all communications between VNA and those providers, from January 1, 2015, to the present.  *See* MTC Ex. 8, at 2-14, ECF No. 2298-9, PageID.74437-74449.

- RFPs 7-12 seek all documents relating to VNA's alleged relationship with ATRA, its president Tiger Joyce, and its public-affairs manager Bailey Griffith Aragon, as well as all communications between VNA and ATRA, Joyce, and Bailey, from January 1, 2015, until the present.  *See* MTC Ex. 8, at 5-8, PageID.74440-74443.

- RFPs 23-36 seek all electronic communications from January 1, 2015, until

the present to or from 14 VNA employees if the communication discusses one of 26 listed topics.  *See* MTC Ex. 8, at 14-37, PageID.74449-74472.  The employees are:  Marvin Gnagy; Rob Nicholas; Depin Chin; David Gadis; William Fahey; Brian Clarke; Frédéric Van Heems; Denis Chesseron; Keith Oldewurtel; Jim Pawloski; Karine Rougé; Joseph Nasuta; Matt Demo; and Carrie Griffiths.  Notably, Van Heems, Chesseron, Pawloski, Rougé, and Griffiths did not start working for VNA until after VNA left Flint.

- RFP 37 seeks all documents relating to VNA's internal investigation into its actions in Flint.  MTC Ex. 8, at 38, PageID.74473.  No such investigation occurred.

- RFPs 38-40 seek all documents relating to VNA's internal investigations of its work in Pittsburgh, PA and Plymouth, MA.  No such investigations occurred.  These RFPs also seek "[a]ll documents pertaining to Veolia's work in Plymouth, MA, which resulted in a lawsuit filed by the Massachusetts Attorney General against Veolia," with no time limit.  MTC Ex. 8, at 39, PageID.74414.

## C.    Plaintiffs Already Have Deposed Key People Involved In VNA's Public-Relations Efforts

Plaintiffs also have deposed the following people:

- Tarrah Cooper Wright, the founder of the public-relations firm Rise Strategy Group, which VNA hired in February 2022 to assist in the company's communications surrounding the Bellwether I trial;

- Carrie Griffiths, VNA's executive vice president for communications;

- Jon Karush, a third-party contractor who provided public-relations services to VNA;

- Karole Colangelo, a former VNA employee in its communications department; and

- Jace Connor, VNA's Director of Digital Engagement and the individual responsible for managing VNA's Google ad buy.

Even though none of these depositions produced evidence that VNA sought to influence jurors through its communications, Plaintiffs now seek to depose more people about VNA's public-relations efforts, including Jennifer Kaufman, an outside consultant; Laurent Obadia, a senior executive vice president of VNA's parent company; and Pierre Farcot, a former employee of the parent company.

## LEGAL STANDARD

Because the "potential for discovery abuse is ever-present," *Katz v. Batavia Marine & Sporting Supplies, Inc.* 984 F.2d 422, 424 (Fed. Cir. 1993), it is "the power—and duty—of the district courts actively to manage discovery and to limit discovery that exceeds its proportional and proper bounds," *Helena Agri-Enters., LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 274 (6th Cir. 2021) (internal quotation marks and emphasis omitted).

The party filing a motion to compel bears the burden of establishing that the information sought is discoverable. *Fox v. Cnty. of Saginaw*, No. 19-cv-11887, 2022 WL 1198203, at *8 (E.D. Mich. Apr. 22, 2022). Courts deny motions to compel when parties seek information that is privileged, not "relevant to any party's claim or defense," or not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Further, courts "must" limit discovery requests if they are "unreasonably cumulative or duplicative" or if "the party seeking discovery has had ample opportunity to obtain the information by discovery." Fed. R. Civ. P. 26(b)(2)(C).

