UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re Flint Water Cases

Case No. 16-10444

Judith E. Levy

_____/

United States District Judge

This Filing Relates to:

WALTERS *et al.*, v. CITY OF FLINT *et al.*
Case No. 17-10164

MEEKS *et al.* v. UNITED STATES
Case No. 19-13359

_____/

### Notice of Non-Parties at Fault by the United States of America for *Meeks v. United States*

Defendant, the United States of America, hereby provides its notice of non-parties at fault in this matter consistent with Michigan Court Rule ("MCR") § 2.112(K). Pursuant to MCR § 2.112(K)(3)(b), this "notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault." Pursuant to the Scheduling Order for *Meeks v. United States*, this notice only "relate[s] to issues of liability relevant regardless of the particular Plaintiffs to be selected in the bellwether process" and

1

"the United States may submit additional Notices of Non-Parties at Fault that are specific to the Discovery Group [Bellwether] Plaintiffs" "[w]ithin thirty (30) days after the Fact Discovery Deadline."  *See* ECF No. 976, PageID.69790, *Walters v. United States*, 17-cv-10164 (E.D. Mich. Oct. 13, 2022).

As explained briefly below, numerous nonparties are at fault for Plaintiffs' claims in this case.[1]

## I.   The State of Michigan

Address:     Michigan Department of Attorney General
            P.O. Box 30755
            Lansing, MI 48909

Numerous State of Michigan agencies and personnel are at fault for Plaintiffs' claims in this case, including: (1) the Michigan Department of Environmental Quality; (2) the Michigan Department of Health and Human Services; (3) the Governor's Office; and (4) State-appointed Emergency Managers of the City of Flint. Each will be addressed below.

### A. The Michigan Department of Environmental Quality

Address:     Michigan Department of Attorney General
            P.O. Box 30755
            Lansing, MI 48909

---

[1] In addition, because most of the nonparties listed below are defendants in other, related federal or state litigation, the United States generally provides below the address of the nonparties' attorney.

The Michigan Department of Environmental Quality and at least its following personnel bear primary responsibility for Plaintiffs' claims in this case: (1) Richard Benzie; (2) Stephen Busch; (3) Patrick Cook; (4) Keith Creagh; (5) Michael Prysby; (6) Liane Shekter-Smith; (7) Jim Sygo; (8) Adam Rosenthal; (9) Bradley Wurfel; and (10) Dan Wyant (collectively, "MDEQ").[2] MDEQ's acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including for the following reasons:

(1) MDEQ approved Flint's use of the Flint River as a drinking water source, despite MDEQ knowing: (a) the risks Flint River water posed from historical contamination, including its corrosivity; and (b) that the River water posed an increased microbial and disinfection byproduct exposure risk to the public.

(2) MDEQ decided not to require Flint to implement corrosion control treatment when it switched its source of drinking water to the Flint River, despite: (a) Flint's drinking water previously being subject to corrosion control treatment; and (b) MDEQ knowing the corrosive nature of the Flint River, which resulted in the damaging of—and leaching of lead from—Flint's water distribution pipes.

---

[2] To the extent addresses are needed for these individuals, the United States refers plaintiffs to the notices of appearances in *In re Flint Water Cases*, 16-cv-10444, Veolia's Notice of Nonparties at Fault [ECF No. 672] in that matter, and the notices of appearance in *Walters v. United States*, 17-cv-10164.

MDEQ later admitted that its failure to require corrosion control treatment of the Flint River water was a mistake.

(3) In February 2015, "MDEQ falsely advised the EPA that Flint was using optimized corrosion control" when, in fact, MDEQ knew that Flint was not. *In re Flint Water Cases*, No. 17-10164, 2019 WL 3530874, at \*9 (E.D. Mich. Aug. 2, 2019); *see also id.* at \*17 & \*37 (MDEQ "misled the EPA by falsely suggesting that the proper corrosion control was in use" in Flint). "It was not until April 2015 that the MDEQ admitted to the EPA that [Flint] had no corrosion control protocol in place." *Id.* at \*9.

