# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*

_____/     *The Hon. Judith E. Levy*


*Bellwether III Case No. 17-10164*

_____/


## PLAINTIFFS' RESPONSE IN OPPOSITION TO VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S, VEOLIA NORTH AMERICA, INC.'S, AND VEOLIA NORTH AMERICA, LLC'S MOTION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND.............................................................. 3

APPLICABLE LAW .......................................................................... 6

ARGUMENT...................................................................................... 7

    A.   Veolia's False and Conclusory Statement That Deposing Ferrara Will Somehow Chill Veolia's First Amendment Rights Does Not Establish Good Cause. .......................................... 7

    B.   Although Plaintiffs Do Not Have to Satisfy the *Shelton* Factors to Depose Ferrara, Said Factors Are Satisfied. ..................... 9

        1.  The Information Sought Is Relevant............................. 11

        2.  The Information Sought Is Not Privileged .................... 13

        3.  There Are No Other Means to Obtain the Information Sought ........................................................................ 16

        4.  Information About Veolia's Public Statements Is Crucial to Preparation of Plaintiffs' Case ................... 17

    C.   The Deposition Will Not Unduly Burden or Harass Ferrara or Veolia. ............................................................................... 18

CONCLUSION ............................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Abington Emerson Capital, LLC v. Landash Corp*.,
  No. 2:17-cv-143, 2019 U.S. Dist. LEXIS 135430 (S.D. Ohio Aug. 12, 2019) .. 10

*Blumberg v. Ambrose*,
  No. 13-CV-15042, 2014 U.S. Dist. LEXIS 142781 (E.D. Mich. Oct. 7, 2014) ... 6

*Calvin Klein Trademark Trust*,
  198 F.R.D. 53 (S.D.N.Y. 2000) .......................................................................... 15

*Clark v. Louisville Jefferson Cnty. Metro Gov't*,
  No. 3:17-CV-419-GNS-CHL, 2021 U.S. Dist. LEXIS 84654 (W.D. Ky. May 3,
  2021) ................................................................................................................... 10

*Conti v. Am. Axle & Mfg*.,
  326 F. App'x 900 (6th Cir. 2009) ...................................................................... 11

*Dyna Grind Servs. v. City of Riverview*,
  No. 255825, 2006 Mich. App. LEXIS 1545 (Mich. Ct. App. May 4, 2006 ....... 15

*Gentile v. State Bar of Nev*., 501 U.S. 1030 (1991)................................................. 13

*HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.)*,
  927 F.3d 919 (6th Cir. 2019).......................................................................... 8, 14

*In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*,
  293 F.3d 289 (6th Cir. 2002)............................................................................. 15

*In re Search Warrant Executed at Law Offices of Stephen Garea*,
  No. 97-4112, 1999 U.S. App. LEXIS 3861 (6th Cir. Mar. 5, 1999).................. 15

*Lear Corp. v. NHK Seating of Am., Inc*.,
  No. 13-12937, 2022 U.S. Dist. LEXIS 139612 (E.D. Mich. May 9, 2022).......... 6

*Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control,
  Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306 (E.D. Mich. Nov. 3,
  2015) ..................................................................................................................... 6

*Nash v. City of Grand Haven*, 321 Mich. App. 587 (Mich. Ct. App. 2017) .......... 14

# TABLE OF AUTHORITIES
## (continued)

*Nationwide Mut. Ins. v. Home Ins*.,
   278 F.3d 621 (6th Cir. 2002)....................................................................... 9

*Nix v. Sword*,
   11 F. App'x 498 (6th Cir. 2001) .............................................................. 6

*Parrottino v. Bankers Life & Cas. Co.*,
   No. 12-CV-13084, 2014 WL 1516195 (E.D. Mich. Apr. 17, 2014)................... 11

*Schnatter v. 247 Grp., LLC*,
   No. 3:20-CV-00003-BJB-CHL, 2021 U.S. Dist. LEXIS 208324 (W.D. Ky. Oct.
   28, 2021) ............................................................................................. 15

