# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy |
| This Document Relates To: | |
| *Gaddy et al. v. Flint et al.* | Case No. 5:17-cv-11166-JEL-MKM |
| *Meeks et al. v. Flint et al.* | Case No. 5:17-cv-11165-JEL-MKM |

_____

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S REPLY IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER BARRING THE DEPOSITION OF FRANCIS FERRARA

# INTRODUCTION

In their opposition to VNA's motion for protective order, Plaintiffs make no bones about their reasons for seeking to depose VNA's former in-house counsel, Francis Ferrara.  Although Rule 26 allows discovery only of "nonprivileged matter[s] that [are] relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), Plaintiffs do not want to ask Mr. Ferrara about a "claim or defense" in this case.  Instead, they simply want to expand their investigation of VNA's public statements about the trial.  In their words, they seek to "uncover what Veolia did, how they did it, who created the plan, and who was responsible for implementing" VNA's communications strategy for this litigation.  *See* Pls.' Opp. to Mot. for Protective Order (Opp.) 1, ECF No. 2326, PageID.75232.  Plaintiffs insist that Mr. Ferrara is an appropriate target because he supposedly was seen interacting with Pierre Farcot, an employee of Veolia Environnement S.A. (VE), whom they believe was involved in VNA's public-relations efforts.

Plaintiffs' attempt to depose VNA's lawyer for the purpose of investigating VNA's public statements about this litigation is improper and should be prohibited. The deposition would impermissibly chill VNA's exercise of its First Amendment right to defend itself publicly and speak about what happens in court.  It is barred by the case law governing when a party can depose its opponent's lawyers.  And it would burden and harass Mr. Ferrara and VNA.  This Court should not allow it.

**A.** **The Deposition Would Impermissibly Chill VNA's Exercise Of Its First Amendment Rights**

Plaintiffs do not seriously dispute that the First Amendment protects VNA's right to speak publicly about this litigation. Opp. 7-8, PageID.75238-75239. They assert that VNA relies on "inapplicable" cases, *id.* at 7, PageID.75238, but they make no effort to distinguish the cases, which clearly hold that civil defendants have a First Amendment right to publicly discuss their cases, *see, e.g.*, *CBS Inc. v. Young*, 522 F.2d 234, 241-42 (6th Cir. 1975).

Instead, Plaintiffs argue that VNA "points to no case law" holding that the deposition of Mr. Ferrara "will effectively chill *their* [VNA's] speech." Opp. 7, PageID.75238. In fact, courts recognize that "the risk that [an organization] will be compelled to disclose [its] internal campaign communications in civil discovery" has a "potential chilling effect on political participation and debate" that is "substantial." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1158 (9th Cir. 2010). Likewise, to subject a civil litigant to discovery about its internal communications relating to a decision to make public statements has the potential to discourage that speech. If the discovery is allowed, civil defendants (including VNA) will understand that the price of defending themselves publicly is exposure to depositions of their employees, and even their lawyers, about that speech.

Plaintiffs argue that there will not be any chilling effect because VNA has expressed determination to defend its conduct publicly. Opp. 9, PageID.75240.

2

But VNA need not prove that it will stop exercising its First Amendment rights altogether if Mr. Ferrara is deposed. Rather, government action is subject to exacting scrutiny when it has a "'deterrent effect'" on protected activity. *Perry*, 591 F.3d at 1160 (quoting *Buckley v. Valeo*, 424 U.S. 1, 65 (1976)). To allow the deposition of a party's attorney because the party's speech has attracted its adversary's ire will inevitably inhibit future speech—both by VNA and by future litigants.[1]

### B. Plaintiffs Fail To Make The Showing Needed To Justify A Deposition Of Opposing Counsel Under *Shelton*

Plaintiffs fail to show that the deposition is permissible under the factors set forth in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986).

Plaintiffs concede that the *Shelton* test governs depositions of opposing counsel in the Sixth Circuit, but note that the Sixth Circuit has not yet applied *Shelton* to in-house counsel. Opp. 10, PageID.75241. But *Shelton* itself involved an attempt to depose a person in Mr. Ferrara's position: an in-house lawyer supervising litigation. *Shelton*, 805 F.2d at 1325. Having adopted the *Shelton* test, there is no reason to doubt that the Sixth Circuit would apply it in *Shelton*'s factual context. Plaintiffs cite a case observing that "district courts in the Sixth Circuit are split as to the definition of 'opposing counsel'" for purposes of applying *Shelton*,

---

[1]    Plaintiffs note that VNA sought to elicit trial testimony from its former in-house corporate counsel Brian Clarke. Opp. 9, PageID.75240. But Mr. Clarke did not supervise this litigation, and he had personal knowledge relating to Plaintiffs' claims because he drafted and reviewed VNA's contract with the City of Flint.

Opp. 10, PageID.75241 (citing *Clark v. Louisville Jefferson Cnty. Metro Gov't*, No. 17-cv-419, 2021 WL 1759855, at *5 (W.D. Ky. May 4, 2021)), but that case confirms that *Shelton* applies to "an in-house counsel who is involved to some extent in directing litigation," 2021 WL 1759855, at *5 (internal quotation marks omitted)—exactly the situation here. *See also*, *e.g.*, *Jaguar Land Rover Ltd. v. Bombardier Recreational Prod., Inc.*, No. 16-cv-13386, 2018 WL 2276640, at *1 (E.D. Mich. May 18, 2018) (applying *Shelton* to in-house counsel).

