## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT IF MICHIGAN
## SOUTHERN DIVISION

*In re Flint Water Cases   16-10444*

_____/          *Hon. Judith E. Levy*


*Bellwether I Case No.     17-10164*

_____/


### INDIVIDUAL PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT VEOLIA NORTH AMERICA, LLC'S, VEOLIA NORTH AMERICA, INC.'S, AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S[1] MOTION TO SEAL AND FOR A PROTECTIVE ORDER

_____

[1] Defendants will collectively be referred to as "Veolia" herein.

## INTRODUCTION

Veolia's motion seeks to manipulate and distract, while propping up Melvin Jones, Jr. ("Jones") as the new standard for how, what, and when pleadings should be filed. Based on the "Jones Standard," Veolia seeks to seal, and/or a protective order regarding records that were **lawfully requested**; **unobjected to**; **lawfully produced**; and **not marked "confidential"** before being filed as one of eighteen exhibits to a responsive pleading. But Veolia's "Jones Standard" is not, nor should it be the legal criterion by which parties to the Flint water litigation conduct themselves, conduct discovery, or engage in motion practice. Thus, the motion should be denied.

## FACTUAL BACKGROUND

### I.    JONES

Jones has a history of repeated nonsensical and improper filings on this docket, establishing himself as a "vexatious litigant." Case No. 16-cv-10444, ECF No. 2288. He has been deemed a "prolific filer" by this Court and is subject to multiple enjoinment orders applicable to all Flint water cases. *Id.; see also* Case No. 16-cv-10444, ECF Nos. 2062, 2338; and *see* Case No. 21-10937, ECF No. 80.

The Sixth Circuit Court of Appeals ("Sixth Circuit" or "Circuit Court") has also enjoined Jones due to his conduct. *See* October 21, 2022 Order, 6th Cir. Case No. 22-1540/1609. Because of his vexatious filings, and to curtail Jones for having

"filed more than forty-five [appellate] actions," inclusive of "more than 1,300 documents," the Circuit Court prohibited him from submitting to the *pro se* e-filing e-mail address. *Id.*

In addition to his filings on this docket and in the Sixth Circuit, Jones has also made numerous (and often incomprehensible) filings in the Bellwether I case and in other individual cases. *See, e.g.,* Case No. 17-10164, ECF Nos. 956, 970, 973, 977, 982, 987, 991, 994, 996, 1000, 1002, 1003, and 1009.

Prior to this litigation, Jones was sanctioned with an order enjoining him from filings in *Jones v. Mich. Dept. of Civ. Rights*, Case No. 18-11934, before the Honorable Marianne Battani. There, Jones (and his co-plaintiff, Colleen Connors) filed more than thirty-five items, prior to the initial scheduling conference, resulting in an order staying the case. After a Report and Recommendation was issued by the Magistrate Judge, recommending that Judge Battani dismiss the matter, Plaintiffs Jones and Connors "advanced over 100 objections[,] spread over 150 pages[,] in twenty-five separate filings." *See* Case No. 18-11934, ECF No. 443, PageID.3398. Judge Battani dismissed the case, and subsequently, Jones continued to file numerous motions. *Id.* In response, Judge Battani noted that that this prolific filing reflected Jones' "refusal to accept that his lawsuit has been dismissed." *Id.* And that he had caused needless expense and unnecessary burden to the parties, the Court, and the Sixth Circuit. *Id.* at PageID.3400.

Jones clearly believes he is a party to every lawsuit associated with the Flint Water Crisis, including those filed on behalf of specific individuals not named Jones.[2] To that end, his incessant communications[3] and filings indicate strong delusions as to: (1) the differences between **class action claims** and claims brought on behalf of **specific individuals**; (2) which attorneys, here, represent class action plaintiffs (putative or otherwise), and which do not; (3) duties owed to him by lawyers who **do not** represent him or class plaintiffs;[4] (4) when the Flint Water Crisis began and ended (in juxtaposition with when his residence in Flint began);[5] (5) the

---

[2] A review of the Eastern District and Genesee County dockets indicates that Jones is not an individually named plaintiff in any active lawsuit for damages he **allegedly** sustained as a result of exposure to water during the Flint Water Crisis.

[3] At the time of this filing, Plaintiffs' counsel has received close to **two-thousand emails** from Jones, since January 19, 2021. Ex. 1 (Stern Declaration).

