# AMENDED EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*

_____/       *The Hon. Judith E. Levy*

*Bellwether III Case No. 17-10164*

_____/

**AMENDED DECLARATION OF COREY M. STERN, ESQ.**[1]

Pursuant to 28 U.S.C. § 1746, I, Corey M. Stern, hereby declare as follows:

1. I am a partner with the law firm Levy Konigsberg, LLP.

2. I was appointed Co-Liaison Counsel for Individual Plaintiffs by the Court in 2017, and I have been re-appointed multiple times since.

3. I submit this Declaration in conjunction with Plaintiffs' Response in Opposition to Veolia's Motion to Seal and/or for a Protective Order ("Response"), related to an exhibit that I filed on January 20, 2023 as part of another pleading.

---

[1] This Amended Declaration is being filed for the following reason: In ¶4 of the original Declaration, which was filed at 3:16 pm this afternoon, the undersigned inadvertently stated that Melvin Jones, Jr. had been sending e-mail communications **since 2019**. While the emails have been transmitted from Jones for approximately two years, **they were first received in 2021**, **not in 2019**. There are no other changes to the original pleading contained herein (other than a typographical correction to the original ¶21).

2

4. In mid-January, 2019, I began receiving emails from an individual named Melvin Jones, Jr. ("Jones"), related to the Flint water litigation, and in particular my involvement therein.

5. To date, I have received approximately one thousand, nine hundred and seventy-three (1,973) emails from Jones.

6. I have never met Jones.

7. My law firm has never been retained by Jones in connection with this or any other matter.

8. I believe that at some point, Jones was represented by counsel in connection with this litigation. But I believe that representation ended around the time Jones began sending emails, and that he has not retained new counsel in the years since.

9. My initial drafts of Plaintiffs' Response included as attachments all of Jones' emails. But after contemplation, I chose instead to simply provide a description of the emails by way of this Declaration.

10. I maintain access to the emails, and I can provide them to the Court if it would be helpful to decide the current motion or for any other reason.

11. Many of Jones' emails indicate his belief that I am counsel for the putative class; and/or the litigation class; and/or the settlement class.

12. As the Court is aware, I am not putative class counsel, litigation class

counsel, or settlement class counsel.

13. Jones' emails vacillate between: (on the one hand) hyper-criticism of the partial settlement, including criticism of those who created it and the Court for approving it; and (on the other hand) Jones' eagerness to be paid through the settlement for his alleged injuries he attributes to the crisis.

14. Jones' emails indicate his belief that the crisis occurred because of his race; and that he has been discriminated against in this litigation by the Court, the Eastern District's Clerk's Office, the Sixth Circuit Court of Appeals, and individuals employed by the Sixth Circuit (to name a few), based on race and his alleged disabilities.

15. Jones' emails indicate that he moved to Flint in 2017.

16. Jones describes many of his emails as "mandamus" petitions.

17. I am intimately familiar with this docket, and with most (if not all) dockets in this venue and others, related to the water crisis.

18. Jones' *modus operandi* is most easily discerned by juxtaposing his emails in real time with the Flint water dockets. Specifically, when a new filing is made, Jones pulls themes and legal terminology therefrom. Next, he typically performs an online search for articles or other writings containing or referencing the themes or terminology. He then applies what he perceives to be the import of the themes and terminology to his underlying theory – that the crisis occurred because

of his race and because of his disability; that the litigation is tainted because of greedy plaintiffs' lawyers; and that the same discrimination put against him, which caused the crisis, continues to be put against him now. He then sends by email his musings on the themes and his theory, utilizing the new terminology, typically with the results of his online search as attachments to the email.

19. Jones' emails indicate his strongly held belief that the Veolia Defendants are scapegoats for the government.

20. Many of Jones' themes mirror those consistently put forward by the Veolia Defendants in their pleadings, online, and through social media.

21. In a recent Jones email, he provided Veolia with a list of defenses he believes could be successful in the next Bellwether trial.

22. Recently, after years of inactivity, various pleadings were docketed in *Meeks v. United States*, which is a case brought under the Federal Tort Claims Act ("FTCA").

23. After the recent *Meeks* filings, Jones named my law firm in an emailed notice, for what he purports is a claim under the FTCA. It is clear Jones thinks I am a federal employee.

24. In his emails, Jones has consistently accused me of ethical violations.

25. In his emails, Jones has accused me of genocide.

26. In his emails, Jones has accused me of tactical delays that he claims

have been employed to obtain a bigger "payday."

27. In his emails, Jones is steadfast that Flint children were not particularly injured during the water crisis.

28. In his emails, Jones has made derogatory comments about the sexuality of certain individuals involved in the litigation.

29. In his emails, Jones has made derogatory comments of certain religions and accused those he believes to be of a particular faith, including the Court and me, of conspiring against him.

30. Jones' emails make clear that he has listened to numerous podcasts on which I have appeared.

31. Jones' emails make clear that he has read quite a few news articles that have included quotes attributed to me.

32. Jones' emails include comments about my "bedroom."

33. There have been dozens, if not hundreds of emails from Jones, which have caused me to consider whether he was stalking me. And I have felt for quite some time that Jones' emails were sent to harass and defame me.

34. But most of the time, rather than credit his threats or feel threatened by his personal attacks on me, I read Jones' emails and truly consider their import. I think about what he must have experienced in his life to cause him such anger, pain, hate, and blame, and when I consider the time it has taken for him to learn and muse

about me in particular, time which could have instead been spent working, or painting, or cooking, or writing poetry, or walking, or listening to music, I choose instead to think of him with empathy.

Respectfully submitted, this the 1st day of February, 2023.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
605 Third Avenue, 33rd Floor
New York, New York 10158
(212) 605-6200
(212) 605-6290 (facsimile)
cstern@levylaw.com