

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711
mayerbrown.com

**Michael A. Olsen**
T: +1 312 701 7120
molsen@mayerbrown.com

February 15, 2023

BY ECF (CASE NO. 5:16-CV-10444)

Honorable Judith E. Levy
U.S. District Judge for the Eastern District of Michigan
Federal Building, 200 East Liberty Street
Ann Arbor, Michigan 48104

Re:   VNA's Motion for Sanctions for Plaintiffs' Spoliation of Evidence

Pursuant to the Court's directive in the February 8, 2023 e-mail from Ms. Calhoun, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) hereby move for sanctions for Plaintiffs' spoliation of evidence related to pipe samples collected from two homes of class representatives (Rhonda Kelso and Darrell and Barbara Davis) by their expert, Dr. Larry Russell.

Dr. Russell is the standard-of-care expert for both the Class Plaintiffs and the Bellwether III Plaintiffs. In October 2022, Dr. Russell provided a supplemental report in the class case in which he disclosed for the first time that he visited Flint in February 2022 and collected pipe samples from the homes of Ms. Kelso and the Davises. Based on those pipe samples, Dr. Russell opines that copper and galvanized steel pipes throughout Flint were damaged in 2014-2015, that scale in galvanized steel pipes contains excessive amounts of lead, and that galvanized steel pipes throughout Flint need replacement. Dr. Russell also references his pipe sampling work in his Bellwether III report. *See generally* Ex. 1, Supp. Report of Dr. Larry L. Russell 2-5, 25-39 ("Supp. Class Report"); Ex. 2, Report of Dr. Larry L. Russell 5 ("Bellwether III Report").

Plaintiffs failed to notify VNA about Dr. Russell's pipe sampling and provided no opportunity for VNA to observe the work or take split samples. After VNA found out that Dr. Russell had taken pipe samples, it promptly requested permission to inspect the pipe samples, and performed the inspection in December 2022. By then, however, VNA had been deprived of any opportunity to observe Dr. Russell's work, and VNA's ability to analyze the pipes was compromised. Dr. Russell failed to take basic steps to preserve and protect the pipe samples to ensure that VNA would have an equal opportunity to inspect and analyze them. As a sanction for Plaintiffs' spoliation of evidence, Dr. Russell's opinions based on the pipe samples should be excluded.

## BACKGROUND

**Dr. Russell's Pipe Sampling.**  On February 9, 2022, Dr. Russell visited Flint to take pipe samples from Ms. Kelso's and the Davises' residences. Supp. Class Report 25-36. Plaintiffs failed to notify VNA about Dr. Russell's pipe sampling and provided no opportunity for VNA or its experts to observe the work or take split samples. Ex. 3, Russell Dep. 128:16-129:7. At Ms. Kelso's residence, Dr. Russell took two samples of copper pipe for analysis. Supp. Class Report 25. The residence did not have any active galvanized steel pipe; whatever galvanized steel pipe existed was removed prior to 2022. Russell Dep. 130:10-13, 160:18-22. At the Davises' residence, Dr. Russell again took two samples of copper pipe for analysis. Supp. Class Report 29. He also

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP
Honorable Judith E. Levy
February 15, 2023
Page 2

"removed all of the galvanized [steel] pipe in the basement" of the home and "took everything," leaving no galvanized steel pipe behind. Russell Dep. 127:14-128:7.

Dr. Russell did not videotape or take photographs to document the pipe-removal process. Russell Dep. 137:20-138:1. He also did not seal the ends of the pipe samples to prevent contamination. *Id.* at 140:24-4. He placed the pipe samples in a box—some in individual bags, some not. *Id.* at 138:17-139:6. To provide "cushioning," he "took" a pillow from his hotel to help "absorb the movement" of the pipes. *Id.* at 138:2-6. He then carried the box on a plane back to California. *Id.* at 141:22-142:3. After TSA agents opened the box and took out the pipes during the screening process, it had to be packed up again. *Id.* The box also incurred "some damage" and got "bang[ed] … up a little bit" by the airline and had to be replaced. *Id.* at 353:12-354:16.

Once back in California, Dr. Russell took the pipe samples to his house where they sat in his garage for "[a] month, two months, something like that." Russell Dep. 121:22-122:11, 142:4-20. He then took the pipe samples to a laboratory where some samples were cut open, inspected, measured, and subjected to preliminary chemical analysis. *Id.* at 146:2-14, 147:23-149:20. VNA was not invited to observe this work either. *Id.* at 129:23-130:1. Dr. Russell then brought the pipe samples back to his home. In September 2022, seven months after collecting the pipe samples, Dr. Russell scraped off the scale from some samples and sent it off for further analysis. *Id.* at 152:5-15.

