# Exhibit 6

**Putative Class Plaintiffs' Submission Regarding the Deposition of Marvin Gnagy and Home Inspections for the September 23, 2020 Discovery Conference**

**The Adjourned Reopened Deposition of Marvin Gnagy:**

Marvin Gnagy, Veolia's key engineer on the Flint project, was previously deposed for two full days on December 12 and 13, 2019, in accordance with the Case Management Order. Mr. Alastair Findeis of Napoli Shkolnik PLLC appeared and questioned on behalf of co-liaison counsel for individual plaintiffs.

Class Plaintiffs subsequently challenged thousands of documents on Veolia's privilege log and, when Veolia reversed the majority of those privilege calls, this Court agreed with Class Plaintiffs that reopening key Veolia depositions was appropriate. However, this Court made clear that Class Plaintiffs were to limit any questioning at re-opened depositions to only those concerning previously-withheld documents.

Class Plaintiffs met and conferred with Veolia and agreed that Mr. Gnagy's deposition would be one of those reopened. However, during final preparations for Mr. Gnagy's deposition, Class Plaintiffs determined that there was not enough new material specific to Mr. Gnagy to warrant reopening his deposition as a fact witness in good faith and, in accordance with the Court's direction to limit reopened deposition to only new issues, notified Veolia that it would forgo reopening Mr. Gnagy's deposition and informed all parties of the cancellation. Co-liaison counsel had not cross-noticed the deposition.

Veolia had additionally suggested to Class Plaintiffs, less than 48 hours before Mr. Gnagy's scheduled re-opened deposition, that he might be designated as a 30(b)(6) corporate representative. Class Plaintiffs could not have proceeded with Mr. Gnagy in his 30(b)(6) capacity on such short notice. Class Plaintiffs may seek to depose Mr. Gnagy in that capacity at a later date.

**Class Plaintiffs' Objections to Defendants' Proposed Property Inspection Protocol:**

Defendants seek to subject each putative Class Representative to invasive, overly broad, and irrelevant property inspections, including testing Plaintiffs' interior and exterior paint, paint chips, dust and soil for lead.

With respect to the Class Representatives who allege property damage, Defendants' inspections must be tailored to Plaintiffs' claims. The presence, or lack thereof, of lead in Plaintiffs' house paint, dust and soil is irrelevant to the property damage Plaintiffs seek related to the lead in the pipes contaminating the properties water supply, and ancillary damages caused by same. Therefore, inspections of these homes should be limited to: 1) a visual inspection of the property for the purpose of conducting an appraisal, and 2) non-destructive testing of property damaged by the contamination including, to the extent accessible, Plaintiff's plumbing, water lines, water fixtures and water-fed appliances.

Defendants also propose the use of x-ray fluorescence testing, which involves exposing Plaintiffs to radiation. Indeed, Defendants' proposed protocol provides that Defendants' "consultants and investigators will wear radiation dosimeters" to measure their own radiation exposure while performing these tests, without providing any protective equipment to Plaintiffs or their representatives. Instead, Defendants' protocol advises Plaintiffs that, "[i]f feasible, persons should not be near the other side of a wall, floor, ceiling, or other surface being tested."

Setting aside the obvious potential dangers inherit in Defendants' protocol, the protocol is also overly broad and irrelevant to the claims at issue and seems designed to harass Plaintiffs rather than to gather relevant information, no legitimate basis exists to inspect the homes of Plaintiffs who do not allege property damage.