Susman Godfrey l.l.p.

401 UNION STREET
SUITE 3000
SEATTLE, WA 98101-2683
T: (206) 516-3880
F: (206) 516-3883
www.susmangodfrey.com

**Stephen Morrissey**
T: (206) 373-7380

March 1, 2023

BY ECF (CASE NO. 5:16-CV-10444)

Honorable Judith E. Levy
U.S. District Judge for the Eastern District of Michigan
Federal Building, 200 East Liberty Street
Ann Arbor, Michigan 48104

Re:   *Opposition to VNA's Motion for Sanctions for Plaintiffs' Spoliation of Evidence*

Veolia asks the Court to plow new ground and issue the first spoliation sanction regarding evidence that *wasn't* discarded or destroyed. The pipes at issue have not been destroyed. They remain preserved and protected, in the custody of Dr. Russell, who has directly overseen the removal, storage, and laboratory analysis of thousands of domestic water pipes and fixtures throughout his career, involving litigation matters on over 500,000 homes. See Russell Declaration at ¶ 4. Even worse, *Veolia* actually inspected these pipes before Dr. Russell, during Veolia's own in-person inspection of Class Plaintiffs' homes, which included inspecting and photographing the same pipes at issue. Despite this fact, Veolia's motion ignores Veolia's earlier inspection of these pipes, presents no pictures or analysis from those earlier inspections to suggest that there has been any material "degradation" of the pipe sections that Dr. Russell examined, and relies instead on speculation and cherry-picked deposition quotations. In short, Veolia's sanctions motion is another ill-conceived waste of time, and it should be denied.

**I.    Background**

The pipes at issue are not unique. They are extracted pipes from two of the tens of thousands of residents and businesses that were damaged during the Flint Water Crisis. In the Class trial, Class Plaintiffs will have the burden of proving that the contaminated water conditions were "capable of causing harm to Flint residents." See ECF No. 2250 (November 2, 2022 Order) at 5, Issue 3.

*Veolia* chose to inspect the pipes at issue, and Veolia's motion fails to mention that *Veolia* inspected them *before* Dr. Russell did. Veolia hired three sets of investigators, including Dr. David Crowe to inspect the homes of Rhonda Kelso and Darrell and Barbara Davis in October 2020. Veolia had an opportunity at that time to perform corrosion control and environmental testing, and to inspect the same pipes at issue in Veolia's spoliation motion. Class Plaintiffs' counsel made all fixtures and pipes available for inspection at that time, including fixtures and pipes "which were removed but are still in their residences." *See* Exhibit A. Veolia did not bring any motion seeking to extract pipes or perform any additional testing beyond what they performed for several hours in the class representatives' homes.

Dr. Russell did not participate in Veolia's October 2020 home inspections and would not do so because of the Covid pandemic. Out of concern for his own safety, and that of the Flint residents, Dr. Russell did not travel to Flint and inspect the plumbing fixtures himself until February 2022. Russell Decl. at ¶ 10; Russell Supp. Report (ECF No. 2365-2) at 4.

Honorable Judith E. Levy
March 1, 2023
Page 2

During Dr. Russell's own inspections, he identified and removed plumbing fixtures that had been identified in *Veolia's inspection reports*—pipes that Veolia had already photographed and inspected. Russell Supp. Report (ECF No. 2365-2) at 25, 29. Dr. Russell was present for, and directed, removal of all of the pipes at issue, as he explains in paragraph 6 of his sworn declaration:

> I was present for, and directed, the removal of all pipes. There is no separate chain of custody documentation that would be expected for work performed under this scenario. These samples were maintained in my personal possession until they were transferred to my associate, Dr. Todd Russell's, possession the day before Dr. Crowe was provided access to these pipe samples, as indicated on the chain of custody documentation with which he was provided.

Dr. Russell removed and preserved the pipe samples according to professional standards. These samples were removed, cushioned and stored for transport by Dr. Russell himself, who has extensive experience in doing so safely, effectively, and professionally. Russell Decl. at ¶¶ 4, 6.

