UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>*Bellwether III Cases* | Case No. 5:17-cv-11166-JEL-MKM<br>Case No. 5:17-cv-11165-JEL-MKM |

_____

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S RESPONSE TO PLAINTIFFS' BRIEF <u>REGARDING DR. AARON SPECHT'S MATLAB CODE</u>**

## INTRODUCTION

Plaintiffs have identified no valid basis for withholding the code that Dr. Specht used to calculate bone lead measurements and related uncertainty values. Dr. Specht relied on the code in reaching his opinions and is required to disclose it so that VNA can evaluate his statistical calculations. In an attempt to shield Dr. Specht's statistical calculations from scrutiny, Plaintiffs paradoxically claim that the code is both proprietary and easily replicable. That makes no sense. Any concern about proprietary information can be addressed through the protective order entered in this case. And as shown below, VNA cannot replicate Dr. Specht's statistical calculations without the code. But, even if it could, it is still entitled to evaluate the methodology Dr. Specht actually used.[1]

## BACKGROUND

Dr. Specht measured bone lead levels of the Bellwether III Plaintiffs (and others in Flint) using a portable x-ray fluorescence (pXRF) device he modified for use on humans. Dr. Specht ███████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

---

[1] VNA also requested full versions of spreadsheets produced by Dr. Specht that were apparently stripped of formulas used to generate certain data fields. Plaintiffs imply that Dr. Specht used the same code to generate those data fields. Pls. Br. 1, PageID.76622. To the extent that Dr. Specht used other formulas in his spreadsheets, VNA's request applies equally to those formulas.

1

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████

In preparation for the Bellwether III trial, VNA retained an experienced statistician, William Huber, PhD, to evaluate whether, from a statistical standpoint, Dr. Specht is accurately calculating bone lead levels and related uncertainty values. Based on his preliminary review,[2] Dr. Huber believes that Dr. Specht significantly underestimates the uncertainty associated with his measurements. Ex. 2, Huber Decl., ¶¶ 5-6. However, Dr. Specht's publications do not provide sufficient information to replicate his statistical calculations—they neither provide the code that Dr. Specht used to perform his calculations, nor otherwise explain how Dr. Specht calculated uncertainty values. *Id.* ¶ 7. Thus, VNA and its experts do not know how Dr. Specht actually came up with his numbers.[3]

---

[2] VNA's expert reports are not currently due until April 10, 2023.

[3] VNA is not alone in being unable to replicate Dr. Specht's work. Dr. Andrew Todd—who runs the KXRF device at Mount Sinai and has studied bone

2

# ARGUMENT

Dr. Specht relied on his MATLAB code in reaching his opinions and is therefore required to produce it under Rule 26. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii) (expert must disclose "facts or data considered" in forming opinions); *Marathon Petroleum Co. LP v. Midwest Marine, Inc.*, 906 F. Supp. 2d 673, 696 (E.D. Mich. 2012) ("[T]he rules require production of materials on which an expert relies, and production must be timely."); *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271 (6th Cir. 2010) ("absolute compliance" is required).

Dr. Specht is required to show his work so that VNA can evaluate how he calculated bone lead measurements and uncertainty values. Without the MATLAB code, VNA is "left with a report which inextricably relies on confidential information for the conclusion reached by the witness," and is stuck "with the bare option of, to paraphrase, to trust but not to verify." *In re Leap Wireless Int'l, Inc.*, 301 B.R. 80, 84-85 (Bankr. S.D. Cal. 2003) (striking testimony of expert who refused to share confidential information underlying his opinions).

Dr. Specht asserts that his MATLAB code simply allows him to perform bone lead calculations "more efficiently" and that VNA could achieve the "same

---

lead for 35 years—attempted to replicate Dr. Specht's pXRF testing on behalf of other plaintiffs. He gave up because he "lacked critical information needed to replicate the protocol," which Dr. Specht failed to share after committing to do so. Ex. 3, Todd Aff., No. 16-cv-10444 ECF No. 1497, PageID.58184-58187.

