# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| *In re Flint Water Cases* | Case No. 5:16-cv-10444-JEL-EAS *(Consolidated)* <br><br> Hon. Judith E. Levy <br><br> Mag. Judge Elizabeth A. Stafford |

## CLASS PLAINTIFFS' MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

Class Plaintiffs move this Court under Federal Rule of Civil Procedure 12(c) and 12(f) and E.D. Mich. Local Rule 7.1 for an order Striking Defendants Veolia North America's; Lockwood, Andrews & Newnam, P.C.'s; and Leo A. Daly Company's notices of purported nonparties at fault and entering judgment on the pleadings on Defendants' nonparty at fault defenses.  Dkts. 2281, 2282.

Class Counsel has conferred with counsel for Defendants pursuant to local rule 7.1(a) regarding this motion and Class Counsel's bases for seeking the relief sought.  Defendants have not concurred in the relief sought.

Dated: March 28, 2023                      Respectfully submitted,

By: */s/ Stephen Morrissey*
Stephen Morrissey
Jordan Connors
Katherine M. Peaslee
SUSMAN GODFREY, L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Lear Jiang
SUSMAN GODFREY, L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100 Telephone
(310) 789-3150 Facsimile
ljiang@susmangodfrey.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Theodore J. Leopold
COHEN MILSTEIN SELLERS & TOLL
PLLC
2925 PGA Boulevard, Suite 220
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
***CO-LEAD CLASS COUNSEL***

Michael L. Pitt
PITT MCGEHEE PALMER & RIVERS,
P.C.
117 West 4th Street, Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mpitt@pittlawpc.com
***CO-LEAD CLASS COUNSEL***

Emmy L. Levens
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave. NW
Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
elevens@cohenmilstein.com
***CO-LEAD CLASS COUNSEL***

Peretz Bronstein
BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Teresa A. Bingman
LAW OFFICES OF TERESA A.
BINGMAN, PLLC
4131 Okemos Road, Suite 12
Okemos, Michigan 48864
Telephone: (877) 957-7077
tbingman@tbingmanlaw.com
***EXECUTIVE COMMITTEE FOR CLASS
PLAINTIFFS***

Esther E. Berezofsky
MOTLEY RICE LLC
210 Lake Dr. East, Suite 101
Cherry Hill, New Jersey 08002
Telephone: (856) 667-0500
eberezofsky@motleyrice.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Paul F. Novak (P39524)
WEITZ & LUXENBERG, P.C.
3011 W. Grand Blvd., Suite 2150
Detroit, MI 48202
Telephone: (313) 800-4170
pnovak@weitzlux.com
***EXECUTIVE COMMITTEE FOR CLASS
PLAINTIFFS***

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re Flint Water Cases*

Case No. 5:16-cv-10444-JEL-EAS

Hon. Judith E. Levy

Mag. Judge Elizabeth A. Stafford

## BRIEF IN SUPPORT OF CLASS PLAINTIFFS' MOTION TO STRIKE AND FOR JUDGMENT ON THE PLEADINGS

## ISSUES PRESENTED

1. Whether Plaintiffs are entitled to judgment on Defendants' nonparty at fault defenses because Defendants have not alleged, and cannot meet their burden of establishing, that the asserted nonparties are at fault for damages that proximately resulted from the professional negligence of the engineering Defendants?

   a. Whether Defendants' November 29, 2022 notices of nonparties at fault comply with the requirements of Michigan Court Rule 2.112(k)?

   b. Whether Defendants have alleged or could establish that any of the thirty-eight entities and/or individuals they list as nonparties at fault owed a legal duty to any Plaintiff related to the tortious conduct remaining at issue?

2. Whether apportioning fault for damages proximately resulting from the conduct of any properly noticed nonparties in accordance with MCL 600.2957 and MICH CIV. JI 42.05 is more appropriately reserved for the remedies phase of this litigation?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Pursuant to E.D. Michigan L.R. 7.1(d)(2), Class Plaintiffs state that the controlling/most appropriate authorities for Class Plaintiffs' motion to strike are Michigan Court Rule 2.112(k), MCL 600.2957 and MICH CIV. JI 42.05; *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18 (2009); *Vandonkelaar v. Kid's Kourt, LLC*, 290 Mich. App. 187 (Mich. Ct. App. 2010); and *Holton v. A+ Assocs., Inc.*, 255 Mich. App. 318 (Mich. Ct. App. 2003).

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................5

LEGAL STANDARDS ...........................................................................................8

     I.     Michigan's Comparative Fault Statutes ................................................8

     II.    Motion to Strike and Motion for Judgment on the Pleadings.............10

ARGUMENT .........................................................................................................11

     I.     Defendants' Notices Fail to Meet Their Burden of Showing that
           the Comparative Fault Statutes Apply .................................................11

          A.     Defendants' Notices Do Not Comply with MCR 2.112(k) ......11

          B.     Defendants Cannot Identify the Legal Duties Any Nonparty
                 Owed to the Class Related the Tortious Conduct Remaining
                 at Issue....................................................................................13

     II.    In the Alternative, Allocation of Fault to Nonparties is More
           Appropriate for the Remedies Phase of this Litigation.......................20

CONCLUSION ......................................................................................................25

iii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Mortg. Acceptance, Inc. v. Appraisal Place, Inc.*,
 476 F. Supp. 2d 636 (E.D. Mich. 2006) ....................................................2, 10, 15

*Brantley v. Walmart, Inc.*,
 2020 WL 5939192 (E.D. Mich. Oct. 7, 2020)....................................................10

*Carnell v. Vandervere*,
 2007 WL 2404614 (Mich. Ct. App. Aug. 23, 2007) .........................................22

*Carter v. Mich. Dept. of Corrections*,
 2013 WL 5291567 (E.D. Mich. Sept. 19, 2013) ...............................................20

*Cipri v. Bellingham Frozen Foods, Inc.*,
 235 Mich. App. 1 (Mich. Ct. App. 1999) ..........................................................17

