# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ELNORA CARTHAN, et al., | Case No. 5:16-cv-10444-JEL-MKM |
| Plaintiffs, | Hon. Judith E. Levy |
| v. | |
| RICK SNYDER, et al., | |
| Defendants. | |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AND MOTION FOR JUDGMENT ON THE PLEADINGS

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court deny Plaintiffs' motion to strike VNA's November 29, 2022, submission regarding non-parties at fault because the motion is untimely and/or VNA's submission was not a notice of non-party fault subject to Michigan Court Rule 2.112(K)?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

2.  Should the Court deny Plaintiffs' motion for judgment on the pleadings because the non-parties owed Plaintiffs duties and VNA alleged that the non-parties' breach of those duties caused the injuries for which Plaintiffs seek to hold VNA liable?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

3.  Should the Court deny Plaintiffs' alternative request to remove all issues regarding non-party fault from the upcoming issue-class trial?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich. App. 1 (1999)

*Estate of Goodwin ex rel. Goodwin v. Nw. Mich. Fair Ass'n*, 325 Mich. App. 129
(2018)

*Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, No. 13-cv-14376,
2014 WL 4715532 (E.D. Mich. Sept. 22, 2014)

*O'Neill v. Soils & Structures, Inc.*, No. 228364, 2002 WL 31297196 (Mich. Ct.
App. Oct. 11, 2002)

MCL § 600.6304

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

LEGAL STANDARD.........................................................................................3

ARGUMENT .....................................................................................................4

I.   Plaintiffs' Motion To Strike Is Untimely And Profoundly Mistaken ...........4

II.  Plaintiffs Are Not Entitled To Judgment On The Pleadings On VNA's
     Non-Party Defense.........................................................................................6

     A.   Each Non-Party Owed Plaintiffs Cognizable Legal Duties And
          VNA Has Sufficiently Alleged That The Breaches Of Those
          Duties Caused Or Contributed To Plaintiffs' Claimed Injuries...........7

          1.   The Non-Parties Owed Plaintiffs Common-Law,
               Constitutional, Statutory, And Contractual Duties ...................7

          2.   VNA Adequately Alleged That Each Non-Party's Breach
               Of Its Duties Caused The Plaintiffs' Alleged Injuries.............11

     B.   Plaintiffs' Arguments Lack Merit ......................................................12

          1.   Plaintiffs Misconstrue The Standard For Allocating Non-
               Party Fault..............................................................................12

          2.   Plaintiffs Misunderstand The Standard For Pleading
               Non-Party Fault.......................................................................17

          3.   Plaintiffs Conflate Liability With Allocation Of Fault...........19

III. The Court Should Deny Plaintiffs' Alternative Request To Remove
     All Non-Party Issues From The Issue-Class Trial.......................................21

CONCLUSION .................................................................................................25

iv

# INTRODUCTION

Plaintiffs brought these lawsuits to recover for the harms they allegedly suffered due to the Flint water crisis.  Plaintiffs initially sued many federal, state, and local officials (in addition to VNA and LAN), alleging that the government actors caused, prolonged, and covered up the crisis.  Plaintiffs then entered into a $626 million settlement with the government actors.  So Plaintiffs cannot reasonably dispute that the government actors owed them legal duties and breached those duties; that was the premise of the settlement.  Yet Plaintiffs now have filed a motion seeking to pin *all* of their alleged injuries on VNA and LAN.  Plaintiffs make two arguments to justify that extraordinary request, both of which the Court should reject.

First, Plaintiffs argue that the Court should strike VNA's November 29, 2022, "Submission Regarding Non-Parties at Fault" because it does not comply with the Michigan requirements for a notice of non-party fault.  Their motion is untimely and misguided.  VNA's November 2022 submission was not a notice of non-party fault. VNA timely submitted its notice of non-party fault in November 2018, and it supplemented that notice as expressly contemplated by the case-management order. VNA's November 2022 submission merely clarified (at the Court's request) the specific non-parties on which VNA will focus in the issue-class trial.

Second, Plaintiffs contend that the non-parties did not owe them any cognizable duties "related to" VNA's alleged professional negligence.  Plaintiffs completely

misunderstand Michigan's fair-share liability system.  To be allocated fault, a non-party must have owed the plaintiff a legally cognizable duty, and the non-party's breach of that duty must have contributed to causing the injury for which the plaintiff seeks to hold the defendant liable.  VNA's notice of non-party fault explains that those requirements are met here.  Contrary to Plaintiffs' argument, a non-party does not need to owe the same duty as the defendant or a duty related to the defendant's duty or conduct.  That view, if adopted, would mean that non-parties could almost never be allocated fault, leading to defendants being liable for far more than their shares of fault for plaintiffs' injuries.  That is directly contrary to the purpose of the fair-share liability system.

