## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELNORA CARTHAN, et al.,

  Plaintiffs,

v.

RICK SNYDER, et al.,

  Defendants.

Case No. 5:16-cv-10444-JEK-MKM

Hon. Judith E. Levy

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. LARRY RUSSELL

Pursuant to Federal Rules of Evidence 402 and 702, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to exclude certain opinions and associated testimony of Dr. Larry Russell.  Dr. Russell offers opinions based on pipe sampling performed in Flint in February 2022 that are unreliable and irrelevant.

VNA moved to exclude Dr. Russell's opinions when his testimony was offered in support of class certification.  ECF No. 1382, PageID.51485-51522.  The Court denied the motion.  The Court stated that it was "not performing its typical *Daubert* role of gatekeeping for a *jury*, but [was] instead determining whether the proposed experts will assist the *Court* in making a pure determination of law."  Class Cert. Order, ECF No. 1957, PageID.68009, 68145-68146.  VNA is now raising

1

issues that are relevant to a plenary *Daubert* analysis.  VNA's arguments are also focused on events that took place and opinions that Dr. Russell presented after class certification—*i.e.*, Dr. Russell's pipe-sampling activities in February 2022, which are discussed in his supplemental report issued in October 2022.

As Local Rule 7.1 requires, on May 17, 2023, VNA sent counsel for Class Plaintiffs an email identifying each of the points raised in this motion along with detailed explanations of the legal bases for each point, and offering to schedule a call if counsel wished to discuss the motion further.  On May 18 and May 19, VNA sent follow-up emails to counsel.  As of the time of the filing of the motion, counsel had not responded with their position on this motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

**MAYER BROWN LLP**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 19, 2023

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ELNORA CARTHAN, et al., | | Case No. 5:16-cv-10444-JEK-MKM |
| | Plaintiffs, | |
| v. | | Hon. Judith E. Levy |
| RICK SNYDER, et al., | | |
| | Defendants. | |

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. LARRY RUSSELL**

## STATEMENT OF THE ISSUES PRESENTED

1.    Should the Court exclude Dr. Russell's opinion that copper pipe samples lost wall thickness because it is unreliable?

      **VNA answers:**  "Yes."

      **Plaintiffs answer:**  "No."

2.    Should the Court exclude Dr. Russell's opinion that galvanized steel pipe samples experienced through-wall pitting as a result of water conditions in 2014-2015 because it is unreliable?

      **VNA answers:**  "Yes."

      **Plaintiffs answer:**  "No."

3.    Should the Court exclude Dr. Russell's opinion that all galvanized steel and copper pipes throughout Flint are damaged because it is unreliable and irrelevant?

      **VNA answers:**  "Yes."

      **Plaintiffs answer:**  "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001)

Fed. R. Evid. 702(a)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

LEGAL STANDARD .............................................................................4

ARGUMENT .........................................................................................5

I.    Dr. Russell's Opinion That Copper Pipes Lost Wall Thickness Is
      Unreliable........................................................................................6

II.   Dr. Russell's Opinion That Galvanized Steel Pipes Experienced
      Through-Wall Pitting As A Result Of Water Conditions In 2014-2015
      Is Unreliable...................................................................................9

III.  Dr. Russell's Opinion That All Galvanized Steel And Copper Pipes
      Throughout Flint Are Damaged Is Unreliable And Irrelevant.....................12

CONCLUSION ......................................................................................14

## INTRODUCTION

Dr. Larry Russell, a professional engineer, is one of Plaintiffs' experts on corrosion science and engineering standards of care.  He also offers opinions on whether water conditions in Flint in 2014-2015 were capable of causing harm to pipes and fixtures.  VNA seeks to exclude Dr. Russell's opinions related to pipe sampling he performed in February 2022, but not his opinions about engineering standards of care.

Before inspecting any pipes, Dr. Russell opined that all pipes and fixtures in Flint were damaged in 2014-2015 and require replacement.  In October 2022, Dr. Russell provided a supplemental report in which he disclosed that he collected pipe samples from two Flint residences in February 2022.  Based on those limited samples, Dr. Russell concludes that copper pipes throughout Flint lost wall thickness as a result of water conditions in 2014-2015, that galvanized steel pipes experienced "through-wall pitting" (small, localized spots of corrosion that were not actively leaking), and that galvanized steel pipes throughout Flint need replacement.

