## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ELNORA CARTHAN, et al., | Case No. 5:16-cv-10444-JEL-MKM |
| Plaintiffs, | Hon. Judith E. Levy |
| v. | |
| RICK SNYDER, et al., | |
| Defendants. | |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) move for summary judgment on Plaintiffs' professional negligence claims, for the reasons explained in the accompanying brief.

The Court should grant VNA summary judgment because VNA did not owe Plaintiffs a duty of care as a matter of law. VNA previously raised this argument in its motion for summary judgment in the bellwether case. The Court denied summary judgment, ruling that VNA owed the bellwether plaintiffs a duty of care after the City of Flint hired VNA in February 2015. *See* Order on VNA MSJ (Bellwether

MSJ Order) 19-27, No. 17-cv-10164 ECF No. 606, PageID.42696-42704.  VNA

respectfully submits that the Court's prior order misapplied Michigan law.

In addition, the Court should grant VNA partial summary judgment because,

for three of Plaintiffs' theories of VNA's alleged professional negligence, Plaintiffs

cannot show causation. The Court addressed this argument for one of Plaintiffs'

three theories in the bellwether case:  VNA argued that its alleged failure to insist

that the City return to Detroit water did not contribute to the water crisis because city

and state officials would not have followed VNA's advice, and the Court denied

summary judgment on that issue because it determined that whether the officials

would have followed the advice was a triable issue of material fact.  Bellwether MSJ

Order 42-47, PageID.42719-42724.  The Plaintiffs' other two theories were not at

issue in the bellwether case.  *See id.* at 28-29, PageID.42705-42706.

The Court should also grant VNA partial summary judgment because

Plaintiffs cannot show that exposure to Flint water was capable of causing three of

the claimed injuries.  The Court has not previously considered this general-causation

argument.

Finally, the Court should grant VNA partial summary judgment on its non-

party-at-fault defense by ruling that each non-party identified by VNA owed

Plaintiffs a legal duty.  The Court previously has acknowledged that the non-parties

identified by VNA had legal duties to Flint residents.  *See* Tr. of Feb. 24, 2022, Hrg. 31:11-14, No. 17-cv-10164 ECF No. 710, PageID.45738.

As Local Rule 7.1(a) requires, on May 15, 2023, VNA sent counsel for Class Plaintiffs an email identifying each of the points raised in this motion along with detailed explanations of the legal bases for each point, and offering to schedule a call if counsel wished to discuss the motion further.  On May 18 and May 19, VNA sent follow-up emails to counsel.  As of the time of the filing of the motion, counsel had not responded with their position on this motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: *_/s/ James M. Campbell_*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: *_/s/ Michael A. Olsen_*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 19, 2023

3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ELNORA CARTHAN, et al., | Case No. 5:16-cv-10444-JEL-MKM |
| Plaintiffs, | Hon. Judith E. Levy |
| v. | |
| RICK SNYDER, et al., | |
| Defendants. | |

---

## BRIEF IN SUPPORT OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court grant VNA summary judgment on Plaintiffs' professional negligence claims because VNA did not owe any Plaintiff a duty of professional care?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

2.  Should the Court grant VNA partial summary judgment on Plaintiffs' claims because Plaintiffs cannot show that three of their asserted theories of liability caused any injuries, and also cannot show that exposure to Flint water was capable of causing three of their claimed injuries?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

3.  Should the Court grant VNA partial summary judgment on its non-party-at-fault defense because each non-party owed Plaintiffs one or more legal duties?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Bailey v. Schaaf*, 494 Mich. 595 (2013)

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)

*In re Certified Question*, 479 Mich. 498 (2007)

*Craig ex rel. Craig v. Oakwood Hops.*, 471 Mich. 67 (2004)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

LEGAL STANDARD ..............................................................................................2

ARGUMENT ...........................................................................................................2

I.  VNA Did Not Owe Plaintiffs A Legal Duty ................................................2

    A.  A Consulting Engineer Owes A Duty Of Professional Care To
        Its Client, Not Its Client's Customers ...............................................2

        1.  In General, A Professional Owes A Duty Only To Its
             Client .......................................................................................2

        2.  None Of The Factors That Courts Consider When
             Determining Whether To Extend A Professional's Duty
             To A Non-Client Is Present Here.............................................3

             a.  There was no relationship.................................................4

             b.  The harm was not foreseeable .........................................9

             c.  The costs of imposing a duty outweigh the benefits ......9

    B.  VNA Did Not Owe Plaintiffs The Specific Duty They Assert..........12

        1.  In General, No Person Is Obligated To Protect Another
             From Harm ..............................................................................12

        2.  None Of The Exceptions Giving Rise To A Duty To
             Protect Applies Here...............................................................15

II.  Plaintiffs Cannot Prove Causation For Three Of Their Theories Of
    Breach And Three Claimed Injuries............................................................17

    A.  Plaintiffs Cannot Prove Causation For Three Theories Of
        Liability .............................................................................................17

