# EXHIBIT 12

Highly Confidential - Daugherty Johnson

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DIVISION
 3   _____
 4                                      No. 5:16-cv-10444
     IN RE:  FLINT WATER CASES          Hon. Judith E. Levy
 5                                      Mag. Mona K. Majzoub

     _____
 6

     Elnora Carthan, et al.,
 7
           Plaintiffs,
 8
           vs.                          Civil Action No.
 9                                      5:16-cv-10444-JEL-MKM

     Governor Rick Snyder,
10   et al.,
11         Defendants.
     _____
12
13
14
15
                         HIGHLY CONFIDENTIAL
16      VIDEOTAPED DEPOSITION OF DAUGHERTY JOHNSON
17                         VOLUME I
18              Tuesday, December 17, 2019
                       at 9:09 a.m.
19
20   Taken at:  Butzel Long
                41000 Woodward Avenue
21              Bloomfield Hills, Michigan  48304
22   REPORTED BY:  CAROL A. KIRK, RMR/CSR-9139
23              GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
24                  deps@golkow.com
```

Highly Confidential - Daugherty Johnson

```
 1              A P P E A R A N C E S
 2                     - - -
 3   On behalf of the Class Plaintiffs:
          PAUL F. NOVAK, ESQUIRE
 4        WEITZ & LUXENBERG, P.C.
          3011 West Grand Boulevard, Suite 2150
 5        Detroit, Michigan  48202
          313-800-4170
 6        pnovak@weitzlux.com
 7   On behalf of Individual Plaintiffs:
          COREY M. STERN, ESQUIRE
 8        LEVY KONIGSBERG LLP
          800 3rd Avenue, 11th floor
 9        New York, New York  10022
          212-605-6200
10        cstern@levylaw.com
11   On behalf of the Mason State Court Plaintiffs:
          ADAM T. SCHNATZ, ESQUIRE
12        MCALPINE PC
          3201 University Drive, Suite 200
13        Auburn Hills, Michigan  48326
          248-373-3700
14        atschnatz@mcalpinepc.com
15   On behalf of the People of the State of Michigan:
          RICHARD KUHL, ASSISTANT ATTORNEY GENERAL
16        DANA NESSEL, ATTORNEY GENERAL
          525 West Ottawa Street, 6th Floor
17        Lansing, Michigan  48909
          517-335-7664
18        kuhlr@michigan.gov
19   On behalf of Defendant City of Flint:
          WILLIAM KIM, ASSISTANT CITY ATTORNEY
20        CITY OF FLINT LEGAL DEPARTMENT
          1101 South Saginaw Street, 3rd Floor
21        Flint, Michigan  48502
          810-766-7146
22        wkim@cityofflint.com
23
24
```

Highly Confidential - Daugherty Johnson

```
 1            A P P E A R A N C E S (CONT'D)
 2                       - - -
 3   On behalf of Defendants Veolia Water North America
     Operating Services, LLC, Veolia North America, LLC, and
 4   Veolia North America, Inc.:
            DAVID M. ROGERS, ESQUIRE
 5          ALAINA N. DEVINE, ESQUIRE
            CAMPBELL CONROY & O'NEIL, P.C.
 6          1 Constitution Wharf, Suite 310
            Boston, Massachusetts  02129
 7          617-241-3063
            drogers@campbelltriallawyers.com
 8          adevine@campbelltriallawyers.com
 9   On behalf of Defendants Leo A. Daly Company and
     Lockwood, Andrews & Newnam, Inc.:
10          PHILIP A. ERICKSON, ESQUIRE
            PLUNKETT COONEY, P.C.
11          325 East Grand River
            City Center, Suite 250
12          East Lansing, Michigan  48823
            517-333-6598
13          perickson@plunketcooney.com
                and
14          TRAVIS S. GAMBLE, ESQUIRE
            DRINKER BIDDLE & REATH LLP
15          1717 Main Street, Suite 5400
            Dallas, Texas  75201
16          469-357-2534
            travis.gamble@dbr.com
17
     On behalf of Defendant Rowe Professional Services
18   Company:
            CRAIG S. THOMPSON, ESQUIRE
19          SULLIVAN, WARD, ASHER & PATTON, PC
            25800 Northwestern Highway, Suite 1000
20          Southfield, Michigan  48075
            248-746-0700
21          cthompson@swappc.com
22
23
24
```

Golkow Litigation Services                                    Page 3

Highly Confidential - Daugherty Johnson

