# MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600
F: +1 312 701 7711
mayerbrown.com

**Michael A. Olsen**
T: +1 312 701 7120
molsen@mayerbrown.com

May 31, 2023

<u>BY ECF (CASE NO. 5:16-CV-10444)</u>

Honorable Judith E. Levy
U.S. District Judge for the Eastern District of Michigan
Federal Building, 200 East Liberty Street
Ann Arbor, Michigan 48104

Re:  <u>VNA's Letter Brief Regarding Privileges Applicable To Communications Between Attorneys And Outside Public Relations Consultants</u>

In response to the Court's request at the May 17, 2023 discovery conference, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) hereby submit this letter brief about the privileges that apply to communications involving VNA's in-house and outside counsel and its external public relations (PR) consultants. VNA has produced many documents that reflect communications with its outside PR consultants, but it has appropriately withheld a fraction of them as subject to the attorney-client privilege or work-product protection. Plaintiffs have made a wholesale challenge to this privilege assertion, reasoning that communications that address PR efforts or are shared with third-party PR consultants are not protected. Plaintiffs are mistaken.

*First*, certain communications are subject to the attorney-client privilege because the communications furthered or reflected the provision of legal advice to VNA. Disclosure to the PR consultants did not waive the privilege because, for purpose of analyzing the application of the privilege, the consultants are entitled to be treated as functionally equivalent to VNA employees.

*Second*, certain communications are subject to work-product protection because they reflect VNA's attorney's mental impressions, judgments, and legal theories relating to the Flint litigation. Disclosure to third-party PR consultants did not waive the protection because the disclosures were made with a reasonable expectation of confidentiality. Many communications are

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Mayer Brown LLP
Honorable Judith E. Levy
May 31, 2023
Page 2

subject to both attorney-client privilege and work-product protection, either of which is independently sufficient to justify withholding those documents.

I. **The Attorney-Client Privilege Extends To Communications Between An Attorney And A PR Consultant When The Consultant Is Serving As The Functional Equivalent Of An Employee Of The Client**

"Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication." *Leibel v. Gen. Motors Corp.*, 646 N.W.2d 179, 183 (Mich. Ct. App. 2002) (quotation marks omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981) (attorney-client privilege protects communications between attorneys for a corporation and the corporation's employees). Reasoning that this principle protects communications with outside consultants in certain circumstances, many courts have held that the attorney-client privilege extends to communications with outside PR firms, because the PR consultants served as the functional equivalent of the client's employees.

For example, in the leading case on this issue, the D.C. Circuit held that corporate defendant GSK's "attorney-client privilege extend[ed]" to "communications that GSK shared with its public relations and government affairs consultants." *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002). GSK's corporate counsel "worked with these consultants in the same manner as they did with full-time employees; indeed, the consultants acted as part of a team with full-time employees regarding their particular assignments and, as a result, the consultants became integral members of the team assigned to deal with issues that were completely intertwined with GSK's litigation and legal strategies." *Id.* (quotation marks and alterations omitted). The court concluded that "there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information

needed by attorneys in rendering legal advice." *Id.* (quotation marks omitted).

Likewise, another court held that the attorney-client privilege protected communications between defendant Sumitomo's lawyers and the client's outside PR consultants. *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213 (S.D.N.Y. 2001). Sumitomo had retained a PR firm "to deal with public relations problems following the exposure of [the] scandal" that gave rise to the litigation because "Sumitomo's internal resources were insufficient to cover the task." *Id.* at 219. The PR firm's duties "included preparing statements for public release and internal documents designed to inform Sumitomo employees about what could and could not be said about the scandal." *Id.* "In formulating communications on Sumitomo's behalf, [the PR firm] sought advice from Sumitomo's counsel and was privy to advice concerning the scandal and attendant litigation." *Id.* Citing "the principles set out in *Upjohn*," *supra*, the court held that the PR firm's "independent contractor status provides no basis for excluding [its] communications with Sumitomo's counsel from the protection of the attorney-client privilege." *Id.*

