UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-EAS |
| | HON. JUDITH E. LEVY |
| | MAG. ELIZABETH A. STAFFORD |

**STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR DISTRIBUTION OF ATTORNEYS' FEES FROM THE PROGRAMMATIC RELIEF SUB-QUALIFIED SETTLEMENT FUND; DISTRIBUTION OF PRO RATA INTEREST; REIMBURSEMENT OF COMMON BENEFIT LITIGATION EXPENSES; AND SETTING ASIDE FUNDS FOR CONTINUED LITIGATION EXPENSES**

Pursuant to this Court's June 28, 2023 Order, State Defendants[1] hereby file their response opposing the Plaintiffs' Motion for Distribution of Attorneys' Fees from the Programmatic Relief Sub-Qualified Fund; Distribution of Pro Rata Interest; Reimbursement of Common Benefit Litigation Expenses; and Setting Aside Funds for Continued Litigation Expenses (ECF No. 2505). State Defendants oppose Plaintiffs' motion for two main reasons. First, it seeks certain

---

[1] The capitalized terms in this response have the same meaning as defined in the Amendment Settlement Agreement, ECF No. 1394-2.

distributions prematurely under the terms of the Amended Settlement Agreement (ASA) (ECF No. 1394-2). Second, it seeks other distributions that are not authorized *at all,* regardless of timing, under the terms of the ASA (ECF No. 1394-2), and this Court's Order awarding attorneys' fees and expenses (ECF No. 2105.). State Defendants ask that this Court deny the motion.

## BACKGROUND

On November 10, 2021, this Court granted final approval of the ASA between Class Plaintiffs, Individual Plaintiffs, State Defendants, and the other settling defendants. The ASA establishes both the FWC Qualified Settlement Fund and the FWC Sub-Qualified Settlement Funds and determines how each fund is funded and used. Relevant to this response, the ASA provides that Plaintiffs' Counsel will be reimbursed their expenses and fees out of the FWC Qualified Settlement Fund subject to terms approved by this Court. (*Id.* at PageID.54159-54160.) It also provides that the Sub-Qualified Settlement Funds will be funded by "net funds," which are those funds less "expenses, costs, and attorney fees permitted by the [Amended] Settlement Agreement or Final Orders and Judgments." (*Id.* at 54146.)

2

Importantly, the ASA requires that "[a]ll interest earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds [] become and remain part of each such Fund and may be used to pay any fees and expenses incurred to implement this Settlement Agreement." (*Id.* at PageID.54158.)

On February 4, 2022, this Court granted in part and denied in part Plaintiffs' Motion for an Award of Attorney Fees and Reimbursement of Expenses. (ECF No. 2105.) This Court granted:

- an expense award of $7,147,802.36;
- a common benefit award of $39,641,625;
- a common benefit award of 17% of the value of the amount awarded to Claimants who retained counsel after August 20, 2020;
- a common benefit award of 17% of the value of the amount awarded to any Minor Claimant who was assisted by counsel after August 20, 2020;
- a common benefit award of 25% of the value of the amount awarded to any unrepresented Minor Claimant who does not retain their own counsel;
- a Class Counsel fee award in the amount of 25% of the value of the claims in the following two categories:
  - o the claims resolved through the Adult Exposure, Property Damage, and Business Economic Loss Subclasses; and

3

- o the aggregate claims involving a Minor who retained Class Counsel (or an Executive Committee firm) before August 20, 2020.

- a Class Counsel fee award in the amount of 10% of the value of the Programmatic Relief Fund;

- a Class Counsel fee award in the amount of 8% of the aggregate value of the claims involving a Minor where Class Counsel assisted or was retained by the Minor after August 20, 2020;

- an Individually Retained Counsel fee award in the amount of 25% of the value of the claims for Claimants that entered into retainer agreements with IRC before August 20, 2020;

- an Individually Retained Counsel fee award in the amount of 8% of the value of the claims for Claimants that entered into retainer agreements with IRC after August 20, 2020; and

- an Individually Retained Counsel fee award in the amount of 8% of the value of the claims where IRC "assist[ed] and advocat[ed] for a Minor in submitting a claim, whether retained or unretained," if the assistance took place after August 20, 2020.

The Court's Order specifies that the expense award of $7,147,802.36 and the common benefit award of $39,641,625 will be deducted from the total settlement amount of $626.25 million. (*Id.* at PageID.72090-72091.) Next, expenses and Administrative Fees and Costs[2] will be

---

[2] This Court's Order awarding attorneys' fees and costs defines "Administrative Fees and Costs" to include, "the fees and costs of the Claims Administrator Archer Systems, LLC, the Lien Resolution Administrator, the Master Guardian Ad Litem, the two Panel Guardians Ad Litem, the QSF Administrator, Trust Counsel, and the Special Master." (ECF No. 2105, PageID.72066 at FN13.)

