# Exhibit 1

|            |                                                    |
|------------|----------------------------------------------------|
| **From:**  | Mark Horan                                         |
| **To:**    | Eric Weber; Pauline Buonopane                      |
| **Subject:** | FW: Rasky-Baerlin contract                       |
| **Date:**  | Wednesday, August 17, 2016 10:40:28 AM             |
| **Attachments:** | Rasky Baerlein_contract_081616.doc           |

See below and attached. The retainer is against hours, which should be stipulated.

**From:** Colangelo, Karole [mailto:karole.colangelo@veolia.com]
**Sent:** Wednesday, August 17, 2016 10:18 AM
**To:** Mark Horan
**Subject:** Rasky-Baerlin contract

Mark: Here's the revised contract per our discussion.

$20,000/month retainer through December 31, 2016. We'll discuss approach for 2017 as we proceed into Fall.

Retainer will cover not only Flint crisis work, but positive proactive visibility efforts and potential public affairs work (to be discussed).

Any questions or concerns, please let me know. Once you agree, we'll get appropriate signatures on our side.

Thanks, Karole

**Karole Colangelo**
*Vice President, Communications*
*Municipal & Commercial Business*
**VEOLIA NORTH AMERICA**

tel
+1 312 552 2820
/ cell
+1 312 607 9688

200 E. Randolph Street, Suite 7900 / Chicago, IL 60601
karole.colangelo@veolia.com
www.veolianorthamerica.com



**AGREEMENT**

This **Agreement** is entered into as of September 1, 2016 ("Effective Date"), by and between ***Rasky/Baerlein Strategic Communications, Inc.***, a Massachusetts corporation and public relations agency, with its principal address 70 Franklin St., 3rd Floor, Boston, MA 02110 ("Agency"); and ***Veolia North America, LLC***, a Delaware limited liability company, with offices at 53 State Street, 14th Floor, Boston, MA 02109 ("Client").

**WHEREAS,** Agency owns and operates a public relations service company which designs and implements public relations programs and related services; and

**WHEREAS,** Client desires to employ the services of Agency to assist Client with designing and executing a media, public affairs and community relations marketing program (hereinafter referred to as "Program") in accordance with the terms herein.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth, Agency and Client agree as follows:

**1. Scope of Work**

1.1 Agency represents and warrants that (a) it is qualified to provide the services necessary to complete the Program in a good and workmanlike manner, (b) it has sufficient trained personnel to perform the Program and its obligations in accordance with the terms herein, and (c) that it shall meet all Program criteria, including without limitation, all Program specifications, deadlines and budgets as shall be mutually agreed upon by the parties.

1.2 The Program services to be provided by Agency hereunder shall include the services described in a Statement of Work in the form attached hereto as Exhibit A and is incorporated herein by reference.

1.3 Agency agrees that it shall perform such other related public relations services not covered under the specific Program projects listed in the Statement of Work, as Client may reasonably request in writing from time-to-time, in accordance with the terms herein.

1.4 Definitions. For the purposes of this Agreement, and any exhibits or appendices hereto, the following words and terms shall have the respective meanings set forth as follows:

    1.4.1 "Applicable Law" means any and all laws, rules, codes, guidelines, regulations, permits, determinations, judgments, and orders of, or issued by, any Government Agency having jurisdiction applicable to any activities associated with any of the obligations of the parties under this Agreement.

    1.4.2 "Entity" means a corporation, company, partnership, joint venture, sole proprietorship, or organization of any kind or nature whatsoever.

    1.4.3 "Government Agency" means any legislative, executive, judicial, or administrative department, board, commission, court, agency or other instrumentality of the federal, state or local government or political subdivision of the same.

    1.4.4 "Government Representative" means a Government Agency official, employee, representative, consultant, or agent.

**2. Compensation and Method of Billing**

2.1 The compensation for the services described in each Program project will be included in the Statement of Work. For other public relations services not covered under the specific

     Program projects listed in the Statement(s) of Work they will be billed at $250.00 per hour, or such other hourly rate(s) as the parties agree to in writing.

2.2  Agency shall bill Client on the first (1st) day of each month.  Client shall pay Agency's submitted invoice within sixty (60) days following Client's receipt of Agency's invoice.

**3.  Confidentiality**

3.1  Agency shall not use and shall keep secret and confidential and shall not disclose other than on a confidential basis to such of its employees that have a need to know such information to perform the services hereunder, any and all information heretofore or hereafter disclosed to it by Client in connection with this Agreement or the services to be performed hereunder, including such information that is labeled confidential or proprietary or, for information disclosed orally, if it is identified as confidential or proprietary at the time of disclosure, and all other information that the parties knew, or reasonably should have known, was the when such information is specifically identified by Client, in writing, as confidential information ("Confidential Information").

