# Exhibit 2



# NONDISCLOSURE AGREEMENT

This Nondisclosure Agreement (this "**Agreement**") is entered into between **VEOLIA NORTH AMERICA, LLC** ("**VEOLIA**") and **RASKY/BAERLEIN STRATEGIC COMMUNICATIONS, INC.** ("**OTHER PARTY**") as of March 29, 2016 (the "**Effective Date**"), to protect the confidentiality of certain Confidential Information of VEOLIA to be disclosed under this Agreement solely for use evaluating or pursuing a business relationship between the parties (the "**Permitted Use**"). VEOLIA and Other Party may be referred to herein individually as a "**Party**" and collectively as the "**Parties**."

1. **Confidential Information.** "Confidential Information" or "CI" of VEOLIA will mean any and all technical and non-technical information disclosed by VEOLIA to Other Party during the term of this Agreement and labeled at the time of such disclosure as "Confidential" or bearing a similar legend, and all other information that Other Party knew, or reasonably should have known, was the CI of VEOLIA. "CI" may include without limitation: (i) trade secrets, inventions, ideas, processes, computer source and object code, formulae, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs, and techniques; (ii) information regarding products, plans for research and development, marketing and business plans, budgets, financial statements, contracts, prices, suppliers, and customers; (iii) information regarding the skills and compensation of VEOLIA's employees, contractors, and other agents; and (iv) the existence of any business discussions, negotiations, or agreements between VEOLIA and Other Party or any third party.

2. **Confidentiality Obligations.** Subject to the section titled Exclusions, Other Party agrees that it will (i) hold in confidence and not disclose to any third party any CI of VEOLIA, except as approved in writing by VEOLIA; (ii) protect such CI with at least the same degree of care that Other Party uses to protect its own CI, but in no case, less than reasonable care; (iii) use VEOLIA's CI for no purpose other than the Permitted Use; (iv) limit access to VEOLIA's CI to those of Other Party's employees or authorized representatives having a need to know who have signed confidentiality agreements containing, or are otherwise bound by, confidentiality obligations at least as restrictive as those contained herein; and (v) immediately notify VEOLIA upon discovery of any loss or unauthorized disclosure of VEOLIA's CI. VEOLIA agrees that it will not communicate any information to Other Party in violation of the proprietary rights of any third party.

3. **Exclusions.** Other Party has no obligations under this Agreement with respect to any portion of VEOLIA's CI if Other Party can demonstrate with competent evidence that such portion (i) was in the public domain at the time it was communicated to Other Party by VEOLIA; (ii) entered the public domain subsequent to the time it was communicated to Other Party by VEOLIA, through no fault of Other Party; (iii) was in Other Party's possession free of any obligation of confidence prior to the time it was communicated to Other Party by VEOLIA; (iv) was rightfully communicated to Other Party free of any obligation of confidence subsequent to the time it was communicated by VEOLIA; (v) was developed by employees or agents of Other Party independently of and without reference to any information communicated to Other Party by VEOLIA; or (vi) was communicated by VEOLIA to an unaffiliated third party free of any obligation of confidence. Notwithstanding the above, Other Party may disclose VEOLIA's CI, without violating the obligations of this Agreement, to the extent such disclosure is required by a valid order of a court or other governmental body having jurisdiction, *provided that* Other Party gives VEOLIA reasonable prior written notice of such disclosure and makes a reasonable effort to obtain, or to assist VEOLIA in obtaining, a protective order preventing or limiting the disclosure and/or requiring that the CI so disclosed be used only for the purposes for which the law or regulation required, or for which the order was issued.

4. **No License Granted.** CI is and shall remain the sole property of VEOLIA. Other Party recognizes and agrees that nothing contained in this Agreement shall be construed as granting any property rights, by license or otherwise, to any of VEOLIA's CI, or to any invention or any patent, copyright, trademark, or other intellectual property right that has issued or that may issue, based on such CI. Other Party shall not make, have made, use or sell for any purpose any product or other item using, incorporating or derived from any of VEOLIA's CI. Neither this Agreement nor the disclosure of any CI hereunder shall result in any obligation on the part of either Party to enter into any further agreement with the other, license any products or services to the other, or to require VEOLIA to disclose any particular CI. Nothing in this Agreement creates or shall be deemed to create any employment, joint venture, or agency between the Parties.

