# Exhibit 1

CAMPBELL CONROY & O'NEIL
PROFESSIONAL CORPORATION



1 CONSTITUTION WHARF
SUITE 310
BOSTON, MA 02129
TEL: (617) 241 3000
FAX: (617) 241 5115

JAMES M. CAMPBELL
(617) 241-3060

**PRIVILEGED AND CONFIDENTIAL**

December 3, 2019

Via Email and Federal Express

Mercury Public Affairs LLC
c/o Mr. Michael McKeon
200 Varick Street, Suite 600
New York, New York 10014

Re:   Engagement Letter

Dear Mr. McKeon:

As we have discussed, The Guardian newspaper has asked for comments on a forthcoming story about the litigation that has arisen from the Flint Water Crisis. The litigation involves, among other things, claims brought by individuals, businesses, and the Michigan Attorney General claiming various alleged damages associated with the use of water sourced from the Flint River starting in 2014 (the "Matter").

This engagement letter memorializes an agreement ("Agreement") between Campbell Conroy & O'Neil, P.C. ("CCO" or "the Firm"), in its role as legal counsel for and on behalf of Veolia North America, Inc., Veolia North America, LLC, and Veolia Water North America Operating Services, LLC (the "Client"), and Mercury Public Affairs LLC ("Mercury"). Mercury is retained to advise CCO with respect to CCO's provision of legal advice regarding public relations and strategic issues related to responding to questions from The Guardian and to provide similar guidance with respect to any future interactions with The Guardian (or other press outlets) that are related to the Matter and, more generally, to assist CCO with the defense of the case (the "Engagement"). The Client will be responsible for the payment of Mercury's fees and expenses, but Mercury will submit its invoices to CCO for review and approval.

**Terms and Conditions of Engagement**

1.   Scope of Work.  The scope of the work is generally described above. In addition, CCO may ask Mercury to provide additional assistance on additional projects in support of providing legal advice, which will be specifically agreed to in writing. Additional services that CCO may request from Mercury in conjunction with the scope of the Matter will refer back to this Engagement letter for the applicable terms and conditions.



**PRIVILEGED AND CONFIDENTIAL**

2.  <u>Fees and Expenses</u>. Mercury will send monthly bills to:

> James M. Campbell
> Campbell Conroy & O'Neil, P.C.
> 1 Constitution Wharf, Suite 310
> Boston, MA 02129
> Tel: (617) 241-3015
> jmcampbell@campbell-trial-lawyers.com

Mercury's monthly bills will include fees and expenses. The bills will provide a description of tasks performed. To the extent CCO or the Client request additional detail or clarification of any bills, Mercury will provide such detail subject to the time limitations set forth under the Payment terms below. You will be compensated for your work on every specific assignment on the basis of a lump-sum fixed amount, the amount and payment terms of which will be agreed to for each assignment.

Mercury's bills will also include expenses, listed by category. The following categories of expenses shall not be included as reimbursable expenses for purposes of this Engagement: word processing, overtime, local postage, telephone calls, computer costs, conference room rentals, conflicts-checking, and general overhead expenses. Actual out-of-pocket costs for online research, research and data subscriptions, and data licensing fees will be reimbursed as expenses provided that these expenses are incurred by Mercury solely in support of its services in the Matter. No such purchases will be made before obtaining prior approval. All expenses of $500 or more shall be incurred only with prior written approval by CCO.

Mercury will submit invoices on the first day of each month. Payment shall be due within thirty days from receipt of the invoice.

3.  <u>Term and Termination</u>. The purpose of this letter is to memorialize our already existing Agreement to provide the services described herein, and this Agreement shall continue in effect on a month-to-month basis unless terminated by either party on thirty (30) days prior written notice.

4.  <u>Conflicts Check</u>. Mercury has undertaken a reasonable review of its records to determine all actual or potential conflicts of interest related to this Engagement and concluded that there exists no conflict that would, in Mercury's opinion, prevent it from accepting and performing this Engagement. During the pendency of this Agreement, Mercury will not perform any work on behalf of any of the parties in the Matter other than Veolia, unless said work for defendants or counsel is unrelated to and separate from work involving the Matter. Mercury agrees that it will not take on any conflicting engagement related to the Matter while it is engaged by CCO to assist the Client during the pendency of the Matter, up to and including the date on which a final judgment is rendered in the Matter. If, in Mercury's opinion, a conflict arises during the course of Mercury's performance of this Agreement, Mercury will notify CCO in writing and will work with CCO to attempt to obtain any necessary waiver of the conflict or set up an ethical wall between



**PRIVILEGED AND CONFIDENTIAL**

work on this Matter and any conflicting matter. The Client will not be charged for any fees or costs relating to Mercury's activity toward resolving such conflict, and Client's and CCO's waiver of conflict or approval of setting up an ethical wall will not be unreasonably withheld.

