Exhibit 3

## PUBLIC RELATIONS AGREEMENT

This Public Relations Agreement ("Agreement") is entered into as of September 15, 2017 ("Effective Date"), by and between **Mercury Public Affairs LLC, a Delaware limited liability** company, with an office located at 200 Varick Street, Suite 600, New York, NY 10014-4809 ("Agency"); and **Veolia North America, LLC**, a Delaware limited liability company, with offices at 53 State Street, 14th Floor, Boston, MA 02109 ("Client").

**WHEREAS,** Agency owns and operates a public relations service company which designs and implements public relations programs and related services; and

**WHEREAS,** Client desires to employ the services of Agency to assist Client with designing and executing a media, public affairs and community relations marketing program (hereinafter referred to as "Program") in accordance with the terms herein.

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements hereinafter set forth, Agency and Client agree as follows:

1.  **Scope of Work**

1.1   Agency represents and warrants that (a) it is qualified to provide the services necessary to complete the Program in a good and workmanlike manner, (b) it has sufficient trained personnel to perform the Program and its obligations in accordance with the terms herein, and (c) that it shall meet all Program criteria, including without limitation, all Program specifications, deadlines and budgets as shall be mutually agreed upon by the parties.

1.2   The Program services to be provided by Agency hereunder shall include the services described in Exhibit A.

1.3   Agency agrees that it shall perform such other related public relations services not covered under the specific Program projects listed in Exhibit A, as Client may reasonably request in writing from time-to-time, in accordance with the terms herein.

1.4   Definitions.  For the purposes of this Agreement, and any exhibits or appendices hereto, the following words and terms shall have the respective meanings set forth as follows:

    1.4.1   "Applicable Law" means any and all laws, rules, codes, guidelines, regulations, permits, determinations, judgments, and orders of, or issued by, any Government Agency having jurisdiction applicable to any activities associated with any of the obligations of the parties under this Agreement.

    1.4.2   "Entity" means a corporation, company, partnership, joint venture, sole proprietorship, or organization of any kind or nature whatsoever.

    1.4.3    "Government Agency" means any legislative, executive, judicial, or administrative department, board, commission, court, agency or other instrumentality of the federal, state or local government or political subdivision of the same.

    1.4.4   "Government Representative" means a Government Agency official, employee, representative, consultant, or agent.

2.  **Compensation and Method of Billing**

2.1   The compensation for the services described in Exhibit A will be billed the following:

    $8,000.00 per month for March 1, 2017 thru December 31, 2017 for strategic story development, narrative framing and executing media outreach.

*AH*

2.2   Agency shall bill Client on the first (1st) day of each month.  Agency agrees to provide such supporting documentation for each invoice as Client may reasonably require.  Client's payment terms are NET thirty (30) days from receipt of a correct invoice which references Client's Order number.  Payment of any invoice by Client shall not imply inspection, approval, or acceptance of the services by Client. Payment to Agency shall be by electronic funds transfer to a U.S. based bank designated by Agency.

2.3   All travel must be pre-approved by Client. Airfare, hotel, ground transportation, reasonable meals and other travel-related expenses will be invoiced separately with no mark-up. Agency will make every effort to reduce travel costs when possible, and will follow Client's travel policy (preferred hotel, per-diem structure, etc.).

3.   **Confidentiality**

3.1   Agency shall not use and shall keep secret and confidential and shall not disclose other than on a confidential basis to such of its employees that have a need to know such information to perform the services hereunder, any and all information heretofore or hereafter disclosed to it by Client in connection with this Agreement or the services to be performed hereunder, including such information that is labeled confidential or proprietary or, for information disclosed orally, if it is identified as confidential or proprietary at the time of disclosure, and all other information that Agency knew, or reasonably should have known, was the confidential information of Client ("Confidential Information").

3.2   At the expiration or termination of this Agreement, Agency shall return or destroy (if requested by Client) all copies, extracts or other reproductions in whole or in part of the Confidential Information and all originals and/or copies of any writing, document, memorandum, sketch, drawing, plan photograph, electronic media or other tangible item containing any information provided to Agency by Client or generated by Agency on behalf of Client during the term of this Agreement.  If Client requests destruction of the documents, Agency shall provide a certification of such destruction, by an officer of Agency. Agency shall retain no copies of any Confidential Information.

3.3   The above obligation of confidentiality shall survive for a period of seven (7) years following the termination or expiration of this Agreement.

