# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*

_____/

The Hon. Judith E. Levy
United States District Judge

*Bellwether III Case No. 17-10164*

_____/

## NOTICE OF FILING RE: VEOLIA DEFENDANTS' DIGITAL MISINFORMATION CAMPAIGN

Pursuant to the Court's August 2, 2023 Order [ECF No. 2543], Plaintiffs hereby submit this Notice regarding their efforts to uncover information related to the Veolia Defendants' ("Veolia") digital misinformation campaign(s).[1] Specifically, and per the Court's directive, this pleading and its accompanying attachment is intended to provide a detailed summary of what Plaintiffs have learned from relevant discovery; an accounting of any outstanding issues remaining; and Plaintiffs' proposal for how those outstanding issues should be resolved, inclusive of outstanding issues related to Plaintiffs' Fifth Request for Production of Documents.[2]

---

[1] Discussions regarding these issues also took place before the Court on multiple occasions, including May 17, 2023 and June 13, 2023. [ECF No. 2453 & ECF No. 2503].

[2] The only outstanding issue as to Plaintiffs' Fifth Request for Production of Documents is Veolia's failure to produce documents associated with Plaintiffs' privilege challenges, which the Court recently addressed, but which has not been resolved. [ECF No. 2543 at PageID.84103].

## BACKGROUND SUMMARY

Plaintiffs first became aware of Veolia's possible attempts to influence potential jurors and of a potential misinformation campaign during the Bellwether I trial, through discovery of Veolia's Twitter handle – "@VNAFlintFacts" ("Twitter Account"). At that time, the Court inquired as to whether Veolia's trial counsel **or trial counsel's attorney colleagues** "were involved in tweeting from the courtroom or from anywhere during the trial." Tr. Trans. at page 1928. Specifically, the Court sought to confirm that "other lawyers on your team are not tweeting about a witness, the identity of witnesses, expected testimony and so on." *Id.* at 1895. Veolia's trial counsel responded that: "I inquired with our team and with all the lawyers working on this case and can confirm that no one is involved with sending out tweets. Certainly[,] from the courtroom but at all." *Id.*

Further examination also revealed blatant and incessant attempts to use the Twitter Account to push individuals to Veolia's accompanying website, "veoliaflintfacts.com" ("Website"). It became apparent over the course of the trial that Veolia was using the Twitter Account and Website as part of a larger scheme to spread misinformation about the trial, as it happened in real time.

Thereafter, and subsequent to the conclusion of the trial, on September 8, 2022, *The Detroit News* published an investigative article analyzing Veolia's digital advertising campaign, which according to the piece began in 2016. (Kayla Ruble,

"Company sued over Flint's water crisis wages digital PR war during trial," *The Detroit News*). Therein, Ruble described revelations that Veolia used an "ad blitz" between October 2021 through July 2022, as well as "dynamic [search] ads," targeting Google searches from direct users to the Website. Ruble further explained how publicly available data revealed that during the Bellwether I trial, Veolia utilized dynamic search ads to promote the Website.

At this point, Plaintiffs became increasingly concerned that Veolia's digital misinformation campaign was larger than a simple website and a Twitter handle, and likely included a buffet of intricate search optimization tools and targeted advertisements. Plaintiffs sought discovery into this issue in order to understand the scope and intent of Veolia's efforts. Thus, Plaintiffs requested information related Veolia's Google advertising campaign-behavior and sought to depose various individuals who may have information related thereto and related to the Twitter Account.

## **FINDINGS**

Over ten months, and while Plaintiffs were forced to make multiple requests and seek the Court's assistance on numerous occasions, Veolia ultimately provided raw data related to their Google advertising campaign-behavior. Plaintiffs retained and provided said data to Dr. Lauren Cohen, an expert in empirical research, who studies finance, innovation, and broader firm and financial agent behavior (with an

emphasis on strategic firm behavior surrounding litigation events), along with the responses of individuals and markets to this behavior. Dr. Cohen explored Veolia's advertising behavior surrounding the Flint Water Crisis and subsequent suit against Veolia, finding evidence consistent with: (1) potential strategic timing and geographic concentration of Veolia's Google Advertising campaigns; and (2) that the content of the information produced by Veolia was significantly more biased (subjective) than a control news sample covering the same case. Comparing this to peer-reviewed evidence from a larger historical sample of publicly traded firms who exhibited similar behaviors, these advertising behaviors appear to correlate with positive judicial outcomes for the entity doing the advertising. Attached hereto is as Exhibit A is Dr. Cohen's full report.

