# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

ELNORA CARTHAN, *et al.*, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

v.

GOVERNOR RICK SNYDER, *et al.*,

                    Defendants.

Case No. 5:16-cv-10444-JEL-EAS

Hon. Judith E. Levy

Magistrate Judge Elizabeth A. Stafford

---

# PLAINTIFFS' RESPONSE TO VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S SUBMISSION REGARDING NON-PARTY AT FAULT

# ISSUES PRESENTED

1.  Whether Veolia has failed to demonstrate that any non-party could be the proximate cause of the same incremental harm that Veolia caused to Flint businesses and property owners.

    Plaintiffs' Answer: Yes.


2.  Whether Michigan's Non-Party at Fault Statute, MCL § 600.6304, dictates that allocation of non-party fault occur only in proceedings that address claims for damages such that non-party fault should be reserved for damages proceedings separate from the issue class trial.

    Plaintiffs' Answer: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

MCL § 600.6304

MCL § 600.2957

MICH. CIV. JI 42.05

*Vandonkelaar v. Kid's Kourt, LLC*, 290 Mich. App. 187 (2010)

## INTRODUCTION

Veolia's latest filing on non-party fault provides yet another hundred-plus-page submission but still fails to offer any coherent explanation of why or how the vast majority of the non-parties and issues it identifies should be adjudicated at the upcoming class trial. The upcoming trial focuses principally on (1) the scope of Veolia's duties as a professional engineering firm, (2) whether Veolia breached those duties during the course of its engagement by the City of Flint beginning in 2015, and (3) whether any breach by Veolia was capable of causing the various categories of harm plaintiffs claim. Non-party conduct is irrelevant to the first two issues. As to the third, Veolia indicates it will seek to defeat causal liability by speculating that the City of Flint would not have implemented appropriate advice even if it had been given—but that is an issue of causation, not non-party fault.

In a professional negligence case under Michigan law, the issue of non-party fault becomes relevant only if and when the plaintiff first establishes liability and shows the amount of damages that were proximately caused by its conduct. MCL § 600.6304(1). Then, Michigan law affords the defendant the opportunity to show that non-parties were also responsible for proximately causing the damages at issue such that the degree of responsibility should be allocated between parties and non-parties. MCL § 6304(2), (8). Because the upcoming trial will not involve damages issues (other than the general proposition that contaminated Flint water was capable

of causing damages), consideration of most if not all the non-party fault issues Veolia has identified is premature and should instead be deferred to subsequent damages proceedings.[1]

Veolia misconstrues the sequence of proofs under Michigan jurisprudence. Michigan courts routinely instruct juries to consider non-party fault ***only after*** first determining both liability and the amount of damages. Indeed, ***this Court*** took the same approach in the instructions it crafted and delivered at the prior bellwether trial. Yet Veolia asks the Court to develop new jury instructions and new special interrogatories to the jury—inconsistent with Michigan's pattern jury instructions— under which consideration of non-party fault would leapfrog its way up to the element of liability such that the jury would allocate fault among dozens of non-parties in assessing Veolia's conduct. This is a recipe for confusion.

Veolia's submission provides no basis for departing from the normal sequencing of the adjudication of liability, causation, total damages, and fault allocation under Michigan law. To the contrary, its submission highlights several reasons why its proposed approach is both misguided and unworkable:

- Plaintiffs contend that Veolia's conduct was the proximate cause of ***all*** the property and business loss damages post-dating its engagement, and that

---

[1] Currently only an issues class has been certified, and therefore under the current circumstances any subsequent damages proceedings would necessarily proceed on a non-class basis.

those damages are ***distinct from*** and ***additional to*** damages arising from the prior conduct of others involved in the Flint Water Crisis. Yet Veolia completely sidesteps the legal issue of how any non-party involved in the Flint Water Crisis before February 2015 could be a proximate cause of post-February 2015 property and business loss damages attributable to Veolia. Indeed, despite the Court's explicit request that Veolia articulate how any alleged undertaking and breach by a non-party was a proximate cause of the injuries Veolia caused, Veolia's Submission essentially copies/pastes a conclusory "proximate cause" statement for every non-party. ECF No. 2486 ("May 31 Hearing"), PageID.82786 (noting that for the non-party at fault statutes to apply, "we've got that issue of proximate cause that we're absolutely going to have to address").

- The upcoming trial will determine how Veolia's conduct fits in to the timeline of events underlying the Flint Water Crisis and whether Veolia is potentially responsible for the various categories of damages arising from the Flint Water Crisis as a matter of general causation. The question of whether Veolia has breached its professional duties, and if so, whether Veolia's breach is capable of causing harm, are issues to be litigated on a classwide basis and are logically and legally antecedent to the assignment of non-party responsibility for specific damages arising from personal

3

injuries, the costs of pipe replacement, losses in property value, or any other category of damages.  The latter can only happen once (1) Veolia has first been found liable; and (2) its conduct has been demonstrated to be capable of damaging plaintiffs. Veolia fought to prevent certification of a damages class, yet now insists that its defenses related to damages should be tried in the issue class case. It cannot have it both ways.

