# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*

_____/          *The Hon. Judith E. Levy*


*Bellwether III Case No. 17-10164*

_____/



# PLAINTIFFS' OPPOSITION TO NICOLE FLOTTERON'S MOTION FOR PROTECTIVE ORDER

## CONTROLLING AUTHORITY

- Fed R. Civ. P. 26(c)

- Fed R. Civ. P. 45(d)(1)

- *HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.)*, 927 F.3d 919, 940 (6th Cir. 2019) (scope of discovery is broad)

# I.     INTRODUCTION

The Court should deny Nicole Flotteron's ("Flotteron" or "Movant") motion for a protective order, whereby she seeks to prohibit the taking of her deposition. As more fully described below, Flotteron, a non-party, was primarily responsible for writing and publicly sharing false and misleading information on behalf of the Veolia Defendants ("Veolia"), for close to six months, throughout the Bellwether I Trial ("Trial"). Further, Flotteron, through her work with Actum, LLC ("Actum"), likely communicated directly with counsel for Veolia during the Trial, despite representations from counsel to the contrary.

For close to a year, Plaintiffs have been misled regarding who was physically responsible for crafting and disseminating public, extra-judicial statements on Twitter during and about the Trial. These tweets included false and defamatory statements about Plaintiffs' counsel and Plaintiffs' experts; and false and misleading statements about the Court. Now, finally, Plaintiffs seemingly have identified that very person in the form of Flotteron, and she seeks to avoid answering questions about how she came to know what she shared; with whom she collaborated; and to what end.

This Court has an interest in ensuring fairness at trial. The Court should not only expect but demand that representations made to and about it and these proceedings are sincere. Regarding more than two-hundred public, extra-judicial

statements made on social media via Twitter by (or at least attributable to) Veolia, Flotteron is best positioned to provide specific information as to what happened inside and outside the courtroom during the Trial; what role she and others played; and what she and they intended to achieve. Finally, and while Plaintiffs are cognizant of Flotteron's time, the mere inconvenience of appearing for a short deposition (which counsel has offered to hold at any time her schedule permits) does not constitute a burden worthy of depriving Plaintiffs of this highly relevant discovery. Accordingly, the motion should be denied in no uncertain terms and in its entirety.

## II.     BACKGROUND

The Court should fully disregard Movant's so called "factual background," especially as it relates to the specific events leading up to Plaintiffs' request to depose her. At best, Flotteron unintentionally omits and misrepresents highly relevant information. At worst, she intentionally seeks to mislead the Court and the public.

### A.     Events Leading to Plaintiffs' Discovery Efforts Related to Veolia's Digital Misinformation Campaign

Plaintiffs first became aware of Veolia's possible attempts to influence potential jurors and of a potential misinformation campaign during the Trial, after being alerted to Veolia's Twitter handle – @VNAFlintFacts ("Twitter Account"). After bringing the Twitter Account and its content to the Court's attention, the Court rightfully inquired as to whether Veolia's trial counsel **or trial counsel's attorney**

**colleagues** "were involved in tweeting from the courtroom or from anywhere during the trial." Tr. Trans. at p.1928. Specifically, the Court sought to confirm that "other lawyers on [Veolia's] team [were] not tweeting about a witness, the identity of witnesses, expected testimony and so on." *Id.* at p.1895. Veolia's trial counsel responded that they had: "inquired with our team and with all the lawyers working on this case and can confirm that no one is involved with sending out tweets. Certainly from the courtroom but at all." *Id.*

Further examination revealed blatant and incessant attempts to use the Twitter Account to push individuals to Veolia's accompanying website, veoliaflintfacts.com ("Website"). It became apparent over the course of the Trial that Veolia was using the Twitter Account and Website as part of a larger scheme to spread misinformation about the Trial as it happened in real time.

