UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM <br><br> (consolidated) <br><br> Hon. Judith E. Levy <br><br> Mag. Mona K. Majzoub |

**OPPOSITION OF RESPONDENTS GERALD J. WILLIAMS AND
MARK R. CUKER TO ESTHER BEREZOFSKY'S
MOTION TO DISTRIBUTE FEES (ECF# 2552) AND
CROSS-MOTION TO DISTRIBUTE FEES**

Respondents Gerald Williams and Mark Cuker oppose Esther Berezofsky's motion to distribute $1 million in Common Benefit Award ("CBA") fees solely to her firm, and cross-move to distribute $87,531 to the former partners of Williams Cuker Berezofsky ("WCB"), in the form of three separate checks for $29,177 each payable to Gerald Williams, Mark Cuker and Esther Berezofsky, with the remaining $912,469 to be paid to Berezofsky's new firm, Motley Rice.

In support thereof, Respondents submit the within Brief and Declarations.

WHEREFORE Respondents respectfully request this Court order distribution of $87,531 to the former partners of WCB, in the form of separate checks for $29,177 each payable to Gerald Williams, Mark Cuker and Esther Berezofsky, and distribution of the remaining $912,469 to Motley Rice.

1

Dated:  September 1, 2023

/s/ Mark R. Cuker
MARK R. CUKER
CUKER LAW FIRM, LLC
One Logan Square, Suite 1200
Philadelphia, PA  19103
(215) 531-8512
mark@cukerlaw.com


/s/ Gerald J. Williams
GERALD J. WILLIAMS, ESQUIRE
One South Broad Street, Suite 1510
Philadelphia, PA  19107
Telephone:  215.557.0099
Facsimile:  267.273.7758
gwilliams@williamscedar.com

*Pro Se*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases, | No. 5:16-cv-10444-JEL-MKM<br><br>(consolidated)<br><br>Hon. Judith E. Levy<br><br>Mag. Mona K. Majzoub |

**BRIEF OF RESPONDENTS GERALD J. WILLIAMS AND MARK R. CUKER IN OPPOSITION TO ESTHER BEREZOFSKY'S MOTION TO DISTRIBUTE FEES (ECF # 2552) AND IN SUPPORT OF THEIR CROSS-MOTION TO DISTRIBUTE FEES**

**ISSUE PRESENTED**

1. Should the Court honor the Dissolution Agreement executed by Esther Berezofsky, Gerald Williams and Mark Cuker, and order distribution of Common Benefit fees in this case on the lodestar basis specified by that Agreement?

Respondent's Answer: Yes

**CONTROLING OR MOST APPROPRIATE AUTHORITY**

*In re Syngenta AG MIR 162 Corn Litigation* 61 F.4th 1126, 1200 (10th Cir. 2023).

### Introduction

Ms. Berezofsky's effort to deprive her former partners, Williams and Cuker ("WC") of a paltry $58,354 out of a $1,000,000 fee award must fail, because it violates the Dissolution Agreement she signed with them when WCB dissolved in

1

2017. That agreement clearly states that any fees awarded in the Flint litigation must be divided between WCB and Berezofsky's new firms on a "lodestar basis".

Contrary to Berezofsky's claim, the 2018 Arbitration between her and Cuker had nothing to do with the disposition of WCB fees accrued prior to dissolution. It solely involved fees generated by Berezofsky's post dissolution work.

Indeed, in a later arbitration proceeding among the parties, Berezofsky specifically denied WC's allegations that she would try to "divert any funds which would otherwise be due WCB to herself and her new firms." Instead, she agreed that WCB is entitled to fees, and that they should be equally divided three ways.

**Background**

When the CBA fee application was made, Berezofsky submitted a single declaration on behalf of both WCB and her current firm, Motley Rice, (which was combined with time compiled by her interim firm, Berezofsky Law Group ECF 1458-24 PageID 57470). Thus, contrary to Berezofsky implication at PageID 84502, WCB satisfied the requirements of the Common Benefit Order ECF No. 2105.

Berezofsky's fee declaration stated, "I have been involved in the Flint Water Crisis Litigation and represented plaintiffs impacted by the Flint Water Crisis since 2016" (WCB dissolved effective July 24, 2017). 1458-24 PageID 57471. Her affidavit showed the total lodestar was WCB was $257,966, for the combination of BLG and Motely Rice $2,689,775 with the combination for all firms totaling

2

$2,947,741.50. 1458-24 PageID 57477-57479. Under their Dissolution Agreement, Williams, Cuker and Berezofsky were each entitled to one-third of WCB's share. The special master's review of these lodestar submissions found no irregularities by any of the firms involved. ECF No. 2104-1 PageID 72039.

