# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

*Carthan, et al. v. Snyder et al.*
    Case No. 16-10444

_____/

## OPINION AND ORDER DENYING DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE THE TESTIMONY AND REPORT OF DR. PAOLO GARDONI [2460]

This opinion is yet another in a series of opinions addressing the admissibility of the testimony and reports of nine experts retained by Plaintiffs[1] in anticipation of the issues class trial, set to begin on

---

[1] *See* ECF No. 2454 (VNA's motion to exclude opinions and testimony of Dr. Larry Russell); ECF No. 2455 (VNA's motion to exclude opinions and testimony of Dr. Clifford P. Weisel); ECF No. 2456 (VNA's motion to exclude testimony and reports of Robert A. Michaels); ECF No. 2458 (VNA's motion to exclude opinions and testimony of Dr. David Keiser); ECF No. 2459 (VNA's motion to exclude opinions and testimony of Dr. Daryn Reicherter); ECF No. 2460 (VNA's motion to exclude opinions and testimony of Dr. Paolo Gardoni); ECF No. 2461 (VNA's motion to exclude opinions and testimony of Dr. Howard Hu); ECF No. 2483 (VNA's motion to exclude opinions and testimony of Dr. Panagiotis (Panos) G. Georgopoulos); and ECF No. 2462 (VNA's

February 13, 2024. (ECF No. 2435.) Defendants argue that these experts cannot meet the standards set by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Currently before the Court is the motion by Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "VNA") to exclude the testimony and opinions of Dr. Paolo Gardoni. (ECF No. 2460.) On September 13, 2023, a hearing was held and argument was heard. For the reasons set forth below, VNA's motion is denied.

## I. Background

Dr. Paolo Gardoni is a Professor in the Department of Civil and Environmental Engineering at the University of Illinois Urbana-Champaign. (ECF No. 2460-6, PageID.79641) Dr. Gardoni has a Ph.D. in Civil Engineering and an M.A. in Statistics from the University of California, Berkeley, a Master of Engineering in Structural Engineering from the University of Tokyo, and the equivalent of a B.S. and M.S. in Structural Engineering from Politecnico di Milano. (ECF No. 1208-114,

---

motion to exclude opinions and testimony of Dr. Robert A. Simons) (in ECF Nos. 2606 and 2617 the Court inadvertently failed to include the motion related to Dr. Simons's testimony in this list).

PageID.37186.) He researches engineering ethics, the ethical dimensions of risk, strategies for disaster recovery, and a variety of other issues in engineering. (*Id.*) He has published widely, including peer-reviewed journal articles. (ECF No. 1208-114, PageID.37187–37197.)

Plaintiffs retained Dr. Gardoni to evaluate VNA's "professional, ethical and standard of care obligations." (ECF No. 1208-114, PageID.37162.) More specifically, his June 26, 2020 report is intended to "describe the professional standards applicable to the engineers' work [and to] assess whether [. . .] VNA violated their professional obligations by failing to identify, communicate, and respond to threats to human health and property posed by corrosive water conditions and the absence of corrosion control in the Flint water distribution system." (*Id.*) He draws significantly on the American Society of Civil Engineers ("ASCE") Code of Ethics and the National Society of Professional Engineers ("NSPE") Code of Ethics for Engineers. (ECF No. 1208-114, PageID.37163.) Dr. Gardoni finds that "VNA violated its ethical obligations when it failed (1) to recommend to [the City of] Flint that it immediately switch its water source to [the Detroit Water and Sewerage Department] or to immediately implement corrosion controls at the [Flint

Water Treatment Plant] and (2) to warn the City and its residents of the dangers posed by the highly corrosive water in its distribution system." (*Id.* at PageID.37181.)

