UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FLINT WATER CASES.

Case No. 5:16-cv-10444
(Consolidated)

Hon. Judith E. Levy

_____/

**PLAINTIFFS' REPLY TO VEOLIA'S RESPONSE REGARDING OBJECTIONS TO CONFIDENTIAL DESIGNATIONS (ECF NO. 2585)**

Plaintiffs reply to Veolia North America, LLC's, Veolia North America, Inc.'s, and Veolia Water North America Operating Services, LLC's ("Veolia") response regarding objections to confidential designations as follows:

**INTRODUCTION**

For seven years, Veolia has concentrated its time and communications efforts on "vigorously support[ing] [its] legal strategy designed to win the civil lawsuit[,]" and "aggressively defending Veolia's reputation." VWNAOS553047. In effectuating its efforts to avoid culpability, Veolia has littered the public with alternative "facts," allegedly showing that it bore no responsibility for the Flint Water Crisis. Now, fearful of what may happen when documents demonstrating the genesis of its fable come to light, Veolia presents a litany of excuses meant to divert attention from the

fact that they indiscriminately designated documents confidential,[1] and now, when challenged, cannot establish a basis to have done so.

Veolia first speculates that Plaintiffs challenge their confidentiality designations for "an improper purpose"—but what exactly that improper purpose is, is unclear. Further, Veolia incorrectly maintains that discovery materials, in comparison to public court proceedings and filings, cannot be publicly disclosed. However, it is well established that:

> The discovery rules themselves place no limits on what a party may do with materials obtained in discovery. Generally speaking, when a party obtains documents or information through the discovery process, he can use that information in any way which law permits. The implication is clear that without a protective order materials obtained in discovery may be used by a party for any purpose, including dissemination to the public.

*Nat'l Polymer Prods. v. Bord-Warner Corp.*, 641 F.2d 418, 423 (6th Cir. 1981) (internal quotations and citations omitted).

Indeed, "only [discovery] material for which there is a clear and significant need for confidentiality" is protected from public disclosure, *Blanchard & Co. v. Barrick Gold Corp.,* No. 02-3721, 2004 U.S. Dist. LEXIS 5719, at *19 (E.D. La. Apr. 2, 2004) (citing *Manual for Complex Litigation (Third)*, at p. 69 § 21.432), and Veolia's attempt to muddle the issues before the Court fails to hide its failure to

---

[1] The fact that Plaintiffs have challenged hundreds of documents, and Veolia has agreed to remove their confidentiality designations on the vast majority, provide evidence of Veolia's wholesale designation of documents as confidential.

establish good cause under the Court's Confidentiality Order [ECF No. 1255-3] ("Order") or Rule 26 of the Federal Rules of Civil Procedure. As such, Plaintiffs request this Court remove the confidentiality designations from the eleven (11) documents at issue.

## ARGUMENT

As is well established in the case law and under this Court's Order, even though Plaintiffs are challenging the confidentiality designations, Veolia bears the burden of demonstrating that the challenged documents should be kept from the public. *See White v. GC Servs. Ltd. P'ship*, No. 08-11532, 2009 U.S. Dist. LEXIS 4735, at *4 (E.D. Mich. Jan. 23, 2009) ("[I]f the Plaintiff files an objection to the Defendants' designation of confidential *discovery* material, the Defendants still have the ultimate burden of demonstrating 'good cause' under Rule 26(v)." (emphasis added)). As Veolia recognizes, a finding of confidentiality under the Court's Order is two-fold. First, Veolia must show that a document "contains private, non-public, confidential, competitively sensitive, or proprietary information that is not readily ascertainable through lawful means by the public." Second, they must show that "if disclosed publicly [a document] would likely cause oppression, competitive disadvantage, infringement of privacy rights established by statute or regulation, or infringement of confidentiality requirements established by statute or regulation with respect to government purchasing or other operations." Order ¶ 5.

## I. The challenged documents do not contain confidential or competitively sensitive information that would cause Veolia harm if disclosed.

As set out above, good cause exists when the party moving for the protective order establishes the confidentiality of the documents at issue <u>and</u> can "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citations omitted). Here, Veolia makes generalized representations of confidentiality about three groups of documents. But Veolia's vague assertions, without a detailed explanation of the confidential information contained within each document or the harm disclosure of such allegedly confidential information would cause, fail to make a showing of good cause.[2]

### *Document reflecting "detailed communications strategy."*

Veolia first asserts that a report prepared by Rasky Baerlein, a public relations firm Veolia engaged to protect Veolia's reputation following the Flint Water Crisis, should be kept confidential because it contains "sensitive, non-public business information," specifically "[Veolia's] non-public communications strategies utilized in connection with a sensitive corporate issue."

