## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

ALL CASES

_____/

## OPINION AND ORDER GRANTING CLASS PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH THE LAN DEFENDANTS [2673]

Before the Court is Plaintiffs' motion to grant preliminary approval of a settlement with the LAN Defendants ("LAN Settlement" or "LSA").[1] (ECF No. 2673.) Plaintiffs already settled with other Defendants, which the Court approved in the Amended Settlement Agreement ("ASA"). (ECF Nos. 1319-1 (as amended, ECF No. 1394-2); 2008.) The LAN Settlement builds on that one, proposing to add $8 million to the $626.5 million that have already been secured for tens of thousands of people impacted by the Flint Water Crisis.

_____

[1] Leo A. Daly Company, Lockwood Andrews and Newnam, Inc., and Lockwood and Newnam, P.C. (collectively, "LAN").

Plaintiffs are thousands of Flint residents, property owners, and business owners who allege professional negligence claims against LAN for its work during the Flint Water Crisis. Individual Plaintiffs and members of a certified Issues Class allege that LAN's professional negligence contributed to the Crisis, which injured Plaintiffs and damaged their property and commercial interests.

The proposed LAN Settlement would not end the Flint Water Crisis litigation. Non-settling Defendants remain in the litigation and the Issues Class trial is set for February 2024.[2]

This settlement would contribute to the funds set up to make monetary awards available to people exposed to Flint water during the specified exposure period, as well as property owners and business owners. Because the LSA presents a hybrid structure that includes a class for unrepresented adults, property owners, and commercial entities, preliminary approval of certain aspects of the proposed settlement is both appropriate and necessary. The Court must also consider whether the

---

[2] The Settling Defendants do not include private engineering firm Defendants Veolia Water North America Operating Services, LLC; Veolia North America, LLC; Veolia North America, Inc.; Veolia Environment, S.A.; and United States Environmental Protection Agency. Therefore, if the proposed settlement receives final approval, the litigation against these Defendants continues.

LSA is fair and in the best interests of claimants who are Minors and Legally Incapacitated or Incompetent Individuals ("LIIs").[3]

To grant preliminary approval, the Court must determine whether the LSA is likely to receive final approval. Fed. R. Civ. P. 23(e)(1)(B). As the Court explained in ruling on preliminary approval of the ASA:

> [A]t this stage, the Court is to review the procedures related to Minors and Legally Incapacitated Individuals ("LIIs") to determine whether they are fair and in the best interests of Minors and LIIs. And also, the Court must determine whether there is a sufficient basis to conditionally certify a settlement class and subclasses as proposed. The Court must determine whether the proposed settlement class and subclasses fall within the range of possible approval, appear to be fair, and are free of obvious deficiencies.

*In re Flint Water Cases*, 499 F. Supp. 3d 399, 409–10 (E.D. Mich. 2021) (cleaned up).

For the reasons set forth below, the Court grants preliminary approval of the LAN Settlement. This approval will trigger a period in which minors, adults, property owners/renters, and commercial entities may decide whether to participate in the Settlement. Class members may

---

[3] An LII means an individual described in Mich. Comp. Laws § 700.1105(a).

object to the LSA provided they are registrants. Participants may also proceed with their litigation against the non-settling Defendants.[4]

## I.    Background

As the Court has previously said, "the Flint Water Cases are abundant, complex, and have been intensely litigated." (ECF No. 1399, PageID.54410.) That statement remains true, including the litigation that led to the LAN Settlement. Here, there has been extensive discovery, managed by the Court, in addition to a months-long bellwether trial and the extensive motion practice that comes with such a proceeding. The Court is "*very* familiar with the factual allegations and the applicable law that governs these cases." (ECF No. 1399, PageID.54409 (emphasis added).) Because the Court has recounted the history of this litigation in multiple opinions and orders, it will only do so here insofar as it is necessary.

Earlier in this litigation, the Court appointed two mediators— former Wayne County Circuit Court Judge Pamela Harwood and former U.S. Senator Carl Levin—to conduct settlement discussions. (ECF No.

---

[4] Those who are members of any class have the additional choice to opt out of the LAN Settlement entirely and proceed with their individual litigation against the LAN Defendants.

4

324, PageID.11687–11693.) Pursuant to Federal Rule of Civil Procedure 53, the Court appointed Deborah E. Greenspan to serve as a Special Master, now referred to as a Court-Appointed Neutral, in part to assist with settlement. (ECF No. 544.) Additionally, the Court appointed Subclass Settlement Counsel to represent six subclasses of Plaintiffs in settlement allocation negotiations. (ECF No. 937.)

