## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-EAS |
| | HON. JUDITH E. LEVY |
| | MAG. ELIZABETH A. STAFFORD |

## CLASS PLAINTIFFS' MOTION IN LIMINE NO. 9 TO PROHIBIT VNA FROM MICRO-FOCUSING SOCIAL AND DIGITAL MEDIA ADVERTISEMENTS TO JURORS

Class Plaintiffs move for an order that prohibits VNA (or anyone else acting on VNA's behalf) from directing micro-focused social and digital media advertisements to potential jurors and empaneled jurors, including but not limited to a social media campaign addressing actions related to the Flint Water Crisis. Class Plaintiffs seek to obviate the risk that VNA will, intentionally or not, influence both (1) prospective jurors before trial begins, and (2) jurors who are ultimately empaneled as trial proceeds by publishing its views of the issues and pushing those views via social and digital media advertisements. To this end, Class Plaintiffs request that the Court prohibit VNA from social and digital media advertising as to its views of the case in the counties from which jurors are summoned in this judicial division until trial's end. The jury should reach its verdict based only on evidence and arguments made in court.

As Local Rule 7.1(a) requires, Class Plaintiffs conferred with counsel for VNA concerning this motion. After Class Plaintiffs explained the nature and legal basis for the motion, VNA's counsel indicated that VNA would oppose it.

## **TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUES PRESENTED.................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ...............................v

INTRODUCTION ..................................................................................1

ARGUMENT ........................................................................................2

    I.  Courts Have the Authority to Limit Litigants' Public Statements to
       Prevent Unfair Prejudice and Ensure a Fair Trial. ....................................2

    II.  The Risk That Potential Jurors and Eventually Empaneled Jurors Will Be
        Subjected to VNA's Out-of-Court Legal Arguments is Sufficient for the
        Court to Prohibit VNA From Advertising Them. ....................................4

CONCLUSION ......................................................................................7

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Aaron v. Durrani*,
   No. 1:13-CV-202, 2013 WL 12121516 (S.D. Ohio Oct. 1, 2013) ..............3, 4, 5

*Affeldt v. Carr*,
   628 F. Supp. 1097 (N.D. Ohio 1985) ....................................................3

*CBS Inc. v. Young*,
   522 F.2d 234 (6th Cir. 1975) ..........................................................2, 3

*Gedeon v. Frenchko*,
   No. 4:22CV441, 2022 WL 4356209 (N.D. Ohio Sept. 19, 2022).......................3

*Jenkinson v. Norfolk S. Ry. Co.*,
   No. 1:15-cv-00824-TWP-MPB, 2017 WL 1393086 (S.D. Ind. Apr. 17,
   2017) ...........................................................................................3, 6, 7

*Koch v. Koch Indus., Inc.*,
   2 F. Supp. 2d 1409 (D. Kan. 1998)....................................................2, 3

*Mai v. Nine Line Apparel, Inc.*,
   No. CV418-277, 2019 WL 5092478 (S.D. Ga. Oct. 10, 2019)...........................3

*Nat'l Fuel Gas Co. v. U.S. Energy Sav. Corp.*,
   No. 07-CV-440A(F), 2008 WL 2405725 (W.D.N.Y. June 11, 2008) ................3

*Patterson v. People of the State of Colorado ex rel. Att'y Gen. of State of
   Colorado*,
   205 U.S. 454 (1907)........................................................................2, 5

*Press-Enterprise Co. v. Superior Court*,
   478 U.S. 1 (1986)................................................................................4

*United States v. Brown*,
   218 F.3d 415 (5th Cir. 2000) ..............................................................3

*United States v. Scrushy*,
   No. CR-03-BE-0530-S, 2004 WL 848221 (N.D. Ala. Apr. 13, 2004) ...............6

*United States v. Tijerina*,
   412 F.2d 661 (10th Cir. 1969) ............................................................3

**OTHER AUTHORITIES**

Megan M. La Belle, *Influencing Juries in Litigation "Hot Spots"*, 94 Ind.
      L.J. 901, 910 (2019)...........................................................................5, 6

## CONCISE STATEMENT OF THE ISSUES PRESENTED

Whether the Court should prohibit VNA (or anyone else acting on VNA's behalf) from directing micro-focused social and digital media advertisements to the jury pool and ultimately empaneled jurors by enjoining VNA from social and digital media advertising as to its legal arguments in the counties from which jurors are summoned in this judicial division.

