# Exhibit 3

```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
     _____
                                           : Civil Action No
                                           : 5:16-cv-10444
     In re:   FLINT WATER CASES            :
                                           : Hon. Judith E. Levy
     _____: Mag. Mona K. Majzoub

                           STATE OF MICHIGAN
           CIRCUIT COURT FOR THE 7TH JUDICIAL CIRCUIT
                           GENESEE COUNTY
     _____
                                           :
     In Re:   FLINT WATER LITIGATION       : No. 17-108646-N0
                                           : (this filing does
     ATTORNEY GENERAL DANA NESSEL,         : NOT relate to all of
     on behalf of the People of the        : the cases - only
     State of Michigan,                    : 16-107576-NM)
                                           :
             Plaintiff,                    :
          v.                               : No. 16-107576-NM
                                           : Hon. Joseph J. Farah
     VEOLIA NORTH AMERICA, INC.,           :
     a Delaware Corporation, et al.,       : HIGHLY CONFIDENTIAL
                                           :
             Defendants.                   :
     _____:

                       Monday, June 28, 2021

             Deposition of BRIAN CLARKE, conducted at the
     location of the witness in Lombard, Illinois,
     commencing at 8:06 a.m., on the above date, before
     Carol A. Kirk, Registered Merit Reporter, Certified
     Shorthand Reporter, and Notary Public.

                    GOLKOW LITIGATION SERVICES
               877.370.3377 ph | 917.591.5672 fax
                         deps@golkow.com
```

Highly Confidential - Bryan Clarke

1     You can answer, Mr. Clarke.

2     A.   About the aesthetic quality,
3  color, taste, solids, and smell.  That's what
4  was referenced there.

5     Q.   Okay.  And scrolling down,
6  Mr. Chen talks about the city's expectation on
7  the consultant.  He says, "My assessment is that
8  the city's expectation on the consultant is
9  unrealistic.  There is no small tweaking will
10 allow the city to comply with the TTHM's
11 regulation, or implement any engineering
12 solutions to reduce TTHMs within 30 to 60 days.
13 Yet, TTHMs is not even in most of residents
14 minds.  Their concerns are of overall water
15 quality issues comparing to DWSD water."

16     Did I read that correctly?

17     A.   Yes.

18     Q.   Okay.  So Mr. Chen knew before the
19 project even got started that the city's
20 expectation on the consultant was unrealistic,
21 right?

22     A.   That was his assessment.  Yes.

23     MR. McELVAINE:  Object to the
24 form.

Highly Confidential - Brian Clarke

```
 1   I would probably guess -- it's only a guess --
 2   some Internet searching here, too, referring to
 3   NBS News.
 4          Q.   And Mr. Chen acknowledges that the
 5   expectation wasn't TTHM.  "The unrealistic
 6   expectation wasn't just solving TTHMs, but
 7   rather the overall water quality issues and
 8   comparing the water to DWSD."
 9               Correct?
10               MR. McELVAINE:  Objection as to
11       form.
12               You can answer, Mr. Clarke.
13          A.   That's what he's saying in this
14   e-mail.  Yes.
15          Q.   Okay.  And then Mr. Chen also
16   writes in response to Mr. Nicholas' e-mail --
17   this is the same date.  It appears later that
18   morning.
19               Mr. Chen writes, "What a
20   consultant role may not achieve, in my view, is
21   to satisfy all the concerns the customers have
22   currently, or guarantee a solution that will
23   solve the city's public relationship problem and
24   within its financial constraints (basically
```

```
 1   cheaper than the DWSD option in the next year
 2   and a half).  In my view, we can't guarantee any
 3   implementation schedule, cost, or outcome, even
 4   after a week- or month-long evaluation."
 5              So at least -- prior to the
 6   project, at least one of Veolia's engineers on
 7   the project knew that Veolia could not satisfy
 8   residents' concerns regarding water quality,
 9   correct?
10        A.    I think he's saying --
11              MR. McELVAINE:  Objection to the
12        form.
13              You can answer.
14        A.    I think he's saying that a
15   consultant role could not do that.
16        Q.    Okay.  He also believed -- I'm
17   sorry.  I didn't mean to cut you off if you
18   weren't done.
19        A.    That's okay.  That's what he said.
20        Q.    Okay.  He also believed that
21   Veolia could not guarantee an outcome for the
22   city with respect to its water quality after a
23   week- or even a month-long evaluation of the
24   water system, correct?
```

```
 1   what we need."
 2            And then later he goes, "The
 3   ultimate focus is not on the water problem but
 4   fixing the entire utility.  It's a great PPS
 5   delegated management or O&M possibility."
 6            So February 3rd is before the
 7   contract had been entered, correct?
 8       A.   Yes.
 9       Q.   Okay.  So at that time, the
10   project coordinator for the Flint project was
11   saying that the ultimate focus of Veolia wasn't
12   on the water problem but fixing the entire
13   utility and upselling or converting it into a
14   PPS delegated management or O&M responsibility,
15   correct?
16            MR. McELVAINE:  Object to form --
17       sorry.  Object to form.
18            You can answer, Mr. Clarke.
19       A.   That is what his e-mail says.
20       Q.   Okay.  So, again, it wasn't a
21   hope.  It was actually Veolia's focus at the
22   time before the contract was entered to convert
23   this into a larger contract, correct?
24            MR. McELVAINE:  Object to form.
```

