# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| ELNORA CARTHAN, et al., | Case No. 5:16-cv-10444-JEL-MKM |
|                     Plaintiffs, | Hon. Judith E. Levy |
| v. | |
| RICK SNYDER, et al., | |
|                     Defendants. | |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN OPPOSITION TO CLASS PLAINTIFFS' MOTION *IN LIMINE* NO. 9 TO LIMIT VNA'S PUBLIC SPEECH ABOUT THE FLINT WATER LITIGATION

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court deny Class Plaintiffs' motion to impose a gag order on VNA because Class Plaintiffs have failed to provide evidence establishing that a gag order is needed to prevent a serious and imminent threat to the administration of justice?

    **VNA answers:**  "Yes."

    **Plaintiffs answer:**  "No."

2.  Should the Court deny Class Plaintiffs' motion to impose a gag order on VNA because Class Plaintiffs have failed to demonstrate that a gag order is the least restrictive means to ensure an impartial jury for this case?

    **VNA answers:**  "Yes."

    **Plaintiffs answer:**  "No."

3.  Should the Court deny Class Plaintiffs' motion to impose a gag order on VNA because the proposed gag order is both overbroad and underinclusive?

    **VNA answers:**  "Yes."

    **Plaintiffs answer:**  "No."

4.  Should the Court deny Class Plaintiffs' motion to impose a gag order on VNA because the proposed gag order is unconstitutionally vague?

    **VNA answers:**  "Yes."

    **Plaintiffs answer:**  "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018)

*Neb. Press Ass'n v. Stuart*, 427 U.S. 539 (1976)

*United States v. Ford*, 830 F.2d 596 (6th Cir. 1987)

*United States v. Trump*, No. 23-3190, 2023 WL 8517991 (D.C. Cir. Dec. 8, 2023)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

      A.    VNA's Online Speech ...........................................................2

      B.    Plaintiffs Take Discovery On VNA's Speech.....................7

LEGAL STANDARD.........................................................................8

ARGUMENT ......................................................................................9

I.    Class Plaintiffs Have Put Forward No Evidence Demonstrating That A Gag Order Is Needed To Prevent A Serious And Imminent Threat To The Administration Of Justice ...................................................9

      A.    Establishing A Serious And Imminent Threat To A Judicial Proceeding Is An Exacting Standard, Informed By First Amendment Principles ..........................................................9

      B.    Class Plaintiffs Fail To Show A Serious And Imminent Threat To This Litigation..........................................................12

      C.    Class Plaintiffs' Cited Authorities Do Not Support The Proposed Gag Order ............................................................17

II.    Class Plaintiffs Have Not Shown That A Gag Order Is The Least Restrictive Means To Ensure A Fair Trial ..................................18

III.    The Proposed Gag Order Is Both Overbroad And Underinclusive.............21

IV.    The Proposed Gag Order Is Unconstitutionally Vague...............................23

CONCLUSION ..................................................................................25

iv

## INTRODUCTION

Class Plaintiffs ask this Court for a gag order prohibiting VNA from using "digital media advertising *as to the case's merits*" from now until the end of trial in the counties making up this Court's jury pool.  Pls. Br. in Supp. of Mot. in *Limine* No. 9 to Limit VNA's Public Speech 6, ECF No. 2707, PageID.88568 (Pls. Br.) (emphasis in original).  But gag orders are a prior restraint on speech, and the Sixth Circuit has made it clear that courts may not limit the speech of trial participants without "specific findings . . . establishing that" the speech at issue poses "a serious and imminent threat to the administration of justice."  *CBS, Inc. v. Young*, 522 F.2d 234, 239 (6th Cir. 1975) (quotation marks omitted).  Class Plaintiffs have not even tried to meet this heavy evidentiary burden.  Nor could they.  Despite extensive discovery into VNA's constitutionally protected online speech, Class Plaintiffs have failed to uncover any evidence that VNA has ever targeted the jury pool.

On top of that, VNA's speech is a tiny drop in the Lake Michigan-sized bucket of all public speech on the water crisis. That speech has included biased statements from the politicians blamed for the crisis and from counsel for Class and individual Plaintiffs—who continue to post online about this litigation. Class Plaintiffs have not even tried to show that VNA's speech is somehow more harmful to this Court's ability to empanel an unbiased jury than their own speech or the countless articles and statements put out about the water crisis in the past nine years.

