# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases.

_____/

Judith E. Levy
United States District Judge

This Order Relates To:

ALL CASES

_____/

**ORDER GRANTING IN PART AND DENYING IN PART VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR RECONSIDERATION OF THE COURT'S AUGUST 2, 2023 ORDER [2565]**

Before the Court is Veolia North America, LLC, Veolia North America, Inc., and Veolia North America Operating Services, LLC's ("VNA") Motion for Reconsideration of the Court's August 2, 2023 Order. (ECF No. 2565.) VNA asks the Court to reconsider the scope of its previous ruling regarding VNA's privilege assertions related to communications with public relations consultants after January 31, 2017. (ECF No. 2543, PageID.84103.) VNA asks the Court to hold that certain documents exchanged with Mercury Public Affairs, LLC ("Mercury") after 2019 are privileged. (ECF No. 2565, PageID.84697.)

VNA also asks the Court to reconsider its ruling regarding communications made to Rasky/Baerlein Strategic Communications, Inc. ("Rasky") on or after December 2019. (*Id.* at PageID.84699 n.2.) For the reasons set forth, VNA's motion is granted in part and denied in part.

## I. Legal Standard

Motions for reconsideration are disfavored. E.D. Mich. LR 7.1(h)(2). The Court can reconsider a non-final order when "[n]ew facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision." E.D. Mich. LR 7.1(h)(2)(c).

## II. Analysis

VNA argues that certain communications with Mercury that the Court previously found were not privileged, are indeed privileged. The new fact offered in support of this claim is the existence of a signed copy of a contract between VNA's counsel's law firm and Mercury dated in December 2019.

In a diversity case, the Court applies state law regarding assertions of attorney-client privilege. *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006). The Michigan Court of Appeals has set forth the scope of attorney client privilege in Michigan as follows:

> The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. *Grubbs v. K Mart Corp.*, 161 Mich. App. 584, 589, 411 N.W.2d 477 (1987). The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice. *Yates v. Keane*, 184 Mich. App. 80, 83, 457 N.W.2d 693 (1990). Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication. *Hubka v. Pennfield Twp.*, 197 Mich. App. 117, 121, 494 N.W.2d 800 (1992), *rev'd on other grounds* 443 Mich. 864, 504 N.W.2d 183 (1993).

*Reed Dairy Farm v. Consumers Power Co.*, 227 Mich. App. 614, 618–19 (1998). Michigan state courts often look to federal court opinions when considering issues related to privilege. *Estate of Nash v. City of Grand Haven*, 321 Mich. App. 587, 594 (2017). Michigan courts, for instance, follow the rule set forth by the United States Supreme Court, which is that the attorney-client privilege is "limited to *communications* between [the] employee and counsel, not facts. Thus, clients and their agents must disclose on request any relevant fact within their knowledge even if it incorporated a statement of that fact into a communication to an attorney." *Reed Dairy Farm*, 227 Mich. App. at 619–20 (emphasis in

3

original) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 393–94 (1981)). In addition, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

Generally, "sharing attorney-client privileged communications with a public relations firm is a waiver of the privilege." *Waters v. Drake*, Case No. 2:14-cv-1704, 2015 WL 8281858, at *2 (S.D. Ohio Dec. 8. 2015). When a "public relations firms [is] not [] part of [an] effort to provide legal advice [. . .], but [is] part of an effort to craft announcements which would be more palatable to the media or the public," sharing otherwise privileged documents with that firm constitutes a waiver of attorney-client privilege. *Id.* When determining whether such a consultant is part of an effort to provide legal advice, courts often consider the scope of work being performed, including the purpose for which a consultant is hired, the timing of their work, and to whom their work is distributed, among other things. *In re Dominion Dental Services USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 193–94 (E.D. Va. 2019) (collecting cases).

Here, VNA supplemented the record by supplying the Court with a signed contract with Mercury to demonstrate that "Mercury was hired

4

directly by VNA's attorneys for purposes of defending this litigation and developing legal strategy as opposed to addressing general media strategy." (ECF No. 2565, PageID.84700.) In a letter, signed by both VNA's counsel and Mercury, VNA's counsel requests Mercury's assistance in "providing legal services to [VNA] with respect to developing themes related to the defense of the Matter." (ECF No. 2565-1, PageID.84705.) Elsewhere, VNA's counsel notes that it is retaining Mercury to advise counsel "with respect to [counsel's] provision of legal advice regarding public relations and strategic issues related to responding to questions from" press outlets. (*Id.* at PageID.84707.) The scope of Mercury's work was also potentially to include "additional assistance on additional projects in support of providing legal advice." (*Id.*) In light of this contractual language, VNA asserts that post-2019 communications with Mercury occurred "under a materially different contract than earlier documents, [so] the Court's previous rulings do not necessarily apply to the post-2019 documents." (ECF No. 2565, PageID.84702.)

Mercury was hired, at least in part, to provide services that were integral to this litigation. The content of the signed documents provided

5

by VNA support that finding. (*See* ECF No. 2565-1.) Moreover, the fact that this contract, which refers to work on legal strategy, was signed during the litigation supports a finding of privilege. *In re Dominion Dental Services USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d at 193. Mercury's role also involved media strategy and public relations, however. (ECF No. 2565-1, PageID.84707.)

Attorney-client privilege applies to VNA's counsel's communication with Mercury after 2019 made for the purpose of assisting with the litigation, specifically when that work was within the scope of developing themes for VNA's defense. This determination does not constitute a blanket holding that all post-2019 communications involving Mercury are privileged, however. Mercury's communications with VNA's counsel made for the purpose of public relations or media strategy are not privileged. Accordingly, the Court grants VNA's motion to amend its previous ruling and holds that post-2019 communications with Mercury are privileged insofar as they are made for the purpose of developing litigation strategy, while post-2019 communications with Mercury are not privileged insofar as they are primarily for the purpose of public relations or media strategy.

6

VNA also argues for the Court to reconsider its ruling with respect to Rasky. (ECF No. 2565, PageID.84699 n.2.) They argue that the Court should consider unsigned contracts related to Rasky, because—despite being unsigned—they contain similar provisions to the Mercury contracts from 2019. The Court has already found that "to the extent the documents are unsigned, they are not contracts that should be considered in this dispute." (ECF No. 2543, PageID.84103.) VNA has a high burden, given that "[m]otions for reconsideration of non-final orders are disfavored" under the Local Rules. E.D. Mich. LR 7.1(h)(2).

VNA does not provide a reason to reconsider the Court's ruling. Providing the Court with a contract signed by a consultant other than Rasky does not support a motion for reconsideration with respect to Rasky. Further, VNA has not pointed to any mistake by the Court, any change in law, or any fact that warrants a different outcome with respect to the need to provide signed contracts. Accordingly, VNA's motion for reconsideration with respect to the communications with Rasky is denied.

7

## III. Conclusion

Accordingly, VNA's motion for reconsideration is granted in part and denied in part. The Court amends its August 2, 2023 Order (ECF No. 2543) as set forth above.

IT IS SO ORDERED.

Dated: December 18, 2023　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 18, 2023.

　　　　　　　　　　　　　　　s/William Barkholz
　　　　　　　　　　　　　　　WILLIAM BARKHOLZ
　　　　　　　　　　　　　　　Case Manager