# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* FLINT WATER CASES.

Case No. 5:16-cv-10444
(Consolidated)

Hon. Judith E. Levy

_____/

## PLAINTIFFS' REPLY TO VEOLIA'S RESPONSE REGARDING OBJECTIONS TO CONFIDENTIAL DESIGNATIONS (ECF NO. 2688)

Plaintiffs reply to Veolia North America, LLC's, Veolia North America, Inc.'s, and Veolia Water North America Operating Services, LLC's ("Veolia") response regarding objections to confidential designations as follows:

## **INTRODUCTION**

Veolia has marked the bulk of the documents they produced with a "confidential" stamp, resulting in almost all of Veolia's documents falling under the protections of the Court's Confidentiality Order [ECF No. 1255-3] ("Order"). But Plaintiffs' review of Veolia's productions has revealed that few, if any, of the documents designated as confidential appear to meet the Order's criteria for such a designation. As with its previous responses, Veolia attempts to divert attention from this fact and its burden to now establish the propriety of its designations.

Veolia begins by outlining a number of "factors" it feels the Court should take into consideration when balancing the "public and private interests" at issue in this case, but Veolia's analysis with respect to each "factor" is misguided.

**_Non-confidential documents are not entitled to protection._** Veolia first cites *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for the proposition that "no public right of access attaches to private discovery materials." However, Veolia's reliance on *Seattle Times Co.* is misleading, as the case does not stand for the proposition that discovery documents cannot be publicly disclosed as Veolia suggests.

Rather, in *Seattle Times Co.*, the defendant newspaper sought information from plaintiff during the course of discovery, including financial documents pertaining to the identity of donors and the amounts donated to his group. *Id.* at 24. The plaintiff resisted disclosure of this information and sought a protective order. *Id.* at 25. The paper opposed the protective order on First Amendment grounds because it intended to "continue publishing articles about [the plaintiff]." *Id.* The trial court prohibited publication or dissemination of the discovered material upon a showing of "good cause" under Rule 26(c), and the Seattle Times appealed. *Id.* at 27. The Supreme Court determined that a protective order "***entered on a showing of good cause*** as required by Rule 26(c)," that would prohibit the dissemination of information that would cause annoyance, embarrassment, and oppression, that "is

limited to the context of pretrial civil discovery, and [that] does not restrict the dissemination of the information if gained from other sources, does not offend the First Amendment." *Id.* at 32–33 (emphasis added).

Notably, the Supreme Court's analysis did not include an analysis of how non-confidential discovery documents could be utilized. It is true that secrecy is more stringently examined once documents are filed with the court, *Shane Grp. Inc. v. Blue Cross Blue Shield of Mich.,* 825 F.3d 299, 305 (6th Cir. 2016) (quotations omitted), but, even at the discovery stage, "good cause" must be found by the court to justify preventing the disclosure of discovery. *See, e.g., H.D. Media Co., LLC v. U.S. DOJ*, 927 F.3d 919, 929–30 (6th Cir. 2019).

***The Court has not determined that the challenged documents are entitled to protection under the Court's Order.*** Veolia next mistakenly attempts to equate this situation to that in which a court has found good cause for protecting challenged documents, stating that "the Court found, in accordance with Rule 26(c), good cause for the entry of the Confidentiality Order."

While it is true the Court deemed it appropriate to enter a Confidentiality Order in accordance with Rule 26(c), the Order does ***not*** protect those documents which are not originally designated as confidential or those documents, such as the

ones at issue here, designated as confidential but are later challenged.[1] And contrary to Veolia's assertion, it is well established that, "[a]bsent a protective order, a plaintiff or defendant has the right to disseminate information obtained during discovery so long as the purpose for sharing such information is lawful." *E.g., Exum v. U.S. Olympic Comm.*, 209 F.R.D. 201, 205 (D. Colo. 2002) ("Parties to litigation have a First Amendment right to disseminate information they obtained in discovery absent a valid protective order." (citing *Seattle Times Co.*, 467 U.S. at 20)); *Federal Trade Comm'n v. Digital Interactive Assocs., Inc.*, No. 95-Z-754, 1996 WL 912156, at *2 (D. Colo. Nov. 18, 1996) (emphasizing that in ruling on motion for a protective order, court "begins with the premise that a party to litigation has a Constitutionally

---

[1] Under the Court's Order and longstanding Sixth Circuit precedent, ***once a document designated as "confidential" has been challenged,*** Veolia bears the burden of demonstrating that a confidentiality designation is appropriate and is made with good cause. *See FDIC v. Cuttle*, No. 11-cv-13443, 2013 U.S. Dist. LEXIS 53367, at *11 (E.D. Mich. Mar. 8, 2013) ("[T]he designating party carries the burden of establishing the confidential status of the material."); *White v. GC Servs. Ltd. P'ship*, No. 08-11532, 2009 U.S. Dist. LEXIS 4735, at *4 (E.D. Mich. Jan. 23, 2009) ("[I]f the Plaintiff files an objection to Defendants' designation of confidential [] material, the Defendants still have the ultimate burden of demonstrating 'good cause' under Rule 26(v).").

