# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases.                    Judith E. Levy
                                              United States District Judge

——————————————/

This Order Relates To:

*Carthan, et al. v. Snyder et al.*
    Case No. 16-10444

——————————————/

## OPINION AND ORDER REGARDING NON-PARTIES AT FAULT
## [2524, 2564]

Before the Court is Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC's (collectively, "VNA") Submission Regarding Non-Party at Fault designations in this case. (ECF No. 2524.) For the Issues Class, VNA filed notice that it believes 38 non-parties are at fault for the class members' claimed injuries, and possibly 39 non-parties if LAN[1] becomes a non-party before the trial commences. (*Id.* at PageID.83681.) Plaintiffs object

---

[1] Leo A. Daly Company, Lockwood, Andrews & Newman, Inc., Lockwood, Andrews & Newman, P.C. (collectively "LAN").

to including non-parties at fault in the Issues Class trial, arguing that VNA provides an improper basis for inclusion of the non-parties it claims are at fault in this case. (ECF No. 2564.) For the reasons set forth below, the Court denies the relief Plaintiffs seek.

## I.    Background

Plaintiffs allege professional negligence against VNA. (*See* ECF No. 2564, PageID.84676.) The Court certified an Issues Class in this case under Federal Rule of Civil Procedure 23(c)(4). (ECF No. 1957, PageID.68129–68130.) Under this rule, "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4). In this case, the Court certified a Class with respect to the following issues:

> **Issue 1**: Did either Defendant VNA or LAN breach their duty of care?
>
> **Issue 2**: If a Defendant, VNA or LAN, breached its duty of care owed to class members, did that breach contribute to causing or prolonging contaminated water in the Flint water distribution system?
>
> **Issue 3**: Were the contaminated water conditions capable of causing harm to Flint residents, properties, property and businesses?

**Issue 4**: Were the harmful water conditions in the Flint water distribution system a natural and probable result of either VNA or LAN's breach?

**Issue 5**: Did any non-party contribute to causing or prolonging the contaminated water conditions in the Flint water distribution system? If so, what percentage of fault do you attribute to each party and non-party?

(ECF No. 2250, PageID.73963 (emphasis in original).) Class members' damages are not included among the certified issues; they must be addressed in subsequent proceedings, depending on the outcome of the Issues Class trial. On November 29, 2022, VNA filed a timely notice that listed non-parties at fault against whom it would seek to have the jury find fault. (ECF No. 2281.) The Issues Class trial will begin on February 13, 2024.

On March 28, 2023, Plaintiffs filed a motion to strike and for judgment on the pleadings regarding VNA's notice of non-party fault.[2] (ECF No. 2411, PageID.77064.) After briefing from the parties, the Court held a hearing on May 31, 2023 (ECF No. 2478 (Notice of Hearing)) and

---

[2] Plaintiffs' motion also applied to LAN's non-party notices. However, only VNA's non-party at fault notices continue to be relevant to the upcoming trial due to LAN and Plaintiffs' notice of settlement. (ECF No. 2515 (Stipulation to Stay Proceedings Relating to the LAN Defendants) entered via text-only Order on July 6, 2023.)

3

entered an Order following the hearing denying Plaintiffs' motion for the reasons set forth on the record. (ECF No. 2484.)

At the May 31, 2023 hearing, the Court ordered VNA to identify the undertaking for each identified non-party at fault, as well as when the alleged breach took place. It also allowed Plaintiffs to respond to VNA's filing. (ECF No. 2486, PageID.82828–82829.) On July 17, 2023, VNA filed a document identifying the undertaking and approximate dates VNA alleges the breach took place for each of the non-parties. (ECF No. 2524, PageID.83678.) Plaintiffs filed a response on August 16, 2023. (ECF No. 2564.)

## II.  Legal Standard

Michigan law addresses non-parties at fault as follows:

(1) In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death involving fault of more than 1 person, including third-party defendants and nonparties, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all persons that contributed to the death or injury . . . regardless of whether the person was or could have been named as a party to the action.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed.

. . . .

(8) As used in this section, "fault" includes an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party.

