## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* FLINT WATER CASES

Case No. 5:16-cv-10444

Hon. Judith E. Levy
Magistrate Judge Elizabeth A. Stafford

_____/

## PLAINTIFFS' MOTION TO COMPEL
## COMPLIANCE WITH COURT ORDERS

Plaintiffs move to compel Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") to comply with Court orders issued by United States District Court Judge Judith E Levy. The most recent order relates to a July 19, 2023 ruling wherein Judge Levy ordered Veolia to produce certain communications and documents that she determined were withheld under improper assertions of privilege. The other is the Court's December 19, 2017 Confidentiality Order, under which Veolia improperly designated hundreds of documents as "Confidential." Accordingly, Plaintiffs seek an order compelling Veolia to comply with the aforementioned orders, by: (1) producing unredacted versions of one hundred and ninety-four (194) documents; and (2) de-designating documents they have improperly designated as "Confidential" and "Highly Confidential."[1]

---

[1] References herein to "Confidential" designations are inclusive of "Highly Confidential" designations as well.

## LEGAL STANDARD

Overall, Plaintiffs seek compliance with the District Court's prior rulings regarding discovery and pre-trial matters. Pursuant to 28 U.S.C. § 636(b)(1)(A), the Magistrate Judge may resolve such matters and compel compliance with the District Court's orders. More broadly, "parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense." *Macomb Interceptor Drain Drainage Dist. v. Inland Waters Pollution Control, Inc.*, No. 11-CV-13101, 2015 U.S. Dist. LEXIS 149306, at *11 (E.D. Mich. Nov. 3, 2015) (citing Fed.R.Civ.P.26(b)(1)). When a defendant fails to produce documents, Fed.R.Civ.P.37 "provides the party who sent the discovery [request] with the means to file a motion to compel." *Id.*

## ARGUMENT

### I. COMPLIANCE WITH JULY 19, 2023 ORDER: THE COURT SHOULD ORDER PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD AND REDACTED AS PRIVILEGED

In March 2023, Plaintiffs challenged approximately 1,700 of Veolia's privilege log entries. Plaintiffs argued communications and associated documents inclusive of third-party public relations firms, and/or which were made for purposes other than for legal advice are not privileged, and therefore, must be produced to Plaintiffs in unredacted form.

On July 19, 2023, Judge Levy created a rule, ordering the production of documents that fell into those categories. The Court ordered: "The rule … is that documents that are part of a media campaign simply aren't privileged. Those need to be turned over[.] [And for] [d]ocuments that are copied from in-house counsel or others to Mercury or Rasky, the privilege is waived." **ECF No. 2540, PageID.83989,** (July 19, 2023, Order). Subsequently, Veolia began producing documents in small batches. However, Veolia still refuses to produce one hundred and ninety-four (194) documents in fully unredacted form. These documents are being improperly withheld in contravention of the July 19, 2023 Order.

The Court previously discussed the appointment of Special Master Deborah Greenspan or former Magistrate Judge Mona Majouzb to review and apply Her Honor's July 19, 2024 ruling to the outstanding documents. **ECF No. 2540, PageID.83989-90,** (July 19, 2023, Discussion of Referral). On December 20, 2023, once it became clear that Veolia was failing to comply with her initial ruling, Judge Levy requested Plaintiffs move to refer this issue to the Magistrate Judge. **ECF No. 2794.** Upon doing so, the current referral followed. **ECF No. 2770**.

Plaintiffs therefore request that the Magistrate Judge review the outstanding documents *in-camera*; apply the Court's July 19, 2023 ruling; and order the production of said documents in unredacted form. To that end, Plaintiff's prepared

a list of the one hundred ninety-four (194) privilege log entries associated with the outstanding documents at issue. *See* **Exhibit A** (List of Documents).[2]

## II.   COMPLIANCE WITH CONFIDENTIALITY ORDER: THE COURT SHOULD ORDER THE DE-DESIGNATION OF DOCUMENTS IMPROPERLY DESIGNATED AS "CONFIDENTIAL"

On December 19, 2017, the Court entered a Confidentiality Order [ECF No. 299] ("Confidentiality Order") "to limit … the use and disclosure … of [] Confidential Material." **ECF No. 299, PageID.39383,** (Confidentiality Order).[3] Veolia subsequently and improperly labeled the vast majority of the documents they produced as "Confidential."

