# EXHIBIT A

**LEVY KONIGSBERG LLP**
**ATTORNEYS AT LAW**
**605 THIRD AVENUE, 33ʳᴰ FLOOR**
**NEW YORK, N.Y. 10158**

**NEW JERSEY OFFICE**
**QUAKERBRIDGE EXECUTIVE OFFICE**
**101 GROVERS MILL ROAD**
**LAWRENCEVILLE, NJ 08648**
**TELEPHONE: (609) 720-0400**
**FAX: (609) 720-0457**

**(212) 605-6200**
**FAX: (212) 605-6290**
**WWW.LEVYLAW.COM**

**ATLANTA OFFICE**
**ONE GLENLAKE PARKWAY, SUITE 700**
**ATLANTA, GEORGIA 30328**
**TELEPHONE: (800) 315-3806**
**FAX: (212) 605-6290**

WRITER'S DIRECT EMAIL: CSTERN@LEVYLAW.COM

FEBRUARY 6, 2024

***VIA EMAIL (SETH_MAYER@MIED.USCOURTS.GOV)***
Honorable Judith E. Levy
United States District Court – Eastern District of Michigan
Federal Building
200 East Liberty Street
Ann Arbor, Michigan 48104

    **RE:**    **IN RE FLINT WATER CASES: IN-CHAMBERS FOLLOW-UP**
               **CASE NO. 16-10444**

Dear Judge Levy:

    I write to bring Your Honor's attention to an important matter.

    I was advised today that while our in-chambers conference was occurring, a Flint resident, Arthur Woodson, was contacted by a man named Paul Persuad, Senior Vice President for Actum. Persuad was seeking comment regarding a story he claimed was being published by the New York Post, about me specifically, centered on a podcast that I appeared on approximately four years ago. It was not the New York Post or one of its reporters who called Woodson for comment. Instead, Actum seemingly sought a prepackaged quote from a Flint resident, for a story it was placing or pitching to the publication. Interestingly, and according to Woodson, when Persuad reached him, he initially asked for Alfred Harris, a local Flint pastor. Thus, it appears that Woodson is on a list of at least two (but likely more) individuals who Persuad wanted to reach for comment.

    The Court might recall that on May 31, 2023, Veolia represented that Actum was the functional equivalent of a Veolia employee. ECF No. 2480, PageID.81970-81972. And while I admittedly do not understand all of the intricacies associated with the certified issues class or the recent class settlement, certainly Mr. Woodson might be a member of one or both, as might Pastor Harris, and as might any unrepresented adult who was living in Flint in February 2015. Further, while my firm does not represent class members, we do represent thousands of individuals, and beyond our representation of children and their parents, there might be as many as fifty thousand current or former residents who are represented by non-class counsel. It goes without saying that this type of contact, initiated by the functional equivalent of a Veolia employee, with class members or otherwise represented individuals, is not permitted.

For the Court's convenience, attached hereto is Mr. Woodson's Declaration, wherein he states in relevant part:

- On February 6, 2024 (Today), at 1:28 pm, I was contacted by someone seeking comment about attorney Corey Stern, for an article the person explained was being published by the New York Post.

- When I answered the phone, the man calling asked to speak to an acquaintance of mine, Pastor Alfred Harris.

- I initially thought the individual was a reporter for the New York Post and I explained he had the wrong number.

- After we hung up, I was able to determine from my caller ID that the man who called me was Paul Persuad. His name was unfamiliar to me, so I did a quick internet search and discovered he works for a company named Actum.

- I became curious about Actum and Persuad, and as a long-time Flint advocate and someone somewhat familiar with Mr. Stern's recent trial, I called Mr. Persuad back to get more information. I also took a screen shot of his name and phone number.

- When I called him back, Mr. Persuad explained that there was going to be an article in the New York Post about attorney Corey Stern, centered around an unflattering description of Flint Mr. Stern gave during a podcast from many years ago, and he was seeking Flint residents to comment for the story.

- I found it strange that it was someone from a company I had not heard of, calling for a comment, rather than the reporter himself or someone else from the New York Post who was writing the story.

- I told Mr. Persuad that Corey Stern and I have had our differences, he has said some things in the past that I do not like or agree with, and I do not always like him. But I am not interested in speaking out about him, because he seems to be one of the only lawyers left, willing to keep fighting for Flint residents against Veolia.

- It was clear to me during the call that Veolia was coming after Corey Stern, and I told Mr. Persuad that I felt that way.

- I also explained that I understood exactly what this was about: that Stern has been trying to get those documents, those emails, and that Veolia is just trying to make him look bad.

- I also told him that I know Veolia is upset because of the stories about geotargeting. I then knew my instincts were right about the call coming from someone for Veolia, because Persuad asked me if I had "actually seen the judge's ruling," and told me that "the Judge said none of that stuff was true." I couldn't imagine an impartial reporter saying such a thing.

2

*See* Woodson Declaration, attached.

Earlier today, during our in-chambers conference, Your Honor discussed "good faith," the Eastern District's rules regarding attorneys' conduct and civility, and more generally, the spirit of cooperation you require during any court ordered alternative dispute resolution process.

At the time (merely a few hours ago), if I projected skepticism regarding mediating with Veolia and its counsel it was because of the difficulty I have in envisioning a meaningful collaboration, in light of their open acrimony toward me for the last three years, and particularly since the conclusion of the Bellwether I trial. As an example, and most recently (before today's events), on January 29, 2024, Veolia issued a press release in response to what they perceived was a negative headline in a Detroit News Article. The release claimed that discovery related to Veolia's digital advertising campaign was "nothing more than a desperate attempt by plaintiffs' lawyer Corey Stern to lay blame for his loss in trial … [and] Mr. Stern continues his shameful scheme to make as much money as possible off the Flint Water Crisis." I have attached the release to this communication, also for the Court's convenience.

I understand these press releases are merely a part of Veolia's media strategy, and perhaps constitutionally protected. I generally have come to ignore these type missives, and while prior to this litigation I never encountered a corporate entity (or their counsel) who acted with such impunity toward opposing counsel, I have come to expect it here; it does not move me; and I almost admire it in light of the vulnerability required to overtly show such raw emotion (especially from an international, corporate entity).

But in light of the foregoing, I believe the Court should immediately inquire into the totality of contacts Persuad has made (or seeks to make) on behalf of Veolia, for the story Veolia is apparently placing in the New York Post. Further, the Court should take appropriate action if communications occurred between Veolia or its employees and members of the certified issues class; the settlement class; or individually represented residents. I feel it is also fair to consider whether an alternative dispute resolution process has any real chance to be successful under these circumstances. Veolia, its employees, and counsel might be free to exercise their constitutional rights however they see fit. But when, in the exercise of those rights, they simultaneously exhibit conduct that can be characterized as uncivil, abrasive, abusive, hostile, or obstructive, it is fair to ask if the exercise of those rights and a meaningful resolution process can exist simultaneously.

Sincerely,

**LEVY KONIGSBERG, LLP**

Corey M. Stern

*Cc – Bellwether III Defense Counsel; Co-Liaison Counsel*