UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*IN RE*: FLINT WATER CASES.

Case No. 5:16-cv-10444-JEL-MKM

Hon. Judith E. Levy, District Judge
Hon. Elizabeth A. Stafford, Magistrate Judge

_____

**VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC.,
AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES,
LLC'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

## INTRODUCTION

VNA has produced nearly 75,000 documents to Plaintiffs. It withheld a very small percentage as subject to the attorney-client privilege or work product protection and it redacted from produced documents certain passages that contain privileged communications or attorney work product. VNA also designated some documents as "confidential" or "highly confidential" per the Court's Confidentiality Order. Plaintiffs now seek to compel production of certain privileged documents, and they challenge VNA's designations of certain documents as confidential.

This Court should deny Plaintiffs' motion to compel the production of certain materials withheld pursuant to the attorney-client privilege or work product doctrine. Consistent with the Court's July 2023 privilege ruling, VNA appropriately withheld privileged documents that—contrary to Plaintiffs' claim—were *not* copied to third parties, and it appropriately redacted privileged communications and attorney work product from other documents.

The Court should also deny Plaintiffs' effort to de-designate VNA's confidential documents. The documents are private, internal materials that were produced in reliance on, the Confidentiality Order. And Plaintiffs' only justification for seeking their de-designation is to leak them to the media—a purpose not authorized by the order. Because public disclosure of these documents would or could cause VNA competitive harm, they should remain confidential.

## ARGUMENT

## I.   PLAINTIFFS' MOTION TO COMPEL PRIVILEGED MATERIALS SHOULD BE DENIED

### A.   The Parties' Privilege Dispute And The District Court's Ruling

After the Bellwether I trial, Plaintiffs challenged more than 1,000 entries on VNA's privilege log, arguing that the documents were not privileged because they involved communications with third-party public relations (PR) consultants. Following an *in camera* review of a sample of 60 of the challenged documents, the Court ruled that 20 of those documents were properly withheld or redacted and 40 should be produced without redactions  Tr. of July 19, 2023, Status Conference (Ruling) 28, ECF No. 2540, PageID.83988.  The Court concluded that the latter documents were created "for the purpose of a media campaign and not related to the litigation," so they "were [n]ever work product." *Id.*  And as for attorney-client privilege, it concluded that "to the extent that VNA lawyers . . . copied" the PR consultants, "they waived the privilege." *Id.*

The Court then issued an order that identified the 20 documents for which it upheld VNA's assertion of privilege or work product protection and directed VNA to produce the other 40 documents as well as apply its rulings to the remaining challenged documents.  Order Regarding Matters Discussed at the July 19, 2023, Status Conference (Order) 1-2, ECF No. 2530, PageID.83930-31.  VNA produced the 40 documents and subsequently produced more than 330 other documents

challenged by Plaintiffs that were subject to Judge Levy's rulings.

Plaintiffs now argue that 194 of the remaining documents on the privilege log are covered by the Ruling and should be produced or produced without redactions. But VNA's privilege assertions and its redactions are entirely consistent with the Ruling and the applicable law.[1]

### B.     The Attorney Client Privilege And The Work Product Doctrine

"The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents." *Leibel v. Gen. Motors Corp.*, 250 Mich. App. 229, 236 (2002).[2]  "[T]he attorney-client privilege attaches to communications made to the attorney by the party, or client, as his legal adviser for the purpose of obtaining his legal advice and opinion, relative to some legal right or obligation." *Detroit News, Inc. v. Indep. Citizens Redistricting Comm'n*, 508 Mich. 399, 408 (2021).  "Once otherwise privileged information is disclosed to a third party by the person who holds the privilege, . . . the privilege disappears." *Leibel*, 250 Mich. App. at 242.

The work product doctrine, "as set forth in Federal Rule of Civil Procedure

---

[1]   Plaintiffs incorrectly suggest that the Court referred this issue because "Veolia was failing to comply with her initial ruling."  Mot. 3, PageID.93683.  The Court made no such determination.  *See* Order, ECF No. 2974.

[2]   For questions of attorney-client privilege, federal courts exercising diversity jurisdiction apply "the law of the forum state, including the choice-of-law rules." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).

26(b)(3), protects from discovery documents and tangible things prepared in anticipation of litigation by or for a party or by or for that party's representative."[3] *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). To determine whether material was prepared in anticipation of litigation, the court should ask "(1) whether [it] was created because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose, and (2) whether that subjective anticipation of litigation was objectively reasonable." *Id.* at 594. "[A] document can be created for both use in the ordinary course of business and in anticipation of litigation without losing its work-product privilege." *Id.* at 599. Work product protection is waived only by disclosure to "an adversary" or in a manner that makes it available to an adversary. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 305, 306 n.28 (6th Cir. 2002).

### C.    VNA Is Appropriately Withholding 55 Documents

Plaintiffs seek production of 55 documents that VNA is withholding as subject to the attorney-client privilege.[4] All reflect communications involving VNA's in-

---

[3] For questions of work-product privilege, federal courts apply federal law. *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006).

