UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *IN RE*: FLINT WATER CASES. | Case No. 5:16-cv-10444-JEL-MKM<br><br>Hon. Judith E. Levy, District Judge<br>Hon. Elizabeth A. Stafford, Magistrate Judge |

_____

## DECLARATION OF MICHAEL A. OLSEN

I, Michael A. Olsen, declare as follows:

1. I am a Partner at Mayer Brown LLP. I represent Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) in the above-captioned matter. I make this Declaration pursuant to the Court's February 13, 2024, orders.

2. I am informed and believe that:

   a. There are three written agreements between Actum LLC (or its affiliates) and VNA: (i) a Professional Services Agreement (PSA) between VNA and Actum CA Opco, LLC, effective January 1, 2022 with Statement of Work No. 1 for the Suez Rebranding Project; (ii) a Statement of Work No. 2 effective June 1, 2022 that was incorporated into the PSA for political strategy and media relations services (not specific to Flint or the Flint litigation); and (iii) an unsigned PSA between VNA and Actum CA Opco,

1

LLC, effective January 1, 2024, with a Statement of Work relating to Community Engagement (workforce development);

  b. There are no written agreements between Actum (or any of its affiliates) and any of Veolia Environnement S.A. (VE); Mayer Brown LLP; Campbell Conroy & O'Neil, P.C; or any other counsel for VE or its subsidiaries;

  c. There is no written agreement between Actum LLC (or its affiliates), and VE; any of its subsidiaries (including VNA); Mayer Brown LLP; Campbell Conroy & O'Neil, P.C.; or any other counsel for VE or its subsidiaries relating to Actum's work for VNA as it relates to this litigation; and

  d. In late 2021, when Actum was formed, VE orally agreed that Actum would provide services to VE and its subsidiaries in the same manner that Mercury Public Affairs had provided services to VE and its subsidiaries (including Actum's work on behalf of VNA in connection with this litigation). Neither Mayer Brown LLP nor Campbell Conroy & O'Neil, P.C., were involved in these discussions. Neither firm thereafter directed any of the work that Actum engaged in on behalf of VE or its subsidiaries.

3. No lawyer for VE or VNA—including the lawyers at Mayer Brown LLP and Campbell Conroy & O'Neil, P.C.—had any knowledge of Actum's efforts

to contact Flint residents. Having made due inquiry with Actum's counsel in response to the Court's order, I am now informed that the following Actum employees contacted persons in Flint regarding Corey Stern within the last year: (i) Michael McKeon; (ii) Paul Persaud; and (iii) Rachel Noerdlinger.

4. I am now informed that the following Actum employees were involved in coming up with a list of who to contact in Flint and what to say to them: (i) Brent Petrone; (ii) Katya Myagkova; and (iii) Mr. McKeon.

5. I am now informed that Actum employees contacted or attempted to contact the following Flint residents: (i) Bernadel Jefferson; (ii) Pastor Kevin Thompson; (iii) Arthur Harris; (iv) Arthur Woodson; and (v) Amariyanna Copeny. I am further informed that:

    a. Mr. McKeon and Mr. Persaud contacted Ms. Jefferson by phone. They told her that the New York Post was seeking comment for a potential story regarding Corey Stern's comments on a podcast. They asked her if she would be willing to speak to the reporter. In response, she requested, and Mr. McKeon provided by text message, an audio clip of Mr. Stern's comments during the podcast. There were no further communications.

    b. Mr. Persaud attempted to reach Pastor Thompson by phone. Mr. Persaud left a message with Pastor Thompson's secretary. Mr. Persaud stated that the New York Post was seeking comment for a potential story regarding

Corey Stern's comments on a podcast and asked if he would be willing to speak to the reporter. (Mr. Persaud did not state that he was a reporter for the New York Post.) There were no further communications.

    c.    Mr. Persaud attempted to contact Alfred Harris by phone. Mr. Harris did not answer the call. Mr. Persaud did not leave a message. There were no further communications.

    d.    Mr. McKeon and Mr. Persaud contacted Mr. Woodson by phone. They asked to speak with Alfred Harris. Mr. Woodson advised him that they had called the wrong number. Mr. Woodson thereafter called Mr. Persaud back. After Mr. Woodson identified himself, Mr. Persaud stated that the New York Post was seeking comment for a potential story regarding Corey Stern's comments on a podcast and asked if he would be willing to speak to the reporter. Mr. Woodson responded by saying that he did not always agree with Mr. Stern, but that he did not wish to comment for the story. Mr. Woodson also asserted that Veolia was upset with Mr. Stern because of his claim that Veolia had geotargeted jurors. Either Mr. McKeon or Mr. Persaud told him that the judge had ruled that those claims were not true. There were no further communications.

    e.    Ms. Noerdlinger contacted Ms. Copeny via Instagram. Ms. Noerdlinger informed Ms. Copeny that: (a) a reporter from the New York Post

4

was interested in speaking with her about the Flint Water Crisis and Mr. Stern's comments; (b) Mr. Stern and the other lawyers were getting $200 million in legal fees; (c) Roland Martin was doing a story as well. Ms. Copeny asked Ms. Noerdlinger to forward the audio clip of Mr. Stern's comments to her mother. Ms. Noerdlinger did so via text message. There were no further communications.

