# EXHIBIT A

**LEVY KONIGSBERG LLP**
**ATTORNEYS AT LAW**
**605 THIRD AVENUE, 33RD FLOOR**
**NEW YORK, N.Y. 10158**

---

**NEW JERSEY OFFICE**
**QUAKERBRIDGE EXECUTIVE OFFICE**
**101 GROVERS MILL ROAD**
**LAWRENCEVILLE, NJ 08648**
**TELEPHONE: (609) 720-0400**
**FAX: (609) 720-0457**

**(212) 605-6200**
**FAX: (212) 605-6290**
**WWW.LEVYLAW.COM**

**ATLANTA OFFICE**
**ONE GLENLAKE PARKWAY, SUITE 700**
**ATLANTA, GEORGIA 30328**
**TELEPHONE: (800) 315-3806**
**FAX: (212) 605-6290**

WRITER'S DIRECT EMAIL: MMaimon@levylaw.com

FEBRUARY 19, 2023

**VIA EMAIL (SETH_MAYER@MIED.USCOURTS.GOV)**
Honorable Judith E. Levy
United States District Court – Eastern District of Michigan
Federal Building
200 East Liberty Street
Ann Arbor, Michigan 48104

**RE:** **IN RE FLINT WATER LITIGATION – CASE NO. 16-CV-10444**
**PUBLIC ATTACKS ON COUNSEL**

Dear Judge Levy:

I write as a follow-up to my February 14, 2024 communication, and with regard to the Declaration of Michael A. Olsen ("Declaration"),[1] submitted pursuant to the Court's February 13, 2024, orders. ECF No. 2847 (Order Following February 13, 2024 Hearing); *see also* ECF No. 2848 (Transcript of February 13, 2024 Hearing). In short, Actum is (and since 2021 has been) providing work on behalf of the Veolia Defendants ("Veolia") in connection with this litigation. Additionally, Actum has been providing these services "in the same manner that Mercury Public Affairs had[.]" *Id.* Based on prior filings related to Mercury and Mr. Olsen's representations, Actum has been "assist[ing] in litigation," and is charged with developing "legal themes related to the defense of this case." ECF No. 2565, PageID.84702; *see also* ECF No. 2565-1, PageID.84705. Thus, it is Veolia's actions – through its agent Actum – that are at issue here, and the Court's authority regarding the parties extends to Actum, as Veolia's agent.

While the Court's initial inquiry focused more on what Veolia's counsel knew, and while certain questions in that regard must still be answered, we respectfully suggest that the next steps should concentrate on Veolia's campaign (through Actum) against Mr. Stern, as follows:

**1. PAYMENTS TO ACTUM AND DESCRIPTION OF WORK PERFORMED**

Mr. Olsen acknowledges that Veolia pays Actum's bills. *See* ECF No. 2848, PageID94099. Billing records and statements will provide information about work performed and time spent on

---

[1] *See* ECF No. 2855 (Declaration).

particular projects. Further, documentation as to how bills and payments are and were transmitted will shed light on which individuals were directly aware of (and likely approving) Actum's work.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a sworn statement regarding total monies paid to Actum since 2021; total outstanding monies owed to Actum for work performed since 2021; and require them to produce all communications and documents related thereto, including but not limited to billing statements and how said statements were transmitted.**

2. **FURTHER INQUIRY REGARDING CONTACT WITH FLINT RESIDENTS**

Mr. Olsen describes (in ambiguous and vague terms) certain interactions, and the transmission of information, between Actum and Flint residents. ECF No. 2855, PageID.94278-94281. In that regard, I have recently become aware of additional communications between Actum and Flint residents, more than a year ago. An Actum employee, Anthony Thomas, reached out to Flint residents in late 2022. Mr. Thomas expressed in writing that a "client" he "represents," had an interest in investing/making a difference in Flint, "especially for children/youth[,]" and that his client wanted to support the "Latinx" community.[2] Mr. Thomas is not mentioned in Mr. Olsen's Declaration.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a sworn statement regarding all communication between them and Flint residents since 2021 and require them to produce all communications and documents related thereto, including documents and audio files related to those contacts between Actum and Flint residents as described by Mr. Olsen in his Declaration.**

3. **WHO INITIATED CERTAIN PRINT MEDIA CONTACT**

During the February 13, 2024 hearing, Attorney Olsen claimed:

In this case, there was a reporter from the New York Post who was working on a story or profile about Mr. Stern. Actum talked to that reporter. One of the subject areas for that discussion, that article[,] was the podcast that Mr. Stern did years ago. The reporter asked Actum if they knew people in the community who might be willing to speak on the record about that.

