# MAYER | BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
United States of America

T: +1 312 782 0600

mayerbrown.com

February 20, 2024

**Michael A. Olsen**
T: 312.701.7120
molsen@mayerbrown.com

VIA ECF

Honorable Judith E. Levy
U.S. District Court for the Eastern District of Michigan
Federal Building
200 East Liberty Street
Ann Arbor, Michigan 48104

Re:    Flint Water Cases

Your Honor:

We write in response to Mr. Moshe Maimon's letter of February 19, 2024, requesting that the Court require Veolia North America (VNA), Actum, and VNA's counsel to provide additional information to the Court on a variety of topics having nothing to do with the merits of this litigation or the conduct of the parties or counsel in proceedings before the Court.

To start, VNA perceives no basis for the Court to require one-sided disclosures about media relations.  Mr. Stern and Mr. Maimon—who, unlike the parties, are officers of the court bound by the Michigan Rules of Professional Conduct—have both made pejorative extrajudicial statements about VNA.  For instance, early in the Bellwether I trial, Mr. Stern told the media that VNA was lying about its activity in Flint.[1]  Then, on the eve of closing argument, Levy Konigsberg LLP posted a video to its Twitter page in which Mr. Maimon declared that VNA had engaged in a crime.[2]  After a mistrial was declared, Mr. Stern told the media an evolving tale about the jury's deliberations (initially, he claimed that seven of the eight jurors wanted to find VNA liable;[3] he soon revised that story to say that all eight of the jurors wanted to find VNA liable).[4]  According to the jurors with whom VNA spoke, Mr. Stern's claims were false.  Finally, Mr. Stern accused VNA of targeting jurors with Google ads,[5] an allegation that this Court has found—after roughly 18 months of intrusive and costly discovery—to be unsupported by any

---

[1]    *See* Cara Salvatore, "Ex-Mich. Gov. Refuses to Testify on Flint Despite Court Order," Law360 (Mar. 25, 2022) (Mr. Stern:  "[VNA's] 'best' defense is the creation of chaos to district the jury from [its] own lies and failures.").

[2]    *See* Levy Konigsberg, Tweet (July 19, 2022).

[3]    *See, e.g.,* Ed White, "Jury Can't Reach Verdict in Engineers' Flint in Engineers' Flint Water Trial," AP (Aug 11, 2022) (Mr. Stern said that he was "only one juror shy from winning the case").

[4]    *See* Ron Fonger, "Consultant wants slide presentation from Flint kids in water crisis mistrial," MI Live (Sep. 7, 2022) (Mr. Stern:  "Perhaps (Veolia) is trying to dig in and determine why all eight members of the jury determined (it) was liable….").

[5]    Kayla Ruble, "Company sued over Flint's water crisis wages digital PR war during trial," The Detroit News (Sept. 8, 2022) (quoting Mr. Stern as saying that Veolia engaged in an "insidious" ad campaign).

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England & Wales), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian law partnership).

762298317.5

The Honorable Judith E. Levy
February 20, 2024
Page 2

evidence.[6] VNA does not believe that PR-related discovery is relevant to any of the parties' claims or defenses, but if the Court is inclined to require further disclosures from VNA as to its contacts with the media, then it should also require Plaintiffs' counsel to make reciprocal disclosures.[7]

Next, Mr. Maimon's letter does not accurately describe Actum's relationship with either Mayer Brown LLP or Campbell, Conroy & O'Neil, P.C. As I noted in my Declaration, when Actum was founded in 2021, it agreed with Veolia Environnement S.A. (VE)—a non-party—to continue performing work in the same manner as had Mercury Public Affairs. But, as I further stated, neither Mayer Brown LLP nor Campbell, Conroy & O'Neil, P.C., were parties to these discussions. Further, unlike with Mercury Public Affairs, neither firm contracted with Actum or directed its activities.

As for Plaintiffs' specific requests, Mr. Maimon cites no authority to justify any of them. For example, Plaintiffs request that the Court require VNA to disclose payments made to and communications with Actum, but any such payments or communications have no bearing on whether VNA breached its duty of care while working in Flint eight years ago. Nor do payments to Actum suggest any sort of impropriety.

Similarly, Mr. Maimon urges the Court to require VNA, Actum, and VNA's counsel to make further disclosures regarding Actum's contacts with Flint residents. But "parties to a matter may communicate directly with each other…." MRPC 4.2 (Comment). VNA respectfully submits that there is no good basis to justify further disclosures into lawful and permissible conduct. Nevertheless, if the Court does require further disclosures regarding represented persons, then it should likewise require Levy Konigsberg LLP to disclose whether any of its lawyers have communicated with Flint residents who are represented by other counsel, such as Mr. Woodson.

Mr. Maimon also urges the Court to require VNA and its counsel to disclose the interactions between Actum and both *The New York Post* and *The Roland Martin Show*. Plaintiffs demand to know who first discovered Mr. Stern's podcast comments and who initiated discussions about them. But these requests are not relevant to the claims or defenses in the case, and parties (and their PR firms) have a First Amendment right to speak with the media—regardless of who initiates the conversation.

Mr. Maimon further urges the Court to require VNA and its counsel to disclose any information they may have regarding an investigation that Guidepost Solutions may have conducted into Mr.

---

[6] Transcript (Jan. 22, 2024) at 68 (The Court: "[T]he concern I had … related to Bellwether I was whether there was any way in which … defendants in the case were targeting specific jurors to receive communications about the case. And I learned that they were not. There isn't evidence to show that had happened.").

[7] For example, when did Mr. Maimon and Mr. Stern film the video in which Mr. Maimon asserted that VNA committed a crime? Did they prepare a script? How much did it cost? Why was it posted to Twitter on the eve of closing argument? Relatedly, who initiated the contact with The Detroit News regarding Mr. Stern's claims that VNA targeted jurors with Google ads?

Stern.  Not only is this rank speculation—Mr. Maimon does not cite any facts to suggest that VNA hired Guidepost—but it is also irrelevant to the parties' claims and defenses.

Finally, Mr. Maimon asks the Court to require VNA and its counsel to disclose what litigation purpose the billboard truck served.  As I noted in my Declaration, my co-counsel and I had no knowledge of the truck and, from our perspective, it served no litigation purpose.

We respect the Court's authority to inquire into matters pertaining to the conduct of counsel in matters before the Court.  But Plaintiffs' latest requests go well beyond that which is appropriate.  VNA respectfully requests that the Court decline to require any of them.


Sincerely,


*/s/ Michael A. Olsen*
Michael A. Olsen