UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |

_____

**VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO BELLWETHER III PLAINTIFFS' MOTION TO <u>STRIKE OR OTHERWISE LIMIT CERTAIN EXPERT TESTIMONY</u>**

## INTRODUCTION

For the Bellwether III trial, Plaintiffs have designated eleven retained experts and VNA has designated eighteen. Although VNA designated more experts than Plaintiffs, all of VNA's experts bring unique qualifications and perspectives to this case and offer unique opinions, and thus their opinions are not cumulative. While both sides' experts inevitably offer some overlapping opinions, VNA has no intention of offering needlessly cumulative testimony during its trial time. As in any case, VNA's decisions on which experts to call, and on what topics, will be heavily influenced by how Plaintiffs choose to present their case at trial.

Plaintiffs attempt to hamstring VNA's defense at the outset by seeking an "*immediate*" order—months before trial and with expert discovery still underway—limiting the number of VNA experts, ordering VNA to identify which experts it actually intends to call at trial, and striking the remainder. Plaintiffs offer no authority for such an extraordinary order at this stage of the litigation. To the contrary, courts consistently reject the relief sought by Plaintiffs—including in the very cases they cite. This Court should do the same.

## ARGUMENT

### I. Plaintiffs' Motion Is Premature

Plaintiffs moved to strike expert testimony under Rule 403, which allows the Court to exclude evidence "if its probative value is substantially outweighed by a

1

danger of . . . needlessly presenting cumulative evidence." Fed. R. Evid. 403. But Rule 403 applies to the evidence to be presented at trial. Nothing in Rule 403 authorizes a court to "strike" expert testimony as cumulative several months before trial, while expert discovery is still underway, and before dispositive motions even have been filed. *See, e.g.*, *Forest Lab'ys, Inc. v. Caraco Pharm. Lab'ys, Ltd.*, No. 06-cv-13143, 2008 WL 11357856, at *2 (E.D. Mich. Dec. 10, 2008) (motion to strike is not an appropriate vehicle for seeking to bar purportedly duplicative expert testimony).

Although Plaintiffs assert that "[t]he correct time to impose limitations is now," they do not cite a single case limiting expert testimony this far before trial. Pls. Mot. to Strike (Mot.) 8, ECF No. 2850, PageID.94239. Courts have consistently declined to do so—even much closer to trial—because they cannot tell this far ahead of trial whether the disclosed experts "are guaranteed to testify at all, or, more importantly, to testify about [cumulative issues]." *United States v. Akers*, No. 19-cr-7, 2020 WL 1923179, at *7 (E.D. Ky. Apr. 21, 2020); *see, e.g.*, *VJ, LLC v. State Auto Prop. & Cas. Ins.*, No. 14-cv-2919, 2016 WL 7497580, at *3 (W.D. Tenn. July 11, 2016) ("Excluding expert testimony as redundant is premature if there are pending dispositive motions and the trial is sufficiently far away that the party proffering the expert has not finalized its decision about who will testify . . . and in what order."); *Adams v. Cooper Indus., Inc.*, No. 03-cv-476, 2006 WL 2983054, at

\*11 (E.D. Ky. Oct. 17, 2006) (it would be "premature" to exclude expert testimony as cumulative three months before trial).[1]

Plaintiffs cite *Piskura v. Taser International*, No. 10-cv-248, 2012 WL 1267990 (S.D. Ohio Apr. 13, 2012), but that decision expressly rejects Plaintiffs' arguments. Similar to here, the *Piskura* plaintiffs sought to bar ten of defendant's fifteen designated experts as cumulative while discovery was underway. The court denied the plaintiffs' motion as "premature," finding that the plaintiffs "cited no authority to justify limiting the number of experts . . . at this stage of litigation." *Id.* at \*2-3. As the court explained:

> As [the defendant] hones [its] trial strategy, it may decide to not present certain expert testimony at trial, [its] experts' testimony may be excluded or limited by evidentiary rulings, or may be rendered unnecessary by substantive orders of this Court. Moreover, "with nothing on which to rely besides the experts' preliminary Rule 26 reports, any order . . . limiting the number of expert witnesses [defendant] may utilize will, at least be arbitrary; at worst, it may be prejudicial to [its] defense."

