UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases. <br> _____/ | Judith E. Levy <br> United States District Judge |

This Order Relates To:

*Bellwether III Cases*

_____/

# OPINION AND ORDER DENYING BELLWETHER PLAINTIFFS' MOTION TO STRIKE OR OTHERWISE LIMIT CUMULATIVE EXPERT TESTIMONY [2850]

Before the Court is Bellwether III Plaintiffs' ("Plaintiffs") Motion to Strike or Otherwise Limit Cumulative Expert Testimony offered by Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC's (collectively, "VNA") (ECF No. 2850). They seek an order "(i) limiting the number of Rule 26 witnesses [VNA] may call at trial; (ii) ordering [VNA] to identify which . . . Rule 26 witnesses it actually intends to call at trial; and (iii) striking the remaining Rule 26 witnesses." (*Id.* at PageID.94232.) VNA opposed the motion, responding that it does not intend to offer cumulative expert testimony and that it would be premature to exclude expert testimony at

this stage of the litigation. (ECF No. 2866.) Plaintiffs then replied to VNA's submission. (ECF No. 2871.) For the reasons set forth below, the motion is denied.

## I.     Legal Standard

Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court has discretion "to limit the number of expert witnesses who testify at trial. However, limiting experts because of mere numbers, without reference to the relevancy of their testimony is an abuse of discretion." *Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 865 F.2d 761, 769 (6th Cir. 1989) (cleaned up). The test under Rule 403 is "strongly weighted toward admission." *United States v. Smith*, 70 F.4th 348, 352 (6th Cir. 2023).

## II.    Analysis

VNA has designated retained experts who are required to provide reports under Rule 26.[1] *See* Fed. R. Civ. P. 26(a)(2). Plaintiffs assert that VNA offers a disproportionate number of experts relative to the experts Plaintiffs plan to offer:

> in response to Plaintiffs' **sole** engineering expert, Dr. Russell, [VNA] submitted reports from four (4) different Rule 26 witnesses. In response to Plaintiffs' bone scan expert, Dr. Specht, [VNA] submitted reports from seven (7) different Rule 26 witnesses. In response to Plaintiffs' neuropsychology expert, Dr. Krishnan-Jourdan, and Plaintiffs' pediatric psychology expert, Dr. Hoffman, [VNA] submitted reports from six (6) different Rule 26 witnesses. In response to Plaintiffs' pediatric lead poisoning experts, Dr. Bithoney and Dr. Sample, [VNA] submitted reports from six (6) different Rule 26 witnesses. And even in response to the opinions of Plaintiffs' economist, Dr. Crakes, [VNA] submitted reports from two (2) different Rule 26 experts.

---

[1] The parties dispute how many witnesses each side has designated as retained experts. Plaintiffs assert in the motion there are seventeen such VNA experts, (ECF No. 2850, PageID.94233), and VNA indicates there are eighteen. (ECF No. 2866, PageID.94402.) VNA was apparently counting Jason McDonald and Plaintiffs were not. (ECF No. 2871, PageID.94656.) In their reply, however, Plaintiffs assert that VNA has nineteen retained experts. (*Id.*)

As far as experts designated by Plaintiffs, VNA asserts that Plaintiffs have designated eleven retained experts. (ECF No. 2866, PageID.94408). Plaintiffs, who initially stated that they had designated seven retained expert witnesses, (ECF No. 2850, PageID.94233 n.3), explain that VNA is mistaken and indicate that they have eight such witnesses after Dr. Lauren Cohen is included. (ECF No. 2871, PageID.94656.)

(ECF No. 2850, PageID.94234 (emphasis in original).) The number of designated experts alone is not sufficient to justify exclusion, however. *Coal Res., Inc.*, 865 F.2d at 769. Plaintiffs argue that these numbers reflect the fact that this testimony is cumulative, redundant, and features "significant overlap." (ECF No. 2850, PageID.94236–94237.) VNA's designated psychological experts, they argue, use the same methods to reach the same conclusions. (*Id.* at PageID.94237.) Plaintiffs also argue that VNA responds to three of Plaintiffs' designated experts with six pediatricians, coming from three different specialties, who share "the same general and specific opinions." (*Id.* at PageID.94238.) They also provide a chart, asserting that 27 positions are taken by multiple of VNA's designated experts, a list they note is non-exhaustive. (ECF No. 2853-2, PageID.94268–94273.)

