# EXHIBIT A



VIA EMAIL (SETH_MAYER@MIED.USCOURTS.GOV)
The Honorable Judith E. Levy
U.S. District Court, Eastern District of Michigan
200 E. Liberty Street, Suite 300
Ann Arbor, MI 48104

March 6, 2024

**Re**:     *IN RE FLINT WATER LITIGATION – CASE NO. 16-CV-10444*
            *PUBLIC ATTACKS ON COUNSEL*

Dear Judge Levy,

I write as a follow-up to the hearing held on February 13, 2024 and the Court's subsequent orders addressing what the public attack on Co-Liaison Counsel, Corey Stern, which was and remains one of the most disturbing series of events I have seen unfold in any litigation I have been involved in.

It is now clear that Actum, LLC ("Actum"), a public-relations firm acting at the behest of three defendants in this case (Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, "VNA")), and of their parent company headquartered in France, Veolia Environnement S.A. ("VE"), orchestrated a campaign against Mr. Stern. This effort involved Actum stirring up unrest in the Flint community in order to generate negative publicity for Stern; issuing a press release falsely accusing Mr. Stern of making "racist remarks" and suggesting he should be professionally disciplined and perhaps disqualified from the litigation (ECF No. 2845, PageID 94066); launching a website disparaging Stern, the partial settlement with the State of Michigan and others (and thereby the Court); and hiring a truck and driver to circle the federal courthouse in Ann Arbor prior to, during, and subsequent to the Court's February 13 hearing, blaring Mr. Stern's voice over a loudspeaker. As if this was not bad enough, the Defendants allowed their consultant to directly contact members of the Flint community who were represented by counsel in this litigation, as well as members of the certified class action.

As the Court noted in the hearing (ECF No. 2848 at 5-6) and one of its subsequent orders (ECF No. 2862 at 2 & n.1), federal courts have inherent authority to issue orders necessary to inquire into and rectify conduct that threatens to disrupt the prompt, orderly, and fair administration of justice, whether carried out by the parties before it, or by third parties. From a declaration filed by VNA's counsel, it is apparent that Actum was retained and paid by either VNA or VE to carry out these character assassination efforts, and that the scheme to disrupt the proceedings before this Court was hatched and orchestrated from, the corporate offices of VE in France. ECF No. 2870 at 3-4 (Declaration of Michael A. Olsen).

In the Court's written orders directing the submission of relevant information, the Court included VE, the parent company of VNA, within the scope of the orders. In its February 13 Order, this Court rejected the effort of VNA's counsel to draw "a distinction between Defendants in this

1



case and 'Veolia,'" emphasizing that the entities that must respond with the relevant information are "Veolia and any other related corporate entities, whether they are a named Defendant or not, and whether they are based in the United States or not." ECF No. 2847 at 1-2. In its follow-up order, this Court specifically directed those sworn declarations with additional information be submitted by "VNA, Veolia Environnement S.A. (VE), and their counsel[.]" ECF No. 2862 at 2.

VE is plainly in violation of this Court's February 21 Order. No counsel for VE has filed an appearance, or supplied the information required of it in this Court's orders, despite the fact that Counsel's declaration indicates that VE hired Actum to conduct the campaign against Mr. Stern. ECF No. 2870 at 3-4, ¶¶ 5-9. Rather than comply with the lawful order(s) of this Court, VE seeks to excuse compliance, because it "is prohibited by French law from responding to the Court's order," ECF No. 2870 at 2, ¶ 3, submitting in support of this excuse a declaration from a prominent French lawyer explaining that VE fears that if it were to comply with this Court's order, under the French "Blocking Statute," it could be assessed a penalty of up to 90,000 euros. ECF No. 2870-1 (Declaration of Noelle Lenoir) at 3, ¶ 6. Moreover, it borders on the absurd that these Defendants would seek to be absolved of their reprehensible conduct by simply funneling this campaign through the French entity then seek to hide behind the French Blocking Statute to prevent this Court from meting out punishment

But the French Blocking Statute supplies no justification for violating this Court's orders. Under the controlling decision of the U.S. Supreme Court, there is no basis for VE's contention that, having chosen to run the smear campaign against Mr. Stern and engaging in direct communications with represented plaintiffs, from France rather than through its subsidiaries operating in Michigan, it can now refuse to disclose the information sought by this Court based on its self-imposed predicament that for it to do so would violate the French Blocking Statute.

For one thing, is plain that the Blocking Statute was not enacted by France in order to enable French companies to interfere with proceedings in American courts, free from the normal consequences of such actions. Far from it. As the Supreme Court noted in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa*, 482 U.S. 522 (1987), the French statute was enacted as a means of shielding French companies from intrusive investigations under American antitrust laws. *Id*. at 527 & n.9.

