# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*

_____/   The Hon. Judith E. Levy
United States District Judge

*Bellwether III Case No. 17-10164*

_____/

# BELLWETHER III PLAINTIFFS' MOTION
# TO BIFURCATE THE UPCOMING TRIAL INTO TWO PHASES

## I. INTRODUCTION

Bellwether III Plaintiffs ("Plaintiffs") request that the Court exercise its broad discretion and bifurcate and expedite the upcoming Bellwether III trial against Defendants Veolia Water North America Operating Services, LLC, Veolia North America, Inc., and Veolia North America, LLC ("Veolia"). Plaintiffs propose a two-phase trial beginning on May 22, 2024. The first phase will address whether Veolia breached the applicable standard of care as well as whether any non-parties breached their respective duties of care. The second phase will address proximate causation, injuries/damages, and potential allocation of fault.

As set forth more fully below, a bifurcated trial of this nature will undoubtedly promote judicial economy (both for this specific trial and the overall litigation), and will most certainly avoid the confusion and burden on jurors that was experienced by those empaneled in Bellwether I. Furthermore, bifurcation is paramount to avoid prejudice for both sides. Otherwise, evidence regarding breach will bleed into questions regarding causation and damages (and vice versa), thereby unjustly influencing jurors on the distinct questions of each. Finally, because the Court has inherent authority to manage its docket, and because most of the work required of the parties and the Court for Phase 1 is complete, good cause exists for the Court to set an accelerated trial date of May 22, 2024.

1

## II.  PROPOSAL

### A. **QUESTIONS PRESENTED**

The Phase 1 jury will make particularized findings as to which of Veolia's specific actions and/or inactions, as well as those of any non-parties Veolia claims are responsible, constitute a breach of their respective duties of care. For example, the questions for the Phase 1 jury will simply be:

1. Did Defendant Veolia breach the standard of care for a professional water engineer by:

    A.  *[insert specific action/inaction]*[1]    Yes _____ No _____
    B.  *[insert specific action/inaction]*       Yes _____ No _____
    C.  *[insert specific action/inaction]*       Yes _____ No _____
    D.  *[insert specific action/inaction]*       Yes _____ No _____

2. Did [LAN/ROWE/….] breach the standard of care for a professional water engineer by:

    A.  *[insert specific action/inaction]*       Yes _____ No _____
    B.  *[insert specific action/inaction]*       Yes _____ No _____
    C.  *[insert specific action/inaction]*       Yes _____ No _____
    D.  *[insert specific action/inaction]*       Yes _____ No _____

3. Did *[non-party 1]* breach their duty of care by:

    A.  *[insert specific action/inaction]*       Yes _____ No _____
    B.  *[insert specific action/inaction]*       Yes _____ No _____
    C.  *[insert specific action/inaction]*       Yes _____ No _____
    D.  *[insert specific action/inaction]*       Yes _____ No _____

---

[1] The list of specific actions and/or inactions that would fill the A-D sections of the verdict form would be determined by the Court at the close of evidence.

    4. Did *[non-party 2…]* breach their duty of care by:

        A.    *[insert specific action/inaction]*    Yes _____ No _____
        B.    *[insert specific action/inaction]*    Yes _____ No _____
        C.    *[insert specific action/inaction]*    Yes _____ No _____
        D.    *[insert specific action/inaction]*    Yes _____ No _____

If the Phase 1 jury finds that Veolia breached its duty of care, then the Phase 2 jury will be instructed that it has been previously determined that Veolia and other non-parties (if applicable) breached their duties by taking or failing to take particular actions. The Phase 2 jury will be carefully instructed as to the particularized findings of breach that were previously determined by the Phase 1 jury. For example, the Court could instruct the Phase 2 jury as follows:

> Members of the jury:
>
> It has already been determined – and you must accept – that Defendant Veolia breached the standard of care for a professional engineer by *[insert A-D, which jury found "Yes" from above]*.
>
> It has also been determined – and you must accept that – that *[insert non-party]* breached their duty of care by *[insert A-D, which jury found "Yes" from above]*.
>
> Accepting these prior determinations as true – which you must – your task is to determine for each Plaintiff: (a) whether any of those breaches proximately caused or contributed to a plaintiff's injury; (b) the monetary damages to award to each Plaintiff; and (c) the relative percentage of fault attributed to each liable party as to each Plaintiff.

Thus, the Phase 2 jury will focus their time and attention on whether a particular breach proximately caused Plaintiffs' injuries; the appropriate measure of

3

damages for each Plaintiff; and the appropriate allocation of fault, to the extent fault must be allocated.

