UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| *IN RE*: FLINT WATER CASES. | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| | Hon. Elizabeth A. Stafford, Magistrate Judge |

---

## VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF CONFIDENTIALITY DESIGNATIONS

## INTRODUCTION

In September 2020, the parties negotiated a protective order. After an independent review, the District Court entered it, but only after finding "good cause" under Federal Rule of Civil Procedure 26(c) and Local Rule 26.4. *See* Confidentiality Order 2, ECF No. 1255-3, PageID.39384 (finding "good cause for entry of a confidentiality order . . . to protect the parties' legitimate privacy and confidentiality interests [and] to simplify and expedite proceedings in this complex litigation"). All parties have since relied upon the Order—and the specific standards set forth therein—to assess whether to designate documents as "confidential."

The Order is comprehensive. As relevant here, it specifies *when* challenges must be made (*i.e.*, no later than 60 days after the close of fact discovery for the action in which the documents were produced, *see id.* at 26, PageID.39408) and *what* the designating party must show to maintain a confidentiality claim (*i.e.*, that it had a good-faith belief that the documents were not readily available to the public and that their use for non-litigation purposes "could" cause it competitive harm or oppression). *See id.* at 5, PageID.39387.

The current dispute is whether two groups of documents are "confidential" under the plain text of the Order. The first group—the "PR-Privileged Documents"—consists of emails and documents exchanged between and among VNA, its lawyers, and its PR firms. These materials were always intended to be

1

privileged and confidential. VNA withheld them on privilege grounds, but, in July 2023, the District Court overruled those claims—in VNA's view, erroneously. Tr. of July 19, 2023, Status Conference (Privilege Ruling) 28, ECF No. 2540, PageID.83988. VNA respectfully submits that these documents are entitled to confidential treatment because: (i) they are not readily available to the public; and (ii) using them for non-litigation purposes (such as by leaking them to the media, as Plaintiffs seek to do) could cause VNA competitive harm by, for example, undermining—if not eviscerating—its ability to appeal the Privilege Ruling.

The second group—the "PR Documents"—contains communications between VNA and its PR firms. VNA respectfully submits that these documents are entitled to "confidential" treatment under the Order because: (i)  Plaintiffs failed to challenge the designations within the 60-day limit prescribed by the Order; and (ii) the documents are non-public and, if disseminated publicly for non-litigation purposes, could cause VNA competitive harm or oppression.

## ARGUMENT

**I.    Documents Are Entitled To Confidential Treatment If They Satisfy The Standard Set Out In Section 5 Of The Confidentiality Order**

### A.    The Federal Rules Authorize Liberal Discovery

Rule 26 authorizes liberal discovery. Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Yet "[m]uch of the

information that surfaces during pretrial discovery may be unrelated, or only tangentially related, to the underlying cause of action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984); *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) ("Discovery concerns the parties' exchange of information that might or might not be relevant to their case."). Because "litigants [may] obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy," there is a "significant potential for abuse." *Seattle Times Co.*, 467 U.S. at 34.

## B.   Rule 26(c) Addresses The Potential For Abuse By Authorizing District Courts To Issue Protective Orders

Rule 26(c) allows district courts to address the potential for abuse created by the liberal discovery rules. It does so by giving district courts broad discretion to issue protective orders that limit, condition, or outright prohibit either the taking of discovery or the use of discovery materials. Under the Rule, courts may, "for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

Courts in this district have noted that "the 'good cause' standard in Rule 26(c) should not present a substantial hurdle to clear where the movant seeks a limited protective order concerning nonjudicial documents." *AFT Michigan v. Project Veritas*, 2023 WL 2890152, at *3 (E.D. Mich. Apr. 10, 2023); *see also Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 274 (D. Conn. 2021) (courts "view Rule

26(c)'s 'good cause' standard as a low hurdle to clear"); *Turner v. Sam's East, Inc.*, 2018 WL 6061085, at *2 (E.D. Mich. Nov. 20, 2018) ("Defendant is not seeking to exclude these items from litigation. Rather, Defendant wants to limit Plaintiff's use of these items to the present legal action, and ensure that this information is not disclosed to the public in some manner outside of its use in this litigation.").

### C. The District Court Rightly Found "Good Cause" To Enter The Confidentiality Order

Like other courts "sorely pressed by demands to try cases promptly and to rule thoughtfully on potentially case dispositive motions," the District Court found good cause to enter the Confidentiality Order. *Turner*, 2018 WL 6061085, at *2 (quoting *Hoffman v. City of Royal Oak*, 2015 WL 1885972, at *5 (E.D. Mich. Apr. 24, 2015)).[1] It did so to facilitate discovery, speed up proceedings, protect the privacy interests of parties and non-parties alike, and balance the rights of the parties and the

