# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: | |
| BELLWETHER III | |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO BELLWETHER III PLAINTIFFS' MOTION TO BIFURCATE THE UPCOMING TRIAL INTO TWO PHASES

## STATEMENT OF ISSUES PRESENTED

1.  Should the Court bifurcate the Bellwether III trial into two phases, with the first phase addressing only the issues of breach and whether non-parties were at fault and the second phase addressing the issues of causation, damages, and allocation of fault?

    **VNA answers:**  "No"

    **Plaintiffs answer:**  "Yes."

2.  If the Court bifurcates the Bellwether III trial, should it set an expedited date for the first phase of the trial?

    **VNA answers:**  "No"

    **Plaintiffs answer:**  "Yes."

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................1

LEGAL STANDARD.........................................................................3

ARGUMENT...................................................................................4

I.  The Court Should Deny Plaintiffs' Motion To Bifurcate ................................4

    A.  Bifurcation Would Undermine Judicial Economy And
        Convenience ........................................................................4

    B.  Bifurcation Would Cause Jury Confusion .............................12

    C.  Bifurcation Raises Serious And Avoidable Seventh Amendment
        Issues ...............................................................................14

    D.  Bifurcation Would Prejudice VNA, While A Single Trial Would
        Not Prejudice Plaintiffs .........................................................17

II.  If The Court Grants Plaintiffs' Motion To Bifurcate, It Should Not
    Accelerate The Trial Date ...............................................................18

CONCLUSION................................................................................21

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Gillispie v. City of Miami Twp.*, No. 13-cv-416, 2022 WL 16541259 (S.D. Ohio Oct. 28, 2022)

*Kelley v. Steel Transp., Inc.*, No. 09-cv-14318, 2011 WL 1690066 (E.D. Mich. May 4, 2011)

*Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006)

U.S. Const. amend. VII

Fed. R. Civ. P. 16(b)(4)

## INTRODUCTION

The Bellwether III Plaintiffs ask the Court to bifurcate the upcoming trial into two phases, with the first phase addressing only the issues of breach and whether non-parties were at fault and the second phase addressing causation, injury, damages, and allocation of fault.  Plaintiffs also request that the Court accelerate the trial date and order that the first phase of the trial begin on May 22, 2024.

The Court should deny Plaintiffs' request for bifurcation for four reasons. First, bifurcation would severely undermine judicial economy.  The issues of breach and non-party fault on the one hand, and causation, injury, damages, and allocation of fault on the other, are inextricably intertwined.  The parties would have to present extensive evidence describing the actions of VNA and the non-parties-at-fault during the Flint Water Crisis in both phases.  Plaintiffs do not dispute that many witnesses inevitably would be called to testify in both phases.  The two phases of trial themselves thus would be incredibly duplicative.  And having two phases of trial would necessitate an extra round of pre-trial briefing, jury selection, jury instructions, and opening and closing arguments.  All this likely would result in two proceedings that collectively would take more time than would a single trial. Further, bifurcation would not materially advance the resolution of the Flint water litigation more than would a single trial, because the results would not be binding in other cases.

1

Second, bifurcation likely would result in jury confusion. Under Plaintiffs' proposal, the jury in the second phase would be given a complicated and detailed set of interrogatory answers about breach and non-party fault from the first phase. But then in the second phase, the jury would be presented with much of the same evidence that went to breach and non-party fault and would be asked to decide issues that overlap with those decided in the first phase. That would be confusing and unworkable, and would be avoided if Plaintiffs' claims were resolved at one trial by one jury.

Third, bifurcating this case in the way that Plaintiffs propose would raise serious Seventh Amendment issues. Plaintiffs want different elements of liability to be tried to different juries in a piecemeal fashion. But given the intertwined nature of the elements of Plaintiffs' claims, there is a serious risk that the jury in the second phase would reexamine the facts decided by the jury in the first phase. Similarly, if the first jury believes that a particular non-party was at fault, the second jury unavoidably would have to reexamine the first jury's evaluation of the non-party's conduct in order to assign a percentage of fault to that non-party. The Seventh Amendment prohibits that reexamination.

