# EXHIBIT A

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES. | Case No. 5:16-cv-10444-JEL-MKM<br><br>Hon. Judith E. Levy, District Judge<br>Hon. Elizabeth A. Stafford, Magistrate Judge |

## DECLARATION OF NOELLE LENOIR

Following my previous declaration dated February 26, 2024, I, Noëlle Lenoir, declare as follows :

1. I do not have personal knowledge with respect to the precise issues of fact as to which the Court has ordered a response. I have just reviewed the letter of Mr Hunter J. Shkolnik of March 14, 2024, sent to the Honorable Judith E. Levy related to *In Re Flint Water Litigation* - Case No. 16-CV-10444 -, with the aim of determining the collateral consequences of criminal sanctions imposed to VE based on Article 3 of the French Evidence Law for breach of this law.

2. I conclude, based on my analysis of this letter and applicable French law, that the collateral consequences of violating French law would go far beyond a simple 90,000 euro fine, for a number of reasons which I explain below. These reasons are legal, financial, and reputational, insofar as the criminal penalty imposed on VE could significantly damage the interests of the company and its shareholders.

3. In his letter, Mr Hunter J. Shkolnik suggests that since the penalty incurred by VE is limited to the sum of 90,000 euros, its impact would be limited. He also states that "the French authorities will understand why (…) the Court declined VE's request", i.e. the request to abide by the French Evidence Law's requirement to refer to the Hague Evidence Convention.

763584074.1

4. This view does not reflect reality since it does not take into account the collateral consequences of such a penalty imposed on VE by the French criminal courts.

5. **Firstly**, the fine of 90,000 euros would be imposed by a three-judge criminal court, and the hearing would inevitably be widely reported in both the national and foreign press, which would damage the company's reputation, with all the consequences that could entail, including financial ones. Furthermore, as a listed company, VE will have to publicly disclose its criminal conviction.

6. **Secondly**, far from understanding the attitude of VE and its managers, the French authorities could judge this behavior negatively. Indeed, how can one justify asking the competent department of the Ministry of Economy and Finance, responsible for ensuring the application of the French Evidence Law, to confirm that the law is applicable outside discovery, and then decide to violate the law? It is possible that the French authorities find it difficult to accept. Furthermore, the Public Prosecutor who applies to the criminal courts could come to publicly stigmatizing conclusions for VE's directors.

7. **Thirdly**, even though Article 3 of the French Evidence Law provides for prison sentences, it is not realistic to expect them in this case, not even a suspended prison sentence. On the other hand, in the event of a repeat offence, this hypothesis cannot be totally ruled out for a manager who intends to knowingly disregard the position of the French authorities, should the information and documents requested by a foreign authority or private party be of essential economic interest to the French State.

8. **Fourthly,** it should also be pointed out that in the event of a criminal penalty being imposed on VE, the company would be issued with a criminal record (where are notably recorded all fines in excess of 30,000 euros) as provided for in articles 775-1 et seq. of the French Code of Criminal Procedure. Under article 775-1 of this Code, the court which sentences a company to a fine may exclude the conviction from the criminal record. But it can also refuse to do so. In

the circumstances of this case, it is not entirely certain that a court would be inclined to show leniency towards VE.

9. Under Article 776-1 of the French Code of Criminal Procedure, the criminal record of a company may be issued, under certain conditions, at the request of government departments, local authorities, and certain judicial authorities. The same Article stipulates that this criminal record may also be transmitted, in application of an international convention or an act adopted on the basis of the Treaty on the Functioning of the European Union, to the competent authorities of another State designated by order of the French Minister of Justice.

10. **Finally**, Should VE "choose" to knowingly violate the French criminal law after asking the French authorities to confirm the applicability of the French Evidence law, its decision may be deemed an infringement of its duty of care based on Article L.225-251 of the French Commercial Code which provides that "Directors and the Chief Executive Officer are liable individually or jointly, as the case may be, to the Company or to third parties, either for breaches of laws or regulations applicable to listed corporate companies, or for breaches of the Articles of Association, or for any misconduct in their duties". And this may be the case in the event of intentional misconduct damaging the company's reputation, especially when it leads to consequential financial damage.

Executed on March 18, 2024
Paris, France

Noelle Lenoir

763584074.1