# EXHIBIT 1

Redacted Version of Document
to be Sealed

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
|---|---|
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS OF GARY M. CRAKES, PH.D.

Pursuant to Federal Rule of Evidence 702, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to exclude certain opinions offered by Gary M. Crakes, Ph.D. The opinions at issue are speculative and are not supported by sufficient facts or data. Therefore, those opinions are inadmissible under Rule 702.

As Local Rule 7.1(a) requires, on March 26, 2024, VNA sent counsel for the Bellwether III Plaintiffs an email identifying each of the points raised in this motion along with detailed explanations of the legal bases for each point, and offering to schedule a call if counsel wished to discuss the motion further. On March 28, 2024, counsel for the Bellwether III Plaintiffs said that they did not concur in the motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**    **MAYER BROWN LLP**

*/s/ James M. Campbell*                          */s/ Michael A. Olsen*
James M. Campbell                              Michael A. Olsen
Alaina M. Devine                               71 South Wacker Drive
20 City Square, Suite 300                       Chicago, IL 60606
Boston, MA 02129                              (312) 7012-7120
(617) 241-3000                                molsen@mayerbrown.com
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 28, 2024

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS OF GARY M. CRAKES, PH.D.**

## STATEMENT OF THE ISSUE PRESENTED

1. Should the Court exclude certain opinions offered by Gary M. Crakes, Ph.D., under Federal Rule of Evidence 702 because those opinions are speculative and are not supported by sufficient facts or data?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

**CONTROLLING OR MOST APPROPRIATE AUTHORITIES**

*Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717 (6th Cir. 2012)

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)

*Rondigo, L.L.C. v. Casco Tp., Mich.*, 537 F. Supp. 2d 891 (E.D. Mich. 2008)

Fed. R. Evid. 702

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

LEGAL STANDARD.............................................................................................4

ARGUMENT .........................................................................................................5

Certain Of Dr. Crakes's Lost Earnings Calculations Lack A Reliable
Evidentiary Foundation.........................................................................................5

     A.    Y.A.........................................................................................7

     B.    E.A. ........................................................................................8

     C.    G.B. .......................................................................................9

     D.    C.D. .....................................................................................10

     E.    R.E. .....................................................................................12

     F.    J.N. .....................................................................................13

     G.    J.S. .....................................................................................14

CONCLUSION ....................................................................................................15

## INTRODUCTION

Dr. Gary M. Crakes is an economist who has issued opinions regarding the alleged loss of earning capacity for the seven Bellwether III plaintiffs:  Y.A, E.A., G.B., C.D., R.E., J.N., and J.S. (Plaintiffs).[1]

For each Plaintiff, Dr. Crakes offers between four and eight potential lost-earnings scenarios.  In each of these scenarios, Dr. Crakes calculates loss of earning capacity by determining how much that Plaintiff likely would earn in his or her lifetime without any impairment and then subtracting how much the Plaintiff likely would earn in his or her lifetime with his or her alleged impairment from lead exposure.  Both the unimpaired and impaired projected lifetime earnings figures are based on each Plaintiff's expected educational attainment, which is based on the evaluations of the Plaintiffs conducted by Dr. Edward Hoffman and Dr. Mira Jourdan, Plaintiffs' psychologist experts.

In Bellwether I, Dr. Crakes offered lost-earnings opinions using the same methodology, and VNA moved to exclude his opinions on the ground that his methodology is unreliable.  *See* VNA Mot. to Exclude Testimony and Report of Crakes, ECF No. 337, PageID.20161.  The Court denied VNA's motion, holding that Dr. Crakes's opinions were sufficiently reliable to be presented to a jury.  Order

---

[1]   The actual plaintiffs are the guardians of Y.A, E.A., G.B., C.D., R.E., J.N., and J.S.  But for the sake of simplicity, VNA will refer to Y.A, E.A., G.B., C.D., R.E., J.N., and J.S. as Plaintiffs.

on VNA Mot. to Exclude Crakes 5, ECF No. 681, PageID.43965.  Consistent with this Court's order, VNA incorporates by reference its challenge to Dr. Crakes's methodology as a general matter from its motion in Bellwether I to preserve them for appeal and does not repeat its arguments here.  Tr. of Mar. 30, 2024, Hrg. 33, No. 16-cv-10444, ECF No. 2901, PageID.95088.  However, VNA also moves to exclude at least two of Dr. Crakes's lost-earnings scenarios for each of the plaintiffs in Bellwether III because there is no evidence to support one or both of the educational-attainment assumptions on which the scenarios are based.  In particular, the assumptions on which these scenarios are based are contrary to Dr. Hoffman's and Dr. Jourdan's opinions about the Plaintiffs' impaired or unimpaired educational attainment.  VNA's arguments regarding these Plaintiff-specific opinions were not made, and could not have been made, in VNA's Bellwether I motion.

