# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. LARRY RUSSELL

Pursuant to Federal Rules of Evidence 402, 403, and 702, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to exclude certain opinions and related testimony of the Bellwether III Plaintiffs' expert Dr. Larry Russell.

Dr. Russell's Expert Report for the Bellwether III Plaintiffs offers opinions about allegedly damaged pipes at Flint homes that are based on pipe samples obtained from the homes of Class Plaintiffs. Those opinions are irrelevant to the claims of the Bellwether III Plaintiffs, who seek recovery for alleged personal injuries, not property damage. Moreover, those opinions are unreliable, are based on insufficient facts, and would be substantially more prejudicial to VNA than probative. The Court should exclude the opinions under Rules 402, 403, and 702.

The Court previously denied motions filed by VNA to exclude similar opinions about pipe damage that Dr. Russell offered on behalf of Class Plaintiffs. *See* Second Am. Op. & Order Granting in Part & Denying in Part Class Pls.' Mot. to Certify Class 137-142, ECF No. 1957, PageID.68145-68150; Op. & Order Denying VNA Mot. to Exclude the Testimony & Report of Dr. Russell (Russell Daubert Order), ECF No. 2606, PageID.85722; *see also* Mar. 8, 2023 Tr. 4:9-21:10, ECF No. 76938, PageID.76941-76958 (denying VNA's Motion For Sanctions For Spoliation Of Evidence). The Court did not have occasion to consider the relevance, reliability, or prejudicial impact of Dr. Russell's opinions when offered against VNA in bellwether cases filed by minor claimants seeking only personal-injury damages.

Dr. Russell also offers opinions about VNA's state of mind, including VNA's intentions and motives, in connection with VNA's engagement with the City of Flint. Because VNA's state of mind is not an appropriate subject for expert opinion and testimony, the Court should exclude those opinions under Rule 702. Dr. Russell did not expressly offer all of those same opinions in his reports for Class Plaintiffs. VNA did not challenge those opinions in its previous *Daubert* motions, and the Court has not had any occasion to consider VNA's grounds for challenging them.

Finally, Dr. Russell offers the opinion that VNA was the "last clear chance" for Flint residents to avoid further exposure to lead. That is a legal conclusion and therefore not an appropriate subject for expert opinion and testimony. That opinion

2

is also not based on sufficient facts and data. The Court should exclude that opinion under Rule 702. Dr. Russell did not expressly offer that opinion in his previous reports for Class Plaintiffs. VNA did not challenge that opinion in its previous *Daubert* motion, and the Court has not had occasion to consider VNA's grounds for challenging it.

As Local Rule 7.1 requires, on March 26, 2024, VNA sent counsel for the Bellwether III Plaintiffs an email identifying each of the points raised in this motion along with detailed explanations of the legal bases for each point, and offering to schedule a call if counsel wished to discuss the motion further. On March 27, 2024, counsel for the Bellwether III Plaintiffs said that they did not concur in the motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: March 28, 2024

3

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. LARRY RUSSELL

## STATEMENT OF THE ISSUES PRESENTED

1.  Should the Court exclude Dr. Russell's opinions about the condition of supposedly damaged residential pipes in Flint under Federal Rules of Evidence 402, 403, and 702 because they are irrelevant to the Bellwether III Plaintiffs' claims, unreliable, insufficiently supported by the facts and data, and substantially more prejudicial than probative?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

2.  Should the Court exclude Dr. Russell's opinions about VNA's state of mind pursuant to Federal Rule of Evidence 702?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

3.  Should the Court exclude Dr. Russell's opinion that VNA was the "last clear chance" for Flint residents to avoid further exposure pursuant to Federal Rule of Evidence 702?

