## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-EAS |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: | |
| BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) move for summary judgment on the professional negligence claims brought by Bellwether III Plaintiffs Y.A., E.A., G.B., C.D., R.E., J.N., and J.S., for the reasons explained in the accompanying brief.

The Court should grant VNA summary judgment because VNA did not owe the Bellwether III Plaintiffs a duty of care as a matter of law. VNA previously raised this argument in its motions for summary judgment in the Bellwether I case and in the class case. In Bellwether I, the Court denied summary judgment, ruling that VNA owed the Bellwether I Plaintiffs a duty of care after the City of Flint (City) hired VNA in February 2015. *See In re Flint Water Cases*, 579 F. Supp. 3d 971, 981-984 (E.D. Mich. 2022). VNA respectfully submits that the Court's prior order misapplied Michigan law, including for reasons that VNA had briefed in its motion

for summary judgment in the class case.  The Court had not ruled on VNA's motion for summary judgment in the class case before VNA withdrew the motion based on the tentative settlement with Class Plaintiffs, *see* Notice, No. 16-cv-10444 ECF No. 2830, PageID.94009, and VNA therefore resubmits its arguments here.

In addition, the Court should grant VNA summary judgment because the Bellwether III Plaintiffs lack evidence that they were exposed to a harmful amount of lead during the time period relevant to VNA's asserted liability and accordingly cannot show causation.  VNA raised this argument in the Bellwether I case based on the record in that case.  The Court denied summary judgment, ruling that the Bellwether I Plaintiffs could prove causation from circumstantial evidence.  *See In re Flint Water Cases*, 579 F. Supp. 3d at 985-989.  The Court did not rule on VNA's argument based on the record for the Bellwether III Plaintiffs.

Finally, the Court should grant VNA partial summary judgment on its non-party-at-fault defense by ruling that each non-party identified by VNA owed Plaintiffs a legal duty.  The Court has acknowledged that the non-parties identified by VNA had legal duties to Flint residents.  *See* Tr. of Feb. 24, 2022, Hrg. 31:11-14, ECF No. 710, PageID.45738.  VNA raised this argument in its motion for summary judgment in the class case.  The Court had not ruled on that motion before VNA withdrew it.

2

As Local Rule 7.1 requires, on April 14, 2024, VNA sent counsel for the Bellwether III Plaintiffs an email identifying each of the points raised in this motion along with detailed explanations of the legal bases for each point, and offering to schedule a call if counsel wished to discuss the motion further.  As of the time of this filing, VNA had not received a response from counsel for Bellwether III Plaintiffs.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  April 15, 2024

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: | |
| BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

## BRIEF IN SUPPORT OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

## STATEMENT OF ISSUES PRESENTED

1.   Should the Court grant VNA summary judgment on the Bellwether III Plaintiffs' professional negligence claims because VNA did not owe any Plaintiff a duty of professional care?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

2.   Should the Court grant VNA summary judgment on the Bellwether III Plaintiffs' claims because Plaintiffs cannot show that they were each exposed to a harmful amount of lead during the time period relevant to VNA's asserted liability and therefore cannot prove causation?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

3.   Should the Court grant VNA partial summary judgment on its non-party-at-fault defense because each non-party owed Bellwether III Plaintiffs one or more legal duties?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Bailey v. Schaaf*, 494 Mich. 595 (2013)

*Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010)

*In re Certified Question*, 479 Mich. 498 (2007)

*Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67 (2004)

*Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.,* 333 Mich. App. 234 (2020)

Fed. R. Civ. P. 56

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

LEGAL STANDARD ...............................................................................1

ARGUMENT ...........................................................................................2

I.      VNA Did Not Owe Plaintiffs A Legal Duty ..................................2

        A.     A Consulting Engineer Owes A Duty Of Professional Care To
               Its Client, Not Its Client's Customers ..................................2

               1.     In General, A Professional Owes A Duty Only To Its
                      Client ...........................................................................2

               2.     None Of The Factors That Courts Consider When
                      Determining Whether To Extend A Professional's Duty
                      To A Non-Client Is Present Here ...................................3

                      a.     There was no relationship .................................3

                      b.     The harm was not foreseeable ..........................8

                      c.     The costs of imposing a duty outweigh the benefits ......9

        B.     VNA Did Not Owe Plaintiffs The Specific Duty They Assert ..........12

               1.     In General, No Person Is Obligated To Protect Another
                      From Harm ..................................................................12

               2.     None Of The Exceptions Giving Rise To A Duty To
                      Protect Applies Here ...................................................15

II.     The Bellwether III Plaintiffs Cannot Prove Causation .................16

        A.     Plaintiffs Must Provide Evidence Of Their Post-VNA Levels
               Of Lead Exposure ...............................................................17

        B.     Plaintiffs Lack Evidence Of Post-VNA Levels Of Exposure ............19

III.    The Court Should Grant VNA Summary Judgment On Non-Party
        Duty ............................................................................................22

CONCLUSION .......................................................................................24

## INTRODUCTION

The Bellwether III Plaintiffs are seven minors bringing professional negligence claims against VNA for alleged injuries from lead in Flint water. The Court should grant VNA summary judgment on those claims for two reasons.

