# EXHIBIT 3

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                    SOUTHERN DIVISION
 3   _____
 4                                   No. 5:16-cv-10444
     IN RE:  FLINT WATER CASES       Hon. Judith E. Levy
 5                                   Mag. Mona K. Majzoub
     _____
 6
 7
 8
                       HIGHLY CONFIDENTIAL
 9       VIDEOTAPED DEPOSITION OF MARVIN GNAGY
10                        VOLUME I
11            Thursday, December 12, 2019
                     at 9:05 a.m.
12
13
14   Taken at:  Weitz & Luxenberg PC
                3011 West Grand Boulevard, Suite 2100
15              Detroit, Michigan  48202
16
17
18
19
20
21   REPORTED BY:  CAROL A. KIRK, RMR/CSR-9139
22            GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
23              deps@golkow.com
24
```

```
 1                  STATE OF MICHIGAN
      IN THE CIRCUIT COURT FOR THE COUNTY OF GENESEE
 2   _____
 3   IN RE:  FLINT WATER LITIGATION    Case No. 17-108646-NO
                                       Hon. Richard B. Yuille
 4   _____
 5   JENNIFER MASON, CARL ROGERS,
     II, TERESA SPRINGER, JEFFREY
 6   DUSHANE, DEBORAH CULVER,
     DR. TRISTIN HASSEL, ADAM DILL
 7   AND DAVID YEOMAN, on behalf of
     themselves and a class of all
 8   others similarly situated,
 9       Plaintiffs,                   Case No. 16-106150-NM
                                       Hon. Richard B. Yuille
10       vs.
11   LOCKWOOD, ANDREWS & NEWNAM, PC,
     a Michigan corporation, and
12   LOCKWOOD, ANDREWS & NEWMAN,
     INC., a Texas corporation, and
13   LEO A. DALY COMPANY, a Nebraska
     corporation, ROWE PROFESSIONAL
14   SERVICES COMPANY f/k/a ROWE
     ENGINEERING, INC., a Michigan
15   corporation, VEOLIA NORTH
     AMERICA, LLC, a Delaware
16   limited liability company,
     VEOLIA NORTH AMERICAN, INC., a
17   Delaware corporation, VEOLIA
     WATER NORTH AMERICA OPERATING
18   SERVICES, LLC, a Delaware
     limited liability company
19   and VEOLIA ENVIRONMENT S.A.,
     a transnational corporation,
20
         Defendants.
21   _____
22
23
24
```

Highly Confidential - Marvin Ghagy

```
 1                A P P E A R A N C E S
 2                       - - -
 3   On behalf of the Class Plaintiffs:
          STEPHEN E. MORRISSEY, ESQUIRE
 4        SUSMAN GODFREY L.L.P
          1201 Third Avenue, Suite 3800
 5        Seattle, Washington  98101
          206-373-7380
 6        smorrissey@susmangodfrey.com
 7   On behalf of Individual Plaintiffs:
          ALASTAIR J.M. FINDEIS, ESQUIRE
 8        NAPOLI SHKOLNIK PLLC
          400 Broadhollow Road, Suite 305
 9        Melville, New York  11747
          631-224-1133
10        afindeis@napolilaw.com
11   On behalf of Individual Plaintiffs:
          DONALD H. DAWSON, JR., ESQUIRE
12        FIEGER LAW
          19390 West Ten Mile Road
13        Southfield, Michigan  48075-2463
          248-355-5555
14        d.dawson@fiegerlaw.com
15   On behalf of the Mason State Court Plaintiffs:
          MARK L. MCALPINE, ESQUIRE
16        MCALPINE PC
          3201 University Drive, Suite 200
17        Auburn Hills, Michigan  48326
          248-373-3700
18        mlmcalpine@mcalpinepc.com
19   On behalf of the People of the State of Michigan:
          ZACHARY C. LARSEN
20        ASSISTANT ATTORNEY GENERAL
          DANA NESSEL, ATTORNEY GENERAL
21        525 West Ottawa Street, 6th Floor
          Lansing, Michigan  48909
22        517-335-7664
          larsenz@michigan.gov
23
24
```

