UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* FLINT WATER CASES

Civil Action No. 5:16-cv-10444-JEL (consolidated)

Hon. Judith E. Levy

**NOTICE OF THE SPECIAL MASTER
REGARDING STATUS OF CLAIMS PROCESS UNDER
THE AMENDED SETTLEMENT AGREEMENT**

This Notice documents the report the undersigned provided at the status conference held in this matter on February 28, 2024. This written report includes some updated data regarding the review and evaluation of claims submitted to the partial settlement (the "Amended Settlement Agreement" or "ASA") in the Flint Water Cases. *See* ECF No. 1394-2.

**<u>Background</u>**

The Amended Settlement Agreement was approved by the federal district court, and all federal court orders necessary for full approval of the settlement had been entered as of March 3, 2022. *See Amended Final Judgment and Order of Dismissal with Prejudice Implementing Partial Settlement Pursuant to Fed. R. Civ. P. 54(b) and 58(a) [2077],* ECF No. 2128 (Mar. 3, 2022). Approximately 30 individuals filed three separate appeals related to the settlement. Those appeals were

1

resolved on March 17, 2023, when the United States Court of Appeals for the Sixth Circuit affirmed the district court's decisions. *In re Flint Water Cases*, 63 F.3d 486 (6th Cir. 2023). On March 20, 2023, the state court entered its judgment addressing the state court cases that were resolved by the settlement. *See In re Flint Water Litigation*, Final Judgment and Order of Dismissal with Prejudice Implementing Partial Settlement Pursuant to MCR 2.420, 2.504(A)(2) and 2.602(A), Case No. 17-108646 (Genesee County, MI) (Mar. 20. 2023).[1]

On February 27, 2023, the State Court Administrative Office appointed a probate judge to address the probate-related tasks required by the settlement agreement, including to review and finalize claims of minors and to determine the appropriate distribution of funds for the benefit of certain minors. This appointment makes it possible to obtain the necessary Court appointments and determinations that will allow claims of minors, legally incapacitated individuals, and deceased individuals to proceed.

---

[1] A more recent settlement reached with additional defendants is currently the subject of a motion for final approval pending before the District Court. *See Plaintiff's Motion for Final Approval of Class Settlement with LAN Defendants,* ECF No. 2827 (Jan. 29, 2024). This proposed settlement with the LAN Defendants "would contribute to the funds set up to make monetary awards available to people exposed to Flint water during the specified exposure period, as well as property owners and business owners." *Opinion and Order Granting Class Plaintiffs' Motion for Preliminary Approval of Class Settlement with the LAN Defendants [2673]*, ECF No. 2684, PageID.87208 (Nov. 15, 2023).

**Overview of Settlement Terms and Claims Review Process Under the ASA**

The Amended Settlement Agreement establishes a comprehensive program that "provides compensation to tens of thousands of people who were impacted by exposure to lead, legionella, and other contaminants from the City of Flint's municipal water supply system during the events now known as the Flint Water Crisis." *In re Flint Water Cases*, 571 F.Supp.3d 746, 755 (E.D. Mich. 2021). The settlement provides 30 different compensation categories covering a wide range of claims of injury and damage, including claims for minors and adults and claims for personal injuries, property damage, and business loss. *See Flint Water Cases (FWC) Qualified Settlement Fund Categories, Monetary Awards, and Required Proofs Grid (11/11/20)*, "Compensation Schedule"), ECF No. 1319-2. The Compensation Schedule includes 21 different categories for children and 9 categories for adults. The Compensation Schedule provides for different compensation amounts based on different factors including the age of the claimant at first exposure to the Flint water, whether the claimant has evidence of lead in their blood or bones, whether the claimant documents certain medical conditions including cognitive conditions, and whether the claimant has a residential property or business that received Flint water. *Id*.

The ASA identifies specific tasks for the claims administrator including reviewing registration and claims submissions in a timely and accurate fashion;

setting up a secure database with claimant information; coordinating and communicating with the parties; determining eligibility for compensation; distributing notifications to claimants; and establishing evidentiary review procedures to prevent fraud. *See In re Flint Water Cases*, 571 F.Supp.3d at 761 (citing ASA at PageID.54160).

The claims review team is charged with the responsibility for determining whether a claimant has documented exposure to Flint water during the relevant time period, whether a claimant has documented any qualified injury, whether a claimant can show ownership or lease (or obligation for water bills) for any eligible Flint property, and whether the claimant can show a business loss as defined in the settlement. Each claim is reviewed using a three-step process. First, a claim goes through initial review. At this stage the review team can determine the basic characteristics of the claim and can make initial determinations of whether the claimant is a minor or adult, whether the claimant has documented exposure to Flint water, and whether the claimant has submitted information to support a claim in a specific compensation category. The reviewer will then assign a determination to the claim and identify any deficiencies in the claim. The claim next goes to a quality assurance process and from there, a portion of claims will be put through an audit review. These procedures have been important: They promote accuracy and consistency in evaluating claims under the complex terms of the settlement; they

4

identify common issues and situations where the claims analysis process could be improved, and they prevent fraud.

