# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| IN RE FLINT WATER CASES. | Case No. 5:16-cv-10444-JEL-EAS |
|---|---|
| | Hon. Judith E. Levy, District Judge<br>Hon. Elizabeth A. Stafford, Magistrate Judge |

_____

## VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION FOR PARTIAL STAY PENDING RECONSIDERATION

Pursuant to Local Rules 7.1(h)(2) and 72.2 of the United States District Court for the Eastern District of Michigan, and the Court's inherent power to reconsider its own prior ruling, Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively, VNA) respectfully request that this Court:  (i) stay its Order of April 22, 2024, to the extent that it requires VNA to produce an unredacted copy of a single document (VEO-LIA_0407523); and (ii) reconsider its ruling that the redacted text was not subject to the attorney-client privilege.[1]  VNA does not seek a stay the Court's ruling with

---

[1] As Local Rule 7.1 requires, on April 29, 2024, VNA sent counsel for the Plaintiffs an email identifying each of the points raised in this motion.  Plaintiffs responded that they do not concur in the motion.

respect to the other 39 documents the Court ordered VNA to produce, which are currently being processed by VNA's vendor for production to Plaintiffs.

## BACKGROUND

In July 2016, shortly after the Attorney General filed a civil suit against VNA, William Fahey (VNA's Senior Vice President—Technology) met with VNA in-house counsel Dan Mahoney to discuss whether and how VNA could respond to the Attorney General's allegations.  Following that meeting, Fahey emailed Marvin Gnagy (a VNA engineer who worked on the Flint contract) to request information to inform that decision.  The two then exchanged several emails.  VNA produced the email chain to Plaintiffs, but it redacted a handful of exchanges reflecting Mahoney's requests for information and Gnagy's responses to those requests.  VNA respectfully asserts that these exchanges were properly redacted under the attorney-client privilege.

This Court concluded otherwise, perhaps because the email exchanges did not copy any of VNA's lawyers.  VNA requests that the Court reconsider that ruling because, as a matter of law, communications between non-lawyer employees of a corporation are privileged even when a lawyer is not copied on them when, as here, they reflect counsel's request for information necessary for providing legal advice

2

or information responsive to such requests.[2]  Alternatively, if the Court based its determination on the reference to a potential PR statement, that, too, would be an error of law, as the communication clearly was eliciting information for the purposes of obtaining legal advice.

## ARGUMENT

## I.   THE COURT SHOULD STAY ITS ORDER TO THE EXTENT IT RE-QUIRES VNA TO PRODUCE THE REDACTED TEXT AT ISSUE

The Local Rules provide that a Magistrate Judge's order regarding a pretrial matter is binding unless it is stayed by the Magistrate Judge or the District Court. Motions to stay such orders are subject to familiar equitable principles, including the likelihood that the order would be reversed or amended; whether the moving party would suffer irreparable harm absent a stay; the prejudice (if any) to non-moving parties; and the public interest.  *See Lange v. Crosbie*, Civ. No. 22-11495, 2023 WL 5532789, at *1 (E.D. Mich. Aug. 28, 2023) (citing *Grutter v. Bollinger*, 247 F.3d 631, 632 (6th Cir. 2001)).

Here, VNA seeks only a brief, narrow stay to permit the Court to reconsider a single privilege ruling with the benefit of briefing.  As set out below, VNA's

---

[2] The parties did not previously brief the issues regarding this email exchange because Plaintiffs' motion to compel was predicated on the theory that VNA waived privilege by copying third-party PR firms on these emails.  Here, the email exchange is purely internal, and no third parties were copied.  There is thus no basis to suggest a waiver of privilege here.

3

privilege arguments are substantial.  Absent a stay, VNA will suffer irreparable injury, as the attorney-client privilege cannot be restored once privileged documents are disclosed to opposing parties.  *See Luxshare, Ltd. v. ZF Auto. US, Inc.*, 555 F. Supp. 3d 510, 517 (E.D. Mich. 2021) ("in the case of disclosure of privileged information, there is a harm done to the privilege itself, which cannot be cured").  By contrast, granting a brief stay will not prejudice any party or compromise any public interest.  Accordingly, this Court should stay its production order as to VEOLIA_0407523 pending reconsideration of its privileged status.

## II.   THE COURT SHOULD RECONSIDER ITS RULING AND FIND THAT THE REDACTED TEXT IS SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE

For questions of attorney-client privilege, federal courts exercising diversity jurisdiction apply "the law of the forum state, including the choice-of-law rules." *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009).  Under Michigan choice-of-law rules, the court "will apply Michigan law unless a 'rational reason' to do otherwise exists." *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997).  Thus, here, the Michigan law of attorney-client privilege applies, but because Michigan courts "look[] to federal precedent for guidance in determining the scope of the attorney-client privilege when a particular issue has been addressed by a federal court," federal decisions also are persuasive.  *Est. of Nash by Nash v. City of Grand Haven*, 909 N.W. 2d 862, 867 (Mich. Ct. App. 2017).

