# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases                      Hon. Judith E. Levy

5:16-cv-10444/17-cv-10164               United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

# BELLWETHER III PLAINTIFFS' RESPONSE TO THE VEOLIA DEFENDANTS' MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. LARRY RUSSELL

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION & BACKGROUND ..................................................................1

LEGAL STANDARD ...............................................................................................2

ARGUMENT .............................................................................................................4

    I.   Dr. Russell's Opinions on Pipe Condition Are Admissible as One Aspect of His Testimony Relating to Plaintiffs' Exposure to Lead ........................................4

    II.   Dr. Russell Will Not Opine on Veolia's Corporate State of Mind .............9

    III.   Dr. Russell Will Offer No "Last Clear Chance" Legal Opinion ...............12

CONCLUSION ........................................................................................................14

CERTIFICATE OF SERVICE ................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Am. Honda Motor Co. v. Allen*, 600 F.3d 813 (7th Cir. 2010) ................................. 7

*Berry v. City of Detroit*, 25 F.3d 1342 (6th Cir. 1994) .............................................. 3

*Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171 (6th Cir. 2009) ................................ 3

*Clark v. W & M Kraft, Inc.*, 476 F.App'x 612 (6th Cir. 2012) ................................. 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ......... 2, 3, 4, 8

*First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319 (6th Cir. 2001) ................... 3

*Jahn v. Equine Servs., PSC*, 233 F.3d 382 (6th Cir. 2000) ....................................... 4

*Johns v. CR Bard (In re Davol, Inc.)*, 546 F. Supp. 3d 666 (S.D. Ohio 2021) ....... 12

*Journey-Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444 (6th Cir. 2016) ......... 9

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) .................................. 3, 4

*Lay v. DePuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.)*, 2014 U.S. Dist. LEXIS 97798 (N.D. Tex. July 18, 2014) ...................................................................................................................... 12

*Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244 (6th Cir. 2001) ............................. 4

*United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) ............................................. 3

*United States v. Kalymon*, 541 F.3d 624 (6th Cir. 2008) ......................................... 4

**Rules**

Federal Rule of Evidence 702 ................................................................................ 2, 4

Federal Rule of Evidence 403 ................................................................................... 9

**INTRODUCTION & BACKGROUND**

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") seek to exclude certain portions of Dr. Larry Russell's expert testimony.[1] Veolia's Motion (ECF No. 2907) is narrow in scope. Veolia does not dispute Dr. Russell's qualifications to testify as an expert witness, previously summarized by this Court. *See* Case No. 5:16-cv-10444, ECF No. 2606 (Class Daubert Order) at PageID.85723-24, 85727. Nor does Veolia seek to exclude his opinions that it "breached its professional standard of care in 2015 and that the alleged breach contributed to lead and corrosion problems." Veolia Br. at 1. Veolia seeks only to prevent Dr. Russell from: (1) opining "that pipes and fixtures in Flint homes are damaged and need to be removed and replaced," *id*; (2) opining on Veolia's corporate "state of mind," which it objects "is not an appropriate subject for expert testimony," *id*. at 2; and (3) opining that Veolia "was the 'last clear chance' for Flint residents to avoid further exposure" to lead, which it objects to on the ground that this "is a legal conclusion rather than an expert opinion," and that "Dr. Russell did not review sufficient facts and data" to

---

[1] Case No. 16-cv-10444, ECF No. 2907 (Veolia's Motion to Exclude Certain Opinions and Testimony of Dr. Larry Russell).

1

reach that opinion. *Id*. However, for the reasons set forth herein, Veolia's motion should be denied in its entirety.

