# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases  
5:16-cv-10444/17-cv-10164

Hon. Judith E. Levy  
United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

# BELLWETHER III PLAINTIFFS' RESPONSE TO VEOLIA'S MOTION TO EXCLUDE CERTAIN OPINIONS OF GARY M. CRAKES, PH.D.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ............................................................................................................. 4

    I.    THE COURT PREVIOUSLY REJECTED VEOLIA'S ARGUMENT AND SHOULD DO SO AGAIN ................................................................ 4

    II.   THERE *IS EVIDENCE* IN THE RECORD THAT SUPPORTS EACH POTENTIAL IMPAIRED AND UNIMPAIRED OUTCOMES .................... 5

        i. Potential Lost Earning Scenarios That Include Certain Impaired Outcomes ............................................................................................... 5

        ii. Potential Lost Earning Scenarios That Include Certain Unimpaired Outcomes ............................................................................................... 9

    III.   VEOLIA'S CHALLENGES ARE BETTER SUITED FOR CROSS-EXAMINATION, NOT EXCLUSION ............................................................ 9

CONCLUSION ........................................................................................................ 11

CERTIFICATE OF SERVICE ................................................................................ 12

## TABLE OF AUTHORITIES

**Cases**

*Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717 (6th Cir. 2012) ....................5, 8

*Downey v. Strain*, 510 F.3d 534 (5th Cir. 2007) .......................................................7

*In re Scrap Metal Antitrust Litig.*, 527 F.3d 517 (6th Cir. 2008) ...........................10

*Jahn v. Equine Servs.*, PSC, 233 F.3d 382 (6th Cir. 2000) .....................................10

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ......................................3

*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000) .........................5, 10

*Meinelt v P.F. Chang's China Bistro, Inc.*, 787 F. Supp.2d 643
   (S.D. Tex. 2011).....................................................................................................7

*Sherrod v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 U.S. Dist.
   (E.D. Mich. Feb. 11, 2022) ...................................................................................7

*United States v. L.E. Cooke Co.*, 991 F.2d 336 (6th Cir. 1993) .................................8

**Rules**

Rule 702 .......................................................................................................................3

# INTRODUCTION

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") seek to exclude certain portions of Plaintiffs' expert Dr. Gary Crakes' testimony (ECF. No 2908).[1] Their motion must be denied. Veolia's argument is substantially similar to what the Court previously rejected prior to the Bellwether I trial and is otherwise wholly without merit. Accordingly, the Court should deny Veolia's motion to exclude portions of Dr. Crakes opinions in its entirety.

# BACKGROUND

Dr. Crakes is an economist with forty years of experience. He has consulted on thousands of cases for plaintiffs and defendants. His qualifications as an expert economist are entirely undisputed. *See* ECF No. 681[2] (BWI Order Re Dr. Crakes) at PageID.43962. The purpose of Dr. Crakes' testimony in this case is to assist the jury in understanding and determining the extent of Plaintiffs' future lost earnings. To that end, Dr. Crakes conducted an appraisal of economic loss and earning capacity by assessing multiple ***potential*** lost earning scenarios for each Plaintiff. These scenarios are based on interpretations of the reports and testimony of forensic neuropsychologist Dr. Jourdan,[3] and psychologist Dr. Hoffman – both of whom

---

[1] Case No. 16-cv-10444
[2] Case No. 17-cv-10164
[3] In prior filings, Dr. Jourdan is referred to as Dr. Krishnan.

evaluated each child; determined[4] that each child suffers from specific cognitive and behavioral deficits; and offered opinions regarding how those deficits will impact their educational attainment and employability. Dr. Jourdan and Dr. Hoffman also offered opinions as to the likely educational attainment these children would have had if they had not suffered acquired cognitive injuries and behavioral deficits.

Based on these opinions, Dr. Crakes interpreted a number of pre-injury and post-injury alternative earning scenarios ("impaired" and "unimpaired").[5] For each earning scenario, he attached a numerical value of lifetime earning potential based on data from the U.S. Department of Health and Human Services and the U.S. Department of Labor. He also incorporated the value of fringe benefits and a 3.5% annual growth rate. He then subtracted the lifetime earnings figure in *each impaired scenario* from the lifetime earnings figure associated with *each unimpaired scenario,* resulting in a total lifetime lost earning figure. He included each of these figures in his report as **potential** lost earning scenarios for each Bellwether III child. He did not, however, provide an opinion as to the likelihood that Plaintiffs will encounter one loss earning scenario over another. Nor does he opine on which educational attainment scenario is more likely than another.

---

[4] Based on a battery of testing, extensive record review, and in person evaluations of the children and parents.
[5] Dr. Crakes consulted with Plaintiffs' counsel to confirm that the record evidence supported his interpretations.

