# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases                      Hon. Judith E. Levy
5:16-cv-10444/17-cv-10164                United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*
_____/

---

## BELLWETHER III PLAINTIFFS' RESPONSE TO VEOLIA'S MOTION TO EXCLUDE CERTAIN OPINIONS OF DR. MIRA JOURDAN

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ....................................................................................... 1

BACKGROUND ......................................................................................... 1

    Dr. Jourdan's Clinical Evaluations of all Plaintiffs ................................ 2

    Dr. Jourdan's Diagnosis and Future Harm Predictions for R.E. ............ 4

    Veolia's Prior Attempt to Exclude the Expert Testimony of Dr. Jourdan ............. 5

LEGAL STANDARD ................................................................................. 7

ARGUMENT ............................................................................................. 8

  I.   DR. JOURDAN'S FUTURE HARM OPINION CONCERNING R.E. IS
     RELIABLE AND ADMISSIBLE UNDER FEDERAL RULE 702. .................... 9

    A.  Dr. Jourdan based her opinions regarding future harm for R.E. on her
      overall diagnoses, observations, and decades of clinical experience. ............. 10

    B.  ████████████████████████████████████
      ████████████████████████████ ...................... 13

    C.  Dr. Jourdan relied on decades of clinical experience and R.E.'s test results
      in formulating her future harm opinions. ........................................ 15

  II.   THERE IS NO BASIS TO EXCLUDE DR. JOURDAN'S TESTIMONY
     REGARDING R.E.'S FUTURE HARM UNDER FEDERAL RULE OF
     EVIDENCE 403 ............................................................................. 16

CONCLUSION ......................................................................................... 19

CERTIFICATE OF SERVICE .................................................................. 21

i

# TABLE OF AUTHORITIES

## Cases

*Clay v. Ford Motor Co.*, 215 F.3d 663 (6th Cir. 2000)............................................13

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) .........................passim

*In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712 (N.D. Ohio 2011) .............12

*In re Scrap Metal Antitrust Litig.,* 527 F.3d 517 (6th Cir. 2008)..........................7, 8

*Jahn v. Equine Servs., PSC*, 233 F.3d 382 (6th Cir. 2000) ......................................16

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .....................................7, 8, 16

*McLean v. 988011 Ontario, Ltd*., 224 F.3d 797 (6th Cir. 2000) ..............................13

*Pipitone v. Biomatrix, Inc.*, 288 F.3d 239 (5th Cir. 2002) .......................................19

*Richwind Joint Venture 4 v. Brunson*, 96 Md. App. 330 (Ct. Spec. App. 1992)14, 15

*United States v. Gissantaner*, 990 F.3d 457 (6th Circ. 2021)..................................12

*United States v. L.E. Cooke Co*., 991 F.2d 336 (6th Cir. 1993)...............................16

*United States v. Lavictor*, 848 F.3d 428 (6th Cir. 2017) .........................................17

*United States v. Weinstock*, 153 F.3d 272 (6th Cir. 1998) ......................................17

## Rules

Fed. R. Evid. 702.................................................................................................7, 8, 9

Fed. R. Evid. 403......................................................................................................17

# INTRODUCTION

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") moves[1] to exclude certain portions of Dr. Mira Jourdan's[2] expert testimony regarding the Bellwether III Plaintiffs ("Plaintiffs"). Specifically, Veolia seeks to exclude Dr. Jourdan's opinion regarding future harm with respect to one Plaintiff, R.E. However, the arguments made to that end are at odds with the Federal Rules, the practice of neuropsychology, and this Court's prior rulings. As with their motion to exclude Dr. Jourdan's testimony prior to the Bellwether I trial—which raised similar grounds—Veolia's motion to exclude portions of Dr. Jourdan's opinions, here, should be denied.

# BACKGROUND

Plaintiffs Y.A., E.A., G.B., C.D., R.E., J.N., and J.S. suffered various injuries as a result of their exposure to contaminated water during the Flint Water Crisis. At trial, Plaintiffs will offer Dr. Jourdan's expert testimony as a clinical and forensic neuropsychologist to assist the jury in understanding Plaintiffs' injuries and their associated damages.

