UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LUKE WAID, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD D. SNYDER, *et al.*,<br><br>Defendants. | Case No. 16-cv-10444<br>Honorable Judith E. Levy<br>Magistrate Judge Elizabeth A. Stafford |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION CHALLENGING CONFIDENTIALITY DESIGNATIONS
(ECF NO. 2823)**

I. **Introduction**

Plaintiffs challenge Defendants Veolia North America, LLC; Veolia North America, Inc.; and Veolia Water North America Operating Services, LLC's (together, "Veolia") confidentiality designations under the parties' stipulated protective order. ECF No. 2823. Judge Levy referred that issue to the undersigned for hearing and determination under 28 U.S.C. § 636(b)(1)(A). ECF No. 2770.

The Court held a hearing on plaintiffs' motion on February 29, 2024. During the hearing, the Court determined that an *in camera* review of the disputed documents was necessary. ECF No. 2872. The Court ordered

Veolia to submit supplemental briefing showing good cause for the confidentiality designations and articulating "specific facts showing clearly defined and serious injury resulting from the discovery sought." *Id.* (cleaned up); ECF No. 2876, PageID.94770-94771, 94776-94777.  Veolia submitted its brief and 116 documents subject to the confidentiality dispute for the Court's review.  ECF No. 2898.

For the reasons below, the Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion challenging the confidentiality designations.

II.  Analysis

A.

Veolia again disputes the standard of review applicable to its confidentiality designations.  It argues that plaintiffs intend to leak the documents to the media, an unauthorized purpose under the stipulated protective order.  *Id.*, PageID.95011-95013.  The protective order states that if the documents are used for unauthorized purposes, a producing party may designate material confidential if it believes in good faith that public disclosure "*could cause* oppression or competitive damage."  ECF No. 1255-3, PageID.39387 (emphasis added).  Thus, Veolia insists that it need not show good cause for the designations, only that public disclosure could cause harm.  ECF No. 2898, PageID.95011-95014.  As discussed

2

during the hearing, the Court rejects that position.  *See* ECF No. 2876, PageID.94774- 94786.

When a party to a blanket protective order disputes a confidentiality designation, "the burden is on the producing party to justify its designation." *MSC.Software Corp. v. Altair Eng'g, Inc.*, No. 07-12807, 2012 WL 13222577, at *4 (E.D. Mich. May 17, 2012).  Because "a stipulation cannot raise a presumption of protection," the designating party must show good cause for the protection under Federal Rule of Civil Procedure 26(c)(1).[1] *Id.* (cleaned up); *see also Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 5361432, at *3 (E.D. Mich. Aug. 24, 2020); *White v. GC Servs. Ltd. P'ship*, No. 08-11532, 2009 WL 174503, at *2 (E.D. Mich. Jan. 23, 2009).  Thus, even though a court broadly decides that good cause supports entry of a blanket protective order, the designating party must still show good cause under Rule 26(c) for protecting specific documents.

To show good cause, the designating party "must articulate specific facts showing clearly defined and serious injury resulting from the discovery

---

[1] This conclusion aligns with the protective order, which states that if a party objects to a confidentiality designation, the party "that made the designation shall bear the burden of showing good cause for the designation it advocates."  ECF No. 1255-3, PageID.39409.

3

sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (cleaned up); *MSC.Software*, 2012 WL 13222577, at *4. "Good cause cannot be established upon some general or speculative alleged harm." *Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, at *3 (E.D. Mich. Aug. 4, 2010). In deciding whether good cause exists, a court must balance the competing interests and hardships of the parties. *Am. Gen. Life Ins. Co. v. Harshman*, 299 F.R.D. 157, 158 (E.D. Ky. 2014).

**B.**

Veolia next argues that some of plaintiffs' challenges are untimely. ECF No. 2898, PageID.95022. The protective order states that challenges to confidentiality designations must be made by the later of: (1) the deadline for completion of fact discovery in the action in which the designation was made or (2) 60 days after the designation was made. ECF No. 1255-3, PageID.39408. Veolia says it produced and designated the documents at issue during discovery for the Bellweather I action. ECF No. 2898, PageID.95022. Since discovery in that case closed in November 2020, Veolia argues that challenges to the designations were due in January 2021. *Id.*

4

The Court declines to hold plaintiffs to a strict deadline when the record shows that Veolia made indiscriminate designations. Veolia produced nearly 75,000 documents during discovery and designated almost all confidential. ECF No. 2849, PageID.94119; ECF No. 2864, PageID.94324; ECF No. 2876, PageID.94772; ECF No. 2910, PageID.95959. Veolia argues that the current challenges involve less than 0.2% of its total productions. ECF No. 2918, PageID.98014. But that small proportion is not a product of scrupulous designations. Instead, to assist the Court, plaintiffs whittled their challenges down to 116 critical documents. ECF No. 2864, PageID.94325.

