## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.

Judith E. Levy
United States District Judge

_____/

This Order Relates To:

*Bellwether III Cases*

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. LARRY RUSSELL [2907]

This opinion is the first in series addressing the admissibility of the testimony and reports of experts retained in anticipation of the next Flint water jury trial, referred to as Bellwether III, set to begin on October 8, 2024.

Currently before the Court is Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC's (collectively, "VNA") Motion to Exclude Certain Opinions and Testimony of Dr. Larry Russell ("Motion"). (ECF No. 2907.)

Bellwether III Plaintiffs Y.A., E.A., G.B., C.D., R.E., J.N., and J.S. ("Plaintiffs" or "Bellwether III Plaintiffs") were all minor children at the time of the Flint water crisis, and they oppose the motion. (ECF. No. 2934). VNA replied to Plaintiffs' submission. (ECF No. 2947.) For the reasons set forth below, the Motion is granted in part and denied in part.

## I.   Background

The Court's ruling on a similar motion from the Class trial describes Dr. Russell's testimony as follows:

> Dr. Larry L. Russell, P.E. is an expert in water quality assessments, corrosion mitigation, and the behavior of materials exposed to drinking water. (ECF No. 1177-57, PageID.29865.) Dr. Russell received a BS, an MS, and a Ph.D. from the University of California at Berkeley in Civil/Environmental engineering and is a registered Professional Engineer in the State of Michigan and in approximately 30 other states. (*Id.*) He is also a licensed water treatment operator in multiple states and has over 40 years of experience in water quality assessments, corrosion, and materials performance evaluation. (*Id.*) Dr. Russell is an elected director of the Marin Municipal Water District in California, which serves 190,000 people. He is familiar with the standards of care applicable to professional engineers in the water field and has previously testified as an expert on whether engineers have satisfied the applicable standard of care. (*Id.*)

2

*In re Flint Water Cases,* No. 16-10444, 2023 WL 5844730, at *1 (E.D. Mich. Sep. 11, 2023) ("*Russell I*"). Dr. Russell has provided two reports in preparation for Bellwether III in addition to the reports provided in anticipation of the Class trial. (ECF No. 2907, PageID.95624.) Dr. Russell offers opinions related to corrosion control, the standard of care applicable to engineers, whether VNA breached the applicable standard of care, and the causal impact of VNA's conduct, among other things. (ECF No. 2907-3, PageID.95652–95654.)

The Court has already decided two rounds of *Daubert* motions in anticipation of Bellwether I and the Issues Class trial, amounting to seventeen rulings in total. It also considered *Daubert* challenges to experts at the time it certified the Issues Class. *See In re Flint Water Cases*, 558 F.Supp.3d 459, 523–25 (E.D. Mich. 2021) (deciding two *Daubert* motions out of the fifteen *Daubert* motions filed at the class certification stage). The Court decided *Daubert* motions related to Dr. Russell when certifying the Issues Class and prior to the Issues Class trial. *In re Flint Water Cases*, 558 F.Supp.3d at 523–25; *Russell I*, 2023 WL 5844730, at *1. Additionally, it denied a motion from Plaintiffs to strike or limit expert testimony offered by VNA in Bellwether III as

3

cumulative. *In re Flint Water Cases*, No. 16-cv-10444, 2024 WL 890546 (E.D. Mich. Mar. 1, 2024). Given the Court's familiarity with these experts, it ordered the Parties not to repeat arguments already made and instead ordered them to preserve arguments the Court had already considered by reference to those arguments in earlier filings. (ECF No. 2901, PageID.95084.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the witness must be qualified, (2) the testimony must be relevant, and (3) the testimony must be reliable. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). As the Supreme Court explained in *Daubert v. Merrell Dow Pharms.*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In *Daubert*, the Supreme Court provided a non-exclusive list of factors courts may consider when evaluating reliability: (1) whether the theory or technique at the basis of the opinion is testable or has been

tested, (2) whether it has been published and subjected to peer review, (3) what the known error rates are, and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593; *see also In re Scrap Metal*, 527 F.3d at 529 (listing same factors). Not every factor needs to be present in every instance, and courts may adapt them as appropriate for the facts of an individual case. *Kumho*, 526 U.S. at 150.

