```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF MICHIGAN
 2                   SOUTHERN DIVISION

 3

 4
           In Re   FLINT WATER CASES    Case No. 16-10444
 5

 6

 7    _____/

 8                   STATUS CONFERENCE

 9
             BEFORE THE HONORABLE JUDITH E. LEVY
10              UNITED STATES DISTRICT JUDGE

11                    MAY 15, 2024

12
                 APPEARANCES IN ALPHABETICAL ORDER:
13
                 Margaret A. Bettenhausen
14               Michigan Department of Attorney General
                 525 West Ottawa Street
15               P. O. Box 30755
                 Lansing, MI 48909
16
                 James M. Campbell
17               Campbell Conroy & O'Neil, P.C.
                 20 City Square, Suite 300
18               Boston, MA 02129

19               Melanie P Daly, I
                 Levy Konigsberg, LLP
20               605 Third Ave, Suite 33rd Floor
                 New York, NY 10158
21
                 (Appearances continued on next page)
22

23               Jeseca C. Eddington, RDR, RMR, CRR, FCRR
                 Federal Official Court Reporter
24               United States District Court
                 200 East Liberty Street
25               Ann Arbor, Michigan 48104
```

```
 1                      Alaina N. Devine
                        Campbell, Conroy & O'Neil PC
 2                      20 City Square, Suite 300
                        Boston, MA 02129
 3
                        Nathan A. Gambill
 4                      Michigan Department of Attorney General
                        ENRA Division
 5                      P.O. Box 30755
                        Lansing, MI 48909
 6
                        Heidy L Gonzalez
 7                      DOJ-Civ
                        1100 L Street, N.W., Suite 3408
 8                      Washington, DC 20005

 9                      Richard S. Kuhl
                        Assistant Attorney General
10                      Environment, Natural Resources, and
                        Agriculture Division
11                      525 West Ottawa Street
                        P.O. Box 30755
12                      Lansing, MI 48909

13                      Michael A. Olsen
                        Mayer Brown LLP
14                      71 S. Wacker Drive
                        Chicago, IL 60606
15
                        Corey M. Stern
16                      Levy Konigsberg, LLP
                        605 Third Avenue, Suite 33rd Floor
17                      New York, NY 10158

18                      Timothy B. Walthall
                        DOJ-Civ
19                      175 N Street, NE, Suite 11.102
                        Washington, DC 20530
20
       Also Present:    Honorable David J. Newblatt
21                      Genesee County Circuit Court
                        900 South Saginaw Street
22                      Flint, MI 48502

23                      Deborah E. Greenspan
                        Blank Rome LLP
24                      1825 Eye Street, N.W.
                        Washington, DC 20006
25
```

May 15, 2024

1                        **I N D E X**

2          WITNESSES                                    PAGE

3            (None)

4

5

6

7

8          EXHIBITS

9            (None)

10

11

12

13

14         MISCELLANY

15           Proceedings.................................4
             Certificate................................31
16

17

18

19

20

21

22

23

24

25

1                    **P R O C E E D I N G S**

2          THE CLERK:  The United States District Court for the

3    Eastern District of Michigan is now in session and the Genesee

4    County Circuit is now in session.

5          The Honorable Judith E. Levy presiding and the

6    Honorable David Newblatt presiding.

7          THE COURT:  Great.  And the good news for me is that

8    any agenda items that I had or considered are -- have been

9    resolved or are not on the agenda.

10         So I get to turn it over to Judge Newblatt to address

11   the two issues, including his motion for a change of venue,

12   and then just the submission of a proposed schedule for People

13   vs Veolia.

14         HONORABLE JUDGE NEWBLATT:  Very good.  Thank you,

15   Judge Levy.

16         Could I have counsels' appearance with regard to the

17   matters before me, please?

18         MR. OLSEN:  Good afternoon, Your Honor.  Mike Olsen

19   on behalf of Veolia.  I'm here with Alaina Devine and Jim

20   Campbell.

21         MR. KUHL:  Good morning, your Honor.  This is Richard

22   Kuhl on behalf of the People.

23         Just so you know, I'll be addressing the scheduling

24   issues and Mr. Gambill will be addressing the venue issues.

25         HONORABLE JUDGE NEWBLATT:  Your name again?  I'm

1   sorry.

2          MR. KUHL:  Richard Kuhl.

3          THE COURT:  Thank you, sir.  All right.  Okay.

4          I guess I thought that we would address the venue

5   motion first.  So I guess that would be Mr. Olsen.

