# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases                          Hon. Judith E. Levy
5:16-cv-10444/17-cv-10164              United States District Judge
_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

## BELLWETHER III PLAINTIFFS' RESPONSE IN OPPOSITION TO VEOLIA'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ................................................................................1

LEGAL STANDARD ..........................................................................2

ARGUMENT .......................................................................................2

   I.   VEOLIA OWED A LEGAL DUTY OF CARE TO PLAINTIFFS ...............2

     A.   Veolia Owed Plaintiffs a General Duty of Care to Prevent Foreseeable Harm ..................................................................................................3

       i.   Veolia, as a professional engineer, did owe a duty to the City of Flint's citizens, regardless of the client named in the contract...................................4

       ii.   Relevant considerations weigh in favor of recognizing that Veolia owed a duty to Plaintiffs .............................................................................7

     B.   Veolia's Disagreement with How Plaintiffs' Expert Defines the Duty of Care is Irrelevant to Whether Veolia Owed a Duty .........................................14

       i.   Plaintiffs are not asserting a duty to protect............................................14

       ii.   Even if Plaintiffs had alleged a failure of a duty protect, such a duty exists here.....................................................................................16

   II.   THERE IS MORE THAN SUFFICIENT EVIDENCE FROM WHICH A JURY CAN REASONABLY FIND CAUSATION...........................................17

     A.   Plaintiffs Have Sufficiently Set Forth Evidence of Causation .................18

     B.   Exact Allocation is Not Necessary to Prove Causation............................23

CONCLUSION ...................................................................................26

CERTIFICATE OF SERVICE...........................................................27

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .............................................2

*Bearss v. Fazzini*, No. 347206, 2020 WL 3399571 (Mich. App. June 18, 2020).....4

*Bennett v. MIS Corp.,* 607 F.3d 1076 (6th Cir. 2010) .............................................15

*Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 549 (1988).....................................24

*Brown v. Hamilton Cnty.*, No. 22-3633, 2023 U.S. App. LEXIS 20006 (6th Cir. Aug. 2, 2023). ........................................................................................19

*Eberline v. Douglas J. Holdings, Inc.*, 339 F. Supp. 3d 634 (E.D. Mich. 2018) ......2

*Freshley v. Yale Realty Servs. Corp.,* No. 3:20-cv-1015, 2023 U.S. Dist. LEXIS 182765 (M.D. Tenn. Oct. 11, 2023) ......................................................................1

*Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188 (6th Cir. 2020)...............25

*Guertin v. Michigan*, No. 16-cv-12412, 2017 U.S. Dist. LEXIS 109373 (E.D. Mich. July 14, 2017) ......................................................................................3, 10

*Hill v. Sears, Roebuck & Co.*, 492 Mich. 651 (2012) ..........................................4, 5

*In re Certified Question*, 479 Mich. 498 (2007) ......................................8, 9, 10, 14

*In re Flint Water Cases*, 579 F. Supp. 3d 971 (E.D. Mich. Jan. 10, 2022)......passim

*Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc*., 451 F. Supp. 1230 (E.D. Mich. 1978) ....................................................................................................23

*Krik v. Crane Co.*, 76 F. Supp. 3d 747 (N.D. Ill. 2014).........................................25

*Krik v. Exxon Mobil Corp.*, 870 F.3d 669 (7th Cir. 2017) .....................................24

*Lee v. City of Flint*, No. 17-11726, 2021 U.S. Dist. LEXIS 61043 (E.D. Mich. Mar. 29, 2021) .....................................................................................................3, 14

*Lee v. City of Flint*, No. 17-cv-11726, 2021 U.S. Dist. LEXIS 218056 (E.D. Mich. Nov. 10, 2021) ...................................................................................3, 4, 8

*Leone v. BMI Refractory Servs., Inc*., 893 F.3d 359 (6th Cir. 2018) .................6, 15

*Lockridge v. Oakwood Hosp*., 285 Mich. App. 678 (2009) ....................................11

*Loweke v. Ann Arbor Ceiling & Partition Co.,* 489 Mich. 157 (2011)............passim

*Moore v. Liewert*, No. 20-11144, 2022 U.S. Dist. LEXIS 236174 (E.D. Mich. Dec. 13, 2022) ..............................................................................................................3

*Murdock v. Higgins*, 454 Mich. 46 (1997)............................................................17

*Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132 (6th Cir. 2004).........2

*Reidinger v. Trans World Airlines, Inc.,* 463 F.2d 1017 (6th Cir. 1972) .................1

*Roberts v. Kathryn Salmi, LPC,* 308 Mich. App. 605 (2014) ..........................5, 7, 9

*Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014)...................................2

*Samson v. Sagnniaw Professional Bldg., Inc.*, 393 Mich. 393 (1975)...................14

*Schultz v. Consumers Power* Co., 443 Mich. 445 (1993) ................................16, 17

*United States v. White*, No. 1:20-cr-20416, 2024 U.S. Dist. LEXIS 23530 (E.D. Mich. Feb. 9, 2024)..................................................................................................6

## Other Authorities

### Rules
Fed. R. Civ. P. 56(a)................................................................................................2

iii

## INTRODUCTION

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") move for summary judgment on duty and causation.[1] Specifically, Veolia asserts that it did not owe a duty to the children of Flint, and that the seven children in this case (Bellwether III Plaintiffs) lack evidence that they were exposed to a harmful amount of lead during the period relevant to Veolia's liability. These arguments can and should be swiftly denied as they are merely reiterations of those previously and correctly rejected by the Court, and, again, erroneously seek to hold Plaintiffs to an untenable (and incorrect) standard for causation. Further, Veolia's arguments run counter to the well-established principle that "[i]t is the rare negligence case that can be resolved by summary judgment." *Freshley v. Yale Realty Servs. Corp.,* No. 3:20-cv-1015, 2023 U.S. Dist. LEXIS 182765, at *3 (M.D. Tenn. Oct. 11, 2023) (quoting *Reidinger v. Trans World Airlines, Inc.,* 463 F.2d 1017, 1021 (6th Cir. 1972)). Accordingly, Veolia's motion must be denied its entirely.

