# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

___

**REPLY IN SUPPORT OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND TESTIMONY OF DR. WILLIAM G. BITHONEY**

# INTRODUCTION

VNA explained that some of Dr. Bithoney's general-causation opinions (that lead is capable of causing certain conditions) lack supporting evidence. In response, Plaintiffs concede that Dr. Bithoney did not identify studies establishing a causal connection between lead and the conditions. Plaintiffs' attempts to nonetheless salvage his opinions are foreclosed by the Court's Bellwether I order.

VNA also explained that Dr. Bithoney's specific-causation opinions (that lead in fact caused Plaintiffs' claimed injuries) are unreliable because Dr. Bithoney failed to identify the level of lead exposure required to cause those injuries and because he did not conduct an adequate differential etiology. Plaintiffs again fail to salvage Dr. Bithoney's opinions: they fail to point to any reliable assessment by Dr. Bithoney of Plaintiffs' actual exposure to lead, and their responses regarding his differential etiology overlook key flaws and rely on incorrect legal standards.

# ARGUMENT

**I.    Certain General-Causation Opinions Are Unreliable**

Dr. Bithoney did not identify any scientific studies establishing a causal relationship between lead and ███████████████████████████████████

███████████████████████████████████

██████. Br. in Supp. of VNA Mot. to Exclude Bithoney (VNA Br.) 10-12, ECF No. 2914, PageID.97777-97779. Plaintiffs concede this. Pls. Opp. to VNA Mot. to Exclude Bithoney (Opp.) 6-8, ECF No. 2972, PageID.99999-100001.

1

Plaintiffs' concession is dispositive. An expert may not testify that a toxin can cause a disease if the expert relies solely on "studies that do not address" that disease. *Nelson v. Tenn. Gas Pipeline Co.*, 1998 WL 1297690, at *7 (W.D. Tenn. Aug. 31, 1998), *aff'd*, 243 F.3d 244 (6th Cir. 2001). The Court correctly applied this principle in Bellwether I. Order Denying VNA Mot. to Exclude Bithoney (Bithoney BWI Order) 18-20, No. 17-cv-10164, ECF No. 487, PageID.36881-36883. There, Dr. Bithoney failed to cite any sources establishing a causal link between lead and mood disorder or mild neurocognitive disorder. *Id.* The Court accordingly excluded his general-causation opinions as to those diagnoses. *Id.* Dr. Bithoney's opinions here suffer from the same defects.

Plaintiffs misconstrue the Court's Bellwether I order, arguing that "the principal reason for the Court's ruling was that it found that Dr. Bithoney had not actually opined . . . that lead exposure causes either condition." Opp. 7, PageID.100000. Although the Court acknowledged that Dr. Bithoney had not adequately disclosed those opinions, the Court *also* concluded that the opinions were unreliable, stating that "[t]o the extent Dr. Bithoney intended to offer [opinions about those diagnoses], however, [they are] not supported by the evidence he cites." Bithoney BWI Order 18-19, PageID.36882-36883.[1]

---

[1] The Court's Bellwether I order is no outlier. Courts routinely conclude that general-causation experts may not extrapolate that a toxin can cause one disease based on studies demonstrating that the toxin can cause a *different* disease. *See, e.g.*,

2

Plaintiffs argue that Dr. Bithoney did not need to cite any studies linking the diagnoses listed above to lead exposure because those conditions are "encompassed by" entirely different medical diagnoses that are supposedly caused by lead exposure. Opp. 8, PageID.97775. But the Court expressly rejected this argument in Bellwether I. The Court noted that Dr. Bithoney cited evidence demonstrating that lead could cause "characteristic symptoms" of mood disorder and mild neurocognitive disorder. Bithoney BWI Order 20, PageID.36883. The Court nevertheless excluded his opinions because he cited no studies "to the effect that these particular diagnoses are known to be caused by lead poisoning." *Id*. This reasoning applies with equal force here.

## II. Dr. Bithoney's Specific-Causation Opinions Are Unreliable

### A. Dr. Bithoney Failed To Identify Plaintiffs' Lead Exposure Levels

A specific-causation expert must identify the level of exposure to a toxin that is sufficient to cause the condition at issue. VNA Br. 10-12, PageID.97777-97779. Plaintiffs do not dispute that Dr. Bithoney did not do so for many of Plaintiffs' claimed injuries. *Id*. These opinions thus are unreliable. *Id*.

Dr. Bithoney also did not identify the level of lead exposure required to cause the *magnitude* of the injuries that Plaintiffs claim. For example, Dr. Bithoney

---

*Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1202 (11th Cir. 2002); *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352-53 (5th Cir. 2007).

3

attributes to lead exposure certain Plaintiffs' diagnoses of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. VNA Br. 11-12, PageID.97778-97779. But he cited no evidence that the low levels of lead exposure claimed here were capable of causing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.*

Plaintiffs do not dispute this point or substantively address VNA's argument, instead arguing that lead exposure at certain levels can cause some amount of ▇▇▇▇▇▇▇▇▇. Opp. 13, PageID.100006. That is beside the point. Dr. Bithoney failed to adequately demonstrate that "the level" of Plaintiffs' exposure to lead "could cause" the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.*, 333 Mich. App. 234, 252 (2020). His opinions thus are unreliable.

Plaintiffs contend that VNA is demanding that Dr. Bithoney provide "precise numbers about a dose-response relationship." Opp. 13-14, PageID.100006-100007. That is wrong. VNA's argument is that Dr. Bithoney ignores the well-established principle that "a substance may be harmful at a certain level of exposure but may not be sufficient to cause a particular adverse health effect." *Lowery v. Enbridge Energy Ltd. P'ship*, 500 Mich. 1034, 1044 (2017). Without evidence linking the claimed amount of lead that Plaintiffs were exposed to with the magnitude of their alleged injuries, Dr. Bithoney's opinions are unreliable.

