# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-EAS <br> Hon. Judith E. Levy, District Judge |
| This Document Relates To: <br> BELLWETHER III | Case No. 5:17-cv-11166-JEL-KGA |

---

# REPLY IN SUPPORT OF DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS AND RELATED TESTIMONY OF JENNIFER SAMPLE, M.D.

**INTRODUCTION**

Dr. Jennifer Sample seeks to testify that various disorders diagnosed by Plaintiffs' neuropsychologists, Drs. Jourdan and Hoffman, all were caused by Plaintiffs' exposure to lead-contaminated drinking water that they ingested during the Flint water crisis.  As Plaintiffs note, VNA "does not contest Dr. Sample's qualifications to testify."  Pls. Opp. to VNA Mot. to Exclude Sample (Opp.) 3, ECF No. 2973, PageID.100058.  Yet much of Plaintiffs' brief uses Dr. Sample's qualifications as a response to VNA's arguments.  That is nonresponsive:  despite her qualifications, her opinions are unreliable and should be excluded.

**ARGUMENT**

**I.      Certain Of Dr. Sample's General-Causation Opinions Are Unreliable.**

The Court should exclude Dr. Sample's opinions that lead exposure is capable of causing ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

because she fails to cite evidence sufficient to support those opinions.  Br. in Supp. of VNA Mot. to Exclude Sample (VNA Br.) 1-25, ECF No. 2915, PageID.97846-97877.  Plaintiffs respond that Dr. Sample omitted reference to any literature connecting Plaintiffs' specific diagnoses to lead "in the interest of brevity."  Opp 6, PageID.100061.  They concede, however, that there are "no specific studies link[ing] ▬▬▬▬▬▬ to 'exposures below 5 micrograms per deciliter in blood,'" *id*. at 16,

1

PageID.100071, that "there was no study specifically focused on the connection between lead and ████████████████," *id.*, and that Dr. Sample could likewise find no study linking lead exposure to ████████████████, *id.* Plaintiffs also admit that Dr. Sample cited no studies linking lead exposure to either ████████████████ or ████████████████—asserting that these conditions "fall within" certain broad categories of conditions "covered by Dr. Sample in her rebuttal report." *Id.* at 15, 17, PageID.100070, 100072.

That is insufficient. An expert must explain the relationship between "characteristic symptoms" of particular conditions and the diagnosis of these conditions. Order Denying VNA Mot. to Exclude Bithoney (Bithoney BWI Order) 20, No. 17-cv-10164, ECF No. 487, PageID.36883. Dr. Sample failed to do that. The studies she cited do not reference Plaintiffs' specific diagnoses, and her reports do not explain either what data she relied upon or how she used that data to support her opinion that lead is capable of causing those diagnoses. *See* Opp. 7-9, PageID.100062-100064. Her general-causation opinions should be excluded.

## II. Dr. Sample's Specific-Causation Opinions Are Unreliable And Inadmissible

### A. Dr. Sample Did Not Conduct The Required Dose Assessment

An expert's specific-causation opinion in a toxic-tort case must be based on a reliable and specific assessment of the plaintiff's exposure to the toxin in question. *Powell-Murphy v. Revitalizing Auto Cmtys. Env't Response Tr.*, 333 Mich. App. 234,

250 (2020).  But Dr. Sample did not conduct a dose assessment for any Plaintiff.

Plaintiffs say that failure "merely go[es] to the weight that should be given to Dr.

Sample's testimony," Opp. 18, PageID.100073, but they are wrong:  it makes her

testimony inadmissible, *see Adams v. Cooper Indus., Inc.*, No. 03-476, 2007 WL

2219212, at *7-8 (E.D. Ky. July 30, 2007).

Plaintiffs argue that "evidence of the precise level of chemical exposure is not

necessary when other evidence supports the claim."  Opp. 19, PageID.100074.  But

the case they cite for that proposition involved sudden exposures to large quantities

of a toxin that, unlike lead, is not ubiquitous.  *See, e.g.*, *Sunnycalb v. CSX Transp.,*

*Inc.*, 926 F. Supp. 2d 988, 993-94 (S.D. Ohio 2013).  Here, by contrast, Dr. Sample

provided no specific evidence that the Plaintiffs faced any additional exposures to

lead during the water crisis at all.  *See* VNA Br. 11-12, PageID.97863-97864.

In particular, the single population-wide study invoked by Dr. Sample

provides no data about the amount of lead in any Plaintiff's tap water.  *See* VNA

Br. 12-14, PageID.97864-97866.  Plaintiffs now assert that Dr. Sample "explained

in detail how she relied on all available data to estimate the amount of lead each

Plaintiff was exposed to."  Opp. 18, PageID.100073.  That simply is untrue:  that

information appears nowhere in her reports or testimony.

**B.**     **Dr. Sample Did Not Cite Reliable Evidence About The Level Of Exposure Necessary To Cause Plaintiffs' Injuries**

Under Michigan law, a causation expert must have a basis for concluding that

the plaintiff's degree of exposure was sufficient to cause his or her conditions. *See Powell-Murphy*, 333 Mich. App. at 249-50. Dr. Sample relied on bone lead measurements to assess Plaintiffs' degree of exposure. As VNA has explained, Dr. Sample provided no evidence that the degree of lead exposure associated with Plaintiffs' bone lead levels is capable of causing their injuries. *See* VNA Br. 16-18, PageID.97868-97870. Plaintiffs' only response is to contend that this is a jury issue, Opp. 18, PageID.100073, but a specific-causation opinion is inadmissible if it is unsupported by scientific studies demonstrating the degree of exposure necessary to cause the plaintiff's condition, *see* VNA Br. 16, PageID.97868.

