UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re* Flint Water Cases.

_____/

Judith E. Levy
United States District Judge

This Order Relates To:

*Bellwether III Cases*

_____/

# OPINION AND ORDER DENYING VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO EXCLUDE CERTAIN OPINIONS OF GARY M. CRAKES, PH.D. [2908]

This opinion is the second in a series addressing the admissibility of the testimony and reports of experts retained in anticipation of the next Flint water jury trial, referred to as Bellwether III, set to begin on October 8, 2024.

Currently before the Court is Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC's (collectively, "VNA") Motion to Exclude Certain Opinions of Gary M. Crakes, Ph.D. ("Motion"). (ECF No. 2908.) Bellwether III

Plaintiffs Y.A., E.A., G.B., C.D., R.E., J.N., and J.S. ("Plaintiffs" or "Bellwether III Plaintiffs") were all minor children at the time of the Flint water crisis, and they oppose the motion. (ECF. No. 2937). VNA replied to Plaintiffs' submission. (ECF No. 2948-2.) For the reasons set forth below, the Motion is denied.

## I. Background

The Court's ruling on a similar motion from Bellwether I describes Dr. Crakes as follows:

> Dr. Gary Crakes is Plaintiffs' damages expert. He has two advanced degrees in economics and is currently an economic consultant at Maher, Crakes, and Associates. (ECF No. 367-2, PageID.23141.) He holds an emeritus professorship at Southern Connecticut State University and has appeared as a damages expert in thousands of lawsuits. His qualifications as an expert are undisputed.

*Sherrod, Teed, Vanderhagen & Ware v. VNA,* No. 5:17-cv-10164, 2022 WL 422158, at *1 (E.D. Mich. Feb. 11, 2022) ("*Crakes I*").

Dr. Crakes provides a report for each Plaintiff that addresses economic damages. Each report includes multiple scenarios estimating loss of earning capacity based on different possible educational outcomes the Plaintiff might achieve. Each scenario involves calculating the difference between lifetime earning potential when the Plaintiff is

2

"impaired" due to lead exposure and lifetime earning potential when the same Plaintiff is "unimpaired." To formulate different lost earnings estimates, Dr. Crakes relies on opinions about each Plaintiffs' likely educational outcomes offered by Plaintiffs' other experts, Dr. Jourdan and Dr. Hoffman, in addition to relying upon "data from the U.S. Department of Health and Human Services and the U.S. Department of Labor [and] incorporat[ing] the value of fringe benefits and a 3.5% annual growth rate." (ECF No. 2937, PageID.99082.) Dr. Crakes calculates the difference between impaired and unimpaired scenarios as

> *potential* lost earning scenarios for each Bellwether III child. He did not, however, provide an opinion as to the likelihood that Plaintiffs will encounter one loss earning scenario over another. Nor does he opine on which educational attainment scenario is more likely than another.

*Id.* (emphasis in original). Dr. Crakes analyzes possible economic damages scenarios Plaintiffs may face over the course of their lifetimes. To consider the likelihood of each of those possible scenarios, the factfinder must look at opinions offered by other experts, such as Dr. Jourdan and Dr. Hoffman.

3

The Court has already decided two rounds of *Daubert* motions in anticipation of the Bellwether I and the Issues Class trials, amounting to seventeen rulings in total. It also considered *Daubert* challenges to experts at the time it certified the Issues Class. *See In re Flint Water Cases*, 558 F. Supp. 3d 459, 523–25 (E.D. Mich. 2021) (deciding two *Daubert* motions out of over a dozen *Daubert* motions VNA filed at the class certification stage). The Court decided a *Daubert* motion related to Dr. Crakes prior to the Bellwether I trial. *Crakes I*, 2022 WL 422158, at *1. Given the Court's familiarity with these experts, it ordered the Parties not to repeat arguments already made and instead ordered them to preserve arguments the Court had already considered by reference to those arguments in earlier filings.[1] (ECF No. 2901, PageID.95084.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires that: (1) the witness must be qualified, (2) the testimony must be relevant, and (3) the testimony must be reliable. Fed.

