# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases  
5:16-cv-10444/17-cv-10164

Hon. Judith E. Levy  
United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

## BELLWETHER III PLAINTIFFS' MOTION *IN LIMINE* FOR AN ORDER ADOPTING CERTAIN PREVIOUS IN LIMINE RULINGS FROM BELLWETHER I AND THE ISSUES CLASS TRIAL

Bellwether III Plaintiffs move for an order that re-adopts certain rulings made by the Court in deciding motions *in limine* from Bellwether I and the Issues Class Trial. These decisions are applicable to the Bellwether III Plaintiffs and the Court correctly ruled in these prior instances.

Pursuant to Local Rule 7.1(a), Plaintiffs conferred with counsel for Veolia[1] on the substance of this motion. Counsel for Veolia indicated that they did not agree with the relief sought.

---

[1] Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia").

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases　　　　　　　　　　Hon. Judith E. Levy
5:16-cv-10444/17-cv-10164　　　　　　　　　United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

**BELLWETHER III PLAINTIFFS' MOTION *IN LIMINE* FOR AN ORDER ADOPTING CERTAIN PREVIOUS IN LIMINE RULINGS FROM BELLWETHER I AND THE ISSUES CLASS TRIAL**

## INTRODUCTION & BACKGROUND

Before the Bellwether I trial and the Issues Class trial ("Class Trial"), the Court made certain evidentiary rulings. As relevant here, the Court excluded: (1) all evidence of unfiltered Flint water consumption by Defendants, governmental officials, and high-profile individuals; (2) certain attacks on Dr. Specht's p-XRF device; (3) additional lead exposures as the cause of Plaintiffs' injuries; and (4) family conditions as the cause of Plaintiffs' injuries. These rulings were correct and should be applied to the current case. Accordingly, the Court should re-adopt those rulings for the upcoming Bellwether III trial.[2]

## ARGUMENT

Motions in limine are supposed to "prepare a smooth path for trial—particularly by casting aside inadmissible evidence that might confuse or prejudice the jury." *Dixon v. Grand Trunk W. R.R. Co.,* No. 2:13-14340, 2017 U.S. Dist. LEXIS 185001, at *1 (E.D. Mich. Nov. 8, 2017) (citation omitted). Whether to grant a motion in limine is a matter of discretion for the district court. *See Cain v. City of*

---

[2] Plaintiffs also assert that consistent with the Court's Bellwether I ruling and ruling in the Class Trial, the Task Force Report and the EPA Administrative Order should be excluded in their entirety, and that only certain portions of the EPA OIG reports should be admitted. However, because Veolia indicated that it intends to file a motion challenging those rulings, Plaintiffs do not address those reports here and will respond to Defendants' motion.

*Detroit*, No. 13-CV-10525, 2023 U.S. Dist. LEXIS 202853, at *2 (E.D. Mich. Nov. 13, 2023).

A court facing a motion in limine similar to one it has already ruled on in a previous bellwether can re-adopt and adhere to its prior rulings. *See, e.g., 3A Composites USA, Inc. v. United Indus., Inc.*, No. 5:16-CV-5017, 2017 WL 5991968, at *2 (W.D. Ark. Sept. 18, 2017) ("Most of the motions currently pending in the instant case are simply renewals of the parties' respective positions on identical requests for relief in the previous case, and the Court's rulings on those motions will be identical to its rulings on the same issues in the previous case.").[3]

**I.    Other Water Drinkers: Consistent with the Court's Bellwether I ruling, all evidence of unfiltered Flint water consumption by Defendants, governmental officials, and high-profile individuals should be excluded.**

In Bellwether I, the Court granted Plaintiffs' motion to exclude evidence regarding Veolia and LAN employees', governmental officials', and high-profile persons' consumption of unfiltered Flint water. *See* BWI,[4] ECF No. 505 (Plaintiffs' MIL Re: Water Consumption); ECF No. 683 (Order Granting Plaintiffs' MIL Re:

---

[3] *See also In re Welding Fume Prods. Liab. Litig.*, No. 1:03-cv-17000, 2010 WL 7699456, at *65 (N.D. Ohio June 4, 2010); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2021 U.S. Dist. LEXIS 181619, at *90 (N.D. Ohio Sept. 23, 2021); *Hosbrook v. Ethicon, Inc.*, No. 3:20-cv-88, 2021 U.S. Dist. LEXIS 186364, at *4–5 (S.D. Ohio Sept. 29, 2021); *Cutter v. Ethicon, Inc.*, No. CV 5:19-443-DCR, 2020 U.S. Dist. LEXIS 74790, at *5 (E.D. Ky. Apr. 29, 2020).

