**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM |
| | Hon. Judith E. Levy, District Judge |
| This Document Relates To: | |
| BELLWETHER III | Case No. 5:17-cv-11166-JEL-KGA |

_____

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH
AMERICA, INC., AND VEOLIA WATER NORTH AMERICA
OPERATING SERVICES, LLC'S MOTION TO EXCLUDE
HYPOTHETICAL QUESTIONS DIRECTED AT FACT WITNESSES AND
TO PROHIBIT PLAINTIFFS FROM ASKING FACT WITNESSES ABOUT
THEIR PERSONAL VIEWS REGARDING WHAT VNA SHOULD HAVE
DONE DIFFERENTLY IN FLINT**

Defendants Veolia North America, LLC, Veolia North America, Inc., and

Veolia Water North America Operating Services, LLC (VNA) move to exclude

hypothetical questions directed at federal, state, and local government officials and

other fact witnesses about what they supposedly would have done differently under

a different set of facts. For example, Plaintiffs should not be allowed to ask (or to

introduce deposition testimony in which counsel asks) whether a government official

would have acted differently had VNA been more insistent that the City either

implement corrosion controls or return to Detroit water or had VNA pointed to

public reports of lead in the internal water system at the University of Michigan in

February 2015. Speculative testimony about what fact witnesses now say they

1

would have done in other circumstances and with 20/20 hindsight is inadmissible under Federal Rules of Evidence 602, 701, 402, and 403.

VNA also moves to exclude questions to government officials and other fact witnesses, who have little or no personal knowledge of VNA's actual work in Flint, regarding their personal opinions about what VNA should have done differently in Flint.  These witnesses have not been identified as experts, and questions about what VNA should have done differently go well beyond both their personal knowledge as fact witnesses and the proper scope of non-expert opinion testimony.  Accordingly, their personal opinions about what VNA should have done differently are inadmissible under Federal Rules of Evidence 602 and 701.

Before the Bellwether I trial and in the class case, this Court denied VNA's motions to exclude similar evidence.  For the reasons explained in the accompanying brief, the Court should revisit those rulings and exclude the evidence.

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel about this motion.  After VNA explained the nature and basis for the motion, Plaintiffs' counsel stated that they oppose this motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*

James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*

Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and
Veolia Water North America Operating Services, LLC*

Dated:  July 22, 2024

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy, District Judge |
| THIS DOCUMENT RELATES TO:<br>BELLWETHER III | Case No.. 5:17-cv-11166-JEL-KGA |

_____

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE HYPOTHETICAL QUESTIONS DIRECTED TO FACT WITNESSES AND TO PROHIBIT PLAINTIFFS FROM ASKING FACT WITNESSES ABOUT THEIR PERSONAL VIEWS REGARDING WHAT VNA SHOULD HAVE DONE DIFFERENTLY IN FLINT**

## STATEMENT OF ISSUES PRESENTED

1.   Should the Court exclude, under Federal Rules of Evidence 602, 701, 402, and 403, hypothetical questions directed at government officials and other fact witnesses about whether they would have acted differently if VNA had been more insistent that Flint either implement corrosion controls or return to Detroit water or taken other actions?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

2.   Should the Court preclude Plaintiffs, under Federal Rules of Evidence 602 and 701, from asking government officials and other fact witnesses with little or no knowledge of VNA's work in Flint for their personal opinions about what VNA should have done differently in Flint?

   **VNA answers:** "Yes."

   **Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Washington v. Dep't of Transp.*, 8 F.3d 296 (5th Cir. 1993)

Fed. R. Evid. 402

Fed. R. Evid. 403

Fed. R. Evid. 602

Fed. R. Evid. 701

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

BACKGROUND ....................................................................................2

ARGUMENT .........................................................................................6

I.     The Court Should Exclude Questions About What Government Officials Would Have Done Differently If VNA Had Provided Them With Certain Information ....................................................................................6

      A.    The Questions Are Not Based On A Witness's Personal Knowledge Or Perception.................................................................6

