## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

IN RE FLINT WATER LITIGATION

Case No. 5:16-cv-10444-JEL-MKM
Hon. Judith E. Levy

This Document Relates To:
BELLWETHER III

Case No. 5:17-cv-10164-JEL-KGA

_____

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S MOTION TO PROHIBIT IMPROPER JURY ARGUMENT

Defendants Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (VNA) move to prohibit certain types of improper argument during the Bellwether III trial. These arguments would be inflammatory and calculated to appeal to passion, prejudice, sympathy, or bias.

In both the Bellwether I trial and the class trial, Plaintiffs initially stated that they would oppose a similar motion but ultimately agreed not to engage in the identified improper jury arguments. Accordingly, the Court denied VNA's motions in both proceedings as moot. Opinion and Order 2-4, No. 17-10164 ECF No. 645, PageID.43345-43347; Opinion and Order 2-6, No. 16-10444 ECF No. 2824, PageID.93834-93839.

1

As Local Rule 7.1(a) requires, VNA conferred with Plaintiffs' counsel about this motion.  After VNA explained the nature and basis for the motion, Plaintiffs' counsel stated that they would oppose this motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**

**MAYER BROWN LLP**

*/s/ James M. Campbell*
James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  July 22, 2024

2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

## DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S BRIEF IN SUPPORT OF THEIR MOTION TO PROHIBIT IMPROPER JURY ARGUMENT

## STATEMENT OF THE ISSUES PRESENTED

Should the Court prohibit the following categories of argument?

1. Arguments that incite local or anti-corporate bias;

2. References to VNA's size or wealth or Plaintiffs' financial condition;

3. Suggestions that VNA owed a heightened duty because of its size or sophistication;

4. Arguments that the jury should "send a message" to VNA or other corporations;

5. Statements to the effect that the jury is the only entity with the power to regulate or change VNA's conduct;

6. Statements that VNA acted "unethically," "put profits over safety," or violated some normative criterion other than the standard of care;

7. Comments about opposing counsel;

8. Statements suggesting that the compensation that Plaintiffs may receive from non-parties is inadequate;

9. Comments implying that VNA conspired with the City.

**VNA answers:** "Yes."

**Plaintiffs answer:** "No."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980)

*Goodwin v. Nw. Mich. Fair Assoc.*, 325 Mich. App. 129 (2018)

*Johnson v. Howard*, 24 F. App'x 480 (6th Cir. 2001)

*Macias v. Makowski*, 291 F.3d 447 (6th Cir. 2002)

*McLeod v. Parsons Corp.*, 73 F. App'x 846 (6th Cir. 2003)

*New York Cent. R.R. v. Johnson*, 279 U.S. 310 (1929)

*Robert v. McKee*, No. 09-cv-14675, 2011 WL 7112235 (E.D. Mich. June 20, 2011)

*Slappy v. Detroit*, No. 19-cv-10171, 2021 WL 2986284 (E.D. Mich. July 15, 2021)

*United States v. Carter*, 236 F.3d 777 (6th Cir. 2001)

Fed. R. Evid. 402

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................1

ARGUMENT ..........................................................................2

I.    Arguments That Incite Local Or Anti-Corporate Bias ....................................2

II.   References To VNA's Size Or Wealth Or Plaintiffs' Financial Condition ........................................................................5

III.  Suggestions That VNA Owed A Heightened Duty Because Of Its Size Or Sophistication ........................................................8

IV.   Arguments That The Jury Should "Send A Message" To VNA Or Other Corporations ..........................................................11

V.    Statements To The Effect That The Jury Is The Only Entity With The Power To Regulate Or Change VNA's Conduct ......................................12

VI.   Statements That VNA Acted "Unethically," "Put Profits Over Safety," Or Violated Some Normative Criterion Other Than The Standard Of Care ......13

VII.  Comments About Opposing Counsel ............................................14

VIII. Statements To The Effect That The Compensation That Plaintiffs May Receive From Non-Parties Is Inadequate ......................................16

