# Exhibit 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re* Flint Water Cases.                    Judith E. Levy
Case No. 16-cv-10444 (consolidated)          United States District Judge
_____/

*Bellwether III Cases*
Case No. 17-cv-10164
_____/

## BELLWETHER III PLAINTIFFS' RESPONSE TO VEOLIA'S NOVEMBER 10 SUBMISSION REGARDING NON-RETAINED EXPERTS

Veolia's non-retained expert submission should be rejected in its entirety for Veolia's failure to follow the Court's instructions. On October 25, 2023, the Court directed Veolia to submit certain information regarding its purported non-retained experts: Miguel Del Toral, Dr. Marc Edwards, Dr. Hernan Gomez, Warren Green, and Cristin Larder. Specifically, the Court instructed Veolia to **identify**: (1) "what [non-retained expert] testimony it will be seeking to have admitted at trial" and (2) "what qualifies as cross examination on those expert opinions." In other words, the Court asked Veolia to "**connect**" the purported expert opinions of Veolia's non-retained experts to "**the existing cross-examination**." ECF No. 2668, PageID.86882—8688 (emphasis added).

On November 10, Veolia submitted a non-compliant response, merely identifying that Individual Plaintiffs' Counsel (hereafter "Plaintiffs' Counsel") had

1

cross-examined these witnesses during their fact depositions, and simply highlighted Plaintiffs' Counsel's *entire* cross-examination. Veolia did not even attempt to address the crux of the Court's request: to "connect up" the existing cross-examination that Veolia believes addresses those subjects on which they intend for these witnesses to testify to as non-retained experts at trial. *Id.*[1]

Because Veolia did not comply with the Court's instructions, and further cannot show that Plaintiffs had the proper opportunity **and motive** to cross examine these witnesses as experts, the Court should deny Veolia's request to call them as non-retained experts, unless and until Veolia produces each one for an expert discovery deposition, and then live at trial (or for a trial preservation deposition). If the witnesses are unavailable, the Court should not permit the witnesses' expert testimony to be played for the jury.

---

[1] Additionally, Veolia openly disregarded even the basic premise of the Court's request to "identify … the opinions [Veolia is] seeking – what testimony will [Veolia will] be seeking to have admitted at the trial." *Id.*; *see* Veolia Submission at 3 ("VNA reserves the right to revise the testimony it intends to use at trial when it submits its deposition designations on the applicable pretrial deadlines."); Veolia Submission at 4, n.2 ("VNA reserves the right to argue that portions of the green-highlighted [expert] testimony are fact testimony."). Veolia's refusal to commit to the testimony or opinions they intend to put forth from these purported experts renders the present assessment of whether Plaintiffs had proper cross-examination on the purported opinions virtually futile.

## ANALYSIS

Veolia's submission and statements to the Court regarding their non-retained experts make it abundantly clear that their goal is to play these witnesses' prior fact depositions at trial. *See, e.g.,* (Exhibits B-H of Veolia's submission); [2] (Letter from Veolia Counsel, Dated September 29, 2023). A party seeking to admit a deposition at trial must prove that all of the requirements of Rule 32(a) have been met. *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990). This includes establishing that the party it is being used against had the proper "opportunity and similar motive" to develop the testimony by cross-examination. Fed. R. Civ. P. 32(a); Fed. R. Civ. P. 804(b)(1).[3]

Here, however, Plaintiffs were not aware that these fact depositions (taken in 2020 when other parties were still considered to be defendants in the litigation) would be later transformed into expert testimony *for Veolia* (to use against these now settled defendants in Veolia's non-party at fault case). Therefore, it is impossible to show that Plaintiffs had the proper opportunity and similar motive to prepare for or develop adequate cross-examination as to these witnesses in their capacity as Veolia's experts (especially in the instances where the witness is now

---

[2] Veolia has highlighted and identified opinions from Warren Green's 2020 and 2021 depositions in addition to his 2022 trial testimony.

