**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re Flint Water Cases* | No. 5:16-cv-10444-JEL-EAS |
| | HON. JUDITH E. LEVY |
| | MAG. ELIZABETH A. STAFFORD |

**CLASS PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES & REIMBURSEMENT OF EXPENSES AS TO THE VNA SETTLEMENT**

For the reasons stated in the attached Memorandum and supporting declarations and exhibits, Class Plaintiffs move the Court pursuant to Federal Rules of Civil Procedure 23(h) and 54(d) to approve (1) their proposal for attorneys' fees to be awarded to Class Counsel,[1] (2) their request for reimbursement of expenses incurred by Class Counsel, and (3) their request for modest service awards.[2]

Dated: July 30, 2024

Respectfully submitted,

By: */s/Theodore J. Leopold*
Theodore J. Leopold
COHEN MILSTEIN SELLERS
& TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com
***CO-LEAD CLASS COUNSEL***

By: */s/ Michael L. Pitt*
Michael L. Pitt
PITT MCGEHEE PALMER BONANNI
& RIVERS, P.C.
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
Telephone: (248) 398-9800
mpitt@pittlawpc.com
***CO-LEAD CLASS COUNSEL***

---

[1] Collectively, Co-Lead Class Counsel, Settlement Subclass Counsel, and the law firms working with and under the supervision of Co-Lead Class Counsel, including the Plaintiffs' Executive Committee.

[2] VNA has agreed to take no position with respect to this motion. *See* VNA Class Settlement Agreement ("VSA") ¶ 9.2, ECF No. 2958-1, PageID.99373.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on July 30, 2024.


Dated: July 30, 2024                    By: */s/Theodore J. Leopold*
                                        Theodore J. Leopold
                                        COHEN MILSTEIN SELLERS
                                        & TOLL PLLC
                                        11780 U.S. Highway One, Suite N500
                                        Palm Beach Gardens, FL 33408
                                        Telephone: (561) 515-1400
                                        tleopold@cohenmilstein.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| *In Re* Flint Water Cases | No. 5:16-cv-10444-JEL-EAS |
| | HON. JUDITH E. LEVY |
| | MAG. ELIZABETH A. STAFFORD |

**MEMORANDUM IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES & REIMBURSEMENT OF EXPENSES AS TO THE VNA SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES.......................................................................... ii

CONCISE STATEMENT OF THE ISSUES PRESENTED .......................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................... vii

I.     INTRODUCTION.................................................................................. 1

II.    PROCEDURAL HISTORY & FEE FRAMEWORK .......................... 2

III.   ARGUMENT ......................................................................................... 4
       A.   The Court Should Reapprove the Fee Framework and Award. ................. 4
            1.   The Framework's Common Benefit Assessments Should be Reapproved............................................................................. 6
            2.   The Court Should Award Attorneys' Fees Using the Percentage of the Fund Approach. ......................................... 9
            3.   The Total Fee Is Appropriate When Compared to Other Percentage of the Fund Awards. ................................... 12
            4.   The *Ramey* Factors Justify the Fee Framework and Total Award..... 13
       B.   The Court Should Approve Class Counsel's Request for Reimbursement of Reasonable Litigation Expenses .............................. 20
       C.   The Court Should Approve Class Counsel's Request for Modest Class Representative Service Awards ...................................... 22

IV.    CONCLUSION .................................................................................... 25

CERTIFICATE OF SERVICE..................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.*,
  No. 3:14-CV-204-DJH, 2024 WL 3361639 (W.D. Ky. July 10, 2024) ........... 24

*Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*,
  684 F. Supp. 953 (N.D. Ohio 1988) (reversed on other grounds) ..................... 17

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) ............................................................................. 17

*In re Bayou Sorrel*,
  No. 6:04-cv-1101, 2006 WL 3230771 (W.D. La. Oct. 31, 2006) ..................... 13

*Blum v. Stenson*,
  465 U.S. 886 (1984) .......................................................................................... 10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ............................................................................................ 6

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ............................................................................. 12

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ........................................................................... 10

*In re Cardinal Health Inc. Sec. Litig.*,
  528 F. Supp. 2d 752 (S.D. Ohio 2007) .............................................................. 18

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................ 10, 13, 21

*Connectivity Sys. Inc. v. Nat'l City Bank*,
  No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011) ..................... 16

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
  248 F.R.D. 483 (E.D. Mich. 2008) .................................................................... 10

*Emch v. Cmty. Ins. Co.*,
   No. 1:17-CV-00856, 2021 WL 9096702 (S.D. Ohio Aug. 9, 2021) ................ 23

*In re Flint Water Cases*,
   499 F. Supp. 3d 399 (E.D. Mich. 2021) .............................................................. 20

*In re Flint Water Cases*,
   583 F. Supp. 3d 911 (E.D. Mich. 2022) ................................................................ 1

*In re Flint Water Cases*,
   63 F.4th 486 (6th Cir. 2023) (rehearing en banc denied Apr. 24, 2023) ............ 2

*Garner Props. & Mgmt., LLC v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020) ...................................................................... 14

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
   No. MDL 05-1708, 2008 WL 682174 (D. Minn. Mar. 7, 2008) .................. 6, 12

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
   No. MDL 05-1708 DWF/AJB, 2008 WL 3896006 (D. Minn. Aug. 21,
   2008) ................................................................................................................ 6, 12

*Hadix v. Johnson*,
   322 F.3d 895 (6th Cir. 2003) ........................................................................ 23, 24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................................ 14

*Hunter v. Booz Allen Hamilton Inc.*,
   No. 2:19-CV-00411, 2023 WL 3204684 (S.D. Ohio May 2, 2023) ................. 24

*In re IPO Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................ 16

*Johnson v. Midwest Logistics Sys., Ltd.*,
   No. 2:11-CV-1061, 2013 WL 2295880 (S.D. Ohio May 24, 2013) ................. 24

