# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE: FLINT WATER CASES | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy, District Judge |
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

# DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE VNA FROM INTRODUCING THE EXPERT REPORTS AND DEPOSITION TESTIMONY OF DR. LARRY RUSSELL AS EVIDENCE IN SUPPORT OF VNA'S NON-PARTY AT FAULT CLAIMS

## STATEMENT OF ISSUES PRESENTED

1.    Should the Court exclude Dr. Larry Russell's statements about LAN's negligence from his expert report and deposition testimony in this case under Federal Rules of Evidence 802, 402, and/or 403?

**VNA answers:**  "No"

**Plaintiffs answer:**  "Yes."

2.    Should the Court exclude Dr. Larry Russell's statements about the EPA's negligence from his expert report in *Burgess* under Federal Rules of Evidence 802, 402, and/or 403?

**VNA answers:**  "No"

**Plaintiffs answer:**  "Yes."

3.    Should the Court inform the jury that Plaintiffs settled their claims against certain non-parties?

**VNA answers:**  "No"

**Plaintiffs answer:**  "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Barnett v. Hidalgo*, 478 Mich. 151 (2007)

*Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980)

*Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830 (W.D. Ky. 2017)

*In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986 (9th Cir. 2008)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

      A.   Dr. Russell's Statements In This Case About LAN's Negligence........2

      B.   Dr. Russell's Statements In *Burgess* About The EPA's Negligence ....4

ARGUMENT ..........................................................................................................5

  I.   Dr. Russell's Statements About LAN's And The EPA's Negligence Are
      Not Inadmissible Hearsay..................................................................................5

      A.   Dr. Russell's Statements About LAN's Negligence Are Party-
             Opponent Statements.............................................................................6

      B.   Dr. Russell's Statements About LAN's Negligence Are Prior
             Inconsistent Statements .....................................................................10

      C.   Dr. Russell's Statements About LAN's And The EPA's Negligence
             Are Admissible Under The Residual Exception .................................13

  II.  Dr. Russell's Statements About LAN's And The EPA's Negligence Are
      Relevant And Would Not Distract The Jury Or Confuse The Issues............16

  III. The Court Should Preclude References To Plaintiffs' Settlements With
      Non-Parties And To VNA's Settlement With The Class Plaintiffs .............19

CONCLUSION ....................................................................................................20

## INTRODUCTION

Plaintiffs ask the Court to bar VNA "from introducing as substantive evidence" statements from Dr. Larry Russell's expert reports and depositions "wherein he discusses other parties' actions."  Br. in Supp. of Pls. Mot. *in Limine* to Exclude Russell Opinions and Testimony (Mot.) 3, ECF No. 3060, PageID.105515. Plaintiffs contend that these statements are inadmissible hearsay, that they are irrelevant, and that they would distract the jury and confuse the issues at trial.  Each argument is without merit.

First, the statements that Dr. Russell made in his expert report and depositions in this case about the negligence of Lockwood, Andrews & Newnam, P.C., Lockwood, Andrews & Newnam, Inc., and Leo A. Daly Company (collectively, LAN) are statements of a party-opponent and therefore are not hearsay under Federal Rule if Evidence 801(d)(2).  Second, because Plaintiffs have indicated that during direct examination at trial Dr. Russell will stay mute about LAN's role in the crisis and thereby give the false impression that VNA alone was responsible, these statements would be prior inconsistent statements and therefore are not hearsay under Rule 801(d)(1)(A).  Third, these statements, along with Dr. Russell's statements about the EPA's negligence in his expert report in *Burgess v. United States*, No. 4:17-cv-11218 (E.D. Mich.) (*Burgess*), are admissible as substantive evidence under the residual exception to the rule against hearsay.  Fed. R. Evid. 807.

Fourth, this evidence is plainly relevant to the issue of allocation of fault, has substantial probative value, and would not result in any jury confusion or distractions at trial.

Plaintiffs also maintain that, if the Court denies their motion, the jury should be informed that Plaintiffs settled their claims against various non-parties at fault. They are wrong.  As with other evidence that suggests that Plaintiffs sued defendants other than VNA, the jury can simply be informed of that fact and instructed not to speculate as to why any non-party may not be at trial.

