# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE FLINT WATER LITIGATION | Case No. 5:16-cv-10444-JEL-MKM<br>Hon. Judith E. Levy |
| This Document Relates To:<br>BELLWETHER III | Case No. 5:17-cv-10164-JEL-KGA |

---

**DEFENDANTS VEOLIA NORTH AMERICA, LLC, VEOLIA NORTH AMERICA, INC., AND VEOLIA WATER NORTH AMERICA OPERATING SERVICES, LLC'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* FOR AN ORDER RE-ADOPTING CERTAIN PREVIOUS MOTION *IN LIMINE* RULINGS FROM THE BELLWETHER I TRIAL**

## STATEMENT OF THE ISSUES PRESENTED

1.    Should the Court exclude evidence, testimony, or reference to unfiltered Flint water consumption by VNA employees and government officials?

    **VNA answers:**  "No."

    **Plaintiffs answer:**  "Yes."

2.    Should the Court exclude evidence or testimony criticizing Dr. Specht's bone-scan device?

    **VNA answers:**  "No."

    **Plaintiffs answer:**  "Yes."

3.    Should the Court exclude evidence or testimony about other sources of lead exposure, apart from Flint's water supply?

    **VNA answers:**  "No."

    **Plaintiffs answer:**  "Yes."

4.    Should the Court exclude evidence or testimony that Plaintiffs' injuries were caused by family or social factors.

    **VNA answers:**  "No."

    **Plaintiffs answer:**  "Yes."

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig.,*
    No. 18-md-2846, 2021 WL 5577409 (S.D. Ohio Nov. 30, 2021)

*Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2016 WL 4238652 (W.D. Mich.
    Feb. 4, 2016).

*Pluck v. BP Oil Pipeline Co*., 640 F.3d 671 (6th Cir. 2011)

*Powell-Murphy v. Revitalizing Auto Communities Envtl. Response Tr*., 333 Mich.
    App. 234 (2020)

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

ARGUMENT .......................................................................................4

I.    The Court Should Decline To Exclude Evidence That VNA
      Employees And Government Officials Drank Flint Water ..........................4

II.   The Court Should Not Exclude Criticisms About Dr. Specht's Bone
      Scans ...............................................................................................7

III.  The Court Should Not Re-adopt Or Extend Its Bellwether I Ruling
      Excluding Evidence About Alternative Sources Of Lead Exposure To
      VNA's Bellwether III Experts ...............................................................8

IV.   The Court Should Not Exclude Evidence That Plaintiffs' Injuries May
      Have Been Caused By Family Or Social Factors.......................................11

CONCLUSION ...................................................................................16

## INTRODUCTION

Bellwether III Plaintiffs ask the Court to re-adopt four rulings from Bellwether I.  Those requests are not well-founded.

First, Plaintiffs ask the Court to again exclude evidence that VNA and government employees drank unfiltered Flint tap water during VNA's involvement in Flint.  The Court should reconsider its Bellwether I and Issue Class rulings on this issue and defer ruling on the admissibility of this evidence until trial.  VNA anticipates that Plaintiffs will argue that VNA employees knew or suspected that the water was dangerous during VNA's engagement in Flint.  The fact that those employees drank the water tends to prove the contrary.  Similarly, VNA anticipates that Plaintiffs will argue that VNA should have been suspicious of the information about the water provided by the government.  The fact that government employees drank unfiltered water supports VNA's contention to the contrary, that it justifiably relied on the information it was provided by the government and had no reason to suspect that government employees believed that the water was dangerous or were concealing information about the condition of the water.

Second, Plaintiffs ask the Court to again exclude certain evidence regarding Dr. Specht's use of the pXRF device in Flint, including evidence that the pXRF device is unsafe, evidence that Dr. Specht's use of the device violated Michigan law, and criticisms of the testing by Dr. Reynolds and Dr. Hanna-Attisha.  VNA will

1

abide by the Court's prior rulings, but as in Bellwether I the Court should allow VNA to attack the reliability of Dr. Specht's bone lead scans (if it does not exclude them outright under Rule 702). VNA's reliability challenge will include expert testimony from Dr. Daniel Schultz, who will opine that Dr. Specht was required to obtain FDA approval to use his pXRF device in Flint and that, if he had sought approval, the FDA would have reviewed both the safety and the efficacy of the device. Dr. Specht's failure to obtain or even seek FDA approval is further evidence that Dr. Specht's pXRF testing has not been independently validated and is not reliable. Plaintiffs have not sought to exclude Dr. Schultz's testimony; nor is there any basis to do so.

