# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases                                  Hon. Judith E. Levy
5:16-cv-10444/17-cv-10164                          United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

---

**BELLWETHER III PLAINTIFFS' RESPONSE TO THE VEOLIA DEFENDANTS' MOTION TO EXCLUDE EVIDENCE ABOUT MOTIVE, INTENT, OR MENTAL STATE AND ABOUT VEOLIA EMPLOYEES' PERSONAL FEELINGS ABOUT THE FLINT WATER CRISIS AND WHAT THEY WOULD HAVE DONE DIFFERENTLY IN HINDSIGHT**

---

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

LEGAL STANDARD .........................................................................................2

BACKGROUND..................................................................................................4

ARGUMENT .......................................................................................................5

I.    EVIDENCE ABOUT MOTIVE, INTENT, OR MENTAL STATE OF VEOLIA AND ITS EMPLOYEES IS BOTH RELEVANT AND ADMISSIBLE..5

A.    Evidence About the Motive, Intent, or Mental State of Veolia's Employees or Veolia Itself is Still Highly Relevant ........................................................................5

B.    Evidence About the Motive, Intent, or Mental State of Veolia's Employees or Veolia Itself is Still More Probative than Prejudicial................11

C.    Dr. Russell's Comments Based on the Evidence Is Permissible. ..........11

II.    EVIDENCE ABOUT WHAT VEOLIA'S EMPLOYEES WOULD HAVE DONE DIFFERENTLY IS CLEARLY ADMISSIBLE .........................................12

CONCLUSION ...................................................................................................14

**INTRODUCTION**

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") seek to exclude what they broadly define as "improper jury arguments" ECF No.[1] 3054 (Veolia's Motion to Exclude Evidence About Motive, Intent, or Mental State and About Veolia's Personal Feelings and Hindsight, hereinafter "Veolia's Mot.").[2] The Court has already denied Veolia's attempts to exclude such evidence in both the Bellwether I and Issues Class trial and Veolia does not set forth any reason why the Court should do so differently here.

Turning first to the motive, intent, or mental state portion of the motion, evidence of Veolia's desire to upsell the City of Flint by leveraging its short-term consulting work for the City into a much larger operations and management ("O&M") contract is directly relevant to whether Veolia performed its work in accordance with the standard of care, and no unfair prejudice to Veolia outweighs that evidence's probative value. Nothing in the Federal Rules of Evidence supports excluding testimony, documents, or argument regarding Veolia's motive and intent to pursue a larger contract with the City of Flint. The Court should deny Veolia's

---

[1] Unless otherwise noted, ECF citations refer to Case No. 16-cv-10444.
[2] These motions were previously made (and denied) separately before both the Bellwether I Trial and the Class Issues Trial. In this Bellwether III trial, Veolia has refiled both of these motions and combined them as one.

motion.

Moving to the second portion of the motion, Veolia seeks to exclude "evidence about Veolia employees' personal feelings and what they would have done differently." The motion continues to conflate multiple issues in an effort to paint probative, admissible testimony regarding whether or not Veolia's employees believe it made mistakes in Flint as irrelevant or unfairly prejudicial. Contrary to Veolia's position in its motion, questioning Veolia employees about such topics is entirely proper.  In the face of the evidence against them, the Veolia witnesses' steadfast refusal to acknowledge any mistakes or errors (as was the case in most of the deposition testimony attached to their motion) directly bears on their lack of credibility. To the extent a Veolia employee admits mistakes—such testimony is admissible as an admission by a party opponent. The questions posed to Veolia's employees may have been uncomfortable for them (and their counsel), but that does not make them improper, and the Court's prior rulings on this issue should be applied again.

## LEGAL STANDARD

"The court has the power to exclude evidence in limine *only* when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (emphasis added); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that a motion

2

*In Limine* is appropriate when it can "eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose").

"Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. "[W]ithout the context of trial," the court may be "unable to determine whether the evidence in question should be excluded." *Id.*, *see also Jonasson*, 115 F.3d at 440 ("Some evidentiary submissions . . . cannot be evaluated accurately or sufficiently by the trial judge in such a [pretrial] procedural environment. In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury"). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.,* 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).[3]

---

[3] A court facing a motion in limine similar to one it has already ruled on in a previous bellwether will re-adopt and adhere to its prior rulings. *See, e.g., 3A Composites USA, Inc. v. United Indus., Inc.*, No. 5:16-CV-5017, 2017 WL 5991968, at *2 (W.D. Ark. Sept. 18, 2017) ("Most of the motions currently pending in the instant case are simply renewals of the parties' respective positions on identical requests for relief in the previous case, and the Court's rulings on those motions will be identical to its rulings on the same issues in the previous case.").

## BACKGROUND

Before the first Bellwether trial, the Court denied Veolia's motion to exclude evidence of motive, intent, or mental state, reasoning that the evidence may be relevant to whether Veolia warned the City of Flint to adopt corrosion controls. BWI,[4] ECF No. 646, (BWI MIL Hearing Tr.) at PageID.43415-16.[5] Veolia moved to exclude the same evidence in advance of the Issues Class trial, which the Court likewise declined to do. The Court reasoned that: "[S]howing that there may have been a motive to downplay or not meet the standard of care so that VNA could win a larger contract, it seems to me is relevant to the plaintiffs' claims and not more prejudicial than probative." ECF No. 2820 (Class MIL Hearing Tr.) at PageID.93479.ECF No. 2820 (Class MIL Hearing Tr.) at PageID.93478-79.

Separately, before the first Bellwether trial, the Court granted in part and denied in part Veolia's motion in limine to exclude testimony about personal beliefs and hindsight testimony. BWI, ECF No. 658 (Order Granting in Part and Denying in Part Veolia's Motion *in Limine*), at PageID.43585-87. The Court ruled that "testimony regarding employees' personal feelings or emotional responses to the

---

[4] Citations to BWI refer to Case No. 5:17-cv-10164.

[5] For example, the Court reasoned: "VNA is saying we did warn. And plaintiffs are saying you didn't warn. And so it would be a fact that would make it more likely than not, maybe not very likely. We'll have to find out what -- how it comes in. But it's certainly -- if there's a motive not to warn, that could make it more probable and meet the relevancy standard that your client did not warn." BWI, ECF No. 646, (BWI MIL Hearing Tr.) at PageID.43415–16.

Flint Water Crisis" was not relevant. *Id.* at PageID.43587. However, the Court

further ruled that Veolia employees' beliefs that Veolia could have acted differently

while working for the City of Flint were admissible because those beliefs were

probative of whether mistakes occurred. *Id.* Veolia filed a similar motion in advance

of the Issues Class trial, and the Court adhered to its ruling from the first Bellwether

trial, reasoning that "hindsight testimony in and of itself is not improper in any way.

It can be relevant and probative evidence, and there's just nothing that would

suggest that it's not." ECF No. 2822, (Class MIL Hearing Tr.) at PageID.93658-

59.

**ARGUMENT**

I.    **EVIDENCE ABOUT MOTIVE, INTENT, OR MENTAL STATE OF VEOLIA AND ITS EMPLOYEES IS BOTH RELEVANT AND ADMISSIBLE**

    **A. Evidence About the Motive, Intent, or Mental State of Veolia's Employees or Veolia Itself is Still Highly Relevant**

Plaintiffs (both Bellwether and Class) have already set forth multiple specific

reasons as to why evidence about the motive, intent, or mental state of Veolia's

employees or Veolia itself is relevant, and this Court has already ruled that such

evidence is relevant based on **all of those** reasons. Veolia's motion attacks

(unsuccessfully) the Court's prior reasoning on **only one** of those reasons. It argues

that the Court erred in reasoning that Veolia's business motives are highly relevant

5

to whether Veolia actually recommended corrosion control.[6] Specifically, Veolia argues that the Court's reasoning on this one point is somehow flawed because it "appears to rest on the assumption that Veolia intended to have its witnesses testify at trial that Veolia warned the City of Flint and that testimony would be undermined if those employees had a motive not to warn." Veolia's Mot. at 6.

