# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases                Hon. Judith E. Levy

5:16-cv-10444/17-cv-10164           United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

**BELLWETHER III PLAINTIFFS' RESPONSE TO THE VEOLIA DEFENDANTS' MOTION TO EXCLUDE EVIDENCE ABOUT CLAIMS AND LAWSUITS THAT DO NOT INVOLVE THE FLINT WATER CRISIS**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

LEGAL STANDARD ................................................................................................1

ARGUMENT ..............................................................................................................2

    I.    Veolia's Motion is OverbRoad and premature ...............................................2

    II.   GRANTING VEOLIA'S MOTION WOULD EXCLUDE HIGHLY RELEVANT EVIDENCE REGARDING VEOLIA'S NEARLY IDENTICAL WORK IN OTHER STATES ......................................................................................3

        A.  Evidence of Veolia's prior work in Pittsburgh is admissible as it is highly relevant to material issues in the case ................................................4

            i.   Relevance ..............................................................................5

            ii.  Admissibility .........................................................................7

        B.  Evidence of prior litigation and the overlap of Veolia's defense and public-relations strategies is highly relevant and admissible. ...........................9

CONCLUSION ........................................................................................................11

## INTRODUCTION

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") seek to exclude evidence about claims and lawsuits that do not involve the Flint Water Crisis. ECF No.[1] 3056 ("Veolia Mot."). Veolia's motion should be denied because it is improperly overbroad and seeks enforcement of a rule that would exclude relevant and non-prejudicial evidence. Moreover, the Court will be better suited to assess the admissibility of specific evidence (that might fall within this broad category) at trial, with the benefit of context as to how the evidence is presented alongside other evidence.

## LEGAL STANDARD

"The court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (emphasis added); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (observing that a motion in limine is appropriate when it can "eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose").

---

[1] Unless otherwise noted, ECF citations refer to Case No. 16-cv-10444.

1

"Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846. "[W]ithout the context of trial," the court may be "unable to determine whether the evidence in question should be excluded." *Id.; see also Jonasson*, 115 F.3d at 440 ("Some evidentiary submissions … cannot be evaluated accurately or sufficiently by the trial judge in such a [pretrial] procedural environment. In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury"). Courts are "almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1218 (D. Kan. 2007).

## ARGUMENT

### I. VEOLIA'S MOTION IS OVERBROAD AND PREMATURE

As an initial matter, this motion is overbroad and improper at the *in limine* phase. Indeed, the motion does not identify any specific evidence that Veolia seeks to exclude. Instead, it broadly seeks to exclude all "evidence **relating to** claims and lawsuits against [Veolia] that do not involve the Flint [W]ater [C]risis." Veolia Mot. at PageID.105329 (emphasis added). This is fatal to Veolia's motion, because when a party "simply asserts objections without tying them to specific evidentiary items,

2

the Court is well within its discretion to deny the motion." *Victor v. Reynolds,* No. 1:20-cv-13218, 2024 U.S. Dist. LEXIS 33438, at *17 (E.D. Mich. Feb. 27, 2024).

As such, the Court should deny the motion on its face for that reason alone. *See Fakhoury v. O'Reilly*, No. 16-13323, 2022 U.S. Dist. LEXIS 56366, at *17–18 (E.D. Mich. Mar. 28, 2022) (collecting cases doing just that); *United States v. Jacobs*, 674 F. Supp. 3d 451, 456 (S.D. Ohio 2023) ("Furthermore, [o]rders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility as they arise.") (cleaned up); *see also Wilkins*, 487 F. Supp. 2d at 1218 ("[Courts are] almost always better situated during the actual trial to assess the value and utility of evidence.").

