# EXHIBIT 1

Redacted Version of Document to be Sealed

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

*In re* Flint Water Cases  
5:16-cv-10444/17-cv-10164

Hon. Judith E. Levy  
United States District Judge

_____/

This Motion Relates to:

*Bellwether III Cases*

_____/

**BELLWETHER III PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE FOR AN ORDER ADOPTING CERTAIN PREVIOUS IN LIMINE RULINGS FROM BELLWETHER I AND THE ISSUES CLASS TRIAL**

**INTRODUCTION**

Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC (collectively "Veolia") replied to Plaintiffs' motion *in limine* seeking an order adopting certain Bellwether I and Issues Class rulings. ECF No.[1] 3091, (hereinafter "Opp.").[2] However, its reply fails to raise any meritorious arguments, and thus, the Court should grant Plaintiffs' motion.

**ARGUMENT**

**I. OTHER WATER DRINKERS**

Evidence that Veolia employees or government employees drank the water in Flint should be excluded. Veolia reargues that if Plaintiffs suggest that Veolia knew the water was dangerous during its engagement, then Veolia must be permitted to introduce all evidence in rebuttal, including evidence that one or more of its employees drank unfiltered Flint water. Opp. at PageID.106455–57. However, the Court has already rejected this exact argument (twice). *See* ECF No. 2822, (Issues Class Oral Hrg. Tr.) at PageID.93674–75.

Veolia, again, points to *In re Davol, Inc./C.R. Bard, Inc., Polypropylene Hernia Mesh Prods. Liab. Litig*. No. 18-md-2846, 2021 WL 5577409, at *3 (S.D.

---

[1] Unless otherwise noted, ECF citations refer to Case No. 16-cv-10444.
[2] Case No. 16-cv-10444, ECF No. 3091 (Veolia's Opposition to Plaintiffs' Motion *in limine* for an Order Re-Adopting Certain Previous Motion *in limine* Rulings from the Bellwether I Trial).

1

Ohio Nov. 30, 2021). But Veolia ignores this Court's previous ruling, which **explicitly distinguishe**d that case and found it unhelpful to the consumption of water at issue here. ECF No. 2822, (Issues Class Oral Hrg. Tr.) at PageID.93675–76.[3]

Veolia also argues that evidence of City employees drinking the water is relevant to demonstrate that Veolia had no reason to believe that Flint officials were providing incomplete or misleading information about lead. But this Court has already rejected this exact argument. BWI, ECF. 683 (BWI Or.) at PageID.44036–37.[4] And contrary to Veolia's argument, the fact that Veolia employees "as people" may have been "influenced" when they saw City employees drink unfiltered tap water has no bearing on the reasonableness of whether its official comments or actions, as a professional engineer, regarding water safety were reasonable.

Finally, even assuming Veolia is correct and this information is minimally relevant, Veolia does not provide any new arguments as to why the potential for delay, confusion, and timewasting would not outweigh the insignificant relevance

---

[3] Veolia suggests that the Court applied a "conclusive" standard rather than the correct probative standard when assessing the relevance of this evidence. But the Court obviously knows the correct standard for relevance, and review of the transcript confirms that the Court did in fact apply the correct standard in rejecting Veolia's identical relevance argument. ECF No. 2822, (Issues Class Oral Hrg. Tr.) at PageID.93676–77.

[4] Also, Veolia points to no testimony from any Veolia employee that support's the inference that Veolia employees believed the water was safe for an entire community of people including children just because they saw non-engineer City officials sip water.

of this evidence. Therefore, this evidence should be excluded from the Bellwether III trial. *See* BWI, ECF No. 683, (BWI Or.) at PageID.44036–37 (reasoning that introduction of this evidence "would inevitably create lengthy factual disputes" that have "no probative value").

