UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*
_____/     *The Hon. Judith E. Levy*

*Bellwether III Case No. 17-10164*
_____/

## INDIVIDUAL PLAINTIFFS' MOTION FOR APPROVAL OF ALLOCATION PROCEDURE AND ATTORNEY COSTS REGARDING PLAINTIFFS' SETTLEMENT WITH VEOLIA

For the reasons stated in the attached memorandum of support, and supporting declarations and exhibits, the Individual Plaintiffs represented by Levy Konigsberg, LLP and/or Napoli Shkolnik PLLC ("Plaintiffs" or Claimants") move this Court for approval of two aspects of the Veolia Settlement: (1) the procedure for allocation of the settlement amount to Claimants; and (2) Plaintiffs' Counsel's request for reimbursement of expenses and award of an attorney fee. Pursuant to Local Rule 7.1, Veolia does not oppose this motion.

Dated:        February 25, 2025                    Respectfully submitted,

**LEVY KONIGSBERG LLP**                            **NAPOLI SHKOLNIK PLLC**

/s/ Moshe Maimon                                    /s/ Hunter J. Shkolnik
Moshe Maimon                                        Hunter J. Shkolnik
605 Third Ave., 33rd Floor                          360 Lexington Ave., 11th Floor
New York, New York 10158                            New York, New York 10017
(212) 605-6260                                      (212) 397-1000
mmaimon@levylaw.com                                 hunter@nsprlaw.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

*In re Flint Water Cases 16-10444*
_____/     The Hon. Judith E. Levy


*Bellwether III Case No. 17-10164*
_____/

**INDIVIDUAL PLAINTIFFS' MOTION FOR APPROVAL OF ALLOCATION PROCEDURE AND ATTORNEY COSTS REGARDING PLAINTIFFS' SETTLEMENT WITH VEOLIA**

**INTRODUCTION**

Individual Plaintiffs, represented by Levy Konigsberg, LLP and/or Napoli Shkolnik PLLC (referred herein as "Plaintiffs" "Levy/Napoli Plaintiffs" or "Claimants" or "Levy/Napoli Claimants"), have reached a settlement with Veolia[1] regarding their involvement in the Flint Water Crisis (the "Veolia Settlement"). Because this settlement involves plaintiffs who are either minors or LIIs,[2] the parties seek an independent determination that the Veolia Settlement is in the best interest of said plaintiffs, and that the proposed attorney costs are reasonable. To that end, Plaintiffs bring this motion seeking approval of: (1) the procedure for allocation of the settlement amount to Claimants; and (2) Plaintiffs' Counsel's request for reimbursement of expenses and an attorney fee. The motion should be granted because the allocation procedure used to determine the amount each Plaintiff will be entitled to recover from the Veolia Settlement is consistent with what the Court has already determined suits the best interests of minors and LIIs, and because Plaintiffs' Counsel's proposed expenses and fee award constitute fair and reasonable compensation. Accordingly, Plaintiffs respectfully request that the Court approve the Veolia Settlement and grant Plaintiffs' motion for attorney costs.

---

[1] Veolia North America, LLC, Veolia North America, Inc., Veolia Water North America Operating Services; LLC, and Veolia Environnement S.A (referred collectively herein as "Veolia").

[2] "LII" refers to legally incompetent or incapacitated individual as described in Mich. Comp. Laws § 700.1105(a).

1

## **LEGAL STANDARD**

Generally, a settlement between a plaintiff and a defendant does not require court approval. However, because this settlement includes minors and LIIs, it is appropriate for the Court to make an "independent determination that the settlement [is] in [their] best interest." *Green v. Nevers*, 111 F.3d 1295, 1131 (6th Cir. 1997); *see also* Michigan Court Rule 2.420(B).[3] This means that the Court reviews the procedures related to minors and LIIs to determine whether they are fair and in their best interest. *In re Flint Water Cases*, 499 F. Supp. 3d 399, 410 (E.D. Mich. 2021) (Ord. Granting Preliminary Approval of Amended Master Settlement Agreement (hereafter "ASA")). Additionally, "when a court is called on to approve a settlement involving a minor, it must consider and then determine what constitutes fair and reasonable compensation to the attorney regardless of any agreement specifying an amount, whether contingent or otherwise." *Green*, 111 F.3d at 1302 (cleaned up).

