# EXHIBIT C

## THE SECOND AMENDED FWC QUALIFIED SETTLEMENT FUND

# THE SECOND AMENDED QUALIFIED SETTLEMENT FUND AGREEMENT

## ARTICLE I

NAME AND PURPOSE OF THE FUND

    1-1  Name. This Amended Qualified Settlement Fund shall be known as the FWC Qualified Settlement Fund (hereinafter "Fund") and is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulation 1.468B-1. The Fund also constitutes a trust under Michigan state law.

    1-2  Purpose. The purpose of the Fund is to accept, hold and distribute funds to be paid by or on behalf of defendants' settlement of the claims and allegations made or that could be made in any federal or state court, both trial and appellate, or in any notices of intention to file a claim under the Michigan Court of Claims Act, MCL 600.6431, or the Federal Tort Claims Act, 28 U.S.C. 2671, et seq., that have been filed or submitted, asserting personal injury, property damage, unjust enrichment, or economic loss as a result of exposure to water received from the Flint Water Treatment Plant at any time between April 25, 2014 and the November 16, 2020 including: State of Michigan; Michigan Department of Environmental Quality (now the Michigan Department of Environment, Great Lakes, and Energy); Michigan Department of Health and Human Services; Michigan Department of Treasury; former Governor Richard D. Snyder; Governor Gretchen Whitmer; The City of Flint; the Flint Receivership Transition Advisory Board; Darnell Earley; Howard Croft; Michael Glasgow; Gerald Ambrose; Edward Kurtz; Dayne Walling; Daugherty Johnson; Liane Shekter-Smith; Daniel Wyant; Stephen Busch; Kevin Clinton; Patrick Cook; Linda Dykema; Michael Prysby; Bradley Wurfel; Eden Wells; Nick Lyon; Dennis Muchmore; Nancy Peeler; Robert Scott; Adam Rosenthal; Andy Dillon; Rowe Professional Services Company; McLaren Regional Medical Center; McLaren Flint Hospital (hereinafter "Defendants") in consideration of the settlement of claims under the terms of the Settlement Agreement entered on November 16, 2020, as corrected by an errata sheet dated January 14, 2021, (the "Amended Settlement Agreement") between Theodore J. Leopold of Cohen Milstein Sellers & Toll PLLC and Michael L. Pitt of Pitt McGehee Palmer & Rivers, P.C. ("Co-Lead Class Counsel") and Corey M. Stern of Levy Konisberg, LLP and Hunter Shkolnik of Napoli Shkolnik, PLLC ("Co-Liaison Counsel") (collectively, "Plaintiffs' Counsel"), and Defendants. In addition, the Fund shall accept and hold for distribution funds paid by defendants in the following settlements: the LAN Settlement,[1] the VNA Amended Class Settlement[2], and the Veolia Individual Claimants Settlement.[3] For purposes of this QSF Agreement, the term "Defendants" shall mean all defendants

---

[1] "LAN Settlement" refers to the Settlement Agreement with Defendants Leo A. Daly Company, Lockwood Andrews and Newnam, Inc. and Lockwood and Newnam, P.C. (collectively "LAN"). *See* Order Granting Plaintiff's Mot. for Final Approval of Class Settlement with LAN Defendants, ECF No. 2968 PageID.99479.

[2] "VNA Amended Class Settlement" refers to the Settlement Agreement with Defendants Veolia North America, LLC, Veolia North America, Inc. Veolia North America, LLC, Veolia North America, Inc., and Veolia Water North America Operating Services, LLC. *See* Order Granting Class Plaintiff's Mot. for Final Approval of Class Settlement with VNA Defendants (ECF No. 3162, PageID.107946).

[3] "Veolia Individual Claimants Settlement" refers to the Settlement Agreement with Defendants Veolia North America,

listed above and all defendants released as part of the LAN Settlement, the VNA Amended Class Settlement, and the Veolia Individual Claimants Settlement. The legal entity known as a Qualified Settlement Fund is authorized under Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended ("IRC") and Income Tax Regulations ("Regulations") §§ 1.468B-1, et seq. This Fund exists to resolve or satisfy the claims, actions, and lawsuits arising out of an alleged tort, or violation of law, as provided for in Regulations § 1.468B-1.

       1-3   <u>Duties</u>. The duties of the administrator for the Fund ("QSF Administrator") shall be as defined in the Amended Settlement Agreement and this Second Amended Qualified Settlement Fund Agreement ("Agreement"). Any capitalized terms not defined herein shall have the meanings assigned to them in the Amended Settlement Agreement ("ASA").

