**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| *In re* **FLINT WATER CASES** | **Civil Action No. 5:16-cv-10444-JEL (consolidated)**<br><br>**Hon. Judith E. Levy** |

**NOTICE OF THE SPECIAL MASTER
REGARDING STATUS OF CLAIMS PROCESS
AND PREPARATION FOR DISTRIBUTION OF PAYMENTS
UNDER THE AMENDED SETTLEMENT AGREEMENT**

This Notice is an update on the status of the settlement process and preparation for payment of claims submitted under the partial settlement (the "Amended Settlement Agreement" or "ASA") in the Flint Water Cases. *See* ECF No. 1394-2.

I have previously provided updates on the status of the claims process under the ASA in filed reports (*see* Notice of the Special Master Regarding Status of Claims Process Under the Amended Settlement Agreement, ECF No. 2413 (the "2023 Status Update Report"); Notice of the Special Master Regarding Status of Claims Process Under the Amended Settlement Agreement, ECF No. 2924 (Apr. 16, 2024) (the "2024 Status Update Report") and Notices posted on January 8, 2025 and April 11, 2025 on the official website maintained by the claims administrator (*see* https://www.officialflintwatersettlement.com)).

## I.   Administration of the Qualified Settlement Fund, the Claims Process, and Payments

First, it is important to clarify that the process of evaluating and finalizing claims is ongoing and that there has been no change in that process.

A recently published article included the headline: "Fund manager resigns from Flint civil settlement as residents wait to get paid." There is a distinction between the administration of the Qualified Settlement Fund (QSF) and the administration of the claims process. The resignation letter referenced in the article applied only to the QSF administration, which involves maintenance of bank accounts and distribution of funds as approved by the Court. As previously reported, another entity has been selected and approved as the payment administrator and it is administratively more efficient to have the payment administrator also serve as the QSF administrator.

The *claims process* is operated by Wolf Garretson LLC/Pattern Data.  Those entities have **not** resigned. **The resignation of the previous QSF administrator has no bearing on the claims process and it will not slow down the distribution of settlement payments. During the ongoing claims processing period, the settlement funds have been invested in secure investments authorized by the Court.  The funds are invested primarily in U.S. Treasuries.  All interest and earnings are redeposited into the Flint Water Settlement Fund.   The Flint Water Settlement Fund is under the control the United States District Court –**

**and money can only be taken out if the Court permits the distribution. No other entity can access the Flint Water Settlement Fund. That means that the lawyers, the City of Flint, and the State of Michigan have no authority or control over the Fund. They cannot order distributions from the Fund. Please understand that under the law, the Settlement Fund must pay income taxes – so a portion of the earnings must be paid to the IRS. However, the administrative expenses of the Fund are deducted from the earnings, which reduces the taxes.**

Under the terms of the ASA, the amount that can be paid to each approved claim cannot be determined until all claims are finalized. This is because the amount allocated for each claim category is divided among all claimants who qualify for that category – so that each such claimant will receive the same payment amount (subject to individual liens and expenses). There is one exception to this rule:  the claims for persons who died from legionella can be paid and are being paid because the dollar amount for those claims is specified in the ASA. In addition, the funds allocated to programmatic relief were paid to the Genesee County Intermediate School District in May 2024.

## II.    The Status of the Claims Process

All claims have now been through initial review and most claims are now finalized. We are in the final stages of the claims process. The ASA allows claimants to request a "reconsideration" of the claims administrator's initial determination,

3

and, if still unsatisfied, to then seek an administrative appeal to the Special Master. As explained further below, many claimants have, in fact, sought reviews of their initial claim determinations and their reconsideration determinations. Although the reconsideration and appeal process, which is continuing, does take time – these final review steps are proving to be extremely valuable and worthwhile in allowing many claims to be approved that previously had been denied.

The initial claims process system started in 2022.  In late 2022, the Special Master's office identified significant data concerns when notices were first scheduled to be issued. Due to issues with uploading data, the evaluation of claims was being based on incorrect or incomplete information. Accordingly, in January 2023, the undersigned submitted a report and recommendation to the Court seeking approval to add further resources to the claims process to address the data import issues and to enhance the review process.  *Report and Recommendation of the Special Master Regarding Addition of Claims Administrator Services for the Partial Settlement*, ECF No. 2341 (Jan. 31, 2023). The Court approved the additional resources (ECF No. 2344) and during January and February of 2023, the claims administration team re-compiled the data, tested the data transfer process, set up the claims review program, and imported the data so that the data was correctly matched with the claims. The first notices to claimants under this revised system were distributed within two months of the restart – in April 2023.

After three months, the undersigned identified a further issue. The rate at which claims were rejected was unacceptably high: approximately 85 percent of claims were initially being rejected. Recognizing that this result did not reflect the number of valid claims, we adjusted the process to ensure it was correctly identifying eligible claims. We developed new guidance and procedures for reviewing claims. We also obtained data and documents directly from the State of Michigan, City of Flint, and Genesee County to help claimants whose submissions did not have the required supporting documents and who were having difficulty obtaining the information by themselves. We instituted a property review process so that claimants would not have to submit proof of ownership. We have obtained millions of records and documents to assist claimants with their claims – including birth certificates, school enrollment records, blood testing records, service line records, water customer billing records, property ownership records, and legal guardianship records. We also established a streamlined process to address claims filed by representatives of deceased individuals.

