# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| *In re* Flint Water Cases. | Judith E. Levy<br>United States District Judge |
| _____/ | |
| This Order Relates To: | |
| MEEKS *et al.*, v. UNITED STATES<br>Case No. 16-cv-10444 | |
| _____/ | |

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF <u>ATTORNEY MAE WU AND DR. LARRY RUSSELL [3301]</u>

This opinion addresses the admissibility of certain expert testimony in the next Flint Water trial, referred to as *Meeks v. United States* ("*Meeks*"). *Meeks* is a bench trial, set to begin on January 26, 2026.

Currently before the Court is Defendant United States' Motion to Exclude or Limit the Expert Testimony of Attorney Mae Wu and Dr. Larry Russell ("Motion"). (ECF No. 3301.) Ms. Wu and Dr. Russell have been retained by Plaintiffs T.B., B.R., and M.S. ("Plaintiffs"), who were all minor children at the time of the Flint water crisis. Plaintiffs oppose

the United States' motion. (ECF. No. 3353.) For the reasons set forth below, the Motion is denied.

## I. Background

The United States moves to exclude or limit the testimony and reports of Dr. Larry Russell and Attorney Mae Wu. Dr. Russell and Ms. Wu have been retained by Plaintiffs to serve as experts in the *Meeks* trial. (*See* ECF No. 3301-3, PageID.109697; ECF No. 3301-1, PageID.109644.)

### A. Dr. Russell

Dr. Russell is Plaintiffs' proposed expert in water quality assessments, corrosion mitigation, and the behavior of material exposed to drinking water. (ECF No. 3301-3, PageID.109698.) He received a bachelor's degree, a master's degree, and a doctorate degree in Civil/Environmental Engineering from the University of California at Berkeley. (*Id.*) Dr. Russell is a registered Professional Engineer in Michigan and approximately thirty other states; a registered Civil, Chemical, and Corrosion Engineer in California; and a licensed water treatment operator in four states. (*Id.*) He has 50 years of experience in the water industry and over 45 years of experience in water quality assessments, corrosion, and materials performance evaluation. (*Id.*) Dr.

2

Russell has been an elected director of the Marin Municipal Water District—a water district that serves 190,000 people—since 2004. (*Id.*) He has worked "with a wide variety of regulatory agencies," including the United States Environmental Protection Agency ("EPA"), over the course of his career. (*Id.*) He has also "worked extensively with the conditions required by the Safe Drinking Water Act (SDWA) and the Lead and Copper Rule in general." (*Id.*)

Dr. Russell has served as an expert for the plaintiffs in past Flint Water litigation. (*Id.* at PageID.109697.) In that role, Dr. Russell prepared five reports assessing the ethical responsibilities of prior defendants and their contributions to the Flint Water Crisis. (*Id.*) The Court has previously decided three motions concerning the admissibility of Dr. Russell's opinions and testimony in past Flint Water litigation. *See In re Flint Water Cases*, 558 F. Supp. 3d 459, 523 (E.D. Mich. 2021) (denying defendants' motion to exclude Dr. Russell's testimony and reports); *In re Flint Water Cases*, No. 16-10444, 2023 WL 5844730, at *1 (E.D. Mich. Sept. 11, 2023) (denying defendants' motion to exclude certain opinions and testimony of Dr. Russell); *In re Flint Water Cases*, No. 16-10444, 2024 WL 2244871, at *1 (E.D. Mich. May 17, 2024)

3

(granting in part and denying in part defendants' motion to exclude certain opinions and testimony of Dr. Russell). The first of those decisions took place at the class certification stage, where, like here, the Court was "not performing its typical *Daubert* role of gatekeeping for a *jury*." *In re Flint Water Cases*, 558 F. Supp. 3d at 523. The latter two decisions, in contrast, were decided prior to anticipated jury trials. *See In re Flint Water Cases*, 2023 WL 5844730, at *5; *In re Flint Water Cases*, 2024 WL 2244871, at *1.