# ARGUMENT

## I.  VNA HAS SUFFICIENTLY RESPONDED TO THE REQUESTS FOR ADMISSIONS ABOUT ITS GOOGLE AD BUY

Plaintiffs justify their motion to compel almost entirely by claiming that they need to determine whether VNA tried to influence jurors.  *See* MTC 7-8, PageID.74255-74256.  To that end, they demand that VNA submit new answers to RFAs 1 through 24 (which address VNA's Google ad buy).  But the discovery that Plaintiffs have obtained to date—which includes both deposition testimony and VNA's answers to the RFAs—shows that VNA never tried to influence any juror. There is no need for VNA to answer RFAs 1 through 24 yet again.

### A.  The Discovery Obtained To Date Conclusively Shows That VNA Never Targeted Jurors

The discovery taken to date establishes that VNA made a modest Google ad purchase in 2016 to promote its www.veoliaflintfacts.com website and that the ad buy has not changed since it was initially set up.  Ex. 2, Griffiths Dep.19:15-24; 23:12-17; MTC Ex. 7, at 2-4, PageID.74422-24.  VNA capped the ad buy at $75 a day.  Ex. 3, Connor Dep. 115:1-15 (Google Ads budget "set at $75 a day," which never increased).  Unlike some types of online ads that appear as pop-ups when a person views a particular website or physically enters a particular area, the ads that VNA purchased appear only as Google search results (not pop-ups) and only after someone has run a Google search for key terms chosen by VNA.  *See* Ex. 3, Connor Dep. 114:16-21 (Google ads are "not something you just stumble upon.  You have

to trigger an ad display through select key words."); MTC Ex. 7, at 2-3, PageID.74422-74423.  VNA identified those key terms (which include "Veolia Michigan" and "Flint Lawsuit") in 2016.  *See* Ex. 4, Google Ads "Search_keywords (2015.07.17-2022.11.07)" Spreadsheet (produced with RFA responses).  A Google user then has to click on the ad to be taken to the www.veoliaflintfacts.com website.

VNA did not control who saw the ads; that depended entirely on which Google users searched for the key terms.  Ex. 2, Griffiths Dep. 71:8-72:5 ("any numbers [of ads displayed] for any state[] reflect how many people were interested in that geography related to those keywords"); Ex. 3, Connor Dep. 22:2-16 (ads would be displayed to "people that would search for that topic of interest"); MTC Ex. 7, at 4, PageID.74424.  The Google ad data that VNA provided to Plaintiffs show that most people who viewed the ads were from Michigan.  *See* Ex. 5, Google Ads "Locations (Geographic_Report_2015-07.17-2022.11.07)" Spreadsheet (produced with RFA responses).  That was not because of any action by VNA; it was because people in Michigan were more likely to search for information about the Flint water crisis than people in other states.  *See* Ex. 2, Griffiths Dep. 72:3-5 ("It's reasonable that Michigan would have a higher amount [of impressions] because of the interest of people in that state.").  The Google ad data also show that more people viewed the ads in 2021 and 2022.  *See* Ex. 6, Google Ads "Time Series (2015.07.01-2022.11.07)" Spreadsheet (produced with RFA responses).  That also was not due

to VNA's actions.  *See* Ex. 3, Connor Dep. 116:22-24 (VNA never "ramp[ed] up" the ads).  It was because more people did Google searches on the water crisis when the settlement and the trial were in the news.

The discovery taken to date also establishes that, although Google provides options for targeting who will see a purchased ad, VNA did not use those options. For instance, Google allows for "geo-targeting," *i.e.*, limiting an ad's reach so that it appears only to people who search for the ad's keywords within a particular geographic area.  Ex. 3, Connor Dep. 111:24-112:19; MTC Ex. 7, at 3, PageID.74423. VNA did not use that option; instead, it asked that its ads appear to users located anywhere in the United States or Canada.  *See* Ex. 7, Google Ads "Locations (Targeting_2015.07.17-2022.11.017)" Spreadsheet (produced with RFA responses); Ex. 3, Connor Dep. 112:16-19.  VNA thus did not "geo-target" Michigan, let alone the area from which the Eastern District draws its jury pool.  *See* Ex. 2, Griffiths Dep. 112:20-22 (VNA was "not targeting jurors or targeting anything specifically other than the United States and Canada").  Google also allows for targeting based on age, gender, or other variables, but VNA did not use any of those options either. *See* Ex. 3, Connor Dep. 112:20-114:1.