(4) MDEQ misled EPA regarding the scope and severity of lead in Flint's drinking water.

(5) MDEQ manipulated—and encouraged others to manipulate—lead testing data, resulting in the obfuscation of the scope and severity of lead in Flint's drinking water. *See* State of Michigan's Flint Water Advisory Task Force, Final Report at 29 (Mar. 2016) ("MDEQ . . . advised Flint . . . personnel to make sure the rest of the water samples in the second 6-month monitoring period were clean, since the samples they had already submitted exceeded EPA's action level for lead" and "MDEQ conveniently, and without adequate investigation, excluded [high lead] test results for purposes of determining whether Flint sampling results exceeded EPA's action level.").

4

(6) MDEQ "directly or indirectly altered [lead testing data] reports to remove results showing high lead concentrations in Flint's [drinking] water," which also resulted in obfuscating the scope and severity of lead in Flint's drinking water. *In re Flint Water Cases*, No. 17-10164, 2019 WL 3530874, at *17 (E.D. Mich. Aug. 2, 2019).

(7) MDEQ misrepresented to EPA, other governmental agencies, and the public Flint's compliance with the Safe Drinking Water Act ("SDWA").

(8) MDEQ visited Flint's Water Treatment Plant between March 2013 and April 2104, but failed to recognize—or failed to act in response to the fact—that the Plant was not and would not be ready to treat Flint River water in compliance with regulatory requirements prior to the April 25, 2014 switch to Flint River as the source of Flint's drinking water.

(9) MDEQ approved within days the final permit required for Flint to begin distributing drinking water from the Flint River, (a) without requiring Flint to implement corrosion control treatment; and (b) despite knowing that Flint had not completed other necessary upgrades to its Water Treatment Plant that were months from completion.

(10)    MDEQ failed to rescind this permit or stop the distribution of drinking water from the Flint River when informed by Michael Glasgow—one of the Flint employees responsible for the Water Treatment Plant's operations—about

a week before the switch that the Plant was not and would not be ready by April

25, 2014, to distribute drinking water from the Flint River.

(11)     MDEQ prioritized meeting the deadline for Flint to cease using

drinking water from the City of Detroit over meeting the regulatory requirements

for distributing drinking water from the Flint River.

(12)     MDEQ denied to the public "that there were any problem with Flint's

water, despite all evidence to the contrary," including by "appear[ing] on radio and

television to advise listeners that the water was safe to consume and bathe in, and .

. . discredit[ing] others who suggested that lead was leaching into Flint's water." *In

re Flint Water Cases*, No. 17-10164, 2019 WL 3530874, at *9 & *36 (E.D. Mich.

Aug. 2, 2019).

### B. Michigan Department of Health and Human Services

Address:     Michigan Department of Attorney General
             P.O. Box 30755
             Lansing, MI 48909

The Michigan Department of Health and Human Services and at least its

following personnel also are at fault for Plaintiffs' claims in this case: (1) Susan

Bohm; (2) Jim Collins; (3) Matthew Davis; (4) Linda Dykema; (5) Jay Fiedler; (6)

Nick Lyon; (7) Corinne Miller; (8) Sue Moran; (9) Nancy Peeler; (10) Robert

Scott; and (11) Eden Wells (collectively, "MDHHS").[3] MDHHS' acts or omissions

---

[3] To the extent addresses are needed for these individuals, the United States refers

contributed to, perpetuated, and worsened Flint's drinking water issues, including for the following reasons:

(1)  MDHHS failed to report timely cases of Legionnaires' disease in and around Flint.

(2)  MDHHS failed to inform the public in a timely manner that the increase in Legionaries' cases in and around Flint coincided with the switch to the Flint River.

(3)  MDHHS failed to act timely in response to learning of the increase of Legionnaires' cases in and around Flint and that this increase coincided with the switch to the Flint River.

(4)  MDHHS incorrectly declared the Legionnaire outbreak over in May 2015.