*Shelton v. American Motors Corp.*,
   805 F.2d 1323 (8th Cir. 1986)................................................................... 9

*Siser N. Am., Inc. v. Herika G. Inc*.,
   325 F.R.D. 200 (E.D. Mich. 2018) ........................................................... 19

*Underwood v. Riverview of Ann Arbor*,
   No. 08-CV11024-DT, 2008 U.S. Dist. LEXIS 107323, 2008 WL 5235992 (E.D.
   Mich. Dec. 15, 2008) .......................................................................... 8, 9

*United States v. Marsten Apartments*,
   CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262 (E.D. Mich. June
   16, 1997) ........................................................................................... 19

*United States v. Megale*,
   235 F.R.D. 151, 164 (D. Conn. 2006).......................................................... 17

*Waters v. Drake*, No. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179 (S.D. Ohio
   Dec. 8, 2015) ................................................................................. 14, 16

## Other Authorities

MRPC 3.3 ............................................................................................. 18

## Rules

Fed. R. Civ. P. 26(b) ............................................................................. 11

Fed. R. Civ. P. 26(b)(5)(A)...................................................................... 14

## TABLE OF AUTHORITIES
### (continued)

Fed. R. Civ. P. 26(c) ................................................................ 6

Fed. R. Civ. P. 30(a)(1) ........................................................... 6

Fed. R. Civ. P. 30(c)(2) ........................................................... 16

## INTRODUCTION

Plaintiffs justifiably believe that Veolia Water North America Operating Services, LLC, Veolia North America, Inc., and Veolia North America, LLC (collectively "Veolia") improperly efforted to affect the outcome of the Bellwether I trial and the larger litigation. Veolia utilized their website, veoliaflintfacts.com, in concert with their Twitter account, @VNAFlintFacts, and Google Dynamic Search Ads[1] to create a significant public campaign of misinformation. Instead of welcoming the inquiry to quell concerns on this subject, the Veolia entities have habitually objected to most discovery associated with Plaintiffs' efforts to uncover what Veolia did, how they did it, who created the plan, and who was responsible for implementing it.[2] Most recently, they have moved for a protective order to block the deposition of Francis X. Ferrara. ECF No. 2307 (Veolia "Motion for Protective Order Barring the Deposition of Francis Ferrara").

Ferrara is a former Veolia employee. He is an attorney. And he retired in August 2022 at the conclusion of the Bellwether I trial. Ex. 1 (Screen Shot of Ferrara

---

[1] There are effective ways to utilize Twitter to increase Google search visibility. *See, e.g.,* https://www.searchenginejournal.com/increase-google-search-visibility-twitter/367324/ (last visited Jan. 17, 2023).

[2] It is likely that Veolia also utilized Facebook, Instagram, and other social media applications for the same purpose. Plaintiffs are in the process of requesting information from Veolia regarding same.

LinkedIn Profile). Ferrara was present in the courtroom for virtually the entirety of the trial. Ex. 2, ¶¶3-5 (Declaration of Corey Stern).

As the Court is aware, a Veolia, S.A. employee, Pierre Farcot, has been implicated by at least one witness as having played a significant role in Veolia's misinformation campaign during the trial. Ex. 3 (Excerpt of Carrie Griffiths Deposition, part 1). That same witness explained that *lawyers* reviewed content for Veolia's campaign before it was pushed out to the public. Ex. 4 (Relevant Portions of Carrie Griffiths Deposition, part 2).[3]

During trial, Ferrara and Farcot stayed at the same hotel at the same time. Ex. 5 (Records from Graduate Hotel, Ann Arbor). Further, counsel for Plaintiffs often observed Ferrara and Farcot talking in the courtroom and hallways during trial, as well as on multiple occasions looking at and discussing something on a cellular telephone. *See* Ex. 2, ¶5.

Veolia's Motion for Protective Order should be denied. Ferrara can and *must* be deposed. The little information that Plaintiffs currently have denotes that Ferrara is no longer an employee of any Veolia entity; he likely has information about the campaign; he knows about his own role therein; he is very likely familiar with

---

[3] It should be noted that after a break in the deposition, when Veolia's counsel examined Griffiths, she claimed to have "no idea" whether "any of the lawyers involved in the trial reviewed the tweets[.]" Ex. 4. This necessitates Ferrara's deposition even more.