Plaintiffs also argue that courts may decline to apply *Shelton* to a defendant's *former* counsel (Opp. 10, PageID.75241), but it is immaterial that Mr. Ferrara has retired.  Plaintiffs want to ask about Mr. Ferrara's actions while he was directing this litigation for VNA.  His deposition would squarely implicate the concerns behind the *Shelton* rule, which "was intend[ed] to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy."  *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 730 (8th Cir. 2002).  "[T]he deposition of opposing counsel . . . disrupts the adversarial system," invites "pretrial delays to resolve work-product and attorney-client objections," and imposes a "'chilling effect' . . . on the truthful communications from the client to the attorney," *Shelton*, 805 F.2d at 1327—all of which could occur here if Mr. Ferrara were deposed.  And nothing would prevent Plaintiffs from deposing the next in-house attorney directing this litigation.

4

*Shelton* therefore applies, and Plaintiffs cannot satisfy any of its prongs, much less all of them.  First, Plaintiffs fail to show that "the information sought is relevant."  *Shelton*, 805 F.2d at 1327.  Plaintiffs do not argue that Mr. Ferrara has *any* information relating to their professional-negligence claim against VNA.  That is dispositive, because Rule 26(b)(1) permits discovery only when it is relevant to a "claim or defense."

Plaintiffs assert that "any party's potential attempts to influence jurors outside of the trial itself" is "relevant."  Opp. 11, PageID.75242.  But Plaintiffs have received extensive information about VNA's communications efforts and yet have no evidence that VNA tried to influence jurors improperly.[2]  Plaintiffs rely on VNA's Google advertising and its posts on its website, but jurors were instructed not to do independent research or to read online material, *e.g.*, Trial Tr. 2/28/22, at 27:4-9, No. 17-cv-10164, ECF No. 775, PageID.47924, and there is a presumption that jurors follow their instructions.  Plaintiffs' curious suggestion that VNA sought to influence jurors by tweeting its thanks *after* the mistrial, Opp. 3-4, PageID.75235-75236, underscores that their accusations are baseless.  In fact, counsel for all parties spoke face-to-face with jurors after the trial concluded.

*Second*, Plaintiffs fail to show that the information they seek from Mr. Ferra-

---

[2]   Plaintiffs state that VNA's conduct (or that of its attorneys) "rises to a level that might warrant civil sanctions and criminal liability," citing a statute that criminalizes jury tampering.  Opp. 18 & n.22, PageID.75249.  Plaintiffs do not have any evidence of jury tampering; this accusation is completely unjustified.

ra is "nonprivileged." *Shelton*, 805 F.2d at 1327. Plaintiffs argue that VNA has not made a sufficiently detailed privilege claim, Opp. 13-14, PageID.75244-75245, but as "the party seeking to take the deposition," Plaintiffs have the burden to show that "the information sought is . . . nonprivileged," *Shelton*, 805 F.2d at 1327. Plaintiffs argue that the attorney-client privilege is inapplicable to communications about public-relations strategy, Opp. 14, PageID.75245, but they admit that the privilege attaches to all communications between an attorney and client "made for the purpose of obtaining legal advice," *Reed Dairy Farm v. Consumers Power Co.*, 227 Mich. App. 614, 618-19 (1998). If Mr. Ferrara, a lawyer and not a communications professional, received information about VNA's public-relations efforts, it would have been for the purpose of providing legal advice, and a deposition would inevitably invade the attorney-client relationship.

*Third*, Plaintiffs make no showing that they lack "other means . . . to obtain the information." *Shelton*, 805 F.2d at 1327. In fact, they have deposed at least five other people with knowledge of VNA's public-relations efforts. Plaintiffs point to no evidence that Mr. Ferrara has unique knowledge about those efforts— claiming only that Mr. Ferrara and Mr. Farcot spoke to each other and "discuss[ed] something on a cellular telephone." Opp. 2, PageID.75233.

Finally, the information Plaintiffs seek is not "crucial to the preparation of [Plaintiffs'] case." *Shelton*, 805 F.2d at 1327. Plaintiffs point to VNA's objections

to certain public statements by their counsel during the trial, Opp. 17, PageID.75248, but VNA merely objected to those statements; it did not seek to pursue discovery about them.  Plaintiffs also argue that they need discovery in order to properly conduct *voir dire* at the next trial.  Opp. 18, PageID.75249.  But that makes no sense:  Plaintiffs can simply ask potential jurors whether they have been exposed to material relating to the Bellwether I trial on VNA's website (or elsewhere, including in local press reports in which Plaintiffs' counsel are quoted). Plaintiffs do not need information from Mr. Ferrara to accomplish this task.

### C.   The Discovery Would Unduly Burden Mr. Ferrara And VNA

Plaintiffs do not deny that whether discovery imposes "undue burden [and] expense," Fed. R. Civ. P. 26(c)(1), depends on the relevance of the information sought.  Here, Plaintiffs have not identified any valid reason for deposing Mr. Ferrara, so "even very slight inconvenience" would be unreasonable.  *Serrano v. Cintas Corp.*, 699 F.3d 884, 900-01 (6th Cir. 2012) (internal quotation marks omitted).  Moreover, Plaintiffs' brief shows that such a deposition would be very burdensome, requiring the resolution of complex privilege and relevance questions.

## CONCLUSION

The Court should issue a protective order barring Plaintiffs from deposing former in-house counsel Francis Ferrara.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**BUSH SEYFERTH PLLC**

By: */s/ Cheryl A. Bush*
Cheryl A. Bush (P37031)
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800
bush@bsplaw.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  January 31, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   */s/ James M. Campbell*
        James M. Campbell
        jmcampbell@campbell-trial-lawyers.com