[4] It is uncertain whether Jones is a member of the certified Issues Class, or the pending putative litigation class (as to Veolia and the LAN Defendants), or the settlement class. While he has publicly discussed his submission of a claim to the settlement administrator, he has also (and often) publicly claimed to have withdrawn the claim (though it might not matter, as there currently is nothing indicating he even qualifies for the settlement). It is also difficult to envision Jones as part of any claims (class or individual) against Veolia or the LAN Defendants, since he has consistently and publicly proclaimed their lack of culpability for the Flint Water Crisis, and has (as recently as January 28, 2023), provided Veolia with a proposed trial strategy for the next Bellwether trial to defend against Plaintiffs' claims. Nonetheless, and despite Jones' apparent ignorance on this point, the undersigned counsel **does not** represent class plaintiffs, and has **never** represented Jones. Thus, Jones' status as a class member (which is the only way he might possibly be considered a party) is not presently of the undersigned counsel's care.

[5] By his own admission, Jones did not move to Flint until 2017, likely **_after_** the crisis ended, in contravention to his strongly held belief that he is the actual epicenter of the crisis (which he claims occurred primarily because of his race and his alleged disabilities).

function of a mandamus petition; (6) what constitutes a "final judgement" for purposes of filing an appeal; (7) who has standing to file an appeal; (8) what constitutes a "federal employee" for purposes of the Federal Tort Claims Act ("FTCA"); (9) how and when to serve a FTCA claim; (10) the role of the Special Master, here; and (11) the Court's role during trial (to name but a few).

## II.   GRADUATE HOTEL RECORDS AND CAUSE FOR SUBPOENA

At issue are documents produced by a non-party, in accordance with a valid, unchallenged subpoena. Per the Court's Fifth Amended Case Management Order ("CMO"), ECF No. 1255,[6] on December 27, 2022, Plaintiffs notified all parties of record (including numerous lawyers for Veolia) of their intent to serve a subpoena for documents on the Graduate Hotel. *See* Ex. 2 (Stern Email to Parties of Record). The email notification included the subpoena. *Id.*; Ex. 3 (Subpoena). Upon receipt of the communication, not a single party or attorney for a party (including counsel for Veolia) objected to the subpoena; not a single party or attorney for a party (including Veolia) substantively responded to the email; not a single party or attorney for a party (including Veolia) sent a text message to or called Plaintiffs' counsel to discuss the subpoena; and not a single party or counsel for a party

---

[6] ECF references from this point forward refer to the docket in Case No. 16-cv-10444.

(including Veolia) suggested the addition (or subtraction) of any items requested, the universe of which included the following documents to be produced:

> All bookings, bills, receipts, and contact information related to **Pierre Farcot**, a guest, between September 1, 2021 and August 31, 2022, who was staying as part of a group related to the Flint Water Crisis Bellwether I trial. The referenced group was associated with a Veolia entity.

As the Court is aware, Plaintiffs learned that Farcot, who either currently is or until recently was a Veolia, S.A. employee, was instrumental in Veolia's various public campaigns during the Bellwether I trial.[7] As the Court is also aware, Veolia has taken steps to prevent the depositions of Farcot, his (alleged former) boss Laurent Obadia, and Francis X. Ferrara, a retired Veolia employee who was often with Farcot during the trial. Because Veolia filed a motion seeking to prevent Ferrara's testimony, Plaintiffs' counsel sought records from the Graduate Hotel to evidence that he and Farcot stayed there at the same time, as part of Plaintiffs' argument as to why Ferrara should testify. Specifically, because Veolia will not assist Plaintiffs in locating Farcot, perhaps a retired employee who spent significant time with Farcot at trial could help, if placed under oath.

---

[7] Veolia employees have testified Farcot played an active role in Veolia's misinformation campaign during the Bellwether I trial. Ex. 4 (Excerpt of Carrie Griffiths Deposition). The subpoena sought information that Veolia could itself provide, but which Veolia continues to refuse to produce. It should be noted that despite the more expansive nature of what was produced, Plaintiffs' counsel **only** requested records related to Farcot.

On Friday, January 13, 2023, at 11:56 am, Plaintiffs' counsel informed all counsel of record that documents responsive to the subpoena had been produced, and sought to determine which parties, if any, desired copies of the production. Ex. 5 (Stern Email Regarding Receipt of Documents). Within thirty minutes, at 12:17 pm, Veolia requested the production. Ex. 6 (Veolia Email Requesting Documents). And less than an hour later, at 1:10 pm, Plaintiffs' counsel sent the universe of documents he received to Veolia. Ex. 7 (Stern Email to Veolia).