**Dr. Russell's Reports.** On October 18, 2022, Dr. Russell provided his supplemental report in the class case. Dr. Russell asserts in the report that copper pipe samples from both residences lost wall thickness from their original, as-new state. He attributes that loss of wall thickness to corrosive water from 2014-2015. Supp. Class Report 3, 25-26, 29-30. Dr. Russell also maintains that galvanized steel pipes from the Davises' residence "were impacted severely" from exposure to corrosive water and "were down to paper thin remaining wall thickness in many locations." *Id.* at 4. Dr. Russell did not actually measure the thickness of the galvanized steel pipes, and his own photos do not show "paper thin" walls. *See id.* at 34-36, Figs. 4.2-7, 4.2-9, 4.2-11; Russell Dep. 198:1-19. Rather, he bases this opinion on his assertion that "when the plumber put a pipe wrench on them to remove them … the pipes sheared off at the fitting." Russell Dep. 192:8-194:2. Neither VNA nor its experts were present to observe any of this. Dr. Russell also purported to measure lead in the scale inside some of the galvanized steel pipe samples and reported lead levels of 41.8, 83.3, and 168 parts per million. Supp. Class Report 29. He opines that exposure to corrosive water in 2014-2015 made the lead scale "more readily exposed" and that all galvanized steel pipes throughout Flint should be replaced. *Id.* at 4, 30; *see* Bellwether III Report 5.

**VNA's Inspection of Dr. Russell's Pipe Samples.** On December 7, 2022, VNA and its experts were allowed to inspect Dr. Russell's pipe samples for the first time—ten months after they were collected.[1] The inspection occurred at the laboratory that Dr. Russell previously used to inspect the pipe samples. Ex. 4, Expert Report of David Crowe 7-9 ("Crowe Report"). The "laboratory" was at a home in a converted barn. Russell Dep. 147:23-148:8. The night before the inspection,

---

[1] When VNA inspected the class representatives' homes in 2020, it was limited to visual and non-destructive testing and was not permitted to remove pipe samples for analysis. *See, e.g.*, Ex. 6, Class Plfs.' Submission Regarding the Deposition of Marvin Gnagy and Home Inspections for the Sept. 23, 2020 Discovery Conference (Sept. 21, 2020); Crowe Report 7.

Mayer Brown LLP
Honorable Judith E. Levy
February 15, 2023
Page 3

Plaintiffs produced to VNA a cursory set of chain-of-custody documents showing that Dr. Russell had relinquished control of the samples to his son, Todd Russell, on December 6, 2022. Ex. 5, Chain of Custody Tracking Forms. The cursory chain-of-custody documents did not track where the pipe samples had been over the prior ten months. *Id.*; Crowe Report 9.

At the inspection, wall-thickness measurements of the copper pipe samples taken by VNA's experts showed that the walls are thicker than Dr. Russell claimed—although Dr. Russell failed to document where on the pipes he measured. Crowe Report 4-5, 10, 19-20. VNA was therefore unable to measure the pipes at the precise locations measured by Dr. Russell. The condition of the galvanized steel pipes had also degraded after they were removed by Dr. Russell. Virtually all of the cut surfaces had rusted by the time VNA inspected them due to dampness in either the storage bags or Dr. Russell's garage. *See, e.g., id.* at 4, 9, 22 Fig. 16. The structure and composition of the scale inside the pipes also would have changed as a result of ten months of improper storage—impairing VNA's ability to perform detailed inspection and analysis of the interior scale. *Id.* at 4, 9. VNA also could not perform meaningful lead testing of the interior scale because the pipe samples were not sealed at the ends to protect against contamination from the exterior of the pipes, other pipes, and the general environment. *Id.* This failure is particularly problematic because the galvanizing on the exterior of the pipes contains lead that could contaminate the inside of open pipes. *Id.* at 14-15. Dr. Russell exacerbated the problem when he used a band saw to cut the pipes open, which would have pulled material from the external surface into the pipe. *Id.*

## ARGUMENT

Spoliation is the "destruction of evidence or the failure to preserve property for another's use as evidence in pending … litigation." *Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 608 (S.D. Ohio 2012). Federal courts possess inherent authority to sanction litigants for spoliation of evidence. *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009). Spoliation sanctions are appropriate if (1) "the party having control over the evidence had an obligation to preserve it"; (2) the evidence was destroyed or not preserved (3) the party had "a culpable state of mind"; and (4) "the destroyed evidence was relevant to the party's claim or defense." *Yoder & Frey Auctioneers, Inc.*, 774 F.3d 1065, 1070 (6th Cir. 2014) (internal quotation marks omitted). Each of these requirements is satisfied here.