All pipe samples taken and tested by Dr. Russell were made available to Veolia's experts for their own inspection and testing. *Id.* Class Plaintiffs agreed to every provision of Veolia's inspection protocol. Veolia has not asked for any additional inspection or test, and did not voice concerns with their own inspection or testing to Class Plaintiffs before filing the instant motion.

The deficiencies that Veolia asserts are all either unsupported or complete fabrications. Veolia submits the report of Dr. David Crowe, who says he has "35 years of experience focused on metal equipment." Crowe Report (ECF No. 2365-5) at 6. But he does not claim any relevant experience in the storage of residential pipes or plumbing fixtures, nor does he cite to any standards or authorities regarding the proper way to remove, store, or test plumbing fixtures. *See Id*.

Veolia says that its experts disagree about the wall thickness of the copper pipe samples. If there were any evidence that the pipe samples changed in wall thickness between the first time Veolia inspected them in October 2020, and the second time Veolia inspected them, Veolia should be able to document those changes with pictures, tests, and observations. Veolia provides no such evidence. The most plausible explanation for the difference is that Veolia's inspectors used a Home Depot-quality digital caliper to measure wall thickness (*see Id.* at 12), whereas Dr. Russell used a much more precise precision metallurgical point micrometer calibrated with precision gauge blocks. *See* Russell Decl. at ¶ 8. Veolia's inspection occurred at a metallurgical laboratory equipped with these more precise instruments, but Veolia did not ask to use them and did not ask for samples to conduct their own analysis using more precise instrumentation.

Veolia's counsel claims that, "virtually all of the cut surfaces" of the galvanized steel pipes "had rusted by the time VNA inspected them due to dampness in either the storage bags or Dr. Russell's garage." Motion at 3. In support, Veolia cites three pages of an attached report, none of which say that. The three pages, page 4, 9, and 22 of Dr. Crowe's report, include one image, Figure 16, of a single piece of pipe. The image overlays arrows pointing to small flecks of color that it calls "rusting of the cut surface." There is no analysis at all of the *cause* of the small flecks of color, of differences between the pipe the first time Veolia inspected it in December 2020 and the second time Veolia inspected it in October 2022, or of the ways in which small flecks of color on

Honorable Judith E. Levy
March 1, 2023
Page 3

cut surfaces might possibly impact the analysis of the pipes. Veolia's claims about rust from allegedly improper storage is nothing but speculation about an immaterial subject.

Veolia's counsel further speculates that "the structure and composition of the scale inside the pipes also would have changed as a result of ten months of improper storage." Motion at 3. Again, Veolia does not provide any evidence from the last time it inspected these pipes to prove that any such changes occurred. Dr. Crowe speculates that the cutting of one pipe with a saw may have "possibly" caused lead from the exterior of the pipe to move to the inside of the pipe, but he performs no test or analysis to evaluate that possibility. He simply guesses that it's "possible." Crowe Report (ECF No. 2365-5) at 14.

In addition to Veolia's inspection of the pipes at issue both before and after Dr. Russell extracted them, Veolia has conducted additional inspections of plumbing fixtures in Flint. In March 2020, Veolia served approximately 15 "non-party" subpoenas on individuals for home inspections, without notice to their counsel, and then "apologize[d] to everyone" for mistakenly failing to provide appropriate notice and for subjecting plaintiffs to unnoticed service of subpoenas during a pandemic. ECF No. 1096 at 1-2; ECF No. 1098 at 2. Veolia's Protocol for Lead Sampling and Assessment in Homes and Soils in Flint Michigan includes provisions for the visual inspection and XRF scanning of plumbing fixtures in Flint residences. See ECF No. 1098-4 at 5. Class Plaintiffs have not observed Veolia's inspectors conducting those inspections, and Veolia offers no evidence from any of its inspections to counter Dr. Russell's opinions about the contaminated water conditions in Flint or the capability of those conditions to harm Flint residents.