3

results" through its "own means." Specht Decl. ¶ 7, PageID.76631. That is not true. As Dr. Huber explains (and as Dr. Specht previously conceded), Dr. Specht's publications do not provide enough information to replicate his calculations without the code. *See* pp. 1-2, *supra*. Regardless, even if VNA could develop its "own means," Plaintiffs are still required to produce the materials *Dr. Specht* relied on so that VNA can evaluate the means *he used* to reach his opinions.[4]

Plaintiffs have not identified any valid basis for withholding Dr. Specht's MATLAB code. First, Plaintiffs argue that code does not constitute "facts or data" under Rule 26(a)(2)(B)(ii), citing the committee notes. Pls. Br. 4, PageID.76625. But "facts or data" is "interpreted broadly to require disclosure of *any material considered by the expert, from whatever source*, that contains factual ingredients," as opposed to "theories or mental impressions of counsel." Fed. R. Civ. P. 26, 2010 committee note (emphasis added). Dr. Specht's code, which he considered in forming his opinions, is a critical "factual ingredient." The code explains how he reached his opinions, so it is discoverable. *See, e.g.*, *Pit Row Inc. v. Costco Wholesale Corp.*, No. 20-C-738, 2021 WL 8999896, at *1 (E.D. Wisc. Dec. 20,

---

[4] Plaintiffs argue that VNA already asserted that Dr. Specht's pXRF testing is unreliable in the Bellwether I trial, as if that somehow excuses them from complying with Rule 26. Pls. Br. 2, 5, PageID.76623, .76626. They are wrong. The fact that VNA previously raised concerns about the reliability of Dr. Specht's testing does not preclude discovery into the details of Dr. Specht's statistical calculations that may identify additional flaws in his work.

4

2021) (holding that an expert was required to disclose the "underlying methodology and data" used in his statistical analysis).

Second, Plaintiffs argue that Dr. Specht's MATLAB code is proprietary. They cite no case law allowing an expert to withhold reliance materials because they are proprietary. And any concern about proprietary information can be addressed under the protective order entered in this case. Indeed, the court in the only case cited by Plaintiffs (Br. at 5) *ordered an expert to produce proprietary information* subject to appropriate confidentiality restrictions. *See Atic Enters., Inc. v. Cottingham & Butler Ins. Servs., Inc.*, No. 14-cv-00132, 2016 WL 9453341, *3 (W.D. Ky. Jan. 26, 2016) (ordering disclosure subject to confidentiality restrictions which were "both appropriate and effective in balancing the need for proprietary information and protection of the providing party").

Finally, Plaintiffs argue that the lack of disclosure would be "substantially justified and harmless," citing Rule 37(c)(1). Pls. Br. 5, PageID.76626. Rule 37 governs sanctions, which is irrelevant here because VNA is not seeking sanctions. VNA is seeking disclosure of materials on which Dr. Specht relied, as Rule 26 requires. And Plaintiffs' failure to disclose Dr. Specht's code is not substantially justified or harmless. Without the code, VNA would be forced to "trust but not to verify" the numbers generated by Dr. Specht's statistical calculations, which is entirely improper. *Leap Wireless*, 301 B.R. at 84-85.

5

## CONCLUSION

The Court should order Plaintiffs to promptly produce the MATLAB code on which Dr. Specht relied in forming his opinions.

Respectfully submitted,

| | |
|---|---|
| **CAMPBELL, CONROY & O'NEIL P.C.** | **BUSH SEYFERTH PLLC** |
| By: /s/ James M. Campbell<br>James M. Campbell<br>Alaina N. Devine<br>20 City Square, Suite 300<br>Boston, MA 02129<br>(617) 241-3000<br>jmcampbell@campbell-trial-lawyers.com<br>adevine@campbell-trial-lawyers.com | By: /s/ Cheryl A. Bush<br>Cheryl A. Bush (P37031)<br>100 W. Big Beaver Road, Suite 400<br>Troy, MI 48084<br>(248) 822-7800<br>bush@bsplaw.com |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 3, 2023

6

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   /s/ James M. Campbell
James M. Campbell
jmcampbell@campbell-trial-lawyers.com