*Colbert v. Primary Care Medical, PC*,
 226 Mich. App. 99 (Mich. Ct. App. 1997) ..............................................4, 22, 23

*Design Basics, LLC v. Chelsea Lumber Co.*,
 2013 WL 3471142 (E.D. Mich. July 10, 2013)..................................................10

*Doe v. Loomba*
 No. 19-174239-NO, 2020 Mich. Cir. LEXIS 660 (Mich. Cir. Ct.
 May 28, 2020)......................................................................................................15

*Gerling Konzern Allgemeine Versicherungs AG v. Lawson*,
 472 Mich. 44 (2005) .............................................................................................8

*Holton v. A+ Assocs., Inc.*
 255 Mich. App. 318 (Mich. Ct. App. 2003) .......................................2, 9, 14, 15

*In re Flint Water Cases*,
 5:17-cv-10164, Dkt. 606 (E.D. Mich. Jan. 10, 2022).........................................6

*In re Flint Water Cases*,
 5:17-cv-10164, Dkt. 662 (E.D. Mich. Feb. 7, 2022) .....................................6, 18

i

*In re Flint Water Cases*,
5:17-cv-10164, Dkt. 918 (E.D. Mich. July 21, 2022) .........................................21

*In re: Veolia North America, LLC*,
Nos. 21-0103/04/05, Dkt. 31-2 (6th Cir. Jan. 24, 2022)..............................19, 23

*Johnson v. Abrams*,
2011 WL 668356 (Mich. Ct. App. Feb. 24, 2011.........................................11, 12

*Jones v. Enertel, Inc.*,
254 Mich. App. 432 (2002) ...............................................................................10

*Lindsay v. Yates*,
498 F.3d 434 (6th Cir. 2007) ..............................................................................11

*Romain v. Frankenmuth Mut. Ins. Co.*,
483 Mich. 18 (2009) ...................................................................................*passim*

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
863 F.3d 460 (6th Cir. 2017) ..............................................................................22

*Searcy v. R.J. Reynold Tobacco Co.*,
902 F.3d 1342 (11th Cir. 2018) ....................................................................24, 25

*Stonemor Operating, LLC v. Bush*,
2014 WL 4388347 (W.D. Mich. Sept. 5, 2014) ...................................................9

*Taylor v. Michigan Petroleum Techs., Inc.*,
307 Mich. App. 189 (Mich. Ct. App. 2014) .......................................................12

*Vandonkelaar v. Kid's Kourt, LLC*,
290 Mich. App. 187 (2010) .......................................................................*passim*

*Veltman v. Detroit Edison Co.*,
261 Mich. App 685 (Mich. Ct. App. 2004) ........................................................24

*Webasto Thermo & Comfort N.A., Inc. v. Bestop, Inc.*,
326 F. Supp. 3d 521 (E.D. Mich. 2018) .............................................................10

*White v. Beasley*,
453 Mich. 308 (1996) .........................................................................................17

ii

**Statutes**

Mich. Comp. Law § 600.6304 ........................................................................8, 10, 16

Mich. Comp. Laws § 600.2957 ...........................................................................8, 21

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................11

Fed. R. Civ. P. 12(c) ...................................................................................11

Fed. R. Civ. P. 12(f) ...................................................................................10

Fed. R. Civ. P. 23(f) ...................................................................................22

Mich Court Rule 2.112(k) ........................................................................*passim*

# INTRODUCTION

This is a professional negligence case against Veolia and LAN/LAD (referred to collectively as "Defendants"), the engineering companies the City of Flint retained to provide the advice and services necessary to ensure safe, quality drinking water for the City.  LAN/LAD could have averted the Flint Water Crisis ("FWC") in its entirety had they performed their duties to the level of a reasonably competent engineer by insisting upon the installation and use of an effective corrosion control system and warning the City of the consequences from its absence.  Similarly, Veolia could have prevented all of the harms post-dating its engagement in February 2015 had it identified and warned of how dangerously corrosive Flint water was at that time. Instead of communicating to the City and its residents that the best solution was to switch back to the Detroit water system pending installation of an effective corrosion control system, Veolia publicly announced that the "water is safe."

Defendants have sought to reduce their own liability by filing notices of nonparties at fault pursuant to Michigan Court Rule ("MCR") 2.112(k).  Dkts. 2281, 2282.  Defendants' notices each name *38* entities and individuals for whom they seek to shift blame to at the upcoming trial—most of whom the Court has already ruled are completely shielded from any negligence liability.  However, "a defendant attempting to mitigate his liability through a comparative fault defense has the burden of alleging and proving that another person's conduct was a proximate cause

1

of the plaintiff's damages"—that is, the defendant must prove that the nonparty owed a legal duty to the plaintiff related to the tortious conduct at issue *and* that the nonparty's breach of that duty proximately caused some portion of the same damage as the defendant's negligence.  *Holton v. A+ Ins. Assocs., Inc.*, 255 Mich. App. 318, 326 (Mich. Ct. App. 2003); *Am. Home Mortg. Acceptance, Inc. v. Appraisal Place, Inc.*, 476 F. Supp. 2d 636, 650 (E.D. Mich. 2006).

**The Court should strike Defendants' notices and enter judgment on the pleadings on Defendants' nonparty at fault defenses.**  Defendants' have not met their burden of alleging that any of the 38 nonparties listed owed any duty with respect to the professional negligence claims at issue here, nor could they. Moreover, Michigan's comparative allocation of fault framework—which, critically, focuses on the *allocation of damages* amongst those whose conduct was a proximate cause of the plaintiff's harm—is not applicable to the upcoming trial (where damages will not even be decided).  The mere fact that the various individuals and entities listed in Defendants' notices may have played some role in the FWC is not a sufficient basis for their involvement in the upcoming trial.  Indeed, unless Defendants can show that the conduct of a nonparty is relevant to the issue of Defendants' professional negligence, such conduct should not be considered at all.