In the alternative, Plaintiffs argue that the Court should remove all non-party issues from the issue-class trial.  But the Court already decided how to address non-party fault in the issue-class trial:  The Court ruled that it would have the jury create a timeline of non-party fault for use in the individualized proceedings.  Plaintiffs give no reason for the Court to reconsider that decision.  If the Court decides to revisit the scope of the issue class, the Court should simplify the non-party issue to just whether each non-party could be allocated fault.  But if the Court decides that it should remove all non-party issues from the issue-class trial, then the Court should decertify the class, because holding an issue-class trial without any non-party issues simply would duplicate the individualized proceedings.

2

## LEGAL STANDARD

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). Courts review those motions under the same standard as motions to dismiss under Rule 12(b)(6). *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Although some district courts have concluded otherwise, this Court has held – in line with Sixth Circuit precedent – that the plausibility standard set out in *Twombly* and *Iqbal* does not apply to affirmative defenses. *Exclusively Cats Veterinary Hosp., P.C. v. Pharm. Credit Corp.*, No. 13-cv-14376, 2014 WL 4715532, at *2-3 (E.D. Mich. Sept. 22, 2014) (Levy, J.). Instead, the pre-*Twombly* and *Iqbal* "fair notice" standard applies. *Id.* at *3.

Under Rule 12(f), "[t]he [C]ourt may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The motion to strike must be made "either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f)(2). The standard for granting a motion to strike is "high," *Ellis v. Majestic Operations, LLC*, No. 22-cv-2511, 2023 WL1768133, at *2 (W.D. Tenn. Feb. 3, 2023), because striking "is a drastic remedy" that "should be sparingly used by the courts," *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

## ARGUMENT

Plaintiffs ask the Court to strike VNA's November 2022 submission and enter judgment on the pleadings on VNA's non-party defense – meaning that they seek to hold VNA and LAN liable for *all* of their alleged injuries from the Flint water crisis. Their arguments should be rejected.

## I.    Plaintiffs' Motion To Strike Is Untimely And Profoundly Mistaken

Plaintiffs argue that the Court should strike VNA's November 29, 2022, submission because it does not meet the requirement for a notice of non-party fault under the Michigan rules.  Br. in Supp. of Pls.' Mot. to Strike (Br.) 11-13, ECF No. 2411, PageID.77084-77086.  There are two problems with this argument.

To begin with, Plaintiffs' motion is untimely.  Under Rule 12(f), a motion to strike a pleading must be filed "within 21 days" of service of the pleading.  Fed. R. Civ. P. 12(f)(2).  VNA filed and served its submission on November 29, 2022; Plaintiffs then waited four months before filing their motion.  Plaintiffs do not acknowledge that their motion is untimely and offer no explanation for the delay.  In the meantime, VNA has been preparing its cases against the non-parties identified in its submission.  Plaintiffs' motion to strike should be denied because it is untimely.

In any event, Plaintiffs' motion lacks merit.  Plaintiffs' sole basis for moving to strike is that VNA's November 2022 submission does not contain a "brief statement of the basis for believing the nonparty is at fault," as the Michigan court rules

require for a notice of non-party fault.  Br. 11, PageID.77084 (quoting Mich. Ct. R.

2.112(K)(3)(b)).  But VNA's November 2022 submission was not its notice of non-

party fault under that rule, so it did not have to satisfy that requirement.  VNA timely

filed its notice of non-party fault in this case in November 2018 – more than four

years ago – and that notice includes abundant detail on each non-party's fault.  *See*

VNA Notice of Non-Party Fault, ECF No. 672, PageID.19338-19473.  VNA then

twice supplemented its notice, in July 2019 and November 2020, in light of new

developments in the case.  *See* VNA Notice of Non-Party Fault, ECF No. 899,

PageID.23858; VNA Notice of Non-Party Fault (VNA Notice), ECF No. 1313,

PageID.39934.  That was consistent with the Court's case-management order, which

recognized that defendants can file "supplements" to their notices of non-party fault.

Second Am. Case Mgmt. Order 56-57, ECF No. 998, PageID.25956.[1]

VNA's November 2022 submission addressed a narrower issue.  The Court

asked VNA to identify the non-parties it intends to pursue at the issue-class trial, to

help simplify preparation for trial.  *See* Order 4, ECF No. 2249, PageID.73956; *see*

---

[1]    Plaintiffs argue in a footnote that VNA needed to seek leave before supplement-
ing its notices, citing the Michigan court rule that governs notices of non-party fault.
Br. 12 n.6, PageID.77085.  Plaintiffs forfeited this argument by waiting more than
three years to raise it.  *Cf. Hurley v. Deutsche Bank Tr. Co. Ams.*, 610 F.3d 334, 340
(6th Cir. 2010) (defendant forfeited the right to compel arbitration when it litigated
a case for more than two years).  Anyway, the Michigan rule requires a motion only
when the defendant did not timely file an initial notice of non-party fault; it does not
require a motion to supplement a timely notice.  *See* Mich. Ct. R. 2.112(K)(3)(c).