Dr. Russell's opinions based on his pipe sampling are not reliable and should be excluded.  Dr. Russell's wall-thickness measurements confirm that the copper pipe samples were within the specification for *new* pipe and do not show that the pipes lost wall thickness at any time.  Dr. Russell also has no support for his opinion that through-wall pitting on old galvanized steel pipes was attributable to water

1

conditions in 2014-2015.   He admits that he does not know when the pitting occurred.  Accordingly, Dr. Russell's pipe sampling sheds no light on whether water conditions in 2014-15 were capable of causing harm to pipes in Flint.  Dr. Russell found no damage that he can reliably attribute to the Flint water crisis.

Dr. Russell's attempt to extrapolate from pipe samples taken from one or two residences to speculate about City-wide damage and remedies also should be excluded because it is both unreliable and irrelevant.  Dr. Russell's extrapolation is unreliable because pipe samples from one or two residences are insufficient to allow him to reliably conclude that pipes have been damaged City-wide and require replacement.  Dr. Russell's extrapolation is irrelevant because the issue-class trial will address whether water conditions in 2014-2015 were *capable of* causing damage to pipes and fixtures.  The extent of damage, if any, and remedy is not at issue.

## BACKGROUND

Plaintiffs offer Dr. Russell's pipe-sampling opinions to address Certified Issue 3, whether water conditions in Flint in 2014-2015 were "capable of causing harm to Flint residents."  Nov. 2, 2022 Order 5, ECF No. 2250, PageID.73963; *see* Pls.' Opp. to VNA's Mot. for Sanctions 1, ECF No. 2372, PageID.76657.  Among other purported harms, Plaintiffs allege that water conditions in 2014-2015 were capable of causing damage to pipes and fixtures.  Class Pls.' Notice Regarding Certified Issue No. 3, ECF No. 2283, PageID.74157-74158.

2

Before inspecting any pipes, Dr. Russell expressed the view that the Flint River water distributed in 2014-2015 was "highly corrosive." Russell Report (Report) 4, ECF No. 1208-67, PageID.35415. In his view, "highly corrosive Flint River water directly resulted in significant damage throughout the City's and property owners' plumbing systems"; the water "was uniformly distributed to all homes and businesses"; and "[t]he only way to restore the losses resulting from exposure . . . is full house pipe and fixtures replacement." *Id.* at 13, PageID.35424.

After issuing his original report, Dr. Russell visited Flint to take pipe samples from two homes of class representatives—Rhonda Kelso and Darrell and Barbara Davis. Ex. 2, Russell Suppl. Report (Suppl. Report) 2. Dr. Russell analyzed copper pipes from each residence. *Id.* at 25-26, 29-30. The copper pipes at Ms. Kelso's residence had been installed in 2000. Ex. 3, Russell 2022 Dep. (2022 Dep.) 160:18-22, 169:21-171:11.[1] According to Dr. Russell, the copper pipes at the Davises' residence were likely installed sometime after 1960. Suppl. Report 30. Dr. Russell also analyzed galvanized steel pipes from the Davises' residence. *Id.* at 29-30.[2] Dr. Russell concedes that the galvanized steel pipes were likely installed in 1938,

---

[1] Dr. Russell's supplemental report erroneously stated that the copper pipes had been installed in 2008. Suppl. Report 3, 25, 37.

[2] Dr. Russell did not analyze galvanized steel pipes from Ms. Kelso's residence because they had been removed from service prior to his inspection. 2022 Dep. 130:7-132:13, 190:20-191:4.

when the home was constructed.  2022 Dep. 182:8-183:8; *see id.* at 191:19-192:7 (stating that galvanized steel piping was largely abandoned by 1960 and that "it didn't appear" that the pipes had been replaced since 1938).

Based on his analysis of the pipe samples, Dr. Russell concludes that the copper pipes at each residence "were . . . impacted by the corrosive water served during the Flint Water Crisis" and lost wall thickness "most likely during that period."  Suppl. Report 3-4 (Opinions S-5 & S-10).  He also states that the Davises' galvanized steel pipes "were impacted severely during the exposure to the corrosive water during the Flint Water Crisis," "experienced through wall pitting," and "represent a failed piping system."  *Id.* at 4 (Opinion S-6); Ex. 4, Russell Rebuttal Report (Rebuttal Report) 26.  Although Dr. Russell asserts that the pipes "failed," the pipes were a functioning part of the home's plumbing system and were not leaking when Dr. Russell removed them in 2022—seven years after Flint switched back to Detroit water.  2022 Dep. 193:12-19.  He concludes that "replacement [of galvanized steel pipes] is required to provide the residents with a plumbing life span required to service these homes in the future."  Suppl. Report at 4 (Opinion S-7); *id.* (Opinion S-11) (opining that "complete re-plumbing" is required).