        1.  The City Would Not Have Returned To Detroit Water..........17

        2.  VNA's Public Statements That The Water Was Safe Did
             Not Cause Plaintiffs Any Injuries...........................................19

        3.  The City Did Not Follow VNA's Advice On Ferric
             Chloride..................................................................................20

    B.  Plaintiffs Have Not Established That Exposure To Flint Water
        Was Capable Of Causing Immunological Effects,
        Cardiovascular Outcomes, Or Reproductive Effects .........................21

iv

# TABLE OF CONTENTS
## (continued)

**Page**

III.    The Court Should Grant VNA Summary Judgment On The Issue Of Non-Party Duty................................................................................23

CONCLUSION.......................................................................................25

# INTRODUCTION

Plaintiffs bring professional negligence claims on behalf of Flint residents against VNA.  The Court should grant VNA summary judgment on those claims for three reasons.  First, VNA did not owe Plaintiffs any duty of care as a matter of law.  Although the Court has held that VNA owed a duty to the bellwether plaintiffs, the Court misapplied Michigan law, which extends a professional's duty to third parties (like Plaintiffs) only in limited circumstances not present here.

Second, the Court should grant VNA partial summary judgment on certain theories advanced by Plaintiffs on the second and third certified issues:  whether VNA's alleged breach prolonged the water crisis and whether Flint water was capable of causing the claimed injuries.  Three of VNA's allegedly negligent actions had no causal effect on the water crisis:  failing to recommend a return to Detroit water; publicly stating that the water was safe; and recommending an increase in ferric chloride.  Further, Plaintiffs' expert admits that exposure to Flint water could not have caused three of Plaintiffs' claimed health effects:  immunological effects; cardiovascular outcomes; and reproductive effects.

Third, the Court should grant VNA partial summary judgment on its nonparty-at-fault defense (the fifth certified issue) and rule that each of the non-parties identified by VNA owed a duty to Plaintiffs as a matter of law.  The Court already has held that those non-parties owed a duty to Flint residents.

1

## LEGAL STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find" for the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), including when the non-moving party's claim fails as a matter of law, *Crestmark Bank v. Electrolux Home Prods. Inc.*, 155 F. Supp. 3d 723, 747 (E.D. Mich. 2016).

## ARGUMENT

### I.   VNA Did Not Owe Plaintiffs A Legal Duty

VNA did not owe any duty of care to Plaintiffs because Plaintiffs were not its clients and the City hired VNA only to provide advice. Further, VNA did not owe Plaintiffs the specific duty to protect that they assert.

#### A.   A Consulting Engineer Owes A Duty Of Professional Care To Its Client, Not Its Client's Customers

##### 1.   In General, A Professional Owes A Duty Only To Its Client

In Michigan, a professional-services firm generally owes a duty of care in rendering services only to the "person who has contracted for such services." *Saur v. Probes*, 190 Mich. App. 636, 638 (1991). That rule protects the professional-client relationship; it ensures that clients can rely on professionals to provide

unbiased advice. *See Atlanta Int'l Ins. v. Bell*, 438 Mich. 512, 518-19 (1991). Michigan courts have recognized that the general rule applies to attorneys, *see, e.g.*, *Mieras v. DeBona*, 452 Mich. 278, 297 (1996); physicians and other healthcare professionals, *see, e.g.*, *Roberts v. Salmi*, 308 Mich. App. 605, 614-15 (2014); and other professionals, *see, e.g.*, *Sabbagh v. Hamilton Psychological Servs. PLC*, 329 Mich. App. 324, 350-51 (2019) (human-resources company). There is no case law indicating that Michigan courts would treat water engineers any differently from other professionals. Here, Plaintiffs were not VNA's clients, so VNA did not owe them a duty of professional care.

> ### 2.     None Of The Factors That Courts Consider When Determining Whether To Extend A Professional's Duty To A Non-Client Is Present Here

Michigan courts extend a professional's duty of care to a non-client only in very limited circumstances. To decide whether a particular case warrants an exception, Michigan courts consider the factors set out in *In re Certified Question*, 479 Mich. 498 (2007): (1) whether there is a direct relationship between the plaintiff and the defendant; (2) whether the harm to the plaintiff is foreseeable; and (3) whether the social benefit of imposing a duty outweighs the cost. *See, e.g.*, *Roberts*, 308 Mich. App. at 621 (applying the factors). None is present here.

### a.     There was no relationship

The relationship factor is "the most important factor." *Certified Question*, 479 Mich. at 505.  Here, there was no direct relationship between Plaintiffs and VNA.  It is undisputed that the City, not Plaintiffs, was VNA's client.    Ex. 2, VWNAOS018932 at 1, 5, 8 (Contract).  Plaintiffs also have presented no evidence that any Plaintiff had heard of VNA before this lawsuit, much less interacted with VNA in any way.  Without a direct relationship between Plaintiffs and VNA, VNA cannot owe Plaintiffs a legal duty.  *See, e.g.*, *Sabbagh*, 329 Mich. App. at 349-50.