```
 1           A P P E A R A N C E S (CONT'D)
 2                      - - -
 3  On behalf of Defendant Howard Croft:
         ALEXANDER S. RUSEK, ESQUIRE
 4       WHITE LAW PLLC
         2549 Jolly Road, Suite 340
 5       Okemos, Michigan  48864
         517-316-1195
 6       alexrusek@whitelawpllc.com
 7  On behalf of Defendant Daugherty Johnson:
         EDWAR A. ZEINEH, ESQUIRE
 8       2800 East Grand River Avenue, Suite B
         Lansing, Michigan  48912
 9       517-292-7000
         zeinehlaw@gmail.com
10            and
         LAUREN SAMONA, ESQUIRE
11       BAJOKA LAW GROUP PLLC
         500 Griswold, Suite 2320
12       Detroit, Michigan  48226
         313-462-0537
13       laurensamona@bajokalaw.com
14  On behalf of McLaren Regional Medical Center (via
    teleconference):
15       SUSAN E. SMITH, ESQUIRE
         BEVERIDGE & DIAMOND, P.C.
16       456 Montgomery Street, Suite 1800
         San Francisco, California  94104
17       1-415-262-4000
         ssmith@bdlaw.com
18
    On behalf of Defendants Bradley Wurfel and Daniel Wyant
19  (via teleconference):
         CHRISTOPHER B. CLARE, ESQUIRE
20       CLARK HILL PLC
         1001 Pennsylvania Avenue NW, Suite 1300 South
21       Washington, DC  20004
         202-572-8671
22       cclare@clarkhill.com
23
24
```

Golkow Litigation Services                                    Page 4

```
 1           A P P E A R A N C E S (CONT'D)
 2                      - - -
 3   On behalf of Defendant Jeffrey Wright (via
     teleconference):
 4        MATTHEW T. WISE, ESQUIRE
          FOLEY MANSFIELD, PLLP
 5        130 East 9 Mile Road
          Ferndale, Michigan  48220
 6        248-721-4200
          mwise@foleymansfield.com
 7
     On behalf of Individual Plaintiffs (via teleconference):
 8        RAQUEL MUÑOZ, ESQUIRE
          FIEGER LAW
 9        19390 West Ten Mile Road
          Southfield, Michigan  48075-2463
10        248-355-5555
          r.munoz@fiegerlaw.com
11
     On behalf of the DEQ Employee Defendants (via
12   teleconference):
          JARED A. ROBERTS, ESQUIRE
13        FRASER TREBILCOCK
          124 West Allegan Street, Suite 1000
14        Lansing, Michigan  48933
          517-482-5800
15        jroberts@fraserlawfirm.com
16
17   ALSO PRESENT:
18        Jeff Gudme, Videographer
19                      - - -
20
21
22
23
24
```

```
 1   time -- we're referring to Mr. Jerry Ambrose,
 2   right?
 3            A.   Correct.
 4            Q.   For some period of time
 5   Mr. Ambrose served in the role as financial
 6   manager for the city of Flint, true?
 7            A.   Yes.
 8            Q.   And then as of a certain point in
 9   time, he actually became the emergency manager
10   for the city, too, right?
11            A.   Correct.
12            Q.   And isn't it true, Mr. Johnson,
13   that Mr. Ambrose overruled your recommendation
14   or your direction to your staff to get ready to
15   switch from the Flint River water back to
16   Detroit?
17            A.   Yes, he did.
18            Q.   And you weren't happy about that,
19   were you?
20            A.   I was not.
21            Q.   Is that the reason that you left
22   the employ of the city shortly thereafter in
23   April 2015, in part anyway?
24            A.   That is certainly part of it.
```

Highly Confidential - Daugherty Johnson