Other courts analyzing similar facts have reached the same conclusion. *See, e.g.*, *Schaeffer v. Gregory Vill.*, 78 F. Supp. 3d 1198, 1204 (N.D. Cal. 2015) (communications involving a PR consultant were privileged because the consultant "acted as the public face of the company and provided information to [its] legal staff that was useful and necessary to evaluate legal strategy for the company going forward"); *Grand Canyon Skywalk Dev. LLC v. Cieslak*, No. 2:13-CV-00596-JAD, 2015 WL 4773585, at *15 (D. Nev. Aug. 13, 2015) ("In the case of a public relations consultant who is hired to conduct a media relations campaign on behalf of the client with respect to a lawsuit or legal dispute, it is important that the client's counsel be able to provide confidential legal advice to the consultant so that he can perform his duties on behalf of the client in accordance with that legal advice."); *A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-CV-02435-RBJ-KMT, 2012

WL 1957302, at *5 (D. Colo. May 31, 2012) ("[C]ommunications involving the [PR firm] employees are entitled to the same attorney-client protection had the [PR firm] employees actually been [the client's] employees . . . .").

Here, as in the cases cited above, VNA engaged its regular outside PR firms to assist it in dealing with media inquiries and other public relations matters arising from the Flint water crisis and resulting litigation, supplementing its "very small" internal public relations team. *See* Colangelo Dep. Tr. 74:04-74:19, 76:22-77:13 (Nov. 29, 2022). VNA's attorneys communicated with the PR consultants in order to provide legal advice about that effort and ensure that VNA's PR strategy did not undermine its legal position in the litigation. To the extent that the communications involving the PR consultants reflect a request for legal advice or the provision of legal advice, they are privileged. *See ADT Sec. Servs., Inc. v. Swenson*, CIV. 07-2983, 2010 WL 2954545, at *5 (D. Minn. July 26, 2010) (reviewing *in camera* communications "involv[ing] discussions of the possible content of [the client's] response to the Dateline program" and concluding that "[t]he context of these emails demonstrates that these communications contain an implicit request for legal advice regarding the content of the Dateline response, and therefore they are protected by the attorney-client privilege").

**II.     Work-Product Protection Is Not Waived By Disclosure To A PR Professional.**

Whether or not the PR professionals were functionally equivalent to VNA employees, the disclosure of work product to them did not waive the protection. The work-product doctrine "is designed to allow an attorney to 'assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference . . . to protect [his] clients' interests.'" *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman v. Taylor*, 329 U.S.

495, 510 (1947)). "[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; i.e., any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories." *Id.* (quotation marks omitted).

Importantly, work-product protection is not waived by "the mere showing of a voluntary disclosure to a third person." *Id.* at 304 (quotation marks omitted). Instead, waiver results only from disclosure to an adversary or in a manner that may make it available to an adversary. *See id.* at 306 n.28; *see also, e.g.*, *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010) ("[T]he voluntary disclosure of attorney work product to an adversary or a conduit to an adversary waives work-product protection for that material."). Thus, disclosure to an outside PR consultant does not waive work-product protections when there is an expectation of confidentiality. *See, e.g.*, *Light Out Holdings, LLC v. Nike, Inc.*, No. 3:14-CV-00872 JAH (NLS), 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015) ("[A]n attorney does not waive [work-product] protection when he shares otherwise valid work product with a consultant for PR assistance, so long as the communications are intended to be confidential."); *Copper Market*, 200 F.R.D. at 221 n.6 (disclosure to PR firm "does not constitute waiver of the work-product immunity").

Here, VNA and its attorneys had a reasonable expectation that their communications with VNA's PR consultants would remain confidential. Accordingly, communications that reflect attorneys' mental impressions, opinions, conclusions, judgments, or legal theories relating to the Flint litigation are subject to work-product protection. *See id.* (materials prepared by PR firms "in collaboration with . . . counsel . . . in the context of . . . litigation" were protected work product).

Respectfully submitted,

*/s/* Michael A. Olsen
Michael A. Olsen

## CERTIFICATE OF SERVICE

    I hereby certify that on May 31, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: */s/* Michael A. Olsen  
Michael A. Olsen