4

deducted. (*Id.* at 729091.) Then, the remaining amount will be allocated to the Sub-Qualified Settlement Funds, Future Minor Fund, and the legionella death claims as set forth in Section 5.2 of the ASA, with 10% of the Programmatic Relief Fund set aside as fees. (*Id.*) Finally, the aggregate attorney fee/common benefit award in the amount of 25% shall be calculated and set aside as the attorney fee reserve for all components except the Programmatic Relief Fund. (*Id.*) The remaining amounts are the net funds available to Claimants. (*Id.*)

Plaintiffs' motion asks for four different distributions:

1. Class Plaintiffs' Counsel seek 10% of the value of the Programmatic Relief Sub-Qualified Settlement Fund.

2. Class and Individual Plaintiffs' Counsel seek a *pro rata* share of interest earned, to date, and that will accrue, on the $7,147,802.36 expense award, the $39,641,625 Common Benefit Award, and any other fees and expenses that shall be distributed to Plaintiffs' Counsel.

3. Class and Individual Plaintiffs' Counsel seek reimbursement of reasonable common benefit litigation expenses incurred since February 15, 2021.

4. Class and Individual Plaintiffs' Counsel seek a set aside of $5 million from the FWC Qualified Settlement Fund to pay for reasonable common benefit litigation expenses yet to be incurred in their litigation against the non-settling defendants.

# ARGUMENT

State Defendants oppose each category of Plaintiffs' Counsel's request because the distributions sought are either premature or run afoul of the terms of the ASA.

**I. Distributing 10% of the value of the Programmatic Relief Sub-Qualified Settlement Fund is premature under the terms of the ASA.**

Class Plaintiffs are correct that 10% of the value of the Programmatic Relief Sub-Qualified Settlement Fund has been awarded to them by this Court. (ECF No. 2105, PageID.72089.) But their request to have that amount distributed is premature as the correct amount to distribute cannot be determined at this time.

The ASA provides that the Sub-Qualified Settlement Funds will be funded using "net funds" from the FWC Qualified Settlement Fund. (ECF No. 1394-2, PageID.54146.) "Net funds" are equal to the amount of the FWC Qualified Settlement Fund less "expenses, costs, and attorney fees permitted by the Settlement Agreement or the Final Orders and Judgments. (*Id.*) The FWC Qualified Settlement Fund has been incurring, and continues to incur, expenses, costs, and fees.

In addition, the ASA states that the Sub-Qualified Settlement Funds, including the Programmatic Relief Sub-Qualified Settlement Fund, cannot be funded until two events have occurred: 1) a list of Claimants eligible to participate in the settlement is provided by the claims administrator; and 2) the claims administrator is advised that the settlement has become final. Though the latter event has occurred, the former has not. The claims administrator has not yet provided a list of claimants. Thus, the Programmatic Relief Sub-Qualified Settlement Fund cannot yet be funded. Meanwhile, the FWC Qualified Settlement Fund continues to incur expenses and fees, as well as earn interest. Until the claims administrator provides a list of Claimants, it is impossible to determine the value of the FWC Qualified Settlement Fund, much less the amount that should be used to fund each of the Sub-Qualified Settlement Fund. It follows that if it is impossible to determine the amount of funds that should be distributed into the Programmatic Relief Sub-Qualified Settlement Fund, then it is also impossible to determine 10% of that amount.

This analysis comports with this Court's Order awarding attorneys' fees and expenses. The Court's Order requires that the 10%

"shall be set aside as fees" *after* expenses and Administrative Fees and Costs are deducted and the remaining amount is allocated into the Sub-Qualified Settlement Funds. (ECF No. 2105, PageID.72091.) Again, the expenses, fees, and costs have not yet been deducted. Thus, it is premature to set aside the 10% fee awarded to Class Plaintiffs.

Class Plaintiffs' Counsel's request should also be denied because Counsel should not receive their share of the Programmatic Relief Fund before the "vulnerable population" that is to benefit from the fund receives their share. (ECF No. 2105, PageID.72105.)

II. **The *pro rata* interest award that Plaintiffs' Counsel seeks is not authorized under the Amended Settlement Agreement or this Court's order awarding attorneys' fees and expenses**.

Neither the ASA nor this Court's Order awarding Plaintiffs' Counsel its attorneys' fees and expenses provided that interest earned on the FWC Qualified Settlement Fund would be awarded to Plaintiffs' Counsel. To the contrary, the ASA requires that "[a]ll interest earned by the FWC Qualified Settlement Fund or the Sub-Qualified Settlement Funds [] become and remain part of each such Fund and may be used to pay any fees and expenses incurred to *implement* this Settlement Agreement." (ECF No. 1394-2, PageID.54158.) Plaintiffs' Counsel are

8

not being paid to implement the ASA. That job sits squarely with others, including the Special Master, Claims Administrator, Master Guardian Ad Litem, as well as this Court and the Genesee County Circuit Court. Indeed, this Court recognized their role of "implementing" the settlement by defining "Administrative Fees and Costs" as "the fees and costs of the Claims Administrator Archer Systems, LLC, the Lien Resolution Administrator, the Master Guardian Ad Litem, the two Panel Guardians Ad Litem, the QSF Administrator, Trust Counsel, and the Special Master." (ECF No. 2105, PageID.72066 at FN13.) If any interest remains after implementation of the settlement is complete, then those funds should enure to the benefit of the Claimants.