3.2  Upon the expiration or termination of this Agreement, Agency shall immediately return to Client any and all Confidential Information and all originals and/or copies of any writing, document, memorandum, sketch, drawing, plan photograph, electronic media or other tangible item containing any information provided to Agency by Client or generated by Agency on behalf of Client during the term of this Agreement.

3.3  The parties entered into a separate Nondisclosure Agreement, dated March 29, 2016 ("NDA"), which shall become part of this Agreement. Where similar provisions are contained in this Section and the NDA, they are intended to supplement one another.  In the event of a conflict between this Section and the NDA, the NDA shall prevail, except with regard to Section 3.4.

3.4  The above obligation of confidentiality shall survive for a period of seven (7) years following the termination or expiration of this Agreement.

**4.  Indemnification**

4.1  It is understood that Agency cannot undertake to verify facts supplied by Client.  Client hereby agrees to indemnify and hold harmless Agency from and against all claims, actions, suits, proceedings, liabilities, damages, costs and expenses of every kind and nature whatsoever, which are incurred solely by reason of Agency's use, in a manner approved by Client for use by Agency, of:

    a.  information or data supplied by Client to Agency; or
    b.  promotional, advertising, publicity, or public relations matter and material supplied by Client to Agency.

    Agency hereby agrees to give Client prompt and timely notice of any such claim, action, suit or proceeding made or brought against it to permit Client to defend any claim, action, suit or proceeding and to cooperate in the defense thereof.  Agency further agrees that Client shall have the sole and exclusive control of any such defense, including without limitation the selection of counsel and the sole right to compromise or settle any such claims.

4.2  Except as specifically set forth in Sections 4.1, a. and b. above, Agency agrees to indemnify, defend and hold harmless Client from any claims including, without limitation, claims involving copyright infringement, violation of personal rights of privacy, misappropriation of ideas or rights, literary piracy or plagiarism and other damages, losses, fines or expenses, including reasonable attorney's fees, which may arise from Agency's willful acts or

negligence in the performance of services under this Agreement, provided, Agency shall be liable only for that percentage of total damages that corresponds to its percentage of total negligence or fault.

**5.   Intellectual Property Rights**

5.1   All plans and ideas submitted by Agency and accepted by Client for articles, programs, and implementing materials, including, but not limited to, copy and art, shall be the sole and exclusive property of Client and shall be deemed "work made for hire" and may not be used, transferred, sold or otherwise conveyed by Agency, either directly or indirectly, for any reason whatsoever except for the purposes set forth herein. Agency further agrees to provide for all necessary licenses for third party photographs utilized by Agency in the performance of its obligations hereunder. Upon the expiration or termination of this Agreement, all such plans and materials then in progress shall become the property of Client in accordance with the terms set forth herein.

5.2   Agency will cooperate with Client in any manner reasonably requested by Client to assist Client in obtaining copyright protection for any materials created by Agency on Client's behalf during the term of this Agreement.  Agency further agrees that it shall not gain any proprietary rights to any copyright or trademark owned by Client by operation of this Agreement or otherwise.

**6.   Term and Termination**

6.1   The initial term of this Agreement will commence on the Effective Date, and will continue until September 1, 2017, unless amended or terminated sooner.

6.2   This Agreement may be terminated by Client at any time for Agency's default or breach of its obligations herein, upon written notice to Agency; provided, however, that Agency will have thirty (30) days to correct such breach.  Contract termination may be immediate in instances where Agency's activities are determined by Client to be detrimental to Client's business reputation and goodwill or if any ethics, rule, regulation or other law is violated by Agency.

6.3   Either party shall have the absolute discretionary right to terminate this Agreement, with or without cause, by giving written notice of such termination not less than thirty (30) days prior to the effective date of such termination.

6.4   This Agreement may be renewed by Client prior to the expiration of this Agreement.  Any such renewal shall be in writing and signed by both parties.

**7.   Limitation of Liability**

Neither party nor their affiliated companies, nor its officers, agents and employees or contractors, shall be liable to the other in any action or claim for consequential or special damages, loss of profits, loss of opportunity, loss of product or loss of use.  Any protection against liability for losses or damages afforded any individual or entity by these terms shall apply whether the action in which recovery of damages sought is based on contract, tort (including sole, concurrent or other negligence and strict liability of any protected individual or entity), statute or otherwise.  To the extent permitted by law, any statutory remedies which are inconsistent with these terms are waived.