5. **Restrictions.** Other Party will not reproduce VEOLIA's CI in any form except as required for the Permitted Use. Any copy of any of VEOLIA's CI remains the property of VEOLIA and will contain all confidential or proprietary

notices or legends that appear on the original, unless otherwise authorized in writing by VEOLIA. Other Party acknowledges that VEOLIA's software programs contain valuable CI and agrees that it will not modify, reverse engineer, decompile, create other works from, or disassemble any software programs contained in the CI unless otherwise authorized in writing by VEOLIA.

**6. Term; Ongoing Obligations.** This Agreement will continue unless terminated by either Party at any time upon thirty (30) days written notice to the other Party. Each Party's obligations under this Agreement will survive termination of this Agreement and will continue in full force and effect with respect to CI of VEOLIA for three (3) years from the date of disclosure of such CI. All tangible information furnished hereunder by VEOLIA to Other Party shall remain the property of VEOLIA. Upon termination of this Agreement, or upon written request of VEOLIA, Other Party will (i) cease any use of VEOLIA's CI; and (ii) promptly return to VEOLIA all documents and other tangible materials containing any portion of, or summarizing, VEOLIA's CI and all copies thereof. At VEOLIA's request, an officer of Other Party will provide a certificate attesting to compliance with the foregoing.

**7. Disclaimer.** VEOLIA IS PROVIDING CI ON AN "AS IS" BASIS FOR USE BY OTHER PARTY AT ITS OWN RISK. VEOLIA DISCLAIMS ALL WARRANTIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE.

**8. GENERAL PROVISIONS.**

**8.1 Governing Law and Venue.** This Agreement and any action related thereto will be governed and interpreted by and under the laws of the State of Illinois, without giving effect to any conflicts of laws principles that require the application of the law of a different state. Each Party hereby expressly consents to personal jurisdiction and venue in the state and federal courts of Cook County, Illinois in connection with any disputes arising out of this Agreement.

**8.2 Severability.** If any provision of this Agreement is, for any reason, held to be invalid or unenforceable, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

**8.3 No Assignment.** Neither Party will assign or transfer any rights or obligations under this Agreement without the prior written consent of the other Party and any attempted assignment, subcontract, delegation, or transfer in violation of the foregoing will be null and void, except that a Party may assign this Agreement without such consent to its successor in interest by way of merger, acquisition or sale of all or substantially all of its assets. The terms of this Agreement shall be binding upon assignees.

**8.4 Notices.** Each Party must deliver all notices or other communications required or permitted under this Agreement in writing to the other Party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested), or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, any such notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, any such notice shall be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each Party may change its address for receipt of notice by giving notice of such change to the other Party.

**8.5 Injunctive Relief.** Each Party acknowledges that its breach of this Agreement may cause irreparable damage to the other Party for which monetary damages would not be an adequate remedy and agrees that the other Party will be entitled to seek injunctive relief under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction. The rights and remedies provided to each Party herein are cumulative and in addition to any other rights and remedies available to such Party at law or in equity.

**8.6 Waiver.** Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of any other provision or of such provision on any other occasion.

**8.7 Export.** Other Party agrees not to export, re-export, or transfer, directly or indirectly, any U.S. technical data acquired pursuant to this Agreement, or any products utilizing such data, in violation of the United States export laws or regulations.

**8.8 Entire Agreement.** This Agreement is the final, complete and exclusive agreement of the Parties with respect to the subject matter hereof and supersedes and merges all prior discussions between the Parties with respect to such matter. No modification of, or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by the Party to be charged (which, in the case of VEOLIA, shall require the signature of a duly authorized representative).

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed as of the Effective Date, or if the date is not completed above, on the date of the last signature set forth below.

**VEOLIA NORTH AMERICA, LLC (VEOLIA)**
*Valid only if signed by a duly authorized representative of VEOLIA*

By: _____
    Authorized Signature

Name: SCOTT A. EDWARDS

Title: SVP COMMUNICATIONS

Date: 3/30/2016

Address:
200 E. Randolph Street, Suite 7900
Chicago, IL 60601


**RASKY/BAERLEIN STRATEGIC COMMUNICATIONS, INC. (OTHER PARTY)**

By: _____
    Authorized Signature

Name: BRIAN J. TOMLINSON

Title: C.F.O.

Date: 3/30/16

Address:
70 Franklin Street, 3rd Floor
Boston, MA 02110