5.   <u>Privileged Communications and Work Product</u>. The parties intend for Mercury to provide services that will assist with and/or are reasonably necessary for CCO's provision of legal services and advice to the Client. In furtherance of rendering its services to CCO, Mercury may participate in communications, or be provided with documents, that are subject to the attorney-client privilege, the work-product doctrine, or other legal bases that protect communications and/or documents from disclosure. Moreover, the parties intend any materials developed, edited, or otherwise created by Mercury pursuant to this Engagement to be protected from disclosure to the full extent permitted by law. Without permission from or at the direction of CCO, Mercury shall not communicate directly with anyone form the Client rearing the work pursuant to this Engagement, either orally or in writing, other than members of the Client legal department.

6.   <u>Confidentiality</u>. Mercury will treat as Highly Confidential Client Information ("HCCI"): (a) all documents and information received from the Client and/or CCO (whether disclosed before, on, or after the date of the document), whether oral or written, and regardless of the manner or form of disclosure; (b) all notes, reports, memoranda, analyses, compilations, studies, interpretations or other documents or materials, in whatever medium or form, that were prepared by or for Mercury and that contain, reflect, or are based upon, in whole or in part, information received from the Client and/or CCO; and (c) the fact of this Engagement and the existence of this Agreement.

Mercury agrees to receive and hold HCCI in strictest confidence, to take all reasonable steps to protect the confidentiality of all HCCI, and to prevent the unauthorized disclosure of HCCI to third parties. Mercury also agrees to apply, at a minimum, the same level of security measures to the HCCI that it applies to its own most highly confidential information.

This confidentiality obligation will not cover documents and information that (a) Mercury has developed independently without the use of HCCI and not obtained in connection with this Engagement; (b) are or become part of the public domain (other than as a result of a breach by Mercury of its obligations under this Agreement); (c) Mercury can provide conclusive evidence that it already knew the HCCI, or was in possession of HCCI that it obtained from a non-confidential source at the time it received the HCCI; (d) are given to Mercury by a third party who is not in breach of any confidentiality obligation; (e) is used or disclosed with the prior written consent of CCO or of the Client; or (f) are legally required to be disclosed pursuant to an order from a governmental entity with competent jurisdiction to compel such disclosure. Mercury will maintain the confidentiality of all HCCI obtained, or analyses developed from HCCI, and it will use HCCI solely in connection with this Engagement.

Mercury may disclose HCCI only if required to do so by law or by an order from a governmental entity with competent authority to compel such disclosure. If access to any of the theories, opinions, facts, data, information, documents or other the materials in Mercury's



**PRIVILEGED AND CONFIDENTIAL**

possession relating to this Engagement is sought by a third party, Mercury will promptly notify CCO (if it is legally able to do so), tender to CCO its proposed response to such request, permit CCO to handle the request on its behalf (if CCO desires to do so), and cooperate with CCO concerning the response to the disclosure request.

Mercury agrees to ensure that the name of every person who works on this Engagement (including Mercury employees and any third parties Mercury may retain during the course of this Engagement) is disclosed to CCO in writing and such person shall not receive any HCCI until Mercury has received CCO's written approval and has agreed to adhere to the terms of the confidentiality obligations set forth in this Agreement, evidenced by signing a copy of this Confidentiality Agreement.

7.  **Dispute Resolution.** All claims and disputes arising out of or relating to this Agreement or the breach thereof, shall be finally and solely resolved by binding arbitration administered by the American Arbitration Association ("the AAA") in accordance with its Commercial Arbitration Rules (the "Rules"). The Federal Arbitration Act applies to this arbitration agreement. The arbitration will be conducted in the English language. If the amount in controversy exceeds $500,000, the arbitration will be conducted by a panel of three arbitrators (one arbitrator selected by CCO, one arbitrator selected by Mercury, and the third arbitrator selected by the other two arbitrators; otherwise the arbitration will be conducted by a single arbitrator appointed by the AAA in accordance with the Rules. The arbitrator(s) shall apply all privileges and protections (such as the attorney-client privilege and attorney-work product doctrine) recognized by relevant laws and the federal rules of evidence and civil procedure. The place of arbitration shall be New York City, New York, unless the Parties agree otherwise in a signed writing. The arbitrator(s) shall have the power to grant any remedy or relief that they deem just and equitable, including but not limited to injunctive relief, whether interim and/or final, and any provisional measures ordered by the arbitrators may be enforced by any court of competent jurisdiction. Notwithstanding the foregoing, nothing in this Agreement shall prevent either Party from seeking any provisional/preliminary relief (including, but not limited to, injunctions, attachments or other such orders in aid of arbitration) from any court of competent jurisdiction, and any such application to a court for provisional/preliminary relief shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate. Except as may be otherwise required by law, the arbitration shall be strictly confidential and the Parties (including their counsel and other representatives), the witnesses and the arbitrators may not disclose the existence, contents or results of any arbitration conducted hereunder without the prior written consent of both Parties. Judgment upon any arbitration awards rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof, including any court having jurisdiction over the Parties or their assets.