4.   **Indemnification**

4.1   It is understood that Agency cannot undertake to verify facts supplied by Client.  Client hereby agrees to indemnify and hold harmless Agency from and against all third party claims, actions, suits, proceedings, liabilities, damages, costs and expenses of every kind and nature whatsoever, which are incurred solely by reason of Agency's use, in a manner approved by Client for use by Agency, of:

   a.   information or data supplied by Client to Agency; or
   b.   promotional, advertising, publicity, or public relations matter and material supplied by Client to Agency.

   Agency hereby agrees to give Client prompt and timely notice of any such claim, action, suit or proceeding made or brought against it to permit Client to defend any claim, action, suit or proceeding and to cooperate in the defense thereof.  Agency further agrees that Client shall have the sole and exclusive control of any such defense, including without limitation the selection of counsel and the sole right to compromise or settle any such claims.

4.2   Except as specifically set forth in Sections 4.1, a. and b. above, Agency agrees to indemnify, defend and hold harmless Client from any claims including, without limitation, claims involving copyright infringement, violation of personal rights of privacy, misappropriation of ideas or

*AH*

rights, literary piracy or plagiarism and other damages, losses, fines or expenses, including reasonable attorneys' fees, which may arise from Agency's willful acts or negligence in the performance of services under this Agreement, provided, Agency shall be liable only for that percentage of total damages that corresponds to its percentage of total negligence or fault.

5.  **Intellectual Property Rights**

5.1  All plans and ideas submitted by Agency and accepted by Client for articles, programs, and implementing materials, including, but not limited to, copy and art, shall be the sole and exclusive property of Client and shall be deemed "work made for hire" and may not be used, transferred, sold or otherwise conveyed by Agency, either directly or indirectly, for any reason whatsoever except for the purposes set forth herein. Agency further agrees to provide for all necessary licenses for third party photographs utilized by Agency in the performance of its obligations hereunder. Upon the expiration or termination of this Agreement, all such plans and materials then in progress shall become the property of Client in accordance with the terms set forth herein.

5.2  Agency will cooperate with Client in any manner reasonably requested by Client to assist Client in obtaining copyright protection for any materials created by Agency on Client's behalf during the term of this Agreement. Agency further agrees that it shall not gain any proprietary rights to any copyright or trademark owned by Client by operation of this Agreement or otherwise.

6.  **Term and Termination**

6.1  The initial term of this Agreement will commence on the Effective Date, and will continue until December 31, 2017 unless amended or terminated sooner.

6.2  This Agreement may be terminated by Client at any time for Agency's default or breach of its obligations herein, upon written notice to Agency; provided, however, that Agency will have thirty (30) days to correct such breach.  Contract termination may be immediate in instances where Agency's activities are determined by Client to be detrimental to Client's business reputation and goodwill or if any ethics, rule, regulation or other law is violated by Agency.

6.3  Either party shall have the absolute discretionary right to terminate this Agreement, with or without cause, by giving written notice of such termination not less than thirty (30) days prior to the effective date of such termination.

6.4  This Agreement may be renewed by Client prior to the expiration of this Agreement.  Any such renewal shall be in the form of an amendment to this Agreement and signed by both parties.

7.  **Limitation of Liability**

NEITHER PARTY NOR ITS AFFILIATED COMPANIES, NOR ITS OFFICERS, AGENTS AND EMPLOYEES OR CONTRACTORS, SHALL BE LIABLE TO THE OTHER IN ANY ACTION OR CLAIM FOR CONSEQUENTIAL OR SPECIAL DAMAGES, LOSS OF PROFITS, LOSS OF OPPORTUNITY, LOSS OF PRODUCT OR LOSS OF USE. ANY PROTECTION AGAINST LIABILITY FOR LOSSES OR DAMAGES AFFORDED ANY INDIVIDUAL OR ENTITY BY THESE TERMS SHALL APPLY WHETHER THE ACTION IN WHICH RECOVERY OF DAMAGES SOUGHT IS BASED ON CONTRACT, TORT (INCLUDING SOLE, CONCURRENT OR OTHER NEGLIGENCE AND STRICT LIABILITY OF ANY PROTECTED INDIVIDUAL OR ENTITY), STATUTE OR OTHERWISE  TO THE EXTENT PERMITTED BY LAW, ANY STATUTORY REMEDIES WHICH ARE INCONSISTENT WITH THESE TERMS ARE WAIVED.