The depositions that were conducted with the intent of discovering information as to both Veolia's digital advertising campaign and the Twitter Account (collectively and individually), did not produce much helpful information as to Veolia's Google advertising campaign-behavior, and produced mostly macro-level information as to the Twitter Account, leaving more questions than answers.

Plaintiffs deposed Carrie Griffiths, Jace Connor, Jennifer Kaufman, and Michael McKeon. Few, if any of the witnesses provided substantive information as to Veolia's Google advertising campaign or campaign-behavior. And only McKeon,

4

a high-level executive for Actum,[3] was able to provide any information of minor substance regarding the Twitter Account. To that end, and while McKeon admitted it was not his primary function to actually craft the tweets that were publicly disseminated from Veolia's Twitter Account during trial, he did explain a few points of interest:

(1) McKeon did little if any of the actual posting on the Twitter Account himself; did not have log-in credentials; and it was Nicole Flotteron (or someone junior to her) who maintained credentials and composed most of the tweets;

(2) While Pierre Farcot may have suggested content for the Twitter Account, McKeon did not recall Farcot drafting content and minimized his role in Veolia's communications during trial;

(3) McKeon claims to have approved the tweets that were disseminated during trial;

(4) At least one attorney for Veolia, who during trial was apparently participating behind the scenes, was in communication with McKeon and his team during (and possibly in advance of) trial, despite representations

---

[3] Actum is one of at least four different Public Relations entities that appear to have been hired by Veolia to assist in executing part or all of their various misinformation campaigns.

to the Court that no lawyers were involved in or had knowledge of the Twitter Account; and

(5) Veolia intends to use McKeon and his team going forward with regard to the next scheduled trials.

[ECF. 2546-7 (McKeon Dep. Trans.) at 29:3-5; 30: 4-14; 44:11-15; 45: 20-24; 46:1-24; 47:1-8].

## OUTSTANDING ISSUES & PLAINTIFFS' PROPOSAL ON HOW TO RESOLVE

In light of Dr. Cohen's conclusions, Plaintiffs, at a minimum, intend to seek prospective relief related to Veolia's digital advertisement campaigns. In order to fully evaluate the type of prospective relief required, as well as if and the extent to which Plaintiffs will seek *ex post facto* relief, the deposition of Nicole Flotteron is necessary to determine: (a) how she came to have information that formed Veolia's public tweets; (b) how, when and why she went about composing tweets; (c) the extent of attorney involvement in the provision of that information; (d) the extent of attorney involvement in crafting the tweets; (e) whether she discussed the Twitter Account with attorneys prior to, during, or subsequent to trial; (f) why she chose to link virtually every single tweet to the Website; and (g) to test the veracity of Mr. McKeon's testimony.

Additionally, Veolia should be ordered to immediately produce those documents addressed by the Court in its recent oral ruling of July 19, 2023 [ECF No. 2540], and its order dated August 2, 2023 [ECF No. 2543], in conjunction with Plaintiffs' comprehensive privilege challenge and Plaintiffs' Fifth Request for Production of Documents. These documents may and likely will provide color and context to the origins and purpose of Veolia's various campaigns. Veolia has had the opportunity to evaluate the vast majority of these documents for 139 days, since March 23, 2023, when Plaintiffs first communicated to Veolia that approximately 1700 documents withheld or heavily redacted by Veolia were being challenged on the basis of privilege.

Dated: August 9, 2023

Respectfully submitted,

*/s/ Corey M. Stern*
Corey M. Stern
Melanie Daly
605 Third Ave., 33rd Fl. New York, New York 10158
cstern@levylaw.com
mdaly@levylaw.com

## CERTIFICATE OF SERVICE

I, Corey Stern, hereby certify that on August 9, 2023 the foregoing document and the attached exhibits were served on all counsel of record via the court's ECF system.

*/s/ Corey M. Stern*
Corey M. Stern