- Veolia's proposed approach likewise does not work for the non-party City of Flint and the State of Michigan (the various officers and departments of which should be grouped together as a single nonparty for these purposes) that engaged in relevant activities and decisions contemporaneously with Veolia's engagement. As with the other non-parties Veolia has identified, the share of responsibility those non-parties bear for any damages proximately caused by Veolia's conduct may depend on the category of plaintiff and the role others played in the damages they sustained—issues that will not be adjudicated at the upcoming trial.

Veolia ignores the liability and general causation questions to be litigated in the upcoming issues class trial and, instead, focuses on subsequent non-party at fault issues to be addressed in subsequent damages proceedings that—at Veolia's insistence—are not applicable to the certified class. Specifically, Veolia's submission regarding non-party fault: (1) lists every conceivable "duty" a non-party

4

may have owed to Plaintiffs, regardless of whether that purported duty has any bearing on Veolia's tortious conduct; and (2) offers a laundry list of each non-party's "alleged breaches," often with no apparent connection to the purported "duties" alleged and in numerous instances listing "breaches" that do not even involve any action (for instance, a non-party's "knowledge" is frequently listed as a breach without any explanation of what the non-party was purportedly obligated to do with that knowledge).

In short, Veolia has thrown all the spaghetti it can find at the wall hoping that something will stick—or at the very least, that the mess of timelines, parties, and actions implicated will distract from the fundamental flaw in Veolia's non-party at fault submission: Veolia has not shown any legal basis for considering the conduct of any non-party at this stage in the proceedings. Non-parties have nothing to do with whether Veolia acted negligently in failing to provide the City of Flint with professionally sound advice regarding the dangerously corrosive state of the water coursing through its pipes in February 2015 and the need to immediately remedy the severe flaws in its water distribution system. And there is no need to consider non-party conduct to determine whether Veolia's delivery of professionally sound advice could have averted further harm to Flint businesses, properties, and residents. Rather, non-parties are only possibly relevant to the allocation of damages, which are not a subject of the upcoming trial.

Although the non-party at fault framework need not be considered at the upcoming issues trial, Veolia's framing of its application is also faulty. The question is not whether any third party took any action at any time that might have contributed to corrosive water in Flint. The question is whether any non-party breached a duty they owed to Plaintiffs that proximately caused the ***same harm Veolia created through its professional negligence*** and, if so, the percentage of responsibility for causal damages that non-party should share.

Veolia does not even attempt to answer this question with respect to non-parties involved in conduct pre-dating Veolia's engagement or the distinct and substantial categories of harm plaintiffs contend could have been averted in their entirety had Veolia acted properly—on the contrary, it ***concedes*** that when "the plaintiff asserts the [harm caused by a defendant] . . . as a distinct, separate injury" from the injuries caused by non-parties, then the non-party at fault statute cannot apply to any of the non-parties listed in its notice. *See* ECF No. 2524 ("Veolia Submission"), PageID.83682. Class Plaintiffs ***have*** alleged a separate injury caused by Veolia that is distinct from the injury caused by any other nonparty: worsened contaminated water conditions in Flint that could have been entirely prevented had Veolia not been professionally negligent.

In any event, when correctly framed in light of the current posture of this case (*e.g.*, an upcoming issues trial where damages will not be assessed) and the actual

claim Plaintiffs assert against Veolia, the upcoming issues trial would be a premature venue for adjudicating any issues of non-party fault that may arise in this case. If Veolia defeats liability, then there will be no need to consider non-party fault at all. If plaintiffs establish liability and demonstrate, as a matter of general causation, that the contaminated water was capable of damaging plaintiffs, then issues of non-party fault can be adjudicated in subsequent, non-class proceedings in the context of specific causation and damage issues for specific plaintiffs or groupings of plaintiffs.

Accordingly, the Court should enter an order finding the Non-Party at Fault statute is not implicated by the issues trial.

## **LEGAL STANDARD**

### A. **Michigan's Non-Party at Fault Statute Only Applies When a Non-Party Proximately Caused the Same Harm Caused by the Defendant.**

A defendant seeking to mitigate liability under Michigan's non-party at fault regime has the "burden of alleging and proving that [another person's] conduct was a proximate cause of [the plaintiff's damages]." *Lamp v. Reynolds*, 249 Mich. App. 591, 599 (2002). "Proximate cause" under Michigan law "is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause," which is to say— that a defendant must show that a non-party is both a "but for" cause[2] *and* that it was

---

[2] A non-party is not a but-for cause of an injury if he simply "*may* have caused [plaintiff's] injuries" because Michigan "case law requires more than a mere possibility or a plausible explanation." *Craig*, 471 Mich. at 87 (emphasis in original).

foreseeable that the non-party caused the same harm as the defendant. *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86 (2004); *see also Vandonkelaar v. Kid's Kourt, LLC*, 290 Mich. App. 187, 202 (2010) (parents could not be non-parties at fault for injuries to their child's finger suffered at a daycare because they were not the "proximate cause of Chad's tendon and joint injuries that he suffered at the daycare center"). As the Sixth Circuit has succinctly stated: "evaluated in light of its common-law foundations[,] proximate cause . . . requires some direct relationship between the injury asserted and the injurious conduct alleged." *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012) (cleaned up).