Thereafter, and subsequent to the conclusion of the Trial, on September 8, 2022, *The Detroit News* published an investigative article analyzing Veolia's digital advertising campaign, which according to the piece began in 2016. (Kayla Ruble, "Company sued over Flint's water crisis wages digital PR war during trial," *The Detroit News*). Therein, Ruble described revelations that Veolia used an "ad blitz" between October 2021 and July 2022, as well as "dynamic [search] ads," targeting Google searches from direct users to the Website. Ruble further explained how

publicly available data revealed that during the Trial, Veolia utilized dynamic search ads to promote the Website.

Plaintiffs became increasingly concerned that Veolia's misinformation campaign was larger than a simple website and a Twitter handle, and likely included a buffet of intricate search optimization tools and targeted advertisements. Plaintiffs sought discovery to understand the scope and intent of Veolia's efforts. Plaintiffs requested information related to Veolia's Google advertising campaign-behavior and to depose various individuals who may have played a role in creating and utilizing the Twitter Account.

### B.   Despite Movant's False Representations of a "Fishing Expedition," Plaintiffs have been Purposefully Misled by Veolia and Actum

Flotteron asserts that "Plaintiffs' fishing expedition into Actum" began with a subpoena to Jennifer Kauffman ("Kaufmann"), who claimed her testimony was irrelevant, but who ultimately "appeared voluntarily for her deposition." ECF No. 2546, PageID.84119. This is a gross and manipulative representation of what actually occurred. Notwithstanding months of being misled by Veolia employees who intimated Pierre Farcot was responsible for Veolia's public, extra-judicial statements on Twitter, Plaintiffs served a subpoena on Kauffman based on testimony from Jace Connor, a Veolia employee. Connor described a meeting he attended subsequent to the publication of the aforementioned Detroit News Article, and claimed a consultant, Jennifer, from Actum, took responsibility for public statements

4

made on Twitter during the trial. **Exhibit A at p.76 (Jace Connor Deposition)**. Through due diligence, Plaintiffs determined that Connor must have been referring to Actum Senior Vice President, Kaufmann.

Veolia and counsel for Actum both objected to Kauffman's deposition, asserting that discovery related to the public relations campaign was not relevant. But importantly, they did not raise or object on the grounds that Kaufmann lacked such information. ECF No. 2546-5 (Counsel Objection); **Exhibit B (Veolia Objection).** Further, counsel for Actum, Steven Paradise ("Paradise"), engaged in multiple discussions — over several months — with Plaintiffs' counsel, seeking to understand the purpose of the deposition and ultimately to limit its scope. To that end, in good faith and after many lengthy exchanges, Plaintiffs agreed to limit Kaufmann's deposition to the scope proposed by Paradise, *to wit*: "Google Dynamic Ads … things that relate to Google Dynamic Ads … [to] Twitter and all of that kind of stuff." (Kauffman Deposition at p.15).[1]

After all of this – months of negotiations, many emails, and multiple phone calls with Paradise – when it finally came time to depose Kauffman on March 30, 2023 (four months after the subpoena was served), within minutes it became clear

---

[1] At Kauffman's deposition, Paradise stated this was the scope, as well as orally and inexplicably designated the deposition "confidential and for attorney eyes only." Accordingly, the subject transcript is available upon request from the Court or can be filed under seal.

that she in fact possessed **no** information related to Veolia's digital misinformation campaign, and that she was fundamentally the wrong witness. Instead, she indicated that the person Plaintiffs were really looking for might be another "Jennifer," whose last name is "Wlach" ("Wlach"). *Id.* at p.20-24. This shocked Plaintiffs' counsel, who had spent months negotiating the scope of what Paradise and Veolia would or should have known was a meaningless deposition. All the while, not once did Paradise or Veolia mention that Kauffman had no information related to anything about the campaign, let alone about the litigation, the Trial, or the limited scope Paradise insisted upon. Suffice it to say that Plaintiffs were either intentionally misled by Kauffman's counsel, or he simply spent months negotiating the deposition of a client he literally knew nothing about. Either way, Plaintiffs' counsel trusted that those discussions were more than an exercise. And why Veolia, for whom and from whom the subject statements were made, sat by silently, is as much an abomination as it is a mockery of this Court and these proceedings.