Based on this affidavit, co-lead counsel allocated a total of $1,000,000 to Berezofsky's firms. Co-lead counsel made no effort to allocate the $1,000,000 between WCB and Berezofsky's new firms. Instead, he asked them to reach an agreement on how the fund should be divided and inform him of that agreement with directions on where to send the money and in what amounts. Williams Dec paras. 13-15 and Ex. A thereto. Co-Lead Class Counsel, joined by the entire Executive Committee for Class Plaintiffs except for Ms. Berezofsky, maintained that position in a recent filing. ECF 2572.

When the $39 million CBA was distributed, Williams wrote to Berezofsky about the status of the allocation. In response she stated, "***There is no dispute that WCB is entitled to fees***." Williams Dec. Ex.B, July 11, 2023, email at 6:29 AM

Notwithstanding this statement, Berezofsky now disputes that WCB is entitled to ANY fees and seeks to take 100% of the $1 million for herself.

3

In emails to WC, Mr. Leopold repeatedly stated that allocation of the $1 million between WCB and Berezofsky's new firms was left entirely to them to resolve by agreement.

> Esther and Mark
> I am planning on sending out the common benefit fees early next week. The $1 million fee to Esther/Cuker/Motley will be held until a get a joint email telling me on where to send the funds or divide them up, etc. thanks.

Cuker Dec Ex. F Leopold email 8/4/23 at 2:25 PM

> Esther total common benefit fee *for all her firms* is $1 million. How she distributes it is between her and you. Please deal with her about this

Williams Dec Ex. D, Leopold 7/28/23 email at 9:21 AM (emphasis added).

(in response to Cuker's request for an allocation among WCB and the other firms)

> "When you all work it out let me know."

Cuker Dec Ex. I, Leopold 7/19/23 email at 2:17 PM

> "I will do nothing until I get approval letters/emails from both sides."

Williams Dec Ex. A, Leopold 7/7/23 email at 3:45 PM

In fact, WC and Berezofsky had already reached an agreement on how those fees should be divided, in the Dissolution Agreement which they executed in 2017. That Agreement contained the following relevant language:

4

(a) The parties agree that the Fee allocations between WCB and the respective New Firms shall be as provided on <u>Schedule I</u>.  The parties agree that any case designated as a "Lodestar", for purposes of calculating the fee allocations between WCB and the respective New Firm the allocations be calculated in accordance with <u>Schedule 2</u>. EX – p. 3-4.

The exhibit then shows Flint as a lodestar case, and includes a detailed explanation of how the lodestar calculation should be made:

| Schedule 1 | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Case Name | Type of Case | Date Open | Stage E-M-L-S | Est. Costs to Date | Projected Fees | WCB Fees | New Firm | New Firm Fees | Exp. Resolv |
| Co-Counsel Cases | | | | | | | | | |
| Flint | ETT | 3/2/16 | E | $16,805 | | Pre 7/24/17 Lodestar | EB Firm, MRC Firm & WC | Post 7/24/17 lodestar | 3Q 20 |
| Flint | ENV Class & indiv | 3/2/16 | E | $18,248 | | Pre 7/24/17 Lodestar | EB Firm, MRC Firm & WC | Post 7/24/17 lodestar | |

Schedule 2

Calculation of Lodestar - Fee Split

For all Open Cases which are designated as "Lodestar" on <u>Schedule I,</u> the fee split between WCB and the applicable New Firm shall be calculated as provided in this <u>Schedule</u> 2.

A. The following defined terms shall have the following meanings:

"Fee Awarded for Case" means the total legal fees awarded for a particular matter or case, but shall not include the costs associated with the particular case or matter.

"Rate" means the legal rate for attorneys and paralegals shown on <u>Schedule 2A</u>.

"Hours Charged" means the actual and accurate hours spent by attorneys and paralegals on a particular matter or case.

"Gross WCB Fees" means Rate multiplied by Hours Charged by WCB on or prior to the Accounting Date.

"Gross New Firm Fees" means Rate multiplied by Hours Charged by New Firm after the Accounting Date.