On May 19, 2023, VNA filed this motion to exclude Dr. Gardoni's opinions in their entirety. (ECF No. 2460.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the witness must be qualified, (2) the testimony must be relevant, and (3) the testimony must be reliable. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). As the Supreme Court ruled in *Daubert*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

"Rejection of expert testimony is the exception, rather than the rule." *United States v. LaVictor,* 848 F.3d 428, 442 (6th Cir. 2017) (quoting *In re Scrap Metal*, 527 F.3d at 529–30)). But the burden is on Plaintiffs to show by a "preponderance of proof" that the proffered expert meets the standards of Rule 702 as interpreted by *Daubert*. *Pride v. BIC*

4

*Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

## III.   Analysis

VNA argues that Dr. Gardoni's testimony and opinions about their professional responsibilities and whether they breached the standard of care should be excluded. (ECF No. 2460, PageID.79508.) First, VNA argues that Dr. Gardoni is not qualified to address professional responsibility or the standard of care in this particular case. (*Id.* at PageID.79484.) Second, VNA argues that he lacks a sufficient factual basis for his opinions and, as a result, they are unreliable. (*Id.*) Finally, VNA argues that Dr. Gardoni's opinions are unreliable, because they are based on an inadequate interpretation and application of engineering ethics codes. (*Id.*)

### A. Dr. Gardoni's Qualifications as an Expert

VNA first challenges Dr. Gardoni's qualifications as an expert in this case, arguing that he lacks sufficient knowledge and practical experience related to "water treatment and distribution," as well as regulation in these areas. (ECF No. 2460, PageID.79490–79491.) The Court has already stated on the record that Dr. Gardoni is qualified to

5

opine on engineering ethics. (ECF No. 1785, PageID.63790.) VNA does not contest that point. (ECF No. 2528, PageID.83822.)

Instead, VNA argues that Dr. Gardoni's background in engineering ethics is insufficient to qualify him as an expert capable of opining on the standard of care in a case related to water treatment and distribution. (ECF No. 2460, PageID.79493.) Under Rule 702, an expert must be qualified by "knowledge, skill, experience, training, or education" to offer their opinion. Fed. R. Evid. 702. Here, Dr. Gardoni is offering an opinion on general engineering principles that "any mechanical engineer would know." *Everlight Elecs. Co. v. Nichia Corp.*, No. 12-CV-11758, 2014 WL 4707053, at *9 (E.D. Mich. Sept. 22, 2014) (quoting *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 392 (D. Md. 2001)). Specifically, he offers opinions related to the "[g]eneral [e]thical [r]equirements" that underly engineers' professional obligations. (ECF No. 1208-114, PageID.37162.) He relies significantly on codes of ethics, which according to Dr. Gardoni, "help define" and "articulate" the standard of care for engineers. (*Id.* at 37163.)  He acknowledged in his deposition that technical considerations also, in part, constitute the standard of care. (ECF No. 2460, PageID.79485–79486.) To evaluate these technical issues

6

in forming an opinion as to whether VNA breached the standard of care, Dr. Gardoni partially relies on Dr. Larry Russell's report. (ECF No. 1208-114, PageID.37162.) The Court has already denied VNA's motion to exclude Dr. Russell's testimony. (ECF 2606.)

VNA objects that despite his engineering ethics expertise, Dr. Gardoni is not qualified to opine about the "standard of care for highly technical engineering services related to water treatment and distribution." (ECF No. 2460, PageID.79493.) After challenging Dr. Gardoni's knowledge and experience regarding water distribution and treatment, VNA cites several cases involving the exclusion of experts whose general expertise is insufficient for them to be qualified to opine on more specific issues about which they lack expertise. (*Id.* at PageID.79493–79494.) None of these cases involves an expert providing an ethical analysis, however. *Everlight*, 2014 WL 4707053, at *8–9 (excluding a chemical engineering expert lacking special skills related to phosphor synthesis); *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 45 F. Supp. 3d 724, 738 (N.D. Ohio 2014) (excluding an expert who was qualified in aerospace engineering and thermal science, not the relevant fields of biology or mycology); *Counts v. Gen. Motors,*

*LLC*, 606 F. Supp. 3d 547, 586 (E.D. Mich. 2022) (excluding an automotive engineer with insufficient knowledge of a specific emissions test). These cases involve experts with general technical knowledge but a lack of specific technical qualifications necessary to opine on the key issue in a case. The question in these cases is not analogous to the question before the Court about applying ethical expertise to professional practice.