---

[2] Tellingly, Veolia outlines a list of six factors it alleges "the Court must balance" in determining the need for a protective order yet fails to provide an analysis of how the factors apply to the documents at issue.

4

To establish harm, Veolia states that the document "could be misused or used against [Veolia] by competitors, thus causing competitive harm to [Veolia]." But "generalized claims of harm from litigants and the potential advantage to a competitor are insufficient reasons to demonstrate good cause." *Vignes-Starr v. Lowe's Home Ctrs.*, 544 F. Supp. 3d 774, 779 (W.D. Ky. 2021). Further, it is not clear how Veolia's competitors could use a document created by an external PR team seven years ago to cause <u>present</u> competitive harm. *See H.D. Media Co., LLC v. U.S. DOJ*, 927 F.3d 919, 932 (6th Cir. 2019) (rejecting the defendants' claim of "substantial competitive harm" because "the assertion was conclusory and … market data over three years old carried no risk of competitive harm"); *United States v. Int'l Bus. Machines Corp.*, 67 F.R.D. 40, 49 (S.D.N.Y. 1975) (rejecting a business's request for continued protection of its commercial data, all of which were at least two years old, because "none of th[e] data is current; it reveals directly little, if anything at all, about [the business's] current operations" and because "the value of this data to [] competitors is speculative").[3] Veolia's vague assertion of harm is precisely the type of speculative claim of injury from disclosure which courts have routinely rejected. *See Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir.

---

[3] In fact, Plaintiffs "would expect that the Defendants would be proclaiming the content of these conversations, not silencing them, since the Defendants have insisted throughout this litigation that" Veolia has not participated in a misinformation campaign. *Ameriprise Fin. Servs. v. Reserve Fund*, No. 08-5219, 2008 U.S. Dist. LEXIS 144594, at *13 (D. Minn. Dec. 15, 2008).

5

1986) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

### *Documents pertaining to customers' requests to be briefed about Flint.*

Next, Veolia asserts that documents pertaining to certain customer's requests to be briefed on the Flint Water Crisis should be kept confidential because they "relate to [Veolia's] process in responding to customer concerns, which if disclosed could impact [Veolia's] relationships with its customers." But it is unclear what confidential customer information is contained in these documents. Just because a communication is between Veolia and a customer does not, standing alone, make the communication confidential. Rather,

> An example of what would fall within the scope of the confidentiality clause protecting information with the potential to harm an existing or potential client relationship would be portions of a conversation between Defendants' representatives and a client where the personal financial circumstances of the client and the client's identity were discussed. Such information is truly "non-public[,]" and its publication would likely embarrass the client and Defendants, and impair their mutual relationship.

*Ameriprise Fin. Servs., Inc.*, 2008 U.S. Dist. LEXIS 144594, at *14. Such is not the case here.

### *Documents previously marked as privileged.*

Last, Veolia states that certain documents should remain confidential because "they were produced following the Court's *in-camera* review." As Plaintiffs have

6

previously articulated (ECF No. 2593 at 4), this is an outlandish proposition and cannot form the basis for a finding of "good cause."

## II. The public has a right to review the challenged documents.

Finally, contrary to Veolia's assertion, the Court should balance the public's need to access the documents at issue against any potential harm disclosure might cause. *See, e.g., H.D. Media Co., LLC*, 927 F.3d at 924 (analyzing whether the Washington Post, and by extension the public at large, should have access to data produced during discovery for the purposes of public reporting). The Flint Water Crisis is a matter of public health and safety, and the public has a clear interest in understanding the causes, scope, and perpetrators of the disaster. Despite this, Veolia has used targeted advertising to present its version of the "facts" in attempt to wipe its hands clean of all liability. At a minimum, the public has a right to understand that the narrative Veolia presented as "fact," was created by a PR team for the sole purpose of avoiding civil liability and protecting Veolia's reputation.

In situations such as this involving a massive public health crisis, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." *H.D. Media Co.,* 927 F.3d at 924 (quoting *Buckley v. Valeo*, 424 U.S. 1, 67 (1976)). The question before the Court, then, is whether the public should make its assessment of

culpability in the darkness that would be created by a protective order, or with a fulsome picture of the misleading information Veolia presented it with.

## CONCLUSION

Plaintiffs respectfully request that the Court order Veolia to de-designate each of the designations placed on the eleven (11) documents, which were included in Plaintiffs' written challenge, dated August 29, 2023 [ECF No. 2585].

Dated: September 20, 2023                                Respectfully submitted,

**LEVY KONIGSBERG LLP**

/s/Corey M. Stern
Corey M. Stern
Melanie Daly
Kiersten Holms
605 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6200
cstern@levylaw.com
mdaly@levylaw.com
kholms@levylaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6200
cstern@levylaw.com