In 2018, following the appointment of the mediators, the Parties to the LAN Settlement "participated in extensive, arms-length negotiations involving in-person meetings as well as multiple one-on-one sessions with the Mediators and/or Special Master for two years, which ultimately did not result in settlement." (ECF No. 2673, PageID.86962.) In 2021, the Court approved a partial settlement, which did not include LAN. The Court also certified an Issues Class action, which included LAN as a Defendant. Individual Plaintiffs have already gone to trial against LAN in a bellwether trial, which ended in a mistrial.

The Parties to this agreement paused negotiations during the bellwether trial in 2022, restarted them after that trial concluded, and reached a tentative settlement in July 2023. The negotiations, assisted by Deborah Greenspan, involved "hundreds of discussions." (ECF No.

2673-7, PageID.87128.) During those discussions, the LAN Defendants "provided access to their senior management and to financial statements." (*Id*.) An independent expert, engaged by the Court-Appointed Neutral, examined LAN's financial statements and enabled Plaintiffs to confirm that the Settlement amount is consistent with "LAN's ability to allocate funds to this settlement while maintaining company operations." (*Id*. at PageID.87129.) In addition, Settlement Subclass Counsel took part in negotiating the allocation of the funds between the Subclasses, as well as evaluating the LAN Settlement more generally. (ECF Nos. 2673-3, 2673-4, 2673-5).

## II.     The Proposed Settlement Agreement

The LSA builds on the ASA, mainly by adding more money to the funds created by the prior settlement and by resolving claims against LAN. It contributes $8 million to the Qualified Settlement Fund monitored by the Court, which was established to provide direct payments to Flint residents. The LSA adopts the ASA's process and criteria for categorizing types of compensation for all individuals—both Individual Plaintiffs and Class Plaintiffs.

The LAN Settlement splits the $8 million evenly between Individual and Class Plaintiffs. The Class portion of the LAN Settlement—minus attorney fees and costs—is divided between the three subclasses, such that 9% goes to the Adult Injury Subclass, 90% goes to the Property Damage Subclass, and 1% goes to the Business Economic Loss Sub-Qualified Settlement Fund. The portion allocated to Individual Plaintiffs will be distributed in accordance with allocation set forth in the ASA.[5] (ECF No. 2673, PageID.86967.)

## III.  The Proposed Settlement Class

Plaintiffs seek preliminary approval for the LAN Settlement. That requires preliminary and conditional certification of the Settlement Class, which Plaintiffs characterize as identical to the ASA Settlement Class and Subclasses but "extended to encompass claims against LAN." (*Id.* at PageID.86979.) As Plaintiffs point out, the Court has already certified a Settlement Class with this structure, in addition to finding

---

[5] In this Settlement, "there shall be no allocation to the Future Minor Sub-Qualified Settlement Fund or Programmatic Relief Sub-Qualified Settlement Fund established by the ASA, see ASA Arts. VI, VII; LSA ¶ 6.1. The percentage allocations amongst Individual Plaintiffs shall be adjusted to account for the elimination of the 2% allocation to the Programmatic Fund." (ECF No. 2673, PageID.86967.)

common questions of law and fact sufficient to certify an Issues Class. *In re Flint Water Cases*, 558 F. Supp. 3d 459 (E.D. Mich. 2021).

The LAN Settlement Class and Subclasses are defined as follows:

**Settlement Class:** all persons or entities who are or could be claiming personal injury, property damage, business economic loss, unjust enrichment, breach of contract, or seeking any other type of damage or relief because at any time during the Exposure Period[, April 25, 2014 through November 16, 2020,] they: (1) were an Adult who owned or lived in a residence that received water from the Flint Water Treatment Plant or were legally liable for the payment of such water; (2) owned or operated a business including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant or were legally liable for the payment for such water; or (3) were an Adult during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant.

Excluded from the Settlement Class are: (1) Defendants; (2) the judicial officers to whom this case is assigned in the Federal Court, Genesee County Circuit Court, and Court of Claims, their staff, and the members of their immediate families; (3) all Individual Plaintiffs; and (4) all persons who timely and validly elect to opt-out of the Settlement Class.

**Adult Exposure Subclass:** all persons who were Adults during the Exposure Period and who ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting personal injury. All Adults

listed on Exhibit 1 to the [ASA] are excluded from this Subclass.