**Plaintiffs answer:** "Yes."

**VNA's answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975).

*Patterson v. People of the State of Colorado ex rel. Att'y Gen. of State of Colorado*, 205 U.S. 454 (1907).

*Jenkinson v. Norfolk S. Ry. Co.*, No. 1:15-cv-00824-TWP-MPB, 2017 WL 1393086 (S.D. Ind. Apr. 17, 2017).

*Aaron v. Durrani*, No. 1:13-CV-202, 2013 WL 12121516 (S.D. Ohio Oct. 1, 2013).

## INTRODUCTION

Class Plaintiffs move for an order that prohibits VNA (or anyone else acting on VNA's behalf) from directing micro-focused social media advertisements to prospective and empaneled jurors. As evidenced by developments in the Bellwether I trial, VNA's public relations strategy is to aggressively continue litigating the case's merits beyond the courtroom, both on its website, veoliaflintfacts.com, and on social media. VNA then amplifies its messaging with advertising, pushing its online publications to the forefront.

Such advertising amplifies VNA's litigation positions beyond the courtroom and into the orbit of prospective and ultimately empaneled jurors. Whether intentional or not, VNA's strategy unfairly gives them extra opportunities to pitch its legal arguments, allowing them to plant seeds in the minds of prospective jurors and have second (third, fourth, and so on) bites at the apple with empaneled jurors, throwing into doubt the integrity of the jury's verdict and the trial as a whole.

Of course, First Amendment concerns are implicated when expression is limited by a court. But courts have the duty to protect the rights of litigants to a fair trial, and to prevent unfair prejudice from contaminating the judicial process. And courts regularly limit litigants' out-of-court statements from the run up to trial through the jury's verdict, especially when presiding over cases that have attracted significant public attention.

1

VNA should not be permitted to undermine the Court and the fair administration of justice. The Court should not hesitate to enter an appropriate order limiting the advertisement of VNA's legal positions and ensuring that the case is heard and decided in court.

## ARGUMENT

### I. Courts Have the Authority to Limit Litigants' Public Statements to Prevent Unfair Prejudice and Ensure a Fair Trial.

Central to the functioning of our judicial system "is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. People of the State of Colorado ex rel. Att'y Gen. of State of Colorado*, 205 U.S. 454, 462 (1907). "[T]he right to a fair trial, both in civil and criminal cases, is one of our most cherished values, and that a trial judge should have the authority to adopt reasonable measures to avoid injury to the parties by reason of prejudicial or inflammatory publicity." *CBS Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975). Trial courts have a "heavy responsibility . . . to take such reasonable measures as may be required by the circumstances to obviate the possibility of contamination of the trial process." *Id.*

Accordingly, trial courts have the authority to restrict litigants' statements regarding the case so that "[o]utside influences" do not "impair the jury's ability to search for the truth." *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1409, 1412 (D. Kan.

1998).[1] Though more common in criminal cases, such orders are also frequently used by trial courts overseeing civil litigation to prevent contamination of the jury pool and ensure a fair trial.[2]

Of course, "any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First Amendment rights will interfere with the rights of the parties to a fair trial." *CBS*, 522 F.2d at 241. Courts therefore must consider and make specific findings that (1) a substantial probability that a party's right to a fair trial will be prejudiced by publicity that the order would prevent; and (2) there exists no reasonable alternative that will adequately protect the party's right

---

[1] *See also Nat'l Fuel Gas Co. v. U.S. Energy Sav. Corp.*, No. 07-CV-440A(F), 2008 WL 2405725, at *5 (W.D.N.Y. June 11, 2008) (where appropriate, court may "issue a civil 'gag' order where the party protesting pretrial publicity demonstrates a 'reasonable likelihood' that media attention or extrajudicial commentary will prejudice a fair trial" (citing *United States v. Tijerina,* 412 F.2d 661, 666 (10th Cir. 1969))); *United States v. Brown*, 218 F.3d 415, 423 (5th Cir. 2000) (finding a "gag order is constitutionally permissible [when] it is based on a reasonably found substantial likelihood that comments from the lawyers and parties might well taint the jury pool, either in the present case or [a] related case.").