Highly Confidential - Brian Clarke

```
 1   "fixing" into your statement.
 2        Q.   Okay.
 3        A.   The statement is, "The ultimate
 4   focus is not on the water problem but fixing the
 5   entire utility."  If you fix the entire utility,
 6   you fix the water problem as well.
 7             So the idea here, the intent of
 8   the e-mail, is to indicate that we were hoping
 9   to do more work that would encompass not only
10   what we did the first week of work on but other
11   elements of their entire utility, including
12   wastewater.
13        Q.   Fixing the entire utility would
14   necessitate -- would necessarily require a
15   larger contract, correct, whether it be PPS
16   delegated management or O&M?
17        A.   Yes.
18        Q.   Okay.
19        A.   It would require a larger
20   contract, a different contract, and more scope,
21   certainly.
22                    - - -
23        (Clarke Deposition Exhibit 18 marked.)
24                    - - -
```

```
 1                   So it's true that Veolia viewed
 2   the Flint project as a paid sales effort,
 3   correct?
 4            MR. McELVAINE:  Object to the
 5        form.
 6            You can answer, Mr. Clarke.
 7        A.   This is how Mr. Nicholas described
 8   it in June of that year.  Yes.  That's how it
 9   was described.
10        Q.   Okay.  And Mr. Nicholas, again,
11   was a project coordinator and really the lead on
12   the Flint project in obtaining the Flint
13   project, correct?
14        A.   No.
15            MR. McELVAINE:  Object to the
16        form.
17            You can answer.
18        Q.   Okay.
19        A.   He was the project coordinator.
20   Our projects are essentially team efforts.  This
21   particular project was conducted, as you said
22   earlier today, by the boots on the ground,
23   Mr. Gnagy and Mr. Chen.
24            Mr. Nicholas' role was to work
```

Highly Confidential - Brian Clarke

```
 1                    CERTIFICATION

 2

 3        I, Carol A. Kirk, Registered Merit Reporter and

 4   Certified Shorthand Reporter, do hereby certify that

 5   prior to the commencement of the examination,

 6   BRIAN CLARKE, was duly remotely sworn by me to testify

 7   to the truth, the whole truth, and nothing but the

 8   truth.

 9        I DO FURTHER CERTIFY that the foregoing is a

10   verbatim transcript of the testimony as taken

11   stenographically by me at the time, place, and on the

12   date hereinbefore set forth, to the best of my

13   ability.

14        I DO FURTHER CERTIFY that I am neither a

15   relative nor an employee nor attorney nor counsel of

16   any of the parties to this action, and that I am

17   neither a relative nor employee of such attorney or

18   counsel, and that I am not financially interested in

19   the action.

20

21

22   _____
     Carol A. Kirk, RMR, CSR
23   Notary Public
     Dated:  July 8, 2021

24
```