1

Even if VNA's speech could improperly bias the jury pool—which it has not done—there are other, less restrictive means, short of a gag order, to ensure an impartial jury, such as questions during voir dire and jury instructions not to search online for information about the water crisis.  The proposed gag order also is both overbroad and underinclusive, as it has no carveouts for VNA's political speech and allows Class Plaintiffs to use social and digital media to make their own statements to the jury pool, no matter how inflammatory.  And the proposed gag order is unconstitutionally vague because, among other things, it is not clear what topics would fall under a restriction on "digital media advertising as to the case's merits." As a result, the gag order would chill any VNA speech remotely relating to the water crisis, including speech about critical political developments like the EPA's recent rulemaking on replacing lead pipes.

The Court should reject Class Plaintiffs' attempt to use the coercive authority of the federal judiciary to silence their opponents.  Class Plaintiffs' request for a gag order should be denied.

## BACKGROUND

### A.    VNA's Online Speech

Under siege by the numerous lawsuits filed against it (and others) in the wake of the Flint water crisis and the efforts of government officials to dodge responsibility, VNA, beginning in 2016, undertook to defend its reputation and

respond to the allegations against it using online platforms.  VNA's speech took place on Google ads, Twitter, and the website www.veoliaflintfacts.com.

### *Google Ads*

VNA made a modest Google ad purchase in 2016 to promote the www.veoliaflintfacts.com website.  *See* Griffiths Dep. 19:15-24, ECF No. 2311-3, PageID.74655; Pls. Mot. to Compel Ex. 7, at 2-4, ECF No. 2298-8, PageID.74422-74424.  VNA capped the ad buy at $75 a day, which meant that its ads would stop appearing for the rest of the day once the $75 limit was met.  *See* Connor Dep. 115:1-15, ECF No. 2311-4, PageID.74675; Supp. McDonald Decl. ¶¶ 20-21, ECF No. 2596-2, PageID.85528.  Unlike some types of online ads that appear as pop-ups on a person's phone, tablet, or computer when the person goes to a particular website or physically enters a particular area, the ads that VNA purchased appear only as Google search results and only after someone has run a Google search for the key terms chosen by VNA.  *See* Ex. 2, Decl. of Jason McDonald (McDonald Decl.) ¶¶ 16, 19-23; *see also id.* ¶ 29 ("the facts substantiate that ads were shown to users if, and only if, they pro-actively entered a search term that matched the search keywords of Veolia's Google Ads Account"); Connor Dep. 114:16-21, PageID.74674 (Google ads are "not something you just stumble upon.  You have to trigger an ad display through select key-words.").  VNA thus does not control who sees the ads; that depends entirely on which Google users search for the key terms.

VNA identified the key terms that would cause its ads to appear (which include "Veolia Michigan" and "Flint Lawsuit") in 2016 and has not meaningfully changed the parameters of its Google ads since then.  *See* Supp. McDonald Decl. ¶¶ 12, 29, PageID.85523-85524, 85532; Google Ads "Search_keywords (2015.07.17-2022.11.07)" Spreadsheet, ECF No. 2311-5, PageID.74679 (listing key terms).

The ads themselves consisted of a headline, a short line of text, and a link to take Google users to the www.veoliaflintfacts.com website if they clicked on it.  *See* McDonald Decl. ¶¶ 39-40.  The Google ads could use one of multiple headlines, which included the phrases "Veolia wrongly blamed," "Veolia offered Flint help," "Veolia advice ignored," and "Veolia not to blame."  *Id.* ¶ 39.

There are two metrics for showing the reach of a Google ad:  the number of impressions—that is, the number of times Google displayed the ad in response to a Google user's keyword search—and the number of clicks—that is, the number of times a Google user both saw the ad and clicked on it.  Supp. McDonald Decl. ¶ 12, PageID.85523-85524.  Those data show that the vast majority of the time, VNA's Google ads were not seen by potential jurors.  Since 2016, only 2.78% of impressions occurred in the six-county area from which this Court draws its juries.  *Id.* ¶ 10, PageID.85521-85522.  Only 2.66% of clicks took place in that same six-county area. *Id.* ¶ 10, PageID.85521-85522.  That 2.66% represents a mere 661 clicks in seven years in an area with approximately 3.8 million people.  *Id.* ¶¶ 10-11, 13,

PageID.85521-85522, 85524.  The 661 figure also does not mean that 661 unique individuals clicked on the Google ad.  Google tracks both human activity and activity by "bots," "which are non-human entities that pervade the Internet and that can dramatically inflate performance metrics like impressions and clicks" because "[a]pproximately 38% of web traffic is automated/bots."  *Id*. ¶ 14 & n.4, PageID.85525 (quotation marks omitted).  And if the same person clicked on a Google ad multiple times, each of those clicks would be counted separately.  So the 661 figure does not represent "661 unique individuals, but likely signifies a meaningfully smaller number of unique users, as well as bots."  *Id*. ¶ 14, PageID.85525.