As Veolia has recognized, a finding of confidentiality under the Court's Order is two-fold. First, Veolia must show that a document "contains private, non-public, confidential, competitively sensitive, or proprietary information that is not readily ascertainable through lawful means by the public." Second, they must show that "if disclosed publicly [a document] would likely cause oppression, competitive disadvantage, infringement of privacy rights established by statute or regulation, or infringement of confidentiality requirements established by statute or regulation with respect to government purchasing or other operations." Order at ¶ 5.

4

protected right to disclose the fruits of discovery to non-parties absent a valid protective order entered by a court"); *Okla. Hosp. Ass'n v. Okla. Publ'g. Co.*, 748 F.2d 1421, 1424 (10th Cir. 1984) (noting the right to disseminate discovery information absent a protective order); *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 683–84 (5th Cir. 1985) ("A party may generally do what it wants with material obtained through the discovery process, as long as it wants to do something legal.").

***The challenged documents are relevant.*** Veolia also argues that "[n]early all of the challenged documents" are "not relevant to Plaintiffs' claims." But these documents ***are*** relevant: the subject documents highlight the significant investment Veolia made in crafting a public narrative (which Plaintiffs contend is contrary to the facts of the case made the basis of their claims) that now constitutes the very crux of Veolia's defense, and the public surely have a real interest in them.

***Veolia cannot use any proclaimed burden to evade its responsibility.*** Last, Veolia argues that Plaintiffs' confidentiality challenges have placed, and continue to impose, a substantial burden on them. However, Veolia "initially classified almost every document as confidential, thereby belying any claimed reliance" on the argument that a "broad protective order covering confidential and non-confidential discovery documents … obviates expense and speeds up the litigation." *United*

*States v. Parke-Davis*, 210 F.R.D. 257, 260–61 (D. Mass. 2002).[2] If anything—Defendants' overly broad and apparently inadvertent designation of hundreds of documents as confidential has placed on ***Plaintiffs*** the unduly burdensome task of scrutinizing Defendants' productions to determine whether Veolia complied with the Court's Order.

Veolia's attempt to again muddle the issues before the Court fails to hide its failure to acknowledge, much less carry its burden of explaining ***why*** the challenged documents are entitled to confidential treatment under the Court's Order or Rule 26 of the Federal Rules of Civil Procedure. Veolia's request for blanket protection of all confidential ***and*** non-confidential discovery materials in this litigation would rob the public of a crucial function of the judicial process: bringing to light issues of vital public interest that could otherwise be hidden from view.[3] Given Veolia's own stated desire to bring its (manufactured) defense to the public, and its failure to meet the "good cause" standard, Plaintiffs request this Court remove the confidentiality designations from the challenged documents at issue.

---

[2] What's more, Veolia itself concedes that many of its original confidentiality designations cannot stand and have willingly de-designated hundreds of them.

[3] Of course, this is even more important here, where Veolia has admittedly flooded the public domain with misinformation regarding its role in perpetuating the Flint Water Crisis.

## **ARGUMENT**

Now challenged, Veolia must "make a particularized showing that the information sought to be protected [in each of the challenged documents] is entitled to protection." *MSC.Software Corp. v. Altair Eng'g, Inc.,* No. 07-12807, 2012 U.S. Dist. LEXIS 69107, at *13 (E.D. Mich. May 17, 2012); *see also Graff v. Haverhill N. Coke Co.,* No. 1:09-cv-670, 2014 U.S. Dist. LEXIS 13180, at *12 (S.D. Ohio Feb. 3, 2014) (requiring "specific facts showing the steps taken to maintain the confidentiality of such information and the clearly defined and serious injury they would suffer if such information is disclosed"). The Court's Confidentiality Order provides that "documents, other materials, and information that are produced in response to discovery requests … shall be used solely for the prosecution or defense of the federal Flint Water Cases" only where the designating party has demonstrated that the document "contains private, non-public, confidential, competitively sensitive, or proprietary information that is not readily ascertainable through lawful means by the public," Order ¶ 5, and where the proponent can "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citations omitted). Veolia fails to make such a showing.