MCL § 600.6304. This "tort-reform" statute, which operates alongside MCL § 600.2957, is meant "to eliminate joint and several liability in situations in which that liability [would have otherwise] existed." *Vandonkelaar v. Kid's Kourt, L.L.C.*, 290 Mich. App. 187, 198 (2010). It "mandate[s] the allocation of liability among all persons who contributed to the accrual of a plaintiff's damages." *Lamp v. Reynolds*, 249 Mich. App. 591, 605 (2002). Under these statutes, "the availability of immunity does not control the existence of a duty that can give rise to an allocation of fault to a nonparty." *Goodwin ex rel. Goodwin v. Nw. Michigan Fair Ass'n*, 325 Mich. App. 129, 149 (2018). Thus, Defendant has the burden of establishing that a non-party's breach proximately caused Plaintiffs' damages. *See Lamp*, 249 Mich. at 599. There must also be proof of duty

for the apportionment of fault and the allocation of liability. *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 20–21 (2009).

## III.  Analysis

Plaintiffs' raise two objections to VNA's submission regarding non-parties at fault. First, Plaintiffs argue that non-party at fault issues should not be adjudicated at the upcoming Issues Class trial. They assert that "consideration of most if not all the non-party fault issues Veolia has identified is premature and should instead be deferred to subsequent damages proceedings." (ECF No. 2564, PageID.84668.) Second, Plaintiffs question VNA's framing of the non-party at fault issues, arguing that VNA fails to explain "whether any non-party breached a duty they owed to Plaintiffs that proximately caused the same harm Veolia created through its professional negligence." (*Id.* at PageID.84672 (emphasis omitted).) Plaintiffs request that the Court "order that the issue of allocation of fault, if any, will be deferred until after the jury has decided liability and causal damages attributable to Veolia's conduct." (*Id.* at PageID.84691.) As set forth below, Plaintiffs objections are not supported by the applicable law or the facts of this case. Accordingly, Plaintiff's request is denied.

6

## A.   Timing of Consideration of Non-Parties at Fault

Plaintiffs argue that VNA fails to show that "allocation of fault between Veolia and . . . non-parties should occur at the issues trial rather than in subsequent non-class proceedings." (ECF No. 2564, PageID.84689.) They contend that there is no need to adjudicate these issues now, nor is there a workable way to do so.

First, Plaintiffs point to language in Michigan statutes and model jury instructions to argue that non-parties at fault should only be considered in a trial where damages are being assessed. (ECF No. 2564, PageID.84689.) They note that the relevant statute directs triers of fact determining percentages of fault to consider "both the nature of the conduct of each person at fault and the extent of the causal relation between the conduct and the damages claimed." MCL § 600.6304. Plaintiffs suggest that this statute requires the exclusion of non-parties at fault here, because "the jury cannot consider the causal relation between non-party conduct and damages at the issues trial because damages will not be addressed." (ECF No. 2564, PageID.84690.) Yet, this statute only indicates that, in a case like this, the jury must consider the alleged conduct of both Defendant and the non-parties at fault in

7

connection with the injuries alleged by Plaintiffs. If Plaintiffs prevail at the Issues Class trial, the extent of their injuries must then be proven in later proceedings. (*See* ECF No. 1957, PageID.68142.) Nothing in § 600.6304 raises questions about this bifurcated procedure.

Plaintiffs also point to the Michigan model jury instructions for allocation of fault for non-parties, which state that the "instruction should be used only for actions . . . seeking damages for personal injury, property damage, and wrongful death and that involve fault of more than one person including an identified nonparty." Mich. M. Civ. JI 42.05 (use note). Plaintiffs also note that MCL § 600.2957 refers to actions seeking damages in discussing the allocation of fault. They suggest that this language means that non-parties at fault may not be raised in an Issues Class trial that will not determine damages. However, this ignores the fact that Plaintiffs' action does seek damages; this action is simply being bifurcated into an Issues Class trial and, if needed, subsequent damages proceedings. The use note cited by Plaintiffs implies that the instruction is not meant for suits for injunctive or other forms of relief involving non-parties. Because Plaintiffs' claims of professional negligence against VNA

expressly seek damages for personal injury and property damage, this argument fails.

Second, Plaintiffs argue that judicial economy counsels in favor of addressing non-parties at fault in proceedings about damages rather than during the Issues Class trial. (ECF No. 2564, PageID.84690.) This assertion is in direct conflict with the position Plaintiffs took when seeking class certification, where they argued that addressing this issue on a class basis would be superior to dealing with it on an individual basis. (ECF No. 1581, PageID.60886 ("A jury will decide *once* whether Veolia and LAN committed professional negligence, and whether and to what extent non-parties are at fault."); *see also id.* at PageID.60808.) Despite prevailing on that position, Plaintiffs now argue for the opposite, stating that if they lose at trial, there will be no need to allocate fault. (ECF No. 2564, PageID.84690.) The Sixth Circuit has rejected Plaintiffs' position, holding that establishing comparative fault on a class-wide basis is more efficient than the alternative Plaintiffs now prefer:

> The efficiencies of an established, uniform set of facts for determining comparative fault are clear, and the bulk of the evidence adduced at later trials would be confined to the relevant class member's damages; a much smaller inquiry which federal courts routinely try separately. . . . Absent issue

certification, [VNA] could be subject to as many different fault allocations as there would be individual or bellwether trials, resulting in different allocations of fault even for plaintiffs whose exposures were similar in time and scope. Establishing relative fault over and over again to numerous juries could never be more efficient or consistent.