A review of Veolia's productions reveals that few, if any documents designated as "Confidential" actually meet the criteria for such a designation. As such, in accordance with the Confidentiality Order, Plaintiffs challenged hundreds of Veolia's erroneous designations.[4] To that end, each challenged designation

---

[2] Fifty (50) documents were previously and inappropriately produced in redacted form. *See* **Exhibit A**, rows 2-51. One hundred and forty-four (144) have not been produced at all. *See* **Exhibit A**, rows 52-195.

[3] *See also* **ECF No. 1255-3** (Exhibit C to Fifth Amended Case Management Order).

[4] The documents Plaintiffs challenged in their various Notices shall be hereinafter referred to as "Challenged Documents." *See* **ECF Nos. 2554, 2566, 2571, 2585, 2604, 2636, 2641, 2644, 2653, 2688,** (Notices of Objection to Designations of Protected Material).

pertains to a document created prior to January 31, 2017 (seven years ago).[5] In response, Veolia voluntarily de-designated some documents, but made generalized representations of confidentiality as to the vast majority.[6] **Each challenge has been fully briefed**,[7] and as outlined in Plaintiffs' Replies, Veolia's vague assertions, without explanation of the confidential information contained in each of the Challenged Documents or the harm disclosure would cause, clearly fail to meet the "good cause" standard to maintain confidentiality.[8]

Plaintiffs therefore request a review of the subject documents and their unfounded designations, and an order requiring Veolia to de-designate all of them as "Confidential." To that end, Plaintiffs have summarized the dispute below:

### A. Confidentiality Standard

Under the Confidentiality Order, and longstanding Sixth Circuit precedent, **Veolia** bears the burden of demonstrating that a document designated as

---

[5] The fact that the Challenged Documents date back at least seven years is pertinent for later discussions as to the alleged potential harm de-designation could cause Veolia.

[6] *See* **ECF Nos. 2577, 2586, 2598, 2611, 2623, 2646, 2651, 2663, 2665, 2757** (Veolia's Responses to Plaintiffs' Notices of Objection to Designations of Protected Material).

[7] Plaintiffs provide a comprehensive summary of their position with respect to each category of Challenged Documents below. **But because these issues have been fully and extensively briefed, this motion should _not_ afford Veolia the opportunity to raise arguments it did not raise previously**.

[8] *See* **ECF Nos. 2593, 2599, 2610, 2622, 2637, 2656, 2657, 2669, 2672, 2757** (Plaintiffs' Replies to Veolia's Responses Regarding Objections to Confidential Designations).

"Confidential" is appropriate and made with good cause. *See FDIC v. Cuttle*, No. 11-cv-13443, 2013 U.S. Dist. LEXIS 53367, at *11 (E.D. Mich. Mar. 8, 2013) ("[T]he designating party carries the burden of establishing the confidential status of the material."); *White v. GC Servs. Ltd. P'ship*, No. 08-11532, 2009 U.S. Dist. LEXIS 4735, at *4 (E.D. Mich. Jan. 23, 2009) ("[I]f the Plaintiff files an objection to Defendants' designation of confidential discovery material, the Defendants still have the ultimate burden of demonstrating 'good cause' under Rule 26(c).").

A finding of good cause for entry "of a protective order to safeguard [allegedly confidential or] commercially sensitive information from public disclosure" is two-fold. *Hernandez v. Harbor Freight Tools USA, Inc.,* No. 3:21-cv-00048, 2023 U.S. Dist. LEXIS 87909, at *4–6 (E.D. Ky. May 19, 2023). First, Veolia must show that a document "contains private, non-public, confidential, competitively sensitive, or proprietary information that is not readily ascertainable through lawful means by the public." **ECF No. 299, PageID.11450 (¶5),** (Order). Second, Veolia must show that "if disclosed publicly [a document] would likely cause oppression, competitive disadvantage, infringement of privacy rights established by statute or regulation, or infringement of confidentiality requirements established by statute or regulation with respect to government purchasing or other operations." *Id.* In sum, where confidentiality designations have been explicitly challenged, **the party seeking protection** "must articulate **specific facts** showing the steps taken to maintain the

confidentiality of such information and the clearly defined and serious injury they would suffer if such information is disclosed." *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2014 U.S. Dist. LEXIS 13180, at *12 (S.D. Ohio Feb. 3, 2014) (emphasis added).