[4] VNA already has produced and removed from the privilege log nine of documents identified by Plaintiffs: Documents 6 (VEOLIA_0419306); 7 (VEOLIA_0419312); 17 (VEOLIA_0406879); 67 (VEOLIA_0403734) 132 (VEOLIA_0405572); 135 (VEOLIA_0407603); 137 (VEOLIA_0407741); 164 (VEOLIA_1025815); and 165 (VEOLIA_1026996). VNA also has produced with redactions 70 of documents that Plaintiffs incorrectly identify as being withheld. Finally, upon further review, VNA is now producing 14 of the challenged documents

house attorneys or outside counsel in connection with a request for legal advice. These privilege assertions are entirely consistent with the Ruling.

Seven of the challenged documents are simply versions of a document that the Court already reviewed and held was appropriately withheld as privileged.[5] Order 1-2, PageID.83930-31 (#23[6] (VEOLIA_0241063)).

Twelve of the challenged documents do not relate to Flint and do not involve external PR consultants.[7] Some of these documents relate to other cities, such as Pittsburgh or New York. They do not involve VNA's PR efforts related to Flint, let alone communication with the PR consultants. The Ruling thus does not require production of these documents. Moreover, these documents are wholly irrelevant to this litigation and to Plaintiffs' present allegations.

---

to Plaintiffs: Documents 51 (VEOLIA_0241059): 53 (VEOLIA_0241070); 54 (VEOLIA_0241084); 56 (VEOLIA_0327829); 58 (VEOLIA_0327842); 60 (VEOLIA_0327860); 133 (VEOLIA_0407212); 135 (VEOLIA_0407602); 137 (VEOLIA_0407693); 140 (VEOLIA_0409098); 179 (VEOLIA_1035670); 181 (VEOLIA_1035680); 183 (VEOLIA_1035694); 185 (VEOLIA_1035706).

[5] Documents 53 (VEOLIA_0241070); 55 (VEOLIA_0241088; 57 (VEOLIA_0327837); 59 (VEOLIA_0327844); 61 (VEOLIA_0327864); 138 (VEOLIA_0407743); 163 (VEOLIA_1024761).

[6] For purposes of the brief, the numerical references are to the order of appearance on Plaintiffs' Exhibit A.

[7] Documents 150 (VEOLIA_1014606); 159 (VEOLIA_1018658); 160 (VEOLIA_1018668); 161 (VEOLIA_1024596); 162 (VEOLIA_1024661); 188 (VEOLIA_1043306); 189 (VEOLIA_1043309); 190 (VEOLIA_1043311); 191 (VEOLIA_1043313); 192 (VEOLIA_1043316); 193 (VEOLIA_1043319); 194 (VEOLIA_1043321).

Three of the challenged documents relate to Flint, but do not relate to PR efforts or involve communications with the PR consultants.[8]  These documents discuss contracts (not with the PR consultants) or internal VNA reporting on ongoing lawsuits, including Flint.

Several of the challenged documents relate to Flint and PR, but are versions of standalone documents, *i.e.*, not e-mails, that are similar to two of the documents that the Court agreed were privileged.[9]   Order 1-2, PageID. 83930-31 (#12 (VEOLIA_241111) and #20 (VEOLIA_0241063)). These documents were prepared at the direction of counsel, and many contain embedded comments from counsel. Because the Court already has determined that VNA appropriately withheld analogous documents, this Court deny Plaintiffs' challenge to these documents.

Finally, 18 documents are internal VNA communications that include VNA's counsel and request legal advice that is connected to PR issues, but do *not* copy the PR consultants.  Several involve a request to prepare a confidentiality form for a PR

---

[8]   Documents 151 (VEOLIA_1014624); 152 (VEOLIA_1014631); 153 (VEOLIA_1015517).

[9]   Documents 104 (VEOLIA_0416699); 140 (VEOLIA_0410455); 141 (VEOLIA_0416590); 142 (VEOLIA_0416808); 143 (VEOLIA_0416816); 149 (VEOLIA_1009620); 154 (VEOLIA_1017344); 155 (VEOLIA_1017364); 156 (VEOLIA_1017908); 157 (VEOLIA_1017976); 158 (VEOLIA_1017988); 166 (VEOLIA_1027046); 167 (VEOLIA_1027047); 186 (VEOLIA_1041343); 187 (VEOLIA_1041391).

consultant.[10]  Others are internal discussions about VNA's response to inquiries from news media.[11]  While these documents reference VNA's retention of PR consultants, they do not include those PR consultants on the communication.  Because the PR consultants were not copied on these privileged communications, the Court's waiver ruling does not apply to them. Plaintiffs suggest that, under the Court's ruling, any document relating in any way to "a media campaign," including internal communications between VNA and its lawyers, is not privileged.   Mot. 3, PageID.93683.  That is not what the Court held.  It was deciding whether particular documents reflecting communications between VNA and the PR firms were covered by either work-product protection or attorney-client privilege.   Ruling 14-15, PageID.83974-75.  It held that certain of those communications were not work product because they involved a media campaign and not preparation for litigation. *Id.* at 28, PageID.83988.  And it held that the attorney-client privilege did not apply because the documents were sent to third parties.  *Id.* at 24-25, PageID.83984-95.  It did not hold that *internal* documents that reflected request for legal advice about a

---

[10]  Documents   145   (VEOLIA_0954219);   146   (VEOLIA_0954220);   147 (VEOLIA_0954221); 149 (VEOLIA_0954223).