6. I am informed that Actum's external counsel is Ashlee N. Lin, who is a partner at Eisner LLP in Los Angeles, California. I am further informed that Ms. Lin communicated with Actum regarding some of its work relating to Mr. Stern's comments on the podcast. I am further informed that Actum's activities described in this declaration were not done at the direction of her or any other counsel, including the lawyers from VE; VNA; Mayer Brown LLP; and Campbell Conroy & O'Neil, P.C.

7. None of the lawyers from VE; VNA; Mayer Brown LLP; or Campbell Conroy & O'Neil, P.C., had any communication with Actum regarding the matters that gave rise to the February 13, 2024, hearing. As Mr. Campbell and I represented in Court on February 13, 2024, neither Mr. Campbell nor I, nor any member of our law firms, had any knowledge of or involvement with the activities that were the subject of the Court's inquiries. In particular, until we were copied on Mr. Stern's letter to the Court on February 6, 2024, no lawyer from VE; VNA; Mayer Brown

5

LLP; or Campbell Conroy & O'Neil, P.C., had any knowledge or involvement in Actum's efforts to contact people in Flint regarding the referenced news story about Mr. Stern. The only lawyers from VE; VNA; Mayer Brown LLP; or Campbell Conroy & O'Neil, P.C., to have had any communication with anyone at Actum about VNA's public relations campaign since January 2024 are Kelly Kramer and me.

    a.    I spoke with Actum (Chapin Fay and Bari Golin-Blaugrund) on February 1, 2024, in advance of an interview with ABC12 regarding the settlement between VNA and the Class Plaintiffs. Ms. Golin-Blaugrund also sat in on that interview. I also spoke with Actum counsel (Ms. Linn) on February 16, 2024.

    b.    I am informed that Mr. Kramer had the following contacts with Actum:

        i.    1/2/24: Zoom call with Actum (Mr. Fay, Ms. Golin-Blaugrund, and Ms. Myagkova) regarding upcoming hearings and deadlines;

        ii.    1/3/24: Forwarded press inquiry to Ms. Golin-Blaugrund regarding ruling on motions in limine via email;

        iii.    1/9/24: Zoom call with Actum (Mr. Fay, Ms. Golin-Blaugrund, Ms. Myagkova) regarding upcoming hearings and deadlines;

6

iv. 1/10/24: Emails and teleconference with Ms. Golin-Blaugrund regarding history and evolution of class issues trials;

v. 1/18/24: Zoom call with Actum (Mr. Fay, Ms. Golin-Blaugrund, Ms. Myagkova, Elena Olivieri, and Mr. Petrone) regarding upcoming hearings and deadlines;

vi. 1/22/24: Forwarded press inquiry to Ms. Golin-Blaugrund via email, teleconference, and texts regarding rulings on motions in limine;

vii. 1/23/24: Teleconference and texts with Ms. Golin-Blaugrund regarding rulings on motions in limine;

viii. 1/30/24: Zoom call and teleconference regarding upcoming hearings and deadlines;

ix. 1/31/24: Email with Ms. Golin-Blaugrund regarding Detroit News story;

x. 2/1/24: Email court documents to Ms. Golin-Blaugrund; teleconference with Ms. Golin-Blaugrund regarding class settlement; Zoom with Mr. Fay and Ms. Golin-Blaugrund and email with Ms. Golin-Blaugrund regarding ABC12 interview; email press story to Ms. Golin-Blaugrund regarding settlement; email to Ms. Golin-Blaugrund

7

regarding Detroit News story; emails, texts and teleconference with Ms. Golin-Blaugrund regarding settlement-related press inquiries;

xi. 2/2/24: Email and texts with Ms. Golin-Blaugrund regarding coverage of settlement;

xii. 2/6/24: Teleconference and texts with Actum regarding status of litigation (all prior to and unrelated to Mr. Stern's letter to the Court or any of the issues raised therein);

xiii. 2/7/24: Teleconference and texts with Actum counsel (Ms. Lin);

xiv. 2/9/24: Teleconference and texts with Actum counsel (Ms. Lin);

xv. 2/10/24: Teleconference with Actum counsel (Ms. Lin);

xvi. 2/11/24: Teleconferences and email with Actum counsel (Ms. Lin);

xvii. 2/12/24: Teleconference, email and text with Actum counsel (Ms. Lin);

xviii. 2/13/24: Teleconferences and texts with Actum counsel (Ms. Lin);

xix. 2/14/24: Teleconferences with Actum counsel (Ms. Lin);

8

    xx. 2/15/24: Teleconferences with Actum counsel (Ms. Lin); and

    xxi. 2/16/24: Teleconferences and Teams meeting with Actum counsel (Ms. Lin).

8. No lawyer from VE, VNA, Mayer Brown LLP, or Campbell Conroy & O'Neil, P.C., had any knowledge of the truck that circled the courthouse nor did any lawyer communicate with anyone at Actum or anyone else regarding the truck in advance of the hearing.

9. No employees for VE or VNA had any knowledge regarding the truck that circulated the courthouse. I am informed by Actum's counsel that Mr. Goncharenko, Mr. McKeon, Ms. Golin-Blaugrund, Mr. Petrone, and Katie Leach were involved in the arrangement of the truck.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

Executed on February 16, 2024
Chicago, Illinois

            */s/ Michael B. Olsen*
            Michael B. Olsen

9