*See* ECF No. 2848, PageID.94092. The reporter Mr. Olsen references is apparently Carl Campinele. *See* ECF No.2845, PageID.94064 (Supplemental Declaration of Arthur Woodson). Mr. Olsen's comments insinuate that Campinele, presumably an independent reporter, affirmatively reached out to Veolia to help with community contacts. But a review of Campinele's work for the New York Post shows he has not published a "profile" piece.[3] Further, it would be odd for an independent reporter to enlist the services of a non-independent Defendant, for community contacts who could discuss a legal adversary representing many of them. It is more

---

[2] I am in possession of communications supporting this statement and can furnish them to the Court upon request.

[3] *See* New York Post, *Carl Campinele, The Archive,* https://nypost.com/author/carl-campanile/ (last visited February 17, 2024).

2

likely, and much more consistent with recent events, that Actum reached out to Campinele and made Campinele aware of Mr. Stern's comments from 2018.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a sworn statement regarding who initiated contact as between them and Campinele about the alleged "profile piece;" when and how Veolia, its counsel, and its agents discovered the 2018 comments; and require them to produce all communications and documents related thereto.**

**4.   WHO INITIATED CONTACT WITH THE *ROLAND MARTIN UNFILTERED* SHOW**

Veolia was also in communication with *Roland Martin Unfiltered* about Mr. Stern and knew in advance that Mr. Stern's 2018 comments would be the subject of an upcoming episode. *See* ECF No.2845, PageID.94064 (Supplemental Declaration of Arthur Woodson). In fact, the airing of that episode formed the basis of Veolia's February 8, 2024 press release, wherein Veolia referred to Mr. Stern as having made "racist remarks." *See* ECF No. 2845, PageId.94066. As was the case with the New York Post, it is more likely that Actum reached out to *Roland Martin Unfiltered* than vice versa.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a sworn statement regarding who initiated contact as between them and *Roland Martin Unfiltered*; and require them to produce all communications and documents related thereto.**

**5.   GUIDEPOST SOLUTIONS**

During the February 13, 2024 hearing, I advised the Court that approximately one year ago, I became aware of a private investigation firm, Guidepost Solutions ("Guidepost"), which was contacting Attorney Stern's former associates and colleagues. *See* ECF No. 2848, PageID. 94110-94111. In light of recent events, and as I stated on February 13, we now suspect those inquiries, and the investigation were related to (and perhaps the first steps in) the ongoing attacks on Mr. Stern. *Id.*

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a sworn statement regarding any knowledge of any Guidepost investigation into Mr. Stern; and require them to produce all communications and documents related thereto.**

**6.   ACTUM'S PROCUREMENT OF THE TRUCK AND CREATION OF THE WEBSITE**

We have learned that Actum, and the following individuals from Actum, were responsible for arranging a truck that circled the federal courthouse more than fifty times on February 13, 2024, between 1:30 p.m. and 4:00 p.m., blaring Attorney Stern's voice and promoting a defamatory website about him created by Actum:[4]

- Kirill Goncharenko (Actum Founder and Managing Partner);[5]

---

[4] The subject website is registered to Actum, and Actum arranged for the subject truck. *See* https://www.whoxy.com/therealcoreystern.com (last visited February 18, 2024); *see also* ECF No. 2855, PageID.94285.

[5] *See* https://actumllc.com/people/kirill-goncharenko/ (last visited February 18, 2024).

3

- Michael McKeon (Actum Partner);[6]
- Bari Golin-Blaugrund (Actum Senior Vice President);[7]
- Brent Patrone (Actum Senior Vice President);[8] and
- Katie Leach (Actum Director).[9]

Further, we know that the aforementioned truck was driven by man named Robert, who was being paid $18.00 per hour, and that the truck was provided by a company called CANTMISS.US., which is headquartered in Norcross, Georgia. *See* https://cantmiss.us/ (last visited February 18, 2024). Thus, because Actum was "assist[ing] in litigation," and developing "legal themes related to the defense of this case," there are serious questions about how arranging the truck and creating/publishing the website advanced these goals. *See* ECF No. 2565, PageID.84702; *see also* ECF No. 2565-1, PageID.84705.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a declaration as to what the purpose the truck and website served in advancing the litigation and legal themes related to the defense of this case; what role each of these individuals played in this phase of Veolia's defense; with whom these individuals discussed these efforts; and to produce any and all communications, drafts or other documents related to the truck, and all communications and documents related to the creation and content of the subject website, including those regarding how it came down.[10]**