*Id.* at \*2 (quoting *Adams*, 2006 WL 2983054, at \*11). The court also recognized that the mere number of experts disclosed is not dispositive because parties can elect to rely on "extensive testimony from fewer experts" or divide up testimony "using a

---

[1] Plaintiffs argue that the Court can limit the number of expert witnesses under Rule 403 (Mot. 4-5, PageID.94235-94236), but the cases they cite involve testimony that was limited at or immediately before trial. *See, e.g.*, *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 547 (6th Cir. 2003) (affirming exclusion of expert as cumulative during trial); *In re Air Crash Disaster*, 86 F.3d 498, 526-27 (6th Cir. 1996) (same).

3

larger number of experts." *Id.* at *3; *accord Adams*, 2006 WL 2983054, at *11; *see also Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769 (6th Cir. 1989) ("[L]imiting experts because of mere numbers, without reference to the relevancy of their testimony, is an abuse of discretion." (internal quotation marks omitted)).

The other cases Plaintiffs cite also reject their arguments. *See Pridemore-Turner v. Univ. Health Sys., Inc.*, No. 20-cv-318, 2021 WL 6333361, at *2 (E.D. Tenn. Oct. 13, 2021) ("Despite the similarities in the experts' written reports . . . the Court is not inclined to limit the number of Defendants' expert witnesses at this stage of the litigation."); *Gillispie v. City of Miami Twp.*, No. 13-cv-416, 2022 WL 14758379, at *8 (S.D. Ohio Oct. 26, 2022) ("[Plaintiff] has not shown at this point that [the experts'] testimony will be unnecessarily cumulative. . . . The fact that both experts will touch on [similar] issues to some extent seems fairly unremarkable given the subject of this trial."). Indeed, the *Pridemore-Turner* court stated that "[t]he prohibition against multiple experts on the same subject matter is . . . a rule governing the trial stage . . . rather than a rule pertaining to the discovery or motion practice . . . stage." 2021 WL 6333361, at *2 (internal quotation marks omitted).

Plaintiffs argue that the "financial burden" of discovery warrants tying VNA's hands now. Mot. 9, PageID.94240. *Piskura* correctly rejected that argument, holding that "Rule 403 was not adopted to reduce costs incurred by counsel during the prosecution of a lawsuit." 2012 WL 1267990, at *3. Other courts have agreed.

4

*See Adams*, 2006 WL 2983054, at *11 ("Rule 403 . . . is intended to limit evidence that is overly prejudicial, confusing, or duplicative; it is not meant to minimize litigation costs incurred by counsel."); *Christie ex rel. Estate of Christie v. Scott*, No. 10-cv-420, 2012 WL 13098033, at *1 (M.D. Fla. June 1, 2012) (rejecting "significant cost" as a basis for limiting purportedly cumulative expert testimony).

Plaintiffs also accuse VNA of "gamesmanship" for calling only some of the experts it disclosed in the Bellwether I trial. Mot. 10, PageID.94241.[2] That was not gamesmanship—VNA tailored its case to Plaintiffs' presentation, as it had every right to do. For example, Plaintiffs elected not to call their exposure and general-causation experts (Dr. Robert Michaels, a toxicologist, and Dr. Joseph Graziano, an epidemiologist) and instead relied on Dr. William Bithoney to establish the potential harms from lead exposure. In response, VNA decided to not call its exposure and general-causation experts (Dr. Brent Finley, Dr. Stacey Benson, and Dr. Douglas Weed) and instead relied on Dr. John Gaitanis to respond to Dr. Bithoney.

Despite this, Plaintiffs now seek an entirely one-sided order requiring VNA to identify which experts it "actually intends to call" at trial many months from now *before* seeing pretrial rulings, *before* seeing how Plaintiffs present their case, and *before* seeing which of Plaintiffs' duplicative experts they decide to use when they

---

[2] Plaintiffs say that VNA called only three experts, but VNA called four— Dr. William Bellamy, Dr. Graham Gagnon, Dr. Gaitanis, and Dr. David Thompson.

5

present their case. Mot. 1, PageID.94232.[3] It would be very prejudicial to require VNA to make decisions about its experts before it knows what the issues will be at trial or what expert opinions Plaintiffs will present, and that prejudice is exactly why courts defer decisions as to whether testimony is cumulative until trial. *See, e.g.*, *Piskura*, 2012 WL 1267990, at *2-3; *Adams*, 2006 WL 2983054, at *11.

In short, Plaintiffs have not provided any authority to support their extraordinary request to strike expert witnesses as cumulative at this stage of the litigation, or identified any persuasive reason for the Court to do so.