VNA responds that its designated experts are not duplicative. It presents its designated psychological experts as either providing different expert qualifications or addressing "different members of the Bellwether III cohort." (ECF No. 2866, PageID.94410–94411.) VNA also distinguishes its designated experts in epidemiology, toxicology, and pediatrics in terms of their backgrounds and what aspects of Plaintiffs'

4

designated experts' opinions they respond to. (*Id.* at PageID.94409–94410.) It acknowledges that their designated experts overlap to an extent but maintain that each one brings something unique to the case. (*Id.* at PageID.94407.)

Other courts have faced similar disputes about allegedly cumulative testimony from designated experts. In *Piskura v. Taser Int'l*, the plaintiffs sought to exclude ten of the defendants' fifteen experts as cumulative, arguing that they submitted "nearly identical" reports. No. 1:10–cv–248, 2012 WL 1267990, at *3 (S.D. Ohio Apr. 13, 2012). The court explained that the existence of overlap was not enough to justify limiting the defendants' experts, in part because the defendants provided "expert qualifications and detailed explanations of the evidentiary bases for each expert's testimony." *Id*. The *Piskura* court emphasized that—at the early juncture in the case (before dispositive motions, the deadline for filing the Joint Final Pretrial Order, and before the trial date was set)—the defendants had sufficiently established that their experts were not "*unnecessarily* cumulative," given the likelihood that the defendants would continue to rework their strategy as trial approached *Id.* at 2–3 (emphasis in original).

5

VNA summarized the qualifications of its experts, what opinions they offer, and how they are responsive to Plaintiffs' designated experts. (ECF No. 2866, PageID.94407–94411.) For instance, at least one of Plaintiffs' experts, Dr. Larry Russell, covers a broad range of topics. (*See id.* at PageID.94408.) VNA designates different experts to address the various parts of Dr. Russell's testimony, disaggregating those issues rather than addressing them with a single person. (*Id.*) VNA asserts that they have taken a similar approach to Plaintiffs' lead exposure experts. (ECF No. 2866, PageID.94409–94410 (distinguishing experts based on focus on general causation, discussion of scientific literature, clinical analysis related to specific causation, exposure and health risk assessment related to specific causation, and the accuracy of differential diagnoses).) At this point in the litigation, these explanations, as well as the others offered by VNA, are sufficient. In a case of this complexity, where dispositive motions, various pre-trial rulings, and questions about the trial schedule remain open, a party can reasonably have some overlap in their experts that allows for a shifting strategy in the run-up to trial.

Relatedly, VNA argues that Plaintiffs' motion is premature. Courts in this Circuit have found similar motions to limit experts before trial

6

premature. *Pridemore-Turner v. Univ. Health Sys., Inc.*, 3:20-CV-00318, 2021 WL 6333361, at *2 (E.D. Tenn. Oct. 13, 2021) (denying a motion to limit experts "at this stage of the litigation," meaning before trial); *Piskura*, 2012 WL 1267990 at *2 (finding the motion to limit experts premature when "[d]ispositive motions have only recently been filed, the deadline for filing the Joint Final Pretrial Order is set for . . . approximately three months from now, and no trial date has been set"); *Gillispie v. City of Miami Twp.*, No. 3:13-cv-416, 2022 WL 14758379, at *8 (S.D. Ohio Oct. 26, 2022) (refraining from limiting experts and noting the court's ability to do so later at trial, if necessary); *Adams v. Cooper Indus., Inc.*, No. 03-476, 2006 WL 2983054, at *11 (E.D. Ky. Oct. 17, 2006) (holding that limiting expert testimony would be premature, because "the defendants may decide not to present certain experts, as they refine their trial strategy; their experts' testimony may be limited or excluded by other evidentiary rulings; or some of the experts' testimony may be rendered unnecessary by future substantive orders of this court or by compromises between the parties").

But, district courts may limit expert testimony before trial, and the Sixth Circuit has upheld such decisions:

7

> The trial judge limited the number of experts due to his belief that two would be adequate for the evidence to be covered, and that because of the length of the time the case has gone on, no new issues would arise requiring additional experts. In addition, the trial court remained open to the possibility of revising its order if either party later demonstrated an inability "to properly present [its] case." We find no abuse in its initial position.