Additionally, as the Court also noted, French companies subject to the Blocking Statute, confronted with an order of a United States court mandating that they disclose information, have a ready means of seeking a waiver of liability under the statute, to escape having to make a Hobson's choice. *Id*. at 528 n.10. Obviously, just like the defendant in *Aerospatiale*, a major French corporation such as VE, especially represented by an attorney as well respected as Ms. Lenoir (formerly a judge on France's Constitutional Council), would have little difficulty in obtaining a waiver.

But even if VE would have difficulty obtaining a waiver, this Court has ample authority to order submission of the information, which to date VE has declined to provide. Mr. Olsen has assured the Court that "VE is not opposed to responding pursuant to procedures that do not conflict with French law," ECF No. 2870 at 2, ¶ 3, which presumably means that VE *would* supply the information if sought by Plaintiffs via the cumbersome discovery procedures set out in the Hague

NAPOLILAW.COM
1302 AVENIDA PONCE DE LEON, SANTRUCE, PUERTO RICO 00907



Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. But as this Court has made clear, this is not a discovery matter, related to the subject matter of the litigation; this is a matter being directed by the Court, in response to conduct threatening the administration of justice in the case before it. ECF No. 2862 at 2 n.2.

Moreover, as the Supreme Court held in *Aerospatiale*, the Hague Convention "does not speak in mandatory terms," and instead "was intended as a permissive supplement, not a preemptive replacement, for other means of obtaining evidence located abroad." 482 U.S. at 534, 536. *See also id*. at 537 n.23 ("The utter absence in the Hague Convention of an exclusivity provision has an obvious explanation: The contracting states did not agree that its procedures were to be exclusive."). To hold otherwise, the Court observed, "would effectively subject every American court hearing a case involving a national of a contracting state to the internal laws of that state," creating "a significant possibility of very serious interference with the jurisdiction of United States courts." *Id*. at 539. Thus, the Court held in *Aerospatiale*, the Hague Convention does not deprive a federal district court "of the jurisdiction it otherwise possessed to order a foreign national party before it to produce evidence physically located within a signatory nation." *Id*. at 539-40.[1]

In addition to holding that the Hague Convention does not deprive federal district courts of authority to order foreign companies to produce evidence relevant to litigation before it, the Supreme Court in *Aerospatiale* specifically held that the French Blocking Statute does "not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Id*. at 544 n.29. The Court thereby refused to allow the Republic of France to exercise "legislative jurisdiction . . . over a United States district judge, forbidding him or her to order any discovery from a party of French nationality[.]" *Id*. It is therefore clear that under Supreme Court precedent, this Court's February 21 order directed toward VE was valid and VE, after actual notice of the order, declined to comply with it.

Here, the Court should not require Plaintiffs to file a formal motion regarding something so clear, but rather should issue an order compelling compliance *sua sponte*. VNA's, VE's, and Actum's conduct has already required significant time and energy from Plaintiffs' counsel and the Court – energy that would be much better spent litigating the merits of these cases. As the Court of Appeals of California held in *Am. Home Assurance Co. v. Societe Commerciale Toutelectric*, 128 Cal. Rptr. 2d 430 (Cal. App. 2002), where a defendant, after ample opportunity to comply with court orders to supply relevant evidence, refuses to do so based on the French Blocking Statute, a trial judge may appropriately strike the defendant's answer and enter a default judgment. *Id*. at 421, 435-37. Plaintiffs respectfully request that the Court set a final deadline by which VE

---

[1] Although VE is not formally a party to these lawsuits, under the All-Writs Act, 28 U.S.C. § 1651(a), this Court's equitable powers extend to third parties who "are in a position to frustrate the implementation of a court order or the proper administration of justice," even if they "have not taken any affirmative action to hinder justice." *United States v. New York Telephone Co.*, 434 U.S. 159, 174 (1977). VE's foreign status is immaterial given its hiring of Actum to launch a PR offensive against Mr. Stern in the Eastern District of Michigan. *See United States v. Int'l Bhd. Of Teamsters*, 266 F.3d 45, 50 (2d Cir. 2001) (All Writs Act injunction may issue "against any person with the 'minimum contacts' with the forum necessary to the court's exercise of personal jurisdiction").

NAPOLILAW.COM
1302 AVENIDA PONCE DE LEON, SANTRUCE, PUERTO RICO 00907



must comply with its past orders. If VE still does not comply, the Court should issue the appropriate sanctions as Her Honor sees fit.

Respectfully submitted,

*Hunter J. Shkolnik*

Hunter J. Shkolnik

NAPOLILAW.COM
1302 AVENIDA PONCE DE LEON, SANTRUCE, PUERTO RICO 00907