## B. **EVIDENCE PRESENTED**

During Phase 1, each side will only present evidence with regard to the actions Veolia and the non-parties took or did not take in relation to their involvement prior to and during the Flint Water Crisis. Plaintiffs' fact witnesses are likely to include and be limited to the following individuals:

1. Marvin Gnagy;
2. Robert Nicholas;
3. Depin Chen;
4. William Fahey; and
5. David Gadis

The fact witnesses for Veolia would similarly be limited to only those that provide evidence related to its actions or inactions as well as those of the non-parties Veolia claims are at fault for Plaintiffs' injuries.

Plaintiffs will call a single standard of care expert, Dr. Russell, who will set forth his opinions for the jury as to which of Veolia's specific actions and/or omissions failed to meet the applicable standard of care. Similarly, and while Plaintiffs cannot predict the witnesses Veolia will call to present evidence regarding their own and others' conduct, they will very likely call a single expert, Dr. Bellamy, to refute Dr. Russell's opinions as to whether they breached the standard of care. *See*

4

ECF No. 2866, Veolia Response to Motion to Strike, PageID. 944408 (explaining the role of Dr. Bellamy as "VNA's primary standard-of-care expert").

During Phase 2, a second jury will hear Dr. Russell's separate opinions regarding exposure/causation. He will explain to the Phase 2 jury why and how Veolia's actions and/or inactions (that the Phase 1 jury found violated the standard of care) caused or contributed to creating or prolonging the crisis. The Phase 2 jury will also likely hear from Veolia's purported experts, Drs. Gagnon, Masters, and Crowe (or some combination thereof), who refute Dr. Russell's causation opinions. *See* ECF No. 2866, Veolia Response to Motion to Strike, PageID. 944408. Only the Phase 2 jury will hear these general causation opinions.

The Phase 2 jury will also be the only jury that is presented with the complex and intertwined evidence regarding Plaintiffs' injuries, specific causation, damages, and allocation of fault (if applicable). For Plaintiffs, that evidence includes the Bellwether children's family members, Dr. Specht, Dr. Hoffman, Dr. Krishnan-Jourdan, Dr. Bithoney, Dr. Sample, and Dr. Crakes. For Veolia, those witnesses (likely) include their remaining retained witnesses, Dr. Huber, Dr. Shultz, Dr. McCaffery, Dr. Putman, Dr. Thompson, Dr. Nelson, Dr. Weed, Dr. Banner, Dr. Benson, Dr. Finley, Dr. Greenberg, Ms. Segreve, and Dr. Lundstrom. *Id.*; *see also* ECF. No. 2871-1 (Plaintiffs' Exhibit to Motion to Strike Showing Overlap of Veolia's experts).

5

### III. LEGAL STANDARD

Under Rule 42(b), this Court has broad discretion to bifurcate any trial "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(a).[2] "Only one of these criteria—avoidance of prejudice or judicial economy—need be met before a court can order separation." *Auto Konnect, LLC v. BMW of N. Am.*, LLC, No. 18-14019, 2022 U.S. Dist. LEXIS 95875, at *12 (E.D. Mich. May 27, 2022); *Saxion v. Titan-C-Manufacturing*, 86 F.3d 553, 556 (6th Cir. 1996) ("Only one of these criteria need be met to justify bifurcation."). The Court should also "consider several facts, including the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (citation omitted).

### IV. ANALYSIS

#### A. BIFURCATION IS WARRANTED BECAUSE IT WILL PROMOTE JUDICIAL ECONOMY, PREVENT JUROR CONFUSION, AND AVOID PREJUDICE

**1. Judicial Economy and Juror Confusion**

Judicial economy will be best served through bifurcation. The evidence required to answer questions regarding breach, and the evidence required for the

---

[2] "Bifurcation is a procedural matter addressed by Fed. R. Civ. P. 42(b) and, thus, Rule 42(b) is the controlling authority for assessing whether a federal court will grant a motion to bifurcate." *Patel Family Tr. v. AMCO Ins. Co., No*. 2:11-cv-1003, 2012 U.S. Dist. LEXIS 97412, at *3 (S.D. Ohio July 13, 2012); *Biegas v. Quickway Carriers, Inc*., 573 F.3d 365, 374 (6th Cir. 2009).

6

remaining questions of exposure/causation, injury, damages, and allocation are distinct. While there is significant overlap regarding evidence and issues as to the latter Phase 2 issues, none of that evidence is necessary for the Phase 1 jury to resolve questions regarding the standard of care and breach. For example, for purposes of Phase 2, a Plaintiffs' mother and grandmother might testify about when and how often their child (the Plaintiff) drank tap water; how and when they observed changes in the child's behavior; and specific challenges the child has faced since her exposure to lead-tainted water. Plaintiffs will then call at least four experts to testify on behalf of each Plaintiff, as to their cognition and acquired brain injuries; the cause of the injuries; and the economic value of the injuries. This evidence is necessary to the issues surrounding the questions of injury, causation, and damages, but it is neither material nor relevant as to the question of breach.[3]

Courts agree that the distinction between these types of evidence, on its own, strongly supports bifurcation. *See Harwood v. N. Am. Bancard, LLC*, No. 18-cv-12567, 2022 U.S. Dist. LEXIS 118595, at *6 (E.D. Mich. July 6, 2022) ("[M]any courts have upheld cases bifurcated between liability and damages because the

---

[3] The same is true for Veolia's non-breach, Phase 2 experts, most of whom proffer opinions responding to multiple issues regarding injury, causation, and damages, but do not offer any opinions relevant to the breach question in Phase 1. *See* ECF No. 2866, Veolia Response to Motion to Strike, PageID. 944408–11; *see also* ECF. No. 2871-1 (Plaintiffs' Exhibit to Motion to Strike Showing Overlap of Veolia's experts

7

evidence pertinent to the two issues is wholly unrelated, and as a logical matter, liability must be resolved before the question of damages.") (quoting *In re Bendectin Litig.*, 857 F.2d 290, 309 (6th Cir. 1988)). This is especially true in cases, such as this, where the liability phase is "straightforward" and the second phase involving the remaining issues will be "lengthy and complex."[4] *Sadlik v. Norfolk S. Ry. Co.*, No. 08-12936, 2010 U.S. Dist. LEXIS 71653, at *3-4 (E.D. Mich. July 16, 2010) ("Under the circumstances of this case, where the liability phase is straightforward and the damages phase is lengthy and complex, the court is persuaded that bifurcation would promote convenience, judicial economy, and efficiency.").

The animating concern behind this logic is that presenting evidence relevant to one issue, while wholly irrelevant to another in the same trial will "conflate the issues, confuse the jury, and result in prejudice." *Harwood,* No. 18-cv-12567, 2022 U.S. Dist. LEXIS 118595, at *6; *Avery v. Neverson*, No. 18-cv-11752, 2022 U.S. Dist. LEXIS 172918, at *2 (E.D. Mich. Aug. 25, 2022) ("The issues regarding Plaintiff's claimed damages are not relevant in determining liability and therefore could conflate the issues, confuse the jury, and result in prejudice. The balance of factors therefore weigh[s] in favor of bifurcation."); *Gleed v. AT&T Servs., No. 13-12479*, 2015 U.S. Dist. LEXIS 153081, at *5-6 (E.D Mich. Nov. 12, 2015) (finding

---

[4] As set forth in Section II, A, Phase 2 will likely involve at least eighteen retained experts, each of whom has provided opinions and will testify regarding Plaintiffs' injuries, causation, damages, and allocation.

8

the "threat of prejudice and juror confusion" and the fact that certain evidence bears only on the issue of establishing damages as factors weighing in favor of bifurcation).

The concern for jury confusion is particularly relevant in a complex case such as this. *See Nelson v. Columbia Gas Transmission*, LLC, 808 F. App'x 321, 329-30 (6th Cir. 2020) (approving bifurcation of a related contract and tort claim because of the "complexity of [the] case[,]" and because there would be some evidence relevant to the tort that was not relevant to the contract and vice versa); *Organic Chems., Inc. v. Carroll Prods., Inc.*, 86 F.R.D. 468, 469 (W.D. Mich. 1980) ("However, in complex cases with complex issues, justice is often best served if issues are separated."). Indeed, the Bellwether I trial proved that a trial without the bifurcation requested here can result in juror confusion and even perhaps decision paralysis. To that point, after six months, the Bellwether I jurors were left with testimony from more than thirty fact witnesses, twelve experts, hundreds of exhibits, and a fifty-one-page verdict form. And after two weeks of extensive deliberation, they were unable to reach a verdict. If history is a guide (as the bellwether process intends it to be), without bifurcation here, juror confusion is more than a mere possibility.

### 2. Avoiding Prejudice

Bifurcation will also avoid prejudice to both parties. Regarding prejudice to Veolia, Plaintiffs contend that Veolia's conduct giving rise to this litigation is

9

reprehensible, and thus, it is a legitimate concern that the liability evidence which will be presented as to the breach question has the potential to bleed over and influence the jurors on a damages award. Regarding prejudice to Plaintiffs, Veolia contends Plaintiffs were either not exposed to lead, or that they suffered no injuries as a result thereof, or that if they have cognitive deficits they are only a result of their life circumstances. To the extent these arguments are credited by a jury considering all issues, they have the potential to prejudice questions of liability.[5] *See Jones v. City of Warren*, No. 11-15330, 2015 U.S. Dist. LEXIS 83430, at *4-5 (E.D. Mich. June 26, 2015) (finding bifurcation of liability and damages in excessive force case against police officer warranted "particularly in light of the nature of the evidence that Defendants [sought] to introduce" as to damages, such as Plaintiffs' prior injuries and unrelated medical conditions; other claims or litigation; and Plaintiffs' prior crimes).

### 3. Overall Expedition and Economy of Resources

Finally, a bifurcated trial will expedite and economize the litigation as a whole. Whatever the outcome, a determination regarding whether Veolia breached the standard of care will promote resolution and settlement discussions. Veolia's extensive media campaign throughout this litigation (and most notably during and

---

[5] Plaintiffs will move to exclude certain testimony in this regard at the appropriate time.

since the Bellwether I trial) has had several consistent themes; not the least of which being that Veolia did absolutely nothing wrong. Given the vast resources Veolia has allocated in creating and promoting this narrative, it is logical that a verdict either affirming or contradicting this narrative would place Veolia (and Plaintiffs) in a position to evaluate and reevaluate how and when to conclude this litigation. And if a resolution is reached after Phase 1, which is often the result in bifurcated proceedings, then the need for Phase 2 (and potentially future trials for the remaining plaintiffs) would be eliminated. This would result in significant cost savings for both parties; allow the Court to better use its time and resources; and allow jurors and potential jurors to resume their normal lives. *See Sierra Club v. City of Holland*, No. 1:08-cv-1183, 2013 U.S. Dist. LEXIS 205143, at *3-4 (W.D. Mich. Sep. 4, 2013) ("By determining liability first, the parties could engage in constructive settlement discussions, which may eliminate the need for a trial over damages. Should a settlement occur after the determination of liability, the cost savings to the parties and the court's resources would be significant."); *see also Little Traverse Bay Bands of Odawa Indians v. Snyder*, 194 F. Supp. 3d 648, 650 (W.D. Mich. 2016) (same).

### B. <u>BIFURCATION WILL NOT PREJUDICE VEOLIA OR VIOLATE THE SEVENTH AMENDMENT'S REEXAMINATION CLAUSE</u>

At the Court's February 27, 2024 status conference, counsel for Veolia expressed Seventh Amendment concerns associated with bifurcation. ECF No. 2874, PageID.94719. These concerns are without merit. The Sixth Circuit "has

11

confirmed that, if done properly, bifurcation will not raise any constitutional issues." *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 417 (6th Cir. 2018) (internal quotation marks and citation omitted).[6] And district courts in this Circuit, including this Court, **in this very litigation**, have specifically explained that "careful trial management can allay Seventh Amendment reexamination concerns." *In re Flint Water Cases*, 558 F. Supp. 3d 459, 523 (E.D. Mich. 2021). These case management strategies include "jury instructions[] and verdict forms that crystallize the applicable issues and clarify those already decided," *id.*, like those set forth herein. *See* Section I, A.

Moreover, Veolia's concern that there will be "overlap" in the evidence presented in both phases[7] does not present a Seventh Amendment issue. The concern of the reexamination clause is "not whether two fact-finders will merely have to consider similar evidence." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 370 F. Supp. 3d 826, 837 (E.D. Tenn. 2019). But rather, whether two different juries will be required to decide the same disputed issues based on overlapping factual issues. *Id.; see also In re Air Crash at Lexington, Ky.,* August 27, 2006, No. 5:06-CV-316 - KSF, 2008 U.S. Dist. LEXIS 142488, at *74 (E.D. Ky. May 15, 2008).

---

[6] Courts from other circuits agree. *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 38 (E.D.N.Y. 2001) (collecting cases and noting that "trial judges have routinely and properly severed issues for trial before separate juries pursuant to Rule 42(b)")
[7] ECF No. 2874, PageID.94720.

12

The bifurcated trial requested here does not require jurors to answer the same questions, nor will they be presented with overlapping factual issues. Veolia has not and cannot articulate a single concrete example of how the requested relief might result in different juries deciding the same issues. But even if they had or could, "[t]houghtful Phase [2] jury instructions and evidentiary rulings" —like those proposed herein—will "prevent a Seventh Amendment violation from ever occurring." *Adkisson,* 370 F. Supp. 3d at 837.[8]

### C. THE COURT HAS BROAD DISCRETION TO BIFURCATE AND SET AN EXPEDITED TRIAL DATE

Both the parties[9] and courts in this circuit agree that the "decision of whether to bifurcate, and how to bifurcate, is within the court's sound discretion." Indeed, "[t]he Sixth Circuit has held that Rule 42(b) is sweeping in its terms and allows the court, in its discretion, to grant a separate trial of any kind of issue in any kind of case." *Innovation Ventures, LLC v. Custom Nutrition Labs*., LLC, No. 12-13850,

---

[8] Court have also recognized that "if push came to shove, the Court could eliminate any Seventh Amendment concerns by utilizing the same jury for both liability and damages if a damages trial is needed." *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808, 2023 U.S. Dist. LEXIS 140025, at *35 (N.D. Ill. Aug. 11, 2023) (internal quotation marks and citation omitted); *see also In re Air Crash at Lexington*, No. 5:06-CV-316 - KSF, 2008 U.S. Dist. LEXIS 142488, at *78; *TVT Records v. The Island Def Jam Music Group*, 254 F. Supp.2d 322 (S.D.N.Y. 2003).

[9] Counsel for Veolia: "[I]t's within your discretion to have a separate trial for one or more separate issues." ECF No. 2874, PageID.94718.

13

2013 U.S. Dist. LEXIS 70885, at *7 (E.D. Mich. May 20, 2013) (internal quotation marks and citation omitted).[10]

For the reasons set forth above, the Court can soundly exercise its discretion to bifurcate this trial. Having determined that bifurcation is warranted, the Court can also exercise "its inherent power to control [its] docket," *Anthony v. BTR Auto. Sealing Sys.*, 339 F.3d 506, 516 (6th Cir. 2003), and set an accelerated trial date. *See Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, No. 12-13850, 2013 U.S. Dist. LEXIS 70885, at *8 (E.D. Mich. May 20, 2013) (bifurcating trial and then setting a conference "for the purpose of establishing an accelerated trial date").

There is good cause for the Court to set an expedited trial date. *See* Fed. R. Civ. P. 16(b)(4). As set forth above, resolving the liability question first has the ability to expedite and economize both the Bellwether III trial as well as the litigation overall. Therefore, it is logical that resolving Phase 1 sooner, rather than later, will further promote judicial economy. Indeed, accelerating the trial on questions of breach may obviate the need for Phase 2 altogether, therefore preserving the parties' and the Court's resources that would otherwise be expended on extensive expert discovery and motion practice still needing to be conducted and resolved for the ***many*** causation, injury, and damages experts for both parties. *See* ECF. No. 2871-1

---

[10] The Court may even make this decision unilaterally, without a request or motion from the parties. *Saxion v*, 86 F.3d at 556 (6th Cir. 1996).

(Plaintiffs' Exhibit to Motion to Strike Showing that there are a total of twenty two experts related to injury, damages, and causation for both parties).

Conversely, almost all of the pre-trial work required for Phase 1 is complete or near complete. The Court has already ruled on the question of whether Veolia owed a duty in its prior summary judgement ruling. 5:17-cv-10164, ECF No. 606. All of the expert discovery related to the issues of breach has been completed, and the Court has already ruled on Veolia's Daubert and Motions *in Limine* regarding Dr. Russell. And finally, the Court has resolved dozens of Motions *in Limine* in preparation for the Class Trial, many of which are applicable and ready to be applied to the Phase 1 breach questions. Accordingly, Plaintiffs request a start date for the bifurcated Phase 1 trial of May 22, 2024.

## V.  CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court exercise its broad discretion and bifurcate the upcoming Bellwether III trial, as well as expedite the trial to begin on May 22, 2024.

Dated:       March 6, 2024                               Respectfully submitted,

/s/ Hunter Shkolnik                                      /s/Corey M. Stern
Hunter Shkolnik                                          Corey M. Stern
Patrick Lanciotti                                        Melanie Daly
360 Lexington Avenue, 11th Floor                         605 Third Ave., 33rd Floor
New York, New York 10158                                 New York, New York 10158
(212) 397-1000                                           (212) 605-6298
hunter@nsplaw.com                                        cstern@levylaw.com
planciotti@napolilaw.com                                 mdaly@levylaw.com

15

**CERTIFICATE OF SERVICE**

I hereby certify that on March 6, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

<u>/s/ Melanie Daly</u>
Melanie Daly