---

[1] Such orders are often described as "blanket" protective orders. "A blanket protective order 'allows the parties to designate certain information as confidential without the need for the Court to review each piece of information before that designation.'" *N.T. by & through Nelson v. Children's Hosp. Med. Ctr.*, 2017 WL 3314660, at *5 (S.D. Ohio Aug. 3, 2017) (quoting *Anderson v. Frye*, 2006 U.S. Dist. LEXIS 46352, at *3 (S.D. Ohio July 7, 2006)). These orders "place the burden on the producing party to act in good faith in designating information as confidential, and allow for disputes over the propriety of that designation to be resolved by the Courts if the parties cannot agree." *Ruiz-Bueno v. Scott*, 2013 WL 6122399, at *2 (S.D. Ohio Nov. 21, 2013).

public. Confidentiality Order 2, PageID.39384.[2]

**D.      The Confidentiality Order Sets Out When Challenges Are Timely And What Documents May Be Protected As "Confidential"**

The Confidentiality Order's express terms govern the present challenge. The Order prescribes when confidentiality designations may be challenged, and what the designating party must show to maintain such a designation in the face of a challenge. The Court's task is to enforce the Confidentiality Order as written. *See Tecnomatic S.p.A. v. ATOP S.p.A.*, 2023 WL 584021, at *4 (E.D. Mich. Jan. 27, 2023) (applying protective order as written, even though it shifted the burden to the challenging party, because the parties "agreed to the procedures and burdens for challenging document designations").[3]

---

[2] This was entirely appropriate. "'[P]rotective orders issued under Rule 26(c) serve the vital function of securing the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant,' an objective which 'represents the cornerstone of our administration of civil justice.'" *Flagg ex rel. Bond v. City of Detroit*, 268 F.R.D. 279, 291 (E.D. Mich. 2010) (quoting *SEC v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)); *see also Smith v. FirstEnergy Corp.*, 2021 WL 1940234, at *3 (S.D. Ohio May 14, 2021) ("To avoid disputes regarding production, it is 'typical' for parties to use protective orders in order to move discovery along.") (quoting *Ruiz-Bueno*, 2013 WL 6122399, at *2).

[3] The Court's post-hearing order cites *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) for the proposition that, to protect a document, VNA must now show "clearly defined and serious injury resulting from the discovery sought." Order Regarding In Camera Review 2, ECF No. 2872, Page.ID94668. But *Nix* is not applicable here because it addressed what a party must show to justify the entry of a protective order in the first place. *Nix*, 11 F. App'x at 498 ("The burden of establishing good cause *for a protective order* rests with the movant.") (emphasis added). By contrast, here,

### 1. The Confidentiality Order Sets Forth When Confidentiality Designations May Be Challenged

The Confidentiality Order imposes a time limit on when a designation may be challenged. Specifically, it provides that an objecting party must state "in concise but meaningful language the factual basis on which the challenge to each item is based" within 60 days of either the confidentiality designation or the close of fact discovery in the matter in which the documents were produced (whichever comes later). Confidentiality Order 26, PageID.39408.

Time limits like this are commonly included in protective orders to deter abuse. Courts have noted that some litigants "abuse a protective order's objection mechanism, using vague or wholesale challenges as a tactic to burden designating parties with an overwhelming duty to defend." *N.T. by & through Nelson*, 2017 WL 3314660, at \*7; *cf. Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 529 F. Supp. 866, 893-95 (E.D. Pa. 1981) (denying motion for "wholesale declassification"; allowing party who waited years to challenge hundreds of thousands of documents to challenge only "critical categories of documents"). This

---

the District Court has already entered the Confidentiality Order based on a "good cause" finding. This Court's task is not to re-write the Confidentiality Order, but rather to apply its plain terms. Put differently, VNA's burden is to show that the documents are entitled to protection *under the standards set by the Confidentiality Order itself*. Thus, here, VNA must show that sharing the challenged documents with the media—as Plaintiffs propose to do—"could cause" VNA to suffer competitive harm or oppression. Confidentiality Order at 5.

Court must enforce these time limits, which the parties jointly proposed and the District Court approved.

### 2. The Confidentiality Order Establishes The Standards For Maintaining Documents As Confidential

Section 5 of the Confidentiality Order specifies what the designating party must show to protect documents as "confidential." First, the designating party must show that the documents are non-public. *See* Confidentiality Order 5, PageID.39387 (documents must "contain[] private, non-public, confidential, competitively-sensitive, or proprietary information that is not readily ascertainable through lawful means by the public").[4] Second, the designating party must show that public use of the documents could—or, in some cases, likely would—cause it prejudice. *See id.*

Under the Order, the designating party's burden differs depending on whether the challenging party seeks to use a document for an authorized purpose. If so, then the designating party faces a tall burden: it can show good cause to protect the document only if it shows that public disclosure of the documents "*would likely*

---

[4] The Confidentiality Order separately allows parties to designate a document "Highly Confidential" if the document also contains "highly sensitive proprietary information," including but not limited to "current financial or business planning information; recent, current, and projected future financial performance data; recent and current customer lists; recent, current, and future marketing plans; planning information for future products and services; and projected future business development plans and strategies." Confidentiality Order 6, PageID.39388. None of the documents at issue here are marked "Highly Confidential."

*cause* oppression [or] competitive disadvantage." *Id.* at 5, PageID.39387 (emphasis added). But when, as here, the challenging party seeks to use the document "for purposes other than those authorized by this Order," then the designating party's burden is much lower: it need only show that disclosure "*could cause* oppression or competitive disadvantage." *Id.* (emphasis added).

### E.    Because Sharing Documents With The Media Is Not Authorized By The Order, The "Could Cause Harm" Standard Applies

Accordingly, to determine the applicable "good cause" standard, this Court must first determine whether sharing documents with the media is authorized under the Confidentiality Order. Plainly, it is not. Per the Order, designated documents may "be used solely for the prosecution or defense of the . . . Flint Water Cases." Confidentiality Order 2, PageID.39384; *see id.* at 15, PagedID.39397 ("Protected Material may only be used for the purpose of prosecuting . . . the Flint Water cases.").

To that end, the Order specifically authorizes the parties to:

- file designated materials with the Court. *Id.* at 12-14, PageID.39394-96;[5]

- use designated materials "at trial" or in "evidentiary hearing[s]." *Id.* at 16, PageID.39398; or

- share designated materials with courts, mediators, in-house and external counsel, counsel's staff, insurers, jury research firms, experts, consultants, and parties who are natural persons. *Id.* at 17-22,

---

[5] The designating party may seek to seal such materials, but that requires "a separate order of the Court." *Id.* at 14-15, PageID.39396-97.

PageID.39399-404.

Nothing in the Confidentiality Order authorizes a party to disseminate confidential documents to the media; indeed, it forbids such conduct. Accordingly, when assessing whether VNA has carried its burden of showing good cause, this Court must apply the "could cause harm" standard set by Section 5(c) of the Order.[6]

## F.    The "Could Cause Harm" Standard Reflects Sixth Circuit Law

The Confidentiality Order's "could cause harm" standard is entirely consistent with the law in this Circuit. When a party proposes to use confidential documents for purposes authorized by the Order (*e.g.*, a court filing), the documents will ordinarily become adjudicatory records. By contrast, when, as here, a party seeks to make public documents that have never been used in a court proceeding or filing, the records at issue are merely discovery materials.

The Sixth Circuit distinguishes between discovery materials (which are easily protectible) and adjudicatory records (which are not). Indeed, as the Sixth Circuit has explained, "*[s]ecrecy is fine at the discovery stage.*" *Shane Grp.*, 825 F.3d at 305 (emphasis added) (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545

---

[6] In urging the Court not to apply the Confidentiality Order as written, Plaintiffs are essentially asking to modify its terms. But many "trial courts within this circuit . . . apply a heightened burden where, as here, the party seeking modification had agreed to the entry of the protective order." *DSM Desotech, Inc. v. Momentive Specialty Chemicals, Inc.*, 2016 WL 8193590, at *5 (S.D. Ohio May 31, 2016) (collecting cases). Plaintiffs have not attempted to carry that burden here.

(7th Cir. 2002)). That is because neither the parties nor the public at large have *any* First Amendment or common law right of access to discovery materials. *See Seattle Times Co.*, 467 U.S. at 32; *Shane Grp.*, 825 F.3d at 305; *The Courier Journal v. Marshall*, 828 F.2d 361, 366 (6th Cir. 1987); *AFT Michigan*, 2023 WL 2890152, at *2 (there is no "presumption [of public access] with respect to unfiled discovery materials"). By contrast, when it comes to adjudicatory records, the public has "a strong interest in obtaining the information contained in the court record." *Shane Grp.*, 825 F.3d at 305 (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983)).

## II.    VNA Has Shown Good Cause To Maintain The Documents As Confidential Under The "Could Cause Harm" Standard

The only documents that remain at issue are the PR-Privileged Documents and the PR Documents. VNA has carefully re-reviewed both sets of documents in light of this Court's comments during the February 29 hearing. As explained below, VNA does not believe that the Court must necessarily review every document. Rather, VNA believes that the confidential status of the documents turns primarily on the Court's resolution of three legal questions: (i) whether the "could cause harm" standard applies;[7] (ii) whether public dissemination of the PR-Privileged Documents

---

[7] VNA does not claim that it could satisfy the "would likely cause harm" standard that would apply if Plaintiffs sought to de-designate the documents for purposes of a legal filing or for use at trial. Accordingly, if the Court concludes that the "would likely cause harm" standard applies, it need not substantively review any of the

pending appeal of the Privilege Ruling could cause it competitive harm or oppression; and (iii) whether Plaintiffs' challenges to the PR-Documents are foreclosed by the 60-day time limit set out in the Confidentiality Order.

### A. The PR-Privileged Documents Are Confidential Because Public Disclosure Could Cause VNA Competitive Harm or Oppression

VNA produced 71 documents in response to the Privilege Ruling.[8] VNA

---

documents. Nevertheless, VNA relied in good faith on the plain language of the Confidentiality Order to designate documents as confidential when it determined that a document's public dissemination could cause it competitive harm or oppression. *See* Decl. of Rhiannon A. Campbell ¶¶ 4-5.

[8] These documents are VWNAOS085515 (# 1), VWNAOS085516 (# 2), VWNAOS090992 (# 3), VWNAOS091116 (# 4), VWNAOS091117 (# 5), VWNAOS091121 (# 6), VWNAOS091123 (# 7), VWNAOS091124 (# 8), VWNAOS091129 (# 9), VWNAOS091152 (# 10), VWNAOS091160 (# 11), VWNAOS164985 (# 12), VWNAOS164993 (# 13), VWNAOS164994 (# 14), VWNAOS552956 (# 16), VWNAOS552988 (# 17), VWNAOS552989 (# 18), VWNAOS552999 (# 19), VWNAOS553020 (# 20), VWNAOS553047 (# 21), VWNAOS553075 (# 22), VWNAOS553105 (# 24), VWNAOS553134 (# 25), VWNAOS544106 (# 26), VWNAOS544108 (# 27), VWNAOS553247 (# 28), VWNAOS553290 (# 29), VWNAOS526234 (# 38), VWNAOS553469 (# 43), VWNAOS528237 (# 49), VWNAOS528366 (# 50), VWNAOS555305 (# 56), VWNAOS555464 (# 57), VWNAOS555473 (# 58), VWNAOS555522 (# 59), VWNAOS555574 (# 60), VWNAOS555596 (# 61), VWNAOS555597 (# 62), VWNAOS555598 (# 63), VWNAOS555602 (# 64), VWNAOS536974 (# 65), VWNAOS555806 (# 66), VWNAOS555873 (# 67), VWNAOS556604 (# 68), VWNAOS556606 (# 69), VWNAOS556763 (# 70), VWNAOS556764 (# 71), VWNAOS556784 (# 72), VWNAOS556785 (# 73), VWNAOS556786 (# 74), VWNAOS556940 (# 75), VWNAOS556942 (# 76), VWNAOS556989 (# 77), VWNAOS557041 (# 78), VWNAOS557181 (# 79), VWNAOS557186 (# 80), VWNAOS557195 (# 81), VWNAOS557207 (# 82), VWNAOS557212 (# 83), VWNAOS557213 (# 84), VWNAOS558399 (# 85), VWNAOS558968 (# 86), VWNAOS558981 (# 87), VWNAOS559054 (# 88), VWNAOS559056 (# 89),

respectfully suggests that these documents are entitled to confidential treatment because: (a) they are discovery materials; (b) Plaintiffs seek to use them in ways that are not authorized by the Confidentiality Order; and (c) public dissemination of the documents could cause VNA competitive harm or oppression.

To start, although VNA believes that the District Court's Privilege Ruling was wrong, it cannot appeal that ruling at present because privilege determinations are not subject to interlocutory review. *See Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("collateral order appeals are not necessary to ensure effective review of orders adverse to the attorney-client privilege"). VNA designated the PR-Privileged Documents as "confidential" because it believed that, if the documents were to be publicly disseminated, then there would be no real way for the courts to "unring [the] bell." *See Hicks v. Straub*, 239 F. Supp.2d 697, 708 (E.D. Mi. 2003) (quoting *Dunn v. United States*, 307 F.2d 883, 996 (5th Cir. 1962) ("[O]ne cannot unring a bell; after the first thrust of the saber it is difficult to say forget the wound; and finally, if you throw a skunk into the jury box, you can't instruct the jury not to smell it.")). Thus, in VNA's view, the public dissemination of the PR-Privileged Documents would both destroy its ability to protect communications that were

---

VWNAOS559057 (# 90), VWNAOS551868 (# 91), VWNAOS559324 (# 92), VWNAOS559325 (# 93), VWNAOS559351 (# 94), and VWNAOS559379 (# 95).

always intended to be confidential and jeopardize its right meaningfully to appeal the Privilege Ruling. *See* Decl. of Rhiannon A. Campbell ¶¶ 7-8.

Further, as noted below, the PR-Privileged Documents contain confidential information, disclosure of which could cause VNA competitive harm or oppression:

- **VWNAOS085515 (# 1)**, **VWNAOS085516 (# 2)**, **VWNAOS090992 (# 3)**, **VWNAOS091116 (# 4)**, **VWNAOS091117 (# 5)**, **VWNAOS091121 (# 6)**, **VWNAOS091123 (# 7)**, **VWNAOS091124 (# 8)**, **VWNAOS091129 (# 9)**, **VWNAOS091160 (# 11)**, **VWNAOS164993 (# 13)**, **VWNAOS164994 (# 14)**, **VWNAOS552999 (# 19)**, **VWNAOS553020 (# 20)**, **VWNAOS553134 (# 25)**, **VWNAOS553290 (# 29)**, **VWNAOS556606 (# 69)**, **VWNAOS556764 (# 71)**, **VWNAOS556784 (# 72)**, **VWNAOS556785 (# 73)**, and **VWNAOS556786 (# 74)** are draft documents containing talking points and statements concerning Flint prepared at the direct of, and in coordination with, counsel. Many of the documents contain track changes and internal comments, revealing VNA's PR strategy and highlighting the different priorities in crafting responses to media and public inquiries.

- **VWNAOS091152 (# 10)**, **VWNAOS164985 (# 12)**, **VWNAOS553047 (# 21)**, **VWNAOS553075 (# 22)**, **VWNAOS553105 (# 24)**, **VWNAOS544106 (# 26)**, **VWNAOS544108 (# 27)**, **VWNAOS553247 (# 28)**, **VWNAOS556940 (# 75)**, **VWNAOS556942 (# 76)**, **VWNAOS556989 (# 77)**, and **VWNAOS557041 (# 78)** are documents prepared at the direction of, and in coordination with, counsel concerning VNA's response to the Michigan Attorney General's lawsuit against VNA. They reveal both VNA's legal strategy and how VNA anticipates crafting its PR responses in light of that strategy. They further describe how VNA should frame its response to the lawsuit, laying out several options for how to implement the PR responses.

- **VWNAOS552956 (# 16)** is an email chain between VNA, its outside counsel, and its PR consultants concerning the strategy behind the release of a PR statement in response to the filing of the Michigan Attorney General complaint.

- **VWNAOS552988 (# 17)**, **VWNAOS552989 (# 18)**, **VWNAOS555464**

**(# 57)**, and **VWNAOS555806 (# 66)** are email chains concerning the development of a timeline of events for Flint. The email chains contain strategic insights behind changes made to the draft before its eventual release.

- **VWNAOS526234 (# 38)** is an email chain concerning advice provided by VNA's legal counsel on how to approach certain audio recordings related to Flint.

- **VWNAOS553469 (# 43)** is an email from Rasky—one of Flint's PR consultants—concerning edits made to a statement to be issued following the filing of a motion to dismiss. The email reveals strategic insight into revisions made to the statement.

- **VWNAOS528237 (# 49)** and **VWNAOS528366 (# 50)** are email chains concerning revisions made to a draft services agreement, including comments on how and why the revisions should be made.

- **VWNAOS555305 (# 56)** is an email chain with VNA, its PR consultants, and its outside counsel concerning a draft FAQ page set up to respond to inquiries concerning Flint.

- **VWNAOS555473 (# 58)** is an email chain concerning the termination of a VNA employee and the affirmative steps to be taken to ensure that corporate documents, including those concerning Flint, were taken.

- **VWNAOS555522 (# 59)** are email chains concerning a chronology prepared as part of a report on VNA's role in Flint created to advance VNA's public outreach efforts. The chains contain commentary by VNA's general counsel on changes to the strategy behind the outreach efforts in light of plaintiffs' theories underlying lawsuits filed against VNA.

- **VWNAOS555574 (# 60)** is an email chain addressing a PR statement explaining VNA's limited role in Flint proposed by VNA's PR consultants that was then forwarded to VNA's counsel. VNA's outside counsel gave feedback on the proposed explanation, highlighting potential issues with the proposed explanation's framing. VNA's in-house counsel then provided his own thoughts on the proposed pitch.

- **VWNAOS555596 (# 61)**, **VWNAOS555597 (# 62)**, **VWNAOS555598 (# 63)**, and **VWNAOS555602 (# 64)** are email chains concerning a PR

statement prepared by VNA's PR consultant addressing the filing of the Michigan Attorney General's lawsuit. The chain contains the consultant's recommended approach to framing the lawsuit.

- **VWNAOS536974 (# 65)** is an email chain concerning a draft PR statement on Flint.

- **VWNAOS555873 (# 67)** is an email chain concerning a response to a media inquiry. The chain shows alterations to the draft response and explanations from VNA's general counsel addressing why certain statements should be revised.

- **VWNAOS556604 (# 68)**, **VWNAOS556763 (# 70)**, **VWNAOS558968 (# 86)**, are emails forwarding to VNA's PR consultants edits to draft PR statements.

- **VWNAOS557181 (# 79)**, **VWNAOS557186 (# 80)**, **VWNAOS557195 (# 81)**, **VWNAOS557207 (# 82)**, **VWNAOS557212 (# 83)**, and **VWNAOS557213 (# 84)** are email chains concerning the filing of new criminal charges in Michigan and VNA's internal and external strategic responses to that legal development.

- **VWNAOS558399 (# 85)** and **VWNAOS558981 (# 87)** are email chains involving VNA's deputy general counsel concerning a memorandum addressing arguments in the draft motion to dismiss the Michigan Attorney General's complaint to VNA's PR consultants. The email describes one of the arguments and raises PR concerns implicated by the argument.

- **VWNAOS559054 (# 88)**, **VWNAOS559056 (# 89)**, and **VWNAOS559057 (# 90)** are email chains concerning the Michigan Attorney General's press conference announcing additional criminal charges.

- **VWNAOS551868 (# 91)** is an email chain involving Clark Hill—one of VNA's law firms—concerning an article on Lori Lightfoot that was transmitted to VNA's general counsel's office.

- **VWNAOS559324 (# 92)** is an email chain concerning a motion to dismiss and the PR responses to opposing counsel's comparison to genocide.

- **VWNAOS559325 (# 93)** and **VWNAOS559351 (# 94)** are email chains

concerning draft filings on non-parties at fault that were forwarded to the PR consultants, who were reminded not to disclose the documents.

- **VWNAOS559379 (# 95)** is an email chain transmitting a memorandum from VNA's outside counsel providing suggested chains to VNA's website on Flint.

These documents reveal how VNA coordinates its PR and legal strategy. VNA believes that disclosure of these documents could cause it competitive harm or oppression because VNA and its competitors all devote significant financial and logistical resources to developing their legal and PR strategies. If competitors had access to these documents, they could assess, without expending any resources of their own, how to improve their own PR and legal responses. *Cf. Turner*, 2018 WL 6061085, at *1-2 (upholding confidentiality designations for "store manuals, and training policies regarding the T-Pole" after concluding that "[d]efense counsel's representation that information concerning the T-Pole is 'proprietary' sufficiently establishes that there is a business interest in maintaining its confidentiality"); *Cooper v. Longwood Forest Prod., Inc.*, 2021 WL 4894707, at *3 (S.D. Ohio May 10, 2021) ("the Court is satisfied that Defendants have 'articulate[d] specific facts showing clearly defined and serious injury resulting from the discovery sought'" based on "[t]he possibility that Wayfair's competitors could use [a policy used by Wayfair when a customer is injured by one of its products] for a competitive advantage" by "allow[ing] those competitors to modify their business policies accordingly," thus "good cause exists for designating it confidential pursuant to the

16

Second Stipulated Protective Order" (alterations omitted) (quoting *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001))). VNA thus believes that disclosure of these documents could cause it competitive harm or oppression.

### B.   The PR Documents Are Entitled To Confidential Treatment

The Court also should uphold VNA's confidentiality designations for the 45 PR Documents.[9] As an initial matter, Plaintiffs' challenges to all of these documents are untimely under the terms of the Confidentiality Order. Separately, VNA has good cause to preserve the confidentiality of these documents under the "could cause harm" standard because they reveal its PR strategy.

---

[9] These documents are: VWNAOS172775 (# 15), VWNAOS329191 (# 23), VWNAOS331518 (# 30), VWNAOS331543 (# 31), VWNAOS331550 (# 32), VWNAOS331553 (# 33), VWNAOS331555 (# 34), VWNAOS331558 (# 35), VWNAOS331561 (# 36), VWNAOS331569 (# 37), VWNAOS260180 (# 39), VWNAOS332516 (# 40), VWNAOS526894 (# 41), VWNAOS526900 (# 42), VWNAOS222380 (# 44), VWNAOS448563 (# 45), VWNAOS222385 (# 46), VWNAOS494815 (# 47), VWNAOS494840 (# 48), VWNAOS550141 (# 51), VWNAOS550142 (# 52), VWNAOS521990 (# 53), VWNAOS522059 (# 54), VWNAOS522063 (# 55), VWNAOS172117 (# 96), VWNAOS525301 (# 97), VWNAOS172752 (# 98), VWNAOS552949 (# 99), VWNAOS544490 (# 100), VWNAOS332056 (# 101), VWNAOS332461 (# 102), VWNAOS332474 (# 103), VWNAOS333484 (# 104), VWNAOS526955 (# 105), VWNAOS526956 (# 106), VWNAOS333693 (# 107), VWNAOS526982 (# 108), VWNAOS526987 (# 109), VWNAOS526996 (# 110), VWNAOS527000 (# 111), VWNAOS527011 (# 112), VWNAOS527022 (# 113), VWNAOS527034 (# 114), VWNAOS528236 (# 115), and VWNAOS249107 (# 116).

VNA previously categorized documents 15, 23, 30, 31, 32, 33, 34, 35, 36, 37, 39, 40, 41, 42, 44, 45, 46, 47, 48, 51, 52, 53, 54, and 55 as documents produced pursuant to the Privilege Ruling, but upon further review, those documents were not produced then and are best categorized as PR documents.

### 1.  Plaintiffs' Challenges Are Untimely

The PR Documents were all produced, and marked as confidential, in 2020, during discovery for the Bellwether I action. Discovery in that action closed on November 13, 2020; the trial began on February 28, 2022; and a mistrial was declared on August 11, 2022. Any challenge to the confidentiality designations for these documents was thus due, at the latest, by January 12, 2021 (60 days after the close of discovery). *See* Confidentiality Order 26, PageID.39408. Because Plaintiffs did not challenge the confidentiality designations for these documents until almost three years after the close of discovery in that action—and indeed, did not challenge the designations until well after the Bellwether I trial—their challenges must be denied as untimely.

As noted, the Confidentiality Order limits the time by which a party must challenge a designation because judicial experience has shown that parties sometimes use de-designation demands as "a litigation tactic" that "unjustifiably caus[es] a tremendous burden to the parties and court." *N.T. by & through Nelson*, 2017 WL 3314660, at *8. Here, Plaintiffs "s[at] on [their] hands while the mountain of discovery materials [grew]" before eventually "attempt[ing] to challenge the protection of such material[s] with the same ease with which [they] could have raised an objection contemporaneously." *Id.* (quotation marks omitted). Not only did they wait until after the conclusion of discovery, but Plaintiffs did not challenge any

designation until a year after the Bellwether I trial concluded. The Court must accordingly deny Plaintiffs' confidentiality challenges as untimely.

### 2. VNA Appropriately Designated The Documents As Confidential Because They Reveal PR Strategy

If the Court reaches the question, it should conclude that VNA has good cause to maintain the confidentiality of the PR documents. VNA made a good-faith determination that these documents (which often have nothing to do with Flint) should remain confidential because they reveal its PR strategy and that their public dissemination "could cause" it to suffer competitive harm or oppression because the documents would give its competitors insights into VNA's PR strategy and practices:

- **VWNAOS172775 (# 15)**, **VWNAOS521990 (# 53)**, **VWNAOS522059 (# 54)**, and **VWNAOS522063 (# 55)** are email chains with VNA's counsel concerning the legal ramifications of its PR strategy. Importantly, these documents were not subject to the District Court's privilege ruling, so they are redacted on privilege and work product grounds.

- **VWNAOS329191 (# 23)** is an email chain concerning potential outreach for support from third-party organizations that represent water companies.

- **VWNAOS331518 (# 30)**, **VWNAOS331543 (# 31)**, and **VWNAOS331550 (# 32)**, **VWNAOS331553 (# 33)**, **VWNAOS331555 (# 34)**, **VWNAOS331558 (# 35)**, **VWNAOS331561 (#36)**, and **VWNAOS331569 (# 37)** are email chains concerning the PR budget. They identify line-item expenses and the amount each project would cost and includes internal comments on certain expenses. They also contain information on decisions concerning the salaries and capabilities of certain employees.

- **VWNAOS260180 (# 39)**, **VWNAOS332516 (# 40)**, **VWNAOS526894 (# 41)**, **VWNAOS526900 (# 42)**, **VWNAOS332461 (# 102)**, and

**VWNAOS332474 (# 103)** are drafts of VNA's response to a Mother Jones article and include comments and tracked changes. Their status as drafts reveals how VNA adjusted its response to maximize the response's effectiveness.

- **VWNAOS222380 (# 44)**, **VWNAOS448563 (# 45)**, and **VWNAOS222385 (# 46)** are draft responses to questions concerning Veolia's operations in Israel following the rise of the boycott, divest, and sanction movement.

- **VWNAOS494815 (# 47)** and **VWNAOS494840 (# 48)** are presentation slides on VNA's communications strategic plans. The slides describe VNA's communications priorities and how VNA plans to advance those priorities.

- **VWNAOS550141 (# 51)** and **VWNAOS550142 (# 52)** are invoices for legal work done in connection with a request for proposal by Oklahoma Water Utilities trust.

- **VWNAOS172117 (# 96)** is a series of discussion points concerning communications goals. It discusses budget reductions and identifies specific amounts cut. It also identifies specific steps VNA is taking to deal with different PR challenges it was facing. It also identifies areas where VNA needed to change its PR communications.

- **VWNAOS525301 (# 97)** is an email chain concerning the potential retention of Rasky, one of VNA's PR consultants, for PR work done in relation to a project unrelated to Flint. The email includes the exact amount that VNA was willing to spend for Rasky's work on this project.

- **VWNAOS172752 (# 98)** is an email chain concerning how VNA should respond to questions from its other customers concerning Flint. Similarly, **VWNAOS552949 (# 99)** is an email chain concerning a draft statement concerning Flint that includes commentary on how to edit the statement. These documents reveal how VNA responds to crises.

- **VWNAOS544490 (# 100)** is the consulting agreement with Clark Hill for work done in Detroit. The agreement lays out in detail the work Clark Hill did on behalf of VNA and sets forth how much VNA paid for its services.

- **VWNAOS526955 (# 105)** and **VWNAOS526956 (# 106)** are emails

transmitting talking points prepared for VNA to respond to customer inquiries concerning negative press coverage in Pittsburgh. It again reveals how VNA conducts its client relations and PR strategy.

- **VWNAOS333693 (# 107)** and **VWNAOS527000 (# 111)** are a memorandum from Rasky, one of VNA's PR consultants, laying out short-term and long-term media objectives. It describes a proposed strategy to respond to press coverage in Pittsburgh, how to maximize positive media coverage, and to push for long-term positive press coverage by leveraging salient events.

- **VWNAOS526982 (# 108)** is an email chain with Mercury, one of VNA's PR consultants, concerning potential outreach to a documentarian covering Flint.

- **VWNAOS526987 (# 109)**, **VWNAOS526996 (# 110)**, and **VWNAOS527034 (# 114)** are memoranda from Mercury, one of VNA's PR consultants, on specific proposed PR campaigns to improve VNA's reputation. The memorandum also specifies the budget needed for some of the proposed initiatives.

- **VWNAOS527011 (# 112)** is an email chain with Mercury, one of VNA's PR consultants, where Mercury gave its assessment on how the media was covering VNA in articles on Flint and the Michigan Attorney General's lawsuit.

- **VWNAOS527022 (# 113)** is a PR strategy update laying out VNA's PR efforts to improve visibility in the municipal and oil and gas/petrochemical markets. The memorandum lays out VNA's various projects to improve its PR standing in these two markets across the United States. It also describes VNA's defensive PR strategy in response to the Pittsburgh controversy.

- **VWNAOS528236 (# 115)** is a draft confidentiality agreement with Truscott Rossman, a PR company. Relatedly, **VWNAOS249107 (# 116)** is the draft contract with Truscott Rossman for work in Detroit. It details the work the company would do on VNA's behalf and specified the billing rate for each employee who would do work for VNA.

Public relations play an important role for both VNA and its competitors.

VNA and its competitors perform considerable public-facing work, and they expend

significant resources to protect their reputations both with their customers and with the general public. Accordingly, VNA and its competitors frequently retain PR companies to help them improve their PR strategies. They spend significant sums of money on these services, and the PR companies provide them with detailed strategic advice. Allowing disclosure of the contracts with the PR companies could cause VNA competitive harm because it would undermine any future negotiating strategy. *Cf. LendingTree, Inc. v. LowerMyBills, Inc.*, 2006 WL 3359432, at *6 (W.D.N.C. Nov. 20, 2006) ("This document is an unexecuted consulting agreement which the Plaintiff fears would reveal a negotiating position of LendingTree that may be used in the future against it in similar negotiations. For this document, the Plaintiff has carried its burden of proof that it has a reasonable expectation of confidentiality." (alteration and quotation marks omitted)). And revealing the underlying PR strategy could cause competitive harm because it would offer competitors free access to the PR recommendations and expertise that VNA has spent considerable resources to obtain. *Cf. Turner*, 2018 WL 6061085, at *1-2; *Cooper*, 2021 WL 4894707, at *3.

For these reasons, the Court should conclude that VNA has good cause to maintain the confidentiality designations of these documents.

### 3. VNA Appropriately Designated Two Documents Because They Contain Sensitive Financial Information

Finally, the Court should maintain the confidentiality designation of two documents (**VWNAOS332056 (# 101)** and **VWNAOS333484 (# 104))** that contain

sensitive financial information. Both documents are spreadsheets entitled "2017 Budget Draft." They provide a line-item breakdown of VNA's marketing budget. They identify each item on which VNA would spend money, the amount that VNA would spend, and reasons for VNA's expenditures. VNA therefore has good cause to maintain the confidentiality of these documents. If competitors were able to assess how and how much VNA spends—or considers spending—on its public relations efforts, they would be able to revise their own spending to gain an upper hand on VNA. Courts routinely maintain confidentiality designations for documents containing such financial information. *See, e.g.*, *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, 2013 WL 101590, at *3 (E.D.N.Y. Jan. 8, 2013) ("[T]he documents are also to remain confidential as they contain internal financial analyses, business plans and other sensitive company information that NYCB is entitled to protect from competitor's view." (quotation marks omitted)); *Mitchell v. Metro. Life Ins. Co.*, 2004 WL 2439704, at *2 (S.D.N.Y. Nov. 2, 2004) (upholding confidentiality designations because they "contain internal financial analyses, business plans and other sensitive company information that Met Life is entitled to protect from competitors' view"); *cf. Charles O. Bradley Tr. v. Zenith Cap. LLC*, 2006 WL 798991, at *2 (N.D. Cal. Mar. 24, 2006) ("Private financial records are normally entitled to privacy protections.").

## CONCLUSION

The Court should deny Plaintiffs' motion to compel.

DATED: March 14, 2024

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*                        *         */s/ Michael A. Olsen*                        *
James M. Campbell                              Michael A. Olsen
Alaina N. Devine                               71 South Wacker Drive
20 City Square, Suite 300                      Chicago, IL 60606
Boston, MA 02129                               (312) 7012-7120
(617) 241-3000                                 molsen@mayerbrown.com
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 14, 2024, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*
James M. Campbell