Fourth, bifurcation would prejudice VNA, while a single trial would not prejudice Plaintiffs. Bifurcation would force VNA to mount substantially overlapping defenses across two phases of trial, causing it to needlessly duplicate

2

efforts.  Plaintiffs speculate that they could suffer prejudice if their claims were resolved in one trial because evidence of causation might infect the jury's analysis of breach.  But the overwhelming majority of tort claims are tried in state and federal courts across the country without bifurcation.  Juries are routinely instructed how to consider the elements of tort claims and entrusted with considering each element accordingly.

If the Court nevertheless decides to bifurcate the case, the Court should not accelerate the trial date for the first phase of trial.  Plaintiffs' proposed May 22, 2024, trial date is impracticable, likely would delay the ultimate resolution of their claims, and would severely prejudice VNA.  That breakneck schedule does not give the parties enough time to adequately brief, and the Court to decide, motions for summary judgment, *Daubert* motions, and motions *in limine* in advance of the proposed trial date for the first phase.  Plaintiffs have not shown good cause to needlessly compress an already aggressive schedule.

## LEGAL STANDARD

To determine whether to bifurcate a trial, the court should consider "the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy." *Martin v. Heidman*, 106 F.3d 1308, 1311 (6th Cir. 1997).  "The party seeking bifurcation has the burden of demonstrating judicial economy would be promoted and that no party would be prejudiced by separate

trials." *Kelley v. Steel Transp., Inc.*, No. 09-cv-14318, 2011 WL 1690066, at *4 (E.D. Mich. May 4, 2011) (internal quotation marks omitted).

"[T]he Sixth Circuit has cautioned [that] piecemeal trial of separate issues in a single lawsuit is not the usual course and [that] bifurcation . . . is the exception, not the rule." *Koshani v. Barton*, No. 17-cv-265, 2018 WL 3326817, at *2 (E.D. Tenn. Mar. 5, 2018) (internal quotation marks omitted) (citing *In re Bendectin Litig.*, 857 F.2d 290, 308-09 (6th Cir. 1988)). "[F]ederal courts have long adhered to the rule that bifurcation should be ordered only in exceptional cases" because of the problems inherent with the "piecemeal trial of separate issues." *Procter & Gamble Co. v. CAO Grp.*, No. 13-cv-337, 2013 WL 6061103, at *1 (S.D. Ohio Nov. 18, 2013) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2388 (2d ed. 2006)).

## ARGUMENT

## I.    The Court Should Deny Plaintiffs' Motion To Bifurcate

The Court should deny Plaintiffs' motion to bifurcate because their proposal would (1) subvert judicial economy and convenience; (2) result in jury confusion; (3) raise serious Seventh Amendment issues; and (4) prejudice VNA.

### A.    Bifurcation Would Undermine Judicial Economy And Convenience

Bifurcation of issues is appropriate when the "evidence pertinent to the" issues is "wholly unrelated." *Helminski v. Ayerst Labs.*, 766 F.2d 208, 212 (6th Cir. 1985)

(internal quotation marks omitted).  Bifurcation should not be ordered when the evidence in the two trials would "overlap[]" or the bifurcated issues "are so intertwined that efficiency will not be achieved or confusion may result from any attempt at separation."  *Gillispie v. City of Miami Twp.*, No. 13-cv-416, 2022 WL 16541259, at *3 (S.D. Ohio Oct. 28, 2022) (internal quotation marks omitted).  Here, Plaintiffs' proposal would be inefficient because the issues in both proposed phases of the trial are inextricably intertwined and involve substantially overlapping evidence.

In a trial of a breach-only first phase, the parties would put on evidence describing the actions that VNA and each non-party-at-fault took during the Flint Water Crisis.  The parties then would have to present that exact same evidence for the second-phase jury.  That second jury would not be able to understand the issues and determine whether VNA's or any non-party's actions caused Plaintiffs' injuries without first hearing detailed evidence about what those parties actually did.  Likewise, to determine allocation of fault under Michigan's non-party-at-fault statute for each individual Bellwether Plaintiff, the second jury would need to hear evidence of "the nature of the conduct of each person at fault" and compare it to the conduct of others.  Mich. Comp. Laws Ann. § 600.6304(b)(2).  That means that the second jury would need to hear all of evidence of each non-party's conduct – which would almost completely overlap with the evidence from the breach-only trial.

Thus, the first jury's resolution of whether specific actions by VNA and non-parties constituted breaches of the standard of care would not obviate the need to present evidence of the same actions in order for the second-phase jury to adequately resolve causation and allocation of fault.

Because of this overlap, many witnesses will be called in both phases and much of the same "evidence and testimony" presented in the first phase "will need to be repeated in the [second] phase." *Trentham v. Hidden Mountain Resorts, Inc.*, No. 08-cv-23, 2010 WL 148166, at *2 (E.D. Tenn. Jan. 11, 2010) (denying motion to bifurcate for this reason); *see, e.g.*, *Gillispie*, 2022 WL 16541259, at *3 (same); *Weimer v. Honda of Am. Mfg., Inc.*, No. 06-cv-844, 2008 WL 4346790, at *2 (S.D. Ohio Sept. 18, 2008) (same); *Lokai v. Mac Tools Inc.*, No. 05-cv-925, 2007 WL 1666025, at *7 (S.D. Ohio June 5, 2007) (same). And all this would be accompanied by an additional and unnecessary "round of opening statements, closing arguments, and jury instructions." *Kelley*, 2011 WL 1690066, at *5.

Under Plaintiffs' proposal, all of the fact witnesses likely would testify twice. Plaintiffs explain that they would call five VNA witnesses in the breach-only trial – Marvin Gnagy, Robert Nicholas, Depin Chen, William Fahey, and David Gadis. Pls. Mot. to Bifurcate (Mot.) 4, ECF No. 2881, PageID.94824. But those witnesses inevitably would be called in the second trial to describe VNA's actions during the Flint Water Crisis in order for the second jury to understand and assess causation

and allocation of fault.  The same goes for all the witnesses that VNA would call to describe the actions of all non-parties-at-fault, which at a minimum would include former Governor Snyder, Gerald Ambrose, and Robert Bincsik.  The first-phase jury would need to hear their testimony to determine whether any of their actions breached a duty owed to the Bellwether III Plaintiffs, and if so which actions.  Then the second-phase jury would need to hear their testimony to determine whether those actions caused any Plaintiffs' alleged injury, and if so to determine each party's and non-party's comparative fault.

The experts also would have to testify twice.  Plaintiffs concede that the expert that they will call during a breach-only first phase, Dr. Larry Russell, would have to testify again in the trial of the second phase.  Mot. 4-5, PageID.94824-94825.  And although Plaintiffs speculate that VNA might only call a single expert, Dr. William Bellamy, to respond to Dr. Russell's opinions in a breach-only first phase, they are mistaken.  VNA likely would call Dr. Graham Gagnon in both phases, first to testify that VNA's water treatment recommendations were consistent with industry practice, and then to testify on, among other things, the factors that caused lead to be released in Flint and the lack of a causal relationship between VNA's conduct and that release.  *See* VNA's Response to Pls. Mot. to Strike 7, ECF No. 2866, PageID.94408.  Dr. Sheldon Masters likewise would testify on issues relevant to breach in the first phase, including on whether VNA breached the standard of care

by relying on the City of Flint's data indicating that Flint's water was compliant with the Lead and Copper Rule. *See id.* He would also describe certain non-parties' conduct and testify that those non-parties breached the standard of care. *See id.* He would be called once again during the second phase to describe, for a second time, VNA's conduct and that of the non-parties in the context of causation and allocation of fault.

Because it is clear that there would be "substantial overlap in the facts, evidence, and witnesses" across both phases, Plaintiffs' proposal would subvert judicial economy and unnecessarily inconvenience the Court, witnesses, and parties. *Gillispie*, 2022 WL 16541259, at *4 (quoting *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, 38 F.4th 651, 660 (7th Cir. 2022)); *see, e.g.*, *Lokai*, 2007 WL 1666025, at *7 (denying motion to bifurcate where "some witnesses may have to testify at both trials").

Plaintiffs dismiss these concerns because there is some evidence that would be presented only in the second phase. Mot. 5, PageID.94825. But they ignore that a substantial portion of the evidence from the first phase will have to be repeated in the second phase.

Significantly, Plaintiffs do not cite a single case in which a court separated elements of a claim in the piecemeal way they propose, where one element of liability is severed from the others and tried to a different jury. Instead, every case

8

that Plaintiffs cite involved either the bifurcation of *all* liability elements from damages, or the bifurcation of separate claims.[1]  In those cases, the evidence relevant to each trial was discrete.

That is not the case with evidence of breach and non-party fault on one hand, and evidence of causation and allocation of fault for the same tort claim on the other hand.  For that reason, courts have rejected proposals similar to the one that Plaintiffs advance.  For example, the court in *Fisher v. Ciba Specialty Chemicals Corp.* – a toxic-tort case – refused to bifurcate the sole issue of the defendant's "conduct" "from all the other issues," because doing so would have been "chaotic, inefficient, and at odds with the principles animating bifurcation in the first place."  238 F.R.D. 273, 315-16 (S.D. Ala. 2006); *see also, e.g.*, *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, No. 93-cv-6876, 2000 WL 1364272, at *3 (S.D.N.Y. Sept.

---

[1] *E.g.*, *Avery v. Neverson*, No. 18-cv-11752, 2022 WL 4241290, at *1 (E.D. Mich. Aug. 25, 2022) (liability and damages), *vacated* (E.D. Mich. May 13, 2023) (Dkt. No. 64); *Harwood v. N. Am. Bancard LLC*, No. 18-cv-12567, 2022 WL 2467722, at *1 (E.D. Mich. July 6, 2022) (same); *Gleed v. AT&T Servs., Inc.*, No. 13-cv-12479, 2015 WL 7008573, at *1 (E.D. Mich. Nov. 12, 2015) (same); *Jones v. City of Warren*, No. 11-cv-15330, 2015 WL 3937608, at *2 (E.D. Mich. June 26, 2015) (same); *Sierra Club v. City of Holland, Michigan*, No. 08-cv-1183, 2013 WL 12226061, at *1 (W.D. Mich. Sept. 4, 2013) (same); *Sadlik v. Norfolk S. Ry. Co.*, No. 08-cv-12936, 2010 U.S. Dist. LEXIS 71653, at *3-4 (E.D. Mich. July 16, 2010) (same); *Organic Chems., Inc. v. Carroll Prod., Inc.*, 86 F.R.D. 468, 469 (W.D. Mich. 1980) (same); *Nelson v. Columbia Gas Transmission, LLC.*, 808 F. App'x 321, 329 (6th Cir. 2020) (separate claims); *Little Traverse Bay Bands of Odawa Indians v. Snyder*, 194 F. Supp. 3d 648, 650 (W.D. Mich. 2016) (same).

20, 2000) (rejecting proposal to bifurcate allocation of fault from other issues because the same evidence would need to be presented in both trials).

Bifurcation also would undermine the purpose of the bellwether process. Bellwether trials are held "for the purpose of gathering information for valuing cases and settlement." *In re E. I. Du Pont De Nemours*, 204 F. Supp. 3d 962, 976 (S.D. Ohio 2016). Bifurcating this case in the way that Plaintiffs propose would not provide the parties with any helpful information for valuing the Flint water litigation. For example, a finding from the jury in the first phase that VNA breached the standard of care would shed little light on the ultimate value of any Bellwether III Plaintiff's case, let alone the value of any other plaintiff's case. That is because the question whether that breach caused a Plaintiff's injuries, and thus whether VNA faces any liability, would not be resolved until the second phase. The question of allocation of fault likewise would remain unanswered, giving the parties no insight as to the portion, if any, of some eventual damages award that would be allocated to VNA.

Bifurcation also would not advance the ultimate resolution of the Flint water litigation any more than a single trial would. Plaintiffs do not contend that the outcome of their proposed first phase would have any preclusive effect beyond the Bellwether III cases, likely for two reasons. The parties did not agree for the results of the bellwether trials to be binding in other cases, and such an agreement is

10

required to avoid "due process concerns."  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 928 n.8 (6th Cir. 2022) (internal quotation marks omitted).  And Michigan law "has rejected" offensive non-mutual issue preclusion. *Martin v. Metro. Life Ins.*, 364 N.W. 2d 348, 353 (Mich. App. 1985); *see Lewis v. City of Detroit*, No. 09-cv-14792, 2011 WL 2084067, at *3 (E.D. Mich. May 24, 2011) ("Offensive use of nonmutual collateral estoppel . . . is not permissible in Michigan."); *see also Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 457-58 (6th Cir. 2022) (federal courts exercising diversity jurisdiction apply state-law preclusion rules); *Hately v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) (same for federal courts exercising supplemental jurisdiction) (cited in *In re Burge*, 953 F.3d 907, 916-17 (6th Cir. 2020)).

Thus, if the first-phase jury finds that VNA breached the standard of care – a result that "obviously is not guaranteed," *Gillispie*, 2022 WL 16541259, at *4 – that finding would not be binding in any other plaintiff's case.  Similarly, if the first-phase jury finds no breach by VNA, that finding would not be binding on any of the other plaintiffs, who would remain free to relitigate breach in their own trials. Bifurcation thus would not help resolve this litigation any quicker than a single trial. For this reason also, bifurcation would not enhance judicial efficiency or economy.

## B.     Bifurcation Would Cause Jury Confusion

Bifurcating issues that are inextricably intertwined "create[s] confusion and uncertainty."   *Miller v. Fairchild*, 885 F.2d 498, 511 (9th Cir. 1989) (internal quotation marks omitted); *see Gillispie*, 2022 WL 16541259, at *3.  This concern is particularly acute here because Plaintiffs propose giving the phase-two jury the answers to dozens of complicated interrogatories about breach and non-party fault from the first phase, when that second jury will also hear most of the evidence underpinning breach again in the context of causation and allocation of fault.

Plaintiffs' proposal is novel and untested, and there is a substantial risk that the jury in the second trial will be confused about what it is and is not allowed to find.  For example, suppose that the first-phase jury were to find that VNA breached the standard of care by not more forcefully recommending that the City start corrosion-control treatment, because VNA should have recognized that failing to give that advice would lead to a significant likelihood of harm.  The Court would then instruct the second jury that this conduct breached the standard of care.  But in determining but-for causation, the second jury may be prejudicially influenced by the first verdict or be confused about the way in which it is bound by the first verdict. The second jury could conclude that because the first jury found that there would be a significant likelihood of harm, it must find that the breach actually did proximately cause harm.  Plaintiffs do not address this concern, instead asserting that there is no

12

risk of confusion because evidence about breach and whether non-parties were at fault is "wholly irrelevant" to the issues of causation and allocation of fault. Mot. 8, PageID.94828. That conclusory assertion simply cannot be squared with the fact that the issues in the two trials are inextricably intertwined and depend on substantially overlapping evidence.

Plaintiffs also suggest that this case is too complicated to be tried to a single jury and that bifurcation solves this supposed problem. Mot. 9, PageID.94829. But this case involves a claim of professional negligence against one party with each Bellwether Plaintiff asserting the same theories of liability. Although the case involves a large body of evidence, any potential confusion would not be obviated by presenting significant portions of that evidence twice to two different juries in a piecemeal fashion. State and federal courts across the country routinely try tort claims, including toxic-tort claims, without bifurcation, even in cases with sprawling records.

In support of their argument, Plaintiffs point to the outcome of the Bellwether I trial. They speculate that the jurors in that trial were confused and victims of "decision paralysis," which resulted in the mistrial. Mot. 9, PageID.94829. But that is pure speculation. Plaintiffs have no basis for hypothesizing that the Bellwether I jurors were unable to comprehend the case, rather than that the Bellwether I plaintiffs simply were unable to convince all the members of the jury that they had satisfied

13

their burden of proof.  In any event, this case is even less complicated than the Bellwether I trial because VNA now is the sole defendant.

### C. Bifurcation Raises Serious And Avoidable Seventh Amendment Issues

The Reexamination Clause of the Seventh Amendment prohibits a court or jury from revisiting an issue of fact that one jury already decided.  *See Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 499-501 (1931).  "[A] court should not bifurcate a case 'in such a way that the same issue is . . . reexamined by different juries.'"  *Papineau v. Brake Supply Co., Inc.*, No. 18-cv-168, 2021 WL 1881650, at *6 (W.D. Ky. Apr. 2, 2021) (quoting *Olden v. LaFarge Corp.*, 383 F.3d 495, 509 n.6 (6th Cir. 2004)).

Plaintiffs' proposal runs a serious risk of reexamination.  For example, suppose that the first jury concludes that a reasonable engineer would have foreseen that VNA's failure to recommend more forcefully that the City use corrosion controls would result in harm.  The second jury then may revisit that issue when assessing whether VNA's failure proximately caused the particular plaintiff's harm, because proximate causation also depends on the foreseeability of the harm.  *Poe v. City of Detroit*, 179 Mich. App. 564, 576 (1989).  The second jury could conclude that VNA did not proximately cause the plaintiff's harm because the harm was not foreseeable – effectively overruling the first jury's conclusion that the harm was foreseeable, in violation of the Seventh Amendment.  *See In re RhonePoulenc Rorer,*

*Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995) (Seventh Amendment concerns are particularly acute when breach and proximate causation are decided by separate juries). Moreover, when deciding whether particular non-parties were at fault, the first jury necessarily will have to evaluate the non-parties' conduct in relation to each other and, in some instances, to VNA. The second jury inevitably will have to reexamine the first jury's conclusions about the non-parties' conduct when allocating fault among them and VNA. Courts have recognized that that also is a significant Seventh Amendment problem. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750-51 (5th Cir. 1996) (Seventh Amendment concerns are particularly acute when different juries adjudicate liability and comparative fault); *RhonePoulenc*, 51 F.3d at 1302-03.

Plaintiffs incorrectly suggest that this Court already rejected this argument in certifying the issues class in the class case. Mot. 12, PageID.94832. In fact, the Court explained that "careful trial management can allay Seventh Amendment reexamination concerns" in the context of that case. *In re Flint Water Cases*, 558 F. Supp. 3d 459, 523 (E.D. Mich. 2021). One of the measures that the Court adopted in that case was ordering that all issues relating to breach, general causation, and allocation of fault be tried before one jury. *See* Corrected Order Regarding Certified Class Issues 5, ECF No. 2250, PageID.73963. The Court has never endorsed

severing the sole issue of breach from the other elements of a professional negligence claim against VNA.

Plaintiffs suggest that these Seventh Amendment issues can be alleviated because the Court can use the same jury for both phases of the trial. Mot. 13 n.8, PageID.94833. That option may be feasible in a case in which the parties are prepared to try both phases of the case back-to-back without discharging the jury after the verdict in the first phase. But that is not what Plaintiffs propose here. They propose limiting the first-phase motion practice to only the experts and issues relevant to that phase. *See id.* at Ex. A, PageID.94839. As a result, Plaintiffs acknowledge that following the trial of their proposed first phase, the parties would need to engage in additional and "extensive expert discovery and motion practice" before the trial in the second phase could begin. *Id.* at 14, PageID.94824. The parties thus will not be ready to conduct the trial of the second phase immediately after the first phase, which would result in the jury being discharged for potentially months after the first phase. There is a heightened risk that jurors would discuss the case with others or inadvertently be exposed to information about the case during the potentially prolonged period between trials, which would prejudice both parties. And, of course, some jurors could become unavailable in the interim as a result of illness, job or family demands, or moving out of the district.

16

### D.    Bifurcation Would Prejudice VNA, While A Single Trial Would Not Prejudice Plaintiffs

Plaintiffs have the burden of demonstrating that "no party would be prejudiced by separate trials." *Kelley*, 2011 WL 1690066, at *4.  VNA would suffer prejudice under Plaintiffs' proposal because of the jury confusion and reexamination issues discussed above.  Additionally, VNA would be prejudiced because it would have to engage in repetitive efforts by putting on substantially overlapping evidence across the two trials.  *Trentham*, 2010 WL 148166, at *3.

While bifurcation would needlessly force VNA to undertake "duplicat[ive]" efforts, *Kelley*, 2011 WL 1690066, at *5, trying Plaintiffs' claims in a single trial would cause them no prejudice.  They speculate that in a single trial, certain of VNA's arguments about causation – that Plaintiffs "were either not exposed to lead, or that they suffered no injuries as a result thereof, or that if they have cognitive defects they are only a result of their life circumstances" – could interfere with the jury's ability to fairly analyze the question of breach.  Mot. 10, PageID.94830.  This is pure speculation and ignores the fact that toxic-tort claims – even those with complicated facts and robust defenses – are overwhelmingly tried without bifurcation in courts across the country.[2]  In any event, if any prejudice of this kind

---

[2]  Plaintiffs may be concerned that a jury in a single trial will conclude that the Plaintiffs were not injured, which could affect the valuation of the cases of the remaining minor plaintiffs.  But that is not *unfair* prejudice.

were to somehow materialize at trial, it could be adequately "addressed both through counsel's argument and limiting instructions." *Gillispie*, 2022 WL 16541259, at *4 (rejecting similar argument and collecting cases holding the same).

## II.   If The Court Grants Plaintiffs' Motion To Bifurcate, It Should Not Accelerate The Trial Date

Under the current scheduling order, which the Court entered on December 4, 2023, trial is scheduled to begin on October 8, 2024.  Stip. Regarding Deadlines For Bellwether III Trial 11, ECF No. 2720, PageID.90143.  Plaintiffs request that the Court bifurcate this case, vacate the current scheduling order, stay all second-phase pre-trial proceedings, and order that the trial of the first phase begin on May 22, 2024.  Mot. at Ex. A, PageID.94840.  If the Court bifurcates this case, it should deny Plaintiffs' request because they have not demonstrated good cause to adopt their schedule and because their unworkable proposal would severely prejudice VNA.

Plaintiffs contend that accelerating the trial date for the first phase would "expedite and economize both the Bellwether III trial as well as the litigation overall," but their proposed schedule demonstrates that this is wrong.  Mot. 14, PageID.94834.  That schedule does not include any deadlines relating to the trial of the second phase, *see* Mot. at Ex. A, PageID.94839, likely because it would be unworkable and inefficient for the parties to prepare for the second phase before the end of the first phase.  Thus, under Plaintiffs' proposal, the parties and the Court would have to rush to prepare for the first phase, put on hold all second-phase

18

preparations until sometime after the end of the first phase, and only thereafter turn back to second-phase preparations.  The result likely would be that the trial of the second phase would not begin until sometime *after* the current trial date of October 8.  And because the parties would have to present a substantial amount of overlapping evidence in each phase, the second phase likely would take nearly as much time as a single, non-bifurcated trial.  This would all but ensure that Plaintiffs' claims would not be finally resolved until *after* they would be resolved under the current scheduling order.

Plaintiffs' proposal would also prejudice VNA.  For example, they propose that the parties brief all *Daubert*, summary judgment, and *in limine* motions at a breakneck speed and all at the same time, with response briefs due a week after the opening briefs and reply briefs due a week thereafter.  Mot. at Ex. A, PageID.94839. The Court has never adopted such an aggressive briefing schedule for these types of motions in any of the Flint water cases, let alone required three sets of critical pre-trial motions to be briefed at the same time.  On the contrary, the Court has recognized that it is better practice for the parties to brief motions in *limine* after the Court rules on *Daubert* and summary-judgment motions, so that the parties' motions reflect the Court's rulings.

Plaintiffs' proposed schedule also ignores that the parties soon will file a stipulation extending the current *Daubert* and summary-judgment briefing schedule

because Plaintiffs did not schedule some experts' depositions within the timeframes specified in the current scheduling order.  Those experts include Dr. Lauren Cohen, Plaintiffs' expert on PR issues.  Although VNA does not see how Dr. Cohen's opinions are relevant to any issue at trial, Plaintiffs previously have said that they intend to call Dr. Cohen to testify about VNA's liability – so they presumably would call him to testify in the breach phase of their proposed bifurcated trial.  Given that the current *Daubert* schedule is not sufficient for the parties to brief all of the expert issues for a trial starting in October, Plaintiffs' proposed accelerated schedule for a trial to start in May is even less realistic.

Plaintiffs argue that their proposed schedule is feasible because the Court previously has decided summary-judgment and *Daubert* motions and motions in *limine* in other Flint water cases.[3]  Mot. 15, PageID.94835.  But the Bellwether III trial involves the claims of seven plaintiffs whose fact-specific claims have never been tried, as well as different experts.  The issues in the earlier trials and in this case are not entirely similar, and the way in which Plaintiffs seek to surgically separate

---

[3]  Plaintiffs also request that the Court hold a pre-motion conference during which the Court would decide which issues and motions "the Court will accept briefing on."  Mot. at Ex. A, PageID.94839.  But while pre-motion conferences "may serve the useful purpose of narrowing and resolving conflicts between the parties . . . district courts should not in most circumstances prevent parties from filing motions authorized by the Federal Rules."  *Lopez v. Foerster*, 791 F. App'x 582, 586 (6th Cir. 2019) (internal quotation  marks omitted).  Barring VNA from filing motions that it is otherwise permitted to file under the Federal Rules – solely to accommodate Plaintiffs' unrealistic schedule – would violate due process.

the elements of their claims likely will necessitate complicated *in limine* briefing about the evidence that should and should not be introduced during the first-phase trial. *See Martin*, 106 F.3d at 1311-12 (district court abused its discretion by bifurcating a trial in part because it erroneously excluded relevant evidence from one phase of the trial). And Plaintiffs' proposed schedule gives the Court virtually no time to review the briefing in advance of oral arguments, which they propose be held a mere five days after all these motions are fully briefed. Mot. at Ex. A, PageID.94839.

Plaintiffs' proposed schedule also completely overlaps with the schedule in the Bellwether II case. Under the schedule in that case, VNA and the Bellwether II plaintiffs will conduct all fact discovery between March 22 and June 14, 2024, and expert discovery will begin on June 17, 2024. Joint Stip. Regarding Scheduling Order For Bellwether II Trial 4-5, ECF No. 2685, PageID.87250-87251. If the Court were to adopt Plaintiffs' proposal, VNA would have to attend to these aspects of the Bellwether II case while preparing for, and trying, the first phase in this case on a whirlwind schedule. All these overlapping deadlines would put VNA in a plainly infeasible position and prejudice its ability to effectively litigate this case.

## CONCLUSION

The Court should deny Plaintiffs' motion to bifurcate. If the Court bifurcates the trial in this case, then it should not accelerate the trial date.

*Respectfully submitted*,

CAMPBELL CONROY  &
O'NEIL, P.C.

MAYER BROWN LLP

/s/ James M. Campbell
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

/s/ Michael A. Olsen
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia Water North America Operating*
*Services, LLC Veolia North America, LLC, and Veolia North*
*America, Inc.*

Dated:  March 15, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2024, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   /s/ *James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com