## BACKGROUND

Dr. Crakes provides expert reports regarding economic loss of earning capacity for each of the seven Plaintiffs.  *See* Ex. 2, Crakes Report (Y.A.); Ex. 3, Crakes Report (E.A.); Ex. 4, Crakes Report (G.B.); Ex. 5, Crakes Report (C.D.); Ex. 6, Crakes Report (R.E.); Ex. 7, Crakes Report (J.N.); Ex. 8, Crakes Report (J.S.).  Each report follows the same approach.  *See id.*

First, Dr. Crakes calculates Plaintiffs' projected lifetime "unimpaired" earnings—the amount each Plaintiff supposedly would have earned over his or her

lifetime in the absence of the claimed injuries.  For each Plaintiff, he assumes two or more "unimpaired" educational attainment levels based on the opinions of Dr. Hoffman.[2]  He then uses each Plaintiff's expected work life and U.S. Census Bureau statistics for average annual income for a man or woman with the relevant level of educational attainment to calculate their lifetime "unimpaired" earnings.  Report (Y.A.) 3-4; Report (E.A.) 3; Report (G.B.) 3; Report (C.D.) 3; Report (R.E.) 3; Report (J.N.) 3; Report (J.S.) 3.

Second, Dr. Crakes calculates lifetime "impaired" earnings for each Plaintiff—the amount that the Plaintiffs will earn over their lifetimes, taking their alleged injuries into account.  For each Plaintiff, he assumes two or more "impaired" educational attainment levels based on the opinions about the Plaintiffs' educational capabilities provided by Dr. Hoffman and Dr. Jourdan.  Again, Dr. Crakes then uses each Plaintiff's expected work life and national average income for the relevant level of educational attainment to calculate lifetime earnings.  Report (Y.A.) 4; Report (E.A.) 3-4; Report (G.B.) 3-4; Report (C.D.) 3-4; Report (R.E.) 3-4; Report (J.N.) 3-4; Report (J.S.) 3-4.

---

[2]  Dr. Jourdan did not attempt to assess the Plaintiffs' unimpaired educational attainment levels. Ex. 24, Jourdan Dep. 3/20/2023 Tr. 167:17-21 ("I didn't do an analysis of what her educational or occupational outcome would be like if she didn't have these problems and how her future trajectory would—would look . . . I did not do that.").

Third, Dr. Crakes calculates each Plaintiff's alleged loss of earning capacity in four to eight scenarios by subtracting each of his "impaired" lifetime earnings calculations from each of his "unimpaired" lifetime earnings calculations.  Report (Y.A.) 4-5; Report (E.A.) 4; Report (G.B.) 4; Report (C.D.) 4; Report (R.E.) 4; Report (J.N.) 4; Report (J.S.) 4.

Fourth, Dr. Crakes adds 10% to each lost-earnings scenario to represent the loss of fringe benefits on those lost earnings.  Report (Y.A.) 5; Report (E.A.) 4; Report (G.B.) 4; Report (C.D.) 4; Report (R.E.) 4; Report (J.N.) 4; Report (J.S.) 4.

Finally, Dr. Crakes discounts each lost-earning opinion to present value.  The range of discounted lost earnings opinions for each Plaintiff is as follows:

- Y.A.: $455,607 to $3,440,356.  Report (Y.A.) 7-10.

- E.A.: $531,468 to $2,180,994.  Report (E.A.) 6-7.

- G.B.: $704,751 to $1,857,476.  Report (G.B.) 6-7.

- C.D.: $550,051 to $4,112,160.  Report (C.D.) 6-7.

- R.E.: $1,099,474 to $2,171,178.  Report (R.E.) 6-7.

- J.N.: $572,051 to $4,112,160.  Report (J.N.) 6-7.

- J.S.: $1,275,245 to $2,171,179.  Report (J.S.) 6-7.

## LEGAL STANDARD

The Supreme Court has charged district courts with a "basic gatekeeping obligation" to ensure that expert testimony both is "relevant to the task at hand" and

"rests on a reliable foundation." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The expert opinion must be "the product of reliable principles and methods" and must result from the expert "reliabl[y] appl[ying] [] the principles and methods to the facts of the case." Fed. R. Evid. 702(c)-(d). It also must be "based on sufficient facts or data." Fed. R. Evid. 702(b).

The proponent of expert testimony bears the burden of establishing its admissibility by a preponderance of evidence. *Nelson*, 243 F.3d at 251.

## ARGUMENT

### Certain Of Dr. Crakes's Lost Earnings Calculations Lack A Reliable Evidentiary Foundation

An expert not only must employ a reliable methodology but also must "reliabl[y] appl[y] [] the principles and methods to the facts of the case." Fed. R. Evid. 702(d). "An expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by "good grounds," based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000). Courts exercising their gatekeeping role under *Daubert* must disallow expert testimony "when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999).

In particular, an expert opinion on lost future income should be excluded if "the factual foundations and resulting extrapolations . . . are fundamentally flawed or unsupported, and result in the unprincipled application of [an] otherwise reliable methodology to the facts of th[e] case." *Rondigo, L.L.C. v. Casco Tp., Mich.*, 537 F. Supp. 2d 891, 895 (E.D. Mich. 2008). "Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule of Evidence 702 if based on unsupported speculation. Such testimony should be excluded if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects, or facts that are clearly contradicted by the evidence." *Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 727 (6th Cir. 2012) (citations and alteration mark omitted).[3]

Here, at least two of Dr. Crakes's lost-earnings scenarios for each Plaintiff lack evidentiary support. Most of Dr. Crakes's unsupported opinions are based on an "impaired" assumption that the Plaintiff will achieve educational attainment

---

[3]   *See also, e.g.*, *Mallicoat v. Archer-Daniels-Midland Co.*, No. 11-cv-1218, 2013 WL 6000097, at *3 (E.D. Mo. Nov. 12, 2013) (excluding opinion on lost earning capacity because report from plaintiff's vocational expert did not support assumptions about the plaintiff's earning capacity); *Barclay v. Cameron Charter Boats, Inc.*, No. 09-cv-462, 2011 WL 3468380, at *4 (W.D. La. Aug. 8, 2011) (similar); *Villalobos v. Am. Airlines, Inc.*, No. 96-cv-6413, 1998 WL 1770592, at *6 (S.D. Fla. Nov. 13, 1998) ("While the Court recognizes that an estimation of future income is likely to be somewhat speculative, it nevertheless must ha[ve] some basis in reality and not be the product of wholesale speculation. When an expert opinion is based upon speculation and guesswork, it has no significant probative value.").

levels below that which Drs. Hoffman and Jourdan have said the Plaintiff is capable of achieving with his or her alleged impairment.  And a few of the unsupported opinions are based on an "unimpaired" assumption that the Plaintiff would have exceeded the educational attainment level predicted by Dr. Hoffman if not for his or her alleged impairment.  In both cases, the assumptions underlying these opinions lack evidentiary support and the opinions should be excluded.

### A.    Y.A.



Dr. Crakes offers eight lost-earnings scenarios for Y.A.  Four of those scenarios are based on an "impaired" assumption that Y.A. ██████████████ ████████████████████████████████████████████████████ ███████████████████████████████  Report (Y.A.) 3, 7-10.  There is no evidentiary support for that assumption and thus for those four scenarios.

Dr. Hoffman opined that Y.A. ██████████████████████ ████████████████████████████████  Ex. 9, Hoffman Report (Y.A.) 10; Ex. 10, Hoffman Dep. (3/8/23) 317:14-318:19.  Dr. Jourdan opined that ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████  Ex. 11, Jourdan Report (Y.A.) 10.  Neither expert opined that Y.A. ██████████████████████ ████████████████████████████████████████████  Accordingly, the

Court should exclude Dr. Crakes's four lost-earnings scenarios based on the assumption that Y.A. ████████████████████████████████

Dr. Crakes's remaining four lost-earnings scenarios for Y.A. are based on an "impaired" assumption that Y.A. ████████████████████████████████ ████████████████████████ That is consistent with the opinions of Dr. Hoffman and Dr. Jourdan.  The range of discounted lost-earnings in those four scenarios is $455,607 to $3,125,573.  Report (Y.A.) 7-10.

**B.    E.A.**

Dr. Crakes offers four lost-earnings scenarios for E.A.  Two of those scenarios are based on an "impaired" assumption that E.A. ████████████████████ ████████████████████████████████████████████████ ████████████████ Report (E.A.) 3-4, 6-7.  There is no evidentiary support for that assumption and thus for those two scenarios.

Dr. Hoffman opined that E.A. ████████████████████████ ████████████████████████████ Ex. 12, Hoffman Report (E.A.) 7; Hoffman Dep. (3/8/23) 325:15-21.  Dr. Jourdan opined that ████████████ ████████████████████████████████████████████████ ████████████████████████████████████ Ex. 13, Jourdan Report (E.A.) 10.  She did opine that E.A. ████████████████████████ ████████████████████████████████████████████████

8

██████████████████████████████████████████████████

██████████████████████████████████████ *Id.*  Neither expert opined that E.A.

████████████████████████████████████████████████

███████████████████████ Accordingly, the Court should exclude Dr. Crakes's two

lost-earnings scenarios based on the assumption that E.A. █████████████████

█████████████████████████████████████

Dr. Crakes's remaining two lost-earnings scenarios for E.A. are based on an

"impaired" assumption that E.A. ██████████████████████████████

████████████████████████ That is consistent with the opinions of Dr. Hoffman

and Dr. Jourdan.  The range of discounted lost-earnings in those two scenarios is

$531,468 to $1,630,942.  Report (E.A.) 6-7.

**C.     G.B.**

Dr. Crakes offers six lost-earnings scenarios for G.B.  Three of those scenarios

are based on an "unimpaired" assumption that G.B. ██████████████████

███████████████████████████████████████ Report (G.B.) 3, 6.  The

other three are based on an "unimpaired" assumption that G.B. █████████████

█████████████████████████████████████████████████

Report (G.B.) 3, 7.  There is no evidentiary support for either of those assumptions

and thus for any of Dr. Crakes's lost-earnings scenarios.

Dr. Hoffman opined that, ███████████████████████████

████████████████████████████████████████████████████████

█████████████████  Ex. 14, Hoffman Report (G.B.) 8; Ex. 15, Hoffman Dep.

(3/29/23) 366:24-367:4, 369:7-373:3.  He did not opine that G.B. ████████████

████████████████████████████████████████████████████████

████████  Accordingly, the Court should exclude Dr. Crake's three lost-earnings

scenarios based on the assumption that G.B. ████████████████████████████

███████████████████████████████  The Court also should exclude

Dr. Crakes's three lost-earnings scenarios based on the assumption that G.B. ██████

████████████████████████████████████████████████████████

████████

**D.     C.D.**

Dr. Crakes offers six lost-earnings scenarios for C.D.  Two of those scenarios

are based on an "impaired" assumption that C.D. ██████████████████████

████████████████████████████████████████████████████████

█████████████  Report (C.D.) 3, 6-7.  Two others are based on an "impaired"

assumption that C.D. █████████████████████████  *Id.*  And three of Dr.

Crakes's scenarios are based on an "unimpaired" assumption that C.D. ███████████

█████████████████████████████████████████████████  Report

(C.D.) 3, 7.  There is no evidentiary support for any of those assumptions and thus for five of Dr. Crakes's lost-earnings scenarios.

Dr. Hoffman opined that C.D. ███████████████████████

███████████████████████████████████████[4] Ex. 16, Hoffman Report (C.D.) 12; Hoffman Dep. (3/29/23) 405:2-406:12.  Dr. Jourdan opined that individuals like C.D. ████████████████████████

██████████████████████████ Ex. 17, Jourdan Report (C.D.) 7.  Neither expert opined that C.D. ███████████████████

███████████████████████████████████████

█████████████████ Dr. Hoffman also opined that, ██████████████████

███████████████████████████████████████

█████████████████ Hoffman Report (C.D.) 12; Hoffman Dep. (3/29/23) 405:2-406:12.  He did not opine that C.D. ████████████████████

████████████████████████

---

[4]  "Competitive employment" refers to work in the competitive labor market in an integrated setting "for which an individual is compensated at a rate that . . . is not less than the customary rate paid by the employer for the same or similar work performed by other employees who are not individuals with disabilities and who are similarly situated," "[i]s eligible for the level of benefits provided to other employees," and is presented with "opportunities for advancement that are similar to those for other employees who are not individuals with disabilities and who have similar positions."  34 C.F.R. § 361.5(c)(9). ██████████████████

█████████



The Court should exclude Dr. Crakes's two lost-earnings scenarios based on the assumption that C.D. ███████████████████████████████

████████████████████████████████████ It also should exclude Dr. Crakes's two lost-earnings scenarios based on the assumption that C.D. ███████████████ Finally, the Court should exclude Dr. Crakes's three lost-earnings scenarios based on the assumption that C.D. █████

████████████████████████████████

Dr. Crakes's remaining lost-earnings scenario for C.D. is based on an "impaired" assumption that C.D. ███████████████████

████████████████ and an "unimpaired" assumption that C.D. █████

████████████████████████████████

█████ That is consistent with the opinions of Dr. Hoffman and Dr. Jourdan. The discounted lost-earnings in that scenarios is $550,051.

**E.    R.E.**

Dr. Crakes offers four lost-earnings scenarios for R.E. Two of those scenarios are based on an "impaired" assumption that R.E. ████████████████

████████████████████████████████

██████████ Report (R.E.) 3-4, 6-7.   There is no evidentiary support for that assumption and thus for those two scenarios.

Dr. Hoffman opined that R.E. ████████████████████████████ ████████████████████████████████████████████ Ex. 18, Hoffman Report (R.E.) 9; Hoffman Dep. (3/29/23) 422:1-433:19.  Dr. Jourdan opined that ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████ Ex. 19, Jourdan Report (R.E.) 13.  Neither expert opined that R.E. ████████████████████████████████████████ ██████████████████████████████ Accordingly, the Court should exclude Dr. Crakes's two lost-earnings scenarios based on the assumption that R.E. ████████████████████████████████████████████████ ████████████████████████████████████

Dr. Crakes's remaining two lost-earnings scenarios for R.E. are based on an "impaired" assumption that R.E. ████████████████████████████ ███████████████████ That is consistent with the opinions of Dr. Hoffman and Dr. Jourdan.  The range of discounted lost-earnings in those two scenarios is $1,099,474 to $1,639,710.  Report (R.E.) 6-7.

**F.    J.N.**

Dr. Crakes offers four lost-earnings scenarios for J.N.  Two of those scenarios are based on an "impaired" assumption that J.N. █████████████████████████

██████ Report (J.N.) 3-4, 6-7.  There is no evidentiary support for that assumption and thus for those two lost-earnings scenarios.

Dr. Hoffman opined that J.N. ████████████████████████████ ████████████████████████████ Ex. 20, Hoffman Report (J.N.) 10; Hoffman Dep. (3/29/23) 445:13-448:13.  Dr. Jourdan opined that individuals like J.N. ████████████████████████████████████████ ████████████████████ Ex. 21, Jourdan Report (J.N.) 14.  Neither expert opined that J.N. ████████████████████████████████████ ████████████████████ Accordingly, the Court should exclude Dr. Crakes's two lost-earnings scenarios based on the assumption that J.N. ██████ ████████████████

Dr. Crakes's remaining lost-earnings scenarios for J.N. are based on an "impaired" assumption that J.N. ████████████████████████ ████████████████ That is consistent with the opinions of Dr. Hoffman and Dr. Jourdan.  The discounted lost-earnings in those scenarios are $572,051 to $2,180,994.  Report (J.N.) 6-7.

**G.   J.S.**

Dr. Crakes offers four lost-earnings scenarios for J.S.  Two of those scenarios are based on an "impaired" assumption that J.S. ████████████████████ ████████████████████████████ Report (J.S.) 3, 6-7.  The other

two are based on an "impaired" assumption that J.S. ███████████████████

███████████████ Report (G.B.) 3, 6-7.  There is no evidentiary support for either

of those assumptions and thus for any of Dr. Crakes's lost-earnings scenarios.

Dr. Hoffman opined that J.S. ████████████████████████

████████████████████████████████ Ex. 22, Hoffman

Report (J.S.) 8; Hoffman Dep. (3/29/23) 455:3-456:15.  Dr. Jourdan opined that

individuals like J.S. ███████████████████████████

███████████████████████████████████████

███████████████████ Ex. 23, Jourdan Report (J.S.) 7.  Neither

expert opined that J.S. ██████████████████████

███████████████████████████████████████

██████████████████████████ The Court should exclude

Dr. Crake's two lost-earnings scenarios based on the assumption that J.S. ██

███████████████████████████████ The Court

also should exclude Dr. Crakes's two lost-earnings scenarios based on the

assumption that J.S. ███████████████████████████

██████

## CONCLUSION

The Court should exclude the opinions of Dr. Crakes identified in this motion.

15

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*

James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*

Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 28, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

**CAMPBELL,  CONROY  &  O'NEIL P.C.**

**MAYER BROWN LLP**

*/s/ James M. Campbell*
James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 28, 2024