    **VNA answers:** "Yes."

    **Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994)

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)

*In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*,
    345 F. Supp. 3d 897 (S.D. Ohio 2015)

*Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001)

Fed. R. Evid. 402

Fed. R. Evid. 403

Fed. R. Evid. 702

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................1

BACKGROUND .....................................................................................................3

LEGAL STANDARD .............................................................................................6

ARGUMENT ..........................................................................................................7

    I.    Dr. Russell's Opinions On Pipe Conditions Should Be Excluded ..............7

        A.    The Pipe-Condition Opinions Are Irrelevant To Bellwether III..........7

        B.    The Pipe-Condition Opinions Are Unreliable ...................................10

        C.    The Pipe-Condition Opinions Are Substantially More Prejudicial To VNA Than Probative Of Bellwether III Plaintiffs' Claims..................................................................................12

    II.    Dr. Russell's Opinions On VNA's State Of Mind Should Be Excluded...............................................................................................14

    III.   Dr. Russell's "Last Clear Chance" Opinion Should Be Excluded ............18

CONCLUSION .....................................................................................................21

## INTRODUCTION

Dr. Larry Russell, a professional engineer, is the Bellwether III Plaintiffs' expert witness on engineering standards of care and corrosion science.  Dr. Russell opines, among other things, that VNA breached its professional standard of care in 2015 and that the alleged breach contributed to lead and corrosion problems in Flint. VNA disputes those opinions but does not seek to exclude them.  VNA seeks to exclude other opinions that Dr. Russell has offered in the Bellwether III cases on three specific topics:   (1) claimed damages to residential plumbing in Flint; (2) VNA's state of mind in providing professional consulting services to the City of Flint in 2015; and (3) whether VNA was the "last clear chance" for Flint residents to avoid exposure and injury during the water crisis.

For the Bellwether III trial, the Court should exclude Dr. Russell's opinion that pipes and fixtures in Flint homes are damaged and need to be removed and replaced.  That opinion is supposedly based on examining pipes taken from two Flint homes owned by Class Plaintiffs.  The Court should exclude Dr. Russell's opinions for three reasons.  First, the opinion is unhelpful and irrelevant to the Bellwether III trial because the Bellwether III Plaintiffs are not seeking any property damages for removing or replacing plumbing in their homes.  They are minors alleging that VNA is liable for their claimed personal injuries from exposure to Flint water in 2015. Second, the opinion is unreliable because Dr. Russell provides no basis either for

assuming that any Plaintiff's pipes are damaged or for inferring that any other Flint homes have damaged pipes. Third, his opinion would be substantially more prejudicial than probative if offered at the Bellwether III trial because it suggests that the jury should hold VNA liable to remedy purportedly ongoing lead and corrosion issues that are unrelated to the merits of the Bellwether III Plaintiffs' claims. For those reasons, the Court should exclude Dr. Russell's opinions about residential pipe conditions under Rules 402, 403, and 702.

The Court also should exclude Dr. Russell's opinions about VNA's intentions, motivations, and state of mind, including Dr. Russell's opinion that VNA intentionally misled the public to obtain additional business from the City of Flint. VNA's state of mind is not an appropriate subject for expert testimony—it does not relate to Dr. Russell's expertise, and jurors can draw their own inferences about it—so Dr. Russell's speculative opinions on the subject are inadmissible under Rule 702.

Finally, the Court should exclude Dr. Russell's opinion that VNA was the "last clear chance" for Flint residents to avoid further exposure. Under Rule 702, that opinion is inadmissible because it is a legal conclusion rather than an expert opinion. That opinion is also inadmissible because Dr. Russell did not review sufficient facts and data concerning the conduct of nonparties to form the opinion that VNA (and not any of those nonparties) was the "last clear chance."

## BACKGROUND

The Bellwether III Plaintiffs are seven minors who have brought claims against VNA for personal injuries purportedly resulting from exposure to elevated lead levels in Flint water.[1]  None of the Bellwether III Plaintiffs are asserting claims for any property damages or economic expenses.

On January 3, 2022, the Bellwether III Plaintiffs served Dr. Russell's Expert Report.  *See* Ex. 2, Russell Bellwether III Report (Report).  On September 19, 2023, the Bellwether III Plaintiffs served Dr. Russell's Rebuttal Report.  *See* Ex. 3, Russell Bellwether III Rebuttal Report (Rebuttal Report).  Previously, Dr. Russell also prepared similar expert reports for Class Plaintiffs.  *See, e.g.*, Russell Class Report, ECF No. 1208-67, PageID.35411; Ex. 4, Russell Supplemental Class Report (Suppl. Class Report).[2]

Dr. Russell has offered the opinion that VNA's professional consulting services for the City of Flint in February-March 2015 breached VNA's professional standard of care.  *See* Ex. 2, Report 5-6.  Dr. Russell claims to be qualified to offer

---

[1]  Pursuant to the Court's Case Management Order, the Bellwether III Plaintiffs— like the Bellwether I Plaintiffs—were drawn from "individual plaintiffs whose dates of birth are between April 25, 2008, and April 25, 2014, and who only claim lead-induced injuries."  Fifth Am. Case Mgmt. Order 61, ECF No. 1255, PageID.39324.

[2]  Dr. Russell's Bellwether III Rebuttal Report purports to "incorporate" "by reference" his prior reports from "the Class . . . matter[]."  Ex. 3, Rebuttal Report 2.

that opinion based on his expertise in "water quality assessments, corrosion mitigation, and the behavior of materials exposed to drinking water." *Id*. at 3.

In his Bellwether III Report, Dr. Russell offers opinions about VNA's state of mind, including VNA's intentions and motivations when the City of Flint retained VNA in February 2015. In particular, Dr. Russell opines that VNA was "treating [its] initial retention as 'paid due diligence' for a desired larger project, involving the installation of six Veolia managers to direct the City water treatment staff," Ex. 2, Report at 4; that VNA "was singularly focused on increasing its income from the City of Flint," *id*.; and that VNA engineers "*intentionally* understated the health risk from lead to the citizens of Flint," *id*. at 5 (emphasis added); *see also id.* at 38 (VNA "*intentionally* misle[]d the public, and violated their ethical obligation to serve the public first before their profits" (emphasis added)); *id*. at 50 ("Veolia moved forward *with the hope of* future work. Veolia never provided the City with . . . best engineering judgment (BEJ)." (emphasis added)). In addition, Dr. Russell opines that VNA "provided the last clear chance for the citizens of Flint to be spared exposure to more high lead content drinking water and Veolia dropped the ball." *Id*. at 5.

Dr. Russell's Bellwether III Expert Report also offers opinions about claimed pipe damage at the homes of Flint residents and the supposed need for removal and replacement of residential pipes and fixtures. He writes:

4

> The lead levels remaining in the heavily corroded and tuberculated steel pipe sections collected from a house in Flint (and most likely at all other similarly plumbed homes having water service laterals made from lead) are excessive and present a risk to the health of the residents of Flint and *require removal* to protect the health of the citizens of Flint. Additionally, the current standards for lead content for drinking water fixtures are up to two orders of magnitude lower than the lead content of the installed fixtures and will *likewise require removal and updating* with fixtures that meet the current less than 0.25 percent lead requirement.  The condition of the residual scale that remains in the pipes today, with the high lead content, is a problem that needs to be corrected immediately.

Ex. 2, Report 5 (emphases added); *see id.* at 47 ("high levels of lead . . . still remain in the steel pipes").  Dr. Russell states that his basis for those opinions is "[m]easurements and observations reported in the Russell Supplemental Report submitted on October 18, 2022 [*i.e.* Ex. 4, Suppl. Class Report]."  *Id*. at 5.

Dr. Russell's Bellwether III Report does not specifically identify the "house in Flint" where he supposedly found "excessive" lead levels in the "heavily corroded and tuberculated steep pipe sections," *id*., but his Supplemental Class Report shows that house to be the residence of Class Plaintiffs Barbara Davis and Darrell Davis. *See, e.g.*, Ex. 4, Suppl. Class Report 38.  Dr. Russell's opinions about the lead content of residential plumbing in Flint are based entirely on pipes from the Davis residence and from one other address, the residence of Class Plaintiff Rhonda Kelso. *See id*. at 2-5; Ex. 5, Russell 12/28/22 Dep. 128:8-15 (Consol. Dep.).

## LEGAL STANDARD

Courts have the "basic gatekeeping obligation" to ensure the "reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999). A qualified expert may provide opinion testimony only if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 591 (1993). The expert opinion also must be "based on sufficient facts or data," must be "the product of reliable principles and methods," and must be the result of the expert's "reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). In short, expert testimony must "rest[] on a reliable foundation and [be] relevant to the task at hand." *Daubert,* 509 U.S. at 597.

Under Federal Rule of Evidence 403, a court also "may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *HLV, LLC v. Van Buren County*, 775 F. App'x 204, 216 (6th Cir. 2019) (quoting Fed. R. Evid. 403); *see also Jimkoski v. State Farm Mut. Auto. Ins.*, 247 F. App'x 654, 662 (6th Cir. 2007).

As the proponent of the expert testimony, the Bellwether III Plaintiffs have the burden to establish the admissibility of the testimony by a preponderance of the evidence.  *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001).

## ARGUMENT

## I.   Dr. Russell's Opinions On Pipe Conditions Should Be Excluded

The Court should exclude Dr. Russell's inspection of Class Plaintiffs' pipe samples and the opinions he formed based on the inspection about the need to remove and replace plumbing in Flint homes.  *See* Ex. 2, Report 5.  Those opinions should be excluded because they are irrelevant to the Bellwether III cases; unreliable and not sufficiently based on facts or data; and substantially more prejudicial to VNA than probative.  *See Daubert*, 509 U.S. at 597; Fed. R. Evid. 402, 403, & 702.

### A.   The Pipe-Condition Opinions Are Irrelevant To Bellwether III

Dr. Russell's opinions about claimed damages to residential plumbing should be excluded because they are irrelevant to the Bellwether III Plaintiffs' claims and thus do not "fit" any issue that will actually be tried.  *Daubert*, 509 U.S. at 591.

The Bellwether III Plaintiffs do not seek property damages.  The Bellwether III Plaintiffs are minors who seek damages for claimed personal injuries, including neurocognitive harms, purportedly resulting from exposure to lead in Flint water.  In fact, they cannot seek property damages because they are minors without ownership of any relevant property (unlike their parents or guardians who may claim property ownership).  For that reason alone, Dr. Russell's pipe-condition opinions are

7

irrelevant to the Bellwether III cases, and the Court should exclude them. Those opinions regarding property damages have no "tendency to make a fact more or less probable" that is "of consequence in determining" the Bellwether III Plaintiffs' personal-injury claims. Fed. R. Evid. 401(a)-(b).

Dr. Russell's pipe-condition opinions also are irrelevant because he conducted his sampling years after the alleged exposure at issue. He sampled the pipes in the two homes in question in February 2022. *See* Ex. 4, Suppl. Class Report 2. That is years after 2015, when the Bellwether III Plaintiffs claim to have been injured by exposure to lead in Flint water as a result of VNA's conduct. Dr. Russell's opinions based on sampling of pipes in 2022 do not show anything of relevance to the Bellwether III Plaintiffs' claimed personal injuries from exposure to Flint water in 2015.

Although the Court held in the class case that Dr. Russell would be permitted to offer opinions on residential pipe conditions in Flint, it does not follow that such opinions are relevant to the Bellwether III Plaintiffs who are not claiming any property damages at all. Specifically, the Court ruled that Dr. Russell's opinions about city-wide pipe conditions based on his observations of the Davises' and Kelso's pipe samples were reliable and relevant to the issue-class trial. *See* Russell Daubert Order 13-16, PageID.85734-85737. But that was only because the harms claimed on behalf of the class included the costs of replacing their residential pipes.

*See id.* at 16, PageID.85737.  Unlike Class Plaintiffs, the Bellwether III Plaintiffs are not seeking monetary costs to remove and replace damaged pipes—they are claiming personal injuries from exposure to Flint water in 2015—so Dr. Russell's opinions about pipe damages based on examining allegedly damaged pipe samples taken from Class Plaintiffs' homes in 2022 are irrelevant to the Bellwether III Plaintiffs' claims.  And Dr. Russell offers no opinions about how to draw inferences from the residential pipe conditions to the levels of lead in the residential water during the period following February 2015 for which the Bellwether III Plaintiffs contend that VNA is liable for their alleged exposures and injuries from that water.

For those reasons, Dr. Russell's opinions about claimed pipe conditions are irrelevant to the Bellwether III Plaintiffs' personal-injury claims.  The Sixth Circuit has held that courts may exclude expert testimony when the testimony does not fit an issue that will actually be decided by the trier of fact.  *See United States v. Moody*, 787 F. App'x 857, 863 (6th Cir. 2009) (affirming district court's exclusion of expert's testimony that "did not address [t]he particular issue in th[e] case" (internal quotation marks omitted)); *United States v. LeBlanc*, 45 F. App'x 393, 400 (6th Cir. 2002) (affirming district court's exclusion of defense expert's testimony because the defendant "failed entirely to demonstrate the 'fit' between [the] proffered testimony and any fact at issue in th[e] case").  Because Dr. Russell's opinions about pipe conditions at the residences of two class representatives likewise fail to "fit" the

issues in the Bellwether III cases, the Court should exclude them.  *See Nelson*, 243 F.3d at 250-251 (citing *Daubert*, 509 U.S. at 591; Fed. R. Evid. 702).

### B.   The Pipe-Condition Opinions Are Unreliable

Dr. Russell's opinions regarding residential pipe conditions in Flint also should be excluded for the independent reason that they are unreliable and based on insufficient facts.  *See Nelson*, 243 F.3d at 250-251; Fed. R. Evid. 702(b)-(d).

To begin with, Dr. Russell's opinion that residential pipes in Flint were damaged by Flint water in 2015 is unreliable.  Specifically, his opinion that the galvanized steel pipes from the Davis residence had been "heavily corroded" (Ex. 2, Report 5) is unreliable for the reasons VNA previously explained in the class case: Dr. Russell admits that the pipes likely were 84 years old when they were removed; he admits that that is more than their expected service life; he cannot dispute that old pipes are often corroded; and he offers no basis for opining that significant corrosion occurred in 2015.  *See* VNA Mot. to Exclude the Testimony & Opinions of Dr. Russell 9-12, ECF No. 2454, PageID.77622-77625.  As VNA further explained, *see id.* at 12-13, PageID.77625-77626, Dr. Russell also has no basis to infer anything about "all other" Flint homes, Ex. 2, Report 5, from having examined *just two* homes, *see* Ex. 4, Suppl. Class Report 2.  This Court ruled that Dr. Russell's opinions were reliable enough to withstand VNA's *Daubert* challenge in the class case.  Russell Daubert Order 10-16, PageID.85731-85737.  Respectfully, the Court was mistaken

10

and should reconsider that conclusion.  Under Sixth Circuit law, there is "no basis" for Dr. Russell's "assumption" that the water crisis damaged residential plumbing in Flint homes, so his opinions should be excluded.  *Nelson*, 243 F.3d at 253.

In addition, Dr. Russell has no reliable basis to opine that "[t]he lead levels remaining" in pipes and fixtures in Flint homes "are excessive."  Ex. 2, Report 5; *see* Ex. 4, Suppl. Class Report 4-5.[3]  Dr. Russell bases that opinion on measurements taken on the pipe samples from the Davis residence detecting lead levels of 41.8, 83.3, and 168 parts per million (ppm) in the interior pipe scale.  *See* Ex. 4, Suppl. Class Report 29 (Table 5.2-1).  But Dr. Russell offers no basis at all for his opinion that 41.8, 83.3, and 168 ppm are *excessive* amounts of lead.  Because that opinion has "no basis," it should be excluded.  *Nelson*, 243 F.3d at 253.

Dr. Russell's measurements also are unreliable.  He makes little effort to rule out the opinion of VNA's expert that the pipe's interior scale likely was contaminated with lead from the pipe's exterior layer when Dr. Russell cut the pipe (so that the lead never would have released into water inside the pipe).  *See* Ex. 6, Crowe Report 15.[4]  An expert's opinions should be excluded when the expert fails

---

[3]   The Court did not consider these challenges to the reliability of Dr. Russell's opinions about the lead content of Flint pipe scale when the Court denied VNA's motion to exclude his opinions about Class Plaintiffs' claimed pipe damages.

[4]   Dr. Russell cannot say that the lead may have derived from the home's service lines.  City of Flint data show that the service lines at the Davis residence were

to "'rule out' other possible causes." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010).

Further, Dr. Russell provides no basis for inferring that the lead content of pipes at "all other" Flint homes is similar to what he claims to have found at the Davis residence.   Ex. 2, Report 5.   "[A] sample size of one is rarely, if ever, sufficient" for broad conclusions. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010).   A single sample is certainly insufficient to assess *citywide* pipe conditions in Flint.   For all these reasons, Dr. Russell's pipe-condition opinions should be excluded.   Even if they were relevant to the Bellwether III cases, they are unreliable.

### C.   The Pipe-Condition Opinions Are Substantially More Prejudicial To VNA Than Probative Of The Bellwether III Plaintiffs' Claims

Even if Dr. Russell's opinions about damaged pipes in Flint homes had some minimal relevance to the Bellwether III Plaintiffs' claims, those opinions should be excluded because their "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [and] misleading the jury."  Fed. R. Evid. 403.

VNA would be prejudiced by Dr. Russell's opinion that pipes and fixtures in Flint homes "require removal to protect the health of the citizens of Flint" because

---

excavated in 2018 and that they were made of copper, not lead.  *See, e.g.*, Finley Declaration 48, ECF No. 1366-9, PageID.42678.

of their lead content.  Ex. 2, Report 5.  Dr. Russell's opinion suggests that the Bellwether III Plaintiffs continue to be threatened by exposure to lead in their home plumbing, and his opinion could motivate jurors to impose damages against VNA in order to remedy that issue.  But any putative continuing exposure to lead on the part of the Bellwether III Plaintiffs (purportedly shown by pipe samples from two homes) would have no relevance for the claims against VNA for alleged injuries from lead exposure following the commencement of VNA's engagement in February 2015. And the Bellwether III Plaintiffs are not seeking removal of pipes or fixtures.

Additionally, the Bellwether III Plaintiffs' counsel could prejudicially use Dr. Russell's testimony to introduce photographic evidence of the putatively corroded pipes from Class Plaintiffs' residences (*e.g.*, Ex. 4, Suppl. Class Report, Attachments 1 & 2) in an effort to sensationalize the Bellwether III Plaintiffs' narrative about Flint.  But it cannot reasonably be questioned that the condition of those pipes is due at least in large part to their old age rather than corrosive water during 2015, and showing that evidence to the jury could only cause confusion.  As VNA's expert has explained, even when the water supply is not experiencing problems with corrosion, galvanized steel pipe like the pipes from the Davis and Kelso residences will corrode over time in a manner similar to what happened to the Davises' and Kelso's pipes. *See* Ex. 7, Masters Report 53.  In fact, the report of VNA's expert showed photographs comparing the alleged damage to the steel pipes at Kelso's home to old

steel pipes at a home in a city with proper corrosion controls. *Id*. at 54. The similarity between the photographs demonstrates that the condition of the pipes at Class Plaintiffs' homes is not necessarily attributable to corrosion from improperly treated water in 2015—but that is exactly what Dr. Russell would be suggesting to the jury. And even if VNA could adequately explain all that to the jury through cross-examination of Dr. Russell or direct examination of VNA's experts, VNA should not have to devote its limited trial time to doing so. Exclusion of Dr. Russell's opinions is therefore warranted. *See In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985), *aff'd*, 818 F.2d 187 (2d Cir. 1987) ("The waste-of-time ground for exclusion is particularly persuasive when detailed rebuttal testimony would be necessary to establish that the proffered evidence lacks probative worth."); *accord Soldo v. Sandoz Pharms. Corp.,* 244 F. Supp. 2d 434, 536 (W.D. Pa. 2003).

Because Dr. Russell's pipe-condition opinions may tend to cause the jury to find against VNA on "an improper basis," they should be excluded under Rule 403. *Journey-Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 459 (6th Cir. 2016).

## II.   Dr. Russell's Opinions On VNA's State Of Mind Should Be Excluded

The Court also should exclude under Rule 702 Dr. Russell's opinions on VNA's state of mind—including his opinions about VNA's desires, intentions, and

motivations in performing services for the City of Flint—because VNA's state of mind is not an appropriate subject for expert opinions and testimony.

Experts generally may not offer opinions on a corporation's state of mind. "Courts have typically barred expert opinions and testimony concerning a corporation's state of mind, subjective motivation, or intent" under Rule 702, because the testimony "describes 'lay matters which a jury is capable of understanding and deciding without the expert's help.'" *In re E. I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015) (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004)); *accord, e.g.*, *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2021 WL 2431719, at *15 (E.D. Mich. June 15, 2021), *vacated in part on other grounds*, 2021 WL 3422340 (E.D. Mich. Aug. 5, 2021); *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-00074-JHM, 2020 WL 1159756, at *7-8 (W.D. Ky. Mar. 10, 2020).  Expert witnesses thus may not speculate regarding corporate intent, state of mind, or motivations, because such opinions "have no basis in any relevant body of knowledge or expertise." *In re E. I. du Pont de Nemours & Co.*, 345 F. Supp. 3d at 903 (quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 546).

Dr. Russell's Report is rife with inadmissible opinions speculating about VNA's state of mind.  Dr. Russell offers opinions about VNA's intent in providing professional services to the City of Flint, asserting that VNA engineers "intentionally

understated the health risk from lead to the citizens of Flint," Ex. 2, Report 5, and that VNA's "intent" was "to secure a large-scale operations or management project in Flint," *id*. at 50; *see id.* at 38 ("Veolia's business development team clearly viewed the contract as a means to achieve much larger contracts for services in Flint."); *id*. (VNA "intentionally misle[]d the public").  Dr. Russell also offers opinions about VNA's motivations, including that VNA was "treating [its] initial retention as 'paid due diligence' for a desired larger project," and that VNA "was singularly focused on increasing its income from the City of Flint, rather than on improving water quality for and protecting public health."  *Id*. at 4.  Dr. Russell's Report also speculates that VNA "knew of and effectively ignored the problems in Flint" before submitting its response to the City's Request For Proposal, *id*., and that VNA made the "corporate decision to compromise" its responsibility to the public, *id*. at 14.

Dr. Russell's opinions about VNA's intentions, motives, and state of mind are just the sort that courts have excluded under Rule 702.  *See In re Lyondell Chem. Co.*, 558 B.R. 661, 670 (S.D.N.Y. 2016) (excluding expert opinion that defendants "ignored" or "otherwise did not consider certain information"); *In re E. I. du Pont de Nemours*, 345 F. Supp. 3d at 914 (excluding testimony in which the expert "speculate[d] as to DuPont's motives, which is not permitted"); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d at 547 ("plaintiffs are precluded from offering expert opinion evidence" of "the alleged motive, intent or state of mind of defendants");

16

*Bouchard v. Am. Home Prods. Corp.*, No. 3:98 CV 751, 2002 WL 32597992, at *6 (N.D. Ohio May 24, 2002) (excluding expert opinion on "Corporate Intent").

Dr. Russell himself effectively conceded at a deposition that any opinions about VNA's state of mind are speculative and not based on his expertise. Dr. Russell explained that he does not "know what was in the VNA engineer's minds other than what I see . . . in their e-mails." Ex. 5, Consol. Dep. 261:16-19; *see id.* at 103:1-2 ("[W]hy [VNA] didn't do more, I don't know."); *id.* at 231:4-5 ("I can't know what [VNA's] thinking is"); *see also* Ex. 3, Rebuttal Report 27 ("[H]ow would [VNA's expert] know what Veolia was thinking?"). For that very reason, the opinions about VNA's state of mind in Dr. Russell's Report are not appropriate expert testimony, and the jurors should be left to decide for themselves what inferences to draw from the e-mails on which Dr. Russell's opinions purportedly are based. The Court should exclude that testimony.

In fact, this Court previously struck "as improper speculation" the opinion— advanced by Class Plaintiffs' expert Dr. Paolo Gardoni—that VNA " 'failed to disclose that it believed that lead was currently being released into the water supply [because] VNA understood that releasing this information publicly would compromise its opportunity to be awarded a lucrative long-term operating contract.' " Second Am. Op. & Order Granting In Part & Denying In Part Class Pls.' Mot. to Certify Class 138, ECF No. 1957, PageID.68146 (quoting Gardoni Report

17

21, ECF No. 1208-114, PageID.37182). The Court determined that Dr. Gardoni's opinion was "speculation and would need to be proved based on the facts aside from an expert's opinion about that." Tr. of Mot. Hr'gs 83, ECF No. 1785, PageID.63787. Likewise here, the Court should exclude Dr. Russell's own opinions about VNA's state of mind because the opinions are "speculation and would need to be proved based on the facts aside from an expert's opinion." *Id*.

## III. Dr. Russell's "Last Clear Chance" Opinion Should Be Excluded

Finally, the Court should exclude Dr. Russell's opinion that "Veolia's involvement provided the last clear chance for the citizens of Flint to be spared exposure to more high lead content drinking water." Ex. 2, Report 5. Dr. Russell appears to mean that VNA is liable for the Flint water crisis, *regardless* of the role that nonparty city, state, and federal officials played in causing the crisis, because those "[o]thers [we]re involved way before Veolia." Ex. 5, Consol. Dep. 239:24-240:1. Under Rule 702, the Court should exclude that opinion for two reasons.

First, Dr. Russell's opinion that VNA was the "last clear chance" is a legal conclusion and hence not a proper subject for expert testimony. "Rule 702 prohibits expert witnesses from testifying to legal conclusions." *United States v. Melcher*, 672 F. App'x 547, 552 (6th Cir. 2016). Dr. Russell's opinion that VNA is liable regardless of the role of nonparties in causing the crisis is a legal conclusion about the ultimate issue of VNA's liability rather than a factual opinion about VNA's

18

conduct or its consequences.  The Court therefore should exclude that opinion.  As the Sixth Circuit has held, an expert may not testify on the ultimate issue of liability. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *see also id.* at 1354 (Rule 702 should not be interpreted to "breed a whole new category of 'liability experts' whose function would be to tell the jury what result to reach").  In fact, the words "last clear chance" refer to a specific legal doctrine—a doctrine that has been abolished in Michigan.  *See, e.g.*, *Petrove v. Grand Trunk W. R.R. Co.*, 437 Mich. 31, 33 (1991).  The very fact that Dr. Russell is invoking a (defunct) "legal term" shows that his opinion is inadmissible under Rule 702.  *Berry*, 25 F.3d at 1353.

Second, Dr. Russell's opinion that VNA was the "last clear chance" for Flint residents to avoid further exposure to Flint water also should be excluded because it is not based on sufficient facts or data.  Dr. Russell testified that he was not asked to consider—and he did not consider—the role that government nonparties played in creating and perpetuating the crisis.  *See, e.g.*, Ex. 5, Consol. Dep. 233:11-12 ("I don't know what [MDEQ] did or they didn't do"); *id*. at 240:17-22, 241:13-242:8 (testifying that "I don't know what the governor's role was" and that "I haven't been asked to look into" the Governor's Office).  That is because the scope of his Report was limited to assessing the conduct of VNA and LAN.  *See* Ex. 2, Report 3; *see also* Ex. 8, Russell 10/5/2020 Dep. 185:15-23 (Dr. Russell "wasn't asked to

19

evaluate" nonparty Rowe Engineering); *id*. at 191:6-7 ("I haven't been asked to think about [whether MDEQ violated a standard of care], and I didn't.").

As a result, Dr. Russell cannot reliably offer the opinion that VNA (as opposed to nonparties) had the last clear chance to avoid the crisis, because he has not reviewed sufficient facts to rule out the possibility that nonparties at fault had the last clear chance.   There can be no question that City officials, MDEQ, the Governor's Office, and EPA (among others) were involved in Flint *after* the termination of VNA's contract with the City of Flint in March 2015.  *See, e.g.*, *In re Flint Water Cases*, 558 F. Supp. 3d at 479-481.

## CONCLUSION

The Court should exclude Dr. Russell's opinions about residential pipe conditions, VNA's state of mind, and whether VNA was "the last clear chance."

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  March 28, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*

Dated:  March 28, 2024