First, VNA did not owe Plaintiffs any duty of care as a matter of law. Although the Court previously held that VNA owed a duty to the Bellwether I Plaintiffs, the Court misapplied Michigan law, which extends a professional's duty to third parties (like Plaintiffs) only in limited circumstances not present here.

Second, the Court should grant VNA summary judgment because Plaintiffs cannot prove causation. That is because each of them lacks sufficient evidence to show that he or she was exposed to a harmful amount of lead during the time after February 2015 for which VNA is purportedly liable.

If the Court does not grant VNA summary judgment, the Court should grant VNA partial summary judgment on its nonparty-at-fault defense and rule that each of the non-parties identified by VNA owed a duty to Plaintiffs as a matter of law. The Court already has held that those non-parties owed a duty to Flint residents.

## LEGAL STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the

1

record "could not lead a rational trier of fact to find" for the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), including when the non-moving party's claim fails as a matter of law, *Crestmark Bank v. Electrolux Home Prods. Inc.*, 155 F. Supp. 3d 723, 747 (E.D. Mich. 2016).

## ARGUMENT

### I. VNA Did Not Owe Plaintiffs A Legal Duty

VNA did not owe any duty of care to Plaintiffs because they were not its clients and the City hired VNA only to provide advice.  Further, VNA did not owe Plaintiffs the specific duty to protect that they assert.

#### A. A Consulting Engineer Owes A Duty Of Professional Care To Its Client, Not Its Client's Customers

##### 1. In General, A Professional Owes A Duty Only To Its Client

In Michigan, a professional-services firm generally owes a duty of care in rendering services only to the "person who has contracted for such services."  *Saur v. Probes*, 190 Mich. App. 636, 638 (1991).  That rule protects the professional-client relationship; it ensures that clients can rely on professionals to provide unbiased advice.  *See Atlanta Int'l Ins. v. Bell*, 438 Mich. 512, 518-19 (1991).  Michigan courts have recognized that the general rule applies to attorneys, *see, e.g.*, *Mieras v. DeBona*, 452 Mich. 278, 297 (1996); physicians and other healthcare professionals, *see, e.g.*, *Roberts v. Salmi*, 308 Mich. App. 605, 614-15 (2014); and other professionals, *see, e.g.*, *Sabbagh v. Hamilton Psychological Servs. PLC*, 329

2

Mich. App. 324, 350-51 (2019) (human-resources company).  There is no case law

indicating that Michigan courts would treat water engineers any differently from

other professionals.  Here, Plaintiffs were not VNA's clients, so in the first instance

VNA did not owe them a duty of professional care.

### 2.  None Of The Factors That Courts Consider When Determining Whether To Extend A Professional's Duty To A Non-Client Is Present Here

Michigan courts extend a professional's duty of care to a non-client only in

very limited circumstances.  To decide whether a particular case warrants an

exception, Michigan courts consider the factors set out in *In re Certified Question*,

479 Mich. 498 (2007):  (1) whether there is a direct relationship between the plaintiff

and the defendant; (2) whether the harm to the plaintiff is foreseeable; and (3)

whether the social benefit of imposing a duty outweighs the cost.  *See, e.g.*, *Roberts*,

308 Mich. App. at 621 (applying the factors).  None is present here.

### a.  There was no relationship

The relationship factor is the "most important factor."  *Certified Question*, 479

Mich. at 505.  Here, there was no direct relationship between Plaintiffs and VNA.  It

is undisputed that the City, not Plaintiffs, was VNA's client.  Ex. 2,

VWNAOS018932 at 1, 5, 8 (Contract).  Plaintiffs also have presented no evidence

that any Plaintiff had heard of VNA before this lawsuit, much less interacted with

VNA in any way.  Without a direct relationship between Plaintiffs and VNA, VNA cannot owe Plaintiffs a legal duty.  *See, e.g.*, *Sabbagh*, 329 Mich. App. at 349-50.

In Bellwether I, the Court recognized that VNA lacked a direct relationship with the Bellwether I Plaintiffs, but held that the relationship factor was met because VNA had a contractual relationship with the City of Flint and the Bellwether I Plaintiffs' claims were related to that relationship.  *In re Flint Water Cases*, 579 F. Supp. 3d 971, 982 (E.D. Mich. 2022).  The Court relied on its decision in *Lee v. City of Flint*, No. 17-cv-11726, 2021 WL 5237197 (E.D. Mich. Nov. 10, 2021), in which it held (in the context of a delivery driver who travelled to Flint for work) that "th[e] relationships need not always be between the defendant and the plaintiff bringing suit" to satisfy the relationship factor.  *Id*. at *3.  That was mistaken.

*Certified Question* makes clear that the relationship must be between the plaintiff and the defendant.  The Michigan Supreme Court repeatedly described the relevant relationship as the "relationship *between the parties*," 479 Mich. at 506-09 (emphasis added), stating that "[w]here there is no relationship between the parties, no duty can be imposed," *id.* at 508.  It concluded that the defendant in that case did not have a sufficient relationship with the plaintiff, the stepdaughter of a contractor who worked on the defendant's property, to have owed the plaintiff a duty to protect her from asbestos that accumulated on her stepfather's clothing while he was at work.  *Id.* at 515.  The majority expressly rejected the argument, raised by the

dissent, that the defendant's relationship with the contractor could "extend" to the stepdaughter. *Id.* at 515 n.15. *Certified Question* thus directly forecloses the view that the relevant relationship can be between the defendant and a third party.

None of the other decisions the Court cited in *Lee* support its view of the relationship factor, either. The Court cited cases in which a plaintiff who did not have a relationship with the defendant tried—unsuccessfully—to argue that the defendant owed the plaintiff a duty based on a relationship between the defendant and a third party. *Lee*, 2021 WL 5237197, at *3. In each case, the plaintiff was injured by a third party who had a relationship with the defendant, and the plaintiff argued that that relationship gave rise to an obligation by the defendant to protect the plaintiff from the third party. *See Buczkowski v. McKay*, 441 Mich. 96, 103-04 (1992); *Murdock v. Higgins*, 454 Mich. 46, 55-56 (1997); *Bearss v. Fazzini*, No. 347206, 2020 WL 3399571, at *2-3 (Mich. App. June 18, 2020). And in each case, the Michigan court rejected the plaintiff's argument, holding that the defendant did *not* owe the claimed duty. *See id.* Those cases thus do not support the view that VNA's contract with the City can satisfy the relationship factor here.

Next, the Court cited contractor-liability cases in which courts held that a contractor that created a hazard on a third party's property that the plaintiff visited owed a duty to that plaintiff. *Lee*, 2021 WL 5237197, at *3. The Court stated that the plaintiff and the contractor had "no relationship" in those cases. *Id*. To the

contrary, in each case there *was* a direct relationship between the parties—the plaintiff and the contractor were shared users of a common space.  It is black-letter law that a user of a common space (*e.g.*, a driver on a public road) owes a duty to other users of that space (*e.g.*, other motorists and pedestrians) to exercise reasonable care in using the space (*e.g.*, to drive carefully).  *E.g.*, Restatement (2d) of Torts § 297(b) (1965).  VNA and Plaintiffs did not share a common space.

The Court also stated that *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157 (2011), "squarely rejected" the view that VNA can be liable only to its clients.  *Lee*, 2021 WL 5237197, at *4.  But that decision held only that a defendant cannot use its contractual obligations to a client as a basis for abrogating its common-law obligations to others.  The case involved a subcontractor that had negligently stacked cement boards on a construction site; the boards fell, injuring an employee of another subcontractor.  *Loweke*, 489 Mich. at 160.  The defendant argued that because it had stacked the boards as part of its work under a contract with the general contractor, the plaintiff could not bring tort claims against it.  *Id.* at 161.  The defendant relied on *Fultz v. Union-Commerce Associates*, 470 Mich. 460 (2004), which it argued "establish[ed] a form of tort immunity that bars negligence claims raised by a noncontracting [plaintiff]."  *Loweke*, 489 Mich. at 168.

The Michigan Supreme Court in *Loweke* rejected that reading of *Fultz*.  It explained that *Fultz* held that a plaintiff cannot rely on a defendant's contractual

obligations to provide a basis for a duty to the plaintiff, but did not displace or abrogate any common-law duties that the defendant may have owed to the plaintiff. *Loweke*, 489 Mich. at 168. *Loweke* went no further—it expressly declined to address whether the plaintiff in that case "was owed a duty of care under the common law" and did not purport to change the *Certified Question* framework for determining common-law duty. *Id.* at 172. Here, VNA does not argue that it is categorically immune from tort claims by any plaintiff other than the City because of its contract with the City. Instead, it argues that these Plaintiffs have not satisfied the relationship factor for common-law duty as set out in *Certified Question*.

Finally, the Court relied on the voluntary-undertaking doctrine, set out in section 324A of the Second Restatement of Torts, to support its view that the relationship need not be between the plaintiff and the defendant. *Lee*, 2021 WL 5237197, at *4. Under that doctrine, a defendant can be liable to a plaintiff for services rendered to a third party in certain circumstances. *See* Restatement (2d) of Torts § 324A. The doctrine applies only when a defendant undertakes to provide services to a third party that the defendant should recognize are necessary for the protection of the plaintiff, and (1) the defendant's negligence increases the risk of harm to the plaintiff, (2) the defendant undertakes a duty owed by the third party to the plaintiff, or (3) the plaintiff suffers harm because the defendant induces the third party or the plaintiff to detrimentally rely on the defendant's undertaking. *See Myers*

7

*v. United States*, 17 F.3d 890, 903 (6th Cir. 1994). Here, VNA did not increase any risk of harm to any Plaintiff, *see* pp. 12-14, *infra*; VNA did not undertake any duty to provide drinking water owed to Plaintiffs by the City; and VNA did not induce any detrimental reliance—Plaintiffs have presented no evidence that any of them even was aware of VNA, and VNA did not induce any reliance by the City on its recommendations.

The Michigan Supreme Court has never used section 324A to find a duty in a professional-negligence case, and it has warned against applying section 324A "uncritically or without regard to limiting principles within [Michigan] case law." *Fultz*, 470 Mich. at 464. In addition, it has directed courts to "reconcile the principles expressed in [section] 324A with [Michigan] case law that limits their breadth," *id.* at 465—such as the Michigan decisions that recognize the importance of protecting the relationship between a professional and its client, *see, e.g.*, *Atlanta Int'l Ins.*, 438 Mich. at 518. The voluntary-undertaking doctrine thus does not support expanding the relationship factor in professional-negligence cases. And without the necessary relationship, "no duty can be imposed." *Certified Question*, 479 Mich. at 508.

### b.   The harm was not foreseeable

The foreseeability factor also is absent here, and "where the harm is not foreseeable, no duty can be imposed." *Certified Question*, 479 Mich. at 509. Under Michigan law, intentional misconduct is unforeseeable as a matter of law. *See*

*MacDonald v. PKT, Inc.*, 464 Mich. 322, 334-35 (2001). Here, VNA could not have reasonably foreseen the Bellwether III Plaintiffs' alleged injuries because the City deliberately withheld critical data from VNA. VNA specifically requested the City's lead-testing data, and the data that the City provided showed compliance with federal standards. Ex. 3, Gnagy Dep. 691:10-692:10. VNA relied on the City to provide it complete and accurate testing results. *See* Ex. 2, Contract 9 ("The City would provide . . . records for review."). VNA did not expect that the City would deliberately withhold from VNA the data from LeeAnne Walters' home. Without knowledge of an actual lead problem in Flint, VNA could not have foreseen that Plaintiffs would suffer their alleged injuries from exposure to lead in Flint water.

### c. The costs of imposing a duty outweigh the benefits

The public-policy factor also does not support extending VNA's duty of professional care to Plaintiffs. Doing so would massively expand professional negligence in Michigan. Any time a professional provides services to a client, the professional could be liable to any third party who may be connected to that client. Thus, a contractor for the federal government on a nationwide IT project might be liable to all 328 million U.S. residents. Such an expansive view of duty would have a devastating effect on the ability and willingness of consultants to provide services to government agencies. It would prevent consultants from being able to manage their liability in advance; indeed, it would override any agreement that a consultant

9

had with its client to limit the scope of its work.  Few, if any, consultants would be willing to provide services to government entities if those services exposed them to "a potentially limitless pool of plaintiffs."  *Certified Question*, 479 Mich. at 521.

The public-policy factor weighs heavily against imposing a duty on a consultant when the consultant was hired only to provide advice that its client was free to accept, modify, or reject.  In those circumstances, a consultant has no ability to force its clients to follow its advice, so the social benefit of imposing a duty on consultants is quite limited.  At the same time, if liability attaches here, consultants will become reluctant to accept advisory engagements, because they face the potential for massive liability with limited ability to manage that risk (and for generally a low fee).  That would impose a significant social cost, because it would make it more difficult for public agencies to obtain outside advice.

In Bellwether I, the Court rejected these concerns, expressing the view that imposing a duty here would require only that professionals adhere to the relevant professional standard of care.  *In re Flint Water Cases*, 579 F. Supp. 3d at 982.  That view conflates *what* duty a professional owes with to *whom* that duty is owed.  VNA does not dispute that it owed the City a duty of professional care, and that the City could have brought a claim against VNA.  If VNA committed malpractice in performing its $40,000 contract with the City, it can be liable to the City.  But

expanding its duty to each resident and visitor of the City would result in disproportionate liability for which VNA did not contract.

The Court also expressed the view that imposing a duty on VNA in this case supposedly would be consistent with the law in some other States—namely, California, Idaho, and Wisconsin. *In re Flint Water Cases*, 579 F. Supp. 3d at 982-983.  But none of the cases cited by the Court involved a consultant's liability to a plaintiff for advice given to a third-party client; the cases simply restate a general duty to avoid foreseeable harms, a principle Michigan has expressly rejected.  *See Lee*, 2021 WL 5237197, at *2 (recognizing that Michigan law "no longer" recognizes that general duty).  Further, when the highest courts in those States considered whether to extend a professional's duty of care to third parties in situations analogous to that here, each chose *not* to extend the professional's duty to all third parties out of a concern for disproportionate liability.[1]

In sum, "[b]ecause any relationship between [Plaintiffs] and [VNA] was highly tenuous, the harm was, in all likelihood, not foreseeable, the burden on

---

[1]   *See Bily v. Arthur Young & Co.*, 834 P.2d 745, 767 (Cal. 1992) (restricting an auditor's tort liability to the auditor's client and identified beneficiaries known to the auditor); *Idaho Bank & Tr. Co. v. First Bancorp of Idaho*, 772 P.2d 720, 722 (Idaho 1989) (same); *Krier v. Vilione*, 766 N.W.2d 517, 531 (Wis. 2009) (same); *see also L. Offs. of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 36 (1989) (same); *cf. H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896, 899 (N.Y. 1928) (water company could be liable only to the city, not local businesses, for failing to provide the city's fire hydrants with adequate water pressure).

[VNA] would be onerous and unworkable, and the imposition of a duty . . . would expand traditional tort concepts beyond manageable bounds[,] . . . a legal duty should not be imposed." *Certified Question*, 479 Mich. at 525.

### B.    VNA Did Not Owe Plaintiffs The Specific Duty They Assert

Even if VNA owed some duty of professional care to Plaintiffs, it did not owe them the specific duty they assert.  Their expert, Dr. Larry Russell, expresses the opinion that VNA should have taken affirmative steps "to protect the citizens of Flint," such as insisting that the City immediately return to using Detroit water or add a corrosion-control chemical, in order "to curb" "the ongoing issues."  Ex. 4, Russell Report 45; *see id*. at 4-6, 14-15, 17-18, 43.  But VNA did not owe Plaintiffs a duty to protect them from harm under Michigan law.

### 1.    In General, No Person Is Obligated To Protect Another From Harm

The fundamental problem with the asserted duty to protect is that a person generally has no duty to protect another from a risk created by a third party.  VNA did not create any risk of harm.  As Plaintiffs allege, State and City officials made both the decision to switch Flint's water source to the Flint River and the decision how to treat the water nearly a year before VNA was involved in Flint.  *See* Am. Master Compl. ¶¶ 78-141, ECF No. 186, PageID.5273-5290.  VNA also did not increase any risk of harm.  The City did not hire VNA to operate the water system; it hired VNA only to provide advice.  *See* Ex. 2, Contract 9.  VNA told the City that

it should use a corrosion control chemical, Ex. 5, VWNAOS087372 at 10 (VNA Final Report), and that the City could switch back to Detroit water, Ex. 3, Gnagy Dep. 152:10-24. If the City had not engaged VNA at all, Plaintiffs' risk of harm would have been the same. The most they can claim is that VNA could have lowered their risk of further harm—that is, that VNA failed to protect them from being further injured by the City and State.

In Bellwether I, the Court recognized that Michigan follows the "general rule" that "there is no duty that obligates one person to aid or protect another." *In re Flint Water Cases*, 579 F. Supp. 3d at 979 (quoting *Bailey v. Schaaf*, 494 Mich. 595, 604 (2013)). The Court nevertheless held that VNA owed the Bellwether I Plaintiffs a duty to insist on corrosion controls or returning to Detroit water because "once VNA undertook to evaluate the quality of Flint's water, it had a duty to avoid foreseeable physical harms arising out of that undertaking." *Id.* at 981. But VNA's "duty to avoid foreseeable physical harms" was a duty to avoid *creating* a new risk of harm or *increasing* a pre-existing risk of harm. *See Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660 (2012) ("Every person engaged in the performance of an undertaking has a duty to . . . not unreasonably *endanger* the person or property of others." (emphasis added)).[2] Here, VNA did not create a new harm or increase the risk of a

---

[2]   *See also Loweke*, 489 Mich. at 167 (distinguishing between "creat[ing] a new hazard," which can give rise to a duty, and failing to act, which generally does not); *Dyer v. Trachtman*, 470 Mich. 45, 49-50 (2004) (physician performing an

pre-existing harm.  Under Michigan law, its work for the City therefore did not give rise to a duty to lower a pre-existing risk of harm.

The Sixth Circuit has expressly recognized Michigan's distinction between creating a risk of harm (which can give rise to a duty) and failing to lower an existing risk of harm (which cannot).  In *Bennett v. MIS Corp.*, 607 F.3d 1076 (6th Cir. 2010), some defendants were consultants that the FAA had hired to advise on removing mold from Detroit Metropolitan Wayne County Airport.  *Id.* at 1097.  The Sixth Circuit held that the consultants were not liable to air traffic controllers for negligently advising the FAA, because the negligent advice did not create a new hazard but "merely left alone an existing . . . hazard."  *Id.*

The Michigan Court of Appeals made the same point in *Harper v. Ashgrove Apartments*, No. 345299, 2019 WL 4670180 (Mich. App. Sept. 24, 2019).  There, the defendant removed a concrete walkway that was the only path to the plaintiff's door.  *Id.* at *1.  The court held that the plaintiff could bring a negligence claim against the defendant for "creating an unsafe passage," because that claim was based

---

independent medical examination of a litigant owes a duty "not to cause physical harm"); *Abraham v. Farmers Ins. Exch.*, No. 335353, 2018 WL 3998728, at *6 (Mich. App. Aug. 21, 2018) (defendant undertaking to remove mold owes the homeowner "a duty to perform its work so as not to create any new harm or worsen any already-existing risk"); Restatement (2d) of Torts § 298 (when a person acts, the person must avoid "creating an unreasonable risk of harm to another").

14

on a "hazard that [the defendant] actively created," as opposed to "the failure to protect [the plaintiff] from harm created by someone or something else." *Id.* at *8.

Thus, the fact that VNA performed work for the City did not give rise to a duty to protect Bellwether III Plaintiffs from harm created by the City and the State.

### 2. None Of The Exceptions Giving Rise To A Duty To Protect Applies Here

There are a limited number of exceptions to the general rule against imposing a duty to protect, but none applies here.

First, a defendant can owe a duty to protect a plaintiff if there is a "special relationship" between the parties. *Bailey*, 494 Mich. at 604. A special relationship arises when "one person entrusts himself to the control and protection of another, with a consequent loss of control to protect himself." *Id.* Here, there is no evidence that any Plaintiff was aware of VNA, much less entrusted himself or herself to VNA's control or protection. *See Murdock*, 454 Mich. at 55.

Second, a defendant owes a duty to protect a plaintiff from harms that the defendant created. *See* Restatement (2d) of Torts §§ 321-22. As explained, VNA did not create any harms here, so this exception does not apply.

Third, a defendant can owe a duty to protect a plaintiff from a third party when the defendant has power or control over the third party. *See* Restatement (2d) of Torts § 315(a). As the Court has recognized, VNA "did not control . . . the City of

15

Flint," *In re Flint Water Cases*, 579 F. Supp. 3d at 980—VNA could only give the City advice, which the City was free to accept or reject (and mostly did reject).

Finally, even if VNA owed the *City* a duty to recommend actions to improve the condition of the water, that duty did not extend to Plaintiffs.  VNA owed the City a contractual obligation to act as a reasonable engineer in the circumstances.  *See Oja v. Kin*, 229 Mich. App. 184, 190 n.2 (1998) ("It is only with a [professional's] consent . . . that the [professional-client] relationship comes into being." (internal quotation marks omitted)).  Plaintiffs were not VNA's clients, and Michigan law is clear that the scope of a duty depends on the scope of the underlying relationship. *See Hill*, 492 Mich. at 662; *Dyer*, 470 Mich. at 53-54.  Because VNA and Plaintiffs were strangers, VNA owed Plaintiffs only a limited duty not to create a new hazard, not a duty to protect them from a harm that the City and State created.

Thus, the proposed duties are invalid as a matter of law.

## II.    The Bellwether III Plaintiffs Cannot Prove Causation

The Court also should grant VNA summary judgment because Plaintiffs cannot prove that VNA caused their claimed injuries from exposure to lead in Flint water.  Plaintiffs have the burden to produce evidence of causation at summary judgment.  *See Skinner v. Square D Co.*, 445 Mich. 153, 164 (1994).  Plaintiffs cannot meet that burden here because they lack any evidence of *how much* lead they were exposed to from Flint water after February 2015.  As a result, they cannot show

that, during the time relevant to VNA, they suffered exposure to an amount of lead that was capable of harming them.  *See Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.,* 333 Mich. App. 234, 251 (2020).

### A.   Plaintiffs Must Provide Evidence Of Their Post-VNA Levels Of Lead Exposure

The Court recognized in Bellwether I that to prove causation under Michigan law, "toxic tort plaintiffs [must] present evidence of 'the level of the toxin . . . to which they were exposed.'"  *In re Flint Water Cases*, 579 F. Supp. 3d at 987 (quoting *Powell-Murphy*, 333 Mich. App. at 251) (brackets omitted).  That is because "'a substance may cause different harmful effects in different doses,'" and therefore a plaintiff can show causation "only by a showing 'of *enough* exposure to cause the plaintiff's specific illness.'"  *In re Flint Water Cases*, No. 17-cv-10164, 2021 WL 5631706, at *4 (E.D. Mich. Dec. 1, 2021) (quoting *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 1043, 1044 (2017) (Markman, C.J., concurring) (emphasis added)); *see Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 677 (6th Cir. 2011).

Further, because VNA did not begin its engagement with the City of Flint until February 10, 2015—"close to a year after the beginning of the Flint Water Crisis"—the "causal inquiry" is "restrict[ed] . . . to the effects of VNA's conduct in 2015."  *In re Flint Water Cases*, 579 F. Supp. 3d at 985.  Plaintiffs thus need evidence that the "level of [lead] to which they were exposed" "*after* VNA arrived in Flint" in 2015 was enough to have caused or contributed to their claimed injuries.

17

*Id.* at 987 (emphasis added).  They cannot rely on "mere speculation" that VNA caused them injury to survive summary judgment.  *Skinner*, 445 Mich. at 164.

Plaintiffs cannot meet their burden by claiming that any exposure to lead is harmful.  The Sixth Circuit has repeatedly refused to allow toxic tort plaintiffs to hold a defendant liable based on "minimal exposure," because that is incompatible with plaintiffs' burden to prove causation.  *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001) (applying Michigan law) ("A defendant does not become liable based on a bare demonstration of 'minimal exposure.'"); *see Lindstrom v. A-C Prod. Liab. Tr.*, 424 F.3d 488, 493 (6th Cir. 2005) (rejecting plaintiff's "every exposure" theory because it would impose "liability on the manufacturer of any [asbestos] product with which a worker had the briefest of encounters on a single occasion").[3]  Plaintiffs likewise cannot simply claim that "all exposures contribute[d] to a cumulative dose."  *Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 677 (7th Cir. 2017).  Instead, Plaintiffs must show that the exposure levels for which they seek to hold a defendant liable were high enough to have been capable of harming them.[4]

---

[3]  *Accord Stallings v. Georgia-Pac. Corp.*, 675 F. App'x 548, 551 (6th Cir. 2017); *Moeller v Garlock Sealing Techs., LLC*, 660 F.3d 950, 955 (6th Cir. 2011); *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009).

[4]  According to this Court's *Daubert* orders, "experts may testify that there is no known toxicity threshold for a poisonous substance when the evidence supports that view."  *In re Flint Water Cases*, No. 16-cv-10444, 2023 WL 6939234, at *7 (E.D.

**B.      Plaintiffs Lack Evidence Of Post-VNA Levels Of Exposure**

Plaintiffs each lack evidence of the amount of lead to which they were exposed during the post-February 10, 2015, time relevant to VNA, and none can show exposure to a harmful lead level during that time.  The record contains no direct evidence such as blood tests from 2015 showing elevated blood lead levels at that time— ███████████████████████████████████████████████

███████████████████████████████████████████████████████████.[5]

---

Mich. Oct. 20, 2023).  But the Court has been clear that that testimony is not "evidence that there is no such threshold," *In re Flint Water Cases*, 2021 WL 5631706, at *6, nor does it permit plaintiffs to avoid proving the elements of causation, *see id.* at *4.  In fact, in Bellwether I, this Court ruled that Dr. Bithoney "may not testify that *any* amount of lead is harmful."  Order on VNA Mot. to Exclude Bithoney 21, No. 17-cv-10164 ECF No. 487, PageID.36884.

[5] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

Indeed, Plaintiffs' specific-causation experts, Dr. William Bithoney and Dr. Jennifer Sample, acknowledged that they had not formed any opinions about the levels of Plaintiffs' post-VNA lead exposure. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[6]  VNA submitted Dr. Bithoney's and Dr. Sample's expert reports as exhibits to its Motion To Seal, ECF No. 2912, PageID.95967, filed concurrently with VNA's *Daubert* motions to exclude certain opinions of those experts.

████████████████████████████████████████████████

███████████████████████████████████████

██████████████████████████, Plaintiffs do not have evidence that they were

exposed to harmful levels of lead in Flint water during the post-VNA timeframe.

The Michigan Court of Appeals has held that toxic tort claims may not proceed

without evidence showing the plaintiffs' levels of exposure.  *See Powell-Murphy*,

333 Mich. App. at 255 (plaintiffs' evidence did not "prove a genuine issue of

material fact regarding causation" because it did not "prov[e] the level of exposure

. . . suffered by plaintiffs"); *Trice v. Oakland Dev. Ltd. P'ship*, No. 278392, 2008

WL 7488023, at *12 (Mich. Ct. App. Dec. 16, 2008) ("[W]ithout evidence that [the

plaintiff] had been exposed to any chemicals at a level that would be harmful, [the

plaintiff] [can]not establish specific causation.").  Because that evidence is lacking

here, the claims against VNA cannot survive summary judgment.

Even though the Bellwether I Plaintiffs lacked either elevated blood lead test

results from 2015 or any other direct evidence of harmful levels of lead exposure

from February to October 2015, this Court held that they could satisfy their burden

by relying on evidence that they each drank lead-containing water at relatives' and

friends' homes and/or at school during that time.  *See In re Flint Water Cases*, 579

F. Supp. 3d at 988-89.  Respectfully, evidence that a Plaintiff drank water outside

his or her home is not sufficient to meet that Plaintiff's burden under Michigan law of proving that he or she was exposed to *a harmful level* of lead.[7]

## III.   The Court Should Grant VNA Summary Judgment On Non-Party Duty

If the Court does not grant VNA summary judgment, it should grant VNA partial summary judgment on the duty element of its non-party defense—specifically, that each non-party owed Plaintiffs a cognizable legal duty.

VNA seeks to allocate fault to federal, state, and local government entities and officials; to the City of Flint's engineer of record, Rowe Professional Services (Rowe); and to Lockwood, Andrews & Newnam (LAN).   *See* Am. Notice of Nonparties at Fault, No. 17-cv-10164 ECF No. 1076, PageID.72631.  For a jury to allocate fault to those non-parties, each non-party must have owed the plaintiff a legal duty, *Romain v. Frankenmuth Mut. Ins.*, 483 Mich. 18, 22 (2009), and the non-

---

[7]

party's breach of that duty must have been a proximate cause of the plaintiff's injury, *see* MCL § 600.6304(8).

In Bellwether I, the Court recognized that, at a minimum, each government non-party (including Rowe) owed Bellwether I Plaintiffs a common-law duty "to take reasonable care in their undertakings to avoid foreseeable physical harm." Tr. of Feb. 24, 2022, Hrg. 31:11-14, No. 17-cv-10164 ECF No. 710, PageID.45738. Unlike with VNA, each non-party had a direct relationship with Bellwether I Plaintiffs—that of a government agency or official and a citizen under the agency's or official's protection. Further, the City and State caused the Flint water crisis, so they owed Flint residents a common-law duty to protect Plaintiffs from harms caused by the crisis and to mitigate its effects. *See* Restatement (2d) Torts §§ 321-22. The Court also recognized that the non-parties may be subject to "elevated" duties from other sources, such as the Constitution, statutes, or the common law. Tr. of Feb. 24, 2022, Hrg. 29:5, 30:14, PageID.45736-45737. For example, the Court has recognized that all state and local officials owe their citizens a constitutional duty not to violate the citizens' bodily integrity and held that Individual Plaintiffs had adequately stated a constitutional claim against 13 of the non-parties. *In re Flint Water Litig.*, 384 F. Supp. 3d 802, 841-42, 858-61 (E.D. Mich. 2019).[8]

---

[8]  Those non-parties are former Governor Richard Snyder, Andy Dillon, Liane Shekter-Smith, Adam Rosenthal, Stephen Busch, Patrick Cook, Michael Prysby,

For purposes of this motion, the Court need not determine the precise scope of each government non-party's duties.  The Court need only reaffirm its previous holding that each non-party owed Plaintiffs a cognizable legal duty.

Additionally, if the Court denies VNA summary judgment on the duty issue, the Court should rule that, by the same token, LAN owed a duty to Plaintiffs.

## CONCLUSION

The Court should grant summary judgment to VNA.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: *_/s/ James M. Campbell___*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: *_/s/ Michael A. Olsen_____*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  April 15, 2024

---

Bradley Wurfel, Darnell Earley, Gerald Ambrose, Michael Glasgow, Daugherty Johnson, and Howard Croft.

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2024, I electronically filed this document

with the Clerk of the Court using the ECF System, which will send notification to

the ECF counsel of record.


By:  */s/ James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com