```
 1              A P P E A R A N C E S (CONT'D)
 2                        - - -
 3   On behalf of Defendants Veolia Water North America
     Operating Services, LLC, Veolia North America, LLC, and
 4   Veolia North America, Inc.:
             BRYAN D. MCELVAINE, ESQUIRE
 5           KRISTIN M. DUPRE, ESQUIRE
             CAMPBELL CONROY & O'NEIL, P.C.
 6           1205 Westlakes Drive, Suite 330
             Berwyn, Pennsylvania  19312
 7           610-964-6381
             bmcelvaine@campbelltriallawyers.com
 8           kdupre@campbelltriallawyers.com
 9   On behalf of Defendant City of Flint:
             FREDERICK A. BERG, ESQUIRE
10           BUTZEL LONG
             150 West Jefferson Avenue, Suite 100
11           Detroit, Michigan  48226
             313-225-7000
12           berg@butzel.com
13   On behalf of Defendants Leo A. Daly Company and
     Lockwood, Andrews & Newnam, Inc.:
14           PHILIP A. ERICKSON, ESQUIRE
             PLUNKETT COONEY, P.C.
15           325 East Grand River
             City Center, Suite 250
16           East Lansing, Michigan  48823
             517-333-6598
17           perickson@plunketcooney.com
18   On behalf of Defendant Adam Rosenthal (via
     teleconference):
19           JAMES A. FAJEN, ESQUIRE
             FAJEN & MILLER, PLLC
20           3646 West Liberty Road
             Ann Arbor, Michigan  48103
21           734-995-0181
             fajenlaw@fajenmiller.com
22
23
24
```

Highly Confidential - Marvin Gnagy

```
 1              A P P E A R A N C E S (CONT'D)
 2                         - - -
 3   On behalf of McLaren Regional Medical Center (via
     teleconference):
 4        SUSAN E. SMITH, ESQUIRE
          BEVERIDGE & DIAMOND, P.C.
 5        456 Montgomery Street, Suite 1800
          San Francisco, California  94104
 6        1-415-262-4000
          ssmith@bdlaw.com
 7
     On behalf of Defendants Bradley Wurfel and Daniel Wyant
 8   (via teleconference):
          CHRISTOPHER B. CLARE, ESQUIRE
 9        CLARK HILL PLC
          1001 Pennsylvania Avenue NW, Suite 1300 South
10        Washington, DC  20004
          202-572-8671
11        cclare@clarkhill.com
12   On behalf of Defendants Patrick Cook and Michael Prysby
     (via teleconference):
13        ALLISON M. COLLINS, ESQUIRE
          FOSTER SWIFT COLLINS & SMITH PC
14        313 South Washington Square
          Lansing, Michigan  48933
15        517-371-8124
          acollins@fosterswift.com
16
17
18   ALSO PRESENT:
19        Marc Myers, Videographer
          Francis X. Ferrara, Veolia
20
21                         - - -
22
23
24
```

 1   not want to consider, and that was looking at

 2   ammonia feed to produce chloramination.

 3        Q.   If you had concluded that treating

 4   these problems in the Flint River would cost a

 5   lot more than just switching back to Detroit,

 6   are you saying you wouldn't have needed to tell

 7   the city that?

 8        MR. MCELVAINE:  Objection.

 9        You can answer.

10        A.   We gave the city what we perceived

11   would be chemical treatment and solids handling

12   costs for treating the Flint River as well as

13   the KWA or whatever that reservoir water was

14   going to be, at least the data that we could

15   find on what that water quality might be.  It

16   did show that the KWA water would be cheaper to

17   treat; however, it also showed that the Flint

18   River water could be treated to provide adequate

19   drinking water to the citizens of Flint.

20        Q.   You understood it would cost

21   millions of dollars to implement the changes you

22   recommended, right?

23        A.   I'm aware there would be some

24   money that would have to be spent, yes.  I'm

```
 1   not -- I don't know how much.  We didn't
 2   evaluate that.
 3           Q.    And you didn't evaluate the
 4   relative costs of switching to Detroit versus
 5   staying in Flint and implementing your changes,
 6   did you?
 7           A.    No, we did not.
 8           Q.    You did not implement -- you
 9   didn't -- sorry.
10                 You did not evaluate the relative
11   effectiveness of staying with Detroit versus
12   implementing some or all of the changes you
13   recommended, did you?
14                 MR. MCELVAINE:  Objection.
15                 You can answer.
16           A.    No, we didn't evaluate that.
17           Q.    You knew from the get-go that at
18   least some people from --
19           A.    Excuse me.
20           Q.    You knew that some people from the
21   city didn't want to address going back to
22   Detroit, right?
23                 MR. MCELVAINE:  Hold on a second.
24                 Okay.  You can answer.
```

```
 1          A.    The people that we had
 2   communications with indicated that that was
 3   their choice, yes.
 4          Q.    And who was that?
 5          A.    That would have been -- well, in
 6   the kickoff meeting, Howard Croft specifically
 7   told us that.
 8          Q.    Anyone else?
 9          A.    Jerry Ambrose told us that.
10          Q.    And they told you it would be too
11   expensive to go back to Detroit?
12          A.    I don't know.  We were told that
13   it would -- it was costing $12 million a year
14   more than using their own treatment plant, I
15   believe were the figures.  I don't know for
16   sure.
17          Q.    Did you believe you had any
18   obligation to advise the city if,
19   notwithstanding the cost concerns that these
20   individuals had expressed, you thought the best
21   technical solution was to go back to Detroit?
22                MR. MCELVAINE:  Objection.
23                You can answer.
24          A.    Again, I can't even say it's the
```

1   best technical solution.  It is one alternative.

2   It was taken off the table by the city.  We

3   didn't evaluate it any further.  We looked at

4   what it would take to treat the Flint River

5   water to meet the THM conditions and to mitigate

6   red water occurrences.

7           Q.    But your client is the city,

8   right?  It's not these individuals?

9           A.    That's correct.

10          Q.    So if you concluded that going

11  back to Detroit was the best technical solution,

12  you would have needed to tell the city that,

13  wouldn't you?

14          A.    We told --

15                MR. MCELVAINE:  Objection.

16                You can answer.

17          A.    We told the officials for the city

18  that that was a possibility.

19          Q.    So you did tell the officials it

20  was a possibility to go back to Detroit?

21          A.    I told them it was one

22  alternative.  I stated that the first day on

23  site.  I also told Mr. Ambrose, before the

24  public meeting, that that was an alternative.

```
 1   remember at least a statement that that was

 2   being done, yes.

 3          Q.    Okay.  So you recall that Warren

 4   Green may have alluded to it in his

 5   conversations with you?

 6          A.    Yes.

 7          Q.    Is Raftelis Financial a company

 8   that you're familiar with?

 9          A.    I am not.

10          Q.    Yesterday in your testimony you

11   indicated that you learned since you left Flint

12   that the city was aware of lead results in early

13   2015 that it did not share with you and Veolia,

14   correct?

15          A.    That's correct.

16          Q.    And in your testimony yesterday,

17   you referenced a test result from the Walters'

18   residence.

19                Do you remember that?

20          A.    I do.

21          Q.    Were there other test results that

22   you believe the city was aware of in early 2015

23   that it did not share with you and Veolia?

24          A.    I can't recall with the
```

  1   information that I have looked at recently

  2   whether there were other sites within the city

  3   that U.S. EPA was investigating or not.  I do

  4   know from other presentations about this event,

  5   that there were lots of lead and copper samples

  6   taken throughout the city that were elevated.

  7        Q.   And it's your belief that the city

  8   was withholding that information?

  9        A.   I think they deliberately withheld

 10   it from us, yes.

 11        Q.   When you saw the test results from

 12   U of M-Flint, you specifically asked the city

 13   for their lead and copper test results, correct?

 14        A.   I testified to that effect, that

 15   we asked for lead and copper test results at

 16   some point, yes.

 17        Q.   Let's turn to Number 12.  Exhibit

 18   Number 12 is Mr. Gnagy's notes from February 10,

 19   2015.  And the page ending 100, there's a couple

 20   slash marks, and then it says "Plant tour."

 21             Do you see that?

 22        A.   I do see that, yes.

 23        Q.   So is it true that the -- on

 24   February 10, there was initially a meeting, and