**Claim Statistics as of February 28, 2024**

The settlement administrator received approximately 46,000 claim packages. Some claimants submitted more than one claim package – and that means that within that 46,000 number, there are duplicates and the number of actual claimants is less than the total number of claim packages received. The claims administrator has identified approximately 16,600 claim packages submitted for minors – meaning individuals who were children at the time of the water crisis. (Of those minors, approximately 10,600 are still minors today.) The claims administrator has identified approximately 28,700 claim packages submitted by individuals who were adults at the time of the water crisis. There are also several hundred claim packages that cannot yet be classified as claims for minors or adults because the dates of birth are unknown based on the claim information submitted.

In addition, these claim packages can include more than one actual claim (because claimants can make up to three types of claims and might assert more than one compensation category within a claim type). The individuals who submitted claim packages have asserted over 90,000 claims. The adult claimants have

submitted over 50,000 claims for injury[2] and over 13,000 claims for residential property damage. There are approximately 1,100 claims for "business property damage" and 800 claims for "business economic loss." Approximately 21,000 claims have been submitted on behalf of minors at the time of the water crisis in the 16,600 claim packages referenced above. Many claimants did not allege any particular compensation category on their claim forms. [3]

The majority of the claimants are represented by counsel: approximately 82 percent of the minors and 62 percent of the adults are represented by individual lawyers.

**History of Claims Process**

The claims submission process began in January of 2022. The final deadline for the submission of claims was June 30, 2022. The claims administrator had reported that the process of incorporating the voluminous data and millions of pages of documents that were submitted along with claim forms was labor intensive and time consuming. The data was submitted in one system but was to be transferred to a separate claims review platform to enable an efficient review process. In late 2022,

---

[2] The number of injury claims includes multiple injury categories claimed by individual adults.

[3] As noted above, some claimants submitted more than one claim package, so the counts stated herein include duplication where a claimant may have submitted more than one claim packet for the same claim.

based on a review of an initial set of claims that had completed the review process, the undersigned determined that there had been a problem with the process of incorporating all of the data into the review system. After analyzing the records and consulting with data experts, the undersigned determined that it was necessary to re-compile the data and to conduct a new data incorporation process to assure correct and accurate claim determinations.

In January 2023, I submitted a report and recommendation to the Court seeking approval to add further resources to the claims process to address the data import issues and to enhance the review process. *Report and Recommendation of the Special Master Regarding Addition of Claims Administrator Services for the Partial Settlement*, ECF No. 2341 (Jan. 31, 2023). The Court approved the additional resources (ECF No. 2344) and during January and February of 2023, the claims administration team re-compiled the data, tested the data transfer process, set up the claims review program, and imported the data so that the data was correctly matched with the claims.

In March of 2023, the claims review process restarted, and the first notices to claimants were distributed the next month – in April 2023. In March of 2023, I submitted a report that projected that the claims review would likely be completed during 2023. *Notice of the Special Master Regarding Status of Claims Process Under the Amended Settlement Agreement*, ECF No. 2413. That projection was

7

based on the initial statistics for the first few weeks of review. *Id*. at PageID.77181. The process has taken longer than expected as further detailed below.

**Obtaining Additional Data from Third-Party Sources
to Assist Claimants in the Completion of their Claims**

During the course of the implementation of the settlement and the claims review process, the undersigned, in conjunction with the Co-Lead Class Counsel and Co-Liaison Counsel and settling defendants, determined that it would be helpful to claimants to obtain additional data from a variety of third-party sources.

Accordingly, with the permission of the parties and the Court, I embarked on an effort to assist claimants in obtaining documentation to demonstrate exposure to Flint water – a fundamental requirement under the settlement to ensure that the settlement funds are awarded to compensate those who were impacted by the Flint water crisis. For example, we have obtained voluminous water billing records from the City of Flint. These records are used to qualify claimants for the settlement, even if they are not able to locate the documentation themselves. We have also obtained school enrollment records from the State of Michigan. These records also help claimants to qualify for compensation is if they attended school in Flint during the exposure period.

We have also assisted claimants in obtaining their blood lead test data. The Court has authorized the Michigan Department of Health and Human Services to provide blood lead level testing data for purposes of the settlement, which means

8

that individual claimants do not have to locate blood test results. *See* Stipulated Order Regarding Access to and Use of Blood Lead Level Test Data for Limited Purposes (ECF No. 1958). This test data is used both to approve compensation categories based on the test results and to allow the claims administrator to confirm exposure to Flint water where the data shows the claimant's address at the time of the test. We also assisted claimants by obtaining data on lead or galvanized steel service lines in the City of Flint to support claimants who can qualify for compensation based on their presence in residences with such service lines.

We have further assisted claimants seeking to qualify for property damage claims by instituting a process to verify property ownership – again, to assist claimants who could not locate the necessary documentation to support a claim for property damage.

We have also obtained birth certificates for claimants, which are used both for identification purposes and to determine the appropriate legal representative of a minor claimant.

These records are voluminous and all of them had to be incorporated into the claims review platform. Specifically, we have obtained the following records:

- 2.6 million water customer billing records;
- 77,000 school enrollment records;
- 40,000 blood lead testing records;

9

- 28,000 service line records;

- 8,300 requests for birth certificate records; and

- 2,800 claims have sent to the process for verification of property ownership.

This data collection process has taken time and required significant efforts but has resulted in substantial benefits for claimants. Use of these records has helped to ease the burden on many claimants and will ultimately help ensure that the settlement funds are directed to those who can properly qualify under the terms of the ASA and help prevent fraudulent claims from being paid.

Considerable work has been done to manage the volume of data and documents and to conduct data verification and reconciliation. All of the above noted data has been incorporated into the claims processing platform to enable a more efficient and accurate review process.

**Current Status of Claims Review Process**

After a claim has been reviewed and has completed the steps outlined above, the claim is eligible for a notice. The notice tells the claimant the outcome of the review – whether it is approved, whether the claim has deficiencies that prevent approval at that time, whether it is approved for a category that is different than the one claimed, and whether it is missing information. Each claimant is permitted to ask for reconsideration of the claim if the claimant disagrees with the notice and is permitted to provide new information to cure the deficiencies. The claims

administrator will then review the claim again and provide a reconsideration notice to tell the claimant the outcome of the review on reconsideration. If the claimant disagrees with the reconsideration notice, the claimant can appeal to the Special Master.

As of March 28, 2024, the claims administrator had distributed 31,478 notices. Some of these notices have identified deficiencies, and many of those claimants have submitted reconsideration requests. As of March 28, 2024, the claims administrator had received 11,359 reconsideration requests.

If the claimant does not agree with the reconsideration result, the claim may be submitted for appeal. As of March 28, 2024, the Special Master had received 149 appeal requests. In addition to formal appeals, the Special Master also addresses claims that are "escalated" for review (consistent with the terms of the ASA). *See* ASA ¶¶ 3.14; 3.32; Order Regarding Settlement-Related Duties of the Special Master, Jan. 20, 2022 (ECF No. 2096).

Claims that have not yet received a notice are in varying stages of the review process. The claims administrator reports that as of March 28, 2024, there were about 1,700 claims that are still pending for the initial review. The claims administrator projects that the initial review process will be completed through all the steps in the process around the end of June 2024. The entire process will not be complete at that time because of the pending reconsideration requests and appeals.

**Finalizing Claims and Assuring Appropriate Distribution**

There are other issues that must be addressed in the settlement process.

**Identifying the Representative of Minor Claimants.** Every minor claimant must have a qualified legal representative to bring the claim. The Court issued an order in January 2021 identifying the types of individuals who may serve as the next friend or legal representative. *See Order Taking Judicial Notice of the Appointment of Next Friends and Ordering Parallel Relief with the Genesee County Circuit Court [1365]*, ECF No. 1405 (Jan. 26, 2021) (the "Next Friends Order"). The claims administrator is responsible for determining whether the documentation is proper and that there is in fact an eligible next friend. If that documentation is not sufficient, then the person who submitted the claim will receive a notice to that effect. As of the end of February 2024, there were 3,559 claims that require additional information in order to confirm an eligible legal representative.

**Duplicate Claims.** The Claims Administrator has identified approximately 3,200 duplicate claims. In many cases, the claims are not consistent. They may seek different compensation categories and may contain different supporting information. The settlement requires that the claims administrator identify the highest compensation category for which a claimant qualifies. When duplicate claims are identified, the claims administrator must determine that category using the

documentation and data from all duplicate claims. This process is somewhat complex, and it takes a bit more time than the typical individual claim review.

Duplicate claims can present a particular issue when the claim involves a minor and there are different legal representatives identified in the duplicate claims. The claims administrator has identified between 300 and 400 minors whose claims have been submitted by different people claiming to be the proper legal representative. The Court issued an order in January 2021 that provides that such disputes are to be submitted to the Master Guardian ad Litem for analysis and resolution. ECF No. 1405, PageID.54490. The Master Guardian is currently in the process of addressing such claims.

**Determining Compensation Amounts**. The settlement is structured so that the dollar value of each claim cannot be determined until all claims are finalized. The amount allocated for each claim category is to be divided among all claimants who qualify for that category – so that each such claimant will receive the same payment amount (subject to individual liens and expenses).

**Distribution of Funds.** The Special Master's office along with the Master Guardian ad Litem are currently evaluating the process and mechanism for distributing funds once all the claims are finalized.

**Distribution to Minors.** Under Michigan law and the provisions of the settlement, compensation awards for minors cannot be paid directly to the minor or

to the legal representative. Michigan law allows up to $5,000 to be paid to the next friend (legal representative) (*see* MCR 2.420(B)(4), MCL 700.5102),[4] but any amounts above that must be managed either by a court appointed conservator or through another mechanism.

In this settlement, the payments to minors will be made either to a trust or through a structured settlement. The Court has approved two trusts: a settlement preservation trust and a special needs trust. *See Order Granting Motion to Approve the Settlement Preservation Minors Pooled Trust Agreement, Joinder Agreement, Investor Policy Statement, and Trustee Fee Schedule, and For Appointment of Huntington Bank, N.A. as Trustee [2169, 2170]*, ECF No. 2171 (June 3, 2022) ("Settlement Preservation Minors Pooled Trust Order"); *Order Granting Motion to Approve the Flint Water Cases Special Needs Pooled Trust Agreement, Joinder Agreement, Investment Policy Statement, Trust Management Fee Schedule, And Trustee Fee Schedule, and for Appointment of Elder Law of Michigan, Inc. as Trustee [2659]*, ECF No. 90188 (Dec. 8, 2023) ("Special Needs Pooled Trust Order").

The representatives of minor claimants have already submitted payment election forms. If a legal representative for a minor claimant elects a trust option,

---

[4] The law was recently amended to increase this amount – but the ASA limits the distribution to $5,000 consistent with the law in place at the time of settlement.

14

the representative will sign a trust joinder agreement and that claimant will participate in a pooled trust.[5] If a legal representative elects a structured settlement, the legal representative will define the terms of the structure and will sign an additional agreement to secure the structure. In a structured settlement, a lump sum is paid to an annuity company and that annuity company is then obligated to make payments over time based on an agreed schedule. The funds will be invested by the annuity company before the time that payments are made and the earnings (if properly established as set forth in the agreement) are tax free to claimant. Under this option, the minor child will be able to receive funds directly after reaching the age of majority.

**Payment Options for Adults**. The Special Master's office and the Master Guardian ad Litem are working on providing different payment mechanisms for claimants – including digital payment options, direct deposit, and the more traditional check payment. The digital payment options will be beneficial to claimants who do not have a bank account and will help maximize funds to the claimants. The disbursement agent will be responsible for confirming the claimant's information and location so that payments can be sent to the correct account or address.

---

[5] The trusts have been established. *See* Settlement Preservation Minors Pooled Trust Order; Special Needs Pooled Trust Order.

**Timing of Fees.**  The lead lawyers have been paid certain common benefit fees in accordance with the Court's order but have not been paid any fees in connection with the actual claims or pursuant to fee agreements.  The settlement process is set up so that individual claimants do not have to worry about paying any fee directly to lawyers.  The fees that are authorized by the Court will be paid separately to the lawyers for claims processed and they will not be paid before funds are disbursed to claimants.

**Investment.**  Finally, it should be noted that the settlement funds have been invested since they were first deposited.  As of the date of this Report, the fund had earned approximately $46 million.

## Conclusion

The review process is careful and considered to ensure that the settlement is responsibly implemented. That means that every claim must be given careful and accurate consideration so that those who are eligible are not denied compensation because of error or technical deficiencies.  Sometimes it takes a bit longer to implement the necessary steps to achieve the correct results and ensure that those who are eligible receive compensation and that those who are not eligible do not receive funds from the settlement.

Date: April 16, 2024                    /s/ Deborah E. Greenspan

Deborah E. Greenspan
Special Master
BLANK ROME LLP
Michigan Bar # P33632
1825 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
Deborah.Greenspan@blankrome.com

17

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to attorneys of record.

Dated:  April 16, 2024

/s/ *Deborah E. Greenspan*
Deborah E. Greenspan
Special Master
BLANK ROME LLP
Michigan Bar # P33632
1825 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
Deborah.Greenspan@blankrome.com