4

"In general, the attorney-client privilege attaches to communications made to the attorney by the party, or client, as his legal adviser for the purpose of obtaining his legal advice and opinion, relative to some legal right or obligation." *Detroit News, Inc. v. Ind. Citizens Redistricting Comm'n*, 976 N.W. 2d 612, 618 (Mich. 2021) (quotation marks omitted).  It also "attaches to direct communication between a client and his attorney as well as communications made through their respective agents." *Leibel v. Gen. Motors Corp.*, 646 N.W. 2d 179, 183 (quotation marks omitted).

VNA respectfully submits that the redactions it made to the document protect information that falls squarely within the protections afforded by the attorney-client privilege.  As noted above, the document is an internal VNA email chain.  The chain begins with Fahey reaching out to Gnagy.  Fahey's email states that he was working "on a PR statement with Legal and [VNA's] marketing team."

Fahey then informs Gnagy that he had spoken with "Dan"—specifically, VNA in-house counsel Dan Mahoney—and he and Dan "wanted to know" some information in Gnagy's possession.  Fahey asked Gnagy two questions pertaining to this information, and the two exchanged several emails concerning this information.  And when the two exchanged information for the purpose of obtaining legal advice, they included an "ATTORNEY/CLIENT PRIVILEGE" designation, all while

5

omitting that designation when their emails did not contain information elicited for the purpose of obtaining legal advice.

The redacted communications are subject to the attorney-client privilege. VNA redacted only those portions of the email chain concerning information sought "for the purpose of obtaining . . . legal advice and opinion[s]." *Detroit News, Inc.*, 976 N.W. 2d at 618. Here, the request for information clearly was intended to ultimately inform and obtain legal advice, so it is privileged.[3]

As noted, VNA believes that the Court may have concluded that these exchanges were not privileged because they did not copy VNA counsel. But "[c]ourts overwhelmingly recognize that a communication is not *per se* unprivileged simply because it is solely between non-attorneys." *Corkrean v. Drake Univ.*, No. 4:21-cv-00336-RGE-SHL, 2022 U.S. Dist. LEXIS 10156, at *7 (S.D. Iowa Jan. 3, 2022); *see also Crabtree v. Experian*, No. 1:16-cv-10706, 2017 WL 4740662, at *2 (N.D. Ill. Oct. 20, 2017) ("Indeed, subsequent case law developed from *Upjohn* confirms that communications between non-lawyer employees often warrant protection from disclosure."); *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993)

---

[3] Even if the Court were to determine that the request for legal advice was not explicit, federal law confirms that such requests "need not be express" for the attorney-client privilege to attach. *Carman v. Signature Healthcare, LLC*, No. 419CV00087JHMHBB, 2020 WL 807537, at *2 (W.D. Ky. Feb. 18, 2020).

("[a] document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds").

That holds especially true where, as here, "the client is a corporation," so "documents subject to the privilege may be transmitted between non-attorneys to relay information requested by attorneys." *Santrade, Ltd.*, 150 F.R.D at 545. As one federal court explained, "[i]n preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts." *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *3 (D. Kan. Feb. 1, 2006).

That is the situation here. Fahey sought information for purposes of relaying it to VNA's in-house counsel in order to obtain legal advice. And the communication was made in confidence; indeed, both Fahey and Gnagy took steps to ensure that the communications about the sought-after information were designated as attorney-client communications. Thus, concluding that no privilege applied because the exchanges did not copy counsel would constitute a legal error.

If, instead, the Court grounded its ruling on the idea that the privilege does not apply to communications regarding PR statements. That, too, would be an error of law. "[T]he ability of lawyers to perform some of their most fundamental client functions . . . would be undermined seriously if lawyers were not able to engage in

frank discussions of facts and strategies with the lawyers' public relations consult-ants." *In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury Witness*, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003).[4] The email here shows why. VNA's in-house counsel spoke with a senior employee to gather facts needed to provide better legal advice concerning a potential public statement regarding pending litigation. That employee then reached out to an engi-neer who was best suited to provide that information at the attorney's behest. Both employees made clear that the purpose of transmitting this information was to better understand the legal considerations at play with the issuance of the statement. Thus, the redacted information was for the purpose of obtaining legal advice and is privi-leged.

## CONCLUSION

The Court should stay its order to produce the document at issue, reconsider its decision that the redacted exchanges are not privileged, and hold that the redacted exchanges are protected by the attorney-client privilege.

DATED: April 29, 2024

---

[4] *See also Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558, 571 (6th Cir. 2015) ("Advising a client on how to respond to media inquiries has important legal implications . . . [g]iven the potential for legal liability, [the attorney's] input on how to draft a media response was essential.").

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*                                   */s/ Michael A. Olsen*
James M. Campbell                            Michael A. Olsen
Alaina N. Devine                                71 South Wacker Drive
20 City Square, Suite 300                    Chicago, IL 60606
Boston, MA 02129                              (312) 7012-7120
(617) 241-3000                                   molsen@mayerbrown.com
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and
Veolia Water North America Operating Services, LLC.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2024, I electronically filed the foregoing Motion with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,
*/s/ James M. Campbell*
James M. Campbell