## LEGAL STANDARD

The legal framework for reviewing objections to expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), was summarized in this Court's order denying Veolia's motion to exclude Dr. Russell's testimony in connection with the issues class trial. ECF No. 2606 (Class Daubert Order) at PageID.85725-26. In brief, Rule 702 authorizes the admission of expert testimony based on the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Under *Daubert*, federal district courts have "a 'gatekeeper' role, charged with the responsibility of excluding unreliable expert evidence." *Clark v. W & M Kraft,*

2

*Inc.*, 476 F.App'x 612, 616 (6th Cir. 2012) (citing *Daubert*, 509 U.S. at 596-97). The guidelines for assessing expert testimony strike a balance between "a liberal admissibility standard for relevant evidence," and the policy goal of protecting the jury from "misleading 'junk science.'" *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 176-77 (6th Cir. 2009).

Particular considerations apply in a case such as this one, focusing more on engineering and other technical knowledge, rather than laboratory science. The Sixth Circuit has observed the Supreme Court's admonishment that "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case," and it has further noted that *Daubert* is "only of limited help in assessing technical or experiential expertise." *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 334–35 (6th Cir. 2001) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) and *Berry v. City of Detroit*, 25 F.3d 1342, 1349 (6th Cir. 1994)). *See also United States v. Jones*, 107 F.3d 1147, 1158 (6th Cir. 1997) (recognizing that the *Daubert* factors are of limited utility in the context of non-scientific testimony, for example, in realms derived substantially from practical experience).

The *Daubert* framework is thus flexible, reconciling the "liberal thrust" of Rule 702, which "relax[es] the traditional barriers to opinion testimony," with the responsibility to "screen[] such evidence" in order to keep truly unreliable or invalid

3

opinions from the jury. *Daubert*, 509 U.S. at 588-89 (internal quotation marks and citation omitted); *see also Jahn v. Equine Servs., PSC*, 233 F.3d 382, 388 (6th Cir. 2000) ("Experts are permitted a wide latitude in their opinions, including those not based on firsthand knowledge, so long as 'the expert's opinion [has] a reliable basis in the knowledge and experience of the discipline.'" (quoting *Daubert*, 509 U.S. at 592)).

Under this framework, district courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *Kumho Tire*, 526 U.S. at 152, and the Sixth Circuit will review district court rulings only for an abuse of discretion. *E.g.*, *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 248 (6th Cir. 2001); *United States v. Kalymon*, 541 F.3d 624, 636 (6th Cir. 2008). This standard recognizes that *Daubert*'s "flexible" test considers many indicia of reliability, some of which may have more or less relevance than others, depending on the particular science and expert before the court. *See Kumho Tire*, 526 U.S. at 150.

## ARGUMENT

### I. Dr. Russell's Opinions on Pipe Condition Are Admissible as One Aspect of His Testimony Relating to Plaintiffs' Exposure to Lead

Veolia's first objection is that this Court should exclude Dr. Russell from expressing any opinion "that pipes and fixtures in Flint homes are damaged and need

4

to be removed and replaced." Veolia Br. at 7; *id*. (objecting to Dr. Russell's opinions "about the need to remove and replace plumbing in Flint homes."). The basis of this objection is one paragraph in Dr. Russell's Bellwether III report, dated January 3, 2023, reiterating an opinion contained in his earlier reports relating to the class action, which concluded that likely all Flint "homes having water service laterals made from lead" will "require removal and updating with fixtures that meet the current less than 0.25 percent lead requirement." Veolia's Ex. 2 (Report of Dr. Larry Russell, dated Jan. 3, 2023) at 5.[2]

However, there was no need for Veolia to file a motion on this point, for in his subsequent Bellwether III deposition, conducted on Nov. 20, 2023, when asked what relevance his examination of the pipes in the two homes of Class Members that had earlier been examined by Veolia's experts had for the Bellwether III trial, Dr. Russell did not state that he planned to opine at trial that the pipes should be replaced. Rather, he made clear that he believed the condition of the pipes he had examined was relevant on the issue of *water quality*: the issue of the level at which the Bellwether III plaintiffs were exposed to lead:

> Q: Okay. So my question, Dr. Russell, is, understanding that the pipes that you have looked at and analyzed are not from the Bellwether III homes, in your view what is the relevance of your opinions with respect to those pipes to the Bellwether III plaintiffs?

---

[2] Case No. 5:16-cv-10444, ECF No. 2907-3.

5

> A: The relevance is that the conditions of those pipes are presumably similar to the conditions in the homes of the plaintiffs for this matter. And the thinking there is that they've been exposed to the same water—there's only one water source in Flint—and have seen similar issues with respect to the water quality that has been served in Flint.
>
> In addition, I have reviewed the site reports prepared by the Veolia folks for each of the homes that are the plaintiffs in this matter.

Plaintiffs' Ex. A (Excerpts of the Deposition of Dr. Larry Russell, dated Nov. 20, 2023) at 21-22.

In light of Dr. Russell's clarification of the matter in his deposition, obviously he will refrain from expressing his prior opinion that piping in many Flint homes should be replaced, as Veolia correctly points out that the seven Bellwether III plaintiffs, as "minors without ownership of any relevant property," may not seek such relief. Veolia Br. at 7.

Although Dr. Russell's testing of pipes in the two homes selected for inspection by Veolia's experts provides no basis for him to opine, in the Bellwether III trial, that any pipes in the Plaintiffs' homes, or any other homes in Flint, should be replaced, it is of course permissible for him to refer to his test results in testimony responsive to the testimony of Veolia's experts, who opined that any shortcomings in Veolia's consulting work for Flint did not cause harm to the Plaintiffs. With Veolia having opened the door concerning the condition of the pipes in these two homes, it can hardly object to Plaintiffs asking Dr. Russell to testify concerning *his*

6

*own* examination of the condition of the pipes in these homes, and the conclusions that can thereby be drawn concerning other similar homes, including Plaintiffs' homes (based on his own review of the information on these homes compiled by Veolia).[3]

Veolia asserts that Dr. Russell's testing of the pipes is irrelevant to analyzing whether and to what extent Plaintiffs were exposed to lead in their homes. Veolia Br. at 9. Here it reiterates its earlier arguments, already rejected by this Court, that Dr. Russell's testing was unreliable. *Id*. at 10-12. But this Court has already scrutinized and rejected these arguments, concluding that they go only to weight, not

---

[3] Because it was permissible for Dr. Russell to elaborate on his prior analysis of the impact of the Flint Water Crisis on the plumbing systems in Flint homes, in general, by discussing his personal examination of the condition of the plumbing in the two homes selected by Veolia's experts for examination, there is nothing to Veolia's objection that his testimony "does not fit an issue that will actually be decided by the trier of fact." Veolia Br. at 9. As long as the information collected by Dr. Russell through an examination of the pipes in these two homes adds to the total universe of relevant information concerning these two homes, he is permitted to rely on it, even though the information obviously does not directly prove an ultimate matter to be determined by the jury. And because Dr. Russell was merely responding to the analysis of Veolia's experts, who examined *only* two homes, there is no force to Veolia's objection that this was too small a "sample size" to permit "broad conclusions." Veolia Br. at 12 (citing *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 818 (7th Cir. 2010) (per curiam) (finding unreliable an expert's conclusion that an entire fleet of motorcycles manufactured from 2001 to 2008 was defective based on a test involving "a single, used 2006 [motorcycle], ridden by a single test rider").

7

admissibility. Case No. 5:16-cv-10444 ECF No. 2606 (Class Daubert Order) at PageID.85727-37. Veolia offers no good reason to reconsider that past ruling.[4]

That Dr. Russell will not suggest in his testimony, in any way, that there is any need for replacement of the piping in Plaintiffs' homes or other Flint homes renders moot Veolia's final objection to evidence regarding his testing of the pipes in the two exemplar homes—that to urge pipe replacement would suggest "that the Bellwether III Plaintiffs continue to be threatened by exposure to lead in their home plumbing," which could create unfair prejudice, in violation of Federal Rule of Evidence 403. Veolia Br. at 12-13.

Veolia's fallback argument here is that, at minimum, in rebutting the testimony of Veolia's experts, based on his testing of the pipes in the two exemplar homes they analyzed, Dr. Russell should be precluded from showing the jury photographs of the pipes in question. Veolia's concern appears to be that the pipes look to be in poor condition, and it complains that this "is due at least in large part to their old age," and it points to photographs presented by its own expert which is

---

[4] Veolia criticizes Dr. Russell's opinion that the current lead levels remaining in Flint homes are currently excessive, an objection that it did not previously raise. Veolia Br. at 11 & n.3. However, this analysis only relates to whether piping in Flint homes should be replaced due to current problems. Dr. Russell's testimony in the Bellwether III trial will focus on whether Veolia's substandard consulting work for Flint extended the period during which Plaintiffs were exposed to elevated lead levels, during the Flint Water Crisis prior to Flint reconnecting to the Detroit water system. Thus, this criticism is irrelevant to the issues that will be determined in the Bellwether III trial.

8

says show that the poor condition of the pipes tested by Dr. Russell "is not necessarily attributable to corrosion from improperly treated water in 2015 …".

There is no prejudice, much less *unfair* prejudice, involved in having the experts on both sides, in discussing the condition of the pipes at issue, be able to show the jury photographs of the pipes. Photographs obviously would assist the jury in understanding the testimony on both sides. This situation is nothing like the situation that led the district court to exclude evidence in the principal Rule 403 case cited by Veolia.[5] At any rate, Veolia has not shown that the probative value of Dr. Russell's photographs, the accuracy of which Veolia does not contest, is "substantially outweighed" by any unfair prejudicial impact, and therefore the stringent standard for exclusion under Rule 403 has not been met.

## II. Dr. Russell Will Not Opine on Veolia's Corporate State of Mind

Although some passages in Dr. Russell's Bellwether III report are phrased such that one could conclude that Dr. Russell plans to opine on the intent of Veolia

---

[5] *Journey-Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444 (6th Cir. 2016) (cited in Veolia Br. at 14), was a trespass action involving an oil company that was sued after it transferred certain properties to the plaintiff company, but then continued drilling on them. Because the district court had held that the agreement transferring the properties was unambiguous as a matter of law, it barred the defendant from introducing evidence (to support its claim that the trespass wasn't willful) that it *thought* it still owned the properties, because that would have "invited the jury to usurp the district court's role as the interpreter of" the agreement. *Id*. at 459-60.

9

as a corporation, in deposition Dr. Russell made clear that he does not view that as his role as an expert, and instead all he is doing is analyzing, and in so doing supplying context concerning, the statements made by Veolia employees during their consulting work for Flint. Veolia Br. at 17 (citing Ex. 5 (Consol. Dep. of Dec. 28, 2022)).

The focus of this examination of internal communications, Dr. Russell indicated in his Bellwether III report, is that the Veolia employees were operating under an "economic conflict of interest" that was never disclosed in reports to the City and the public. Veolia's Ex. 2 (Report of Dr. Larry Russell, dated Jan. 3, 2023) at 6.[6] The basis for that conclusion, as he summarized in his report, included internal communications showing that Veolia viewed the consulting project, taken for a low fee, "as 'paid due diligence' for a desired larger project;" that "[n]umerous internal Veolia emails and memos" revealed its employees were "singularly focused on increasing its income from the City of Flint," and not on their ethical duties as engineers; that these internal communications show that Veolia's engineers "violated the standard of care and code of ethics for engineers by putting their profits before the health and safety of the citizens of Flint;" and that, burdened by a conflict

---

[6] Case No. 5:16-cv-10444, ECF No. 2907-3.

of interest, as revealed by their reports and testimony, the Veolia engineers "intentionally understated the health risk from lead to" Flint citizens. *Id*. at 4-5.

In a deposition following the submission of this report, Dr. Russell made clear that he was *not* purporting to ascertain a corporate "intent" in abstract. Rather, in opining on whether Veolia's engineers had a conflict of interest, and violated the applicable standard of care and code of ethics, he was basing his testimony on a "review of the information provided internally and externally by Veolia," Plaintiffs Ex. B (Deposition of Dr. Larry Russell, dated May 10, 2023) at 36:2-3, and on "numerous internal e-mails inside of [Veolia] discussing the fact that the only safe approach here was to return the water system to Detroit Water." *Id*. at 48:13-17; *see also id*. at 50:4-10 ("there is ample internal discussion at Veolia about exactly the issues we're talking about. And their internal discussions indicate that they have concerns about lead and that they are aware that the proper solution to this problem is to switch back to Detroit water."); *id*. at 87:13-21 ("And the problem here is one of what Veolia is saying internally versus what Veolia is saying externally. They had an obligation to alert the public that lead was a concern. Their e-mails are full of this discussion about lead and what the water quality issues are, and yet they're silent. Their reports are silent on the subject.").

In sum, Dr. Russell's deposition testimony supports that he does not purport to be a corporate mind reader and that, in testifying concerning the conflict of interest

11

under which Veolia employees were operating, he will restrict himself to testifying concerning the actions of individual employees and not attempt to discern an "intent" of the corporation as a whole. Although it is true that experts may not serve as corporate mind readers, it is equally true that experts may summarize for the jury relevant documents obtained from corporate files that bear on the possible intent of corporate employees, provided they supply their own expert insight regarding such matters and go beyond simply reading the materials to the jury. *See, e.g., Johns v. CR Bard (In re Davol, Inc.)*, 546 F. Supp. 3d 666, 678 (S.D. Ohio 2021) ("expert testimony that relies on expert knowledge and experience to contextualize, analyze, and interpret historical facts is admissible"); *Lay v. DePuy Orthopaedics, Inc. (In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.)*, 2014 U.S. Dist. LEXIS 97798, *25-*26 (N.D. Tex. July 18, 2014). Thus, there is no issue raised by Veolia's motion in this respect that this Court needs to resolve.

**III.   Dr. Russell Will Offer No "Last Clear Chance" Legal Opinion**

Finally, Veolia asks this Court to "exclude Dr. Russell's opinion that "Veolia's involvement provided the last clear chance for the citizens of Flint to be spared exposure to more high lead content drinking water.'" Veolia Br. at 18 (quoting Ex. 2, Report at 5). A bit of clarification on this matter disposes of the objection.

12

As Veolia notes, in deposition Dr. Russell made clear that "he was not asked to consider—and he did not consider—the role that government nonparties played in creating and perpetuating the crisis." Veolia Br. at 19. Accordingly, in his testimony Dr. Russell will not suggest, in any way, that Veolia was the only entity responsible for safeguarding the health and safety of Flint citizen, or that once it violated the applicable standard of care there was no other means by which citizens could be protected. The sole point of Dr. Russell's "last clear chance" comment, as he will clarify in testimony on the point, is that Veolia's engineers were the last engineers enlisted by Flint to supply an objective outside analysis of the situation.

Obviously, thereafter, various experts and officials, local, state, and federal, were involved in the Flint Water Crisis, but the point of Dr. Russell's analysis is that the consulting work taken on by Veolia turned out to be the final opportunity for careful self-examination by independent expert. Dr. Russell's use of the phrase "last clear chance" did not reflect any intent to offer a legal conclusion. Thus, there is no issue raised by Veolia's motion in this respect that this Court need resolve.

## CONCLUSION

For all the reasons stated herein, Veolia's motion should be denied.

Dated:       April 30, 2024                                  Respectfully submitted,

**LEVY KONIGSBERG LLP**                                      **NAPOLI SHKOLNIK PLLC**

*/s/Corey M. Stern*                                          */s/ Hunter J. Shkolnik*
Corey M. Stern                                               Hunter J. Shkolnik
Moshe Maimon                                                 Paul J. Napoli
Melanie Daly                                                 Patrick Lanciotti
605 Third Ave., 33rd Floor                                   360 Lexington Ave., 11th Floor
New York, New York 10158                                     New York, New York 10017
(212) 605-6298                                               (212) 397-1000
cstern@levylaw.com                                           hunter@nsprlaw.com

***ATTORNEYS FOR PLAINTIFFS***

14

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ MELANIE DALY
Melanie Daly