2

This is the same methodology[6] Dr. Crakes employed with regard to the Bellwether I children, which this Court previously ruled was a routine damages assessment that "clearly meets the requirement for Rule 702 and *Daubert*." *See* ECF No. 681[7] (BWI Order Re Dr. Crakes) at PageID.43965. However, despite that prior ruling, Veolia again challenges Dr. Crakes' ability to include certain ***potential*** lost earning scenarios in his analysis.[8] This argument was previously rejected and should be again, in its entirety.

## LEGAL STANDARD

As the Supreme Court explained in *Daubert*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc,* 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). But this gatekeeping function is not intended to displace the jury or the adversarial system: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert* at 596.

---

[6] The only difference being that this time, Dr. Crakes took into consideration the evaluation and opinion of Dr. Hoffman, in addition to that of Dr. Jourdan.
[7] Case No. 17-cv-10164.
[8] Veolia also incorporates by reference the other arguments it raised in Bellwether I (challenges to Dr. Crakes' use of national data and a growth rate 3.5%), which the Court also previously rejected. Plaintiffs, therefore, incorporate their previous opposition.

3

# ARGUMENT

## I. THE COURT PREVIOUSLY REJECTED VEOLIA'S ARGUMENT AND SHOULD DO SO AGAIN

Veolia argues that there is insufficient evidentiary basis for Dr. Crakes to attach numerical values to any impaired or unimpaired earning outcomes that are not explicitly set forth in Dr. Jourdan's or Dr. Hoffman's reports.[9] But, the Court already rejected an identical version of this argument before the Bellwether I trial, explaining that it was "not problematic" for Dr. Crakes to assign values to potential impaired educational outcomes, even if those outcomes did not explicitly match the impaired educational outcomes set forth by Dr. Jourdan. ECF No. 681 (BWI Order Re Dr. Crakes) at PageID 43967. The Court ruled:"[I]t is true that Dr. Krishnan thinks that it is more likely than not that each Plaintiff will graduate high school, even though each Plaintiff also has a reduced likelihood of graduating from high school. The jury will hear this testimony, and it will be able to adjust damages awards appropriately." *Id.* at PageID.43967. This ruling was correct in Bellwether I, and it is equally correct in the context of Bellwether III.

---

[9] Veolia does not—and cannot— assert that Dr. Crakes' testimony should be excluded because he is not qualified, or because his testimony is irrelevant. Nor could they, as this Court has already held that these factors are beyond dispute. Case No. 17-cv-10164, ECF No. 681, (BWI Order Re Dr. Crakes) at PageID.43962.

4

## II. THERE *IS EVIDENCE* IN THE RECORD THAT SUPPORTS EACH POTENTIAL IMPAIRED AND UNIMPAIRED OUTCOMES

### i. Potential Lost Earning Scenarios That Include Certain Impaired Outcomes

Contrary to Veolia's argument, there *is evidence* in the record that supports each of the impaired outcomes which they seek to exclude.[10] *See McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) ("An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."); *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 726 (6th Cir. 2012) ("predictions about future earning potential are necessarily somewhat speculative"). Dr. Jourdan has consistently opined that: "although it may be difficult to assign highly specific probabilities or likelihoods to the potential of each of these children have to achieve major milestones in education, it does remain my opinion that the range of issues seen for these children, including a range of learning and neurodevelopmental concerns as well as some emotional concerns, all make it very likely that progress at each step of this path will be more difficult for these children than it would be for

---

[10] [redacted]

similarly situated children who had not experienced these kinds of injuries." Plaintiffs' Ex. A, (Dr. Jourdan's Rebuttal Report, Dated Jan. 15, 2024), at 6; *see also* Plaintiffs' Ex. B, (Excerpt of Dr. Jourdan's March 21, 2023, Deposition) at 391:9–395:1.

Additionally, Dr. Hoffman explains that for each of the seven Bellwether children: "As academic demands increase with entry into higher grades, [their] cognitive, attentional, and learning deficits will increasingly impact negatively upon [their] scholastic capability." *See* Veolia Ex. 9, (Dr. Hoffman Report-Y.A.) at 10; Veolia Ex. 12, (Dr. Hoffman Report-E.A.); Veolia Ex. 14, (Dr. Hoffman Report-G.B.) at 7; Veolia Ex. 16 (Dr. Hoffman Report-C.D.) at 12; Veolia Ex. 18 (Dr. Hoffman Report-R.E.) at 9; Veolia Ex. 20 (Dr. Hoffman Report-J.N.) at 10; Veolia Ex. 22 (Dr. Hoffman Report-J.S.) at 7.[11]

The above testimony establishes that each level of education will be more difficult for these children and that their cognitive deficits are likely to worsen and continue to impact their academic performance. This provides a sufficient basis from which Dr. Crakes can assume all of the potential educational outcomes he included in his appraisal analysis for these children, including all of the impaired scenarios

---

[11] Plaintiffs refer the numbered exhibits from Veolia's Motion to Exclude Dr. Crakes. To the extent additional exhibits that were not included in Veolia's motion are cited herein, Plaintiffs' will refer to those exhibits using letters.

which Veolia challenges.[12] *See Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007) (damages assessed "through intelligent guesswork"); *Meinelt v P.F. Chang's China Bistro, Inc.*, 787 F. Supp.2d 643, 656 (S.D. Tex. 2011) (permitting damages expert to testify despite speculative assumptions); *see also Sherrod v. VNA*, No. 5:17-cv-10164-JEL-KGA, 2022 U.S. Dist. LEXIS 25637, at *18-19 (E.D. Mich. Feb. 11, 2022).

[REDACTED]

---

[12] *See* FN. 10, *supra*.

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████. *See Andler*, F.3d 717 at 727 (internal citations omitted).

And the same is true for each of the remaining challenged impaired educational scenarios.[13] In light of Dr. Jourdan's opinion that it is very likely that each level of education will be harder for these children to obtain, it is not "unsupported speculation" or "unrealistic" to assume that a child about whom Dr. Jourdan opines may achieve a certain educational level, may not. *Id.* (internal citations omitted). Nor is it unreasonable to include that possibility alongside the possibility that they may. *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993) ("[W]here the opinion has a **reasonable factual basis**, it should not be excluded. Rather, it is up to opposing counsel to inquire into the expert's factual basis.").

---

[13] ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

8

### ii. Potential Lost Earning Scenarios That Include Certain Unimpaired Outcomes

Veolia also challenges Dr. Crakes' ability to include certain unimpaired scenarios, again arguing that there is insufficient evidence to support these specific outcomes. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

This argument is without merit for the same reasons set forth above: Veolia cannot show that Dr. Crakes' decision to include these unimpaired scenarios (amongst others) is based purely on speculation. Rather, contrary to Veolia's assertion, Dr. Jourdan did consider and opine as to unimpaired educational scenarios for each of these children. At her deposition, she explained that absent these injuries, these children would generally have been expected to succeed emotionally and occupationally. Plaintiffs' Ex. B (Dr. Jourdan's Deposition, Dated March 21, 2023), at 389:8–390:10.

### III. VEOLIA'S CHALLENGES ARE BETTER SUITED FOR CROSS-EXAMINATION, NOT EXCLUSION

Overall, as the Court previously recognized, Dr. Crakes is a damages expert who properly relied on the reports and opinions of Plaintiffs' other experts in determining which impaired and unimpaired outcomes to include in his potential lost

9

earning outcomes. This is unproblematic, especially because he will not offer any opinion about the likelihood Plaintiffs will achieve any of the potential impaired or unimpaired outcomes.

To the extent Veolia takes issue with the strength of the evidentiary support or Dr. Crakes' reasoning for including certain impaired or unimpaired outcomes, those issues "bear on the weight of the evidence rather than on its admissibility." *McLean,* 224 F.3d at 801 ("However, mere 'weaknesses in the factual basis of an expert witness' opinion … bear on the weight of the evidence rather than on its admissibility.") (citation omitted). Indeed, trials are filled with opportunities for a jury to determine the reliability, or level of reliability of an expert's opinions based on the evidence that expert considered. *See In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 530 (6th Cir. 2008) ("Although the opinions of the proffered testimony may very well be shaky, because the opinions were based upon facts in the record, and were not assumptions or guesses, challenges merely went to the accuracy of the conclusions, not to the reliability of the testimony.") (cleaned up) (*discussing ruling from Jahn v. Equine Servs.*, PSC, 233 F.3d 382 (6th Cir. 2000). Therefore, the appropriate means to challenge this testimony is not exclusion, but rather cross-examination at trial. *See Daubert*, 509 U.S. at 596 ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court deny Veolia's motion to exclude portions of Dr. Crakes opinions its entirety.

Dated: April 30, 2024                                    Respectfully submitted,

**LEVY KONIGSBERG LLP**                                  **NAPOLI SHKOLNIK PLLC**

/s/Corey M. Stern                                        /s/ Hunter J. Shkolnik
Corey M. Stern                                           Hunter J. Shkolnik
Melanie Daly                                             Patrick Lanciotti
605 Third Ave., 33rd Floor                               360 Lexington Ave., 11th Floor
New York, New York 10158                                 New York, New York 10017
(212) 605-6298                                           (212) 397-1000

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024, I electronically filed this document and its accompanying exhibits with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ MELANIE DALY
Melanie Daly