---

[1] Case No. 16-cv-10444, ECF No. 2909 (Veolia's Motion to Exclude Certain Opinions of Dr. Mira Jourdan).

[2] Many of the relevant reports and records from the Bellwether I trial refer to Dr. Jourdan as "Dr. Krishnan." Dr. Jourdan now practices under the name Dr. Mira Jourdan and will be referred to as Dr. Jourdan herein and throughout the Bellwether III trial.

## Dr. Jourdan's Clinical Evaluations of all Plaintiffs

Dr. Jourdan conducted a full neuropsychological evaluation of each Plaintiff to determine the presence of developmental, cognitive, and emotional deficits.[3] Dr. Jourdan evaluated each child using standardized methods and techniques accepted within her area of expertise and routinely utilized in her clinical practice. Specifically, she reviewed Plaintiffs' medical and school records; transcripts of their parents' depositions; and relevant scientific literature and peer-reviewed publications. Additionally, Dr. Jourdan conducted a clinical interview of Plaintiffs' parents and performed and analyzed a battery of standardized neuropsychological tests to measure each Plaintiff's IQ, academic progress, and behavioral functioning.

Based on these fulsome evaluations, years of clinical experience, and consultation of the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, Dr. Jourdan diagnosed each Plaintiff with specific cognitive and behavioral deficits.[4] *See, e.g.*, Veolia Ex. 6, (Dr. Jourdan Report - R.E.) at 13.

---

[3] Dr. Jourdan's qualifications as an expert in her field are not in dispute. She is a licensed clinical neuropsychologist, with advanced degrees in nuclear engineering and clinical psychology. Since 2015, she has managed her own neuropsychology practice, which includes evaluating neuropsychological and neurodevelopmental disorders. She is also a Clinical Assistant Professor in the Department of Psychiatry at Michigan State University.

[4] The reliability of Dr. Jourdan's diagnoses with respect to each Plaintiff and the underlying methodology she employed in reaching such diagnoses are not in dispute. *See* Case No. 17-cv-10164, ECF No. 456 (Jourdan BWI Daubert Order), at PageID.36660–36681.

Subsequently, she issued a report for each Plaintiff outlining her diagnoses, as well as projections regarding how each child's deficits will likely impact their ability to achieve academic and professional milestones as compared to similarly situated children who had not experienced the same injuries.[5] *See* Veolia Ex. 2,[6] (Dr. Jourdan Report – Y.A.) at 10; Veolia Ex. 3, (Dr. Jourdan Report – E.A.) at 9; Veolia Ex. 4, (Dr. Jourdan Report – G.B.) at 10; Veolia Ex. 5, (Dr. Jourdan Report – C.D.) at 7; Veolia Ex. 6, (Dr. Jourdan Report – R.E.) at 13; Veolia Ex. 7, (Dr. Jourdan Report – J.N.) at 14; Veolia Ex. 8, (Dr. Jourdan – J.S.) at 7. Notably, all of Dr. Jourdan's opinions are based on her vast experience as a board-certified clinical neuropsychologist and reached with a reasonable degree of medical certainty.

With respect to her projections of Plaintiffs' long-term education and occupational outcomes, Dr. Jourdan included specific comments for each child based on her overall observations of the child; the results of each child's individual evaluation; and the cognitive and behavioral deficits she observed, deduced from her

---

[5] Dr. Jourdan performed her initial evaluation wrote her initial reports in 2020 (before the Bellwether Plaintiffs for Bellwether I were chosen for the first trial). In January 2022, after reviewing updated records, she also completed an addendum to her forensic neuropsychological evaluation for each child in January 2022, confirming that he initial diagnosis and opinions remained consistent.

[6] Plaintiffs refer to the exhibits from Veolia's Motion to Exclude Dr. Jourdan. To the extent additional exhibits are needed, Plaintiffs' exhibits will be referred to by letters.

testing, and which they suffer from. *See, e.g.,* Veolia Ex. 6, (Dr. Jourdan Report – R.E.) at 12.[7]

Overall, Dr. Jourdan explained that "the range of issues seen for these children, including a range of learning and neurodevelopmental concerns as well as some emotional concerns, all make it very likely that progress at each step of this path will be more difficult for these children than it would be for similarly situated children who had not experienced these kinds of injuries." Plaintiffs' Ex. A, (Dr. Jourdan's Rebuttal Report, Dated Jan. 15, 2024), at 6; *see also* Plaintiffs' Ex. B, (Excerpt of Dr. Jourdan's March 21, 2023 Deposition) at 391:9–395:1. Additionally, Dr. Jourdan explained that absent their injuries, these children would generally have been expected to succeed emotionally and occupationally. Plaintiffs' Ex. B (Dr. Jourdan's Deposition, Dated March 21, 2023), at 389:8–390:11.

### Dr. Jourdan's Diagnosis and Future Harm Predictions for R.E.

As relevant here, in evaluating R.E., Dr. Jourdan reviewed R.E.'s medical records, as well as the deposition transcript ████████████████████████ ████████████████████████████████ After her full evaluation, Dr.

---

[7] Initially, Dr. Jourdan included specific likelihood percentages within these specific comments. However, in light of the Court's ruling from Bellwether I, Dr. Jourdan will not attempt to quantify or assign highly specific percentage probabilities or likelihoods to the possibilities that a Plaintiff will or will not obtain a certain educational level.



*Id.*

### **Veolia's Prior Attempt to Exclude the Expert Testimony of Dr. Jourdan**

In advance of the Bellwether I trial, Veolia moved to exclude the entirety of Dr. Jourdan's expert opinions, arguing that: (1) Dr. Krishnan's underlying methodology related to her diagnoses was unreliable; and (2) her opinions regarding

how Plaintiffs' deficits would impact their future educational, social, and vocational ability. *See* Case No. 17-cv-10164, ECF No. 341 (Veolia's BWI Motion to Exclude Dr. Jourdan) at 7–22; 22–29.

The Court rejected the diagnosis argument in full, ruling that Dr. Jourdan's "diagnoses are plainly admissible." Case No. 17-cv-10164, ECF No. 456 (BWI Daubert Order) at PageID.36660. As to the second argument, the Court narrowed the scope of Dr. Jourdan's testimony, explaining that Dr. Jourdan could not testify about "the numerical estimates regarding the likelihood each Plaintiff will complete high school, college, or an advanced degree." *Id.* at PageID.336672. However, the Court explicitly ruled that "[b]ecause Dr. [Jourdan] has extensive clinical experience treating patients like Plaintiffs, she may explain at trial why she believes each Plaintiff might have greater difficulty completing high school, college, or an advanced degree than they would have had but for their injuries." *Id.* at PageID.36660, 36671.

Now, in this round of pre-trial motions, Veolia attempts to resuscitate its previously rejected bases for exclusion, across the board. First, in section one, Veolia urges the Court to not only reconsider – but to whole-heartedly reject its prior, explicit ruling regarding the impact of Plaintiffs' deficits on their future educational and professional outcomes. Specifically, Veolia seeks a wholesale exclusion of any reference to the implications of how Dr. Jourdan's diagnoses might affect Plaintiffs

in the future (which the Court previously determined she could). Veolia's Brief at 7 &9.[8] Second, in section two, Veolia attacks the reliability of Dr. Jourdan's future harm predictions with respect to Plaintiff R.E. And while these specific arguments were not addressed in its previous ruing, the Court's prior reasoning applies with equal force here, and such arguments should be wholly rejected.

## LEGAL STANDARD

The Federal Rules of Evidence and the Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), require the District Court to exercise a "basic gatekeeping obligation" to ensure the "reliability and relevancy of expert testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 152 (1999). An expert opinion must satisfy three prerequisites before being admitted. First, the expert must be adequately qualified to opine on the subjects at issue by virtue of "knowledge, skill, experience, training or education." Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 528–29 (6th Cir. 2008). Second, the expert's opinion must "be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (internal quotations omitted). Third,

---

[8] In light of the Court's statement that it will not reconsider issues it has already decided, as well as the Court's explicit direction not to submit responsive briefing on this section of Veolia's motion, Plaintiffs rest on their prior briefing, Case No. 17-cv-10164, ECF No. 366 (Pls.' Response to Veolia's Motion to Exclude Dr. Krishnan), as well as the Court's decision denying Veolia's motion on such grounds, Case No. 17-cv-10164, ECF No. 456 (BWI Daubert Order) at PageID.36660–36681.

the expert's opinion and methodology must be reliable and must be reliably applied to the facts in the case. *Daubert*, 509 U.S. at 592–93.

Given the variability in the *Daubert* analysis, "the trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152. And the Federal Rules embody a strong preference for admitting evidence that may assist the trier of fact and acknowledge that exclusion of expert testimony is "the exception rather than the rule." *See In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citing Fed. R. Evid. 702 advisory committee's note, 2000 amend.). Even where expert testimony may be considered "shaky," "[v]igorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof" provide the traditional and appropriate means of challenging such testimony, not exclusion. *Daubert*, at 509 U.S. at 596.

## ARGUMENT

Despite this Court's prior decision to allow admission of Dr. Jourdan's future harm opinions, Veolia now challenges the reliability and factual underpinnings of her expert conclusions concerning R.E.'s educational and vocational prospects. In Veolia's view, Dr. Jourdan should be precluded from making any reference to the future prospects for children ██████████████████, when discussing R.E., because: (1) to do otherwise renders Dr. Jourdan's opinions unreliable; and

(2) any probative value of such testimony would be substantially outweighed by the risk of jury confusion and prejudice to Veolia. Veolia Brief at 10–11. Contrary to Veolia's assertions, ███████████████████████████████████ ████████████████████ and its potential effects on R.E., which will clearly "assist the trier of fact [in] understand[ing] the evidence or [in] determin[ing] a fact [at] issue," i.e. damages. *See* Fed. R. Evid. 702. And to the extent any "confusion" arises, such may be adequately addressed through cross-examination. *Id.* Accordingly, Veolia's motion to exclude portions of Dr. Jourdan's future harm opinions as to R.E. should be denied in full.

## I.   DR. JOURDAN'S FUTURE HARM OPINION CONCERNING R.E. IS RELIABLE AND ADMISSIBLE UNDER FEDERAL RULE 702.

Veolia contends that Dr. Jourdan's future harm opinion concerning R.E. should be excluded under *Daubert*. Notably, Veolia does not challenge Dr. Jourdan's

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████ Rather, Veolia argues that Dr. Jourdan should not have considered such diagnoses in evaluating R.E.'s future educational and vocational prospects. But Veolia utterly fails to show that this opinion is unreliable, and their pleading evidences a clear misunderstanding of: (1) the myriad of factors Dr. Jourdan evaluated in rendering her future harm opinions; (2) the science underlying

████████████████████████████████████ and affects young children; and (3) that

Dr. Jourdan relied on decades of clinical experience ██████████████████

█████████████████████████████

### A. Dr. Jourdan based her opinions regarding future harm for R.E. on her overall diagnoses, observations, and decades of clinical experience.

As an initial matter, Veolia's arguments mischaracterize the basis of Dr. Jourdan's opinions, overlooking that her future harm opinions were based on the *entirety* of her observations and evaluations of each child, not just one single diagnosis. *See* Plaintiffs' Ex. C (Declaration of Dr. Jourdan) at ¶15. Indeed, Dr. Jourdan explained in her report that, in evaluating R.E.'s future educational and vocational prospects, she considered the whole of R.E.'s test results and intellectual profile. *See* Veolia Ex. 6, (Jourdan Report - R.E.) at 13. ("Overall, I would estimate the likelihood of not graduating from high school is low, but it is likely increased beyond that seen in the absence of *these emotional/cognitive problems.*") (emphasis added);

Similarly, Dr. Jourdan's opinion that R.E.'s deficits will make it more likely that each educational milestone will be more difficult for him to achieve is based on her overall observations, not one single deficit or observation. Indeed, she consistently opined that "the *range of issues* seen for these children, including a range of learning and neurodevelopmental concerns as well as some emotional

concerns, *all* make it very likely that progress at each step of this path [of achieving educational milestones] will be more difficult for these children than it would be for similarly situated children who had not experienced these kinds of injuries." Plaintiffs' Ex. A, (Dr. Jourdan's Rebuttal Report, Dated Jan. 15, 2024), at 6 (emphasis added); *see also* Plaintiffs' Ex. B, (Excerpt of Dr. Jourdan's March 21, 2023, Deposition) at 391:9–395:1. And the same is true for Dr. Jourdan's overall opinion that R.E. will have significant social problems. *Id.* at 393:16–395:1.

Given the above, Veolia's implication that Dr. Jourdan's future harm opinion as to R.E. is based ***solely*** ████████████████████████████████ ████████████████████████ is false, and thus cannot provide the basis for its exclusion. The only part of Dr. Jourdan's future harm assessment that is arguably linked directly ██████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████. But even as to that sentence, Veolia fails to advance any arguments warranting exclusion. Instead, they simply assert that Dr. Jourdan's reliance on the cited study is misplaced, █████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████ This argument does not come close to

necessitating exclusion of Dr. Jourdan's opinion ███████████████████

████████████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████

---

[9] The "publication in a peer-reviewed journal alone typically satisfies th[e] *Dauber*t inquiry." *United States v. Gissantaner*, 990 F.3d 457, 465 (6th Circ. 2021); *see In re Heparin Prods. Liab. Litig.*, 803 F. Supp. 2d 712, 733 (N.D. Ohio 2011).

Second, to the extent Veolia argues that Dr. Jourdan inappropriately relied on this study, ███████████████████████████████████████████████, such goes to the weight of the evidence and is at most fodder for vigorous cross-examination. *See Clay v. Ford Motor Co.*, 215 F.3d 663, 669 (6th Cir. 2000); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (citation omitted) ("However, mere 'weaknesses in the factual basis of an expert witness' opinion … bear on the weight of the evidence rather than on its admissibility.") (citation omitted).

**B.      Dr. Jourdan appropriately included the** ███████████████ ████████████████████████████ **in formulating her future harm opinion.**

To the extent Veolia argues Dr. Jourdan's future harm opinion as to R.E. is unreliable because she considered "███████████████████████████████████████ ██████████████████████████████████, that argument is wholly without merit as it misapprehends the science underpinning ███████████████████████ ███████████████████████████████████████████████████████████████

To insist that Dr. Jourdan ███████████████████████████████████ in formulating her predictions of R.E.'s future educational attainment ignores the very reason ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████



Similarly, it is well understood that cognitive and behavioral impairments, including adverse effects on children's cognitive function associated with lead poisoning, persist and are more pronounced as a child develops.[10] Plaintiffs' Ex. B, (Excerpts from Dr. Jourdan's March 20, 2023 Deposition) at 35:7–10 ("[I]n particular I recall that two of the children were quite young and I recommended that it may be needed to see them again because some deficits may not yet be visible."); Plaintiffs' Ex. B, (Excerpts from Dr. Jourdan's March 21, 2023 Deposition) at 379:22-380:2 ("[I]n my general clinical practice I've had the chance to follow children. And so, for instance, I've had the chance to see how cognitive problems that are detected at young ages affect schooling at later ages when the schooling

---

[10] *See Richwind Joint Venture 4 v. Brunson*, 96 Md. App. 330, 353–55 (Ct. Spec. App. 1992) (holding that experts presenting evidence that children with lead poisoning, although doing well in school at the time, had brain damage as a result of the lead poisoning and could recover damages), *overruled on other grounds*, 335 Md. 661 (1994).

demands are more intensive."). For example, in *Richwind Joint Venture 4 v. Brunson*, 96 Md. App. 330 (Ct. Spec. App. 1992), the Court explained that, while the children "performed well in school at the present time," they would begin to suffer greater symptoms "as the children grow older." *Id.* at 355.

### C.   Dr. Jourdan relied on decades of clinical experience and R.E.'s test results in formulating her future harm opinions.

Considering the above—and the fact that the injuries will likely present worse as the child grows—Dr. Jourdan relied on her decades of clinical experience treating children with cognitive deficits and factored in the possibility of a. Plaintiffs' Ex. A, (Declaration of Dr. Jourdan) at ¶¶14–15; *see also* Plaintiffs' Ex. B, (Excerpts from Dr. Jourdan's March 21, 2023 Deposition) at 379:22-380:2.

This Court has already ruled that Dr, Jourdan can rely on her extensive clinical experience in support of such opinions. *See* Case No. 17-cv-10164, ECF No. 456 (BWI Daubert Order) at PageID.36670 n.6 (citing cases).[11] And that ruling is both

---

[11] As this Court previously explained: "Because [Dr. Jourdan] has extensive clinical experience treating patients like Plaintiffs, she may explain at trial why she believes each Plaintiff might have greater difficulty completing high school, college, or an advanced degree than they would have had but for their injuries. In that testimony, [Dr. Jourdan] may further elaborate upon the reasons why patients with

well supported and equally applicable here. S*ee Kumho Tire Co., Ltd.*, 526 U.S. at 152 (expert may rely on "professional studies or personal experience"). Indeed, because Dr. Jourdan relied on her "lengthy experience," and her opinion has "factual basis," *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993), it is certainly not "pull[ed] … from thin air," *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 391 (6th Cir. 2000), and is therefore admissible.

Moreover, under Veolia's flawed reasoning, a neuropsychologist could ***never*** opine on how a child's test results might indicate future harm, even if an expert's opinion is steeped in test results indicating a cognitive diagnosis and it is understood within the medical community that such behaviors will more likely than not worsen over time, until the child reaches an age that a clinical diagnosis can be made with a reasonable degree of medical certainty. Such a result would be manifestly prejudicial and must be rejected.

## II.   THERE IS NO BASIS TO EXCLUDE DR. JOURDAN'S TESTIMONY REGARDING R.E.'S FUTURE HARM UNDER FEDERAL RULE OF EVIDENCE 403.

Finally, Veolia posits that " 

under Rule 403. But courts may only exclude evidence under Rule

---

Plaintiffs' diagnoses and symptoms may face difficulties at school now and in the future." Case No. 17-cv-10164, ECF No. 456 (BWI Daubert Order) at PageID.36671.

403, if it is "so unfairly prejudicial as to substantially outweigh its probative value," *United States v. Weinstock*, 153 F.3d 272, 278 (6th Cir. 1998), and Veolia has not come close to meeting this standard. *See United States v. Lavictor*, 848 F.3d 428, 447 (6th Cir. 2017) (explaining that the 403 analysis requires Court to "look[] at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.") (internal quotation marks and citation omitted).



On the other hand, Veolia's assertion that "[p]ermitting Dr. Jourdan to put on such evidence would be confusing and prejudicial because it would invite the jury to speculate—without any basis in the evidence—that R.E. could later develop a

condition that he does not currently have" is entirely false. Veolia's Brief at 11.



Plaintiffs' Ex. B, (Excerpt from Dr. Jourdan's Mar. 20, 2023 Deposition) at 303:3–13.

Accordingly, there is no threat of confusion or prejudice and the jury should be afforded the opportunity to interpret such statements and assess their weight. *See Pipitone, v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("The fact-finder is entitled to hear [an expert's] testimony and decide whether it should accept or reject that testimony after considering all factors that weigh on credibility, including whether the predicate facts on which [the expert] relied are accurate.").

## CONCLUSION

For the foregoing reasons, the Court should deny Veolia's motion to exclude portions of Dr. Jourdan's expert testimony.

Dated:      April 30, 2024                     Respectfully submitted,

**LEVY KONIGSBERG LLP**                **NAPOLI SHKOLNIK PLLC**

/s/Corey M. Stern                            /s/ Hunter J. Shkolnik
Corey M. Stern                               Hunter J. Shkolnik
Melanie Daly                                 Paula Napoli
Kiersten Holms                               Patrick Lanciotti
605 Third Ave., 33rd Floor                   360 Lexington Ave., 11th Floor

New York, New York 10158                    New York, New York 10017
(212) 605-6298                              (212) 397-1000
cstern@levylaw.com                          hunter@nsprlaw.com

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ MELANIE DALY
Melanie Daly