When a producing party over-designates documents as confidential, a challenging party must "individually identify potentially thousands of problematic designations, foisting an unfair burden on the challenging party who has arguably done nothing wrong." *N.T. v. Children's Hosp. Med. Ctr.*, No. 1:13CV230, 2017 WL 3314660, at *7 (S.D. Ohio Aug. 3, 2017) (cleaned up); *see also Pettrey v. Enter. Title Agency*, 470 F. Supp. 2d 790, 796 (N.D. Ohio 2006) ("In light of Defendants' designations it would seem odd that Plaintiffs would be required to explain why each of 400,000 documents was not a 'trade and business secret or other confidential information.'"). To force plaintiffs to review and formally challenge nearly

5

75,000 documents within the deadline Veolia suggests would impose too high a burden. In that context, courts have declined to enforce deadlines for challenging confidentiality designations. *See Miller v. Rodriguez*, No. 3:16-cv-2744, 2018 WL 6416928, at *5 (D.N.J. Dec. 6, 2018) ("Considering the language of the Order itself and the extensive amount of discovery to be reviewed, the Court is not persuaded Contact Power waived it rights with a late objection letter." (cleaned up)).

Courts have also declined to enforce deadlines that would require litigants to challenge confidentiality designations before they "might know whether the information contained within a specific document is sufficiently germane to the litigation to merit the cost of a confidentiality battle." *In re Montreal Me. & Atl. Ry., Ltd.*, No. 13-10670, 2019 WL 9242991, at *2 (Bankr. D. Me. Sept. 27, 2019); *see also Liggins-McCoy v. Democratic Caucus of Senate of Penn.*, No. 19-1639, 2022 WL 1446987, at *9 (E.D. Penn. May 5, 2022) (considering a designation challenge even though the challenging party did not adhere to procedure). That argument is especially compelling here because the Bellweather III plaintiffs advance the challenges and are subject to a different scheduling order than the Bellweather I plaintiffs. *See* ECF No. 2533; ECF No. 2900. Stipulations about the schedule show that the parties only recently completed expert

6

discovery in March 2024. ECF No. 2720, PageID.90138. Thus, plaintiffs' objections to confidentiality designations are not as belated as Veolia portrays.

It is true, as Veolia argues, that a party may not "'sit on its hands while the mountain of discovery materials grows and then attempt to challenge the protection of such material with the same ease with which it could have raised an objection contemporaneously.'" *N.T.*, 2017 WL 3314660, at \*7 (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 893 (E.D. Pa. Dec. 10, 1981)). In *Zenith*, the challenging party moved for wholesale declassification of millions of pages of documents years after they were produced. 529 F. Supp. at 893. The court reasoned that the challenging party's delay allowed the challenges to accumulate, rendering it "virtually impossible" for the designating party to defend and the court to determine confidentiality "en masse." *Id.* at 893-94. Even so, the court "treat[ed] the motion as one seeking declassification of the critical categories of documents in the case" and declassified some of those categories. *Id.* at 895, 905-08.

Plaintiffs are not mounting a wholesale challenge but seek de-designation of a narrow group of documents. Thus, it is appropriate to consider plaintiffs' challenges.

7

## C.

The Court has repeatedly stressed that, to establish good cause, Veolia needed to offer industry-specific facts showing that it would suffer a clearly defined harm if the documents at issue were publicly disclosed. *See* ECF No. 2876, PageID.94770-94771, 94776-94781; ECF No. 2872. Veolia failed to adhere to that directive and instead doubled down on its position that it need only show that public disclosure *could* cause harm. ECF No. 2898, PageID.95008-95014.  In fact, Veolia "does not claim that it could satisfy the 'would likely cause harm' standard" that it argues would apply if plaintiffs sought to use the documents as part of legal filings.  *Id.*, PageID.95014 n.7.

Despite that apparent concession, the Court evaluates whether Veolia has met the good cause standard for its confidentiality designations. Veolia seeks to protect two broad categories of documents: (1) the PR privileged documents and (2) the PR documents.  The Court addresses each category in turn.

### 1.

The 71 PR privileged documents consist of "emails and documents exchanged between and among [Veolia], its lawyers, and its PR firms." *Id.*, PageID.95005.  The documents reflect a coordinated effort between

Veolia's legal and PR teams to develop and refine Veolia's public responses to the Flint water crisis.  For example, some documents concern evaluations and advice from legal counsel and PR consultants about the Michigan Attorney General's lawsuit against Veolia and Veolia's response.  Other documents reflect advice about the development of media materials and responses to media inquiries.  *Id.*, PageID.95017-95020.

      Judge Levy held that some documents containing legal advice were not entitled to attorney-client privilege because they were shared with Veolia's PR consultants.  ECF No. 2540, PageID.83978-83979, 83984-83989.  And she found that other documents were not privileged under the work-product doctrine because they were created to further Veolia's media campaign—not the litigation.  *Id.*

      Veolia disagrees with those rulings and intends to appeal.  ECF No. 2898, PageID.95016.  It argues that the documents should be kept confidential in the interim, as there is no way to "unring the bell" once they are publicly disclosed.  *Id.* (cleaned up).  Yet Veolia has cited no authority—nor is the Court aware of any—holding that documents may be designated confidential to preserve a party's position pending appeal.  The two cases Veolia cites concern whether a jury instruction can cure the presentation of inadmissible testimony.  *Dunn v. United States*, 307 F.2d

9

883, 886 (5th Cir. 1962); *Hicks v. Straub*, 239 F. Supp. 2d 697, 708 (E.D. Mich. 2003).

Veolia maintains that public disclosure of the documents could cause it competitive harm or oppression. ECF No. 2898, PageID.95020. It submits a declaration from Carrie Griffiths, executive vice president of communications and chief communications officer, explaining that Veolia's legal and PR strategies are complementary and that the documents "reveal insights into how [Veolia] coordinates" these strategies. ECF No. 2898-2, PageID.95040. Griffiths noted that public disclosure could cause competitive harm because Veolia and its competitors devote significant resources to developing their legal and PR strategies. *Id.*, PageID.95040-95041. Thus, "[i]f competitors had access to these documents, they could assess, without expending any resources of their own, how to improve their own PR and legal responses." *Id.*, PageID.95041.

Veolia's explanation lacks specificity and is speculative. Griffiths broadly discussed the consequences of public disclosure of Veolia's "strategies" but did not reference any specific information in the documents that would benefit its competitors. The documents date from 2014 through 2017 and contain advice on how Veolia should publicly address various issues relevant to the Flint water crisis. Veolia has not asserted that any of

10

its competitors are part of the Flint water crisis, let alone explained how they could use dated advice specifically tailored to Veolia to their own benefit. *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 937 (6th Cir. 2019) (finding that the risk of anticompetitive harm was slight, as stale data reveals little about current operations and the value to competitors is speculative). This defect is critical when Griffiths merely speculated that public disclosure *could* cause competitive harm; Veolia shows no evidence that harm was likely.

Veolia cites cases finding that a business' interest in maintaining the confidentiality of its proprietary and sensitive records can support a finding of good cause. But those cases involved proprietary information and generalized policies, information more readily transferable to a competitor. *See Cooper v. Longwood Forest Prods., Inc.*, No. 2:20-cv-3332, 2021 WL 4894707, at *3 (S.D. Ohio May 10, 2021) (personal injury policy); *Turner v. Sam's E., Inc.*, No. 18-10966, 2018 WL 6061085, at *2 (E.D. Mich. Nov. 20, 2018) (proprietary information about a store's manuals, policies, and T-shaped pole for displaying signs, as well as private information about customers and employees). But as discussed, it is unclear how Veolia's competitors could use PR advice tailored to Veolia's role in the Flint water crisis to their advantage.

This case is much like *In re Nat'l Prescription Opiate Litig.*, in which the Sixth Circuit evaluated whether data compiled in the DEA's ARCOS database—a system that closely tracks controlled substances from the point of manufacture through the point of sale—should be disclosed to the media. 927 F.3d at 923. The DEA identified only vague harm that would flow from public disclosure and failed to fully explain how disclosure would frustrate law enforcement's ability to use the data in its ongoing investigations and enforcement actions. *Id.* at 935-36. Nor were the opioid manufacturers', distributors', and retailers' concerns about competitive harm compelling, as the data was stale and had no trade secrets. *Id.* By contrast, the court noted "the great public interest in solving the opioid crisis," which "outweighed any slight risk of anticompetitive harm." *Id.* (cleaned up). It concluded, "Sunlight is said to be the best of disinfectants, and the ARCOS data and the insight it will provide into the opioid epidemic should be brought to light." *Id.* (cleaned up).

Similarly, plaintiffs and the public have a significant interest in disclosure of Veolia's public responses about the Flint water crisis—a crisis that rocked nearly 100,000 Flint residents. Through this litigation, plaintiffs seek accountability in an industry responsible for ensuring the safety of

local infrastructure. Those interests vastly outweigh the vague and speculative risk of anticompetitive harm identified by Veolia.

**2.**

The 45 PR documents concern Veolia's PR strategy. ECF No. 2898, PageID.95023-95025. For example, the documents include draft responses to media and customer inquiries about Flint and other areas; Veolia's PR-related priorities, goals, and strategic plans; retention of one of Veolia's PR consultants; PR consultants' evaluation of media treatment of Veolia; and Veolia's PR budget and expenses. *Id.*

Griffiths' explanation of the potential harm Veolia would face if these documents were disclosed publicly overlaps with her discussion of the PR privileged documents. She stated that Veolia and its competitors "perform considerable public-facing work" and devote significant resources to protecting their reputations and developing their PR strategies. ECF No. 2898-2, PageID.95045. Griffiths elaborated:

> 46. Allowing competitors to gain a glimpse into how and how much VNA spends on public relations could give them an unfair advantage over VNA. That is because competitors would be able to mimic VNA's allocation of resources and identify how to improve their own public-relations strategies.
>
> 47. Moreover, VNA and its competitors often retain PR companies to help them improve their PR strategies. They spend significant sums of money on these services, and the PR companies provide them with detailed strategic advice.

13

> Allowing disclosure of the contracts with the PR companies could cause VNA competitive harm because it would undermine any future negotiating strategy.
>
> 48. Further, revealing VNA's underlying PR strategy could cause competitive harm or oppression because it would offer competitors free access to the PR recommendations and expertise that VNA has spent considerable resources to obtain.

*Id.*

For the reasons discussed above in connection with the PR privileged documents, good cause does not support protection of the PR documents reflecting Veolia's substantive PR strategies and its public responses.

But the Court agrees that public disclosure of documents reflecting Veolia's budgets, expenses, and contract terms would cause competitive harm. Information about Veolia's financial operations and allocation of resources would be valuable to its competitors in developing their own budgets. And as Griffiths asserted, public disclosure of contract terms with attorneys and PR consultants would undermine Veolia's future negotiating strategy. *See, e.g.*, *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, No. 10-CV-14360, 2018 WL 1811471, at *3 (E.D. Mich. Apr. 17, 2018) (competitively sensitive data, including pricing information, negotiation strategies, contract terms, and reimbursement rates met the higher standard for sealing); *Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc.*, No. 12-2285, 2013 WL 101590, at *3 (E.D.N.Y. Jan. 8, 2013) (good cause

14

supported protecting "internal financial analyses, business plans and other sensitive company information").[2] Thus, the Court upholds the confidentiality designations for these documents:

1. VWNAOS331518
2. VWNAOS331543
3. VWNAOS331550
4. VWNAOS331553
5. VWNAOS331555
6. VWNAOS331558
7. VWNAOS331561
8. VWNAOS331569
9. VWNAOS550141
10. VWNAOS550142
11. VWNAOS172117, but only the portions of the document discussing budget reductions.
12. VWNAOS525301
13. VWNAOS544490

---

[2] The case plaintiffs cite in opposition applies the higher burden for sealing documents filed on the record. *Ewalt v. GateHouse Media Ohio Holding II, Inc.*, No. 2:19-cv-4262, 2022 WL 1080772, at *4 (S.D. Ohio Apr. 11, 2022).

14. VWNAOS526987, but only the portions of the document discussing budget.

15. VWNAOS526996, but only the portions of the document discussing budget.

16. VWNAOS527034, but only the portions of the document discussing budget.

17. VWNAOS528236

18. VWNAOS249107

19. VWNAOS332056

20. VWNAOS333484

### III.  Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** plaintiffs' motion challenging the confidentiality designations (ECF No. 2823).

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: May 8, 2024

## NOTICE TO PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 8, 2024.

s/Marlena Williams<br>
MARLENA WILLIAMS<br>
Case Manager