"Rejection of expert testimony is the exception, rather than the rule." *United States v. LaVictor,* 848 F.3d 428, 442 (6th Cir. 2017) (quoting *In re Scrap Metal*, 527 F.3d at 529–30)). The burden is on Plaintiffs to show by a "preponderance of proof" that the proffered expert meets the standards of Rule 702 as interpreted by *Daubert. Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

Under Rule 401, evidence is irrelevant unless "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401, and under Rule 402, irrelevant evidence is inadmissible unless an exception applies. Fed. R. Evid. 402. Rule 403 states that courts "may exclude relevant evidence if its probative value is

5

substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

## III. Analysis

VNA argues that the Court should exclude three of Dr. Russell's opinions: (1) his opinions about damaged pipes, (2) his opinions about VNA's state of mind, and (3) his opinions that VNA had the "last clear chance" to prevent Plaintiffs from being further exposed to lead. (ECF No. 2907, PageID.95615–95617.)

### A. Opinions About Damaged Pipes

Dr. Russell opines that:

The lead levels remaining in the heavily corroded and tuberculated steel pipe sections collected from a house in Flint (and most likely at all other similarly plumbed homes having water service laterals made from lead) are excessive and present a risk to the health of the residents of Flint and require removal to protect the health of the citizens of Flint. Additionally, the current standards for lead content for drinking water fixtures are up to two orders of magnitude lower than the lead content of the installed fixtures and will likewise require removal and updating with fixtures that meet the current less than 0.25 percent lead requirement. The condition of the residual scale that remains in the pipes today,

6

with the high lead content, is a problem that needs to be corrected immediately.

(ECF No. 2907-3, PageID.95653.) VNA argues that Dr. Russell's opinions about damaged pipes should be excluded as irrelevant, unreliable, and more prejudicial than probative.

### i.    *Relevance*

VNA argues that Plaintiffs "do not seek property damages" but rather damages for personal injuries, so opinions about property damage are not relevant to their claims. (ECF No. 2907, PageID.95628.) These opinions offered by Dr. Russell do not "fit" the issues in this case, VNA asserts, because they lack a valid connection to the inquiry at hand. *Daubert*, 509 U.S. at 591–92.

Plaintiffs respond that Dr. Russell's opinion is relevant to "the issue of water quality: the issue of the level at which the Bellwether III plaintiffs were exposed to lead." (ECF No. 2934, PageID.98940.) He will not opine about the need to replace pipes in Plaintiffs' homes. (*Id.* at PageID.98941.) In Dr. Russell's deposition, he stated:

> the conditions of those pipes are presumably similar to the conditions in the homes of the plaintiffs for this matter. And the thinking there is that they've been exposed to the same

7

water -- there's only one water source in Flint -- and have seen similar issues with respect to the water quality that has been served in Flint.

(ECF No. 2934-2, PageID.98955.) The implication of Dr. Russell's statement is that he believes that the pipe conditions reveal problems with the quality of the Flint water—water that Plaintiffs had been exposed to. Water quality issues are, of course, relevant to Plaintiffs' claims that they were injured by their exposure to Flint water.

VNA argues, however, that "Dr. Russell offers no opinions about how to draw inferences from the residential pipe conditions to the levels of lead in the residential water during the period following February 2015 for which the Bellwether III Plaintiffs contend that VNA is liable for their alleged exposures and injuries from that water." (ECF No. 2907, PageID.95630.) Because Dr. Russell's sampling occurred in 2022 rather during the period when Plaintiffs allege that they were exposed to lead, VNA claims that his opinions about damaged pipes are irrelevant. (*Id.* at PageID.95629.)

That fact that samples are not taken at the time of exposure does not make them irrelevant to determining whether there were problems with Flint water at the time when Plaintiffs allege their injuries

occurred. VNA can certainly cross-examine Dr. Russell on the timing of the sampling, but the Court cannot say that this evidence lacks "*any* tendency to make a fact more or less probable than it would be without the evidence." *United States v. Hazelwood*, 979 F.3d 398, 408 (6th Cir. 2020) (emphasis added). Dr. Russell's report suggests that the condition of the pipes he sampled was caused, in part, by the impact of corrosive water during the Flint water crisis, which in turn increased the levels of lead to which Plaintiffs were exposed. (ECF No. 2907-5, PageID.95781.) If Plaintiffs establish that the conditions they faced during the Flint water crisis were relevantly similar to the conditions in the houses examined by Dr. Russell, then Dr. Russell's opinions about damaged pipes will be relevant to Plaintiffs' claims. *See* Fed. R. Evid. 104(b). Accordingly, VNA's arguments based on relevance fail.

### ii. *Reliability*

VNA also contends that Dr. Russell's opinions about pipe conditions are unreliable and are based on insufficient facts. (ECF No. 2907, PageID.95631.)

VNA begins its discussion of reliability by rehashing arguments the Court rejected in *Russell I*. (ECF No. 2907, PageID.95631 ("Dr. Russell

9

admits that the pipes likely were 84 years old when they were removed; he admits that that is more than their expected service life; he cannot dispute that old pipes are often corroded; and he offers no basis for opining that significant corrosion occurred in 2015. . . . Dr. Russell also has no basis to infer anything about 'all other' Flint homes, Ex. 2, Report 5, from having examined just two homes.").) The Court held that VNA did not accurately depict Dr. Russell's opinion and that its objection focused on a disputed factual issue, raising an argument about the witness's credibility rather than his reliability. *Russell I*, 2023 WL 5844730, at *4. Further, the Court held that given Dr. Russell's reliance on peer-reviewed studies, as well as the samples he derived from two homes, his opinions were sufficiently reliable. *Id.* at *5. VNA has offered no reason to reconsider this ruling besides its assertion that his opinions have "no basis." (ECF No. 2907, PageID.95632.)

VNA offers three new arguments, however, objecting to the reliability of (1) Dr. Russell's opinions that lead levels in "pipes and fixtures in Flint homes 'are excessive'"; (2) his measurements; and (3) his inferences related to lead content at other Flint homes based on his

10

measurements at a specific residence. (ECF No. 2907, PageID.95631–95632.)

First, VNA argues that Dr. Russell's opinions about excessive lead levels in Flint homes are unreliable because they are unsupported. (*Id.* at PageID.95632 ("Dr. Russell offers no basis at all for his opinion that 41.8, 83.3, and 168 ppm are *excessive* amounts of lead.").) Plaintiffs assert that this criticism is irrelevant because this opinion relates to issues that Dr. Russell will not address in Bellwether III. (ECF No. 2934, PageID.98943 n.4. ("[T]his analysis only relates to whether piping in Flint homes should be replaced due to current problems. Dr. Russell's testimony in the Bellwether III trial will focus on whether Veolia's substandard consulting work for Flint extended the period during which Plaintiffs were exposed to elevated lead levels, during the Flint Water Crisis prior to Flint reconnecting to the Detroit water system.").) Essentially, Plaintiffs represent that they will not offer the opinions to which VNA objects at trial. Accordingly, this objection is moot.

Second, VNA objects to the reliability of Dr. Russell's measurements of pipe samples, because, it argues, he fails to "to rule out the opinion of VNA's expert that the pipe's interior scale likely was

contaminated with lead from the pipe's exterior layer when Dr. Russell cut the pipe." (ECF No. 2907, PageID.95632.) VNA contends that because experts must "'rule out' other possible causes," *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 674 (6th Cir. 2010), Dr. Russell's measurements must be excluded by virtue of not ruling out VNA's expert's alternative opinion. (ECF No. 2907, PageID.95632–95633.) The fact that Dr. Russell and VNA's expert's opinions are in conflict is no basis for exclusion. Such "competing expert opinions present the "'classic battle of the experts" [where] it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves.'" *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005). Further, VNA is pointing to a single alternative explanation for Dr. Russell's measurements. Even if Dr. Russell did not rule that one alternative out, that would not be a basis for exclusion. As the Court has held, "it is uncontroversial that . . . experts need not rule out every conceivable alternative cause . . . . To the contrary, the fact that several possible causes might remain uneliminated only goes to the accuracy of the conclusion, not to the soundness of the methodology." *In re Flint Water Cases*, No. 17-10164, 2021 WL 5847102, at *11 (E.D. Mich. Dec. 9,

12

2021) (cleaned up). Accordingly, VNA's objection to the reliability of Dr. Russell's measurements fails.

Third, VNA objects to Dr. Russell's inferences about lead content at Flint homes based on his measurements at specific residences. It argues that his sample size is insufficient. (ECF No. 2907, PageID.95633.) VNA's opening brief appears to indicate that the sample is a single residence, (*id.*), but in VNA's reply brief it discusses "two homes" as the sample size. (ECF No. 2947, PageID.99191.) VNA misconstrues Dr. Russell's opinion as being that "the lead content of pipes at '*all other*' Flint homes is similar to what he claims to have found at the Davis residence." (ECF No. 2907, PageID.95633 (emphasis added).) Dr. Russell draws more limited conclusions than VNA suggests. Dr. Russell opines that the houses he sampled had excessive lead levels and that excessive levels are "most likely at all other similarly plumbed homes having water service laterals made from lead." (ECF No. 2907-3, PageID.95653.) VNA's objection misses the mark. Dr. Russell's opinion is an inference about similarly plumbed homes as opposed to all homes in Flint. Not only that, but the Court has already considered and dismissed similar objections, explaining that Dr. Russell relied on appropriate scientific literature and

13

other methods in forming his opinions about city-wide pipe conditions. *Russell I*, 2023 WL 5844730, at *4–5. Accordingly, the Court denies VNA's arguments based on reliability.

### iii.   More Prejudicial Than Probative

VNA argues that, under Rule 403, Dr. Russell's opinions about damaged pipes should be excluded, because they are more prejudicial than probative. (ECF No. 2907, PageID.95633.)

VNA objects that Dr. Russell's opinions about damaged pipes suggest that Plaintiffs face ongoing exposure to lead, which "could motivate jurors to impose damages against VNA in order to remedy that issue." (*Id.* at PageID.95634.) VNA is concerned that Dr. Russell's opinion about the need to remove pipes from Plaintiffs' homes will motivate jurors to infer the need to remedy ongoing lead exposure. (*Id.*) Dr. Russell will not offer an opinion suggesting that there is any need to replace Plaintiffs' pipes, however. (ECF No. 2934, PageID.98943.) Accordingly, the objection that offering this opinion will be prejudicial is moot.

VNA also objects that the introduction of photographs of pipes as part of Dr. Russell's testimony would be prejudicial. (ECF No. 2907, PageID.95634.) Evidence should not be admitted when it is unfairly

14

prejudicial, meaning it "tends to suggest decision on an improper basis." *United States v. Mendez-Ortiz*, 810 F.2d 76, 79 (6th Cir. 1986). Introducing these photographs, VNA argues, will "sensationalize . . . Plaintiffs' narrative," confusing the jury by showing them photographs of pipes whose condition, according to VNA's expert, is caused "in large part [by] their old age rather than corrosive water during 2015." (*Id.*) It would also be a waste of time for VNA to explain their position to the jury through trial testimony, it asserts. (*Id.* at PageID.95635.) Plaintiffs argue that these photographs will aid the jury's understanding of Dr. Russell's testimony, as well as testimony from VNA's experts. (ECF No. 2934, PageID.98944.) Further, they assert there is no unfair prejudice involved in showing the jury these photos, "the accuracy of which Veolia does not contest." (*Id.*)

It is true that courts exclude misleading photographs under Rule 403, such as when witnesses cannot authenticate the photographs as representative of the relevant facts and when photographs differ "significantly" from depictions of a scene that are "identified as representative [of that scene]." *See United States v. Ray*, 597 Fed. App'x 832, 838 (6th Cir. 2015) (cleaned up). Such authentication issues and

15

obvious discrepancies are not present here. Instead, Plaintiffs offer an expert to analyze and contextualize the photographs, as well as to explain his opinion that these pipes were damaged in a manner that reveals relevant facts about water quality and "the level at which the Bellwether III plaintiffs were exposed to lead." (ECF No. 2934, PageID.98940.)

The dispute between VNA's expert and Dr. Russell also does not provide a basis to exclude these photographs. VNA and its expert disagree with Dr. Russell's opinion about these pipes, but the Court has already set forth that a disagreement that constitutes a "battle of the experts" is not a basis to exclude Dr. Russell's opinions. *Phillips*, 400 F.3d at 399. To find that these photos are misleading, the Court would have to settle the disputed factual question of what caused the condition of the pipes. Dr. Russell opines that the pipes corroded at a significantly higher rate during the Flint water crisis. (ECF No. 2907-5, PageID.95781.) He believes that this corrosion reveals facts about the water quality in Flint during the Flint water crisis. (ECF No. 2934-2, PageID.98955.) In contrast, VNA's expert argues that "most of the corrosion associated with these pipes and fittings occurred prior to 2014" rather than during the Flint water crisis. (ECF No. 2907-8, PageID.95841–95843.) Having

16

rejected VNA's arguments that Dr. Russell's opinions about the pipes are unreliable, the Court cannot settle this dispute and find that the photographs are misleading based on the analyses provided in the expert reports. The jury must settle this question of expert credibility. *Phillips*, 400 F.3d at 399.

There is also no risk that Dr. Russell's photos of pipes will be inflammatory. The photographs are "clinical" in nature rather than being the sort of images that might raise concerns. *United States v. Lewis*, No. 3:11–cr–79, 2012 WL 604311, at *1 (S.D. Ohio Feb. 24, 2012). The Sixth Circuit has upheld the admission of photographs with far more potential for prejudicial impact than these. *See, e.g.*, *United States v. Sherrill*, 972 F.3d 752, 764–65 (6th Cir. 2020) (upholding a trial court's admission of photographs in which the criminal defendants were making gang signs with their hands). Accordingly, VNA's challenge to the admission of these photographs is denied.

## B. Opinions About VNA's State of Mind

VNA also argues that Dr. Russell should not be permitted to testify about VNA's state of mind, including its desires, intentions, and motivations. (ECF No. 2907, PageID.95635–95636.)

17

Courts have indeed expressed skepticism about such testimony:

> Courts have typically barred expert opinions or testimony concerning a corporation's state of mind, subjective motivation, or intent. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F.Supp.2d 531 (S.D.N.Y. 2004). In general, courts have found that this type of "testimony is improper ... because it describes 'lay matters which a jury is capable of understanding and deciding without the expert's help'" *Id.* at 546 (citation omitted); *see also Sanchez v. Boston Sci. Corp.*, No. 2:12-cv-05762, 2014 WL 4851989, at *3–4, 10, 18–19, 29–30, 30-31, 2014 U.S. Dist. LEXIS 137189, at *9–10, 25, 48, 79, 81–83 (S.D. W. Va. Sept. 29, 2014) [] (considering it [] "to usurp the jury's fact-finding function by allowing an expert to testify as to a party's state of mind"); *Mahaney v. Novartis Pharms. Corp.*, 2011 WL 13209806, at *6–7, 14–15, 2011 U.S. Dist. LEXIS 156848, at *21–23, 47–49 (W.D. Ky. Sept. 9, 2011) ("testimony of this ilk will be excluded"). Although witnesses may discuss certain subjects about which they possess specialized knowledge, this does not mean they are allowed to speculate regarding corporate intent, state of mind, and/or motivations. *See In re Rezulin*, 309 F.Supp.2d at 546 ("[T]he opinions of these witnesses on the intent, motives or states of mind of corporations ... have no basis in any relevant body of knowledge or expertise.").

*In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 345 F. Supp. 3d 897, 902 (S.D. Ohio 2015). As VNA points out, the Court has excluded similar opinions in the case of Dr. Gardoni. (ECF No. 1785, PageID.63787 ("I will strike one of [Dr. Gardoni's] conclusions which is

that VNA failed to disclose that it believed that lead was currently being released because VNA understood that releasing this information publicly would compromise its opportunity to be awarded a lucrative long-term operating contract. Because I didn't see support. He has to have a factual basis for his conclusions and I don't know that that was before him. So I think that's something that is speculation and would need to be proved based on the facts aside from an expert's opinion about that").)

Dr. Russell expresses various opinions that may relate to VNA's intent, including that its goal was to get a bigger contract. (*See, e.g.*, ECF No. 2907-3, PageID.95652–95653 ("Veolia was treating their initial retention as 'paid due diligence' for a desired larger project, involving the installation of six Veolia managers to direct the City water treatment staff and for which Veolia submitted an unsolicited proposal on March 25th 2015"; "Veolia was singularly focused on increasing its income from the City of Flint, rather than on improving water quality for and protecting the health, safety and general welfare of the citizens of Flint"; "LAN and Veolia engineers intentionally understated the health risk from lead to the citizens of Flint in their reports and presentations, which

19

is below the standard of care.").) He bases these opinions about mental state on his reading of VNA proposals, emails, memos, reports, and testimony. (*Id.*)

Plaintiffs assert that Dr. Russell will not testify about VNA's state of mind, but he will instead testify about "the conflict of interest under which Veolia employees were operating, [and] he will restrict himself to testifying concerning the actions of individual employees and not attempt to discern an 'intent' of the corporation as a whole." (ECF No. 2934, PageID.98946–98947.) Plaintiffs indicate that Dr. Russell will "summarize for the jury relevant documents obtained from corporate files that bear on the possible intent of corporate employees" and will "supply [his] own expert insight regarding such matters" in doing so. (*Id.* at PageID.98947.)

Dr. Russell may testify about conflicts of interest from the perspective of an expert in engineering ethics providing opinions about whether VNA met the standard of care. *See Russell I*, 2023 WL 5844730, at *2. A conflict of interest arises when "any business association, interests, or circumstances . . . could influence [an engineer's] judgment or the quality of [an engineer's] services." (ECF No. 1533-9, PageID.59240

(discussing conflicts of interests in the context of the American Society of Civil Engineers' Code of Ethics).) Dr. Russell can provide opinions about such conflicts of interest so long as he does not usurp the jury's role of finding facts about the state of mind of VNA and its employees.[1] *See Hunt v. Hadden*, 127 F. Supp. 3d 780, 788–89 (E.D. Mich. 2015).

Plaintiffs represent that Dr. Russell will not offer opinions about VNA's state of mind. (ECF No. 2934, PageID.98947.) Accordingly, VNA's objection is denied as moot.

## C. Opinion that VNA had the "Last Clear Chance" to Prevent Plaintiffs from Being Further Exposed to Lead

VNA also argues that "the Court should exclude Dr. Russell's opinion that 'Veolia's involvement provided the last clear chance for the citizens of Flint to be spared exposure to more high lead content drinking water.'" (ECF No. 2907, PageID.95639.) It argues that he is offering an

---

[1] The Court's ruling in this order addresses *expert* testimony about states of mind specifically. The Court has already held that facts about states of mind—specifically motive—may be relevant to certain issues presented in this litigation. (5:17-cv-10164, ECF No. 646, PageID.43415 ("[I]f there's testimony that VNA had a motive not to warn the city about corrosion control, that would be evidence that could make it more likely than not that they did not warn.").) The Court does not disturb its past rulings regarding evidence related to state of mind; it only addresses opinion testimony offered by this expert related to state of mind.

impermissible legal conclusion and that his opinion is not based on sufficient facts or data. (*Id.* at PageID.95639–95641.)

As the Sixth Circuit has explained "Rule 702 prohibits expert witnesses from testifying to legal conclusions. An expert offers a legal conclusion when he defines the governing legal standard or applies the standard to the facts of the case." *United States v. Melcher*, 672 Fed. App'x 547, 552 (6th Cir. 2016) (cleaned up). Further, although courts have discretion in choosing to admit or exclude legal conclusions, they must "determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular. If they do, exclusion is appropriate." *Torres v. County of Oakland*. 758 F.2d 147, 151 (6th Cir. 1985).

Dr. Russell uses the language of "last clear chance." (ECF No. 2907-3, PageID.95653.) That is a term of art in tort law, specifically referring to a doctrine that is no longer accepted by Michigan courts in its traditional form, given Michigan's adoption of comparative negligence.[2]

---

[2] Previously, Michigan followed the Restatement:

Last Clear Chance: Helpless Plaintiff

'A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

'(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

'(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

'(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

'(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.'

. . .

480. Last Clear Chance: Inattentive Plaintiff

'A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

'(a) knows of the plaintiff's situation, and

'(b) realizes that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

'(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.'

*Zeni v. Anderson*, 387 Mich. 117, 152 (1976). Though the doctrine of last clear chance has been abolished with the adoption of comparative negligence, it can still play a role: "notwithstanding the rejection of the last clear chance [doctrine], [a] party may properly argue to the jury that the other party had the greater percentage of negligence because he or she had the last clear chance to avoid injury *Petrove v. Grand Trunk W. R. Co.*, 437 Mich. 31, 33 (1991) (cleaned up).

23

*Petrove v. Grand Trunk W. R. Co.*, 437 Mich. 31, 33 (1991). Part of the reason experts must not offer opinions about legal conclusions is to avoid experts conveying erroneous legal standards to juries. *Torres*, 758 F.2d at 150. There is a risk of such confusion here, insofar as Dr. Russell is introducing legal language that addresses questions of comparative fault that are before the jury in VNA's non-party at fault case. Given the rejection of the traditional last clear chance doctrine in Michigan tort law, Dr. Russell's use of this legal language could suggest an erroneous legal conclusion to the jury. Accordingly, Dr. Russell's opinions that reference "last clear chance" must be excluded.

It is permissible, however, for experts to opine about ultimate questions, meaning they can state "opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue," which means they can opine about facts as opposed to questions of ultimate liability. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). An expert like Dr. Russell can therefore discuss the underlying facts about the timing of VNA's engagement in Flint, though he cannot state his conclusion in terms of legal liability.

24

Plaintiffs indicate that what Dr. Russell meant by his comments about "last clear chance" was that "Veolia's engineers were the last engineers enlisted by Flint to supply an objective outside analysis of the situation," and "the consulting work taken on by Veolia turned out to be the final opportunity for careful self-examination by independent expert[s]." (ECF No. 2934, PageID.98948.)

VNA argues, however, that Dr. Russell's opinion "is not supported by the facts and not within the scope of Dr. Russell's work in this case." (ECF No. 2947, PageID.99194.) It argues that Plaintiffs concede that other actors were involved in dealing with the Flint water crisis after VNA and that Dr. Russell was not asked to form an opinion about government non-parties. (*Id.*) Indeed, as Plaintiffs state, after VNA's work in Flint, "various experts and officials, local, state, and federal, were involved in the Flint Water Crisis." (ECF No. 2934, PageID.98948.) Plaintiffs indicate that they only intend to have Dr. Russell reference that VNA was the last engineering consultant employed by the City of Flint—not that it was the last possible opportunity for an intervention. (*Id.*) Whether or not Dr. Russell was asked to form an opinion about government non-parties, Dr. Russell can permissibly refer to VNA being

25

the last engineering consulting firm hired by the City of Flint before the switch back to water from the Detroit Water and Sewerage Department. Such an opinion is not an impermissible legal conclusion, nor does that claim lack a factual basis.

Accordingly, as set forth above, VNA's motion is granted in part insofar as Dr. Russell may not use the phrase "last clear chance" in his testimony or otherwise offer legal conclusions.

## IV.   Conclusion

For the reasons set forth above, the Motion is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: May 17, 2024                           s/Judith E. Levy
Ann Arbor, Michigan                           JUDITH E. LEVY
                                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 17, 2024.

s/William Barkholz

WILLIAM BARKHOLZ
Case Manager