6          MR. OLSEN:  Yes, Your Honor.  I'll try to be brief

7   because you've seen much of this in the papers already.

8          As you know, Michigan court rule 2.222 authorizes the

9   Court to change venue to ensure a fair trial when an impartial

10  trial cannot be held where the action is pending.

11         We believe there are a number of reasons why we can't

12  have an impartial jury in Genesee County.

13         First, we think that a jury in Genesee County cannot

14  meet the qualification requirements under MCR 2.511(E) for two

15  basic reasons.

16         One, nearly every or most potential jurors are going

17  to have a conflict of interest.  And most, if not every,

18  potential juror will have a biased, preconceived opinion about

19  the facts in the case.

20         2.511(E) specifically excludes jurors, including any

21  juror who's related within the ninth degree of consanguinity

22  or affinity to one of the parties or attorneys, is or has been

23  a party adverse to the challenging party in a civil action,

24  has a financial interest or is interested in the questions

25  like the issue to be tried.

1          In our view, most, if not all, of the Genesee County

2     residents fall within one of those buckets.

3          As an initial matter and just about every Flint

4     resident is going to be either a party or a class member in a

5     Flint water related lawsuit against VNA that's seeking

6     property personal injury or economic loss damages.  Each of

7     them would be a party adverse to VNA pursuant to the rules.

8     And so they would be disqualified.

9          And based on recent census data that looks like

10    somewhere between 20 to 25 percent of the jury pool.

11         In addition, there are many, many residents outside

12    of Flint who are going to be parties or class members in those

13    lawsuits who are parties or class members in those lawsuits

14    because the allegations are that many non Flint residents

15    travelled to Flint and drank the water or were exposed to the

16    water.

17         Some census data has indicated that over 80 percent

18    of Flint's workforce commutes to Flint.  In fact, any Genesee

19    County resident with any dealings in Flint potentially has an

20    interest in a question like the issue to be tried.  Whether

21    they drank the water or transacted business there or they

22    allegedly have been negatively impacted by the Flint Water

23    Crisis.

24         Further, Genesee County residents who were related,

25    even distantly, to one of the parties or class members will be

1    disqualified pursuant to the Michigan court rules.  And so at

2    least in our view, if you consider what buckets will be

3    excluded from an eligible jury pol, we think that most, if not

4    all, Genesee County residents will not be entitled to serve

5    pursuant to the Michigan county rules.

6            In addition to that fundamental procedural problem,

7    the rules also exclude jurors who have any perceived or

8    expressed or implicit biases against a party or an attorney or

9    shows a state of mind that will prevent the person from

10   rendering a just verdict or has a preformed opinion that would

11   improperly influence the person's verdict.

12           It's our view that most, if not all, Genesee County

13   residents would be disqualified on that basis as well.  And we

14   think it would be very difficult, if not practically

15   impossible, to find sufficient members of the Genesee County

16   jury pool who do not have some preformed opinion about the

17   facts or issues in the case.

18           There has been substantial and ongoing media coverage

19   of the Flint Water Crisis that has been prejudicial to VNA.

20   That included more recently through the state settlement, then

21   the LAN settlement, then the very recent proposed class

22   settlement with VNA.

23           There has been daily media coverage of the first

24   bellwether trial.  And that reporting has been extensive and

25   ongoing.

1              Even the U.S. Supreme Court has held that when a

2    community has been exposed repeatedly and in depth to pretrial

3    publicity, the entire community should be presumed to be

4    prejudiced by it, entitling the defendant to a change in

5    venue.

6              That was Rideau v Louisiana, Patton v Yount, found a

7    similar conclusion.

8              And so we think that for all of those reasons, that

9    it would be practically impossible to get a fair trial in

10   Genesee County.  And that's why we're seeking to transfer

11   venue.

12             HONORABLE JUDGE NEWBLATT:  I have a question.  And I

13   have Judge Farah's opinion from when he denied the previous

14   motion to change venue.  His holding was as follows.  I'll

15   just read it.

16             Having decided that the Court may defer decision on

17   venue at least until attempting to select a local jury through

18   voir dire, the Court must nevertheless determine on what

19   record ultimately decision will be made -- the ultimate

20   decision will be made.  Obviously from the above discussion,

21   that record will include voir dire.  But defendants have asked

22   the Court to consider written affidavits, oral testimony or

23   depositions, and relevant studies.

24             The Court will not at this time rule out

25   consideration of these evidentiary items.  But they will

 1        potentially augment voir dire, not replace it.

 2               So and I find it interesting that you didn't cite

 3        Mr. Roland's declaration at all in your remarks today, which I

 4        would assume would fall in one of those categories that Judge

 5        Farah referred to.

 6               But my question is why isn't that the law of the

 7        case?  Why are we even having this motion?

 8               Judge Farah made the ruling.  The AG made this point

 9        in its brief.  Judge Farah made a ruling that we're not going

10        to change venue at this time.  He definitely saw an issue.

11        Potentially he saw the concern, expressed that in his opinion.

12        But his decision was we're not going to transfer venue until

13        after we try to pick a jury.

14               And so my question is why is -- why are we having

15        this motion?  Why isn't that the law of the case?

16               MR. OLSEN:  So I think, Your Honor, it's a very fair

17        question.  I'd make a couple of points in response to your

18        question.

19               First, as you noted, Judge Farah didn't reach the

20        merits of the venue change motion.  He just decided it was

21        premature until you tried to seat an impartial jury during the

22        voir dire process.

23               I would say a lot has changed between then and now.

24        And there's been a lot of additional and ongoing press that

25        makes it very difficult to conceive of sitting an impartial

1    jury in this case.  I think the rules about jurors being

2    related even distantly I think makes it practically

3    impossible.

4           But I don't think that the extent Judge Farah

5    concluded this, but with respect, I think he's incorrect and I

6    think the AG is wrong that there's any law or rule in Michigan

7    that says you can't decide a venue motion prior to going

8    through the voir dire process.

9           I think practically if it's not clear whether or not

10   you can sit a impartial jury.  I agree it makes perfect sense

11   to try through the voir dire process and evaluate it as a

12   result of that voir dire process.

13          I think in this case, you have an extreme example

14   where given the circumstances in this case, in this county,

15   where merely all of your potential jurors are going to have an

16   interest or be related to have somebody with an interest or

17   have been inundated with press that will give them preformed

18   views of the issues in this case, I think that the sooner that

19   that decision be made, the better.

20          No idea if Your Honor were inclined to grant this

21   motion whether you would be transferring it to a different

22   judge.  But in that case, it may be better to have that judge

23   hear all these pretrial issues.  In fact, I think that's why

24   the AG concurred when we met and conferred that addressing

25   this now was prudent as opposed to waiting until the voir dire

```
1   process.

2           And there have been courts, including in Michigan,

3   that have determined that when a great many of your potential

4   juror pool cannot be successfully screened, that it's

5   appropriate to change venue and you don't necessarily need to

6   wait to an unsuccessful voir dire process.

7           HONORABLE JUDGE NEWBLATT:  All right.  Thank you,

8   Mr. Olsen.  All right.

9           Mr. Gambill, your response, sir.

10          MR. GAMBILL:  Thank you, Your Honor.  I can tell that

11  the Court has read the briefs in this case.

12          Our point is essentially the first one that the Court

13  mentioned, which is that this issue has already been decided.

14  It's not correct that the AG occurred that the Court should

15  not wait to try voir dire and try to seat the jury.  We did

16  agree that if Veolia was going to raise this issue and try

17  again, they might as well do it now, early on.

18          And the decision's already been made by Judge Farah.

19  Veolia hasn't been able to identify any major errors that the

20  Court made.  In fact, the Supreme Court precedent, Michigan

21  precedent is fairly clear from our perspective that in these

22  situations where there's a potential for bias, that the courts

23  should at least try to seat a jury.

24          And the court rule that Veolia cites 2 point I think

25  it's 511, those are questions that are asked of jurors,
```

1    potential jurors to determine whether there's some kind of

2    incurable bias.

3         Really they haven't brought any new data to the table

4    here.  Their expert didn't provide any data to support their

5    analysis of the Genesee County jurors.  Even if the residents

6    of the City of Flint are categorically excluded from the jury

7    pool, that's still over a quarter million people to

8    potentially select a jury from.

9         It's not correct that anyone in Genesee County is

10   related to any party in this case.  The parties in this case

11   are not people.  The plaintiff is a government.  The defendant

12   is a company.  And there's no support in Michigan law that we

13   could find showing that people can be related to those

14   entities the same way they can be related to an individual.

15   So that isn't an issue the Court needs to consider.

16        So really with -- I think our perspective is laid out

17   pretty clearly in our briefing, Your Honor.  So if the Court

18   doesn't have any additional questions, I don't have any more

19   to add.

20        HONORABLE JUDGE NEWBLATT:  Thank you, Mr. Gambill.

21        Mr. Olsen, do you have any rebuttal?

22        MR. OLSEN:  The only thing I would say is I think,

23   respectfully, the AG's wrong on the related two points related

24   to an issue, related to an interest.  And because it's not --

25   they're not related to the parens patriae, although that's

1    debatable given that the claims brought by the state are on

2    behalf of the People.  I think that's a red herring.

3         I think really the only question, and Your Honor

4    raised it -- I think it's a very fair question -- is the

5    timing as to when to decide this issue and whether Judge

6    Farah's view, which was years ago, is still right today.  That

7    we would need to wait to try to seat an impartial jury through

8    the voir dire process.

9         And I won't repeat what I said before.  I just think

10   that given everything that has happened and continues to

11   happen and the practical realities of the people that make up

12   Genesee County, I think we know now that it would be

13   impossible to do so.

14        HONORABLE JUDGE NEWBLATT:  All right.  Thank you.

15        I'll say this because it's freshest in my mind from

16   what Mr. Olsen just said, that the issue of whether residents

17   of Flint are party opponents.  I -- in his earlier remarks, he

18   made the comment that by rule they are, which implicitly

19   acknowledges that things are different now, that it is just

20   the state and the argument that they're party opponents by

21   virtue of the fact that they're residents of Michigan are also

22   residents of the state.  And so by that logic, this case

23   couldn't be tried anywhere in the state.

24        But in any event, I am prepared to rule on this from

25   the bench.  I think that it's dispositive, the point I made

May 15, 2024                                          14

 1    earlier in reading Judge Farah's decision.  He made it very

 2    clear in the language that I just read into the record that he

 3    was deciding this until there had been an attempt at trying to

 4    pick a jury and going through the process of voir dire.  And

 5    that if there was going to be revisited and there was going to

 6    be supplementation that it would be in addition to the voir

 7    dire and not in replace of it.

 8            And I think that that is the law of the case.  I know

 9    the defense has argued that it was wrongly decided.  This is

10    not a motion for reconsideration.  This is not appealed.  This

11    is the law of the case as it stands right now.  So that really

12    is the basis of my decision.

13            And I'll adopt -- I mean, that's the law of the case

14    that's created by that opinion and order of Judge Farah.  So

15    that's the basis of the decision.  But I also want to comment

16    on anything that might have changed since February of 2021

17    since Judge Farah made that decision.

18            First of all, other than the fact that there had been

19    some settlements and there had been some other developments,

20    nothing really has been singled out in particular as to

21    anything that happened since Judge Farah's decision and today

22    as being a particular problem other than just cumulatively

23    there's just more stuff that's happened.

24            So that really is not a persuasive argument in that

25    we've got more things to consider that Judge Farah couldn't

1    consider.  And that argument was not made by the defense

2    either in their briefing or in the argument today.

3           The other -- the other thing that was not part of

4    what Judge Farah considered was the declaration of Claude

5    Roland that was attached to the briefing and referenced in the

6    briefing.  And I have reviewed that extensively.

7           I also reviewed the People's response to that.  And

8    that would be Mr. Fuentes' response to it.

9           And to briefly summarize Mr. Roland's position here,

10   he -- in his declaration he provides basically a primmer of

11   the topic, general concepts of bias, conventional bias,

12   cognitive bias, heuristic reasoning.  All well and good.  And

13   Mr. Fuentes acknowledges all of that as the basic nature of

14   the field.  That's not a problem.

15          But essentially the issue is is that Mr. Roland does

16   not do anything else other than just serve a -- the media.  He

17   has a survey of the articles that he's amassed and he's looked

18   at the types of articles and the types of language.

19          He makes -- it's significant to him that the

20   terminology that being called a crisis, etcetera and so forth.

21   And he terms what e surveyed as extreme pretrial publicity.

22   He describes it as virulent, extreme, and enduring.

23          And I certainly understand the language that he's

24   using.  But he's basically drawing that conclusion and just

25   making an assumption I guess based on his impressions that

1    that's what the coverage was.  And that because of that, that

2    would not allow for a fair impartial jury.

3           As I read that, I understood it.  But I also wondered

4    myself, there's also the idea that this has been going on for

5    10 years.  There's so much information.  Who knows what

6    happened or why.  Just kind of an information overload thing

7    such that a juror might not even know and be able to keep an

8    open mind.  I wondered as to whether or not that could be a

9    dynamic.

10          And it's been pointed out by the People, I also

11   wondered what they said is correct in that a lot of the bad

12   press has gone to the state.  And so the state has reason to

13   be concerned about it.  Who knows?

14          I mean, these are all questions.  I see what

15   Mr. Roland's conclusions, were Dr. Roland's conclusions were.

16   I wondered if they're right.  I thought about it myself, the

17   possibility of other dynamics.  And the problem is is that we

18   don't know because there's not been any data.

19          Data has been formed in earlier venue motions, but

20   not in this particular case in terms of any data of Genesee

21   County jurors.  So we just don't know.

22          Dr. Roland talks about the possibility of a

23   connection between the publicity and the bias in Genesee

24   County and he describes it as perfect conditions for that.

25   Again, those are his impressions.  And I -- presumably,

May 15, 2024

1    they're based on his experience.  Obviously he's got a large

2    amount of experience.  But they're not based on any data.

3           And then he also talks about the futility of any

4    judicial remedies.  He devotes approximately a paragraph to

5    that.  And just concludes with a broad brush that there's just

6    no point in it, it's just not going to be effective, and

7    shouldn't even try.  It's no point.

8           So I guess, to summarize Dr. Roland's position here

9    is that we don't need any data.  We don't need any voir dire.

10   I'm telling you that this is publicity that's too extreme and

11   that there's a connection to bias and there's no possibility

12   of a fair jury.

13          Now Mr. Fuentes takes that on directly.  And he

14   acknowledges the science that Dr. Roland references.  But he

15   points out that we can't make these determinations without any

16   data.

17          Without data, all we have is high-level discussion

18   about theoretical bias.  That's all we have at this point.

19   And he points out also that no high profile case could ever be

20   tried in a particular locality based on that knowledge.

21          He also pushes back very forcefully on the idea that

22   voir dire is futile and cannot solve the problem.  He does not

23   believe that's true and points out, I think correctly, that

24   our system of justice is based upon the idea that voir dire is

25   effective and can work.

1         So basically I do not believe -- again, I'm making

2    the decision based on the law of the case, but I also wanted

3    to make my comments on arguably what may be new that wasn't

4    considered by Judge Farah and that would be Dr. Roland's

5    declaration.

6         That does not move the needle with me in terms of --

7    I mean, I'm not -- he may be right.  He may be right.  But I

8    do not believe that that means that we should not even take

9    the effort to try to pick a jury and to conduct voir dire.

10        And I agree with the People's assertion what the law

11   is and that is what the law favors, which is that we should

12   try to conduct the voir dire.

13        So that is my ruling.  For those reasons, I'm going

14   to deny the motion to change venue.  And I'll just comment

15   that I do also share Judge Farah's concern and recognition of

16   the issue.

17        I'm not trying to discount that or its importance or

18   the concern that I have.  Only that I intend to follow the law

19   of the case and at least try.

20        Of course this can be taken up.  In terms of -- so it

21   is being denied without prejudice.  But I don't expect that

22   we're going to have another one prior to the time we try to

23   select the jury.

24        MR. OLSEN:  You will not, Your Honor.  Thank you.

25        HONORABLE JUDGE NEWBLATT:  All right.  Thank you.

1    Okay.

2          So we can move on now to the issue of the scheduling

3    of -- or scheduling order.  I do have both of your

4    submissions.  I guess I'd like to -- I guess I'll try to

5    sharpen the discussion and just my observation that it seems

6    as if there's a large disagreement about, I guess, theory in

7    terms of what should be the basis of discovery but not that

8    much difference between the dates themselves.

9          I note that the People are taking the position that

10   there should be limited discovery.  And in fact, discovery

11   should end -- and I know this was submitted a couple of weeks

12   ago.  Fact discovery should end September 6.  And then defense

13   says that there should be significant fact discovery, but that

14   the completion date they agreed to be December 10.  So there's

15   not that much difference between the scheduling.

16         And I guess I will open it up to counsel to whatever

17   discussion they think is useful in trying to come up with a

18   scheduling order.  Who wants to -- who should start?

19         MR. KUHL:  Good afternoon, Your Honor.  This is

20   Richard Kuhl for the People.

21         And the point that you made is valid.  Really there's

22   not that significant a difference between the proposals that

23   have been submitted to the Court.  I think really the only

24   difference is that, you know, this case was filed eight years

25   ago.  Substantial discovery has taken place.  And we're

1    anxious to get to trial.

2             And that's really what our proposal reflects,

3    reflects that this is different than a usual case.  This is

4    not a physical injury.  This is a case where we're looking at

5    very specific appropriations from the state legislature.

6             It's very cut and dry what the damages are that we're

7    seeking to recover.  So we don't think that there's going to

8    be a lot of discovery that's going to be required.  And if we

9    can move this case forward at a faster pace, that's what our

10   preference is and that's really what our proposal reflects.

11            HONORABLE JUDGE NEWBLATT:  I -- your position

12   essentially is that there's really nothing else to do with

13   regard to liability.  That's already been discovered.  And

14   really we're talking about damages.  And really all you need

15   to know about damages you can find in the audit essentially if

16   I'm describing your position.  In the audit, what else is

17   there to talk about?  Is that your position?

18            MR. KUHL:  In large part, I think that's correct,

19   Your Honor.  It's very cut and dry in this situation.  Again,

20   we're not talking about somebody's mental injury or their

21   physical injury or what their past economic damages are.

22   That's not the case that we have before you.

23            There was an emergency declaration and the state

24   reacted to that and appropriated very specific money for the

25   City of Flint.  So we don't have to really undertake any

1    significant analysis as to what the actual damages are.

2    They're right there and they're addressed in the audit report.

3           We understand some additional discovery is going to

4    be down.  We're not expecting otherwise.

5           HONORABLE JUDGE NEWBLATT:  Are you expecting them to

6    just say, okay, well it's in the report, so --

7           MR. KUHL:  Oh, no, no, no.  No, not at all.  But it

8    at least identifies the damages that we're seeking.  And that

9    then allows them to tailor their discovery.

10          HONORABLE JUDGE NEWBLATT:  Okay.  So you're just

11   saying that that obviates the need for an extensive amount of

12   discovery.

13          MR. KUHL:  Exactly.

14          HONORABLE JUDGE NEWBLATT:  Because it gives them a

15   roadmap and so they can just follow that and then will tell

16   them what they need to do.

17          MR. KUHL:  Exactly.

18          HONORABLE JUDGE NEWBLATT:  So instead of, what, seven

19   months, it can be done in three.

20          MR. KUHL:  It can be done quickly.  And the fact of

21   the matter is, if we get to the end of the time period and

22   they feel like they need more time, they can always come to

23   Your Honor.  No scheduling order is ever cast in stone.

24          HONORABLE JUDGE NEWBLATT:  Okay.

25          MR. KUHL:  But we shouldn't presume ahead of time

1    that additional time is going to be required.

2            HONORABLE JUDGE NEWBLATT:  All right.  Thank you,

3    sir.

4            Mr. Olsen.

5            MR. OLSEN:  Yes, Your Honor.

6            I think you started in the right place.  There isn't

7    that big a difference.  Three months in fact discovery.  Then

8    there's some difference in like expert discovery because the

9    state allocates them more time for depositions than us and

10   it's imbalanced.

11           But let me address the core difference and opinion

12   about the scope of discovery, which I think is at the heart of

13   why we disagree here.  And I think Your Honor and the state

14   agree, characterized it exactly right.  The state's position

15   is here's our audit report, there's other damages.  Accept us

16   at our word and move on.  And if you want to kick the tires a

17   little bit, that should only take four months and not seven.

18           I think the reason there's only a three-month

19   difference right now is we came up with what we thought to

20   accommodate the state's interest as they expressed in the meet

21   and confer, most aggressive schedule that we thought was

22   feasible.

23           But the idea that the cake is baked on their damages

24   theory is absurd.  They have hundreds of millions of dollars

25   of, quote, "damages", close quote.  And in all kinds of

 1    different categories.  And it's not just what is the amount.

 2    It's what was spent, when was it spent, why was it spent, and

 3    why can the state take the position and prove that those

 4    expenditures were caused by VNA's alleged misconduct?

 5         And so that is going to require extensive fact

 6    discovery as to what was spent, when it was spent, why it was

 7    spent, what was approved, why was it approved, what was the

 8    thought processes, why did these expenditures need to be made,

 9    and when do those discussions take place, and what work did it

10    relate to.  I imagine a lot of these expenses related to both

11    before we even got on scene in Flint.

12         So it's not just a mathematical equation.  It's a how

13    were those alleged damages tied to VNA's alleged misconduct.

14    And that is going to be extensive discovery.  There are many

15    agencies that are involved with these various damages

16    categories.

17         By the way, some of the categories in the audit

18    report on their face couldn't possibly be damages allocated to

19    VNA.  We asked for some clarification to try to expedite our

20    scope of disagreement.  We didn't get it.

21         But the people involved in those decisions, I imagine

22    we are going to ask for and it certainly is reasonably

23    calculated to lead to discoverable and admissible evidence,

24    why were those decisions made, what discussions were taking

25    place about why those expenditures were necessary and for

1    what, and how did that relate to in time and in cause to what

2    VNA did or didn't do.

3            There will be many depositions necessary of the

4    people involved in that process for approved and spending that

5    money as to why it was done, how it was done, and what it was

6    done for.

7            Similarly, the state here has an unjust enrichment

8    claim.  And so there hasn't been discovery related to a number

9    of areas as to whether the state minimized its damages even if

10   they were appropriate and what steps they took to do that and

11   whether the alleged unjust enrichment damages were, in fact,

12   unjust.

13           And the nonparty at fault claims are going to be

14   somewhat different in the parens patriae case than they are in

15   the federal discovery that's been taken to date in terms of

16   additional involvement with respect to these expenditures and

17   additional involvement by certain state actors with respect to

18   this process and their responsibility for parts of this

19   process.

20           And I think if you just step back, I think the reason

21   that this is appropriate to address now is I imagine we are

22   going to come back to the court over and over again in

23   discovery motion practice on a fundamental just difference of

24   opinion here where the state says, yeah, you don't really need

25   any discovery to evaluate our claims.  And it's true.

```
 1              I understand why they're taking the position.  There
 2      has been massive amounts of discovery in the federal cases
 3      related to VNA's conduct.  And so with respect to the case
 4      they need to put on, there has been massive discovery related
 5      to those issues.
 6              And so I get why they don't want to allow us
 7      discovery related to the issues that are part of our defense
 8      and undermining their very aggressive and robust damages
 9      claims and the lack of causation between those alleged damages
10      and VNA's conduct.
11              And so we have no intention of conducting duplicative
12      discovery from what's already taken place in the federal
13      court.  We agree that can be used here.  I think the state
14      agrees that can be used here.
15              But there are absolutely brand new issues as relates
16      to causation, damages, and nonparty at fault that there's no
17      dispute hasn't happened yet.  And there's no way that can be
18      done in four months.
19              HONORABLE JUDGE NEWBLATT:  Okay.  So in terms of
20      liability, is there any fact discovery that you're claiming
21      needs to be done there?
22              MR. OLSEN:  Well, I suspect that there is going to be
23      additional fact discovery in terms of nonparty at fault
24      responsibility.
25              With respect to VNA's conduct and the underlying
```

1    professional negligence claim, I would think the vast majority

2    or all of that discovery has been done.

3            MR. KUHL:  And Your Honor -- (crosstalk)

4            MR. OLSEN:  Unjust enrichment also might --

5    (crosstalk)

6            Sorry, Mr. Kuhl.

7            MR. KUHL:  Sorry.  I apologize.  We disagree that any

8    additional discovery on liability is necessary.  It's been

9    completed already in the other part of the case.

10           And the lack of causation is just a red herring.  The

11   fact of the matter is VNA was involved in the city January,

12   February, March of 2015.  Damages that we're talking about

13   came well after that.  It was an -- VNA's actions exacerbated

14   the situation.

15           So there's not going to be any allocation that's

16   going to be required.  So raising that as a need for discovery

17   we think is simply incorrect.

18           And the argument that the state overspent in the City

19   of Flint, I find it hard to believe that somebody is going to

20   make such an argument to anybody sitting in Flint or to a

21   Genesee County jury where we are often criticized for not

22   spending enough.  So again, we don't think that's really a

23   rational explanation.

24           The real explanation is they just want to delay this.

25   And this has been delayed long enough.  And we would like to

```
 1    move it along as quickly as possible.

 2           I would just one more point, Mr. Olsen, is that you

 3    had raised the question about the expert discovery.  Well,

 4    there's a good reason for that.  The state doesn't believe

 5    it's going to be -- require many experts, a handful at most.

 6    But what we've seen from the federal case is that for every

 7    expert that the plaintiffs identify, they identify two or

 8    three.

 9           So yes, we had additional time period extended for

10    discovery on VNA's experts.  But that's because of their past

11    actions.  If they would agree just to identify the same number

12    of experts that the state identifies, we'd be happy to cut our

13    time period.  But again, that hasn't been there modus operandi

14    in the past.

15           MR. OLSEN:  Your Honor, may I make one more point?  I

16    mean, the state's position throughout this motion and in this

17    argument is this is what we believe, this is what we think.

18    And we're right, so the defense doesn't need discovery to

19    develop its defenses and dispute what we think and what our

20    positions are.

21           Of course there's going to be allocation among

22    nonparties at fault.  The state has taken the position

23    previously that some of those nonparty at faults, including

24    LAN, are responsible for some of those damages.

25           And more importantly it's not as simple as that.  The
```

1    state has damages claims related to community programs.  Why

2    are those community programs exclusively related to even lead

3    in the water, let alone VNA's contribution to lead in the

4    water?

5            There's going to be extensive discovery about what

6    was spent, why it was spent, when those decisions were made,

7    and what it was tailored to.

8            Similarly, infrastructure expenses.  The

9    infrastructure expenses the state believed were necessary go

10   far beyond any credible claim of damages associated with VNA's

11   conduct.

12           So there's going to be extensive fact discovery

13   that's necessary to evaluate how the state can possibly claim

14   that these are tailored to VNA's alleged misconduct and not

15   community improvement or community programs or things

16   completely unrelated to what VNA did or didn't do and whether

17   the state appropriately appropriated and spent this money.

18           And it's our right under Michigan's policy of liberal

19   and broad discovery to conduct that discovery.

20           HONORABLE JUDGE NEWBLATT:  If I were to decide the

21   deadline for the discovery, would the rest fall in place?

22           MR. KUHL:  I think we could probably have a

23   significant discussion if Your Honor were to do that.  We've

24   been able to work through these issues in the past.  I mean,

25   there are some things on their list that we think are not

```
  1   following Michigan procedures and that we disagree with.

  2           But I would think that for the vast majority of

  3   these, we'd be able to work through if the Court made that

  4   decision.

  5           HONORABLE JUDGE NEWBLATT:  Mr. Olsen.

  6           MR. OLSEN:  I think that's probably right.  I mean, I

  7   don't want to prejudge it.  But the other disputes are

  8   smaller, for sure, than the one you identified.  And if both

  9   sides are willing to make reasonable compromise, you would

 10   think that we could work the vast majority of those issues

 11   out.

 12           HONORABLE JUDGE NEWBLATT:  Right.  All right.

 13           I guess what I'm thinking about doing then, you know,

 14   this philosophical debate about what's fair game, I don't know

 15   if I can really litigate that based on what I've heard.  It's

 16   really too general.  I'd probably have to have that teed up

 17   more specifically.

 18           I do see both sides and the points that they're

 19   making.  What I think I'm going to do here is I'm going to

 20   pick just a completion date.  I'm going to hit the starting

 21   gun.  And I'm going to have you submit hopefully a stipulated

 22   scheduling order based upon that.

 23           And if there's any dispute about that scheduling

 24   order, then we can take that up at the next conference date.

 25           Does that sound reasonable?
```

1              MR. OLSEN:  Yes, Your Honor.

2              I assume you're then suggesting as we go and as the

3       issues get more granular, we can tee them up, if necessary, as

4       to timing and scope.

5              HONORABLE JUDGE NEWBLATT:  Yes.  Does that seem okay

6       before I give you the date?

7              MR. OLSEN:  Yes, Your Honor.

8              HONORABLE JUDGE NEWBLATT:  All right.  The date I'm

9       going to give you is November 10.

10             MR. KUHL:  Thank you, Your Honor.

11             HONORABLE JUDGE NEWBLATT:  Okay.  Very good.  I think

12      that's it from my end.

13             THE COURT:  And that's it from my end.  We have not

14      yet picked the next status conference.  So I'll -- we'll look

15      at the calendar and that make held jointly.  Judge Newblatt

16      and I will discuss it.  So that will all be on the docket as

17      soon as it's set up.

18             Anything else at this time from anyone?  Okay.  All

19      right.

20             HONORABLE JUDGE NEWBLATT:  Thank you.

21             THE COURT:  Thank you, Judge Newblatt.

22             HONORABLE JUDGE NEWBLATT:  Thank you, Judge Levy.

23      Thank you, counsel.

24             MR. OLSEN:  Thank you, Your Honor.

25             MR. KUHL:  Thank you.

```
 1              THE COURT:  Take care.  And we will reconvene soon
 2      I'm sure.  Okay.  Thank you.
 3                      (Proceedings Concluded)
 4                  -          -          -
 5
 6              CERTIFICATE OF OFFICIAL COURT REPORTER
 7              I, Jeseca C. Eddington, Federal Official Court
 8      Reporter, do hereby certify the foregoing 31 pages are a true
 9      and correct transcript of the above entitled proceedings.
10      /s/ JESECA C. EDDINGTON                    05/20/2024
        Jeseca C. Eddington, RDR, RMR, CRR, FCRR          Date
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```