---

[1] Veolia also asks that the Court reaffirm its previous holding that each non-party owed Plaintiffs a duty. Plaintiffs, for purposes of appeal, reiterate and incorporate the arguments raised during Bellwether I on this point, but do not oppose the Court's application of its prior ruling.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is permitted only where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view "the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party.'" *Eberline v. Douglas J. Holdings, Inc.*, 339 F. Supp. 3d 634, 641 (E.D. Mich. 2018) (quoting *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004)), and "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of [the motion]." *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014). Accordingly, the Court may grant summary judgment only where no reasonable juror could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

### I.   VEOLIA OWED A LEGAL DUTY OF CARE TO PLAINTIFFS

As an initial matter, this Court already ruled that Veolia could not prevail on summary judgment as to duty when it held, as a matter of law, that Veolia owed a duty of care to Plaintiffs prior to the first bellwether trial.[2] *In re Flint Water Cases*,

---

[2] This Court also rejected virtually identical duty arguments in *Lee v. City of Flint*, No. 17-11726, 2021 U.S. Dist. LEXIS 61043, at *9–13 (E.D. Mich. Mar. 29,

579 F. Supp. 3d 971, 981–84 (E.D. Mich. Jan. 10, 2022). In the face of that ruling, Veolia essentially seeks reconsideration, arguing that the Court "misapplied Michigan law." Br. at 1. However, to warrant the disfavored remedy of reconsideration, Veolia needs to show an "obvious, clear, unmistakable, manifest, or plain" error. *Guertin v. Michigan*, No. 16-cv-12412, 2017 U.S. Dist. LEXIS 109373, at *5 (E.D. Mich. July 14, 2017) (quotations omitted). Veolia has not met this standard. It does not even come close to showing that the Court made any mistake of law—much less a "palpable" one—and its motion otherwise reiterates the prior arguments that this Court has already rejected. *Moore v. Liewert*, No. 20-11144, 2022 U.S. Dist. LEXIS 236174, at *3 (E.D. Mich. Dec. 13, 2022) (rejecting motion for reconsideration which does not rely on a "palpable defect"); *Guertin*, 2017 U.S. Dist. LEXIS 109373, at *5 ("Motions for reconsideration should not be granted if they merely present the same issues ruled upon by the court, either expressly or by reasonable implication." (internal quotations and citations omitted)).

### A. Veolia Owed Plaintiffs a General Duty of Care to Prevent Foreseeable Harm

As the Court correctly ruled, "once [Veolia] undertook to evaluate the quality of Flint's water, it had a duty to avoid foreseeable physical harms arising out of that

---

2021). Thereafter, Veolia moved for reconsideration of that decision, which the Court denied. *Lee v. City of Flint*, No. 17-cv-11726, 2021 U.S. Dist. LEXIS 218056, at *3–4 (E.D. Mich. Nov. 10, 2021).

undertaking." *In re Flint Water Cases*, 579 F. Supp. 3d at 981–84 (citing *Lee*, 2021 U.S. Dist. LEXIS 218056, at \*3–4; *Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 660 (2012); *Loweke v. Ann Arbor Ceiling & Partition Co.,* 489 Mich. 157, 166 (2011); *Bearss v. Fazzini*, No. 347206, 2020 WL 3399571, at \*2 (Mich. App. June 18, 2020)). This ruling was correct. After all, **"[e]very person engaged in the performance of an undertaking has a duty to use due care or to not unreasonably endanger the person or property of others**." *Hill*, 492 Mich. at 660 (emphasis added). This duty is confirmed in Section 324A of the Restatement (Second) of Torts (Am. L. Inst. 1965), which provides that "A has a duty to C if its failure to exercise due care for services rendered to B foreseeably increased the risk of physical harm to C." *Lee,* 2021 U.S. Dist. LEXIS 218056, at \*10.

### i.  Veolia, as a professional engineer, did owe a duty to the City of Flint's citizens, regardless of the client named in the contract.

Veolia argues that it owed a duty *only* to the client it contracted with, the City of Flint, but not to the inhabitants of that City, including the Bellwether III children. Br. at 3–7. Veolia's attempts to implement a privity requirement fail for the same reasons previously set forth by this Court: (i) "those who undertake to perform a service for a third party thereby take on a duty to use ordinary care to avoid physical harm to all foreseeable persons and property;" and (ii) "[Veolia's] undertaking for the City of Flint is sufficient to establish a duty to Plaintiffs because [Veolia] is

alleged to have negligently completed that undertaking, and the undertaking—evaluating Flint water quality—was foreseeably related to Plaintiffs' physical safety." *In re Flint Water Cases*, 579 F. Supp. 3d at 978, 982.

A duty of care may arise by statute; through a contractual relationship; **or under the common law**. *Hill*, 492 Mich. at 660–61. Here, Veolia's investigation of the City's water issues resulted in, *inter alia*, a duty to avoid causing foreseeable harm in undertaking a task or contractual obligation under the common law. And, as this Court noted, the Michigan Supreme Court rejects the sort of contractual limitation that Veolia proposes, because "a contracting party's assumption of contractual obligations ***does not extinguish* or limit** **separate, pre- existing common-law** … **duties** owed to noncontracting third parties in the performance of the contract." *Loweke,* 489 Mich. at 172 (emphasis added); *see also Roberts v. Kathryn Salmi, LPC,* 308 Mich. App. 605, 615 (2014) ("Courts have recognized that a professional may be liable in malpractice to a third party for harms caused by his or her breach of the applicable standard of care notwithstanding the lack of a professional-client relationship with the third-party.").

In an attempt to undermine the Court's prior ruling and advocate for its duty-to-client-*only* rule, Veolia argues that Michigan courts "generally" find that "a professional-services firm" only owes a duty to its client, because imposing a duty beyond the contracted client would threaten the "professional-client relationship"

and make it harder to give unbiased advice. Br. at 2–3. This argument is nonsensical and without merit.

First, Veolia's reliance on cases pre-dating *Loweke*[3] is misplaced. Those cases involve special *privileged* professional/client relationships like attorney-client privilege or doctor-patient privilege. But unlike a lawyer or a doctor, there are no engineering consultant-client privileges, or ethical codes that prohibit engineers from sharing information that might help the public at large. On the contrary, engineers' have ethical codes that ***support*** imposing a duty to protect the health and safety of the public. Ex. A, (Dr. Russell BW3 Report) at 43 (outlining standards of care applicable to professional engineers); *id.* at 70 (Code of Ethics: "first and foremost, protect the health safety, and welfare of the public"); *see also* Case No. 16-cv-10444, ECF No. 2460-8, (Canon 1 of the American Society of Civil Engineers Code of Ethics) at PageID.79670 ("Engineers shall hold paramount the safety, health and welfare of the public.").

---

[3] None of Veolia's cited authority post-dates or overrules the case which the Court relied on in rejecting this argument, *Loweke*. As such, Veolia cannot meet the standard for reconsideration or summary judgment on this point. *See United States v. White*, No. 1:20-cr-20416, 2024 U.S. Dist. LEXIS 23530, at *8 (E.D. Mich. Feb. 9, 2024) (explaining that a motion for consideration may only be granted where, *inter alia*, "[a]n intervening change in controlling law warrants a different outcome" (quoting L.R. 7.1(h)(2)(A))); *Leone v. BMI Refractory Servs., Inc.*, 893 F.3d 359, 362–64 (6th Cir. 2018) (finding summary judgment on the issue of duty inappropriate under *Loweke*).

Second, the notion that Veolia, a "water technologies & solutions" company––who touts itself as providing "[i]ndustry-leading water technology and process expertise to solve your toughest water [] challenges––– should not owe a duty of care to *the people who drink the very water* that Veolia is hired to help improve, is counter-intuitive and outrageous.[4] Indeed, Veolia advertises that it will stand by the side of the communities in which they are hired to work, stating: Veolia "has been by the side of cities, industries and *communities to help them*." Veolia, https://www.veolianorthamerica.com (emphasis added).

Therefore, Veolia's argument that the nature of their work is such that owing a duty to anyone besides the entity who hired them would hinder Veolia from providing unbiased advice about water safety should be rejected and ignored. *See Roberts,* 308 Mich. App. at 615 ("[A] professional may be liable in malpractice to a third party for harms caused by his or her breach of the applicable standard of care notwithstanding the lack of a professional-client relationship with the third-party.").

### ii. Relevant considerations weigh in favor of recognizing that Veolia owed a duty to Plaintiffs

Veolia further argues that relevant considerations for determining whether a duty is appropriate do not counsel in favor of finding Veolia owed a duty here; to

---

[4]     Veolia, *Water Technologies & Solutions* (https://www.watertechnologies.com/: 23 May 2024), archived at https://web.archive.org/web/20240519032942/https://www.watertechnologies.com/.

those who drank the very water they were hired to assess. But again, the Court already determined Veolia did in-fact owe a duty as a matter of law, and in doing so, assessed "the competing policy considerations for and against recognizing the asserted duty," *In re Certified Question*, 479 Mich. 498, 505 (2007), as well as Veolia's specific arguments with respect to that assessment. *See In re Flint Water Cases*, 579 F. Supp. 3d at 981–84 (addressing Veolia's arguments there was not a sufficient relationship between Plaintiffs and Veolia; that harm was not foreseeable; and that public policy militants against imposing duty).

**Relationship of the Parties:** Veolia argues that there was not a sufficient relationship between Plaintiffs and Veolia to justify finding a duty because the relationship needs to be a "direct relationship" only between Plaintiffs and Defendant. Br. at 3. Although the Court previously rejected this argument in Bellwether I (and another time before that in *Lee*), Veolia asserts here that the Court erroneously relied on its decision in *Lee v. City of Flint*, No. 17-cv-11726, 2021 U.S. Dist. LEXIS 218056 (E.D. Mich. Nov. 10, 2021). Br. at 4–8.[5] In response to this

---

[5] Notably, in *Lee*, this Court denied Veolia's motion for reconsideration rejecting the same argument that Veolia makes now: that the relationship must be a direct one between plaintiffs and defendants for duty to arise. The Court explained that a duty of care is "**not** limited [to] tort claims [] cases where the plaintiff has a connection to the defendant." *Lee,* 2021 U.S. Dist. LEXIS 218056, at *5 (emphasis added). Importantly, Veolia does not argue that *Lee* has been overruled by an intervening change in controlling law (nor has it). *Lee* still represents good law and was decided on a straightforward reading of the Michigan Supreme Court's recent decision in *Loweke v. Ann Arbor Ceiling & Partition Co.*, 489 Mich. 157 (2011).

redundant argument, Plaintiffs incorporate by reference Class Plaintiffs' response to these same arguments.[6] Ex. B, (Highlighted Class Pls.' Opp. to Summary Judgment) at PageID.83335–39.

Additionally, and contrary to Veolia's assertion, *Certified Question* does not support that there must be a direct relationship between a plaintiff and defendant for duty to arise. Br. at 4–5. In that case, the Michigan Supreme Court ruled that an owner of the property did not owe *the stepdaughter* of a man working for independent contractors, who been hired by the owner of the property*,* a duty to protect *her* from asbestos that accumulated on her stepfather's clothing while he was at work. *Certified Question*, 479 Mich. at 515, 526. The Court characterized the connection as "highly tenuous[,]" because the plaintiff "was separated from the [defendant] by several intermediate relationships." *Roberts*, 308 Mich. App. at 621 (quoting *Certified Question*, 479 Mich. at 515).[7]

In contrast, here, an engineering firm who negligently undertakes an investigation into water quality issues in a city, that may include worsening or

---

[6] Veolia's arguments regarding duty are identical to those raised in its motion for summary judgment seeking dismissal of the class trial. *Compare* Br. at 2–16, *with* Case No. 16-cv-10444, ECF No. 2463 at PageID.80578–92.

[7] The Michigan Supreme Court reasoned: "the relationship between Miller and defendant was highly tenuous—defendant hired an independent contractor who hired Roland who lived in a house with Miller, his stepdaughter, who sometimes washed his clothes. Miller had never been on or near defendant's property and had no further relationship with defendant." *Certified Question*, 479 Mich. at 515.

prolonging contamination issues, has a non-tenuous connection to the person most likely harmed by the contaminated water, the very people in the city drinking that water. *See id.* ("[T]he mental health professional who employs therapies [on a child] that might give rise to a false memory has a substantial connection to the persons most likely to be harmed by the implantation of the false memory: the patient's parents."). Moreover, unlike the daughter in *Certified Question*, Plaintiffs here had ***an involuntary*** relationship with the water and the client of the defendant in question. *Guertin v. Michigan*, 912 F.3d 907, 925–26 (6th Cir. 2019) (finding the City of Flint's "transmission of drinking water to its residents mandatory" such that the relationship between the City and its residents was an "involuntary").

***Foreseeable Harm:*** Identical to its argument in Bellwether I, Veolia argues that it was not foreseeable that their conduct might create a risk of harm to Plaintiffs. Like last time, Veolia complains that "it could not have foreseen that Plaintiffs would suffer their alleged injuries from exposure to lead in Flint water" because the City "deliberately withheld from [Veolia] the data from LeeAnne Walters' home" such that it did not have "knowledge of an actual lead problem in Flint." Br. at 9. But, as the Court already held, Plaintiffs expert opines that a reasonable engineer in Veolia's position would have known that immediate corrosion control was necessary even

without the test results.[8] *In re Flint Water Cases*, 579 F. Supp. at 982. This is sufficient to raise an issue of material fact on this point, and thus, sufficient to defeat summary judgment. *See Lockridge v. Oakwood Hosp.*, 285 Mich. App. 678, 683 (2009) (A plaintiff "need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that *some injury* to the plaintiff was foreseeable or to be anticipated" (emphasis in original)).

Moreover, even without the test results the City allegedly withheld, ample evidence demonstrates Veolia was on notice that the harm to Flint residents flowing from Veolia's failure to act was inevitable. Ex. C, (Excerpt of Dr. Russell May 10, 2023 Deposition) at 46:11–47:7 (testifying that water samples from UM Flint and corrosivity date derived from a CSMR should have been sufficient to raise a red flag

---

[8] Like Plaintiffs' Bellwether I expert, Plaintiffs' Bellwether III expert, Dr. Russell, opines that a reasonable engineer in Veolia's position would have known that immediate corrosion control was necessary even without the test results. *See* Ex. A, (Dr. Russell BW3 Report) at 9 (high chloride concentrations in Flint River "were well known prior to the switch"); *id.* at 10 ("increased corrosivity" of Flint River water compared to Detroit water was "obvious"); *id.* at 12–13 (Flint River known to have corrosion issues as early as 1950s; reading existing reports would have indicated high risks for corrosion); *id.* at 44 (summarizing research showing that systems with higher CSMR values have higher rates of lead leaching and that changes in water chemistry affect corrosion); *id.* at 39–42 (setting forth "Veolia's failure to publicly identify the absence of corrosion control as a threat to human health and property"); *see also* Case No. 16-cv-10444, ECF No. 2463-6, (Dr. Russell Class Report) at PageID.80744 (without corrosion control, Flint River water "presented exactly the type of conditions that cause (support) corrosion and consequently the deterioration of piping systems and the release of lead").

regarding potential corrosive water conditions and lead contamination); *see also* Ex. A, (Dr. Russell BW3 Report) at 16 ("Veolia would have researched the specifics of Flint's situation, met with City personnel, evaluated the impact of switching water sources and the local politics. In addition, it is likely that Veolia was fully aware of the consequences [] of Flint's disconnection from the DWSD, due to their work for the DWSD, and of the potential impacts on water quality with the switch to the Flint River. Veolia's experience, and specifically their work in Pittsburg and Detroit, would have made them well aware of the potential for severe water quality issues in Flint.").

Finally, it was clearly foreseeable that Plaintiffs—children who live in Flint— would come into contact with Flint water regularly, and the catastrophic dangers of children ingesting lead or otherwise contaminated water are well known. *See Schultz*, 443 Mich. at 452 ("Those engaged in transmitting electricity are bound to anticipate ordinary use of the area surrounding the lines and to appropriately safeguard the attendant risks.").

***Public Policy:*** Reiterating its arguments from Bellwether I, Veolia asserts that public policy militates against finding a duty here because doing so would: "massively expand professional negligence in Michigan" in that "[a]ny time a professional provides services to a client, the professional could be liable to any third party who may be connected to that client." Br. at 9. The Court has already, correctly,

addressed these hyperbolic concerns. *In re Flint Water Cases*, 579 F. Supp. 3d at 982 ("The only duty being imposed in this case is the duty to take reasonable care to avoid foreseeable physical harms."); *id.* at 983 ("Like all contractors, federal and state contractors must take reasonable care in their undertakings. The fact that one works for the government does not change this familiar rule.").

Veolia takes issue with this ruling,[9] asserting that the Court "conflated what duty a professional owes with to whom that duty is owed." Br. at 10. On this point, Veolia asserts that if the City wanted to sue them for negligence it could have, but that expanding liability to the residents of that City "would result in disproportionate liability for which Veolia did not contract." Br. at 10–11. Not only does this argument fail to show that the Court's ruling on this point was a mistake, but it is also absurd. Veolia cannot credibly argue that it need not consider the safety of the people *who drink the City's water* when contracting to address the safety of *that City's drinking water*. Afterall, in executing their duties under the contract, Veolia declared that the water was safe for everyone in the City to drink, not just its client. Ex. A, (Dr. Russel BW3 Report) at 47–48.

Moreover, extending a duty to Plaintiffs would not "have the far-reaching effect on other professional services contractors feared by [Veolia]" because any

---

[9] Veolia also criticized the Court's reliance on cases from other states. That argument is entirely without merit. *See* Ex. B, (Highlighted Class Pls.' Opp. to Summary Judgment) at PageID.83343 n.16.

other plaintiff would still be required to establish the existence of a third-party legal duty *and* that the *Certified Question* factors merit extending such duty under the facts. *See Lee*, 2021 U.S. Dist. LEXIS 61043, at \*11–12. On the other hand, the "serious nature" of the risks posed to Plaintiffs from lead consumption (life-altering, irreversible brain injuries) counsel in favor of finding a duty in these circumstances. *Certified Question*, 479 Mich. at 517; *see also Samson v. Sagnniaw Professional Bldg., Inc.*, 393 Mich. 393, 407 (1975) ("If the risk involves possible death or serious bodily injury to a number of persons, the law requires that some care be exercised even though the probability is slight that the incident will occur.").

## B. Veolia's Disagreement with How Plaintiffs' Expert Defines the Duty of Care is Irrelevant to Whether Veolia Owed a Duty

### i.   Plaintiffs are not asserting a duty to protect.

Veolia argues that Plaintiffs' allegations amount to "a duty to protect," and that even if Veolia owed *a duty*, it did not owe *that* duty. Br. at 12. But in so arguing, Veolia gives no reason to disturb the Court's prior ruling on this point. Indeed, the Court—fully aware that there is generally no duty to protect—has already **twice** ruled, as a matter of law, that Plaintiffs' allegations regarding Veolia's failure to strongly recommend a corrosion inhibitor and/or return to the DWSD reasonably falls within Veolia's "duty to use ordinary care to avoid physical harm to all foreseeable" water users in Flint." *In re Flint Water Cases*, 579 F. Supp. 3d at 982–84; *Lee*, 2021 U.S. Dist. LEXIS 61043, at \*10–12.  Instead, Veolia now argues that

its duty to avoid foreseeable harm is only a duty to avoid creating a risk of new harm or increasing a pre-existing harm. This argument is without merit.

As an initial matter, this argument is an inaccurate and highly reductive reading of Plaintiffs' experts' opinions as to what Veolia's duty of care required. Rather, Dr. Russell's opinion can be better summarized as an analysis of what Veolia was obligated to do once undertaking to advise the City regarding its water quality in its capacity as a professional engineer. *See* Ex. D, (Highlighted Dr. Russell BW3 Initial and Rebuttal Reports) (highlighting on Initial Reports pgs. 5, 46, 49 and Rebuttal Report pgs. 2–3, 5). As such, it is entirely reasonable to hold Veolia accountable for the foreseeable harms caused by its actions and inactions.

Moreover, setting aside that a finding that Veolia's actions increased a pre-existing harm is **not required**,[10] it is simply untrue that Plaintiffs do not allege Veolia's actions "increased" their risk of harm. Br. at 8. In fact, Plaintiffs have

---

[10] Veolia's reliance on *Bennett v. MIS Corp.,* 607 F.3d 1076 (6th Cir. 2010), is misplaced. Br. at 14–15. A requirement that a defendant's action's "create a new harm" only applies where a contractual relationship forms the basis of a defendant's general legal duty. *See Leone v. BMI Refractory Servs.*, 893 F.3d 359, 363 (6th Cir. 2018) (explaining that while a new hazard is often a feature of these cases, Michigan law does not make it a requirement: "Michigan cases nowhere state that it is the only way that such a duty might arise. Instead, a contractor can be liable to a third party if 'any legal duty independent of the contract existed.'") (quoting *Loweke*, 489 Mich. at 169)). This is distinguishable from the situation here, where, as explained above, Veolia duty of care arises under the common law requirement that a party use ordinary care to avoid physical harm to all foreseeable persons and property in performance of its contract.

clearly and consistently argued that Veolia's negligent provision of professional engineering services increased and prolonged their exposure to leaded water by delaying (1) the City's switch to the DWSD; (2) the City's acknowledgment of the serious health threat posed by its water; and (3) the use of appropriate corrosion control measures. This is supported by Dr. Russell's conclusion that Veolia's violation of their professional duties encompassed "the root causes of the Flint Water Crisis," Ex A., (Dr. Russel BW3 Report) at 6, and "contributed to continued degradation of the health of the residents of Flint, and the continued exposure of the residents to drinking water with elevated concentrations of lead," *id.* at 49; *see also* Ex. D, (Highlighted Dr. Russell BW3 Initial and Rebuttal Reports) at 4, 5.

### ii. Even if Plaintiffs had alleged a failure of a duty protect, such a duty exists here.

A duty to protect may arise in special circumstances where, *inter alia*, a special relationship between the parties "is sufficient to impose a duty under the circumstances." *Schultz v. Consumers Power* Co., 443 Mich. 445, 450 (1993). That duty exists here. A special relationship arises where one party "assume[s] a distinctive duty to procure knowledge and experience regarding that activity, person, or thing." *Id.* Further, "[w]here there is a duty to protect an individual from a harm by a third person, that duty to exercise reasonable care arises from a 'special relationship' *either* between the defendant and the victim, *or the defendant and the*

16

***third party who caused the injury***." *Murdock v. Higgins*, 454 Mich. 46, 54 (1997) (emphasis added).

Here, given the potential harm ingesting contaminated water poses, a water provider may be charged with an obligation to reasonably inspect the quality of the water it is providing "in order to discover and remedy hazards and defects." *Schultz*, 443 Mich. at 451. This special relationship extends to a water engineering expert that a utility provider relies on to assist with such an investigation. *Id.* at 450 ("Clearly, the relationship between the utility company and the decedent was sufficient to impose a duty under the circumstances. It is well established that those who undertake particular activities or enter into special relationships assume a distinctive duty to procure knowledge and experience regarding that activity, person, or thing.").

## II.   THERE IS MORE THAN SUFFICIENT EVIDENCE FROM WHICH A JURY CAN REASONABLY FIND CAUSATION

Veolia argues that the Court should grant summary judgment because "Plaintiffs cannot prove [Veolia] caused their injuries" as Plaintiffs lack "evidence of *how much* lead they were exposed to from Flint water after [Veolia arrived in] February 2015." Br. at 16 (emphasis in the original). But this Court has already, correctly, rejected Veolia's untenable request for such an exacting standard for causation——both at the summary judgment stage and at the *Daubert* stage——for the Bellwether I children, and that same reasoning equally applies for the Bellwether

III children. *See In re Flint Water Cases*, 579 F. Supp. 3d at 991–92; *see also In re Flint Water Cases (This Order Relates To: Bellwether I Cases)*, No. 17-10164, 2021 U.S. Dist. LEXIS 236914, at *30–39 (E.D. Mich. Dec. 9, 2021) (addressing similar arguments in denying Veolia's motion to exclude the testimony and reports of Dr. William Bithoney).

### A. <u>Plaintiffs Have Sufficiently Set Forth Evidence of Causation</u>

In Bellwether I, Veolia complained that Plaintiffs did not offer evidence showing precisely how much water they drank between February and October of 2015, and the amount of lead that water contained. In response, the Court held that this was not fatal to the Plaintiffs' ability to prove causation. *See In re Flint Water Cases*, 579 F. Supp. 3d. at 985–88 ("Plaintiffs' inability to prove exactly how much lead they consumed after February 18, 2015, is not fatal to their case."). Specifically, the Court reasoned that Michigan law "permits reasonable inferences of causation based on circumstantial evidence" *Id.* at 987 (internal quotations omitted). And that to require the level of specificity Veolia requested would impose "draconian evidentiary requirements," which would not only make toxic tort cases "unwinnable," but would also be contrary to Michigan law. *Id.* at 988 (analyzing applicable law).[11]

---

[11] Veolia does not attempt to argue that the court misapprehended or overlooked any point of law or fact or otherwise committed an error in its

Having set Veolia's draconian standard aside, the Court then assessed the evidence from which a juror could reasonably find that, in the eight-month period between Veolia's arrival in Flint and Flint's return to DWSD, each of the Bellwether I Plaintiffs had consumed sufficient lead to cause or contribute to their neurocognitive injuries. That same evidence——(1) bone scan measurements showing that the children have thousands of micrograms in their bones; (2) estimates regarding lead absorption and peak blood lead; and (3) a plethora of literature showing lead causes neurocognitive harms at quantities as low as 1 mcg/dl of blood lead——is present here. *In re Flint Water Cases (This Order Relates To: Bellwether I Cases)*, 2021 U.S. Dist. LEXIS 236914, at *30–39; Case No. 5:16-cv-10444, ECF No. 2972, (Response to Veolia's Motion to Exclude Dr. Bithoney) at PageID. 100005–14.[12]

***Amount of Water***: As he did in Bellwether I, Plaintiffs' expert Dr. Bithoney reviewed detailed testimony (and conducted detailed interviews) revealing approximately how much water the children drank *throughout* the crisis. From this evidence, Dr. Bithoney learned that "[a]ll of the children drank between 3 to 6 glasses of water per day on average, and most of the children drank between 4 and

---

assessment. Instead, it reiterates the same arguments made in Bellwether I. However, reconsideration is not warranted when a motion merely reiterates arguments raised in its original motion.

[12] Plaintiffs incorporate by reference all relevant arguments made in response to Veolia's Motion to Exclude Dr. Bithoney.

6 glasses per day." Ex. E, (Dr. Bithoney Rebuttal Report) at 6; *see also* Ex. F, (Dr. Bithoney Combined Initial Reports) at pdf pgs. 8, 25, 45, 57, 60, 79, 98, 113. Dr. Bithoney also learned that, while some families attempted to stop drinking water as the Crisis developed, all of them explained that they were unable to stop doing so and continued drinking the water through 2015. Ex. G, (Excerpts of Dr. Bithoney Initial Deposition) at 858:6-16; *id.* at 456:16–469:7; *id.* at 867:7–868:5; *see also* Ex. H, (Excerpts of Plaintiffs' Family Depositions) at (highlighted in yellow) at pdf pgs. 3-5 (Y.A.L. Mother); pdf pg. 6-10 (E.A. Mother); at pdf pg. 11-13[13] (G.B. Grandmother); pdf pg. 14-18, & 45 (C.D. Mother); pdf pg. 19-20 (R.E. Mother); at pdf pg. 21-23 (R.E. Grandmother); pdf pg. 24-28 (J.N. Father); pdf pg. 29-35 (J.S. Mother).[14]

**Lead in the Water**: As to lead levels in Plaintiffs' water, while there are no consistently documented lead levels from Plaintiffs' homes in 2015, there is record evidence that the lead levels were elevated throughout the community. For example,

---

[13] There is a non-substantive error in the transcript of Angela Royster's deposition. The objections made in redirect (127:18–138:5) are by counsel for Veolia, not by Plaintiffs' counsel.

[14] The record contains additional evidence of exposure to water beyond just drinking water from the tap. Plaintiffs continued to bathe, cook with, and wash their clothes in lead-contaminated water through October 2015. *See, e.g.* Ex. H, (Excerpts of Plaintiffs' Family Depositions) (highlighted in blue) at pdf pg. 36-38 (Y.A.L. Mother); at pdf pg. 39-40 (E.A. Mother); at pdf pg. 41-43 (G.B. Grandmother); at pdf pg. 44-45 (C.D. Mother); at pdf pg. 46-49 (R.E. Mother); at pdf pg. 49-51 (R.E. Grandmother) 130:22-131:20); at pdf pg. 52-56 (J.N. Father); at pdf pg. 57-59 (Father of J.S.).

"there is record evidence that at least 40% of homes in Flint had water with a lead content of over 5 ppb, and at least 10% of homes had water with a lead content of over 25 ppb." *In re Flint Water Cases*, 579 F. Supp. 3d at 989; *see also In re Flint Water Cases (This Order Relates To: Bellwether I Cases)*, 2021 U.S. Dist. LEXIS 236914, at *18.[15] And there is testimony from all of the Bellwether III parents that their child spent time and drank water in places throughout Flint. *See* Ex. H, (Excerpts of Plaintiffs' Family Depositions (highlighted in pink) at pdf pg. 60-61 (Y.A.L. Mother); pdf pg. 62-64 (E.A. Mother); at pdf pg. 65-67 (G.B. Grandmother); pdf pg. 68-70 (C.D. Mother); pdf pg. 71-72 (R.E. Mother); pdf pg. 73-74 (R.E. Grandmother); pdf pg. 75-77 (J.N. Grandfather); at pdf pg. 78-79 (J.S. Father).

Additionally, Dr. Bithoney conducted a geo-mapping survey, which showed, *inter alia*, that: "All [Plaintiffs'] had a primary residential address in wards that had at least 10% water samples that exceeded 15 ppb during the Flint water crisis." Ex. I, (Dr. Bithoney Supplement) at pdf pg. 15. And that all of the Plaintiffs "have, either for some time lived at a primary residential address, or spent time regularly at a secondary address [], in wards where more than 18% of the water is tested to have a lead level over 15 ppb, during the Flint water crisis." *Id.* Another example is Dr. Bithoney's review of the FAST Start data and home inspection reports, which reflect

---

[15] As Dr. Bithoney explained, that study likely "underrepresented the true percentage of homes with dangerous lead concentrations in their tap water." Ex. E, (Dr. Bithoney Rebuttal Report) at 6.

that Plaintiffs lived or spent significant time at homes that had lead service lines, or leaded plumbing components. Ex. E, (Dr. Bithoney Rebuttal Report) at 10–13. Both of which, he noted, are known to cause leaching of lead into drinking water. *Id.*

*Capable to Cause Harm*: The record contains plenty of evidence that blood lead levels of as little as 1 mcg/dl are sufficient to cause injury. *See* Ex. F, (Dr. Bithoney Combined Initial Reports), at pdf pgs. 8–12; 26–29; 45–49; 61–64; 80–83; 98–102; 114–17; Ex. E, (Dr. Bithoney Rebuttal Report) at 2–3, 26–32, 39; Ex. J, (Rebuttal Report of Dr. Sample) at 4, 13; *see also Lead*, Nat'l Inst. of Env't Health Sci., https://www.niehs.nih.gov/health/topics/agents/lead ("Health effects [such as diminished IQ scores and academic achievement, and increased behavioral problems and attention-related behaviors] are found at blood lead levels of less than 5 [mc]g/dL."). And Dr. Bithoney, again, explains that a child who drinks approximately four glasses of water containing 10 ppb would consume 10 mcg of lead in a single day, 50-100% of which would be absorbed in the bloodstream. As such, a child who consumed 4 glasses of Flint water for approximately three (3) months would have absorbed between 450 mcg and 900 mcg, dispersed over approximately 1.5 liters of blood. *See* Ex. E, (Dr. Bithoney Rebuttal Report) at 6. Thus, there is sufficient evidence to quantify a level of exposure above the threshold of injury. *See Gass v. Mariott Hotel Servs.*, 558 F.3d 419, 431 (6th Cir. 2009) ("Plaintiffs may survive summary judgment if a reasonable jury could find that it is

more likely than not that Defendants caused Plaintiffs to be exposed to a sufficient quantity of a hazardous substance capable of causing their injuries.").

The above demonstrates that a jury could find that Plaintiffs' exposure to lead-contaminated water after Veolia arrived was sufficient to cause or contribute to Plaintiffs' injuries, and therefore, summary judgment should be denied.

### B. Exact Allocation is Not Necessary to Prove Causation

Veolia's argument that Plaintiffs cannot rely on a theory that "all exposures contributed to a cumulative exposure" also fails. Br. at 18 (internal quotations omitted). As set forth above, Plaintiffs are not relying on that theory in lieu of actual evidence as to causation. Nor, however, does the fact that injuries from lead exposure are indivisible and cumulative in nature mean that Plaintiffs have failed to create a genuine issue of fact as to causation. *See* Ex. G, (Excerpts of Dr. Bithoney Deposition) at 138:8-11 ("Every time you give that child more lead in any form, that's a new poisoning. It cannot be parsed out. It's indivisible from the earlier lead in terms of its toxic effects."); *see Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc*., 451 F. Supp. 1230, 1239 (E.D. Mich. 1978) ("A plaintiff's inability to fix the exact time when each injury occurred **does not** preclude liability in a case where such injuries are **cumulative** and **progressive**, and **cannot be apportioned between given points or periods of time.**" (emphasis added)), *aff'd*, 633 F.2d 1212, 1220 (6th Cir. 1980) ("Cumulative disease cases are different from the ordinary accident

or disease situation."), *modified on other grounds*, 657 F.2d 814, 815 (6th Cir. 1981) (discussing the application of the Sixth Circuit's decision to mesothelioma and bronchiogenic carcinoma); *Brisboy v. Fibreboard Corp.*, 429 Mich. 540, 549 (1988) ("It was also established that the effect of exposure to asbestos dust is cumulative, that is, each exposure may result in an additional and separate injury.").

For this reason, it is also of no moment that Plaintiffs' experts testified that they did not attempt to apportion the exact amount leaded water consumed or the amount of harm that occurred,[16] especially in light of the fact that they had sufficient evidence from which to opine that the Bellwether III children were exposed to enough lead in 2015 to cause or contribute to their injuries. *See* Ex. E, (Dr. Bithoney Rebuttal Report) at 5–6; *see In re Flint Water Cases*, 579 F. Supp. 3d at 985 ("Plaintiffs must show that [] lead poisoning in 2015 caused or contributed to their injuries.").

Additionally, Veolia misrepresents the law on this matter. Br. at 18. *Krik v. Exxon Mobil Corp.*, 870 F.3d 669 (7th Cir. 2017) is not binding, nor does it create the bright-line rule regarding cumulative exposure that Veolia claims. In *Krik*, the Court rejected a cumulative exposure theory because plaintiffs "attempted to

---

[16] While Veolia labels these statements as "admissions", Plaintiffs' experts clearly explain this exact apportionment calculation is unnecessary to opine that the 2015 exposure caused harm. *See* Ex. G, (Excerpt of Dr. Bithoney Deposition) at 462:3-15 ("The injuries [from lead] are additive and indivisible.").

repackage" the experts' opinion that 'any amount of exposure' is sufficient, which had been previously barred "as being based on a 'cumulative exposure' theory." 870 F.3d *at* 675. The expert in *Krik* had been excluded, not because of his comments regarding cumulative exposure, but because he did not offer any expert testimony as to how much exposure the plaintiff was subjected to whether such exposure was sufficient to cause injury. *See Krik v. Crane Co.*, 76 F. Supp. 3d 747, 752 (N.D. Ill. 2014).

Overall, Plaintiffs have shown that there is sufficient evidence to defeat summary judgment and submit the question of causation to the jury. Deposition testimony of Plaintiffs' parents confirmed that each child had continued exposure to lead-contaminated water through 2015. Calculations and testimony by Dr. Bithoney explain that this level of exposure is sufficient to cause injury. Therefore, Plaintiffs have raised a genuine issue of material fact as to causation which should be submitted to the jury for review. *See Good v. BioLife Plasma Servs., L.P.*, 834 F. App'x 188, 199 (6th Cir. 2020) ("Only when the matter remains one of pure speculation and conjecture or there is no issue of material fact, may the court decide the question [of causation]." (internation quotations omitted)).

## CONCLUSION

Accordingly, the Court should deny Veolia's motion for summary judgment.


Dated:        May 28, 2024                     Respectfully submitted,


**LEVY KONIGSBERG LLP**                        **NAPOLI SHKOLNIK PLLC**

/s/Corey M. Stern                              /s/ Hunter J. Shkolnik
Corey M. Stern                                 Hunter J. Shkolnik
Melanie Daly                                   Paula Napoli
Kiersten Holms                                 Patrick Lanciotti
605 Third Ave., 33rd Floor                     360 Lexington Ave., 11th Floor
New York, New York 10158                       New York, New York 10017
(212) 605-6298                                 (212) 397-1000
cstern@levylaw.com                             hunter@nsprlaw.com

### *ATTORNEYS FOR PLAINTIFFS*

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

*/S/ MELANIE DALY*
Melanie Daly