Dr. Bithoney's opinions also are unreliable because they are not based on reliable assessments of Plaintiffs' actual exposure to lead during Flint's water crisis. VNA Br. 12, PageID.97779. First, Dr. Bithoney does not cite any direct evidence that Plaintiffs consumed water that contained elevated lead levels—instead, he points to studies demonstrating that a majority of homes in Flint *did not* have elevated water lead levels. *Id.* In their brief, Plaintiffs highlight Dr. Bithoney's reliance on FAST Start data and home inspection reports, but those sources do not substantiate his opinions. Opp. 16, PageID.100009. They show that the pipes in Plaintiffs' homes either (1) were not inspected; (2) did not need to be replaced; or (3) *may* have contained some indiscernible amount of lead at some point. VNA Mot. Ex. 9, Rebuttal Report 10-13, ECF No. 2913-11. That is insufficient. *Id.* at 12-13.

Second, Plaintiffs do not dispute that each Plaintiff's ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌. *See* VNA Br. 14-15, PageID.97781-97782. They acknowledge that Dr. Bithoney's opinions regarding Plaintiffs' lead exposure rely on Dr. Specht's bone scan measurements. Opp. 16-18, PageID.100009-100011. But those measurements are unreliable for the reasons explained in VNA's *Daubert* motion on that issue. Dr. Bithoney's opinions thus lack adequate foundation.

### B. Dr. Bithoney Did Not Conduct Reliable Differential Etiologies

Dr. Bithoney conducted unreliable differential etiologies by failing to adequately rule out alternative causes of Plaintiffs' conditions. VNA Br. 18-25,

5

PageID.97785-97792. Dr. Bithoney admitted that many of Plaintiffs' conditions are associated with a wide range of causes and that he failed to rule out all of those causes. *Id.* at 20, PageID.97787. As Plaintiffs acknowledge, Dr. Bithoney ruled out only what, in his view, were "reasonable alternative causes for these conditions." Opp. 22, PageID.100015. But an expert's bare assertions that he ruled out all reasonably plausible causes are inadequate. VNA Br. 21, PageID.97788.

Further, Dr. Bithoney did not explain how he ruled out the possibility that Plaintiffs' deficits were the result of their preexisting conditions. *See* VNA Br. 20, PageID.97787. Plaintiffs do not dispute this point at all. But Dr. Bithoney's failure to "rule out alternative causes for [Plaintiffs'] illness[es], including [] preexisting [conditions]," renders his testimony unreliable. *Kolesar v. United Agri Prod., Inc.*, 246 F. App'x 977, 981 (6th Cir. 2007).

Dr. Bithoney's differential etiologies also are inadequate because he conducted only a standard patient history of the type used in clinical settings. VNA Br. 21-22, PageID.97788-97789. Under Sixth Circuit law, such an approach, without more, is inadequate for the purpose of proving the cause of a disease in court. *Id.* (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 673 (6th Cir. 2010)). Plaintiffs argue that Dr. Bithoney's approach is sufficient, Opp. 21, PageID.100014, but the case on which they rely is inapposite because the expert there employed a methodology that "reliably ruled out most alternative causes," *Tamraz*, 620 F.3d at

6

675 (discussing and distinguishing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009)). Dr. Bithoney did not do that here. VNA Br. 19-22, PageID.97786-97789.

Dr. Bithoney's differential etiologies also are unreliable because he failed to reliably rule out the possibility that Plaintiffs' alleged injuries were caused by alternative sources of lead exposure. VNA Br. 23-25, PageID.97790-97792. He admitted that Plaintiffs could have been exposed to lead from a variety of sources other than Flint water, both before and after the water source switch. *Id.* But Dr. Bithoney merely asserted that the potential alternative causes were "irrelevant" and "do not matter." *Id.* at 24, PageID.97791 (citation omitted). Plaintiffs do not address Dr. Bithoney's admissions to this effect. These admissions render his opinions inadmissible because an expert cannot testify to specific causation unless the expert has reliably concluded "that any alternative cause suggested by the defense was not the sole cause" of the alleged injury. *Best*, 563 F.3d at 179.[2]

## CONCLUSION

The Court should exclude the challenged opinions.

---

[2] Plaintiffs argue that the jury should be left to parse Dr. Bithoney's differential-etiology opinions even if they are flawed. Opp. 23, PageID.100016. But when, as here, an expert "fails to take serious account of other potential causes," that expert "cannot provide a reliable basis for an opinion on causation." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 265 (4th Cir. 1999); *see Tamraz*, 620 F.3d at 674. The proper remedy is preclusion, not cross-examination.

7

|  | Respectfully submitted, |
|---|---|
| **CAMPBELL, CONROY & O'NEIL P.C.** | **MAYER BROWN LLP** |
| By: /s/ *James M. Campbell* | By: /s/ *Michael A. Olsen* |
| James M. Campbell | Michael A. Olsen |
| Alaina N. Devine | 71 S. Wacker Dr. |
| 20 City Square, Suite 300 | Chicago, IL 60606 |
| Boston, MA 02129 | (312) 701-7120 |
| (617) 241-3000 | molsen@mayerbrown.com |
| jmcampbell@campbell-trial-lawyers.com | |
| adevine@campbell-trial-lawyers.com | |

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated: May 31, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

/s/ *James M. Campbell*