Left without any basis in the scientific literature to support her specific-causation opinions, Dr. Sample asserts that there is "no safe level" of lead exposure. *E.g.*, Ex. 2, Dep. (10/2/23) 98:10-13. Just as it did in the first bellwether case, this Court should exclude testimony by Dr. Sample that any exposure to lead is inherently harmful and should also exclude her specific-causation opinions because they are likewise rooted in that assumption. Bithoney BWI Order 21, PageID.36884.

## C.   Dr. Sample's Differential Etiology Is Insufficient

A causation expert also must identify and rule out "all relevant potential . . . alternative causes" of Plaintiffs' conditions, including both other sources of potential exposure to lead and causes other than lead. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 678 (6th Cir. 2011). Dr. Sample did neither.

1.      **Dr. Sample Did Not Adequately Assess Whether Alternative Sources Of Lead Exposure Could Be Responsible For Plaintiffs' Conditions**

Plaintiffs assert that "Dr. Sample engaged in an extensive analysis of alternative sources of lead." Opp. 20, PageID.100075. Yet she did not evaluate whether Plaintiffs were exposed to lead in 2011, *id.*, despite evidence of a spike in lead levels in Flint that year. *See* Siddhartha Roy, *et al.*, *Lead release to potable water during the Flint, Michigan water crisis as revealed by routine biosolids monitoring data*, 160 Water Research 475, 479 (2019), ECF No. 2928-2, PageID.98673. Instead, Dr. Sample merely relied on her understanding that, prior to April 2013, homes in Flint did not have lead in their tap water. Ex. 3, Dep. (10/3/23) 480:18-20. She testified that she did not "go back in time" and conduct an analysis that considered the possibility that Plaintiffs living in Flint in 2011 were exposed to lead "because [she] d[id]n't know what those exposures were." Ex. 2, Dep. (10/2/23) 303:10-12.

Further, as VNA noted, Dr. Sample expressly stated that she "assume[d]" that tap water did not have lead in it "[b]ecause most tap water is not supposed to have lead in it." VNA Br. 21, PageID.97873. Plaintiffs argue that that Dr. Sample was referring only ███████████████. Opp. 20-21, PageID.100075-100076. That misses the point. If she was willing to just "assume" away tap water as a source of lead ████████████████████████████████, it is a fair inference that

she did the same with respect to children who were living in Flint during the 2011 spike. Indeed, nothing in her reports or testimony suggests that she accounted for that spike.

As for Plaintiffs' assertion that Dr. Sample "addressed" her "failure to adequately assess potential alternat[ive] sources of lead exposure" for J.S. in her rebuttal report, Opp. 21, PageID.100076, that report says simply that ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████ VNA Mot., Ex. 12, Rebuttal Report 26, ECF No. 2913-24. Again, however, Dr. Sample's baseless assumption that ███████████████████████████████ infects her analysis, rendering it unreliable. ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████ Dep. (10/3/23) 328:7-9; 330:6-11. That is the opposite of the rigorous analysis required under *Powell-Murphy*.

## 2. Dr. Sample Did Not Conduct A Sufficient Analysis Of Alternative Causes Of Plaintiffs' Conditions

A specific-causation expert must "'reliably rule out' . . . causes other than the toxic exposure." Bithoney BWI Order 32, PageID.36895 (citing *Pluck*, 640 F.3d at 678). Dr. Sample did not do that either. *See* VNA Br. 22-25, PageID.97874-97877.

Plaintiffs assert that Dr. Sample conducted a "careful explanation of how she *did* employ" a "standard methodology . . . to sift through and carefully consider possible alternate causes." Opp. 21, PageID.100076.  Yet Plaintiffs concede that Dr. Sample "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████." *Id*. at 24, PageID.100079.  Dr. Sample likewise ████████████████████████████ ███████████████████████████████. Dep. (10/3/23) 457:11-13. ███████████████████ ██████████████████████████████████████████████████████████ ██████████ Dep. (10/3/23) 339:23-340:4.

In other words, Dr. Sample did not even gather the information necessary to investigate other potential causes of Plaintiffs' injuries.  This does not merely raise a fact issue for the jury, but instead speaks directly to the unreliability of Dr. Sample's work.  "The purpose of the Court's gatekeeping function is to exclude expertise that is *fausse* and science that is junky."  Bithoney BWI Order 33, PageID.36896 (internal quotation marks omitted).  This Court should exercise that gatekeeping function here to exclude Dr. Sample's unreliable specific-causation opinions.  *See* VNA Br. 24-25, PageID.97876-97877 (citing case law).

## CONCLUSION

The Court should exclude the opinions and testimony of Dr. Jennifer Sample that are discussed above.

7

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**    **MAYER BROWN LLP**

By: */s/ James M. Campbell*                By: */s/ Michael A. Olsen*
James M. Campbell                          71 S. Wacker Dr.
Alaina N. Devine                           Chicago, IL 60606
20 City Square, Suite 300                  (312) 701-7120
Boston, MA 02129                           molsen@mayerbrown.com
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  May 31, 2024

8

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*