---

[1] VNA preserves certain arguments for appeal in its motion. (ECF No. 2908, PageID.95861.) Having already ruled on these arguments, the Court will not revisit them now.

4

R. Evid. 702; *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008). As the Supreme Court explained in *Daubert v. Merrell Dow Pharms.*, Rule 702 imposes a "gatekeeping" obligation on the courts to ensure that scientific testimony "is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In *Daubert,* the Supreme Court provided a non-exclusive list of factors courts may consider when evaluating reliability: (1) whether the theory or technique at the basis of the opinion is testable or has been tested, (2) whether it has been published and subjected to peer review, (3) what the known error rates are, and (4) whether the theory or technique is generally accepted. *Daubert*, 509 U.S. at 593; *see also In re Scrap Metal*, 527 F.3d at 529 (listing same factors). Not every factor needs to be present in every instance, and courts may adapt them as appropriate for the facts of an individual case. *Kumho*, 526 U.S. at 150.

"Rejection of expert testimony is the exception, rather than the rule." *United States v. LaVictor,* 848 F.3d 428, 442 (6th Cir. 2017) (quoting *In re Scrap Metal*, 527 F.3d at 529–30)). The burden is on Plaintiffs to show by a "preponderance of proof" that the proffered expert

5

meets the standards of Rule 702 as interpreted by *Daubert*. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (quoting *Daubert*, 509 U.S. at 592).

### III. Analysis

VNA argues that the Court should exclude

> at least two of Dr. Crakes's lost-earnings scenarios for each of the plaintiffs in Bellwether III because there is no evidence to support one or both of the educational-attainment assumptions on which the scenarios are based. In particular, the assumptions on which these scenarios are based are contrary to Dr. Hoffman's and Dr. Jourdan's opinions about the Plaintiffs' impaired or unimpaired educational attainment.

(ECF No. 2908, PageID.95861.) VNA goes through each Plaintiff and argues that certain scenarios considered by Dr. Crakes involve facts that are inconsistent with opinions from Dr. Jourdan and Dr. Hoffman about what each Plaintiffs' likely educational attainment will be. (*Id.* at PageID.95866–95874.)

For example, regarding one Plaintiff, Dr. Crakes considers "impaired" scenarios where that Plaintiff earns a 9th to 12th grade education without graduating from high school. Dr. Hoffman's opinion, however, is that this Plaintiff is unlikely to achieve academically beyond

6

12th grade. Dr. Jourdan states that individuals like this Plaintiff are generally able to graduate from high school, but there is an elevated risk of dropping out. VNA objects to the gap between Dr. Hoffman and Dr. Jourdan's opinions about what is most likely (graduation from high school) and Dr. Crakes' consideration of scenarios where this Plaintiff does not graduate from high school. It asserts that "[t]here is no evidentiary support for [Dr. Crakes'] assumption" and therefore [his] consideration of scenarios where this Plaintiff does not graduate from high school should be excluded. (*Id.* at PageID.95867.) VNA argues for the exclusion of a total of 25 of Dr. Crakes' lost-earnings opinions, four of which Plaintiffs have withdrawn. (*See* ECF No. 2948-2, PageID.99213 (citing ECF No. 2937, PageID.99088).)

Plaintiffs note that VNA presented a similar argument to the Court prior to the Bellwether I trial. (ECF No. 2937, PageID.99084.) There the Court rejected VNA's argument that Dr. Crakes' methodology was unreliable, because he "failed to rely on any objective evidence about Plaintiffs['] educational potential." *Crakes I*, 2022 WL 422158, at *2.

In *Crakes I*, the Court stated:

7

> Dr. Crakes is Plaintiffs' *damages* expert. He will not offer any opinion about the likelihood Plaintiffs will achieve either the impaired or unimpaired outcomes. Indeed, Dr. Crakes offers no opinion whatsoever about Plaintiffs' educational attainments. That is not his role. . . . Dr. Crakes properly relied on [other experts'] representations and attached a numerical value to each possible outcome, without offering any testimony about which outcome is the most likely.

*Id.* Given that Dr. Crakes is not opining about which outcomes are likely, the Court also held that the jury could hear testimony from Dr. Crakes, as well as testimony from Plaintiffs' other experts who would offer opinions about Plaintiffs' likely levels of educational attainment. *Id.* at *2 n.2 ("The jury will hear this testimony, and it will be able to adjust damages awards appropriately.").

VNA attempts to distinguish its arguments here from its earlier challenge to Dr. Crakes' opinions, because in Bellwether I it challenged the reliability of Dr. Crakes' entire methodology and here VNA questions the factual basis of specific opinions Dr. Crakes offers. (ECF No. 2948-2, PageID.99212.) VNA provides objections that are "specific to the Bellwether III record." (*Id.*) Even so, these arguments fail.

VNA is arguing that Dr. Crakes' opinions are speculative, because he provides estimates of lost earnings that Plaintiffs' other experts do not

8

state are the most likely outcomes. Essentially, its argument is that any estimates that are not based on the most likely scenarios, as presented by Plaintiffs' other experts, are speculative. That argument misunderstands the applicable law regarding expert testimony about estimates of lost earnings.

In *Daubert*, the Supreme Court contrasts "unsupported speculation" and "subjective belief" with scientific knowledge, which is "derived by the scientific method" and is "supported by appropriate validation—*i.e.,* 'good grounds,' based on what is known." 509 U.S. at 589–90. The Sixth Circuit has considered what counts as speculative for experts opining about future earnings:

> Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule of Evidence 702 if based on "unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589–90, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Such testimony should be excluded if it is based on "unrealistic assumptions regarding the plaintiff's future employment prospects," *Boucher v. U.S. Suzuki Motor Corp.,* 73 F.3d 18, 21 (2d Cir. 1996), or "facts that [a]re clearly contradicted by the evidence," *Boyar v. Korean Air Lines Co.,* 954 F. Supp. 4, 8–9 (D.D.C. 1996). In *Boucher,* for example, the court held that an expert's figures for pre-injury earning capacity based on full-time employment, fringe benefits, and annual raises should

9

have been excluded because the plaintiff's actual employment history had been "seasonal and intermittent." 73 F.3d at 22.

*Andler v. Clear Channel Broadcasting, Inc.*, 670 F.3d 717, 727 (6th Cir. 2012).

As the Court explained in its previous ruling on Dr. Crakes, he does not opine about the likelihood of various outcomes. *Crakes I*, 2022 WL 422158, at *2. Instead, he calculates damages for various *possible* scenarios without expressing a view on how likely those scenarios are. Further, insofar as the scenarios Dr. Crakes considers are not identical to the outcomes Dr. Jourdan and Dr. Hoffman opine are *most likely*, Dr. Crakes' opinions do not lack support. The Sixth Circuit does not impose the strict standard VNA advocates for the Court to adopt, which appears to require excluding as speculative any opinion about potential economic loss that is not based on the most likely scenario as presented by a litigant's experts. *See Andler*, 670 F.3d at 729. The law only requires that an opinion about economic loss must not be "unrealistic" or "clearly contradicted by the evidence." *Id.* at 727. If Dr. Crakes opined about a scenario involving outcomes Dr. Jourdan and Dr. Hoffman stated were *impossible* or *nearly impossible*, that would have to be excluded. That is

10

not what Dr. Jourdan and Dr. Hoffman conclude regarding the scenarios that Dr. Crakes sets forth in his expert reports, however. Dr. Jourdan uses probabilistic language, discussing risks, likelihoods, and typical outcomes facing Plaintiffs. (*See, e.g.*, ECF No. 2906-23, PageID.95585; 2906-25, PageID.95609.) Dr. Hoffman does as well, offering opinions about Plaintiffs' abilities and predicting likely outcomes based on them, as well as opining about likely outcomes in the absence of Plaintiffs' impairments. (*See, e.g.*, ECF No. 2906-14, PageID.95452; ECF No. 2906-16, PageID.95505.) Dr. Jourdan and Dr. Hoffman do not state—nor do they even implicitly imply—that the scenarios considered by Dr. Crakes are impossible, nearly impossible, unrealistic, or contradicted by the evidence they consider.

For example, VNA objects to Dr. Crakes' consideration of an impaired scenario where one of the Plaintiffs achieves a 9th to 12th grade education without graduating high school. Dr. Hoffman indicates that this Plaintiff is unlikely to progress beyond 12th grade while Dr. Jourdan indicates that individuals like this Plaintiff are generally able to graduate high school and succeed at college, although they may have reduced college graduation rates. Dr. Hoffman and Dr. Jourdan's

11

opinions about the most likely educational outcomes for this Plaintiff are quite close to the scenario that Dr. Crakes considers. To the extent that Dr. Crakes considers scenarios that diverge from those that other experts believe are most likely, it is not to a significant degree. It would be "unrealistic speculation" if Dr. Crakes considered an impaired scenario where, for example, someone does not graduate from 8th grade and the other experts stated that the person is likely to finish professional school despite their impairments. *See Andler*, 670 F.3d at 729 ("The shift from part-time to full-time, especially for a mother as her children grow older, is not as speculative as the shift from seasonal employment to a regular 40-hour workweek with full benefits."); *see also Rondigo, L.L.C. v. Casco Twp., Mich.*, 537 F. Supp. 2d 891, 895–96 (E.D. Mich. 2008) (finding that the plaintiff's expert's opinions on economic loss warranted exclusion under Rule 702 and *Daubert* in part because an estimate was based on 12,960 truckloads being deposited per year when the plaintiff's own manual estimated 230 truckloads would be deposited).

Dr. Jourdan and Dr. Hoffman also never suggest that the educational outcomes they believe most likely are the only possible outcomes. On the contrary, Plaintiffs' experts both indicate that there is

likely to be variability over time related to how Plaintiffs' conditions impact their academic performance. (*See* ECF No. 2937, PageID.99085–99086.) As Dr. Jourdan acknowledges, it is difficult to assign precise probabilities regarding these children's educational potential. (*See id.* at PageID.99085.) As a result, these opinions indicate that there is a range of possibilities regarding Plaintiffs' educational outcomes. Dr. Jourdan and Dr. Hoffman's explanation that there is a range of possibilities—some of which they believe to be most likely—provides "good grounds" for Dr. Crakes to consider scenarios that do not precisely mirror what Dr. Jourdan and Dr. Hoffman believe are the most likely scenarios. *Daubert*, 509 U.S. at 590. The scenarios Dr. Crakes considers are realistic possibilities relative to what Dr. Jourdan and Dr. Hoffman predict. And Dr. Crakes' opinions are not contradicted by the opinions provided by Dr. Jourdan and Dr. Hoffman. Dr. Crakes' testimony regarding the range of scenarios that are close to the scenarios Dr. Jourdan and Dr. Hoffman believe to be most likely is not "as a matter of law . . . so unreasonable so as to constitute 'rampant speculation' that should not be heard and evaluated by the jury." *Boyar v. Korean Air Lines Co., Ltd.*, 954 F. Supp. 4, 8 (D.C. Cir. 1996).

VNA's speculation objections are also misguided given that Dr. Crakes is not going to offer opinions about the likelihood of Plaintiffs experiencing one loss earning scenario or educational outcome rather than another. (ECF No. 2937, PageID.99082.) The jury must consider evidence outside of Dr. Crakes' testimony to decide which of the scenarios he discusses is most likely for a particular Plaintiff. In offering various scenarios that might occur, Dr. Crakes' opinions "find some support . . . in the record" by virtue of their closeness to the range of reasonable possibilities suggested by Dr. Jourdan and Dr. Hoffman's testimony. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). Accordingly, Dr. Crakes' opinions will not be excluded under Rule 702 and *Daubert* and VNA's arguments for excluding some of them are denied.

## IV. Conclusion

For the reasons set forth above, the Motion is DENIED.

IT IS SO ORDERED.

Dated: June 11, 2024             s/Judith E. Levy
Ann Arbor, Michigan         JUDITH E. LEVY
                                     United States District Judge

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 11, 2024.

                                        s/William Barkholz
                                        WILLIAM BARKHOLZ
                                        Case Manager