[4] "BWI" refers to Case No. 5:17-cv-10164. All other ECF numbers refer to the current docket, Case No. 5:16-cv-10444.

Water Consumption). The Court ruled that evidence of any of Veolia employee's (or a government employee's, or any other person's, for that matter) decision to drink Flint water is of only minimal relevance to Veolia's knowledge of the water's safety and does not necessarily show that they believed the water to be safe. The Court further ruled that such minimal relevance is outweighed by the potential for delay, confusion, and time-wasting given the lengthy factual disputes that the introduction of this evidence would inevitably create. *Id.* at PageID.44034–37.

Thereafter, in preparation for the Class Trial, the parties raised this issue again. ECF No. 2705 (Class Plaintiffs' Motion); ECF No. 2733 (Veolia Opposition). And the Court again ruled that such evidence should be excluded. ECF No. 2822 (Oral Argument & Ruling) at PageID.93673–93678; *see also* ECF No. 2824 (Order Granting Class Plaintiffs' MIL Re: Water Consumption) at PageID.93838. In so ruling, the Court expressly rejected Veolia's arguments that this evidence is relevant to responding to Plaintiffs' arguments that Veolia's employees knew the water was dangerous during their work in Flint. The Court reasoned that evidence of an adult drinking the water is a very different question than whether the water was safe (especially for someone the age of the Plaintiff children) and therefore does not "serve [the] probative value of anything" or "tell [] that they thought the water was safe." ECF No. 2822 (Oral Argument & Ruling) at PageID.93673–93678. The

3

Court's reasoning was correct and remains sound. Therefore, the Court's ruling should apply with equal force to the Bellwether III trial.

> **II.    Bone Scan Attacks: Consistent with the Court's Bellwether I ruling, attacks on the safety of the p-XRF device; Dr. Specht's alleged violations of Michigan law; and criticisms by non-experts are irrelevant and highly prejudicial and should not be introduced at trial.**

In Bellwether I, the Court ruled that four kinds of attacks on the bone scans conducted by Dr. Specht were inadmissible: (1) attacks on the safety of the p-XRF device; (2) attacks that Dr. Specht's use of the p-XRF device in this litigation violated Michigan law; and (3) attacks on Dr. Specht's methods by non-experts. BWI, ECF No. 666 (Order Granting Plaintiffs' MIL Re: Bone Scan Attacks). Each of those rulings should apply with equal force in the upcoming Bellwether III trial.

As to the safety of the p-XRF, the Court ruled that any attacks on the alleged health risks posed by the p-XRF would be irrelevant and inflammatory. *Id.* at PageID.43725. This same ruling applies to the Bellwether III trial, and should also apply to exclude any suggestion that the p-XRF device is not safe for any reason.[5] As the Court has already recognized, Dr. Specht's bone lead testing is safe. The x-rays from the pXRF device give only "a small radiation exposure, which is equivalent to that of standing outside for about 9 hours with natural cosmic sources

---

[5] And, similarly, this ruling applies to exclude any suggestion that Dr. Specht's testing constitutes a "human rights violation." *See* BWI, ECF No. 514 (Plaintiffs' MIL Re: Bone Scan Attacks) at PageID.39382 (citing Veolia's BWI Daubert Motion)

4

of radiation or equivalent to 1/3rd of a single dental x-ray." Ex. 1, (Specht Report) at 6 (citing A.J. Specht & X. Zhang et. al., A Dosimetry Study of Portable X-ray Fluorescence in Vivo Metal Measurements, 116(5) Health Phys. 590-98 (2019)).

As to attacks that Dr. Specht's use of the p-XRF in this litigation violated Michigan law, the Court ruled that such alleged violations are irrelevant and highly prejudicial. BWI, ECF No. 666 (Order Granting Plaintiffs' MIL Re: Bone Scan Attacks) at PageID.43726–27. The Court ruled that this is especially true given that a review of MIOSHA's[6] regulatory activities clearly shows that any implication that Dr. Specht did not take appropriate safety measures (or otherwise failed to conduct his tests in a reasonable and safe manner) is "highly misleading." *Id.* (citing 2021 MIOSHA Press Release). MIOSHA's position on Dr. Specht's use of the p-XRF device has not changed, and therefore, neither should the Court's ruling.

As to attacks by non-experts, the Court ruled that any testimony regarding the safety or efficacy of the p-XRF device by non-experts such as Dr. Reynolds and Dr. Mona Hanna Attisha should be excluded, because their opinions are not rationally based on their perception or based on any specialized knowledge. The Court ruled that this was so because these experts were in no way involved in the bone lead scans conducted by Dr. Specht, nor does either have experience with p-XRF devices. BWI,

---

[6] The Michigan Occupational Safety and Health Administration ("MIOSHA").

5

ECF No. 666 (Order Granting Plaintiffs' MIL Re: Bone Scan Attacks) at PageID.43728 (citing Fed. R. Evid. 701(c)). The Court further ruled that Veolia could not cross-examine Dr. Specht as to the opinions of Dr. Reynolds and Dr. Mona Hanna Attisha, *Id.,* because Veolia cannot use cross-examination to circumvent the rules of evidence. All of these facts remain to be true, and so, the Court's ruling should stand.

    **III.**    **Additional Exposure: Consistent with the Court's Bellwether I ruling, Veolia's experts may not testify that Plaintiffs' exposure or their injuries were caused by sources of lead other than Flint's water supply.**

In Bellwether I, the Court ruled that experts who have not attempted to determine the most likely source of the Plaintiffs' exposure may not testify that this exposure was in fact caused by sources of lead other than Flint's water supply. BWI, ECF No. 645 (Order Granting in part Plaintiffs' MIL Re: Additional Lead Exposures) at PageID.43346. This was because neither of Veolia's experts Dr. Finley nor Dr. Weed made any attempt to quantify the amount of lead ingested from other sources, or the most likely source of Plaintiffs' exposure to lead, and so, such an opinion would be "entirely speculative." BWI, ECF No. 646 (BWI MIL Hearing) at PageID.43454. For the same reason set forth by the Court in Bellwether I, the Court should extend this ruling again to Dr. Weed as well as several other of Veolia's experts; namely, Dr. Banner, Dr. Benson, and Dr. Greenberg. *See* Ex. 2, (Combined Reports of Banner, Benson, Greenberg, and Weed).

6

**IV.** **Other Factors such as Family History, Family Dynamics, Parental or Sibling IQ, Genetics ("Family or Social Factors"): Consistent with the Court's Bellwether I ruling, Veolia's experts and counsel may not testify or argue that Plaintiffs' injuries were caused by aspects of their family history.**

Before Bellwether I, the Court ruled "[e]xperts simply cannot provide flatly inconsistent opinion evidence 'in the alternative' and still meet the guidelines set forth by Rule 702 and *Daubert*." BWI, ECF No. 702 (Order Granting In Part Plaintiffs' MIL Re: Unsupported Alternative Causation Testimony) at PageID.45669. Applying that principle of law, the Court ruled that Veolia's experts could not simultaneously opine that the children do not suffer from any deficits, while also opining that if the children were injured, then the cause of those injuries was the children's family or social factors (parental IQ, family history, family dynamics, socioeconomic status, etc.). *Id.* at PageID.45672. This ruling was correct and should apply to Veolia's experts in Bellwether III.

For example, the Court properly determined that because Dr. Putnam opined that the Plaintiffs were not injured, his "discussion" of potential contributing factors related to the Plaintiffs' family dynamics were speculative, not relevant, and therefore inadmissible. *Id.* at. PageID.45670–72. Put plainly, the Court determined that opinions that are inconsistent with the remainder of the expert's opinions are inadmissible.

7

This ruling was correct and should apply to Veolia's experts in Bellwether III; namely, Dr. McCaffery, Dr. Thompson, Dr. Putnam, Dr. Nelson, Dr. Banner, Dr. Greenberg, Dr Weed, and Dr. Benson. These experts opine that the Bellwether III Plaintiffs have no injuries.[7] *See* Ex. 3. (Combined Reports of McCaffery, Putnam, Nelson) at pdf pages 19, 43, 73, 97, 121, 162, 200–201, 236, 264, 293, 319, 348, 354, 360, 366, 372–373, 378; Ex. 2, (Combined Reports of Banner, Benson, Greenberg, and Weed) at pdf pages 8, 65–66, 202, 254, 306, 357, 408, 460, 511, 566–67. Therefore, any commentary or speculation regarding the impact of family dynamics should be deemed "**inadmissible** as unwarranted speculation." *Id.* at PageID.45673; *see also Tamraz v. Lincoln Elec. Co.*, 620 F.3d. 665, 671 (6th Cir. 2010) (Experts may not base their opinions on speculation, nor may they engage in "scientific guesswork, even of the inspired sort.").

In the Court's Bellwether I order, the Court further ruled that even if opinions related to alternative causation were not entirely inconsistent with an expert's opinion, they still must be supported by scientific data, evidence, or reliable methodology. BWI, ECF No. 702 at PageID.45673. Applying this law, the Court properly determined that Dr. Thompson's opinions of alternative causations were not reliable under Rule 702 and *Daubert*. *Id.* at PageID.45676. This was because he

---

[7] Two of Veolia's experts, Drs. Thompson and Nelson, opine that three of the Bellwether III Plaintiffs may suffer from cognitive deficits. However, as discussed *supra*, those opinions should also be excluded under the Court's prior rulings.

8

"provide[d] no evidence or explanation for the proposition" that Plaintiffs' injuries could be caused by the family factors he pointed to⸺such as unexcused absences and tardiness; negative events in one's family; biological and genetic factors; or substandard housing. BWI, ECF No. 702 at PageID.45674–5. Additionally, Dr. Thompson had not considered a single document or record related to these assessments, and as such, his alternative causation theories could not have been "based on anything in the record or scientific literature." *Id.* at PageID.45676.

For the Bellwether III Plaintiffs ▮▮▮▮▮▮▮▮▮▮ Dr. Thompson opines that they in fact suffer from some cognitive injury. He asserts that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ at pdf pages 4, 30, 56. Dr. Thompson then opines that each of the conditions likely have causes unrelated to the Flint water because "studies showing lead exposures accounts for a very small amount of variance in cognitive ability [] whereas social and parenting factors account for [] more." *Id.* at pdf pages 5, 31, 57. He indicates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at pdf pages 5, 31, 57.[8] However, he

---

[8] Dr. Thompson then goes on to summarize an entire paragraph ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 4 at pdf page 57.

9

does not cite any studies which show that the family factors he identifies cause the types of conditions he has observed in these children.

For his part, Dr. Nelson notes that ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█. But he provides absolutely no support for this opinion whatsoever.

Both Dr. Thompson's and Dr. Nelson's theories of causation should be excluded for the same reasons the Court excluded Dr. Thompson's causation opinion in Bellwether I, *to wit*: Neither expert provides any evidence for the proposition that the family factors they point to have caused the specific deficits they observed. And neither expert points to any specific evidence to support their assumptions, nor have they reviewed any data regarding each child's lead exposure to reliably rule out that these injuries were not caused by lead exposure to the Flint River. As such, their causation opinions are "so severely lacking as to be clearly inadmissible under Daubert and Federal Rule 702." BWI, ECF No. 702 at PageID.45675.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court grant this motion in limine and re-adopt the above-mentioned rulings for the upcoming Bellwether III trial.

10

Dated:	July 22, 2024	Respectfully submitted,

**LEVY KONIGSBERG LLP**	**NAPOLI SHKOLNIK PLLC**

<u>/s/ Corey M. Stern</u>	<u>/s/ Hunter J. Shkolnik</u>
Corey M. Stern	Hunter J. Shkolnik
Melanie Daly	Patrick Lanciotti
Kiersten Holms	360 Lexington Ave., 11th Floor
605 Third Ave., 33rd Floor	New York, New York 10017
New York, New York 10158	(212) 397-1000
(212) 605-6298	hunter@nsprlaw.com
cstern@levylaw.com

***ATTORNEYS FOR PLAINTIFFS***

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ Corey M. Stern
Corey M. Stern