      B.    The Speculative Hypothetical Questions Impermissibly Inject Hindsight Into The Case...................................................10

II.    The Court Should Exclude Testimony From Fact Witnesses About What They Think VNA Should Have Done Differently In Flint ...........................12

CONCLUSION ....................................................................................14

## INTRODUCTION

In many depositions of federal, state, and local government officials and other fact witnesses taken in this case, Plaintiffs' counsel and counsel for other plaintiffs asked the witnesses what they would have done differently if they had seen certain VNA internal emails or if VNA had acted differently.  Plaintiffs' counsel and other plaintiffs' counsel also repeatedly asked City of Flint and MDEQ witnesses and other fact witnesses, who have not been identified as experts, for their opinions about what VNA should have done differently during its engagement with the City.  The Court should exclude those questions.

The Court should exclude questions about what witnesses would have done in hypothetical situations because the responses would be based on conjecture.  They also impermissibly inject hindsight into the case.  Moreover, a witness's answers to such questions are not relevant to the claim against VNA, and any marginal relevance they might have would be substantially outweighed by the danger of unfair prejudice and jury confusion.

The Court also should preclude Plaintiffs from asking fact witnesses about what they think VNA should have done differently because those witnesses have not been identified as experts and have no basis to offer non-expert opinion testimony about what they think VNA should have done differently in Flint.  These questions

1

stray well beyond both their personal knowledge as fact witnesses and the proper scope of non-expert opinion testimony.

## BACKGROUND

During depositions, Plaintiffs' counsel questioned federal, state, and local government officials and other fact witnesses about internal VNA emails from February 2015.  The witnesses were not copied on the emails and often were seeing them for the first time at their depositions.  According to Plaintiffs, the emails show that VNA knew that lead was a concern and that the best technical solution to the water issues Flint was experiencing was for the City to return to Detroit water.  Plaintiffs then asked the witnesses to speculate as to how they (and others) would have acted if VNA had come to them with lead concerns or otherwise done more to highlight those concerns or had suggested that the City switch back to Detroit water.

For example, Plaintiffs' counsel questioned Darnell Early, former City of Flint Emergency Manager, as follows:

> Q.     If you were the Emergency Manager, and a company like Veolia [] came to you and said, "Mr Earley, I am very concerned or we are very concerned that there is lead in the water in the public drinking system which could drastically affect the health and welfare of our community and in particular our children," would you have acted upon that information?
>
> A.     Yes.

* * * * *

2

Q.     Hypothetically, if you were the Emergency Manager and someone from Veolia told you that the safest option for the citizens of Flint was to go back to the DWSD, do you think that would have expedited the process of its happening?

A.     Any expert that I would have enlisted and would have taken recommendations for, if they had come to me and said there was a problem with the safety of the drinking water in the City of Flint, yes, I would have done all that I could to expedite whatever change options would have been available to the City of Flint.

* * * * *

Q.     And all the government players that you're aware of in this litigation who have been sued, who have been prosecuted, who have been deposed, who have had investigative subpoenas presented to them, what you know about them, if they had been told by Veolia that the safest option for the citizens of Flint is to go back to the DWSD, based on your experience and in working with all these folks, do you think they, too, would have taken actions?

A.     Yes.

Ex. 2, Earley Dep. 419:3-11, 621:22-622:24 (objections omitted).  Plaintiffs asked similar questions of other federal, state, and local government officials and other fact witnesses.  *See, e.g.,* Ex. 3, Smith Dep. 436:21-439:21; Ex. 4, Walling Dep. 457:9-24, 474:19-475:5; Ex. 5, Prysby Dep. 314:2-15, 348:20-349:7, 355:21-356:10, 366:2-10; Ex. 6, Ambrose Dep. 473:12-474:1; Ex. 7, Poy Dep. 280:16-281:8, 285:6-14; Ex. 8, Croft Dep. 502:9-24; Ex. 9, Green Dep. 725:15-730:1.

Plaintiffs also repeatedly asked those witnesses to offer their personal opinions about the scope of VNA's engagement and how they think VNA should have performed during that engagement even though the witnesses have not been

offered as experts and had little or no personal knowledge about the scope of VNA's

work for the City.  For example, Plaintiffs questioned Michael Prysby, an MDEQ

District Water Engineer:

> Q.    Okay.  And sitting here today, do you—what's your recollection
> of . . . Veolia's, role with regard to the water treatment plant and
> generally the water in Flint?
>
> A.    My recollection was Veolia was retained by the City of Flint to
> come in as a—say, a second set of eyes as a consultant to investigate
> the water quality and some of the concerns I think mainly jumping in
> with the THM problems in Flint in 2015.
>
> * * * * *
>
> Q.    I mean, you would agree with me, sir, that . . . it would be
> impossible for a company like Veolia to do an assessment of the water
> quality in Flint and only, only be able to see what's going on with
> TTHMs without regard for any other issues associated with the water
> quality, correct?
>
> A.    I guess that would depend on what the—what they were charged
> with doing from their—from their client, from the City of Flint.
>
> * * * * *
>
> Q.    Do you know if Veolia did any of its own water sampling on
> issues related to lead during the period of time when it was consulting
> for the City of Flint?
>
> A.    I'm not aware of that.
>
> Q.    Would you have expected them to in light of the communications
> that I've shown you so far today?
>
> A.    Yes, I would have.
>
> * * * * *
>
> Q.    I mean, as a responsibility to those mothers and fathers in Flint,
> and knowing as a consultant and as a professional how dangerous lead
> could be, it would have made sense in light of Mr. Nicholas' e-mails

for Veolia to do some of its own independent testing related to lead in the water in Flint, correct?

A.     It should have been—it should have been something that would have been added to the scope of service, or at least discussed in that scope of service with the city.

Ex. 5, Prysby Dep. 302:18-303:4, 311:20-312:8, 356:11-357:8 (objections omitted);

*see, e.g.*, Ex. 2, Earley Dep. 430:22-432:2; Ex. 3, Smith Dep. 417:2-12; Ex. 6,

Ambrose Dep. 438:5-18; Ex. 7, Poy Dep. 245:15-246:11, 267:7-268:13; Ex. 8, Croft

Dep. 492:22-493:9, 494:16-495:1; Ex. 9, Green Dep. 721:20-722:9, 730:2-740:12.

VNA moved to exclude this testimony in advance of the first bellwether trial.

*See* Br. in Supp. of VNA Mot. to Exclude Hypothetical Questions 1, No. 17-cv-10164 ECF No. 497, PageID.37280.  The Court held that testimony by government officials on what they would have done if VNA had provided additional information, such as whether corrosion controls were necessary or a warning that corrosion inhibitors were necessary to protect public health, raised a material question of fact and should be presented to the jury.  *See* Op. & Order on VNA Mot. for Summ. J. & Mots. *in Limine* (BWI Op.) 44-47, No. 17-cv-10164 ECF No. 606, PageID.42678, 42721-24.  The Court also cited the Sixth Circuit's decision in *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526 (6th Cir. 2014), which the Court construed to require "causation issues in failure to warn cases . . . to be presented to the jury." *Id.* at 46, PageID.42723.

VNA again moved to exclude this testimony in the class case. *See* Br. in Supp. of VNA Mot. to Exclude Hypothetical Questions 1, No. 16-cv-10444 ECF No. 2697, PageID.87744.   This Court again ruled that under *Payne* parties may pose hypothetical questions about what a witness would have done in hypothetical scenarios, even when the witness lacked personal knowledge. *See* Tr. of Jan. 23, 2024 Hrg. (Class Hr'g), No. 16-cv-10444 ECF No. 2822, PageID.93663. The Court also concluded that hypothetical questions about what the witnesses would have done had VNA acted differently are permissible because they go "to the witness' knowledge of their own decision-making process." *Id.* at 71:19-20, PageID.93666.

## ARGUMENT

### I.   The Court Should Exclude Questions About What Government Officials Would Have Done Differently If VNA Had Provided Them With Certain Information

The Court should exclude hypothetical questions about what federal, state, and local government officials and other fact witnesses would have done differently in different circumstances, for two reasons.

#### A.   The Questions Are Not Based On A Witness's Personal Knowledge Or Perception

First, hypothetical questions do not ask the witnesses for information that is within their personal knowledge, but call for self-serving speculation. Fact witness testimony must be based on "personal knowledge," Fed. R. Evid. 602, and must be "rationally based on the witness's perception," Fed. R. Evid. 701(a). By definition,

6

a witness's statement about what he or she would have done in other circumstances is based on speculation, not on what the witness perceived. *See Wheeler v. Estes Express Lines*, 53 F. Supp. 3d 1032, 1042 n.9 (N.D. Ohio 2014) ("Federal law is clear that speculative testimony as to what a witness would have done under different circumstances cannot possibly be based on the witness's perception.") (internal quotation marks and alterations omitted). Thus, "[v]ague, self-serving speculative testimony concerning what a party would have done under different circumstances is generally not admissible." *Devaney v. Chester*, No. 83-cv-8455, 1989 WL 52375, at \*5 (S.D.N.Y. May 10, 1989) (quoting *Bridgen v. Scott*, 456 F. Supp. 1048, 1063 (S.D. Tex. 1978)).

For example, one court held that a witness's testimony that he "would have" ensured the installation of protective equipment had it been recommended was "inherently speculative" because it was given "years after the fact and with the benefit of hindsight, about what [he] would have done under different circumstances." *Hume v. Hughes*, No. 16-cv-0954, 2019 WL 5212662, at \*5 (N.D. Ala. Oct. 16, 2019). Similarly, the Fifth Circuit affirmed a district court's exclusion of testimony "as to what [a worker] *would have done* had he seen the warning label" on a vacuum that sparked a fire, explaining that the testimony "would not have been based upon [his] perception, but upon his self-serving speculation." *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (emphasis added). As the Fifth

7

Circuit noted, "[u]nder the Federal Rules of Evidence, speculative opinion testimony by lay witnesses—*i.e.*, testimony not based upon the witness's perception—is generally considered inadmissible." *Id.* For similar reasons, another court excluded hypothetical testimony that an aunt and uncle would not have let their nephew take their car, explaining that "testimony as to what [they] *would have done* had they been home the day of the accident is purely speculative." *Athridge v. Aetna Cas. & Sur. Co.*, 474 F. Supp. 2d 102, 105 (D.D.C. 2007).

The same result is warranted here. Plaintiffs seek to ask government officials about what they would have done differently if VNA had been more insistent in making its recommendations or if VNA had come to them with concerns about lead in the water. This is exactly the type of speculative testimony that courts have excluded under Rules 602 and 701. *Wheeler*, 53 F. Supp. 3d at 1042 n.9. Plaintiffs' hypothetical questions are particularly problematic because they are based on isolated snippets from internal VNA emails that do not provide a complete account of VNA's work in Flint. *See, e.g.*, *Miller v. Village of Pinckney*, No. 07-cv-10928, 2008 WL 4190619, at *1 (E.D. Mich. Sept. 9, 2008) (hypothetical "[q]uestions based upon . . . an incomplete statement of the facts are not proper").

In its opinion denying VNA's motion *in limine* in the first Bellwether case, BWI Op. 44-47, PageID.42721-42724, the Court cited *Payne*, in which the Sixth Circuit allowed some "counterfactual testimony." *Payne*, 767 F.3d at 532. In a

hearing on VNA's motion seeking exclusion of the same evidence in the class case, the Court again referred to *Payne*. Jan. 23, 2024 Class Hr'g, PageID.93663. *Payne* is not applicable here, however, because it did not involve the Federal Rules of Evidence. Rather, it involved an issue of Tennessee substantive law. *See Payne*, 767 F.3d at 531 (rejecting the argument that the case involved an evidentiary issue and stating that the issue involved "the probative value of the affidavit [under] Tennessee law"). Specifically, *Payne* involved a claim that a drug warning was inadequate. *Id.* at 529. The issue was whether an affidavit by the plaintiff, stating that she would not have used the drug had her doctor informed her of the potential side-effects (along with her doctor's testimony that, once he became aware of the potential side-effects, he started informing patients of them), was enough to "prevent summary judgment for [the defendant] under Tennessee substantive law." *Id.* at 532.

The Sixth Circuit held that the affidavit was enough under Tennessee substantive law to proceed to trial. The court observed that "Tennessee explicitly allows such testimony to show causation in informed consent cases." *Payne*, 767 F.3d at 532. The court reasoned that the Tennessee Supreme Court would likely view pharmaceutical failure-to-warn cases to be analogous to informed-consent cases and, therefore, deem the affidavit sufficiently probative to preclude summary judgment. *Id.* The court acknowledged that other jurisdictions had come to different conclusions about the use of "counterfactual testimony," but concluded that those

9

cases were "not particularly helpful" because the issue was one of Tennessee law for which there was Tennessee precedent.  *Id.*

Thus, *Payne* sheds no light on arguments raised in VNA's motion to exclude hypothetical testimony as speculative under the Federal Rules of Evidence.  In any event, this case is a professional-negligence case under Michigan law, not a failure-to-warn case under Tennessee law.  *See Payne*, 767 F.3d at 528 (observing that failure-to-warn cases "are *state*-specific").  No Michigan case of which VNA is aware allows a plaintiff to avoid summary judgment (or judgment as a matter of law) on the basis of speculative testimony about what a person would have done under counterfactual circumstances.

In its ruling in Bellwether I, the Court also relied on *Genna v. Jackson*, 286 Mich. Ct. App. 413, 421 (2009), and other cases holding that circumstantial evidence of causation is sufficient under Michigan law.  BWI Op. 46 & n.12, PageID.42723. But the *Genna* decision expressly distinguishes between circumstantial evidence and "mere speculation."  *Genna*, 286 Mich. Ct. App. at 418.  Thus, if anything, *Genna* supports excluding the hypothetical questions here, which call for "mere speculation" and are not "circumstantial evidence" under any definition of that term.

## B. The Speculative Hypothetical Questions Impermissibly Inject Hindsight Into The Case

Second, hypothetical questions impermissibly inject hindsight into the case by asking a witness who now knows the full fallout from the Flint water crisis how

he or she would have reacted to hypothetical events while the crisis was still developing.  Under Michigan law, analysis based on hindsight cannot be used to prove negligence.  *See Genesee Merchants Bank & Trust Co. v. Payne*, 381 Mich. 234 (1968) (after-the-fact reasoning, "post hoc ergo propter hoc," did not show causation for an injury because it required conjecture) (citing *Kaminski v. Grand Trunk W.R. Co.*, 347 Mich. 417 (1956)); *Estate of Woolen by Woolen v. City of Detroit*, No. 351921, 2021 WL 2025154, at *4 (Mich. Ct. App. May 20, 2021) ("A person is not negligent when he or she chooses one reasonable nonnegligent course of action over another reasonable, nonnegligent course of action that would have resulted in a more favorable outcome when viewed in hindsight." (internal quotation marks omitted)).[1]

In professional-negligence cases in particular, Michigan courts have made clear that a finding of negligence may not be based on hindsight.  *See, e.g.*, *Edwards v. Tummala*, No. 222223, 2001 WL 1512041, at *3 (Mich. Ct. App. Nov. 27, 2001) (upholding trial court's exclusion of evidence because "the issue with respect to

---

[1]   *See also Trenkamp v. Keyser*, No. 342479, 2019 WL 3000918, at *8 (Mich. Ct. App. July 9, 2019) (trial court did not err in declining to instruct jury on comparative negligence because the evidence showed that the plaintiff was not negligent even though, in hindsight, there may have been a better course that he could have taken); *Oostdyk ex rel. Budd v. Caledonia Cmty. Schs.*, No. 312607, 2014 WL 588063, at *5 (Mich. Ct. App. Feb. 13, 2014) ("The fact that it is clear in hindsight that Kyle should have been moved to a different position does not establish gross negligence on the part of either Homrich or Veneklase.").

professional negligence was not whether defendant's interpretation of the 1994 films was in hindsight factually correct . . . but rather whether his interpretation comported with the standard of care owed by a reasonably prudent radiologist").  Other States take the same approach.  *See*, *e.g.*, *Zaccone v. Am. Red Cross*, 872 F. Supp. 457, 462 (N.D. Ohio 1994) ("The hindsight opinions of plaintiff's experts cannot 'supplant the standard of care as established by the conduct of the medical community.'" (citation omitted)).

Hypotheticals inject hindsight into a witness's testimony.  This is because any response by witnesses to counterfactuals presented about the Flint water crisis will necessarily incorporate their current awareness of the crisis, including their own responsibility for what happened.  Any answer will take into account the lessons learned from the Flint water crisis even if these lessons were not apparent at the time of the crisis itself.  For these reasons, hypothetical questions and any answers should not be permitted as they amount to nothing more than "[u]nadorned testimony about a hypothetical set of facts [that] the witness did not observe."  *Atlanta Channel, Inc. v. Solomon*, No.15-1823, 2021 WL 4243383, at *5 (D.D.C. Sept. 17, 2021).

## II.   The Court Should Exclude Testimony From Fact Witnesses About What They Think VNA Should Have Done Differently In Flint

Any attempt by Plaintiffs to question federal, state, and local government officials and other fact witnesses about what they think VNA should have done differently also would be inappropriate.  None of these witnesses have been

identified as an expert by Plaintiffs.  And Federal Rules of Evidence 602 and 701 require fact witnesses to testify based on personal knowledge and perception. Moreover, a fact witness may offer testimony in the form of an opinion only if it is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).  "The burden is on the proponent [of such opinion testimony] to provide adequate foundation for the testimony."  *United States v. Freeman*, 730 F.3d 590, 595-96 (6th Cir. 2013).

Plaintiffs cannot provide an adequate foundation for questioning government officials and other fact witnesses about what they think VNA should have done differently during its engagement with the City.  First, the opinions that Plaintiffs seek to elicit necessarily require scientific, technical, or other specialized knowledge within the scope of Rule 702.  Indeed, Plaintiffs have disclosed Larry Russell, a water-engineering consultant, to offer standard-of-care opinions on what VNA should have done differently.  *See, e.g.*, *City of Huntington Woods v. Orchard, Hiltz & McCliment, Inc.*, No. 301987, 2012 WL 1649782, at *3 (Mich. Ct. App. May 10, 2012) (plaintiffs in a professional-negligence case must present expert testimony that a "professional engineer of ordinary learning, judgment, or skill" would have acted differently).  Plaintiffs should not be permitted to elicit opinions from government officials and other fact witnesses who are not qualified to opine on whether VNA comported with the standard of care.

13

Second, the fact witnesses have little or no personal knowledge of VNA's work in Flint, particularly the scope of VNA's work for the City.  Indeed, Plaintiffs questioned the witnesses by showing them out-of-context internal VNA emails that most of them had never previously seen and then asking the witnesses what they thought VNA should have done differently.  *See* pp. 2-5 *supra*.  The witnesses' opinions thus lack an appropriate basis in personal knowledge and perception.  *See, e.g.*, *United States v. Kerley*, 784 F.3d 327, 338-40 (6th Cir. 2015) (holding that fact witnesses could provide opinion testimony only if the testimony was "based on particularized knowledge they gained from their employment").

## CONCLUSION

The Court should prohibit Plaintiffs from asking hypothetical questions about how a witness would have acted in counterfactual situations, or questioning fact witnesses with little or no personal knowledge of VNA's work in Flint about their personal opinions regarding what VNA should have done differently in Flint.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**   **MAYER BROWN LLP**

*/s/ James M. Campbell*

James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*

Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and
Veolia Water North America Operating Services, LLC*

Dated:  July 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

Respectfully submitted,

*/s/ James M. Campbell*