IX.   Comments Implying A Conspiracy Between The City And VNA ..............18

CONCLUSION ......................................................................20

## INTRODUCTION

Courts in Michigan and across the country have identified a number of types of jury argument that are so inflammatory and prejudicial that they are never allowed and must be categorically barred, lest a jury verdict be irredeemably tainted by passion and prejudice.  Further, several types of common jury arguments are permissible only when punitive damages are at issue; because the jury will not be permitted to award punitive damages, those arguments should be barred as well. And certain highly prejudicial arguments that Plaintiffs might make are unsupported by the law or the evidence.  Plaintiffs have declined to stipulate that they will not make the arguments listed below, so the Court should order them not to do so.

VNA files this motion to ensure that the ground rules are clear before the trial begins.  VNA cannot wait to object to arguments of this sort until they actually are made because interruptions during jury argument can be off-putting to the jury and risk calling attention to the impermissible comments, thus raising the specter of a different sort of prejudice.  Further, curative instructions often are inadequate to ameliorate the effects of an argument that is designed to inflame jurors' passions. Accordingly, to minimize both the need to interrupt Plaintiffs' counsel with objections, and the risk of irremediable prejudice and a tainted verdict that would require a new trial, VNA respectfully requests an order *in limine* to forbid the

following predictable forms of impermissible jury argument, which Plaintiffs'
counsel have not agreed to forgo:

(1)    Arguments that incite local or anti-corporate bias;

(2)    References to VNA's size or wealth or Plaintiffs' financial condition;

(3)    Suggestions that VNA owed a heightened duty because of its size or
       sophistication;

(4)    Arguments that the jury should "send a message" to VNA or other
       corporations;

(5)    Statements to the effect that the jury is the only entity with the power
       to regulate or change the conduct of VNA or others;

(6)    Statements that VNA acted "unethically," "put profits over safety," or
       violated some normative criterion other than the standard of care;

(7)    Comments about opposing counsel;

(8)    Statements to the effect that the compensation that Plaintiffs may
       receive from non-parties is inadequate;

(9)    Comments implying that VNA conspired with the City.

## ARGUMENT

## I.    Arguments That Incite Local Or Anti-Corporate Bias

The Supreme Court long ago recognized that attempts by counsel to evoke
jurors' anti-corporate bias or their bias against out-of-state or foreign parties are
wholly inappropriate and should not be allowed. *See, e.g.*, *TXO Prod. Corp. v. All.
Res. Corp.*, 509 U.S. 443, 464 (1993) ("prejudice against large corporations" is "of
special concern when the defendant is a nonresident"); *New York Cent. R.R. v.
Johnson*, 279 U.S. 310, 319 (1929) ("remarks of counsel . . . tending to create an

atmosphere of hostility toward petitioner as a railroad corporation located in another section of the country, have been so often condemned as an appeal to sectional or local prejudice as to require no comment").

Courts across the country, including the Sixth Circuit, have reached precisely the same conclusion, ordering new trials when plaintiffs cross this line. *See, e.g.*, *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757-58 (6th Cir. 1980) (ordering a new trial because comments "which were intended to inform and emphasize that [defendant] had its corporate 'residence in another state' [were] obviously designed to prejudice the jurors" (citation omitted)); *Smith v. Travelers Ins.*, 438 F.2d 373, 375 & n.2 (6th Cir. 1971) (plaintiff's exhortation to "send them back up to Hartford and let them know how we feel about it in Tennessee" was "obviously designed to prejudice the jurors").[1]  Michigan courts follow this rule as well.  *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749, 770-71, 778 (2004) (holding that "trial court erred in denying defendant's motion for a new trial" based on plaintiff's counsel's use of "anticorporate rhetoric," which was a "deliberate[]"

---

[1]  *See also, e.g.*, *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 275-78 (5th Cir. 1998) (granting new trial because, among other things, counsel's closing argument improperly emphasized defendant's status as a national corporation with out-of-state headquarters); *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 539-41 (2d Cir. 1992) (explaining that "an appeal to the jury's regional bias is so inherently improper as to raise the distinct possibility that regionalism infected the trial" and that "[n]o verdict may stand when it is found in any degree to have been reached as a result of appeals to regional bias or other prejudice").

attempt "to provoke the jury by supplanting law, fact, and reason with prejudice, misleading arguments, and repeated *ad hominem* attacks against defendant based on its corporate status").

Neither VNA's status as a corporation nor its state of residence are relevant to any of the issues in this case. The only possible purpose of drawing attention to the fact that VNA is a corporation or that it is headquartered out of state would be to inflame the jury's prejudice against foreign corporations. *See*, *e.g.*, *City of Cleveland*, 624 F.2d at 757 (references to corporation's out-of-state residence were "obviously designed to prejudice the jurors"). Accordingly, the Court should preclude Plaintiffs' counsel from making any reference during jury arguments, or at any other time, to VNA's corporate status, place of incorporation, or place of headquarters.

The same reasoning applies to any reference to VNA's corporate parent being located in another country, including references to VNA having a presence or doing work in other countries or "worldwide." *See, e.g.*, *Boyle v. Mannesmann Demag Corp.*, 991 F.2d 794, 1993 WL 113734, at *3 (6th Cir. 1993) (table) (prohibiting introduction of evidence about exchange rate in retrial as more prejudicial than probative because "repeated references to a party's citizenship or nationality can be unduly prejudicial"); *Gearhart v. Uniden Corp.*, 781 F.2d 147, 153 (8th Cir. 1986) ("references in closing argument to defendant's foreign parent corporations were

improper" and "should not be permitted on retrial"), *abrogated on other grounds by Faries v. Atlas Truck Body Mfg. Co.*, 797 F.2d 619, 621 (8th Cir. 1986); *Foster v. Crawford Shipping Co.*, 496 F.2d 788, 792 (3d Cir. 1974) (closing argument emphasizing that defendant was a "foreign steamship compan[y]" warranted new trial); *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1136 (W.D. Mich. 1996) ("[N]ationalistic rhetoric [was] calculated to play on the jury's passions and prejudices and should be excluded at trial.").

The Court should bar Plaintiffs from making any statements or arguments that would incite local or anti-corporate biases.

## II.    References To VNA's Size Or Wealth Or Plaintiffs' Financial Condition

For closely related reasons, any references to VNA's size, finances, or net worth or to the financial condition of Plaintiffs' families should be excluded because these topics are irrelevant to the determination of liability and to the setting of compensatory damages, and they have significant potential to prejudice the jury. Whether VNA's actions were consistent with the standard of care for water treatment and distribution engineers and whether VNA's actions had any role in Plaintiffs' alleged injuries have nothing to do with VNA's size or financial condition. Moreover, references to VNA's size or wealth would encourage a verdict based on those factors, even though an award of compensatory damages must be based on the alleged injury to the plaintiff and not on the characteristics of the defendant.

5

Unsurprisingly, courts routinely exclude evidence or argument about the defendant's finances for these reasons. *See, e.g.*, *Bell v. Sam's East, Inc.*, No. 1:16-cv-315, 2018 WL 719042, at *2 (E.D. Tenn. Feb. 5, 2018) (excluding arguments and evidence related to defendant's size, revenues, and profitability as being unfairly prejudicial); *Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-cv-2000, 2011 WL 13101230, at *6 (S.D. Cal. Feb. 4, 2011) (granting motion to exclude information on defendant's valuation, revenue, cash reserves, and profitability as irrelevant and unfairly prejudicial).[2]

Indeed, even when—unlike here—the plaintiff is pursuing punitive damages, the Supreme Court has observed that "the presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." *Honda Motor Co. v. Oberg,* 512 U.S. 415, 432 (1994); *see also State Farm Mut. Auto. Ins.*

---

[2]   *Accord Igo v. Coachmen Indus.*, 938 F.2d 650, 653 (6th Cir. 1991) (concluding that counsel's references to the defendant as a "billion-dollar corporation" were intended to demonstrate that the defendant could pay a large verdict, which was a "blatant, inappropriate argument"); *City of Cleveland*, 624 F.2d at 755 (noting counsel's "pervasive misconduct" and continuous references to the size and power of defendant); *Opus N. Corp. v. Accent Glass & Mirror Co.*, No. 07-cv-524, 2009 WL 1726359, at *1 (S.D. Ohio June 16, 2009) (granting plaintiff's motion to exclude references or testimony regarding the financial resources or size of either party because such statements are "irrelevant and prejudicial"); *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, No. 09-cv-61490, 2011 WL 2295269, at *12 (S.D. Fla. June 8, 2011) (granting defendant's motion to exclude evidence and argument regarding the "personal wealth and economic status of the parties' representatives").

*v. Campbell*, 538 U.S. 408, 426-427 (2003) ("State Farm's enormous wealth" "bear[s] no relation to the award's reasonableness or proportionality to the harm"); *Seimon v. S. Pac. Transp. Co.*, 67 Cal. App. 3d 600, 606 (1977) ("It seems clear to us that plaintiff's counsel was deliberately trying to convey an image of himself and his client as financial underdogs, as 'little guys,' in a court battle against the 'big guy' railroad corporation. This clearly was improper."). When, as here, punitive damages are not at issue, any reference to the defendant's finances is even more clearly improper and prejudicial.

Similarly, references to Plaintiffs' financial condition should be excluded because such references have no bearing on the issues in the case and would encourage a verdict based on sympathy or the financial disparity between the parties rather than the merits of Plaintiffs' claim. As the Sixth Circuit has stated, "[a]ppealing to the sympathy of jurors through references to financial disparity is improper" and "arguments of counsel contrasting the wealth and poverty or strength and weakness, of the opposing litigants" have been "condemned." *City of Cleveland*, 624 F.2d at 757. References to the financial condition of the plaintiff, in particular, "are clearly calculated to direct the jury's attention to the need of an injured party for compensation rather than the real issues in the case" and are thus "prejudicial error." *Id.* (internal quotation marks omitted); *see also Sizemore v. Fletcher*, 921 F.2d 667, 670 (6th Cir. 1990) (noting that appeals to wealth and class

biases can create prejudicial error, violating a defendant's right to due process of law under the Fifth and Fourteenth Amendments); *VSI Holdings, Inc. v. SPX Corp*., No. 03-cv-70225, 2005 WL 5980804, at *8 (E.D. Mich. Apr. 12, 2005) (granting defendant's motion to exclude evidence highlighting differences between the parties' size and wealth because such evidence was irrelevant).

The Court should bar any references to VNA's size or wealth or the financial condition of Plaintiffs' families because neither is relevant to the issues in the case and such references would only inflame the prejudices of the jury.

## III.   Suggestions That VNA Owed A Heightened Duty Because Of Its Size Or Sophistication

Plaintiffs may attempt to argue (or imply) that VNA should be held to a higher standard of care than other water engineering firms because of its unparalleled expertise in water engineering.  Such an argument would be contrary to law.  In professional-negligence cases, "[t]he rule is firmly established that defendant[s] [are] bound to use the degree of diligence and skill which is ordinarily possessed by the average members of the profession in similar localities."  *Cox ex rel. Cox v. Bd. of Hosp. Managers for City of Flint*, 467 Mich. 1, 21 (2002) (quoting *Rytkonen v. Lojacono*, 269 Mich. 270, 274-75 (1934)).[3]  Michigan law does not hold larger, more

---

[3]   That is how the Court instructed the jury in the Bellwether I trial: "the standard of care is what a water engineer of ordinary learning, judgment, or skill in the Flint community or a similar one during the relevant time, 2013-2015, would do, or would

respected, or more sophisticated professionals to a higher standard than others. Instead, it applies a single objective standard to all professionals in a field: "how a reasonable similarly-situated practitioner would act." *Francisco v. Manson, Jackson & Kane, Inc.*, 145 Mich. App. 255, 259 (1985); *see Lozano ex rel. Est. of Jarzembowski v. Detroit Med. Ctr.*, No. 300463, 2013 WL 1632019, at *5 (Mich. Ct. App. Apr. 16, 2013) ("'[P]rofessional negligence' . . . means 'the failure to do something which a [professional] of ordinary learning, judgment or skill in [that profession] would do.'" (quoting Mich. Civ. Jury Instruction 30.01)); *Joos v. Auto-Owners Ins.*, 94 Mich. App. 419, 422 (1979) ("As a general principle, an attorney must bring to bear the skill, learning, and ability of the average practitioner of law when conducting legal business for a client.").

The Sixth Circuit's decision in *City of Cleveland* makes just that point. There, the City of Cleveland sought to recover damages from Kiewit, a marine-engineering firm, for a collapsed dock. 624 F.2d at 750. Cleveland's counsel repeatedly referred to Kiewit as a "large" and "international" corporation, asserted that Kiewit had received a lucrative contract from the U.S. Army Corps of Engineers for a separate project, and "asked other questions designed to convey to the jury the image of the defendant as a giant in the field of marine engineering." *Id*. at 750, 752-53, 756.

---

not do, under the same or similar circumstances."   Jury Instructions 22, No. 17-10164 ECF No. 893, PageID.54413.

After hearing this information, the jury found for the city and awarded damages that the trial court found "grossly excessive." *Id*. at 752.

On appeal, the Sixth Circuit set aside the jury's verdict because of these and other improper comments and remanded for a new trial on both damages and liability. *City of Cleveland*, 624 F.2d at 759-60.  Cleveland maintained that "its comments about Kiewit's stature" were relevant because they "were intended to show that defendant's ability and experience would enable it to determine the condition of the dock in advance of entering the agreement and beginning operations." *Id*. at 757.  But the Sixth Circuit rejected that argument, explaining that, because liability does not depend upon whether a party is "a corporation, or corporation of a particular class," "it was not necessary to make mention of defendant's status as a leader in the field of marine engineering" and that Cleveland "could have demonstrated defendant's knowledge and expertise in a much less prejudicial (and perhaps an even more direct and effective) manner." *Id*.  The court explained that emphasizing the size or reputation of the defendant created prejudice by "[a]ppealing to the sympathy of jurors through references to financial disparity" between the defendant and the plaintiffs, a strategy that "is improper." *Id.*

Similarly, assuming that VNA owed a duty of care to Plaintiffs at all, the jury will be tasked with determining only whether VNA's actions were consistent with the standard of care expected of a "reasonable" water-engineering firm, *Francisco*,

10

145 Mich. App. at 259-60, possessing "ordinary learning, judgment or skill," *Lozano*, 2013 WL 1632019, at *5. Accordingly, Plaintiffs should be barred from arguing that, because of its size or sophistication, VNA owed a higher duty than a "reasonable" water-engineering firm with "ordinary learning, judgment or skill." As the Court noted at the hearing on the motions *in limine* for the class trial, "what would be prohibited is saying as a result of being a global water consulting firm, they should have done better than others." Tr. of Jan. 23, 2024 Hrg. 52:15-17, No. 16-10444 ECF No. 2822, PageID.93647. For the same reasons, Plaintiffs' standard-of-care expert should be limited to opining on whether VNA's actions were consistent with those of a reasonable water-engineering firm of ordinary learning, judgment, or skill and barred from opining that VNA's duty is in any way a function of its size and sophistication.

## IV. Arguments That The Jury Should "Send A Message" To VNA Or Other Corporations

Because punitive damages are not at issue in this case, arguments that the jury should render a verdict that "sends a message" to VNA or others are impermissible.

Because there is no claim for punitive damages in this case, any suggestion that the jury should use its verdict to "send a message" to VNA or others is impermissible because it urges the jury to return a verdict intended to punish. *Slappy v. Detroit*, No. 19-cv-10171, 2021 WL 2986284, at *7 (E.D. Mich. July 15, 2021) (barring "send a message" arguments because they "can have no appeal other than

to prejudice and amount to an improper distraction from the jury's sworn duty to reach a fair, honest and just verdict" (internal quotation marks omitted)); *Locke v. Swift Transp. Co. of Ariz.*, No. 18-cv-119, 2019 WL 6037666, at *2 (W.D. Ky. Nov. 14, 2019) (barring "any questions, evidence, or arguments that the jury should send a message, protect the public, or punish with its verdict" because those arguments "are disfavored in this circuit" and, when punitive damages are not at issue, "often become an improper distraction from the jury's sworn duty to reach a fair, honest and just verdict" (citations omitted)).

The Court should bar any arguments implying that the jury should return a verdict that "sends a message" to VNA or to other companies.

## V.  Statements To The Effect That The Jury Is The Only Entity With The Power To Regulate Or Change VNA's Conduct

Plaintiffs' counsel likewise should not be permitted to argue that the jury is the only entity with the power to alter VNA's conduct or the conduct of others. That limitation is appropriate not only because rhetoric about how the jury is responsible for changing conduct is transparently geared to inflaming the jury to act with an inappropriate punitive or deterrent mindset, but also because the argument would be false and highly misleading to the jury. In fact, a host of alternative means exist for regulating the practices of engineering firms and for ensuring that those practices appropriately protect public safety and comply with applicable law. *Cf. Collins v. Union Pac. R.R.*, 207 Cal. App. 4th 867, 883 (2012) (argument that "the jury is

empowered to 'make [a] change'" to defendant's conduct was attorney misconduct appealing to jurors' passions and prejudices, thus justifying determination that damages were excessive and that a new trial was necessary).

## VI. Statements That VNA Acted "Unethically," "Put Profits Over Safety," Or Violated Some Normative Criterion Other Than The Standard Of Care

Plaintiffs should be prohibited from arguing that VNA acted "unethically," that it "put profits over safety," or that it violated some normative criterion other than the standard of care for a water-engineering firm. Plaintiffs' claim against VNA is for professional negligence. In professional-negligence cases, "[t]he rule is firmly established that defendant[s] [are] bound to use the degree of diligence and skill which is ordinarily possessed by the average of the members of the profession in similar localities." *Cox*, 467 Mich. at 21 (quoting *Rytkonen*, 269 Mich. at 274).

Arguments should thus focus on whether VNA's conduct met the standard of care for an average water-engineering firm in Flint or similar localities. Comments about whether VNA acted "ethically" or violated some other normative criterion would misstate the legal standard that the jury is to apply to VNA's actions, distract the jury from its assigned task, and suggest a verdict based on an improper basis. Statements like that would serve no legitimate purpose but could incite the passions of the jury and prejudice VNA.

Similarly, assertions about VNA's alleged motives—such as that VNA "put profit over safety"—have no place in a professional-negligence case because the motive for VNA's actions is not relevant.[4]  The only relevant question is whether VNA demonstrated "the degree of diligence and skill which is ordinarily possessed by the average members of the profession in similar localities."  *Cox*, 467 Mich. at 21.  Just as VNA cannot argue that it met the standard of care for a professional water engineer by relying on its good intentions to help the people of Flint, Plaintiffs cannot prevail by asserting that VNA had a profit motive.  The only question for the jury is whether the water-engineering services that VNA provided pursuant to its contract with Flint met the applicable standard of care.  Assertions about VNA's alleged motives would serve no purpose but to inflame the jury and encourage a verdict based on passion and prejudice.

## VII.  Comments About Opposing Counsel

Previously in this litigation, one of Plaintiffs' counsel has made improper comments about opposing counsel and engaged in other distracting tactics.  For example, he asked a witness whether it was "kind of batshit crazy" that VNA's attorneys had taken a particular position.  Ex. 2, Croft Dep. 895:1-13.  He also repeatedly raised what he dubbed "irony objection[s]" to questions posed by VNA's

---

[4]  Notably, the trial will not involve punitive damages, the only issue as to which VNA's motives could potentially have been relevant.

counsel to MDEQ employee Michael Prysby, implying that it was ironic that VNA was questioning the conduct of other water engineers. Ex. 3, Prysby Dep. 77:10-24, 78:5-1, 78:15-22, 82:12-21, 88:12-89:1, 89:15-20. He asked a witness to answer questions on the assumption that "you and I were having a drink at a bar and you felt comfortable talking to me . . . and you had no doubt whatsoever that everything you've told me would either be confidential or I would forget anyway because we are drinking so much at the bar." Ex. 4, McCaffrey Dep. 68:22-69:7. And he contrasted recommendations that VNA made to Flint with recommendations his wife made to him: "There's a lot of times where my wife recommends that I change my attitude. She tells me all the time I'm just—you know, I'm not being nice to the kids, or I'm not being nice to her. And she tells me I ought to be. She recommends that I do it. . . . There's definitely a difference from my perspective between having a conversation about the possibility of going back to the Detroit water source and saying to them, 'Guys, we are Veolia. We're the engineer folks. We're telling you we can do what you want us to do, but we recommend that you go back to the Detroit water source.'" Ex. 5, Nicholas Dep. 365:11-366:3.

To prevent this improper and distracting conduct from occurring in front of the jury, VNA seeks an order directing Plaintiffs' counsel not to (1) make personal comments about opposing counsel or their arguments; (2) raise "irony" objections; (3) ask witnesses to assume that they are having a drink at a bar; (4) draw

comparisons to counsel's personal life; or (5) engage in any similar improper and distracting tactics.  This conduct serves no legitimate purpose, would distract the jury from the issues in the case, and would be prejudicial to VNA.  Indeed, courts universally condemn attacks on opposing counsel.  *See, e.g.*, *United States v. Carter*, 236 F.3d 777, 785 (6th Cir. 2001) ("[T]his court, along with the Supreme Court, has repeatedly noted that it is improper for counsel to make personal attacks on an opposing advocate.").  There also is no such thing as an "irony" objection; it is a prejudicial stunt, plain and simple.  Requests that witnesses assume that they are at a bar rest on an unfounded predicate.  And invocations of counsel's wife are likewise unfounded and are calculated to curry favor with the jury.

The Court should bar all of these and any similar comments and tactics.

## VIII. Statements To The Effect That The Compensation That Plaintiffs May Receive From Non-Parties Is Inadequate

Plaintiffs may argue that the compensation they receive from various non-parties is not sufficient to make them whole.  They may also imply that an assignment of fault to non-parties will not result in an actual payment to Plaintiffs. The Court should not allow any such arguments because they are not relevant to the only question at trial about the non-parties, which is how much fault for Plaintiffs' alleged injuries should be allocated to them.

Under Michigan's fair-share liability scheme, the jury allocates fault among all potentially responsible persons "regardless of whether the person is, or could

have been, named as a party to the action." Mich. Comp. Laws § 600.2957.  It does not matter whether the non-party can be made to pay for its share of fault; "[under] MCL 600.2957 and MCL 600.6304, the allocation of fault is not dependent on whether a plaintiff can recover damages from the nonparty." *Goodwin v. Nw. Mich. Fair Ass'n*, 325 Mich. App. 129, 145-46 (2018).  The "inability to recover damages against a [non-party] in no way precludes an assessment of [the non-party's] fault for purposes of accurately determining a defendant's liability and ensuring that a defendant only pays his or her fair share." *Id.* at 133.

Plaintiffs' ability to recover damages from a non-party is not relevant to the allocation of fault to that non-party.  Moreover, any statement about the compensation that Plaintiffs may receive from other parties would impermissibly interject facts outside the record into the trial. *See Rommel-McFerran Co. v. Loc. Union No. 369*, 361 F.2d 658, 661 (6th Cir. 1966) (it is reversible error to refer to extra-record information during closing argument if that information has a reasonable probability of influencing the verdict).

The Court therefore should order Plaintiffs not to suggest that the compensation that they may receive from potential non-parties at fault is inadequate; that this trial is their only opportunity to be compensated for their injuries; that Plaintiffs will not receive compensation for any share of fault assigned to non-parties; or that any portion of fault assigned to non-parties will result in Plaintiffs

17

being undercompensated.  As the Court stated at the hearing on the motions *in limine* in Bellwether I, "[t]hat's not proper" argument.  Tr. of Jan. 21, 2022 Hrg. 43:2, ECF No. 646, PageID.43390.  That was correct; such arguments would be irrelevant, would interject non-record material into the trial, and would suggest a verdict based on improper factors—*i.e.*, maximizing Plaintiffs' ability to recover damages rather than accurately identifying each individual's or entity's relative share of fault for Plaintiffs' alleged injuries.  *Cf. Sasaki v. Class*, 92 F.3d 232, 237 (4th Cir. 1996) (referencing statutory caps on non-economic damages is reversible error because it creates "pressure" on the jury "to structure or adjust verdicts 'upward or downward' to account for the caps").

## IX.    Comments Implying A Conspiracy Between The City And VNA

Plaintiffs have suggested that there was a conspiracy or collusion between the City of Flint and VNA to cover up or downplay concerns about lead in the water. They should be precluded from making any such suggestion to the jury.  There is no evidence of an agreement between the City and VNA to limit VNA's findings or recommendations in any way, and suggesting that there was some sort of conspiracy would be enormously inflammatory and prejudicial.

It is well settled that remarks during opening statements must be based on "evidence the [attorney] intends to introduce and which in good faith he believes is admissible."  *Robertson v. McKee*, No. 09-cv-14675, 2011 WL 7112235, at *10

18

(E.D. Mich. June 20, 2011); *see Mich. First Credit Union v. Cumis Ins.*, 641 F.3d 240, 250-51 (6th Cir. 2011).  Similarly, closing arguments cannot "bring to the attention of the jury any purported facts that are not in evidence and are prejudicial." *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002).  Moreover, at any point during trial, "counsel should not introduce extraneous matters before a jury or, by questions or remarks, endeavor to bring before it unrelated subjects" that would threaten the jury's ability to render "a fair or impartial verdict."  *City of Cleveland*, 624 F.2d at 756.

There is no evidence of a conspiracy or collusion between the City and VNA to cover up or downplay lead concerns.  Instead, Plaintiffs may seek to raise a whiff of impropriety from the entirely unsuspicious fact that VNA was the only bidder for the City's modest, short-term project.   That is not evidence of a criminal conspiracy—or anything close.  Without evidence, Plaintiffs should be precluded from inflaming the jury by insinuating that VNA conspired with the City.  Any comments implying that a conspiracy existed would "inevitably invite the jury to speculate," "distract the jury from the real issues," and cause "significant[] prejudice." *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 380 F. Supp. 3d 692, 710 (N.D. Ohio 2019).

19

## CONCLUSION

The Court should grant the motion and enter an order barring the forms of improper argument identified above.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

By: /s/ *James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

**MAYER BROWN LLP**

By: /s/ *Michael A. Olsen*
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  July 22, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By: _/s/ James M. Campbell_