[3] This requirement also applies to Veolia's request to play Warren Green's 2022 trial testimony.

being used to support non-party defense claims against now settled defendants). Accordingly, Veolia cannot (and should not be permitted to) retroactively transform prior fact depositions into expert testimony at trial. *See Miller v. Coty*, No. 3:14-CV-443-CRS, 2018 U.S. Dist. LEXIS 215867, at \*19-21 (W.D. Ky. Dec. 21, 2018).

Moreover, as discussed above, Veolia failed to even attempt to "**connect**" the purported expert opinions of their non-retained experts to "**the existing cross-examination**." ECF No. 2668, PageID.86882—8688 (emphasis added). Instead, Veolia highlights hundreds of pages of expert testimony and then haphazardly selects Plaintiffs' Counsels' *entire cross* examination for the Court's edification.[4]

Setting aside Veolia's disregard for the Court's instructions, Plaintiffs nonetheless reviewed the highlighted portions of the transcripts, and can confirm that they **did not have the opportunity (much less the motive)** to cross-examine these witnesses on the expert opinions Veolia intends to set forth. By way of example, Plaintiffs have created a non-exhaustive chart for each witness, identifying a few (among many) of the non-retained expert opinions highlighted by Veolia,

---

[4] In addition, Veolia's indication that Plaintiffs' Counsel somehow consented to these witnesses being used as experts by nature of his questions is not only misleading, but it is wholly irrelevant to the assessment of whether adequate cross-examination on certain subjects took place. *See, e.g.,* Veolia Submission at 7 ("Notably, Mr. Stern's own questioning of Dr. Gomez reflected his understanding that VNA 'is trying to use [Dr. Gomez] as an expert witness ....'").

which Plaintiffs' Counsel did not have the proper motive or opportunity to cross-examine the witness on. ***See Attached Exhibit A.***

Finally, the Court also requested that Plaintiffs (in response to Veolia's submission) "identify areas that [Veolia] has identified are going to be expert testimony and whether those are areas that you're still seeking cross-examination on." ECF No. 2668, PageID.86882—8688. Because it was impossible to have the same motive and preparation for *proper expert cross-examination* at these witnesses' *prior fact testimony depositions (or testimony as a fact witness at trial)*, Plaintiffs request and intend to seek cross-examination on all of the expert opinions identified by Veolia. However, to the extent the Court is seeking to limit the scope of cross-examination, then Plaintiffs at a minimum request cross-examination on the topics related to the opinions on the attached Exhibit A.

## **CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request that the Court deny Veolia's request to call these witnesses as non-retained experts unless and until Veolia produces them for an expert discovery deposition and then live at trial (or for

a trial preservation deposition).[5] If they are unavailable for any of the above, then the Court should only permit the fact portion of the prior depositions to be played.[6]

**Dated:** November 27, 2023                                    Respectfully submitted,

                                                 **LEVY KONIGSBERG, LLP**

                                                 /s/ COREY M. STERN
                                                 Corey M. Stern
                                                 Melanie Daly
                                                 605 Third Avenue, 33rd Floor
                                                 New York, New York 10158
                                                 (212) 605-6200
                                                 cstern@levylaw.com

---

[5] Having already informed Plaintiffs and the Court that upon their inquiry, none of the witnesses will appear voluntarily, the burden must be placed on Veolia to produce these witnesses. It is counterintuitive to force Plaintiffs to issue subpoenas and ultimately move to compel the testimony when Plaintiffs do not believe these witnesses should be permitted to testify as experts in the first place.

[6] Subject to the Court's rulings on the parties' designations, counter-designations, and objections.

# **Exhibit A**

### 1. **Cristin Larder**

| P&L | Summary of Purported Opinion | Actual Cross-Examination |
|---|---|---|
| 70:1–71:4; 81:22–82:5 | Ms. Larder's Expert opinion that: *only* July 2014, August 2014, and September 2014 presented "statistically significant" blood lead levels in children in flint.[7] | There is zero cross-examination that connects to this opinion.<br><br>Had Plaintiffs' Counsel known that Ms. Larder's opinion that there were only significant lead levels in 2014 (which falls outside the 2015 liability time frame the Court later ruled applied to Veolia) was going to be admitted as expert testimony, Plaintiffs' Counsel would have questioned the credibility of that opinion. For example, Plaintiffs' Counsel would have asked about the validity of the study; the reference level she used to determine what constitutes elevated (she used 5 which has since been lowered to 3.5); and the impact of using individual versus aggregate data. |

### 2. **Dr. Hernan Gomez**

| P&L | Summary of Purported Opinion | Actual Cross-Examination |
|---|---|---|
| 36:16–43:17; 45:19–52:13 | Dr. Gomez's Expert opinion that: From 2006 to 2016 there was a 72.9% decrease in the percentage of BLLs > 5 µg/dL, including a steady decline in the percentage of children above the reference value of > 5 µg/dL. Dr. Gomez is expected to testify that in 2006, 11.8% of children in Flint had BLLs above > 5 µg/dL but as of 2016, 3.2% of children were above said reference value. He is also expected to testify that there was an increase in BLLs >5 µg/dL during the years 2014 (3.3%) and 2015 (3.7%); **however, these differences were not** | There is zero cross-examination that connects to this opinion.<br><br>Plaintiffs' Counsel did not prepare nor question Dr. Gomez with the same motive that he would have had Plaintiffs' Counsel known that Dr. Gomez would be put forth as an expert. For example, counsel did not review or cross examine Dr. Gomez on: 1) the methodology of his studies; 2) the materials or data he relied on; and 3) the margin of error on his results.<br><br>Moreover, Plaintiffs' Counsel did not have the motive or opportunity to inquire as to the methods, means, and comparative values regarding the opinion that the increase of 3.3% or 3.7% were "not statistically significant." |

---

[7] *See* Ex. B at page 12-17.

| | | |
|---|---|---|
| | **statistically significant.**[8]<br><br>Derived from: Hernan F. Gomez, et. al., Blood Lead Levels of Children in Flint, Michigan:2006-2016 (Journal of Pediatrics, 2018) | |
| 48:21–50:23 | Dr. Gomez Expert opinion that: the events of the FWC did not reach levels that warranted the classification of an environmental emergency compared to the percentage of BLLs > 5μg/dL in other counties in Michigan.[9] | There is zero cross-examination that connects to this opinion. |
| 54:4–59:19; 61:2–66:24 | Dr. Gomez's Expert opinion that: Dr. Gomez is expected to testify consistent with the results of this study that the geometric mean of BLLs decreased from 2.19 ug/dL in Period I to 1.47 ug/dL in Period II. Dr. Gomez is expected to testify that the geometric mean of BLLs in Flint further decreased from 1.47 ug/dL in Period II to 1.32 ug/dL in Period III. Dr. Gomez is expected to testify that the decrease from Period II to Period III *was statistically significant.*[10]<br><br>Derived from: Hernan F. Gomez, et. al., Analysis of blood lead levels of young children in Flint, Michigan before and during the 18-month switch to Flint River water (Clinical Toxicology, 2019) | There is zero cross-examination that connects to this opinion. |
| 67:9–70:4. | Dr. Gomez's Expert opinion that: The analysis of geometric mean BLLs and percentages of BLLs > 5 | Plaintiffs' Counsel did engage in some vague cross-examination essentially confirming that Dr. Gomez's studies were done on a macro level; that it is possible |

---

[8] *See* Ex. B at page 4.

[9] *See* Ex. B at page 5.

[10] *See* Ex. B at page 7.

| | | |
|---|---|---|
| | μg/dL do not support the common perception that there was a global increase in BLLs in young children of Flint during the entire 18-month period of exposure. He is expected to testify that this data does not support the concept of a global BLL increase that would merit the stigma associated with a generation of children with intellectual deficits.[11]<br><br>Derived from: Hernan F. Gomez, et. al., Analysis of blood lead levels of young children in Flint, Michigan before and during the 18-month switch to Flint River water (Clinical Toxicology, 2019). | that there are individual children who are not represented in his study; and that he did not individually assess the four Bellwether I children.   137:8–140:4; 140-5-141:6; 142:5-144:2; 152:9-22.<br><br>However, Plaintiffs' Counsel did not prepare nor question him with the same motive that he would have had Plaintiffs' Counsel known that he would be put forth as an expert. For example, counsel did not individually review or cross examine Dr. Gomez on: 1) the methodology of his studies; 2) the materials or data he relied on; and 3) the margin of error on his results.<br><br>In addition, Plaintiffs' Counsel did not ask about the current Bellwether III Plaintiffs, and presumably Veolia will object that any existing cross-examination regarding Bellwether I children is in admissible.<br><br>Also, a significant amount of the cross-examination from Plaintiffs' Counsel is inextricably intertwined with discussions regarding the settlement, and presumably Veolia will object that such existing cross-examination is inadmissible. |
| 79:19–81-6 | Dr. Gomez's expert opinion that: the characterization of Flint's children as "poisoned" due to lead exposure is unjust, inaccurate, and contributes to unwarranted stigma.<br><br>Derived from: Hernan F. Gomez & Kim Dietrich, The Children of Flint Were Not 'Poisoned', N.Y. Times, July 22, 2018, https://www.nytimes.com/2018/07/22/opinion/flint-lead-poisoningwater.Html | Plaintiffs' Counsel did engage in some limited cross-examination as to Dr. Gomez's concerns for stigma. 159:1–167:14.<br><br>However, Plaintiffs' Counsel did not cross-examine Dr. Gomez on the basis of his opinion; whether it is shared in the medical community; how he would characterize the Bellwether III children; prepare or present him with studies that define poisoning differently; or prepare or present him with sources showing that low levels of exposure cause cell death and therefore poisoning. |

---

[11] *See* Ex. B at page 7-8.

### 3. **Miguel Del Toral**

| P&L | Summary of Purported Opinion | Actual Cross-Examination |
|---|---|---|
| 60:8–65:3; 72:1-73:3 | Mr. Del Toral's expert opinion that: Before switching water sources, a water supplier *should* conduct an evaluation to make sure that the change in water chemistry will not adversely impact infrastructure and that the water supplier is required to notify the state and receive approval before making a water source switch.[12] | There is zero cross-examination that connects to this opinion. Although Plaintiffs' Counsel asked some questions about whether it is necessary to continually monitor water sources, s*ee, e.g.,* 511:19–512:13, he did not cross examine Mr. Del Toral on the opinion that a water supplier should conduct such evaluation or how the lack of such a recommendation impacts Veolia's responsibilities or their liability for the Flint Water Crisis.

Had Plaintiffs' Counsel known that Mr. Del Toral would be testifying as an expert for Veolia on this subject, the motive and preparation of the examination would have been entirely different. For example, counsel would have asked more details about the nature of the evaluation; whether Veolia could and should have known and pointed this out to the City of Flint upon their arrival; whether an evaluation should have been requested before any other sort of solution was recommended (such as those recommended by Veolia). |
| 117:5-16 115:13– 116:21 | Mr. Del Toral's expert opinion that the MDEQ bears primary responsibility for the water contamination in Flint.[13] | There is zero cross-examination that connects directly to this opinion. Although Plaintiffs' Counsel asks about Veolia's knowledge of the lead problem and the recommendations made in its report to address those problems, 578:6–583:7, 765:11–765:23, Plaintiffs' Counsel does not inquire as this specific statement or its origin.

More importantly, this specific statement and opinion is not one of Mr. Del Toral's **but rather a conclusion taken directly from the Task Force Report,** which the Court has already ruled is inadmissible under *Dortch v. Fowler*, 588 F.3d 396, 402 (6th Cir. 2009).

There is zero cross-examination on the Task Force Report or its conclusions. |

[12] *See* Veolia Ex. B at 19-20
[13] *See* Veolia Ex B. at 20.

| 118:7–122:8 | Conclusions from the Task Force Report. | Veolia improperly highlights conclusions from the **Task Force Report** as "fact" testimony. Again, the Court has already ruled that it the Task Force Report is inadmissible under *Dortch v. Fowler*, 588 F.3d 396, 402 (6th Cir. 2009).<br><br>There is zero cross-examination on the Task Force report or its conclusions. |

### 4. **Dr. Marc Edwards**

| P&L | Summary of Purported Opinion | Actual Cross-Examination |
|---|---|---|
| 252:7–261:22 | Dr. Edwards' Expert opinion that: The average maximum biosolids lead measurements during the Flint water Crisis in 2015 were comparable to those pre-Flint water Crisis in the summer of 2012 and 2013.75 Dr. Edwards will testify that his analysis suggests that the worst lead exposure during the Flint Water Crisis was restricted to June–October 2014. | There is zero cross examination that connects to this opinion.<br><br>Dr. Edwards has issued two new papers on this subject since his 2020 deposition.<br><br>Moreover, it is important to note that almost all of Veolia's Bellwether III experts rely on Dr. Edwards biosolids opinions and conclusions. Therefore, it would be highly prejudicial to permit this deposition testimony without adequate cross-examination. |
| 502:7–14 | Dr. Edwards' Expert opinion that: "lead levels in the water were not as bad as first feared: Water lead levels did increase sharply during the first few months of the water crisis [from April 2014 through approximately August 2014], but for most of the time the city was receiving its water from the Flint River, the average levels of lead in drinking water were indistinguishable from those before the [April, 2014] switch" to the Flint River." | Although Plaintiffs' Counsel generally cross-examined Dr. Edwards as whether he is concluding that the children of Flint are not hurt, 499:7–506:9, there is zero direct cross examination as to conclusions which led Dr. Edwards to his opinions about lead levels, the reliability of his methods, or any inquiry into the credibility of these statements. |

### 5. **Warren Green**

| P&L | Summary of Purported Opinion | Actual Cross-Examination |
|---|---|---|
| June 25, 2020, Dep. Tr. at 22:10-23:1 | Mr. Green's Expert opinion that: the City of Flint knew and understood and the use of phosphates to control the distribution system lead and corrosion, but intentionally delayed | There is zero cross-examination that connects to the opinion that the City intentionally delayed implementing phosphate based treatment. |

| ;45:24-46:9. | implementing phosphate-based treatment. | |
|---|---|---|
| June 25, 2020, Dep Tr. at 38:5–42:7.<br><br>March 10, 2022, Bellwether I Tr. at 1209:5–1216:8. | <u>Mr. Green's Expert opinion that:</u> VNA acted appropriately and he does not disagree with any of Veolia's recommendations.[14] | Plaintiffs' counsel engages in a limited cross examination regarding the recommendation to contract with engineer to initiate discussions of a corrosion control chemical. March 16, 2022, Bellwether I Tr. at 1319:23–1323:23<br><br>However, there is zero cross examination as to the remaining recommendations.<br><br>Moreover, Plaintiffs' counsel did not have the same motive to cross-examine Mr. Green on the fact that he agreed with *all* of Veolia's recommendations as an "expert." Plaintiffs' cross-examination of this statement would be far different now that he is being set forth as an expert, especially considering that Plaintiffs' new Bellwether III expert has opined that VNA's liability expands beyond just the failure to suggest corrosion control and a switch to back to DWSD. |
| June 25, 2020, Dep Tr. at 41:21–42:7<br><br>June 29, 2020, Dep Tr. at 731:13–733:10<br><br>March 10, 2022, Bellwether I Tr. at 1211:8-24<br><br>March 16, | <u>Mr. Green's Expert opinion that:</u> that it was reasonable for an engineer to understand that Veolia's recommendation to consider adding phosphate was separate and in addition to the recommendation for polyphosphate. | Plaintiffs' counsel engaged in limited cross-examination asking whether Mr. Green agreed that a portion of Veolia's report could have been rewritten to explain the urgency of the use of polyphosphate as a corrosion control. June 29, 2020, Dep at 734:5–735:2 (June 29, 2020). However, the motive, length, and depth of this cross examination would have been far different had Plaintiffs' counsel known that Veolia was going to call Warren Green as an expert regarding the reasonableness of Veolia's recommendations. |

---

[14] *See* Veolia Exhibit B at 47.

| | | |
|---|---|---|
| 2020, Bellwether I Tr. at 1296:8-16. | | |