*Kimble v. First American Home Warranty Corp.*,
   No. 23-10037, 2024 WL 3325705 (E.D. Mich. July 8, 2024) ........................... 18

*Linneman v. Vita-Mix Corp.*,
   970 F.3d 621 (6th Cir. 2020) .............................................................................. 15

*In re MGM Grand Hotel Fire Litig.*,
    660 F. Supp. 522 (D. Nev. 1987) ..................................................... 9, 13

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ......................................................................... 12

*Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*,
    No. 15-CV-2956, 2022 WL 4079559 (S.D. Ohio Sept. 6, 2022) ...................... 24

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016)..................................................... 10

*In re NuvaRing Prods. Liab. Litig.*,
    No. 4:08-MDL-1964 RWS, 2014 WL 7271959 (E.D. Mo. Dec. 18,
    2014)............................................................................................ 9, 21

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)........ 10, 13

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ......................................................................... 17

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016)............................................... 23

*Ramey v. Cincinnati Enquirer, Inc.*,
    508 F.2d 1188 (6th Cir. 1974).......................................................... 13

*Rawlings v. Prudential-Bache Prop., Inc.*,
    9 F.3d 513 (6th Cir. 1993)..................................................*passim*

*Robles v. Comtrak Logistics, Inc.*,
    No. 15-CV-2228, 2022 WL 17672639 (W.D. Tenn. Dec. 14, 2022) ............... 23

*Sellards v. Midland Credit Mgmt., Inc.*,
    No. 1:20-CV-02676, 2023 WL 3869023 (N.D. Ohio May 2, 2023) ................ 24

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
    825 F.3d 299 (6th Cir. 2016)............................................................ 24

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)................ 14

*Smillie v. Park Chem. Co.*,
   710 F.2d 271 (6th Cir. 1983) .................................................................. 14

*Stanley v. U.S. Steel Co.*,
   No. 04-74654, 2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ......................... 10

*In re Vioxx Prod. Liab. Litig.*,
   650 F. Supp. 2d 549 (E.D. La. 2009) ................................................. 12

*In re Zyprexa Prods. Liab. Litig.*,
   424 F. Supp. 2d 488 (E.D.N.Y. Mar. 28, 2006) .................................... 13

*In re Zyprexa Prods. Liab. Litig.*,
   No. MDL-1596, 2007 WL 2340790 (E.D.N.Y. Aug. 17, 2007) ........................ 13

**Other Authorities**

5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:3 (6th ed.) ........................ 23

5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:12 (6th ed.) ..................... 24

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.   Should the Court re-approve the framework for attorneys' fees to be awarded to Class Counsel?

2.   Should the Court approve Class Counsel's application for a common benefit assessment from the Qualified Settlement Fund?

3.   Should the Court approve Class Counsel's application for reimbursement of expenses?

4.   Should the Court approve $10,000 Service Awards to the Class Representatives?

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *In re Flint Water Cases*, 63 F.4th 486 (6th Cir. 2023) ("*ASA Fee Appeal*").

- *In re Flint Water Cases*, 583 F. Supp. 3d 911 (E.D. Mich. 2022) ("*ASA Fee Order*").

- *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-EAS (E.D. Mich.), ECF No. 3027 ("*LAN Fee Order*").

- *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974).

- *In re Flint Water Cases*, 2023 WL 7724502 (E.D. Mich. Nov. 15, 2023) ("*LAN Preliminary Approval*").

- *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-EAS (E.D. Mich.), ECF No. 3009 ("*VNA Preliminary Approval*").

# I.    INTRODUCTION

Working together, Plaintiffs' Counsel[1] secured an initial combined settlement fund of $634.5 million for those injured by the Flint Water Crisis, including approximately $45 million more in interest accrued due to investments authorized by Plaintiffs' Counsel. Now, Class Counsel's[2] settlement with VNA[3] provides the Class another $25 million, increasing the total amount of settlements for the benefit of the Flint community to more than $700 million after more than eight years' work, which involved an enormous investment of time and money by the lawyers and law firms involved, all done on contingency.

In connection with the settlement with the State of Michigan, this Court established a framework for attorneys' fees in this case ("Fee Framework"), which the Sixth Circuit upheld on appeal and that the Court renewed for purposes of the LAN Settlement. *In re Flint Water Cases*, 583 F. Supp. 3d 911 (E.D. Mich. 2022) ("*ASA Fee*

---

[1] "Plaintiffs' Counsel" refers to Co-Lead Class Counsel and Co-Liaison Counsel, as well as Settlement Subclass Counsel ("SSC") and the law firms that have worked with and under the supervision of Co-Lead Class Counsel, including the Plaintiffs' Executive Committee.

[2] "Class Counsel" includes Co-Lead Class Counsel, SSC, and firms working under the supervision of Co-Lead Class Counsel, including the Executive Committee. Co-Liaison Counsel, representing Individual Plaintiffs, continue to litigate against VNA and thus do not join in this motion.

[3] Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "VNA").

*Order*"); *In re Flint Water Cases*, 63 F.4th 486 (6th Cir. 2023) (rehearing en banc denied Apr. 24, 2023); *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-EAS (E.D. Mich.), ECF No. 3027 ("*LAN Fee Order*"). That Framework—which included a 6.33% common benefit fee to Co-Lead Class Counsel and Co-Liaison Counsel and a 25% fee on the class and individual portions of the settlement,[4] for a total fee of 31.33% for class and individual claimants—ensured similarly situated claimants recovered similarly from the settlement fund. As the Court previously concluded, the total fee and Framework was, and is, reasonable in light of the results obtained and efforts expended. Accordingly, Class Counsel ask that the Court award the same total fee to the additional amounts included in the settlement fund as a result of the VNA Settlement, but apply a modified version of the same Fee Framework that awards the common benefit fee to Class Counsel only because the VNA Settlement involves only Class Claims obtained by Class Counsel. Class Counsel also request reimbursement from the settlement fund for expenses of $885,710.39 incurred in prosecuting this litigation, together with any additional expenses incurred and approved by the Special Master.

## II.    PROCEDURAL HISTORY & FEE FRAMEWORK

The VNA Settlement was the product of eight years of hard-fought litigation and

---

[4] The ASA included a 10% fee on the programmatic relief component. Neither the LAN Settlement Agreement ("LSA") or VNA Settlement Agreement ("VSA") include the programmatic relief component.

was reached days before the start of a lengthy jury trial on behalf of the issues classes and subclasses certified by the Court. Cohen Milstein and Susman Godfrey were principally responsible for developing the class claims against VNA, briefing motions relating to VNA's liability, managing the experts who addressed the claims against VNA (in conjunction with Weitz & Luxenberg), and preparing the case through trial. Cohen Milstein and Susman Godfrey also managed settlement discussions with VNA, which spanned more than a year and involved multiple mediation sessions and the drafting and negotiation of a complex settlement agreement. In addition to Cohen Milstein and Susman Godfrey, Weitz & Luxenberg and other Executive Committee firms provided significant assistance in preparing the claims against VNA for trial.

As a result of these efforts, Class Counsel ultimately secured a settlement with VNA which supplements the previous settlement fund of $634.5 million with an additional $25 million for class members.[5] On June 17, 2024, the Court preliminarily approved the VNA Settlement, requiring any motion for attorneys' fees and expenses be filed on or July 30. *In re Flint Water Cases*, No. 5:16-cv-10444-JEL-EAS (E.D. Mich.), ECF No. 3009 ("*VNA Preliminary Approval*").[6]

---

[5] Class Plaintiffs and VNA reached a concurrent agreement providing for $1,500 for each participating minor claimant, subject to a determination of eligibility, for up to 1,000 such "Individual Claimants."

[6] *See also* Class Pls.' Mot. to Amend VNA Class Settlement Schedule, ECF No. 3017, granted by text-only order June 20, 2024.

The Fee Framework is designed to provide reasonable and equitable compensation to Class Counsel for the work they have performed and the risk and expenses they have shouldered in prosecuting these cases. As relevant to the instant motion, the Framework awards Class Counsel fees in the amount of 31.33% of the settlement fund with the following components:

- A global CBA of 6.33% to be paid to Class Counsel following final approval of the Settlement and thereafter as the Fund is further funded pursuant to the terms of the Settlement, along with a proportional share of interest accrued by the fund; and

- Class Counsel fees equal to 25% of the gross value of claims resolved via the Adult Exposure, Property Damage, and Business Economic Loss Subclasses.

*See ASA Fee Order*, 583 F. Supp. 3d at 954-55; *LAN Fee Order*, ECF No. 3027 at PageID.102388-89.

The Fee Award would be allocated among Class Counsel based on Co-Lead Counsel's judgment and discretion in considering the assigned role of the various lawyers and law firms in litigating the case, the types of tasks those firms performed, their efficiency and effectiveness in performing their work, and their out-of-pocket investments advanced to cover the millions of dollars of litigation expenses that allow the case to proceed through settlement.

### III.   ARGUMENT

**A. The Court Should Reapprove the Fee Framework and Award.**

Incurring more than $13 million in expenses—including $885,710.39 in the last

seven months, along with the ongoing expenses of claims administration, class notice, and trailing expenses that will be submitted to the Special Master for consideration and approval—Class Counsel took on considerable risk in litigating this matter on a contingent basis. In addition to the efforts detailed in prior fee applications, Class Counsel also have continued to invest considerable time facilitating and implementing the settlement, and devoted enormous effort to prepare for the class trial. All of those efforts have been for the common benefit of the beneficiaries of the settlement fund for the class. While the nature and quality of Class Counsel's work and the results achieved for the settlement beneficiaries relative to the risk they took on in prosecuting the claims, are alone sufficient grounds for Plaintiffs' Counsel's fee requests based on the prevailing percentage-of-the-fund approach to fees in class actions, counsel's time and expense reports also support the requested fees and expenses. The declarations filed indicate that in the seven months since the Settlement, Class Counsel have invested an additional 7,964.70 hours of work into this litigation, representing $4,368,535 of lodestar at current rates. Since the initial settlement, Class Counsel's cumulative lodestar at each stage combines for more than $32 million and Class Counsel have now advanced more than $6 million in expenses. The Fee Framework provides for attorneys' fees in the amount of 31.33% of the total recovery—an eminently fair and reasonable request under governing precedent given Class Counsel's investment in the case.

**1.  The Framework's Common Benefit Assessments Should be Reapproved.**

It is well established that counsel who perform common benefit work resulting in recovery of a common fund are entitled to compensation for those services from the fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *ASA Fee Order*, 583 F. Supp. 3d at 922 (discussing common fund doctrine). "The Sixth Circuit has long-recognized the common benefit doctrine." *Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974)). The rationale for applying the common benefit doctrine in this type of case is particularly compelling:

> "[W]hen a court consolidates a large number of cases, stony adherence to the American rule [in which each litigant pays his or her own attorneys' fees] invites a serious free-rider problem. . . . If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals." . . . Therefore, a court supervising mass tort litigation is allowed to "intervene to prevent or minimize an incipient free-rider problem" and may use "measures reasonably calculated to avoid unjust enrichment of persons who benefit from a lawsuit without shouldering its costs."[7]

Here, the Court directed Class Counsel, the Executive Committee, and Subclass Settlement Counsel to take leadership roles to the collective benefit of all plaintiffs,

---

[7] *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 682174, at *4 (D. Minn. Mar. 7, 2008), *amended in part*, No. MDL 05-1708 DWF/AJB, 2008 WL 3896006 (D. Minn. Aug. 21, 2008) (quoting *In re Nineteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir. 1992)).

including the Class's claims against VNA.[8] For example, the Court ordered Interim Co-Lead Class Counsel and Interim Co-Liaison Counsel to "coordinate" and "conduct" all discovery "on behalf of and for the benefit of the putative class or individual actions," to "act as spokesperson for all plaintiffs" at all hearings, to negotiate with Defendants, and to have exclusive authority to pursue settlement. ECF No. 234, PageID.8722. Moreover, the Time and Expense CMO, which sets forth certain standards and procedures for counsel seeking a common benefit award, reflects that Plaintiffs, their counsel, and the Court contemplated that common benefit work by Plaintiffs' Counsel could be entitled to compensation in the form of a common benefit award.[9] Indeed, the order specifically assigned to Co-Lead Class Counsel responsibility for coordinating and approving common benefit work by other Plaintiffs' Counsel.[10]

---

[8] *See, e.g.*, Order, July 27, 2017, ECF No. 173 (consolidating cases and appointing Interim Co-Lead Class Counsel); Order Delineating the Duties of Interim Co-Lead Class Counsel and Co-Liaison Counsel for the Individual Actions and Creating a Plaintiffs' Executive Committee for the Proposed Class, Oct. 26, 2017, ECF No. 234.

[9] Order, June 19, 2018, ECF No. 507. The order stated that the "Court reserves decision on whether certain work performed by various plaintiffs' counsel in the Flint Water Cases may inure to the common benefit of the litigation as a whole, or to specific portions of the litigation. The Court further reserves judgment as to whether any time recorded, or expenses incurred, shall be recognized as common benefit time or expense and will address whether to assess a surcharge on any monetary settlements in Flint Water cases, or any portion of such cases, at a future point in time." *Id.* at PageID.15842.

[10] *Id.* at PageID.15827, 829-830. Under the order, "[o]nly time spent on matters common to all plaintiffs in the Flint Water Cases ("Common Benefit Time") will be considered in determining fees. No time spent on developing or processing any case for

In their leadership role, Class Counsel, under the leadership and direction of Co-Lead Counsel and Susman Godfrey, have performed a tremendous amount of work for the common benefit of all plaintiffs with regard to the claims against VNA, including:

- Investigating, researching, and drafting multiple consolidated complaints;

- Researching and briefing multiple dispositive motions including several unique to VNA;

- Extensive discovery work, including drafting discovery requests and responses and briefing for discovery-related motions and review of countless documents produced by Defendants and third parties, preparing for and participating in Court conferences regarding discovery disputes, taking and defending fact and expert depositions, conducting extensive expert consultant and witness analysis and discovery;

- Development and presentation of a coordinated expert assessment of the human health impacts associated with  exposure to Flint Water that combined scientific analysis in the fields of exposure assessment, toxicology, epidemiology and biokinetic modeling, led by Weitz & Luxenberg;

- Extensive, multi-year mediation and settlement negotiations led by Cohen Milstein and Susman Godfrey; and

- Intensive preparation for a multi-month class trial including but not limited to: many hours of strategizing, conducting focus groups, monitoring the bellwether trial and collaborating with Co-Liaison Counsel in efforts to maximize the prospects for successful results in all the Flint Water Crisis cases, researching and writing dozens of motion in limine and *Daubert* briefs and arguments, and preparing exhibits, witnesses, cross-examinations, opening and closing arguments.[11]

---

an individual client/claimant will be considered except as approved by Interim Co-Lead Class Counsel or Interim Co-Liaison Counsel as work that serves a common benefit." *Id.* at PageID.15829.

[11] In addition, Plaintiffs' Counsel will continue to perform substantial common benefit work in administering the Settlement.

Class Counsel who performed this work and bore the associated risk are therefore entitled to reasonable compensation for these services from the common settlement fund they successfully negotiated.[12] The Framework accomplishes that through reasonable and justified 6.33% CBAs which reflect of the fact that all plaintiffs have substantially benefitted from common benefit work by Class Counsel. Lead counsel (with support from Susman Godfrey, Weitz & Luxenberg and other members of the Executive Committee who shared responsibility for the most significant litigation tasks; for negotiating, implementing and facilitating the settlement; and for funding the litigation) in these consolidated cases have taken on the majority of the expense, risk, and burden in litigating these cases to the benefit of all Plaintiffs. It is therefore appropriate for this VNA settlement to award Class Counsel the same 6.33% global CBA that was awarded under the Fee Framework applied to the prior settlements.

## 2. The Court Should Award Attorneys' Fees Using the Percentage of the Fund Approach.

Courts generally approve of awarding fees from a common fund based on the

_____

[12] *E.g.*, *In re NuvaRing Prods. Liab. Litig.*, No. 4:08-MDL-1964 RWS, 2014 WL 7271959, at *1 (E.D. Mo. Dec. 18, 2014) ("[U]ntil a Master Settlement Agreement was reached . . . a number of attorneys performed an extraordinary amount of work and advanced substantial expenses which benefited all plaintiffs and claimants who asserted NuvaRing related injuries against the defendants. These 'common benefit attorneys' should and must be compensated for their efforts."); *In re MGM Grand Hotel Fire Litig.*, 660 F. Supp. 522, 528 (D. Nev. 1987).

percentage-of-the-fund method.[13] "The Sixth Circuit has observed a 'trend[] towards adoption of a percentage of the fund method in [common fund] cases." *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016) (quoting *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515 (6th Cir. 1993)), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). This trend holds true for courts in this District, which regularly utilize the percentage-of-the-fund approach in common fund cases.[14] A percentage of the fund approach fosters judicial economy by eliminating a detailed, cumbersome, and time-consuming lodestar analysis.[15] Compared to the lodestar method, the percentage of the fund approach is "easy to calculate" and "establishes reasonable expectations on the

---

[13] *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"); *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("Indeed, every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis.").

[14] *See, e.g., N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 243; *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *17 (E.D. Mich. Dec. 13, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 502–03 (E.D. Mich. 2008); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531–32 (E.D. Mich. 2003).

[15] *Rawlings*, 9 F.3d at 516–17; *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 243; *Stanley v. U.S. Steel Co.*, No. 04-74654, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009) ("Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown, detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement."); *In re Cardizem CD*, 218 F.R.D. at 532.

part of plaintiffs' attorneys as to their expected recovery." *Rawlings*, 9 F.3d at 516.

The attorneys' fees contemplated under the proposal are all calculated as a percentage of either collective funds recovered or, what is functionally similar in the aggregate, individual recoveries from these funds. The global 6.33% CBA, combined with the 25% assessment of the value of Settlement Subclass Members' claims, results in a straightforward percentage of the fund fee amounting to 31.33%. Thus, the Framework uses a combination of classic percentage-of-the-fund fees and functionally similar percentage-of-individual-recovery fees or fee caps to establish an equitable system of attorney compensation that fosters judicial economy by eliminating the need for a detailed, cumbersome, and time-consuming lodestar analysis. *Rawlings*, 9 F.3d at 516–17. Such an analysis would be particularly complex, burdensome, and time-consuming here given the number firms and lawyers in each firm representing Class Plaintiffs in these cases, and the vast amount of work done. So too would a lodestar approach be impractical here where the claims and damages against VNA mirror the those against LAN, which settled earlier in the case. Likewise, in addition to VNA and LAN, Class Plaintiffs litigated the first five years of this case against the dozens of parties from the initial settlement, all of which were involved in the complex story of the Flint Water Crisis and thus necessitated extensive development of the factual record (particularly given Michigan's fair-share liability scheme), making any sort of assignment of hours to a particular defendant essentially impossible.

### 3. The Total Fee Is Appropriate When Compared to Other Percentage of the Fund Awards.

An "award of attorneys' fees in common fund cases need only be 'reasonable under the circumstances,'" *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996) (quoting *Rawlings, Inc.*, 9 F.3d at 516), for which the Court "must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee," *Rawlings, Inc.*, 9 F.3d at 516. An appropriate fee should reflect what counsel would receive if bargaining for their services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989).

The Framework's combined fees and their structure are in line with the fee amounts and structures approved by courts in comparable mass tort litigation. *See, e.g.*, *ASA Fee Order*, 583 F. Supp. 3d 911 (setting 31.33% fee); *LAN Fee Order*, ECF No. 3027 (same). In such cases, courts have commonly approved the same general approach used here, where certain percentages of the recovery are assessed as common benefit fees while fees for individually retained counsel are capped at defined percentages, resulting in overall fees typically in the range of 32% to 35%.[16]  Here, the 6.33% global

---

[16] *See, e.g.*, Mem. at 13*, In re Concussion Injury Litig.,* No. 2:12-md-02323 (E.D. Pa. Apr. 5, 2018), ECF No. 9860 (adopting 33% overall contingent fee rate for Class Counsel and Individually Retained Plaintiffs' Attorneys combined); *In re Vioxx Prod. Liab. Litig.*, 650 F. Supp. 2d 549 (E.D. La. 2009) (implementing a cap of 32% on overall fees in a case settled following six bellwether trials); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No. MDL 05-1708 DWF/AJB, 2008 WL 3896006,

CBA and a flat 25% fee for Subclass Members' claims amount to a total maximum fee percentage of 31.33%, slightly less than the typical fee in comparable cases. *Supra* Note 16. Moreover, except for the global 6.33% CBA, fees are to be distributed only as and to the extent that claims are paid out, ensuring Class Counsel do not receive a windfall and incentivizes them to maximize actual recoveries by Claimants. Finally, the 25% assessment Co-Lead Class Counsel request from the Settlement Subclass funds is consistent with fee awards to class counsel in other class actions in this Circuit.[17]

### 4.  The *Ramey* Factors Justify the Fee Framework and Total Award.

A court must ensure that counsel are fairly compensated for work performed and the result achieved. *Rawlings*, 9 F.3d at 516. Sixth Circuit courts evaluate the reasonableness of a requested fee award using six factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel

---

(D. Minn. Aug. 21, 2008); *In re Zyprexa Prods. Liab. Litig.*, 424 F. Supp. 2d 488, 491 (E.D.N.Y. Mar. 28, 2006); *In re Zyprexa Prods. Liab. Litig.*, No. MDL-1596, 2007 WL 2340790, at *1 (E.D.N.Y. Aug. 17, 2007); *In re Bayou Sorrel*, No. 6:04-cv-1101, 2006 WL 3230771, at *6 (W.D. La. Oct. 31, 2006); *In re MGM Grand Hotel Fire*, 660 F. Supp. 522.

[17] *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2011 WL 6209188, at *19 ("The requested award of close to 30% appears to be a fairly well-accepted ratio . . . generally in complex class actions."); *In re Cardizem*, 218 F.R.D. at 532.

involved on both sides. *ASA Fee Appeal*, 63 F.4th at 495–96 (citing *Ramey*, 508 F.2d at 1196). Under these factors, the Fee Framework and total award is fair and reasonable.

### i.   Class Counsel Obtained a Significant Result.

Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award.[18] This assessment should take into account the costs, risks, and delay associated with further litigation.[19] Particularly when considered as part of the nearly $670 million in settlement funds and accrued interest generated by counsel's efforts throughout this litigation, the additional $25 million to the fund is an excellent result for victims of the Flint Water Crisis against VNA. The settlement with VNA finally resolves the class's claims in this case, putting to bed an eight-year litigation that would have extended to at least a full decade if litigated to completion, likely requiring multiple subsequent damages trials and, even if successful, almost certainly involving lengthy and complex appeals delaying final resolution even longer.

### ii.   Class Counsel Undertook this Complex Case on a Contingency Basis.

A determination of a fair fee must also include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement.

---

[18] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting that the "most critical factor is the degree of success obtained"); *Rawlings*, 9 F.3d at 516; *Smillie v. Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983).

[19] *See Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *15 (E.D. Mich. Oct. 18, 2010); *see also Garner Props. & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 627 (E.D. Mich. 2020).

Plaintiffs' Counsel have vigorously prosecuted these cases for more than eight years on a wholly contingent basis. Contingent fee cases sometimes result in no compensation whatsoever for plaintiffs' counsel, even after the expenditure of thousands of hours of work. That can happen for any number of reasons in complex cases like these, including the discovery of facts unknown when the case is commenced, changes in the law during the case, or a decision of a judge or jury following a trial on the merits. Even plaintiffs who win at trial may find their judgment overturned on appeal.

Class Counsel have assumed considerable risk in taking on and investing substantial resources into these cases with no guarantee of recovery. This case has entailed extensive discovery and lengthy motion practice and appeals. VNA is represented by experienced counsel, and absent the Settlement would undoubtedly continue to deny Plaintiffs' allegations, contest liability, and appeal any contrary result, as evidenced by their continued litigation with non-settling plaintiffs. In addition to Class Counsel's own substantial lodestar, Class Counsel's investments have included costly expert consultation and other expenses, all borne by Class Counsel with no guarantee of recoupment. Given the circumstances, the fee proposal is reasonable.

### iii. A Lodestar Cross-Check, Check, While Unnecessary, Would Support the Fee Framework and Award.

While not required, courts often use counsel lodestar as a "crosscheck" to confirm the reasonableness of a percentage award. *See Linneman v. Vita-Mix Corp.*, 970 F.3d

621, 628 (6th Cir. 2020). Here, Co-Lead Counsel do not intend to use lodestar as the primary basis for allocating fees *among* Class Counsel, and instead seek authority to use their discretion to use their judgment in allocating fees among class counsel based on an assessment of each firm's contributions to the cases, their roles in litigating the cases, and their contributions to case expenses. Nonetheless, a cross-check—or, indeed, a consideration of only the lodestar of the law firms principally responsible for litigating the claims against VNA—provides additional support for the requested fee award.

Consideration of lodestar is not a precise science, but rather a tool for rough comparison among cases. "Because the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re IPO Sec. Litig.*, 671 F. Supp. 2d 467, 506 (S.D.N.Y. 2009).

As described in the declarations submitted in support of this application and the previously submitted fee applications, Class Counsel have spent nearly 8,000 more hours performing common benefit work in the last seven months alone, resulting in a lodestar of more than $4.3 million at current rates.[20] Declaration of Theodore J. Leopold

---

[20] The Supreme Court and courts in this Circuit have recognized that, "[t]o compensate for the delay Plaintiffs' Counsel encounter[] in receiving compensation" in contingent fee cases, "it is appropriate to use current fee rates in calculating the lodestar." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011) (citing *Jenkins*, 491 U.S. at 283–84 (using

("Leopold Decl."), Ex. A, ¶ 5.[21] To date, Class Counsel collectively have submitted declarations for each phase of the settlement that reflect a staggering 180,962.4 hours performing common benefit work since the inception of the case, with cumulative lodestar at each stage of the case totaling $98,826,139.[22] Cumulative lodestar throughout the life of the case from inception to date is even greater, exceeding $100 million.[23]

This lodestar includes only common benefit work performed in conformance with the Time and Expense CMO. Therefore, it does not include additional legal work performed by individually retained counsel solely on behalf of their clients. All of this common benefit time has been submitted to Special Master Greenspan on a periodic basis for review. Time and Expense CMO, ECF 507 at PageID.15829. Overall fees

---

current rates)); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) ("Compensation for this delay is generally made either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value." (quotation marks omitted)). The Sixth Circuit has approved the application of current billing rates in cases involving significant delay in receiving compensation. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (finding current market rates reasonable because litigation "had been ongoing for nearly six years"); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (N.D. Ohio 1988) (noting that current rates were appropriate to counterbalance a delay in payment) (reversed on other grounds).

[21] Should the Court request, Class Counsel will provide detailed time records for the Court to review *in camera*.

[22] *See* Exs. A–F. Previous declarations are attached to the prior fee and expense petitions at ECF No. 1458 and ECF No. 2760.

[23] *See, e.g.*, Declaration of Stephen E. Morrissey, Ex. D, ¶ 8 (total lodestar of Susman's time throughout the entire life of the case amounts to $19,219,597.50).

contemplated by the proposal include the 6.33% CBA combined with the 25% assessment of the value of claims, resulting in a straightforward percentage of the fund fee amounting to 31.33%, equaling the fee previously approved by the Court and affirmed by the Sixth Circuit in connection with the prior settlements included in the settlement fund. This results in an additional $7,832,500 in attorneys' fees based on the VNA component of the settlement in addition to the amounts previously awarded from the settlement fund (and, if allowed, counsel's proportionate share of the accrued interest). Collectively, all Class Counsel have invested more than $100 million in time towards the prosecution of these cases since their inception. Even with the additional fees, total fees awarded Class Counsel from the settlements are likely to be significantly less than the amount of their combined lodestar at their current rates.

Courts routinely approve awards that represent a substantial *increase* of counsel's lodestar particularly when, as here, counsel's efforts have resulted in substantial recoveries for the settlement beneficiaries.[24] The lodestar cross-check reflects "an enormous amount of work" and clearly demonstrates the proposal's reasonableness.

---

[24] *See, e.g.*, *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767–68 (S.D. Ohio 2007) (awarding a multiplier of 6 and noting that "[m]ost courts agree that the typical lodestar multiplier . . . ranges from 1.3 to 4.5"); *see also Kimble v. First American Home Warranty Corp.*, No. 23-10037, 2024 WL 3325705, at *8 (E.D. Mich. July 8, 2024) ("Certainly, it is to be expected that an hourly rate on a contingent award would exceed the typical hourly rate charged by counsel.") (citing 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 15:87 (6th ed.)).

*E.g.*, *ASA Fee Order*, 583 F. Supp. 3d at 945; *see also LAN Fee Order*, ECF No. 3027 (re-applying Framework and 31.33% fee award to the LAN Settlement).

### iv. Public Policy Considerations Support the Requested Fee.

Courts recognize that public policy supports rewarding plaintiffs' counsel who take on challenging cases like these on a contingent basis on behalf of plaintiffs who might otherwise not be able to prosecute them. *ASA Fee Order*, 583 F. Supp. 3d at 938. Plaintiffs in complex mass tort litigation such as this are often represented by counsel who are retained on a contingent basis, largely due to the significant commitment of time and expense required in comparison to the plaintiffs' financial resources. Many class members are unlikely to be able to pursue protracted and costly litigation at their own expense. That is especially true where, as here, the claims are complex and require a considerable amount of expert testimony, the individual damages suffered by some Plaintiffs may be significantly less than the cost of litigation, and many Plaintiffs are part of lower-income households. The significant expenses, combined with the high degree of uncertainty of success, make contingent fees a virtual necessity for such cases.

Public policy thus strongly supports the fee proposal. Without the prospect of eventual compensation, these cases would not have been filed. Approving the proposal will help ensure that plaintiffs' attorneys continue to take up important cases like these.

### v. The Complexity of the Litigation Justifies the Requested Award.

Prosecution of any mass tort or complex class action presents intricate and novel

issues. This case, which this Court recognized has been "demanding and challenging," *ASA Fee Order*, 583 F. Supp. 3d at 945, is no exception.

### vi. Victims of the Flint Water Crisis Benefited from Exemplary Representation.

Class Counsel are known leaders in class action, mass tort, and complex litigation. The quality of their representation has been recognized by the Court on multiple occasions. *In re Flint Water Cases*, 499 F. Supp. 3d 399, 423 (E.D. Mich. 2021); *LAN Preliminary Approval Order*, 2023 WL 7724502, at *7, *12. Likewise, nationally known, prominent, and extremely capable counsel represent VNA and have vigorously defended this action. Class Counsel's ability to obtain a favorable result in the face of such qualified opposition is further evidence of the quality of their work.

*   *   *

All factors all weigh in favor of the fee award requested. The Court should grant Class Counsel attorneys' fees as proposed.

### B. The Court Should Approve Class Counsel's Request for Reimbursement of Reasonable Litigation Expenses

Class Counsel also request reimbursement of common benefit expenses incurred so far in connection with the prosecution of this litigation on behalf of the beneficiaries of the combined settlement funds. Pursuant to the Time and Expense CMO (ECF No. 507 at PageID.15834-842), these expenses include both shared costs paid by the Flint Litigation Fund and held costs paid by individual firms for the common benefit of

Plaintiffs. Class Counsel have incurred common benefit expenses in the aggregate amount of $885,710.39, with the Class Litigation Fund paying $718,927.94 of this, and held costs constituting $166,782.45 of this amount. Leopold Decl. at ¶¶ 9-10.

"The common fund doctrine . . . authorizes reimbursement of the reasonable amounts paid out-of-pocket to achieve a common benefit recovery or to advance the common goals of plaintiffs." *In re NuvaRing*, 2014 WL 7271959, at *4. This applies in the class action context. *In re Cardizem CD*, 218 F.R.D. at 535. Categories of expenses for which counsel seek reimbursement here are those routinely charged to hourly clients and were necessary to this litigation. Under the ASA, "Counsel [for Individual Plaintiffs and Class Members] shall be reimbursed and paid solely out of the . . . FWC Qualified Settlement Fund (and any interest thereon) for all expenses . . . , including but not limited to: . . . past, current, or future litigation and administration expenses (including, but not limited to, experts' and consultants' fees and expenses); and the costs of providing the Settlement Class Notice." VSA § 9.1, ECF No. 2958-1, PageID.99372.[25]

---

[25] Unlike with the LAN Settlement, payment from VNA will not be made until after entry of a final approval order. *Compare* VSA § 2.1, ECF No. 2958-1, PageID.99364-65, *with* LSA § 2.4, ECF No. 2673-2, PageID.86998. Accordingly, Class Counsel submit the initial expenses associated with the Class Notice of the VNA Class Settlement as part of this Motion but, given that the deadline to request exclusion or object is not until August 16, 2024, and the deadline to submit registration and claim documentation is not until September 16, 2024, *see* ECF No. 3017 (granted by text-only order June 20, 2024), the Notice Administrator's work will continue for several months beyond the date of this Motion. Class Counsel will therefore separately file a supplemental request for reimbursement of notice expenses at a later date.

Once again, a significant component of Class Counsel's expenses here is the cost of the expert work performed on the Class's behalf. Class Counsel retained highly qualified experts in a variety of fields—including civil and environmental engineering, chemical engineering, urban planning, exposure science, biokinetic exposure modeling, toxicology, epidemiology, economics, and ethics—to analyze the circumstances giving rise to the water crisis, the responsibilities of the engineering defendants, and the medical and economic impact of the crisis on residents and businesses in Flint. These experts' work required many hours of research, calculating, and drafting essential to successful prosecution of this case and achieving both this settlement and the prior settlements.[26]

Because these expenses were necessary to achieve the Settlement, and because they are the types of expenses typically reimbursed, the Court should grant this request.

## C. The Court Should Approve Class Counsel's Request for Modest Class Representative Service Awards

As described in Class Plaintiff's Motion for Preliminary Approval of Class Settlement with the VNA Defendants, ECF No. 2925, PageID.98537-38, Class Counsel believe that the Court should award each of the Class Representatives service awards to recognize the time, effort, and expense they incurred pursuing claims on behalf of the entire class throughout the entirety of this eight-year litigation, an effort that has helped

---

[26] A substantial portion of the requested expenses consists of trailing and deferred expenses for expert work completed prior to December 1, 2023.

create a greater than $700 million settlement fund for those affected in Flint.

Generally, service awards are justified as a reward for the efforts that lead plaintiffs take on behalf of the class, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (collecting cases), and are considered by courts as "efficacious ways of encouraging members of a class to become class representatives," *id.*; *see also Emch v. Cmty. Ins. Co.*, No. 1:17-CV-00856, 2021 WL 9096702, at *1 (S.D. Ohio Aug. 9, 2021) ("Class representative awards are payments that are intended to cover the time and money that Class Representative spends fulfilling his responsibilities."). Service awards further "make up for financial or reputational risk undertaken in bringing the action," and recognize the class representatives' actions as a public function akin to that of a private attorney general. 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:3 (6th ed.).

Service awards are consistent with and "usually viewed as extensions of the common-fund doctrine" applicable in this case. *Hadix*, 322 F.3d at 898. Further, "the Sixth Circuit has endorsed the use of incentive awards," *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1000 (N.D. Ohio 2016) (citing *Hadix*, 322 F.3d at 897), *appeal dismissed*, 2016 WL 6599570 (6th Cir. 2016), and courts in the Sixth Circuit often confer service awards in the range of the $10,000 awards sought here.[27]

---

[27] *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d at 1000 ($10,000 service awards for thirteen individuals and $35,000 for two companies in antitrust case were "well within an appropriate range"); *Robles v. Comtrak Logistics,*

This is not to say that service awards are always justified. Indeed, such requests are to be "scrutinized carefully," *Hadix*, 322 F.3d at 897, and require a factual showing of the time and effort put into the litigation, *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016).[28] But that standard is met here. The Class Representatives' involvement in this litigation has been remarkable, going beyond the work put in by representatives in the typical class action, which on average involves far less litigation and has a much shorter lifespan. *Supra* Note 27. This included (in consultation with counsel): gathering documents for document productions; providing responsive information for interrogatory answers, request for admission responses, or supplemental responses; preparing and sitting for onerous, time-consuming depositions

_____

*Inc.*, No. 15-CV-2228, 2022 WL 17672639, at *13 (W.D. Tenn. Dec. 14, 2022) ($25,000 to each named plaintiff in truck driver wages class action); *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act & Wage & Hour Litig.*, No. 3:14-CV-204-DJH, 2024 WL 3361639, at *4–5 (W.D. Ky. July 10, 2024) ($15,000 service awards appropriate where class reps participated in the litigation and dealt with publicity surrounding the case); *Sellards v. Midland Credit Mgmt., Inc.*, No. 1:20-CV-02676, 2023 WL 3869023, at *5–6 (N.D. Ohio May 2, 2023), report and recommendation adopted, No. 1:20-CV-02676, 2023 WL 3641447 (N.D. Ohio May 25, 2023); *Myers v. Mem'l Health Sys. Marietta Mem'l Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *7 (S.D. Ohio Sept. 6, 2022); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013); *Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-CV-00411, 2023 WL 3204684, at *10 (S.D. Ohio May 2, 2023).

[28] *See also* 5 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 17:12 (6th ed.) ("Typically, facts relevant to the incentive award determination are demonstrated in affidavits submitted by class counsel and/or the class representatives, through which these persons testify to the particular services performed, the risks encountered, and any other facts pertinent to the award.").

(for some representatives, multiple depositions) during which their medical histories were closely scrutinized; preparing for potential trial testimony; engaging with national and local media to discuss the case and advocate for the Class; and in some instances, allowing multiple extensive and invasive inspections of their homes. *See* Declaration of Gregory Stamatopoulos in Support of Service Awards for Class Representatives, Ex. G.

Collectively, the Class Representatives spent hundreds of hours and produced over 15,000 pages of documents. *Id.* Without this sustained investment of time, focus, and energy on behalf of the Class over the eight-year life of this case, the settlements achieved to date (creating a fund of now more than $700 million) would not have been possible. Their dedication and service are exemplary and deserve this recognition.

Accordingly, Class Counsel request that the Class Representatives be awarded $10,000 each from the amount contributed by VNA to the Qualified Settlement Fund.

## IV.   CONCLUSION

For the reasons stated, Class Counsel request that the Court grant their Motion.

Dated: July 30, 2024                              Respectfully submitted,

By: */s/Theodore J. Leopold*                   By: */s/ Michael L. Pitt*
Theodore J. Leopold                              Michael L. Pitt
COHEN MILSTEIN SELLERS                   PITT MCGEHEE PALMER BONANNI
& TOLL PLLC                                        & RIVERS, P.C.
11780 U.S. Highway One, Suite N500       117 W. Fourth Street, Suite 200
Palm Beach Gardens, FL 33408               Royal Oak, MI 48067
Telephone: (561) 515-1400                       Telephone: (248) 398-9800
tleopold@cohenmilstein.com                     mpitt@pittlawpc.com
**CO-LEAD CLASS COUNSEL**               **CO-LEAD CLASS COUNSEL**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing instrument was filed with the U.S. District Court through the ECF filing system and that all parties to the above case were served via the ECF filing system on July 30, 2024.


Dated: July 30, 2024

*/s/ Theodore J. Leopold*

Theodore J. Leopold
COHEN MILSTEIN SELLERS
& TOLL PLLC
11780 U.S. Highway One, Suite N500
Palm Beach Gardens, FL 33408
Telephone: (561) 515-1400
tleopold@cohenmilstein.com