## BACKGROUND

### A.    Dr. Russell's Statements In This Case About LAN's Negligence

Dr. Russell was "retained by Plaintiffs in the Flint Water Crisis litigation" and by Plaintiffs' "law firm, Levy Konigsberg, LLP, to assist them with the evaluation of the water quality failures that [led] to the Flint Water Crisis."  Report of Dr. Larry L. Russell 3, ECF No. 2987-2, PageID.101150 (Russell BWIII Report).  As part of this engagement, Dr. Russell analyzed "the role[s]" of LAN and VNA "during the Flint Water Crisis."  *Id.* at 3-6, PageID.101150-101153.  Dr. Russell authored an expert report with that analysis, which he certified was "true and correct" "under penalty of perjury."  *Id.* at 65, PageID.101212.

Dr. Russell wrote in this report that both LAN's and VNA's conduct fell below the standard of care, and offered opinions about the two firms that are inextricably intertwined.  For example, Dr. Russell wrote that:

- VNA and "its engineers and operators were the last hope to halt the Flint Water Crisis" after LAN provided the City with services that fell below the standard of care.  Russell BWIII Report 13, PageID.101160.

- VNA "should have begun actions to prepare recommendations and to address and correct the shortcomings of LAN's engineering advice and to address the LAN mistakes." *Id.* at 15, PageID.101162.

- VNA began its work in Flint "with a crystal-clear understanding that the only way out of the Flint Water Crisis was for [VNA] to stand up and correct the LAN errors of the past." *Id.*

- "If LAN and/or [VNA] had followed the work begun by the [Tucker, Young, Jackson, Tull, Inc.] team, the City of Flint would have progressed a long way, very quickly toward averting the Flint Water Crisis." *Id.* at 17, PageID.101164.

- "Had LAN or [VNA] performed a [chloride sulfate mass ratio] calculation, the results would have shown that the water exhibited a serious concern regarding lead corrosion." *Id.* at 39, PageID.101186.

- "LAN and [VNA] failed to recommend . . . immediately switching back to Detroit water and/or issuing a 'do not drink' warning to protect the citizens of Flint given then-current water conditions." *Id.* at 45, PageID.101192.

Dr. Russell sat for several depositions during which he testified about those opinions.  *See* Ex. 2, Dec. 29, 2022, Russell Dep. 380:17-20 (Q: "You have formulated opinions specifically with respect to the conduct of . . . LAN[] and [VNA], correct?  A.  Yes, sir.").  During those depositions, Dr. Russell explained

that several of his opinions that targeted both VNA and LAN applied to LAN with more force.

For example, with respect to his opinion that "[b]oth LAN and [VNA] should have been aware of and absorbed the information in the Tucker Young Jackson & Toll Economic Engineering Services Comprehensive Study," Dr. Russell explained that he "would have expected more from LAN, more involvement than I would even from [VNA] because [VNA] enters the picture during the water crisis" and that accordingly his opinion "appl[ies] equally, *if not more*, to LAN than [VNA]." Ex. 2, Dec. 29, 2022, Russell Dep. at 362:1-363:13 (emphasis added). As to his opinions regarding the switchover from the Detroit water system to the Flint River as a source of water for Flint, Dr. Russell testified that "LAN is the engineer of record, so, you know, *they have full responsibility* for being aware of everything that's relevant to their design work." *Id.* at 364:1-21 (emphasis added). And Dr. Russell testified that had VNA's conduct not fallen below the standard of care, it could have "spared" Flint citizens from "more high lead content drinking water" by "ameliorat[ing]" problems with the water that LAN caused. Ex. 3, Dec. 28, 2022, Russell Dep. 231:11-232:23.

B.     **Dr. Russell's Statements In *Burgess* About The EPA's Negligence**

Dr. Russell was retained by the *Burgess* plaintiffs to analyze "the role of the [EPA] in the Flint Water Crisis." Expert Report of Dr. Larry L. Russel 4, *Burgess*

4

ECF No. 274-2, PageID.6270 (Russell *Burgess* Report).  Dr. Russell authored an expert report with that analysis, which he certified was "true and correct" "under penalty of perjury." *Id.* at 69, PageID.6335.

Dr. Russell opined that the EPA "owed a duty to the City of Flint and its residents to guide and advise the people in charge in Flint" but "did not satisfy [that] duty." Russell *Burgess* Report 6, PageID.6272.  Among other things, Dr. Russell concluded that the EPA's conduct fell below the relevant standard of care because the EPA:

- "[F]ailed to enforce and guide the City of Flint to manage the highly corrosive water distributed in the Flint water system due to the switch to the treated Flint River water." *Id.*

- "[F]ailed to convey and identify the imminent risks to human health and property posed by the presence of highly corrosive water in the Flint water supply, and excessive lead concentrations that would result in the Flint water system." *Id.* at 7, PageID.6273.

- "[W]as slow to insist on proper corrosion control measures in Flint" and "on proper application of the [Lead and Copper Rule] in Flint." *Id.*

- Contributed to conditions that "resulted in substantial damage and health impact[s] throughout the City." *Id.*

## ARGUMENT

### I.  Dr. Russell's Statements About LAN's And The EPA's Negligence Are Not Inadmissible Hearsay

The statements that Dr. Russell made about LAN's negligence in his expert report and depositions in this case are not hearsay because they are party-opponent statements and prior inconsistent statements.  And even if these statements are

5

hearsay, they are admissible under the residual exception to the rule against hearsay. Dr. Russell's statements about the EPA's negligence from his expert report in *Burgess* similarly are admissible under the residual exception. There is no basis for excluding these statements as substantive evidence.[1]

## A.   Dr. Russell's Statements About LAN's Negligence Are Party-Opponent Statements

Dr. Russell's statements about LAN's negligence in his expert report and depositions in this case are statements of a party-opponent and thus not hearsay. As relevant here, a statement "is not hearsay" if "the statement is offered against an opposing party" and:  (1) "is one the party manifested that it adopted or believed to be true"; (2) "was made by a person whom the party authorized to make a statement on the subject"; or (3) "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(B)-(D).

Courts consistently conclude that statements that a party's expert made in an expert report or at a deposition are non-hearsay admissions of that party. *See, e.g.*,

---

[1]   Plaintiffs seek only to preclude VNA from introducing Dr. Russell's "reports and depositions" as "substantive evidence." Mot. 3, 6, 11, PageID.105515, 105518, 105523.  They do not argue that VNA should be precluded from eliciting testimony from Dr. Russell about LAN's or the EPA's negligence or from using these materials for the purpose of impeaching Dr. Russell's testimony at trial.  Plaintiffs also do not argue that VNA should be precluded from questioning Dr. Russell about the conduct of any non-party at fault even if it does not seek to use his reports and depositions as substantive evidence.  Therefore, the sole question before the Court is whether the statements in Dr. Russell's reports and depositions are admissible as substantive evidence.

*In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1016 (9th Cir. 2008) (expert's testimony in a prior trial on behalf of a party "was an admission of a party opponent"); *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980) ("[Defendant] hired [an expert] to investigate the bus accident and to report his conclusions. . . . [The expert's] deposition, therefore, was an admission of [defendant]."); *Mann v. Lincoln Elec. Co.*, No. 06-cv-17288, 2010 WL 11234292, at *2 (N.D. Ohio May 5, 2010) ("When an expert is put forward as a testifying expert at the beginning of trial, the prior deposition testimony of that expert in the same case is an admission against the party that retained him." (citation omitted)); *Samaritan Health Ctr. v. Simplicity Health Care Plan*, 459 F. Supp. 2d 786, 799 (E.D. Wis. 2006) ("[B]ecause [a party] proffers its opponent's expert report against that opponent, the report can be considered an admission by a party-opponent."); *see also Barnett v. Hidalgo*, 478 Mich. 151, 160 (2007) (holding under Michigan Rules of Evidence that party's expert's affidavit "is admissible as an admission by a party-opponent.").[2] This case is no different, and Rules 801(d)(2)(B), (C), and (D) are satisfied here.

_____

[2]   Some commentators have suggested that *Kirk v. Raymark Industries, Inc.*, 61 F.3d 147 (3d Cir. 1995), held that an expert's statements are not party-opponent statements. *See, e.g.*, 30B Jeffrey Bellin, *Federal Practice and Procedure* § 6775 (2024 ed.). But *Kirk* is inapposite; it involved a situation in which a party sought to introduce statements that an expert made in a separate and "*unrelated* litigation." *Id.* at 164 (emphasis added); *see Long v. Fairbank Farms, Inc.*, No. 09-cv-592, 2011

First, Dr. Russell's statements about LAN that he offered on behalf of Plaintiffs in this case are "statements of which [Plaintiffs] ha[ve] manifested an adoption or belief in their truth" and thus are admissible under Rule 801(d)(2)(B). *Abstrax, Inc. v. Dell, Inc.*, No. 07-cv-221, 2009 WL 10677355, at *1 (E.D. Tex. Oct. 9, 2009) (statements made by a party's expert on behalf of that party in another litigation are "not hearsay" because they "are admissions").   Plaintiffs hired Dr. Russell to provide opinions about LAN's conduct, voluntarily served reports containing those opinions, had Dr. Russell sit for depositions to discuss those opinions, and intended to have Dr. Russell present those opinions at trial against LAN before they settled their claims against LAN.   Plaintiffs' conduct throughout this litigation demonstrates that they believed in the truth of those statements and thus adopted them.   Plaintiffs therefore "cannot now exclude" statements that they themselves "proffered."   *In re Hanford*, 534 F.3d at 1016.

It similarly is clear that Plaintiffs authorized Dr. Russell to make these statements about LAN's negligence.   *See* Fed. R. Evid. 801(d)(2)(C).   By engaging

_____

WL 2516378, at *10 n.18 (D. Me. May 31, 2011), *R&R adopted*, 2011 WL 2669199 (D. Me. July 7, 2011) (distinguishing *Kirk* on this basis); *Dean v. Watson*, No. 93-cv-1846, 1996 WL 88861, at *5 (N.D. Ill. Feb. 28, 1996) (same).  Here, Dr. Russell's statements about LAN were made in this litigation.   In any event, *Kirk* is not persuasive because it did not consider whether an expert's prior testimony is an adoptive statement under Rule 801(d)(2)(B), *see Kirk*, 61 F.3d at 163-64, and required "a showing of agency" that does not exist in Rule 801(d)(1)(C), *Long*, 2011 WL 2516378, at *10 n.18.

8

Dr. Russell to analyze LAN's conduct and paying him to author an expert report and give deposition testimony on their behalf, Plaintiffs affirmatively allowed Dr. Russell to make "statement[s] concerning the subject matter about which he testified." *Long*, 2011 WL 2516378, at *10 (concluding that deposition testimony of party's expert was admissible under Rule 801(d)(2)(C) and citing cases reaching same holding); *see In re Hanford*, 534 F.3d at 1016 (same for an expert's testimony from a prior trial).  In other words, by having Dr. Russell act as their expert in this case, Plaintiffs "authorized" him "to make statements regarding the issues in this cause of action," including statements about LAN. *Dean*, 1996 WL 88861, at *4.

Finally, Dr. Russell offered his opinions about LAN as Plaintiffs' agent or employee "on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).  Plaintiffs retained Dr. Russell and paid him to analyze LAN's conduct, prepare a report with opinions about that conduct, and discuss those opinions during depositions.  He thus acted as Plaintiffs' agent or employee with respect to his analysis of LAN's conduct—*i.e.*, "he was performing the function that [Plaintiffs] employed him to perform." *Collins*, 621 F.2d at 782.  Plaintiffs cannot now disavow those statements because the statements no longer suit their purposes.

Plaintiffs' cited authorities are inapposite.  Mot. 5-6, PageID.105517-105518. Each involved an attempt by a party to introduce as substantive evidence the expert

report or deposition testimony *of its own expert*.[3]  They therefore do not speak to whether one party may "offer against an opposing party" the statements of that opposing party's expert.  Fed. R. Evid. 801(d)(2).

### B.  Dr. Russell's Statements About LAN's Negligence Are Prior Inconsistent Statements

Plaintiffs assert that Dr. Russell's trial testimony "will focus solely on" VNA's role in the water crisis, implying that he will omit his opinions that LAN's negligence contributed to the water crisis.  Mot. 6, PageID.105518.  But any trial testimony that cherry-picks Dr. Russell's opinions about VNA would be inconsistent with Dr. Russell's deposition testimony in this case that LAN bears responsibility for the water crisis.  Therefore, the statements that Dr. Russell made about LAN in his depositions in this case would be prior inconsistent statements that would be admissible as substantive evidence under Federal Rule of Evidence 801(d)(1)(A).

---

[3]   *See Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 727 (6th Cir. 1994) (plaintiff challenged the district court's admission of two reports "by defendant's experts"); *Hughey v. Easlick*, No. 19-cv-10368, 2022 WL 15523071, at *3 (E.D. Mich. Oct. 26, 2022) (plaintiff argued that the "report of Defendant's expert" was inadmissible hearsay); *Gould Elecs. Inc. v. Livingston Cnty. Rd. Comm'n*, No. 17-cv-11130, 2020 WL 6793335, at *3, 9 (E.D. Mich. Nov. 19, 2020) (plaintiff "sought to introduce through [its expert's testimony] certain reports created by" an environmental consulting group that the plaintiff retained); *Stansbury v. Hopkins Hardwoods, Inc.*, No. 15-cv-16, 2018 WL 2977439, at *2 (W.D. Ky. Mar. 2, 2018) (defendant sought to exclude the report of an expert who "was retained by" the plaintiffs).

Under Rule 801(d)(1)(A), a statement is not hearsay if (1) the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, (2) the statement is inconsistent with the declarant's testimony, and (3) the statement was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

The first prong is easily satisfied here. Dr. Russell will testify at trial, and VNA will subject him to cross-examination about his statements about LAN. So too is the third prong, because Dr. Russell's prior testimony was "given under penalty of perjury . . . in a deposition." Fed. R. Evid. 801(d)(1)(A).

The second prong—inconsistency with the witness's trial testimony—also is met. "Inconsistency is defined broadly." *United States v. Harris*, 881 F.3d 945, 949 (6th Cir. 2018) (alteration adopted) (citation omitted). "In general, almost any substantive divergence between two statements has sufficed to permit the use of the prior statement." 5 *Weinstein's Federal Evidence* § 801.21; *see also* 1 *McCormick On Evidence* § 34 (8th ed. 2022) (*McCormick*) ("[A]ny material variance between the testimony and the previous statement suffices.").

Testimony at trial from Dr. Russell that omits references to LAN's negligence would be inconsistent with Dr. Russell's prior deposition testimony, in which he repeatedly and unambiguously said that LAN was negligent. Trial testimony that omits LAN's role would suggest to the jury that VNA was the only professional

11

engineer that acted negligently in Flint and would thus be substantively divergent from Dr. Russell's deposition testimony.

For example, trial testimony focused solely on VNA's work would be inconsistent with Dr. Russell's deposition testimony that LAN had "full responsibility for being aware of everything that's relevant to their design work," Ex. 2, Dec. 29, 2022, Russell Dep. 364:1-21, and that LAN's negligence put VNA in a position of having to "ameliorate" problems caused before the City engaged VNA, Ex. 3, Dec. 28, 2022, Russell Dep. 231:11-232:23.

Further, Dr. Russell likely will testify at trial that VNA should have "been aware of and absorbed the information in the Tucker Young Jackson & Toll Economic Engineering Services Comprehensive Study." *See* Ex. 2, Dec. 29, 2022, Russell Dep. 362:1-363:13. But testimony on this topic that omits his opinions about LAN would be materially different from Dr. Russell's deposition testimony, in which he stated that he "would have expected more from LAN" than from VNA with respect to this study and that his opinions regarding the study "apply equally, *if not more*, to LAN than" to VNA. *Id.* (emphasis added).

In short, Dr. Russell previously testified that LAN bears responsibility for the water crisis, and that testimony "bend[s] in a different direction than" his expected trial testimony suggesting that only VNA's conduct is relevant to assessing the water

crisis. *McCormick* § 34. This testimony is therefore not hearsay and is admissible as substantive evidence under Rule 801(d)(1).

## C.   Dr. Russell's Statements About LAN's And The EPA's Negligence Are Admissible Under The Residual Exception

Even if the Court concludes that Dr. Russell's statements about LAN's negligence from his expert report and deposition testimony in this case are hearsay, they nevertheless are admissible as substantive evidence under Rule 807's residual exception. Dr. Russell's statements about the EPA's negligence from his expert report in *Burgess* likewise are admissible under Rule 807.

Rule 807(a) provides that, "under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice." *United States v. Musaibli*, 647 F. Supp. 3d 571, 580 (E.D. Mich. 2022). These elements are met here.

First, a hearsay statement has circumstantial guarantees of trustworthiness when the statement was given under the penalty of perjury, such that the declarant was "under the threat of prosecution for false statements." *Musailbi*, 647 F. Supp.

13

3d at 580-81 (citation omitted).  This element is satisfied because Dr. Russell signed his expert reports and attested to the truth of the statements therein under penalty of perjury.  He similarly gave his sworn deposition testimony under penalty of perjury.  *See Dartez v. Fibreboard Corp.*, 765 F.2d 456, 462-63 (5th Cir. 1985) (sworn testimony has "guarantees of trustworthiness").  And "many of the classic hearsay risks, such as faulty perception, faulty memory, and faulty narration" are not implicated by this evidence, given that Dr. Russell's statements were made in the context of "report[s] prepared by a designated expert witness" and sworn testimony about those reports.  *Televisa, S.A. de C.V. v. Univision Commc'ns, Inc.*, 635 F. Supp. 2d 1106, 1109-10 (C.D. Cal. 2009) (admitting expert's report under the residual exception).  Indeed, Plaintiffs cannot reasonably argue that Dr. Russell's expert reports and deposition testimony lack guarantees of trustworthiness, given that they engaged Dr. Russell and will be relying on his expert opinions as to VNA at trial.  *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 842 (W.D. Ky. 2017) (interview notes taken by party's expert were admissible against that party and had guarantees of trustworthiness because the party "itself [sought] to rely on portions of [the expert's] findings and on his expert report").

Second, this evidence concerns the negligence of non-parties and thus is plainly relevant to material facts concerning VNA's non-party-at-fault defense.  *Barnett*, 478 Mich. at 169-70 ("Because under [Michigan's fair-share-liability

statute] the jury is required to allocate fault of all persons, parties as well as nonparties, we believe that a jury may hear evidence regarding every alleged tortfeasor who has been involved" in the events giving rise to the tort claim); *see* pp. 16-17, *infra*.

Third, this evidence is more probative on the issue of the non-parties' fault than any other evidence that VNA could obtain through reasonable efforts. "Many courts view [this] requirement as providing a basis for a trial court to evaluate the need for the statement in the case as compared to the costs of obtaining alternative evidence." *Deere*, 260 F. Supp. 3d at 843 (citation and internal quotation marks omitted). Here, it would "be an unreasonable waste of resources to require" VNA to retain and pay for an expert witness to prepare a report and testify at trial about the EPA's and LAN's negligence when Dr. Russell already undertook that analysis, and Plaintiffs are calling Dr. Russell to testify at trial about the portions of his opinions that relate to VNA. *Id.*

Finally, the interests of justice would be served by admitting this evidence because it is "reliable" and "material." *Deere*, 260 F. Supp. 3d at 844. And "it is only just and fair, after allowing [Plaintiffs] to rely" on the subset of Dr. Russell's opinions concerning VNA's conduct to also allow VNA to rely on Dr. Russell's other statements that "are potentially unhelpful" to Plaintiffs. *Id.* at 839, 844.

15

Dr. Russell's statements about the non-parties' negligence in his expert reports in this case and in *Burgess*, and in his deposition testimony in this case, thus are admissible under Rule 807.

## II.   Dr. Russell's Statements About LAN's And The EPA's Negligence Are Relevant And Would Not Distract The Jury Or Confuse The Issues

Plaintiffs argue that Dr. Russell's statements about LAN's and the EPA's negligence also should be excluded because they are irrelevant and would distract the jury and confuse the issues at trial.   Mot. 7-10, PageID.105519-105522. Plaintiffs' arguments lack merit.

First, this evidence concerns the negligence of LAN and the EPA and thus is relevant to VNA's non-party-at-fault defense.  Michigan's fair-share-liability statute provides that "[i]n an action based on tort . . . the liability of each person shall be allocated under this section by the trier of fact" and that in assessing allocation of fault, "the trier of fact shall consider the fault of each person."  MCL 600.2957(1). Accordingly, the Michigan Supreme Court has held that when a defendant raises a non-party-at-fault defense, "the jury is required to allocate fault of all persons, . . . as well as nonparties" and thus the "jury may hear evidence regarding every alleged tortfeasor who has been involved" in the events giving rise to the tort claim.  *Barnett*, 478 Mich. at 70.  Evidence of the non-parties' negligence is thus admissible under Rules 401 and 402.

16

Plaintiffs contend that this evidence is irrelevant because it has no bearing on "the trial's central question—whether [VNA] was negligent." Mot. 4, PageID.105516 (emphasis omitted). That is wrong, for two reasons. First, as Dr. Russell's statements in his reports and depositions illustrate, the issue whether VNA's conduct fell below the standard of care is inextricably intertwined with the fact that the negligence of others caused the water crisis in the first place. *See* pp. 2-5, *supra*. Second, Plaintiffs ignore that the jury will have to analyze *all* the elements of Plaintiffs' professional-negligence claim as well as VNA's defenses— not just whether VNA's conduct fell below the objective standard of care. Indeed, Plaintiffs themselves recognize this, conceding that VNA "is permitted to offer" evidence about the non-parties at fault "under Michigan's comparative fault framework." *Id.* at 3, Page.ID105515. Dr. Russell's evidence thus plainly is relevant.

Dr. Russell's statements also are not inadmissible under Rule 403. They are highly probative of whether LAN's and the EPA's conduct fell below the standard of care and how much fault should be allocated to those non-parties. And admitting these statements would streamline the presentation of evidence at trial and likely reduce the need for VNA to call additional witnesses to testify about LAN's and the EPA's negligence.

17

Plaintiffs contend that this evidence is inadmissible under Rule 403 for three reasons.  First, they argue that presentation of this evidence would invite the jury to wonder "what happened regarding those defendants and why they aren't present in the courtroom."  Mot. 9, PageID.105521.  But any concern about jury confusion because of the absence at trial of any non-party can be addressed by an appropriate jury instruction.

Second, Plaintiffs contend that this evidence would distract the jury "from what is supposed to be the central issue in this case: [VNA's] culpability."  Mot. 9, PageID.105521.  As explained, that is incorrect:  whether VNA's conduct fell below the standard of care is not the only issue at trial.  The jury also will have to resolve VNA's non-party-at-fault defense, and Dr. Russell's statements are relevant to that issue.  Because the jury will have to consider the "nature" of LAN's and the EPA's conduct and the "extent of the causal relationship between the conduct and the damages claimed" to assess that defense, MCL 600.6304(2), this evidence would not be a distraction from the issues at trial.

Finally, Plaintiffs contend that admission of this evidence would result in a "collateral mini-trial having nothing to do with this case" because it would cause Plaintiffs to have to "present the entirety of Dr. Russell's report[s] to provide context" for his statements about the EPA's and LAN's negligence and provide an "explanation of why Plaintiffs' expert's trial testimony did not include a discussion

18

of the liability of non-parties in the first instance." Mot. 9-10, PageID.105521-105522. These concerns are misplaced. Plaintiffs do not explain why the entirety of Dr. Russell's reports would need to be admitted or otherwise explain how Dr. Russell's statements about LAN's or the EPA's negligence are missing proper context. And if Plaintiffs are concerned about having to explain to the jury why Dr. Russell did not discuss LAN's and the EPA's negligence "in the first instance," then they are free to address those issues during Dr. Russell's direct examination.

In short, Dr. Russell's statements about LAN's and the EPA's negligence are relevant and highly probative of VNA's non-party-at-fault defense, and none of the concerns contemplated by Rule 403 "substantially outweigh[s]" the probative value of that evidence.

## III. The Court Should Preclude References To Plaintiffs' Settlements With Non-Parties And To VNA's Settlement With The Class Plaintiffs

Plaintiffs request that, if the Court denies their motion, it allow them "to contextualize [Dr. Russell's statements] by informing the jury of the settlement between Plaintiffs and third-parties." Mot. 10, PageID.105522. There is no need for that instruction. The Court can mitigate any potential jury confusion caused by the presentation of evidence about the former defendants by directing the jury not to speculate about why any non-party is not at trial and not to draw any inferences from the absence at trial of those non-parties because their absence has no bearing on Plaintiffs' claim or on VNA's defenses. Plaintiffs do not explain why the jury needs

19

to be instructed about the LAN settlement specifically—for example, they do not suggest that the fact of the settlement changes Dr. Russell's previously given testimony.  There thus is no need for the Court to inform the jury of any settlement.[4]

## CONCLUSION

The Court should deny Plaintiffs' motion.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL, P.C.**

**MAYER BROWN LLP**

*/s/ James M. Campbell*
James M. Campbell
Alaina M. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

*/s/ Michael A. Olsen*
Michael A. Olsen
71 South Wacker Drive
Chicago, IL 60606
(312) 7012-7120
molsen@mayerbrown.com

*Attorneys for Veolia Water North America Operating Services, LLC Veolia North America, LLC, and Veolia North America, Inc.*

Dated:  August 13, 2024

---

[4]   Plaintiffs do not request that the jury be informed about VNA's settlement with Class Plaintiffs.  VNA agrees that any reference at trial to its settlement with Class Plaintiffs would be inappropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   _/s/ James M. Campbell_
James M. Campbell
jmcampbell@campbell-trial-lawyers.com