Third, although Plaintiffs style their motion as a request to re-adopt the Court's ruling on testimony about alternative sources of lead as to two of VNA's experts from Bellwether I, Plaintiffs actually ask the Court to extend its previous ruling to four new expert reports, without providing any evidence or legal argument. In Bellwether I, the Court precluded two of VNA's experts from testifying that the individual Bellwether I Plaintiffs' "exposure[s] or their injuries were in fact caused by sources of lead other than Flint's water supply." *See* Op. & Order (MIL Order on Lead Exposure) 2-3, No. 17-cv-10164 ECF No. 645, PageID.43346-43347. The Court excluded this testimony because "neither [expert] has attempted to determine the most likely source of Plaintiffs' exposure." *Id*. The

Court should deny Plaintiffs' motion to re-adopt and extend its previous ruling, as Plaintiffs are seeking to prohibit a broad category of testimony without any evidentiary or legal support. Any concerns about these experts' testimony can be addressed as they arise. Further, none of VNA's experts' reports states that the Bellwether III Plaintiffs' injuries were in fact caused by some other source of lead, so there is no need to prohibit such testimony.

Fourth, the Court should not accept Plaintiffs' invitation to re-adopt its Bellwether I ruling that experts may not opine both that a Plaintiff is uninjured and that, if the Plaintiff were injured, the cause of that injury was family or social factors—such as family history and socioeconomic status. An expert may appropriately conclude that a Plaintiff does not exhibit the diagnostic criteria for a condition, and also provide opinions about the potential causes of the condition that Plaintiff's experts have diagnosed, because the facts, data, and scientific methods used to support both such opinions need not conflict with each other. The Court also should not re-adopt its Bellwether I conclusion that Dr. Thompson did not support his causation opinion with sufficient facts or data. Plaintiffs ask the Court to extend that Bellwether I ruling to entirely different reports, without even attempting to demonstrate that the expert reports submitted for this case lack a sufficient scientific basis.

**ARGUMENT**

**I.     The Court Should Decline To Exclude Evidence That VNA Employees And Government Officials Drank Flint Water**

In Bellwether I, the Court granted plaintiffs' motion *in limine* to exclude evidence that VNA and government employees drank unfiltered tap water during VNA's engagement for the City.  Op. & Order Granting Pls. Mot. to Preclude Evidence Regarding Defs., Gov't Officials and High-Profile Persons Consumption of Flint Water, No. 17-cv-10164 ECF No. 683, PageID.44033-44037 (MIL Order on Water Consumption).  The Court adopted this ruling again in the class case.  *See* Order 5, No. 16-cv-10444 ECF No. 2824, PageID.93838.  Plaintiffs ask the Court to do so again for Bellwether III.  The Court should not do so.

VNA anticipates that, during trial, Plaintiffs will argue or imply that certain VNA employees knew or suspected that Flint water was dangerous during VNA's engagement.  If they do, VNA should be allowed to introduce evidence that one or more of its employees drank unfiltered Flint water.[1]  Such evidence plainly tends to undermine any argument that the employees believed the water to be safe.  Courts agree that an individual's use of an object is probative of his or her beliefs about the safety of that object.[2]  *See, e.g., In re Davol, Inc./C.R. Bard, Inc., Polypropylene*

---

[1]   VNA is willing to stipulate to the exclusion of such evidence if Plaintiffs agree not to suggest that VNA was aware or suspected that Flint water was dangerous.

[2]   If VNA employees had refused to drink Flint water while working in the city, Plaintiffs undoubtedly would seek to emphasize that point to the jury.

*Hernia Mesh Prods. Liab. Litig.,* No. 18-md-2846, 2021 WL 5577409, at *3 (S.D. Ohio Nov. 30, 2021) ("A decision maker's personal use or recommendation . . . may be used to show the Defendants' state of mind.").

The Court reasoned in Bellwether I that the ignorance of an individual employee is not attributable to VNA and is not conclusive evidence of VNA's knowledge (or lack of knowledge).  MIL Order on Water Consumption 3, PageID.44035.  But that is not an issue on which VNA bears the burden of proof.  It is Plaintiffs' burden to prove their claim that VNA breached the duty of care.  And if, in support of that claim, Plaintiffs argue that VNA employees knew or suspected that the water was dangerous, VNA should be allowed to respond with all relevant evidence bearing on whether those employees believed that the water was dangerous—including testimony that they drank unfiltered water at the time.[3]

The Court also should deny Plaintiffs' request to exclude evidence that VNA employees witnessed City employees drinking unfiltered water.  VNA anticipates

---

[3]   Even accepting that VNA's knowledge is the "sum total" of its employees' knowledge, MIL Order on Water Consumption 3, PageID.44035, it does not follow that evidence that is probative of one employee's state of mind should be excluded simply because it is not conclusive with respect to VNA's state of mind.  Evidence need not be conclusive to be relevant.  The test is whether "it has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence tending to show that one VNA employee believed that the water was safe tends to make it more probable that VNA believed that the water was safe because that employee's knowledge is part of the "sum total" making up VNA's knowledge.

that, during trial, Plaintiffs will argue that VNA should have been suspicious of the information and water data it was given by the City or should have suspected that the City was concealing information about the condition of the water.  Evidence that VNA saw City employees drinking unfiltered Flint water tends to undermine that contention and to demonstrate that VNA had no reason to believe that anything unusual was occurring or that the officials were providing incomplete or misleading information about the water.   VNA has no intention of arguing that, as "a professional water engineer," "casual observations of non-expert government officials" drinking unfiltered water "informed . . . its analysis of the safety of drinking water."  MIL Order on Water Consumption 5, PageID.44037.  But, as people, VNA's employees were justifiably influenced by the fact that the City employees who hired VNA and provided water-quality information to VNA were also drinking that water.  This naturally reassured VNA's employees that the City employees were being straightforward in their own accounts of the water and were providing honest and complete information about the condition of the water.[4]

The Court should deny Plaintiffs' motion to exclude evidence that VNA and government employees drank unfiltered water.  It would be premature to decide this

---

[4]   Again, if VNA employees saw City employees refuse to drink the water, Plaintiffs likely would argue that this should have raised red flags for VNA.

issue at the motion *in limine* stage when Plaintiffs may pursue arguments at trial to which this evidence is a natural response.

## II.    The Court Should Not Exclude Criticisms About Dr. Specht's Bone Scans

As in Bellwether I, VNA does not intend to introduce evidence that Dr. Specht's pXRF testing is harmful to human health unless Plaintiffs open the door to that issue.  However, evidence that Dr. Specht's pXRF testing is experimental, is not FDA-approved, and serves no medical purpose is relevant to the weight the jury should afford the test results.  The Court allowed VNA to introduce such evidence in Bellwether I, and it should do the same here.

VNA's evidence for Bellwether III includes expert testimony from Dr. Daniel Schultz—which Plaintiffs have *not* sought to exclude.  Dr. Schultz is the former Director for the FDA's Center for Devices and Radiological Health.  He does not attack the safety of Dr. Specht's pXRF device.  Instead, he opines that Dr. Specht was required to obtain FDA approval in order to use his pXRF device outside the context of IRB-approved research and that, if Dr. Specht had sought approval, the FDA would have reviewed both the safety and the efficacy of the device.  *See* Ex. 2, Expert Report of Daniel Schultz, M.D. ¶¶ 18-23, 29, 69-72.  Dr. Schultz explains that the FDA balances the benefits of a device against the risk and that, to approve a radiological device for use on children, the FDA would require clear evidence of its diagnostic accuracy, even if the risk from any single scan is low.  *Id.* ¶¶ 31-34, 73-

81.   Dr. Schultz should be allowed to discuss the FDA's review process, and Plaintiffs do not contend otherwise.  Dr. Specht's failure to obtain or even seek FDA approval is further evidence that Dr. Specht's pXRF testing has not been independently validated and is not reliable

### III.   The Court Should Not Re-adopt Or Extend Its Bellwether I Ruling Excluding Evidence About Alternative Sources Of Lead Exposure To VNA's Bellwether III Experts

In Bellwether I, the Court granted the Bellwether I Plaintiffs' motion to exclude testimony from Dr. Finley and Dr. Weed that those plaintiffs' "exposure[s] or their injuries were in fact caused by sources of lead other than Flint's water supply."  *See* MIL Order on Lead Exposure 2-3, PageID.43346-43347.  The Court excluded this testimony because "neither [expert] ha[d] attempted to determine the most likely source of Plaintiffs' exposure."  *Id.*  Plaintiffs ask this Court to extend its previous ruling to Dr. Banner, Dr. Benson, and Dr. Greenberg, in addition to again precluding such testimony from Dr. Weed.  Br. in Supp. of Pls. Mot. to Re-Adopt Bellwether I Rulings ("Mot.") 6, ECF No. 3055, PageID.105315.  The Court should deny Plaintiffs' motion.

First, Plaintiffs do not explain which parts of VNA's experts' new opinions are objectionable or fall within the scope of the exclusion that they seek.  Mot. 6, PageID.105315.  Instead, Plaintiffs simply cite to the entirety of each expert's Bellwether III report.  *Id.*  Although Plaintiffs present their motion as merely a

request for the Court to re-adopt an earlier ruling, Plaintiffs are attempting to obtain an expansive new prohibition on brand new expert testimony without providing any specific grounds for exclusion of the opinions at issue.  They neither identify the specific evidence that they seek to exclude nor provide any supporting legal argument.  "[M]otions aiming to cut out broad categories of evidence, or that merely recapitulate the rules without any application to specific facts, should rarely be employed."  *Henry v. Quicken Loans, Inc*., No. 04-cv-40346, 2011 WL 13208621, at *4 (E.D. Mich. Jan. 31, 2011) (quoting *Sperberg v. Goodyear Tire & Rubber Co*., 519 F.2d 708, 712 (6th Cir. 1975)) (internal quotation marks omitted).  The "better practice is to deal with questions of admissibility of evidence as they arise."  *Id*.  The Court should deny Plaintiffs' motion on this basis alone.

Second, Plaintiffs do not affirmatively argue that any of the new expert reports state that Plaintiffs' injuries were in fact caused by some other source.  And VNA's new expert reports do not argue that Plaintiffs' injuries were caused by some other source.  Rather, the new expert reports criticize Plaintiffs' experts' failures to perform differential diagnoses.  Under both Michigan and Sixth Circuit law, an expert witness for a plaintiff who claims that his or her injuries are attributable to a particular toxic exposure must perform a differential diagnosis, which requires the expert to identify and "rule out" all reasonably relevant potential alternative causes. *Powell-Murphy v. Revitalizing Auto Communities Envt'l. Response Tr*., 333 Mich.

App. 234, 250 (2020) (requiring plaintiffs to produce evidence that "excludes other reasonably relevant potential causes of [the] plaintiff's symptoms") (quotation marks and citation omitted); *see Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 681 (6th Cir. 2011) (explaining that an expert on specific causation in the toxic-tort context must both "rule in" exposure to the toxin at issue as the cause of the plaintiffs' conditions and "rule out" alternative causes).

VNA's experts explain that Plaintiffs' experts failed to "rule out" these alternative causes. For example, Dr. Weed identifies a myriad of alternative causes of each Plaintiffs' individual condition that Dr. Bithoney and Dr. Sample each failed to consider. *See, e.g.*, MIL Ex. 2, Weed Report at 67-68, 82. Dr. Banner discusses how Dr. Bithoney and Dr. Sample erroneously relied on associations rather than causation in determining diagnoses for Plaintiffs. *See, e.g.*, *id.*, Banner Report at 18, 31-32. Dr. Benson criticizes, in part, Dr. Sample's failure to consider co-exposures when evaluating Plaintiffs and *all* aspects of their environment. *Id.*, Benson Report at 60. And Dr. Greenberg explains how, for example, Dr. Bithoney failed to consider alternative causes or alternative sources for lead, given his faulty logic and failure to consider basic toxicology principles. *Id.*, Greenberg Report (E.A.) at 18-19.

It is Plaintiffs' burden to establish causation via a differential diagnosis, and VNA is "not required to 'disprove' causation. Instead, [VNA] must only produce 'credible evidence which tends to discredit or rebut the plaintiff's evidence[.]'"

10

*Walker v. United Healthcare of Hardin, Inc.*, No. 07-cv-67, 2010 WL 3092648, at *9 (W.D. Ky. Aug. 6, 2010).  This is exactly the type of testimony that this Court permitted in Bellwether I, and the Court should do so again in Bellwether III.  *See* MIL Order on Lead Exposure 2-3, PageID.43346-43347.

## IV.   The Court Should Not Exclude Evidence That Plaintiffs' Injuries May Have Been Caused By Family Or Social Factors

In Bellwether I, the Court granted the Bellwether I Plaintiffs' motion to exclude testimony from VNA's experts that those plaintiffs' injuries were caused by family or social factors.  The Court's reasoning was two-fold.  First, the Court held that an expert could not testify that a plaintiff was uninjured and then opine in the alternative that, if the plaintiff were injured, the injury was caused by family or social factors.  *See* Op. & Order 8-9 (MIL Order on Family or Social Factors), No. 17-cv-10164 ECF No. 702, PageID.45669-45670.  Second, the Court held that the expert opinions about alternative causation offered by Dr. Thompson regarding the Bellwether I Plaintiffs were not sufficiently supported by "scientific data, evidence, or reliable methodology."  *Id*. at 12, PageID.45673.  The Bellwether III Plaintiffs now ask the Court to extend these rulings to the opinions offered in this case by Dr. McCaffrey, Dr. Thompson, Dr. Putnam, Dr. Nelson, Dr. Banner, Dr. Greenberg, Dr. Weed, and Dr. Benson, and to prohibit VNA's experts from testifying that the Bellwether III Plaintiffs' injuries were caused by family or social factors.  Mot. 7-8,

PageID.105316-105317.   The Court should deny Plaintiffs' request, for three reasons.

First, the Court should re-consider its Bellwether I ruling that expert witnesses who opine that plaintiffs do not satisfy the diagnostic criteria for their alleged injuries may not also opine that, if plaintiffs did satisfy those criteria, then their injury likely arose from family and/or social factors.  The Court reasoned that "flatly inconsistent opinion evidence 'in the alternative'" does not satisfy Federal Rule of Evidence 702 because it would constitute "speculation."  MIL Order on Family or Social Factors 8-9, PageID.45669-45670.  That is incorrect; an expert may offer both opinions because neither undermines the "sufficient facts or data" and "reliable principles and methods" used for the other.  Fed. R. Evid. 702.

For example, Dr. McCaffrey critiques the testing protocols used by Plaintiffs' experts and opines that the data collected from the tests administered by those experts is either unreliable (due to incorrect testing protocols) or does not actually show that Plaintiffs have the alleged injuries because Plaintiffs' experts misread the results.  *See, e.g.*, MIL Ex. 3, McCaffrey Report (Y.A.) at 8-10.  Dr. McCaffrey also opines that *the diagnoses* given by Plaintiffs' experts have causes other than lead exposure, based on the scientific literature, and that those other causes include family and social factors.  *See, e.g.*, *id.* at 10.  Neither of those opinions contradicts the

12

scientific basis for the other because testing for a condition involves different facts, data, and scientific knowledge than understanding the possible causes of a condition.

For instance, imagine that a doctor has tested a patient for yellow fever. That doctor could testify that the patient does not have yellow fever while also testifying that, if the patient did have yellow fever, the most likely culprit for that disease would be a mosquito bite. Assuming that both portions of that testimony were sufficiently reliable, both would be admissible under Rule 702.

The Court noted that alternative testimony would be "speculative." MIL Order on Family or Social Factors 11, PageID.45672. But experts may base their opinions on hypotheticals. *See Magna Elecs., Inc. v. TRW Auto. Holdings Corp.*, 2016 WL 4238652, at *2-3 (W.D. Mich. Feb. 4, 2016). To be more concrete, VNA could ask its experts: "Assume that the testing protocols you critiqued did show that Plaintiffs met the diagnostic criteria for their alleged injuries. Based upon your experience and scientific knowledge, what is the most likely cause of that condition?" Because the opinion offered in response to that question would be based upon "sufficient facts or data" and "reliable principles and methods," it would be admissible expert testimony even though the question assumed that the expert's first opinion—that Plaintiffs are uninjured—was wrong. As a result, the Court should not re-adopt its Bellwether I ruling that experts may not opine that a Plaintiff is

uninjured and also opine that, if the Plaintiff were injured, that injury most likely resulted from family and/or social factors.

Second, the Court should not re-adopt the Bellwether I ruling that Dr. Thompson lacked a sufficient basis for his causation opinions there, and extend that ruling to Dr. Thompson's and Dr. Nelson's causation opinions in this matter. Plaintiffs are again attempting to procure an expansive prohibition on expert testimony without providing any specific grounds for exclusion. *See* pp. 8-9, *supra*. They provide no justification or legal argument for taking a Bellwether I ruling about certain expert reports and applying it to completely different expert reports in this matter. If Plaintiffs had believed that Dr. Thompson's and Dr. Nelson's opinions were insufficiently supported, they should have raised that issue in a *Daubert* motion. And in any event, they are wrong that Dr. Thompson's and Dr. Nelson's causation opinions are unsupported. Both experts cite multiple scientific studies in support of their opinions that family and social factors can cause the type of injuries experienced by Plaintiffs. *See, e.g.*, MIL Ex. 4, Thompson Report (G.B.) at 3; *id.*, Thompson Report (C.D.) at 3-4; *id.*, Thompson Report (J.N.) at 3, 6; MIL Ex. 6, Nelson Report (C.D.) at 5. For instance, Dr. Thompson explained, with multiple studies cited in support, that "[t]he experience of interpersonal loss in childhood" is a "significant adverse life event" and "a risk factor for mental health and social problems." MIL Ex. 4, Thompson Report (G.B.) at 3. And he explained, again

14

based on multiple cited studies, that "[i]t is well-accepted that the pandemic lockdown negatively affected many children's academic achievement levels, with minority youth and those of lower socioeconomic status experiencing even greater negative effects." *Id*. at 4-5.  And Dr. Nelson stated, based on a cited scientific study, that "current lead exposure accounts for a very small amount of variance in cognitive ability (1-4%), whereas social and parenting factors account for 40% or more."  MIL Ex. 6, Nelson Report (C.D.) at 5.

Finally, even if the Court were inclined to re-adopt these Bellwether I rulings and bar VNA's experts from testifying that Plaintiffs' injuries in fact were caused by family and social factors, the Court should not prevent VNA from criticizing the causation opinions offered by Plaintiffs' experts for failing to adequately account for those factors.  Plaintiffs have the burden of proof to establish causation by providing a "differential diagnosis"—that is, Plaintiffs must introduce the testimony of an expert who has considered and ruled out all reasonably likely alternative causes.  *See Powell-Murphy*, 333 Mich. App. at 250; *Pluck*, 640 F.3d at 681.  VNA's experts therefore should be permitted to criticize Plaintiffs' experts for failing to appropriately account for and rule out family and social factors as the causes of Plaintiffs' alleged injuries.  VNA's experts also should be allowed to describe what a Plaintiff has experienced and how such experiences may contribute to the types of injuries diagnosed by Plaintiffs' experts, so that the jury can assess for itself whether

Plaintiffs' experts have appropriately ruled out all reasonably likely alternative causes of Plaintiffs' injuries.

## CONCLUSION

The Court should decline to exclude evidence that VNA and government employees drank unfiltered Flint water, criticisms of Dr. Specht's bone scans, evidence of alternative sources of lead exposure, and the opinions of VNA's experts that Plaintiffs' alleged injuries may have been caused by family or social factors.

Respectfully submitted,

**CAMPBELL, CONROY & O'NEIL P.C.**

**MAYER BROWN LLP**

By: */s/ James M. Campbell*
James M. Campbell
Alaina N. Devine
20 City Square, Suite 300
Boston, MA 02129
(617) 241-3000
jmcampbell@campbell-trial-lawyers.com
adevine@campbell-trial-lawyers.com

By: */s/ Michael A. Olsen*
Michael A. Olsen
71 S. Wacker Dr.
Chicago, IL 60606
(312) 701-7120
molsen@mayerbrown.com

*Attorneys for Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC*

Dated:  August 13, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2024, I electronically filed the foregoing document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

By:   /s/ *James M. Campbell*
James M. Campbell
jmcampbell@campbell-trial-lawyers.com