This argument is without merit. First, there is nothing to suggest that the Court's ruling was based on such an assumption. Second, the fact that Veolia intends to show that Veolia warned the city through documents[7] does nothing to undermine the relevance of Veolia's motives to downplay the issues in Flint or fail to give adequate warning. ECF No. 2820, (Class MIL Hearing Tr.) at PageID.93479 ("[S]howing that there may have been a motive to **downplay** or not meet the standard of care so that [Veolia] could win a larger contract, it seems to me is relevant to the plaintiffs' claims and not more prejudicial than probative.") (emphasis added).

---

[6] The Court reasoned that this makes the jury would decide the factual question of whether or not Veolia warned the City of the need for corrosion control, and "if there's a motive not to warn, that could make it more probable and meet the relevancy standard that [Veolia] did not warn." BWI, ECF No. 646, (BWI MIL Hearing Tr.) at PageID.43416.

[7] This is illustrated by Veolia's argument during the Issues Class oral argument: "And I think what we saw in Bellwether I and what we set forth in our briefing is that we did provide that warning. There's document evidence of that. There's testimony of that. And I think if you look in the plaintiffs' opposition to our motion, they're saying that the adequacy of that warning was not sufficient." ECF No. 2820 (Class MIL Hearing Tr.) at PageID.93474.

Moreover, even if the Court's ruling was flawed on the point of corrosion control——which it was not—Veolia does not address why the Court's ruling on the following additional relevancy arguments is incorrect. Those arguments are as follows:

*One,* evidence regarding Veolia's desire to upsell Flint a more lucrative O&M contract goes to whether Veolia adequately recommended that Flint reconnect to Detroit Water. Numerous internal emails make clear that Veolia's engineers believed it was important to communicate that the best technical option, and potentially safest option, was for Flint to return to Detroit water immediately.[8] Despite this, none of Veolia's reports raise returning to Detroit as an option for Flint, let alone the potentially quickest or safest option—indeed, *no document at all* indicates that Veolia ever passed this "best technical solution" along to its client. *See* ECF No. 2737-8, (30(b)(6) Deposition of Brian Clarke, October 6, 2020) at

---

[8] *See, e.g.*, ECF No. 2715-12, (Veolia Internal Emails Previously Marked as Nasuta Exhibit 17) at PageID.89060 ("Talked with Fahey and he made it 'very clear' *the technical group needs to point out that the quickest option and maybe safest option is to return to Detroit water*." (emphasis added); ECF No. 2715-9 **(**Veolia Internal Emails Previously Marked as Fahey Exhibit 16) at PageID.89051 ("Go on record with BD that we should advise Flint to open the valve from Detroit if we believe that is the best technical solution. DO NOT let BD make any technical calls."); *id*. at PageID.89052 ("If the best 'technical decision is to go back to the City of Detroit as its supplier' we should not be afraid to make that call"); ECF No. 2715-11, (Veolia Internal Emails Previously Marked as Nasuta Exhibit 14) at PageID.89056 ("Just make sure we have go back to Detroit water as a very low risk scenario").

PageID.90399 (confirming that none of Veolia's reports recommend returning to Detroit and that Veolia is unaware of any email from its lead engineer making that recommendation to Flint). Veolia claims that it *did* raise this option with the City but that it did not include it as a formal recommendation because the City "made clear" that returning to Detroit was off the table. Veolia again points to conversations purportedly had by its engineers as evidence for its version of the story. For instance, Veolia's corporate representative, Brian Clarke, testified that "Mr. Gnagy, in the course of the engagement, spoke with Mr. Ambrose and said, 'What about returning to Detroit?' And he said, 'Stick to your scope if you want to get paid.'" *Id.* at PageID.90398.

Veolia's witnesses have also suggested that, notwithstanding the multiple emails referencing a return to Detroit as the "best technical solution" for Flint, its engineers had internal conversations in which they determined that was *not* the case, thereby providing technical justification for its omission from Veolia's reports. Once again, this is not reflected in any document. *See id.*, at PageID.90401 ("Q. Are you aware of any document from a Veolia technical person which says, 'We shouldn't suggest switching to Detroit or it's not the best solution,' anything like that?" "A. No."). And Veolia has repeatedly claimed that the City of Flint expressly told Veolia to exclude returning to Detroit from its scope of work—even though the contract on its face says no such thing. An alternative explanation is that

8

Veolia failed to recommend returning to Detroit Water even if this was, from an engineering perspective, Flint's best option because this would eliminate the opportunity for a larger contract for Veolia to operate and manage the Flint Water Treatment Plant. The jury is entitled to weigh this explanation, among others, in order to reach its verdict.

*Two,* evidence regarding Veolia's intention to sell its long-term services to Flint goes to whether Veolia communicated its engineers' concerns about the likely success or failure of Veolia's work in Flint. As this Court has recognized, the American Society of Civil Engineers Code of Ethics, the National Society of Professional Engineers, and the Code of Ethics for Engineers reflect an industry consensus regarding the considerations that guide the standard of care for professional engineers. *See* ECF No. 2621 (Order Denying Veolia's Motion to Exclude Dr. Paolo Gardoni) at PageID.85848–851 (denying the motion to exclude Professor Gardoni from testifying and relying on engineering codes in his expert opinion). Under those codes, "Engineers shall advise their employers or clients when, as a result of their studies, they believe a project will not be successful." ECF No. 1208-114 (Gardoni Expert Report), at PageID.37165 (quoting Canon 4e of the ASCE Code of Ethics); *id.* (quoting NSPE Code of Ethics Professional Obligations 1b for the proposition that "Engineers shall advise their clients or employers when they believe a project will not be successful."). The evidence demonstrates that

9

Veolia's engineers knew Veolia could not address the City of Flint's concerns regarding water quality within the timeframe provided by the short-term consulting contract Veolia entered with the City. Veolia's corporate representative admitted this at his deposition: "Q. Okay. So Mr. Chen knew before the project even got started that the city's expectation [of] the consultant was unrealistic, right?" "A. That was his assessment. Yes." ECF No. 2737-4, (30(b)(6) Deposition of Brian Clarke, June 28, 2021) at PageID.90374-90376. But Veolia never told Flint that its expectations for a water consultant were "unrealistic." Veolia may argue that it did not communicate Mr. Chen's concerns or those of his colleague Marvin Gnagy because those engineers reconsidered their positions. Again, the jury is entitled to consider whether Veolia's professional engineers ultimately resolved their concerns about the likely failure of Veolia's work for Flint or whether their concerns were never communicated because they ran contrary to Veolia's business aspirations in Flint.

The Court has already ruled that the above evidence sufficiently established relevance. That ruling was absolutely correct, and Veolia's sole argument as to why the Court's prior ruling is unfitting (that it was based on the assumption discussed *supra*) does not justify why the Court's entire ruling should be changed in the context of Bellwether III.

**B. Evidence About the Motive, Intent, or Mental State of Veolia's Employees or Veolia Itself is Still More Probative than Prejudicial.**

Veolia reiterates the same arguments regarding prejudice raised in both Bellwether I and the Class Trial. *Compare*, ECF No. 3054 (Veolia's Mot.) *with* ECF. No. 2698 (Veolia Motive MIL in Class), *and* BWI, ECF No. 492 (Veolia Motive MIL in BWI).[9] Indeed, Veolia's argument is identical to that raised in the Class pleadings. The Court has already considered these arguments and ruled: "in the Sixth Circuit, we have a very liberal relevancy standard under *United States v Ramer*. And so I don't think that it's substantially more prejudicial than probative or any of the arguments that have been made to be able -- to tell the story of what the witnesses have already testified to in their depositions." BWI, ECF No. 646, (BWI MIL Hearing Tr.) at PageID.43413. This reasoning is sound, and Veolia does not present any reason to disturb it.

**C. Dr. Russell's Comments Based on the Evidence Is Permissible.**

Veolia argues that testimony from Plaintiffs' expert as to motive would be inadmissible under 702 as speculative. However, Dr. Russell is not speculating on Veolia's motive; rather, he based his opinion on the admissible testimony evidence (some of which Veolia seeks to exclude in this very motion). *See* ECF No. 2987-2

---

[9] Therefore, Plaintiffs incorporate by reference our arguments made in opposition in the BWI opposition as well as the arguments made by Class Plaintiffs int eh Class pleadings.

(Dr. Russell Report) at PageID.10118 (citing testimony of Nastua and Nicholas). Additionally, his opinion is rooted in the ethical canons which engineers are bound by. *Id.*

## II. EVIDENCE ABOUT WHAT VEOLIA'S EMPLOYEES WOULD HAVE DONE DIFFERENTLY IS CLEARLY ADMISSIBLE

This Court has previously ruled on this motion twice, and that ruling should be applied equally here. BWI, ECF No. 658 (Order Denying in Part Veolia's Motion *in Limine*) at PageID.43586; ECF No. 2822 (Class MIL Hearing Tr.) at PageID.93649–59. Plaintiffs will follow the Court's ruling and abstain from eliciting Veolia's witnesses' purely "personal feelings or emotional responses to the Flint Water Crisis." *Id.*

However, Defendants are attempting a third bite at the apple by conflating testimony about emotional responses—which this Court excluded previously—with entirely **different** testimony about an employee's views on whether Veolia made mistakes in hindsight—which this Court rightly allowed. BWI, ECF No. 658 (Order Denying in Part Veolia's Motion *in Limine*) at PageID.43586–87; ECF No. 2822 (Class MIL Hearing Tr.) at PageID.93649–59.

As the Court explained in Bellwether I: "Whether [Veolia's] employees believe that mistakes were made during their work for the City of Flint is plainly probative of whether [Veolia] in fact did make mistakes." BWI, ECF No. 658 (Order

Denying in Part Veolia's Motion *in Limine*) at PageID.43586. And as the Court reaffirmed at the Class MIL hearing, Veolia had not raised "a reason to disturb the decision [from] Bellwether I on hindsight testimony" as there was not a convincing argument that such testimony was either untrustworthy or likely to confuse the jury. ECF No. 2822 (Class MIL Hearing Tr.) at PageID.93654–59.[10]

Veolia does not raise any arguments that warrant reconsideration of the Court's prior rulings. Instead, it reiterates the arguments raised in the class briefing, which this Court has already rejected.[11] *Compare*, ECF No. 3054 (Veolia's Mot.) at 11–16, *with* ECF. No. 2696 (Veolia Feelings MIL in Class), *and* BWI, ECF No. 498 (Veolia Feeling MIL in BWI).

The Court's rulings are both correct and supported by Sixth Circuit law. Accordingly, the Court should once again deny Veolia's request to exclude testimony regarding whether Veolia's employees believe Veolia made mistakes in Flint or should have done something differently with respect to its work in Flint.

---

[10] Consistent with the Court's ruling before the class trial, counsel for Bellwether III Plaintiffs will ensure that that it is clear to the jury whether the witness is being asked the question based on what they knew at the time or what they've learned since that time. ECF No. 2822, (Class MIL Hearing Tr.) at PageID.93657–58.

[11] Therefore, Plaintiffs incorporate by reference our arguments made in opposition in the BWI opposition as well as the arguments made by Class Plaintiffs in the Class pleadings.

13

## CONCLUSION

Therefore, Plaintiffs respectfully request that the Court deny Veolia's

motion.


Dated:        August 13, 2024              Respectfully submitted,

**LEVY KONIGSBERG LLP**              **NAPOLI SHKOLNIK PLLC**

/s/Corey M. Stern                        /s/ Hunter J. Shkolnik
Corey M. Stern                           Hunter J. Shkolnik
Melanie Daly                             Patrick Lanciotti
Kiersten Holms                           360 Lexington Ave., 11th Floor
605 Third Ave., 33rd Floor               New York, New York 10017
New York, New York 10158                 (212) 397-1000
(212) 605-6298                           hunter@nsprlaw.com
cstern@levylaw.com

*ATTORNEYS FOR PLAINTIFFS*

14

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ Melanie Daly
MELANIE DALY

15