## II. GRANTING VEOLIA'S MOTION WOULD EXCLUDE HIGHLY RELEVANT EVIDENCE REGARDING VEOLIA'S NEARLY IDENTICAL WORK IN OTHER STATES

Before the Bellwether I trial, the Court precluded any evidence about other lawsuits filed against Veolia, reasoning that such evidence would likely fall into the category of impermissible character evidence under Federal Rule of Evidence 404(a)(1). The Court explained that although Plaintiffs suggested that there could be relevant admissions in the other similar litigations, because "Plaintiffs d[id] not point to any actual admission they wish[ed] to introduce, that issue [was] not ripe." BWI,[2] ECF No. 655 (Order Granting Veolia MIL Re Other Lawsuits) at PageID.43572–

---

[2] "BWI" refers to Case No. 16-cv-1054.

3

43575. The Court also reasoned that while Plaintiffs suggested that Veolia's prior work in Plymouth was similar to that in Flint, Plaintiffs had not shown that such evidence satisfied the four-part test set out in *McLeod v. Parsons Corp.*, 73 F. App'x 846 (6th Cir. 2003). *Id*.

Now, however, evidence has come to light regarding the overlap in Veolia's work in both Flint and Pittsburgh. The lead crisis in Flint and the lead crisis involving Pittsburgh's water supply have many unfortunate parallels, including Veolia's failure to employ adequate corrosion control and the implementation of Veolia's money saving contracts, followed by a lead crisis. *See* Plaintiffs' Ex. 1, (https://theintercept.com/2018/05/20/pittsburgh-flint-veolia-privatization-public-water-systems-lead/).

### A. Evidence of Veolia's prior work in Pittsburgh is admissible as it is highly relevant to material issues in the case.

To be clear, even if the Court ruled that evidence of other lawsuits were inadmissible, evidence of Veolia's prior work in Pittsburgh (without mention of the actual litigation) would not be excluded. However, because of the broad nature of Veolia's motion, and because Veolia attempted to use the Court's Bellwether I *in limine* ruling on prior lawsuits as a tool to keep out *all evidence* about Veolia's prior work in Pittsburgh (and other places) during the Bellwether I trial, Plaintiffs address these issues here.

4

      i.  <u>Relevance</u>

There are several relevant ways that Veolia's work in Pittsburgh could come in as evidence in the Bellwether III trial. First, as noted by Plaintiffs' expert Dr. Russell, Veolia's work in Pittsburgh shows what prior knowledge Veolia had when assessing the situation in Flint. Indeed, he explains that: "Veolia had been working in Pittsburg[h] since 2012 on the same basic issues as … Flint, namely, the impact of lead service laterals, water that was corrosive to lead pipes and high lead containing fixtures, and high lead levels in their drinking water." *See* Plaintiffs' Ex. 2, (Dr. Russell Report) at 16. Thus, he concludes "Veolia's experience, and specifically their work in Pittsburg[h] and Detroit, would have made them well aware of the potential for severe water quality issues in Flint." *Id.* This evidence of prior knowledge is relevant to the credibility of Veolia's statements that they had no reason to suspect a widespread lead problem in Flint, as well as the reasonableness of their actions (for example, relying on Flint's lead testing in support of the decision to remove references to lead from their final report or in determining the was not a widespread lead problem).

Next, through his work in Pittsburgh, Veolia engineer Marvin Gnagy learned by **February 2015** that "any level of lead was dangerous in drinking water." *Id.* Gnagy testified (in the Pittsburgh litigation) that it was this information from the EPA that prompted him to ask for Pittsburgh's raw data for its lead and copper

5

compliance testing; even though he knew Pittsburgh was technically in compliance with the Lead and Copper Rule. *See* Plaintiff' Exhibit 3, (Marvin Gnagy Dec. 6, 2017, Deposition Tr.) at 61:17–62:5. Additionally, when Gnagy received the raw data from the lead and copper test results in Pittsburgh, he noted that the levels were "a little too close" to the EPA action level for lead. *Id.* at 63:17–65:5. Like the above information, this evidence is relevant to what Veolia knew coming into their work in Flint. It is also relevant to what they knew when they told the citizens of Flint that the water was "safe" because it was compliant, as well as the reasonableness of those types of statements.

Finally, in response to Flint's request for bid proposals ("RFP"), Veolia touted its work in Pittsburgh. *See* Plaintiffs' Ex. 4, (Veolia's Response to RFP) at 2 ("One key example of this model at work is in our ongoing contract with the Pittsburgh Water & Sewer Authority (PWSA). That partnership began in 2012 and was just (this past month) extended for a new term. Working with PWSA, Veolia is implementing a long-term strategy to improve water quality and customer service, increase efficiency, and overcome financial challenges"). Similarly, as noted by Dr. Russell, Veolia proposed the same Peer Performance Solutions approach in Flint that it had implemented in Pittsburgh. *See* Plaintiffs' Ex. 2, (Dr. Russell Report) at 38. This is again relevant to the prior experience and knowledge that Veolia brought to their work in Flint (as well as the scope of their work).

ii. Admissibility

The above evidence is not impermissible character evidence and should not be excluded under Rule 404(a). Prior deposition testimony of Veolia employees — –like that of Mr. Gnagy discussed above—would be admissible as opposing party statements under Rule 801(d)(2), and for impeachment purposes under Rule 801(d)(1). Further, any "admissions made during a deposition, absent exceptional circumstances, have been held to be binding on the parties as a judicial admission[.]" *Cadle Co. II v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 313 (6th Cir. 2011).

The remaining evidence of Veolia's conduct in Pittsburgh would not be admitted for the improper purpose of showing that Veolia had the propensity to act a certain way. Rather, as set forth above, it would be presented for the permissible purpose of showing proof of "knowledge" and "opportunity." *McLeod*, 73 F. App'x at 854. Specifically, the knowledge that Veolia had in coming into its work in Flint and the opportunity it would have had to take certain actions based on that knowledge is relevant for the reasons set forth in Section I (A)(i).

The above explanation satisfies factors one and two of the Sixth Circuit's four-part test.[3] And the remaining factors of the test are also satisfied here. As to timing,

---

[3] As this Court previously recognized, evidence of prior acts is admissible when it meets a four-part test: "(1) the evidence must be directed toward establishing something other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and

7

Veolia's contract in Pittsburgh started in 2012 and was ongoing at the time Veolia contracted to work in Flint in 2015. As to similarity, in both cases, Veolia was hired to assess water quality issues during a time of financial crisis. Indeed, as set forth above, Veolia itself even pointed to its work in Pittsburgh as a relevant example in responding to the City's RFP.

As to believability, it is not in dispute that Veolia worked in Pittsburgh and that there was a resulting lead water crisis. Even sworn testimony from Veolia's employees confirm this. *See* BW1, ECF No. 924 (June 9, 2022, Trail Tr.) at Tr. Pg. 5414 (Q: Okay. So now this was the proposal. And in the proposal, Veolia gives references, right? Firm qualifications, experiences, references. And it lists other jobs that it had done, correct? Gnagy A: Yes. Q: One of them was the Pittsburgh Water and Sewer Authority that you actually had worked on, right? Gnagy A: That's correct.").

Finally, the prejudicial effect of the evidence does not outweigh its probative value set forth above. Veolia argues that other cases have excluded evidence of other lawsuits under 403. However, a Rule 403 analysis is fact dependent on the specific evidence sought to be admitted.[4] Veolia cannot credibly claim that all evidence

---

that the party in question committed it; and (4) the prejudicial effect of the evidence must not clearly outweigh its probative value." *McLeod*, 73 F. App'x at 854.

[4] Veolia cites several cases where courts have excluded prior lawsuits under 403, but all of those cases involve a fact specific assessment. They do not stand for the bright line rule that other lawsuits are defacto unduly prejudicial under Rule 403.

8

related to prior lawsuits would be prejudicial without actually identifying the specific evidence and specific prejudice. *See United States v. Hamilton*, 574 F. Supp. 3d 461, 469 (E.D. Mich. 2021) ("Of course, it is impossible for the Court to determine the potential relevance or to balance any prejudicial effect of evidence without knowing what that evidence is, and without viewing it in the context of other evidence that will be presented at trial.").[5] Additionally, any collateral evidence needed to explain the context of the other lawsuits would be minimal as the Court could instruct the jury that the basis for the lawsuit and its outcome are not probative of Veolia's liability in this trial.

### B. Evidence of prior litigation and the overlap of Veolia's defense and public-relations strategies is highly relevant and admissible.

Here, Veolia has several persistent trial themes. Perhaps the most pervasive of those is that issues related to lead were beyond the limited scope of Veolia's

---

[5] This principle of law is well settled. *Barrow v. Terminix Int'l Co., L.P.*, No. 3:07-cv-324, 2009 U.S. Dist. LEXIS 109471, at *9 (S.D. Ohio Nov. 3, 2009) ("[W]hether evidence is relevant and not unfairly prejudicial depends upon the context in which it is attempted to be presented."); *Arnett v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:23-cv-11138, 2024 U.S. Dist. LEXIS 131746, at *22 (E.D. Mich. July 25, 2024) ("This Court will not categorically exclude all references to all Saginaw fires or arsons because, to Plaintiff's point, context at trial may show that a particular fire is relevant, probative, and non-prejudicial."); *United States v. Kincaid*, No. 3:10-CR-160, 2013 U.S. Dist. LEXIS 147133, at *12 (E.D. Tenn. Oct. 11, 2013) ("As to the objections pursuant to Rules 401 and 403, the evidence could be relevant if offered for certain purposes and cannot necessarily be said to be unfairly prejudicial or confusing in all contexts. A ruling on the issues this evidence presents under Rules 401 and 403, therefore, is more appropriately decided in the context in which the evidence is offered at trial.").

9

engagement with Flint and that city officials hid the extent of the lead problem from them. As discussed in Plaintiffs' response to Veolia's public relations motion, there are documents showing that these themes were created and disseminated through a comprehensive public relations strategy. There are also documents showing that similar themes and the same types of public relations strategies were enacted in response to the Pittsburgh litigation (as well as other litigations).

This is relevant as it makes it more likely that Veolia's claims about what happened in Flint are not based on facts but rather on their public relations teams' creation of a story line. And the fact that Veolia has enacted similar strategies in response to similar litigations is admissible as a habitual business practice under Federal Rule of Evidence 406. Indeed, Rule 406 provides that: "Evidence of [] an organization's routine practice may be admitted to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." *Id.; see also Cooper v. Neilmed Pharm., Inc.,* No. 1:16-cv-945, 2024 U.S. Dist. LEXIS 20542, at *12 (S.D. Ohio Feb. 6, 2024) (Evidence of an organization's routine practice is both relevant and admissible[.]").

Finally, because there are examples of "evidence **relating to** claims and lawsuits against [Veolia] that do not involve the Flint water crisis" that are relevant and admissible, Veolia has not met the "high" *in limine* standard showing that such evidence "is clearly inadmissible on all potential grounds." *United States v.*

10

*Andrews*, No. 1:22-cr-20114-2, 2024 U.S. Dist. LEXIS 9351, at *9 (E.D. Mich. Jan. 18, 2024) (citation omitted*); see also Amos v. NVR, Inc*., No. 1:19-cv-719, 2023 U.S. Dist. LEXIS 87797, at *2 (S.D. Ohio May 18, 2023) ("It is the moving party's burden to show that the evidence it seeks to exclude is clearly inadmissible.").

## CONCLUSION

In light of the foregoing, the Court should deny Veolia's motion to exclude in its entirety.

Dated:       August 19, 2024                                  Respectfully submitted,

**LEVY KONIGSBERG LLP**                                **NAPOLI SHKOLNIK PLLC**

/s/Corey M. Stern                                              /s/ Hunter J. Shkolnik
Corey M. Stern                                                  Hunter J. Shkolnik
Melanie Daly                                                     Patrick Lanciotti
605 Third Ave., 33rd Floor                                 360 Lexington Ave., 11th Floor
New York, New York 10158                              New York, New York 10017

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

                                                     **LEVY KONIGSBERG, LLP**

                                                     /s/ Melanie Daly
                                                     MELANIE DALY