## II. BONE SCAN ATTACKS

It appears Veolia agrees that the Court's Bellwether I rulings excluding certain categories of attacks[5] on the bone scans should apply in the Bellwether III trial. As to safety, however, Veolia explains that Dr. Shultz "does not attack the safety of the device" and should be permitted to testify regarding his opinions about FDA approval. Opp. at PageID.106458. Plaintiffs do not dispute that Dr. Schultz may testify that he believes the device should have been FDA-approved. However, consistent with the Court's prior rulings, Dr. Schultz should not be permitted to suggest that the device is not safe because it is not FDA approved.[6] This is because,

---

[5] In Bellwether I, the Court ruled that three kinds of attacks on the bone scans conducted by Dr. Specht were inadmissible: (1) attacks on the safety of the p-XRF device; (2) attacks that Dr. Specht's use of the p-XRF device in this litigation violated Michigan law; and (3) attacks on Dr. Specht's methods by non-experts. BWI, ECF No. 666, (BWI Or.) at PageID.43725–28.

[6] There are multiple sections of his report that suggest he intends to opine on safety either directly or indirectly. *See, e.g.*, ECF No. 3091-3 (Schultz Report) at PageID.106482 ("[The PXRF device] lacks required FDA oversight and independent **review of safety** and effectiveness") (emphasis added); *id.*, at PageID.106515 ("Despite the clear instruction and warning in the labeling for the machine, Dr. Specht still thought it was acceptable to re-set the x-ray tube settings and override the safety settings and use the machine on humans without any oversight from an IRB or FDA."); *id.*, at PageID.106521 ("Without FDA regulatory

3

as this Court explained, any implication that Dr. Specht did not take appropriate safety measures (or otherwise failed to conduct his tests in a reasonable and safe manner) is "highly misleading." BWI, ECF No. 666 (BWI Or.) at PageID.43727.

### III. ADDITIONAL EXPOSURES

Plaintiffs do not dispute the admissibility of Veolia's experts' criticisms of Plaintiffs' experts' differential diagnosis regarding additional lead exposures. However, to the extent that Veolia's experts opine that the Plaintiffs' lead exposure is from another source besides contaminated water from the Flint River, that testimony should be excluded for the reasons set forth in Plaintiffs' opening motion. Veolia does not appear to dispute that as it explains that Veolia's "new expert reports do not argue that Plaintiffs' injuries were caused by some other source." Opp. at PageID.106460. Therefore, it appears that the parties agree that—consistent with the Court's prior rulings—none of Veolia's experts may opine Plaintiffs' lead exposures were, in fact, caused by sources other than the contaminated water from the Flint River.[7]

---

oversight, the public cannot be assured of the safety or effectiveness of the modified XRF device.").

[7] Even if it is true that none of Veolia's experts argue this in their reports, a clear ruling on this issue ruling is still necessary because these experts' opinions regarding differential diagnosis could suggest that there was another source which should have been considered the cause in fact. *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) ("a motion in limine is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.").

4

### IV. OTHER FACTORS SUCH AS FAMILY OR SOCIAL FACTORS

First, Veolia's arguments as to why the Court should reconsider its prior ruling regarding inconsistent opinions are meritless. Veolia offers a circular logic that the Court should permit inconsistent opinions because experts should be permitted to speculate using hypotheticals.[8] But this is the antithesis of both the Court's rulings as well as Sixth Circuit law. *See* BWI, ECF No. 702, (BWI Or.) at PageID.45673; *see also Tamraz v. Lincoln Elec. Co.,* 620 F.3d. 665, 671 (6th Cir. 2010) (Experts may not base their opinions on speculation, nor may they engage in "scientific guesswork, even of the inspired sort").

Veolia points to Dr. McCaffery as an example of admissible evidence and attempts to downplay the contradictory nature of his opinion. Veolia asserts that he merely opines that the testing results do not support the diagnoses and separately opines that "the diagnoses given by Plaintiffs' experts have causes. . . that include family and social factors." Opp. at PageID.106463. But Dr. McCaffrey does far more than that. He speculates what the most likely cause for the child's injury would be if that child were, in fact, hurt (although he maintains the child is not). For example,

---

[8] Even the case cited by Veolia belies their argument as that case makes clear that although opinions may be based on assumptions or hypotheticals, those hypotheticals must still be based on "facts [that] are ultimately 'established' by other, independent evidence." *Magna Elecs. Inc. v. TRW Auto. Holdings Corp.*, No. 1:12-cv-654, 2016 U.S. Dist. LEXIS 156780, at *8-9 (W.D. Mich. Feb. 4, 2016) (citation omitted) (alteration in original).

5

██████, he states: ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████ ECF No. 3055-4, (Combined Expert Reports of Drs. McCaffrey, Putnam, Thompson, and Nelson) at ██████. This is impermissible under the Court's prior ruling. *See* BWI, ECF No. 702, (BWI Or.) at PageID.45670–72.

Second, Veolia's argument that its experts' opinions are well supported is factually incorrect. Veolia's experts provide minimal justification as to how social factors impact the Bellwether III Plaintiffs. The studies cited by Veolia's experts are introduced to justify criticisms of the Plaintiffs' experts' assessments, not to explain that social factors have a larger impact on cognitive functioning than lead exposure. *See, e.g.,* ECF No. 3055-4, (Combined Expert Reports of Drs. McCaffrey, Putnam, Thompson, and Nelson) at pdf pages 227, 237, 355.

Only one study (Koller, Brown, Spurgeon, and Levy (2004)), is cited by Dr. Putnam, Dr. Nelson, or Dr. Thompson to justify their opinions that social factors are more impactful than lead exposure regarding cognitive ability. *See id.,* at pdf pages 143, 180, 227, 237, 350, 355, 362, 368, 374, 380. The cited passage is a reference to Weiss (2000). That article discusses all sources of neurotoxicity (**not limited to lead exposure**) and is an extrapolation of the Rochester Longitudinal Study, which evaluated developmental outcomes based ***only*** on social factors (**no lead exposure**

**considered**). *See* Ex. 1, (Weiss 2000) at 379. As a result, this single study is insufficient to support Veolia's contention that these opinions are admissible and reliable.[9]

Finally, Plaintiffs agree that consistent with the Court's Bellwether I rulings Veolia's experts are permitted to criticize Plaintiffs' experts alleged failure to rule out certain social factors. However, that does not mean that Veolia's experts should be permitted to do what Veolia asks: "to describe what a Plaintiff has experienced and how such experiences may contribute to the types of injuries diagnosed by Plaintiffs' experts." Opp. at PageID.106466. This kind of opinion is simply a dressed-up version of the opinions the Court already excluded. It is nonsensical for an expert to opine that the child is not hurt, but if they were hurt, these are the types of things that the child went through that *probably* contributed to these non-existent injuries. Indeed, as the Court previously ruled, Veolia's experts are allowed to criticize the techniques used by Plaintiffs' experts. However, as this Court explained, criticizing Plaintiffs' experts' methods does not "require digressions into" other factors like "single motherhood or the probation violations of absent fathers." *Id*. at PageID.45672.

---

[9] As the Court explained previously, citation to a single study "suggesting in general terms that negative events in one's family impact physical and emotional health does not show that such events cause these diagnoses." BWI, ECF No. 702, (BWI Or.) at PageID.45674–75.

7

Therefore, consistent with the Court's prior ruling in Bellwether I, the Court should exclude conflicting opinions in the alternative, and unsupported opinions regarding causation.

## CONCLUSION

Therefore, the Court should abide by and reinstate its prior motion *in limine* rulings.

| | |
|---|---|
| Dated: August 23, 2024 | Respectfully submitted, |
| **LEVY KONIGSBERG LLP** | **NAPOLI SHKOLNIK PLLC** |
| /s/Corey M. Stern<br>Corey M. Stern<br>Melanie Daly<br>605 Third Ave., 33rd Floor<br>New York, New York 10158 | /s/ Hunter J. Shkolnik<br>Hunter J. Shkolnik<br>Patrick Lanciotti<br>360 Lexington Ave., 11th Floor<br>New York, New York 10017 |

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024 I electronically filed this document with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ Corey M. Stern
COREY M. STERN