---

[3] Michigan Court Rule 2.420(B) similarly provides that "the judge shall pass on the fairness" settlement agreements involving minors and LIIs. It additionally sets forth some specific requirements, including an opportunity for the Court to observe the nature of the injury by having the minor appear in Court. *Id.* Here, the "Federal rules govern any approval of [the] settlement, not the Michigan Rules of Court." *J.N. v. Allen*, No. 15-10406, 2016 U.S. Dist. LEXIS 138210, at *1 (E.D. Mich. Oct. 5, 2016) (citation omitted); *see also Kiel v. Barton*, No. 09-cv-15053, 2011 U.S. Dist. LEXIS 170311, at *1–2 (E.D. Mich. Jan. 31, 2011).

## BACKGROUND

### A. Relevant Procedural History

The extensive and protracted procedural history of the Flint Water Crisis litigation is complex and ongoing. As relevant here, in 2021, the Court approved a partial settlement with City and State defendants. This partial settlement agreement, known as the ASA, is a hybrid settlement agreement, settling claims for represented individual and class plaintiffs, as well as unrepresented individuals. The settling parties paid the total settled amount into a single Court monitored qualified settlement fund. *See In re Flint Water Cases,* 571 F. Supp. 3d 746, 821 (E.D. Mich. 2021) (Ord. Granting ASA Final Approval).

In 2022, Plaintiffs reached a settlement with engineering defendant Leo A. Daly Company, Lockwood Andrews and Newman, Inc. and Lockwood and Newnam, P.C. ("LAN"). The LAN settlement agreement (hereafter "LSA") resolved all of the pending claims against LAN for all represented and unrepresented Plaintiffs; adopted the administrative compensation system established by the ASA; and contributed an additional sum to the same qualified settlement fund established by the ASA. *See In re Flint Water Cases.,* No. 5:16-cv-10444-JEL-EAS, 2023 U.S. Dist. LEXIS 205000, at*71–72 (E.D. Mich. Nov. 15, 2023) (Or. Granting Preliminary Approval of LSA).

3

In the meantime, Plaintiffs continued intensely litigating in preparation for the Bellwether II and Bellwether III trials against Veolia.[4] In anticipation of an October 2024 Bellwether III trial date, and at the suggestion of the Court, the parties began settlement negotiations facilitated by a highly experienced mediator, Miles N. Ruthberg. After many months of arms-length negotiations, and less than a week before trial, Plaintiffs and Veolia executed a term sheet regarding a settlement. On February 20, 2025, the Parties executed and agreed to a long-form settlement agreement (the "Settlement Agreement").[5]

## B. Proposed Settlement Agreement

### i. Settlement Registration

The Veolia Settlement Agreement creates a comprehensive settlement program ("Veolia Settlement Program") that resolves claims of all the Levy/Napoli Plaintiffs against Veolia. The Veolia Settlement Program will apply the administrative claims procedure established by the ASA (and adopted by the LSA),

---

[4] In February 2024, Class Plaintiffs negotiated a settlement with VNA. *See, e.g.,* 5:16-cv-10444-JEL-EAS, ECF No. 3009 (Ord. Granting Preliminary Approval of the Class VNA Settlement). That settlement (referred to in pleadings as the VNA Settlement) is a separate and distinct settlement, unrelated to the Veolia Settlement at issue in this motion.

[5] **The Settlement Agreement is filed on the docket as Exhibit A to Veolia's Motion for Approval of the Individual Claimants Settlement Agreement. 5:16-cv-10444-JEL-EAS ECF No. 3205, at PageID.108211–108228.**

4

which defines the types of claims that are eligible for payment and the documentation required to support those claims. Settlement Agreement, Art. 3.

Claimants that were registrants in the ASA Settlement Program and/or the LAN Settlement Program shall be deemed registrants for purposes of the Veolia Settlement and the documentation submitted by such persons and any prior eligibility or classification determinations made thereunder shall be applicable to the Veolia Settlement. Importantly, Claimants who registered and made claims under the ASA or LSA are not required to supplement their claims to be considered for compensation under the Veolia Settlement Program. *Id.*[6]

ii. Settlement Allocation

The aggregate settlement amount of $53 million ("Veolia Settlement Amount") will be paid into a new qualified settlement fund, separate from that created by the ASA. Settlement Agreement, Art. 1.15, 1.23, 2.1, 4.1. An individual Claimant's share of the Veolia Settlement Amount will be allocated by applying the comprehensive Court approved claims procedure that is currently being employed by the ASA (and has been adopted by the LAN Settlement). Specifically, an individual Claimant's share of the net Veolia Settlement Amount ($53 million less

---

[6] Claimants will be notified about the settlement by Claimants' Counsel who will send Notice to all Claimants (the "Settlement Notice"). The notice will include information regarding Claimants option to reject the settlement, which will be effectuated by sending a rejection notice withing thirty (30) days of receiving the Settlement Notice. Settlement Agreement, Art. 3.4, Art. 6.

5

expenses and attorneys' fees approved by the Court) will be that Claimant's recovery from the Flint Fund[7] divided by the sum of the recoveries for all other Claimants therefrom. Settlement Agreement, Art. 4.3.

### iii. Expenses and Attorney Fee

The Settlement Agreement provides that Plaintiffs' Counsel shall be reimbursed and paid solely out of the above-mentioned qualified settlement fund for "all expenses and fees, including but not limited to: attorneys' fees; past, current, or future litigation and administration expenses (including, but not limited to, experts', consultants', and guardians ad litem fees and expenses); and the costs of providing the Settlement Notice." Settlement Agreement, Art. 10.1. It further provides that, "pursuant to their retention agreements, [Plaintiffs'] Counsel will seek a fee on the Veolia Settlement Amount, together with reimbursement of expenses, the costs of providing Settlement Notice, and the costs of administering the Veolia Settlement." *Id.*

## C. Court Approval & Schedule

The Settlement Agreement sets forth a two-step procedure for Court approval.[8] Step 1: Veolia and Plaintiffs file motions for approval ("Approval

---

[7] In this context, the "Flint Fund" refers to the monies resulting from the ASA and LAN settlements.

[8] Unlike some of the previous settlements in this litigation, which included a hybrid structure that incorporated class claimants, the Court is not required to follow

6

Motions"). Veolia's motion requests a finding that the Settlement Agreement and Veolia Settlement Program is fair, reasonable and serves the best interests of the Minor and LII Claimants.[9] And Plaintiffs' motion requests an order finding that: (1) the proposed allocation procedure used to determine the amount each Plaintiff will be entitled to recover from the Veolia Settlement is in the best interest of the minor and LII claimants; and (2) that Plaintiffs' Counsel's proposed expenses and fee award constitute fair and reasonable compensation. Settlement Agreement, Art. 5. Step 2: After the Court rules on these motions, Veolia files an additional motion, seeking entry of a final order and judgment dismissing the lawsuits filed against it ("Dismissal Motion"). Settlement Agreement, Art. 7.

As to timing, the Settlement Agreement provides the following schedule:

| Section | Event Description | Date |
|---------|-------------------|------|
|  | Parties Sign Agreement (Execution Date) | February 20, 2025 (Thursday) |
| 5.1 | Veolia file Settlement Approval Motion **by** | February 27, 2025 (Thursday) **Filed February 21, 2025** |
| 5.3 | Plaintiffs file Fee Approval Motion **by** | February 20, 2025 (Thursday) **Filed February 24, 2025** |
| 6.1 | Plaintiffs send out Settlement Notice (giving clients 30 days to send a Rejection Notice) **by** | February 27, 2025 (Thursday) |

---

the preliminary approval, notice, hearing, and final approval procedure outlined by Federal Rule of Civil Procedure 23(e).

[9] Veolia filed this motion on Friday February 21, 2025. 5:16-cv-10444-JEL-EAS ECF No. 3205, at PageID.108206–108210.

7

| Section | Event Description | Date |
|---|---|---|
| 6.2 | Participation Deadline | March 29, 2025 (Saturday) |
| 6.3 | Plaintiffs let Veolia know the list of those who reject **by** | April 5, 2025 (Saturday) |
| 6.5 | Parties decide if walk-away rights triggered | April 7, 2025 (Monday) |
| 6.5 | Veolia Recession Deadline | April 14, 2025 (Monday) |
| 6.6 | Veolia send formal notice to the Court if enacting termination rights (only applies if enacting termination rights) | April 16, 2025 (Wednesday) |
| 7.1 | Veolia files motion seeking Final Order and Judgment, dismissing cases **by** | April 21, 2025 (Monday) |
| Court Enters Order Dismissing Case – upon entry of this order settlement becomes final | Court Enters Order Dismissing Case – upon entry of this order settlement becomes final | TBD |
| 9.1 | Within Seven Days of settlement becoming final, Plaintiffs file motions to dismiss Veolia in related lawsuits | TBD |
| 2.1 | Within 30 days of the settlement becoming final, Veolia will deposit money into the QSF | TBD |

## ANALYSIS

### I. THE PROPOSED ALLOCATION PROCEDURE IS IN THE BEST INTEREST OF CLAIMANTS

The proposed allocation procedure of the Veolia Settlement Agreement adopts the claims procedure set forth by the ASA and applies it to calculate the Claimants' share of the Veolia Settlement Amount. In other words, after the claims procedure enacted under the ASA determines all of the Levy/Napoli Claimants' recoveries from the Flint Fund, each Levy/Napoli Claimant's recovery amount will be divided by the total amount that all of the Levy/Napoli Claimants are determined to receive from the Flint Fund. This will give each Levy/Napoli Claimant a

8

percentage that can be applied to the net Veolia Settlement Amount to determine their recovery amount from the Veolia Settlement.

The application of the proposed process is in the best interest of all of the Claimants, including those who are either minors or LIIs. The underlying claims procedure for minors and LIIs has already been approved by this Court.[10] In fact, the Court explicitly ruled that the methods for categorizing minors and LIIs' claims; the claims procedure for notifying them about releases of claims; the procedure for reconsideration and appeals; as well as the options for distributing monetary awards to minors and LIIs are all "fair and in the best interests of [m]inors and LIIs." *In re Flint Water Cases*, Cases, 499 F. Supp. 3d at 412–418 (Ord. Granting Preliminary Approval of ASA).

The proposed calculation which applies the Levy/Napoli Claimants' recovery from the Flint Fund to determine the amount they receive from the Veolia Settlement Amount is fair and in the best interests of the minors and LIIs because: 1) it ensures that the Levy/Napoli Claimants receive a share of the Veolia Settlement Amount that is determined based on and in relation to the *other Levy/Napoli Claimants*;[11] and 2) it

---

[10] The Court has approved this same process three times: initially, in connection with the ASA; as adopted in connection with the LAN settlement; and finally, in connection with the Class Counsel's settlement with VNA. *See* 5:16-cv-10444-JEL-EAS ECF Nos. 2008; 2684, 2968, 3162.

[11] Rather than being determined based on and in relation to the values of claims of *all claimants,* including those who are not included in the Veolia Settlement.

9

promotes efficiency by employing the claims review process that is already underway. Overall, because the Veolia Settlement's allocation procedure does not depart from the previously approved procedures applied to minors and LIIs, "the Court [may find that the proposed Settlement procedure] is fair and in the best interests of Minors and LIIs." *In re Flint Water Cases.*, 2023 U.S. Dist. LEXIS 205000, at *69–70 (Or. Granting Preliminary Approval of LSA).

## II. COUNSEL'S PROPOSED EXPENSES AND FEE AWARD CONSTITUTE FAIR AND REASONABLE COMPENSATION

The Veolia Settlement Agreement proposes that Plaintiffs' Counsel be permitted to redeem costs and an attorney fee consistent with the terms of the contracts of representation executed by Claimants. Pursuant to the contracts of representation, Plaintiffs' Counsel shall be reimbursed for costs incurred in the litigation and resolution of Plaintiffs' claims and assigned thirty-three and one-third percent (33.3333%) of the settlement amount. *See* Exhibit 1, (Declaration from Corey Stern) at ¶7; Exhibit 2, (Declaration from Hunter Shkolnik) at ¶5.

### A. Expenses

It is fair and reasonable to honor the contracts of representation and reimburse Plaintiffs' Counsel for expenses incurred in litigating and resolving Plaintiffs' claims.[12] The categories of expenses for which the Settlement Agreement permits

---

[12] The total amount of unreimbursed expenses incurred by Levy Konigsberg and Napoli Shkolnik directly (i.e. not through the Class Litigation Fund) in

10

reimbursement for are the type of expenses routinely charged to hourly clients and were necessary to the efficient prosecution of the case. They also represent the same categories of expenses that were previously approved by this Court under both the ASA and the LSA. *Compare* Settlement Agreement, at Art. 10.1, *with* ASA § 11.1; LSA § 11.1.

Plaintiffs' Counsel's expenses were both reasonably incurred and necessary in the prosecution and preparation for the two trials against the Veolia Defendant. Since the first bellwether I trial (Bellwether I), counsel prepared for a Bellwether III trial involving ten (10) minor plaintiffs as well as a Bellwether II trial involving fourteen (14) adult plaintiffs. Preparation for both trials involved significant expert costs. Counsel retained highly qualified experts in a variety of fields—including civil and environmental engineering, chemical engineering, neuropsychology, human health, economics, pXRF technology, statistics, and pediatric causation—to analyze the circumstances giving rise to the Flint Water Crisis, the responsibilities of the engineering defendants, and the injuries of the Plaintiffs. The experts' work required many hours of labor, which included the evaluation of each bellwether plaintiff, research in the medical and engineering fields, drafting of multiple reports and reply reports for each plaintiff, reviewing and responding to numerous voluminous

---

connection with the litigation is outlined in the attached declarations. Exhibit 1, (Declaration from Corey Stern) at ¶9; Exhibit 2, (Declaration from Hunter Shkolnik) at ¶7.

11

defense expert reports, and preparation for trial. In addition to these expert costs, Plaintiffs' Counsel also incurred other costs typical in litigating a case to trial, including travel costs related to the litigation, discovery costs, mediation costs, and trial support costs. All of the aforementioned costs were necessary and essential to the successful prosecution of this litigation and instrumental in procuring the Veolia Settlement. Therefore, it would be fair and reasonable to reimburse the Plaintiffs' Counsel for such costs.

### B. Attorney Fee

It is fair and reasonable to honor the contracts of representation and assign Plaintiffs' Counsel with one-third of the net proceeds (post payment of litigation expenses) from the Settlement Agreement. This amount is consistent with Michigan law, *see* Mich. Ct. R. 8.121, as well as attorney fees previously awarded in this litigation. *See* 5:17-cv-10164-JEL-KGA, ECF No. 1036 (Ord. granting thirty-three and one third percent fee in connection with the LSA).

Additionally, because the one-third fee is squarely consistent with what was set forth in the contracts of representation, it can be deemed fair and reasonable. Indeed, the Eastern District of Michigan has observed that an attorney fee "which derives directly from the parties' contract itself respects both the parties' freedom of contract and the client's ability to change counsel." *Lakin v. Bloomin' Brands, Inc.*, No. 17-cv-13088, 2019 U.S. Dist. LEXIS 180235, at *17 (E.D. Mich. Oct. 18, 2019)

(internal quotation marks omitted); *id.* ("MCR 8.121 provides that if an attorney enters into a contingency **fee** agreement, the receipt, retention, or sharing of the compensation which is equal to or less than **one-third** the net amount recovered is deemed **fair and reasonable**." (emphasis added)); *see also Flores v. Toadvine*, No. 07-11288, 2009 U.S. Dist. LEXIS 101231, at *9 (E.D. Mich. Oct. 30, 2009) ("The Court assesses several factors identified under state law, including the terms of a contingent fee.").

Aside from the terms of the representation contract, the Court may also consider other factors, such as "the character of the litigation and of the issues involved" as well as "the amount involved, the labor or services performed, the care and diligence exhibited, and the results achieved." *Dean v. Holiday Inns, Inc.*, 860 F.2d 670, 673–74 (6th Cir. 1988) (citation omitted). Here, a consideration of these factors supports a finding that the requested fee is reasonable.

As to the character of the litigation and issues, the Flint litigation involved many complex and novel legal and scientific concepts. It also required voluminous discovery, a significant amount of lengthy and complex depositions, and complicated motion practice. *See In re Flint Water Cases.*, 2023 U.S. Dist. LEXIS 205000, at *39 ("As the Court has previously said, 'the Flint Water Cases are abundant, complex, and have been intensely litigated.'") (citation omitted). The labor performed and the care and diligence exhibited has been equally rigorous. The

13

teams of lawyers and other legal staff employed by both Levy Konigsberg and Napoli Skolnick have dedicated close to a decade of time delving into the complex legal and scientific issues presented in prosecuting these cases. Indeed, these legal teams have intensely and persistently advocated for their clients every step of the way. *Cf. In re Flint Water Cases,* 583 F. Supp. 3d 911, 936 (E.D. Mich. 2022) (noting that, in the context of the ASA, Plaintiffs' counsel achieved an "extraordinary settlement" that had been "intensely litigated for nearly six years" and which required "hard and persistent work"). Finally, as to the results achieved, the Veolia Settlement is a favorable outcome. It provides additional compensation for victims of the Flint Water Crisis and resolves litigation which has proven to be rigorous and all-consuming for the victims of the crisis, the attorneys involved, as well as the Court.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that the Court approve the Veolia Settlement as fair and in the best interest of minor Claimants and LIIs, and grant Plaintiffs' request for attorney costs as outlined herein.

Dated:     February 25, 2025                          Respectfully submitted,

| **LEVY KONIGSBERG LLP** | **NAPOLI SHKOLNIK PLLC** |
|---|---|
| /s/ Moshe Maimon | /s/ Hunter J. Shkolnik |
| Moshe Maimon | Hunter J. Shkolnik |
| 605 Third Ave., 33rd Floor | 360 Lexington Ave., 11th Floor |
| New York, New York 10158 | New York, New York 10017 |
| (212) 605-6260 | (212) 397-1000 |
| mmaimon@levylaw.com | hunter@nsprlaw.com |

*ATTORNEYS FOR PLAINTIFFS*

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2025, I electronically filed this document and accompanying exhibits with the Clerk of the Court using the ECF System, which will send notification to the ECF counsel of record.

**LEVY KONIGSBERG, LLP**

/s/ Melanie Daly
MELANIE DALY