       1-4   <u>Government Authority</u>. This Fund and its Administrator remain under the continuing jurisdiction of the United States District Court, Eastern District of Michigan, Southern Division ("Court") and this Fund shall be administered and operated pursuant to this Agreement, the ASA, and the QSF Motion.

## ARTICLE II

## PAYMENTS TO THE FUND

       2-1   <u>Court Approval</u>. The Court approved the establishment of the Fund pursuant to IRC section 468B and the terms of this Agreement.

       2-2   <u>Payment</u>. In accordance with the applicable settlement agreement, Defendants will make or cause to be made payments of the settlement consideration to the Fund as they become due. Those payments will be held by the Fund until disbursed in accordance with the terms of the ASA and the other applicable Settlement Agreements and this Agreement, and to federal and state taxing authorities for tax liabilities of the Fund.

       2-3   <u>No Further Obligation</u>. Following the above contributions to the Fund, Defendants shall not have any further obligation to contribute to the Fund, as set forth in the applicable agreement.

       2-4   <u>Nature of Contributions</u>. All contributions to the Fund shall be made in immediately available funds. Contributions made to the Fund shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

## ARTICLE III

---

LLC, Veolia North America, Inc., Veolia Water North America Operating Services, LLC, and Veolia Environment S.A.'s. *See* Order Granting the Agreed Mot. for Approval of the Individual Claimants Settlement Agreement (ECF No. 3217, PageID.108324).

DISPOSITION OF THE FUND

       3-1   <u>Corpus of the Fund</u>. The corpus of the Fund shall include all sums transferred to the Fund, including the sub-accounts established under the Fund's federal employer identification number ("FEIN"), pursuant to the terms of the ASA or amendments thereto, and this Agreement. Separate accounts shall be established for each separate settlement – including the "Partial Settlement" (documented by the ASA), the LAN Settlement, the VNA Amended Class Settlement, and the Veolia Individual Claimants Settlement. The assets of such separate accounts shall not be co-mingled with other accounts and the assets of such separate accounts shall be used only to pay eligible distributions for fees, expenses, and claim payments with respect to the relevant separate settlement and as authorized by the Court.

       3-2   <u>Payments</u>. Distributions from the Fund shall be made solely in accordance with the terms of the ASA and/or Court Order.

       3-3   <u>No Authority to Conduct Business</u>. The purpose of the Fund is limited to the matters set forth in Article III hereof, and this Agreement shall not be construed to confer on the QSF Administrator any authority to carry on any business or activity for profit except as set forth in Section 4-2.

       3-4   <u>Termination of the Fund</u>.  The Fund may be terminated upon: (i) the date on which no assets remain in the Fund; (ii) recommendation and instruction of the Special Master; and (iii) a Court Order(s). Whenever the QSF Administrator or the Special Master determines that the Fund may be properly terminated pursuant to this Article, the QSF Administrator or Special Master will submit a petition for termination of the Fund to the Court. After reviewing the petition, the Court may terminate the Fund or may order the Fund to undertake such further actions as the Court deems necessary and appropriate. Upon Order of the Court, the QSF Administrator shall finalize distributions to Plaintiffs (as defined in each of the ASA, LAN Settlement, VNA Amended Class Settlement, and the Veolia Individual Claimants Settlement), Plaintiffs' Counsel, Lienholders, and any other persons or entities entitled to share in such distributions, including amounts reasonably necessary and approved by the Court to compensate the QSF Administrator and its professional agents for unpaid services and costs of administration, and any funds that may be reserved for the payment of taxes or outstanding charges or fees, upon termination of the Fund. The QSF Administrator is authorized, upon final distribution of all monies paid into the Fund, to take appropriate steps to wind down the Fund and thereafter the QSF Administrator is discharged from any further responsibility with respect to the Fund.

       3-5   <u>Amendments, Alterations, and Revocation</u>.  The Fund may be amended or altered from time to time or revoked by an instrument in writing executed the Special Master and the QSF Administrator and approved by Order of the Court.

       3-6   <u>Allocation Plan and Distributions</u>.  The Allocation Plan shall be designed and approved by a Special Master. The QSF Administrator shall distribute to Plaintiffs, Plaintiffs' Counsel, Lienholders, and any other persons or entities entitled to share in such distributions the amounts

due and owing to them from the Fund available for distribution pursuant to Court Order(s) in accordance with the terms of the ASA, the LAN Settlement, the VNA Amended Class Settlement, and the Veolia Individual Claimants Settlement. The QSF Administrator shall not make any distribution to or for the benefit of a minor or incompetent person, including payment of attorney fees and expenses, except in accordance with the terms of the Amended Settlement Agreement or as ordered by the Court.

     3-7    <u>Interests in the Fund</u>. No interest in this Fund may be assigned, exchanged, or transferred in any manner, unless ordered by the Court. In addition, such interests shall not be voluntarily or involuntarily subject to any type of encumbrance, to the maximum extent allowable by law. This shall include, but not be limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws. Any such interest, if any, shall be made available only upon termination of the Fund.

ARTICLE IV

ADMINISTRATOR MANAGEMENT

     4-1    <u>Successor Administrator/Trustee</u>. The initial administrator and trustee of this Fund was ARCHER Systems, LLC, 1775 St. James Place, Suite 200, Houston, Texas 77056 ("QSF Administrator"). A successor QSF Administrator and trustee is hereby being named, Epiq Class Action & Claims Solutions, Inc. d/b/a Epiq Class Action & Mass Tort Solutions ("<u>Epiq</u>"), 10300 SW Allen Blvd., Beaverton, Oregon 97005. Epiq is independent of Defendants and Plaintiffs' Counsel, and is Court appointed.

     4-2    <u>Investment</u>. Except as set forth below in Section 4-4, or in the Amended Settlement Agreement, and consistent with Paragraph 5-3, the QSF Administrator shall invest the principal of the Fund and keep the Fund invested in (i) any obligations of, or any obligation guaranteed as to principal and interest by, the United States of America or any agency or instrumentality thereof; or (ii) U.S. dollar denominated deposit accounts with domestic commercial or national banks that have a short term issuer rating on the date of purchase of "A-1" or better by S&P or "Prime-1" or better by Moody's and maturing in a time period matched to the projected time period of distributions from the Fund as estimated by the Claims Administrator after the date of purchase (provided that ratings on holding companies are not considered as the rating of the bank); or (iii) money market accounts or money market funds registered under the Federal Investment Company Act of 1940, whose shares are registered under the Securities Act, and rated "AAAm" or "AAAm- G" or better by S&P, and "Aaa," "Aa1" or "Aa2" if rated by Moody's, including any mutual fund for which the QSF Administrator or an affiliate of the QSF Administrator serves as investment manager, administrator, shareholder servicing agent, and/or custodian; or (iv) any obligations of, or guaranteed by, domestic or international corporations, provided that they are rated investment grade by either S&P and/or Moody's rating services, and that the rating restriction must be maintained upon purchase as well as for the investment holding period. The duration of such investments shall match the projected time periods of distributions from the Fund as estimated by the Claims Administrator. All interest on or income realized by investment of the sub-accounts of the Fund or

6

any portion hereof shall be accumulated and added to the appropriate sub account. While the Fund Administrator shall employ best efforts to avoid investment losses, any investment losses realized by investment of Fund or any portion thereof shall be charged to the Fund. To the extent the QSF Administrator invests any funds in the manner provided for in this Section 4-2 ("Eligible Investments"), no Party hereto (including the QSF Administrator) shall be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment) including, but not limited to, loss(es) that occur due to decreases in account value as a result of negative yields on direct or indirect investments in Eligible Investments. If such losses should occur and the Fund is unable to make full and complete distributions in accordance with the ASA, the LAN Settlement, the VNA Amended Class Settlement, or the Veolia Individual Claimants Settlement, Defendants will have no obligation to pay additional sums into the Fund. Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts.

      4-3   <u>Definition of Money Market Account</u>. For purposes of this Article, "money market account" shall mean a money fund whose objectives are (a) current income consistent with liquidity and low risk, (b) the maintenance of a portfolio of high quality, short-term money market instruments, and (c) maintenance of a constant $1.00 net asset value per share. All investments shall be made so as at all times to provide sufficient liquidity to meet the anticipated cash needs of the Fund. In investing, reinvesting, and exchanging, selling, and managing the Fund, the QSF Administrator shall discharge its duties with respect to the Fund solely in the interest of the accomplishment of the purposes and objectives of the Fund.

      4-4   <u>Collection of Funding Instrument.</u> QSF Administrator is authorized to deposit funding instrument(s) into an FDIC insured bank, approved by Plaintiffs' Counsel, even though the amount of the deposit exceeds the current FDIC insured deposit amount for that single Qualified Settlement Fund account for such time as it takes to collect on said funding instrument. Once the funding instrument is collected and made available by the depository bank, the QSF Administrator shall as soon as practical move the proceeds into one or more of the accounts described in 4-2 above. The parties have selected Huntington National Bank as the depository bank ("Bank").

      4-5   <u>Reporting to the Court</u>. The QSF Administrator shall report to the Special Master and Court in writing with respect to any matter arising from the administration of the Fund that the QSF Administrator deems advisable to bring to the attention of the Court or upon request of the Court. The QSF Administrator shall create and maintain records of the QSF Administrator's activities arising from this Agreement and any Orders of the Court. The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by any Court Order, and this Agreement. Copies of the records shall be provided to the Court upon its request, subject to any privileges or other protections. Any privileged or otherwise protected material shall be provided under seal to the Court. In furtherance of the QSF Administrator's reporting obligations, within a reasonable time, the QSF Administrator shall cause to be prepared after the end of each month an accounting containing unaudited financial statements of the Fund, including, without limitation, a balance sheet, a statement of receipts and disbursements, interest, and holdings. The QSF Administrator shall establish a Secure File Transfer Protocol (SFTP) or similar secure method by

which to submit monthly reports to the Special Master, Plaintiffs' Counsel, and Defendants' Counsel.

## ARTICLE V

### EXPRESS POWERS OF ADMINISTRATOR

Without in any way limiting the power and discretion conferred upon the QSF Administrator by the other provisions of this Agreement, the QSF Administrator is expressly authorized and empowered as hereinafter set forth:

5-1  <u>Payment of Administrative Expenses and Costs</u>. As approved by Court order the QSF Administrator shall pay charges, taxes and expenses imposed upon or incurred in connection with the administration of the accounts held in the Fund including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, claims administrators, and court appointed personnel which are incurred to maintain and administer the Fund. All such payments shall be made from Fund assets.

5-2  <u>Retention of Property</u>. The Fund shall hold the property in the manner delineated in the Amended Settlement Agreement and this Agreement.

5-3  <u>Preservation of Principal</u>. Notwithstanding any other provision in this Agreement, the QSF Administrator shall always hold, manage, and invest the assets of the Fund in a manner designed to preserve the principal of the Fund for the purposes set forth in this Agreement. The QSF Administrator shall not be liable for any loss(es) which may be incurred by reason of the Federal Reserve bringing its benchmark rate into negative territory.

5-4  <u>Retention of Investment Advisor and Other Consultants</u>. Subject to requisite disclosure(s) related to conflicts of interest, if any, the QSF Administrator has the power, upon consultation with the Special Master, to engage the services of investment advisors, accountants, custodians, managers, attorneys, or other consultants or agents, as is reasonably necessary to assist with the management of investments and the administration of the Fund. Payment for such services will be made from Fund assets and fees charged by any professionals engaged must be in agreement with average market rates for like-kind professional services rendered. The QSF Administrator shall also be authorized to change the depository bank only if approved by court order.

5-5  <u>Execution of Documents</u>. The QSF Administrator has express authority to make, execute, acknowledge, and deliver all documents of transfer and conveyance. Such agreements may also include settlement agreements and qualified assignment agreements to effect settlements governed by IRC §§ 104(a)(2) and 130, as may be necessary or appropriate to carry out the powers herein granted or other assignments as ordered by the Court.

5-6  <u>Litigation</u>. The QSF Administrator may initiate or defend, at the expense of the Fund only with the express approval of the Court documented in an order, any litigation relating to or

affecting the Fund, or the Administrator's obligations under the Fund, and to initiate or defend any litigation relating to the Fund, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the Fund. If a specific lien or garnishment is held against a single Settling Claimant, it shall be the responsibility of that Settling Claimant to handle the matter and his/her funds shall be held in the Fund until said matter is resolved.

5-7  <u>Compliance with Law</u>. The QSF Administrator is empowered to comply with all requirements imposed by applicable law, rule, or regulation in conformity with the ASA, the LAN Settlement, the VNA Amended Class Settlement, and the Veolia Individual Claimants Settlement.

5-8  <u>Discretion in Exercise of Power</u>. Subject to the Amended Settlement Agreement, the QSF Administrator may take any other acts it deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Agreement if approved by the Court.

5-9  <u>Modification of This Agreement</u>. The QSF Administrator shall be empowered to petition the Court after notice to the Settling Parties for modification of the Articles of this Agreement (including Attachments hereto) if the QSF Administrator determines that such modifications are necessary to conform to legal, tax, or administrative requirements. This Agreement amends, restates in its entirety, and supersedes the prior FWC Qualified Settlement Fund agreement signed by the parties in March 2021, and that was approved by order of the United States District Court for the Eastern District of Michigan (Judge Judith E. Levy) in case number 5:16-cv-10444-JEL-EAS, on February 4, 2021, at ECF 1911, PageID.67177.

## ARTICLE VI

<u>ADVICE OF COUNSEL</u>

Subject to Article V, Section 5.4, the QSF Administrator may from time to time consult with counsel with respect to any question arising as to compliance with this Agreement. The QSF Administrator shall be fully protected, to the extent permitted by law in acting in reliance upon the advice of counsel.

## ARTICLE VII

<u>COMPENSATION FOR ADMINISTRATION</u>

For services performed as QSF Administrator, the initial QSF Administrator may be reimbursed for, in accordance with a fee schedule to be submitted to and approved by the Federal Court, expenses, including check and bank costs, mail and printing costs, and travel expenses, reasonably required and incurred by such QSF Administrator in the performance of its duties as QSF Administrator. Any successor QSF Administrator approved by Order of the Court shall receive payment for its services in accordance with its schedule of rates in effect at the time such compensation becomes payable. Such compensation may be paid only upon Court order authorizing such compensation. Payment for such services will be made from Fund assets. Any expenses incurred by the QSF Administrator that are not listed on the fee schedule shall be

submitted to the Special Master for review and approval.

## ARTICLE VIII

SUCCESSOR QSF ADMINISTRATOR

8-1 <u>Vacancy Caused by Resignation or Removal</u>. The QSF Administrator may resign for cause or no cause at any time upon written notice delivered to Plaintiffs' Counsel and the Court having jurisdiction over the Fund. Such resignation shall become effective upon the written acceptance of the appointment of a successor QSF Administrator. The Court shall have the power to appoint a successor QSF Administrator. If a successor QSF Administrator is not appointed within sixty (60) days, the QSF Administrator shall have the power to appoint a corporate QSF Administrator qualified under local Court rules to perform Fund services as successor QSF Administrator or it shall have the power to petition the Court to appoint its successor. All of the QSF Administrator's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor QSF Administrator shall be paid by the Fund. Death of a successor QSF Administrator, if an individual, automatically terminates the role, and the Court shall appoint a successor QSF Administrator. Any successor QSF Administrator shall have the same powers, authorities, and discretions as though originally named as the QSF Administrator.

8-2 <u>Acceptance of Appointment by Successor QSF Administrator</u>. Unless otherwise ordered by the Court, acceptance of appointment as a successor QSF Administrator shall be in writing and shall become effective upon receipt by the Court of notice of such acceptance. In such acceptance each successor QSF Administrator recognizes its rights, powers, duties, authority, and privileges are the same as if initially named as a QSF Administrator hereunder.

8-3 <u>Preservation of Record of Changes to QSF Administrator</u>. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the Court.

## ARTICLE IX

INDEMNIFICATION

Each QSF Administrator, whether initially named or appointed as a successor QSF Administrator, acts as a QSF Administrator and not personally. With respect to any contract, obligation, or liability made or incurred by the QSF Administrator in good faith, while the QSF Administrator is complying with the terms of this QSF Agreement, the prudent investor rule, or any valid Court order, all persons shall look solely to the Fund and not to the QSF Administrator personally. The QSF Administrator shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the QSF Administrator in the administration of the Fund or otherwise pursuant to this QSF Agreement unless the QSF Administrator commits fraud, acts negligently, or otherwise breaches a term of his appointment. The QSF Administrator initially named, and any successor QSF Administrator shall be indemnified and held harmless by the Fund, so long as the QSF Administrator complies with the terms of this QSF Agreement, the

prudent investor rule, and any valid Court Order. This indemnification and hold-harmless provision shall cover all expenses reasonably incurred by such QSF Administrator in defense of the aforementioned acts or omissions of the QSF Administrator.

## ARTICLE X

### CHOICE OF LAW

This Agreement has been created and accepted by the QSF Administrator and this Agreement's validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of Michigan.

## ARTICLE XI

### INTERPRETATION

As used in this Agreement, words in the singular include words in the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine, and neuter. The descriptive headings for each article of this Agreement shall not affect the interpretation or legal efficacy of this Agreement. It is agreed that neither the act of entering into this Agreement nor any contribution to the Fund nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Administrator or Defendants, nor does it constitute a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of this Agreement or the Amended Settlement Agreement.

## ARTICLE XII

### SEPARATE DOCUMENTS

This Agreement may be executed in two or more counterparts, by electronic signature or otherwise, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Each provision in this Agreement is valid, severable and enforceable to the fullest extent permitted by law.

## ARTICLE XIII

### TAX ISSUES

13-1 <u>Generally</u>. The parties intend that the Fund shall be a Qualified Settlement Fund under IRC § 468B and Regulations §§ 1.468B-1, *et seq*. The QSF Administrator shall take no actions that are inconsistent with the Fund's status as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5. Further, the QSF Administrator may

11

petition the Court to amend, either in whole or in part, any administrative Article of this Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing. Defendants shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. Section 1.468B-1(d)(1). The QSF Administrator shall be classified as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3), 26 C.F.R. Section 1.468B-2(k)(3).

It is further intended that all transfers to the Fund will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Internal Revenue Code, 26 U.S.C. Section 461(h)(1), and Regulation Section 1.461-1(a)(2), 26 C.F.R. Section 1.461-1(a)(2). As such, Defendants shall not be taxed on the income of the Fund. The Fund shall be taxed on its modified gross income, excluding the sums, or cash equivalents of things, transferred to it. In computing the Fund's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the Fund, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the Fund. All such computations of the Fund's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4), 26 C.F.R. Section 1.468B-2(b)(1)-(4). The QSF Administrator shall pay all taxes and associated expenses with those taxes from the Fund without the need of a Court Order.

13-2 <u>Tax Preparation, Reporting, and Withholding Requirements</u>. The QSF Administrator shall cause to be filed, on behalf of the Fund, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulation Section 1.468B-2(k), 26 C.F.R. Section 1.468B-2(k). Furthermore, in accordance with the provisions of Treasury Regulation Section 1.468B-2(l), 26 C.F.R. Section 1.468B-2(l), the QSF Administrator shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding requirements. The QSF Administrator may retain independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance withholding requirements. Defendants (or some other person on behalf of Defendants) shall supply to the QSF Administrator and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. Section 1.468B-3(e)(2), no later than February 15 of the year following each calendar year in which Defendants make a transfer to the Fund. The QSF Administrator shall, upon request, prepare and deliver to Defendants' and Plaintiffs' Counsel, within ten days of any such request, financial statements for the Fund, including receipts and disbursements and earnings.

13-3 <u>Savings Provision</u>. Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service Notices, Announcements and directives thereunder, such offending Article of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the Administrator. The overarching purpose of this Agreement is to create a Qualified Settlement fund that is at all times in compliance with Internal Revenue Code Section 468B and all

administrative authority and announcements thereunder. In the event that this Section 13-3 applies to render an offending Section null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

### ACCEPTANCE OF FUND AS TRUSTEE

Epiq Class Action & Claims Solutions, Inc. d/b/a Epiq Class Action & Mass Tort Solutions ("Epiq"), named as the Successor QSF Administrator of the FWC Qualified Settlement Fund and all sub-accounts established under the Fund's FEIN, accepts this appointment and the Fund's assets currently being held, to be further administered and distributed as provided in this Agreement.

WITNESS the execution hereof of the Successor QSF Administrator on this _____ day of _____, 2025.

By: _____
The Successor FWC Qualified Settlement Fund Administrator

### ACCEPTANCE AS DEPOSITORY BANK

Huntington National Bank, initially named as the Depository Bank of the FWC Qualified Settlement Fund, will continue to hold the assets of the Fund, and work with the Successor QSF Administrator to administer and distribute the Fund's assets, as provided in this Second Amended Qualified Settlement Agreement.

WITNESS the execution hereof of Depository Bank on this _____ day of _____, 2025.

By: _____
The FWC Qualified Settlement Fund Depository Bank

[APPROVED AS TO FORM ONLY]

Approved on behalf of Special Master:

_____
Deborah Greenspan
Blank Rome LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-3100
dgreenspan@blankrome.com