The undersigned also initiated a hearing process that was intended to help claimants who were unable to obtain documents that were needed for their claims. The Special Master has held hearings for over 800 claims.

Also, unfortunately, in any large settlement there are concerns about fraud. Every large settlement faces systematic fraudulent claims submitted by

sophisticated persons and entities – often through cell phones that cannot be traced. Some of these fraud schemes use data from legitimate claimants (such as dates of birth or social security numbers). The claims review process employs checks and a verification process to guard against fraud to preserve the funds for legitimate claimants. We have not identified a large-scale fraud scheme, but we have identified claims that are inappropriate and should not be found eligible – including claims from people who state incorrectly that they lived in or owned a residence in Flint during the water crisis. The verification process is used to identify such claims. Unfortunately, the settlement has also received claims submitted on behalf of minor children from persons who do not have the legal right to make such a claim or to be responsible for the funds allocated to the child. As an example, we have received claims from biological parents of children who have since been adopted by other families. The biological parent in that situation cannot be the legal representative of the child and cannot legally be given access to the funds allocated to that child. We have even received multiple claims for the same child – one submitted by biological parents and one submitted by the adoptive parents. Identifying such claims can be complicated – but it is important to do so for two reasons: first, payment for an ineligible claim would reduce the settlement dollars available for legitimate claimants; and second, an individual who does not have the right to represent the child cannot legally be given access to the settlement dollars allocated for that child.

**At this time, the claims administrator has sent notices to all[1] claimants who have submitted claims and is nearly done with the review of reconsiderations (13,480).** Notices that have been returned as undeliverable have been remailed if the administrator is able to locate an updated address. **The Special Master is working on appeals submitted by claimants and by counsel on behalf of claimants appealing reconsideration decisions of the claims administrator. Reconsiderations and appeals have resulted in more approved claims. In an initial analysis, 90% of claims that were denied by the claims administrator and were submitted to appeal were approved.**

As of June 9, 2025, the claims administrator has distributed 58,136 notices and 13,618 reconsideration notices.[2] The current data indicates that approximately 28,720 claims are eligible for payment.[3]

---

[1] There is a small number of claims that have not yet received a notice because they involve conflicting representatives of minors. Pursuant to court order, those claims are being addressed initially by the Master Guardian ad Litem and then are submitted to the Special Master for a final decision.

[2] In some cases, the claims administrator has issued more than one reconsideration or initial notice on a claim.

[3] This number excludes claims that the claims administrator has found may be approved if proof is submitted to confirm that the individual who filed the claim on behalf of the minor, incapacitated or deceased claimant is an authorized Next Friend or representative under the terms of the ASA. It also excludes certain claims that have been found approvable under the "LAN" settlement process. The number does include claims that need to provide missing information in order to

### III.    What Remains To Be Done

Several steps must still be taken before payments are distributed.

**To distribute payments, the claims administrator must have Social Security numbers for each eligible claimant. Approximately 1,200 approved claimants have not submitted Social Security numbers. Those Social Security numbers are required by the settlement and by law to identify liens held by government health care providers. The settlement cannot be finalized until the liens are determined.** If we cannot obtain valid SSNs for specific claims, it might be necessary to deny those claims so that they do not hold up payment. **If you are a claimant who has received a notice of an approved claim and you have not already provided your social security number, you may contact the Special Master's office.** (Contact information is below.)

The Special Master's office has engaged a payment administrator and set up a payment system so that approved claimants can elect their preferred form of payment among several options that will allow for direct electronic payment (which is faster and more secure than check payments). **All claimants will receive information about how to access the payment site when they receive their final**

---

receive payment. The number also includes multiple claims that may have been approved for a single claimant (such as multiple property claims).

**letter. There will be a check distribution center established for those who need to receive payment by check.**

Claimants who are minors must receive payment through a structured settlement or a trust according to the settlement terms and state law. The structure and trust processes have been established. The lawful Next Friend of minors will receive the information about structure and trust options and will need to select the option they prefer.

**We anticipate that the letters with payment information will be distributed in the next few months (late summer/early fall 2025) – but as noted they cannot be distributed until all reconsideration and appeal deadlines have passed and all reconsiderations and appeals have been finalized**.

### IV.    What Should Claimants Do Now?

If you have received a notification of missing information, please respond as quickly as possible.  If you have not received a notice letter – please contact the Special Master's office at the phone number or email below.  If you received a notice and have questions, contact your lawyer or the Special Master's office.

Date: June 10, 2025

*/s/ Deborah Greenspan*

Deborah E. Greenspan
Special Master
BLANK ROME LLP
Michigan Bar # P33632
1825 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
Deborah.Greenspan@blankrome.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 10, 2025, I electronically filed the foregoing document with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to attorneys of record.

Dated: June 10, 2025

*/s/ Deborah Greenspan*
Deborah E. Greenspan
Special Master
BLANK ROME LLP
Michigan Bar # P33632
1825 Eye Street, N.W.
Washington, DC  20006
Telephone: (202) 420-2200
Facsimile: (202) 420-2201
Deborah.Greenspan@blankrome.com

11