For the present litigation, Dr. Russell has been asked to assess the conduct of the EPA as it relates to the Flint Water Crisis. (ECF No. 3301-3, PageID.109698.) To that end, Dr. Russell issued an opening report on July 11, 2025 (*see id.* at PageID.109694), as well as a rebuttal report on September 19, 2025. (*See* ECF No. 3301-5, PageID.109791.) Dr. Russell's opening report offers opinions related to the causes of the Flint Water Crisis and how the change in water sources should have been addressed. (*See* ECF No. 3301-3, PageID.109702–109708.) Dr. Russell's rebuttal report is primarily a critique of "biosolids analysis" as a method of tracking lead release in Flint. (*See* ECF No. 3301-5, PageID.109793.)

4

Much of Dr. Russell's reports consists of scientific opinions related to water chemistry and civil engineering. (*See, e.g.*, ECF No. 3301-3, PageID.109722–109731 (discussing corrosion and corrosion control technology); *id.* at PageID.109747–109763 (discussing the causes and impacts of corrosion in Flint); ECF No. 3301-5, PageID.109793–109804 (discussing biosolids analysis).) Some of Dr. Russell's opinions, however, involve the authority and obligations of the EPA under the SDWA and the Lead and Copper Rule ("LCR"). (*See, e.g.*, ECF No. 3301-3, PageID.109736–109742 (discussing the LCR); *id.* at PageID.109743–109748 (discussing the obligations of EPA under the SDWA).)

### B. Ms. Wu

Ms. Wu is an attorney with a bachelor's degree in chemical engineering from Rice University, a law degree from Duke University School of Law, and a master's degree in environmental policy from the University of Cambridge. (ECF No. 3301-1, PageID.109644.) She has worked at the Natural Resources Defense Council and has served on the EPA's National Drinking Water Advisory Committee. (*Id.*) Ms. Wu has testified before the U.S. House of Representatives Energy and Commerce Committee on the Flint Water Crisis, the Lead and Copper Rule, and the

5

SDWA. (*Id.*) From 2023 to 2025, she served as Deputy Assistant Administrator in the Office of Water at the EPA. (*Id.*)

In the present litigation, Plaintiffs have designated Ms. Wu as an expert on the SDWA and the LCR. (*Id.*) To that end, Ms. Wu issued a report on July 11, 2025. (*See id.* at PageID.109642.) Ms. Wu discusses the general statutory and regulatory framework under the SDWA and, in particular, the EPA's role when a state has primary enforcement authority. (*Id.* at PageID.109652–109657.) Ms. Wu also provides opinions concerning the EPA's obligations under the SDWA and the LCR and whether it met those obligations during the Flint Water Crisis. (*Id.* at PageID.109659–109678.)

## II. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, courts assume a gatekeeping role to ensure that expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). Rule 702 imposes three requirements on expert testimony: "First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to

understand the evidence or to determine a fact in issue. Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (internal quotations and citations omitted). The party offering expert evidence must show by a preponderance of the evidence that an expert is qualified and that their testimony will assist the trier of fact. *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000) (citing *Daubert*, 509 U.S. at 592 n.10).

While the Court has an important gatekeeping role under Rule 702, in general, "rejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530 (quoting Fed. R. Evid. 702, Adv. Comm. Notes (2000)); see also *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). In addition, "[t]he 'gatekeeper' doctrine was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 852 (6th Cir. 2004); see also *United States v. Kalymon*, 541 F.3d 624, 636 (6th Cir. 2008) (describing a district court's discretion to admit or exclude expert testimony as "at its zenith during a

7

bench trial"). As this Court has explained previously, "the concerns animating traditional *Daubert* review—confusing the jury—do not exist when the Court is the sole trier of fact and law." *In re Flint Water Cases*, 558 F. Supp. 3d at 524.

### III. Analysis

The United States argues that Dr. Russell's and Ms. Wu's reports and testimony "contain inadmissible legal opinions." (ECF No. 3301, PageID.109622.) The United States also argues that Dr. Russell is not qualified to offer legal analysis. (*Id.* at PageID.109637.) Plaintiffs argue that the United States' motion should be denied as unnecessary because there is no risk of confusing the finder of fact in a bench trial. (ECF No. 3353, PageID.110540.) Plaintiffs also argue that Dr. Russell and Ms. Wu offer necessary testimony which does not contain inadmissible legal conclusions. (*Id.* at PageID.110541.) In addition, Plaintiffs argue that Dr. Russell is qualified to offer opinions on water safety regulations and the role of a regulatory entity. (*Id.* at PageID.110558–110559.)

For the reasons set forth below, the United States' motion is denied. While the Court finds that the United States' concerns do not, in the context of a bench trial, warrant exclusion of Plaintiffs' proposed experts,

8

the Court also notes that the *admission* of expert opinions does not guarantee that those opinions will ultimately be *credited*. The absence of a jury may relax the Court's gatekeeping role, but it does not, as the United States notes, relax the factfinder's duty to ultimately *rely* only on testimony that is admissible, credible, and relevant.

### A. Admissibility of Legal Opinions

To the extent the United States argues that Plaintiffs' experts' testimony and their reports should be limited or excluded because they contain impermissible legal opinions, the United States' concerns are "largely irrelevant in the context of a bench trial." *See Deal*, 392 F.3d at 852. It is true that experts may invade the province of the Court by offering legal opinions. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 ("It is the responsibility of the court, not testifying witnesses, to define legal terms."). Accordingly, courts have sometimes referred to a general rule that expert witnesses are prohibited from testifying on issues of law. *See, e.g.*, *Miller v. City of Cincinnati*, 709 F. Supp. 2d 605, 619 (S.D. Ohio 2008) (citing *Berry*, 25 F.3d at 1353).

However, the rule prohibiting expert legal opinions "is directed toward the admission of expert testimony directed at a *jury* on the theory

9

that determination of the law is for the judge, and that the allowance of expert opinion on legal standards might confuse the jury." *Grand Traverse Band of Ottawa & Chippewa Indians v. United States Atty.*, 46 F. Supp. 2d 689, 694 (W.D. Mich. 1999) (emphasis in original). In a bench trial, in contrast, there is no danger that expert legal opinions will confuse the factfinder or intrude on the judge-jury relationship. *See, e.g., id.* (noting that the court "is fully aware of its obligations to determine the law and unlikely to be confused about this obligation by the opinion of an expert"); *Miller*, 709 F. Supp. 2d at 619–20 (finding the prohibition on expert legal opinions "not applicable where the court is sitting as both a trier of fact and law"); *Knisley v. United States*, 817 F. Supp. 680, 690 (S.D. Ohio 1993) ("The possible concern over invasion of the judge-jury relationship is not present in Federal Tort Claims cases which are tried to the bench.").

Because there is no risk that Dr. Russell's or Ms. Wu's legal opinions will confuse a jury, "[t]he proper course of action for this Court . . . is to admit the evidence and then afford it whatever weight the Court deems appropriate." *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2018 WL 1180886, at *2 (E.D. Mich. Mar. 7, 2018); *see*

10

*also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 635 (6th Cir. 2000) (Gilman, J., dissenting) ("[D]istrict courts conducting bench trials have substantial flexibility in admitting proffered expert testimony at the front end, and then deciding for themselves during the course of trial whether the evidence . . . deserves to be credited."). The parties remain free to raise objections to specific testimony at trial. And the Court is cognizant of its duty to ultimately "rely only on admissible and reliable expert testimony, even while conducting a bench trial." *Gonzales*, 225 F.3d at 635 (Gilman, J., dissenting); *see also United States v. Stepp*, 680 F.3d 651, 669 (6th Cir. 2012) (explaining that "whether a proffered expert should be permitted to testify at all" is "distinct from the ultimate question of whether the testimony is sufficiently credible to serve as a basis for the district court's conclusions").

The Court is also cognizant of the distinction between opinions that touch on the law—including opinions that interpret laws or regulations and opinions that utilize legal terms of art—and opinions that tell the trier of fact what result they believe she should reach. The latter sort of opinion is objectionable not because it may confuse a jury or invade the judge-jury relationship, but because it is simply unhelpful to the trier of

11

fact. *See* Fed. R. Evid. 704, Adv. Comm. Notes (explaining that "opinions which would merely tell the jury what result to reach" are inadmissible because "opinions must be helpful to the trier of fact"). Accordingly, such opinions should be excluded under Rules 702 and 403 as unhelpful and a waste of time. *Id.*

There is a distinction, however, "between 'opin[ing] on the ultimate question of liability' (impermissible), and 'stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to the ultimate issue' (permissible)." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019) (quoting *Berry*, 25 F.3d at 1353; citing Fed. R. Evid. 704(a)). For this reason, a fingerprint expert may not state that a criminal defendant is guilty but may state that the defendant's fingerprint was the only fingerprint on the murder weapon. *Id.* (citing *Berry*, 25 F.3d at 1353).

Here, the Court agrees with Plaintiffs that Dr. Russell's and Ms. Wu's opinions fall within the permissible category.[1] The ultimate legal

---

[1] The United States also appears to agree with Plaintiffs. In its reply brief, the United States indicates that it does not object to Dr. Russell's and Ms. Wu's testimony on the ground that they opine on the ultimate question of liability. (ECF No. 3381, PageID.112019.) Rather, the United States objects to their testimony "because they

12

question in this case is whether the EPA was negligent within the meaning of Michigan's Good Samaritan doctrine. Opinions involving EPA's obligations and powers under federal laws and regulations are, therefore, akin to opinions as to whose fingerprints are—or are not—on a murder weapon. They may give the Court information from which it can draw inferences on the ultimate issue, but they do not answer the ultimate question of liability. Accordingly, such opinions—whether they come from Dr. Russell and Ms. Wu or the United States' non-retained experts—do not tell the Court what result to reach and will not be excluded on that ground.

### B. Dr. Russell's Qualifications to Offer Legal Opinions

The United States also argues that Dr. Russell is not qualified to offer legal analysis. The United States explains that Dr. Russell is an engineer and not a lawyer or regulatory expert. (ECF No. 3301, PageID.109637.) The United States therefore asks that the Court limit

---

interpret and apply federal law." (*Id.*) In its initial brief, however, the United States expressed concern that Dr. Russell and Ms. Wu would act as "liability experts" who would "tell the factfinder 'what result to reach.'" (ECF No. 3301, PageID.109627 (quoting *Berry*, 25 F.3d at 1354; *see also id.* at PageID.109633.) Accordingly, the Court addresses this concern.

13

Dr. Russell's testimony to exclude any opinions interpreting the SDWA or the LCR or the EPA's duty or breach of duty under the SDWA and the LCR. (*Id.* at PageID.109639.)

As explained above, the gatekeeper doctrine that animates traditional *Daubert* review "was designed to protect juries and is largely irrelevant in the context of a bench trial." *Deal*, 392 F.3d at 852. "[A] *Daubert* challenge is used to 'prevent the jury' from hearing unreliable scientific evidence"—an interest that is "inapplicable to bench trials." *League of Women Voters of Mich. v. Benson*, No. 2:17-CV-14148, 2019 WL 8106155, at *1 (E.D. Mich. Jan. 15, 2019). The Court is presumed to be "less prone to persuasion by misleading expert testimony than a jury." *Stepp*, 680 F.3d at 669 (citing *Deal*, 392 F.3d at 852).

Accordingly, once again, "[t]he proper course of action for this Court . . . is to admit the evidence and then afford it whatever weight the Court deems appropriate." *Michigan State A. Philip Randolph Inst.*, 2018 WL 1180886, at *2. The fact that Dr. Russell is an engineer and not a lawyer or regulatory expert may certainly go to the weight of his opinions, but— given his decades of experience in the water industry and the relaxed *Daubert* concerns of a bench trial—it will not go to their admissibility.

14

*See, e.g., Davis v. Combustion Eng'g, Inc.*, 742 F.2d 916, 919 (6th Cir. 1984) (finding a witness' lack of familiarity with pertinent law to go to his credibility, not his qualifications to testify); *Hixon v. TVA Bd. of Dirs.*, 558 F. Supp. 3d 573, 583 n.5 (E.D. Tenn. 2021) (finding a witness' "general expertise" but "lack of specialization" to go "to the weight of the testimony, not its admissibility."); *Moore v. Lowe's Companies, Inc.*, No. 113CV00005GNSHBB, 2016 WL 1181741, at *7 (W.D. Ky. Mar. 25, 2016) (finding "any gap in [the witness'] qualifications or knowledge" to go "to the weight, not the admissibility of his opinions"). The United States is welcome to question Dr. Russell's qualifications and familiarity with pertinent laws and regulations on cross-examination. *See Daubert*, 509 U.S. at 596 (explaining that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are the preferred means of attacking expert testimony).

### IV. Conclusion

For the reasons set forth above, the Motion is DENIED.

IT IS SO ORDERED.

Dated: December 10, 2025　　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

15

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 10, 2025.

s/William Barkholz
WILLIAM BARKHOLZ
Case Manager