Plaintiffs argue that VNA used "dynamic ads" to target jurors.  But dynamic ads are nothing nefarious.  A Google ad consists of two lines of text—a title (line one) and a description (line two).  For non-dynamic ads, the ad purchaser specifies

9

in advance what title and description will be displayed when the user searches for specified keywords.  For dynamic ads, the ad purchaser provides Google with several options for a title and for a description, then Google (not the ad purchaser) decides which title to pair with which description, based on the keyword terms searched.  Ex. 3, Connor Dep. 36:22-38:20; 115:16-116:14; MTC Ex. 7, at 3-4, PageID.74423-74424.  Further, if the ad purchaser provides Google with URLs for specific pages within the purchaser's website, Google also can decide to link the ad to one of those specific pages (rather than to the home page of the website), if that page is more relevant to the Google user's search.  MTC Ex. 7, at 4, PageID.74424.  Dynamic ads thus do not enable targeting, and VNA did not use dynamic ads to target ads to particular users.  And VNA has not taken any action to change the dynamic ads since 2016.

### B.    VNA's Responses To The Requests For Admission Clearly Explain That It Never Targeted Jurors

Even though they have received all of this discovery, Plaintiffs want VNA to respond yet again to RFAs 1 through 24 because they say VNA's answers are insufficiently responsive.  They are mistaken.

### 1.    VNA's Responses Are Not Evasive

Plaintiffs claim that VNA's responses to RFAs 1 through 24 are "oblique" and that VNA is "playing a game of semantics."  MTC 9-10, PageID.74257-74258.  Far from it.  VNA provided an eight-paragraph description, spanning nearly three pages,

explaining in detail how a Google ad purchase works and how VNA has used Google ads. *See* MTC Ex. 7, at 2-5, PageID.74422-74425. Plaintiffs' counsel assert that this eight-paragraph explanation is "confusing" and "suspicious." MTC 10, PageID.74258. But if Plaintiffs' counsel needed clarification, they could have asked Jace Connor, the VNA employee charged with managing the Google ad buy, for an explanation when they deposed him on December 13, 2022. VNA provided its responses to the RFAs over one month earlier, on November 4, 2022. Yet Plaintiffs' counsel never asked Mr. Connor about VNA's RFA responses.

## 2. When Responding To The RFAs, VNA Is Not Limited To Saying "Admit" Or "Deny"

Plaintiffs fault VNA for providing explanations rather than just stating "admit" or "deny" in response to the RFAs. MTC 8-9, PageID.74256-74257. Of the 24 RFAs addressing the Google ad buy, VNA expressly admitted or denied 13 (RFAs 2, 8, 9, 11, 12, 13, 14, 15, 17, 18, 19, 20, and 24). The remaining RFAs were phrased in ways that VNA could neither admit nor deny, because they reflected a misunderstanding of how Google ads work. So VNA provided a more comprehensive explanation. A party may qualify its response to an RFA if the RFA "standing alone out of context of the whole truth conveys unwarranted unfair references." *Henry v. Champlain Enter., Inc.*, 212 F.R.D. 73, 77-78 (N.D.N.Y. 2003) (citations omitted); *see Walters v. Dollar Gen. Corp.*, No. 19-cv-1010, 2019 WL 3934804, at *5 (D. Kan. Aug. 20, 2019) (defendant not required to admit or deny RFA "because

11

the request omit[s] other facts necessary to provide the context in which any of such facts should be considered" (internal quotation marks omitted)).  For example, RFA 6 states:  "Admit that between October 1, 2021 and July 28, 2022, the number of keyword searches Veolia bought for the top position on Google searches related to the Flint water crisis increased by more than 200%."  MTC Ex. 7, at 7, PageID.74427.  But Google does not allow entities to "buy" "keyword searches," and VNA did not change its Google ad buy to "increase[]" the number of people who saw its ad during that period.  The only change that happened occurred organically:  During that period, more people ran Google searches for the keywords that VNA chose in 2016, likely because the water crisis was in the news.

Courts do not compel responses to RFAs if they are "based on faulty assumptions."  *Wong v. Alameda Cnty.*, No. 18-cv-353, 2020 WL 6460530, at *2 (N.D. Cal. Nov. 3, 2020).  VNA answered the RFAs as best it could with accurate information about how Google ads function.  There is no basis for compelling further responses.

### 3.    VNA Does Not Have To Produce Information From Its Parent Company

Plaintiffs also fault VNA for not including information from its parent company, Veolia Environnement S.A. (VE), in its RFA responses.  MTC 12, PageID.74260.  VE is not a party to the lawsuit and therefore is not itself obligated to produce documents for discovery.  Further, as a general rule, subsidiaries are not required to produce documents held by their parent company because they do not

control the parent company's documents.  *See In re Porsche Cars N. Am., Inc.*, No.

11-cv-2233, 2012 WL 4361430, at *5 (S.D. Ohio Sept. 25, 2012); *Power Integra-*

*tions, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005).

Here, VE's documents are not in VNA's custody or control.  In any event, VE had

nothing to do with VNA's purchase of Google ads in 2016, more than five years

before the Bellwether I trial.  *See* Ex. 3, Connor Dep. 43:8-18 (VE had no access to

VNA's Google ads profile); Ex. 8, Google Ads Settings (showing start date of Au-

gust 10, 2016) (produced with RFA responses).

Additionally, Plaintiffs already have deposed Mr. Connor, the individual re-

sponsible for managing the Google ad buy, Ex. 3, Connor Dep. 13:14-19, and VNA

has already produced screenshots showing its complete Google ad online profile.

Plaintiffs thus have all the information about the Google ad buy that they need.

## II.  PLAINTIFFS ARE NOT ENTITLED TO FURTHER DISCOVERY ON VNA'S PUBLIC-RELATIONS ACTIVITIES

Plaintiffs also issued broad discovery requests seeking all documents relating

to VNA's relationships with various public-relations professionals dating back to

January 1, 2015.  Those requests do not seek relevant information, and if allowed,

they would unconstitutionally chill speech protected by the First Amendment.

### A.  The Additional Discovery Requests On VNA's Public-Relations Activities Seek Irrelevant Information

Plaintiffs' seek extensive discovery about VNA's public-relations efforts that

13

is not "relevant to any party's claim or defense" in this matter.  Fed. R. Civ. P. 26(b)(1).  Many of these requests seek documents dated after January 2017—the date that this Court already set as the cut-off for discovery.  *See* Order 2, No. 16-cv-10444 ECF No. 938, PageID.24435.  Documents created after that date are presumptively irrelevant; Plaintiffs can obtain those documents only by showing that receiving the documents "would likely lead to the discovery of relevant information" and that providing the discovery would "be proportional to the needs of the case."  *Id*.

During the October 2022 status conference, the Court made an exception to the January 2017 cut-off, allowing Plaintiffs to obtain discovery after that date to determine "whether VNA undertook a digital media campaign to influence or improperly influence a jury venire."  Status Conference Tr. 13:9-11, 28:20-24, No. 16-cv-10444 ECF No. 2253, PageID.73980-73981.  The Court acknowledged that topic is not relevant to the claims or defenses in this case.  *Id*.; Order 5, No. 17-cv-10164 ECF No. 870, PageID.53692 ("alleged misinformation [that] could cause the public to question or doubt Plaintiffs' legal position or their attorneys' integrity" "is not relevant to the *claims or defenses* in the ongoing Bellwether I trial").

Rule 26 only authorizes discovery relevant to a party's "claims and defenses."  For that reason, VNA maintains that Plaintiffs have no right to further discovery about alleged jury targeting.  VNA is not aware of any decision where a party was allowed to make its opponent's public statements about the current litigation a

subject for discovery.  In fact, courts have refused to allow discovery into parties' public-relations activities.  *See, e.g.*, *Am. Soc'y for the Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 213-14 (D.D.C. 2006) (denying discovery of public-relations documents that were irrelevant to the merits of plaintiff's claims).  VNA also is unaware of any decision in which a party was allowed to seek wide-ranging discovery on an opposing party's conduct during the litigation when that discovery would not unearth any information about the claims at issue.  That said, Plaintiffs' discovery requests are not justified even under the exception allowed by this Court.

**RFPs 1-6, 13-22.**  Plaintiffs request all communications between VNA and various public-relations professionals and firms from January 1, 2015, to the present and all documents about VNA's relationships with those people and firms.  MTC Ex. 8, at 2-14, ECF No. 2298-9, PageID.74437-74449.  VNA previously has produced the responsive, non-privileged public-relations documents dated before January 2017, so this request concerns only documents from after the cut-off date.

VNA should not have to produce documents from after the cut-off date.  As this Court has acknowledged, public-relations activities that occurred years after the water crisis are irrelevant because they neither "ha[ve] any tendency to make a fact [that Plaintiffs must prove] more or less probable" nor are "of consequence in determining [Plaintiffs'] action" for professional negligence.  Fed. R. Evid. 401 (defining

"relevant evidence"). These documents also are not needed to respond to Plaintiffs' claim that VNA targeted jurors, because VNA already produced 193 documents about its Google ad buy and made available multiple witnesses for depositions, including the VNA employee who managed the Google ad buy. Now that VNA has shown that Plaintiffs' allegations are baseless, the Court should not compel responses to Plaintiffs' burdensome requests for documents unrelated to their claims.[1]

**RFAs 25-29, 31-34.** These RFAs ask VNA to characterize public statements on its website and to admit that particular people (people Plaintiffs have deposed or will depose) aided VNA in its public-relations activities. *See* MTC Ex. 7, at 12-13, PageID.74432-74433. The RFAs do not seek information relevant to Plaintiffs' professional-negligence claims or to Plaintiffs' disproven accusations of "targeting."

**RFPs 7-12 & RFAs 30 & 35.** Plaintiffs request all documents relating to VNA's relationship with ATRA and VNA's communications with ATRA's president and public-affairs manager. *See* MTC Ex. 8, at 5-8, PageID.74440-74443. Plaintiffs also ask VNA to admit it communicated with ATRA. *See* MTC Ex. 7, at 12, PageID.74432.

---

[1]   To the extent that Plaintiffs seek documents that include communications with VNA's attorneys for the purpose of seeking legal advice, those documents are not discoverable because they are privileged. Similarly, any response to RFA 36, which asks VNA to admit that counsel for LAN "were made aware of" www.veoliaflintfacts.com before the Bellwether I trial, MTC Ex. 7, at 13, PageID.74433, is privileged because it seeks communications protected by the joint defense or common interest privilege, *see In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010).

This Court has already ruled that discovery requests about VNA's alleged relationship with ATRA seek irrelevant information.  In its order quashing a subpoena issued by Plaintiffs against The Detroit News editors, the Court explained that Plaintiffs were not entitled to information about the ATRA op-ed because Plaintiffs "have not demonstrated a clear link between discovery of information regarding the Joyce op-ed . . . and the allegations against the Veolia Defendants involving geo-targeting and potentially influencing the Bellwether I jury."  Order 9, No. 16-cv-10444 ECF No. 2267, PageID.74096.  These discovery requests likewise seek irrelevant information.  Besides, as Carrie Griffiths has confirmed, VNA has no relationship with ATRA and played no role in the placement of the ATRA op-ed.  Ex. 2, Griffiths Dep. 50:2-6; *id.* at 52:20-21 ("I have no idea [who ATRA president Tiger Joyce is].").

> **B.   Requiring Further Disclosures From VNA About Its Public-Relations Efforts Would Have A Chilling Effect On VNA's First Amendment Rights**

Plaintiffs want VNA to disclose seven years of its communications with public-relations professionals, merely because VNA defended itself in public.  That request, if enforced by the Court, would violate VNA's First Amendment rights.

VNA has a constitutionally protected right to speak about this litigation.  *See* Mot. for Protective Order 12-17, PageID.74568-74573; *CBS Inc. v. Young*, 522 F.2d

17

234, 239 (6th Cir. 1975) (civil litigants have First Amendment right to discuss pending litigation).  That includes explaining how City and State officials, not VNA, were responsible for the water crisis.  Contrary to Plaintiffs' contention, VNA has a right to state its view (shared by the Sixth Circuit) that "the Flint Water Crisis was a massive failure of government on all levels."  MTC 15, PageID.74263; *see Guertin v. State*, 912 F.3d 907, 915 (6th Cir. 2019) (describing "the infamous government-created environmental disaster commonly known as the Flint Water Crisis").  Indeed, VNA's "[c]riticism of [the] government is at the very center of the constitutionally protected area of free discussion."  *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).[2]

Compelling VNA to disclose its communications with public-relations professionals would impermissibly chill VNA's speech in violation of the First Amendment.  The Free Speech Clause forbids not only outright prohibitions of speech, but also government action that would have a "chilling" effect on speech.  *See Americans for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388-89 (2021).  To that end, this Court and others have prohibited discovery into the "lawful actions" that people

---

[2]  Plaintiffs suggest that VNA mischaracterized this Court's rulings.  MTC 15, PageID.74263.  It did not.  Plaintiffs quote a Tweet in which VNA described the *Sixth Circuit's* failure to address the Fifth Amendment interlocutory appeal before the Bellwether I trial ended, and a Tweet in which VNA accurately described this Court's ruling that Governor Snyder had waived his Fifth Amendment privilege. *Id.* In any event, Plaintiffs' disagreement with VNA's characterization of judicial rulings is no basis for burdensome discovery that threatens VNA's First Amendment rights.  Even if VNA's characterizations were biased, its speech would be fully protected.  *See* Mot. for Protective Order 13, PageID.74569.

take to voice their opinions "on a matter of public debate." *Muslim Comty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. 12-cv-10803, 2014 WL 10319321, at *5 (E.D. Mich. July 2, 2014). Requiring VNA to disclose its communications with public-relations professionals will have an impermissible chilling effect on VNA's speech, because VNA will choose not to speak about this lawsuit if the penalty for doing so is making all of its internal communications about creating that speech public.

Courts have denied requests for disclosure under similar circumstances. In *Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010), litigants sought an organization's "internal campaign communications" on "strategy and advertising" relating to the organization's speech about a ballot measure. *Id.* at 1152. The discovery was not allowed because "the disclosure of such information can have a deterrent effect on" public speech and on "the free flow of information within" an organization. *Id.* at 1162. As the Ninth Circuit explained, the First Amendment right to engage in public advocacy includes "the right to exchange ideas and formulate strategy and messages, and to do so in private." *Id.*; *see Chevron Corp. v. Donziger*, No. 13-cv-80038, 2013 WL 1402727, at *2 (N.D. Cal. Apr. 5, 2013) (denying discovery that would "have a deterrent effect on the exercise of protected activities").

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991), is not to the contrary. In that case, the Supreme Court struck down a state restriction on a lawyer's speech as void for vagueness. *Id.* at 1048. That rule prohibited any "extrajudicial statement"

with a "substantial likelihood of materially prejudicing an adjudicative proceeding." *Id.* at 1060. The state bar held that a defense lawyer violated that rule when he held a press conference where he addressed what he expected the evidence would show in an upcoming criminal trial. *Id.* at 1033, 1059. The Supreme Court found that restriction unconstitutional because the lawyer's speech "neither in law nor in fact created any threat of real prejudice to his client's right to a fair trial or to the State's interest in the enforcement of its criminal laws." *Id.* at 1033.

*Gentile* does not undermine VNA's free-speech rights. First, Plaintiffs are arguing about VNA's speech, not a lawyer's speech; the justifications for potentially restricting lawyers' speech do not apply to a private company. *See Gentile*, 501 U.S. at 1075-76, 1082 (noting the state's "substantial interest in preventing officers of the court, such as lawyers," from undermining "the integrity and fairness of [the] State's judicial system"). That is especially true when the private company is trying to defend itself against serious accusations and to speak about government misconduct, a matter of great public concern. Second, VNA's speech does not come close to prejudicing the right to a fair trial. As explained, VNA took no steps to influence jurors, and nothing else about its speech prejudiced the trial. And even if there were some potential effect on the trial, it would have to be balanced against VNA's First Amendment right to defend itself publicly. *Id.* at 1075.

The Court therefore should deny Plaintiffs' requests for documents.

### III.   PLAINTIFFS ARE NOT ENTITLED TO SEVEN YEARS' WORTH OF ELECTRONIC COMMUNICATIONS FROM 14 VNA EMPLOYEES

Plaintiffs seek "[a]ll text messages, chat logs, and emails to or from" 14 named VNA employees that address one of 26 different topics and date from January 1, 2015, to the present.  *See* MTC Ex. 8, at 14-37, PageID.74449-74472 (RFPs 23-36). Plaintiffs are not entitled to that information.

These RFPs seek relevant documents only to the extent that they seek documents (1) from VNA employees who worked for VNA at the time that VNA was in Flint; (2) dating before the January 2017 discovery cut-off; and (3) addressing VNA's work in Flint.  VNA already has produced thousands of documents that satisfy these requirements.  For instance, of the 14 people listed in RFPs 23-36, nine were working for VNA during the time that VNA was in Flint.  For eight of them, VNA has produced a significant number of documents, which address VNA's work in Flint and pre-date January 2017.[3]  VNA did not produce documents for the ninth person, Keith Oldewurtel, because he had no involvement in VNA's work in Flint.

Plaintiffs' motion to compel thus primarily seeks documents from after the January 2017 cut-off date.  To obtain those documents, Plaintiffs must show that the

---

[3]   Here are the eight employees and the number of documents produced for each: Marvin Gnagy (2,442 documents); Rob Nicholas (9,089 documents); Theping (Depin) Chen (968 documents); David Gadis (4,782 documents); William Fahey (2,621 documents); Brian Clarke (288 documents); Joseph Nasuta (1,169 documents); and Matt Demo (1,311 documents).

documents "would likely lead to the discovery of relevant information and [their production would] be proportional to the needs of the case" or that the Court's exception for jury targeting applies.   Order 2, No. 16-cv-10444 ECF No. 938, PageID.24435.  Plaintiffs have done neither.

Plaintiffs' first explanation for seeking this post-January 2017 discovery is that they need documents on VNA's alleged "attempt to reach sitting and potential jurors."  MTC 24-25, PageID.74272-74273.  But VNA has provided fulsome information to show that it never targeted jurors.  *See supra* Sec. I.  And even if Plaintiffs were entitled to additional discovery on that subject, the 26 topics listed by Plaintiffs go far beyond that.  The topics include "the Flint Water crisis," "Veolia's work in Flint," and "Veolia's proposed scope of work in Flint."[4]  These broad topics seek to uncover any time one of the 14 named employees has mentioned Flint in the past seven years.  That is burdensome and harassing, and lacks all proportion to the needs of the case.

---

[4]  The other topics are:  "the litigation associated with the Flint Water Crisis"; "LAN and/or LAD"; "water test results related to the University of Michigan, Flint Campus"; "crisis management related to the Flint Water Crisis"; "Veolia's Business Development"; "the City of Flint"; "the State of Michigan"; "the Governor of the State of Michigan"; "Richard Humann"; "Dr. Larry Russell"; "Warren Green"; "Jeff Hansen"; "Counsel for Plaintiffs"; "Dr. Aaron Specht"; "Dr. William Bithoney"; "Dr. Mira Krishnan"; "Dr. Edward Hoffman"; "LeeAnne Walters"; "the Honorable Judith E. Levy"; "Rowe Professional Services Company"; "the partial settlement approved by the Honorable Judith E. Levy"; "Melvin Jones"; and "Colleen Connors."  *See* MTC Ex. 8, at 14-37, PageID.74449-74472.

Additionally, these requests are unrelated to Plaintiffs' claim of juror targeting.  12 of the 14 employees named in the RFPs have never worked in VNA's communications or marketing departments and would not know anything about VNA's public-relations efforts.  The remaining two employees are communications professionals (Carrie Griffiths and Matt Demo, *see* RFPs 35 & 36).  But as explained above, these discovery requests seek irrelevant information (by seeking information from well after January 2017), are unsupported (VNA already has shown that it did not target jurors), and would chill VNA's constitutionally protected speech (by seeking private communications about how VNA created its speech).  *See supra* Sec. II.

Plaintiffs also argue that RFPs 23-36 address "topics that are at the absolute heart of Plaintiffs' professional negligence claims *and* Veolia's defenses."  MTC 25, PageID.74273.  But that general statement does not justify opening the floodgates to documents dated after January 2017.  Plaintiffs offer only one specific example: They say they need to know whether Martin Gnagy knew about LeeAnne Walters, because "Veolia's alleged lack of knowledge regarding the Walters' residence was central to Veolia's defense at trial."  *Id*.  But whether Mr. Gnagy was a party to electronic communications that mention LeeAnne Walters is relevant only if he engaged in those communications *while VNA was in Flint*.  So this argument does not justify obtaining documents after the January 2017 cut-off date.

Finally, RFPs 23-36 are unwarranted because they concern how VNA employees feel about Plaintiffs' counsel, various experts, and the litigation. Many of the 26 topics concern recent communications about the litigation itself, such as: "the litigation associated with the Flint Water Crisis," expert witnesses "Richard Humann" and "Dr. Larry Russell," "Counsel for Plaintiffs," "the Honorable Judith E. Levy," and "the partial settlement approved by the Honorable Judith E. Levy." None of VNA's internal communications on those points is relevant to Plaintiffs' claims.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO DISCOVERY ABOUT VNA'S WORK IN OTHER CITIES

Finally, Plaintiffs seek documents about supposed "internal investigation[s]" about VNA's work in Pittsburgh, PA, and Plymouth, MA, as well as "[a]ll documents pertaining to Veolia's work in Plymouth, MA." *See* MTC Ex. 8, at 39, PageID.74474. Plaintiffs claim to need this information because "how or if Veolia engaged in digital campaigns in Pittsburgh and/or Plymouth" could "shed light on Veolia's intentions regarding the campaign in Flint." MTC 25, PageID.74273.

First, no such internal investigations took place. Second, Plaintiffs' justification is just speculation; there is no reason to think that "digital campaigns" about VNA's work in other cities would reflect VNA's actions relating to Flint. (In fact, this Court has held that Plaintiffs may not mention lawsuits arising out of VNA's work elsewhere. *See* Order, No. 17-10164 ECF No. 655, PageID.43572-43575.). Third, Plaintiffs' requests are disproportional to their claimed need and do not justify

24

the burdensome production they would impose on VNA.

Plaintiffs already know the scope of VNA's digital advertising efforts. The Google ad data already produced show the name and spending amount for every advertising effort undertaken by VNA from November 2019 through November 2022. There was no advertising about Plymouth, and the advertising about Pittsburgh was a limited effort, yielding on average fewer than 10 clicks per month and a monthly spend of less than $30. As Plaintiffs offer no other justification for discovery relating to Pittsburgh and Plymouth, RFPs 38 to 40 should be denied.

## CONCLUSION

The Court should deny the motion to compel.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: December 27, 2022

25

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2022, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:  /s/ James M. Campbell
James M. Campbell
jmcampbell@campbell-trial-lawyers.com