(5)  MDHHS failed to inform the public in a timely manner that the increase in blood lead levels in and around Flint coincided with the switch to the Flint River.

(6)  MDHHS failed to act timely in response to learning of the increase in blood lead levels in and around Flint and that this increase coincided with the switch to the Flint River.

(7)  MDHHS incorrectly attributed increased blood lead levels to normal seasonal fluctuations and not the switch to the Flint River.

---

plaintiffs to the notices of appearances in *In re Flint Water Cases*, 16-cv-10444, Veolia's Notice of Nonparties at Fault [ECF No. 672] in that matter, and the notices of appearance in *Walters v. United States*, 17-cv-10164.

(8) MDHHS failed to analyze in a timely manner that the increase in in blood lead levels in and around Flint coincided with the switch to the Flint River.

### C. Former Governor Rick Snyder

Address:    Charles Robert Quigg
            Warner Norcross & Judd LLP
            150 Ottawa Ave NW Suite 1500
            Grand Rapids, MI 49503

Former Governor Rick Snyder's ("Former Governor") bases for fault for Plaintiffs' claims in this case include failing to intervene sooner than (a) October 2015 to order Flint to cease distributing drinking water from the Flint River and (b) January 2016 to declare a state of emergency, despite:

(1) The Former Governor was warned that the timeline for transitioning Flint's drinking water source to the Flint River was too rushed and could result in problems.

(2) The Former Governor's office received citizen complaints regarding Flint's drinking water as early as May 2014.

(3) The Former Governor's senior staff recommended in October 2014 that Flint should return to drinking water supplied by Detroit (a notion that appears to have been ultimately rejected, at least in part, for cost reasons).

(4) The Former Governor was aware of the Legionnaire cases as early as January 2015.

(5)  The Former Governor's Chief of Staff proposed in March 2015 to buy and distribute bottled water in Flint in response to citizen's concerns.

(6)  The Former Governor's Chief of Staff emailed MDHSS Director Nick Lyon in July 2015 that the concerns of Flint residents about lead in drinking water are being disregarded by the State.

### D. Michigan Department of Treasury

Address:      430 W. Allegan Street
              Lansing, MI 48922

The Michigan Department of Treasury and at least former State Treasurer Andrew Dillon[4] (collectively, "Treasury") also are at fault for Plaintiffs' claims in this case because the Treasury's acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including for the following reasons:

(1)  The Treasury failed in its duty to oversee Flint's Emergency Managers.

(2)  The Treasury recommended that Flint switch from drinking water supplied by the Detroit to water supplied by the Karegnondi Water Authority ("KWA") via a new pipeline to be constructed from Lake Huron.

---

[4] To the extent addresses are needed for Mr. Dillon, the United States refers plaintiffs to the notices of appearances in *In re Flint Water Cases*, 16-cv-10444, Veolia's Notice of Nonparties at Fault [ECF No. 672] in that matter, and the notices of appearance in *Walters v. United States*, 17-cv-10164.

9

(3)  The Treasury rejected Detroit's final bid for continuing to provide drinking water to Flint until the KWA pipeline was complete, setting in motion the decision to use the Flint River as an interim source.

(4)  The Treasury assisted in the development of an interim plan where Flint sourced its drinking water from the Flint River between April 2014 and October 2016 while Flint awaited completion of the KWA pipeline, despite being aware of a 2011 engineering report recommending against using the Flint River, unless and until extensive upgrades were made to Flint's Water Treatment Plant in order to enable it to treat the Flint River water properly.

### E. State-Appointed Emergency Managers

Before and while Flint switched its water source to the Flint River, Flint had several State-appointed Emergency Managers who should be allocated fault for Plaintiffs' claims in this case. Each are addressed below.

### 1. Edward Kurtz

Address:     Michael J. Gildner
             Simen, Figura, and Parker
             5206 Gateway Centre, Suite 200
             Flint, MI 48507

Mr. Kurtz served as Flint's Emergency Manager from August 2012 through July 2013. Mr. Kurtz shares fault for Plaintiffs' claims in this case because his acts or omissions contributed to Flint's drinking water issues, including for the following reasons:

10

(1) Mr. Kurtz advocated for, requested the Treasury's approval of, and executed the final agreement committing Flint to receiving its drinking water from the KWA pipeline, which set in motion the decision to use the Flint River as an interim drinking water source.

(2) Mr. Kurtz assisted in the development of an interim plan where Flint sourced its drinking water from the Flint River while it awaited completion of the KWA pipeline, despite being aware of a 2011 engineering report recommending against using the Flint River, unless and until extensive upgrades were made to Flint's Water Treatment Plant in order to enable it to treat the water properly.

     *2.  Darnell Earley*

Address:     Todd Russell Perkins
                   Perkins Law Group, PLLC
                   615 Griswold Street, Suite 400
                   Detroit, MI 48226

Mr. Earley served as Flint's Emergency Manager from September 2013 to January 2015. Mr. Earley shares fault for Plaintiffs' claims in this case because his acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including for the following reasons:

(1) Mr. Earley was aware, prior to the switch, that Flint's Water Treatment Plant lacked the necessary upgrades and resources to treat Flint River water safely and nonetheless failed to stop the distribution of drinking water from the Flint River.

(2) Mr. Earley presided over the switch of Flint's drinking water source to the Flint River.

(3) Mr. Early was aware of the public's complaints regarding the water they received from the Flint River, but failed to take adequate and timely action to address these concerns.

(4) Mr. Earley publicly denied links between Legionnaires' disease and the switch, despite knowing other agencies concluded there was a link.

(5) In October 2014, Mr. Earley rejected—at least in part for financial reasons—State officials' proposal to switch back to water supplied by Detroit in response to the water quality problems with the Flint River water.

(6) In a January 9, 2015 press release, Mr. Earley again rejected calls to switch back to water supplied by Detroit for financial reasons.

(7) Mr. Earley rejected Detroit's January 12, 2015 offer to supply drinking water to Flint.

### 3. Gerald Ambrose

Address:    Barry A. Wolf
                  Barry A. Wolf, Attorney at Law, PLLC
                  503 S. Saginaw Street, Suite 1410
                  Flint, MI 48502

Mr. Ambrose served as Flint's Emergency Manager from January 2015 to April 2015. Mr. Ambrose shares fault for Plaintiffs' claims in this case because his

acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including as follows:

(1) Mr. Ambrose was aware of the public's complaints regarding the water they received from the Flint River, but failed to take adequate and timely action to address these concerns.

(2) Mr. Ambrose rejected Detroit's January 29, 2015 offer to supply drinking water to Flint.

(3) Mr. Ambrose rejected—at least in part for financial reasons—a Flint councilman's February 2015 request to return to drinking water supplied by Detroit.

(4) Mr. Ambrose was informed at least as early as March 2015 that the observed increase in Legionnaires' disease corresponded with the switch to the Flint River, but failed to take adequate action to address these concerns.

(5) Mr. Ambrose vetoed—for financial reasons—the Flint City Council's March 25, 2015 vote to return to drinking water supplied by Detroit.

## II.  <u>The City of Flint</u>

Address:     William Kim
             City of Flint Law Department
             1101 S. Saginaw Street
             Flint, MI 48502

### A. Former Mayor Dayne Walling

Dayne Walling served as Flint's mayor from August 2009 through November 2015 ("Former Mayor").  The Former Mayor shares fault for Plaintiffs' claims in this case because his acts or omissions contributed to, perpetuated and worsened Flint's drinking water issues, including as follows:

(1) The Former Mayor assisted in the development of the interim plan where Flint sourced its drinking water from the Flint River between April 2014 and October 2016 while Flint awaited completion of the KWA pipeline, despite being aware of a 2011 engineering report recommending against using the Flint River, unless and until extensive upgrades were made to Flint's Water Treatment Plant in order to enable it to treat the water properly.

(2)  The Former Mayor publicly denied concerns with the Flint drinking water (including in a July 2015 television broadcast), even after he became aware of concerns that the switch to the Flint River had resulted in both increased cases of Legionnaire's disease and increased concentrations of lead in Flint's drinking water.

### B. Flint Department of Public Works

The Flint Department of Public Works and at least its following personnel also share fault for Plaintiffs' claims in this case:  (1) Howard Croft; (2) Michael

Glasgow; (3) Daugherty Johnson; and (4) Brent Wright (collectively, "DPW").[5]

DPW's acts or omissions contributed to, perpetuated, and worsened Flint's

drinking water issues, including as follows:

(1) DPW assisted in the development of the interim plan where Flint sourced its

drinking water from the Flint River between April 2014 and October 2016 while

Flint awaited completion of the KWA pipeline, despite being aware of a 2011

engineering report recommending against using the Flint River, unless and until

extensive upgrades were made to Flint's Water Treatment Plant in order to enable

it to treat the water properly.

(2) DPW lacked the adequate technical training and experience to design,

operate, and manage Flint's Water Treatment Plant in accordance with regulatory

requirements.

(3) DPW was aware—and disregarded repeated warnings—that Flint's Water

Treatment Plant lacked the operational, technical, and resource capabilities to

function as Flint's full-time drinking water treatment facility.

(4) Immediately prior to the switch, DPW knew that the Flint Water Treatment

Plant had not completed the necessary upgrades, was not adequately staffed, and

---

[5] To the extent addresses are needed for these individuals, the United States refers plaintiffs to the notices of appearances in *In re Flint Water Cases*, 16-cv-10444, Veolia's Notice of Nonparties at Fault [ECF No. 672] in that matter, and the notices of appearance in *Walters v. United States*, 17-cv-10164.

was not ready to treat the Flint River water properly, but nonetheless proceeded with the switch.

(5) DPW failed to implement a test run of the Flint Water Treatment Plant's ability to treat the Flint River water properly to ensure that Flint could meet regulatory requirements before distributing water to Flint's residents.

(6) DPW failed to implement corrosion control treatment of the Flint River water before or immediately after the switch, which resulted in the damaging of— and leaching of lead from—Flint's water distribution pipes.

(7) DPW was aware of the water quality issues resulting from the switch, including the increase in Legionnaires' disease and increased lead concentrations in drinking water, but failed to take adequate and timely steps to correct these issues and instead publicly denied citizens' water quality concerns.

(8) Indeed, some of DPW's acts or omissions exacerbated Flint's drinking water issues, including the addition of ferric chloride to the Flint River water that further increased the corrosivity of the drinking water in Flint's water distribution pipes.

(9) DPW failed to conduct a census of lead service lines as required by federal regulations, rendering Flint unable to identify and properly monitor higher risk homes as required under federal regulations. This failure delayed the identification of—and obfuscated—the scope and severity of lead in Flint's drinking water.

(10)     DPW failed to conduct proper lead and copper compliance sampling (including failing to select homes with known lead service lines for testing), which delayed the identification of—and obfuscated—the scope and severity of lead in Flint's drinking water.

(11)     DPW manipulated lead testing data (including removing high lead test results from reports), resulting in the obfuscation of the scope and severity of lead in Flint's drinking water and the prolonging of the Flint's drinking water issues.

## III.   The City of Flint's Engineering Contractors

Flint hired contractors to advise it on issues related to switching the source of drinking water to the Flint River and on water quality issues, including: (1) Veolia North America, LLC, Veolia North America, Inc., Veolia Water North America Operating Services, LLC, and their affiliates (collectively, "Veolia"); (2) Lockwood, Andrews & Newman, PC, Lockwood Andrews & Newman, Inc., and the Leo A. Daly Company (collectively, "LAN"); and (3) Rowe Professional Services Company ("Rowe"). Each share fault for Plaintiffs' claims in this case as explained below.

### A. Veolia

Address:     James Campbell
             Campbell, Conroy & O'Neil P.C.
             20 City Square, Suite 300
             Boston, MA 02129

17

In early 2015, Flint hired Veolia to review Flint's water system—including the operations of its Water Treatment Plant, its drinking water distribution system, and water quality data—in response to Flint's and the public's growing concerns. Veolia shares fault for Plaintiffs' claims in this case because its acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including:

(1) Veolia issued an interim report to Flint in February 2015 that: (a) indicated that Flint was in compliance with drinking water standards; and (b) failed to recommend the implementation of corrosion control treatment.

(2) Veolia issued a final report to Flint in March 2015 that: (a) again indicated that Flint was in compliance with drinking water standards; and (b) failed to recommend the implementation of corrosion control treatment.

(3) Veolia recommended that Flint add ferric chloride to its drinking water, which increased the corrosivity of the drinking water and thereby exacerbated both: (a) the leaching of lead from the water distribution pipes; and (b) the damage to the piping in Flint's drinking water distribution system, making it more difficult and time consuming to reverse the effects of Flint's drinking water issues.

**B. LAN**

Address:     Wayne Mason
             Faegre Drinker Biddle & Reath LLP
             1717 Main Street, Suite 5400
             Dallas, TX 75201

18

LAN has advised Flint and its State-appointed Emergency Managers regarding the use of the Flint River as a drinking water source from at least 2011 through 2015. LAN shares fault for Plaintiffs' claims in this case because its acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including:

(1) In or around June 2013, LAN advised Flint and MDEQ that the Flint River could be a viable source of drinking water for the City and that the upgrades to Flint's Water Treatment Plant necessary to treat the Flint River water properly could be completed by April 2014, despite LAN cautioning against using Flint River water in 2011 and knowing that the Water Treatment Plant required over $69 million in improvements to treat the Flint River water safely.

(2) LAN participated in the decision not to implement corrosion control treatment as soon as Flint switched its drinking water source to the Flint River.

(3) LAN failed to correct this failure to implement corrosion control treatment after the switch.

### C. Rowe

Address:     Craig S. Thompson
             Sullivan, Ward, Patton, Gleeson & Felty, P.C.
             400 Galleria Officentre Ste 500
             Southfield, MI 48034

Rowe has provided engineering services to and has acted as Flint's City Engineer since at least 2007.  Rowe shares fault for Plaintiffs' claims in this case

because its acts or omissions contributed to, perpetuated, and worsened Flint's drinking water issues, including:

(1)  Rowe participated in the decision to use the Flint River as a drinking water source, despite cautioning against doing so in 2011 and knowing that the Water Treatment Plant required over $69 million in improvements to treat the Flint River water safely.

(2)  Rowe failed to recommend implementing corrosion control treatment in its August 2013 engineering proposal for upgrades to Flint's Water Treatment Plant necessary to treat Flint River water safely.

(3)  Rowe participated in the decision not to implement corrosion control treatment as soon as Flint switched its drinking water source to the Flint River.

(4)  Rowe failed to correct this failure to implement corrosion control treatment after the switch.


Dated: January 4, 2023                    Respectfully submitted,


                                          J. Patrick Glynn
                                          Director, Torts Branch

                                          Christina M. Falk
                                          Assistant Director, Torts Branch

                                          Eric A. Rey
                                          Michael L. Williams
                                          Jason T. Cohen

Daniel C. Eagles
Timothy B. Walthall
Trial Attorneys, Torts Branch


*s/ Eric A. Rey*
ERIC A. REY (DC Bar # 988615)
Trial Attorneys, Torts Branch
Environmental Tort Litigation
175 N Street, N.E.
Washington, DC 20002
e-mail: eric.a.rey@usdoj.gov
phone: 202-616-4224


## CERTIFICATE OF SERVICE

I hereby certify that, on January 4, 2023, the foregoing was filed via the

U.S. District Court's CM/ECF electronic filing system and a copy thereof was

served upon all counsel of record.


*s/ Eric Rey*
ERIC REY

21