Farcot's role in the campaign as well as how to contact him; and he may have approved campaign content as it was created and being disseminated to the public.

## FACTUAL BACKGROUND

During the trial, Plaintiffs' counsel became aware of the Twitter account and its blatant attempts to push individuals to Veolia's website, veoliaflintfacts.com. Plaintiffs believe Veolia used the Twitter account and website as part of a scheme to spread misinformation about the trial as it happened in real time, as well as about larger aspects of the litigation, with the desired effect that this misinformation would reach sitting and future jurors. While much is unknown about Veolia's intentions and the full scope of the campaign, what is currently known is beyond concerning and warrants significant and continued investigation.

First, despite repeatedly claiming the Twitter account and website are not meant to influence or communicate with jurors, directly following the conclusion of the trial, @VeoliaFlintFacts posted a series of tweets[4] **speaking directly to jurors,** "thank[ing] all eight members of the jury for their dedication and commitment[,]" rejoicing that "the meritless allegations of the plaintiffs' lawyers failed to convince

---

[4] Also referred to as a "thread." This thread is pinned to the top of @VeoliaFlintFacts' Twitter page, making it the first thing users see when they visit the page. The thread is also replicated on the Website, under the "Facts from the courtroom" section. *See* Ex. 6 (Screenshots of "Facts from the courtroom" from VeoliaFlintFacts.com) at 80. The Facts from the courtroom" section of the Website generally replicates all the tweets from the Twitter Account.

the jury." Ex. 7 (Screenshots of various tweets from @VeoliaFlintFacts) at 1-3.[5] The thread inexplicably celebrated that "plaintiffs' lawyers [sic] attempts to create a corporate scapegoat … while shielding the government officials who are truly responsible from facing justice, was a waste of time, energy, and money." *Id.*

Second, on September 8, 2022, *The Detroit News* published an investigative article analyzing Veolia's digital advertising campaign from 2016 to present day. Ex. 8 (Kayla Ruble, "Company sued over Flint's water crisis wages digital PR war during trial," *The Detroit News*). Ruble described revelations that Veolia used "[D]ynamic [Search] [A]ds,"[6] targeting Google searches from direct users to the website. Ruble further explained how Veolia used Dynamic Search Ads to promote the website. A review of the website today shows that despite content dormancy for a long period of time prior to trial, immediately before and during trial significant content was added, including a section titled "Facts from the Courtroom." Public data shows that veoliaflintfacts.com was created in 2016. New content was added four times that year; once in 2017; once in 2018; three times in 2019; and twice in 2020. But in 2021, before the trial, new content was added sixteen times; and

---

[5] References to exhibits refer to PDF pagination.

[6] Dynamic search ads are a form of advertising Google offers ad purchasers to "find customers searching on Google for precisely what you offer." *See* Ex. 9, ("About Dynamic Search Ads, Google Ads Help."). These ads offer a variety of targeting options which allow ad purchasers to geotarget at a ZIP code level as well as radius targeting. Both forms of targeting allow ad purchasers to tailor their ad buys to a relevant audience.

between March and September 2022 (during trial), new and nuanced content was added **seventy** times.[7]

As part of the reporting, a Veolia spokesperson confirmed Veolia's use of Dynamic Search Ads and admitted that "[w]ith [D]ynamic [Search] [A]ds … Google automatically matches a URL page that is relevant to a search term the user is searching … [which] happens on the Google side based on their algorithm of information they have on the user who is searching." *Id.* at 2. Note that Google's Dynamic Search Ads **target** users based on content. *See* Ex. 11, ¶16 (Kelly Cutler Affidavit). Dynamic Search Ads drive qualified traffic to a website, using its content to **target** ads to people searching for specific information. *Id.*, ¶¶12-13. To utilize Dynamic Search Ads most effectively, a company will include relevant and up-to-date content as well as titles, descriptions, images, and URLs in search results. *Id.*, ¶15.

The events described above – Veolia's posts speaking **directly** to the jurors and the investigation conducted by Ruble – are but two examples supporting the need for information from Veolia regarding the scope and intention at the core of their ongoing campaign. Based on his presence during trial, his interactions with

---

[7] This information can be accessed at https://archive.org/. *See also* Ex. 10, (Screenshots of certain content added around the time of the first Bellwether trial).

Farcot, and his former role with Veolia, Ferrara is well suited to provide important information regarding the misinformation campaign.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure Rule 30(a)(1), "[a]ny person with relevant information may be subject to a deposition, including an attorney for a party." *Lear Corp. v. NHK Seating of Am., Inc*., No. 13-12937, 2022 U.S. Dist. LEXIS 139612, at *9 (E.D. Mich. May 9, 2022). "The scope of discovery under the Federal Rules … is traditionally quite broad." *Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control, Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306, at *11 (E.D. Mich. Nov. 3, 2015).

Federal Rule 26(c) gives the Court discretion to limit discovery only "for good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). A movant "demonstrates good cause by articulating 'specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.'" *Blumberg v. Ambrose*, No. 13-CV-15042, 2014 U.S. Dist. LEXIS 142781, at *4 (E.D. Mich. Oct. 7, 2014) (quoting *Nix*).

6

## ARGUMENT

Under any legal analysis, Ferrara's deposition is relevant, appropriate, and fundamentally critical. None of Veolia's arguments to the contrary dispute this truth, and therefore, the Court should deny Veolia's improper attempt to block it.

### A. Veolia's False and Conclusory Statement That Deposing Ferrara Will Somehow Chill Veolia's First Amendment Rights Does Not Establish Good Cause.

Veolia argues that requiring Ferrara to sit for a deposition will chill their right to "make public statements about what is happening in the case[,]" and their right to "freely speak about this litigation even if [their] statements [are] unfair or biased." ECF No. 2307, PageID.74569.

As an initial matter, this is a curious position given that Veolia simultaneously argues that Ferrara's knowledge of Veolia's public relations is "limited." ECF No. 2307, PageID.74578. Nonetheless, Veolia points to no case law supporting their argument that Ferrara's deposition will effectively chill *their* speech. Rather, Veolia sews a patchwork quilt of inapplicable caselaw, allegedly supporting why their statements are constitutionally protected and permissible. Veolia even goes so far as to point to a case[8] involving **jury tampering**, arguing that "even if [Veolia] had

---

[8] A state court case from the Supreme Court of South Dakota—*State v. Springer-Ertl*, 610 N.W.2d 768 (S.D. 2000).

taken steps to ensure that its speech was heard in Michigan, that is not only permissible but constitutionally protected." ECF No. 2307, PageID.74569-74570.

But Veolia makes no real attempt to explain how an unconstitutional chilling of their speech will occur. They merely set out two vague sentences stating: "Few things will silence litigants faster than the possibility that their lawyers will be deposed if the litigants dare to speak publicly about what is happening. Lawyers too will hesitate to represent litigants who speak out, for fear that they will be deposed because of their clients' speech." ECF No. 2307, PageID.74572.

These two barebone statements are not enough to meet the requisite standard of good cause. *See HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.),* 927 F.3d 919, 929 (6th Cir. 2019) ("To show good cause for a protective order, the moving party is required to make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'") (citation omitted); *Underwood v. Riverview of Ann Arbor*, No. 08-CV11024-DT, 2008 U.S. Dist. LEXIS 107323, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008) (burden to establish good cause for protective order not met where party provided "no specific facts demonstrating a serious injury to support . . . conclusory statement [of harm]").

Further, these statements are disingenuous. This is not the first-time counsel for Veolia would be deposed or testify. As the Court is aware, Veolia previously

sought (and fought) **to have their then current senior corporate counsel, Brian Clarke, testify at trial**.[9] Moreover, Veolia recently posted a statement on their Twitter account (@VNAFlintFacts) and the subject website, addressing the discovery dispute and contradicting their own First Amendment argument. *See* Ex. 13 (January 5, 2023 Twitter post and website statement). Therein, Veolia brazenly asserts that: "We are honor-bound to … defend our company's reputation against these allegations of professional negligence that we know to be false. Fortunately, the First Amendment protects this right, even if some don't like it." *Id.* Thus, Veolia's claims that their speech will be chilled by allowing the deposition of Ferrara to go forward are not only unfounded, but they are also dishonest.

### B. Although Plaintiffs Do Not Have to Satisfy the *Shelton* Factors to Depose Ferrara, Said Factors Are Satisfied.

Veolia asserts that to depose opposing counsel, Plaintiffs must meet the heightened showing set forth by the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). However, it is unlikely that *Shelton* applies to the current situation in this Circuit.

First, the case Veolia cites to support that it does – *Nationwide Mut. Ins. v. Home Ins.*, 278 F.3d 621, 628 (6th Cir. 2002) – is inapposite as it applied the *Shelton*

---

[9] Clarke was previously deposed in this case. *See* Ex. 12, Cover Pages of Clarke Deposition(s).

factors to a request to depose what was *current opposing litigation counsel*, **not** *former in-house counsel.*

Second, it is questionable whether Courts in the Sixth Circuit should apply *Shelton* to attorneys other than litigation counsel. This is evidenced by the fact that "district courts in the Sixth Circuit are split as to the definition of 'opposing counsel' [for purposes of] *Shelton's* application." *Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 3:17-CV-419-GNS-CHL, 2021 U.S. Dist. LEXIS 84654, at *14 & n1. (W.D. Ky. May 3, 2021) (citing cases).

Third, and in furtherance of the second point, there is not a scintilla of legal support in this Circuit – nor does Veolia cite any – for the proposition that the *Shelton* test should apply to **former** counsel. Indeed, the case law suggests the opposite. *See Abington Emerson Capital, LLC v. Landash Corp.*, No. 2:17-cv-143, 2019 U.S. Dist. LEXIS 135430, at *4 (S.D. Ohio Aug. 12, 2019) ("[W]hen a party seeks to depose a lawyer who is not serving as opposing counsel or who is not currently involved in the litigation, the court may decline to apply *Shelton*."); *id.* ("As former in-house counsel, the rationale behind the *Shelton* burden-shifting approach is not necessarily applicable."); *id.* (citing cases).

In any event, here, Plaintiffs satisfy the *Shelton* factors, *to wit*: (1) "'the information sought is relevant and nonprivileged[;]'" (2) "'no other means exist to

obtain the information[;]'" and (3) "'the information is crucial to the preparation of the case.'" *Nationwide*, 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).

## 1. The Information Sought Is Relevant

Veolia's misinformation campaign is highly relevant to Plaintiffs' claims (as well as to Veolia's defenses). Rule 26(b) defines the scope of discovery as *any* non-privileged matters *relevant* to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b). Courts interpreting this standard have repeatedly held that the scope of discovery is "traditionally quite broad." *Parrottino v. Bankers Life & Cas. Co.*, No. 12-CV-13084, 2014 WL 1516195, at *3 (E.D. Mich. Apr. 17, 2014).[10]

It goes without saying that any party's potential attempts to influence jurors outside of the trial itself is of consequence to the determination of the action and thus is relevant. But even beyond targeting jurors, Veolia's campaign should be of major concern to everyone involved in the litigation. Their public posts speak directly to virtually *all* the facts associated with the litigation. The substance of the posts is

---

[10] Indeed, the Sixth Circuit stated: "As the Supreme Court has instructed, because 'discovery itself is designed to help define and clarify the issue,' the limits set forth in Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 904 (6th Cir. 2009) (Internal citation omitted).

simply inappropriate.[11] Veolia disparages Plaintiffs' experts.[12] Veolia cherry-picks

witness testimony.[13] Veolia persistently touts its main defense — that the Flint Water

Crisis was a massive failure of government on all levels.[14] And Veolia negatively

comments upon[15] and mischaracterizes[16] this Court's rulings.

Taken as a whole, these public posts constitute extra judicial statements by

Veolia, which effectively create a shadow trial, where Veolia can manipulate the

---

[11] Contrary to counsel for Veolia's argument at the November 30 status conference, Plaintiffs' position is – and has always been – that the content of many posts on the Twitter page and the website are problematic, in that they are either utterly false or intentionally misleading. *See* Ex. 14 (Transcript of Status Conference) at PageID 74171-74179.

[12] For example, *see* Veolia's June 2, 2022 post: "FACT: Dr. William Bithoney, a paid witness who recently testified in the #FlintWaterCrisis trial, relied on the dubious findings of Aaron Specht and Dr. Mira Krishnan to reach his conclusions. Here's why Aaron Specht and Dr. Krishnan's reports are flawed." Ex. 7 (Screen Shots of Various tweets from @VeoliaFlint Facts) at 66.

[13] For example, *see* Veolia's June 23, 2022 post: "Dr. Graham Gagnon confirmed VNA's recommendations to the City for minimizing natural organic material and corrosion control were consistent with scientific knowledge and would have addressed the lead issues in Flint had they been implemented. Ex. 7 at 43.

[14] For example, *see* Veolia's March 8, 2022 post: "City, State and Federal officials failed in their duties to protect the health & wellbeing of #Flint residents. Not only did they not fix the problem, they lied to minimize the scale of the crisis, and they deceived both the citizens of Flint, LAN & VNA." Ex.7 at 142.

[15] For example, *see* Veolia's May 24, 2022 post: "The 6th Circuit's decision today to schedule a hearing for late July-when our trial will be over by then-continues more than eight years of utter failure to hold those responsible for the #FlintWaterCrisis accountable." Ex. 7 at 68.

[16] For example, *see* Veolia's March 25, 2022 post: "Earlier this week, Judge Levy affirmed that former Gov Rick Snyder & other gov't officials responsible for the #FlintWaterCrisis cannot hide behind the 5th amendment to avoid testifying." Ex. 7at 122.

evidence without the safeguards of the Federal Rules of Evidence to influence jurors and witnesses. Obviously, this adds a more subtle, but highly relevant concern: the impact of Veolia's campaign on the overall fairness of a trial.

And this is not a new concern, nor is it a concern harbored by Plaintiffs alone. As the Court discussed during its November 30, 2022 conference, the Supreme Court recognizes that "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991). Also, the American Bar Association recently published an article explaining how social media posts have the potential to "hijack" the impartiality and fairness of a trial. *See* Ex. 15 (*ABA Journal Magazine*, "How Social Media Hijacked the Depp v. Heard Defamation trial" (October 1, 2022)).

Given the forgoing, it is beyond any doubt that the evidence Plaintiffs seek through Ferrara's deposition — information related to whether and how Veolia targeted and continues to target jurors, and the scope and intention behind Veolia's campaign — is relevant. Indeed, one would be hard-pressed to find evidence that is more consequential to the determination of facts at a trial.

## 2. The Information Sought Is Not Privileged

A party claiming privilege under these circumstances must: (1) expressly make the claim; (2) describe the nature of the documents, communications, or

tangible things not produced or disclosed; and (3) do so in a manner that, without revealing information that is itself privileged or protected, will enable other parties to assess the claim of privilege. Fed. R. Civ. P. 26(b)(5)(A). Veolia has failed parts two and three of the rule. Their description of what they assume will be privileged and disclosed, ECF No. 2307, PageID.74575-74577, lacks the requisite specificity. *Id.*; *see also HD Media Co., LLC,* 927 F.3d at 929 ("To show good cause for a protective order, the moving party is required to make 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'").

Moreover, contrary to Veolia's arguments, there are a multitude of reasons why the information sought would not fall under the attorney-client privilege. First, all the information sought relates to Ferrara's communications regarding public relations strategies **and not legal advice**. Thus, any claim of attorney-client privilege **is improper**. *See Nash v. City of Grand Haven*, 321 Mich. App. 587, 593 (Mich. Ct. App. 2017) ("The attorney-client privilege attaches to communications made by a client to an attorney acting as a legal adviser and made for the purpose of obtaining legal advice.") (emphasis added); *Waters v. Drake, No*. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179, at *6 (S.D. Ohio Dec. 8, 2015) ("Case law makes it clear that a media campaign is not a litigation strategy.") (alterations, citations, and internal quotations marks omitted); *In re Search Warrant Executed at Law Offices of Stephen*

*Garea*, No. 97-4112, 1999 U.S. App. LEXIS 3861, at \*4 (6th Cir. Mar. 5, 1999) ("It is, of course, well established that attorney-client communications related to areas other than legal counseling, such as business advice, are not privileged."); *Schnatter v. 247 Grp., LLC*, No. 3:20-CV-00003-BJB-CHL, 2021 U.S. Dist. LEXIS 208324, at \*28 (W.D. Ky. Oct. 28, 2021) ("as a general matter public relation advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called work product . . . because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally.") (quoting *Calvin Klein Trademark Trust*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000)).

And even if there was a basis for asserting the privilege – which there is not – most of the information sought relates to communications with third parties (namely members of public relations firms), which destroys the privilege.[17] *See Dyna Grind Servs. v. City of Riverview*, No. 255825, 2006 Mich. App. LEXIS 1545, at \*28-29 (Mich. Ct. App. May 4, 2006) ("Once otherwise privileged information is disclosed

---

[17] Also, to the extent Plaintiffs seek information on subjects of which Veolia has already made statements to the public, Veolia has waived any sort of privilege claim over this information. *See In re Columbia/HCA Healthcare Corporation Billing Practices Litigation*, 293 F.3d 289, 302 (6th Cir. 2002) (finding that the defendant's release of privileged information to the Department of Justice in a separate investigation effected a waiver of the privilege).

to a third party … or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears.") (citation omitted); *Waters*, No. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179 at *4 ("As this Court has observed in another case, it is 'generally true' that sharing attorney-client privileged communications with a public relations firm is a waiver of the privilege.")

Therefore, clearly, based on the circumstances here, Veolia's privilege claims are of no moment. And even if there are questions that might seek privileged information, the appropriate remedy would be an objection at the deposition accompanied by an instruction not to answer, not barring the deposition in its entirety. *See* Fed. R. Civ. P. 30(c)(2).

### 3.  There Are No Other Means to Obtain the Information Sought

The Court is already aware that Plaintiffs have steadily endeavored to obtain the information sought from Ferrara through other means of discovery.[18] But because of Veolia's consistent and baseless refusal to permit multiple depositions to take place,[19] their failure to properly provide meaningful responses to Plaintiffs' discovery requests,[20] and their evasiveness regarding Farcot's whereabouts,

---

[18] *See, e.g.,* Ex. 16 (Plaintiffs' First Request for Production of Documents).

[19] Farcot and Ferrara, but others too. *See, e.g.,* Ex. 17 (Email Objecting to Deposition of Laurent Obadia).

[20] *See, e.g.,* Ex. 18 (Veolia Response to Plaintiffs' Second Request for Production of Documents).

Plaintiffs have no choice but to depose Ferrara. Indeed, Veolia created the need for this deposition through its own conduct.

### 4. Information About Veolia's Public Statements Is Crucial to Preparation of Plaintiffs' Case

Despite their current position regarding the import of Ferrara's testimony, it is difficult (if not impossible) to imagine what has changed since September 13, 2022, when Veolia stated: "Courts routinely recognize the lasting effects of improper extrajudicial statements[.]" *Walters*, 5:17-cv-10164, ECF No. 949, PageID.69282 (Veolia Motion for Sanctions).[21] At that time, Veolia urged this Court to take drastic action for (honest) comments Plaintiffs' counsel made in response to media inquiries. Veolia claimed counsel's words created a substantial risk of prejudicing future proceedings. *Id.* at PageID.69280. In that moment, the Veolia entities were not concerned with First Amendment rights – their (feigned) concern was for their right to a fair trial. *Id.* at PageID.69282.

While clearly Veolia's ongoing, proactive misinformation campaign is different from comments made in response to a local reporter, that Veolia now ignores the right to a fair trial is embarrassing. It is one thing to advocate a position;

---

[21] In that motion, Veolia also cited the following: *State v. Grossberg*, 705 A.2d 608, 613 (Del. Super. Ct. 1997) (lawyer's statements on national television about his clients' innocence just over three months before trial were likely to materially prejudice the trial); *United States v. Megale*, 235 F.R.D. 151, 164 (D. Conn. 2006) (pretrial disclosures "months in advance" of trial resulted in the "prospective tainting of the pool of potential jurors").

17

it is quite another to take one position when it benefits your client and then the complete opposite position, less than four months later, when your own conduct rises to a level that might warrant civil sanctions and criminal liability.[22] *See* MRPC 3.3 (setting forth an attorney's duty of candor towards the tribunal).

Nonetheless, there are two trials involving Veolia currently scheduled for October 2023, and January 2024. As so eloquently expressed four months ago by counsel for Veolia, Christopher Muha, there does in-fact exist a right to a fair trial. *Walters*, 5:17-cv-10164, ECF No. 949, Page ID.69282. (Though it is unclear whether Muha or his clients still believe it to be true or understand that the right extends to Plaintiffs here). Thus, Plaintiffs must properly conduct meaningful *voir dire* to determine if a single juror has been influenced by Veolia's misinformation campaign, and to do so, the elements of the campaign must be vetted and better understood. Considering Veolia's obstinance regarding this discovery generally, Ferrara must be deposed.

**C. The Deposition Will Not Unduly Burden or Harass Ferrara or Veolia.**

Once the requesting party makes a threshold showing of relevance — as Plaintiffs have done above — the burden shifts to the party resisting discovery to

---

[22] *See* Michigan Penal Code, 750.120(a)(1) ("A person who willfully attempts to influence the decision of a juror in any case by argument or persuasion, other than as part of the proceedings in open court in the trial of the case, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00, or both.").

show **how** it is overly broad, burdensome, or oppressive. *United States v. Marsten Apartments*, CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262, *4-6 (E.D. Mich. June 16, 1997). Simply objecting to a request as "unduly burdensome" and "harassing" is not sufficient to meet that burden. *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 209-10 (E.D. Mich. 2018) ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."). Rather, objections "must show specifically how a discovery request is burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden." *Marsten Apartments*, CASE NO. 95-CV-75178-DT, 1997 U.S. Dist. LEXIS 14262, at *5.

Here, Veolia has not even tried to meet this standard. They simply object, failing to offer anything at all as to the nature of the supposed burden. This is wholly insufficient as "the mere fact that discovery requires work and may be time consuming is not sufficient to establish undue burden." *Id.* Moreover, Plaintiffs' Deposition Subpoena, which does not even include a request to produce documents, is not burdensome, unless the test for same is simply whether the (retired) deponent needs to log on to a remote deposition and answer questions about which he has knowledge, and perhaps spend time preparing with counsel for the deposition. Obviously, that is not the test, and as obviously, Veolia have not provided any support for their contentions regarding burdensomeness and harassment.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny

Veolia's motion for a protective order.

Dated: January 17, 2023                    Respectfully submitted,

                                           **LEVY KONIGSBERG LLP**

                                           /s/ COREY M. STERN
                                           Corey M. Stern
                                           Melanie Daly
                                           605 Third Ave., 33rd Floor
                                           New York, New York 10158
                                           (212) 605-6200
                                           (212) 605-6290 (facsimile)
                                           cstern@levylaw.com
                                           mdaly@levylaw.com

                                           *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 17, 2022, I electronically filed this document and its accompanying exhibits with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

<u>/s/ COREY M. STERN          </u>
Corey M. Stern
605 Third Ave., 33<u>rd</u> Floor
New York, New York 10158
(212) 605-6298
(212) 605-6290 (facsimile)
<u>cstern@levylaw.com</u>