Four days later, on Tuesday, January 17, 2022, a portion of the records was filed as an exhibit in response[8] to what was at the time Veolia's most recent[9] discovery abscondence, related to Ferrara. Not only did Veolia choose not to mark the subject records "confidential" in accordance with the CMO prior to the filing of exhibit, but on Wednesday, January 18, 2023, after the exhibit had been publicly

---

[8] ECF No. 2326 (Plaintiffs' Response in Opposition to Motion for Protective Order Re Ferrara).

[9] ECF No. 2307 (Veolia Motion for Protective Order Re Ferrara); *see also* ECF No. 2298 (Plaintiffs' Motion to Compel Responses to Bellwether III Plaintiffs' First Request for Production of Documents and First Request for Admissions); Plaintiffs' December 27, 2022 Letter to Court, regarding Veolia's refusal to produce documents responsive to Bellwether III Plaintiffs' Second Request for Production of Documents; Plaintiffs' January 31, 2023 Letter to Court, regarding Veolia's refusal to produce documents responsive to Bellwether III Plaintiffs' Third Request for Production of Documents; ECF No. 2331 (Veolia's January 20, 2023 Letter Brief opposing deposition of Jennifer Kauffman); and ECF 2332 (Veolia Motion to Strike Expert Affidavit regarding Veolia's use of Google Dynamic Ads to target jurors). Additionally, on January 21, 2023, Bellwether III Plaintiffs served their Fourth Request for Production of Documents on Veolia, and fully expect that Veolia will not produce responsive documents.

filed for twenty-four hours, Veolia chose not to seek any relief from the Court related to it being on the docket. And on Thursday, January 19, 2023, after the exhibit had been publicly filed for forty-eight hours, Veolia chose not to seek any relief from the Court related to it being on the docket.

Not until Friday, January 20, 2023, nearly seventy-two hours after the exhibit had been publicly filed, and after having possession of the records for a full week, did Veolia move the Court to seal it and/or for a protective order.

Why? Because Jones – the prolific filer, the vexatious litigant, the man who sent almost two thousand often unintelligible musings in the form of emails and attachments over the last two years – sent another ridiculous email on January 18, 2023, at 8:12 pm, to approximately eighty individuals, stating:

> Hey Colleen – look CLOSELY @ the NAME on the ROOM (e.g. the ROOM belonged to a WOMAN [] … sounds like Mr. Stern has learned NOTHING from the Judge [] mess …
>
> No kidding --- [IF] someone was "stalking"/harassing your room like this … [I] would literally have you count your panties to make sure that NONE are missing!!!

Ex. 8 (Jones Email, January 18, 2023, 8:12 pm).[10]

---

[10] Because Veolia submitted under seal the same document as part of its motion, Plaintiffs have redacted the name of the Veolia employee in their Exhibit 8. Plaintiffs do not believe the document should have been filed under seal, and do not believe the name needs to be redacted. But nonetheless, Plaintiffs have done so to avoid what they anticipate would be further motion practice initiated by Veolia had they not.

Yes, including the word "panties" in an email to attorneys for the United States and to government officials (among others), in conjunction with the Flint water litigation is outrageous. And yes, we as a society must be aware of the effect our words and actions have on our friends, colleagues, neighbors, and even strangers. And yes, to the extent Jones' email made anyone uncomfortable, as so many of his prior communications have, we need to be empathetic and sympathetic to those people and for their feelings.

However, we also need to be honest. And to be honest and empathetic simultaneously in this circumstance requires genuine effort and an openness to see two things at the same time that normally are not seen together. To that end, only Veolia could so cleverly interweave a reference to one of its employee's names in one sentence, with an inappropriate reference to **someone else's** "panties" in a different sentence, while the whole time asking the Court to believe that *Jones* is making threats (and ignoring Jones' actual unrealistic claims that *undersigned counsel* is the stalker and the harasser), to argue that Jones' email is a basis for the relief sought. This is to say nothing of the fact that the subject exhibit literally contains no current private information about anyone associated with Veolia, which in and of itself is grounds for rejecting Veolia's motion.

## APPLICABLE LAW

"[C]ourts have long recognized … a 'strong presumption in favor of openness' as to court records. *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp.* v. F.T.C., 710 F.2d 1165, 1176 (6th Cir. 1983)). The "burden of overcoming that presumption is borne by the party that seeks to seal them." *Id.,*

In this Court, motions to seal are governed by Eastern District of Michigan Local Rule 5.3. The Court may grant a motion to seal "only upon a finding of a compelling reason why certain documents or portions thereof should be sealed." *Id.* And the request to seal must be "narrowly tailored … in accord with applicable law." *Id.* Even if no party objects to a motion to seal, the "district court that chooses to seal court records must set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 925 F.3d at 306 (citing *Brown & Williamson Tobacco Corp.* v. F.T.C., 710 F.2d 1165, 1176 (6th Cir. 1983)). To that end, the Court much consider three factors: (1) "why the interests in support of nondisclosure are compelling;" (2) "why the interests supporting access are less so;" and (3) "why the seal itself is no broader than necessary[.]" *Id.*

Motions for a protective order are governed by Federal Rule of Civil Procedure 26(c), which broadly empowers the Court to issue protective orders "for good cause" to prevent "annoyance, embarrassment, oppression, or undue burden or

expense." Fed. R. Civ. P. 26(c)(1). To justify a protective order, "the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (*quoting Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "Good cause exists if specific prejudice or harm will result from the absence of a protective order." *Id.* (internal quotation marks and citation omitted).

## ARGUMENT

Veolia moves the Court to seal the hotel records, which were **lawfully requested**; **unobjected to**; and **lawfully produced,** and to issue a protective order prohibiting their further dissemination. Veolia claims that "the records contain private information that has no relevance to any claim, issue, or argument in this litigation." ECF No. 2329, PageID.75893.

Veolia further argues that the public disclosure of the records subjects the individuals named therein to "potential harassment[,]" and "has given rise to serious concerns for the physical safety of the [Veolia] attorneys and staff who will travel to Ann Arbor for the upcoming hearings and trials in this litigation." ECF No. 2329, PageID.75896. As foundation for this proposition, Veolia, incredibly, points to Jones' January 18, 2023 email (Ex. 8). Crediting Jones, Veolia asserts that: "the

filing of the records already has led to menacing emails calling attention to the private information and singling out one attorney by name." *Id.*

Finally, Veolia argues that these records should be sealed because the information is private, and courts have previously sealed records containing home addresses. These arguments are without merit.

First and foremost, the records are relevant. They were filed as one of eighteen exhibits, specifically presented to **show the connection between Ferrara and Farcot**, who by Veolia's own admission was instrumental in the misinformation campaign it undertook in 2016; which it ramped up to new heights during the Bellwether I trial; and which continues today. **The connection between Ferrara and Farcot is essential in evidencing that Ferrara has information about Farcot (which might finally lead to his deposition),[11] as well as the substance, scope, and intent of Farcot's (and perhaps Ferrara's) role in the misinformation campaign.**

The misinformation campaign could not be more relevant to the claims and defenses underlying this litigation. As previously set forth in Plaintiffs' recent pleadings, the campaign is highly relevant to Plaintiffs' claims (as well as to Veolia's defenses). Setting aside the obvious relevance of a party's potential attempts to

---

[11] Veolia's motion does not acknowledge its attempts to shield Ferrara from being deposed.

influence jurors, the extrajudicial statements made and continuing to be made are of major concern to everyone involved in the litigation. Not only do these statements speak directly to virtually *all* the claims and defenses associated with the litigation, but they pose a more subtle yet highly relevant concern: the impact of Veolia's campaign on the overall fairness of a trial. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075 (1991).

Given the forgoing, it is beyond any doubt that the subject exhibit is relevant, because it is beyond any doubt that the evidence Plaintiffs seek through Ferrara's deposition — information related to whether and how Veolia targeted and continues to target jurors, and the scope and intention behind Veolia's extrajudicial statements— is relevant. Indeed, one would be hard-pressed to find evidence that is more consequential to the determination of facts at a trial.

As to Veolia's purported privacy concerns, it should be noted that these records do **not** contain home addresses. In fact, the records actually contain **no present** personal information about anyone associated with Veolia and are unlike those which the courts have sealed in the past. *See Ewalt v. Gatehouse Media Ohio Holding II, Inc.,* No. 2:19-cv-4262, 2021 U.S. Dist. LEXIS 199739, at *4-5 (S.D. Ohio Oct. 18, 2021) (granting request for narrow redaction of "private information" including "email addresses, account numbers, credit card details, home addresses, phone numbers, and names of third parties.").

As to Veolia's allegation that this information "has already begun to enable such harassment" from Jones, the only thing clear from Jones' emails on this topic is that he accuses **Plaintiffs' counsel** (and no one else) of "harassment" and "stalking" Veolia. However, Veolia attempts to manipulate his words (which are hard enough to understand on their face) into direct threats from Jones, twisting them to mean that Jones or someone unknown to Veolia will harass and stalk their attorneys "in the upcoming retrial" of the Bellwether I case (which despite the immense attention Jones pays to the litigation, he clearly missed was adjourned).

Additional emails from Jones further this point, insofar as he states what he believes **Plaintiffs' counsel** can and already has done with this information, **not** what he or someone else might do with the information. As an example, and based on what Jones has proclaimed the "hotel saga," he plainly claims that Plaintiffs' counsel might be:

> [W]rongly charg[ing] [Veolia's] credit and corporate accounts which are [wrongly filed on the docket by Mr. Stern as to the "hotel saga {sensitive hotel information as to [Veolia]} … charged say $3.xx dollars per month … WOULD VEOLIA NOTICE SUCH???

Ex. 9 (Jones Email, January 23, 2023, 5:04 pm).

Veolia knows that none of these outcomes are a likely—let alone even possible—result from the hotel records being on the docket. Veolia knows that none of their employees and staff currently live at the Graduate Hotel. Veolia knows that

the credit card associated with the records could not be identified for use by way of the subject exhibit. And Veolia knows that the specific emails referenced herein from Jones are simply a tiny sample of what he has transmitted to many individuals (including them) for the last two years related to his feelings about this litigation.

More importantly, Veolia knows that the target of Jones' ire is now and has primarily been the undersigned counsel, not Veolia's counsel. Over the course of the litigation, Veolia knows that Jones has publicly accused the undersigned counsel of ethical violations; genocide; tactical delays to obtain a bigger payday; and representing children who are not at all injured. And Veolia knows that Jones has commented on specific individuals' (involved in this litigation) sexuality, and that he has made derogatory comments of certain religions and accused those he believes to be of a particular faith, including the undersigned counsel and the Court of conspiring against him. Veolia knows that Jones has read Op-eds that the undersigned counsel has written, and all of the articles wherein the undersigned counsel has commented. Veolia knows that Jones has listened to every podcast on which the undersigned counsel has ever appeared, and the "Google talk" that the Court has presented. And, of course, Veolia knows this because on each of the roughly two-thousand emails Jones has sent since January 2019, counsel for Veolia was copied too. *See generally* Ex. 1 (Stern Declaration).

But **now**, suddenly, after two years, in the midst of real questions about (at worst) jury tampering and (at best) inappropriate and unethical extra-judicial statements, Veolia conveniently believes that **_this_** is the moment to credit Jones' practice of troubling comments. Veolia's pleading asks the Court to believe that this, one of eighteen exhibits, which actually provides zero **present** personal information about anyone associated Veolia, is something that the Court should act upon. And in so doing, Veolia disingenuously distorts Jones' words to argue that individuals associated with Veolia credit his words to **now** fear what may happen during a retrial _that is not going forward_, based on partial hotel bills for a hotel _they are currently not staying at,_ in rooms that _were likely randomly assigned_, for a trial _that began a year ago and ended in August._ This tactical maneuver seeks to inflame sympathy and distract the Court, the parties, and the public, from the recently raised issues of potential jury tampering or similar improper conduct. The Court should reject it and should likewise reject endorsing the Jones Standard to determine when and what requires sealing or a protective order.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny VNA's motion.

Dated: February 1, 2023                          Respectfully submitted,

                                                 **LEVY KONIGSBERG LLP**

                                                 /s/ Corey M. Stern
                                                 Corey M. Stern
                                                 Melanie Daly
                                                 605 Third Ave., 33rd Floor
                                                 New York, New York 10158
                                                 (212) 605-6298
                                                 (212) 605-6290 (facsimile)
                                                 cstern@levylaw.com
                                                 mdaly@levylaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 1, 2023 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

<u>/s/ COREY M. STERN</u>
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6298
(212) 605-6290 (facsimile)
<u>cstern@levylaw.com</u>