**Plaintiffs Controlled The Pipe Samples And Had An Obligation To Preserve Them**. Plaintiffs were undoubtedly required to preserve the pipe samples. Plaintiffs controlled the pipe samples—the samples were taken from the homes of class representatives by their expert. And there is no issue as to whether Plaintiffs anticipated litigation. *See Beaven v. DOJ*, 622 F.3d 540, 553 (6th Cir. 2010) (duty to preserve evidence is triggered when a party "should have known that the evidence may be relevant to future litigation). By February 2022, litigation was well underway.

It is also well settled that "[a] party has a duty to preserve environmental samples that will be relevant to litigation and discoverable by the opposing party." *Andres v. Town of Wheatfield*, No. 1:17-cv-00377, 2017 WL 4484347, at *4 (W.D.N.Y. Oct. 6, 2017); *see Innis Garden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 339-41 (D. Conn. 2009) (holding that plaintiff breached its duty to preserve soil samples and associated data). The same rule applies to pipes. *See AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*, No. CIV S-00-113, 2006 WL 2308442, at *5-6 (E.D. Cal.

Aug. 9, 2006) (plaintiff spoliated evidence by removing and discarding relevant pipe sections); *18-01 Pollitt Drive, LLC v. Engel*, No. A-4833-13T3, 2016 WL 6407280, at *3, *5-6 (N.J. Sup. Ct. Oct. 31, 2016) (plaintiff spoliated evidence by failing to preserve corroded pipe).

Indeed, the Evidence Preservation Order entered on January 16, 2018 specifically directed the parties to preserve "physical and documentary evidence … if they are relevant to factual or legal issues in one or more existing or likely future Flint Water Cases," including (1) "Samples of *scale*, debris, particulate matter, and other deposits collected from water filters, faucet aerators, *plumbing*, water heaters, and the interior surface of water service lines at Flint residences and businesses since April 25, 2014"; and (2) "Flint residents' personal and real property that was damaged by alleged contaminated City of Flint municipal water." *In re Flint Water Cases*, No. 5:16-cv-10444, ECF No. 322 at 4, 7, Page.ID 11680, 11683 (emphasis added).

**Plaintiffs Failed To Adequately Preserve Dr. Russell's Pipe Samples**. Although Plaintiffs allowed VNA to inspect Dr. Russell's pipe samples ten months after they were collected, by that point the samples had degraded, impairing VNA's ability to analyze them. The pipe samples had rusted where Dr. Russell cut them open, the structure and composition of the interior scale would have changed as a result of ten months of improper storage, and VNA could not perform meaningful lead testing. Moreover, because Dr. Russell removed all of the galvanized steel pipe from the Davises' residence, VNA cannot go back to collect new samples. Dr. Russell also failed to document key parts of his work—including wall-thickness measurements on the copper pipes and his removal of the galvanized steel pipes, which he represents sheared off as soon as a plumber put a wrench to them. VNA is left to take Dr. Russell's word for it on these critical issues and was deprived of the opportunity to observe or replicate Dr. Russell's work.

Plaintiffs' spoliation could have easily been avoided had they notified VNA of Dr. Russell's pipe sampling and given it an opportunity to observe the work. By electing not to do so, Plaintiffs flouted "routine practice in environmental litigation." *Andres*, 2017 WL 4484347, at *4. As the *Andres* court explained, "[t]he presence of both parties at the sampling site ensures equal access to evidence" and addresses the "strong likelihood that … samples … will degrade over time." *Id.* The court further explained that "[i]f unable to contemporaneously access the sampling site when Plaintiffs' expert removes a sample, Defendants will be unable to observe the conditions in which a sample was removed and determine how such conditions affect testing results." *Id.* at *5; *see id.* ("proper expert evaluation of environmental samples requires observing the precise method and location of extraction"). The court concluded that, "without contemporaneous access and split sampling," the defendants would be "irreparabl[y] harm[ed] in the form of spoliation of evidence." *Id.*; *see Abbo-Bradley v. City of Niagra Falls*, 293 F.R.D. 401, 409 (W.D.N.Y. 2013) (finding that the lack of "an established protocol for equal or equivalent access [for sampling activities] could result in spoliation of essential and relevant evidence, given the volatile and dynamic environmental conditions [at issue], the uncontrolled locations from where the samples were taken, the rapidly changing nature of the samples after they are extracted, and the variability of sampling techniques that can affect the resulting reliability of any analytical test results").

Plaintiffs also flouted routine practice in this very litigation. When VNA inspected the homes of the class representatives and Bellwether I Plaintiffs, it worked closely with Plaintiffs' counsel (and the Court) to set up inspections and allow Plaintiffs to observe VNA's work. Here, Plaintiffs

obviously did not need VNA's permission to take pipe samples from the homes of class representatives, but they were required to adequately preserve the evidence so that VNA would have an equal opportunity to analyze it. They failed to do so.

**Plaintiffs Acted Culpably**. Sanctions may be awarded "along a continuum of fault," including "degrees of negligence to intentionality." *Adkins*, 554 F.3d at 653 (internal quotation marks and citation omitted); *see Beaven*, 622 F.3d at 554 ("[T]he culpable state of mind factor is satisfied by showing that the evidence was destroyed knowingly, even without intent to breach a duty to preserve it, or negligently") (internal quotation marks and citations omitted).

Here, Plaintiffs intentionally removed the pipe samples, failed to notify VNA or allow VNA an opportunity to observe the work, and did not allow VNA to inspect the pipe samples until ten months later. Dr. Russell claimed that VNA was not notified or given an opportunity to observe the work due to COVID-related concerns and a desire to "minimize the number of people present," although he readily acknowledged that by February 2022 "COVID [had] backed down substantially." Russell Dep. 128:21-129:7. Dr. Russell's explanation strains credulity. By February 2022, the parties could have easily worked out an arrangement to address any COVID-related concerns, just like they did for the home inspections performed by VNA in 2020. Indeed, by February 2022, the parties (and the Court) were beginning the in-person Bellwether I trial with health protocols in place. Dr. Russell also failed to follow basic steps to adequately preserve the pipe samples. The pipe samples were stored in a box in Dr. Russell's home garage for ten months, with the ends uncapped, some in wet bags and some not in bags at all. Not surprisingly, the condition of the pipes and the interior scale degraded over that time.

**Dr. Russell's Pipe Samples Are Relevant**. There is no question that Dr. Russell's pipe samples are relevant—particularly in the class case. Dr. Russell uses the pipe samples as the basis for his opinions that copper and galvanized steel pipes throughout Flint were damaged in 2014-2015, that the scale in galvanized steel pipes contains excessive amounts of lead, and that galvanized steel pipes throughout Flint need replacement. Supp. Class Report 2-5, 25-39. He also refers to the pipe sampling in his Bellwether III Report (at 5), although it is not entirely clear how the pipe sampling is relevant to the personal-injury claims asserted by the Bellwether III Plaintiffs.

**The Court Should Impose An Appropriate Sanction.** Courts have "broad discretion to craft proper sanctions for spoliated evidence." *Adkins*, 554 F.3d at 651; *accord Automated Solutions Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014). The Court should preclude Dr. Russell from offering opinions based on his pipe samples. VNA was not given the same opportunity to fully inspect and analyze the pipe samples, and any possibility of examining galvanized steel pipe at the Davises' residence is now lost forever because Dr. Russell took all galvanized steel pipe from the home. No lesser sanction can remedy this serious infringement of VNA's ability to defend itself. *See, e.g.*, *Estate of Seaman ex rel. Seaman v. Hacker Hauling*, 840 F. Supp. 2d 1106, 1114-16 (N.D. Iowa 2011) (excluding evidence concerning condition of vehicle involved in accident because plaintiff had the "chief advantage" of offering testimony based on its examination of the vehicle but deprived defendant of the same opportunity).

Respectfully submitted,

*/s/* Michael A. Olsen
Michael A. Olsen

Mayer Brown LLP
Honorable Judith E. Levy
February 15, 2023
Page 6

## CERTIFICATE OF SERVICE

      I hereby certify that on February 15, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: /s/ Michael A. Olsen
Michael A. Olsen