## II.   Argument

Veolia asks the Court to sanction plaintiffs based on alleged spoliation of evidence. Veolia does not say under what rule it brings its motion, but merely cites a string of cases in which courts have imposed sanctions on parties for *destroying* or *discarding* critical evidence *before the opposing party had access to it*. The sanctionable conduct in Veolia's cases included the following:

- In a products liability case, the defendant **lost or discarded** the key automobile part that was alleged to have malfunctioned before the plaintiffs could inspect it. *Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599 (S.D. Ohio 2012).
- In a § 1983 case alleging the assault of a prisoner by a prison guard, the prison **lost or destroyed** photographs and video footage of the incident before the plaintiff could see them. *Adkins v. Wolever*, 554 F.3d 650 (6th Cir. 2009).
- In a Privacy Act case alleging that a prison willfully violated the privacy of its employees by leaving a folder full of private employee information in an unsecured area, the prison **lost or destroyed** the folder before the plaintiffs could see it. *Beaven v. DOJ*, 622 F.3d 540, 553 (6th Cir. 2010).
- In a wrongful death action involving the collision of a vehicle and a semi tractor-trailer, the plaintiff allowed the vehicle involved in the collision **to be sold and scrapped** before the defendants had any opportunity to inspect it. *Est. of Seaman ex rel. Seaman v. Hacker Hauling*, 840 F. Supp. 2d 1106 (N.D. Iowa 2011).
- In a CERCLA action alleging PCB contamination of soil, the property owner allowed all soil samples to be **disposed of in a landfill** before the defendants inspected them. *Innis*

Honorable Judith E. Levy
March 1, 2023
Page 4

>   *Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 337 (D. Conn. 2009).
> - In a CERCLA action alleging that an industrial laundry facility contaminated local groundwater with a hazardous substance, one day before a scheduled inspection by the plaintiff, the defendant began a construction project which **removed** 110 tons of soil and **discarded** portions of pipes from the "exact area" relevant to the dispute. *AmeriPride Servs., Inc. v. Valley Indus. Serv.*, 2006 WL 2308442 (E.D. Cal. 2006).
> - In an action for violation of a New Jersey statute regarding environmental contamination, the plaintiff **discarded** pipes and other evidence it needed to prove the timing of the contamination before the defendants had any opportunity to inspect them. *18-01 Pollitt Drive, LLC v. Engel*, 2016 WL 6407280 (N.J. Super. Ct. App. Div. 2016)

Veolia cites (a) *no* case in which a Court issued sanctions related to evidence that has *not been discarded or completely destroyed*; (b) no case in which a Court issued sanctions related to evidence that the party seeking sanctions has actually inspected; (c) no case in which a Court issued a sanctions order sought by a party who had access to the evidence at issue but did not seek to do the kind of testing that it says it needs now; and (d) no case in which a Court issued a sanctions order regarding evidence that also exists in tens of thousands of other properties.

Veolia does not even mention the fact that the cases it cites bear these striking dissimilarities to the facts here. Instead, Veolia mischaracterizes the factual record in an apparent effort to diminish Class Plaintiffs' credibility with blatantly false and unsupported accusations of "wet bags" and "degraded interior scale." *See* Motion at 5 (suggesting storage in "wet bags" and "the interior scale degraded over time" without citation or evidentiary support).

The Court should deny Veolia's motion for at least five reasons.

*First*, most fundamentally, Veolia has not established that any evidence has been destroyed or discarded. Veolia admits that it inspected the pipes at issue on December 7, 2022, which included photographing and conducting X-ray fluorescence analysis on the samples. Crowe Report (ECF No. 2365-5) at 4. A Veolia consultant argues about some of Dr. Russell's analysis of those samples and speculates about "some evidence of storage in damp conditions," without saying what that evidence is. The consultant also provides no evidence that any standard has been violated or any pipe damaged in any material way. Nevertheless, Dr. Russell's declaration elaborates on the standards he used to extract, test, and preserve the pipes at issue, and refutes Veolia's lawyer's untrue speculation about "wet bags" and unproven degradation. *See* Russell Decl. ¶¶ 5-9.

*Second*, Veolia does not explain why this Court should be the first to grant a sanctions motion in favor of a party that has had access to the evidence at issue, let alone inspected it twice. Veolia tries to sweep away its earlier inspection in a footnote, arguing that "it was not permitted to remove pipe samples for analysis" at that time. Motion at 2 n.1. But Veolia had access to *these pipes*, photographed them, and had an opportunity to perform non-destructive testing, including XRF testing to determine what metals existed within the pipes and ultrasonic thickness measurements. Notably, Veolia does not proffer any of its earlier photographs or testing results related to these same pipes to try to substantiate any sort of material change in the pipes between when Veolia first inspected them and then inspected them again at the metallurgical laboratory. Dr. Crowe's report doesn't even mention his earlier inspection of the same pipes nor draw any

Honorable Judith E. Levy
March 1, 2023
Page 5

comparisons to support his vague and false speculation of "some evidence of storage in damp conditions." Crowe Report (ECF No. 2365-5) at 5. Veolia's claims of spoliation ring hollow when it was *Veolia's experts* who actually inspected the evidence at issue first.

*Third*, the pipes at issue, even if they were damaged beyond recognition (they aren't), are not unique evidence for which there are no substitutes. There are tens of thousands of properties in Flint that plaintiffs allege have been damaged by Veolia's conduct. Veolia has inspected some unknown number of these properties, and yet they draw no comparisons between any of the other pipes and the pipes from two properties that Veolia says have been "degraded." The issue to be determined by the jury in the Class trial is not whether any particular pipe has been damaged in Flint, but rather whether the water conditions caused by Veolia's conduct were "capable of causing harm to Flint residents." *See* November 2, 2022 Order (ECF No. 2250) at 5, Issue 3. If any of the tens of thousands of pipes from other properties supported Veolia's position that pipes from the Kelso or Davis properties have been "degraded" in storage, Veolia could have and should have offered that into evidence. Veolia did not do so.

*Fourth*, when Veolia first inspected the Davis and Kelso pipes, it never asked to do any additional tests or to remove or cut pipe sections. Plaintiffs made clear that all of these pipes and pipe samples were available to Veolia during their inspections. *See* Exhibit A. While Veolia says in a footnote that its earlier examination "was limited to visual and non-destructive testing" that is only because Veolia never asked to conduct any destructive testing. *See* Motion at 2 n.1. And while Veolia cites a case, *Andres v. Town of Wheatfield*, 2017 WL 4484347 (W.D.N.Y. 2017), to suggest that plaintiffs should have notified Veolia in advance of Dr. Russell's pipe extraction, the case actually supports denial of Veolia's Motion. *Andres* involved a motion for a preliminary injunction brought by defendants *before* any sampling or inspections had taken place, seeking to enjoin plaintiffs from taking any samples without notice and opportunity for split sampling. *See* 2017 WL 4484347 at *1. Here, **Veolia did no such thing**. Here, Veolia conducted its inspections first, did not ask for any additional sampling, and is seeking sanctions for speculative spoliation related to samples that Veolia never deemed relevant enough to request in the first place.

*Fifth*, any of the alleged "degradation" of pipes that Veolia's lawyer speculates about can easily be the subject of cross-examination. If Veolia wishes to argue that the Flint water crisis *did not* lead to the corrosion of pipes and the leaching of lead into the drinking water in Flint, and that some manner of "degradation" is to blame for the lead in the scale of these particular samples, Veolia will have an opportunity to pursue that theory during the cross examination of Dr. Russell.

### III. Conclusion

Veolia offers no support for the drastic sanction it seeks and offers no reason for this Court to become the first to issue a spoliation sanction order regarding evidence that was not discarded or destroyed. Veolia already inspected this evidence both before and after Dr. Russell examined it, and offers no evidence comparing those two inspections and pointing to any material change or degradation of the pipes. The Court should deny Veolia's motion.

Sincerely,                                                      */s/ Stephen Morrissey*
                                                                Stephen Morrissey

Honorable Judith E. Levy
March 1, 2023
Page 6

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: /s/ *Stephen Morrissey*
Stephen Morrissey