As an initial matter, Defendants' operative notices filed November 29, 2022 fail to comply with MCR 2.112(k)'s requirement that they include a "brief statement

of the basis for believing the nonparty is at fault." The notices do not provide any information other than the nonparties' names. This, alone, warrants granting the relief requested.

To the extent Defendants attempt to rely on prior notices they filed years ago—before class certification, and at a time when plaintiffs were seeking a consolidated trial for both liability and damages—those notices still do not show why the nonparty at fault statutes apply. Defendants have never alleged that any of the nonparties they now seek to blame owed duties to any plaintiff related to the harms caused by Defendants' *professional negligence*, which is the only cause of action remaining at issue. *See Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21–22 (2009) (holding that a legal duty is required before the comparative fault statutes are even applicable). Nor have Defendants shown that the conduct of any nonparty involved the same events, the same timeline, or the same harms as those that arose from Defendants' failure to discharge their duties as professional engineers in accordance with the applicable standard of care.

Whatever misconduct Defendants seek to pin on nonparties is unrelated to Defendants' conduct in negligently performing their professional engineering duties, and would constitute a "separate tort that initiated a new causal chain leading to its own set of damages, which . . . would not be recoverable [ ] due to [governmental] immunity." *Vandonkelaar v. Kid's Kourt, LLC*, 290 Mich. App. 187, 192 (2010).

3

Indeed, the Court has already ruled that most of the nonparties are immune from negligence liability, and that any claim against them involved the different and *narrower* constitutional roles of governmental actors. *See* Dkt. 798 at 76–77 (noting that governmental "[d]efendants are immune from tort liability" under Michigan's Government Tort Liability Act).[1]   In short, Defendants' notices do not demonstrate that the comparative fault statutes are even implicated in this professional negligence case and, in any event, are wholly insufficient to provide notice to the Class as to which facts or theories they intend to rely on at trial.

Alternatively, because the jury at trial will not be asked to make any damages findings, the Court should defer allocating percentages of fault to when it is most appropriate—*after* a factfinder has made determinations on Defendants' negligence. This approach tracks the Michigan pattern jury instructions, under which allocation of fault occurs only after liability is determined and the amount of damages is assessed. MICH. CIV. JI 42.05.   This sequencing would significantly streamline proceedings because if a jury finds that Defendants' conduct was not unlawful (as they claim), then no allocation of fault will *ever need to be made.  See Colbert v. Primary Care Medical, PC*, 226 Mich. App. 99, 103 (Mich. Ct. App. 1997). Conversely, if the jury answers "yes" to the contemplated Question 5 that the Court

---

[1] The Court held that "defendants Snyder, Dillon, and Lyon are absolutely immune" as were "defendants Kurtz, Earley, Ambrose, and Croft, and defendants Shekter-Smith and Wurfel."  Dkt. 798 at 77.

has identified for trial (thereby determining that one or more nonparties contributed to causing or prolonging the contaminated water conditions in Flint), there would *still* be a need for a remedy phase to allocate specific amounts and categories of damages sustained by Class members. Dkt. 2250 at 5. Consequently, even if the Court concludes that Defendants may have some potentially viable nonparty at fault defense with respect to some of the persons and entities they have identified, the most efficient and fair way to advance these proceedings would be to defer allocation issues to a later stage.[2]

## BACKGROUND

The class trial is scheduled to begin on October 3, 2023. Dkt. 2172. The only cause of action at trial will be Plaintiffs' claim of professional negligence against Veolia and LAN/LAD for breaching the standard of care for professional water engineers in advising and consulting the City of Flint before and during the FWC.

---

[2] Plaintiffs read Question 5 as a general description of issues that will be addressed at the upcoming trial and not a description of the law applicable to their claims, the jury instructions that will be delivered, or the questions that will be posed on a verdict form. Dkt. 2250 at 5. Whether a nonparty contributed to causing or prolonging the FWC is irrelevant to whether Defendants violated their professional engineering duties, and may not even determine any issue bearing on the allocation of damages. For example, a factfinder could find that the actions of persons and entities whose roles predated Veolia's involvement "contribute[d] to causing or prolonging the contaminated water conditions in Flint," but nonetheless find Veolia entirely at fault for any damages post-dating its involvement if Veolia's negligence was an intervening cause of the damages. And the answers to any allocation question may vary from one category of damages to another and is not simply a product of the role the nonparty played in the series of events underlying the FWC.

This Court has already denied Defendants' summary judgment motions on certain aspects of their tortious conduct, concluding that (1) they owed Plaintiffs at least "a duty to avoid foreseeable physical harm to users of Flint's water" and that (2) there is enough evidence for a jury to conclude that Defendants' negligence was a proximate cause of harm to Flint's residents and businesses. *In re Flint Water Cases*, 5:17-cv-10164, Dkt. 662 at 9, 13–28 (E.D. Mich. Feb. 7, 2022) (holding that "harm to Plaintiffs . . . was a reasonably foreseeable consequence of VNA's alleged negligence" and that Plaintiffs "can establish proximate causation"); *In re Flint Water Cases*, 5:17-cv-10164, Dkt. 606 at 22–27 (E.D. Mich. Jan. 10, 2022).

On October 26, 2022, the Court held a status conference on the issues to be presented at trial and observed that "there's still a question of whether percentages [of fault allocation] make sense to be offered here" and, if it were, the Court needed to know "going into this trial, [who Defendants] believe are the nonparties at fault" because "that permits everybody to prepare their opening statement, their evidence and so on." Dkt. 2253 at 36, 42. The Court made this ruling even though Defendants already filed sprawling notices of nonparty fault in 2018, 2020, and 2021. Dkts. 482, 547, 672, 1313, 1390. But these prior notices were all filed before the Court had granted class certification or appointed Class Counsel, and at a time when both sides were prepared for a trial on both liability and damages. The prior notices sought to implicate countless entities and individuals based on varying theories completely

6

unrelated to the harm arising from Defendants' professional negligence—including, for instance, the view that "hospital[s] and assisted living entities," "banks and underwriters," and even Flint "residential property owners and landlords" caused Plaintiffs' injuries because, *inter alia*, "Flint is a 'rust-belt' community" whose homes are "contaminated by lead paint applied to [their] historically wood frame residential structures." Dkt. 1313 at 216–17, 220, 224.

Importantly, the prior notices (like the current ones) did not identify any legal duties that the nonparties owed Plaintiffs related to Defendants' professional negligence, or how the nonparties breached those duties. To illustrate just one example, LAN/LAD's 2022 notice lists Brent Wright, but their August 2021 notice mentions Wright *just once* and does not explain how Wright could have owed a duty to any plaintiff (*or mention the word "duty" at all*). Dkt. 1930 at 21. For other nonparties, Defendants make no more than cursory references to generic job "duties" that have nothing to do with the *legal duties* Defendants need to prove to show that the comparative fault statutes apply.[3]  *See* Exs. A, B (charts listing the duties Defendants believe the nonparties allegedly owed).

---

[3] For example, Veolia claims that contrary to Bradley Wurfel's "duties within the [MDEQ], he intentionally disseminated deliberately misleading and inaccurate communications" to Flint residents. Dkt. 1313 at 127. Yet, there is no explanation why one's roles as a public spokesperson creates a legal duty that can form the basis of a nonparty at fault claim related to Defendants' professional negligence.

7

Accordingly, on November 1, 2022, the Court ordered Defendants to each file new notices explaining which nonparties they believe are at fault.  Dkt. 2250 at 3. Defendants' operative notices now seek to implicate the actions of 38 nonparty entities or individuals, but do not improve on any aspect of their prior notices.  Dkts. 2281, 2282.  The notices include only the name of the nonparty and, like earlier, still do not explain the duties the nonparties owed Plaintiffs related to the harm caused by Defendants' professional negligence.

## LEGAL STANDARDS

### I.     Michigan's Comparative Fault Statutes

Michigan's 1995 tort reform replaced joint and several liability with a "fair share" liability scheme designed to apportion damages across all parties at fault.  *See* Mich. Comp. Laws ("MCL") §§ 600.2957; 600.6304.  The reform was to ensure "that each tortfeasor need not pay damages in an amount greater than his allocated percentage of fault." *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 472 Mich. 44, 51 (2005).  Unlike other jurisdictions, Michigan's regime contemplates that the factfinder will allocate responsibility *after* it has determined both that the defendant was negligent and assessed the amount of damages that were a proximate result of that negligence. MCL 600.6304(1)(a)-(b), (2), (8) (factfinder is to determine "total amount of each plaintiff's damages" followed by "percentage of the total fault" for which each party or nonparty was a proximate cause of the plaintiff's

8

damages); MICH CIV. JI 42.05 (same). A defendant seeking to mitigate the damages they owe through a comparative fault defense must meet the notice requirements of MCR 2.112(k) and must prove that a nonparty: (1) owed a legal duty to the plaintiff related to the misconduct the plaintiff accuses of the defendant; (2) breached that duty; (3) and that the breach was a legal and proximate cause of; (4) the plaintiff's damages. *See Romain*, 483 Mich. at 21; *Holton*, 255 Mich. App. at 326.

A notice compliant with MCR 2.112(k) "shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault." MCR 2.112(k)(3). "The trier of fact **shall not** assess the fault of a nonparty unless notice has been given as provided" in this rule. *Id*. at 2.112(k)(2) (emphasis added).[4]

Additionally, "proof of a duty is required before fault can be apportioned and liability allocated under the comparative fault statutes." *Romain*, 483 Mich. at 21 (cleaned up). In *Romain*, the Michigan Supreme Court affirmed striking of a defendant's notice because the nonparty identified "did not owe plaintiffs a duty" "under general negligence principles." *Id*. at 20. "[U]nder Michigan law, a legal duty is a threshold requirement before there can be any consideration of whether a

---

[4] As an "integral part of Michigan's substantive tort law scheme," defendants must comply with MCR 2.112(k)'s requirements. *Stonemor Operating, LLC v. Bush*, 2014 WL 4388347, at *6 (W.D. Mich. Sept. 5, 2014).

person was negligent by breaching that duty and causing injury to another." *Id*. 22. This conclusion reinforces the statutory text, which defines "fault" as "a breach of a legal duty . . . that is a proximate cause of damage sustained by a party." *Id*. (quoting MCL 600.6304(8)). Put simply, "[w]ithout owing a duty to the injured party, [a] 'negligent' actor could not have proximately caused the injury and could not be at 'fault' for purposes of the comparative fault statutes." *Id*. at 22; *see also Jones v. Enertel, Inc.*, 254 Mich. App. 432, 437 (2002) ("[A] duty must first be proved before the issue of fault or proximate cause can be considered.").

## II.  Motion to Strike and Motion for Judgment on the Pleadings

A motion to strike is the proper vehicle to address a defendant's deficient notice of nonparty fault.[5] *See, e.g.*, *Brantley v. Walmart, Inc.*, 2020 WL 5939192, at *2 (E.D. Mich. Oct. 7, 2020) (granting motion); *Am. Home Mortg.*, 476 F. Supp. 2d at 650 (same). A motion to strike is appropriate to excise "any redundant, immaterial, impertinent, or scandalous matter" from any pleading. Fed. R. Civ. P. 12(f). A motion to strike should be granted if it will "eliminate spurious issues before trial and streamline the litigation." *Webasto Thermo & Comfort N.A., Inc. v. Bestop, Inc.*, 326 F. Supp. 3d 521, 531–32 (E.D. Mich. 2018).

---

[5] Courts have also construed such motions as motions *in limine* that "seek[] to prevent Defendants from raising certain evidence or arguments at trial." *Design Basics, LLC v. Chelsea Lumber Co.*, 2013 WL 3471142, at *2 (E.D. Mich. July 10, 2013) (granting motion).

Additionally, a party may move for judgment on the pleadings "after the pleadings are closed but—early enough not to delay trial." Fed. R. Civ. P. 12(c).  A motion for judgment on the pleadings is governed by the same standards as motions under Rule 12(b)(6).  *See Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  The motion should be granted if the allegations in Defendants' notices are insufficient to entitle them to the relief requested.

## ARGUMENT

I.   **Defendants' Notices Fail to Meet Their Burden of Showing that the Comparative Fault Statutes Apply**

A.   Defendants' Notices Do Not Comply with MCR 2.112(k)

As an initial matter, Defendants' November 2022 notices do not provide the mandatory "brief statement of the basis for believing the nonparty is at fault."  MCR 2.112(k)(3)(b).  As a Michigan Court of Appeals explained:

> In order to state the basis for believing that others bear fault, the party filing notice must identify specific acts or omissions that it reasonably believes might have caused the harm at issue. To interpret the rule otherwise would be to invite parties to give notices that are based on nothing more than pure speculation.

*Johnson v. Abrams*, 2011 WL 668356, at *5 (Mich. Ct. App. Feb. 24, 2011) (per curiam), *leave to appeal denied* 490 Mich. 883 (2011).  The *Johnson* defendants sought to implicate certain medical professionals for contributing to plaintiffs' injuries following a car accident.  However, the notice "merely asserted that the unknown medical professionals were 'negligent,'" without more detail and was

11

therefore properly stricken.  *Id.*; *see also Taylor v. Michigan Petroleum Techs., Inc.*, 307 Mich. App. 189, 203 (Mich. Ct. App. 2014) (identification of nonparty was deficient when defendant's "basis for believing" was a "bald assertion that [nonparty] caused the explosion and fire" at issue).

Here, Defendants provide *even less* detail than the defendants in *Johnson* or *Taylor*.  This prejudices the Class by forcing Plaintiffs to guess at the arguments Defendants will attempt to make at trial.  For instance, it is unclear whether Defendants contend that the entire "Michigan Department of Treasury" should be assigned fault, or only the two employees listed beneath that bullet point.  The same question applies to Defendants' listing of other agencies, including the Michigan Department of Environmental Quality ("MDEQ") (listing nine employees); the Michigan Department of Health and Human Services ("MDHHS") (three employees); and the U.S. Environmental Protection Agency (one employee).

That Defendants filed sprawling notices years ago—before key expert discovery and depositions had occurred, and before class certification—does not cure this prejudice.  Defendants give no indication that their November 2022 notices incorporate any aspect of their prior notices.[6]  And as the Court noted, the purpose

---

[6] Plaintiffs further contend that Veolia's 2020 notice (Dkt. 1313) and LAN/LAD's 2021 notice (Dkt. 1930) are untimely under MCR 2.112(k). A timely notice "must be filed within 91 days after the party files its first responsive pleading," and any subsequent notice must be made "on motion" and must "show[] that the facts on which the [amended] notice is based were not and could not with reasonable

for updating these notices is for the parties to "prepare their opening statement, their evidence and so on."  Dkt 2253 at 42.  *None* of the notices Defendants have ever filed accomplish this, as they either contain no detail at all (2022 notices), or do not identify any of the legal duties the nonparties owed any Plaintiff, or how any nonparty misconduct was a proximate cause of the same injuries as those Defendants inflicted.  This prejudices the Class by making it impossible to prepare any summary judgment motion on the legal issue of duty, or any responses at trial for how the nonparties breached the (as-of-yet-unidentified) duty. These defects, standing alone, justify granting the relief requested.

B.   <u>Defendants Cannot Identify the Legal Duties Any Nonparty Owed to the Class Related the Tortious Conduct Remaining at Issue</u>

Michigan's comparative fault statutes are inapplicable if: (1) defendants cannot prove the existence of a legal duty the nonparty owed the plaintiff; or (2) the legal duty identified is unrelated to the tortious conduct committed by the defendant. *See Romain*, 483 Mich. at 21; *Vandonkelaar*, 290 Mich. App. at 190–91.

For example, in *Vandonkelaar v. Kid's Kourt, LLC*, a defendant daycare accused of injuring a child's finger tried to name the child's parents as nonparties at fault for their allegedly failing to follow a doctor's advice when the child was

---

diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party." MCR 2.112(k)(3)(c). Veolia's 2020 notice and LAN/LAD's 2021 notice were not made pursuant to any motion to amend that was granted by the Court.

rehabbing the finger.  But *Vandonkelaar* held that the comparative fault statutes did not even apply because the parents had no parental duty "*with respect to the conduct that was the factual and proximate cause of the injuries to [the child's] finger that occurred at the daycare center.*"  290 Mich. App. at 190–91 (Mich. Ct. App. 2010) (emphasis in original). Whatever duties the parents owed their child was unrelated to the daycare's negligence, and "did not trigger the need to assess [the parents'] fault for purposes of the comparative-fault statutes" because they "constituted a subsequent, separate tort that initiated a new causal chain leading to its own set of damages, which, we note, would not be recoverable [ ] due to parental immunity." *Id*. at 191.

In *Holton v. A+ Assocs., Inc.*, the plaintiffs sued an insurer for insufficient insurance payments following a fire that destroyed portions of their house.  The insurer tried to name the plaintiffs and a roofer as nonparties at fault for causing the fire, but a Michigan Court of Appeals held that *why* plaintiffs submitted an insurance claim was immaterial to the tortious conduct alleged—negligent performance of a contractual duty and negligent failure to advise concerning the insurance coverage. 255 Mich. App. at 321.  Since plaintiffs' claims were "premised on defendants' alleged liability for negligence resulting in the lack of proper insurance coverage," whatever misconduct by a nonparty for the cause of the fire "is no more relevant in this case than it would be if it related to a purely accidental event, such as a lightning

14

strike." *Id.*; *see also Am. Home Mortg.*, 476 F. Supp. 2d at 649 (citing *Holton* in striking notice because there was no evidence that a nonparty's misconduct was a proximate cause of the harms arising from defendants' tortious conduct).

And in *Doe v. Loomba*, a plaintiff alleged that she was sexually assaulted by a doctor while she was at a defendant hospital. The defendants named the doctor as a nonparty for contributing to the plaintiff's injuries. But by that point in the litigation, the only claim remaining was the "limited ordinar[y] negligence claim that [defendant hospital] failed to take corrective action upon actual/constructive notice of [the doctor's] prior assaults." Case No. 19-174239-NO, 2020 Mich. Cir. LEXIS 660, at *5 (Mich. Cir. Ct. May 28, 2020); Ex. C. The court struck the notice because a nonparty's fault cannot be considered if it did not "*contribute to the underlying cause of action.*" *Id.* at *6 (emphasis in original). Because the doctor's misconduct—which the hospital contended occurred outside the scope of his employment—did not contribute to the hospital's alleged failure to take corrective action after learning of that misconduct it could not properly be considered under the nonparty at fault statute. *Id.*

None of the notices Defendants have ever filed satisfy the requirements of *Vandonkelaar*, *Holton*, or *Doe.* Plaintiffs have carefully scrutinized Defendants' prior notices to try to understand which specific legal duties Defendants allege the 38 nonparties it now names owed to Plaintiffs. But the notices do not identify any

15

legal duties that render the comparative faults applicable.  For example, for 16 of the 38 nonparties LAN/LAD seeks to shift blame to, LAN/LAD do not discuss any potential legal duty owed and, in fact, *do not mention the word "duty" at all* when discussing these nonparties. Ex. A.  For another 17 nonparties, LAN/LAD simply reference generic job "duties" that have nothing to do with the requisite *legal duty* necessary to establish a nonparty-at-fault claim.  These job responsibilities vaguely range from "a duty to . . . safeguard the public's health, welfare, and safety" (in reference to the Flint Receivership Transition Authority Board), to "assisting with disease outbreak coordination and investigation" (Eden Wells), to "delivery of services essential to the public health, safety, and welfare of Flint residents" (Andy Dillon). Ex. A.  The same deficiencies pervade Veolia's prior notices.[7] Ex. B.

Defendants do not ever explain how any of these "duties" form the basis for why a nonparty was a "proximate cause" of any of the damages sustained by any plaintiff, as is required to allocate damages under the statute. MCL 600.6304(8). Defendants do not cite statutes, cases, or any other legal basis for why a nonparty's supposed job responsibilities trigger the legal duty needed to invoke the comparative

---

[7] Veolia's 2020 notice fails to describe any "duty" with respect to 12 of the 38 nonparties it now identifies, and does not provide any basis for why a person/entity's job "duties" can establish a legal duty for 18 of 38 nonparties. For the remaining 8 nonparties where both "duty" and a statute are referenced, there is still no description for why the statute is relevant to Defendants' professional negligence—like why the Genesee County Drain Commissioner's "duty to administer the State's Drain Code" has any relevance to any remaining issues to be tried. Ex. B.

fault statutes.  Even if Defendants point to a statute with respect to some nonparties (like the Safe Water Drinking Act), "the fact that defendant's conduct may have been in violation of a statute does not in and of itself shed light on whether defendant owed plaintiff a duty of care." *Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich. App. 1, 16 (Mich. Ct. App. 1999).  Instead, violating a statute is only evidence of negligence "once a duty is found." *Id.*  And under Michigan law, even if Defendants claim that governmental entitles owe a general duty to the public, that still cannot form the basis of any special relationship that creates a *specific* legal duty owed to Plaintiffs.  *White v. Beasley*, 453 Mich. 308, 318 (1996) ("[T]ort liability should not be based on statutes . . . that are not traditionally relied on to impose liability or do not themselves specifically expose government employees to liability.").

Put simply, Defendants do not actually explain how *any* of the nonparties owed legal duties related to the tortious conduct at issue such that the comparative fault statutes even apply.  The nonparties, *if* their conduct rose to the level of negligence (for which this Court has already declared most have immunity), would at most be responsible for separate torts and causal chains of harm unrelated to Defendants' professional misconduct in providing *consulting* services.[8]  As this Court has already held: "that Flint officials made incorrect decisions in the absence

---

[8] The same is true for Rowe Professional Services, the only non-governmental nonparty Defendants names to be at fault.  Rowe's conduct far pre-dated any of the Defendants' tortious conduct remaining at issue in this case.

of competent advice could not possibly relieve LAN from liability for its failure to issue that advice." *In re Flint*, 5:17-cv-10164, Dkt. 662 at 28.  Yet, this is exactly what Defendants seek to do in a trial where damages will not be at issue.  But it does not matter *why* Defendants were hired to prevent, fix, or mitigate a specific problem (e.g., water conditions in Flint), or how that underlying condition arose.  Defendants are still liable (and cannot have their liability reduced) for failing to meet the standard of care for professional engineers in performing their duties.  Their liability is unaffected by the conduct of anyone else that may have previously contributed to the conditions in Flint or that of anyone else who may have subsequently caused harm that would not have occurred absent Defendants' conduct.

LAN/LAD were retained to advise the City on how to safely switch from the Detroit water system to the Flint Water Treatment Plant.  No one else had that responsibility, and LAN/LAD cannot blame anyone else for any deficiencies in the advice it provided as a professional engineer—including their complete failure to identify the need for a corrosion control system.  While government actors could have intervened to identify and address the deficiencies in LAN/LAD's work, any *duty* they may have had to do so is completely separate from LAN/LAD's work as a professional engineer and cannot serve as a basis for limiting LAN/LAD's fault.

Veolia's attempt to point fingers at various nonparties is even more unconvincing.  The nonparty conduct that it seeks to blame either pre-dated its

18

involvement in the FWC, or post-dated its engagement as various individuals and government actors engaged in conduct that exacerbated the crisis or failed to take measures that could have mitigated the crisis. But the case against Veolia is focused on what *Veolia* did and did not do during the period spanning its engagement beginning in February 2015. If Veolia's liability is established, it is Veolia who will be entirely at fault for the ensuing harms following its failure to use its expertise to protect Flint residents from the dangerous water conditions that already existed—and that any competent engineer would have identified—when it was retained.

Defendants' boundless attempts to raise vague nonparty at fault theories at trial are illustrated by Veolia's recently served expert report of Lawrence Friedman, a law professor at New England Law School. Through Professor Friedman, Veolia apparently hopes to argue that various governmental institutions including, among others, the Michigan Legislature, the Governor, the MDEQ, the MDHHS, and Flint's Mayor and City Council, all had "authority" to take steps to avoid or mitigate various aspects of the FWC, and are *politically* "accountable" for their failure to do so. *See* Ex. D at 5–40. While this may be an interesting matter of political science, it is irrelevant to whether *Defendants* acted in a professionally negligent manner, and whether Defendants' actions were capable of causing harm to Flint residents, businesses, and property. No authority suggests that Michigan's comparative fault statutes permit tortfeasors to avoid responsibility simply by pointing to the mere fact

19

of governmental inaction.[9]  Rather, both the text and relevant case law mandate that a nonparty at fault defense is available only if the defendant can establish a duty related to the tortious conduct at issue.  *See, e.g.*, *Romain*, 483 Mich. at 21; *Vandonkelaar*, 290 Mich. App. at 192.

At bottom, Defendants have never identified the duties owed to any Plaintiff that triggers application of the comparative fault statutes, and it is unfair and prejudicial for Plaintiffs to have to guess at these duties for purposes of a future summary judgment motion or to prepare for trial.  Leave to amend should not be granted when doing so would be futile.  *See Carter v. Mich. Dept. of Corrections*, 2013 WL 5291567, at *6 (E.D. Mich. Sept. 19, 2013).

## II.    In the Alternative, Allocation of Fault to Nonparties is More Appropriate for the Remedies Phase of this Litigation

Even if Defendants could meet their burden of showing that the comparative fault statutes apply to some or all of the nonparties they have identified, the statutes themselves still dictate that any allocation of fault be reserved for the *damages* portion of the case—an element of the Class's claims that will not be adjudicated at

---

[9] For instance, Plaintiffs expect Defendants to argue that governmental entities were not going to follow Defendants' advice for increased corrosion control, even if Defendants had given that advice. But just like the situations in *Vandonkelaar*, et al., any inaction by a nonparty would constitute a tort separate from Defendants' professional negligence, and Plaintiffs are unaware of a situation where any governmental entity has been named as a nonparty at fault due to its *inaction*.

the upcoming trial.[10]  Allocations of fault are to be made only "[i]n an action based on tort or another legal theory **seeking damages**." MCL § 600.2957 (emphasis added).  And a jury determining "percentages of fault . . . **shall** consider . . . the extent of the causal relation between the conduct **and the damages claimed**."  MCL § 600.6304(2) (emphasis added). Michigan's model jury instructions further clarify that the comparative fault "instruction should be used **only** for actions . . . **seeking damages** for personal injury, property damages, and wrongful death[.]" MICH. CIV. JI 42.05 (emphasis added). And under those instructions, the jury allocates responsibility only *after* it has found the defendant liable *and* determined the amount of damages for which the defendant's conduct was a proximate cause. *Id.*

Here, the jury will not make any findings on damages, even if they determine that Defendants breached the standard of care and that such misconduct was capable of harming Plaintiffs.  This contrasts with how the matter was presented at the Bellwether trial, where the jury was asked to assess the specific amount of damages Defendants owed to the each of the plaintiffs.  *See In re Flint Water Cases*, 5:17-cv-10164, Dkt. 918 at 7, 51 (E.D. Mich. July 21, 2022) (verdict form).  As the Court has observed, there remains an open question of how best to allocate fault, including

---

[10] This sequencing is one that Defendants should have no objection. As counsel Veolia stated at the October 26 conference, "[a]nything that can be decided in a common basis in an issue class trial, we should try to do that. We just didn't think that percentages was going to be feasible." Dkt. 2253 at 38.

whether "percentages make sense to be offered here."  Dkt. 2253 at 36.

Because the jury will not be asked to determine damages at the upcoming trial, specific allocations of fault should be reserved for until after the jury has made findings related solely to Defendants' conduct.[11] *Colbert*, 226 Mich. App. at 103–04 (noting how any error in a trial court's jury instructions on comparative fault was harmless because "[c]omparative negligence is relevant to the issue of damages" and "the jury never reached the issue of damages"); *Carnell v. Vandervere*, 2007 WL 2404614, at *1 (Mich. Ct. App. Aug. 23, 2007) (noting how a "jury's verdict in favor of defendants, which was based solely upon the jury's determination that defendants were not negligent, rendered moot the issue of nonparty fault").

Deferring allocating fault would significantly streamline the upcoming trial, and potentially obviates the need for a factfinder to wade through the complicated issues of allocating fault *at all*.  As the has Sixth Circuit noted when denying Defendants' Rule 23(f) petitions, a jury will determine "either [that Defendants] breached their duty by failing to provide appropriate advice to the City of Flint regarding treating the water or they did not; either [that] the breach caused corrosive water conditions in the Flint water distribution system, or it did not," as well as "whether those conditions were capable of causing harm, and whether [Defendants]

---

[11] District courts have "substantial discretion" in managing and controlling pending litigation and the structure of a class action. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017) (citation omitted).

should have foreseen and taken precautions to avoid that risk of harm." *In re: Veolia North America, LLC*, Nos. 21-0103/04/05, Dkt. 31-2 at 6–7 (6th Cir. Jan. 24, 2022) (cleaned up). If the jury finds for the Defendants on any *one* of these common questions, then the issue of Defendants' liability is resolved in their favor and any allocation of fault will not need to be made. *See Colbert*, 226 Mich. App. at 104.

If the jury finds for the Class on these issues, the remedies phase can appropriately allocate fault among the nonparties that Defendants can properly identify. These proceedings will be more precise as they can focus on the specific harms suffered by separate categories of Class members (e.g., Flint residents v. businesses v. properties). But there is no need to cram all of the arguments related to *38* proposed nonparties at fault into a single jury trial that is focused primarily on Defendants' conduct, especially when damages will not be an issue. *In re: Veolia North America, LLC*, Nos. 21-0103/04/05, Dkt. 31-2 at 8 (6th Cir. Jan. 24, 2022) (holding that if "it is found that petitioners are responsible for harm caused by their breach of duty, that holding still significantly narrows the scope of subsequent trials to proof of proximate cause, *relative fault*, and *damages*" (emphasis added)).

To be clear, Plaintiffs are not arguing that Defendants should precluded from introducing evidence related to the origins of the FWC or how conditions worsened or improved over time. Causation issues are still relevant to the facts in dispute— including whether anyone engaged in conduct that defeated proximate cause on the

part of the engineering Defendants' liability for negligence.  *See Veltman v. Detroit Edison Co.*, 261 Mich. App 685, 694 (Mich. Ct. App. 2004) (holding that causation defenses do not need to allocate fault and are available even if comparative fault statutes do not apply).  But that does not mean that the jury needs to be instructed on or be required to make complicated findings on allocating fault for damages when that issue need not be decided.  Plaintiffs' request for this alternative relief focuses on whether the issue of allocating fault across potentially dozens of entities—in a trial where there are no damages at stake—is the best use of the Court's (and the parties') time and resources.

In similar situations, courts have separated the issue of comparative fault to until after an issues trial focused on defendants' conduct.  For example, in the cases against big tobacco companies in the 1990s, the main jury trial "culminated in jury findings establishing certain elements of Defendants' conduct" (such as whether the defendants concealed the fact that smoking causes cancer), which were given res judicata effect in remedies actions.  *Searcy v. R.J. Reynold Tobacco Co.*, 902 F.3d 1342, 1346 (11th Cir. 2018). While the defendants in these cases argued that plaintiffs were always comparatively at fault for smoking in the first place, the Eleventh Circuit observed that "just as with the separation of liability and damages, a finding that the defendant has been negligent can be severed from a later proceeding that determines the comparative fault between the defendant and the

24

plaintiff." *Id.* at 1356.  There was no need to wade into the morass of comparative fault when the primary issues to be decided focused on Defendants' conduct.

Here, Defendants' scopious claims of nonparty fault—for which they have not even attempted to refine in their most recent notices—give no indication that these core deficiencies will be cured or streamlined for the upcoming trial.  As the Court recognized after hearing months of arguments during the Bellwether trial related to dozens of different nonparties in addition to arguments against Defendants: it was still not "entirely clear to [the Court] with all of the individuals and entities what [Defendants'] theory is" related to the nonparties they now seek to implicate once again.  Ex. E at 5 (Transcript of proceedings from July 18, 2022 in 5:17-cv-10164).  Defendants have provided no indication that their trial plan for the upcoming trial is any different.  Accordingly, the most efficient way to handle allocating fault to nonparties—if that issue is to be reached at all—would be to defer such issues to the remedies phase.

## CONCLUSION

Class Plaintiffs respectfully request that the Court grant the relief requested.

Dated: March 28, 2023                    Respectfully submitted,


By: */s/ Stephen Morrissey*              Michael L. Pitt
Stephen Morrissey                         PITT MCGEHEE PALMER & RIVERS,
Jordan Connors                            P.C.
Katherine M. Peaslee                      117 West 4th Street, Suite 200

25

SUSMAN GODFREY, L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
smorrissey@susmangodfrey.com
jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Lear Jiang
SUSMAN GODFREY, L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100 Telephone
(310) 789-3150 Facsimile
ljiang@susmangodfrey.com
***EXECUTIVE COMMITTEE FOR
CLASS PLAINTIFFS***

Theodore J. Leopold
COHEN MILSTEIN SELLERS & TOLL
PLLC
2925 PGA Boulevard, Suite 220
Palm Beach Gardens, FL 33410
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
***CO-LEAD CLASS COUNSEL***

Royal Oak, MI 48067
Telephone: (248) 398-9800
mpitt@pittlawpc.com
***CO-LEAD CLASS COUNSEL***

Emmy L. Levens
COHEN MILSTEIN SELLERS &
TOLL PLLC
1100 New York Ave. NW
Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
elevens@cohenmilstein.com
***CO-LEAD CLASS COUNSEL***

26

Peretz Bronstein
BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
peretz@bgandg.com
*EXECUTIVE COMMITTEE FOR CLASS PLAINTIFFS*

Esther E. Berezofsky
MOTLEY RICE LLC
210 Lake Dr. East, Suite 101
Cherry Hill, New Jersey 08002
Telephone: (856) 667-0500
eberezofsky@motleyrice.com
*EXECUTIVE COMMITTEE FOR CLASS PLAINTIFFS*

Teresa A. Bingman
LAW OFFICES OF TERESA A.
BINGMAN, PLLC
4131 Okemos Road, Suite 12
Okemos, Michigan 48864
Telephone: (877) 957-7077
tbingman@tbingmanlaw.com
*EXECUTIVE COMMITTEE FOR CLASS PLAINTIFFS*

Paul F. Novak (P39524)
WEITZ & LUXENBERG, P.C.
3011 W. Grand Blvd., Suite 2150
Detroit, MI 48202
Telephone: (313) 800-4170
pnovak@weitzlux.com
*EXECUTIVE COMMITTEE FOR CLASS PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

/s/ *Stephen Morrissey*
    Stephen Morrissey

27