*also* Tr. of Oct. 26, 2022, Hrg. 42:3-6, ECF No. 2253, PageID.74010 (requesting that VNA inform the Court "who, going into this trial, [it] believe[s] are the nonparties at fault" so that the parties can "prepare their opening statement, their evidence and so on"). In response, VNA filed a list of those non-parties, just as it had done in preparation for the first bellwether trial. *See* VNA Submission 1-3, ECF No. 2281, PageID.74148-74150; Ex. 1, VNA Bellwether Submission re. Non-Party Duty Ex. A. That is exactly what the Court requested: The Court asked VNA only to "set forth *which* non-parties [it] believe[s] are at fault." Order 4, ECF No. 2249, PageID.73956 (emphasis added).[2] The Court did not ask VNA for the reasons for its beliefs, did not suggest that VNA's existing notice of non-party fault was insufficient, and did not ask VNA to file a new notice of non-party fault. So there is no basis for treating VNA's November 2022 submission as a notice of non-party fault.

The Court should deny the motion to strike.

## II.   Plaintiffs Are Not Entitled To Judgment On The Pleadings On VNA's Non-Party Defense

Plaintiffs argue that fault cannot be allocated to the non-parties named in VNA's submission as a matter of law. Br. 13, PageID.77086. They are wrong.

---

[2]   The Court similarly asked Plaintiffs to identify the specific "types of harm" they intended to show at trial that could have been caused by the Flint water crisis. Order 3, ECF No. 2249, PageID.73955. In response, Plaintiffs submitted a list of alleged harms; they did not explain how the crisis caused those harms. *See* Pls. Notice Regarding Certified Class Issues 1-2, ECF No. 2283, PageID.74517-74518.

### A.   Each Non-Party Owed Plaintiffs Cognizable Legal Duties And VNA Has Sufficiently Alleged That The Breaches Of Those Duties Caused Or Contributed To Plaintiffs' Claimed Injuries

Under Michigan's fair-share liability system, the jury must allocate fault for a plaintiff's injury among all parties and non-parties that caused or contributed to causing the injury. *See* MCL § 600.6304. That ensures that defendants with "deep pockets" do not pay for others' shares of fault for a plaintiff's injuries. House Leg. Analysis, H.B. 4508 (Sub. H-6) at 3 (Apr. 27, 1995).

For a jury to allocate fault to a non-party, the non-party must have owed the plaintiff a legal duty, *Romain v. Frankenmuth Mut. Ins.*, 433 Mich. 18, 22 (2009), and the non-party's breach of that duty must have been a proximate cause of the plaintiff's injury, *see* MCL § 600.6304(8). VNA's allegations amply show that both requirements are met here, for each non-party.

### 1.   The Non-Parties Owed Plaintiffs Common-Law, Constitutional, Statutory, And Contractual Duties

There are four potential sources of legal duties: the common law; federal and state constitutions; federal and state statutes and regulations; and contracts. *W. Am. Ins. v. Meridian Mut. Ins.*, 230 Mich. App. 305, 311 (1998). Each is relevant here.

*Common-law duties.* In the first bellwether case, the Court held that VNA owed the bellwether plaintiffs "a duty to avoid foreseeable physical harms arising out of [its] undertaking" in Flint. Order on VNA's Mot. for Summ. J. 19, No. 17-cv-10164 ECF No. 606, PageID.42696. VNA disagrees with that conclusion, for

the reasons it will explain in its forthcoming motion for summary judgment.  But if VNA owed Plaintiffs a common-law duty of care, then so did every non-party VNA identified.  *See Beaudrie v. Henderson*, 465 Mich. 124, 134 (2001) ("[T]he liability of government employees . . . should be determined using traditional tort principles without regard to the defendant's status as a government employee").

In fact, the Court already has held that the non-parties owed Flint residents common-law duties of care.  During the bellwether case, VNA identified the same potential non-parties at fault as it identified in its November 2022 submission in this case.  *See* Ex. 1, VNA Bellwether Submission re. Non-Party Duty Ex. A.  VNA proposed a process for the bellwether plaintiffs to identify any non-parties for which they disputed the existence of a duty.  *Id.* at 2.  The Court held that VNA's proposed process was unnecessary because "at a minimum, [the non-parties] have the common law duty . . . to undertake things with reasonable care to avoid foreseeable physical harm."  Tr. of Feb. 24, 2022, Hrg. 28:24-29:5, No. 17-cv-10164 ECF No. 710, PageID.45735-45736; *see id.* at 31:11-14, PageID.45378 (non-parties "[wi]ll be held to" the "duty to take reasonable care in their undertakings to avoid foreseeable physical harm"); *Walters v. Flint*, 482 F. Supp. 3d 601, 617-24 (E.D. Mich. 2020) (holding that the federal EPA owed Flint residents a common-law duty of care).  If the Court readopts its duty ruling with respect to VNA, it should do the same with respect to the non-parties.

*Constitutional duties*.  All state and local officials owe their citizens a duty under the U.S. Constitution not to violate the citizens' rights to bodily integrity. *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019).  The Court already has held that Plaintiffs adequately pleaded a constitutional claim for violation of bodily integrity against Governor Rick Snyder, Andy Dillon, Liane Shekter-Smith, Adam Rosenthal, Stephen Busch, Patrick Cook, Michael Prysby, Bradley Wurfel, Darnell Earley, Gerald Ambrose, Michael Glasgow, Daugherty Johnson, and Howard Croft.  *Carthan v. Snyder*, 384 F. Supp. 3d 802, 841-42, 858-61 (E.D. Mich. 2019).  The Sixth Circuit affirmed those holdings.  *In re Flint Water Cases*, 960 F.3d 303, 324-33 (6th Cir. 2020).  Plaintiffs thus are judicially estopped from arguing that those individuals did not owe them constitutional duties.  *See New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001).  Each of those individuals is on VNA's November 2022 submission.

*Statutory and regulatory duties*.  The government non-parties also owed Plaintiffs statutory and regulatory duties to provide safe drinking water and to protect public health.  VNA's notice of non-party fault set out, in detail, the statutory and regulatory duties that applied to each non-party.  *See* VNA Notice 4-216, PageID.39937-40149.  For example, VNA's notice explained that, under the Safe Drinking Water Act, the EPA had the statutory duty to implement and enforce drinking water standards.  *See id.* at 4-11, PageID.39937-39944 (citing 42 U.S.C. § 300g-3(a)).  The notice also explained that Dr. Susan Hedman, the regional administrator

responsible for Michigan, was responsible for overseeing the Michigan Department of Environmental Quality's (MDEQ's) enforcement of the Act and had the authority to override MDEQ's determinations about corrosion control treatments. *See id.* at 31-32, PageID.39964-39965 (citing 40 C.F.R. §§ 142.19(a), 142.82(i)). VNA's notice provided similar detail for the other non-parties.

Those statutes and regulations imposed a duty of care on the non-parties running to Plaintiffs. Under Michigan law, "a plaintiff can use a statute to impose a duty of care on a defendant" if the "purpose of the [statute] was to prevent the type of injury and harm actually suffered" and the plaintiff "was within the class of persons which [the statute] was designed to protect." *Cipri v. Bellingham Frozen Foods, Inc.*, 235 Mich. App. 1, 16 (1999) (internal quotation marks omitted). Here, the statutes and regulations regulating drinking-water quality plainly are intended to prevent injuries from exposure to unsafe water – precisely the injuries that Plaintiffs allege. *See* Fifth Consol. Am. Compl. (Compl.) ¶ 32, ECF No. 1175-3, PageID.28606. And Plaintiffs, as users of that water, plainly are within the class of persons those statutes are designed to protect. *See, e.g.*, *Cipri*, 235 Mich. App. at 16-17 (statutes intended to prevent environmental contamination were designed to protect plaintiffs who experienced environmental contamination).

*Contractual duties*. The City of Flint also owed contractual duties to Plaintiffs to provide them with safe drinking water. As Plaintiffs' complaint explains, many

10

Plaintiffs "paid water bills for several years in exchange for clean water."  Compl. ¶ 346, PageID.28703.  The City thus had a contractual duty to provide safe water. *See Bronson v. Newberry*, 2 Doug. 38, 45 (Mich. 1845).

In short, Plaintiffs cannot seriously dispute that the non-parties at issue owed them *some* legally cognizable duty.  Indeed, they sued most of the non-parties and entered into a settlement with those non-parties, and the settlement depends on the premise that the non-parties owed Plaintiffs legal duties.

### 2.    VNA Adequately Alleged That Each Non-Party's Breach Of Its Duties Caused The Plaintiffs' Alleged Injuries

Under the "fair notice" standard that applies to affirmative defenses, VNA needed to generally inform Plaintiffs of "the nature" of VNA's non-party defense. *Lawrence v. Chabot*, 182 F. App'x 442, 456 (6th Cir. 2006); *see Davis v. Sun Oil Co.*, 148 F.3d 606, 612-13 (6th Cir. 1998).  VNA's detailed descriptions of the non-parties' obligations and the ways that their failures to live up to those obligations caused and exacerbated the Flint water crisis were more than sufficient to give Plaintiffs fair notice of VNA's defense.  *See* VNA Notice 4-216, PageID.39937-40149.

For example, VNA's notice explained that the MDEQ breached its obligation to ensure that Plaintiffs' drinking water was safe by failing to require the City to implement corrosion control treatment when the City switched to Flint River water. VNA Notice 114, PageID.40047.  MDEQ officials then breached their obligations to remedy water-quality issues, choosing instead to downplay concerns and lie to the

EPA about Flint's use of corrosion controls.  *Id.* at 114-16, PageID.40047-40049.

Those breaches contributed to Plaintiffs' exposure to Flint water, the alleged cause

of their injuries.  *Id.* at 116, PageID.40049.  VNA provided similar detailed allega-

tions for the other non-parties at issue.  Many allegations bore directly on VNA's

work in Flint – for example, City officials incorrectly sampled the City's water for

lead, and thus provided inaccurate test results to VNA.  *Id.* at 195, PageID.40128.

Those allegations should not surprise Plaintiffs.  They sued nearly all of the

individuals VNA named in its November 2022 submission, and their complaint in-

cludes copious allegations against each entity and individual VNA named in its sub-

mission.  *See generally* Compl., PageID.28587-28803.  Plaintiffs then repeated those

allegations about the non-parties' fault in their class-certification briefing.  *See* Mem.

in Supp. of Pls.' Mot. for Class Cert. 5-22, ECF No. 1207, PageID.34442-34459.  So

Plaintiffs' suggestion (Br. 13, PageID.77086) that they do not know how the non-

parties caused their alleged injuries is just not credible.

**B.    Plaintiffs' Arguments Lack Merit**

**1.    Plaintiffs Misconstrue The Standard For Allocating Non-
Party Fault**

Plaintiffs argue that for VNA to seek to have fault allocated to a non-party,

the non-party must have owed Plaintiffs a duty related to VNA's alleged professional

negligence.  Br. 13-15, PageID.77086-77088.  In other words, they argue that the

non-party's conduct must have been part of the same "causal chain[] of harm" as

VNA's alleged misconduct.  *Id.* at 17, PageID.77090.  Plaintiffs' argument is based on a fundamental misunderstanding of how the fair-share liability system works.

Under Michigan's fair-share liability system, "the focus is on the *injury* sustained" by the plaintiff, not on the non-party's *conduct.  O'Neill v. Soils & Structures, Inc.*, No. 228364, 2002 WL 31297196, at *7 (Mich. Ct. App. Oct. 11, 2002) (emphasis added); *see* MCL § 600.6304(1)(b) (jury is to allocate fault "to all persons that contributed to *the death or injury*" (emphasis added)).  In other words, a non-party can be allocated fault if it owed the plaintiff a legal duty, and the breach of that duty caused or contributed to causing the same alleged injury for which the plaintiff seeks to hold the defendant liable.  *See O'Neill*, 2002 WL 31297196, at *7.  It does not matter that the non-party's conduct and the defendant's alleged conduct may have contributed to that injury through different causal chains.  *See id.*; *see also, e.g.*, *Estate of Goodwin ex rel. Goodwin v. Nw. Mich. Fair Ass'n*, 325 Mich. App. 129, 150-56 (2018) (holding that the defendant could seek to have the jury allocate fault to a non-party even though both acted through different causal chains).

The Michigan Court of Appeals made this point in *O'Neill*.  The plaintiffs in that case alleged that their newly constructed home contained construction defects, and that they were harmed when they sold the home at a loss due to those defects. 2002 WL 31297196, at *1.  They sued the engineer who had conducted their home inspection, the building inspectors who had overseen the home's construction, and

the builders who had constructed the home. *Id.* By the time of trial, the engineer was the only defendant left. *Id.* The jury found that the engineer had been professionally negligent, but also allocated fault to the builders and building inspectors. *Id.* at *1, *7. On cross-appeal, the plaintiffs argued (just as Plaintiffs argue here) that only the engineer had been "at fault with respect to the malpractice," and so fault should not have been allocated to the builders and building inspectors. *Id.* at *7.

The court rejected the plaintiffs' approach to non-party fault. It explained that what matters "is not the legal theory being pursued against a particular actor," but whether the actors "contributed to the injury" at issue. *O'Neill*, 2002 WL 31297196, at *7. The court held that because the plaintiffs had alleged that the builders and building inspectors contributed to the same injury as the engineer's malpractice – the loss of value of the home – the jury could allocate fault to the builder and building inspectors for that injury, even though their duties and misconduct all differed. *Id.*

Here, Plaintiffs consistently have alleged only one source of injury – exposure to Flint water during the Flint water crisis. *See, e.g.*, Compl. ¶ 32, Page.28606 (alleging that each named Plaintiff suffered injuries "as a result of exposure to the City of Flint's drinking water"). They claim that the exposure caused "personal injuries," property damages, and "economic harm" such as business losses. *Id.*; *see id.* ¶¶ 11-30, PageID.28596-28605. They sought to hold VNA, LAN, and government actors liable for those injuries. *See, e.g.*, *id.* ¶¶ 492, 581, 606, PageID.28764, 28787, 28791

14

(seeking to recover for the same injuries from government actors, LAN, and VNA).

Consistent with Plaintiffs' allegations, VNA explained in its notice of non-party fault that fault should be allocated to the non-parties because they caused or prolonged the Flint water crisis.  VNA Notice 4-216, PageID.39937-40149.  So under Michigan law, the jury can allocate fault to the non-parties, even if the non-parties and VNA engaged in different conduct.  *See O'Neill*, 2002 WL 31297196, at *7.

Plaintiffs cite three Michigan decisions, but none supports their view.  In two cases, the defendants and the non-parties were alleged to have caused different, distinct injuries.  *See Vendonkelaar v. Kid's Kourt, LLC*, 290 Mich. App. 187, 196-97 (2010) (the defendants' negligence caused an injury to the plaintiff's finger; the non-parties' negligence caused an additional, different injury to that finger by failing to follow recommended post-operative care); *Holton v. A+ Ins. Assocs.*, 255 Mich. App. 318, 323-25 (2003) (the defendant's negligence caused the plaintiff's home to be inadequately insured; the non-parties' negligence caused the home to catch fire).  So in those cases, the courts held that the defendants could not seek to have fault allocated to the non-parties, because the non-parties had caused different injuries from the injuries for which the plaintiffs sought to hold the defendants liable.  *Vendonkelaar*, 290 Mich. App. at 197; *Holton*, 255 Mich. App. at 325.  Those rulings have no bearing here, as Plaintiffs do not allege that VNA caused a different, distinct *injury* from anyone else.

Plaintiffs also cite *Doe v. Loomba*, No. 19-174239-NO, 2020 Mich. Cir. Lexis 660 (Oakland Cnty. Mich. Cir. Ct. May 29, 2020), a trial-court decision. *Doe* is even further afield:  In that case, the defendants ran a hospital that had employed a physician who sexually assaulted the plaintiff. *Id.* at *4.  The court held that the defendants could be held liable only on the theory that they had failed to take corrective action after learning of the physician's past assaults. *Id.*  The defendants then sought to add the physician as a non-party at fault. *Id.*  The court held that the defendants could not do so. *Id.* at *7-8.  The court did not clearly explain its reasoning, but it appears to have reasoned that the proposed non-party defense would be inconsistent with the defendants' principal defense that the physician was acting outside the scope of his employment. *See id.*  There is no such inconsistency here.[3]

Plaintiffs' approach to the fair-share liability system not only is unsupported, it also makes no sense.  The whole point of that system is to ensure that defendants pay only for their share of fault. *Smiley v. Corrigan*, 248 Mich. App. 51, 55 (2001). It applies broadly, in any action "based on tort . . . seeking damages for personal injury, property damage, or wrongful death."  MCL § 600.2957(1).  But under Plaintiffs' view, fault could be allocated to a non-party only in very narrow circumstances,

---

[3]   Plaintiffs suggest that *Doe* held that a non-party can be allocated fault only if the non-party "contribute[d] to the underlying cause of action."  Br. 15, PageID.77088 (quoting *Doe*, 2020 Mich. Cir. Lexis 660, at *6) (emphasis omitted).  That is incorrect; the quoted language comes from the court's summary of the plaintiff's arguments, not the court's reasoning. *Doe*, 2020 Mich. Cir. Lexis 660, at *6.

when the non-party committed the same tort, with the same causal chain, as the defendant.  It is unclear when that would ever occur.  Under Plaintiffs' view, in the mine-run of cases, a defendant would be held liable for the entirety of a plaintiff's injury – even when the plaintiff alleges that a non-party contributed to causing the same injury, and even when the plaintiff actually obtains a settlement from the non-party.  That is directly contrary to the purpose of the fair-share liability system.

### 2. Plaintiffs Misunderstand The Standard For Pleading Non-Party Fault

Plaintiffs next argue that VNA's detailed notice of non-party fault did not adequately allege the basis for each non-party's duty.  Br. 15-16, PageID.77088-77089.  They principally argue that VNA did not literally use the word "duty" to describe the obligations of each non-party.  *Id.* at 16 & n.7, PageID.77089.  Plaintiffs cite no authority for that formalistic view of the requirements for a notice of non-party fault.  Notably, the Michigan court rule that governs notices of non-party fault does not mention the word "duty."  *See* Mich. Ct. R. 2.112(K).

More generally, Plaintiffs suggest that VNA's notice of non-party fault is insufficient on the duty issue because it did not set out VNA's theories as to each non-party's duties.  *See* Br. 15-16, PageID.77088-77089.  But VNA was not required to do that.  "The existence of a duty is a legal question for the Court," *Groncki v. Detroit Edison Co.*, 453 Mich. 644, 649 (1996), and a litigant does not need to set out its legal theories in its pleadings, *see Johnson v. City of Shelby*, 574 U.S. 10, 11-12

(2014) (per curiam).  Indeed, that would amount to pleading legal conclusions.  Rather, a litigant's obligation is "to plead *factual allegations* that impliedly establish[] at least one viable [legal] theory."  *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) (emphasis added).  Here, VNA's notice fully explained the factual bases that gave rise to the legal duties owed by the non-parties.  And Plaintiffs should have no difficulty identifying at least one legal duty for each non-party, since they brought claims against the same non-parties based on the same allegations.

Plaintiffs also argue that the many statutes that VNA identified as imposing statutory duties on the non-parties do not necessarily establish that the non-parties owed any duties to Plaintiffs.  Br. 16-17, PageID.77089-77090.  That is incorrect: Plaintiffs' own authority, *Cipri*, explains that a plaintiff generally can rely on a duty created by statute when the statute was intended to prevent the plaintiff's harm and the plaintiff was within the class of persons the statute intended to protect.  *See* 235 Mich. App. at 16-17.[4]  Here, Plaintiffs' alleged harms are precisely the harms that the Safe Drinking Water Act and other statutes relating to water quality and public

---

[4]   Plaintiffs argue that under Michigan law, the fact that a government entity owes a general duty to the public does not mean that any specific member of the public can bring a tort claim against the entity.  Br. 17, PageID.77090.  That is wrong. Plaintiffs rely on *White v. Beasley*, 453 Mich. 308, 318 (1996), but the Michigan Supreme Court has expressly limited *White* to cases involving police officers. *Beaudrie*, 465 Mich. at 134.  For all other public employees, Michigan courts "determine [the] government employee[s'] dut[ies] using the same traditional common-law duty analysis applicable to private individuals."  *Id.* at 141.

health are supposed to prevent, and Plaintiffs are in the class of persons intended to be protected by those statutes. *See* p. 10, *supra*.

Plaintiffs further argue that the non-parties cannot be allocated fault solely on the basis of their failures to act to mitigate the Flint water crisis. *See* Br. 19-20, PageID.77092-77093. Plaintiffs cite no authority, and they are wrong for at least two reasons. First, under the common law, a person who creates a danger has an obligation to protect others from that danger. *See* Restatement (2d) Torts §§ 321-22 (1965). Here, the government actors created the Flint water crisis, so they owed Plaintiffs a duty to end the crisis and mitigate its effects. Second, a person can owe a duty to protect another if there is a "special relationship" between the parties. *Bailey v. Schaaf*, 494 Mich. 595, 604 (2013). A special relationship arises when "one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id.* Here, Plaintiffs trusted City and State officials to provide them with safe water and were unable to control the quality of the water, *see, e.g.*, Compl. ¶ 137, PageID.28637, so City and State officials owed Plaintiffs an affirmative duty to protect them from injury caused by the water.

### 3. Plaintiffs Conflate Liability With Allocation Of Fault

Plaintiffs' final two arguments reflect a misunderstanding of the difference between liability and allocation of fault.

19

First, Plaintiffs note that the Court has determined that most of the non-parties have immunity from negligence claims.  Br. 17, PageID.77090.  That is irrelevant to allocation of fault:  It is black-letter Michigan law that a jury can allocate fault to a non-party that is immune from suit.  *See, e.g.*, *Goodwin*, 325 Mich. App. at 143-50 (jury could allocate fault to the plaintiff's parent despite parental immunity); *Smith v. Norfolk S. Co.*, No. 14-cv-10426, 2014 WL 2615278, at *3 (E.D. Mich. June 12, 2014) (defendant could name government actors as non-parties despite governmental immunity).  That is because duty and immunity are distinct – immunity means that the non-party cannot be held *liable* for a breach of a duty, but it does not relieve the non-party of that duty.  *Goodwin*, 325 Mich. App. at 146-47.

Second, Plaintiffs argue that the non-parties' conduct does not affect VNA's liability for its own alleged misconduct.  Br. 17-19, PageID.77090-770091.  That is not correct.  The point of the fair-share liability system is to reduce a defendant's liability to match the defendant's share of the fault if someone else also was at fault for the same injury.  *See* MCL § 600.6304.  So Plaintiffs simply are wrong to say that if a jury finds that VNA committed professional negligence during its engagement in Flint, VNA "will be entirely at fault for the ensuing harms."  Br. 19, PageID.77092.  If the jury finds that someone else's conduct also contributed to those harms (which could be conduct from before, during, or after VNA's engagement in Flint), the jury can allocate fault to that non-party, reducing VNA's liability.

\* \* \*

For over seven years, Plaintiffs have claimed that they were injured from exposure to Flint water during the Flint water crisis and that government actors caused, prolonged, and covered up the crisis. *See, e.g.*, Compl., ECF No. 1, PageID.1. They entered into a settlement on that basis. For its part, VNA consistently has maintained that if it is liable to Plaintiffs, those government actors also should be allocated fault. This is not unique to the class case: It also was the parties' understanding in the bellwether case. Plaintiffs thus needed to provide a particularly compelling reason to overturn everyone's settled understanding of how the non-party at fault system applies in these cases. They have not provided one, and so the Court should deny their motion for judgment on the pleadings.

## III. The Court Should Deny Plaintiffs' Alternative Request To Remove All Non-Party Issues From The Issue-Class Trial

In the alternative, Plaintiffs ask that the Court remove all non-party issues from the issue-class trial, reserving those issues for the individualized proceedings that may follow the issue-class trial. But the Court already recognized that non-party issues are highly relevant to the issue-class trial, because the non-parties' conduct bears on VNA's and LAN's conduct, and because VNA has asserted a non-party defense in each Plaintiff's case. And the Court (at Plaintiffs' urging) already decided how to account for non-party issues in the issue-class trial, by asking the jury to create a timeline of non-party fault.

21

At this point, all agree that the ultimate allocation of fault will be an individualized issue.  VNA consistently has made this point, *see, e.g.*, VNA Opp. to Mot. for Class Cert. 85-87, ECF No. 1369, PageID.45327; the Court recognized it in the bellwether trial, when the Court asked the jury to allocate fault for each bellwether plaintiff separately, *see* Verdict Form 51, No. 17-cv-10164 ECF No. 918, PageID.65791; and Plaintiffs now have conceded it, Br. 21, PageID.77094.

Yet, as this Court and the Sixth Circuit have recognized, there are some aspects of VNA's non-party case that are common to all class members.  The threshold question whether a non-party can be allocated fault (because the non-party owed a duty to Plaintiffs and breached that duty) is a common question.  *See* Joint Submission 8, ECF No. 2222, PageID.73770.  Further, as the Sixth Circuit suggested, an issue-class jury could develop a common "timeline" of comparative fault, which subsequent juries then could use to assign fault in individual cases.  Order 8, *In re Veolia N. Am., LLC*, No. 21-103 (6th Cir. Jan. 24, 2022) (Doc. 31-2).  At the hearing in which the Court reevaluated the scope of the issue-class trial, VNA expressed concerns that the Sixth Circuit's approach would be unworkable in this case, but the Court chose that approach (at Plaintiffs' urging).  Tr. of Oct. 26, 2022, Hrg. 37:9-38:8, 40:11-41:24, ECF No. 2253, PageID.74005-74006, 74008-74009.

Plaintiffs now take the surprising position that the Court should not include *any* non-party issues in the issue-class trial, even though it is undisputed that the

non-parties played critical roles in the Flint water crisis.  That is inconsistent with many of Plaintiffs' prior arguments, and with the Court's prior decision.  Plaintiffs do not give the Court any reason to reconsider its prior decision on this point.

Plaintiffs note that the ultimate allocation of fault is individualized and will take place along with the determination of damages (which everyone agrees is an individualized issue).  Br. 20-22, PageID.77093-77095.  But the Court already knew (from the bellwether trial) that the ultimate allocation of fault would be individualized when it adopted the Sixth Circuit's approach.  Tr. of Oct. 26, 2022, Hrg. 37:8, ECF No. 2253, PageID.74005.  The Court nonetheless determined that some non-party issues are common and decided to have the issue-class jury develop a timeline of non-party fault.  *See id.* at 41:1-24, PageID.74009.

Plaintiffs suggest that removing all non-party issues from the issue class could streamline the issue-class trial.  Br. 22-23, PageID.77095-77096.  They are wrong.  It would be impossible to tell the story of VNA's work in Flint without also going into the actions of the non-parties.  Plaintiffs admit that much of the evidence about non-party fault still would need to be presented in the issue class, even under their approach.  *Id.*  In fact, Plaintiffs told the Court that their estimate of the length of the issue-class trial does not depend on whether non-party issues are part of the trial.  So the issue-class trial would not be meaningfully shorter if all non-party issues are removed.  Plaintiffs thus give the Court no reason to revisit its decision.

That said, if the Court is concerned about the feasibility of the timeline approach, then the Court has another option:  It could limit the issue class to the threshold question whether the non-parties can be allocated fault.  That is, the issue-class jury would be asked only whether each non-party breached a duty owed to Plaintiffs, and therefore could be allocated fault, but would not be asked to make any percentage determinations.  Those determinations would be left to the juries in the individualized proceedings, as everyone recognizes that the ultimate allocation of fault is an individualized issue.  That approach would be consistent with the Court's holding that some issues relating to non-party fault are common to the class and ensure that the issue-class addresses those issues; would be much more manageable for the jury; and would help streamline the individualized proceedings if the issue-class jury finds that certain non-parties should not be allocated fault.

What the Court should not do is remove all of the non-party issues from the issue-class trial.  If those issues were removed, the trial would not be worth having.  Plaintiffs initially sold this issue class as having nine common issues, and they said that resolving those issues would dramatically advance each class member's claim.  *See* Reply in Supp. of Pls.' Mot. for Class Cert. 9-11, ECF No. 1581, PageID.60799-60801.  They expressly included allocation of fault as one of those common issues.  *See id.* at 18, PageID.60818.  If, as Plaintiffs now suggest, the Court removes all

non-party issues from the issue-class trial, that trial would be down to just four issues. *See* Order 5, ECF No. 2249, PageID.73957.

More importantly, virtually all of the evidence introduced at the issue-class trial would need to be reintroduced in each individualized proceeding. That is because to accurately allocate fault, the jury in the individualized proceeding would need to compare the defendant's and non-parties' conduct, as well as consider how and to what extent that conduct contributed to causing the plaintiff's claimed injuries. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 751 (5th Cir. 1996). The parties thus would need to introduce evidence of how each defendant and non-party acted, the standard of care that applies to each actor, and how each actor's conduct affected the condition of Flint water. The issue-class trial would be entirely duplicative of the individualized proceedings, and simply waste the Court's resources. Accordingly, if the Court now agrees with Plaintiffs that non-party issues should not be part of the issue-class trial, the better course would be for the Court to decertify the issue class altogether. *See Randleman v. Fidelity Nat. Title Ins.*, 646 F.3d 347, 353 (6th Cir. 2011) (district court may decertify class if the requirements for class certification no longer are met).

## CONCLUSION

The Court should deny Plaintiffs' motion in its entirety.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

**MAYER BROWN LLP**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  April 27, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   _/s/ James M. Campbell_
James M. Campbell
jmcampbell@campbell-trial-lawyers.com