## LEGAL STANDARD

Courts have the obligation to carry out the "basic gatekeeping obligation" of ensuring the "reliability and relevancy of expert testimony."  *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147, 152 (1999).  A qualified expert may provide opinion testimony only if it will "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).  The expert opinion also must be "based on sufficient facts or data," must be "the product of reliable principles and methods," and must be the result of the expert "reliably appl[ying] the principles and methods to the facts of the case."  Fed. R. Evid. 702(b)-(d).  In short, expert testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand."  *Daubert*, 509 U.S. at 597.

As the proponent of the expert testimony, Plaintiffs bear the burden of establishing its admissibility by a preponderance of evidence.  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

## ARGUMENT

The jury at the issue-class trial will be asked to decide whether water conditions in Flint in 2014-2015 were capable of causing damage to pipes and fixtures.  Dr. Russell's pipe sampling did not provide any reliable basis for concluding that pipes were damaged in 2014-2015, and his attempts to extrapolate to City-wide damage and remedies are both unreliable and irrelevant.

## I.  Dr. Russell's Opinion That Copper Pipes Lost Wall Thickness Is Unreliable

Dr. Russell concludes that copper pipe samples removed from the Kelso and Davis residences in 2022 lost wall thickness from their original, factory condition and blames the loss on corrosion that allegedly occurred during the water switch in 2014-2015.  In reality, Dr. Russell's own wall-thickness measurements confirm that the copper pipe samples are indistinguishable from new, off-the-shelf copper pipe and show no evidence of lost wall thickness in service.

In calculating wall-thickness loss, Dr. Russell assumes that the copper pipe samples had an original wall thickness of 0.028 inches when they were first installed. Suppl. Report 25, 29.  Dr. Russell's assumption is based on ASTM specifications for new, ½-inch Type M copper pipe.   2022 Dep. 167:4-13; Ex. 5, ASTM Designation B 88-03, Standard Specification for Seamless Copper Water Tube, tbl.1 (ASTM B 88-03).  Dr. Russell measured the wall thickness of the copper pipe samples from the Kelso and Davis residences—nearly all of which measured 0.026 inches.  Suppl. Report 25, 29. From that, Dr. Russell concludes that the copper pipes lost 0.002 inches (*i.e.*, two one-thousandths of an inch) of wall thickness.  *Id.*[3]

---

[3]   The only copper pipe that Dr. Russell measured at less than 0.026 inches was a single hot water pipe sample from the Davises' residence, which supposedly had a wall thickness of 0.019 inches.  Suppl. Report 25, 29.  Dr. Russell has not identified exactly where on the sample he measured a thickness of 0.019 inches, and VNA has not been able to replicate Dr. Russell's measurement.  Ex. 6, David Crowe Report

Dr. Russell's opinion is unreliable.  The ASTM specification for new, ½-inch Type M copper pipe used by Dr. Russell specifies a wall thickness of 0.028 inches with a tolerance of 0.003 inches.  *See* ASTM B 88-03, tbl.1.  The tolerance means that new, ½-inch Type M copper pipe can be 0.028 inches *plus or minus* 0.003 inches—*i.e.*, from 0.025 to 0.031 inches thick.  *Id.* ("All tolerances are plus and minus except as otherwise indicated.").  The 0.026-inch wall thickness ostensibly measured by Dr. Russell in the copper pipe samples from the Kelso and Davis residences therefore meets the ASTM specification for new copper pipe and provides no evidence that the pipes lost wall thickness at any time while in service.

Dr. Russell's own testimony confirms that his assumption that the copper pipes were originally 0.028-inches thick is not reliable.  Dr. Russell admits that, in his experience, "copper pipe is *uniformly* manufactured to the *minimum* wall thickness allowed by B 88 to save the manufacturer money."  Rebuttal Report 28 (emphasis added); *see* 2022 Dep. 167:8-168:1 ("Well, there's an allowed range, but the manufacturers run it at the minimum"; "They tend to put it as thin as they can under the [ASTM] requirements").  The minimum wall thickness allowed by the ASTM specification is 0.025 inches, not 0.028 inches.  VNA's expert, Dr. David Crowe, confirmed that new copper pipe is often thinner than 0.028 inches.  He

---

19 (Crowe Report).  In any event, Dr. Russell testified that the sample was thinner because "[c]orrosion goes faster in hot water."  2022 Dep. 186:22-188:1.

purchased ½-inch Type M copper pipe off the shelf from Home Depot and measured the wall thickness at 0.026 to 0.027 inches.  Crowe Report 10.  Dr. Russell has never responded to Dr. Crowe's findings concerning the wall thickness of new, off-the-shelf copper pipe.  *See generally* Rebuttal Report 26-40.

Dr. Russell misreads the very ASTM specification that he relies on.  He erroneously asserts that the tolerance "can only be thicker than 0.028."  Ex. 7, 2023 Russell Dep. (2023 Dep.) 103:4-9.  The ASTM specification plainly says otherwise—"[a]ll tolerances are *plus and minus* except as otherwise indicated." ASTM B 88-03, tbl.1 (emphasis added).  And the ASTM specification nowhere "otherwise indicate[s]" that the tolerance can only be greater than 0.028 inches. Dr. Russell's misreading of the very specification on which he relies renders his opinion unreliable.  *See, e.g.*, *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 679-80 (6th Cir. 2011) (affirming exclusion of opinion that benzene caused plaintiffs' cancer because expert's cited study did not support his opinion); *Branch v. Temple Univ.*, No. 20-2323, 2021 WL 2823071, at *4 (E.D. Pa. July 7, 2021) (holding that the expert's "calculation is blatantly contradicted by the plain language of [the policy on which he relied] in such a way that renders [the] opinion unreasonable").

Accordingly, Dr. Russell erroneously assumes that the walls on the copper pipe samples from the Davis and Kelso residences were originally 0.028 inches thick.  The ASTM specification requires only 0.025 inches, and Dr. Russell himself

asserts that manufacturers "uniformly" produced copper pipe to the minimum required wall thickness. Rebuttal Report 28. Dr. Russell's own 0.026-inch wall thickness measurements confirm that his copper pipe samples from Flint are indistinguishable from new, off-the-shelf copper pipe. His opinion that they lost wall thickness while in service is unreliable and should be excluded.

## II. Dr. Russell's Opinion That Galvanized Steel Pipes Experienced Through-Wall Pitting As A Result Of Water Conditions In 2014-2015 Is Unreliable

Dr. Russell's opinion that the Davises' galvanized steel pipes experienced "through-wall pitting" and "failed" as a result of water conditions in 2014-2015 is also unreliable. Rebuttal Report 26, 36. Dr. Russell offers nothing besides his own say-so to establish that pitting on the Davises' galvanized steel pipes was caused by the Flint water crisis in 2014-2015. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

Dr. Russell admits that he does not know when the through-wall pitting on the Davises' pipes occurred. 2022 Dep. at 206:22-207:19 ("Q. . . . And you have no information as to when the through [wall pitting] occurred in terms of what point in time; is that fair to say? A. Yes."). He therefore does not know whether the pitting

occurred before, during, or after the Flint water crisis and can only speculate that the pitting was caused by water conditions in 2014-2015.[4]

Dr. Russell's inability to say when the pitting occurred is especially important because he admits that the Davises' galvanized steel pipes were likely 84 years old. 2022 Dep. 182:8-183:8, 191:19-192:7.  At that age, the pipes had already long-surpassed their expected service life.  *See* Ex. 8, 2020 Russell Dep. (2020 Dep.) 156:5-22 ("[I]f the water quality is right, I think you could be looking at at least 50 years on galvanized or more, and if it's wrong—the water quality is wrong, you could be looking at, you know, 10 years or something like that.").  Dr. Russell also concedes that through-wall pitting is not unusual for older, galvanized steel pipe and is not unique to Flint.  2023 Dep. 105:8-108:20.  And as VNA's expert, Dr. Crowe, explains, the condition of the Davises' old galvanized steel pipes was entirely typical of galvanized steel piping after 84 years of service.  Crowe Report 5.

Moreover, Dr. Russell acknowledges that the plumbing in Flint has been exposed to corrosive water outside the 2014-2015 time period.  He concedes that Flint's water was also drawn from the Flint River prior to 1967, and that the water

---

[4] Even if Dr. Russell could reliably opine that the copper pipe samples from the Kelso and Davis residences lost wall thickness (and he cannot), his copper pipe opinions suffer from the same flaw—he can only speculate that any lost wall thickness was caused by water conditions in 2014-2015.  Dr. Russell concedes that he does not know the wall thickness of the copper pipe samples in 2014 (at the start of the water switch period) or in 2015 (at the end).  2022 Dep. 174:18-24.

was corrosive.  2020 Dep. 400:16-401:5.  And he acknowledges that from 1967 until 1996, Flint received Detroit water that was not treated with corrosion-inhibiting chemicals, and so it "presented more of a corrosive risk to the plumbing of [Flint's] homes than did the water supplied by Detroit after" Detroit began adding corrosion-inhibiting chemicals.  *Id.* at 402:7-403:6.  Thus, Dr. Russell acknowledges that Flint plumbing was exposed to corrosive water for many decades.

Despite all this, Dr. Russell seeks to attribute the pitting on the Davises' galvanized steel pipes to water conditions in 2014-2015.  Yet when he was asked whether he would be "able to tell . . . what damage occurred before the 2014 switch in water source" and "what damage . . . occurred from April of 2014 to October of 2015," Dr. Russell testified that it was an "interesting question" and that it was "conceivable that that question could be addressed, but I don't know."  2020 Dep. 329:4-330:17.  Dr. Russell has never addressed that critical question with respect to the through-wall pitting on the Davises' galvanized steel pipes.  2022 Dep. at 206:22-207:19 (admitting he does not know when the pitting occurred).

Because Dr. Russell cannot say when the supposed damage occurred, he cannot say whether water conditions in 2014-2015 caused it.  Because Dr. Russell, "according to his own testimony," cannot say whether the supposed plumbing damage occurred before the water switch or after, there is "simply no basis" other than his say-so for his "assumption" that the Flint water crisis is responsible for the

damage. *Nelson*, 243 F.3d at 253; *see Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1072 (6th Cir. 1999) (affirming exclusion of testimony of expert whose "conclusion was based on 'speculation, conjecture, and possibility'" as opposed to a "factual basis"). Under Rule 702, courts routinely exclude opinions like Dr. Russell's that fail to "rule out other possible causes" and "turn[] on speculation." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010); *Pluck*, 640 F.3d at 678 (internal quotation marks omitted).

## III. Dr. Russell's Opinion That All Galvanized Steel And Copper Pipes Throughout Flint Are Damaged Is Unreliable And Irrelevant

Dr. Russell also improperly extrapolates from pipe samples from one or two residences to draw conclusions about City-wide pipe damage and remedies. *See, e.g.*, Suppl. Report 4 (Opinion S-7) (stating, based on his sampling, that "[e]xposure to the corrosive water distributed during the Flint Water Crisis substantially compromised the life span of the steel pipes in Flint" and that "[r]eplacement is required to provide the residents with a plumbing life span required to service these homes in the future without catastrophic leakage and failure in the future").

Dr. Russell's attempt to extrapolate from pipe samples taken from one or two residences to the entire City of Flint is unreliable. Expert testimony is inadmissible when "there is simply too great an analytical gap between the data and opinion offered." *Joiner*, 522 U.S. at 146-47. Courts have recognized that "a sample size of one is rarely, if ever, sufficient" to draw broad conclusions. *Am. Honda Motor Co.*

*v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) (holding that expert's methodology was flawed because he tested "a single, used [motorcycle]" and "extrapolated his conclusions to the fleet of [motorcycles] produced from 2001 to 2008"). This is not one of those rare cases. Dr. Russell inspected galvanized steel pipe from a single residence that showed pitting on pipes that were likely 84 years old and had already exceeded their expected service life. And he inspected copper pipes from two residences that were within ASTM specifications for new pipe and showed no evidence of wall thickness loss. Dr. Russell has not shown damage to pipe samples taken from one or two homes, let alone across an entire city.

Dr. Russell's speculation that *all* plumbing in Flint was damaged in 2014-2015, and that all galvanized steel plumbing must be replaced, is also irrelevant to the issue-class trial. The issue-class trial will address whether water conditions in Flint were *capable of causing* damage. Nov. 2, 2022 Order 5, ECF No. 2250, PageID.73963. The extent of damage, if any, and the appropriate remedy are not at issue at this stage and would be addressed in subsequent, individual trials. Indeed, in addressing Dr. Russell's opinions at the class-certification stage, the Court found that Dr. Russell's opinion that "full house, pipe and fixture replacement" is required "goes to damages" and "what the remedy is." May 19, 2021 Hearing Tr. 44, ECF No. 1785, PageID.63748. Dr. Russell's speculation about City-wide damage and pipe replacement is irrelevant to the issues that will be decided by the jury.

13

## CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Russell's pipe-inspection opinions as unreliable and irrelevant.

Respectfully submitted,

**CAMPBELL, CONROY
& O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and
Veolia Water North America Operating Services, LLC*

Dated:  May 19, 2023

14

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*

Dated:  May 19, 2023