In the bellwether case, the Court recognized that VNA lacked a direct relationship with the plaintiffs, but held that the relationship factor was met because VNA had a contractual relationship with the City of Flint and the plaintiffs' claims were related to that relationship.  Order on VNA MSJ (Bellwether MSJ Order) 22, No. 17-cv-10164 ECF No. 606, PageID.42699.  The Court relied on its decision in *Lee v. City of Flint*, No. 17-cv-11726, 2021 WL 5237197 (E.D. Mich. Nov. 10, 2021), in which it held (in the context of a delivery driver who travelled to Flint for work) that "th[e] relationship need not always be between the defendant and the plaintiff bringing suit" to satisfy the relationship factor.  *Id.* at *3-4.  That was mistaken.

*Certified Question* makes clear that the relationship must be between the plaintiff and the defendant.  The Michigan Supreme Court repeatedly described the

relevant relationship as the "relationship *between the parties*," 479 Mich. at 506-09 (emphasis added), stating that "[w]here there is no relationship between the parties, no duty can be imposed," *id.* at 508.  It concluded that the defendant in that case did not have a sufficient relationship with the plaintiff, the stepdaughter of a contractor who worked on the defendant's property, to have owed the plaintiff a duty to protect her from asbestos that accumulated on her stepfather's clothing while he was at work.  *Id.* at 515.  The majority expressly rejected the argument, raised by the dissent, that the defendant's relationship with the contractor could "extend" to the stepdaughter.  *Id.* at 515 n.15.  *Certified Question* thus directly forecloses the view that the relevant relationship can be between the defendant and a third party.

None of the other decisions the Court cited in *Lee* support its view of the relationship factor, either.  The Court cited cases where a plaintiff who did not have a relationship with the defendant tried—unsuccessfully—to argue that the defendant owed the plaintiff a duty based on a relationship between the defendant and a third party.  *Lee*, 2021 WL 5237197, at \*3.  In each case, the plaintiff was injured by a third party who had a relationship with the defendant, and the plaintiff argued that that relationship gave rise to an obligation by the defendant to protect the plaintiff from the third party.  *See Buczkowski v. McKay*, 441 Mich. 96, 103-04 (1992); *Murdock v. Higgins*, 454 Mich. 46, 55-56 (1997); *Bearss v. Fazzini*, No. 347206, 2020 WL 3399571, at \*2-3 (Mich. App. June 18, 2020).  And in each case, the

5

Michigan court rejected the plaintiff's argument, holding that the defendant did *not* owe the claimed duty. *See id.* Those cases thus do not support the view that VNA's contract with the City can satisfy the relationship factor here.

Next, the Court cited contractor-liability cases in which courts held that a contractor that created a hazard on a third party's property that the plaintiff visited owed a duty to that plaintiff. *Lee*, 2021 WL 5237197, at *3. The Court stated that the plaintiff and the contractor had "no relationship" in those cases. *Id.* To the contrary, in each case there *was* a direct relationship between the parties—the plaintiff and the contractor were shared users of a common space. It is black-letter law that a user of a common space (*e.g.*, a driver on a public road) owes a duty to other users of that space (*e.g.*, other motorists and pedestrians) to exercise reasonable care in using the space (*e.g.*, to drive carefully). *E.g.*, Restatement (2d) of Torts § 297(b) (1965). Here, VNA and Plaintiffs did not share a common space.

The Court also stated that *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157 (2011), "squarely rejected" the view that VNA can be liable only to its clients. *Lee*, 2021 WL 5237197, at *4. But that decision held only that a defendant cannot use its contractual obligations to a client as a basis for abrogating its common-law obligations to others. The case involved a subcontractor that had negligently stacked cement boards on a construction site; the boards fell, injuring an employee of another subcontractor. *Loweke*, 489 Mich. at 160. The defendant argued that

because it had stacked the boards as part of its work under a contract with the general contractor, the plaintiff could not bring tort claims against it. *Id.* at 161. The defendant relied on *Fultz v. Union-Commerce Associates*, 470 Mich. 460 (2004), which it argued "establish[ed] a form of tort immunity that bars negligence claims raised by a noncontracting [plaintiff]." *Loweke*, 489 Mich. at 168.

The Michigan Supreme Court in *Loweke* rejected that reading of *Fultz*. It explained that *Fultz* held that a plaintiff cannot rely on a defendant's contractual obligations to provide a basis for a duty to the plaintiff, but did not displace or abrogate any common-law duties that the defendant may have owed to the plaintiff. *Loweke*, 489 Mich. at 168. *Loweke* went no further—it expressly declined to address whether the plaintiff in that case "was owed a duty of care under the common law" and did not purport to change the *Certified Question* framework for determining common-law duty. *Id.* at 172. Here, VNA does not argue that it is categorically immune from tort claims by any plaintiff other than the City because of its contract with the City. Instead, it argues that these Plaintiffs have not satisfied the relationship factor for common-law duty as set out in *Certified Question*.

Finally, the Court relied on the voluntary-undertaking doctrine, set out in section 324A of the Second Restatement of Torts, to support its view that the relationship need not be between the plaintiff and the defendant. *Lee*, 2021 WL 5237197, at *4. Under that doctrine, a defendant can be liable to a plaintiff for

7

services rendered to a third party in certain circumstances. *See* Restatement (2d) of Torts § 324A. The doctrine applies only when a defendant undertakes to provide services to a third party that the defendant should recognize are necessary for the protection of the plaintiff, and (1) the defendant's negligence increases the risk of harm to the plaintiff, (2) the defendant undertakes a duty owed by the third party to the plaintiff, or (3) the plaintiff suffers harm because the defendant induces the third party or the plaintiff to detrimentally rely on the defendant's undertaking. *See Myers v. United States*, 17 F.3d 890, 903 (6th Cir. 1994). Here, VNA did not increase any risk of harm to any Plaintiff, *see* pp. 12-13, *infra*; VNA did not undertake any duty to provide safe water owed to Plaintiffs by the City; and VNA did not induce any detrimental reliance—Plaintiffs have presented no evidence that any Plaintiff even was aware of VNA, and VNA did not induce the City to rely on its recommendations.

The Michigan Supreme Court has never used section 324A to find a duty in a professional-negligence case, and it has warned against applying section 324A "uncritically or without regard to limiting principles within [Michigan] case law." *Fultz*, 470 Mich. at 464-65. It has directed courts to "reconcile the principles expressed in [section] 324A with [Michigan] case law that limits their breadth," *id.* at 465—such as the Michigan decisions that recognize the importance of protecting the relationship between a professional and its client, *see, e.g.*, *Atlanta Int'l Ins.*, 438 Mich. at 518. The voluntary-undertaking doctrine thus does not support expanding

8

the relationship factor in professional-negligence cases. And without the necessary relationship, "no duty can be imposed." *Certified Question*, 479 Mich. at 508.

### b. The harm was not foreseeable

The foreseeability factor also is absent here, and "where the harm is not foreseeable, no duty can be imposed." *Certified Question*, 479 Mich. at 509. Under Michigan law, intentional misconduct is unforeseeable is a matter of law. *See MacDonald v. PKT, Inc.*, 464 Mich. 322, 334-35 (2001). Here, VNA could not have reasonably foreseen Plaintiffs' alleged injuries because the City deliberately withheld critical data from VNA. VNA specifically requested the City's lead-testing data, and the data that the City provided showed compliance with federal standards. Ex. 3, Gnagy Dep. 691:10-692:10. VNA relied on the City to provide it complete and accurate testing results. *See* Ex. 2, Contract 9 ("The City would provide . . . records for review."). VNA did not expect that the City would deliberately withhold from VNA the data from LeeAnne Walters' home. Without knowledge of an actual problem in Flint, VNA could not have foreseen that Plaintiffs would suffer injuries from exposure to Flint water.

### c. The costs of imposing a duty outweigh the benefits

The public-policy factor also does not support extending VNA's duty of professional care to Plaintiffs. Doing so would massively expand professional negligence in Michigan. Any time a professional provides services to a client, the

professional could be liable to any third party who may be connected to that client. Thus, a contractor for the federal government on a nationwide IT project might be liable to all 328 million U.S. residents. Such an expansive view of duty would have a devastating effect on the ability and willingness of consultants to provide services to government agencies. It would prevent consultants from being able to manage their liability in advance; indeed, it would override any agreement that a consultant had with its client to limit the scope of its work. Few, if any, consultants would be willing to provide services to government entities if those services exposed them to "a potentially limitless pool of plaintiffs." *Certified Question*, 479 Mich. at 519-21.

The public-policy factor weighs heavily against imposing a duty on a consultant when the consultant was hired only to provide advice that its client was free to accept, modify, or reject. In those circumstances, a consultant has no ability to force its clients to follow its advice, so the social benefit of imposing a duty on consultants is quite limited. At the same time, if liability attaches here, consultants will become reluctant to accept advisory engagements, because they face the potential for massive liability with limited ability to manage that risk (and for generally a low fee). That would impose a significant social cost, because it would make it more difficult for public agencies to obtain outside advice.

In the bellwether case, the Court rejected these concerns, expressing the view that imposing a duty here would require only that professionals adhere to the relevant

professional standard of care.  Bellwether MSJ Order 24, PageID.42701.  That view

conflates *what* duty a professional owes with to *whom* that duty is owed.  VNA does

not dispute that it owed the City a duty of professional care, and that the City could

have brought a claim against VNA.  If VNA committed malpractice in performing

its $40,000 contract with the City, it can be liable to the City.  But expanding its duty

to each resident and visitor of the City would result in disproportionate liability for

which VNA did not contract.

The Court also expressed the view that imposing a duty on VNA in this case

would be consistent with the law in some other States—namely, California, Idaho,

and Wisconsin.  Bellwether MSJ Order 24, PageID.42701.  But none of the cases

cited by the Court involved a consultant's liability to a plaintiff for advice given to

a third-party client; the cases simply restate a general duty to avoid foreseeable

harms, a principle Michigan has expressly rejected.  *See Lee*, 2021 WL 5237197, at

*2 (recognizing that Michigan law "no longer" recognizes that general duty).

Further, when the highest courts in those States considered whether to extend a

professional's duty of care to third parties in situations analogous to that here, each

chose *not* to extend the professional's duty to all third parties, out of a concern for

disproportionate liability.[1]

---

[1]    *See Bily v. Arthur Young & Co.*, 834 P.2d 745, 767 (Cal. 1992) (restricting an auditor's tort liability to the auditor's client and identified beneficiaries known to the auditor); *Idaho Bank & Tr. Co. v. First Bancorp of Idaho*, 772 P.2d 720, 722 (Idaho

In sum, "[b]ecause any relationship between [Plaintiffs] and [VNA] was highly tenuous, the harm was, in all likelihood, not foreseeable, the burden on [VNA] would be onerous and unworkable, and the imposition of a duty . . . would expand traditional tort concepts beyond manageable bounds[,] . . . a legal duty should not be imposed." *Certified Question*, 479 Mich. at 525.

## B.    VNA Did Not Owe Plaintiffs The Specific Duty They Assert

Even if VNA owed some duty of professional care to Plaintiffs, it did not owe them the specific duty they assert.  Their expert, Dr. Larry Russell, expresses the opinion that VNA should have "avert[ed] the Flint water crisis" by taking affirmative steps "to protect the health and property of Flint residents," such as insisting that the City add a corrosion-control chemical or immediately return to using Detroit water. Ex. 4, Russell Supplemental Report 2; *see also* Ex. 5, Russell Report 4-6.  But VNA did not owe Plaintiffs a duty to protect them from harm under Michigan law.

### 1.    In General, No Person Is Obligated To Protect Another From Harm

The fundamental problem with Plaintiffs' asserted duty to protect is that a person generally has no duty to protect another from a risk created by a third party.

---

1989) (same); *Krier v. Vilione*, 766 N.W.2d 517, 531 (Wis. 2009) (same); *see also L. Offs. of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 36 (1989) (same); *cf. H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 899 (N.Y. 1928) (water company could be liable only to the city, not local businesses, for failing to provide the city's fire hydrants with adequate water pressure).

VNA did not create any risk of harm.  As Plaintiffs allege, State and City officials made the decision to switch Flint's drinking water to Flint River water, and how to treat the water, nearly a year before VNA was involved in Flint.  *See* Fifth Am. Compl. ¶¶ 95-147, ECF No. 1175-3, PageID.28626-28640.  VNA also did not increase any risk of harm.  The City did not hire VNA to operate the water system; it hired VNA only to provide advice.  *See* Ex. 2, Contract 9.  VNA told the City that it should use a corrosion control chemical, Ex. 6, VWNAOS087372 at 10 (VNA Final Report), and that the City could switch back to Detroit water, Ex. 3, Gnagy Dep. 152:10-24.  If the City had not engaged VNA at all, Plaintiffs' risk of harm would have been the same.  The most Plaintiffs can claim is that VNA could have lowered their risk of further harm—that is, that VNA failed to protect them from being further injured by the City and State.

In the bellwether case, the Court recognized that Michigan follows the "general rule" that "there is no duty that obligates one person to aid or protect another."  Bellwether MSJ Order 14-15, PageID.42691-42692 (quoting *Bailey v. Schaaf*, 494 Mich. 595, 604 (2013)).  The Court held that VNA owed the bellwether plaintiffs a duty to insist on corrosion controls or a return to Detroit water because "once VNA undertook to evaluate the quality of Flint's water, it had a duty to avoid foreseeable physical harms arising out of that undertaking."  *Id.* at 19.  But VNA's "duty to avoid foreseeable physical harms" was a duty to avoid *creating* a new risk

of harm or *increasing* a pre-existing risk of harm.  *See Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660 (2012) ("Every person engaged in the performance of an undertaking has a duty to . . . not unreasonably *endanger* the person or property of others." (emphasis added)).[2]  Here, VNA did not create any harm or increase the risk of any harm.  Its work for the City did not give rise to a duty to lower a pre-existing risk of harm.

The Sixth Circuit has expressly recognized Michigan's distinction between creating a risk of harm (which can give rise to a duty) and failing to lower an existing risk of harm (which cannot).  In *Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010), some defendants were consultants that the FAA had hired to advise on removing mold from Detroit Metropolitan Wayne County Airport.  *Id.* at 1097.  The Sixth Circuit held that the consultants were not liable to air traffic controllers for negligently advising the FAA, because the negligent advice did not create a new hazard but "merely left alone an existing . . . hazard."  *Id.*

---

[2]   *See also Loweke*, 489 Mich. at 167 (distinguishing between "creat[ing] a new hazard," which can give rise to a duty, and failing to act, which generally does not); *Dyer v. Trachtman*, 470 Mich. 45, 49-50 (2004) (physician performing an independent medical examination of a litigant owes a duty "not to cause physical harm"); *Abraham v. Farmers Ins. Exch.*, No. 335353, 2018 WL 3998728, at *6 (Mich. App. Aug. 21, 2018) (defendant undertaking to remove mold owes the homeowner "a duty to perform its work so as not to create any new harm or worsen any already-existing risk"); Restatement (2d) of Torts § 298 (when a person acts, the person must avoid "creating an unreasonable risk of harm to another").

The Michigan Court of Appeals made the same point in *Harper v. Ashgrove Apartments*, No. 345299, 2019 WL 4670180 (Mich. App. Sept. 24, 2019). There, the defendant removed a concrete walkway that was the only path to the plaintiff's door. *Id.* at *1. The court held that the plaintiff could bring a negligence claim against the defendant for "creating an unsafe passage," because that claim was based on a "hazard that [the defendant] actively created," as opposed to "the failure to protect [the plaintiff] from harm created by someone or something else." *Id.* at *8.

Thus, the fact that VNA performed work for the City did not give rise to a duty to protect Plaintiffs from harm created by the City and the State.

### 2.    None Of The Exceptions Giving Rise To A Duty To Protect Applies Here

There are a limited number of exceptions to the general rule against imposing a duty to protect, but none applies here.

First, a defendant can owe a duty to protect a plaintiff if there is a "special relationship" between the parties. *Bailey*, 494 Mich. at 604. A special relationship arises when "one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id.* Here, there is no evidence that any Plaintiff was aware of VNA, much less entrusted himself or herself to VNA's control or protection. *See Murdock*, 454 Mich. at 55.

15

Second, a defendant owes a duty to protect a plaintiff from harms that the defendant created. *See* Restatement (2d) of Torts §§ 321-22. As explained, VNA did not create any harms here, so this exception does not apply.

Third, a defendant can owe a duty to protect a plaintiff from a third party when the defendant has power or control over the third party. *See* Restatement (2d) of Torts § 315(a). As the Court has recognized, VNA "did not control . . . the City of Flint," Bellwether MSJ Order 16, PageID.42693—VNA could only give the City advice, which the City was free to accept or reject (and mostly did reject).

Finally, even if VNA owed the *City* a duty to recommend actions to improve the condition of the water, that duty did not extend to Plaintiffs. VNA owed the City a contractual obligation to act as a reasonable engineer in the circumstances. *See Oja v. Kin*, 229 Mich. App. 184, 190 n.2 (1998) ("It is only with a [professional's] consent . . . that the [professional-client] relationship comes into being." (internal quotation marks omitted)). Plaintiffs were not VNA's clients, and Michigan law is clear that the scope of a duty depends on the scope of the underlying relationship. *See Hill*, 492 Mich. at 662; *Dyer*, 470 Mich. at 53-54. Because VNA and Plaintiffs were strangers, VNA owed Plaintiffs only a limited duty not to create a new hazard, not a duty to protect them from a harm that the City and State created.

Thus, Plaintiffs' proposed duties all are invalid as a matter of law.

16

## II.   Plaintiffs Cannot Prove Causation For Three Of Their Theories Of Breach And Three Claimed Injuries

### A.   Plaintiffs Cannot Prove Causation For Three Theories Of Liability

There is no evidence of but-for causation for three of VNA's alleged breaches: (1) VNA's supposed failure to recommend a return to Detroit water; (2) VNA's public statements that the water is safe; and (3) VNA's ferric chloride recommendations.

#### 1.   The City Would Not Have Returned To Detroit Water

Plaintiffs contend that VNA was negligent by failing to recommend that the City return to Detroit water.  Ex. 5, Russell Report 5.  VNA disputes that it was negligent, but in any event the evidence proves that the City would not have returned to Detroit water no matter what VNA had done.  When VNA made this argument at summary judgment in the bellwether case, the Court held that the plaintiffs might be able to show that the City would have returned to Detroit water sooner because government officials, including Emergency Manager Gerald Ambrose, testified that they would have considered an urgent warning from VNA.  Bellwether MSJ Order 43-44.  But no reasonable jury could review the whole record and believe that testimony.

The record clearly establishes that city and state officials would never have considered returning to Detroit water any sooner than they did, regardless of what VNA advised, because they viewed it as too expensive.  As the Court has recognized,

government officials refused to return to Detroit water even though many citizens complained about the water and there were multiple health and safety concerns about the water, including boil-water advisories. *See In re Flint Water Litig.*, 558 F. Supp. 3d 459, 478-79 (E.D. Mich. 2021). In 2014, then-Emergency Manager Darnell Earley believed that returning to Detroit "was not feasible because the City didn't have any money." Ex. 7, Earley Dep. 110:7-14; *see* Ex. 8, COF_FED_0123642 (Earley disagreeing with suggestion from the Governor's office that the City return to Detroit water). When Ambrose was appointed Emergency Manager in January 2015, he was determined not to switch back to Detroit water because he believed that doing so was not worth $12 million a year. *See* Ex. 9, COF_FED_0009724; Ex. 10, COF_FED_0222608; Ex. 11, Ambrose Dep. 122:7-20; Ex. 12, Johnson Dep. 73:1-76:21, 355:3-22. Under Ambrose, returning to Detroit just "wasn't going to happen." Ex. 13, Wright Dep. 306:3-308:14.

City officials told VNA in no uncertain terms that returning to Detroit water was off the table. Ex. 3, Gnagy Dep. 150:20-151:9; Ex. 11, Ambrose Dep. 387:12-388:9. Then, in March 2015, the Flint City Council voted 8-0 to accept DWSD's offer and reconnect to DWSD, but Ambrose overrode that decision. Ex. 14, COF_FED_1127535 at COF_FED_1127544-COF_FED_1127545. After the vote, Ambrose issued a press release in which he described returning to DWSD as "incomprehensible." Ex. 15, COF_FED_0009721; *see* Ex. 11, Ambrose Dep.

133:19-134:1.  There is no reason to believe that Ambrose would have listened to any recommendation from VNA to switch back to Detroit water at the very time that he was overruling the Council's vote.  The Court accordingly should grant VNA partial summary judgment on this theory of liability.

### 2.     VNA's Public Statements That The Water Was Safe Did Not Cause Plaintiffs Any Injuries

Plaintiffs contend that VNA was negligent by publicly stating that the water was safe.  Ex. 5, Russell Report 56-57.  VNA disputes that it was negligent.  It explained that "safe" meant in conformance with federal and state water standards, *see* Ex. 16, VWNAOS020165 at VWNAOS020168, and all the evidence that VNA saw showed that the water met those standards.  But again, there is no evidence that VNA's statements caused any injuries.

No plaintiff in this litigation has ever adequately alleged that he or she relied on VNA's public statements about the water.  The Court recognized this in the bellwether case when the Court held that the bellwether plaintiffs could "not bring a separate negligence claim based on [VNA's public statements] because they have not argued that such misrepresentations were causally related to their injuries."  Order on VNA MIL to Exclude Theories of Negligence 2-3, ECF No. 667, PageID.43732-33.  Class Plaintiffs are no different:  There is no evidence that any class member relied on VNA's statements or had even heard of VNA before this litigation.  There is likewise no evidence that VNA's statement that the water was

safe affected any decisions made by City or State officials.  Plaintiffs thus cannot establish causation for this theory, and so the Court should grant VNA partial summary judgment on it.

### 3.    The City Did Not Follow VNA's Advice On Ferric Chloride

Plaintiffs contend that VNA was negligent by recommending that the City add more ferric chloride to treat the water. Ex. 5, Russell Report 9-10, 17.  Again, VNA disputes that it was negligent, but it does not matter, because the undisputed evidence shows that the City did not follow VNA's recommendation. *See, e.g.*, Ex. 17, Green Dep. 41:11-43:5, 52:17-23, 64:2-24.  VNA recommended that the City add 100 mg/L of ferric chloride. Ex. 6, VNA Final Report 10.  The evidence shows that the City never added that amount—instead, the ferric chloride dose at the Flint water treatment plant remained relatively constant from January 2015 (before the City hired VNA) to October 2015 (when the City switched back to Detroit water), averaging around 50 mg/L, and never approaching 100 mg/L.  *See* Ex. 18, Bellamy Report 65 & Fig. 6.  In fact, Plaintiffs' expert Dr. Russell agreed at his deposition that the City did not follow VNA's recommendation. Ex. 19, Russell Dep. 287:20-288:7 (the City "didn't implement" and "overruled" VNA's ferric chloride recommendation).  The Court therefore should grant VNA partial summary judgment on this theory.

**B.      Plaintiffs Have Not Established That Exposure To Flint Water Was Capable Of Causing Immunological Effects, Cardiovascular Outcomes, Or Reproductive Effects**

The Court also should grant VNA summary judgment on three of Plaintiffs' claimed harms, immunological effects, cardiovascular outcomes, and reproductive effects, because Plaintiffs do not have evidence to show that Flint water conditions could have caused those harms.  To prove causation in a toxic-tort case under Michigan law, a plaintiff must establish both general causation (*i.e.*, the plaintiff's exposure to the toxin was capable of causing the alleged injury) and specific causation (*i.e.*, the plaintiff's exposure and not some other cause actually caused the injury).  *Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.*, 333 Mich. App. 234, 251 (2020).

In the issue-class trial, Plaintiffs seek to prove—as a matter of general causation—that exposure to Flint water could have caused 13 types of injuries.  Pls. Notice, ECF No. 2283, PageID.74157.[3]    But for three claimed injuries—

---

[3]   Even if Plaintiffs are successful at the issue-class trial, each particular plaintiff would have to show in an individualized proceeding that his or her particular quantity and duration of exposure was capable of causing his or her claimed injury. *See Powell-Murphy*, 333 Mich. App. at 249-50 (a "necessary predicate" to proving general causation is "identifying the asserted exposure level of the toxin," because proof of general causation requires "proof of *enough exposure* to cause the plaintiff's specific illness" (emphasis added; internal quotation marks omitted)). The jury in the issue-class trial will consider, in effect, only whether the maximum possible exposure to Flint water could cause the claimed harms; it will not decide whether particular quantities and durations of exposure could cause the harms.

immunological effects, cardiovascular outcomes, and reproductive effects—Plaintiffs have not shown that exposure to Flint water is capable of causing those injuries. Plaintiffs rely solely on the testimony of Dr. Howard Hu to establish causation as to those injuries. *See* Ex. 20, Hu Report 7-10. As explained in VNA's motion to exclude Dr. Hu's opinions, there are multiple problems with his opinions. Notably, Dr. Hu admits that the current scientific evidence does not show a causal effect between lead exposure and immunological effects or cardiovascular outcomes. *See id.* at 22 (relationship between lead exposure and immunological effects is "without enough evidence to be considered more likely than not causal"); *id.* (relationship between lead exposure and cardiovascular mortality lacks evidence "sufficient for [him] to come to a conclusion regarding causality"). He also lacks any reliable basis for asserting that lead exposure can cause adverse reproductive effects—his report contains barely mentions reproductive effects, *see id.* at 9, and the only source he cites states that the evidence is "inconsistent," *see* U.S. Ctrs. For Disease Control & Prevention, Agency for Toxic Substances & Disease Registry, *Toxicological Profile for Lead* 7 (2020), bit.ly/3pKOCxz.

The Michigan Supreme Court has expressly held that to make out a prima facie case of negligence, a plaintiff must put on evidence that the injury could be caused by the alleged source; a mere correlation is not enough. *See Craig ex rel. Craig v. Oakwood Hops.*, 471 Mich. 67, 93 (2004). If the plaintiff's only evidence

is the testimony of an expert, and the expert does not testify that the relationship between the alleged source and the injury was causal, then the defendant is entitled to judgment as a matter of law. *Id.* The Court thus should grant VNA partial summary judgment as to immunological effects, cardiovascular outcomes, and reproductive effects.

## III. The Court Should Grant VNA Summary Judgment On The Issue Of Non-Party Duty

If the Court does not grant VNA summary judgment on the duty issue, the Court should grant VNA partial summary judgment on its non-party defense— specifically, that each non-party owed Plaintiffs a cognizable legal duty.

VNA seeks to allocate fault to 38 entities and individuals. VNA Non-Party Submission 1-3, ECF No. 2281, PageID.74148-74150. For a jury to allocate fault to those non-parties, each non-party must have owed the plaintiff a legal duty, *Romain v. Frankenmuth Mut. Ins.*, 483 Mich. 18, 22 (2009), and the non-party's breach of that duty must have been a proximate cause of the plaintiff's injury, *see* MCL § 600.6304(8).[4]

In the bellwether case, the Court recognized that, at a minimum, each non-party owed Plaintiffs a common-law duty "to take reasonable care in their undertakings to avoid foreseeable physical harm." Tr. of Feb. 24, 2022, Hrg. 31:11-

---

[4] VNA sought to allocate fault to the same non-parties in the bellwether case. *See* VNA Bellwether Non-Party List 1-2, ECF No. 2425-1, PageID.77394-77395.

14, No. 17-cv-10164 ECF No. 710, PageID.45738.  Unlike with VNA, each non-party had a direct relationship with Plaintiffs – that of a government agency or official or agency and a citizen under the agency's or official's protection.  Further, the City and State caused the Flint water crisis, so they owed Plaintiffs a common-law duty to protect Plaintiffs from harms caused by the crisis and mitigate its effects.  *See* Restatement (2d) Torts §§ 321-22.  The Court also recognized that the non-parties may be subject to "elevated" duties from other sources, such as the Constitution, statutes, or the common law.  Tr. of Feb. 24, 2022, Hrg. 29:5, 30:14, PageID.45736-45737.  For example, the Court has recognized that all state and local officials owe their citizens a constitutional duty not to violate the citizens' bodily integrity and held that Plaintiffs had adequately stated a constitutional claim against 13 of the non-parties.  *In re Flint Water Litig.*, 384 F. Supp. 3d 802, 841-42, 858-61 (E.D. Mich. 2019).[5]

For the purposes of this motion, the Court need not determine the precise scope of each non-party's duties.  The Court need only reaffirm its previous holding that each non-party owed Plaintiffs some cognizable legal duty.

---

[5]   Those non-parties are:  Governor Rick Snyder, Andy Dillon, NiLiane Shekter-Smith, Adam Rosenthal, Stephen Busch, Patrick Cook, Michael Prysby, Bradley Wurfel, Darnell Earley, Gerald Ambrose, Michael Glasgow, Daugherty Johnson, and Howard Croft.

## CONCLUSION

The Court should grant summary judgment to VNA.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL
P.C.**

**MAYER BROWN LLP**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia
Water North America Operating Services, LLC*

Dated: May 19, 2023

25

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   */s/ James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com