```
 1            Q.   And the reason for that was you
 2   were upset about the fact that Mr. Ambrose
 3   overruled a direction that you gave to your
 4   staff to get ready to switch from Flint River
 5   water back to Detroit water, right?
 6                 MR. ZEINEH:  Objection.
 7            A.   Yes.
 8                 MR. ZEINEH:  Form, foundation.
 9            Q.   And you were angry about that,
10   right?
11            A.   I was concerned about it, yes.
12            Q.   And you left.  You left your
13   employment with the city where you had been
14   employed for how long?
15            A.   Twenty-four years.
16            Q.   And --
17            A.   Twenty-three years, something like
18   that, yes.
19            Q.   To what percent or what extent was
20   that the reason that you left as opposed to
21   something else?  Was that a major part of the
22   reason that you left?
23            A.   Yes, it was.
24            Q.   And at the time, sir -- and you
```

Highly Confidential - Daugherty Johnson

```
 1   testified in the criminal hearing, I'll remind
 2   you, but you believe that Flint had the money
 3   available to pay for the water from Detroit at
 4   that time, right?  There was money available to
 5   do that, right?
 6           A.   We could have charged more for the
 7   service, yes.
 8           Q.   So it would have cost more, but
 9   you thought the city of Flint had the financial
10   wherewithal to do that, to return to Detroit
11   water in February of 2015, right?
12           A.   Yes.
13           Q.   And you directed your staff to
14   make plans to do that, and you were overruled by
15   Mr. Ambrose, right?
16           A.   Yes.
17           Q.   And the decision was made by
18   Mr. Ambrose not to go to Detroit water to save
19   money; isn't that true?
20           A.   Yes.
21                MR. KIM:  Objection; foundation.
22                     - - -
23       (Johnson Deposition Exhibit 87 marked.)
24                     - - -
```

```
 1   BY MR. ROGERS:
 2         Q.   And, in fact, would you take a
 3   look at Exhibit 87, please.  I showed you this
 4   before we got started today.  But have you seen
 5   this letter from Mr. Ambrose to the treasurer
 6   for the state of Michigan or the treasury
 7   department before?  Mr. Johnson?
 8         A.   I have to give it a read first.
 9         Q.   Okay.  Thank you.  I thought you
10   had.  I'm sorry.
11              Okay.  Have you had a chance to
12   read it?  So this is a letter -- I'm going to
13   put it on the Elmo so the jury can see it.
14              This is a letter from Mr. Ambrose.
15   It's got the letterhead up at the top, City of
16   Flint, and it's to Wayne Workman, Deputy
17   Treasurer, Treasury Department, State of
18   Michigan," dated December 3, 2015, right?
19         A.   Yes -- March 3rd.
20         Q.   And were you aware of the fact
21   that as of March 3, 2015, that Mr. Ambrose was
22   writing this letter to the deputy treasurer for
23   the state of Michigan?
24         A.   I don't recall if I was aware of
```

1   it beforehand.

2            Q.    But this is consistent with --
3   what Mr. Ambrose's reporting to the treasury
4   department is consistent with your testimony
5   that you just gave that Mr. Ambrose overruled
6   your recommendation to go from the Flint River
7   back to the Detroit river -- I mean, sorry -- to
8   the Detroit Water Authority that was providing
9   the water, right?

10                 MR. KUHL:  Objection to form.

11           Q.    Is that true?

12           A.    That is correct.

13           Q.    And the reason that he's saying
14  it, as is stated in this paragraph, is to save
15  money, right?

16                 MR. KUHL:  Objection to form.

17           Q.    It would cost more, he is
18  reporting, if the city of Flint were to return
19  to the Detroit water, right?

20                 MR. KUHL:  Object to form.

21           A.    That is correct.

22           Q.    To the tune of $12 million, right?

23           A.    That's what the letter states,
24  yes.

```
 1          Q.    Did you see this letter -- did you
 2   see that letter at the time it was written,
 3   approximately sometime in March?
 4          A.    I don't recall if I did around
 5   then or not.
 6          Q.    But you already knew that you had
 7   been overruled by Mr. Ambrose at that time,
 8   right?
 9          A.    Yes.
10          Q.    And had you made the decision to
11   leave your employment with the city of Flint
12   after 24 years as a result of this by that time?
13          A.    Yes.  I believe so, yes.
14          Q.    My -- I have an understanding that
15   you were on vacation for a good portion of
16   February 2015; is that true?
17          A.    Correct.
18          Q.    So you didn't have much, if any,
19   interaction with the Veolia personnel who were
20   working at the -- working with the treatment
21   plant fellows at that time?
22          A.    I did not.
23          Q.    The Veolia personnel would have
24   been working with Mr. Glasgow and Mr. Wright at
```

```
 1         A.   The six months wasn't tied to
 2   that.  We wanted to use it as soon as we could.
 3   The six months was tied to the corrosion control
 4   sampling protocol, not the lime sludge lagoon.
 5         Q.   So at some point during your
 6   tenure before you retired in 2015, did you start
 7   using the lime agent at the Flint water plant?
 8         A.   Yes.
 9         Q.   When was that?
10         A.   I don't know the exact dates, but
11   it was used before I left.
12         Q.   Okay.  Is it fair to say that if
13   the city of Flint -- to your knowledge, is it
14   fair to say that if the city of Flint had not
15   gotten the $85 million in bonds from JPMorgan
16   Chase when it did, that the KWA project would
17   have either been delayed or fallen through?
18         A.   That is my understanding, yes.
19         Q.   And if that would have happened,
20   what do you believe Flint would have done with
21   regard to obtaining water for its citizens?
22              MR. ZEINEH:  Objection as to form,
23         foundation.
24         A.   The options would have been using
```

 1   the Flint River or signing a 30-year contract

 2   with Detroit.

 3          Q.    And did anybody ever express to

 4   you above you, you know, above your -- again,

 5   not in life, but, you know, in work, that it

 6   was -- it was not -- that switching back to the

 7   Detroit water was something that was just not

 8   going to happen?

 9          A.    That was certainly a statement

10   made by Jerry Ambrose at times after we had

11   switched over to the Flint River.

12          Q.    When Mr. Kurtz testified -- you

13   know, I'm not going -- I don't want to quote his

14   testimony, but I have the distinct sense from

15   him that as emergency manager, he had absolutely

16   no desire to go back to the Detroit water once

17   they terminated the contract with the city of

18   Flint and once the KWA became a viable option

19   for the city.

20                Did you ever have that same

21   impression from Mr. Kurtz?

22          A.    Yes.

23          Q.    Okay.  Did you ever have that same

24   impression from Mr. Ambrose?

```
 1          A.    Yes.
 2          Q.    And was it Mr. Ambrose -- what was
 3   Mr. Ambrose's role -- as emergency manager, what
 4   was Mr. Ambrose's role in the administrative
 5   consent order?
 6          A.    I believe he signed it.  My
 7   recollection, he would have been the one to sign
 8   that document, but that's my recollection of it.
 9          Q.    Do you know a man named
10   Mr. Massaron?
11          A.    I've been on e-mails with him,
12   yes.
13          Q.    He's an attorney?
14          A.    Yes.
15          Q.    Do you know if he and Mr. Ambrose
16   were tight?
17          A.    I don't know that.  They had
18   e-mails back and forth and ...
19          Q.    Did you ever get the impression
20   that Mr. Ambrose and Mr. Massaron were close
21   beyond their working relationship?
22                MR. ZEINEH:  Objection as to form
23          and foundation.
24          A.    I didn't know enough to make an
```