In the alternative, if any interest is now awarded to Plaintiffs' Counsel—despite this Court not originally awarding it and despite the ASA dictating that interest should be used to pay the costs of implementation—that award of interest should be limited to the percentages already set forth in this Court's Order awarding attorneys' fees and expenses. Claimants' Monetary Awards will be funded by the amount of net funds contributed to each Sub-Qualified Settlement

9

Fund. These net funds will be less the Administrative Costs and Fees spent implementing the settlement, as well as certain attorney fee awards, and the net funds will include any interest earned. Divvying up these net funds between the Claimants and Plaintiffs' Counsel will result in interest being awarded to Plaintiffs' Counsel on par with the amount of money awarded to Claimants.

### III. The request for reimbursement of reasonable common benefit litigation expenses exceeds the expenses authorized under the Amended Settlement Agreement and this Court's order awarding attorneys' fees and expenses.

Plaintiffs' Counsel seeks reimbursement of "reasonable common benefit expenses incurred since February 15, 2021." (ECF No. 2505, PageID.82923.) The $7,147,802.36 expense award that this Court granted relates to those expenses related to the settled cases that were incurred between the start of this litigation and February 15, 2021. (ECF No. 2104-2, PageID.72043-72045.)

Though State Defendants agree that Plaintiffs' Counsel can seek additional reimbursement for expenses incurred since February 15, 2021, such expenses must still comport with this Court's previous award of expenses and the ASA. (ECF No. 2105, PageID.72087). The reimbursement Plaintiffs' Counsel seeks here is a complete overreach.

10

Plaintiffs' Counsel seeks reimbursement of expenses "necessary to the continued prosecution of this case." (ECF No. 2505, PageID.82925.) Once the ASA was entered, there was no "continued prosecution" of the settled cases. Thus, Plaintiffs' Counsel seek reimbursement of expenses related to the continued prosecution of their cases against the non-settling defendants LAN and Veolia. Neither the ASA nor this Court's Order award expense reimbursement related to other litigation that was not settled under the ASA. Put simply, this settlement was <u>never intended</u> to be a litigation fund for Plaintiffs' Counsel. The Special Master's Report on time and expense submissions recognizes this by analyzing whether any of the time entries or expenses were related to the litigation of the four bellwether cases that were set to go to trial against LAN and Veolia in February 2022. (ECF No. 2104, PageID.72031-72032.) The Special Master conducted this examination of the bellwether cases for the exact reason that State Defendants oppose this request—because litigation expenses related to the ongoing litigation between the Plaintiffs, LAN, and Veolia are not reimbursable under the ASA.

11

## IV. The $5 million litigation fund set aside Plaintiffs' Counsel seeks is not authorized under the terms of the Amended Settlement Agreement.

Plaintiffs' Counsel's request that the Court set up a $5 million litigation fund to pay them for their litigation efforts against LAN and Veolia is an even more egregious overreach than the expense reimbursement. The ASA was never intended to fund Plaintiffs' Counsel's ongoing litigation efforts against the non-settling defendants. If any attorneys' fees or expenses will be paid in those lawsuits, it will have to be based on the awards granted or the settlement terms reached between the parties in those lawsuits. The QSF is a "settlement fund" established by the Settling Defendants under the ASA, not a litigation fund for Plaintiffs' Counsel's expenses pursuing non-settling defendants. Plaintiffs' motion (ECF No. 2505, PageID.82927), mentions the ASA's reference to reimbursement of expenses for "future litigation and administration expenses." This is clearly meant to be expenses related to the settlement only (i.e., expenses relating to objections to or an appeal of the ASA that needed to be litigated). Under no circumstance could this include Plaintiffs' Counsel's expenses for pursuing the non-settling defendants.

Respectfully submitted,

*/s/ Margaret A. Bettenhausen*
Margaret A. Bettenhausen (P75046)
Nathan A. Gambill (P75506)
Assistant Attorneys General
Environment, Natural Resources,
and Agriculture Division
Attorneys for the State Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bettenhausenm@michigan.gov
gambilln@michigan.gov

Dated: July 12, 2023

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

*/s/ Margaret A. Bettenhausen*
Margaret A. Bettenhausen (P75046)
Assistant Attorney General
Environment, Natural Resources,
and Agriculture Division
Attorney for State Defendants
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
bettenhausenm@michigan.gov

S:\CEPB3\ENRA_FlintWater\USDC-Waid (AG# 2016-0131314-A)\Pleadings\Final (Word Versions)\~In re Flint\State Defendants' Response in Opposition to Motion for Distribution of Attorneys' Fees 2023-07-12.docx

1