**8.   General Provisions**

8.1   This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware.

8.2  This Agreement shall be binding upon the successors and assigns of each of the parties, but neither party shall assign this Agreement without the prior written consent of the other party.

8.3  Any notice given under this Agreement shall be in writing and sent (i) by registered or certified mail, postage prepaid, return receipt requested, or (ii) by any other commercial delivery service which delivers to the noticed destination and provides proof of delivery to the sender.  Notice may also be sent by e-mail provided that confirming notice according to one of the methods of the preceding sentence is sent within three (3) days after the e-mail transmission.  All notices will be effective when first received at the following addresses:

**If to Agency:**  Rasky Baerlein Strategic Communications, Inc.
70 Franklin St.
Boston, MA 02110
Attn:  Joseph Baerlein, President

**If to Client:**  Veolia North America , LLC
700 E. Butterfield Rd., Suite 201
Lombard, IL 60148
Attn:  VP Communications, M&C Business

**With a required sent copy to:**

Veolia North America, LLC
53 State Street, 14th Floor
Boston, MA 02109
Attn:  General Counsel
E-mail: general.counselNA@veolia.com

8.4  This Agreement sets forth the entire agreement between the parties as to the subject matter of this Agreement, and supersedes all prior agreements, commitments, representations, writings and discussions between them, whether written or oral, with respect to the subject matter hereof. Except as otherwise expressly provided in this Agreement, this Agreement may not be amended or terminated except in writing and signed by duly authorized representatives of each party.

8.5  If any term, provision, convenient or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the reminder of the provisions shall remain in full force and effect and in no way be affected, impaired or invalidated.

8.6  It is understood that the relationship of Agency to Client is that of independent contractor and nothing herein shall be construed as making either party the partner, joint venture, agent, legal representative or employer/employee of the other.  Neither party shall have the authority to make any statements, representations or commitments of any kind, nor to take any action, which shall be binding on the other, except as provided for herein or authorized in writing by the party to be bound.

8.7  If any litigation is necessary to enforce the terms of this Agreement, the prevailing party shall be additionally entitled to reasonable attorneys' fees and court costs which are directly attributed to such litigation.

8.8   Nothing in this Agreement shall be construed to create in any third party, or in favor of any third party, any right(s), licenses(s), power(s), or privilege(s).

8.9  The failure of either party to enforce at anytime any of the provisions hereof shall not be construed to be a waiver thereof or of the right of such party thereafter to enforce the same.

8.10  The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent and no rule of law shall be applied to construe this Agreement for or against either party hereto.

8.11 Agency agrees that Agency shall not make any public announcements about Client, the Program, or any other business matter related to Client, without the prior written agreement of Client. The covenant contained in this Section shall survive the termination of this Agreement.

8.12 Agency shall obtain and maintain at its own expense the following minimum limits of insurance, with insurance companies rated A-VII or higher by A.M. Best's, to cover the risk of losses associated with this Agreement:

| Coverage | Limits |
| --- | --- |
| (a) Workers Compensation, occupational, disability benefits and similar employee benefits insurance | Statutory |
| (b) Employer's Liability | $1,000,000 each accident; $1,000,000 each employee; $1,000,000 policy limit |
| (c) Commercial General Liability including contractual liability | $1,000,000 each occurrence for property damage and bodily injury (PD/BI); $1,000,000 general aggregate; $1,000,000 products/completed operations aggregate |
| (d) Automobile Liability Owned, hired and non-owned autos | $1,000,000 Combined Single Limits – each accident |
| (e) Excess Liability | May be utilized to meet limits outlined above |
| (f) Property | Agency shall be solely responsible for protecting and insuring all property owned or leased by Agency during the term of this Agreement |
| (g) Professional Liability (Errors & Omissions) | $1,000,000 each claim/policy limit |

In the event that the state where the services are to be provided allows an employer to opt out of Workers Compensation coverage, Agency shall nevertheless obtain a Workers Compensation policy complying in all respects with this provision.

Upon execution of this Agreement, and at each insurance policy renewal throughout the term of this Agreement, Agency will provide Client with an ACORD certificate of insurance evidencing that the above described coverages are in full force and effect.  Agency will name Client as additional insured and remove the insured versus insured provision with respect to coverages (c), (d) and (e) above.  All policies will be primary and non-contributory, provide a full waiver of the insurer's right of subrogation in favor of Client and/or any subcontractor with respect to claims that are covered or should have been covered by valid and collectible insurance provided hereunder and said waiver will extend to any deductibles, co-insurance or other forms of retention.  All deductibles, co-insurance, or other forms of retention are the sole responsibility of Agency.  Agency will not permit any cancellation or non-renewal in the insurance coverage to be provided hereunder without thirty (30) days' written notice to Client.

All policies shall be issued on occurrence-based forms, except for coverage (g), which may be issued on a claims-made form.  All claims-made policies will at least be retroactive to the earlier of the date of this Agreement or the commencement of Agency providing services and shall be maintained for three (3) years after the expiration or termination of this Agreement.

These insurance requirements will not be construed in any matter as waiving, restricting or limiting Client's rights or Agency's obligations under this Agreement.  Client does not represent that coverage or limits herein will be adequate to protect Agency.  Agency remains responsible for any liability not paid by insurance including deductibles, co-insurance and other forms of retention.

**9.  Non-Solicitation**

During the term of this Agreement, and any extension hereof, and for a period of six (6) months following expiration or termination of this Agreement, neither party will directly or indirectly solicit for employment, hire or retain any employee (past or present) of the other party without the prior written approval of the other party.

**10. Outside Vendors**

If Agency is authorized to act as an agent for Client to enter into contracts on Client's behalf with outside vendors (such as printers, market research firms, etc.), the standard agency mark-up for management of outside vendors is ten percent (10%).  Agency shall not enter into contracts on behalf of Client or otherwise act as agent of Client for any purpose except as specifically approved in advance, in writing by Client.

**11. Mediation**

If, despite good faith efforts, the parties are unable to resolve a dispute or claim arising out of or relating to this Agreement or its breach, termination or validity, the parties will first seek to agree on a forum for non-binding mediation to be held in a mutually agreeable location.

Any mediation will be kept confidential and the existence of the proceeding and any element thereof (including but not limited to documents submitted or exchanged) will not be disclosed beyond the parties, their counsel and any person necessary to the conduct of the proceeding, except as may be lawfully required in judicial proceedings.

All communications made in connection with the attempted resolution shall be treated as settlement negotiations and shall be inadmissible in any litigation or other proceeding.

**12. Business Practices**

In performing the services, Agency agrees to comply with the business practices set forth in Exhibit B.

     **IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and date first written above.

| **CLIENT: VEOLIA NORTH AMERICA, LLC** | **AGENCY:  RASKY/BAERLEIN STRATEGIC COMMUNICATIONS, INC.** |
|---|---|
| By: _____ | By: _____ |
| Name: | Name: |
| Title: | Title: |
| Date: | Date: |

<mark>Exhibit A</mark>

## STATEMENT OF WORK
## to

**Agreement entered into between Veolia North America, LLC, ("Client") and Rasky/Baerlein Strategic Communications, Inc. ("Agency "), dated September 1, 2016**

**Program Name:** Flint crisis work and proactive PR support

**Program Overview:** PR support related to the Flint media crisis. Ongoing media relations support for proactive visibility efforts.

**Scope of Work:**
Crisis/PR counsel and support related to Flint
Media relations
Content and message development

**Dates Program to be Performed:**

Agency shall start the Program on or about September 1, 2016 and shall complete the Program no later than December 31, 2016. Both parties will evaluate the terms of the retainer before December 31, 2016. Retainer relationship will be either be retained or altered to project-budget basis on January 1, 2017.

**Budget:**
We shall pay a retainer of $20,000/month. Agency shall not exceed the above budget without Client's prior written approval.

**Effective Date: September 1, 2016**

**IN WITNESS WHEREOF,** the parties have executed this Statement of Work as of the Effective Date.

| | |
|---|---|
| **VEOLIA NORTH AMERICA, LLC** | **RASKY/BAERLEIN STRATEGIC COMMUNICATIONS, INC.** |
| ("CLIENT") | ("AGENCY") |
| By: _____ | By: _____ |
| Typed Name: | Typed Name: |

7

Title: Title:

Date: Date:

8

**EXHIBIT B**

**BUSINESS PRACTICES**

Client expects that Agency will abide by the highest ethical standards in performing the public relations services. Agency represents, warrants and agrees that:

1. Agency is familiar with and shall comply with Applicable Law and procurement requirements and documents issued by any Government Agency which are applicable to Client. Client has advised Agency that Client does not expressly or impliedly authorize Agency to engage in any illegal, unlawful or unethical conduct.

2. Although modest and reasonable business entertainment, consistent with commonly accepted practice and Applicable Law, may be appropriate in certain instances in fostering communication and good will, Client strongly discourages lavish entertainment.

3. Agency shall not make any commitment or promise to any person of future employment by Client or its affiliates of such person.

4. Agency shall not hire as an employee, agent or independent contractor any member of the immediate family of any Government Representative who is or may be reasonably expected to be involved in rendering decisions with respect to the services.

5. Agency shall keep and maintain appropriate documentation and records of all activities and expenditures made in the performance of the services, as required to comply with Applicable Law and applicable procurement requirements and documents. No undisclosed or unrecorded fund or asset shall be established for any purpose that is directly or indirectly related to the matters for which Agency is engaged. Documentary support of all payments or other related business transactions must be complete and accurate, clearly defining the nature and purpose of each transaction. Such records shall be subject to inspection and audit by Client and its representatives at any time.

6. Agency is not debarred, suspended or proposed for debarment from doing business with any Government Agency.

7. Agency is familiar with and shall comply with Applicable Law regarding the conduct of lobbying and political consulting activities, procurements, conflicts of interest, and the offering of gifts, gratuities, political contributions, travel and/or entertainment to Government Representatives. Any fees, expenses, or other payments payable or paid under this Agreement will be received and applied for Agency's own account and that no other persons or entities, including any Government Representatives, have or will have any interest or benefit therein or therefrom. No part of any fees, expenses, or other payments received by or payable to Agency from Client will be, directly or indirectly, paid (whether in cash or in kind), offered, or promised to, shared with, or used to purchase a gift for, provide entertainment to, or make a political contribution for the benefit of (a) any Government Representatives, (b) any political parties, committees, or candidates, or (c) any other parties, persons, or Entities, in violation of Applicable Law or for the purpose of (x) influencing any acts or decisions to be made in any such person's or Entity's official capacity, (y) inducing any Government Representatives to use their influence on any other Government Representatives acting in an official capacity in relation to any Client projects, bids, or contracts, or (z) inducing such parties, persons, or Entities to act favorably with respect to any actions which might benefit Client. Agency acknowledges that Agency will and is not authorized to (a) offer or give any Government Representatives any cash, property, services, loans, gifts, entertainment, transportation

  and/or anything else of value (i) in exchange for, or with the purpose or intent of influencing, any recommendation, decision or action relating to the selection or award of any contracts to Client or any other governmental action or (ii) which such Government Representatives are prohibited from receiving; (iii) which is otherwise illegal; or (iv) which would require the reporting of such lawful expenditures to a Government Agency with identification of, or reference to, Client, unless the prior written approval of Client has been obtained to make such lawful expenditures; (b) exert or utilize any corrupt or unlawful influence to secure the award of any contracts to Client; (c) make any political contributions on behalf of Client; or (d) make or receive any illegal payments, bribes, kickbacks, fee splits, payoffs or any similar payments.

8. Agency will make no payments to any intermediaries, brokers, agents, or other persons or entities when it would be reasonable to assume that such a person or Entity would or may use such amounts to make bribes, payoffs or other illegal payments.  Any and all payments made to third parties will be in usual and customary amounts for legitimate services rendered.  Agency will not use any persons or entities as a means of circumventing the representations, warranties, restrictions and prohibitions contained in this Agreement.

9. Agency is committed to enforcing the mandates of Applicable Law that (a) forbid unlawful discrimination based on an individual's age, ancestry, citizenship, color, creed, disability, handicap, marital status, national origin, nationality, parental or familial status, pregnancy, race, religion, sex, sexual orientation, veteran status or other protected group status, (b) prohibit unlawful harassment, including sexual and racial harassment, and (c) require affirmative action.  While providing services for Client, Agency shall strictly comply with Applicable Law regarding unlawful harassment, including sexual and racial harassment, and upon reasonable request certify the same to Client.

10. Agency will not buy or sell the securities of Client or its affiliates while in possession of material, nonpublic information regarding Client or its affiliates.

11. By entering into this Agreement and by fully and faithfully performing the services, Agency does not and will not breach or be in violation of any statutory, common law, regulatory, contractual or other obligation imposed on Agency or any other agreement to which Agency is a party or is bound. Agency is not subject to any duties to or restrictions with respect to any Government Agencies or any other persons or entities that are in conflict with, or that would prevent Agency from performing, Agency's responsibilities hereunder.

12. The representations and warranties made by Agency in this Agreement are true and accurate as of the execution of this Agreement, shall remain true and accurate throughout the term of this Agreement, and shall survive the termination of this Agreement.  Agency shall promptly notify Client of any developments or changes that would make any of the foregoing representations and warranties untrue or inaccurate in any respect.