8.  **Governing Law.** This Agreement is deemed to be made under and shall be interpreted in accordance with the domestic laws of the State of New York, excluding its conflict of laws provisions to the extent that it would require the application of the laws of another jurisdiction.



**PRIVILEGED AND CONFIDENTIAL**

9.      <u>Entire Agreement</u>.  This Agreement, together with Annex A attached hereto, constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior discussions, negotiations or agreements (oral or written) with respect thereto.

10.     <u>Severability</u>.  Each part of this Agreement is intended to be severable.  If any term, covenant, condition, warranty or other provision of this Agreement is held to be unlawful, invalid, illegal or unenforceable, the same shall be deemed severable from the remainder of this Agreement and such unlawfulness, invalidity, illegality or unenforceability shall not affect, impair or invalidate the remaining provisions of this Agreement, which shall remain in force and effect and shall be binding upon the parties.  If any such term, covenant, condition, warranty or other provision of this Agreement shall be deemed invalid due to its scope or breadth, such term, covenant, condition, warranty or other provision shall be deemed valid to the extent of the scope or breadth permitted by law.

11.     <u>Survival</u>.  As set forth in Article 3 above, this Agreement may be terminated at any time by either Party on thirty (30) days prior written notice.

Upon request, and in any event upon termination of the Agreement for whatever reason, or in the event of any breach of these terms by Mercury, Mercury will not retain any HCCI or copies of HCCI.  Consistent with this obligation, upon termination of the Agreement Mercury shall promptly destroy or return to CCO all tangible materials (including all copies, hard copy or electronic) that include or relate to HCCI.  This includes, but is not limited to, Mercury (a) returning or destroying documents, hardware, disks and tapes, notes, and/or extracts that contain or refer to HCCI; and (b) to the extent reasonably possible, erasing all HCCI (or documents containing or referring to HCCI) from its computer systems or any other system storing such HCCI in any electronic form.  The Parties' obligations under this Agreement in respect of the confidentiality and disclosure obligations of HCCI shall survive for a period of three years following the termination of this Agreement.

(Signature page to follow)



**PRIVILEGED AND CONFIDENTIAL**

     Please acknowledge your agreement with this Engagement by signing and returning a copy of it to me.

                                                */s/ Jim Campbell*
                                 Campbell Conroy & O'Neil, P.C.
                                 James M. Campbell
                                 Partner
                                 1 Constitution Wharf, Suite 310
                                 Boston, MA 02129

Agreed to and Accepted:

Date: _____

                                               _____
                                 Mercury Public Affairs LLC
                                 Mr. Michael McKeon
                                 200 Varick Street, Suite 600
                                 New York, New York 10014

CAMPBELL CONROY & O'NEIL
PROFESSIONAL CORPORATION

1 CONSTITUTION WHARF
SUITE 310
BOSTON, MA 02129
TEL: (617) 241 3000
FAX: (617) 241 5115



JAMES M. CAMPBELL
(617) 241-3060

### PRIVILEGED AND CONFIDENTIAL

December 3, 2019

Via Email and Federal Express

Mercury Public Affairs LLC
c/o Mr. Michael McKeon
200 Varick Street, Suite 600
New York, New York 10014

Re:   Engagement Letter

Dear Mr. McKeon:

    Pursuant to Section 1 of the Engagement letter between CCO and Mercury dated November 25, 2019, CCO would like to retain you to assist the Firm in providing legal services to the Client with respect to developing themes related to the defense of the Matter. With respect to this specific retention, the Firm will be providing you with various materials, including privileged work product and materials related to the Flint Water Crisis Litigation, and these materials should be handled consistent with the Engagement letter, especially Section 5 and Section 6.

    Please acknowledge your agreement with this Engagement by signing and returning a copy of it to me.

*[signature: Jim Campbell]*

Campbell Conroy & O'Neil, P.C.
James M. Campbell
Partner
1 Constitution Wharf, Suite 310
Boston, MA 02129

CONNECTICUT  •  FLORIDA  •  MAINE  •  MASSACHUSETTS  •  NEW HAMPSHIRE  •  NEW JERSEY  •  PENNSYLVANIA  •  RHODE ISLAND



**PRIVILEGED AND CONFIDENTIAL**

Agreed to and Accepted:

Date: _____

_____
Mercury Public Affairs LLC
Mr. Michael McKeon
200 Varick Street, Suite 600
New York, New York 10014