8.  **General Provisions**

*AH*

8.1  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Delaware, without regard to its conflicts of laws principles.

8.2  This Agreement shall be binding upon the successors and assigns of each of the parties, but neither party shall assign this Agreement without the prior written consent of the other party.

8.3  Any notice given under this Agreement shall be in writing and sent (i) by registered or certified mail, postage prepaid, return receipt requested, or (ii) by any other commercial delivery service which delivers to the noticed destination and provides proof of delivery to the sender.  Notice may also be sent by e-mail provided that confirming notice according to one of the methods of the preceding sentence is sent within three (3) days after the e-mail transmission.  All notices will be effective when first received at the following addresses:

> **If to Agency:**  Mercury Public Affairs LLC
> 509 Guisando de Avila, Suite 100
> Tampa, FL 33613
> Attn: Bibi Rahim
> Email: DASAccounting@mercuryllc.com

> **If to Client:**  Veolia North America, LLC
> 53 State Street, 14th Floor
> Boston, MA 02109
> Attn:  SVP Marketing and Communications
>
> With a copy to:
>
> Veolia North America, LLC
> 53 State Street, 14th Floor
> Boston, MA 02109
> Attn:  General Counsel
> E-mail: general.counselNA@veolia.com

Agency is required to provide immediate notification to Client at na.information.security@veolia.com (in addition to the Client General Counsel address above) of any actual breach of security, intrusion or unauthorized use or disclosure of Client Confidential Information and/or any actual use or disclosure of data in violation of any applicable federal or state laws or regulations in connection with the services and/or deliverables contained within this Agreement.

8.4  This Agreement sets forth the entire agreement between the parties as to the subject matter of this Agreement, and supersedes all prior agreements, commitments, representations, writings and discussions between them, whether written or oral, with respect to the subject matter hereof. Except as otherwise expressly provided in this Agreement, this Agreement may not be amended or terminated except in writing and signed by duly authorized representatives of each party.

8.5  If any term, provision, convenient or condition of this Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the reminder of the provisions shall remain in full force and effect and in no way be affected, impaired or invalidated.

8.6  It is understood that the relationship of Agency to Client is that of independent contractor and nothing herein shall be construed as making either party the partner, joint venture, agent, legal representative or employer/employee of the other.  Neither party shall have the authority to make any statements, representations or commitments of any kind, nor to take any action, which shall be binding on the other, except as provided for herein or authorized in writing by the party to be bound.

*AH*

8.7   Nothing in this Agreement shall be construed to create in any third party, or in favor of any third party, any right(s), licenses(s), power(s), or privilege(s).

8.8   The failure of either party to enforce at any time any of the provisions hereof shall not be construed to be a waiver thereof or of the right of such party thereafter to enforce the same.

8.9   The language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent and no rule of law shall be applied to construe this Agreement for or against either party hereto.

8.10  No news release, public announcement, public disclosure or denial or confirmation of the foregoing, regarding any phase of the services or Program hereunder will be made by Agency, and under no circumstances shall Agency issue, or permit to be issued, any advertisement or literature of any kind, or refer to Client as an Agency customer or list Client or Client's logo on Agency's website or any social media site, or conduct or permit to be conducted any interview or news conference referring to Client, except upon prior written approval of Client's Communications Department. The covenant contained in this Section shall survive the termination of this Agreement.

9.   Agency shall obtain and maintain at its own expense the following minimum limits of insurance, with insurance companies rated A-VII or higher by A.M. Best's, with an insurer authorized to do business in the jurisdiction where services are performed:

| Coverage | Limits |
| --- | --- |
| (i) Worker's Compensation, occupational, disability benefits and similar employee benefits insurance | Statutory |
| (ii) Employer's Liability | $1,000,000 each accident; $1,000,000 each employee; $1,000,000 policy limit |
| (iii) Commercial General Liability including contractual liability | $1,000,000 each occurrence for property damage and bodily injury (PD/BI), $2,000,000 general aggregate. $2,000,000 products/completed operations aggregate |
| (iv) Commercial Automobile Liability Owned, hired and non-owned autos | $1,000,000 Combined Single Limits – each accident |
| (v) Excess Liability | May be utilized to meet limits outlined above |
| (vi) Property | Agency shall be solely responsible for protecting and insuring all property owned or leased by Agency during the term of this Agreement |
| (vii) Commercial Crime Insurance or Employee Dishonesty Bond | $2,000,000 |
| (viii) Professional Liability (Errors & Omissions) including network security and privacy liability risks | $1,000,000 per claim, and annual aggregate including coverage for network security and privacy liability risks |

In the event that the state where Services are to be provided allows an employer to opt out of Workers Compensation coverage, Contractor shall nevertheless obtain a Workers Compensation policy complying in all respects with this provision.

Upon execution of this Agreement and at each insurance policy renewal throughout the term of this Agreement, Contractor will provide Client with an ACORD certificate of insurance evidencing that the above described coverages are in full force and effect. Contractor will include Client as additional insured which may be satisfied with a blanket additional insured endorsement and remove the insured versus insured provision with respect to coverages (iii), (iv), (v) and (viii) above. All policies will be primary and non-contributory, provide a full waiver of the insurer's right of subrogation in favor of Client where permitted by law. All deductibles, co-insurance or other forms of retention are the sole responsibility of Contractor. Contractor shall provide at least thirty (30) days written notice prior to policy cancellation, non-renewal, or material change in coverage.

*AH*

Errors & Omissions/Professional Liability Insurance, covering acts, errors, omissions, or negligence in the performance of or failure to perform services for Client or on behalf of Client hereunder, including coverage for infringement of intellectual property (except patent and trade secret), plagiarism, piracy or misappropriation or theft of ideas, defamation, libel, slander, disparagement, or invasion of privacy or publicity. Such insurance shall also include coverage for network security and privacy liability risks (including coverage for unauthorized access, failure of security, breach of privacy perils, wrongful disclosure of information, or transmission of malware or viruses).

All policies shall be issued on occurrence-based forms, except for coverage (viii) which may be issued on a claims-made form.  All claims-made policies will at least be retroactive to the earlier of the date of this Agreement or the commencement of Agency's services in relation to the work, and shall be maintained for two (2) years after the expiration or termination of this Agreement.

These insurance requirements will not be construed in any matter as waiving, restricting or limiting Client's rights or Agency's obligations under this Agreement.  Client does not represent that coverage or limits herein will be adequate to protect Agency.  Agency remains responsible for any liability not paid by insurance including deductibles, co-insurance and other forms of retention.

10. **Non-Solicitation**

During the term of this Agreement, and any extension hereof, and for a period of six (6) months following expiration or termination of this Agreement, neither party will directly or indirectly solicit for employment, hire or retain any employee (past or present) of the other party without the prior written approval of the other party.

11. **Outside Vendors**

If Agency is authorized by Client to act as an agent for Client to enter into contracts on Client's behalf with outside vendors (such as printers, market research firms, etc.), the standard agency mark-up for management of outside vendors is fifteen percent (15%).  Agency shall not enter into contracts on behalf of Client or otherwise act as agent of Client for any purpose except as specifically approved in advance, in writing by Client.

12. **Mediation**

If, despite good faith efforts, the parties are unable to resolve a dispute or claim arising out of or relating to this Agreement or its breach, termination or validity, the parties will first seek to agree on a forum for non-binding mediation to be held in a mutually agreeable location.

Any mediation will be kept confidential and the existence of the proceeding and any element thereof (including but not limited to documents submitted or exchanged) will not be disclosed beyond the parties, their counsel and any person necessary to the conduct of the proceeding, except as may be lawfully required in judicial proceedings.

All communications made in connection with the attempted resolution shall be treated as settlement negotiations and shall be inadmissible in any litigation or other proceeding.

13. **Business Practices**

In performing the services, Agency agrees to comply with the business practices set forth in Exhibit B.

14. **Anti-Corruption Compliance**

Agency agrees to comply with the anti-corruption compliance terms set forth in Exhibit C.

*AH*

15. Agency warrants and represents that Agency has not previously violated any of the terms or conditions of this Agreement for any prior services that may have been provided to Client prior to the Effective Date hereof, including, by way of example and not limitation, the protection of Client's Confidential Information and anti-corruption provisions as set forth in Sections 3 and 14 herein.

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement as of the day and date first written above.

CLIENT: VEOLIA NORTH AMERICA, LLC

By: *Alethea Harney*

Name:   Alethea Harney

Title:   VP Communication

Date:

AGENCY:  MERCURY PUBLIC AFFAIRS LLC

By:

Name: Kieran Mahoney

Title: Partner

Date: September 15, 2017

EXHIBIT A

**PROGRAM SERVICES**

Agency began providing the following services on or about March 1, 2017:

❖ Management and execution of a to-be-determined pilot program to identify and deploy current or former customers to speak on Client's behalf.  Payment of these services are dependent upon the decision of whether or not to proceed with the pilot program.  A kick-off meeting will be set to discuss the scope of work and determine next steps.   Once the pilot project proceeds, billing by Agency on these specific services can take place.

❖ Strategic story development, narrative framing and executing media outreach.

❖ Public relations services, including the development of, presentations and information packets; the arrangement of presentations; and the coordination of media relations. This shall include the preparation of a comprehensive public relations plan within thirty (30) days after execution of this Agreement.

Additionally, Agency will engage in other public relations activities in the region for Client, as Client may from time-to-time request.

*AH*

**EXHIBIT B**

**BUSINESS PRACTICES**

Client expects that Agency will abide by the highest ethical standards in performing the public relations services.  Agency represents, warrants and agrees that:

1.     Agency is familiar with and shall comply with Applicable Law and procurement requirements and documents issued by any Government Agency which are applicable to Client.  Client has advised Agency that Client does not expressly or impliedly authorize Agency to engage in any illegal, unlawful or unethical conduct.

2.     Although modest and reasonable business entertainment, consistent with commonly accepted practice and Applicable Law, may be appropriate in certain instances in fostering communication and good will, Client strongly discourages lavish entertainment.

3.     Agency shall not make any commitment or promise to any person of future employment by Client or its affiliates of such person.

4.     Agency shall not hire as an employee, agent or independent contractor any member of the immediate family of any Government Representative who is or may be reasonably expected to be involved in rendering decisions with respect to the services.

5.     Agency shall keep and maintain appropriate documentation and records of all activities and expenditures made in the performance of the services, as required to comply with Applicable Law and applicable procurement requirements and documents. No undisclosed or unrecorded fund or asset shall be established for any purpose that is directly or indirectly related to the matters for which Agency is engaged. Documentary support of all payments or other related business transactions must be complete and accurate, clearly defining the nature and purpose of each transaction.  Such records shall be subject to inspection and audit by Client and its representatives at any time.

6.     Agency is not debarred, suspended or proposed for debarment from doing business with any Government Agency.

7.     Agency is familiar with and shall comply with Applicable Law regarding the conduct of lobbying and political consulting activities, procurements, conflicts of interest, and the offering of gifts, gratuities, political contributions, travel and/or entertainment to Government Representatives.  Any fees, expenses, or other payments payable or paid under this Agreement will be received and applied for Agency's own account and that no other persons or entities, including any Government Representatives, have or will have any interest or benefit therein or therefrom.  No part of any fees, expenses, or other payments received by or payable to Agency from Client will be, directly or indirectly, paid (whether in cash or in kind), offered, or promised to, shared with, or used to purchase a gift for, provide entertainment to, or make a political contribution for the benefit of (a) any Government Representatives, (b) any political parties, committees, or candidates, or (c) any other parties, persons, or Entities, in violation of Applicable Law or for the purpose of (x) influencing any acts or decisions to be made in any such person's or Entity's official capacity, (y) inducing any Government Representatives to use their influence on any other Government Representatives acting in an official capacity in relation to any Client projects, bids, or contracts, or (z) inducing such parties, persons, or Entities to act favorably with respect to any actions which might benefit Client.  Agency acknowledges that Agency will and is not authorized to (a) offer or give any Government Representatives any cash, property, services, loans, gifts, entertainment, transportation and/or anything else of value (i) in exchange for, or with the purpose or intent of influencing, any recommendation, decision or action relating to the selection or award of any contracts to Client or any other governmental action or (ii) which such Government Representatives are prohibited from

Veolia North America DC clean client contract 03012017 updated 09152017.docx

*AH*

receiving; (iii) which is otherwise illegal; or (iv) which would require the reporting of such lawful expenditures to a Government Agency with identification of, or reference to, Client, unless the prior written approval of Client has been obtained to make such lawful expenditures; (b) exert or utilize any corrupt or unlawful influence to secure the award of any contracts to Client; (c) make any political contributions on behalf of Client; or (d) make or receive any illegal payments, bribes, kickbacks, fee splits, payoffs or any similar payments.

8.      Agency will make no payments to any intermediaries, brokers, agents, or other persons or entities when it would be reasonable to assume that such a person or Entity would or may use such amounts to make bribes, payoffs or other illegal payments.  Any and all payments made to third parties will be in usual and customary amounts for legitimate services rendered.  Agency will not use any persons or entities as a means of circumventing the representations, warranties, restrictions and prohibitions contained in this Agreement.

9.      Agency is committed to enforcing the mandates of Applicable Law that (a) forbid unlawful discrimination based on an individual's age, ancestry, citizenship, color, creed, disability, handicap, marital status, national origin, nationality, parental or familial status, pregnancy, race, religion, sex, sexual orientation, veteran status or other protected group status, (b) prohibit unlawful harassment, including sexual and racial harassment, and (c) require affirmative action.  While providing services for Client, Agency shall strictly comply with Applicable Law regarding unlawful harassment, including sexual and racial harassment, and upon reasonable request certify the same to Client.

10.     Agency will not buy or sell the securities of Client or its affiliates while in possession of material, nonpublic information regarding Client or its affiliates.

11.     By entering into this Agreement and by fully and faithfully performing the services, Agency does not and will not breach or be in violation of any statutory, common law, regulatory, contractual or other obligation imposed on Agency or any other agreement to which Agency is a party or is bound. Agency is not subject to any duties to or restrictions with respect to any Government Agencies or any other persons or entities that are in conflict with, or that would prevent Agency from performing, Agency's responsibilities hereunder.

12.     The representations and warranties made by Agency in this Agreement are true and accurate as of the execution of this Agreement, shall remain true and accurate throughout the term of this Agreement, and shall survive the termination of this Agreement.  Agency shall promptly notify Client of any developments or changes that would make any of the foregoing representations and warranties untrue or inaccurate in any respect.

*AH*

EXHIBIT C

ANTI-CORRUPTION COMPLIANCE

1.      In carrying out the terms of this Agreement, Agency hereby undertakes to strictly comply with Applicable Laws prohibiting the bribery of public officials and private persons, influence peddling, money laundering that may in particular entail a public contract debarment, including:

    (a) the 1977 Foreign Corrupt Practices Act of the United States,
    (b) the 1999 Canadian Corruption of Foreign Public Officials Act,
    (c) the 2010 UK Bribery Act, the OECD Convention on Combating Bribery of Foreign Public Officials in International Business Transactions of December 17, 1997.

Agency undertakes to put in place and implement all necessary and reasonable policies and measures to prevent corruption.

Agency declares that to its knowledge, its legal representatives, directors, employees, agents, and anyone performing services for or on behalf of Client pursuant to this Agreement do not and will not directly or indirectly offer, give, agree to give, authorize, solicit, or accept the giving of money or anything else of value or grant any advantage or gift to any person, company or undertaking whatsoever including any government official or employee, political party official, candidate for political office, person holding a legislative, administrative or judicial position of any kind for or on behalf of any country, public agency or state owned company, official of a public international organization, for the purpose of corruptly influencing such person in their official capacity, or for the purpose of rewarding or inducing the improper performance of a relevant function or activity by any person in order to obtain or retain any business for Client or to gain any advantage in the conduct of business for Client.

2.      Agency further undertakes to ensure that neither Agency nor any of its legal representatives, directors, employees, agents, sub-contractors and anyone performing services for or on behalf of Client under this Agreement has been, or is listed by any government agency as being debarred, suspended, proposed for suspension or debarment, or otherwise ineligible for participation in government procurement programs and/or bidding following invitations to bid advertised by the World Bank or any other international development bank.

3.      Agency undertakes to retain for an appropriate period following termination of this Agreement, accurate supporting documentation of its compliance with the terms of this clause.

4.      Agency agrees to notify Client of any breach of any term of this clause within a reasonable time.

5.      If Client notifies Agency that it has reasonable grounds to believe that Agency has breached any term of this clause:

    (a) Client is entitled to suspend performance of this Agreement without notice for as long as Client considers necessary to investigate the relevant conduct without incurring any liability or obligation to Agency for such suspension.
    (b) Agency is obliged to take all reasonable steps to prevent the loss or destruction of any documentary evidence in relation to the relevant conduct.

6.      If Agency breaches any term of this clause:

    (a) Client may immediately terminate this Agreement without notice and without incurring any liability.

    (b) Agency undertakes to indemnify Client, to the maximum extent permitted by law, for any loss, damages, or expenses incurred or suffered by Client arising out of such breach.

*AH*