Accordingly, Veolia has the burden of "set[ting] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect" for each of the 38 non-parties that it seeks to implicate, *Craig*, 471 Mich. at 87 (citation omitted), that there was a "direct relationship" between each non-party's actions and the specific harm asserted—that is, the incremental harm resulting from the injurious conduct alleged against Veolia. *Evers*, 669 F.3d at 659. As the Court observed at the May 31 hearing, under Michigan law, "[t]here are certainly cases that say where the defendant cannot show that the nonparty at fault is the proximate cause . . . then they cannot be submitted to the jury. They cannot go to the jury." ECF No. 2486,

---

A defendant must set forth specific "facts in evidence" that "exclude other reasonable hypotheses [of cause] with a fair amount of certainty." *Id.* at 87–88 (citation omitted).

PageID.82794.

### B. Allocation of Fault Is Properly Addressed in Non-Class Damages Proceedings—Not in the Issues Class Trial.

Michigan's non-party at fault regime is designed "only to accurately determine the fault of named parties" for purposes of allocating damages, it is not a mechanism for a defendant to avoid liability altogether. *Medilink Ins. Co. v. Comerica Bank*, 2010 WL 11492421, at *7 (E.D. Mich. Feb. 17, 2010) (quoting MCL § 600.2957(3)). Michigan's Model Civil Jury Instructions accordingly instruct that non-party at fault "instructions should be used ***only*** for actions . . . seeking damages . . ." Mich. Civ. JI 42.05 (emphasis added). When damages are not to be determined at trial, the issue of allocating fault is "rendered moot." *Carnell v. Vandervere*, 2007 WL 2404614, at *1 (Mich. Ct. App. Aug. 23, 2007).

Accordingly, when only Rule 23(c)(4) issues classes are certified, the question of damages—including allocation of fault—can be properly addressed in individual proceedings after a liability determination is made. *See, e.g., Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1346 (11th Cir. 2018) (noting that "a finding that the defendant has been negligent can be severed from a later proceeding that determines the comparative fault between the defendant" and non-parties). As the party seeking to use the non-party at fault defense, Veolia has the burden of establishing that allocation of fault is necessary to the upcoming issues trial, and that it would not otherwise be more efficient to determine fault at subsequent damages proceedings.

9

## ARGUMENT

**A.**   **Veolia Has Not and Cannot Establish that Any Non-Party Conduct Unconnected to Its Role in Flint Proximately Caused the Same Harm that Veolia Caused Between February and October 2015.**

    **1.   Veolia *agrees* that fault is limited only to Veolia if Plaintiffs seek to recover only for the incremental harm that Veolia caused.**

Michigan's comparative fault statutes only apply if a non-party was an additional tortfeasor "with respect to the conduct that ***was the factual and proximate cause*** of the injuries" the plaintiff claims against the defendant. *Vandonkelaar*, 290 Mich. App. at 190–91 (emphasis added). Plaintiffs claim injuries for the exacerbated water conditions in Flint stemming from Veolia's professional negligence beginning in February 2015, and any conduct that "was not part of the causal chain in regard to" those exacerbated conditions starting in February 2015 constitutes "a new causal chain leading to its own set of damages." *Id*. at 191. Indeed, Class Plaintiffs have already settled with the State Defendants for the injuries arising from the State Defendants' conduct that precipitated the Flint Water Crisis. But "once [Veolia] began work for the City of Flint" and agreed to "undert[ake] to evaluate the quality of Flint's water, it had a duty to avoid foreseeable physical harms arising out of that undertaking." *In re Flint Water Cases*, 579 F. Supp.3d 971, 981 (E.D. Mich. 2022). Had Veolia not been negligent, none of the exacerbated harms from corrosive water conditions in Flint from the time it arrived onward would have occurred. Veolia could have prevented all the injuries in Flint following its retention by the City in

February 2015, but did not do so.[3]

The problem with Veolia's repeated attempts to implicate non-parties is that Veolia has not identified how any of these non-parties were a "factual and proximate cause of the [same] injuries" that Veolia caused. As Class Plaintiffs have always alleged, Veolia is an independent cause of the harm suffered by Plaintiffs because, *inter alia*, they "were asked to evaluate the problems [of the Flint Water Crisis], but failed to do so properly" and thus Plaintiffs "were exposed to much greater amounts of poisonous water, and for a much longer time" than they would have been but-for that conduct. ECF No. 1175-3 (Fifth Amended Compl.), PageID.28651, 28657.

Veolia *agrees* that if—as is the case with respect to the class claims for property damages and business losses—Plaintiffs seek damages for the distinct additional harm caused by Veolia's professional negligence (rather than *all* harm Plaintiffs suffered at any time due to corrosive water in Flint or exposure to lead) then fault is limited to Veolia. When discussing the hypothetical Mr. Morrissey raised at the May 31 hearing regarding whether non-parties could be liable for the

---

[3] *E.g.*, FAC at ¶ 222 ("[t]he Veolia Defendants did not recommend that the City take steps to institute corrosion control to prevent lead" from spreading); *id.* ("[r]ather than recognizing that corrosion control was *required* to render Flint's water system complaint . . . and prevent catastrophic corrosion, the Veolia Defendants merely suggested adding phosphate to address water discoloration"); *id.* at ¶ 595 ("Veolia . . .failed to exercise reasonable care when they did not forcefully recommend the immediate implementation of corrosion control for purposes of preventing lead contamination in Flint's water supply.").

exacerbation of a cancer that negligently went unnoticed by a doctor, Veolia *admits* that "allocation of fault would be limited only if the plaintiff limits the claimed injury to just *the aggravation of the cancer*." Veolia Submission, PageID.83682 (emphasis added, citing *Vandonkelaar*, 290 Mich. App. at 196–97). This "aggravation" is exactly what Plaintiffs allege against Veolia for its professional negligence. As stated in Class Plaintiffs' Fifth Amended Complaint, "[a]s a result of the . . . Veolia Defendants' actions, the residents of Flint, including Plaintiffs, were exposed to much greater amounts of poisonous water, and for a much longer time." Fifth Am. Compl. at ¶ 208; *id*. at 73 ("Veolia Defendants' Conclusions Made the Crisis Worse"); ECF No. 2438, PageID.77469 (Plaintiffs' Reply In Support of Motion to Strike) ("Regardless of the prior existence of poor water conditions in Flint, Defendants' actions prolonged and *exacerbated* problems in such way that only they can be liable for the harms stemming from their professional negligence.").

The vast majority of Veolia's 120-page submission has nothing to do with how a non-party could have contributed to the same injury as that caused by Veolia. As just one example, Veolia claims that Andy Dillon, the State Treasurer of Michigan from January 1, 2011 to October 11, 2013—who left his post *more than 15 months* before the class period even begins—proximately caused the same harm to Flint residents as Veolia because "he participated in the development of an interim

water delivery plan." Veolia Submission, PageID.83717.[4] This is the only substantive statement for "Proximate Causation" that Veolia provided in its Submission about Dillon. This attempt to implicate Dillon contravenes the Court's observation at the May 31 hearing that if a non-party's "conduct was all before [December 2014] but concluded – they either were no longer employed, no longer involved, no longer had notice – then they can't be held responsible for something that happened in December 2014."  ECF No. 2486, PageID.82790.

Similarly, Veolia's description of the "alleged breaches" of duty for Bradley Wurfel, the former MDEQ Communications Director, include conduct such as "learn[ing] of water quality concerns in the City of Flint after the switch to the Flint River" and "kn[owing] about a series of boil water advisories in fall 2014." Veolia Submission, PageID.83731. There is no attempt by Veolia to carry its burden of explaining how simply "kn[owing] about a series of boil water advisories in fall 2014" could have proximately caused the same harm as that caused by Veolia beginning late February 2015.

---

[4] The Court noted at the May 31 hearing that it was particularly interested in non-parties like Andy Dillon, who "was no longer the treasurer" before Veolia's conduct even began in Flint. ECF No. 2486, PageID.82811. However, Veolia's recent submission does not provide any clarity as to how Dillon's alleged undertakings— all of which occurred before October 11, 2013, and which are as vague as a "fail[ure] to properly supervise Emergency Managers"—could have possibly been the proximate cause of the same harms as those caused by Veolia's professional negligence. Veolia Submission, PageID.83716.

And in yet another example, Veolia point to former Governor Rick Snyder, as well as his Office and its staff, as purportedly at fault—but the Governor and his Office had no connection to Veolia's role in Flint or whether Veolia was professionally negligent. For instance, Veolia claims that the Governor's Office "[b]ecame aware" in late January 2015, before Veolia arrived on the scene, that Veolia "would be hired, but took no action to ensure that VNA's eventual recommendations were followed and/or implemented." *id.* at PageID.83697. Yet Veolia does not explain why the Governor's Office would bear responsibility for checking in on Veolia's ultimate recommendations to a municipality and ensuring their implementation. Perhaps more importantly, Veolia does it explain how that office, **which had no direct interaction with Veolia at all**, could possibly be a proximate cause of the specific harm caused by Veolia's professional negligence. As Veolia separately acknowledges, providing information to Veolia and implementing its recommendations was the responsibility of officials in the City of Flint. *See id.* at PageID.83765. The Governor's Office and its members cannot possibly have breached a duty that proximately caused the incremental harm from Veolia's professional negligence.

The examples highlighted are by no means unique. Throughout Veolia's 120-page submission, Veolia makes allegations like those above for virtually every non-party.

The sole non-party Veolia identifies that could even ***possibly*** be a non-party at fault is the City of Flint (and the State of Michigan in its role as the City's Emergency Manager during the relevant period), given that Veolia has only identified two categories of conduct that that bear on causation—(1) the supposed failure to provide Veolia with the information needed for Veolia to adequately perform its work in Flint,[5] and (2) the purported failure to implement Veolia's recommendations[6]—both of which were responsibilities of the City of Flint. Only the City and its employees, and potentially the State as Emergency Manager, could be a proximate cause of harm for failure to provide information in advance or to implement recommendations after the fact given that only those parties interacted with Veolia in Veolia's role in Flint. This does ***not*** mean, however, that the non-party at fault statute is at issue: both the alleged failure to provide information and to implement recommendations can be decided by the jury as binary questions of causation. If Veolia indeed lacked adequate information to perform its role, then the jury could find it not liable for professional negligence. Likewise, if the jury

---

[5] These third parties are the City of Flint (Veolia Submission, PageID.83765), former City of Flint Dayne Walling, (*id.* at PageID.83768), the Flint Department of Public Works (*id.* at PageID.83771), Howard Croft (*id.* at PageID.83774–83775), Daugherty Johnson (*id.* at PageID.83777), Brent Wright (*id.* at PageID.83779), Michael Glasgow (*id.* at PageID.83781), and Darnell Earley (*id.* at PageId.83791).

[6] These are former Flint Mayor Dayne Walling (*id.* at PageID.83768), the Flint Department of Public Works (*id.* at PageID.83771), Daugherty Johnson (*id.* at PageID.83777), Brent Wright (*id.* at PageID.83779), Michael Glasgow (*id.* at PageID.83781), and Darnell Earley (*id.* at PageId.83791).

concludes that Veolia provided appropriate recommendations but the City made an informed decision not to implement them, then the claims against it would fail for lack of causation rather than a lack of professional negligence. Neither of these scenarios requires any allocation of fault—they do not implicate the Non-Party at Fault statute at all. *Cf. Veltman v. Detroit Edison Co*., 261 Mich. App 685, 694 (2004) (holding that causation defenses do not need to allocate fault and are available even if comparative fault statutes do not apply).[7]

### 2. Veolia misframes the harm that Plaintiffs' claim was caused by Veolia.

In light of its necessary acknowledgement that no non-party could be at fault for the aggravation of conditions caused by its own conduct, Veolia seeks to reframe the relevant question as being whether any non-party could have contributed to contaminated water conditions in Flint at any point. But Veolia's own citation to the statute (and Veolia's own emphasis in that citation) explains how a jury may allocate fault "to all persons that contributed to *the death or injury*" claimed. *Id*. (citing MCL § 600.6304(1)(b) (emphasis by Veolia). Stated differently, the question is ***not*** whether any third parties ever contributed to ***any*** contaminated water conditions in Flint; it is whether any third party contributed to the same "injury" Plaintiffs suffered

---

[7] In the event the jury concludes that Veolia is liable but the City of Flint contributed to the harm from Veolia's negligence, allocation of fault between the two is appropriately reserved for subsequent damages proceedings for the reasons set forth *infra*, § B.

in connection with the tort alleged against Veolia, which consists of Veolia's failure to recognize or stop Flint's contaminated water conditions when it "undertook to evaluate the quality of Flint's water." *In re Flint Water Cases*, 579 F. Supp.3d at 981. Both Veolia's Submission and the case law it cites make clear that the vast majority of non-parties could not be at fault for the specific harm "arising out of [Veolia's] undertaking" because, *inter alia*, Veolia never shows how those non-parties proximately caused the incremental harm flowing specifically from Veolia's breach of duty. Instead, Veolia's submission continues to broadly blame others for completely unrelated tasks giving rise to separate harm and which cannot establish the "direct relationship between the injury asserted and the injurious conduct alleged" necessary for a finding of proximate cause. *Evers*, 669 F.3d at 659.

Veolia's assertion that "Plaintiffs seek recovery for harms allegedly caused by exposure to Flint water during the entire crisis" mischaracterizes the scope of the issues trial. Veolia Submission, PageID.83683. First, there will not be a determination of any damages "recovery." Regardless of how much a plaintiff was harmed during the Flint Water Crisis, the issues trial is designed to focus specifically on whether Veolia was negligent in its professional duties—not how much "recovery" a plaintiff is entitled to. Second, Veolia's statement ignores that the class period is limited to between February 10, 2015 through October 16, 2015—the period after Veolia first began its engineering work for the city. Veolia does not

17

articulate how the listed non-parties can be responsible for the worsened conditions in Flint that Veolia caused during this limited period. Indeed, Veolia disregards this timeline completely, and seeks to implicate the actions of non-parties for conduct months or even *years* before they could have been responsible for the same harm as Veolia. *See, e.g.,* Veolia Submission, *id*. at PageID.83794–83796 (claiming that Rowe Professional Services breached duties that "proximately caused" the harm at issue exclusively via actions taken before February 2015—from September 2009 through June 2013); *id*. at PageID.83687, 83690 (claiming the EPA and its employees breached duties that proximately caused the harm at issue including by learning certain information in 2014); *id.* at PageID.83692–83693 (claiming the State of Michigan breached duties that "proximately caused" the harm at issue including via actions taken from March 2011 through January 2015); *id*. at PageID.83696–83697, 83700–83702, 83706–83707, 83710–83711 (claiming the Governor's Office and its staff breached duties that "proximately caused" the harm at issue including via various actions taken from April 2012 through January 2015); *id*. at PageID.83713–83715 (claiming the Michigan Department of Treasury breached duties that "proximately caused" the harm at issue via actions taken from 2011 through 2014); *id*. at PageID.83716–83717 (Dillon); *id*. at PageID.83718–83719 (claiming Workman breached duties that "proximately caused" the harm at issue via actions taken from February 2014 through February 3, 2015); *id*. at

18

PageID.83721–83722, 83724–83727, 83729–83732, 83736–83741, 83744–83745, 83747, 83749–83751, 83753–83754 (claiming the MDEQ and its employees breached duties that "proximately caused" the harm at issue including via actions taken from 2011 through 2014); *id*. at PageID.83761–83763 (Genesee County Drain Commissioner and its employees); *id*. at PageID.83766–83768 (claiming that Walling breached duties that "proximately caused" the harm at issue including via actions taken from August 2009 through January 2015); *id*. at PageID.83770–83774 (claiming that the Flint Department of Public Works and its employees breached duties that "proximately caused" the harm at issue including via actions taken from 2008 through 2014); *id*. at PageID.83783–83784 (claiming that Kurtz breached duties that "proximately caused" the harm at issue via actions taken from 2012 through 2014); *id*. at PageID.83785–83787 (claiming that Earley breached duties that "proximately caused" the harm at issue via actions taken from 2012 through January 2015); *id*. at PageID.83789–83790 (claiming that Ambrose breached duties that "proximately caused" the harm at issue including via actions taken from December 2011 through January 2015).

Despite this, Veolia's Submission argues that non-party fault cannot be limited to certain time periods because "[a] jury can allocate fault to any non-party whose conduct ***contributed to the water conditions*** that are alleged to have caused the plaintiff's claimed injury or injuries, no matter when the conduct occurred."

19

Veolia Submission, PageID.83681 (emphasis added). This is inaccurate. As the Court has observed, when a non-party's conduct occurred is a key consideration into whether that conduct could have possibly "continue[d] to harm people" throughout the class period. ECF No. 2486, PageID.82819. The Court thus requested that Veolia provide information to demonstrate "when somebody started being responsible for the harm." *Id*. Veolia's Submission explicitly refuses to do this.  Instead, Veolia tries to get around this settled law by arguing that Plaintiffs are seeking "recovery for harms allegedly caused by exposure to Flint water during the entire crisis." *Id*., PageID.83683. But again, Veolia entirely misframes Plaintiffs' case.

Veolia supports this incorrect characterization of Plaintiffs' claims by pointing to a general statement in Plaintiffs' June 2020 Fifth Amended Complaint that the Plaintiffs in this case have suffered harm from exposure to Flint's drinking water. *Id*. (citing ECF No. 1175-3, PageID.28606). That is certainly true. But this statement from a Complaint filed before Plaintiffs settled with the Governmental Defendants, at a time when Plaintiffs were seeking to recover both for Veolia's conduct ***and*** the conduct of those Governmental Defendants, does not define the harm that Plaintiffs allege was caused specifically by Veolia. As the Fifth Amended Complaint goes on to make clear, Plaintiffs allege they suffered harm specifically "resulting from the Veolia Defendants' failures to exercise reasonable care." ECF No. 1175-3, PageID.28790, ¶ 603. That is the only harm for which Plaintiffs seek to

hold Veolia liable, and Veolia has not even *tried* to argue that any non-party, with the possible exception of the City of Flint and the State as Emergency Manager, is at fault for that harm. It cannot do so.

### 3. Veolia is an independent cause of Plaintiffs' harm.

Veolia's Submission further fails to recognize that Veolia is an independent cause of the exacerbated harm Plaintiffs suffered. Veolia argues that because its negligence "is connected to Plaintiffs' alleged exposure, VNA can seek to allocate fault to anyone else that caused or contributed to causing that exposure." Veolia Submission, PageID.83683 (citing *Goodwin ex rel. Goodwin v. Nw. Michigan Fair Ass'n*, 325 Mich. App. 29, 155 (2018)). But Veolia ignores that, as of February 2015—when the City of Flint hired Veolia to review and evaluate the water treatment process and distribution system in Flint and ensure that the water distributed to Flint residents was safe—Veolia's intervening actions broke the causal chain and constitute a separate tort that created a separate harm.[8] Contrary to Veolia's characterization, it did not merely "fail[] to act to stop a harm caused by others," Veolia Submission, PageID.83683; it affirmatively took on the role of engineer for the City of Flint advising on the water distribution system, and it

---

[8] To the extent Veolia intends to argue that the EPA and its employees should have suggested particular action after learning of the high lead sample at Leanne Walters home, this too poses a separate tort on a separate timeline and does not implicate the specific incremental harm caused by Veolia's professional negligence.

21

breached its duty to the City of Flint to exercise the standard of care for professional engineers. Veolia "had a duty to avoid foreseeable physical harms arising out of that undertaking," yet it actively made corrosive water conditions worse. *In re Flint Water Cases*, 579 F. Supp.3d at 981. Veolia was hired to provide expert advice on Flint's water distribution system in its capacity as professional engineer service—a job that expressly included evaluating existing conditions that might be causing harm. Veolia's failure to identify and recommend ways to address the pre-existing problems created by others is a basis for finding it professionally negligent, not a basis for excusing it from liability.

The situation in *Doe v. Loomba* is illustrative. Case No. 19-174239-NO, 2020 Mich. Cir. LEXIS 660, at *5 (Mich. Cir. Ct. May 29, 2020). There a non-party doctor could not be at fault for the ***hospital's*** negligence in failing to prevent a sexual assault, even though the doctor was the original tortfeasor of the alleged assault, because the focus was on the harm arising from the hospital's "fail[ure] to take corrective action upon actual/constructive notice of Dr. Loomba's prior assaults." *Id*. at *5. Clearly the hospital did not assault the victim; but that does not negate its liability for its separate negligence. Here, Veolia may not have been the original source of corrosive water conditions; but that does not negate the harm from its separate negligence for failing to correct the situation.

**B.      Veolia's Submission Does Not Explain the Need (or How) to Allocate Fault with Respect to Each of the Categories of Harm Plaintiffs Allege.**

Even if the comparative fault analysis applied to the myriad parties listed in Veolia's appendix, Veolia still does not explain why allocation of fault between Veolia and these 38 non-parties should occur at the issues trial rather than in subsequent non-class proceedings where the roles of others could be considered in the context of particular categories of claimants and the causal damages shown by each (nor has it offered a workable path forward for adjudicating liability of dozens of non-parties in the context of an issues trial). Indeed, the non-party at fault statute makes clear that allocation of fault is inextricably intertwined with determining damages:

> In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct ***and the damages claimed***.

MCL § 600.6304(2) (emphasis added); *see also* MCL § 600.2957 (allocations of fault are to be made only "[i]n an action based on tort or another legal theory ***seeking damages***" (emphasis added)). As Plaintiffs previously explained, Michigan's model jury instructions further direct that the comparative fault "instruction should be used ***only*** for actions . . . ***seeking damages*** for personal injury, property damages, and wrongful death[.]" MICH. CIV. JI 42.05 (emphasis added). And under those instructions, the jury allocates responsibility only after it has found the defendant

liable and determined the amount of damages for which the defendant's conduct was a proximate cause. *Id.* Veolia's submission does not address this reality. Put simply, the jury cannot consider the causal relation between non-party conduct and damages at the issues trial because damages will not be addressed.

Reserving the issue of comparative fault serves judicial efficiency: the complicated legal and factual determinations that would need to occur to correctly allocate fault will be unnecessary if Veolia prevails at trial on its liability. *See, e.g., Carnell v. Vandervere*, 2007 WL 2404614, at *1 (Mich. Ct. App. Aug. 23, 2007) (noting how a "jury's verdict in favor of defendants, which was based solely upon the jury's determination that defendants were not negligent, rendered moot the issue of nonparty fault"); *see also In re: Veolia North America, LLC*, Nos. 21-0103/04/05, Dkt. 31-2 at 8 (6th Cir. Jan. 24, 2022) (holding that if "it is found that petitioners are responsible for harm caused by their breach of duty, that holding still significantly narrows the scope of subsequent trials to proof of proximate cause, relative fault, and damages"). Veolia itself has acknowledged the unnecessary complexity of addressing allocation of fault at the issues trial: as counsel for Veolia stated at the October 25 conference, "[a]nything that can be decided in a common basis in an issue class trial, we should try to do that. We just didn't think that percentages was going to be feasible." Dkt. 2253 at 38. Indeed.

It is thus most reasonable for any allocation of fault in a complex Rule 23(c)(4)

class case such as this one to be reserved until *after* a determination has already been made on the defendant's liability. For example, in the cases against big tobacco companies, the Eleventh Circuit has held that "a finding that the defendant has been negligent can be severed from a later proceeding that determines the comparative fault between the defendant" and any non-parties. *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1346 (11th Cir. 2018). The allocation of fault does not need to be made concurrently with determining whether the defendant was negligent—***they are two separate issues that require different structures of proof***. In an issues trial where the jury is tasked with determining whether Veolia breached a duty of care and was professionally negligent, requiring them to also allocate fault among ***38 non-parties*** would not merely distract them from the key task at hand, it has the potential to entirely eclipse the key liability inquiry (which is, of course, what Veolia hopes). Veolia has never proposed a framework or a reason why these determinations—if they are to be made at all—must be completed at the same time as when the jury determines Veolia's liability. As the statute and logic both dictate, they should not be.

## CONCLUSION

For the forgoing reasons, the Court should order that the issue of allocation of fault, if any, will be deferred until after the jury has decided liability and causal damages attributable to Veolia's conduct.

August 16, 2023                         Respectfully submitted,


*/s/ Theodore J. Leopold*                */s/ Michael L. Pitt*
Theodore J. Leopold                     Michael L. Pitt
**COHEN MILSTEIN SELLERS &**            Cary S. McGehee
**TOLL PLLC**
11780 U.S. Highway One                  **PITT MCGEHEE PALMER**
Suite N500                              **BONANNI & RIVERS, P.C.**
Palm Beach Gardens, FL 33408            117 West 4th Street
(561) 515-1400 Telephone                Suite 200
tleopold@cohenmilstein.com              Royal Oak, MI 48067
                                        (248) 398-9800 Telephone
Joseph M. Sellers                       mpitt@pittlawpc.com
Kit A. Pierson                          cmcgehee@pittlawpc.com
Emmy L. Levens
Alison S. Deich                         Paul Novak (P39524)
**COHEN MILSTEIN SELLERS &**            Diana Gjonaj (P74637)
**TOLL PLLC**                           Gregory Stamatopoulos (P74199)
1100 New York Ave. NW                   **WEITZ & LUXENBERG, P.C.**
Suite 500                               3011 West Grand Boulevard
Washington, DC 20005                    Suite 2150
(202) 408-4600 Telephone                Detroit, MI 48226
jsellers@cohenmilstein.com              (313) 800-4170 Telephone
kpierson@cohenmilstein.com              pnovak@weitzlux.com
elevens@cohenmilstein.com               dgjonaj@weitzlux.com
jweiner@cohenmilstein.com               gstamatopoulos@weitzlux.com
adeich@cohenmilstein.com

Vineet Bhatia                           Robin L. Greenwald
Shawn Raymond                           **WEITZ & LUXENBERG, P.C.**
**SUSMAN GODFREY L.L.P.**               700 Broadway
1000 Louisiana Street                   New York, NY 10003
Suite 5100                              (212) 558-5500 Telephone
Houston, TX 77002                       rgreenwald@weitzlux.com
(713) 651-3666 Telephone
vbhatia@susmangodfrey.com               Esther E. Berezofsky
sraymond@susmangodfrey.com              **MOTLEY RICE LLC**

26

Stephen Morrissey
Jordan Connors
Katherine M. Peaslee
**SUSMAN GODFREY L.L.P.**
401 Union St.
Suite 3000
Seattle, WA 98101
(206) 516-3880 Telephone
smorrissey@susmangodfrey.com

jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com

Lear Jiang
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
(310) 789-3100 Telephone
ljiang@susmangodfrey.com

Peretz Bronstein
Shimon Yiftach
**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
60 East 42nd Street
Suite 4600
New York, NY 10165
(212) 697-6484 Telephone
peretz@bgandg.com
shimony@bgandg.com

Bradford M. Berry
Anson C. Asaka
**NAACP**
4805 Mt. Hope Dr.
Baltimore, MD 21215
(410) 580-5777 Telephone
bberry@naacpnet.org
aasaka@naacpnet.org

210 Lake Drive East
Suite 101
Cherry Hill, NJ 08002
(856) 667-0500 Telephone
eberezofsky@motleyrice.com

Teresa Caine Bingman (P56807)
**THE LAW OFFICES OF TERESA
A. BINGMAN, PLLC**
120 N. Washington Square

Suite 327
Lansing, MI 48933
(877) 957-7077 Telephone
tbingman@tbingmanlaw.com

William Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
**GOODMAN & HURWITZ PC**
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170 Telephone
bgoodman@goodmanhurwitz.com
jhurwitz@goodmanhurwitz.com
kjames@goodmanhurwitz.com

Deborah A. LaBelle (P31595)
**LAW OFFICES OF DEBORAH A.
LABELLE**
221 N. Main St.
Suite 300
Ann Arbor, MI 48104
(734) 996-5620 Telephone
deblabelle@aol.com

Trachelle C. Young (P63330)
**TRACHELLE C. YOUNG &**

27

Neal H. Weinfield
**THE DEDENDUM GROUP**
(312) 613-0800 Telephone
nhw@dedendumgroup.com

Cirilo Martinez (P65074)
**LAW OFFICE OF CIRILO**
**MARTINEZ, PLLC**
3010 Lovers Lane
Kalamazoo, MI 49001

(269) 342-1112 Telephone
martinez_cirilo@hotmail.com

David J. Shea
**SHEA AIELLO, PLLC**
26100 American Drive
2nd Floor
Southfield, MI 48034
(248) 354-0224 Telephone
david.shea@sadplaw.com

Mark L. McAlpine (P35583)
Jayson E. Blake (P56128)
**MCALPINE PC**
3201 University Drive
Suite 100
Auburn Hills, MI 48326
(248) 373-3700 Telephone
mlmcalpine@mcalpinelawfirm.com
    jeblake@mcalpinelawfirm.com

**ASSOCIATES PLLC**
2501 N. Saginaw St.
Flint, MI 48505
(810) 239-6302 Telephone
trachelleyoung@gmail.com

Brian McKeen (P34123)
Claire Vergara (P77654)
**McKEEN & ASSOCIATES, PC**
645 Griswold Street
Suite 4200
Detroit, MI 48226
(313) 961-4400 Telephone

bjmckeen@mckeenassociates.com
cvergara@mckeenassociates.com

Cynthia M. Lindsey (P37575)
Shermane T. Sealey (P32851)
**CYNTHIA M. LINDSEY &**
**ASSOCIATES, PLLC**
8900 E. Jefferson Avenue
Suite 612
Detroit, MI 48214
(248) 766-0797 Telephone
cynthia@cmlindseylaw.com
shermane@cmlindseylaw.com

Andrew P. Abood (P43366)
**ABOOD LAW FIRM**
246 East Saginaw Street
Suite One
East Lansing, Michigan 48823
(517) 332-5900 Telephone

andrew@aboodlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2023, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

*/s/   Katherine Peaslee*_____
Katherine Peaslee