Subsequent to Kauffman's deposition, Plaintiffs issued a subpoena for Wlach's deposition. But in the interest of avoiding the same experience, Plaintiffs' counsel sought the Court's assistance in confirming that Wlach was the right witness. And on April 19, 2023, the Court instructed counsel for Veolia to "at least tell us who at Actum played a role on behalf of VNA as part of the [@VNAFlintFacts] Twitter handle." ECF No. 2422, PageID.77242. Weeks later, on

May 3, 2023, counsel for Veolia identified Michael McKeon ("McKeon") as "the most knowledgeable person at Actum regarding the digital communications." **Exhibit C (Email Correspondence from Counsel for Veolia).**[2]

On May 15, 2023, Plaintiffs — believing the correct person had finally been identified — served a subpoena for McKeon's deposition. Again, Paradise, as counsel for Actum as well as for McKeon, negotiated the terms of the deposition. And again, in good faith, Plaintiffs agreed to a limited scope drafted by the deponent's counsel, *to wit*: "anything involving VNA's digital advertising and social media, including Twitter, leading up to and during the Bellwether I trial." **Exhibit D (Email Correspondence from Counsel for Actum).**

A month later, McKeon appeared for his deposition. But it was cut short after the witness called Plaintiffs' counsel's question's "ridiculous," and after Paradise became belligerent. ECF No. 2546-7 (McKeon Deposition) at p.71-75; *see also* https://spaces.hightail.com/space/5g0TEXpRif.

The deposition reconvened on June 23, 2023, at which time McKeon admitted it was not his primary function to actually craft the tweets that were publicly disseminated from the Twitter Account during the Trial, but Plaintiffs minimally learned that:

---

[2] Interestingly, McKeon's name and signature miraculously and recently appeared on a newly discovered contract, which Veolia claims shields it from having to turn over documents the Court ordered be produced. ECF No. 2565-1.

(1)   McKeon did little if any of the actual posting on the Twitter Account himself and he did not have log-in credentials;

(2)   It was Flotteron (or someone junior to her) who maintained credentials and composed most of the tweets;

(3)   While Pierre Farcot may have suggested content for the Twitter Account, McKeon did not recall Farcot drafting content;

(4)   McKeon minimized Farcot's role in Veolia's communications during the Trial;

(5)   McKeon claims to have approved the tweets that were disseminated from the Twitter Account during the Trial;

(6)   At least one Veolia attorney, who during trial was apparently participating behind the scenes, was in communication with McKeon and his team during (and possibly in advance of) trial (despite representations to the Court that no lawyers were involved in or had knowledge of the Twitter account); and

(7)   Veolia intends to use Actum, McKeon, and his team going forward with regard to the next scheduled trials. *Id.* at 29-30, 44-47.

And as to Flotteron, McKeon specifically testified that she was the one who "chiefly" monitored the trial and created the Twitter content. *Id.* at 97; *see also* 23, 24, 27, 46, 95, 96, 97, 105-106, 107, 108, 111.

In light of the above, it is clear Plaintiffs' efforts to obtain information related to Veolia's digital advertising campaign has been thwarted and delayed by Actum and Veolia at virtually every turn. The present motion is just the most recent of many obstacles created by Veolia or someone on their behalf around which Plaintiffs must navigate to find the truth about Veolia's efforts and desired outcomes.

## III.   APPLICABLE LEGAL STANDARD

Under the Federal Rules of Civil Procedure, Plaintiffs are permitted and entitled to take the deposition of a non-party as part of discovery. Fed. R. Civ. P. 45; Fed. R. Civ. P. 30. "Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence." *Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control, Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306, at *11 (E.D. Mich. Nov. 3, 2015); Fed. R. Civ. P. 26(b)(1).

Within these guidelines, courts routinely and consistently have held that the trial court has "broad discretion" to determine the proper scope of discovery. *Marsico v. Sears Holding Corp.*, 370 F. App'x 658, 664 (6th Cir. 2010) ("The scope of discovery is … within the broad discretion of the trial court."). Importantly, "the scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998); *HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.)*, 927

F.3d 919, 940 (6th Cir. 2019) ("Also fortunately for plaintiffs, discovery is quite broad under the Federal Rules of Civil Procedure."). Moreover, the Sixth Circuit has verified that this "permissive [discovery] standard allows 'extensive intrusion into the affairs of both litigants ***and third parties***.'" *HD Media Co.*, LLC v, 927 F.3d at 941 (quoting Supreme Court case) (emphasis added).

While Flotteron moves for a protective order under Federal Rule 26(c)(1), that rule provides the Court discretion to limit discovery **<u>only</u>** "for good cause," and to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.  Civ. P. 26(c). "The burden of establishing good cause … rests with the movant." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). And a movant only "demonstrates good cause by articulating 'specific facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements.'" *Blumberg v. Ambrose*, No. 13-CV-15042, 2014 U.S. Dist. LEXIS 142781, at *4 (E.D. Mich. Oct. 7, 2014) (quoting *Nix*).

## IV.   ARGUMENT

### A.   The "Justification" for Plaintiffs' Discovery Regarding Veolia's Misinformation Campaign is Not, and Has Never Been Limited to Veolia's Use of Google Dynamic Ads

Flotteron argues that "[t]he Court previously limited Plaintiffs' discovery regarding VNA's public relations consultants to whether VNA, or anyone acting on behalf of VNA, used [Google Dynamic Search Ads]." Under that false premise, she

10

further argues that because the use of Google Dynamic Search Ads "did not happen in the first instance[,]" and because McKeon confirmed that Actum did not use Google Dynamic Search Ads for Veolia, any questions asked of her would be "unwarranted" and serve only to burden her. ECF No. 2546, PageID.84124.

Flotteron is wrong on all fronts. Initially, this argument flies in the face of the very scopes negotiated by Paradise as to Kauffman's, McKeon's, and Flotteron's own deposition. Paradise specifically included topics _beyond_ the use of Google Dynamic Ads. Namely "_anything_ involving VNA's digital advertising and social media, _including Twitter_, leading up to and during the Bellwether I trial." **Exhibit E (Email Correspondence from Counsel for Actum)** (proposing that Flotteron's deposition be limited to the same scope as McKeon's).

Next, the Court did not limit _all_ discovery to the use of Google Dynamic Search Ads. Flotteron myopically relies on a February 8, 2023 conference, wherein the Court stated that certain discovery requests should "focus on the dynamic search ad campaign and not other issues." ECF No. 2546, PageID.84122 (citing ECF No. 2546-8, PageID.84352). But that statement was made in connection with very specific written discovery requests made to Veolia, not as a blanket ruling as to relevance and permissible discovery as a whole, especially as to non-parties.

And while a desire to uncover the extent of Veolia's use of Google Dynamic Ads is certainly _a reason_ for Plaintiffs' efforts, it is not and has never been _the sole_

11

*reason.* The motivation for uncovering exactly what and why Veolia did what it did during the Trial starts and ends with an *overarching concern* about the sanctity of this litigation; fundamental fairness to the parties; and how and whether Veolia's public posts constitute extra judicial statements and their effect. *See* ECF No. 2298 (Plaintiffs' Motion to Compel), PageID.74255; *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030 (1991).[3]

## B. It is Undisputed that Flotteron has Relevant, Non-Duplicative Information

The Movant argues that Actum's public-relations work for Veolia is not relevant. Again, she is mistaken. Plaintiffs have consistently shared a serious concern that Veolia used the Twitter Account and Website as part of a larger scheme to spread misinformation about the Trial as it happened in real time, and about larger aspects of the litigation, with the desired effect that this misinformation would reach sitting and future jurors. The Court has already indicated that this concern is relevant to the underlying claims and defenses, ECF No. 2546-8, PageID.84333-PageID.84334. Indeed, the Court posited:

> If a plaintiff has a claim, let's say in this one that your client either contributed to or prolonged the Flint Water Crisis and their exposure to lead and Legionella, things of that nature. Let's say that's a

---

[3] Moreover, Ms. Flotteron clearly underestimates the magnitude of scale and potential impact of Veolia's actions. For example, she states the use of Google Dynamic Search Ads "did not happen in the first instance," but as the parties and the Court know, that is **entirely incorrect**. *See* ECF. 2550 (Dr. Cohen Expert Declaration Re: Veolia Google Advertising Campaign-Behavior).

hypothetical. And it turns out that the claim is -- hits a brick wall because there is jury tampering. I'm not saying that happened. But that seems to be what Mr. Stern is concerned about. And not the criminal jury tampering. But jury persuasion outside of the legal -- outside of the courtroom. Would that not be relevant to his pursuit of the claim?

ECF No. 2546-8, PageID.84333-PageID.84334.

Additionally, the Supreme Court of the United States has instructed the scope of permissible discovery extends broadly to "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Conti v. Am. Axle & Mfg., 326 F.* App'x 900, 904 (6th Cir. 2009) (citing Supreme Court precedent). Here, the information sought about the potential influencing of past or present jurors would of course lead to matters that could bear on, any issue that is or may be in the case.

Even beyond the influencing of jurors, Veolia's public relations campaign should be of major concern to everyone involved in the litigation. Veolia's Twitter posts speak directly to virtually ***all*** of the facts associated with the parties claims and defenses. The Twitter Account disparages Plaintiffs' experts; cherry picks witness testimony; and persistently touts its main defense — that the Flint Water Crisis was a massive failure of government on all levels. It is therefore without dispute that creation of such posts is relevant to *and part of* Veolia's defense.

McKeon's deposition established that Flotteron can provide information relevant to all of the concerns listed above. She can describe how she came upon

information that formed Veolia's tweets; how, when, and why she went about composing Veolia's tweets; the extent of attorney involvement in the provision of that information and/or in crafting and approving the tweets; whether she discussed the Twitter Account with attorneys or anyone else from or on behalf of Veolia prior to, during, or subsequent to the Trial; and why she chose to link virtually every single tweet to Veolia's Website.

Flotteron further argues, without merit, that in any event such testimony is duplicative. It is not. McKeon himself testified that Flotteron (not he) was the one who "chiefly" monitored the trial and created the content. ECF No. 2546-7, PageID.84254. Therefore, it is obvious that she will be able to provide relevant information well beyond what McKeon would or could.

## C.   Flotteron Has Not Met the High Burden Justifying a Protective Order

To make a credible argument warranting the deprivation of Plaintiffs' rights to subpoena a non-party under Rule 45 and obtain discovery under Rule 26 and 30, a movant must demonstrate a "clearly defined and ***serious injury***' resulting from the discovery sought.'" *Blumberg v. Ambrose*, No. 13-CV-15042, 2014 U.S. Dist. LEXIS 142781, at *4 (E.D. Mich. Oct. 7, 2014) (quoting *Nix*) (emphasis added). Here, Flotteron has not come close to meeting this burden.

The Movant explains that she is a new mother, with two young children, and that she would have to take time off work in order to sit for a deposition. Because

14

Plaintiffs are sympathetic to these concerns, and do not seek to burden Flotteron, Plaintiffs offered to limit the Movant's deposition to two hours and to conduct the deposition *via* Zoom after work hours, on a weekend, or at any time most convenient for the witness. **Exhibit F (Email Correspondence to Counsel for Actum).** Flotteron's counsel not only failed to respond substantively to this offer, but conveniently omitted its mention from the subject motion and from his declaration.

It should be noted that none of the other Actum employees who were deposed – Kauffman or McKeon – sought a protective order on these grounds. Certainly, both were inconvenienced (as anyone would be). And Kauffman in particular could have made a compelling case for protection, considering she literally knew <u>nothing</u> about Veolia's conduct during this litigation. But rather than seeking a protective order for Kauffman, the deponent with no knowledge, or McKeon, the deponent with supervisory knowledge, their attorney <u>now</u> seeks protection for the actual author of the content associated with Veolia's Twitter Account, which begs the question: What are they hiding?

Needless to say, in light of the limited, remote, and flexible nature proposed by Plaintiffs for this deposition, the "burden" detailed in Flotteron's accompanying affidavit is not of the kind that Courts accept as justification for restricting discovery. *See Allstate Ins. Co. v. Testing*, No. 18-cv-13336, 2019 U.S. Dist. LEXIS 237738, at *8 (E.D. Mich. Sep. 9, 2019) ("[G]ood cause is not established merely by showing

15

that discovery may involve inconvenience and expense.") (citation omitted); *Serrano v. Cintas Corp*., 699 F.3d 884, 901 (6th Cir. 2012) ("To justify restricting discovery, the harassment or oppression should be unreasonable, but discovery has limits and … these limits grow more formidable as the showing of need decreases.") (internal quotations and citations omitted).

### D.      Flotteron's Request for Fees and Costs is without Merit

Flotteron implies that because Plaintiffs have deposed *other people* associated with her former employer, Actum, somehow that, in and of itself, justifies a request for costs and fees she incurred related *to her* deposition. Plaintiffs need not even respond to this disingenuous argument.[4]

Nevertheless, the payment of costs and fees incurred is not warranted under either Rule 45 or Rule 37. As set forth above, Plaintiffs took "reasonable steps to avoid imposing an undue burden" on the deponent. Plaintiffs agreed to limit the scope of the deposition and offered to limit the time of the deposition to two hours, at <u>whatever</u> time and on <u>whatever</u> day was most convenient for the Movant. Fed. R. Civ. P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").

---

[4] Moreover, it is clear that Plaintiffs' need for multiple depositions has been due in large part to Veolia's and Actum's refusal to act with transparency and candor.

Additionally, Plaintiffs' request to depose Flotteron is "substantially justified" pursuant to Rule 37(a)(5). The Sixth Circuit has held that a party meets the "substantially justified" standard if "there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urban Co. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (citation omitted). Here, Plaintiffs have far exceeded this standard and have clearly articulated why Veolia's conduct (and in the process possibly Flotteron's) may have deprived them of a fair trial, and more presently might be inappropriately affecting the litigation, could continue to as new trials take place, making her limited deposition more than reasonable and certainly appropriate. *Cf. Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp*., No. CV 12-10803, 2015 WL 5132583 at *2-*3 (E.D. Mich. 2015) (cited by Flotteron: awarding fees in circumstances completely inapposite to those at hand). Finally, Plaintiffs should not be further punished for attempting to uncover information inextricably tied to their right to a fair trial. *See* Fed. R. Civ. P. 37 (a)(5)(iii) (fees not warranted when "other circumstances make an award of expenses unjust").

## C.    CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court deny the motion for a protective order and require the Movant to appear for the requested deposition.

Dated:      August 18, 2023                    Respectfully submitted,

                                               **LEVY KONIGSBERG LLP**

                                               /s/Corey M. Stern
                                               Corey M. Stern
                                               605 Third Ave., 33rd Floor
                                               New York, New York 10158
                                               (212) 605-6298
                                               cstern@levylaw.com

                                               /s/ Melanie Daly
                                               Melanie Daly
                                               605 Third Ave., 33rd Floor
                                               New York, New York 10158
                                               (212) 605-6290
                                               mdaly@levylaw.com

                                               ***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on August 18, 2023 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

<u>/s/ Melanie Daly</u>
Melanie Daly
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6275
mdaly@levylaw.com