5

> "Total Gross Fees" means the total of Gross WCB Fees and Gross New Firm Fees.
>
> "WCB Percentage" means expressed as a percentage the Gross WCB Fees divided by Total Gross Fees.
>
> New Firm Percentage means expressed as a percentage the Gross New Firm Fees divided by Total Gross Fees.
>
> B. The amount of fees shall be split between WCB and the New Firm as follows:
>
> 1. The WCB Fee Amount shall be the Fee Awarded for Case multiplied by WCB Percentage.
>
> 2. The New Firm Fee Amount shall be the Fee Awarded for Case multiplied by New Firm Percentage

Cuker Dec. Ex A Schedule 2 (Filed under seal).

Accordingly, Wiliams repeatedly asked Berezofsky to agree to a lodestar-based allocation.

> Esther, given Ted's email that he is holding $1,000,000 in common benefit fees, and is prepared to issue same next week, can we agree and confirm to Ted that, in proportion to the firms' lodestar, Williams Cuker Berezofsky should receive 8.7531% of the total ($87,531), consistent with earlier emails?
>
> Let me know. Thanks.

Williams Dec para. 26 and Ex F 8/4/23 email at 2:52 PM

Four days later, at 11:32 on August 8, Berezofsky announced that she was disputing the entire $87,531 allocation for WCB while demanding immediate payment of over $912,000 to Motley Rice. Williams Dec. para. 27 and Ex. G

6

**Argument**

**The Court should require Berezofsky to honor the Dissolution Agreement she signed and order distribution of the $1 million on a lodestar basis.**

The 42-page WCB Dissolution Agreement was the product of months of hard-fought negotiations with each party represented by separate counsel. Williams Dec. para. 4.; Cuker Dec. para. 4. The agreement painstakingly defines "lodestar" to make the criteria as objective as possible, so as to obviate future disputes. Substituting an entirely new set of criteria, with much subjectivity, six years after the agreement was signed changes the rules of the game in the 9th inning and retroactively deprives WC of the benefit of their bargain.

Attorney fee sharing agreements should be honored as long as they do not conflict with the interests of a class in a class action or otherwise violate the attorney's code of ethics. *In re Syngenta AG MIR 162 Corn Litigation* 61 F.4th 1126, 1200 (10th Cir. 2023) ("Where attorneys jointly representing a client have an agreement as to the method of dividing the overall fee, the agreement should control, at least where there is no breach of the agreement and no violation of the applicable rule on fee splitting " (cites and quote omitted)) *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf, Haldenstein Adler Freeman & Herz, LLP,* 601 F.Supp.2d 991, 998-999 (W.D. Tenn. 2009) (upholding fee sharing agreement where fees were shared proportionately with the work done); *Grant & Eisenhofer, P.A. v. Bernstein Liebhard LLP* 2015 WL 5751252 (SDNY) at * 6. *See, generally*, 1 Robert L. Rossi,

7

*Attorneys' Fees* § 4:3. Fed. R. Civ. P. 23(h) 2003 comment ("Courts have also given weight to agreements among the parties regarding the fee motion, and to agreements between class counsel and others about the fees claimed by the motion.")

Berezofsky does not claim the agreement violated any ethical rules.

The fact that Co-Lead Class Counsel may have used a different method to allocate fees among the various firms is of no moment; co-lead counsel has no power to alter the terms of the agreement which Berezofsky signed with WC, and, in fact, has repeatedly declined to do so.

Indeed, in another class action involving the firms which was settled in 2021, *In re Dollar General Corp. Motor Oil Marketing and Sales Practices Litigation*, U.S.D.C. W.D. Mo. MDL No 2709, lead counsel also allocated fees among the firms without applying a strict lodestar analysis, instead employing "tiers" (i.e., putting law firms in Tier 1, 2 or 3 depending on the level of their contribution). Cuker Dec. Ex. B. Yet in that case, Berezofsky complied with the DA, and the fees between WCB and Berezofsky's new firm were nonetheless allocated on a lodestar basis. See Cuker Dec Ex. C.

**If the court chooses to ignore the DA and impose its own factors to allocate fees, or adopt those of co-lead class counsel, it must allow WC discovery of Berezofsky's itemized billing so they can see how her efforts fit the criteria.**

Try as she might, Berezofsky cannot make herself judge and jury of her own fee award. If the Court chooses to disregard the agreement and impose different

8

criteria, WC are entitled to a full and fair hearing on how those criteria should be applied to the $1 million available. These include a full inquiry into Berezofsky's "substantive contributions" to the case and the quality of her work. See Cuker Dec. Paras. 18-23.

WC cannot receive a full and fair hearing on those issues without discovery of the itemized time records of Berezofsky's new firm. *International Union, United Auto., Aeorspace, and Agr. Implement Workers of America v. General Motors Corp.*, 497 F.3d 615, 635-36, 41 E (6th Cir. 2007). *See also* Fed. R. Civ. P. 23(h) advisory committee's note (2003) (stating, in the context of fee approvals, that in appropriate cases the court will permit an objector "discovery relevant to the objections").

Moreover, it is difficult to discern how Co-Lead Class Counsel's application of the five factors enumerated on Ex. A to Berezofsky's motion (ECF No. 2552-1 PageID84507) resulted in a fee allocation of exactly $1,000,000. Accordingly, it may also be necessary to depose Co-Lead Class Counsel, to gain a greater understanding of the factors applied and how they were weighed in arriving at this fee allocation.

In any event, certain factors used in Co-Lead Counsel's allocation are of questionable relevance here. That allocation states that "full support of the class case will be valued significantly" in allocating the fee award. But this is an award of "common benefit fees" ("CBA" in the court's order) and is derived from 6.33% of the total settlement amount. ECF No. 2015 PageID 72142. It is separate and distinct

from class action fees, which are separately itemized in the court's order. *Id.* at PageID 72142-72143.

A relatively small portion of the total settlement amount derives from the class action. The class definition specifically excludes all persons who were under age 18 at the time of exposure and all other persons who had already hired their own lawyer at the time the settlement was announced. ECF No. 1319-11 PageID 41353. Under the terms of the settlement, 79.5% of the amount is allocated to children who are definitionally outside of the class.

Although 18.5% of the amount is allocated to adults, over 15,000 adults had retained counsel, and are also excluded from the class, as of the date of the Special Master's Third Census Report dated April 17, 2020 ECF No. 1105 PageID 27509.

We do not know how many unrepresented claimants are in the class, but it is reasonable to conclude that individually represented claimants will ultimately recoup most of the settlement amount for adults.

It is thus likely that at least 90% of the settlement amount will be paid outside the class action, which means that at least 90% of the CBA is not derived from the class action. Co-lead class counsel's statement that "full support of the class case will be valued significantly" does not comport with the reality that 90% of the CBA was not derived from the class case. ECF 2552-1 PageID 84507

**The 2018 Arbitration decision which Berezofsky presents said nothing about the disposition of WCB fees due to time expended prior to dissolution, and only addressed the issue of whether Berezofsky needed to include Cuker in Class Action related fees for work spent on the case post Dissolution.**

Schedule I of the DA states that the Flint class case is a "co-counsel" case and that Cuker ("MRC") as well as Berezofsky are to participate in the case as "new firms." On September 29, 2017, over two months after the effective date of WCB's dissolution, a Consolidated Class action Complaint was filed in which Darrell and Barabara Davis, both WCB clients, were listed as class representatives. Berezofsky was listed as one of the attorneys for the putative class while Cuker was excluded from the complaint.Doc.# 214, PageID 8505 (Consolidated Class Action complaint identifying Darrell and Barabra Davis as class representatives). On the same day, September 29, 2017 Berezofsky was named to the Executive committee. Doc.# 212 PageID 8454.

Cuker filed suit, claiming that, because the Flint action was identified as a "joint" case in which both Berezofsky and Cuker had a right to participate post-dissolution, Berezofsky had to share her post dissolution fees with him.[1]

---

[1] Cuker will make the complete 2018 arbitration file, including the original complaint and all orders of the arbitration panel, available to the Court for *in camera* review if necessary.

As Berezofsky's own Exhibit B makes clear, the 2018 arbitration concerned only "fees generated as a result of Berezofsky's appointment to the Executive Committee." ECF#2552-2 PageID84511, 84512.

Indeed, in proceedings before the arbitration panel, Berezofsky and her attorney both stated unequivocally that they were not challenging WCB's right to be compensated for pre-dissolution time spent on the Flint case. Williams DEC Para. 11. Cuker Dec para. 12. Consequently, Berezofsky cannot now claim that the 2018 Panel decided an issue which was not before it i.e., WCB's right to be paid for common benefit work performed before July 25, 2017.

In any event, Williams did not bring any claim regarding Flint fees in the 2018 arbitration proceedings and cannot possibly be bound by any such determination.

**In 2020 arbitration proceedings between the parties, Berezofsky's counsel denied that she would try to deprive WCB of its interest in Flint Fees and agreed that those fees should be equally divided three ways.**

In 2020, WC commenced another Demand for Arbitration against Berezofsky, alleging multiple breaches of the Dissolution Agreement. Cuker Dec. Ex. D. Count IV of the Demand concerned the Flint litigation and alleged in relevant part that "Given her track records …in other litigation, it is certain that Berezofsky will not adequately represent WCB's interests, and will not keep Plaintiffs informed of [Flint] fee allocation proceedings and instead will use her position on the executive

12

committee to divert any funds which would otherwise be due WCB to herself and her new firms." Cuker Dec. para. 14; Cuker Dec Ex. D para. 75.

In a colloquy at a Dec. 23, 2021, conference in that arbitration, Berezofsky's counsel, Carlo Scaramella, argued that these allegations were baseless, because Berezofsky had jointly petitioned for a fee award on behalf of both WCB and Motley Rice. Mr. Scaramella agreed that WCB still had an interest in the Flint case, and that interest had to be divided equally among the three former partners. Cuker Dec.Ex. E.

Transcript at 41:

THE COURT (neutral arbitrator): Well, let me ask

```
1      you this.    Is [Judge Levy] going to
2      make a decision about what WCB
3      should be awarded versus what -- or
4      Mr. Cuker and Williams are being
5      awarded as WCB and Ms. Berezofsky
6      separately? I don't understand.
7      But what I'm saying --
8              MR. SCARAMELLA:    Your Honor
9      -- that's correct, Your Honor.             The
10     WCB time was submitted to the judge
11     for approval.    *Whatever amount of*
12     *money is paid to the WCB time would*
13     *be split three ways by the parties.*
```

13

| | |
|---|---|
| 14 | That's it. There's nothing for us |
| 15 | to adjudicate between the parties, |
| 16 | and that's been our position all |
| 17 | along. |

(emphasis added).

Transcript at 58:

MR. LESSER: (Berezofsky's arbitrator)

| | |
|---|---|
| 1 | if it is WCB time |
| 2 | that was included at rates in the |
| 3 | petition to the judge in Flint, |
| ***4*** | ***that would only inure to*** |
| 5 | ***everybody's benefit*** it would seem |
| 6 | to me. (emphasis added). |
| 1 | p. 59: |
| 2 | MR. LESSER: |
| 3 | I assume there are |
| 4 | three fee petitions before Judge |
| 5 | Levy in Michigan. One is a WCB |
| 6 | petition as quad WCB, correct? |
| 7 | Then there's probably a second |
| 8 | petition for Mr. Cuker -- |
| 9 | MR. SCARAMELLA: If I may. |
| 10 | MR. LESSER: -- and a |
| 11 | separate petition for Ms. |

14

|    |              |                    |
|----|--------------|--------------------|
| 12 | Berezofsky.  | I'm sorry, Mr.     |
| 13 | Scaramella.  | Maybe you clarify  |
| 14 | that.        |                    |

p. 60.

|    |                                      |
|----|--------------------------------------|
| 1  | MR. SCARAMELLA: Sure, so Ms.         |
| 2  | Berezofsky was asked to submit time  |
| 3  | records and cost records as part of  |
| 4  | her role in the case.      She       |
| 5  | submitted the WCB time records, and  |
| 6  | she submitted the WCB costs as part  |
| 7  | of the fee petition that             |
| 8  | consolidated --***                   |
| 9  | All that                             |
| 10 | information has been submitted in    |
| 11 | to district court.                   |

Cuker Dec. Ex. E

The 2018 arbitration is irrelevant.

**Conclusion**

The Court should order distribution of the $1,000,000 fee allocation as follows:

> A) $87,531 to the former partners of Williams Cuker Berezofsky ("WCB"), in the form of three separate checks for $29,177 each payable to Gerald Williams, Mark Cuker and Esther Berezofsky,

15

   B) $912,469 to be paid to Berezofsky's new firm, Motley Rice.

Dated:  September 1, 2023      */s/ Mark R. Cuker*
                 MARK R. CUKER
                 CUKER LAW FIRM, LLC
                 One Logan Square, Suite 1200
                 Philadelphia, PA  19103
                 (215) 531-8512
                 mark@cukerlaw.com


                 */s/ Gerald J. Williams*
                 GERALD J. WILLIAMS, ESQUIRE
                 One South Broad Street, Suite 1510
                 Philadelphia, PA  19107
                 Telephone:  215.557.0099
                 Facsimile:  267.273.7758
                 gwilliams@williamscedar.com
                 *Pro Se*

## CERTIFICATE OF SERVICE

I hereby certify that this document has been served by electronic mail to all counsel of record.

/s/ Mark R. Cuker
MARK R. CUKER