In a pre-*Daubert* case that applied Rule 702, an ethics expert was permitted to testify about informed consent standards and disclosure policies at hospitals despite not being a physician or otherwise having a technical background related to the specific medical questions at issue in the case. *Wetherill v. University of Chicago*, 565 F. Supp. 1553, 1564 (N.D. Ill. 1983).[2] In *Wetherill*, the Court reasoned that the expert could testify that if there were certain risks, ethical standards would require their disclosure. *Id.* He was not required to assess those risks on his own, but

---

[2] Despite pre-dating *Daubert*, *Wetherill* is nonetheless informative, given that it applies the Rule 702 test for qualification ("qualified as an expert by knowledge, skill, experience, training, or education"), which is the issue VNA raises here. 565 F. Supp. at 1563. *Daubert*'s holdings rethink "the standard for admitting expert scientific testimony" rather than focusing on the qualifications of experts that deliver such testimony. 509 U.S. at 582. As a result, *Wetherill*'s reasoning is helpful here.

such evidence could be presented by the Plaintiffs through other permissible means, after which the expert could apply their knowledge of the relevant ethical standards. *Id.* at 1564n.23. The present case— where Dr. Gardoni has ethical expertise, which he applies to another expert's more specialized technical analysis—parallels *Wetherill* far more than the precedents offered by VNA.

VNA objects, though, that Dr. Gardoni "simply regurgitate[s]" Dr. Russell's opinions about breach of the standard of care, which they contend Dr. Gardoni is not qualified to offer himself. (ECF No. 2460, PageID.79494.) Experts are indeed not permitted to premise their opinion "entirely" on other experts without undertaking any of the necessary steps to form their own opinion. *See, e.g.*, *In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000, 2010 WL 7699456, at *63 (N.D. Ohio June 4, 2020). However, experts are permitted to rely on the opinions of other experts and such reliance is common. *See Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002). There is a difference between such reliance and someone simply testifying in order to vouch for another expert or act as their "spokes[person]." *Id.* There is no indication that Dr. Gardoni has taken on such a spokesperson

role here. He provides his own analysis grounded on professional codes, drawing on a variety of sources; he does not merely parrot Dr. Russell's views. (ECF No. 1208-114, PageID.37174–37176.)

Dr. Gardoni is unquestionably an expert in engineering ethics. He applies his general engineering ethics knowledge in forming his opinions about whether there were breaches here, in addition to relying on his reading of the record, as well as Dr. Russell's report. Such partial reliance on other experts is appropriate and does not rise to anything like the sort of parroting of other experts' opinions that would create a basis for exclusion. Accordingly, Dr. Gardoni is qualified to offer these opinions about the standard of care.

## B. The Factual Basis for Dr. Gardoni's Opinions

Second, VNA argues that Dr. Gardoni's testimony is unreliable, because it lacks a sufficient factual basis. Under Rule 702, expert testimony must be based "on sufficient facts or data." Fed. R. Evid. 702. VNA contends that he undertook insufficient investigation of the facts of the case and that he was overly focused on the conduct of VNA (and LAN) to the exclusion of other parties involved in the water crisis in Flint. (ECF No. 2460, PageID.79496, 79498.) They specifically object that he did not

10

look at enough materials and was, as a result, unfamiliar with key figures and facts about the events at issue in the case. (ECF No. 2460, PageID.79496.) VNA also argues that his focus on VNA meant that his opinions about VNA's failure to educate the City of Flint ("the City") and the Michigan Department of Environmental Quality ("MDEQ") about corrosion lacked "factual grounding." (ECF No. 2460, PageID.79497.)

As to the objection that Dr. Gardoni did not have enough familiarity with the record for his testimony to be admitted, the key issue is whether the facts he relied upon were "sufficient" under Rule 702 for his testimony to be reliable. Fed. R. Evid. 702. Under this standard, an expert cannot rely upon a "mere guess or speculation" or unfounded "assumptions." *In re Scrap Metal*, 527 F.3d at 530. (cleaned up) Even when the factual basis of an expert's testimony is "shaky" but is nonetheless based on facts in the record, that shakiness goes to its weight and not its admissibility. *Id.* Here, Dr. Gardoni offers ethical opinions in response to the factual record, not guesses or speculation. (ECF No. 2508, PageID.82994.) His knowledge of the facts of the case are limited by the focus of his testimony—VNA's conduct—and VNA has every right to cross-examine

him about those limitations in front of the fact finder. *Daubert*, 509 U.S. at 596.

VNA makes a further argument that Dr. Gardoni's opinions are speculative. VNA suggests that Dr. Gardoni's views about VNA's errors depend upon what the City and MDEQ knew and what they did about "lead and corrosion issues in Flint and about switching back to Detroit water." (ECF No. 2460, PageID.79498.) Dr. Gardoni is arguing that VNA had a responsibility to alert the City and MDEQ of certain things, but VNA suggests that their responsibility depends on what the City and MDEQ already knew. (*Id.*) VNA claims that Dr. Gardoni was ignorant about what these other parties knew about lead and corrosion issues. (*Id.*) Specifically, VNA contends that Dr. Gardoni lacked knowledge that these parties already knew about these issues, therefore relieving VNA of the duties Dr. Gardoni suggests they breached.[3] (ECF No. 2460, PageID.79498–79500.)

---

[3] VNA points to several sources of information they believe Dr. Gardoni ignored, including notes about corrosive water made by the Mayor after a meeting with VNA, an email between City of Flint employees referring to a VNA recommendation to prevent lead issues, and city officials' emails about the lead levels at LeAnne Walters's house. (ECF No. 2460, PageID.79498–79499.)

Dr. Gardoni's deposition reveals, however, that he is opining, in part, that VNA failed to convey how severe or grave the situation was. (*See, e.g.*, ECF No. 2460-4, PageID.79613) Dr. Gardoni also expresses the view that VNA's recommendations should have been made clearly, regardless of what other actors knew or did not know. (ECF No. 2460-4, PageID.79573.) His report is consistent with these stances from his deposition. There Dr. Gardoni emphasizes that he thinks VNA had a duty to continue raising concerns if their warnings went unheeded. (ECF No. 1208-114, PageID.37183.)

Yet VNA attributes the view to Dr. Gardoni that VNA's obligations to educate and warn were contingent on the various parties' awareness of various risks. (ECF No. 2460, PageID.79498.) Dr. Gardoni's opinion is better characterized as finding a duty to raise the alarm through education and warnings—including to the public—if an informed party failed to act when it had the power to do so, however. (*Id.*) Accordingly, the facts about what various parties knew, which VNA suggests Dr. Gardoni ignores, do not undermine the reliability of his opinions.

Even if the factual basis of Dr. Gardoni's opinion depended in part on consideration of the facts to which VNA points, the issue here is

whether his opinions are speculative claims or guesses that render his conclusions unreliable. While experts cannot simply invent standards or obligations based on no evidence, *Kilgore v. Carson Pirie Holdings, Inc.*, 205 F. App'x 367, 372 (6th Cir. 2006), they are permitted to rely on "a particular version of disputed facts." *Walker v. Gordon*, 46 F. App'x 691, 695–96 (3d Cir. 2002). Here the parties dispute the significance of the documents and facts that are at issue. (*See, e.g.*, ECF No. 2508, PageID.82993 ("Defendants have themselves cherry-picked self-serving documents and testimony and presented them without context"); ECF No. 2460, PageID.79498 ("Dr. Gardoni's opinion is affirmatively contradicted by the information he deliberately ignored").) The *Daubert* stage is "unsuited" for resolving these issues about the weight of facts in the record, as well as their overall significance. *In re Flint Water Cases*, Case No. 17-10164, 2022 WL 189503, at *2 (E.D. Mich. Jan. 20, 2022). Dr. Gardoni relies on the factual record in forming his opinions. Accordingly, VNA's complaints about a failure to emphasize facts that they believe challenge his conclusions are an appropriate basis for cross-examination, not exclusion under *Daubert*. 509 at 596.

## C. Dr. Gardoni's Reliance on Engineering Codes of Ethics

Third, VNA argues that Dr. Gardoni's use of engineering codes of ethics is unreliable, because (1) these codes are voluntary and (2) he ignores what VNA believes are important aspects of these codes.

### i. The Voluntariness of Engineering Codes of Ethics

VNA attacks Dr. Gardoni's testimony, arguing "he erroneously treated nonbinding ethics codes published by two associations of professional engineers—the ASCE Code of Ethics and the NPSE Code of Ethics for Engineers—as defining the legal standard of care." (ECF No. 2528, PageID.83826.) They emphasize that one of the two codes states that it does not "establish a standard of care, nor should it be interpreted as such." (ECF No. 2460, PageID.79501–79502.) The core of their complaint is that these codes are meant to be something to aspire to, not something that can inform the standard of care for engineers in a legal context. (ECF No. 2460, PageID.79502.)

To evaluate VNA's arguments, the Court begins with the definition of the standard of care in this context: "'the care, skill, and diligence ordinarily possessed' by water engineering consultants." *In re Flint Water Cases*, Case No. 17-10164, 2021 WL 6102744, at *6 (E.D. Mich. Dec. 24, 2021) (citing *Cox ex rel. Cox v. Board of Hosp. Managers for City of Flint*,

467 Mich. 1, 21 (2002)). Gardoni, in his report, provides a definition consistent with the legal standard: "the standard of care articulates the reasonable public expectations of practitioners, such as engineers, and what constitutes acceptable practice in a given field as determined by experienced or competent practitioners." (ECF No. 1208-114, PageID.37163.) In his view, the codes he relies upon constitute the standard of care in combination with technical, design, and regulatory standards. (*Id.* at PageID.37163–3714.) Insofar as VNA suggests that Dr. Gardoni flatfootedly identifies the codes he utilizes as the standard of care, they mischaracterize his opinion. In fact, VNA's own objections to Dr. Gardoni's reliance on Dr. Russell's opinions about technical engineering issues contradict any suggestion that Dr. Gardoni treats the codes professional of ethics as sufficient to define the standard of care; he looks to technical standards, as well.

VNA believes these codes have no place in the analysis of the standard of care at all, however. To support this contention, they cite several cases that recognize the obvious point that ethical and legal perspectives are not completely identical. (ECF No. 2460, PageID.79502.) In two different cases, the same business ethics expert's testimony, which

was grounded in his own ethical theory and framework, was excluded when it did not align with the legal standards at issue. *In re Welding Fume*, 2010 WL 7699456, at *24; *Concord Boat Corp. v. Brunswick Corp.*, No. LR-C-95-781, 1998 WL 3254137, at *1 (E.D. Ark. Mar. 2, 1998). These cases are easily distinguishable, insofar as they are not based in the codes of ethics developed by professional organizations, but rather the ethical views of a particular individual, namely the expert providing their opinion. In the other case VNA cites, the excluded expert would have testified about a professional organization's technical—not ethical—guidelines, which the Plaintiff conceded were not the legal standard at issue in that case. *Malinski v. BNSF Ry. Co.*, No. 15-cv-502, 2017 WL 1278671, at *3 (N.D. Okla. Mar. 31, 2017). While courts have recognized that ethical and legal perspectives do not always overlap, that does not mean the law can never look to professional codes of ethics in any circumstance, including in the context of the standard of care. Even in one of the cases VNA cites regarding the admissibility of a business ethics expert's testimony: "the Court can certainly imagine cases where his expertise would be admissible and relevant to the issues raised." *In re*

*Welding Fume*, 2010 WL 7699456, at *24 n.124. None of these cases support VNA's stance.

A case Plaintiffs cite as support, *Post Office v. Portec, Inc.*, more closely involves ethical codes for engineers. 913 F.2d 802 (10th Cir. 1990) *vacated as moot*, 935 F.2d 1105 (10th Cir. 1991). There, the expert testified "that defendant violated specific provisions of the Code of Ethics for Engineers published by the American Society of Mechanical Engineers and the Code of Ethics of the National Society of Professional Engineers." *Id.* at 806–7. Defendants objected to the admission of the codes at trial but waived any objection to testimony about specific violations of the codes. *Id.* at 807. The *Post Office* court stated that "the trial court correctly admitted the codes themselves as relevant to show at least a related industry standard of conduct. The codes show how licensed engineers are required to behave." *Id.* As far as the waived arguments about using the codes to show violations, the court noted that "Defendant also could have requested a limiting jury instruction that the jury could use the codes and [testimony about code violations] only as examples of comparable conduct and not as clear enunciations of the standard of care directly applicable to defendant." *Id.* at 807 n.1. The *Post*

*Office* court does not make clear whether such a limiting instruction should have been granted, only that the defendant in that case could have requested one, had they not waived their objection at the trial stage. Ultimately, that case, which involved "claims of breach of contract, misappropriation of trade secrets, breach of the duty of good faith and fair dealing, trademark infringement, fraud and deceit, false designation of origin, and violations of the plug molding statutes of California, Tennessee, and Michigan," suggests that ethical codes can be admitted at least in some cases. *Id.* at 805. Other opinions express similar conclusions. *See, e.g.*, *In re DePuy Orthopaedics, Inc.*, MDL Docket No. 3:11-MD-2244-K, 2016 WL 6271474, at *5 (N.D. Tex. Jan. 5, 2016) (admitting an ethics expert's testimony, noting the usefulness of such testimony in professional contexts, especially when published industry standards are available).

Here, Dr. Gardoni is offering analysis of the breach element in this case based on codes that are developed by professional engineering organizations, rather than offering ethical principles of his own concoction. Such codes can inform an analysis of what counts as "'the care, skill, and diligence ordinarily possessed' by water engineering

19

consultants." *In re Flint Water Cases*, 2021 WL 6102744, at *6. These codes are not sufficient to provide the standard of care on their own, but they can "help the trier of fact" by shedding light on what large bodies of professional engineers have adopted as their ethical principles. Fed. R. Evid. 702. Accordingly, VNA's arguments about the inappropriateness of Dr. Gardoni's use of these codes fail.

### ii. Selective Use of the Codes

Next, VNA objects that Dr. Gardoni cherry-picks from these codes in order to reach his conclusions and ignores provisions that cut against his opinion that VNA breached the standard of care. (ECF No. 2460, PageID.79503–79504.) VNA focuses on two requirements. First, they suggest that Dr. Gardoni ignores the requirement for engineers to act as a faithful agent of their clients. (*Id.* at PageID.795904.) The City of Flint told VNA that it would not consider switching back to Detroit water, VNA argues, so VNA would not have been a faithful agent if it recommended a switch back to Detroit water or raised concerns to the general public. (*Id.* at PageID.795904–79506.) Second, VNA argues that Dr. Gardoni ignores the ethical "requirement to act only with knowledge of the facts," given that Dr. Gardoni opined that VNA should have made public

statements about various concerns when "VNA did not know all of the facts about lead exposure in Flint." (*Id.* at PageID.79506–79507.) Dr. Gardoni's approach is therefore unreliable, VNA contends. (*Id.* at PageID.79508.)

These arguments are fundamentally disagreements about the weight and meaning of different principles of professional ethics rather than a compelling objection to the reliability of Dr. Gardoni's testimony. Dr. Gardoni cites the "faithful agent" principle explicitly, though he applies it differently than VNA does in their brief. (ECF No. 1208-114, PageID.37168.) While he does not refer explicitly to the second principle VNA cites—about acting with knowledge of the facts—the fact that he does not emphasize or apply that principle in the manner VNA would like does not indicate that he applies his method unreliably. VNA's own expert suggests in his deposition that "you have to make a holistic assessment of all the principles listed in the code" and "you have to balance the principles against each other." (ECF No. 1533-6, PageID.59210, 59212.) Here, Dr. Gardoni is weighing these principles against each other and judging which ones are most relevant to analyzing the facts in this case. Again, as VNA's expert acknowledges, that is a

broadly acceptable methodology—and it is an approach that is published in leading peer-reviewed journals in the field. (ECF No. 1533-6, PageID.59223.) Under *Daubert*'s factors for assessing reliability, that weighs in favor of Dr. Gardoni's testimony's reliability. 509 U.S. at 594. Given the flaws in VNA's objections and the evidence favoring their reliability under Daubert, VNA's objections related to Dr. Gardoni's application of the codes fail. (ECF No. 2460, PageID.79500.)

## IV.   Conclusion

For the reasons set forth above, VNA's motion to exclude Dr. Gardoni's opinions and testimony is denied.

IT IS SO ORDERED.

Dated: September 20, 23          s/Judith E. Levy
Ann Arbor, Michigan             JUDITH E. LEVY
                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 20, 23.

                                s/William Barkholz
                                WILLIAM BARKHOLZ
                                Case Manager