**Business Economic Loss Subclass:** all individuals or entities who owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss. Excluded from the Business Economic Loss Subclass are all local, state, or federal government offices or entities and any individual or entity listed on Exhibit 1 to the [ASA].

**Property Damage Subclass:** all Adults or entities who owned or were the lessee of residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period. Excluded from the Property Damage Subclass are all local, state, or federal government entities which own real property and any individual or entity listed on Exhibit 1 to the [ASA].

*In re Flint Water Cases*, 571 F. Supp. 3d 746, 822 (E.D. Mich. 2021); (ECF No. 2673-2, PageID.87003 ("LAN consents to the certification of the Settlement Class defined consistently with the Settlement Class set forth in the ASA and the Orders approving the ASA.").). Claimants who registered and made claims under the ASA are not required to supplement their claims to be considered for compensation under the LSA. Those who did not participate in the previous settlement may register and submit claims to this one. Both Individual Plaintiffs and

Settlement Class members can exclude themselves from the LAN Settlement if they wish.

Prior to approving a settlement that includes a class component, the Court must conditionally certify the class. Fed. R. Civ. P. 23(e); *see Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 621–22 (E.D. Mich. 2020). Though still subject to the Court's final approval later, preliminary certification indicates that, at this stage, certification is sufficiently likely to justify sending notice to settlement class members. *See id.*

At the preliminary certification stage, the judge makes "a preliminary fairness evaluation [finding] that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b) ... [as well as] a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms [under Rule 23(e)]." *In re Flint Water Cases*, 499 F. Supp. 3d at 419 (citing Manual for Complex Litigation (Fourth) § 21.632 (2004)).

> Rule 23(a) requires the following for class certification:
> (1) [numerosity,] the class is so numerous that joinder of all members is impracticable;

(2) [commonality,] there are questions of law or fact common to the class;

(3) [typicality,] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) [adequacy,] the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Under Rule 23(b)(3), Plaintiffs must also show "predominance" and "superiority." Predominance requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Superiority requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Under that rule, the Court must consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

*Id.*

11

For the reasons set forth below, the Court finds that the parties have preliminarily met the Rule 23 requirements for certification of the LAN Settlement Class. The Court also preliminarily finds that the settlement is fair, reasonable, and adequate. Accordingly, the Court conditionally certifies this class for the purposes of settlement and directs notice of the certification, proposed settlement, and date of the final fairness hearing.

### A. Rule 23(a)

To satisfy Rule 23(a), the Settlement Class must meet the requirements of numerosity, commonality, typicality, and adequacy.

### i. Numerosity

The numerosity requirement means that Plaintiffs must show that the Settlement Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). There are "no strict numerical test[s] for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, numerosity requires a case-specific inquiry, which can usually be satisfied by sufficiently high numbers. *Id.*

Here, the LAN Settlement Class comprises "a substantial portion of the population of Flint, Michigan," a city with many thousands of people, as well potentially hundreds of businesses. *In re Flint Water Cases*, 499 F. Supp. 3d at 420–21. Those numbers dwarf the number of prospective class members that courts have found sufficient for numerosity. *Id.* (citing cases certifying classes with between 21 and 40 or 40 or more members). Accordingly, Rule 23(a)'s numerosity requirement is met.

### ii. Commonality

Rule 23(a) also requires commonality, meaning there are "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a). This provision means that there must be at least one question common to the class, "the resolution of which will advance the litigation." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

The Court has already certified an Issues Class, holding that commonality is satisfied with respect to Plaintiffs' claims against LAN. *In re Flint Water Cases*, 558 F. Supp. 3d at 504 ("Class Plaintiffs' professional negligence claim related to duty, breach, and causation, as well as many of the underlying factual questions identified by Class

13

Plaintiffs, could fairly generate a 'common answer relat[ing] to the actual theory of liability in the case.'" (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015))). The issues certified for trial, which the Court has found are common to the LAN Class are as follows:

> Issue 1: Did [. . .] LAN breach their duty of care?
>
> Issue 2: If [. . .] LAN[] breached its duty of care owed to class members, did that breach contribute to causing or prolonging contaminated water in the Flint water distribution system?
>
> Issue 3: Were the contaminated water conditions capable of causing harm to Flint residents, properties, property and businesses?
>
> Issue 4: Were the harmful water conditions in the Flint water distribution system a natural and probable result of [. . .] LAN's breach?
>
> Issue 5: Did any non-party contribute to causing or prolonging the contaminated water conditions in the Flint water distribution system? If so, what percentage of fault do you attribute to each party and non-party?

(ECF No. 2250, PageID.73963.) As the Court explained when certifying the Issues Class, the theory of liability here involves professional negligence, so answering questions about duty, breach, causation, and fault will advance the litigation. *In re Flint Water Cases*, 558 F. Supp. 3d at 503. Accordingly, commonality is satisfied.

> ### iii. *Typicality*

14

The typicality requirement of Rule 23(a) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). A claim is "typical" if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). At the Issues Class certification stage, the Court considered the various Class and Subclass Representatives and found that their allegations about injuries suffered due to the Defendants' actions "aligned with claims of absent class members" who claim injury as a result of exposure during the same period due to the same conduct. *In re Flint Water Cases*, 558 F. Supp. 3d at 504–06. As the Court put it previously:

> [T]he Adult Exposure Subclass Representatives—Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael Snyder—are individuals or representatives of individuals who allege that they resided in Flint, Michigan; ingested or came into contact with Flint tap water during the relevant time period; and suffered medical, financial, and/or emotional damages as a result of Settling Defendants' actions. (*See* ECF No. 1318, PageID.40304–40305.) These claims align with absent Adult Exposure Subclass members who "ingested or came into contact with water received from the Flint Water Treatment Plant at any time during the Exposure Period and

15

who are claiming or could claim a resulting personal injury." (ECF No. 1319-1, PageID.40335–40336 (as amended, ECF No. 1394-2, PageID.54127–54128).)

The Property Damages Subclass Representatives—Elnora Carthan and David Munoz—are individuals who allege that they owned homes in Flint during the relevant time period, who received water from the Flint Treatment Water Plant, and who suffered diminished property and appliance values as a result of Settling Defendants' actions. (*See* ECF No. 1318, PageID.40305–40306.) These claims align with absent Property Damages Subclass members who "owned or were the lessee of a residential real property that received water from the Flint Water Treatment Plant, or were legally liable for the payment for such water, at any time during the Exposure Period." (ECF No. 1319-1, PageID.40341 (as amended, ECF No. 1394-2, PageID.54133).)

Finally, the Business Economic Loss Subclass Representatives—635 South Saginaw LLC (a/k/a "Cork on Saginaw"), Frances Gilcreast, and Neil Helmkay—are all individuals or entities who allege that they owned at least one commercial property in Flint during the relevant period, and who suffered diminished profits due to commercial reticence to patronize Flint businesses as a result of Settling Defendants' actions. (ECF No. 1318, PageID.40306.) These claims align with absent Business Economic Loss Subclass members who "owned or operated a business, including income earning real property and any other businesses, that received water from the Flint Water Treatment Plant at any time during the Exposure Period and who are claiming or could claim a resulting business economic loss." (ECF No. 1319-1, PageID.40336 (as amended, ECF No. 1394-2, PageID.54128).)

16

*In re Flint Water Cases*, 499 F. Supp. 3d at 422–23. With respect to LAN, these Class Representatives put forward claims against LAN that relate to the same allegations of professional negligence relied upon by the rest of the Class in asserting damages to their person and property. In addition, that theory of liability is based on the same alleged events and course of conduct. Accordingly, typicality is met here.

### iv. Adequacy

Rule 23(a) also requires that adequacy be met, meaning "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "There are two criteria for determining whether the representation of the class will be adequate: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524–25 (6th Cir. 1976). "Thus, the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Garner Props. & Mgmt., LLC*, 333 F.R.D. at 624 (quoting *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013)).

17

Here, the first adequacy requirement is met, insofar as Plaintiffs seek to hold LAN accountable for their conduct. (ECF No. 1175-3, PageID.28783–28787.) The second one is met here, as well. At the time the Court preliminarily approved the ASA, the Court explained its deep familiarity with "the parties, class representatives, and Co-Lead Class Counsel and Subclass Settlement Counsel" from what was then four years of litigation. *In re Flint Water Cases*, 499 F. Supp. 3d at 423. Well over two years have passed since that Opinion. The Court is even more familiar with the Parties, their lawyers, and the facts of the case now. The Court is confident that they will continue to "vigorously prosecute the interests of the class" as this litigation proceeds. *Id.* Accordingly, adequacy has been met and the Settlement Class has preliminarily met all the requirements of Rule 23(a).

### B. Rule 23(b)

To satisfy Rule 23(b)(3), Plaintiffs must meet its predominance, superiority, and ascertainability requirements.

### i. Predominance

The predominance requirement states that the Court must find that "the questions of law or fact common to class members predominate

over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance requires Plaintiffs to show that "issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352–53 (6th Cir. 2011). This putative class is being put forward for the purposes of settlement, however, which "obviates" the evidentiary difficulties the predominance inquiry considers and often inclines courts to find that predominance is met. *In re Flint Water Cases*, 499 F. Supp. 3d at 424 (citing *Good v. W. Va. Am. Water Co.*, No. 14-1374, 2017 WL 2884535, at *12 (S.D. W. Va. Jul. 6, 2017)). Moreover, in mass tort cases like this one involving a single common event, where individualized damages questions are present, but liability is subject to common resolution, it is possible to satisfy the predominance requirement. *Id.* (collecting cases). Here, the issues the Court has certified related to LAN "are subject to generalized proof and applicable to the whole class." *Randleman*, 646 F.3d at 352–53. Accordingly, predominance is satisfied.

### ii. Superiority

19

The superiority requirement demands that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To evaluate whether this requirement is met, the following factors are relevant:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

*Id.*

Here, as with the ASA, these factors weigh in favor of finding that superiority is satisfied. Regarding that settlement, the Court applied the first factor as follows:

> [T]he class members' interest in individually controlling the litigation weighs in favor of conditional class certification, because individuals seeking individualized relief either already chose to file their own complaints or hire individual counsel to address their claims—as evidenced by the Individual Cases—or may eventually seek exclusion from the settlement class. Nor, after [. . .] years of very expensive class discovery, would individualized litigation be economically preferable for those plaintiffs who have not already elected to file suit as individuals. *See In re Whirlpool*, 722 F.3d at 861

("Use of the class method is warranted particularly [when] the cost of litigation would dwarf any potential recovery.").
*In re Flint Water Cases*, 499 F. Supp. 3d at 425. All of that is also true of the LAN Settlement Class.

Further, the second factor, the extent and nature of class members' litigation, favors certification. The parties have been litigating this case for seven years. The consolidated case docket reflects that with its well over 2,600 entries. Local and national firms have "zealously litigated" this case throughout its history. *Id.* As far as the nature of this litigation, class certification in mass tort cases like this one avoids the costs of "piecemeal litigation" by dealing with many claims at once. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

Third, this forum is ideal for resolving this dispute, because all federal litigation in the Flint Water Cases has already been centralized in the Eastern District of Michigan. The significance of these three factors far outweighs any difficulties in managing a class action here, particularly given that this class is being proposed for settlement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable

21

management problems."). Accordingly, the superiority requirement is met.

### iii. Ascertainability

In the Sixth Circuit, "Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017). Under that requirement, "[b]efore a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537–38 (6th Cir. 2012) (internal citations removed). Regarding the ASA, the Court noted:

> Plaintiffs have argued in other motions that "[m]embership in the Class and Subclasses is ascertainable through property or rental records, or through certification by Flint residents or guardians that they and/or their children lived in Flint and were exposed to the water during the Class Period." (ECF No. 1207, PageID.34471.) The class definitions in this case are geographically circumscribed to one city in one state and are based on objective criteria, such as where an individual resided at a particular time or whether they owned or rented property.

*In re Flint Water Cases*, 499 F. Supp. 3d at 426. Such objective criteria are sufficient to realize the purposes of the ascertainability requirement: "notify[ing] absent class members and [. . .] allow[ing] those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016). Accordingly, Plaintiffs have met the ascertainability requirement and have shown that the Court will likely be able to "certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii).

### C. The Fairness, Reasonableness, and Adequacy of the Settlement under Rule 23(e)

Under Rule 23(e), the Court must not only find that it will likely be able to certify the class, but also that it will likely be able to approve the proposal as fair, reasonable, and adequate, as is required by Rule 23(e)(2) for final approval. Fed. R. Civ. P. 23(e)(1)(B)(i). To assess the fairness, reasonableness, and adequacy of the settlement, the Court considers whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate [. . . ;]

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Factors (A) and (B) relate to procedural fairness, while (C) and (D) relate to substantive fairness. 4 Newberg and Rubenstein on Class Actions § 13:13 (6th ed. 2023). The Sixth Circuit also provides the *International Union* factors to guide this inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

### i. Factors (A) and (B)

For the Court to find that it is likely that the proposed LAN Settlement is procedurally fair, the Court must consider whether the Class Representatives and Class Counsel have adequately represented the Class and whether the proposal was negotiated at arm's length. Fed. R. Civ. P. 23(e).

In considering the adequacy of Class Representatives and Class Counsels' representation, the Court finds that there is not "a risk of fraud

or collusion" in the LSA, which is the first *International Union* factor. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631. This case has been strenuously litigated for over seven years. Further, after extensive discovery, briefing, and a bellwether trial, Class Counsel and Class Representatives' support for this settlement weighs in its favor, given their deep knowledge of this litigation. *Id.* Subclass Counsels' support weighs in its favor, as well. (ECF Nos. 2673-3, 2673-4, 2673-5). The extensive discovery in this case, which must be considered under the third *International Union* factor, also weighs in favor of approval. *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631.

Additionally, the parties negotiated the LSA at arm's length. As set forth above, two neutral mediators and the Court-Appointed Neutral supervised the negotiations that led to the formation of this proposal, which supports finding that this settlement is the product of an arm's-length negotiation that is free of collusion. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

ii.  *Factor (C)*

25

To evaluate the proposed settlement's substantive fairness, the Court must consider the adequacy of the relief provided to the Class, including:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C). Here, the LAN Settlement adds $8 million to the fund already established by the ASA.

As far as the costs, risks, and delay of trial and appeal, this litigation is certainly "complex and risky," featuring "unsettled area[s] of law" and "novel questions," all of which favors a finding of substantive adequacy. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, Case No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019); *see also Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631 (indicating the relevance of the "complexity, expense and likely duration of the litigation" for evaluating a settlement, the second *International Union* factor). Not only that, but a trial here would

26

be lengthy and require "complex scientific proof," which further supports settlement. *Olden v. Gardner*, 249 F. App'x 210, 217 (6th Cir. 2008). Those litigation risks must be weighed against the $8 million recovery this proposed settlement provides. The LSA would also streamline future litigation in the Flint Water Cases, insofar as Plaintiffs would proceed against only against VNA and the Environmental Protection Agency.

In addition, the ASA avoids a situation where LAN is unable to satisfy a judgment greater than what is included in the LSA. Plaintiffs rightly consider the financial condition of defendants when evaluating whether to settle and how much to settle for; otherwise, they risk a "pyrrhic victory" where the defendant cannot satisfy a judgment. *See Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 632. It counts in favor of a settlement's adequacy if the defendant would not be able to withstand a greater judgment than what is included in the settlement, particularly when there is financial information that supports that limitation. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 321–22 (3d Cir. 1998). Here, Class Counsel, Liaison Counsel, and an independent expert considered evidence supplied by LAN regarding their "inability to pay a greater amount [than

the proposed settlement] upon further litigation and an adverse judgment." (ECF No. 2673, PageID.86976.)

The Court has already considered "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims" in its final approval of the ASA. Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court found that the ASA's "efficient and timely methods" of distribution favored finding them to be adequate, and those same methods will be utilized for the LAN Settlement. *In re Flint Water Cases*, 571 F. Supp. 3d at 781.

Under the LSA, attorney fees will be paid from the Settlement Funds subject to the Court's approval. Plaintiffs' counsel will file the motion requesting such fees in time for Class Members to consider Counsels' request as they choose whether to opt out or object to the LSA. The timing of the request for attorney fees does not raise concerns, insofar as there is no risk of an attorney fee request that might "upset the compensation to claimants at the time of final approval." *In re Flint Water Cases*, 571 F. Supp. 3d at 782.

The only agreement that Class Counsel disclosed under Rule 23(e)(3) is an extension of their agreement "from the State & Local

Government Settlement regarding the amount of attorneys' fees they intend to request from the Settlement, including the extent to which common-benefit fees will be requested as well as a manner for allocating fees among Plaintiffs' attorneys." (ECF No. 2673, PageID.86973 n.21.) There do not appear to be any worrisome side-agreements influencing the LSA here. Accordingly, these factors favor preliminary approval.

### iii.  Factor (D)

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Advisory Committee Notes to the 2018 amendment codifying this factor state that "[m]atters of concern [with respect to this factor] could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment. Again, the Court has already considered the ASA, which establishes that "Claimants will receive awards based on the extent of their injuries and in some cases based on the proof of injury they are able to provide." (ECF No. 2673, PageID.86978.) That apportionment,

which the LSA adopts, provides for "horizontal equity" between claimants and treats claimants the same regardless of whether they are represented by their own lawyers or are part of the LAN Settlement Class. *In re Flint Water Cases*, 571 F. Supp. 3d at 782. The specific Plan of Allocation here is also equitable. It balances the interests of eligible participants based on information gleaned from the ongoing claims process from the ASA, in addition to arm's-length negotiation between counsel with the guidance of the Court-Appointed Neutral. (ECF No. 2673, PageID.86982–86983.)

### iv. *Remaining International Union Factors*

The Court has already considered several of the *International Union* factors ((1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties), which overlap with the factors enumerated in the Federal Rules of Civil Procedure. The following factors remain: "4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d at 631.

To consider "the likelihood of success on the merits," the Court must—without deciding the merits of the case—weigh Plaintiffs' likelihood of prevailing against the relief offered in the settlement. *Id.* As the Court has explained, here there "are no other cases that the Court or the parties can look to that are on all fours with the claims in this litigation to assist them in predicting the outcome." *In re Flint Water Cases*, 571 F. Supp. 3d at 779. In this case, the only trial to date resulted in a mistrial. Litigation of the Issues Class against LAN will involve complex and novel legal issues and is likely to require substantial time and money. After that, individuals will incur the considerable costs of repeated trials involving individualized damages. Like the ASA, the LAN Settlement is "a fair and sensible resolution" given the risks of continuing to litigate. *Id.*

Further, Class Counsel and the Class Representatives support this Settlement, which weighs in favor of approval. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties is entitled to significant weight, and supports the fairness of the class settlement." (internal citations omitted)). They have undertaken

expansive discovery over seven years, engaged in extensive briefing, and have a deep understanding of the law and facts involved in this case.

Finally, the Court must consider the public interest, which supports the settlement of class action lawsuits, in part to conserve judicial resources. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The LSA will also provide further relief to Plaintiffs. The public interest therefore supports approval of the LAN Settlement. Accordingly, the provisions of Rule 23 and the *International Union* factors weigh in favor of the LSA as likely to be approved as fair, reasonable, and adequate. Fed. R. Civ. P. 23(e).

## IV.   Notice Approval

When requesting class certification for purposes of settlement, parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). Additionally, for any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must include: (i) the nature of the action; (ii) the definition of

the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Court has examined Plaintiffs' plan for Class Notice, including the Claim Form, as well as the declaration of Eric Schachter, Senior Vice President with A.B. Data, the class action administration company Plaintiffs have retained to provide Notice, subject to the Court's approval. (ECF No. 2673-6.)

Here, the Notice describes the nature of the action, defines the Class, and refers to the professional negligence claims at issue in the case. (ECF No. 2673-6, PageID.87061, 87064.) The Notice also provides information about the availability of exclusion and how to opt out of the Settlement. (*Id.* at PageID.87067–87068.) It further explains how to make an appearance through an attorney and the binding effect of a judgment on Class members. (*Id.* at PageID.87069–87070.)

The Court finds that the LSA's plan for Class Notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23(e)(1). That plan is approved and adopted. The Court further finds that the Class Notice (attached to Plaintiffs' motion as Exhibit E, Attachment 2), and the Claim Form included as part of the Class Notice, comply with Rules 23(e)(1) and 23(c)(2)(B).

Accordingly, for the reasons set forth above, the Court conditionally and preliminarily certifies the class for settlement purposes subject to final approval and approves the prospective plan for class notice.

## V.  Minors and Legal Incapacitated and Incompetent Individuals

The LAN Settlement continues the procedures and protections for Minors and Legal Incapacitated and Incompetent Individuals ("LIIs") established in the ASA. As required by Michigan Court Rule 2.420, settlements involving Minors or LIIs must receive court approval as fair. Mich. Ct. R. 2.420.

The Court has already found that those procedures and protections are "fair and in the best interests of Minors and LIIs." *In re Flint Water*

34

*Cases*, 499 F. Supp. 3d at 413. In the process of approving the ASA, the Court detailed the roles of the Genesee County Circuit Court, appointed Next Friends, and Guardians Ad Litem, and approved the process for registration and review of claims. That process is structured to comply with Michigan Court Rule 2.201—specifically to ensure that a Minor or LII has an appropriate representative. The Court also considered the fairness of the methods for categorizing Minors and LIIs' claims, notifying them about releases of claims, and enabling reconsideration and appeals of the Claims Administrators' claims determinations. It also evaluated the ASA's options for distributing monetary awards to Minors and LIIs, finding that the processes the ASA established were "fair and in the best interests of Minors and LIIs." *In re Flint Water Cases*, 499 F. Supp. 3d at 418. Claimants who have already availed themselves of this process will not have to take any "other procedural steps relating to next friends or guardians ad litem to the extent that prior motions filed to implement the ASA are adequate to implement this settlement." (ECF No. 2673, PageID.86984 n.35.) Because the LSA does not depart from the previously approved ASA when it comes to Minors and LII, the Court

holds that the LAN Settlement is fair and in the best interests of Minors and LIIs.

## VI.   Order

Having read and considered the Motion for Preliminary Approval of Class Settlement with LAN, as well as the papers submitted to the Court in support of the Motion, for the reasons set forth above, the Court orders:

1. The LSA is preliminarily approved under Federal Rule of Civil Procedure 23 as within the range of possible final approval.

2. The Settlement Allocation and plan of distribution are preliminarily approved.

3. Cohen Milstein Sellers & Toll PLLC, Pitt McGehee Palmer Bonanni & Rivers, PC, and the Executive Committee are appointed as Class Counsel under Federal Rule of Civil Procedure 23(g) to represent the LAN Settlement Class and Subclasses.

4. The Settlement Class and Subclasses certified in the ASA that was approved by this Court on November 10, 2021, are conditionally re-

certified under Federal Rule of Civil Procedure 23(a), (b)(3), and (e) for purposes of the LAN Settlement.

5. The following individuals are re-appointed as Class Representatives for purposes of the LAN Settlement:

> a. Rhonda Kelso, Barbara and Darrell Davis, Tiantha Williams, and Michael Snyder as personal representative of the Estate of John Snyder, as representatives of the Adult Exposure Subclass;

> b. Elnora Carthan and David Munoz as representatives of the Property Damage Subclass; and

> c. 635 South Saginaw LLC, Frances Gilcreast, and Neil Helmkay as representatives of the Business Economic Loss Subclass.

6. The following individuals are re-appointed as Settlement Subclass Counsel for purposes of the LAN Settlement:

> a. Vincent J. Ward of The Ward Law Firm as counsel for the Adult Exposure Settlement Subclass;

> b. Sarah R. London of Lieff Cabraser Heimann & Bernstein, LLP as counsel for the Property Damage Settlement Subclass; and

c. Dennis C. Reich of Reich & Binstock, LLP as counsel for the Business Economic Loss Settlement Subclass.

7. The plan of notice presented in the Declaration in Support of Plaintiffs' Motion is approved. The form of notice attached as Exhibit E, Attachment 2, and the Registration and Claim Forms in the form attached as Exhibits 2 and 5 to the Amended Settlement Agreement ("ASA") are re-approved. The Notice, Registration Form, and Claim Form shall be disseminated to the LAN Settlement Class in accordance with the plan of notice and the LAN Settlement Agreement.

8. A.B. Data, Ltd. shall serve as the Notice Administrator.

9. The procedures set forth in the ASA for handling claims by Minors and Legally Incapacitated or Incompetent Individuals (LIIs) are re-approved for the LAN Settlement.

10. The Fairness Hearing is set for March 14, 2024, 45 days after the Motion for final approval is filed, and the following schedule is set:

| Event | Deadline | Date |
|---|---|---|
| Settlement Website | Updated following this Order. | |
| Motion for Fees and Expenses | Filed within 30 days of this Order. | December 15, 2023 |

| Notice Mailed | Within 30 days of this Order. | December 15, 2023 |
|---|---|---|
| Deadline for Registration Form & Claim Form | Must be postmarked or submitted electronically within 60 days of this Order. | January 16, 2024 |
| Deadline to Request Exclusion from Settlement | Must be postmarked or submitted electronically within 60 days of this Order. | January 16, 2024 |
| Deadline for Objections to Settlement and Class Member Notice of Intent to Appear at Fairness Hearing | Must be filed within 60 days of this Order. | January 16, 2024 |
| Motion for Final Approval | Filed within 75 days of this Order. | January 29, 2024 |
| Fairness Hearing | March 14, 2024 | |

## VII.  Conclusion

For the reasons set forth above, the Court grants Class Plaintiffs' Motion for Preliminary Approval of Class Settlement with LAN Defendants. (ECF No. 2673.)

IT IS SO ORDERED.

Dated: November 15, 2023          s/Judith E. Levy
Ann Arbor, Michigan               JUDITH E. LEVY
                                  United States District Judge

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 15, 2023.

<u>s/William Barkholz</u>
WILLIAM BARKHOLZ
Case Manager