[2] *See, e.g.*, *Jenkinson v. Norfolk S. Ry. Co.*, No. 1:15-cv-00824-TWP-MPB, 2017 WL 1393086, at *4-5 (S.D. Ind. Apr. 17, 2017) (prohibiting any attempt to tamper with the jury pool by using advertisements suggesting drivers are responsible for crossing collisions); *Affeldt v. Carr*, 628 F. Supp. 1097, 1101 (N.D. Ohio 1985); *Gedeon v. Frenchko*, No. 4:22CV441, 2022 WL 4356209 (N.D. Ohio Sept. 19, 2022); *Aaron v. Durrani*, No. 1:13-CV-202, 2013 WL 12121516, at *2 (S.D. Ohio Oct. 1, 2013); *Mai v. Nine Line Apparel, Inc.*, No. CV418-277, 2019 WL 5092478, at *6 (S.D. Ga. Oct. 10, 2019); *Koch*, 2 F. Supp. 2d 1409, *order dissolved*, 6 F. Supp. 2d 1185 (D. Kan. 1998).

to a fair trial. *Aaron*, 2013 WL 12121516, at *1 (citing *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 14 (1986)).

## II. The Risk That Potential Jurors and Eventually Empaneled Jurors Will Be Subjected to VNA's Out-of-Court Legal Arguments is Sufficient for the Court to Prohibit VNA From Advertising Them.

It is undisputed (as the Court by now is well aware) that VNA engaged in a digital media public relations campaign during the Bellwether I trial which, when revealed, spawned a whole host of subsequent litigation which remains unresolved after a more than a year of numerous motions, briefs, depositions, and hearings. *See generally* Dkt. Rpt., Case No. 5:16-cv-10444-JEL-EAS. VNA stresses that its campaign "was not intended to (and did not) influence jurors or potential jurors," but was meant to reach journalists. VNA's Resp. to Pls.' Submission on VNA's Digital Media Presence, ECF No. 2596, PageID.85505. As evidence of the lack of any improper motive on its part, VNA pointed to the fact that only small fraction of its ads were served in the venire. *See id.*, PageID.85507-08.

But regardless of intent, according to VNA's own briefing on the matter, its advertising did in fact reach residents of the area from which this Court draws jurors, admitting that there is at least a risk that jurors were or at least could have been improperly influenced outside the courtroom. The prudent course would be to avoid this risk altogether.

4

As noted above, a court considering a gag order must consider the First Amendment rights of those affected. *See Aaron*, 2013 WL 12121516, at *1 (courts therefore must consider the probability that a party's right to a fair trial will be prejudiced and whether there exists no reasonable alternative that will adequately protect the party's right to a fair trial).

Allowing such litigation will surely prejudice Class Plaintiffs right to a fair trial. It goes without saying that permitting a party to advertise its legal arguments and thus plant seeds in the minds of prospective jurors and make additional arguments to empaneled jurors is unfairly prejudicial to the non-advertising party, and improperly removes the case from the courtroom. *See Patterson*, 205 U.S. at 462 ("The theory of our system is that the conclusions to be reached in a case will be induced *only by evidence and argument in open court, and not by any outside influence*, whether of private talk or public print.") (emphasis added). For the same reason, there is no reasonable alternative that will protect the parties' right to a fair trial. There is simply no justifiable reason to permit VNA to reach out directly to prospective and ultimately empaneled jurors regarding case matters beyond the courtroom from now until the end of trial.[3]

---

[3] VNA may assert that it should be allowed to continue ad campaigns that may reach jurors because any issue of influence may be resolved in *voir dire*. ECF No. 2596, PageID.85512-13. But there remains the danger of subtler influence depending on the form of advertisement and the impact of advertising on persons

Class Plaintiffs do not ask for much. Class Plaintiffs do not request that the Court prohibit VNA from updating its website or posting on social media feeds. Class Plaintiffs merely ask that such content not be directed, intentionally or unintentionally, at prospective jurors and (after empaneling) the selected jurors via digital advertising starting now until after trial ends. An order prohibiting merely social and digital media advertising *as to the case's merits* solely in the counties in this judicial district from which jurors are summoned accomplishes this with minimal impairment of VNA's First Amendment rights and avoids the risk of exhaustive post-verdict litigation into the extent and propriety of VNA's public relations efforts. *See, e.g.*, *Jenkinson*, 2017 WL 1393086, at *4-5 (prohibiting any attempt to tamper with the jury pool by using advertisements related the issues in the

---

surrounding the potential juror, which in turn may impact the potential juror themselves. Megan M. La Belle, *Influencing Juries in Litigation "Hot Spots"*, 94 Ind. L.J. 901, 910 (2019) ("Some of these party-initiated attempts to persuade [such as advertising] jurors are blatant, while others are subtler and thus potentially more dangerous."); Expert Decl. of Lauren H. Cohen, ECF No. 2550, PageID.84473 ("[W]hile these advertisement campaigns (both in the academic work and for Veolia) were conducted before and during jury selection, even during a trial period, though jurors may be instructed to attempt to avoid these influences, it does not mean those around them are immune from them.").

It would be more prudent to avoid the risk altogether rather than litigate the extent of its prejudicial effect after-the-fact. *See, e.g.*, *United States v. Scrushy*, No. CR-03-BE-0530-S, 2004 WL 848221, at *6 (N.D. Ala. Apr. 13, 2004) ("While the court anticipates a rigorous voir dire and 'emphatic' jury instructions, the prophylactic measure of a restraint on extra-judicial comments by the trial participants plays an essential role in ensuring a fair trial in this case.").

case). To the extent VNA insists that advertisement of its legal arguments beyond the courtroom is necessary,[4] such an order is sufficiently limited in geographic scope[5] and time to properly balance VNA's First Amendment rights against Class Plaintiffs' right to a fair trial and impartial, untainted jury.

The Court should enter an appropriate order prohibiting social and digital media advertising regarding the case's merits targeted at the counties from which jurors are summoned to prevent any possible jury contamination. VNA should not be permitted to litigate its case beyond the courtroom.

## CONCLUSION

For these reasons, the Court should grant Class Plaintiffs' motion and enjoin VNA from social media advertising as to its views of the case in the counties from which jurors are summoned in this judicial division from now until the jury renders a verdict.

---

[4] Such advertising appears unnecessary on VNA's own terms, as VNA previously justified its ad campaign on the barriers to in-person attendance at the trial owing to COVID-19. ECF No. 2596, PageID.85505 ("VNA's use of Twitter during the trial was an effort to reach *journalists* (not jurors) to convey its perspective on a trial that journalists could not attend in person because of COVID-19 restrictions."); *id.*, PageID.85510-11.

[5] Limiting the geographic scope of VNA's ad campaign is possible, as evidenced by VNA's own brief on the matter. ECF No. 2596, PageID.85506 ("[A]lthough Google offers tools that allow advertisers to direct advertising to specific zip codes or locations, VNA never used them.").

Dated: November 30, 2023

Respectfully submitted,

By: /s/ Theodore J. Leopold
Theodore J. Leopold
COHEN MILSTEIN SELLERS
& TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
*CO-LEAD CLASS COUNSEL*

By: /s/ Michael L. Pitt
Michael L. Pitt
PITT MCGEHEE PALMER
& RIVERS, P.C.
117 West 4th Street, Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mpitt@pittlawpc.com
*CO-LEAD CLASS COUNSEL*

8

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on November 30, 2023.

Dated: November 30, 2023

*/s/ Theodore J. Leopold*
Theodore J. Leopold
**COHEN MILSTEIN SELLERS & TOLL PLLC**
11780 U.S. Highway One,
Suite 200
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com

9