Further, although Google provides options for targeting who will see a purchased ad, VNA did not use those options.  For instance, Google allows for "geo-targeting," *i.e.*, limiting an ad's reach so that it appears only to people who search for the ad's keywords within a particular geographic area.  Connor Dep. 111:24-112:19, PageID.74671-74672.  VNA did not use that option; instead, it asked that its ads appear to users located anywhere in the United States or Canada.  *See* McDonald Decl. ¶ 38; Google Ads "Locations (Targeting_2015.07.17-2022.11.017)" Spreadsheet, ECF No. 2311-8, PageID.74686.  VNA thus did not "geo-target" Michigan, let alone the area from which this Court draws its juries—as the small number of clicks and impressions from that area confirm.  Google also

allows for targeting based on age, gender, or other variables, but VNA did not use any of those options either. *See* Connor Dep. 112:20-114:1, PageID.74672-74674.

### *Twitter*

VNA started a Twitter account in February 2022. McDonald Decl. ¶ 57. Twitter (now known as X) allows users to post short messages, which may be "shown to other users who follow" the account, "dependent on the Twitter algorithm, which prioritizes highly engaged [posts] over non-engaged [posts]." *Id*. ¶ 56. As of March 8, 2023, VNA's Twitter account had 29 followers, and the account receives minimal engagement from other Twitter users. *Id*. ¶¶ 57-58. Throughout the life of the account, VNA's [posts] have been reposted 32 times and liked 31 times. *Id*. ¶ 58. The account's most popular post has received 307 impressions. *Id*. ¶ 59. VNA did not "promote" its posts, meaning that VNA did not pay Twitter to show its posts to other users. *See* McKeon Tr. 39:9-20, 135:6-15, ECF No. 2596-3, PageID.85547, 85550.

### *"Veolia Flint Facts" Website*

VNA created the www.veoliaflintfacts.com website in 2016. The website describes VNA's actions in Flint and provides information about the government officials who were responsible for the water crisis. The website is promoted by the above-described Google ads. VNA's Twitter account also sometimes posts links to the website. The website receives comparatively few visitors. From January 2020

to March 2022, "more people visited the website from France (1,600) than from Michigan (1,512)." Supp. McDonald Decl. 8 n.3, PageID.85524. And "more than 85% of users left the Veolia Flint Facts website without visiting a second page within the site." *Id*.

**B.    Plaintiffs Take Discovery On VNA's Speech**

In fall 2022, counsel for the bellwether Plaintiffs sought discovery on the scope of VNA's online speech, particularly its use of Google ads. They took eight depositions, and occasionally Class Counsel participated in those depositions. The bellwether Plaintiffs also served five sets of document requests, two sets of requests for admissions, and at least eleven third-party subpoenas to consultants who had worked with VNA. They received extensive responses. VNA produced millions of lines of data that cumulatively describe every single Google ad displayed since the initial 2016 ad buy. In September 2023, VNA filed with this Court a summary of the information produced to date and asked the Court to halt any additional discovery because the evidence is plain that VNA did not use its online speech to target jurors. *See* VNA Response to Pls. Submission on VNA Digital Media Presence, ECF No. 2596, PageID.85502-85513. The Court has not issued a ruling on the discovery issue.

## LEGAL STANDARD

Class Plaintiffs' proposed gag order is a prior restraint on speech.  Because "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), they are allowed "only where the evil that would result from the [speech] is both great and certain and cannot be mitigated by less intrusive measures," *CBS v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers).  The Sixth Circuit thus has held that any prior restraint "must be narrowly drawn and cannot be upheld if reasonable alternatives are available having a lesser impact on First Amendment freedoms."  *CBS Inc. v. Young*, 522 F.2d 234, 238 (6th Cir. 1975); *see also United States v. Trump*, No. 23-3190, 2023 WL 8517991, at *10 (D.C. Cir. Dec. 8, 2023) (applying same standard to gag order on criminal defendant).

In the case of trial-related gag orders, the proponent of the gag order must present evidence establishing that, without the prior restraint on speech, there is a "serious and imminent threat[] to the fairness and integrity of the trial." *Young*, 522 F.2d at 240; *see also United States v. Ford*, 830 F.2d 596, 600 (6th Cir. 1987) (striking down gag order limiting defendant's speech because "no facts were found which would suggest 'a serious and imminent threat'" to the administration of justice); *see also Trump*, 2023 WL 8517991, at *10 (authorizing gag order when needed to address a "significant and imminent risk to the fair and orderly

administration of justice"). Before issuing a gag order, a district court must make "adequate factual findings" and "develop" the record to establish that the speech at issue will make it "likely that [the judge] will be unable to guide a jury to an impartial verdict." *In re Murphy-Brown, LLC*, 907 F.3d 788, 798 (4th Cir. 2018); *Neb. Press*, 427 U.S. at 569 (assessing whether "further publicity, unchecked, would so distort the views of potential jurors that 12 could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court").

## ARGUMENT

### I.  Class Plaintiffs Have Put Forward No Evidence Demonstrating That A Gag Order Is Needed To Prevent A Serious And Imminent Threat To The Administration Of Justice

Class Plaintiffs have a heavy evidentiary burden. They must establish that this Court has a compelling interest in silencing VNA's speech, which means showing that VNA's speech poses a "serious and imminent threat" to this litigation. *Ford*, 830 F.2d at 600 (quotation marks omitted). They have not come close to satisfying that requirement.

#### A.  Establishing A Serious And Imminent Threat To A Judicial Proceeding Is An Exacting Standard, Informed By First Amendment Principles

The Sixth Circuit has explained that the kind of threat that justifies a gag order on litigants "must be specific, not general." *Ford*, 830 F.2d at 600. "It must be much more than a possibility or a 'reasonable likelihood' in the future" of harm. *Id*.

9

Instead, "[i]t must be a 'serious and imminent threat' of a specific nature, the remedy for which can be narrowly tailored in an injunctive order." *Id.* (quoting *Carroll v. President & Comm'r of Princess Anne*, 393 U.S. 175, 183 (1968)).

When assessing whether a threat is so "serious and imminent" as to justify a gag order, courts are guided by broader First Amendment principles. "The First Amendment reflects 'a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.'" *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Consistent with that commitment, "[t]rial judges, the government, the lawyers and the public must tolerate robust"—and even "acrimonious" or "silly"— "public debate about litigation." *Ford*, 830 F.2d at 599. Indeed, "the right of publicity concerning [court] operations goes to the heart of their function" because they are "public institutions funded with public revenues for the purpose of resolving public disputes." *Id.* And the right to speak about litigation belongs to the parties in that pending litigation no less than to the public and the media. In fact, the free-speech right of litigants to comment on their pending case is coextensive with the right of the press to report on it. *See id.* at 598-99 ("We see no legitimate reasons for a lower threshold standard for individuals, including defendants, seeking to express themselves outside of court than for the press.").

The First Amendment also protects biased speech, including biased speech

about litigation. *See Craig v. Harney*, 331 U.S. 367, 374-75 (1947) (a "sketchy and one-sided report of a case" that was "an unfair report of what transpired" because the speaker failed to include a key aspect of the court's ruling was fully protected speech); *Bailey v. Sys. Innovation, Inc.*, 852 F.2d 93, 100 (3d Cir. 1988) (holding that even "deliberately slanted" speech about pending litigation was constitutionally protected). Courts therefore do not gag litigants merely for issuing one-sided statements about their cases. As the Fourth Circuit has explained, "[j]urors are not that fragile." *Murphy-Brown*, 907 F.3d at 798. Because jurors are regularly admonished by judges to disregard certain information, biased public speech about a case does not prevent a court from empaneling an impartial jury. *Id.* ("An impartial jury, moreover, need not be wholly unaware of information—including potentially prejudicial information—outside the record."); *see also Skilling v. United States*, 561 U.S. 358, 381 (2010) ("juror *impartiality* . . . does not require *ignorance*"); *Neb. Press*, 427 U.S. at 554 ("pretrial publicity even pervasive, adverse publicity does not inevitably lead to an unfair trial"). The kind of "serious and imminent threat" needed to justify a gag order on litigants must result from something more than "public attention" on or "public discussion" about a case—the judge must be "unable to guide a jury to an impartial verdict." *Murphy-Brown*, 907 F.3d at 798.

Additionally, the court should consider whether a gag order would curtail political speech. "[A] major purpose" of the First Amendment "was to protect the

free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966). As a result, "[n]o form of speech is entitled to greater constitutional protection" than "[c]ore political speech." *McIntyre v. Ohio Elec. Comm'n*, 514 U.S. 334, 347 (1995). Courts will limit a gag order on litigants if that order tramples the litigant's ability to comment on how current and former government officers "performed their public duties." *Trump*, 2023 WL 8517991, at *23 (narrowing gag order to allow Mr. Trump to engage in political speech).

### B. Class Plaintiffs Fail To Show A Serious And Imminent Threat To This Litigation

Class Plaintiffs have presented no evidence to establish that VNA's speech will pose a serious and imminent threat to this Court's ability to empanel an impartial jury, particularly in light of all of the other speech about the water crisis that potential jurors have encountered since 2014. Class Plaintiffs say only that VNA's advertising "did in fact reach residents of the area from which this Court draws jurors" so that there is "at least a risk" that potential jurors may have been influenced and it would be "prudent" "to avoid this risk altogether" by silencing VNA going forward. Pls. Br. 4-5, PageID.88566-88567. Class Plaintiffs add that advertising may have a "subtle[] influence" on potential jurors and the "persons surrounding the potential juror[s]." *Id.* at 5-6 n.3, PageID.88567-88568.

This is not even close to the showing required to justify a prior restraint on constitutionally protected speech. Far from establishing the "specific" threat

required by the Sixth Circuit, Class Plaintiffs identified no more than the mere "possibility" of harm that the Sixth Circuit already has held is insufficient to justify a gag order as a matter of law. *Ford*, 830 F.2d at 600. On top of that, Class Plaintiffs seek to silence VNA's speech on a political topic—specifically, how Michigan and City of Flint officials caused and prolonged the water crisis—which means that they have to overcome the stringent First Amendment protections afforded core political speech. And while VNA's speech about the water crisis has been accurate and fair, the First Amendment would protect VNA's speech even if it were one-sided and slanted. Class Plaintiffs' assertion that VNA's political speech may result in a generic, possible harm like a "subtle[] influence" on the jury pool therefore cannot justify a gag order.

When compared to the evidence about VNA's online speech provided through discovery, Class Plaintiffs' showing is even more meager. Only 2.78% of impressions and 2.66% of clicks from VNA's Google ads took place in the area from which this Court draws its juries. Supp. McDonald Decl. ¶ 10, PageID.85521-85522. And in seven years, VNA's Google Ads received a mere 661 clicks—a number that is likely inflated due to bot activity—from the approximately 3.8 million people in the jury pool. *Id*. ¶¶ 10-11, 13, PageID.85521-85522, 85524. VNA's Twitter account had an even smaller reach—its top post has 307 impressions. McDonald Decl. ¶ 59. VNA also used language that was exceedingly unlikely to

inflame or prejudice the jury. Its ads included innocuous phrases like "Veolia wrongly blamed," "Veolia offered Flint help," "Veolia advice ignored," and "Veolia not to blame." *Id*. ¶ 39.

Ironically, Class Plaintiffs seek to silence VNA when their counsel, and counsel for the individual Plaintiffs, are speaking online about this litigation. *See, e.g.*, Ex. 3 (posts from Cohen Milstein website). And their statements are neither unbiased nor accurate. For instance, counsel for Class Plaintiffs stated on their website that "Veolia gave disastrously bad advice about switching over the water supply," even though VNA's work for Flint did not start until after the switch took place. *Id*. at 3. Counsel's website also says that VNA failed to "recommend steps that could have avoided the enormous harms to the City's residents and businesses," yet much of the alleged harms to Flint happened before VNA's month-long contract started. *Id*. And in July 2022 while the first bellwether trial was ongoing, counsel for the Bellwether Plaintiffs used social media to accuse VNA of committing a "crime." *See* VNA Response to Pls. Submission on VNA Digital Media Presence 7 n.3, PageID.85510.

Other speech about the water crisis—by journalists, academics, politicians, and activists—is voluminous. As just one indicator, a search for "Flint Water Crisis" produces more than 10,000 hits on Lexis Nexis. Class Plaintiffs have made no showing whatever to establish that VNA's statements would impair this Court's

ability to impanel an impartial jury, while somehow all the other speech about the water crisis would not. Indeed, VNA's speech is just one aspect of a broader, national conversation. VNA is fully entitled to participate in that discourse.

A recent decision from the D.C. Circuit about a gag order imposed on former president Donald Trump is instructive and explains the kind of serious and imminent threat needed to justify a gag order on a litigant. There, Mr. Trump had a pattern of making inflammatory statements to his millions of social-media followers about the charges he faces from the January 6, 2021 insurrection. *Trump*, 2023 WL 8517991, at *2-3. His statements attacked the district court judge, the prosecutors, and potential witnesses. *Id*. The district court made a factual finding that when Mr. Trump "publicly attacked individuals, including on matters related to this case, those individuals are consequently threatened and harassed" and issued a gag order prohibiting him from "making public statements that 'target' the parties, counsel and their staffs, court personnel, and 'any reasonably foreseeable witness or the substance of their testimony.'" *Id*. at *1, *15.

The D.C. Circuit upheld the gag order, but only in part. The court explained that Mr. Trump's "documented pattern of speech and its demonstrated real-time, real-world consequences pose[d] a significant and imminent threat to the functioning of the criminal trial process" in two ways. *Trump*, 2023 WL 8517991, at *15. First, his speech created a "significant and imminent threat to individuals' willingness to

participate fully and candidly" as witnesses. *Id*. Second, his speech about counsel and trial personnel "pose[d] a significant and imminent risk of impeding the adjudication" of the case because "trial personnel and participants will be distracted or delayed by objectively reasonable concerns about their safety and that of their family members." *Id*. at *16.

The *Trump* decision illustrates the high bar that a proponent of a gag order must satisfy to establish a serious and imminent threat to the administration of justice. Nothing in this case, either presented by Class Plaintiffs or disclosed during discovery, comes remotely close to the serious and imminent threat caused by Mr. Trump's inflammatory rhetoric to his millions of social-media followers. And even then, the court of appeals felt obliged by the First Amendment to narrow the district court's gag order. To protect Mr. Trump's ability to comment publicly on government conduct, including on how previous government officials "performed their public duties," the D.C. Circuit limited the gag order to speech about any witness's participation in the trial itself and speech about counsel and court staff "made with the intent to materially interfere with" the litigation. *Trump*, 2023 WL 8517991, at *23, *28. In light of the small reach of VNA's own online speech, the speech's inoffensive and nonthreatening nature, and the fact that VNA is engaged in core political speech when it critiques the performance of government officials, it is plain that VNA's ability to speak about this litigation, including about how State and

City officials caused and prolonged the water crisis, should be preserved.

### C. Class Plaintiffs' Cited Authorities Do Not Support The Proposed Gag Order

Nor should the Court be persuaded by Class Plaintiffs' cited authorities. None of those decisions supports issuing a gag order here.

*National Fuel Gas Co. v. United States Energy Savings Corp.*, No. 07-cv-440A(F), 2008 WL 2405725 (W.D.N.Y. June 11, 2008), was not about a gag order at all. The case addressed a motion to transfer venue, and the court held that it could empanel an unbiased jury even with local media coverage accusing the defendant gas company of "ripp[ing] off" its customers. *Id*. at *5-6. *Affeldt v. Carr*, 628 F. Supp. 1097 (N.D. Ohio Nov. 5, 1985), also did not address a gag order—it addressed a court order that new class counsel be wholly independent of a recently disqualified counsel. *Id*. at 1099. In *Jenkinson v. Norfolk Southern Railway Co.*, No. 15-cv-0824, 2017 WL 1393086, at *8 (S.D. Ind. Apr. 17, 2017); *United States v. Scrushy*, No. CR-03-BE-0530-S, 2004 WL 848221, at *1 (N.D. Ala. Apr. 13, 2004); and *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1409, 1414-15 (D. Kan. 1998), both sides consented to mutual gag orders. And *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000), expressly rejected the very Sixth Circuit standard that is binding on this Court. *See id*. at 427 (rejecting *Ford*). In any event, *Brown* was not about a gag order as sweeping as the one proposed by Class Plaintiffs—the parties there were still allowed to discuss their defenses and any "information contained in the public

17

record." *Id*. at 418-19. As for *Gedeon v. Frenchko*, No. 22-cv-441, 2022 WL 4356209, at *2 (N.D. Ohio Sept. 19, 2022), the case involved an alleged hostile work environment that included racial epithets, and the court issued a gag order so that the parties could "proceed with their daily work lives." *Aaron v. Durrani*, No. 13-cv-202, 2013 WL 12121516, at *2 (S.D. Ohio Oct. 1, 2013), also involved a "racially inflammatory" slur, this time voiced by one of the parties' attorneys. And *Mai v. Nine Line Apparel, Inc.*, No. CV418-277, 2019 WL 5092478, at *5 (S.D. Ga. Oct. 10, 2019), applied the watered-down standard for a gag order embraced by the Fifth Circuit in *Brown*. In sum, the Court should not rely on any of these decisions to find a compelling reason to gag VNA's speech here.

## II. Class Plaintiffs Have Not Shown That A Gag Order Is The Least Restrictive Means To Ensure A Fair Trial

Even if Class Plaintiffs had shown that VNA's speech poses a "serious and imminent threat" to this litigation, they also must demonstrate that their proposed gag order is the least restrictive means to protect the Court's ability to empanel an impartial jury. *See Young*, 522 F.2d at 238; *Murphy-Brown*, 907 F.3d at 799; *Trump*, 2023 WL 8517991, at *10. They have not made that showing.

The Supreme Court has explained that, before issuing a gag order, a court should consider whether other measures, short of banning speech, will allow the court to empanel an impartial jury. Those alternative measures include "searching questioning of prospective jurors . . . to screen out those with fixed opinions" and

"the use of emphatic and clear instructions on the sworn duty of each juror to decide the issues only on evidence presented in open court." *Neb. Press*, 427 U.S. at 563-64. And, of course, the Court can remind the jurors on a regular basis not to research, read about, or discuss the case with others.

These measures would amply address any bias or confusion among potential or empaneled jurors that could conceivably arise from VNA's speech. It would be an easy matter to ask potential jurors whether they had seen VNA's Google ads. Over the past seven years, fewer than 661 individuals in the jury pool even clicked on VNA's Google ads, and the Google ads appeared on the screens of less than 2.78% of the 3.8 million members of the jury pool—many of whom no doubt paid no attention to the ad and would not remember it if asked about it today. Supp. McDonald Decl. ¶ 10, PageID.85521. Due to the small number of people in the jury pool who saw the ads, it is likely that no individuals reporting for jury duty would even recall the ads, let alone feel that, because of the ads, they would be unable to base their verdict on the evidence presented in court. Indeed, this Court similarly found it "creative but nonsensical" to think that members of the jury pool would "read and remember" statements made by counsel for the bellwether Plaintiffs, let alone base their verdict on counsel's statements. Order 8, *In re Flint Water Cases (Bellwether I)*, No. 17-10164 (Oct. 26, 2022), ECF No. 990, PageID.70157. The same is true for statements by VNA.

Using voir dire to screen out biased jurors also would be effective.  It is not likely that members of the jury pool who heard VNA's speech about the water crisis "would conceal this fact during jury selection and voir dire."  Order 8, *In re Flint Water Cases (Bellwether I)*, No. 17-10164 (Oct. 26, 2022), ECF No. 990, PageID.70157.  And as other courts have recognized, "voir dire can serve in almost all cases as a reliable protection against juror bias however induced."  *Murphy-Brown*, 907 F.3d at 799 (quotation marks omitted); *see also Guertin v. Michigan*, No. 16-cv-12412, 2017 WL 6390962, at *5 (E.D. Mich. Jan. 23, 2017) (declining to change venue for trial against Michigan Department of Environmental Quality officials because jurors who had seen media coverage about the water crisis "could be effectively screened by using a preliminary questionnaire and during voir dire").

Additionally, the Court can ensure that empaneled jurors do not see the Google ads during the trial by instructing them not to run Google searches seeking information about the water crisis.  Instructing jurors not to seek out information about the case before them is routine—the Court already gave such instructions during the first bellwether trial.  And as long as jurors do not actively search for information about the water crisis, they will never see VNA's Google ads.  *See* McDonald Decl. ¶¶ 16, 19-23 (explaining how Google ads operate).

### III.   The Proposed Gag Order Is Both Overbroad And Underinclusive

The Court should reject Class Plaintiffs' proposed gag order for an additional reason. It is both overbroad, in that it targets more speech than necessary to empanel an impartial jury, and underinclusive, in that it ignores speech that—if Class Plaintiffs' arguments were correct—is just as likely to cause juror bias.

Gag orders must be "narrowly drawn" to target only speech that allegedly threatens the trial. *Young*, 522 F.2d at 238; *see also Murphy-Brown*, 907 F.2d at 799 ("[e]ach restriction must be no 'greater than necessary'"). A gag order that is overinclusive violates the First Amendment because government-imposed speech restrictions must "maximize the amount of protected speech allowed." *Trump*, 2023 WL 8517991, at *21. At the same time, an underinclusive speech restriction also is unconstitutional because that kind of gag order "restricts disfavored expressive content while exempting the expression of favored content." *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574-75 (6th Cir. 2002). Underinclusive gag orders "give one side of a debatable public question an advantage in expressing its views to the people." *City of Ladue v. Gilleo*, 512 U.S. 43, 51 (1994). Class Plaintiffs' proposed gag order is simultaneously over- and underinclusive.

Class Plaintiffs ask the Court to prohibit VNA from "direct[ing], intentionally or unintentionally" the content on its website and social-media feeds "at prospective jurors" or empaneled jurors. Pls. Br. 6, PageID.88568; *see also id.* (seeking "[a]n

order prohibiting merely social and digital media advertising *as to the case's merits solely in the counties*" making up the Court's jury pool (emphasis in original)).  This proposed restriction is overbroad because it targets VNA's "views of the case," Pls. Br. 7, PageID.88569, without making any carve-out for political speech or speech that could not reasonably bias a juror—such as an assertion that VNA intends to vigorously defend itself, or purely factual statements such as the date that Flint switched its water source to the Flint River and the date that VNA began its engagement with the City.  *See Trump*, 2023 WL 8517991, at *23 (narrowing gag order to avoid political speech).

The proposed restriction also is underinclusive.  The gag order is not bilateral—while VNA's speech is restricted, Class Plaintiffs' is not, so they are free to post their views of the case online and purchase their own digital-advertising campaign to promote those views in the counties that provide the Court's jury pool. (And so are counsel for individual Plaintiffs, some of whom have not been bashful about criticizing VNA in the media.)  If speech about the case were truly dangerous to the Court's ability to empanel an unbiased jury, as Class Plaintiffs claim, then that reasoning applies to Plaintiffs' speech as much as to VNA's.[1]  *See Reed v. Town of*

---

[1]   The 10th anniversary of the water crisis is imminent (April 2024).  That anniversary will create renewed media interest and coverage about the water crisis. It would be completely unfair and show stark favoritism for Class Plaintiffs' viewpoint, should they (and counsel for individual Plaintiffs) be able to participate in that coverage, while VNA must remain silent under a court order.

*Gilbert, Ariz.*, 576 U.S. 155, 172 (2015) (a speech restriction "cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited").  The Court should reject Class Plaintiffs' proposed gag order because, even if Class Plaintiffs' arguments about juror bias were correct, the gag order does not address the harm that Class Plaintiffs claim they are seeking to avoid. Instead, the gag order would create an imbalance in the public discourse by allowing only one side to voice its opinions about the litigation.  *See Murphy-Brown*, 907 F.3d at 798 ("By prohibiting only certain kinds of information from selected sources, a gag order can actually warp and distort discussion, thereby enhancing prejudice rather than mitigating it.").  That type of government-created imbalance is forbidden.

## IV.    The Proposed Gag Order Is Unconstitutionally Vague

Finally, the Court should reject Class Plaintiffs' proposed gag order because it is unconstitutionally vague. A gag order is unconstitutionally vague if "its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard" that will be applied to their conduct. *United Food & Com. Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 358-59 (6th Cir. 1998); *see also Trump*, 2023 WL 8517991, at *25 (gag order must give "sufficient warning" so that persons can "avoid that which is

forbidden" (quotation marks omitted)).  Class Plaintiffs' proposed gag order fails to let VNA know what it may and may not say in multiple respects.

First, Class Plaintiffs seek an order stating that VNA's online speech may "not be directed, intentionally *or unintentionally*, at prospective jurors."  Pls. Br. 6, PageID.88568 (emphasis added).  "Direct" means "to aim something in a particular direction," *Direct*, Cambridge Dictionary, https://bit.ly/3t9Rvdk, and "to point out, prescribe, or determine a course or procedure," *Direct*, Merriam-Webster Dictionary, https://bit.ly/48eerXT.  "Direct," in this context, would mean that VNA had aimed its speech at the jury pool.  But how could that be accomplished "unintentionally"?  Would the gag order include speech that, despite VNA's best efforts, nevertheless reached the jury pool, perhaps because prospective jurors were traveling outside the six-county area when they saw VNA's speech?  What if VNA chose to promote posts on its Twitter account?  Twitter does not allow users to limit the zip codes where promoted posts appear, but it also does not allow users to "aim" their posts at a geographic area.  Would the Twitter promotion violate the gag order?

Second, Class Plaintiffs ask for the gag order to prohibit "social and digital media advertising."  Pls. Br. 6, PageID.88568.  But what do they mean by that?  Is it limited to paid ads, like Google ads?  Are free posts also deemed "advertising" under this rubric?  And does "social . . . advertising" reach other, non-digital media such as newspaper ads, billboards, and posters on bus stops?

Third, Class Plaintiffs ask for the gag order to forbid speech "as to the case's merits" or "regarding the case's merits."  Pls. Br. 6-7, PageID.88568-88569.  But would that include discussion about the EPA's recent rulemaking on replacing lead pipes?  Would that include discussion about the complex legal questions that resulted in the dismissal of all charges against the State and City officials for their conduct relating to the water crisis?  Would it include discussion about scientific questions that are within VNA's area of expertise, like how water-treatment facilities identify and treat highly corrosive water?  Would it include critiques about the historic use of lead in the United States, including leaded gasoline and lead paint?  Would simply stating a scientific fact, such as the fact that we are all exposed to a background level of lead, be forbidden?

The true scope of Class Plaintiffs' requested gag order is simply unclear.  If the proposed gag order were adopted, constitutionally protected speech that the order does not reach would be chilled, because VNA cannot determine the order's metes and bounds.  The gag order should be denied as unconstitutionally vague.

## CONCLUSION

The Court should deny Class Plaintiffs' request for a gag order.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: /s/ *James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: /s/ *Michael A. Olsen*
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  December 14, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   */s/ James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com