I.   **The challenged documents contain no confidential or competitively sensitive information that would cause Veolia harm if disclosed.**

Veolia's perfunctory opposition to Plaintiffs' challenges offers no meaningful discussion of the purportedly confidential content within each of the challenged documents or the resultant harm that would occur if the allegedly confidential information was disclosed. Good cause may be shown by affidavits detailing efforts to maintain confidentially, or a substantive discussion of each document. *See Charvat v. EchoStar Satellite, LLC*, 269 F.R.D. 654, 656 (S.D. Ohio 2010). Here, Veolia offers neither and instead makes a number of vague assertions with respect to the contents of the challenged documents, without a detailed explanation of the specific confidential information contained within each document (or why that content is confidential), or the harm disclosure of such allegedly confidential information would cause.

### A. Plaintiffs' Twelfth Confidentiality Challenge

In response to Plaintiffs' Twelfth Confidentiality challenge, outlined in their September 29, 2023 letter, Veolia submits that forty-two (42) of the fifty (50) challenged documents should maintain their confidentiality designations.

### 1. Documents relating to the City of Detroit.

Veolia first alleges that thirty-one (31) of the challenge documents relate to the City of Detroit, including a draft O&M agreement with the DWSD and three (3) documents that are draft appendices to the agreement; a draft Services Agreement

with the DWSD; two (2) documents which are summaries of a peer review of the DWSD's management, operations and maintenance activities; seventeen (17) documents which are sections to the peer review report; two (2) versions of a O&M term sheet; a draft key messages outline for DWSD; two (2) documents which are different versions of a DWSD risk memo; one (1) document which represents communications between Veolia and its outside counsel regarding analysis for a meeting with Detroit's mayor; and one (1) document which contains in-house counsel's communications regarding a potential disclaimer in the agreement. While maintaining that these documents should still be kept confidential, Veolia fails to enumerate what confidential information is contained in each of the challenged documents that, if disclosed, would cause Veolia harm, as is required to establish good cause.

*Peer review reports regarding DWSD.* With respect to the peer review reports, Veolia alleges they "contain commercially sensitive information about DWSD," including "[Veolia's] analysis of DWSD's operations and maintenance activities," which "[Veolia's] competitors would be able to use such information to better understand how [Veolia] analyzes such proposals," and "which, if revealed, could harm [Veolia's] relationship with its customers."

These documents are almost identical to the previous peer review reports Veolia has stated should remain confidential. The fact that these draft reports were

shared outside of the DWSD with no apparent attempts to maintain their secrecy cuts against a finding of confidentiality. *See Vignes-Starr v. Lowe's Home Centers, LLC*, 544 F. Supp. 3d 774, 776 (W.D. Ky. 2021) (outlining factors a court should consider in determining confidentiality, including the extent to which the information is known outside of the business, the extent to which it is known by employees and others involved in the business, and the extent of measures taken to guard the secrecy of the information).

*DWSD Risk Memo.* Veolia also claims that the DWSD risk memos contain commercially sensitive financial information, including "historical and projected revenue, the deal structure, DWSD assets, savings analysis, and [Veolia's] own analysis of the potential risks, including risks associated with capital expenditures and operating costs." But the risk memos were created on December 14, 2015, and Veolia fails to explain how revenue data from 2015 could be used eight years later to allow competitors to bid against Veolia more effectively—because it cannot. The risk memos do not contain information that could possibly harm Veolia today and should not remain confidential.

*Internal Veolia email.* Veolia also states that one document "is an internal [Veolia] email from in-house counsel regarding proposed disclaimer language for the Detroit proposal" that was designated "as confidential because it relates to client negotiations that [Veolia's] competitors could find useful." Despite Veolia's

contentions otherwise, this email thread from 2014 contains no confidential information. A statement that a contract should include a legal disclaimer is hardly a novel concept, and nothing within the communication amounts to information that Veolia's competitors could actually use to its advantage.

### 2. The ten other documents should be de-designated.

The remaining ten documents Veolia argues should remain confidential are also not entitled to any protection.

***Go/No Go Evaluation.*** First, Veolia states that several documents "relate to Go/No Go evaluations for projects in Detroit and Washington," which "contain non-public information relating to how [Veolia] evaluates projects, the disclosure of which would allow [Veolia's] competitors to bid more effectively against it." Again, Veolia fails to identify ***which*** information within these documents could be used by its competitors to its disadvantage or to "bid more effectively against it," such that these contentions fall flat. This is especially true given that this document was created nearly a decade ago. It is well established that "[t]he risk of competitive harm is assumed to be 'lower in disclosing historical business records over more recent ones," *Ewalt*, 2022 U.S. Dist. LEXIS 66208, at *10–11 (quoting *United States ex rel. Scott*, 2021 U.S. Dist. LEXIS 185417, at *4 (determining that "the particulars of years-ago negotiations are unlikely to amount to a trade secret")), and this especially true for a document such as this one that is almost ten years old.

***NDA between Veolia and an investment management company.*** Veolia asserts that VWNAOS527919-VWNAOS527919.0001 is confidential because "[d]isclosing the parties with which [Veolia] shares confidential information and the steps it takes to prevent dissemination of such information related to a potential business opportunity—unrelated to Flint—would harm [Veolia's] contractual, commercial and legal interests." Notwithstanding Veolia's contention, it is common business practice to require an NDA when two companies enter into discussions about doing business together. Nothing about this document is novel or unique to Veolia, and Veolia's practice of requiring its potential business partners to enter an NDA, if made public, would not harm Veolia.

***Draft Master Supply Agreement and Rebate Agreement.*** Veolia maintains that three agreements with a Veolia's supplier (VWNAOS527919 – VWNAOS527919.0001, VWNAOS528546 – VWNAOS528546.0002, VWNAOS528547 – VWNAOS528547.0040 – VEOLIA_0956959) "include commercially sensitive contract details, including pricing discounts and other incentive rebates, that competitors could use to [Veolia's] detriment." As with a multitude of other documents Veolia argues should remain confidential, these documents are over a decade old. While at one time these agreements could have been deemed to contain confidential information, the information contained therein

no longer impact Veolia's current affairs or decision-making processes, and Veolia's need for confidentiality has been wholly eliminated.

*Documents concerning Veolia and its public relations firms.* Veolia claims that two documents relate to Veolia and its public relations firms. One, VWNAOS527000-VWNAOS527000.0001, allegedly "contains recommendations for how best to respond to press coverage on [Veolia's] work in Pittsburg, which could provide fodder to [Veolia's] competitors." While another, VWNAOS527022-VWNAOS527022.0004, is apparently "an internal memorandum addressing [Veolia's] PR strategy across the United States, describing specific actions taken in several cities." Notably, Veolia fails to outline ***what*** makes the information it identifies sensitive such that a designation of confidentiality is necessary. Further, as Plaintiffs have explained, given that the Flint Water Crisis is a matter of public health and safety, and that the public has a clear interest in understanding the causes, scope, and perpetrators of the disaster, this document should not be withheld from the public. *See, e.g., H.D. Media Co., LLC*, 927 F.3d at 924 (6th Cir. 2019) (analyzing whether the Washington Post, and by extension the public at large, should have access to data produced during discovery for the purposes of public reporting).

*Monthly Status Reports.* Veolia alleges that removing the confidentiality designations from the monthly status reports Plaintiffs challenge "would result in the disclosure of confidential consultant information, including the assistance the

consultants are giving to [Veolia], which could impact [Veolia's] relationships with its current and future consultants." While maintaining that these documents should still be kept confidential, Veolia fails to enumerate which advice it feels, if disclosed, would cause harm its relationship with its consultants or how advice it received from consultants in 2015 could weigh on its present relationships with its consultants. As such, Veolia has failed to make a showing of good cause.

*Internal Communication Concerning an Audit.* Veolia states that another communication concerning Veolia's audit "reveals the audit's point of focus, and disclosure would affect [Veolia's] relationship with these consultants." But, after a thorough review, nothing within the email communications (VWNAOS550029-VWNAOS550029.0002) appears to be sensitive, and Veolia fails to describe why general, non-specific communications relating to an audit should be found confidential.

### 3.  The law firm invoice is not "Highly Confidential."

Veolia states that VWNAOS550142-VWNAOS550142.0003 is "an invoice from a law firm related to general counsel services for a proposed response to a request for proposal from the Oklahoma City Water Utilities Trust," and that "it is crucial to [Veolia's] business interests and relationships with outside counsel that such information remain confidential." However, the billing statement only provides a general  description of the nature of the services performed and does not reveal

confidential communications or legal work performed with any specificity. Accordingly, it is unclear why the document should maintain its "Confidential" designation—much less be designated as "Highly Confidential."

## B. Thirteenth Confidentiality Challenge

In response to Plaintiffs' Thirteenth Confidentiality Challenge, originally sent to Veolia on October 4, 2023, Veolia submits that forty-one (41) of the fifty (50) challenged documents should maintain their confidentiality designations.

### 1. Documents relating to the City of Detroit.

Of the forty-one (41) outstanding documents, Veolia argues that twenty-eight (28) relate to Detroit, including three (3) documents which are different versions of the Services Agreement and related agreements for DWSD; a draft O&M term sheet for DWSD; an appendix to the O&M agreement for DWSD; sixteen (16) documents which include summaries of a peer review of DWSD's management, operations and maintenance activities and various sections to the peer review report; a DWSD risk memo; an internal Veolia email exchange/analysis of the memo; and an internal Veolia email exchange "regarding a potential DWSD agreement in 2016 and analysis for the contract terms." However, as Plaintiffs explained above, these documents do not contain confidential information that would harm Veolia if disclosed and, as such, should be de-designated.

### 2. The eleven (11) other confidential designations should be removed.

Veolia incorrectly maintains that eleven (11) other documents should remain confidential.

***Consulting Agreement.*** Veolia states that one document is a consulting services agreement, which "it closely guards[,]" and which "identifies [Veolia's] consultant name, the list of projects by city, the beginning date of such projects and their duration." Veolia claims that, if disclosed, this document would "reveal [Veolia's] strategic plans and priorities for expanding or maintaining its presence in certain geographic areas, which could be exploited by its competitors." However, this document was created in 2014 and has little relevance to Veolia's strategic plans nearly a decade later. Indeed, merely because Veolia "may deem certain business information as sensitive does not, in itself, justify a withholding from the public record," *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2014 U.S. Dist. LEXIS 13180, at *6 (S.D. Ohio Feb. 3, 2014),

***Mutual Non-Disclosure Agreement.*** Another document, Veolia continues, is "an executed mutual non-disclosure agreement between [Veolia] and an investment banking and consulting company to develop new business." But as explained above, this document constitutes a routine non-disclosure agreement that contains no unique or proprietary information.

***Retention Agreement with Clark Hill.*** Another document is a "retention agreement with Clark Hill for services related to Detroit." Notably, Veolia again fails to address the harm disclosure of the amount its consultants receive would cause, which is required for a showing of good cause. On the other hand, Detroit's relationship with Clark Hill highlights that the version of the "facts" Veolia fed to the public, which now constitute the very crux of their defense to Plaintiffs' claims, are contrary to their past actions and relationships.

***Monthly Status Reports.*** Veolia argues that several documents, which are "monthly status reports regarding work performed by various consultants for different projects involving Veolia," should remain confidential because disclosing them "could impact [Veolia's] relationships with its current and future consultants." While maintaining that these documents should still be kept confidential, Veolia fails to enumerate what confidential information within each of the challenged documents, if disclosed, would harm Veolia, as is required to establish good cause.

***Veolia's Draft Internal 2017 Budget.*** Veolia states that VWNAOS333484-VWNAOS333484.0005 is a draft internal budget, which "contains sensitive information that could reveal [Veolia's] strategies, priorities, expectations or bargaining positions, which could harm its competitive advantage or relationships with vendors." Veolia's general statement that this document contains sensitive information without more, such as an explanation specifically identifying the

17

information contained within Veolia's 2017 budget competitors could use to outperform Veolia or undercut its business, lacks merit.

### 3.  The law firm invoice is not "Highly Confidential."

Finally, Plaintiffs challenged Veolia's designation of VWNAOS550141-VWNAOS550141.0003, which Veolia claims is "an invoice from a law firm related to general counsel services for a proposed response to a request for proposal for the Oklahoma City Water Utilities Trust." Veolia claims the invoice "reveals the legal services provided in relation to this proposal," but a closer examination of the invoice makes clear that no legal advice is discernable from the vague descriptions included. Merely because this invoice generally relates to legal services does not make the document "Confidential," let alone "Highly Confidential."

### C. Plaintiffs' Fourteenth Confidentiality Challenge

In response to Plaintiffs' Fourteenth Challenge to Veolia's confidentiality designations, sent on October 20, 2023, Veolia agrees to de-designate fourteen (14) of the fifty (50) challenged documents, but maintains that the other thirty-six (36) documents should remain confidential. However, these documents should likewise be de-designated.

### 1.  Documents relating to the City of Detroit.

Veolia claims that twenty-six (26) of the documents relate to Detroit, including a draft Operating Agreement for DWSD; "a draft amendment to the

Services Agreement for DWSD;" "a contract amendment for Detroit;" "a non-disclosure agreement for Detroit;" "a summary of a peer review of DWSD's management, operations and maintenance activities and various appendices to the peer review report;" "a draft of the DWSD risk memo;" and "a draft O&M term sheet for DWSD." Further, Veolia argues that two (2) other documents "relate to internal [Veolia] communications regarding insurance and bonding requirements[,] and risk assessment for a contract with DWSD." However, these documents fair no better that those documents relating to the City of Detroit Plaintiffs challenged in their Twelfth and Thirteenth Confidentiality challenges, discussed *infra*.

### 2. The other ten (10) documents were improperly designated as confidential.

Similarly, Veolia fails to establish good cause for the remaining ten documents it claims should be marked as confidential.

***Insurance Bid.*** One document, VWNAOS550078-VWNAOS550078.0003, which Veolia claims "relates to insurance bid requirements for the Washington Suburban Sanitary Commission and includes detailed tracked changes on the contents of the bid," is not confidential. Even assuming Veolia included an adequate explanation as to why the insurance terms are confidential (it has not), the date of the document renders any arguments of harm disclosure could cause moot.

***Monthly Status Reports.*** Two of the other challenged documents Veolia claims relate to a "monthly status report regarding work performed by [Veolia's]

consultants," disclosure of which "could impact [Veolia's] relationships with its current and future consultants." As with the other monthly status reports discussed herein, that the documents contain information with respect to work performed by Veolia's consultants does not inherently make the documents commercially sensitive or confidential. As such, Veolia has failed to make the required showing of good cause for its confidentiality designations.

*Public Relations Firms.* Veolia states that five of the challenged documents relate to its public relations firms and should remain confidential. One document, VWNAOS527034-VWNAOS527034.0009, is a memo that Veolia claims includes "recommendations to strategically position the company to drive growth and earnings," and which "contains proposed budgets for each of the projects." Another three documents allegedly relate to internal Veolia communications regarding "proposed revisions to a confidentiality agreement with a public relations firm, special permits needed for a recycling project in Henderson, Colorado and information needed for a trademark request." Yet another document is a communication between Veolia and its public relations firm "regarding media strategy for responding to a Mother Jones article about [Veolia's] work in Pittsburgh."

While Veolia provides a laundry list of information allegedly contained in the challenged documents, it is not clear *why* any of this information may be properly

considered confidential. For instance, Veolia's vague statement that the documents contain information "needed for a trademark request" does not explain what the needed information is or what makes the information sensitive. Nor is it clear *where* the information allegedly described within these documents is actually located. Veolia's arguments of confidentiality are long on conclusions, but short on specifics, and should be rejected.

***Draft Internal Budget.*** Finally, Veolia claims that one document "is a detailed spreadsheet of [Veolia's] budget" relating to Veolia's draft 2017 internal budget. Veolia states that this information is sensitive and "could reveal [Veolia's] strategies, priorities, expectations or bargaining positions, which could harm its competitive advantage or relationships with vendors, if disclosed." However, as Plaintiffs have repeatedly made clear, a budget from 2017 has little to no present competitive value and, as such, should not be treated as confidential.

### D. Fifteenth Confidentiality Challenge

In response to Plaintiffs' Fifteenth Challenge to Veolia's confidentiality designations, whereby Plaintiffs challenge fifty (50) documents, Veolia has agreed to remove the designations from twelve (12) of its documents, and to de-designate ten (10) of the challenged documents from "Highly Confidential" to "Confidential." Accordingly, thirty-eight (38) documents remain at issue (inclusive of those Veolia

has agreed to re-designate, but which Plaintiffs contend should be wholly de-designated).

### 1. Twenty-nine (29) documents relating to the City of Detroit.

Of the thirty-eight (38) documents at issue, twenty-nine (29) relate to Detroit, including "a Services Agreement with DWSD;" "a draft O&M agreement term sheet for DWSD;" "an internal transaction outline for DWSD;" "an O&M agreement for DWSD;" "a proposed contract amendment for Detroit and letter proposal for the amendment;" "a draft non-disclosure agreement for Detroit;" "a DWSD risk memo draft;" "a summary of a peer review of DWSD's management, operations and maintenance activities and various appendices to the peer review report;" "documents and communications concerning a due diligence engagement for DWSD;" "a lease charge analysis for DWSD;" "internal [Veolia] communications related to proposed revisions to a Professional Services Contract with DWSD;" "internal communications regarding acceptance of [Veolia's] proposal for DWSD;" and internal communications concerning a draft appendix for the DWSD O&M and the draft of the appendix containing redline changes."

Veolia broadly claims that these documents contain confidential information, including because they "reveal details concerning a client's internal operations (including information on its assets, expenditures, and operating costs), [Veolia's] strategy for the work that done for the client (including risk assessments), and

[because] they reveal [Veolia's] internal strategy concerning its relationship with that client (including [Veolia's] approach to its bidding process and how much it charges)." However, these documents were created many years ago and, as with the other documents relating to the City of Detroit, Veolia has failed make the required showing of "good cause."

### 2.     The nine other documents should be de-designated.

The Court should remove the confidential designations from the remaining five documents.

***Veolia internal communications.*** Veolia claims that one document, VWNAOS554796-VWNAOS554796.0004, "includes notes of a phone interview with the candidate, including her name of the candidate and her desired salary, and salary requirements for the position." However, Veolia fails to adequately outline the harm disclosure would cause.

***Supply agreement.*** Veolia alleges that another document "relates to a draft master supply agreement with [Veolia's] suppliers" that "includes commercially sensitive contract details such as the amount [Veolia] would pay for different items from the supplier and the terms of [Veolia's] agreement with that supplier. Competitors would be able to use this information to undercut [Veolia's] relationship with that supplier and the supplier's competitors." But given the date of the agreement, it is not clear what present competitive value the document could hold.

***Consulting agreement.*** Veolia states that another document relates to a consulting agreement with Winston/Terrel Group, Inc., and that the document "sets forth the terms of the consulting relationship, which include details concerning compensation, the scope of the relationship, and the services the consultant would provide." However, as Plaintiffs have made clear, that a document generally relates to a consulting arrangement is not sufficient—without a detailed analysis of the document's confidential contents—to support a finding of good cause.

***Internal Veolia communications.*** Veolia states that one document is an internal Veolia communication related to proposed revisions to a services agreement, which "reflects [Veolia's] strategy for negotiating the services agreement with Flint, which could be used by [Veolia's] competitors, thus causing competitive harm to [Veolia]." However, this document is extremely relevant to the litigation at hand and, given the public's interest in knowing the truth about the Flint Water Crisis, should not be withheld from them.

***Memo from Veolia's public relations firm.*** With respect to one document, VWNAOS526987-VWNAOS526987.0009, Veolia reiterates its argument that the document contains commercially sensitive information Veolia's competitors could find useful, including the recommended amount to spend on different initiatives, and recommendations to "strategically position the company to drive growth and earnings." But as with its other public relations documents, these documents do not

contain commercially sensitive information entitled to protection as far as Plaintiffs can tell, and it is Veolia's burden—not Plaintiffs—to establish the propriety of its confidentiality designations.

**Document related to Veolia's efforts to obtain a trademark.** Veolia claims a document, which includes information about Veolia's efforts to obtain a trademark, would benefit competitors because it would help them "understand how [Veolia] approaches its trademarking strategy." But Veolia fails to specific what information within the documents provides insight into Veolia's trademark strategy, which is required for a finding of confidentiality. *Shane Grp.*, 825 F.3d at 305–06 (providing that the proponent must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations"). Nor does Veolia cite any case law for its assertion that information that is tangentially related to the process by which a party obtains its trademarks is confidential.

### E. Plaintiffs' Sixteenth Confidentiality Challenge

Of the fifty (50) documents Plaintiffs challenged in their Sixteenth Confidentiality Challenge, Veolia has agreed to de-designate twenty (20) and to re-designate fifteen (15) originally designated as "Highly Confidential" to "Confidential," leaving thirty documents in dispute (inclusive of those Veolia has agreed to re-designate, but which Plaintiffs contend should be wholly de-designated).

.

### 1. Documents related to the City of Detroit.

Of the thirty documents in dispute, according to Veolia, most relate to the City of Detroit. These include "a due diligence engagement letter and fact sheet for Detroit, an O&M proposal for Detroit, a draft O&M agreement term sheet for, an internal transaction outline for DWSD, an O&M agreement for DWSD, a proposed contract amendment for Detroit and letter proposal for the amendment, a draft non-disclosure agreement for a third party working on the Detroit project, a summary of a peer review of DWSD's management, operations and maintenance activities and various appendices to the peer review report, an internal [Veolia] communication regarding proposed changes to the latest version of the DWSD risk memo and due diligence engagement, an internal [Veolia] communication regarding proposed redlined changes to the Services Agreement for DWSD, internal [Veolia] communications regarding [Veolia's] proposal for DWSD, and a proposed media response for the engagement." But Veolia's "broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test" for confidentiality. *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-cv-5540, 2010 U.S. Dist. LEXIS 102703, at *7 (E.D.N.Y. Sept. 28, 2010) (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y.2009) (collecting cases)). Veolia is required to and has failed to "make a *particularized showing* that the information sought to be

protected [in each of the challenged documents] is entitled to protection" by pointing to "specific facts, not mere conclusory allegations of confidentiality and/or business harm." *MSC.Software Corp.*, 2012 U.S. Dist. LEXIS 69107, at *13 (emphasis in original).

### 2. The remaining five documents should have their confidentiality designations removed.

Additionally, Veolia has failed to demonstrate that the remaining five (5) documents should remain confidential.

***Memo from Veolia's public relations firm.*** Veolia states that VWNAOS526996-VWNAOS526996.0009 includes commercially sensitive information that Veolia's competitors could find useful, "including recommendations to strategically position the company to drive growth and earnings," and "the recommended amount to be spent on different initiatives." This argument is nearly identical to the arguments Veolia made with respect to the other public relations documents discussed herein and should fail for the same reasons.

***Non-disclosure agreement.*** Another document is a non-disclosure agreement between Veolia and an investment banking and consulting company. Veolia states that "[p]ublicly disclosing this document would allow competitors to better understand how [Veolia] develops its business opportunities." As with the other non-disclosure agreements Veolia purports should remain confidential, this is a standard form business document that contains no confidential information.

***Draft contract between Veolia and the City of Flint.*** Veolia states that a draft contract between Veolia and the City of Flint "could give [Veolia's] competitors insight into how it bids for contracts" and therefore "gain an unfair advantage when bidding against [Veolia] for future projects." But Veolia fails to expound upon how a draft contract from years ago could be utilized to grant competitors a competitive edge.

***Document concerning Veolia's efforts to obtain a trademark.*** Veolia states that VWNAOS553652-VWNAOS553652.0003 would benefit its competitors if disclosed because this information would help them "understand how [Veolia] approaches its trademark strategy." Notably, Veolia again fails to specifically identify or describe the confidential information contained within the challenged document or explain how that information could be used to understand Veolia's approach to its trademark strategy, as is required to establish "good cause" for a confidentiality designation.

***Retention agreement with Clark Hill.*** Veolia again argues that a retention agreement with Clark Hill for services related to the City of Detroit should remain confidential because it "includes the proposed retainer amount and other confidential information, including how fees will be charged." But Veolia again fails to adequately address the harm disclosure of the amount its consultants receive would cause, which is required for a showing of good cause. On the other hand, Veolia's

relationship with Clark Hill highlights that the version of the "facts" Veolia fed to the public, which now constitute the very crux of their defense to Plaintiffs' claims, are contrary to their past actions and relationships. As such, this document should not be withheld from the public.

## II.   The public has a right to review the challenged documents.

Contrary to Veolia's assertion, the Court should balance the public's need to access the documents at issue against any potential harm disclosure might cause. *See, e.g., H.D. Media Co., LLC*, 927 F.3d at 924 (analyzing whether the Washington Post, and by extension the public at large, should have access to data produced during discovery for the purposes of public reporting). The Flint Water Crisis is a matter of public health and safety, and the public has a clear interest in understanding the causes, scope, and perpetrators of the disaster. Despite this, Veolia has used targeted advertising to present its version of the "facts" in an attempt to wipe its hands clean of liability. At a minimum, the public has a right to understand that the narrative Veolia presented as "fact" was created by a PR team for the sole purpose of avoiding civil (and criminal) liability and protecting Veolia's reputation. In situations such as this involving a massive public health crisis, "[p]ublicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman." *H.D. Media Co.,* 927 F.3d at 924 (quoting *Buckley v. Valeo*, 424 U.S. 1, 67 (1976)). The question

before the Court, then, is whether the public should make its assessment of culpability in the darkness that would be created by a protective order, or with a fulsome picture of the misleading information Veolia presented it with.

<h2 style="text-align:center">CONCLUSION</h2>

Plaintiffs respectfully request that the Court order Veolia to de-designate each of the confidentiality designations placed on the documents at issue, which were included in Plaintiffs' written challenge, dated November 25, 2023 [ECF No. 2688].

Dated: December 22, 2023

Respectfully submitted,

**LEVY KONIGSBERG LLP**

/s/Corey M. Stern
Corey M. Stern
Melanie Daly
Kiersten Holms
605 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6200
cstern@levylaw.com
mdaly@levylaw.com
kholms@levylaw.com

***Attorneys for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ COREY M. STERN
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6200
cstern@levylaw.com