*In re: Veolia N. Am., LLC*, Nos. 21-0103/0104/0105, 2022 U.S. App. LEXIS 2101, at *24–25 (6th Cir. Jan. 24, 2022) (denying VNA and LAN permission to appeal the Court's class certification orders).

Plaintiffs also rely on VNA's comments opposing the inclusion of non-parties at fault during the October 26, 2022 status conference. There, VNA expressed that it had doubts related to allocating fault at the Issues Class trial. (ECF No. 2564, PageID.84690 (quoting ECF No. 2253, PageID.74006).) At that same conference, however, Plaintiffs took the position that they now reject. In responding to VNA, Plaintiffs suggested that determining fault "in the damage phase . . . would even be more convoluted and difficult" than doing it at the Issues Class trial and acknowledged that "comparative fault . . . really goes to the issue on the liability side." (ECF No. 2253, PageID.74007.) These statements are neither persuasive nor controlling here. Instead, the Sixth Circuit's prior analysis guides the Court. Accordingly, Plaintiffs' arguments on the

timing of this issue fail and non-parties at fault are properly included in the Issues Class trial.

**B.      Whether the Non-Parties Proximately Caused the Same Harm as VNA**

Plaintiffs next argue that VNA has failed to identify how the non-parties are factual and proximate causes of the same injuries that Plaintiffs allege VNA caused them. (ECF No. 2564, PageID.84677.) First, they contend that the non-parties cannot be found to be at fault for the separate injuries caused by VNA, which Plaintiffs describe as "the incremental harm flowing specifically from Veolia's breach of duty." (ECF No. 2564, PageID.84683.). Second, Plaintiffs assert that VNA is an independent cause of the harms they allege, which means that its fault cannot be allocated to the non-parties VNA names. (*Id.* at PageID.84687.) Third, they maintain that VNA should be required to limit its list of non-parties based on the time period when its fault arose. Fourth, Plaintiffs argue that VNA fails to demonstrate that the named non-parties caused the injuries at issue in this case. (*Id.* at PageID.84683–84686.) The Court rejects each of Plaintiffs' arguments.

11

### i.    Separate Injury

First, Plaintiffs argue that they have alleged separate injuries caused by VNA that are distinguishable from the injuries caused by other parties and non-parties. Under Michigan law, whether a person or entity can be designated as a non-party at fault is based on whether they could have been held jointly and severally liable for a "single, indivisible injury" prior to the enactment of Michigan tort-reform laws such as MCL § 600.6034. *Vandonkelaar*, 290 Mich. App. at 196–97. The pre-tort-reform standard for when an indivisible injury involved joint and several liability is as follows:

> although there is no concert of action between tort feasors [sic], if the cumulative effect of their acts is a single, indivisible injury, which it cannot certainly be said would have resulted but for the concurrence of such acts, the actors are to be held liable as joint tort feasors [sic]; whereas, if the results, as well as the acts, are separable, in theory at least, so that it can be said that the act of each would have resulted in some injury, however difficult it may be as a practical matter to establish the exact proportion of injury caused thereby, each can be held liable only for so much of the injury as was caused by his act.

*Watts v. Smith*, 375 Mich. 120, 125 (1965) (citing 1 Cooley on Torts, 4th Ed., § 86, pp. 279, 280). In determining whether multiple tortious acts concurrently caused an indivisible injury, the Michigan Supreme Court

12

endorsed the view that "concurrence . . . has no reference to time, except that both torts must precede the damage." *Maddux v. Donaldson*, 362 Mich. 425, 435 (1961). Regarding joint and several liability for an indivisible injury, the Michigan Supreme Court has also explained:

> if there is competent testimony, adduced either by plaintiff or defendant, that the injuries are factually and medically separable, and that the liability for all such injuries and damages, or parts thereof, may be allocated with reasonable certainty to the impacts in turn, the jury will be instructed accordingly and mere difficulty in so doing will not relieve the triers of the facts of this responsibility.

*Id.* at 432.

Michigan case law provides several examples of divisible and indivisible injuries. In *Vandonkelaar*, the court of appeals identified two injuries that are separable or divisible from one another: (1) a tendon and joint injury to a child's finger resulting from an accident at a daycare center, and (2) the injuries that resulted from the parents' failure to bring the injured child to all recommended physical therapy. *Vandonkelaar*, 290 Mich. App. at 191–92, 197. By contrast, the court in *Watts* found that "a passenger in a car which was struck from the rear twice in one day-once while plaintiff and his driver were enroute to work in the early morning and the second time in the afternoon while they were returning

13

from work" was an indivisible injury. *Watts*, 375 Mich. at 123. Likewise, the Michigan Court of Appeals held that a patient's death was an indivisible injury where a health center misdiagnosed a patient, resulting in a "large-bowel resection and left-leg amputation," after which the patient was subsequently admitted to a nursing home where the patient died after the nursing home increased her intravenous feeding rate. *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 255 Mich. App. 245, 247–48 (2003). The Sixth Circuit also found there was an indivisible injury when plants that emitted pollutants damaged the plaintiffs' persons and property, indicating that "there is no possibility of dividing the injuries herein alleged to have occurred." *Michie v. Great Lakes Steel Div., Nat'l Steel Corp.*, 495 F.2d 213, 216 (6th Cir. 1974).

Here, Plaintiffs assert numerous injuries to persons and property that arose from exposure to contaminated water over time.[3] (*See* ECF No.

---

[3] In their Notice Regarding Certified Issue No. 3, Plaintiffs indicated that they "intend to prove at trial that the contaminated water conditions in Flint were capable of causing the following harms to class members": hypertension; elevated risk of adverse cardiovascular outcomes; adverse effects on neurological functions, renal functions, hematological functions, immunological functions, reproductive functions, and cognitive development and functions; skin rashes; emotional trauma and negative mental health outcomes; diminished business revenue; damage to pipes and fixtures; and diminished property value. (ECF No. 2283, PageID.74157–74158.)

2283.) Nevertheless, in opposing VNA's submission on non-parties at fault, Plaintiffs argue that there is a "distinct additional harm caused by [VNA]'s professional negligence (rather than *all* harm Plaintiffs suffered at any time due to corrosive water in Flint or exposure to lead)." (ECF No. 2564, PageID.84677 (emphasis in original).) Plaintiffs' arguments are insufficient to establish that these additional harms from prolonged exposure to contaminated water can be distinctly attributed to VNA as opposed to non-parties, however. The Court finds instead that Plaintiffs have asserted a variety of indivisible injuries arising from their exposure to contaminated water in general.

Michigan law supports this determination. Like *Michie*, the case most comparable to this one, which involved multiple emitters of pollution causing the same damage to persons and property, this case involves multiple actors who were responsible for contaminated water that resulted in the same harms to the Issues Class. *See* 495 F.2d at 216. Further, Plaintiffs allege that VNA exacerbated their injuries (*see* ECF No. 2564, PageID.84678), not that it caused them separate or separable injuries. That contrasts with the separable injuries in *Vandonkelaar*,

which involved an injury and a failure to properly treat that injury, leading to a separate physical problem. 290 Mich. App. at 197.

Plaintiffs' injuries are not divisible based on which party caused or was responsible for them.  To the extent VNA's conduct injured Plaintiffs, those injuries are part of a broader set of harms, extended over time, which were also caused by the conduct of other parties and non-parties. Moreover, but for the concurrence of VNA's allegedly negligent conduct with the tortious conduct of various non-parties, the increment of the injuries Plaintiffs seek to attribute solely to VNA would not have occurred.

Plaintiffs' pleadings underscore the indivisible nature of the injuries alleged by the Issues Class. Michigan courts consider how damages are pled when evaluating whether damages can be apportioned to non-parties. *See O'Neill v. Soil & Structures, Inc.*, No. 228364, 2002 WL 31297196, at *7 (Mich. Ct. App. Oct 11, 2002). Here, Plaintiffs' Fifth Amended Complaint alleges that they and their property were exposed to contaminated water that pre-dated VNA's involvement and that the exposure was prolonged by VNA's negligence, increasing the risk of injury. (*See e.g.*, ECF No. 1175-3, PageID.28657 ("As a result of the . . .

Veolia Defendants' actions, the residents of Flint, including Plaintiffs, were exposed to much greater amounts of poisonous water, and for a much longer time.").) Additionally, the operative complaint discusses these injuries as unfolding over an extended time period. (*See* ECF No. 1175-3, PageID.28791 ("Plaintiffs have suffered extensive damages, past, present and future[.]").) The complaint also does not disaggregate these temporally-extended harms in the manner Plaintiffs now attempt. (*See, e.g.*, *id.* at PageID.28590–28591 (discussing "the severe harm" caused by all Defendants and "serious injuries" caused by both LAN and VNA).)

The Court concludes that Plaintiffs' alleged injuries are not divisible, and joint and several liability would have applied to them prior to the institution of Michigan's current tort-reform regime. *See Vandonkelaar*, 290 Mich. App. at 196–97. Accordingly, the current non-party at fault statutes apply, and Issue 5 is properly included in the upcoming Issues Class trial.

### ii.    *Independent Causation*

Plaintiffs also argue that "Veolia's intervening actions broke the causal chain and constitute a separate tort that created a separate harm." (ECF No. 2564, PageID.84687.) Their claim seems to be that as

soon as VNA came on the scene, VNA's conduct broke the causal chains of all other parties that previously contributed to causing the contaminated water and set in motion a separate timeline of tort liability only involving VNA. Plaintiffs argue that these separate causal chains require that the fault at issue in this case be limited to VNA and that non-parties must be excluded. (*Id.* at PageID.84677.)

Plaintiffs provide little basis in Michigan law to support these assertions. They rely upon a Michigan trial-court case, *Doe v. Loomba*, No. 19-174239-NO, 2020 Mich. Cir. Lexis 660 (Oakland Cnty. Mich. Cir. Ct. May 29, 2020). In *Loomba*, the plaintiff alleged that a doctor assaulted patients and that a hospital, as well as others, failed to take corrective action despite notice of the doctor's prior assaults. *Id.* at *8. The defendant hospital sought to add the doctor, who had been dismissed from the case due to the plaintiff's failure to effectuate service, as a non-party at fault. *Id.* at *1 n.1. The trial court found that the hospital's defense, which was that the doctor "was acting outside of the scope of his employment to avoid liability for his actions," was impermissibly coupled with the argument that the doctor was a non-party at fault in the hospital's failure to take corrective action. *Id.* at *7. Plaintiffs suggest

that the hospital committed a separate tort that led to a separate harm, which Plaintiffs compare to VNA's conduct in this case. (*See* ECF No. 2564, PageID.84688.)

*Loomba* is not persuasive on this issue. While the *Loomba* court's reasoning is relatively abbreviated, its holding primarily relies on the inconsistency between arguing that the doctor acted outside the scope of his employment and therefore the hospital had no responsibility for his actions, and arguing that he was a non-party at fault. *Loomba*, 2020 Mich. Cir. Lexis 660, at *8. *Loomba* does not address whether any of the parties or non-parties were an independent proximate cause of a separate harm.

Additionally, *Loomba* cites extensively to *Goodwin ex rel. Goodwin v. Nw. Michigan Fair Ass'n*, 325 Mich. App. 129 (2018). *See, e.g.*, *Loomba*, 2020 Mich. Cir. Lexis 660, at *8. In *Goodwin*, the defendant named the injured party's parents as a non-party at fault. 324 Mich. App. at 149. However, *Goodwin* mainly stands for the proposition that a party can be a non-party at fault even if they have an immunity defense. *Id.* Neither *Loomba* nor *Goodwin* support Plaintiffs' contention that VNA was an

independent cause of Plaintiff's harms. Accordingly, the Court will not strike VNA's named non-parties at fault based on these arguments.

### iii.   Timing of Conduct

Plaintiffs argue that VNA fails to explain how the non-parties it names could have contributed to the injuries alleged by Plaintiffs. Specifically, they object to VNA referring to conduct outside the class period in this case. (*See* ECF No. 2564, PageID.84678–84679, 84683–84686.) Plaintiffs also point to various non-parties VNA names whose conduct pre-dates the class period, as well as the Court's comments about its interest in the timing of various parties' conduct.[4] (*See id.*)

The class period identifies the timespan from when VNA initially contracted with the City of Flint up until the date when Flint's water was reconnected with the Detroit Water and Sewerage Department's ("DWSD") water source. *In re Flint Water Cases*, 558 F. Supp. 3d 459, 490–91 (E.D. Mich. 2021). That is, the class definition begins with the start of VNA's work in Flint and ends when the exposure due to VNA's allegedly negligent conduct ceased; the definition is not structured

---

[4] The comments Plaintiffs cite expressed the Court's questions and some preliminary considerations about non-parties at fault, offered before the benefit of full briefing. It did not issue rulings in the comments Plaintiffs cite.

around the timing of the injuries allegedly caused by VNA. *See id.* at 490, 516. Non-parties at fault are identified based on whether their conduct caused the injury at issue, not based solely on when their conduct occurs. *See, e.g.*, *Vandonkelaar*, 290 Mich. App. 201–02.

However, as set forth above, the injuries alleged by Plaintiffs are broad, extend over time, and are not divisible. It is therefore possible that conduct by individuals or entities that pre- or post-dates VNA's conduct during the class period causally contributed to the contamination that harmed Plaintiffs. Insofar as there is a temporal limit on the relevance of other parties' fault, that limit is that "torts must precede the damage." *Maddux*, 362 Mich. at 435. Successive negligent acts can lead to an indivisible injury even when those acts take place over a long period of time. *See, e.g.*, *Markley*, 255 Mich. App. at 247–48, 252. As such, the class period does not set a limit on which conduct by non-parties might be sufficient for them to be at fault.

### iv.   *Lack of Proximate Causation*

VNA must demonstrate that each non-party had a duty, which when breached, factually and proximately caused the broad harms alleged by Plaintiffs. *See Romain*, 438 Mich. at 20–21; *Vandonkelaar*, 290

21

Mich. App. at 203. Plaintiffs argue that VNA has not established proximate cause with respect to the named non-parties at fault. (*See* ECF No. 2564, PageID.84680.) These arguments fail.

Under Michigan law, factual and proximate causation are defined as follows:

> [Factual causation] generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.

*Skinner v. Square D Co.*, 445 Mich. 153, 163 (1994). Insofar as Plaintiffs seek to undermine VNA's causation arguments based on the claim that VNA caused the separate, indivisible injury of aggravating Plaintiffs' injuries, the Court has already addressed and rejected that claim. For example, Plaintiffs' arguments related to Governor Snyder and his Office entirely rely on separating out an incremental harm caused solely by VNA, for instance, so these arguments fail. (*See* ECF No. 2564, PageID.84680.) The Court considers several of Plaintiffs' other arguments on this issue in turn below.

Plaintiffs contend that VNA cannot demonstrate proximate cause as to Andy Dillon, the former State Treasurer of Michigan. They explain that the only proximate cause argument VNA offers relates to Mr. Dillon's participation in approving an interim water delivery plan that relied on Flint River water. (ECF No. 2564, PageID.84678–84679.) They do not mention that VNA is citing from Plaintiffs' complaint, (*see* ECF No. 2524, PageID.83717), and that Mr. Dillon settled with Plaintiffs. (*See* ECF No. 1394-2.) Moreover, VNA points to various statutes and cases that plausibly create a duty to Plaintiffs, as well as a variety of alleged breaches of that duty. (ECF No. 2524, PageID.83715–83717.) VNA's submission also suggests that Mr. Dillon's role in the switch to Flint River water makes him a proximate cause of Plaintiffs' injuries. (*See id.*)

While Mr. Dillon's role pre-dated VNA's conduct and the class period, that does not necessarily mean there is a lack of proximate causation with respect to his conduct. Plaintiffs argue that VNA's "intervening actions broke the causal chain" and cut off earlier chains of proximate causation, including Mr. Dillon's. (ECF No. 2564, PageID.84687.) However, the Michigan Supreme Court has explained:

> Where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate

> cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act. 2 Restatement, Torts, §§ 440–442, 447.

*Comstock v. Gen. Motors Corp.*, 358 Mich. 163, 179 (1959). The fact that a second act of negligence follows an earlier one does not necessarily cut off proximate causation if the earlier act is "still operating."

Assuming Mr. Dillon was negligent, his role in the interim plan to switch to Flint River water could have been a substantial factor leading to Plaintiffs' injuries—injuries which did not change in kind due to VNA's actions. VNA's subsequent acts took place while the switch to Flint River water was still in place (or "still operating"), a planned switch that was meant to persist through the class period. (ECF No. 1175-3, PageID.28633 ("The Interim Plan would cover 2.5 years (April 25, 2014 until approximately December 2016).").) VNA argues that Mr. Dillon failed to exercise due diligence, was aware of the risks posed by Flint River water, and ignored recommendations to continue to rely on water from DWSD, among other things. (ECF No. 2524, PageID.83716.) These allegations suggest that Mr. Dillon could have foreseen the injuries that

eg

resulted from the switch to Flint River water during the class period, a switch which he allegedly put in motion. That is sufficient to allege that Mr. Dillon proximately caused Plaintiffs' injuries. Accordingly, the Court will not strike Mr. Dillon from the list of non-parties at fault despite his actions taking place before the switch to Flint River water. [5]

Plaintiffs also assert that VNA fails to support its contention that Bradley Wurfel, the former Michigan Department of Environmental Quality's (MDEQ) Communications Director, is at fault, arguing that VNA did not establish how he proximately caused Plaintiffs' injuries. (ECF No. 2564, PageID.84679.) They contend that VNA's notice of non-party at fault focuses on Mr. Wurfel's *knowledge* of water concerns, which is not enough to support a finding of proximate causation. (*Id.*) While knowledge of the water conditions alone is insufficient, VNA alleges far more than just knowledge on Mr. Wurfel's part. For instance, it alleges Mr. Wurfel ignored warnings and actively misled the public about the contamination of Flint water, causing and prolonging harm to Plaintiffs.

---

[5] In so holding, the Court is not determining that Mr. Dillon is at fault. The Court is only holding that VNA will have the opportunity to argue to the jury that Mr. Dillon is a non-party at fault at the Issues Class trial. The same is true for all the non-parties discussed here.

(ECF No. 2524, PageID.83734.) Those allegations are sufficient for inclusion of a non-party at fault, insofar as they allege conduct that factually and proximately caused Plaintiffs' injuries. Not only that, the Sixth Circuit has previously explained that Mr. Wurfel, as well as other MDEQ employees (Stephen Busch, Liane Shekter-Smith, and Michael Prysby),[6]

> played a pivotal role in authorizing Flint to use its ill-prepared water treatment plant to distribute drinking water from a river they knew was rife with public-health-compromising complications. Furthermore, when faced with the consequences of their actions, they falsely assured the public that the water was safe and attempted to refute assertions to the contrary.

*Guertin v. State*, 912 F.3d 907, 927 (6th Cir. 2019). Given what VNA has alleged, in addition to this guidance from the Sixth Circuit, Plaintiffs offer no reason to preclude VNA from offering its non-party defense against Mr. Wurfel. Accordingly, the Court will not strike Mr. Wurfel from VNA's list of non-parties at fault.

---

[6] While the Sixth Circuit dismissed claims against MDEQ Director Dan Wyant, they did so on qualified immunity grounds. *Guertin v. State*, 912 F.3d 907, 929 (6th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009)). As the Court has set forth previously, qualified immunity does not prevent a party from being designated as a non-party at fault.

Additionally, Plaintiffs dispute VNA's claim that the City of Flint and various other government actors like the Emergency Managers are non-parties at fault.[7] VNA's submission asserts that these actors failed to provide necessary information to Flint residents and failed to implement VNA's recommendations. (*See, e.g*, ECF No. 2524, PageID.83764–83766.) Plaintiffs contend that the non-party at fault statute does not apply to these government actors because VNA is actually mounting a causation defense here. (ECF No. 2564, PageID.84681–84682.)

Relying on *Veltman v. Detroit Edison Co.*, 261 Mich. App. 685 (2004), Plaintiffs argue that because VNA is mounting a causation defense, the non-party at fault statutes are not implicated. (ECF No. 2564, PageID.84681–84682.) Plaintiffs suggest that *Veltman* stands for the proposition that "causation defenses do not need to allocate fault and are available even if comparative fault statutes do not apply." (ECF No. 2564, PageID.84682.) In *Veltman*, the trial court disallowed an expert from testifying that a third party was an intervening cause that cut off

---

[7] Plaintiffs apply their arguments here to the City of Flint, Dayne Walling, Flint Department of Public Works, Howard Croft, Daugherty Johnson, Brent Wright, Michael Glasgow, and Darnell Earley. (*See* ECF No. 2564, PageID.84681 nn.5–6.)

the defendant's proximate causation, holding that doing so would mean bringing in a non-party at fault in violation of the notice requirements of MCR 2.112(K). *Veltman*, 261 Mich. App. at 692–93. The Michigan Court of Appeals reversed, holding that "MCR 2.112(K) does not provide plaintiffs a sword to eviscerate a defense on one of the elements comprising plaintiffs' burden of proof." *Id.* at 695. The appellate court explained that the trial court wrongly prohibited the defendant in *Veltman* from making a proximate cause defense, because the trial court thought the defendant was making a non-party at fault argument. *Id.* at 693–96.

*Veltman* does not support Plaintiffs' request to preclude VNA from making a non-party at fault argument here. In its submission, VNA is explicitly arguing about non-parties at fault and the allocation of fault, not making a general defense against liability based on proximate cause. (*See, e.g.*, ECF No. 2524, PageID.83684.) That is consistent with the non-party at fault statute. MCL § 600.6304. Moreover, the fact that VNA could potentially make proximate causation arguments does not prevent it from making the non-party at fault arguments it provides in its

submission. Accordingly, the Court declines to exclude the City of Flint and the other government actors from VNA's list of non-parties at fault.

Finally, Plaintiffs argue that proximate cause is lacking with respect to essentially all the non-parties that VNA names, though they do not systematically make this argument in detail for each of the thirty-eight parties in VNA's notice. The Michigan Court of Appeals has already provided some guidance on proximate causation regarding some of the non-parties named by VNA:

> [P]laintiffs alleged in their complaint that defendants [MDEQ employees Stephen Busch, Patrick Cook, and Michael Prysby] failed to prevent the City of Flint from distributing to its residents improperly treated water which ultimately became contaminated with lead; failed to timely discover that the water was unsafe through proper inspection, monitoring, and testing of the water system; failed to immediately act on information indicating that the water system was contaminated and unsafe; failed to immediately stop the distribution of lead contaminated water; and failed to timely advise Flint residents of the dangerous condition which resulted in serious injuries. If the evidence bears out plaintiffs' allegations that defendants' conduct in fact caused harm to plaintiffs, then it appears that the harm caused to plaintiffs—lead poisoning—is the general kind of harm that defendants' conduct foreseeably risked. . . . In other words, defendants' conduct could be deemed the legal or "the proximate cause" of plaintiffs' injuries, i.e., the one most immediate, efficient, and direct cause of plaintiffs' injuries.

*Nappier by Nappier v. Governor*, No. 344363, 2019 WL 1211469, at *8 (Mich. Ct. App. Mar. 14, 2019). *Nappier* affirmed the denial of the defendants' motion for summary disposition, indicating that when government actors with duties to Flint residents (like the MDEQ employees) engage in the kind of conduct described above, they proximately cause injuries including lead poisoning. *See id.* at *7 ("Defendants, as key employees of the MDEQ, had a 'special relationship' with the City of Flint which distributed the lead-poisoned water to plaintiffs and the existence of this relationship gave rise to defendants' duties to exercise reasonable care to protect plaintiffs from an unreasonable risk of harm."). VNA makes the sort of claims set forth in *Nappier* against the MDEQ employees it names as non-parties at fault. Accordingly, the Court will not prevent VNA from mounting its non-party at fault case against these MDEQ employees.

VNA also names other actors outside MDEQ, but the same sort of causal relationships are present in its allegations against those parties, as well. For instance, VNA makes the same sort of allegations against various City of Flint employees, such as failure to protect Flint residents from contaminated water and failure to advise Flint residents of the

threat they faced. (*See, e.g.*, ECF No. 2524, PageID.83776–83778.) It also asserts that private engineering consultant Rowe Professional Services "had a duty and undertook to . . . [a]void harm to the public related to evaluating the Flint River water and the Flint Water Treatment Plant, and identifying other short-term and long-term water supply alternatives." (ECF No. 2524, PageID.83793–83794.) VNA argues that Rowe Professional Services breached this and other duties to Plaintiffs by failing to ensure its recommendations were followed and failing to make other recommendations that would have prevented the contaminated water. (*Id.* at PageID.83794–83796.) These sorts of allegations are consistent with discussions of proximate cause in cases like *Nappier*. Accordingly, Plaintiffs' request to strike VNA's non-parties at fault whose conduct fell outside the class timeframe fail.[8]

---

[8] The Court is not adopting Plaintiffs' proposals at this stage of the litigation where the requirements for Defendants revolve around providing a "brief statement" for the purpose of providing notice. *See* MCR 2.112(K). Once VNA has been fully heard on its non-party at fault defenses at trial, however, the Court will entertain motions for judgment as a matter of law if a "reasonable jury would not have a legally sufficient evidentiary basis to find" for VNA with respect to particular non-parties at fault. Fed. R. Civ. P. 50(a).

## IV.   Conclusion

For the reasons set forth above, the Court declines to adopt the proposals made in Plaintiffs' Response to VNA's Submission Regarding Non-Party at Fault. Issue 5 will remain in the Issues Class trial.

IT IS SO ORDERED.

Dated: January 16, 2024                    s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 16, 2024.

                                           s/William Barkholz
                                           WILLIAM BARKHOLZ
                                           Case Manager