### B. The Challenged Documents contain no confidential or competitively sensitive information that would cause Veolia harm if disclosed

In all instances, Veolia states <u>generally</u> that the Challenged Documents qualify as confidential.[9] But Veolia's threadbare assertions fall flat. Having been challenged, the burden shifts to Veolia "[to] make a **particularized showing** that the information sought to be protected is entitled to protection." *MSC.Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 U.S. Dist. LEXIS 69107, at *13 (E.D. Mich. May 17, 2012) (emphasis in original). This may be done through affidavits detailing efforts to maintain confidentiality or substantive discussions of each document. *See, e.g., Charvat v. EchoStar Satellite, LLC,* 269 F.R.D. 654, 656 (S.D. Ohio 2010). Veolia did not offer an affidavit or a substantive analysis with respect to any of the Challenged Documents.[10]

---

[9] *See* **ECF Nos. 2577, 2586, 2598, 2611, 2623, 2646, 2651, 2663, 2665, 2757** (Veolia's Responses to confidentiality designation challenges ("CDCs")).

[10] Included below is a discussion of the documents Veolia mentioned in each of their Responses. To the extent Veolia failed to include a substantive discussion of a Challenged Document, Veolia has necessarily failed to meet their burden and each such document should be automatically de-designated. For example, to the extent Veolia states that it has agreed to downgrade several documents from "Highly

1.    **Documents previously marked as "Privileged" (but for which the Court overruled Veolia's privilege designations)**

Veolia first argues that a number of Challenged Documents[11] were properly designated as "Confidential" because the Court overruled Veolia's attorney-client privilege and work product claims, and Veolia has the right to appeal her decision.[12] *See, e.g.,* **ECF No. 2577, PageID.85063-85065,** (Veolia's Response to CDC 1). For this outlandish proposition, Veolia cherry-picked language from two cases stating that, in certain instances, a party may appeal an adverse attorney-client ruling. *Id.* at **PageID.85063-85064**. However, neither case provides support for Veolia's argument that the documents should be kept from the public. *See Mohawk Indus. v. Carpenter*, 558 U.S. 100, 109 (2009) (discussing whether disclosure orders adverse to attorney-client privilege qualify for immediate appeal under the "collateral order" doctrine); *see also Holt-Orsted v. City of Dickson*, 641 F.3d 230, 240 (6th Cir. 2011) (discussing whether a plaintiff can avail itself of a post-judgment appeal to challenge testimony over an assertion of attorney-client privilege). Under Veolia's flawed

---

Confidential" to "Confidential," Veolia still bears the burden of demonstrating good cause to keep the documents from the public. *See, e.g.,* **ECF No. 2598, PageID.85558,** (Veolia's Response to CDC 3) (failing to providing an analysis of VWNAOS511323, which Veolia re-designated from "Highly Confidential" to "Confidential").

[11]    *See* **Exhibit B**, pp. 1-2 (Documents Veolia claims should remain confidential for general reasons based on a right to appeal).

[12]    On July 21, 2023, the Court ordered Veolia to produce a number of these documents following an *in-camera* review, which resulted in the Court requiring production of the vast majority thereof.

logic, a producing party could claim as privileged **any** unflattering document in an attempt to conceal its contents from the public during the pendency of the case, even after a court deemed the documents not protected. This cannot stand.

### 2.    Internal communications and memorandums

Veolia asserts that several of its internal communications and memorandums contain confidential or commercially sensitive information, including its draft budgets from 2017 and communications regarding a trademark request.[13] *See, e.g.,* **ECF No. 2757, PageID.**91785, (Veolia's Response to CDC 13). With respect to two documents, VWNAOS528237 and VWNAOS528366 , Veolia argues generally that they contain "competitively-sensitive information that if disclosed publicly could cause a competitive disadvantage." **ECF No. 2577, PageID.85065,** (Veolia's Response to CDC 1). However,

> An example of what would fall within the scope of the confidentiality clause protecting information with the potential to harm an existing or potential client relationship would be portions of a conversation between Defendants' representatives and a client where the personal financial circumstances of the client and the client's identity were discussed. Such information is truly "non-public[,]" and its publication would likely embarrass the client and Defendants, and impair their mutual relationship.

*Ameriprise Fin. Servs., Inc. v. Reserve Fund, C.A.*, No. 08-5219, 2008 U.S. Dist. LEXIS 144594, at *14 (D. Minn. Dec. 15, 2008). While Veolia asserts that these

---

[13] *See* **Exhibit B**, p. 3-4 (Documents Veolia generally claims should remain confidential based on inclusion of internal communications and memorandums).

documents "relate to internal communications among [Veolia] employees regarding contract negotiations with a potential client that [Veolia's] competitors could find useful,"[14] they fail to expound upon what, if any, actual competitive information would be disclosed. These bald claims clearly do not meet the requirements to maintain confidentiality.

### 3. Communications with and documents concerning the City of Detroit and the Detroit Water and Sewage Department ("DWSD")

A large number of the Challenged Documents concern Veolia's relationship with the City of Detroit ("Detroit") and the DWSD.[15]

For each category of documents related to these communications, Veolia generally asserts that the Challenged Documents contain "commercially or competitively-sensitive information about [Veolia's business]" that, if disclosed, "could cause competitive disadvantage to [Veolia]." *E.g.,* **ECF No. 2426, PageID.**86481, (Veolia's Response to CDC 8). For example, Veolia asserts that some of the documents contain "proposals representing the cost for its personnel, which [Veolia]'s competitors could use to undercut [Veolia]'s bidding for work[;]" some "reflect [Veolia]'s deliberative process," which "[c]ompetitors [could] use [] to determine how [Veolia] develops its responses to reports of this nature[;]" and

---

[14] **ECF No. 2577, PageID.85065,** (Veolia's Response to CDC 1).
[15] *See* **Exhibit B**, pp. 3-9 (Documents relating to or communications with Detroit and the DWSD, which Veolia generally claims should remain confidential).

another "includes a summary of the deal structure and financials[,]" which "would harm [Veolia,] because its competitors could use the information against [Veolia] to have a competitive edge during the bidding process." *Id.* at **PageID.86481-86486**.

It is true that, even where confidential business information is not a trade secret, "[p]rotecting business information that [a party's] competitors could use to its disadvantage is a compelling reason to seal" such information. *Ewalt v. Gatehouse Media Ohio Holding II, Inc.*, No. 2:19-cv-4262, 2022 U.S. Dist. LEXIS 66208, at *9 (S.D. Ohio April 11, 2022). However, "it is not easy to meet this standard; instead, the moving party must show that disclosure of harm 'would seriously harm its competitive standing.'" *Id.* at *10 (*quoting United States ex rel. Scott*, 2021 U.S. Dist. LEXIS 185417, at *4 (W.D. Ky. Sept. 27, 2021)). Veolia has not done so here, especially given the age of the challenged DWSD documents, which date back to before 2017. "The risk of competitive harm is assumed to be 'lower in disclosing historical business records over more recent ones.'" *Id.* at *10–11 (quoting *United States ex rel. Scott*, 2021 U.S. Dist. LEXIS 185417, at *4 (determining that "the particulars of years-ago negotiations are unlikely to amount to a trade secret")). "[Veolia's] vague assertions of potential future relevance do not explain how competitors could use this dated analysis to undercut its standing in the marketplace." *Id.* at *10–11 (finding emails discussing budgets and monthly performance to be "fairly routine" and "the risk of competitive harm from

disclosure" low). Accordingly, Veolia's "Confidential" designations should be removed.

### 4.    Veolia's budgets and human resources documents

Veolia's claims that certain Challenged Documents "relate to internal budgets, HR concerns and salaries[,]" and allegedly contain "private, non-public information[,] which would cause [Veolia] to suffer oppression or competitive disadvantage if publicly disclosed[,]" must also be rejected.[16] *E.g.,* **ECF No. 2586, PageID.85373-85375,** (Veolia's Response to CDC 2). As an initial matter, many of the documents Veolia identified do not relate to "internal budgets, HR concerns, and salaries" at all.[17] Even still, Veolia fails to explain or cite any case to support its assertion that these general categories of information fall within the scope of confidentiality. Another document, VWNAOS549103—a report Veolia procured through a private investigation firm concerning an individual's professional background and ties to government officials—arguably relates to "HR concerns,"[18]

---

[16] *See* **Exhibit B**, p. 10 (Documents concerning Veolia's budgets and human resources documents, which Veolia generally claims should remain confidential).

[17] VWNAOS528466 is an email thread discussing the status of the labor situation for the Detroit Water and Sewerage Department; VWNAOS544490-VWNAOS544502 is an "Amended & Restated Agreement for Consulting Services;" VWNAOS549102 is an email discussing "updated information" regarding the "engagement of … a business intermediary on behalf of Veolia;" VWNAOS557264-VWNAOS557264.0005 is a spreadsheet outlining in high-level terms the consultants Veolia engaged for certain projects in 2016.

[18] **ECF No. 2598, PageID.85557-85558,** (Veolia's Response to CDC 3).

but needs more than Veolia simply saying it is "Confidential" in order to qualify as such. Merely asserting that a document contains information relating to "HR concerns" is insufficient to explain why it is confidential.

### 5. Veolia's communications plans

Veolia argues that documents which "relate to strategic plans on communications[,]" and "are commercially sensitive[,]"[19] were properly designated as "Confidential." *See, e.g.,* **ECF No. 2598, PageID.85558,** (Veolia's Response to CDC 3). However, merely because Veolia "may deem certain business information as sensitive does not, in itself, justify a withholding from the public record." *Graff,* 2014 U.S. Dist. Lexis 13180, at *6. Rather, the party seeking to keep information confidential "must *demonstrate* that a document is 'confidential … commercial information' entitled to protection under Rule 26(c)(1)(G)," *Charvat,* 269 F.R.D. at 656 (emphasis added), which Veolia has failed to do. For example, Veolia asserts that VWNAOS528081, an email thread discussing whether to engage the consulting services of one individual, contains strategic plans on commercially-sensitive

---

[19] *See* **Exhibit B**, p. 10 (Documents concerning Veolia's communications plans, which Veolia generally claims should remain confidential).

13

information,[20] but the document plainly does not include such confidential information and Veolia does not even attempt to explain how it does.

### 6. Documents and communications Veolia claims are unrelated to the Flint Water Crisis

Veolia asserts that a number of the Challenged Documents are wholly unrelated to Flint, including documents concerning Veolia's internal communications with respect to its work in Pittsburgh; documents concerning projects outside of Michigan; documents related to a draft master supply agreement and rebate agreement with a Veolia supplier; a draft of a non-Flint related consulting services agreement; a non-disclosure agreement unrelated to Flint; an internal communications plan; one document revealing Veolia's internal policies and procedures for environmental incident reporting; documents that relate to its potential clients; and a document concerning insurance bid requirements for the Washington Suburban Sanitary Commission.[21] ***See, e.g.,* ECF No. 2757, PageID.91788-91790,** (Veolia's Response to CDCs 12, 13, 14, 15, 16).

Veolia is unspecific in arguing that these documents are not readily ascertainable by the public and would cause Veolia to suffer competitive disadvantage if disclosed. *Id.*; *AFT Michigan v. Project Veritas*, No. 17-13292, 2023

---

[20]  **ECF No. 2598, PageID.85558,** (Veolia's Response to CDC 3).
[21]  *See* **Exhibit B**, pp. 10-11 (Documents Veolia generally claims are unrelated to Flint Water Crisis and should remain confidential).

U.S. Dist. LEXIS 62421, at *7 (E.D. Mich. Apr. 10, 2023) ("Of course, the movant seeking a protective order [to seal discovery material] must present a particular and specific demonstration of harm, as distinguished from stereotyped and conclusory statements." (internal quotations omitted)). For example, Veolia states that VWNAOS559114-VWNAOS559114.0040 is an internal reporting document "that includes commercially-sensitive contract details, including terms and payments." **ECF No. 2598, PageID.85558,** (Veolia's Response to CDC 3). But again, this does not amount to a "*particularized showing* that the information sought to be protected [in each of the challenged documents] is entitled to protection." *MSC.Software Corp.,* 2012 U.S. Dist. LEXIS 69107, at *13 (emphasis in original). Veolia's "generalized claims of harm from litigants and the potential advantage to a competitor are insufficient reasons to demonstrate good cause." *Vignes-Starr v. Lowe's Home Ctrs.*, 544 F. Supp. 3d 774, 788 (W.D. Ky. 2021).

### 7.  Communications and documents associated with public relations firms

Veolia designated many of the public relations documents it produced as "Confidential," including a communication with its public relations firm regarding a public response to the Flint Water Crisis; drafts of a proposed response to a media inquiry and related communications; a document concerning public relations

strategy; and other documents associated with public relations firms.[22] ***See, e.g.,*** **ECF No. 2665, PageID.86865-86867,** (Veolia's Response to CDC 11). By way of example, Veolia asserts that documents prepared by certain public relations firms Veolia engaged to protect its reputation following the Flint Water Crisis[23] should be kept confidential because they contain "sensitive, non-public business information," including "[Veolia's] non-public communications strategies utilized in connection with a sensitive corporate issue." **ECF No. 2611, PageID.85767,** (Veolia's Response to CDC 4). Veolia also maintains that its contract with a different public relations entity[24] "includes compensation and billing information" that amount to "commercially sensitive contract details that competitors could rely on to [Veolia]'s detriment." **ECF No. 2646, PageID.86484,** (Veolia's Response to CDC 8).

To establish harm, Veolia generally proffers that the documents "could be misused or used against [Veolia] by competitors, thus causing competitive harm to [Veolia]." *See, e.g.,* **ECF No. 2611, PageID.85767,** (Veolia's Response to CDC 4). But it is unclear **how** Veolia's competitors could use a document created by an external public relations team seven years ago to cause **present** competitive harm. *See H.D. Media Co., LLC v. U.S. DOJ*, 927 F.3d 919, 926 (6th Cir. 2019) (rejecting

---

[22] *See* **Exhibit B**, pp. 11-12 (Communications associated with public relations firms, which Veolia generally claims should remain confidential).
[23] *Id.*
[24] *Id.*

the defendants' claim of "substantial competitive harm" because "the assertion was conclusory and … market data over three years old carried no risk of competitive harm"); *Int'l Bus. Machines Corp.*, 67 F.R.D. at 49. Veolia's vague assertion of harm is precisely the type of speculative claim of injury from disclosure which courts have routinely rejected. *See Cipollone v. Liggett Group, Inc*., 785 F.2d 1108, 1121 (3d Cir. 1983) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.").

### 8.     Documents concerning Veolia's engagement in Flint

Veolia argues that several Challenged Documents[25] relate to Veolia's "initial proposal and ultimate decision to take on the Flint project, including staffing for the project." *E.g.,* **ECF No. 2623, PageID.85868,** (Veolia's Response to CDCs 5, 6, 7). To establish harm, Veolia broadly claims that some of the documents, if disclosed, "would be valuable to [Veolia's] competitors." *Id.* at **PageID.85869**. Veolia alleges that some would "give competitors the opportunity to try to displace [Veolia] from continued work[;]" and one "would allow [Veolia's] competitors to copy safety information and practices it developed over many years." *Id.* Yet again, despite Veolia's amorphous contentions, these generalized claims of harm are insufficient

---

[25] *See* **Exhibit B**, p. 12 (Documents concerning Veolia's engagement in Flint, which Veolia generally claims should remain confidential).

to establish good cause, especially given that these documents were created years ago.

### 9.    Documents concerning Veolia's work with lobbyists and consultants

Veolia also vaguely asserts that documents relating to its lobbying efforts to obtain work should be kept confidential, including invoices submitted by a particular consultant – Clark Hill; a retention agreement with Clark Hill; information regarding Veolia's spending on lobbying fees; and steps Veolia took to finalize a proposed agreement and final agreements with Detroit.[26] Additionally, Veolia maintains that certain documents concerning the consultants it engaged should be kept confidential, such as an internal communication about an audit Veolia undertook to evaluate its relationship with outside consultants; a draft professional services agreement to provide consulting services for Flint, and a draft consulting services agreement. *Id.*

Veolia's assertions of confidentiality with respect to these documents is misguided. For example, Veolia states that a 2014 retention agreement with Clark Hill "for government-relations services pertaining to the City of Detroit[,]" should maintain its confidentiality designation, because "it shows how much [Veolia] pays its consultants." **ECF No. 2651, PageID.86546,** (Veolia's Response to CDC 9).

---

[26] *See* **Exhibit B,** pp. 12-13 (Documents concerning Veolia's work with lobbyists and consultants, which Veolia generally claims should remain confidential).

Notably, despite ample opportunity to do so, Veolia failed to even mention what harm would result from disclosure of the amount Veolia's consultants receive. The party seeking to keep information confidential "must demonstrate that the information qualifies as 'confidential … commercial information' entitled to protection under Rule 26(c)(1)(G)," *Charvat*, 269 F.R.D. at 656, which Veolia has failed to do.

### 10.    Documents and communications with or concerning Veolia's attorneys

Veolia presents a cluttered grouping of documents they claim are protected as work product; are typical attorney communications; or otherwise relate to legal services, and therefore are confidential.[27] As an initial matter, a number of the documents which Veolia states "include[] redacted, privileged communications between [Veolia]'s attorneys[,]"[28] do not. For example, one document Veolia identified is an email thread between the Vice President of Communications and Veolia employees regarding required official statements employees were to provide the media in response to the Attorney General's legal action against Veolia in Flint. VWNAOS172775-VWNAOS172775.0001. This document does not contain **any** attorney-client communications as Veolia asserts (and was apparently shared

---

[27] *See* **Exhibit B**, pp. 13 (Documents relating to communications with Veolia's attorneys, which Veolia generally claims should remain confidential).

[28] **ECF No. 2651, PageID.86547-86548,** (Veolia's Response to CDC 9).

externally with clients), and if it does, Veolia fails to make a particularized showing of which information within it is confidential.

Further, with respect to work product, at least one grouping of these documents is clearly not work product based on the Court's July 19, 2023 ruling. *See* **ECF No. 2540, PageID.83976-83992,** (Transcript of July 19, 2023 proceedings). And finally, just because a document might contain work product does not necessarily mean it should automatically be deemed confidential. *See MSC.Software Corp.*, 2012 U.S. Dist. LEXIS 69107, at *12-13 ("[W]hen the need for a certain level of protection is premised on the existence of confidential information, the designating party must make a particularized showing that the information sought to be protected is entitled to that protection.").

### 11.   Documents pertaining to customers' requests to be briefed about the Flint Water Crisis

Veolia asserts that documents pertaining to certain customer's requests to be briefed on the Flint Water Crisis[29] should be kept confidential, because they "relate to [Veolia's] process in responding to customer concerns, which if disclosed could impact [Veolia's] relationships with its customers." *E.g.,* **ECF No. 2611, PageID.85768-85769,** (Veolia's Response to CDC 4). But it is unclear what

---

[29] *See* **Exhibit B**, p. 13-14 (Documents pertaining to customers' requests to be briefed about the Flint Water Crisis, which Veolia generally claims should remain confidential).

confidential customer information is contained in these documents or what impact disclosure would have on Veolia's relationships with their customers. Simply because a communication is between Veolia and a customer does not, standing alone, make the communication confidential, and Veolia does not even attempt to explain or describe exactly (or even generally) how it does.

### 12.  Status reports and draft contracts

Veolia also argues that a number of status reports regarding projects unrelated to Flint,[30] such as a report created by Veolia Energy, are confidential because disclosure of the report "would result in disclosure of confidential consultant information." *E.g.,* **ECF No. 2651, PageID.86543,** (Veolia's Response to CDC 9). But it is not clear exactly **what** information within the status reports are confidential—and merely stating that information is confidential does not make it so. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.,* 2016 U.S. Dist. LEXIS 173940, at *9 (S.D.N.Y. 2016) (rejecting the circular argument that a document "should be kept confidential because it is confidential"). This is especially true given that the Veolia Energy status report is dated November 4, 2015 (VWNAOS528715-VWNAOS528715.0001), because "[t]he risk of competitive harm is assumed to be lower in disclosing historical business records over more

---

[30] *See* **Exhibit B**, pp. 14 (Status reports and draft contracts, which Veolia generally claims should remain confidential).

recent ones." *Ewalt*, 2022 U.S. Dist. LEXIS 66208, at *10–11 (internal quotations omitted).

Similarly, Veolia asserts that two "draft agreements and appendices with revisions," both from 2016, and a draft contract with the City of Flint are confidential because they contain "commercially-sensitive contract details" and "[Veolia]'s internal deliberations." *See, e.g.,* **ECF No. 2651, PageID.86546-86547,** (Veolia's response to CDC 9). However, Veolia's conclusory statements relating to confidentiality do not amount to a "*particularized showing* that the information sought to be protected [in each of the challenged documents] is entitled to protection," *MSC.Software Corp.,* 2012 U.S. Dist. LEXIS 69107, at *13 (emphasis in original), and Veolia does not even assert that disclosure of the challenged documents would harm them.

### 13.    Documents Veolia claims were improperly challenged

Lastly, Veolia claims that Plaintiffs failed to challenge certain documents with specificity.[31] For example, Veolia argues that Plaintiffs' challenge to certain documents which relate to Reginald Turner ("Turner"), a government affairs advocate and strategic advisor hired by Veolia to lobby on their behalf, does not comply with the Court's Order. **ECF No. 2598, PageID.85556-85557,** (Veolia's

---

[31] *See* **Exhibit B,** p. 15 (Documents Veolia claims were improperly challenged, which Veolia generally claims should remain confidential).

Response to CDC 3). However, the Order explicitly allows a party to challenge documents by Bates number range where, as with the Turner documents, the challenged documents contain "extensive designations of substantially the identical types of Protected Material." **ECF No. 299, PageID.11471,** (¶15(b)) (Confidentiality Order).

### C.   The public has a right to review the challenged documents.

Finally, even presupposing the Challenged Documents **do** contain competitively sensitive information as Veolia asserts—which they most certainly do not—the Court must "balance the need for protection of Confidential Material with the public interest in access to information relevant to the litigation arising out of the alleged contamination of the City of Flint municipal water supply that began in 2014." **ECF No. 299, PageID.11446,** (Confidentiality Order).

Here, the importance of the public's access to the Challenged Documents is crucial in light of the fact that Veolia has placed the contents of the documents at issue. During the Bellwether I trial, Plaintiffs' counsel became aware of a Veolia Twitter account, "@VNAFlintFacts" ("Twitter Account"),[32] and its blatant and incessant attempts to push individuals to Veolia's accompanying website, "veoliaflintfacts.com" ("Website"). Veolia used the Twitter Account and Website to spread misinformation about the trial as it happened in real time, as well as about

---

[32] *See* **Exhibit C** (Veolia Twitter "Truth Matters").

larger aspects of the litigation, with the desired effect that this misinformation would reach sitting and future jurors.[33]

The Challenged Documents highlight that the version of the "facts" Veolia fed to the public, which now constitute the very crux of their defense to Plaintiffs' claims, are at a minimum ironic if not completely inapposite. The public, not to mention Veolia's own "stakeholders," surely have a very real interest (Veolia's own) documents offering an alternative story or color to their false narrative, and Veolia failed to explain why maintaining their blanket designations outweighs the public interest Veolia has been so attentive to (until now).

## CONCLUSION

Plaintiffs respectfully request that the Court order Veolia (i) produce fully unredacted versions of the documents associated with the one hundred and ninety-four (194) privilege log entries; and (ii) de-designate each of the Confidential designations placed on the documents at issue.

Dated: January 24, 2024      Respectfully submitted,

                                      **LEVY KONIGSBERG LLP**

                                      /s/Corey M. Stern
                                      Corey M. Stern
                                      Melanie Daly
                                      Kiersten Holms
                                      605 Third Ave., 33rd Floor
                                      New York, New York 10158

---

[33] *See* **Exhibit D** (Expert Declaration of Lauren H. Cohen).

(212) 605-6200
cstern@levylaw.com
mdaly@levylaw.com
kholms@levylaw.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2024, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

<u>/s/ COREY M. STERN</u>
Corey M. Stern
603 Third Ave., 33rd Floor
New York, New York 10158
(212) 605-6200
cstern@levylaw.com