[11]  Documents   168   (VEOLIA_1028512);   169   (VEOLIA_1028799);   170 (VEOLIA_1028803): 171 (VEOLIA_1035589); 172 (VEOLIA_1035596); 173 (VEOLIA_1035600); 174 (VEOLIA_1035615); 175 (VEOLIA_1035621); 176 (VEOLIA_1035665); 177 (VEOLIA_1035669); 179 (VEOLIA_1035678); 181 (VEOLIA_1035684); 183 (VEOLIA_1035697); 185 (VEOLIA_1035950).

media campaign were not privileged.

Indeed, Plaintiffs' interpretation would be contrary to the law.  A client can seek protected legal advice from its attorney on issues other than litigation, including its public relations efforts.  *See, e.g.*, *Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558, 571 (6th Cir. 2015) ("Advising a client on how to respond to media inquiries has important legal implications . . . [g]iven the potential for legal liability, [the attorney's] input on how to draft a media response was essential.").

### D.   VNA Appropriately Redacted 448 Documents

VNA produced 448 documents with redactions.  The redactions in the challenged documents fall into two broad categories.  Some redactions address privileged material in a document that also contains material that is not privileged or for which the privilege has been waived under the Court's ruling.  Other redactions address work product from VNA's attorneys that was shared with the PR consultants.  Because the PR consultants are not adversaries and VNA had a reasonable expectation of confidentiality when sharing work product with them, there was no waiver of work product protection.  Nothing in the Court's ruling is inconsistent with VNA's assertion of work product protection.

### 1.   VNA Appropriately Redacted Privileged Material That Was Not Subject To The Ruling

The Court ruled that VNA waived the attorney-client privilege for any otherwise privileged material shared with external PR consultants.  Ruling 29,

PageID.83989 (if privileged material was "copied from in-house counsel or others to [the PR consultants], the privilege is waived"). Accordingly, VNA has complied with that order and produced all documents that reflect communications with the PR consultants. And, if otherwise privileged material was communicated to the PR consultants, VNA has produced that material because the privilege was waived under the Court's ruling.

In many cases, however, a document that contains material subject to the Court's ruling also contains material that remains privileged. VNA has redacted that privileged material. That is consistent with the Court's ruling, which recognizes that privileged material is appropriately redacted from a document that also contains PR material that is subject to production under her rulings. *See, e.g.*, Order 1-2, PageID.83930-31 (#3 (VEOLIA_0416580)) (approving redaction of legal advice not shared with third-party PR consultants from e-mail chain discussing response to media inquiry); *id.* (#9 (VEOLIA_0994076)) (same).

For example, Document 10 on Plaintiffs' Exhibit A (VEOLIA_1027555) is a chain of e-mails. The top e-mail on the chain is from VNA's in-house counsel and provides legal advice to other VNA employees. The content of that last e-mail is protected by the attorney- client privilege. And because that last e-mail did not copy the PR consultants, VNA did not waive the attorney-client privilege. VNA accordingly redacted the privileged content of that last e-mail in the chain.

9

Similarly, Document 5 (VEOLIA_0408568) is an internal VNA e-mail discussing a potential PR statement.  Although the statement being discussed involved input from the PR consultants, the PR consultants were not copied on that e-mail.  One sentence of the e-mail describes the advice that the sender had received from VNA's legal team.  That sentence is protected by the attorney-client privilege and was not shared with the PR consultants, so the privilege was not waived under the Court's ruling.  VNA thus appropriately redacted that sentence.

This type of redaction—material protected by the attorney-client privilege that was not shared with the PR consultants—accounts for most of the redactions at issue.

## 2.    VNA Appropriately Redacted Attorney Work Product

Although the Court ruled that VNA waived the attorney-client privilege by sharing otherwise privileged material with the PR consultants, it did not make a similar ruling with respect to work product that was shared with them.  "[W]hile the mere showing of a voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work product privilege."  *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d at 304.  Instead, "disclosure must be to an 'adversary'" or in a manner that makes it available to an adversary in order to waive the work product protection.  *Id.* at 306 n.28.  Because the PR consultants were not "adversaries" and VNA had a reasonable expectation that they would maintain the

confidentiality of the work product shared with them, VNA did not waive work product protection by sharing work product with them.[12]   Accordingly, VNA has redacted protected work product from documents involving the PR consultants.

For example, Documents 1 (VEOLIA_0328628) and 2 (VEOLIA_0328632), are versions of a document titled "Strategy for Veolia Legal Filing."  This is a PR strategy memorandum originally prepared by one of the PR consultants.  According to the Court's ruling, the document is not privileged, so VNA has produced the document.  The first bullet point in the document states that "Veolia will file a response to the charges in early January 2016."  Document 1 (VEOLIA_0328628).  The second bullet point describes the likely form of that legal filing and is based on work product prepared by VNA's attorneys in anticipation of litigation.  Accordingly, VNA redacted the second bullet point from the document.  *Id.*  That was entirely consistent with the Court's ruling.

Two other documents are versions of an e-mail that provides a timeline of

---

[12] Courts regularly hold that "an otherwise valid assertion of work-product protection is [not] waived . . . simply because the attorney provides the work-product to a public relations consultant whom he has hired and who maintains the attorney's work-product in confidence."  *Calvin Klein Trademark Tr.*, 198 F.R.D 53, 55 (S.D.N.Y. 2000); *see e.g.*, *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 635-36 (N.D. Cal. 2019); *Stardock Sys. Inc. v. Reich*, 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30, 2018); *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, N.Y.*, 171 F. Supp. 3d 136, 142 (S.D.N.Y. 2016); *Lights Out Holdings, LLC v. Nike, Inc.*, 2015 WL 11254687, at *4 (S.D. Cal. May 28, 2015); *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 436 (S.D.N.Y. 2013); *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 & n.6 (S.D.N.Y.2001).

events in Flint prepared by VNA's outside counsel in anticipation of litigation. Documents 38 (VEOLIA_1021587); 39 (VEOLIA_1021602). Because the e-mail copies the PR consultants, the document is not subject to attorney-client privilege under the Court's ruling. But there was no waiver of the work product protection that applies to the timeline prepared by counsel in anticipation of litigation because the PR consultants are not adversaries and VNA had a reasonable expectation that they would maintain confidentiality of the material, as is reflected in the e-mail itself. VNA thus appropriately redacted the protected material.

## II.    The Motion To De-Designate Confidential Materials Should Be Denied

Plaintiffs' motion also challenges the confidential status of 455 documents.[13] Plaintiffs do not challenge VNA's confidentiality designations for any litigation-related reason. Nor could they; the protective order already gives Plaintiffs the freedom to prosecute their case. Rather, Plaintiffs seek to de-designate VNA's internal documents so that they can leak them to the media.[14]

---

[13] Plaintiffs' Exhibit B identifies 512 documents, but 1 document (VWNAOS526237-VWNAOS526237.0001) was not part of any Notice filed by Plaintiffs, so it is improperly challenged here. Further, 40 documents are duplicates. Finally, 16 documents were previously de-designated. VNA understands Plaintiffs to have abandoned their challenges to other documents previously challenged in their notices.

[14] Plaintiffs have made no secret of their desire to feed VNA's confidential documents to the media. *See, e.g.*, ECF No. 2554, PageID.84541; Tr. 31, ECF No. 2794, PageID.92447 (stating that plaintiffs want to "show somebody who may be reporting on [the litigation] a different side of the story"). The Court should thus be cautious when considering Plaintiffs' motion. "As the Supreme Court has advised,

## A.    The Protective Order's Confidentiality Provisions

In 2017 and 2020, the Court found "good cause" under Federal Rule of Civil Procedure 26(c) and Local Rule 26.4 to enter two nearly identical protective orders. Confidentiality Order (Conf. Order) 2, ECF No. 1255-3, PageID.39384; Confidentiality Order 2, ECF No. 299, PageID.11447.  In the Conf. Order (which governs here), the Court explained that discovery would involve "documents, information, or other materials that contain non-public, confidential, competitively sensitive, or proprietary information."  Conf. Order 1, PageID.39383.  It found "good cause" to enter the Conf. Order to "protect the parties' legitimate privacy and confidentiality interests" and "simplify and expedite proceedings in this complex litigation."  *Id.* at 2, PageID.39384.

### 1.    The Conf. Order Defines The Term "Confidential" And Limits The Use Of Documents So Marked

Under the Conf. Order, documents may be designated as "confidential" if a party has a good-faith belief that they "contain[] private, non-public, confidential, competitively-sensitive, or proprietary information that is not readily ascertainable

---

courts should avoid 'becom[ing] a partner in the use of [discovery] material to gratify private spite or promote public scandal, with no corresponding assurance of public benefit.'"  *AFT Mich. v. Project Veritas*, 2023 U.S. Dist. LEXIS 62421, at *9 (E.D. Mich. Apr. 10, 2023) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 603 (1978) (internal quotations marks omitted)).

through lawful means by the public." Conf. Order 5, PageID.39387.[15]  Documents
so designated may "be used solely for the prosecution or defense of the . . . Flint
Water Cases."  *Id.* at 2, PageID.39384; *see id.* at 15, PagedID.39397 ("Protected
Material may only be used for the purpose of prosecuting . . . the Flint Water
cases.").[16]  The Confidentiality Order accordingly allows parties to use confidential
documents for any litigation-related purpose, including for depositions and trial.

**2.    The Conf. Order Provides A Time-Limited Challenge Mechanism**

The Conf. Order provides a challenge mechanism.  Conf. Order 26,
PageID.39408.  Within 60 days of either the confidentiality designation or the close
of fact discovery in the matter in which the documents were produced (whichever

---

[15]  The Conf. Order also allows parties to designate a document "Highly Confidential" if the document also contains "highly sensitive proprietary information," including but not limited to "current financial or business planning information; recent, current, and projected future financial performance data; recent and current customer lists; recent, current, and future marketing plans; planning information for future products and services; and projected future business development plans and strategies."  Conf. Order 6, PageID.39388.

[16]  The Conf. Order expressly authorizes the use of designated materials to prosecute or defend the Flint water cases.  Conf. Order 15, PageID.39397.  For example, the parties may file designated materials with the Court. *Id.* at 12-14, PageID.39394-96. (The designating party may seek to seal such materials, but that requires "a separate order of the Court." *Id.* at 14-15, PageID.39396-97.)  The parties may also use designated materials "at trial" or in "evidentiary hearing[s]." *Id.* at 16, PageID.39398. And the parties may share designated materials with courts, mediators, in-house and external counsel, counsel's staff, insurers, jury research firms, experts, consultants, and parties who are natural persons. *Id.* at 17-22, PageID.39399-404.

comes later), an objecting party must "include in concise but meaningful language the factual basis on which the challenge to each item is based." *Id.* The designating party then "bear[s] the burden of showing good cause for the designation it advocates." *Id.* at 27, PageID.39409.

### 3.    The Conf. Order Sets Out Distinct Standards for Assessing Confidentiality Claims Based on the Challenge's Purpose

The burden for showing good cause differs depending on the purpose behind the challenge, as follows:

- When the challenging party seeks to use de-designated documents in ways authorized by the Conf. Order, then the designating party must show that the documents' public disclosure "*would likely* cause oppression [or] competitive disadvantage." Conf. Order 5, PageID.39387 (emphasis added).

- By contrast, when the challenging party seeks to "use[] [the documents] for purposes other than those authorized by this Order," then the designating party need only show that public disclosure "*could* cause oppression or competitive disadvantage." *Id.* (emphasis added).

Thus, when the challenging party seeks to de-designate documents for litigation-related reasons, the designating party must meet a strict "would likely cause harm" standard.  But when (as here) the challenging party seeks to de-designate documents for a "purpose other than those authorized by [the] Order," the Conf. Order imposes a significantly less-stringent, "could cause harm" standard.

The Conf. Order's common-sense distinction between authorized and unauthorized purposes comports with the Sixth Circuit's differing approaches to the

protection of discovery materials (as to which "[s]ecrecy is fine") and adjudicatory materials (as to which secrecy is not fine, because the public has constitutional and common law rights of access to such materials). *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002)); *see id.* at 305 ("[A] district court may enter a protective order limiting the use or disclosure of discovery materials upon a mere showing of 'good cause.'").[17]

## B.    Plaintiffs Misstate The Applicable "Good Cause" Standard

Plaintiffs assert that VNA must show, for every document at issue, that public disclosure "would likely cause" it oppression or competitive harm, Mot. 6, PageID.93686, but that assertion elides the "could cause" standard set out in the Conf. Order.[18]

Plaintiffs have never claimed that de-designation is required for any purpose

---

[17]   The Conf. Order's approach also mirrors the Supreme Court's teachings regarding discovery materials.  The purpose of discovery is to assist "in the preparation and trial, or the settlement, of litigated disputes." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984).  As such, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Id.* at 32; *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 225 (6th Cir. 1996) ("*Seattle Times* holds that *parties* to civil litigation do not have a right to disseminate information they have gained through participation in the discovery process.").

[18]   Plaintiffs also cite (Mot. 15, PageID.93695) *Vignes-Starr v. Lowe's Home Centers, LLC*, 544 F. Supp. 3d 774, 779 (W.D. Ky. 2021), but that decision involved a district court's decision whether there was good cause to enter a protective order in the first place. Here, the Court has already found good cause for its Conf. Order.

"authorized by the Order," such as questioning witnesses or introducing the documents into evidence.  Rather, Plaintiffs seek to de-designate these documents so they can leak them to the media.  *See* Mot. 23-24, PageID.93703-04.[19]  Because sharing documents with the media is *not* a purpose "authorized by [the] Order," the less stringent standard controls. Thus, VNA is required to show only that public disclosure of the documents "could cause," and not "would likely cause," oppression or competitive harm.  Conf. Order 5, PageID.39387.

Separately, Plaintiffs' argument "conflate[s] the standards for entering a protective order under Rule 26 with the vastly more demanding standards for sealing of judicial records from public view." *Shane Grp., Inc.*, 825 F.3d at 307.[20]  Litigants

---

[19]  Plaintiffs have also sought to justify their challenges by falsely claiming that VNA "spread misinformation about the [Bellwether I] trial as it happened in real time . . . with the desired effect that this misinformation would reach sitting and future jurors." Mot. 23-24, PageID.93703-04.  Judge Levy has specifically rejected this accusation.  The Court granted Plaintiffs extensive discovery to determine "whether there was *any way in which*" VNA was "targeting specific jurors to receive communications about the case." "And [the Court] learned *that they were not*. *There isn't evidence to show that had happened*." Tr. 68 (Jan. 22, 2024) (emphasis added).

[20]  Plaintiffs consistently but incorrectly rely on cases involving motions *to seal* judicial records. For example, *Ewalt* (cited on page 11 of Plaintiffs' Motion) involved an effort to redact information from publicly filed briefs and exhibits. 2022 U.S. Dist. LEXIS 66208, at *4. *Charvat v. EchoStar Satellite, LLC* (cited on page 13), determined whether to unseal documents filed in connection with a motion for summary judgment. 269 F.R.D. 654, 655-56 (S.D. Ohio 2010). *Ameriprise Fin. Servs., Inc. v. Reserve Fund* (cited on page 9), dealt with the propriety of sealing deposition transcripts attached to an amended complaint, 2008 U.S. Dist. LEXIS 144594, at *8-9 (D. Minn. Dec. 15, 2008). *Royal Park Invs. SA/NV v. Deutsche Bank*

face a high bar when they seek to maintain the confidentiality of adjudicatory records, because there is "a strong presumption in favor of openness as to court records." *Id.* at 305 (quotation marks omitted). But the issue here is whether VNA has the right to protect the confidentiality of private *discovery materials* that are not used to adjudicate the merits of this litigation. As courts in this judicial district have noted, "the 'good cause' standard in Rule 26(c) should not present a substantial hurdle to clear where the movant seeks a limited protective order concerning nonjudicial documents." *AFT Mich.*, 2023 U.S. Dist. LEXIS 62421, at *6.

## C.     The Court Should Deny Plaintiffs' De-Designation Requests

VNA requests that the Court find that VNA appropriately designated the 455 documents now at issue as "confidential" or "highly confidential."

### 1.     Most Of The Challenges Are Untimely

VNA designated most of the documents at issue as "confidential" during discovery for the Bellwether I action. *See* Kramer Decl. Ex. 1. Discovery in that action closed on November 13, 2020, and the trial began on February 28, 2022,

---

*Nat'l Tr. Co.* (cited at page 21), addressed the sealing of exhibits filed on "the public docket." 2016 U.S. Dist. LEXIS 173940, at *9 (S.D.N.Y. 2016).

The two cases Plaintiffs rely upon that arise in the discovery context—*Graff v. Haverhill N. Coke Co.*, 2014 U.S. Dist. LEXIS 13180, at *12 (S.D. Ohio Feb. 3, 2014), and *MSC Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 U.S. Dist. LEXIS 69107, at *13 (E.D. Mich. May 17, 2012)—both predate the Sixth Circuit's admonition in *Shane Group Inc.* not to "conflate[] the standards for entering a protective order under Rule 26 with the vastly more demanding standards for sealing off judicial records from public view." 825 F.3d at 307.

resulting in a mistrial on August 11, 2022. Accordingly, any challenge to the confidentiality designations for these documents was due, at the latest, by January 12, 2021. *See* Conf. Order 26, PageID.39408. Because Plaintiffs did not challenge the confidentiality designations for these documents until almost three years after the close of discovery in that action, their challenges are untimely, and should be denied on that basis alone.[21]

> ### 2.  The Documents Produced Pursuant To The District Court's July 2023 PR-Privilege Ruling Are Confidential[22]

In any event, VNA has good cause to maintain the confidentiality of the documents produced pursuant to the Court's July 2023 privilege orders. VNA believed (and continues to believe) that these documents were and are protected from disclosure to the attorney-client privilege or the work product doctrine.[23] Nevertheless, the Court ruled certain documents were not privileged. In compliance

---

[21] Indeed, Plaintiffs could have freely used these documents in discovery, depositions, and the Bellwether I trial, but did not do so at any point.

[22] This category aligns with Category 1 in Plaintiffs' Motion. For the Court's convenience, Exhibit 2 to the Kramer Declaration is a chart listing each PR-privileged document as to which VNA has good cause to maintain confidentiality, and the particularized bases for each such assertion.

[23] The Court recognized that these privilege claims were colorable. For example, it sustained VNA's privilege claims as to 20 of the 60 PR documents that the court reviewed *in camera*. Moreover, in December 2023, the court ruled that Mercury—one of VNA's PR consultants—"was hired, at least in part, to provide services that were integral to this litigation," so any "[a]ttorney-client privilege applies to VNA's counsel's communication with Mercury after 2019 made for the purpose of assisting with the litigation." Order 6, ECF No. 2764, PageID.91997.

with that ruling, VNA produced 392 documents.

The documents at issue are "confidential" under the Conf. Order.  For representative purposes, these documents include:

- **VWNAOS555574 [VEOLIA_1019943]:**  An email chain concerning an explanation of VNA's limited role in Flint proposed by VNA's PR consultants that was then forwarded to VNA's counsel.  VNA's outside counsel gave feedback on the proposed explanation, highlighting potential issues with the proposed explanation's framing.  VNA's in-house counsel then provided his own thoughts on the proposed pitch.

- **VWNAOS555522 [VEOLIA_1019634]**:  An email chain concerning a chronology created for the Flint water crisis.  VNA's in-house counsel gave feedback on the chronology and highlighted subsequent investigatory steps to bolster VNA's defense.  VNA's in-house counsel also described aspects of the opposing parties'—including plaintiffs—arguments to push back on.

These documents contain "private, non-public . . . information that is not readily ascertainable . . . by the public," and disclosure would likely cause—or could cause—"oppression" or "competitive disadvantage" by revealing VNA's litigation strategy.  Conf. Order 5, PageID.39387.

Separately, VNA has good cause to maintain confidentiality over these documents to preserve its appellate rights.  Historically, rulings that documents were not privileged could be immediately appealed under the collateral order doctrine, but the Supreme Court put an end to that practice in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009).  The Court nonetheless acknowledged that privilege rulings can "have implications beyond the case at hand."  *Id.* at 112.  Here,

if Plaintiffs were permitted to leak these documents to the media, it would as a
practical matter render moot any future appeal of the privilege ruling by VNA.[24]

### 3. The Designated Documents Related To The Detroit Water And Sewerage Department (DWSD) Are Confidential

VNA has good cause to maintain the confidentiality of documents related to
DWSD.[25]  To start, the Court ordered VNA to produce *any* documents that hit on
certain DWSD-related search terms, including "DWSD" and "peer review," even
when they were not relevant to Plaintiffs' claims.  Order 1-4, ECF No. 980,
PageID.25602-06.  VNA produced these documents in reliance on the Conf. Order.[26]
Having used the Conf. Order "to simplify and expedite proceedings," Plaintiffs
should not now be permitted to leak these (irrelevant) materials to the media.

In any event, these documents contain confidential information that, if
publicly disclosed would likely cause (or, at minimum, could cause) oppression and

---

[24]  Plaintiffs raise the specter of a party misusing privilege designations to shield a
document from the public, Mot. 8-9, PageID.93688-89, but that concern is
misplaced.  First, the Court accepted some of VNA's good-faith privilege assertions,
so there can be no assertion of impropriety here.  Second, the public's interest
attaches only when a party seeks to introduce documents produced in discovery in
an adjudicatory setting—which has not happened with the documents here.

[25]  This category aligns with Category 3 in Plaintiffs' Motion. Exhibit 3 to the
Kramer Declaration lists each DWSD-related document as to which VNA has good
cause to maintain confidentiality and a particularized basis for each assertion.

[26]  Indeed, the Court previously ruled that VNA's work in Detroit cannot serve as a
basis for liability in Flint.  *See* Order on VNA Mot. for Summ. J. 22, 17-cv-10164
ECF No. 606, PageID.42699.

competitive disadvantage.  These documents include:

- **VWNAOS312142 [VEOLIA_0960321]**:  A draft of section 3 of the peer review report that VNA prepared for DWSD.  The document includes recommendations concerning DWSD's restructuring of the plant capacity of its five plants, including the potential closure of specific plants and the predicted dollar savings for such a move.  The report also identifies specific ways for DWSD to revise its chemical treatment of water to improve efficiency and save costs and includes the projected savings these changes would have for each water treatment plant.  The report also assesses DWSD's laboratory operations and again identifies specific ways to streamline operations to improve efficiency and save costs.  The report also includes detailed financial information concerning DWSD's annual expenditures for each initiative.  And because it is a draft, the document includes internal comments on how to improve the analysis.  The report goes into detail on the work VNA does when preparing peer review reports, highlighting the areas that VNA focuses on.  Competitors would have unique insight on how VNA prepares its peer review reports, and they may accordingly reevaluate their own approaches.

- **VWNAOS528211 [VEOLIA_0953619]**:   A draft of the risk memo prepared for the DWSD project. The report summarizes the due diligence work that VNA has done for DWSD, including a step-by-step breakdown of the steps VNA took to complete its due diligence.  The memo also detailed how much VNA had spent to date and broke down the future expenses incurred to complete the project.  VNA also described in detail the proposed structure of term sheet for water management with DWSD.  The breakdown described both VNA's projected revenue from the agreement and an analysis of DWSD's projected savings.  The memo assessed the risks associated with the work, and it delineated the steps VNA would take to ensure that the agreement was finalized.  It reveals detailed insight into how VNA conducts due diligence, approaches its bids, and provides internal financial information for both VNA and DWSD.

These documents reflect VNA's process towards preparing work product for its customers, as well as how VNA bids for and ultimately procures work on behalf of those clients.  The documents include confidential financial details for both VNA

and DWSD, as well as strategic considerations that VNA's clients do not even see. Accordingly, disclosure of these documents to the public of these documents would likely cause (and, at the very least, could cause) oppression and competitive harm.[27]

### 4.    VNA's Business Records Are Confidential

VNA has shown good cause for designating the internal business records now at issue as confidential.[28]  These documents include:

- **VWNAOS559114 [VEOLIA_1043845]**: A compilation of every VNA consulting relationship across the United States.  It identifies each consultant with whom VNA has a relationship; the amount VNA pays to the consultant; the amount VNA has paid historically to the consultant over the course of the consulting relationship; and the nature and scope of the consultant's work for VNA, including the specific projects for which that consultant was retained.  VNA's consultants would learn of the different fees VNA pays to its consultants, and they may use that information to

---

[27] Plaintiffs argue that VNA has failed to meet its burden as to the DWSD-related documents because it has failed to meet the standard applicable for sealing judicial records "especially given the age of the challenged DWSD documents." Mot. 11, PageID.93691. As explained, Plaintiffs are wrong in claiming that VNA must meet the standard applicable to a motion to seal judicial records.  *See* pp. 13-18, *supra*.  Plaintiffs also err in suggesting that older documents may not be protected.  The Conf. Order itself expressly states that "current" or "recent" business planning documents, financial documents and marketing plans would qualify for "highly confidential" treatment.  Conf. Order 6, PageID.39388.  Older documents are eligible for designation under the less stringent "confidential" standards.  *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 570-71 (E.D. Va. 2021) (holding insurer demonstrated good cause for maintaining confidentiality of corporate manual outlining insurer's former procedures).

[28] This category aligns with Categories 2, 4, 6, 8, 9, 10, 11, 12, and 13 in Plaintiffs' Motion. For the Court's convenience, Exhibit 4 to the Kramer Declaration lists each business record for which VNA has good cause to maintain confidentiality over the business documents and a particularized basis for each such assertion.

renegotiate their own agreements or demand higher fees.

- **VWNAOS225484 [VEOLIA_0822429]**:  VNA's internal environmental incident reporting protocol. The protocol sets forth a detailed process that VNA's employees must adhere to whenever an environmental incident occurs.  The process delineates the specific assessments VNA employees must make for each environmental incident, including whether the incident was or was not preventable (and why), whether the incident requires immediate remediation, the reporting chain of command, and the timing for each step.  VNA's competitors could copy this protocol at no cost, or they could take steps to improve upon their own reporting protocols.

These are but a few examples of the business records that VNA seeks to protect.  The documents vary from business documents containing detailed financial information concerning VNA and its clients, consultants and suppliers, to work VNA did on behalf of a wide range of clients, to how VNA molds its bids to be successful.  VNA has shown good cause for the continuing confidentiality of these documents because their public disclosure would likely—or could—cause VNA oppression or competitive disadvantage.

### 5.   VNA's Public Relations Documents Are Confidential

VNA also has good cause to maintain confidentiality over the PR-related documents that it produced without a claim of privilege.[29]  These documents include:

- **VWNAOS527000 [VEOLIA_0419278]**:  A memo prepared by one of the VNA's PR consultants—Rasky—assessing how best to respond to press coverage on VNA's work in Pittsburgh.  The document provides both

---

[29]  This category aligns with Categories 5 and 7 in Plaintiffs' Motion.  Exhibit 5 to the Kramer Declaration lists each non-privileged PR-related document as to which VNA has good cause to maintain confidentiality over the non-privileged PR documents and a particularized basis for each such assertion.

short-term and long-term recommendations on how VNA should respond to negative coverage on VNA's mediation with the Pittsburgh water authority.  The document identifies the risk that VNA's competitors could capitalize on negative press coverage and undermine VNA's relationship with other clients.  The memo lays out specific steps VNA can take to mitigate this risk, both in the Pittsburgh region and across the United States.  Disclosure of this document could provide fodder to VNA's competitors, who may use it to try to undermine VNA with current and prospective clients.

- **VWNAOS527022 [VEOLIA_0419559]**:  An internal memorandum addressing VNA's PR strategy across the United States.  The memorandum identifies each ongoing public-relations activity in the oil-and-gas/petrochemical industry, VNA's media relations strategy across ten cities, and identifies initiatives that VNA is pursuing to advance its goals.  This document gives insight into how VNA approaches its U.S.-wide media-relations strategy, and competitors could use the information in this document to either undermine VNA or mimic its approach to PR.

Public relations play an important role for both VNA and its competitors.  Disclosing these documents could—if not likely would—cause VNA oppression or competitive disadvantage.

\* \* \* \*

At bottom, the documents at issue here are private and sensitive; they are not accessible to the public; and they are not adjudicatory records. The Order does not authorize Plaintiffs to leak these documents to the media. Because VNA could and would suffer oppression and competitive disadvantage were these documents to be publicly disclosed, it has shown good cause to maintain their confidentiality.

## CONCLUSION

The Court should deny Plaintiffs' motion to compel.

DATED: February 14, 2024

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*                          */s/ Michael A. Olsen*
James M. Campbell                               Michael A. Olsen
Alaina N. Devine                                71 South Wacker Drive
20 City Square, Suite 300                       Chicago, IL 60606
Boston, MA 02129                                (312) 7012-7120
(617) 241-3000                                  molesen@mayerbrown.com
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and
Veolia Water North America Operating Services, LLC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2024, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,
*/s/ James M. Campbell*
James M. Campbell