### 7. VEOLIA PRESS RELEASES

Mr. Olsen admits that at least he and his partner, Mr. Kramer, have had communications with Actum regarding public messaging related to this litigation throughout 2024. ECF No. 2855, PageID.94282-94285. Mr. Olsen has not, however, addressed two recent Veolia press releases, which attack Mr. Stern. The first is from January 29, 2024, wherein Veolia describes Attorney Stern as being engaged in a "shameful scheme" to "make as much money as possible;" the second is from February 8, 2024, wherein Veolia describes Mr. Stern as having made "racist remarks." *See* ECF No. 2842-3, PageID.94050; *see also* ECF No. 2845, PageId.94066.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a declaration as to who discussed, drafted, reviewed, and approved these press releases, and to produce any and all communications, drafts or other documents related to them.**

### 8. COUNSEL'S ACTIONS SINCE FEBRUARY 6, 2024

Mr. Olsen claims that no attorney from Mayer Brown had knowledge of Actum's efforts to contact Flint residents; directed Actum's activities; or had any communication with Actum regarding the matters that gave rise to the February 13, 2024, hearing. ECF No. 2855,

---

[6] *See* https://actumllc.com/people/michael-mckeon/ (last visited February 18, 2024).
[7] *See* https://actumllc.com/people/bari-golin-blaugrund/ (last visited February 18, 2024). Ms. Golin-Blaugrund was also responsible for disseminating the February 8, 2024 Press Release, describing Attorney Stern's comments as "racist." *See* ECF No. 2845 PageID.94066.
[8] *See* https://actumllc.com/people/brent-petrone/ (last visited February 18, 2024).
[9] *See* https://actumllc.com/people/katie-leach/ (last visited February 18, 2024).
[10] Despite no Actum or Veolia employees being present at the February 13 hearing, the website was taken down within hours thereof.

4

PageID.94278-94281. Mr. Olsen also disavows that any attorney had knowledge of the aforementioned truck or website. He does, however, ambiguously describe twenty-one interactions between his partner, Kelly Kramer, and Actum, between January 2, 2024 and February 16, 2024. *Id.* at PageID.94282-94285. Seven of these communications occurred between February 6, 2024 (the day Mr. Stern transmitted his correspondence to the Court) and February 13, 2024 (the day of the hearing).

As I pointed out at the recent hearing, there is no dispute that by February 6, 2024, Veolia's attorneys were aware of our concerns regarding Veolia's efforts to contact Flint residents and to place a negative story about Mr. Stern in the public domain, with the intent of harming him personally, and him and our law firm professionally. *See* ECF No. 2842-1. Mr. Olsen's Declaration does not to claim counsel's unawareness of Veolia's efforts to place such a story in the public domain. Further, Veolia continues to attack Attorney Stern, as evidenced by a February 15, 2024 posting on X (formerly Twitter), through Veolia's handle @VNAFlintFacts.com.[11] This not only shows that the hearing held on February 13, 2024 and the Court's Orders during and thereafter have not deterred Veolia in its campaign to attack Mr. Stern but raises questions about the knowledge and involvement of its counsel since the issue was first raised.

**Plaintiffs therefore request the Court order Veolia, its counsel, and its agents to provide a declaration as to who knew and what they knew about the continued efforts (since February 6, 2024) to place stories about Mr. Stern in the public domain; when they learned of these efforts; with whom they discussed these efforts; what role each participant played in these efforts; and to produce any and all communications, drafts or other documents related to them. This production should include all Zoom recordings; Microsoft Teams recordings, audio recordings, emails, text messages, and other documents as described by Mr. Olsen.**

We look forward to reviewing and evaluating the information described herein, so we can more fully determine the appropriate form(s) of relief we will seek.

Respectfully,

**LEVY KONIGSBERG, LLP**

*/s/ Moshe Maimon*
Moshe Maimon

Cc:   Hunter Shkolnik, Esq.
     Counsel for Veolia

---

[11] *See* https://twitter.com/ATLBlackStar/status/1758217430537543782 (last visited February 18, 2024).