## II. VNA's Experts Are Not Cumulative

In any event, VNA's experts' testimony will not be cumulative. While both sides' experts inevitably overlap,[4] each of VNA's experts brings something unique to this case and offers unique opinions. Indeed, Plaintiffs concede that VNA's experts have "different specialties" and "qualifications." Mot. 7, PageID.94238. Further, VNA designated many of the same experts for the Bellwether I case and those experts filed reports in that case, so Plaintiffs already are familiar with them.

---

[3] Indeed, the parties do not even know what issues the trial will cover. Plaintiffs have requested that the Court bifurcate the Bellwether III trial, and that request remains pending. *See* Shkolnik Ltr. 1, ECF No. 2861-1, PageID.94312. At a minimum, the Court should not address this motion until it resolves that request.

[4] *See, e.g.*, BWI *Daubert* Hearing Tr. 102:24-103:2, No. 17-cv-10164 ECF No. 425, PageID.31839-31840 (Mr. Stern: "I just want to note that all of these expert[s'] opinions in so many ways are interrelated.").

Plaintiffs have designated eleven experts.[5] They rely on Dr. Larry Russell as a catch-all water expert, addressing a broad range of topics including the history of Flint's water supply, water chemistry, water treatment and corrosion issues, engineering standard of care and ethics, his inspection of pipes in Flint, general damage to pipes in Flint, and biosolids studies on the timing of lead releases. Dr. John Hoaglund also offers opinions on the effect of the change in water sources on water quality and water treatment. In response, VNA designated:

- Dr. William Bellamy. Dr. Bellamy is a water quality and treatment engineer with more than 45 years of experience working for public water systems throughout the world. Dr. Bellamy is VNA's primary standard-of-care expert.

- Dr. Graham Gagnon. Dr. Gagnon is a professor and expert in water chemistry and treatment, with a focus on lead. Dr. Gagnon opines on sources of lead in Flint's drinking water and water chemistry and treatment issues in Flint.

- Dr. Sheldon Masters. Dr. Masters is an assistant professor and studied at Virginia Tech under Dr. Marc Edwards. Dr. Masters opines on regulatory failures in Flint and biosolids studies on the timing of lead releases. His opinions also are relevant to VNA's non-party at fault case.

- Dr. David Crowe. Dr. Crowe is a materials and corrosion engineer with a background in metallurgy. Dr. Crowe primarily addresses Dr. Russell's pipe sampling and inspection work at two homes in Flint.

---

[5] Plaintiffs assert that they disclosed seven retained experts (Mot. 2 n.3, PageID.94233), but they exclude: Dr. Graziano and Dr. John Hoaglund, whom Plaintiffs disclosed in Bellwether I and whom they have said "remain open" to be called in Bellwether III, Ex. 1, C. Stern Feb. 22, 2023, email; Dr. Lauren Cohen, whom they disclosed to opine on VNA's media efforts; and Dr. Michael Drues, whom they disclosed to respond to VNA's expert Dr. Daniel Schultz.

Plaintiffs' expert Dr. Aaron Specht relies on bone lead measurements taken with his novel portable XRF device to opine that the Bellwether III Plaintiffs were exposed to lead. In response, VNA designated:

- Dr. William Huber. Dr. Huber is a statistician who has reviewed the MATLAB code used by Dr. Specht to calculate Plaintiffs' bone lead levels and uncertainty values. Dr. Huber opines that Dr. Specht's portable XRF device did not detect lead in the Bellwether III Plaintiffs and is not capable of measuring lead at the low levels reported in this case.

- Dr. Daniel Schultz. Dr. Schultz is the former Director of the FDA's Center for Devices and Radiological Health. Dr. Schultz opines that Dr. Specht's portable XRF device is a medical device that requires FDA approval, which would include a review of the device's efficacy.[6]

Plaintiffs then disclosed Dr. Michael Drues to attempt to rebut Dr. Schultz.

Plaintiffs rely on Dr. William Bithoney and Dr. Jennifer Sample to opine that they were injured by lead exposures due to water conditions in Flint. These opinions are duplicative; Plaintiffs intend to call Dr. Sample only if Dr. Bithoney is not available for trial. Dr. Graziano also opines on general-causation issues for Plaintiffs. In response, VNA designated:

- Dr. Weed. Dr. Weed is a physician-epidemiologist specializing in causal methodology. He opines that the methods used by Dr. Sample, Dr. Bithoney, and Dr. Graziano to reach their general-causation opinions are flawed.

- Dr. Benson. Dr. Benson is an epidemiologist. She performed a systematic review of the literature related to the health conditions from which Plaintiffs say they suffer. Dr. Benson opines that the literature does not support Dr.

---

[6] Some of VNA's other experts also address Dr. Specht's opinions about blood and bone lead, though they principally address the opinions of Plaintiffs' other experts.

8

Bithoney's, Dr. Sample's, and Dr. Graziano's opinions that those conditions could have been caused by Plaintiffs' claimed exposure to lead in Flint water.

- Dr. Michael Greenberg. Dr. Greenberg is a toxicologist with decades of clinical experience. Dr. Greenberg responds to Dr. Sample's and Dr. Bithoney's specific-causation opinions—*i.e.*, that the individual plaintiffs' medical conditions were in fact caused by their exposure to lead.

- Dr. William Banner. Dr. Banner is a pediatrician, medical toxicologist, medical director for state poison control centers, and a lead researcher. He offers the unique perspective of a pediatrician who has treated patients exposed to lead for more than 40 years. Dr. Banner opines that Dr. Bithoney and Dr. Sample failed to develop accurate differential diagnoses and that there is no medical or scientific basis for concluding that lead caused or contributed to any of the problems facing the Bellwether III Plaintiffs.

- Dr. Finley. Dr. Finley is a toxicologist with broad experience in exposure and health risk assessments. Dr. Finley responds to the exposure and specific-causation opinions of Dr. Bithoney and Dr. Sample, opining that tap water consumption did not contribute significantly to the blood lead levels of the Bellwether III Plaintiffs and that tap water consumption did not cause or contribute to any health effects claimed by the Plaintiffs.

Dr. Mira Jourdan and Dr. Edward Hoffman performed psychological evaluations of the Bellwether III Plaintiffs and opine that they experience educational and other deficits as a result of their purported lead exposures. Their psychological evaluations also are duplicative. In response, VNA designated:

- Dr. David Thompson. Dr. Thompson is a clinical and forensic psychologist. Dr. Thompson opines on Dr. Krishnan-Jordan's and Dr. Hoffman's examinations of the Bellwether III Plaintiffs applying his expertise as a clinical and forensic psychologist.

- Dr. Robert McCaffrey and Dr. Stephen Putnam. Dr. McCaffrey and Dr. Putnam are clinical neuropsychologists and address Dr. Jourdan's and Dr. Hoffman's neuropsychological testing and results. Dr. McAffrey and Dr. Putnam each provide opinions on different members of the Bellwether III cohort.

9

- <u>Dr. Stephen Nelson</u>.  Dr. Nelson, a pediatric neurologist, performed independent medical examinations on the Bellwether III Plaintiffs.  He offers opinions based on his examinations and responds to Dr. Jourdan's and Dr. Hoffman's opinions applying his expertise as a pediatric neurologist.  He also responds to Dr. Bithoney's and Dr. Sample's specific-causation opinions.

Plaintiffs designated Gary Crakes to appraise the economic loss purportedly experienced by the Bellwether III Plaintiffs.  In response, VNA designated Nancy Segreve, a rehabilitation counsellor who performed vocational assessments, and Samuel Lundstrom, an economist who performed economic loss analyses.  Ms. Segreve also responds to the educational and occupational assessments of Dr. Jourdan and Dr. Hoffman, which are not usually assessments that psychologists make in their clinical work.

Finally, Plaintiffs designated Dr. Lauren Cohen to opine on VNA's media efforts.  VNA designated Jason McDonald to respond to Dr. Cohen's opinions.

Thus, Plaintiffs simply are mistaken that VNA's experts are "largely redundant."  Mot. 3, PageID.94234.  They each have distinct qualifications and opinions tailored to respond to different opinions of Plaintiffs' experts.  Anyway, VNA has no intention of wasting trial time on needlessly cumulative testimony.  And if Plaintiffs believe that VNA crosses the line, they will be able to object at trial.

## CONCLUSION

The Court should deny Plaintiffs' motion to strike.

DATED: February 22, 2024

                                            Respectfully submitted,

| CAMPBELL, CONROY & O'NEIL, P.C. | MAYER BROWN LLP |
|---|---|
| */s/ James M. Campbell* | */s/ Michael A. Olsen* |
| James M. Campbell | Michael A. Olsen |
| Alaina N. Devine | 71 South Wacker Drive |
| 20 City Square, Suite 300 | Chicago, IL 60606 |
| Boston, MA 02129 | (312) 7012-7120 |
| (617) 241-3000 | molesen@mayerbrown.com |
| jmcampbell@campbell-trial-lawyers.com | |
| adevine@campbell-trial-lawyers.com | |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC.*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on February 22, 2024, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James C. Campbell*