*Coal Resources, Inc.*, 865 F.2d at 770. See also *Flannigan v. GAF Corp.*, 904 F.2d 36, *2–4 (6th Cir. 1990) (unpublished table decision). The decision to limit the number of experts under Rule 403 can also occur during trial, though the Sixth Circuit has stated "we encourage the district court to make such rulings before the trial, as a last-minute decision made during trial can be disruptive to a party's strategy." *Bowman v. Corrections Corp. of Am.*, 350 F.3d 537, 547 (6th Cir. 2003). Nonetheless, the decision to limit the number of experts during trial is not an abuse of discretion. *Id.* The Court has discretion to limit the number of experts as cumulative under Rule 403, both before and during trial, so long as the Court articulates "legitimate, rational reasons for its decision to limit expert witnesses." *Coal Resources, Inc.*, 865 F.2d at 769.

Plaintiffs argue that their requested relief is not premature, because the trial date has been set, and the Court has heard dispositive

8

motions in an earlier bellwether trial and has heard argument on evidentiary issues in the Issues Class case. (ECF No. 2850, PageID.94241.) As a result, although the trial date is currently over six months away, Plaintiffs assert that the parties have a great deal of information about the litigation. (*See* ECF No. 2871, PageID.94659.) On that basis, Plaintiffs attempt to distinguish this case from the cases where courts rejected motions filed well before trial as premature. (*Id.* at PageID.94658–94659.) It is true that this litigation has a long history that should inform the parties' litigation strategy, but the contours of the Bellwether III trial are still taking shape. There is still motion practice scheduled, as well as open questions about the trial schedule, including what time limits the Court will set.

Plaintiffs also suggest that this motion is not premature, because the number of experts VNA offers is a form of gamesmanship that can be prevented with a ruling at this stage of the litigation. (*See* ECF No. 2850, PageID.94240–9241.) They allege:

> Before the trial, [VNA] similarly disclosed opinions from sixteen (16) different retained expert witnesses. But at trial, they ultimately only called three (3) of these witnesses. Thus, with history and experience as a guide, unnecessarily

9

> designating such a large number of Rule 26 witnesses, regardless of [VNA]'s reasons, cannot be permitted.

(*Id.* at PageID.94241.) VNA responds that it tailored its case to Plaintiffs' presentation, including Plaintiffs' choices not to call certain experts. (ECF No. 2866, PageID.94406.) VNA also notes that it called four expert witnesses during Bellwether I, not three. (*Id.* at PageID.94406 n.2.)

Plaintiffs contend that VNA is disclosing its retained experts in a manner that, perversely, undermines the goals of Rule 26. (ECF No. 2850, PageID.94240.) The purpose of Rule 26(a)(2)(B) is "the elimination of unfair surprise to the opposing party and the conservation of resources." *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995). Expert disclosures avoid surprises to reduce "the length of the deposition of [retained] experts . . . and in many cases . . . [to] eliminate the need for a deposition." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. If a party designates experts they have no intention to call, that would indeed thwart one of the purposes of Rule 26, insofar as Plaintiffs would have to engage in unnecessary and costly depositions. Plaintiffs' concern about gamesmanship is a legitimate one, and it is a concern consistent with the purpose of Rule 26.

10

On the current record, the Court cannot conclude that VNA's expert designations are the result of gamesmanship. VNA has explained why it chose not to call certain witnesses in the last bellwether trial, as well as why they have designated a great many experts in this case. VNA should be mindful that the trial will have time limits not unlike those that were to be imposed in the Class Trial. If, at a later date, it becomes apparent that driving up Plaintiffs' litigation fees and costs was, indeed, a motivating factor in designating this number of expert witnesses, the Court will entertain a motion for fees and costs so that Plaintiffs can recoup unnecessary expenses related to preparing for and taking VNA's experts' depositions.

### III. Conclusion

For the reasons set forth above, Plaintiffs' Motion is DENIED.

IT IS SO ORDERED.

Dated: March 1, 2024  s/Judith E. Levy
Ann Arbor, Michigan  JUDITH E. LEVY
United States District Judge

11

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2024.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager
